UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CSX CORPORATION,

                Plaintiff,

v.

THE CHILDREN'S INVESTMENT FUND MANAGEMENT (UK) LLP, THE CHILDREN'S INVESTMENT FUND MANAGEMENT (CAYMAN) LTD., THE CHILDREN'S INVESTMENT MASTER FUND, 3G CAPITAL PARTNERS LTD., 3G CAPITAL PARTNERS, L.P., 3G FUND L.P., CHRISTOPHER HOHN, SNEHAL AMIN AND ALEXANDRE BEHRING, A/K/A ALEXANDRE BEHRING COSTA,

                Defendants.

---

THE CHILDREN'S INVESTMENT MASTER FUND,

                Counterclaim and Third-Party Plaintiff,

v.

CSX CORPORATION AND MICHAEL WARD,

                Counterclaim Defendants.

ECF Case

08 Civ. 02764 (LAK) (KNF)

**ANSWER OF COUNTERCLAIM-DEFENDANT CSX CORPORATION AND THIRD-PARTY DEFENDANT MICHAEL WARD TO THE COUNTERCLAIMS AND THIRD-PARTY CLAIMS OF THE CHILDREN'S INVESTMENT MASTER FUND**

---

In answer to the averments of the Counterclaims and Third-Party Claims (collectively, "counterclaims") of defendant The Children's Investment Master Fund ("TCI"), Counterclaim Defendant CSX Corporation ("CSX") and Third-Party Defendant Michael Ward (collectively, "counterclaim defendants"), by and through their attorneys, aver as follows, based

upon personal knowledge as to their own actions and upon information and belief as to the actions and intent of others:

    1.    Deny the averments in paragraph 1 of the counterclaims.

    2.    Deny the averments in paragraph 2 of the counterclaims.

    3.    Deny the averments in paragraph 3 of the counterclaims.

    4.    Deny the averments in paragraph 4 of the counterclaims, except admit that at the Shareholders Meeting, CSX shareholders will cast their proxies to elect directors to CSX's Board and vote on two proposals relating to amendments to the CSX Bylaws to enable shareholders to request special meetings and a shareholder proposal to nullify certain amendments to the Bylaws adopted by the Board; and admit that TCI has been critical of the Board.

    5.    Deny the averments in paragraph 5 of the counterclaims and refer to the referenced document for its contents.

    6.    Deny the averments in paragraph 6 of the counterclaims.

    7.    Deny the averments in paragraph 7 of the counterclaims, except admit that TCI filed a Schedule 13D on December 19, 2007, and state that they are without information sufficient to form a belief as to the truth of the averments as they relate to TCI and admit that TCI has invested in CSX through the purchase of common stock and cash-settled "total return swaps," the particulars of which TCI declined to disclose to CSX.

    8.    Deny the averments in paragraph 8 of the counterclaims.

    9.    Deny the averments in paragraph 9 of the counterclaims.

    10.    Deny the averments in paragraph 10 of the counterclaims, except refer to the referenced document for its contents.

11. Deny the averments in paragraph 11 of the counterclaims, except refer to the referenced documents for their contents.

12. Deny the averments in paragraph 12 of the counterclaims, except admit that TCI wrote a public letter to the Board stating that it "currently owns 17.8 million shares, or 4.1% of CSX" and that the Board responded to TCI's letter on November 16, 2007.

13. Deny the averments in paragraph 13 of the counterclaims, except admit that on December 19, 2007, TCI filed a Schedule 13D with the SEC and refer to that filing for its contents.

14. Deny the averments in paragraph 14 of the counterclaims, except admit that on January 8, 2008, TCI submitted to CSX its notification of the TCI slate of nominees to the CSX Board and that TCI engaged in discussions with CSX representatives about potential representation on the CSX Board.

15. Deny the averments in paragraph 15 of the counterclaims and refer to the Notice for its contents.

16. Deny the averments in paragraph 16 of the counterclaims, except admit that Ellen M. Fitzsimmons, CSX's Senior Vice President, Law & Public Affairs and Corporate Secretary, sent TCI a letter dated January 15, 2008, acknowledging receipt of the Notice and refer to the referenced letter for its contents.

17. Deny the averments in paragraph 17 of the counterclaims, except refer to the referenced letter for its contents.

18. Deny the averments in paragraph 18 of the counterclaims, except admit that TCI sent CSX a letter dated January 16, 2008 and refer to the letter for its contents.

