UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CSX CORPORATION,

Plaintiff,

v.

THE CHILDREN'S INVESTMENT FUND MANAGEMENT (UK) LLP, THE CHILDREN'S INVESTMENT FUND MANAGEMENT (CAYMAN) LTD., THE CHILDREN'S INVESTMENT MASTER FUND, 3G CAPITAL PARTNERS LTD., 3G CAPITAL PARTNERS, L.P., 3G FUND, L.P., CHRISTOPHER HOHN, SNEHAL AMIN, AND ALEXANDRE BEHRING, A/K/A ALEXANDRE BEHRING COSTA,

Defendants.

THE CHILDREN'S INVESTMENT MASTER FUND,

Counterclaim and
Third-Party Plaintiff,

v.

CSX CORPORATION AND MICHAEL J. WARD,

Counterclaim and
Third-Party Defendants.

3G CAPITAL PARTNERS LTD., 3G CAPITAL PARTNERS, L.P. AND 3G FUND, L.P.,

Counterclaim Plaintiffs,

v.

CSX CORPORATION AND MICHAEL WARD,

Counterclaim and
Third-Party Defendants.

ECF CASE

08 Civ. 02764 (LAK) (KNF)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO STRIKE PORTIONS OF THE WITNESS STATEMENT OF ALAN MILLER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

BACKGROUND ........ 1

ARGUMENT ........ 3

I. Opinion Testimony Under Rule 701 ........ 3

II. Inadmissible Statements ........ 5

A. Statements Based on Hearsay ........ 5

B. Statements Regarding Market Practice ........ 6

1. Statements Regarding the Impact of Hedge Fund Ownership ........ 6

2. Statements Regarding Market Practice of Swap Counterparty Banks ........ 7

C. Statements Regarding the Movement of Shares Before the Record Date ........ 7

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**CASES** **PAGES(S)**

*Bank of China, N.Y. Branch v. NBM LLC*,
359 F.3d 171 (2d Cir. 2004) ........................................ 4, 5

*SEC v. U.S. Envtl., Inc.*,
No. 94 Civ. 6608 (PKL)(AJP), 2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002) ........ 6

*Shred-IT USA, Inc. v. Confidential Shredding, LLC*,
No. CV 03-1816 (ERK)(MDG), 2005 WL 2290448 (E.D.N.Y. Sept. 20, 2005) ........ 6

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991) ........................................ 6

*United States v. Glenn*,
312 F.3d 58 (2d Cir. 2002) ........................................ 3

*United States v. Gringe*,
390 F.3d 746 (2d Cir. 2004) ........................................ 3

*Wantanabe Realty Corp. v. City of New York*,
No. 01 Civ. 10137 (LAK), 2004 WL 188088 (S.D.N.Y. Feb. 2, 2008) ........ 3

*Wechsler v. Hunt Health Systems, Ltd.*,
198 F. Supp. 2d 508 (S.D.N.Y. 2002) ........................................ 5

**RULES**

FED. R. CIV. P. 26(a)(2) ........................................ 1, 3, 5, 6

FED. R. CIV. P. 30(b)(6) ........................................ 1, 2, 5, 10

FED. R. CIV. P. 65(a)(2) ........................................ 1

FED. R. EVID. 701 ........................................ 3, 4, 6, 7, 9

FED. R. EVID. 702. ........................................ 3, 4, 5, 10

FED. R. EVID. 801(c) ........................................ 5

FED. R. EVID. 803(6) ........................................ 5

Defendants The Children's Investment Fund Management (UK) LLP, The Children's Investment Fund Management (Cayman) Ltd., The Children's Investment Master Fund, Christopher Hohn and Snehal Amin (collectively, "TCI") submit this Memorandum of Law in Support of their Motion *in Limine* to Strike Portions of the Witness Statement of Alan Miller.

