UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CSX CORPORATION,

                                        Plaintiff,

      v.

THE CHILDREN'S INVESTMENT FUND
MANAGEMENT (UK) LLP, THE CHILDREN'S
INVESTMENT FUND MANAGEMENT
(CAYMAN) LTD., THE CHILDREN'S
INVESTMENT MASTER FUND, 3G CAPITAL
PARTNERS LTD., 3G CAPITAL PARTNERS,
L.P., 3G FUND, L.P., CHRISTOPHER HOHN,
SNEHAL AMIN AND ALEXANDRE
BEHRING, A/K/A ALEXANDRE BEHRING
COSTA,

                                        Defendants.

THE CHILDREN'S INVESTMENT MASTER
FUND,

                              Counterclaim and Third-
                              Party Plaintiff,

      v.

CSX CORPORATION AND MICHAEL WARD,

                              Counterclaim and Third-
                              Party Defendants.

3G CAPITAL PARTNERS LTD., 3G CAPITAL
PARTNERS, L.P. AND 3G FUND, L.P.

                              Counterclaim Plaintiffs,

      v.

CSX CORPORATION AND MICHAEL WARD,

                              Counterclaim Defendants.

ECF Case

08 Civ. 02764 (LAK) (KNF)

**CSX'S OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE*
TO STRIKE PORTIONS OF THE
WITNESS STATEMENT OF
ALAN MILLER**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ...............................................................................................................1

ARGUMENT.......................................................................................................................1

    I.    MR. MILLER'S STATEMENTS REGARDING SHARE MOVEMENT SHOULD NOT BE PRECLUDED. .........................................................................1

        A.    Mr. Miller's Share Movement Testimony is Admissible Under Federal Rule of Evidence 701.......................................................................1

        B.    Defendants' Hearsay Objections Are Without Merit.................................5

    II.    MR. MILLER'S STATEMENTS REGARDING MARKET PRACTICE SHOULD NOT BE PRECLUDED. .........................................................................8

CONCLUSION....................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338 (Fed. Cir. 1999)..................6

*Bank of Brussels Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34 (S.D.N.Y. 1997) ..................3

*Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004) ..................3, 10

*Fournier v. Erickson*, 242 F. Supp. 2d 318 (S.D.N.Y. 2003) ..................7

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, Civ. A. Nos. 05-302, -304, 2007 WL 1601518 (D.Vt. June 4, 2007) ..................7

*In re Ollag Contstr. Equip. Corp*, 665 F.2d 43 (2d Cir. 1981) ..................6

*In re Perry H. Kpolik & Sons, Inc.*, 382 B.R. 599 (Bankr. S.D.N.Y. 2008)..................3

*S.E.C. v. Competitive Tech., Inc.*, Civ. A. No. 04-1331 (JCH), 2006 WL 3346210 (D.Conn. Nov. 6, 2006) ..................7

*S.E.C. v. Treadway*, 438 F. Supp. 2d 218 (S.D.N.Y. 2006)..................4

*Semi-Tech Litig. LLC v. Bankers Trust Co.*, 219 F.R.D. 324 (S.D.N.Y. 2004)..................10

*United States v. David*, 96 F.3d 1477 (D.C. Cir. 1996) ..................6

*United States v. Finkelstein*, 718 F. Supp. 1187 (S.D.N.Y. 1989)..................8

*United States v. Jakobetz*, 955 F.2d 786 (2d Cir. 1992) ..................5

*United States v. McIntyre*, 997 F.2d 687 (10th Cir. 1993)..................6

*United States v. Sokolow*, 91 F.3d 396 (3d Cir. 1996)..................6

*Wantanabe Realty Corp. v. City of New York*, No. 01 Civ. 10137, 2004 WL 188088 (S.D.N.Y. Jan. 28, 2004)..................10

**STATUTES & RULES**

Fed. R. Civ. P. 26(a)(2)(A)……………………………………………………………….9, 10

Fed. R. Civ. P. 26(a)(2)(B)……………………………………………………………………10

Fed. R. Civ. P. 37(e)………………………………………………………………...............10

Fed. R. Evid. 701 ...................................................................................................1, 2, 3, 5

Fed. R. Evid 803(6).................................................................................................1, 5, 6, 7

Fed. R. Evid 803(17)....................................................................................................1, 6, 7

# INTRODUCTION

Defendants' Motion *in Limine* to Strike Portions of the Witness Statement of Alan Miller should be denied.

