UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CSX CORPORATION,<br><br>          Plaintiff,<br><br>  v.<br><br>THE CHILDREN'S INVESTMENT FUND MANAGEMENT (UK) LLP, THE CHILDREN'S INVESTMENT FUND MANAGEMENT (CAYMAN) LTD., THE CHILDREN'S INVESTMENT MASTER FUND, 3G CAPITAL PARTNERS LTD., 3G CAPITAL PARTNERS, L.P., 3G FUND, L.P., CHRISTOPHER HOHN, SNEHAL AMIN AND ALEXANDRE BEHRING, A/K/A ALEXANDRE BEHRING COSTA,<br><br>          Defendants. | ECF Case<br><br>08 Civ. 02764 (LAK) (KNF)<br><br>**CSX'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF PETER C. HARKINS** |
| THE CHILDREN'S INVESTMENT MASTER FUND,<br><br>  Counterclaim and Third-Party Plaintiff,<br><br>  v.<br><br>CSX CORPORATION AND MICHAEL WARD,<br><br>  Counterclaim and Third-Party Defendants. | |
| 3G CAPITAL PARTNERS LTD., 3G CAPITAL PARTNERS, L.P. AND 3G FUND, L.P.<br><br>  Counterclaim and Third-Party Plaintiffs,<br><br>  v.<br><br>CSX CORPORATION AND MICHAEL WARD,<br><br>  Counterclaim and Third-Party Defendants. | |

Seven days before trial, in violation of the parties' agreements and without the disclosures required by the Federal Rules, Defendants TCI and 3G submitted a surprise expert witness statement. The proffered expert, Peter C. Harkins, was not identified as a trial witness until long after the required deadline. To this day, Harkins has not submitted an expert report, and Defendants have not produced all the documents underlying the analysis that Harkins conducted specifically for the purpose of this litigation. Accordingly, CSX moves to exclude Harkins's expert testimony.

**BACKGROUND**

In his proposed witness statement, Harkins states that he and others from his firm, D.F. King & Co., Inc., undertook a set of analyses "[i]n connection with this litigation". Ex. 1 (Witness Statement of Peter C. Harkins) ("Harkins Witness Statement"), ¶ 7.[1] In particular, Harkins and unnamed others "examined the movement of [CSX] shares" during the beginning of 2008 and "studied the month-to-month movement of shares" on various dates in 2007. *Id.* Having performed these "examin[ations]" and "studie[s]" for purposes of this litigation, Harkins then draws conclusions and offers opinions based on "[his] experience" in the proxy solicitation industry. *Id.* ¶ 8. For example, he opines on whether certain share movements were "out of line" with other share movements and what types of share movements would be "consistent with [his] experience . . . for companies the size of CSX under similar circumstances". *Id.* ¶ 8. Harkins also opines on whether it would be "unusual" to see

---

[1] Citations to "Ex. __" refer to the exhibits to the Declaration of David R. Marriott in Support of CSX's Motion to Exclude the Testimony of Peter C. Harkins, dated May 20, 2008.

share movements of the type he observed here and whether it is possible to determine the reasons for those movements.  *Id.* ¶ 9.

Although styled as the direct testimony of a fact witness, the Harkins Witness Statement brings Harkins's "specialized knowledge" as a proxy solicitor to bear in offering "opinion[s]" on a variety of subjects, Fed. R. Evid. 702, that "can be mastered only by specialists in the field", *id.* Rule 701 (Advisory Committee Notes, 2000 Amendments).  It thus constitutes expert testimony.  Because Defendants offered it belatedly on the eve of trial and without the required disclosures, it should be excluded.

*First*, Defendants did not timely identify Harkins as a trial witness, much less as an expert witness.  Pursuant to agreement, the parties disclosed the identity of their fact witnesses on April 18, 2008 and their expert witnesses on April 21, 2008.  The identity of rebuttal expert witnesses was on disclosed on May 2, 2008.  Defendants did not identify Harkins as a fact or expert witness by these agreed deadlines.  Nor did Defendants list Harkins as a person with discoverable information in their initial disclosures under Federal Rule 26(a)(1).  The first time Defendants mentioned Harkins as a possible trial witness was in an e-mail on May 9, 2008.  CSX objected at the time by response e-mail, and Defendants did offer any explanation for their belated identification of Harkins.  *See* Ex. 2.

