UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CSX CORPORATION,

                                        Plaintiff,

                v.

THE CHILDREN'S INVESTMENT FUND
MANAGEMENT (UK) LLP, THE CHILDREN'S
INVESTMENT FUND MANAGEMENT
(CAYMAN) LTD., THE CHILDREN'S
INVESTMENT MASTER FUND, 3G CAPITAL
PARTNERS LTD.,  3G CAPITAL PARTNERS,
L.P., 3G FUND, L.P., CHRISTOPHER HOHN,
SNEHAL AMIN AND ALEXANDRE
BEHRING, A/K/A ALEXANDRE BEHRING
COSTA,

                                        Defendants.

THE CHILDREN'S INVESTMENT MASTER
FUND,

                Counterclaim and Third-Party Plaintiff,

                v.

CSX CORPORATION AND MICHAEL WARD,

                Counterclaim and Third-Party Defendants.

3G CAPITAL PARTNERS LTD., 3G CAPITAL
PARTNERS, L.P. AND 3G FUND, L.P.

                Counterclaim and Third-Party Plaintiffs,

                v.

CSX CORPORATION AND MICHAEL WARD,

                Counterclaim and Third-Party Defendants.

ECF Case

08 Civ. 02764 (LAK) (KNF)

**DECLARATION OF DAVID R.
MARRIOTT IN SUPPORT OF CSX'S
MOTION *IN LIMINE* TO EXCLUDE
THE TESTIMONY OF
PETER C. HARKINS**

I, David R. Marriott, an attorney duly admitted to practice before this Court, hereby declare the following to be true under penalties of perjury:

1.    I am a member of the firm of Cravath, Swaine & Moore LLP, attorneys for Plaintiff CSX Corporation, and I am familiar with the facts and circumstances set forth herein.  I respectfully submit this declaration in support of CSX's Motion *in Limine* to Exclude the Testimony of Peter C. Harkins.

2.    Attached hereto as Exhibit 1 is a true and correct copy of the Witness Statement of Peter C. Harkins, submitted May 14, 2008.

3.    Attached hereto as Exhibit 2 is a true and correct copy of an e-mail string dated May 9, 2008 between counsel for CSX and Defendants' counsel.

4.    Attached hereto as Exhibit 3 is a true and correct copy of excerpts of the deposition transcript of Peter C. Harkins, dated May 7, 2008.

5.    Attached hereto as Exhibit 4 is a true and correct copy of the Notice of Subpoena for Production of Documents and for Deposition Pursuant to Rule 30(b)(6) of D.F. King & Co., Inc., dated April 18, 2008.


Dated: May 20, 2008
        New York, New York

David R. Marriott

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

CSX CORPORATION,                                    :
                                                    :
                    Plaintiff,                      :
                                                    :
        v.                                          :
                                                    :
THE CHILDREN'S INVESTMENT FUND          :    ECF CASE
MANAGEMENT (UK) LLP, THE CHILDREN'S      :
INVESTMENT FUND MANAGEMENT               :    08 Civ. 02764 (LAK)(KNF)
(CAYMAN) LTD., THE CHILDREN'S            :    **WITNESS STATEMENT OF**
INVESTMENT MASTER FUND, 3G CAPITAL       :    **PETER C. HARKINS**
PARTNERS LTD., 3G CAPITAL PARTNERS, L.P., :
3G FUND, L.P., CHRISTOPHER HOHN, SNEHAL  :
AMIN, AND ALEXANDRE BEHRING, A/K/A        :
ALEXANDRE BEHRING COSTA,                 :
                                                    :
                                                    :
                    Defendants.                     :
------------------------------------------------------------------:
THE CHILDREN'S INVESTMENT MASTER        :
FUND,                                               :
                                                    :
                    Counterclaim and Third-         :
                    Party Plaintiff,                :
                                                    :
        v.                                          :
                                                    :
CSX CORPORATION AND MICHAEL WARD,       :
                                                    :
                    Counterclaim and Third-         :
                    Party Defendants.               :
------------------------------------------------------------------x
                                                    :
3G CAPITAL PARTNERS LTD., 3G CAPITAL    :
PARTNERS, L.P. AND 3G FUND, L.P.,        :
                                                    :
                    Counterclaim Plaintiffs,        :
                                                    :
        v.                                          :
                                                    :
CSX CORPORATION AND MICHAEL WARD,       :
                                                    :
                                                    :
                    Counterclaim Defendants.        :
------------------------------------------------------------------x

