UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CSX CORPORATION,

                Plaintiff,

                v.

THE CHILDREN'S INVESTMENT FUND
MANAGEMENT (UK) LLP, THE CHILDREN'S
INVESTMENT FUND MANAGEMENT
(CAYMAN) LTD., THE CHILDREN'S
INVESTMENT MASTER FUND, 3G CAPITAL
PARTNERS LTD., 3G CAPITAL PARTNERS, L.P.,
3G FUND, L.P., CHRISTOPHER HOHN, SNEHAL
AMIN, AND ALEXANDRE BEHRING, A/K/A
ALEXANDRE BEHRING COSTA,

                Defendants.
------------------------------------------------------------

THE CHILDREN'S INVESTMENT MASTER
FUND,
                Counterclaim and Third-
                Party Plaintiff,

                v.

CSX CORPORATION AND MICHAEL J. WARD,

                Counterclaim and Third-
                Party Defendants.
------------------------------------------------------------

3G CAPITAL PARTNERS LTD., 3G CAPITAL
PARTNERS, L.P. AND 3G FUND, L.P.

                Counterclaim Plaintiffs,

                v.

CSX CORPORATION AND MICHAEL WARD,

                Counterclaim Defendants.
------------------------------------------------------------x

ECF CASE
08 Civ. 02764 (LAK) (KNF)

**TCI'S OPPOSITION TO CSX'S MOTION *IN LIMINE* TO EXCLUDE THE EXPERT REPORTS OF FRANK PARTNOY**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

    I.    Professor Partnoy Is Qualified To Provide Expert Rebuttal Testimony In This Matter .......................................................................................................... 1

    II.   Professor Partnoy's Reports Do Not Contain Impermissible Opinions On Legal Questions.................................................................................................... 5

CONCLUSION.................................................................................................................... 8

## **TABLE OF AUTHORITIES**

**CASES**                                                               **PAGE(S)**

*Ayers v. SGS Control Servs., Inc.*,
  No. 03 Civ. 9078 (RMB), 2007 WL 3171342 (S.D.N.Y. Oct. 9, 2007) ................................ 2

*Deal v. Hamilton County Bd. of Educ.*,
  392 F.3d 840 (6th Cir. 2004) .......................................................................................... 1-2

*Gibbs v. Gibbs*,
  210 F.3d 491 (5th Cir. 2000) ............................................................................................. 2

*Highland Capital Mgmt., L.P. v. Schneider*,
  No. 02 Civ. 8098 (PKL), 2008 WL 282769 (S.D.N.Y. Jan. 31, 2008) ............................ 5-6

*Kidder, Peabody & Co., v. IAG Int'l Acceptance Group.*,
  14 F. Supp. 2d 391 (S.D.N.Y. 1998) .................................................................................. 5

*Lippe v. Bairnco Corp.*,
  288 B.R. 678 (S.D.N.Y. 2003) ........................................................................................... 4

*McGregor-Doniger, Inc. v. Drizzle Inv.*,
  599 F.2d 1126 (2d Cir. 1979) ............................................................................................. 1

*Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*,
  No. 95 CIV. 3901(PKL), 1999 WL 946354 (S.D.N.Y. Oct. 19, 1999) .............................. 6

*Primavera Familienstifung v. Askin*,
  130 F. Supp. 2d 450 *amended on reconsideration on other grounds*, 137 F. Supp. 2d
  438 (S.D.N.Y. 2001) ........................................................................................................... 7

*In re Rezulin Products Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................................................ 4

*S.E.C. v. Todd*,
  No. 03CV2230 (BEN)(WMC), 2006 WL 5201386 (S.D. Cal. Oct 17, 2006) ................... 5

*S.E.C. v. U.S. Envtl., Inc.*,
  No. 94 Civ. 6608 (PKL)(AJP), 2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002) ................ 6

*United States v. Bilzerian*,
  926 F.2d 1285 (2d Cir. 1991) ............................................................................................. 6

*Valentin v. New York City*,
  No. 94 CV 3911 (CLP), 1997 WL 33323099 (E.D.N.Y. Sept. 9, 1997) ........................... 1