19. Deny the averments in paragraph 19 of the counterclaims, except admit that CSX did not specifically respond to the January 16, 2008 letter.

20. Deny the averments in paragraph 20 of the counterclaims, except admit that CSX sent a public letter to Chris Hohn, dated February 14, 2008 and refer to the letter for its contents.

21. Deny the averments in paragraph 21 of the counterclaims, except admit that CSX filed this lawsuit on March 17, 2008 and refer to the complaint for its contents; that CSX filed this lawsuit after receiving TCI's January 16, 2008 letter and its record date of February 27, 2007; and that CSX has reset the record date.

22. Deny the averments in paragraph 22 of the counterclaims, except admit that the Bylaws set deadlines for the submission of shareholder proposals, including the nomination of persons to serve as directors on CSX's Board, which in the case of the 2008 annual meeting of shareholders was February 2, 2008.

23. Deny the averments in paragraph 23 of the counterclaims.

24. Deny the averments in paragraph 24 of the counterclaims.

25. Deny the averments in paragraph 25 of the counterclaims.

26. Deny the averments in paragraph 26 of the counterclaims.

27. State that they are without information sufficient to form a belief as to the averments in paragraph 27 of the counterclaims.

28. Admit the averments in paragraph 28 of the counterclaims.

29. Deny the averments in paragraph 29 of the counterclaims, except admit Mr. Ward is the Chairman, President and CEO of CSX and has discretionary authority to control or influence certain aspects of the conduct of CSX.

30. Admit the averments in paragraph 30 of the counterclaims.

31. Admit the averments in paragraph 31 of the counterclaims.

32. State that the averments in paragraph 32 of the counterclaims purport to state a legal conclusion and do not require a response.

33. Deny the averments in paragraph 33 of the counterclaims.

34. State that the averments in paragraph 34 of the counterclaims purport to state a legal conclusion and do not require a response. To the extent a response is required, the averments in paragraph 34 of the counterclaims are denied.

35. Deny the averments in paragraph 35 of the counterclaims, except state that CSX has an Insider Trading Policy and refer to the policy for its contents.

36. Deny the averments in paragraph 36 of the counterclaims, except admit that Article II, Section 2(b) of the Bylaws, adopted on September 12, 2007, pertains to directors and refer to the Bylaws for their contents.

37. Deny the averments in paragraph 37 of the counterclaims, except admit that CSX's Code of Ethics applies to members of the Board and officers and employees of CSX and refer to the Code of Ethics for its contents.

38. Deny the averments in paragraph 38 of the counterclaims.

39. Deny the averments in paragraph 39 of the counterclaims, except admit that CSX's shareholder-approved Omnibus Incentive Plan relates to equity-based performance compensation and refer to the plan for its contents.

40. Deny the averments in paragraph 40 of the counterclaims, except admit that the Board issues performance grants to "Named Executive Officers" and other employees under the LTIP and refer to the LTIP for its contents.

41. Deny the averments in paragraph 41 of the counterclaims, except admit that on May 1, 2007, CSX awarded its performance grants under the LTIP for more than 600 employees, including Mr. Ward and the other NEOs; on May 2, 2007, CSX announced a dividend, and on May 8, 2007, CSX made public announcements.

42. Deny the averments in paragraph 42 of the counterclaims, except admit that the closing share price of CSX common stock was higher on May 8, 2007 than on May 1, 2007.

43. Deny the averments in paragraph 43 of the counterclaims.

44. Deny the averments in paragraph 44 of the counterclaims.

45. Deny the averments in paragraph 45 of the counterclaims, except admit that Mr. Ward received a target performance grant of $4,000,010 under the 2007-2009 LTIP.

46. Deny the averments in paragraph 46 of the counterclaims, except admit that each of Messrs. Munoz, Ingram and Gooden received target performance grants of $1,499,998 under the 2007-2009 LTIP.

47. Deny the averments in paragraph 47 of the counterclaims.

48. Deny the averments in paragraph 48 of the counterclaims.

49. Deny the averments in paragraph 49 of the counterclaims.

50. Deny the averments in paragraph 50 of the counterclaims, except admit that pursuant to the Amended and Restated CSX Stock Plan for Directors, at least 50% of each non-management directors' annual retainer must be in the form of CSX common stock; that the number of shares that a Director receives as the stock component of his compensation pursuant to the plan is based on the average of the high and low prices of CSX common stock on the date

immediately preceding the date of the annual shareholders meeting; and that the shares, in turn, are automatically issued on the date of the meeting.