**BACKGROUND**

On March 17, 2008, Plaintiff CSX Corporation ("CSX") filed a Complaint seeking declaratory and injunctive relief and an Order to Show Cause seeking a preliminary injunction against TCI and Defendants 3G Capital Partners Ltd., 3G Capital Partners, L.P., 3G Fund, L.P., and Alexandre Behring (collectively, "3G"), alleging violations federal securities law and state law arising from the proxy contest in connection with CSX's upcoming Annual Shareholders Meeting. On April 4, 2008, TCI filed its Answer and Counterclaims against CSX, and Third-Party Claims against Michael Ward, alleging violations federal securities law and state law, and seeking declaratory and injunctive relief. The claims, counterclaims and third-party claims will be heard by this Court, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, on May 21-22, 2008.

During the discovery phase of the instant litigation, on April 18, 2008, CSX designated Alan Miller as a Rule 30(b)(6) fact witness for Innisfree M&A Incorporated ("Innisfree"). (Ex. A at 4-5).[1] On May 15, 2008, CSX submitted the Witness Statement of Alan Miller. (Ex. B ("Miller Stmt.")). CSX never designated Mr. Miller as an expert witness pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure ("Rule 26(a)(2)").

---

[1] Citations to "Ex. ___" refer to the Affirmation of David Momborquette in Support of Defendants' Motion in Limine to Strike Portions of the Witness Statement of Alan Miller, dated May 16, 2008 ("Momborquette Affirmation").

Mr. Miller is the Co-Chairman of Innisfree, a proxy solicitation and investor relations firm that specializes in, among other things, proxy contests. (Miller Stmt. ¶ 1). In February 2007, CSX retained Innisfree to provide consulting and analytical services, including proxy solicitation services in connection with CSX's 2007 Annual Shareholders Meeting. (*Id.* ¶ 3). In 2008, CSX again retained Innisfree for its upcoming 2008 Annual Shareholders Meeting. (*Id.*).

Although Mr. Miller is designated as a fact witness, his statement reads like an expert report, in which he states that he "began working in the proxy solicitation field in 1979" and that "[d]uring [his] approximately 30 years in the proxy solicitation business, [he has] participated in thousands of proxy solicitations." (*Id.* ¶ 2). He further states that he has "testified as an expert in the field of proxy solicitation and related matters on at least 4 occasions." (*Id.*). According to Ellen Fitzsimmons, CSX's General Counsel and Rule 30(b)(6) witness, "[Innisfree is] an expert in contested proxy contests and, therefore, their experience and views is [sic] not fairly characterized as pure speculation. It is fairly characterized as expert opinion." (Ex. C ("Fitzsimmons Dep.") at 210:6-10).[2]

Mr. Miller states that he conducted an analysis of CSX's shareholder base using "participant lists maintained by the Depository Trust Company ("DTC"), a central certificate depository, that records positions resulting from trading activity in CSX stock" and "a top-down analysis of information from the DTC lists and knowledge and experience gained over the last thirty years." (Miller Stmt. ¶ 5). Mr. Miller states that on March 14, 2008, he observed what he viewed as an "aberrant" movement of shares to "hedge fund positions" around the initial record date of February 27, 2008. (*Id.* ¶¶ 14-15). Based on this analysis, Mr. Miller recommended to

[2] Defendants do not concede that Mr. Miller is qualified as an expert witness under Rule 702 of the Federal Rules of Evidence.

the CSX Board of Directors that the record date and annual meeting date for the 2008 Annual Shareholders Meeting be moved. (*Id.* ¶¶ 31-32). As a result of his recommendation, CSX moved the record date to April 21, 2008, and rescheduled the 2008 Annual Shareholders Meeting to June 25, 2008. (*Id.* ¶ 33).

**ARGUMENT**

**I. Opinion Testimony Under Rule 701**

Rule 701 of the Federal Rules of Evidence ("Rule 701") provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Rule 701(a) "is the familiar requirement of first-hand knowledge or observation." *United States v. Glenn*, 312 F.3d 58, 67 (2d Cir. 2002).

Rule 701(b) "is designed to provide assurance against the admission of opinions which would merely tell the [finder of fact] what result to reach." *United States v. Gringe*, 390 F.3d 746, 749 (2d Cir. 2004). In *Gringe*, the Second Circuit held that interpretations of information based on hearsay go "beyond permissible lay testimony under Rule 701(b)" and is therefore inadmissible. *Id.* at 750-51; *see also Wantanabe Realty Corp. v. City of New York*, No. 01 Civ. 10137 (LAK), 2004 WL 188088, at *2 (S.D.N.Y. Feb. 2, 2008) ("[A]n expert may not act as a 'mere conduit' for the hearsay of another.").