*First*, Mr. Miller's statements regarding share movement should not be excluded. His statements relating to share movement are not expert testimony; they are the result of his contemporaneous participation in the events at issue during his service as CSX's proxy consultant. Defendants' hearsay objection to this testimony is also without merit, because Mr. Miller's statements analyzing CSX's shareholder base are admissible under Federal Rules of Evidence 803(6) and 803(17).

*Second*, Mr. Miller's few statements regarding market practice should not be excluded. Defendants' technical challenge to portions of four paragraphs in Mr. Miller's Witness Statement, which provide context to the reasoning underpinning his advice to CSX, is without foundation. In any event, the harsh sanction of exclusion would be inappropriate. Mr. Miller was timely disclosed as a trial witness, Defendants received document discovery on the subject of his Witness Statement, and Defendants took his deposition on the subject of his Witness Statement. Defendants have not, and cannot, articulate any prejudice.

# ARGUMENT

I. **MR. MILLER'S STATEMENTS REGARDING SHARE MOVEMENT SHOULD NOT BE PRECLUDED.**

   A. **Mr. Miller's Share Movement Testimony is Admissible Under Federal Rule of Evidence 701.**

Defendants seek to preclude Mr. Miller from recounting Innisfree's contemporaneous investigations into CSX share movements — undertaken in the first half of 2007 and again in February 2008 — based on a theory that such statements are

impermissible "expert" testimony. *See* Miller Mot. at 7-10.  Mr. Miller is certainly a skilled professional, but this does not prevent him from offering probative testimony as a fact witness regarding his *perception of* and *participation in* events during his service as a proxy consultant and advisor to CSX.  By dismissing Mr. Miller's testimony as "read[ing] like an expert report", Miller Mot. at 2, Defendants gloss over the reality that the vast majority of his Statement is ordinary fact testimony directly relating to his participation in the events at issue and rebutting their pending claim that "CSX brought this lawsuit for the purpose of entrenching itself and stifling the voices of any dissenters", JPTO § 4, at 83.  The testimony provided by Mr. Miller is not only relevant to the dispute before this Court, but also admissible pursuant Federal Rule of Evidence 701.

Mr. Miller is a principal of Innisfree, which was "retained by CSX in February 2007 to provide consulting and analytical services, including proxy solicitation services in connection with CSX's 2007 Annual Meeting" and its "2008 proxy contest".  Momborquette Aff., Ex. B ("Miller Witness Statement") ¶ 3.  He was never asked to do any analysis for litigation.  Instead, his Witness Statement relays what he did at the time, what he thought at the time, and why.  It addresses (1) the results of Innisfree's February-May 2007 "initial analysis" of the "holdings of TCI and 3G", *id.* ¶¶ 8-11; (2) the conclusions reached by Innisfree's February 2008 investigation into CSX share movements, *id.* ¶¶ 14-30; and (3) how those findings impacted the contemporaneous advice provided by Mr. Miller to the CSX board, *see id.* ¶ 22 ("I further advised [CSX's general counsel that the analyzed movement of shares] likely rendered a fair proxy contest impossible"); *id.* ¶ 31 ("At the March 14, 2008 board meeting, I advised the CSX board of what I viewed as the aberrant movement of shares before the record date . . . .").