Although CSX took Harkins's deposition on May 7, 2008, CSX did not have the opportunity to depose him on the "examin[ations]" and "studie[s]" that are the substance of his witness statement.  For one thing, he was deposed prior to his identification as a trial witness, pursuant to a subpoena that CSX served on D.F. King, for which Harkins was identified as a Rule 30(b)(6) witness.  More fundamentally, CSX was

not informed that Harkins's "examin[ations]" and "studie[s]" even existed until receiving his witness statement on May 14, 2008—one week *after* his deposition.[2] Defendants' failure to disclose Harkins as a trial witness, has prejudiced CSX's ability to prepare for cross-examination at trial.

*Second*, Defendants have not served an expert report from Harkins. Pursuant to the parties' agreement, primary expert reports were served on May 8, 2008, and rebuttal expert reports on May 14, 2008. Both dates passed without any report from Harkins. Even now, Harkins has not submitted an expert report that complies with Federal Rule 26(a)(2)(B). Nor have Defendants adequately produced the documents underlying the "examin[ations]" and "studie[s]" described in the Harkins Witness Statement.[3]

Rule 26(a)(2)(B) requires the submission of an expert report from a witness such as Harkins who was "retained or specially employed to provide expert testimony in the case". Where a witness was retained to perform an analysis "in preparation of litigation", "examined [issues] in his role" relating to the litigation, and

---

[2] Further, the scope of that deposition was improperly restricted by counsel's instructions to the witness. Defendants took the position that all communications that Harkins or D.F. King had with TCI, 3G or their counsel were privileged. Although CSX was permitted to ask questions about D.F. King's communications with Defendants or with their counsel, Harkins was instructed not to answer any question relating to communications D.F. King had with Defendants and their counsel together. *See* Ex. 3 at 37-40.

[3] Defendants have produced certain DTC lists, *see* DX 136, and a one-page spreadsheet purporting to show information Harkins derived from those lists, *see* DX 135, but they have not produced the remainder of the materials on which he relied in forming his opinions, including "SEC filings", "listings of the company's record holders of securities", and "listings of the company's non-objecting beneficial owners of securities", Ex. 1, ¶ 4. Nor have they produced documents reflecting the substance of Harkins's analysis or the manner in which he reached his conclusions.

"brought his technical expertise to bear in . . . offering his opinion based on those examinations", that witness is an expert under Rule 26.  *Agron v. Trustees of Columbia Univ.*, 176 F.R.D. 445, 448 (S.D.N.Y. 1997).  In distinguishing between ordinary fact witnesses and expert witnesses for purposes of Rule 26, courts have found that "'the relevant distinction is not between fact and opinion testimony but between those witnesses whose information was obtained in the normal course of business and those who were hired to make an evaluation in connection with . . . litigation'".  *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34, 43 (S.D.N.Y. 1997) (applying Fed. R. Civ. P. 26(b)(4)(B)) (quoting *Chiquita Int'l Ltd. v. M/V Bolero Reefer*, 1994 WL 177785, at *1 (S.D.N.Y. May 6, 1994)).

  Harkins admits that the "examin[ations]" and "studie[s]" on which he opines were done "[i]n connection with this litigation".  Ex. 1, ¶ 7.  Although Harkins and his firm were retained by TCI and its counsel before this litigation was filed, *see id.* ¶ 1, Harkins does not testify about any facts learned in connection with his work in the ordinary course of business.  Aside from general background, *see id.* ¶¶ 1-6, his witness statement is limited to the opinions he formed as a result of his litigation-driven analyses, *see id.* ¶¶ 7-9.  As a result, Harkins was required to submit an expert report.  *See Peck v. Hudson City School Dist.*, 100 F. Supp. 2d 118, 121 (N.D.N.Y. 2000) ("when [an expert's] opinion testimony extends beyond the facts disclosed during [the ordinary course of business] and the [expert] is specifically retained to develop opinion testimony, he or she is subject to the provisions of Rule 26(a)(2)(B)").  Defendants were also required to produce all the documents underlying Harkins's "examin[ations]" and

4

"studie[s]". *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) (requiring disclosure of "the data or other information considered by the [expert] witness in forming" his opinions).[4]

Defendants' last-minute effort to introduce Harkins's testimony, without having identified him as a witness and without providing an expert report and the underlying documents, is improper and requires exclusion. Under Federal Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial". This Rule provides a "self-executing sanction" that is "automatic absent a determination of either substantial justification or harmlessness". *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 634 (S.D.N.Y. 2005) (internal quotations omitted). "The burden to prove substantial justification or harmlessness rests with the dilatory party." *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002).