1.    I am not a party in the above-captioned action, and I am the president and chief executive officer of D. F. King & Co., Inc. ("D.F. King") in New York City.  D.F. King was retained by Schulte Roth & Zabel LLP, attorneys for The Children's Investment Fund Management (UK) LLP ("TCI") and TCI in the summer of 2007 in connection with TCI's investment in CSX.

2.    I provide this witness statement in connection with the hearing scheduled for May 21 and 22, 2008.

## I.    MOVEMENT OF SHARES PRIOR TO THE FEBRUARY 27, 2008 RECORD DATE

### A.    <u>Analysis of Shareholder Movement by D.F. King</u>

3.    Founded in 1942, D.F. King is one of the nation's leading proxy solicitation firms, best known for its consulting and related services in contested proxy/consent solicitations and tender/exchange offers for corporate control.  I have been employed in the proxy solicitation industry for most of my professional career (which began in 1980) and I have been employed at D. F. King since 1990.  In my career, I have worked on more than 1,000 proxy solicitations and I have personally directed my employers' involvement in numerous contested proxy solicitations, including many of the largest proxy contests of the past two decades.

4.    In the regular course of its business, D. F. King develops securities ownership profiles for public companies by, among other things, analyzing, to the extent the following material is available, (i) public information regarding institutional ownership of the company's securities (e.g., Securities and Exchange Commission ("SEC") mandated filings, including, but not limited to, Schedules 13D and G and Forms 13F and the company's own SEC filings, such as proxy statements), (ii) listings of the company's record holders of securities, (iii) listings of the company's non-objecting beneficial owners of securities ("NOBO" holders who

are beneficial or "street-name" holders who have not objected to the disclosure of their identities), (iv) Depository Trust Company ("DTC") participant listings setting forth the identities of custodian banks and brokers and share positions held of record by these custodians on behalf of beneficial owners of the securities and (v) such other information as may be relevant. On an ongoing basis, D. F. King will also monitor changes in the number of company shares held by custodian broker and bank participants at DTC. Additionally we analyze the types of entities that own securities based on where shares are held in custody, that is, which bank or broker is the record holder of the securities in question. Such analysis is inherently reliant on a multitude of assumptions and is admittedly more "art" than "science."

   5.  For example, custodians of record at DTC hold securities on behalf of many beneficial owners, including, but not limited to, institutional investors (public and private), hedge funds, arbitrageurs and even individual (or retail) investors. In attempting to determine the nature and identities of beneficial owners that control securities held by these custodian brokers and banks, we are forced to make assumptions regarding ownership of such shares. Therefore, we typically assume that a custodian of record known to hold shares for hedge funds is holding the company's shares for such hedge funds. However, this may not be the case. Also, when we consider a custodian of record known to hold shares for both hedge funds and institutional investors (as many of them do), we must reach a conclusion as to whether the shares under review are held for one or the other – or both, and, in that case, how many for each - which necessarily involves many subjective judgments. Consequently, it is entirely possible for share transfers among custodians to be mischaracterized.

6.      Accordingly, conclusions regarding beneficial ownership or the exercise of voting rights based on observations of share transfers among custodians of record can be inaccurate, and often are.