**STATUTES AND RULES**

Fed. R. Evid. 702 ...............................................................................................................1, 5, 8

17 C.F.R. § 240.13d-3(a) (2008)...........................................................................................7, 8

17 C.F.R. § 240.13d-5(b)(1) (2008)....................................................................................... 7-8

Defendants The Children's Investment Fund Management (UK) LLP, The Children's Investment Fund Management (Cayman) Ltd., The Children's Investment Master Fund, Christopher Hohn and Snehal Amin (collectively, "TCI") submit this Memorandum of Law in Opposition to the Motion *in Limine* to Exclude the Expert Reports of Frank Partnoy made by CSX Corporation ("CSX").

## INTRODUCTION

Plaintiff CSX has moved to exclude in full the Rebuttal Expert Report and Sur-Rebuttal Expert Report of Frank Partnoy. Professor Partnoy was designated by the defendants in this matter as a rebuttal expert to one of plaintiff's experts, Professor Marti G. Subrahmanyam. Plaintiff asserts two grounds for dismissal of Professor Partnoy's reports. First, Professor Partnoy is not qualified to offer rebuttal testimony to the economic analysis contained in Professor Subrahmanyam's reports. Second, plaintiff asserts that Professor Partnoy impermissibly opines in his reports on legal questions. As demonstrated below, both of those assertions should be rejected.

## ARGUMENT

**I.      Professor Partnoy Is Qualified To Provide
         Expert Rebuttal Testimony In This Matter**

Pursuant to Federal Rule of Evidence 702, an expert can be qualified by "knowledge, skill, experience, training, or education." This determination is "for the trial judge to resolve and the court has 'broad discretion' in making that determination." *Valentin v. New York City*, No. 94 CV 3911 (CLP), 1997 WL 33323099, at *14 (E.D.N.Y. Sept. 9, 1997) (citing *McGregor-Doniger Inc. v. Drizzle Inv.*, 599 F.2d 1126, 1138, n.7 (2d Cir. 1979). In addition, the law favors admission of expert reports, particularly in bench trials. *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004) ("The 'gatekeeper' doctrine was designed to

protect juries and is largely irrelevant in the context of a bench trial."); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); *Ayers v. SGS Control Services, Inc.*, No. 03 Civ. 9078 (RMB), 2007 WL 3171342, at *1 (S.D.N.Y. Oct. 9, 2007) ("[B]ecause this is a bench trial, the proffered expert testimony will be admitted, without prejudice to either side.").

Plaintiff asserts that "[t]o the extent that Professor Partnoy opines on economic issues, he lacks the background and credentials to qualify as an expert in the field." (Pl. Mem. at 12.) In plaintiff's view, he is "a law professor and nothing more." (Pl. Mem. at 1.)

However, it would be difficult to imagine a more qualified candidate to opine on issues related to equity-based derivatives than Professor Partnoy. He is a Professor of Law at the University of San Diego School of Law where he is the Chair of the Center on Corporate and Securities Law, and graduate of Yale Law School.[1] He has taught various courses in the areas of corporate and securities law, finance and derivatives, as well as financial market regulation, and has authored several dozen articles and three books in these areas.[2] Professor Partnoy has written, taught, and testified about issues related to derivatives, swaps, share lending and hedging, hedge funds, and hedge fund activism. His scholarly writings include the first academic article to address the challenges derivatives pose to assessing share voting, and the most comprehensive empirical study of hedge fund activism which is to be published in the Journal of Finance, the leading peer-reviewed financial journal. Professor Partnoy has been

---

[1] A copy of Professor Partnoy's resume is attached as Exhibit A to his rebuttal report.

[2] Plaintiff attempts to demonstrate that Professor Partnoy is not qualified to testify in this action by quoting excerpts from two critical reviews of a book authored by him. (Pl. Mem. at 13-14.) Bad reviews hardly justify preclusion, and, in any event, plaintiff fails to acknowledge that the book was a finalist for the Financial Times/Booz-Allen Global Business Book Award in 1997. (Partnoy Rebuttal Report, Exhibit A.)

previously qualified as an expert. In addition, he also has given sworn testimony on issues related to securities and derivatives before committees of both the United States Senate and House of Representatives. (Partnoy Rebuttal Report ¶ 3.) In short, he is eminently qualified to offer expert rebuttal testimony in this matter.