51. Deny the averments in paragraph 51 of the counterclaims and refer to the Corporate Governance Guidelines and Stock Plan for their contents.

52. Deny the averments in paragraph 52 of the counterclaims.

53. Deny the averments in paragraph 53 of the counterclaims, except admit that the 2007 annual shareholders meeting was held on May 2, 2007, and the number of shares that the directors were awarded as 50 percent of their annual retainer in accordance with the CSX Stock Plan for Directors was determined on May 1, 2007.

54. Deny the averments in paragraph 54 of the counterclaims.

55. Deny the averments in paragraph 55 of the counterclaims, except admit that, in December 2007, the Board granted each of CSX's 11 non-management directors 5,000 shares of CSX common stock, that December is the last calendar month of a quarter, and that CSX reported its fourth quarter 2007 earnings on January 22, 2008 and refer to the Stock Plan for its contents.

56. Deny the averments in paragraph 56 of the counterclaims.

57. Deny the averments in paragraph 57 of the counterclaims, except admit that the CSX Proxy addresses non-employee director compensation and refer to the referenced document for its contents.

58. Deny the averments in paragraph 58 of the counterclaims, except admit that at CSX's June 25, 2008 Shareholders Meeting, the shareholders will be presented with proposals to amend the Bylaws of CSX to permit the shareholders to request special shareholder meetings.

59. Deny the averments in paragraph 59 of the counterclaims, except admit that a non-binding shareholder proposal that the Board amend the Bylaws to permit shareholders to call special shareholder meetings was put to a shareholder vote at CSX's 2007 annual shareholders meeting on May 2, 2007 (the "2007 Proposal") and refer to the 2007 Proposal for its contents.

60. Deny the averments in paragraph 60 of the counterclaims, except state that CSX is without information sufficient to form a belief regarding "shareholders'" concerns and admit that CSX sent a letter to TCI on November 16, 2007 and refer to the letter for its contents.

61. Deny the averments in paragraph 61 of the counterclaims, except refer to the referenced document for its contents.

62. Deny the averments in paragraph 62 of the counterclaims, except refer to the referenced document for its contents.

63. Deny the averments in paragraph 63 of the counterclaims, except admit that CSX opposed the 2007 Proposal and refer to referenced document for its contents.

64. Deny the averments in paragraph 64 of the counterclaims, except admit that the 2007 Proposal was approved by shareholders.

65. Deny the averments in paragraph 65 of the counterclaims.

66. Deny the averments in paragraph 66 of the counterclaims, except refer to CSX's Corporate Governance Guidelines for their contents.

67. Deny the averments in paragraph 67 of the counterclaims, except admit that CSX's counsel wrote a letter on CSX's behalf dated January 14, 2008, requesting that the staff of the SEC confirm that they would not recommend that the SEC take enforcement action

against CSX if CSX omitted the Ram Proposal from its proxy materials for CSX's 2008 Shareholders Meeting.

68. Deny the averments in paragraph 68 of the counterclaims, except refer to the referenced document for its contents.

69. Deny the averments in paragraph 69 of the counterclaims.

70. Deny the averments in paragraph 70 of the counterclaims, except admit that the February Amendment referred to in the CSX Letter was approved by the Board on February 4, 2008 and that on March 13, 2008, the SEC indicated that it was unable to concur with the view that CSX may exclude the Ram Proposal from its proxy materials for CSX's 2008 Shareholders Meeting.

71. Deny the averments in paragraph 71 of the counterclaims.

72. Deny the averments in paragraph 72 of the counterclaims, except refer to the February Amendment for its contents.

73. Deny the averments in paragraph 73 of the counterclaims, except refer to the February Amendment and the Ram Proposal for their contents.

74. Deny the averments in paragraph 74 of the counterclaims, except refer to the February Amendment for its contents.

75. Deny the averments in paragraph 75 of the counterclaims, except refer to the February 14, 2008 letter to TCI for its contents.