Under Rule 701(c), the testimony of a witness who is not disclosed as an expert witness pursuant to Rule 26(a)(2) "is limited to those opinions or inferences which are . . . *not* based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c) (emphasis added). The Advisory Committee's Notes for Rule 701 make

clear that the purpose of the rule is "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory committee's note. Moreover, Rule 701 "ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 . . . by simply calling an expert witness in the guise of a layperson." *Id.* Accordingly, "any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 *and the corresponding disclosure requirements* of the Civil and Criminal Rules." *Id.* (emphasis added).

In *Bank of China, N.Y. Branch v. NBM LLC*, the District Court had allowed a fact witness to testify to the following: "(1) that certain transactions . . . did not comport with the business community's understanding of normal, true, trade transactions between a buyer and a seller; (2) the concept of a 'trust receipt,' and how it works in the context of an international commercial transaction; and (3) that it is considered fraud when an importer presents a trust receipt to a bank to obtain a loan knowing that there are no real goods involved." 359 F.3d 171, 180 (2d Cir. 2004). The Second Circuit held that such testimony was inadmissible under Rule 701(c) because "it was not based entirely on [the witness'] perceptions; the District Court abused its discretion to the extent it admitted the testimony based on [the witness'] *experience and specialized knowledge* in international banking." *Id.* at 181 (emphasis added). While the witness in *Bank of China* had some first-hand knowledge based on his investigation of the matter, "to the extent [the witness'] testimony was not the product of his extensive experience in international banking, its admission pursuant to Rule 701 was error." *Id.* at 182. Although the witness' opinions *could* have been admissible as expert testimony, "before such testimony could have been proffered pursuant to Rule 702, [the party proffering the witness] was obligated to satisfy

the reliability requirements set forth in that Rule, and disclose [the witness] as an expert pursuant to Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure." *Id. See also Wechsler v. Hunt Health Systems, Ltd.*, 198 F. Supp. 2d 508, 529 (S.D.N.Y. 2002) (striking portion of an affidavit that was "clearly an opinion based upon [the affiant's] expert knowledge where the affiant was not disclosed as an expert witness pursuant to Rule 26(a)(2)).

## II. Inadmissible Statements

Here, CSX seeks to introduce the Witness Statement of Alan Miller, who was designated as a *fact* witness pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, not as an *expert* witness pursuant to Rule 26(a)(2). Mr. Miller's Witness Statement is replete with his expert opinions purportedly based on his nearly 30 years of experience in, and specialized knowledge of, the securities industry. While Mr. Miller may qualify as an expert under Rule 702, because he was not disclosed as an expert witness pursuant to Rule 26(a)(2), his Witness Statement cannot include any opinions based on his purported experience and specialized knowledge. Moreover, his expert opinions are based on hearsay that is not being introduced as evidence pursuant to the business records exception to the hearsay rule. Accordingly, those portions of his Witness Statement that are based on hearsay, that consist of expert opinions, or that are not based on first-hand knowledge are inadmissible and therefore should be stricken.

### A. Statements Based on Hearsay

Mr. Miller's analyses of CSX's shareholder base is based on lists maintained by DTC. Such lists are hearsay under Rule 801(c) of the Federal Rules of Evidence. Although the DTC lists may be admissible as business records under Rule 803(6), CSX does not seek to introduce the DTC lists as evidence and, in any event, Mr. Miller, who is not a custodian of DTC records, would not be qualified to lay the foundation for CSX to introduce the DTC lists into

evidence. Because Mr. Miller's analyses of CSX's shareholder base and the movement of CSX shares around the original record date are based on inadmissible hearsay, under Rule 701(b), he cannot testify to his interpretations of the DTC lists. Accordingly, his analyses of CSX's shareholder base are inadmissible.