Individuals who are otherwise experts in their fields are often called on to provide fact and lay opinion testimony. *See, e.g.*, *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004); *Bank of Brussels Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34 (S.D.N.Y. 1997). Defendants expend significant effort laying forth the facts and reasoning of the Second Circuit in *Bank of China* only to misconstrue the court's findings. There, the court emphasized that "so long as the [witness's] testimony was based on the investigation [he was hired to conduct] and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise in international banking", it satisfies the requirements of Rule 701. *Bank of China*, 359 F.3d at 181. Under the rule recognized by *Bank of China*, "to the extent [Mr. Miller's] testimony [i]s grounded in the investigation he undertook in his role as a[n] [Innisfree] employee", it is "admissible pursuant to [Rule 701] because it [i]s based on his *perceptions*". *Id.* (emphasis in original)). Because Mr. Miller's perceptions do not originate in an after-the-fact investigation, but instead are directly derived from his personal experiences working for CSX during the events at issue, they are permissible lay witness testimony under the *Bank of China* standard.[1]

Defendants ignore this rule in their improper effort to sterilize Mr. Miller's Witness Statement. They seek to strip out the context and background that is essential to understanding the advice Mr. Miller provided at the time to CSX, and why he provided that advice. A review of his Witness Statement undermines their claims:

---

[1] *See In re Perry H. Kpolik & Sons, Inc.*, 382 B.R. 599, 603 (Bankr. S.D.N.Y. 2008) (permitting lay opinion testimony reflecting perceptions relating to "*what happened* (including, *inter alia*, what the defendants *did*) -- even if [the witness] was aided in forming his perceptions by" his training and experience)) (emphasis in original).

- 3 -

- ¶¶ 1-2 introduce Mr. Miller and his background;

- ¶¶ 3-4 provide the relevant details regarding Innisfree's retention by CSX to provide proxy solicitation and consulting services;

- ¶¶ 5-8 describe how Innisfree did work for CSX and the results of its work in early 2007;

- ¶¶ 9-10 provide background on factors Mr. Miller and Innisfree considered in the course of performing work for CSX;

- ¶¶ 11-13 describe the contemporaneous analysis provided by Innisfree to CSX regarding the holdings of TCI and 3G during February-May 2007 and February 2008;

- ¶¶ 14-30 detail the conclusions that Innisfree drew from its February 2008 analysis, what Mr. Miller told the CSX board and its counsel during March 2008, why he communicated that advice, and how he offered that advice;

- ¶¶ 31-33 describe Mr. Miller's communications with the CSX board and detail the board's reaction thereto; and

- ¶ 34 describes Innisfree's work with respect to movements of shares after the February 27, 2008 record date, what contemporaneous advice Mr. Miller provided to CSX as a result of that work, and why Mr. Miller made those determinations.

This testimony is not "expert opinion". It is a factual account of the information he contemporaneously communicated to the CSX board as a business advisor and why that information was communicated. *See S.E.C. v. Treadway*, 438 F. Supp. 2d 218, 225 (S.D.N.Y. 2006) (admitting factual testimony regarding events at issue based on "personal knowledge and understanding of [technical] policy" gained through the witness's position). It is the result of Mr. Miller's first-hand participation in and

perceptions of the events at issue as they occurred. This fact testimony is properly admissible under Rule 701.[2]

### B.     Defendants' Hearsay Objections Are Without Merit.

Defendants also claim that Mr. Miller "cannot testify as to his interpretations" of CSX share movements or discuss Innisfree's "analyses" of "lists maintained by DTC" because "CSX does not seek to introduce the DTC lists as evidence". *See* Miller Mot. at 5-6. This hearsay-based argument fails for three reasons.

*First*, CSX has identified Innisfree's "weekly reports" to CSX "[b]etween February and May 2007" as trial exhibits, and those reports are admissible under Federal Rule of Evidence 803(6) as business records. *See* Miller Stmt. ¶ 12 (noting that "Innisfree's weekly snapshots have been marked as PX 189"); *see generally* Miller Dep. at 34-52; *see id.* at 51 ("This is work we would have been doing—in the ordinary course.").[3] Courts have repeatedly rejected Defendants' interpretation of the hearsay rule, and have not required that the underlying bases of business records such as the DTC lists be admitted (or admissible). For instance, the Second Circuit has held that, "[e]ven if a document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity." *See United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992) (citation omitted). The Third and D.C. Circuits have found that, even if business records were derived in part from

---

[2] Though factually wrong, Defendants' argument that "much of Mr. Miller's statements are highly speculative" also fails to justify preclusion. Miller Mot. at 9. Mr. Miller will be appearing at trial. To the extent that Defendants wish to challenge the allegedly "speculative" nature of the advice provided by Innisfree to CSX, the proper method is cross-examination — not a throw-away line at the end of a motion.