Although there is a "discretionary" element to Rule 37(c)(1)'s "self-executing sanction", *Semi-Tech Litig. LLC v. Bankers Trust Co.*, 219 F.R.D. 324, 325 (S.D.N.Y. 2004), preclusion is warranted here. This Court has previously found that Rule 26(a)(2) disclosure obligations regarding expert testimony were not satisfied even when expert reports *were* produced "on or shortly before the date set for completion of all discovery". *Semi-Tech Litig.*, 219 F.R.D. at 325. The Court conditionally excluded the expert testimony in that case, unless the party offering the experts made them available

---

[4] In addition, those documents were called for by Request No. 1 of the subpoena that CSX served on D.F. King. *See* Ex. 4, Schedule B, ¶ 1 (calling for production of documents "relating or referring to the ownership of CSX"). D.F. King did not produce the documents underlying Harkins's work.

for deposition by a date certain, but noted that "[i]n future cases, the Court will take into account the publication of this decision in determining whether to preclude testimony by experts in similar circumstances. It is unlikely to be as charitable again." *Id.* The facts here present an even stronger case for exclusion than did *Semi-Tech*, where the party seeking to introduce expert testimony submitted expert reports late. Defendants here have not submitted any expert report for Harkins at all, they have not produced the documents underlying Harkins's analyses, and they have not provided any explanation for their failure to do so. Nor have they explained their failure timely to disclose Harkins as a witness.

        Admitting Harkins's expert testimony at trial would prejudice CSX by forcing it to respond without a fair opportunity to examine the bases for his eleventh-hour expert opinion. For example, CSX does not know what methodologies Harkins and D.F. King used to "examine[]" and "stud[y]" share movements. Ex. 1, ¶ 7. CSX does not know what benchmarks Harkins applied to determine whether those movements were "unusual". *Id.* ¶ 9. CSX does not know how Harkins drew conclusions as to whether those movements were "consistent with [his] experience", or even what that "experience" is. *Id.* ¶ 8. Nor has CSX had an opportunity to inquire into any of these issues. Harkins acknowledges that his work involves a "multitude of assumptions", *id.* ¶ 4, but CSX does not know, and has not had an opportunity to inquire into, what assumptions Harkins made in performing his analyses for this litigation.[5] With trial starting tomorrow, CSX is prejudiced in its ability to test the accuracy and reliability of Harkins's conclusions. The

---

[5] CSX's ability to cross-examine Harkins is further undermined by the inappropriate privilege instructions at his deposition. *See* Ex. 3 at 37-40.

automatic sanction provided by Rule 37(c) was designed to prevent this type of prejudice. *See Am. Stock Exch.*, 215 F.R.D. at 93 ("The purpose of [Rules 26 and 37(c)] is to avoid surprise or trial by ambush.").[6]

## CONCLUSION

For the reasons set forth above, CSX respectfully requests that this Court exclude the Harkins Witness Statement as well as Exhibits DX 135-36 referenced therein.

Dated: May 20, 2008
       New York, NY

Respectfully submitted,

**CRAVATH, SWAINE & MOORE LLP,**

by
  /s/ David R. Marriott
      Rory O. Millson
      Francis P. Barron
      David R. Marriott
      Members of the Firm

Attorneys for Plaintiff
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

RMillson@cravath.com
FBarron@cravath.com
DMarriott@cravath.com

---

[6] The Harkins Witness Statement also violates a stipulation the parties reached on May 18, 2008. Under that stipulation, no expert testimony may be submitted "in any form" beyond specified testimony from four identified individuals, which do not include Harkins. Stipulation and Proposed Order, dated May 18, 2008, ¶ 6.

**DEWEY PEGNO & KRAMARSKY LLP**
Keara A. Bergin
220 East 42nd Street
New York, NY 10017
(212) 943-9000
KBergin@dpklaw.com


**FRIEDMAN KAPLAN SEILER & ADELMAN LLP**
Lance J. Gotko
Paul J. Fishman
1633 Broadway
New York, NY 10019-6708
(212) 833-1100
LGotko@fklaw.com
PFishman@fklaw.com

*Attorneys for Plaintiff CSX*