**B.      Movement of CSX Stock During the Time Period Prior to the Original Record Date is Not Unusual**

7.      In connection with this litigation, we examined the movement of shares during the period beginning January 2 and ending April 10, 2008, including the two-week period prior to February 27, 2008, the original record date for the 2008 CSX annual meeting.  In addition, we studied the month-to-month movement of shares among custodians of record on the following dates: April 30, May 31, June 29, July 31, August 31, September 28, October 31 and November 30, 2007.  (Exh. 136, DTC participant listings for the dates referenced)

8.      The movement of CSX shares that we observed for the weeks prior to February 27, 2007, while substantial, was not out of line with CSX share movements that have occurred previously, and was consistent with my experience with regard to share movements among custodians in general for companies the size of CSX under similar circumstances.  For example, during the period beginning April 30 and ended May 31, 2007, the number of shares held by just one custodian – Morgan Stanley, DTC participant #50 – increased by more than 35 million shares.  And, we've observed other similar changes in and among such custodians over the time periods described above.  (See Exh. 135, "DTC List Comparison, 4/30/2007 to 11/30/2007" and Exh. 136)

9.      Again, there are any number of possible reasons as to why the shares moved in the manner that they did during the time period before the original record date, including that the share movement was caused in part by the February 29, 2008 dividend date or the return of stock loans (if any).  Further, when observing a railroad stock such as CSX, which

4

is part of several heavily traded stock indices, in what has been described as a volatile market environment, with daily speculation regarding the overall direction of the U.S. economy and CSX in that economy, it would not be unusual to see significant shifts in the numbers of shares held by custodians of record, which may or may not reflect changes in beneficial ownership or voting rights. Finally, I note that, although the cash-settled equity swaps that are the subject of this litigation had counterparties, to my knowledge, nothing actually required the counterparties to vote any shares that they might have acquired. Thus, it is entirely possible that the share transfers under discussion were for the account of someone other than the named counterparties, which only adds to the speculative nature of any assumption that such shifts were somehow controlled by or for the benefit of Defendants.

# EXHIBIT 2



**Lillian Grossbard**
05/09/2008 03:59 PM

To  "Anika Rappleye" <ARappleye@cravath.com>

cc

bcc

Subject  Fw: CSX v TCI

---

----- Original Message -----
**From:** Rory Millson
**Sent:** 05/09/2008 03:56 PM EDT
**To:** "Godnick, Howard" <Howard.Godnick@srz.com>; Frank Barron
**Cc:** "pdoyle" <pdoyle@kirkland.com>; "AGenser" <AGenser@kirkland.com>; "Swartz, Michael"
<Michael.Swartz@srz.com>; "Momborquette, David" <David.Momborquette@srz.com>; David Marriott; Lillian
Grossbard
 **Subject:** Re: CSX v TCI

We agreed on a process for witnesses. And you have new names. And rule 26 requires disclosure. And these people
are not dosclosed. They are toast. To use a technical term. And by the way, are any of the experts on your prior
responsive to martii?  If not, they are gone too. Peace.

---

----- Original Message -----
 **From:** "Godnick, Howard" [Howard.Godnick@srz.com]
 **Sent:** 05/09/2008 03:52 PM AST
 **To:** Rory Millson; Frank Barron
 **Cc:** pdoyle@kirkland.com; AGenser@kirkland.com; "Swartz, Michael" <Michael.Swartz@srz.com>;
"Momborquette, David" <David.Momborquette@srz.com>; David Marriott; Lillian Grossbard
 **Subject:** Re: CSX v TCI

I wear a suit every day. Don't quite understand why it "doesn't fly". Care to elaborate?

----- Original Message -----
From: RMillson@cravath.com <RMillson@cravath.com>
To: Godnick, Howard; FBarron@cravath.com <FBarron@cravath.com>
Cc: pdoyle <pdoyle@kirkland.com>; Andrew Genser <agenser@kirkland.com>; Swartz, Michael; Momborquette,
David; David Marriott <dmarriott@cravath.com>; Lillian Grossbard <lgrossbard@cravath.com>
Sent: Fri May 09 15:51:47 2008
Subject: Re: CSX v TCI

Nah. This doesn't fly. It is inconsistent with our agreement and rule 26. Please revise or I am going to make a
motion on monday.  I now know why you have been avoiding my suggestion that we talk about the hearing.  I
suspected trial by ambush. Now I know. Wear a suit on monday. Peace.