With respect to the so-called "economic analysis" purportedly performed by Professor Subrahmanyam, there is little if any of that in his reports. Indeed, much of his reports consist of little more than a review of the factual record in this case and publicly available documents related thereto, including lengthy discussions regarding:

- TCI's relationship with CSX (Subrahmanyam Report ¶¶ 38-40),

- TCI and 3G's Schedule 13D filings (*id.* ¶¶ 41-47),

- TCI's purported plans for CSX (*id.* ¶¶ 24, 30),

- The contents of TCI's swap agreements (*id.* ¶¶ 82, 132, 134, 143),

- The deposition testimony of CSX's proxy solicitor (*id.* at 34 n.79, ¶¶ 157, 59, 168),

- Regulatory filings made by TCI's swap counterparties (*id.* ¶¶ 103, 105-13),

- Statements purportedly made by TCI describing its investment in CSX (*id.* ¶¶ 25, 27, 28, 169),

- TCI's dissatisfaction with CSX management (*id.* ¶ 31),

- 3G's relationship with CSX (*id.* ¶¶ 33-37),

- TCI's intention to nominate certain directors (*id.* ¶¶ 48-50),

- TCI's and 3G's proxy statements (*id.* ¶¶ 51-53), and

- How certain parties may vote in a proxy contest (*id.* ¶¶ 155-57).

None of those topics involve any economic analysis by Professor Subrahmanyam. Rather, they essentially attempt to provide a comprehensive summary of plaintiff's case. In other

3

words, much of Professor Subrahmanyam's so-called "expert opinions" consists of advocacy, not expert economic analysis.[3] Although Professor Subrahmanyam's reports do contain a number of charts and graphs related to TCI's swap and equity transactions, there is little if any economic analysis associated with that material. Instead, the charts and graphs simply are a compilation of trading information that Professor Subrahmanyam has assembled, with him occasionally providing aggregate figures regarding such trading. That is basic mathematics.

The one piece of analysis contained in Professor Subrahmanyam reports which requires something more than a basic understanding of addition is his so-called "Value-at Risk" analysis. However, as Professor Partnoy points out (Partnoy Rebuttal Report ¶¶ 95-100) and Professor Subrahmanyam himself acknowledges (Subrahmanyam Rebuttal Report ¶ 35), he calculates the relevant VaR incorrectly. Even when Professor Subrahmanyam attempts to clarify his analysis to address Professor Partnoy's criticism, he manages to directly contradict the straightforward proscriptions of the leading text in this area that he cites to -- a text that its author states "'does not require extensive finance training [and] is accessible to students who have gone through courses that present the principles of investments and corporate finance.'" (Partnoy Sur-Rebuttal Report ¶ 37, quoting Rene M. Stulz, Risk Management and Derivatives (2003).)[4]

---

[3] Indeed, courts typically preclude expert testimony where such testimony essentially supplants the role of counsel. *See In re Rezulin Products Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (precluding expert testimony that constitutes "factual narratives and interpretations of conduct or views as to the motivation of parties.")(citation omitted); *Lippe v. Bairnco Corp.*, 288 B.R. 678, 688 (S.D.N.Y. 2003) (precluding expert, "[c]learly, plaintiffs envisioned that he would be giving, in essence, a summation from the witness stand.").

[4] Plaintiff's also asserts that "based on his economic background," Professor Subrahmanyam suspected that the absence of hedging shares with respect to a January 30, 2007 swap transaction with Credit Suisse was "due to an omission of trading data for CSX shares from Credit Suisse's hedging data production." (Pl. Mem. at 16.) We are unaware of any economic theory that enables one to determine when trading data is missing. In any event, plaintiff mischaracterizes Professor Partnoy's statements regarding this trade by conveying them as conclusive determinations, instead of what Professor Partnoy stated they were -- "potential explanation" for hedging activity. (Partnoy Sur-Rebuttal Report ¶ 58.)