76. Deny the averments in paragraph 76 of the counterclaims, except refer to the referenced statute for its contents.

77. Deny the averments in paragraph 77 of the counterclaims, except refer to the referenced document for its contents.

78. Deny the averments in paragraph 78 of the counterclaims, except refer to the referenced statute and document for their contents.

79. Deny the averments in paragraph 79 of the counterclaims, except refer to the referenced statute for its contents.

80. Deny the averments in paragraph 80 of the counterclaims.

81. Deny the averments in paragraph 81 of the counterclaims, except refer to the referenced document for its contents.

82. Admit that on February 21, 2008, CSX submitted to the SEC the CSX Proxy for the 2008 Shareholders Meeting, which included a proposal that shareholders approve the February Amendment.

83. Deny the averments in paragraph 83 of the counterclaims, except refer to the referenced document for its contents.

84. Deny the averments in paragraph 84 of the counterclaims, except admit that as of January 7, 2008, most of the total outstanding shares of CSX were shares held of record on the books of the Depository Trust Company (the "DTC") in accounts registered in the name of DTC's participants, including banks, trust companies and other custodians on behalf of ultimate beneficial owners.

85. Deny the averments in paragraph 85 of the counterclaims, except admit that because of legal and regulatory restrictions, DTC's participants, including banks, trust companies and other custodians, are prevented from disclosing information about the beneficial owners of the shares they hold under applicable law unless the beneficial owners consent to disclosure.

86. Deny the averments in paragraph 86 of the counterclaims.

87.	Deny the averments in paragraph 87 of the counterclaims.

88.	Deny the averments in paragraph 88 of the counterclaims, except refer to the Bylaws for their contents.

89.	Deny the averments in paragraph 89 of the counterclaims, except refer to the February Amendment for its contents.

90.	Deny the averments in paragraph 90 of the counterclaims, except admit that the February Amendment for which CSX seeks approval restricts the purpose for which a special shareholders meeting may be called if the purpose (i) has been addressed in the last 12 months, (ii) will be addressed at an annual meeting to be held within the next 90 days, or (iii) is unlawful.

91.	Deny the averments in paragraph 91 of the counterclaims, except refer to the February Amendment for its contents.

92.	Deny the averments in paragraph 92 of the counterclaims, except refer to the February Amendment for its contents.

93.	Deny the averments in paragraph 93 of the counterclaims, except admit that the CSX Proxy placed the CSX Special Meeting Proposal on the ballot in addition to the Ram Proposal and the TCI Proposal.

94.	Deny the averments in paragraph 94 of the counterclaims.

95.	Admit the averments in paragraph 95 of the counterclaims and refer to the CSX Proxy for its contents, including language omitted from the quotation.

96.	Deny the averments in paragraph 96 of the counterclaims.

97.	Deny the averments in paragraph 97 of the counterclaims.

98.	Deny the averments in paragraph 98 of the counterclaims.

99. Deny the averments in paragraph 99 of the counterclaims.

100. Deny the averments in paragraph 100 of the counterclaims.

101. Deny the averments in paragraph 101 of the counterclaims.

102. Deny the averments in paragraph 102 of the counterclaims.

103. Deny the averments in paragraph 103 of the counterclaims.

104. Deny the averments in paragraph 104 of the counterclaims, except admit that the House of Representative proposed legislation concerning rail rates in Fall 2007 and refer to the referenced legislation and TCI's public statements, including its October 16, 2007 letter to the CSX Board, for their contents.

105. Deny the averments in paragraph 105 of the counterclaims, except refer to the referenced 8-K for its contents.

106. Deny the averments in paragraph 106 of the counterclaims.

107. Deny the averments in paragraph 107 of the counterclaims, except refer to the October 16, 2007 letter for its contents.

108. Deny the averments in paragraph 108 of the counterclaims.

109. Deny the averments in paragraph 109 of the counterclaims, except admit that Mr. Ward and Snehal Amin of TCI testified during a Congressional hearing and that Mr. Ward sat next to Mr. Amin and refer to the referenced testimony for its contents.

110. Deny the averments in paragraph 110 of the counterclaims, except admit that on March 11, 2008, the *Washington Times* published an editorial entitled "Rewards for Railroads," written by Mr. Ward (the "Ward Editorial") and refer to the Ward Editorial for its contents.