**B. Statements Regarding Market Practice**

In addition, as a fact witness, Mr. Miller may not give expert opinions under Rule 701(c). Testimony as to market practice is the province of expert witnesses, not fact witnesses. *See, e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *SEC v. U.S. Envtl., Inc.*, No. 94 Civ. 6608 (PKL)(AJP), 2002 WL 31323832, at *3 (S.D.N.Y. Oct. 16, 2002); *Shred-IT USA, Inc. v. Confidential Shredding, LLC*, No. CV 03-1816 (ERK)(MDG), 2005 WL 2290448, at *2 (E.D.N.Y. Sept. 20, 2005) (rejecting the argument that proposed witnesses were fact witnesses not subject to Rule 26(a)(2) because the "proposed testimony regarding the development of the document destruction industry and its practices constitutes expert testimony under Rule 702"). Accordingly, as a fact witness who was not disclosed as an expert witness, Mr. Miller may not give statements as to market practice in the securities industry.

1. Statements Regarding the Impact of Hedge Fund Ownership

Mr. Miller states that his analysis of CSX's shareholder base found increased hedge fund ownership in CSX during 2006 and 2007. (Miller Stmt. ¶ 6). Based on this analysis, he impermissibly opines:

> *Based on my experience*, increasing hedge fund activity in a company's stock is a concern because such accumulation can lead to volatility and destabilization of a company's shareholder base. This is due, in part, to the fact that hedge funds are typically short-term investors. The concern with hedge fund accumulation of stock is exacerbated when such funds amass significant portions of their holdings in the company through complex swap or other derivative arrangements.

(*Id.* ¶ 9) (emphasis added).

These statements regarding Mr. Miller's findings of increased hedge fund ownership, which Mr. Miller admits is based on his purported experience and specialized knowledge, are plainly inadmissible expert opinions of a fact witness under Rule 701(c).

2. Statements Regarding Market Practice of Swap Counterparty Banks

Much of Mr. Miller's Witness Statement provides his understanding of how swap agreements work and the market practice of swap counterparty banks. For instance, Mr. Miller states that such banks "invariably acquire the number of shares specified in the swaps to hedge the risk that the value of shares will go up and the bank will have to pay the value of that increase to the other party." (Miller Stmt. ¶ 10). In addition, he states that "hedge funds frequently influence the voting of shares held by their counterparties in connection with swap arrangements" and that "counterparties to swap arrangements frequently vote such shares in a manner specified by the hedge funds." (*Id.* ¶ 24). Mr. Miller also states that swap counterparty banks "make extra money by loaning such shares out to short-sellers," and that "banks can recall the shares when needed." (*Id.* ¶ 26). According to Mr. Miller, "[*i*]*n my experience*, there is typically no economic motivation to seek the return of loaned shares prior to the record date." (*Id.*).

Mr. Miller's statements as to these purported market practices is plainly based on his experience and specialized knowledge and is therefore the province of expert witnesses. Accordingly, such statements from a fact witness are inadmissible under Rule 701(c).

**C. Statements Regarding the Movement of Shares Before the Record Date**

In his Witness Statement, Mr. Miller states that during the period immediately preceding CSX's original record date of February 27, 2007, his analysis of CSX's shareholder base showed a "dramatic and aberrant movement of CSX shares to brokers who are primarily

custodians for hedge funds . . . , and away from long-term investors such as index funds." (Miller Stmt. ¶¶ 15-16). From this analysis, Mr. Miller impermissibly opines:

> [T]his unprecedented movement and concentration of shares . . . likely rendered a fair proxy contest impermissible because of the movement of shares away from positions held by long-term investors to positions held by custodians for hedge funds. I reached this conclusion based on my significant concern that, *based on my experience*, the counterparties to swap arrangements with the hedge funds were likely to vote the shares they held as directed by the hedge funds, as is frequently the case.
>
> *In my experience*, the movement of shares to brokers aligned with hedge fund interests was unprecedented in both magnitude and concentration and could not be explained by normal share movements. That caused me to believe that the movements resulted from undisclosed voting arrangements and strongly suggested a coordinated effort to put in place for the record date tens of millions of CSX shares that could be voted consistent with the wishes of TCI and other hedge fund interests.

(*Id.* ¶¶ 22-23) (emphasis added).