[3] Relevant excerpts of the Miller Deposition are attached as Exhibit 1 to the Declaration of Gary A. Bornstein in Opposition to Defendants' Motion *In Limine* to Strike Portions of the Witness Statement of Alan Miller, dated May 22, 2008, submitted herewith.

information provided by outside persons not under a business compulsion, the business records exception still applies "[i]f the business has adequate verification or other assurance of accuracy of the information provided by the outside person". *United States v. Sokolow*, 91 F.3d 396, 403-04 (3d Cir. 1996); *United States v. David*, 96 F.3d 1477, 1481-82 (D.C. Cir. 1996) (similar). That is particularly true where, as here, "the interests of the business [are] such that there exists a sufficient self-interest in the accuracy of the [information] that we can find its contents to be trustworthy". *United States v. McIntyre*, 997 F.2d 687, 700 (10th Cir. 1993); *see In re Ollag Contstr. Equip. Corp*, 665 F.2d 43, 46 (2d Cir. 1981) (admitting business record because of "guaranties of trustworthiness" of underlying information).[4] Here, because it was Innisfree's regular practice to obtain, integrate, and rely upon the shareholder data provided by DTC, *see* Miller Witness Stmt. ¶ 5; Miller Dep. at 38:11-21, 41:12-21, both the weekly reports and Mr. Miller's testimony based on those reports are admissible.

*Second*, even if Defendants were correct that the DTC lists must be independently admissible for Mr. Miller to testify about his interpretations of them, those lists *are* independently admissible. Federal Rule of Evidence 803(17) provides that "[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations" are "not excluded by the hearsay rule". The DTC, a member of the Federal Reserve System, which settles the majority of securities transactions in the United States, is "a central

---

[4] The Federal Circuit has held that an "entire claims file was properly admitted under 803(6) as the 'business records' of the military", even though it incorporated "repair estimates produced by third parties" that could not meet Rule 803(6)'s requirements. *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1341-42 (Fed. Cir. 1999). The court reasoned "that the only foundation testimony necessary to establish the admissibility of these records is that it was the military's regular practice to obtain, integrate, and rely upon the estimates during the claims adjustment process". *Id.* at 1341.

certificate depository" that "records positions resulting from trading activity" in stock. Miller Witness Stmt. ¶ 5. "Its participants now include virtually all the banks and brokers that are custodians or shareholders of public companies." Miller Dep. at 41:12-21. Because the DTC's shareholder lists are made available to and generally used by industry participants, *see id.* at 38:11-21, 41:12-21, those lists qualify under the Rule 803(17) exception. *See, e.g.*, *S.E.C. v. Competitive Tech., Inc.*, Civ. A. No. 04-1331 (JCH), 2006 WL 3346210, at *2 (D.Conn. Nov. 6, 2006) (noting that a similar database, "the NYSE database", "would be admissible under Rule 803(17) as a market report"); *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, Civ. A. Nos. 05-302, -304, 2007 WL 1601518, at *2 (D.Vt. June 4, 2007) (noting that market data relating to automobiles would be "admissible under Rule 803(17)"). Moreover, to the extent that Innisfree's weekly reports summarize this Rule 803(17) information, those reports — and Mr. Miller's testimony — are permissible as well. *See Fournier v. Erickson*, 242 F. Supp. 2d 318, 338-39 (S.D.N.Y. 2003) (applying Federal Rules of Evidence 803(17) and 1006 to admit, without the supporting data, a "chart" that "summarizes information publicly available on the Internet web pages of the relevant publications").