----- Original Message -----
 From: "Godnick, Howard" [Howard.Godnick@srz.com]
 Sent: 05/09/2008 03:30 PM AST
 To: Rory Millson; Frank Barron

 Cc: pdoyle <pdoyle@kirkland.com>; "Andrew Genser" <agenser@kirkland.com>; "Swartz, Michael"
<Michael.Swartz@srz.com>; "Momborquette, David" <David.Momborquette@srz.com>
 Subject: CSX v TCI

TCI and 3G will call the following fact witnesses at trial:

Hohn
Behring
Amin
Richard Kennedy (Citi)
John Arnone (DB)
Another DB employee, whose name we will provide by Monday, I suspect
Harkins

TCI and 3G also will call the CSX witnesses you have identified

TCI and 3G reserve the right to call Sunak, Moura and Schwartz in rebuttal.

Howard O. Godnick
Partner
Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022
212.756.2220 │ 212.593.5955 fax
howard.godnick@srz.com

*****************************************************************************
U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this
communication was not intended or written to be used, and cannot be used, for the
purpose of avoiding U.S. federal tax penalties.
*****************************************************************************


NOTICE

This e-mail message is intended only for the named recipient(s) above. It may
contain confidential information that is privileged or that constitutes attorney
work product.  If you are not the intended recipient, you are hereby notified that
any dissemination, distribution or copying of this e-mail and any attachment(s) is
strictly prohibited.  If you have received this e-mail in error, please immediately
notify the sender by replying to this e-mail and delete the message and any
attachment(s) from your system.  Thank you.
=============================================================================


This e-mail is confidential and may be privileged. Use or disclosure of it by anyone other than a designated
addressee is unauthorized. If you are not an intended recipient, please delete this e-mail from the computer on which
you received it.

```
**********************************************************
************
U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice
included in this
communication was not intended or written to be used, and cannot
be used, for the
purpose of avoiding U.S. federal tax penalties.
**********************************************************
************


NOTICE

This e-mail message is intended only for the named recipient(s)
above. It may
contain confidential information that is privileged or that
constitutes attorney
work product.  If you are not the intended recipient, you are
hereby notified that
any dissemination, distribution or copying of this e-mail and any
attachment(s) is
strictly prohibited.  If you have received this e-mail in error,
please immediately
notify the sender by replying to this e-mail and delete the
message and any
attachment(s) from your system.  Thank you.
================================================================
=============
```

# EXHIBIT 3

```
0001
1    UNITED STATES DISTRICT COURT
2    SOUTHERN DISTRICT OF NEW YORK
3
     ------------------------------x
4    CSX CORPORATION,
                Plaintiff,      :
5         vs.
     THE CHILDREN'S INVESTMENT FUND:
6    MANAGEMENT (UK) LLP, THE
     CHILDREN'S INVESTMENT FUND    :
7    MANAGEMENT (CAYMAN) LTD., THE
     CHILDREN'S INVESTMENT MASTER  :  Case No.
8    FUND, 3G CAPITAL PARTNERS
     LTD., 3G CAPITAL PARTNERS,    :  08 CV 02764
9    L.P.; 3G FUND, L.P.;
     CHRISTOPHER HOHN; SNEHAL AMIN;:
10   and ALEXANDRE BEHRING, a/k/a
     ALEXANDRE BEHRING COSTA,      :
11            Defendants.
     ------------------------------x
12
                   May 7, 2008
13                 10:36 a.m.
14
15      HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
16         30(b)(6) Deposition of PETER C. HARKINS,
17   held at the offices of Cravath, Swaine & Moore
18   LLP, 825 Eighth Avenue, New York, New York,
19   before Frank J. Bas, a Registered Professional
20   Reporter and Notary Public of the State of New
21   York.
22
23
24
25
```

1

```
1    A P P E A R A N C E S :
2
3    KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
4         Attorneys for the Witness
5         551 Fifth Avenue
6         New York, New York 10176
7
8    BY:  DAVID PARKER, ESQ.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