In short, plaintiff's assertion that Professor Partnoy does not have the adequate expertise to provide expert rebuttal testimony is utterly baseless.[5]

## II. Professor Partnoy's Reports Do Not Contain Impermissible Opinions On Legal Questions

Pursuant to Rule 702 of the Federal Rules of Evidence, expert testimony is permitted if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." An expert may not "usurp the role of the jury" by directing the application of the law to the facts in the form of an ultimate conclusion. *Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptance Grp.*, 14 F. Supp. 2d 391, 404 (S.D.N.Y. 1998).

Plaintiff asserts that Professor Partnoy "impermissibly instructs the Court" on a variety of legal topics including TCI's disclosure obligations, the meaning and extent of the U.S. securities laws, and contract interpretation. (Pl. Mem. at 2-8.) That assertion simply is false. Even a cursory review of Professor Partnoy's reports makes clear that he is not instructing the Court on any legal standard here, but rather, as Professor Partnoy repeatedly states in his reports, he is demonstrating that Professor Subrahmanyam's opinions run counter to market practice regarding equity derivatives and other similar instruments. (*see* Partnoy Rebuttal Report ¶¶ 9 - 13, 15, 21-28, 30-31, 35, 38-39, 41, 45-46, 55, 57, 64, 66-68, 71-72, 77-79, 90, 95, 98, 102, 105-107, 113; Partnoy Sur-Rebuttal Report ¶¶ 15, 21, 23-24, 33, 37, 41, 49-50, 58, 63, 65, 79.)

It is well established that testimony as to market practice is a proper topic of expert opinion. *See, e.g.*, *Highland Capital Mgmt., L.P. v. Schneider*, No. 02 Civ. 8098 (PKL), 2008 WL 282769, at *3 (S.D.N.Y. Jan. 31, 2008) ("[F]ederal courts have admitted expert

---

[5] Plaintiff also refers to *S.E.C. v. Todd*, wherein the Court excluded Professor Partnoy's testimony, in order to give an example of an instance where Professor Partnoy "attempted to move outside the scope of his legal expertise and testify as to economic matters". (Pl.'s Memo. at 15). That characterization is incorrect and unsupported by the Court's decision, which found that the issues of Professor Partnoy's testimony were not "relevant to the issues of [that] litigation" and made no findings concerning the expertise of Professor Partnoy. *S.E.C. v. Todd*, No. 03CV2230 (BEN)(WMC), 2006 WL 5201386, at *4 (S.D. Cal. Oct. 17, 2006).

5

testimony to assist the trier of fact in understanding trade patterns, securities industry regulations, and complicated terms and concepts inherent in the practice of the securities industry."); *S.E.C. v. U.S. Envtl., Inc.*, No. 94 Civ. 6608 (PKL)(AJP), 2002 WL 31323832, at *3 (S.D.N.Y. Oct. 16, 2002) (securities expert's testimony "regarding the 'practices and usages of a trade" is permissible).

Plaintiff's reliance on *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991) and *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 95 CIV. 3901(PKL), 1999 WL 946354, at *3 (S.D.N.Y. Oct. 19, 1999) is misplaced. In *Bilzerian*, the Second Circuit affirmed a lower court's decision to permit expert testimony where the expert "did not give his opinion as to whether [the defendant's] actions violated the securities laws," but was used to "clarify any ambiguity in the instructions" on a Schedule 13D. 926 F.2d at 1294-95. Testimony related to industry practice "may be received . . . to evaluate a defendant's conduct against the standards of accepted practice," but "testimony encompassing a legal conclusion based upon the facts of the case is not admissible." *Id.* at 1295 (internal citations omitted). A second expert in *Bilzerian*, was excluded as his testimony "related directly" to whether the defendant complied with the law, and "would have constituted an impermissible instruction on governing law." *Id.* In *Media Sports*, the court did not permit an expert to "opine on whether a contract was formed," because "he would inevitably have to discuss issues of contract law." 1999 WL 946354 at *4. Instead, the expert's testimony was "limited to an analysis of whether the parties' behavior conformed with industry customs and practices and whether this evidences the intent of the parties to be bound by contract." *Id.*