111. Deny the averments in paragraph 111 of the counterclaims, except refer to the Ward Editorial for its contents.

112. Deny the averments in paragraph 112 of the counterclaims, except refer to the Ward Editorial for its contents.

113. Deny the averments in paragraph 113 of the counterclaims, except admit that Edward J. Kelly, III is the presiding director of CSX's Board and refer to the referenced press release for its contents.

114. Deny the averments in paragraph 114 of the counterclaims.

115. Deny the averments in paragraph 115 of the counterclaims.

116. Deny the averments in paragraph 116 of the counterclaims, except admit that the Ward Editorial was filed with the SEC on Schedule 14A as soliciting material pursuant to Rule 14a-12 promulgated under the Securities Exchange Act of 1934, on March 17, 2008, the day CSX commenced this lawsuit.

117. Deny the averments in paragraph 117 of the counterclaims.

118. Repeat and reallege their responses to paragraphs 1-117 of the counterclaims.

119. Deny the averments in paragraph 119 of the counterclaims.

120. Deny the averments in paragraph 120 of the counterclaims.

121. Deny the averments in paragraph 121 of the counterclaims.

122. Deny the averments in paragraph 122 of the counterclaims.

123. Deny the averments in paragraph 123 of the counterclaims.

124. Deny the averments in paragraph 124 of the counterclaims.

125. Deny the averments in paragraph 125 of the counterclaims.

126.   Deny the averments in paragraph 126 of the counterclaims.

127.   Deny the averments in paragraph 127 of the counterclaims.

128.   Deny the averments in paragraph 128 of the counterclaims.

129.   Deny the averments in paragraph 129 of the counterclaims.

130.   Deny the averments in paragraph 130 of the counterclaims.

131.   Deny the averments in paragraph 131 of the counterclaims.

132.   Deny the averments in paragraph 132 of the counterclaims.

133.   Deny the averments in paragraph 133 of the counterclaims.

134.   Deny the averments in paragraph 134 of the counterclaims.

135.   Deny the averments in paragraph 135 of the counterclaims.

136.   Deny the averments in paragraph 136 of the counterclaims.

137.   Deny the averments in paragraph 137 of the counterclaims.

138.   Deny the averments in paragraph 138 of the counterclaims.

139.   Deny the averments in paragraph 139 of the counterclaims.

140.   Deny the averments in paragraph 140 of the counterclaims.

141.   Deny the averments in paragraph 141 of the counterclaims.

142.   Deny the averments in paragraph 142 of the counterclaims.

143.   Repeat and reallege their responses to paragraphs 1-142 of the counterclaims.

144.   Deny the averments in paragraph 144 of the counterclaims, except admit that Ward maintained discretionary authority to control or influence certain aspects of the conduct of CSX.

145.   Deny the averments in paragraph 145 of the counterclaims.

146. Repeat and reallege their responses to paragraphs 1-145 of the counterclaims.

147. Deny the averments in paragraph 147 of the counterclaims, except refer to the referenced statute for its contents.

148. Deny the averments in paragraph 148 of the counterclaims, except refer to CSX's articles of incorporation for their contents.

149. Deny the averments in paragraph 149 of the counterclaims, except refer to the statute for its contents.

150. Deny the averments in paragraph 150 of the counterclaims.

151. Deny the averments in paragraph 151 of the counterclaims.

## AFFIRMATIVE DEFENSES

### First Defense

The requested relief is barred by the doctrine of unclean hands.

### Second Defense

All the material facts have been disclosed to the shareholders.

### Third Defense

Because TCI's counterclaims are in reality breach of fiduciary duty claims, improperly pleaded as federal securities claims, TCI lacks standing to assert the claims at issue.

### Fourth Defense

Counterclaim defendants acted in good faith and did not induce the alleged violations.

WHEREFORE, Counterclaim Defendant CSX and Third-Party Defendant Michael Ward pray that this Court enter judgment in favor of CSX and Mr. Ward and against the Master Fund, dismissing the counterclaims and third-party claims with prejudice and granting such other and further relief as the Court deemed just and proper, including costs, disbursements and attorneys' fees.

April 24, 2008

CRAVATH, SWAINE & MOORE LLP,

by /s/ Rory O. Millson

Rory O. Millson
Francis P. Barron
David R. Marriott

Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

RMillson@cravath.com
FBarron@cravath.com
DMarriott@cravath.com

*Attorneys for Counterclaim Defendant CSX Corporation and Third-Party Defendant Michael Ward*