Mr. Miller also speculates that "when [he] observed what *appeared to be* the return of very large numbers of loaned shares to the counterparties prior to the CSX record date, that reinforced [his] *concern* that undisclosed arrangements as to the voting of those shares were in place." (Miller Stmt. ¶ 26) (emphasis added). He goes on to state that information he received from DTC, "reinforc[ed] [my] *belief* that a significant portion of the movements were the result of lending activity and not normal trading." (*Id.*) (emphasis added). He further speculates that "brokers that primarily service hedge funds were recalling loans and/or borrowing shares for the purpose of increasing the number of shares that could be voted consistent with hedge fund interests" and that the CSX shareholders' franchise "was being surreptitiously acquired by entities at a fraction of the cost those entities would have had to pay to actually acquire those shares outright." (*Id.* ¶ 28). According to Mr. Miller, "*Based on my experience,* it is *unlikely* that the aberrant movement of shares around the record date was caused by something

other than the undisclosed voting arrangements between hedge funds and the counterparties to the swap agreements." (*Id.* ¶ 29) (emphasis added).

Finally, although CSX's dividend date of February 29, 2008 is the most likely explanation for the movement of shares, Mr. Miller states: "I *believe* it is very unlikely that the dividend date explains all of the movement we saw" because such movement "exceeded the movement we would *expect* to see around a dividend date." (*Id.* ¶ 30) (emphasis added). Mr. Miller states that his analysis of the movement of CSX stock around other record dates "confirmed [his] *belief* that a significant part of the movement was not the result of the dividend date." (*Id.*) (emphasis added).

Mr. Miller's statements regarding the movement of shares are impermissible expert opinions. Mr. Miller states that his analysis of the movement of shares around the record date is based on his purported "*knowledge and experience gained over the last thirty years*." (*Id.* ¶ 5) (emphasis added). Mr. Miller's opinions as to whether the movement of shares is "unprecedented" or "normal," how swap counterparties are "likely" to vote, and the "likely" fairness of the proxy contest, as well as his inference that the movement of shares might be due to "undisclosed arrangements" between TCI and its counterparties and his "belief" that the movement of shares cannot be explained by CSX's dividend date are all based his purported "experience" and specialized knowledge, not his first-hand knowledge. Accordingly, these statements are plainly inadmissible expert opinions as to which Mr. Miller, a *fact* witness, cannot under Rule 701(c).

Finally, much of Mr. Miller's statements are highly speculative. Mr. Miller admits that he has no first-hand knowledge of why the shares moved, nor does he have first-hand knowledge of how -- or whether -- TCI's swap counterparties will vote in CSX's proxy contest.

Mr. Miller also has no first-hand knowledge of "what appeared to be" the recall of loaned CSX shares, nor does he have first-hand knowledge of "undisclosed arrangements" or "surreptitious[]" acquisitions of CSX shares. According to CSX's own Rule 30(b)(6) witness, "Innisfree provided *speculation* about share movements that might be related to swap arrangements." (Fitzsimmons Dep. at 47:10-12) (emphasis added). Mr. Miller's statements based on speculation and conjecture are inadmissible under Rule 702.

**CONCLUSION**

For the reasons set forth above, those portions of Mr. Miller's Witness Statement that are based on inadmissible hearsay, based on his purported experience and specialized knowledge in the securities industry, or not based on his first-hand knowledge are inadmissible. Accordingly, Mr. Miller's entire Witness Statement should be stricken, except portions of paragraphs 1, 3, and 31 through 33. Paragraphs 31 and 33 should be admitted, not for the truth of the matter asserted, but rather as evidence of what he told the CSX Board. For the Court's convenience, a Proposed Witness Statement of Alan Miller is attached as Exhibit D to the Momborquette Affirmation.

Dated: New York, New York
May 19, 2008

SCHULTE ROTH & ZABEL LLP

By: /s/ Howard O. Godnick

Howard O. Godnick
Michael E. Swartz
David K. Momborquette
Michael Kwon

919 Third Avenue
New York, New York 10022
howard.godnick@srz.com
(212) 756-2000 (telephone)
(212) 593-5955 (facsimile)

*Attorneys for Defendants The Children's Investment Fund Management (UK) LLP, The Children's Investment Fund Management (Cayman) Ltd., The Children's Investment Master Fund, Christopher Hohn, and Snehal Amin*