*Third*, if it had any merit in the first place, Defendants' objection could easily be cured. The parties agree that "DTC lists may be admissible as business records under Rule 803(6)", Miller Mot. at 5-6, and Defendants have even identified such lists as a trial exhibit of their own, *see* DX 136. If Defendants were to insist on it, there would be no prejudice to Defendants from adding the relevant DTC information to CSX's exhibit list pursuant to the "good cause" exception in the Joint Pre-Trial Order. *See* JPTO § VI, at 97. Further, Part X of the Joint Pre-Trial Order reserves CSX's right to call at trial

"document custodians for exhibits as to which the parties cannot reach agreement as to authenticity and admissibility". *See id.* § X, at 98. If Defendants continue to contend that Mr. Miller "would not be qualified to lay the foundation for CSX to introduce the DTC lists into evidence", Miller Mot. at 5-6, CSX will offer an appropriate representative from DTC to authenticate the lists.

This exercise would be pointless and unwarranted. The information contained in the DTC lists was produced to Defendants in this litigation,[5] its accuracy was not challenged, and Defendants have not articulated — let alone established — any undue prejudice that they will suffer if the lists are credited or considered at trial. *See United States v. Finkelstein*, 718 F. Supp. 1187, 1194 (S.D.N.Y. 1989) (allowing party to submit underlying records as an exhibit on the eve of trial after being shared with opposing counsel given absence of prejudice).

## II.  MR. MILLER'S STATEMENTS REGARDING MARKET PRACTICE SHOULD NOT BE PRECLUDED.

Exclusion of Mr. Miller's few statements regarding market practice is also unwarranted. Defendants' motion attempts to preclude portions of four paragraphs of Mr. Miller's Witness Statement relating to the impact of hedge fund ownership, *see* Miller Mot. at 6-7 (attacking Miller Stmt. ¶ 9), and the market practice of swap

---

[5] The DTC lists that are the focus of Defendants' argument are entitled "One Time Security Position Reports" and contain each participant for which DTC acts as the depository that holds CSX shares on behalf of beneficial owners of a particular date. The columns in the report include: participant number, name, and quantity of shares held. The Innisfree weekly reports to CSX are based (in part) on the data from the DTC lists. In addition to the weekly reports, Innisfree's production also included three types of Innisfree documents replicating data from the DTC lists: (1) a screen shot that captured exactly the DTC list information as it appears to a normal viewer of DTC's Internet-based program, *see* INNIS8-000003723-3725; (2) Excel spreadsheets created by Innisfree where Innisfree reformatted the DTC list for a particular settlement data, *see, e.g.*, INNIS4-000002550-2552; and (3) Excel spreadsheets created by Innisfree where Innisfree reformatted DTC lists for two or more settlement dates and compared across those dates, *see, e.g.*, INNIS4-000002615-2619.

counterparty banks, *see id.* at 7 (attacking Miller Stmt. ¶¶ 10, 24, 26),[6] on purely technical grounds. Specifically, Defendants assert that the challenged testimony must be stricken because although CSX timely disclosed Mr. Miller as a *trial* witness, he was not technically disclosed as an *expert* under Rule 26(a)(2)(A). *See id.* at 6.

This narrow challenge should be rejected because Defendants have not articulated — and cannot establish — any prejudice from the inclusion of the challenged portions of the four paragraphs. Mr. Miller is not a "surprise" witness; CSX timely disclosed him as a trial witness on April 18, 2008. *See* Momborquette Aff., Ex. A ("Second Amended Initial Disclosures of CSX and Michael Ward") at 4. All relevant documents relating to the investigations undertaken by Mr. Miller and Innisfree were produced to Defendants in a timely fashion. The subject of Mr. Miller's Statement was also not a surprise. Defendants deposed Mr. Miller on May 5, 2008, during which time they questioned him on every relevant topic addressed in the witness statement at issue here.[7]

Absent any prejudice, preclusion would be unwarranted *even if* Defendants' technical argument regarding Rule 26(a)(2)(A) was substantiated. As noted

---

[6] Other portions of these paragraphs plainly relate to Mr. Miller's state of mind at the time and contemporaneous actions that he and Innisfree took. *See, e.g.*, Miller Stmt. ¶ 24 (explaining what "the dramatic movement of shares into the hands of TCI counterparties before the February 27, 2008 record date suggested to me"); ¶ 26 ("we confirmed that the movement of shares within DTC in the days preceding the record date significantly exceeded the reported trading volume").