```
1    A P P E A R A N C E S :
2    CRAVATH, SWAINE & MOORE LLP
3    Attorneys for Plaintiff
4         Worldwide Plaza
5         825 Eighth Avenue
6         New York, New York  10019
7
8    BY:  JESSICA SELB, ESQ.
9
10
11   SCHULTE ROTH & ZABEL LLP
12   Attorneys for TCI, Christopher Hohn, and Snehal
13   Amin
14        919 Third Avenue
15        New York, New York  10022
16
17   BY:  PAMELA C. SERRANZANA, ESQ.
18
19
20
21
22
23
24
25
```

2

```
1    PETER HARKINS - HIGHLY CONFIDENTIAL  ATTORNEYS' EYES ONLY
2              May 7, 2008
3            New York, New York
4              ---
5    P E T E R   C.   H A R K I N S ,
6         called as a witness, having been duly
7         sworn by a Notary Public (Frank J. Bas),
8         was examined and testified as follows:
9    EXAMINATION
10   BY MS. SELB:
11      Q.   Good morning, Mr. Harkins.
12      A.   Good morning.
13           MR. PARKER:  Is there anyone on the
14   phone?
15           MS. SELB:  No.
16           MR. PARKER:  Okay.  I just see all
17   this equipment.
18           MS. SELB:  I'm going to start by
19   marking as Harkins Exhibit 1, a document
20   titled notice of subpoena for production of
21   documents and for deposition pursuant to
22   Rule 30(b)(6) of D.F. King & Co., Inc.
23           ---
24      (Harkins Exhibit 1 was marked for
25   identification.)
```

4

PETER HARKINS - HIGHLY CONFIDENTIAL  ATTORNEYS' EYES ONLY

2      MS. SERRANZANA:  That's right.

3      MR. PARKER:  Okay.  So to TCI's

4   attorneys, that's okay.  To TCI, that's

5   also okay.  But to TCI and its attorneys,

6   so in a meeting where -- where TCI and

7   Schulte are present, then TCI is asserting

8   a privilege as to that.  So you're going to

9   have to make a distinction in your

10  questions.

11      (Mr. Parker and Ms. Serranzana

12  consult.)

13      MR. PARKER:  We're going to have to

14  take a minute.

15      MS. SELB:  Okay.

16      MR. PARKER:  We're going to go off

17  the record for a minute.  I am not going to

18  speak with the witness while we're off the

19  record.  I know there's a question pending

20  so I'm not going to speak to the witness.

21      MS. SELB:  Okay.

22      (Time noted:  11:30 a.m.)

23          ---

24  (Mr. Parker and Ms. Serranzana confer outside of

25      the deposition room.)

37

PETER HARKINS - HIGHLY CONFIDENTIAL  ATTORNEYS' EYES ONLY

2          ---

3      (Time noted:  11:39 a.m.)

4      MR. PARKER:  Back on the record.  I

5   would like the record to reflect that I did

6   not speak with the witness at all while we

7   were off the record.  I think the way I

8   stated the instruction before is correct,

9   and I will just restate it.  That

10  communications with TCI -- that we will

11  permit Mr. Harkins to testify about

12  communications with TCI when Schulte is not

13  present.  Although we take the position

14  that those conversations are privileged,

15  you disagree, and we're going to let him

16  testify, subject to the agreement that was

17  reached earlier about nonwaiver if it is

18  privileged.

19      Similarly, conversations that

20  D.F. King had with Schulte, where TCI was

21  not present, would fall under the same

22  category.  We consider them privileged, you

23  don't.  We're going to let him testify

24  about them.

25      I will say for the most part -- I

38

PETER HARKINS - HIGHLY CONFIDENTIAL  ATTORNEYS' EYES ONLY

2   could conceive of questions you might ask

3   that we wouldn't -- but for the most part,

4   we're going to let him answer those

5   questions, again, subject to the agreement

6   we reached earlier about nonwaiver.

7      Communications between Schulte and

8   TCI, however, are another matter.  Those

9   are privileged, and it is our view that

10  Mr. Harkins' presence at those

11  conversations does not make those

12  conversations not privileged.  So I will

13  not let him answer questions about

14  conversations where both TCI and Schulte

15  were present.

16      MS. SELB:  So for any conversations

17  where both TCI and Schulte were present,

18  there is a blanket instruction not to

19  answer?

20      MR. PARKER:  I won't say it's a

21  blanket instruction not to answer.  If you

22  can demonstrate that there were some other

23  non-privileged person there or it's been

24  otherwise waived in some other way, or for

25  some other reason is not privileged, then