As demonstrated above, unlike the experts excluded in *Bilzerian* and *Media Sports*, Professor Partnoy has not attempted to instruct the Court on the governing law or to

opinion on whether the defendants violated the federal securities laws. That is what Professor Subrahmanyam has done. His reports are nothing more than a transparent attempt by plaintiff to direct the court on how certain of the ultimate legal questions in this case should be resolved. Where an expert, "[r]ather than being asked to develop an expert opinion that might happen to embrace certain ultimate issues, [is] asked to reach legal conclusions regarding those ultimate issues," the expert's assignment is "flawed from the outset." *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 528, *amended on reconsideration on other grounds*, 137 F. Supp. 2d 438 (S.D.N.Y. 2001). In *Primavera*, the expert was directed to determine whether the parties complied with certain agreements, whether "they adhered to the covenant of good faith and fair dealing, and whether they conducted the liquidations in a commercially reasonable manner." *Id.* Each of the questions directed to the expert was "identical to the legal terms defining elements of the counts" in that case. *Id.* at 528-29. The court therefore excluded the report. *Id.* at 530.

Here, Professor Subrahmanyam was asked by CSX to determine "whether TCI's swap arrangements give it, directly or indirectly, voting or investment power (the ability to significantly influence the voting or disposition of the referenced CSX shares), and whether, in connection with the swaps, TCI and its counterparties acted together for the purposes of acquiring, holding, voting or disposing of the referenced shares." (Subrahmanyam Report ¶ 11.) However, each of these questions simply parrots the legal definitions found in Rules 13d-3 and 13d-5. For instance, Rule 13d-3 defines beneficial ownership as "(1) Voting power which includes the power to vote, or to direct the voting of, such security; and/or (2) Investment power which includes the power to dispose, or to direct the disposition of, such security." 17 C.F.R. § 240.13d-3(a). Rule 13d-5 provides that "[w]hen two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group

formed thereby shall be deemed to have acquired beneficial ownership . . . ."  17 C.F.R. § 240.13d-5(b)(1).  Although Professor Subrahmanyam claims that he is not offering a legal opinion (Subrahmanyam Report at ¶ 12), the thrust of his reports is that both prongs of Rule 13d-3(a) are satisfied, and accordingly, TCI should be deemed a beneficial owner of the CSX shares referenced in its swap agreements.  It is precisely that type of expert opinion that Rule 702 prohibits.  If any reports should be stricken in this matter it is Professor Subrahmanyam's.[6]

## CONCLUSION

For the foregoing reasons, CSX's motion to exclude the expert reports of Professor Partnoy should be denied.

Dated: May 27, 2008
       New York, New York

                                                    SCHULTE ROTH & ZABEL LLP

                                                    By: /s/ David K. Momborquette
                                                        Howard O. Godnick
                                                        David K. Momborquette
                                                        919 Third Avenue
                                                        New York, New York 10022
                                                        (212) 756-2000
                                                        *Attorneys for The Children's Investment Fund Management (UK) LLP, The Children's Investment Fund Management (Cayman) LTD., The Children's Investment Master Fund, Christopher Hohn, and Snehal Amin*

---

[6] CSX also asserts that the legal analysis purportedly contained in Professor Partnoy's reports is flawed, and therefore, irrelevant. (Pl. Mem. at 8-11.)  According to plaintiff, Professor Partnoy incorrectly focuses on the issue of whether TCI had the "power to direct" the voting or disposition of CSX shares rather than the "ability to significantly influence the voting or disposition" of those shares. (Pl. Mem. at 9.)  As a result, according to plaintiff, Professor Partnoy "spends the bulk of his reports on irrelevant considerations" such as whether the swap counterparties "had to" hedge swap contracts with CSX shares. (Pl. Mem. at 10.)  However, as Professor Subrahmanyam expressly states himself, that is precisely what he is concluding.   Specifically, Professor Subrahmanyam states that " . . . given the economics of the circumstances of these transactions, the counterparties *had to* acquire or dispose of CSX shares based on TCI's purchases and sales of CSX swaps." (Subrahmanyam Rebuttal Report at 9 n.14. (emphasis added).)