[7] *See, e.g.*, 17:22-24 (the type of work Innisfree conducts), 18:14-15 (retention of Innisfree), 41:6-21 (Innisfree's use of DTC), 61:7-8 (the communication to CSX of his initial conclusions re: TCI/3G swaps), 63:8-10 (the basis of belief that counterparties vote with hedge-funds), 64:7-9 (content of Innisfree's initial analyses), 67:6-7 (snapshots reflect large stock movements), 68:3-4 (his view re: previous experience with large stock movements), 84:8-17 (his past experience with counterparties voting with hedge-funds), 91:22-24 (content of his contemporaneous opinion to the CSX board re: stock movement), 96:17-22 (CSX's reaction to his recommendation to change record date), 99:4-7 (his observation of significant lending activity before record date), 112:20-24 (discussion of the voting rights of banks), 128:11-25 (his recollection of the Clearchannel experience and views as to the risk aversion of banks)

by this Court, "the imposition of sanctions under" Rule 37(e) for a Rule 26(a) disclosure violation "is discretionary, and preclusion will be ordered only in rare cares". *Semi-Tech Litig. LLC v. Bankers Trust Co.*, 219 F.R.D. 324, 325 (S.D.N.Y. 2004). In determining whether to apply the rule, the Court "takes into account, among other things, (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, and (3) the presence or absence of bad faith or willfulness in failing to comply with the rule". *Wantanabe Realty Corp. v. City of New York*, No. 01 Civ. 10137, 2004 WL 188088 (S.D.N.Y. Jan. 28, 2004).

In any event, Defendants' Rule 26(a)(2)(A) argument is without merit. Mr. Miller's "market practice" statements provide nothing more than context and background relevant to the advice Mr. Miller provided at the time to CSX. They show (1) why Mr. Miller interpreted certain share movements in a specific way; (2) and how that interpretation led him to give particular guidance to CSX. As for other expert disclosure obligations, there is no dispute that Mr. Miller was not required to submit an expert report because he was not "retained or specially employed to provide expert testimony". Fed. R. Civ. P. 26(a)(2)(B); *see also Bank of China*, 359 F.3d at 182 n.13 (2d Cir. 2004) ("Where the witness is not specifically retained or employed to give expert testimony, or does not regularly give expert testimony in his or her capacity as an employee, no expert report is required."). Instead, his testimony relates to work he performed for CSX outside the context of litigation. *See supra* Argument Part I.A.

Defendants' exceedingly technical argument that CSX should have listed Mr. Miller as both a fact and expert witness, instead of just a fact witness, should be rejected.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion *in Limine* to Strike Portions of the Witness Statement of Alan Miller should be denied.

Dated: May 20, 2008
   New York, NY

Respectfully submitted,

**CRAVATH, SWAINE & MOORE LLP,**

by
 /s/ David R. Marriott
   Rory O. Millson
   Francis P. Barron
   David R. Marriott
   Members of the Firm

Attorneys for Plaintiff
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

RMillson@cravath.com
FBarron@cravath.com
DMarriott@cravath.com

**DEWEY PEGNO & KRAMARSKY LLP**
Keara A. Bergin
220 East 42nd Street
New York, NY 10017
(212) 943-9000
KBergin@dpklaw.com

**FRIEDMAN KAPLAN SEILER & ADELMAN LLP**
Lance J. Gotko
Paul J. Fishman
1633 Broadway
New York, NY 10019-6708
(212) 833-1100
LGotko@fklaw.com
PFishman@fklaw.com

*Attorneys for Plaintiff CSX*