39

PETER HARKINS - HIGHLY CONFIDENTIAL  ATTORNEYS' EYES ONLY

2   -- then we'll consider it.

3      But I would say that a conversation

4   between Schulte and TCI is presumptively

5   privileged until we figure out otherwise.

6   Presumptively privileged.  And we will not

7   permit him to answer unless otherwise

8   described.

9      MS. SELB:  Okay.

10      MR. PARKER:  Even subject to the

11  waiver that was -- to the nonwaiver

12  agreement we reached earlier.

13  BY MS. SELB:

14      Q.  Mr. Harkins, you testified that ISS

15  was one of the proxy advisory firms that

16  D.F. King believed would be willing to endorse a

17  short slate.  Do you remember that?

18      A.  Yes.

19      Q.  Did D.F. King ever communicate that

20  belief to TCI, without TCI's attorneys present?

21      A.  Would you read that question,

22  please?

23      (The reporter read back as follows:)

24      "Question:  Did D.F. King ever

25  communicate that belief to TCI, without

40

# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CSX CORPORATION,

                                        Plaintiff,

                    v.

THE CHILDREN'S INVESTMENT FUND
MANAGEMENT (UK) LLP, THE CHILDREN'S
INVESTMENT FUND MANAGEMENT
(CAYMAN) LTD., THE CHILDREN'S
INVESTMENT MASTER FUND, 3G CAPITAL
PARTNERS LTD., 3G CAPITAL PARTNERS,
L.P., 3G FUND, L.P., CHRISTOPHER HOHN,
SNEHAL AMIN AND ALEXANDRE
BEHRING, A/K/A ALEXANDRE BEHRING
COSTA,

                                        Defendants.

---

3G CAPITAL PARTNERS LTD., 3G CAPITAL
PARTNERS, L.P. AND 3G FUND, L.P.

                            Counterclaim Plaintiffs,

                    v.

CSX CORPORATION AND MICHAEL WARD,

                        Counterclaim Defendants.

---

THE CHILDREN'S INVESTMENT MASTER
FUND,

                            Counterclaim and Third-
                                    Party Plaintiff,

                    v.

CSX CORPORATION AND MICHAEL WARD,

                            Counterclaim and Third-
                                Party Defendants.

---

ECF Case

08 Civ. 02764 (LAK) (KNF)

**NOTICE OF SUBPOENA FOR
PRODUCTION OF DOCUMENTS
AND FOR DEPOSITION PURSUANT
TO RULE 30(b)(6) OF D.F. KING &
CO., INC.**

**NOTICE OF SUBPOENA FOR PRODUCTION OF DOCUMENTS AND
FOR DEPOSITION PURSUANT TO RULE 30(b)(6) OF D.F. KING & CO., INC.**

PLEASE TAKE NOTICE that, pursuant to Rules 30 and 45 of the Federal

Rules of Civil Procedure and the Local Civil Rules of the Southern District of New York,

plaintiff CSX Corporation, by its counsel Cravath, Swaine & Moore LLP, will serve a

subpoena in the form attached hereto, and will take the deposition of D.F. King & Co.,

Inc. at the offices of Cravath, Swaine & Moore LLP, 825 Eighth Avenue, New York, NY

10019, at 10:00 a.m. on May 1, 2008, or at such other time and location as may be agreed

upon by counsel or ordered by the Court.

The deposition shall be upon oral examination before an officer authorized

by law to administer oaths. The deposition will be recorded stenographically and

videographically pursuant to Rule 30(b)(2) and will continue day to day until completed.

Pursuant to Rule 30(b)(6), D.F. King & Co., Inc. shall designate one or

more of its officers, directors, managing agents or other persons to testify on its behalf

under oath regarding the subjects set forth in Schedule A to the attached subpoena.

2

You are required to produce the witness at the time and place designated,

and are invited to attend and cross-examine.


Dated: New York, New York
April 18, 2008

CRAVATH, SWAINE & MOORE LLP,

by

Rory O. Millson
Francis P. Barron
David R. Marriott
Members of the Firm

Attorneys for Plaintiff
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

RMillson@cravath.com
FBarron@cravath.com
DMarriott@cravath.com

DEWEY PEGNO & KRAMARSKY LLP
Keara A. Bergin
220 East 42nd Street
New York, NY 10017
(212) 943-9000
KBergin@dpklaw.com

FRIEDMAN KAPLAN SEILER & ADELMAN
LLP
Lance J. Gotko
Paul J. Fishman
1633 Broadway
New York, NY 10019-6708
(212) 833-1100
LGotko@fklaw.com
PFishman@fklaw.com

*Attorneys for Plaintiff CSX*

TO:

Howard O. Godnick
Yocheved Cohen
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022

*Attorneys for The Children's Investment*
*Fund Management (UK) LLP, The Children's*
*Investment Fund Management (Cayman)*
*LTD., The Children's Investment Master*
*Fund, Christopher Hohn, and Snehal Amin*


Peter Duffy Doyle
Andrew M. Genser
Matthew F. Dexter
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022

*Attorneys for Defendants 3G Capital*
*Partners Ltd., 3G Capital Partners, L.P.,*
*3G Fund, L.P. and Alexandre Behring*

# Issued by the
# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

CSX CORPORATION,

                 Plaintiff,

           V.

THE CHILDREN'S INVESTMENT FUND
MANAGEMENT (UK) LLP, ET AL.,

                 Defendants.

**To:    D.F. KING & CO., INC.**
**48 Wall Street, 22nd Floor**
**New York, N.Y. 10005**

# SUBPOENA IN A CIVIL CASE

CASE NUMBER[1]:    08 CV 02764 (LAK) (KNF)

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

SEE SCHEDULE A

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| **Cravath, Swaine & Moore LLP**<br>**825 Eighth Avenue, New York NY 10019** | **May 1, 2008  10:00 am** |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):

SEE SCHEDULE B

| PLACE | DATE AND TIME |
|---|---|
| **Cravath, Swaine & Moore LLP**<br>**825 Eighth Avenue, New York NY 10019** | **April 28, 2008  10:00 am** |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for  **Plaintiff** | **April 18, 2008** |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
**David R. Marriott**
**Cravath, Swaine & Moore LLP**
**825 Eighth Avenue, New York NY 10019**
**(212) 474-1000**

(See Federal Rules of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| | DATE | | PLACE | |
|---|---|---|---|---|
| SERVED | | | | |

| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
|---|---|---|

| SERVED BY (PRINT NAME) | | TITLE |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
                                DATE                                          SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

## Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises —or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(C)(3)(A)(ii).

## SCHEDULE A

### Subjects for Examination

Pursuant to Rule 30(b)(6), your designee(s) shall testify on its behalf under

oath on the following subjects

1.    The ownership of CSX, including but not limited to any enumeration of the
shareholders of CSX, any enumeration of the types of shareholders of CSX, any
analysis of the ownership of CSX, any and all methods of calculating the
ownership of CSX, any type of ownership of CSX (including beneficial
ownership), and how swaps and/or other derivative instruments were treated for
purposes of calculating the ownership of CSX.

2.    Any communications referring or relating to the ownership of CSX, including but
not limited to any enumeration of the shareholders of CSX, any enumeration of
the types of shareholders of CSX, any analysis of the ownership of CSX, any and
all methods of calculating the ownership of CSX, any type of ownership of CSX
(including beneficial ownership), and how swaps and/or derivative instruments
were treated for purposes of calculating the ownership of CSX.

3.    The voting rights of the shareholders of CSX.

4.    The voting power (which includes the power to vote, or to direct the voting) or
investment power (which includes the power to dispose, or to direct the
disposition) of any swaps or other derivative instruments that reference the equity
of CSX.

5.    All written agreements, understandings and arrangements between you and
defendants.

6.    Defendants' retention of you.

7.    The relationship between you and defendants.

8.    Efforts undertaken to locate and produce documents responsive to the requests set
forth in Schedule B.

### Definitions

1.    The term "CSX" means CSX Corporation, including its predecessors, successors,
affiliates, subsidiaries, departments, units or divisions, and each of its directors,
officers, agents, employees, attorneys, representatives, and any other person
acting or purporting to act under its control or on its behalf.

2.    The terms "defendant" or "defendants" refer to each of the defendants identified
in the Complaint in the above-captioned matter and any of their agents,

representatives or persons acting or purporting to act under their direction, supervision or control.

3.      The terms "you" and "your" mean D.F. King & Co., Inc., including its predecessors, successors, affiliates, subsidiaries, departments, units or divisions, and each of its directors, officers, agents, employees, attorneys, representatives, and any other person acting or purporting to act under its control or on its behalf.

4.      The terms "relate" and "relating to" means having any connection, association or concern with, or any relevance, relation, pertinence or applicability to, or any implication for or bearing upon the subject matter of the Subject for Examination.

## SCHEDULE B

### Document Requests

Each of the document requests herein is to be read in accordance with the definitions and instructions that follow.

1.  All documents referring or relating to the ownership of CSX, including but not limited to any enumeration of the shareholders of CSX, any enumeration of the types of shareholders of CSX, any analysis of the ownership of CSX, any and all methods of calculating the ownership of CSX, any type of ownership of CSX (including beneficial ownership), and how swaps and/or other derivative instruments were treated for purposes of calculating the ownership of CSX.

2.  All documents, including any notes, concerning any communications referring or relating to the ownership of CSX, including but not limited to any enumeration of the shareholders of CSX, any enumeration of the types of shareholders of CSX, any analysis of the ownership of CSX, any and all methods of calculating the ownership of CSX, any type of ownership of CSX (including beneficial ownership), and how swaps and/or derivative instruments were treated for purpose of calculating the ownership of CSX.

3.  All documents referring or relating to the voting rights of the shareholders of CSX.

4.  All documents referring or relating to any voting power (which includes the power to vote, or to direct the voting) or investment power (which includes the power to dispose, or to direct the disposition) of any swaps or other derivative instruments that reference the equity of CSX.

5.  All written agreements with defendants.

6.  All documents related to defendants' retention of you.

### Definitions

1.  The term "CSX" means CSX Corporation, including its predecessors, successors, affiliates, subsidiaries, departments, units or divisions, and each of its directors, officers, agents, employees, attorneys, representatives, and any other person acting or purporting to act under its control or on its behalf.

2.  The terms "defendant" or "defendants" refer to each of the defendants identified in the Complaint in the above-captioned matter and any of their agents, representatives or persons acting or purporting to act under their direction, supervision or control.

3.    The terms "you" and "your" mean D.F. King & Co., Inc., including its predecessors, successors, affiliates, subsidiaries, departments, units or divisions, and each of its directors, officers, agents, employees, attorneys, representatives, and any other person acting or purporting to act under its control or on its behalf.

4.    The terms "relate" and "relating to" means having any connection, association or concern with, or any relevance, relation, pertinence or applicability to, or any implication for or bearing upon the subject matter of the Document Request.

### Instructions

1.    Unless otherwise specified, these requests seek documents and electronically-stored information created between August 1, 2006 and the present.

2.    Each document request shall be construed independently and not with reference to any other document request for the purpose of limitation or exclusion.

3.    If you object to any document request, please state with specificity the grounds for each such objection.

4.    Whenever necessary to bring within the scope of any document request documents that might otherwise be construed to be outside the scope: (a) the use of any verb in any tense shall be construed as the use of that verb in all other tenses, and (b) the use of a word in its singular form shall be deemed to include within its use the plural form and vice versa.

5.    All document requests should be construed to include responsive documents from all sources wherever located without limitation.

6.    Each responsive document shall be produced in its entirety. If an identical copy appears in more than one person's files, each of the copies shall be so produced.

7.    Documents are to be clearly designated so as to reflect their owner and/or custodian and the location from where they were produced.

8.    If there are no documents responsive to any of the document requests above, please provide a written response so stating.

2