UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CSX CORPORATION,

                                    Plaintiff,

            v.

THE CHILDREN'S INVESTMENT FUND
MANAGEMENT (UK) LLP, THE CHILDREN'S
INVESTMENT FUND MANAGEMENT
(CAYMAN) LTD., THE CHILDREN'S
INVESTMENT MASTER FUND, 3G CAPITAL
PARTNERS LTD., 3G CAPITAL PARTNERS,
L.P., 3G FUND, L.P., CHRISTOPHER HOHN,
SNEHAL AMIN AND ALEXANDRE
BEHRING, A/K/A ALEXANDRE BEHRING
COSTA,

                                    Defendants.

---

THE CHILDREN'S INVESTMENT MASTER
FUND,

                        Counterclaim and Third-
                                Party Plaintiff,

            v.

CSX CORPORATION AND MICHAEL WARD,

                        Counterclaim and Third-
                                Party Defendants.

---

3G CAPITAL PARTNERS LTD., 3G CAPITAL
PARTNERS, L.P. AND 3G FUND, L.P.,

                        Counterclaim Plaintiffs,

            v.

CSX CORPORATION AND MICHAEL WARD,

                        Counterclaim Defendants.

---

ECF Case

08 Civ. 02764 (LAK) (KNF)

**DECLARATION OF
HOWARD O. GODNICK**

**HOWARD O. GODNICK**, an attorney duly admitted to practice before this Court, hereby affirms the following to be true under penalties of perjury:

1. I am a member of the Bar of the State of New York and a partner with the firm of Schulte Roth & Zabel LLP, counsel to The Children's Investment Fund Management (UK) LLP, The Children's Investment Fund Management (Cayman) Ltd., The Children's Investment Master Fund (together, "TCI"), Christopher Hohn, and Snehal Amin. I submit this declaration in support of Defendant's Post-Trial Brief in the above captioned matter.

2. Attached hereto as Exhibit 1 is a true and correct copy of Comment, *Section 13(d) and Disclosure of Corporate Equity Ownership*, 119 U. Pa. L. Rev. 853, 862-63 (1971).

3. Attached hereto as Exhibit 2 is a true and correct copy of Various Proposals Relating to Disclosure of Beneficial Owners and Holders of Record of Voting Securities, Exchange Act Release No. 11616, 1975 WL 177966 (Aug. 25, 1975).

4. Attached hereto as Exhibit 3 is a true and correct copy of Hamelly Industries, Securities and Exchange Commission ("SEC") No-Action Letter, Fed. Sec. L. Rep. P 80, 861, 1976 WL 10536 (Nov. 29, 1976).

5. Attached hereto as Exhibit 4 is a true and correct copy of Adoption of Beneficial Ownership Disclosure Requirements, Exchange Act Release No. 13291, 1977 WL 185650 (Feb. 24, 1977).

6. Attached hereto as Exhibit 5 is a true and correct copy of Filing and Disclosure Requirements Relating to Beneficial Ownership, Exchange Act Release No. 14692, 1978 WL 170898 (April 21, 1978).

7.    Attached hereto as Exhibit 6 is a true and correct copy of Filing and Disclosure Requirements Relating to Beneficial Ownership, Exchange Act Release No. 15348, 1978 WL 171074 (Nov. 22, 1978).

8.    Attached hereto as Exhibit 7 is a true and correct copy of Cross-Board Tender Offers, Business Combinations and Rights Offerings, Exchange Act Release No. 7611, 1998 WL 792055 (Nov. 13, 1998).

9.    Attached hereto as Exhibit 8 is a true and correct copy of Cross-Board Tender Offers, Business Combinations and Rights Offerings, Exchange Act Release No. 7759, 1999 WL 969592 (Oct. 22, 1999).

10.    Attached hereto as Exhibit 9 is a true and correct copy of Commission Guidance on the Application of Certain Provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, and Rules thereunder to Trading in Security Futures Products, Exchange Act Release Nos. 33-8107; 34-46101 (June 27, 2002), *available at* http://www.sec.gov/rules/interp/33-8107.htm.

11.    Attached hereto as Exhibit 10 is a true and correct copy of a New Zealand Court of Appeals decision, *Ithaca (Custodians) Ltd. v. Perry Corp.*, [2004] 1 NZLR 731, 2003 NZLR LEXIS 76 (C.A.).

12.    Attached hereto as Exhibit 11 is a true and correct copy of e-mail guidance on Federal Trade Commission web site, *available at* http://www.ftc.gov/bc/hsr/informal/opinions/0511010.PDF.

13.    Attached hereto as Exhibit 12 is a true and correct copy of Henry T.C. Hu & Bernard Black, *Empty Voting and Hidden (Morphable) Ownership: Taxonomy, Implications and Reforms*, 61 Bus. Law. 1011, 1041-42 (2006).

14.    Attached hereto as Exhibit 13 is a true and correct copy of Henry T.C. Hu & Bernard Black, *The New Vote Buying: Empty Voting and Hidden (Morphable) Ownership*, 79 S. Cal. L. Rev. 811, 869 (2006).

15.    Attached hereto as Exhibit 14 is a true and correct copy of the Canadian case, *In the Matter of the Securities Act R.S.O. 1990*, c.S.5, as Amended (Aug. 8, 2006), *available at* http://www.osc.gov.on.ca/Enforcement/Proceedings/RAD/rad_20060808_searscanad.pdf.

16.    Attached hereto as Exhibit 15 is a true and correct copy of Romeo & Dye's section16.net blog Q&A, *available at* Posting of Alan Dye, http://www.section16.net/QA/?ForumId=2661 (Nov. 14, 2006 3:20 EST).

17.    Attached hereto as Exhibit 16 is a true and correct copy of *In re HealthSouth Securities Litigation*, No. CV-03-BE-1500-S (N.D. Ala.), SEC Amicus Letter to Judge Bowdre (Nov. 28, 2006), *available at* http://www.sec.gov/litigation/briefs/2006/healthsouthbrief.pdf.

18.    Attached hereto as Exhibit 17 is a true and correct copy of The Children's Investment Fund Management (UK) LLP Form 13F-HR, filed with the SEC on May 15, 2007.

19.    Attached hereto as Exhibit 18 is a true and correct copy of Bhattiprolu Murti and Desiree J. Hanford, *Hedge Fund Files to Acquire Over $500M in CSX Stk*, Dow Jones News Service, April 18, 2007.

20.    Attached hereto as Exhibit 19 is a true and correct copy of U.S. Securities & Exchange Commission, Item 402 of Regulation S-K – Executive Compensation, Questions & Answers of General Applicability, *available at*

http://www.sec.gov/divisions/corpfin/guidance/execcomp402interp.htm.

21.    Attached hereto as Exhibit 20 is a true and correct copy of The Children's Investment Fund Management (UK) LLP Form 13F-HR, filed with the SEC on August 14, 2007.

22.    Attached hereto as Exhibit 21 is a true and correct copy of The Children's Investment Fund Management (UK) LLP Form 13F-HR, filed with the SEC on November 14, 2007.

23.    Attached hereto as Exhibit 22 is a true and correct copy of Travis Reed, *Investors Partner to Nominate Minority Slate to CSX Board*, Associated Press, December 19, 2007.

24.    Attached hereto as Exhibit 23 is a true and correct copy of Press Release, TCI and 3G Form Group Owning 8.3% of CSX Shares and an Additional 11.8% Economic Interest (December 19, 2007).

25.    Attached hereto as Exhibit 24 is a true and correct copy of Michael J. de la Merced, *Hedge Funds Propose CSX Directors, Starting Proxy Battle,* New York Times, December 20, 2007.

26.    Attached hereto as Exhibit 25 is a true and correct copy of The Children's Investment Fund Management (UK) LLP Form 13F-HR, filed with the SEC on February 14, 2008.

27.    Attached hereto as Exhibit 26 is a true and correct copy of The Children's Investment Fund Management (UK) LLP Form 13F-HR, filed with the SEC on May 15, 2008.

28.    Attached hereto as Exhibit 27 is a true and correct copy of Henry T.C. Hu & Bernard Black, *Equity and Debt Decoupling and Empty Voting II:  Importance and Extensions*, 156 U. Pa. L. Rev. 625, 653 (2008).

29.    Attached hereto as Exhibit 28 is a true and correct copy of *CSX, TCI Dig In*, Traffic World, January 7, 2008.

30.    Attached hereto as Exhibit 29 is a true and correct copy of CSX's Schedule 14A, filed with the SEC on March 17, 2008.

31.    Attached hereto as Exhibit 30 is a true and correct copy of Citigroup Inc., Form 13F-HR, filed with the SEC on February 14, 2008.

32.    Attached hereto as Exhibit 31 is a true and correct copy of Deutsche Bank AG., Form 13F-HR, filed with the SEC on February 14, 2008.

_____/S/ Howard O. Godnick_____

Howard O. Godnick

Dated:  New York, New York
         May 27, 2008

119 UPALR 853                                                    Page 1
119 U. Pa. L. Rev. 853
(Cite as: 119 U. Pa. L. Rev. 853)

C University of Pennsylvania Law Review
April, 1971

Comment

**\*853** SECTION 13(D) AND DISCLOSURE OF CORPORATE EQUITY OWNERSHIP

Copyright (c) 1971 by University of Pennsylvania

The Williams Act, passed by Congress in 1968, was entitled "An Act [p] roviding for full disclosure of corporate equity ownership of securities under the Securities Exchange Act of 1934." [FN1] At the time, few understood the Act to be anything other than a law requiring disclosure of information by those who attempt to gain control of a corporation through a device known as the tender offer. [FN2] The Act was broader, however, amending the Securities Exchange Act of 1934 [FN3] by adding sections 13(d) and (e), as well as the tender offer provisions in sections 14(d), (e), and (f). [FN4] Section 13(d) established a searching disclosure requirement for persons who become direct or indirect beneficial owners of more than ten percent of any equity security registered under section 12 of the Exchange Act, [FN5] subject to certain exemptions. [FN6]**\*854** The disclosure required went beyond mere identification of the acquirers to include pertinent details of the actual transactions involved. [FN7] Because disclosure requirements are placed on those who are already large shareholders rather than those who may acquire stock at some future date, section 13(d) has the potential to affect greatly the internal distribution of corporate power. Both during the debate over the Williams Act and since that time, however, the section has been generally ignored-in part because of the drama surrounding the accompanying tender offer legislation, [FN8] and in part because of its limited impact at the ten percent level. [FN9]

No consistent, workable rationale has been developed to guide the application of this section, despite its broad impact on shareholder attempts to exert control over corporate management. The decision of the Court of Appeals for the Seventh Circuit in *Bath Industries, Inc. v. Blot*, [FN10] the first reported instance of a contested suit involving the disclosure requirements of section 13(d) outside the context of a tender offer, [FN11] manifests the confusion surrounding application of the section. The recent passage of Public Law 91-567, [FN12] an act which *inter alia* amended section 13(d) by lowering the level of equity security ownership triggering the disclosure requirements from ten percent to five percent, broadens the section's impact and makes even more pressing the need to come to grips with the confusion.

This Comment will suggest that while the potential impact of section 13(d) was never adequately explained or discussed prior to enactment, Congress did articulate its underlying purpose: giving notice to investors of potential changes in corporate management, thus allowing the market to adjust its evaluation of the corporation's worth. Accordingly, this Comment will argue that section 13(d) was intended as a broad disclosure provision exposing every rapid, large-scale aggregation of equity securities, regardless of the method or the purpose of **\*855** accumulation. Following this analysis, the Comment will suggest that the Seventh Circuit, endeavoring to dilute the advantage disclosure affords incumbent corporate management against outside control suitors, has limited application of the section to a narrower class than intended by Congress. The effect of this narrowing is to take away intended investor protection, while barely reducing management advantage.

I. THE WILLIAMS ACT

A. *The Statutory Scheme*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-02764-LAK    Document 60-2    Filed 05/27/2008    Page 2 of 20

Section 13(d)(1) of the Exchange Act now provides:

Any person who, after acquiring directly or indirectly the beneficial ownership of any equity security ... is directly or indirectly the beneficial owner of more than 5 per centum of such class shall, within ten days after such acquisition, send to the issuer of the security at its principal executive office, by registered or certified mail, send to each exchange where the security is traded, and file with the Commission, a statement containing such of the following information, and such additional information, as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors .... [FN13]

The disclosure required includes the background and identity of the acquirers, the source of their financing, the size of their shareholdings, information as to any "contracts, arrangements, or understandings with any person with respect to any securities of the issuer," and, if the purpose of the acquisition is "to acquire control of the business," any plans or proposals to make major changes. [FN14] The class of persons subject to the disclosure requirements of section 13(d)(1) also includes those defined in section 13(d)(3):

When two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a "person" for the purposes of this section. [FN15]

**\*856** Section 13(d)(6) then provides exemptions from this disclosure scheme for acquisitions made by means of exchange offers under the Securities Act of 1933, [FN16] acquisitions by the issuer of a security, [FN17] and

(B) any acquisition of the beneficial ownership of a security which, together with all other acquisitions by the same person of securities of the same class during the preceding twelve months, does not exceed 2 per centum of that class;
....
(D) any acquisition or proposed acquisition of a security which the Commission, by rules or regulations or by order, shall exempt from the provisions of this subsection as not entered into for the purpose of, and not having the effect of, changing or influencing the control of the issuer or otherwise as not comprehended within the purposes of this subsection. [FN18]

Pursuant to rulemaking power granted by section 13(d)(1), the Securities and Exchange Commission has promulgated rules 13d-1 through 13d-4, covering the filing of the statement, amendments to the statement, computation of the percentage of beneficial ownership of a class of securities, and an exemption from filing of amendments where preemptive subscription rights to the stock of an issuer are exercised by a shareholder whose holdings were greater than five percent on the date of enactment. [FN19]

Thus at least in the case of an individual, the disclosure requirements are mechanically triggered by an acquisition susceptible of documentary proof, and reporting is required within a fixed period of time. Only two situations within the statute require examination of the subjective nature of the term "purpose." The first, the discretionary exemption under section 13(d)(6)(D), has not arisen because the Commission has not yet promulgated any exempting rules based on purpose to affect control. [FN20] The second provision incorporating "purpose" into the triggering mechanism, section 13(d)(3), is more trouble-**\*857** some. It defines as a "person" any two or more persons who act together as a group "for the purpose of acquiring, holding, or disposing of securities of an issuer." In this instance, the normal evidentiary problems associated with the search for a "purpose" are compounded by the difficulty involved in reading this definition into section 13(d)(1), the basic disclosure provision. Rarely do groups coalescing to exert control formalize their ties prior to buying securities, yet that appears to be the situation anticipated by the statutory definition of a group required to file. When the inquiry focuses instead on more common situations where relationships are subject to change and less formal, and where the acquisition of securities may predate the relationship, the words of the statute provide little guidance in determining when disclosure is appropriate. A mechanical insertion of the definition of a group into the text of section 13(d)(1) suggests that disclosure is conditioned upon first, the existence of two or more persons acting as a group, secondly, acquisition *by*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-02764-LAK    Document 60-2    Filed 05/27/2008    Page 3 of 20

*the group* of the beneficial ownership of an equity security, and thirdly, total beneficial ownership of more than five percent of that class of securities following the acquisition. [FN21] This problem of applying the statute to a group, along with difficulties in discerning the purpose of section 13(d), are manifest in the *Bath* decision.

The breadth and depth of section 13(d) are illustrated by comparing its provisions with other disclosure requirements imposed on shareholders by the Exchange Act. Section 14(d), the other provision added by the Williams Act, requires disclosure of the information enumerated in section 13(d)(1) by any person launching a tender offer which, if consummated, would raise his ownership above the same five percent triggering level. [FN22] While requiring disclosure before acquisition of the securities, section 14(d) covers a much narrower class because it excludes those within section 13(d) who acquire their ownership in any manner other than a tender offer and includes individuals outside section 13(d) only in the rare instance when they attempt to reach the five percent level of ownership through a tender offer and fail. [FN23] Insofar as one accepts the thesis that tender offers are launched only by those with an intention to assert control immediately, section 13(d) sweeps much more widely than section 14(d), requiring disclosure from persons having**858** no control motive [FN24] and regardless of the method of acquisition. The other disclosure requirement imposed on shareholders by the Exchange Act may also be profitably compared with section 13(d). In the simplest case covered by the original section 13(d), individual acquisition of the beneficial ownership of ten percent of a class of equity securities, disclosure of the fact of ownership would also be required by section 16(a), [FN25] which is primarily keyed to recovery of profits from insiders trading in securities. But the latter section is inapplicable below the ten percent level, and requires only disclosure of the fact of ownership, not the detailed and extensive information required under section 13(d). Thus by comparison to section 14(d), section 13(d) covers a broader field of purchases and has a weaker correlation with actual intention to control. By comparison to section 16(a), section 13(d) probes more deeply, eliciting detailed information about the acquirer helpful in assessing any potential use of the acquisition to assert control. Falling thus between these two, the language of section 13(d) suggests that its purpose is neither disclosure from those attempting to gain corporate control nor disclosure from those attempting to manipulate securities for market profits.

The following sections will analyze the development of the rationale and mechanics of section 13(d) and show that Congress, while preoccupied with protecting shareholders and investors affected by a tender offer takeover bid, intended through section 13(d) to bring to the public eye every rapid accumulation of securities which, because of its size and unified control, carries the potential to affect the control of a corporation, and through that control, the market's valuation of the issuer's securities. After examining the legislative history of section 13(d), this Comment will argue that the overall purpose of section 13(d) requires a broad reading of its language to eliminate the requirement of either an acquisition or intent to acquire subsequent to formation of a *859 group whose members individually hold securities which, when cumulated, amount to more than five percent of the class outstanding.

### B. *Historical Perspective*

In the first session of the Eighty-ninth Congress, Senator Harrison Williams of New Jersey introduced S. 2731, [FN26] a bill which would have amended sections 10 and 16(a) of the Exchange Act [FN27] to require disclosure prior to the acquisition of more than five percent of a class of equity securities registered under section 12 of the Exchange Act. [FN28] The floor speech he gave in support of the bill was directed primarily against actual corporate takeovers, [FN29] but Senator Williams recognized that his bill would also require that "any substantial accumulation of shares of a company registered under that act must be preceded by the filing of public information ...." [FN30] Although the advance disclosure provision did not survive, Senator Williams at that time saw disclosure of the accumulation as "the only way that corporations, their stockholders, and employees can be adequately prepared in advance to meet the threat of the takeover specialist." [FN31] Filling out the rationale for his proposed scheme, he noted that restricting disclosure to cases involving tender offers would leave "gaps":

> **860** Substantial open market or negotiated accumulations of shares may precede or accompany a tender offer or may otherwise relate to shifts in control of which investors should be aware. Where these accumulations are made in the open market there are real dangers of manipulation to the prejudice of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

investors, and in any case, the public is entitled to the protection resulting from advance disclosure of large-scale acquisitions. Therefore, to complete the picture, the same notice and disclosure provisions [as required before tender offers] also would apply to any person or group before he or it can acquire or increase ownership of such a security to more than 5 percent of the class by means other than a cash tender offer. [FN32]

He qualified his proposal in two ways to exempt acquisitions which posed no threat to corporate control. First, because "casual purchases and acquisitions which are not substantial should not be hindered," an exception would be provided for an acquisition which together with all others effected during the preceding twelve months would not exceed two percent of a class of securities. Secondly, the Securities and Exchange Commission would be empowered to grant exemptions if particular acquisitions would not "in any way change or influence the ultimate control of the corporation." [FN33] The latter provision, said the Senator, would "further protect the legitimate buyer who may be acquiring 5 percent of a corporation strictly for investment purposes and with absolutely no interest in affecting management policy." [FN34] Thus Senator Williams did not want to make proof of actual intent to assert control a prerequisite to the working of the disclosure provisions; yet he was reluctant to establish a rule requiring everyone-without exemption, and regardless of control motive-to disclose the required information upon acquisition of large amounts of a corporation's equity securities.

Senator Williams' proposals, however, soon underwent substantial revision. In particular, disclosure in advance of acquisition was eliminated. During the second session of the Eighty-ninth Congress, while S. 2731 was still pending, Senator Williams had printed in the Congressional Record a favorable memorandum on the bill from the Securities and Exchange Commission. [FN35] This memorandum recommended that the provisions of the bill be added to sections 13 and 14 rather than sections 10 and 16, and laid out a scheme for the legislation which remains substantially the same in the present Williams Act. The Commission took the position that requiring advance notice of a proposed*861 acquisition would create difficulty, and argued instead that requiring "a statement [be] filed not more than 5 days after the acquisition would be less burdensome to beneficial owners who become subject to it." [FN36] The Commission also made a similar recommendation for tender offer disclosure, but suggested an additional five day advance confidential filing with the Commission only. [FN37]

This effort to better balance the burdens involved in disclosure actually causes chaos for Senator Williams' proposed scheme if the underlying rationale is still assumed to be providing notice to the shareholders, management, and employees of a corporation of an outstanding intention to acquire a potentially controlling block of securities. Rather than being informed of impending purchases to facilitate action before consummation of the transaction, these classes were to be informed only of a *fait accompli* except insofar as a buyer was unable to complete his acquisitions program within ten days (the figure later adopted) of the time he exceeded the specified level. Senator Williams' original rationale being inadequate to support the disclosure requirement, one must look to subsequent legislative history for an explanation of the perceived value of after-the-fact disclosure.

### C. *Later History of the Williams Act*

S. 2731 was not enacted, but the next year Senator Williams reintroduced the bill as S. 510, [FN38] the only important change being an increase from five to ten percent in the level of stock ownership triggering the disclosure requirements. When he introduced the bill, Senator Williams commented on the terms which were to become section 13(d):

> While some people might say that this information should be filed before the securities are acquired, disclosure after the transaction avoids upsetting the free and open auction market where buyer and seller normally do not disclose the extent of their interest and avoids prematurely disclosing the terms of privately negotiated transactions. [FN39]

**\*862** The Commission having previously given reasons why advance disclosure could not reasonably be required, [FN40] Senator Williams now was explaining why advance disclosure should not be required. Contrary to the tender offer provisions and the initial scheme of the Williams Bill, the modified Williams Bill, as this statement

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

indicates, was not designed to negate the normal inflationary market impact of rapid, large-scale securities purchases. The central problem now is developing a uniformly applicable rationale to justify the after-the-fact disclosure requirement for open market accumulations.

In his statement opening the hearings on S. 510, [FN41] Senator Williams clearly distinguished from tender offers open market or privately negotiated purchases of securities as methods of obtaining control of a corporation. Stating that "anyone acquiring more than 10 percent of a class of an equity security" by *either* method would be required to disclose under the proposed legislation, he explicated the purpose for disclosure pursuant to each:

> This is the only way that corporations, their shareholders and potential investors can adequately evaluate a tender offer or the *possible effects* of a change in substantial shareholdings. [FN42]

Thus in the tender offer context disclosure was deemed necessary to allow the stockholder to decide whether to sell or retain his securities; outside that context, post-acquisition disclosure was viewed as providing a basis for market re-evaluation of the corporation. Senator Williams' opening statement imputing this meaning to the new provision became sharpened as the hearings progressed.

Both Senator Williams and the Chairman of the Commission argued that section 13(d)'s disclosure was a necessary addition to the provisions of section 16(a) [FN43] because the acquisition of a substantial block of stock would enable a stockholder to "achieve the power to influence the management and control of the corporation ...." [FN44] And, as the Chairman stated:

> [Section 16(a)] does not give the public stockholders adequate information about the arrangements surrounding the acquisition or the purchaser's intentions with respect to the company. [FN45]

Disclosure had to be extensive to allow investors to discount possible changes in the issuer and the probability of change. Coverage had to *863 be broad to insure including all persons who might attempt to assert control. [FN46] Although the sheer size of the block would cause some re-evaluation of the issuer's securities, the number of shares and the acquirer's identity were already provided by section 16(a). The value of section 13(d) lay in the disclosure of additional information concerning the acquirer, the acquisition transaction, and the acquirer's future plans. Such information would be valuable in calculating the possibility of, and the effect of, an exercise of control.

The criticisms leveled at S. 501 during the hearings are also illuminating. They illustrate that while objections were made to the entire bill [FN47] and to section 13(d) in particular, the Commission and Subcommittee rejected attacks which challenged the need for, or the practicality of, using the section to disclose the potential for change represented by any given accumulation. Arthur Fleischer, objecting to the bill on the grounds that "strong outside stockholder interests" were beneficial, criticized section 13(d) as redundant vis-à-vis section 16(a) and harmful to the extent broader disclosure was provided. [FN48] He added the observation that the disclosure of future plans from an outsider holding only ten percent of the stock would be of little value, and that in any case disclosure came after acquisition and too late to be used by an investor in the market. The latter statement, of course, was no longer responsive to Senator Williams' position. A letter from attorney Milton H. Cohen offered a detailed criticism of the proposed legislation, including the redundancy of sections 16(a) and 13(d). [FN49] He felt that section 13(d) should be aimed at the "incipient situation or the situation where several persons act together in the acquisition of 10%" [FN50] solely to eliminate the loophole for these two categories in section 16(a), *864 and that disclosure based on ownership alone, if any, should be limited to the identity and holdings of any associates of the acquirer and their present and desired representation on the issuer's board of directors. Mr. Cohen leveled the criticism that section 13(d)'s broad disclosure requirement would apply to all acquisitions made after adoption of the bill regardless of any intention to assert control, whereas pre-passage owners would not be required to disclose any information beyond their identity unless they were to take some steps toward influencing the corporation's management [FN51]-a result he found both anomalous and undesirable. For this reason, Mr. Cohen preferred application of section 13(d)'s broad disclosure provision only on the basis of an intention to assert control. [FN52] The Chairman of the Commission replied directly to this criticism, setting forth again the rationale for the Act:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

With respect to open market acquisitions, we disagree with the suggestion [of Mr. Cohen] that disclosure be postponed until the acquirer actually assumes management or makes a tender offer, since disclosure at that point would come too late to inform the shareholders of the *potential* influence represented by the existence of a block of this size. We also do not believe that the situation of a person or group becoming a 10% shareholder is analogous to that of an existing 10% shareholder, since the latter's influence and intentions are presumably reflected in the corporation's policy and known to the other shareholders. [FN53]

The first sentence of this rebuttal presents a reading of the section which would require application to all cases of potential influence on control rather than to only those instances of an actual attempt to assert control or to situations where further stock acquisitions are seen as a threat to the market. The Chairman's goal was a disclosure requirement which would inform investors at the earliest possible moment of each new aggregation of voting power which represented a possibility that a change in the management of the corporation would shortly be effected by the holders of the new block of securities. Although management would be influenced by mere knowledge of the block's existence, the Chairman was focusing on the period, usually brief, between the accumulation and actual exercise, perhaps by threat of a proxy contest, of the voting power represented by the block. The second sentence explains the exemption of existing shareholders as consistent with the **865** logic of post-acquisition, pre-control-assertion disclosure. Just as section 13(d)(6)(B) exempts acquisitions totaling less than two percent within a twelve month period [FN54] on the theory that slow accumulations are unlikely to affect control, the exemption of existing shareholders reflects a judgment that longstanding pre-enactment accumulations would already have worked their effect, if any. Under the new rationale, no reason exists to treat old and new owners on a level of parity.

Thus the Subcommittee and the witnesses at the Senate hearings were aware that section 13(d) as written, [FN55] and as later enacted with a ten day period for disclosure, was to encompass every accumulation of more than ten percent of a class of equity securities registered under section 12 of the Exchange Act when that accumulation was rapid enough to fall outside the two percent de minimis exemption. [FN56] The rationale developed for this scheme was that disclosure of the existence of such a block of securities would provide shareholders and investors with notice of the potential influence of this block on control of the issuer. In attempting to correlate the means and rationale of this section, the conclusion is compelled that the drafters believed that the speed with which such a block is accumulated is sufficiently related to subsequent attempts to influence the control of a corporation to justify this scheme of disclosure rather than some other scheme based on actual intent to assert control. The decision to require disclosure of all such blocks regardless of any control motive furthers an intent that the class of shareholders and other investors felt to be in need of protection from the vicissitudes of takeovers were to be so protected by being given the opportunity to react to the mere possibility of such an intent in addition to the actuality thereof. Unless management is considered the sole beneficiary of this disclosure, a proposition vehemently denied after S. 510 was introduced, [FN57] those receiving the information have no effective **866** means at their disposal to prevent the assertion of control. Rather, they are being supplied with information necessary to adjust for that possibility in their valuation of the corporation for investment purposes. Each item of information required-number of shares acccumulated, the acquirer's identity, his mode of financing, and whether his intent is to acquire control-enters into the calculus in computing the probability of a change in the management of the issuer due to the new block position, and thereby influences the investor's decision whether to keep constant, decrease, or increase his holdings in the issuer.

In terms of protection for investors, then, the method of aggregation is not vital, but rather the existence of a new aggregation itself. If five percent ownership of a class of securities is deemed the point at which disclosure is necessary for this rationale, the point set by the amended Williams Act, then there is little distinction between a market purchase of six percent and the grouping together of three previously independent shareholders, each owning two percent. In each instance a new block of securities exceeding the critical size has become subject to a common control and direction. The latter block is not similar to one held prior to passage, and thus exempt from disclosure, because the aim of section 13(d) is disclosure of new aggregations which present the possibility of a change. The logic of the Act assumes that longstanding accumulations will have already effected their influence, and that slowly acquired blocks do not represent a control threat. All new, rapidly acquired accumulations are within the disclosure requirements because the ability to influence control has been achieved, and only recently.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

II. BATH INDUSTRIES, INC. V. BLOT

The decision of the Seventh Circuit in *Bath Industries, Inc. v. Blot*[FN58] resulted in the first construction of section 13(d) outside the context of a tender offer. [FN59] The *Bath* controversy arose from the efforts of several shareholders of Bath Industries, Inc., to obtain control of the corporation by pooling their voting interests. [FN60] Besides having *867 purchased a substantial number of additional shares in support of their efforts, the defendants had held over ten percent of Bath's voting shares prior to any agreement to act together. Yet, as of the time management brought suit to prevent this attempt no statement complying with the requirements of section 13(d) had been filed by any of the defendants. Given such a complete disregard of the requirements, the court had substantial freedom in construing the section because almost any conceivable interpretation would have resulted in finding a violation.

Bath Industries is a Delaware holding company with business offices in Milwaukee, Wisconsin. Bath was created as a holding company in 1967 when one of its present subsidiaries, Bath Iron Works Corporation, was reorganized. In July 1968 Emmet Blot, a member of the Board of Directors of Bath and a shareholder since early 1966, indicated some dissatisfaction with William Kyle, the chief executive of Bath, and expressed the feeling that Kyle should be replaced. During August of that year he informed the Board of Directors of Bath of his belief that the corporation needed a new chief executive and that the office of the holding company should be moved to New York City. Although Blot found little support for his views among the members of the Board, by April of 1969 he had found potential allies in the president of Madison Fund, Inc., a registered, closed-end investment company, and the vice president of Donner Corporation, which acts as investing agent and nominee for the William Donner family. [FN61] These two expressed an interest in purchasing Kyle's shares for either their corporations or themselves and a meeting involving these two, Blot, Kyle, and several other members of Bath's management was held in New York City on April 19. No offer to purchase the stock came out of the meeting. During the time between this meeting and the end of August, Blot endeavored to find more allies for an effort to gain control. He eventually enlisted the cooperation of several financial institutions, but at the same time revealed his maneuvering to Bath: another member of the Board of Directors learned indirectly that attempts had been made to gain the support of American Express, which operates a number of mutual funds. A series of meetings ensued as the two sides tried to reach an accommodation, but when no agreement seemed possible, management filed suit in federal district court alleging violation by nine specified defendants of several sections of the Exchange Act, including section 13(d).

The district court issued a temporary restraining order and then held an evidentiary hearing on a request for a preliminary injunction. [FN62] After finding that jurisdiction to entertain the suit existed under section 27 of the Exchange Act, [FN63] the court ruled that the defendants constituted a group which had probably violated section 13(d) and, weighing *868 the "balance of hardships," granted a preliminary injunction against proceeding with the plan to take control. [FN64]

The court's reasons for finding a violation were not fully developed, and its technique of stating disjoint findings leaves some room for doubt. The court merely stated that the defendants

> constitute a "group" which has acted together for the purpose of acquiring or holding the securities of Bath, as such a group is defined by Section 13(d)(3) of the Williams Act ... and which has beneficially owned, directly or indirectly, more than ten percent of Bath common stock and preferred stock .... The court concludes that the members of the group agreed to pool their voting interests in Bath securities and to act in concert to carry out their plan to obtain control of the corporation through the election of a new chief executive officer of their choosing and to increase the size of the Board of Directors of Bath. In addition to pooling their voting interests it appears that certain members of the group acquired additional shares of Bath in order further to insure the success of their plan. [FN65]

Notwithstanding the last sentence quoted, the court went on to conclude that the defendants should have complied with the provisions of section 13(d) "[w]ithin ten days after the group described above agreed to act

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-02764-LAK     Document 60-2     Filed 05/27/2008     Page 8 of 20

together." [FN66] This statement indicates the district court's perception that the agreement to act together rather than the acquisition of additional securities constituted the triggering act for purposes of section 13(d).

On appeal, the Seventh Circuit sustained the preliminary injunction and remanded the case to the district court for further proceedings. [FN67] The parties, before the court of appeals, each argued that the legislative history supported their respective readings of the statute's requirements. The plaintiff cited the House report on the Williams Act [FN68] to support a disclosure requirement at the time of formation if a group's members in combination held in excess of ten percent of the outstanding equity securities of a corporation; [FN69] the defendants referred to statements evincing an intent to require disclosure of securities purchases. [FN70] The court took a different perspective and found that the *869 purpose of the Act was to protect investors, including "investors in general as well as the stockholders of the specific corporation involved." [FN71] The court also noted Senator Williams' avowed intent "to avoid tipping the scales either in favor of management or in favor of the person making the takeover bids." [FN72]

The parties having articulated what they felt to be the relevant statutory considerations, the court held that compliance with the disclosure provisions of section 13(d) is required

when, but only when, any group of stockholders owning more than 10% of the outstanding shares of the corporation agree to act in concert *to acquire additional shares.* [FN73]

The court added an evidentiary presumption to this holding to offset the plaintiff's obvious difficulty in proving the existence of such an agreement by the group:

[O]nce it is shown that such a group has agreed to pursue a common objective, and once it is further shown that a member of the group has *thereafter* purchased additional shares of the corporation's stock, then a *rebuttable presumption* arises that such purchase was made pursuant to an agreement of the group as of that date to acquire shares in furtherance of its objectives. [FN74]

The court thus ignored both of two possible readings of section 13(d) when a group's existing holdings exceed ten percent-disclosure within ten days of formation, or disclosure within ten days after acquisition of additional shares [FN75]-in favor of an interpretation that triggered disclosure in advance of the purchase but independent of any other concerted group activities in pursuit of control. Because of a superficial inquiry into both the purpose of the Williams Act and the mechanics of section 13(d), the court derived a simplistic reading of the legislative intent: protect investors without helping management.

The requirement of pre-acquisition disclosure rested upon a finding that although existing shareholders were free to discuss mutual concerns with respect to the corporation,

*870 when such a group ... reaches the point where it decides to buy additional stock ... full disclosure ... will be required .... [I]t is at this point that the need for the Act's protection becomes critical. [FN76]

This construction seems based upon a perceived statutory purpose to protect investors from the market impact of *purchases* of additional securities rather than the market impact of major shifts in corporate voting power and the attendant ability to influence management of the corporation. The latter would occur regardless of any additional acquisitions where previously independent shareholders pooled their shares in furtherance of a joint purpose. The origin of this fundamental error is in the Seventh Circuit's reading of "the overriding purpose" of the Act. The court felt that disclosure is necessary "when substantial shareholders or management undertake to acquire shares ... for the purpose of solidifying their own position ...." [FN77] The analysis of the legislative history laid out in the first section of this Comment demonstrates, however, that the purpose of the Williams Act was to force disclosure from anyone gaining control of large blocks of securities. [FN78] Thus, the court's construction cannot be supported by the legislative history.

Even if the court's view of section 13(d)'s purpose is accepted, its own decision recognizes the difficulty in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fulfilling this purpose. According to the court:

> Apart from the unlikely execution of a formal agreement by a group to acquire additional shares ... proof of such an agreement to acquire would be difficult for anyone not privy to the group's plan. [FN79]

For this reason, any purchase made by a member of the group would be rebuttably presumed to be on behalf of the group and in furtherance of group goals. Although an argument could be made that a decision to acquire additional shares would precede the actual purchase by at least one day, a filing by the group ten days after a group purchase would not constitute a section 13(d) violation under the Seventh Circuit's decision. Speaking of the purchase date, the *Bath* court said the acquisition would be presumed to have been "made pursuant to an agreement of the group *as of that date* to acquire shares in furtherance of its objectives." [FN80] Disclosure ten days after the purchase would not protect against market effects of the transaction. At the same time, if **871** no purchases are made after formation of the group, disclosure will not necessarily be forthcoming, since the difficulty of proving the formation of an intent to acquire remains. Thus, the real effect of the Seventh Circuit's holding is to require disclosure only after additional purchases have been made, a result which effectuates neither the court's goal nor the purpose of the statute as stated by this Comment.

Further difficulty arises because the court's view of the rationale of the Williams Act cannot alter the delay between the triggering event and disclosure. [FN81] Because disclosure lags behind the agreement to buy more shares by ten days, substantial purchases may follow the triggering event but be completed before disclosure, a sequence of events which precludes any forewarning of the possible market impact of the purchases. The existence of this lag underscores the fallacy of the Seventh Circuit's construction of section 13(d). Therefore, even assuming the court's reading of the underlying purpose to be correct, the mechanics of the Act make achievement of such a purpose impossible. This inconsistency reinforces the conclusion that the purpose was to forewarn of possible changes in corporate control, not to forewarn of possible market activity.

Part of the court's difficulty may have stemmed from its attempt to construe the statute without "tipping the scales" so as to benefit management. The court implicitly assumed the legitimacy of existing shareholders gathering to discuss issues relating to their corporation, even to the point of formulating a "determination to take over control of management." [FN82] The court's fear was that formulating a rule which would trigger disclosure from a shareholder group immediately upon formation would hamper such efforts by shareholders because management would be apprised of the existence of the dissident group and would be able to take prompt measures to thwart any actual attempts to acquire control. If this was the court's thinking, there is no reason other than the discarded market-impact rationale [FN83] why disclosure should not be triggered only by actual purchases subsequent to the group organization, rather than by the mere formation of an intent to purchase. **872** Several commentators [FN84] have suggested that the *Bath* result is an admirable balancing of interests because it provides disclosure before the takeover is completed, whereas if disclosure is delayed until "[a]fter the triggering purchase has been made, ... the takeover may already be a *fait accompli*, thus nullifying the Act's goal of providing early disclosure." [FN85] But this argument assumes too much, because a shareholder group may be able to acquire control on the strength of its members' existing merged holdings without acquiring any additional shares. If the purpose of section 13(d) is to require disclosure of potential control changes, the aggregation of voting power in the shareholder group is a more critical point for disclosure than a decision to acquire additional shares to reinforce the group's position. Whether disclosure under the *Bath* holding comes within ten days of the group's decision to acquire more shares or within ten days after the acquisition, significant undisclosed control maneuvers will be possible. Thus in *Bath*, if the original holdings of Blot and his allied mutual funds had been large enough to assert control, the corporation could have been radically altered without any advance disclosure to individual investors of the possibility of such a change. This result is directly contrary to the purpose of the Williams Act. The legislative history shows that Congress' intent was not the disclosure of market purchases but the disclosure of all instances of rapidly accumulated voting power.

The correct result in a shareholder group situation is to require disclosure within ten days of the formation of a group whose members' combined holdings exceed five percent of an issuer's securities. This would effectuate the Act's purpose of disclosing accumulations of large security blocks in order to give investors maximum warning of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

potential changes. An initial problem with such a suggestion is that the statutory construction necessary to produce such a result is somewhat forced. Disclosure upon formation would be achieved by holding that upon formation the group, as a distinct entity, acquires beneficial ownership of the individual members' shares, thus triggering section 13(d)(1)'s disclosure requirements. But section 13(d)(3)'s definition of a group for the purposes of the Williams Act is any "group [acting together] for the purpose of acquiring, holding, or disposing of securities." Triggering disclosure immediately upon formation would make the qualifying language following "group" in section 13(d)(3) superfluous because any group acquiring beneficial ownership would have to disclose without further inquiry into whether its purpose was to acquire, hold, or dispose of securities. [FN86] But an analysis of the Act indicates that section 13(d)(3) was designed primarily for the situation *873 where the group's members at the time of formation held no shares and sought to buy up control while escaping section 13(d)(1) by limiting individual purchases to five percent. In the absence of an assumption of legislative perfection, the existence of redundant language in a specific application of the statute does not call for rejecting the construction which supports such an application. Section 13(d)(3) can be read to require disclosure from a group before any subsequent purchases; [FN87] the legislative intent strongly supports such a result. [FN88]

A federal district court, in *GAF Corp. v. Milstein*, [FN89] deciding a "group" case distinguishable from *Bath* in that no subsequent purchases occurred, also ignored the legislative history. The *Milstein* court reasoned:

> Legislative history is extremely useful for interpreting a statute when the Act's language is ambiguous .... [But] the specific statutory language [in section 13(d)(3)] is clear and compels the construction that the reportable event is the acquisition of the requisite amount of shares and not the mere formation of a group with a view to control. [FN90]

This statement, however, followed a declaration that the term "acquisition" is nowhere defined in the Williams Act, [FN91] an admission which allows the reading suggested by this Comment. Subsequent court decisions should disregard the Seventh Circuit's holding and that in *Milstein* in favor of that construction of section 13(d) urged by this Comment, which most comports with the entire Act's purpose.

Potentially more serious problems with this Comment's interpretation of section 13(d) result from the effects of such a sweeping disclosure *874 requirement. In addition to the defensive tactics presently available, [FN92] management will have a powerful legal tool to use against any competing groups. Perhaps this result caused the Seventh Circuit to hinge disclosure on an event after formation of the group. In fact, the interpretation suggested by this Comment may have such a chilling effect as to preclude any efforts by existing shareholders to assert control. Any group that desired to assert control would have to file the required documents at the time of formation, because any subsequent purchases or actual efforts at control would alert management to seek immediate injunctive relief from a district court. [FN93] Significant information regarding the takeover group would be publicly disclosed while management, absent any share transactions, [FN94] could maneuver in relative secrecy. But Congress was well informed of the Williams Act's potential for harm, especially the harm in endeavoring to protect investors caught in a control fight by giving an additional tactical advantage to incumbent management. Even granting the sincerity of Senator Williams' concern with "tipping the balance," [FN95] the legislative history compels the conclusion that Congress intended to force disclosure of potential control threats regardless of their form.

Another area in which a broad interpretation of section 13(d) could cause difficulty is the activities of large financial institutions. [FN96] For example, a number of mutual funds with a common investment advisor could be considered subject to section 13(d) although individual fund holdings did not exceed five percent. Further, institutional investors "acting together" to influence management policy might fall within the definition of a "group." At the hearings on the Williams Act representatives of these institutions objected to disclosure. They *875 maintained that disclosure would have undesirable consequences, and since mutual funds would never seek control, they and similar groups should not be covered, [FN97] section 13(d) being ultimately aimed at potential control situations.

But such arguments are no reason for a court either to adopt the *Bath* rule or to attempt to mold an exception for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

119 UPALR 853
119 U. Pa. L. Rev. 853
(Cite as: 119 U. Pa. L. Rev. 853)

such institutions. Congress did not enact a general exception for institutions in response to the objections. Rather, the hearings on S. 3431 demonstrate a relative lack of sympathy for the potential difficulties with section 13(d) of financial institutions and other dealers in large blocks of securities. Senator Williams, for example, dismissed the problem of the burden on market makers as speculative. [FN98] Furthermore, the Commission was given ample authority to exempt financial institutions from the disclosure requirements of section 13(d), or at least to mitigate any hardships. Section 13(d)(6)(D), [FN99] contained in the original Williams Act as section 13(d)(5)(D), granted the Commission authority to exempt "any acquisition ... not entered into for the purpose of ... influencing the control of the issuer ...." Section 13(d)(5), added in the recent bill which lowered the disclosure level to five percent, granted the Commission authority to allow a more simplified statement to be filed by a person acquiring the requisite amount of securities "in the ordinary course of his business." [FN100] According to the Report of the Senate Committee which added section 13(d)(5) to S. 3431:

> **\*876** Acquisitions by stock exchange specialists, over-the-counter marketmakers, and investment companies might well fall within the class of persons to which this amendment addresses itself. While not exempting such persons from reporting, this amendment will enable the Commission to make the reporting provisions less burdensome for them by removing the requirements which do not appear necessary to protect investors. [FN101]

Thus, the construction of section 13(d) suggested by this Comment in order to provide the intended maximum protection to individual investors should not and need not have adverse effects on financial institutions engaged solely in securities trading.

<div align="center">CONCLUSION</div>

Although the primary evils aimed at by Congress in passing the Williams Act were abuses of the cash tender offer device, the statutory mechanism created also requires disclosure whenever any rapid accumulation of voting power occurs. The goal was to give investors notice of the potential for change in control of a corporation so that a more accurate valuation of its securities might be possible. Thus, disclosure should be required any time a group of existing security owners whose combined holdings exceed five percent of the existing shares join together to act in furtherance of a common goal, because at that moment they have acquired the organizational efficiency and economic power to pose a control threat. A consistently rational interpretation of the statute's words to cover the shareholder group situation is impossible; disclosure within ten days of group formation is the construction of section 13(d) most faithful to Congress' purpose and is the standard that courts should employ.

One must concede that such a broad disclosure provision will significantly aid incumbent management in thwarting changes; in fact, this aspect was a prominent source of objection to the entire Williams Act. There can be little doubt, however, that Congress, through its committees, was fully aware of the implications of section 13(d) for corporate control struggles; a dysfunctional effect does not justify judicial abandonment of the statutory intent. Rather, if Congress is displeased with the substantial advantage given management, Congress may reconsider the wisdom of the Act and adopt remedial legislation: **\*877** either wholesale repeal or an attempt to carve out exceptions or special rules for particular groups is possible. [FN102]

Imperfect statutes working hardships on innocent classes frequently invite judicial creativity: to effect a minimum of undesirable consequences it may on occasion be necessary for the judiciary to lubricate the internal mechanics of a statute. In the process, statutory language may clearly be stretched, meaning given contrary to any vision of the legislation's framers. But license to construe so freely should not be taken inconsiderately; judicial resolution of difficulties in statutory language ought to be undertaken only with a well-developed awareness of and sensitivity to the problems the legislature attempted to resolve. Diverging from this standard in the *Bath* case, the Seventh Circuit has established a precedent which, if followed, will do little to aid the shareholder and much to further entrench management.

[FN1]. Act of July 29, 1968, Pub. L. No. 90-439, 82 Stat. 454, *amending* Securities Exchange Act §§ 12-14, 15

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

U.S.C. §§ 78*l*-n (1964).

[FN2]. The term tender offer generally refers to a solicitation of shareholders of an issuer to tender their shareholdings to the party making the offer. The offeror's consideration may be expressed either in cash or in other securities, giving rise to the terms "cash tender offer" and "stock tender offer." While the former is commonly referred to as simply a "tender offer" and the latter as an "exchange offer," the Williams Act used the term "tender offer" in § 14(d) without definition and then exempted offers made "by means of a registration statement under the Securities Act of 1933," namely situations where the consideration was another security. § 14(d)(8)(A), 15 U.S.C. § 78n(d)(8)(A) (Supp. V, 1970). Discussions of cash tender offers are numerous and exhaustive, both before the Williams Act, *e.g.*, Fleischer & Mundheim, *Corporate Acquisition by Tender Offer*, 115 U. PA. L. REV. 317 (1967); Hayes & Taussig, *Tactics of Cash Takeover Bids*, HARV. BUS. REV.., Mar.-Apr. 1967, at 135; Swanson, *S. 510 and the Regulation of Cash Tender Offers: Distinguishing St. George from the Dragon*, 5 HARV. J. LEGIS.. 431 (1968), and after, *e.g.*, Schmults & Kelly, *Disclosure in Connection with Cash Take-over Bids: The New Regulations*, 24 BUS. LAW. 19 (1968); Note, *Cash Tender Offers*, 83 HARV. L. REV.. 377 (1969). The Act of Dec. 22, 1970, Pub. L. No. 91-567, § 4, 84 Stat. 1497, deleted this exemption, thus broadening the Act's application to all types of tender offers.

[FN3]. 15 U.S.C. §§ 78a-hh (1964) [hereinafter referred to as Exchange Act].

[FN4]. *Id.* §§ 78m(d)-(e), 78n(d)-(f) (Supp. V, 1970). In addition, the Act amended Exchange Act § 12(i), *id.* § 78*l*(i), "to make clear that the authority and responsibility to administer and enforce the new disclosure provisions ..., insofar as they apply to the securities of banks, will be vested in the various Federal banking agencies rather than in the Securities and Exchange Commission." S. REP. NO. 550, 90th Cong., 1st Sess. 7 (1967).

[FN5]. 15 U.S.C. § 78*l* (1964).

[FN6]. *Id.* §§ 78m(d)(5)(A)-(D) (Supp. V, 1970), *redesignated* §§ 78m(d)(6)(A)-(D) *by* Act of Dec. 22, 1970, Pub. L. No. 91-567, § 1(b), 84 Stat. 1497; 17 C.F.R. § 240.13d-4 (1971). Exchange Act § 13(e), 15 U.S.C. § 78m(e) (Supp. V, 1970), makes unlawful any purchases by an issuer of its own securities in contravention of any rules promulgated thereunder by the Securities and Exchange Commission (Commission) to prevent fraudulent, deceptive, or manipulative acts. Rule 13e-1, 17 C.F.R. § 240.13e-1 (1971), requires disclosure of background information when repurchases are made while a tender offer is outstanding. Proposed rule 13e-2, SEC Securities Exchange Act Release No. 8930 (July 13, 1970), 35 Fed. Reg. 11.410 (1970), would place price and volume limits on repurchases undertaken at any time.

[FN7]. 15 U.S.C. §§ 78m(d)(1)(A)-(E) (Supp. V, 1970); 17 C.F.R. §§ 240.13d-2 to -101 (1971).

[FN8]. This is evidenced by the depth of interest in the subject. *See* note 2 *supra*.

[FN9]. Through June 1970 the Commission had received a total of only 542 filings under § 13(d). *Hearings on H.R. 4285, S. 3431, & S. 336 Before the Subcomm. on Commerce & Finance of the House Comm. on Interstate & Foreign Commerce*, 91st Cong., 2d Sess. 4 (1970) (Memorandum of the Commission). Of these, 160 had been filed within the preceding 5 months. *See Hearings on S. 336 & S. 3431 Before the Subcomm. on Securities of the Senate Comm. on Banking & Currency*, 91st Cong., 2d Sess. 9 (1970) (testimony of Commission Chairman Hamer H. Budge). Those persons directly affected at the 10% level were apparently either few in number or little desirous of appearing before the subcommittees to object. But many objections were voiced when the disclosure level was to be lowered to 5%. *See* sources cited note 97 *infra*.

[FN10]. 427 F.2d 97 (7th Cir. 1970).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN11]. A subsequent district court case has also been reported. GAF Corp. v. Milstein, [Current] CCH SEC. L. REP. ¶ 92,975 (S.D.N.Y. Mar. 22, 1971) (discussed at notes 89-91 *infra* & accompanying text). One Commission enforcement proceeding was brought against a group which included Madison Square Garden Corp., but was terminated prior to a hearing on the merits. SEC v. Madison Square Garden Corp., [1969-1970 Transfer Binder] CCH FED. SEC. L. REP. ¶ 92,649 (S.D.N.Y. Apr. 29, 1970).

[FN12]. Act of Dec. 22, 1970, Pub. L. No. 91-567, 84 Stat. 1497.

[FN13]. *Id.* § 1(a), *amending* 15 U.S.C. § 78m(d)(1) (Supp. V, 1970). The discussion of § 13(d) in this Comment will be in terms of the Williams Act as amended, with a 5% disclosure level. The only deviation from this format will be in the discussion of Bath Industries, Inc. v. Blot, 427 F.2d 97 (7th Cir. 1970). Text accompanying notes 58-85 *infra*. The discussions of the Williams Act's rationale and the nature of its ramifications are valid for either a 10% or 5% disclosure level.

[FN14]. 15 U.S.C. §§ 78m(d)(1)(A)-(E) (Supp. V, 1970).

[FN15]. *Id.* § 78m(d)(3).

[FN16]. Exchange Act § 13(d)(5)(A), 15 U.S.C. § 78m(d)(5)(A) (Supp. V, 1970), *redesignated* § 13(d)(6)(A) *by* Act of Dec. 22, 1970, Pub. L. No. 91-567, § 1(b), 84 Stat. 1497.

[FN17]. *Id.* § 13(d)(5)(C), 15 U.S.C. § 78m(d)(5)(C) (Supp. V, 1970), *redesignated* § 13(d)(6)(C) *by* Act of Dec. 22, 1970, Pub. L. No. 91-567, § 1(b), 84 Stat. 1497. Section 13(e) prohibits issuer purchases generally, except in accordance with Commission rules. *See* note 6 *supra*.

[FN18]. Exchange Act §§ 13(d)(5)(B), (D), 15 U.S.C. §§ 78m(d)(5)(B), (D) (Supp. V, 1970), *redesignated* §§ 13(d)(6)(B), (D) *by* Act of Dec. 22, 1970, Pub. L. No. 91-567, § 1(b), 84 Stat. 1497.

[FN19]. SEC Securities Exchange Act Release No. 9060 (Jan. 18, 1971), 36 Fed. Reg. 976 (1971), *amending* 17 C.F.R. §§ 240.13d-1 to -4 (1971).

[FN20]. The only exemption under this section, rule 13d-4, SEC Securities Exchange Act Release No. 9060 (Jan. 18, 1971), 36 Fed. Reg. 976, 977 (1971), *amending* 17 C.F.R. § 240.13d-4 (1971), operates only to relieve persons already owning more than 5%, who acquire additional securities through certain preemptive subscription rights and is conditioned upon a filing pursuant to § 16(a).

[FN21]. *Compare* § 13(d)(1) *with* § 13(d)(3), 15 U.S.C. §§ 78m(d)(1), (3) (Supp. V, 1970).

[FN22]. Act of Dec. 22, 1970, Pub. L. No. 91-567, § 3, 84 Stat. 1497, *amending* 15 U.S.C. § 78n(d)(1) (Supp. V, 1970).

[FN23]. Thus, a person who has successfully completed a tender offer for more than 5% of an issuer's outstanding securities will have disclosed twice: once at the time of the tender offer, pursuant to § 14(d)(1), and again when the securities are taken up, pursuant to § 13(d)(1). Under the *Bath* decision, § 13(d) would cover even an unsuccessful tender offer when used by a *group* of stockholders owning more than 10% (now 5%) of the outstanding stock, because, regardless of success or failure, disclosure by such a group is required when the members agree to act in concert to acquire additional shares. *See* text accompanying notes 73-75 *infra*.

[FN24]. The exemption provided in § 13(d)(6)(D) does not modify the general statutory scheme of ignoring

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

intention to assert control. Although § 13(d)(6)(D) permits the Commission to promulgate rules exempting certain acquisitions "as not entered into for the purpose of" influencing control of the issuer, this section does not contemplate a general exception for all cases where no control motive exists. First, if Congress desired the statute to apply only to control cases, it could have incorporated a general exemption instead of relying on the Commission's rulemaking power. This reliance indicates that Congress intended that the Commission, in its discretion, promulgate rules based on objective criteria and applying to certain limited cases. This conclusion is buttressed by the differing disclosure requirements in control and non-control cases under § 13(d)(1). Text accompanying note 14 *supra*. Secondly, even if the Commission should provide a general exception in non-control cases, the acquirer's burden of proving a lack of control motive and the Commission's limited resources for such determinations would probably result in the actual exemption of few acquisitions. Finally, the Commission has not, in fact, granted any exemptions or laid down any rules based on the lack of a control motive. Text accompanying note 20 *supra*. It appears that the enactment was designed to require disclosure whenever a potential for control exists, leaving to investors the task of assessing the probability and impact of its assertion.

[FN25]. 15 U.S.C. § 78p(a) (1964). This section is concerned with security market values rather than control per se. *See* Feldman & Teberg, *Beneficial Ownership Under Section 16 of the Securities Exchange Act of 1934*, 17 W. RES. L. REV.. 1054 (1964). *Compare* Exchange Act § 3(a)(9) *with* § 13(d)(3).

[FN26]. S. 2731, 89th Cong., 1st Sess. (1965).

[FN27]. 15 U.S.C. §§ 78j, 78p(a) (1964). Section 16(a) requires officers, directors, and beneficial owners of more than 10% of a class of equity securities of an issuer registered under § 12, within 10 days after attaining such status, to file with the Commission and any national exchange upon which the securities are registered a statement giving the "amount of all equity securities of such issuer of which he is the beneficial owner." *Id.* § 78p(a). Section 16(b), *id.* § 78p(b), causes any profit from the sale and purchase of any security of the issuer within a 6 month period to "inure to and be recoverable by the issuer." The Commission subsequently objected to adding to § 16(a) the 5% disclosure provisions of S. 2731 because of the effect on the provisions for short-term profit recovery. 112 CONG. REC. 19,004 (1966) (Memorandum of the Commission in remarks of Senator Williams).

[FN28]. The general scheme of S. 2731 required ongoing disclosure under § 16(a) at the 5% level and added subsections (c) and (d) to § 10, requiring a notice be sent to the issuer and a statement filed with the Commission 20 days prior to either acquisition of beneficial ownership of more than 5% of any class of equity securities registered under the Exchange Act (proposed § 10(c)) or the making of a cash tender offer which, if successful, would result in ownership of more than 5% of such securities (proposed § 10(d)). *See* 112 CONG. REC. 19,003 (1966) (Memorandum of the Commission in remarks of Senator Williams). The statement was to contain substantially the same information now required under the Williams Act. *See* text accompanying note 14 *supra*.

[FN29]. Near the beginning of his speech he stated:
    In recent years we have seen proud old companies reduced to corporate shells after white-collar pirates have seized control with funds from sources which are unknown in many cases, then sold or traded away the best assets, later to split up most of the loot among themselves.

111 CONG. REC. 28,257 (1965) (remarks of Senator Williams). He was later more cautious in using similar terminology. *See Hearings on S. 510 Before the Subcomm. on Securities of the Senate Comm. on Banking & Currency*, 90th Cong., 1st Sess. 123 (1967) [hereinafter cited as *Senate Hearings on S. 510*].
[FN30]. 111 CONG. REC. 28,259 (1965) (remarks of Senator Williams).

[FN31]. *Id.*

[FN32]. *Id.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-02764-LAK    Document 60-2    Filed 05/27/2008    Page 15 of 20
Page 15

[FN33]. *Id.*

[FN34]. *Id.*

[FN35]. 112 CONG. REC. 19,003, 19,006 (1966) (Memorandum of the Commission in remarks of Senator Williams).

[FN36]. *Id.* 19,004. The Commission added, "Indeed, we envision some types of situations in which compliance with an advance notice requirement would be impossible, such as acquisitions by inheritance or by gift of which the recipient had no advance notice." *Id.* Not only would advance disclosure often be impossible, but in many cases it would be misleading: a putative purchaser could decide against the acquisition after filing; other investors could be induced into selling or buying on the basis of the filer's initial intention. The requirement as enacted was filing within 10 days after acquisition. 15 U.S.C. § 78m(d)(1) (Supp. V. 1970).

[FN37]. 112 CONG. REC. 19,005 (1966). This requirement was eventually dropped in favor of simultaneous reporting and announcement of the tender offer. 15 U.S.C. § 78n(d)(1) (Supp. V, 1970).

[FN38]. S. 510, 90th Cong., 1st Sess. (1967); *see* 113 CONG. REC. 854-57 (1967) (remarks of Senator Williams).

[FN39]. 113 CONG. REC. 856 (1967) (remarks of Senator Williams).

[FN40]. *See* note 36 *supra.*

[FN41]. *Senate Hearings on S. 510, supra* note 29, at 1-3.

[FN42]. *Id.* 2-3 (emphasis added).

[FN43]. *Id.* 24 (testimony of Commission Chairman Manuel F. Cohen); *id.* 36 (statement of Commission Chairman Manuel F. Cohen).

[FN44]. *Id.* 36.

[FN45]. *Id.*

[FN46]. Acknowledging that requiring disclosure by every "person or group of persons" who acquired 10% of a class of stock could be dysfunctional in some situations, the Chairman stated that in cases of purchases for purely investment reasons, "[i]f we are given authority to deal with that problem, we will as we have with problems of this sort for the past 30 years." *Id.* 25. The Commission has not, however, promulgated any rules which would permit an acquirer of securities to omit disclosure on the basis of his purpose for acquiring those securities. *See* note 20 *supra* & text accompanying note 19 *supra.* The policy of the Commission to require disclosure from any person acquiring the requisite amount of securities is reflected in Chairman Budge's testimony at the House hearings on S. 3431:

> [Rep. Moss]: Does the Commission feel the normal reporting requirements should be applicable to the specialists or the market makers if the percent is reduced to 5 percent?

> [Chairman Budge]: I think it is very important that it apply to both ....

*Hearings on H.R. 4285, S. 3431, & S. 336 Before the Subcomm. on Commerce & Finance of the House Comm. on Interstate & Foreign Commerce,* 91st Cong., 2d Sess. 58 (1970).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN47]. *E.g., Senate Hearings on S. 510, supra* note 29, at 136-39 (statement of Prof. Robert H. Mundheim, University of Pennsylvania Law School).

[FN48]. *Id.* 128-29 (Mr. Fleischer is a member of the New York Bar); *see id.* 65 (statement of Carlos L. Israels, member of the New York Bar); *id.* 161 (statement of Francis R. Schanck, First Vice President, Investment Bankers Ass'n of America).

[FN49]. *Id.* 246.

[FN50]. *Id.* 247.

[FN51]. "[T]he *existing* beneficial owner [must make] disclosures of this kind ... only if he becomes a participant in a proxy contest under Rule 14a-11, i.e., seeks to take over management in some degree ...." *Id.*

[FN52]. *Id.*

[FN53]. *Id.* 201-02 (Supplemental Memorandum of the SEC with Respect to Certain Comments on S. 510); *see id.* 242 (statement by Cohen, Swados, Wright, Hanifin & Bradford, Attorneys at Law, Buffalo, N.Y.).

[FN54]. Exchange Act § 13(d)(5)(B), 15 U.S.C. § 78m(d)(5)(B) (Supp. V. 1970), *redesignated* § 13(d)(6)(B) *by* Act of Dec. 22, 1970, Pub. L. No. 91-567, § 1(b), 84 Stat. 1497.

[FN55]. No further changes were made in § 13(d), and no further attempts were made to refine the rationale for the disclosure provisions. The House Subcommittee hearings, *Hearings on H.R. 14475 & S. 510 Before the Subcomm. on Commerce & Finance of the House Comm. on Interstate & Foreign Commerce*, 90th Cong., 2d Sess. (1968), focused on specific objections to other parts of the Act by interest groups and related federal agencies; the relevant portions of the House Committee Report, H.R. REP. NO. 1711, 90th Cong., 2d Sess. (1968), and Senate Committee Report, S. REP. NO. 550, 90th Cong., 1st Sess. (1967), offer little additional assistance. No significant floor debate took place before the bill was enacted on July 29, 1968.

[FN56]. The legislative history of Pub. L. No. 91-567, lowering the level of disclosure to 5%, is similarly devoid of further explanation. The lower disclosure level's function appears to be to flush out persons who acquired 9% of an issuer's outstanding securities through open market purchases prior to making a tender offer. *See* S. REP. NO. 1125, 91st Cong., 2d Sess. 3 (1970); *Hearing to Ascertain the Views of Hamer H. Budge, Chairman of the Securities and Exchange Commission, on Problems in the Securities Industry Before the Subcomm. on Securities of the Senate Comm. on Banking & Currency*, 91st Cong., 1st Sess. 15 (1969).

[FN57]. *See, e.g.,* S. REP. NO. 550, 90th Cong., 1st Sess. 3 (1967); 113 CONG. REC. 24,664 (1967) (remarks of Senator Williams).

[FN58]. 427 F.2d 97 (7th Cir. 1970), *aff'g* 305 F. Supp. 526 (E.D. Wis. 1969).

[FN59]. *See* note 11 *supra.* The only provisions of § 13(d) incorporated in the § 14(d) tender offer provisions relate to the nature of the information to be disclosed. *See* Exchange Act § 14(d)(1), 78 U.S.C. § 78n(d)(1) (Supp. V, 1970), *as amended,* Act of Dec. 22, 1970, Pub. L. No. 91-567, § 3, 84 Stat. 1497.

[FN60]. The controversy occurred at a time when Bath Iron Works, a Bath Industries subsidiary, was a competitor for a contract described by the Seventh Circuit as possibly "the largest shipbuilding contract ever awarded by the United States Navy." 427 F.2d at 104. The preliminary injunction against the defendants was sustained on the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

119 UPALR 853
119 U. Pa. L. Rev. 853
**(Cite as: 119 U. Pa. L. Rev. 853)**

grounds that

    the district court could have properly concluded that the adverse effects on Bath's position in the [contract] competition of a timely Williams Act disclosure would have been significantly less than the adverse effects of a disclosure coming after this action was filed and after the defendants had already acquired sufficient Bath stock to make the change in management a near certainty.

*Id.* at 113.

[FN61]. *Id.* at 105.

[FN62]. 305 F. Supp. 526, 528-29 (E.D. Wis. 1969).

[FN63]. *Id.* at 535-37.

[FN64]. *Id.* at 537-39.

[FN65]. *Id.* at 537. In further support of his holding, the district judge took judicial notice of "the fact that Wisconsin is the most civilized state in the Union." *Id.* at 533 n.4.

[FN66]. *Id.* at 538.

[FN67]. 427 F.2d at 114. As often occurs in a struggle for corporate control, this decision ended the litigation and a settlement was announced on Nov. 4, 1970. Wall St. J., Nov. 4, 1970, at 16, col. 1.

[FN68]. H.R. REP. NO. 1711, 90th Cong., 2d Sess. (1968).

[FN69]. 427 F.2d at 108-09. The case arose before the disclosure level was reduced to 5%. *See* note 13 *supra.*

[FN70]. *Id.* at 109.

[FN71]. *Id.*

[FN72]. *Id.* (quoting 113 CONG. REC. 24,664 (1967)).

[FN73]. *Id.* In the first footnote of the opinion, quoting § 13(d) "in relevant part," the court omitted all exemptions provided by § 13(d) (5) except the 2% rule. *See id.* at 101-02 n.1. If this was intended to suggest that there must be an agreement to acquire at least 2% of the shares within a twelve month period it would narrow the impact of the decision greatly. It would not, however, change the rationale of the decision, and indeed it might narrow the class of shareholders required to disclose so much that the statute would be largely nullified.

[FN74]. *Id.* at 110.

[FN75]. *See* text accompanying note 21 *supra.*

[FN76]. 427 F.2d at 110.

[FN77]. *Id.* at 109.

[FN78]. *See* text accompanying notes 26-57 *supra.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN79]. 427 F.2d at 110.

[FN80]. *Id.* (emphasis added).

[FN81]. *See* Exchange Act § 13(d)(1), 15 U.S.C. § 78m(d)(1) (Supp. V, 1970).

[FN82]. 427 F.2d at 110. The application of § 13(d) to a group immediately upon formation as urged by this Comment may arguably conflict with the philosophy behind the exemption for solicitations of less than 10 persons contained in the proxy rules. 17 C.F.R. § 240.14a-2(a) (1971). Absent this exemption, Blot's conduct would conceivably require disclosure by virtue of the definition of a solicitation in rule 14a-1. *Id.* § 240.14a-1. The easiest resolution of this conflict is to note that the 10 person exemption is merely a Commission rule promulgated pursuant to Exchange Act § 14(a)'s general mandate. 15 U.S.C. § 78n(a) (1964). The absence of any substantial reference in the hearings or reports on the Williams Act to the proxy rules indicates that Congress' intent was to require disclosure in every instance within § 13(d)'s logic. This most recent enactment in response to Congress' current view of the requirements of corporate democracy should take precedence over the older proxy regulations, even before considering the superiority of a statute over a rule. *Cf.* Comment, 71 COLUM. L. REV. 466, 472 (1971).

[FN83]. *See* text accompanying notes 26-31 *supra.*

[FN84]. Comment, 45 N.Y.U.L. REV. 1136, 1141 (1970); BNA SEC. REG. & L. REP. B-1, B-12 (June 17, 1970) ("The court's decision is an admirable blend of theory and fact ....").

[FN85]. Comment, 45 N.Y.U.L. REV. 1136, 1141 (1970).

[FN86]. *See id.*

[FN87]. *See* Comment, 71 COLUM. L. REV. 466, 473 (1971) ("such a construction of the statute [is] permissible on its face"). The author, however, by giving great weight to the professed neutrality of the operation of the Act's provisions, concluded that such a result did not comport with the Williams Act's overall purpose.

[FN88]. *See* S. REP. NO. 550, 90th Cong., 1st Sess. 8 (1967):
> The group would be deemed to have become the beneficial owner, directly or indirectly, of more than 10 percent of a class of securities at the time they agreed to act in concert. Consequently, the group would be required to [ [disclose] ... within 10 days after they agree to act together, whether or not any member of the group had acquired any securities at that time. This provision is designed to obtain full disclosure of the identity of any person or group obtaining the benefits of ownership of securities ....

Professor Loss originally supported this view of the statute, *see* 6 L. LOSS, SECURITIES REGULATION 3664 (Supp. 1969), but has apparently changed his mind. *See* GAF Corp. v. Milstein, [Current] CCH FED. SEC. L. REP. ¶ 92,975, at 90,607 (S.D.N.Y. Mar. 22, 1971).

[FN89]. [Current] CCH FED. SEC. L. REP. ¶ 92,975, at 90,604 (S.D.N.Y. Mar. 22, 1971).

[FN90]. *Id.* at 90,607.

[FN91]. *Id.* at 90,606. The district judge's holding that disclosure is not required absent actual post-formation purchases may result from using the erroneous market-impact rationale for the statute in giving meaning to the term "acquisition." *See id.* at 90,609.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN92]. *See, e.g.,* Fleischer & Mundheim, *supra* note 2, at 321-23.

[FN93]. The relief granted in *Bath* was a preliminary injunction enjoining the defendants from proceeding with their plans to call a special shareholders' meeting and remove Kyle, the chief executive officer. 427 F.2d at 114. As suggested by the *Bath* court, 427 F.2d at 111 n.7, other relief measures are available.

[FN94]. *See* note 6 *supra.*

[FN95]. *But cf.* § 13(d)(1): "Any person ... [required to disclose shall] send to the issuer of the security at its principal executive office, by registered or certified mail, send to each exchange where the security is traded, and file with the Commission [the information required by § 13(d)] ...." Although the latter two means of disclosure may be expected to provide adequate public dissemination, the first reflects a concern that incumbent management be the first to know. *See also* 6 L. LOSS, SECURITIES REGULATION 3664-65 (Supp. 1969): "Perhaps the committees' silence [in response to the arguments against the wisdom of the Williams Act, *see* notes 47-51 *supra* & accompanying text] ... reflects some philosophical overtones here whose disquieting effect *cannot* be entirely removed."

[FN96]. *See* Comment, 45 N.Y.U.L. REV. 1136, 1143 n.50 (1970). The magnitude of this aspect of the problem should not be underestimated. The Commission has compiled statistics from a representative sample of the largest corporations whose stock is traded on the New York, American, and over-the-counter exchanges, indicating that at least 10% of the stock of each of 348 of the 656 companies in the sample was held by institutional investors numbering 10 or fewer, and at least 15% of the stock of 182 of those companies was held by institutional investors numbering 5 or fewer. *See* SECURITIES & EXCHANGE COMM'N, INSTITUTIONAL INVESTOR STUDY, H.R. DOC. NO.. 64, 92d Cong., 1st Sess., pt. 5, at 2844-45 (1971).

[FN97]. *See Hearings on S. 336 & S. 3431 Before the Subcomm. on Securities of the Senate Comm. on Banking & Currency,* 91st Cong., 2d Sess. 101, 102-03 (1970) (statement of Donald L. Calvin, Vice President, New York Stock Exchange); *id.* 110, 111-12 (statement of Richard B. Walbert, President, Nat'l Ass'n of Securities Dealers, Inc.); *id.* 114, 116-20 (statement of Craig Severance, Chairman of the Federal Securities Acts Committee, Investment Bankers Ass'n). Arguing that mutual funds would never seek control appears especially unpersuasive in light of the role played by several mutual funds in the *Bath case. See* 427 F.2d at 105-08. Although a fund would probably not seek control for itself, its buying power or already owned shares are available in a control struggle.

Indeed, the Commission itself-though reporting that "[i]nstitutions do not generally involve themselves directly in corporate decision-making ..."- concluded a recent study with the observation that:

> Some institutions have been actively and significantly involved in facilitating contested transfers of corporate control. In such cases, unlike ordinary corporate decision-making, the benefits to participating institutions may be more certain: in addition to trading and tendering profits, institutions may receive special inducements and benefits not made available to other shareholders of target companies.

SECURITIES & EXCHANGE COMM'N, INSTITUTIONAL INVESTOR STUDY, H.R. DOC. NO.. 64, 92d Cong., 1st Sess., pt. 5, at 2849 (1971).

[FN98]. HEARINGS ON S. 336, *supra* note 97, at 118 (reply of Senator Williams to Gordon L. Calvert, General Counsel, Investment Bankers Ass'n).

[FN99]. Exchange Act § 13(d)(5)(D), 15 U.S.C. § 78m(d)(5)(D) (Supp. V, 1970), *redesignated* § 13(d)(6)(D) *by* Act of Dec. 22, 1970, Pub. L. No. 91-567, § 1(b), 84 Stat. 1497.

[FN100]. The Commission ... may permit any person to file in lieu of the statement required by ... [§ 13(d)(1)] a notice stating the name of such person, the number of shares ... owned by him, the date of their acquisition and such other information as the Commission may specify, if it appears to the Commission that such securities were acquired

by such person in the ordinary course of his business and were not acquired for the purpose of and do not have the effect of changing or influencing the control of the issuer nor in connection with or as a participant in any transaction having such purpose or effect.

Act of Dec. 22, 1970, Pub. L. No. 91-567, § 1(b), 84 Stat. 1497.

[FN101]. H.R. REP. NO. 1655, 91st Cong., 2d Sess. 5 (1970).

[FN102]. The recent passage of S. 3431, *see* note 12 *supra*, indicates, however, that such a reconsideration is unlikely. Congress has instead widened the scope of § 13(d) by lowering the level of beneficial ownership triggering disclosure from 10% to 5%. Nevertheless, Congress should reassess its policy. Section 13(d) does seem an unnecessarily harsh measure to correct takeover-related abuses. The present statute operates to disadvantage those seeking control of a corporation, including groups of existing shareholders, regardless of their intentions with respect to future management of the corporation. If Congress' genuine concern is protecting against situations where corporate "raiders" assume control and liquidate the corporation's assets in a manner detrimental to the remaining shareholders, creation of a federal remedy for waste of corporate assets would be a more efficient method than disclosure under § 13(d).

119 U. Pa. L. Rev. 853

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Release No. 5609, Release No. 19140, Release No. 11616, Release No. 33-5609, Release No. 34-11616, Release No. 35-19140, 1975 WL 177966 (S.E.C. Release No.)

Page 1

C

Release No. 5609, Release No. 19140, Release No. 11616, Release No. 33-5609, Release No. 34-11616, Release No. 35-19140, 1975 WL 177966 (S.E.C. Release No.)

S.E.C. Release No.

Securities Act of 1933
Securities Exchange Act of 1934
Public Utility Holding Company Act of 1935

VARIOUS PROPOSALS RELATING TO DISCLOSURE OF BENEFICIAL OWNERS AND HOLDERS OF RECORD OF VOTING SECURITIES (PROPOSED RULES 13D-5, 13D-6 AND 13D-7 AND FORM 13D-5 AND AMENDMENTS TO RULES 13D-1, 13D-3 AND 14D-1, SCHEDULES 13D, 14A AND 14B AND FORMS 10, 10-K, 12 AND 12-K UNDER THE SECURITIES EXCHANGE ACT OF 1934; PROPOSED AMENDMENTS TO FORMS S-1, S-2, S-3, S-11 AND 1-A UNDER THE SECURITIES ACT OF 1933; AND PROPOSED AMENDMENTS TO FORM U5S UNDER THE PUBLIC UTILITY HOLDING COMPANY ACT OF 1935)

(File No. S7-580)

August 25, 1975

(Comment Period Expires November 30, 1975)
The Commission today proposed rules and amendments to its rules, schedules, and reporting and registration forms relating to the disclosure of beneficial ownership for purposes of: Sections 13(d) and 14(d) of the Securities Exchange Act of 1934 (Exchange Act); the proxy rules and certain registration and reporting forms under the Exchange Act, certain registration forms under the Securities Act of 1933 (Securities Act) and Form U5S under the Public Utility Holding Company Act of 1935 (Holding Company Act). In addition, proposals would require disclosure in proxy statements and certain reporting forms and registration statements of the 30 largest record holders of any class of voting securities and of the associated underlying voting authority.

The purpose of the proposals is to make more meaningful and in some cases, to clarify, disclosure of beneficial ownership and holders of record of securities of an issuer. The proposed rules and amendments under Sections 13 and 14 of the Exchange Act would (1) provide standards for determination of beneficial ownership for purposes of Sections 13(d) and 14(d); (2) require more disclosure in Schedule 13D about the nature of the beneficial ownership and about other beneficial owners of the securities; (3) require disclosure in Schedule 13D of record holders of the securities reported on; (4) permit filing of one Schedule 13D reporting different owners of the same securities; (5) deem certain persons who become beneficial owners of securities to have acquired such securities for purposes of Section 13(d)(1); (6) provide a short form acquisition notice, Form 13D-5, to be used by certain persons who acquire securities in the ordinary course of their business and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not for purposes of control; and (7) provide an exemption from the filing
requirements of Section 13(d)(1) for certain underwriters who acquire securities in
the ordinary course of a firm commitment underwriting.

The proposed amendments to the various registration and reporting forms requiring
disclosure of principal security holders as well as to Schedule 14A, Information
Required in Proxy Statement, would require disclosure, to the extent known by the
issuer, of (1) beneficial owners of more than five percent of any class of voting
securities and the nature of their ownership; (2) the aggregate amount and nature
of beneficial ownership by officers and directors of each class of voting
securities of the issuer; and (3) the 30 largest holders of record of each class of
voting securities (names of persons holding less than 1/10 of 1% of the outstanding
securities of the class need not be included) and their voting authority and
underlying voting authority, if known. The proposed rule relating to who is a
beneficial owner for purposes of Section 13(d) is proposed to be adopted as an
instruction to the proposed item relating to beneficial ownership, to Schedule 14B
under the proxy rules, and to Form U5S under the Holding Company Act which requires
disclosure of beneficial owners of more than one percent of any class of voting
securities.

**\*2** This release contains a general description of the background, purpose and
general effect of the proposals to assist in a better understanding of their
provisions. A brief synopsis is also included. However, attention is directed to
the proposals themselves for a more complete understanding.

BACKGROUND
Since the adoption of Sections 13(d) and 14(d) of the Exchange Act in 1968, as
amended, requiring disclosure by persons acquiring beneficial ownership of more
than five percent[FN1] of certain classes of securities of an issuer, there have been
questions raised about the standards to be applied for determination of beneficial
ownership for purposes of the reporting requirements of Sections 13(d) and 14(d).
The need for improved disclosure in this area has become more apparent recently
because of increased public interest in the identity and nationality of any person
who has the power to influence or effect changes in the control of corporations.

In the fall of 1974, the Commission conducted hearings concerning beneficial
ownership and related matters.[FN2] Letters of comment from interested persons and
written and oral testimony from witnesses at the hearings were received on, among
other things, the questions whether the term "beneficial owner" should be defined
and if so, how, and whether there should be additional disclosure by beneficial
owners and by companies about principal owners of their securities.

On the basis of the record of the Beneficial Ownership Hearings, Congressional
concern with full disclosure in this area[FN3] and the Commission's experience in
administering the existing rules, the Commission is proposing rules intended to
make more meaningful and to clarify disclosure concerning beneficial owners of
securities of public companies. The Commission is of the view that these proposals,
if adopted, would carry out the Congressional purpose for enacting Section
13(d).[FN4] In addition to disclosure about beneficial owners, the Commission is also
proposing disclosure of the 30 largest record holders of each class of voting
securities of an issuer, subject to a de minimus exception. This proposal reflects

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5609,  Release No. 19140,  Release No. 11616,  Release No.                    Page 3
33-5609,  Release No. 34-11616,  Release No. 35-19140, 1975 WL 177966
(S.E.C. Release No.)

some of the recommendations of the Interagency Steering Committee on Uniform
Corporate Reporting[FN5] which recommended that agencies such as the Commission, the
Civil Aeronautics Board, the Federal Communications Commission and the Interstate
Commerce Commission require disclosure of, among other things, the 30 largest
record holders and of their voting power with regard to issuers subject to the
authority of such agencies.

SYNOPSIS OF PROPOSALS

*Proposed Amendment to Rule 13d-1: Filing of Schedule 13D*
The proposed standards for determination of beneficial ownership (see discussion of
proposed Rule 13d-3 below) could result in there being more than one beneficial
owner of the same securities. This is particularly true with regard to the
attribution provisions of proposed Rule 13d-3(a) which deem family members sharing
the same home to be the beneficial owners of any securities held by any of them and
where the incidents of ownership are split between several persons. Therefore, it
is proposed to amend Rule 13d-1 to provide that only one report need be filed to
report beneficial ownership of either a family group sharing the same home or of
the same securities beneficially owned by different persons. In each case, the
report would have to identify the persons who are beneficial owners of the
securities and state that it is filed on behalf of all such persons. The proposals
allowing for one report relate only to Schedule 13D and Section 13(d)(1), not to
any short form filings on proposed Form 13D-5.

*Proposed Amendment to Rule 13d-3: Determination of Beneficial Ownership*
*3 Proposed Rule 13d-3 would provide standards for determining who is a beneficial
owner for purposes of deciding who must file the statement required by Section
13(d). At present, there is no explicit definition of the term "beneficial owner"
for purposes of this section.

Section 13(d) provides that any person who, after acquiring directly or indirectly
the beneficial ownership of any equity security of a class which is registered
pursuant to Section 12 of the Exchange Act, or any equity security of an insurance
company which would have been required to be so registered except for the exemption
contained in Section 12(g)(2)(G) of the Exchange Act, or any equity security issued
by a closed-end investment company registered under the Investment Company Act of
1940, is directly or indirectly the beneficial owner of more than five percent of
such class must file an acquisition statement with the Commission and send it to
the issuer and any exchange on which the securities are traded.

Proposed amendments to Rule 13d-3 would, for purposes of Section 13(d), deem any
person who directly or indirectly through any contract, arrangement, understanding
or relationship, has or shares the power to direct the voting or disposition of a
security or who has or shares the right to receive or the power to direct the
receipt of dividends from or the proceeds of sale of a security to be a beneficial
owner of such security. Thus, as a note to the proposed rule points out, there
could be more than one beneficial owner of the same securities, for example, the
account owner and the broker in a discretionary account. In addition, as another
note indicates, all securities beneficially owned by a person would be aggregated
in determining how many securities he owned, regardless of the nature of his
beneficial ownership. Thus, a person who served as investment adviser to a group of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5609,  Release No. 19140,  Release No. 11616,  Release No.                Page 4
33-5609,  Release No. 34-11616,  Release No. 35-19140, 1975 WL 177966
(S.E.C. Release No.)

mutual funds and also as adviser to discretionary accounts might be the beneficial
owner of the securities held by the funds as well as in the accounts and would have
to aggregate the number held in each capacity in determining whether or not he was
the beneficial owner of more than five percent of a class.

The proposed rule also provides specifically that certain persons, whether or not
they otherwise would come within the definition, would be deemed to be beneficial
owners. Thus, proposed Rule 13d-3(a)(1) deems a person to be a beneficial owner of
all securities beneficially owned by all individuals who are related by blood,
marriage or adoption to such person and who share the same home.

In addition, proposed Rule 13d-3(a)(2) incorporates and expands existing Rule 13d-3
and deems a person to be the beneficial owner of securities which he has a right to
acquire through the exercise of an option, warrant, or right exercisable within 60
days, through the conversion of convertible securities convertible within 60 days,
or through the revocation of a trust or similar arrangement. The definition of
beneficial owner, although intended to be broad, would not usually include such
persons as pledgees pursuant to a bona fide pledge agreement, remainder-men under
various trusts or estate arrangements or other persons who have an interest in
securities that is subject to a condition occurring over which they have no
control. As indicated in the proposed note to Rule 13d3-1(b), if the conditions are
within the control of the holder of the right to acquire the securities, the holder
would be considered to be the beneficial owner of the securities to which such
right related.

**\*4** The proposed rule contains a specific exclusion for persons who would come
within the definition solely because they are members of a national securities
exchange that has rules allowing the members to vote securities held of record,
without instruction, on certain routine matters.[FN6]

Although the proposal would provide specific standards for determination of
beneficial ownership, the actual determination usually rests on an analysis of the
facts and circumstances of each case. It should be noted that if there is a plan or
scheme to evade the reporting requirements of Section 13(d), a report under Section
13(d)(1) would be required.

The proposed rule also provides that any person may expressly declare in any
statement filed that the filing of the statement shall not be construed as an
admission that the person is the beneficial owner of the securities covered by the
statement. This is parallel to the provision in Rule 16a-3 under the Exchange Act
which allows a similar disavowance in reports filed pursuant to Section 16(a). It
should be noted, however, that this parallel does not carry over to the definition
of beneficial ownership. Since the purposes of Section 16 are different from those
of Sections 13(d) and 14(d), the Commission is not proposing to amend the rules
under Section 16. The current concept of beneficial ownership for purposes of
Section 16 would continue to be applicable, as defined and interpreted by the
Commission and construed by the federal courts.

*Proposed Rule 13d-5 and Form 13D-5: Short Form Acquisition Statement*
The proposed definition of beneficial owner includes persons who, although deemed
to have beneficial ownership of securities, have acquired the securities in the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ordinary course of their business and not with a view toward changing or effecting
a change in control of the issuer (for example, an endowment fund). In such cases,
filing of a Schedule 13D and prompt amendment of such schedule do not appear to be
necessary for the purposes of Section 13(d). To alleviate burdens on such persons,
Congress specifically provided in Section 13(d)(5) that the Commission could permit
the filing of a short form acquisition notice in lieu of the more detailed Schedule
13D which, since it is primarily aimed at obtaining information about potential
changes in control, calls for specific information about the beneficial owner, his
holdings and his plans.

The Commission believes, particularly in light of the proposed definition of
"beneficial owner" for purposes of Section 13(d), that it is appropriate to propose
a short form acquisition notice pursuant to Section 13(d)(5). Proposed Rule 13d-5
would make proposed Form 13D-5 available to any registered broker or dealer,
insurance company exempted from the Exchange Act pursuant to Section 12(g)(2)(G),
bank required to file under Section 12(i) of the Exchange Act, registered
investment company, registered investment adviser, or employee benefit plan,
pension fund or endowment fund that had acquired the beneficial ownership of more
than five percent of a class subject to Section 13(d)(1), if such person had
acquired the securities in the ordinary course of its business and not with the
purpose or effect of changing or influencing the control of the issue nor in
connection with, or as a participant, in any transaction having such purpose or
effect. This latter standard is the standard set by Section 13(d)(5). The short
form would be available only to the persons specified since they are the ones who
are most likely to have acquired more than a five percent interest in an issuer in
the ordinary course of their business.

*5 The proposed short form, Form 13D-5, would require the name and business address
of the principal office of the reporting person and the country of which such
person is a national; the name of the issuer; the reporting person's business; and
the amount and percentage of the class beneficially owned. In addition, any
nominees used as record holders and their addresses would have to be identified,
and the reporting person would have to represent that the securities were acquired
in the ordinary course of business as set forth in Section 13(d)(5).

In connection with the proposed short form acquisition notice, the Commission is
also proposing a rule relating to the necessity for amendment of such notice.
Existing Rule 13d-2 requires prompt amendment of an acquisition statement whenever
a material change in the facts reported on occurs. The Commission believes it would
be unworkable and also unnecessary for the protection of investors to require
amendments to the short form notice whenever any material change occurs, since many
of the persons filing such a notice would be financial institutions that might have
changes occurring frequently in the ordinary course of their businesses. Therefore
the Commission is proposing Rule 13d-5(b) which would, notwithstanding Rule 13d-2,
require that an amendment to the short form notice reflecting material changes as
of the end of the quarter be filed within ten days of the end of each calendar
quarter; one type of material change that would have to be reported would be a
decrease to five percent or less in the percent of the class owned. However, as a
proposed note indicates, once an amendment to the short form notice has been filed
reflecting ownership of five percent or less, no additional filing would be
required unless the person thereafter acquired securities resulting in ownership of
more than five percent of the class. To be able to use the quarterly update rather

Release No. 5609,  Release No. 19140,  Release No. 11616,  Release No.                    Page 6
33-5609,  Release No. 34-11616,  Release No. 35-19140, 1975 WL 177966
(S.E.C. Release No.)

than be subject to Rule 13d-2, the person would have to continue to be eligible to file a short form acquisition notice pursuant to the requirements set forth in proposed Rule 13d-5. If the person ceased to meet such requirements for the short form notice, he would, under proposed Rule 13d-5(c), immediately become subject to Rule 13d-1.

The Commission is of the opinion that the information that would be required in the short form acquisition notice would be sufficient for purposes of Section 13(d) so long as the securities were acquired in the ordinary course of business and not for the purpose (nor with the effect of) changing or influencing control of the issuer, nor in connection with any transaction having such purpose or effect. The Commission believes, however, that obtaining the short form information is important even where the object is not control since any large block of securities subject to direction by one person has the potential to be significant in influencing control of the issuer.

**6** The Commission is aware that information obtained in the short form notice may, at some future time, also be required pursuant to new Section 13(f) of the Exchange Act.[FN7] At such time as rules are adopted thereunder, the Commission intends, where appropriate, to revise any rules necessary to avoid duplication of information and unnecessary burdens on institutional holders of securities.

*Proposed Rule 13d-6: Acquisition of Securities*
The Commission is proposing Rule 13d-6 which would deem certain persons who become beneficial owners of securities to have "acquired" them for purposes of Section 13(d)(1) of the Exchange Act. Under proposed Rule 13d-6(a), a person such as a donee, executor, trustee or legatee who becomes a beneficial owner of securities without purchasing them shall be deemed to have "acquired" the securities for purposes of Section 13(d)(1).[FN8] This would make it clear that an acquisition statement would have to be filed by such person if he became beneficial owner of more than five percent of a class subject to Section 13(d)(1) even though he had not intended, and had taken no action, to become a beneficial owner.

Proposed Rule 13d-6(b) would deem persons who have agreed, whether orally or in writing, to act together for purposes of acquiring, holding or disposing of securities of an issuer to have "acquired," as of the time of the agreement, the securities beneficially owned by each of the persons in the group. This proposal is based in part on the *holding* of the court in *GAF v. Milstein*[FN9] where the court decided that, for purposes of Section 13(d)(1), it was not necessary for a group to acquire additional securities if their combined holdings, upon formation of the group, were more than five percent of the class.

*Proposed Rule 13d-7: Exemption for Certain Underwriters*
In connection with the proposal to provide a short form for persons who acquire securities in the ordinary course of their business, the Commission is proposing Rule 13d-7 which would provide an exemption from Section 13(d)(1) for acquisitions by certain underwriters. Section 13(d)(6)(D) of the Exchange Act provides that the Commission can exempt an acquisition from Section 13(d)(1) if it determines that the acquisition was not entered into for the purpose of, and does not have the effect of, changing or influencing the control of the issuer, or is otherwise not comprehended within the purposes of Section 13(d)(1).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*7** The Commission believes that an acquisition by an underwriter of securities as part of a good faith firm commitment underwriting where it is anticipated that he will, as part of the distribution, be immediately reselling such securities, is not the type of acquisition that Section 13(d)(1) was intended to cover. Proposed Rule 13d-7 would exempt an acquisition of securities by a person in the business of underwriting distributions through his participation in good faith in a firm commitment underwriting. However, the proposed rule would subject such underwriter to Section 13(d)(1) if he retains beneficial ownership of the securities for more than 40 days (based on the 40 day period specified in Section 4(3) of the Securities Act).

*Proposed Amendments to Schedule 13D: More Meaningful Disclosure of Beneficial Owners and Holders of Record*
Since the proposed concept of beneficial owner may be somewhat broader than the current understanding of the term, the Commission is proposing amendments to the Notes and Items 2, 3, 5 and 6 of Schedule 13D, the acquisition statement, to reflect the proposed definition and to obtain more meaningful information about the beneficial owners and the nature of their ownership. In addition, a proposed paragraph would call for information about any record holder of the securities beneficially owned. Information obtained in the Beneficial Ownership Hearings and experience in this area suggest that other amendments to Schedule 13D may be appropriate; the staff of the Commission is currently considering recommending additional amendments.

*Notes.* As it now reads, Note B of Schedule 13D (the Notes are proposed to be changed to Instructions) requires that, if a reporting person is a corporation, the information required by Items 2-6 of the Schedule must be included with respect to each officer and director and controlling person of the corporation. The Commission believes that requiring such detailed information about each officer is unnecessarily broad and thus is proposing to limit the requirement to information about each "executive" officer, as defined to include the president, secretary, treasurer, any vice president in charge of a principal business function (such as sales, administration or finance) and any other person who performs similar policy making functions for the corporation. In addition, the Note, proposed Instruction B, would be amended to refer to "affiliate" rather than "controlling person."

The Commission also proposes to add a new Instruction C which would reflect the proposed definition of beneficial owner as it relates to family members sharing the same home. Under the proposed definition, all such persons would be deemed to be beneficial owners of securities owned by any of them; however, proposed Rule 13d-1(c) would allow only one report to be filed on behalf of all such persons. Proposed Instruction C specifies that information called for by Items 2-6 would need to be provided only as to the head of the household and as to each adult member of the household who would be the beneficial owner of the securities in the absence of the special provisions for attribution set forth in Rule 13d-3(a)(1). Thus, information would not have to be provided about any children nor about adults who are deemed to be beneficial owners solely because they share the same home with another beneficial owner.

**\*8** *Item 2.* Item 2 of Schedule 13D, "Identity and Background," is proposed to be

Release No. 5609,  Release No. 19140,  Release No. 11616,  Release No.                    Page 8
33-5609,  Release No. 34-11616,  Release No. 35-19140, 1975 WL 177966
(S.E.C. Release No.)

amended to require, in addition to information about the background of the person
filing the Schedule, identification of the country of which such person is a
national. The Commission specifically invites comment as to whether disclosure of
citizenship would be more appropriate, and if so, the reasons therefor.

*Item 3.* Item 3 of Schedule 13D, "Source and amount of funds or other
consideration," requires information about the source of funds or other
consideration used to acquire the securities reported on, or to be used to acquire
additional securities. The Commission is proposing to amend Item 3 by adding a
requirement that, if the securities reported on were acquired otherwise than by
purchase, the method of acquisition should be described and the person from whom
the securities were acquired identified. Thus, if the securities were received as a
gift, the name of the donor and the circumstances of the gift would have to be
included in the Schedule 13D.

*Item 5.* The core of disclosure about the securities beneficially owned by the
person filing the report is contained in Item 5, "Interest in securities of the
issuer." The Commission is proposing to amend existing Item 5 to reflect the broad
definition of beneficial owner and to obtain more information relating to the
securities owned.

As amended, Item 5 would require a statement of the number and percentage of the
class beneficially owned by each of the persons about whom information is required
by the Schedule and by each of their affiliates. Existing Item 5 requires
information about the ownership of securities by associates, which may be a larger
group than "affiliates."[FN10] In light of the expanded definition of beneficial
owner, however, the Commission believes that information need only be furnished
about affiliates of the persons reporting. The amended item would also require a
description of the nature of each person's beneficial ownership, the names of any
persons other than those set forth who share beneficial ownership of a material
amount of the securities reported on, information about any transactions in the
class of securities effected during the past 60 days by the persons reporting or by
executive officers, directors or affiliates of any subsidiaries of a reporting
corporation. In addition, the proposed item would require disclosure of any
overlapping beneficial ownership so that a fair understanding of the amount of
securities actually owned could be achieved from reading the Schedule.

*Item 6.* The Commission is also proposing to amend Item 6, "Contracts, arrangements
or understandings with respect to securities of the issuer," to make clear that
disclosure should be made if any of the securities are subject to any contingency
that would give the power to direct the voting or disposition of the securities to
another person or would give another person the right to receive or the power to
direct the receipt of the dividends or proceeds from the sale of such securities.

**9** It is also proposed to add a new paragraph to Item 6 requiring disclosure of the
record holder of the securities, if different from the person filing the statement.
For purposes of this proposed paragraph, the record holder would be the person who
is identified as the holder of the securities on the records of security holders
maintained by or on behalf of the issuer of the securities. The name and address of
the record holder would have to be provided, and if the record holder is a nominee,
the name and address of the person employing the nominee would have to be included.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

For these purposes, where the nominee is the nominee for a clearing agency (such as Cede & Co. for the Depository Trust Company), information would have to be given about the participant in the clearing agency who deposited the securities.

*Signature*. The signature section of Schedule 13D is proposed to be amended to require that whenever the statement is filed on behalf of more than one person, each person on whose behalf it is filed must sign it, with certain exceptions relating to filings on behalf of a family. This would mean that in the case of a group filing, each person who is a member of the group would have to sign the statement. The existing Schedule provides that if a statement is signed on behalf of a person by an authorized representative, evidence of the representative's authority must be filed with the statement.

*Proposed Amendment to Rule 14d-1: Determination of Beneficial Ownership*
Section 14(d) makes it unlawful for any person to make a tender offer for or a request or invitation for tenders of any class of security described in Section 13(d)(1) if after consummation thereof, the person would directly or indirectly be the beneficial owner of more than five percent of the class, unless such person has filed with the Commission a statement of the type required by Section 13(d).

In order to make clear that the definition of beneficial ownership for purposes of Section 13(d)(1) also applies for purposes of Section 14(d)(1), the Commission is proposing Rule 14d-1(g) so stating.

*Proposed Amendment to Schedule 14B; Determination of Beneficial Ownership*
Schedule 14B under the Exchange Act must be filed by persons, other than management of an issuer, who solicit proxies in connection with an election contest. Item 3 of the Schedule requires information about shares of the issuer "beneficially owned." The Commission is proposing an instruction to Item 3 that would state that the definition of beneficial owner in proposed Rule 13d-3 would be applicable in responding to the item.

*Proposed Amendments to Schedule 14A, Forms 10, 10-K, 12 and 12-K under the Exchange Act; to Forms S-1, S-2, S-3, S-11 and 1-A under the Securities Act of 1933; and to Form U5S under the Holding Company Act to Require Information about Security Ownership and Holdings of Principal Beneficial Owners and Management and to Require Information about the 30 Largest Security Holders of Record.*
**10** Schedule 14A, Information Required in Proxy Statement, the Form 10 registration statement and the annual report Form 10-K under The Exchange Act, as well as Form S-1, S-2, S-3 and S-11 registration statement forms and the Form 1-A Notification Statement of Regulation A under the Securities Act and the Form U5S annual report form under the Holding Company Act require disclosure of the principal security holders, of record and beneficially, of the registrant and, in some instances, of the security holdings of management. Forms 12 and 12-K under the Exchange Act do not presently require information about principal security holders.

The Commission believes that information about both the record holders and the significant beneficial owners of the securities of the issuer is material to investors since it may be related to the question of who has or can influence control of the issuer. Also, there appears to be little reason to have different disclosure requirements for the various annual report, registration and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5609, Release No. 19140, Release No. 11616, Release No.                           Page 10
33-5609, Release No. 34-11616, Release No. 35-19140, 1975 WL 177966
(S.E.C. Release No.)

notification forms, although the proxy statement form should contain more
information about management holdings becuase the proxy statement is directly
related to the voting of securities and to election of directors.

The Commission is therefore proposing to amend the above registration,
notification, proxy and reporting forms to include an item (referred to for
purposes of this release as Item X) calling for disclosure, to the extent known,
with respect to (1) beneficial owners of more than five percent of any class of
voting securities (one percent in the case of Form U5S); (2) aggregate beneficial
ownership by officers and directors; and (3) any contractual agreement that
involves a pledge of securities the operation of the terms of which may result in a
change of control. Another proposed item (referred to as Item XA for purposes of
this release) would require disclosure of the 30 largest holders of record of each
class of voting securities subject to a de minimus exception, their voting
authority, and certain underlying holders of voting authority, if not the record
holder. These items, if adopted, would replace the existing principal security
holder item in Schedule 14A and Forms 10, 10-K, S-1, S-2, S-3, S-11, 1-A and U5S,
and would be added to Forms 12 and 12-K. Since information required by Schedule 14A
is also required to be included in information statements filed pursuant to Section
14(c), no amendment to Schedule 14C is necessary.

In some instances, the items would be modified to reflect the purpose and structure
of the particular form. The Commission is not publishing the specific items for
each form because this would be unnecessarily complex and lengthy and the substance
of the proposed items should provide adequate basis for comment.

*Item X.* The first paragraph of proposed Item X would require the name and address
and holdings of any person (including any group) known to the registrant to be,
directly or indirectly, the beneficial owner of more than five percent (as opposed
to the present ten percent requirement in many forms) of any class of the
registrant's voting securities. In the case of Holding Company Act Form U5S, this
would include a beneficial owner of more than one percent. It should be noted that
this proposal will indirectly increase disclosure in other areas, particularly the
items requiring disclosure of "certain transactions" between management and "
principal shareholders" named in response to the principal shareholder item.

*11 A breakdown of each person's voting and investment authority over the
securities and of his right to receive or power to direct the receipt of dividends
or proceeds from the sale, would have to be included, if known. Identification of
the country fo which such person is a national would also be required, if known.
However, the Instructions would specifically provide that the registrant could rely
upon information set forth in acquisition statements filed with the Commission
pursuant to Section 13(d), unless the registrant knew or had reason to believe that
the information was not complete or that an acquisition statement should have been
filed but was not. The registrant would be deemed to know the contents of any
statements filed pursuant to Section 13(d).

The second paragraph of proposed Item X would require that the registrant include a
table showing, as to each class of voting securities of the registrant or its
parents or subsidiaries, the aggregate amount and percentage beneficially owned by
all directors and officers of the registrant (other than directors' qualifying

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

shares). This is similar to disclosure now required in several forms including Form
10-K. In addition, however, the proposed item would require an indication of the
number of shares over which such persons have or share the power to direct the vote
and disposition thereof and the number with respect to which they have the right to
receive or the power to direct the receipt of dividends or the proceeds from sale.

Several forms now also contain a requirement that the registrant disclose any
contractual arrangement known to the registrant involving a pledge of securities if
the operation of the terms of the arrangement might result in a change in control
of the registrant. It is proposed that this be included in the item.

Proposed instructions to the item would make clear that the definition of
beneficial owner for purposes of Section 13(d) (proposed Rule 13d-3) would also
apply for purposes of Item X. In addition, the proposed instructions would require
that any overlapping beneficial ownership be appropriately disclosed, if known, in
order to avoid confusion.

*Item XA.* Proposed Item XA would require that the issuer furnish for each class of
voting securities the name and address of and amount and percentage of securities
held of record by, and the voting authority (if known) held by, each of the 30
largest holders of record as of a recent date (except that a person holding less
than 1/10 of 1% of the outstanding securities of the class need not be disclosed).
In addition, the proposed item would require that if the issuer knows that a record
holder does not have the power to direct the vote of securities held, the issuer
must, to the extent known, provide information about the persons with power to
direct the vote of the ten largest blocks of stock held of record by each record
holder. Also, if the registrant has a corporate parent, comparable information
would have to be provided about such parent.

**\*12** A proposed instruction would specify that holder of record, as with Item 6(b)
of Schedule 13D, means the person who is identified as the holder of securities on
the records of security holders maintained by or on behalf of the issuer. The
instruction would require, however, that if the holder of record is a nominee, the
registrant must aggregate the holdings of different nominee accounts for the same
person, to the extent known by the registrant after reasonable inquiry, and must
identify the person employing the nominees. The person employing a nominee in the
case of a nominee for a clearing agency would be the participant in such agency who
deposited the securities. A proposed Note calls the attention of registrants to the
Nominee List published annually by the American Society of Corporate Secretaries.

The proposal relating to holders of record is substantially based on the
recommendations of the Interagency Steering Committee on Uniform Corporate
Reporting. Although that Committee recommended that disclosure include the 30
largest shareholders of record and that anyone holding less than 1/10 of 1% of the
outstanding securities not be required to be included, the Commission is
considering other alternatives and specifically asks for public comment on the
question of whether 30 is the appropriate and meaningful number and whether 1/10 of
1% is a reasonable cutoff point for disclosure or whether some other standard such
as a dollar amount is more appropriate. The Commission also invites comment on the
feasibility of obtaining the information proposed to be required about the persons
with underlying power to direct the vote of the securities.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5609,  Release No. 19140,  Release No. 11616,  Release No.                    Page 12
33-5609,  Release No. 34-11616,  Release No. 35-19140, 1975 WL 177966
(S.E.C. Release No.)


*Operation of Proposals*

The Commission is mindful of the cost to registrants and others of its proposals
and it recognizes its responsibilities to weigh with care the costs and benefits
which result from its rules. Accordingly, the Commission specifically invites
comments on the cost to registrants and others of the proposals published in this
release, if adopted.

The Commission hereby proposes for comment (1) proposed Rules 13d-5, 13d-6 and 13d-
7 and Form 13D-5 and amendments to Rules 13d-1, 13d-3 and 14d-1, Schedules 13D, 14A
and 14B, and Forms 10, 10-K, 12 and 12-K pursuant to Sections 12, 13, 14, 15(d) and
23(a) of the Exchange Act; (2) proposed amendments to Forms S-1, S-2, S-3, S-11 and
1-A pursuant to Sections 3(b), 7, 10 and 19(a) of the Securities Act, and (3)
proposed amendments to Form U5S pursuant to Sections 5, 7, 14 and 20 of the Holding
Company Act.


**\*13** All interested persons are invited to submit their views and comments on the
foregoing proposals to George A. Fitzsimmons, Secretary, Securities and Exchange
Commission, Washington, D. C. 20549 on or before November 30, 1975. Such
communications should refer to File No. S7-580 and will be available for public
inspection. The text of the proposed rules and forms and amendments to rules,
schedules and forms is attached hereto.

By the Commission.

George A. Fitzsimmons
Secretary

FN1. As adopted in 1968, Section 13(d)(1) required disclosure of owners of more
than ten percent of the class; the ten percent figure was lowered to five percent
in 1970.

FN2. *Investigation in the Matter of Beneficial Ownership, Takeovers and*
*Acquisitions of Securities by Foreign and Domestic Persons, Securities Act Release*
*Nos. 5526 (September 9, 1974)* and *5538 (November 5, 1974)* (hereafter, Beneficial
Ownership Hearings).

FN3. *E.g., Disclosure of Corporate Ownership,* S. Doc. 93-62, 93d Cong., 2d Sess.
(1974). See also Hearings on Corporate Disclosure Before the Subcommittees on
Inter-Governmental Relations and on Budgeting, Management and Expenditures of the
Senate Committee on Government Operations, 93d Cong., 2d Sess (1974).

FN4. S. Rep. No. 550, 90th Cong., 1st Sess. 7 (1967); H.R. Rep. No. 1711, 90th
Cong., 2d Sess. 8 (1968).

FN5. Interagency Steering Committee on Uniform Corporate Reporting, *Model Corporate*
*Disclosure Regulations* (January 1975).

FN6. For example, Rule 451 of the Rules of the New York Stock Exchange and Rule 577

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of the Rules of the American Stock Exchange.

FN7. Securities Act Amendments of 1975) P.L. 94-29).

FN8. *Sisak v. Wings & Wheels Express, Inc.*, '70-'71 Transfer Binder, CCH. Fed. Sec.
L. Reptr. para. 90,665 (S.D.N.Y. 1970) but see *Ozark Air Lines, Inc. v. Cox*, 326
F.Supp. 113 (E.D. Mo. 1971).

FN9. *GAF Corp. v. Milstein*, 453 F.2d 709 (2d Cir. 1971), *cert. denied* 406 U.S. 910
(1972), but see *Bath Industries, Inc. v. Blot*, 427 F.2d 97 (7th Cir. 1970).

FN10. "Associate" is defined in Rule 13b-2 under the Exchange Act to mean, when
used to indicate a relationship with any person, (1) any corporation or
organization (other than the registrant or a majority-owned subsidiary of the
registrant) of which such person is an officer or partner or is, directly or
indirectly, the beneficial owner of 10 percent or more of any class of equity
securities, (2) any trust or other estate in which such person has a substantial
beneficial interest or as to which such person serves as trustee or in a similar
fiduciary capacity, and (3) any relative or spouse of such person, or any relative
of such spouse, who has the same home as such person or who is a director or
officer of the registrant or any of its parents or subsidiaries.

"Affiliate" is defined in Rule 12b-2 under the Exchange Act to mean a person that
directly or indirectly through one or more intermediaries, controls, or is
controlled by, or is under common control with, the person specified.

TEXT OF PROPOSED RULES, AMENDMENTS TO RULES, FORMS, AND AMENDMENTS TO FORMS
**\*14** The text of the various proposals is set forth below. (Amendments to existing
rules are in italics.)

*Proposed Amendments to Rule 13d-1; Filing of Schedule 13D* [(b) and (c) new]
(a) [same as existing rule]

(b) Not more than one report need be filed to report beneficial ownership of any
securities by persons related by blood, marriage or adoption who share the same
home, provided that the report filed shall identify all such persons and shall
state that such report is filed on behalf of all such persons.

(c) Not more than one report need be filed to report beneficial ownership of the
same securities by different persons provided that the report filed shall disclose
the names of all such persons, shall contain the required information about all
such persons and their beneficial ownership of securities of the class being
reported on, and shall indicate that such report is filed on behalf of all such
persons.

*Proposed Amendments to Rule 13d-3, Determination of Beneficial Ownership* [new]
(a) For purposes of Section 13(d), a beneficial owner of a security is any person
who directly or indirectly through any contract, arrangement, understanding or
relationship has or shares the power to direct the voting or the disposition of
such security or has or shares the right to receive or the power to direct the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

receipt of dividends from or the proceeds from the sale of such security, provided, however, that:

(1) a person shall be deemed to be a beneficial owner of all securities beneficially owned by all individuals who are related by blood, marriage or adoption to such person and who have the same home as such person;

(2) a person shall be deemed to be a beneficial owner of securities which such person has the right to acquire (A) through the exercise of an option, warrant or right exercisable within 60 days, (B) through the conversion of securities convertible within 60 days, or (C) pursuant to the power to revoke within 60 days a trust or similar arrangement. Any securities not outstanding which are subject to such options, warrants, rights or conversion privileges shall be deemed to be outstanding for the purpose of computing the percentage of outstanding securities of the class owned by such person but shall not be deemed to be outstanding for the purpose of computing the percentage of the class owned by any other person.
    NOTE: Any option, warrant, right or conversion privilege subject to conditions the material ones of which are within the control of the holder of the option, warrant, right or privilege, would be considered exercisable.

(3) a member of a national securities exchange shall not be deemed to be a beneficial owner of securities held directly or indirectly by it on behalf of another person solely because such member, pursuant to the rules of such exchange, may direct the vote of such securities, without instruction, on other than contested matters or matters that may affect substantially the rights or privileges of the holders of the securities to be voted, but is otherwise precluded by the rules of such exchange from voting without instruction;
    *15 NOTE 1: It is possible that there may be more than one beneficial owner of the same securities since different persons may have the same or different powers with respect to the securities. For example, securities held in a trust might be beneficially owned by the trustee, the settlor, and the beneficiary of the trust. In such case, Rule 13d-1(c) allows only one report to be filed under certain circumstances.
    NOTE 2: All securities of the same class of the same issuer beneficially owned by any person would, regardless of the form which such beneficial ownership takes, be aggregated in calculating the number of shares beneficially owned by such person.

(b) Any person may expressly declare in any statement filed that the filing of such statement shall not be construed as an admission that such person is the beneficial owner of any securities covered by the statement.

*Proposed Rule 13d-5, Short Form Acquisition Notice* [new]
(a) A person, who after acquiring directly or indirectly the beneficial ownership of any equity security of a class described in Section 13(d)(1) of the Act, is directly or indirectly the beneficial owner of more than five percent of such class, may in lieu of filing a Schedule 13D acquisition statement required by Section 13(d)(1) of the Act, file with the Commission, within ten days after the end of the month in which such person became subject to Section 13(d)(1), a short form acquisition notice on Form 13D-5 and send it, by registered or certified mail, to the issuer of the security at its principal executive office and to each

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5609,  Release No. 19140,  Release No. 11616,  Release No.                    Page 15
33-5609,  Release No. 34-11616,  Release No. 35-19140, 1975 WL 177966
(S.E.C. Release No.)

exchange where the security is traded, provided that:

(1) such person has acquired such securities in the ordinary course of his business
and not with the purpose nor with the effect of changing or influencing the control
of the issuer, nor in connection with or as a participant in any transaction having
such purpose or effect; and

(2) such person is:

(A) a broker or dealer registered under Section 15 of the Act;

(B) an insurance company which would be required to file reports under the Act but
for the exemption set forth in Section 12(g)(2)(G) of the Act;

(C) a bank which is required to file reports under Section 12(i) of the Act;

(D) an investment company registered under Section 8 of the Investment Company Act
of 1940;

(E) an investment adviser registered under Section 203 of the Investment Advisers
Act of 1940; or

(F) an employee benefit plan, pension fund, or an endowment fund.

(b) Notwithstanding Rule 13d-2, and provided that such person continues to meet the
requirements set forth in Rule 13d-5(a), any person who has filed a short form
acquisition notice on Form 13D-5 shall amend such form within ten days after the
end of each calendar quarter to reflect, as of the end of the quarter, material
changes, if any, in the information reported including a decrease in percentage of
the class of securities held to five percent or less of the class. Such amendment
shall be filed with the Commission and sent, by registered or certified mail, to
the issuer of the security at its principal executive office and to each exchange
where the security is traded.
    **16 NOTE: Once an amendment has been filed reflecting beneficial ownership of
    five percent or less of the class of securities, no additional filings would be
    required unless the person thereafter becomes the beneficial owner of more than
    five percent of the class. In addition, no amendment would be required if there
    were no material change in the information previously reported.

(c) Notwithstanding paragraphs (a) and (b), if any person who has filed a short
form acquisition notice on Form 13D-5 ceases to meet the requirements of Rule 13d-
5(a), such person shall immediately become subject to Rule 13d-1.

*Proposed Rule 13d-6, Acquisitions of Securities* [new]
(a) A person who becomes a beneficial owner of securities otherwise than through
purchase of such securities shall be deemed to have acquired such securities for
purposes of Section 13(d)(1).

(b) Persons who agree, orally or in writing, to act together for the purpose of
acquiring, holding or disposing of securities of an issuer shall be deemed to have

acquired, as of the date of such agreement, beneficial ownership of all the
securities of that issuer beneficially owned by such persons, for purposes of
Section 13(d)(1).

*Proposed Rule 13d-7, Exemption of Certain Acquisitions* [new]
An acquisition of equity securities of a class described in Section 13(d)(1) by a
person engaged in business as an underwriter of securities, through his
participation in good faith in a firm commitment underwriting, shall be deemed not
to be an acquisition for purposes of Section 13(d), provided that, any such
securities which are beneficially owned by such person for more than forty days
shall be deemed to have been acquired for purposes of Section 13(d) at the end of
such forty day period.

PROPOSED AMENDMENTS TO SCHEDULE 13D
INSTRUCTIONS:

A. [No change]

B. [No change in first sentence] If a person referred to in (1), (2), or (3) is a
corporation or the statement is filed by a corporation, the information called for
by the above-mentioned items shall be given with respect to each *executive* officer
and director of such corporation and *any affiliate* of such corporation. *Executive
officer shall mean the president, secretary, treasurer, any vice president in
charge of a principal business function (such as sales, administration or finance),
and any other person who performs similar policy making functions for the
corporation.*

C. *If filed by an individual on behalf of himself and persons related to him by
blood, marriage or adoption who share the same home, the information called for by
Items 2-6 inclusive shall be given with respect to the head of household and any
adult person who would be the beneficial owner of the securities in the absence of
the provisions for attribution in Rule 13 d-3(a)(1).*

**\*17** Item 1. Security and Issuer

[No change]

                    FORM 13D-5 SHORT FORM ACQUISITION NOTICE

1 (a) Name: _____

1(b) Business Address of Principal Office:

_____

1(c) Country of which Such Person Is a National:

_____

2. Name of Issuer: _____

3. Check whether the person filing is a:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5609,  Release No. 19140,  Release No. 11616,  Release No.          Page 17
33-5609,  Release No. 34-11616,  Release No. 35-19140, 1975 WL 177966
(S.E.C. Release No.)

```
        a. [] Registered Broker-Dealer
        b. [] Insurance Company
        c. [] Bank
        d. [] Registered Investment Company
        e. [] Registered Investment Adviser
        f. [] Employee Benefit Plan, Pension Fund or Endowment Fund
           NOTE: See Rule 13d-5(a)(2)

4. Ownership:
   [Note: This item does not apply if the percent of class owned is five percent or
   less. See Item 5.]
   (a) Title of Class:
   _____

   (b) Amount Beneficially Owned:
   _____

   (c) Percent of Class:
   _____


   _____

5. Ownership of Five Percent or Less of Class.
   If the person filing is amending a previously filed Notice and, as of the end of
   the quarter, was beneficial owner of five percent or less of the class, so
   indicate. []


   _____

6. Nominees
   (a) Name and Address
   _____

   (b) Holdings
   _____


   _____

The securities referred to above were acquired in the ordinary course of business
and were not acquired for the purpose of and do not have the effect of changing or
influencing the control of the issuer of such securities and were not acquired in
connection with or as a participant in any transaction having such purpose or
effect.


_____

Reporting Person

_____

By: Signature and Title
```

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5609,  Release No. 19140,  Release No. 11616,  Release No.                    Page 18
33-5609,  Release No. 34-11616,  Release No. 35-19140, 1975 WL 177966
(S.E.C. Release No.)

---

Date of Notice

Item 2. Identity and Background
(a) - (e) [No change]


(f) *Country of which such person is a national*

Item 3. Sources and Amount of Funds or Other Consideration
[No change] Add: *If the securities were acquired otherwise than by purchase,
describe the method of acquisition and identify the person from whom the securities
were acquired.*


Item 4. Purpose of Transaction
[No change]


Item 5. Interest in Securities of the Issuer [revised]
(a) State the aggregate number and percentage of the class represented by such
shares beneficially owned (identifying those shares which there is a right to
acquire) by each of the persons named in response to Item 2 and by each of his
affiliates (other than the issuer of the securities), identifying any such
affiliate.


(b) For each person named in response to paragraph (a), indicate the nature of such
person's beneficial ownership (e.g., the power to direct the voting or disposition
of the securities, or the right to receive or the power to direct the receipt of
dividends or proceeds from the sale of the securities);


(c) If persons other than those named in paragraph (a) share beneficial ownership
of a material amount of the securities reported on, identify such persons and the
nature and extent of their beneficial ownership;


**\*18** (d) If the persons named in response to this item share beneficial ownership of
the same securities, disclose and quantify any overlapping ownership;


(e) Describe any transactions in the class of securities to be reported on that
were effected during the past 60 days or since the most recent filing, whichever is
less, by the persons named in response to paragraph (a) and by any executive
officers, directors or affiliates of any subsidiaries of such person.


Item 6. Contracts, Arrangements or Understandings with Respect to Securities of the
Issuer
(a) Furnish any information as to any contracts, arrangements or understandings
with any person with respect to any securities of the issuer, including but not
limited to transfer *or voting* of any of the securities, joint ventures, loan or
option arrangements, puts or calls, guaranties of loans, guaranties against loss,
or guaranties of profits, division of profits or losses, or the giving or
withholding of proxies, naming the persons with whom such contracts, arrangements
or understandings have been entered into and giving the details thereof. *Include*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5609,  Release No. 19140,  Release No. 11616,  Release No.                    Page 19
33-5609,  Release No. 34-11616,  Release No. 35-19140, 1975 WL 177966
(S.E.C. Release No.)

*such information for any of the securities that are pledged or are otherwise
subject to a contingency the occurrence of which would give another person the
power to direct the voting or disposition of the securities, or the right to
receive or the power to direct the receipt of dividends or proceeds from the sale
thereof.*

(b) [new] If the securities are held of record by someone other than the person
filing this statement:

(1) Give the name and address of such record holder.

(2) If the record holder is a nominee, furnish in addition, the name and address of
the person employing such nominee. For purposes of this paragraph, the person
employing the nominee shall, in the case of securities which are evidenced by
certificates registered in the name of a nominee for a clearing agency (e.g., the
Depository Trust Company, Midwest Securities Trust Company, Pacific Securities
Depository Trust Company, and National Clearing Corporation for which the nominees
are, respectively, Cede & Co., Kray & Co., Pacific & Co., and NCC & Co.), be deemed
to be the participant in such agency who deposited such securities.

(3) For purposes of this item, holder of record shall mean a person who is
identified as the holder of such securities on the records of security holders
maintained by or on behalf of the issuer.

Item 7. Persons Retained, Employed or to Be Compensated
[No change]

Item 8. Material to be Filed as Exhibits
[No change]

*Signature*

I certify that to the best of my knowledge and belief the information set forth in
this statement is true, complete and correct.

_____

(Date)

_____

(Signature)

*The statement shall be signed by each person on behalf of whom the statement is
filed, except that in the case of a statement filed on behalf of persons related by
blood, marriage or adoption who share the same home, the statement shall be signed
only by those persons about whom information is provided in accordance with
Instruction C. Notwithstanding, the statement may be signed on behalf of a person
by an authorized representative.* In such case, evidence of the representative's
authority to sign on behalf of such person shall be filed with the statement.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5609,  Release No. 19140,  Release No. 11616,  Release No.                    Page 20
33-5609,  Release No. 34-11616,  Release No. 35-19140, 1975 WL 177966
(S.E.C. Release No.)

*Proposed Amendment to Rule 14d-1(g)*
**\*19** (a) - (f) [No change]

(g) *The definition of beneficial owner set forth in Rule 13d-3 for purposes of Section 13(d)(1) shall apply also for purposes of Section 14(d)(1).*

*Proposed Amendment to Schedule 14B*
Item 3. Interests in Securities of the Issuer
(a) - (g) [No change]

*Instruction. For purposes of this item, the definition of "beneficial owner" set forth in Rule 13d-3 under the Act shall apply.*

*Proposed Amendments to Schedule 14A and to Forms 10, 10-K, 12 and 12-K under the Exchange Act; to Forms S-1, S-2, S-3, S-11 and 1-A under the Securities Act; and to Form U5S under the Holding Company Act*

The following items are proposed to replace existing items relating to principal security holders in Schedule 14A and in Forms 10 and 10-K under the Exchange Act; Forms S-1, S-2, S-3, S-11 and 1-A under the Securities Act and Form U5S under the Holding Company Act (in that form, disclosure must be made of all beneficial owners of more than one percent of the class). They are also proposed to be added to Forms 12 and 12-K under the Exchange Act.

*Item X. Security Ownership and Holdings of Principal Beneficial Owners and Management.*
(a) Furnish the following information, in substantially the tabular form indicated, with respect to any person (including any "group" as that term is used in Section 13(d)(3) of the Exchange Act) who is known to the registrant to be the beneficial owner of more than five percent of any class of the registrant's voting securities. Show in Column (3) the total number of shares beneficially owned and in Column (4) the percent of class so owned. If known, indicate in Column (5) the number of shares over which such listed beneficial owner has sole or shared power to direct the voting of such securities; show in Column (6) the number of shares over which such listed beneficial owner has sole or shared power to direct the disposition; and indicate in Column (7) the number of shares with respect to which such listed beneficial owner has or shares the right to receive or the power to direct the receipt of the dividends or proceeds from the sale. If known, indicate also the country of which each listed beneficial owner is a national.

| (1) Title of Class | (2) Name and Address of Beneficial Owner and Country of Which Beneficial Owner Is a | (3) Amount Beneficially Owned | (4) Percent of Class | (5) Authority to Direct Vote | (6) Authority to Direct Disposition | (7) Right to Receive or Power to Direct Receipt of Dividends or Proceeds from Sale |
|---|---|---|---|---|---|---|

Release No. 5609,  Release No. 19140,  Release No. 11616,  Release No.                    Page 21
33-5609,  Release No. 34-11616,  Release No. 35-19140, 1975 WL 177966
(S.E.C. Release No.)

National

**\*20** (b) Furnish the following information, in substantially the tabular form indicated, as to each class of voting securities of the registrant or any of its parents or subsidiaries, other than directors' qualifying shares, beneficially owned by all directors and officers of the registrant as a group, without naming them. Indicate in Column (4) the number of shares over which such persons have sole or shared power to direct the voting of such securities; show in Column (5) the number of shares over which such persons have or share the power to direct the disposition; and indicate in Column (6) the number of shares with respect to which such persons have or share the right to receive or the power to direct the receipt of the dividends or proceeds from the sale.

| (1) | (2) | (3) | (4) | (5) | (6) |
|-----|-----|-----|-----|-----|-----|
| Title of Class | Amount Beneficially Owned | Percent of Class | Authority to Direct Vote | Authority to Direct Disposition | Right to Receive or Power to Direct Receipt of Dividends or Proceeds from Sale |

(c) Describe any arrangements known to the registrant including any pledge by any person of securities of the registrant or any of its parents, the operation of the terms of which may at a subsequent date result in a change in control of the registrant.

*Instructions to Item X.*

1. The percentages are to be calculated on the basis of the amount of outstanding securities, excluding securities held by or for the account of the issuer.

2. For purposes of this item, the definition of "beneficial owner" set forth in Rule 13d-3 under the Act shall apply. [In Securities Act forms, the text of Rule 13d-3 would be included in the instruction.]

3. The registrant shall be deemed to know the contents of any acquisition statements filed with the Commission pursuant to Section 13(d) of the Act. A registrant may rely upon information set forth in such acquisition statements unless the registrant knows or has reason to believe that such information is not complete or accurate or that an acquisition statement or amendment should have been filed and was not.

4. Where more than one beneficial owner is known to be listed for the same securities, appropriate disclosure should be made to avoid confusion.

5. Paragraph (c) does not require a description of ordinary default provisions contained in the charter, trust indentures or other governing instruments relating to securities of the registrant.

*Item XA. Holdings of 30 Largest Security Holders of Record*

**\*21** 1. Furnish the following information, in substantially the form indicated, with respect to each of the 30 largest holders of record, as of a recent date, of each class of voting securities of the registrant, provided, however, that no information need be furnished as to any record holder of less than 1/10 of 1% of the class. If known, show in Column (5) the amount over which the holder of record has or shares the power to direct the voting of the securities held.

2. If, to the issuer's knowledge, a record holder named in response to paragraph (1) does not have the power to direct the vote of the securities held, furnish, if known, the information called for by paragraph (1) about the persons having the power to direct the vote of the ten largest blocks of such securities held of record by such record holder.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5609,   Release No. 19140,   Release No. 11616,   Release No. 33-5609,   Release No. 34-11616,   Release No. 35-19140, 1975 WL 177966 (S.E.C. Release No.)

Page 22

3. If the issuer has a parent corporation, the issuer should furnish the information required by paragraphs (1) and (2) of this item with respect to such parent corporation.

| (1) Title of Class | (2) Identity and Address of Holder of Record | (3) Amount Held of Record | (4) Percent of Class | (5) Amount Over Which Holder of Record Has Sole or Shared Power to Direct the Vote |
|---|---|---|---|---|

Release No. 5609, Release No. 19140, Release No. 11616, Release No. 33-5609, Release No. 34-11616, Release No. 35-19140, 1975 WL 177966 (S.E.C. Release No.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Fed. Sec. L. Rep. P 80,861, 1976 WL 10536 (S.E.C. No - Action Letter)                    Page 1

Fed. Sec. L. Rep. P 80,861, 1976 WL 10536 (S.E.C. No - Action Letter)

(SEC No-Action Letter)

*1 Hamelly Industries

Publicly Available November 29, 1976

LETTER TO SEC

September 20, 1976

THOMAS AMY
500 North Capital
Washington DC 20549Dear Mr Amy:

Enclosed you will find a copy of my copy of our letter sent you on August 3.  As I
explained on the those today, we did not receive an answer so on Sept 2 a telegram
was sent requesting an answer, none received to date.

As I explained on the phone, Rule 240 allows a private corporation to have up to
100 security holders rather than the former limit of only 35.  There were a number
of questions which were not answered by your Release 5560 Jan 24, 1976, and these
were not answered by the three lawyers whom I consulted relative to these
questions.

I also asked for a full and complete copy of the Rule 240 and not just the release
which I received from the Deputy Secretary of State of Nevada, Mr B Sewll.

I would very much appreciate your most expeditious answer to the attached as we are
contemplating such a change and action is long delayed because we have not felt
fully informed.

Sincerely yours,

Esther Veramae Hamel
PRINCIPAL EXECUTIVE OFFICER

ENCLOSURE

TEXT OR GRAPHIC MATERIAL AT THIS POINT IS NOT LEGIBLE

LETTER TO SEC

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Fed. Sec. L. Rep. P 80,861, 1976 WL 10536 (S.E.C. No - Action Letter)                                      Page 2

TEXT OR GRAPHIC MATERIAL AT THIS POINT IS NOT LEGIBLE

SEC LETTER

1933 Act / s 3(b) / Rules 144; 237; 240

October 29, 1976
Publicly Available November 29, 1976

Ms. Esther V. Hamel
Hamelly Industries
Route 1, Box 68
St. Ignatius, Montana 59865Re:   <u>Hamelly Industries</u>

Dear Ms. Hamel:

This refers to your letter of August 3, 1976 requesting several interpretations of
Rule 240 promulgated under the Securities Act of 1933 (the 'Act').

Your first question apparently seeks our interpretation of the countable beneficial
owners of the issuer's securities for purposes of the rule.  You indicate that 'one
source states that a family is termed beneficial owners and that only one name of
the family is counted toward the 100 names allowable as a total number of security
holders.'

Rule 240(f)(1)(i) clearly states that for beneficial ownership purposes, any
relative or spouse of a beneficial owner and any relative of such spouse having the
same home as the beneficial owner will be deemed the same and not a separate
beneficial owner for determining whether the 100 persons ceiling is exceeded.

Your second question concerns resale of securities issued in reliance upon Rule 240
and whether such transactions would have to be effectuated in compliance with the
Act's registration requirements.  In illustration, you point to the case of an
individual required to resell because of financial reasons, gift or death.  You
state that such transactions would not involve a plan or scheme to offer securities
in a public offering with or without underwriters, and 'would not be a matter of
reoffering nor of resale by affiliates.'  You also indicate that pursuant to state
law, a corporation has a right of first refusal to purchase any shares a
stockholder wishes to sell; inquiring whether this procedure may be undertaken
without registration under the Act. Finally, you seek a general clarification of
the concept of reoffering the securities pursuant to exemption from the Act's
registration requirements.

**\*2** Subdivision (g) of Rule 240 addresses the question of resale of securities ?? in
the exempted transaction.  It indicates that the securities have the same status as
those taken in other than a public offering (Section 4(2) of the Act).  In short,
the securities would be deemed 'restricted' as the term is used in Rule 144(a)(3),
and could be resold pursuant to that rule if all its conditions are met, including
the two year holding period.  Rule 144 provides an exemption from the Act's
registration requirements.  Another possible exemption is contained in Rule 237

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

which imposes a five-year holding period.  There are other exemptions in the Act, but these appear to be the most likely ones to rely upon for resales of securities taken in a Rule 240 transaction.  Of course, resales could always be effectuated in accordance with the Act's registration requirements.  In consideration of your specific illustrations, it appears to us that sales made solely due to financial hardship would have to be made pursuant to exemption or with registration.  However, testamentary or donative transfers might be made in reliance upon the notion that no sale is involved; but donees and legatees would take subject to restriction. Similarly, we do not believe that the corporation's right of first refusal to purchase securities would necessitate registration under the Act.  Beyond this statement, we do not feel it would be useful to give a general exposition of the Act's exemptive provisions but direct your attention to Sections 3 and 4 of the Act as well as the rules and regulations promulgated thereunder.  We are also enclosing the pamphlets 'The Work of the SEC' and 'Going Public' for your future reference.

Your third question states that it is unclear whether partnerships are exempt from Rule 240.  You indicate that your company may be involved in certain limited partnership offerings in the future, and seek advice from us.  Finally, you ask whether a partnership would' violate Rule 240 if 240 is applied during this intial growth period, as an aid to [the Company] . . . for limited offer as a corporation in need of small amount of capital.'

Release No. 33-5560, announcing the adoption of Rule 240, indicates that limited partnership offerings may be undertaken in reliance upon the rule but that interests in such partnerships with the same or affiliated general partners would be deemed securities of the same issuer (Rule 240(a)(1)).  This definition is useful in determining the $100,000 and 100 person limits within the rule.  It is possible that these ceilings would be effected if your company participates in a limited partnership offering.  However, you have not provided sufficient information for us to express a view.  If you could clarify your question, we may be able to respond more fully.

In your fourth question, you inquire whether lettered or legend stock is required under Rule 240.

Rule 240(g) requires that the issuer exercise reasonable care to issure that an illegal distribution of its securities does not occur. In this connection, legending the securities is necessary in order to establish the Rule's availability.

**3** Your fifth question begins with a statement that you intend to keep the corporation privately held and to evade registration under the Act.  Moreover, you complain that Preliminary Note 5 to the rule has criminal overtones.  The question you present is whether the company's outstanding convertible notes will have any effect upon your use of Rule 240 and whether your present shareholders would count toward the 100 permitted under the Rule.

When you state that Note 5 has criminal overtones, we believe that you have understood the thrust of the statement.  It does not seem to us to be necessarily sinister to desire to keep your corporation privately held and to avail yourself of

Fed. Sec. L. Rep. P 80,861, 1976 WL 10536 (S.E.C. No - Action Letter)                    Page 4

a valid registration exemption under the Act, so long as the public policy to
provide full and fair disclosure of the character of securities as expressed in the
Act is not frustrated.  It does not appear to us that you really intend to evade
the law as you state, but rather to avail yourself of a proper exemption.

It is our view that convertible notes issued without registration under the Act
within the 12 months prior to your contemplated offering in reliance upon Rule 240
would reduce the $100,000 ceiling correspondingly.  It is also our view that your
present shareholders must be counted toward the 100 maximum contained in Rule
240(f).

We trust that the above information and enclosures will be of assistance to you.
We regret the delay in responding to your letter.

Sincerely,

Richard K. Wulff
Attorney Adviser

 0ibd20f05bad8f4ad588e898b270da9092application/pdf9502700.00.0FSEC-NAL-PDF1.40Fed.
Sec. L. Rep. P 80,861, 1976 WL 10536 (S.E.C. No - Action Letter)
END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



▷
Release No. 5808, Release No. 13291, Release No. 33-5808, Release No. 34-13291,
1977 WL 185650 (S.E.C. Release No.)

S.E.C. Release No.

Securities Act of 1933
Securities Exchange Act of 1934

ADOPTION OF BENEFICIAL OWNERSHIP DISCLOSURE REQUIREMENTS

February 24, 1977

The Securities and Exchange Commission today announced the amendment of existing
rules and Schedule 13D [17 CFR 240.13d-101] and the adoption of new rules and a
Form 13D-5 [17 CFR 240.13d-102] relating to disclosure by certain beneficial owners
of securities pursuant to Section 13(d) of the Securities Exchange Act of 1934
("Exchange Act") [15 U.S.C. 78a et seq., as amended by Pub. L. No. 94-29 (June 4,
1975)]. At the same time, the Commission amended certain of its forms and schedules
under the Securities Act of 1933 ("Securities Act") [15 U.S.C. 77a et seq.] and
under the Exchange Act to require issuers to disclose information regarding certain
beneficial owners of their securities. These actions, which will not become
effective until August 31, 1977, were primarily based on the "Proposals Relating to
Disclosure of Beneficial Owners and Holders of Record of Voting Securities"
published by the Commission on August 25, 1975 in Exchange Act Release No. 11616
[40 FR 42212]. It should be particularly noted that portions of the proposed rule-
making (including the proposal which would have required each issuer to disclose
information regarding its thirty largest holders of record and each of their
respective ten largest voting blocks of securities) have been formally withdrawn
and will not be adopted. See Proposed Rules in this issue at page Exchange Act
Release No. 34-13292. As discussed below, the Commission has also concurrently
published for comment proposed amendments to certain of the rules adopted today.
See Proposed Rules in this issue at page, Exchange Act Release No. 34-13292). It
should also be noted that the Commission has deferred amending Form U5S [17 CFR
259.5s] under the Public Utility Holding Company Act of 1935 [15 U.S.C. 79a et
seq.] as it relates to disclosure of information about beneficial owners of more
than five percent of a class of securities required to be reported on that form.

All of the rules and forms adopted or amended herein will become effective on
August 31, 1977, except that any person who so chooses may rely upon them as of the
date of their publication in the Federal Register.

I. SUMMARY OF NEW AND AMENDED RULES AND FORMS ADOPTED
Generally, Section 13(d) of the Exchange Act requires a report by any person (or
group of persons) who, as a result of an acquisition, becomes the beneficial owner
of more than five percent of certain classes of equity securities of certain

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

issuers. In order to provide more objective standards for the application of this general requirement, the Commission has adopted rules defining, for certain purposes, the terms "beneficial owner," "acquisition," and "group."

**\*2** For the purposes of Section 13(d), the Commission has adopted a definition of the term "beneficial owner" which primarily focuses on who possesses voting power or investment power over securities, including a person who has the right to acquire certain securities within sixty days (Rule 13d-3, 17 CFR 240.13d-3). The rule specifically excludes from the definition of beneficial owner stock exchange members with respect to customer's securities which may be voted by the exchange members on certain routine matters and certain lenders with respect to pledged securities. Also, Rule 13d-4 [17 CFR 240.13d-4] permits any person filing a statement under Section 13(d) to disclaim beneficial ownership in the securities covered in such statement. However, disclosure requirements in the amended schedules under Section 13(d) call for information concerning other persons who, although not "beneficial owners" of securities held by a reporting person, nonetheless are known to have an economic interest in more than five percent of that class of securities.

Another rule (Rule 13d-6, 17 CFR 240.13d-6) defines certain transactions (such as gifts and inheritances) as acquisitions for purposes of Section 13(d) even though such transactions do not involve a purchase, and deems the formation of certain groups of persons for the purpose of acquiring, holding or disposing of securities to be an acquisition which may trigger the reporting requirements of Section 13(d), even though the group has not made any purchase or other acquisition subsequent to its formation.

In addition, the Commission has exercised its exemptive powers under Sections 13(d)(5) and (6) of the Exchange Act for the first time on a general basis. A new rule (Rule 13d-5, 17 CFR 240.13d-5) and a related short form (Form 13D-5) will permit certain institutional investors (such as broker-dealers, investment companies and banks), and certain employee benefit plans, who acquire more than five percent of a class of securities in the ordinary course of their business and without the intent or effect of changing or influencing control, and who meet certain other requirements, to file an abbreviated acquisition notice on a quarterly basis in lieu of filing the current form, Schedule 13D [17 CFR 240.13d-101], which otherwise is required to be filed within ten days after certain acquisitions. Another rule (Rule 13d-7, [17 CFR 240.-13d-7]) provides an exemption from reporting for certain underwriters engaging in a registered, firm commitment underwriting.

The Commission has amended Schedule 13D, the long form acquisition statement, in order to make the information therein more meaningful to investors and, to the extent feasible, the reporting of that information less burdensome to beneficial owners. Schedule 13D, as amended, requires disclosure of the citizenship of the beneficial owner; the general nature of any non-purchase acquisitions; and certain pledges of securities by the beneficial owner. Certain other disclosure requirements of Schedule 13D, which were "temporarily" adopted in 1968, have been amended as follows: the requirement that the beneficial owner and certain related persons disclose their ten year employment histories and any criminal convictions during the past ten years has been reduced to five years; the requirement that a reporting corporation disclose information regarding all of its officers has been

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

limited to information regarding its executive officers; and the requirement that a
reporting limited partnership disclose information regarding its general and
limited partners has been reduced to information with respect to general partners
only.

**\*3** Finally, certain "housekeeping" interpretations regarding required signatures
and incorporation of information by reference to exhibits have been codified in the
schedule, as amended.[FN1]

The Commission also has determined to integrate information concerning beneficial
ownership of the securities of publicly owned corporations into the Commission's
continuous disclosure system under the federal securities laws as previously was
proposed. Accordingly, additional disclosure by issuers regarding the beneficial
owners of more than five percent of a class of their securities will now be
required in registration statements on Forms S-1 [17 CFR 239.11] and S-11 [17 CFR
239.18] under the Securities Act, and in registration statements on Form 10 [17 CFR
249.210], annual reports on Form 10-K [17 CFR 249.310] and in proxy, information
and other statements prepared pursuant to Schedules 14A [17 CFR 240.14a-101], 14B
[17 CFR 240.14a-102] and 14C [17 CFR 240.14c-101] under the Exchange Act. The
information to be required in the specified forms will, in large part, be based on
disclosures made by beneficial owners pursuant to Section 13(d) of the Exchange
Act; issuers may rely upon such statements unless they have knowledge of other
information.

It must be emphasized that the definition of "beneficial owner" and the related
rules have been adopted primarily for the purposes of Section 13(d) of the Exchange
Act. While substantially similar concepts will apply with respect to various
registration and reporting forms, the new rules are not intended to affect
interpretations of the provisions of Section 16 of the Exchange Act, or the rules
and regulations thereunder, since the purposes of Section 16 are different from
those of Section 13(d). Accordingly, beneficial ownership for the purposes of
Section 16 would continue to be defined and interpreted by the Commission and
construed by the federal courts in light of the purposes of that Section.

II. BACKGROUND
In 1968, the Congress adopted the so-called Williams Act Amendments which added
Sections 13(d), 13(e), 14(d), 14(e) and 14(f) to the Exchange Act.[FN2]

During the period in which the Williams Act has been in effect, there have been
apparently varying judicial interpretations of the Williams Act and a number of
interpretive questions raised regarding the Commission's rules thereunder, which
were adopted as emergency rules pursuant to the Administrative Procedure Act, but
without the benefit of written comments from interested persons. In addition, there
has been growing Congressional and public interest in the adequacy of ownership
data in general and of foreign ownership data in particular. Most importantly,
there have been certain questions raised as to whether the Commission's schedules,
rules and regulations in this area provided adequate disclosure and other
protections to investors in connection with significant acquisitions and takeovers.
Accordingly, in the fall of 1974, the Commission ordered a Public Fact-Finding
Investigation in the Matter of Beneficial Ownership, Takeovers and Acquisitions by
Foreign and Domestic Persons (hereinafter "Beneficial Ownership Hearings")[FN3] to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

re-examine this entire area.

**\*4** Based primary on the testimony, exhibits and written comments contained in the record of the Beneficial Ownership Hearings and on its own experience, the Commission published on August 25, 1975, its "Proposals Relating to Disclosure of Beneficial Owners and Holders of Record of Voting Securities" (hereinafter, "1975 Ownership Proposals").[FN4] As set forth therein, the 1975 Ownership Proposals if adopted would, among other things, have:

- defined "beneficial owner" to include any person who has or shares the power to direct the voting or disposition of the securities, or who has or shares the power to direct the receipt of dividends or proceeds from the sale of the securities;

- required more disclosure in Schedule 13D regarding the nature of beneficial ownership, other beneficial owners of the securities covered therein, and the record holders involved;

- deemed certain persons, including members of a group, who become beneficial owners of securities through non-purchase transactions to have "acquired" such securities;

- provided a short form acquisition notice to be used by certain persons, particularly certain institutional investors, who acquire securities in the ordinary course of their business and not for the purpose or with the effect of changing control;

- required certain public companies to disclose in various registration, reporting and proxy forms: beneficial owners of more than five percent of a class of voting securities, including their names, nationalities, and the nature of their ownership; the aggregate beneficial ownership by management of securities of the issuer or any of its parents or subsidiaries; and certain pledge agreements;

- required public companies to disclose in various registration, reporting and proxy soliciting forms their and their parents' thirty largest record holders, subject to a de minimus exception, of each class of voting securities as well as such persons' voting authority, and if such persons had no voting authority, the owners of the ten largest blocks held of record by each such record holder.

In response to these proposals the Commission received over 225 letters of comment from interested persons.[FN5]

Based upon these letters of comment and based on its own experience, the Commission has determined to adopt some of the 1975 Ownership Proposals as published for comment and some in modified form, as already summarized and as set forth more fully below in the "Synopsis" and the text of the rules themselves, and not to adopt one proposal at all and portions of other proposals, as discussed more fully below in "Proposals Not Adopted."

III. SYNOPSIS OF ADOPTED AND AMENDED RULES AND FORMS
This brief synopsis is included in order to assist all interested persons in their

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

understanding of, and compliance with, the provisions of Section 13(d) of the
Exchange Act and the rules adopted herein. The synopsis is, however, brief and the
attention of all interested persons is directed to the actual text of the rules and
forms themselves for a more complete understanding.

A. Provisions Relating to Obligations of Beneficial Owners

(1) *Rule 13d-1: Filing of Schedule 13D*
**5** Rule 13d-1 has been re-adopted in its entirety as Rule 13d-1(a). Under the new
Rule 13d-3(a), there may be multiple beneficial owners of the same securities when
two or more persons share voting power or investment power over such securities or
when such powers reside in different persons. Also, Rule 13d-3(d)(1) provides that
with respect to certain options relating to outstanding securities both the holder
of the option and the person who presently owns the underlying securities would be
deemed to be beneficial owners. Accordingly, a new Rule 13d-1(b) has been adopted
to permit one acquisition statement to be filed when there is more than one
beneficial owner of the same securities.

Rule 13d-1(b) is permissive, however, so that each beneficial owner of the same
securities may file a separate acquisition statement. This is important because
each beneficial owner in a multiple beneficial ownership situation must comply with
all of the rules set forth herein and the provisions of new Rule 13d-1(b) do not
relieve such person from this responsibility. When two or more persons do report
jointly pursuant to Rule 13d-1(b), each such person is responsible for the timely
filing of the statement and any amendment, and for the completeness and accuracy of
such statement or amendment. The joint statement so filed must contain all
requisite information about each person and should include, as an exhibit, their
agreement in writing that the statement is filed on behalf of each. If an
institutional investor who meets the standards of Rule 13d-5 and an individual
investor who does not are beneficial owners of the same securities and are required
to file under Section 13(d), they may not both utilize Form 13D-5 since the
individual investor does not meet the requirements for the use of that form. They
may file a joint Schedule 13D or the individual may file Schedule 13D and the
institutional investor Form 13D-5.

A new subsection to Rule 13d-1(a) provides that any person may rely upon the
information set forth in that issuer's most recent quarterly or annual report and
any current report subsequent thereto under the Exchange Act for determining, for
the purposes of Section 13(d), the amount of outstanding shares of a class of
equity securities, so long as he does not know or have reason to believe that such
information is inaccurate.[FN6]

(2) *Rule 13d-1: Filing of Amendments*
Rule 13d-2, which required the prompt filing of an amendment to Schedule 13D to
reflect any material change, has been re-adopted without change.

(3) *Rule 13d-3: Determination of Beneficial Ownership*
For the purposes of Section 13(d), new Rule 13d-3(a) provides that a beneficial
owner of a security includes any person who directly or indirectly has or shares
voting power and/or investment power of such security. Voting power includes "the
power to vote, or to direct the voting of, such security" and investment power

includes "the power to dispose, or to direct the disposition, of such security." An analysis of all relevant facts and circumstances in a particular situation is essential in order to identify each person possessing the requisite voting power or investment power. For example, for the purposes of the rule, the mere possession of the legal right to vote securities under applicable state or other law (i.e., a management proxy committee) may not be determinative of who is a beneficial owner of such securities inasmuch as another person or persons may have the power whether legal, economic, or otherwise, to direct such voting. Furthermore, paragraph (b) of new Rule 13d-3 points out that the rule cannot be circumvented by an arrangement to divest a person of beneficial ownership or to prevent the vesting of beneficial ownership as part of a plan or scheme to evade the reporting requirements of Section 13(d).

*6 New Rule 13d-3(c) provides that all securities beneficially owned by a person are to be aggregated in determining how many securities such person owns, regardless of the nature of the beneficial ownership. Thus, a person who serves as trustee of several trusts which hold securities of the same issuer would have to aggregate the number held in each trust with respect to which such trustee has either voting power or investment power, or both.

In addition to being a beneficial owner by possession of voting power or investment power, a person is also deemed to be a beneficial owner of a security pursuant to new Rule 13d-3(d)(1) if such person has the right to acquire beneficial ownership of such security at any time within sixty days through the exercise of an option, warrant or right, conversion of a convertible security, or pursuant to the power to revoke a trust or similar arrangement.[FN7]

New Rule 13d-3(d)(2) excludes from the definition of beneficial owner any person whose only interest in the securities is record ownership and membership on a national securities exchange that has rules which permit a member to vote such securities without instruction, on certain routine matters.[FN8] Rule 13d-3(d)(3) excludes from the definition of beneficial owner any person whose only interest in the securities is that of a pledgee in the ordinary course of his business pursuant to a bona fide pledge agreement. However, if there has been a default under such an agreement, the rule provides that the pledgee may be deemed the beneficial owner during such time as the event of default shall remain uncured for more than thirty days, or at any time before a default is cured if the power acquired by the pledgee because of the default enables him to change or influence issuer control.

(4) *Rule 13d-4: Disclaimer of Beneficial Ownership*
New Rule 13d-4 permits any person to expressly declare in such person's Schedule 13D or Form 13D-5 that the filing of such a statement shall not be construed as an admission that the person is the beneficial owner of the securities covered by such statement.

(5) *Rule 13d-5 and Form 13D-5: Short Form Acquisition Statements*
New Rule 13d-3, defining beneficial owner, and new Rule 13d-6, defining acquisition, may have a significant impact on the reporting obligations of certain institutional investors and professionals in the securities business. Since such persons often acquire securities in the ordinary course of their business and not with a view toward changing or effecting a change in the control of an issuer, it

is not necessary or appropriate for the purposes of Section 13(d) in such instances to have such a person file a complete Schedule 13D within ten days after any acquisition which results in such person being the beneficial owner of more than five percent of a class. In recognition of this situation, Congress specifically provided in Section 13(d)(5) that the Commission could permit the filing of a short form acquisition notice in lieu of the more detailed Schedule 13D which is primarily aimed at obtaining information about potential changes in control of an issuer.

*7 Accordingly, the Commission has adopted a new Rule 13d-5 and a related new Form 13D-5 which will permit certain persons to utilize an abbreviated acquisition notice. The use of this short form at this time is expressly limited to certain brokers, dealers, banks, investment companies, investment advisers, and employee benefit plans.[FN9] In every situation such a person must be acquiring and holding securities in the ordinary course of business, and not with the purpose or with the effect of changing or influencing the control of the issuer, or in connection with or as a participant in any transaction having such purpose or effect.

In those situations where the institutional investor knows that another person has an economic interest in the securities reported on and this interest relates to more than five percent of the class of securities, Form 13D-5 calls for the same information regarding such other person as does Item 6 of Schedule 13D. Item 6 now requires, among other things, information regarding any relationship with any other person with respect to the securities reported on and requires the identities of the parties involved in the transaction and the details of the relationship.

A condition to use of the short form requires the reporting person to have promptly notified any discretionary account owner, on whose behalf it holds securities which amount to more than five percent of the class, of any acquisition or transaction which might subject such person to the reporting requirements of Section 13(d). It is contemplated that such account owner would be notified of information known to the reporting person which would reasonably inform such account owner of his ownership and a possible obligation to report on Schedule 13D. The Commission believes this provision is necessary since such person may be the beneficial owner of securities held in the account, pursuant to Rule 13d-3(d)(1), if such person has the power to revoke the account at any time.

Instead of filing within ten days of the triggering acquisition, the short form may be filed within ten days after the end of the calendar quarter (March 31; June 30; September 30; December 31) in which the triggering acquisition was made. Thereafter such person would be required to file an amended form on a quarterly basis to reflect all increases and decreases of beneficial ownership during the quarter, or to disclose that such person's ownership has dropped to five percent or less of a class of equity securities. If no changes in beneficial ownership of the securities occur during the quarter, an amended Form 13D-5 need not be filed.

A group of institutional investors, each of whom alone meets one of the standards of Rule 13d-5(a)(2), upon agreeing to act together for the purpose of acquiring securities in a private placement, may utilize the short form to report the acquisition as well as to report, if true, the dissolution of the group. Whether a group is dissolved is, of course, dependent on the relevant facts and circumstances

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of each case, such as the nature of registration rights with respect to its
recently acquired restricted securities which the group may have.

**\*8** Form 13D-5 requires disclosure of the reporting person's identity, business
address, type of business, the amount and respective percent of securities
beneficially owned, and the number of accounts or other entities for whom
securities are owned. The new rule specifies that eight copies of the new Form 13D-
5 should be filed with the Commission; one copy should be forwarded to the issuer;
and one copy should be sent to the principal national securities exchange, if any,
on which the security is traded.

The adoption of the short form is in the nature of an experiment. The Commission
will closely monitor its use to determine whether the form carries out the
legislative purpose of Section 13(d).[FN10]

As originally proposed, the short form would have been available to insurance
companies, as defined in Section 3(a)(19) of the Exchange Act. However, the
Commission has determined that the considerations which would make use of a short
form appropriate for broker-dealers, banks, investment companies, investment
advisers and employee benefit plans do not apply equally to insurance companies.
The rationale for precluding insurance companies from using the short form is
based, in part, upon the lack of any uniform legal requirement restricting such
companies in the amount of securities they may acquire in a given issuer, and on
the fact that the transactions by which an insurance company or its affiliates may
become the beneficial owners of securities, even taking into account the
aggregation and attribution aspects of the new rules, generally involve volitional
investment decisions of a character different from those generally made by the
other entities entitled to use Form 13D-5. Moreover, even though certain aspects of
the operations of insurance companies are subject to regulation under state law,
the Commission does not believe such regulation to be an adequate substitute for
the protection to investors provided by disclosure under Section 13(d).

(6) *Rule 13d-6: Acquisition of Securities*
New Rule 13d-6(a) deems certain persons who become beneficial owners of securities
to have "acquired" them for the purposes of Section 13(d)(1) of the Exchange Act.
Donees, executors, trustees and legatees who become beneficial owners of securities
will be deemed to have "acquired" such securities, even though such persons had not
so intended and had taken no action to become beneficial owners.[FN11] However,
executors and administrators of the estate of a decedent will be presumed not to
have acquired beneficial ownership until they are qualified under local law to
perform their duties.

New Rule 13d-6(b) deems the group formed by two or more persons who agree to act
together for the purpose of acquiring, holding or disposing of securities to have
"acquired," for the purpose of Section 13(d)(1), beneficial ownership, as of the
date of their agreement, of all securities beneficially owned by any member of such
group.[FN12] A group has the option of either filing a joint acquisition statement or
each member of the group may file an individual acquisition statement reporting
both his ownership and the group's collective ownership.

(7) *Rule 13d-7: Exemption of Certain Acquisitions*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*9** New Rule 13d-7(a) exempts an acquisition by an underwriter of securities as part of a good faith firm commitment underwriting where it is anticipated that such person will, as part of a distribution registered under the Securities Act, be immediately reselling such securities since such a transaction is not the type of acquisition that Section 13(d)(1) was intended to cover. By analogy to the forty-day period specified in Section 4(3) of the Securities Act, the rule subjects such underwriter to Section 13(d)(1) if beneficial ownership of the securities is retained for more than forty days. New Rule 13d-7(b) exempts certain acquisitions pursuant to preemptive rights previously exempted by old Rule 13d-4.

(8) *Schedule 13D: Acquisition (and Tender Offer) Statement*
The Commission has amended Schedule 13D, its current, long form acquisition statement, in order to make the disclosure therein more meaningful to investors and, to the extent feasible, less burdensome to beneficial owners. The amendments will require disclosure of the citizenship of the beneficial owner, the general nature of any non-purchase acquisitions; certain pledges of securities by the beneficial owner; and interests of other persons in the securities being reported on. Certain other disclosure requirements of Schedule 13D, which were adopted on an emergency basis in 1968, have been amended. For example, the requirements in Item 2 that the beneficial owner and certain related persons disclose their ten year employment history and any criminal convictions during the past ten years has been reduced to five years.[FN13] The instructions to Schedule 13D have been amended as follows: a corporation need only disclose information regarding its directors and executive officers[FN14] rather than directors and all officers; a limited partnership need only disclose information regarding its general partners rather than all partners; and in multiple tier corporate structures no information need be given with respect to any officers or directors of mid-tier corporations unless they are also controlling persons. Finally, a new cover page has been adopted and certain "housekeeping" interpretations regarding required signatures and incorporation of information by reference to exhibits have been codified in the Schedule.

B. Provisions Relating to Reporting Obligations of Registrants: Adoption of So-Called Proposed Item X
An integral part of the 1975 Ownership Proposals was Proposed Item X which would have required public companies to disclose in various registration, reporting and proxy forms certain information as to each beneficial owner of more than five percent of a class of the company's voting securities, including name, address, nationality, and nature of ownership. The Item as proposed also would have required disclosure about aggregate beneficial ownership by management of securities of the issuer and its parents and subsidiaries and certain pledge agreements.

In order to further integrate the continuous disclosure system under the federal securities laws, the Commission has determined to require the substance of proposed Item X in Forms S-1 and S-11 under the Securities Act and Forms 10 and 10-K and Schedules 14A, 14B and 14C under the Exchange Act. This action will have the effect of making more readily available to investors certain of the information required under the amendments to the rules under the Williams Act discussed above.

**\*10** It should be noted that Item X has been modified not only to conform it to the revised definition of beneficial ownership but also to adapt the item to each particular form. For example, in most of the revised forms, the first paragraph of the new item requires a table setting forth the name and address and information as

to security ownership of any person (including any group) known to the registrant
to be the beneficial owner of more than five percent of any class of the
registrant's voting securities. However, Item 18 of Form S-11 will continue to
require ownership information as to any class of the registrant's equity securities
because of the special purposes of that form.[FN15] In addition, although the item as
proposed would have requested a breakdown as to various ownership interests of each
person listed, the new item only requires disclosure of the number of shares
beneficially owned and the percent of class represented by such shares and an
appropriate indication of any shares subject to options, warrants, rights, etc.,
exercisable at any time within sixty days (Rule 13d-3(d)(1)).

The second paragraph of the new item requires a table showing the aggregate amount
and percentage beneficially owned by all directors and officers of the registrant
(other than directors' qualifying shares) of each class of voting securities of the
registrant and its parents, in the case of Item 5 of Schedule 14A, and of each
class of equity securities of the registrant or its parents or subsidiaries in the
case of Item 19 of Form S-1, Item 18 of Form S-11, Item 5 of Form 10, and Item 11
of Form 10-K. This paragraph also requires that shares deemed to be beneficially
owned pursuant to Rule 13d-3(d)(1) be appropriately indicated.

Instruction 1 specifies that percentages are to be calculated on the basis of
outstanding securities but that securities deemed outstanding pursuant to Rule 13d-
3(d)(1) may also be considered if appropriate clarification is included. Other
instructions provide that the definition of beneficial ownership set forth in Rule
13d-3 also applies for purposes of this item and that any overlapping beneficial
ownership should be appropriately disclosed, if known, in order to avoid confusion.

The instructions also provide that the registrant is deemed to know information
with respect to its securities as set forth in any acquisition statements filed
with the Commission pursuant to Section 13(d) and can rely an such statements
unless it knows or has reason to believe that the information is not complete or
accurate or that an acquisition statement should have been filed but was not.

In connection with the implementation of Item X into Schedule 14A and 14C, issuers
should be aware that this addition will also effect a change in the disclosure
required by other items in the proxy statement schedule such as Items 7(f) and (g)
regarding transactions with management and others.

IV. SELECTED ILLUSTRATIONS
*11 The following illustrations are intended to supplement the explanation and
analysis set forth elsewhere in the release, and to demonstrate the manner in which
the rules would be interpreted. It should be assumed in each of the following
illustrations that the rules adopted in this release are in effect and that the
securities of the subject company ("Z Corporation") are registered pursuant to
Section 12 of the Exchange Act. These illustrations reflect the views of the
Commission and its staff as of this date notwithstanding any previous
interpretations expressed to the contrary by the staff orally or in writing.

*Example 1. Rule 13d-3(a), indirect ownership; Rule 13d-3(d)(i), option to acquire.*
X, an individual, beneficially owns sixty-eight of Y Corporation. Y Corporation
purchases four percent of a class of securities of Z Corporation and also an

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

option, exercisable within thirty days of the date of purchase, to purchase an additional two percent of the outstanding shares of the same class of Z corporation.

*Question.* Does X have a filing obligation and, if so, how may it be satisfied?

*Interpretative Response.* Yes, X has an obligation to file under Rule 13d-1 since under Rule 13d-3 he is the indirect beneficial owner of the Z shares held by Y Corporation due to his power to direct their voting or disposition. It should be noted that the operation of Rule 13d-3(d)(1)(i) puts X above the five percent threshold inasmuch as the shares subject to the option will be aggregated with those purchased. X's reporting obligation may be satisfied with a filing by X disclosing his indirect ownership and the intermediaries involved; alternatively, since Y Corporation also would be subject to a separate filing requirement with respect to the same securities, X may file jointly with Y disclosing the control position and other information required with respect to X pursuant to Instruction C to Schedule 13D.

*Example 2. Rule 13d-3, indirect ownership by corporation; Rule 13d-5, use of short form; Instruction C, Schedule 13D.*

Y Corporation, a wholly-owned subsidiary of X Corporation acquires six percent of a class of securities of Z Corporation. X is a widely-held company with no single shareholder owning in excess of one percent of X's shares and its directors beneficially own only directors' qualifying shares.

*Question.* Who has the obligation to report beneficial ownership of the Z shares, and how may this obligation be satisfied?

*Interpretative Response.* Both X and Y would be viewed as beneficial owners of the Z shares due to their power to direct the voting or disposition. X's obligation to report such ownership may be satisfied with a filing by either X or Y. If Y Corporation files on behalf of X and Y, the control position and the other information required with respect to X must be disclosed pursuant to Instruction C to Schedule 13D. If X Corporation files on behalf of X and Y, it must disclose that it is indirectly the beneficial owner of the Z shares as a result of its control over Y Corporation, which actually holds the shares. However, if all the conditions of Rule 13d-5 are satisfied, including paragraph (a)(2)(vi), X may satisfy its filing obligation by filing that form.

*12 Example 3. Rule 13d-3(d)(3), pledge of securities.* X Corporation beneficially owns six percent of a class of securities of Z Corporation. In order to obtain financing from Y, a national bank, X pledges its Z shares as collateral. X's treasurer is on vacation and X inadvertently fails to make the current installment payment until twenty days after it is due, an event of default under the terms of the loan agreement.

*Question.* Will Y be considered the beneficial owner of the Z shares during the period of time X was in default?

*Interpretative Response.* No. Rule 13d-3(d)(3) would operate to prevent Y from being

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

deemed the beneficial owner of the shares because the event of default was cured within thirty days, and in the absence of facts to indicate otherwise, it would not appear that before the default was cured, Y was able to change or influence the control of Z.

*Example 4. Rule 13d-3(a), related beneficial owners.*

X and his son Y each beneficially own three percent of the same class of securities of Z Corporation. Y is twenty-six years old, and lives overseas with his family; X lives in the United States. Several years ago X and Y had a parting of the ways over a family matter and no longer communicate with each other.

*Question.* Will X and Y each be viewed as the beneficial owner of the other's shares and be required to file under Rule 13d-1?

*Interpretative Response.* In the absence of other facts which would indicate the presence of power to direct the voting or disposition of the other's securities, neither X nor Y would be deemed to beneficially own the other's shares of Z Corporation. Accordingly, since neither has acquired in excess of five percent of a class of Z's outstanding shares, no obligation to file exists.

*Example 5. Rule 13d-3(a), voting trust; Rule 13d-5(a), use of short form.*

X acquires fifty-two percent of a class of securities of Z Corporation and simultaneously establishes a ten year voting trust in order to alleviate certain fears of incumbent management. The voting trust agreement names Y as trustee with power to vote on all ordinary corporate matters.

*Question 5-A.* In view of the fact that X has given up the power to vote on all ordinary corporate matters for a substantial period of time, does he have a filing obligation under Rule 13d-1?

*Interpretative Response.* X's retention of the power to direct the disposition of the Z shares is sufficient to constitute beneficial ownership within the meaning of Rule 13d-3(a). Therefore, as a beneficial owner of more than five percent of a class of Z's securities, X has an obligation to file under Rule 13d-1.

*Question 5-B.* Does Y also have a filing obligation with respect to the Z securities, and, if so, how may this obligation be satisfied?

**\*13** *Interpretative Response.* Since Y has the power to vote the Z shares on all ordinary corporate matters it too is a beneficial owner under Rule 13d-3(a) of more than five percent of the Z shares and would therefore have a filing obligation under Rule 13d-3(a). Y may satisfy this obligation either by an individual filing on Schedule 13D or by a joint filing under Rule 13d-1(b) with X on Schedule 13D.

*Example 6. Rule 13d-3(a), co-trustee ownership; Rule 13d-3(c), aggregation; Rule 13d-5, use of short form.*

X, a trust department of a national bank, acquires three percent of a class of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

securities of Z Corporation, as co-trustee for the benefit of A who does not have investment power over the securities. The terms of the trust agreement vest investment power with respect to the Z shares in X and voting power in X and Y, an individual who is not a person specified in Rule 13d-5(a)(2). Prior to the trusts creation, X had voting power and/or investment power under other unrelated trusts with respect to four percent of the subject class of shares of Z Corporation. The individual co-trustee, Y, also beneficially owned four percent of such stock prior to the trust's creation.

*Question.* What are the respective filing obligations of X, Y and A and what is the appropriate form for complying with any such obligation?

*Interpretative Response.* Both X and Y have a filing obligation under Rule 13d-1 since, under Rule 13d-3(a) and Rule 13d-3(c), they are beneficial owners of more than five percent of a class of securities. X may report its acquisition on Form 13D-5 since presumably it satisfies Rule 13d-5(a). Y, the individual co-trustee, however, must report on Schedule 13D as a result of his acquisition. Y is precluded from using Form 13D-5 because he is not among the classes of persons specified in Rule 13d-5(a)(2). It should be noted that the unavailability of the short form to Y does not deprive X of its use as long as X and Y do not act as a group. A does not have a filing obligation because he is not a beneficial owner under Rule 13d-3(a) due to his lack of voting or investment power over the Z shares.

*Example 7. Rule 13d-3(a), bank ownership; Rule 13d-5, use of short form; Rule 13d-1(b), joint filing, Item 6, Schedule 13D.*

X, a foreign bank, through three of its nominees acquires in excess of five percent of a class of securities of Z Corporation on behalf of Y. Y simultaneously with the acquisition on his behalf gives a bona fide irrevocable proxy to the bank.

*Question.* Who has the obligation to file and how may this obligation be satisfied?

**\*14** *Interpretative Response.* Because X has the power to vote, it is a beneficial owner of the Z shares and therefore has the obligation to file. Furthermore, if Y has retained the power to direct the disposition of the Z shares, Y is also a beneficial owner of the shares and also has an obligation to file. X must use Schedule 13D rather than Form 13D-5 to report its beneficial ownership because it is not a bank defined in Section 3(a)(6) of the Act. X and Y may file jointly provided the requirements of Rule 13d-1(b) are satisfied. It should be noted that the bank's relationship with Y would be disclosed under Item 6 of Schedule 13D.

*Example 8. Rule 13d-3(b), scheme to evade.*

In order to acquire a substantial position in the voting securities of Z Corporation prior to the election of directors which will take place in the near future, X causes ten institutions to each acquire three percent of the outstanding shares of Z Corporation. None of the institutions are aware of the purchases by the other institutions or of X's control objective. As an attempted means of avoiding disclosure of his beneficial ownership of the Z shares until a short time before the election, X, simultaneously with the purchase of the Z shares, gives an irrevocable proxy to A; which proxy will lapse according to its terms.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Question*. What are the respective filing obligations of X and A, and how may they be satisfied?

*Interpretative Response*. A is a beneficial owner of the Z shares subject to the proxy due to his power to vote them and therefore he must report such ownership pursuant to Rule 13d-1, as well as information about X under Item 6 of Schedule 13D. In addition, as indicated in Rule 13d-3(b), X is also deemed a beneficial owner of the same Z shares for the period of the proxy as well as thereafter, and therefore must file a Schedule 13D.

*Example 9. Rule 13d-6(a), acquisition.*

The estate of decedent X contains six percent of a class of securities of Z Corporation. Y, the executor named in X's will, is a trust department of a national bank, Y will not be qualified under local law to perform its duties until a court order is issued appointing it executor.

*Question*. Does Y have a filing obligation prior to the time the order is issued appointing it executor?

*Interpretative Response*. n the absence of other facts which would indicate the presence of power in Y to direct the voting or disposition of the Z shares in X's estate immediately, Y will be presumed not to have acquired the beneficial ownership of such shares until such time as it is qualified under local law to perform its duties (See Rule 13d-6(a)). Since a court order is necessary to so qualify Y, it will be presumed not to have acquired the beneficial ownership necessary to create a filing obligation prior to the issuance of such an order. This result involves a presumption which could be rebutted by additional facts (e.g., that Y or another person in fact voted such shares prior to Y's appointment).

**\*15** *Example 10. Rule 13d-5(b), changes reported on short form.*

X, a person specified in Rule 13d-5(a)(2), acquires six percent of a class of securities of Z Corporation in a single transaction. At the end of the quarter in which such acquisition was made, X files Form 13D-5. In the first month of the succeeding quarter X acquires an additional three percent of the same class of Z shares. In the second month of that same succeeding quarter X sells three percent of the same class of Z shares. X makes no further acquisitions or dispositions during the remainder of that quarter.

*Question*. Is X required to amend its initial Form 13D-5 at the end of the succeeding quarter?

*Interpretative Response*. Yes. Rule 13d-5(b), regarding the reporting in changes in beneficial ownership, requires the filing of an amendment to Form 13D-5 to reflect all acquisitions and dispositions of beneficial ownership of securities of the same class previously reported. Consequently, X would file an amended form to show his acquisitions and dispositions during the quarter, regardless of the fact that there

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

has been no net change in his holdings. If X had disposed of five percent of his holdings under the facts presented, a similar result would obtain since Rule 13d-5(b) requires an amendment to Form 13D-5 even when aggregate beneficial ownership drops below the five percent standard.

*Example 11. Rule 13d-5(a)(3) short form notification prerequisite; Rule 13d-3(c), aggregation; Item 6, Form 13D-5, information on other persons; Rule 13d-3(d)(1)(iii), power to revoke.*

X, an individual, owns securities of various classes of stock of various companies. The largest concentration of shares that X owns are shares amounting to three percent of a class of securities of Z Corporation. Because X feels that his various holdings are too diverse to handle personally, X places all his shares into a discretionary account with Y, a broker-dealer registered under Section 15 of the Act. Y already holds two percent of the class in various other discretionary accounts. Thereafter, through ordinary business transactions, Y acquires additional shares of the Z securities so that Y holds a total of eight percent of the class of Z securities in various discretionary accounts, including five and two tenths percent on behalf of X's account.

*Question.* What are X's and Y's obligations under Rule 13d-1 with respect to the Z securities?

*Interpretative Response.* Ordinarily, Y would have investment power and/or voting power over the Z securities held in its various discretionary accounts and therefore would be a beneficial owner of such securities. Pursuant to Rule 13d-3(c), Y would aggregate all shares which it is considered beneficially to own and would be obligated to report its ownership of eight percent of the class under Section 13(d). Since Y is a person specified in Rule 13d-5(a)(2), Y would be eligible to report its ownership on the short form, provided that the other conditions of Rule 13d-5 are met. One condition of that rule requires that Y shall have notified X at the time of any transaction on behalf of X's account which would be reportable by X under Section 13(d). In this case, Y should have notified X at the time of the acquisition which caused the Z securities in X's account to exceed five percent that X might have a filing obligation pursuant to Rule 13d-1. In addition, information about X would be provided in Y's report on Form 13D-5 pursuant to Item 6 of the form.

**\*16** Since X ordinarily would have the power to terminate the discretionary account at any time, X would also be a beneficial owner of the shares held in the account pursuant to Rule 13d-3(d)(1)(iii). X would have a reporting obligation under Rule 13d-1 when his beneficial ownership of the class of securities of Z exceeded five percent, including securities held for his account by Y, as well as any other securities in which X has a beneficial interest. The type of information Y should furnish to X is information of which Y reasonably may have knowledge which would alert X of his current obligation to file an initial or amended Schedule 13D and which would provide the data necessary for the preparation of such filing.

V. PROPOSALS NOT ADOPTED
As previously indicated, the Commission received more than 225 letters of comment from interested persons in response to the 1975 Ownership Proposals. Based on these

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

letters and its own experience, the Commission adopted certain of the proposals as
published; adopted certain of the proposals in modified form; and withdrew one
proposal entirely. See Proposed Rules in this issue at page. The Commission's most
significant modification was with respect to proposed Rule 13d-3, Determination of
Beneficial Ownership. As published for comment, the definition would have included
any person who has or shares the power to direct the voting or disposition of the
securities, or who has or shares the power to direct the receipt of dividends or
proceeds from the sale of securities. The Commission has adopted the standard of
voting power and/or investment power for the determination of beneficial ownership.

Although the definition of beneficial ownership adopted by the Commission does not
expressly encompass those proposals relative to economic interests - such as the
right to receive or the power to direct the receipt of dividends from, or the
proceeds from the sale of securities - Items 6 of Schedule 13D and Form 13D-5, as
adopted, will require certain disclosure of persons having an economic interest in
more than five percent of the class.

The Commission also determined to modify proposed Rule 13d-3(a)(1) by eliminating
that portion of the proposal which would have deemed a person to be the beneficial
owner of all securities beneficially owned by persons related by blood, marriage or
adoption to such person and who have the same home as such person. The Commission
determined that such a standard was totally inapposite to the voting/investment
power approach discussed above. As a result of this determination, proposed Rule
13d-1(b) and proposed Instruction C to Schedule 13D have been similarly modified.

One of the more controversial aspects of the 1975 Ownership Proposals was the so-
called Item XA which would have required each corporation and its parent to
disclose its thirty largest holders of record and, to the extent known, each of
their respective ten largest voting blocks. On the basis of the public commentary,
the Commission has formally withdrawn the proposal. See Proposed Rules in this
issue at page , Exchange Act Release No. 34-13292. In this connection, the
Commission has not adopted those portions of proposed Schedule 13D and proposed
Form 13D-5 which related to record holders and nominees; and has deleted the
present requirement that issuers disclose ten percent record holders in certain
registration, reporting and proxy soliciting forms. As previously noted, so called
Item X has been adopted requiring disclosure of certain beneficial owners.

**17** Based on the letters of comment, the Commission is requiring a beneficial owner
to disclose his "citizenship" in Schedule 13D rather than the "country of which
such person is a national," as proposed, since commentators felt this latter term
was too imprecise. The Commission is not requiring disclosure of citizenship in its
new Form 13D-5 since the vast majority of qualifying institutions are domestic and
since institutional citizenship is largely meaningless. The Commission also deleted
such a requirement from Item X as incorporated into various forms since the
information would already be publicly available.

The other changes between the 1975 Ownership Proposals and the rules adopted herein
are either self-explanatory or are so minor as not to merit specific discussion.

VI. POSSIBLE FUTURE RELATED COMMISSION ACTION
Because of special regulatory considerations, the Commission has determined to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defer action regarding what additional ownership disclosure requirements, if any, are necessary or appropriate for adoption in Annual Report Form U5S under the Public Utility Holding Company Act of 1935.

Similarly, the Commission has deferred all action on Forms 12 [17 CFR 249.212] and 12-K [17 CFR 249.312]inasmuch as these forms are being reevaluated in light of recent statutory amendment.[FN16] In addition, no action has been taken on Form 1-A [17 CFR 239.90] at this time since the entire Regulation A [17 CFR 230.251 to 230.262] is being re-examined.

As noted above[FN17], the Commission has proposed for comment various rules and related schedules with respect to tender offers, which are based in part on the record of the Beneficial Ownership Hearings. The Commission is currently reviewing the more than 100 letters of comment received concerning those proposals. In addition, the Commission will shortly propose a revised fee schedule for filings pursuant to Sections 13(d)(1), 13(d)(5), 14(d)(1) and 14(d)(4) of the Exchange Act.

Also based in part on the record of the Beneficial Ownership Hearings, the Commission, on August 25, 1975, published proposed Rule 14b-1 [17 CFR 240.- 14b-1] under the Exchange Act, relating to issuer communications with beneficial owners of issuer securities.[FN18] The Commission had postponed action on proposed Rule 14b-1 pending completion of the "Street Name Study" mandated by the Securities Act Amendments of 1975[FN19] however, since that Study was published on December 3, 1976,[FN20] the Commission is now considering proposed Rule 14b-1 in light of the conclusions of the study.

At a future date, the Commission anticipates the publication of proposed rules which will implement Section 13(f). That section generally requires the filing of reports, not less often than quarterly, by institutional investment managers which use jurisdictional means in the course of their business and which exercise investment discretion with respect to accounts holding securities of a class described in Section 13(d)(1) having an aggregate fair market value over $100,000,000 or such lesser amount (but in no case less than $10,000,000) as the Commission, by rule, may prescribe.

**18** One of the specific inquiries of the Beneficial Ownership Hearings was: Whether the Commission should adopt special rules or procedures relating to persons subject to jurisdictions whose laws permit or require bank secrecy procedures and/or bearer shares (i.e., equity securities recorded on the issuer's books in the name of "Bearer")?[FN21]
Also, in the Street Name Study sent to Congress, the Commission recommended that the Exchange Act be amended to clarify "that the Commission has available to it specific ancillary remedies in instances in which it is unable to obtain information in furtherance of its investigations" and that "Congress should consider broadening Section 15(b)(6) (of the Exchange Act) to grant to the Commission authority to proceed administratively against foreign financial institutions for violations of the Act."[FN22] As of this time, the Commission has not put forth specific proposals on these matters.

VII. CERTAIN FINDINGS
As required by Section 23(a)(2) of the Exchange Act, the Commission has

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

specifically considered the impact which the rules adopted herein would have on competition. The Commission has found that neither the preparation and disclosure of ownership information by beneficial owners pursuant to the Exchange Act nor the preparation and disclosure of ownership information by issuers pursuant to the Securities Act and the Exchange Act will significantly burden competition. In any event, the Commission has determined that any possible resulting competitive burden will be far outweighed by, and is necessary and appropriate to achieve, the benefits of this information to investors.

In publishing the 1975 Ownership Proposals the Commission pointed out that it was "mindful of the costs to registrants and others of its proposals" and specifically invited comments on the costs of the proposals. The Commission finds that the costs of the rules adopted herein are not unreasonable and are far outweighed by the benefits which will accrue to investors.

VIII. OPERATION OF RULES ADOPTED, EFFECTIVE DATE
All of the new rules and forms and amendments will become effective on August 31, 1977, except that any person who so chooses may rely upon them as of the date of their publication in the FEDERAL REGISTER. No person is relieved from complying with such person's present statutory obligations under Section 13(d) pending the effective date of these rules, forms and amendments.

IX. AUTHORITY
The Commission hereby adopts Rules 13d-1, 13d-2, 13d-3, 13d-4, 13d-5, 13d-6 and 13d-7, Form 13D-5 and Schedule 13D on a permanent basis pursuant to the authority set forth in Sections 3(b), 13(d)(1), 13(d)(2), 13(d)(5), 13(d)(6), 14(d)(1) and 23 of the Exchange Act; amends Forms 10 and 10-K, and Schedules 14A, 14B and 14C pursuant to the authority set forth in Sections 12, 13, 14, 15(d) and 23 of the Exchange Act; and amends Forms S-1 and S-11 pursuant to the authority set forth in Sections 7, 10 and 19(a) of the Securities Act. The Commission finds that any changes in the adopted and amended rules and forms from those published in the 1975 Ownership Proposals have already been generally subject to comment during the Beneficial Ownership Hearings and are either technical in nature or are less burdensome than previous requirements, so that, other than as described above, further notice and other rulemaking procedure pursuant to the Administrative Procedure Act (5 U.S.C. 553) are not necessary.

**\*19** The full text of the adopted and amended rules and forms follows.

I. 17 CFR Part 240 is amended by revising Regulation 13D to read as follows:

REGULATION 13D
§240.13d-1 Filing of Schedule 13D (§240.13d-101).

(a) Any person who, after acquiring directly or indirectly the beneficial ownership of any equity security of a class which is registered pursuant to Section 12 of the Act, or any equity security of any insurance company which would have been required to be so registered except for the exemption contained in Section 12(g)(2)(G) of the Act, or any equity security issued by a closed-end investment company registered under the Investment Company Act of 1940, is directly or indirectly the beneficial owner of more than five percent of such class shall, within ten days

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

after such acquisition, send to the issuer of the security at its principal
executive office, by registered or ceritfied mail, send to each exchange where the
security is traded, and file with the Commission, a statement containing the
information required by Schedule 13D (§240.13d-101). Eight copies of the statement,
including all exhibits, shall be filed with the Commission. At the time of filing
the statement, the person making the filing shall pay to the Commission a fee of
$100, no part of which shall be refunded. For the purposes of Section 13(d), any
person, in determining the amount of outstanding shares of a class of equity
securities, may rely upon information set forth in the issuer's most recent
quarterly or annual report, and any current report subsequent thereto, filed with
the Commission pursuant to this Act, unless he knows or has reason to believe that
the information contained therein is inaccurate.

(b) Whenever two or more persons are required to file a statement pursuant to
section 13(d) with respect to the same securities, only one acquisition statement
need be filed, *provided that*:
    (1) each person on whose behalf the acquisition statement is filed is
    responsible for the timely filing of such statement and any amendments thereto,
    and for the completeness and accuracy of the information contained therein; and
    (2) such acquisition statement shall identify all such persons, shall contain
    the required information with regard to each such person, shall indicate that
    such statement is filed on behalf of all such persons, and shall include, as an
    exhibit, their agreement in writing that such a statement is filed on behalf of
    each of them.

§240.13d-2 Filing of amendments.
If any material change occurs in the facts set forth in the statement required by
§240.13d-1 (Rule 13d-1), the person or persons who were required to file such
statement shall promptly file or cause to be filed with the Commission and send or
cause to be sent to the issuer and to each exchange on which the security is traded
an amendment disclosing such change. Eight copies of each such amendment shall be
filed with the Commission. No additional filing fee shall be required for any such
amendment.

§240.13d-3 Determination of beneficial owner.
*20 (a) For the purposes of section 13(d) of the Act a beneficial owner of a
security includes any person who, directly or indirectly, through any contract,
arrangement, understanding, relationship, or otherwise has or shares:
    (1) *Voting power* which includes the power to vote, or to direct the voting of,
    such security; and/or,
    (2) *Investment power* which includes the power to dispose, or to direct the
    disposition, of such security.

(b) Any person who, directly or indirectly, creates or uses a trust, proxy, power
of attorney, pooling arrangement or any other contract, arrangement, or device with
the purpose or effect of divesting such person of beneficial ownership of a
security or preventing the vesting of such beneficial ownership as part of a plan
or scheme to evade the reporting requirements of section 13(d) of the Act shall be
deemed for purposes of such section to be the beneficial owner of such security.

(c) All securities of the same class beneficially owned by a person, regardless of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the form which such beneficial ownership takes, shall be aggregated in calculating
the number of shares beneficially owned by such person.

(d) Notwithstanding the provisions of other paragraphs of this rule:
    (1) A person shall be deemed to be the beneficial owner of a security, subject
to the provisions of paragraph (b) of this rule, if that person has the right to
acquire beneficial ownership of such security, as defined in Rule 13d-3(a)
(§240.13d-3(a)) at any time within sixty days including but not limited to any
right to acquire: (i) through the exercise of any option, warrant or right; (ii)
through the conversion of a security or (iii) pursuant to the power to revoke a
trust, discretionary account, or similar arrangement. Any securities not
outstanding which are subject to such options, warrants, rights or conversion
privileges shall be deemed to be outstanding for the purpose of computing the
percentage of outstanding securities of the class owned by such person, but
shall not be deemed to be outstanding for the purpose of computing the
percentage of the class by any other person.
    (2) A member of a national securities exchange shall not be deemed to be a
beneficial owner of securities held directly or indirectly by it on behalf of
another person solely because such member is the record holder of such
securities and, pursuant to the rules of such exchange, may direct the vote of
such securities, without instruction, on other than contested matters or matters
that may affect substantially the rights or privileges of the holders of the
securities to be voted, but is otherwise precluded by the rules of such exchange
from voting without instruction.
    (3) A person who in the ordinary course of business is a pledgee of securities
pursuant to a bona fide pledge agreement shall not be deemed to be the
beneficial owner of such pledged securities merely because there has been a
default under such an agreement, except during such time as the event of default
shall remain uncured for more than thirty days or at any time before a default
is cured if the power acquired by the pledgee pursuant to the default enables
him to change or influence control of the issuer.

§240.13d-4 Disclaimer of beneficial ownership.
**21** Any person may expressly declare in any statement filed that the filing of such
statement shall not be construed as an admission that such person is, for the
purposes of section 13(d), the beneficial owner of any securities covered by the
statement.

§240.13d-5 Short form acquisition notice.
(a) A person who, after acquiring directly or indirectly the beneficial ownership
of any equity security of a class described in section 13(d)(1) of the Act, is
directly or indirectly the beneficial owner of more than five percent of such class
may, in lieu of filing a Schedule 13D (§240.13d-101) statement required by section
13(d)(1) of the Act, file with the Commission, within ten days after the end of the
calendar quarter in which such person became obligated to report under Section
13(d)(1), with a non-refundable fee of $100, eight copies, including all exhibits,
of a short form notice on Form 13D-5 (§240.13d-102) and send one copy each of such
form, by registered or certified mail, to the issuer of the security at its
principal executive office and to the principal national securities exchange where
the security is traded, provided that:
    (1) such person has acquired such securities in the ordinary course of his
    business and not with the purpose nor with the effect of changing or influencing

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the control of the issuer, nor in connection with or as a participant in any
transaction having such purpose or effect, including any transaction subject to
Rule 13d-3(b) (§240.13d-3(b)), and

(2) such person is:

  (i) a broker or dealer registered under section 15 of the Act; or

(ii) a bank as defined in section 3(a)(6) of the Act; or

(iii) an investment company registered under section 8 of the Investment
Company Act of 1940; or

(iv) an investment advisor registered under section 203 of the Investment
Advisors Act of 1940; or

(v) an employee benefit plan, pension fund or an endowment fund; or

(vi) a parent holding company, provided that: (A) the Form is being used to
report the indirect acquisition of the beneficial ownership of securities
acquired by a subsidiary and (B) such subsidiary is a person specified in
Rule 13d-5 (a)(2) (§240.13d-5(a)(2)); or

(vii) a group, provided that: (A) all the members are persons specified in
Rule 13d-5(a)(2) (240.- 13d-5(a)(2)) and (B) the securities were acquired in
a transaction exempt pursuant to section 4(2) of the Securities Act of 1933;
and

(3) such person has promptly notified any other person (or group as defined in
section 13(d)(3)) on whose behalf it holds, on a discretionary basis, securities
exceeding five percent of the class, of any acquisition or transaction on behalf
of such other person which might be reportable by that person under section
13(d). This subsection only requires notification to the beneficial owner(s) of
information as to which the filing person reasonably might be expected to know,
which would notify the account owner of a possible obligation he may have to
file a notice under section 13(d) of the Act or an amendment thereto.

**\*22** (b) Notwithstanding Rule 13d-2(§240.13d-2), and provided that such person
continues to meet the requirements set forth in Rule 13d-5(a)(§240.13d-5(a)), any
person who has filed a short form acquisition notice on Form 13D-5 (§240.13d-102)
shall amend such form within ten days after the end of each calendar quarter to
reflect, as of the end of the quarter,

(1) all increases of the beneficial ownership of securities of the same class
during the quarter, and

(2) all decreases of the beneficial ownership of securities of the same class
during the quarter, including any decrease in the percentage of the class
beneficially owned to five percent or less.

Eight copies of such amendment, including all exhibits, shall be filed with the
Commission and one each sent, by registered or certified mail, to the issuer of the
security at its principal executive office and to the principal national securities
exchange where the security is traded. No additional filing fee is required for any
such amendment. Once an amendment has been filed reflecting beneficial ownership of
five percent or less of the class of securities, no additional filings are required
unless the person thereafter becomes the beneficial owner of more than five percent
of the class.

(c) Notwithstanding paragraphs (a) and (b), if any person who has filed a short
form acquisition notice on Form 13D-5 (§240.13d-102) would not be presently
eligible to use such Form to report an additional acquisition, such person shall
immediately become subject to Rule 13d-1 (§240.13d-1) and shall file an acquisition

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

statement thereunder on Schedule 13D in the event such person is a beneficial owner
at that time of more than five percent of the class of equity securities.

§240.13d-6 Acquisition of securities.
(a) A person who becomes a beneficial owner of securities pursuant to §240.13d-3
shall be deemed to have acquired such securities for purposes of section 13(d)(1),
whether such acquisition was through purchase or otherwise.
    (1) The executors or administrators of the estate of a decedent generally will
    be presumed not to have acquired beneficial ownership of the securities in the
    decedent's estate until such time as such executors or administrators are
    qualified under local law to perform their duties.

(b) When two or more persons agree, orally or in writing, to act together for the
purpose of acquiring, holding or disposing of securities of an issuer, the group
formed thereby shall be deemed to have acquired, as of the date of such agreement,
beneficial ownership of all securities of that issuer beneficially owned by any
such persons, for purposes of section 13(d)(1).
    *23 (1) The group's filing obligation may be satisfied either by a single joint
    filing or by each of the group's members making an individual filing. If the
    group's members elect to make their own filings, each such filing should
    identify all members of the group but the information provided need only reflect
    the extent of their individual knowledge.

§240.13d-7 Exemption of certain acquisitions.
(a) An acquisition of equity securities of a class described in section 13(d)(1) by
a person engaged in business as an underwriter of securities, through his
participation in good faith in a firm commitment underwriting registered under the
Securities Act, shall be deemed not to be an acquisition for purposes of section
13(d), provided that any such securities which are beneficially owned by such
person for more than forty days shall be deemed to have been acquired for purposes
of section 13(d) at the end of such forty day period.

(b) Acquisitions of securities of an issuer by a person who prior to such
acquisition was the beneficial owner of more than five percent of the outstanding
securities of the same class as those acquired shall be exempt from section 13(d)
of the Act, provided that:
    (1) The acquisition is made pursuant to preemptive subscription rights in an
    offering made to all holders of securities of the class to which the preemptive
    subscription rights pertain;
    (2) Such person does not, through the exercise of such preemptive subscription
    rights, acquire more than his pro rata share of the securities; and
    (3) The acquisition is duly reported, if required, pursuant to section 16(a) of
    the Act and the rules and regulations thereunder.

§240.13d-101 Schedule 13D Information to be included in statements filed pursuant
to §240.13d-1 and §240.14d-1.

SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5808,  Release No. 13291,  Release No. 33-5808,  Release No. 34-13291, 1977 WL 185650 (S.E.C. Release No.)                    Page 23

SCHEDULE 13D

Under the Securities Exchange Act of 1934

(Amendment No. _____)

_____

(Name of person(s) filing Statement)

_____

(Name of Issuer)

_____

(Title of class of securities)

_____

(CUSIP Number)

_____

(Name, address and telephone number of person authorized to receive notices and communications)

_____

(Date of event which requires filing of this statement)

Note: Eight copies of this statement, including all exhibits, should be filed with the Commission.

*Instructions:*
A. The item numbers and captions of the items shall be included but the text of the items is to be omitted. The answers to the items shall be so prepared as to indicate clearly the coverage of the items without referring to the text of the items. Answer every item. If an item is inapplicable or the answer is in the negative, so state.

B. Information contained in exhibits to the statement may be incorporated by reference in answer or partial answer to any item or sub-item of the statement unless it would render such answer incomplete, unclear or confusing. Matter incorporated by reference shall be clearly identified in the reference by page, paragraph, caption or otherwise. An express statement that the specified matter is incorporated by reference shall be made at the particular place in the statement where the information is required.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*24** C. If the statement is filed by a partnership, limited partnership, syndicate, or other group, the information called for by Items 2-6, inclusive, shall be given with respect to (i) each partner of such partnership or each general partner of such limited partnership, (ii) each member of such syndicate or group and (iii) each person controlling such partner or member. If a person referred to in (i), (ii) or (iii) is a corporation or if the statement is filed by a corporation the information called for by the above mentioned items shall be given with respect to (a) each executive officer and director of such corporation, (b) each person controlling such corporation and (c) each executive officer and director of any corporation ultimately in control of such corporation. Executive officer shall mean the president, secretary, treasurer, any vice president in charge of a principal business function (such as sales, administration or finance), and any other person who performs similar policy making functions for the corporation.

*Item 1. Security and Issuer.*
State the title of the class of equity securities to which this statement relates and the name and address of the issuer of such securities.

*Item 2. Identity and Background.*
State the following with respect to all persons by whom or on whose behalf the acquisition has been or is to be effected:
    (a) Name;
    (b) Residence or business address;
    (c) Present principal occupation or employment and the name, principal business and address of any corporation or other organization in which such employment is carried on; (d) Material occupations, positions, offices or employments during the last five years, giving the starting and ending dates of each and the name, principal business and location of any business corporation or other organization in which such occupation, position, office or employment was carried on;
        *Instruction:* If a person has held various positions with the same organization, each and every such position need not be specifically disclosed. Likewise, if a person holds comparable positions with multiple related organizations, each and every such position need not be specifically disclosed.
    (e) Whether or not, during the last five years, such person has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors) and, if so, give the dates, nature of conviction, name and location of court, any penalty imposed, or other disposition of the case; and
        *Instruction:* A negative answer to this sub-item need not be furnished to security holders.
    (f) Citizenship.

*Item 3. Source and Amount of Funds or Other Consideration.*
State the source and amount of funds or other consideration used or to be used in making the purchases, and if any part of the purchase price or proposed purchase price is represented or is to be represented by funds or other consideration borrowed or otherwise obtained for the purpose of acquiring, holding or trading the securities, a description of the transaction and the names of the parties thereto. If the securities were acquired otherwise than by purchase, describe the method of acquisition.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5808, Release No. 13291, Release No. 33-5808, Release No.                    Page 25
34-13291, 1977 WL 185650 (S.E.C. Release No.)

*Item 4. Purpose of Transaction.*
**\*25** State the purpose or purposes of the purchase or proposed purchase of
securities of the issuer. If the purpose or one of the purposes of the purchase or
proposed purchase is to acquire control of the business of the issuer, describe any
plans or proposals which the purchasers may have to liquidate the issuer, to sell
its assets or to merge it with any other person(s), or to make any other major
change in its business or corporate structure, including, if the issuer is a
registered closed-end investment company, any plans or proposals to make any
changes in its investment policy for which a vote would be required by section 13
of the Investment Company Act of 1940.

*Item 5. Interest in Securities of the Issuer.*
(a) State the aggregate number and percentage of the class represented by such
shares beneficially owned (identifying those shares which there is a right to
acquire) by each person named in Item 2 and by each associate and majority-owned
subsidiary of such person, and identify and state the address of any such associate
or subsidiary.

(b) For each named in response to paragraph (a), indicate the nature of such
person's beneficial ownership (i.e. voting power or investment power or both);

(c) Describe any transactions in the class of securities reported on that were
effected during the past sixty days or since the most recent filing on Schedule
13D(§240.13d-101), whichever is less, by the persons named in response to paragraph
(a) and by any executive officers, directors or affiliates of any subsidiary of
such person.

(d) If any other person is known to have an economic interest in the securities
reported on, including but limited to the right to receive or the power to direct
the receipt of dividends from, or the proceeds from the sale of, such securities, a
statement to that effect should be included in response to this item and, if such
interest relates to more than five percent of the class, such person should be
identified. A listing of the shareholders of an investment company registered under
the Investment Company Act of 1940 or the beneficiaries of an employee benefit
plan, pension fund or endowment fund is not required.

*Item 6. Contracts, Arrangements, Understandings or Relationships with Respect to
Securities of the Issuer.*
Furnish any information as to any contracts, arrangements, understandings or
relationships (legal or otherwise) with any person with respect to any securities
of the issuer, including but not limited to transfer or voting of any of the
securities, finder's fees, joint ventures, loan or option arrangements, puts or
calls, guaranties of loans, guaranties against loss, or guaranties of profits,
division of profits or loss, or the giving or withholding of proxies, naming the
persons with whom such contracts, arrangements, understandings or relationships
have been entered into and giving the details thereof. Include such information for
any of the securities that are pledged or otherwise subject to a contingency the
occurrence of which would give another person voting power or investment power over
such securities except that disclosure of standard default and similar provisions
contained in loan agreements need not be included.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5808,  Release No. 13291,  Release No. 33-5808,  Release No.                    Page 26
34-13291, 1977 WL 185650 (S.E.C. Release No.)

*Item 7. Persons Retained, Employed or to be Compensated.*
**\*26** Where the Schedule 13D (§240.13d-101) relates to a tender offer, or request or
invitation for tenders, identify all persons and classes of persons employed,
retained or to be compensated by the person filing this Schedule 13D, or by any
person on his behalf, to make solicitations or recommendations to security holders
and describe briefly the terms of such employment, retainer or arrangement for
compensation.

*Item 8. Material to be Filed as Exhibits.*
Copies of all requests or invitations for tenders or advertisements making a tender
offer or requesting or inviting tenders, additional material soliciting or
requesting such tender offers, solicitations or recommendations to the holders of
the security to accept or reject a tender offer or request or invitation for
tenders shall be filed as an exhibit.

*Signature.*

I certify that to the best of my knowledge and belief the information set forth in
this statement is true, complete and correct.

_____

Date

_____

Signature

_____

Name/Title

The statement shall be signed by each person on behalf of whom the statement is
filed or his authorized representative. If the statement is signed on behalf of a
person by his authorized representative, evidence of the representative's authority
to sign on behalf of such person shall be filed with the statement. The name and
any title of each person who signs the statement shall be typed or printed beneath
his signature.

§240.13d-102 Form 13D-5 - Short Form Acquisition Notice

pursuant to §240.13d-5 under the Securities Exchange Act of 1934.

SECURITIES AND EXCHANGE COMMISSION

WASHINGTON, D.C. 20549

FORM 13D-5

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5808,  Release No. 13291,  Release No. 33-5808,  Release No.                          Page 27
34-13291, 1977 WL 185650 (S.E.C. Release No.)

SHORT FORM ACQUISITION NOTICE

Pursuant to Rule 13d-5 Under The Securities Exchange Act of 1934

(AMENDMENT NO. ***)

1(a) *Name of Person Filing:* _____

1(b) *Business Address of Principal Office:* _____

2(a) *Name of Issuer:* _____

2(b) *Title of Class of Securities:* _____

2(c) *CUSIP Number:* _____

3. *Check whether the person filing is a:*

(a) [] Broker or Dealer registered under Section 15 of the Act

(b) [] Bank as defined in section 3(a)(6) of the Act

(c) [] Investment Company registered under section 8 of the Investment Company Act

(d) [] Investment Adviser registered under section 203 of the Investment Advisers
Act of 1940

(e) [] Employee Benefit Plan, Pension Fund or Endowment Fund (see §240.13d-
5(a)(2)(v))

(f) [] Parent Holding Company, in accordance with §240.13d-5(a)(2)(vi) (Note: See
Item 7)

**\*27** (g) [] Group, in accordance with §240.13d-5(a)(2) (vii) (Note: See Item 8)

4. *Ownership:*

(a) During the period covered by this statement and during which the filing
person(s) was the beneficial owner of more than five percent of the class, state
the aggregate number of such securities as to which there was an increase or
decrease in beneficial ownership:

Increases: _____ Decreases: _____

(b) As of the date of this notice, if the percent of the class owned is five
percent or more, provide the following information:

(1) Amount Beneficially Owned:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5808, Release No. 13291, Release No. 33-5808, Release No. 34-13291, 1977 WL 185650 (S.E.C. Release No.)                    Page 28

---

(2) Percent of Class:

---

(3) Number of Accounts or Other Entities for Whom Securities are Owned:

---

5. *Ownership of Five Percent or Less of Class*

State the date or dates on which the filing person commenced and/or ceased to be the beneficial owner of more than five percent of the class of securities.

6. *Ownership of More than Five Percent on Behalf of Another Person:*

If another person is known to have an economic interest in the securities reported on, including but not limited to the right to receive or the power to direct the receipt of dividends from, or the proceeds from the sale of, such securities and this interest relates to more than five percent of the class of securities, attach an exhibit containing the information required by Item 6 of Schedule 13D with respect to that person. This item does not require a listing of the shareholders of an investment company registered under the Investment Company Act of 1940 or the beneficiaries of an employee benefit plan, pension fund or endowment fund.

7. *Identification and Classification of the Subsidiary Which Acquired the Security Being Reported on By the Parent Holding Company*

If a parent holding company has filed this Form, so indicate under Item 3(g) and attach an exhibit stating the identity and the Item 3 classification of the relevant subsidiary.

8. *Identification and Classification of Members of the Group*

If a group has filed this Form, so indicate under Item 3(h) and attach an exhibit stating the identity and the Item 3 classification of each member of the group.

9. *Notice of dissolution of Group*

Notice of dissolution of a group may be furnished on an exhibit stating the date of the dissolution and that all further filings with respect to transactions in the security reported on will be filed, if required, by members of the group, in their individual capacity.

*Signatures.*

I certify that, to the best of my knowledge and belief, the securities referred to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

above were acquired in the ordinary course of business and were not acquired for
the purpose of and do not have the effect of changing or influencing the control of
the issuer of such securities and were not acquired in connection with or as a
participant in any transaction having such purpose or effect.

**\*28** _____

Date of Notice

_____

Reporting Person

_____

Signature and Title

Note: Eight copies of this statement, including all exhibits, should be filed with
the Commission.

[Secs. 3(b), 13(d)(1), 13(d)(2), 13(d)(5), 13(d)(6), 14(d)(1), 23; 48 Stat. 882,
894, 895, 901; sec. 203(a), 49 Stat. 704, sec. 8, 49 Stat. 1379; sec. 10, 78 Stat.
88a; secs. 2, 3, 82 Stat. 454, 455; secs. 1, 2, 3-5, 84 Stat. 1497; secs. 3, 18, 89
Stat. 97, 155; 15 U.S.C. 78c(b), 78m(d)(1), 78m(d)(2), 78m(d)(5), 78m(d)(6),
78n(d)(1), 78w.]

II. Item 19 of Form S-1 is amended to read as follows:

§239.11 Form S-1, registration statement under the Securities Act of 1933.

\*\*\*\*\*

*Item 19. Security Ownership of Certain Beneficial Owners and Management*
(a) Furnish the following information, as of the most recent practicable date, in
substantially the tabular form indicated, with respect to any person (including any
"group" as that term is used in Section 13(d)(3) of the Securities Exchange Act of
1934 who is known to the registrant to be the beneficial owner of more than five
percent of any class of the registrant's voting securities. Show in Column (3) the
total number of shares beneficially owned and in Column (4) the percent of class so
owned. Of the number of shares shown in Column (3), indicate by footnote or
otherwise, the amount known to be shares with respect to which such listed
beneficial owner has the right to acquire beneficial ownership, as specified in
Rule 13d-3(d)(1) under the Exchange Act [17 CFR 240.13d-3(d)(1)].

| (1) | (2) | (3) | (4) |
|---|---|---|---|
| Title of Class | Name and Address of Beneficial Owner | Amount Beneficially Owned | Percent of Class |

(b) Furnish the following information, as of the most recent practicable date, in substantially the tabular form indicated, as to
each class of equity securities of the registrant or any of its parents or subsidiaries, other than directors' qualifying shares,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

beneficially owned by all directors and officers of the registrant as a group, without naming them. Show in Column (2) the total number of shares beneficially owned and in Column (3) the percent of class so owned. Of the number of shares shown in Column (2), indicate, by footnote or otherwise, the amount of shares with respect to which such persons have the right to acquire beneficial ownership as specified in Rule 13d-3(d)(1) under the Exchange Act.

|     (1)     |           (2)            |       (3)        |
|-------------|--------------------------|------------------|
| Title of Class | Amount Beneficially Owned | Percent of Class |

**\*29** (c) Describe any arrangements, known to the registrant, including any pledge by any person of securities of the registrant or any of its parents, the operation of which may at a subsequent date result in a change in control of the registrant.

*Instructions*

1. The percentages are to be calculated on the basis of the amount of outstanding securities, excluding securities held by or for the account of the registrant or its subsidiaries; however, such calculations may be made on the basis of outstanding securities plus securities deemed outstanding pursuant to Rule 13d-3(d)(1) under the Exchange Act provided appropriate disclosure is made as to the method of calculating.

2. For the purposes of this item, beneficial ownership shall be determined in accordance with Rule 13d-3 [17 CFR 240.13d-3] under the Exchange Act.

3. The registrant shall be deemed to know the contents of any statements filed with the commission pursuant to Section 13(d) of the Exchange Act. A registrant may rely upon information set forth in such statements unless the registrant knows or has reason to believe that such information is not complete or accurate or that a statement or amendment should have been filed and was not.

4. For purposes of furnishing information pursuant to paragraph (a), the registrant may indicate the source and date of such information.

5. Where more than one beneficial owner is known to be listed for the same securities, appropriate disclosure should be made to avoid confusion.

6. Paragraph (c) does not require a description of ordinary default provisions contained in the charter, trust indentures or other governing instruments relating to securities of the registrant.

7. If the equity securities are being registered in connection with, or pursuant to, a plan of acquisition, reorganization, readjustment or succession, indicate as far as practicable the status to exist upon consummation of the plan on the basis of present holdings and commitments.

8. If any of the securities being registered are to be offered for the account of security holders, name each such security holder and state the amount of securities owned by him, the amount to be offered for his account, and the amount to be owned after the offering.

9. If, to the knowledge of the registrant or any principal underwriter of the securities being registered, more than five percent of any class of voting securities of the registrant are held or are to be held subject to any voting trust or similar arrangement, state the title of such securities, the amount held or the be held and the duration of the agreement. Give the names and addresses of the voting trustees and outline briefly their voting rights and other powers under the agreement.

\*\*\*\*\*

Item 18 of Form S-11 is amended to read as follows:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5808,  Release No. 13291,  Release No. 33-5808,  Release No.                    Page 31
34-13291, 1977 WL 185650 (S.E.C. Release No.)

§239.18 Form S-11, for registration under the Securities Act of 1933 of securities of certain real estate companies.

*****

*Item 18. Security Ownership of Certain Beneficial Owners and Management*
*30 Furnish the following information, as of the most recent practicable date, in substantially the tabular form indicated, with respect to any person (including any "group" as that term is used in Section 13(d)(3) of the Securities Exchange Act of 1934 who is known to the registrant to be the beneficial owner of more than five percent of any class of the registrant's equity securities. Show in column (3) the total number of shares beneficially owned and in Column (4) the percent of class so owned. Of the number of shares shown in Column (3), indicate, by footnote or otherwise, the amount known to be shares with respect to which such listed beneficial owner has the right to acquire beneficial ownership as specified in rule 13d-3(d)(1) under the Exchange Act [17 CFR 240.- 13d-3(d)(1)].

| (1) | (2) | (3) | (4) |
|---|---|---|---|
| Title of Class | Name and Address of Beneficial Owner | Amount Beneficially Owned | Percent of Class |

(b) Furnish the following information, as of the most recent practicable date, in substantially the tabular form indicated, as to each class of equity securities of the registrant or any of its parents or subsidiaries, other than directors' qualifying shares, beneficially owned by all officers and directors of the registrant and their associates, as a group, without naming them. Show in Column (2) the total number of shares beneficially owned and in column (3) the percent of class so owned. Of the number of shares shown in Column (2), indicate, by footnote or otherwise, the amount of shares with respect to which such persons have the right to acquire beneficial ownership, as specified in Rule 13d-3(d)(1) under the Exchange Act.

| (1) | (2) | (3) |
|---|---|---|
| Title of Class | Amount Beneficially Owned | Percent of Class |

(c) Describe any arrangements, known to the registrant, including any pledge by any person of securities of the registrant or any of its parents, the operation of which may at a subsequent date result in a change in control of the registrant.

*Instructions*
1. The percentages are to be calculated on the basis of the amount of outstanding securities, excluding securities held by or for the account of the registrant or its subsidiaries; however, such calculations *may* be made on the basis of outstanding securities plus securities deemed outstanding pursuant to rule 13d-3(d)(1) under the Exchange Act provided appropriate disclosure is made as to the method of calculating.

*31 2. For the purposes of this item, beneficial ownership shall be determined in accordance with Rule 13d-3 under the Exchange Act [17 CFR 240.13d-3].

3. The registrant shall be deemed to know the contents of any statements filed with the Commission pursuant to Section 13(d) of the Exchange Act. A registrant may rely upon information set forth in such statements unless the registrant knows or has reason to believe that such information is not complete or accurate or that a statement or amendment should have been filed and was not.

4. For purposes of furnishing information pursuant to paragraph (a), the registrant may indicate the source and date of such information.

5. Where more than one beneficial owner is known to be listed for the same securities, appropriate disclosure should be made to avoid confusion.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

6. Paragraph (c) does not require a description of ordinary default provisions contained in the carter, trust indentures or other governing instruments relating to securities of the registrant.

7. If securities are being registered in connection with, or pursuant to, a plan of acquisition, reorganization, readjustment or succession, indicate as far as practicable the status to exist upon consummation of the plan on the basis of present holdings and commitments.

8. If any of the securities being registered are to be offered for the account of security holders, name each such security holder and state the amount of securities owned by him, the amount to be offered for his account, and the percentage of securities of the class (computed in accordance with instruction1) to be owned after the offering if all of the securities offered for his account are sold.

9. If, to the knowledge of the registrant or any principal underwriter of the securities being registered, more than five percent of any class of voting securities of the registrant are held or to be held subject to any voting trust or other similar agreement, state the title of such securities, the amount held or to be held and the duration of the agreement. Give the names and addresses of the voting trustees and outline briefly their voting rights and other powers under the agreement.

*****

[Secs. 7, 10, 19(a); 48 Stat. 78, 81, 85; secs. 205, 209, 48 Stat. 906, 908; sec. 8, 68 Stat. 685; 15 U.S.C. 77g, 77j, 77s(a).]

III. Item 5 of Form 10 is amended to read as follows:

§249.210 Form 10, general form for registration of securities pursuant to section 12(b) or (g) of the Securities Exchange Act of 1934.

*****

*Item 5. Security Ownership of Certain Beneficial Owners and Management*
(a) Furnish the following information, as of the most recent practicable date, in substantially the tabular form indicated, with respect to any person (including any "group" as that term is used in Section 13(d)(3) of the Act) who is known to the registrant to be the beneficial owner of more than five percent of any class of the registrant's voting securities. Show in Column (3) the total number of shares beneficially owned and in Column (4) the percent of class so owned. Of the number of shares shown in Column (3), indicate, by footnote or otherwise, the amount known to be shares with respect to which such listed beneficial owner has the right to acquire beneficial ownership as specified in Rule 13d-3(d)(1) under the Act [17 CFR 240.13d-3(d)(1)].

| (1) | (2) | (3) | (4) |
|---|---|---|---|
| Title of Class | Name and Address of Beneficial Owner | Amount Beneficially Owned | Percent of Class |

*32 (b) Furnish the following information, as of the most recent practicable date, in substantially the tabular form indicated, as to each class of equity securities of the registrant or any of its parents or subsidiaries, other than directors' qualifying shares, beneficially owned by all directors and officers of the registrant as a group, without naming them. Show in Column (2) the total number of shares beneficially owned and in Column (3) the percent of class so owned. Of the number of shares shown in Column (2), indicate, by footnote or otherwise, the amount of shares with respect to which such persons have the right to acquire beneficial ownership, as specified in Rule 13d-3(d)(1) under the Act.

| (1) | (2) | (3) |
|---|---|---|
| Title of Class | Amount Beneficially Owned | Percent of Class |

(c) Describe any arrangements, known to the registrant, including any pledge by any person of securities of the registrant or any of its parents, the operation of which may at a subsequent date result in a change in control of the registrant.

*Instructions*
1. The percentages are to be calculated on the basis of the amount of outstanding securities, excluding securities held by or for the account of the registrant or its subsidiaries; however, such calculations *may* be made on the basis of outstanding securities plus securities deemed outstanding pursuant to Rule 13d-3(d)(1) under the Act provided appropriate disclosure is made as to the method of calculating.

2. For the purposes of this item, beneficial ownership shall be determined in accordance with Rule 13d-3 under the Act [17 CFR 240.13d-3].

3. For purposes of furnishing information pursuant to paragraph (a), the registrant may indicate the source and date of such information. When applicable, the registrant shall be deemed to know the contents of any statements filed with the Commission pursuant to Section 13(d) of the Exchange Act. A registrant may rely upon information set forth in such statements unless the registrant knows or has reason to believe that such information is not complete or accurate or that a statement or amendment should have been filed and was not.

4. Where more than one beneficial owner is known to be listed for the same securities, appropriate disclosure should be made to avoid confusion.

5. Paragraph (c) does not require a description of ordinary default provisions contained in the charter, trust indentures or other governing instruments relating to securities of the registrant.

*****

Item 14 of Form 10-K is amended to read as follows:

§249.310 Form 10-K, annual report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934.

*****

*Item 14. Security Ownership of Certain Beneficial Owners and Management*
*33 (a) Furnish the following information, as of the most recent practicable date, in substantially the tabular form indicated, with respect to any person (including any "group" as that term is used in Section 13(d)(3) of the Act) who is known to the registrant to be the beneficial owner of more than five percent of any class of the registrant's voting securities. Show in Column (3) the total number of shares beneficially owned and in Column (4) the percent of class so owned. Of the number of shares shown in Column (3), indicate, by footnote or otherwise, the amount known to be shares with respect to which such listed beneficial owner has the right to acquire beneficial ownership as specified in Rule 13d-3(d)(1) under the Act [17 CFR 240.13d-3(d)(1)].

| (1)            | (2)                                     | (3)                           | (4)             |
|----------------|-----------------------------------------|-------------------------------|-----------------|
| Title of Class | Name and Address of<br>Beneficial Owner | Amount Beneficially<br>Owned  | Percent of Class |

(b) Furnish the following information, as of the most recent practicable date, in substantially the tabular form indicated, as to each class of equity securities of the registrant or any of its parents or subsidiaries, other than directors' qualifying shares, beneficially owned by all directors and officers of the registrant as a group, without naming them. Show in Column (2) the total number of shares beneficially owned and in Column (3) the percent of class so owned. Of the number of shares shown in Column (2), indicate, by footnote or otherwise, the amount of shares with respect to which such persons have the right to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

acquire beneficial ownership as specified in Rule 13d-3(d)(1) under the Act.

| (1) | (2) | (3) |
|---|---|---|
| Title of Class | Amount Beneficially Owned | Percent of Class |

(c) Describe any arrangements, known to the registrant, including any pledge by any person of securities of the registrant or any of its parents, the operation of which may at a subsequent date result in a change in control of the registrant.

*Instructions*

1. The percentages are to be calculated on the basis of the amount of outstanding securities, excluding securities held by or for the account of the registrant or its subsidiaries; however, such calculations may be made on the basis of outstanding securities plus securities deemed outstanding pursuant to Rule 13d-3(d)(1) under the Act provided appropriate disclosure is made as to the method of calculating.

**\*34** 2. For the purposes of this item, beneficial ownership shall be determined in accordance with Rule 13d-3 under the Act [17 CFR 240.13d-3].

3. The registrant shall be deemed to know the contents of any statements filed with the Commission pursuant to Section 13(d) of the Act. A registrant may rely upon information set forth in such statements unless the registrant knows or has reason to believe that such information is not complete or accurate or that a statement or amendment should have been filed and was not.

4. For purposes of furnishing information pursuant to paragraph (a), the registrant may indicate the source and date of such information.

5. Where more than one beneficial owner is known to be listed for the same securities, appropriate disclosure should be made to avoid confusion.

6. Paragraph (c) does not require a description of ordinary default provisions contained in the charter, trust indentures or other governing instruments relating to securities of the registrant.

Items 5 and 6 of Schedule 14A are amended to read as follows:

§240.14a-101 Schedule 14A. Information required in proxy statement.

*****

*Item 5. Voting Securities and Ownership Thereof By Certain Beneficial Owners and Management.*
(a) ***

(b) ***

(c) ***

(d) Furnish the following information, as of the most recent practicable date, in substantially the tabular form indicated, with respect to any person (including any "group" as that term is used in section 13(d)(3) of the Act) who is known to the persons on whose behalf the solicitation is made to be the beneficial owner of more than five percent of any class of the issuer's voting securities. Show in Column (3) the total number of shares beneficially owned and in Column (4) the percent of class so owned. Of the number of shares shown in Column (3), indicate, by footnote or otherwise, the amount known to be shares

with respect to which such listed beneficial owner has the right to acquire beneficial ownership as specified in Rule 13d-3(d)(1) under the Act [§240.13d-3(d)(1)].

| (1) | (2) | (3) | (4) |
|---|---|---|---|
| Title of Class | Name and Address of Beneficial Owner | Amount Beneficially Owned | Percent of Class |

(e) Furnish the following information, as of the most recent practicable date, in substantially the tabular form indicated, as to each class of voting securities of the issuer or of its parent, other than directors' qualifying shares, beneficially owned by all directors and officers of the issuer as a group, without naming them. Show in Column (2) the total number of shares beneficially owned and in Column (3) the percent of class so owned. Of the number of shares shown in Column (2), indicate, by footnote or otherwise, the amount of shares with respect to which such persons have the right to acquire beneficial ownership as specified in Rule 13d-3(d)(1) (§240.13d-3(d)(1)) under the Act.

| (1) | (2) | (3) |
|---|---|---|
| Title of Class | Amount Beneficially Owned | Percent of Class |

*35 (f) If, to the knowledge of the persons on whose behalf the solicitation is made, a change in control of the issuer has occurred since the beginning of its last fiscal year, state the name of the person or persons who acquired such control, the date and a description of the transaction or transactions in which control was acquired and the percentage of voting securities of the issuer now owned by such person or persons.

(g) Describe any arrangements known to the persons on whose behalf the solicitation is made, including any pledge by any person of securities of the issuer or any of its parents, the operation of which may at a subsequent date result in a change in control of the issuer.

*Instructions.*
1. The percentages are to be calculated on the basis of the amount of outstanding securities, excluding securities held by or for the account of the issuer or its subsidiaries; however, such calculations *may* be made on the basis of outstanding securities plus securities deemed outstanding pursuant to Rule 13d-3(d)(1) (§240.13d-3(d)(1)) under the Act provided appropriate disclosure is made as to the method of calculating.

2. For the purposes of this item, beneficial ownership shall be determined in accordance with Rule 13d-3 under the Act [§240.13d-3].

3. Persons on whose behalf the solicitation is made shall be deemed to know the contents of any statements filed with the Commission pursuant to section 133(d) of the Act. Such persons may rely upon information set forth in such statements unless they know or have reason to believe that such information is not complete or accurate or that a statement or amendment should have been filed and was not.

For purposes of furnishing information pursuant to paragraph (d), the source and date of such information may be indicated.

Where more than one beneficial owner is known to the listed for the same securities, appropriate disclosure should be made to avoid confusion.

Paragraph (g) does not require a description of ordinary default provisions contained in the charter, just indentures or other governing instruments relating to securities of the issuer.

*Item 6. Nominees and Directors.*
(a) ***

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5808,  Release No. 13291,  Release No. 33-5808,  Release No.                    Page 36
34-13291, 1977 WL 185650 (S.E.C. Release No.)


(b) ***

*Instruction.* For Purposes of this item, beneficial ownership shall be determined in accordance with Rule 13d-3 under the Act [§240.13d-3].

*****

Item 3 of Schedule 14B is amended to read as follows:

§240.14a-102 Schedule 14B. Information to be included in statements filed by or on behalf of a participant (other than an issuer pursuant to §240.14a-11(c) (Rule 14a-11(c)).

*****

*Item 3. Interests in securities of the issuer.*

*****

(g) ***

*Instruction.* For purposes of this item, beneficial ownership shall be determined in accordance with Rule 13d-3 under the Act [§240.13d-3].

**\*36** *****

[Secs. 12, 13, 14, 15(d), 23, 48 Stat. 892, 894, 895, 901; sec. 203(a), 49 Stat. 704; secs. 1, 3, 8, 49 Stat. 1375, 1377, 1379; sec. 202, 68 Stat. 686; secs. 3, 4, 5, 6, 10, 78 Stat. 565-568, 569, 570-574, 88a; secs. 1, 2, 3, 82 Stat. 454, 455; secs. 1, 2, 3-5, 28(c), 84 Stat. 1435, 1479; sec. 105(b), 88 Stat. 1503; secs. 8, 9, 10, 18, 89 Stat. 117, 118, 119, 155; 15U.S.C. 78l, 78m, 78n, 78o(d), 78w.]

By the Commission.

George A. Fitzsimmons
Secretary

FN1. It should be noted that Schedule 13D also is presently required to be filed in connection with the making of certain tender offers subject to the provisions of Section 14(d) of the Exchange Act. On August 2, 1976, the Commission proposed for comment certain rules and related schedules under Sections 14(d) and 14(e) of the Exchange Act with respect to tender offers. If adopted, these proposals would, among other things, provide for a specific Tender Offer Statement (proposed Schedule 14D-1) [17 CFR 240.14d-100] to be used instead of Schedule 13D. Exchange Act Release No. 12676 (August 6, 1976) (41 FR 33004).

FN2. An examination of the legislative history reveals that the amendments were primarily enacted for the two-fold purpose of (i) providing adequate disclosure and other protections to stockholders in connection with takeover attempts, such as tender offers, and corporate repurchases, and (ii) providing adequate disclosure to stockholders in connection with any substantial acquisition of securities within a relatively short period of time. S. Rep. No. 550, 90th Cong. 1st Sess. 7 (1967); H.R. Rep. No. 1711, 90th Cong. 2nd Sess. 8 (1968); and Hearings on S. 510 Before the Subcom. on Securities of the Senate comm. on Banking and Currency, 90th Cong., 1st Sess. (1967). In 1970 Congress amended certain of these provisions by lowering the reporting threshold for acquisitions and tender offers from ten percent to five percent and by granting the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5808,  Release No. 13291,  Release No. 33-5808,  Release No.                    Page 37
34-13291, 1977 WL 185650 (S.E.C. Release No.)

Commission additional rulemaking authority. Hearings on S. 3431 Before the Subcomm. on Securities of the Senate Comm. on Banking and Currency, 91st Cong., 2nd Sess. (1970). In order to implement immediately those provisions of the 1968 and 1970 Williams Act Amendments which were not self-executing upon their effectiveness, the Commission adopted temporary rules and regulations. Exchange Act Release No. 8370 (July 30, 1968) (33 FR 11015) as amended by Release No. 8392 (August 30, 1968) (33 FR 13036), as further amended by Release No. 9060 (January 18, 1971) (36 FR 976).

FN3. Exchange Act Release Nos. 11003 (September 9, 1974)(39 FR 33855) and 11088 (November 5, 1974) (39 FR 41223).

FN4. Exchange Act Release No. 11616 (August 25, 1975)(40 FR 42212). See SEC Docket S7-580.

FN5. SEC Docket S7-580, available for inspection and copying at SEC Public Reference Section, Room 6101, 1100 L Street, N.W., Washington, D.C.

FN6. Section 13(d)(4) of the Exchange Act deems certain treasury and other shares not to be outstanding and Rule 13d-3(d)(1) deems certain unissued securities to be outstanding for calculating the ownership by certain persons.

FN7. Proposed amendments to this rule, announced today, would, if adopted, delete the sixty-day time limit so that a person would be deemed to be the beneficial owner of securities which such person has the right to acquire at any time, pursuant to the exercise of an option, warrant, right, or convertible security or power to revoke a trust or similar arrangement. In addition, a person would be deemed to be the beneficial owner of securities such person has the right to acquire, within a specified time period, pursuant to the automatic termination of a trust or similar arrangement. Exchange Act Release No. 34-13292 in Proposed Rules in this issue at page

FN8. See, e.g. Rule 451, Rules of the New York Stock Exchange and Rule 577, Rules of the American Stock Exchange.

FN9. The Commission has today proposed certain revisions of Rule 13d-5(a) concerning the availability of the short form particularly for foreign persons. (See Note 7). As adopted, the new rule limits the use of the short form essentially to domestic persons. A proposed amendment to the rule would, if adopted, allow use of the short form by similar non-domestic institutions which agree to make available to the Commission information which would be required if such person were filing a Schedule 13D with respect to the transaction. Another proposed revision would, if adopted, cause the short form to be unavailable if any of the securities being reported on were purchased at the direction of another person. This amendment is intended to clarify the condition that the persons using the short form acquired the reported securities in the ordinary course of their business and not with a view toward changing or effecting a change in control of the issuer of securities.

FN10. At such time as rules are adopted under Section 13(f) of the Exchange Act for the reporting of information by certain institutional investment managers, the Commission will take whatever action is appropriate in order to avoid any unnecessary duplication. Section 13(f) generally provides for the filing of reports, not less often than quarterly, by institutional investment managers which use jurisdictional means in the course of their business and which exercise investment discretion with respect to accounts holding securities of a class described in Section 13(d)(1) having an aggregate fair market value over $100 million or such less amount (but in no case less than $10 million) as the Commission, by rule, may prescribe.

FN11. Compare "Sisak v. Wings & Wheels Express, Inc.," [1970-1971 Decisions] CCH Fed. Sec. L. Rep. para. 92,991 (S.D.N.Y. 1970) and "Ozark Air Lines, Inc. v. Cox," 326 F. Supp. 1113 (E.D. Mo. 1971).

FN12. See "GAF Corp. v. Millstein," 453 F. 2d 709 (2nd Cir. 1971), cert. denied 406 U.S. 910 (1972).

FN13. The Commission's staff is presently re-examining all of the registration, reporting and proxy soliciting forms to determine the feasibility of adopting uniform requirements for five year backgrounds on certain individuals in all such forms. For example, a similar item in the proposed Tender Offer Statement (Note 1, supra) is based on a five-year period and the Commission's proposed amendments concerning disclosure about management background in issuer proxy statements,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5808,  Release No. 13291,  Release No. 33-5808,  Release No. 34-13291, 1977 WL 185650 (S.E.C. Release No.)

Page 38

annual reports and registration statements would, if adopted, reduce the time period for such disclosure from ten years to five years [Exchange Act Release No. 12946, (November 9, 1976) [41 FR 49493)].

FN14. The term "executive officer" has been defined in Instruction C to mean "the president, secretary, treasurer, any vice-president in charge of a principal business function (such as sales, administration or finance), and any other person who performs similar policy making functions for the corporation."

FN15. Form S-11 is for the registration of securities of certain real estate companies.

FN16. Railroad Revitalization and Regulatory Reform Act, Pub. L. No. 94-210 (February 5, 1976). On September 3, 1976, the Commission published for comment proposals which, if adopted, would revoke Form 12-K and therefore require registrants who currently report on that form to file reports in full compliance with annual report Form 10-K [17 CFR 249.310] and quarterly report Form 10-Q [17 CFR 249.308a]. Exchange Act Release No. 12769 (September 14, 1976) (41 FR 39048).

FN17. See Note 1, supra.

FN18. Exchange Act Release No. 11617 (September 9, 1975)(40 FR 42219).

FN19. Securities Exchange Act of 1934, Section 12(m).

FN20. Final Report of the Securities and Exchange Commission on the Practice of Recording Securities in the Records of the Issuer in Other Than the Name of the Beneficial Owner of Such Securities (December 3, 1976) (hereinafter "Street Name Study").

FN21. Exchange Act Release No. 11003 (September 9, 1974)(39 FR 33855).

FN22. Street Name Study, supra Note 20, at 76.

Release No. 5808, Release No. 13291, Release No. 33-5808, Release No. 34-13291, 1977 WL 185650 (S.E.C. Release No.)
END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**C**

Release No. 5925, Release No. 14692, Release No. 33-5925, Release No. 34-14692,
Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898 (S.E.C. Release No.)

Securities and Exchange Commission (S.E.C.)

Securities Act Of 1933
Securities Exchange Act Of 1934
Investment Company Act Of 1940

Filing And Disclosure Requirements Relating To Beneficial Ownership

April 21, 1978

AGENCY: Securities and Exchange Commission

ACTION: Final rules.

SUMMARY: The Commission announced: (1) the amendment of rules and a schedule
governing the disclosure of the beneficial ownership and related information of
certain equity securities which were previously scheduled to take effect on April
30, 1978; (2) the adoption of a new schedule which sets forth the disclosure
requirements for reporting beneficial ownership and related information of certain
equity securities by certain institutional investors; and (3) the rescission of the
short form acquisition notice which would have been available to certain of the
institutional investors who are instead eligible to use the new schedule adopted
herein. The Commission took these actions as a result of the practical and
interpretative difficulties anticipated by certain institutional investors in
complying with the beneficial ownership disclosure requirements scheduled to take
effect on April 30, 1978. The amended rules and schedule and the new short form
schedule represent an effort by the Commission to strike a more appropriate balance
between the burdens imposed on persons who are required to report thereunder and
the need for adequate disclosure of the ownership of equity securities.

EFFECTIVE DATE: Thirty days after publication in the FEDERAL REGISTER.

FOR FURTHER INFORMATION CONTACT: John Granda, Office of Disclosure Policy and
Proceedings, Division of Corporation Finance, Securities and Exchange Commission,
500 North Capitol Street, Washington, D.C. 20549, (202/755-1750).

SUPPLEMENTARY INFORMATION: The Securities and Exchange Commission today announced
the amendment of rules and Schedule 13D [17 CFR 240.13d-101] which were adopted on
February 24, 1977 and scheduled to take effect on April 30, 1978, the adoption of
new Schedule 13G, [17 CFR 240.13d-102] and the rescission of Form 13D-5 [17 CFR
240.13d-102] relating to disclosure by certain beneficial owners of securities
pursuant to Section 13(d) of the Securities Exchange Act of 1934 ["Exchange Act"]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                    Page 2
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

[15 U.S.C. 78a et seq., as amended by Pub. L. No. 94-29 (June 4, 1975) and Pub. L. No. 95-213 (December 19, 1977)]. At the same time, the Commission amended certain of its forms and schedules under the Securities Act of 1933 ["Securities Act"] [15 U.S.C. 77a et seq.] and under the Exchange Act to require issuers to disclose in a more uniform manner the percentage of their securities beneficially owned by certain persons.

In large part the Commission believes that its action is responsive to many of the comments submitted with respect to the institutional investor objections raised in Exchange Act Release No. 34-13900 [42 FR 44964] and the concerns raised by these institutional investors with respect to the availability of the short form acquisition notice, the overlap under rules implementing Section 13(f), practical problems and definitional and interpretative problems. In addition, some of the amendments to the rules and to Schedule 13D proposed in Exchange Act Release No. 34-13292 [42 FR 12355] have been adopted. The Commission has also concurrently published for comment proposed rules to implement newly enacted Section 13(g) of the Exchange Act.

I. Background

*2 As part of the Williams Act Amendments,[FN1] P. L. 90-439, Congress added Section 13(d) to the Exchange Act. Generally, Section 13(d) requires a report by any person (or group of persons) who, as a result of an acquisition, becomes the beneficial owner of more than five percent of certain classes of equity securities of certain issuers. The legislative history of that Section indicates that it was intended to provide information to the public and the affected issuer about rapid accumulations of its equity securities in the hands of persons who would then have the potential to change or influence control of the issuer.[FN2]

In November and December 1974, the Commission conducted a Public Fact-Finding Investigation in the Matter of Beneficial Ownership, Takeovers and Acquisitions by Foreign and Domestic Persons ("Beneficial Ownership Hearings").[FN3] The testimony of witnesses and letters of comment highlighted certain issues regarding reporting of beneficial ownership and the need for rulemaking action by the Commission.

Based on the testimony, exhibits and written comments contained in the record of the Beneficial Ownership Hearings and on its own experience, the Commission published on August 25, 1975, its "Proposals Relating to Disclosure of Beneficial Owners and Holders of Record of Voting Securities" ("1975 Ownership Proposals").[FN4] The proposals recognized the need for more objective standards for the application of the key statutory terms "beneficial owner," "acquisition" and "group". In response to these proposals the Commission received over 225 letters of comment from interested persons.[FN5]

On the basis of the letters of comment and on its own experience, the Commission on February 24, 1977, announced the amendment of the then existing rules and Schedule 13D (the amended Schedule 13D is hereinafter referred to as "old Schedule 13D") and the adoption of new rules (hereinafter referred to as "old rules") and Form 13D-5 relating to disclosure by certain beneficial owners of securities pursuant to Section 13(d) of the Exchange Act.[FN6] The Commission also concurrently published for comment proposed amendments to those rules and Schedule 13D ("proposed amendments").[FN7] All of the rules, forms and schedules which were adopted or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

amended were originally scheduled to become effective on August 31, 1977. However,
as a result of the practical and interpretative issues raised by institutional
investors regarding compliance with the old rules, as well as objections to the
exclusion of insurance companies from the use of the short form acquisition
statement, the Commission deferred their effective date to April 30, 1978.[FN8]

In order to assure that its actions were fully responsive to the public interest,
the Commission invited public comment with respect to the issues raised by the
institutions.[FN9] In response to the Commission's invitation thirty-one commentators
submitted their views with respect to the issues set forth in Exchange Act Release
No. 13900 (42 FR 44964).[FN10] Most of the letters of comment focused on each of the
areas encompassed by the release, viz., the availability of the short form, the
overlap under proposed Rule 13f-1,[FN11] practical problems, and definitional and
interpretative problems. While comment was also specifically invited on the issue
of whether, and how, the definition of beneficial ownership should be revised to
alleviate the institution's problems, few letters addressed it.

*3 An additional development since the old rules were adopted was the enactment of
the Domestic and Foreign Investment Improved Disclosure Act of 1977 [the "Act"]
[Title II of P.L. 95-213]. The Act was signed by the President on December 19, 1977
and became effective on that date. Among other things, it amended Section 13(d)(1)
to specifically authorize the Commission to obtain disclosure of certain matters
which had previously been required to be disclosed under the old rules pursuant to
the Commission's general rulemaking authority. Thus, residence, citizenship and the
nature of the beneficial ownership were added to the list of specifically
enumerated disclosures which may be required by the Commission. The Act also
authorizes the Commission to require disclosure of the background, identity,
residence, and citizenship of each associate of the beneficial owner.

The Act also adds a new Section 13(g) to the Exchange Act which requires any person
who owns more than five percent of a class of securities described in Section
13(d)(1) of the Exchange Act to disclose to the Commission and to the issuer of the
security in such form and at such times as the Commission by rule may specify: the
person's identity, residence, citizenship, the number and description of the shares
in which such person has an interest and the nature of such interest. Although
Section 13(g)(1) would require disclosure of the information prescribed regardless
of whether the person was required to report similar information under other
sections of the Exchange Act, Section 13(g)(5) directs the Commission to take such
steps as are necessary and appropriate in the public interest and for the
protection of investors to achieve centralized reporting of the information, to
avoid unnecessarily duplicative reporting, and to minimize the compliance burden on
persons required to report. The principal effect of Section 13(g), therefore, is to
provide the authority necessary to close certain gaps in the disclosure
requirements under Section 13(d).[FN12] The principal classes of persons who are
currently not required to report are those who acquired their securities prior to
December 22, 1970 and those who acquire not more than two percent of a class of
securities within a twelve month period.

The Commission has today also published for comment rules under Section 13(g) which
would, inter alia, require these persons to disclose the information called for by
the abbreviated acquisition schedule adopted herein. A more comprehensive system
for disclosure of ownership interests would thereby be created in accordance with

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925, Release No. 14692, Release No. 33-5925, Release No.        Page 4
34-14692, Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

Congress' intent in enacting Section 13(g).[FN13]

II. Synopsis Of Adopted And Amended Rules and Forms
This synopsis is included in order to assist all interested persons in their
understanding of and compliance with the filing and disclosure provisions of the
rules and schedules adopted and amended herein. However, attention is directed to
the actual text of the rules and schedules for a more complete understanding.

A. Provisions Relating to Obligations of Beneficial Owners

(1) Rule 13d-1: Filing of Schedules 13D and 13G.
*4 The essential requirements of old Rules 13d-1 [17 CFR 240.13d-1] and 13d-5 [17
CFR 240.13d-5] have been included in new Rule 13d-1 so that a person may look to a
single rule to determine whether he has a reporting obligation and if so, how that
obligation may be satisfied. This is an initial step in the adoption of an
integrated ownership reporting system to be denominated as Regulation 13D-G. As
indicated in Exchange Act Release No. (FR), when rules have been adopted to
implement Section 13(g), the filing requirements under that Section would appear as
paragraph (c) of Rule 13d-1 with the remaining provisions of Rule 13d-1 being re-
designated accordingly.

(a) Rule 13d-1(a): Filing of Schedule 13D
Rule 13d-1(a) has not been changed substantively from the revision adopted in
Exchange Act Release No. 34-13291 (42 FR 12342). However, the provisions relating
to the types of equity securities the ownership of which gives rise to a filing
requirement is now in Rule 13d-1(c), rather than in Rule 13d-1(a); and the
provision which permits persons to rely upon the information set forth in the
issuer's most recent quarterly or annual report and current report subsequent
thereto in determining the amount of outstanding shares of a class of equity
securities now appears in Rule 13d-1(d), rather than in Rule 13d-1(a). Further, the
filing fee requirement has been transferred from Rule 13d-1(a) to a separate fee
rule, Rule 13d-7, [17 CFR 240.13d-7] which applies to filings on both Schedules 13D
and 13G. Finally, the number of copies of Schedule 13D which are required to be
filed with the Commission has been reduced from eight to six.

(b) Rule 13d-1(b): Filing of Schedule 13G
New Rule 13d-1(b) and new Schedule 13G correspond to old Rule 13d-5 and former Form
13D-5, respectively. However, certain substantive changes have been made in order
to achieve a more satisfactory balancing of the costs and benefits attendant to the
disclosure elicited thereunder, including revisions of the categories of persons
eligible to use Schedule 13G to include insurance companies, as defined in Section
3(a)(19) of the Exchange Act.

The Commission has not adopted the position taken by the majority of commentators
that reporting under Section 13(f) of the Exchange Act should serve as the
exclusive reporting obligation for institutional investors who disclaim any
intention of investing for purposes of influencing control or management. The
Commission is, however, contemplating a revision of proposed Rule 13f-1 which will
reduce the possibility of duplicative filing requirements.

Proposed Rule 13f-1 was proposed pursuant to Section 13(f) of the Exchange Act. It

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.          Page 5
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

provides that institutional investment managers which exercise investment
discretion over accounts holding over $100,000,000 of equity securities designated
"Section 13(f) securities" must file a proposed Form 13F on a quarterly basis to
report certain information regarding those accounts.  "Section 13(f) securities"
are defined to include all classes of securities described in Section 13(d)(1) of
the Exchange Act that are listed on a national securities exchange or quoted on the
automated quotation system of a registered association (e.g. the NASDAQ system) and
that are contained in the most recent list of Section 13(f) securities proposed to
be published by the Commission.

*5 Proposed Rule 13f-1 also provides that an institutional investment manager shall
be deemed to exercise investment discretion not only when it has the power
described in the definition of that term in Section 3(a)(35) of the Exchange Act
[15 USC 78 (a)(35)], but also when it is deemed to be the beneficial owner of the
securities in the account under Section 13(d). The inclusion of beneficial
ownership within the scope of investment discretion was an attempt to ease the
burden on institutions in that it was thought that they would have to make fewer
determinations in deciding which securities they are "beneficial owner" of for
purposes of Section 13(d) and which they exercise investment discretion with
respect to for purposes of Section 13(f). It appears instead that this created more
problems than it helped solve. The Commission therefore intends to eliminate
beneficial ownership as a reporting trigger under Section 13(f). This should assist
in reducing the reporting overlap under the two sections.

Provision has also been made in Schedule 13G for incorporation by reference of
information contained in whatever form is ultimately adopted under Section 13(f)
for those persons who are required to file under both Sections. Since investment
discretion subsumes investment power and Section 13(f) requires reporting of voting
authority, the Commission believes that incorporation by reference of relevant
information will satisfy the purpose of Section 13(d) while at the same time
avoiding unnecessary duplication.

Beyond provision for incorporation by reference, however, the Commission continues
to believe that the purposes of Section 13(d) could not be effected if Section
13(f) were the exclusive source of filing obligations for institutional investors.
Because of the differences between Section 13(f) and Section 13(d) not all
institutions subject to Section 13(d) would be subject to Section 13(f). For
example, an institution with a portfolio of "Section 13(f) securities" which does
not exceed $100,000,000 would not be subject to Section 13(f), but would be subject
to Section 13(d). Also all securities subject to Section 13(d) would not be subject
to Section 13(f), since the proposal is to include only listed and NASDAQ
securities in reports pursuant to that Section. An additional impediment is that
Section 13(f) provides for the confidentiality of certain information. There are no
such provisions in Section 13(d) and confidentiality might defeat the purposes of
that Section.

Congressional recognition of the importance of disclosing to the public the
location of rapidly accumulated blocks of stock, even though they have been
acquired not with the purpose or with the effect of changing or influencing
control, is expressed in Section 13(d)(5) of the Exchange Act. That this is a
realistic need has recently been underscored by the pivotal role played by
investment managers holding large blocks of stock in surprise tender offers.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                    Page 6
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

In addition, Section 13(g) and its legislative history reveal a clear Congressional intent to achieve a comprehensive disclosure system of corporate ownership. For the same reasons discussed in comparing the differences between Sections 13(d) and 13(f), not all institutions subject to 13(g) would be subject to 13(f). Reporting under Section 13(f) therefore cannot be made the exclusive reporting obligation for institutions if the purpose of Section 13(g) is to be realized. Accordingly, since the Commission would have to obtain the information now required pursuant to Section 13(d)(5) under Section 13(g) in any event, the enactment of Section 13(g) has rendered moot the issue of whether obtaining such disclosure under Section 13(d)(5) is within the primary purpose of Section 13(d).

**\*6** The introductory language in old Rule 13d-5 which described the obligation to file thereunder has been revised in new Rule 13d-1(b) in order to avoid repetition and to clarify that persons subject thereto are not required to file under Rule 13d-1(a).

Old Rule 13d-5 would have required a person to file former Form 13D-5 if at any time during the quarter such person acquired, in the ordinary course of business and not for the purpose of changing or influencing control, beneficial ownership of a class of equity security exceeding five percent, regardless of whether his ownership as of the end of the quarter exceeded that amount. This requirement was objected to by institutions on the ground that a costly daily monitoring system would have to be established in order to determine when, if ever, the aggregate amount of securities held in numerous individual accounts exceeded five percent.

The Commission believes that the utility of ownership disclosure where the acquisition is in the ordinary course of business and there is no purpose or effect of changing or influencing control does not warrant expenditures of the magnitude said to be necessary for the operation of a daily tracking system. Accordingly, the first provision in new Rule 13d-1(b) has been added to make clear that the obligation to file a Schedule 13G under this provision need be determined only on the last day of the calendar year. New provisions which may require more frequent reporting on Schedule 13G if larger amounts of securities are acquired are discussed below. Nonetheless, it should be understood that any acquisition during the year which was not in the ordinary course of business, or was for the purpose or effect of influencing or changing control would be subject to disclosure in a Schedule 13D.

Except as described later, new Schedule 13G is to be filed annually whereas former Form 13D-5 was required to be filed quarterly. This change represents an effort to reduce the reporting burden on institutions required to file Schedule 13G.

Old Rule 13d-5(a) required that former Form 13D-5 be filed within ten days after the end of the calendar quarter in which a person became obligated to report under Section 13(d)(1). This requirement was criticized on the ground that ten days was too short a time to collect the information necessary to prepare a Form 13D-5. Reasons such as added expense, the need for management review and analysis of the data, the slowness of the mails, and the press of other regulatory reporting requirements at the end of the quarter were all cited as bases for extending the filing period.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925, Release No. 14692, Release No. 33-5925, Release No.                    Page 7
34-14692, Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

In view of these difficulties, the Commission believes that except when the
reporting person is subject to Rule 13d-1(b)(3), extension of the filing period is
consistent with the objectives of Section 13(d)(5). Accordingly, filing Schedule
13G to disclose a beneficial ownership interest of more than five but not more than
ten percent will be required forty-five days after the end of the calendar year.

**\*7** The forepart of the Rule has also been revised to conform certain procedural
aspects to Rule 13d-(1)(a). Thus, the number of copies of the statement filed under
Rule 13d-1(b) is reduced from eight to six. The filing fee requirement has been
removed from the rule and placed in new Rule 13d-7, which sets forth a revised fee
structure.

Rule 13d-1(b)(1)(i) is unchanged from the comparable provision in old Rule 13d-
5(a). Thus, Schedule 13G may be used by a specified institutional person only when
such person is acquiring and holding securities in the ordinary course of business,
and not with the purpose or with the effect of changing or influencing control of
the issuer, or in connection with or as a participant in any transaction having
such purpose or effect.

The Commission has determined not to adopt a proposal would have caused former Form
13D-5 to be unavailable if any of the securities being reported on were purchased
at the direction of another person. This amendment was intended to assure further
that such securities were acquired in the ordinary course of business and not with
the purpose or effect of changing or influencing the control of the issuer.

The commentators were opposed to the proposal because they believed that all the
persons who were permitted to use former Form 13D-5, other than investment
advisers, at some point would be purchasing securities at the direction of another
person. It was also noted that purchases at another's direction are in the ordinary
course of business of bank trust departments and mutual funds, but in these
situations no intent to control is necessary. They also observed that the
requirement is unnecessary since the person directing the purchase would have an
independent obligation to file Schedule 13D.

The use of new Schedule 13G as adopted herein is expressly limited to the persons
specified in subparagraph (ii) of new Rule 13d-1(b)(1). With certain significant
exceptions, the persons listed are the same as those in old Rule 13d-5(a)(2). Thus,
certain brokers, dealers, banks, investment companies, investment advisers,
employee benefit plans, pension funds, parent holding companies, and groups
continue to be eligible to use Schedule 13G. Old Rule 13d-5(a)(2), however, did not
permit insurance companies to use old Form 13D-5, and as a result three rulemaking
petitions, pursuant to the Commission's Rules of Practice [17 CFR 201.4], were
filed seeking to have the Commission amend Rule 13d-5 to permit insurance companies
to use the short form. Comment was specifically invited as to whether insurance
companies generally, or life insurance companies or property and casualty insurance
companies specifically, should qualify for inclusion in Rule 13d-5 as a class of
beneficial owners entitled to use Form 13D-5 in lieu of Schedule 13D.

The commentators favored the use of Form 13D-5 by insurance companies. In their
view, an adequate basis does not exist for distinguishing insurance companies from

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                     Page 8
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

the other institutional investors who would be permitted to use Form 13D-5. In this regard, it was argued that most insurance companies are subject to uniform state regulation which is comparable to or, in the case of life insurance companies, more stringent than the regulation to which the other eligible institutional investors are subject. Certain commentators also maintained that insurance company investment decisions are essentially similar to those made by other institutional investors. The relevance of the adequacy of state regulation as a substitute for the protection to investors afforded by disclosure under Section 13(d) was also questioned on the ground that the sole concern should be whether the public interest will be satisfied and investors protected if Form 13D-5 rather than Schedule 13D is filed by insurance companies. In addition, they contended that there has been an inadequate showing of any relationships between insurance companies as a group and violations of the Williams Act. Further, they argued, the availability of short form is necessary to avoid costly and duplicative reporting requirements for insurers.

**8** In light of these comments the Commission believes that a sufficient basis exists to permit insurance companies to use Schedule 13G. During this period the reporting and disclosure practices under the Williams Act of insurance companies as well as others entitled to use the short form will be carefully monitored for the purpose of determining whether investor protection would be better served by limiting them to the use of Schedule 13D.

Under old Rule 13d-5(a)(2)(v) any pension fund was eligible to use old Form 13D-5. The Commission has, however, determined that only those pension plans which are subject to the provisions of the Employment Retirement Income Security Act of 1974 ("ERISA") are governed by uniform regulatory controls which are adequate to permit them to file Schedule 13G.

Under old Rule 13d-5(a)(2)(vi) a parent holding company could only use Form 13D-5 to report the indirect acquisition of the beneficial ownership of securities from subsidiaries which were specified in Rule 13d-5 (a)(2). This requirement was criticized because the attribution to a parent of beneficial ownership of securities from a subsidiary which was not so specified precluded the parent from using the short form. Thus, a bank holding company with several bank subsidiaries and a single finance company would have been denied the use of the short form if the finance company owned a single share of the subject Section 13(d) security.

However, the complete elimination of the qualification of the parent's subsidiaries as a condition to the use of Schedule 13G would effectively make the short form available to anyone who chooses to erect a holding company structure. While such a result is obviously unsatisfactory, the Commission is mindful that the denial of the use of the short form because of the attribution of ownership of even a de minimis amount of securities may work an unduly harsh result. The comments indicate that this would be particularly likely if bank holding companies were not permitted to use the short form because of attribution from ineligible subsidiaries in view of the fact that, at least for the largest banks, substantially less than 1% of the securities deemed to be owned by each bank holding company is held by such subsidiaries. The statutory and regulatory limitations on the bank holding company activities were also pointed to as indicating that there is no purpose to be served by requiring that all subsidiaries be qualified for a bank holding company to file a short form.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The Commission believes that the addition of a de minimis proviso with respect to the attribution of ownership from non-qualifying subsidiaries will strike an appropriate balance between the applicable burdens and the benefits of limiting the use of the short form within the intendment of Section 13(d)(5). Accordingly, under Rule 13d-1(b)(1)(ii)(G) the attribution of not more than one percent of a class of securities from a non-qualifying subsidiary will not preclude the parent from utilizing the short form if the information called for by Schedule 13D is furnished in the parent's Schedule 13G with respect to the securities of such subsidiary.

**\*9** As adopted, old Rule 13d-5 limited the use of former Form 13d-5 to domestic persons. A proposed amendment to the rule would have made Form 13D-5 available to foreign entities who otherwise qualified, provided that they agreed to made available to the Commission in the United States the same information they would be required to furnish in responding to the disclosure requirements of Schedule 13D. The Commission has determined not to adopt this amendment in view of the substantial enforcement difficulties encountered in seeking to assure compliance by foreign persons with the provisions of Section 13(d). Nonetheless, the Commission will entertain applications for exemptive orders submitted by foreign institutional investors to enable them to report their beneficial ownership on Schedule 13D, when the acquisitions are in the ordinary course of business and not with the purpose nor with the effect of changing or influencing the control of the issuer, nor in connection with or as a participant in any transaction having such purpose or effect. In this context, the Commission may consider what further conditions would be appropriate in connection with the granting of any such applications.

Old Rule 13d-5(a)(2)(vii) permitted a group, as that term is defined by Section 13(d)(3) of the Exchange Act, to use former Form 13D-5 if all the members of the group were persons specified in Rule 13d-5(a)(2) and the securities were acquired in a transaction exempt from registration under the Securities Act of 1933 pursuant to section 4(2) thereof. Institutional private placements were singled out for reporting by groups on old Form 13D-5 because the Commission believed that they represented a frequent type of acquisition in which concerted action among the purchasers took place in the ordinary course of business and not with the purpose or with the effect of changing or influencing the control of the issuer. The significance attached to compliance with section 4(2) of the Securities Act was that it helped to insure that the acquisition was a typical institutional private placement.

The commentators, however, maintained that there are situations other than institutional private placements in which a group acquires a security in the ordinary course of the members' business and not with the effect of changing or influencing control. It was also argued that qualification of a non-public offering under Section 4(2) of the Securities Act depends primarily on the actions of the issuer rather than of the purchasers and is therefore an inappropriate condition to the use by groups of what is now Schedule 13G.

Although the Commission believes that situations, other than the private placement of securities directly from the issuer, in which Schedule 13G may be appropriately used by groups are probably quite limited, the Commission does not wish to unduly restrict the Rule's flexibility so long as all of its conditions are met. Moreover,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

by not prescribing the specific types of group acquisitions which qualify for the
use of Schedule 13G, it will also be available for novel, albeit legitimate,
arrangements which are not now in the record before the Commission. Accordingly,
compliance with section 4(2) of the Securities Act has therefore been eliminated
from Rule 13d-1(b)(1)(ii)(H) as a condition to the use of Schedule 13(g) by groups.

**\*10** Except for minor editorial changes, Rule 13d-1(b)(1)(iii) is identical to old
Rule 13d-5(a)(3). It requires that in order to use Schedule 13G the reporting
person must have promptly notified any discretionary account owner, on whose behalf
it holds securities which amount to more than five percent of the class, of any
acquisition or transaction which might subject such person to the reporting
requirements of Section 13(d). It is contemplated that such account owners would be
notified of information known to the reporting person which would reasonably inform
such account owner of his ownership and a possible obligation to report under
Section 13(d). The Commission continues to believe that this provision is necessary
since such person may be the beneficial owner of securities held in the account,
pursuant to Rule 13d-3(d)(1), if such person has the power to revoke the authority
at any time.

A new provision, Rule 13d-1(b)(2), has been added to specify further reporting
obligations applicable to persons otherwise eligible to use Schedule 13G, but who
beneficially own more than 10 percent of the specified class of securities as of
the last day of a month. This provision, which is adopted in lieu of a similar
proposal contained in Release No. 34-13292 [42 FR 12355], requires a filing on
Schedule 13G within ten days after the end of the first month in which such
person's direct or indirect beneficial ownership exceeds ten percent of the class,
computed as of the last day of the month, and thereafter within ten days after the
end of any month in which such person's beneficial ownership of securities of the
class, computed as of the last day of the month, increases or decreases by more
than five percent. Although the reports imposed by Rule 13d-1(b)(2) are in addition
to those otherwise imposed by Rules 13d-1(b) and 13d-2(b), a report filed for the
month of December and containing all the required information as of December 31,
would satisfy the reporting person's obligation as of such date.

New provisions have also been added to the rules and address the situations in
which a person reporting on a Schedule 13G ceases to be eligible to so report, due
to the fact that such person concludes that he no longer has acquired or holds the
securities in the ordinary course of business or not with the purpose or effect of
changing or influencing control, or due to the fact that the owner ceases to be
among those listed persons eligible to use the short form. In the first situation,
and assuming that the person then is still the beneficial owner of more than five
percent of the specified class, the reporting person will be required pursuant to
Rule 13d-1(b)(3) promptly, but not more than ten days after his change of intent,
to file a report on Schedule 13D. Moreover, a provision is adopted stating that for
the ten day period immediately following the date of filing of a Schedule 13D
pursuant to this provision, the beneficial owner shall not vote or direct the
voting of the subject securities, nor to acquire an additional beneficial ownership
interest in any equity securities of the issuer or of any person controlling such
issuer. The Commission has determined that this provision is necessary and
appropriate when the beneficial owner of a block of securities disclosed or to be
disclosed on the short form determines he no longer has acquired or holds the
securities in the ordinary course of business or that he will use such block for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                    Page 11
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

control purposes. The obligation to report under this provision would arise, among
other situations, when the owner becomes part of a group.

**11** If a person who has reported beneficial ownership on Schedule 13G ceases to be
a person listed among those eligible to use the short form, Rule 13d-1(b)(4) states
that he shall immediately become subject to those provisions which specify the
obligation to file and amend on Schedule 13D, provided the person at that time is
the beneficial owner of more than five percent of the class of equity securities.

A proposed amendment to old Rule 13d-5(a)(1) would have created a presumption that
the acquisition of 10 percent or more of a class of an issuer's equity securities
by the reporting person would not be deemed to have been in the ordinary course of
business. The presumption would have precluded use of former Form 13D-5 when an
acquisition caused the reporting person to exceed the 10 percent amount and would
have required the reporting person immediately to file on Schedule 13D, pursuant to
old Rule 13d-5(c).

The commentators were critical of this proposal because they believed that it would
accomplish nothing but the prevention of the use of the form by many of those who
were legitimately entitled thereto. In their view, the condition that the
acquisition must be in the ordinary course of business and not with the purpose or
with the effect of changing or influencing control should be sufficient to satisfy
the objective of the proposal.

While this proposal would undoubtedly assist in the enforcement of Section 13(d)
violations, the Commission believes the obligation to report on Schedule 13D may be
unduly burdensome in these instances. On balance, therefore, the Commission has
decided to adopt the provisions of Rule 13d-1(b)(3) described above, and to
accelerate the time of filing a short form report, rather than require a report on
the long form. This provision, as well as the entire short form reporting scheme,
will, however, be closely monitored by the Commission to determine whether they
carry out the legislative purpose of Section 13(d). Should it subsequently become
apparent that there is a pattern of acquisitions in amounts slightly less than the
ten percent ceiling to evade the reporting provisions, the Commission will
reconsider the rule.

(c) Rule 13d-1(c): Definition of "equity security".
A provision has been added to the definition of the term "equity security" used in
Regulation 13D to narrow the scope of that term. Under the amended definition,
certain securities which do not have voting rights have been excluded; these
include non-voting options, warrants, rights convertible debt or convertible
preferred securities. As a result, beneficial ownership of securities of such
classes would not, in and of itself, generate an obligation to file reports under
Sections 13(d) or 13(g). However, securities which might be acquired upon the
exercise or conversion of such securities are not removed from the definition of
the term "equity security" and would be includable in the calculation of the five
percent threshold.

(d) Rule 13d-1: Determination of amount of outstanding securities.
**12** This provision in substance is unchanged from that adopted in Release No. 34-
13291.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                    Page 12
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

(e) Rule 13d-1(e): Joint filings.
Old Rule 13d-1(b), the predecessor to new Rule 13d-1(e), permitted one acquisition
statement to be filed when there is more than one beneficial owner of the same
securities only if the statement were being filed on Schedule 13D. The commentators
argued that former Form 13D-5 should also be made available for joint filings. They
were of the view that this would avoid unnecessary duplicative reporting, minimize
the compliance burden, reduce costs, and present information in a format which
would be more useful for both the filing parties and for the reader. For these
reasons, the Commission has determined to permit joint filings on both Schedule 13D
and Schedule 13G. Because Schedule 13G is available only to specified classes of
persons, another condition to the joint use of the Schedule has been added in order
to maintain the integrity of that limitation. Persons seeking to jointly file a
Schedule 13G must therefore be individually eligible to use Schedule 13G if they
were filing separately. Thus, if an institutional investor who meets the standards
of Rule 13d-1(b) and an individual investor who does not are beneficial owners of
the same securities and are required to file under Section 13(d) they may not both
utilize Schedule 13G since the individual does not meet the requirements for the
use of that Schedule. They may file a joint Schedule 13D or the individual may file
Schedule 13D and the institutional investor Schedule 13G.

As with former Rule 13d-1(b), new Rule 13d-1(e) is permissive so that each
beneficial owner of the same securities may file a separate acquisition statement.
This is important because each beneficial owner in a multiple beneficial ownership
situation must comply with all of the rules set forth herein and the provisions of
new Rule 13d-1(e) do not relieve such person from this responsibility. When two or
more persons do not report jointly pursuant to Rule 13d-1(b), each such person is
responsible for the timely filing of the statement and any amendments thereto, and
for the completeness and accuracy of the information concerning such person
contained therein. The person is not responsible for the completeness or accuracy
of the information concerning the other persons making the filing, unless such
person knows or has reason to believe that such information is inaccurate. The
joint statement must contain all requisite information about each person and should
include as an exhibit their agreement in writing that the statement is filed on
behalf of each.

(2) Rule 13d-2: Filing of Amendments to Schedules 13D or 13G

(a) Rule 13d-2(a): Filing of Amendments to Schedule 13D.
New Rule 13d-2(a) requires the filing of an amendment to Schedule 13D upon the
occurrence of a material change in the facts set forth in the Schedule 13D. The
rule is the same as old Rule 13d-2 except for two revisions. The Rule now specifies
that a decrease in beneficial ownership to less than five percent of the class is
per se material and must be disclosed by amendment. In addition, the Rule indicates
for the first time that material increases or decreases in the percentage of the
class beneficially owned are to be reported by amendment. While an increase or
decrease in the percentage of the class owned by one percent or more is deemed to
be material, the Rule states acquisitions or dispositions of less than that amount
may also be material depending upon the facts and circumstances of a particular
case. The rule also contains a provision to make clear that an acquisition which is
exempt from Section 13(d) pursuant to the two percent exemption of Section
13(d)(6)(B) need not be reported in an amendment.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*13** Requiring the filing of an amendment upon a material increase or decrease in
the percentage of the class owned represents a reversal of the prior position taken
by the Commission in that previously each acquisition made after the five percent
threshold was exceeded, no matter how small, was viewed as triggering a new filing
requirement under Section 13(d)(1) to be satisfied by the filing of an original
Schedule 13D. While the prior interpretation can be supported by the literal
language of Section 13(d)(1), the Commission believes that the burden of filing a
Schedule 13D is not justified with respect to the acquisition or disposition of an
immaterial amount of stock.

Of course, material changes other than changes in the amount of securities
beneficially owned may also occur and would be required to be disclosed in
amendments.

(b) Rule 13d-2(b): Filing of Amendments to Schedule 13G.
New Rule 13d-2(b) requires the annual filing of amendments to Schedule 13G to
reflect all changes in the information previously reported on that Schedule. Since
the information required by Schedule 13G has been reduced to the minimum necessary
to satisfy the statutory purpose, the Commission believes that except for the
provisions set forth in Rule 13d-1(b)(2), (3) and (4), a materiality standard is
inherent in those requirements. Moreover, the Commission believes that the
compliance burden under Schedule 13G is sufficiently small that it is unnecessary
to further minimize it by the insertion of an express materiality standard.

If no changes have occurred in the information contained in the previous Schedule
13G a signed statement reporting that fact must be filed with the Commission and
sent to the issuer and the principal national securities exchange where the
security is traded. This will permit interested persons to examine the
institutional acquisition statements on Schedule 13G for the previous year for the
purpose of determining their ownership.

(3) Rule 13d-3: Determination of Beneficial Owner
(a) Rule 13d-3(a): Definitions of Beneficial Ownership Rule 13d-3(a) is unchanged
from that adopted in Release No. 34-13291 (42 FR 12342). It provides that a
beneficial owner of a security includes any person who directly or indirectly has
or shares voting power and/or investment power with respect to such security.
Voting power includes "the power to vote, or to direct the voting of such security"
and investment power includes "the power to dispose, or to direct the disposition
of such security."

The Commission is of the view that this broad definition must be retained in order
to obtain disclosure from all those persons who have the ability to change or
influence control. However, the few commentators who addressed the problems
encountered by institutions as a result of the definition were critical of
including the power to dispose as an independent test of beneficial ownership. The
Commission nevertheless continues to believe that the power to dispose, without
more, gives its holder the ability to change or influence control and is therefore
essential to eliciting the type of information within the purview of Section 13(d).
This is attributable to the fact that the power to vote inheres in the security and
may be relocated in the hands of any person to whom the holder of the power to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

dispose wishes to sell. Thus, the holder of the power to dispose potentially has
the ability to bring about the rapid shift in control at which Section 13(d) is
aimed even though he does not have the power to vote or to direct the voting of the
security.

**\*14** The other problems raised by institutions with respect to the definition appear
largely to be alleviated by the simplification of the reporting and disclosure
requirements to which they now would be subject. Nonetheless, some
institutional investor concerns regarding the definition cannot be remedied because to do so
would undermine realization of the purposes of Section 13(d).

(b) Rule 13d-3(b): Evasion of Definition of Beneficial Owner
Rule 13d-3(b) is unchanged from that adopted in Exchange Act Release No. 34-13291
(42 FR 12342). The purpose of the Rule is to ensure that Rule 13d-3(a) is not
circumvented by an arrangement to divest a person of beneficial ownership or to
prevent the vesting of beneficial ownership as part of a plan or scheme to evade
the reporting requirements of Section 13(d).

(c) Rule 13d-3(c): Aggregation of Securities Beneficially Owned
Rule 13d-3(c) is also unchanged from that adopted in Exchange Act Release No. 34-
13291 (42 FR 12342). It provides that all securities beneficially owned by a person
are to be aggregated in determining how many securities such person owns,
regardless of the nature of the beneficial ownership.

The commentators recommended that an exemption be created for persons qualified to
file former Form 13D-5 from the requirements to aggregate securities held by
foreign branches and subsidiaries. They argued that the number of securities held
in foreign branches and subsidiaries is so small relative to the total holdings of
most institutions that the reportedly significant additional cost of establishing
and operating a system to track those securities would not be justified. Such a
reduction in the reporting burden on institutions eligible to file Form 13D-5 was
thought to be consistent with the purposes of Section 13(d) because they cannot, by
definition, be exercising control. The commentators also maintained that the
applicability of bank and investment account records presents a serious risk of
liability to reporting institutions if they make the disclosures contemplated by
the rules.

The Commission continues to believe that complete aggregation is essential to the
determination of the potential to affect control with which any given individual is
vested. The presentation of ownership information which has been developed without
complete aggregation would not truly reflect that potential. The Commission is
mindful of the burden imposed on institutional investors as a result of this
requirement, however, the one percent provision adopted in Rule 13d-1(b)(ii)(G)
should afford a measure of relief from many of the objections. Rather than distort
the information which is obtained, the Commission has chosen to reduce the overall
burden of reporting in order to more appropriately balance the costs and benefits
attendant to reporting under the rules.

The recent amendments to Section 13(d)(1) to require disclosure of the citizenship
of the beneficial owner of securities and his associates evince a Congressional
intent to obtain information about foreign ownership of U.S. corporations. It would

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                    Page 15
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

be inconsistent with these amendments for the Commission to create an exemption
from the aggregation requirements for securities beneficially owned by foreign
branches and subsidiaries because of concern over the application of foreign
secrecy laws.

(d) Rule 13d-3(d): Persons Who Are Deemed Beneficial Owners
**15** New Rule 13d-3(d)(1)(i) deems a person to be the beneficial owner of a security
if he has the right to acquire beneficial ownership of such security, at any time
within sixty days, through: (a) the exercise of an option, warrant or right, (b)
the conversion of a convertible security, (c) the power to revoke a trust,
discretionary account or similar arrangement, or (d) the automatic termination of a
trust, discretionary account or similar arrangement; provided, however, that if the
acquisition of a security or power described in (a), (b) or (c) is for control
purposes, the holder of the security or power immediately upon such acquisition
shall be deemed the beneficial owner of the underlying securities. The Rule is the
same as old Rule 13d-3(d)(1) except that the proviso has been added to (a), (b) and
(c), and the provision of (d) concerning automatic termination has been added. The
latter action reflects the proposed amendment to old Rule 13d-3(d)(1) but utilizes
the same sixty day time period applicable to the other instruments giving one the
right to acquire securities. The proposal would have reached automatic terminations
of trusts, discretionary accounts or similar arrangements within a specified period
of time from one to five years.

The same reasons which influenced the Commission in deciding to utilize a sixty day
time period for the automatic termination provision were also decisive in its
determination not to adopt the proposed amendment which would have deleted the
sixty day time period from the predecessor of Rule 13d-3(d)(1)(i). Under that
proposal a person would be deemed a beneficial owner of securities with respect to
which he has the right to acquire at any time. The commentators criticized this
proposal on the ground that it would escalate substantially the cost of compliance
and the possibility of inadvertent non-compliance. The Commission is also mindful
that as the point in time in which the right to acquire may come to fruition is
extended into the future the relation of the right's ability to influence control
is correspondingly attentuated. When sixty days or less are left until the right to
acquire may be exercised, the Commission believes that the ability of the holder of
such right to effect control is sufficient to warrant the imposition of an
obligation to file under Rule 13d-1. Nonetheless, it is recognized that the
acquisition of options or convertible securities, or the acquisition of a power to
revoke a trust or similar arrangement offers a distinct possibility for actions
which are for the purpose or with the effect of changing or influencing control as,
for example, in obtaining an interest in a block of securities large enough to
influence control, or in coupling an option with an agreement concerning the
composition of the board of directors. In such instances, the rule as adopted does
not afford the holder the benefit of the sixty-day provision.

The Commission has determined not to adopt the suggestion made by certain
commentators that persons qualified to file former Form 13D-5 be exempted from what
is now Rule 13d-3(d)(1)(i). The commentators favored such an exemption primarily
because of the substantial costs which they estimate would be incurred in designing
and operating a system to monitor the various investment vehicles which represent
the right to acquire an equity security. In their view, the burdens associated with
disclosure of these contingent interests, in the context of acquisitions which are

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not made with the purpose or with the effect of changing or influencing control, outweigh attendant benefits to the public from such disclosure. As explained above in connection with the recommendation for an exemption from the aggregation requirement for securities held by foreign branches and subsidiaries of institutions eligible to use old Form 13D-5, the Commission has chosen to reduce the overall reporting burden imposed on qualifying institutions rather than to sacrifice the accuracy and completeness of the information which is obtained.

**\*16** New Rule 13d-3(d)(I)(ii) has been added in response to an interpretative question which has arisen under the old rules with respect to the obligation to report separately for options, warrants, rights or convertible securities and the underlying securities. For example, inquiries have been received as to whether the obligation to file pursuant to Section 13(d) with convertible securities which are registered under Section 12 of the Exchange Act is to be determined based on the percentage of the class of convertible securities beneficially owned or the beneficial ownership of the securities into which they may be converted. This may be important because the amount of convertible securities outstanding may be much smaller than the securities into which they may be converted and therefore increase the likelihood that the percentage of a class beneficially owned will exceed the five percent threshold. Rule 13d-3(d)(I)(ii) indicates that in such a situation a reporting obligation may exist simultaneously with respect to both the convertible security and, by virtue of Rule 13d-3(d)(I)(i), the security into which it may be converted. Thus, if a person beneficially owns more than five percent of a class of convertible preferred stock upon conversion of which he would also become the beneficial owner of more than five percent of a class of common stock, and both classes are registered under Section 12 of the Exchange Act, he would have the obligation to file a Schedule 13D or Schedule 13G for the preferred stock and for the common stock. It should be noted, however, that an amendment to Rule 13d-1(c), discussed earlier, deletes certain non-voting securities from the definition of "equity security" and consequently should reduce the incidence to these types of questions.

Rule 13d-3(d)(2) is unchanged from that adopted in Exchange Act Release No. 13292. It excludes from the definition of beneficial owner any person whose only interest in the securities is record ownership and membership on a national securities exchange that has rules which permit a member to vote such securities without instruction on certain routine matters.[FN14]

Old Rule 13d-3(d)(3) excluded from the definition of beneficial owner any person whose only interest in the securities is that of a pledgee in the ordinary course of his business pursuant to a bona fide pledgee agreement. However, in the event of a default under such an agreement, the Rule provided that the pledgee would be deemed the beneficial owner if the event of default remained uncured for more than thirty days, or at any time before the default was cured, if the power acquired by the pledgee because of the default enabled him to change or influence issuer control.

The commentators stated that they do not have computer systems capable of providing the information that would have been required under the Rule. Start-up costs to create such a system and the annual operating expense were reported to be substantial. The commentators also argued that the Rule did not comport with the commercial realties of bank pledge situations in that they do not take pledged

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                    Page 17
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

securities for the purpose of exercising investment or voting rights with respect
to such securities. Moreover, they indicated that in the event of default the banks
will most often attempt to work out the problem with the borrower without taking
any action on the pledged securities. Further, they stated that it is extremely
rare that a bank will vote pledged securities.

**\*17** The most common recommendation for the revision of the Rule was that
institutions which qualify for the use of Form 13D-5 should not be required to
classify pledged securities as "beneficially owned" until such time as they
exercise the right to vote the pledged securities. The Commission believes that
this would be a somewhat unsatisfactory basis upon which to impose a reporting
requirement for at that point the change of or influence upon control will have
already occurred. In addition, limiting the requirement to the power to vote
ignores the ability to affect control inherent in the power to dispose of
securities. Nevertheless, the Commission is of the view that if institutions which
are eligible to file Schedule 13G and which meet certain other conditions are not
deemed to be the beneficial owners until such time as they formally declare a
default and decide that the power to vote or dispose will be exercised, disclosure
will in most instances be elicited at a point sufficiently far in advance of those
acts to be of value to investors. Thus, new Rule 13d-3(d)(3) provides that persons
qualified to file Schedule 13G who become pledgees of securities in the ordinary
course of their business pursuant to certain bona fide pledge agreements, which
have not been entered into with the purpose or with the effect of changing or
influencing issuer control, will be deemed not to have acquired beneficial
ownership of such securities upon a default until such time as the pledgee
determines that the power to vote or dispose of the pledged securities will be
exercised. However, the Rule conditions its availability on the absence of a
provision in the pledge agreements that gives the pledgee the power to vote or to
dispose of the pledged securities prior to default. In that situation, the
definition of beneficial owner in Rule 13d-3(a) would determine when the pledgee
became a beneficial owner.

The Rule no longer specifically excludes from the definition of beneficial owner
any person whose only interest in the securities is that of a pledgee in the
ordinary course of his business. The Commission believes such a provision to be
superfluous since under the definition of beneficial owner in Rule 13d-3(a) a
pledgee of securities who prior to default has neither the power to vote or dispose
would not be considered the beneficial owner of the securities.

Under new Rule 13d-3(d)(4) an underwriter is deemed not to be the beneficial owner
of securities which he acquires as part of a good faith firm commitment
underwriting where it is anticipated that he will, as part of a distribution
registered under the Securities Act, be immediately reselling such securities. By
analogy to the forty-day period specified in Section 4(3) of the Securities Act,
the Rule subjects such underwriter to Section 13(d)(I) if beneficial ownership of
the securities is retained for more than forty days.

Rule 13d-3(d)(4) produces the same effect as former Rule 13d-7(a) which deemed
there to be no "acquisition" in such circumstances during the first forty days the
underwriter beneficially owned the security. The approach of deeming such
underwriters not to be "beneficial owners" until the lapse of the forty-day period
was utilized in lieu of deeming there to be no "acquisition" in anticipation of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                    Page 18
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

adoption of rules implementing Section 13(g). This is necessary because reporting
under Section 13(g) is required by a "beneficial owner" of more than five percent
of a class of equity security whereas under Section 13(d) reporting is required by
a person "acquiring" beneficial ownership of securities exceeding that amount.
Thus, if the exemptive approach taken in Rule 13d-7(a) had been retained,
underwriters would have to report under Section 13(g) upon its implementation, even
if they are within the forty-day provision.

(4) Rule 13d-4: Disclosure of Beneficial Ownership
**18** Rule 13d-4 is unchanged from that adopted in Exchange Act Release No. 34-13291
(42 FR 12342). It permits any person to expressly declare in such person's Schedule
13D or Schedule 13G that the filing of such a statement shall not be construed as
an admission that the person is the beneficial owner of the securities covered by
such statement.

(5) Rule 13d-5: Acquisition of Securities
New Rule 13d-5(a) is the same as old Rule 13d-6(a) except that the note thereto has
been included as a substantive provision of the Rule. The Rule deems certain
persons who become beneficial owners of securities to have "acquired" them for the
purposes of Section 13(d)(I) of the Exchange Act. Donees, executors, trustees and
legatees who become beneficial owners of securities will be deemed to have
"acquired" such securities, even though such persons had not so intended and had
taken no action to become beneficial owners. However, executors and administrators
of the estate of a decedent will be presumed not to have acquired beneficial
ownership until they are qualified under local law to perform their duties.

New Rule 13d-5(b) corresponds to former Rule 13d-6(b). It deems the group formed by
two or more persons who agree to act together for the purpose of acquiring,
holding, voting or disposing of equity securities of an issuer to have acquired,
for the purpose of Sections 13(d) and 13(g), beneficial ownership, as of the date
of their agreement, of all securities beneficially owned by any member of such
group.[FN15]

Rule 13d-5(b) applies only to agreements relating to equity securities whereas
former Rule 13d-6(b) applied to all securities. The commentators criticized the
application of former Rule 13d-6(b) to non-equity securities because it created
filing obligations in situations which they believed to be beyond the purpose of
Section 13(d). Leaving Rule 13d-6(b) as it stood in this respect would have
resulted in the application of Section 13(d)(1) to private placements of straight
debt securities with institutional investors and to certain loan workouts involving
the cooperation of more than one lender. The Commission is also mindful that while
Section 13(d)(3) is not specifically limited to equity securities, Section 13(d) as
a whole relates only to the acquisition of equity securities. Moreover, the
Commission believes that limiting Rule 13d-5(b) to equity securities does not
frustrate the Congressional purpose underlying Section 13(d) since any intention on
the part of purchasers of a debt security to pool their equity securities would
trigger a group filing.

Minor word changes have also been made from the predecessor of Rule 13d-5(b). The
most significant of these is the addition of the word "voting" to the list of
actions to which an agreement must relate in order for the Rule to apply. The

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.          Page 19
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

Commission considered "voting" to be subsumed within the term "holding" but has
decided to make this express to avoid any misunderstanding.

*19 New Rule 13d-5(b)(2) deems there to be no "group" within the meaning of Section
13(d)(3), when securities are privately placed by the issuer with persons who are
eligible to file Schedule 13G and there is no agreement among members of the group
to act together except for the purpose of facilitating the particular transaction.
However, if the purchase is not in the ordinary course of each member's business,
or is with the purpose or the effect of changing or influencing issuer control, or
is there is cooperative activity of a non-ministerial nature among group members
subsequent to the closing date, a group filing obligation would arise.

New Rule 13d-5(b)(2) reflects a suggestion by commentators that an exemption from
the predecessor of the Rule 13d-5(b) be provided for institutional private
placements directly from the issuer. The Commission agrees with the commentators
that such transactions are not within the primary scope of Section 13(d)(3). The
legislative history of that Section reveals that it was intended primarily to
prevent a group of persons seeking to change or influence issuer control from
evading the provisions of Section 13(d) because no one individual owned more than
five percent of a class of securities.[FN16] The cooperative activity characteristic
of an institutional private placement directly from the issuer generally results
from sound business considerations such as cost savings resulting from the use of
common counsel and forms, rather than from a desire to affect control of the
issuer. Moreover, since the cooperative activity generally ends when the
transaction is completed, the information obtained in such a group filing is of
little interest to investors and is available to the issuer.

(6) Rule 13d-6: Exemption of Certain Acquisitions
New Rule 13d-6 is substantially the same as old Rule 13d-7(b). However, paragraph
(b) of the Rule has been revised to address the situation where an issuer is the
sole distributor of the rights, and during the rights offering period, purchases
rights from the security holders to whom such rights were originally issued, and
does not subsequently sell the securities underlying the rights purchased. Under
these circumstances, a person who owned beneficially, prior to the rights offering,
in excess of 5 percent of the underlying security and who exercised his pro rata
portion of the rights offered would inadvertently have acquired more than his pro
rata share of the securities actually sold and, accordingly, would not have been
eligible to use the exemption as previously stated.

(7) Rule 13d-7: Fees for Filing Schedules 13D or 13G.
New Rule 13d-7 establishes a uniform fee schedule for acquisition statements filed
on Schedule 13D and 13G. It provides that the first Schedule which is filed must be
accompanied by a filing fee of $100. All amendments to that Schedule reflecting an
increase in ownership above five percent do not require an additional fee. However,
after an amendment to the Schedule reporting beneficial ownership of less than five
percent has been filed, the first Schedule filed thereafter is treated as a new
filing for fee purposes and must be accompanied by a filing fee of $100.

(8) Schedule 13D: Acquisition Statement Filed Pursuant to Rule 13d-1(a).

(a) Cover Sheet

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                    Page 20
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

**\*20** An instruction has been added to the Cover Sheet of new Schedule 13D to notify
interested persons that the Schedule relates to an acquisition which has been
previously reported on Schedule 13G and that it is now being reported on Schedule
13D, as required by Rule 13d-1(b)(3) or (4), because the beneficial owner is no
longer eligible to file Schedule 13G. The purpose of the instruction is to avoid
confusion which might otherwise arise because of double counting of the same
ownership. Another instruction is added concerning the filing fee.

The note concerning the number of copies to be filed has been revised to require
six copies in order to conform it to new Rule 13d-1(a).

(b) Instructions.
Instructions A and B are unchanged from those adopted in Exchange Act Release No.
34-13291 (42 FR 12342). Although new Instruction C is substantially the same, it
has been revised to conform more closely to Instruction C of Schedule 14D-1 because
the commentators believe that it is easier to understand in that format.

(c) Item 1: Security and Issuer
The only change in new Item 1 is that the address of the issuer to be furnished has
been clarified to be that of their principal executive offices. This is in
conformity with the disclosure required in other Commission filings.

(d) Item 2: Identity and Background
New Item 2 has essentially been conformed to Item 2 of Schedule 14D-1. The
introductory paragraph of Item 2 has been modified to clarify the disclosure
required by Item 2 for natural persons as compared with other entities. If the
person filing the statement or any other person enumerated in Instruction C of the
Schedule is a corporation, partnership, limited partnership, syndicate or other
group of persons certain information is required. This includes: the name; the
state or other place of organization; the principal business; the address of the
principal office, and the information regarding criminal proceedings and civil
actions required by Items 2(d) and (e), respectively. If one or more of these is
inapplicable or if the answer is in the negative, a statement should be made to
that effect pursuant to Instruction A of the Schedule.

Information concerning material occupations and employments during the preceding
five years, formerly required by Item 2(d) of old Schedule 13D, has been deleted in
an effort to reduce the compliance burden. The Commission believes that in the
context of an acquisition covered by the Schedule a statement of the present
principal occupation or employment ordinarily provides adequate disclosure as to
the competence of the persons required to give such information.

New Item 2(e) requires disclosure about civil proceedings involving securities laws
violations at either the federal or state level during the preceding five year
period. The proposed amendment to Item 2 has been followed except that the proposal
has been conformed to Item 2(f) of Schedule 14D-1 by requiring disclosure of
judicial or administrative findings of violations of law rather than of liability.
This was done to provide disclosure of cases in which a violation has been found by
the court or admitted by the party.

(e) Item 3: Source and Amount of Funds or Other Consideration.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*21** New Item 3, concerning disclosure of the source of the funds used or to be used in making the acquisitions, is similar to old Item 3. The reference of consideration used to "to be used" is added to assure that financing arrangements are disclosed. Also with respect to the source of funds, a sentence is added stating that where material, similar source of funds information should be given with respect to prior acquisitions not previously reported pursuant to the regulation. This provision will help assure that filing persons disclose appropriate information when they have engaged in a series of acquisitions.

"Voting" has been added to the list of purposes for which the securities have been purchased in order to make express what the Commission believed to be implicit in the term "holding." A sentence has also been added to provide the option of preserving the confidentiality of the identity of a bank that has made a loan which is a source of funds under the item. The provision was added because many persons were not aware that under Section 13(d)(1)(B) of the Exchange Act they did not have to disclose the name of the bank publicly in such circumstances.

(f) Item 4: Purpose of Transaction
Unlike old Item 4, new Item 4 requires disclosure of plans in the nature of those described in the Item regardless of whether one of the purposes of the purchase is to acquire control of the issuer. New Item 4 effectuates the proposed amendments to old Item 4 but has been conformed more closely to Item 5 of Schedule 14D-1. In this regard, plans or proposals which result in or relate to extraordinary corporate transactions have been made a separate item of disclosure, as in Schedule 14D-1. This is to obviate the possible limitation on disclosure under the Item to only extraordinary corporate transactions as a result of the placement in the proposal of the term "extraordinary corporate transactions" prior to the list of enumerated disclosures. The Item has also been expanded to require disclosure about types of plans of the purchaser not specifically required by old Item 4 or Item 5 of Schedule 14d-1, including plans relating to: the acquisition of additional securities or the disposition of securities; and changes in the governing corporate documents which might be used to deter unfriendly takeovers. In addition, an Item has been added to make express what has been implicit all along-that disclosure of plans relating to actions similar to those specifically prescribed must also be made.

(g) Item 5: Interest in Securities of the Issuer.
Disclosure of the shares beneficially owned has been limited in the new Item 5(a) to the persons named in Item 2 and persons who together with such persons comprise a group. This action has been taken in response to the difficulties raised by the commentators with respect to the disclosure of the ownership of associates of the persons specified in Item 5. For instance, if an outside director happened to be an officer of a bank, the use of the term "associate" in old Item 5(a) would have required disclosure of all shares of the class being reported on as to which the bank and its subsidiaries were beneficial owners, even though the bank was not a member of a group. The Commission believes that, in light of the breadth of the definition of beneficial ownership and Instruction C to the Schedule, the burden of obtaining disclosure of the securities owned by associates is not warranted by the purpose of Section 13(d). It also appears that specifically requiring disclosure of the ownership of majority owned subsidiaries is unnecessary since the definition of beneficial ownership automatically attributes such ownership to a parent who is among those specified in new Item 5(a). By requiring persons who are members of a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

group with the persons named in Item 2 to also disclose the amount of shares which
they beneficially own, new Item 5(a) has the flexibility to elicit ownership
information from persons outside the normal chain of persons specified in Item 2
only where it is necessary to satisfy the purpose of Section 13(d).

**22** A parenthetical clause has been added to 5(a) permitting reliance on the most
recently available filing with the Commission by the issuer in making the
determination of the percentage of the class beneficially owned, unless the filing
person has reason to believe the information in such filing is not current. This
tracks an identical provision in Item 6(a) of Schedule 14D-1.

Item 5(b) has been amended to call for a further breakdown of the shares as to
which a beneficial owner has the power to vote or dispose, by requiring the owner
to indicate whether the powers are sole or shared. The Commission believes that
this will improve disclosure of a person's ability to affect control since the
scope of the ability to direct the voting or disposition of securities is typically
more limited when those powers are shared. The Item also calls for disclosure of
the information required by Item 2 with respect to each person with whom the power
to vote or dispose is shared.

Consistently with the amendments to Item 5(a), new Item 5(c) has been limited to
requiring a description of recent transactions in the securities by the persons
named in Item 5(a). Old Item 5(c) would have also required disclosure of recent
transactions by executive officers, directors or affiliates of any subsidiary of
the persons named in old Item 5(a). Returning to the previous example of the
executive officer of a bank who is an outside director of a company named in Item
5(a), the application of old Item 5(c) would have resulted in the disclosure of
recent transactions in the securities by the bank, as an associate of the director,
and by all the executive officers, directors and affiliates of the bank's
subsidiaries. In retrospect, the Commission believes that disclosure should not be
required of such persons in all instances. If the benefits of disclosures are to
outweigh the burdens of compliance, persons who are remotely related to the
triggering acquisition should only have to disclose the prescribed information when
they have agreed to act with the more central figures to acquire, hold, vote or
dispose of the subject securities. This has been achieved by combining the
utilization of the group concept in Item 5(a) with a reference to the persons named
in that Item in Item 5(c).

New Item 5(d) is limited to the receipt of dividends or the proceeds upon sale
whereas old Item 5(d) applied to all economic interests in the securities. The
Commission has limited the item to the traditional economic interests in a security
in order to facilitate compliance with the Item. Prior to the amendment
considerable uncertainty had been expressed with respect to the scope of the
interests contemplated by the Item.

New Item 5(e) has been added in response to a recommendation by the commentators
for a provision which would permit them to report that their beneficial ownership
had decreased to less than five percent of a class. This was also necessary because
Rule 13d-2(a) now requires the filing of an amendment in that situation.

(h) Item 6: Contracts, Arrangements, Understandings or Relationships With Respect

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.        Page 23
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

to Securities of the Issuer
**23** New Item 6 is essentially unchanged from old item 6, except that the obligation
to disclose contracts, arrangements, understandings or relationships with respect
to securities of the issuer is clarified to include such agreements among the
persons named in Item 2, and between those persons and any other person.

(i) Item 7: Material to be Filed as Exhibits
New Item 7 has been adopted as proposed for comment. The Item requires the filing
as exhibits of any supporting documentation for responses to Items 3, 4 and 6 of
the Schedule. The Item also provides for filing as an exhibit, as required by Rule
13d-1(e), the written agreement of two or more persons required to file an
acquisition statement governing the same securities pursuant to which they agree to
file only one statement.

(9) Schedule 13G: Acquisition Statement Filed Pursuant to Rule 13d-1(b)

(a) Instructions
Instruction A has been added to remind filing persons that Rule 13d-1(b) requires
that Schedule 13G must be filed within 45 days after the end of the calendar year
to which the statement relates, or within the time specified in Rule 13d-1(b)(2),
if applicable. In order to ease the compliance burden Instruction B provides that
when a form is adopted under Section 13(f) information contained therein may be
incorporated by reference in response to any item of Schedule 13G so long as copies
of the relevant pages are filed as exhibits.

(b) Items 1 and 2
Although the subitems 1 and 2 have been rearranged, the only substantive changes
are the addition of new Items 1(b) and 2(c). Item 1(b) requires disclosure of the
address of the issuer's principal executive offices. Item 2(c) requires the filing
person to state his citizenship. This effectuates the Congressional directive in
the recent amendments to Section 13(d)(1) to obtain citizenship disclosure.

(c) Item 3
Item 3 has been expanded to conform to the revised list of persons eligible to file
Schedule 13G, as set forth in Rule 13d-1(b)(1)(ii).

(d) Item 4: Ownership
Old Item 4(a), which required a statement of all increases and decreases in
ownership during the reporting period, has been deleted from Schedule 13G as a
result of the data submitted by the commentators with respect to the cost of
furnishing that information. The Commission believes that the benefits of such
disclosure do not warrant expenditures of the magnitude said to be necessary to
obtain it.

New Item 4(a) requires the amount beneficially owned to be stated as of December 31
of the year to which the statement relates or as of the last day of any month
described in Rule 13d-1(b)(2), if applicable. This is consistent with new Rule 13d-
1(b) and is intended to avoid the necessity of having to create a system to track
ownership between the end of the year and the time the statement may be filed.

New Item 4(c) requires a breakdown of the amount of securities beneficially owned

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925, Release No. 14692, Release No. 33-5925, Release No.                    Page 24
34-14692, Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

into the shares as to which there is sole power to vote, shared power to vote, sole power to dispose and shared power to dispose. This is consistent with new Item 5(b) of Schedule 13D. It also gives effect to the recent amendments to Section 13(d)(1)(A) specifically authorizing the Commission to require disclosure of the nature of the beneficial ownership.

(e) Item 5: Ownership of Five Percent Or Less of a Class
**24** Old Item 5 required the filing person to state the date or dates upon which he commenced and/or ceased to be the beneficial owner of more than five percent of the class of securities. This requirement was criticized by the commentators because it also required the implementation of an expensive tracking system to determine a precise date. New Item 5(c) will not require such a system since it merely requires the filing person to indicate whether the Schedule is being filed for the purpose of reporting that he is no longer the owner of more than five percent of a class of securities.

(f) Item 6: Ownership of More than Five Percent on Behalf of Another Person
New Item 6 is substantially the same as old Item 6 except that the only economic interests in securities to which it is now applicable are the receipt of dividends or the proceeds upon sale. The Commission determined to limit the Item for the reasons discussed in connection with the same amendment of Item 5(d) of Schedule 13D.

(g) Item 7: Identification and Classification of the Subsidiary Which Required the Security Being Reported on By the Parent Holding Company
A provision has been added for filing an exhibit pursuant to Rule 13d-1(b)(1)(ii)(G) which includes Schedule 13D information for a subsidiary who is not qualified to file the Schedule and who owns not more than one percent of the subject security.

(h) Items 8 and 9

Items 8 and 9 are unchanged.

(i) Item 10: Certification
The certification has been made a separate item in anticipation of the filing of Schedule 13G by persons under rules implementing Section 13(g) since only persons filing pursuant to Rule 13d-1(b) would be required to include it.

B. Provisions Relating to Reporting Obligations of Registrants
Item 19 of Form S-1, Item 18 of Form S-11, Item 5 of Form 10, Item 14 of Form 10-K and Item 5(g) of Schedule 14A require, upon the effective date of the amendments contained in this release, a table setting forth, among other things, the total number of shares beneficially owned and the percent of the class so owned for each person who is known by the registrant to be the beneficial owner of more than five percent of any class of the registrant's voting securities. The registrant is also required to identify, to the extent known, the shares listed in the table as to which the beneficial owner has the right to acquire beneficial ownership.

New Instruction 1 to these items requires securities deemed outstanding under new Rule 13d-3(d)(1) to be added to the number of shares actually outstanding for the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                    Page 25
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

purpose of calculating the percentage of the class owned by a person who is deemed
to own securities under that rule. The previous instruction gave the registrant the
option of including securities deemed outstanding in such circumstances so long as
it made appropriate disclosure that it was doing so.

Upon reconsideration, the Commission believes it is inconsistent with the
definition of beneficial ownership, in general, and Rule 13d-3(d)(1), in
particular, to permit the registrant to elect the method of disclosing percentage
ownership. In order to accurately reflect, in percentage terms, the potential which
a given individual has to change or influence issuer control, the shares deemed
outstanding must be increased to the same extent as the shares deemed to
beneficially owned. If the shares deemed to be beneficially owned under Rule 13d-
3(d)(1) are added only to the numerator, the percentage figure obtained thereby
over-represents the ability to affect control. If the shares deemed outstanding
under Rule 13d-3(d)(1) are included neither in the numerator nor in the
denominator, effect is not given to the determination reflected in the Rule that
the right to acquire a security within sixty days or under other specified
conditions makes a person the beneficial owner of the security subject to the
right. Moreover, the old instruction would give rise to the anomalous result
whereby a person would possibly be shown in the affected forms and schedules as
owning a percentage of the class of securities different from the set forth in the
Schedule 13D or Schedule 13G filed by such person. Accordingly, where securities
are deemed to be beneficially owned under new Rule 13d-3(d)(1), the instruction now
requires that both the numerator and the denominator be adjusted correspondingly.
It should be noted, however, that securities are deemed outstanding under new Rule
13d-3(d)(1), and thus under the Instruction, for computing the percentage of the
class owned only for the particular individual who is deemed to own securities
which he has the right to acquire. This is a familiar provision which follows by
analogy the percentage calculation provision in Rule 16a-2 [17 CFR 240.16a-2] under
the Exchange Act.

III. Certain Findings
*25 As required by Section 23(a)(2) of the Exchange Act, the Commission has
specifically considered the impact which the rules and schedules adopted herein
would have on competition. The Commission has found that neither the preparation
and disclosure of ownership information by beneficial owners pursuant to the
Exchange Act nor the preparation and disclosure of ownership information by issuers
pursuant to the Securities Act and the Exchange Act will significantly burden
competition. In any event, the Commission has determined that any possible
resulting competitive burden will be far outweighed by, and is necessary and
appropriate to achieve, the benefits of this information to investors.

In Exchange Act Release No. 34-13900 the Commission specifically invited comments
as to the cost of compliance with the old rules. As explained in the synopsis of
the new rules, a number of revisions have been made to reduce the cost compliance
where it was consistent with the purposes of Section 13(d). The Commission finds
that the costs of the rules adopted herein are not unreasonable and are far
outweighed by the benefits which will accrue to investors.

IV. Operation of Rules Adopted, Effective Date
The effective date of the actions announced herein will be thirty days after the
publication of this release in the FEDERAL REGISTER.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The Commission has concluded that the provisions which had been scheduled to become
effective on April 30, 1978, as specified in Release No. 34-13291 [42 FR 12342] and
Release No. 34-13844 [42 FR 41405], will not become effective on such date, and
instead will be deferred until the effective date of the actions contained herein;
i.e., thirty days following publication in the FEDERAL REGISTER.

Certain amendments which will become effective on the same date of the actions
contained herein involve amendments to the registration statement forms under the
Securities Act, and to registration statement and periodic reporting forms under
the Exchange Act, as well as to the proxy rules under the latter act.

The Commission's staff will not require compliance with those new amended
disclosure provisions with respect to: (1) registration statements under the
Securities Act filed prior to the effective date of these rules, and pre-effective
amendments thereto filed within a reasonable time thereafter (the amended
disclosure provisions will apply to registration statements and post-effective
amendments filed on or after the effective date); and (2) proxy soliciting material
or information statement material, when the preliminary filing of such material was
prior to the effective date.

The amendments will apply to periodic reports filed after the effective date.

Any person who so chooses may rely upon the new rules, schedules and amendments
immediately. No person is relieved from complying with such person's present
statutory obligations under Section 13(d) pending the effective date of these
rules, schedules and amendments.

V. Authority
**26** The Commission hereby amends Rules 13d-1, 13d-2, 13d-3, 13d-5, 13d-6 and 13d-7
and Schedule 13D and adopts Schedule 13G pursuant to the authority set forth in
Sections 3(b), 13(d)(1), 13(d)(2), 13(d)(3), 13(d)(5), 13(d)(6) and 23 of the
Exchange Act; amends Forms 10 and 10-K and Schedule 14A pursuant to the authority
set forth in Sections 12, 13, 14, 15(d) and 23 of the Exchange Act; and amends
Forms S-1 and S-11 pursuant to the authority set forth in Sections 7, 10 and 19(a)
of the Securities Act. The Commission finds that any changes in the amended rules
and schedule and in the schedule adopted from those published in Exchange Act
Release No. 34-13291 (42 FR 12342) have already been generally subject to comment
during the Beneficial Ownership Hearings or as a result of the proposals published
in Exchange Act Release No. 34-11616 (40 FR 42212), the amendments proposed in
Exchange Act Release No. 34-13292 (42 FR 12355), or the issues raised in Exchange
Act Release No. 34-13900 (42 FR 44964) and are either technical in nature or are
less burdensome than previous requirements, so that further notice and rulemaking
procedures pursuant to the Administrative Procedure Act (5 U.S.C. 553) are not
necessary.

Text of Adopted and Amended Rules and Schedules
I. 17 CFR 240.13d-102 Form 13d-5-Short Form acquisition notice pursuant to §
240.13d-5 under the Securities Exchange Act of 1934 is rescinded.

II. 17 CFR Part 240 is amended by revising §240.13d-1 to read as follows:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                      Page 27
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)


REGULATION 13D

§240.13d-1 Filing of Schedules 13D and 13G.

(a) Any person who, after acquiring directly or indirectly the beneficial ownership
of any equity security of a class which is specified in paragraph (c), is directly
or indirectly the beneficial owner of more than five percent of such class shall,
within ten days after such acquisition, send to the issuer of the security at its
principal executive office, by registered or certified mail, and to each exchange
where the security is traded, and file with the Commission, a statement containing
the information required by Schedule 13D [§240.13d-101]. Six copies of the
statement, including all exhibits, shall be filed with the Commission.

(b)(1) A person who would otherwise be obligated under paragraph (a) to file a
statement on Schedule 13D may, in lieu thereof, file with the Commission, within
forty-five days after the end of the calendar year in which such person became so
obligated six copies, including all exhibits, of a short form statement on Schedule
13G and send one copy each of such Schedule to the issuer of the security at its
principal executive office, by registered or certified mail, and to the principal
national securities exchange where the security is traded, provided that it shall
not be necessary to file a Schedule 13G unless the percentage of the class of
equity security specified in paragraph (c) beneficially owned as of the end of the
calendar year is more than five percent, and provided further that:

*27 (i) Such person has acquired such securities in the ordinary course of his
business and not with the purpose nor with the effect of changing or influencing
the control of the issuer, nor in connection with or as a participant in any
transaction having such purpose or effect, including any transaction subject to
Rule 13d-3(b) (§240.13d-3(b)); and

(ii) Such person is:

(A) A broker or dealer registered under section 15 of the Act;

(B) A bank as defined in Section 3(a)(6) of the Act;

(C) An insurance company as defined in Section 3(a)(19) of the Act;

(D) An investment company registered under Section 8 of the Investment Company Act
of 1940;

(E) An investment adviser registered under Section 203 of the Investment Advisers
Act of 1940;

(F) An employee benefit plan, or pension fund which is subject to the provisions of
the Employee Retirement Income Security Act of 1974 ("ERISA") or an endowment fund;

(G) A parent holding company, provided that: [1] the Schedule 13G is being used to
report the indirect acquisition of the beneficial ownership of securities acquired

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

by a subsidiary; and [2] such subsidiary is a person specified in Rule 13d-
1(b)(1)(ii) (§ 240.13d-1 (b)(1)(ii)) except that the inclusion in the reported
holdings of not more than one percent of a class beneficially owned by a subsidiary
that is not so specified will not prevent the use of Schedule 13G, so long as the
information called for by Schedule 13D is furnished in the parent's Schedule 13G
with respect to the securities of such subsidiary;

(H) A group, provided that all the members are persons specified in Rule 13d-
1(b)(1)(ii)(A) through (G); and

(iii) Such person has promptly notified any other person (or group within the
meaning of Section 13(d)(3) of the Act) on whose behalf it holds, on a
discretionary basis, securities exceeding five percent of the class, of any
acquisition or transaction on behalf of such other person which might be reportable
by the person under Section 13(d) of the Act. This paragraph only requires notice
to the account owner of information which the filing person reasonably should be
expected to know and which would advise the account owner of an obligation he may
have to file a statement pursuant to Section 13(d) of the Act or an amendment
thereto.

(2) Any person relying on Rules 13d-1(b)(1) and 13d-2(b) shall, in addition to
filing any statements required thereunder, file a statement on Schedule 13G, within
ten days after the end of the first month in which such person's direct or indirect
beneficial ownership exceeds ten percent of a class of equity securities specified
in Rule 13d-1(c) computed as of the last day of the month, and thereafter within
ten days after the end of any month in which such person's beneficial ownership of
securities of such class, computed as of the last day of the month, increases or
decreases by more than five percent of such class of equity securities. Six copies
of such statement, including all exhibits, shall be filed with the Commission and
one each sent, by registered or certified mail, to the issuer of the security at
its principal executive office and to the principal national securities exchange
where the security is traded. Once an amendment has been filed reflecting
beneficial ownership of five percent or less of the class of securities, no
additional filings are required by this paragraph (b)(2) unless the person
thereafter becomes the beneficial owner of more than ten percent of the class and
is required to file pursuant to this provision.

**\*28** (3)(i) Notwithstanding paragraphs (b)(1) and (2) and Rule 13d-2(b) (§ 240.13d-
2(b)), a person shall immediately become subject to Rules 13d-1(a) and 13d-2(a) and
shall promptly, but not more than 10 days later, file a statement on Schedule 13D
if such person:

(A) Has reported that it is the beneficial owner of more than five percent of a
class of equity securities in a statement on Schedule 13G pursuant to paragraph
(b)(1) or (b)(2), or is required to report such acquisition but has not yet filed
the schedule;

(B) Determines that it no longer has acquired or holds such securities in the
ordinary course of business or not with the purpose nor with the effect of changing
or influencing the control of the issuer, nor in connection with or as a
participant in any transaction having such purpose or effect, including any

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

Page 29

transaction subject to Rule 13d-3(b) (§ 240.13d-3(b)); and

(C) Is at that time the beneficial owner of more than five percent of a class of
equity securities described in Rule 13d-1(c).

(ii) For the ten day period immediately following the date of the filing of a
Schedule 13D pursuant to this paragraph (b)(3), such person shall not: (A) Vote or
direct the voting of the securities described in paragraph (b)(3)(i)(A); nor, (B)
Acquire an additional beneficial ownership interest in any equity securities of the
issuer of such securities, nor of any person controlling such issuer.

(4) Any person who has reported an acquisition of securities in a statement on
Schedule 13G pursuant to paragraph (b)(1) or (b)(2) and thereafter ceases to be a
person specified in paragraph (b)(1)(ii) shall immediately became subject to Rules
13d-1(a) and 13d-2(a) and shall file, within ten days thereafter, a statement on
Schedule 13D, in the event such person is a beneficial owner at that time of more
than five percent of the class of equity securities.

(c) For the purpose of this regulation, the term "equity security" means any equity
security of a class which is registered pursuant to Section 12 of that Act, or any
equity security of any insurance company which would have been required to be so
registered except for the exemption contained in Section 12(g)(2)(G) of the Act, or
any equity security issued by a closed-end investment company registered under the
Investment Company Act of 1940; provided, such term shall not include securities of
a class of non-voting options, warrants, rights, convertible debt or convertible
preferred securities.

(d) For the purposes of Sections 13(d) and 13(g), any person, in determining the
amount of outstanding securities of a class of equity securities, may rely upon
information set forth in the issuer's most recent quarterly or annual report, and
any current report subsequent thereto, filed with the Commission pursuant to this
Act, unless he knows or has reason to believe that the information contained
therein is inaccurate.

(e)(1) Whenever two or more persons are required to file a statement containing the
information required by Schedule 13D or Schedule 13G with respect to the same
securities, only one statement need be filed, provided that:

**29** (i) Each person on whose behalf the statement is filed is individually eligible
to use the Schedule on which the information is filed;

(ii) Each person on whose behalf the statement is filed is responsible for the
timely filing of such statement and any amendments thereto, and for the
completeness and accuracy of the information concerning such person contained
therein; such person is not responsible for the completeness or accuracy of the
information concerning the other persons making the filing, unless such person
knows or has reason to believe that such information is inaccurate; and

(iii) Such statement identifies all such persons, contains the required information
with regard to each such person, indicates that such statement is filed on behalf
of all such persons, and includes, as an exhibit, their agreement in writing that

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.          Page 30
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

such a statement is filed on behalf of each of them.

(2) A group's filing obligation may be satisfied either by a single joint filing or
by each of the group's members making an individual filing. If the group's members
elect to make their own filings, each such filing should identify all members of
the group but the information provided concerning the other persons making the
filing need only reflect information which the filing person knows or has reason to
know.

§240.13d-2 Filing of amendments to Schedules 13D or 13G.

(a) Schedule 13d-If any material change occurs in the facts set forth in the
statement required by Rule 13d-1(a), (§240.13d-1(a)) including, but not limited to,
any material increase or decrease in the percentage of the class beneficially
owned, the person or persons who were required to file such statement shall
promptly file or cause to be filed with the Commission and send or cause to be sent
to the issuer at its principal executive office, by registered or certified mail,
and to each exchange on which the security is traded an amendment disclosing such
change. An acquisition or disposition of beneficial ownership of securities in an
amount equal to one percent or more of the class of securities shall be deemed
"material" for purposes of this rule; acquisitions or dispositions of less than
such amounts may be material, depending upon the facts and circumstances. The
requirement that an amendment be filed with respect to an acquisition which
materially increases the percentage of the class beneficially owned shall not apply
if such acquisition is exempted by Section 13(d)(6)(B) of the Act. Six copies of
each such amendment shall be filed with the Commission.

(b) Schedule 13G-Notwithstanding paragraph (a) of this rule, and provided that the
person or persons filing a statement pursuant to Rule 13d-1(b) continue to meet the
requirements set forth therein, any person who has filed a short form statement on
Schedule 13G shall amend such statement within forty-five days after the end of
each calendar year to reflect, as of the end of the calendar year, any changes in
the information reported in the previous filing on that Schedule, or if there are
no changes from the previous filing, a signed statement to that effect under cover
of Schedule 13G. Six copies of such amendment, including all exhibits, shall be
filed with the Commission and one each sent, by registered or certified mail, to
the issuer of the security at its principal executive office and to the principal
national securities exchange where the security is traded. Once an amendment has
been filed reflecting beneficial ownership of five percent or less of the class of
securities, no additional filings are required unless the person thereafter becomes
the beneficial owner of more than five percent of the class and is required to file
pursuant to Rule 13d-1 (§240.13d-1).

*30 Note: For persons filing a short form statement pursuant to Rule 13d-1(b), see
also Rule 13d-1(b)(2), (3) and (4).

§240.13d-3 Determination of beneficial owner.

(a) For the purposes of Sections 13(d) and 13(g) of the Act a beneficial owner of a
security includes any person who, directly or indirectly, through any contract,
arrangement, understanding, relationship, or otherwise has or shares:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(1) Voting power which includes the power to vote, or to direct the voting of, such
security; and/or,

(2) Investment power which includes the power to dispose, or to direct the
disposition of, such security.

(b) Any person who, directly or indirectly, creates or uses a trust, proxy, power
of attorney, pooling arrangement or any other contract, arrangement, or device with
the purpose or effect of divesting such person of beneficial ownership of a
security or preventing the vesting of such beneficial ownership as part of a plan
or scheme to evade the reporting requirements of Sections 13(d) or 13(g) of the Act
shall be deemed for purposes of such sections to be the beneficial owner of such
security.

(c) All securities of the same class beneficially owned by a person, regardless of
the form which such beneficial ownership takes, shall be aggregated in calculating
the number of shares beneficially owned by such person.

(d) Notwithstanding the provisions of paragraphs (a) and (c) of this rule:

(1)(i) A person shall be deemed to be the beneficial owner of a security, subject
to the provisions of paragraph (b) of this rule, if that person has the right to
acquire beneficial ownership of such security, as defined in Rule 13d-3(a)
(§240.13d-3(a)) within sixty days, including but not limited to any right to
acquire: (A) through the exercise of any option, warrant or right; (B) through the
conversion of a security; (C) pursuant to the power to revoke a trust,
discretionary account, or similar arrangement; or (D) pursuant to the automatic
termination of a trust, discretionary account or similar arrangement; provided,
however, any person who acquires a security or power specified in paragraphs (A),
(B) or (C), above, with the purpose or effect of changing or influencing the
control of the issuer, or in connection with or as a participant in any transaction
having such purpose or effect, immediately upon such acquisition shall be deemed to
be the beneficial owner of the securities which may be acquired through the
exercise or conversion of such security or power. Any securities not outstanding
which are subject to such options, warrants, rights or conversion privileges shall
be deemed to be outstanding for the purpose of computing the percentage of
outstanding securities of the class owned by such person but shall not be deemed to
be outstanding for the purpose of computing the percentage of the class by any
other person.

(ii) Paragraph (i) remains applicable for the purpose of determining the obligation
to file with respect to the underlying security even though the option, warrant,
right or convertible security is of a class of equity security, as defined in Rule
13d-1(c), and may therefore give rise to a separate obligation to file.

**31** (2) A member of a national securities exchange shall not be deemed to be a
beneficial owner of securities held directly or indirectly by it on behalf of
another person solely because such member is the record holder of such securities
and, pursuant to the rules of such exchange, may direct the vote of such
securities, without instruction, on other than contested matters or matters that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                    Page 32
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

may affect substantially the rights or privileges of the holders of the securities
to be voted, but is otherwise precluded by the rules of such exchange from voting
without instruction.

(3) A person who in the ordinary course of his business is a pledgee of securities
under a written pledge agreement as to which there has been a default shall not be
deemed to be the beneficial owner of such pledged securities until the pledgee has
taken all formal steps necessary which are required to declare such default and
determines that the power to vote or to direct the vote or to dispose or to direct
the disposition of such pledged securities will be exercised, provided that:

(i) The pledge agreement is bona fide, does not grant the power to vote or to
direct the vote or to dispose or to direct the disposition of such pledged
securities to the pledgee prior to default, and was not entered into with the
purpose nor with the effect of changing or influencing the control of the issuer,
nor in connection with any transaction having such purpose or effect, including any
transaction subject to Rule 13d-3(b); and

(ii) The pledgee is a person specified in Rule 13d-1(b)(1)(ii).

(4) A person engaged in business as an underwriter of securities who acquires
securities through his participation in good faith in a firm commitment
underwriting registered under the Securities Act of 1933 shall not be deemed to be
the beneficial owner of such securities until the expiration of forty days after
the date of such acquisition.

§240.13d-4 Disclaimer of beneficial ownership.

Any person may expressly declare in any statement filed that the filing of such
statement shall not be construed as an admission that such person is, for the
purposes of Sections 13(d) or 13(g) of the Act, the beneficial owner of any
securities covered by the statement.

§240.13d-5 Acquisition of securities.

(a) A person who becomes a beneficial owner of securities shall be deemed to have
acquired such securities for purposes of Section 13(d)(1) of the Act, whether such
acquisition was through purchase or otherwise. However, executors or administrators
of a decedent's estate generally will be presumed not to have acquired beneficial
ownership of the securities in the decedent's estate until such time as such
executors or administrators are qualified under local law to perform their duties.

(b)(1) When two or more persons agree to act together for the purpose of acquiring,
holding, voting or disposing of equity securities of an issuer, the group formed
thereby shall be deemed to have acquired beneficial ownership, for purposes of
Sections 13(d) and 13(g) of the Act, as of the date of such agreement, of all
equity securities of that issuer beneficially owned by any such persons.

*32 (2) Notwithstanding the previous paragraph, a group shall be deemed not to have
acquired any equity securities beneficially owned by the other members of the group

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                    Page 33
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

solely by virtue of their concerted actions relating to the purchase of equity
securities directly from an issuer in a transaction not involving a public
offering, provided that:

(i) All the members of the group are persons specified in Rule 13d-1(b)(1)(ii);

(ii) The purchase is in the ordinary course of each member's business and not with
the purpose nor with the effect of changing or influencing control of the issuer,
nor in connection with or as a participant in any transaction having such purpose
or effect, including any transaction subject to Rule 13d-3(b);

(iii) There is no agreement among, or between any members of the group to act
together with respect to the issuer or its securities except for the purpose of
facilitating the specific purchase involved; and

(iv) The only actions among or between any members of the group with respect to the
issuer or its securities subsequent to the closing date of the non-public offering
are those which are necessary to conclude ministerial matters directly related to
the completion of the offer or sale of the securities.

§240.13d-6 Exemption of certain acquisitions.

The acquisition of securities of an issuer by a person who, prior to such
acquisition, was a beneficial owner of more than five percent of the outstanding
securities of the same class as those acquired shall be exempt from section 13(d)
of the Act, provided that:

(a) The acquisition is made pursuant to preemptive subscription rights in an
offering made to all holders of securities of the class to which the preemptive
subscription rights pertain;

(b) Such person does not acquire additional securities except through the exercise
of his pro rata share of the preemptive subscription rights; and

(c) The acquisition is duly reported, if required, pursuant to section 16(a) of the
Act and the rules and regulations thereunder.

§240.13d-7 Fees for filing Schedules 13D or 13G.

The initial Schedule 13D or 13G filed by a person shall be accompanied by a fee of
$100 payable to the Commission, no part of which shall be refunded. No fees shall
be required with respect to the filing of any amended Schedule 13D or 13G;
provided, however, that once an amendment has been filed reflecting beneficial
ownership of less than five percent of such class, an additional fee of $100 shall
be paid with the next filing of that person which reflects ownership of more than
five percent thereof.

§240.13d-101 Schedule 13D-Information to be included in statements filed pursuant
to §240.13d-1(a) and amendments thereto filed pursuant to §240.13d-2(a).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                    Page 34
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

SCHEDULE 13D

Under the Securities Exchange Act of 1934

(Amendment No.____)

_____

**\*33** (Name of Issuer)

_____

(Name of person(s) filing Statement)

_____

(Title of class of securities)

_____

(CUSIP Number)

_____

(Name, address and telephone number of person authorized to receive notices and
communications)

_____

(Date of event which requires filing of this statement)

If the filing person has previously filed a statement on Schedule 13G to report the
acquisition which is the subject of this statement, and is filing this statement
because of Rule 13d-1(b)(3) or (4), check the following: [__]

Check the following box if a fee is being paid with this statement: [__]. (A fee is
not required only if the filing person: (1) has a previous statement on file
reporting beneficial ownership of five percent or more of the class of securities
described in Item 1; and (2) has filed no amendment subsequent thereto reporting
beneficial ownership of less than five percent of such class. See Rule 13d-7.)

Note: Six copies of this statement, including all exhibits, should be filed with
the Commission. See Rule 13d-1(a) for other parties to whom copies are to be sent.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                Page 35
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

Instructions. A. The item number and captions of the items shall be included but
the text of the items is to be omitted. The answers to the items shall be so
prepared as to indicate clearly the coverage of the items without referring to the
text of the items. Answer every item. If an item is inapplicable or the answer is
in the negative, so state.

B. Information contained in exhibits to the statement may be incorporated by
reference in answer or partial answer to any item or sub-item of the statement
unless it would render such answer incomplete, unclear or confusing. Matter
incorporated by reference shall be clearly identified in the reference by page,
paragraph, caption or otherwise. An express statement that the specified matter is
incorporated by reference shall be made at the particular place in the statement
where the information is required.

C. If the statement is filed by a general or limited partnership, syndicate, or
other group, the information called for by Items 2-6, inclusive, shall be given
with respect to (i) each partner of such general partnership; (ii) each partner who
is denominated as a general partner or who functions as a general partner of such
limited partnership; (iii) each member of such syndicate or group; and (iv) each
person controlling such partner or member. If the statement is filed by a
corporation or if a person referred to in (i), (ii), (iii) or (iv) of this
Instruction is a corporation, the information called for by the above mentioned
items shall be given with respect to (a) each executive officer and director of
such corporation; (b) each person controlling such corporation; and (c) each
executive officer and director of any corporation or other person ultimately in
control of such corporation. Executive officer shall mean the president, secretary,
treasurer, and any vice president in charge of a principal business function (such
as sales, administration or finance) and any other person who performs or has the
power to perform similar policy making functions for the corporation.

Item 1. Security and Issuer.
**34** State the title of the class of equity securities to which this statement
relates and the name and address of the principal executive offices of the issuer
of such securities.

Item 2. Identity and Background.
If the person filing this statement or any person enumerated in Instruction C of
this statement is a corporation, general partnership, limited partnership,
syndicate or other group of persons, state its name, the state or other place of
its organization, its principal business, the address of its principal business,
the address of its principal office and the information required by (d) and (e) of
this Item. If the person filing this statement or any person enumerated in
Instruction C is a natural person, provide the information specified in (a) through
(f) of this Item with respect to such person(s).

(a) Name;

(b) Residence or business address;

(c) Present principal occupation or employment and the name, principal business and
address of any corporation or other organization in which such employment is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

conducted;

(d) Whether or not, during the last five years, such person has been convicted in a
criminal proceeding (excluding traffic violations or similar misdemeanors) and, if
so, give the dates, nature of conviction, name and location of court, any penalty
imposed, or other disposition of the case;

(e) Whether or not, during the last five years, such person was a party to a civil
proceeding of a judicial or administrative body of competent jurisdiction and as a
result of such proceeding was or is subject to a judgment, decree or final order
enjoining future violations of, or prohibiting or mandating activities subject to,
federal or state securities laws or finding any violation with respect to such
laws; and, if so, identify and describe such proceedings and summarize the terms of
such judgment, decree or final order; and

(f) Citizenship.

Item 3. Source and Amount of Funds or Other Consideration.
State the source and the amount of funds or other consideration used or to be used
in making the purchases, and if any part of the purchase price is or will be
represented by funds or other consideration borrowed or otherwise obtained for the
purpose of acquiring, holding, trading or voting the securities, a description of
the transaction and the names of the parties thereto. Where material, such
information should also be provided with respect to prior acquisitions not
previously reported pursuant to this regulation. If the source of all or any part
of the funds is a loan made in the ordinary course of business by a bank, as
defined in Section 3(a)(6) of the Act, the name of the bank shall not be made
available to the public if the person at the time of filing the statement so
requests in writing and files such request, naming such bank, with the Secretary of
the Commission. If the securities were acquired other than by purchase, describe
the method of acquisition.

Item 4. Purpose of Transaction.
*35 State the purpose or purposes of the acquisition of securities of the issuer.
Describe any plans or proposals which the reporting persons may have which relate
to or would result in:

(a) The acquisition by any person of additional securities of the issuer, or the
disposition of securities of the issuer;

(b) An extraordinary corporate transaction, such as a merger, reorganization or
liquidation, involving the issuer or any of its subsidiaries;

(c) A sale or transfer of a material amount of assets of the issuer or of any of
its subsidiaries;

(d) Any change in the present board of directors or management of the issuer,
including any plans or proposals to change the number or term of directors or to
fill any existing vacancies on the board;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

Page 37

(e) Any material change in the present capitalization or dividend policy of the issuer;

(f) Any other material change in the issuer's business or corporate structure, including but not limited to, if the issuer is a registered closed-end investment company, any plans or proposals to make any changes in its investment policy for which a vote is required by section 13 of the Investment Company Act of 1940;

(g) Changes in the issuer's charter, bylaws or instruments corresponding thereto or other actions which may impede the acquisition of control of the issuer by any person;

(h) Causing a class of securities of the issuer to be delisted from a national securities exchange or to cease to be authorized to be quoted in an inter-dealer quotation system of a registered national securities association;

(i) A class of equity securities of the issuer becoming eligible for termination of registration pursuant to Section 12(g)(4) of the Act; or

(j) Any action similar to any of those enumerated above.

Item 5. Interest in Securities of the Issuer.
(a) State the aggregate number and percentage of the class of securities identified pursuant to Item 1 (which may be based on the number of securities outstanding as contained in the most recently available filing with the Commission by the issuer unless the filing person has reason to believe such information is not current) beneficially owned (identifying those shares which there is a right to acquire) by each person named in Item 2. The above mentioned information should also be furnished with respect to persons who, together with any of the persons named in Item 2, comprise a group within the meaning of Section 13(d)(3) of the Act;

(b) For each person named in response to paragraph (a), indicate the number of shares as to which there is sole power to vote or to direct the vote, shared power to vote or to direct the vote, sole power to dispose or to direct the disposition. Provide the applicable information required by Item 2 with respect to each person with whom the power to vote or to direct the vote or to dispose or direct the disposition is shared;

(c) Describe any transactions in the class of securities reported on that were effected during the past sixty days or since the most recent filing on Schedule 13D (§240.13d-101), whichever is less, by the persons named in response to paragraph (a).

*36 Instruction. The description of a transaction required by Item 5(c) shall include, but not necessarily be limited to: (1) the identity of the person covered by Item 5(c) who effected the transaction; (2) the date of the transaction; (3) the amount of securities involved; (4) the price per share or unit; and (5) where and how the transaction was effected.

(d) If any other person is known to have the right to receive or the power to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

direct the receipt of dividends from, or the proceeds from the sale of, such
securities, a statement to that effect should be included in response to this time
and, if such interest relates to more than five percent of the class, such person
should be identified. A listing of the shareholders of an investment company
registered under the Investment Company Act of 1940 or the beneficiaries of an
employee benefit plan, pension fund or endowment fund is not required.

(e) If applicable, state the date on which the reporting person ceased to be the
beneficial owner of more than five percent of the class of securities.

Instruction. For computations regarding securities which represent a right to
acquire an underlying security, see Rule 13d-3(d)(1) and the note thereto.

Item 6. Contracts, Arrangements, Understandings or Relationships
With Respect to Securities of the Issuer.

Describe any contracts, arrangements, understandings or relationships (legal or
otherwise) among the persons named in Item 2 and between such persons and any
person with respect to any securities of the issuer, including but not limited to
transfer or voting of any of the securities, finder's fees, joint ventures, loan or
option arrangements, puts or calls, guarantees of profits, division of profits or
loss, or the giving or withholding of proxies, naming the persons with whom such
contracts, arrangements, understandings or relationships have been entered into.
Include such information for any of the securities that are pledged or otherwise
subject to a contingency the occurrence of which would give another person voting
power or investment power over such securities except that disclosure of standard
default and similar provisions contained in loan agreements need not be included.

Item 7. Material to be Filed as Exhibits.
The following shall be filed as exhibits: copies of each written agreement relating
to the filing of joint acquisition statements as required by Rule 13d-1(e)
(§240.13d-1(e)) and copies of all written agreements, contracts, arrangements,
understandings, plans or proposals relating to (1) the borrowing of funds to
finance the acquisition as disclosed in Item 3; (2) the acquisition of issuer
control, liquidation, sale of assets, merger, or change in business or corporate
structure or any other matter as disclosed in Item 4; and (3) the transfer or
voting of the securities, finder's fees, joint ventures, options, puts, calls,
guarantees of loans, guarantees against loss or of profits, or the giving or
withholding of any proxy as disclosed in Item 6.

Signature.

**37** After reasonable inquiry and to the best of my knowledge and belief, I certify
that the information set forth in this statement is true, complete and correct.

_____

Date

_____

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                    Page 39
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)


Signature


_____

Name/Title

The original statement shall be signed by each person on whose behalf the statement
is filed or his authorized representative. If the statement is signed on behalf of
a person by his authorized representative (other than an executive officer or
general partner of the filing person), evidence of the representative's authority
to sign on behalf of such person shall be filed with the statement, provided,
however, that a power of attorney for this purpose which is already on file with
the Commission may be incorporated by reference. The name of any title of each
person who signs the statement shall be typed or printed beneath his signature.


Attention: Intentional misstatements or omissions of fact constitute Federal
criminal violations (See 18 U.S.C. 1001). §240.13d-102 Schedule 13G Information to
be included in statements filed pursuant to §240.13d-1(b) and amendments thereto
filed pursuant to §240.13d-2(b).

SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

SCHEDULE 13G

Under the Securities Exchange Act of 1934

(Amendment No.)

Check the following box if a fee is being paid within this statement: [[]]. (A fee
is not required only if the filing person: (1) has a previous statement on file
reporting beneficial ownership of five percent or more of the class of securities
described in Item 1; and (2) has filed no amendment subsequent thereto reporting
beneficial ownership of less than five percent of such class. See Rule 13d-7.)

Instruction. A. Statements containing the information required by this Schedule
shall be filed not later than February 14 following the calendar year covered by
the statement or within the time specified in Rule 13d-1(b)(2), if applicable.


B. Information contained in a form which is required to be filed by rules under
Section 13(f) [15 USC 78m(f)] for the same calendar year as that covered by a
statement on this Schedule may be incorporated by reference in response to any of
the items of this Schedule. If such information is incorporated by reference in
this Schedule, copies of the relevant pages of such form shall be filed as an
exhibit to this Schedule.

C. The item numbers and captions of the items shall be included but the text of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No. 34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898 (S.E.C. Release No.)

items is to be omitted. The answers to the items shall be so prepared as to indicate clearly the coverage of the items without referring to the text of the items. Answer every item. If an item is inapplicable or the answer is in the negative, so state.

Item 1(a) Name of Issuer:

_____

Item 1(b) Address of Issuer's Principal Executive Offices:

_____

Item 2(a) Name of Person Filing:

**\*38** _____

Item 2(b) Address of Principal Business Office:

_____

Item 2(c) Citizenship:

_____

Item 2(d) Title of Class of Securities:

_____

Item 2(e) CUSIP Number:

_____

Item 3. If this statement is filed pursuant to Rules 13d-1(b), or 13d-2(b), check whether the person filing is a:

(a) [ ] Broker of Dealer registered under Section 15 of the Act

(b) [ ] Bank as defined in section 3(a)(6) of the Act

(c) [ ] Insurance Company as defined in section 3(a)(19) of the Act

(d) [ ] Investment Company registered under section 8 of the Investment Company Act

(e) [ ] Investment Adviser registered under section 203 of the Investment Advisers Act of 1940

(f) [ ] Employee Benefit Plan, Pension Fund which is subject to the provisions of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the Employee Retirement Income Security Act of 1974 or Endowment Fund; see §
240.13d-1(b)(1)(ii)(F)

(g) [ ] Parent Holding Company, in accordance with §240.13d-1(b)(ii)(G) (Note: See
Item 7)

(h) [ ] Group, in accordance with §240.13d-1(b)(1)(ii)(H)

Item 4. Ownership.
If the percent of the class owned, as of December 31 of the year covered by the
statement, or as of the last day of any month described in Rule 13d-1(b)(2), if
applicable, exceeds five percent, provide the following information as of that date
and identify those shares which there is a right to acquire.

(a) Amount Beneficially Owned:

_____

(b) Percent of Class:

_____

(c) Number of shares as to which such person has:

(i) sole power to vote or to direct the vote_____

(ii) shared power to vote or to direct the vote_____

(iii) sole power to dispose or to direct the disposition of_____

(iv) shared power to dispose or to direct the disposition of_____

Instruction: For computations regarding securities which represent a right to
acquire an underlying security see Rule 13d-3(d)(1).

Item 5. Ownership of Five Percent or Less of a Class.

If this statement is being filed to report the fact that as of the date hereof the
reporting person has ceased to be the beneficial owner of more than five percent of
the class of securities, check the following [ ].

Instruction: Dissolution of a group requires a response to this item.

Item 6. Ownership of More than Five Percent on Behalf of Another Person.
If any other person is known to have the right to receive or the power to direct
the receipt of dividends from, or the proceeds from the sale of, such securities, a
statement to that effect should be included in response to this item and, if such
interest relates to more than five percent of the class, such person should be
identified. A listing of the shareholders of an investment company registered under

the Investment Company Act of 1940 or the beneficiaries of employee benefit plan, pension fund or endowment fund is not required.

Item 7. Identification and Classification of the Subsidiary Which Acquired the Security Being Reported on By the Parent Holding Company.
*39 If a parent holding company has filed this Form, so indicate under Item 3(g) and attach an exhibit stating the identity and the Item 3 classification of the relevant subsidiary, and, if applicable, a separate exhibit furnishing the information called for by Rule 13d-1(b)(1)(ii)(G) with respect to non-qualified subsidiaries.

Item 8. Identification and Classification of Members of the Group.
If a group has filed this Schedule, so indicate under Item 3(h) and attach an exhibit stating the identity and Item 3 classification of each member of the group.

Item 9. Notice of Dissolution of Group.
Notice of dissolution of a group may be furnished as an exhibit stating the date of the dissolution and that all further filings with respect to transactions in the security reported on will be filed, if required, by members of the group, in their individual capacity. See Item 5.

Item 10. Certification.
By signing below I certify that, to the best of my knowledge and belief, the securities referred to above were acquired in the ordinary course of business and were not acquired for the purpose of and do not have the effect of changing or influencing the control of the issuer of such securities and were not acquired in connection with or as a participant in any transaction having such purpose or effect.

Signature.

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

_____

Date

_____

Signature

_____

Name/Title

The original statement shall be signed by each person on whose behalf the statement is filed or his authorized representative. If the statement is signed on behalf of a person by his authorized representative (other than an executive officer or general partner of the filing person), evidence of the representative's authority

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,   Release No. 14692,   Release No. 33-5925,   Release No.
34-14692,   Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

Page 43

to sign on behalf of such person shall be filed with the statement, provided,
however, that a power of attorney for this purpose which is already on file with
the Commission may be incorporated by reference. The name and any title of each
person who signs the statement shall be typed or printed beneath his signature.

Note: Six copies of this statement, including all exhibits, should be filed with
the Commission.

Attention: Intentional misstatements or omissions of fact constitute Federal
criminal violations (See 18 U.S.C. 1001).

[Secs. 3(b), 13(d)(1), 13(d)(2), 13(d)(5), 13(d)(6), 14(d)(1), 23; 48 Stat. 882,
894, 895, 901; sec. 203(a), 49 Stat. 704, sec. 8, 49 Stat. 1379; sec. 10, 78 Stat.
88a; secs. 2, 3, 82 Stat. 454, 455; secs. 1, 2, 3-5, 84 Stat. 1497; secs. 3, 18, 89
Stat. 97, 155; 15 U.S.C. 78c(b), 78m(d)(1), 89m(d)(2), 78m(d)(5), 78m(d)(6),
78n(d)(1), 78w.]

III. Item 19 of Form S-1, Item 18 of Form S-11, Item 5 of Form 10, Item 14 of Form
10-K, and Item 5(g) of Schedule 14A are amended to read as follows:

    §239.11 Form S-1, registration statement under the Securities Act of 1933.

   §239.18 Form S-11, for registration under the Securities Act of 1933 of securities
                  of certain real estate companies.

   §249.210 Form 10, general form for registration of securities pursuant to section
              12(b) or (g) of the Securities Exchange Act of 1934.

   §249.310 Form 10-K, annual report pursuant to Section 13 or 15(d) of the Securities
                     Exchange Act of 1934.

       §249.14a-101 Schedule 14A. Information required in proxy statement.

*40 Instructions. 1. The percentages are to be calculated on the basis of the
amount of outstanding securities, excluding securities held by or for the account
of the registrant or its subsidiaries, plus securities deemed outstanding pursuant
to Rule 13d-3(d)(1) under the Exchange Act.

[Secs. 7, 10, 19(a), 48 Stat. 78, 81, 85; secs. 205, 209, 48 Stat. 906, 908; sec.
8, 68 Stat. 685; 15 U.S.C. 77g, 77j, 77s(a); secs. 12, 13, 14, 15(d), 23, 48 Stat.
892, 894, 895, 901; sec. 203(a), 49 Stat. 704; secs. 1, 3, 8, 49 Stat. 1375, 1377,
1379; sec. 202, 68 Stat. 686; secs. 3, 4, 5, 6, 10, 78 Stat. 565-568, 569, 570-574,
88a; secs. 1, 2, 3, 82, Stat. 454, 455; secs. 1, 2, 3-5, 28(c), 84 Stat. 1435,
1479; sec. 105(b), 88 Stat. 1503; secs. 8, 9, 10, 18, 89 Stat. 117, 118, 119, 155;
15 U.S.C. 78l, 78m, 78n, 78o(d), 78w.]

By the Commission.


George A. Fitzsimmons
Secretary

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 5925,  Release No. 14692,  Release No. 33-5925,  Release No.                    Page 44
34-14692,  Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898
(S.E.C. Release No.)

FN1 Sections 13(d), 13(e), 14(d), 14(e) and 14(f) of the Exchange Act.

FN2 S. Rep. No. 550, 90th Cong. 1st Sess. 7(1967); H. R. Rep. No. 1711, 90th Cong.
2nd Sess. 8 (1968) and Hearings on S.510 Before the Subcom. on Securities of the
Senate Comm. on Banking and Currency, 90th Cong., 1st Sess. (1967).

FN3 Exchange Act Release Nos. 11003 (September 9, 1974) (39 FR 33855) and 11088
(November 5, 1974) (39 FR 41223).

FN4 Exchange Act Release No. 11616 (August 25, 1975) (40 FR 42212).

FN5 See SEC Docket S7-580.

FN6 Exchange Act Release No. 34-13291 (February 24, 1977) (42 FR 12342).

FN7 Exchange Act Release No. 34-13292 (February 24, 1977) (42 FR 12355).

FN8 Exchange Act Release No. 13844 (August 10, 1977) (42 FR 41405).

FN9 Exchange Act Release No. 13900 (August 29, 1977) (42 FR 44964).

FN10 See SEC File S7-714.

FN11 Exchange Act Release No. 34-13396 (March 30, 1977) (42 FR 16831).

FN12 S. Rep. No. 114, 95th Cong. 1st Sess. 13 (1977).

FN13 Id., at 14.

FN14 See, e.g., Rule 451, Rules of the New York Stock Exchange and Rule 577, Rules
of the American Stock Exchange.

FN15 See "GAF Corp. v. Millstein," 453 F.2d 709 (2nd Cir. 1971), cert. denied 406
U.S. 910 (1972).

FN16 S. Rep. No. 550, 90th Cong. 1st Sess. 8 (1967); H.R. Rep. No. 1711, 90th Cong.
2nd Sess. 8-9 (1968).

 Release No. 5925, Release No. 14692, Release No. 33-5925, Release No. 34-14692,
Release No. IC - 10212, 14 S.E.C. Docket 862, 1978 WL 170898 (S.E.C. Release No.)
END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**C**
Release No. 15348, Release No. 34-15348, 16 S.E.C. Docket 228, 1978 WL 171074
(S.E.C. Release No.)

Securities and Exchange Commission (S.E.C.)

Securities Exchange Act of 1934

Filing and Disclosure Requirements Relating to Beneficial Onwership

November 22, 1978

AGENCY: Securities and Exchange Commission.

ACTION: Final rules.

SUMMARY: The Commission announces the adoption of an amendment to a rule which
expands the classes of persons required to disclose beneficial ownership and
related information of certain equity securities. The persons added by the
amendment are those who own more than five percent of a class of certain equity
securities and who are not required to file a statement under Section 13(d) of the
Securities Exchange Act of 1934 because, for example: (a) beneficial ownership of
the securities was acquired prior to December 22, 1970; (b) beneficial ownership of
not more than 2 percent of the class was acquired within a 12 month period; or (c)
beneficial ownership was acquired in certain stock-for-stock exchanges. The
amendment and actions related thereto implement the statutory authority recently
granted to the Commission to close the gaps which exist in the present scheme for
requiring disclosure of persons whose beneficial ownership exceeds 5 percent of a
class of certain equity securities. Technical amendments to the rules and schedules
governing the disclosure of beneficial ownership of certain equity securities are
also adopted.

EFFECTIVE DATE: Thirty days after publication in the Federal Register.

FOR FURTHER INFORMATION CONTACT: John Granda, Office of Disclosure Policy and
Proceedings, Division of Corporation Finance, Securities and Exchange Commission,
500 North Capitol Street, Washington, D.C. 20549, 202/755-1750.

SUPPLEMENTARY INFORMATION: The Commission today announced the adoption of
amendments to Rule 13d-1 [17 CFR 240.13d-1], Rule 13d-7 [17 CFR 240.13d-7],
Schedule 13D [17 CFR 240.13d-101] and Schedule 13G [17 CFR 240.13d-102] under the
Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. 78a et seq., as amended
by Pub. L. No. 94-29 (June 4, 1975) and Pub. L. No. 95-213 (December 19, 1977)].
Most of these amendments were proposed for comment in Securities Exchange Act
Release No. 14693 (April 21, 1978) [43 FR 18501] in connection with the adoption of
extensive amendments to Regulation 13D which became effective on May 30, 1978.[FN1]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 15348,  Release No. 34-15348, 16 S.E.C. Docket 228, 1978 WL
171074 (S.E.C. Release No.)

Among those proposals was Rule 13d-1 (c) which closes the gaps in the existing
scheme for reporting beneficial ownership of equity securities under Section 13(d)
and thereby implements the authority granted to the Commission under Section 13(g)
of the Exchange Act.

The amendments adopted today also: (1) narrow the definition or equity security
formerly set forth in Rule 13d-1(c) and now set forth in Rule 13d-1(d); (2) revise
Rule 13d-7 to make clear that an additional filing fee is required for the next
filing following an amendment to a Schedule 13D or Schedule 13G which reflects
beneficial ownership of five percent or less; and (3) tailor more specifically the
disclosure requirements in Schedule 13G for the persons who will be filing that
schedule pursuant to Rule 13d-1(c).

1. Background
*2 Section 13(d) of the Exchange Act requires any person who acquires beneficial
ownership of more than 5 percent of a class of certain equity securities to file a
statement with the Commission reporting that acquisition and certain other
information related to such person's ownership of those securities. Section 13(d)
is not, however, an ownership reporting provision of general application. Its
legislative history reveals that it was intended to provide information to the
public and the affected issuer about rapid accumulations of its equity securities
in the hands of persons who would then have the potential to change or influence
control of the issuer.[FN2]

Because section 13(d) attempts to deal with the more limited concern of rapid
shifts in control, acquisitions unrelated to that purpose were exempted therefrom.
Thus, persons who acquire not more than 2 percent of a class of securities within a
12-month period are exempted by Section 13(d)(6)(B) from disclosing their
ownership. Also Section 13(d) is keyed to making an " acquisition" of the requisite
amount of securities. Thus, persons who acquire their ownership prior to the
enactment of the 5-percent threshold on December 22, 1970 (Pub. L. 91-567) also are
not subject to section 13(d). There also is an exemption from reporting
acquisitions of securities acquired in a stock-for-stock exchange which is
registered under the Securities Act of 1933 ("Securities Act") (15 U.S.C. 77a et
seq.) because Congress apparently believed at that time that shareholders of the
subject issuer would, through the receipt of the required prospectus, receive all
the material facts necessary to make an informed decision whether to hold their
stock or exchange it for the stock of the company making the exchange offer.[FN3]

Among the recommendations included in the final report prepared by the Commission
pursuant to Section 12(m) of the Exchange Act[FN4] was that the gaps in Section
13(d), discussed above be closed in order to establish a comprehensive system for
disclosure of beneficial ownership of equity securities. The Commission's
recommendations was implemented with the enactment of Section 13(g) of the Exchange
Act on December 19, 1977.[FN5] Section 13(g)(1) requires any person who is directly
or indirectly the beneficial owner of more than 5 percent of a class of equity
securities specified in Section 13(d)(1) of the Exchange Act to send to the issuer
and file with the Commission a statement setting forth, in such form and at such
time as the Commission may, by rule, prescribe: such person's identity, residence,
citizenship, the number and description of the shares in which such person has an
interest and the nature of such interest. Section 13(g)(1) taken literally would
require disclosure of the prescribed information, as well as that which may be

required pursuant to the Commission's general rulemaking authority thereunder,
regardless of whether the persons subject thereto are also required to report
similar ownership information under other sections of the Exchange Act. Section
13(g)(5), however, directs the Commission to take such steps as are necessary and
appropriate in the public interest and for the protection of investors to achieve
centralized reporting of the information, to avoid unnecessary duplicative
reporting, and to minimize the compliance burden on persons required to report.
Moreover, the legislative history is clear that Section 13(g) was intended to
"supplement the current statutory scheme by providing legislative authority for
certain additional disclosure requirements that in some cases could not be imposed
administratively."[FN6] The principal effect of Section 13(g), therefore, is to
provide the authority necessary to close the gaps previously described in the
disclosure requirements under Section 13(d).[FN7]

A. Regulation 13D-G and Rule 13d-1(c)
**3** In order to effectuate the Congressional purpose underlying Section 13(g), the
Commission is adopting, substantially as proposed, the amendments published in
Securities Exchange Act Release No. 14693 (April 21, 1978 [43 FR 18501]. Thus,
"Regulation 13D" is re-captioned "Regulation 13D-G" and a new paragraph (c) is
being added to Rule 13d-1 with the existing paragraph (c) and the succeeding
paragraphs redesignated accordingly.

Rule 13d-1(c) requires persons who own more than 5 percent of a class of security
now specified in Rule 13d-1(d), and who are currently not required to file under
Rule 13d-1(a), to file a statement on Schedule 13G containing the information
applicable to such persons. Generally, persons who are not required to file under
Rule 13d-1(a) but who would be required to file a Schedule 13G pursuant to Rule
13d-1(c) are: (1) those persons who acquired beneficial ownership of their
securities prior to December 22, 1970, (2) those persons who acquire not more than
2 percent of a class of securities within a 12-month period, who are exempt from
Rule 13d-1(a) by Section 13d(6)(B), and (3) those persons who acquired securities
through a stock-for-stock exchange registered under the Securities Act, who are
exempted from Rule 13d-1(a) by Section 13(d)(6)(A). Rule 13d-1(c) also would
require any person "otherwise" not required to report pursuant to Rule 13d-1(a) but
who is a beneficial owner of more than 5 percent of a specified class of equity
securities to report on Schedule 13G. A person could fall into this category if,
for example, he acquired beneficial ownership of more than five percent of a class
of securities which at the time of acquisition was not registered pursuant to
Section 12(g) but which subsequently became registered. However, an exception has
been added to Rule 13d-1(c) to indicate that the "or otherwise" language does not
cover issuers who acquire their own securities. Thus, issuers who satisfy the
exemption under Section 13(d)(6)(c) of the Exchange Act will not have to file a
Schedule 13D or aSchedule 13G. In the Commission's view, requiring a report from an
issuer in this context is not within the legislative purpose of Section 13(d) and
Section 13(g).

One commentator suggested that Rule 13d-1(c) would be clearer if, instead of
referring to particular bases for exemptions from Section 13(d), the Rule stated
that it covered everyone who is not required to file under Section 13(d) but who
has beneficial ownership of more than five percent of a class. The Commission has
determined to retain the references to exemptions because it is more informative in
that manner. For example, a person who does not appreciate the significance of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

acquiring securities prior to December 22, 1970 for purposes of Section 13(d) might not be aware of the obligation to file under Section 13(g) absent a reference to that fact.

A technical suggestion also offered by this commentator was to adopt a Rule under Section 13(g) in order to indicate that the Section had been implemented by the adoption of Rule 13d-1(c). The Commission believes that the fact that the Regulation in which the rule implementing Section 13(g) appears is captioned "Regulation 13D-G" provides adequate notice that the Section is operative.

**4** Proposed Rule 13d-1(c) subjects persons it covers to all of the rules in Regulation 13D-G. Thus, the determination of whether a person is a beneficial owner for the purpose of Rule 13d-1(c) is governed by Rule 13d-3. Rule 13d-3(a) provides that a beneficial owner of a security includes any person who has or shares voting power and/or investment power with respect to such security. Voting power includes "the power to vote, or to direct the voting of such security" and investment power includes "the power to dispose, or to direct the disposition of such security." Under Rule 13d-3(d)(1)(i) a person is also deemed to be the beneficial owner of securities which he may acquire at any time within sixty days, subject to certain conditions. In addition, Rule 13d-3(c) provides that all securities beneficially owned by a person are to be aggregated in determining how many securities such person owns, regardless of the nature of the beneficial ownership.

As indicated above, reporting under Rule 13d-1(c) and under Regulation 13D-G generally is directed to obtaining ownership information from persons who have the potential to change or influence control of the issuer. The Commission believes that, while Section 13(g) is a disclosure provision of more general application that Section 13(d), the possible affect on control is the aspect of beneficial ownership of greatest interest to issuers and investors in this context.[FN8] Accordingly, the traditional economic interests in securities, i.e., the right to receive dividends and the right to receive proceeds upon sale, have not been included as criteria for defining beneficial ownership for purposes of Regulation 13D-G.

The legislative history of Section 13(g) also stresses "the need to integrate and consolidate, wherever possible, the various reporting requirements of the Securities Exchange Act into a comprehensive system for gathering and disseminating information about ownership interests in public (sic) held companies."[FN9] Thus, Section 13(g)(5) directs the Commission to take such steps as it deems necessary or appropriate in the public interest: to achieve centralized reporting of information regarding ownership; to avoid unnecessarily duplicative reporting by and minimize the compliance burden on persons required to report; and to tabulate and promptly make available the information contained in any report filed thereunder in a manner which will, in the view of the Commission, maximize the usefulness of the information.

Adoption of Rule 13d-1(c) as part of proposed Regulation 13D-G is the final major step in the accomplishment of the system contemplated by Congress for the reporting of beneficial ownership of the equity securities of public companies.

Regulation 13D-G should result in a minimum of duplication, although some

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

duplication may be necessary to accomplish the differing regulatory objectives of
the various sections of the Exchange Act requiring disclosure of ownership
information. In order to minimize such duplication for persons who are required to
report under Sections 13(f) and 13(g), such persons are permitted to respond to any
of the items of Schedule 13G by incorporating in a report which is filed pursuant
to Section 13(f).

**5** In light of the objective of obtaining ownership information directed to the
ability to change or influence control, it is not feasible to integrate the reports
filed pursuant to Section 16(a) into the reporting system under Regulation 13D-G.
Section 16 is a prophylactic provision designed to prevent the use of inside
information by certain insiders to derive windfall profits on purchases and sales
of the issuer's securities within a 6-month period. The overriding concern under
Section 16 is with the economic incidents of ownership. Beneficial ownership is
therefore defined differently for Section 16 and for Regulation 13D-G in order to
achieve their separate purposes. Thus, consolidation of the ownership information
under the two sets of reports would be a matter of mixing two distinct concepts.
Further difficulty in joining the two reporting systems is presented by the fact
that Section 16 has a 10-percent reporting threshold while Sections 13(d) and 13(g)
have 5-percent threshold.

The Commission believes that the compliance burden on persons required to file
Schedule 13G is held to a minimum, since the information called for is essentially
the minimum statutory requirement. Moreover, it is to be filed annually within 45
days after the end of the calendar year. The expense of consolidating the necessary
ownership information is also held to a minimum since a determination need only be
made as of the last day of the calendar year.

Registrants which are required to file periodic reports under Section 13 of the
Exchange Act must set forth in Item 14 of their annual report on Form 10-K and in
Item 5 of their proxy statement the information called for by Item 6 of Regulation
S-K (17 CFR 220.20.6.). Item 6 requires disclosure of the name, address, number of
shares owned, and the percent of the class represented by such shares for each
person who beneficially owns more than 5 percent of a class of a registrant's
voting securities. These registrants will be able to more accurately reflect such
ownership information because all persons who own more than 5 percent of a class of
an equity security specified in Rule 13d-1(d) will be required to send a copy of
his Schedule 13D or Schedule 13G to the issuer. Shareholders, interested members of
the public, and government agencies will therefore be able to consult the ownership
information prepared by the registrant and filed in its annual report or proxy
statement for the purpose of identifying the substantial beneficial owners of a
particular issuer. If further information is necessary with respect to such
ownership, the statements (Schedules 13D and 13G) upon which the issuer based its
disclosure may be examined in the Commission's public files.

The Commission has also recently proposed for comment amendments to the " cover
pages" for Schedules 13D, 13G and 14D-1.[FN10] These proposals would require persons
filing the schedules to abstract certain data from within the schedule in order to
facilitate the entry of such data into the Commission's computer system. The
release also described and invites comments on proposed methods for collating
information through computer and other systems to satisfy the Commission's
obligation to tabulate and make promptly available ownership information. At

Release No. 15348,  Release No. 34-15348, 16 S.E.C. Docket 228, 1978 WL                        Page 6
171074 (S.E.C. Release No.)

present, two basic tabulations of beneficial ownership data are proposed, one being classified by issuer and showing the beneficial owners of over five percent of the issuer's stock, the other being a classification by reporting persons, i.e. for each reporting person it would give a list of companies in which such person had a reportable beneficial interest.

**B. Rule 13d-1(d)**
**\*6** The definition of the term "equity security," for purposes of Regulation 13D-G, formerly set forth in Rule 13d-1(c) is now set forth in Rule 13d-1(d). As adopted on May 30, 1978, the Rule excluded securities of a class of non-voting options, warrants, rights, convertible debt or convertible preferred securities. As a result, beneficial ownership of such securities does not, in and of itself, generate an obligation to file reports under Section 13(d) or Section 13(g). However, securities which might be acquired upon the exercise or conversion of such securities are not removed from the definition of the term " equity security" and would be includable in the calculation of the 5 percent threshold.

While amendments to former Rule 13d-1(c) were not proposed in Securities Exchange Act Release 14693, comments were received on the Rule as part of the comments on that Release. Although the commentators though that the rule was an appropriate expression of the Congressional purpose underlying the Williams Act, they were of the view that it did not go quite far enough. It was noted in this regard that there are many small classes of preferred stock which are not convertible but which would not be expected by the present definition and could therefore give rise to a reporting obligation. The logical extension of this view is that all non-voting securities should be removed from the definition of the term "equity security" since such securities do not carry with them the potential to change or influence control of an issuer. The Commission believes that this view is supported by the limited purpose of Sections 13(d) and 13(g). Accordingly, all non-voting securities have been excluded from the definition of "equity security" set forth in Rule 13d-1(d).

**C. Rule 13d-7**
Rule 13d-7 establishes a uniform fee schedule for acquisition statements filed on Schedules 13D and 13G. It provides that the first schedule which is filed must be accompanied by a filing fee of $100. All amendments to that schedule reflecting an increase in ownership above 5 percent do not require an additional fee. However, as originally adopted, the rule provided that after an amendment to the schedule reporting beneficial ownership of less than 5 percent has been filed, the first schedule filed thereafter is treated as a new filing and must be accompanied by a filing fee of $100. The Rule inadvertently failed to specify that an additional fee would be generated if the first schedule filed thereafter reported beneficial ownership of five percent of a class as well as less than five percent of a class. This, of course, is based on the fact that Section 13(d) and Section 13(g) are triggered only if beneficial ownership of a class of securities exceeds five percent. Rule 13d-7 has therefore been amended to correct this oversight.

**D. Schedule 13G**

**1. Item 2**
Because persons who may be filing under Rule 13d-1(c) may not have a business

Release No. 15348,  Release No. 34-15348, 16 S.E.C. Docket 228, 1978 WL                    Page 7
171074 (S.E.C. Release No.)

office, Item 2 of Schedule 13G has been amended to permit such persons to state
their residence address.

2. Item 6
**7** Two commentators objected to the requirement in Item 6 that the filing person
must identify persons who have an interest exceeding five percent in a class of
securities based on the right to receive, or the power to direct the receipt of,
dividends or sales proceeds. One of the commentators believes the Commission lacks
the authority to require this information. The other commentator was of the view
that this information is not relevant under Section 13(g), particularly since these
incidents of ownership have not been included as criteria for defining beneficial
ownership. These commentators were also of the view that this requirement is an
unwarranted invasion of privacy.

The Commission believes that Section 13(g)(1) and its legislative history indicate
that the Commission has the authority necessary to require the disclosure required
by Item 6. Thus, Section 13(g)(1)(B) provides that the Commission may require
disclosure of "the nature of [the] interest" in the shares which the filing person
beneficially owns. In describing the parallel term added to Section 13(d)(1), viz.
"nature of such beneficial ownership," the Senate Report stated that it "could
include such matters as whether the beneficial owner has the right to direct the
voting of the securities, the receipt of dividends, the proceeds of sale or such
other or different indicia of beneficial ownership as the SEC may prescribe."[FN11]
When the incidents of ownership are split in the manner contemplated by Item 6, it
seems clear that the term "nature of [the] interest" as well as the Commission's
general rule making authority under Section 13(g) reaches the identification of the
person owning more than five percent of the economic interests in the securities.
The changes made by Conference Committee to the bill which was enacted do not, as
suggested, indicate a different view.[FN12]

In defining beneficial ownership for purposes of Sections 13(d) and 13(g), the
Commission did not include the right to receive or the power to direct the receipt
of dividends or sales proceeds as bases for triggering a filing obligation
thereunder. However, these incidents of ownership may be relevant as an item of
disclosure in the Schedule which is filed by the person who has the power to vote
or direct the vote or the power to dispose or to direct the disposition of the
securities. The presence of the term "nature of [the] interest" in Section
13(g)(1)(B) as an item of disclosure which may be obtained and the description of
the meaning of that term in the Senate Report evince a Congressional intent that
disclosure concerning the economic incidents of ownership may be significant. The
Commission has limited disclosure in this context to merely indicating whether
someone other than the filing person has the right or power to receive dividends or
sales proceeds and, where these incidents of ownership exceed five percent,
identification of the owner. An identification of the person who is able to profit
from the exercise of control through a block of this size may be relevant, for
example, in assisting the Commission in determining the accuracy of the
representations in the Schedule and compliance by such persons with their filing
obligations.

**8** Congress has decided the privacy issue in the context of Sections 13(d) and
13(g) by requiring certain disclosure from persons whose ownership exceeds five
percent. Unlike Section 13(f)(3) of the Exchange Act, there is no provision in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

these Sections for withholding disclosure of securities owned by individuals.

3. Items 7 and 8
Item 7 has been bifurcated so that the specific requirement imposed thereby is
dependent upon whether the person is filing pursuant to Rule 13d-1(b)(ii)(G) or
Rule 13d-1(c). Thus, parent holding companies filing pursuant to Rule 13d-
1(b)(ii)(G) are required to so indicate under Item 3(g) and attach an exhibit
stating the identity and Item 3 classification of the relevant subsidiary. However,
persons filing pursuant to Rule 13d-1(c) need only file an exhibit identifying the
relevant subsidiary. As suggested by one commentator, the classification of a
subsidiary has no relevance for purposes of Section 13(g).

For the same reason, Item 8 has been similarly bifurcated. Thus, the exhibit
required to be attached by the Item for a group filing pursuant to Rule 13d-1(c)
need only identify the members of the group; the Item 3 classification does not
have to be provided with respect to the members of the group.

4. Item 10
Item 10 has been amended to provide that the certification required thereby need
only be provided by persons who file Schedule 13G pursuant to Rule 13d-1(b).
Persons filing Schedule 13G pursuant to Rule 13d-1(c) are not required to include
the certification because they are not required to satisfy the conditions set forth
in the certification in order to use the Schedule.

II. Possible Future Action
In view of the interpretive questions and concerns which have arisen under
Regulation 13D as well as the experience gained by the Commission since it was last
amended, it may be necessary to make certain minor or technical changes in some of
the rules. In addition, certain commentators have stressed the need for a current
listing of all Section 13(d)(1) securities showing the name of the issuer, the
CUSIP number, and the number of outstanding shares. In this regard, these
commentators noted that Section 13(f)(3) requires the Commission to make available
to the public, for purposes of Section 13(f), a list of Section 13(d) securities.
The Commission fulfilled its 13(f) obligation by providing that Section 13(f) would
apply only to securities listed on an exchange or quoted on NASDAQ and by
publishing a list of these securities. Based on the experience with the list
prepared for purposes of Section 13(f) as well as an examination of the feasibility
of providing a comprehensive list of the securities specified in Section 13(d)(1),
the Commission will determine whether to publish such a list.

III. Certain Findings
As required by Section 23(a)(2) of the Exchange Act, the Commission has
specifically considered the impact which the amendments adopted herein would have
on competition. The Commission has found that these amendments will not
significantly burden competition and, in any event, has determined that any
possible resulting competitive burden will be far outweighed by, and is necessary
and appropriate to achieve, the benefits of this information to investors.

IV. Authority
*9 The Commission hereby amends Rules 13d-1 and 13d-7 and Schedules 13D and 13G
pursuant to the authority set forth in Sections 3(b), 13 and 23 of the Exchange

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Act. The Commission finds that these amendments have already been generally subject
to comment as a result of the proposals published in Exchange Act Release No. 14693
(43 FR 18501) and are either technical in nature or less burdensome than previous
requirements so that further notice and rulemaking procedures pursuant to the
Administrative Procedure Act (5 U.S.C. 553) are not necessary.

V. Text of Amended Rules and Schedules

17 CFR Part 240
is amended by revising Regulation 13D in the following aspects:

REGULATION 13D-G

A. Section 240.13d-1 is amended to read as follows:

§240.13d-1 Filing 13D and 13G.

(a) Any person who, after acquiring directly or indirectly the beneficial ownership
of any equity security of a class which is specified in paragraph (d), is directly
or indirectly the beneficial owner of more than 5 percent of such class shall,
within 10 days after such acquisition, send to the issuer of the security at its
principal executive office, by registered or certified mail, and to each exchange
where the security is traded, and file with the Commission, a statement containing
the information required by Schedule 13D [§240.13d-101]. Six copies of the
statement, including all exhibits, shall be filed with the Commission.

(b)(1) A person who would otherwise be obligated under paragraph (a) to file a
statement on Schedule 13D may, in lieu thereof, file with the Commission, within 45
days after the end of the calendar year in which such person became so obligated,
six copies, including all exhibits, of a short form statement on Schedule 13G and
send one copy each of such schedule to the issuer of the security at its principal
executive office, by registered or certified mail, and to the principal national
securities exchange where the security is traded: Provided, That it shall not be
necessary to file a Schedule 13G unless the percentage of the class of equity
security specified in paragraph (d) of this section beneficially owned as of the
end of the calendar year is more than 5 percent: And provided further, That:

*****

(c) Any person who, as of December 31, 1978, or as of the end of any calendar year
thereafter, is directly or indirectly the beneficial owner of more than 5 percent
of any equity security of a class specified in paragraph (d) and who is not
required to file a statement under paragraph (a) by virtue of the exemption
provided by Section 13(g)(6)(A) or (B) of the Act, or because such beneficial
ownership was acquired prior to December 20, 1970, or because such person otherwise
(except for the exemption provided by Section 13(d)(6)(c) of the Act) is not
required to file such statement, shall, within 45 days after the end of the
calendar year in which such person became obligated to report under this paragraph,
send to the issuer of the security at its principal executive office, by registered
or certified mail, and file with the Commission a statement containing the
information required by Schedule 13G (§240.13d-102). Six copies of the statement,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

including all exhibits, shall be filed with the Commission.

**\*10** (d) For the purpose of this regulation, the term "equity security" means any equity security of a class which is registered pursuant to Section 12 of the Act, or any equity security of any insurance company which would have been required to be so registered except for the exemption contained in Section 12(g)(2)(G) of the Act, or any equity security issued by a closed-end investment company registered under the Investment Company Act of 1940; Provided, Such term shall not include securities of a class of non- voting securities.

(e) For the purpose of Sections 13(d) and 13(g), any person, in determining the amount of outstanding securities of a class of equity securities, may rely upon information set forth in the issuer's most recent quarterly or annual report, and any current report subsequent thereto, filed with the Commission pursuant to this Act, unless he knows or has reason to believe that the information contained therein is inaccurate.

(f)(1) Whenever two or more persons are required to file a statement containing the information required by Schedule 13D or Schedule 13G with respect to the same securities, only one statement need be filed: Provided, That:

*****

B. Section 240.13d-7 is amended to read as follows:

§240.13d-7 Fees for filing Schedules 13D or 13G.

The initial Schedule 13D or 13G filed by a person shall be accompanied by a fee of $100 payable to the Commission, no part of which shall be refunded. No fees shall be required with respect to the filing of any amended Schedule 13D or 13G: Provided, however, That once an amendment has been filed reflecting beneficial ownership of 5 percent or less of such class, an additional fee of $100 shall be paid with the next filing of that person which reflects ownership of more than 5 percent thereof.

C. Item 7 of Schedule 13D(§240.13d-101) is amended to read as follows: § 240.13d-101 Schedule 13D-Information to be included in statements filed pursuant to §240.13d-1(a) and amendments thereto filed pursuant to §240.13d-2(a).

*****

Item 7. Material to be Filed as Exhibits

The following shall be filed as exhibits: Copies of written agreements relating to the filing of joint acquisition statements as required by Rule 13d-1(f) (§240.13d-1(f)) and copies of all written agreements, contracts, arrangements, understandings, plans, or proposals relating to: (1) The borrowing of funds to finance the acquisition as disclosed in Item 3; (2) the acquisition of issuer control, liquidation, sale of assets, merger, or chance in business or corporate structure, or any other matter as disclosed in Item 4; and (3) the transfer or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 15348,  Release No. 34-15348, 16 S.E.C. Docket 228, 1978 WL
171074 (S.E.C. Release No.)                                                                    Page 11

voting of the securities, finder's fees, joint ventures, options, puts, calls,
guarantees of loans, guarantees against loss or of profit, or the giving or
withholding of any proxy as disclosed in Item 6.

D. Schedule 13G is amended to reads as follows:

   §240.13d-102 Schedule 13G information to be included in statements filed pursuant
   to §240.13d-1(b) and (c) and amendments thereto filed pursuant to § 240.23d-2(b).

*****

*11 Items 2, 7, 8 and 10 of §240.13d-102 are amended to read as follows:

*****

2(a) Name of person filing:
_____

2(b) Address of principal business office or, if none, residence:
_____

2(c) Citizenship:
_____

2(d) Title of class of securities:
_____

2(e) CUSIP No.:
_____

*****

Item 7. Identification and Classification of the Subsidiary Which Acquired the
Security Being Reported on By the Parent Holding Company.
If a parent holding company has filed this schedule, pursuant to Rule 13d-
1(b)(ii)(G), so indicate under Item 3(g) and attach an exhibit stating the identity
and the Item 3 classification of the relevant subsidiary. If a parent holding
company has filed this schedule pursuant to Rule 13d-1(c), attach an exhibit
stating the identification of the relevant subsidiary.

Item 8. Identification and Classification of Members of the Group.
If a group has filed this schedule pursuant to Rule 13d-1(b)(ii)(H), so indicate
under Item 3(h) and attach an exhibit stating the identity and Item 3
classification of each member of the group. If a group has filed this schedule
pursuant to Rule 13d-1(c), attach an exhibit stating the identity of each member of
the group.

*****

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

10. Certification

The following certification shall be included if the statement is filed pursuant to Rule 13d-1(b):

By signing below I certify that, to the best of my knowledge and belief, the securities referred to above were acquired in the ordinary course of business and were not acquired for the purpose of and do not have the effect of changing or influencing the control of the issuer of such securities and were not acquired in connection with or as a participant in any transaction having such purposes or effect.

*****

[Secs. 3(b), 13(d)(1), 13(d)(2), 13(d)(5), 13(d)(6), 13(g)(1), 13(g)(2), 13(g)(5), 23; 48 Stat. 882, 894, 901; sec. 203(a), 49 Stat. 704; sec. 8, 49 Stat. 1379; sec. 10, 78 Stat. 88a; sec. 2, 82 Stat. 454; secs. 1, 2, 84 Stat. 1497; secs. 3, 10, 18, 89 Stat. 97, 119, 155; secs. 202, 203, 91 Stat. 1494, 1498, 1499; 15 U.S.C. 78c(b), 78m(d)(1), 78m(d)(2), 78m(d)(5), 78m(d)(6), 78m(g)(1), 78m(g)(2), 78m(g)(5), 78w]

By the Commission.

George A. Fitzsimmons
Secretary

FN1 Securities Exchange Act Release No. 34-14692 (April 21, 1978) [43 FR 18484].

FN2 S. Rep. No. 550, 90th Cong., 1st sess. 7 (1967); H.R. Rep. No. 1711, 90th Cong., 2nd sess. 8 (1968) and hearings on S. 510 before the Subcommittee on Securities of the Senate Committee on Banking and Currency, 90th Cong., 1st sess. (1976).

FN3 Section 13(d)(6)(A); See S. Rep. No. 550, 90th Cong., 1st sess. 3 (1967); H.R. Rep. No. 1711, 90th Cong., 2nd sess. 3 (1968).

FN4 Final Report of the Securities and Exchange Commission on the Practice of Recording the Ownership of Securities in the Records of the Issuer in Other Than the Name of the Beneficial Owner of Such Securities, 94th Cong., 2nd Sess. (Committee print 1976).

FN5 Section 13(g) was added to the Exchange Act by the Domestic and Foreign Investment Disclosure Act of 1977 (the"Act") (Title II of Pub. L. No. 95-213). The Act also amended Section 13(d)(1) and Section 15(d) of the Exchange Act and added Section 13(h) to the Exchange Act.

FN6 S. Rep. No. 114, 95th Cong., 1st sess. 13 (1977).

FN7 Id.

FN8 "The touchstone of the national disclosure policy in this area is the concept

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 15348,  Release No. 34-15348, 16 S.E.C. Docket 228, 1978 WL 171074 (S.E.C. Release No.)

Page 13

of control or potential control." Final report of the Securities and Exchange Commission on the Practice of Recording the Ownership of Securities in the Records of the Issuer in Other Than the Name of the Beneficial Owner of Such Securities, 94th Cong., 2nd sess. (Committee print 1976), at 50 n. 13.

FN9 S. Rep. No. 550, 90th Cong., 1st sess. 14 (1967).

FN10 Securities Exchange Act Release No. 15317 (November 9, 1978).

FN11 S. Rep. No. 114, 95th Cong., 1st Sess. 18 (1977).

FN12 H.R. Rep. No. 831, 95th Cong., 1st Sess. 14 (1977). Sections 13(g)(1)(C) and 13(g)(1)(D) of the Senate bill were deleted in conference. Id. Section 13(g)(1)(c) authorized the Commission to obtain disclosure of "the time and manner of acquisition of such shares and subsequent transactions in such shares." It was deleted "to make clear that the [Commission] may not require extensive historical ownership and transaction information." Id. Section 13(g)(1)(D) authorized the Commission to obtain disclosure of "such other similar information as the Commission may, by rule, prescribe as necessary or appropriate in the public interest or for the protection of investors." It was deleted because it was "unnecessary in view of the Commission's general grant of rulemaking authority under Section 13(g)." Id.

Release No. 15348, Release No. 34-15348, 16 S.E.C. Docket 228, 1978 WL 171074 (S.E.C. Release No.)
END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Release No. 7611, Release No. 40678, Release No. 33-7611, Release No.        Page 1
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

**H**
Release No. 7611, Release No. 40678, Release No. 33-7611, Release No. 34-40678,
Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

Securities and Exchange Commission (S.E.C.)
17 CFR Parts 200
,
230
,
239
,
240
and
249
Securities Act of 1933
Securities Exchange Act of 1934
International Series

SECURITIES AND EXCHANGE COMMISSION (S.E.C.)

CROSS-BORDER TENDER OFFERS, BUSINESS COMBINATIONS AND RIGHTS OFFERINGS

File No. S7-29-98
RIN: 3235-AD97

November 13, 1998

**AGENCY:** Securities and Exchange Commission.

**ACTION:** Proposed rules.

**SUMMARY:** The Securities and Exchange Commission (the "Commission") today is
proposing tender offer and Securities Act registration exemptive rules for cross-
border tender offers, business combinations, and rights offerings. We are proposing
these exemptions to facilitate the participation in these types of transactions by
U.S. holders of the securities of foreign companies.

**DATES:** Comments should be received on or before [insert date 60 days after Federal
Register publication].

**ADDRESSES:** Please send three copies of your comments to Jonathan G. Katz,
Secretary, Securities and Exchange Commission, 450 Fifth Street, N.W., Washington,
D.C. 20549. You may also submit your comments electronically at the following E-
mail address: rule-comments@sec.gov. All comment letters should refer to File No.
S7-29-98; this file number should be included in the subject line if E-mail is
used. Comment letters can be inspected and copied in our public reference room at

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.                Page 2
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

450 Fifth Street, N.W., Washington, D.C. We will post electronically submitted
comments on our Internet Web site (http:// www.sec.gov).

**FOR FURTHER INFORMATION CONTACT:** Laurie L. Green, Special Counsel or Christina
Chalk, Special Counsel, Office of Mergers and Acquisitions, Division of Corporation
Finance at (202) 942-2920; Nancy J. Sanow, Senior Special Counsel, or Margaret A.
Smith, Attorney-Advisor, Office of Risk Management and Control, Division of Market
Regulation, at (202) 942-0772; at Securities and Exchange Commission, 450 Fifth
Street, N.W., Washington, D.C. 20549.

**SUPPLEMENTARY INFORMATION:** We are proposing new Rules 800, 801 and 802 under the
Securities Act of 1933 ("Securities Act"),[FN1] and Rule 4d-10 under the Trust
Indenture Act of 1939 ("Trust Indenture Act"),[FN2] revisions to Form F-X and Rule
144 under the Securities Act,[FN3] revisions to Rules 10b-13, 13e-3, 13e-4, 14d-1,
14d-2, 14d-7, 14d-10, 14e-1 and 14e-2[FN4] under the Securities Exchange Act of 1934
("Exchange Act")[FN5] and Rules 30-1 and 30-3[FN6] of the Commission's Rules Delegating
Authority to the Directors of the Division of Corporation Finance and Market
Regulation, respectively. We are also publishing for comment a new Form CB under
the Securities Act and the Exchange Act.

TABLE OF
CONTENT
S

I.          EXECUTIV
            E
            SUMMAR
            Y

II.         DISCUSSI
            ON

            A.      Background

                    1.          Reasons for
                                Proposals

                    2.          Prior
                                Commission
                                Action to
                                Facilitate
                                Inclusion of
                                U.S.
                                Security
                                Holders in
                                Cross-
                                Border
                                Tender
                                Offers,
                                Business
                                Combinatio
                                ns and
                                Rights
                                Offerings

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No. 34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)    Page 3

|  | 3. | The Current Proposals |  |
| B. | Proposed Tier I Exemption | | |
|  | 1. | U.S. Ownership Limitation |  |
|  | 2. | Disclosure and Dissemination-Proposed Form CB |  |
|  | 3. | Equal Treatment |  |
| C. | Proposed Tier II Exemption | | |
|  | 1. | Conditions for the Exemption |  |
|  | 2. | Scope of Tier II Exemptive Relief |  |
|  |  | a. | Commencement of an Offer |
|  |  | b. | Withdrawal Rights |
|  |  | c. | All Holders/Best Price |
|  |  | d. | Notice of Extensions |
|  |  | e. | Prompt Payment for or Return of Tendered Securities |
|  |  | f. | Reduction of Minimum Condition |
| D. | Other Rules Governing Tender Offers | | |
|  | 1. | Rule 10b-13 |  |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2.     Regulation M

E.    Exemption from the Securities Act for Exchange Offers, Business Combinations, and Rights Offerings

1.     Summary

2.     Eligibility Conditions

     a.    Transactional Eligibility Requirements

         i.    Common Requirements for Exchange Offers, Business Combinations and Rights Offerings

             a)    U.S. Ownership Limitation

             b)    Equal Treatment

             c)    Transfer Restrictions

         ii.    Additional Requirements for Rights Offerings

     b.    Offeror Eligibility Requirements

         i.    Exchange Offers/Business Combinatio

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,   Release No. 40678,   Release No. 33-7611,   Release No.                    Page 5
34-40678,   Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

|  |  |  | ns |
|  |  | ii. | Rights Offerings |
|  | c. |  | Information al Requiremen ts |
|  | d. |  | Rule 802 Eligible Securities- Trust Indenture Act Exemption |
| F. |  |  | Effect of Reliance on Rule 801 or 802 on the Availability of Other Exemptions |
| G. |  |  | Unavailabili ty of Rules 801 and 802 and the Tender Offer Exemptions for Investment Companies |
| H. |  |  | Determinati on of U.S. Ownership |
|  | 1. |  | Definition of U.S. Holder |
|  | 2. |  | Exclusion of Foreign Security Holders Holding More Than 10 Percent |
|  | 3. |  | Determinati on of Eligibility by Persons Other Than |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.                  Page 6
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

the Issuer

III.    COST-
        BENEFIT
        ANALYSIS

IV.     SUMMAR
        Y OF
        INITIAL
        REGULAT
        ORY
        FLEXIBILI
        TY
        ANALYSIS

V.      PAPERWO
        RK
        REDUCTIO
        N ACT

VI.     REQUEST
        FOR
        COMMENT
        S

VII.    STATUTO
        RY BASIS
        OF
        PROPOSAL
        S

TEXT OF
PROPOSAL
S

## I. EXECUTIVE SUMMARY

*2 In today's global market, it is very common for U.S. persons to hold securities of foreign companies. Foreign offerors, however, often exclude U.S. security holders from tender offers,[FN7] exchange offers,[FN8] rights offerings and business combinations[FN9] involving the securities of a foreign company. Offerors often exclude U.S. security holders due to conflicts between the U.S. regulation and the regulation of the home jurisdiction or the perceived burdens of complying with multiple regulatory regimes. U.S. security holders, therefore, often are unable to receive any benefits offered in these types of transactions.

Today, we are proposing exemptions[FN10] to encourage issuers and bidders to extend tender offers, rights offerings and business combinations to the U.S. security holders of foreign private issuers.[FN11] The proposed exemptions balance the need to provide U.S. security holders with the protections of the U.S. securities laws against the need to promote the inclusion of U.S. security holders in these types of cross-border transactions. The specific exemptions are:

• First, certain tender offers for the securities of foreign private issuers would be exempt from the provisions of the Exchange Act and rules thereunder governing tender offers.[FN12] Bidders could use the exemption when U.S. security holders hold of record 10 percent or less of the subject securities. We refer to this exemptive relief in this release as the "Tier I" exemption.

• Second, when U.S. security holders own more than 10 percent of the class of securities sought in the offer, limited tender offer exemptive relief would be available to eliminate frequent areas of conflict between U.S. and foreign regulatory requirements. Bidders could rely on this exemptive relief when the record holdings of U.S. security holders do not exceed 40 percent of the subject class. We refer to this exemptive relief in this release as the "Tier II" exemption. The relief proposed under the Tier II exemption represents a codification of current Commission exemptive and

interpretive positions.
• Third, under proposed Securities Act exemptive Rule 801, securities issued in certain rights offerings by foreign private issuers would be exempt from the registration requirements of the Securities Act. A foreign private issuer could rely on the exemption when U.S. security holders hold of record five percent or less of the issuer's securities that are the subject of the rights offering.
• Fourth, under proposed Securities Act exemptive Rule 802, securities issued in exchange offers for foreign private issuers' securities would be exempt from the registration requirements of the Securities Act of 1933 (the "Securities Act")[FN13] and the qualification requirements of the Trust Indenture Act of 1939 (the "Trust Indenture Act").[FN14] Securities issued in certain business combinations involving foreign private issuers would also be exempt. Offerors could rely on these exemptions when U.S. security holders hold of record five percent or less of the subject class of securities.
*3 • Fifth, tender offers for the securities of foreign private issuers would be exempt from Rule 10b-13 under the Exchange Act. Under certain circumstances, this exemption would allow purchases outside the tender offer during the offer. This exemption would be available when U.S. security holders hold of record 10 percent or less of the subject securities.
The U.S. anti-fraud and anti-manipulation rules would, however, continue to apply to these transactions.

In addition to the above exemptions, we are proposing amendments to the Commission's general organization rules. These amendments would delegate to the Directors of the Divisions of Corporation Finance and Market Regulation authority to exempt certain tender offers from specific tender offer requirements.

## II. DISCUSSION

### A. Background

#### 1. Reasons for Proposals
Generally, if a bidder wants to acquire a foreign private issuer, it must comply with the securities or takeover laws of the target company's home jurisdiction. If the target has U.S. security holders, the bidder must also comply with U.S. securities laws. Bidders often simply exclude U.S. holders from the opportunity to participate in the transaction to avoid the application of U.S. laws.[FN15]

The same is true of exchange offers and business combinations. Foreign offerors often are unwilling to register securities under the Securities Act when the amount of holdings in the United States is relatively small. Further, they are unwilling to incur a continuous reporting obligation under the Exchange Act as a result of registration under the Securities Act. These concerns are also significant deterrents to extending rights offerings to U.S. holders.

When bidders exclude U.S. security holders from tender or exchange offers, they deny U.S. security holders the opportunity to receive a premium for their shares and to participate in an investment opportunity. Similarly, when issuers exclude U.S. security holders from participation in rights offerings, U.S. security holders lose that opportunity to purchase shares at a possible discount from market price.

Nevertheless, these transactions may affect the interests of U.S. security holders. For example, market activity in the target company's stock after announcement of a tender offer may affect the price of the stock. Even though U.S. security holders cannot participate in the tender offer, they must react to the event by deciding whether to sell, hold, or buy additional securities. They must make this decision without the benefit of information required by either U.S. or foreign securities regulation. Indeed, to avoid triggering registration, filing and disclosure requirements under U.S. securities laws, bidders and issuers will often take affirmative steps to prevent their informational and offering materials from being transmitted to U.S. holders. Thus, U.S. holders receive information about extraordinary transactions affecting their interests only indirectly (for example, through the financial press) and often after a significant delay.

#### 2. Prior Commission Action to Facilitate Inclusion of U.S. Security Holders in Cross-Border Tender Offers, Business

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.            Page 8
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

<u>Combinations and Rights Offerings</u>
**\*4** On June 6, 1990, we published a concept release seeking comment on a suggested conceptual approach to U.S. regulation of international tender and exchange offers. We sought to encourage bidders for foreign companies to extend these offers to U.S. security holders.[FN16] After reviewing the public comments,[FN17] we published releases in June 1991, proposing exemptive rules, registration forms and schedules, and the issuance of an exemptive order for tender offers subject to the U.K. City Code on Takeovers and Mergers (the "City Code"),[FN18] that would implement the concept release with respect to cross-border tender and exchange offers.[FN19] We also proposed new exemptive rules with respect to cross-border rights offerings to address similar concerns regarding the common practice of excluding U.S. security holders (together, the "1991 proposals").[FN20]

The commenters generally supported the 1991 proposals. They indicated that when U.S. security holders have already invested in a foreign private issuer's securities, the benefits of having the opportunity to tender their securities in a tender offer at a premium price or purchase additional securities in a rights offering, often at a discount, outweigh the detriments of not receiving the full protections offered by U.S. securities laws.[FN21]

3. <u>The Current Proposals</u>
Encouraging bidders to include U.S. security holders in multinational offers for the securities of foreign private issuers is even more important in today's global market than in 1991 because of the broader ownership of foreign securities by U.S. security holders[FN22] and the increase in both the number and dollar value of cross-border transactions since 1991.[FN23] Since the last time we proposed regulatory relief, we know that many tender offers have excluded U.S. security holders.[FN24] Similarly, foreign private issuers continue to cash out U.S. security holders in rights offerings.[FN25]

Today we propose, with significant modifications, exemptive rules and forms similarly proposed in 1991. We modified the 1991 proposals based upon our experience with cross-border tender offers, rights offerings, and business combinations. Since that time, we have granted relief on a case-by-case basis.[FN26]

We also make some of these proposals today because recent legislative action granted us general exemptive authority under the Securities Act and the Exchange Act.[FN27] This authority provides greater flexibility to address these issues in a meaningful fashion.

We have competing concerns. While we want to encourage bidders to include U.S. security holders, we would like to extend the protections of the U.S. federal securities laws to investors. The ramifications to a bidder could be significant. Making an offer to U.S. holders of foreign securities ordinarily may trigger: (i) disclosure and filing obligations under the Securities Act and the Exchange Act, and (ii) corresponding rights and protections for the U.S. security holders that are (iii) enforceable in a U.S. court (e.g., Section 11 of the Securities Act). The proposed exemptions would balance these competing concerns by focusing relief in the areas where U.S. ownership is smallest or where there is a direct conflict between U.S. and foreign regulations.

**\*5** The proposed rule changes, however, do not affect the rights and claims of U.S. security holders arising under the anti-fraud and anti-manipulation provisions of the federal securities laws. For example, if a foreign private issuer uses one of the proposed exemptions to make an offer to a U.S. security holder that includes a material misrepresentation or omission, that U.S. security holder would have a cause of action under the anti-fraud provisions. It may be difficult, however, for a security holder to enforce any judgments under the U.S. federal securities laws against the foreign private issuer whose assets, senior management and directors may be located in a foreign country. We think the benefit of allowing U.S. security holders to participate in multinational offers outweighs any possible diminution in protection U.S. security holders would have under the federal securities laws.

U.S. security holders would still have the full anti-fraud protection of Section 14(e). For example, the Tier I exemption for certain tender offers includes an exemption from all provisions of Rule 14e-1. The specific requirements of Rule 14e-1 are prophylactic in nature, as "means reasonably designed to prevent" fraudulent or deceptive acts.[FN28] Notwithstanding the

Release No. 7611,   Release No. 40678,   Release No. 33-7611,   Release No.                    Page 9
34-40678,   Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

exemption, the anti-fraud protections under Section 14(e) of the Exchange Act still apply.[FN29] Accordingly, although Tier I exempts bidders from the specific duration, notice, and payment requirements of Rule 14e-1, a bidder who, for example, fails to provide any notice to U.S. holders that it has extended the duration of any offer and materially increased the amount of the consideration, or that it may fail to pay the consideration for an unreasonably long time period could violate the anti-fraud provisions including Section 14(e).

The proposed exemptions require that U.S. security holders be treated at least as favorably as foreign security holders in the transaction.[FN30] The exemptions would not be available if only U.S. security holders were permitted to participate in the transaction. This minimizes the possibility that the exemptions would be used solely as a means to create a market for the offeror's securities in the United States. It also minimizes the risk that a bidder could buy out only the U.S. security holders in a tender offer without complying with the U.S. security laws.

*Q1. In proposing these exemptive rules, we are seeking comment on whether the underlying premise that this approach is in the interest of investors is still valid. For example, have Commission rulemaking and informal initiatives in the last decade to facilitate cross-border offerings and acquisitions rendered the proposed exemptive relief unnecessary or inappropriate? Does the opportunity for U.S. security holders to participate in multinational tender offers justify the proposed use of the exemptive authority and possible diminished protection of U.S. securities laws?*

The proposals are intended to facilitate inclusion of U.S. security holders in offshore transactions, rather than provide means to avoid U.S. jurisdiction. Nevertheless, we are considering whether to provide guidance regarding when U.S. security holders can be provided information about the offshore transaction without triggering U.S. requirements. Specifically, if a bidder could use the Internet to disseminate materials relating to an offshore tender offer without causing U.S. tender offer requirements to apply to that offer, U.S. security holders might obtain more timely and reliable information about the offer and its effect on their investment, even though they may not be permitted to participate in the offer.[FN31] We, of course, would be concerned that posting offshore tender offer materials on the Internet could amount to a solicitation of U.S. security holders, that in effect urges them to find indirect means to participate in the tender offer.

*\*6Q2. We request comment on whether materials relating to offshore tender offers could be posted on the Internet without triggering U.S. tender offer requirements with respect to that offer. Would these postings be helpful in providing U.S. security holders with timely information concerning extraordinary transactions affecting their holdings? If so, what conditions should attach to dissemination of offshore tender offer materials over the Internet?*

B. Proposed Tier I Exemption
Under the proposed Tier I exemption, eligible tender offers would not be subject to Rules 13e-3, 13e-4, Regulation 14D or Rules 14e-1 and 14e-2.[FN32] These provisions contain disclosure, filing, dissemination, minimum offering period, withdrawal rights and proration requirements that are intended to provide security holders with equal treatment and adequate time and information to make a decision whether to tender into the offer. Under the proposed Tier I exemption, tender offers for the securities of foreign private issuers are exempt from these U.S. tender offer requirements, so long as:
   • U.S. security holders of record hold 10 percent or less of the class of securities sought in the tender offer;
   • In the case of a class of securities subject to Rule 13e-4 or Regulation 14D under the Exchange Act, bidders submit, rather than file, an English language translation of the offering materials to the Commission under cover of Form CB and file a consent to service on Form F-X;
   • U.S. security holders participate in the offer on terms at least as favorable as those offered to any other holders, including price, type of consideration and choice among different alternatives being offered; and
   • Bidders provide U.S. security holders with the tender offer circular or other offering document, in English, on a comparable basis as provided to other security holders.
The exemption would be available to U.S. and foreign bidders. The domicile or reporting status of the bidder is not relevant. Instead of complying with the U.S. tender offer rules, a bidder taking advantage of the Tier I exemption would comply with any applicable rules of the foreign target company's home jurisdiction or exchange.

1. U.S. Ownership Limitation
The Tier I tender offer exemption is substantially similar to the exemption for cash tender offers contained in the 1991 proposals. Like in the 1991 proposals, we propose 10 percent as the maximum level of ownership by U.S. security holders

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,   Release No. 40678,   Release No. 33-7611,   Release No.                    Page 10
34-40678,   Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

that a target company can have and be eligible for the exemption.[FN33] Under the 1991 proposals, we solicited comment on whether to increase the 10 percent limitation for U.S. ownership to 15 or 20 percent.

Commenters on the 1991 proposals largely favored adopting a higher eligibility percentage. As proposed, however, we preliminarily have decided that 10 percent is an appropriate level of U.S. ownership for exclusive reliance on home jurisdiction requirements. At and below that level of U.S. ownership, broad-based exemptions may be necessary to encourage inclusion of U.S. security holders. Above that level, more tailored relief of the type envisioned by Tier II to address conflicting regulatory mandates and offering practices appears to be sufficient, based on our experience in granting exemptive relief for those offers. When U.S. ownership does not exceed 10 percent of the target securities, we believe that U.S. holders' interests are best served by being able to participate in, rather than being excluded from, the tender offer, even though they do not receive the full protections of the U.S. tender offer rules.

*7Q3. We seek comments on the appropriateness of the 10 percent limitation on U.S. ownership. Should the threshold be higher, for example 20 percent, or lower, such as five percent? If the threshold were higher, would the Tier II exemption be necessary?

2. Disclosure and Dissemination-Proposed Form CB
A bidder relying on the Tier I exemption must submit any offer materials prepared under foreign law to the Commission for notice purposes only, under the cover of proposed Form CB. Also, if the target company, or any officer, director or other person provides a recommendation with respect to the offer, they may satisfy their disclosure obligations under Rules 14e-2 and 14d-9 by submitting the recommendation to the Commission on Form CB. If the tender offer is subject only to Section 14(e) and Regulation 14E, the offering document would not need to be submitted to the Commission, since the current regulations do not require a filing in connection with those offers. The materials submitted under cover of Form CB would not be deemed filed with the Commission. Therefore, the person submitting the materials would not be subject to the express liability provisions of Section 18 of the Exchange Act.[FN34]

Form CB must be received by the Commission no later than the next business day after the tender offer is commenced. A number of countries, such as the United Kingdom, provide that an offer commences when the offering document is first physically sent to security holders. A number of commenters on the 1991 proposals expressed concern that it would be difficult to submit documents to the Commission contemporaneously with the publication or mailing of documents overseas. Thus, offerors and targets will have one extra day from the date the offering circular or disclosure document is first published, sent or given to security holders to submit the offering circular or disclosure document to the Commission under the cover of Form CB. If the bidder is a foreign company, it must also file a Form F-X with the Commission contemporaneously with the submission of the Form CB.[FN35]

Offerors must disseminate any tender offer circular or other informational document to U.S. security holders in English on a comparable basis as provided to security holders in the foreign target company's home jurisdiction. If the foreign target company's home jurisdiction permits dissemination solely by publication, the offeror must likewise publish the offering materials simultaneously in the United States.

As now proposed, eligible Tier I transactions also would be exempt from the Commission's going private disclosure requirements under Rule 13e-3.[FN36] Rule 13e-3 mandates the filing of a Schedule 13E-3. Schedule 13E-3 requires disclosure about the fairness to unaffiliated security holders of the transaction that may cause an equity security to lose its public trading market. Those disclosure requirements would, however, remain applicable to offers subject to the Tier II exemption.

*8 Rule 13e-3 disclosure is important in assessing the fairness of a going private transaction. However, it may not be practical to impose Rule 13e-3 procedural, disclosure and filing requirements when there are no other U.S. requirements, including disclosure requirements about the background, terms or conditions of an offer. For Tier I offers, the home jurisdiction would establish the basic disclosure and dissemination requirements applicable to the offer. In a predominantly foreign transaction, compliance with Rule 13e-3 has been problematic when the affiliated transaction would not be subject to challenge under home country law solely on the basis of lack of fairness. In these transactions, the staff has permitted modified disclosure that focuses on how the board of directors arrived at their determination to purchase the interests of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.                    Page 11
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

unaffiliated security holders at the offering price rather than requiring a fairness determination.[FN37]

The proposed rules would not affect the beneficial ownership reporting requirements of Sections 13(d), 13(f) and 13(g) of the Exchange Act, because the need for disclosure of the ownership and control of reporting companies, domestic and foreign, outweighs any burdens related to filing reports under those rules.[FN38]

> Q4. Should Sections 13(d), 13(f) and 13(g) apply to non-U.S. persons owning securities in foreign private issuers? Should these rules apply only if U.S. record ownership exceeds a certain percentage, such as 5 or 10 percent?

As noted, the anti-fraud and anti-manipulation provisions contained in the Exchange Act also would continue to apply.[FN39] In 1991 a number of commenters expressed concern that if the anti-fraud provisions continue to apply, bidders will not extend the offer to U.S. security holders. We nevertheless continue to believe that the anti-fraud and anti-manipulation rules are necessary for the protection of U.S. security holders.

3. Equal Treatment

Offerors relying on the Tier I exemption must permit U.S. security holders to participate in the offer on terms at least as favorable as those offered to any other security holders of the subject securities. This requirement would mandate that U.S. security holders be offered the same amount and form of payment, including securities if offered elsewhere. Also, the procedural terms of the tender offer, that is, duration and withdrawal rights, must be the same for all security holders.

> Q5. We request comments on whether the tender offer exemptive rules should permit U.S. security holders to be offered cash consideration only, even if securities are offered to non-U.S. security holders. If bidders can offer a cash-only alternative to U.S. security holders, should we impose protections to ensure that U.S. security holders are receiving equivalent value for their securities? Similarly, we are aware that as a practical matter, holders of American Depositary Shares ("ADSs") may have a shorter time period in which to tender. Would the requirement that the procedural terms of the tender offer be the same for all holders prevent reliance on the exemption when the subject securities are held in ADS form in the United States?

*9 An exception to this equal treatment requirement would provide that if the transaction is exempt from registration under the Securities Act, the offeror may exclude target company security holders residing in any state that does not provide an exemption from registration.[FN40] Similarly, if the offeror registers securities under the Securities Act, the offeror may exclude target company security holders residing in any state that refuses to register or qualify the offer and sale of securities in that state after a good faith effort by the offeror.

In both cases, however, the offeror must offer those security holders cash consideration instead of excluding them, if it has offered cash consideration to security holders in another state or in a jurisdiction outside the United States. The offeror must offer the cash consideration only if it previously offered a cash-only alternative consideration--not merely a partial cash alternative consideration.

Another exception to the equal treatment requirement would provide that the offeror does not need to offer a "loan note" alternative to U.S. security holders. It is quite common in the United Kingdom for a bidder in a cash tender offer to extend a loan note option to the target company's security holders instead of paying cash. This procedure allows target security holders to receive a short-term note, which may be redeemed in whole or in part for cash at par on any interest date in the future.[FN41] This exception would be available when the purpose of the loan notes is the deferral of the recognition of income and capital gains on the sale of securities and such a deferral is not available to U.S. security holders. Also, the offeror cannot list the loan notes on any exchange or organized securities market, or register them under the Securities Act and still qualify for the Tier I exemption.

The Tier I exemption contemplates that the bidder may have to comply with more than one jurisdiction's regulations.[FN42] The chartering jurisdiction may mandate more protections or disclosure than the principal foreign market. If the bidder cannot or does not wish to extend these additional protections or disclosure to U.S. security holders, under today's proposals, the bidder would not have Tier I exemptive relief. The bidder, therefore, would need to seek relief from the Commission in

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.                    Page 12
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

order to extend the tender offer to U.S. security holders without complying fully with Exchange Act tender offer requirements. The bidder would need to submit a written request for exemptive relief to the Commission. In determining whether to grant relief, we would consider whether the additional protections or disclosures are necessary, under the particular facts and circumstances of the transaction, to protect the interests of U.S. security holders.

C. Proposed Tier II Exemption

1. Conditions for the Exemption
Under the Tier II offer exemption, bidders would be entitled to limited relief from the U.S. tender offer rules to minimize conflicts with the foreign regulatory schemes. A bidder may rely upon the Tier II exemption if:
    **10** • The target company is a foreign private issuer; and
    • U.S. security holders do not hold of record more than 40 percent of the securities sought in the offer.
The exemption would be available to U.S. and foreign bidders. The domicile or reporting status of the bidder is not relevant.

We preliminarily believe that there should be a ceiling on the maximum percentage of U.S. security holders of the subject class to ensure that when U.S. ownership is significant, the full protections of the U.S. tender offer rules apply. When U.S. ownership exceeds 40 percent, it is unlikely that the offer would exclude U.S. security holders. We will consider relief on a case-by-case basis when there is a direct conflict between the U.S. laws and practice and those of the home jurisdiction. Any relief would be limited to what is necessary to accommodate conflicts between the regulatory schemes and practices.[FN43]

In no event will the Division exempt application of the anti-fraud and anti-manipulation provisions, including Section 14(e).[FN44] Section 14(e) provides that it is unlawful for a person to make a material untrue statement, or material omission, or to engage in fraudulent, deceptive, or manipulative acts in connection with any tender offer. Receipt of an exemption from the bright-line prophylactic requirements of Rule 14e-1[FN45] does not obviate the need to comply with the anti-fraud and anti-manipulation requirements, including those contained in Section 14(e). Thus, for example, while an exemption from the requirement under Rule 14e-1(b)[FN46] , which provides a bright-line threshold of ten days notice if the offeror increases or decreases the consideration offered, may be appropriate, the anti-fraud provisions may require notice of material changes in an offer.

The areas of exemptive relief under Tier II have been identified by bidders as common impediments to extending offers into the United States in past requests for exemptive relief.[FN47] They include:
    (1) an offer is deemed to commence upon mailing or publication pursuant to the home jurisdiction's requirements rather than upon announcement;
    (2) a bidder may terminate withdrawal rights before the expiration of the offer if it has met all conditions to the offer and satisfied all duration requirements of the U.S. tender offer rules;
    (3) a bidder may divide the offer into two separate offers having the same terms in which the U.S. offer would comply with the U.S. regulatory scheme and the non-U.S. offer would comply with the home jurisdiction rules, excluding U.S. security holders from the foreign offer and limiting the U.S. offer to U.S. security holders;
    (4) whether the bidder meets the requirements for prompt payment for, or return of, tendered securities will depend on home jurisdiction requirements and practice; and
    (5) bidders may announce extensions of the offer in accordance with the practices of the home jurisdiction, rather than before the commencement of trading on the next business day as required by the U.S. rules.
**11** In Section II.C.2, we discuss each aspect of the proposed Tier II exemption in more detail. We also provide guidance on a bidder's ability to reduce the minimum tender condition without extending the offer if certain conditions are met.
    *Q6. We request comments on the scope of the proposed relief and the conditions proposed in the Tier II exemption. Are there any other areas where relief should be granted? Are there areas of relief proposed that should not be granted? Should there be more conditions attached? For example, should a foreign bidder relying on the Tier II exemption be required, as proposed, to File a Form F-X appointing an agent for service of process in the United States?*

If relief beyond the proposed Tier II exemption is necessary, the Commission staff would consider requests on an expedited basis under the proposed delegated authority. In such a case, the bidder would need to submit a written application requesting

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.                    Page 13
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

relief, along with a discussion of the basis for the request.[FN48] The application must comply with the requirements of Rule 0-12 under the Exchange Act.

The Tier II exemption would be available regardless of the home jurisdiction of the foreign subject company.[FN49] By creating an approach that is not country-specific, U.S. security holders will have the greatest opportunity to participate in offers for foreign companies without regard to national boundaries. Because the Tier II exemptive relief is limited, it is not necessary to determine whether the tender offer rules and practices of a particular jurisdiction are adequate. Also, a bidder need not demonstrate that there is an actual conflict between U.S. tender offer rules and rules of the home jurisdiction in order to rely on the Tier II exemption. The offers relying upon the proposed exemption would still be subject to any disclosure, filing, and most of the procedural and equal treatment requirements of the U.S. tender offer rules that would otherwise apply to the offer, as well as the going private disclosure and procedural requirements of Rule 13e-3. Further, the exemption requires that certain conditions be met to ensure an adequate level of investor protection while at the same time removing common impediments to including U.S. security holders in foreign tender offers. Consistent with the broader approach of the proposed Tier II exemption, the exemptive relief would be available to both issuer[FN50] and third-party offers.

> *Q7. We request comments on whether the non-country specific exemption is appropriate.*
>
> *Q8. Is the Tier II exemption necessary at all since, based on transactions filed with us, it appears that there will be relatively few offers for the securities of foreign private issuers that will be ineligible for the Tier I exemption if the proposed 10 percent (or possibly higher) threshold is adopted? Instead, should we continue our current practice of granting relief on a case-by-case basis, but in an expedited manner pursuant to the proposed delegated authority provision?*

*12 For tender offers conducted under Canadian law, an additional option exists. The rules under the Multijurisdictional Disclosure System ("MJDS") with Canada permit bidders for the securities of Canadian foreign private issuers to conduct cash tender offers and exchange offers in the United States on the basis of Canadian regulations and disclosure standards.[FN51] Eligibility is subject to certain conditions, including that U.S. record ownership of the subject class may not exceed 40 percent. Thus, a bidder for the securities of a Canadian foreign private issuer could proceed under the MJDS or the rules proposed today, depending on the level of U.S. ownership of the target securities.

The Tier II exemption would not allow the offer to proceed on the basis of the home country disclosure documents. The 1991 proposals were based on our finding that the disclosure standards applicable to cash tender offers in the United Kingdom were similar to those imposed by the U.S. tender offer rules. We have not, and could not, make this finding with respect to each jurisdiction that would be covered by the Tier II exemption. In addition, there appears to be little need for this relief, since we have not been required to grant exemptive relief with respect to the disclosure requirements of Schedule 14D-1. Bidders typically do not need regulatory relief when the target's home jurisdiction simply requires more disclosure than our rules, or vice versa. We believe that we can resolve problems caused by conflicts between the different disclosure standards of different jurisdictions on a case-by-case basis, through our comment process. Compliance with U.S. disclosure requirements also is appropriate in light of the relief proposed for Tier I offers; only offers for foreign private issuers with more than 10 percent of their shares held in the United States would be subject to our disclosure standards.

> *Q9. Are there particular disclosure items under Schedule 14D-1 or other tender offer rules that should be the subject of exemptive relief? For example, should offers conducted pursuant to the Tier II exemption remain, as proposed, subject to the Commission's going private disclosure requirements?*

The proposed exemption also does not provide relief from the U.S. dissemination standards.[FN52] This requirement is appropriate since the dissemination of information does not appear to impose significant burdens.

> *Q10. Are there aspects of the U.S. dissemination requirements that create conflicts with foreign requirements or practice or are otherwise unduly burdensome in the case of predominantly foreign offers?*
>
> *Q11. We request comments on whether the 40 percent threshold is appropriate. Is a 30 percent threshold more appropriate? Should an offer for any foreign private issuer be excluded from the Tier II exemption whenever the primary trading market for the subject security is in the United States?*

2. Scope of Tier II Exemptive Relief

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,   Release No. 40678,   Release No. 33-7611,   Release No.                   Page 14
34-40678,   Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

a. Commencement of an Offer
**\*13** The U.S. tender offer rules applicable to third-party cash offers for registered equity securities require a bidder to file
with the Commission and to disseminate a mandated disclosure document within five business days of a public
announcement of the significant terms of the offer.[FN53] Some foreign jurisdictions, however, require a bidder to publicly
announce its intention to make a tender offer even though the bidder is not yet prepared to commence the offer.[FN54] In
addition, the subject company triggers an obligation to file a Schedule 14D-9 by making an announcement that could be
deemed to be a recommendation or solicitation with respect to the offer.[FN55]

The proposed exemption provides that an offer would commence only upon mailing or publishing the offer, even if the
bidder makes a public announcement that would otherwise trigger the commencement requirements under the U.S. tender
offer rules, as long as the announcement:
    (1) is required by home jurisdiction law or practice;
    (2) contains no information beyond the requirements of the home jurisdiction law or practice;
    (3) if disseminated in written form in the United States, contains a legend noting that the offer will not commence until
    the bidder mails or publishes the offering document, which may not occur for a specified period, as permitted by the
    home jurisdiction; and
    (4) any offer documents are mailed no later than 30 days following the announcement or the bidder makes a public
    announcement if it decides not to commence the offer.
In addition, anyone making such an announcement would not be making a solicitation or recommendation with respect to the
offer within the meaning of Rule 14d-9. Requirements (1), (2) and (4) were contemplated in the 1991 proposed U.K.
Exemptive Order. Requirement (3) was not contemplated in the 1991 proposed U.K. Exemptive Order.

Including the legend on the announcement when disseminated into the United States will ensure that U.S. investors are aware
that commencement of the offer may be delayed. The 30-day maximum time limit for mailing the offer documents will
ensure that there is not a significant delay in mailing the materials. This requirement is consistent with the U.K. requirement
that the materials be mailed within 28 days of the announcement.[FN56]
    *Q12. We request comment on whether it is necessary to require that offers commence within 30 days of announcement.
    Is a different time period more appropriate? Further, would the proposed legend concerning the delay in commencement
    add meaningful protection for U.S. investors?*

b. Withdrawal Rights
Under U.S. law, the bidder must permit tendering security holders to withdraw shares throughout the term of the offer,
including any extension, and even following the close of the offer if the bidder has not accepted the tendered securities for
payment within 40 days after the commencement of the offer.[FN57] As highlighted in previous Commission exemptive orders
and the 1991 proposed U.K. Exemptive Order, U.S. withdrawal rights may conflict with withdrawal rights available to
security holders in other jurisdictions.

**\*14** Under the U.K. City Code, for example, the bidder must provide security holders the right to withdraw previously
tendered shares only if an offer does not become "unconditional as to acceptances" within 21 days after the first closing date
of the initial offer.[FN58] The City Code also requires that an offer remain open for at least 14 days after going unconditional as
to acceptances and that shares be immediately purchased once the offer goes wholly unconditional.[FN59] Allowing withdrawal
rights after the offer has received the required level of acceptances would jeopardize the regulatory policy embodied in the
City Code that offers may not proceed unless the bidder obtains control in the offer.

Since 1991, the Commission has consistently granted relief from the U.S. withdrawal rights requirements in U.K. offers
during the mandatory extensions following the offer going wholly unconditional. Withdrawal rights are less important at this
stage in the offer, because shares could have been purchased by the bidder at that time under U.S. law (i.e., when all
conditions have been met). U.S. law does not require the bidder to extend the offer after obtaining its minimum acceptance
level.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,   Release No. 40678,   Release No. 33-7611,   Release No.                    Page 15
34-40678,   Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

Under the Tier II exemption proposed today, the bidder could terminate withdrawal rights before the expiration of the offer if
the offer is for all outstanding shares[FN60] and if the bidder:
 (1) satisfies or waives all conditions to the offer;
 (2) satisfies all minimum time periods;
 (3) extends withdrawal rights during all minimum time periods;
 (4) accepts and promptly pays for all previously tendered securities; and
 (5) immediately accepts and promptly pays for all securities tendered thereafter.[FN61]
If the bidder satisfies all these conditions, and if it has previously advised U.S. security holders of the possibility of early
termination, the bidder may terminate withdrawal rights even if a previously announced voluntary extension of the initial
offering period has not expired.[FN62]

This exemption provides relief from the requirement that withdrawal rights be extended throughout the term of the offer and
the requirement that withdrawal rights be provided if the securities have not been accepted for payment within 40 days after
commencement of the offer.
 *Q13. Should bidders be permitted to terminate withdrawal rights earlier than the satisfaction of certain conditions, such
 as before governmental regulatory approval? Should we consider requests for this relief on a case-by-case basis rather
 than incorporating it into the Tier II exemption?*

### c. All-Holders/Best Price
The U.S. rules require that a bidder open the tender offer to all security holders and that the consideration paid to any security
holder be as high as the consideration paid to any other security holder (the "all-holders/best price rule").[FN63] The
Commission has issued exemptive relief from this requirement to permit a bidder to divide its offer into two separate offers.
The U.S. offer would comply with the U.S. regulatory scheme and the non-U.S. offer would comply with the home
jurisdiction rules. The bidder would exclude U.S. security holders from the foreign offer and limit the U.S. offer to U.S.
security holders.[FN64] We have also granted relief when bidders have offered a "loan note" alternative (a form of installment
payment common in U.K. offers) only to U.K. security holders and not to U.S. security holders.[FN65] The loan notes provide
certain U.K. tax benefits that are not applicable to U.S. security holders. Therefore, it is not necessary to offer U.S. security
holders that alternative. The proposed Tier II exemption would extend both kinds of relief to all offers eligible for the
exemption.

**\*15** The proposed Tier II exemption would not address the situation where the bidder seeks to offer cash-only consideration
to U.S. security holders to avoid registering the exchange offer under the Securities Act. This would include the device of
"vendor placements," where U.S. security holders receive a cash payment that is funded by the sale into the market overseas
of any securities received in the offer.[FN66] In adopting the all-holders rule, we contemplated that, under appropriate
circumstances, we would grant requests for relief in connection with exchange offers by foreign bidders.[FN67] This relief
would permit U.S. security holders to receive cash, rather than the bidder's securities which would trigger the registration
requirements of the Securities Act. We have demonstrated in numerous registered exchange offers, both negotiated and
hostile, that the registration requirements of the Securities Act are not an insurmountable obstacle to meeting foreign time
schedules. Moreover, relief may be unnecessary because foreign regulators may not permit bidders to offer U.S. security
holders cash-only consideration when that consideration is not offered to all holders. We will continue to address these kinds
of relief on a case-by-case basis.
 *Q14. We request comments on whether the Tier II exemption should include relief permitting a bidder to offer cash,
 rather than securities, to U.S. security holders. Would the need to treat U.S. security holders differently be greatly
 diminished if we adopt proposed Rule 802?*

### d. Notice of Extensions
Under the U.S. tender offer rules, all tender offers must remain open for a minimum of 20 business days, subject to
mandatory extensions for changes in the terms of the offer.[FN68] Today's proposals do not provide relief from the duration and
extension requirements. We are not aware of jurisdictions where the U.S. duration and extension periods conflict with those
of the home jurisdiction. Some home jurisdiction regulations permit a shorter time period.[FN69] But in our experience, those

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.             Page 16
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

home jurisdiction rules do not prohibit the bidder from keeping the offer open or extending the offer for a longer period of time.

> *Q15. Is there a need for relief from the minimum offering and extension period requirements of the U.S. tender offer provisions?*

Under the U.S. tender offer rules, if a bidder determines to extend an offer beyond a scheduled expiration date it must publish a notice of the extension by the beginning of the next business day.[FN70] The proposed Tier II exemption would permit bidders to announce extensions of the offer in accordance with the practices of the home jurisdiction, rather than prior to the commencement of trading on the next business day as required by U.S. rules. We are aware of situations when the U.S. rules conflict with those of the home jurisdiction, such as when the tabulation process requires more time for the bidder to decide whether to extend an offer.[FN71]

e. Prompt Payment for or Return of Tendered Securities

**\*16** After expiration of an offer, U.S. tender offer rules require an offeror to promptly pay for, or return, tendered securities.[FN72] This "prompt" payment standard is satisfied if payment is made in accordance with normal settlement periods. Under T+3 settlement requirements, that period is now three trading days in the United States.[FN73] In the United Kingdom, for example, once the bidder is allowed to purchase tendered securities, payment must be made within 14 calendar days.[FN74] We have granted relief from the prompt payment rule in many exemptive orders.[FN75] The Tier II exemption would make prompt payment relief available so long as the bidder pays for the securities in accordance with the home country's requirements.

f. Reduction of Minimum Condition

The U.S. rules require that at least five business days remain in an offer following the waiver of the minimum tender condition. This permits investors to learn of, and react to, this material change to the offer.[FN76] The concern is that certain security holders may want to withdraw if the bidder lowers the minimum condition, while others may want to tender into the offer.

In the United Kingdom, it is common for the bidder to reduce the minimum condition from 90 to 51 percent, once all other conditions to the offer are satisfied, and immediately purchase the tendered securities. Under the City Code, the offer then must remain open for 14 days (the "Subsequent Offering Period"). During the Subsequent Offering Period, the offer is open for acceptances, but not withdrawals.[FN77] Bidders anticipate that during the Subsequent Offering Period, sufficient tenders will come in to satisfy the 90 percent minimum condition. The 90 percent minimum condition is important to achieve because that is the amount required to conduct a compulsory acquisition.

Purchasing securities immediately after the reduction or waiver of the minimum condition is inconsistent with the U.S. tender offer requirements. To address this conflict, we have permitted a bidder in a cross-border tender offer to reserve the right to reduce the 90 percent condition and announce this reservation by press release and advertisement in a U.S. newspaper of national circulation at least five business days before any reduction.[FN78] Since bidders must disclose that they are reserving the right to reduce the minimum condition five days before they reduce it, security holders have sufficient time to withdraw their securities. Those security holders wishing to tender into the offer once the minimum condition is lowered will be able to tender during the Subsequent Offering Period.[FN79] Bidders believe this relief is necessary because they will not know before the expiration date whether to reduce the minimum condition, since many holders do not tender until the last day of the offer. They would only reduce the minimum condition if the number of tenders on such date is close to the 90 percent level and they believe they will get to the 90 percent level during the Subsequent Offering Period.

**\*17** We will not object if bidders meeting the requirements for the Tier II exemption reduce or waive the minimum acceptance condition without extending withdrawal rights during the remainder of the offer (unless an extension is required by Rule 14e-1), if the following conditions are met:

> • The bidder must announce that it may reduce the minimum condition five business days prior to the time that it reduces the condition. A statement at the commencement of the offer that the bidder may reduce the minimum condition is insufficient;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,   Release No. 40678,   Release No. 33-7611,   Release No.                    Page 17
34-40678,   Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

• The bidder must disseminate this announcement through a press release and other methods reasonably designed to inform U.S. security holders, which could include placing an advertisement in a newspaper of national circulation in the United States;
• The press release must state the exact percentage to which the acceptance condition may be reduced and state that a reduction is possible. The bidder must declare its actual intentions once it is required to do so under the regulations of the home jurisdiction;
• During this five-day period, security holders who have tendered their shares in the offer will have withdrawal rights;
• This announcement must contain language advising security holders to withdraw their shares immediately if their willingness to tender into the offer would be affected by a reduction of the minimum acceptance condition;
• The procedure for reducing the minimum condition must be described in the offering document; and
• The bidder must hold the offer open for acceptances for at least five business days after the satisfaction of the minimum acceptance condition.

D. Other Rules Governing Tender Offers

1. Rule 10b-13
We are proposing to amend Rule 10b-13 under the Exchange Act to facilitate the inclusion of U.S. security holders in tender offers for foreign securities.[FN80] Rule 10b-13 prohibits a person who is making a tender or exchange offer from purchasing or arranging to purchase, directly or indirectly, the security that is the subject of the offer (or any security that is immediately convertible into or exchangeable for the subject security) otherwise than pursuant to the offer.[FN81] The rule's prohibitions apply from the time of public announcement of the offer until the time the bidder is required, pursuant to the offer's terms, either to accept or reject the tendered securities. Rule 10b-13 protects investors by preventing a bidder from extending greater or different consideration to some security holders by offering to purchase their shares outside the offer, while other security holders are limited to the offer's terms.[FN82] The rule applies to the bidder, whether the bidder is the issuer or a third party, the bidder's affiliates, and the offer's dealer manager.[FN83]

Many foreign jurisdictions do not expressly prohibit a bidder from purchasing or arranging to purchase the subject security outside the terms of the offer. A number of these jurisdictions, however, do require that the bidder provide consideration to tendering security holders that is equivalent to the higher of the offer price and the highest price paid to any person whose securities were purchased outside the terms of the offer.[FN84] This means that tendering security holders will receive the benefit of any higher prices paid for securities outside the offer. In contrast, Rule 10b-13 is premised in part on the view that because of the time value of money, persons whose shares are purchased before payment is made in the offer receive a consideration different from that received by tendering security holders, even if they receive the same per share price.[FN85] Nevertheless, the requirement that bidders pay in the offer the highest price paid for shares purchased outside the offer is similar to the requirement in Rules 14d-7 and 13e-4(f)(4) under the Exchange Act that the highest consideration paid to any security holder pursuant to a tender offer be paid to all security holders that tender into the offer.

*18 A strict application of Rule 10b-13 in some cases could disadvantage U.S. security holders. For example, a bidder may decide to exclude U.S. security holders from the offer when Rule 10b-13 would (1) preclude purchases outside the offer; and (2) the participation of U.S. security holders is not necessary to the success of the offer. In that circumstance, flexible application of Rule 10b-13 is necessary and appropriate to encourage bidders for the securities of foreign private issuers to extend their offers to U.S. security holders. At the same time, any relief extended to foreign tender offers should be limited to circumstances that do not undermine the investor protection goals of Rule 10b-13.

We have some experience in balancing these objectives. We issued an exemption from Rule 10b-13 in 1991 for tender or exchange offers relying on the MJDS with Canada.[FN86] That exemption recognizes that Canadian procedures applicable to tender offers afford a large measure of the protections provided by Rule 10b-13.[FN87] Additionally, in the 1991 proposals, we sought comment on whether we should provide an exemption from Rule 10b-13 to bidders of foreign securities when certain conditions are satisfied. Although the 1991 proposals were not adopted, the Commission has granted a number of exemptions from Rule 10b-13 to accommodate cross-border tender offers. These exemptions were subject to provisions pertaining to recordkeeping and compliance with applicable tender offer laws or regulations, as well as the conditions suggested in the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1991 proposals that:
(1) the U.S. offering documents prominently disclose the possibility of any purchases or arrangements to purchase the subject security (or certain related securities), or the intent to make such purchases, otherwise than pursuant to the terms of the tender offer;
(2) the bidder discloses in the United States information regarding such purchases to the extent such disclosure is made pursuant to the home jurisdiction's rules governing tender offers; and
(3) such purchases are made outside the United States.[FN88]

For tender or exchange offers that are substantially foreign in character, we preliminarily believe that allowing U.S. security holders to participate in these offers outweighs the benefits derived from applying Rule 10b-13 to such offers. Commenters on the 1991 proposals supported this view. They stated that relief from Rule 10b-13 is appropriate for tender offers that are essentially foreign in character, especially if any such exemption is consistent with the relevant laws, rules, and practices of the foreign jurisdiction governing the offer.[FN89] Based on our experience in granting exemptions under Rule 10b-13 in the context of foreign tender offers, we believe that relief from Rule 10b-13 would be appropriate within the context of the two-tiered structure proposed in this release to accommodate cross-border offers.

We propose to amend Rule 10b-13 to include an exception for Tier I tender or exchange offers, subject to the conditions that:
    *19 (1) the U.S. offering documents disclose prominently the possibility of any purchases, or arrangements to purchase, or the intent to make such purchases otherwise than pursuant to the terms of the tender or exchange offer;
    (2) the bidder discloses information in the United States regarding such purchases in the United States in a manner comparable to disclosure made in the home jurisdiction; and
    (3) the purchases comply with the applicable tender offer laws and regulations of the home jurisdiction.

This proposed limited exception under Rule 10b-13 for Tier I tender offers largely represents a codification of the conditions contained in the exemptions previously granted by the Commission. The exception, however, would be limited to offers where U.S. persons held of record 10 percent or less of the class of securities sought in the offer.

Unlike in the 1991 proposed exemption, we are not proposing to limit the exception to purchases that are made outside the United States. Under the new proposals, in Tier I offers bidders could purchase target securities, subject to the conditions noted above, in transactions in the United States that otherwise would be prohibited under Rule 10b-13.[FN90]

We are not proposing an exception to Rule 10b-13 for Tier II offers because of the greater U.S. interest in those offers. We believe that we should continue to review requests for relief from Rule 10b-13 for offers other than Tier I-eligible offers on a case-by-case basis.[FN91] In that context, we will consider factors such as proportional ownership of U.S. security holders of the target security in relation to the total number of shares outstanding and to the public float; whether the offer will be for "any-and-all" shares or will involve prorationing; whether the offered consideration will be cash or securities; whether the offer will be subject to a foreign jurisdiction's laws, rules, or principles governing the conduct of tender offers that provide protections comparable to Rule 10b-13; and whether the principal trading market for the target security is outside the United States. This approach would comport with the Commission's action in a recent cross-border offer involving a U.K. target company with substantial U.S. ownership.[FN92]

In our view, the proposed exception to Rule 10b-13 will simplify the procedural requirements for foreign tender or exchange offers and further promote the extension of such offers to U.S. security holders, without compromising the investor protections of Rule 10b-13.
    *Q16. We solicit comments on the proposed exemption for Tier I offers generally, and whether:*
    *(1) as suggested in the 1991 proposal, relief from Rule 10b-13 should be granted only for purchases made outside the United States;*
    *(2) the exception should be subject to an express requirement that either the governing tender offer statute or rules contain, or the offer itself provides for, a provision that if the price paid to security holders outside the offer is higher than the tender offer price, the higher price will be offered to all security holders;*
    *\*20(3) the exception should be limited to offers for all outstanding securities, on the basis that shares purchased outside*

*a partial offer would not be subject to prorationing and therefore may be made on terms materially different from shares purchased in the offer;*
*(4) the exception should be limited to cash tender offers, on the basis that purchases outside an exchange offer would be made for a form of consideration that may be materially different from the offer's consideration; and*
*(5) the exception should be limited to offers for the securities of foreign private issuers with no more than 10% U.S. holders of record, or permit a higher percentage of U.S. record holders, e.g., 20%, 30% or 40%. If the level of permissible U.S. ownership is increased, should the exception contain additional conditions, such as limiting its availability to all cash, any-and-all offers; requiring the offer to comply with foreign tender offer rules providing protections comparable to Rule 10b-13; and/or requiring that the principal market for the security be outside the United States?*

We recently granted a limited class exemption under Rule 10b-13 to permit "connected exempt market makers" and "connected exempt principal traders," as defined by the City Code, to continue their U.K. market making activities during a cross-border offer that is subject to the City Code.[FN93] Under the City Code, connected exempt market makers and connected exempt principal traders are market makers or principal traders that are affiliated with the bidder's advisors (Eligible Traders). Without Rule 10b-13 relief, Eligible Traders would be forced to withdraw from trading in U.K. target securities, with possible adverse consequences for the liquidity of those securities. This limited class exemption recognizes the information barrier and other requirements contained in the City Code that Eligible Traders must satisfy to be exempt from the City Code's "acting in concert" provisions.[FN94] To rely on this exemption, the Eligible Trader must comply with specified disclosure and recordkeeping requirements and is prohibited from making purchases in the United States, which are consistent with conditions contained in other Rule 10b-13 exemptions granted in the cross-border context.

We propose to codify this class exemption. The proposed Rule 10b-13 amendment for Eligible Traders would not be limited to offers where U.S. record ownership is 10 percent or less of the class of securities sought in the offer. It also applies to offers where U.S. record ownership exceeds 10 percent, but is not greater than 40 percent. The proposed amendment, however, would not provide relief under Rule 10b-13 to bidders or anyone acting on behalf of bidders (such as advisors and other nominees or brokers).

The proposed amendment for Eligible Traders is subject to the following conditions:
    (1) the issuer of the target security is a "foreign private issuer," as defined in Rule 3b-4(c) under the Exchange Act;
    *21 (2) the tender or exchange offer is subject to the City Code;
    (3) the Eligible Trader is a "connected exempt market maker" or "connected exempt principal trader," as those terms are used in the City Code;
    (4) the Eligible Trader complies with the applicable provisions of the City Code; and
    (5) the offering documents disclose the identity of the Eligible Trader and describe how U.S. security holders can obtain information regarding an Eligible Trader's market making or principal purchases to the extent such information is required to be made public under the City Code.
        *Q17. We solicit comments on the proposed exception for U.K. Eligible Traders, including whether this exception should be available during any offer for a U.K. target or limited, e.g., to Tier I offers.*
        *Q18. Is it necessary to include the condition requiring that U.S. holders be able to obtain information regarding Eligible Traders' purchases to the extent such information is required to be made public in the United Kingdom?*
        *Q19. Additionally, we seek comments on whether it is appropriate to exclude from Rule 10b-13's application transactions by any market makers, including U.S. market makers, that are subject to restrictions similar to those imposed by the City Code. Should Rule 10b-13 incorporate the connected market maker concepts of the City Code and provide an exclusion where there is an information barrier between the dealer-manager and the affiliated market maker, and public disclosure is made during the offer of the total amount of shares purchased in market making transactions and of the highest price paid for those shares?*

2. Regulation M
In December 1996, the Commission adopted Regulation M.[FN95] Regulation M imposes trading restrictions on issuers and broker-dealers participating in exchange offers or rights offerings that are "distributions," generally from the day offering

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.                     Page 20
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

materials are disseminated until the end of the distribution.[FN96] At this time, we are not proposing an exemption to Regulation M for cross-border exchange offers, whether qualifying for the registration exemption under proposed Rule 802 or the proposed Tier I or Tier II exemptions from the U.S. tender offer provisions, or for cross-border rights offerings qualifying for the registration exemption under proposed Rule 801. We preliminarily believe we should evaluate the need for exemptions from Regulation M after we gain experience with the Regulation's operation in the context of those offerings. To date we have had very limited experience with the application of Regulation M to exchange offers for foreign equity securities or rights offerings involving foreign securities. The limited number of requests for relief in these contexts suggests that Regulation M may not be an impediment to these kinds of transactions and that exemptions from its provisions may be unnecessary.[FN97]

> Q20. Are exemptions from various rules under Regulation M necessary to accommodate cross-border rights offerings or exchange offers conducted pursuant to proposed Rules 801 or 802? Commenters should provide reasons why such exemptions would be necessary and the scope of any conditions that should be imposed.

### E. Exemption from the Securities Act for Exchange Offers, Business Combinations, and Rights Offerings

#### 1. Summary

**\*22** Today's proposals also provide exemptions from Securities Act registration requirements for securities issued to U.S. security holders of a foreign private issuer in exchange offers, business combinations, and rights offerings. These exemptions are being proposed as Rule 801 for rights offerings and Rule 802 for business combinations and exchange offers. The exemptions are available only if the target company (or the issuer in an issuer tender offer or rights offering) is a foreign private issuer and U.S. security holders hold of record no more than five percent of the subject securities. The exemptions proposed today differ from the 1991 proposals in that they no longer impose a dollar limitation on the amount of securities to be issued. In addition, there are no proposals to permit registration of such offerings based on home country disclosure.[FN98]

Since the issuance of the 1991 proposals, we have facilitated the inclusion of U.S. security holders in exchange offers, business combinations and rights offerings by reviewing registration statements concerning these transactions on an expedited basis and by permitting certain accommodations when necessary and prudent for the protection of U.S. security holders.[FN99] An exemption from the registration requirements appears necessary to ensure that U.S. security holders can participate fully in these offers for foreign companies. An exemption is particularly necessary when the percentage of shares held in the United States is small.

Based on our experience in reviewing registered exchange offers, business combinations, and rights offerings involving foreign registrants, however, we have determined not to propose a home-country based registration system. The disclosure and accounting standards of foreign jurisdictions are not always consistent with the level of prospectus disclosure required in a registered offering under the Securities Act. Instead, we believe that any accommodation under the Securities Act should be limited to circumstances when the proportional U.S. interest in the transaction is insignificant, and U.S. participation is not essential to its success. In those situations, extending the transaction to U.S. security holders is unlikely to be an attempt to raise capital or develop a market for the offeror's securities in the United States. Rather, U.S. investors would benefit by participating in what is otherwise an offshore transaction. Our preliminary view is that these exemptions would be appropriate and in the public interest, because they would promote including U.S. security holders in exchange offers, rights offerings and business combinations.

When the percentage of U.S. ownership is significant, registration of the exchange offer, business combination or rights offer under U.S. disclosure and accounting standards is both appropriate and, in virtually all instances, cost effective and feasible. When the percentage of U.S. ownership is not significant, it is appropriate to exempt these offers from the registration requirements, conditioned on satisfaction of minimal offeror and transactional requirements. Although companies conduct rights offerings to raise capital, full prospectus disclosure may be less necessary because the offerees should already be familiar with the issuer and the securities being offered. In any event, the fact that a company must offer the securities only to existing security holders on a pro rata basis and the requirement that the rights may not be transferred in the United States should ensure that the offering will not serve as a means to develop a U.S. market interest.

> **\*23** Q21. Comment is solicited as to whether these Securities Act exemptions are necessary and appropriate. Should the

Release No. 7611,   Release No. 40678,   Release No. 33-7611,   Release No.                         Page 21
34-40678,   Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

*other proposals proceed without the proposed Securities Act exemptions?*

The proposed exemptions are not available for any transaction or series of transactions that technically complies with the exemptions but is part of a plan or scheme to evade the registration provisions of the Securities Act.[FN100] For example, if the exchange offer or rights offering is a sham, the exemptions would not be available.

2. Eligibility Conditions

a. Transactional Eligibility Requirements

i. Common Requirements for Exchange Offers, Business Combinations and Rights Offerings

a) U.S. Ownership Limitation
Under today's proposals, exchange offers, business combinations, and rights offerings would be exempt from registration under the Securities Act, so long as U.S. security holders own of record five percent or less of the foreign company's securities that are the subject of the offer.[FN101] When U.S. security holders own five percent or less of the issuer, U.S. participation is generally not necessary for the success of the offer.

   *Q22. Comment is requested on whether five percent is the appropriate threshold. Would an exemption set at 10 percent or as low as one percent be appropriate and consistent with the protection of investors? Is the five percent threshold too low for small businesses whose offerings are small? Is it too high for large companies, whose offerings are correspondingly large?*

Unlike the 1991 proposals, we have not based today's proposal on an absolute dollar limit. The $5 million threshold we proposed in 1991 reflected the maximum dollar offering that the Commission could exempt under Section 3(b) of the Securities Act. With the recent addition of general exemptive authority under Section 28 of the Securities Act, we have greater flexibility to base the exemptions on a higher dollar ceiling, the percentage of outstanding securities held in the United States, or other relevant factors.[FN102] A number of commenters on the 1991 proposals urged us to use any new authority to increase the permitted amount of securities offered under the proposal. They argued that $5 million was too low to make the proposed exemptions meaningful.

We are proposing not to limit the scope of the exemptions by a dollar amount because we believe limiting the exemptions to transactions with no more than five percent U.S. participation effectively eliminates the risk that the exemptions will be abused. Without a dollar limitation, however, the exemptions could result in a significant amount of securities entering the U.S. public markets and affecting a large number of investors without registration. The larger the target company, the greater the potential impact of such an offering on U.S. security holders. For these reasons, we are considering imposing a dollar limitation as well as the percentage limitation.

   *24Q23. Should Rules 801 and 802 be limited by a dollar ceiling of $5, $10 or $20 million? Should an issuer be allowed to issue up to, for example, $5, $10 or $15 million regardless of the amount of U.S. holdings? Should the test be in the alternative, for example, $10 million or five percent U.S. holdings, whichever is higher? Or lower?*

b) Equal Treatment
The terms and conditions of the offer must be the same for U.S. and foreign security holders, subject to certain exceptions similar to the Tier I exemption under the tender offer provisions.

c) Transfer Restrictions
Proposed Rules 801 and 802 impose certain restrictions on the transferability of the securities that an acquiror may issue in exchange offers or business combinations or the equity securities that may be purchased pursuant to Rule 801 upon the exercise of the rights. We preliminarily believe that the securities that may be purchased upon the exercise of the rights should be restricted within the meaning of Rule 144.[FN103] This restriction will help ensure that foreign companies will not use rights offerings to create a market in the United States.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,   Release No. 40678,   Release No. 33-7611,   Release No.                     Page 22
34-40678,   Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

If the securities that are the subject of the transaction made pursuant to Rule 802 are "restricted securities" under Rule 144, then securities acquired in the transaction will be "restricted securities."[FN104] Conversely, if the securities that are the subject of the transaction made pursuant to Rule 802 are unrestricted, then securities acquired in the transaction will be unrestricted. In the latter case, the securities would be freely tradable by non-affiliate security holders, so long as they are not participating in the offer under circumstances in which they could be deemed statutory underwriters. Particularly in the case of exchange offers, requiring unaffiliated U.S. security holders to accept restricted securities in exchange for their unrestricted securities, seems unjustified. The fact that no more than five percent of the subject company's securities may be held in the United States should minimize the potential that Rule 802 will be misused as a means to conduct distributions in the United States, and should eliminate the need to classify securities issued under Rule 802 as restricted securities.

> *Q24. We request comments on whether the potential for abuse, including an unregistered distribution of the acquiror's securities, should require that all securities issued under Rule 802 be deemed restricted securities for purposes of Rule 144 under the Securities Act.*
>
> *Q25. Will making Rule 801 securities restricted impose monitoring and other procedural obligations that will deter reliance on the rule? For example, will the fact that the foreign issuer may have to establish a separate restricted American Depositary Receipt ("ADR") facility and monitor withdrawals from that facility deter reliance on the exemption?*

## ii. Additional Requirements for Rights Offerings

As with the 1991 proposals, Rule 801 as proposed today would be available only for rights offerings of equity securities made on a pro rata basis to existing security holders of the same class, including holders of ADRs evidencing those securities. Foreign companies generally make rights offerings only with respect to outstanding equity securities of the same class. We propose to limit Rule 801 to the offer of securities of the same class of securities as those held by the offerees, because the offerees already have made the decision to invest in that class.[FN105]

*25 Proposed Rule 801 would be available only for all-cash transactions and would additionally require that the rights granted to U.S. security holders not be transferable except offshore in accordance with Regulation S.[FN106] The rights offering exemption being proposed today is not intended to permit foreign private issuers to extend offerings to new investors in the United States.

> *Q26. We request comments on whether this limitation on transferability is appropriate.*

## b. Offeror Eligibility Requirements

### i. Exchange Offers/Business Combinations

Like the 1991 proposals, Rule 802 as proposed does not contain any limitations based on the domicile or reporting status of the offeror. Any offeror can use proposed Rule 802 regardless of whether it is a U.S. company or a foreign private issuer and regardless of whether it is a reporting company. The target company, however, must be a foreign private issuer. Limiting the exemption to foreign private issuers would require a U.S. bidder for the securities of a foreign target to register the U.S. portion of an exchange offer. This would place a U.S. bidder, particularly a non-reporting U.S. company, at a competitive disadvantage to a foreign bidder for the same company.

> *Q27. Is it appropriate or necessary to allow U.S. companies, including reporting companies eligible to use the Form S-3 short form registration statement, to rely on the exemption? Should Rule 802 be available to a domestic company only when there is a competing bid for the target's securities?*

We are considering adopting offeror eligibility requirements to address the concern that start-up companies would use Rule 802 to issue a significant amount of securities in the United States without complying with the registration requirements of the Securities Act.

> *Q28. Should an offeror seeking to rely on Rule 802 have to be a reporting company under Section 13(a) or 15(d) of the Exchange Act[FN107] at the time the exchange offer or business combination is first offered to U.S. security holders?*
>
> *Q29. Should we impose a minimum reporting history, either as an Exchange Act reporting company or as a listed company on a recognized foreign securities exchange or market?*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.                Page 23
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

*Q30. Should we require that either the target security, the security to be issued, or both, be listed on an established U.S. or foreign securities exchange and have a minimum public float such as $50 million, $100 million or $150 million? This may ensure U.S. security holders a degree of liquidity if they are unwilling to accept the consideration offered in the exchange offer or business combination and would prefer to sell the investment into the public markets.*

ii. Rights Offerings

Proposed Rule 801 requires that the offeror be a foreign private issuer. It does not impose any other issuer eligibility requirements. As originally proposed in 1991, Rule 801 contained additional offeror eligibility requirements, including that the offeror satisfy certain information and listing requirements.[FN108] The Commission intended those proposed offeror eligibility requirements, in part, to prevent start-up companies or insubstantial issuers from using the exemption to raise capital in the United States without complying with Securities Act registration requirements. The requirements also were intended to assure that information about the offeror would be publicly available to investors in the United States, including at a minimum, information the issuer makes public in its home country.

**\*26** We believe that investor protection should be served by facilitating U.S. security holders' participation in a rights offering for securities of any foreign private issuer with which the investor is already familiar, without narrowing those offerings with additional offeror criteria. The anti-fraud and other civil liability provisions of the federal securities laws will apply and should provide protection with regard to the disclosure investors receive in such offerings.

*Q31. We solicit comments on whether it is appropriate or necessary to retain any or all of the offeror eligibility requirements that the Commission originally proposed in 1991 in connection with Rule 801. If so, is it appropriate to provide for a size-of-issuer test as an alternative to requiring a three-year listing history on a designated foreign market for determining the eligibility of non-reporting issuers?*

*Q32. Should the alternative test be based on the offeror's public float, as previously proposed, or on its net assets, net worth, or on average daily trading volume?*

*Q33. Should the previously proposed minimum public float of $75 million be reduced, for instance, to $50 million, or be raised to $100 million or $150 million?*

*Q34. Is it appropriate or necessary to limit the exemption to reporting companies?*

c. Informational Requirements

Rules 801 and 802 would not mandate that specific information, including offering circulars, be sent to U.S. security holders. Instead, when any document, notice or other information is provided to offerees, copies (translated into English) must be provided to U.S. security holders. If, instead of delivering documents to offerees outside the United States, the offeror publishes information regarding the offering outside the United States, then the offeror may satisfy the information dissemination requirement by delivering written copies of the publication or advertisement (in English) to U.S. offerees. Because U.S. publication of the exempt offer creates the potential for stimulating a U.S. market interest in the offeror's securities, we are proposing to require actual delivery of the offering materials to U.S. holders in rights offerings.[FN109] Because it is a common practice in this country to publish exchange offers, however, we are requiring publication rather than actual delivery for transactions exempt under proposed Rule 802. Proposed Rules 801 and 802 both require that the offeror must provide the notice or offering document to U.S. security holders at the same time it provides the information to offshore offerees.

*Q35. Should issuers relying on Rules 801 and 802 be required to prepare and physically deliver some form of prospectus or offering circular? In the absence of such a document, should the issuer be required to deliver its latest annual report containing audited financial statements?*

To enable us to monitor the operation of the exemptions, Rules 801 and 802 as proposed also would require that an offeror submit a notification to the Commission on proposed new Form CB. The new form will include as an attachment a copy of any document, notice or other information mailed to U.S. offerees. A foreign company must contemporaneously file a Form F-X when it submits the Form CB.[FN110] The exemptions would also require that a legend be included in the offering document or notice stating that the offer is being conducted pursuant to home jurisdiction disclosure requirements, and that those requirements may differ from the U.S. disclosure requirements, including financial statement requirements.

**\*27**Q36. *Is this notification submission necessary, and, if so, should the notification, as proposed, attach a copy of any*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*disclosure documents required to be filed or delivered pursuant to the home jurisdiction regulatory requirements?
Q37. Should bidders relying on the Tier I exemption for cash tender offers be required to include a legend on the
offering materials similar to the legend proposed for rights offerings and exchange offers?*

d. Rule 802 Eligible Securities-Trust Indenture Act Exemption
We are not proposing any restrictions on the type of securities that an issuer could offer in reliance on proposed Rule
802.[FN111] Therefore, the rules proposed today will permit offerors to offer debt securities in an exchange offer or business
combination for the subject company's equity or debt securities. The issuance of debt securities ordinarily requires
qualification of an indenture under the Trust Indenture Act, unless the debt securities are exempt from the qualification
requirements pursuant to Section 304 under that Act.[FN112]

Qualification of an indenture assures the debtholders of the services of an independent trustee having certain qualifications
and lacking conflicts of interest. The Trust Indenture Act deems a qualified indenture to automatically include certain
protective covenants.[FN113] These mandatory protective covenants give important rights to the debtholders. For example,
debtholders have the right to sue individually for the payment of principal and interest.[FN114] Further, these provisions give
certain powers to the trustee and prohibit certain actions by the trustee, including the preferential collection of certain claims
owed to the trustee by the obligor in the event of default.[FN115] The rules under the Trust Indenture Act require the filing of a
Form T-1, which is the statement of eligibility and qualification of the trustee, and the trust indenture itself.[FN116]

We are again proposing under Section 304(d) of the Trust Indenture Act[FN117] a new rule that would exempt any debt security
issued pursuant to proposed Rule 802 under the Securities Act from having to comply with the provisions of the Trust
Indenture Act. We believe that enforcing the statutory requirement that debt securities be issued pursuant to a qualified
indenture under the Trust Indenture Act is unnecessary when 95 percent or more of the subject securities are outside the
United States and many U.S. investors could lose the chance to participate in these offerings. Therefore, for the same reasons
we believe it is appropriate to exempt exchange offers meeting the requirements of Rule 802 from the registration
requirements of the Securities Act, we also believe that an exemption from the Trust Indenture Act is appropriate and
consistent with investor protection.

The exchange of debt securities will not be integrated with any other offerings by the offeror. This means it would not affect
the availability of the Trust Indenture Act exemption with regard to the issuance of other debt securities.
   ***28**Q38. Is the proposed unconditional exemption from the requirements of the Trust Indenture Act for any debt security
   issued pursuant to Rule 802 necessary or appropriate in the public interest and consistent with investor protection and
   the purposes of that Act? Would it be more appropriate to exempt transactions from the procedural requirements of the
   Trust Indenture Act, such as filing the Form T-1, but still require that the debt securities be issued pursuant to an
   indenture containing some or all of the mandatory protective covenants discussed above? If so, which protective
   covenants should be preserved?*

F. Effect of Reliance on Rule 801 or 802 on the Availability of Other Exemptions
The exemptions contemplated under proposed Rules 801 and 802 are non-exclusive.[FN118] An issuer making an offering in
reliance on either of the proposed rules may claim any other available exemption under the Securities Act. Securities issued
under Rule 801 or Rule 802 would not be integrated with any other exempt offerings by the issuer.[FN119] For example,
security holders who are offered and sold securities in accordance with Rule 801 or Rule 802 would not be counted in the
calculation of the number of purchasers in a subsequent Regulation D offering by the issuer.[FN120] Similarly, the amount of
securities offered in the Rule 801 or Rule 802 transaction would not be included in the aggregate offering price of any
subsequent Regulation D offerings by the offeror.[FN121] Also, information submitted to the Commission pursuant to the
requirements of Rules 801 or Rule 802, or disseminated to investors under those rules would not constitute a "general
solicitation" within the meaning of Regulation D or "directed selling efforts" within the meaning of Regulation S.

The proposed rules relate only to the application of Section 5 of the Securities Act. They have no effect on the anti-fraud or
anti-manipulation provisions of the federal securities laws or provisions of state law relating to the offer and sale of
securities.[FN122] However, the civil liability provisions that relate only to registered offerings, such as Section 11 of the

Securities Act,[FN123] would not apply to these transactions because they would be exempt from registration.

In addition, offerings exempt under proposed Rules 801 or 802 would not trigger a continuous reporting obligation under Section 15(d) of the Exchange Act. Nor would reliance on Rules 801 or 802 disqualify the issuer from the existing Rule 12g3-2(b)[FN124] exemption for foreign private issuers from the registration and reporting requirements of Section 12(g) of the Exchange Act, unless the acquired company was a reporting company.

*Q39. We request comment on whether a foreign private issuer should be precluded from relying on the Rule 12g3-2(b) exemption following an offering under Rule 801 or 802, given that the Rule 12g3-2(b) exemption is intended for issuers that do not access the U.S. capital markets in any significant fashion. Should the issuer become ineligible for the Rule 12g3-2(b) exemption if the Rule 801 or 802 offering exceeds $10 million or some other dollar threshold? Should the same ineligibility result if the foreign private issuer has more than 500 holders of record in the United States after the Rule 801 or 802 offering is completed?*

G. Unavailability of Rules 801 and 802 and the Tender Offer Exemptions for Investment Companies

**\*29** Proposed Rules 801 and 802 would not be available for securities issued by an investment company, whether foreign or domestic, that is registered or required to be registered under the Investment Company Act of 1940 (the "Investment Company Act").[FN125] We have excluded foreign investment companies from the proposed exemptions because the Investment Company Act prohibits foreign investment companies from publicly offering securities in the United States or to U.S. persons.[FN126] We excluded domestic investment companies because, unlike other issuers, an investment company that is registered or required to be registered under the Investment Company Act generally must register the securities that it offers or sells outside the United States.[FN127]

*Q40. Should Rule 802 be available to a closed-end investment company that is registered under the Investment Company Act?*

We believe this exclusion is appropriate for some foreign private issuers that meet the definition of "investment company" contained in Section 3(a) of the Investment Company Act but have not registered with the Commission under that Act. Both foreign and domestic issuers that are excepted from the definition of "investment company" under the Investment Company Act, however, would be permitted to use the exemptions, so long as reliance on the exemptions is consistent with their unregistered status under the Investment Company Act.[FN128] For example, a foreign private issuer that can offer its securities publicly in the United States in reliance on a rule, such as Rule 3a-6 under the Investment Company Act, or pursuant to an individual exemptive order under the Investment Company Act, may use Rule 801 to make a rights offering in the United States or Rule 802 to make an exchange offer or enter into a business combination in the United States.[FN129]

Similar to Rules 801 and 802, the Tier I and Tier II tender offer exemptions will not be available if the target company is an investment company registered or required to be registered under the Investment Company Act. The Commission has not received requests for relief in connection with a tender offer for a foreign investment company. To keep the proposed exemptions as narrow as possible to address conflicts between U.S. and foreign law, the tender offer exemptions would not extend to tender offers for foreign investment companies.

*Q41. Should these exemptions be available when the target company is a foreign investment company?*

H. Determination of U.S. Ownership

1. Definition of U.S. Holder

The term U.S. holder is based on shareholder residence. The term is important under both the Tier I and II exemptions. It is also important in determining the availability of the proposed Securities Act exemptions for cross-border rights offerings and exchange offers under Rules 801 and 802. Relief in each case is conditioned, at least in part, on the percentage of the target company's securities held by U.S. security holders not exceeding a specified threshold.[FN130] The calculation of the target company's U.S. security holders would be made at the commencement of the tender offer, rights offering or exchange offer. In the case of a business combination such as a merger where the securities are issued by the acquiring company, the calculation will be based on U.S. ownership of the company to be acquired at the commencement of the solicitation for the merger. In business combinations such as an amalgamation, where the securities are issued by a successor company to all

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

participating companies, the calculation would be made as if measured immediately after completion of the business combination. In the latter situation, all participants in the business combination must be foreign private issuers.

**\*30** The term U.S. holder was defined in the 1991 proposals as any person whose address appears on the records of the issuer of the subject securities, or of any voting trustee, depositary, share transfer agent, or any person acting in a similar capacity on behalf of the issuer of the subject securities, as being located in the United States.[FN131] The proposed definition of U.S. holder was derived from the definition of "foreign private issuer" under the Exchange Act.[FN132] The definition of U.S. holder does not turn on the residence of the beneficial owner of the securities, nor is there a requirement to identify beneficial owners in order to determine their residence.

> *Q42. Given the potential significance of U.S. beneficial ownership, we solicit comments on whether a beneficial holder test should be included if the bidder or issuer knows the percentage of U.S. beneficial owners or can access that information without unreasonable effort or expense. For example, should an issuer be required to determine the amount held by a foreign broker-dealer as nominee for U.S. accounts?*

Several commenters asked us to clarify the definition of U.S. holder with respect to depositaries and ADR and other depositary receipt facilities. For securities registered in the name of a nominee of a depositary maintaining a book entry system, such as Cede & Co., nominee for The Depository Trust Company, the issuer or third party may rely on how the participants' names appear on the records of the depositary. This approach would be consistent with the determination of "record holder" under Section 12(g) of the Exchange Act.[FN133] An ADR, Global Depositary Receipt ("GDR") or other depositary facility likewise will not be treated as the record holder of the ADRs.[FN134] Shares deposited in an ADR depositary will be presumed to be held solely by U.S. residents in determining the percentage of shares held by U.S. security holders. If the issuer receives information to the contrary from the depositary, it may rely on that information in calculating U.S. security holders.[FN135]

> *Q43. Should we treat all holders of ADRs as U.S. residents of the underlying foreign securities only when the ADR facility is unsponsored?*

A number of commenters also expressed concern as to the treatment of bearer securities in determining U.S. ownership. Since a U.S. residence will not appear on the records of the issuer for the holder of bearer securities, these securities will not be treated as being held by U.S. residents, unless the offeror knows or has reason to know that these securities are held by U.S. residents.

## 2. Exclusion of Foreign Security Holders Holding More than 10 Percent

We are concerned that foreign private issuers could have a significant majority of their shares held by controlling non-U.S. shareholders. As a result, U.S. holders could represent a significantly greater percentage of the company's non-affiliated public float. For example, a foreign company with an 80 percent non-U.S. shareholder could have up to 25 percent of its non-affiliated public float owned by U.S. holders and still qualify under Rules 801 and 802 if the calculation were based upon the total amount of securities outstanding. For that reason, shares held by non-U.S. holders of more that 10 percent of the class are not included in the calculation of the U.S. ownership percentage. The exclusion is limited to non-U.S. affiliates to prevent reliance on the exemptive rules when the company is controlled by a U.S. holder with, for example, 80 percent of the shares.

> **\*31** *Q44. Would it be appropriate to exclude affiliated shares, whether held outside the United States or in the United States, from both elements of the calculation, thus focusing only on the percent of the company's total world-wide non-affiliated float held in the United States? Is 10 percent the appropriate level of ownership for excluding a holder's shares from the calculation? Should shares held by an acquiror or by the issuer's senior management also be excluded? Are foreign companies with significant U.S. ownership by affiliates as likely to exclude U.S. holders from participation in exchange and rights offerings?*

## 3. Determination of Eligibility by Persons Other Than the Issuer

The principal disadvantage of using a U.S. ownership threshold as a condition for the applicability of the Exchange Act tender offer exemptions and the Securities Act registration exemptions for exchange offers and business combinations is that it will be difficult for third-party bidders to ascertain whether the exemption is available without information on the subject company's U.S. ownership.[FN136]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.                                Page 27
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

The 1991 proposals permitted a bidder seeking to acquire securities of a foreign subject company that is a reporting company or furnishes information to the Commission under Rule 12g3-2(b) to rely upon the disclosure contained in the target company's filings regarding the extent to which their securities are held by U.S. security holders. We proposed this approach based on other proposed rules that would have required foreign private issuers to disclose their U.S. ownership on an annual basis.[FN137] Further, as originally proposed, if a foreign subject company was not a reporting company under the Exchange Act and did not submit reports pursuant to Rule 12g3-2(b), an offeror or issuer could presume that the U.S. ownership did not exceed the ceiling amount, unless it had actual knowledge to the contrary. Those rules were never adopted and are not being reproposed today.

Under the current proposals, a third-party bidder in a hostile tender offer will be entitled to a presumption that the percentage threshold requirements of the Tier I, Tier II and Rule 802 exemptions are not exceeded unless:
    (1) the aggregate trading volume of the subject class of securities on national securities exchanges in the United States, on the Nasdaq Stock Market or on the OTC market, as reported to the NASD, exceeds 10 percent in the case of Tier I offers, 40 percent in the case of Tier II offers, or 5 percent in the case of Rule 802, of the worldwide aggregate trading volume of that class of securities over the 12-calendar-month period prior to commencement of the offer;
    (2) the most recent annual report or other informational form filed or submitted by the issuer to securities regulators in its home jurisdiction or elsewhere (including with the Commission) indicates that U.S. holdings exceed the applicable threshold; or
    (3) the bidder knows or has reason to know from other sources that the level of U.S. ownership of the subject class exceeds the thresholds.[FN138]
*32 This presumption is not available in negotiated transactions, since the bidder in a negotiated transaction would be able to get this information from the target company.

As to whether the foreign subject company is a foreign private issuer, the bidder could rely on the exemptions if the issuer of the subject securities files reports with the Commission under the foreign integrated disclosure system[FN139] or has claimed an exemption from reporting under Exchange Act Rule 12g3-2(b)), unless the bidder knows the foreign subject company is not a foreign private issuer.[FN140] Even if the above presumptions are not available, the bidder may nevertheless rely on the exemption if it can demonstrate that U.S. ownership is less than the relevant threshold.

Subsequent changes or movements in the number of shares held by U.S. security holders after the offer commences would be irrelevant to the availability of the exemptions proposed today. In addition, an issuer or a third-party bidder instituting a subsequent competing offer could use the same information as to U.S. holdings as the initial third-party bidder or issuer to calculate the percentage of securities held by U.S. security holders. An interim filing disclosing a disqualifying level of U.S. ownership in the United States would not disqualify the second offer.
    *Q45. Should the presumption be available in negotiated transactions? Should a bidder that has entered into a negotiated transaction with the issuer after a prior hostile bidder has commenced a tender offer be able to use the presumption?*

## III. COST-BENEFIT ANALYSIS
U.S. residents holding stock in foreign private issuers are often excluded from tender offers[FN141] and rights offerings for the foreign private issuers' securities because of conflicts between U.S. and foreign regulation of these offers. As a result, U.S. security holders of foreign private issuers are unable to benefit from any premium offered in a tender offer[FN142] or are unable to purchase additional securities at a discount in a rights offering.

We know of numerous tender offers that have excluded U.S. security holders. For example, based on a random sample of 31 tender offers out of a total of 171 tender offer or merger proposals handled by the U.K. Takeover Panel (the entity that regulates tender offers in the U.K.) in 1997, when the U.S. ownership of the target was less than 15 percent (30 offers), bidders excluded U.S. security holders. When the U.S. ownership was significant, such as 38 percent (one offer), the bidder included U.S. security holders. Similarly, in rights offerings, foreign private issuers routinely issue cash in lieu of rights to U.S. security holders.[FN143]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,   Release No. 40678,   Release No. 33-7611,   Release No.                               Page 28
34-40678,   Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

The proposed rules and rule amendments would exempt from the tender offer and registration rules cross-border tender offers, exchange offers, rights offerings and business combinations when U.S. ownership of the foreign company is not significant (i.e., 10 percent for tender offers (the "Tier I exemption") and five percent for exchange offers, rights offerings and business combinations). When the U.S. ownership in the foreign company exceeds 10 percent, but is not greater than 40 percent, the proposal also includes exemptions from certain of the Commission's tender offer rules (the "Tier II exemption").

**\*33** The purpose of these exemptions is to facilitate including U.S. security holders of foreign companies in these types of transactions by removing regulatory barriers. The proposed rules and rule amendments are intended to reduce the registration requirements of cross-border transactions. We expect the exemptions to reduce the costs and burdens of extending these types of offers to U.S. security holders. U.S. security holders of foreign companies will benefit by being able to participate in these types of transactions.

Entities relying on the Tier I exemption would benefit from the proposed rules because they would not need to comply with the procedural and filing requirements of the tender offer rules. Specifically, an acquiror would not need to file Schedules 13E-4 or 14D-1. In lieu of these forms, an acquiror would submit to the Commission Form CB, which is significantly less burdensome.[FN144] Also, a non-U.S. acquiror would file a Form F-X contemporaneously with the Form CB.[FN145]

Similarly, entities relying on Rules 801 or 802 in connection with a rights offer or exchange offer would benefit from the proposed rules because they would not need to comply with the registration requirements of the federal securities laws. Specifically, an issuer would not need to file the registration forms, including Forms S-1, S-2, S-3, S-4, F-1, F-2, F-3 and F-4. Instead of these forms, an issuer would submit to the Commission Form CB and Form F-X (if the issuer is a non-U.S. entity), which, as discussed above, are significantly less burdensome.

Entities relying on the Tier I and Tier II exemptions would also benefit from the proposals because they would not need to comply with all of the procedural requirements of the Commission's tender offer rules.[FN146] For example, in the Tier I exemption, an acquiror would be exempt from all of the procedural requirements of the U.S. tender offer rules including those relating to the duration of the offer and withdrawal rights.

In the Tier II exemption, an acquiror would receive certain limited relief from the Commission's tender offer rules, including withdrawal rights. The Tier II exemption provides relief from the U.S. tender offer rules that are common impediments to extending offers to U.S. security holders. However, an acquiror relying on the Tier II exemption would have to comply with the remaining tender offer provisions. These provisions include, among others, the following: (1) keeping the offer open 20 business days; (2) filing a Schedule 13E-4 or 14D-1, as applicable; (3) disseminating the offering documents; and (4) offering withdrawal rights until the offer goes wholly unconditional. Although complying with these additional requirements may impose additional costs to cross-border tender offers, compliance would still be less burdensome than satisfying all the U.S. tender offer requirements. Because each foreign country's laws are different, we do not know the extent to which these additional requirements may conflict with foreign law. Thus we are unable to estimate the incremental cost, if any, of complying with these requirements.

**\*34** No specific data was provided in response to the Commission's original request in 1991 regarding the costs and benefits associated with the proposed amendments. We have information regarding several transactions that have excluded U.S. security holders. But since offerors do not file documents with the Commission when U.S. security holders are excluded, we do not have access to comprehensive data on the number of cross-border transactions that have excluded U.S. security holders. Further, if the transaction is a tender offer for securities that are not registered under Section 12 of the Exchange Act, and is subject only to Regulation 14E, there is no filing obligation. Therefore, we are unable to estimate the number of entities that will take advantage of the proposed exemptions. While we are unable to determine how many U.S. security holders will benefit from the proposed rules by being able to participate in cross-border tender, exchange and rights offerings, we believe that the proposed rules will benefit U.S. security holders by removing regulatory burdens to including U.S. security holders in these types of offers. To evaluate fully the benefits and costs associated with the proposed adoption of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

new Securities Act Rules 801 and 802, and Form CB, Trust Indenture Act Rule 4d-10, revisions to Securities Act Rule 144 and Form F-X, and revisions Exchange Act Rules 10b-13, 13e-4, 14d-1, 14e-1 and 14e-2, and Rule 30-1 of the Commission's Rules of Practice and Investigation, we request commenters to provide views and data as to the costs and benefits associated with these proposals. Specifically, we request data as to the number of entities who have excluded U.S. security holders due to conflicts between the U.S. and foreign regulation and how many entities would be eligible to take advantage of the exemptions. We ask that foreign regulators, foreign private issuers, their counsel and auditors provide views and data as to the costs and benefits associated with multijurisdictional tender offers under current law as compared to the costs and benefits under the proposed system.

Section 23(a) of the Exchange Act[FN147] requires us, in adopting rules under the Exchange Act, to consider the impact any rule would have on competition. We can not adopt any rule that would impose a burden on competition not necessary or appropriate in the public interest. Our preliminary view is that the proposed rules for cross-border rights offerings, exchange offers, and tender offers would not have any anticompetitive effects. In fact, we believe the proposed rules will facilitate a variety of cross border transactions, thereby enhancing the efficiency of global competition for capital. We seek information on the impact of increased competition for capital for domestic companies as a result of an increase in securities offered into the United States by foreign companies. Also, to what extent would the benefit to U.S. investors offset the cost of any such increased competition for capital? We request comment on whether the proposals, if adopted, would have an adverse effect on competition or would impose a burden on competition that is neither necessary nor appropriate in furthering the purposes of the Exchange Act.

## IV. SUMMARY OF INITIAL REGULATORY FLEXIBILITY ANALYSIS

**\*35** We have prepared an Initial Regulatory Flexibility Analysis ("IRFA") in accordance with 5 U.S.C. 603 regarding the proposed rules. The IRFA notes that the proposed rules are intended primarily to facilitate tender and rights offerings for securities of foreign private issuers held by U.S. residents. The resulting reduction in the expense, time and effort of making such offerings will benefit U.S. security holders. These persons normally are excluded from such offerings. Entities that wish to extend these offers to U.S. security holders will also benefit. The IRFA discusses several alternatives to the proposed rules that we preliminary considered, including permitting registration of securities issued in rights offerings and exchange offers to be based on home country documents. However, as a preliminary matter, we believe that there is no less restrictive alternative to the proposed rule amendments that would serve the purpose of the tender offer and registration requirements of the federal securities laws. We did not identify alternatives to the proposed rules that are consistent with their objectives and our statutory authority. The proposed rules would not duplicate or conflict with any existing federal rule provisions.

The proposed rules are limited to tender offers and exchange offers for the securities of foreign private issuers. But both foreign and domestic bidders, whatever their size, are eligible to use these exemptions. Only foreign private issuers are eligible to use the exemption for rights offerings. Small entities could rely on the proposed tender and exchange offer exemptions on the same basis as larger entities, provided that they meet the conditions for relying on them.

We know of approximately 1,100 Exchange Act reporting companies, that are not investment companies, that currently satisfy the definition of "small business" under Rule 0-10. There are approximately 400 investment companies that satisfy the "small business" definition. We have no data to determine how many reporting or non-reporting small businesses may actually rely on the proposed rules, or may otherwise be impacted by the rule proposals. However, we believe that the proposed amendments will result in a substantial savings to entities (both small and large) that qualify for the exemptions. Qualifying entities will not have to comply with the tender offer and registration requirements of the U.S. securities laws.

The IRFA notes that the proposed amendments would eliminate certain existing reporting requirements for entities conducting an exempt tender or exchange offer. Specifically, an acquiror would not need to file Schedules 13E-4 or 14D-1. Further, in a rights or exchange offer, an acquiror would not need to register the securities being issued. In place of these filing obligations, an acquiror relying on the proposed exemptions would submit, rather than file, Form CB. Form CB is merely a cover sheet that incorporates the offering documents sent to security holders pursuant to the requirements of the country in which the issuer is incorporated. Also, a non-U.S. acquiror would file a Form F-X contemporaneously with the Form CB.[FN148] We believe Form CB and Form F-X are significantly less burdensome to prepare than the current reporting

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

requirements for tender and exchange offers. In addition, we believe it takes a lesser degree of professional skill, including that of securities lawyers and accountants, to prepare a Form CB and Form F-X than to prepare a Schedule 13E-4, 14D-1 or a registration statement. In some cases, the professional skills required would include the ability to translate from a foreign language into English. We estimate that Form CB and Form F-X would take substantially less time to prepare than Schedule 14D-1, Schedule 13E-4, or Forms S-1, S-2, S-3, S-4, F-1, F-2, F-3 and F-4.[FN149]

**36** We encourage written comments on any aspect of the IRFA. We will consider any comments in preparing the Final Regulatory Flexibility Analysis if the proposed amendments are adopted. To obtain a copy of the IRFA, you may contact Laurie L. Green or Christina Chalk, in the Office of Mergers and Acquisitions, Division of Corporation Finance, Securities and Exchange Commission, 450 Fifth Street, N.W., Washington, D.C. 20549, at (202) 942-2920.

For purposes of the Small Business Regulatory Enforcement Fairness Act of 1996, we are also requesting information regarding the potential impact of the proposed rule on the economy on an annual basis. Commenters should provide empirical data to support their views.

## V. PAPERWORK REDUCTION ACT

Some provisions of the proposed rules and rule amendments contain "collection of information" requirements within the meaning of the Paperwork Reduction Act of 1995 (the "Act") (44 U.S.C. 3501 et seq.). We have submitted our proposed revisions to the information collections required by these provisions to the Office of Management and Budget ("OMB") for review in accordance with 44 U.S.C. 3507(a) and 5 CFR 1320.11. The title for the collection of information is "Form CB" and revised "Form F-X".

The proposed rules and rule amendments would exempt from the tender offer and registration rules cross-border tender offers, exchange offers, rights offerings and business combinations when U.S. ownership of the foreign company is not significant. The purpose of these exemptions is to facilitate including U.S. security holders of foreign companies in these types of transactions. The proposed rules and rule amendments are intended to reduce the regulations applicable to some cross-border transactions and therefore, are expected to reduce the existing collection of information requirements. The proposed amendments would eliminate certain existing reporting requirements for entities, including small entities, conducting an exempt tender or exchange offer. Specifically, an acquiror would not need to comply with Schedules 13E-4 or 14D-1. Further, in an exchange or rights offer, an acquiror would not need to file a registration statement registering the securities being issued.

Proposed Rule 14d-1(c)(2)(i) requires bidders to disseminate any informational documents to U.S. holders in English. This may require some bidders to translate documents and thus imposes a burden.

Proposed Rules 801(c)(4)(i) and 802(c)(3)(i) under the Securities Act and Rules 13e-4(h)(8)(2)(i), 14d-1(c)(2)(i) and 14e-2(d)(1) require that an entity conducting an exempt tender or rights offer in connection with a cross-border transaction pursuant to the proposed exemptions file Form CB. The collection of information would be necessary so that we can determine whether the transaction meets the eligibility requirements of the proposed exemptive rules. We also have to collect information to ensure that information about the transaction would be publicly available. Security holders would thus have the opportunity to make informed investment decisions, particularly since the transactions relate to potential changes in control.

**37** Form CB is a cover sheet that incorporates the offering documents sent to security holders pursuant to the requirements of the country in which the issuer is incorporated. Form CB also requires disclosure of the identity of the entity conducting the tender or rights offer. Form CB must be submitted to the Commission on the business day following the date the offering documents are sent to security holders in the home jurisdiction.

Proposed Form CB also requires that a non-U.S. entity must file a consent to service of process on Form F-X. Form F-X is used by certain non-U.S. entities to appoint an agent for service of process in the United States. The proposed revisions to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.                Page 31
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

Form F-X would add non-U.S. entities submitting a Form CB to the list of entities currently required to file Form F-X. This collection of information is necessary to provide investors with information concerning the U.S. person designated as agent for service of process.

For the tender and exchange offer exemptions, domestic and foreign entities wishing to engage in cross-border transactions will likely be the respondents to the collection of information requirement. Also, the company that is the target of the tender offer will be required to respond to the collection of information requirements. With respect to rights offerings, the likely respondents would be foreign private issuers conducting rights offerings. We have no data to help us determine how many entities may actually rely on the proposed exemptions, since relying on the exemptions is voluntary. We estimate that 824 Forms CB would be filed each year if the proposals were adopted.[FN150] We estimate that it would impose an estimated burden of 2 hours[FN151] for a total burden of 1648 hours. We estimate that half of the entities submitting Form CB would be foreign entities that would be required to file Forms F-X (412) each year if the proposals were adopted. Form F-X currently is estimated to impose an estimated burden of 2 hours for a total burden of 824 hours.

The Commission believes that Forms CB and F-X would be significantly less burdensome to prepare than the current reporting requirements for tender and exchange offers. As discussed above, it is estimated that Forms CB and F-X would impose an estimated burden of two hours per Form. This contrasts with Schedule 14D-1 which has an estimated burden of 354 hours per form, Schedule 13E-4 which has an estimated burden of burden of 232 hours per form, and Forms S-1, S-2, S-3, S-4, F-1, F-2, F-3 and F-4 which have an estimated burden of 1,239, 470, 397, 1,233, 1,868, 1,397, 166, and 1,308 hours per form, respectively.

A bidder or issuer must respond to the described information collections in order to rely on the proposed exemptions. The information will not be kept confidential. Unless a currently valid OMB control number is displayed, an agency may not sponsor, conduct or require response to an information collection.

In accordance with 44 U.S.C. 3506(c)(2)(B), we solicit comments on the following:

**38** (1) whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information shall have practical utility;

(2) on the accuracy of the Commission's estimate of the burden of the proposed collection of information;

(3) on the quality, utility and clarity of the information to be collected; and

(4) whether the burden of collection of information on those who are to respond, including through the use of automated collection techniques or other forms of information technology, may be minimized.

If you would like to submit comments on the collection of information requirements, please direct them to the Office of Management and Budget, Attention: Desk Officer for the Securities and Exchange Commission, Office of Information and Regulatory Affairs, Washington, D.C. 20503, with reference to File No. S7-29-98. The OMB must make a decision concerning the collection of information between 30 and 60 days after publication, so a comment to OMB is best assured of having its full effect if OMB receives it within 30 days of publication.

## VI. **REQUEST FOR COMMENTS**
If you would like to submit written comments on the proposals, to suggest additional changes, or to submit comments on other matters that might have an impact on the proposals, we encourage you to do so. Besides the specific questions we asked in this release, we also solicit comments on the usefulness of the proposals to foreign private issuers, foreign private issuers who are reporting companies with the Commission, registrants and the marketplace at large. We also encourage the submission of written comments on any aspect of the initial regulatory flexibility analysis. We will consider any written comments we receive in preparing the final regulatory flexibility analysis if the proposed rules are adopted.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

We believe that the proposals, if adopted, would promote efficiency, competition, and capital formation. However, we solicit comments on whether the proposals would promote efficiency, competition, and capital formation.

Please send three copies of your comments to Jonathan G. Katz, Secretary, Securities and Exchange Commission, 450 Fifth Street, N.W., Washington, D.C. 20549. You may also submit your comments electronically at the following E-mail address: rule-comments@sec.gov. All comment letters should refer to File No. S7-29-98; this file number should be included in the subject line if E-mail is used. Comment letters can be inspected and copied in the public reference room at 450 Fifth Street, N.W., Washington, D.C. We will post electronically submitted comments on our Internet Web site (http://www.sec.gov).

## VII. STATUTORY BASIS OF PROPOSALS
We are proposing these revisions pursuant to Sections 3(b), 7, 8, 10, 19 and 28 of the Securities Act, Sections 12, 13, 14, 23 and 36 of the Exchange Act, and Section 304 of the Trust Indenture Act.

## List of Subjects

### 17 CFR Part 200.

Authority delegations (Government agencies)

### 17 CFR Parts 230, 239, 240 and 249.
*39 Reporting and recordkeeping requirements, Securities.

## TEXT OF PROPOSALS
In accordance with the foregoing, we are proposing to amend Title 17, Chapter II of the Code of Federal Regulations as follows:

## PART 200-ORGANIZATION; CONDUCT AND ETHICS; AND INFORMATION AND REQUESTS
1. The authority citation for Part 200 continues to read in part as follows:

Authority: 15 U.S.C. 77s, 78d-1, 78d-2, 78w, 78ll(d), 78mm, 79t, 77sss, 80a-37, 80b-11, unless otherwise noted.

* * * * *

2. By amending §200.30-1 by adding paragraph (e)(16) to read as follows:

### §200.30-1 Delegation of authority to Director of Division of Corporation Finance.
* * * * *

(e) * * *

(16) To grant exemptions from:

(i) Tender offer provisions of Sections 13(e) and 14(d)(1) through 14(d)(7) of the Exchange Act (15 U.S.C. 78m(e) and 78n(d)(1) through 78n(d)(7)), Rule 13e-3 (§240.13e-3 of this chapter) and Rule 13e-4 (§240.13e-4 of this chapter), Regulation 14D (§§240.14d-1 through 240.14d-10 of this chapter) and Schedules 13E-3, 13E-4, 14D-1, 14D-9 (§§240.13e-100, 240.13e-101, 240.14d-100 and 240.14d-101 of this chapter) thereunder, pursuant to Sections 14(d)(5) and 14(d)(8)(C) of the Exchange Act (15 U.S.C. 78n(d)(5) and 78(d)(8)(C)), and Rule 14d-10(e) (§240.14d-10(e) of this chapter); and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,   Release No. 40678,   Release No. 33-7611,   Release No.                    Page 33
34-40678,   Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

(ii) The tender offer provisions of Rule 14e-1 and 14e-2 of Regulation 14E (§240.14e-1 and 240.14e-2 of this chapter)
pursuant to Section 36(a) of the Exchange Act (15 U.S.C. 78mm(a)).

* * * * *

3. By amending §200.30-3 to add paragraph (a)(65) to read as follows:

**§200.30-3 Delegation of authority to Director of Division of Market Regulation.**
* * * * *

(a) * * *

(65) Pursuant to Section 36(a) of the Act, 15 U.S.C. 78mm(a), to grant exemptions from the tender offer provisions of Rule
14e-1 of Regulation 14E (§240.14e-1 of this chapter).

* * * * *

**PART 230-GENERAL RULES AND REGULATIONS, SECURITIES ACT OF 1933**
4. The authority citation for Part 230 continues to read in part as follows:

**Authority:** 15 U.S.C. 77b, 77f, 77g, 77h, 77j, 77r, 77s, 77sss, 78c, 78d, 78l, 78m, 78n, 78o, 78w, 78ll(d), 79t, 80a-8, 80a-24,
80a-28, 80-29, 80a-30, and 80a-37, unless otherwise noted.

* * * * *

5. By amending §230.144 to add paragraphs (a)(3)(vi) and (vii) to read as follows:

**§230.144 Persons deemed not to be engaged in a distribution and therefore not underwriters.**
* * * * *

(a) * * *

(3) * * *

(vi) Securities acquired in a transaction made in compliance with §230.801; or

(vii) Securities acquired in a transaction made in compliance with §230.802 if the securities that are tendered or surrendered
in the §230.802 transaction are "restricted securities" within the meaning of this §230.144(a)(3).

* * * * *

6. By adding §§230.800 through 230.802 to read as follows:

**GENERAL NOTES TO §§230.800, 230.801 AND 230.802**
1. Sections 230.801 and 230.802 relate only to the applicability of the Act (15 U.S.C. 77e) and not to the applicability of the
anti-fraud, civil liability or other provisions of the federal securities laws.

**\*40** 2. The exemptions provided by §230.801 and §230.802 are not available for any securities transaction or series of transactions that technically complies with §230.801 and §230.802 but are part of a plan or scheme to evade the registration provisions of the Act. In those cases, the issuer must register the offer and sale of the securities.

3. An issuer who relies on §230.801 or an offeror who relies on §230.802 must still comply with the securities registration or broker-dealer registration requirements of the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.) and any other applicable provisions of the federal securities laws.

4. An issuer who relies on §230.801 or an offeror who relies on §230.802 must still comply with any applicable state laws relating to the offer and sale of securities.

5. Attempted compliance with §230.801 or §230.802 does not act as an exclusive election; an issuer making an offer or sale of securities in reliance on §230.801 or §230.802 may also rely on any other applicable exemption from the registration requirements of the Act.

6. Section 230.801 and §230.802 provide exemptions only for the issuer of the securities and not for any affiliate of that issuer or for any other person for resales of the issuer's securities. These sections provide exemptions only for the transaction in which the issuer or other person offers or sells the securities, not for the securities themselves. Securities acquired in a § 230.801 or §230.802 transaction may be resold in the United States only if they are registered under the Act or an exemption from registration is available.

7. Section 230.801 does not apply to a rights offering by an investment company registered or required to be registered under the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.). Section 230.802 does not apply to exchange offers or business combinations by an investment company registered or required to be registered under the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.).

8. Unregistered offers and sales made outside the United States will not affect contemporaneous offers and sales made in compliance with §230.801 or § 230.802. A transaction that complies with §230.801 or §230.802 will not be integrated with offerings exempt under other provisions of the Act, even if both transactions occur at the same time.

9. Securities acquired in a rights offering under §230.801 are "restricted securities" within the meaning of §230.144(a)(3). If the securities that are the subject of the exchange offer or business combination are restricted securities, securities issued in a transaction under §230.802 are also restricted securities.

**§230.800 Definitions for §§230.800, 230.801 and 230.802.**
The following definitions apply in §§230.800, 230.801 and 230.802.

**Business combination.** Business combination means a statutory amalgamation, merger, arrangement or other reorganization requiring the vote of shareholders of one or more of the participating companies. It also includes a statutory short form merger that does not require a vote of shareholders.

**\*41 Commencement.** Commencement means the same as in §240.14d-2(a) of this chapter.

**Equity security.** Equity security means the same as in §240.3a11-1 of this chapter, but does not include:

(1) Any debt security that is convertible into an equity security, with or without consideration; or

(2) Any debt security that includes a warrant or right to subscribe to or purchase an equity security; or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(3) Any such warrant or right; or

(4) Any put, call, straddle, or other option or privilege that gives the holder the option of buying or selling a security but does not require the holder to do so.

**Exchange offer**. Exchange offer means a tender offer in which securities are issued as consideration.

**Foreign private issuer**. Foreign private issuer means the same as in §230.405 of Regulation C.

**Foreign target company**. Foreign target company means any foreign private issuer whose securities are the subject of the exchange offer or business combination.

**Home jurisdiction**. Home jurisdiction means both the jurisdiction of the issuer's incorporation, organization or chartering and the principal foreign market where the foreign private issuer's securities are listed or quoted.

**Rights offering**. Rights offering means offers and sales for cash of equity securities where:

(1) The issuer grants the existing security holders of a particular class of equity securities (including holders of depositary receipts evidencing those securities) the right to purchase or subscribe for additional securities of that class; and

(2) The number of additional shares an existing security holder may purchase initially is in proportion to the number of securities he or she holds of record on the record date for the rights offering. If an existing security holder holds depositary receipts, the proportion must be calculated as if the underlying securities were held directly.

**U.S. holder**. U.S. holder means any person whose address appears on the records of the issuer of the subject securities, or any voting trustee, depositary, share transfer agent, or any person acting in a similar capacity as being located in the United States. Unless information provided by the depositary demonstrates otherwise, holders of American Depositary Receipts shall be counted as U.S. holders of the underlying securities for the purposes of this section.

**§230.801 Exemption in connection with a rights offering.**
A rights offering is exempt from the provisions of Section 5 of the Act (15 U.S.C. 77e), provided that the following conditions are satisfied:

(a) **Conditions.** (1) **Eligibility of issuer.** The issuer is a foreign private issuer on the date the securities are first offered to U.S. holders.

(2) **Limitation on U.S. ownership.** U.S. holders hold no more than five percent of the outstanding class of securities that is the subject of the rights offering on the date the securities are first offered to U.S. holders. For purposes of calculating the percentage of outstanding securities held by U.S. holders, exclude from the total number of shares outstanding shares held by non-U.S. persons who hold more than 10 percent of the subject securities.

**\*42** (3) **Equal treatment.** The issuer permits U.S. holders to participate in the rights offering on terms at least as favorable as those offered the other holders of the securities that are the subject of the offer.

(4) **Informational documents.** (i) If the issuer publishes or otherwise disseminates an informational document to the holders of the securities in connection with the rights offering, the issuer must provide that informational document to the Commission on Form CB (§239.800 of this chapter) by the first business day after publication or dissemination.

(ii) The issuer must disseminate by mail any informational document to U.S. holders, in English, that is published or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

provided to security holders in the issuer's home jurisdiction.

(5) **Eligibility of securities.** The securities offered in the rights offering are equity securities of the same class as the securities held by the offerees in the United States.

(6) **Limitation on transferability of rights.** The terms of the rights prohibit transfers by U.S. holders except in accordance with Regulation S (§230.901 through §230.905).

(b) **Legends.** The following legend is included on the cover page of any informational document the issuer disseminates to U.S. holders:

This rights offering is made for the securities of a foreign company. The offer is subject to the disclosure requirements of a foreign country that are different from those of the United States. Financial statements included in the document, if any, have been prepared in accordance with foreign accounting standards that may not be comparable to the financial statements of United States companies.

It may be difficult for you to enforce your rights and any claim you may have arising under the federal securities laws, since the issuer is located in a foreign country, and some or all of its officers and directors may be residents of a foreign country. You may not be able to sue the foreign company or its officers or directors in a foreign court for violations of the U.S. securities laws. It may be difficult to compel a foreign company and its affiliates to subject themselves to a U.S. court's judgment.

**§230.802 Exemption for offerings in connection with an exchange offer or business combination for the securities of foreign private issuers.**

Offers and sales in any exchange offer for a class of securities of a foreign private issuer, or any exchange of securities for the securities of a foreign private issuer in any business combination are exempt from the provisions of Section 5 of the Act (15 U.S.C. 77e) if they satisfy the following conditions:

(a) **Conditions to be met.** (1) **Limitation on U.S. ownership.**

(i) U.S. holders of the foreign target company must hold no more than five percent of the securities that are the subject of the transaction as of the commencement of the exchange offer or solicitation for a business combination.

**\*43** (ii) In the case of a business combination in which the securities are to be issued by a successor registrant, U.S. holders will hold no more than five percent of the class of securities of the successor registrant, as if measured immediately after completion of the business combination.

(iii) For purposes of calculating the percentage of outstanding securities held by U.S. holders, exclude from the total number of shares outstanding shares held by non-U.S. persons who hold more than 10 percent of the subject securities.

(2) **Equal treatment.** The issuer must permit U.S. holders to participate in the exchange offer or business combination on terms at least as favorable as those offered any other holder of the subject securities; provided:

(i) **Blue sky registration.** If a U.S. state or jurisdiction requires registration or qualification of the offer or sale of securities in connection with the exchange offer or business combination, and the issuer does not so register or qualify the offer and sale, the issuer may offer security holders in such state or jurisdiction a cash alternative. If the issuer does not include a cash-only alternative in any other jurisdiction, it need not extend the offer in any state or jurisdiction that requires registration or qualification.

(ii) **Disparate tax treatment.** If the issuer offers "loan notes" to offer sellers tax advantages not available in the United States and these notes are not listed on any organized securities market or registered under the Securities Act, the loan notes need not be offered to U.S. holders.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(3) **Informational documents**. (i) If the issuer publishes or otherwise disseminates an informational document to the holders of the securities in connection with the exchange offer or business combination, the issuer must provide that informational document to the Commission on Form CB (§239.800 of this chapter) by the first business day after publication or dissemination.

(ii) The issuer must disseminate any informational document to U.S. holders, in English, on a comparable basis as provided to security holders in the issuer's home jurisdiction.

(iii) If the issuer disseminates solely by publication in its home jurisdiction, the issuer must publish the information in the United States in a manner reasonably calculated to inform U.S. holders of the offer.

(b) **Legends.** The following legend must be included on the cover page of any informational document the issuer publishes or disseminates to U.S. holders:

> This exchange offer or business combination is made for the securities of a foreign company. The offer is subject to disclosure requirements of a foreign country that are different from those of the United States. Financial statements included in the document, if any, have been prepared in accordance with foreign accounting standards that may not be comparable to the financial statements of United States companies.
> **\*44** It may be difficult for you to enforce your rights and any claim you may have arising under the federal securities laws, since the issuer is located in a foreign country, and some or all of its officers and directors may be residents of a foreign country. You may not be able to sue a foreign company or its officers or directors in a foreign court for violations of the U.S. securities laws. It may be difficult to compel a foreign company and its affiliates to subject themselves to a U.S. court's judgment.
> You should be aware that the issuer may purchase securities otherwise than pursuant to the exchange offer, such as open market or privately negotiated purchases.

(c) For exchange offers conducted by third parties without the cooperation of the issuer of the subject securities, the issuer of the subject securities will be presumed to be a foreign private issuer and U.S. holders will be presumed to hold five percent or less of the outstanding subject securities, unless:

(1) The aggregate trading volume of the subject class on national securities exchanges in the United States, on the Nasdaq market or on the OTC market, as reported to the NASD, exceeds five percent of the worldwide aggregate trading volume of the subject securities over the 12-calendar-month period before commencement of the offer (or if commenced in response to a prior offer, over the 12-calendar-month period prior to the commencement of the initial offer);

(2) The most recent annual report or annual information filed or submitted by the issuer with securities regulators of the home jurisdiction or with the Commission indicates that U.S. holders hold more than five percent of the outstanding subject class of securities; or

(3) The offeror knows, or has reason to know, that U.S. ownership exceeds five percent of such securities.

## PART 239-FORMS PRESCRIBED UNDER THE SECURITIES ACT OF 1933

7. The authority citation for part 239 continues to read, in part, as follows:

AUTHORITY: 15 U.S.C. 77f, 77g, 77h, 77j, 77s, 77z-2, 77sss, 78c, 78l, 78m, 78n, 78o(d), 78u-5, 78w(a), 78ll(d), 79e, 79f, 79g, 79j, 79l, 79m, 79n, 79q, 79t, 80a-8, 80a-24, 80a-29, 80a-30 and 80a-37, unless otherwise noted.

\* \* \* \* \*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

8. By amending Form F-X (referenced in §239.42) General Instruction 1 to add paragraph (g) and to revise Item II.F(b) to read as follows:

[Note: Form F-X does not and this amendment will not appear in the Code of Federal Regulations.]

**Form F-X**

General Instructions

1. Form F-X shall be filed with the Commission:

* * * * *

(g) by any non-U.S. issuer providing Form CB to the Commission in connection with a tender offer, rights offering or business combination.

* * * * *

II. * * *

F. * * *
(b) the use of Form F-8, Form F-80 or Form CB stipulates and agrees to appoint a successor agent for service of process and file an amended Form F-X if the Filer discharges the Agent or the Agent is unwilling or unable to accept service on behalf of the Filer;

* * * * *

**\*45** 9. By adding §239.800 and Form CB to read as follows:

**§239.800 Form CB, report of sales of securities in connection with an exchange offer or a rights offering.**
This Form shall be used to report sales of securities in connection with a rights offering in reliance upon §230.801 of this chapter and to report sales of securities in connection with an exchange offer or business combination in reliance upon §230.802 of this chapter.

[Note: Form CB does not appear in the Code of Federal Regulations. Form CB is attached as Appendix A.]

**PART 240-GENERAL RULES AND REGULATIONS, SECURITIES EXCHANGE ACT OF 1934**
10. The authority citation for Part 240 continues to read in part as follows:

**Authority**: <u>15 U.S.C. 77c</u>, <u>77d</u>, <u>77g</u>, <u>77j</u>, <u>77s</u>, <u>77z-2</u>, <u>77eee</u>, <u>77ggg</u>, <u>77nnn</u>, <u>77sss</u>, <u>77ttt</u>, <u>78c</u>, <u>78d</u><u>78f</u>, <u>78i</u>, <u>78j</u>, <u>78j-1</u>, <u>78k</u>, <u>78k-1</u>, <u>78l</u>, <u>78m</u>, <u>78n</u>, <u>78o</u>, <u>78p</u>, <u>78q</u>, <u>78s</u>, <u>78u-5</u>, <u>78w</u>, <u>78x</u>, <u>78ll</u>(d), <u>78mm</u>, <u>79q</u>, <u>79t</u>, <u>80a-20</u>, <u>80a-23</u>, <u>80a-29</u>, <u>80a-37</u>, <u>80b-3</u>, <u>80b-4</u> and <u>80b-11</u>, unless otherwise noted.

* * * * *

11. By amending §240.10b-13 to redesignate paragraph (d) as paragraph (f) and to add new paragraphs (d) and (e) to read as follows:

**§240.10b-13 Prohibiting other purchases during tender offer or exchange offer.**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611, Release No. 40678, Release No. 33-7611, Release No.                   Page 39
34-40678, Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

* * * * *

(d) The provisions of this section shall not apply to the purchase, or arrangement to purchase, of a security of the same class as that which is the subject of a cash tender offer or exchange offer (or of any other security which is immediately convertible into or exchangeable for such security) if the following conditions are satisfied:

(1) The cash tender offer or exchange offer is exempt under §240.13e-4(h)(8) or §240.14d-1(c);

(2) The offering documents furnished to U.S. holders prominently disclose the possibility of any purchases, or arrangements to purchase, or the intent to make such purchases;

(3) The bidder discloses information in the United States about any such purchases in a manner comparable to the disclosure made in the home jurisdiction, as defined in §240.13e-4(i)(3); and

(4) The purchases comply with the applicable tender offer laws and regulations of the home jurisdiction.

(e) The provisions of this section shall not apply to the purchase, or arrangement to purchase, of a security of the same class as that which is the subject of a cash tender offer or exchange offer (or of any other security which is immediately convertible into or exchangeable for such security) if the following conditions are satisfied:

(1) The issuer of the subject security is a foreign private issuer, as defined in §240.3b-4(c);

(2) The offer is subject to the United Kingdom's City Code on Takeovers and Mergers;

(3) The purchase or arrangement to purchase is effected by a connected exempt market maker or a connected exempt principal trader, as those terms are used in the United Kingdom's City Code on Takeovers and Mergers;

(4) The connected exempt market maker or the connected exempt principal trader complies with the applicable provisions of the United Kingdom's City Code on Takeovers and Mergers; and

**\*46** (5) The offer documents disclose the identity of the connected exempt market maker or the connected exempt principal trader and describe how U.S. security holders can obtain, upon request, information regarding market making or principal purchases by such market maker or principal trader to the extent that this information is required to be made public in the United Kingdom.

* * * * *

12. By amending §240.13e-3 to add paragraph (g)(6) to read as follows:

**§240.13e-3 Going private transactions by certain issuers or their affiliates.**
* * * * *

(g) Exceptions. * * *

* * * * *

(6) Any tender offer or business combination made in compliance with §230.802 of this chapter, §240.13e-4(h) or §240.14d-1(c).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

13. By amending §240.13e-4 to redesignate paragraph (h)(8) as (h)(9) and to add new paragraphs (h)(8) and (i) to read as follows:

**§240.13e-4 Tender offers by issuers.**

\* \* \* \* \*

(h) \* \* \*

(8) <u>Cross-border tender offers.</u> Any issuer tender offer (including any exchange offer) by a foreign private issuer, if 10 percent or less of the outstanding class of securities that is the subject of the tender offer are held of record by U.S. holders and the following additional conditions are satisfied. For purposes of calculating the percentage of outstanding securities held by U.S. holders, exclude from the total number of shares outstanding shares held by non-U.S. persons who hold more than 10 percent of the subject securities:

(i) The issuer must permit U.S. holders to participate in the offer on terms at least as favorable as those offered any other holder of the same class of securities that is the subject of the offer, however:

(A) <u>Registered exchange offers.</u> If the issuer offers securities registered under the Securities Act of 1933 (<u>15 U.S.C. 77a et seq.</u>) and a cash-only alternative, the issuer must offer only the cash alternative to security holders in any state or jurisdiction that prohibits the offer and sale of the securities after the issuer has made a good faith effort to register or qualify the offer and sale of securities in that state or jurisdiction. If the issuer does not include a cash-only alternative in any other jurisdiction, the issuer need not extend the offer to security holders in those states or jurisdictions that prohibits the offer and sale of the securities.

(B) <u>Exempt exchange offers.</u> If the issuer offers securities exempt from registration under the Securities Act of 1933 (<u>15 U.S.C. 77a et seq.</u>) and a cash-only alternative, the issuer must offer only the cash alternative to security holders in any state in which the statutes or regulations do not provide a corresponding exemption from registration or qualification. When a cash-only alternative is not offered to security holders in any other state or jurisdiction, the issuer need not extend the offer to security holders in those states or jurisdictions that require registration or qualification.

**\*47** (C) <u>Disparate tax treatment.</u> If the issuer offers "loan notes" solely to offer sellers tax advantages not available in the United States and these notes are not listed on any organized securities market nor registered under the Securities Act of 1933 (<u>15 U.S.C. 77a et seq.</u>), the loan notes need not be offered to U.S. holders.

(ii) <u>Dissemination and filing.</u> (A) If the issuer publishes or otherwise disseminates an informational document, the issuer must provide that informational document to the Commission on Form CB (§ 249.480 of this chapter). Form CB must be provided to the Commission no later than the next business day after publication or dissemination.

(B) The issuer must disseminate any informational document to U.S. holders, in English, on a comparable basis as provided to security holders in the home jurisdiction.

(C) If the issuer disseminates solely by publication in its home jurisdiction, the issuer must publish the information in the United States in a manner reasonably calculated to inform U.S. holders of the offer.

(iii) For purposes of this paragraph (h)(8):

(A) The issuer must include securities underlying American Depositary Shares that are exchangeable or convertible for such securities in determining the amount of securities outstanding of the class that is the subject of the offer, as well as, the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

percentage of the subject class of securities held of record by U.S. holders.

(B) If an issuer submits Form CB (§249.480 of this chapter) during an ongoing tender or exchange offer for securities of the class subject to the offer, the issuer must calculate the percentage of the class held by U.S. holders as of the same date used by the initial offeror.

(C) Home jurisdiction means both the jurisdiction of the issuer's incorporation, organization or chartering and the principal foreign market where the issuer's securities are listed or quoted.

(D) U.S. holder means any person whose address appears on the records of the issuer of the subject securities, or any voting trustee, depositary, share transfer agent, or any person acting in a similar capacity as being located in the United States. Unless information provided by the depositary demonstrates otherwise, holders of American Depositary Receipts shall be counted as U.S. holders of the underlying securities for the purposes of this section.

(iv) An investment company registered or required to be registered under the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.) may not use this paragraph (h)(8).

* * * * *

(i) **Cross-border tender offers.** Any issuer tender offer that meets the conditions in paragraph (i)(1) of this section shall be entitled to the exemptive relief specified in paragraph (i)(2) of this section:

(1) **Conditions.** (i) The issuer is a foreign private issuer as defined in § 240.3b-4 and is not an investment company registered or required to be registered under the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.);

**\*48** (ii) U.S. security holders do not hold of record more than 40 percent of the class of securities sought in the offer. For purposes of calculating the percentage of outstanding securities held by U.S. holders, exclude from the total number of shares outstanding shares held by non-U.S. affiliates who hold more than 10 percent of the subject securities; and

(iii) The issuer complies with all applicable U.S. tender offer laws and regulations, other than those for which an exemption has been provided in paragraph (i)(2) of this section.

(2) **Exemptions.** (i) **Withdrawal rights.** Any issuer tender offer meeting the conditions of paragraph (i)(1) of this section is exempt from the provisions of paragraph (f)(2) of this section. Withdrawal rights may terminate before the expiration of the offer if the offer is for all shares and, if:

(A) All conditions to the offer have been satisfied or waived before the termination of withdrawal rights; except that, if it is impracticable to determine whether the minimum condition to the offer has been met at the expiration of the offer because of the home jurisdiction practice of tendering to multiple depositaries, the issuer may terminate withdrawal rights while determining whether the minimum condition has been satisfied. If the issuer determines that the minimum condition has not been satisfied and extends the offer instead of returning the tendered shares, withdrawal rights must be extended during that additional offering period;

(B) All minimum time periods required by this section and §240.14e-1 through §240.14e-7 (Regulation 14E) have been satisfied;

(C) The issuer extends withdrawal rights during all minimum time periods required by this section and §240.14e-1 through §240.14e-7 (Regulation 14E);

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(D) When withdrawal rights terminate, the issuer immediately accepts and promptly pays for all securities previously tendered upon termination of withdrawal rights; and

(E) The issuer immediately accepts and promptly pays for all securities tendered after the termination of withdrawal rights.

(ii) **Equal treatment-loan notes.** If the issuer offers loan notes solely to offer sellers tax advantages not available in the United States and these notes are not listed on any organized securities market nor registered under the Securities Act (15 U.S.C. 77a et seq.), the loan notes need not be offered to U.S. holders, notwithstanding paragraphs (f)(8) and (h)(9) of this section.

(iii) **Equal treatment-separate U.S. and foreign offers.** Notwithstanding the provisions of paragraphs (f)(8) and (h)(9) of this section, an issuer conducting an issuer tender offer meeting the conditions of paragraph (i)(1) of this section may separate the offer into two offers: one offer made only to U.S. holders and another offer made only to non-U.S. holders. The offer to U.S. holders must be made on terms at least as favorable as those offered any other holder of the same class of securities that is the subject of the tender offer.

**\*49** (3) For purposes of this paragraph (i):

(i) The issuer must include securities underlying American Depositary Shares that are exchangeable or convertible for such securities in determining the amount of securities outstanding of the class that is the subject of the offer, as well as, the percentage of the subject class of securities held of record by U.S. holders.

(ii) If an issuer commences an issuer tender offer during an ongoing tender or exchange offer for securities of the same class subject to the offer, the issuer must calculate the percentage of the class held by U.S. holders as of the same date used by the initial offeror.

(iii) Home jurisdiction means both the jurisdiction of the issuer's incorporation, organization or chartering and the principal foreign market where the issuer's securities are listed or quoted.

(iv) U.S. holder means any person whose address appears on the records of the issuer of the subject securities, or any voting trustee, depositary, share transfer agent, or any person acting in a similar capacity as being located in the United States. Unless information provided by the depository demonstrates otherwise, holders of American Depositary Receipts shall be counted as U.S. holders of the underlying securities for the purposes of this section.

14. By amending §240.14d-1 to redesignate paragraphs (c), (d), (e), and (f) as paragraphs (e), (f), (g) and (h), and to add new paragraphs (c) and (d) and Notes thereto to read as follows:

**§240.14d-1 Scope of and definitions applicable to Regulations 14D and 14E.**
                                    \* \* \* \* \*

(c) Any tender offer for the securities of a foreign private issuer as defined in §240.3b-4 shall be exempt from the requirements of Sections 14(d)(1) through 14(d)(7) of the Act (15 U.S.C. 78n(d)(1) through 78n(d)(7)), Regulation 14D (§240.14d-1 through §240.14d-10) and Schedules 14D-1 (§240.14d-100) and 14D-9 (§240.14d-101) thereunder, and §240.14e-1 and §240.14e-2 of Regulation 14E under the Act, if U.S. holders own of record 10 percent or less of the outstanding class of securities that is the subject of the tender offer and the following additional conditions are satisfied. For purposes of calculating the percentage of outstanding securities held by U.S. holders, exclude from the total number of shares outstanding shares held by non-U.S. persons who hold more than 10 percent of the subject securities.

(1) **Equal treatment.** The bidder must permit U.S. holders to participate in the offer on terms at least as favorable as those

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

offered any other holder of the same class of securities that is the subject of the tender offer, however:

(i) **Registered exchange offers.** If the bidder offers securities registered under the Securities Act of 1933 (15 U.S.C. 77a et seq.) and a cash-only alternative, the bidder must offer only the cash alternative to security holders in any state or jurisdiction that prohibits the sale of securities after the bidder has made a good faith effort to register or qualify the offer and sale of securities in that state or jurisdiction. When a cash-only alternative is not offered to security holders in any other jurisdiction, the issuer need not extend the offer to security holders in those states or jurisdictions that prohibit the offer and sale of the securities.

**\*50** (ii) **Exempt exchange offers.** If the bidder offers securities exempt from registration under the Securities Act of 1933 (15 U.S.C. 77a et seq.) and a cash-only alternative, the bidder must offer only the cash alternative to security holders in any state or jurisdiction in which the statutes or regulations do not provide a corresponding exemption from registration or qualification. When a cash-only alternative is not offered to security holders in any other jurisdiction, the bidder need not extend the offer to security holders in those states or jurisdictions that require registration or qualification.

(iii) **Disparate tax treatment.** If the bidder offers loan notes solely to offer sellers tax advantages not available in the United States and these notes are not listed on any organized securities market nor registered under the Securities Act of 1933 (15 U.S.C. 77a et seq.), the loan notes need not be offered to U.S. holders, notwithstanding §240.14d-10.

(2) **Informational documents.** (i) The bidder shall disseminate any informational document to U.S. holders, in English, on a comparable basis as provided to security holders in the home jurisdiction.

(ii) If the bidder disseminates solely by publication in its home jurisdiction, the bidder shall publish the information in the United States in a manner reasonably calculated to inform U.S. holders of the offer.

(iii) In the case of tender offers for securities described in Section 14(d)(1) of the Act (15 U.S.C. 78n(d)(1)), the bidder shall furnish to the Commission on Form CB (§249.480 of this chapter) any informational document it publishes or otherwise disseminates to holders of the outstanding class of securities. The bidder shall provide the Form CB to the Commission no later than the next business day after publication or dissemination.

(3) **Investment companies.** The issuer of the securities that are the subject of the tender offer is not an investment company registered or required to be registered under the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.).

(d) A person conducting a tender offer that meets the conditions in paragraph (d)(1) of this section shall be entitled to the exemptive relief specified in paragraph (d)(2) of this section:

(1) **Conditions.** (i) The subject company is a foreign private issuer as defined in §240.3b-4 and is not an investment company registered or required to be registered under the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.);

(ii) U.S. security holders do not hold of record more than 40 percent of the class of securities sought in the offer. For purposes of calculating the percentage of outstanding securities held by U.S. holders, exclude from the total number of shares outstanding shares held by non-U.S. persons who hold more than 10 percent of the subject securities; and

(iii) The bidder complies with all applicable U.S. tender offer laws and regulations, other than those pursuant to which an exemption has been provided for in paragraph (d)(2) of this section.

**\*51** (2) **Exemptions.** (i) **Withdrawal rights.** Notwithstanding the provisions of Section 14(d)(5) of the Act (15 U.S. C 78n(d)(5)) and §240.14d-7, a bidder in a tender offer meeting the conditions of paragraph (d)(1) of this section may terminate withdrawal rights before the expiration of the offer, if the offer is for all outstanding shares and:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611, Release No. 40678, Release No. 33-7611, Release No.                    Page 44
34-40678, Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

(A) All conditions to the offer are satisfied or waived before withdrawal rights terminate; except that, if it is impracticable to determine whether the minimum condition to the offer has been met at the expiration of the offer due to the home jurisdiction practice of tendering to multiple depositaries, the bidder may terminate withdrawal rights while determining whether the minimum condition has been satisfied. If the bidder determines that the minimum condition is not satisfied and extends the offer instead of returning the tendered shares, withdrawal rights must be extended during such additional offering period;

(B) All minimum time periods required by §240.14d-1 through §240.14d-10 (Regulation 14D) and §240.14e-1 through §240.14e-7 (Regulation 14E) are satisfied;

(C) The bidder extends withdrawal rights during all minimum time periods required by Regulation 14D and Regulation 14E;

(D) All securities previously tendered are immediately accepted and promptly paid for upon termination of withdrawal rights; and

(E) All securities tendered after the termination of withdrawal rights are immediately accepted and promptly paid for.

(ii) **Equal treatment-loan notes.** If the bidder offers loan notes solely to offer sellers tax advantages not available in the United States and these notes are not listed on any organized securities market nor registered under the Securities Act of 1933 (15 U.S.C. 77a et seq.), the loan notes need not be offered to U.S. holders, notwithstanding §240.14d-10.

(iii) **Equal treatment-separate U.S. and foreign offers.** Notwithstanding the provisions of §240.14d-10, a bidder conducting a tender offer meeting the conditions of paragraph (d)(1) of this section may separate the offer into two offers: one offer made only to U.S. holders and another offer made only to non-U.S. holders. The offer to U.S. holders must be made on terms at least as favorable as those offered any other holder of the same class of securities that is the subject of the tender offers.

(iv) **Commencement.** A public announcement of a tender offer meeting the conditions of paragraph (d)(1) of this section will not trigger the commencement requirements under §240.14d-2(b), if:

(A) The announcement is required by home jurisdiction law or practice;

(B) The announcement contains no information beyond the requirements of the home jurisdiction law or practice;

(C) The announcement, when disseminated in written form in the United States, contains a legend noting that the offer will not commence until the informational documents are mailed to shareholders, which mailing may not occur until permitted by the home jurisdiction; and

*52 (D) The bidder mails the informational documents within 30 days after the announcement or makes a public announcement if it decides not to commence an offer.

Note to Paragraph (d)(2)(iv). If the tender offer meets these conditions, the tender offer will commence only upon mailing or publishing the offer. Further, the Schedule 14D-1 need not be filed with the Commission pursuant to §240.14d-3 until the offer is mailed or published. In addition, making an announcement meeting these conditions would not constitute a solicitation or recommendation with respect to the offer within the meaning of §240.14d-9.

(v) **Notice of extensions.** Notice of extensions made in accordance with the requirements of the home jurisdiction law or practice will satisfy the requirements of §240.14e-1(d).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(vi) **Prompt payment.** Payment made in accordance with the requirements of the home jurisdiction law or practice will satisfy the requirements of §240.14e-1(c).

GENERAL NOTES to paragraphs (c) and paragraphs (d):
1. If a bidder believes it requires exemptive relief beyond that provided for in Section 14d-1(d)(2), the bidder should submit a written application requesting relief along with an analysis of the basis for such relief. The bidder should submit the application to the Director of the Division of Corporation Finance.

2. The bidder should include securities underlying American Depositary Shares convertible or exchangeable into the securities that are the subject of the tender offer when calculating the number of target securities outstanding, as well as the number held of record by U.S. holders.

3. Home jurisdiction means both the jurisdiction of the target company's incorporation, organization or chartering and the principal foreign market where the target company's securities are listed or quoted.

4. U.S. holder means any person whose address appears on the records of the issuer of the subject securities, or any voting trustee, depositary, share transfer agent, or any person acting in a similar capacity as being located in the United States. Unless information provided by the depositary demonstrates otherwise, holders of American Depositary Receipts shall be counted as U.S. holders of the underlying securities for the purposes of §§240.14d-1(c) and (d).

5. For purposes of §240.14d-1(c), with respect to a tender offer conducted without the cooperation of the issuer of the subject securities, the issuer of the subject securities will be presumed to be a foreign private issuer and U.S. holders will be presumed to hold 10 percent or less of such outstanding securities, unless:

(a) The aggregate trading volume of that class of securities on all national securities exchanges in the United States, on the Nasdaq market, or on the OTC market, as reported to the NASD, exceeds 10 percent of the worldwide aggregate trading volume of that class of securities over the 12 calendar month period prior to commencement of the offer;

*53 (b) The most recent annual report or annual information filed or submitted by the issuer with securities regulators of the home jurisdiction or with the Commission indicates that U.S. holders hold more than 10 percent of the outstanding subject class of securities; or

(c) The bidder knows or has reason to know that the level of U.S. ownership exceeds 10 percent of such securities.

6. For purposes of §240.14d-1(d), with respect to a tender offer conducted without the cooperation of the issuer of the subject securities, the issuer of the subject securities will be presumed to be a foreign private issuer and U.S. holders will be presumed to hold 40 percent or less of the outstanding securities, unless:

(a) The aggregate trading volume of that class of securities on all national securities exchanges in the United States and on the Nasdaq market exceeds 40 percent of the worldwide aggregate trading volume of that class of securities over the 12 calendar month period prior to commencement of the offer;

(b) The most recent annual report or annual information filed or submitted by the target company with securities regulators of the home jurisdiction or with the Commission indicates that U.S. holders hold more than 40 percent of the outstanding subject class of securities; or

(c) The bidder knows, or has reason to know, that the level of U.S. ownership exceeds 40 percent of such securities.

7. If a bidder commences a tender offer during an ongoing tender or exchange offer for securities of the same class subject to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

its offer, the bidder should calculate the percentage of target securities held by U.S. holders as of the same date used by the initial bidder.

15. By amending §240.14e-2 to add paragraph (d) to read as follows:

**§240.14e-2 Position of subject company with respect to a tender offer.**
* * * * *

(d) <u>Exemption for cross-border tender offers.</u> Any issuer of a class of securities that is the subject of a tender offer conducted in reliance upon and in conformity with §240.14d-1(c), or any other person subject to §240.14d-9, shall be exempt from §240.14e-2 and §240.14d-9 if:

(1) The issuer, or any other person subject to §240.14d-9, furnishes to the Commission on Form CB (§249.480 of this chapter) the entire informational document it publishes or otherwise disseminates to holders of the class of securities in connection with the tender offer no later than the next business day after publication or dissemination;

(2) The issuer, or any other person subject to §240.14d-9, disseminates any informational document to U.S. holders, in English, on a comparable basis as provided to security holders in the issuer's home jurisdiction; and

(3) If the issuer, or any other person subject to §240.14d-9, disseminates solely by publication in its home jurisdiction, such person shall publish the information in the United States in a manner reasonably calculated to inform U.S. security holders of the offer.

**PART 249-FORMS, SECURITIES EXCHANGE ACT OF 1934**
**\*54** 16. The authority citation for Part 249 continues to read in part as follows:

**Authority:** 15 U.S.C. 78a, et seq., unless otherwise noted;

* * * * *

17. By adding Subpart E, §249.480 and Form CB to read as follows:

**Subpart E-Forms for Statements Made in Connection with Exempt Tender Offers**

**§249.480 Form CB, tender offer statement in connection with a tender offer for a foreign private issuer.**
This form shall be used to report an issuer tender offer conducted in compliance with §240.13e-4(h)(8) of this chapter and a third-party tender offer conducted in compliance with §240.14d-1(c) of this chapter. This report shall also be used by a target company pursuant to §240.14e-2(d)(1) of this chapter.

[Note: Form CB does not appear in the Code of Federal Regulations. Form CB is attached as Appendix A.]

**PART 260-GENERAL RULES AND REGULATIONS, TRUST INDENTURE ACT OF 1939**
18. The authority citation for Part 260 continues to read as follows:

**Authority:** 15 U.S.C. 77eee, 77ggg, 77nnn, 77sss, 78ll(d), 80b-3, 80b-4, and 80b-11.

19. By adding §260.4d-10 to read as follows:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**§260.4d-10 Exemption for securities issued pursuant to §230.802 of this chapter.**

Any debt security, whether or not issued under an indenture, shall be exempt from the operation of the Act if made in compliance with §230.802 of this chapter.

By the Commission.

Jonathan G. Katz
Secretary

FN1. 15 U.S.C. 77a et seq.

FN2. 15 U.S.C. 77aaa et seq.

FN3. 17 CFR 239.42 and 17 CFR 230.144.

FN4. 17 CFR 240.10b-13, 240.13e-3, 240.13e-4, 240.14d-1, 240.14d-2, 240.14d-7, 240.14d-10, 240.14e-1 and 240.14e-2.

FN5. 15 U.S.C. 78a et seq.

FN6. 17 CFR 200.30-1 and 200.30-5.

FN7. For purposes of this release, the term "tender offer" includes tender offers where either cash or stock is issued in the offer.

FN8. For purposes of this release, the term "exchange offer" means a tender offer where stock is issued in the offer.

FN9. For purposes of this release, the term "business combination" means a statutory amalgamation, merger, arrangement or other reorganization requiring the vote of security holders of one or more of the participating companies. It also includes a statutory short form or "squeeze out" merger that does not require a vote of security holders.

FN10. The Commission has also recently proposed significant revisions to the tender offer regulations. These revisions would update and simplify the rules and regulations applicable to takeover transactions. Regulation of Takeovers and Security Holder Communications, Securities Act Release No. 7607 (November 3, 1998).

FN11. "Foreign private issuer" is defined in Rule 3b-4 under the Exchange Act and Rule 405 under the Securities Act [17 CFR 240.3b-4(c) and 230.405].

FN12. 15 U.S.C. 78m(e) and 78n(d); 17 CFR 240.13e-4, 14d-1 to 14d-10, 14e-1 and 14e-2.

FN13. 15 U.S.C. 77a et seq.

FN14. 15 U.S.C. 77aaa et seq.

FN15. Because a large percentage of foreign companies have only a small number of U.S. security holders, it is quite common for bidders for the securities of those foreign companies to exclude U.S. holders. For example, based on a sample of 31 tender offers compiled in 1997 by the U.K. Takeover Panel (the entity that regulates tender offers in the United Kingdom), when the U.S. ownership of the target was less than 15% (30 offers), the bidders excluded U.S. persons in all of the offers.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

When the U.S. ownership was more significant, such as 38% (one offer), the bidders included U.S. persons. In the 30 offers that excluded U.S. persons, the ownership percentage was as follows: in 27 offers, U.S. persons held less than 5%; in the remaining three offers, U.S. persons held 7%, 8% and 10-15%, respectively.

FN16. Concept Release on Multinational Tender and Exchange Offers, Securities Act Release No. 6866 (June 6, 1990) [55 FR 23751].

FN17. The Commission received 31 letters of comment on the concept release. Those letters and a summary of the comments can be obtained for public inspection and copying by requesting File No. S7-10-90 through our public reference room in Washington, D.C.

FN18. The City Code on Takeovers and Mergers and the Rules Governing Substantial Acquisition of Shares (Fifth Edition, Dec. 12, 1996) (the "City Code"). The City Code states general principles for the regulation of takeovers conducted in the United Kingdom and the Republic of Ireland.

FN19. International Tender and Exchange Offers, Securities Act Release No. 6897 (June 5, 1991) [56 FR 27582].

FN20. Cross-Border Rights Offers, Securities Act Release No. 6896 (June 4, 1991) [56 FR 27564].

FN21. The Commission received a total of 52 comment letters on the two 1991 proposals. Those letters and a summary of the comments can be obtained for public inspection and copying by requesting File No. S7-17-91 and File No. S7-18-91 at our public reference room in Washington, D.C.

FN22. U.S. ownership in foreign companies increased from $158.8 billion in 1991 to $558.9 billion in 1996. Federal Reserve Statistical Release, Flow of Funds Accounts of the United States, March 14, 1997. The number of foreign companies reporting under the Exchange Act has more than doubled since 1991 (439), with over 1,100 foreign companies reporting as of June 1998.

FN23. The number of cross-border mergers and acquisitions in Europe increased from 1,434 in 1991 to 1,648 in 1997. The dollar value of such transactions increased from $40.4 billion in 1991 to $136.9 billion in 1997. Mergers & Acquisitions, March/April 1998.

FN24. See, e.g., John Labatt Ltd. v. Onex Corp., 890 F. Supp. 235 (S.D.N.Y. 1995) (Court held that the failure to extend the offer to U.S. security holders did not violate U.S. securities laws. The U.S. ownership in the target was approximately 12%). Two of the 10 largest tender offers completed in 1996 excluded U.S. holders: Central & South West's offer for Seeboard PLC (tender offer price represented a 20% premium to the share price) and General Public Utilities' offer for Midlands Electricity PLC (tender offer price represented a 14.3% premium to the share price). Mergers & Acquisitions, March/April 1997. See also Note 15 (discussing other tender offers that excluded U.S. security holders).

FN25. Based on information received from the following depositary banks, investors holding American Depositary Receipts ("ADRs") through the Bank of New York were cashed out in 29 of the 37 rights offerings from 1994 to 1996. Investors holding ADRs through Morgan Guaranty Trust Company of New York received cash in lieu of rights in 23 of the 24 rights offerings. Of the 23, six of the offers permitted qualified U.S. institutional buyers to participate in the rights offerings.

FN26. Since 1990, bidders in 54 transactions sought exemptive relief from the staff to facilitate including U.S. shareholders. Twenty of those transactions would have been eligible for the Tier I exemption proposed today and 31 would have been eligible to use the Tier II exemption. Three of these transactions would have been ineligible for either Tier I or Tier II exemptions, since U.S. persons held more than 40% of the securities sought in the offer. Thus, based on transactions that were open to U.S. holders, on average, the Tier II exemption could have been invoked approximately four times a year since 1990.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.                    Page 49
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

FN27. <u>See</u> National Securities Market Improvement Act of 1996, 104 Pub. L. No. 290, 110 Stat. 3416 (1996) (the "National Securities Markets Improvement Act").

FN28. <u>17 CFR 240.14e-1</u>.

FN29. Section 14(e), <u>15 U.S.C. 78n(e)</u>, provides in part:
> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer.

FN30. See proposed Rules 801(a)(3); 802(a)(2); 13e-4(h)(8)(i); and 14d-1(c)(1).

FN31. We recently gave written guidance with respect to registration requirements under the federal securities laws. <u>Statement of the Commission Regarding Use of Internet Websites, Securities Act Release No. 7516 (March 23, 1998)</u> [63 FR 14806].

FN32. Rules 13e-3, 13e-4, 14d-1 through 14d-10 and 14e-1 and 14e-2, <u>17 CFR 240.13e-3</u>, <u>240.13e-4</u>, <u>240.14d-1</u> through <u>240.14d-10</u> and <u>240.14e-1</u> and <u>240.14e-2</u>.

FN33. <u>See</u> Section II.H, <u>infra,</u> for a discussion of how U.S. ownership is determined.

FN34. <u>15 U.S.C. 78r</u>.

FN35. Form F-X is used by certain non-U.S. companies to appoint an agent for service in the United States.

FN36. <u>17 CFR 240.13e-3</u>.

FN37. <u>See</u> In the <u>Matter of Procordia Aktiebolag and Aktiebolaget Volvo , Securities Exchange Act Release No. 27671 (Feb. 2, 1990)</u>(7.9% U.S. record holders); In the <u>Matter of Incentive AB and Gambro AB, Securities Exchange Act Release No. 36793 (Jan. 31, 1996)</u>(1.89% U.S. record holders).

FN38. <u>15 U.S.C. 78m(d)</u>, <u>78m(g)</u>, and <u>78m(f)</u>.

FN39. For example, Sections 10(b) and 14(e) of the Exchange Act, 15 U.S.C. 78(b) and <u>78n(e)</u>, and Rules 10b-5 and 14e-3 thereunder, <u>17 CFR 240.10b-5</u>, and <u>240.14e-3</u> would continue to apply.

FN40. In some cases, securities issued under proposed Rules 801 and 802 may be subject to state registration requirements. Rights offerings under proposed Rule 801 are less likely to pose conflicts with state securities laws. The securities laws of many states contain a provision patterned after <u>Section 402(14) of the Uniform Securities Act</u> exempting from registration securities offerings to existing security holders of the issuer. Exemptions from state law registration requirements for securities offered through exchange offers, such as those covered by proposed Rule 802, are much more rare.

FN41. "Loan notes" generally are unsecured short-term debt obligations, which are guaranteed as to principal and interest by a bank and permit the holder to require all or any part of the principal amount of the loan notes to be repaid at par together with any accrued interest on any interest payment date. Under U.K. tax laws, a security holder who receives loan notes and does not own more than five percent of the outstanding shares of the target company would not be subject to a capital gains tax to the extent the security holder receives loan notes. A U.S. security holder, on the other hand, would be subject to a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,   Release No. 40678,   Release No. 33-7611,   Release No.
34-40678,   Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

Page 50

capital gains tax under the Internal Revenue Code, since the security holder would not be accorded special treatment under the installment sales method of income recognition. I.R.C 453(k)(2)(A).

FN42. Commenters on the 1991 proposals raised concerns that a home country may have no regulatory safeguards. They suggested that in those instances, it would be fair to require the U.S. offer to comply with the regulatory structure of the target company's principal foreign market.

FN43. See In the Matter of Trinity Acquisition PLC, Exchange Act Release No. 40246 (July 22, 1998) (U.S. persons held 45.46% of the target's securities); In the Matter of GE Capital Corp., Exchange Act Release No. 38888 (July 30, 1997) (U.S. persons held 58.27% of the target's securities). Because of the significant U.S. ownership interest in the target companies, the relief was narrowly tailored to accommodate direct conflicts between U.S. and U.K. law or practice and to allow the offers to proceed in a manner that did not impair the interests of U.S. persons.

FN44. 15 U.S.C. 78n(e).

FN45. 17 CFR 240.14e-1.

FN46. 17 CFR 240.14e-1(b).

FN47. We granted relief in the following transactions based on common conflicts between foreign and U.S. regulatory schemes:
AUSTRALIA: Australian National Indus. Ltd.; Palmer Tube Mills Ltd., SEC No-Action Letter (Aug. 30, 1994).
CANADA: Varity Corp., SEC No-Action Letter (Oct. 15, 1991).
FRANCE: Rhône-Poulenc S.A., SEC No-Action Letter (July 8, 1993); Pechiney Privatization, SEC No-Action Letter (Dec. 6, 1995).
IRELAND: In the Matter of Den norske stats oljeselskap a.s. and Statoil (U.K.) Ltd., Exchange Act Release No. 36379 (Oct. 17, 1995).
SWEDEN: In the Matter of Pharmacia & Upjohn, Inc., Pharmacia Aktiebolag and The Upjohn Co., Exchange Act Release No. 36240A (Sept. 27, 1995); In the Matter of Incentive AB and Gambro AB, Exchange Act Release No. 36793 (Jan. 31, 1996).
SWITZERLAND: Ciba Specialty Chemicals Holding Inc., SEC No-Action Letter (Feb. 18, 1997).
UNITED KINGDOM: Pacificorp, Exchange Act Release No. 38776 (June 25, 1997); In the Matter of Amersham International PLC and Nycomed ASA, Exchange Act Release No. 38797 (July 1, 1997).

FN48. If the request relates to an issuer tender offer, the request should be directed to the Office of Risk Management and Control in the Commission's Division of Market Regulation or the Office of Mergers and Acquisitions in the Commission's Division of Corporation Finance. If the request relates to a third party tender offer, the request should be directed to the Office of Mergers and Acquisitions.

FN49. The proposed Tier II exemption differs from the 1991 proposals. The 1991 proposals granted relief through an order that was limited to third-party tender offers for the securities of U.K. target companies subject to the City Code (the "U.K. Exemptive Order"). The U.K. Exemptive Order would have allowed the bidder to proceed on the basis of U.K. offering documents without complying with U.S. disclosure requirements, and would have allowed tender offers to proceed simultaneously in the United Kingdom and the United States on the same terms and in accordance with both the Williams Act and the City Code. The Tier II offer exemption is modeled after the accommodations reflected in the U.K. Exemptive Order. However, because of the extensive ownership by U.S. persons of securities of foreign issuers from jurisdictions other than the United Kingdom, and our experience in granting accommodations for offers based on regulatory schemes in other jurisdictions, the Tier II offer exemption would not be limited to offers governed by the City Code.

FN50. The U.K. Exemptive Order would have covered only third-party offers, since the City Code does not govern issuer

tender offers.

FN51. Multijurisdictional Disclosure and Modifications to the Current Registration and Reporting System for Canadian Issuers, Exchange Act Release No. 29354 (June 13, 1991) [56 FR 30036].

FN52. Rules 13e-4(e), 14d-4, 14d-9 and 14e-2, 17 CFR 240.13e-4(e), 240.14d-4, 240.14d-9 and 240.14e-2.

FN53. Rule 14d-2(b), 17 CFR 240.14d-2(b).

FN54. Under U.K. law, once a bidder forms a firm intention to make an offer, the bidder must make a detailed announcement of the terms of its offer. See City Code, Rule 2.2(a). The bidder must then mail the offer document within 28 days of that announcement. See City Code, Rule 30.1.

FN55. Rule 14d-9, 17 CFR 240.14d-9.

FN56. We recently adopted a safe harbor under the tender offer rules. The safe harbor provides that a bidder or target company does not trigger the disclosure or filing requirements of the tender offer rules by granting representatives of the press access to offshore press conferences or meetings with management, or to press releases and other materials, even though a proposed tender offer is discussed at those meetings or in the materials. A bidder or target company would not need to satisfy the requirements imposed by the Tier II exemption to avoid triggering Rule 14d-2(b) or 14d-9 as a result of these types of offshore press activities. Bidders will have to rely on the Tier II exemption only when the announcement of the offer is disseminated in a manner inconsistent with the requirements of the offshore press safe harbor, for example, by publishing the announcement in the United States. Rule 14d-1(c), 17 CFR 240.14d-1(c).

FN57. Exchange Act Section 14(d)(5), 15 U.S.C. 78d(5); Rule 14d-7, 17 CFR 240.14d-7.

FN58. City Code, Rule 34. An offer typically becomes "unconditional as to acceptances" when the bidder receives enough tendered securities that (when combined with the securities already owned or purchased) constitute more than 50% of the aggregate number of the target company's outstanding shares. See City Code, Rule 10.

FN59. City Code, Rule 31.4 An offer normally becomes "wholly unconditional" once all conditions to the offer have been satisfied.

FN60. If we permitted this relief in a partial offer, security holders who tendered prior to the termination of withdrawal rights would be prorated on a different basis than those who tender after the termination of withdrawal rights. Because we are requiring that security holders who tender prior to the termination of withdrawal rights be paid promptly upon that termination, a bidder would not know at the time of purchase the amount of tenders that would come in after the termination of withdrawal rights. Consequently, the bidder would need to prorate security holders differently depending on when they tendered.

FN61. This position would also apply in situations such as Swedish transactions where withdrawal rights are terminated for a ten-day period during which the bidder determines whether the minimum condition has been satisfied. See, e.g., In the Matter of Incentive AB and Gambro AB, Exchange Act Release No. 36793 (Jan. 31, 1996). The Commission has granted exemptive relief in those situations, since all conditions (other than the minimum tender condition) and minimum time periods have been satisfied prior to terminating withdrawal rights. If the bidder determines that the minimum tender condition is not satisfied and extends the offer instead of returning the tendered shares, withdrawal rights must be extended during this additional offering period.

FN62. See, e.g., In re Central and South West Corp. and Houston Indus.. Exchange Act Release No. 36285 (Sept. 27, 1995).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.                    Page 52
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

FN63. Rule 14d-10, 17 CFR 240.14d-10

FN64. See, e.g., In the Matter of Incentive AB and Gambro AB, Exchange Act Release No. 36793 (Jan. 31, 1996).

FN65. See, e.g., In re Central and South West Corp. and Houston Indus., Exchange Act Release No. 36285 (Sept. 27, 1995).

FN66. See, e.g., Oldcastle, Inc., SEC No-Action Letter (July 3, 1986).

FN67. Amendments to Tender Offer Rules--All-Holders and Best Price, Securities Act Release No. 6653 (July 11, 1986) [51 FR 25873].

FN68. Rule 14e-1(a) and (b), 17 CFR 240.14e-1(a) and (b).

FN69. For example, French regulations require that the offer be held open for 20 French business days, which may differ from U.S. business days. General Regulations of the Paris Bourse by the Conseil des Bourses de Valeurs, Article 5-2-10 (1996). U.K. regulations require that the offer be held open for 21 calendar days. City Code, Rule 31.1.

FN70. Rule 14e-1(d), 17 CFR 240.14e-1(d).

FN71. We have granted exemptive relief to Swedish offers where, due to market practice in the jurisdiction, it is impracticable to announce an extension for up to 10 days following the expiration of the offer. During that period, shareholders do not have withdrawal rights. See In re Pharmacia & Upjohn, Inc., Pharmacia Aktiebolag and the Upjohn Co., Exchange Act Release No. 36240A (Sept. 27, 1995); In the Matter of Incentive AB and Gambro AB, Exchange Act Release No. 36793 (Jan. 31, 1996).

FN72. Rule 14e-1(c), 17 CFR 240.14e-1(c).

FN73. Rule 15c6-1(a), 17 CFR 240.15c6-1(a).

FN74. City Code, Rule 31.8.

FN75. See, e.g., In the Matter of Texas Utilities and The Energy Group PLC, Exchange Act Release No. 39810 (March 27, 1998).

FN76. Interpretive Release Relating to Tender Offer Rules, Exchange Act Release No. 24296 (Apr. 3, 1987), [52 FR 11458].

FN77. See Section II.C.2.b for a discussion of the permissibility of terminating withdrawal rights during the Subsequent Offering Period.

FN78. See In the Matter of Pacificorp and The Energy Group, Exchange Act Release No. 38776 (June 25, 1997).

FN79. Since the U.S. rules do not contemplate a Subsequent Offering Period, this relief would not be appropriate in a domestic transaction.

FN80. The Commission recently commenced a comprehensive review of Rule 10b-13, including its application in the context of offers for U.S. issuers. In connection with this review, we recently proposed revising Rule 10b-13 and redesignating it as Rule 14e-5. Securities Act Release No. 7607 (November 3, 1998). If those proposals are adopted, any changes made to Rule

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.                           Page 53
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

10b-13 to accommodate cross border transactions will be incorporated into Rule 14e-5.

FN81. 17 CFR 240.10b-13.

FN82. See International Tender and Exchange Offers, Securities Act Release No. 6897 (June 5, 1991) [56 FR 27582, 27597].

FN83. See, e.g., Offers for Smith New Court PLC (July 26, 1995).

FN84. See, e.g., City Code Rules 6.1 and 6.2; see also Ontario Securities Act §§ 97(1), 97(2), 97(3); Ontario Securities Commission Policy Statement 9.3.

FN85. See Brief of the Securities and Exchange Commission, Amicus Curiae, Texaco Inc. v. Pennzoil Inc. (Tex. Sup. Ct. July 22, 1987).

FN86. Order of Exemption from Provisions of Rules 10b-6 and 10b-13 Under the Securities Exchange Act of 1934 for Canadian Multijurisdictional Disclosure System, Securities Exchange Act Release No. 29355 (June 21, 1991).

FN87. Id.

FN88. See, e.g., Incentive A.B. Offer for Gambro A.B. (February 1, 1996).
    Additionally, we have granted Rule 10b-13 exemptions to permit concurrent U.S. and offshore tender offers. See, e.g., Pechiney Privatization (Dec. 6, 1995).

FN89. See comment letters and a summary of the comments in File No. S7-18-91 at our public reference room in Washington, D.C.

FN90. Of course, broker-dealers that solicit tenders from U.S. persons would be required to register as broker-dealers under Section 15 of the Exchange Act, absent an available exemption.

FN91. Rule 10b-13 exemption requests should be directed to the Office of Risk Management and Control in the Commission's Division of Market Regulation, at (202) 942-0772.

FN92. See In the Matter of Trinity Acquisition PLC, Exchange Act Release No. 40246 (July 22, 1998). In that offer, U.S. record and beneficial ownership in the target's securities was estimated at 45.46%. Despite the high level of U.S. ownership, the Commission granted a Rule 10b-13 exemption based on the following factors: the transaction was governed by the City Code, which requires that the offer's consideration be increased to the level of any higher price that is paid for purchases of the target's securities outside the offer and does not permit the offer to be withdrawn, except in limited circumstances; the offer was an all cash, any-and-all offer, thus no risk of proration existed; and the principal trading market for the target securities clearly was the London Stock Exchange. Also, the time value of money must be considered in the Rule 10b-13 context because those shareholders paid outside the offer receive consideration sooner than those who tender. This transaction, however, did not involve a substantial difference in the time value of money for purchases outside the offer. Other Rule 10b-13 concerns were not an issue because of the above protections against such abuses in the City Code.

FN93. See Exemption under Rule 10b-13 for Certain Principal Trading and Market Making Activities, dated June 29, 1998 (Eligible Trader Class Exemption). If the activities of Eligible Traders were in connection with a Tier I offer, where U.S. persons held of record 10 percent or less of the class of securities sought in the offer, the proposed Tier I exception to Rule 10b-13 also would be applicable. Prior to the issuance of the Eligible Trader Class Exemption, the Commission granted Rule 10b-13 relief to U.K. market makers or principal traders on a case-by-case basis. See, e.g., SunGard Data Systems, Inc. Offer for Rolfe & Nolan PLC (March 4, 1998); Doncasters PLC Offer for Triplex Lloyd PLC (March 11, 1998).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.           Page 54
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

FN94. See City Code Rule 38; Panel Statement 1997/11 dated October 16, 1997.

FN95. Anti-manipulation Rules Concerning Securities Offerings, Securities Exchange Act Release No. 38067 (January 3, 1997) [62 FR 520].

FN96. The term "distribution" is defined in 17 CFR 242.100. Where the portion of an exchange offer or rights offering made in the United States does not constitute a "distribution" (e.g., where it does not satisfy the "magnitude of the offering" or "special selling efforts and selling methods" prongs of the definition), it is not subject to Regulation M.

FN97. For example, the trading restrictions in Rule 101 of Regulation M, which apply to underwriters and other broker-dealers, do not apply to actively traded securities, as defined in 17 CFR 242.100.

FN98. The 1991 proposals provided a dual approach: (1) a registration exemption pursuant to Section 3(b) of the Securities Act for an issuer's securities offered with respect to the foreign target company's securities, provided that the aggregate dollar value of the securities offered in the United States did not exceed $5 million; and (2) registration on the basis of home jurisdiction disclosure documents, if U.S. residents held five percent or less of the foreign target company's securities before the offer commenced.

FN99. See Notes 15, 24 and 25, supra.

FN100. See General Note 2 to proposed Rules 800, 801 and 802.

FN101. A number of commenters on the 1991 proposals urged the Commission to adopt a higher percentage to broaden the offers that could be registered based on home country disclosure requirements. Under the current proposals, these offers would be conducted on an exempt, rather than a registered, basis. For that reason, we have determined not to propose a higher U.S. ownership threshold.

FN102. See Note 27, supra.

FN103. See General Note 9 to Proposed Rules 800-802.

FN104. See General Note 9 to Proposed Rules 800-802.

FN105. Proposed Rule 800. As proposed, the term "equity securities" does not include convertible securities, warrants, rights, or options.

FN106. 17 CFR 230.901 through 230.905.

FN107. 15 U.S.C. 78m(a) and 78o(d).

FN108. As proposed in 1991, Rule 801 would have been available to foreign private issuers filing reports with the Commission pursuant to Sections 13(a) or 15(d) of the Exchange Act which were current with respect to the filing obligations at the time of the offering. It also would have been available to foreign private issuers exempt from the requirements of Section 12(g) of the Exchange Act pursuant to Rule 12g3-2(b), if the offeror had a class of equity securities listed or quoted on at least one designated offshore securities market, was in compliance with the listing requirements applicable to those securities and, in addition, either (a) had maintained such listing or quotation continuously for 36 months immediately prior to the commencement date of the offering, or (b) had a public float in the listed securities of not less than $75 million. These same eligibility criteria applied to the proposed registration form.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,  Release No. 40678,  Release No. 33-7611,  Release No.                    Page 55
34-40678,  Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

FN109. See Proposed Rule 801(a)(4)(iii).

FN110. Form F-X is used by certain non-U.S. companies to appoint an agent for service of process in the United States.

FN111. This is similar to the 1991 proposals.

FN112. 15 U.S.C. 77ddd.

FN113. Section 318(c) of the Trust Indenture Act, 15 U.S.C. 77rrr(c). Every qualified indenture is deemed to automatically include Sections 310 through 318(a) of the Trust Indenture Act.

FN114. Section 316(b) of the Trust Indenture Act, 15 U.S.C. 77ppp(b).

FN115. Section 311 of the Trust Indenture Act, 15 U.S.C. 77kkk.

FN116. 17 CFR 260.5a-1.

FN117. 15 U.S.C. 77ddd(d). Section 304(d) gives the Commission by rule or order, the authority to exempt conditionally or unconditionally any indenture from one or more provisions of the Trust Indenture Act. The Commission may employ this exemptive authority "if and to the extent that such exemption is necessary or appropriate in the public interest and consistent with the protection of investors and the purposes fairly intended" by the Trust Indenture Act.

FN118. See General Note 5 to proposed Rules 800-802.

FN119. See Preliminary Note 7 to Regulation D, 17 CFR 230.501 through 230.508.

FN120. See Regulation D, 17 CFR 230.505 through 230.506.

FN121. See Regulation D, 17 CFR 230.504 through 230.505.

FN122. See General Notes 1, 3 and 4 to proposed Rules 800-802.

FN123. 15 U.S.C. 77k.

FN124. 17 CFR 240.12g3-2(b).

FN125. 15 U.S.C. 80a-1 et seq. This is similar to the 1991 proposals.

FN126. 15 U.S.C. 80a-7(d). Section 7(d) prohibits a foreign investment company from using U.S. jurisdictional means to offer its securities publicly, or to U.S. persons, unless the Commission issues an exemptive order permitting the company to register under the Investment Company Act. Id. A tender offer, exchange offer, business combination, or rights offering by a foreign investment company may constitute a public offering.

FN127. See Offshore Offers and Sales, Securities Act Release No. 6779 (June 10, 1988) (53 FR 22661 (June 17, 1988)), at nn. 73-75 and accompanying text; Offshore Offers and Sales, Securities Act Release No. 6863 (April 24, 1990) (55 FR 18306 (May 2, 1990)), at nn. 151-53 and accompanying text. A closed-end investment company that is registered under the Investment Company Act, however, like other non-investment company issuers, may be able to issue securities abroad

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

without registering those securities under the Securities Act. See id.

FN128. Issuers relying on section 3(c)(1) or 3(c)(7) of the Investment Company Act (15 USC 80a-3(c)(1) and 15 U.S.C. 80a-3(c)(7)) for an exception from the definition of "investment company" may not offer securities publicly in the United States. Reliance on Rule 801 or 802 by these issuers thus would be inconsistent with their unregistered status under the Investment Company Act.

FN129. Rule 3a-6, 17 CFR 270.3a-6, generally excepts foreign banks and insurance companies from the definition of "investment company" under the Investment Company Act. See Exception from the Definition of Investment Company for Foreign Banks and Foreign Insurance Companies, Investment Company Act Release No. 18381 (Oct. 29, 1991) [56 FR 56294] (adopting Rule 3a-6 and rescinding Rule 6c-9 under the Investment Company Act). The Rule permits these entities to sell their securities publicly in the United States without first registering as investment companies. Foreign banks and insurance companies relying on Rule 3a-6 to make a public offering of their securities in the United States, as well as certain of their holding companies and finance subsidiaries relying on Rules 3a-1 and 3a-5, respectively, generally are required by Rule 489 under the Securities Act to file a Form F-N with the Commission.

FN130. In measuring the percentage of the class of securities held by U.S. holders, securities of that class underlying securities convertible into or exchangeable for securities of such class will be included in the calculation. See Rule 13d-3(d). Securities represented by ADRs, or other forms of depositary receipts, such as Global Depositary Receipts ("GDRs"), likewise, will be included. In calculating the percentage of outstanding securities of the class held in the United States, shares represented by ADRs will be included in both the numerator and the denominator, treating the ordinary shares held in the United States (represented by ADRs) and ordinary shares not represented by ADRs (wherever held) as a single class, as is currently the practice. American Depositary Receipts, Exchange Act Release No. 29226 (May 23, 1991) [[56 FR 24420].

FN131. See also the Foreign Disclosure Proposing Release, infra Note 138, MJDS, supra Note 51, and Cross Border Rights Offer Release, supra Note 20, which used the same definition of U.S. holder.

FN132. Rule 3b-4, 17 CFR 240.3b-4 (number of shareholders resident in the United States determined by looking to how a holder's address appears on the records of the issuer or depositary). See also Instruction A.2. to Schedule 14D-1F.

FN133. See, e.g., Techne Corp., SEC No-Action Letter (Sept. 20, 1988); CFAC REMIC Trust 1989-A, SEC No-Action Letter (Mar. 30, 1990). See also Rule 12g5-1, 17 CFR 240.12g5-1 (treating all accounts held by a particular broker-dealer, bank, or custodian as one record holder).

FN134. Cf., Rule 12g5-1(b), 17 CFR 240.12g5-1(b).

FN135. Hostile bidders often will not be in a position to obtain residency information from a depositary transfer agent, or other persons acting on the issuer's behalf. We are proposing to provide third parties with certain presumptions based on trading volume to address this problem. See Section II.H.3. below.

FN136. Exemptions for transactions like issuer tender offers or rights offerings do not pose this problem. An issuer can and must examine its own records and those of transfer agents and depositaries acting on its behalf to obtain the necessary information regarding U.S. ownership of its own securities.

FN137. Proposed Amendment to Regulation S-K, Form 20-F, Proposed Form 40-F and Rule 12g3-2; Proposed New Forms for Furnishing Materials Pursuant to Rule 12g3-2(b), Securities Act Release No. 6898 (June 6, 1991) [56 FR 27612].

FN138. If U.S. ownership of more than 5 percent is reported in public filings with the Commission, such as Schedule 13G, we would take the position that the bidder has reason to know the level of U.S. ownership exceeds 5 percent.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7611,   Release No. 40678,   Release No. 33-7611,   Release No.                    Page 57
34-40678,   Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)

FN139. This includes Form 20-F and 6-K, which are available only to foreign private issuers. Conversely, if a foreign issuer is reporting on the Commission's forms for domestic issuers, the bidder would have reason to believe it is not a foreign private issuer.

FN140. See General Instruction I.A.5 to Schedule 14D-1F, 17 CFR 240.14d-102.

FN141. The term "tender offer" includes both cash tender offers and exchange offers. The term "exchange offer" means a tender offer where securities are being issued as consideration.

FN142. See supra, Note 24.

FN143. Investors holding ADRs through Bank of New York received cash in lieu of rights in 29 of the 37 rights offerings from 1994 to 1996. Investors holding ADRs through Morgan Guaranty Trust Company of New York also were frequently cashed out in rights offerings. In 1996, these investors received cash in lieu of rights in 23 of the 24 rights offers. In four of such cases, however, the proceeds were too small to distribute. Of the 23, six of the offers permitted qualified institutional buyers to participate in the rights offerings.

FN144. See Section V., infra, for a description of the Form CB.

FN145. Form F-X is used by certain non-U.S. entities to appoint an agent for service of process in the United States.

FN146. We cannot quantify the cost savings that would result from not imposing the Commission's procedural requirements.

FN147. 15 U.S.C. 78w(a)(2).

FN148. Form F-X is used by certain non-U.S. entities to appoint an agent for service of process in the United States.

FN149. See Section V, infra.

FN150. In 1997 there were 1,648 cross-border mergers and acquisitions. See supra, Note 23. We assume half those transactions would be eligible for the Tier I exemption and/or Rules 801 and 802 if extended to U.S. holders. Based on these assumptions, we estimate that Form CB will be filed 824 times.

FN151. Since Form CB is substantially similar to Schedules 14D-1F and 13E-4F (the forms prescribed under the MJDS), the estimated burden hours is the same as the amount determined for those forms. This calculation does not include the potential time needed to translate the document into English.

Release No. 7611, Release No. 40678, Release No. 33-7611, Release No. 34-40678, Release No. IS - 1171, 1998 WL 792055 (S.E.C. Release No.)
END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.          Page 1
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

▷
Release No. 7759, Release No. 33-7759, Release No. IS - 1208, 70 S.E.C. Docket
2191, 1999 WL 969592 (S.E.C. Release No.)

                        17 CFR Parts 200
                                        ,
                             230
                                        ,
                             239
                                        ,
                             240
                                        ,
                             249
                             and
                             260

          Securities and Exchange Commission (S.E.C.)

                    Securities Act of 1933
                  Securities Exchange Act of 1934
                  Trust Indenture Act of 1939
                      International Series

  CROSS-BORDER TENDER AND EXCHANGE OFFERS, BUSINESS COMBINATIONS AND RIGHTS OFFERINGS

                    File No. S7-29-98
                    Rin: 3235-AD97

                    October 22, 1999

AGENCY: Securities and Exchange Commission.

ACTION: Final rule.

SUMMARY: The Securities and Exchange Commission today is adopting tender offer and
Securities Act registration exemptive rules for cross-border tender and exchange
offers, business combinations, and rights offerings relating to the securities of
foreign companies. The purpose of the exemptions is to facilitate U.S. investor
participation in these types of transactions.

EFFECTIVE DATE: January 24, 2000, except §§200.30-1(e)(16) and 200.30-3(a)(68) will
be effective [insert date of publication in the Federal Register.]

FOR FURTHER INFORMATION CONTACT: Dennis O. Garris, Chief, or Laura Badian, Special
Counsel, Office of Mergers and Acquisitions, Division of Corporation Finance at

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.        Page 2
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

(202) 942-2920; James Brigagliano, Florence Harmon, Irene Halpin, or Michael Trocchio, Office of Risk Management and Control, Division of Market Regulation, at (202) 942-0772; at Securities and Exchange Commission, 450 Fifth Street, N.W., Washington, D.C. 20549.

SUPPLEMENTARY INFORMATION: We are adopting new Rules 800, 801 and 802 under the Securities Act of 1933 ("Securities Act"),[FN1] Rule 4d-10 under the Trust Indenture Act of 1939 ("Trust Indenture Act"),[FN2] revisions to Form F-X and Rule 144 under the Securities Act,[FN3] revisions to Rules 13e-3, 13e-4, 14d-1, 14d-9, and 14e-2[FN4] under the Securities Exchange Act of 1934 ("Exchange Act"),[FN5] portions of new Rule 14e-5[FN6] under the Exchange Act, and Rules 30-1 and 30-3[FN7] of the Commission's Rules Delegating Authority to the Directors of the Division of Corporation Finance and Market Regulation, respectively. We are also adopting new Form CB under the Securities Act and the Exchange Act.

### Table of Contents

I. Executive Summary
   A. Summary of Amendments
   B. Changes from the 1998 Proposals

II. Discussion
   A. The Tier I Exemption
      1. U.S. Ownership Limitation
      2. Disclosure and Dissemination - Form CB
      3. Equal Treatment
        a. Cash Alternative
        b. Blue Sky Exemption
        c. Loan Notes
      4. Rule 13e-3 Exemption
      5. Sections 13(d), 13(f) and 13(g)
   B. The Tier II Exemption
   C. Other Rules Governing Tender Offers
      1. Rule 14e-5 (Former Rule 10b-13)
        a. Tier I Offers
        b. Market Making by "Connected Exempt Market Makers" and Connected Exempt Principal Traders
      2. Regulation M
   D. Exemption from the Securities Act for Exchange Offers, Business Combinations, and Rights Offerings
      1. Summary
      2. Eligibility Conditions
        a. U.S. Ownership Limitation
        *2 b. Equal Treatment
        c. Transfer Restrictions
        d. Additional Requirements for Rights Offerings
        e. Offeror Eligibility Requirements
        f. Informational Requirements
        g. Trust Indenture Act Exemption
   E. Investment Companies
   F. Determination of U.S. Ownership
      1. Definition of U.S. Holder

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

        2. Exclusion of Holdings of More Than 10 Percent
        3. Determination of Eligibility by Persons Other Than the Issuer
     G. Internet Disclosure
        1. General Approach
        2. Offshore Tender and Exchange Offers, Rights Offerings and Business
        Combinations on the Internet
        3. U.S. Exempt Component
        4. Domestic Issuers


III. Paperwork Reduction Act


IV. Cost-Benefit Analysis


V. Findings and Considerations
     A. Effect on Competition/Exchange Act Section 23(a)
     B. Promotion of Efficiency, Competition and Capital Formation
     C. Exemptive Authority Findings
     D. Delegated Authority


VI. Summary of Final Regulatory Flexibility Analysis


VII. Statutory Basis and Text of Amendments


APPENDIX A -- Form CB Tender Offer/Rights Offering Notification Form

I. Executive Summary


A. Summary of Amendments

U.S. security holders are often excluded from tender and exchange offers, business combinations and rights offerings involving foreign private issuers. It is very common for bidders to exclude U.S. security holders from these transactions to avoid the application of the U.S. securities laws, particularly when U.S. security holders own a small amount of the securities of the foreign private issuer.[FN8] When bidders exclude U.S. security holders from tender or exchange offers, they deny U.S. security holders the opportunity to receive a premium for their securities and to participate in an investment opportunity. Similarly, when issuers exclude U.S. security holders from participation in rights offerings, U.S. security holders lose the opportunity to purchase shares at a possible discount from market price. U.S. investors must react to these transactions, which may significantly affct their existing investment in the foreign private issuer, without the disclosure or other protections afforded by U.S. or foreign law.


Today, the Commission is adopting exemptive rules that are intended to encourage issuers and bidders to extend tender and exchange offers, rights offerings and business combinations to the U.S. security holders of foreign private issuers. The purpose of the exemptions adopted today is to allow U.S. holders to participate on an equal basis with foreign security holders. In the past, some jurisdictions have permitted exclusion of U.S. holders despite domestic requirements to treat all holders equally on the basis that it would be impracticable to require the bidder to include U.S. holders. The rules adopted today are intended to eliminate the need for such disadvantageous treatment of U.S. investors.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.                    Page 4
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

The exemptions balance the need to provide U.S. security holders with the
protections of the U.S. securities laws against the need to promote the inclusion
of U.S. security holders in these types of cross-border transactions. The specific
exemptions are:

**3** • Tender offers for the securities of foreign private issuers will be exempt
from most provisions of the Exchange Act and rules governing tender offers[FN9]
when U.S. security holders hold 10 percent or less of the subject securities. In
addition to bidders, the subject company, or any officer, director or other
person who otherwise would have an obligation to file Schedule 14D-9 also may
rely on the exemption. We refer to this exemptive relief in this release as the
"Tier I" exemption.

• When U.S. security holders hold 40 percent or less of the class of securities
of the foreign private issuer sought in the offer, limited tender offer
exemptive relief will be available to bidders to eliminate frequent areas of
conflict between U.S. and foreign regulatory requirements. We refer to this
exemptive relief in this release as the "Tier II" exemption. The Tier II
exemption represents a codification of current exemptive and interpretive
positions.

• Under new Securities Act exemptive Rule 801, equity securities issued in
rights offerings by foreign private issuers will be exempt from the registration
requirements of the Securities Act, if U.S. security holders own 10 percent or
less of the issuer's securities that are the subject of the rights offering.

• Under new Securities Act exemptive Rule 802, securities issued in exchange
offers for foreign private issuers' securities and securities issued in business
combinations involving foreign private issuers will be exempt from the
registration requirements of the Securities Act and the qualification
requirements of the Trust Indenture Act, if U. S. security holders hold 10
percent or less of the subject class of securities.

• Tender offers for the securities of foreign private issuers will be exempt
from new Rule 14e-5[FN10] (formerly Rule 10b-13) of the Exchange Act, which
prohibits a bidder from purchasing securities otherwise than pursuant to the
tender offer. This exemption will allow purchases outside the tender offer
during the offer when U.S. security holders hold 10 percent or less of the
subject securities.

The U.S. anti-fraud and anti-manipulation rules and civil liability provisions
will, however, continue to apply to these transactions. Certain commenters believed
that this liability will remain a hurdle to including U.S. security holders,
particularly in view of the amount of litigation in the United States and the
ability of subject companies to institute litigation as a defensive measure.
However, in a transaction eligible for the exemptions adopted today, many of the
disclosure and procedural protections of the federal securities laws will not be
available. Therefore, it is necessary that the anti-fraud provisions continue to
provide a basic level of protection for U.S. security holders participating in
these transactions. The application of these provisions, however, may be different
in the context of foreign disclosure requirements and practices. The Commission
considers the information that is required to be disclosed by a form or schedule
generally to be important in investment decisions. However, the omission of the
information called for by U.S. forms in the context of foreign disclosure
requirements and practices would not necessarily violate the U.S. disclosure
requirements. An antifraud action could be brought by the Commission and investors

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

if the omitted information is material in the context of the transaction and the disclosure provided is misleading as a result of the omission of the information.

**\*4** In addition to the above exemptions, we are adopting amendments to the Commission's general organization rules. These amendments delegate to the Directors of the Divisions of Corporation Finance and Market Regulation authority to exempt tender offers from specific tender offer requirements. The delegation of authority is intended to conserve Commission resources by permitting the staff to review and act on exemptive applications under Sections 14(d) and 36(a)[FN11] of the Exchange Act when appropriate. Nevertheless, the staff may submit matters to the Commission for consideration as it deems appropriate. In addition, under Section 4A(b)[FN12] of the Exchange Act, the Commission retains discretionary authority to review, upon its own initiative or upon application by a party adversely affected, any exemption granted or denied by the Division pursuant to delegated authority.[FN13]

B. Changes from the 1998 Proposals
The rules adopted today differ from those contained in the November 1998 proposing release[FN14] in significant respects. These modifications are being made in response to comments we received on the proposals.[FN15] The following is a list of the most important changes from the proposals:
• Offerors may offer cash to U.S. persons and securities to non-U.S. persons in a Tier I tender offer without violating the equal treatment requirements of that exemption.
• The Tier II exemption has been revised to harmonize it with the amendments to the tender offer rules ("Regulation M-A") that also are being adopted today in a separate release.[FN16]
• The U.S. ownership limitations for the exemptions from the Securities Act registration requirements for exchange offers, business combinations and rights offerings have been increased from five to 10 percent.
• Securities held by all persons owning 10 percent or more of the outstanding securities, as well as the securities held by the offeror, are excluded from the calculation of the percentage of the class held by U.S. owners, rather than securities owned by just foreign 10 percent holders, as proposed.
• Securities purchased in a rights offering conducted under Rule 801 will only be restricted to the extent that the securities held by the U.S. holder at the time of the offering were restricted.
• We have modified the method of determining U.S. ownership. An offeror must "look through" the record ownership of certain brokers, dealers, banks or nominees holding securities of the subject company for the accounts of their customers to determine the percentage of the securities held in nominee accounts that have U.S. addresses. We are adopting, with minor changes, the proposal that a third-party bidder in an unsolicited or "hostile" tender offer may rely upon a presumption that the U.S. ownership percentage limitations of the Tier I, Tier II and Rule 802 exemptions are not exceeded based on the relative level of trading volume in the United States. We are not adopting the proposed rebuttable presumption that persons holding through ADR facilities are U.S. holders.
**\*5** • In order to provide a level playing field in the case of competing offers, we have provided that if an offeror commences a tender offer or a business combination during an ongoing tender offer or business combination for securities of the same class that is the subject of its offer, the second offeror will be eligible to use the same exemption (Tier I, Tier II, or Rule 802) as the prior offeror, so long as all the conditions of the exemption, other

than the limitation on U.S. ownership, are satisfied by the second offeror. In light of this change, we are not adopting the proposal that if an offeror commences an offer during an ongoing tender or exchange offer for securities of the same class that is the subject of its offer, the offeror could calculate the percentage of subject securities held by U.S. holders as of the same date used by the initial offeror.
• We provide guidance regarding when bidders can provide information on the Internet about offshore tender and exchange offers without triggering U.S. requirements.
• The Tier I and Tier II tender offer exemptions are available if the subject company is a closed-end investment company that is registered under the Investment Company Act of 1940 (the "Investment Company Act").[FN17] As proposed, the Tier I and Tier II tender offer exemptions would not have been available if the subject company was any type of investment company registered or required to be registered under the Investment Company Act.
• The registration exemptions for rights offerings, business combinations and exchange offers provided by Rules 801 and 802 are available for securities issued by closed-end investment companies that are registered under the Investment Company Act. As proposed, Rules 801 and 802 would not have been available for securities issued by any type of investment company, whether foreign or domestic, that is registered or required to be registered under the Investment Company Act.

## II. Discussion

### A. The Tier I Exemption

Under the Tier I exemption adopted today, eligible issuer and third-party tender offers will not be subject to Rules 13e-3, 13e-4, Regulation 14D or Rules 14e-1 and 14e-2. These provisions contain disclosure, filing, dissemination, minimum offering period, withdrawal rights and proration requirements that are intended to provide security holders with equal treatment and adequate time and information to make a decision whether to tender into the offer. The Tier I exemption provides that tender offers for the securities of foreign private issuers are exempt from these U.S. tender offer requirements, so long as:
• U.S. security holders hold 10 percent or less of the class of securities sought in the tender offer;
• In the case of an offer that otherwise would be subject to Rule 13e-4 or Regulation 14D under the Exchange Act, bidders submit, rather than file, an English language translation of the offering materials to the Commission under cover of Form CB and, in the case of a foreign offeror, file a consent to service on Form F-X;
*6 • U.S. security holders participate in the offer on terms at least as favorable as those offered to any other holders; and
• Bidders provide U.S. security holders with the tender offer circular or other offering documents, in English, on a comparable basis to that provided to other security holders.
The exemption is available to U.S. and foreign bidders. The domicile or reporting status of the bidder is not relevant. Instead of complying with the U.S. tender offer rules, a bidder taking advantage of the exemption will comply with any applicable rules of the foreign subject company's home jurisdiction or exchange.

### 1. U.S. Ownership Limitation

We are adopting, as proposed, 10 percent as the maximum level of ownership by U.S. security holders that a subject company can have and be eligible for the Tier I exemption.[FN18] Under the proposals, we solicited comment on whether to increase the 10 percent limitation for U.S. ownership to 15 or 20 percent. Commenters on the proposals largely favored adopting a higher eligibility percentage. We have decided, however, that 10 percent is an appropriate level of U.S. ownership for exclusive reliance on home jurisdiction requirements. At and below that level of U.S. ownership, broad-based exemptions are necessary to encourage inclusion of U.S. security holders.[FN19] We believe that U.S. holders' interests are best served by being able to participate in, rather than being excluded from, the tender offer, even though they do not receive the full protections of the U.S. tender offer rules. Above the 10 percent level of U.S. ownership, more tailored relief of the type permitted by the new Tier II exemption would address conflicting regulatory mandates and offering practices.

We also believe that it is appropriate to set the Tier I and Securities Act registration exemption limit on U.S. ownership at the same percentage to level the playing field for stock and cash tender offers. As discussed below, we have decided to raise the ownership level for the Securities Act exemption from five to 10 percent. As a result, an exchange offer would be exempt both from the tender offer and Securities Act registration requirements if U.S. security holders hold 10 percent or less of the subject company's securities.

In order to provide a level playing field in the case of competing offers, we also believe it is appropriate to provide that if a bidder commences a tender offer or a business combination during an ongoing tender offer or business combination for securities of the same class that is the subject of its offer, the second bidder will be eligible to use the same exemption (Tier I, Tier II, or Rule 802) as the prior offeror provided that all the conditions of the exemption, other than the limitation on U.S. ownership, are satisfied by the second bidder. Thus, if the initial bidder relies on the Tier I exemption to make a tender offer, a subsequent competing bidder would not be subject to the 10 percent ownership limitation condition of the Tier I exemption. As a result, the second bidder will not be disadvantaged by any movement of securities into the United States following the announcement of the initial offer.

**\*7** Neither the Tier I nor the Tier II tender offer exemption is available for any transaction or series of transactions that technically complies with the exemption but is part of a plan or scheme to evade the tender offer provisions of the Exchange Act.[FN20] For example, if an initial offer is commenced solely as a pretext for making a subsequent offer automatically eligible for the exemption, the Tier I exemption would not be available.

2. Disclosure and Dissemination - Form CB
We are adopting, as proposed, the requirement that a bidder or issuer relying on the Tier I exemption submit any offering materials prepared under foreign law to the Commission for notice purposes only, under cover of Form CB.[FN21]

The requirement to submit a Form CB only applies if the tender offer would have been subject to Regulation 14D or Rule 13e-4, but for the Tier I exemption. If the tender offer would have been subject only to Section 14(e) and Regulation 14E, the

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)                                    Page 8

offering document and any recommendation do not need to be submitted to the
Commission because the current regulations do not require a filing in connection
with those offers.[FN22] The materials submitted under cover of Form CB will not be
deemed filed with the Commission. Therefore, the person submitting the materials
will not be subject to the express liability provisions of Section 18 of the
Exchange Act.[FN23]

Form CB must be received by the Commission no later than the next business day
after the publication or dissemination of the offering circular or disclosure
document being filed under cover of Form CB. Thus, filing persons will have one
extra day from the date the offering circular or disclosure document is first
published, sent or given to security holders to submit the offering circular or
disclosure document to the Commission. If the bidder is a foreign company, it must
also file a Form F-X with the Commission at the same time as the submission of the
Form CB to appoint an agent for service in the United States. Form F-X, which was
adopted in 1991, has been modified to reflect its use in connection with the
submission of a Form CB.

A number of commenters argued that Forms CB and F-X would be too burdensome and
would discourage offerors from relying on the exemptions. We believe, however, that
our interest in monitoring the availability of the exemptions and ensuring that
U.S. security holders have access to these documents through their public
availability and meaningful recourse for fraudulent statements in the documents
justify the minimal burdens of preparing these forms. We will not require the
payment of a filing fee with the submission of a Form CB or the filing of a Form F-
X.

We are adopting, as proposed, the requirement that offerors disseminate any tender
offer circular or other informational document to U.S. security holders in English
on a comparable basis to that provided to security holders in the foreign subject
company's home jurisdiction. If the foreign subject company's home jurisdiction
permits dissemination solely by publication, the offeror likewise will publish the
offering materials simultaneously in the United States, although it may in addition
mail the materials directly to U.S. holders. If the materials are disseminated by
publication, the offeror must publish the materials in a manner reasonably
calculated to inform U.S. investors of the offer.[FN24]

3.  Equal Treatment
*8 Offerors relying on the Tier I exemption must permit U.S. security holders to
participate in the offer on terms at least as favorable as those offered to any
other holders of the subject securities, subject to certain exceptions for exchange
offers, as discussed below. In addition, equal treatment requires that the
procedural terms of the tender offer, that is, duration, pro rationing, and
withdrawal rights, must be the same for all security holders.[FN25]

a.  Cash Alternative
The proposals would have required as a condition to the Tier I exemption that U.S.
security holders be offered the same amount and form of payment, including
securities if offered elsewhere. We solicited comments on whether the exemption
should permit U.S. security holders to be offered only cash, even if non-U.S.
security holders are offered consideration consisting at least partly of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

securities. Commenters generally believed that we should permit cash-only consideration to be paid to U.S. security holders to avoid the exclusion of U.S. security holders from cross-border tender offers. We agree. As adopted, U.S. holders may be offered only cash, but the bidder must have a reasonable basis to believe that the cash is substantially equivalent to the value of the securities and any cash or other consideration offered to non-U.S. holders.[FN26]

To assure that U.S. security holders receive substantially equivalent value for their securities, if the offered security is not a "margin security" within the meaning of Regulation T,[FN27] the offeror must provide upon the request of the Commission or a U.S. security holder an opinion from an independent expert stating that the cash-only consideration is substantially equivalent to the securities and any cash offered outside the United States.[FN28] If the offered security is a "margin security" within the meaning of Regulation T, an opinion would not be required.[FN29] Instead, the offeror must undertake to provide any U.S. holder or the Commission staff upon request information on recent trading prices of the offeror's securities.

The American Bar Association objected to requiring a valuation opinion because it would raise significantly the cost to issuers and bidders and consequently discourage them from including U.S. security holders in a tender offer.[FN30] We believe, however, that an offeror seeking to use this exception to avoid issuing securities to U.S. holders would not find this requirement excessively burdensome, particularly when the opinion is required only when the offered security is not a "margin security" within the meaning of Regulation T. On the other hand, an independent opinion would provide reasonable assurance that U.S. security holders are receiving equivalent value to that offered to non-U.S. holders.

In many cases, foreign jurisdictions will not allow the bidder to offer U.S. holders cash when that option is not provided in all other jurisdictions. In addition, the bidder may not have sufficient cash to fund such an offer. Some bidders have used a "vendor placement," in which U.S. holders agree to appoint an independent agent to receive the securities offered in an exchange offer and sell them immediately into an existing offshore trading market for those securities. The agent would then remit the proceeds, minus expenses, to the U.S. holders. The staff has granted no-action relief under the Securities Act registration requirements and the equal treatment requirement of Rule 14d-10 to qualifying vendor placements.[FN31] That procedure will continue to be available under appropriate circumstances.

b. Blue Sky Exemption
*9 If the offeror has determined to offer securities to all U.S. holders on the basis of the new Rule 802 exemption, the offeror may exclude subject company security holders residing in any state that does not provide an exemption from registration or qualification under the state blue sky law. Similarly, if the offeror registers securities under the Securities Act, the offeror may exclude subject company security holders residing in any state that refuses to register or qualify the offer and sale of securities in that state after a good faith effort by the offeror.

In both cases, however, the offeror must offer those security holders cash consideration instead of excluding them, if it has offered cash consideration to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.                    Page 10
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

security holders in another state or in a jurisdiction outside the United States. The offeror must offer the cash consideration only if it is offering a cash-only alternative consideration -- not merely a partial cash/partial securities form of consideration.

### c. Loan Notes

Finally, we are adopting, as proposed, the exception to the equal treatment requirement providing that the offeror does not need to offer a "loan note" alternative to U.S. security holders. Loan notes, common in the United Kingdom, are short-term notes that may be redeemed in whole or in part for cash at par on any interest date in the future. The purpose of the loan notes is the deferral of the recognition of income and capital gains on the sale of securities under foreign tax laws. Since this tax benefit is not available to U.S. security holders, a bidder would not need to offer loan notes to U.S. security holders.

### 4. Rule 13e-3 Exemption

We are adopting, as proposed, the exemption from the Commission's going private disclosure requirements under Rule 13e-3 for transactions eligible for the Tier I exemption. Rule 13e-3 mandates the filing of a Schedule 13E-3. Schedule 13E-3 requires disclosure about the fairness to unaffiliated security holders of the transaction that may cause an equity security to lose its public trading market. As we noted in the proposing release, we believe this exemption is appropriate because it may not be practical to impose Rule 13e-3 procedural, disclosure and filing requirements when there are no other U.S. requirements, including dissemination and disclosure requirements. Rule 13e-3 will continue to apply to offers subject to the Tier II exemptions.

### 5. Sections 13(d), 13(f) and 13(g)

The rules adopted today would not affect the beneficial ownership reporting requirements of Sections 13(d), 13(f) and 13(g) of the Exchange Act.[FN32] We solicited comment on whether those provisions should apply to non-U.S. persons owning securities in foreign private issuers. We also solicited comment on whether these rules should apply only if U.S. ownership exceeded a certain percentage. Two commenters believed that these rules should not apply where the security holder bought the shares of a foreign private issuer on a foreign market. These commenters pointed to evidence of uneven compliance with those requirements in that situation as evidence that the scope of the Exchange Act's beneficial ownership disclosure requirements are not widely understood outside the United States. The American Bar Association, on the other hand, submitted a comment letter that urged that the beneficial ownership reporting requirements continue to apply. The ABA did not believe that the application of these requirements to offshore purchases of foreign securities presents a serious compliance problem or that the current approach is an impediment to cross-border transactions.[FN33]

**\*10** We believe that the need for disclosure of the ownership and control of reporting companies trading in our markets, domestic and foreign, justifies any burdens related to filing reports under those rules.

### B. The Tier II Exemption

Commenters generally supported the proposed scope and conditions of the Tier II exemption, under which offerors would be entitled to limited relief from the U.S.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.          Page 11
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

tender offer rules to minimize conflicts with foreign regulatory schemes. This relief will be available for both issuer and third party tender offers when the subject company is a foreign private issuer and U.S. ownership is no greater than 40 percent. The offeror must comply with the remaining tender offer provisions, including the procedural, disclosure, and filing requirements of the Williams Act. Because the offeror would file a Schedule TO,[FN34] a Form CB or F-X is not required. We are adopting the Tier II exemption with some modifications from the 1998 proposals, because some of the relief contained in the 1998 proposals is no longer necessary due to the amendments adopted today in the Regulation M-A Release.

First, as with Tier I, in order to provide a level playing field in the case of competing offers, if the initial offeror relies on the Tier II exemption to make a tender offer, a subsequent competing bidder would not be subject to the 40 percent ownership limitation condition of the Tier II exemption.

Second, the proposal that a cross-border tender offer would commence only upon mailing or publishing the offer rather than upon announcement is no longer necessary. In the Regulation M-A Release, we have repealed the requirement that a cash tender offer commence or be withdrawn within five business days of announcement. Instead, an offer commences once the bidder disseminates transmittal forms or discloses instructions on how to tender into and offer.[FN35] Only then is the bidder required to file the Schedule TO. Therefore, separate relief for foreign offers is not necessary.

Third, the proposal that a bidder could terminate withdrawal rights in a cross-border tender offer once all conditions were satisfied and keep the offer open for acceptances only is also not necessary. The Regulation M-A Release adopted a similar proposal to allow third-party bidders to provide at their election for a 'subsequent offering period' without withdrawal rights and made it applicable to both domestic and foreign transactions.[FN36] Regulation M-A provides, in part, that biddrts that include a subsequent offering period must promptly pay for tendered securities and announce the appproximate number and percentage of outstanding securities that were deposited by the close of the initial offering period no later than 9:00 a.m. Eastern time on the next business day afte the scheduled expiration date of the initial offering period and immediately begin the subsequent offering period. We have clarified that bidders relying on the Tier II excemption will satisfy the foregoing requirements if the bidder pays for tendered securities and makes the announcement in accordance with the law or practice of the bidder's home jurisdiction and the subsequent offering period commences immediately following such announcement.[FN37] The bidder would not have to extend withdrawal rights during the period between the close of the offer and the commencement of the subsequent offering period. Otherwise, separate relief for foreign offers is not necessary.

**\*11** We are adopting the Tier II provisions relating to the All-Holders/Best Price provisions,[FN38] notice of extensions,[FN39] prompt payment,[FN40] and the interpretation regarding a waiver or reduction of minimum conditions as proposed. Under our interpretation on changes to the minimum condition, we will not object if bidders meeting the requirements for the Tier II exemption reduce or waive the minimum acceptance condition without extending withdrawal rights during the remainder of the offer (unless an extension is required by Rule 14e-1), if the following conditions are met:
  • The bidder must announce that it may reduce the minimum condition five

business days prior to the time that it reduces the condition. A statement at
the commencement of the offer that the bidder may reduce the minimum condition
is insufficient;
• The bidder must disseminate this announcement through a press release and
other methods reasonably designed to inform U.S. security holders, which could
include placing an advertisement in a newspaper of national circulation in the
United States;
• The press release must state the exact percentage to which the acceptance
condition may be reduced and state that a reduction is possible. The bidder must
declare its actual intentions once it is required to do so under the regulations
of the home jurisdiction;
• During this five-day period, security holders who have tendered their shares
in the offer will have withdrawal rights;
• This announcement must contain language advising security holders to withdraw
their tenders immediately if their willingness to tender into the offer would be
affected by a reduction of the minimum acceptance condition;
• The procedure for reducing the minimum condition must be described in the
offering document; and
• The bidder must hold the offer open for acceptances for at least five business
days after the revision or waiver of the minimum acceptance condition.
Apparently because the Tier II proposals were codifications of exemptive and
interpretive positions that we currently apply in cross-border acquisitions, they
did not result in significant comment. To the extent that an offeror needs
additional relief from that provided in Tier II, the staff, pursuant to delegated
authority, will consider applications for exemptions on a case-by-case basis.[FN41]

C. Other Rules Governing Tender Offers

1. Rule 14e-5 (Former Rule 10b-13)
We are adopting two new exceptions to new Rule 14e-5. In the proposing release, we
proposed to amend then Rule 10b-13 under the Exchange Act to facilitate the
inclusion of U.S. security holders in tender offers for foreign securities by
adding two exceptions for cross-border offers.[FN42] We are adopting both of the
proposed exceptions, the exception for Tier I offers and the exception to permit
"connected exempt market makers" and "connected exempt principal traders," as
defined by the U.K. City Code on Takeovers and Mergers (City Code),[FN43] to continue
their U.K. market making activities during cross-border offers that are subject to
the City Code.

**12** Rule 14e-5 prohibits, in connection with a tender offer for equity securities,
a covered person from purchasing or arranging to purchase any subject securities or
any related securities except as part of the tender offer. The rule protects
investors by preventing an offeror from extending greater or different
consideration to some security holders by offering to purchase their shares outside
the offer, while other security holders are limited to the offer's terms. The rule
applies to: the offeror and its affiliates; the offeror's dealer-manager and its
affiliates; any advisor to the offeror, dealer-manager or their affiliates, whose
compensation is dependent on the completion of the offer; and any person acting,
directly or indirectly, in concert with any of the other covered persons in
connection with any purchase or arrangement to purchase any subject securities or
any related securities.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Many foreign jurisdictions do not expressly prohibit an offeror from purchasing or arranging to purchase the subject security outside the terms of the offer. As noted in the proposing release, a strict application of Rule 14e-5 in some cases could disadvantage U.S. security holders where the offeror decides not to extend the offer in the United States because of the rule's restrictions. In that circumstance, flexible application of Rule 14e-5 is necessary and appropriate to encourage offerors for the securities of foreign private issuers to extend their offers to U.S. security holders. We believe the two exceptions we are adopting strike the proper balance between the investor protection goals of Rule 14e-5 and the interests of U.S. investors in being included in tender offers.

a. Tier I Offers
We are adopting, substantially as proposed, an exception for purchases or arrangements to purchase made outside, but during the time of, a Tier I tender offer. For tender offers that are substantially foreign in character, such as Tier I offers, we suggested in the proposing release that allowing U.S. security holders to participate in these offers outweighs the benefits derived from applying Rule 14e-5 to such offers. Commenters agreed with this evaluation.

This exception is based primarily on a number of exemptions from Rule 10b-13 to accommodate cross-border tender offers. This limited exception for Tier I tender offers largely represents a codification of the conditions contained in the exemptions previously granted by the Commission. The exception, however, being limited to Tier I offers, only extends to offers where U.S. persons hold of record 10 percent or less of the class of securities sought in the offer.

The exception requires that: the tender offer is an excepted Tier I offer;[FN44] the offering documents furnished to U.S. holders prominently disclose the possibility of any purchases, or arrangements to purchase, or the intent to make such purchases; the offering documents disclose the manner in which any information about any such purchases or arrangements to purchase will be disclosed; the offeror discloses information in the United States about any such purchases or arrangements to purchase in a manner comparable to the disclosure made in the home jurisdiction, as defined in §240.13-e4(i)(3); and the purchases comply with the applicable tender offer laws and regulations of the home jurisdiction. Although not proposed, we are including a requirement that the offering documents disclose the manner in which any such purchases or arrangements to purchase will be disclosed. This additional requirement ensures that security holders will know how to obtain the information that this exception requires to be disclosed.

*13 Consistent with the proposed rule, we are not limiting the exception to purchases that are made outside the United States. Under the new exception for Tier I offers, offerors may purchase subject securities, subject to the conditions noted above, in transactions in the United States that otherwise would be prohibited under Rule 14e-5.[FN45] Under the requirement that the offeror disclose information in the United States about any such purchases or arrangements to purchase in a manner comparable to the disclosure made in the home jurisdiction, we expect that such disclosure will be provided in English.

We did not propose, and we are not adopting, an exception of Rule 14e-5 for Tier II offers because of the greater U.S. interest in those offers. Despite comments to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the contrary, we believe that we should continue to review requests for relief from Rule 14e-5 for offers other than Tier I eligible offers on a case-by-case basis. In that context, we will consider factors such as proportional ownership of U.S. security holders of the subject security in relation to the total number of shares outstanding and to the public float; whether the offer will be for 'any-and-all' shares or will involve prorationing; whether the offered consideration will be cash or securities; whether the offer will be subject to a foreign jurisdiction's laws, rules, or principles governing the conduct of tender offers that provide protections comparable to Rule 14e-5; and whether the principal trading market for the subject security is outside the United States.[FN46]

In our view, this exception will simplify the procedural requirements for foreign tender offers and further promote the extension of such offers to U.S. security holders, without compromising the investor protections of the rule.

b. <u>Market Making by "Connected Exempt Market Makers" and "Connected Exempt Principal Traders"</u>
We are adopting the exception for "connected exempt market makers" and "connected exempt principal traders"[FN47] as proposed. Based upon our experience with U.K. regulatory requirements for tender offers, we recognize that there is sufficient regulatory oversight of purchases by connected exempt market makers and connected exempt principal traders in the United Kingdom to permit them an exception. Commenters supported this exception.

The exception permits purchases or arrangements to purchase if: the purchase or arrangement to purchase is effected by a connected exempt market maker or a connected exempt principal trader, as those terms are used in the City Code; the issuer of the subject security is a foreign private issuer; the tender offer is subject to the City Code; the connected exempt market maker or the connected exempt principal trader complies with the applicable provisions of the City Code; and the tender offer documents disclose the identity of the connected exempt market maker or the connected exempt principal trader and disclose, or describe how U.S. security holders can obtain information regarding market making or principal purchases by such market maker or principal trader to the extent that this information is required to be made public in the United Kingdom.[FN48]

**\*14** As was proposed, this exception is not limited to Tier I tender offers. The exception applies to offerors or anyone acting on behalf of offerors (such as advisors and other nominees or brokers).

2. <u>Regulation M</u>
We are not changing Regulation M in this release. We did not propose any changes to Regulation M for cross-border exchange offers, whether qualifying for the registration exemption under Rule 802 or the Tier I or Tier II exceptions from the U.S. tender offer provisions, or for cross-border rights offerings qualifying for the registration exception under proposed Rule 801. In the proposing release, we asked whether exemptions from various rules under Regulation M are necessary to accommodate cross-border rights offerings or exchange offers conducted pursuant to Rules 801 or 802. Several commenters thought that an exception from Regulation M is appropriate in such instances.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

We still are uncertain whether such changes are necessary despite the comments because there continues to be a lack of requests for relief in these contexts. We still believe we should evaluate the need for exemptions from Regulation M after we gain experience with the Regulation's operation in the context of those offerings. We will, however, carefully consider commenters' suggestions for an exception from Regulation M, and determine if we should propose such an exception.

D. Exemption from the Securities Act for Exchange Offers, Business Combinations, and Rights Offerings

1. Summary
The rules adopted today also provide exemptions from Securities Act registration requirements for securities issued to U.S. security holders of a foreign private issuer in exchange offers, business combinations, and rights offerings. These exemptions are being adopted as Rule 801 for rights offerings and Rule 802 for business combinations and exchange offers. Rule 800 provides common definitions for both rules. The exemptions are available only if the subject company (or the issuer in an issuer tender offer or rights offering) is a foreign private issuer and U.S. security holders hold no more than 10 percent of the subject securities.[FN49]

The exemptions are not available for any transaction or series of transactions that technically complies with the exemptions but is part of a plan or scheme to evade the registration provisions of the Securities Act.[FN50] For example, if the exchange offer or rights offering is a sham conducted solely as a pretext for distributing securities in the United States, the exemptions would not be available.[FN51]

2. Eligibility Conditions

a. U.S. Ownership Limitation
As adopted, exchange offers, business combinations, and rights offerings will be exempt from registration under the Securities Act if U.S. security holders own 10 percent or less of the foreign private issuer's securities that are the subject of the offer. Based on the suggestions of commenters, we have increased the U.S. ownership limit from five to 10 percent. When U.S. security holders own 10 percent or less of the issuer, U.S. participation is generally not necessary for the success of the offering. Therefore, it is quite common for offerors to exclude U.S. security holders below this level.[FN52] Commenters unanimously indicated that an increase was necessary to facilitate including U.S. persons in these transactions. Commenters' suggestions ranged from 10 to 30 percent.

*15 We do not believe it is necessary to increase the level above 10 percent for exchange offers. It is common for offerors to include U.S. security holders above that level, since they are usually necessary for the success of the offer.[FN53] Because a rights offering may be used as a financing device, we considered keeping the threshold for rights offerings at five percent. However, exclusion of U.S. holders in rights offerings is common even with much higher U.S. ownership levels.[FN54] U.S. participation is rarely viewed as necessary for the success of the offer, since from an issuer's viewpoint, the fewer shares sold to existing security holders at a discount, the better. For that reason, the goal of facilitating U.S. participation in foreign rights offerings would be significantly undermined by the proposed lower U.S. ownership ceiling of five percent. This is particularly true in

light of our decision to modify the method for calculation of U.S. holdings to make the test reflect U.S. beneficial, rather than merely record, ownership. However, we do not believe that the ownership threshold should be increased above 10 percent for rights offerings because it is our view that the benefits obtained by providing U.S. security holders with the protections of the Securities Act at ownership levels above 10 percent outweigh the benefits that would be obtained by raising the ownership threshold in order to provide incentives for foreign private issuers to include U.S. security holders above the 10 percent level.

Some commenters suggested that we adopt an exemption from both the Securities Act and tender offer provisions if the subject company has less than 300 U.S. holders, regardless of the percentage of the foreign private issuer's securities owned by those investors. We do not believe that it is necessary or appropriate to exempt an offering of securities to up to 300 U.S. investors from the Securities Act registration requirements, in what may be a predominantly U.S. transaction, based solely on the foreign status of the subject company. U.S. investors in cross-border exchange offers should be provided with the protections of Securities Act registration, unless application of those provisions likely would result in the exclusion of U.S. holders from the transaction. Where U.S. participation is not incidental to the transaction, those requirements should continue to apply. With respect to the tender offer provisions, offers involving less than 300 U.S. holders are likely to be subject only to Regulation 14E, not the filing and procedural requirements of Regulation 14D, and thus will not need exemptive relief beyond that adopted today.

As with the tender offer exemptions, in order to provide a level playing field in the case of competing offers, the rules adopted today provide that if a bidder commences a tender offer or a business combination during an ongoing tender offer or business combination made pursuant to Rule 802 for securities of the same class subject to its offer, the second bidder will be eligible to use Rule 802 so long as all the conditions of the exemption, other than the limitation on U.S. ownership, are satisfied. Thus if the initial bidder relies on the Rule 802 exemption to make a tender offer, a subsequent competing bidder would not be subject to the 10 percent ownership limitation condition of the Rule 802 exemption. We do not believe it appropriate to provide, however, that if the initial bidder relied on the Tier I exemption but did not also rely on the Rule 802 exemption, a subsequent competing bidder may use the Rule 802 exemption without regard to the ownership limitation condition. As a policy matter, when relief is not necessary to ensure that competing offers are subject to the same regulatory requirements, we believe it is more important to limit relief from the Securities Act registration requirements to situations where it can be verified that U.S. security holders own 10 percent or less of the subject class of securities.[FN55]

b. Equal Treatment
**16** The terms and conditions of the offer must be at least as favorable for U.S. security holders as foreign holders. Rules 801 and 802 provide exceptions to the equal treatment requirement similar to the Tier I exemption with respect to state blue-sky requirements.

c. Transfer Restrictions
The new exemptions restrict the transferability of the securities acquired in an exempt transaction. To the extent that the subject securities are "restricted

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

securities" under Rule 144 in the hands of a U.S. investor prior to the Rule 801 or 802 transaction, securities acquired by that investor in the Rule 801 or 802 transaction will be "restricted securities."[FN56] Conversely, if the securities that are the subject of the transaction made pursuant to Rule 801 or 802 are unrestricted, then securities acquired in the transaction will be unrestricted. In the latter case, the securities would be freely tradable by non-affiliate security holders, so long as they are not participating in the offer under circumstances in which they could be deemed statutory underwriters.[FN57]

In the case of a rights offering under Rule 801, the proportion of restricted to unrestricted securities will be determined as of the record date that determines the allocation of rights among security holders. In the case of an exchange offer or business combination, the proportion will be based upon the securities tendered or exchanged by the holders.

We proposed this approach for transfer restrictions only with respect to Rule 802 for exchange offers. In contrast, the Rule 801 exemption for rights offerings proposed in 1998 would have required that all securities purchased upon the exercise of the rights be restricted within the meaning of Rule 144. We are persuaded by the large number of commenters who argued that it was not necessary to require unaffiliated U.S. security holders to accept restricted securities in rights offerings where they currently hold unrestricted securities. However, we think it is appropriate to require that security holders receive restricted securities in the transaction if they held restricted securities before the transaction. Otherwise, a rights offering or exchange offer could be used as a pretext for creating a large pool of freely tradable securities in the hands of investors who previously held only restricted securities. This restriction, along with the requirement that the offer be made to all holders on a pro rata basis, and that U.S. ownership in the subject company's securities be limited to 10 percent, should minimize the potential that Rules 801 and 802 will be misused as a means to conduct illegal distributions in the United States. Moreover, securities issued in a rights offering or exchange offer to affiliates of the issuer would not be freely tradable.[FN58]

d. Additional Requirements for Rights Offerings
Rule 801, as adopted today, is available only for rights offerings of equity securities made on a pro rata basis to existing security holders of the same class, including holders of ADRs evidencing those securities. Under Rule 800, the term "equity security" does not include convertible securities, warrants, rights, or options.[FN59] Rule 801 is limited to the offer of securities of the same class of securities as those held by the offerees, because the offerees already have made the decision to invest in that class.

*17 Rule 801 requires that the rights granted to U.S. security holders not be transferable except offshore in accordance with Regulation S.[FN60] Certain commenters believed that restricting the transferability of the rights would put U.S. security holders at a disadvantage to non-U.S. security holders who could transfer the rights. However, we believe this restriction is appropriate to assure that foreign private issuers do not extend the offerings to new investors in the United States and that a market not develop in the United States for the rights without adequate disclosure regarding the issuer.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

e. _Offeror Eligibility Requirements_

As adopted, Rule 801 requires that the offeror be a foreign private issuer. It does not impose any other offeror eligibility requirements. Where U.S. participation is only incidental to the offering, no other offeror eligibility criteria are necessary. Investors are already familiar with the issuer and the security. The commenters concurred that imposition of additional criteria would only diminish the effectiveness of the exemption by narrowing its scope and causing U.S. security holders to continue to be excluded.

As adopted, Rule 802 does not contain any limitations based on the domicile or reporting status of the offeror. Any offeror can use Rule 802 regardless of whether it is a U.S. company or a foreign private issuer and regardless of whether it is a reporting company. The subject company, however, must be a foreign private issuer. Requiring a U.S. bidder for the securities of a foreign subject company to register the U.S. portion of an exchange offer would place the U.S. bidder, particularly a non-reporting U.S. company, at a competitive disadvantage to a foreign bidder for the same company. In the case of a business combination where there is no surviving acquiror and the issuer is the successor company to all participating companies, all participants in the business combination must be foreign private issuers.

Finally, neither Rule 801 nor 802 impose a dollar limitation on the value of securities that may be sold to U.S. investors in an exempt transaction. The American Bar Association commented that a dollar limitation appears to be too arbitrary given the different sizes of companies and the fluctuating market value of securities being offered.[FN61] We agree.

f. _Informational Requirements_

Rules 801 and 802 do not mandate that specific information be sent to U.S. security holders. Instead, when any document, notice or other information is provided to offerees, copies (translated into English) must be provided to U.S. security holders in a similar manner. The documents must include a legend regarding the foreign nature of the transaction and the issuer's disclosure practices. The legend also must state that investors may have difficulty in enforcing rights against the issuer and its officers and directors. Some commenters noted that imposing a requirement for a legend on the cover page was unnecessarily burdensome and could discourage offerors from extending offers to U.S. security holders.[FN62] To address these concerns, the legend need not be placed on the cover page; rather, it need only be placed in a prominent position in the document.

**\*18** Rules 801 and 802 both require that the offeror provide the notice or offering document to U.S. security holders in English at the same time it provides the information to offshore offerees. We proposed that offerors be required to deliver rights offering materials to U.S. investors, even if those materials were only published overseas. In contrast, exchange offer materials would not be required to be delivered if not delivered in the home jurisdiction. We are persuaded by those commenters who indicated that offerors will not be inclined to avail themselves of Rules 801 or 802 if burdensome documentation and dissemination requirements are imposed by the U.S. rules and who were of the view that U.S. security holders should be provided with information on the same basis as that provided to offerees in other jurisdictions. As noted above, exclusion of U.S. holders in rights

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

offerings is common even at high U.S. ownership levels. U.S. participation is
rarely viewed as necessary for the success of the offer, and U.S. investors may
thereby be deprived of the opportunity to acquire shares at attractive prices,
resulting in their positions being diluted. Requiring the offeror to mail rights
offering materials to U.S. security holders might create an additional incentive
for offerors to exclude U.S. security holders from participating in the rights
offering. In order to encourage foreign private issuers to include U.S. security
holders in rights offerings, the rules adopted today provide that for both rights
offerings and exchange offers, the offeror must disseminate any informational
documents to U.S. holders, in English, on at least a comparable basis to that
provided to security holders in the offeror's home jurisdiction. If the offeror
disseminates by publication in its home jurisdiction, the offeror must publish the
information in the United States in a manner reasonably calculated to inform U.S.
holders of the offer. Of course, the offeror may mail to U.S. security holders in
any event.

We are adopting, as proposed, the requirement that an offeror submit a notification
to the Commission on new Form CB. A foreign company also must file a Form F-X at
the same time it submits the Form CB to appoint an agent for service of process in
the United States. The new form will include as an attachment a copy of any
document, notice or other information disseminated to U.S. offerees.

g. <u>Trust Indenture Act Exemption</u>
We are adopting, as proposed, a new rule under Section 304(d) of the Trust
Indenture Act that would exempt any debt security issued pursuant to Rule 802 under
the Securities Act from having to comply with the provisions of the Trust Indenture
Act. Therefore, the rules adopted today will permit offerors to offer debt
securities in an exchange offer or business combination without complying with the
provisions of the Trust Indenture Act. As one commenter noted, a failure to provide
relief under the Trust Indenture Act would essentially undermine the usefulness of
the other relief in the case of debt securities.[FN63] Accordingly, we believe that
the benefits to be obtained by U.S. investors by providing exemptions under the
Trust Indenture Act when debt securities are issued pursuant to a Rule 802
exemption justify not providing U.S. investors with the protections of the Trust
Indenture Act in these types of transactions.

E. <u>Investment Companies</u>
**\*19** As proposed, Rules 801 and 802 would not have been available for securities
issued by an investment company, whether foreign or domestic, that is registered or
required to be registered under the Investment Company Act. The proposal excluded
foreign investment companies from these exemptions because the Investment Company
Act generally prohibits foreign investment companies from publicly offering their
securities in the United States or to U.S. persons.[FN64] Domestic investment
companies were excluded because, unlike other issuers, investment companies that
are registered or required to be registered under the Investment Company Act
generally must register the securities that they offer or sell outside the United
States.[FN65] The proposing release noted, however, that a closed-end investment
company that is registered under the Investment Company Act, like other non-
investment company issuers, may be able to rely on the safe harbor provided by
Regulation S under the Securities Act to issue securities abroad without
registering those securities under the Securities Act.[FN66] We requested comment
whether Rule 802 should be available to registered closed-end investment companies.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.          Page 20
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

In response to commenters' suggestions, both Rules 801 and 802, as adopted, are available for securities issued by closed-end investment companies that are registered under the Investment Company Act. We believe that this result is consistent with the Commission's previous decision to permit closed-end investment companies to rely on the Regulation S safe harbor to issue unregistered securities abroad.[FN67] These rules, however, are not available to any other type of investment company, whether foreign or domestic, that is registered or required to be registered under the Investment Company Act.[FN68]

As proposed, the Tier I and Tier II tender offer exemptions also would not have been available if the subject company was an investment company registered or required to be registered under the Investment Company Act. As adopted these exemptions are available if the subject company is a closed-end investment company registered under the Investment Company Act.[FN69] Consistent with the Commission's application of Regulation S and the exemptions in Rules 801 and 802, the Tier I and Tier II tender offer exemptions as adopted are available if the subject company is a closed-end investment company registered under the Investment Company Act.

F. Determination of U.S. Ownership

1. Definition of U.S. Holder
Today's amendments revise the method for determining the amount of securities held by U.S. holders from that included in the 1998 proposals. The amount owned by U.S. holders is important under both the Tier I and II tender offer exemptions. It is also important in determining the availability of the Securities Act exemptions under Rules 801 and 802. Relief in each case is conditioned, at least in part, on the percentage of the subject company's securities held by U.S. security holders not exceeding a specified threshold.

*20 The proposed approach was based on the definition of "foreign private issuer,"[FN70] which at the time was based solely on record, not beneficial ownership. We recently amended that definition to require companies claiming foreign private issuer status to look through certain bank, broker-dealer and other nominees to determine the residence of the nominee's client accounts.[FN71] We likewise are adopting that modified approach for the purpose of determining the amount of securities held by U.S. holders under the new exemptive rules. Like the revised foreign private issuer definition, the starting point is Rule 12g3-2(a) under the Exchange Act.[FN72] Rule 12g3-2(a) follows the definition of "securities held of record" in Rule 12g5-1, but requires the offeror to "look through" the record ownership of brokers, dealers, banks or nominees appearing on the issuers' books or those of transfer agents, depositaries, or others acting on the issuer's behalf. If those record owners hold securities for the accounts of customers, the issuer must determine the residency of those customers. This method of calculation more closely reflects the beneficial ownership of the issuer's securities.

We have limited the application of the "look through" provisions of Rule 12g3-2(a) to securities held of record (1) in the United States, (2) in the issuer's home jurisdiction, and (3) in the primary trading market for the issuer's securities if different from the issuer's home jurisdiction. These jurisdictions should cover most of the trading volume for the issuer's securities, and searches in these

jurisdictions are likely to yield the greatest number of U.S. beneficial owners. This modification to the Rule 12g3-2(a) approach should reduce the burden on foreign companies while still producing a reasonably accurate picture of the size of the U.S. ownership of the foreign issuer.[FN73]

Some commenters pointed out that it is not always possible for issuers to obtain information about separate customer accounts, as required by Rule 12g3-2(a). Brokers, dealers, banks or other nominees may be unwilling or unable to provide information about their customer accounts. We note, however, that the duty to inquire about separate customer accounts already exists for issuers deciding whether the reporting exemption in Rule 12g3-2(a) is available. In addition, the offeror would not be asking nominees to provide the number of U.S. security holders or the names of those security holders, but only the aggregate amount of the nominee's holdings that are represented by U.S. accounts. Thus, the offeror would not have to ask the nominees for information regarding possible 10 percent holders. If after reasonable inquiry, however, the offeror is unable to obtain information about the nominee's customer accounts, including cases where the nominee's charge for supplying this information would be unreasonable, the offeror may rely on a presumption that the customer accounts are held in the nominee's principal place of business.[FN74]

**21** Also similar to the revised approach under the foreign private issuer definition, issuers and offerors must take into account information regarding U.S. ownership derived from beneficial ownership reports that are provided to the issuer or filed publicly in the United States or in the home jurisdiction, as well as beneficial ownership information that otherwise is provided to the issuer or offeror.

We recognize that by focusing on beneficial ownership rather than record ownership, we have made it more difficult to stay below the relevant ownership ceilings and thus have limited the applicability of the exemptive rules. Indeed, that is one reason why we increased the U.S. ownership threshold under Rules 801 and 802 to 10 percent. Nevertheless, we believe that it is critical that the exemptive rules function based upon a fair assessment of the U.S. participation in the offering. Reliance on record ownership would result in applicability of the exemption when actual U.S. investor interest, and therefore their importance to the success of the transaction, far exceeds the stated ceilings.

We are not adopting as part of the final rules a proposed rebuttable presumption (also proposed for the purposes of the foreign private issuer definition) that if a foreign private issuer's securities trade in the U.S. markets in the form of ADRs, the securities deposited in the ADR program are held solely by U.S. residents. Commenters on the foreign private issuer proposal pointed out that, for a number of reasons, non-U.S. security holders may choose to hold securities in ADR form. It appears that issuers will not rely on the presumption and will feel the need to query ADR depositaries regarding the owners of ADRs. Therefore, we have eliminated the presumption from these rule revisions as well.[FN75] Issuers will thus have to examine the participant lists of ADR depositaries and query home country or U.S. broker-dealer or bank nominees appearing on those lists to ascertain the amount of ADRs held by U.S. investors.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.                    Page 22
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

We have revised the time period for calculating the percentage of U.S. ownership
from the proposal. As proposed, the calculation would have been made at the
commencement of the offer. Based on commenters' suggestions, we revised the
proposal to include a 30 day "look back" period to accommodate the offeror's or
issuer's planning process. As revised, the offeror would make the calculation of
U.S. ownership 30 days before the commencement of the tender offer. Or, in the case
of a business combination such as a merger where the securities are issued by the
acquiring company, the calculation will be based on U.S. ownership of the company
to be acquired 30 days before the commencement of the solicitation for the merger.
In business combinations such as an amalgamation, where the securities are issued
by a successor company to all participating companies, the calculation would be
made based on U.S. holder information available 30 days before commencement, but
applied on a pro forma basis as if measured immediately after completion of the
business combination.

**\*22** We are not adopting the proposal that if a bidder commences an offer during an
ongoing tender or exchange offer for securities of the same class subject to its
offer, the bidder could calculate the percentage of subject securities held by U.S.
holders as of the same date used by the initial bidder. We believe that this
proposal is unnecessary because the rules adopted today provide that if a bidder
commences a tender offer or a business combination during an ongoing tender offer
or business combination for securities of the same class subject to its offer, the
second bidder will be eligible to use the same exemption as the prior bidder (Tier
I, Tier II, or Rule 802) so long as all the conditions of the exemption, other than
the limitation on U.S. ownership, are satisfied by the second bidder. In addition,
if the bidder chooses to rely on a different exemption from the initial bidder, the
bidder will be entitled to calculate the percentage of U.S. ownership 30 days
before commencement of its tender offer or commencement of the solicitation for the
merger. Accordingly, the subsequent bidder should not be disadvantaged by any
movement of securities into the United States following the announcement of the
initial bid.[FN76]

The issuer must include securities underlying ADRs in determining the amount of
securities outstanding of the class that is the subject of the offer, as well as
the amount of the subject class of securities held by U.S. holders. On the other
hand, other types of securities that are convertible into or exchangeable for
subject securities, such as warrants, options, and convertible securities, would
not be taken into account in calculating U.S. ownership.

## 2. Exclusion of Holdings of More Than 10 Percent

We proposed that offerors exclude securities held by non-U.S. security holders of
more that 10 percent of the class from the calculation of the U.S. ownership
percentage. We requested comment regarding whether it would be appropriate to
exclude securities held by affiliates, whether held outside the United States or in
the United States, from both elements of the calculation, thus focusing only on the
percent of the company's total world-wide non-affiliated float held in the United
States. Many commenters objected to excluding only non-U.S. 10 percent holders.
Commenters argued that since many foreign private issuers have one or more
significant security holders -- indeed, many are controlled by founding families --
their exclusion from the calculation could severely limit the availability of the
exemptions.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.    Page 23
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

Several commenters suggested that a better approach would be to exclude large or institutional U.S. security holders, as well as foreign 10 percent holders. One commenter suggested excluding the securities of the bidder, regardless of the amount. Commenters argued that large U.S. security holders do not need the protections of the securities laws and could easily go overseas to participate in the transaction or participate on a private placement basis. Absent exemptive relief, bidders would extend the offer only to the larger, and exclude the smaller, U.S. security holders (assuming U.S. institutional investor participatin would not trigger U.S. all-holders requirements).

**\*23** For these reasons, we are persuaded by the commenters that large U.S. holders likewise should be excluded from the calculation of U.S.S ownership. Similarly, exclusion of securities held by a bidder or bidding group will provide greater assurance of an accurate assessment of the significance to the offer of the participation by U.S. public investors.

Because the 10 percent holders are viewed as affiliates for purposes of calculating U.S. ownership, they presumably would be treated as affiliates for purposes of Rule 144[FN77] as well. They would therefore be subject to limitations on the amount of securities received in the offer that they could resell. Treating these securities as control shares should minimize the potential that, in cases where there are a significant number of shares held by a relatively few U.S. holders, the Securities Act exemptions for cross-border rights offerings and exchange offers under Rules 801 and 802 will be misused as a means to conduct illegal distributions in the United States.

3. <u>Determination of Eligibility by Persons Other Than the Issuer</u>
As we noted in the November 1998 release, the principal disadvantage of using a U.S. ownership threshold as a condition for the applicability of the exemptions.is that it will be difficultc for third-party offerors to ascertain whether the exemption is availalbe without information on the subject company's U.S. ownership.[FN78] It will be even more difficult for persons other than the issuer to obtain information from nominees, including information on 10**olders, as required under the modified approach adopted today.[FN79] We are adopting, with minor changes, the proposal that a third-party bidder in an unsolicited or "hostile"[FN80] tender offer may rely upon a presumption that the U.S. ownership percentage limitations of the Tier I[FN81], Tier II[FN82] and Rule 802 exemptions are not exceeded unless:**
    (1) the aggregate trading volume of the subject class of securities on all national securities exchanges in the United States, on the Nasdaq market or on the OTC market, as reported to the NASD, over the 12-calendar-month period ending 30 days before commencement of the offer, exceeds 10 percent in the case of Tier I offers and Rule 802, and 40 percent in the case of Tier II offers, of the worldwide aggregate trading volume of that class of securities over the same period;
    (2) the most recent annual report or other informational form filed or submitted by the issuer or security holders to securities regulators in its home jurisdiction or elsewhere (including with the Commission) indicates that U.S. holdings exceed the applicable threshold;[FN83] or
    (3) the bidder knows or has reason to know from other sources that the level of U.S. ownership of the subject class exceeds the thresholds.

As to whether the foreign subject company is a foreign private issuer, the bidder

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

can rely on the exemptions if the issuer of the subject securities files reports
with the Commission under the foreign integrated disclosure system[FN84] or has
claimed an exemption from reporting under Exchange Act Rule 12g3-2(b),[FN85] unless
the bidder knows the foreign subject company is not a foreign private issuer.

*24 One commenter believed that the presumption should be available for both
hostile and negotiated transactions. The commenter was concerned that takeover
situations are often fluid and that hostile offers often turn friendly shortly
after commencement of the tender offer. We believe, however, that application of
the exemption should turn on an accurate assessment of U.S. ownership whenever
possible. A bidder in a negotiated transaction would be able to arrange to get this
information from the subject company as part of the acquisition agreement. We
believe that the presumption should be available only when there is no assurance
that the issuer will obtain and provide the offeror with current information about
U.S. ownership. If information on U.S. ownership can be obtained, that information
should determine whether the exemptions are available, rather than a presumption
based on trading activity. For this reason, notwithstanding the views of some
commenters, an issuer, affiliate, or friendly bidder could not rely upon the
presumption.

Even if the above presumption is not available, the bidder may nevertheless rely on
the exemption if it can demonstrate that U.S. ownership is in fact less than the
relevant threshold or, in the case of competing bids, if the bidder chooses to rely
on the same exemption (Tier I, Tier II, or Rule 802) as that used by a prior
offeror.[FN86]

G. Internet Disclosure
There is no limitation under the exemptive provisions adopted today on the use of
the Internet to publish offering materials and other information about the cross-
border transaction.[FN87] However, when materials are required to be disseminated
directly to U.S. holders (for example, in a Tier II offer subject to Regulation 14D
or when materials are mailed in the home country in a Tier I offer), Internet
dissemination of the offering materials would not, without more, constitute
adequate dissemination under the new exemptive rules.[FN88] If an offeror publishes in
its home country, posting the materials on its web site would not constitute
adequate publication in the United States. Electronic dissemination could satisfy a
dissemination requirement only if conducted in a manner consistent with the
guidance provided in our 1995 release on electronic dissemination, including the
requirement to obtain the U.S. holder's consent to receive the mandated materials
by electronic means or other evidence of delivery.[FN89]

In response to the request of several commenters, we are providing guidance on
whether materials relating to offshore tender and exchange offers could be posted
on the Internet without triggering U.S. tender offer and securities registration
requirements with respect to that offer. We note that the exemptions adopted today
are intended to facilitate the inclusion of U.S. investors in cross-border
transactions, not to provide a means to avoid U.S. jurisdiction. However, U.S.
investors would benefit from timely and reliable information about foreign
corporate actions, even if they are not able to participate in the transactions.

1. General Approach

**\*25** The posting of information on a web site may constitute an offer of securities for purposes of the U.S. securities laws. We recently published our views clarifying when the posting of materials on Internet web sites would not be considered an offer or soliciting activity in the United States for purposes of the registration requirements of the federal securities laws (the "1998 Internet Release").[FN90] In the 1998 Internet Release, we expressed the view that offering materials posted on a web site would not be viewed as an offer, general solicitation or directed selling efforts in the United States, so long as the offeror implements precautionary measures that are reasonably designed to ensure that the Internet offer is not targeted to persons in the United States or to U.S. persons. The 1998 Internet Release stated that when an offeror prominently discloses that the offer is being made to countries other than the United States and implements adequate measures reasonably designed to guard against sales to persons in the United States or to U.S. persons in an offshore Internet offer, we will not view the offer as targeted to persons in the United States or to U.S. persons and thus will not treat it as occurring in the United States for Securities Act registration purposes.

Offshore rights offerings fall squarely within the guidance set forth in that release. As a general matter, an offeror conducting a tender or exchange offer also may rely on the guidance in the 1998 Internet release. This discussion provides additional guidance as to what constitutes adequate precautions to prevent participation by persons in the United States or U.S. persons in the context of these types of offshore transactions. What constitutes adequate measures depends on all the facts and circumstances of any particular situation. These procedures are not exclusive; other procedures that suffice to guard against sales to persons in the United States or to U.S. persons also can be used to demonstrate that the offer is not targeted at the United States.

2. Offshore Tender and Exchange Offers, Rights Offerings and Business Combinations on the Internet

Posting materials relating to tender and exchange offers and rights offerings on the web site of the offeror or subject company, or a third party, presents special problems not present in the context of public underwritten offerings. U.S. holders of the subject securities already are familiar with the subject company and its securities and are more likely to be alerted immediately to the posting of offering materials. Investors may either monitor the target's web site or employ a search service to alert it to any materials posted on the Internet relating to that company. Also, because of their existing investment in those securities, U.S. investors are more likely to have an incentive to find indirect means to participate in the offer, even though the materials state that the offer is not being made in the United States. As a result, offerors using a web site to publicize their offer should take special care that it is not used as a means to induce indirect participation by U.S. holders of those securities.

**\*26** One way in which the offeror could take special care to prevent sales to U.S. holders would be, in responding to inquiries and processing letters of transmittal, to obtain adequate information to determine whether the holder is a person in the United States or a U.S. person. Another example of such special care would be if the offeror obtains representations by the investor, or anyone tendering on the investor's behalf, that the investor is not a person in the United States or a U.S. person. Similarly, in disseminating the cash or securities consideration to

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.    Page 26
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

tendering investors, special care should be taken to avoid mailing into the United States.

Despite the use of disclaimers and the implementation of precautionary measures against accepting tenders or the exercise of rights from the United States, a web site posting could be viewed as an offer in the United States if the content of the web page clearly is designed to induce U.S. investors to find an indirect means to participate in the offer through offshore nominees or other means. Offerors cannot accomplish indirectly what they purport not to be doing directly.

In many cases, even though the offer materials disseminated outside the United States state that the offer is not being made in the United States, the bidder will allow U.S. institutional investors to participate either under Regulation S for offers and sales taking place outside the United States, or as a private or limited placement under Section 4(2) or other exemption from registration.[FN91] In the 1998 release, we concluded that a posting of offering materials on a web site was not necessarily offering activity in the United States, even though the web site is accessible by investors in the United States. This conclusion was premised on the implementation of measures both to prevent the targeting of U.S. investors and to prevent actual sales to persons in the United States or to U.S. persons in the offshore offer. A web site that is accessible in the United States cannot be used to entice U.S. investors to participate in the offering offshore. Accordingly, reliance on Regulation S to allow participation by U.S. persons offshore would not be appropriate with respect to tender or exchange offers posted on an unrestricted web site.

Business combinations present different issues from tender or exchange offers because participation by U.S. holders is not voluntary. In order to attempt to avoid U.S. jurisdiction, offerors often do not provide U.S. investors an opportunity to vote on the transaction. It is neither practicable nor desirable to treat U.S. holders differently from other security holders when their company is merged out of existence. No special precautions should be taken to prevent U.S. holders from receiving the merger consideration in a business combination involving a foreign company merely because the proxy statement/prospectus was posted on a web site available in the United States.

### 3. U.S. Exempt Component

*27 The 1998 Internet Release recognized that a simultaneous private offering in the United States could accompany the offshore Internet offering.[FN92] In that case, special precautions must be instituted to assure that the Internet offering is not used as a general solicitation to find qualified investors in the private offering. A general solicitation for participants in a private offering is inconsistent with the requirements of Section 4(2) of the Securities Act[FN93] as well as Regulation D.[FN94] Likewise, to the extent an offeror conducting an offshore exchange offer or rights offering on the Internet wishes to extend that offer to persons in the United States on a private offering basis, means must be in place to provide reasonable assurance that the web site is not used to solicit U.S. investors for the private U.S. offering. Measures to assure that the U.S. participants did not learn about the offering from the web site could include:
  • not placing U.S. investors that respond to the offshore Internet offering in the U.S. private offering;
  • extending the U.S. offer only to U.S. investors who were solicited before, or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

independently from, the posting of offering materials on the Internet;
• using separate contact persons for the Internet solicitation from that for the U.S. offering; and
• not referring to the private U.S. offering in the web site materials, except to the extent mandated by foreign law.

These measures are not exclusive. Other procedures that suffice to guard against sales to persons in the United States or to U.S. persons also can be used to demonstrate that the web site is not used to solicit U.S. investors for the private U.S. offering.

## 4. Domestic Issuers

In the 1998 Internet release, we expressed special concerns with U.S. companies' use of the Internet to conduct a purportedly offshore Internet offer. We stated that a domestic company could not use a web site to disseminate the offering materials, unless access to that site was limited to non-U.S. persons. This position was based on the potential for abuse when a U.S. company purports to rely on Regulation S to conduct an offering of its securities solely offshore, and on our approach under Regulation S to put offshore unregistered offerings by domestic companies on the same regulatory footing as private placements.

In light of the exemptive relief adopted today, we believe that there will be very limited circumstances where a U.S. bidder would have a reason to exclude U.S. holders of the foreign subject company from an exchange or tender offer for that company. At a minimum, any U.S. offeror purporting to extend an Internet tender or exchange offer solely to non-U.S. investors should likewise limit access to the web site to non-U.S. persons.

## III. Paperwork Reduction Act

Our staff submitted the amendments as proposed to the Office of Management and Budget ("OMB") for review in accordance with the Paperwork Reduction Act of 1995 ("PRA").[FN95] The title to the affected information collection is "Form CB" and revised "Form F-X". An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid control number. This collection of information has been assigned OMB Control Nos. 3235-0518 and 3235-0379.

**\*28** The rules and rule amendments exempt from the tender offer and registration rules cross-border tender offers, exchange offers, rights offerings and business combinations when U.S. ownership of the foreign private issuer is not significant. The purpose of these exemptions is to facilitate the ability of offerors to include U.S. security holders of foreign private issuers in these types of transactions. The rules and rule amendments are intended to reduce the regulations applicable to some cross-border transactions and therefore are expected to reduce the existing collection of information requirements. The amendments will eliminate certain existing reporting requirements for entities conducting an exempt tender or exchange offer. Specifically, in a tender offer that qualifies under the Tier 1 exemption, the acquiror will not need to comply with Schedule TO. Further, in an exchange offer, business combination or rights offer for foreign private issuers' securities, when U.S. security holders hold 10 percent or less of the subject securities, an acquiror will not need to file a registration statement registering

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the securities being issued.

Rules 13e-4(h)(8)(iii)(B) and 14d-1(c)(3)(i) require bidders to disseminate any informational documents to U.S. holders in English. This may require some bidders to translate documents. We estimate that it costs approximately $.30 per word to translate an information document into English. However, we cannot estimate with certainty how many information documents will be filed, how many will need to be translated into English, or how long such documents will be.

Rules 801(a)(4)(i) and 802(a)(3)(i) under the Securities Act and Rules 13e-4(h)(8)(iii)(A), 14d-1(c)(3)(iii) under the Exchange Act require that an entity conducting an exempt tender or rights offer in connection with a cross-border transaction pursuant to the exemptions submit Form CB. Similarly, revised Rule 14d-9 requires that the company that is the subject of an exempt third party tender offer, or any officer, director or other person who otherwise would have an obligation to file Schedule 14D-9, will be exempt from such obligation if such person submits Form CB. The collection of information will be necessary so that we can determine whether the transaction meets the eligibility requirements of the exemptive rules. We also have to collect information to assure that information about the transaction will be publicly available. Security holders will thus have the opportunity to make informed investment decisions, particularly since the transactions relate to potential changes in control.

Form CB is a cover sheet that incorporates the offering documents sent to security holders pursuant to the requirements of the country in which the issuer is incorporated. Form CB also requires disclosure of the identity of the entity conducting the tender or rights offer. Form CB must be submitted to the Commission on the business day following the date the offering documents are published or disseminated to security holders in the home jurisdiction.

*29 Form CB also requires that a non-U.S. entity must file a consent to service of process on Form F-X. Form F-X is used by certain non-U.S. entities to appoint an agent for service of process in the United States. The revisions to Form F-X add non-U.S. entities submitting a Form CB to the list of entities currently required to file Form F-X. This collection of information is necessary to provide investors with information concerning the U.S. person designated as agent for service of process.

For the tender and exchange offer exemptions, domestic and foreign entities wishing to engage in cross-border transactions or that are the target of a tender offer will likely be the respondents to the collection of information requirement. With respect to rights offerings, the likely respondents will be foreign private issuers conducting rights offerings. We have no data to help us determine how many entities will actually rely on the exemptions, because reliance on the exemptions is voluntary. As noted in the proposed release, we estimated that 824 Forms CB will be filed each year under the rules adopted today. We estimate that it will impose an estimated burden of 2 hours for a total burden of 1648 hours. We estimate that half of the entities submitting Form CB will be foreign entities that will be required to file Forms F-X (412) each year under the adopted rules. Form F-X currently is estimated to impose an estimated burden of 2 hours for a total burden of 824 hours.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The changes that have been made to the proposed rules do not affect our estimate of
the number of entities that will file a Form CB for tender offers in reliance on
the Tier I exemption or pursuant to an exemption from registration under Rules 801
and 802. Rules 801 and 802 use a ten percent threshold for U.S. ownership rather
than the five percent threshold that was originally proposed. We also have excluded
securities held by 10% U.S. holders and bidders from the calculation of U.S.
ownership. We believe that any increase in the number of entities that will file a
Form CB pursuant to Rules 801 and 802 because of these changes will be offset at
least partially by the change in the method of calculation of U.S. ownership, which
requires offerors to "look through" the record ownership of brokers, dealers, banks
or nominees holding securities for the accounts of their customers.

Neither we nor OMB received any comments in response to our request for comment
regarding the information collection obligation.

IV. Cost-Benefit Analysis
U.S. residents holding securities in foreign private issuers are often excluded
from tender offers and rights offerings for the foreign private issuers' securities
because of conflicts between U.S. and foreign regulation of these offers. As a
result, U.S. security holders of foreign private issuers are unable to benefit
fully from any premium offered in a tender offer or are unable to purchase
additional securities at a discount in a rights offering.

*30 The rules and rule amendments adopted today exempt cross-border tender offers
from the tender offer rules (the "Tier I exemption") and exchange offers, rights
offerings and business combinations from Securities Act registration requirements
when U.S. security holders hold 10 percent or less of the subject securities. When
the U.S. ownership in the foreign private issuer does not exceed 40 percent, the
proposal also includes exemptions from certain of the tender offer rules (the "Tier
II exemption").

The purpose of these exemptions is to facilitate U.S. security holder participation
in these types of transactions by removing regulatory barriers. The rules and rule
amendments are intended to reduce the tender offer and registration requirements
for cross-border transactions. We expect the exemptions to reduce the costs and
burdens of extending these types of offers to U.S. security holders. U.S. security
holders of foreign private issuers will benefit by being able to participate in
these types of transactions. The consideration paid in a tender or exchange offer,
merger or similar transaction typically reflects a premium to tendering security
holders.[FN96] U.S. security holders who are excluded from tender or exchange offers
may be subjected to a risk that the consideration they may receive in a back-end
merger or business combination may not be equivalent to the consideration being
paid in the tender or exchange offer. In addition, the market for the securities
that are the subject of the tender or exchange offer may not be liquid enough to
permit investors to buy or sell securities at comparable prices. In rights
offerings, U.S. security holders who are excluded from participation lack the
opportunity to purchase the issuer's securities at a discount.[FN97] The commenters
agreed that the rules would serve to facilitate U.S. investor participation in
these transactions.

Entities relying on the Tier I exemption will benefit from the rules because they

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

will not need to comply with the procedural and filing requirements of the tender offer rules. Specifically, an acquiror will not need to file Schedule TO. In lieu of these forms, an acquiror will submit to the Commission Form CB, which is significantly less burdensome.[FN98] Also, a non-U.S. acquiror will file a Form F-X contemporaneously with the Form CB to appoint an agent for service of process in the United States. A number of commenters argued that Forms CB and F-X will be too burdensome and will discourage offerors from relying on the exemptions. We believe, however, that our interest in monitoring the availability of the exemptions and ensuring that U.S. security holders have access to these documents through their public availability justify the minimal burdens of preparing these forms or any increased risk of suit from making service of process and assertion of U.S. jurisdiction marginally easier.

In response to comments, the rules we adopt today permit offerors relying on the Tier I exemption to offer only cash to U.S. holders, even if securities are offered to foreign investors. Offerors offering a cash-only alternative to U.S. security holders, however, must obtain an opinion from an independent third party stating that the cash being offered to U.S. security holders is substantially equivalent to the value of the securities being offered to foreign security holders, unless the offeror's securities are "margin securities" within the meaning of Regulation T. In the latter case, the offeror need only provide information on recent trading prices of the offeror's securities in lieu of an opinion.

**\*31** Similarly, entities relying on Rules 801 or 802 in connection with a rights offer or exchange offer will benefit from the rules because they will not need to comply with the Securities Act registration requirements. Specifically, an issuer will not need to file the registration forms, including Forms S-1, S-2, S-3, S-4, F-1, F-2, F-3 and F-4. Instead of these forms, an issuer will submit Form CB and, if the issuer is a non-U.S. entity, file Form F-X, which as discussed above are significantly less burdensome.

We estimate that Form CB and Form F-X will take substantially less time to prepare than Schedule TO or a registration statement.[FN99] In addition, we believe it takes a lesser degree of professional skill, including that of securities lawyers and accountants, to prepare a Form CB and Form F-X than to prepare a Schedule TO or a registration statement. In some cases, the professional skills required will include the ability to translate from a foreign language into English.

Entities relying on the Tier I and Tier II exemptions will also benefit from the proposals because they will not need to comply with all of the procedural requirements of the tender offer rules.[FN100] For example, in the Tier I exemption, an acquiror will be exempt from all of the procedural requirements of the U.S. tender offer rules, including those relating to the duration of the offer and withdrawal rights.

In the Tier II exemption, an acquiror will receive limited relief from the Commission's tender offer rules. The Tier II exemption provides relief from the U.S. tender offer rules that are common impediments to extending offers to U.S. security holders. However, an acquiror relying on the Tier II exemption will have to comply with the remaining tender offer provisions. These provisions include, among others, the following: (1) keeping the offer open 20 business days; (2)

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.                    Page 31
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

filing a Schedule TO; (3) disseminating the offering documents; and (4) offering
withdrawal rights. Although compliance with these requirements may impose costs to
cross-border tender offers, compliance will still be less burdensome than
satisfying all the U.S. tender offer requirements or applying to the Commission for
exemptive relief.

The transfer restrictions that we adopt today provide that to the extent the
securities that are the subject of an exchange offer, business combination or
rights offering are "restricted securities" under Rule 144 in the hands of the U.S.
investor, then securities acquired by that investor in the transaction will be
"restricted securities." The transfer restrictions are the same as we proposed with
respect to exchange offers and business combinations but are less restrictive than
those proposed for rights offerings. We had proposed that securities received in a
rights offering pursuant to Rule 801 be restricted whether or not the securities
that are subject to the offering were restricted. We are persuaded by the large
number of commenters who argued that requiring unaffiliated U.S. security holders
to accept restricted securities when they currently hold unrestricted securities is
not necessary nor desirable.

**\*32** The rules we adopt today base the method of calculation of the amount of the
subject securities held by U.S. holders on the method of calculation used in Rule
12g3-2(a) under the Exchange Act. That method more closely reflects the beneficial
ownership of the issuer's securities. Rule 12g3-2(a) requires the offeror to "look
through" the record ownership of brokers, dealers, banks or nominees holding
securities for the accounts of their customers to determine the residency of those
customers. Offerors also must take into account information regarding U.S.
ownership derived from beneficial ownership reports that are provided to the issuer
or filed publicly, whether in the United States or other countries, as well as
information that otherwise is provided to the issuer or offeror.

Several commenters on the proposed release and the international disclosure
standards proposing release suggested that using a beneficial ownership test would
create a substantial burden for companies that trade in many different markets, and
that widely-held companies would have to invest significant effort and expense in
determining beneficial ownership in many jurisdictions where the likelihood of
finding U.S. owners is small. In order to address these concerns, we have limited
the application of the "look through" provisions of Rule 12g3-2(a) to voting
securities held of record (1) in the United States, (2) in the issuer's home
jurisdiction, and (3) in the primary trading market for the issuer's securities if
different from the issuer's home jurisdiction. These jurisdictions should cover
most of the trading volume for the issuer's securities, and searches in these
jurisdictions are likely to yield the greatest number of U.S. beneficial owners.
This modification to the test should reduce the burden on foreign companies while
still producing a reasonably accurate picture of whether U.S. ownership exceeds the
specified thresholds.

Some commenters pointed out that it is not always possible for issuers to obtain
information about separate customer accounts, as required by Rule 12g3-2(a). As
noted in the discussion above, we have minimized this burden. In any event, if
after reasonable inquiry, the offeror is unable to obtain information about the
nominee's customer accounts, including when the nominee's fees would be
unreasonable, the offeror may rely on a presumption that the customer accounts are

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.                    Page 32
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

held in the nominee's principal place of business.

No specific data was provided in response to the Commission's request in the proposing release regarding the costs and benefits associated with today's amendments. We have anecdotal information regarding numerous transactions that have excluded U.S. security holders. The commenters also agreed that these exclusionary offers are common practice. Because offerors do not file documents with the Commission when U.S. security holders are excluded, we cannot calculate the number of cross-border transactions that have excluded U.S. security holders with certainty. Further, if the transaction is a tender offer for securities that are not registered under Section 12 of the Exchange Act, and is subject only to Regulation 14E, there is no filing obligation. Therefore, we are unable to estimate the number of entities that will take advantage of the exemptions. While we are unable to determine how many U.S. security holders will benefit from the rules by being able to participate in cross-border tender, exchange and rights offerings, we believe that the rules will benefit U.S. security holders by removing regulatory barriers to including U.S. security holders in these types of offers. The commenters agreed.

## V. Findings and Considerations

### A. Effect on Competition/Exchange Act Section 23(a)

**\*33** Section 23(a) of the Exchange Act[FN101] requires us, in adopting rules under the Exchange Act, to consider the impact any rule would have on competition. We cannot adopt any rule that would impose a burden on competition not necessary or appropriate in the public interest. We did not receive any information on the impact of increased competition for capital for domestic companies as a result of an increase in securities offered into the United States by foreign companies or as to whether the benefit to U.S. investors will offset the cost of any such increased competition for capital. Because the rules we adopt today are designed to allow U.S. investors to participate in the full benefits of security ownership that they are currently denied when U.S. ownership of the foreign private issuer is relatively small, we do not believe the relative cost will be large. Exempting foreign tender, exchange and rights offers from certain federal securities laws may have a competitive effect on U.S. issuers, who remain subject to all federal securities laws. We believe these effects are justified in order to benefit U.S. shareholders in foreign companies. Therefore, our view is that any anticompetitive effects of the rules adopted today for cross-border tender and exchange offers, business combinations and rights offerings are necessary or appropriate in the public interest.

### B. Promotion of Efficiency, Competition and Capital Formation

Section 2(b)[FN102] of the Securities Act and Section 3(f)[FN103] of the Exchange Act, as amended by the National Securities Markets Improvement Act of 1996,[FN104] provide that whenever the Commission is engaged in rulemaking and is required to consider or determine whether an action is necessary or appropriate in the public interest, the Commission also shall consider, in addition to the protection of investors, whether the action will promote efficiency, competition and capital formation. For the reasons stated above, we believe the rules will facilitate a variety of cross-border transactions, thereby enhancing the efficiency of global competition for capital.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## C. Exemptive Authority Findings

We find that it is appropriate, in the public interest and consistent with the protection of investors, as well as the purposes fairly intended by the Trust Indenture Act: (i) to exempt eligible tender offers from certain provisions of the Exchange Act and the rules thereunder relating to tender offers, as described in this release, (ii) to exempt eligible tender and exchange offers, business combinations and rights offerings from the registration provisions of the Securities Act, as described in this release, (iii) to exempt eligible exchange offers or business combinations from the Trust Indenture Act, as described in this release, and (iv) to amend the Commission's general organization rules in order to delegate to the Directors of the Divisions of Corporation Finance and Market Regulation authority to exempt tender offers from specific tender offer requirements.

**\*34** We make these findings based on the reasons described in the release. In particular, we believe that U.S. investors will benefit by the exemptions because they will facilitate the inclusion of U.S. investors in cross-border tender and exchange offers, business combinations and rights offerings. Our use of exemptive authority will enable U.S. holders to have the opportunity to receive a premium for their securities in a tender or exchange offer and to participate in investment opportunities on an equal basis with foreign security holders. Similarly, the rules will enable U.S. security holders to have the opportunity to purchase shares at a possible discount from market price in cross-border rights offerings. Moreover, investors will still receive the protections of the antifraud provisions of the federal securities laws.

## D. Delegated Authority

The Commission also finds, in accordance with Section 553(d) of the Administrative Procedure Act,[FN105] that the delegation of exemptive authority in this release relates to agency organization, procedure, or practice. Accordingly, the delegation is effective upon publication.

## VI. Summary of Final Regulatory Flexibility Analysis

A Final Regulatory Flexibility Analysis ("FRFA") has been prepared in accordance with 5 U.S.C. 604 regarding the rules being adopted today. The analysis notes that the adopted rules are intended primarily to facilitate tender and rights offerings for securities of foreign private issuers held by U.S. residents. The resulting reduction in the expense, time and effort of making such offerings will benefit U.S. security holders. These persons normally are excluded from such offerings. Entities that wish to extend these offers to U.S. security holders also will benefit because it will be cheaper for them to comply with U.S. securities laws and easier to make offers to U.S. security holders.

The adopted rules are limited to tender offers and exchange offers for the securities of foreign private issuers. But both foreign and domestic bidders, whatever their size, are eligible to use these exemptions. Only foreign private issuers are eligible to use the exemption for rights offerings. Small entities can rely on the adopted tender and exchange offer exemptions on the same basis as larger entities, so long as they meet the conditions for relying on them.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.          Page 34
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

We know of approximately 836 Exchange Act reporting companies that are not investment companies that currently satisfy the definition of "small business" under Rule 0-10. There are approximately 320 investment companies that satisfy the "small business" definition. We have no data to determine how many reporting or non-reporting small businesses may actually rely on the rules, or may otherwise be affected by the rules. However, we believe that the rules will result in a substantial savings to entities (both small and large) that qualify for the exemptions. Qualifying entities under the Tier I and Securities Act exemptions will not have to comply with the tender offer and registration requirements of the U.S. securities laws.

**\*35** The FRFA notes that the adopted rules will eliminate certain existing reporting requirements for entities conducting an exempt tender or exchange offer. Specifically, an acquiror under Tier I will not need to file Schedule TO. Further, in a rights or exchange offer, an acquiror will not need to register the securities being issued. In place of these filing obligations, an acquiror relying on the new exemptions will submit, rather than file, Form CB. Form CB is merely a cover sheet that incorporates the offering documents sent to security holders pursuant to the requirements of the country in which the issuer is incorporated. Also, a non-U.S. acquiror will file a Form F-X contemporaneously with the Form CB to appoint an agent for service of process in the United States. We believe Form CB and Form F-X are significantly less burdensome to prepare than a Schedule TO or a registration statement.

As stated in the analysis, we considered several alternatives to the rules adopted today, including:
• The Commission considered requiring that offerors deliver rights offering materials to U.S. investors, even if those materials were only published overseas, as proposed. In order to encourage foreign private issuers to include U.S. security holders in rights offerings, the rules adopted today provide that for both rights offerings and exchange offers, the offeror must disseminate any informational documents to U.S. holders, in English, on a comparable basis to that provided to security holders in the offeror's home jurisdiction. If the offeror disseminates by publication in its home jurisdiction, the offeror must publish the information in the United States in a manner reasonably calculated to inform U.S. holders of the offer. We were persuaded by those commenters who indicated that offerors will not be inclined to avail themselves of Rules 801 or 802 if burdensome documentation and dissemination requirements are imposed by the U.S. rules. This will minimize the burden on offerors in rights offerings, including small businesses.
• The Commission considered whether to require a valuation opinion in all cases where an offeror chooses to offer U.S. security holders cash in lieu of the securities, cash and other consideration offered to non-U.S. security holders in reliance on the Tier I exemption. We decided to only require a valuation opinion where the offered securities are not "margin securities" within the meaning of Regulation T in order to minimize the burden on offerors, including small businesses.
• The Commission considered whether to use a beneficial ownership test in determining U.S. ownership. In reviewing the method of determining U.S. ownership, we were persuaded by those commenters that suggested that a beneficial ownership test would create a substantial burden for companies that trade in many different markets, and that widely-held companies would have to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

invest significant effort and expense in determining beneficial ownership in many jurisdictions where the likelihood of finding U.S. owners is small. In order to address these concerns, we limited the application of the "look through" provisions of Rule 12g3-2(a) to voting securities held of record (1) in the United States, (2) in the issuer's home jurisdiction, and (3) in the primary trading market for the issuer's securities if different from the issuer's home jurisdiction. This modification to the test should reduce the burden on companies, including small businesses, while still producing a reasonably accurate picture of whether U.S. ownership exceeds the specified thresholds. **36** • The Commission considered permitting registration of securities issued in rights offering and exchange offers to be based on home country documents. However, the Commission determined not to repropose a home-country based registration system because the disclosure and accounting standards of foreign jurisdictions are not always consistent with the level of prospectus disclosure expected in a registered offer under the Securities Act. Further, a registration-based exemption would lead to a periodic reporting obligation that small entities might find burdensome.

The analysis also indicates that the rules and forms being adopted today do not duplicate or conflict with any existing federal rule provisions.

We requested but received no comments on the Initial Regulatory Flexibility Analysis prepared in connection with the proposing release. A copy of the FRFA may be obtained by contacting Laura Badian, in the Office of Mergers and Acquisitions, Division of Corporation Finance, Securities and Exchange Commission, 450 Fifth Street, N.W., Washington, D.C. 20549, at (202)942-2920.

VII. Statutory Basis and Text of Amendments
We are adopting these revisions pursuant to Sections 3(b), 7, 8, 10, 19 and 28 of the Securities Act, Sections 12, 13, 14, 23 and 36 of the Exchange Act, and Section 304 of the Trust Indenture Act.

List of Subjects

17 CFR Part 200
Authority delegations (Government agencies).

17 CFR Parts 230, 239, 240, 249 and 260
Reporting and recordkeeping requirements, Securities.

Final Rule
In accordance with the foregoing, we are amending Title 17, Chapter II of the Code of Federal Regulations as follows:

PART 200 -ORGANIZATION; CONDUCT AND ETHICS; AND INFORMATION AND REQUESTS
1. The authority citation for Part 200 continues to read in part as follows:

Authority: 15 U.S.C. 77s, 78d-1, 78d-2, 78w, 7811(d), 78mm, 79t, 77sss, 80a-37, 80b-11, unless otherwise noted.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.          Page 36
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

*****

2. By amending §200.30-1 by adding paragraph (e)(16) to read as follows:

§200.30-1 <u>Delegation of authority to Director of Division of Corporation Finance</u>.

*****
(e) ***

(16) To grant requests for exemptions from:

(i) Tender offer provisions of Sections 13(e) and 14(d)(1) through 14(d)(7) of the Act (<u>15 U.S.C. 78m(e)</u> and <u>78n(d)(1)</u> through <u>78n(d)(7))</u>, Rule 13e-3 (§240.13e-3 of this chapter) and Rule 13e-4 (§240.13e-4 of this chapter), Regulation 14D (§§240.14d-1 through 240.14d-11 of this chapter) and Schedules 13E-3, TO, and 14D-9 (§§240.13e-100, 240.14d-100 and 240.14d-101 of this chapter) thereunder, pursuant to Sections 14(d)(5), 14(d)(8)(C) and 36(a) of the Act (<u>15 U.S.C. 78n(d)(5)</u>, 78(d)(8)(C), and <u>78mm(a))</u>; and

(ii) The tender offer provisions of Rules 14e-1, 14e-2 and 14e-5 of Regulation 14E (§§240.14e-1, 240.14e-2 and 240.14e-5 of this chapter) pursuant to Section 36(a) of the Act (<u>15 U.S.C. 78mm(a))</u>.

*****

3. By amending §200.30-3 to add paragraph (a)(68) to read as follows:

§200.30-3 <u>Delegation of authority to Director of Division of Market Regulation</u>.

*****
*37 (a) ***

(68) Pursuant to Section 36(a) of the Act, <u>15 U.S.C. 78mm(a)</u>, to grant requests for exemptions from the tender offer provisions of Rule 14e-1 of Regulation 14E (§240.14e-1 of this chapter).

*****

PART 230 - GENERAL RULES AND REGULATIONS, SECURITIES ACT OF 1933
4. The authority citation for Part 230 continues to read in part as follows:

Authority: <u>15 U.S.C. 77b</u>, <u>77f</u>, <u>77g</u>, <u>77h</u>, <u>77j</u>, <u>77r</u>, <u>77s</u>, <u>77sss</u>, <u>78c</u>, <u>78d</u>, 78l, <u>78m</u>, <u>78n</u>, <u>78o</u>, <u>78w</u>, 78 <u>11</u>(d), <u>79t</u>, <u>80a-8</u>, <u>80a-24</u>, <u>80a-28</u>, 80-29, <u>80a-30</u>, and <u>80a-37</u>, unless otherwise noted.

*****

5. By amending §230.144 by removing the word "and" at the end of paragraph (a)(3)(iv), removing the period and adding in its place ";" at the end of paragraph

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(a)(3)(v), and adding paragraphs (a)(3)(vi) and (vii) to read as follows:

§230.144 <u>Persons deemed not to be engaged in a distribution and therefore not underwriters</u>.

*****

(a) ***

(3) ***

(vi) Securities acquired in a transaction made under §230.801 to the same extent and proportion that the securities held by the security holder of the class with respect to which the rights offering was made were as of the record date for the rights offering "restricted securities" within the meaning of this paragraph (a)(3); and

(vii) Securities acquired in a transaction made under §230.802 to the same extent and proportion that the securities that were tendered or exchanged in the exchange offer or business combination were "restricted securities" within the meaning of this paragraph (a)(3).

*****

6. By adding §§230.800 through 230.802 and an undesignated center heading to read as follows:

<u>Exemptions for Cross-Border Rights Offerings, Exchange Offers and Business Combinations</u>

GENERAL NOTES TO §§230.800, 230.801 AND 230.802
1. Sections 230.801 and 230.802 relate only to the applicability of the registration provisions of the Act (<u>15 U.S.C. 77e</u>) and not to the applicability of the anti-fraud, civil liability or other provisions of the federal securities laws.

2. The exemptions provided by §230.801 and §230.802 are not available for any securities transaction or series of transactions that technically complies with §230.801 and §230.802 but are part of a plan or scheme to evade the registration provisions of the Act.

3. An issuer who relies on §230.801 or an offeror who relies on §230.802 must still comply with the securities registration or broker-dealer registration requirements of the Securities Exchange Act of 1934 (<u>15 U.S.C. 78a</u> <u>et seq.</u>) and any other applicable provisions of the federal securities laws.

4. An issuer who relies on §230.801 or an offeror who relies on §230.802 must still comply with any applicable state laws relating to the offer and sale of securities.

5. Attempted compliance with §230.801 or §230.802 does not act as an exclusive election; an issuer making an offer or sale of securities in reliance on §230.801

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

or §230.802 may also rely on any other applicable exemption from the registration requirements of the Act.

**\*38** 6. Section 230.801 and §230.802 provide exemptions only for the issuer of the securities and not for any affiliate of that issuer or for any other person for resales of the issuer's securities. These sections provide exemptions only for the transaction in which the issuer or other person offers or sells the securities, not for the securities themselves. Securities acquired in a §230.801 or §230.802 transaction may be resold iun the United States only if they are registered under the Act or an examption from registration is available.

7. Unregistered offers and sales made outside the Uneted States will not affect contemporaneous offers and sales made in compliance with §230.801 or § 230.802. A transaction that complies with §230.801 or §230.802 will not be integrated with offerings exempt under other provisions of the Act, even if both transactions occur at the same time.

8. Securities acquired in a rights offering under §230.801 are 'restricted securities' within the meaning of §230.144(a)(3) to the extent and proportion that the securities held by the security holder as of the record date for the rights offering were restricted securities. Likewise, securities acquired in an exchange offer or business combinatin subject to §230.144(a)(3) are 'restricted securities' within the meaning of §230.144(a)(3) to the same extent and proportion that the securities tendered or exchanged by the security holder in that transaction were restricted securities.

9. Section 230.801 does not apply to a rights offering by an investment company registered or rwquired to be registered under the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.), other than a registered closed-end investment company. Section 230.802 does not apply to exchange offers or business combinations by an investment company registered or required to be registered under the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.), other than a registered closed-end investment company.

§230.800 Definitions for §§230.800, 230.801 and 230.802.
The following definitions apply in §§230.800, 230.801 and 230.802.

(a) Business combination. Business combination means a statutory amalgamation, merger, arrangement or other reorganization requiring the vote of security holders of one or more of the participating companies. It also includes a statutory short form merger that does not require a vote of security holders.

(b) Equity security. Equity security means the same as in §240.3a11-1 of this chapter, but for purposes of this section only does not include:

(1) Any debt security that is convertible into an equity security, with or without consideration;

(2) Any debt security that includes a warrant or right to subscribe to or purchase an equity security;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(3) Any such warrant or right; or

(4) Any put, call, straddle, or other option or privilege that gives the holder the option of buying or selling a security but does not require the holder to do so.

**\*39** (c) Exchange offer. Exchange offer means a tender offer in which securities are issued as consideration.

(d) Foreign private issuer. Foreign private issuer means the same as in § 230.405 of Regulation C.

(e) Foreign subject company. Foreign subject company means any foreign private issuer whose securities are the subject of the exchange offer or business combination.

(f) Home jurisdiction. Home jurisdiction means both the jurisdiction of the foreign subject company's (or in the case of a rights offering, the foreign private issuer's) incorporation, organization or chartering and the principal foreign market where the foreign subject company's (or in the case of a rights offering, the issuer's) securities are listed or quoted.

(g) Rights offering. Rights offering means offers and sales for cash of equity securities where:

(1) The issuer grants the existing security holders of a particular class of equity securities (including holders of depositary receipts evidencing those securities) the right to purchase or subscribe for additional securities of that class; and

(2) The number of additional shares an existing security holder may purchase initially is in proportion to the number of securities he or she holds of record on the record date for the rights offering. If an existing security holder holds depositary receipts, the proportion must be calculated as if the underlying securities were held directly.

(h) U.S. holder. U.S. holder means any security holder resident in the United States. To determine the percentage of outstanding securities held by U.S. holders:

(1) Calculate percentage of outstanding securities held by U.S. holders as of the record date for a rights offering, or 30 days before the commencement of an exchange offer or the solicitation for a business combination.

(2) Include securities underlying American Depositary Shares convertible or exchangeable into the securities that are the subject of the tender offer when calculating the number of subject securities outstanding, as well as the number held by U.S. holders. Exclude from the calculations other types of securities that are convertible or exchangeable into the securities that are the subject of the tender offer, such as warrants, options and convertible securities. Exclude from those calculations securities held by persons who hold more than 10 percent of the subject securities, or that are held by the offeror in an exchange offer or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

business combination;

(3) Use the method of calculating record ownership in Rule 12g3-2(a) under the Exchange Act (§ 240.12g3-2(a) of this chapter), except that your inquiry as to the amount of securities represented by accounts of customers resident in the United States may be limited to brokers, dealers, banks and other nominees located in the United States, the subject company's jurisdiction of incorporation or that of each participant in a business combination, and the jurisdiction that is the primary trading market for the subject securities, if different from the subject company's jurisdiction of incorporation;

**\*40** (4) If, after reasonable inquiry, you are unable to obtain information about the amount of securities represented by accounts of customers resident in the United States, you may assume, for purposes of this provision, that the customers are residents of the jurisdiction in which the nominee has its principal place of business.

(5) Count securities as owned by U.S. holders when publicly filed reports of beneficial ownership or information that is otherwise provided to you indicates that the securities are held by U.S. residents.

(i) United States. United States means the United States of America, its territories and possessions, any State of the United States, and the District of Columbia.

(ii) The issuer must disseminate any informational document to U.S. holders, including any amendments thereto, in English, on a comparable basis to that provided to security holders in the home jurisdiction.

(iii) If the issuer disseminates by publication in its home jurisdiction, the issuer must publish the information in the United States in a manner reasonably calculated to inform U.S. holders of the offer.

(5) Eligibility of securities. The securities offered in the rights offerin are equity securities of the same class as the securities held by the offerees in the United States directly or through American Depositary Receipts.

(6) Limitation on transferability of rights. The terms of the rights prohibit transfers of the rights by U.S. holders except in accordance with Regulation S (§230.901 through §230.905).

(b) Legends. The following legend or an equivalent statement in clear, plain language, to the extent appkicable, appears on the cover page or other prominent portion of any informational document the issuer disseminates to U.S. holders:
    This rights offering is made for the securities of a foreign company. The offer is subject to the disclosure requirements of a foreign country that are different from those of the United States. Financial statements included in the document, if any, have been prepared in accordance with foreign accounting standards that may not be comparable to the financial statements of United States companies.
    It may be difficult for you to enforce your rights and any claim you may have

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

arising under the federal securities laws, since the issuer is located in a foreign country, and some or all of its officers and directors may be residents of a foreign country. You may not be able to sue the foreign company or its officers or directors in a foreign court for violations of the U.S. securities laws. It may be difficult to compel a foreign company and its affiiates to subject themselves to a U.S. court's judgment.

§230.802 <u>Exemption for offerings in connection with an exchange offer or business combination for the securities of foreign private issuers.</u>
Offers and sales in any exchange offer for a class of securities of a foreign private issuer, or in any exchange of securities for the securities of a foreign private issuer in any business combination, are exempt from the provisions of Section 5 of the Act (15 U.S.C. 77e), if they satisfy the following conditions:

*41 (a) <u>Conditions to be met</u>. (1) <u>Limitation on U.S. ownership</u>. Except in the case of an exchange offer or business combination that is commenced during the pendency of a prior exchange offer or business combination made in reliance on this paragraph, U.S. holders of the foreign subject company must hold no more than 10 percent of the securities that are the subject of the exchange offer or business combination (as determined under the definition of "U.S. holder" in §230.800(h)). In the case of a business combination in which the securities are to be issued by a successor registrant, U.S. holders may hold no more than 10 percent of the class of securities of the successor registrant, as if measured immediately after completion of the business combination.

(2) <u>Equal treatment.</u> The issuer must permit U.S. holders to participate in the exchange offer or business combination on terms at least as favorable as those offered any other holder of the subject securities. The issuer, however, need not extend the offer to security holders in those states or jurisdictions that require registration or qualification, except that the issuer must offer the same cash alternative to security holders in any such state that it has offered to security holders in any other state or jurisdiction.

(3) <u>Informational documents</u>. (i) If the issuer publishes or otherwise disseminates an informational document to the holders of the subject securities in connection with the exchange offer or business combination, the issuer must furnish that informational document, including any amendments thereto, in English, to the Commission on Form CB (§239.800 of this chapter) by the first business day after publication or dissemination. If the bidder is a foreign company, it must also file a Form F-X (§239.42 of this chapter) with the Commission at the same time as the submission of Form CB to appoint an agent for service in the United States.

(ii) The issuer must disseminate any informational document to U.S. holders, including any amendments thereto, in English, on a comparable basis to that provided to security holders in the foreign subject company's home jurisdiction.

(iii) If the issuer disseminates by publication in its home jurisdiction, the issuer must publish the information in the United States in a manner reasonably calculated to inform U.S. holders of the offer.

(b) <u>Legends.</u> The following legend or an equivalent statement in clear, plain

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.                    Page 42
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

language, to the extent applicable, must be included on the cover page or other prominent portion of any informational document the offeror publishes or disseminates to U.S. holders:

This exchange offer or business combination is made for the securities of a foreign company. The offer is subject to disclosure requirements of a foreign country that are different from those of the United States. Financial statements included in the document, if any, have been prepared in accordance with foreign accounting standards that may not be comparable to the financial statements of United States companies.

**\*42** It may be difficult for you to enforce your rights and any claim you may have arising under the federal securities laws, since the issuer is located in a foreign country, and some or all of its officers and directors may be residents of a foreign country. You may not be able to sue a foreign company or its officers or directors in a foreign court for violations of the U.S. securities laws. It may be difficult to compel a foreign company and its affiliates to subject themselves to a U.S. court's judgment.

You should be aware that the issuer may purchase securities otherwise than under the exchange offer, such as in open market or privately negotiated purchases.

(c) For exchange offers conducted by persons other than the issuer of the subject securities or its affiliates, the issuer of the subject securities will be presumed to be a foreign private issuer and U.S. holders will be presumed to hold 10 percent or less of the outstanding subject securities, unless:

(1) The exchange offer is made pursuant to an agreement with the issuer of the subject securities;

(2) The aggregate trading volume of the subject class of securities on all national securities exchanges in the United States, on the Nasdaq market or on the OTC market, as reported to the NASD, over the 12-calendar-month period ending 30 days before commencement of the offer, exceeds 10 percent of the worldwide aggregate trading volume of that class of securities over the same period;

(3) The most recent annual report or annual information filed or submitted by the issuer with securities regulators of the home jurisdiction or with the Commission indicates that U.S. holders hold more than 10 percent of the outstanding subject class of securities; or

(4) The offeror knows, or has reason to know, that U.S. ownership exceeds 10 percent of the subject securities.

PART 239 - FORMS PRESCRIBED UNDER THE SECURITIES ACT OF 1933
7. The authority citation for part 239 continues to read, in part, as follows:

AUTHORITY: 15 U.S.C. 77f, 77g, 77h, 77j, 77s, 77z-2, 77sss, 78c, 78l, 78m, 78n, 78o(d), 78u-5, 78w(a), 78ll(d), 79e, 79f, 79g, 79j, 79l, 79m, 79n, 79q, 79t, 80a-8, 80a-24, 80a-29, 80a-30 and 80a-37, unless otherwise noted.

* * * * *

8. By amending Form F-X (referenced in §239.42 of this chapter) General Instruction

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1 to add paragraph (g) and to revise Item II.F. (b) to read as follows:

[Note: Form F-X does not and this amendment will not appear in the Code of Federal Regulations.]

Form F-X

General Instructions
1. Form F-X must be filed with the Commission:

*****

(g) by any non-U.S. issuer providing Form CB to the Commission in connection with a tender offer, rights offering or business combination.

*****

II. ***

F. ***

(b) the use of Form F-8, Form F-80 or Form CB stipulates and agrees to appoint a successor agent for service of process and file an amended Form F-X if the Filer discharges the Agent or the Agent is unwilling or unable to accept service on behalf of the Filer at any time until six years have elapsed following the effective date of the latest amendment to such Form F-8, Form F-80 or Form CB;

**43** *****

9. By adding §239.800 and Form CB to read as follows:

§239.800 Form CB, report of sales of securities in connection with an exchange offer or a rights offering.
This Form is used to report sales of securities in connection with a rights offering in reliance upon §230.801 of this chapter and to report sales of securities in connection with an exchange offer or business combination in reliance upon §230.802 of this chapter.

[Note: Form CB does not appear in the Code of Federal Regulations. Form CB is attached as Appendix A.]

PART 240 - GENERAL RULES AND REGULATIONS, SECURITIES EXCHANGE ACT OF 1934
10. The authority citation for Part 240 continues to read in part as follows:

Authority: 15 U.S.C. 77c, 77d, 77g, 77j, 77s, 77z-2, 77eee, 77ggg, 77nnn, 77sss, 77ttt, 78c, 78d 78f, 78i, 78j, 78j-1, 78k, 78k-1, 78l, 78m, 78n, 78o, 78p, 78q, 78s, 78u-5, 78w, 78x, 78ll(d), 78mm, 79q, 79t, 80a-20, 80a-23, 80a-29, 80a-37, 80b-3, 80b-4 and 80b-11, unless otherwise noted.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

\*\*\*\*\*

11. By amending §240.13e-3 to add paragraph (g)(6) to read as follows:

§240.13e-3 <u>Going private transactions by certain issuers or their affiliates</u>.
\*\*\*\*\*

(g) <u>Exceptions.</u> \*\*\*

\*\*\*\*\*

(6) Any tender offer or business combination made in compliance with §230.802 of this chapter, §240.13e-4(h)(8) or §240.14d-1(c).

12. By amending §240.13e-4 by removing the word "or" at the end of paragraph (h)(7) and to redesignate paragraph (h)(8) as (h)(9) and to add new paragraphs (h)(8) and (i) to read as follows:

§240.13e-4 <u>Tender offers by issuers</u>.
\*\*\*\*\*

(h) \*\*\*

(8) <u>Cross-border tender offers (Tier I)</u>. Any issuer tender offer (including any exchange offer) where the issuer is a foreign private issuer as defined in §240.3b-4 if the following conditions are satisfied.

(i) Except in the case of an issuer tender offer which is commenced during the pendency of a tender offer made by a third party in reliance on §240.14d-1(c), U.S. holders do not hold more than 10 percent of the class of securities sought in the offer (as determined under Instruction 2 to paragraph (h)(8) and paragraph (i) of this section); and

(ii) The issuer or affiliate must permit U.S. holders to participate in the offer on terms at least as favorable as those offered any other holder of the same class of securities that is the subject of the offer; however:

(A) <u>Registered exchange offers.</u> If the issuer or affiliate offers securities registered under the Securities Act of 1933 (<u>15 U.S.C. 77a et seq.</u>), the issuer or affiliate need not extend the offer to security holders in those states or jurisdictions that prohibit the offer or sale of the securities after the issuer or affiliate has made a good faith effort to register or qualify the offer and sale of securities in that state or jurisdiction, except that the issuer or affiliate must offer the same cash alternative to security holders in any such state or jurisdiction that it has offered to security holders in any other state or jurisdiction.

\***44** (B) <u>Exempt exchange offers.</u> If the issuer or affiliate offers securities exempt from registration under §230.802 of this chapter, the issuer or affiliate need not extend the offer to security holders in those states or jurisdictions that require

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.    Page 45
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

registration or qualification, except that the issuer or affiliate must offer the same cash alternative to security holders in any such state or jurisdiction that it has offered to security holders in any other state or jurisdiction.

(C) <u>Cash only consideration.</u> The issuer or affiliate may offer U.S. holders cash only consideration for the tender of the subject securities, notwithstanding the fact that the issuer or affiliate is offering security holders outside the United States a consideration that consists in whole or in part of securities of the issuer or affiliate, if the issuer or affiliate has a reasonable basis for believing that the amount of cash is substantially equivalent to the value of the consideration offered to non-U.S. holders, and either of the following conditions are satisfied:

(<u>1</u>) The offered security is a "margin security" within the meaning of Regulation T (<u>12 CFR 220.2</u>) and the issuer or affiliate undertakes to provide, upon the request of any U.S. holder or the Commission staff, the closing price and daily trading volume of the security on the principal trading market for the security as of the last trading day of each of the six months preceding the announcement of the offer and each of the trading days thereafter; or

(<u>2</u>) If the offered security is not a 'margin security' within the mening of Regulation T(<u>12 CFR 220.2</u>), the issuer or affiliate undertakes to provide, upon the request of any U.S. holder or the Commission staff, an opinion of an independent expert stating that the cash consideration offered to U.S. holders is substantially equivalent to the value of the consideration offered security holders outside the United States.

(D) <u>Disparate tax treatment.</u> If the issuer or affiiate offers 'loan notes' solely to offer sellers tax advantages not available in the United States and these notes are neither listed on any organized securities market nor registered under the Securities Act of 1933 (<u>15 U.S.C. 77a et seq.</u>), the loan notes need not be offered to U.S. holders.

(iii) <u>Informational documents.</u> (a) If the issuer or affiliate publishes or otherwise disseminates an informational document to the holders of the securities in connection with the issuer tender offer (including any exchange offer), the issuer or affiliate must furnish that informational document, including any amendments thereto, in English, to the Commission on Form CB (§249.480 of this chapter) by the first business day after publication or dissemination. If the issuer or affiliate is a foreign company, it must also file a Form F-X (§239.42 of this chapter) with the Commission at the same time as the submission of Form CB to appoint an agent for service in the United States.

**\*45** (B) The issuer or affiliate must disseminate any informational document to U.S. holders, including any amendments thereto, in English, on a comparable basis to that provided to security holders in the home jurisdiction.

(C) If the issuer or affiliate disseminates by publication in its home jurisdiction, the issuer or affiliate must publish the information in the United States in a manner reasonably calculated to inform U.S. holders of the offer.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.     Page 46
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

(iv) An investment company registered or required to be registered under the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.), other than a registered closed-end investment company, may not use this paragraph (h)(8); or

*****

(i) Cross-border tender offers (Tier II). Any issuer tender offer (including any exchange offer) that meets the conditions in paragraph (i)(1) of this section shall be entitled to the exemptive relief specified in paragraph (i)(2) of this section provided that such issuer tender offer complies with all the requirements of this section other than those for which an exemption has been specifically provided in paragraph (i)(2) of this section:

(1) Conditions. (i) The issuer is a foreign private issuer as defined in § 240.3b-4 and is not an investment company registered or required to be registered under the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.), other than a registered closed-end investment company; and

(ii) Except in the case of an issuer tender offer which is commenced during the pendency of a tender offer made by a third party in reliance on §240.14d-1(d), U.S. holders do not hold more than 40 percent of the class of securities sought in the offer (as determined under Instruction 2 to paragraphs (h)(8) and (i) of this section).

(2) Exemptions. The issuer tender offer shall comply with all requirements of this section other than the following:

(i) Equal treatment - loan notes. If the issuer or affiliate offers loan notes solely to offer sellers tax advantages not available in the United States and these notes are neither listed on any organized securities market nor registered under the Securities Act (15 U.S.C. 77a et seq.), the loan notes need not be offered to U.S. holders, notwithstanding paragraph (f)(8) and (h)(9) of this section.

(ii) Equal treatment - separate U.S. and foreign offers. Notwithstanding the provisions of paragraph (f)(8) of this section, an issuer or affiliate conducting an issuer tender offer meeting the conditions of paragraph (i)(1) of this section may separate the offer into two offers: one offer made only to U.S. holders and another offer made only to non-U.S. holders. The offer to U.S. holders must be made on terms at least as favorable as those offered any other holder of the same class of securities that is the subject of the tender offer.

(iii) Notice of extensions. Notice of extensions made in accordance with the requirements of the home jurisdiction law or practice will satisfy the requirements of §240.14e-1(d).

*46 (iv) Prompt payment. Payment made in accordance with the requirements of the home jurisdiction law or practice will satisfy the requirements of § 240.14e-1(c).

Instructions to paragraph (h)(8) and (i) of this section:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759, Release No. 33-7759, Release No. IS - 1208, 70 S.E.C.    Page 47
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

1. Home jurisdiction means both the jurisdiction of the issuer's incorporation, organization or chartering and the principal foreign market where the issuer's securities are listed or quoted.

2. U.S. holder means any security holder resident in the United States. To determine the percentage of outstanding securities held by U.S. holders:

i. Calculate the U.S. ownership as of 30 days before the commencement of the issuer tender offer;

ii. Include securities underlying American Depositary Shares convertible or exchangeable into the securities that are the subject of the tender offer when calculating the number of subject securities outstanding, as well as the number held by U.S. holders. Exclude from the calculations other types of securities that are convertible or exchangeable into the securities that are the subject of the tender offer, such as warrants, options and convertible securities. Exclude from those calculations securities held by persons who hold more than 10 percent of the subject securities;

iii. Use the method of calculating record ownership in §240.12g3-2(a), except that your inquiry as to the amount of securities represented by accounts of customers resident in the United States may be limited to brokers, dealers, banks and other nominees located in the United States, your jurisdiction of incorporation, and the jurisdiction that is the primary trading market for the subject securities, if different than your jurisdiction of incorporation;

iv. If, after reasonable inquiry, you are unable to obtain information about the amount of securities represented by accounts of customers resident in the United States, you may assume, for purposes of this definition, that the customers are residents of the jurisdiction in which the nominee has its principal place of business; and

v. Count securities as beneficially owned by residents of the United States as reported on reports of beneficial ownership that are provided to you or publicly filed and based on information otherwise provided to you.

3. United States. United States means the United States of America, its territories and possessions, any State of the United States, and the District of Columbia.

4. The exemptions provided by paragraphs (h)(8) and (i) of this section are not available for any securities transaction or series of transactions that technically complies with paragraph (h)(8) or (i) of this section but are part of a plan or scheme to evade the provisions of this section.

13. By amending §240.14d-1 to redesignate paragraphs (c), (d), (e), and (f) as paragraphs (e), (f), (g) and (h); to remove the reference to "§240.14d-1(c)" in newly redesignated paragraph (f) and add in its place "§240.14d-1(e); and to add new paragraphs (c) and (d) and Instructions thereto to read as follows:

§240.14d-1 Scope of and definitions applicable to Regulations 14D and 14E.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

\*\*\*\*\*

**\*47** (c) <u>Tier I</u>. Any tender offer for the securities of a foreign private issuer as
defined in §240.3b-4 is exempt from the requirements of Sections 14(d)(1) through
14(d)(7) of the Act (15 U.S.C. 78n(d)(1) through 78n(d)(7)), Regulation 14D
(§240.14d-1 through §240.14d-10) and Schedules TO (§240.14d-100) and 14D-9
(§240.14d-101) thereunder, and §240.14e-1 and §240.14e-2 of Regulation 14E under
the Act if the following conditions are satisfied:

(1) <u>U.S. ownership limitation</u>. Except in the case of a tender offer which is
commenced during the pendency of a tender offer made by a prior bidder in reliance
on this paragraph or §240.13e-4(h)(8), U.S. holders do not hold more than 10
percent of the class of securities sought in the offer (as determined under
Instruction 2 to paragraphs (c) and (d) of this section).

(2) <u>Equal treatment</u>. The bidder must permit U.S. holders to participate in the
offer on terms at least as favorable as those offered any other holder of the same
class of securities that is the subject of the tender offer; however:

(i) <u>Registered exchange offers</u>. If the bidder offers securities registered under
the Securities Act of 1933 (15 U.S.C. 77a et seq.), the bidder need not extend the
offer to security holders in those states or jurisdictions that prohibit the offer
or sale of the securities after the bidder has made a good faith effort to register
or qualify the offer and sale of securities in that state or jurisdiction, except
that the bidder must offer the same cash alternative to security holders in any
such state or jurisdiction that it has offered to security holders in any other
state or jurisdiction.

(ii) <u>Exempt exchange offers.</u> If the bidder offers securities exempt from
registration under §230.802 of this chapter, the bidder need not extend the offer
to security holders in those states or jurisdictions that require registration or
qualification, except that the bidder must offer the same cash alternative to
security holders in any such state or jurisdiction that it has offered to security
holders in any other state or jurisdiction.

(iii) <u>Cash only consideration</u>. The bidder may offer U.S. holders only a cash
consideration for the tender of the subject securities, notwithstanding the fact
that the bidder is offering security holders outside the United States a
consideration that consists in whole or in part of securities of the bidder, so
long as the bidder has a reasonable basis for believing that the amount of cash is
substantially equivalent to the value of the consideration offered to non-U.S.
holders, and either of the following conditions are satisfied:

(A) The offered security is a "margin security" within the meaning of Regulation T
(12 CFR 220.2) and the issuer undertakes to provide, upon the request of any U.S.
holder or the Commission staff, the closing price and daily trading volume of the
security on the principal trading market for the security as of the last trading
day of each of the six months preceding the announcement of the offer and each of
the trading days thereafter; or

**\*48** (B) If the offered security is not a "margin security" within the meaning of

Regulation T (12 CFR 220.2) the issuer undertakes to provide, upon the request of
any U.S. holder or the Commission staff, an opinion of an independent expert
stating that the cash consideration offered to U.S. holders is substantially
equivalent to the value of the consideration offered security holders outside the
United States.

(iv) Disparate tax treatment. If the bidder offers loan notes solely to offer
sellers tax advantages not available in the United States and these notes are
neither listed on any organized securities market nor registered under the
Securities Act of 1933 (15 U.S.C. 77a et seq.), the loan notes need not be offered
to U.S. holders.

(3) Informational documents. (i) The bidder must disseminate any informational
document to U.S. holders, including any amendments thereto, in English, on a
comparable basis to that provided to security holders in the home jurisdiction.

(ii) If the bidder disseminates by publication in its home jurisdiction, the bidder
must publish the information in the United States in a manner reasonably calculated
to inform U.S. holders of the offer.

(iii) In the case of tender offers for securities described in Section 14(d)(1) of
the Act (15 U.S.C. 78n(d)(1)), if the bidder publishes or otherwise disseminates an
informational document to the holders of the securities in connection with the
tender offer, the bidder must furnish that informational document, including any
amendments thereto, in English, to the Commission on Form CB (§249.480 of this
chapter) by the first business day after publication or dissemination. If the
bidder is a foreign company, it must also file a Form F-X (§239.42 of this chapter)
with the Commission at the same time as the submission of Form CB to appoint an
agent for service in the United States.

(4) Investment companies. The issuer of the securities that are the subject of the
tender offer is not an investment company registered or required to be registered
under the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.), other than a
registered closed-end investment company.

(d) Tier II. A person conducting a tender offer (including any exchange offer) that
meets the conditions in paragraph (d)(1) of this section shall be entitled to the
exemptive relief specified in paragraph (d)(2) of this section provided that such
tender offer complies with all the requirements of this section other than those
for which an exemption has been specifically provided in paragraph (d)(2) of this
section:

(1) Conditions. (i) The subject company is a foreign private issuer as defined in
§240.3b-4 and is not an investment company registered or required to be registered
under the Investment Company Act of 1940 (15 U.S.C. 80a-1 et seq.), other than a
registered closed-end investment company;

(ii) Except in the case of a tender offer which is commenced during the pendency of
a tender offer made by a prior bidder in reliance on this paragraph or §240.13e-
4(i), U.S. holders do not hold more than 40 percent of the class of securities
sought in the offer (as determined under Instruction 2 to paragraphs (c) and (d) of

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.                    Page 50
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

this section); and

**\*49** (iii) The bidder complies with all applicable U.S. tender offer laws and regulations, other than those for which an exemption has been provided for in paragraph (d)(2) of this section.

(2) Exemptions. (i) Equal treatment - loan notes. If the bidder offers loan notes solely to offer sellers tax advantages not available in the United States and these notes are neither listed on any organized securities market nor registered under the Securities Act of 1933 (15 U.S.C. 77a et seq.), the loan notes need not be offered to U.S. holders, notwithstanding §240.14d-10.

(ii) Equal treatment - separate U.S. and foreign offers. Notwithstanding the provisions of §240.14d-10, a bidder conducting a tender offer meeting the conditions of paragraph (d)(1) of this section may separate the offer into two offers: one offer made only to U.S. holders and another offer made only to non-U.S. holders. The offer to U.S. holders must be made on terms at least as favorable as those offered any other holder of the same class of securities that is the subject of the tender offers.

(iii) Notice of extensions. Notice of extensions made in accordance with the requirements of the home jurisdiction law or practice will satisfy the requirements of §240.14e-1(d).

(iv) Prompt payment. Payment made in accordance with the requirements of the home jurisdiction law or practice will satisfy the requirements of §240.14e-1(c).

(v) Subsequent offering period/Withdrawal rights. A bidder will satisfy the announcement and prompt payment requirements of §240.14d-11(d), if the bidder announces the results of the tender offer, including the approximate number of securities deposited to date, and pays for tendered securities in accordance with the requirements of the home jurisdiction law or practice and the subsequent offering period commences immediately following such announcement. Notwithstanding Section 14(d)(5) of the Act (15 U.S.C. 78n(d)(5)), the bidder need not extend withdrawal rights following the close of the offer and prior to the commencement of the subsequent offering period.

Instructions to paragraphs (c) and (d):

1. Home jurisdiction means both the jurisdiction of the subject company's incorporation, organization or chartering and the principal foreign market where the subject company's securities are listed or quoted.

2. U.S. holder means any security holder resident in the United States. Except as otherwise provided in Instruction 3 below, to determine the percentage of outstanding securities held by U.S. holders:

i. Calculate the U.S. ownership as of 30 days before the commencement of the tender offer;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ii. Include securities underlying American Depositary Shares convertible or exchangeable into the securities that are the subject of the tender offer when calculating the number of subject securities outstanding, as well as the number held by U.S. holders. Exclude from the calculations other types of securities that are convertible or exchangeable into the securities that are the subject of the tender offer, such as warrants, options and convertible securities. Exclude from those calculations securities held by persons who hold more than 10 percent of the subject securities, or that are held by the bidder;

**50 iii.** Use the method of calculating record ownership in Rule 12g3-2(a) under the Act (§ 240.12g3-2(a) of this chapter), except that your inquiry as to the amount of securities represented by accounts of customers resident in the United States may be limited to brokers, dealers, banks and other nominees located in the United States, the subject company's jurisdiction of incorporation or that of each participant in a business combination, and the jurisdiction that is the primary trading market for the subject securities, if different than the subject company's jurisdiction of incorporation;

iv. If, after reasonable inquiry, you are unable to obtain information about the amount of securities represented by accounts of customers resident in the United States, you may assume, for purposes of this definition, that the customers are residents of the jurisdiction in which the nominee has its principal place of business; and

v. Count securities as beneficially owned by residents of the United States as reported on reports of beneficial ownership that are provided to you or publicly filed and based on information otherwise provided to you.

3. In a tender offer by a bidder other than an affiliate of the issuer of the subject securities, the issuer of the subject securities will be presumed to be a foreign private issuer and U.S. holders will be presumed to hold 10 percent or less (40 percent or less in the case of 14d-1(d)) of such outstanding securities, unless:

i. The tender offer is made pursuant to an agreement with the issuer of the subject securities;

ii. The aggregate trading volume of the subject class of securities on all national securities exchanges in the United States, on the Nasdaq market, or on the OTC market, as reported to the NASD, over the 12-calendar-month period ending 30 days before commencement of the offer, exceeds 10 percent (40 percent in the case of 14d-1(d)) of the worldwide aggregate trading volume of that class of securities over the same period;

iii. The most recent annual report or annual information filed or submitted by the issuer with securities regulators of the home jurisdiction or with the Commission indicates that U.S. holders hold more than 10 percent (40 percent in the case of 14d-1(d)) of the outstanding subject class of securities; or

iv. The bidder knows or has reason to know that the level of U.S. ownership exceeds 10 percent (40 percent in the case of 14d-1(d)) of such securities.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.                    Page 52
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

4. <u>United States</u>. <u>United States</u> means the United States of America, its territories and possessions, any State of the United States, and the District of Columbia.

5. The exemptions provided by paragraphs (c) and (d) of this section are not available for any securities transaction or series of transactions that technically complies with paragraph (c) or (d) of this section but are part of a plan or scheme to evade the provisions of Regulations 14D or 14E.

*****

14. By amending §240.14d-9 by revising the introductory text of paragraph (d)(2) and adding paragraph (d)(2)(iii) to read as follows:

§240.14d-9 <u>Recommendation or solicitation by the subject company and others</u>.

*****
**51** (d) ***

*****

(2) Notwithstanding paragraph (d)(1) of this section, this section shall not apply to the following persons:

*****

(iii) Any person specified in paragraph (d)(1) of this section if:

(A) The subject company is the subject of a tender offer conducted under § 240.14d-1(c);

(B) Any person specified in paragraph (d)(1) of this section furnishes to the Commission on Form CB (§249.480 of this chapter) the entire informational document it publishes or otherwise disseminates to holders of the class of securities in connection with the tender offer no later than the next business day after publication or dissemination;

(C) Any person specified in paragraph (d)(1) of this section disseminates any informational document to U.S. holders, including any amendments thereto, in English, on a comparable basis to that provided to security holders in the issuer's home jurisdiction; and

(D) Any person specified in paragraph (d)(1) of this section disseminates by publication in its home jurisdiction, such person must publish the information in the United States in a manner reasonably calculated to inform U.S. security holders of the offer.

*****

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

15. By amending §240.14e-2 to add paragraph (d) to read as follows:

§240.14e-2 Position of subject company with respect to a tender offer.
*****

(d) Exemption for cross-border tender offers. The subject company shall be exempt
from this section with respect to a tender offer conducted under § 240.14d-1(c).

PART 249 - FORMS, SECURITIES EXCHANGE ACT OF 1934
16. The authority citation for Part 249 continues to read in part as follows:

Authority: 15 U.S.C. 78a, et seq., unless otherwise noted;

*****

17. By adding Subpart E, §249.480 and Form CB to read as follows:

Subpart E - Forms for Statements Made in Connection with Exempt Tender Offers

§249.480 Form CB, tender offer statement in connection with a tender offer for a
foreign private issuer.
This form is used to report an issuer tender offer conducted in compliance with
§240.13e-4(h)(8) of this chapter and a third-party tender offer conducted in
compliance with §240.14d-1(c) of this chapter. This report also is used by a
subject company pursuant to §240.14e-2(d) of this chapter.

[Note: Form CB does not appear in the Code of Federal Regulations. Form CB is
attached as Appendix A.]

PART 260 - GENERAL RULES AND REGULATIONS, TRUST INDENTURE ACT OF 1939
18. The authority citation for Part 260 continues to read as follows:

Authority: 15 U.S.C. 77eee, 77ggg, 77nnn, 77sss, 78ll(d), 80b-3, 80b-4, and 80b-11.

19. By adding §260.4d-10 to read as follows:

§260.4d-10 Exemption for securities issued pursuant to §230.802 of this chapter.

Any debt security, whether or not issued under an indenture, is exempt from the Act
if made in compliance with §230.802 of this chapter.

By the Commission.

Jonathan G. Katz
*52 Secretary

FN1. 15 U.S.C. 77a et seq.

FN2. 15 U.S.C. 77aaa et seq.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN3. 17 CFR 239.42 and 17 CFR 230.144.

FN4. 17 CFR 240.13e-3, 240.13e-4, 240.14d-1, 240.14d-9 and 240.14e-2.

FN5. 15 U.S.C. 78a et seq.

FN6. The portion of the text of new Rule 14e-5 (formerly Rule 10b-13) that is being adopted today is contained in a separate release that updates and simplifies the rules and regulations applicable to takeover transactions. See Regulation of Takeovers and Security Holder Communications, Securities Act Release No. 7760 (October 22, 1999) ("Regulation M-A Release").

FN7. 17 CFR 200.30-1 and 200.30-3.

FN8. As we noted in the proposing release, Cross-Border Tender Offers, Business Combinations and Rights Offerings, Securities Act Release No. 7611 (November 13, 1998) (63 FR 69136)(Section II.A.), because a large percentage of foreign companies have only a small number of U.S. security holders, it is quite common for bidders for the securities of those foreign companies to exclude U.S. holders. For example, based on a sample of 31 tender offers compiled in 1997 by the U.K. Takeover Panel (the entity that regulates tender offers in the United Kingdom), when the U.S. ownership of the target was less than 15% (30 offers), the bidders excluded U.S. persons in all of the offers. When the U.S. ownership was more significant, such as 38% (one offer), the bidders included U.S. persons. In the 30 offers that excluded U.S. persons, the ownership percentage was as follows: in 27 offers, U.S. persons held less than 5%; in the remaining three offers, U.S. persons held 7%, 8% and 10-15%, respectively.

FN9. 15 U.S.C. 78m(e) and 78n(d); 17 CFR 240.13e-3, 240.13e-4, 240.14d-1 to 240.14d-10, 240.14e-1 and 240.14e-2.

FN10. Rule 10b-13 was revised and redesignated as new Rule 14e-5 in the Regulation M-A Release, supra note 6.

FN11. 15 U.S.C. 78mm(a).

FN12. 15 U.S.C. 78d-1(b).

FN13. Information concerning the filing of exemptive relief applications can be found in Release No. 34-39624; Rule 0-12 under the Exchange Act [17 CFR 240.0-12].

FN14. See the proposing release, supra note 8. Similar exemptions were originally proposed in International Tender and Exchange Offers, Securities Act Release No. 6897 (June 5, 1991) [56 FR 27582] and Cross-Border Rights Offers, Securities Act Release No. 6896 (June 4, 1991) [56 FR 27564].

FN15. We received 19 letters of comment on the 1998 proposals. Those letters can be obtained for public inspection and copying by requesting File No. S7-29-98 through our public reference room in Washington D.C. Electronically submitted comments are

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

available on our Internet web site (http:/www.sec.gov).

FN16. Regulation M-A Release, _supra_ note 6.

FN17. 15 U.S.C. 80a-1 et seq.

FN18. _See_ Section II.F. _infra_ for a discussion of how U.S. ownership is determined.

FN19. _See_ the proposing release, _supra_ note 8, at note 15.

FN20. _See_ Instruction 4 to paragraphs (h)(8) and (i) to revised Rule 13e-4 and Instruction 5 to paragraphs (c) and (d) of revised Rule 14d-1.

FN21. The subject company, or any officer, director or other person who otherwise would have an obligation to file a Schedule 14D-9, may satisfy that obligation by submitting the recommendation to the Commission on Form CB.

FN22. Financial statements submitted under cover of new Form CB that comply with the accounting requirements of the filer's home jurisdiction need not be reconciled to U.S. generally accepted accounting principles, regardless of whether the Form CB is submitted in connection with a Tier I exempt offer or under new Rules 801 or 802.

FN23. 15 U.S.C. 78r.

FN24. _Cf._ Exchange Act Rule 14d-4(b) [17 CFR 240.14d-4(b)].

FN25. The fact that a foreign security trades in the United States in the form of an American Depositary Receipt (ADR), and the ADR depositary requires holders to provide it with instructions to tender into the offer a reasonable time before the close of the offer, or imposes fees in connection with the tender, would not contravene this condition.

FN26. Revised Rules 13e-4(h)(8)(ii)(C) and 14d-1(c)(2)(iii). The determination should be made at the commencement of the offer. The amount of cash consideration must be adjusted during the term of the offer only if the bidder no longer has a reasonable basis to believe the cash is substantially equivalent to the value of the securities offered to non-U.S. holders, for example, if the bidder increases the offer price.

FN27. [12 CFR 220.2]. The definition of a "margin security" in Regulation T, which is issued by the Board of Governors of the Federal Reserve System pursuant to the Exchange Act, includes "foreign margin stock." "Foreign margin stock" comprises both securities on the Federal Reserve Board's List of Foreign Margin Stocks and those deemed to have a "ready market" for net capital purposes under Rule 15c3-1 (17 CFR 240.15c3-1) under the Exchange Act. All stocks that appear on the Financial Times/Standard & Poor's World Actuaries Indices (FT/S&P Indices) are effectively treated as having a "ready market" for net capital purposes. _See Securities Credit Transactions; Borrowing by Brokers and Dealers, 63 FR 2806 (January 16, 1998) at II.B.2._

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN28. The opinion would address only the relative values of the cash and non-cash consideration offered to investors for the subject securities. The opinion would not need to address the fairness of either form of consideration in relation to the value of the subject securities.

FN29. We believe that securities that are "margin securities" under Regulation T would be sufficiently liquid so that a U.S. investor should be able to ascertain the market value of the offered securities.

FN30. See comment letter dated March 2, 1999, supra note 15.

FN31. See the staff no-action letters TABCORP Holdings Limited (Aug. 27, 1999), Durban Roodepoort Deep, Limited (Feb. 23, 1999), and AMP Limited (Sept. 17, 1998).

FN32. 15 U.S.C. 78m(d), 78m(g), and 78m(f).

FN33. Supra note 30.

FN34. Schedules 13E-4 and 14D-1, the schedules previously used for issuer and third-party tender offers, respectively, have been combined into new Schedule TO in the Regulation M-A Release, supra note 6.

FN35. Revised Rule 14d-2.

FN36. The text of new Rule 14d-11 is contained in the Regulation M-A Release, supra note 6.

FN37. Revised Rule 14d-1(d)(2)(v).

FN38. Revised Rules 13e-4(i)(2)(i), 13e-4(i)(2)(ii), 14d-1(d)(2)(i), and 14d-1(d)(2)(ii). A bidder may make one offer to U.S. holders and another only to non-U.S. holders if the offer to U.S. holders is made on terms at least as favorable as those offered any other holder of the same class of securities that is the subject of the tender offers. A bidder may also offer loan notes solely to non-U.S. holders.

The exception to the equal treatment condition of the Tier I exemption for cash only consideration adopted today would not apply to Tier II offers. The staff will continue to consider requests for that type of relief on a case-by-case basis. See Amendments to Tender Offer Rules: All-Holders and Best-Price, Exchange Act Release No. 23421 (July 7, 1986), [51 FR 25973] at Section III.B.3. Likewise, vendor placement arrangements will be considered on a case-by-case basis.

FN39. Revised Rules 13e-4(i)(2)(iii) and 14d-1(d)(2)(iii) (Notice of extensions may be made in accordance with the requirements of the home jurisdiction law or practice).

FN40. Revised Rules 13e-4(i)(2)(iv) and 14d-1(d)(2)(iv) (Payment made in accordance with the requirements of the home jurisdiction law or practice will satisfy the

prompt payment requirements of Rule 14e-1(c)).

FN41. The offeror would need to submit a written application requesting relief, along with a discussion of the basis for the request. If the request relates to an issuer tender offer, the request should be directed to the Office of Risk Management and Control in the Commission's Division of Market Regulation and the Office of Mergers and Acquisitions in the Commission's Division of Corporation Finance. If the request relates to a third party tender offer, the request should be directed to the Office of Mergers and Acquisitions.

The application must comply with the requirements of Rule 0-12 under the Exchange Act. When U.S. ownership is greater than 40 percent, the staff will consider relief on a case-by-case basis only when there is a direct conflict between the U.S. laws and practice and those of the home jurisdiction. Any relief would be limited to what is necessary to accommodate conflicts between the regulatory schemes and practices.

FN42. After a comprehensive review of Rule 10b-13, including its application in the context of offers for U.S. issuers, we revised Rule 10b-13 and redesignated it as new Rule 14e-5. The text of the new rule is found in the Regulation M-A Release, supra note 6.

FN43. The City Code on Takeovers and Mergers and the Rules Governing Substantial Acquisition of Shares (Fifth Edition, Dec. 12, 1996). The City Code states general principles for the regulation of takeovers conducted in the United Kingdom and the Republic of Ireland.

FN44. Excepted by either revised Rule 13e-4(h)(8) or revised Rule 14d-1(c).

FN45. Of course, broker-dealers that solicit tenders from U.S. persons would be required to register as broker-dealers under Section 15 of the Exchange Act (15 U.S.C. 78o), absent an available exemption.

FN46. As noted in the proposing release, this approach would comport with the Commission's action in a recent cross-border offer involving a U.K. target company with substantial U.S. ownership. See proposing release, supra note 8, at n. 92 and accompanying text.

FN47. Under the City Code, connected exempt market makers and connected exempt principal traders are market makers or principal traders that are affiliated with the bidder's advisors (Eligible Traders).

FN48. This exception is based on a limited class exemption under Rule 10b-13 to permit "connected exempt market makers" and "connected exempt principal traders" to continue their U.K. market making activities during a cross-border offer that is subject to the City Code. See Exemption under Rule 10b-13 for Certain Principal Trading and Market Making Activities dated June 29, 1998 (Eligible Trader Class Exemption). Without Rule 10b-13 relief, Eligible Traders would have been forced to withdraw from trading in U.K. target securities, with possible adverse consequences for the liquidity of those securities. This limited class exemption recognized the information barrier and other requirements contained in the City Code that Eligible

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Traders must satisfy to be exempt from the City Code's "acting in concert" provisions. This exemption required the Eligible Trader to comply with specified disclosure and recordkeeping requirements, and the Eligible Trader is prohibited from making purchases in the United States, which are consistent with conditions contained in other Rule 10b-13 exemptions granted in the cross-border context.

FN49. As we stated in the proposing release, the exemptions adopted today under new Rules 801 and 802 are non-exclusive. An issuer making an offering in reliance on either of the rules may claim any other available exemption under the Securities Act. Securities issued under new Rules 801 or 802 would not be integrated with any other exempt offerings by the issuer. General Notes 5-7 to new Rules 800, 801, and 802.

FN50. See General Note 2 to new Rules 800, 801, and 802.

FN51. Therefore, a foreign company could not, for example, conduct a rights offering under Rule 801 that is targeted at the U.S. holders. If the offeror does not have a bona fide expectation that non-U.S. holders would participate in the offering to a similar extent as U.S. holders, the pro rata nature of the offering would be a sham. Another example would be when an initial offer is commenced solely as a pretext for making a subsequent offer automatically eligible for the exemptions.

FN52. See note 8, supra.

FN53. Although comprehensive statistics on transactions that exclude U.S. investors is not available, a significant number of transactions with greater than 10 percent U.S. ownership are extended to U.S. holders. For example, U.S. holders owned more than ten percent of the subject class of securities in 31 of the 54 requests for exemptive relief received by the Commission between 1990 and 1998.

FN54. Between 1994 and 1998, 78 rights offerings were made to U.S. shareholders holding American or Global depositary receipts held by the Bank of New York. In 30 of the rights offerings (39%), U.S. shareholders were excluded entirely. In the remaining 48 offerings (61%), the Bank of New York sold the rights and provided shareholders with the cash, after costs. A significant number of these offerings had U.S. holders who held more than five percent of the securities at issue. See the letter from Emmet, Marvin & Martin, LLP dated February 17, 1999, supra note 15. Costs borne by U.S. shareholders in these cases include transaction fees, ADR cash distribution or issuance fees, and potential liquidity costs if the foreign market is small.

FN55. In this situation, the subsequent bidder commencing an exchange offer or business combination will be entitled to calculate the percentage of U.S. ownership 30 days before commencement of its offer. See Section II.F.1. infra. Assuming that the subsequent offer is commenced within 30 days of the announcement of the initial Tier I offer, the subsequent bidder would not be disadvantaged by any movement of securities into the United States following that announcement when calculating the percentage of U.S. ownership of the subject securities for purposes of eligibility under new Rule 802.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.    Page 59
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

FN56. See General Note 8 to new Rules 800-802. Under Securities Act Rule 144(d), the holding period for the restricted securities issued in the Rule 801 or 802 transaction will depend on the nature of the transaction. Investors in issuer exchange offers not involving an additional cash investment will be able to "tack" the holding period for the tendered restricted security to the holding period for the new security, and thus would calculate the holding period from the time it originally acquired the tendered security from the issuer or an affiliate. The holding periods for restricted securities received in a rights offering or third-party exchange offer, however, would begin with the issuance of those securities in the Rule 801 or 802 transaction.

FN57. See Section 2(a)(11) of the Securities Act, 15 U.S.C. 77b(11).

FN58. Under Rule 144(e)(1) [17 CFR 230.144(e)(1)], affiliates of the issuer are subject to volume restrictions on the resale of their securities.

FN59. New Rule 800(b).

FN60. 17 CFR 230.901 through 230.905.

FN61. Supra note 30.

FN62. See letter from Sullivan & Cromwell dated February 12, 1999, supra note 15 and the letter from the American Bar Association dated March 2, 1999, supra note 30.

FN63. Id.

FN64. See proposing release, supra note 8, at note 126 and accompanying text.

FN65. See id. at note 127 and accompanying text.

FN66. See id. at note 127.

FN67. See Offshore Offers and Sales, Securities Act Release No. 6863 (April 24, 1990) [55 FR 18306], at notes 151-53 and accompanying text.

FN68. As explained in the proposing release, both foreign and domestic issuers that are excepted from the definition of "investment company" under the Investment Company Act would be permitted to use these exemptions, so long as reliance on the exemptions is consistent with their unregistered status under the Investment Company Act. See proposing release, supra note 8, at notes 128-29 and accompanying text.

FN69. See supra note 67 and accompanying text. One commenter suggested generally that these exemptions be made available whenever the subject company is a foreign investment company. Because we have not received any requests for relief in connection with a tender offer for a foreign investment company, we have not expanded the Tier I or Tier II exemptions to cover subject companies that are foreign open-end investment companies.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.          Page 60
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

FN70. Exchange Act Rule 3b-4 [17 CFR 240.3b-4].

FN71. International Disclosure Standards, Exchange Act Release No. 41936 (September 28, 1999), 64 FR 53900.

FN72. 17 CFR 240.12g3-2(a).

FN73. For example, a German foreign private issuer traded solely on the Frankfurt Stock Exchange would have to query banks and broker-dealers that are either registered owners with the company or appear on participant lists of depositaries and that are based in Germany or the United States. The issuer would request information on the number of shares held by customer accounts that reflect a U.S. address for the customer.

FN74. Because it will be difficult for third-party offerors in an unsolicited or "hostile" tender offer to ascertain whether the exemption is available without information on the subject company's U.S. ownership, we are adopting the proposed presumption that the U.S. ownership percentage limitations are not exceeded based on the relative level of trading volume in the United States. See Section II.F.3. infra.

FN75. The revisions from the proposal do not affect the treatment of bearer securities in determining U.S. ownership. Since neither a U.S. residence nor the name of an offshore nominee will appear on the records of the issuer for the holder of the bearer securities, these securities will not be treated as being held by U.S. residents, unless the offeror knows or has reason to know that these securities are held by U.S. residents.

FN76. See note 55, supra.

FN77. 17 CFR 230.144.

FN78. Exemptions for transactions like issuer tender offers or rights offerings do not pose this problem. An issuer can and must examine its own records and those of transfer agents and depositaries acting on its behalf to obtain the necessary information regarding U.S. ownership of its own securities.

FN79. This concern is eliminated if the hostile bidder commences its offer after a prior competing tender offer or a business combination for securities of the same class subject to its offer and chooses to rely on the same exemption as the prior offeror because, as previously noted, the second bidder will be eligible to use the same exemption (Tier I, Tier II, or Rule 802) as the prior offeror, provided that all the conditions of the exemption, other than the limitation on U.S. ownership, are satisfied by the second bidder. A presumption remains necessary, however, when the hostile bidder either makes the initial offer or is the subsequent bidder but chooses to rely on a different exemption from that used by a prior offeror.

FN80. New Rule 802(c)(1) and Instruction 3.i. to revised Rules 14d-1(c) and (d) make the presumption inapplicable to offers "made pursuant to an agreement" with

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the issuer. The agreement need not be written.

FN81. <u>See</u> revised Rules 13e-4(h)(8) and Rule 14d-1(c).

FN82. <u>See</u> revised Rules 13e-4(i) and 14d-1(d).

FN83. If U.S. ownership of more than 10 percent is reported in public filings with the Commission or a foreign regulator, such as Schedule 13D or 13G, we would take the position that the bidder has reason to know the level of U.S. ownership exceeds 10 percent.

FN84. This includes Form 20-F and 6-K, which are available only to foreign private issuers.

FN85. <u>17 CFR 240.12g3-2(b)</u>.

FN86. For example, if a hostile bidder makes a tender offer in reliance on the Tier I exemption, the hostile bidder may rely on the presumption. If the hostile bid is then followed by a subsequent bid, whether by the issuer, an affiliate, or a hostile or friendly third-party bidder, the subsequent bidder also may use the Tier I exemption so long as the subsequent bidder satisfies all of the conditions of the Tier I exemption other than the ownership limitation condition. If, however, the subsequent bidder wishes to rely upon new Rule 802 to make an exchange offer or business combination, the subsequent bidder will have to satisfy the ownership limitation condition of Rule 802 as well as its other conditions even though both Rule 802 and the Tier I exemption each use a 10% ownership threshold. In this situation, if the subsequent bidder is a hostile bidder, it may use the presumption discussed above if all of the conditions of the presumption are satisfied to commence a Rule 802 offer in response to the initial Tier I or Tier II offer. Even if the above presumption is not available, the bidder may nevertheless rely on the Rule 802 exemption if it can demonstrate that U.S. ownership is in fact less than the relevant threshold. The bidder will be entitled to calculate the percentage of U.S. ownership 30 days before commencement of its exchange offer or commencement of the solicitation for the merger.

Another example would be where a third-party bidder in a negotiated transaction desires to make an exchange offer or business combination in reliance on the Section 802 exemption. The third party bidder would not be entitled to rely on the presumption because it is not a hostile party. If, after calculating the percentage of the issuer's securities held by U.S. holders, the friendly party commences an exchange offer or business combination in reliance on the Section 802 exemption, then a subsequent offeror also may rely on the Section 802 exemption so long as all of the conditions of such exemption, other than the ownership limitation condition, are satisfied.

FN87. The Internet materials would be filed or submitted with, or as an amendment to, the Schedule TO or the Form CB, when applicable.

FN88. <u>See</u> Section II.D.2. of the Regulation M-A Release, <u>supra</u> note 6.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN89. See Electronic Dissemination, Securities Act Release No. 7233 (Oct. 6, 1995) [60 FR 53458].

FN90. Statement of the Commission Regarding Use of Internet Web Sites to Offer Securities, Securities Act Release No. 7516 (March 23, 1998) [63 FR 14806].

FN91. Exchange offers for securities subject to Section 14(d) of the Exchange Act could not be made in the United States on a private offering basis, consistent with the all-holders provisions of Rule 14d-10.

FN92. See note 90 supra, at Section IV.A.2.

FN93. 15 U.S.C. 77d.

FN94. 17 CFR 230.501 through 17 CFR 230.508.

FN95. 44 U.S.C. 3501 et seq.

FN96. Of the 403 tender offers for foreign companies by foreign bidders recorded by Securities Data Corporation in 1998, Securities Data Corporation reports an average premium of over 42% for 215 transactions, measured from four weeks prior to the first bid. If the premium is measured from the price one day before the bid, the average premium drops to 38%.

For the period 1971 to 1991, the average historical merger premium was over 23% as reported in G.W. Schwert, "Markup Pricing in Mergers and Acquisitions," *Journal of Financial Economics,* 41 (1996). The premium is measured from four weeks prior to the first bid. Excluding this period, the premium remains over 10%.

FN97. Supra note 54.

FN98. See Section II.A.2. supra for a description of the Form CB. See note 99, infra, for information regarding the estimated burden associated with Form CB as compared to the current reporting requirements.

FN99. For purposes of the Paperwork Reduction Act, we estimate that Forms CB and F-X will impose an estimated burden of two hours per Form. This contrasts with Schedule TO which has an estimated burden of 586 hours per form, and Forms S-1, S-2, S-3, S-4, F-1, F-2, F-3 and F-4 which have an estimated burden of 1,239, 470, 397, 1,233, 1,868, 1,397, 166, and 1,308 hours per form, respectively.

FN100. We cannot quantify the cost savings that will result from not imposing the procedural requirements of the tender offer rules because we do not know how many companies will use the exemption or how much compliance with these particular aspects of the tender offer rules from which an exemption is granted would cost. Commenters did not provide us with any such data.

FN101. 15 U.S.C. 78w(a).

FN102. 15 U.S.C. 77b(b).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Release No. 7759,  Release No. 33-7759,  Release No. IS - 1208, 70 S.E.C.
Docket 2191, 1999 WL 969592 (S.E.C. Release No.)

FN103. 15 U.S.C. 78c(f).

FN104. Pub. L. No. 104-290, §106, 110 Stat. 3416 (1996).

FN105. 5 U.S.C. 553(d).

 Release No. 7759, Release No. 33-7759, Release No. IS - 1208, 70 S.E.C. Docket
2191, 1999 WL 969592 (S.E.C. Release No.)
END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



## U.S. Securities and Exchange Commission

**SEC Interpretation:**
**Commission Guidance on the Application of Certain Provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, and Rules thereunder to Trading in Security Futures Products**

**SECURITIES AND EXCHANGE COMMISSION**

**17 CFR Parts 231 and 241**

**[Release Nos. 33-8107; 34-46101; File No. S7-23-02]**

**Commission Guidance on the Application of Certain Provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, and Rules thereunder to Trading in Security Futures Products**

**Agency**: Securities and Exchange Commission

**Action**: Interpretation; request for comments

**Summary**: The Commission is publishing its views regarding the application of certain provisions of the federal securities laws to trading in security futures products. We also are soliciting comment.

**Dates**: <u>Effective Date:</u> The guidance is effective on June 27, 2002.

**Addresses:** Comments should be submitted in triplicate to Jonathan G. Katz, Secretary, Securities and Exchange Commission, 450 5th Street, NW, Washington, DC 20549-0609. Comments also may be submitted electronically at the following E-mail address: rule-comments@sec.gov. All comment letters should refer to File No. S7-23-02; this file number should be included on the subject line if E-mail is used. All comments received will be available for public inspection and copying in the Commission's Public Reference Room, 450 5th Street, NW, Washington, DC 20549-0102. Electronically submitted comment letters will be posted on the Commission's Internet site (http://www.sec.gov).[1]

**For Further Information Contact:** With respect to discussions concerning Securities Act and director, officer, and principal stockholder issues administered by the Division of Corporation Finance, contact Robert Plesnarski, Special Counsel (Securities Act Rule 144) or Anne Krauskopf, Special Counsel (rules under Exchange Act Section 16), (202) 942-2900, Office of Chief Counsel, Division of Corporation Finance, Securities and Exchange Commission, 450 Fifth Street, NW, Washington, DC 20549-0402.

With respect to discussions concerning mergers and acquisitions issues

administered by the Division of Corporation Finance, contact Pamela Carmody, Special Counsel, (202) 942-2920, Office of Mergers & Acquisitions, Division of Corporation Finance, Securities and Exchange Commission, 450 Fifth Street, NW, Washington, DC 20549-0303.

With respect to general questions about the interpretive positions expressed by the Division of Corporation Finance in this release, contact N. Sean Harrison, Special Counsel, (202) 942-2910, Office of Rulemaking, Division of Corporation Finance, Securities and Exchange Commission, 450 Fifth Street, NW, Washington, DC 20549-0310.

With respect to discussions concerning market supervision issues administered by the Division of Market Regulation contact Theodore Lazo, Senior Special Counsel, or Andrew Shipe, Special Counsel, (202) 942-0160, Office of Market Supervision, Division of Market Regulation, Securities and Exchange Commission, 450 Fifth Street, NW, Washington, DC 20549-1001.

With respect to discussions concerning trading practices issues administered by the Division of Market Regulation contact James Brigagliano, Assistant Director, Nancy Oremland, Special Counsel (Regulation M and Exchange Act Rule 14e-5), Kevin Campion, Special Counsel (Exchange Act Rule 14e-4), Joan Collopy, Special Counsel (Exchange Act Rule 10b-18), or Greg Dumark, Special Counsel (Exchange Act Rule 10a-1 and Rule 3b-3), (202) 942-0772, Office of Trading Practices, Division of Market Regulation, Securities and Exchange Commission, 450 Fifth Street, NW, Washington, DC 20549-1001.

With respect to discussions concerning other broker-dealer issues administered by the Division of Market Regulation contact Catherine McGuire, Chief Counsel, Paula Jenson, Deputy Chief Counsel, Kenneth Rosen, Special Counsel, or Christina McGlosson, Special Counsel, (202) 942-0073, Office of Chief Counsel, Division of Market Regulation, Securities and Exchange Commission, 450 Fifth Street, NW, Washington, DC 20549-1001.

**Supplementary Information**:

### I. Background

On December 21, 2000, Congress enacted the Commodity Futures Modernization Act of 2000 ("CFMA"),[2] addressing the regulation of security futures products.[3] Security futures products are securities for purposes of the federal securities laws, including the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"), and are "futures" for purposes of the Commodity Exchange Act ("CEA").[4] Because these products are both securities and futures, the CFMA established a framework for the joint regulation of these products by the Securities and Exchange Commission ("SEC" or "Commission") and the Commodity Futures Trading Commission ("CFTC").

In creating this framework, the CFMA exempted security futures products, as well as certain security futures products intermediaries and markets, from certain provisions of the Securities Act, the Exchange Act, and the CEA, and directed the Commission and the CFTC to coordinate in certain

aspects the regulation of dually regulated persons.[5] Accordingly, security futures products must be traded on trading facilities and through intermediaries that are registered with both the Commission and the CFTC. Given this new regulatory framework, various industry participants have requested guidance regarding the application of certain provisions of the federal securities laws to trading in security futures products.

Section II.A. below addresses some of the questions that may arise under certain statutory provisions and rules administered by the Commission's Division of Corporation Finance. Section II.B. addresses some of the questions that may arise under certain statutory provisions and rules administered by the Commission's Division of Market Regulation. Because security futures products are new products, the guidance provided is based on how we expect markets in these products to operate. As these markets develop and we learn more about their operations and security futures products themselves, we may need to revisit some of the guidance provided today or provide guidance on additional issues.[6]

## II. Discussion

### A. Guidance on Statutory Provisions and Rules Administered by the Division of Corporation Finance

1. Securities Act and Director, Officer, and Principal Stockholder Issues

a. Securities Act Registration and Exemptions from Registration: Securities Act Rule 144

Every offer or sale of a security in interstate commerce or by use of the mails must either be registered under the Securities Act or exempt from registration.[7] Securities Act Rule 144[8] provides a nonexclusive safe harbor for the unregistered resale of restricted[9] and other securities held by affiliates of an issuer, as well as for the unregistered resale of restricted securities by non-affiliates of the issuer. The Rule sets forth specific standards that, if met, permit persons who hold such securities to sell them publicly without being deemed to be "underwriters" under the Securities Act[10] and in reliance on the Securities Act Section 4(1) exemption from registration.[11]

The CFMA amended the Securities Act in the following manner:

- It amended Section 2(a)(1)[12] to include security futures products within the definition of "security."

- It added Section 3(a)(14)[13] to exempt the offer and sale of a security futures product from the registration requirements of Section 5 if the security futures product is: (1) traded on a national securities exchange or a national securities association registered under Section 15A(a) of the Exchange Act[14] and (2) cleared by a clearing agency that is either registered under Section 17A of the Exchange Act[15] or exempt from registration under Section 17A(b)(7) of the Exchange Act.[16]

- It amended Section 2(a)(3)[17] to ensure that security futures products could not be

used by an issuer, [18] its affiliates[19] or underwriters to circumvent the registration requirements of Section 5 with respect to the issuer's securities underlying the security futures product. As amended, Section 2(a)(3) provides "[a]ny offer or sale of a security futures product by or on behalf of the issuer of the securities underlying the security futures product, an affiliate of the issuer, or an underwriter, shall constitute a contract for sale of, sale of, offer for sale, or offer to sell the underlying securities." Accordingly, a transaction in a security futures product on a security of an issuer by such persons also is a transaction in the issuer's underlying security that must be registered unless an exemption from registration is available.[20]

**Q1:** May an affiliate of an issuer rely upon Rule 144 in connection with the offer or sale of securities of that issuer that occurs by virtue of the affiliate's offer or sale of a security future?

**A1:** Yes. Section 2(a)(3) provides that the offer or sale of the security future by the affiliate also is a concurrent offer or sale of the underlying securities. Accordingly, the concurrent offer or sale of the underlying securities would either have to be registered or satisfy the conditions of an exemption from registration. The affiliate may rely on Rule 144 to establish the availability of the Section 4(1) exemption.

**Q2:** May a person who is not an affiliate of the issuer rely upon Rule 144 in connection with the offer or sale of restricted securities of the issuer that occurs by virtue of the person's offer or sale of a security future?

**A2:** Yes. If the non-affiliate is an "underwriter" of the underlying securities, its offer or sale of the security future also is a concurrent offer or sale of the underlying securities. Accordingly, the concurrent offer or sale of the underlying securities would either have to be registered or satisfy the conditions of an exemption from registration. The non-affiliate seller of restricted securities must, therefore, establish that it is not an "underwriter" of the underlying securities. The non-affiliate seller may rely on Rule 144 to establish that it is not an "underwriter" of the securities.

**Q3:** In analyzing whether a seller of securities that are sold by virtue of the sale of a security future may rely on Rule 144 in connection with that sale, when should the sale of the underlying securities be deemed to have occurred?

**A3:** The transaction in the underlying securities is deemed to have occurred at the same time as the transaction in the related security future. Accordingly, in determining the ability to rely on Rule 144, a seller should assess that reliance at the time of the sale of the security future.[21]

**Q4:** How should a seller of a security future assess his or her reliance on Rule 144 in connection with the offer or sale of the securities underlying that security future?

**A4:** The seller should analyze the transaction for purposes of Rule 144 as if

it were a transaction in the underlying securities themselves.

**Q5:** May a non-affiliate settle a security future transaction with restricted securities?

**A5:** A non-affiliate may settle a security future transaction with restricted securities only if it could rely upon Rule 144 to offer and sell the underlying restricted securities at the time it offered and sold the security future.

**Q6:** What information should be provided in the Form 144 filed for securities of the issuer that underlie a security future?

**A6:** The Form 144 should be completed to cover the sale of underlying securities. Persons filing the Form 144 should make reference to the security future in the "Remarks" section. For example, disclosure could read: "This Form 144 reflects the intended deemed sale of 10,000 shares of ABC issuer's securities that underlie [describe security future's material terms]."

<u>b. Disclosure Requirements and Short Swing Profit Recovery: Exchange Act Section 16</u>

The CFMA amended Section 16 of the Exchange Act so that it covers ownership of, and transactions in, security futures products.[22] Section 16 applies to every person who is the beneficial owner of more than 10% of any class of equity security registered under Section 12 of the Exchange Act, and each officer and director (collectively "insiders") of the issuer of such security. Generally:

- Section 16(a) requires an insider to file an initial report with the Commission disclosing his or her beneficial ownership of all equity securities of the issuer upon becoming an insider. To keep this information current, Section 16(a) also requires insiders to report changes in such holdings with respect to each month in which such a change occurs.[23]

- Section 16(b) provides the issuer (or shareholders suing on behalf of the issuer) a private right of action to recover from an insider any profit realized by the insider from any purchase and sale (or sale and purchase) of any equity security of the issuer within any period of less than six months.[24]

- Section 16(c) makes it unlawful for an insider to sell any equity security of the issuer if the insider: (1) does not own the security sold; or (2) owns the security, but does not deliver it against the sale within specified time periods.[25]

The following responses address how Section 16 would apply to security futures in some common situations.[26]

**Q7:** Section 16 applies to every person who is directly or indirectly the beneficial owner of more than ten percent of any class of equity security (other than an exempted security) registered under Section 12 of the

Exchange Act.[27] Exchange Act Rule 16a-1(a)(1)[28] provides that for purposes of determining whether a person is a "beneficial owner" of more than ten percent of any class of equity securities, the term "beneficial owner" shall mean any person who is deemed a "beneficial owner" pursuant to Section 13(d) of the Exchange Act and the rules thereunder.[29] Would the equity securities underlying a security future be counted for purposes of determining whether the purchaser of the security future is a "beneficial owner" of more than ten percent of a class of equity security?

**A7:** Yes. A person is deemed to be the beneficial owner of the equity securities underlying a security future that requires physical settlement[30] of the long security future if the security future is held within 60 days of the last trading day of the security future.[31] However, the purchaser of a cash-settled security future (i.e., a security future that, by its terms, must be settled by a cash payment) is not deemed to beneficially own the securities underlying that security future for purposes of determining whether the purchaser is a "beneficial owner" of more than ten percent of the underlying class of equity security, because he or she does not have the right to acquire beneficial ownership of the underlying security.[32]

**Q8:** Is a security future on an equity security or a narrow-based security index[33] a "derivative security" under the Section 16 rules?

**A8:** Yes. Exchange Act Rule 16a-1(c)[34] generally defines the term "derivative securities" as "any option, warrant, convertible security, stock appreciation right or similar right with an exercise or conversion privilege at a price related to an equity security, or similar securities with a value derived from the value of an equity security," subject to specific exclusions. A security future on an equity security or a narrow-based security index would be a "similar security with a value derived from the value of an equity security" and thus a "derivative security" within the meaning of Rule 16a-1(c), regardless of whether the security future calls for physical or cash settlement.

**Q9:** Exchange Act Rule 16a-1(b)[35] defines a "call equivalent position" as a derivative security position that increases in value as the value of the underlying equity security increases, including, but not limited to, a long convertible security, a long call option, or a short put option position. Is the purchase of a security future by an insider, or a long security future position, a "call equivalent position?"

**A9:** Yes. Because the purchaser of a security future, regardless of whether the security future calls for cash or physical settlement, would benefit from an increase in value of the underlying equity security, the purchase of a security future establishes a call equivalent position.

**Q10:** Exchange Act Rule 16a-1(h)[36] defines a "put equivalent position" as a derivative security position that increases in value as the value of the underlying equity security decreases, including, but not limited to, a long put option or a short call option position. Is the sale of a security future by an insider, or a short security future position, a put equivalent position?

**A10:** Yes. Because the seller of a security future, regardless of whether the security future calls for cash or physical settlement, would benefit from a

decrease in value in the underlying equity security, the sale of a security future establishes a put equivalent position.

**Q11:** Exchange Act Rule 16b-6(a)[37] states that the establishment of, or increase, in a call equivalent position, or liquidation of, or decrease, in a put equivalent position shall be deemed a purchase of the underlying security for purposes of Section 16(b). Conversely, Rule 16b-6(a) states that the establishment of, or increase, in a put equivalent position, or liquidation of, or decrease, in a call equivalent position shall be deemed a sale of the underlying securities for purposes of Section 16(b). How would purchases and sales of security futures be subject to matching for Section 16(b) short-swing profit recovery purposes?

**A11:** The purchase of a security future ("call equivalent position") would be matchable with any of the following transactions within any period of less than six months:

- any disposition of the equity security underlying the security future;

- any liquidation or decrease in a "call equivalent position" on the same class of equity security underlying the security future; or

- any establishment or increase of a "put equivalent position" on the same class of equity security underlying the security future.

The sale of a security future ("put equivalent position") would be matchable with any of the following transactions within any period of less than six months:

- any acquisition of the equity security underlying the security future;

- any liquidation or decrease in a "put equivalent position" on the same class of equity security underlying the security future; or

- any establishment or increase of a "call equivalent position" on the same class of equity security underlying the security future.

Examples. For purposes of the following four examples, assume that the common stock of Company XYZ is registered under Section 12 of the Exchange Act.

Example 1: On January 3, 2003, W, an officer of Company XYZ, purchases 10,000 shares of XYZ common stock. On September 3, 2003, W purchases 100 December delivery security futures on XYZ common stock. Each security future is on 100 shares of XYZ common stock. This purchase establishes a "call equivalent position" with respect to 10,000 shares of XYZ common stock. On November 3, 2003, W sells 10,000 shares of XYZ common stock. Interpretation: W's September purchase of the security futures would be matchable with W's November sale of the XYZ shares. Exchange Act Rule 16b-6(c)(2)[38] would apply to the determination of recoverable profits.

Example 2: On January 3, 2003, W purchases 100 September delivery

security futures on XYZ common stock. On April 3, 2003, W sells call options on 5,000 shares of XYZ common stock. Interpretation: W's January purchase of the security futures established a "call equivalent position" with respect to 10,000 shares of XYZ common stock. W's subsequent sale of the call options established a "put equivalent position" with respect to 5,000 shares of XYZ common stock and is matchable with his purchase of 50 of the September delivery security futures.

Example 3: For purposes of this example, assume that W owns 10,000 shares of XYZ common stock. On January 3, 2003, W sells 100 June delivery security futures on XYZ common stock. On April 3, 2003, W sells put options overlying 10,000 shares of XYZ common stock. Interpretation: W's January sale of the security futures established a "put equivalent position" with respect to 10,000 shares of XYZ common stock. W's subsequent sale of the put options established a "call equivalent position" (W is obligated to purchase the XYZ shares underlying the put options if the holder of the options exercises them) and is matchable with his January sale of the security futures.

Example 4: On January 3, 2003, W purchases 100 September delivery security futures on XYZ common stock. On February 10, 2003, W purchases 10,000 shares of XYZ common stock. On September 5, 2003, W sells 100 September delivery security futures on XYZ common stock, to offset[39] the security futures purchased in January. Interpretation: Because W's sale of the security futures occurred more than six months after both his January purchase of the security futures and his February purchase of the XYZ common stock, the offsetting sale would not be matchable with either purchase. However, the offsetting sale would be matchable with W's purchase of the XYZ shares in February, if it occurred within six months of the February purchase, and it would be matchable with either the January or February purchase (depending upon which transaction had the lowest purchase price) if it occurred within six months of the January purchase. [40]

**Q12:** Exchange Act Rule 16b-6(b) exempts from Section 16(b) the closing of a derivative security position as a result of its exercise or conversion, and the acquisition of underlying securities at a fixed exercise price due to the exercise or conversion of a call equivalent position, or the disposition of underlying securities at a fixed exercise price due to the exercise of a put equivalent position.[41] The Rule further provides, however, that the acquisition of underlying securities from the exercise of an out-of-the-money[42] option, warrant or right shall not be exempt.

(a) Would the settlement of a security future through delivery or receipt of the underlying equity security be exempted by Rule 16b-6(b)?

(b) Would cash settlement of a security future be exempted by Rule 16b-6(b)?

**A12:** (a) The disposition of a security future and delivery or receipt of the underlying security upon settlement would be exempted by Rule 16b-6(b). The provision in Rule 16b-6(b) that excludes from the exemption the exercise of out-of-the-money options would not apply. Unlike certain option contracts, where the holder of the option can choose whether or not and (in the case of American style options) when to exercise the option, a security

future creates an obligation either to purchase or sell the underlying securities at a specified future date. Accordingly, the physical settlement of a security future is more similar to a conversion for purposes of Rule 16b-6(b). An out-of-the-money conversion that otherwise complies with Rule 16b-6(b) is exempt under that Rule.

(b) For purposes of Section 16, cash settlement of a security future, like the cash settlement of any other derivative security, involves the deemed sale of the underlying securities in addition to the transactions described in (a) above that take place upon physical settlement.[43] Where an insider holds a long security future position, cash settlement would involve the insider's deemed sale of the underlying securities back to the counterparty. Where an insider holds a short security future position, cash settlement would involve the insider's deemed repurchase of the underlying securities from the counterparty. Rule 16b-6(b) exempts only the transactions described in (a) above, and does not exempt either of these additional transactions.

**Q13:** Generally, persons subject to the reporting requirements of Section 16 must file a report on Form 4 within ten days after the close of any month in which a change in beneficial ownership has occurred in the equity securities of the subject issuer. Unlike most transactions exempt from Section 16(b), which are eligible for deferred reporting on Form 5, exercises and conversions of derivative securities that are exempt from Section 16(b) must be reported on Form 4.[44] General Instruction 8 of Form 4 specifies transaction codes that should be used to identify the type of transaction being reported. What codes should be used to identify insiders' transactions in security futures?

**A13:** Transactions in security futures should be reported as follows:

- Purchase of a security future should be identified in Table II, column 4 of the form with transaction code "P."

- Sale of a security future should be identified in Table II, column 4 of the form with transaction code "S."

- Physical settlement of a long security future should be identified in Table I, column 3 and Table II, column 4 with transaction code "C."

- Physical settlement of a short security future should be identified in Table I, column 3 and Table II, column 4 with transaction code "C."

- Cash settlement of a long security future should be identified in Table I, column 3 and Table II, column 4 with transaction code "C," and with transaction code "S" on a separate line in Table I, column 3 (to report the deemed sale of the underlying securities).

- Cash settlement of a short security future should be identified in Table I, column 3 and Table II, column 4 with the transaction code "C," and with transaction code "P" on a separate line in Table I, column 4 (to report the deemed repurchase of the underlying security).

**Q14:** Exchange Act Rule 16c-4 provides that establishing or increasing a put equivalent position is exempt from Section 16(c) so long as the amount of securities underlying the put equivalent position does not exceed the amount of underlying securities otherwise owned by the insider. How would Rule 16c-4 apply to an insider's sale of a security future?

**A14:** For the duration of the insider's put equivalent position pursuant to the security future, an insider who sells a security future must otherwise own an amount of the underlying securities sufficient to cover his or her delivery obligations under the security future. In computing the amount of underlying securities otherwise owned, an insider may include securities of the same class as the underlying securities on deposit in a margin account.

Example: The common stock of Company XYZ is registered under Section 12 of the Exchange Act. On May 5, 2003, S, an officer of Company XYZ, owns 10,000 shares of XYZ common stock. On May 5, 2003, S sells 100 December delivery security futures on XYZ common stock. This sale establishes a "put equivalent position" with respect to 10,000 shares of XYZ common stock (each security future is on 100 shares of Company XYZ common stock). S deposits 2,000 shares of Company XYZ common stock as margin on the security futures. Interpretation: Including the 2,000 shares of XYZ common stock S deposited for margin, S otherwise owns a sufficient amount of XYZ shares to cover his obligation to deliver 10,000 XYZ shares upon settlement of the security futures within the meaning of Rule 16c-4. S must continue to otherwise own 10,000 shares of XYZ common stock for the duration of the put equivalent position with respect to the 100 December delivery security futures.

**Q15:** Are the securities underlying a long security future that calls for physical settlement considered "otherwise owned" for purposes of Rule 16c-4?

**A15:** An insider who is long a security future does not "otherwise own" the securities underlying the security future until he or she is obligated to accept delivery under the security future (i.e., if the security future is not offset prior to the close of trading for that security future on the last trading day). Once an insider is obligated to accept delivery, he or she may include the securities underlying the security future in computing the amount of underlying securities "otherwise owned." An insider who is long a cash-settled security future does not "otherwise own" the underlying securities.

Example: The common stock of Company XYZ is registered under Section 12 of the Exchange Act. S, an officer of Company XYZ, does not own any shares of XYZ common stock. On May 5, 2003, S purchases 10 December delivery security futures on XYZ common stock. Each security future is on 100 shares of XYZ common stock. The last trading day of the December delivery security futures is the third Friday in December (December 19, 2003). S wishes to buy put options on 1000 shares of XYZ common stock on or after December 19, 2003. Interpretation: S becomes obligated to accept delivery of the 1000 XYZ common shares underlying the 10 December delivery security futures after the close of trading on December 19, 2003. Accordingly, as of the close of trading on December 19, 2003, S is deemed to otherwise own those 1000 XYZ common shares for purposes of Rule 16c-4. Therefore, S's purchase of put options on 1000 shares of XYZ common stock after the close of trading on December 19, 2003, would

be exempt from Section 16(c) pursuant to Rule 16c-4.

2. Mergers and Acquisitions Issues

<u>Beneficial Ownership Disclosure Requirements: Exchange Act Regulation 13D[45]</u>

Rule 13d-1 of the Exchange Act[46] requires any person who becomes a beneficial owner of more than five percent of a class of equity security[47] to file a statement containing the information required by either Schedule 13D or Schedule 13G.[48] Under Exchange Act Rule 13d-3(a),[49] a person is deemed to be the beneficial owner of a security, for purposes of Sections 13(d) and 13(g) of the Exchange Act,[50] if that person has or shares voting and/or investment power with respect to the security. The Rule deems a person to be the beneficial owner of a security if that person has the right to acquire beneficial ownership of the security within 60 days, including, but not limited to, a right to acquire it through exercise of an option, warrant, right or through the conversion of another security.[51] Any person who acquires the right to acquire a security in this manner with the purpose or effect of changing or influencing control of the issuer of the security is immediately deemed to be the beneficial owner of the security upon acquisition of the right to acquire the security, regardless of when the right is exercisable.[52]

**Q16:** Is a security future an "equity security" that is reportable under Regulation 13D?

**A16:** No. Security futures are not covered by the Rule 13d-1(i) definition of "equity security"[53] because they are exempt from registration under Section 12 of the Exchange Act.[54]

**Q17:** Would the equity securities underlying a security future that requires physical settlement of the security future be counted for purposes of determining whether the purchaser of the security future is subject to the Regulation 13D beneficial ownership reporting requirements?

**A17:** Yes, but only during the period when there are 60 or fewer days before the last trading day, or immediately upon purchase of the security future if it was acquired for the purpose of changing or influencing control of the issuer of the underlying securities.[55]

<u>Example 1:</u> On June 3, 2002, W purchases 100 security futures for December delivery. Each security future calls for physical delivery of 100 shares of Company XYZ common stock. The last trading day of the December delivery contracts is December 20, 2002. Before his acquisition of the security futures, W was not required to file a beneficial ownership report on either Schedule 13D or 13G. Interpretation: On the purchase date, June 3, 2002, W does not have to count the shares of Company XYZ common stock underlying the security futures contracts for purposes of determining beneficial ownership under Rule 13d-3 because this date is more than 60 days from the last trading day of the security futures.[56] If W has not offset the security futures on or before October 21, 2002, W would count the shares of XYZ common stock underlying the security futures for

purposes of determining whether he is subject to the Regulation 13D
beneficial ownership reporting requirements.

Example 2: Same facts as in Example 1 above, except W purchases the
December delivery security futures (with the last trading day of December
20, 2002) on Company XYZ common stock on October 23, 2002. The
amount of Company XYZ common stock beneficially owned by W before his
purchase of the security futures, combined with the shares of Company XYZ
common stock underlying the contracts, brings W above the five percent
beneficial ownership threshold. Interpretation: W must file a Schedule 13D
or 13G within 10 days after his purchase of the security futures.[57]

**Q18:** Would the equity securities underlying a security future that requires
cash settlement be counted for purposes of determining whether the
purchaser of the contract is subject to the Regulation 13D beneficial
ownership reporting requirements?

**A18:** No. A purchaser of a cash-settled security future (i.e., a security
future that, by its terms, must be settled by a cash payment) would not
count the equity securities underlying the contract for purposes of
determining whether he or she is subject to the Regulation 13D reporting
requirements, because he or she does not have the right to acquire
beneficial ownership of the underlying security.

**Q19:** If the equity securities underlying a security future that requires
physical settlement are counted for purposes of determining beneficial
ownership under Regulation 13D, would the securities underlying a security
future that is purchased to liquidate or offset an existing security future
position be counted for purposes of determining beneficial ownership?

**A19:** No, but only to the extent that the offsetting purchase does not
establish a new security future position. If a purchaser buys a security
future to offset an outstanding short position, the purchaser has no
obligation to accept delivery of the securities underlying the long security
future.[58]

**Q20:** Other than for purposes of determining beneficial ownership, how
does the purchase or sale of a security future affect Schedule 13D
disclosure?

**A20:** As with other derivative contracts overlying an "equity security" under
Rule 13d-1(i), a purchaser or seller of a security future who is subject to
Schedule 13D reporting requirements with respect to the underlying
security may have to amend Schedule 13D to disclose his or her
transactions in security futures on securities of a class of equity security
beneficially owned by such person, whether settled by physical delivery or
in cash. For example, the purchase or sale of a security future may
represent a change in the source of funds under Item 3 of Schedule 13D, a
possible shift in purpose under Item 4 (particularly to the extent that the
transaction is part of a plan or proposal to dispose of Company XYZ
securities that W did not disclose previously), or a "transaction" in the
subject security under Item 5. Furthermore, the security future would be a
"contract, agreement, understanding, or relationship ... with respect to ...
securities of the issuer" under Item 6. A Schedule 13G filer would disclose

transactions in security futures in accordance with Regulation 13D and the item requirements of Schedule 13G.

**B. Guidance on Statutory Provisions and Rules Administered by the Division of Market Regulation**

1. Market Supervision Issues

<u>The Duty of Best Execution</u>

Broker-dealers have long been subject to a duty of best execution when effecting securities transactions for customers. This duty derives from common law agency principles and fiduciary obligations, and has been incorporated in self-regulatory organization rules and, through judicial and Commission decisions, in the enforcement of the antifraud provisions of the federal securities laws. Questions have arisen as to the applicability of this duty to security futures products.

**Q21:** Does the duty of best execution apply to security futures products?

**A21:** Yes. The duty of best execution requires a broker-dealer "to seek the most favorable terms reasonably available under the circumstances for a customer's transaction."[59] The duty of best execution is not limited by the type of transaction or security involved and applies equally to security futures products.

**Q22:** Are broker-dealers expected to comply with the duty of best execution in the absence of national market system mechanisms for security futures products?

**A22:** Yes. While the national market system mechanisms adopted under the Exchange Act were designed in part "to assure . . . the practicability of brokers executing investors' orders in the best market,"[60] the duty of best execution predates the national market system provisions of the federal securities laws. Accordingly, the Commission has never considered the duty of best execution to be contingent on the existence of such mechanisms.[61] Best execution obligations, for example, also apply to securities for which national market system plans do not exist, such as government securities and corporate debt.[62]

**Q23:** Are broker-dealers expected to comply with the duty of best execution with respect to instruments that may not be standardized or fungible across markets?

**A23:** As noted above, the duty of best execution requires a broker-dealer to seek the most favorable terms reasonably available under the circumstances for a customer's transaction. In the absence of specific instructions from a customer, a broker-dealer has an obligation to use reasonable efforts to execute customer orders in the market that maximizes the economic benefit to the customer.[63] The Commission recognizes that it would be difficult to apply these principles to contracts that are materially different as to their terms. If the customer has specified the market or contract in which to trade, the broker-dealer must seek to

achieve the best possible execution within that market. If the customer has not specified the market or contract, the Commission reminds broker-dealers that, even with respect to contracts that are materially different, they should consider the applicability of other agency or fiduciary duties, including suitability.

2. Trading Practices Issues[64]

a. Short Sale Regulation: Exchange Act Rules 10a-1 and 3b-3

A short sale is the sale of a security that the seller does not own or that the seller owns but does not deliver. The Commission has plenary authority to regulate short sales of securities registered on a national securities exchange (listed securities) as necessary to protect investors under Section 10(a) of the Exchange Act.[65] The Commission adopted Exchange Act Rule 10a-1[66] to restrict short selling in a declining market.[67] Specifically, Rule 10a-1(a)(1) provides that, subject to certain exceptions, a listed security may be sold short: (i) at a price above the price at which the immediately preceding sale was effected (plus tick), or (ii) at the last sale price if it is higher than the last different price (zero-plus tick). Conversely, short sales are not permitted on minus ticks or zero-minus ticks, subject to narrow exceptions. The operation of these provisions constitute what is commonly described as the "tick test."

Exchange Act Rule 3b-3 defines the term "short sale" as any sale of a security that the seller does not own or any sale that is consummated by the delivery of a security borrowed by, or for the account of, the seller. Rule 3b-3 also defines specific instances when a person shall be deemed to own a security, i.e., a long position.

**Q24:** Will sales of security futures be subject to Rule 10a-1?

**A24:** No. In authorizing the trading of futures contracts involving single stocks and narrow-based security indices, Congress exempted security futures products from the operation of Section 10(a)(1) of the Exchange Act under which Rule 10a-1 is adopted.[68]

**Q25:** Does a security future convey ownership under Rule 3b-3 for the purposes of short sale regulation?

**A25:** A person who holds a security future obligating him to take delivery of the underlying securities by physical settlement would not be considered long these securities for the purposes of Rule 3b-3 until the security future terminates trading.[69] This interpretation is consistent with the way Rule 3b-3 addresses several instances where a person owns a security that entitles a person to acquire securities underlying the instrument, e.g., options, rights, warrants, and convertibles. In those instances, Rule 3b-3 requires the option, right, warrant, or convertible to be exercised, tendered, or converted before the person can be considered as having a long position in the underlying security. These provisions also implicitly contemplate that the person will shortly acquire the security being sold. For a physically-settled security future, the holder will obtain the underlying security only after the security future terminates trading. A security future settled by receipt of cash has no effect on a person's long position.

### b. Safe Harbor for Issuer Repurchases: Exchange Act Rule 10b-18

Exchange Act Rule 10b-18[70] provides a non-exclusive "safe harbor" from liability for manipulation under Sections 9(a)(2) and 10(b) of the Exchange Act, and Rule 10b-5 under the Exchange Act, when an issuer or its affiliated purchaser bids for or purchases shares of the issuer's common stock in accordance with the Rule's manner, timing, price, and volume conditions. Because Rule 10b-18 is a voluntary safe harbor, an issuer is not required to comply with the provisions of the Rule when making market purchases, and no adverse inference about manipulation may be drawn if an issuer's purchases do not satisfy the Rule's conditions or are not covered by the Rule. Rule 10b-18's conditions are designed to limit the market impact of the issuer's repurchase activity. In so doing, Rule 10b-18 provides a measure of assurance to investors that a security's market price is based on independent market forces and not influenced in a manipulative manner by the issuer.

**Q26:** Is the Rule 10b-18 safe harbor available for issuer repurchase transactions involving security futures (including the receipt of securities underlying such futures)?

**A26:** No. Rule 10b-18 only applies to what is defined as a "Rule 10b-18 purchase."[71] A Rule 10b-18 purchase encompasses only purchases by an issuer or its affiliate of its common stock. It does not apply to any other type of security - even if related to the common stock (e.g., transactions in derivative securities such as warrants, options, or security futures that are physically-settled).[72] Thus, consistent with the treatment of options under Rule 10b-18, we view the term "Rule 10b-18 purchase" as not including issuer repurchase transactions involving security futures (including the receipt of securities underlying such futures).

### c. The Short Tender Rule: Exchange Act Rule 14e-4

Exchange Act Rule 14e-4,[73] commonly referred to as the "short tender rule," is generally designed to preclude persons from tendering more shares than they own in order to avoid or reduce the risk of pro rata acceptance in a partial tender offer. A person may tender shares into a partial tender offer only if both at the time of tender and at the end of the proration period the person has a "net long position" in the subject security or an equivalent security equal to or greater than the amount tendered into the partial tender offer. Under Rule 14e-4, a person's "net long position" in a subject security equals the excess, if any, of such person's "long position" over a person's "short position." The calculation of the net long position must be done both at the time of tender and at the end of the proration period, or period during which securities are accepted by lot, including any extension thereof.

**Q27:** How should a security future be considered in calculating a person's long position for the purposes of Rule 14e-4 when the underlying security is the subject of a partial tender offer?

**A27:** A person who holds a security future obligating him to take delivery of a subject security by physical settlement will be considered to be long the subject security for the purposes of Rule 14e-4 only after the security

future terminates trading.[74] This interpretation is consistent with the treatment of standardized options positions in Rule 14e-4. The owner of a standardized option in a subject security is not considered to be long the underlying security under Rule 14e-4 for tendering purposes until the standardized option is exercised. A security future settled by receipt of cash has no effect on the shareholder's long position.

**Q28:** How should a security future be considered in calculating a person's short position for the purposes of Rule 14e-4 when the underlying security is the subject of a partial tender offer?

**A28:** In order to prevent hedged tendering and over-tendering, Rule 14e-4 requires a person tendering into a partial tender offer to include in the calculation of his or her short position the amount of subject securities such person is obligated to deliver pursuant to a security future that was entered into on or after the date that a tender offer is first publicly announced or otherwise made known by the bidder to the holders of the security to be acquired, if the security future terminates trading at or before the end of the proration period. If one or more tender offers for the same security are ongoing on such date, the announcement date shall be that of the first announced offer. This requires inclusion of the amount of such subject securities in the person's short position, regardless of the price of the security future relative to the price of the subject security underlying the security future, because (in contrast to an option, discussed below) the security future requires the person to deliver the securities upon maturity.

This interpretation is consistent with the treatment of standardized options positions in Rule 14e-4. Rule 14e-4 requires a person tendering into a partial tender offer to include in the calculation of his or her short position the amount of subject securities that the person is obligated to deliver upon exercise of a standardized in-the-money call option that was sold on or after the date that a tender offer is first publicly announced or otherwise made known by the bidder to the holders of the security to be acquired. For purposes of Rule 14e-4, in-the-money call options are those options with strike prices below the highest tender offer price or stated amount of consideration offered for the subject security. A security future settled by receipt of cash has no effect on the person's short position.[75]

d. Purchases Outside of a Tender Offer: Exchange Act Rule 14e-5

In connection with a tender offer for equity securities, Rule 14e-5 of the Exchange Act[76] generally prohibits a covered person from directly or indirectly purchasing or arranging to purchase outside of the tender offer (I) the securities or class of securities that are sought to be acquired in the transaction or that are otherwise the subject of the transaction ("subject securities"), or (ii) securities that are immediately convertible into, exchangeable for, or exercisable for subject securities ("related securities").[77]

**Q29:** Would Rule 14e-5 apply to the purchase by a covered person of security futures during a tender offer for the securities underlying the security futures?

**A29:** The security futures would not be subject securities. Nor would the

security futures be related securities because they would not be "immediately convertible into, exchangeable for, or exercisable for" the subject securities (i.e., the underlying securities). However, if the security futures provide for physical settlement, and the security futures will terminate trading[78] prior to expiration of the tender offer, the purchase of the security futures would be prohibited under Rule 14e-5 as an arrangement (i.e., the security future contract) to purchase subject securities (i.e., the underlying securities) during the tender offer.

**Q30:** Would Rule 14e-5 prohibit the physical settlement of a long security futures position by a covered person during a tender offer for the underlying security?

**A30:** The acquisition of the underlying securities upon physical settlement of a long security futures position would be considered a purchase of subject securities. Rule 14e-5(b)(1), however, permits transactions by covered persons to convert, exchange, or exercise related securities owned before public announcement of the tender offer into subject securities. Because the acquisition of subject securities upon the physical settlement of security futures is substantially similar to acquisitions of subject securities by conversion, exchange or exercise of other securities, the acquisition of underlying securities that are the subject of a tender offer upon physical settlement of a long security futures position is within the Rule 14e-5(b)(1) exception, if the covered person owned the security futures before public announcement of the tender offer.

**Q31:** Would Rule 14e-5 prohibit the acquisition of subject securities to satisfy an obligation to deliver those securities upon physical settlement of a short position in security futures?

**A31:** The acquisition of the underlying securities in order to physically settle a short position in security futures would be considered a purchase of subject securities. Rule 14e-5(b)(6), however, permits purchases that are made to satisfy an obligation to deliver a subject security arising from the exercise of an option by a non-covered person or a short sale, provided that (i) the short sale or option was established before public announcement of the tender offer, and (ii) the short sale or option transaction was made in the ordinary course of business and not to facilitate the offer. Because the acquisition of subject securities upon the physical settlement of a short security futures position is substantially similar to the acquisition of subject securities in a covering transaction arising from a short sale or the exercise of an option by a non-covered person, the acquisition is within the Rule 14e-5(b)(6) exception, provided the obligation to settle by physical delivery was established before public announcement of the tender offer and the security future transaction was made in the ordinary course of business and not to facilitate the offer.

**Q32:** Would Rule 14e-5 apply to the cash settlement by a covered person of a long security futures position?

**A32:** No. The cash settlement of a long security futures position would not involve an acquisition of the securities underlying the security futures.

e. Anti-manipulation Rules Regarding Distributions: Regulation M

Regulation M[79] is intended to preclude manipulative conduct by persons with an interest in the outcome of an offering of securities. It governs the activities of underwriters, issuers, selling security holders, and others that participate in the offering, as well as their affiliated purchasers. Regulation M prohibits such persons from directly or indirectly bidding for, purchasing, or attempting to induce any person to bid for or purchase, any security that is the subject of a distribution (a "subject security"), or any "reference security" (together, "covered securities"), until after the applicable restricted period.[80]

**Q33:** Would Regulation M apply to the purchase of security futures during a distribution of the securities underlying the security futures?

**A33:** Yes. The purchase of the security futures would be considered within the prohibition against directly or indirectly bidding for, purchasing, or attempting to induce any person to bid for or purchase, a covered security (i.e., the underlying securities) because, at a minimum, the purchase of the security futures would be an indirect purchase of a covered security.

**Q34:** Is the actively-traded securities exception available in connection with acquisitions of security futures during distributions of the underlying stock?

**A34:** The actively-traded securities exception under Rule 101(c)(1) would be available to acquisitions of security futures by distribution participants and their affiliated purchasers where the underlying securities are actively-traded securities. However, that exception is not available to purchases of security futures by issuers, selling security holders, or affiliated purchasers of the underlying securities who are governed by Rule 102(d)(1).[81]

**Q35:** Would Regulation M prohibit the physical settlement of a long security futures position during a distribution of the underlying security?

**A35:** The acquisition of the underlying security upon physical settlement of a long security futures position would be considered the purchase of a covered security. Rules 101(b)(4) and 102(b)(4), however, permit distribution participants, and issuers and selling shareholders, respectively, to acquire a covered security through the exercise of any option, warrant, right, or any conversion privileges set forth in the instrument governing a security. In adopting these exceptions, the Commission stated that it believes that exercises or conversions of derivative securities generally have an uncertain and attenuated manipulative potential.[82] Because the acquisition of underlying securities upon physical settlement of a long security future is substantially similar to the acquisition of a covered security upon the exercise of an option, warrant, right, or conversion privilege, the acquisition is within the exceptions in Rules 101(b)(4) and 102(b)(4).

**Q36:** Would Regulation M apply to the cash settlement of a long security futures position?

**A36:** No. Regulation M would not prohibit the cash settlement of a long security futures position.

3. Other Broker-Dealer Issues

### a. Eligible OTC Derivative Instruments: Exchange Act Rule 3b-13

OTC derivatives dealers are a class of registered dealers that limit their trading to eligible over-the-counter derivative products and certain related transactions.[83] Registration with the Commission as an OTC derivatives dealer is an alternative to registration as a full broker-dealer.[84] OTC derivatives dealers may engage in dealer activities in "eligible OTC derivative instruments," as that term is defined in Exchange Act Rule 3b-13.[85] OTC derivatives dealers may also engage in certain additional securities activities related to conducting an OTC derivatives business.[86]

**Q37:** Would security futures products be eligible OTC derivative instruments as defined in Exchange Act Rule 3b-13?

**A37:** No. Exchange Act Rule 3b-13(b)(2)(i) defines an eligible OTC derivative instrument, and specifically excludes from the definition of eligible OTC derivative instrument a security that is listed or traded on a securities exchange. Security futures products are exchange listed instruments.[87] Because a security futures product is a security that is listed on a registered national securities exchange, it is excluded from the definition of an eligible OTC derivative instrument.[88] Accordingly, an OTC derivatives dealer that wishes to engage in activities involving security futures products would be limited to those activities permissible in securities that are not eligible OTC derivative instruments - activities such as ancillary portfolio management securities activities.[89]

### b. Addressing Conflicts Associated with Proprietary Trading and Trading for Discretionary Accounts by Exchange Members: Exchange Act Section 11(a)

Section 11(a) of the Exchange Act[90] prohibits a member of a national securities exchange (other than a notice-registered exchange) from effecting transactions on that exchange for its own account, the account of an associated person, or an account over which it or its associated person exercises investment discretion, unless an exemption applies. Members of notice-registered futures exchanges are exempt from Section 11(a) for purposes of their activities on those notice-registered exchanges, but are subject to a similar restriction.[91]

Congress enacted Section 11(a) to encourage fair dealing and fair access in the exchange markets by reducing the conflicts arising from an exchange member trading for its own account in the public exchange markets.[92] Exempt from this prohibition are certain types of transactions that "...contribute to the fairness and orderliness of exchange markets or which have not given rise to serious problems."[93] For instance, Section 11(a)(1)(A) provides an exemption from the prohibitions of Section 11(a) for any transaction by a dealer acting in the capacity of a market maker.[94] Another type of transaction specifically exempted from Section 11(a) is "any bona fide hedge transaction involving a long or short position in an equity security and a long or short position in a security entitling the holder to acquire or sell such equity security...."[95] The Commission implemented this exemption in 1979 by adopting Exchange Act Rule 11a1-3(T).[96]

**Q38:** Are both cash-settled and physically-settled security futures securities

"entitling the holder to acquire or sell an equity security" so as to permit stock-to-futures, options-to-futures and futures-to-futures hedging transactions?

**A38:** Yes. Security futures are classic futures contracts - agreements to buy or sell a specific amount of a security at a particular price on a stipulated future date. Whether settlement on that date is done by cash or by physical delivery of the underlying securities, such an instrument can be used as a hedging vehicle.

From a regulatory perspective, cash-settlement is not a determinative factor in this context. The Commission has long considered security options that are cash-settled, as opposed to physically-settled, to be "options on securities" within the definition of security in Exchange Act Section 3(a) (10).[97] Such an approach helps to "meet the countless and variable schemes devised by those who seek the use of money of others on the promise of profits."[98] For similar reasons, whether cash or physically-settled, security futures are securities "entitling the holder to acquire or sell an equity security" as contemplated by Rule 11a1-3(T).

Moreover, Congress did not intend to impose excessively rigid limits on the activities of arbitrageurs and other specialized traders in connection with transactions of the types listed in Section 11(a)(1)(D), which includes bona fide hedge transactions.[99] Section 11(a)(1) was not designed to narrow or unduly complicate arbitrage activities and hedging transactions.[100] Because the bona fide hedge exemptions in Section 11(a)(1)(D) and Rule 11a1-3(T) were intended to be interpreted broadly to encompass the variety and complexity of hedging techniques, we interpret Section 11(a)(1)(D) of the Exchange Act and Rule 11a1-3(T) to permit cash-to-futures, options-to-futures and futures-to-futures hedging with security futures.

**Q39:** Would floor traders effecting transactions in security futures products on a fully registered national securities exchange qualify for the market making exemption under Section 11(a)(1)(A)?

**A39:** Section 11(a)(1)(A) of the Exchange Act exempts from the general prohibitions of Section 11(a) any transaction by a dealer acting in the capacity of a market maker, as that term is defined in Section 3(a)(38) of the Exchange Act.[101] This exemption reflects the special role of market makers in our securities markets. Section 3(a)(38) defines a market maker as "any specialist permitted to act as a dealer, any dealer acting in the capacity of block positioner, and any dealer who, with respect to a security, holds himself out (by entering quotations in an interdealer communications system or otherwise) as being willing to buy and sell such security for his own account on a regular or continuous basis." As a practical matter, consistent with this definition of "market maker," fully registered national securities exchanges - i.e., those not registered pursuant to Exchange Act Section 6(g)[102] - have established both affirmative and negative obligations, including appropriate dual trading restrictions, for specialists and other market makers.[103] Such obligations are significant, because floor traders generally buy and sell securities for their own benefit and interest, unless the market imposes obligations to serve the market or public interest. Thus, only to the extent a floor trader is acting subject to the type of exchange imposed obligations applicable to market makers in other

securities, including dual trading restrictions, will such floor trader be deemed acting in a market making capacity in a security futures product on a fully registered national securities exchange.

### c. Extensions of Credit: Exchange Act Section 11(d) and Exchange Act Rule 10b-16

Section 11(d) of the Exchange Act[104] generally prohibits any person that does business as both a broker and a dealer from extending credit to a customer on any security that was part of a new issue when the broker-dealer participated in the distribution of the new issue within thirty days prior to the customer's transaction.[105] Exchange Act Rule 10b-16[106] prohibits the extension of credit by a broker-dealer to a customer in connection with any securities transaction unless the broker-dealer has established procedures to ensure that the customer is given, at the time the account is opened and periodically thereafter, specified information with respect to the amount of and reasons for credit charges.[107]

A security future potentially raises various issues related to the extension of credit. For instance, questions may arise as to whether the contract should be viewed as an instrument in and of itself, or viewed as a down payment on ownership of the underlying security. We provide guidance about the security future itself and extensions of credit in relation to that instrument.

**Q40:** Would a security future constitute an extension of credit under Section 11(d) of the Exchange Act and for purposes of the disclosure requirements of Rule 10b-16?

**A40:** A security future itself is not an extension of credit. The value of a security future can fluctuate throughout the life of the contract based on the value of the underlying security, with each party to the contract exposed to such fluctuations. Traditionally, marking to market of futures contracts allows gains and losses on futures contracts to be transferred regularly between contract parties throughout the life of the contract. While this practice could in a sense be viewed as involving only partial payment for a security, we believe that it actually reflects the nature of a futures contract, and not an attempt to extend credit in the sense contemplated by Section 11(d) or Rule 10b-16. As one commentator on futures explained, "margin in futures accounts does not represent partial payment of the security as it does in stock transactions. No loan is involved. Margin in futures contracts simply represents a good faith deposit against performance."[108]

**Q41:** Would extensions of credit in relation to a security future be considered extensions of credit in relation to a new issue for purposes of Section 11(d)(1)?

**A41:** No. We expect security futures to be issued by clearing agencies and not underwritten or distributed by broker-dealers. Although credit may be extended in relation to security futures (e.g., advance funds to meet margin calls or make periodic variation payments), such extensions of credit are intended to support the margining system for futures contracts, a system set up to manage risk in the clearance and settlement system for this particular type of instrument. It is generally recognized that Section 11

(d)(1) is primarily intended to prohibit "share pushing" by broker-dealers engaged in a distribution of a new issue of non-exempted securities.[109] Further, Section 11(d)(1) serves a related customer protection purpose by precluding the overextension of customers with respect to new issue securities. As stated by the staff of the Federal Reserve Bank of New York, "inducing customers to buy new issues on margin was perceived as a sales technique used by underwriters to reduce rapidly their exposure to risk and as a technique that had resulted in credit-financed purchases which were not always appropriate for the buyers of new issues."[110] For purposes of Section 11(d)(1), we expect markets in security futures issued by clearing agencies to operate more like secondary markets than markets in new issues. Moreover, leverage in such markets should derive more from the nature of the instrument than from a desire for broker-dealers to extend credit to induce additional sales to deplete an underwriting inventory. Thus, the traditional public policy concerns underlying Section 11(d)(1)'s limitations on credit activities in relation to new issues do not appear to be present for security futures. In the event private parties or broker-dealers begin to issue security futures, we might revisit extensions of credit in relation to such instruments.

**Q42:** Does Rule 10b-16 apply to extensions of credit related to security futures, including an extension of credit to fund a margin obligation?

**A42:** Yes. While the future itself is not an extension of credit, Rule 10b-16 applies to all extensions of credit, directly or indirectly, to any customer in connection with <u>any</u> securities transaction, including a security future. Investors in security futures, including those extended credit in connection with margining, should benefit from the transparency of credit terms fostered by this Rule.

#### d. Ancillary Securities Activities By Notice-Registered Broker-Dealers

Under the Exchange Act, only broker-dealers that limit their securities activities to security futures products and government securities pursuant to Exchange Act Rules 3a43-1[111] and 3a44-1[112] can be "notice-registered," as opposed to fully registered broker-dealers.[113] Some have suggested identifying additional securities activities that would not trigger the need to fully register.

**Q43:** Will the Commission provide an exemption from full broker-dealer registration for notice-registered broker-dealers that engage in ancillary activities in securities other than, but in relation to, security futures products?

**A43:** At this time, we do not believe broad exemptive relief is necessary for any additional ancillary securities activities of notice-registered broker-dealers.[114] In providing for notice registration, Congress envisioned that a notice-registered broker-dealer would engage in only security futures product activities.[115] Limiting the scope of such notice registrants' activities serves the public interest because a wide array of broker-dealer regulations aimed at protecting investors and maintaining fair and orderly securities markets are not applied to notice-registered broker-dealers.[116] Moreover, protections afforded by those notice registrants' other regulator, the CFTC, focus on futures, not securities markets.[117] Should additional securities

activities be necessary in conjunction with security futures products transactions, a notice-registered broker-dealer could direct customers to a fully registered broker-dealer or could fully register itself.[118]

Of note, futures commission merchants already offer futures on broad-based stock indexes without special relief to engage in activities in the equity securities underlying such indexes without registering as broker-dealers.[119] The intermediaries themselves may determine whether to register fully as broker-dealers in order for them to expand the scope of their securities activities. The Commission stands ready to address requests for exemptive relief, consistent with the public interest and the protection of investors, for highly delineated securities activities, where the services of a fully registered broker-dealer are unavailable and full registration is impractical.

### III. Solicitation of Comments

As noted above, security futures products are new products and markets in these products have only begun to develop. Guidance provided necessarily is based on how we expect security futures products markets to operate. Accordingly, we solicit comment to identify market developments that might make it necessary to revisit our guidance or to provide guidance on additional issues.

### List of Subjects

### 17 CFR Parts 231 and 241

Securities.

### Amendments to the Code of Federal Regulations

For the reasons set forth above, the Commission is amending title 17, chapter II of the Code of Federal Regulations as set forth below:

### PART 231 - INTERPRETATIVE RELEASES RELATING TO THE SECURITIES ACT OF 1933 AND GENERAL RULES AND REGULATIONS THEREUNDER

1. Part 231 is amended by adding Release No. 8107 and the release date of June 21, 2002, to the list of interpretive releases.

### PART 241 - INTERPRETIVE RELEASES RELATING TO THE SECURITIES EXCHANGE ACT OF 1934 AND GENERAL RULES AND REGULATIONS THEREUNDER

2. Part 241 is amended by adding Release No. 46101 and the release date of June 21, 2002 to the list of interpretive releases.

By the Commission.

Margaret H. McFarland
Deputy Secretary

Dated: June 21, 2002

---

1    We do not edit personal, identifying information, such as names or e-mail addresses, from electronic submissions. Submit only information you wish to make publicly available.

2    See Pub. L. No. 106-554, 114 Stat. 2763.

3    See Exchange Act Section 3(a)(56) [15 U.S.C. 78c(a)(56)], Securities Act Section 2(a)(16) [15 U.S.C. 77b(a)(16)], and CEA Section 1a(32) [7 U.S.C. 1a(32)] define "security futures product" as a security future or an option on a security future.

4    Exchange Act Section 3(a)(10) [15 U.S.C. 78c(a)(10)] defines a "security" to include a security future. The Securities Act defines a "security" to include a security future in Section 2(a)(1) [15 U.S.C. 77b(a)(1)]. The term "security future" is defined in Exchange Act Section 3(a)(55) and in CEA Section 1a(31) [7 U.S.C. 1a(31)] as a contract of sale for future delivery of a single security or of a narrow-based security index. See also Securities Act Section 2(a)(16) [15 U.S.C. 77b(a)(16)].

5    Specifically, certain markets and intermediaries that are registered with only the CFTC may register with the SEC by submitting a written notice that is effective upon filing. Exchange Act §§ 6(g) and 15(b)(11) [15 U.S.C. 78f(g) and 78o(b)(11)]. Cf. CEA §§ 5f and 4f(a)(2) [7 U.S.C. 7b-1 and 6f(a)(2)]. A "notice-registered" (as opposed to a fully registered) broker-dealer is exempt from provisions specified in Section 15(b)(11)(B) of the Exchange Act. A "notice-registered" exchange is exempt from provisions specified in Section 6 (g)(4) of the Exchange Act, and certain floor brokers on such exchanges are exempt from broker-dealer registration and the provisions specified in Section 15(b)(12) of the Exchange Act. The CFMA also requires the Commission, in consultation with the CFTC, to issue rules, regulations, or orders as necessary to avoid duplicative or conflicting regulations applicable to firms that are subject to all of the provisions of the Exchange Act and the CEA with respect to the treatment of customer funds, securities, or property, maintenance of books and records, financial reporting, or other financial responsibility rules involving security futures products. See Exchange Act § 15(c)(3)(B) [15 U.S.C. 78o(c)(3)(B)]; CEA § 4d(c) [7 U.S.C. 6d(c)].

6    In addition, some of the guidance provided in this release relates to security futures instead of all security futures products. As noted above, security futures products are a broader set of instruments that include options on security futures as well as security futures themselves. See supra note 3. Should the Commission in coordination with the CFTC permit the trading of such instruments in the future, see Section 6(h)(6) of the Exchange Act [15 U.S.C. 78f(h)(6)], at that time, the Commission could look at the function of such instruments to determine whether this guidance for security futures is appropriate for options on security futures.

7    See Section 5 of the Securities Act [15 U.S.C. 77e].

8    17 CFR 230.144.

9    The term "restricted securities" is defined in Rule 144(a)(3) [17 CFR 230.144 (a)(3)].

10   Section 2(a)(11) of the Securities Act [15 U.S.C. 77b(a)(11)] defines an "underwriter" as "[a]ny person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking. . ." The definition applies to any

person. No distinction is made between professional securities dealers and individual investors; any person who performs one of the specified functions in relation to an offering of securities is an underwriter within the meaning of Section 2(a)(11).

11  Securities Act Section 4(1) [15 U.S.C. 77d(1)] states that the Section 5 registration requirements shall not apply to transactions by any person other than an issuer, underwriter, or dealer.

12  15 U.S.C. 77b(a)(1).

13  15 U.S.C. 77c(a)(14).

14  15 U.S.C. 78o-3(a).

15  15 U.S.C. 78q-1.

16  15 U.S.C. 78q-l(b)(7).

17  15 U.S.C. 77b(a)(3).

18  The term "issuer" is defined in Section 2(a)(4) of the Securities Act and includes "every person who issues or proposes to issue any security..." [15 U.S.C. 77b(a)(4)].

19  An "affiliate" of an issuer is defined as a "person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer" [17 CFR 230.405].

20  All security futures establish obligations on the purchaser and seller of the security futures to either: (i) deliver the underlying securities (in the case of a seller of a security future) or accept delivery of the underlying securities (in the case of a purchaser of a security future); or (ii) make or accept a cash payment at maturity of the security future to settle any gains or losses based on the difference between the settlement price of the security future on the last trading day and the price of the security future when the security future was originated. The terms of the security future dictate whether it is settled by physical delivery of the underlying securities or by cash payment.

Issues related to settlement method are raised throughout this interpretive release. However, settlement method may or may not affect the application of particular statutory provisions or rules. This release delineates where settlement method would affect the guidance provided. The Commission typically does not view settlement method of a derivative product as determinative of whether such product is or is not a security. See, e.g., infra note 97 (citing Caiola amicus curiae brief).

21  The provision in Section 2(a)(3) stating that "[a]ny offer or sale of a security futures product by or on behalf of the issuer of the securities underlying the security futures product, an affiliate of the issuer, or an underwriter, shall constitute a contract for sale of, sale of, offer for sale, or offer to sell the underlying securities[,]" applies regardless of whether a security future calls for physical delivery of the underlying security or cash settlement.

22  Exchange Act Section 16(f) [15 U.S.C. 78p(f)].

23  Exchange Act Section 16(a) [15 U.S.C. 78p(a)].

24  Exchange Act Section 16(b) [15 U.S.C. 78p(b)].

25  Exchange Act Section 16(c) [15 U.S.C. 78p(c)].

26  These examples and other examples in this section are for purposes of Section 16 of the Exchange Act only and do not address any other issues

under the Exchange Act or the Securities Act. For a discussion of the Securities Act, see Section II.A.1.a.

27 15 U.S.C. 78l.

28 17 CFR 240.16a-1(a)(1).

29 See infra Section II.A.2.

30 See supra note 20.

31 The last trading day is the day on which the security future terminates trading, i.e., the last day in which an open position in a security future, either a long or short position, can be closed or liquidated either by buying or selling an opposite position. Any security future that has not been liquidated by the close of trading for that security future on the last trading day must be settled pursuant to the terms of the security future.

32 See infra Section II.A.2 (discussing the application of the beneficial ownership rules of Regulation 13D).

33 The term "narrow-based security index" is defined in Section 3(a)(55) of the Exchange Act [15 U.S.C. 78c(a)(55)].

34 17 CFR 240.16a-1(c).

35 17 CFR 240.16a-1(b).

36 17 CFR 240.16a-1(h).

37 17 CFR 240.16b-6(a).

38 17 CFR 240.16b-6(c)(2). Exchange Act Rule 16b-6(c)(2) sets forth the methods for determining the profits recoverable under Section 16(b) from short-swing transactions involving derivative securities with different characteristics but related to the same underlying security (e.g., the purchase and sale of call options with different strike prices and expiration dates), and from short-swing transactions involving derivative securities and the underlying security. Under Rule 16b-6(c)(2), profits from short-swing transactions involving derivative securities having different characteristics but related to the same underlying security, or involving derivative securities and the underlying security, cannot exceed the difference in price of the underlying security on the date of purchase or sale and the date of sale or purchase.

39 Offset refers to the method of closing or liquidating an outstanding long or short security future position through an opposite trade (i.e., an equal and opposite transaction to the one that opened the position). Offset will occur only if the purchase or sale matches the original security future transaction with respect to the underlying security, number of security futures, and delivery month. Once a party has offset his or her outstanding security future position, the party has no further obligations with respect to the original transaction or the offsetting transaction.

40 See, for example, Smolowe v. Delendo Corp., 136 F.2d 231 (2d Cir. 1943), cert. denied 320 U.S. 751 (1943), regarding "lowest price in highest price out" profit computation. Under this method, recoverable profit is computed by matching the highest sale price with the lowest purchase price within six months, the next highest sale price with the next lowest purchase price within six months, and so on, until all shares have been included in the computation.

41 17 CFR 240.16b-6(b).

42  For a person who has a long security future position, the security future would be "out-of-the-money," as that term is used in Rule 16b-6(b), if the settlement price of the security future is above the market price of the underlying security on the settlement date. Conversely, a short security future position would be "out-of-the money" if the settlement price of the security future is above the market price of the underlying security on the settlement date.

43  See Securities Exchange Act Release No. 28869 (February 8, 1991), 56 FR 7242 (February 21, 1991).

44  Exchange Act Rule 16a-3(f)(1)(i)(A) [17 CFR 240.16a-3(f)(1)(i)(A)].

45  Regulation 13D also encompasses the Schedule 13G requirements.

46  17 CFR 240.13d-1.

47  For the purpose of Regulation 13D, the term "equity security" is defined in Rule 13d-1(i) [17 CFR 240.13d-1(i)] as any equity security of a class which is registered under Section 12 of the Exchange Act [15 U.S.C. 78l], or any equity security of any insurance company which would have been required to be registered under the Exchange Act except for the exemption contained in Section 12(g)(2)(G) of the Exchange Act [15 U.S.C. 78l(g)(2)(G)], or any equity security issued by a closed-end investment company registered under the Investment Company Act of 1940 [15 U.S.C 80a et seq.]. The term does not include securities of a class of non-voting securities.

48  17 CFR 240.13d-101 or 240.13d-102. Unless otherwise exempt, a person acquiring more than five percent of a class of equity security must file a Schedule 13D within 10 days of the acquisition. A Schedule 13D filer must disclose, among other things, his or her identity and background, the source and amount of funds used to acquire the securities, the purpose of the acquisition and any plans or proposals of the filer concerning the issuer. Institutional investors who acquire more than five percent of a class of equity security in the ordinary course of business, and not with the purpose or effect of changing or influencing control of the issuer, may file the short-form Schedule 13G, in lieu of the Schedule 13D, within 45 days after the end of the calendar year. Passive investors who acquire more than 5% of a class of equity security, but less than 20% of the class, and not with the purpose or effect of changing or influencing control of the issuer, may file the short-form Schedule 13G, in lieu of the Schedule 13D, within 10 days after the acquisition. A Schedule 13G filer must disclose, among other things, his or her identity, residence and citizenship, and amount of securities beneficially owned.

49  17 CFR 240.13d-3(a). The Rule states that voting power includes the power to vote or to direct the voting of the security, and that investment power includes the power to dispose, or to direct the disposition of the security.

50  15 U.S.C 78m(d) and (g).

51  Rule 13d-3(d)(1)(i) [17 CFR 240.13d-3(d)(1)(i)]. Additionally, the Rule deems a person to be the beneficial owner of a security if the person has the right to acquire beneficial ownership of the security within 60 days pursuant to the power to revoke a trust, discretionary account, or similar arrangement through the termination of a trust, discretionary account or similar arrangement. See Rule 13d-3(d)(1)(i)(C) and (D) [17 CFR 240.13d-3(d)(1)(i) (C) and (D)].

52  Rule 13d-3(d)(1) [17 CFR 240.13d-3(d)(1)].

53  See supra note 47.

54  Exchange Act Section 12(a) [15 U.S.C. 78l(a)] exempts security futures

traded on a national securities exchange from registration under both Sections 12(b) and Section 12(g) of the Exchange Act [15 U.S.C. 78l(b) and (g)]. Exchange Act Section 12(g) clarifies that security futures are not equity securities of the issuer of the underlying securities.

55  See supra note 31.

56  This example assumes that the security futures were not purchased with the purpose or effect of changing or influencing control of the issuer.

57  In this example, W would be eligible to file on the short-form Schedule 13G if he is an institutional or passive investor and can certify that he did not purchase the security futures for the purpose of changing control of Company XYZ, and the purchase did not have the effect of changing control of Company XYZ. See Rule 13d-1(b) and (c) [17 CFR 240.13d-1(b) and (c)].

58  See supra note 39. A transaction is not an offsetting transaction if it does not liquidate the previously established security future position. Once a security future has been offset, the obligation to accept or make delivery of the underlying securities or to accept or make payment of the value of the underlying securities (in the case of a cash settled security future) is canceled.

59  Securities Exchange Act Release No. 37619A (September 6, 1996), 61 FR 48290, 48322 (September 12, 1996).

60  15 U.S.C. 78k-1(a)(1)(C)(iv).

61  See Securities Exchange Act Release No. 43591 (November 17, 2000), 65 FR 75439, 75439-40 (December 1, 2000) (discussing best execution obligations with respect to exchange-listed options).

62  See NASD Rule 2320.

63  See Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 135 F.3d 266, 270 (3d Cir. 1998) (en banc); NASD Rule 2320.

64  Exchange Act Rules 15c2-4 and 15c2-8 [17 CFR 240.15c2-4 and 240.15c2-8] apply to sales of security futures by brokers and dealers that constitute distributions. We anticipate that security futures will be issued by clearing agencies, and brokers and dealers therefore will not participate in distributions of security futures. If brokers and dealers, however, participate in a distribution of security futures, we will address any questions regarding Rules 15c2-4 and 15c2-8 at that time.

65  15 U.S.C. 78j(a).

66  17 CFR 240.10a-1.

67  See Securities Exchange Act Release No. 1548 (January 24, 1938), 3 FR 213 (January 26, 1938).

68  See 15 U.S.C. 78j(a)(2).

69  Termination of trading is the moment at which an open position in a security future, either a long or short position, can no longer be closed or liquidated either by buying or selling an opposite position. Similarly, a person obligated to deliver would be considered short at the termination of trading.

70  17 CFR 240.10b-18.

71  See Exchange Act Rule 10b-18(a)(3) [17 CFR 240.10b-18(a)(3)].

72  Rule 10b-18 also would not apply to security futures that are cash-settled, as these products do not result in a purchase of the common stock for purposes

of the Rule.

73   17 CFR 240.14e-4.

74   See supra note 69 (explaining termination of trading).

75   Further, the holder of a cash-settled futures contract is not considered to own the subject securities underlying the contract for purposes of Rule 14e-4, and so cannot tender shares on the basis of the security future. As such, security futures settled by receipt of cash have no effect on the number of subject securities eligible to be tendered into an offer.

76   17 CFR 240.14e-5.

77   Relevant terms are defined in paragraph (c) of Rule 14e-5.

78   See supra note 69.

79   17 CFR 242.100 - 242.105.

80   Relevant terms, including "distribution," "reference security," and "restricted period," are defined in Rule 100 of Regulation M.

81   See 17 CFR 242.102.

82   Securities Exchange Act Release No. 38067 (December 20, 1996), 62 FR 520, 528 (January 3, 1997).

83   See 17 CFR 240.3b-12.

84   See Securities Exchange Act Release No. 40594 (October 23, 1998), 63 FR 59362 (November 3, 1998).

85   17 CFR 240.3b-13.

86   Id. In particular, an OTC derivatives dealer must limit its securities activities to: (1) engaging in dealer activities in eligible OTC derivative instruments (as defined in Rule 3b-13) that are securities; (2) issuing and reacquiring securities that are issued by the dealer, including warrants on securities, hybrid securities, and structured notes; (3) engaging in cash management securities activities (as defined in Rule 3b-14); (4) engaging in ancillary portfolio management securities activities (as defined in Rule 3b-15); and (5) engaging in such other securities activities that the Commission designates by order pursuant to Rule 15a-1(b)(1). 17 CFR 240.3b-12(a). In addition, such dealer's securities activities must consist primarily of those described in categories (1) through (3), 17 CFR 240.3b-12(b), and do not consist of any other securities activities, including engaging in any transaction in any security that is not an eligible OTC derivative instrument, except as permitted in categories (3) through (5). 17 CFR 240.3b-12(c). Moreover, an OTC derivatives dealer must also be affiliated with a fully regulated broker-dealer. 17 CFR 240.3b-12.

87   See Exchange Act Sections 6(h)(1) [15 U.S.C. 78f(h)(1)].

88   Exchange Act Rule 3b-13(b)(2)(i) specifically excludes from the definition of eligible OTC derivative instrument a contract, agreement or transaction that provides, in whole or in part, on a firm or contingent basis, for the purchase or sale of, or is based on the value of, or any interest in, any security, (or group or index of securities), and is listed on, or traded on or through, a national securities exchange or registered national securities association or a facility or market thereof. See 17 CFR 240.3b-13(b)(2)(i).

89   Exchange Act Rule 3b-15 defines ancillary portfolio management securities activities. As the Commission explained in adopting the Rule:

These securities activities must be limited to transactions in connection with the OTC derivatives dealer's dealer activities in eligible OTC derivative instruments, the issuance of securities by the dealer, or such other securities activities that the Commission designates by order. They must also (1) be conducted for the purpose of reducing the dealer's market or credit risk or consist of incidental trading activities for portfolio management purposes; and (2) be limited to risk exposures within the market, credit, leverage, or liquidity risk parameters set forth in the trading authorizations granted to the associated person (or to the associated person's supervisor) who executes the transaction for the dealer, and in the written guidelines approved by the dealer's governing body and included in the dealer's internal risk management control system (as required under new [Exchange Act] Rule 15c3-4). Rule 3b-15 also requires that ancillary portfolio management securities activities be conducted only by associated persons of the dealer who perform substantial duties for the dealer in connection with its dealer activities in eligible OTC derivative instruments.

See Securities Exchange Act Release No. 40594 (October 23, 1998), 63 FR 59362 (November 3, 1998); 17 CFR 240.3b-15. See also supra note 86 (noting generally other permissible activities).

90   15 U.S.C. 78k(a).

91   As directed by the CFMA, the CFTC recently adopted rules that prohibit futures intermediaries from trading for accounts in which they have any interest, during the same trading session that they also trade for the accounts of customers, the same security futures product on the same designated contract market or registered derivatives transaction execution facility. These rules also specifically require electronic markets to adopt rules to prohibit the execution of customer orders through systems that provide an unfair advantage to market intermediaries. That unfair advantage may be a time and place advantage, or the ability to influence or guide an order once the order enters the system. See Commodity Exchange Act Release No. 3038-AB83 (March 1, 2002), 67 FR 11223 (March 13, 2002).

92   See Securities Act Amendments of 1975, Report of the Senate Comm. on Banking, Housing and Urban Affairs to Accompany S. 249, S. Rep. No. 94-75, 9th Cong., 1st Sess. 99 (1975).

93   Securities Acts Amendments of 1975, Report of the Senate Comm. on Banking, Housing and Urban Affairs to Accompany S. 249, S. Rep. No. 94-75, 9th Cong., 1st Sess. 99 (1975).

94   See Exchange Act Section 11(a)(1)(A) [15 U.S.C. 78k(a)(1)(A)]; Exchange Act Section 3(a)(38) [15 U.S.C. 78c(a)(38)] (defining market maker).

95   Exchange Act Section 11(a)(1)(D) (15 U.S.C. 78k(a)(1)(D)).

96   Exchange Act Rule 11a1-3(T) provides that:

[a] bona fide hedge transaction effected on a national securities exchange by a member for its own account or an account of an associated person thereof and involving a long or short position in a security entitling the holder to acquire or sell an equity security, and a long or short position in one or more other securities entitling the holder to acquire or sell such equity security, shall be deemed to be of a kind which is consistent with the purposes of Section 11(a)(1) of the Act, the protection of investors, and the maintenance of fair and orderly markets.

17 CFR 240.11a1-3(T).

97   Exchange Act Section 3(a)(10) [15 U.S.C. 78c(a)(10)]. See, e.g., Brief of the SEC, Amicus Curae, in Support of Appellant on Issues Addressed at 10-11, Louis S. Caiola v. Citibank, N.A., On Appeal from the United States District Court for the Southern District of New York (No. 01-7545) (explaining that Congress did not intend to exclude cash-settled options on securities from the definition of "security" in the Exchange Act).

98   SEC v. W.J. Howey Co., 328 U.S. 293, 299 (1946).

99   See Securities Acts Amendments of 1975, Report of the Senate Comm. on Banking, Housing and Urban Affairs to Accompany S.249, S. Rep. No. 94-75, 9th Cong., 1st Sess. 99 (1975).

100   See id. The exemption for bona fide hedge transactions in Exchange Act Rule 11a1-3(T) was drafted broadly to encompass the variety and complexity of hedging techniques. As the Commission noted when it adopted Rule 11a1-3 (T):

> The question whether particular combinations of stock positions and options positions result in risk reduction in each of the positions involves subjective judgments as to the volatility and risk characteristics of those positions. ... The Commission recognizes that the calculation of volatility and risk can only be approximate, and believes that, for purposes of Section 11(a)(1) (D), the determination of what constitutes an offset may be made by the use of any responsible method of calculating the risk of stock and options positions.

Securities Exchange Act Release No. 15533 (January 29, 1979), 44 FR 6093 (January 31, 1979).

101   See 15 U.S.C. 78e(a)(38).

102   15 U.S.C. 78f(g).

103   For example, registered traders in options on the American Stock Exchange ("Amex") are subject to Amex Rule 958, prohibiting them from initiating options transactions for any account in which they have an interest except in accordance with the Rule's provisions. Moreover, section (c) of Rule 958 generally requires that when a registered trader enters a trading crowd in other than a floor brokerage capacity, or is called upon by a Floor Official or a Floor Broker acting in an agency capacity, the registered trader "is required to make competitive bids and offers as reasonably necessary to contribute to the maintenance of a fair and orderly market and shall engage, to a reasonable degree under the existing circumstances, in dealings for his own account when there exists a lack of price continuity, a temporary disparity between the supply of and demand for option contracts of a particular series, or a temporary distortion of the price relationships between option contracts of the same class." See Amex Rule 958(c); see also Amex Rule 958, cmt. .01 (designating registered trader engaging in Exchange options transactions as a Specialist for purposes of certain provisions of the Exchange Act and the rules and regulations thereunder); Amex Rule 111(c) ("No Registered Trader shall effect, on the Floor of the Exchange, a transaction for an account in which he has an interest and execute as broker an off-Floor order in the same stock during the same trading session.") (Incorporated into the option rules by Amex Rule 950(c)).

104   15 U.S.C. 78k(d).

105   See H. R. Rep. No. 1383, 73d Cong., 2d Sess. (1934) 22; see also S. Rep. No. 792, 73d Cong., 2d Sess. (1934) 12. Congress stated that Section 11(d)

"... strikes at one of the greatest potential evils inherent in the combination of the broker and dealer function in the same person, by assuring that he will not induce his customers to buy on credit, securities which he has undertaken to distribute to the public." Id. This prohibition applies to the direct or indirect extension or maintenance of credit, as well as arranging for the extension or maintenance of credit. See also supra note 64 (concerning expectation that security futures will be issued by clearing agencies and not broker-dealers).

106  17 CFR 240.10b-16.

107  See Securities Exchange Act Release No. 8773 (December 8, 1969), 34 FR 19717 (December 16, 1969).

108  See New York Institute of Finance, Stocks Bonds Options Futures, Investments and Their Markets 184 (Stuart R. Veale, ed. 1987).

109  See VII Loss & Seligman, Securities Regulation 3290 n.420 (3d ed. 1991).

110  See Federal Reserve Bank of New York Staff Study: Securities Credit Regulations of the Board of Governors of the Federal Reserve System, pt. 1, at 126 (1979).

111  17 CFR 240.3a43-1.

112  17 CFR 240.3a44-1.

113  See supra note 5.

114  The Commission already has addressed the issue of a notice-registered broker-dealer handling certain securities upon expiration of a security future that is physically-settled. As we stated when we adopted rules to permit notice registration, a notice-registered broker-dealer that accepts and occasionally delivers the underlying securities upon the expiration of a security future is not acting as a broker or a dealer with respect to those securities. It therefore is not required to register as a full broker-dealer. Because most futures transactions are generally closed out by offsetting transactions, and not by physical settlement, this should not be an issue for most notice-registered broker-dealers. A futures commission merchant that routinely closes out its transactions in security futures products by physical delivery, however, should register as a full broker-dealer. See Securities Exchange Act Release No. 44730 (August 21, 2001), 66 FR 45138 (August 27, 2001).

115  See 15 U.S.C. 78o(b)(11)(A). The fact that certain financial intermediaries could want to engage in a wider range of activities that would require both full broker-dealer and full futures commission merchant registration is reflected in the statute as well. See, e.g., 15 U.S.C. 78o(c)(3)(B); supra note 5.

In addition, previously when Congress specifically envisioned the exemption of CFTC registrants from broker-dealer registration solely for government securities activities incidental to their futures business, Congress explicitly provided a statutory basis for such action. See Securities Exchange Act Release No. 24726 (July 22, 1987), 52 FR 27962 (July 24, 1987) (adopting Exchange Act Rules 3a43-1 and 3a44-1 implementing amendments to Section 3(a)(43) and 3(a)(44) of the Exchange Act defining government securities broker and government securities dealer contained in the Government Securities Act of 1986).

116  See supra note 5.

117  See, e.g., CEA Section 16(e) [7 U.S.C. 20(e)].

In addition, in connection with the management of its proprietary account, a

118 notice-registered broker-dealer itself could effect transactions in equity securities in its own account with a fully registered broker-dealer. Such activities generally would not independently trigger the need to fully register as a broker-dealer unless they constituted activities of a "dealer" as that term is defined in the federal securities laws.

119 Exchange Act Rules 3a43-1 and 3a44-1 provide some relief from broker-dealer registration related to a future commission merchant's ancillary government securities activities. <u>See</u> 17 CFR 240.3a43-1; 240.3a44-1. However, such rules are inapposite to notice-registered broker-dealers wishing to engage in equity securities activities in addition to activities in security futures products. <u>See supra</u> note 115.

*http://www.sec.gov/rules/interp/33-8107.htm*

Home | Previous Page

Modified: 06/24/2002

LEXSEE [2004] 1 NZLR 731

Copyright 2003 New Zealand Council of Law Reporting
New Zealand Law Reports

Ithaca (Custodians) Ltd v Perry Corporation

CA 43/03

Court of Appeal   Wellington

*[2004] 1 NZLR 731; 2003 NZLR LEXIS 76*

3, 4, 5 June, 4 November 2003

**DECIDED-DATE:** 4 November 2003

**CATCHWORDS:**
[*1]

Commercial law - Securities regulation - Disclosure by substantial security holder of relevant interest - Meaning of "understanding or arrangement" - Whether disclosure required of securities able to be obtained by unwinding equity swap arrangement - Purpose of disclosure requirements - Onus of proof - Securities Markets Act 1988, ss 2, 5, 20, 21, 22, 30, 31, 32 and 34.

Evidence - Witness - Inference to be drawn from failure to call witness.

**HEADNOTES:**

Perry Corporation held shares in Rubicon Ltd, a company listed on the New Zealand Stock Exchange. Pursuant to the Securities Amendment Act 1988 (now the Securities Markets Act 1988), shareholders in Rubicon were required to give a "substantial security holder" notice as soon as they acquired a relevant interest in 5 per cent or more of the voting securities of the company. "Relevant interest" was broadly defined to include both the beneficial ownership of securities and the right or power to control what happened to the securities. Substantial security holders were also required to give notice of a change in their holdings of 1 per cent or more.

At the time Rubicon listed on 26 March 2001, Perry Corporation held 4.2 per cent of the shares.  [*2]  By 6 April 2001, it held 10.81 per cent of the shares. On 31 May 2001, Perry Corporation sold 14 million shares to Deutsche Bank and 17 million shares to UBS Warburg. Those sales were matched with equity swaps for 31 million Rubicon shares. It entered into master agreements with Deutsche Bank and UBS Warburg in relation to all the swaps. Perry Corporation subsequently bought further shares in Rubicon. On 6 June 2001 it sold 10 million shares to Deutsche Bank, matched by equity swap transactions. In each case, Deutsche Bank and UBS Warburg held the Rubicon shares as a hedge for the equity swap, although they were not obliged to do so.

In late June 2002, Guinness Peat Group plc (GPG) started buying shares in Rubicon, aiming to establish a holding of just under 20 per cent of the capital.

On 11 July 2002, all the equity swaps were unwound and cash-settled. Perry Corporation purchased 17 million shares from UBS Warburg and 19 million shares from Deutsche Bank. This enabled Perry Corporation to vote on those securities at Rubicon's first annual meeting.

Perry Corporation filed substantial security holder notices on three occasions. On 23 April, it disclosed a holding of 10.18 per cent  [*3]  as at 6 April 2001. On 5 June 2001, it gave notice that it had ceased to be a substantial security holder, and on 11 July 2002, it disclosed a holding of 15.98 per cent following the purchase from Deutsche Bank and UBS Warburg.

GPG instituted proceedings, alleging that Perry Corporation had breached the provisions of the Securities Markets Act 1988 by failing to give notice of a relevant interest in Rubicon in respect of the shares held by Deutsche Bank and UBS Warburg as a hedge for the equity swaps. It claimed damages to recover the premium it had paid for Rubicon shares and orders that Perry Corporation be required to forfeit or sell down its shareholding.

The High Court held that no disclosure obligation was created merely by being party to a cash-settled equity swap transaction. Based on the communications between the parties and the failure to call certain witnesses, the Court went on to hold that Perry Corporation had an arrangement or understanding with Deutsche Bank and UBS Warburg respectively, giving it the power to reacquire the Rubicon shares. It was accordingly required to disclose its interest under the Act. The Court ordered that one-third of the shares held by Perry [*4] Corporation be forfeited, and that a further two-thirds be sold within 180 days.

Perry Corporation appealed against the finding that there was an arrangement or understanding, and contended in the alternative that the orders were disproportionate to any breach of the Act. Perry Corporation also argued that the High Court had wrongly imposed an onus on it to show that no arrangement or understanding existed. GPG sought to support the judgment on other grounds, claiming that a disclosure obligation arose under s 5(2) of the Securities Markets Act because Deutsche Bank and UBS Warburg were "accustomed to act" in accordance with Perry Corporation's directions, instructions or wishes.

**Held:**

1 (Keith J dissenting in part) Section 30 of the Securities Markets Act conferred jurisdiction on the Court to make a range of orders where there were reasonable grounds to suspect that a substantial security holder had not complied with the disclosure requirements of the Act. There had to be reasonable grounds to suspect both that a person was a substantial security holder and that there had been non-disclosure. This requirement was lower than the ordinary civil standard of proof. Whether the [*5] grounds of suspicion were reasonable had to be judged from the viewpoint of an informed market observer. The Court had to assess on all the admissible evidence whether the case had been proved to the required standard (see paras [34], [39], [40], [206], [211]).

2 (unanimously) The standard of reasonable grounds to suspect applied to the evidence as a whole rather than to each primary fact or inference. The more serious the order being considered, the firmer the basis had to be for the suspicion. It would seldom be appropriate to impose the more Draconian orders allowed by the Act unless the Court was satisfied on the balance of probabilities that there had been non-disclosure by a substantial security holder. While both the legal and evidential burdens rested on the plaintiff, the Court had to consider all the evidence from both parties in coming to a conclusion. The Judge had followed the correct approach in considering whether, on the basis of all the evidence, there were reasonable grounds to suspect that an arrangement or understanding existed (see paras [41], [42], [48], [50], [51], [206]).

3 The terms "arrangement" and "understanding" described something less than a formal [*6] contract. What was involved was a meeting of minds with an expectation as to future conduct. That involved communication between the parties, although such communication did not have to be formal or verbal. The commercial reality was that it was almost certain as a matter of fact that the shares would be available to Perry Corporation on demand and would be sold to Perry Corporation on termination of the swaps. However, mutual expectations based on commercial reality were not sufficient to give rise to an arrangement or understanding. The power to control the securities had to arise by virtue of the arrangement or understanding, and not merely as a result of its performance (see paras [57], [60], [61], [62], [66], [69], [73], [75], [78], [206]).

4 In some circumstances, the failure of a party to call a witness might allow an inference that the missing evidence would not have helped a party's case. This could only occur where the party would be expected to call the witness, where the evidence would explain or elucidate a particular matter required to be explained or elucidated, and the absence of the witness was unexplained. The result of such an inference was not to prove a party's [*7] case, but to strengthen the weight of evidence (see paras [153], [154], [206]).

5 Given that it was highly likely that the shares would be available for repurchase, it was inherently unlikely that Perry Corporation would have needed to enter into any arrangement with Deutsche Bank. No reasons to justify such an arrangement had been suggested. The management controls exercised by the bank also diminished the likelihood of any such arrangement. The factors which could have raised a reasonable suspicion were outweighed by those pointing to there being no arrangement. On the balance of probabilities, there was no arrangement between Perry Corporation and Deutsche Bank. In the circumstances, an arrangement could not have been proved by inferences drawn from the failure

[2004] 1 NZLR 731; 2003 NZLR LEXIS 76, *

to call any witnesses. Similar considerations applied in the case of UBS Warburg (see paras [185], [186], [187], [190], [191], [206]).

6 The policy behind s 5(2) of the Act was to enable the Court to look behind the holder of a relevant interest to a person exercising de facto control of securities. It was difficult to argue that Perry Corporation's equity swap partners were accustomed to act in accordance with Perry Corporation's [*8] wishes in relation to Rubicon shares. The evidence was insufficient to draw any such inference (see paras [194], [198], [200], [206]).

Appeal allowed; orders made by High Court set aside.

## CASES-REF-TO:

### Cases mentioned in judgments

*Agreement of Mileage Conference Group of Tyre Manufacturers' Conference Ltd, Re* [1966] 1 WLR 1137; [1966] 2 All ER 849.

*Auckland Regional Authority v Mutual Rental Cars (Auckland Airport) Ltd* [1987] 2 NZLR 647.

*Australian Competition and Consumer Commission v CC (NSW) Pty Ltd (No 8)* (1999) 92 FCR 375; 165 ALR 468.

*Australian Securities Commission v AS Nominees Ltd* (1995) 133 ALR 1.

*Brandi v Mingot* (1976) 12 ALR 551.

*Claiborne Industries Ltd v National Bank of Canada* (1989) 59 DLR (4th) 533.

*Commerce Commission v Caltex New Zealand Ltd* (1999) 9 TCLR 305 (CA).

*Cubillo v Commonwealth of Australia* (2000) 174 ALR 97.

*Dairy Containers Ltd v NZI Bank Ltd* (1994) 7 PRNZ 465, [1995] 2 NZLR 30.

*Dilosa v Latec Finance Pty Ltd* (1966) 84 WN (NSW) 557.

*Hydrodan (Corby) Ltd, Re* [1994] 2 BCLC 180; [1994] BCC 161.

*Ical Ltd v County Naetwest Securities Australia Ltd* (1988) 13 ACLR 129; 6 ACLC 467.

*Inland Revenue (Commissioner of) v BNZ* [*9] *Investments Ltd* [2002] 1 NZLR 450 (CA).

*Innes v Ewing* [1989] 1 NZLR 598.

*Jones v Dunkel* (1959) 101 CLR 298; [1959] ALR 367.

*Meridian Global Funds Management Asia Ltd v Securities Commission* [1994] 2 NZLR 291 (CA).

*New Zealand Apple and Pear Marketing Board v Apple Fields Ltd* [1991] 1 NZLR 257 (PC).

*Nomoi Holdings Ltd v Elders Pastoral Holdings Ltd* (Court of Appeal, CA 79/00, 17 July 2001).

*Payne v Parker* [1976] 1 NSWLR 191.

*Pepi Holdings Ltd v BMW New Zealand Ltd* (Court of Appeal, CA 21/97 & 22/97, 25 August 1997).

*Police v Anderson* [1972] NZLR 233 (CA).

*Police v Cooper* [1975] 1 NZLR 216 (CA).

*R v Sanders* [1994] 3 NZLR 450 (CA).

*Richmond Ltd v PPCS Ltd* (2003) 9 NZCLC 263,115.

*Secretary of State for Trade and Industry v Deverell* [2001] 1 Ch 340; [2000] 2 All ER 365 (CA).

*Securities Commission v Honor Friend Investment Ltd* (1991) 5 NZCLC 67,512.

*Trade Practices Commission v Email* (1980) 31 ALR 53; (1980) 43 FLR 383.

## INTRODUCTION:

[2004] 1 NZLR 731; 2003 NZLR LEXIS 76, *

### Appeal

This was an appeal by Perry Corporation and Richard C Perry from the judgment of Potter J (reported at [2003] 2 NZLR 216) holding, on a claim by Ithaca (Custodians) Ltd, the first respondent, and Guinness [*10] Peat Group plc, the second respondent and owner of Ithaca, that Perry Corporation had breached the Securities Markets Act 1988, and imposing penalties under that Act in respect of Perry Corporation's shareholding in Rubicon Ltd, the third respondent.

### COUNSEL:

*A R Galbraith QC* and *C M Stevens* for Perry Corporation.

*R J Asher QC* and *M R Dean* for Ithaca and GPG.

*J A Farmer QC* and *R J C Partridge* for Rubicon.

### JUDGMENT-READ: *Cur adv vult*

The judgment of Gault P, Blanchard, Anderson and Glazebrook JJ was delivered by

### JUDGES: Gault P, Keith, Blanchard, Anderson and Glazebrook JJ

### JUDGMENT BY: GLAZEBROOK J. [For table see original] KEITH J.

### JUDGMENTS: *Introduction*

[1] Perry Corporation held shares in Rubicon Ltd (Rubicon). In late May and early June 2001 it sold most of those shares to Deutsche Bank and UBS Warburg, at the same time entering into matching equity swap contracts in respect of Rubicon shares. In July 2002 all of the swap positions were unwound and the Rubicon shares held as a hedge by the banks were purchased by Perry Corporation. There had also been a partial unwind of the Deutsche Bank swaps in September 2001.

[2] Guinness Peat Group (GPG) and Ithaca (Custodians) Ltd (a GPG subsidiary holding [*11] GPG's share investments in New Zealand) claim that Perry Corporation breached the substantial security holder disclosure requirements under the Securities Amendment Act 1988 (from 1 December 2002 renamed the Securities Markets Act 1988) by not continuing to disclose an interest in Rubicon after the swaps had been entered into.

[3] Potter J, in a decision now reported at [2003] 2 NZLR 216, held that the mere fact of being a party to a cash-settled equity swap creates no disclosure obligations under the Securities Markets Act. She held, however, that Perry Corporation and Deutsche Bank and UBS Warburg respectively had an arrangement or understanding that gave Perry Corporation the power to reacquire the Rubicon shares held by the banks as a hedge for the equity swaps and thus that Perry Corporation was required to disclose an interest by virtue of s 5(1)(f) of the Securities Markets Act. She ordered one-third of the 36 million voting shares in Rubicon held by Perry Corporation to be forfeited and that Perry Corporation must sell a further 24 million shares within 180 days. She also ordered that no distributions be made on those shares while they were still held by Perry Corporation [*12] and that no voting rights be exercised on them. No damages were awarded to GPG as the Judge was not satisfied that GPG had suffered any loss.

[4] Perry Corporation appeals against the finding that there was an arrangement or understanding. In the event it is unsuccessful, it appeals against the forfeiture and sale orders, on the basis that such orders were disproportionate to the nature and consequences of any breach.

[5] GPG does not cross-appeal on whether the equity swaps per se give rise to a disclosure requirement or on the question of damages. It does seek to support the judgment on other grounds, namely that a disclosure obligation arose by virtue of s 5(2) of the Securities Markets Act. Potter J did not deal with this point given her decision that the arrangements existed.

[6] Rubicon described its stance in the High Court proceedings as neutral, although it participated in the hearing. Rubicon's submissions on this appeal were directed to challenging findings on Rubicon's role that it considered adverse to Rubicon's interests. It also made submissions on the question of remedy in the event that Perry Corporation's appeal is unsuccessful. Rubicon submitted that a sale of [*13] 24 million shares over a period of six months would create a

significant market "overhang" that would prejudice Rubicon's other shareholders. GPG does not object to a modification of the sale order to accommodate Rubicon's concerns.

[7] The issues for this appeal therefore are:

(a) Was the Judge correct to hold that there was an arrangement or understanding between Perry Corporation and the swap counterparties in terms of s 5(1)(f) of the Securities Amendment Act (now the Securities Markets Act) and thus that it had a relevant interest in the Rubicon shares?

(b) If not, did Perry Corporation have a relevant interest by virtue of s 5(2)?

(c) If there was a relevant interest, were the orders as to forfeiture and sale disproportionate to any breach or otherwise inappropriate?

[8] There is a preliminary question whether Potter J wrongly imposed a reverse onus on Perry Corporation to establish, on the balance of probabilities, that no understanding or arrangement existed. Before turning to those issues we set out the legislative and factual background and provide a summary of Potter J's judgment.

[9] For the reasons given in this judgment we have not been persuaded the Judge [*14] erred in her approach to the onus of proof. After analysing the evidence we have reached a conclusion different from that of the Judge on the central issue whether there was an arrangement or understanding under which Perry Corporation had the power to acquire the shares in Rubicon held by the swap counterparties. We are satisfied that the market reality was that the shares would be available for purchase and that the independent recognition of that by the parties did not constitute an arrangement or understanding. We do not consider s 5(2) has application. Accordingly it is unnecessary to address remedy issues.

*The legislation*

[10] As indicated above, the relevant legislation at the time of the transactions was the Securities Amendment Act 1988, since renamed the Securities Markets Act 1988. The genesis of the Securities Markets Act was a 1981 Securities Commission (the commission) report, "Nominee Shareholdings in Public Companies: A Review of the Law and Practice with a Proposal for Reform". The commission there recommended the introduction of a disclosure regime. It considered that a market needed to be informed in order to be efficient and this was not possible where vital [*15] information such as the identity of those who control or influence a company's operation was unavailable.

[11] The disclosure regime is set out in ss 20 - 22 of the Securities Markets Act. It requires substantial security holders to notify the public issuer and the Stock Exchange of a "relevant interest" in the voting securities of a public issuer, of changes to that stake of 1 per cent or more, and of any changes in the nature of the relevant interest.

[12] A substantial security holder is defined in s 2 as a person (including a company) who holds a relevant interest in 5 per cent or more of the voting securities (securities conferring voting rights at shareholder meetings) of a public issuer. A relevant interest is very broadly defined in s 5 to encompass not only beneficial ownership of securities but situations where, in practice, a person has a right or power to control what happens in relation to the securities. In particular s 5(1)(f) includes a person who, under or by virtue of any trust, agreement, arrangement or understanding relating to the security, may at any time have the power to acquire or dispose of the security or have the power to control the acquisition or [*16] disposition of the security by another person. Section 5(2) extends the definition of a relevant interest further by providing that, where a person has a relevant interest by virtue of s 5(1) and is accustomed or obliged to act in accordance with another person's instructions or wishes in relation to voting, acquisition or disposition of the securities, then that other person also has a relevant interest in the securities.

[13] Section 30 confers jurisdiction on the Court to make a wide range of orders under s 32 where there are "reasonable grounds to suspect" that a substantial security holder has not complied with the disclosure requirements. The Court may also, pursuant to s 34, award compensation when shares have been bought or sold in circumstances where a substantial security holder has not disclosed any relevant interest.

[14] The relevant provisions are set out in full in appendix five to this judgment [not included in this report].

*Background*

[15] Perry Corporation is a United States-based corporation, which manages and controls a number of investment funds of the type commonly known as "hedge funds". Mr Richard Perry is the sole shareholder. Perry Corporation's [*17] investment philosophy is to focus on companies it determines are undervalued. Generally it looks for investments

where management's philosophies and strategies are compatible with its own. This is because a key component of its investment approach is to build strong relationships with senior management of the relevant companies regardless of the size of the investment. Perry Corporation's funds under management at the end of 2002 were some US$5b of net assets.

[16]  Rubicon was incorporated on 22 January 2001 following the Court-approved separation of Fletcher Challenge Ltd and was listed on the New Zealand and Australian Stock Exchanges on 26 March 2001. It was created to assist in the Fletcher Challenge separation process by acquiring assets that Shell was not able to acquire as part of its acquisition of Fletcher Challenge Energy (Fletcher Energy) and by supporting the capital raisings of Fletcher Challenge Forests (Fletcher Forests) which were necessary for that company to stand alone from the Fletcher Challenge group. As a result of those capital raisings a Rubicon subsidiary, Rubicon Forest Holdings Ltd, acquired a 17.6 per cent shareholding in Fletcher Forests.

[17]  A second [*18]  role envisaged for Rubicon was as a business development company. To move forward with this role Rubicon began intensive portfolio and capital restructuring. This included Rubicon's total exit from its energy portfolio (leaving Rubicon with primarily forest-related assets). The immediate focus was on the disposition of non-core assets and the return of cash to shareholders rather than on new investment opportunities. Rubicon started life with around 38,000 shareholders, most of whom received their shares as a result of holding shares in Fletcher Energy. As expected, many elected to sell out following Rubicon's listing and the turnover of the Rubicon share register was high. By July 2001 there had been a consolidation in Rubicon shareholdings with the number of shareholders declining significantly.

[18]  On the listing day Perry Corporation had become a shareholder in Rubicon through its shareholding in Fletcher Energy, holding about 4.2 per cent of the total number of Rubicon shares. By April 2001 its shareholding had increased to 10.18 per cent. On 31 May 2001 Perry Corporation sold 14 million Rubicon shares to Deutsche Bank and 17 million Rubicon shares to UBS Warburg. These sales [*19]  of Rubicon shares were matched by Perry Corporation entering a number of equity swaps transactions with Deutsche Bank and UBS Warburg as counterparties. The swaps in question were allocated to particular funds administered by Perry Corporation.

[19]  It is useful at this point to set out the nature of an equity swap. This was discussed in some detail at paras [45] - [64] of Potter J's judgment. In brief, an equity swap transaction is a means of achieving economic exposure to equity securities without physically holding those securities. In a typical simple swap transaction one party (termed the "equity amount payer") will pay an equity return calculated on the basis of returns on notional underlying shares while the other party will pay a return based on a financing rate (the fixed or floating amount payer). A diagrammatical representation is contained in appendix one [not included in this report].

[20]  Usually such swaps are cash-settled, meaning that only cash payments will be made by one party to the other and with no physical delivery of the shares to the fixed or floating amount payer at termination of the swap. However, it would be usual for the equity amount payer to hedge [*20]  its position so as not to be exposed to equity risk. This will often, but not always, be achieved by holding physical securities to match (either wholly or in part) the notional securities that are the subject of the swap. A hedge can also be achieved by holding a different stock (for example, a security in the same industry or sector, or the same company listed on a different exchange), futures or options or by entering into an off-setting equity swap.

[21]  Perry Corporation has entered into master agreements with Deutsche Bank and UBS Warburg in relation to all of its swaps. These are documented using the standard International Swap Dealers Association (ISDA) documentation. Individual confirmations in relation to particular swaps are then issued. The terms of the swaps at issue are set out in detail in the judgment of Potter J at paras [74] and [76]. For present purposes we note only that the UBS Warburg confirmations show that the final equity price for the UBS Warburg swaps was set at the weighted average execution price at which UBS Warburg unwinds its hedge in connection with the transaction. The termination date was set at 31 August 2001 but the swaps were rolled over on three [*21]  occasions, to 30 November 2001, then to 28 February 2002 and finally to 28 February 2003. Either party could, however, terminate the swaps early on three business days' written notice. For Deutsche Bank the final equity price was to be the closing price of the shares as quoted by the New Zealand Stock Exchange on the valuation date, which, if the swaps went until termination date, was to be 3 July 2002. In the event there was no such price because of a market disruption event, then the price was to be set at the price on the first succeeding exchange business day where there was no such market disruption. An early termination option on 60 calendar days' notice was available to either party.

[22]  Perry Corporation made further purchases of Rubicon shares after the 31 May 2001 swaps were entered into (which had reduced Perry Corporation's shareholding in Rubicon to 2.89 per cent). On 1 June Perry Corporation's

[2004] 1 NZLR 731; 2003 NZLR LEXIS 76, *

shareholding was 4.895 per cent (as recorded in a substantial security holder notice of 5 June 2001) and by 5 June 2001 Perry Corporation had increased its shareholding to 4.966 per cent. A further ten million Rubicon shares were then sold to Deutsche Bank on 6 June 2001, matched [*22] by equity swaps transactions on similar terms to those described above. Perry Corporation's shareholding was thus reduced to 2.13 per cent.

[23]  On 5 September 2001 Perry Corporation partially unwound its equity swap position with Deutsche Bank and purchased five million Rubicon shares from Deutsche Bank to match a short position it had taken in order to participate in a Rubicon buy-back which Rubicon had announced after the sale of various energy-related assets. This left Perry Corporation with less than 1 per cent of Rubicon's capital. Perry Corporation then began to purchase again, increasing its shareholding to 3.08 per cent as at 5 June 2002.

[24]  Towards the end of June 2002 GPG decided to start buying shares in Rubicon. The aim was to establish a holding of just under 20 per cent (to avoid the 20 per cent threshold for a full takeover offer). The major portion of the shares was acquired in an overnight book-build on 3 July 2002 which resulted in GPG holding 19.87 per cent of the shares in Rubicon. GPG filed a substantial security holder notice on 4 July.

[25]  GPG also had a direct shareholding in Fletcher Forests, which at that time proposed to buy the Central North Island [*23]  Forestry Partnership's (CNIF) forestry estate, which was for sale by CNIF's receivers. As a part of that transaction Fletcher Forests was to buy back the shareholding of the Rubicon subsidiary, Rubicon Forest Holdings Ltd. The consideration was to be the transfer of forestry assets. Rubicon was also to sell further Fletcher Forests shares for approximately NZ$48.5m if the transaction went ahead. GPG did not consider this proposal to be to Rubicon's long-term benefit or in the best interests of New Zealand's forestry industry. By contrast, Perry Corporation supported this proposal. There were also other Fletcher Forests shareholders which opposed the transaction, including Xylem, a US forestry investment fund with a shareholding of 7 per cent.

[26]  On 11 July 2002 all Perry Corporation's swap positions in relation to Rubicon shares were unwound and cash-settled. Perry Corporation also purchased 19 million and 17 million shares from the respective counterparties. The immediate trigger for the purchase of the shares was to enable Perry Corporation to vote, if necessary, at the first Rubicon annual general meeting to be held on 19 July 2002.

[27]  Perry Corporation filed three relevant [*24]  substantial security holder notices. The first was dated 23 April 2001 and was filed late. This notice showed "Richard C Perry" as holding 10.18 per cent of the Rubicon shares on issue and reflected Perry Corporation's holding as at 6 April 2001. The second substantial security holder notice dated 5 June 2001 showed that Perry Corporation had ceased to be a substantial security holder, having reduced its holdings to 4.895 per cent. Perry Corporation's third substantial security holder notice was dated 11 July 2002. It showed Perry Corporation holding 15.98 per cent of the Rubicon shares and recorded the 17 million shares purchased from UBS Warburg and the 19 million shares purchased from Deutsche Bank.

[28]  In appendix two we provide, for ease of reference, a list of the personnel of the various entities involved who are referred to in this judgment. We also provide a chronology of the main events in appendix three [appendices not included in this report].

*Potter J's judgment*

[29]  As indicated above, Potter J held that the mere fact of entry into a cash-settled equity swap creates no disclosure obligations under the Securities Markets Act. She found, however, that Perry Corporation [*25] retained a relevant interest in Rubicon shares sold to Deutsche Bank and UBS Warburg under equity swaps because there was an arrangement or understanding pursuant to which Perry Corporation could repurchase the Rubicon shares from Deutsche Bank and UBS Warburg if it wished. The Judge's conclusion was based on the following factors:

(a)  Perry Corporation entered into the equity swaps in order to avoid the disclosure requirements under the Act.

(b)  Throughout the relevant period Rubicon treated Perry Corporation as being a substantial shareholder.

(c)  Perry Corporation was confident that the shares would be available for repurchase when they were needed before the Rubicon annual general meeting.

(d)  Mr Moriarty (of Rubicon) was also confident that Perry Corporation could repurchase the shares.

(e)  The language used in a telephone conversation of 8 July 2002 between Mr Rosen of Perry Corporation and Mr Madan of Deutsche Bank showed a mutual understanding that the shares would be available for purchase.

(f) On both occasions when Perry Corporation needed large parcels of shares urgently - for the Rubicon buy-back, and when it wanted to be able to exercise voting rights [*26] at the Rubicon annual general meeting of 19 July 2002 - equity swaps were terminated on less notice than the contracts provided for and shares were repurchased.

(g) Perry Corporation had been described as a shareholder in discussions with Mr Gibbs of GPG.

(h) Both Rubicon and Perry Corporation were concerned about GPG's intentions and wished Perry Corporation to be able to exercise its voting rights as a major shareholder at the annual general meeting.

[30] Adopting the rule in *Jones v Dunkel* (1959) 101 CLR 298, Potter J also drew an adverse inference from the failure of certain witnesses, including Mr Perry and Mr Madan, to give evidence that the Judge said was likely not only to be helpful and relevant but possibly crucial. She also set out a number of factors she considered to be neutral, notably the evidence of Mr Cohen from Deutsche Bank and Mr Gray of UBS Warburg.

[31] In terms of remedy Potter J rejected GPG's claims for damages under s 34 of the Securities Markets Act and alternatively under the Fair Trading Act 1986 on the basis that GPG had not suffered compensatable loss. She did, how-ever, make orders under s 32 of the Securities Markets Act. Taking into account [*27] a number of factors, including that the non-disclosure was deliberate, that it lasted over 12 months and related to 36 million shares, the need for deter-rence and the nature of Perry Corporation as a sophisticated investor, the Judge considered that the s 32 orders should attempt to achieve the situation that Perry Corporation disclosed to the market; that is, as a holder of less than 5 per cent of Rubicon. Therefore, she ordered forfeiture of 12 million Rubicon shares (one-third of the 36 million voting securities that the equity swaps related to and that were not disclosed) valued at approximately $8m; that within 180 days of the judgment Perry Corporation must sell the remaining 24 million shares in an on-market, arm's length transaction; and that, in respect of the 24 million shares that are to be sold Perry Corporation shall not exercise voting rights or receive any payments from Rubicon in relation to them pending the sale.

*Onus of proof*

[32] Mr Galbraith QC, for Perry Corporation, submitted that Potter J wrongly imposed a reverse onus on Perry Corporation to provide a credible explanation that would serve to negate the conclusion she had drawn that an arrange-ment or understanding [*28] existed with each of the counterparties to the swaps. He submitted that there is only one ultimate onus in a case and that rests on the party making the allegation, who must establish facts and inferences on which the Court can come to a conclusion of reasonable suspicion. In his submission there is no onus on the defendant and certainly no obligation to establish that there is no arrangement or understanding on the balance of probabilities.

[33] Mr Asher QC, for GPG, submitted that Potter J applied the standard of proof and onus that this Court has held to be the appropriate approach to s 30 of the Act in *Meridian Global Funds Management Asia Ltd v Securities Commis-sion* [1994] 2 NZLR 291 at p 296.

[34] Section 30 confers jurisdiction on the Court to make a range of orders under s 32 where there are reasonable grounds to suspect that a substantial security holder has not complied with the disclosure requirements of the Act. With respect to Keith J we consider that the reasonable grounds to suspect qualifies both whether a person is a substantial security holder and whether there has been non-disclosure. This is clear in our view on the wording and because that interpretation [*29] accords with both the policy behind the legislation and with precedent - see for example *Meridian* at p 296 and *Securities Commission v Honor Friend Investment Ltd* (1991) 5 NZCLC 67,512, the first-instance judg-ment in *Meridian* .

[35] In *Meridian* this Court endorsed the approach to s 30 that the High Court had taken in that case. The High Court had operated on the basis that, while the existence of the relevant interest must be established only to the extent of a reasonable suspicion, the facts on which the suspicion was founded require proof to the usual civil standard of the balance of probabilities. The Court said at p 296:

"The powers conferred on the Court by s 32, which extend to depriving an offender of many of the rights of a shareholder, even of the shareholding itself, are extensive and potentially Draconian, yet are exercisable merely on 'rea-sonable grounds to suspect'. Heron J approached his task on the footing that while the existence of the 'relevant interest' had to be established only to the extent of reasonable suspicion, the facts on which the suspicion was founded required proof to the usual civil standard, that is, on the balance of probabilities. [*30] We consider that to be the correct ap-proach. Except in the event, unlikely in a disputed case, that there is direct proof, interest can be established only by the process of inference. It is to that process to which the words 'reasonable grounds to suspect' relate. Inferences may be drawn only from facts, and the statute does not depart from that fundamental. But once the facts are established, the

statute requires the less stringent process of deduction on the basis of reasonable suspicion, which would not be enough in an ordinary civil case, to say nothing of a criminal case."

[36] The phrase "reasonable grounds to suspect" or "reasonable cause to suspect" is a phrase that has been used in a variety of legislative contexts, including the Antiquities Act 1975, Customs and Excise Act 1996, Arms Act 1983, Passports Act 1992 and the Crimes Act 1961. In many cases it sets the threshold for beginning a process. For example, if a Customs officer has reasonable cause to suspect that a person arriving in New Zealand and entering into a Customs port or airport has hidden any dutiable or prohibited goods on his or her person, the officer may cause that person to be detained and searched [*31] (s 149 of the Customs and Excise Act 1996). Similarly a member of the police who has reasonable grounds to suspect that a person is carrying a firearm in a public place in breach of the Arms Act 1983 may, without warrant, search that person, detain them for the purpose of the search and seize any such firearm found (s 60 of the Arms Act). In other cases it can be seen as an ingredient of an offence. For example, s 31 of the Passports Act prescribes an offence of using a New Zealand passport for the purpose of travel and without reasonable excuse knowing or having reasonable cause to suspect that it has expired or been cancelled.

[37] Where "reasonable cause to suspect" is a threshold issue this Court has held, in *Police v Anderson* [1972] NZLR 233 in the context of the then breath-testing regime, that whether an officer has reasonable cause to suspect that a person is driving while under the influence of alcohol is a question of fact to be proved to the civil standard of the balance of probabilities. It has also been held that the officer may consider, according to its weight, all relevant material before him or her, whether derived from personal observation or inquiry or hearsay [*32] reports alone - see *Police v Cooper* [1975] 1 NZLR 216 at p 221.

[38] Unlike in most of the contexts discussed above, under the Securities Markets Act there is no further process to be undertaken. If reasonable grounds to suspect are found then jurisdiction exists to make orders under s 32. In these circumstances to require proof merely on the balance of probabilities that there are reasonable grounds to suspect would lower what is already a low threshold. We consider, therefore, that the phrase "reasonable grounds to suspect" in s 30 in itself sets the standard of proof required.

[39] A requirement that there be "reasonable grounds to suspect" or "reasonable cause to suspect" is obviously lower than the ordinary civil standard of proof. It is lower than that required for the issue of a search warrant under s 198 of the Summary Proceedings Act 1957. Section 198 requires the issuing judicial officer to be satisfied that there is "reasonable ground for believing" that in the place to be searched there is evidence as to the commission of an offence. Any such belief must go beyond mere suspicion so that the judicial officer must have the belief that the state of affairs in [*33] question actually exists - see *R v Sanders* [1994] 3 NZLR 450 at p 461. Fisher J also in that case expressed the view that even suspicion:

". . . probably goes beyond mere recognition that something is possible to the point that, while final judgment must be suspended pending proof, the proposition in question is regarded as inherently likely."

[40] We consider that in the present context the term "suspect" means what it says. Whether the grounds of suspicion are reasonable must, however, be judged objectively from the viewpoint of an informed market observer. This means that it is nevertheless a low standard. In our view a Court must, under s 30, assess whether on all of the admissible evidence, including that adduced by the defendant and on the basis of both primary facts and inferences, the case is proved to the requisite standard, being the standard of "reasonable grounds to suspect".

[41] The question remains whether all primary facts must be proved to the ordinary civil standard as this Court appeared to be suggesting in *Meridian* . We do not think that this Court in *Meridian* was suggesting an absolute rule to that effect. Even in cases where the standard of [*34] proof is the ordinary civil standard of balance of probabilities, that standard does not apply to each individual primary fact or inference. It applies to the evidence as a whole. The Court in *Meridian* was in our view merely making it clear that the more serious the order being considered, the firmer the basis for the suspicion must be. As pointed out in *Meridian* , the orders that can be made under s 32 are wide-ranging. They range from orders directing compliance with disclosure obligations to potentially Draconian penalties, such as orders to dispose of shares and forfeiture orders. We consider (despite the way the point was phrased) that the Court was merely endorsing the High Court approach as appropriate in the circumstances of that case. This was in the context of the seriousness of the allegations involved and the nature of the penalties being considered.

[42] Indeed, in our view it would seldom (if ever) be appropriate to impose the more Draconian orders (at least on a final basis) unless the Court were satisfied on the balance of probabilities that there had been non-disclosure of a rele-

vant interest by a substantial security holder. Potter J made this point at para [*35]  [26] of her judgment, quoting from William Young J in *Richmond Ltd v PPCS Ltd* (2003) 9 NZCLC 263,115 at p 263,122, para [25] where he said:

"[25] The reasonable grounds to suspect jurisdictional threshold is obviously appropriate to a number of the orders which can be made by this Court under s 32, particularly orders which are of an in-substance interlocutory nature. In practical terms, however, it seems inherently unlikely that a Court would make an order with a substantive effect (eg forfeiting shares) unless satisfied that it was at least more likely than not that a particular breach had occurred."

[43]  The next question is which party bears the burden of proof in a case under s 30 of the Securities Markets Act. This Court in *Meridian* said that, although the burden of proof resting on the plaintiff would be satisfied by establishing reasonable grounds to suspect the acquisition of a relevant interest, the suspect could counter this by establishing, on the balance of probabilities, that no such interest had been acquired. It said at p 296:

"This does not mean that an alleged offender must dispel all suspicion in order to be acquitted of a breach of the Act. It means [*36]  rather that the Commission will satisfy the burden of proof resting upon it by establishing reasonable grounds to suspect the acquisition of a relevant interest. The suspect may counter the allegation by establishing, on the balance of probabilities, that no such interest has been acquired. If that is done, there will no longer be reasonable grounds to suspect the contrary."

[44]  It is useful at this stage to distinguish between the various burdens that can arise in a case. Professor C R Williams has recently pointed out in his article "Burdens and Standards in Civil Litigation" (2003) 25 Syd LR 165 that the phrase "burden of proof" is used in two quite distinct senses. He says at p 166, quoting from the American scholar, James B Thayer, *A Preliminary Treatise on Evidence at the Common Law* (1898), p 355, that in one sense it means:

"The peculiar duty of him who has the risk of any given proposition on which the parties are at issue - who will lose the case if he does not make this proposition out, when all has been said and done."

[45]  Professor Williams at p 167 adopts the term "the legal burden" to describe this burden. It has also been described as the "fixed burden", [*37]  the "probative burden" and the "burden of persuasion". The second sense in which the phrase is used is defined by Thayer at p 355 as:

". . . the duty of going forward in argument or in producing evidence, whether at the beginning of a case or at any later moment throughout the trial or the discussion."

[46]  This is usually referred to as the evidential burden. As pointed out by Professor Williams at p 169, there are legal rules which determine in respect of any issue in a case where the legal and evidential burdens lie. These burdens arise at different points in a trial. As Professor Williams says at p 167:

"Where the question is whether a no case submission should be accepted, or whether a particular issue should be left to the jury or considered by the judge in a case tried by judge alone, it is the evidential burden which is in issue. Where the question is what should be done if, at the end of the day, the tribunal is unsure where the truth lies, it is the legal burden that is in issue."

[47]  There is a further complication. The term "evidential burden" is used to refer to two quite distinct notions. In the first sense it means the burden of adducing evidence on an [*38]  issue on pain of having the trial Judge determine the issue in favour of the opponent. This is a question of law. The second sense in which the phrase is used refers to the burden resting upon a party who appears to be at risk of losing on a given issue at a particular point in a trial. This merely involves a tactical evaluation of who is winning at a particular point which can obviously shift depending on the trial dynamics. It has been called the "tactical burden" or the "provisional burden". We will use the first of these phrases, being the one Professor Williams favours at p 168.

[48]  In this case we accept Perry Corporation's submission that there is nothing in the Securities Markets Act to suggest that the legal and evidential burdens do not lie on a plaintiff. It is for the plaintiff to establish that there are reasonable grounds to suspect that a substantial security holder has not complied with the disclosure requirements. There is no legal or evidential burden on a defendant. We do not consider, however, that the Court in *Meridian* was suggesting otherwise. It was in our view referring only to the tactical burden when it made the remarks quoted at para [43] above. [*39]

[49]  The Court was concerned in *Meridian* with setting the standard necessary for holding that it has not been shown that there are reasonable grounds to suspect. It is not necessary that all suspicion is dispelled. If a trial Judge is satisfied on the balance of probabilities that there is or was no non-compliance by a substantial security holder, then that

is sufficient to dispel any reasonable suspicion - or, putting it in terms of the legal rather than the tactical burden, that it has not been proved that there are reasonable grounds to suspect. This assessment would obviously have to be made on the basis of all of the evidence, including that put forward by the defendant.

[50] The Judge in this case followed the correct approach in that she considered first whether on all of the evidence there were reasonable grounds to suspect that an arrangement or understanding existed. She may have considered some of the Perry Corporation evidence (in particular that of Mr Cohen of Deutsche Bank and Mr Gray of UBS Warburg) as neutral but she clearly considered it. She then went on to consider specifically whether the Perry Corporation evidence showed on the balance of probabilities that [*40] there was not an arrangement. This assessment must be made on the basis of all of the evidence and she did in fact consider all of the evidence in coming to her final conclusion at para [222]. There she stated that she was satisfied on the balance of probabilities that there had been an arrangement.

[51] To summarise, what is required in order to invoke a Court's jurisdiction to make orders under s 32 is that, on all of the evidence, there are reasonable grounds to suspect non-compliance by a substantial security holder. That is the standard of proof set by the legislation. On the other hand, the more draconian a penalty that is to be imposed, the firmer the basis for suspicion must be. In the case of the most severe orders such as forfeiture, it will seldom, if ever, be appropriate to impose such penalties if the normal civil standard of proof is not satisfied. Finally, there can be no reasonable grounds to suspect if the Court is satisfied on the balance of probabilities that there is or was no non-compliance by a substantial security holder.

*Was there an arrangement or understanding?*

*Submissions of the parties*

[52] Perry Corporation submitted that, while Potter J correctly [*41] concluded that a cash-settled equity swap contract documented by the standard ISDA agreement does not create a relevant interest as defined in s 5 of the Securities Markets Act, she incorrectly concluded that there was an arrangement or understanding between Perry Corporation and Deutsche Bank and UBS Warburg respectively for Perry Corporation to repurchase the shares held as a hedge.

[53] In Perry Corporation's submission the Judge failed to recognise that it was inherent in the nature of an equity swap that a party in Perry Corporation's position would be confident that on unwind it could establish an equivalent physical shareholding. It therefore had no need to enter into any supplementary arrangements which would have in any case been inconsistent with the documentary safeguards and management controls exercised by Deutsche Bank and UBS Warburg. Perry Corporation submitted that the Judge was wrong to describe the evidence of Mr Cohen of Deutsche Bank and Mr Gray of UBS Warburg in this regard as neutral when it was essential to understanding the normal expectations of parties in equity swaps and the controls imposed by Deutsche Bank and UBS Warburg.

[54] GPG did not challenge [*42] the finding that cash-settled equity swaps per se do not create disclosure obligations. Indeed it says that it never asserted that they do. Its argument always was that there were actual arrangements or understandings in relation to the shares held as a hedge by the banks whereby Perry Corporation could repurchase those shares if it wished to do so. As an alternative, it argued that, even if such arrangements were not articulated, the very inevitability asserted by Perry Corporation means that in the particular circumstances there were s 5(1)(f) arrangements or understandings through the mere entry into the equity swaps.

[55] Rubicon took issue with certain adverse inferences the Judge drew from the evidence in relation to Rubicon's state of knowledge, and in particular the Judge's conclusion that Rubicon believed that Perry Corporation had the ability and the power to repurchase the shares if necessary. In Rubicon's submission this contradicts the finding that Rubicon believed that Perry Corporation did not have a relevant interest. The inferences drawn are adverse to Rubicon's interests because a power to repurchase would give rise to a relevant interest and this would suggest [*43] that Rubicon was aware both of the relevant interest and that Perry Corporation had breached its disclosure obligations which, in Rubicon's submission, was not the case.

*Issues*

[56] The issues therefore are:

(a) whether the mere entry into these particular equity swaps constituted an arrangement or understanding in terms of s 5(1)(f) because of the inevitability of the Rubicon hedge shares being available for repurchase; and

(b) if that question is answered in the negative, whether the Judge was correct to hold that there was an actual arrangement or understanding in relation to the Rubicon hedge shares.

*Inevitability of availability for repurchase?*

[57]  The first issue is whether the entry into these particular equity swaps constituted an arrangement or understanding with the respective counterparties because of the inevitability of the hedge shares being available for repurchase. As Potter J rightly held at para [64], entry into a cash-settled equity swap per se cannot constitute an arrangement or understanding to which s 5(1)(f) applies. If there is such an arrangement or understanding it must relate to any shares held by the counterparties as a hedge. In this case [*44]  the swaps were cash-settled but both Deutsche Bank and UBS Warburg held Rubicon shares as a hedge and indeed Perry Corporation sold those shares to the banks at the same time as entering into the swaps transactions. This means that Perry Corporation could be sure that, at least initially, the banks would hold Rubicon shares as a hedge. The first question is whether it was inevitable that the Rubicon shares would be held as a hedge for the duration of the swaps.

[58]  In the case of Deutsche Bank Mr Cohen said in evidence that the form of hedge would be decided on a case-by-case basis and would not necessarily be static throughout the term of the swap. He said, however, that in the case of an equity swap in respect of a stock like Rubicon, which is neither large nor liquid, it is likely but not necessary that the hedge would be in a holding of the underlying shares themselves. That was the decision taken in this case. Mr Cohen said in evidence that the Rubicon shares were the natural hedge to the swaps and a purchase from Perry Corporation was the quickest, easiest and cheapest way for the bank to acquire such shares.

[59]  Mr Gray of UBS Warburg said that, although there are different [*45]  options available to hedge swaps transactions, as a matter of policy the bank would generally hold matching shares as a hedge. This is because it is operationally and administratively simple in that there is no need constantly to review the holding to ensure that the obligations under the swaps are covered. This would particularly be so where, as was the case with Rubicon, the underlying shares are relatively illiquid, have a relatively small capitalisation and are not easily matched by similar shares. We also remark that the termination price of the UBS Warburg swaps was the price at which the hedge was unwound. It is difficult to see how this could be calculated if UBS Warburg did not hold Rubicon shares as a hedge at termination. We note at this point, however, that even if, as GPG asserts, this constitutes an agreement to hold those shares as a hedge (and we doubt it would be construed in this manner) it certainly is not a commitment to allow repurchase by the counterparty.

[60]  From this evidence we conclude that, if not inevitable, it was almost certain that Rubicon shares would be held by both counterparties as a hedge for the duration of the swaps.

[61]  Mr Gray indicated, [*46]  however, that UBS Warburg is free to use shares it holds as a hedge for its own purposes, in order to generate additional revenue. Mr Cohen gave similar evidence in relation to Deutsche Bank. Shares held as a hedge can be used for stock-lending transactions with other clients, traded internally within the bank, or used as collateral on transactions entered into by the bank. There was thus a possibility that the hedge shares would not be available on demand as they could be used for other purposes such as securities lending. There was no evidence given of actual demand for the Rubicon shares to be used for other purposes but presumably there was the possibility of parties selling short into the Rubicon buy-back, as Perry Corporation did, or indeed selling short into the GPG book-build. This could have created a possible demand.

[62]  On the other hand, we note the illiquid nature of the Rubicon shares and small market capitalisation, which must reduce the likelihood of the shares being used for other purposes. We also remark that committing the shares to other purposes for any length of time would have restricted the ability of the banks to manage the unwind of the hedge in the event [*47]  of an early termination of the swaps. In UBS Warburg's case an early termination of the swaps could take place on three days' notice. While the early unwind period was 60 days for Mr Cohen, his evidence was that, in practice, Deutsche Bank endeavoured to give their client counterparties maximum flexibility, which accordingly meant that most terminations of equity swaps were by arrangement rather than as documented. These factors suggest that it would be almost certain (in UBS Warburg's case) and highly likely (for Deutsche Bank) that the shares would be available (at least within a short time frame) for the duration of the swaps.

[63]  The next question is whether the hedge shares would inevitably have been available for purchase by Perry Corporation if it wished to do so. The first point is that the banks would be willing to sell only if the swaps were terminated at the same time, as otherwise the banks' position under the swaps would be unhedged. Assuming that the swaps were to be terminated, the evidence was that a sale to the counterparty would be administratively the most convenient means of disposal and would reduce transaction costs and risk. We also assume that both banks, [*48]  to ensure good client relations and repeat business, would wish to accommodate Perry Corporation's desire to purchase any shares held as a hedge if possible. We are not suggesting that this would be the case only for Perry Corporation. It would apply to any client.

[64] In addition, in the case of UBS Warburg there was no financial incentive to sell to a party other than Perry Corporation as the termination price of those swaps was the price at which the hedge shares were sold. We would have thought this would make it inevitable, in the case of UBS Warburg at least, that the shares would be sold to Perry Corporation upon the termination of the swaps if Perry Corporation wished to buy, provided UBS Warburg held the shares (and we have found that it was almost certain to have done so). Mr Gray in cross-examination, however, would not accept this proposition. He said that UBS Warburg would not necessarily have sold the shares to Perry Corporation if another party had offered to pay a better price. It is difficult, however, to see why this would be the case as the better price would merely be passed on to Perry Corporation under the terms of the swaps. Mr Gray may have had in mind a [*49] possible credit risk but there is no evidence that this was a concern in relation to Perry Corporation in the relevant period.

[65] In the case of Deutsche Bank, if the unwind had taken place at termination date, there could have been a financial incentive to sell to another party as the termination price for those swaps was the market price at termination. Equally, however, any sale other than to Perry Corporation would have involved the risk that the sale price would differ from that market price, and presumably the reason the bank hedged in the first place was to avoid equity risk. In any event, the termination in this case was an early one and the documentation made provision for that. Mr Cohen said in evidence that early terminations usually take place by arrangement, with 95 per cent or more of equity swaps transactions being terminated early or rolled past the termination dates specified in the documentation. In such cases the bank generally wishes to match the unwind to the liquidation of any hedge. Where the hedge is a particularly large parcel of shares the bank would seek a method of sale that would not impact on the market too seriously. Mr Cohen said that in this case [*50] it was a natural fit to sell the shares to Perry Corporation (or to sell as many as Perry Corporation wished to buy, which in the event turned out to be fewer than the number of shares the bank held). We note also that it is uncertain whether other buyers would have been readily found in the required time frame, given the relatively illiquid nature of the stock.

[66] We conclude therefore that it was almost certain that the shares would be sold to Perry Corporation upon the termination of the swaps if Perry Corporation wished to buy, provided the counterparties held the shares (and we have found in the case of UBS Warburg that this was almost certain and in the case of Deutsche Bank that this was highly likely). We consider that this market reality would have been obvious to any reasonably informed market participant. Mr Rosen, head trader at Perry Corporation, said in evidence that he had always thought it likely that the shares would be held by the counterparties as a hedge. He also said he had thought that, if he wanted to terminate the swaps and purchase the shares, it would be commercially sound for the equity swaps counterparties to sell him those shares.

[67] The final question [*51] therefore is whether this means, as GPG asserts, that merely entering into these particular swap transactions constituted an arrangement or understanding to which s 5(1)(f) of the Securities Markets Act applies. Also at issue is the meaning of "power" in this context since it must be decided whether, "Under, or by virtue of" any agreement, arrangement or understanding, Perry Corporation had the power (in any of the circumstances set out in s 5(4)) to acquire the Rubicon shares from its equity swaps counterparties.

[68] The terms "arrangement" and "understanding" are used in trade practices and taxation statutes and have been the subject of extensive case law and judicial and academic comment. We refer in this regard, for example, to the cases of *New Zealand Apple and Pear Marketing Board v Apple Fields Ltd* [1991] 1 NZLR 257 (PC) at p 261, *Commissioner of Inland Revenue v BNZ Investments Ltd* [2002] 1 NZLR 450 (CA) at pp 465 - 466, *Auckland Regional Authority v Mutual Rental Cars (Auckland Airport) Ltd* [1987] 2 NZLR 647 at p 662, *Commerce Commission v Caltex New Zealand Ltd* (1999) 9 TCLR 305 at pp 314 - 315, *Australian Competition and Consumer Commission v* [*52] *CC (NSW) Pty Ltd (No 8) (1999) 165 ALR 468 at p 500, Trade Practices Commission v Email (1980) 31 ALR 53 at p 66*, and *Ical Ltd v County Naetwest Securities Australia Ltd* (1988) 13 ACLR 129 at p 156.

[69] It is clear from those cases that the terms "arrangement" and "understanding" describe something less than a formal contract. There may be little to distinguish one from the other except the matter of degree, with an understanding likely to be more informal than an arrangement. What is clear from both the trade practices and the taxation context is that a meeting of minds is required. The meeting of minds embodies an expectation as to future conduct, meaning that there is consensus as to what is to be done. This necessarily involves communication. The communication does not, however, need to be formal or even verbal.

[70] Mr Asher submitted that communication may be established by observed conduct as part of the wider commercial context, as was held in the case of *Re Agreement of Mileage Conference Group of Tyre Manufacturers' Conference Ltd [1966] 2 All ER 849 at p 859*. In that case [*53] a group of tyre manufacturers had entered into a scheme that

[2004] 1 NZLR 731; 2003 NZLR LEXIS 76, *

allowed each company, if it wished, to notify the other members of rates they were considering charging under contracts to supply tyres to fleets of motor vehicles. Payment for the tyres related to the miles run by each vehicle. With rare exceptions, which were concealed from other members of the group, all members notified their intended quotations during the life of the scheme, during which time the difference in quotations between companies was minimal. Although the Court accepted that the member companies had acted independently in deciding to use the scheme and that other factors may have contributed to the level tendering, it held that an arrangement came into being as a result of information as to one another's intentions derived from their actual and continued conduct towards one another. The Court considered that the scheme involved mutual obligations, binding in honour and according with each member's individual interest because the continuance of the scheme depended on their general observance.

[71] Mr Galbraith submitted that some caution is required before relying upon such elderly cases. We agree. The case [*54] also arose in unusual circumstances. The voluntary scheme replaced a compulsory scheme whereby, among other things, the group had agreed not to tender at mileage rates lower than the lowest price insisted on by any member at a meeting held in accordance with a specified procedure without first notifying the other members. This compulsory scheme had been the subject of a Court order which had declared that restrictions on minimum permissible quotations were contrary to the public interest and which had accepted the group's undertakings not to give effect to the restrictions nor to enter into any arrangement to like effect. The question was whether the new voluntary scheme was in breach of that order. Relevant to this was the fact that the group members had deliberately abstained from informing their fellow members of their decision to enter into the scheme as they understood that this lack of communication would prevent an arrangement from coming into being. The Court stated at p 859:

"The law is not so subtle or unrealistic as to involve the conclusion that, while an arrangement can come into being as a result of information as to one another's intentions supplied in words or writing [*55] or by a nod or a wink, it cannot come into being as a result of information as to one another's intentions derived from their actual and continuing conduct towards one another."

[72] In the special circumstances of the case, this comment is understandable. In any event, we consider that there was, in fact, actual communication, both as regards the setting up of the voluntary scheme and then communication of the intended quotations. The latter was clearly designed (particularly against the background of the prior compulsory scheme) to ensure that the other members of the scheme behaved in the same manner. There was thus the required consensus and communication.

[73] The analysis which requires communication and consensus for there to be an arrangement or understanding in our view applies equally to the terms as used in s 5(1)(f) of the Securities Markets Act. As there must be a meeting of minds and communication, mutual expectations based on commercial reality (but without such consensus or communication) are not sufficient to give rise to an arrangement or understanding - see also on this point *Richmond Ltd v PPCS Ltd* at para [198].

[74] This conclusion is reinforced by the [*56] fact that a relevant interest arises under s 5(1)(f) when a person has the ability to exercise "power" in relation to the securities. The term "power" involves the notion of domination or command. This necessarily implies an ability on the part of the person who allegedly has the power to bring about the effect desired. We acknowledge that, under s 5(4), a power can be express or implied, exercisable presently or in the future or only on the fulfilment of a condition. It also does not need to be legally enforceable. Nevertheless some form of constraint on one party's actions by the other is required for a power to arise (whether that is enforceable or not) and this necessarily involves communication between the parties.

[75] There is also the further requirement that the power must arise under or by virtue of the arrangement or understanding and not merely as result of its performance - see the discussion by Adrian van Schie in *Insider Trading, Nominee Disclosure and Futures Dealing: an Analysis of the Securities Amendment Act 1988* (1994), p 97. In addition, requiring only something less than a consensus before an understanding or arrangement can be said to exist would not [*57] be apt in this context because of the low threshold required to invoke the Court's jurisdiction to make orders, being mere reasonable suspicion that a substantial security holder has not complied with the disclosure obligations.

[76] Finally, if we hold that knowledge of market reality suffices to create an arrangement or understanding under s 5(1)(f) and that consensus and communication are not required, this would create uncertainty as to the scope of disclosure generally, as it would raise questions about how certain market reality must be before there is an obligation to disclose. In particular it would, in effect, mean that the majority of equity swaps in New Zealand would create disclosure requirements, whether cash-settled or not. There are obvious policy issues involved in extending disclosure requirements to interests under equity swaps as the regime conceptually is directed at voting rights rather than economic inter-

ests. Most equity swaps create only economic interests. Mr Cohen estimated that about 85 - 90 per cent of cash-settled equity swaps are in fact cash-settled. There are also the practical difficulties of possible double disclosure where swap counterparties hold [*58] shares as a hedge.

[77] The evidence from an expert witness on swaps called by Perry Corporation, Mr Chin Chong Liew, was that, although the legislation differs, disclosure of interests in cash-settled equity swaps is not required in Australia, the USA or, in most circumstances, in the UK. At the time he gave evidence the position was the same in Hong Kong but he indicated that legislation to require disclosure of such swaps had recently been passed and was expected to come into force on 1 April 2003. An article written by Mr Chin Chong Liew was tendered where he expressed concern that the new regime would reduce the attractiveness of Hong Kong as an investment jurisdiction. We observe that New Zealand would be, without legislative consideration, out of line with a number of other important jurisdictions, if there is a decision that effectively requires disclosure of interests under equity swaps or causes uncertainty as to whether such disclosure is required.

[78] For the above reasons, we reject the GPG submission that an arrangement or understanding exists merely by reason of Perry Corporation entering into the equity swaps with the knowledge and expectation, because of market [*59] reality, that there would be an ability to repurchase the shares. There would have to be some form of consensus and communication between the parties, confirming that there would be an ability to repurchase, for there to be an arrangement or understanding in terms of s 5(1)(f).

*Actual arrangement or understanding?*

[79] Potter J held that there was an actual arrangement or understanding in relation to the possible reacquisition of the Rubicon shares. She said at para [219] that she was unable to determine on the evidence the exact terms of the arrangement or understanding between Perry Corporation and Deutsche Bank and UBS Warburg respectively. Nor was she able to determine precisely by whom and how it was reached. However, she was satisfied that there was a consensus or meeting of minds between Perry Corporation and the equity swaps counterparties that the shares sold by Perry Corporation when the equity swaps were established were held available for repurchase for the duration of the equity swaps. She said that the arrangement or understanding was known at least to Mr Berg, Mr Rosen, Mr Madan and inferentially Mr Dozier, and that Mr Berg and Mr Rosen knew that Deutsche Bank [*60] and UBS Warburg would act in accordance with it. As indicated above, in reaching her conclusion, the Judge relied on a number of factors. We examine each in turn.

*Avoidance of disclosure*

[80] The first was her finding that Perry Corporation entered into the equity swaps in order to avoid the disclosure requirements under the Securities Markets Act. She rejected the explanation that the move to equity swaps was tax-driven as Perry Corporation had contended. She also rejected the contention that the concern was to avoid publicity generally, rather than specifically to avoid disclosure under the Act. She said at para [187]:

"Perry Corporation saw it as in the best interests of their investors that they should be in a position as a major stakeholder in the company, to contribute their expertise and experience towards increasing the underlying value of Rubicon (particularly in relation to Rubicon's significant stake in Fletcher Forests, though their input covered a wide range of matters), with a view to realising their proportionate share of the gain upon the sale of assets, without the market generally being informed that Perry Corporation assessed it as advantageous to invest substantially [*61] in that outcome."

[81] This finding was one clearly available to her on the evidence. We would not, however, see it as strongly indicative of the existence of an arrangement or understanding, although the rejection of Perry Corporation's explanation may be relevant to an assessment of the general credibility of Perry Corporation's witnesses. Not being liable to disclose an interest is a consequence of entering into an equity swap. If avoiding disclosure was the primary motive for entering into the swaps this would therefore be a legitimate motive (even if some may argue one which is against the spirit of the legislation). It does not appear to us that such a motive would be any more likely to herald a side arrangement or understanding than if the entry into the swaps were tax-driven.

[82] If there had been a reason for Perry Corporation wishing to retain the option of returning to a physical holding, however, this may have indicated the existence of a side arrangement or understanding. In this case Perry Corporation can be seen as being in virtually the same position after entry into the swaps as before. It still had full economic exposure to Rubicon and continued to have influence [*62] over management. Indeed, as the Judge noted at para [146], the level of Perry Corporation's liaison with management increased rather than diminished once the swaps were entered

into. The Judge considered that this was because some within Rubicon knew of the side arrangement but, as indicated below, we do not consider this to be the case.

[83]  The Judge, at para [148], proffered the view that it was highly unlikely that Perry Corporation would have allowed itself to be in a position where it was unable to vote if need be in order to ensure the joint Rubicon/Perry Corporation objectives were not thwarted. She said:

"[148] In making and maintaining their substantial investment in Rubicon, not only in financial terms but in the contribution of experience and expertise, it is in my view highly unlikely that Perry Corporation would have exposed itself and Rubicon to the risk that their mutual objectives could be thwarted by Perry Corporation's inability to exercise votes in respect of the shares that underlay their economic interest, if a critical situation were to arise as indeed it potentially did."

[84]  Mr Rosen of Perry Corporation, speaking of swaps in general, conceded that [*63] the inability to vote could in some circumstances be a disadvantage of holding economic interests through swaps but said that the advantages of swaps outweighed this disadvantage. Mr Berg, also of Perry Corporation, gave evidence that Perry Corporation had never before found it necessary to return to a physical shareholding in order to vote at a meeting. It is possible, however, that the Rubicon investment was in a slightly different position to many of Perry Corporation's other investments. Although for Perry Corporation the investment was relatively small in monetary terms, it held a relatively large proportion of Rubicon shares, being over 10 per cent at the time of entry into the swaps. Normally Perry Corporation investments were under 10 per cent. In economic terms Perry Corporation's exposure had risen to over 15 per cent by June 2001. There was also evidence from Mr Moriarty that Perry Corporation had a slightly negative view of Fletcher Challenge in general. These factors, however, have to be weighed against the background of an almost certain ability to repurchase the shares in any event and the continued influence over management enjoyed by Perry Corporation as discussed [*64] above.

[85]  In addition, there does not seem to be any suggestion that there was dissension among the shareholders of Rubicon at the time of entry into the equity swaps such that it would have seemed necessary to Perry Corporation to ensure an ability to return to holding the physical shares. There was evidence that the early venture capital stance of Rubicon had caused initial concern, but that Rubicon had decided, before Perry Corporation entered into the swaps, that the better short-term strategy was to unlock shareholder value by the disposal of non-core assets. This was a strategy Perry Corporation agreed with. Dissension among shareholders did arise later (around May 2002) in relation to the Fletcher Forests transaction but even that was unexpected to Perry Corporation. Mr Berg explained that he had thought that any economically rational Rubicon shareholder would see the value created from the deal. The first Rubicon shareholders' meeting was also not held until 19 July 2002 which was some 15 months after Perry Corporation's entry into the swaps.

[86]  For completeness, we note that Mr Rosen also gave evidence that, in general, holding an investment through swaps does not limit [*65]  the ability to make a separate sale of shares. If the opportunity arises to sell a large block of stock at a profit Perry Corporation does not need to own the stock to enter into the transaction because it can borrow stock from its prime brokers and sell the borrowed stock short. The short position would be hedged by the economic long position under the equity swaps. Shares can also be purchased in the market with the swaps providing a hedge against increases in the share price.

[87]  No other reason has been suggested for Perry Corporation wishing to ensure an ability to return to a physical shareholding.

*Rubicon treated Perry Corporation as a major shareholder*

[88]  The second factor relied on by the Judge was the fact that, throughout the relevant period, Rubicon treated Perry Corporation as being a substantial shareholder. She pointed out that, without exception or qualification and for more than a year, Perry Corporation was described in board papers, minutes and internal memoranda as a "major shareholder", "our second largest shareholder", and as "owning the shares". Perry Corporation also had ongoing input into the management and direction of Rubicon.

[89]  Potter [*66] J did not accept that this description and treatment arose simply because of Perry Corporation's economic exposure to Rubicon pursuant to the equity swaps. She considered that, from a company's perspective, there is a very real difference between a holder of an interest who may exercise voting power and an investor who has taken a bet on the company's performance (as she put it). Rubicon treated Perry Corporation as a major shareholder and accord-

ingly did not recognise that status for Deutsche Bank and UBS Warburg although they had filed substantial security holder notices disclosing relevant interests in the same shares as supported Perry Corporation's major shareholder status.

[90]  Rubicon's treatment of Perry Corporation as a major shareholder was, for Potter J, amply demonstrated by Mr Moriarty conceding, in the course of cross-examination, that he did not see Perry Corporation's entry into the swaps as a sale. Potter J also considered it significant that Deutsche Bank and UBS Warburg were not considered as major shareholders in relation to the buy-back when they had an absolute discretion in relation to disposal and dealing with the shares. In contrast, serious note was taken [*67] of Perry Corporation's likely participation in the buy-back, which for the Judge made sense only if Rubicon relied on the fact that Perry Corporation could and would make any decisions to sell in relation to the shares held by the swap counterparties.

[91]  From these factors and the close working relationship that had developed between Rubicon and Perry Corporation she inferred that Rubicon would have been given by Perry Corporation to understand and believe that Perry Corporation had the ability and power to reacquire the Rubicon shares if and when the need arose.

[92]  Mr Asher submitted that the Judge's view of the situation was clearly correct. In the absence of other information it could have been expected that Mr Moriarty and Mr Taylor would have relied on Deutsche Bank's and UBS Warburg's substantial security holder notices as recording the true position, whereas in fact they were able to record precisely Perry Corporation's resulting interest as "owner" of Rubicon shares with every change in its position with the swap counterparties. Potter J, in his submission, was entitled to reject Mr Moriarty's explanation that Perry Corporation's description and treatment as a major [*68] shareholder arose simply through its economic exposure to Rubicon and instead find that it arose because of Mr Moriarty's belief, inevitably via Perry Corporation, that Perry Corporation could regain the shares when necessary. This belief was evident from Mr Moriarty's admission that he did not consider that Perry Corporation had sold its shares and from the fact that the swap counterparties were not accorded shareholder status in internal papers or identified as potential sellers into the buy-back. Mr Moriarty had eventually conceded that a mere equity swap investor is not a shareholder so there had to be something more to explain the way in which Perry Corporation was described and treated. This something more was, in Mr Asher's submission, that, as the trial Judge found, Perry Corporation had the power to reacquire the underlying shares at any time.

[93]  On behalf of Rubicon, Mr Farmer QC pointed out that the Judge's finding is inconsistent with her finding that Rubicon had made appropriate inquiries and that its management and board accepted that Perry Corporation was not in breach of its disclosure obligations - see para [152] of her decision. Mr Farmer submitted that it was [*69] natural that Perry Corporation, given its investment philosophy and the size of its economic exposure to Rubicon, would continue to have an interest in improving the value of Rubicon's shares. It was equally natural that Deutsche Bank and UBS Warburg, with no economic exposure to Rubicon, would not have the same interest in how Rubicon performed.

[94]  He submitted that, because of these factors, it was understandable that Rubicon continued to treat Perry Corporation in the manner it did. This is particularly in light of the fact that Perry Corporation appeared to be acting as a de facto spokesperson for other offshore institutional investors. He further submitted that the description of Perry Corporation as a major shareholder was contained only in internal company documents with a circulation to people who were fully aware of the equity swaps. While he accepted that a company would have a concern as to voting interests, he pointed out that it was not until the end of the 15-month period under review that Rubicon even had a shareholder meeting and hence anything to vote on. Mr Farmer submitted that the fact that Mr Moriarty said that he did not see Perry Corporation's entry into [*70] the equity swaps as a sale merely showed that he recognised that, after the sale, Perry Corporation maintained the same economic interest it had prior to the selldown. In regard to Rubicon's interest in Perry Corporation's participation in the buy-back, Mr Farmer submitted that it was not illogical for Rubicon to take account of Perry Corporation's views in relation to the buy-back. It was not unreasonable for Rubicon to expect that, as a practical matter, the banks were unlikely to participate in the buy-back if they believed that Perry Corporation would not participate, because they would otherwise be leaving themselves open to an unhedged exposure to Rubicon's share price performance.

[95]  We accept Mr Farmer's submissions. With respect to the Judge, we would not attach the weight she did to the description in the board papers of Perry Corporation as a shareholder. The terminology is in our view explicable as merely a convenient shorthand in a context where all recipients were clearly aware of the true situation. The evidence was that Perry Corporation wished to remain involved and that throughout the period it sought to provide assistance, including, for example, providing details [*71] of potential forest investors. It had full economic exposure to the performance of Rubicon and was seen as being influential with other offshore institutional investors.

[96]  We note too that Perry Corporation remained a shareholder throughout the relevant period, holding physical shares in Rubicon ranging from a 1 per cent to a nearly 5 per cent shareholding. To this extent then the description of Perry Corporation as a shareholder was legally correct. Mr Rosen explained that it was Perry Corporation's policy to hold a fairly significant portion of its investment in physical shares to enable sale if necessary without shorting the relevant stock (and in some jurisdictions there are restrictions on this). In addition, although we place little weight on it, Perry Corporation believes it important in all markets to be a shareholder of record to obtain all information generally made available to shareholders.

[97]  In the circumstances, we consider that it would have been rather surprising if the Rubicon management had treated Perry Corporation as being unimportant to it. Indeed, the reality of the commercial world is that companies must take into account the interests of a number of [*72] stakeholders. Depending on the circumstances the voting shareholders may not even be the most important group.

[98]  We also comment that Perry Corporation's active approach to its investments, even when in the form of swaps, is likely to distinguish it from many institutional investors. This active approach is consistent with the level of knowledge held by Rubicon of Perry Corporation's exact interest in Rubicon at any time. Mr Moriarty and Mr Taylor both said in their evidence that Mr Berg was quite open with them in relation to Perry Corporation's economic exposure and provided them with details of any changes.

[99]  By contrast, Deutsche Bank and UBS Warburg (because of the swaps) had no economic exposure to Rubicon arising out of the hedge shares. Rubicon was aware of this. It is therefore unsurprising that they were not treated as major shareholders. In addition, they were unlikely to vote the shares. Mr Cohen and Mr Gray said in evidence that the banks would only vote any hedge shares if the value of the swaps was likely to be affected and the issue clear-cut. Mr Cohen, said, for example, that Deutsche Bank would have been unlikely to vote at the 27 August meeting which had [*73]  been scheduled to put the Fletcher Forests proposal to Rubicon shareholders (but which, in the event, did not take place because Fletcher Forests shareholders declined to give the required 75 per cent approval for the proposal to proceed). This was because there appeared to be strong and dissenting views in the marketplace, including those of GPG, on the effect the vote would have on the company. Mr Cohen said that, unless Deutsche Bank saw a direct economic outcome from the vote which would affect the swaps or a direct benefit to the bank, it would probably have abstained from voting.

[100]  We also accept that it was reasonable for Rubicon to expect that the banks would not sell the shares held as a hedge for the equity swaps into the buy-back as that would defeat the purpose of the hedge. UBS Warburg did in fact sell other Rubicon shares into the buy-back and Potter J accepted Mr Gray's explanation that the remaining 17 million shares were retained for hedging the swaps rather than because they were needed to comply with an arrangement or understanding that the shares would be held for the duration of the swaps.

[101]  It was also clear from the evidence that the Rubicon management [*74]  was concerned about the position of Perry Corporation and whether it gave rise to a disclosure obligation. As pointed out by Mr Farmer, despite Perry Corporation's confirmation to Rubicon that the equity swaps did not require disclosure, Rubicon management nevertheless issued a formal notice under s 29 of the Securities Markets Act requiring Perry Corporation to disclose the number of shares in which it held a relevant interest. Similar notices were issued to Deutsche Bank and to the UBS Warburg nominee company. Management telephoned to verify the responses given by the banks and spoke on a number of occasions to Perry Corporation to confirm the position. Further s 29 notices were issued on a quarterly basis and Mr Moriarty sought and received legal advice on the matter.

[102]  If, as the Judge found, the primary motivation of Perry Corporation for entering into the equity swaps was to avoid the disclosure requirement, it appears highly unlikely that it would reveal to the management of Rubicon (who were clearly very anxious about the disclosure requirements) the existence of an arrangement or understanding that meant disclosure was required. This is especially the case as it was [*75]  clear that the Rubicon management would have preferred disclosure. Mr Moriarty said in evidence that he would have seen value in having Perry Corporation identified publicly as a major shareholder of Rubicon.

[103]  In addition, it seems highly unlikely that Mr Moriarty, who is legally trained, would have received such information without realising its significance in relation to the disclosure requirements. If he did receive information about an arrangement or understanding it must be assumed that he was complicit in Perry Corporation's failure to disclose, despite his apparent concern about this question. It also appears that he must have concealed such information from the board. Two of the Rubicon directors, who had given evidence that they were satisfied Perry Corporation had no disclosable interest, were not even cross-examined as to whether they were aware of the existence of an arrangement.

[2004] 1 NZLR 731; 2003 NZLR LEXIS 76, *

Mr Moriarty would no doubt have realised that he would face disciplinary action if his knowledge of an arrangement had come to light. It appears to us unlikely that he would take such a risk, in circumstances where it is difficult to see the advantage of concealment.

[104]  We also point [*76]  out for completeness that, even if Perry Corporation had told the Rubicon management that it could reacquire the shares if necessary, this was not necessarily a matter of disclosing a side arrangement or understanding. It could merely have been the articulation of the market reality we have discussed above. In any case, as Mr Galbraith pointed out, it was never put to Mr Berg that he told Mr Moriarty that Perry Corporation could get the shares back.

[105]  An appellate Court is always reluctant to depart from findings of fact based on an assessment of the evidence given before the trial Judge. It is less reluctant to do so where the question is as to the proper inferences that can be drawn from established facts: see *Nomoi Holdings Ltd v Elders Pastoral Holdings Ltd* (Court of Appeal, CA 79/00, 17 July 2001) at para [5]. In relation to Rubicon's treatment of Perry Corporation as a major shareholder we have differed from the findings of the Judge. Although Potter J clearly did not accept Mr Moriarty's explanation and thus can be seen as having made adverse credibility findings in his regard, the reason she rejected his explanation was because of the inferences she drew from the [*77]  facts, such as the close working relationship between Perry Corporation and the Rubicon management and the description of Perry Corporation in the board papers. For the reasons set out above, we do not consider those inferences to be warranted.

### Perry Corporation's confidence that it could repurchase the shares

[106]  The third factor relied on by the Judge was Perry Corporation's confidence that the shares would be available for repurchase when they were needed for the Rubicon annual general meeting. She pointed out that, having decided that Perry Corporation needed to be in a position to vote the Rubicon shares at the 19 July 2002 annual general meeting, Mr Berg instructed Mr Rosen to terminate the equity swaps and purchase shares in an amount equal to Perry Corporation's economic interest. Although urgency was a crucial factor, Mr Berg did not raise with Mr Rosen whether there would be any difficulty or delay in acquiring the shares. She also pointed out that Mr Rosen, too, assumed that the Deutsche Bank and UBS Warburg shares would be available for repurchase. Such confidence was in her view indicative of an arrangement.

[107]  We do not see this factor as necessarily indicative [*78]  of the existence of a side arrangement or understanding. As we have found earlier, the market reality was that the shares would almost certainly be available for repurchase. Mr Rosen's evidence that he had a reasonable expectation that the shares would be available was consistent with his understanding of that market reality. Even though he was reluctant to concede it, Mr Berg must also have been aware of this market reality.

[108]  Part of Mr Berg's reluctance to concede this point could be explicable on the basis that he must have been conscious that Perry Corporation was in effect countering three arguments. The first was that the inevitability of repurchase in itself created an arrangement. Perry Corporation's counter-argument was first that there was no such inevitability (at least in relation to the vast majority of swaps) and secondly that it did not matter if there was. The inevitability was a function of market reality, in particular as regards swaps with illiquid stocks as the underlying shares. The second argument, that s 5(2) applied, raised similar issues to the first. The third was that there was an actual arrangement. For Perry Corporation to counter this, it had to [*79]  stress the very high likelihood (although not necessarily inevitability) of availability for repurchase of the Rubicon hedge shares. The subtleties of the distinctions required could have led to the appearance of inconsistency. The same comments apply to the evidence of Mr Cohen and Mr Gray.

### Mr Moriarty's confidence that Perry Corporation could repurchase the shares

[109]  The fourth factor relied on by the Judge was Mr Moriarty's confidence that Perry Corporation could repurchase the shares. After GPG's share acquisition Rubicon had sought a meeting with GPG, which took place on 8 July 2002 (NZ time, 8 July 2002, 8 am: NY time, 7 July 2002 4 pm). Over the weekend of 6 - 7 July Mr Moriarty had spoken with Mr Perry and Mr Berg who had asked him to ascertain GPG's attitude to the Fletcher Forests proposal and whether GPG knew that Perry Corporation had a significant interest in Rubicon. Mr Moriarty reluctantly agreed to do this.

[110]  The parties differ as to exactly what was said at the meeting but it is clear that GPG was told that Perry Corporation had, for over a year, been closely involved with Rubicon's management and direction and that it was committed to the Fletcher Forests [*80]  proposal to acquire CNIF. After that meeting, but before the Rubicon board meeting at

noon, Mr Moriarty called Mr Berg and they spoke for 20 minutes (NZ time, 8 July 2002, 11.36 am: New York time, 7 July 2002, 7.36 pm).

[111]  That afternoon (NZ time, 8 July 2002, 4.21 pm: New York time, 8 July 2002, 0.21 am), via email, Mr Moriarty told Mr Berg that, now GPG was aware of the situation, Perry Corporation should announce "it" to the market before GPG did. The email said:

"Will wait until u are ready, but now that someone else [GPG] knows u should not delay too long to ensure u are the ones that announce it first!"

[112]  Potter J found that the "it" in that email referred to the shares that Perry Corporation was to acquire. She rejected as "unconvincing" Mr Moriarty's evidence that the "it" was Perry Corporation's economic exposure to Rubicon through the swaps. She said that it was implicit in Mr Moriarty's email that he knew that Perry Corporation would acquire the shares, information he could only have gained from Perry Corporation. She had earlier noted that Mr Berg, in answer to a question from her, had said that he had thought that the "it" referred to the fact that [*81]  Perry Corporation was going to acquire the shares.

[113]  The first point is that it is clear that GPG was not told at the 8 July meeting that Perry Corporation was going to reacquire the Rubicon shares. This means that the reference in the email to what GPG knew cannot have been a reference to the reacquisition of the shares. The second point is that the Judge accepted (despite there having been some doubt from the telephone records as to whether there had been telephone communications between 8 July and 10 July, NZ time) that the decision to reacquire the shares was not conveyed to Mr Moriarty until sometime around 9 - 10 July (NZ time) and thus after the email had been sent - see para [206](a) of her judgment. Mr Asher submitted that this finding was made in a different context and was thus irrelevant but this does not appear to us to be the case.

[114]  Even if Mr Moriarty had known about an arrangement whereby the shares could be reacquired, if he did not know of the decision to reacquire the shares when he sent the email, then it is difficult to see why "it" would be referring to the reacquisition of the shares. The fact that Mr Berg may have thought, when giving evidence [*82]  long afterwards, that "it" was referring to the reacquisition of the shares, may have been a function of the fact that Mr Berg recollected that he had been contemplating (or had decided upon) reacquisition at the time of receiving the email (which presumably, given the time differences between New Zealand and New York, is likely to have been read some time after it was sent). It may, however, as Mr Farmer points out, merely have indicated confusion as to what email was being referred to (and he did appear confused on that point while being questioned by counsel for GPG).

[115]  Mr Asher submitted that, by the time the email was sent that afternoon, Mr Moriarty knew what was to happen, Mr Moriarty having spoken to Mr Berg after the meeting and before the email was sent. However, even if the "it" did refer to the reacquisition of the shares and the decision to reacquire had been, as Mr Asher suggested, conveyed in the 8 July telephone call with Mr Berg, this does not necessarily show knowledge of an antecedent arrangement on Mr Moriarty's part. It may equally merely have shown knowledge of Perry Corporation's current intention to unwind the swaps and acquire the physical shares. [*83]

[116]  Potter J also referred to a draft press release of 9 July 2002 (NY time, 10.28 am: NZ time, 10 July, 2.28 am) sent by Mr Berg to Mr Moriarty which stated that Perry Corporation had been a substantial stakeholder in Rubicon since its inception with its economic interest held primarily through equity swaps. It went on to say that "in light of recent events" Perry Corporation felt it was important for it to convert its economic interest into a direct ownership position "in order to support management's position on upcoming votes". Potter J pointed out at paras [155] - [157] that, although Mr Berg had denied in cross-examination that the draft presupposed that Perry Corporation owned the shares, he also said, at the time of sending the draft, that it was a "near final draft" and he had not deemed it necessary to add any qualification that its release was subject to the ability of Perry Corporation to acquire the shares. Potter J said at para [157] that this was "no doubt because, as [Mr Berg] acknowledged in evidence 'we were going to acquire the shares'". In Mr Asher's submission it was the degree of Perry Corporation's confidence conveyed by its actions that Potter J [*84]  found went beyond simple reliance on market reality.

[117]  We do not see that the draft press release is significant. We note that Mr Berg had, by this time, made the decision to acquire the shares, had instructed Mr Rosen in this regard and in cross-examination said it was likely that by that stage Mr Rosen would have told him that he had had discussions with Deutsche Bank. It also appears that, by this time, Mr Moriarty had been informed of the decision. As we have already indicated that the market reality was that the shares would almost certainly be available, it would not be unusual for a draft press release to be prepared in anticipation of the completion of the share purchases.

*Mr Rosen's telephone conversation with Mr Madan of 8 July 2002*

[118]  The next (and probably the most important) factor taken into account by the Judge was a telephone conversation of 8 July 2002, 11.13 am New York time (NZ time, 9 July, 3.13 am) between Mr Rosen (Perry Corporation's head trader) and Mr Madan (from Deutsche Bank). Given the importance of this telephone conversation we set it out in full in appendix four [not included in this report]. As can be seen from the transcript, Mr Rosen said [*85] that he wanted to make sure that:

". . . we have those shares as of the record date, that we are the beneficial holders of interest as of the record date, so that we have the freedom and flexibility . . . to deal with those shares as we would like - as we want to."

[119]  He put Mr Madan on notice that he would probably be coming back in the near future to "take the shares back" (as Mr Madan put it) or, as Mr Rosen said, "unwind the swap". Mr Rosen then asked Mr Madan to give him a name of someone in Deutsche Bank for his lawyers to consult to ensure that their interpretation of the applicable laws and regulations was the same. Mr Madan said that he would get the name of the appropriate person and let Mr Rosen know the following day.

[120]  The Judge observed that Mr Rosen, in giving evidence, was scrupulous about the words he used to describe the reacquisition of the shares. Mr Rosen insisted that Perry Corporation had purchased the shares from Deutsche Bank and disassociated himself from descriptions such as "taking the shares back". She said, however, at para [118] that it was interesting that Mr Rosen:

". . . so precise in the language he used in giving evidence and so [*86] insistent on counsel using only the buy/sell terminology in addressing questions to him, nevertheless was happy with his own description of 'unwind the swap' in response to Mr Madan's characterisation 'take the shares back'. If, as Mr Rosen suggested in evidence, Mr Madan was mis-characterising the situation when he used those words, then equally Mr Rosen was reinforcing the mis-characterisation when he responded that the swap should be unwound. Implicit in the word 'unwind' is an unravelling or reversal of the initial transaction."

[121]  Mr Rosen gave evidence that both he and Mr Madan were operating under the assumption that the shares would be there. The Judge said at para [204] that it was clear from Mr Madan's responses to Mr Rosen that he was hearing for the first time of Perry Corporation's wish to reacquire the shares, and why. In her view, however, the language used in the conversation was that of a potential purchaser who knows shares are available to buy and the corresponding vendor who knows he has the shares to sell. She had earlier, at para [119], expressed the view that it was surprising that the most basic inquiries were not made, such as whether Deutsche Bank was [*87] holding the shares, whether they would be available for sale and the price and other terms that might relate to such a sale. This was despite the fact that Mr Rosen would have been aware that Deutsche Bank was free to deal with the shares as it wished. She had gone on to say:

"That being the case it is difficult to see how there could be any 'assumption' or 'expectation' that the swaps could be unwound and the shares made available, subject only to meeting local compliance requirements in relation to the transaction, without at least some basic checks to establish that the shares were available for purchase by Perry Corporation and that Deutsche Bank was a willing seller."

[122]  At para [204] Potter J expressed the view that it was surprising, given the importance and urgency of the situation, that Mr Rosen and Mr Madan were prepared to proceed on the basis of independent inarticulated assumptions. She said:

"Given the urgency and importance of completing the swaps unwind and shares repurchase which Mr Rosen clearly made known to Mr Madan, I find it surprising that both were confident to proceed on the basis of their independent unarticulated 'assumptions' without confirmation [*88] of any kind if, as the defendants contend, they were based purely on commercial reality as each independently assessed it."

[123]  She concluded by saying that she considered that the inference is properly available that this was because the parties had a mutual understanding that the shares would remain available for repurchase. She said:

"I consider the inference is properly available that their confidence rested on a mutual understanding that the shares sold to Deutsche Bank by Perry Corporation and held by Deutsche Bank as a hedge for the Perry Corporation equity swaps, would remain available for repurchase by Perry Corporation."

[2004] 1 NZLR 731; 2003 NZLR LEXIS 76, *

[124] In concluding that an arrangement or understanding existed, Potter J said that the telephone conversation provided important direct evidence of the nature of the transactions between Perry Corporation and Deutsche Bank. She said at para [222]:

"I have found that the language used by both parties to that telephone conversation accurately describes the transaction they were discussing, that is, an integrated transaction of unwinding of equity swaps and repurchasing of the shares transferred at the time the equity swaps were established. I have [*89] rejected Mr Rosen's evidence that the words used did not carry their obvious meaning, and mis-characterised the transaction under discussion. That evidence directly supports a finding of the existence of an arrangement or understanding between Perry Corporation and Deutsche Bank, and together with all the other evidence satisfies me that it was more likely than not."

[125] We note first the Judge's comment as to the use of terminology by Mr Rosen. This was a case where all parties focused on the use of terminology to an unusual degree. In our view this was less than helpful. People in ordinary business situations cannot be expected to speak with the precision that one would do if seeking to elucidate legal relationships. Mr Rosen's insistence while giving evidence on the correct legal terminology when clearly he had not been so scrupulous in the past may have made him appear less than candid. More charitably, it could be seen just as a desire not to be inadvertently "caught out" at trial in concessions through the loose use of language.

[126] We next comment on the Judge's view (expressed at para [119] and quoted above) that it would not have been reasonable for the parties to [*90] be operating on the assumption that the shares would be available for purchase. We differ from the Judge in this regard. Given the nature of the Rubicon shares and in particular their illiquid nature, we have held that it was highly likely that the shares would be available for sale to Perry Corporation and that Perry Corporation would have been aware of this. We thus consider that the Judge was overstating the position.

[127] Nevertheless, we accept that on one view it might be thought surprising that Mr Rosen did not remove the remaining uncertainty by asking for confirmation that the shares were available. On the same view it might be thought that Mr Madan would have indicated that he needed to confirm availability, especially as, according to Mr Cohen's evidence, he did not have the authority to agree to the transaction and had no means of checking if the shares were still held. In addition, as the Judge pointed out, there was no evidence from Mr Madan on what can be seen as a vital telephone conversation.

[128] One reason that the failure to inquire might be thought particularly surprising was the urgency involved and the lack of realistic other options. Mr Rosen said in evidence [*91] (although not referring specifically to the conversation with Mr Madan) that he did not make inquiries of Deutsche Bank as to whether it did actually continue to hold the shares. Nor did he refer to the Rubicon share register or records of the substantial security holder notices in this regard. He said that, if the swaps counterparty had not held the underlying shares, he would have instructed it or another broker to acquire them in the market. The Judge was sceptical of the claim that Perry Corporation could have acquired that number of shares in the market just after the GPG book-build process and particularly without paying a substantial premium - see paras [127] - [129]. She concluded that purchasing in that manner in time for the 19 July meeting was not an option realistically available. We agree.

[129] Mr Berg gave evidence that Perry Corporation had considered purchasing Rubicon shares before GPG had even entered the picture in order to counter the opposition of Xylem (a Fletcher Forests shareholder) to the Fletcher Forests transaction which became apparent in late May or June 2002. His evidence was that this was when he first discussed with Mr Moriarty the possibility of [*92] Perry Corporation issuing a press statement in support of the Fletcher Forests proposal and that additionally Perry Corporation had discussed internally whether it should attempt to acquire a share position equal to its full economic interest in order to reduce any uncertainty raised by Xylem's opposition. If this was the case, it might be thought surprising that there was no check on the availability of the shares at that time.

[130] On another view, however, if the uncertainty was near to non-existent, such that the ability to repurchase the shares was inevitable in a practical commercial sense, then Mr Berg's, Mr Rosen's and Mr Madan's confidence that the shares would be available and the consequent failure to make inquiries is entirely explicable. This is especially the case as the purpose of the telephone call was to warn of possible purchase rather than to place a definite order. When it was put to Mr Rosen in cross-examination that at no stage in the conversation with Mr Madan did he ask him about the bank's willingness or ability to sell the shares, Mr Rosen said that what he would normally do is tell the salesperson what he wanted to do and assume that the salesperson [*93] come back to him if there were any issues arising. Mr Cohen's evidence was that Mr Madan had to check, and did check, with him whether the shares were available. There is some force in Mr Asher's submission that Mr Cohen was seen by Mr Rosen and Mr Madan as simply the per-

son who could assist in ensuring compliance with the appropriate regulations. This is understandable, however, in the context of the commercial reality that the shares were highly likely to be available.

[131]  Another point of significance for the Judge in relation to this telephone call was the fact that Mr Madan was also involved in the setting up of the swaps and the purchase of the underlying shares as a hedge in 2001. Potter J saw it as a significant factor that the shares had been sold to the banks at the time of entry into the swaps and that they were repurchased on termination of the swaps. The Judge found, at para [124], that the focus, both at entry and termination, was on the "transfer of the shares, with the equity swaps as a corollary". Mr Asher also stressed this aspect in submissions. He submitted that the Rubicon swaps were not as Mr Rosen said, "plain vanilla total return swaps". Instead the [*94]  primary driver was to get the shares out of Perry Corporation's hands, and the language used at the time of entry into the swaps tied into the transcript of the call of 8 July (New York time), Mr Madan stating in an email of 30 May 2001, "We are okay to take 14 mil RBC NZ shares in swap".

[132]  We would accept that when shares are sold on entry into equity swaps and repurchased on termination it could make it slightly more likely that there is an arrangement. This applies only if there was a reason for entering into that arrangement. As indicated above, we can see no strong reason for Perry Corporation to have entered into such an arrangement, particularly where the market reality was that there was little doubt as to the ability to repurchase the shares if needed. In addition, the evidence was that it was rare for Perry Corporation to sell shares to counterparties upon entry into swaps - it had done so in only 24 of the last 392 equity swap trades in the six months to 28 November 2002. Shares were acquired from counterparties at termination in 41 cases but there was no evidence of any correlation with the 24 sold in. We are unable therefore to see this factor as significant.

[*95]  *Share acquisitions: the shares were available*

[133]  The Judge next relied on the fact that, when Perry Corporation wanted the Rubicon shares, the shares were available for it to acquire. She pointed out that, on both occasions when Perry Corporation needed large parcels of shares urgently - for the Rubicon buy-back, and when it wanted to be able to exercise voting rights at the Rubicon annual general meeting of 19 July 2002 - equity swaps were terminated on less notice than the contracts provided for and shares were repurchased.

[134]  In our view this is not necessarily indicative of an arrangement or understanding. It could equally be a function of the market reality discussed above.

*Perry Corporation as shareholder/owner*

[135]  Potter J also relied on other descriptions of Perry Corporation as shareholder or owner of the shares. She said that there was no dispute that, at the 8 July 2002 (NZ time) meeting between Mr Gibbs of GPG and Rubicon following GPG's acquisition of Rubicon shares, Perry Corporation was described by Mr Moriarty as a shareholder with an interest about the same size as GPG's. Potter J thought it revealing that Mr Moriarty described Perry Corporation [*96]  in these terms when he had yet to be told of Perry Corporation's decision to acquire the shares. This was, Potter J said, surely a situation in which Perry Corporation's position needed to be accurately conveyed but that Perry Corporation was described as a shareholder with a significant interest, precisely the description Rubicon had given internally to Perry Corporation over the last year. In her view this was not an occasion on which to use "loose" or "unfortunate" descriptions as the purpose of the meeting was to find out if Mr Gibbs knew about Perry Corporation and was at Perry Corporation's behest.

[136]  Mr Galbraith submitted on this point that the description given to Perry Corporation at the 8 July meeting was not evidence from which an inference could be drawn that Perry Corporation had a disclosable relevant interest in Rubicon. How Mr Moriarty chose to represent Perry Corporation's interest cannot, he submitted, give rise to an inference against Perry Corporation. Mr Moriarty's description was in any event accurate. Perry Corporation was a shareholder in Rubicon holding around 3.08 per cent and, in addition, holding a significant economic interest by way of equity [*97]  swaps. Perry Corporation was not described as having a shareholding similar to GPG, nor as a shareholder of similar size to GPG.

[137]  Mr Farmer, for Rubicon, also submitted that the Rubicon attendees had said in evidence that the fact that the interest was by way of swaps had been disclosed at the meeting. If the swaps had been mentioned, Mr Farmer submitted that there could be no question of a misleading description. In addition, he submitted that the purpose of the meeting was to discuss GPG's aspirations in regard to Rubicon and that it had been arranged before Mr Moriarty was asked by Perry Corporation to disclose Perry Corporation's involvement to GPG. In all of these circumstances both Mr Galbraith and Mr Farmer submitted that no inference should have been drawn on the basis of what was said at the meeting.

[2004] 1 NZLR 731; 2003 NZLR LEXIS 76, *

[138] We accept these submissions. We observe that Mr Gibbs of GPG had no recollection of whether it had been disclosed that Perry Corporation's interest was in the form of swaps and so the parties had agreed to differ on the point. The Judge was aware of this (see para [93] of her judgment). In our view she should not have drawn an inference from the use of language at [*98] that meeting when what she relied on may not have been a complete record of the conversation.

[139] The Judge also pointed to the fact that on 25 July Mr Perry spoke with Mr Gibbs of GPG. Mr Perry said that Perry Corporation had decided to "make sure those shares were resold to us so that we could vote them" and that Perry Corporation had been working with the management of Rubicon for a year and a half and had been trying to sell Fletcher Forests around the world. Potter J found that Mr Perry's description was of a situation where, despite having transferred the shares and acquired the equity swaps, Perry Corporation continued to be in a position where it could make sure the shares were resold to it when it wanted them.

[140] At the time of this conversation Perry Corporation had already acquired the shares. It is difficult to see therefore why this conversation shows that there had been a pre-existing arrangement in May/June 2001 to enable Perry Corporation to acquire the shares. Indeed, it might also be said that, if Perry Corporation had been party to an arrangement or understanding whereby the shares remained available for repurchase, then Mr Perry would not have needed to [*99] make sure the shares were resold to Perry Corporation because he would already have been sure that this could happen at any time Perry Corporation wished.

*Voting the shares*

[141] The next factor relied on by Potter J was the fact that Perry Corporation wanted to be able to vote its shares at the annual general meeting because it was concerned about GPG's intentions, which it considered were unclear but could be contrary to its interests. She found that Rubicon had the same concerns, despite Mr Moriarty's attempt at trial to distance himself. She said that Mr Moriarty's alleged indifference did not sit easily with the fact that he had sent an email to Mr Berg on 14 July to say "I definitely need your shares". Potter J concluded that, while claiming only an economic interest in Rubicon over the previous 13 months, when GPG caused the heat to go on, Perry Corporation urgently moved to reacquire the shares and disclosed its power as a 15.98 per cent shareholder. Mr Asher supported this conclusion and submitted that it would have been commercially unrealistic for Perry Corporation to have left itself and Rubicon exposed to the risk that their mutual objectives could be thwarted [*100] by Perry Corporation's inability to vote if a critical situation were to arise.

[142] Mr Galbraith submitted that Perry Corporation's reasons for wanting to vote an equivalent shareholding to its economic interest over a year after entry into the equity swaps cannot be used to draw an inference that there had been an arrangement at the time of entry into the swaps.

[143] We accept Mr Galbraith's submission. There was no suggestion that the advent of GPG could have been anticipated in May/June 2001 when the swaps were entered into. And it was Mr Berg's evidence that Perry Corporation had never before found it necessary to return to a physical shareholding in order to vote at a meeting.

*Absence of certain witnesses*

[144] The final matter relied on by the Judge was an adverse inference drawn from the absence of Mr Perry of Perry Corporation, Mr Madan of Deutsche Bank, and Mr Dozier and Mr Lloyd of UBS Warburg. Potter J considered that the missing witnesses would have been able to give evidence that was likely not only to have been relevant, but possibly crucial. In particular she saw Mr Perry, the sole shareholder and president of Perry Corporation, as a key witness who had, she [*101] said, been the subject of an order requiring him to give evidence in person. Adopting the rule in *Jones v Dunkel*, Potter J considered, at para [217], that it was open to her to infer that the missing witnesses:

". . . would not have assisted the defendants' case, and may have exposed facts unfavourable to it. That has served to confirm the inferences I have drawn, adverse to the defendants, from the evidence that was presented to the Court."

[145] Mr Galbraith, for Perry Corporation, submitted that there was no justification for drawing adverse inferences from the absence from the witness box of Mr Dozier and Mr Lloyd who, as salespeople, had no more power to bind UBS Warburg than Mr Madan had to bind Deutsche Bank. In addition, Mr Galbraith submitted that, as they were not witnesses compellable by Perry Corporation, it is inappropriate to draw adverse inferences when Perry Corporation was not practically able to produce such evidence. With regard to Mr Perry, Mr Galbraith submitted that Potter J misstated the potential relevance of his evidence and the effect of the order that he give evidence in person. Mr Perry had not been ordered to give evidence. He was merely told that, [*102] if he was to be called, he would have to attend in person and

not by video link. In Mr Galbraith's submission, there was no justification for drawing an adverse inference from Mr Perry's absence when witnesses from Perry Corporation were called who, unlike Mr Perry, had been directly involved in the actual transactions at issue.

[146]  Mr Galbraith further submitted that Potter J misapplied the rule in *Jones v Dunkel* which permits a Court only to draw an inference that the uncalled evidence would not have assisted that party's case but cannot, as the Judge attempted to do here, be used to prove the plaintiff's case.

[147]  Mr Asher, for GPG, accepted that Mr Madan, Mr Dozier and Mr Lloyd were non-compellable but submitted that no explanation had been given for the absence of these witnesses who were the only officers of the swap counter-parties able to give first-hand evidence as to what actually happened, as against evidence of what possibly should have happened. Similarly Mr Perry was an important witness. As the sole shareholder and president of Perry Corporation he had personal oversight of its strategies, signed substantial security holder notices, participated in telephone [*103] discussions with Rubicon and called Mr Gibbs on 25 July 2002. Mr Asher submitted that Potter J would have well understood that Mr Perry had not been ordered to attend, as otherwise he would have been in contempt, but that the order had been predicated on the assumption at the time that Mr Perry would give evidence.

[148]  Finally, Mr Asher submitted that Potter J did not misapply the rule in *Jones v Dunkel* by holding that it enabled her to infer not only that the absent witnesses would not have assisted Perry Corporation's case but may also have exposed facts unfavourable to it. In Mr Asher's submission this broader approach to the rule was available to the Judge. Even if this is wrong, Mr Asher submitted that Potter J's findings would not have been any different as the inference drawn from the absence of these witnesses served only to confirm inferences already drawn from the evidence that was presented to the Court.

[149]  The precise terms of the inference that may validly be drawn from the non-calling of a witness are open to some dispute - see, for example, *Dilosa v Latec Finance Pty Ltd (1966) 84 WN (NSW) 557 at pp 581 - 582, Claiborne Industries Ltd v National Bank of Canada (1989) 59 DLR (4th) 533 at p 546 [*104] and Brandi v Mingot (1976) 12 ALR 551.*

[150]  In New Zealand, Thomas J said in *Dairy Containers Ltd v NZI Bank Ltd* (1994) 7 PRNZ 465 at p 468 that a Court can, in appropriate circumstances, draw an inference in a civil case, "where there is an unexplained failure by a party to give evidence or call a witness or tender documents, that the uncalled evidence would not have assisted that party's case". Eichelbaum J went further in *Innes v Ewing* [1989] 1 NZLR 598 at p 607 where he said that the natural inference from the failure to call a pertinent witness is that he or she would have exposed facts unfavourable to the party having the choice. In this Court, in *Pepi Holdings Ltd v BMW New Zealand Ltd* (Court of Appeal, CA 21/97 & 22/97, 25 August 1997), Elias J, for the Court, said at p 24:

"It may often be the case that, where a witness is not called, a Judge will be entitled to infer that the witness could not add to the case of the party who could otherwise be expected to call him or her. It is not necessary for present purposes because the inference was unnecessary for the decision, to decide whether this was one of the rare cases in which [*105] it is proper to draw an inference adverse to the party who could be expected to call a witness, from failure to do so."

[151]  In *Jones v Dunkel*, Windeyer J at p 320 approved of the following passage from *Wigmore on Evidence* (3rd ed, 1940), p 162, which he said was "plain common sense", as follows:

"The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavourable to the party. These inferences, to be sure, cannot fairly be made except upon certain conditions; and they are also open always to explanation by circumstances which made some other hypothesis a more natural one than the party's fear of exposure. But the propriety of such an inference in general is not doubted."

[152]  The formulation in *Wigmore* appears to equate to the so-called broad view of *Jones v Dunkel* which Mr Asher contends should be adopted. Windeyer J, however, went on to state [*106] the position in narrower terms at p 321 where he said:

"Unless a party's failure to give evidence be explained, it may lead rationally to an inference that his evidence would not help his case."

[153]  In our view, it is not helpful to analyse the position in terms of broad and narrow views. Neither is it helpful to refer to the "rule" in *Jones v Dunkel* . There is no rule. Rather, there is a principle of the law of evidence authorising (but not mandating) a particular form of reasoning. The absence of evidence, including the failure of a party to call a witness, in some circumstances may allow an inference that the missing evidence would not have helped a party's case. In the case of a missing witness such an inference may arise only when:

(a)  the party would be expected to call the witness (and this can be so only when it is within the power of that party to produce the witness);

(b)  the evidence of that witness would explain or elucidate a particular matter that is required to be explained or elucidated (including where a defendant has a tactical burden to produce evidence to counter that adduced by the other party); and

(c)  the absence of the witness is unexplained.  [*107]

[154]  Where an explanation or elucidation is required to be given, an inference that the evidence would not have helped a party's case is inevitably an inference that the evidence would have harmed it. The result of such an inference, however, is not to prove the opposite party's case but to strengthen the weight of evidence of the opposite party or reduce the weight of evidence of the party who failed to call the witness.

[155]  A helpful formulation of the principle is contained in the following extract from the judgment of Glass JA in *Payne v Parker* [1976] 1 NSWLR 191 at pp 200 - 201:

"(1) The rule is a principle of the law of evidence whereby a particular form of reasoning is authorized.

(2) The reasoning which is permissible involves the treatment of a failure to adduce evidence as a reason for increasing the weight of the proofs of the opposite party or reducing the weight of the proofs of the party in default: *O'Donnell v Reichard [[1975] VR 916 at p 921]*. The principle may be invoked for a deficiency in the evidence either of a party bearing the legal onus of proving an issue, or of a party bearing the evidentiary burden only: Ibid; *Steele* [*108]  *v Mirror Newspapers Ltd [[1974] 2 NSWLR 348 at pp 360, 367]*. If the failure is of the latter kind, the direct evidence of the party with the onus of proof can be more readily accepted, and inferences in his favour may be more confidently drawn: *Jones v Dunkel* [(1959) 101 CLR 298 at pp 308, 312]. If the failure is of the former kind, a consonant formulation would be that the direct evidence of the party carrying the onus may be more readily rejected, and the inferences for which he contends may be treated with greater reserve. The default 'brings a great slur on his cause': *Ward v Apprice[(1704) 6 Mod Rep 264; 87 ER 1011]*.

(3) The failure to call a particular witness is merely one instance of evidentiary deficiency which brings the principle into operation. Other instances are the failure to adduce any evidence at all: the *Tozer Kemsley case* [(1956) 94 CLR 384 at p 403]; the failure to produce a particular document, and the failure to prove a particular fact . . ..

. . .

(6) Whether the principle can or should be applied depends upon whether the conditions for its operation exist. These conditions are three in number: (a) the missing witness [*109] would be expected to be called by one party rather than the other, (b) his evidence would elucidate a particular matter, (c) his absence is unexplained."

[156]  In this case, Mr Galbraith's assertion that Potter J attempted to apply the rule in *Jones v Dunkel* to prove GPG's case is unfounded. Potter J made it clear that the absence of the witnesses served only to confirm the inferences, adverse to Perry Corporation, that she had already drawn from the evidence that was presented. In terms of the principle discussed above this was legitimate.

[157]  Moving now to discuss the particular inferences she drew, we first examine the position of Mr Perry. With respect to Potter J, we consider that she overstated the importance of Mr Perry as a witness. In our view, it is difficult to see what more Mr Perry could have added to the evidence given by the other Perry Corporation personnel. Perry Corporation's managing director, chief financial officer at the relevant time and head trader (Mr Berg, Mr Vernon and Mr Rosen) were all principally and directly involved in the equity swaps transactions at issue and all gave evidence. Mr Vernon described in his evidence the involvement of all four [*110] Perry Corporation personnel. He said his job was oversight of all agreements with brokers. Mr Rosen, as head trader, was responsible for executing all trades or supervising execution. Mr Berg was the research analyst responsible for all aspects of the Rubicon investment and was responsible for the conduct of the trade. Mr Vernon said that Mr Perry would supervise all of them and provide assistance in areas where they needed his guidance or action. He said, however, that Mr Perry was not involved in the decision mak-

ing relating to the transactions at issue. Nor to his knowledge did Mr Perry have any independent role in relation to these transactions.

[158] Although Mr Perry oversaw Perry Corporation's investment strategies, he did not appear to have been involved in the details in a manner separate from the other Perry Corporation witnesses. There was no occasion in which Mr Perry was the main participant in a particular event or conversation, with the exception of the 25 July telephone conversation between Mr Perry and Mr Gibbs (and even this conversation had, unknown to Mr Gibbs, been overheard by Mr Berg, Mr Rosen and another trader). In any event, we have indicated that we do [*111] not see this conversation as significant. In addition, if Mr Perry had given evidence in person, this would have meant that four key Perry Corporation personnel (out of an organisation that is apparently not large) would have been out of the office and out of the country at the same time. An inference cannot be drawn from the failure of a party to call multiple witnesses to give cumulative evidence - see *Wigmore* at s 286 and the discussion in *Cubillo v Commonwealth of Australia (2000) 174 ALR 97 at p 220*. We therefore do not consider that the Judge was justified in drawing an adverse inference from the absence of Mr Perry.

[159] Potter J also referred to the absence of Mr Madan (of Deutsche Bank), Mr Dozier (Mr Madan's equivalent at UBS Warburg) and Mr Lloyd who was described by Mr Gray as UBS Warburg's primary Perry Corporation contact in Australia. Only in the case of Mr Lloyd, who was said to be no longer with UBS Warburg and now based in London, was an explanation given. It is true that none of these witnesses was compellable and that each would have been required to travel a long distance in order to attend the hearing. In addition, none of [*112] the three were employees of Perry Corporation and Mr Lloyd was no longer even employed by Perry Corporation's swaps counterpart. With the possible exception of Mr Lloyd, we do not, however, accept that it was not within Perry Corporation's power to produce these witnesses. Two senior bank employees (admittedly from Australia) did give evidence and there was no suggestion that there had been a refusal by the banks to supply other witnesses.

[160] We consider that it was open to the Judge to have concluded, as she did, that the Madan/Rosen telephone call of 8 July 2002 required an explanation from both participants. Mr Madan was the only person who could have given an explanation of the language used by him in that conversation and she was entitled to conclude that his evidence would not have helped the Perry Corporation case.

[161] The lack of any witness from UBS Warburg who had had any involvement at all in the swaps (unlike for Deutsche Bank where Mr Cohen, who was in charge of the hedge, had been called) could also have been legitimately used by the Judge to infer that there was no satisfactory explanation that could be tendered by UBS Warburg that would counter the factors she [*113] saw as pointing to the existence of an arrangement. We do note, however, that the relevant witnesses from UBS Warburg were based in Connecticut.

*Neutral factors*

[162] Potter J additionally set out factors that she regarded as neutral in reaching her conclusion that there were reasonable grounds to suspect non-disclosure of a relevant interest. The only one of note (in that it is the only one contested by Perry Corporation) is the evidence of Mr Cohen and Mr Gray. The Judge said that Mr Gray and Mr Cohen could give evidence of the division of functions within the banks but that they were not involved with the equity swaps transactions "except Mr Cohen peripherally with hedging and compliance details" (para [239]).

[163] We agree with the Judge that Mr Gray's evidence is directed only to the general policies of the bank. Mr Gray is head of prime broking and is involved in the process side of the swaps business in Australia and New Zealand. It is true that he had no direct involvement with the Perry Corporation swaps. The client contact had been managed largely through staff in Stamford, Connecticut, with the pricing and hedging arrangements managed in Australia by Mr Lloyd who [*114] reported to Mr Gray but who had since left the firm and moved to London. Mr Lloyd was a member of the sales staff who, Mr Gray said, act as intermediary between clients and the trading book and request information on pricing and sales products from the traders. The traders do not have direct client contact and are responsible for pricing and hedging of the underlying shares. Mr Gray said that Mr Lloyd's role would have been to ensure the effective coverage of the client in the Australasian time zone and to provide a point of contact for the bank's offshore salespeople and the client if necessary. He said, however, that the Australian office did not deal directly with Perry Corporation but received instructions from, and dealt through, the Stamford office.

[164] Mr Cohen's evidence points to a far more direct role in the relevant transactions. As a director in the equities division at Deutsche Bank in Sydney Mr Cohen's main role is providing structured products to clients, with part of his responsibility including the hedging and managing of the risk on equity swaps where the underlying security is an Aus-

tralian or New Zealand share. With regard to the first set of equity swaps transactions [*115] entered into between Perry Corporation and Deutsche Bank, Mr Cohen said that he had been telephoned on or about 31 May 2001 by Mr Julian Sale and Mr Madan from New York, who had asked whether the bank would enter into equity swaps in respect of Rubicon shares and take a large holding in Rubicon as a hedge for the swaps. Mr Cohen checked the bank's internal limits and confirmed its ability to do the swaps. Mr Cohen's evidence was that it was his decision to hedge the swaps by purchasing Rubicon shares from Perry Corporation. He said that the Rubicon shares were the natural hedge for the swaps and a purchase from Perry Corporation was the quickest, easiest and cheapest way to acquire the shares he wanted to use to hedge the swaps. The alternative would have been to go on-market to buy the hedge but Mr Cohen said that this would have taken some time and would have involved the management of the resultant risk and market impact.

[165] Mr Cohen's insistence that it was his decision to buy the hedge from Perry Corporation and the suggestion that there was a choice in this regard has an air of unreality. Perry Corporation would presumably not have entered into the swaps had Deutsche Bank [*116] not purchased the shares but would have sought another counterparty who would make the purchase.

[166] Mr Cohen put the trade through the market and booked both the cash trade and establishment of the swaps in his "blotter", while the resultant cash trade confirmation and swaps confirmations were issued by equity operations staff (whom he described as being in a separate division responsible for confirming trades with client counterparties and internally for managing and reconciling the Deutsche Bank positions). Mr Cohen said he would have told Mr Madan of the trade and probably also either telephoned or emailed Perry Corporation.

[167] It was part of Mr Cohen's general responsibility to manage the hedging of the swaps. He said Deutsche Bank was always seeking to maximise the revenue it can derive from any transaction or position, so once they had shares as a hedge they might lend them out, use them as collateral or seek to put in place offsetting equity swaps and sell the hedge. Mr Cohen said that these types of transactions would be referred to him for approval, except in cases of securities lending when the shares could be recalled without notice.

[168] Although there was [*117] an air of unreality about Mr Cohen's insistence that in practice he had a choice about the initial purchase of the hedge, the same does not apply to this evidence concerning the management of the hedge during the term of the swaps. While there may have been market restraints in this case, in terms of the opportunity to change the nature of the hedge or otherwise deal with the shares, we accept that the power to deal with shares held as a hedge, if the opportunity arose during the terms of the swaps, resided with Mr Cohen.

[169] The second set of swap transactions of 6 June 2001 also involved a telephone call from Mr Madan to Mr Cohen. Mr Cohen again checked whether there were any regulatory limits. The acquisition of further Rubicon holdings was cleared and Mr Cohen told Mr Madan the level to which he had approval, after which he agreed to do the swaps and buy ten million Rubicon shares to hedge the swaps.

[170] Mr Cohen was involved too with the partial unwind of the swaps when Perry Corporation sold into the Rubicon buy-back after being contacted by Allan Goco, a Deutsche Bank equity derivatives salesperson in Hong Kong who had in turn been in contact with Perry Corporation on [*118] another matter.

[171] With respect to the final unwind of the swaps Mr Cohen said Mr Madan contacted him indicating that Perry Corporation wished to unwind the swaps and buy 19 million shares. The reason Mr Madan needed to check with him was, said Mr Cohen, because Mr Madan would not have access to information about the Deutsche Bank holdings in Rubicon as they were booked on the Australian system. Mr Madan had no access to that system and, in addition, had no authority to make the decision to sell to Perry Corporation. Mr Cohen checked whether Deutsche Bank had that number of shares to sell and spoke with the legal and compliance divisions of the bank about the unwind in order to ensure that the trade was done in an orderly manner. Mr Cohen also at this time spoke with Perry Corporation's New York lawyers and, on the day of the trade, emailed a trade report to Mr Rosen and Mr Kravitz of Perry Corporation and to Mr Madan.

[172] Given the functions performed by Mr Cohen in relation to the hedge it is difficult to see him as only peripherally involved with the transactions. He might have been distant in the sense that he was not the one talking directly to the client but, given the [*119] division of functions, he was in charge of the hedge and after all it is the hedge with which we are concerned. It is thus difficult to see how his evidence could be described as neutral. We regard his evidence as being of central importance.

[173] Even the evidence of Mr Gray and Mr Cohen as to the division of functions and existence of management controls in the banks cannot be properly described as neutral. Both Mr Gray and Mr Cohen were definite in their evidence that it was the responsibility of the trading function in the banks to price the swaps and manage hedging. Mr Gray

said that traders in UBS Warburg have no client contact at all. The sales staff act as intermediary between clients and the trading book. In Deutsche Bank the primary contact with clients is through the sales staff but Mr Cohen as a trader did appear to have some client contact. Mr Cohen and Mr Gray both said in evidence, however, that the sales staff would have no knowledge of hedging arrangements and no ability to control the type of hedge undertaken or the use of any hedge shares during the currency of the swaps. Mr Gray said that this strict internal division meant that the sales staff were unable to [*120] enter into any arrangements with a client with regard to shares held as a hedge.

[174] Mr Gray also said that it was not appropriate for the details of the security holdings of other parts of UBS Warburg or its aggregated holdings to be known internally by those involved in trading and sales because fund managers and proprietary traders may be taking positions in certain stocks. Therefore these matters are the sole responsibility of legal and compliance staff who are not involved in day-to-day trading activity and who are also responsible for regulatory compliance issues arising on swaps or hedge transactions including the substantial security holder notices.

[175] Mr Gray considered that any agreement or other arrangement that gave Perry Corporation the right to acquire, dispose of or vote any Rubicon shares held by UBS Warburg as part of its hedge of an equity swap would have been totally inconsistent with the documentation pertaining to the Perry Corporation transactions, which he said were standard total return equity swaps conducted in all respects under the standard ISDA agreements and in accordance with UBS Warburg's usual practices for total return equity swaps. Such an [*121] arrangement would not be possible because only the trading division can price the equity swap or arrange for the establishment or any dealing with shares held on hedge and salespeople have no control over these processes. Mr Cohen conceded that an equity swaps arrangement could be used to warehouse shares but said that to do so would require a special arrangement outside the scope of standard equity swaps dealing procedures and documentation. He stated, however, that Deutsche Bank would not warehouse shares under any circumstances. Equity swaps are, he said, cash-settled, with the fixed or floating amount payer having no right to receive the underlying shares and the equity amount payer no obligation to deliver such shares. Both Mr Gray and Mr Cohen said in evidence that it was the policy of their respective banks not to permit discussion of hedging transactions with swap counterparties and it was Mr Cohen's evidence that this was an area in which relevant staff were counselled by the bank's legal division.

[176] From Mr Cohen's and Mr Gray's evidence it is clear that the division of functions and management controls are taken seriously by the banks. It is therefore reasonable to [*122] assume that they provide some constraint on the actions of employees. At its most basic, employees flouting such controls would face disciplinary action. If entering into an arrangement is proscribed, a person must have a reason to enter into it that seems important enough to risk disciplinary action being taken against them if it is discovered. It is difficult in this case to see what that reason might be (apart possibly from a general desire to please a client).

[177] In the case of Deutsche Bank, the Judge relied on the transcript of Mr Rosen's telephone conversation with Mr Madan of 8 July to infer the existence of an arrangement. Mr Madan had also been involved at the time the swaps were set up. Although the Judge was unable to determine precisely who had been involved in reaching the arrangement, Mr Madan was clearly a possibility, and she held, at para [219], that he knew of the arrangement. It is, however, clear from the evidence of Mr Cohen, not only that the entry into such an arrangement would be against bank policy, but that a salesperson such as Mr Madan would have no ability to implement such an arrangement, given the division of functions within the bank.

[178] Mr [*123] Galbraith's submission was that this rules out any arrangement with a salesperson creating a relevant interest because such an arrangement could never create a power to acquire the shares. We do not accept that submission as any power does not need to be legally enforceable and can be subject to conditions - see s 5(4). Theoretically an arrangement in terms of s 5(1)(f) may be able to exist with a salesperson, especially where the market reality is that the shares would almost certainly be available if needed. In such a case the salesperson could merely be confirming that market reality. One can imagine a position where an overzealous salesperson faced with a customer, who is uncertain as to whether or not to enter into a swap, could articulate market reality and indicate to the reluctant client that market reality would mean that the shares would be available if needed. Depending on the phrasing this could provide the communication needed to bring into existence an arrangement or understanding.

[179] Here, however, we are not dealing with a customer ignorant of swaps and certainly not with one reluctant to enter into the particular swaps. It was after all Perry Corporation which [*124] approached the banks in this regard. There does not therefore appear to be an obvious incentive for entering into an arrangement that is contrary to bank policy. We note, too, that Mr Madan must have been all too aware that he would have no control over the hedge shares and thus no absolute guarantee (apart from market reality) that he could deliver on the arrangement. This diminishes even

further the likelihood that an arrangement would be entered into by him. Mr Rosen made it clear in cross-examination that he knew Mr Madan, as a salesperson, did not have the responsibility or authority to make decisions regarding the hedge to an equity swap or whether there was in fact a hedge in the first place. In our view this makes it unlikely that Mr Rosen would enter into an arrangement with Mr Madan knowing that it could be ineffective. Indeed such an arrangement would not be a significant advance on the position without such an arrangement. The market reality was that the shares were highly likely to be available for purchase.

[180] It is unlikely too that an employee in Mr Madan's position, if he did enter into an arrangement, would publicise its existence too widely in the organisation. [*125] In this regard, although Mr Rosen said in cross-examination that the unwind at the time of the buy-back was arranged by Mr Madan (and this remained uncorrected in re-examination), this does not appear to have been the case. Mr Cohen's evidence was that the partial unwind at the time of the buy-back was arranged by a Mr Goco, who was an equity derivatives salesperson at the time based in Hong Kong and who had been dealing with Perry Corporation on another matter. There is documentation showing Mr Goco's involvement. An email of 4 September 2001 from Mr Goco to Mr Rosen stated that the equity swaps had been partly unwound and asked for confirmation that the swaps and cash trade were to be settled in US dollars. There is also an email from Mr Goco to Mr Cohen the following day to inform Mr Cohen that he had confirmed with Mr Rosen that he wanted to settle the swaps and the cash trade in US dollars. It appears unlikely that an arrangement entered into by a member of the New York sales staff, and one which is against bank policy, would be so widely known that it would include Hong Kong sales staff such as Mr Goco.

[181] If an arrangement was made at a higher level in the bank (by a person [*126] with authority over Mr Cohen, for example) then it would appear unlikely that it would be communicated to sales team personnel like Mr Madan and Mr Goco (who had no control over the hedge) and not to Mr Cohen (who was responsible for the hedge). The Judge appears to have accepted that Mr Cohen did not know of any arrangement, as she described his evidence as neutral. Given the division of functions in the bank, Mr Cohen could have defeated an arrangement by authorising a transaction such as a securities lending transaction, which could have rendered the shares unavailable at a period when they were wanted back. He may even have changed the nature of the hedge in some manner, for example by entering into an off-setting swap. The counter to this may be that it was unlikely, given the illiquid nature of the Rubicon stock, that opportunities for such transactions would have arisen. However, if that is the case, it diminishes the need for entry into an arrangement.

*Discussion and conclusion*

[182] We have indicated that in our view the evidence of Mr Cohen and Mr Gray as to the division of function and management controls in the banks is far from being neutral. We also consider the [*127] evidence of Mr Cohen as to his actual involvement with the Deutsche Bank hedge as very important evidence pointing to the non-existence of an arrangement. In addition, we do not consider, for the reasons discussed above, that the factors Potter J identified (with one possible exception) support her conclusion that an arrangement existed. Therefore, despite the fact that the Judge's assessment was at least in part based on an assessment of the Perry Corporation witnesses' credibility, we consider it is necessary for us to consider the matter afresh.

[183] First we examine the Rosen/Madan telephone call of 8 July 2002 (New York time). The Judge's conclusion on this call was coloured by her finding that, because of Mr Cohen's evidence that Deutsche Bank was free to deal with the hedge shares as it wished, there could be no assumption or expectation that the shares would be available for repurchase. While it is undoubtedly true that Deutsche Bank was free to deal with the shares, we have concluded that it was almost certain that the shares would be held as a hedge for the duration of the swaps and highly likely that they would be available for purchase by Perry Corporation if required. [*128] This means that the explanation that the parties to the 8 July conversation were acting on a shared assumption or expectation cannot be disregarded in the manner the Judge did. Indeed it is at least as likely an explanation of the conversation as the explanation that there was a pre-existing understanding or arrangement, especially as the call could be seen as a warning of possible purchase rather than a definite order. The order was in fact placed two days later, on 10 July 2002, when Mr Rosen told Mr Madan in a further telephone conversation to "go ahead and unwind that swap . . . so you're selling 19m shares and I will be buying 19m shares".

[184] In a practical business sense, an assumption that the shares would be available for purchase was eminently reasonable. On the other hand, there is no doubt that there was urgency in the situation and a lack of available options such that it might be thought Mr Rosen may have wished to remove all doubt and seek confirmation that the shares were available. Equally Mr Madan had no control over the hedge. It might have been thought therefore that Mr Madan, un-

derstanding the urgency involved, may have warned Mr Rosen that he would need [*129] to check on the availability of the shares. Mr Cohen, who did have control over the shares, nevertheless had to check on the availability of the shares when the unwind occurred. This may merely be a reflection of the optimistic nature of salespeople (at least when talking to a client) as against the more cautious trader, but Mr Madan was not called to give evidence on what was clearly a vital call and so the Judge was not able to hear his explanation on this point.

[185]  The content of the 8 July Rosen/Madan telephone call, particularly in the absence of an explanation from Mr Madan, combined with the fact that the Judge had concerns about the credibility (both generally and on this point) of the Perry Corporation witnesses, left it open to the Judge to take the view that there were reasonable grounds to suspect an arrangement with Deutsche Bank. But, if she should have been satisfied, on the basis of all the evidence and on the balance of probabilities, that there was in fact no arrangement or understanding with Deutsche Bank, this would mean that it would not have been proved that there were reasonable grounds to suspect - see para [49] above.

[186]  The first point to be noted [*130] in this regard is the inherent unlikelihood of Perry Corporation needing to enter into such an arrangement with Deutsche Bank. The more certainty there was that the shares would be available at termination for repurchase, if needed, the less necessary entry into an arrangement would be. We have found that the availability of the shares for repurchase by Perry Corporation was highly likely in the case of Deutsche Bank. This market reality was in our view underestimated by the Judge. We do not accept Mr Galbraith's submission that this rules out the possibility of an arrangement or understanding to confirm that market reality but it certainly diminishes that possibility, absent specific reasons for Perry Corporation to make absolutely sure of the position and remove every vestige of doubt by an antecedent arrangement, notwithstanding that it would create a disclosure requirement under the Securities Markets Act. As discussed above, no such reasons have been put forward either with respect to the Rubicon position or for the Perry Corporation swaps in general. Indeed, generally the evidence was that Perry Corporation normally exits swaps when it wishes to exit a position in the physical [*131] shares altogether and comparatively rarely acquires a physical shareholding from the swap counterparties.

[187]  Secondly, there is the evidence of Mr Cohen as to management controls in place at the bank. While again not ruling out the existence of an arrangement, it diminishes the possibility. More important is the fact that Mr Cohen was actually in charge of the hedge shares but was unaware of any arrangement. He would have had the power to defeat such an arrangement, at least temporarily, by allowing the shares to be used for other purposes. Any arrangement that did not include Mr Cohen, therefore, could not have removed the remaining uncertainty as to the availability of the shares. This points strongly to there having been no arrangement with Deutsche Bank.

[188]  After careful consideration, we are satisfied that the factors that could raise a reasonable suspicion of an arrangement are clearly outweighed by those pointing to there being no arrangement, but merely the operation of market reality. Market reality meant (in a practical business sense) that the shares would be available for repurchase if required. Perry Corporation was aware of that market reality. No reasons have [*132] been put forward to explain why Perry Corporation would need to enter into an arrangement in the face of that market reality. In addition, the alleged arrangement would not have improved on the market reality because Mr Cohen was not involved. We are satisfied therefore on the balance of probabilities that there was no arrangement in relation to the reacquisition of the Rubicon hedge shares held by Deutsche Bank and that the Judge was in error when she held that GPG had proved the existence of an arrangement.

[189]  On the basis of all the other factors she identified, as well as the fact that in her view there had been an arrangement with Deutsche Bank, the Judge, at para [223], also concluded that there was an arrangement with UBS Warburg. In reaching this conclusion Potter J referred to the pattern of the dealings and transactions by Perry Corporation with UBS Warburg which essentially mirrored those with Deutsche Bank, and said that she had heard nothing from Mr Rosen to suggest otherwise, and that Mr Dozier of UBS Warburg had not given evidence.

[190]  If the Judge could properly have been satisfied that there was an arrangement with Deutsche Bank it may well have been reasonable [*133] for her to suspect an arrangement with the other counterparty. Such an inference may have been able to have been more readily drawn, as discussed earlier, by the absence of any witnesses from UBS Warburg who had had any direct dealings with the swaps or the hedge. As indicated above, however, we have found that most of the factors relied on by the Judge do not point (or at least do not strongly point) to there having been an arrangement or understanding with either Deutsche Bank or UBS Warburg and that the evidence of management controls and division of function within the banks should not have been treated as neutral. We have also found, on the balance of probabilities, that there was no such arrangement with Deutsche Bank. In these circumstances there cannot, in our view, be reasonable grounds to suspect an arrangement with UBS Warburg either.

[191] There were also significant differences between the terms of the UBS Warburg and the Deutsche Bank swaps. In the case of the UBS Warburg swaps, the termination price was set at the price at which the hedge was unwound while the early termination provision was on three days' notice only. These provisions, in our view, mean that, in any [*134] practical business sense, the ability to repurchase the hedge shares on unwind of the swaps was inevitable in the case of UBS Warburg. There can have been no need for an arrangement in such circumstances.

[192] We conclude, therefore, that there can be no reasonable grounds to suspect the existence of an arrangement or understanding with either Deutsche Bank or UBS Warburg.

*Did s 5(2) apply?*

[193] In GPG's alternative submission there was a relevant interest under s 5(2), because Deutsche Bank and UBS Warburg were "accustomed" to act in accordance with Perry Corporation's directions, instructions or wishes in relation to the acquisition or disposition of the Rubicon shares. Potter J found it unnecessary to consider whether there was a relevant interest under s 5(2), given her findings in respect of s 5(1)(f), but she did comment that GPG's submission was less strongly founded in this regard.

[194] The policy behind s 5(2) would appear to be that the provision of an informed market requires an ability to look behind the person who holds the relevant interest to a person who exercises de facto control over the securities. Section 5(2), therefore, gives an ability to look at [*135] substance over form. The phrase "accustomed to act" is used in a number of different contexts and in particular in relation to shadow or de facto directors. For example, s 126(1)(b) of the Companies Act 1993 provides that a director includes a person in accordance with whose directions or instructions a person occupying the position of director (whatever name is used to describe the position) or the board may be required or is accustomed to act.

[195] In *Re Hydrodan (Corby) Ltd* [1994] 2 BCLC 180 at p 183, "accustomed to act" was discussed in the context of the Insolvency Act 1986 (UK), which defined a shadow director as "a person in accordance with whose directions or instructions the directors of the company are accustomed to act" (s 251(b)). Millett J interpreted the section as requiring "a pattern of behaviour in which the board did not exercise any discretion or judgment of their own, but acted in accordance with the directions of others". An identical definition of shadow director in the Company Directors Disqualification Act 1986 (UK) was discussed by the English Court of Appeal in *Secretary of State for Trade and Industry v Deverell [2000] 2 All ER 365 at p 376*. [*136] In that case Morritt LJ, with whom Potter LJ and Morison J agreed, accepted the submission of the Secretary of State that all that is required is that what is said by the shadow director to the board is usually followed over a wide enough area and for long enough. This formulation of "accustomed to act" would not appear to require the same degree of subservience as Millett J required in *Hydrodan* .

[196] There has been little discussion of the phrase "accustomed to act" in New Zealand. In *Dairy Containers Ltd v NZI Bank Ltd* [1995] 2 NZLR 30 at p 90 Thomas J said that the question was one of fact as to whether the directors are accustomed to act on the directions or instructions of another person. Under the equivalent Australian legislation, s 60 of the Corporations Law Act 1991, Finn J held in *Australian Securities Commission v AS Nominees Ltd (1995) 133 ALR 1 at p 52* that there need not be directions or instructions embracing all matters involving the board. What was instead required was that, as and when the directors are directed or instructed, they are accustomed to act in accordance with such directions or instructions. Again a lesser [*137] degree of subservience is required than in *Hydrodan* .

[197] Section 5(2) of the Securities Markets Act is concerned not only with directions and instructions, words with a mandatory effect, but is phrased in wider terms as including "wishes", a word with a more voluntary or less compellable connotation. This may mean that a lesser degree of subservience, even than that set out in *Deverell* and *AS Nominees* , would be appropriate in this context.

[198] We do not need to decide on the appropriate test because, even on the less stringent test, it would be difficult to argue that Perry Corporation's equity swap counterparties were accustomed to act in accordance with Perry Corporation's wishes in relation to the Rubicon shares. Although the communication (Perry Corporation's wish to unwind the swaps and purchase shares) and the consequence (the shares are purchased by Perry Corporation) are clear, there are only three specific occasions in evidence relating to Rubicon shares - the partial unwind with one counterparty and the final unwind with both. In addition, these examples arose in circumstances where the underlying Rubicon shares were almost inevitably going to be held [*138] as a hedge by the banks and where it was in the bank's own commercial interests to sell those shares to Perry Corporation.

[199] With regard to Perry Corporation's swaps generally, the evidence was that it did not usually sell shares to counterparties on entry into an equity swap and on unwind did not usually acquire the underlying shares, it being the

usual practice for the swap counterparty to sell the hedge into the market. As we have observed earlier, Mr Vernon's evidence was that, in the last 392 equity swap trades in the six months to 28 November 2002, Perry Corporation acquired the underlying shares on unwind in only 41 cases. In only 24 cases did Perry Corporation sell shares to counterparties upon entry into swaps and, as indicated above, there was no evidence as to the correlation between the 24 sold in and the 41 cases of physical shares acquired on unwind. The percentage of cases where physical shares were acquired appears in line with market practice. As indicated earlier, Mr Cohen estimated that in 85 - 90 per cent of cases swaps were cash-settled.

[200] It is true that there was no evidence as to the reasons for acquisition in the 41 cases and no evidence that a purchase [*139] by Perry Corporation had ever been refused by the banks. Evidence was given that normally swaps are unwound when Perry Corporation wished to exit a stock position altogether and that there are adverse taxation consequences with a return to physical shares if the swap is "in the money" or if the termination is prior to one year from entry into the swap. It may therefore be inferred that it would not be usual for Perry Corporation to wish to purchase the hedge shares when a swap is unwound. Even on the basis of that inference, we stress that it must be these particular counterparties, Deutsche Bank and UBS Warburg, that are accustomed to act in accordance with Perry Corporation's directions, instructions or wishes. The evidence is not sufficient to draw any conclusions about whether these banks were accustomed to act in accordance with Perry Corporation's directions, instructions or even wishes, in relation to hedge shares held by its swap counterparties.

[201] It is clear too that, as a general phenomenon in the market, there is consultation between the parties to swaps when they are unwound as to the timing and means of unwind and sale of any hedge shares. This stems from commercial [*140] considerations such as a concern to provide flexibility and to ensure minimal market disruption. A sale of hedge shares to a counterparty (if the counterparty wishes to buy) minimises transaction costs and risk for the counterparties. In this regard counterparties can be seen as operating in their own commercial interests. These interests may coincide with their clients' interests and they may also be motivated by a desire to please the clients but we do not consider that s 5(2) is directed at such situations.

*Orders made by Potter J*

[202] As there are no reasonable grounds for suspecting that Perry Corporation had a relevant interest at the requisite time and s 5(2) does not apply, no question of orders under s 32 of the Securities Markets Act arises.

*Result and costs*

[203] The Court being unanimous Perry Corporation's appeal is allowed and Potter J's orders are set aside.

[204] Costs of $18,000 are awarded against GPG in favour of Perry Corporation and of $10,000 in favour of Rubicon plus in each case reasonable disbursements, including travel and accommodation costs for two counsel, to be set by the Registrar if necessary.

[205] Leave is reserved to file submissions [*141] in this Court as to the appropriate orders for costs in the High Court. Any submissions on behalf of Perry Corporation are to be filed on or before 18 November 2003. Those of Rubicon are to be filed on or before 25 November 2003. Those of GPG are to be filed on or before 2 December 2003. Any submissions in reply are to be filed by Perry Corporation on or before 9 December 2003.

[206] I agree with the judgment of Glazebrook J, except in one respect, and with the conclusion she reaches. The exception concerns the difficulties presented by the drafting of the Securities Markets Act 1988 (the Act) and particularly s 30 (her paras [32] - [51]).

[207] The Court has power under s 30 to make the orders provided for in s 32 in certain circumstances relating to non-compliance or suspected non-compliance with provisions of the Act.

[208] It is suspected non-compliance - to put it fully, the existence of reasonable grounds to suspect non-compliance - that causes difficulties in this case, as in others. The suspected non-compliance may be with ss 20, 21, 22 and 28. Sections 20, 21 and 22 require substantial security holders to notify their relevant interest, changes in the quantity of the interest [*142] of more than 1 per cent, and changes in the nature of the interest. Those obligations are stated in objective terms. There is either a breach of obligation or there is not. No breach occurs merely because a suspicion of breach arises. One exactly matching order available to the Court is an order directing the substantial security holder to comply with the provisions (s 32(1)(a)). That order makes sense of course only if the substantial security holder has not complied with its obligations. Actual non-compliance must also be established if persons who have sold or bought secu-

rities at a time when a substantial security holder has not complied with ss 20, 21 or 22 can recover from the substantial security holder the difference in value (s 34). And even that entitlement, dependent as it is on a finding of breach, may be denied or reduced if the Court is satisfied that the failure of the substantial security holder to comply with ss 20, 21 or 22 was not deliberate or should be excused (s 34(6)).

[209]  Under s 30, non-compliance with s 28 may be actual (s 30(b)) or suspected (s 30(c)). Jurisdiction in respect of s 29 exists only in the event of actual non-compliance (s 30(b)). Again, [*143] for actual non-compliance, there are exactly matching orders under s 32(1)(b) and (c): an order directing a person to comply with the notice given under s 28 or under s 29.

[210]  One of the other orders, provided for in s 32(1)(h), may also be directed at "substantial security holder" - not someone who is merely suspected to be a substantial security holder. In that it matches para (a).

[211]  I return to the situations of suspected non-compliance. A critical initial point is that s 30(a) does not on its face relate the reasonable ground to suspect to the issue whether someone is a substantial security holder or not. The Court may make one of the s 32 orders where there are reasonable grounds to suspect that a substantial security holder has not complied with ss 20, 21 or 22. Section 30(a) does not say where there are reasonable grounds to suspect that a holder of securities has not complied with those provisions. Rather, the reasonable grounds to suspect are of contravention by a person who *is* a substantial security holder.

[212]  The obligations under s 20(1) were transitional, relating to those who on 1 January 1989 (the date of the commencement of the 1988 Act) were substantial [*144] security holders. They had to give the detail required by s 20(2) and related regulations. There could be reasonable suspicion about the contravention of those requirements. The same is true of the ongoing obligations under s 20(3). Under s 21, as well, there may be reasonable grounds to suspect contravention by an actual substantial security holder of the requirements of subss (2) and (4). So, too, with the obligations under s 22.

[213]  That is to say, the provisions of s 30(a) do have effect if the reference to substantial security holder is read, as it says, as meaning an actual substantial security holder and not a reasonably suspected one. This is not a case where a particular interpretation appears to deprive a legislative measure of effect.

[214]  There are two other reasons for adhering to the literal meaning. One is the reluctance of the Courts to accord legislative language a subjective meaning unless the language is clearly to that effect. A second reason is provided by the potentially Draconian orders, taking away property rights, that may be made under s 32. The law should strain against a reading allowing such orders, involving the taking of property without the status [*145] of substantial security holder and accordingly of breach being established (see, for example, Francis Bennion, *Statutory Interpretation* (4th ed, 2002), pp 723 - 728).

[215]  I do recognise that under this legislation, given the very extensive array of powers which Parliament has conferred in s 32, the "punishment may [not] fit the crime", but the legislation is still to be seen in a broader context of established legal policy and principle. I accept that the interpretation I am adopting does not relate to the subjective wording in respect of meeting the requirements. In practice, however, that may not be a problem since, as Heron J said in *Securities Commission v Honor Friend Investment Ltd* (1991) 5 NZCLC 67,512, that is likely to be a matter of record. In any event, as I read the legislation, it does make that distinction on its face.

[216]  It is the case that in *Meridian Global Funds Management Asia Ltd v Securities Commission* [1994] 2 NZLR 291 at p 296 (on appeal from the *Honor Friend* case), this Court did, as had Heron J, apply the reasonable ground to suspect test to the existence of the relevant interest, but there is no indication that either Court had the [*146] precise wording of s 30(a), read with ss 20 - 22 and 32, brought to its attention. In a practical sense this Court did get near to the position I am proposing when it said that if the alleged offender established on a balance of probabilities that it had not acquired the interest, there would no longer be reasonable grounds to suspect that it had the interest. But that approach, by putting the onus on the alleged offender rather than on those who under s 31 may bring the proceeding, may be questioned as a matter of principle. And what if the Court is brought to the position, on a balance of probabilities, that it cannot determine that there is a contravention, but it still has reasonable grounds to suspect?

[217]  It may well be the case that in practice it is highly unlikely, as William Young J has put it, that a Court would make an order with substantive effect unless it was satisfied that it was at least more likely than not that a particular breach had occurred (*Richmond Ltd v PPCS Ltd* (2003) 9 NZCLC 263,115). I prefer, however, to get to that result directly, as a matter of interpretation rather than through the exercise of the power and discretion conferred by s 32.

[2004] 1 NZLR 731; 2003 NZLR LEXIS 76, *

The [*147] party bringing the proceeding must establish on the balance of probabilities that the security holder *is* a substantial security holder.

[218] I take the point that ss 30 - 32 may be aimed at two distinct matters - at emergency measures, designed to stop particular securities being marketed or employed for a short period, and orders with final substantive effect, such as compulsory disposal or forfeiture. As much legislative practice shows, reasonable (or good) grounds (or reasons) to suspect (or believe) are frequently all that is required if preliminary safeguarding measures are to be taken, while sub-stantive final rulings will require a breach of obligation to be established, on a civil or criminal standard as appropriate. The legislature has not, however, made that distinction in the present case. It might be thought that it should.

## ORDER:
Appeal allowed; orders made by High Court set aside.

## SOLICITORS:

Solicitors for Perry Corporation: *Phillips Fox* (Wellington).

Solicitors for Ithaca and GPG: *Lowndes Jordan* (Auckland).

Solicitors for Rubicon: *Bell Gully* (Auckland).

**WRITTENBY:** *Reported by:* Andrew Beck, *Barrister* [For table see original]

801.1 (c)

## Verne, B. Michael

| | |
|---|---|
| **From:** | ▮▮▮▮▮▮▮▮▮▮ |
| **Sent:** | Monday, November 14, 2005 4:18 PM |
| **To:** | Verne, B. Michael |
| **Cc:** | ▮▮▮▮▮▮▮▮▮▮ |
| **Subject:** | Treatment of Swap Agreement |

Dear Mike -- Following up on my voicemail, here is some additional information regarding the swap transaction, which, in my view, should not trigger any reporting obligation for "A," assuming that all other filing requirements are met.

A holds $40 million of C's voting securities. A now enters into a swap contract with investment bank B valued at $30 million, pursuant to which A realizes a gain or a loss derived from the gain or loss of the underlying voting securities of C. C's stock is traded publicly. The daily closing price is the benchmark for the swap. If C's stock price rises, A receives cash from B. If C's stock price falls, B receives cash from A. In any case, B receives a fee for its services from A. There is no obligation for either A or B to purchase any of C's stock as a result of the swap agreement, even though B is likely to buy stock in C as a hedge. A has no title to or the power to vote or dispose of B's shares in C, and A has no power to instruct B to do any of these things.

In my view, the transaction is not reportable, because A has no beneficial ownership of C's voting securities beyond the $40 million that it owns outright. The swap agreement does not confer beneficial ownership over those voting securities of C that B may hold to A, because A does not have title to, or the power to vote or dispose of C's shares. The swap agreement is a financial derivative, and A, as the "holder" of the derivative, has only one indicium of beneficial ownership (the upside/downside from the investment) and will not receive any other indicia of beneficial ownership. The situation should be identical to that discussed in Interpretation 55 to Rule 801.1(c)(1) (Premerger Notification Practice Manual, 3rd Ed., p.71).

Please let me know if you agree with my analysis.

Best regards, ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To comply with IRS regulations, we advise you that any discussion of Federal tax issues in this e-mail was not intended or written to be used, and cannot be used by you, (i) to avoid any penalties imposed under the Internal Revenue Code or (ii) to promote, market or recommend to another party any transaction or matter addressed herein.

For more information please go to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

Agree
Bruet—▮▮
11/14/05

1

Westlaw.

61 BUSLAW 1011                                                           Page 1
61 Bus. Law. 1011
**(Cite as: 61 Bus. Law. 1011)**

ⒸBusiness Lawyer
May, 2006

Article

**\*1011 EMPTY VOTING AND HIDDEN (MORPHABLE) OWNERSHIP: TAXONOMY, IMPLICATIONS, AND REFORMS**

Henry T. C. Hu, Bernard Black [FNa1]

Copyright © 2006 by the American Bar Association; Henry T. C. Hu, Bernard Black

*Most American publicly held corporations have a one-share, one-vote structure, in which voting power is proportional to economic ownership. This structure gives shareholders economic incentives to exercise their voting power well and helps to legitimate managers' exercise of authority over property the managers do not own. Berle-Means' "separation of ownership and control" suggests that shareholders face large collective action problems in overseeing managers. Even so, mechanisms rooted in the shareholder vote, including proxy fights and takeover bids, constrain managers from straying too far from the goal of shareholder wealth maximization.*

*In the past few years, the derivatives revolution, hedge fund growth, and other capital market developments have come to threaten this familiar pattern throughout the world. Both outside investors and corporate insiders can now readily decouple economic ownership of shares from voting rights to those shares. This decoupling-which we call "the new vote buying"-is often hidden from public view and is largely untouched by current law and regulation. Hedge funds, sophisticated and largely unfettered by legal rules or conflicts of interest, have been especially aggressive in decoupling. Sometimes they hold more votes than economic ownership, a pattern we call "empty voting." That is, they may have substantial voting power while having limited, zero, or even negative economic ownership. In the extreme situation of negative economic ownership, the empty voter has an incentive to vote in ways that reduce the company's share price. Sometimes hedge funds hold more economic ownership than votes, though often with "morphable" voting rights-the de facto ability to acquire the votes if needed. We call this "hidden (morphable) ownership" because under current disclosure rules, the economic ownership and (de facto) voting ownership are often not disclosed. Corporate insiders, too, can use new vote buying techniques.*

*\*1012This article analyzes the new vote buying and its corporate governance implications. We propose a taxonomy of the new vote buying that unpacks its functional elements. We discuss the implications of decoupling for control contests and other forms of shareholder oversight, and the circumstances in which decoupling could be beneficial or harmful to corporate governance. We also propose a near-term disclosure-based response and sketch longer-term regulatory possibilities. Our disclosure proposal would simplify and partially integrate five existing, inconsistent share-ownership disclosure regimes, and is worth considering independent of its value with respect to decoupling. In the longer term, other responses may be needed; we briefly discuss possible strategies focused on voting rights, voting architecture, and supply and demand forces in the markets on which the new vote buying relies.*

**CONTENTS**

61 BUSLAW 1011                                                        Page 2
61 Bus. Law. 1011
**(Cite as: 61 Bus. Law. 1011)**

I.     Introductio                                                  1013
       n

II.    The New                                                      1020
       Vote Buying:
       Taxonomy and
       Public
       Examples

       A.         Factors                                          1020
                  Underlying
                  Decoupling
                  and
                  Decoupling's
                  Functional
                  Elements

                           *Table 1.*                              1023.
                           *Some Forms*
                           *of New Vote*
                           *Buying*

       B.         Empty                                            1024
                  Voting

                  1.        Empty                                  1024.
                            Voting
                            Through
                            Equity
                            Derivatives

                                    a.        Perry-               1024
                                              Mylan and
                                              Similar
                                              Examples.

                                    b.        Insider             1026
                                              Hedging and
                                              Entrenchment.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

61 BUSLAW 1011
61 Bus. Law. 1011
**(Cite as: 61 Bus. Law. 1011)**

|     |     |     |     |
| --- | --- | --- | --- |
|     | 2.  | Empty Voting Through Record Date Capture | 1027. |
|     |     |     |     |
| C.  | Hidden (Morphable) Ownership |     | 1029 |
|     | 1.  | Morphing from De Facto to Formal Voting Rights | 1029. |
|     | 2.  | Other Uses of Hidden Ownership | 1031. |
| D.  | Related Non-Host Assets |     | 1033 |
|     | 1.  | Mergers | 1033. |
|     | 2.  | Indirect Hedges | 1034. |
| E.  | The Extent of New Vote Buying |     | 1034 |
|     |     | *Table 2. Decoupling Examples* | 1035. |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | | | | |
|---|---|---|---|---|
| III. | Current Ownership Disclosure Rules | | | 1037 |
| | A. | General Considerations | | 1037 |
| | | | *Table 3. Current Ownership Disclosure Requirements Relating to New Vote Buying* | 1039. |
| | B. | Existing Disclosure Requirements | | 1040 |
| | | 1. | Large Shareholder Disclosure (Schedules 13D and 13G) | 1040. |
| | | | a. | Basic Requirements. | 1040 |
| | | | b. | Application to Hidden Ownership. | 1041 |
| | | | c. | Application to Empty Voting. | 1042 |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

61 BUSLAW 1011                                                                                    Page 5
61 Bus. Law. 1011
**(Cite as: 61 Bus. Law. 1011)**

|   |   | 2. | Reporting by Institutional Money Managers (Form 13F) | 1043. |
|---|---|----|-----|-----|
|   |   | 3. | Insider and 10% Shareholder Disclosure (Section 16) | 1045. |
|   |   | 4. | Mutual Fund Reporting | 1046. |
| IV. | A Proposal for Integrated Ownership Disclosure |   |   | 1047 |
|   | A. |   | General Considerations | 1047 |
|   |   |   | *Table 4. Proposal for More Integrated Ownership Disclosure* | 1051. |
|   | B. |   | Large Shareholder Disclosure (Schedules 13D and 13G) | 1052 |
|   | C. |   | Institution | 1053 |

61 BUSLAW 1011                                                                                      Page 6
61 Bus. Law. 1011
(Cite as: 61 Bus. Law. 1011)

al Money
Managers and
Mutual Funds

    D.       Disclosure       1054
of Empty
Voting

    E.       Summary        1055

V.    Toward        1055
Additional
Responses to
Empty Voting

    A.       General        1055
Considerations

    B.       Strategies       1057
Focused on
Voting Rights

        1.       Direct       1057.
Limits on
Voting Rights

        2.       Voting By       1058.
Record
Owners:
Extension to
Equity Swaps

        3.       1059.
Corporatio
n Opt-In

        4.       State       1060.
Corporate Law

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C.    Strategies Focused on Voting Architecture    1062

D.    Strategies Focused on Supply and Demand Forces in the Markets on Which the New Vote Buying Relies    1064

1.    Encouraging Institutional Shareholders to Vote on Important Matters    1065.

2.    Safe Harbor for Voting Instead of Lending Shares    1066.

3.    Reducing the Attractiveness of Lending Shares and Providing Equity Derivatives    1066.

4.    Imposing Responsibilities on Share Lenders and    1067.

61 BUSLAW 1011                                                                          Page 8
61 Bus. Law. 1011
**(Cite as: 61 Bus. Law. 1011)**

|  | Derivatives Providers |  |
| 5. | The Demand Side: Executive Hedging | 1068. |
| VI. | Conclusion | 1069 |

**\*1013I. INTRODUCTION**

The governance structure of the modern corporation emerged in a period characterized by two core concepts. One was the "separation of ownership and control," which has been central to thinking about corporate governance since the 1930s. In stylized form, as conceived by Adolph Berle and Gardiner Means, [FN1] and converted to modern language, the professional managers of public corporations hold few shares yet substantial control. Shareholder-owners face large collective action problems in overseeing managers. Constraining managerial autonomy and reducing the divergence between managerial and shareholder interests are key elements of an overall governance system.

The second core concept was that a "shareholder" has economic ownership coupled with voting power. For much of the period in which modern thinking about corporate governance developed, one-share, one-vote structures were nearly universal, enforced by New York Stock Exchange listing standards. Although dual-class structures became possible around 1990, they remain uncommon. Our views **\*1014** of the ways in which institutional investor oversight and the market for corporate control can discipline management depend on the coupling of economic interest and voting power. Terminology reflects this coupling: we use a single term, "ownership," to refer to possession of both the economic return on shares and corresponding voting power. The deference that courts pay to shareholder votes is premised on the belief that shareholders have an economic interest in increasing share value and will vote to further that interest. Beyond the instrumental role of voting, Delaware courts treat the concept of shareholder-as-owner-and-voter as the core ideological basis for managerial exercise of authority over property the managers do not own. [FN2] Securities and Exchange Commission (SEC) "large shareholder" disclosure rules also largely assume the coupling of economic ownership and voting power. [FN3]

The assumption that votes are tightly linked to economic interest has become increasingly fragile over the past few years. The derivatives revolution in finance, especially the growth in equity swaps and other privately negotiated ("over the counter" or "OTC") equity derivatives, and related growth in the stock lending market, are making it ever easier and cheaper to decouple economic ownership from voting power. [FN4] Both company insiders and outside investors can take advantage of this opportunity. Hedge funds, the emblematic opportunistic investors, have been at the vanguard; the rapid growth of hedge fund assets has coincided with the increase in decoupling. Sometimes they hold more votes than shares-a pattern we call "empty voting" because the votes have been emptied of an accompanying economic interest. In an extreme case, an investor can vote despite having *negative* economic ownership, which gives the investor an incentive to vote in ways that *reduce* the company's share price.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

61 BUSLAW 1011                                                           Page 9
61 Bus. Law. 1011
(Cite as: 61 Bus. Law. 1011)

Investors and insiders can also have economic ownership that exceeds their formal voting rights. This ownership is often "hidden" because current large shareholder disclosure rules often focus on voting power rather than economic interest. Thus, even significant economic ownership may not be known to the outside world. Often, this economic ownership is combined with *de facto* ability to acquire voting rights at any time. The informal, "morphable" nature of these voting rights lets investors plausibly deny the voting power that would trigger disclosure. We use the term "hidden ownership" to refer to undisclosed economic ownership and "hidden (morphable) ownership" to refer to undisclosed economic ownership plus probable informal voting power.

  **\*1015** We refer to empty voting and hidden (morphable) ownership together as "the new vote buying" or simply as "decoupling." In the past several years, this decoupling has affected takeover battles and control of public companies in (at least) Australia, Canada, Germany, Hong Kong, Italy, Japan, New Zealand, the U.K., and the U.S. How often decoupling has been used, and how often it has altered outcomes, is unknown. Policymakers abroad are beginning to confront the new vote buying, principally by requiring additional disclosure. Policymakers in the U.S. have barely begun to address it, but will soon need to. [FN5]

  There are a number of ways to decouple votes from economic ownership. One common method relies on the stock lending market, which lets one investor "borrow" shares from another. Under standard lending arrangements, the stock borrower has voting rights but no economic ownership, while the stock lender has economic ownership without voting rights. A second approach relies in part on an equity swap, in which the person with the long equity side (the "equity leg") of the swap acquires economic ownership of shares, but no voting rights, while the short side (the "interest leg") often hedges its economic risk by holding shares, thus ending up with votes but no net economic ownership. [FN6] Finance-savvy readers will quickly see other possibilities, such as relying on put and call options or, where they exist, on single-stock futures.

  Surprising results can flow from empty voting. A recent public U.S. instance illustrates the potential risks. Perry Corp., a hedge fund, owned seven million shares of King Pharmaceuticals. [FN7] Mylan Laboratories agreed in late 2004 to buy King in a stock-for-stock merger at a substantial premium. However, Mylan's shares dropped sharply when the deal was announced. To help Mylan obtain shareholder approval for the merger, Perry bought 9.9% of Mylan- becoming Mylan's largest shareholder-but fully hedged the market risk associated with its Mylan shares. Perry thus had 9.9% *voting ownership* of Mylan but zero *economic ownership*. Including its position in King, Perry's overall economic interest in Mylan was negative. The more Mylan (over)paid for King, the more Perry stood to profit.

  A second, potentially beneficial use of empty voting involves outside shareholders magnifying the voting power of an existing ownership position. Other things equal, this can reduce shareholder collective action problems. For example, a hedge fund can borrow shares just before the record date for a shareholder vote, then reverse the transaction afterwards. The first publicly reported instance of this "record date capture" strategy occurred in the U.K. in 2002. [FN8] Laxey Partners, a hedge fund, held about 1% of the shares of British Land, a major U.K. property **\*1016** company. At the annual general meeting, Laxey emerged with voting power over 9% of British Land's shares, the better to support a proposal to dismember British Land. Just before the record date, Laxey had borrowed 42 million shares. Hedge funds may see record date capture as a tool for responding to incompetent or self-serving management. Company managers will have a different view.

  Empty voting by institutions is a close cousin to hedging by managers and controlling shareholders who retain formal ownership of shares, while shedding some or most of their economic ownership. [FN9] In the U.S., these strategies have typically been driven by such insiders' desire to shed risk while deferring taxes, rather than by vote buying motives. But insiders can also use empty voting techniques to cement their control.

  Conversely, investors can have greater economic ownership than voting rights-but with the *de facto* ability to

acquire those rights quickly when they are needed. With these "morphable voting rights," the investor likely has full ownership has a practical matter. But under existing disclosure rules, the lack of formal voting rights may let the investor's position remain hidden. Perry's stake in a New Zealand company, Rubicon Ltd., which came to light in 2003, illustrates this. [FN10] Perry used equity swaps provided by derivatives dealers to hold an undisclosed 16% economic stake, despite New Zealand's large shareholder disclosure rules, which, like section 13(d) ("Section 13(d)") of the Securities Exchange Act of 1934 (the "Exchange Act"), [FN11] require disclosure by 5% shareholders. When an election came along, Perry went back to its derivatives dealers, unwound the swaps, acquired the "matched shares" held by the dealers to hedge the swaps, and thus obtained formal voting rights. Perry had morphed its *de facto* voting rights into *actual* voting rights. Its failure to disclose the swaps was held not to violate New Zealand law. Morphable voting rights can also be useful for reasons unrelated to disclosure; for example, to avoid "mandatory bid" rules requiring large shareholders to offer to buy all remaining shares. [FN12]

The new vote buying is largely unregulated and often unseen. Corporate case law relating to "classic" vote buying is generally unlikely to reach the new vote buying without major changes in doctrine. [FN13] In the leading Delaware case, *Schreiber v. Carney*, vote buying is defined as "a voting agreement supported by consideration personal to the [selling] stockholder, whereby the stockholder divorces *1017 his discretionary voting power and votes as directed." [FN14] The focus is on a *transfer of voting rights* to a vote buyer from a vote seller; the court then assesses the seller's motives. In contrast, the new vote buyer can often follow a two-step process, in which neither step involves a transfer of voting rights or a vote seller. *First*, the new vote buyer buys shares in the open market. *Second*, it offsets economic ownership of the shares through derivatives transactions. Thus, in the Perry-Mylan situation, Perry purchased Mylan shares, and then hedged its economic ownership through equity swaps. That is, with modern decoupling, the vote is often acquired not through the transfer to a vote buyer of *voting rights* by a vote seller; but through the transfer by a vote buyer of *economic ownership*. The vote buyer is left only with voting ownership. It has engaged in two ordinary market transactions-purchasing shares and using derivatives for hedging purposes-which are not individually suspect. A new vote buyer using record date capture rather than the foregoing two-step process is also generally not reached by existing case law. [FN15]

Federal disclosure rules scarcely touch the new vote buying either. Institutional investors must disclose their share positions in public companies on Form 13F, [FN16] but generally need not disclose transactions that offset the voting rights or economic interest conveyed by these positions. Nor must they disclose economic ownership acquired through equity swaps or other OTC derivatives. The Schedule 13D and Schedule 13G rules [FN17] governing disclosure by 5% shareholders are more extensive but with some attention to legal niceties, hidden (morphable) ownership and empty voting positions can often be structured in a way that arguably evades the 13D/13G disclosure requirements, and is commonly not disclosed. Even in Perry-Mylan, where Perry filed a Schedule 13D, it made only partial, rather opaque disclosure of its hedging agreements. [FN18] Disclosure by insiders and 10% shareholders under section 16 of the Exchange Act ("Section 16") [FN19] focuses on economic ownership and thus captures empty voting through hedging (since hedging affects economic ownership) but likely does not cover empty voting through stock borrowing (since economic ownership does not change).

Because the new vote buying is often not captured by disclosure rules, its scale is unknown. We did, however, find over twenty confirmed or publicly rumored examples, almost all of which have occurred since 2002. These are set out in Table 2. It is no accident that most of these examples are quite recent, nor that most *1018 involve hedge funds. The theoretical possibility of decoupling votes from economic ownership is not new. [FN20] What is new are investor ability to do so on a large scale, newer derivatives (such as equity swaps) which simplify decoupling, declining transaction costs, and a trillion dollar-plus pool of sophisticated, lightly regulated, hedge funds, largely free from the conflicts of interest and concerns with adverse publicity that may deter other institutional investors from using decoupling strategies.

The corporate governance challenges posed by new vote buying are clear, but the remedies are not. In the near term, we believe that enhanced disclosure (crafted with sensitivity to the costs of disclosure) is desirable, to let both regulators and market participants assess how much new vote buying occurs and how often it affects shareholder

voting or transaction outcomes. If disclosures are made on a real-time basis (a step that goes somewhat beyond our proposal), they can also let the Delaware courts (the most likely venue) address voting rights on a case-by-case basis under general corporate law principles.

Four themes motivate our disclosure reform proposals. One is that disclosure rules should be internally consistent-they should treat substantively identical positions similarly, which current rules do not. In particular, given investors' ability to morph from economic-only to economic-plus-voting ownership, the rules must cover both economic and voting ownership. A second theme is to produce disclosure that is "good enough" to let regulators, companies, and investors assess how often vote buying occurs, without imposing large new costs on anyone. A third theme is to treat long and short positions symmetrically.

The fourth theme is simplification of the ownership disclosure rules. Currently, there are five distinct, idiosyncratic ownership disclosure regimes, applicable respectively to active 5% shareholders (Schedule 13D), passive 5% shareholders (Schedule 13G), institutional investors (Form 13F), insiders and 10% shareholders (Section 16), and mutual funds. [FN21] Our proposals would greatly simplify this complex scheme, and move toward an integrated system of share ownership disclosure, analogous to the current integrated disclosure regime for company disclosures. Moving toward integrated, consistent ownership disclosure could well be worthwhile independent of its role in addressing the new vote buying.

In proposing disclosure reforms, we take as given the rough economic and political logic behind the current rules. We do not revisit whether large shareholders or major institutions should disclose their share positions, nor the threshold levels for this disclosure. The optimality of these thresholds is contestable. We believe, however, that the thresholds are reasonable and that, whatever the thresholds are, the disclosure rules should be internally coherent, which at present they are not. Moreover, the political history of disclosure, in the U.S. and elsewhere, suggests that our political system will not tolerate hidden control of major companies, nor control contests waged behind closed doors. So disclosure there *1019 will be. Our aim is to make that disclosure coherent, simple, and therefore relatively low-cost.

As a regulatory response to hidden (morphable) ownership, disclosure alone may suffice. For empty voting, other responses may also be needed. Still, we consider it premature to adopt proposals that go beyond disclosure at this point.

One reason is that empty voting can sometimes be beneficial and sometimes not, depending on the circumstances. On one hand, empty voting by insiders can increase entrenchment and undermine external oversight. Empty voting with negative economic interest is also troubling. On the other hand, hedge funds using empty voting can, under certain circumstances, strengthen shareholder oversight of company managers. Empty voting could let votes move from less to better informed hands and, thus, could enhance the effectiveness of shareholder oversight. [FN22] Of course, supporters of management discretion will have a different view. Martin Lipton, for instance, believes that hedge fund activism and "abusive" takeovers can cause managers to focus too much on short-term results. [FN23] Under this view, decoupling by outside investors would tend to exacerbate the problem. We do not address here the optimal level or type of shareholder oversight of managers; we merely note that many observers believe that more external oversight would be beneficial on balance.

Another problem with some regulatory responses stems from the multiple forms that new vote buying can take, and the need to understand these forms before regulating them. As yet, we know too little about the new vote buying to know what rules to write. Yet delegating rule-writing power to companies is problematic, because company managers may well write rules that block vote-buying forms used by outside investors, while allowing forms used by insiders. Moreover, some substantive responses may exceed the SEC's statutory authority.

Nonetheless, over a longer term, additional steps could prove useful in addressing empty voting. We discuss

three families of possible strategies at the end of this article. One family focuses directly on voting rights. The key question is: under which circumstances should empty voters lose voting rights? A second family of strategies focuses on updating the mechanics of shareholder voting. A *1020 third family of strategies focuses on supply and demand forces relating to the new vote buying, such as rules that would encourage or require institutional investors to recall lent shares around voting record dates.

This article proceeds as follows. Part II proposes a taxonomy of the elements of empty voting and hidden (morphable) ownership, and provides details on the public examples we have been able to locate. Part III discusses the current ownership disclosure rules. Part IV presents our integrated ownership disclosure proposal. Part V offers a menu of possible additional longer-term responses. Part VI concludes.

This article is part of a broader research agenda relating to the new vote buying. In two companion articles, one directed at an academic legal audience and the second at a finance audience, we discuss the theoretical and empirical literature (principally in finance) that bears on the benefits and costs of decoupling, present more details on the known examples of new vote buying and on longer-term regulatory options, and provide fuller citations. [FN24] As far as we are aware, this article and its companions are the first attempt to systematically analyze the new vote buying and its corporate governance implications. [FN25]

## II. THE NEW VOTE BUYING: TAXONOMY AND PUBLIC EXAMPLES

### A. FACTORS UNDERLYING DECOUPLING AND DECOUPLING'S FUNCTIONAL ELEMENTS

In their classic 1983 article on voting in corporate law, Judge Frank Easterbrook and Professor Daniel Fischel stated that "[i]t is not possible to separate the voting right from the equity interest" and that "[s]omeone who wants to buy a vote must buy the stock too." [FN26] This was an oversimplification then, but only a bit. For the most part, voting rights were linked to shares.

With the new vote buying, in contrast, the economic return on shares can be easily decoupled from the related voting rights. Modern financial innovations, *1021 especially OTC derivatives, have played a central role in this decoupling. [FN27] OTC derivatives are customizable tools that can be engineered to facilitate decoupling. The rapid growth in share lending over the last decade pushes in the same direction. [FN28] Share lending underlies most current decoupling strategies, both directly (for record date capture and short selling) and indirectly, by helping derivatives dealers hedge their exposure on equity swaps. We can expect the "supply" of financial technology available for decoupling to continue to increase.

Demand factors have also been at work. Hedge funds have grown rapidly in the last decade and now have over $1 trillion in investor assets, compounded by many funds' use of leverage. [FN29] Hedge fund managers typically have wide leeway as to the strategies they can use; many are comfortable with equity derivatives and other sophisticated financial tools. Unlike mutual funds and pension funds, they also face few regulatory constraints. And, in the past year or two, some have adopted corporate governance activism as an investment strategy. [FN30] Hedge funds usually have fewer conflicts of interest than other institutional investors, and less concern with adverse publicity, so can be more aggressive in using decoupling strategies.

Understanding the new vote buying must begin with identifying its core functional elements. Throughout this article, we assume a simple context: a publicly held corporation with one class of equity (each share carrying one vote) and diversified shareholders with homogeneous preferences. We treat shareholder wealth maximization as a corporate goal and do not consider non-shareholder constituencies. [FN31] We sometimes refer to an outside investor who engages in new *1022 vote buying as a "hedge fund" and an officer, director or controlling shareholder who does so as an "insider."

To proceed further, it helps to define a set of terms. By "**formal voting rights,**" we mean the *legal* right to vote shares under company law (as supplemented by SEC and stock exchange rules governing voting of shares held in street name), including the legal power to instruct someone else how to vote. Thus, in the common situation where a broker holds shares in street name for a customer, the customer has formal voting rights because it has the right under stock exchange rules to instruct the broker how to vote the customer's shares. By "**voting rights**" or "**voting ownership**" of shares, we mean formal *or informal* rights to vote shares, including the de facto power to instruct someone else how to vote. In Perry-Rubicon, Perry had voting rights because it had the informal power to return to its derivatives dealers at any time, unwind its equity swaps, and obtain Rubicon shares from the dealers. [FN32] The company at which voting takes place is the "**host company.**"

By "**economic ownership,**" we mean the economic returns associated with shares. This ownership can be achieved directly by holding shares, or indirectly by holding a "**coupled asset,**" which conveys returns that relate directly to the returns on the shares. Economic ownership can be either **positive**-the same direction as the return on shares-or negative-the opposite direction from the return on shares. Someone who owns voting shares has "**full ownership,**" consisting of voting ownership plus direct economic ownership. Coupled assets include derivatives (such as options, futures, and equity swaps), contractual rights (such as rights under a stock loan agreement), and other financial products. A coupled asset can either increase or decrease economic ownership. Decoupling often involves owning both shares and a coupled asset.

By "**net economic ownership,**" we mean a person's combined economic ownership of host company shares and coupled assets. This net ownership can be positive, zero, or negative. We characterize as an "**empty voter**" a person whose voting rights substantially exceed his net economic ownership. Depending on the nature of the coupled assets, net economic ownership may depend on share price. Suppose, for example, that a company's shares trade at $50, and an executive enters into a zero-cost collar that caps the upside on the shares at $60 and limits the downside to $45. The executive will have higher net economic ownership for share prices within the $45-$60 range than outside this range.

An investor may also hold "**related non-host assets**"-assets, often securities of another company, whose value relate in some way to the value of the host company's shares. In Perry-Mylan, for example, Perry's shares in Mylan's target, King Pharmaceuticals, were a related non-host asset. The combined return on host shares, coupled assets, and related non-host assets produces what we call an "**overall economic interest**" in the host firm's shares. This overall economic interest can be positive, zero, or negative. In the Perry-Mylan example, Perry combined full ownership of the Mylan shares with coupled assets (equity swaps \*1023 and other hedges) that offset its economic ownership; this left it with 9.9% *voting ownership* and zero*net economic ownership*:

> [9.9% full ownership of shares] - [9.9% economic ownership (through coupled assets)]
> = [9.9% voting + 9.9% economic ownership] - [9.9% economic ownership]
> = [9.9% voting ownership]

But Perry also held a related non-host asset-shares of King Pharmaceuticals, which gave it a **negative***overall economic interest*-it would profit if Mylan overpaid for King.

If a person has economic ownership that disclosure rules do not cover (or can reasonably be interpreted by the person as not covering), we call this "**hidden ownership.**" If this hidden ownership is likely to include informal voting rights, we term this "**hidden (morphable) ownership.**" These "**morphable**" voting rights derive from market customs and the economic incentives of the pertinent participants; these rights will generally not be formally enforceable or verifiable by outsiders. Perry's hidden (morphable) ownership of Rubicon offers an example.

Notice that whatever form new vote buying transactions take, only the host company can alter the total level of voting rights or economic ownership. If one investor holds more voting rights than economic ownership, someone else must hold more economic ownership than voting rights.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

61 BUSLAW 1011                                                              Page 14
61 Bus. Law. 1011
**(Cite as: 61 Bus. Law. 1011)**

Table 1 offers some illustrative examples of the forms that new vote buying can take.

**Table 1. Some Forms of New Vote Buying**

Examples of some of forms of new vote buying. These examples are illustrative only. The Perry-Mylan, Laxey-British Land, insider hedging, and Perry-Rubicon examples are discussed in the text above. The other examples are discussed below.

| Example | Voting Ownership | Economic Ownership | Coupled Asset | Net Economic Ownership | Related Non-Host Asset | Overall Economic Interest |
|---|---|---|---|---|---|---|
| .......... | | | | | | |
| ***Empty Voting*** | | | | | | |
| ........ | | | | | | |
| share ownership hedged with short equity swap (Perry-Mylan) | yes | direct | equity swaps, others | no | yes (target shares) | negative |
| ........ | | | | | | |
| share ownership hedged with options (Coles Myer proxy fight) | yes | direct | short call + long put | zero | no | zero |
| ........ | | | | | | |
| share ownership hedged with related non-host asset (MONY-AXA) | yes | direct | possible | not known | yes (acquirer bonds) | negative |
| ........ | | | | | | |
| record-date capture via stock borrowing | yes (high) | Direct (low) | share loan | yes (low) | no | low |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(Laxey-British Land)

| | | | | | | |
|---|---|---|---|---|---|---|
| ........ | | | | | | |
| record-date capture via stock borrowing in combination with short-sale (Henderson Investment) | yes | negative | share loan + short sale | negative | no | negative |
| ........ | | | | | | |
| insider hedging | yes | direct (lowered) | equity derivatives | positive (lowered) | no | positive (lowered) |
| ........ | | | | | | |
| Deutsche Boerse-London Stock Exchange (for hedge funds that were long acquirer shares and short target shares) | yes | direct | no | yes | yes (target shares) | positive or negative, depending on stake in target |
| ........ | | | | | | |
| ***Hidden (Morphable) Ownership*** | | | | | | |
| ........ | | | | | | |
| voting rights exercised by acquiring shares (Perry-Rubicon) | informal right to acquire shares from derivatives dealers | indirect | equity swaps | yes | no | high |

| ........ | | | | | | |
|---|---|---|---|---|---|---|
| voting rights exercised by directing votes of others (Marks & Spencer) | informal right to direct voting by derivatives dealers' matched shares | indirect | equity swaps | yes | no | high |

........

**\*1024 B. EMPTY VOTING**

We turn in this Section B to a closer examination of the mechanics of empty voting. Section C addresses hidden ownership. Section D addresses the extra complexities introduced by related non-host assets.

**1. Empty Voting Through Equity Derivatives**

*a. Perry-Mylan and Similar Examples*

The Perry-Mylan example, discussed briefly in the Introduction, offers a good case study of empty voting through the use of OTC equity derivatives. As of late 2004, Perry Corporation owned seven million shares of King Pharmaceuticals, a generic drug maker. [FN33] Mylan Labs, a rival, agreed to acquire King Pharmaceuticals in a stock-for-stock merger at a significant premium over King's trading price, and thus a large profit for Perry. However, Mylan's shares dropped sharply when the deal was announced, and Mylan needed shareholder approval for the merger. Perry therefore bought a 9.9% stake in Mylan, which it could vote in favor of the merger. At the same time, Perry hedged its economic exposure to Mylan by taking the short or "interest" leg of equity swaps with derivatives dealers and entering **\*1025** into other unspecified transactions. The derivatives dealers who took the long or "equity" leg of the Mylan swaps likely hedged their Mylan exposure, perhaps by selling Mylan shares short. A second hedge fund, Citadel, acquired another 4.4% of Mylan's shares and was rumored to have followed a strategy similar to Perry's.

Carl Icahn, a major Mylan shareholder, opposed the acquisition. He sued Mylan and Perry under federal securities law, including Section 13(d). He claimed that Perry and other unnamed hedge funds following similar strategies held 19% of the Mylan votes, yet no economic interest. If so, Perry and kindred investors had a negative overall economic interest in Mylan. They would want Mylan to complete the deal even if Mylan's value were to suffer. Indeed, the more Mylan overpaid, the better. The lawsuit became moot when Mylan abandoned the acquisition because of accounting problems at King.

Several other anecdotes illustrate how hedged share purchases can be used to influence voting outcomes.

• In 2004, French insurer AXA entered into a merger agreement to acquire MONY. To finance the bid, AXA issued convertible bonds, which were convertible into AXA shares at a discount to AXA's price *only if* AXA acquired MONY. Holders of AXA bonds apparently acquired MONY shares to vote for the merger, while short sellers of the AXA bonds (including the Highfields Capital hedge fund) acquired MONY shares to oppose the merger, with neither group's vote turning on whether the merger was good for MONY. The AXA bondholders may have hedged some or all of their MONY positions. [FN34]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

• During Hewlett Packard's 2002 acquisition of Compaq, some holders of Compaq shares were rumored to have engaged in empty voting of H-P shares to support the merger. The merger announcement led to a sharp drop in H-P's price and to a proxy contest by Walter Hewlett opposing the merger. Empty voting might have affected the outcome of this very close vote. [FN35]

• In a 2002 proxy contest at Australian firm Coles Myer, investor Solomon Lew held 3% of Coles Myer's shares. To support his proxy campaign, he acquired another 4% of Coles Myer's shares while hedging his economic ownership with (short call, long put) options positions. [FN36]

**\*1026** These strategies are troubling. Many acquisitions turn out poorly for the acquirer. [FN37] The major U.S. stock exchanges require the acquirer's shareholders to approve a large stock-for-stock merger. Yet in practice, the acquirer's shareholders rarely vote down even apparently overpriced mergers. Empty voting on the acquirer's side by the target's shareholders, employed when the vote on a merger is likely to be close, could reduce the limited constraint the vote requirement now imposes on the acquiring firm's managers.

Moreover, these techniques can readily be extended to proxy fights for control. With control at stake, neither side can be counted on to play fair and simply solicit the votes of other shareholders. The temptation to buy votes quietly will be strong, especially if the other side may be doing so as well. Cleverness in vote buying-a characteristic not necessarily associated with either ability or incentive to run the company well-may become important for proxy fight success.

*b. Insider Hedging and Entrenchment*

Corporate executives are often ill-diversified. Both their human capital and much of their financial capital is tied up in the firm they manage. Controlling shareholders, often the founder's family, are similarly undiversified. These insiders often want to reduce their economic exposure to the firm's shares- hopefully without causing public concern that insiders are bailing out, triggering a tax bill, or, for controlling shareholders, giving up control. High levels of insider ownership are reasonably common. One survey of New York Stock Exchange-listed companies with 2001 revenues between $250 million and $1.5 billion found that more than one in ten had Chief Executive Officers who held more than 10 percent of the shares. About half of those companies had insiders who held more than 50 percent of the shares. [FN38] Lack of diversification will often cause insiders to be more averse to firm-specific risk than diversified outside shareholders.

Investment banks have developed strategies to accommodate the desire of insiders to hedge their economic exposure. Multiple techniques have emerged. One is a short equity swap position. Another, known as a zero-cost collar, involves buying a put option (to limit downside loss) and selling a call option (thus reducing potential gain). [FN39] Such a collar sharply reduces economic ownership but preserves voting rights. A 2001 study reports that senior executives in U.S. public companies, on average, use collars for 36% of their holdings and thereby reduced **\*1027** their economic ownership position by 25%. [FN40] In the past five years, the use of derivatives by executives appear to have increased dramatically. [FN41]

To be sure, there are other ways for insiders to retain control while shedding economic ownership, including dual-class common stock and pyramidal ownership structures. [FN42] There may be justifications for insiders to use dual-class stock to raise capital without relinquishing control. In particular, the buyers of low-vote shares know what they are getting, and will pay a market price. So too for buyers of shares in companies controlled through pyramids. The new vote buying, however, is more akin to the criticized and now-banned dual-class recapitalizations of the 1980s, in which insiders acquired control without paying a market price for doing so. In some respects, the new vote buying is worse than a dual-class recapitalization-the recapitalization was publicly known and required a shareholder vote, while new vote buying requires no vote and can sometimes be hidden.

**2. Empty Voting Through Record Date Capture**

Thus far, we have focused on empty voting strategies that involve holding shares and hedging one's economic ownership. A second strategy, known as *record date capture*, involves borrowing shares in the stock loan market. In a typical stock loan, the borrower obtains shares (and accompanying votes). [FN43] The borrower contracts with the stock lender to: (i) return the shares to the lender at any time at the election of either side; and (ii) pay to the lender the value of any dividends or other distributions on the shares during the borrowing period. The loan is secured with cash or Treasury securities. This borrowing contract (a coupled asset in our terminology) leaves the economic risk of the shares with the lender. The borrower holds votes but no economic ownership. The lender has economic ownership without votes.

A traditional use of stock borrowing is to facilitate short selling. The borrower sells the borrowed shares in the market, [FN44] ending up with no votes and negative net economic ownership. Later, the short-seller closes out the short position by *1028 buying shares in the market and delivering them back to the stock lender. But, omit the short sale, and stock borrowing becomes an easy route to empty voting.

Here is how the strategy works. Before a shareholder meeting, a company's board of directors establishes a voting record date. [FN45] Shareholders who hold shares on the record date have the right to vote at the meeting. The empty voter simply borrows shares before the record date, and returns them afterward. Efforts by pension funds and other stock lenders in the U.K. to respond to record date capture suggests that the practice is reasonably widespread in the U.K. [FN46] A recent working paper by Christoffersen, Geczy, Musto and Reed provides quantitative, albeit dated, evidence for the U.S. market. They report, based on stock loan data from a custodian bank in 1999 and a broker-dealer from 1996-2001, that stock loans spike on the record date, increasing on average from 0.21% to 0.26% of outstanding shares. The spike in borrowing is higher for firms that have had poorer financial performance, for meetings that result in a close vote, and for firms that experience higher support for shareholder proposals. [FN47]

The shares of most publicly traded stocks in the U.S. can be borrowed. A study by Gene D'Avolio of shares available from just one large financial institution found that the stocks that could not be borrowed accounted, in the aggregate, for less than 1% of market capitalization. [FN48] Borrowing shares is generally cheap: 91% of the stocks lent in this sample cost less than 1% per year to borrow. The number of borrowable shares is often large-during some recent corporate battles, up to 20% of a company's shares were held by borrowers. [FN49]

The Laxey Partners-British Land incident, discussed in the Introduction, offers an example of record date capture. [FN50] Laxey sought a breakup of British Land and opposed the reelection of British Land's chairman. British Land's chairman was a bit miffed at what he called Laxey's "rent-a-vote" strategy. [FN51] There was irony all around. British Land saw Laxey as abusing the corporate voting system, while Laxey perceived itself as calling weak management to account. Meanwhile, fund manager Hermes, one of the City's champions of good corporate governance, was (unknowingly) one of the stock lenders. Hermes did apologize.

*1029 In early 2006, a far more questionable use of record date capture appears to have occurred in Hong Kong. Henderson Land wished to buy the 25% minority interest in Henderson Investment, a publicly held affiliate. [FN52] Henderson Investment's share price increased substantially, in anticipation that its shareholders would approve the buyout. Under Hong Kong law, however, the buyout could be blocked by a negative vote of 10% of the "free floating" shares-in this case about 2.5% of the outstanding shares. To everybody's surprise, 2.7% of the shares-75.5 million shares-were voted against the buyout. Henderson Investments shares fell 17% the day after the voting outcome was announced.

What happened? It appears that one or more hedge funds borrowed Henderson Investment shares before the record date, voted against the buyout, and then sold those shares short, thus profiting from its private knowledge that the buyout would be defeated. One hedge fund alone voted at least 72 million shares against the merger; that fund may have held enough shares by itself to defeat the buyout. Thus, a shareholder with negative economic ownership blocked a deal that would benefit other shareholders.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Consider next a variant on record date capture. An investor can buy shares just before the record date and sell them soon thereafter. The investor has economic exposure for a short period and can hedge some or all of this exposure through equity derivatives. The timing of the economic exposure further reduces any link between economic ownership and voting rights. The record date is well before the meeting date. There is no reason to expect company-specific news on the record date. By the meeting date, the investor will have sold his shares and will suffer no harm from voting in ways that reduce share price; indeed, as in Henderson Investments, the investor could even gain from doing so. [FN53]

## C. HIDDEN (MORPHABLE) OWNERSHIP

### 1. Morphing from De Facto to Formal Voting Rights

Equity derivatives can also be used to conceal ownership, against the background of disclosure rules that, as we discuss in Part IV, turn largely on voting rights rather than economic ownership. Perry has used equity derivatives for this purpose as well as for empty voting. In early 2001, Perry was a major holder of Rubicon Ltd., a New Zealand public company. [FN54] New Zealand has rules similar *1030 to Section 13(d), which required disclosure of 5% ownership positions in public companies. [FN55] In June 2001, Perry gave notice that it had ceased to be a 5% holder. Then-to everyone's surprise-on July 11, 2002, Perry disclosed that it held 16% of Rubicon. It had bought 31 million shares from Deutsche Bank and UBS Warburg-just in time to vote at Rubicon's shareholder meeting.

What happened during the interim period? On May 31, 2001, Perry shed its voting rights but not its economic interest. It sold 31 million shares to Deutsche Bank and UBS Warburg and simultaneously took the long side of equity swaps covering these shares. Perry stopped reporting as a 5% owner because, it claimed, its equity swap position fell outside the New Zealand disclosure rules. When Perry needed voting rights, it terminated the swaps and bought the shares back from Deutsche Bank and UBS Warburg. Another major Rubicon shareholder challenged Perry's right to vote. Perry lost at trial but won on appeal.

How did Perry know that it had *de facto* ability to reacquire and vote Rubicon shares, when it chose to do so? The two banks needed to hedge their exposure on the swaps. Perry could expect them to do so by holding the shares they had bought from Perry. Another means of hedging was unlikely, given the thin market for Rubicon shares and the transaction costs to hedge in another way. Perry could also expect the banks to sell the shares back to Perry when Perry chose to unwind the equity swaps. Even the Court of Appeal, which ruled in Perry's favor, stated that:

> [I]t was almost certain that the shares would be sold to Perry Corporation upon the termination of the swaps if Perry Corporation wished to buy, provided the counter-parties held the shares (... [which] was highly likely). We consider that this market reality would have been obvious to any reasonably informed market participant. Mr Rosen, head trader of Perry Corporation, said in evidence that he had always thought it likely that the shares would be held by the counterparties as a hedge. He also said that, if he wanted to terminate the swaps and purchase the shares, it would have been commercially sound for the ... counterparties to sell him those shares. [FN56]

The Court of Appeal nonetheless concluded that disclosure was not required, partly because it believed disclosure would generally not be required in Australia, the United States, or the U.K.

Holding "matched shares" is a common way for a derivatives dealer to hedge the short side of an equity swap. Especially when the equity swap involves a large number of shares in a thinly traded company, alternative hedging strategies may be limited. When a dealer hedges through share ownership, a *de facto* practice is apparently emerging, at least in the U.K., in which the dealer, if asked, will either unwind the swap and sell the shares to its client (as in Perry-Rubicon) or vote the shares as its client wants (we cite some examples in Table 2). To refuse would risk the dealer's business relationship with its client, and perhaps its market reputation as a reliable

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

counterparty. Indeed, dealers may hedge with matched shares precisely because doing so lets the swap dealer accommodate its client by unwinding*1031 the swap or voting the shares if needed. The Code Committee of the U.K.'s Panel on Takeovers and Mergers recently explained that it is "frequently the expectation" of a long equity swap holder that the derivatives dealer would "ensure" that the shares are available to be voted by its customer and/or sold to the customer on closing out the contract. [FN57] If the dealer hedged in another way, the holder would "normally expect" the dealer to acquire the necessary shares, even if this resulted in cost to the dealer. [FN58]

Market expectation that a dealer will unwind a swap, however, is not a guarantee. A 2006 buyout offer by Sears Holdings for the minority shares in its Sears Canada subsidiary, illustrates this. [FN59] A hedge fund acquired equity swaps in Sears Canada from Scotiabank. A unit of Scotiabank later became the dealer-manager for Sears Holdings' buyout offer. The offer required approval by a majority of the Sears Canada minority shareholders. The bid was opposed by Sears Canada's independent directors and by many Sears Canada shareholders. The hedge fund (presumably) thought it had morphable voting rights and asked Scotiabank to unwind the swap so it could vote against the offer. Scotiabank not only refused but committed to vote its Sears Canada shares *for* the offer. Scotiabank thus became an empty voter; perhaps with negative economic interest because of its relationships with Sears Holdings and Sears Canada. Another possible characterization is to see Sears Holdings as the empty voter, voting indirectly through its influence over Scotia Bank. The hedge fund complained about Scotiabank's failure to observe market conventions and said it was "looking forward to regulatory and legal scrutiny of this transaction." [FN60]

## 2. Other Uses of Hidden Ownership

An additional use of hidden ownership involves avoiding mandatory bid rules. In many countries, a shareholder who acquires more than a specified percentage of a company's shares must offer to buy all other shares at a formula price. Holding equity swaps instead of shares can let a shareholder avoid these rules.

In 2005, for example, the Agnelli family, which controlled Fiat, quietly entered into equity swaps for Fiat shares with Merrill Lynch. [FN61] The family wanted to retain *1032 control of Fiat after dilution of its stake through a forthcoming debt-for-equity swap, in which Fiat would issue shares to various banks. If the Agnelli family had bought shares directly, it would have crossed a 30% ownership threshold, thus triggering Italy's the mandatory bid rule. The Agnellis also would have had to disclose their purchases, which could have affected Fiat's share price. After Fiat completed its debt-equity swap, the Agnelli family unwound the swaps and obtained the "matched" Fiat shares. The Italian securities commission ruled that the Agnellis did not violate the mandatory bid rule; it is still investigating the propriety of nondisclosure.

Avoiding a mandatory bid rule also animated the earliest example of decoupling we are aware of. In 1997, Brierley Investments used equity swaps to increase its stake in John Fairfax Holdings from 19.98% to 25%. [FN62] If Brierley had acquired more than 20% of the shares, it would have had to offer to buy all of the Fairfax shares. Unlike the Agnellis, Brierley disclosed its swap position to market participants; it merely sought (successfully) to evade Australia's mandatory bid rule.

The Agnellis had a second goal-to acquire shares more cheaply, by evading large shareholder disclosure rules. This theme emerged as well in Australia, during the 2005 takeover bid by Centennial for Austral Coal. [FN63] Rival Glencore acquired a "blocking position" (sufficient to prevent Centennial from reaching 90% ownership and then squeezing out remaining shareholders), through a combination of shares and equity swaps (which the derivatives dealers hedged with matched shares). Glencore claimed that the equity swaps did not need to be disclosed under Australia's large shareholder disclosure rules (which are triggered by 5% share ownership), and disclosed its combined position only after crossing 10%. The Australian Takeovers Panel held that Glencore should have disclosed its combined position when its economic ownership crossed 5% and assessed damages based on Glencore's estimated savings from purchasing its full stake prior to disclosure. However, the Panel's decision was reversed on appeal by the Australian courts.

Hidden ownership may not always be undesirable from the standpoint of corporate governance. For instance, consider the possible use use of hidden ownership to obtain a "toehold" stake in a target company in advance of a takeover proposal. An unresolved puzzle in finance is why more takeover bidders do not acquire toeholds, since doing so would appear to be highly profitable. [FN64] The usual *1033 explanations are concern about prompting a price run-up, which could increase total acquisition cost, and concern that target knowledge of the toehold may make bidder resistance more likely. An equity swap offers a quiet toehold that need not be disclosed. Nondisclosure might reduce market impact cost, or simply avoid bidder resistance. In Australia, for example, BHP Billiton, before announcing a 2004 bid for WMC, acquired a 4.3% toehold through equity swaps. [FN65] BHP disclosed its toehold before crossing the 5% threshold at which a direct share position had to be disclosed. Its reasons for acquiring swaps rather than shares are not known. Perhaps it wanted to preserve the possibility of acquiring more than 5% before disclosing its position.

D. RELATED NON-HOST ASSETS

We consider here some complexities that can arise when related non-host assets form part of a shareholder's overall economic interest.

**1. Mergers**

One recurring situation involving related non-host assets is a proposed merger. We have already seen several examples, including Perry-Mylan, AXA-MONY, and Hewlett Packard-Compaq, where the empty voter had a limited or negative overall economic interest in the acquirer. But economic ownership in both bidder and target can also increase a shareholder's economic interest, and thus reduce the collective action problems that often lead to shareholder passivity when an acquirer proposes an overpriced acquisition.

Actions by hedge funds to oppose Deutsche Boerse's proposed acquisition of the London Stock Exchange (LSE) illustrate. In December 2004, Deutsche Boerse proposed buying the LSE. [FN66] In January 2005, two hedge funds (Children's Investment Fund and Atticus Capital), together holding 8% of Deutsche Boerse's shares, publicly opposed the bid as against shareholder interests. (We cannot resist noting that the head of Children's Investment Fund is a Perry alumnus. [FN67]) The acquisition was eventually abandoned. What connects this story to vote buying is that certain hedge funds-perhaps including these two funds-shorted a significant number of LSE shares soon after the opposition was announced. Let us *1034 assume that some hedge funds went long Deutsche Boerse and short LSE, thus betting that the acquisition would fail-causing Deutsche Boerse shares to rise and LSE shares to fall. The LSE short positions would increase the hedge funds' net economic interest in the Deutsche Boerse vote, and might make it cost-justified for them to undertake a public campaign against the acquisition.

However, other combined Deutsche Boerse-LSE positions could have the opposite effect. For example, merger arbitrageurs who follow the "classic" strategy of betting on completion of a stock-for-stock merger by going long the target and short the acquirer (the opposite of the posited CIF and Atticus strategy) have an incentive to support a merger, even if it was bad for the acquirer or the combined firms. Thus, ownership of related non-host assets could, at the same time, empower CIF and Atticus to pressure Deutsche Boerse to make a "good" decision, and empower classic merger arbitrageurs to support deal completion regardless of the merits.

In a merger situation, it is not much of a stretch to imagine a subterranean battle for votes among investors with differing overall economic interests. In such a battle, the voting outcome might not reflect the acquisition's expected value to the acquirer, the target, or both companies together. The outcomes in Henderson Investments and Sears Canada were apparently altered by new vote buying; vote buying may also have been outcome-determinative in AXA-MONY and Hewlett Packard-Compaq, though no one knows for sure (at least not publicly).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

61 BUSLAW 1011                                                                Page 22
61 Bus. Law. 1011
**(Cite as: 61 Bus. Law. 1011)**

**2. Indirect Hedges**

Other plausible related non-host assets can exist, in addition to positions in the other party to a takeover bid. The essential characteristic of a related asset is that its value relate in some way to the value of host shares. Thus, an executive at Ford who is concerned about the future of Ford and other American car companies, might buy put options on shares of General Motors or a Ford supplier, rather than put options on Ford (which would raise legal and perception issues). [FN68]

**E. THE EXTENT OF NEW VOTE BUYING**

Table 2 lists all publicly disclosed (or in some cases rumored) decoupling examples that we have been able to find, in rough reverse chronological order. The list suggests the potential scale of decoupling, while the dates suggest its recent advent. Other evidence, including data on executive hedging and record date capture, suggest that the new vote buying is reasonably common. [FN69]

**\*1035Table 2. Decoupling Examples**

This table lists, roughly in reverse chronological order, the known (or publicly rumored) instances of new vote buying we were able to collect. The list is surely partial: if readers know of instances not on this list, we would be grateful to learn of them.

| Date | Host Company | Country | Vote Buyer | Empty Voting | Hidden (Morphable) Ownership | Coupled Asset or Related Non-Host Asset | Description | Source |
|------|------|------|------|------|------|------|------|------|
| 2006 | Sears Canada | Canada | hedge fund (Bill Ackman) and Scotiabank | X (by Scotiabank) | X (by Ackman's hedge fund: unsuccessful) | equity swap | | See Part II.C |
| 2005 | Henderson Investment | Hong Kong | hedge fund(s) | X (short position) | X | share borrowing + short sale | | See Part II.B |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

61 BUSLAW 1011                                                                    Page 23
61 Bus. Law. 1011
**(Cite as: 61 Bus. Law. 1011)**

| 2005 | Fiat | Italy | Agnelli family | X | | equity swaps | See Part II.C |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 2005 | Austral Coal | Australia | Glencore | X | | equity swaps | See Part IV.B |
| 2005 | Fuji TV | Japan | Nippon Broadcasting | X | stock lending | Nippon lent its shares in Fuji TV to others as a defense to a takeover bid by Livedoor, producing a variant of hidden (morphable) ownership in which Nippon had economic ownership, but hoped to *deny* voting rights to Livedoor | [FN70] |

61 BUSLAW 1011
61 Bus. Law. 1011
**(Cite as: 61 Bus. Law. 1011)**

| Year | Company | Country | Acquirer | | Instrument | Comment | |
|------|---------|---------|----------|---|------------|---------|---|
| 2005 | Deutsche Boerse | Germany | hedge funds | X | short sale of target shares | See Part II.D | |
| 2005 | Portman Mining | Australia | Seneca (hedge fund) | X | equity swaps | Seneca held 9% economic interest in Portman through equity swaps provided by CSFB. | FN [FN71] |
| 2004-2005 | WMC Resources | Australia | BHP Billiton | X | equity swaps | See Part II.C | |
| 2004-2005 | Mylan Laboratories | U.S. | Perry Corp (hedge fund) | X | equity swaps | See Part II.B | |
| | | | Citadel (hedge fund) (possible) | X | unknown | | |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | | | | | X | | | FN |
|---|---|---|---|---|---|---|---|---|
| 2004 ............ ....... | 200 | DFS | U.K. | Polygon (hedge fund) | | equity swaps | Polygon sought to influence DFS despite owning only one share of stock (it had 3% economic ownership through equity swaps). | [FN72] |
| 2004 ............ ....... | 200 | Alvis | U.K. | Hedge funds (helping BAe Systems to acquire Alvis) | X | equity swap | BAe Systems obtained commitments from hedge funds with equity swap positions in Alvis to either obtain shares or direct the voting of shares | [FN73] |

61 BUSLAW 1011                                                                 Page 26
61 Bus. Law. 1011
**(Cite as: 61 Bus. Law. 1011)**

to support BAe's offer

| Year | Target | Country | Acquirer | | Type | Description | FN |
|---|---|---|---|---|---|---|---|
| 2004 | Marks & Spencer | U.K. | Hedge funds (helping Philip Green to acquire Marks & Spencer) | X | equity swap | Green announced support by 8.3% of target shares held by derivatives dealers as "matched shares" to support equity swaps | [FN74] |
| 2004 | Canary Wharf | U.K. | "Songbird" consortium (seeking to acquire Canary Wharf) | X | equity swaps | derivatives dealer UBS held 7.7% of Canary as matched shares to support equity swaps | [FN75] |
| 2004 | MONY | U.S. | holders and | X | convertible | See Part II.D | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ............. . | Group | short sellers of AXA convertible bonds | | | | | bonds of acquirer (AXA) |
| 200 4 ............. ....... | News Corp. | Australia & U.S. | Liberty Media | X | Hidden: yes Morphable: maybe | forward contract and equity swap | Liberty Media held voting and nonvoting News Corp. shares, also used derivatives to adjust its economic exposure [FN76] |
| 200 2 ............. ....... | P&O Princess | U.K. | Investors (favor Carnival bid for P&O Princess) | X | may be | share borrowing | P&O shareholders who favored Carnival's bid reportedly borrowed shares in order to vote for acceptance [FN77] |

| Year | Company | Country | Contestant | | | Description | See Part |
|------|---------|---------|-----------|---|---|-------------|----------|
| 2002 ............. | Hewlett-Packard | U.S. | holders of Compaq shares (target of H-P merger bid) | X | | target shares | See Part II.B |
| 2002 ............. | Coles Myer | Australia | Solomon Lew (proxy contestant) | X | no | options | See Part II.B |
| 2002 ............. | British Land | U.K. | Laxey Partners | X | | share borrowing | See Part II.B |
| 2001 ............. | Rubicon | New Zealand | Perry Corp. | | X | equity swaps | See Part II.C |
| 1997 ............. | John Fairfax Holdings | Australia | Brierley Investments | | | equity swaps | See Part II.C |

**\*1037III. CURRENT OWNERSHIP DISCLOSURE RULES**

A. GENERAL CONSIDERATIONS

We turn now to how current ownership disclosure rules treat the new vote buying. This Part III addresses the

extent to which these rules require disclosure of empty voting or hidden ownership. Part IV presents our integrated disclosure reform proposal, which would require disclosure of both economic and voting **\*1038** ownership. Part V discusses additional possible steps for regulating empty voting. We are not yet ready to advocate taking any of these additional steps, but setting out a menu of regulatory choices may still prove helpful in the long run.

Currently there are five discrete ownership disclosure systems: for active 5% shareholders on Schedule 13D, [FN78] passive 5% shareholders on Schedule 13G, [FN79] institutional investors on Form 13F, [FN80] insiders and 10% shareholders under Section 16, [FN81] and mutual funds. [FN82] These systems, taken together, are bewilderingly complex. Different rules often apply in determining what triggers the disclosure requirements and what must be disclosed once the disclosure requirements have been triggered. Economically identical situations are often treated differently, depending on how an investor achieves a particular combination of voting and economic ownership. Positions involving OTC derivatives often escape disclosure, when an equivalent position involving exchange-traded derivatives would be disclosed. Ownership of call options sometimes requires disclosure, but (the nearly equivalent) sale of put options does not. And so on. A derivatives-savvy hedge fund can often avoid disclosure.

Table 3 summarizes the current ownership disclosure requirements. The complexity and illogic of the current rules is immediately apparent.

### \*1039Table 3. Current Ownership Disclosure Requirements Relating to New Vote Buying

This table summarizes how long positions in shares or equivalents, short positions in shares or equivalents, and stock lending and borrowing are treated under current U.S. ownership disclosure rules. The table addresses separately the use of long and short positions in shares and equivalents to *trigger* a reporting obligation, and the need to disclose these positions if a reporting obligation exists.

| | | Long Positions | | Short Positions | | | | Stock Lending and Borrowing | | |
| | | *As Trigger* | *If Filing Required* | *As Trigger* | *If Filing Required* | | | | | |
| Reporting Scheme | Reporting Frequency | Equity Swaps; other OTC Derivatives | Shares and Exchange-traded OTC Derivatives | Equity Swaps; other OTC Derivatives | Shares and Exchange-traded OTC Derivatives | Equity Swaps; other OTC Derivatives | Exchange-traded Derivatives | Short Sales | Equity Swaps; other OTC Derivatives | Exchange-traded Derivatives | Short Sales | Lending |

61 BUSLAW 1011                                                                                   Page 30
61 Bus. Law. 1011
**(Cite as: 61 Bus. Law. 1011)**

| | | | yes | | yes | no | yes | no | | yes | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13D | curr ent | gen erally no | part ial | | | | | | part ial | | part ial | uncl ear |

| | | | yes | no | yes | no | yes | no | no | yes | no | no |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13G | ann ual | gen erally no | (if held on reportin g date) | | | | (if held on reportin g date) | | | | | |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 13F | quar terly | stat us- based: $100M in 13F securiti es | no | part ial | stat us- based: $100M in 13F securiti es | no | | no | no |
| | | | yes | | | | yes | | |
| Sect ion 16 (directo r or officer) | curr ent | stat us- based | | | stat us- based | ban ned by Section 16(c) | | ban ned by Section 16(c) | pro bably no |
| | | | yes | | no | | | | |
| Sect ion 16 | gen erally | | | | | | | | |

(10%         no
holder)

| | | yes | yes | yes | yes | no |
|---|---|---|---|---|---|---|
| mut ual funds | quar terly | | | | | (except by implicat ion from disclosu re of short sales) |

**\*1040 B. EXISTING DISCLOSURE REQUIREMENTS**

We review here the current disclosure requirements that affect the new vote buying. To avoid clutter that might obscure our main themes, we gloss over some complexities. Thus, our discussion should be understood as roughly but not wholly accurate. Outside investors, including hedge funds, are governed by large shareholder rules-any shareholder holding a 5% stake in a public company must make a Schedule 13D or 13G filing. [FN83] Institutional investors, including hedge funds, are also subject to status-based disclosure rules: an investment manager holding $100 million or more in U.S. equities must disclosure its holdings every quarter on Form 13F. [FN84] Corporate directors, officers, and 10% shareholders are also subject to separate disclosure of ownership on Forms 3, 4, or 5 under Section 16. [FN85] Finally, mutual funds must list all portfolio positions quarterly, and break down their holdings into various categories. [FN86]

**1. Large Shareholder Disclosure (Schedules 13D and 13G)**

*a. Basic Requirements*

Any person who "directly or indirectly" acquires "beneficial ownership" of more than 5% of a public company's shares is generally required to file Schedule 13D with the SEC within 10 days after crossing the 5% threshold. [FN87] Certain types of institutional investors who invest "passively" (in the ordinary course of business and without intent to influence control) and own between 5% and 20% of a company's shares can instead file a more abbreviated Schedule 13G (generally on February 15 of each year, reporting year-end positions with a 45-day lag). [FN88] Both Schedules are publicly available.

For both Schedules, disclosure is based on "beneficial ownership" of shares, as defined by Rule 13d-3. The focus is on sole or shared voting or investment power, which can be held "directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise." Beneficial ownership of shares includes "the right to acquire beneficial ownership ... within sixty days, including ... through the exercise of any option [or] warrant." The SEC seeks to discourage **\*1041** gaming by providing that any person who uses any "contract, arrangement, or device" to evade the 13(d) reporting requirements is deemed to be a beneficial owner. [FN89]

Both Schedules require disclosure of the number and percentage of the shares beneficially owned, and any purchases or sales within the past 60 days. [FN90] Item 6 of Schedule 13D-which has no counterpart in Schedule 13G- also requires disclosure of "any contracts, arrangements, understandings or relationships (legal or otherwise)" relating to any securities of the issuer [FN91] as well as filing of certain related "written agreements" as exhibits.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The scope of the exhibit requirement is not entirely clear. Short positions, whether in shares or derivatives, do not trigger disclosure. If disclosure is triggered by a large long position, some disclosure is required for partially offsetting short positions.

How Schedules 13D and 13G treat share lending and borrowing is unclear. Borrowing (which provides voting power) would likely both count toward triggering disclosure and be disclosable on both forms. However, as a practical matter, record date capture without a control intent is unlikely to be captured by Schedule 13G, because few record dates will fall around the year-end reporting date. Share lending might be disclosable on Item 6 of Schedule 13D, but is likely not disclosable on Schedule 13G.

*b. Application to Hidden Ownership*

Consider now whether the 13D and 13G rules would capture hidden (morphable) ownership. We will use Perry-Rubicon as an example. Perry held just under 5% of Rubicon's shares, plus equity swaps conveying an additional 11% economic ownership. Its equity swaps, by themselves, seem unlikely to trigger disclosure. They were cash-settled, and thus did not convey the right to acquire shares. Perry's equity swap position might be caught by the "arrangement, understanding, or relationship (legal or otherwise)" language in Rule 13d-3. This would depend on whether Perry had a sufficiently firm expectation that it could terminate the swaps and obtain shares from the derivatives dealers at any time. On this point, there is no clear guidance in SEC rules or no-action letters. Practitioners at law firms prominent in the OTC derivatives market have stated that in their view, disclosure of cash-settled equity swaps is normally not required. A partner at Allen & Overy, the primary outside law firm of the International Swaps and Derivatives Association (the main trade association for the OTC derivatives industry), has so stated. [FN92] Similarly, partners at Cleary Gottlieb have written that "a long position under an **1042** equity swap would generally not be treated as beneficial ownership" under Rule 13d-3. [FN93]

The non-disclosure of cash-settled equity swaps can be questioned, if one looks beyond the swap itself to the economic dynamic surrounding it. The derivatives dealer that enters into the swap will almost surely want to hedge its exposure. A principal way to hedge is to hold matched shares. This was especially likely in Perry-Rubicon because Perry initiated the swap by selling Rubicon shares to Deutsche Bank and UBS Warburg. Thus, there was an excellent chance that Perry could return to its dealers, pretty much whenever it chose, and exchange its swap position for shares, even without a prior discussion with its dealers. [FN94] Is this a sufficient "arrangement, understanding, or relationship (legal or otherwise)," to trigger disclosure, especially in light of the extension of beneficial ownership to any person who uses any "arrangement, or device" to evade reporting?

Perry claimed not under New Zealand's rules, which are similar to U.S. rules. It lost at trial and won on appeal. Glencore similarly lost a similar argument before the Australian Takeover Panel in 2005 under Australia's similar ownership disclosure rules, [FN95] but the Panel's decision was reversed on appeal by the Federal Court of Australia. [FN96]

*c. Application to Empty Voting*

Consider next how Schedules 13D and 13G affect empty voting, using Perry-Mylan as an example. If Perry held less than 5% of Mylan, disclosure would not be triggered. Perry chose, however, to acquire 9.9% of Mylan's shares. Had Schedule 13G been available, no disclosure of the hedges would have been needed, and the Schedule 13G filing could be delayed until Feb. 15 of the next year. Perry initially took the position that Schedule 13G was available, and filed a Schedule 13D only after Icahn filed his own Schedule 13D, indicating an intent to acquire control of Mylan, a step that Perry opposed. [FN97] Perry's view that its own intent to support the merger did not involve a control intent might be debatable. But assume a Schedule 13D filing was required. What did Perry have to disclose about the hedges that offset its direct economic ownership?

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not much, or so Perry and its counsel decided. Item 6 of Schedule 13D requires disclosure of "any contracts, arrangements, understandings or relationships" relating*1043 to Mylan shares. Perry duly said that it had engaged in "security-based swap agreements" and other "hedging transactions" and that "to execute ... certain hedging transactions," it had entered into stock loan transactions with Bear Stearns and Goldman, Sachs. But Perry disclosed neither the terms of the hedges nor the number of shares to which they pertained.

Consider finally the scenario in which an investor holds a stake in both acquirer and target, which affects its overall economic interest in the acquirer. Deutsche Boerse/LSE and HP-Compaq, discussed in Part II, provide examples. Assume that a hedge fund owns over 5% of a host company: must it disclose its position in the target's shares? Here the answer is clear-no disclosure is required by either Schedule 13D or 13G. For example, Item 6 of Schedule 13D requires disclosure of contracts or arrangements with respect to "any securities *of the issuer*" (emphasis added).

In sum, Schedules 13D and 13G provide only limited disclosure of the existence and nature of the new vote buying. One can quibble with level of detail that Perry provided, its initial decision that Schedule 13G was available, and its failure to attach the hedging agreements as exhibits to its 13D filing. [FN98] But from a policy perspective, picking at the language of disclosure rules that weren't written with empty voting in mind is beside the point. The real problem is that the 13D and 13G rules were written in the 1970s, when options markets were in their infancy and neither swaps nor other OTC derivatives existed.

## 2. Reporting by Institutional Money Managers (Form 13F)

The third ownership disclosure regime is under Section 13(f) of the Exchange Act ("Section 13(f)"). Institutional money managers must disclose their holdings at the end of each quarter by filing Form 13F with the SEC. [FN99] Form 13F, like Schedule 13G, is filed with a 45-day delay. For new vote buying, Form 13F offers little help. It requires disclosure of holdings of "section 13(f) securities" by every "institutional investment manager" who holds $100 million or more in these securities. [FN100] The term "institutional investment manager" is defined broadly to include (a) any person, other than a natural person, who invests in or buys or sells for its own account; and (b) any person, whether or not a natural person, who exercises investment discretion with respect to the account of any other person. [FN101] This captures hedge funds (whether located in the U.S. or offshore) but not Joe *1044 Zillionaire, unless he exercises investment discretion over the accounts of others. [FN102] "Section 13(f) securities" are publicly traded U.S. equity securities included in the SEC's "Official List of Section 13(f) Securities." This list includes common shares and exchange-traded options. [FN103] Anything not on the list need not be disclosed. Form 13F is also quite narrow in what it calls for. The "Information Table" at its heart is simply a list of each security the managers owns, its CUSIP number (a standard means for identifying publicly traded securities), its type (for instance, shares, puts, or calls), and the number of securities held. [FN104]

Critically, Form 13F requires no disclosure for securities that are not publicly traded, even if they are economically equivalent to disclosable securities. For instance, holdings of exchange traded options are disclosable, but OTC option positions are not. Even for exchange-traded options, money managers need not report options they have *written* rather than *bought*. Long share positions are reported; short positions are not. Indeed, a manager who holds 1,000,000 shares and has separately sold 500,000 short will report owning 1,000,000 shares, and never mention the short position. [FN105] If shares have been lent, the loan is ignored. The lender reports owning the shares, while the borrower reports nothing. [FN106]

Form 13F requires reporting of voting power, and whether it is sole or shared. However, if a manager has voting authority over "routine" matters and no authority for "non-routine" matters, it reports as if it had no voting authority. Non-routine matters include a "contested election of directors, a merger or sale of all or substantially all assets, a charter amendment affecting shareholders' rights, and a change in fundamental investment policy" while routine matters "include" selection of an accountant, uncontested election of directors, and approval of an annual report. [FN107]

Consider now how 13F affects hidden (morphable) ownership positions. These positions commonly rely on OTC derivatives, which are not disclosed. Indeed, one reason why hedge funds hold equity swaps and other OTC derivatives rather than shares is to hide their ownership from public view.

Form 13F fares little better for empty voting. Empty voting through share borrowing will never be seen. If an investor holds shares directly, while hedging its economic ownership, the direct ownership will be reported, its empty character will not. Moreover, it is usually a simple matter to hide a voting stake altogether. All the investor need do is shed its direct holdings before quarter end. For example, *1045 a hedge fund could, in effect, exchange its shares for equivalent swaps before quarter end, and then unwind the swaps and require shares soon afterwards.

### 3. Insider and 10% Shareholder Disclosure (Section 16)

The fourth principal source of disclosure is Section 16, which covers officers, directors, and 10% shareholders of U.S. public companies. [FN108] Section 16 rarely covers outside shareholders, who avoid crossing the 10% threshold, partly because doing so triggers recapture of "short-swing profits" from buying and selling (or selling and buying) within a 6-month period. Avoiding coverage is straight-forward. The 10% threshold is based on "beneficial ownership" in the 13D sense. [FN109] Thus, if a cash-settled equity swap lets a hedge fund avoid "beneficial ownership" for 13D purposes, this same swap should also let the hedge fund avoid Section 16 disclosure.

If disclosure is required, the positions to be disclosed are based on "beneficial ownership" in the Section 16 sense, and is reasonably extensive. The 13D definition of beneficial ownership focuses on voting power. In contrast, the Section 16 definition focuses on economic ownership. [FN110] The relevant forms (Forms 3, 4, and 5) require disclosure of most economic interests, regardless of their form. An initial filing must be made on Form 3 and changes reported on Form 4. Form 5 is an annual statement of changes. All Forms are publicly available. Form 3 must be filed with the SEC within 10 days after the event which triggers coverage. [FN111] Equity derivatives, whether exchange traded or OTC, must be disclosed. These include:

> any option, warrant, convertible security, stock appreciation right, or similar right with an exercise or conversion privilege at a price related to an equity security, or similar securities with a value derived from the value of an equity security. [FN112]

This definition is quite broad. The derivative's value need not precisely track share value; disclosure is required as long as the derivative's value is "derived from the value of an equity security." There is an exception for "broadbased" index options, futures, and market baskets of stocks. [FN113] By implication, derivatives whose value is based on a narrow index are covered. Thus, some related *non-host* assets are covered by Section 16-albeit with ambiguity about which ones. There is no disclosure of short sales of shares, but no need for any, because short sales *1046 are banned outright by Section 16(c). The information required for each derivative is also extensive, and includes the title, exercise or conversion price, date exercisable, expiration date, and the title and amount of securities underlying the derivative security. [FN114] Changes in ownership are reported on Form 4 using specific transaction codes. For instance, "S" indicates a sale, "C" indicates conversion, "O" indicates exercise of an out-of-the-money derivative, "X" indicates exercise of an in-the-money or at-the-money security, "K" indicates an equity swap or similar security. [FN115]

Because Section 16 disclosure focuses on economic ownership, it is much less developed for voting ownership without economic ownership. It seems likely that few Section 16 filers report share borrowing or lending. [FN116] The SEC does not directly require this, there is no relevant transaction code, and we have not found any SEC or practitioner guidance even discussing this question. Economic ownership, the focus of Section 16, is not significantly changed by lending or borrowing, and voting rights do not easily fall within the term "pecuniary interests" under Section 16. In the parallel situation of a voting trust which has voting power but no economic ownership, the trust does not report share ownership. [FN117]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

For hidden (morphable) ownership, then, Section 16 disclosure does a good job. For empty voting, disclosure likely depends on how the empty voter acquires its votes. Shares hedged with derivatives would be disclosed; share borrowing likely would not be.

## 4. Mutual Fund Reporting

The final set of reporting rules applies to mutual funds, which report to the SEC quarterly on their portfolio holdings (the filing is public), and provide a summary list semiannually to investors. [FN118] Disclosure focuses on economic ownership and covers both long and short positions. For options, disclosure includes value, exercise price, and maturity date. There are no rules on what details to report for equity swaps and other OTC derivatives, but our spot check of several *1047 disclosure filings suggests that disclosure of counterparties and certain quantitative information such as notional amounts is common. There is no requirement to disclose share lending or non-short-sale-related borrowing. [FN119]

Thus, while the details are different, mutual fund reporting is similar to insider Section 16 reporting in: (i) its focus on economic ownership; (ii) its coverage of all forms of economic ownership, both long and short; and (iii) its failure to cover share lending and non-short-sale-related borrowing. Both systems thus cover hidden (morphable) ownership reasonably well, as well as some empty voting. However, mutual fund disclosure captures only quarter-end positions.

## IV. A PROPOSAL FOR INTEGRATED OWNERSHIP DISCLOSURE

### A. GENERAL CONSIDERATIONS

As Part III has shown, the current ownership disclosure rules are highly complex, treat substantively identical positions inconsistently, both across and within disclosure regimes, and do not effectively address either empty voting or hidden (morphable) ownership. In big picture, current 13D and 13G disclosures turn largely on voting ownership while Section 16 and mutual fund disclosures focus on economic ownership. Form 13F disclosure covers only publicly-traded shares and long positions in exchange-traded derivatives. None of the disclosure regimes effectively addresses share borrowing and lending. Some of the differences between these sets of rules may have once made sense. Some omissions may once have been unimportant. But in a world of easy decoupling and massive OTC derivatives and share lending markets, these differences and omissions make sense no longer.

In this Part IV, we offer an "integrated ownership disclosure" reform proposal that would provide decent although still imperfect disclosure of both empty voting and hidden ownership, while greatly simplifying the current ownership disclosure rules. Our proposal builds on existing disclosure technology and requires only information readily accessible to investors. For the most part, we would simply extend existing disclosure requirements for insiders and mutual funds to a broader class of reporting persons. Thus, additional compliance costs should be limited, and will be offset for many reporting persons by adopting a single set of rules for what must be reported. We expect, but cannot prove, that overall reporting costs would decline.

We believe the new information will be useful to investors, as well as to corporations, judges, regulators, and legislators as they assess how else to respond to new vote buying. But even if our proposal had no other value, simpler disclosure-largely*1048 integrating what are now five discrete ownership disclosure systems-would likely be worthwhile.

Our proposal would: (i) move toward common standards for triggering disclosure and for disclosing positions once disclosure is triggered; (ii) provide a single set of rules for which positions to disclose and how to disclose them; (iii) require disclosure of both voting and economic ownership, however arising; and (iv) require symmetric

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

disclosure of long and short economic ownership. We mostly leave for another day disclosure of related non-host assets. However, our proposals would often require disclosure of holdings in both acquirers and targets, which is one important instance of related non-host assets.

Our disclosure proposal should capture empty voting and hidden (morphable) ownership reasonably well for current Schedule 13D and Section 16 filers, who must report ownership and ownership changes promptly. Disclosure will be patchier for other filers due to the periodic nature of the reporting requirements, which let filers sell down their positions before the filing date. To capture significant empty voting by periodic filers, we would require disclosure of instances in which they voted when holding voting ownership that exceeded economic ownership by more than a threshold percentage (such as 0.5% or 1% of a company's shares). This will ensure that empty voting episodes such as Henderson Investments or Sears Canada are disclosed eventually.

In offering these proposals, we do not reassess here the current disclosure thresholds, disclosure frequencies, and delay periods, nor, to any significant extent, which investors must disclose their positions. Implicitly, then, we assume that there is rough economic or political logic supporting the current rules. We believe, however, that whatever the thresholds and delay periods may be, ownership disclosure rules should be internally coherent.

We recognize that ownership disclosure has both benefits and costs.  [FN120] On the benefit side, share pricing is likely to be more efficient if investors know what major investors are doing and have advance notice of possible changes in control. Moreover, price-relevant information about securities often has greater private than social value. Requiring disclosure can reduce costly, often duplicative private search for it. On the cost side, private search for information can enhance share pricing efficiency, and the corporate control market is animated in part by private returns to search. Outside investors must receive some reward for searching for mispriced shares and mismanaged firms. Real-time disclosure would likely reduce the return to search. The current system, with near-real-time disclosure by insiders and large active shareholders (13D filers), but delayed disclosure by other shareholders, could well strike a decent balance among these competing concerns.

Beyond their potential economic logic, ownership disclosure rules reflect the intuition that investors want to know who a company's major shareholders are and whether those shareholders are buying or selling, and that company insiders should have an opportunity to respond to takeover attempts. Moreover, the history*1049 of ownership disclosure, in the U.S. and elsewhere, suggests that hidden control of major companies will not be politically acceptable for long, nor will secret contests for control. So disclosure of major positions there will be. Our aim is to make that disclosure coherent, simple, and therefore relatively low-cost.

Our proposed reforms build largely on the Section 16 rules. We would extend Section 16-type disclosure of economic ownership to institutions and other shareholders who now report on Form 13F and Schedules 13D and 13G. Short sales of shares would be disclosed in a manner similar to long positions, with a possible exception for "pure" short sales, discussed below. We would modestly expand the institutions who report on Schedule 13F by counting any economic ownership of equity securities or equity derivatives, long or short (on a gross basis) and exchange-traded or OTC, toward the 13D, 13F, and 13G triggering thresholds. For banks, broker-dealers and others who both hold proprietary positions and positions managed for clients, we would require separate reporting of each; subject perhaps to limited exceptions for short-term positions held in connection with market-making.

We would also require more complete disclosure of share lending, share borrowing, and voting ownership unaccompanied by economic ownership. Share lenders would report their loans; share borrowers would report borrowings and whether they retained the borrowed shares or sold them short. Money managers who have voting discretion for routine but not non-routine matters would so indicate.

We propose symmetric disclosure of positive and negative economic owner-ship. Whether a large "pure" short economic position, defined as negative economic ownership with no accompanying voting ownership, should

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

require disclosure is, we believe, a very close question. Our proposal opts for simplicity and symmetry in providing that these short positions should be disclosed and count toward triggering a filing requirement. [FN121]

Regulators will need to develop guidelines for reporting derivative positions that are not addressed by the current Section 16 and mutual fund rules. As a lodestar principle, we believe that disclosure should allow a derivatives dealer, with access to market information on volatility and other pricing parameters, to estimate the derivative's value and its delta (how that value depends on share price). The reporting person need not provide the model it uses to value the derivative (that may be proprietary), only the raw material. For instance, for a typical OTC put option, disclosure would include the core contractual terms-the strike price, expiration date, and number of shares, the counterparty, and **\*1050** whether the option was European style (exercisable only at expiration) or American style (exercisable at any time). This principles-based approach should be more robust to financial innovation than a traditional classification-based (i.e., "cubbyhole") approach such as that used in the 13F rules. [FN122]

These proposals would expand disclosure, but would also integrate and substantially simplify the current disclosure regime. Economically equivalent positions would be treated consistently. The distinction between positions that trigger disclosure and positions that must be reported once disclosure is triggered, would disappear.

Our proposals are consistent with recent regulatory changes made in the U.K. and Hong Kong in response to new vote buying. In November 2005, the U.K. began requiring large shareholder reporting by persons who have long economic ownership through derivative positions. [FN123] In 2003, Hong Kong similarly extended large shareholder disclosure to persons with both long and short equity derivatives positions. [FN124] The 2006 Henderson Investment incident, discussed in Part II.C, may prompt Hong Kong to take further action. [FN125] The most important difference between the U.K. and Hong Kong approaches is that Hong Kong does (as we do), while the U.K. does not, require disclosure of a *pure short* economic position.

Disclosure rules also need to be enforced. At present, there is some enforcement of Section 13(d) and Section 16 disclosure, but apparently minimal enforcement of Form 13F. [FN126]

Table 4 summarizes our integrated ownership disclosure proposal. Comparing Table 4 to Table 3 shows the significant simplification of the current rules.

### *1051Table 4. Proposal for More Integrated Ownership Disclosure

This table summarizes the disclosure changes we propose, in a format similar to Table 3, which summarizes current ownership rules. The table addresses separately the use of long and short positions in shares and equivalents to trigger a reporting obligation, and the duty to disclose them once the reporting obligation has been triggered. For stock lending and borrowing, borrowing is relevant both for triggering disclosure (except for status-based filers) and for disclosure if a filing is required.

| Proposed Disclosure Requirement | Reporting Frequency (Same as Current Law) | Long Positions (Shares, Equity Swaps, other OTC | Short Positions | Share Lending and Borrowing | Empty Voting (over Threshold Level, such as 0.5% of |
|---|---|---|---|---|---|

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | | ...and Exchange-traded Derivatives) | | | Company's shares) | | |
|---|---|---|---|---|---|---|---|
| | | As trigger | If filing required | As trigger | If filing required | Lending | Borrowing |
| | | Equity Swaps, other OTC and Exchange-traded Derivatives | Short Sales | Equity Swaps, other OTC and Exchange-traded Derivatives | Short Sales | | |
| 13D | current | yes | yes | yes | yes | yes | yes |
| 13G | annual | yes (if held on reporting date) | yes | yes (if held on reporting date) | yes | yes (if held on reporting date) | yes |
| 13F | quarterly | status-based: $100M in economic owners | yes | status-based: $100M in economic owners | yes | yes | yes |

61 BUSLAW 1011                                              Page 41
61 Bus. Law. 1011
**(Cite as: 61 Bus. Law. 1011)**

|  |  | hip of equities and equity derivati ves | hip of equities and equity derivati ves |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
|  |  | yes |  |  | yes | yes | yes |  |
| Sect ion 16 (directo r or officer) | curr ent | stat us-based | stat us-based | ban ned by Section 16(c) | ban ned by Section 16(c) |  |  |  |
| Sect ion 16 (10% holder) |  | yes | yes |  |  |  |  |  |
| mut ual Funds | quar terly | yes | yes | yes | yes | yes | yes |  |

**\*1052 B. LARGE SHAREHOLDER DISCLOSURE (SCHEDULES 13D AND 13G)**

Currently, 13D and 13G disclosure focuses on voting ownership. Our proposed extension is simple: filers should report both voting and economic ownership and either form of ownership can trigger the reporting obligation. The Section 16 concept of economic ownership can be carried over to Schedules 13D and 13G. We would expand current Section 16 reporting to include stock borrowing and lending positions, since these positions affect voting ownership. Each position would be separately disclosed using transaction codes adapted from Section 16 reporting, including new codes for borrowing and lending. Schedule 13D filers would attach any contracts that convey or relate to their economic or voting ownership. We would also modestly move the line between 13D and 13G reporting, which currently turns on control intent, and require 13D reporting for positions held with a view to affecting a shareholder vote, even if the vote does not affect control.

To take Perry's position in Mylan as an example, Perry, once it passed 5% ownership of Mylan, would report on Schedule 13D because it sought to influence Mylan's vote on acquiring King. It would separately report each position conveying positive or negative economic or voting ownership, and attach related contracts as exhibits. Schedule 13G reporting would be similar to Schedule 13D reporting, but without exhibits. As at present, it would generally be due annually and include only year-end holdings. This will let some positions go unreported, but most institutional filers will have to report their positions quarterly on Schedule 13F.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In determining whether the 5% reporting threshold has been crossed, we would not allow netting of long and short positions. An example can show why. Assume that a hedge fund takes a 10% net short position and also enters into an equity swap conveying a 6% long position, so that its net short position is 4%. With netting, no filing would be required. But we would want the hedge fund to disclose its position. It would like to see the company's share price drop because its overall position is net short, and likely has de facto access to 6% voting rights if a shareholder vote arises.

For some derivative positions, questions will arise as to how to measure effective economic exposure. An equity swap conveying the economic return on 1,000,000 shares should count as economic ownership of 1,000,000 shares. That is simple enough. But how about a call option? The option holder's economic exposure depends on the share price. In derivatives terminology, <<delta>> (delta) is the change in option value for a small change in the price of the underlying asset. [FN127] If shares go up by $1, a call option with <<delta>> = 0.4 will increase in value by $0.40. A call option's <<delta>>, however, changes as share price changes. How should this position be reported?

**\*1053** We believe that reporting the precise economic exposure for call options and other derivatives with deltas that vary with share price or other factors would add undue complexity and cost. We propose a cruder approach. Under current Rule 13d-3, option holders report the number of shares that would be acquired on exercise of the option, which is equivalent to assuming <<delta>> = 1. We believe the number of "matched shares" for a derivative position should be computed in parallel fashion. Hong Kong uses a similar approach and its experience can be instructive. [FN128]

## C. INSTITUTIONAL MONEY MANAGERS AND MUTUAL FUNDS

We propose that 13F disclosure should use the same format and contain the same information as revised Schedules 13D and 13G. The principal difference would be the trigger for reporting. We would change the threshold from $100 million in Section 13(f) securities to $100 million in economic ownership of U.S. equity securities (including equity derivatives). Otherwise, an institution could avoid disclosure by holding equity derivatives and keeping its direct equity holdings under $100 million.

Cost concerns are more important for Form 13F reports than for Schedules 13D and 13G because almost every institutional investment manager has to file Form 13F on a quarterly basis, as to all positions held. In contrast, Schedules 13D and 13G apply to a much smaller number of persons and positions. However, institutional money managers should have ready access to the basic information we propose to collect. Some hedge funds, for example currently provide quite detailed reports to investors. [FN129] Thus, there will be a one-time cost in revising internal reports to match the new reporting format, but ongoing filing cost should be similar to current cost, and similar to the costs that mutual funds now incur, without howls of outrage at compliance cost.

These changes to Form 13F would result in mutual fund advisory firms that manage a number of funds (such as Fidelity and Vanguard) providing greater information on the aggregate holdings of the funds they manage. Individual mutual funds would continue to provide fund-specific disclosures, much as they do currently. Both advisory firms and individual funds would be subject to the new empty voting disclosure rules we will address in Part IV.D.

The 13F and mutual fund disclosure is quarterly, and thus will not reach all instances of new vote buying. We also would not change the current reporting delays, in which 13F, 13G, and mutual fund reports are due some time after the end of the reporting period. The current reporting speeds and frequencies seem to us to offer an acceptable tradeoff between disclosure completeness and cost. The disclosures should offer an overall picture of the extent of new vote buying, even if they do not capture all instances.

**\*1054** An important fringe benefit of our proposal is that Form 13F reporting covers a large fraction of the

universe of stock lenders and borrowers. Currently, stock lending data is sparse. Even the aggregate size of the market can only be estimated. [FN130] The largest borrowers of stocks are prime brokerage firms; the largest lenders are major institutions. Beyond that, little is known, beyond individual anecdotes. [FN131] Simply aggregating 13F reports of lending and borrowing will provide valuable data, both in the aggregate and for particular firms.

The primary cost to investors will be indirect, from disclosing trading positions that are currently concealed. Yet, to some extent, we have already crossed the bridge. The intent of Form 13F was to require institutional money managers to disclose their equity holdings, with a delay to reduce the competitive impact of disclosure. Changes in the derivative markets have undermined the completeness of reporting but, as discussed earlier, we do not believe that the basic tradeoff between the value of disclosure to other investors and the value of competitive secrecy was seriously misdrawn.

## D. DISCLOSURE OF EMPTY VOTING

Our proposed stock lending and borrowing disclosure will provide a good aggregate picture of the stock lending market. But without more, periodic filers (i.e., mutual funds and those filing on Schedule 13G or Form 13F) could avoid disclosing most empty voting positions that are in place for a short period around that record date. For instance, consider an institution using record date capture; it could borrow up to 5% of a company's shares, vote them, reverse the borrowing before the quarter ends, and report nothing.

To address empty voting by periodic filers, we propose that these filers separately report any occasions where they cast votes which substantially exceed their economic ownership. To limit the reporting burden for filers who engage in ordinary hedging activities, we would require disclosure if a filer held voting ownership that exceeded economic ownership by at least 0.5% (or some other threshold amount) of the outstanding shares on a record date for a shareholder meeting. We would rely on the crude rules discussed above to measure economic ownership. Reporting would be on the usual forms, and thus would occur some time after the vote.

Consider the MONY-AXA merger as an example. Suppose that a hedge fund holds AXA convertible bonds, wants the merger to be completed, borrows 4% of MONY's shares shortly before the record date, votes for the merger, and reverses the borrowing soon afterwards. The hedge fund would report, in its next 13F *1055 filing, that it had borrowed and voted the MONY shares, what issues it had voted on, how it had voted, and relevant dates (for borrowing, voting, and position reversal). It would also report its economic ownership at the time of MONY shares and any related non-host assets (in this case, the AXA bonds).

This empty voting disclosure will apply only to institutions that engage in largescale vote capture. These are likely a small faction of the universe of 13G, 13F, and mutual fund filers. If vote capture is widespread, the filing burden will be higher, but so will the need for the information.

## E. SUMMARY

As a response to hidden (morphable) ownership, the disclosure enhancements we propose above may well be sufficient. For empty voting, disclosure will be valuable, and may reduce the incidence of empty voting. Even hedge funds may be less likely to do publicly what they might do in the dark. Insiders might hesitate as well. Derivatives dealers could take "reputational risk" into account in deciding whether to facilitate a client's empty voting.

Disclosure should also provide the information base needed to assess the need for additional reforms to address empty voting. At the same time, much of the disclosure will be delayed, which limits its value for a contest at an individual company. It will often be possible to reconstruct instances in which vote buying may have affected voting outcomes, but usually too late to alter those outcomes. Delayed reporting is a tradeoff of disclosure cost against

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

61 BUSLAW 1011                                                          Page 44
61 Bus. Law. 1011
**(Cite as: 61 Bus. Law. 1011)**

timeliness. If empty voting proves widespread, it could make sense to require periodic filers to provide "realtime" reports of significant empty voting positions.

The new information will also prove useful for efforts at international coordination, which is important for any regulatory response. The need for international coordination has been recognized in a current private effort to address new vote buying undertaken by the International Corporate Governance Network (ICGN), a group of major institutional investors from the U.S. (including CalPERS), U.K. (including Hermes), France (including Credit Agricole), and elsewhere. [FN132]

## V. TOWARD ADDITIONAL RESPONSES TO EMPTY VOTING

### A. GENERAL CONSIDERATIONS

We discuss in our companion works the theory and evidence bearing on the benefits and costs of linking shares to votes and on how a market for votes, decoupled from shares, might operate. [FN133] There are circumstances in which such **\*1056** a market could be problematic, and circumstances in which it could enhance shareholder oversight of managers. For this and other reasons, including the difficulty in regulating an activity that can take many forms, about which little is yet known, we consider it premature to adopt additional rules to address empty voting.

Still, some simple examples can illustrate why it is likely that additional regulation will be needed. For takeover bids, an unregulated market for shares, coupled with votes, has well-known problems, driven by the high value of the marginal shares that just convey control, and the lower value of minority shares once control is assured. These problems have led to regulation of takeover bids, including a minimum offer period and a ban on two-tier offers. Similar problems would afflict a proxy fight waged by buying votes decoupled from shares. Thus, an unregulated market for votes seems unlikely to work well.

For record date capture, consider the Henderson Investments scenario. A hedge fund borrowed shares, voted them against an apparently beneficial transaction, and then sold them short, profiting while defeating an apparently beneficial transaction. Disclosure would not change the hedge fund's ability to profit at other shareholders' expense. Or consider Scotiabank's decision to vote the Sears Canada shares, held to support an equity swap, in favor of Sears Holdings' buyout offer. [FN134] It is arguable that, Scotiabank was an empty voter, akin to a nominal holder, while the hedge fund was the real economic owner. Perhaps the wrong party voted.

We therefore develop below a menu of regulatory options for addressing empty voting, and say a bit about their merits. There are three families of additional strategies. The most obvious strategies focus directly on voting rights (Section B). A second family focuses on improving an aging "voting architecture" (Section C). A third family involves regulatory interventions that affect supply and demand forces in the markets that support decoupling (Section D). We make no claim that particular rules we discuss are desirable, only that they are possible.

A further issue, which we do not detail here, is the locus of regulation. In particular, federal securities law focuses on disclosure. The SEC likely cannot, within its current statutory authority, directly regulate empty voting. Doing so would likely affect the "internal affairs" of corporations, traditionally governed by state law. [FN135] Moreover, especially in an area where the right response is uncertain, a federal response could lock in overregulation-as some scholars suggest may be the case with the Sarbanes-Oxley Act. [FN136] Thus, there could be reason to prefer responses that do not expand the SEC's regulatory reach.

**\*1057 B. STRATEGIES FOCUSED ON VOTING RIGHTS**

### 1. Direct Limits on Voting Rights

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

61 BUSLAW 1011                                                          Page 45
61 Bus. Law. 1011
**(Cite as: 61 Bus. Law. 1011)**

One way to address empty voting is to limit the voting rights of shareholders who hold greater voting than economic ownership. Thus, in a recent article, Professors Martin and Partnoy suggest that "shareholders with substantial short positions should not be entitled to vote" and that "corporations and their regulators should strongly consider taking away the votes of [shareholders who are also] options buyers and sellers." [FN137]

In the extreme case of negative economic ownership, this could be the right answer. But even here, the technology for enforcing such a rule is not obvious. To be effective, a rule must address the many ways to decouple votes from economic ownership. Martin and Partnoy address only short sales and option positions and do not offer guidelines for implementation. They do not discuss other decoupling techniques-including record date capture and hedging with equity swaps. [FN138] In addition, new strategies will no doubt emerge as financial innovation continues. The innovation process can easily undermine classification-based regulatory approaches such as theirs.

An additional problem with limiting voting rights is determining when a single "investor" holds equivalent economic and voting ownership. Say, for instance, that a fund management firm runs both a conventional, "long-only" mutual fund that holds General Motors shares, and a hedge fund, managed by a different portfolio manager, which is short General Motors. Should the conventional mutual fund lose its votes because of the hedge fund's short position? Should it matter whether the fund management firm centralizes its voting decisions, or delegates them to individual fund managers?

Bringing related non-host assets into a calculus of overall economic interests raises further complexities. Consider the AXA-MONY transaction, discussed in Part II.B. The problem was not that holders of AXA convertible bonds had greater voting than economic interest in MONY, but instead that they had an orthogonal interest in the AXA bonds, which was their primary concern.

Once one moves from a simple, rarely triggered on-off switch (Does an investor have negative economic ownership, or perhaps negative overall economic interest?) to a general rule that limits voting rights when votes would otherwise exceed economic ownership, the technical difficulties in measuring economic ownership become fearsome. One must grapple with complex derivative positions, in which economic exposure varies with share price. In developing the integrated disclosure proposal presented in Part IV, we initially attempted to invent a workable scheme for numerical disclosure of economic ownership for positions with deltas different than one. The effort became absurdly complex, and we gave it up as misguided. Substantive limits on voting rights when an investor holds related non-host assets would raise further complications.

**\*1058** Moreover, vote buying can sometimes move votes from passive or ignorant investors to investors who can cast informed votes. Insiders who hold partly hedged positions still have incentives to vote in ways that increase firm value. The proportions of "good" and "bad" empty voting are currently unknown.

In the end, a combination of factual uncertainty about when and how new vote buying occurs, how often it is beneficial or harmful, and concerns about how one might draft and enforce a rule that limits voting rights and thus requires measuring economic ownership with reasonable precision, persuade us to err on the side of caution. At this point, we are ready neither to recommend limiting voting rights when they would otherwise substantially exceed economic ownership, nor to argue that such a rule would be a serious error. Our disclosure proposal may provide the knowledge needed to draft a workable rule. It will also help courts assess whether to limit voting rights on a case-by-case basis.

**2. Voting By Record Owners: Extension to Equity Swaps**

Empty voting by shareholders with zero economic ownership deserves special attention, because it is common and, in part, already regulated. Our system of record ownership already decouples economic ownership from formal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

voting rights. The record owner is typically at least two persons removed from the economic owner of the shares. [FN139] Shares held in "street name" are generally held "of record" by Depository Trust Company or another securities depository, which holds the shares on behalf of another intermediary (such as a broker-dealer or bank), which holds the shares for economic owners. Our legal system has responded by partly recoupling voting and economic ownership. Depositories pass voting rights to their bank and broker clients, who must request voting instructions from economic owners. If the customer does not provide instructions, New York Stock Exchange (NYSE) Rule 452 allows a bank or broker to vote on routine matters, but not on a contested matter or on a merger or similar transaction which may substantially affect the value of the shares. [FN140]

These rules on when record owners can vote provide precedent for an effort to reconnect voting rights to economic ownership, when technology has severed them. Consider, for example, a derivatives dealer who holds shares to hedge a short equity swap position. As we discuss in Part II, the dealer will often either unwind the swap so that the holder of the long position can vote, or simply vote as the holder directs. This market convention reconnects voting and economic ownership in a manner similar to the rules governing record owners. In this situation, we should require disclosure of ownership that is currently hidden, but recognize that the market is generally placing voting rights where they ought to **1059** be. One might also extend current rules governing record owners to dealers who hold matched shares to hedge short equity swap positions.

### 3. Corporation Opt-In

An obvious alternative to mandatory limits on voting rights would be to let corporations decide for themselves whether to require a link between economic and voting ownership. [FN141] Corporations could potentially do so through a board-adopted bylaw or a charter amendment.

Corporate opt-ins, such as only allowing shareholders with positive net economic ownership to vote or limiting votes to the amount of economic ownership, have the attractive feature of allowing corporations to experiment with different solutions. Still, they are subject to many of the measurement concerns we raised above. Opt-ins also raise additional concerns. A board-adopted bylaw can easily be structured to entrench insiders. It also is not clear whether board-adopted bylaws that restrict voting rights would be valid, given that corporate law currently grant voting rights to record owners, whether or not they are economic owners. Moreover, case law promises close scrutiny of unilateral board actions affecting shareholders. [FN142]

A charter amendment is more likely to be valid. Delaware section 212(a) states that "unless otherwise provided in the certificate of incorporation" and subject to certain record date limitations, "each stockholder shall be entitled to 1 vote for each share of capital stock." [FN143] The one share-one vote rule is merely a default rule and the corporation is not explicitly constrained in how it departs from this rule. Moreover, the most closely relevant case, *Williams v. Geier*, suggests that a charter amendment affecting voting rights will receive deferential business judgment review. [FN144] However, stock exchange rules that limit dual-class recapitalizations could block some charter amendments. Consider, for example, a time-phased voting plan, similar to the one approved in *Williams v. Geier*, which limits the voting rights of short-term shareholders. This would likely run afoul of NYSE rules, which state that voting rights cannot be "disparately reduced or restricted through any corporate action or issuance" and offers as examples "time phased voting plans" and "capped voting rights plans." [FN145]

Some vote-limiting strategies could also run afoul of the federal proxy rules. Consider, for example, a charter provision requiring a shareholder to attest that **1060** he has economic ownership "substantially equal" to the number of votes he proposes to cast. Given the SEC's broad power under Exchange Act section 14(a) to regulate the proxy process, such a provision would probably require SEC assent. [FN146]

Assuming that a charter amendment is permitted under current law, there remains the policy question: To what extent *should* companies be able to limit voting rights through charter amendments? The core problem is that for

shareholders, voting rights are collectively valuable but individually worth little. Thus shareholders can sometimes be persuaded, as in the dual class recapitalizations of the 1980s, to part with these rights for little consideration.

There is usually a presumption that a charter provision adopted before a company goes public is probably not seriously inefficient, because if it is, the insiders should receive a lower price for their shares. This market price response presumably explains why most companies go public with a one share, one vote structure. Scholars debate, however, the extent to which IPO pricing is efficient for more subtle variations in shareholder rights. [FN147] Those doubts would likely include charter provisions that respond to empty voting. In addition, the usual arguments for the efficiency of corporate choice are weaker for midstream charter amendments, which can entrench management and can sometimes succeed despite reducing share value. [FN148] Companies might well opt for midstream amendments that allow vote buying techniques used by insiders while blocking techniques used by outsiders. Time-phased voting is a good example of a rule that limits vote buying but also entrenches insiders.

Thus, the "company choice" approach needs to be cabined. Yet it seems premature to assess how without knowing either the dimensions of empty voting or how companies might respond. Some possible charter amendments might be unobjectionable. Others might be acceptable at the IPO stage, but problematic midstream. The initial need is still for disclosure, to provide a base of knowledge against which potential charter amendments can be judged.

## 4. State Corporate Law

A separate question from whether companies can use charter amendments to limit vote buying by outside shareholders is whether corporate law limits vote buying by insiders. There are no direct legal constraints. [FN149] Insiders, however, *1061 might be constrained by fiduciary duty. At one extreme, given the rigor with which courts police shareholder elections, company officers or directors would likely breach their duty of loyalty if they used corporate funds or the promise of future business to procure votes. In the *Hewlett v. Hewlett-Packard* proxy fight case, for example, Walter Hewlett claimed that HP management had procured a favorable vote by Deutsche Bank through promises or threats related to future business dealings between the two companies. HP defended on the grounds that it had persuaded Deutsche Bank to support the merger on the merits, and effectively conceded that procuring votes through a promise or threat would be improper. [FN150] Suppose, instead, that HP management had engaged in new vote buying to swing the outcome. There would be no identifiable transfer of voting rights, and hence no classic vote buying, but the breach of fiduciary duty would be the same, and the courts would likely disallow the procured votes.

However, other efforts at new vote buying could be hard for courts to reach under current doctrine. Consider, for example, a company founder who hedges his economic ownership. Corporate law neither requires disclosure of the hedging nor questions the founder's exercise of voting rights. Disclosure comes from Section 16 rules. Managers could also acquire votes while hedging their economic interest, if they did so for the long term, rather than to influence a particular vote.

If empty voting is potentially outcome-determinative, judges will likely face pressure to update current vote-buying doctrine, which addresses only explicit transfers of voting rights by a vote seller. They may also have to examine a new vote buyer's transfer of economic ownership. They might well disallow voting by an empty voter such as Perry, or the hedge fund in Henderson Investments, with negative economic interest. This situation is analogous to voting by directors whose personal interests conflict with the corporation's interests. [FN151] In both situations, the usual presumption that the voter will seek to increase shareholder wealth is thrown into doubt. Zero or negative economic interest aside, it seems premature to speculate as to how courts should address empty voting, given the multiple factual contexts in which it can be used.

Another possible response is to reduce the importance accorded to shareholder votes as a guide to shareholder

61 BUSLAW 1011                                                                              Page 48
61 Bus. Law. 1011
**(Cite as: 61 Bus. Law. 1011)**

preferences. Ronald Gilson and Alan Schwartz have argued that elections are inferior to tendering decisions as a guide to share-holder preferences in a control battle. [FN152] The potential for empty voting strengthens their case. When some directors are conflicted, the Delaware courts channel decision-making to non-conflicted directors. Similarly, if some shareholders hold more votes than economic ownership, judges can give less deference to a voting **\*1062** outcome influenced by the votes of these shareholders. The degree of deference could change both for control contests and for shareholder proposals, for which an open question is how much attention a board should pay to a nonbinding shareholder proposal that receives majority shareholder support. [FN153]

## C. STRATEGIES FOCUSED ON VOTING ARCHITECTURE

The new vote buying has put stress on an aging "voting architecture," developed before the emergence of OTC equity derivatives and large-scale stock lending. One result is that even large institutional investors often misunderstand how share lending affects their voting rights. There are also mechanical problems; the simple act of properly counting votes would often fail if all shareholders entitled to vote did so.

Many institutional investors lend through agents and do not keep careful track of which shares have been lent. [FN154] For example, in 2004, the International Corporate Governance Network (ICGN) circulated among its members a questionnaire on their securities lending practices. [FN155] Of the 39 institutions which responded (including pension funds, mutual funds, banks, insurance companies, and other asset managers), 31 had lent shares. Most relied on agents and half reported that the agent could lend without the respondent's knowledge. A substantial majority (21 of 31) "[r]arely, only in special circumstances" recalled shares in order to vote them; moreover, attempts to recall shares for voting purposes sometimes failed.

Another recent analysis found similar results. In 2005, the Shareholder Voting Working Group-a financial industry group convened to improve the voting process in the United Kingdom-issued a report stating that some fund managers were not aware that their shares had been lent. [FN156] This was the case both for institutions that lent through agents and institutions that ran their own lending programs; because lending departments often do not report loans to portfolio managers. Some institutions were not even aware that lent shares cannot be voted. Working Group head Paul Myners stated that "[i]t is not well enough understood that the vote goes with the share." [FN157]

Fuller information may change lender behavior. CalPERS, a major lender which earns about $110 million a year from this activity, illustrates. Beginning in 2003, **\*1063** CalPERS has sought to balance the income it receives from securities lending with its "shareholder responsibility" to vote shares. CalPERS currently will not lend shares of certain companies around voting record dates and claims that it will only lend shares to "those who have a legitimate right to the proxy as a benefit of true ownership." [FN158]

Institutional investors will vary in their interest in preserving voting rights. Any one investor can profit from lending, while its vote probably won't matter. Some institutional investors enter into "exclusives"-arrangements in which a lender makes some or all of its portfolio available to a particular borrower-usually with no exception for record dates and little consideration of the borrower's goals. [FN159] On the other hand, some institutional investors (such as Europe's largest pension fund) have decided to stop lending shares despite the impact on their returns. [FN160]

For annual meetings, a lender's effort to decide whether to hold shares and itself vote faces a technical problem. The record date will usually have passed before the company distributes its proxy statement. Hence, on the record date, investors may not know what is on the agenda (beyond the customary need to elect directors and approve the auditor). One could address this problem by requiring companies to disclose the expected voting agenda when they announce record dates. To be sure, however, this same information could encourage record date capture.

A further step for stock lenders, beyond knowing that they have lent shares and cannot vote, is knowing to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

whom they have lent. This too is not common. Lenders often lend through agents, or lend to broker-dealers who act on behalf of clients who are unknown to the lender. Efforts are currently under way to require U.S. banks or broker-dealers that arrange securities loans to advise the *borrower* of the *lender's* identity. The goal is to allow the borrower to assess the lender's credit risk, since the lender holds the borrower's collateral. [FN161] These efforts do not yet contemplate advising the lender of the borrower's identity.

Another concern is mechanical problems associated with voting. [FN162] Growth in short selling and stock lending are fostering an increasingly serious "over-voting" *1064 problem, which arises as follows. Currently, brokers who hold shares in street name must vote in accordance with their clients' instructions. Suppose that a broker holds 2 million shares in a pooled account on behalf of margin customers, lends 1 million shares, and receives voting instructions from holders of 1.5 million shares. There is no coherent way of ensuring that such a broker will cast only 1 million votes, nor for companies to decide what to do if a broker votes too many shares, nor for the broker to decide whose voting instructions count if it casts only 1 million votes. Instead, brokers and companies follow ad hoc procedures, with uncertain impact on proxy fights. The New York Stock Exchange issued a warning on over-voting in 2004. [FN163] Over-voting has been an issue in at least two lawsuits over the results of a proxy fight. [FN164] The Securities Transfer Association, a trade group for transfer agents, reviewed 341 shareholder votes in corporate contests in 2005-and found over-voting in all 341 cases. [FN165] One company specializing in the oversight of shareholder elections recently said that "[a] lot of the time we have no idea who's entitled to vote and who isn't" and called the situation an "abomination." [FN166]

The current formally correct response to overvoting is to limit the broker in our example to 1 million votes (presumably cast in proportion to the voting instructions the broker receives). But this would disenfranchise individual shareholders and *increase* the disparity between economic ownership and voting rights. What might contribute to a better solution would be a change in business practice in which economic owners could decide whether to allow their shares to be lent around record dates, or in which stock lenders could elect to retain voting rights. If some lenders retain voting rights, borrowers who need these voting rights would have to borrow from lenders who were willing to part with them, presumably at higher cost.

In sum, the current ways in which share lending affects voting need to be updated, both to ensure that those with voting rights can exercise them and to provide lenders and borrowers with the information they need to decide what to do with their voting rights.

## D. STRATEGIES FOCUSED ON SUPPLY AND DEMAND FORCES IN THE MARKETS ON WHICH THE NEW VOTE BUYING RELIES

A third family of regulatory interventions would focus on the supply and demand forces in the markets that support new vote buying, especially the share *1065 lending market. On the "supply" side, one could regulate share lenders, lending intermediaries, and derivatives dealers. On the "demand" side, one could regulate the purposes for which hedge funds and other investors could acquire voting rights decoupled from economic ownership. The primary actors here would be the SEC, the Federal Reserve Board, the U.S. Department of Labor, and other federal authorities.

### 1. Encouraging Institutional Shareholders to Vote on Important Matters

One approach would be to encourage institutional shareholders to vote on important matters. Voting could be made part of their obligation to their clients, perhaps with an exception for routine matters. Regulators have already gone partway down this path for mutual funds and pension funds. An SEC guideline for mutual funds states that:

We would not object if voting rights pass with the lending of securities. However, this does not relieve the directors of a fund of their fiduciary obligation to vote proxies. If the fund management has knowledge

that a material event will occur affecting an investment on loan, the directors would be obligated to call such loan in time to vote the proxies. [FN167]

We are not aware, however, of SEC efforts to enforce this soft guidance. It has little bite for annual meetings, for the technical reason noted above-the record date has typically passed before the company distributes its proxy statement, thus informing shareholders about the voting agenda. Moreover, the SEC's controversial 2003 rules requiring mutual funds and investment advisers to disclose their voting practices are silent on stock lending. The adopting release states that mutual funds and investment advisers can choose not to vote if the costs of doing so outweigh the benefits, and offers examples involving voting of foreign shares. [FN168]

The Department of Labor (DoL), which regulates pension plans subject to ERISA (basically, company pension plans but not public sector pension plans), has adopted a similar approach. Interpretive Bulletin 94-2 encourages but does not require voting. For shares of foreign corporations, the Department interprets ERISA fiduciary duties:

> to require the responsible plan fiduciary to weigh the costs and benefits of voting on proxy proposals relating to foreign securities and make an informed decision with **\*1066** respect to whether voting a given proxy proposal is prudent and solely in the interest of the plan's participants and beneficiaries. [FN169]

A similar analysis presumably would apply to voting shares in U.S. companies.

At the same time, the DoL appears to expect that ERISA plan trustees will recall lent shares in order to cast important votes. In a 1979 advisory opinion on share lending, the Department stated:

> a breach of fiduciary responsibility ... might result if the plan trustees do not terminate the loan in time to vote proxies in the event of an occurrence affecting the plan's interest in the security. [FN170]

It is not hard to imagine the SEC, the DoL, or other regulators strengthening this sort of informal guidance, and extending to other classes of institutional investors a requirement to recall lent shares in order to cast important votes. Regulators might also require institutions to disclose when they have lent shares rather than voting them. Some might find it embarrassing to have to disclose that they routinely lend shares around record dates.

## 2. Safe Harbor for Voting Instead of Lending Shares

A more modest step would address the dilemma faced by an institutional investor which must decide whether to lend or vote shares. Any one institution's vote is unlikely to affect the outcome, so lending will often be privately optimal. Yet collectively, institutional voting can benefit all shareholders. This externality will produce too much lending and too little voting. The SEC and DoL positions on share lending, discussed above, likely provide a quasi-safe harbor in terms of fiduciary challenges. If one's regulator is urging one to vote, it is hard for clients to object to a decision to do so. Still, there could be value in a safe harbor for all institutions which vote shares rather than lend them around a record date.

## 3. Reducing the Attractiveness of Lending Shares and Providing Equity Derivatives

There are also a variety of tax and regulatory changes that could be deployed to make share lending less attractive to lenders, or to make equity swaps less attractive to derivatives dealers. One set of changes could focus on the fact that if a mutual fund lends shares and receives a dividend-equivalent payment, the dividend would have qualified for a reduced 15% tax rate; but the substitute payment does not. [FN171] A similar tax issue arises for lending by broker-dealers. If a **\*1067** broker lends customer shares and receives dividend-equivalent payments, the broker keeps the loan proceeds, while the customer receives "payments in lieu of dividends," which are taxed as ordinary income. These tax consequences should reduce the attractiveness of stock lending. For example, unless compensated for these tax consequences (which is not the current industry practice), investors could open cash accounts (from which shares cannot be lent) rather than margin accounts.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Many mutual fund investors and margin account holders are probably not aware of the tax consequences of share lending. Broker-dealers must disclose annually to their customers the portion of investment income that qualifies for the dividend tax rate, but not the reasons why. One can imagine better disclosure, for example, a statement that "we earned $X last year by lending shares from your account; this increased your ordinary income by an estimated $Y."

Other steps could affect the attractiveness of share lending and equity derivatives activities. Broker-dealers could be required periodically to obtain customer consent to lend shares held in margin accounts. [FN172] Pension funds and banks are already subject to constraints on their securities lending activities; these could be revisited. [FN173] Capital adequacy and general safety and soundness requirements applicable to commercial and investment banks provide additional regulatory levers. We make no claim that particular tax or regulatory tweaks are desirable, only that they are possible.

### 4. Imposing Responsibilities on Share Lenders and Derivatives Providers

Another possible approach would require share lenders and equity swap providers to know their clients, and how their clients will use the share borrowing or swap. In the Enron disaster, banks offered Enron a variety of financial products that helped Enron present a misleading financial picture to the public. One consequence has been multibillion dollar payments by major banks to settle class action lawsuits. Another is that regulators now expect financial institutions to do more to investigate their clients' use of financial products to game disclosure or tax rules. [FN174] The SEC, the Federal Reserve Board, and the Office of the Comptroller of the Currency have issued a joint statement warning financial institutions against creating complex financial products that let their customers artificially alter their *1068 public financial statements or evade taxes. [FN175] Regulators could take a similar interest in investment banks' creation of instruments designed to facilitate empty voting or evade ownership disclosure rules.

In one respect, current rules already limit the purposes for which shares may be lent. Under Federal Reserve Regulation T, broker-dealers who have material dealings with the general public are exempt from the usual margin rules that limit borrowing to acquire securities. Other broker-dealers enjoy a more limited "permitted purpose" exemption. They may "borrow or lend securities in case of short sales, failure to receive securities required to be delivered, or similar situations." [FN176] Under the "permitted purposes" exemption, broker-dealers are required to make a good faith effort to determine the borrower's purpose and cannot lend shares for voting purposes. [FN177] All the Federal Reserve need do to greatly limit record date capture is to either extend the permitted purpose approach to all broker-dealers or make share lending for vote capture purposes an illicit purpose for otherwise exempt broker-dealers. Such a ban on share lending to permit record date capture is already the informal norm in the U.K. [FN178]

A similar "know your customer's purpose" approach could affect the market for some other forms of vote buying. Suppose that a hedge fund comes to a derivatives dealer, seeking simultaneously to buy shares and hedge its economic exposure, ending up with pure votes. One could establish a presumption that the hedge fund's goal is empty voting, and bar dealers from entering into these swaps.

### 5. The Demand Side: Executive Hedging

The demand for vote buying and the products it depends on can be affected by techniques similar to some of those discussed above for the supply side. We offer here one example, involving executive hedging, which usually leaves executives with more voting power than economic interest. One could make this "lite voting" less attractive by increasing the tax consequences of hedging. By hedging, the executive has effectively sold a portion of his shares. Internal Revenue Code section 1259 taxes, as constructive sales, a limited set of hedges. [FN179] For example, an equity swap that offsets "substantially all" economic exposure would trigger taxation. Section 1259 is

easy to avoid: standard zero-cost collars do not trigger **\*1069** it, nor would a swap that offset most, but not "substantially all" of an executive's economic exposure. [FN180] While it may be hard to develop an administrable rule that could not be easily gamed, one could try to move to a more easily triggered standard.

## VI. CONCLUSION

The shareholder vote is a central means by which corporate governance systems constrain managers' discretion over other people's money. The vitality of that constraint, however, depends on a connection between votes and economic interest.

Financial innovation now allows large scale, low cost, often undisclosed decoupling of voting rights from economic ownership. This decoupling-the new vote buying-comes in two main forms, which we call empty voting (more votes than economic ownership) and hidden (morphable) ownership (undisclosed economic ownership accompanied by informal voting rights). The modern derivative, heretofore largely a risk management tool and an investment vehicle for investors and firms, can also affect voting outcomes. OTC derivatives, developed to trade risk, turn out to be well adapted for trading votes. A now-massive share lending market serves the needs of both short-sellers and empty voters.

Hedge funds have been among the pioneers in both forms of the new vote buying. Insiders have also used decoupling strategies to retain votes while shedding economic exposure. In the past several years, decoupling has played an increasing role in corporate governance worldwide. We have found more than twenty publicly known or rumored examples, almost all since 2002. Several involve empty voting by investors with negative economic interests, who would profit if the companies' share prices go down. Additional uses of decoupling have surely remained hidden.

Not all vote buying is bad. Some could move votes from less informed to better informed investors, and strengthen shareholder oversight. Still, unless there are ways to separate good vote buying from bad, and allow only the former, the new vote buying, as we call it, can potentially undermine the coupling between voting and ownership. Voting outcomes might be determined by hidden warfare among company insiders and major investors, each employing vote morphing and other financial innovations to swing a voting contest. Voting results are now increasingly close, a corollary to voting becoming an increasingly significant aspect of corporate governance. Winning a close vote could sometimes turn on cleverness in decoupling, rather than the merits of each side's position.

While the potential corporate governance threat posed by the new vote buying is serious, the extent and nature of the new vote buying is unknown. In addition, any regulatory response to decoupling must attend to potential effects on derivatives and short-selling. Derivatives serve good purposes, as well as ill. Short **\*1070** sellers play a valuable role in securities markets, and depend on the same share lending market that facilitates the new vote buying.

The first step is to better understand the new vote buying through enhanced disclosure. Empty voting and hidden (morphable) ownership should, we believe, be exposed to public view. This article's "integrated ownership disclosure" proposal would partially integrate and greatly simplify the five existing ownership disclosure regimes. The proposal is practical and indeed may reduce the direct costs of regulatory compliance. Indeed, we believe that our integrated ownership disclosure proposal is worth considering for its simplicity and internal consistency alone, even apart from its value in relation to new vote buying.

Disclosure may be a sufficient response to hidden (morphable) ownership. For empty voting, it will likely be only a first step, but a sufficient step to give regulators, judges, companies, and investors a good view of the nature and scale of this new activity. Eventually-perhaps soon- other responses to empty voting may be needed. One family

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of responses would involve focusing on voting rights themselves. Corporations can, for instance, amend their charters to condition voting rights of major shareholders on economic ownership. Other families of responses focus on voting mechanics and on the supply and demand forces in the OTC derivatives and share lending markets, on which the new vote buying relies.

Which additional reforms should be adopted, we cannot yet say. That will depend on information as yet unknown, which our disclosure rules are designed to collect. We do know that existing legal and economic theories of the public corporation depend on a link between voting rights and economic ownership that can no longer be relied on.

[FNa1]. Professor Hu is Allan Shivers Chair in the Law of Banking and Finance, University of Texas Law School. Professor Black is Hayden W. Head Regents Chair for Faculty Excellence, University of Texas Law School, and Professor of Finance, University of Texas, McCombs School of Business. The authors thank workshop participants at the American Law and Economics Association annual meeting (May 2005), the Conference on Boundaries of SEC Regulation at the Financial Economics Institute of Clare-mont McKenna College (February 2006), the Weil, Gotshal & Manges Roundtable at Yale Law School (April 2006), the Corporate Law Roundtable at University of Pennsylvania Law School (April 2006), Iman Anabtawi, Richard Craswell, Jeffrey Gordon, Larry Harris, Linda Hayman, Gérard Hertig, Bruce Johnsen, Charles McCallum, Harold J. Mulherin, Jeff Netter, Ian Ramsay, Edward Rock, Roberta Romano, David Skeel, Janet Kiholm Smith, Leo Strine, and anonymous peer reviewers for comments and suggestions. We thank Catherine Bellah and Ryan McCormick for their research assistance.

[FN1]. ADOLPH BERLE & GARDINER MEANS, THE MODERN CORPORATION AND PRIVATE PROPERTY (1932).

[FN2]. *See, e.g.,* Blasius Industries, Inc. v. Atlas Corp., 564 A.2d 651, 659 (Del. Ch. 1988); *cf.* MM Companies Inc. v. Liquid Audio, Inc., 813 A.2d 1118 (Del. 2003).

[FN3]. We provide citations to SEC rules and discuss these rules in Part III.

[FN4]. The complexities raised by the "new vote buying" are new examples of the challenges the derivatives revolution and modern financial innovation generally pose to corporate governance principles. For discussions of the overarching issue, see, e.g., Henry T. C. Hu, *New Financial Products, the Modern Process of Financial Innovation, and the Puzzle of Shareholder Welfare,* 69 TEX. L. REV. 1273 (1991) [hereinafter "Hu, *New Financial Products*"]; Henry T. C. Hu, *Behind the Corporate Hedge: Information and the Limits of "Shareholder Wealth Maximization,"* 9 J. APPLIED CORP. FIN. 39 (Fall 1996) [hereinafter "Hu, *Behind the Corporate Hedge*"].

[FN5]. The only public sector recognition in the United States that we know of is a July 2005 speech by Vice Chancellor Leo Strine, where he stated that what we term "empty voting" and "related factors" are "making it difficult for corporate law makers to avoid a fundamental look" at corporate law. David Marcus, *Thinking Big Thoughts,* CORPORATE CONTROL ALERT, Aug.–Sept. 2005, at 6.

[FN6]. The U.K. instrument corresponding to the equity swap is known as a "contract for differences" or CFD. In this article, we use the term "equity swap" to refer to both instruments.

[FN7]. We provide citations and further details on this example in Part II.B.1, *infra.*

[FN8]. We provide citations on this example and further details in Part II.B.2, *infra.*

[FN9]. *See, e.g.,* Donoghue v. Centillium Communications Inc., No. 05 Civ. 4082 (WHP) 2006 U.S. Dist. LEXIS 13221 (S.D.N.Y. Mar. 28, 2006) (discussing variable prepaid forward contracts and how they are regulated under

Section 16 of the Exchange Act); J. Carr Bettis, John M. Bizjak & Michael L. Lemmon, *Managerial Ownership, Incentive Contracting, and the Use of Zero-Cost Collars and Equity Swaps by Corporate Insiders*, 36 J. FIN. & QUANT. ANALYSISS 345 (2001) (discussing zero-cost collars and equity swaps).

[FN10]. We provide citations on this example and further details in Part II.C.1, *infra*.

[FN11]. Securities Exchange Act of 1934 (ch. 404, 48 Stat. 881) [hereinafter "Exchange Act"], § 13(d) (codified as amended at 15 U.S.C. § 78m(d) (2000 & Supp. III 2003)).

[FN12]. We discuss other uses of morphable voting rights in Part II.C. *infra*.

[FN13]. Vote buying by insiders can, however, sometimes be challenged under fiduciary duty rules. See *infra* Part V.B (discussing, for instance, *Hewlett v. Hewlett-Packard*).

[FN14]. Schreiber v. Carney, 447 A.2d 17, 23 (Del. Ch. 1982). *See also* Robert Charles Clark, *Vote Buying and Corporate Law*, 29 CASE W. RES. L. REVV. 776 (1979).

[FN15]. We discuss this in Part V.B, *infra*.

[FN16]. Form 13F, Information Required of Institutional Investment Managers Pursuant to Section 13(f) of the Securities Exchange Act of 1934 and Rules Thereunder, 17 C.F.R. § 249.325 (2005) [hereinafter "*Form 13F*"].

[FN17]. 17 C.F.R. §§ 240.13d-1-.13d-7 (2005); Schedule 13D, 17 C.F.R. § 240.13d-101 (2005); Schedule 13G, 17 C.F.R. § 240.13d-102 (2005).

[FN18]. News reports suggest that the SEC is considering an enforcement action against Perry, presumably under the 13D rules. *See, e.g.*, Ianthe Jeanne Dugan, *Hedge Funds Draw Scrutiny Over Merger Play*, WALL ST. J., Jan. 11, 2006, at C1.

[FN19]. Exchange Act § 16(b), 48 Stat. at 896 (codified as amended at 15 U.S.C. § 78p(b) (2000 & Supp. III 2003)).

[FN20]. For an example of how to hedge a share position with options, see, e.g., RICHARD A. BREALEY & STEWART C. MYERS, PRINCIPLES OF CORPORATE FINANCE 570-72 (7th ed. 2003).

[FN21]. *See infra* Part III.B.

[FN22]. *See* Susan E.K. Christoffersen, Christopher C. Geczy, David K. Musto & Adam V. Reed, Vote Trading and Information Aggregation (Jan. 20, 2005) (unpublished draft), *available at* http://ssrn.com/abstract=686026; Hu & Black, *New Vote Buying, infra* note 24, at 857 (our analysis of foregoing draft).

[FN23]. *See, e.g.*, Martin Lipton & Steven A Rosenblum, *A New System of Corporate Governance: The Quinquennial Election of Directors*, 58 U. CHI. L. REVV. 187, 210 (1991); Martin Lipton, *Is This the End of Takeovers?*, WASH. POSTT, Nov. 6, 1988, at H2; Martin Lipton et al., Wachtell, Lipton, Rosen & Katz, *Be Prepared for Attacks by Hedge Funds* (Dec. 21, 2005) (on file with *The Business Lawyer*).
    Concerns that hedge fund activism may lead to such corporate "short-termism" are closely related to issues like conflicts among "generations" of shareholders and differences between running a company to maximize shareholder wealth based on share trading prices (i.e., "actual shareholder wealth maximization") and running a company to maximize shareholder wealth based on share intrinsic values (i.e., "blissful shareholder wealth maximization"). *See e.g.*, Hu, *New Financial Products, supra* note 4, at 1278-87 & 1300-05 (discussion of such matters); Henry T. C.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Hu, *Buffett, Corporate Objectives, and the Nature of Sheep*, 19 CARDOZO L. REV. 379, 392-95, & 397-407 (1997) [hereinafter "Hu, *Nature of Sheep*"] (discussion of such matters and in relation to how Warren Buffett and Charlie Munger run Berkshire Hathaway).

[FN24]. *See* Henry T. C. Hu & Bernard S. Black, *The New Vote Buying: Empty Voting and Hidden (Morphable) Ownership*, 79 S. CAL. L. REV. 811 (2006), *also available at* http://papers.ssrn.com/abstract=904004 [hereinafter "Hu & Black, *New Vote Buying*"]; Henry T. C. Hu & Bernard S. Black, *Hedge Funds, Insiders and Empty Voting: Decoupling of Economic and Voting Ownership in Public Companies* (working paper 2006), *available at* http://ssrn.com/abstract=874098 [hereinafter "Hu & Black, *Hedge Funds and Empty Voting*"].
    An initial version of the research that led to this article and its companions was first presented publicly in May 2005, at the annual meeting of the American Law and Economics Association (held at New York University Law School). *See* Henry T. C. Hu & Bernard S. Black, *Empty Voting: Shareholder Voting Rights and Coupled Assets* (Feb. 2005). Subsequent versions were posted on SSRN, beginning on January 6, 2006.

[FN25]. *See, e.g.*, David Marcus, *Hedge fund voting: The devil we don't know*, CORPORATE CONTROL ALERT, Mar.-Apr. 2006, at 10. Other articles or working drafts in the legal literature that have either discussed or touched on the issue include Shaun P. Martin & Frank Partnoy, *Encumbered Shares*, 2005 U. ILL. L. REVV. 775; Marcel Kahan & Edward B. Rock, *Hedge Funds in Corporate Governance and Corporate Control* (preliminary draft, Apr. 9, 2006); David Skeel, *Behind the Hedge-In the Untamed World of Hedge Funds, Rigged Deals and Manipulated Markets Help the Wealthy Thrive While Ordinary Investors Wither*, LEGAL AFFAIRS, Nov.-Dec. 2005, at 28.

[FN26]. Frank H. Easterbrook and Daniel R. Fischel, *Voting in Corporate Law*, 26 J. L. & ECON. 395, 410 (1983).

[FN27]. For analysis of the modern process of financial innovation and the emergence of the OTC derivatives market in the 1980s, see, e.g., Henry T. C. Hu, *Misunderstood Derivatives: The Causes of Informational Failure and the Promise of Regulatory Incrementalism*, 102 YALE L. J. 1457 (1993) [hereinafter, "Hu, *Misunderstood Derivatives*"].

[FN28]. *See, e.g.*, Heather McKenzie, *Securities Lending Grows Up*, FIN. NEWS, Oct. 2, 2000; Gene Picone & Richard Warne, *Securities Lending-A Coming of Age*, PENSIONS MGMT., Sept. 1, 2003, *available at* http://www.pensions-management.co.uk/news/fullstory.php/aid/471/A_coming_of_age.html. For other sources on share lending, see *infra* note 130.

[FN29]. There is no reliable data on the number of hedge funds or their assets under management. *See* Securities and Exchange Commission, IMPLICATIONS OF THE GROWTH OF HEDGE FUNDS-STAFF REPORT TO THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION 1 n.2 (Sept. 2003), *available at* http://www.sec.gov/news/studies/hedgefunds0903.pdf [hereinafter "SEC, HEDGE FUND REPORT"]. For the $1 trillion estimate in mid-2005, see *At Deadline*, PENSIONS & INVESTMENTS, Aug. 8, 2005, at 1 (reporting estimate by Tremont Capital).

[FN30]. *See, e.g.* Riva D. Atlas, *Some Funds Taking Role Far Beyond Just Investor*, N.Y. TIMES, Aug. 16, 2005, at C1; Lina Saigol, *Hedge Funds are Very Keen to Flex Their Secretive Shareholding Muscle*, FIN. TIMES, Aug. 9, 2005, at 19; Henny Sender, *Hedge Funds: The New Corporate Activists?*, WALL ST. J., May 13, 2005, at C1.

[FN31]. We also generally leave aside the distinctions between shareholder wealth maximization based on market prices and shareholder wealth maximization based on intrinsic share values, between the welfare of the corporation and the welfare of the shareholder, between shareholder welfare and shareholder wealth, and short-termism-related issues such as conflicts between short term and long term shareholders. *See, e.g.*, Henry T. C. Hu, *Hedging Expectations: "Derivative Reality" and the Law and Finance of the Corporate Objective*, 73 TEX. L. REV. 985 (1995); Hu, *New Financial Products, supra* note 4; Hu, *Nature of Sheep, supra* note 23, at 388-407; *supra* note 23

(on "short-termism" and related issues).

[FN32]. We discuss the Perry-Rubicon example *supra* in Part I and *infra* in Part II.C.

[FN33]. Our descriptions in this article of new vote buying examples rely in some cases on news reports that refer to market rumors or other sources which may not be accurate. Our description of Perry-Mylan is based on Perry Corp., Schedule 13D as to Mylan Laboratories, Inc. (Nov. 29, 2004), *available at* http://www.sec.gov/Archives/edgar/data/69499/000116923204005932/d61489_ sc13d.txt; Complaint, High River Limited Partnership v. Mylan Laboratories, Inc., No. 04-2677 (M.D. Pa. Dec. 10, 2004) [hereinafter "Icahn Complaint"]; Tara Croft, *Mylan: King Deal Doomed*, DAILY DEAL, Jan. 13, 2005; Christopher Faille, *Perry Plans to Sell Stake in Mylan*, HEDGE WORLD DAILY NEWS, Mar. 23, 2005; Jesse Eisinger, *Icahn Cries Foul at Perry's No-Risk Play in Takeover Fight*, WALL ST. J., Dec. 15, 2004, at C1; Andrew Ross Sorkin, *Icahn Accuses a Hedge Fund of Stock Manipulation*, N.Y. TIMES, Dec. 13, 2004, at C1; Andrew Ross Sorkin, *Nothing Ventured, Everything Gained*, N.Y. TIMES, Dec. 2, 2004, at C1.

[FN34]. *See In re* The MONY Group, Inc., Shareholder Litigation, 852 A.2d 9 (Del. Ch. 2004) and 853 A.2d 661 (Del. Ch. 2004); Theo Francis, *AXA Launches Offensive to Woo MONY Holders*, WALL ST. J., Apr. 28, 2004, at C5.

[FN35]. *See* Icahn Complaint, *supra* note 33, at 4; Andrew Ross Sorkin, *Nothing Ventured, Everything Gained*, N.Y. TIMES, Dec. 2, 2004, at C1.

[FN36]. *See* Malcom Maiden, *Lew Confirms Hedging Coles Myer Shares*, ABIX-AUSTRALASIAN BUSINESS INTELLIGENCE-THE AGEEE, Oct. 24, 2002 (Lew confirmation that companies linked to him had hedged recent purchases); Mark Todd, *Lew Hedges Coles Gamble*, THE AGE, Oct. 10, 2002 (rumor that Lew had hedged recent share purchases); James McCullough, *The amazing war of Solomon Lew*, COURIER MAIL (Queensland, Australia), Nov. 9, 2002, at 77 (on Lew's 7% holding of Coles Myer).

[FN37]. *See, e.g.*, ROBERT BRUNER, DEALS FROM HELL: M & A LESSONS THAT RISE ABOVE THE ASHES (2005); Sara B. Moeller, Frederik B. Schlingemann & Rene Stulz, *Wealth Destruction on a Massive Scale? A Study of Acquiring Firm Returns in the Recent Merger Wave*, 60 J. FIN. 757 (2005).

[FN38]. Dennis Simon, *In splitting leadership, look at CEO ownership*, DIRECTORS & BOARDS, Jan. 1, 2004, at 24, 25.

[FN39]. If the put and call options have the same exercise price and expiration date, this transaction is a complete hedge, economically equivalent to selling shares. More commonly, the call option exercise price is somewhat above the put option exercise price, hence the term "collar." In a "zero-cost" collar, the proceeds from selling the call equal the cost of buying the put.

[FN40]. *See* Bettis, Biszak & Lemmon, *supra* note 9.

[FN41]. *See* Ronald Fink, *Overexposed*, CFO, Apr. 2006, at 85, *available at* http://www.cfo.com/printable/article.cfm/5674520?f=options.

[FN42]. *See, e.g.*, Heitor Almeida & Daniel Wolfenzon, *A Theory of Pyramidal Ownership and Family Business Groups* (working paper 2005), *available at* http://ssrn.com/abstract=721801; Lucian Arye Bebchuk, Reinier Kraakman & George Triantis, *Stock Pyramids, Cross-Ownership, and Dual Class Equity: The Mechanisms and Agency Costs of Separating Control from Cash Flow Rights*, in CONCENTRATED CORPORATE OWNERSHIP 295-318 (Randall K. Morck ed., 2000).

[FN43]. For an overview of customary share lending practices, see, e.g., Bond Market Association, Master Securities Loan Agreement (2000) (under U.S. law); International Securities Lending Association, Global Master Securities Lending Agreement (2000) (under English law); Darrell Duffie, N. Garleanu & L. H. Pedersen, *Securities Lending, Shorting, and Pricing*, 66 J. FIN. ECON. 307 (2002).

[FN44]. By adopting Regulation SHO in 2004, the SEC sought to reduce the extent of "naked shorting," the practice of selling shares short without borrowing the necessary shares, thus creating the risk of failing to deliver shares to the buyer. Short Sales, SEC Rel. No. 34-50103 (July 28, 2004), 69 Fed. Reg. 48008 (Aug. 6, 2004); Aaron Lucchetti & Kara Scannell, *Despite SEC Rules, a Small Amount of Naked Shorting Appears to Persist*, WALL ST. J., Apr. 13, 2006, at C1.

[FN45]. *See, e.g.*, DEL. CODE ANN. tit. 8 § 213(a) (2001).

[FN46]. We discuss these efforts *infra* in Part V.D.3.

[FN47]. Christoffersen et al., *supra* note 22.

[FN48]. *See* Gene D'Avolio, *The Market for Borrowing Stock*, 66 J. FIN. ECON. 271 (2002).

[FN49]. *See* Kate Burgess & James Drummond, *Transparency finds a high-level champion*, FIN. TIMES, Apr. 22, 2005, at 1. Borrowing is cheap on average, but not for every company. In one recent case, Charter Communications took the unusual step of issuing 150 million shares in a public offering, supposedly to accommodate hedge funds frustrated by borrowing costs. *See* Peter Grant, *Charter's Unusual Issue May Have SEC Balking*, WALL ST. J., June 24, 2005, at C3; *Charter Share Issue Approved by the SEC*, WALL ST. J., July 19, 2005, at C3.

[FN50]. Our discussion of the Laxey-British Land encounter is based on Florian Gimbel, *The Big Picture: Uneasy Bedfellows with Money in Mind: Does Investing in Hedge Funds Compromise Pension Funds' Corporate Governance Activity?*, FIN. TIMES, Apr. 19, 2004; Jim Piccitto, *Laundering Money in the Free World*, GLOBAL INVESTOR, Dec. 1, 2004, at SS36; John Ritblat, Letter to the Editor, *British Land Buy-back Well Under Way*, FIN. TIMES, Jan. 13, 2003, at 18 (letter); Simon Targett, *Top Pension Funds Plan Securities Lending Code*, FIN. TIMES, June 14, 2004, at 1 (FT Report); John Waples, *Ritblat Hits at CSFB and Laxey for Vote 'Conspiracy,'* SUNDAY TIMES (LONDON), July 21, 2002, Bus. Sec., at 1.

[FN51]. Ritblat, *supra* note 50.

[FN52]. This account draws on: *Asian hedge funds undermine lending*, INT'L SEC. FIN., Mar. 1, 2006, at 10(1); Patricia Cheng, *Hedge funds find loophole in H.K.*, INT'L HERALD TRIB., Feb. 16, 2006, at 18; Alex Frew McMillan, *Hong Kong studying voting issues on borrowed shares*, INFOVEST21 NEWS, Jan. 25, 2006; Florian Gimbel & Francesco Guerrera, *Henderson stock lending fears*, FIN. TIMES (ASIA EDDD.), Feb. 15, 2006, at 15.

[FN53]. We thus disagree with Easterbrook and Fischel, who ignore the difference between the record date and the voting date. They claim that a person who buys shares "the day before the election, votes them, and sells the day after the election" will bear "the gains or losses attributable to the election." Easterbrook & Fischel, *supra* note 26, at 411 n.41. This is simply not so.

[FN54]. Our discussion of the facts is based on *Ithaca (Custodians) Ltd. v. Perry Corporation*, [2003] 2 N.Z.L.R. 216 (H.C.), *rev'd*, [2004] 1 N.Z.L.R. 731 (C.A.), *conditional leave to appeal refused*, [2004] 2 N.Z.L.R. 182 (C.A.).

[FN55]. *See* New Zealand Securities Markets Act 1988, 1988 S.N.Z. Nos. 2, 5, 20-22.

[FN56]. *Ithaca (Custodians)*, [2004] 1 N.Z.L.R. 731, at ¶ 66.

[FN57]. *See* Code Comm., Panel on Takeovers and Mergers, *Consultation Paper, Dealings in Derivatives and Options: Outline Proposals relating to Amendments Proposed to be Made to The Takeover Code and the SARS*, ¶ 3.3 (PCP 2005/1 Issued on Jan. 7, 2005), *available at* http://www.simmons-simmons.com/index.cfm?fuseaction=takeover.display&page=1868.

[FN58]. *Id.* For a U.S. example where a customer was unhappy enough that Citibank had hedged equity swaps in a manner that the client had not expected to bring a suit, see Caiola v. Citibank, N.A., New York, 295 F.3d 312 (2d Cir. 2002).

[FN59]. *See* Jesse Eisinger, *In Canada, A Face-Off Over Sears*, WALL ST. J., Apr. 12, 2006, at C1.

[FN60]. *Id.*

[FN61]. On the Agnelli-Fiat transactions, see *IFIL-Exor Investigation Merrill Lynch Milan HQ Searched*, IL SOLE 24 ORE, Mar. 10, 2006 (IFIL is the Agnelli family vehicle that acquired the swaps); *IFIL Receives Consolb Equity Swap Report*, IL SOLE 24 ORE, Feb. 23, 2006; *Italian Stock Market Regulator Rules Against IFIL in Fiat Case*, WORLD MARKETS ANALYSIS, Feb. 23, 2006; *Italy's Consob Rules IFIL Not Obliged to Bid for Fiat, but Swap Deal Probed*, AFX INTERNATIONAL FOCUS, Feb. 8, 2006; *Still in the driving seat-Italian finance*, ECONOMIST, Oct. 15, 2005; *Three Investigated in IFIL-Exor Equity Swap Affair*, IL SOLE 24 ORE, Feb. 25, 2006.

[FN62]. *See* Louise McCoach, The Glencore Decision: A Case for Reform? (Nov. 2005) (unpublished manuscript, on file with authors); Louise McCoach, The Glencore Decision: A Case for Reform? An Update? (Feb. 2006) (unpublished manuscript, on file with authors).

[FN63]. Our discussion of Austral Coal is based on Nigel Morris, Dir., Takeovers Panel, Austral Coal Ltd. 02, Decision    and    Review    Application    (July    1,    2005),    *available    at* http://www.takeovers.gov.au/display.asp?ContentID=956 [hereinafter *"Austral Coal Takeovers Panel Decision"*]; Glencore International AG v. Takeovers Panel [2006] FCA 274 (Mar. 22, 2006) [hereinafter *"Austral Coal Federal Court of Australia Decision"*].

[FN64]. *See, e.g.*, Arturo Bris, *Toeholds, Takeover Premium, and the Probability of Being Acquired*, 8 J CORP. FIN. 227 (2002); Sandra Betton & B. Espen Eckbo, *Toeholds, Bid Jumps, and Expected Payoffs in Takeovers*, 13 REV. FIN. STUD. 841 (2000).

[FN65]. Andrew Trounson, *BHP Bid for the Long Haul-Xstrata Outgunned in Showdown for WMC*, AUSTRALIAN, Mar. 9, 2005, at 35; Bryan Frith, *Cunning Predators Hide Behind Swaps*, AUSTRALIAN, Mar. 11, 2005, at 18.

[FN66]. Our discussion relies on Norma Cohen and Patrick Jenkins, *D Borse Acts to Heal TCI Rift*, FIN. TIMES, Apr. 21, 2005, at 25; *Winners and Losers: CEO Werner Seifert Sheds Some Light on the Reasons Why Deutsche Borse Decided to Drop its £1.3 Billion Bid for the London Stock Exchange*, GUARDIAN, Mar. 14, 2005, at 11; Norma Cohen, *Investors Warn D Borse Board*, FIN. TIMES, Feb. 22, 2005, at 21; William Hutchings, *Deutsche Boerse Affair Shows Way Ahead*, EFINANCIALNEWS.COM, Jan. 23, 2005; *Seifert's Second Proposal*, ECONOMIST, Dec. 18, 2004; Silvia Ascarelli, *A Market Marriage in Europe? Deutsche Boerse's Courtship of London Exchange May Elicit a Rival*, WALL ST. J., Dec. 14, 2004, at C18.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN67]. *See* Jason Singer, *Ivy Leave: Yale Parts Ways With Hedge Fund*, WALL ST. J., Mar. 29, 2006, at C1.

[FN68]. On the related question of whether executives can use such substitutes without running afoul of insider trading laws, see Ian Ayres & Joseph Bankman, *Substitutes for Insider Trading*, 54 STAN. L. REVV. 235 (2001).

[FN69]. *See* Hu & Black, *The New Vote Buying, supra* note 24, at 846-47.

[FN70]. *See, e.g.*, Kyodo News Service, *Japan: Investment Firm becomes Fuji TV's Largest Shareholder*, BBC MONITORING MEDIA, Mar. 24, 2005; David Pilling. *White Knight New Villain of Fuji TV Saga*, FIN. TIMES, Mar. 28, 2005, at 1; Martin Foster, *Livedoor Suffers Blow in Bid*, DAILY DEAL, Mar. 25, 2005; *Softbank to Return Fuji Shares*, DAILY YOMIURI (TOKYO), Apr. 23, 2005, at 8; Michiyo Nakamoto, *Historic Battle Establishes Combat Rules*, FIN. TIMES, June 27, 2005, at 5 (FT Report); Nippon Broadcasting, *Softbank Investment End Fuji TV Stock Loan Deal*, AFX-ASIA, June 30, 2005. The defense was successful. Livedoor and Fuji TV agreed to a partnership, and Livedoor ended its effort to acquire Nippon. One borrower (Softbank) promptly returned the Fuji shares to Nippon; we have not found news reports discussing whether the other borrower (Daiwa Securities) also returned its borrowed shares.

[FN71]. *See* Bryan Frith, *Portman trading should be reviewed*, AUSTRALIAN, Mar. 4, 2005, at 22.

[FN72]. *See* Richard Fletcher, *US hedge fund builds up large stake in DFS*, SUNDAY TIMES (LONDON), Aug. 22, 2004.

[FN73]. *See* Panel on Takeovers and Mergers, *Consultation Paper Issued by the Code Committee of the Panel-Dealings in Derivatives and Options: Outline Proposals relating to Amendments Proposed to be Made to The Takeover Code and the SARS*, ¶ 3.3-3.4 (PCP 2005/1 Issued on Jan. 7, 2005), *available at* http:// www.simmons-simmons.com/index.cfm?fuseaction=takeover.display&page=1868.

[FN74]. *See* U.K. Takeover Panel, *January 2005 Proposal, supra* note 73, at § 3.4(b); Jererny Warner, *Outlook: Uncharted Waters*, INDEPENDENT, July 14, 2004.

[FN75]. *See, e.g.*, Martin Dickson, *The secret City battle over Canary Wharf*, FIN. TIMES, Apr. 24, 2004; Linda Saigol, *UBS wins Takeover Panel appeal over Canary Vote*, FIN. TIMES, Apr. 24, 2004.

[FN76]. *See* Liberty Media Corporation, Schedule 13D as to The News Corporation Limited (Jan. 21, 2004), *available at* http:// www.sec.gov/Archives/edgar/data/788509/000110465904001378/a04-1434_1sc13d.htm and (Amendment No. 1 to this Schedule (Nov. 12, 2004), *available at* http:// www.sec.gov/Archives/edgar/data/788509/000104746904034156/a2146699zsc13da.htm; *Q3 2004 Liberty Media Group Earnings Conference Call-Final*, FD (FAIR DISCLOSURE) BUSINESS WIRE, Nov. 9, 2004; US, *Liberty Media Corporation Announces Early Termination of Total Return Swap With Merrill Lynch*, PR NEWSWIRE (Dec. 20, 2004); Tim Burt, *Prince Pledges to Aid Murdoch*, FIN. TIMES, Nov. 18, 2004, at 32; Geraldine Fabrikant, *In Surprise, Liberty Media Fattens Stake in News Corp.*, N.Y. TIMES, Jan. 22, 2004, at C1; Geraldine Fabrikant, *Liberty Media Fuels Speculation By Adding to News Corp. Stake*, N.Y. TIMES, Jan. 23, 2004, at C3; Martin Peers, *News Corp.'s Net Increases by 27% on TV Strength-Liberty Media Gains Right to Boost Its Voting Stake in Murdoch-Led Concern*, WALL ST. J., Nov. 4, 2004, at B3; Martin Peers, *News Corp. Offers About $5.7 Billion To Buy Rest of Fox*, WALL ST. J., Jan. 11, 2005, at C4; *Why Liberty Halted Its 'Forward' Pass; Sale of I9 Million Shares Is Scrapped to Simply Structure, Show Faith in News*, MULTICHANNEL NEWS, Sept. 26, 2005.

[FN77]. *See* Bank of England, Stock Lending and Repurchase Committee, Summary of Dec. 11, 2002 Meeting, *available at* http:// www.bankofengland.co.uk/markets/gilts/slrcdec02.pdf.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN78]. 17 C.F.R. § 240.13d-101 (2005).

[FN79]. 17 C.F.R. § 240.13d-102 (2005).

[FN80]. 17 C.F.R. §§ 240.13f-1, 249.325 (2005).

[FN81]. Exchange Act § 16 is codified as amended at 15 U.S.C. § 78p (2000 & Supp. III 2003).

[FN82]. *See infra* note 119.

[FN83]. *See* Exchange Act § 13(d), (g) (codified as amended at 15 U.S.C. § § 78m(d), 78m(g) (2000 & Supp. III 2003)); SEC Rules 13d-1-13d-7, 17 C.F.R. §§ 240.13d-1-13d-7 (2005); SEC Schedules 13D, 13G, 17 C.F.R. §§ 240.13d-101-102 (2005).

[FN84]. *See* Exchange Act § 13(f) (codified as amended at 15 U.S.C. § 78m(f) (2000 & Supp. III 2003)); SEC Rule 13f-1, 17 C.F.R. § 240.13f-1 (2005); *Form 13F, supra* note 16.

[FN85]. *See* Exchange Act § 16 (codified as amended at 15 U.S.C. § 78p (2000); SEC Rules 16a-1-16e-1, 17 C.F.R. § 240.16a-1-16e-1 (2005); SEC Form 3: SEC Initial Statement of Beneficial Ownership of Securities, *available at* http://www.sec.gov/about/forms/form3.pdf [hereinafter "*SEC Form 3*"], Form 4: Statement of Changes in Beneficial Ownership, *available at* http:// www.sec.gov/about/forms/form4.pdf [hereinafter "*SEC Form 4*"], and Form 5: Annual Statement of Changes in Beneficial Ownership of Securities, *available at* http://www.sec.gov/about/forms/form5.pdf [hereinafter "*SEC Form 5*"], OMB Nos. 3235-0104, 3235-0287, 3235-0362.

[FN86]. *See infra* Part III.B.4.

[FN87]. Rule 13d-1(a), 17 C.F.R. §§ 240.13d-1(a) (2005).

[FN88]. Rule 13d-1(b), 17 C.F.R. § 240.13d-1(b) (2005). When ownership first exceeds 10%, Schedule 13G must be filed by the 10th day of the next month.

[FN89]. Rule 13d-3, 17 C.F.R. § 240.13d-3 (2005).

[FN90]. Schedule 13D, Item 5, 17 C.F.R. § 240.13d-101 (2005); Schedule 13G, Item 4, 17 C.F.R. § 240.13d-102 (2005).

[FN91]. Schedule 13D, Item 6, 17 C.F.R. § 240.13d-101 (2005).

[FN92]. Chin-chong Liew, *Disclosure Requirements for Purely Cash-Settled Derivatives*, HONG KONG LAWYER, June 2000, *available at* http://www.hk-lawyer.com/2000-6/June00-59.htm.

[FN93]. 2 EDWARD F. GREENE, EDWARD J. ROSEN, LESLIE N. SILVERMAN, DANIEL A. BRAVERMAN & SEBASTIAN R. SPERBER, U.S. REGULATION OF THE INTERNATIONAL SECURITIES AND DERIVATIVES MARKETS § 13.02[2] n.25 (2004).

[FN94]. See the discussion of Perry-Rubicon in Part II.C *supra*. Access to the dealers' matched shares is not a

certainty; the hedge fund in the Sears Canada situation, discussed in Part II.C *supra*, was surprised to find its dealer less accommodating than it had expected.

[FN95]. *See Austral Coal Takeovers Panel Decision, supra* note 63. The Takeovers Panel based this decision on the policy concerns underlying the large shareholder disclosure rules, rather than on the specific language of the statute.

[FN96]. *See Austral Coal Federal Court of Australia Decision, supra* note 63.

[FN97]. *See* Neil Whoriskey & Brandon W. Gardner, *Arbitrage in an M&A Context-Issues Raised by the* Mylan *Case*, M&A REPORT, Sept. 2005, at 15, *available at* http://www.cgsh.com/files/tbl_s47Details%5CFileUpload265%CC5C498% 5CCGSH_MA_Newsletter_Sept2005.pdf.

[FN98]. Item 7 of Schedule 13D requires filing of "all written agreements, contracts, arrangements, understandings, plans or proposals relating to ... (3) the transfer or voting of the securities, finder's fees, joint ventures, options, puts, calls, guarantees of loans, guarantees against loss or profit, or the giving or withholding of any proxy as disclosed in Item 6." 17 C.F.R. § 240.13d-101 (2005). Perry's counsel presumably decided that its hedges were none of these.

[FN99]. The filings are publicly available. A manager may request confidential treatment, but only under narrow circumstances, and the SEC does not often grant such requests. *See Form 13F, supra* note 16, Instructions For Confidential Treatment Requests.

[FN100]. *See* Exchange Act §§ 13(f)(1), 13(f)(5)(A) (codified as amended at 15 U.S.C. §§ 78m(f)(1), (f)(5)(A) (2000 & Supp. III 2003)); Exchange Act Rule 13f-1, 17 C.F.R. § 240.13f-1 (2005).

[FN101]. *See* Exchange Act § 13(f)(5)(A) (codified as amended at 15 U.S.C. § 78m(f)(5)(A) (2000 & Supp. III 2003)).

[FN102]. *See* Exchange Act § 13(f)(1) (codified as amended at 15 U.S.C. § 78m(f)(1) (2000 & Supp. III 2003)); Securities and Exchange Commission Division of Investment Management, Frequently Asked Questions About Form 13F (Question 4) (May 2005), *available at* http://www.sec.gov/divisions/investment/13ffaq.htm [hereinafter "*SEC 13F FAQ*"]. For an example of the use of Form 13F information to track hedge fund trading, see Markus K. Brunnermeier & Stefan Nagel, *Hedge Funds and the Technology Bubble* (working paper 2003), *available at* http:// ssm.com/abstract=423940.

[FN103]. See Exchange Act Rule 13f-1(c), 17 C.F.R. §240.13f-1; *SEC Form 13F FAQ, supra* note 102.

[FN104]. *See* Form 13F, *supra* note 16, Special Instructions 9-12.

[FN105]. *See, e.g., SEC Form 13F FAQ, supra* note 102, Question 4 ("You should not report short positions on Form 13F. You also should not subtract your short position(s) in a security from your long position(s) in that same security; report only the long position.").

[FN106]. *SEC Form 13F FAQ, supra* note 102, Question 42.

[FN107]. Form 13F, *supra* note 16, Special Instruction 12(b)(viii).

[FN108]. *See* Rules 16a-1(a); 16a-2, 17 C.F.R. §§ 240.16a-1(a), 16a-2 (2005).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN109]. Rule 16a-1(a), 17 C.F.R. § 240.16a-1(a) (2005). Registered broker-dealers, banks, and certain other persons are exempt so long as they hold shares without the purpose or effect of changing or influencing control of the issuer or entering into an arrangement that would violate the anti-gaming provisions of Rule 13d-3(b), 17 C.F.R. § 240.13d-3(b) (2005).

[FN110]. Rule 16a-(2), 17 C.F.R. § 240.16a-2 (2005). For non-experts in securities law, yes, the SEC has indeed defined the same term-beneficial ownership-in two different ways, once under Exchange Act § 13(d) (codified as amended at 15 U.S.C. § 78m(d) (2000 & Supp. III 2003)) and once under § 16(b) (codified as amended at 15 U.S.C. § 78p(b) (2000 & Supp. III 2003)).

[FN111]. Rule 16a-3, 17 C.F.R. § 240.16a-3 (2005); *SEC Form 3, supra* note 85, General Instruction 3.

[FN112]. Rule 16a-1(c), 17 C.F.R. § 240.16a-1(c) (2005).

[FN113]. Exchange Act Rule 16a-1(c)(4), 17 C.F.R. § 240.16a-1(c)(4) (2005).

[FN114]. *SEC Form 3, supra* note 85, General Instruction 5(c)(iii).

[FN115]. *SEC Form 4, supra* note 85, General Instructions 1(a), 4(a), 8.

[FN116]. Share borrowings would, however, clearly count toward triggering disclosure by 10% shareholders, which is governed by the separate Section 13(d) rules.

[FN117]. *See, e.g.*, 16 ARNOLD S. JACOBS, SECTION 16 OF THE SECURITIES EXCHANGE ACT § 7.31 (2005). The lender's tax position does change slightly, due to tax differences between dividends and payments by the borrower in lieu of dividends. *Cf. infra* note 171 (on another aspect of such tax differences). However, these seem too thin a reed on which to hang a disclosure obligation, especially since this difference has been significant only since the 2003 reduction in the tax rate on dividends.

[FN118]. The basic forms for mutual fund portfolio disclosure are Forms N-1A, N-CSR, and N-Q. *See* Shareholder Reports and Quarterly Portfolio Disclosure of Registered Management Investment Companies, SEC Rel. No. 33-8393 (Feb. 27, 2004), 69 Fed. Reg. 11244, 11254-57 (Mar. 9, 2004) [hereinafter "*SEC Mutual Fund Reports Adopting Release*"]; Form N-1A, Registration Statement Under the Securities Act of 1933, Items 22(b)-(c) (discussing annual and semiannual reports), *available at* http://www.sec.gov/about/forms/formn-la.pdf; Form N-CSR, Certified Shareholder Report of Registered Management Investment Companies, Item 6 (Schedule of Investments), *available at* http:// www.sec.gov/about/forms/formn-csr.pdf; Form N-Q, Quarterly Schedule of Portfolio Holdings of Registered Management Investment Company, *available at* http://www.sec.gov/about/forms/formn-q.pdf.

[FN119]. Mutual funds usually list the securities that they have lent in their schedule of investments with a footnote saying that "[a]ll or a portion of this security is on loan." Susan C. Peters, *Accounting Treatment of Loans of Securities*, in SECURITIES FINANCE: SECURITIES LENDING AND REPURCHASE AGREEMENTS 210 (Frank J. Fabozzi & Steven V. Mann eds., 2005). Mutual fund balance sheets disclose the total value of securities on loan. *Id.* Mutual funds must disclose any short positions; implicit in this disclosure is that the fund borrowed the shares that it then sold short.

[FN120]. For more extended discussion of the benefits and costs of disclosure, see Hu & Black, *Hedge Funds and Empty Voting, supra* note 24, Part 4.3.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN121]. The principal arguments for disclosure of pure short positions are the value of simplicity and symmetry, the practical difficulty in drafting an exception that is limited to a short position with no de facto voting rights, reduced gaming risk, and the value to investors of fuller knowledge of other investors' positions. The principal arguments against disclosure are that short selling is a valuable policing mechanism for share prices, our markets and regulatory systems already burden short sellers in various ways, and disclosure would add to these burdens. On how U.S. tax and regulatory rules raise the cost of short selling, see Michael R. Powers, David M. Schizer & Martin Shubik, *Market Bubbles and Wasteful Avoidance: Tax and Regulatory Constraints on Short Sales*, 57 TAX L. REV. 233 (2004).

[FN122]. For analyses of how financial innovation subverts traditional classification-based regulation, see Hu, *Misunderstood Derivatives, supra* note 27; Henry T. C. Hu, *Swaps, the Modern Process of Financial Innovation and the Vulnerability of a Regulatory Paradigm*, 138 U. PA. L. REV. 333 (1989) [hereinafter "Hu, *Regulatory Paradigm*"]; Edward D. Kleinbard, *Equity Derivative Products: Financial Innovation's Newest Challenge to the Tax System*, 69 TEX. L. REV. 1319 (1991) [hereinafter "Kleinbard, *Equity Derivatives*"].

[FN123]. Panel Executive (Panel on Takeovers and Mergers), *Summary of Changes to the Takeover Code* (Oct. 2005), *available at* http:// www.thetakeoverpanel.org.uk/forms/summary%20of%CC207%CC2011%20changes.pdf; Panel on Takeovers and Mergers, *Dealings in Derivatives and Options: Statement by the Code Committee of the Panel Following the External Consultation Processes on Disclosure Issues in PCP 2005/1 and PCP 2005/2* (Aug. 5, 2005), *available at* http://www.thetakeoverpanel.org.uk/new/statements/DATA/2005/2005-34.pdf; Panel on Takeovers and Mergers, *Consultation Paper Issued by the Code Committeee of the Panel-Dealings in Derivatives and Options: Outline Proposals relating to Amendments Proposed to Be Made to The Takeover Code and the SARS* (PPCP 2005/1 Issued on Jan. 7, 2005), *available at* http:// www.thetakeoverpanel.org.uk/new/consultation/DATA/PCP200501.pdf.

[FN124]. Hong Kong Securities and Futures Commission, *Consultation Paper on the Review of the Disclosure of Interests Regime under Part XV of the Securities and Futures Ordinance* (Jan. 2005), *available at* http:// www.sfc.hk/sfc/notes/consult/EN/apps/som/direviewconsult.nsf/content/Download/1/ $FILE/Part%20XV%CC20Consultation%CC20Paper%CC20200105%20-%20English.pdf; Hong Kong Securities and Futures Commission, *Outline of Part XV of the Securities and Futures Ordinance (Cap. 571)-Disclosure of Interests* (Aug. 6, 2003), *available at* http://eapp01.sfc.hk/apps/cc/RegulatoryHandbook.nsf/lkupMainAllDoc/H339/ $FILE/en_sfc_outline.pdf.

[FN125]. *See, e.g.*, Cheng, *supra* note 52.

[FN126]. On Form 13F enforcement, see James D. Cox & Randall S. Thomas, *Letting Billions Slip Through Your Fingers: Empirical Evidence and Legal Implications of the Failure of Financial Institutions to Participate in Securities Class Action Settlements*, 58 STAN. L. REVV. 411, 445-48 (2005).

[FN127]. More technically, delta is the partial derivative of option price with respect to the price of the underlying asset. *See* E. BRIYS, M. BELLALH, H.M. MAI, F. DE VARENNE, OPTIONS, FUTURES, AND EXOTIC DERIVATIVES 124 (1998).

[FN128]. *See* Hong Kong SFC, *Part XV Outline, supra* note 124, at 2.5 (section entitled "How many shares am I taken to be interested in if I hold equity derivatives?").

[FN129]. For a discussion of so-called "risk reporting" to hedge fund investors, see LESLIE RAHL, HEDGE FUND TRANSPARENCY-UNRAVELING THE COMPLEX AND CONTROVERSIAL DEBATE 65-81 (2003).

[FN130]. Thus, one recent estimate of the size of the U.S. institutional securities lending market drew on a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

combination of the firm's own internal client surveys and Federal Reserve statistics. *See* Phyllis Plitch, *Funds' Lending Sparks' 'Short' Debate*, WALL ST. J., May 25, 2005, at B2D; *cf.* Dan Barnes, *Learning the Cost of Stock Lending*, BANKER, May 2005, at 62 (the size of the global securities lending market is "fairly unclear").

[FN131]. *See* Jeffrey Cohen, David Haushalter & Adam V. Reed, *Mechanics of the Equity Lending Market*, in SHORT SELLING: STRATEGIES, RISKS, AND REWARDS 13-14 (Frank J. Fabozzi ed., 2004).

[FN132]. *See* International Corporate Governance Network-Securities Lending Committee, *ICGN Stock Lending Code of Best Practice* (2005) [hereinafter "ICGN, *Draft Stock Lending Code*"], *available at* http://www.icgn.org/organisation/documents/slc/code_final.pdf; Lintstock, *Share lending vis-à-vis voting-A report commissioned by the International Corporate Governance Network*, at 3 & 22 (May 28, 2004) [hereinafter "Lintstock, *Share Lending Survey*"], *available at* http://www.icgn.org/documents/share_lending_report_may2004.pdf.

[FN133]. *See* Hu & Black, *New Vote Buying, supra* note 24; Hu & Black, *Hedge Funds and Empty Voting, supra* note 24.

[FN134]. Scotiabank apparently is claiming that the shares it pledged were not the "matched shares" supporting the swap. *See* Eisinger, *supra* note 59 (noting that shares are fungible).

[FN135]. *See*Business Roundtable v. SEC, 905 F.2d 406 (D.C. Cir. 1990) (invalidating SEC's effort to ban dual-class recapitalizations); Stephen M. Bainbridge. *The Short Life and Resurrection of SEC Rule 19c-4*, 69 WASH. U.L.QQ. 565 (1991) (discussing said effort).

[FN136]. *See, e.g.*, Kate Litvak, *The Effect of the Sarbanes-Oxley Act on Non-US Companies Cross-Listed in the US* (working paper 2006), *available at* http://ssrn.com/abstract=876624; Roberta Romano, *The Sarbanes-Oxley Act and the Making of Quack Corporate Governance*, 114 YALE L.J. 1521 (2005).

[FN137]. Martin & Partnoy, *supra* note 25, at 794.

[FN138]. In effect, Martin and Partnoy deal with limited aspects of what we refer to as empty voting, and do not address hidden (morphable) ownership, the other half of the new vote buying.

[FN139]. On the current system and its origins, see, e.g., Issuer Restrictions or Prohibitions on Ownership by Securities Intermediaries, SEC Rel. No. 34-50758, 69 Fed. Reg. 70852, 70852 nn. 1-2, 70853 n. 21 (Dec. 7, 2004); MICHAEL T. REDDY, SECURITIES OPERATIONS-A GUIDE TO OPERATIONS AND INFORMATION SYSTEMS IN THE SECURITIES INDUSTRY 127-64 (2d ed. 1995).

[FN140]. NYSE RULE 452. *See generally* Task Force on Shareholder Proposals of the Committee on Federal Regulation of Securities. *Report on Proposed Changes in Proxy Rules and Regulations Regarding Procedures for the Election of Corporate Directors*. 59 BUS. LAW. 109 (2003).

[FN141]. We first raised the idea of an opt-in approach in the initial 2005 draft of this article. *See supra* note 24.

[FN142]. The Delaware Supreme Court has stated that Delaware courts "have remained assiduous in carefully reviewing any board actions designed to interfere with or impede the effective exercise of corporate democracy by shareholders, especially in an election of directors." MM Cos. v. Liquid Audio, Inc., 813 A.2d 1118, 1127 (Del. 2003).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN143]. DEL. CODE ANN. tit. 8, § 212(a) (2001 & Supp. 2004).

[FN144]. Williams v. Geier, 671 A.2d 1368 (Del. 1996). This case involved "time-phased" voting rights, in which shareholders who held shares for three years had 10 votes per share, while other shareholders had only one vote per share.

[FN145]. New York Stock Exchange, *Voting Rights*, LISTED COMPANY MANUAL, ¶ 313.00(A) (Oct. 10, 1998).

[FN146]. Exchange Act § 14(a) (codified as amended at 15 U.S.C. § 78n(a) (2000 & Supp. III 2003)).

[FN147]. *See, e.g.*, Robert Daines & Michael Klausner, *Do IPO Charters Maximize Firm Value? Antitakeover Protection in IPOs*, 17 J.L., ECON. & ORGANIZATION 83 (2001).

[FN148]. *See* Lucian Arye Bebchuk, *Limiting Contractual Freedom in Corporate Law: The Desirable Constraints on Charter Amendments*, 102 HARV. L. REVV. 1820 (1989); Bernard S. Black, *Is Corporate Law Trivial?: A Political and Economic Analysis*, 84 NW. U.L. REV. 542 (1990).

[FN149]. In the Introduction, we sketched why traditional vote buying doctrine does not cover empty voting through the two-step process of purchasing shares and then hedging economic ownership. A new vote buyer using record date capture can generally also avoid being constrained by existing case law. The borrowed shares convey full economic and voting ownership. This is customarily coupled with the right of either the borrower or the lender to reverse the transaction on demand and, while the loan is outstanding, the borrower paying to the lender the cash return on the shares plus an agreed upon borrowing charge. No individual piece of this arrangement is seen as problematic under current doctrine.

[FN150]. *See* Hewlett v. Hewlett-Packard Co., No. Civ. A. 19513-NC, 2002 WL 818091, at *9 (Del. Ch. Ap. 30, 2002) (finding that "no one from HP used any threats or inducements regarding future business relationships").

[FN151]. *See* Warner Fuller, *Restrictions Imposed by the Directorship Status on the Personal Business Activities of Directors*, 26 WASH. U.L.QQ. 189 (1941); *cf*. Golden Rod Mining Co. v. Bukvich, 92 P. 2d 316 (Mont. 1939) (involving an outside director who was a competitor).

[FN152]. Ronald J. Gilson & Alan Schwartz, *Sales and Elections as Methods for Transferring Corporate Control*, 2 THEORETICAL INQUIRIES IN LAW 783 (2001).

[FN153]. *See, e.g.*, Andrew R. Brownstein & Igor Kirman, *Can a Board Say No When Shareholders Say Yes? Responding to Majority Vote Resolutions*, 60 BUS. LAW. 23 (2004).

[FN154]. *See, e.g.*, Kit Bingham, *Myners rejects calls for curbs on stock lending*, EFINANCIALNEWS.COM, Mar. 20, 2005 ("most portfolio managers are unaware that their shares have been lent"); Martin Dickson, *Myners' whiffometer*, FIN. TIMES, Mar. 15, 2005, at 22 ("some fund managers may not be aware that the shares have been lent, since the beneficial owners may contract directly with custodians to lend").

[FN155]. *See* Lintstock, *Share lending vis-à-vis voting-A report commissioned by the International Corporate Governance Network* (May 28, 2004), *available at* http://www.icgn.org/documents/share_lending_report_may2004.pdf.

[FN156]. Paul Myners, Review of the Impediments to Voting UK Shares 4-5, 11 (2005), *available at* http://www.investmentuk.org/press/2005/20050314-01.pdf.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN157]. Kit Bingham, *Concern Grows Over Borrowed Votes*, EFINANCIALNEWS.COM, May 8, 2005.

[FN158]. *See* CalPERS, *Securities Lending as It Relates to Proxy Voting* (report prepared by CalPERS staff in response to May 16, 2005 Investment Committee meeting), *available at* http://www.calpers.ca.gov/eip-docs/about/board-cal-agenda/agendas/invest/200506/item08a-03.pdf. We confess to being unsure how CalPERS will decide which borrowers are legitimate and which are not.

[FN159]. *See* Gene Picone & Paul Wilson, *Lending Arrangements-Exclusive Risks, Exclusive Rewards*, GLOBAL INVESTOR, Mar. 2005, at 1, 1-2.

[FN160]. See, e.g., *Super-hero or Super-villain? Is Securities Lending Unpatriotic and Detrimental to the Market, or Does It Improve Liquidity and Efficiency?*, BANKER, Nov. 1, 2002.

[FN161]. *See DTC Begins Testing for Agency Lending Disclosure*, BUSINESS WIRE, June 29, 2005; Shane Kite, *Deadline Looms for Securities Lenders-Two-year Agency Disclosure Initiative Still Trying to Fill Membership Gaps*, SEC. INDUSTRY NEWS, Mar. 15, 2006; Department of the Treasury, Financial Crimes Enforcement Network, Frequently Asked Questions-Customer Identification Program Responsibilities Under the Agency Lending Disclosure Initiative (Apr. 25, 2006), *available at* http://www.fincen.gov/cip_faq.html.

[FN162]. For an introduction to over-voting issues, see Martin & Partnoy, *supra* note 25; Chris Kentouris, *Decisive Moment on Proxy Miscounts*, SEC. INDUSTRY NEWS, Dec. 31, 2004; Robert C. Apfel, John E. Parsons, G. William Schwert, & Geoffrey S. Stewart, *Short Sales, Damages, and Class Certification in 10b-5 Actions*, Univ. of Rochester, Simon School of Business Administration, Bradley Policy Research Center Financial Research and Policy Working Paper No. FR 01-19 (July 2001), *available at* http://ssrn.com/abstract=285768.

[FN163]. *See* Kentouris, *supra* note 162.

[FN164]. *See* Seidman and Associates, L.L.C. v. G.A. Financial, Inc., 837 A.2d 21 (Del. Ch. 2003) (court upholds decision by election inspector to disallow all 232,000 votes cast by a broker dealer who had overvoted by less than 1,000 votes); Apfel et al., *supra* note 162 (discussing a proxy contest at Integrated Circuit Systems and associated voting actions taken by brokers).

[FN165]. Bob Drummond, *One Share, One Vote: Short Selling Short-circuits the System*, INT'L HERALD TRIB., Mar. 1, 2006, at 20.

[FN166]. *Id.* (quoting Thomas Montrone, CEO of Registrar & Transfer).

[FN167]. See, e.g., State Street Bank & Trust Company, SEC No-Action Letter, 1972 SEC No-Act. LEXIS 4607 (Sept. 29, 1972); *cf.* Susan C. Peters, *Accounting Treatment of Loans of Securities*, in SECURITIES FINANCE: SECURITIES LENDING AND REPURCHASE AGREEMENTS 209 (Frank J. Fabozzi & Steven M. Mann eds., 2005) (mutual funds "must have the ability to recall any security on loan to vote on a material event proxy").

[FN168]. *See* Disclosure of Proxy Voting Policies and Proxy Voting Records By Registered Investment Companies, SEC Rel. No. 33-8188 (Jan. 31, 2003); Proxy Voting by Investment Advisers, SEC Rel. No. 1A-2106 (Jan. 31, 2003). On the circumstances when investment advisors need not vote, see Rel. No. 1A-2106, *supra*, at § 11(A)(2)(a) & n. 3.

[FN169]. *See* Department of Labor, Interpretive Bulletin 94-2 (July 29, 1994); *cf.* Clifford E. Kirsch, *Proxy Voting*,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in MUTUAL FUND REGULATION § 11.4 (Clifford E. Kirsch ed., 2d ed. 2005) (describing DoL's approach to proxy voting).

[FN170]. Department of Labor-Pension & Welfare Benefit Programs, Opinion 79-11A, 1979 ERISA LEXIS 81 (Feb. 23, 1979).

[FN171]. For discussion of how these tax considerations may cause stock lending to flow from mutual funds to (tax-exempt) pension funds, see Phyllis Feinberg, *Reduced Supply: New Law to Slow Mutual Funds' Securities Lending: Pension Fund Programs Stand to Receive Benefits of Recently Passed Dividend Tax Cut*, PENSIONS & INVESTMENTS, Sept. 1, 2003, at 6.

[FN172]. Rule 15c3-3(b)(3), 17 C.F.R. § 240.15c3-3(b)(3) (2005), specifies that the broker's borrowing of securities from its margin customer be pursuant to a written agreement that meets certain criteria; there is no requirement that the agreement be periodically renewed, or that the customer approve individual loans. *See* Michael P. Jamroz, *The Customer Protection Rule*, 57 BUS. LAW. 1069 (2002).

[FN173]. For details on these constraints, see Hu & Black, *New Vote Buying, supra* note 24, at 903-04.

[FN174]. *See* In the Matter of Citigroup, Inc. SEC Rel. No. 34-48230, 2003 SEC LEXIS 1778 (July 28, 2003); In the Matter of J.P. Morgan Chase & Co., Lit. Rel. No. 18252 2003 SEC LEXIS 1775 (July 28, 2003).

[FN175]. *See* Securities and Exchange Commission, Policy Statement: Interagency Statement on Sound Practices Concerning Complex Structured Finance Activities, SEC Rel. No. 34-49695, 2004 SEC LEXIS 1017 (May 13, 2004); Interagency Statement on Sound Practices Concerning Elevated Risk Complex Structured Finance Activities, 71 Fed. Reg. 28326 (May 16, 2006).

[FN176]. *See* Regulation T, 12 C.F.R. pt 220 (2006), especially 12 C.F.R. § 220.2 (2006) ("exempted borrower" exemption for major broker-dealers); 12 C.F.R. § 220.10(c) (2006) ("permitted purpose" exemption for other broker-dealers).

[FN177]. *See* Federal Reserve Board Rulings and Staff Opinions Interpreting Regulation T, 5-615.01, FRRS 5-615.01 (July 6, 1984) (regarding analogous situation of record date capture to let borrowers take advantage of company dividend reinvestment plans).

[FN178]. *See* Myners, *supra* note 156, at 13; Bank of England, Securities Borrowing and Lending Code of Guidance, at 17 (2004), *available at* http:// www.bankofengland.co.uk/markets/gilts/stockborrowing.pdf (stating that there is "consensus in the market" that securities "should not be borrowed solely for the purposes of exercising the voting rights at [a shareholder meeting]").

[FN179]. 26 U.S.C.A. § 1259 (2002 & Supp. 2006).

[FN180]. *See, e.g.,* Alex Raskolnikov, *Contextual Analysis of Tax Ownership*, 85 B.U. L. REV. 431 (2005); Deborah H. Schenk, *An Efficiency Approach to Reforming a Realization-Based Tax*, 57 TAX L. REV. 503, 532-33 (2004) (noting that a "very limited number of taxpayers" pay tax under § 1259).

61 Bus. Law. 1011

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

79 SCALR 811                                                                                    Page 1
79 S. Cal. L. Rev. 811
**(Cite as: 79 S. Cal. L. Rev. 811)**

C Southern California Law Review
May, 2006

Articles

**\*811 THE NEW VOTE BUYING: EMPTY VOTING AND HIDDEN (MORPHABLE) OWNERSHIP** [FNa1]

Henry T. C. Hu [FNaa1]

Bernard Black [FNaaa1]

Copyright (c) 2006 University of Southern California; Henry T. C. Hu; Bernard Black

ABSTRACT

Corporate law generally makes voting power proportional to economic ownership. This serves several goals. Economic ownership gives shareholders an incentive to exercise voting power well. The coupling of votes and shares makes possible the market for corporate control. The power of economic owners to elect directors is also a core basis for the legitimacy of managerial authority. Both theory and evidence generally support the importance of linking votes to economic interest. Yet the derivatives revolution and other capital markets developments now allow both outside investors and insiders to readily decouple economic ownership of shares from voting rights. This decoupling, which we call the \*812 "new vote buying," has emerged as a worldwide issue in the past several years. It is largely hidden from public view and mostly untouched by current regulation.

Hedge funds have been especially creative in decoupling voting rights from economic ownership. Sometimes they hold more votes than economic ownership--a pattern we call "empty voting." In an extreme situation, a vote holder can have a negative economic interest and, thus, an incentive to vote in ways that reduce the company's share price. Sometimes investors hold more economic ownership than votes, though often with "morphable" voting rights--the de facto ability to acquire the votes if needed. We call this situation "hidden (morphable) ownership" because the economic ownership and (de facto) voting ownership are often not disclosed.

This Article analyzes the new vote buying and its potential benefits and costs. We set out the functional elements of the new vote buying and develop a taxonomy of decoupling strategies. We also propose a near-term disclosure-based response and outline a menu of longer-term regulatory choices. Our disclosure proposal would simplify and partially integrate five existing, inconsistent ownership disclosure regimes, and is worth considering independent of its value with respect to decoupling. In the longer term, other responses may be needed: we discuss strategies focused on voting rights, voting architecture, and supply and demand forces in the markets on which the new vote buying relies.

TABLE OF CONTENTS

I.                                          INTRODUCTION.                                    814

79 SCALR 811
79 S. Cal. L. Rev. 811
(Cite as: 79 S. Cal. L. Rev. 811)

II.      THE TECHNOLOGY OF                        823
         THE NEW VOTE BUYING.

         A. The Functional Elements               823
         of the New Vote Buying.

         Table 1.                                 827

         B. Empty Voting Through                  828
         Coupled Assets.

         1. Empty Voting Through                  828
         Equity Derivatives.

         a. Perry-Mylan Laboratories              828
         and Similar Examples.

         b. Liberty Media-News                    830
         Corporation.

         c. Insider Hedging and                   831
         Entrenchment.

         2. Empty Voting Through                  832
         Record Date Capture.

         C. Hidden (Morphable)                    836
         Ownership.

         1. Morphing from de Facto to             836
         Formal Voting Rights.

         a. Access to Derivatives                 836
         Dealers' Matched Shares.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

79 SCALR 811
79 S. Cal. L. Rev. 811
(Cite as: 79 S. Cal. L. Rev. 811)

|  |  |  |
|---|---|---|
|  | b. Avoiding Mandatory Bid Rules and Other Uses. | 839 |
|  | 2. Toeholds and the Social Virtues of Stealth. | 840 |
|  | 3. Shedding Voting Rights. | 841 |
|  | D. Related Non-host Assets. | 842 |
|  | 1. Mergers. | 842 |
|  | 2. Indirect Hedges. | 844 |
|  | E. Innovations Underlying the New Vote Buying. | 844 |
|  | F. The Extent of New Vote Buying. | 846 |
|  | Table 2. | 848 |
| III. | LEGAL AND FINANCE THEORY AND EVIDENCE. | 850 |
|  | A. Classic Theory of Voting Rights: Introduction. | 850 |
|  | B. Literature Review: Theory and Implications for New Vote Buying. | 851 |
|  | 1. Theory. | 851 |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

79 SCALR 811
79 S. Cal. L. Rev. 811
(Cite as: 79 S. Cal. L. Rev. 811)

a. One-share-one-vote.                                     851

b. The Value of Votes:
Individual Versus Collective
Value.                                                     852

c. Equilibrium Versus
Nonequilibrium Models.                                     853

2. Empirical Evidence.                                     854

a. Divergence Between
Insiders' Voting and Economic
Ownership.                                                 854

b. The Value of Voting
Rights.                                                    855

c. Market for Corporate
Control.                                                   856

d. Record Date Capture.                                    857

C. Analogies to Other Forms
of Decoupling.                                             858

1. Dual-class Common Stock,
Pyramids, and Circular Control.                            858

2. Dual-class
Recapitalizations.                                         859

3. Voting by Record Owners.                                860

| | | |
|---|---|---|
| | D. Classical Vote Doctrine and Decoupling. | 861 |
| | E. Testable Hypotheses. | 863 |
| IV. | DISCLOSURE: CURRENT RULES AND REFORM PROPOSAL. | 864 |
| | A. General Considerations. | 864 |
| | B. Existing Disclosure Requirements. | 864 |
| | Table 3. | 866 |
| | 1. Large Shareholder Disclosure (Schedules 13D and 13G). | 867 |
| | a. Basic Requirements. | 867 |
| | b. Application to Hidden (Morphable) Ownership. | 868 |
| | c. Application to Empty Voting. | 870 |
| | 2. Reporting by Institutional Money Managers (Form 13F). | 871 |
| | 3. Insider and 10% Shareholder Disclosure (Section | 873 |

79 SCALR 811
79 S. Cal. L. Rev. 811
**(Cite as: 79 S. Cal. L. Rev. 811)**

Page 6

16).

| | |
|---|---:|
| 4. Mutual Fund Reporting. | 875 |
| C. Reforming the Disclosure System. | 875 |
| 1. General Considerations. | 875 |
| Table 4. | 881 |
| 2. Large Shareholder Disclosure (Schedules 13D and 13G). | 882 |
| 3. Institutional Money Managers and Mutual Funds. | 883 |
| D. Disclosure of Large Empty Voting Positions. | 885 |
| E. Summary. | 886 |
| V.    LONGER RUN RESPONSES TO EMPTY VOTING. | 886 |
| A. General Considerations. | 886 |
| B. Strategies Focused on Voting Rights. | 888 |
| 1. Direct Limits on Voting Rights. | 888 |

2. Voting by Record Owners; Extension to Equity Swaps.                                890

3. Corporation Opt-in.                                                               890

4. State Corporate Law.                                                              893

C. Strategies Focused on Voting Architecture.                                        895

D. Strategies Focused on Supply and Demand Forces in the Markets on Which the New Vote Buying Relies.     899

1. Limiting Share Lending and Requiring Institutional Voting.                         899

2. Safe Harbor for Voting Instead of Lending Shares.                                 901

3. Reducing the Attractiveness of Lending Shares and Providing Equity Derivatives.   902

4. Imposing Responsibilities on Share Lenders and Derivatives Providers.             904

5. The Demand Side: Executive Hedging.                                               906

VI.                          CONCLUSION.                                             906

79 SCALR 811
79 S. Cal. L. Rev. 811
(Cite as: 79 S. Cal. L. Rev. 811)

Page 8

## *814 I. INTRODUCTION

The vote is the core source of shareholder power. The standard contractarian theory of the corporation supports assigning voting rights to common shareholders in proportion to share ownership. Doing so places the power to oversee company managers in the hands of residual owners, who have an incentive to exercise that power to increase firm value; the more shares owned, the greater the incentive and thus the greater the number of votes. [FN1] Linking shares to votes also facilitates the operation of the market for corporate control. Empirical evidence supports the concern with a disparity between insiders' voting power and economic interest by *815 showing that such a disparity predicts reduced firm value. [FN2] Beyond this instrumental role of voting, shareholder voting is a core ideological basis for managerial authority, legitimating managers' exercise of authority over property the managers do not own. [FN3]

Yet the derivatives revolution in finance, especially the growth in equity swaps and other privately negotiated ("over-the-counter" or "OTC") equity derivatives, and related growth in the share lending market, are making it easier and cheaper to decouple economic ownership from voting power. [FN4] Hedge funds and company insiders are taking advantage of this new opportunity. Sometimes, they hold more votes than shares--a pattern we call "empty voting" because the votes have been emptied of an accompanying economic stake. In an extreme case, an investor can vote despite having negative economic ownership, which gives the investor an incentive to vote in ways that reduce the company's share price.

Investors or insiders can also have economic ownership that exceeds their apparent voting rights. The investors or insiders often have informal access to voting rights, which they typically exercise by either acquiring formal voting rights from an intermediary (usually a derivatives dealer) or instructing the intermediary on how to vote the company's shares. This ownership is typically not disclosed under large shareholder disclosure rules. [FN5] These rules focus on voting power rather than economic interest, and do not clearly require disclosure of the informal voting power that often exists. The informal, "morphable" nature of these voting rights allows *816 investors to plausibly deny the voting power that would trigger disclosure. We use the term "hidden ownership" to refer to the undisclosed economic ownership, and the term "hidden (morphable) ownership" to refer to the combination of undisclosed economic ownership plus probable informal voting power.

We refer to empty voting and hidden (morphable) ownership together as "the new vote buying" or simply as "decoupling." In the last few years, the new vote buying has affected takeover battles and control of public companies in (at least) Australia, Canada, Germany, Hong Kong, Italy, Japan, New Zealand, the United Kingdom, and the United States.

There are a number of ways to decouple votes from economic ownership. One method relies on the share lending market, which lets one investor "borrow" shares from another. Under standard lending arrangements, the borrower has voting rights but no economic ownership, while the lender has economic ownership without voting rights. A second approach employs an equity swap, in which the person with the long equity side (the "equity leg") of the swap acquires economic ownership of shares (but not voting rights) from the short side (the "interest leg"). The short side often hedges its economic risk by holding shares, thus ending up with votes but no net economic ownership. Other decoupling strategies are also possible, such as relying on put and call options or, where they exist, single-stock futures.

A recent public instance of empty voting illustrates the potential risks from empty voting. Perry Corp., a hedge fund, owned 7 million shares of King Pharmaceuticals. [FN6] In late 2004, Mylan Laboratories agreed to buy King in a stock-for-stock merger at a substantial premium, but Mylan's shares dropped sharply when the deal was announced. To help Mylan obtain shareholder approval for the merger, Perry bought 9.9% of Mylan, becoming

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Mylan's largest shareholder. But Perry fully hedged the market risk associated with its Mylan shares. Perry thus had 9.9% voting ownership and zero economic ownership. Including its position in King, Perry's overall economic interest in Mylan was negative. The more Mylan (over) paid for King, the more Perry stood to profit.

Empty voting can also be used to multiply the voting power of an existing long ownership position. For example, a shareholder can borrow shares just before the record date for a shareholder vote, and then reverse **\*817** the transaction afterward. The first publicly reported instance of this "record date capture" strategy occurred in the United Kingdom in 2002. [FN7] Laxey Partners, a hedge fund, held about 1% of the shares of British Land, a property company. At the annual general meeting, Laxey voted over 9% of British Land's shares to support a proposal to dismember British Land. Just before the record date, Laxey had borrowed almost 42 million shares.

Empty voting by institutions is a close cousin to widely used techniques, such as zero-cost collars and variable prepaid forwards, by which managers and controlling shareholders retain formal ownership of shares, while shedding some or most of their economic ownership. [FN8] In the United States, these strategies typically have been driven by insiders' desire to shed risk while deferring taxes, rather than by vote buying motives. But insiders can readily use empty voting techniques to cement their control, and do so in other countries.

Conversely, investors can have greater economic ownership than formal voting rights, but also have informal, "morphable" voting rights that give the investor full ownership as a practical matter. Perry's stake in a New Zealand company, Rubicon Ltd., which came to light in 2003, illustrates this possibility. [FN9] Perry used equity swaps provided by derivatives dealers to hold a 16% economic stake in Rubicon, without complying with New Zealand's large shareholder disclosure rules, which, like section 13(d) ("Section 13(d)") of the Securities Exchange Act of 1934 ("Exchange Act"), require disclosure by 5% shareholders. [FN10] When an election came along, Perry returned to its dealers, unwound the swaps, acquired the "matched shares" held by the dealers to hedge the swaps, and thus obtained formal voting rights. Perry's nondisclosure was upheld under New Zealand law. Morphable voting rights can also be useful for reasons unrelated to disclosure. [FN11]

**\*818** The new vote buying is largely unregulated and often unseen. Corporate case law governing "classic" vote buying does not touch it. That case law presumes a direct transfer of voting rights from a vote seller to a vote buyer; it then assesses the business justification for the seller's transfer of voting rights. In the leading Delaware case, Schreiber v. Carney, vote buying is defined as "a voting agreement supported by consideration personal to the stockholder, whereby the stockholder . . . votes as directed by the offeror." [FN12] In contrast, the new vote buying often involves no identifiable "seller" nor an identifiable "transfer" of voting rights. The new vote buyer can, for instance, follow a two-step process. It buys shares in the open market and then enters into a derivatives transaction that offsets economic ownership of the shares. The vote buyer is left only with voting ownership. It has engaged in two conventional transactions--purchasing shares and using a derivative for hedging purposes--that are not individually suspect. For record date capture, the sale of votes occurs through share lending--an ordinary activity with legitimate uses unrelated to vote buying.

Federal ownership disclosure rules scarcely touch the new vote buying either. Institutional investors must disclose their share positions in public companies on Form 13F. [FN13] But Form 13F does not cover transactions that offset either the voting rights or economic interest conveyed by these positions. Nor does it cover economic ownership acquired by holding equity swaps or other OTC derivatives. The Schedule 13D and Schedule 13G requirements for disclosure by 5% shareholders are more extensive, but with some attention to legal niceties, hidden (morphable) ownership and empty voting positions can often be structured to arguably evade 13D/13G disclosure. [FN14] Even in Perry-Mylan, where Perry filed a Schedule 13D, it made only limited disclosure of its hedging agreements. [FN15] Disclosure by insiders and 10% shareholders under section 16 of the Exchange Act ("Section 16") focuses on economic ownership. [FN16] Section 16 disclosure captures empty voting through hedging (since hedging affects **\*819** economic ownership) but likely does not capture empty voting through share borrowing (since economic ownership does not change).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Because the new vote buying is seldom captured by disclosure rules, its scale is unknown. We did, however, search for and compile a list of over twenty confirmed or publicly rumored examples, almost all since 2002. It is no accident that most of these examples are recent, nor that many involve hedge funds. The theoretical possibility of decoupling votes from economic ownership is not new. [FN17] What is new is investor ability to do so on a large scale, declining transaction costs due to financial innovation, and a trillion-dollar-plus pool of sophisticated, lightly regulated, hedge funds, free from conflicts of interest and concerns with adverse publicity that may deter other institutional investors from using decoupling strategies.

The corporate governance risk posed by the new vote buying is clear, but the remedy is not. Policymakers abroad--notably in Hong Kong and the United Kingdom--are beginning to confront the new vote buying. U.S. policymakers will soon need to address it. [FN18]

In our view, the near term need is for enhanced ownership disclosure (crafted with sensitivity to the costs of disclosure), to let regulators assess how often new vote buying occurs and how it affects shareholder vote outcomes. If disclosures are made on a real-time basis (a step that goes somewhat beyond our proposal), the information they provide can also let the Delaware courts (the most likely venue) address voting rights on a case-by-case basis under general corporate law principles.

Four themes motivate our disclosure reform recommendations. One is that disclosure rules should be internally consistent. They should treat substantively identical positions similarly, which current rules do not. In particular, given investors' ability to morph from economic-only ownership to economic-plus-voting ownership, the rules must cover both economic and voting ownership. Second, the disclosure rules should be "good enough" to let regulators and investors assess when and where vote buying *820 occurs, without imposing large new costs on investors. Third, the rules should treat long and short positions symmetrically.

Fourth, the ownership disclosure rules can be much simplified and better integrated. Currently, there are five distinct, highly idiosyncratic, complex SEC ownership disclosure regimes. These disclosure regimes apply respectively to large active shareholders (Schedule 13D), large passive shareholders (Schedule 13G), institutional investors generally (Form 13F), insiders and 10% shareholders (Section 16), and mutual funds. [FN19] Our proposals would significantly simplify this complex scheme, and move toward an integrated system for share ownership disclosure that builds on existing Section 16 and mutual fund disclosure rules. Better integrated, more consistent ownership disclosure rules could well reduce compliance costs and be worthwhile on this basis alone, quite apart from their role in addressing the new vote buying.

In proposing disclosure reforms, we take as given the rough economic and political logic behind the current rules. We do not revisit whether large shareholders or major institutions should disclose their share positions, nor the threshold levels for this disclosure. While the optimality of these thresholds is contestable, we believe that they are at least reasonable. We also believe that whatever the thresholds are, the disclosure rules should be internally consistent. Moreover, the political history of disclosure, in the United States and elsewhere, suggests that our political system will not tolerate hidden control of major companies, nor control contests waged behind closed doors. So disclosure there will be. Our aim is to make that disclosure coherent, simple, and relatively low-cost.

As a regulatory response to hidden (morphable) ownership, disclosure alone may suffice. For empty voting, additional responses may also be needed. Still, we consider it premature to go beyond disclosure at this point. One reason is that empty voting can sometimes be beneficial and sometimes not, depending on the circumstances. On the problematic side, empty voting by insiders is likely to facilitate entrenchment and undermine external oversight. Empty voting with negative economic interest is also troubling, as in the Perry-Mylan example.

On the positive side, hedge funds can use empty voting to influence governance at underperforming corporations. Oversight of company managers by large shareholders is often considered to be beneficial, but is *821

79 SCALR 811
79 S. Cal. L. Rev. 811
(Cite as: 79 S. Cal. L. Rev. 811)

often ineffective. [FN20] Empty voting could let votes move from less to better informed hands and, thus, could enhance the effectiveness of shareholder oversight. [FN21] Laxey's record date capture at British Land provides a possible example of the efficiency-enhancing use of decoupling.

Of course, those who take a less benign view of investor activism and the market for corporate control would likely disagree. For instance, Martin Lipton has claimed that hedge funds, institutional investors, and "abusive" takeovers cause managers to focus too much on short-term results. [FN22] Under this view, decoupling by outside investors would exacerbate this problem. We do not address here the optimal level of shareholder oversight of corporate managers; we merely note that many observers believe that more oversight would be beneficial on balance.

A second problem with some potential regulatory responses is that the variety of hedging strategies and the substitutability of one strategy for another make restrictions on empty voting hard to draft and hard to enforce. Enhanced disclosure may provide the information needed to write substantive rules to limit empty voting, but we are not there yet.

Longer term, several families of strategies could potentially address empty voting. One family focuses directly on voting rights. The key question is: under which circumstances should the voting rights of an empty voter be limited or denied altogether? One incremental strategy would let corporations amend their charters to limit empty voting. Changes in federal proxy rules and stock exchange requirements may be needed to allow this. Midstream charter amendments to address empty voting could *822 be problematic, however. Companies might propose rules that allow empty voting strategies used by insiders, while blocking strategies used by bothersome outsiders.

The mechanics of shareholder voting--the voting architecture--also need rethinking. These mechanics do not easily accommodate large-scale share lending programs involving, even for a single institutional owner, diverse lending arrangements and multiple decisionmakers. For example, some institutional investors who lent British Land shares to Laxey were not aware they were doing so, including governance activist Hermes. [FN23] "Overvoting" of shares (in which, in effect, a share lender and a share borrower seek to vote the same shares) is another problem area.

A third family of strategies focuses on supply and demand forces relating to the new vote buying. One simple step would be a safe harbor to allow pension funds and other institutions to recall lent shares around voting record dates in order to vote their shares. Regulators could also potentially require institutional investors to recall lent shares and vote in important elections, or otherwise tighten rules governing share lending. Changes in capital adequacy, tax, and other rules relating to equity derivatives and share lending could make these activities less attractive.

This Article proceeds as follows. Part II unpacks the functional elements of the new vote buying and collects the public examples we have been able to locate. Part III describes the traditional contexts for the analysis of vote buying and reviews the theoretical and empirical literature on decoupling. Part IV discusses the current ownership disclosure rules and proposes a simpler, more comprehensive, "integrated ownership disclosure" regime. Part V offers a menu of longer-term responses that go beyond disclosure. Part VI concludes.

This Article has two shorter companions. One is directed at an academic finance audience. [FN24] The second is directed at legal practitioners *823 and regulators. [FN25] As far as we are aware, this Article and its companions are the first attempt to systematically address the new vote buying and its corporate governance implications. [FN26]

## II. THE TECHNOLOGY OF THE NEW VOTE BUYING

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

79 SCALR 811                                                                                                                                    Page 12
79 S. Cal. L. Rev. 811
(Cite as: 79 S. Cal. L. Rev. 811)

A. The Functional Elements of the New Vote Buying

In their classic 1983 article on voting in corporate law, Frank Easterbrook and Daniel Fischel stated that "[i]t is not possible to separate the voting right from the equity interest" and that "[s]omeone who wants to buy a vote must buy the stock too." [FN27] This was an oversimplification, but only a bit. For the most part, voting rights were inextricably linked to shares.

With the new vote buying, in contrast, the economic return on shares can be separated from the related voting rights. The derivatives revolution in finance, combined with the growth of the share lending market, is making the decoupling of economic ownership from voting rights ever easier and cheaper. [FN28] Moreover, with the rise of hedge funds and their adoption of shareholder activism as an investment strategy, decoupling may have found its muse.

The variety of decoupling strategies can be overwhelming. We therefore begin by specifying the core functional elements of the new vote buying. Throughout this Article, we assume a simple context: a publicly held corporation with one class of common shares (each share carrying one vote), and diversified shareholders with homogeneous preferences and expectations. We focus on shareholder wealth maximization as a corporate *824 goal and leave aside nonshareholder constituencies. [FN29] We sometimes refer to an outside investor who engages in new vote buying as a "hedge fund," and an officer, director, or controlling shareholder who does so as an "insider."

To proceed further, it helps to define a set of terms. By "formal voting rights," we mean the legal right to vote shares under company law (as supplemented by rules governing voting of shares held in street name), including the legal power to instruct someone else how to vote. Thus, in the common situation where a broker holds shares in street name for a customer, the customer has formal voting rights because it has the right under stock exchange rules to instruct the broker how to vote the customer's shares. By "voting rights" or "voting ownership" of shares, we refer to either formal or informal rights to vote shares, including the de facto power to instruct someone else how to vote. In Perry-Rubicon, Perry had voting rights because, as a practical matter, it had the power to return to its derivatives dealers at any time, unwind its equity swaps, and obtain the voting shares from the dealers. [FN30] The company at which voting takes place is the "host company."

By "economic ownership," we mean the economic returns associated with shares. This ownership can be achieved directly by holding shares, or indirectly by holding a "coupled asset" that conveys returns that relate directly to those on the shares. Economic ownership can be either positive--the same direction as the return on shares, or negative--the opposite direction from the return on shares. Someone who owns voting shares has "full ownership," consisting of voting ownership plus direct economic ownership.

The separation of voting rights from economic ownership often depends on combining economic ownership of shares with ownership of a coupled asset. Coupled assets include derivatives (such as options, futures, and equity swaps) and other financial products, as well as contractual rights (such as rights under a share loan agreement). The coupled asset could *825 either increase or decrease economic ownership. Investors may also hold "related non-host assets"--assets, often securities of another company, whose value is related to the value of the host company's shares. For example, if the host company plans to acquire a target in a share-for-share merger with a fixed exchange ratio, the target's shares are a related non-host asset.

By "net economic ownership," we mean a person's combined economic ownership of host shares and coupled assets. This net ownership can be positive, zero, or negative. We characterize as "empty voters" any persons whose voting rights substantially exceed their net economic ownership.

The level of net economic ownership may depend on share price. Suppose, for example, that a company's shares trade at $50, and an executive enters into a zero-cost collar that caps upside at $60 and downside at $45. The

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

executive will retain partial economic ownership, which will be higher for share prices within the $45 to $60 range than outside this range.

The combined return from host shares, coupled assets, and related non-host assets produces what we call an "overall economic interest" in taking actions that affect firm value, which can be positive, zero, or negative. In the Perry-Mylan example, Perry combined full ownership of Mylan shares with coupled assets (equity swaps and other hedges), which offset its economic ownership. This left it with 9.9% voting ownership and zero net economic ownership:

[9.9% full ownership of shares] - [9.9% economic ownership (through coupled assets)] =

[9.9% voting ownership + 9.9% economic ownership] - [9.9% economic ownership] =

[9.9% voting ownership]

Perry also held a related non-host asset--shares of King Pharmaceuticals. Perry was left with full voting rights, but a negative overall economic interest--it would profit if Mylan overpaid for King. [FN31]

If a person has economic ownership that disclosure rules do not cover (or can reasonably be interpreted by the person as not covering), we call this "hidden ownership." If in practice, this hidden ownership includes **\*826** informal voting rights, we term this "hidden (morphable) ownership." These "morphable voting rights" will generally not be verifiable by outsiders, and depend on market customs. Perry's hidden (morphable) ownership of Rubicon offers an example.

Whatever form new vote buying transactions take, only the company can alter the total level of voting rights or economic ownership. If one investor acquires more voting rights than economic ownership, someone else must hold more economic ownership than voting rights.

Table 1 offers some illustrative examples of the principal forms of the new vote buying.

**\*827** Table 1. Some forms of new vote buying

Examples of some forms of new vote buying. These examples are illustrative only. The Perry-Mylan, Laxey-British Land, insider hedging, and Perry-Rubicon examples are discussed above. The other examples are discussed below.

| Example | Voting Ownership | Economic Ownership | Coupled Asset | Net Economic Ownership | Related Non-host Asset | Overall Economic Interest |
|---|---|---|---|---|---|---|
| .......... | | | | | | |
| Empty Voting | | | | | | |
| ........ | | | | | | |
| Share ownership hedged with equity swap | Yes | Direct | Equity swaps, others | No | Yes (target shares) | Negative |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

79 SCALR 811                                                         Page 14
79 S. Cal. L. Rev. 811
**(Cite as: 79 S. Cal. L. Rev. 811)**

(Perry-
Mylan)

| ........ | | | | | | |
|---|---|---|---|---|---|---|
| Share ownership hedged with options (Coles Myer proxy fight) | Yes | Direct | Short call + long put | Zero | No | Zero |
| ........ Share ownership hedged with related non-host asset (MONY-AXA) | Yes | Direct | Possible | Not known | Yes (acquirer bonds) | Not known |
| ........ Record date capture (Laxey-British Land) | Yes (high) | Direct (low) | Share loan | Yes (low) | No | Low |
| ........ Record date capture followed by short-sale (Henderson Investment) | Yes | Negative | Share loan + short sale | Negative | No | Negative |
| ........ Insider hedging | Yes | Direct (lowered) | Equity derivatives | Positive (lowered) | No | Positive (lowered) |
| ........ Deutsche Boerse-London Stock Exchange (for hedge funds that were long acquirer | Yes | Direct | No | Yes | Yes (target shares) | Positive or negative, depending on stake in target |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

shares and
short target
shares)

........
    Hidden
(Morphable)
Ownership

| ........ | | | | | | |
|---|---|---|---|---|---|---|
| Voting rights exercised by acquiring shares (Perry-Rubicon) | Informal right to acquire shares from derivatives dealers | Indirect | Equity swaps | Yes | No | High |
| Voting rights exercised by directing votes of others (Marks & Spencer) | Informal right to direct derivatives dealers' matched shares | Indirect | Equity swaps | Yes | No | High |
| Eliminating voting rights: morphing between de facto and no voting rights (Livedoor/Nippon) | Depended on success of takeover bid | Direct | Share loan | Yes | No | High |

........

**\*828 B. Empty Voting Through Coupled Assets**

We examine in this section to an examination of the mechanics of empty voting achieved through coupled assets. Section C addresses hidden ownership. Section D addresses some extra complexities introduced by related non-host assets.

    1. Empty Voting Through Equity Derivatives

a. Perry-Mylan Laboratories and Similar Examples

As of late 2004, Perry Corporation owned 7 million shares of King Pharmaceuticals, a generic drug maker. Mylan Laboratories agreed to acquire King Pharmaceuticals in a stock-for-stock merger. If the merger closed, Perry would make a $28 million profit. To complete the merger, however, Mylan Labs needed shareholder approval, and Mylan's shares had dropped sharply when the deal was announced. [FN32]

Perry, therefore, bought a 9.9% stake in Mylan, which it could vote in favor of the merger, but hedged its economic ownership through equity swaps and other unspecified transactions. In an equity swap, the "long" side receives from the "short" side an economic return equivalent to the return on the underlying shares. Perry took a short equity swap position in Mylan; the derivatives dealers likely hedged their long position, perhaps by selling Mylan shares short. A second hedge fund, Citadel, was rumored to have followed the same strategy as Perry. [FN33]

Carl Icahn, a major Mylan shareholder, opposed the acquisition. He sued Mylan and Perry under federal securities law, including Section 13(d). [FN34] He claimed that Perry and other unnamed hedge funds had acquired 19% of the Mylan votes, with no economic ownership. If so, Perry *829 and kindred investors had a negative overall economic interest in Mylan. They would want Mylan to complete the deal even if Mylan's value suffered. The lawsuit became moot when Mylan abandoned the acquisition because of accounting problems at King. [FN35]

Several other anecdotes can illustrate empty voting through hedged share purchases. In 2004, French insurer AXA entered into a merger agreement to acquire MONY. To finance the bid, AXA issued convertible bonds, which were convertible into AXA shares at a discount to AXA's price only if AXA acquired MONY. Holders of AXA bonds apparently acquired MONY shares to vote for the merger, while short sellers of AXA bonds (including the Highfields Capital hedge fund) acquired MONY shares to oppose the merger. Both groups may have hedged their MONY purchases; neither group voted based on whether the merger was good for MONY. [FN36] In the 2002 proxy fight between Walter Hewlett and Hewlett-Packard ("H-P") over H-P's proposed merger with Compaq Computer, which Mr. Hewlett opposed, there were rumors that Compaq shareholders acquired hedged H-P positions in order to vote for the merger. [FN37] Empty voting might have affected the outcome of this extremely close vote. In a 2002 proxy contest at Australian firm Coles Myer, investor Solomon Lew held 3% of Coles Myer's shares. To support his proxy campaign, he acquired another 4% of the shares while hedging his economic ownership with (short call, long put) options positions. [FN38]

These strategies are troubling. Many acquisitions turn out poorly for the acquirer. [FN39] The major U.S. stock exchanges require the acquirer's shareholders to approve a large stock-for-stock merger. Yet in practice, the *830 acquirer's shareholders rarely vote down even an apparently overpriced merger. Empty voting on the acquirer's side by the target's shareholders, employed if the vote is likely to be close, could reduce whatever constraint the vote requirement now instills on the acquiring firm.

Moreover, empty voting can readily be extended to proxy fights for control. Neither side can be counted on to play fair and simply solicit shareholder votes. The temptation to buy votes quietly will be strong, especially if the other side may be doing so. Cleverness in vote buying--a characteristic not necessarily associated with the ability to run the company well--may become central to proxy fight success.

b. Liberty Media-News Corporation

More subtle decoupling can also play a role in corporate governance, as shown by Liberty Media's acquisition of a large stake in Rupert Murdoch's News Corporation ("News Corp."). In January 2004, Liberty Media filed a Schedule 13D stating that it had recently bought 125 million voting News Corp. shares. [FN40] After these purchases, Liberty Media owned 192 million (9.1%) of News Corp.'s voting shares, second only to the Murdoch

family's 30%. Liberty Media already owned 843 million nonvoting shares, for a combined holding of "approximately 17.4% of the outstanding equity." [FN41] Liberty Media also disclosed that it had entered into a forward contract to sell 152 million voting shares to Citibank in three **831 tranches beginning in 2008 for a fixed price, thus hedging most of its economic interest in the voting shares. Yet, in our terminology, Liberty Media was not an empty voter because its overall economic ownership exceeded its voting interest. [FN42] Liberty Media has since continued to modulate its economic and voting ownership of News Corp. [FN43]

c. Insider Hedging and Entrenchment

Corporate executives and controlling shareholders are often ill-diversified. These insiders often want to reduce their economic exposure to the firm's shares--hopefully without causing public concern that insiders are bailing out, triggering a tax bill, or, for controlling shareholders, giving up control. High levels of insider ownership are reasonably common. One survey of New York Stock Exchange ("NYSE")-listed companies with 2001 revenues between $250 million and $1.5 billion found that more than one in ten had chief executive officers who owned more than 10% of their shares. [FN44] In about half of those companies, insiders held more than 50% of the shares. This lack of diversification will often cause insiders to be more averse to firm-specific risk than diversified outside shareholders. [FN45]

Investment banks, for a suitable fee, have developed a number of strategies to accommodate insiders' desire to hedge their economic exposure. One popular strategy, known as a zero-cost collar, involves buying a put option (to limit downside loss) while simultaneously selling a **832 call option (thus reducing potential gain). [FN46] Such a collar preserves voting rights but sharply reduces economic ownership. A 2001 study reports that on average, senior executives in U.S. public companies used collars for 36% of their holdings, and thereby reduced their economic ownership by 25%. [FN47] In the past five years, executive hedging appears to have increased dramatically. [FN48]

In short, the impact of insider decoupling is mixed. On the one hand, insider hedging may mitigate the risk-taking conflict between managers and diversified shareholders. But the same technology could allow insiders to boost their voting control at little economic risk, thus weakening the market for corporate control as a disciplining mechanism.

To be sure, there are other ways for insiders to retain control while shedding economic ownership, including dual-class common stock and pyramidal ownership structures. We discuss these alternatives in Part III.

2. Empty Voting Through Record Date Capture

Before a shareholder meeting, a company's board of directors establishes a voting record date. [FN49] Shareholders who hold shares at the close of business on the record date have the right to vote at the meeting, which is typically a month or so after the record date. One way to hold votes without economic ownership is to hold shares but hedge through coupled assets. A second way is record date capture--borrowing shares in the share lending market for a limited period around the record date.

So far as the company is concerned, the borrower owns the shares (and the associated votes). In a typical loan, the borrower contracts with the **833 share lender to (1) return the shares to the lender at any time at the election of either side, and (2) pay to the lender an amount equal to any dividends or other distributions the borrower receives on the shares. [FN50] The loan is secured with cash or Treasury securities. Taxes aside, this loan contract (a coupled asset in our terminology) leaves the borrower holding votes without economic ownership, while the lender has economic ownership without votes.

A traditional use of share borrowing is to facilitate short-selling. [FN51] The borrower sells the borrowed shares in the market, ending up with no votes and negative economic ownership. Later, the short-seller closes out the short

position by buying shares in the market and delivering these shares back to the share lender. But omit the short sale, and share borrowing becomes an easy route to empty voting.

The shares of most publicly traded stocks in the United States can be borrowed. A recent study of which shares were available for borrowing from a single large financial institution found that stocks that could not be borrowed accounted for less than 1% of market capitalization. [FN52] Borrowed shares are usually cheap--one study finds that the typical cost is about fifteen basis points per year. [FN53] The number of borrowable shares is often **834** large-- during some recent corporate battles, up to 20% of the company's shares were held by borrowers. [FN54]

The Laxey Partners-British Land incident, discussed in Part I, offers an example of record date capture. [FN55] Laxey sought a breakup of British Land and opposed the reelection of British Land's chairman. British Land's chairman was rather displeased with what he called Laxey's "rent-a-vote" strategy. [FN56] There was irony all around. British Land saw Laxey as abusing the voting system, while Laxey perceived itself as calling weak management to account. Meanwhile, fund manager Hermes, one of the City's champions of good corporate governance, was (unknowingly) one of the lenders. Hermes did apologize.

In early 2006, a far more questionable use of record date capture appears to have occurred in Hong Kong. Henderson Land offered to buy the 25% minority interest in Henderson Investment, a publicly held affiliate. [FN57] Most minority shareholders favored the buyout, and Henderson Investment's share price increased substantially. Under Hong Kong law, however, the buyout could be blocked by a negative vote of 10% of the "free floating" shares--in this case about 2.5% of the outstanding shares. To everybody's surprise, 2.7% of the shares were voted against the buyout. Henderson Investments shares fell 17% the day after the voting outcome was announced.

What happened? It appears that one or more hedge funds borrowed Henderson Investment shares before the record date, voted against the **835** buyout, and then sold those shares short, thus profiting from its private knowledge that the buyout would be defeated. One hedge fund alone may have held enough shares to defeat the buyout.

Henderson Investment involves elements redolent of both Laxey-British Land and Perry-Mylan. As with Laxey-British Land, hedge funds used record date capture to obtain votes. As with Perry-Mylan, one or more hedge funds held a negative overall economic interest--or more precisely, would have negative economic ownership by the time the voting outcome was known. These hedge fund shareholders apparently blocked a deal that would benefit other shareholders.

Consider next a variant on record date capture. If shares cannot be borrowed, an alternative vote capture technique is available that promises nearly empty voting. An investor can buy shares just before the record date and sell them soon thereafter. The investor incurs round-trip transaction costs, but has economic ownership for only a short period of time. The investor can hedge this limited risk fully by buying put options on the shares (a coupled asset), or partially by shorting a broad share index or an industry index (a related non-host asset).

Short-term ownership plus such a hedge entails fully or substantially empty voting. The timing of this limited ownership further attenuates the link between economic ownership and voting rights. The record date is well before the date at which votes are cast. There is no reason to expect company-specific news on the record date. By the time the voting outcome is known, the investor will have shed any economic exposure, and will suffer no ill effects from voting in ways that reduce firm value; indeed, as in Henderson Investments, the investor could even gain from doing so. [FN58]

We discuss in Part V the efforts by pension funds and other share lenders in the United Kingdom to respond to record date capture.

79 SCALR 811
79 S. Cal. L. Rev. 811
(Cite as: 79 S. Cal. L. Rev. 811)

Page 19

**\*836 C. Hidden (Morphable) Ownership**

1. Morphing from de Facto to Formal Voting Rights

a. Access to Derivatives Dealers' Matched Shares

Equity derivatives can also be used to avoid disclosing economic ownership under disclosure rules that turn largely on voting rights rather than economic ownership. Perry has used equity derivatives for this purpose, as well. [FN59] In early 2001, Perry was a major holder of Rubicon Ltd., a New Zealand public company. New Zealand has rules requiring disclosure of 5% ownership positions in public companies, similar to Section 13(d). [FN60] In June 2001, Perry gave notice that it had ceased to be a 5% holder in Rubicon. A year later, to everyone's surprise, Perry disclosed that it held 16% of Rubicon, having bought 31 million shares from Deutsche Bank and UBS Warburg just in time to vote at Rubicon's 2002 annual general meeting.

What happened during the period when Perry apparently was not a substantial holder of Rubicon shares? In May 2001, Perry shed its voting rights, but not its economic interest. It sold 31 million shares to two derivatives dealers and simultaneously took the long side of equity swaps for 31 million shares. Perry's 16% economic ownership did not change, but it ceased reporting because, it claimed, the equity swaps fell outside the New Zealand disclosure rules. When Perry needed the voting rights, it terminated the swaps and bought the shares back from the dealers. A lawsuit by another major Rubicon shareholder, challenging Perry's right to vote, ensued. The trial court, in ruling against Perry, noted in passing that Perry had entered into "hundreds of equity swap transactions." [FN61] On appeal, Perry's position was upheld. [FN62]

In Mylan, Perry coupled the purchase of Mylan shares with a short equity swap position to achieve voting rights with no net economic ownership. With Rubicon, Perry held long equity swaps in Rubicon shares to achieve economic ownership without formal voting power, which would \*837 have triggered disclosure. At the same time, Perry retained de facto voting rights exercisable at Perry's discretion, because it could return to the investment banks at any time and unwind the swap. Put another way, Perry held "morphable" voting rights--which would disappear when Perry wanted to hide its stake, only to reappear when Perry wanted to vote.

How did Perry know that it had access to the shares? The dealers needed to hedge their exposure from extending the equity swaps to Perry. Perry could expect them to do so by holding the shares they had bought from Perry. Another means of hedging was unlikely, given the thin market for Rubicon shares and the need to incur transaction costs to hedge in another way. Perry could also expect the banks to happily sell the shares back to Perry when Perry chose to unwind the equity swaps. Even the New Zealand Court of Appeal, which ruled in Perry's favor, stated:

> [I]t was almost certain that the shares would be sold to Perry Corporation upon the termination of the swaps if Perry Corporation wished to buy, provided the counterparties held the shares (. . . [which was highly likely). We consider that this market reality would have been obvious to any reasonably informed market participant. Mr. Rosen, head trader at Perry Corporation, said in evidence that he had always thought it likely that the shares would be held by the counterparties as a hedge. He also said he had thought that, if he wanted to terminate the swaps and purchase the shares, it would be commercially sound for the . . . counterparties to sell him those shares. [FN63]

One reason the Court of Appeal concluded that disclosure was not required was that it believed similar disclosure would not be required in Australia, the United States, or the United Kingdom. [FN64]

There are a variety of ways for a derivatives dealer holding the short side of an equity swap to hedge its exposure, but holding matched shares is a common means. [FN65] Especially when the equity swap involves a large number of shares in a thinly traded company, alternative hedging strategies may be limited. When the derivatives

dealer hedges an equity swap with matched shares, a market practice may well be emerging in which both sides expect that the dealer, if asked, will either unwind the swap and sell the shares to its client, as Perry's dealers did, or vote the matched shares as *838 its client wants. The commercial practice between derivatives dealers and some clients may extend to the manner in which the dealers hedge. [FN66] Holding matched shares to hedge an equity swap may be a preferred strategy when the client is concerned with governance, precisely because doing so lends itself to vote morphing.

As evidence of these customs, the Code Committee of the United Kingdom's Panel on Takeovers and Mergers recently stated that it is "frequently the expectation" of a long equity swap holder that the derivatives dealer would "ensure" that an equivalent number of shares are available to be voted by its customer and/or sold to the customer on closing out the contract. [FN67] If the dealer did not hold matching shares and hedged in another way, the holder would "normally expect" the dealer to acquire the shares, even if this resulted in cost to the dealer. [FN68]

As examples of market expectations, the committee pointed to the behavior of hedge funds and derivatives dealers in 2004 in connection with BAe Systems' bid for Alvis and Philip Green's bid for Marks & Spencer. [FN69] BAe Systems obtained commitments to support its offer from a number of hedge funds that had entered into equity swaps [FN70] as to Alvis shares. Some funds agreed to request physical settlement of the swaps and then support the BAe offer. For other hedge funds, the derivatives dealer (with the fund's consent) committed to accept the offer as to the dealers' matched shares. [FN71] Similarly, Philip Green announced that its bid for Marks & *839 Spencer was supported by investment banks who held 8.3% of Marks & Spencer's shares as matched shares to hedge equity swaps. This support was presumably at the direction of the hedge funds who held the long sides of these swaps.

Market expectation that a dealer will unwind a swap is not a guarantee, as illustrated by a 2006 buyout offer by Sears Holdings for the minority shares in its Sears Canada subsidiary. [FN72] A hedge fund had previously acquired equity swaps in Sears Canada from Scotiabank. Scotiabank later became the dealer-manager for Sears Holdings' buyout offer. The offer required approval by a majority of the Sears Canada minority shareholders. Sears Canada's independent directors opposed the bid; so did many Sears Canada shareholders. The hedge fund asked Scotiabank to unwind the swap so it could vote against the offer. Scotiabank not only refused, but also committed to vote its Sears Canada shares for the offer. Scotiabank thus became an empty voter; perhaps with negative economic interest because it was an agent for Sears Holdings. The hedge fund complained about Scotiabank's failure to observe swap market conventions and said it was "looking forward to regulatory and legal scrutiny of this transaction." [FN73]

### b. Avoiding Mandatory Bid Rules and Other Uses

Hidden (morphable) ownership can be used for other purposes, besides avoiding disclosure. One use involves avoiding mandatory bid rules. In many countries, a shareholder who exceeds a threshold percentage of share ownership must offer to buy all remaining shares at a formula price. Holding swaps instead of shares can let a shareholder avoid these rules. In 2005, for example, the Agnelli family, which controlled Fiat, entered into equity swaps for Fiat shares with Merrill Lynch without publicly disclosing this fact. [FN74] The family wanted to retain control of Fiat after a forthcoming debt-for-equity swap, which would dilute the Agnellis' *840 stake. If they had bought Fiat shares directly, they would have crossed 30% ownership, thus triggering Italy's mandatory bid rule. The Agnellis also would have had to disclose their purchases, which could have affected Fiat's share price. After Fiat completed its debt-equity swap, the Agnellis unwound their equity swaps and obtained the swap dealer's matched Fiat shares. The Italian securities commission ruled that the Agnellis did not violate the mandatory bid rule; it is still investigating the propriety of nondisclosure.

The goal of acquiring shares more cheaply also emerged in Australia during the 2005 takeover bid by Centennial for Austral Coal. [FN75] Rival Glencore acquired a "blocking position" (sufficient to prevent Centennial from reaching 90% ownership and squeezing out remaining shareholders) through a combination of shares and equity swaps (which the derivatives dealers hedged with matched shares). Glencore claimed its swap position did not need to be disclosed under Australia's large shareholder disclosure rules, which are triggered by 5% share

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

79 SCALR 811                                                                    Page 21
79 S. Cal. L. Rev. 811
(Cite as: 79 S. Cal. L. Rev. 811)

ownership. It disclosed its combined position only after crossing 10%. The Australian Takeovers Panel held that Glencore should have disclosed its combined position when its economic ownership crossed 5%. The Panel's decision, however, was reversed on appeal by the Australian courts. [FN76]

The goal of avoiding a mandatory bid rule also underlies the earliest publicly known example of decoupling we are aware of. In 1997, Brierley Investments used equity swaps to increase its stake in John Fairfax Holdings from 19.98% to 25%. [FN77] Direct ownership of 20% or more would have triggered Australia's mandatory bid rule. Brierley disclosed its swap position; it merely sought (successfully) to evade the mandatory bid rules.

### 2. Toeholds and the Social Virtues of Stealth

Hidden (morphable) ownership may not always be socially undesirable. One potential benefit involves an unresolved puzzle in finance: why do more takeover bidders not acquire toeholds, even though **\*841** doing so would appear to be highly profitable? [FN78] The most plausible explanations are concerns about prompting a price run-up, which could increase the overall cost of the acquisition; and that the toehold may increase the likelihood of bidder resistance. [FN79] An equity swap offers a quiet toehold that need not be publicly disclosed. [FN80] Nondisclosure might reduce market impact cost. Even if it does not, reducing bidder resistance could enhance the market for corporate control. Proponents of an active corporate control market might therefore consider nondisclosure of toeholds, up to some level, to be socially desirable.

An Australian example illustrates. In 2004, BHP Billiton, before announcing a bid for WMC, acquired a 4.3% toehold through equity swaps. [FN81] BHP disclosed its toehold before crossing the 5% threshold for disclosing a direct share position. Its reasons for acquiring swaps rather than shares are not known. Perhaps it wanted to have the option of keeping its stake hidden or acquiring more than 5% before disclosing its position.

### 3. Shedding Voting Rights

The foregoing uses of vote morphing involve acquiring shares or informal voting rights. A twist on the vote morphing concept involves shedding voting rights under specified conditions--morphing from having formal or informal voting rights to not having them. Japan's first-ever hostile takeover bid, the 2005 bid by Livedoor for Nippon Broadcasting, illustrates. In February 2005, Livedoor announced that it had acquired a 35% stake in Nippon. [FN82] Livedoor wanted to acquire Nippon in order to **\*842** influence Fuji TV, in which Nippon had a 22.5% stake. Nippon responded by entering into multiyear agreements to lend its Fuji TV shares to Softbank Investment and Daiwa Securities. Nippon retained economic ownership. Unlike a customary share loan, however, it had no contractual right to rescind the loans.

If Nippon won the takeover battle, there was at least a possibility, and perhaps an informal understanding, that the borrowers would unwind the loan agreements and return the Fuji TV shares. If Livedoor won, it faced a substantial risk that Softbank and Daiwa would refuse to unwind the loans, thus denying Livedoor what it really wanted--voting rights for the Fuji TV shares. The defense was successful. Livedoor and Fuji TV agreed to a partnership, and Livedoor ended its effort to acquire Nippon. Softbank promptly returned the Fuji shares to Nippon. [FN83]

Here, morphable voting rights were not used to let the holder obtain de facto voting rights and yet avoid disclosing those rights. Instead, Nippon apparently used vote morphing to deny voting rights to Livedoor while retaining access to the votes if the takeover threat disappeared. A substantive purpose was involved, not a disclosure one.

### D. Related Non-host Assets

We consider here some complexities introduced by the possibility that related non-host assets may contribute importantly to a shareholder's overall economic interest.

1. Mergers

One recurring situation in which related non-host assets are important involves a stock-for-stock merger. In the Perry-Mylan situation, Perry had voting ownership, but zero economic ownership. Its related non-host asset (shares in the target, King) made its overall economic interest negative. But there can also be situations in which related non-host assets can increase a shareholder's overall economic interest. Actions by hedge funds involving **\*843** Deutsche Boerse's proposed acquisition of the London Stock Exchange ("LSE") illustrate. [FN84]

In December 2004, Deutsche Boerse proposed buying the LSE. In January 2005, two hedge funds, Children's Investment Fund and Atticus Capital, together holding 8% of Deutsche Boerse's shares, publicly opposed the bid as against shareholder interests. (We cannot resist noting that the head of Children's Investment Fund is a Perry Corp. alumnus. [FN85]) The acquisition was opposed by other major shareholders and was eventually abandoned. What connects this story to vote buying is that certain hedge funds--perhaps the same ones--shorted a significant number of LSE shares soon after the opposition was announced. Assuming that some hedge funds were both long Deutsche Boerse and short LSE, they were betting that the acquisition would fail, in which case Deutsche Boerse shares would rise and LSE shares would fall.

These hedge funds' overall economic interest in defeating the merger was larger than if they held only Deutsche Boerse shares. This would tend to offset the usual collective action problem that any one Deutsche Boerse shareholder would bear much of the cost of opposing the merger, but would benefit only in proportion to its fractional Deutsche Boerse stake. A short-sale of LSE shares might provide sufficient additional incentives for large shareholders to undertake the cost of this potentially beneficial activity.

Variants on the same coupled-asset position, however, could have the opposite effect. If an investor's short position in LSE were large relative to its long position in Deutsche Boerse, it would be more interested in LSE shares dropping in price than in Deutsche Boerse shares rising. The investor would have an incentive to oppose an acquisition that would benefit Deutsche Boerse, or indeed both companies combined. Conversely, merger arbitrageurs who follow the common strategy of going long target, short acquirer would have incentives to support the merger regardless of its **\*844** merits. Thus, the new vote buying could both empower Children's Investment Fund and Atticus to pressure Deutsche Boerse to make a "good" decision, and empower others, such as classic merger arbitrageurs, to support misguided mergers.

We have already discussed above a number of other merger situations where the voting outcome may have been affected by new vote buying. It is not much of a stretch to imagine a subterranean battle for votes between hedge funds and other investors with differing overall economic interests. In such a battle, it might be little more than happenstance if the voting outcome corresponded to the acquisition's value to the acquirer, or to both companies together.

2. Indirect Hedges

Other plausible related non-host assets can exist, in addition to positions in the other party to a takeover bid. The essential characteristic of a related non-host asset is that its value correlates with the value of host shares. Thus, an executive at Ford who is concerned about the future of American car companies, but is reluctant to buy put options on Ford stock, [FN86] and might trigger short-swing profit recapture under Section 16. The executive could instead buy puts on shares of General Motors or a Ford supplier. The correlation between the returns on Ford shares and those on General Motors or a Ford supplier may be high enough for the executive's purposes. [FN87]

E. Innovations Underlying the New Vote Buying

Supply and demand considerations suggest that the new vote buying is likely to continue to grow. Three factors stand out. First, continued improvements in financial technology are likely to drive down transaction costs. Equity swaps and other OTC equity derivatives on individual securities were not invented until the late 1980s. [FN88] By the end of 2004, the worldwide market for OTC equity derivatives was over $4 trillion, up 50% *845 over the previous year. [FN89] This growth presumably both reflects and spurs lower transaction costs and increased quality and variety of products. [FN90]

Second, share lending has grown rapidly over the past decade. [FN91] In the United Kingdom, share lending in late 2004 was approximately £80 billion, compared with just £3.5 billion in 1996. [FN92] In the United States, the securities lending market, including equity and debt, rose to $1.3 trillion in mid-2004 from about $940 billion a year earlier. [FN93] The driving forces have been growth in the derivatives market and the rise of hedge funds, whose trading strategies often include short-selling.

Large institutional investors, such as pension funds, public retirement funds, and mutual funds lend their shares in a variety of ways. Some lenders use specialized third-party lending agents. Often, the custodian banks which clear and hold their positions act as lending agents. A few large lenders directly contract with borrowers. For instance, the California Public Employees Retirement System lends shares through an auction system. Broker-dealers also lend shares that they hold on behalf of margin customers (keeping the revenue) and encourage retail investors to sign margin accounts to facilitate this profitable business. [FN94]

On the borrowing side, a few large borrowers borrow on their own, but most borrow indirectly through broker-dealers, partly because the brokerage firm is more creditworthy, and partly to hide the borrower's identity. Broker-dealers also borrow for their own accounts to facilitate market-making and hedging the risks on derivatives that they enter into with customers. [FN95]

Third, hedge funds have grown rapidly in the last decade and are now estimated to now have over $1 trillion in investor assets; their impact is *846 compounded by many funds' use of leverage. [FN96] Hedge fund managers typically have wide discretion as to trading strategies. Unlike mutual funds and pension funds, hedge funds face few regulatory limits. Moreover, many hedge fund managers are comfortable using equity derivatives and other sophisticated financial tools. Recently, many have adopted corporate governance activism as an investment strategy. [FN97] Hedge funds usually have fewer conflicts of interest than other institutional investors, and less concern with adverse publicity, so they can be more aggressive in pursuing these opportunities.

F. The Extent of New Vote Buying

Since much new vote buying is undisclosed, its extent is necessarily unknown. But there is value in collecting the known instances in one place. Table 2 lists, in rough reverse chronological order, the publicly disclosed or rumored examples of new vote buying that we were able to find. The list is surely partial. Still, the number of examples and their diverse nature suggest the scale of the new vote buying, while the dates suggest its recent advent. Other sources also suggest that new vote buying is reasonably common. These include:

• regulatory changes in Hong Kong (2003) and the United Kingdom (2005) to require disclosure of economic ownership, and self-regulatory efforts in the United Kingdom to limit record date capture; [FN98]
• the existing market customs on unwinding of swaps and voting of matched shares by derivatives dealers; [FN99]

• statements by lawyers at major firms as to whether hidden ownership positions must be disclosed. These include partners at:

*847 • Freehills in Australia; [FN100]

• Allen & Overy in the United Kingdom (the primary outside counsel for the International Swaps and Derivatives Association), stating that disclosure is not required for cash-settled U.S. Equity derivatives; [FN101]

• Cleary Gottlieb in the United States (stating that "a long position under an equity swap would generally not be treated as beneficial ownership" under SEC rules); [FN102]

• Lawsuits in the United States (involving Perry-Mylan), Australia (involving Glencore-Austral Coal), and New Zealand (involving Perry-Rubicon). [FN103]

Quantitative evidence related to decoupling includes the evidence discussed above that executive hedging (with vote buying effects, even if vote buying is not the principal goal) is common, [FN104] and the evidence, discussed below, on record date capture. [FN105]

*848 Table 2. Decoupling examples

This table lists, in rough reverse chronological order, the known or publicly rumored instances of new vote buying that we were able to collect. The list is surely partial; if readers know of instances not on this list, we would be grateful to learn of them.

| Date | Host Company | Country | Vote Buyer | Empty Voting | Hidden (Morphable) Ownership | Coupled or Related Non-host Asset | Description |
|------|------|------|------|------|------|------|------|
| 2006 | Sears Canada | Canada | Hedge fund (Bill Ackman) and Scotiabank | X (by Scotiabank) | X (by Ackman, unsuccessful) | Equity swap | See Part II. C |
| 2006 | Henderson Investment | Hong Kong | Hedge fund(s) | X | X (short position) | Share borrowing + short sale | See Part II. B |
| 2005 | Fiat | Italy | Agnel | | X | Equity | See Part II. C |

|  | li family |  |  |  | swaps |  |  |
|---|---|---|---|---|---|---|---|
| 2005 | Austral Coal | Australia | Glencore |  | #X | Equity swaps | See Part II. C |
| 2005 | Fuji TV | Japan | Nippon Broadcasting |  | X | Share lending | See Part II. C |
| 2005 | Deutsche Boerse | Germany | Hedge funds | X |  | Short sale of target shares | See Part II. D |
| 2005 | Portman Mining | Australia | Seneca (hedge fund) |  | X | Equity swaps | Seneca held 9% economic interest in Portman through equity swaps provided by CSFB. FN [FN106] |
| 2004-2005 | WMC Resources | Australia | BHP Billiton |  | X | Equity swaps | See Part II. C |
| 2004-2005 | Mylan Laboratories | U. S. | Perry Corp. (hedge fund) | X |  | Equity swap | See Part II.B |
|  |  |  | Citadel | X |  | Unkn | See Part II. B |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | | | | | | |
|---|---|---|---|---|---|---|
| | | l (hedge fund) (possible) | | | own | |
| 2004 | DFS | U. K. | | X | | |
| | | Polyg on (hedge fund) | | | Equity swap | Polyg on sought to influence DFS despite owning only one share of stock (it had 3% economic ownership through equity swaps).[FN] [FN107] |
| 2004 | Alvis | U. K. | | X | | |
| | | Hedge funds (helping BAe Systems to acquire Alvis) | | | Equity swaps | See Part II.C |
| 2004 | Marks & Spencer | U. K. | | X | | |
| | | Hedge funds (helping Philip Green to acquire Marks & Spencer) | | | Equity swaps | See Part II.C |
| 2004 | Canar y Wharf | U. K. | | X | | |
| | | "Song bird" consortiu | | | Equity swaps | Deriv atives dealer |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| Year | Company | Country | Party | | Hidden/Morphable | Instrument | Notes |
|---|---|---|---|---|---|---|---|
| | | | m (seeking to acquire Canary Wharf) | | | | UBS held 7.7% of Canary as matched shares to support equity swaps.[FN][FN108] |
| 2004 | MONY Group | U.S. | Holders and short sellers of AXA convertible bonds | X | | Acquirer's (AXA) convertible bonds | See Part II.B |
| 2004 | News Corp. | Australia & U.S. | Liberty Media | X | Hidden: yes Morphable: maybe | Forward contract | See Part II.B |
| 2002 | P&O Princess | U.K. | Investors (favor Carnival bid for P&O Princess) | X | Maybe | Share borrowing | P&O shareholders who favored Carnival's bid reportedly borrowed shares in order to vote for acceptance.[FN][FN109] |
| 2002 | Hewlett-Packard | U.S. | Holders of Compaq shares (target of H-P | X | | Target shares | See Part II.B |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
|  |  |  | merger bid) |  |  |  |  |
| 2002 | Coles Myer | Australia | Solomon Lew (proxy contestant) | X | No | Options | See Part II. B |
| 2002 | British Land | U. K. | Laxey Partners | X |  | Share borrowing | See Part II.B |
| 2001 | Rubicon | New Zealand | Perry Corp. | X |  | Equity swaps | See Part II.C |
| 1997 | John Fairfax Holdings | Australia | Brierley Investments |  |  | Equity swaps | See Part II. C |

## *850 III. LEGAL AND FINANCE THEORY AND EVIDENCE

### A. Classic Theory of Voting Rights: Introduction

Why do common shareholders (and only common shareholders) have voting rights? The conventional contractarian answer flows from the shareholders' status as residual claimants to the firm's value. This gives them incentives to monitor management. The effectiveness of voting rights is limited by collective action problems, but the market for corporate control offers a response-- shareholders can sell their shares and associated voting rights to an acquirer. [FN110] Making voting rights proportional to one's share in the firm's residual value reduces agency costs by matching economic incentives with voting power. [FN111] Corporate law permits corporations to deviate from one-share-one-vote based on the usual claim that informed parties can choose optimal arrangements on their own. [FN112] Most U.S. public companies, however, retain a one-share-one-vote structure, likely reflecting the optimality of this structure for most firms.

The Delaware courts, meanwhile, celebrate shareholder voting, viewing it as the "ideological underpinning upon which the legitimacy of directorial power rests." [FN113] The usual lax business judgment rule does not apply to company actions that undermine shareholder voting rights. Instead, phrases like "compelling justification" course through the opinions. [FN114] The judges see themselves as preventing the "wrongful subversion of corporate democracy by manipulation of the corporate machinery." [FN115] The Delaware courts also accord great deference

to shareholder votes. For example, a central theme of Delaware takeover law is to distrust market decisions by shareholders (selling shares in tender offers) and favor voting decisions. [FN116]

*851 The new vote buying thus strikes directly at both the economic and legal logic behind shareholder voting rights. In Part III.B, we take a closer look at the finance-theoretic arguments and empirical evidence relating to the link between economic ownership and voting rights. In Part III.C, we address the relevance of other circumstances in which voting and economic ownership can diverge. Part III.D considers past legal responses to the separation of votes from economic ownership. Part III.E discusses some potentially testable empirical implications of the new vote buying.

B. Literature Review: Theory and Implications for New Vote Buying

1. Theory

a. One-share-one-vote

Several strands of theoretical literature develop the basic contractarian argument favoring a one-share-one-vote capital structure. One strand derives from the hostile takeovers of the 1980s and focuses on the role of a one-share-one-vote regime in enhancing the functioning of the market for corporate control [FN117] and the power of large shareholders to influence management. [FN118]

A more recent strand derives from the cross-country law-and-finance literature, in which a major concern is the ability of controlling shareholders to "tunnel" away more than their share of firm value. Here, higher economic ownership by insiders predicts lower tunneling. [FN119] The intuition is simple. Assume tunneling is costly because it reduces firm value. The higher the insiders' economic ownership, the greater the share of this cost they bear, and, hence, the less tunneling they engage in. A large gap between insiders' voting rights and economic ownership can also distort the firm's investment decisions.

*852 Although disparity between economic and voting ownership encourages tunneling, it could serve other goals. Assume, for example, that insiders are unwilling to relinquish control. Greater ability to hedge economic ownership could make insiders less averse to firm-specific risk, and, hence, more likely to approve risky positive net present value investment projects and less likely to engage in value-reducing hedging within the firm. [FN120] Vote buying by outside shareholders can also reduce free rider obstacles that limit the effectiveness of shareholder voting as a constraint on managers, as some of the examples in Part II suggest. Thus, the new vote buying is not necessarily efficiency-reducing.

A final strand of analysis focuses not on the impact of decoupling at the firm level, but instead on legal choices made by entire nations. For example, if political influence depends on what one controls, a legal regime that permits disparity between voting power and economic ownership can let a single family control a larger industrial empire. This can foster an economically and politically powerful elite that in an extreme case can "capture the state." [FN121] Conversely, a disparity between insider control and economic ownership may arise in response to state power, as private actors seek countervailing influence. [FN122] In this approach, the disparity between insider economic ownership and control, and other aspects of investor protection are endogenous to other country-level institutions. [FN123]

b. The Value of Votes: Individual Versus Collective Value

A core concern with decoupling derives from the related observations that for outside investors, votes have limited individual value, but can have substantial collective value; and that in most circumstances, the value of a vote is a small fraction of the value of a share. Imagine that there were an explicit market for votes, decoupled from

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

shares, and that someone was interested in acquiring a majority of the votes. The vote buyer could make a two-tier offer: price X until it gets a majority, zero thereafter. Much as in a two-tier tender offer for shares, shareholders would face pressure to sell votes at any price greater than the back end price (here, zero), lest they end **\*853** up with the back-end price. Moreover, at present, the vote buyer can conduct a rolling two-tier tender offer without rules. Shareholders will thus face time pressure to sell fast, lest others sell first.

The limited value of individual votes can be formalized using "oceanic" Shapley values, which measure the likelihood that a voter will be pivotal. The Shapley value of a small "oceanic" shareholder depends on the holdings of significant shareholders. [FN124] If a firm has n outstanding shares, one significant shareholder holding a fraction x of the shares and many oceanic shareholders, the significant shareholder's Shapley value is $\{x / (1- x)\}$ if the significant shareholder holds less than half the shares (x < 0.5); and 1 if the significant shareholder holds a majority (x 0.5). The oceanic shareholders have combined Shapley values of $\{1-$ (the significant shareholder's value)$\}$, and thus Shapley value per share of $\{(1- 2x) / n(1- x)^2$ for x < 0.5; and 0 for x = 0.5$\}$. This per-share Shapley value, and thus the value of their votes, drops sharply as the significant shareholder approaches absolute control (x = 0.5) and disappears once control is achieved.

Moreover, in tender offers for shares, the pool of bidders is constrained because the front-end offer must exceed the current market price to attract takers. Thus, unless large-scale looting is feasible, the tender offer will be profitable only if the new controller can run the firm at least as well as the old controllers. A vote buyer does not face similar constraints. If the price of votes approaches zero, then even small private benefits of control can justify the effort to acquire control.

c. Equilibrium Versus Nonequilibrium Models

The economics literature includes some theoretical models in which explicit competition between incumbents and raiders for votes, decoupled from shares, operates similarly to a market for coupled shares and votes. [FN125] These models suggest that if insiders can be prevented from using a market for votes to lock up control before a raider appears, a control contest for **\*854** votes could have (minor) efficiency advantages compared to a contest for shares.

The models, however, are "extremely stylized" [FN126] and nonequilibrium in nature, in ways that give them limited relevance to the contexts in which new vote buying is likely to arise. Most centrally, the models assume that vote buying occurs only during a limited period. The incumbents and the raider compete through fully disclosed offers for votes, which expire at the same time. The models thus presume a competition for votes that is tightly constrained in time and transparent to all participants.

A more realistic model, still to be developed, is likely to lead to different conclusions. What is needed is an equilibrium model in which (1) the insiders can quietly acquire votes at any time, before a raider emerges; (2) once acquired, votes can be held indefinitely; and (3) if insiders do not keep control, a raider can quietly acquire votes at any time. While such a model is beyond the scope of this project, we suspect that in equilibrium, insiders will keep control, if only to ward off raids by outsiders seeking to extract private benefits.

If insiders did not keep control in such a world, raiders would have an incentive to make "Saturday night special" offers to buy votes--timed to put maximum pressure on shareholders to sell, and to not give the insiders time to respond. [FN127] Those offers would likely produce a regulatory response, much as short-fuse tender offers for shares helped give rise to our current tender offer rules. [FN128]

2. Empirical Evidence

a. Divergence Between Insiders' Voting and Economic Ownership

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The theoretical work which predicts adverse value effects when insiders can separate economic ownership and voting rights is supported by a reasonably solid body of empirical evidence, both in the United States and internationally. There are several strands of relevant research. One evaluates the stock price effects of dual-class recapitalizations in the United *855 States, a takeover defense popular during the 1980s. [FN129] The announcement of a dual-class recapitalization significantly reduces share price. [FN130]

A second body of empirical work corresponds to the concern with tunneling by controlling shareholders. In many countries, founding families often maintain control by holding higher voting than economic ownership, through high voting shares or circular or pyramidal group holding structures. [FN131] In the United States, Paul Gompers, Joy Ishii, and Andrew Metrick offer evidence that a disparity or "wedge" between economic and voting ownership created through dual-class common shares adversely affects share prices. Tobin's "q" (a common measure of firm value) decreases with insiders' voting rights (holding economic ownership constant) up to about 45%, a range which covers most of the firms in their sample. [FN132] A wedge between voting rights and economic ownership predicts lower share prices in other countries, as well. [FN133]

These studies are based on the trading prices of noncontrolling shares. Thus, it is possible that the lower value of minority shares is offset by the higher value of controlling shares, which do not trade, so their value cannot be observed. There is some evidence, however, that a larger wedge predicts lower firm profitability. [FN134]

b. The Value of Voting Rights

Empirical work has also been done seeking to directly assess the value of voting rights. This literature offers a sense for how much of a firm's value is at stake in new vote buying. There are two basic ways to measure *856 the value of votes: The first measures the value of control as a fraction of firm value. The second measures the premium value of high-vote relative to low-vote shares.

Thus, Alexander Dyck and Luigi Zingales compare the price paid to acquire a control block with the contemporaneous value of noncontrolling shares. [FN135] Tatiana Nenova examines differences between the trading prices of separate classes of voting stock. [FN136] Both studies find wide variation across countries in the value of control, with this value often equal to a substantial fraction of firm value. [FN137] In the United States, the mean value of control is relatively low, around 2%-4% of firm value. [FN138] This value can be much larger, however, for a particular company that is undergoing a change in control. [FN139] Turning to the premium accorded to high-vote shares relative to low-vote shares, single-country estimates range from 5%-10% in the United States [FN140] to 82% in Italy. [FN141]

c. Market for Corporate Control

Insider entrenchment through new vote buying could have an effect similar to strong takeover defenses. Gompers, Ishii, and Metrick report evidence that U.S. firms with strong takeover defenses have lower Tobin's q than firms with weak defenses. [FN142] Martijn Cremers and Vinay Nair report evidence of abnormal returns to a portfolio of firms with weak takeover *857 defenses, but only in the presence of outside blockholders. [FN143] At the same time, a bidder's ability to use hidden ownership to amass a toehold stake can facilitate takeover bids.

d. Record Date Capture

One recent working paper provides evidence on record date capture. Susan Christoffersen, Christopher Geczy, David Musto, and Adam Reed, using proprietary data on loans of U.S. shares by a custodian bank in 1999 and by a broker-dealer from 1996 to 2001, report that loans spike on the record date, increasing on average from 0.21% to 0.26% of outstanding shares. [FN144] The spike in borrowing on the record date strongly supports the existence of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

some record date capture. The spike is higher for firms with poorer performance, for votes that turn out to be close, and for votes that produce higher support for shareholder proposals or opposition to management proposals.

Christoffersen and her colleagues offer evidence that borrowing shares around a record date costs no more than borrowing at another time--around fifteen basis points per year. To them, this suggests that an information aggregation process is at work, in which ill-informed lenders consciously yield their shares to better-informed borrowers, who can vote wisely, to everyone's benefit.

Their data offers clear evidence that record date capture occurs, but we are not persuaded by this "active lending" interpretation of their findings. First, we consider it unlikely that lenders often consciously yield shares for voting purposes. As we discuss in Part V.C, most lenders seek to earn a profit from lending in general, pay little attention to record dates or which companies' shares they are lending, and often outsource the process to a lending agent. [FN145] To us, it seems more likely that share borrowers are the active agents. Second, the benefits from information aggregation will arise only if borrowers have a positive economic interest. This is sometimes not the case, as situations such as Perry-Mylan and Henderson Investments illustrate. They also lack data on who is borrowing. Third, they assume that outside investors are borrowing, but their results are consistent with insiders sometimes anticipating a close vote and borrowing to ensure victory.

**\*858 C. Analogies to Other Forms of Decoupling**

1. Dual-class Common Stock, Pyramids, and Circular Control

Much of the potential use of the new vote buying will likely come from insiders and from outsiders seeking control (who will become insiders if they succeed). For insiders, new vote buying is only one of a number of techniques for decoupling economic and voting ownership. Other strategies include dual-class common stock, pyramidal ownership structures (with insiders controlling the top company in the pyramid), and circular ownership structures (with insiders controlling a pivotal company). For insiders then, new vote buying is a new tool, but not a fundamentally new opportunity. It is worth considering, then, the differences between new vote buying and these older decoupling techniques.

One central difference is that, with dual-class capital structures, pyramids, and circular control, outside investors know what they are getting. Thus, insiders pay a market penalty when, say, companies issue lower-voting shares. This penalty is the most likely reason why a high percentage of U.S. initial public offerings involve companies with a one-share-one-vote capital structure.

Both the theoretical work discussed above and the available evidence on the effects of insider decoupling involve a disclosed wedge between economic ownership and voting rights. An undisclosed wedge is more problematic than a disclosed wedge. Consider a firm with a controlling shareholder. If the wedge is disclosed and stable over time, investors will presumably pay a lower price for shares of a firm with a large wedge, which reflects the controller's distorted incentives.

Suppose instead that decoupling is hidden and easy to change over time. Investors will not know which firms' insiders have a large wedge between economic and voting ownership. Investors also will not know how this wedge fluctuates over time. Insiders may be able to cede control to the market for a time, but cheaply reacquire it later, perhaps when a threat to day-to-day control emerges. Some insiders may be able to apparently cede control, thus obtaining the market price benefits of doing so, while actually retaining control. In general, one would expect investors to react, as in any \*859 adverse selection situation, by discounting the prices they pay for shares of all companies. This will increase the cost of public equity capital. [FN146]

Hidden, low-cost decoupling could also contribute to a "lemons" equilibrium in which dispersed ownership is

unstable even if it maximizes firm value, so that most firms retain concentrated ownership. Bebchuk develops a model in which, in a market with high private benefits of control, dispersed ownership would be first-best if it could be sustained, but is unstable because a new controller could pay a market price for shares and then profit by self-dealing. [FN147] Empirical studies provide evidence of the collapse of initially dispersed ownership after mass privatization in the Czech Republic and Bulgaria. [FN148]

2. Dual-class Recapitalizations

Dual-class recapitalizations--efforts by company managers to create a dual-class structure after the company has sold full-voting shares to investors-- offer a possibly better analogy to the new vote buying than dual-class stock or pyramid structure. Dual-class recapitalizations became popular in the United States during the hostile takeover wave of the 1980s, after the NYSE relaxed its one-share-one-vote rule. In a typical recapitalization, the company would propose a dual-class voting structure in which insiders would acquire high-vote shares. The low-vote shares would have slightly superior economic rights, such as a slightly higher dividend, perhaps five cents per share per year. [FN149]

These recapitalizations let insiders acquire control without paying a market price for doing so. Outside shareholders voted to approve the recapitalizations because their votes were individually worth less than the higher dividend. [FN150] Consistent with insiders acquiring control for a less-than-market price, the announcement of a dual-class recapitalization *860 significantly reduced share price. [FN151] Most forms of midstream recapitalizations were then banned through joint action by the SEC and the stock exchanges, precisely because they let insiders amass control without paying a market price for doing so. [FN152] In some respects, new vote buying is worse than a dual-class recapitalization. A recapitalization at least required disclosure and a shareholder vote; the new vote buying requires neither.

3. Voting by Record Owners

Another analogy involves the common practice in which investors hold shares in "street name" rather than in their own name. The ultimate "record owner" is a securities depository (Depository Trust Company ("DTC") is the principal depository), which holds shares for the accounts of its members--banks and broker-dealers--who, in turn, hold shares for their clients. [FN153] Sometimes larger custodian banks or brokers hold for smaller ones. As a matter of formal corporate law, DTC, through its nominee, Cede & Co., is a majority shareholder of almost every publicly traded U.S. company, yet it has no economic ownership.

If DTC had voting discretion, this would be empty voting with a vengeance. However, a web of market practices and SEC and stock exchange rules ensure that voting rights, having been separated from economic ownership, are largely reunited in practice. DTC and other depositories pass voting authority to the banks and broker-dealers for which they hold shares. The banks and broker-dealers, in turn, must ask their clients for voting instructions and follow those instructions if provided. If a client does not return voting instructions, NYSE Rule 452 allows the bank or broker-dealer to vote on routine matters, but not on major matters, such as a contested election of directors or an acquisition. The NYSE publishes weekly a list of upcoming elections and agenda items on which broker-dealers can vote only if instructed by clients. [FN154] This is not *861 too dissimilar from the current market practice underlying hidden (morphable) ownership. As we discussed in Part II.C, derivatives dealers often hold matched shares to hedge long equity swap positions they have provided to their clients. At least in the United Kingdom, the dealers will usually agree to convey voting rights back to the clients on demand, either by unwinding the swaps and selling the matched shares to their clients, or by voting the matched shares as directed by their clients.

D. Classical Vote Buying Doctrine and Decoupling

Corporate law polices the connection between economic interest and voting power through the classic common

law prohibition on "vote buying," defined as the sale of a shareholder's voting rights, shorn of economic interest, to a third party. [FN155] The original 1932 Restatement of Contracts made such a sale illegal. [FN156] New York's corporate law prohibits shareholders from selling or changing their votes for money "or anything of value." [FN157] The central concern was that vote buying would lead to self-dealing by those who thereby gain control.

The current Delaware attitude toward vote buying is more tolerant. The leading 1982 case of Schreiber v. Carney centered on a loan by Texas International Airlines to a controlling shareholder to obtain that shareholder's support for a restructuring. [FN158] The court found that this was vote buying, but explained that "each arrangement must be examined in light of its object or purpose." [FN159] Vote buying was permitted for a proper purpose if it satisfied a test for intrinsic fairness. [FN160] In Schreiber, the court found a proper purpose--the restructuring would further the interest of all Texas International stockholders. [FN161] And the terms were apparently fair, for which the best evidence was approval by a vote of other shareholders.

In general, the vote buying cases are unlikely to reach new vote buying without a major change in current doctrine. Schreiber defines vote buying as a voting agreement supported by "consideration personal to the *862 stockholder, whereby the stockholder divorces his discretionary voting power and votes as directed." [FN162] The focus is on a vote seller who transfers the voting right to a vote buyer.

The new vote buying falls outside this definition. For instance, a new vote buyer can acquire voting rights through a two-step process that involves neither a vote sale nor a transfer of voting rights: first, purchase shares; and second, shed the economic rights associated with those shares, leaving the share purchaser holding only the voting rights associated with the shares. Consider the Perry-Mylan situation. [FN163] Perry purchased Mylan shares, and entered into equity swaps which hedged its economic ownership. Neither step involved either a vote seller or a transfer of voting rights. Instead, these transactions involved a share purchaser and a transfer of economic interests. Indeed, both were perfectly ordinary market transactions: a share purchase and a hedging transaction. Similarly, insiders using collars retain voting rights while shedding economic ownership. Again, the decoupling is achieved by two normal market transactions--the purchase of shares and the hedging of economic risk--rather than a single suspect purchase of votes.

Record date capture also falls outside current vote buying doctrine. The borrowed shares convey full economic and voting ownership. This is customarily coupled with the right of either the borrower or the lender to reverse the transaction on demand and, while the loan is outstanding, the borrower paying to the lender the cash return on the shares plus an agreed upon borrowing charge. No individual piece of this arrangement is problematic.

Vote buying by insiders, however, remains suspect because of possible fiduciary duty constraints. In the battle over H-P's acquisition of Compaq, Walter Hewlett asked the court to set aside the votes by Deutsche Bank on grounds of vote buying, alleging that Deutsche Bank's vote was coerced by threats from H-P management that the bank's future business relationship with H-P would suffer if the bank voted against the merger. [FN164] The court found no evidence of coercion, but seemed to presume the *863 illegitimacy of coercion, had it occurred. [FN165] We return to this insider fiduciary duty limitation in Part V.B.4.

E. Testable Hypotheses

Suppose that disclosure rules, such as the ones we propose below, provided good data on the extent of empty voting and hidden (morphable) ownership (which would no longer be hidden); both are reasonably widespread; and there is no change, other than disclosure, in current rules. What results might we expect?

One set of hypotheses involves the markets on which the new vote buying depends. Around the record date for a contested vote, we would expect (1) an increase in demand for share borrowing; and (2) a possible decrease in the supply of lendable shares, because some lenders will want to vote their shares. This should increase the cost of

borrowing shares or creating a short equity swap position (for which the dealer may hedge by borrowing shares and selling them short). In an extreme case, the cost of borrowing shares or obtaining short equity swap positions might spike as the contestants view to acquire enough votes to carry the election. Christoffersen and her colleagues report higher lending volume around record dates with little apparent change in price, [FN166] but this seems unlikely to be an equilibrium outcome for contested elections.

Cheaper decoupling should increase the overall level of decoupling. It might be feasible to exploit cross-country or cross-firm differences in the availability and cost of decoupling to test whether these differences predict differences in the extent of decoupling.

A related hypothesis involves the minimum ownership that insiders need to maintain to ensure control. Ownership of 30%-35% of a company's shares has generally been considered sufficient for control. If insiders can more readily reduce economic ownership while maintaining voting ownership, and outsiders can acquire votes at modest cost, both factors should lead controlling families to maintain higher voting ownership.

*864 A final hypothesis involves the equity swap market. One possible reason for the rapid growth in this market is the desire of hedge funds and other investors to conceal their ownership. If so, more effective disclosure rules could reduce use of equity swaps. Once again, cross-country or cross-firm tests might be feasible.

## IV. DISCLOSURE: CURRENT RULES AND REFORM PROPOSAL

### A. General Considerations

We turn now to how disclosure rules relate to the new vote buying. In Part IV.B, we address the extent to which current share ownership disclosure rules reach empty voting or hidden (morphable) ownership. In Parts IV.C and IV.D, we offer an "integrated ownership disclosure" reform proposal that would both ensure disclosure of much of the new vote buying and simplify current ownership disclosure rules.

### B. Existing Disclosure Requirements

We review here the current disclosure requirements that affect the new vote buying. To avoid clutter that might obscure our main themes, we gloss over some complexities. Thus, our discussion should be understood as roughly, but not wholly, accurate.

Currently, there are five discrete ownership disclosure systems, for (1) active 5% shareholders on Schedule 13D; [FN167] (2) passive 5% shareholders on Schedule 13G; [FN168] (3) institutional investors, including hedge funds, on Form 13F; [FN169] (4) company insiders under Section 16; and (5) mutual funds. [FN170] These systems, taken together, are bewilderingly complex. Different rules often apply in determining what triggers the disclosure requirements and what must be disclosed if disclosure is required. Economically identical holdings are often disclosed in different ways, depending on how an investor achieves a particular combination of voting and economic ownership. Positions involving OTC derivatives often escape disclosure, when a substantively identical position involving exchange-traded derivatives would be disclosed. Ownership of call options may *865 require disclosure, but (the nearly equivalent) sale of put options may not. And so on. A derivatives-savvy hedge fund can often avoid disclosure.

Table 3 summarizes the current disclosure requirements. Their complexity and illogic is immediately apparent.

*866 Table 3. Current ownership disclosure requirements relating to new vote buying

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

This table summarizes how long and short positions in shares or equivalents, and stock lending and borrowing, are treated under current U. S. ownership disclosure rules. The table addresses separately the use of long and short positions in shares and equivalents to trigger a reporting obligation, and the need to disclose these positions if a reporting obligation exists.

| Reporting Scheme | Reporting Frequency | Long Positions — As Trigger: Equity Swaps; Other OTC Derivatives | Long Positions — As Trigger: Shares and Exchange-traded OTC Derivatives | Long Positions — If Filing Required: Equity Swaps; Other OTC Derivatives | Long Positions — If Filing Required: Shares and Exchange-traded OTC Derivatives | Short Positions — As Trigger: Equity Swaps; Other OTC Derivatives | Short Positions — As Trigger: Exchange-traded Derivatives | Short Positions — As Trigger: Short Sales | Short Positions — If Filing Required: Equity Swaps; other OTC Derivatives | Short Positions — If Filing Required: Exchange-traded Derivatives | Short Positions — If Filing Required: Short Sales | Stock Lending and Borrowing: Lending |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13D | Current | Generally no | Yes | Partial | Yes | No | Yes | No | Partial | Yes | Partial | Unclear |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

79 SCALR 811
79 S. Cal. L. Rev. 811
**(Cite as: 79 S. Cal. L. Rev. 811)**

| | | | Yes (if held on reporting date) | No | Yes | No | Yes (if held on reporting date) | No | No | Yes | No | No |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13G | Annual | Generally no | | | | | | | | | | |

| 13F | Quarterly | | | No | | | | | | | |
| | | | Status-based: | | Partial | Status-based: | | No | Partial | | No |

79 SCALR 811
79 S. Cal. L. Rev. 811
**(Cite as: 79 S. Cal. L. Rev. 811)**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | $100M in 13F securities | | $100M in 13F securities | | | |
| | | | Yes | | | Yes | | |
| Section 16 (director or officer) | Current | Status-based | | Status-based | Banned by Section 16(c) | | Banned by Section 16(c) | Probably no |
| Section 16 (10% holder) | Generally no | | Yes | No | | | Yes (as trigger); Probably no (in disclosure) | |
| Mutual Funds | Quarterly | Yes | Yes | Yes | | Yes | | No (except by implication from disclosure of short sales) |

**\*867** 1. Large Shareholder Disclosure (Schedules 13D and 13G)

a. Basic Requirements

Any person who "directly or indirectly" acquires "beneficial ownership" of more than 5% of a public company's shares must file a Schedule 13D with the SEC within ten days after crossing the 5% threshold. [FN171] Certain types of institutional investors who invest "passively" (in the ordinary course of business and without intent to influence control) can instead file a more abbreviated Schedule 13G (generally on February 15 of each year, reporting year-end positions). [FN172] Both schedules are publicly available.

Disclosure is based on "beneficial ownership" of shares, as defined by Rule 13d-3. The focus is on sole or shared voting or investment power, which can be held "directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise." [FN173] Beneficial ownership of shares includes "the right to acquire beneficial ownership . . . within sixty days, including . . . through the exercise of any option [or] warrant." [FN174] The SEC discourages gaming by providing that any person who uses any "contract, arrangement, or device" to evade these reporting requirements is nonetheless deemed to be a beneficial owner. [FN175]

Filers must report the number and percentage of shares beneficially owned, and any purchases or sales within the past sixty days. [FN176] Item 6 of Schedule 13D, which has no counterpart in Schedule 13G, also requires disclosure of "any contracts, arrangements, understandings or relationships (legal or otherwise)" relating to any securities of the issuer. [FN177] Item 7 requires the filing of certain related "written agreements" as exhibits. [FN178] Short positions, whether in shares or derivatives, do not trigger disclosure. If disclosure is triggered by a large long position, some disclosure is required for partially offsetting short positions.

**\*868** How Schedules 13D and 13G treat share lending and borrowing is unclear. Borrowing (which comes with voting power) would likely both count toward triggering disclosure and be disclosable on both forms. Record date capture without a control intent, however, is unlikely to be captured by Schedule 13G because few record dates will fall around the year-end reporting date. Share lending might be disclosable on Item 6 of Schedule 13D, but is not captured by Schedule 13G.

b. Application to Hidden (Morphable) Ownership

Will the 13D and 13G requirements capture hidden (morphable) ownership? We will use Perry-Rubicon as an example. [FN179] Perry held just under 5% of Rubicon's shares, plus equity swaps conveying an additional 11% economic ownership. Its direct holding of shares would not trigger disclosure. The equity swaps, by themselves, would likely not trigger disclosure either. The swaps in Perry-Rubicon were cash-settled and did not convey the right to acquire shares. Perry's equity swap position might be caught by the "arrangement, understanding or relationship (legal or otherwise)" language, if it had a sufficiently firm expectation that it could exchange its equity swap position for shares at any time. But there is no clear guidance in the rule or in SEC no-action letters. Practitioners at law firms prominent in the OTC derivatives market apparently take the position that disclosure of cash-settled equity swap positions is normally not required. Partners at Allen & Overy, the primary outside law firm of the International Swaps and Derivatives Association (the main trade association for the OTC derivatives industry), and at Cleary Gottlieb have both taken this position. [FN180]

The nondisclosure of cash-settled equity swaps can be questioned if one looks beyond the terms of the swap itself to the economic context. A derivatives dealer which takes a short equity swap position will almost surely hedge its exposure, often by holding matched shares. This hedging choice was adopted in Perry-Rubicon. Perry sold Rubicon shares to Deutsche Bank and UBS Warburg concurrent with entering the equity swaps. There was a very

79 SCALR 811
79 S. Cal. L. Rev. 811
(Cite as: 79 S. Cal. L. Rev. 811)

good chance that Perry could return to its dealers and exchange its swap position for shares, without an explicit prior discussion. (Access to the dealers' matched shares is not always a certainty; the hedge fund in the Sears Canada situation was surprised to find its dealer *869 less accommodating than it had expected. [FN181]) Is this expectation a sufficient "arrangement, understanding or relationship (legal or otherwise)," taking into account the extension of beneficial ownership to any person who uses any "arrangement or device" to evade reporting? Perry claimed not under New Zealand's rules, which are similar to U.S. rules. Perry lost at trial, but won on appeal.

Australia has reached a similar result, under similar large shareholder disclosure rules. In 2005, Glencore International, which held just below 5% of Austral Coal, entered into equity swaps with two derivatives dealers, thereby acquiring another 6.5% in economic ownership, before disclosing its overall position. [FN182] The Australian Takeovers Panel held that Glencore should have disclosed its combined position as soon as its economic ownership crossed the 5% threshold. [FN183] The Panel found that Glencore expected the derivatives dealers to acquire matched shares to hedge the equity swaps, and that the dealers' incentive to hold the matched shares gave Glencore "a real degree of effective negative control" over disposal of these shares. The Panel's decision, however, was reversed on appeal by the Federal Court of Australia. [FN184]

Hidden (morphable) ownership might arguably be analogized to "stock parking" for disclosure purposes. [FN185] The argument would be that the shares "parked" with another party in conventional parking arrangements are similar to the "matched shares" held by a derivatives dealer to hedge an equity swap provided to a client. In both cases, there is little or no market risk to the financial intermediary and the transaction may be used to avoid disclosing ownership. There are material distinctions, however, between the two situations. Parking involves an understanding that the client will buy the stock back at a later date and protect its counterparty against loss. With an equity swap, there is no such understanding and the dealer must protect itself against loss.

*870 c. Application to Empty Voting

Consider next how Schedules 13D and 13G affect empty voting, using Perry-Mylan as an example. Perry acquired 9.9% of Mylan's shares. Had Schedule 13G been available, no disclosure of its hedges would have been needed, nor disclosure of its position until February 15 of the next year. Perry initially took the position that Schedule 13G was available, and filed a Schedule 13D only after Carl Icahn filed a Schedule 13D indicating an intent to acquire Mylan, a step that Perry opposed. [FN186] Perry's view that its intent to oppose Mylan's merger with King did not involve a control intent is debatable. But even if a Schedule 13D filing was required, what should Perry disclose about its hedges? Not much, or so Perry judged. Item 6 of Schedule 13D requires disclosure of "any contracts, arrangements, understandings or relationships" relating to Mylan shares. Perry duly said that it had engaged in "security-based swap agreements" and that "to execute certain hedging transactions," it had entered into share loan transactions with Bear Stearns and Goldman Sachs. [FN187] This opaque disclosure was likely not accidental.

Consider next the common situation in which an investor holds a stake in both acquirer and target, which affects economic interest in the acquirer. Deutsche-Boerse-LSE and Hewlett-Packard-Compaq offer examples of this scenario. [FN188] Assume that a hedge fund files a Schedule 13D; must it disclose its position in the target? The answer is no. Item 6 requires disclosure of contracts or arrangements with respect to "any securities of the issuer." [FN189]

In sum, Schedules 13D and 13G provide only limited disclosure of the existence and nature of the new vote buying. One can quibble with the level of detail that Perry provided or its failure to attach the hedging agreements as exhibits. [FN190] But from a policy perspective, picking at the language of disclosure rules that were not written with empty voting in mind is beside the point. The real problem is that the 13D and 13G rules *871 were written in the 1970s, when neither swaps nor any other OTC derivatives existed. [FN191]

2. Reporting by Institutional Money Managers (Form 13F)

The third ownership disclosure regime applies to institutional money managers, including hedge funds, who must disclose their holdings at the end of each quarter by filing Form 13F with the SEC. [FN192] Form 13F is filed forty-five days after the end of each quarter. With regard to the new vote buying, Form 13F offers little help. It requires disclosure of holdings of "section 13(f) securities" by every "institutional investment manager" who holds $100 million or more in these securities. [FN193] The term "institutional investment manager" is defined broadly to include (1) any person, other than a natural person, who invests in or buys or sells for its own account; and (2) any person, whether or not a natural person, who exercises investment discretion with respect to the account of any other person. [FN194] This captures hedge funds, whether located in the United States or offshore, but not high net worth individuals, unless they invest for the accounts of others. [FN195] The SEC publishes an "Official List of Section 13(f) Securities." This list is limited to common shares and exchange-traded options of U.S. public companies. [FN196] Anything not on the list need not be disclosed.

Critically, Form 13F requires no disclosure for securities that are not publicly traded, even if they are economically identical to disclosable securities. For example, positions in exchange-traded options are disclosable, but substantively identical positions in OTC options are not. Money managers need not report options they have written rather than **872 bought, even if the written position is economically equivalent to a disclosable purchased position. Long share positions are reported; short positions are not. [FN197] Share lenders report ignoring the loan (that is, the lender reports owning the shares); share borrowers report nothing. [FN198]

Even for covered securities, Form 13F requires quite limited information. The "Information Table" at its heart is simply a list of each security owned, its CUSIP number (a standard means for identifying publicly traded securities), its type (for instance, shares, puts, or calls), and the number of securities held. [FN199]

Form 13F requires reporting of shares as to which a manager has voting power or investment power, whether sole or shared. If, however, a manager has voting authority over "routine" matters and no authority to vote on "nonroutine" matters, the manager reports as if it had no voting authority. Nonroutine matters include a "contested election of directors, a merger, a sale of substantially all the assets, [and] a change in the articles of incorporation affecting the rights of shareholders' while routine matters include selecting an accountant, uncontested election of directors, and approval of an annual report. [FN200]

Hidden (morphable) ownership positions will usually escape 13F reporting. These positions commonly rely on OTC derivatives, which are not reported. Indeed, one reason why hedge funds hold equity swaps and other OTC derivatives rather than shares is to hide their ownership from public view.

Form 13F fares little better for empty voting. Empty voting through share borrowing will never be seen. If an investor holds shares while hedging economic ownership, the direct ownership will be reported; its empty character will not. Moreover, it is usually easy to hide a voting stake altogether. For example, a hedge fund could, in effect, exchange its shares for economically equivalent swap positions before quarter end, and then unwind the swaps and reacquire shares from the derivatives dealers immediately afterwards.

**873 3. Insider and 10% Shareholder Disclosure (Section 16)

The fourth principal source of disclosure is Section 16, which covers officers, directors, and 10% shareholders of U.S. public companies. [FN201] Outside shareholders usually avoid crossing the 10% threshold, partly because doing so triggers recapture of "short-swing profits" from buying and selling (or selling and buying) within a six-month period. Acquiring economic ownership while avoiding coverage is straightforward. The 10% ownership threshold is based on beneficial ownership in the Section 13(d) sense, which focuses on voting power rather than economic interest. [FN202] If a cash-settled equity swap lets a hedge fund avoid disclosure under Section 13(d), the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

same swap will also let the fund avoid Section 16 disclosure.

If disclosure is triggered, however, the positions to be disclosed are based on "beneficial ownership" in the separate Section 16 sense, which focuses on economic ownership. [FN203] The relevant forms (Forms 3, 4, and 5) require disclosure of most economic interests. [FN204] An initial filing must be made on Form 3 within ten days after the event which triggers coverage. [FN205] Changes are reported on Form 4. Form 5 is an annual statement of changes. All forms are publicly available. Section 16 beneficial ownership is defined broadly to include any "pecuniary interest." [FN206] Disclosable positions include "any option, warrant, convertible security, stock appreciation right, or similar right with an exercise or conversion privilege at a price related to an equity security, or similar securities with a value derived from the value of an equity security." [FN207]

This definition is quite broad. Equity swaps and other equity derivatives must be disclosed, whether physically- or cash-settled, and *874 whether exchange-traded or OTC. A derivative's value need not precisely track share value; the derivative must be disclosed if its value is "derived from the value of an equity security." [FN208] There is an exception for "broad-based" index options, futures, and market baskets of stocks. By implication, derivatives whose value is based on a narrow index are covered. Thus, Section 16 covers some related non-host assets--albeit with ambiguity about which ones. The information required for each derivative is also extensive, and includes the "title, exercise or conversion price, date exercisable, expiration date, and the title and amount of securities underlying the derivative security." [FN209] Changes in ownership are reported using specific transaction codes, including "S" (sale), "C" (conversion), "O" (exercise of an out-of-the-money derivative), "X" (exercise of an in- or at-the-money security), and "K" (an equity swap or similar security). [FN210]

It seems likely that few, if any, Section 16 filers report share borrowing or lending. [FN211] There is no explicit SEC requirement to report share borrowing or lending, there is no relevant transaction code, and we have found no SEC or practitioner guidance even discussing this question. Section 16 reporting focuses on economic ownership, which lending and borrowing does not change in any significant way. The lender can recall the lent shares at any time and receives from the borrower a payment to compensate for any dividends or other distributions during the period of the loan. The borrower's voting rights do not easily fall within the term "pecuniary interests" under Section 16. In the parallel situation of a voting trust which has voting power but no economic ownership, the trust does not report share ownership. [FN212]

For hidden (morphable) ownership, then, Section 16 disclosure does a good job. For empty voting, disclosure might depend on how the empty voter acquires its votes. Shares hedged with derivatives would be disclosed, but it likely not share borrowing.

*875 4. Mutual Fund Reporting

The final set of reporting obligations applies to mutual funds, which must report to the SEC quarterly on their portfolio holdings (the filing is public) and provide a summary list semiannually to investors. [FN213] Disclosure focuses on economic ownership and covers both long and short positions. For options, disclosure includes value, exercise price, and maturity date. There are no rules on what details to report for equity swaps and other OTC derivatives, but a spot check of several disclosure filings suggests that disclosure of counterparties and certain numerical information such as notional amounts is common. There is no requirement to disclose specific share lending or non-short-sale-related borrowing positions. [FN214]

Thus, while the details are different, mutual fund reporting is similar to insider reporting in that it (1) focuses on economic ownership; (2) covers all positions, both long and short, whether or not they convey voting rights; (3) covers both exchange-traded and OTC derivative positions; but (4) apparently does not cover share lending or non-short-sale-related borrowing. Both systems cover hidden (morphable) ownership reasonably well, as well as some flavors of empty voting. Mutual fund disclosure captures only quarter-end positions, however.

C. Reforming the Disclosure System

1. General Considerations

As Table 3 and Part IV.B show, the current disclosure rules are highly complex, treat substantively identical positions inconsistently both across **\*876** and within disclosure regimes, do not effectively address either empty voting or hidden (morphable) ownership, and for the most part do not cover share lending and borrowing. In big picture, Schedules 13D and 13G focus on voting ownership, while Section 16 and mutual fund disclosures focus on economic ownership. Form 13F covers only specific positions in publicly traded shares and exchange-traded options. Some of these radical differences in focus may have once made sense. Some of the omissions may once have been unimportant. But in a world of easy decoupling of voting and economic ownership, plus a massive OTC derivatives market, greater uniformity and fewer omissions are called for.

The "integrated ownership disclosure" proposal that we set forth below would provide improved though still imperfect disclosure of both empty voting and hidden ownership, while substantially simplifying the current ownership disclosure rules. Our proposal builds on existing disclosure technology and requires only information readily accessible to investors. In large part, the proposal simply extends existing disclosure practices for insiders and mutual funds to a broader class of reporting persons. Thus, additional compliance costs should be limited, and will be offset for many reporting persons by adding a single set of rules for what must be reported. We expect, but cannot prove, that overall disclosure costs would decline.

We propose simplifying the disclosure architecture by (1) moving toward common standards for triggering disclosure and for disclosing positions once disclosure is required; (2) providing a single set of rules for which ownership positions to disclose and how to disclose them; (3) requiring disclosure of all positions conveying voting or economic ownership, arising from shares or coupled assets; and (4) requiring symmetric disclosure of positive and negative economic ownership. We do not directly address disclosure of related non-host assets, but our proposals would often require disclosure of holdings in both acquirers and targets, which are one important category of related non-host assets.

Our disclosure proposal should capture hidden (morphable) ownership reasonably well for current Schedule 13D and Section 16 filers, because these filers must report ownership and changes therein promptly. Disclosure will be patchier for other filers because they must report only end-of-period positions. We return to this issue in Part IV.D, below.

We expect that this new information will be useful to investors, as well as to corporations, Delaware judges, banking and securities regulators, and legislators as they contemplate how to respond to new vote buying. But **\*877** even if the new disclosure had no other value, the simplification we propose--largely integrating what are now five discrete ownership disclosure systems--would likely be worthwhile.

In offering this proposal, we do not reassess the current disclosure thresholds, disclosure frequencies, and delay periods, nor, to an appreciable extent, which investors must report their positions. Implicitly, then, we assume that there is rough economic or political logic supporting the current rules. We also believe, however, that whatever the thresholds and delay periods may be, the disclosure rules should be internally coherent. Consider a tax analogy. One can believe that current tax rates are too high, and still prefer a system with few loopholes over a loophole-ridden system that produces lower overall taxes but favors the tax-clever and produces horizontal inequity.

We recognize that ownership disclosure has both benefits and costs. [FN215] On the benefit side, share pricing will be more efficient if investors know what major investors are doing and have advance notice of possible changes in control. Moreover, price-relevant information often has greater private value than social value. Requiring

disclosure can reduce costly, often duplicative, private search for information. On the cost side, private search for information can enhance share price efficiency, and the corporate control market is animated in part by private returns to search. Thus, outside investors must receive some reward for finding mispriced shares and mismanaged firms. Real-time disclosure would likely reduce the return to search. The current system, with near real-time disclosure by insiders and large active shareholders (13D filers), but delayed disclosure by other shareholders, could well strike a decent balance among these competing concerns.

In addition to their potential economic logic, large shareholder disclosure rules respond to the intuition that investors should know who a company's major shareholders are and whether those shareholders are buying or selling, and that a company's insiders should have an opportunity to respond to a takeover attempts. The history of ownership disclosure suggests that, precise thresholds and delay periods aside, our society will not tolerate hidden control of major companies, nor control contests waged behind closed doors. So disclosure of major positions there will be. Our *878 aim is to make that disclosure coherent, simple, and therefore relatively low-cost.

Our proposed disclosure reforms build largely on the Section 16 rules and current mutual fund practice. For derivative positions, we would extend Section 16-type disclosures to shareholders who report on Form 13F and Schedules 13D and 13G. Short positions would be disclosed in a manner similar to long positions, with a possible exception for "pure short sales," discussed below. We would modestly expand the institutions that must report on Form 13F by counting any economic ownership of shares, directly or through derivatives, toward the $100 million threshold. We would count on a gross basis all long and short positions toward the triggering threshold for Schedules 13D and 13G and Form 13F. Banks, broker-dealers, and others who hold both proprietary and investment advisory positions, would report each separately, subject perhaps to limited exceptions for short-term positions held in connection with market-making activities.

We would also require disclosure of share lending, share borrowing, and voting ownership, even if unaccompanied by economic ownership. Lenders would report their loans; borrowers would report their borrowings and whether they retained the borrowed shares or sold them short. Money managers who have voting discretion for routine matters but not nonroutine matters would so indicate.

We regard as a very close question whether a large pure short economic position, defined as negative economic ownership with no accompanying voting ownership, should require disclosure. Our proposal errs on the side of simplicity and symmetry in providing that both long and short positions should be disclosed and count for triggering a filing requirement. [FN216]

Regulators will need to develop guidelines for reporting of derivative positions that are not addressed by the current Section 16 and mutual fund *879 rules. As a lodestar principle, we believe that reporting persons should disclose information sufficient to let a derivatives dealer, with access to information on volatility and other pricing parameters, estimate the derivative's value and its delta (how that value depends on share price). The reporting person need not provide the model it uses to value the derivative (that may be proprietary), only the raw material. For instance, for a typical OTC put option, the reporting person would set out the core contractual terms-- principally the strike price, the expiration date, the number of shares, the counterparty, and whether the option was European style (exercisable only at expiration) or American style (exercisable at any time). This principles-based approach should be more robust to financial innovation than the "cubbyhole" approach used in the current 13F rules. [FN217]

Our proposals for enhanced disclosure of economic ownership are generally consistent with recent regulatory changes made in the United Kingdom and Hong Kong in response to certain aspects of the new vote buying. In 2005, the U.K. Panel on Takeovers and Mergers extended large shareholder reporting to persons with either economic or voting ownership. [FN218] In 2003, Hong Kong similarly extended large shareholder disclosure requirements to persons with both long and short equity derivatives positions. [FN219] The 2006 Henderson Investment incident may prompt Hong Kong to take further action. [FN220] The most important difference *880

79 SCALR 811                                                                 Page 45
79 S. Cal. L. Rev. 811
**(Cite as: 79 S. Cal. L. Rev. 811)**

between the United Kingdom and Hong Kong approaches is that Hong Kong does (as we do), while the United Kingdom does not, require disclosure of a pure short economic position.

Disclosure rules also need to be enforced. At present, there is some enforcement of Section 13(d) and Section 16 disclosure, but apparently minimal enforcement of Form 13F. [FN221]

Table 4 summarizes our integrated ownership disclosure proposal. Comparing Table 4 to Table 3 visually shows the simplification of the current rules.

**\*881 Table 4. Proposal for more integrated ownership disclosure**

This table summarizes the disclosure rules we propose, in a format similar to Table 3, which summarizes current ownership rules. The table addresses separately the use of long and short positions in shares and equivalents to trigger a reporting obligation, and the duty to disclose them once the reporting obligation has been triggered. For stock lending and borrowing, borrowing is relevant both for triggering disclosure (except for status-based filers) and for disclosure if a filing is required.

| Proposed Disclosure Requirement | Reporting Frequency (Same as Current Law) | Long Positions (Shares, Equity Swaps, other OTC and Exchange-traded Derivatives) | | Short Positions | | Share Lending and Borrowing | Empty Voting (over Threshold Level, such as 0.5% of Company's Shares) |
|---|---|---|---|---|---|---|---|
| | | As trigger | If filing required | As trigger | If filing required | | |
| | | Equity Swaps, other OTC and Exchange- | Short Sales | Equity Swaps, other OTC and Exchange- | Short Sales | Lending | Borrowing |

| Form | Freq. | | | traded Derivatives | traded Derivatives | | |
|---|---|---|---|---|---|---|---|
| 13D | Current | Yes | Yes | Yes | Yes | Yes | Yes |
| 13G | Annual | Yes (if held on reporting date) | Yes | Yes (if held on reporting date) | Yes | Yes (if held on reporting date) | Yes |
| 13F | Quarterly | Status-based: $100M in economic ownership of equities and equity derivatives | Yes | Status-based: $100M in economic ownership of equities and equity derivatives | Yes | Yes | Yes |
| Section 16 (director or officer) | Current | Status-based | Yes | Status-based | Yes / Banned by Section 16(c) | Yes / Banned by Section 16(c) | Yes |
| Section 16 (10% holder) | | Yes | | Yes | | | |

79 SCALR 811                                                                    Page 47
79 S. Cal. L. Rev. 811
**(Cite as: 79 S. Cal. L. Rev. 811)**

|         |         | Yes | Yes | Yes | Yes | Yes | Yes |
|---------|---------|-----|-----|-----|-----|-----|-----|
| Mut ual Funds | Qua rterly |     |     |     |     |     |     |

**\*882** 2. Large Shareholder Disclosure (Schedules 13D and 13G)

As we have seen, large shareholder disclosure under Schedule 13D or 13G focuses on voting ownership. Our proposed extension is simple: voting and economic ownership should each be reported, and should each count toward triggering the reporting obligation. The Section 16 concept of economic ownership can be carried over to Schedules 13D and 13G and expanded to include share borrowing and lending positions which affect voting ownership. Each position would be separately disclosed using transaction codes adapted from Section 16 reporting. Schedule 13D filers would attach any contracts that convey or relate to their economic or voting ownership. We would also modestly move the line between 13D and 13G reporting, which currently turns on control intent. We would require 13D reporting if a position is held with a view toward affecting a shareholder vote, even if the vote does not affect control.

Take Perry's position in Mylan as an example. Perry, once it crossed 5% ownership of Mylan, would report on Schedule 13D because it held its position with a view toward affecting the Mylan vote on acquiring King. It would report each position conveying positive or negative economic or voting ownership and attach its hedging contracts as exhibits.

Schedule 13G reporting would be similar to Schedule 13D reporting, but without exhibits. As at present, it would generally be due annually and include only year-end holdings. This will let some positions go unreported, but the loss of information should be modest because most institutions will have to report their positions quarterly on Form 13F.

In determining whether the 5% reporting threshold has been crossed, we would not allow netting of long and short positions. An example can show why. Assume that a hedge fund takes a 10% net short position and also enters into an equity swap conveying a 6% long position, so that its net short position is 4%. With netting, no filing would be required. But we would want the hedge fund to file a Schedule 13D or 13G. The hedge fund's overall position is net short, yet it may well have access to 6% voting rights if a shareholder vote arises that can affect company value.

For some derivative positions, questions will arise as to how to measure effective economic exposure. An equity swap conveying the economic return on 1 million shares should count as economic ownership of 1 million shares. But what about a call option? In derivatives terminology, d ("delta") is the change in option value for a small change in **\*883** the price of the underlying asset. [FN222] If shares go up by $1, a call option with d = 0.4 will increase in value by $0.40. A call option's d, however, changes as share price changes. How should this position be reported?

We believe that reporting the precise economic ownership for call options and other derivatives with deltas that vary with share price or other factors would add undue complexity and cost. We propose instead a cruder approach. Currently, Rule 13d-3 provides a simple rule for reporting call options: one reports the number of shares that the option relates to. [FN223] This is equivalent to assuming d = 1. We believe the number of matched shares for a derivative position should be computed in a similar fashion. This is consistent with the recent reforms in Hong Kong. [FN224]

3. Institutional Money Managers and Mutual Funds

We propose that 13F disclosure of economic and voting ownership should use the same format and contain

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

information about the same positions as Schedules 13D and 13G. The principal differences would be: (1) the trigger for reporting; and (2) Schedule 13D would continue to require reporting of changes in position, while Form 13F and Schedule 13G would require only period-end reporting. The current reporting threshold is ownership of $100 million in section 13(f) securities. We would change this to $100 million in economic ownership of U.S. equity securities. This will prevent an institution from avoiding disclosure by holding primarily equity derivatives and keeping its direct equity holdings under $100 million.

Currently, data on share lending is sparse. Even the aggregate size of the market can only be estimated. [FN225] The largest borrowers of stocks are prime brokerage firms; the largest lenders are major institutions. Beyond these facts, and some individual anecdotes, little else is known. Simply aggregating the share lending and borrowing that would be reported by 13F **884 filers would capture a large fraction of total activity, and provide valuable data on this market.

Cost concerns are more important for Form 13F reports than for Schedules 13D and 13G because every major institutional investment manager would have to file Form 13F on a quarterly basis, and report all positions held. But institutional money managers should have ready access to the portfolio information we propose to collect. Some hedge funds, for example, currently provide quite detailed reports to investors. [FN226] Thus, there will be a one-time cost in revising internal reports to match the new reporting format, but ongoing 13F filing costs should be similar to current costs, and similar to costs that mutual funds now incur.

Because additional costs will be limited, there should be no howls of outrage at compliance costs. Indeed, we discussed our proposal informally with several major institutions (both mutual funds and hedge funds), and heard no howls. Their principal concern was with disclosing trading positions that are currently concealed.

Yet, to some extent, we have already crossed that bridge. Form 13F was intended to require institutional money managers to disclose their equity holdings. The reporting is delayed forty-five days after quarter end to reduce the competitive impact of disclosure. Changes in the derivative markets have undermined the completeness of reporting but it is not apparent that the basic tradeoff between disclosure and competitive secrecy was seriously misdrawn, especially because secrecy has more private value than social value. The money managers we spoke to were generally comfortable with the current delay periods.

The foregoing changes to Form 13F would result in mutual fund advisory firms (such as Fidelity and Vanguard) providing greater decoupling-related information as to their aggregate holdings. The individual funds these firms manage would continue to provide the fund-specific disclosures on holdings that they do so currently. Both advisory firms and individual funds, however, would be subject to the new empty voting disclosure rules to which we now turn.

**885 D. Disclosure of Large Empty Voting Positions

Periodic reporting (Form 13F, Schedule 13G, and mutual fund disclosure), will miss most empty voting strategies that are used for a short period around that record date. For example, an institution could borrow up to 5% of a company's shares, vote them, reverse the borrowing before the quarter ends, and report nothing. Current filers will report their positions, but not whether they engaged in empty voting.

To address empty voting by periodic filers, we propose that these filers report any occasions where they cast votes which substantially exceeded their economic ownership. To limit the reporting burden for filers who engage in ordinary hedging activities, we would only require disclosure if a filer voted shares which exceeded its economic ownership by at least 0.5% (or some other threshold amount) of a company's outstanding shares. We would rely on the crude rules discussed above to measure economic ownership. A precise measure of economic ownership is not critical if the goal is only to determine whether a position must be disclosed. Greater precision would be needed if

one were to limit voting rights based on economic ownership.

Consider the AXA-MONY merger as an example. [FN227] Suppose that a hedge fund held AXA convertible bonds, wanted the merger to be completed, borrowed 4% of MONY's shares before the record date, voted for the merger, and then reversed the borrowing. The hedge fund would report, in its next 13F filing, that it had borrowed and voted the MONY shares; what issues it had voted on; how it had voted; the dates of borrowing, voting, and position reversal; and its economic ownership of MONY shares and of any related non-host assets that affected its vote (in this case, the AXA bonds). Laxey Partners, in the British Land case, would disclose that it held 1% economic ownership of British Land, but had borrowed shares representing an additional 8% in order to support a proposal to split up British Land. [FN228]

This reporting should not be onerous. It will apply only to institutions that engage in large-scale empty voting. These should be a small fraction of all filers. If empty voting is widespread, the filing burden will be higher, but so will the need for the information.

**\*886** This reporting would be on the usual forms, and would occur some time after the vote. Thus, it will usually be made too late to affect the voting outcome. Delayed reporting is a tradeoff of disclosure cost against timeliness. If empty voting is widespread, the decision to allow delayed reporting can be revisited.

We would require current filers (Schedule 13D filers and insiders) to report significant empty voting through an amended filing (a 13D amendment for 13D filers and a Form 4 for insiders).

E. Summary

As a response to hidden (morphable) ownership, our integrated disclosure proposal may well be sufficient. For empty voting, disclosure will be valuable, but may be only a first step. Disclosure seems likely to reduce the incidence of empty voting. Even hedge funds may sometimes hesitate to do publicly what they might do in the dark. Insiders might hesitate, as well. Derivatives dealers might take "reputational risk" into account in deciding whether to facilitate a client's empty voting.

Disclosure should also provide the information required to assess the need for further empty voting reforms. This information will also prove useful for international coordination. The new vote buying is international in scope, so coordination will be important for any regulatory response. This need for both information and international coordination has been recognized by the private sector. The principal current private effort to address new vote buying is taking place through the International Corporate Governance Network ("ICGN"), a group of major institutional investors drawn from the United States (including CalPERS--the California Public Employees' Retirement System), the United Kingdom (including Hermes), France (including Crédit Agricole), and elsewhere. [FN229]

V. LONGER RUN RESPONSES TO EMPTY VOTING

A. General Considerations

As we discussed in Part III, the theory and evidence bearing on whether shares should be linked to votes, and on how a market for votes, **\*887** decoupled from shares, might operate, provide mixed signals. There are circumstances in which such a market is problematic, but also circumstances in which, suitably constrained, it could strengthen shareholder oversight of managers. For this and other reasons, including the difficulty of regulating an activity that can take many forms, about which little is yet known, we consider it premature to propose additional rules to address empty voting.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Still, some simple examples can illustrate why some additional regulation will probably be needed. For takeover bids, an unregulated market for shares, coupled with votes, has well-known problems, driven by the high value ascribed to the marginal shares that just convey control, and the subsequent lower value of remaining shares. These problems have led to extensive regulation, including a minimum offer period and a ban on two-tier offers. Similar problems would afflict a battle for control waged by buying votes decoupled from shares. Thus, an unregulated market for votes seems unlikely to work well.

For record date capture, consider the Henderson Investments scenario. A hedge fund borrowed shares, voted them against an apparently beneficial transaction, and then sold them short, profiting while defeating an apparently beneficial transaction. After-the-fact disclosure would not change the hedge fund's ability to profit at other shareholders' expense.

Or consider Scotiabank's decision to refuse to unwind an equity swap and instead vote Sears Canada shares, held to hedge an equity swap, in favor of Sears Holdings' buyout offer. [FN230] In substance, Scotiabank was apparently an empty voter, akin to a nominal holder, while the hedge fund was perhaps the real economic owner.

There is value, therefore, in developing a menu of possible additional regulatory options and beginning to evaluate their merits. Below, we discuss three families of strategies. The most obvious strategies focus directly on voting rights (Part V.B). A second family involves reforming an aging "voting architecture" that was developed before the emergence of OTC equity derivatives and large-scale share lending (Part V.C). The third involves interventions that would affect supply and demand forces in the markets that support decoupling (Part V.D). We make no claim that the rules we discuss are desirable, only that they are possible.

*888 A further issue is the locus of regulation. Some responses are federal in nature, while others can be implemented by the stock exchanges, by states, or by individual companies. At the federal level, securities law focuses on disclosure. The SEC likely cannot directly regulate empty voting. Such an effort would affect the internal affairs of corporations, traditionally governed by state law. [FN231] Moreover, one might hesitate before seeking further federalization of corporate law, soon after the major step in that direction taken in the Sarbanes-Oxley Act. A federal response could lock in overregulation--as some scholars suggest may be the case with Sarbanes-Oxley. [FN232] Thus, there could be reason to prefer responses that do not expand the SEC's regulatory reach.

B. Strategies Focused on Voting Rights

1. Direct Limits on Voting Rights

One way to address empty voting is to limit the voting rights of shareholders who hold greater voting than economic ownership. [FN233] Thus, in a recent article, Shaun Martin and Frank Partnoy suggest that "shareholders with substantial short positions should not be entitled to vote" and that "corporations and their regulators should strongly consider taking away the votes of [shareholders who are also] options buyers and sellers." [FN234]

In the extreme case of negative economic ownership, this could be the right answer. But even here, the technology for enforcing such a rule is not obvious. To be effective, a rule must address the multiple ways to decouple votes from economic ownership. Martin and Partnoy address only short sales and option positions. They do not discuss, and may be unaware of, record date capture, equity swaps, and other alternatives. One also needs a good way to measure economic ownership.

*889 A further problem is determining when a single "investor" holds equivalent economic and voting ownership. Suppose, for example, that an investment advisory firm runs both a conventional, long-only mutual fund that holds General Motors shares, and a hedge fund, with a different portfolio manager, which is short General Motors shares. Should the conventional fund lose the power to vote because of the hedge fund's short position?

Should it matter whether the advisory firm centralizes its voting decisions or delegates them to individual fund managers?

Bringing related non-host assets into a calculus of overall economic interest raises further complexities. Consider the AXA-MONY transaction. [FN235] The problem was not that holders of AXA convertible bonds had a negative economic interest in MONY, as that they had an orthogonal interest which was their primary concern.

Once one moves from a rarely triggered on-off switch (does an investor have negative economic ownership or perhaps negative overall economic interest?) to a general rule that limits voting rights that would exceed economic ownership, the technical difficulties in measuring economic ownership become fearsome. One must grapple with complex derivative positions, in which the effective economic exposure changes whenever share price changes. In developing the integrated disclosure proposal in Part IV, we attempted to invent a workable scheme for numerical disclosure of effective economic ownership. The effort became absurdly complex and we gave it up as misguided. A substantive limit on voting rights would revive those difficulties. An effort to limit voting rights due to an investor holding related non-host assets would raise further complications.

Moreover, as we discussed in Part III, vote buying is not always harmful. It can sometimes move votes from passive or ignorant investors to investors who can cast informed votes. [FN236] Insiders who hold partly hedged positions will still have incentives to vote in ways that increase firm value. The proportions of "good" and "bad" empty voting are currently unknown.

In the end, a combination of factual uncertainty about when and how new vote buying occurs, how often it is beneficial or harmful, and concerns about how one might draft and enforce a rule that requires measuring economic ownership with reasonable precision, persuade us to err on the side of caution. At this point, we are neither ready to recommend limiting *890 voting rights when they substantially exceed economic ownership, nor to argue that such a rule would be a serious error. The disclosure we propose above may provide the knowledge needed to draft a workable rule. It would also let courts grapple with this issue on a case-by-case basis.

### 2. Voting by Record Owners; Extension to Equity Swaps

The case of empty voting by shareholders with zero economic ownership deserves special attention because it is common and, in part, already regulated. As we discussed in Part III.C, our system of record ownership already decouples economic from voting ownership. Our legal system has responded by partly recoupling voting and economic ownership. Economic owners can provide voting instructions, which record owners must follow; if no instructions are given, the record owner can vote on routine matters but not major matters.

These rules can provide precedent for a broader effort to reconnect voting rights to economic ownership when technology has severed them. Consider, for example, a derivatives dealer who holds matched shares to hedge the interest leg of an equity swap. As we discussed in Part II.C, the holder of the equity leg of the swap often has informal voting rights. Disclosure aside, these informal rights reconnect voting and economic ownership in a manner analogous to the rules governing record owners. In this situation, the market is usually placing voting rights where they ought to be, so intervention beyond disclosure may not be needed.

One might also extend current rules governing record owners to dealers who hold matched shares to hedge equity swaps.

### 3. Corporation Opt-in

An obvious alternative to mandatory limits on empty voting would be to let corporations decide whether to require a link between economic and voting ownership. [FN237] There is a spectrum of options.

At the incremental end, companies can separate dividend and voting record dates, which will limit the impact of dividend capture strategies on voting rights. Some investors borrow shares around the dividend record date to capture the dividends paid by the company. [FN238] For instance, a quirk *891 in French tax law lets French banks profit from this strategy. Their actions account for a significant fraction of share lending in the United Kingdom. [FN239] Dividend-capture traders have no economic interest in the company. Their borrowing leaves fewer votes in the hands of the lenders--often pension funds and other institutions who might cast informed votes. The July 2005 draft of the ICGN Stock Lending Code of Best Practice urges companies to avoid this problem by separating their dividend and voting record dates. [FN240] Company insiders, however, may have little incentive to take a step that moves more votes into interested hands.

How can a corporation limit empty voting by outside investors? A board-adopted bylaw is problematic from a policy perspective because it can easily be structured to entrench insiders. It also is not clear how much a bylaw could restrict voting rights, given that corporate statutes grant voting rights to record owners without regard to economic ownership. Moreover, case law promises close scrutiny of unilateral board actions affecting shareholder votes. As the Delaware Supreme Court recently stated in MM Cos. v. Liquid Audio, the Delaware courts "have remained assiduous in carefully reviewing any board actions designed to interfere with or impede the effective exercise of corporate democracy by shareholders, especially in an election of directors." [FN241]

A charter amendment is more likely to succeed. Under Delaware law, one-share-one-vote is merely a default rule which applies "unless otherwise provided in the certificate of incorporation." [FN242] Moreover, the most analogous case, Williams v. Geier, suggests that a charter amendment affecting voting rights will receive deferential business judgment review. [FN243] While the dissent in Williams argued for intermediate review under Unocal *892 Corp. v. Mesa Petroleum, [FN244] we suspect that even under this standard, the Delaware courts would allow an anti-empty-vote charter amendment that is supported by a colorable nonentrenchment motive.

On the other hand, stock exchange rules might block some potential charter amendments. Consider, for example, a time-phased voting plan, similar to the one approved in Williams, which limits the voting rights of short-term shareholders. [FN245] This likely would run afoul of NYSE rules, which state that voting rights cannot be "disparately reduced or restricted through any corporate action or issuance" and offer as examples "time phased voting plans" and "capped voting rights plans." [FN246] How the NYSE will apply these rules to new types of charter amendments is necessarily unknown. [FN247]

Some vote-limiting strategies could also run afoul of the federal proxy rules. Consider, for example, a charter provision requiring shareholders to attest that they have economic ownership substantially equal to the number of votes they propose to cast. Given the SEC's broad power to regulate the proxy process, including the form of proxies, such a provision would probably require SEC assent.

Beyond the positive question of what charter amendments are permissible, there are the policy questions: What limits should there be on charter amendments that address empty voting? Within those limits, what should companies do?

A charter provision adopted before a company goes public is likely not to be seriously inefficient, because if it were, the insiders would expect to receive a lower price for their shares. This market price response presumably explains why most U.S. companies go public with a one-share-one-vote structure. Scholars debate, however, the extent to which initial public offering ("IPO") pricing captures more subtle variations in *893 shareholder rights. [FN248] Those doubts about the efficiency of IPO charters would likely include provisions that respond to empty voting.

In addition, the usual arguments for the efficiency of IPO charters do not apply to midstream charter

amendments. For shareholders, voting rights are collectively valuable but individually worth little. Thus, shareholders can sometimes be persuaded, as in the dual-class recapitalizations of the 1980s, to part with these rights for little consideration. [FN249] Companies could propose charter amendments that allow empty voting techniques used by insiders while restricting techniques used by outside investors. Time-phased voting is an example of a rule that could limit outsider empty voting and entrench insiders. One could reduce the bias in the charter amendment process by changing corporate law to allow shareholders to unilaterally amend company charters. [FN250] A further concern is that empty voting allows the shareholder vote on a charter amendment to itself be bought. In the end, for midstream charter amendments, neither boards nor shareholders can be trusted to respond to empty voting in a value-enhancing way.

Thus, the "company choice" approach needs to be cabined. Yet it seems premature to assess how to limit charter amendments without knowing either the dimensions of empty voting or how companies might respond. Some charter provisions might be unobjectionable. Others might be acceptable at the IPO stage, but problematic midstream.

4. State Corporate Law

A separate question from the extent to which companies can limit vote buying in their charters is whether corporate law does or should limit empty voting. As discussed in Part III.D, there are no explicit legal constraints as a general matter. Insiders, however, might be constrained by fiduciary duty. The rigor with which courts police shareholder elections makes it likely that company officers or directors would breach their duty of loyalty if they used corporate funds or the promise of future business to procure votes. In the Hewlett v. Hewlett-Packard proxy fight, for example, *894 Walter Hewlett claimed that H-P management had procured a favorable vote from Deutsche Bank through promises or threats related to future business dealings between the two companies. [FN251] H-P's managers said they had made no promises or threats and Chancellor Chandler concurred. [FN252] Yet it seems likely that procuring votes through a promise or threat would violate management's fiduciary duty and constitute classic vote buying. Suppose, instead, that H-P management had engaged in new vote buying to swing the outcome. There would be no classic vote buying, but the breach of fiduciary duty would be the same. Thus, the courts would likely disallow the procured votes.

Other efforts at empty voting could be hard for courts to reach under current doctrine, however. Consider, for example, a company founder or manager who hedges most of his economic ownership, well before a particular vote arises. Corporate law does not question the exercise of voting rights or even require disclosure of these arrangements; disclosure comes from the federal Section 16 rules. The insider need only avoid tripping the Section 16 short-swing profit forfeiture rules.

Judges may also need to update current doctrine on classic vote buying. The definition of what constitutes vote buying could be expanded to include, for instance, record date capture or acquiring votes by acquiring shares and then shedding economic interest. It seems premature to speculate as to how courts should address empty voting, given the multiple factual contexts in which it can be used. It is not hard, however, to see courts disallowing voting by empty voters with negative economic ownership or negative overall economic interest. This situation is analogous to cases involving voting by directors whose personal interests conflict with the corporation's interests. [FN253] In both situations, the usual presumption that votes will be cast with the goal of increasing shareholder wealth is thrown into doubt.

In addition to limiting on voting rights, state law makers could respond to empty voting. As discussed above, corporation opt-in through a *895 midstream charter amendment is problematic because managers will predictably propose rules that primarily restrict vote buying by outsiders. A more balanced approach might limit voting by anyone, insider or outsider, with substantially greater voting than economic ownership, though this would raise the problem of how to measure economic ownership.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Yet another possible response is to reduce the importance accorded to shareholder votes as a guide to shareholder preferences. Ronald Gilson and Alan Schwartz have argued that elections are inferior to tendering decisions as a guide to shareholder preferences in a control battle. [FN254] The risk that a voting outcome was influenced by empty voting strengthens their case. The degree of deference could change both for control contests and for shareholder proposals, for which an open question is how much attention a board should pay to a nonbinding shareholder proposal favored by a majority shareholder vote. [FN255]

C. Strategies Focused on Voting Architecture

The new vote buying has put stress on a "voting architecture" developed before the emergence of equity derivatives and large-scale share lending. At present, even large institutional investors often misunderstand how share lending affects their voting rights. There are also mechanical problems--the simple act of properly counting votes would fail if all shareholders entitled to vote did so.

Many institutional investors lend through agents, and do not keep track of which shares have been lent. [FN256] Of the thirty-nine institutions which responded to a 2004 ICGN questionnaire on lending practices (including pension funds, mutual funds, banks, insurance companies, and other asset managers), thirty-one had lent shares. [FN257] Most relied on agents and half reported that the agent could lend without the respondent's knowledge. A substantial majority (twenty-one of thirty-one) reported that they "[r]arely, only in special circumstances" recall shares in order to vote *896 them. [FN258] Moreover, attempts to recall shares for voting purposes sometimes failed. Based on this survey and other data, the ICGN's Securities Lending Committee is drafting a lending code of best practice. The current (July 2005) draft has detailed descriptions of how share lending stock affects voting rights, and calls for portfolio managers to be kept up to date on whether their shares have been lent.

Other recent analyses are consistent with the ICGN findings. In March 2005, a report sponsored by the Shareholder Voting Working Group--an industry-wide body convened to improve the voting process in the United Kingdom--stated that some fund managers were not aware that their shares had been lent. [FN259] This was the case both for institutions which lend through agents and for institutions which run their own lending programs, where the lending department may not report loans to portfolio managers. Some institutions may not be aware that lent shares cannot be voted; Working Group head Paul Myners stated that "[i]t is not well enough understood that the vote goes with the share." [FN260] To address this ignorance, the European Commission has proposed that an intermediary who lends shares on behalf of a beneficial owner should inform the owner of the impact of the loan on voting rights. [FN261]

Better information may change lender behavior. CalPERS illustrates. CalPERS earned $103 million from securities lending in the fiscal year that ended June 30, 2004. [FN262] Beginning in 2003, CalPERS has sought to balance its income from securities lending with its "shareholder responsibility" to vote shares. CalPERS currently will not lend shares of certain companies around voting record dates and claims that it will only lend shares to "those who have a legitimate right to the proxy as a benefit of true ownership." [FN263]

Investor interest in preserving voting rights will vary. Any one investor faces a collective action problem: it can profit from lending and its vote probably will not matter. At one end, so-called exclusives (in which a lender agrees to make its portfolio or a portion of its portfolio to a *897 particular borrower) are generally awarded to the highest bidder(s), with little consideration given to other factors. [FN264] At the other extreme, some institutional investors (such as Europe's biggest pension fund) have decided to stop lending shares despite the impact on their returns. [FN265]

For annual meetings, share lenders' decisions whether to hold and vote shares face a technical problem. The record date will often have passed before the company distributes its proxy statement. Hence, investors may not

know what is on the agenda (beyond the usual need to elect directors and approve the auditor). A simple fix is available: companies need merely disclose the expected voting agenda when they announce record dates. To be sure, this same information could encourage record date capture. Still, providing timely information to share lenders seems preferable to the current system. Companies that do not offer this disclosure voluntarily could be required to do so.

    ? further step for share lenders, beyond knowing that they have lent their shares, is knowing to whom they have lent. Today, lenders often lend through agents, or lend to broker-dealers who act on behalf of clients who are unknown to the lender. Efforts are under way to require U.S. banks or broker-dealers that arrange securities loans to advise the borrower of the lender's identity. The concern is with credit risk, since the lender holds the borrower's collateral. [FN266] These efforts could be extended to the converse, advising the lender of the borrower's identity.

    Another concern is mechanical problems associated with voting. [FN267] Currently, brokers who hold shares in street name solicit voting instructions from their clients. Suppose that a broker holds 2 million shares in a pooled account on behalf of margin customers, has lent 1 million shares, but **898 receives voting instructions covering 1.5 million shares. There is no coherent way to ensure that the broker will cast only 1 million votes, nor for the broker to decide whose voting instructions will count, nor for companies to respond if the broker casts more than 1 million votes--a problem known as "overvoting." The NYSE issued a warning on overvoting for the first time in 2004, suggesting growing concern. [FN268] Overvoting has come up in at least two recent proxy fights. In one, an election inspector disallowed 232,000 votes cast by a broker who had overvoted by less than 1000 votes, thus disenfranchising shareholders because of their broker's error; the court upheld the inspector's decision. [FN269] The Securities Transfer Association, a trade group for transfer agents, reviewed 341 contested shareholder votes in 2005--and found overvoting in all of them. [FN270] One company specializing in the oversight of shareholder elections recently said that "[a] lot of the time we have no idea who's entitled to vote and who isn't" and called the situation an "abomination." [FN271]

    One response to overvoting is to limit the broker in our example to 1 million votes (presumably cast in proportion to the voting instructions the broker receives), but for companies to allow this number of votes, even if the broker errs and overvotes. Another better solution might be to let share lenders elect whether to retain voting rights. Borrowers who need voting rights would have to borrow them from lenders who are willing to part with them. Borrowers for whom voting rights are unimportant could borrow shares-without-votes (presumably at lower cost) from lenders who wish to retain their voting rights. These borrowers would, in effect, borrow only the economic return on shares.

    In sum, the current procedures for share voting and share lending need updating, if they are to provide lenders and borrowers with the information and options they need to decide what to do with their voting rights.

**899 D. Strategies Focused on Supply and Demand Forces in the Markets on Which the New Vote Buying Relies

    A third family of regulatory interventions would focus on the supply and demand forces in the markets that support new vote buying, especially the share lending market. On the "supply" side of the market, one could regulate share lenders, lending agents, and derivatives dealers. Conveniently, most of these entities are subject to federal regulation. On the "demand" side, one could regulate the purposes for which hedge funds and other investors could acquire voting rights decoupled from economic ownership. We set out a few possibilities below, focusing primarily on share lending.

    1. Limiting Share Lending and Requiring Institutional Voting

    One approach would focus on institutions' choice to lend shares around record dates. There is already a limitation on mutual fund lending, albeit not adopted with the new vote buying in mind. Under section 17(f) of the

Investment Company Act, a mutual fund must keep its shares and other assets in the custody of a bank or another specified entity. [FN272] In a series of no-action letters, the SEC staff has taken the position that mutual funds violate section 17(f) if they lend at any given time securities representing more than one-third of their assets. [FN273]

Regulators could also encourage lenders to recall shares for voting purposes. Mutual fund and pension fund regulators already do this to some extent. For mutual funds, the SEC has stated in a no-action letter that

> [w]e would not object if voting rights pass with the lending of securities. However, this does not relieve the directors of a fund of their fiduciary obligation to vote proxies. If the fund management has knowledge that a material event will occur affecting an investment on loan, the directors would be obligated to call such loan in time to vote the proxies. [FN274]*900 This approach often lacks bite for annual meetings, partly for the technical reason noted above--the record date has typically passed before the company distributes its proxy statement. For extraordinary meetings, the agenda is known, but we are not aware of SEC efforts to enforce this guidance. Indeed, the SEC's recent, controversial rules requiring mutual funds and investment advisers to disclose how they vote is silent on share lending. The adopting release states that funds and advisers can choose not to vote if the costs of doing so outweigh the benefits, and offers examples involving foreign shares. [FN275]

The Department of Labor ("DoL") takes a similar approach to voting by pension plans subject to the Employment Retirement Income Security Act of 1974 ("ERISA") (basically, company pension plans but not public pension plans). The DoL encourages voting but does not require pension plans to recall lent shares for a material vote. [FN276] For foreign shares, the DoL notes that, although plan fiduciaries have a fiduciary responsibility to vote on issues that may affect share value, the Department recognizes that "the cost of exercising a vote on a particular proxy proposal could exceed any benefit that the plan could expect to gain in voting on the proposal." [FN277]

A similar analysis presumably would apply to a pension plan deciding whether to vote or lend shares in U.S. companies. At the same time, the DoL appears to expect that plan trustees will recall lent shares in order to cast important votes. In a 1979 advisory opinion on a proposal to let employee benefit plans lend their shares, the Department stated that "a breach of fiduciary responsibility . . . might result if the plan trustees do not terminate the loan in time to vote proxies in the event of an occurrence affecting the plan's interest in the security." [FN278] The DoL has also informally *901 advised pension fiduciaries to consider carefully whether to lend shares around a record date for an important vote. [FN279]

One can readily imagine regulators strengthening this guidance, perhaps bringing an enforcement action or two, or extending to other classes of institutional investors either a nudge or a firm requirement to recall lent shares in order to cast important votes. The NYSE's list of major voting matters, on which broker-dealers can vote shares they hold of record only if instructed by clients, could be adapted to this use. [FN280] The desirability of such a rule, however, is unclear. One reason why most institutional investors are usually passive is the conflicts of interest they face when voting. Public pension funds are not beholden to companies, but can have political rather than value-enhancing motives. [FN281] One might get better voting outcomes if institutions could lend shares to unconflicted hedge funds than if institutions are forced to vote themselves.

### 2. Safe Harbor for Voting Instead of Lending Shares

A more modest step would address the dilemma faced by an institutional investor which can either lend shares and profit from doing so, or hold and vote the shares. Lending will often be privately optimal, but collectively, institutional voting could benefit all shareholders. The inability of any one institution to capture the positive externality from voting would produce too much lending. This collective action problem is exacerbated because the revenues from lending are concrete while the value of voting is tough to quantify. Moreover, for institutions that owe fiduciary duties to investors or beneficiaries, standard measures of compliance with these duties focus on the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

interests of one's own principal, not society at large.

The SEC and DoL positions encouraging voting, discussed above, likely provide a quasi-safe harbor against fiduciary duty challenges for mutual funds and ERISA pension funds. But matters are less clear for other lenders. Would the trustees of a public pension plan, a college, or foundation violate their fiduciary obligations by leaving money on the table *902 in order to cast a vote that will benefit all shareholders? The $100 million plus that CalPERS earns annually by lending shares is real money. There is room for safe harbors for institutions that vote shares rather than lend them around a record date.

### 3. Reducing the Attractiveness of Lending Shares and Providing Equity Derivatives

We outline here some of the existing tax and regulatory schemes that affect the share lending and equity derivatives markets. These could be tweaked to make share lending or equity swap transactions less attractive.

Tax considerations already affect share lending. For example, in 2004, the income tax rate on dividends was cut to 15%. Mutual funds pass their income through to investors. If a mutual fund lends shares and thus receives a dividend-equivalent payment instead of dividends, the substitute payment does not qualify for this reduced tax rate. At the margin, these tax consequences reduce the attractiveness of lending shares. [FN282] Similarly, if a broker lends customer shares and receives a dividend-equivalent payment, the customer will receive "payments in lieu of dividends," which are not entitled to the 15% rate. The higher tax on dividend-equivalent payments reduces the attractiveness to customers of holding their shares in margin accounts (from which shares can be lent), and could reduce the supply of lendable shares.

Other significant decisions have also affected the taxation of share lending and equity derivatives. Until Congress acted in 1978, share lending had tax risks for both taxable and tax-exempt investors. [FN283]

SEC Regulation SHO in 2004 requires broker-dealers to "locate" securities available for borrowing before completing a short sale. [FN284] Broker-dealers must also meet net capital requirements which turn in part on their share lending activity, [FN285] as well as the SEC's Customer Protection *903 Rule (Rule 15c3-3), which seeks to protect customers' assets if the firm fails. [FN286] Under this rule, broker-dealers may only lend customers' securities pursuant to a written agreement that meets certain requirements. One can imagine requirements that would discourage lending; for example, annual reapproval of the broker's right to lend shares, or a statement that "we earned $X last year by lending shares from your account and this increased your taxable income by an estimated $Y."

Pension funds are subject to broad ERISA prohibitions on transactions with those who provide financial, advisory, or other services to the fund. The DoL has adopted exemptions which let a pension fund lend securities to banks and broker-dealers under specified conditions. [FN287] Banks must comply with a "Revised Policy Statement on Securities Lending" adopted by the Federal Financial Institutions Examination Council in 1997. [FN288] This statement focuses on how securities lending could affect bank soundness, and governs recordkeeping, internal controls, and credit analysis. These exemptions and regulations could be revisited, with an eye to discouraging lending for empty voting purposes.

Both general safety and soundness criteria and capital adequacy rules take into account securities lending and derivatives activity. The new Basel II accord governing major international banks substantially expands regulatory attention to credit and other derivatives, and includes new internal risk-management standards for controlling the risks posed by derivatives. [FN289] Investment banks face two sets of capital adequacy requirements. Their broker-dealers are subject to general net capital rules. *904 The affiliates that carry out OTC derivative transactions are subject to separate rules. [FN290] Insurance companies are primarily regulated at the state level and states vary in the sophistication of their capital adequacy systems.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

We make no claim that particular tax or regulatory tweaks are desirable, only that they are possible. Tax law, for example, is an unlikely vehicle for corporate governance engineering. In addition to the familiar Stanley Surrey-type arguments for the transparency of direct expenditures versus tax subsidies, the tax law governing financial products is already highly complex. Tolerable internal consistency in tax law has proven difficult to sustain in the face of creative tax-motivated derivatives design. To add a corporate governance goal in this area may entail an even more Rube Goldbergesque system that does not even catch the mouse.

4. Imposing Responsibilities on Share Lenders and Derivatives Providers

Another possible approach would be to put greater responsibility on share lenders or equity swap providers to know their clients, and how their clients will use share borrowing or swap. Banks were major actors in the Enron disaster, offering Enron a variety of exotic financial products that helped Enron present a misleading financial picture to the public. One consequence has been multibillion-dollar payments by major banks to settle class action lawsuits. [FN291] Another is that regulators now expect financial institutions to investigate their clients' use of complex financial products to game disclosure or tax rules. [FN292] In 2003, the SEC brought and settled actions against Citigroup and JPMorgan Chase related to structured finance transactions with Enron and Dynegy, which let Enron and Dynegy report loan proceeds as cash from operating activities. In 2003, the SEC settled a claim that American International Group had committed securities fraud by negotiating a nontraditional insurance policy with Brightpoint, Inc., which **905 let Brightpoint misrepresent actual losses as insured losses. [FN293] The SEC, Federal Reserve Board, and the Office of the Comptroller of the Currency have also advised financial institutions against using financial products to let their customers artificially alter their public financial statements or evade taxes. [FN294] Regulators could take a similar interest in investment banks' creation of instruments designed to facilitate empty voting or evade ownership disclosure rules.

Indeed, for some broker-dealers, current rules already limit the purposes for which shares may be lent. [FN295] Section 7 of the Exchange Act directs the Federal Reserve Board to adopt rules to prevent the excessive use of credit to purchase or carry securities. [FN296] Under Federal Reserve Regulation T, which implements this mandate, broker-dealers who have material dealings with the general public are exempt from the usual margin rules that limit borrowing to acquire securities. [FN297] Other broker-dealers, however, enjoy a more limited "permitted purpose" exemption. [FN298] Under this exemption, these broker-dealers must make a good faith effort to determine the borrower's purpose and cannot lend shares for voting purposes. [FN299] All the Federal Reserve would need to do to greatly limit record date capture is to make share lending for this purpose an illicit purpose for all broker-dealers. Such a ban on share lending for record date capture is already the informal norm in the United Kingdom. [FN300]

A similar "know your customer's purpose" approach could affect the market for some other forms of empty voting. Suppose that a hedge fund comes to a derivatives dealer, seeking to simultaneously buy shares and **906 hedge its economic exposure, ending up with pure votes. One could establish a presumption that the hedge fund's goal is empty voting. Depending on the extent of dealers' obligations to investigate their clients, the hedge fund could use different dealers for the two legs of the transaction, but this would greatly increase transaction costs. [FN301]

5. The Demand Side: Executive Hedging

The demand for vote buying and the products it depends on can be affected by techniques similar to some of those discussed above for the supply side. We offer here one example, involving executive hedging, which usually leaves executives with more voting power than economic interest, though usually still a positive economic interest.

It is unclear how troublesome this "lite voting" is. Most executives' incentives should be decent, except for votes touching on corporate control. But if lite voting is problematic, one could make it less attractive by increasing

the tax consequences of hedging. By hedging, executives have effectively sold a portion of their shares. Section 1259 of the Internal Revenue Code taxes, as constructive sales, a limited set of hedges. [FN302] For example, an equity swap that offsets "substantially all" economic exposure would trigger tax. Section 1259 is easy to avoid, however. Standard zero-cost collars do not trigger it, nor would a swap that offsets less than "substantially all" exposure. [FN303] A more easily triggered standard could limit lite voting. This, however, is easier said than done. Efforts to tax hedging transactions are notoriously difficult.

## VI. CONCLUSION

Shareholder voting is a core aspect of corporate governance. The central role of voting depends on a link between votes and economic *907 interest. Financial innovation, however, is undermining that link. In this Article, we explain how both investors and insiders can engage in large-scale, low-cost, often hidden decoupling of voting rights from economic ownership. This decoupling--the new vote buying--comes in two main flavors, which we term empty voting (more votes than economic ownership) and hidden (morphable) ownership (undisclosed economic ownership accompanied by informal voting rights).

Hedge funds have been pioneers in both forms of new vote buying. Insiders have used decoupling strategies to retain votes while shedding economic exposure. New OTC derivatives developed to transfer risk turn out to be well adapted for transferring votes. A now-massive share lending market serves both the traditional needs of short-sellers and the needs of empty voters.

In the past several years, decoupling has played a central role in the boardrooms of public corporations worldwide. We have found more than twenty publicly known or rumored examples, almost all since 2002. Several involve empty voting by investors with negative economic interests, who would profit if the companies' share prices go down. How many more have remained hidden is unknown.

Not all vote buying is bad. Some could move votes from less informed to better informed investors and thus strengthen shareholder oversight. Still, unless there are ways to separate good vote buying from bad, and allow only the former, the new vote buying, as we call it, threatens to unravel the longstanding connection between voting and economic ownership of shares. Voting outcomes might be decided by hidden warfare among company insiders and major investors, each employing financial technology to acquire votes. Adroitness in such financial technology may increasingly supplant the role of merit in determining the control of corporations.

Moreover, any regulatory response to decoupling must also consider its impact on derivatives and short-selling. Derivatives serve good purposes, as well as ill. Short sellers play a valuable role in securities markets, and depend on the same share lending market that facilitates the new vote buying. The right regulatory response to new vote buying is not obvious.

The first step is to better understand the new vote buying. For that, disclosure is the near term answer. This Article therefore develops an "integrated ownership disclosure" proposal that would both address new vote buying, and partially integrate and greatly simplify the five existing *908 share ownership disclosure regimes. The core of the proposal is to require more consistent, symmetric disclosure of both voting and economic ownership. Our proposal is sensitive to compliance cost; its simplicity, compared to the current regulatory patchwork quilt, may actually reduce the overall costs of regulatory compliance. Indeed, our integrated ownership disclosure proposal is worth considering for its simplicity and internal consistency alone, even apart from its value in relation to new vote buying.

Disclosure may be sufficient to address hidden (morphable) ownership. For empty voting, it will likely prove to be only a first step. Eventually, perhaps soon, other responses to empty voting may be needed. We outline a menu of possible approaches, which fall into three broad families. One family focuses on voting rights themselves. A second

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

addresses the aging architecture of our voting system. The third involves the supply and demand forces in the OTC derivatives and share lending markets on which the new vote buying relies.

Which additional regulatory approaches should be adopted we cannot yet say. That will depend on information as yet unknown, which our disclosure rules are designed to collect. We do know that existing legal and economic theories of the public corporation presume a link between voting rights and economic ownership that can no longer be relied on.

[FNa1]. Copyright © 2006 by Henry T. C. Hu. All rights reserved. Permission is hereby granted for noncommercial reproduction of this Article for classroom use only in nonprofit academic institutions, subject to the condition that the names of the authors, a complete citation, and this copyright notice and grant of permission be included in the copies. This Article is also available at http://ssrn.com/abstract=904004.

[FNaa1]. Allan Shivers Chair in the Law of Banking and Finance, University of Texas Law School. We thank conference and workshop participants at the American Law and Economics Association annual meeting (May 2005); the Boundaries of SEC Regulation Conference (Financial Economics Institute, Claremont McKenna College) (February 2006); Stanford Law School (March 2006); University of Texas, McCombs School of Business (April 2006); the Weil, Gotshal & Manges Roundtable at Yale Law School (April 2006); and the Corporate Law Roundtable at University of Pennsylvania Law School (April 2006). We also thank Iman Anabtawi, Richard Craswell, Jeffrey Gordon, Larry Harris, Linda Hayman, Gérard Hertig, Jennifer Hill, Bruce Johnsen, Charles McCallum, Harold J. Mulherin, Jeffry Netter, Ian Ramsay, Edward Rock, Roberta Romano, David Skeel, Leo Strine, Janet Kiholm Smith, and anonymous peer reviewers of our companion articles for comments and suggestions. We thank Catherine Bellah and Ryan McCormick for their research assistance.

[FNaaa1]. Hayden W. Head Regents Chair for Faculty Excellence, University of Texas Law School, and Professor of Finance, University of Texas, McCombs School of Business.

[FN1]. See, e.g., Frank H. Easterbrook & Daniel R. Fischel, The Economic Structure of Corporate Law 63, 67 (1991) ("[W]hy do shareholders alone have voting rights?...The reason is that shareholders are the residual claimants to the firm's income.").

[FN2]. See, e.g., Stijn Claessens, Simeon Djankov & Larry H.P. Lang, The Separation of Ownership and Control in East Asian Corporations, 58 J. Fin. Econ. 81 (2000); Paul A. Gompers, Joy Ishii & Andrew Metrick, Extreme Governance: An Analysis of Dual-class Firms in the United States (Rodney L. White Ctr. for Fin. Research, Working Paper No. 12-04, 2006), available at http://ssrn.com/abstract=562511.

[FN3]. See, e.g., Blasius Indus. v. Atlas Corp., 564 A.2d 651, 659 (Del. Ch. 1988) (asserting that voting rights are "critical to the theory that legitimates the exercise of power by some (directors and officers) over vast aggregations of property that they do not own"). Cf. MM Cos. v. Liquid Audio, Inc., 813 A.2d 1118 (Del. 2003).

[FN4]. For broader discussions of the challenges that derivatives and modern financial innovations pose to corporate governance principles, see, for example, Henry T. C. Hu, Behind the Corporate Hedge: Information and the Limits of "Shareholder Wealth Maximization," J. Applied Corp. Fin., Fall 1996, at 39 [hereinafter Hu, Behind the Corporate Hedge], and Henry T. C. Hu, New Financial Products, the Modern Process of Financial Innovation, and the Puzzle of Shareholder Welfare, 69 Tex. L. Rev. 1273 (1991) [hereinafter Hu, New Financial Products]. On the distinction between OTC and exchange-traded derivatives, see, for example, Henry T. C. Hu, Misunderstood Derivatives: The Causes of Informational Failure and the Promise of Regulatory Incrementalism, 102 Yale L.J. 1457 (1993) [hereinafter Hu, Misunderstood Derivatives].

[FN5]. We discuss the current ownership disclosure rules infra in Part IV.B.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN6]. We discuss this example and provide citations infra in Part II.B.

[FN7]. We discuss this example and provide citations infra in Part II.B.

[FN8]. See, e.g., Donoghue v. Centillium Commc'ns Inc., 2006 U.S. Dist. LEXIS 13221 (S.D.N.Y. Mar. 28, 2006) (describing variable prepaid forward contracts and discussing how they are regulated under section 16 of the Exchange Act); J. Carr Bettis, John M. Bizjak & Michael L. Lemmon, Managerial Ownership, Incentive Contracting, and the Use of Zero-cost Collars and Equity Swaps by Corporate Insiders, 36 J. Fin. & Quantitative Analysis 345 (2001) (discussing zero-cost collars and equity swaps); Rachel Emma Silverman & Jane J. Kim, IRS Targets Strategy for Wealthy Executives, Wall St. J., Feb. 9, 2006, at D1 (describing variable prepaid forwards).

[FN9]. We discuss this example and provide citations infra in Part II.C.

[FN10]. Compare Securities Amendment Act 1988, § 26 (N.Z.), with Exchange Act § 13(d), 15 U.S.C. § 78m(d) (2000).

[FN11]. We discuss a number of other uses of morphable voting rights infra in Part II.C.

[FN12]. Schreiber v. Carney, 447 A.2d 17, 23 (Del. Ch. 1982).

[FN13]. SEC Form 13F, Information Required of Institutional Investment Managers Pursuant to Section 13(f) of the Securities Exchange Act of 1934 and Rules Thereunder, 17 C.F.R. § 249.325 (2005) [hereinafter Form 13F].

[FN14]. Schedule 13D, 17 C.F.R. § 240.13d-101 (2005) [hereinafter Schedule 13D]; Schedule 13G, 17 C.F.R. § 240.13d-102 (2005) [hereinafter Schedule 13G].

[FN15]. News reports suggest that the Securities and Exchange Commission ("SEC") is considering an enforcement action against Perry, presumably under Section 13(d) rules. See, e.g., Ianthe Jeanne Dugan, Hedge Funds Draw Scrutiny over Merger Play, Wall St. J., Jan. 11, 2006, at C1.

[FN16]. Exchange Act § 16, 15 U.S.C. § 78p (2000 & Supp. 2002).

[FN17]. For an example of how to hedge a share position with options, see, for example, Richard A. Brealey & Stewart C. Myers, Principles of Corporate Finance 546-52 (8th ed. 2006).

[FN18]. We discuss recent regulatory responses to the new vote buying in the United Kingdom and Hong Kong infra in Part IV.C. The only public sector recognition in the United States that we know of is a July 2005 speech by Vice Chancellor Leo Strine, where he stated that what we term "empty voting" and "related factors" are "making it difficult for corporate law makers to avoid a fundamental look" at corporate law. See David Marcus, Thinking Big Thoughts, Corp. Control Alert, Aug.-Sept. 2005, at 6, 6.

[FN19]. We discuss these rules infra in Part IV.

[FN20]. See, e.g., Robert A.G. Monks & Nell Minow, Corporate Governance (2001); Bernard S. Black, Agents Watching Agents: The Promise of Institutional Investor Voice, 39 UCLA L. Rev. 811, 830-49 (1992).

[FN21]. See Susan E.K. Christoffersen, Christopher C. Geczy, David K. Musto & Adam V. Reed, Vote Trading and Information Aggregation (Jan. 20, 2005) (unpublished manuscript), available at http://ssrn.com/abstract=686026.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN22]. See, e.g., Martin Lipton & Steven A. Rosenblum, A New System of Corporate Governance: The Quinquennial Election of Directors, 58 U. Chi. L. Rev. 187, 210 (1991) (arguing that managers seeking to satisfy the short-term expectations of institutional investors sacrifice investments for the future, such as research and development and capital expenditures); Martin Lipton, Is This the End of Takeovers?, Wash. Post, Nov. 6, 1988, at H2 (referring to "abusive" takeovers as "forcing [American companies] to focus on short-term stock market results"); Martin Lipton et al., Wachtell, Lipton, Rosen & Katz, Be Prepared for Attacks by Hedge Funds (Dec. 21, 2005), http:// www.realcorporatelawyer.com/pdfs/wlrk122205-02.pdf (referring to hedge fund attackers as "self-seeking, short-term speculators looking for a quick profit at the expense of the company and its long-term value"). For an early discussion of the short-termism claim (and the related issue of conflicts among "generations" of shareholders), see, for example, Hu, New Financial Products, supra note 4, at 1278-87.

[FN23]. See Jenny Davey, Laxey Faces Defeat in Attempt to Break Up British Land, Times (London), July 17, 2002, at 23 (Business); Martin Dickson, Not City Cricket, Fin. Times (London), Sept. 28, 2004, at 22 (Companies) (reporting on Hermes).

[FN24]. An initial version of our three articles was first presented publicly in May 2005, at the annual meeting of the American Law and Economics Association. See Henry T. C. Hu & Bernard S. Black, Empty Voting: Shareholder Voting Rights and Coupled Assets (2005) (unpublished manuscript, on file with authors). Subsequent versions were posted on SSRN, beginning on January 6, 2006. See Henry T. C. Hu & Bernard S. Black, Hedge Funds, Insiders, and Empty Voting: Decoupling of Economic and Voting Ownership in Public Companies (European Corp. Governance Inst., Law Working Paper No. 56/2006, 2006), available at http://ssrn.com/abstract=874098 [hereinafter Hu & Black, Hedge Funds and Empty Voting].

[FN25]. Henry T. C. Hu & Bernard S. Black, Empty Voting and Hidden Ownership: Taxonomy, Implications, and Reforms, 61 Bus. Law. (forthcoming 2006), available at http://ssrn.com/abstract=887183.

[FN26]. See, e.g., David Marcus, Hedge Fund Voting: The Devil We Don't Know, Corp. Control Alert, Mar.-Apr. 2006, at 10. Other articles or working drafts in the legal literature that have either discussed or touched on this issue include Shaun Martin & Frank Partnoy, Encumbered Shares, 2005 U. Ill. L. Rev. 775; David Skeel, Behind the Hedge, Legal Affairs, Nov.-Dec. 2005, at 28; Marcel Kahan & Edward B. Rock, Hedge Funds in Corporate Governance and Corporate Control (Apr. 9, 2006) (preliminary draft, on file with authors).

[FN27]. Frank H. Easterbrook & Daniel R. Fischel, Voting in Corporate Law, 26 J.L. & Econ. 395, 410 (1983).

[FN28]. We discuss these supply and demand factors infra in Parts II.E and V.D.

[FN29]. We also generally leave aside the distinctions between the welfare of the corporation and the welfare of the shareholder, between shareholder welfare and shareholder wealth, conflicts involving different kinds of shareholders (for example, diversified versus undiversified, hedged versus unhedged, and holders of general common stock versus holders of tracking stock versus holders of preferred stock), and conflicts among different "generations" of shareholders (for example, short term versus long term). See, e.g., Hu, Behind the Corporate Hedge, supra note 4; Henry T. C. Hu, Hedging Expectations: "Derivative Reality" and the Law and Finance of the Corporate Objective, 73 Tex. L. Rev. 985 (1995) [hereinafter Hu, Hedging Expectations].

[FN30]. We discuss the Perry-Rubicon example supra in Part I and infra in Part II.C.

[FN31]. We discuss this example and provide citations infra in Part II.B.

[FN32]. In some cases, our descriptions in this Article of new vote buying examples rely in part on news reports that

refer to market rumors or other sources which may not be accurate. Our discussion of the Perry-Mylan situation is based on Perry Corp., Schedule 13D as to Mylan Laboratories, Inc. (Nov. 19, 2004); Complaint, High River Ltd. P'ship v. Mylan Labs., Inc., 353 F. Supp. 2d 487 (M.D. Pa. Dec. 10. 2004) (No. 04-2677) [hereinafter, Icahn Complaint]; Jesse Eisinger, Icahn Cries Foul at Perry's No-risk Play in Takeover Fight, Wall St. J., Dec. 15, 2004, at C1; Christopher Faille, Perry Plans to Sell Stake in Mylan, Hedge World Daily News, Mar. 23, 2005; Andrew Ross Sorkin, Icahn Accuses a Hedge Fund of Stock Manipulation, N.Y. Times, Dec. 13, 2004, at C1; Andrew Ross Sorkin, Nothing Ventured, Everything Gained, N.Y. Times, Dec. 2, 2004, at C1 [hereinafter Sorkin, Nothing Ventured].

[FN33]. See Andrew Ross Sorkin, For a Takeover Artist, One Bluff Too Many?, N.Y. Times, Nov. 28, 2004, § 3, at 6; Scott Stuart, Mylan, King and Murphy's Law, Corp. Control Alert, Apr. 2005, at 8. In February 2005, after Mylan abandoned its acquisition plans, Citadel sold its 4.4% stake in Mylan. Business Briefs, Pittsburgh Post-Gazette, Feb. 15, 2005, at D8.

[FN34]. See Icahn Complaint, supra note 32.

[FN35]. Tara Croft, Mylan: King Deal Doomed, Daily Deal, Jan. 12, 2005. Mylan dropped its plans to acquire King in February 2005. In May 2005, Perry disclosed that it had sold its Mylan shares. See Icahn & Co.: Icahn Discontinues Litigation Against Perry Corp. and Mylan Laboratories, Physician L. Wkly., June 29, 2005, at 9.

[FN36]. See In re MONY Group, Inc. S'holder Litig., 853 A.2d 661 (Del. Ch. 2004); In re MONY Group. Inc. S'holder Litig., 852 A.2d 9 (Del. Ch. 2004). AXA issued the bonds to finance its acquisition of MONY.

[FN37]. See Icahn Complaint, supra note 32, at 4; Sorkin, Nothing Ventured, supra note 32.

[FN38]. See Louise McCoach, The Glencore Decision: A Case for Reform? (Nov. 2005) (unpublished manuscript, on file with authors) [hereinafter McCoach 2005]; Louise McCoach, The Glencore Decision: A Case for Reform? An Update (Mar. 2006) (unpublished manuscript, on file with authors) [hereinafter McCoach 2006] (discussing Coles Myer and other Australian new vote buying instances).

[FN39]. See, e.g., Robert F. Bruner, Deals from Hell: M&A Lessons That Rise Above the Ashes (2005); Ronald J. Gilson & Bernard S. Black, The Law and Finance of Corporate Acquisitions 363-97 (2d ed. 1995); Sara B. Moeller, Frederik P. Schlingemann & René M. Stulz, Wealth Destruction on a Massive Scale? A Study of Acquiring-firm Returns in the Recent Merger Wave, 60 J. Fin. 757 (2005).

[FN40]. Our discussion of this example is based on Liberty Media Corp., Schedule 13D as to News Corporation Limited (Jan. 20, 2004) [hereinafter Liberty Media, January 2004 13D]; Liberty Media Corp., Schedule 13D/A (Amendment No. 1) as to News Corporation Limited (Nov. 3, 2004); Tim Burt, Prince Pledges to Aid Murdoch, Fin. Times (London), Nov. 18, 2004, at 32 (Companies); Geraldine Fabrikant, In Surprise, Liberty Media Fattens Stake in News Corp., N.Y. Times, Jan. 22, 2004, at C1; Geraldine Fabrikant, Liberty Media Fuels Speculation by Adding to News Corp. Stake, N.Y. Times, Jan. 23, 2004, at C3; Mike Farrell, Why Liberty Halted Its "Forward" Pass, Multichannel News, Sept. 26, 2005, at 65; Martin Peers, News Corp.'s Net Increases by 27% on TV Strength, Wall St. J., Nov. 4, 2004, at B3; Martin Peers, News Corp. Offers About $5.7 Billion to Buy Rest of Fox, Wall St. J., Jan. 11, 2005, at C4; Robert Bennett et al., Liberty Media Group, Conference Call on Q3 2004 Liberty Media Group Earnings (Nov. 9, 2004), in FD (Fair Disclosure) Wire, Nov. 2004; Liberty Media Corporation Announces Early Termination of Total Return Swap with Merrill Lynch, PR Newswire, Dec. 20, 2004, http://www.prnewswire.com/cgi-bin/stories.pl?ACCT=104&STORY=/www/story/12-20-2004/0002669843&EDATE= [hereinafter Early Termination].

[FN41]. Technically, Liberty Media held two kinds of American Depository Receipts ("ADRs"). One ADR

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

represented four "Ordinary Shares"--shares with full voting rights. We refer to Ordinary Shares simply as "voting shares." The other ADR represented four "Preferred Limited Voting Shares"--shares with limited voting rights. We refer to these shares simply as "nonvoting shares." See Liberty Media, January 2004 13D, supra note 40, at 2. In November 2004, News Corp. reincorporated in Delaware and its new "class A" (nonvoting) shares and "class B" (voting) shares began trading on the New York Stock Exchange. News Corp., Form 8-K, Exhibit 99.1 (Nov. 12, 2004) ("News Corporation Completes Reincorporation to United States.").

[FN42]. Liberty Media had not previously disclosed its ownership of nonvoting shares. Thus, in our terminology, it had hidden ownership. This ownership might have been morphable as well, perhaps by swapping nonvoting shares for voting shares, as Liberty Media in fact did later in 2004. See infra note 43.

[FN43]. In November 2004, Liberty Media entered into and publicly disclosed an equity swap with Merrill Lynch under which, upon receiving certain government approvals, Liberty Media would acquire about 8% of the News Corp. voting shares in exchange for nonvoting shares; its 17% voting interest would then roughly correspond to its economic interest. In December 2004, Liberty Media announced it would terminate the swap early and acquire the voting shares. Early Termination, supra note 40. In September 2005, one analyst asserted that Liberty Media had hedges on 7% of its News Corp. voting shares and 19% of its nonvoting shares. Farrell, supra note 40.

[FN44]. Dennis Simon, In Splitting Leadership, Look at CEO Ownership, Directors & Boards, Winter 2004, at 24, 25.

[FN45]. While corporate executives will generally prefer to take less risk than diversified shareholders would consider optimal, the opposite may be true in certain circumstances. For further discussion of this and related issues such as when public corporations should hedge against risk see, for example, Hu, Hedging Expectations, supra note 29, at 1024-27, 1033-40; Hu, Misunderstood Derivatives, supra note 4, at 1492-94; Henry T. C. Hu, Risk, Time, and Fiduciary Principles in Corporate Investment, 38 UCLA L. Rev. 277, 287-95, 314-32, 365-66, 385-86 (1990).

[FN46]. If the company pays no dividends and the put and call options have the same exercise price and expiration date, this transaction is economically equivalent to selling shares. More commonly, the call option exercise price is somewhat above the put option exercise price, hence the term "collar" (because economic exposure is limited to the range between the call exercise price and the put exercise price). In the zero-cost version of the collar transaction, the proceeds from the sale of the call equal the cost of the put, so the insider pays no net amount to initiate the collar.

[FN47]. Bettis et al., supra note 8, at 346. Anecdotal evidence is consistent with the pervasiveness of such hedging. One observer noted in 2001 that the demand for equity derivatives by American clients had "exploded." Adam Green, Peter Holland & Cornelia Spring, Why Wealthy Clients Use Equity Derivatives, Risk, Dec. 2001, at S11. Paul Allen, cofounder of Microsoft, avoided losing approximately $970 million on 76 million Microsoft shares through the use of collars. Compensation Resources, Report on Salary Surveys, Feb. 2001, at 8. Robert Belfer, a director of Enron, used collars to lock in floor prices between $55 and $66 for about 1 million Enron shares. Cassell Bryan-Low, Enron Director Hedged Bets, Wall St. J., Feb. 20, 2002, at C20.

[FN48]. See Ronald Fink, Overexposed, CFO Mag., Apr. 2006, at 85.

[FN49]. See, e.g., Del. Code Ann. tit. 8, § 213(a) (2005).

[FN50]. For a discussion of customary share lending practices, see, for example, Bond Mkt. Ass'n, Master Securities Loan Agreement (2000) (under U.S. law); Int'l Sec. & Lending Ass'n, Global Master Securities Lending Agreement (2000) (under U.K. law); Gene D'Avolio, The Market for Borrowing Stock, 66 J. Fin. Econ. 271 (2002); Darrell Duffie, Nicolae Garleanu & Lasse Heje Pedersen, Securities Lending, Shorting, and Pricing, 66 J. Fin. Econ. 307 (2002). For descriptions of the share lending market, see Jeff Cohen, David Haushalter & Adam V. Reed,

Mechanics of the Equity Lending Market, in Short Selling: Strategies, Risks, and Rewards 9 (Frank J. Fabozzi ed., 2004); Mark C. Faulkner, An Introduction to Securities Lending, in Securities Finance: Securities Lending and Repurchase Agreements 3 (Frank J. Fabozzi & Steven V. Mann eds., 2005) [hereinafter Securities Finance & Lending]. On the history of share lending, see Kevin Burke & George Martello, The Evolution of Securities Lending, in Securities Lending and Repurchase Agreements 1 (Frank J. Fabozzi ed., 1997).

[FN51]. By adopting Regulation SHO in 2004, the SEC sought to limit "naked shorting," the practice of selling shares short without borrowing the necessary shares, thus creating the risk of failing to deliver shares to the buyer. SEC Short Sales Rule, Exchange Act Release No. 34-50103, 69 Fed. Reg. 48,008 (Aug. 6, 2004) (amending or adopting Securities Act Rules 105, 200-203, 17 C.F.R. § 239.105, .200-.203 (2005)) [hereinafter Short Sales, Exchange Act Release No. 34-50103]. This effort has not been totally successful. See Aaron Lucchetti & Kara Scannell, Despite SEC Rules, a Small Amount of Naked Shorting Appears to Persist, Wall St. J., Apr. 13, 2006, at C1.

[FN52]. D'Avolio, supra note 50, at 273.

[FN53]. See Christoffersen et al., supra note 21. D'Avolio, supra note 50, reports that the borrowing cost was less than 1% per year for 91% of the companies in his sample. Borrowing may be cheap on average, but not in every situation. In one recent case, Charter Communications took the unusual step of issuing 150 million shares in a public offering, supposedly to accommodate hedge funds frustrated by borrowing costs. Charter Share Issue Approved by the SEC, Wall St. J., July 19, 2005, at C3; Peter Grant, SEC Is Slow to Approve Charter's Odd Stock Sale, Wall St. J., June 24, 2005, at C3.

[FN54]. See Kate Burgess & James Drummond, Transparency Finds a High-level Champion: A Captain of Industry Calls on Investors to Lead by Example on Accountability, Fin. Times (London), Apr. 22, 2005, at 22 (Companies).

[FN55]. Our discussion of the Laxey Partners-British Land situation is based on Florian Gimbel, The Big Picture: Uneasy Bedfellows with Money in Mind: Does Investing in Hedge Funds Compromise Pension Funds' Corporate Governance Activity?, Fin. Times (London), Apr. 19, 2004, at 3 (FT Report); Jim Piccitto, Laundering Money in the Free World, Global Investor, Dec. 1, 2004, at SS36; John Ritblat, Letter to the Editor, British Land Buy-back Well Under Way, Fin. Times (London), Jan. 13, 2003, at 18; Simon Targett, Top Pension Funds Plan Securities Lending Code, Fin. Times (London), June 14, 2004, at 1 (FT Report); John Waples, Ritblat Hits at CSFB and Laxey for Vote "Conspiracy," Sunday Times (London), July 21, 2002, at 1 (Business). Gimbel, supra, suggests that Laxey acquired voting power through a combination of record date capture and other strategies.

[FN56]. See Ritblat, supra note 55.

[FN57]. Our discussion of the Henderson Investment situation relies on Asian Hedge Funds Undermine Lending, Int'l Sec. Fin., Mar. 1, 2006, at 10(1); Patricia Cheng, Hedge Funds Find Loophole in H.K., Int'l Herald Trib., Feb. 16, 2006, at 18; Francesco Guerrera & Florian Gimbel, Henderson Stock Lending Fears, Fin. Times (Asia ed.), Feb. 1, 2006; Alex Frew McMillan, Hong Kong Studying Voting Issues on Borrowed Shares, Infovest21 News, Jan. 25, 2006. The news reports do not name the hedge fund that may have single-handedly blocked the buyout.

[FN58]. We thus disagree with Easterbrook and Fischel, who ignore the difference between the record date and the voting date. They claim that a person who buys shares "the day before the election, votes them, and sells the day after the election" will bear "the gains or losses attributable to the election." Easterbrook & Fischel, supra note 27, at 411 n.41. This is simply not so.

[FN59]. Our discussion of the Perry-Rubicon situation is based on Ithaca (Custodians) Ltd. v. Perry Corp., [2003] 2 N.Z.L.R. 216 (H.C.), rev'd, [2004] 1 N.Z.L.R. 731 (C.A.); [2004] 2 N.Z.L.R. 182 (C.A.) (refusing conditional leave

to appeal).

[FN60]. See supra note 10 and accompanying text.

[FN61]. Ithaca (Custodians) Ltd., 2 N.Z.L.R. 216, P 232.

[FN62]. Ithaca (Custodians) Ltd., 1 N.Z.L.R. 731, P 9.

[FN63]. Id. P 66.

[FN64]. Id. P 77.

[FN65]. See, e.g., Michael D. Dayan & Glen A. Rae, OTC Equity Derivatives: Hedging Transactions and Equity Swaps, in Practicing Law Inst., Swaps & Other Derivatives in 2004, at 284 (Edward J. Rosen ed. 2004) (diagramming an equity swap and its hedging).

[FN66]. For a contrary example, where an unhappy customer sued Citibank for changing the way it hedged equity swaps and other equity derivatives, see Caiola v. Citibank, N.A., 295 F.3d 312 (2d Cir. 2002).

[FN67]. See Code Comm., U.K. Panel on Takeovers & Mergers, Dealings in Derivatives and Options: Outline Proposals Relating to Amendments Proposed to Be Made to the Takeover Code and the SARs § 3.3 (Jan. 2005) [hereinafter U.K. Takeover Panel, January 2005 Proposal].

[FN68]. Id. § 3.4.

[FN69]. Our discussion of BAe Systems-Alvis is based on id.; Kate Burgess, Panel Plans Changes to Disclosure Rules, Fin. Times (London), Jan. 8, 2005, at 2 (Companies). Our discussion of Philip Green-Marks & Spencer is based on U.K. Takeover Panel, January 2005 Proposal, supra note 67, § 3.4(b); Jeremy Warner, Outlook: Uncharted Waters, Independent (London), July 14, 2004, at 39 (Business).

[FN70]. The U.K. instrument corresponding to a U.S. equity swap is known as a "contract for differences" or "CFD." In this article, we use the term "equity swap" to refer to both instruments.

[FN71]. In its comments to the Code Committee, the International Swaps and Derivatives Association did not challenge the Committee's description of market expectations. It mildly disputed the Committee's discussion of the derivatives dealers' interests in voting (or accepting a takeover bid) in accordance with their clients' preferences, explaining that the Committee's description was "somewhat simplistic." Letter from Richard Metcalfe, Int'l Swaps & Derivatives Assoc., to Panel on Takeovers & Mergers 5 (Feb. 28, 2005) (on file with authors).

[FN72]. Our discussion of Sears Canada is based on Jesse Eisinger, In Canada, a Face-off over Sears, Wall St. J., Apr. 12, 2006, at C1.

[FN73]. Id.

[FN74]. Our discussion of the Agnelli-Fiat transactions is based on IFIL-Exor Investigation Merrill Lynch Milan HQ Searched, Il Sole 24 Ore (Italy), Mar. 10, 2006 (IFIL is the Agnelli family vehicle that acquired the swap position); IFIL Receives Consob Equity Swap Report, Il Sole 24 Ore (Italy), Feb. 23, 2006; Johanna Iivonen, Italian Stock Market Regulator Rules Against IFIL in Fiat Case, World Markets Analysis, Feb. 23, 2006; Italy's Consob Rules IFIL Not Obliged to Bid for Fiat, but Swap Deal Probed, AFX Int'l Focus, Feb. 8, 2006; Still in the Driving

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

79 SCALR 811                                                                                   Page 67
79 S. Cal. L. Rev. 811
**(Cite as: 79 S. Cal. L. Rev. 811)**

Seat--Italian Finance, Economist, Oct. 15, 2005; Three Investigated in IFIL-Exor Equity Swap Affair, Il Sole 24 Ore (Italy), Feb. 25, 2006.

[FN75]. Our discussion of Austral Coal is based on Glencore Int'l AG v. Takeovers Panel (2006) F.C.A. 274 [hereinafter Glencore Int'l AG]; McCoach 2005, supra note 38; McCoach 2006, supra note 38; Nigel Morris, Director, Takeovers Panel, Austral Coal Ltd. 02--Decision and Review Application (July 1, 2005), http://www.takeovers.gov.au/display.asp?ContentID=956 [hereinafter Austral Coal Takeovers Panel Decision].

[FN76]. Glencore Int'l AG, supra note 75.

[FN77]. Our discussion of Brierley-Fairfax Holdings is based on McCoach 2005, supra note 38; McCoach 2006, supra note 38.

[FN78]. See, e.g., Arturo Bris, Toeholds, Takeover Premium, and the Probability of Being Acquired, 8 J. Corp. Fin. 227, 227-28 (2002); Sandra Betton, B. Espen Eckbo & Karin S. Thorburn, The Toehold Puzzle (European Corp. Governance Inst., Finance Working Paper No. 85/2005, 2005), available at http://ssrn.com/abstract=715601.

[FN79]. See Sandra Betton & B. Espen Eckbo, Toeholds, Bid Jumps, and Expected Payoffs in Takeovers, 13 Rev. Fin. Stud. 841, 878-81 (2000).

[FN80]. Bris, supra note 78, at 244.

[FN81]. Bryan Frith, Cunning Predators Hide Behind Swaps, Australian, Mar. 11, 2005, at 18; Andrew Trounson, BHP Bid for the Long Haul--Xstrata Outgunned in Showdown for WMC Resources, Australian, Mar. 9, 2005, at 35.

[FN82]. Our discussion of Livedoor-Nippon Broadcasting is based on Michiyo Nakamoto, Investment Banking: Historic Battle Establishes Combat Rules, Fin. Times (London), June 27, 2005, at 5 (FT Report); David Pilling, White Knight New Villain of Fuji TV Saga, Fin. Times (London), Mar. 28, 2005, at 21 (Companies); Softbank to Return Fuji Shares, Daily Yomiuri (Tokyo), Apr. 23, 2005, at 8; Martin Foster, Livedoor Suffers Blow in Bid, TheDeal.com, Mar. 24, 2005, http://www.thedeal.com/NASApp/cs/CS? pagename=TheDeal/TDDArticle/StandardArticle&bn=NULL&c=TDDArticle&cid =111624424202; Kyodo News Service, Softbank Investment becomes Fuji TV's Largest Shareholder, Forbes.com, Mar. 24, 2005, http:// www.forbes.com/infoimaging/feeds/infoimaging/2005/03/24/infoimagingcomtex_2005_     03_24_ky_0000-5439- .industrytopstories.merg.html.

[FN83]. See Nippon Broadcasting, Softbank Investment End Fuji TV Stock Loan Deal, AFX News, June 30, 2005; Softbank to Return Fuji Shares, supra note 82. We were unable to find news reports on what happened to the shares that Nippon loaned to Daiwa.

[FN84]. Our discussion of the Deutsche Boerse-LSE situation is based on Silvia Ascarelli, A Market Marriage in Europe?; Deutsche Boerse's Courtship of London Exchange May Elicit a Rival, Wall St. J., Dec. 14, 2004, at C18; Norma Cohen, Investors Warn D Borse Board, Fin. Times (London), Feb. 22, 2005, at 21 (Companies & Markets); Norma Cohen & Patrick Jenkins, D Borse Acts to Heal TCI Rift, Fin. Times (London), Apr. 21, 2005, at 25 (Companies); William Hutchings, Deutsche Börse Bows To Hedge Fund Pressure, Fin. News Online, Feb. 1, 2005; Seifert's Second Proposal, Economist, Dec. 18, 2004; Winners and Losers: CEO Werner Seifert Sheds Some Light on the Reasons Why Deutsche Borse Decided to Drop Its L1.3 Billion Bid for the London Stock Exchange, Guardian (U.K.), Mar. 14, 2005, at 11.

[FN85]. See Jason Singer, Ivy Leave: Yale Parts Ways with Hedge Fund, Wall St. J., Mar. 29, 2006, at C1.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN86]. Aside from possibly infuriating superiors and shareholders, the transaction could potentially be considered a deemed sale of Ford shares and trigger short-swing profit recapture under Section 16.

[FN87]. On the related question of whether executives can use such substitutes without running afoul of insider trading laws, see Ian Ayres & Joe Bankman, Substitutes for Insider Trading, 54 Stan. L. Rev. 235 (2001).

[FN88]. See Joanne M. Hill, The History of Equity Derivatives, in The Handbook of Equity Derivatives 33-48 (Jack Clark Francis, William W. Toy & J. Gregg Whittaker eds., 1995).

[FN89]. See International Swaps and Derivatives Association, Summary of Recent Survey Results, http://www.isda.org/statistics/recent.html (last visited May 8, 2006).

[FN90]. For a discussion of the modern process of financial innovation and difficulties in framing regulatory responses, see, for example, Hu, Misunderstood Derivatives, supra note 4.

[FN91]. See, e.g., Heather McKenzie, Securities Lending Grows Up, Fin. News Online, Oct. 2, 2000; Gene Picone & Richard Warne, A Coming of Age, Pensions Mgmt., Sept. 1, 2003. See also supra note 50 (sources on the share lending market and the history of share lending).

[FN92]. See Kate Burgess, James Drummond & Alex Skorecki, UK Stock Lending More Than Doubles, Fin. Times (London), Nov. 17, 2004, at 22 (Companies) (reporting estimates by Crestco, the U.K. share trading settlement agency).

[FN93]. See Phyllis Plitch, Funds' Lending Sparks "Short" Debate, Wall St. J., May 25, 2005, at B2 (citing data tracked by the Astec Consulting Group).

[FN94]. Standard margin account agreements allow brokers to lend customer shares. See infra text accompanying note 266.

[FN95]. See Faulkner, supra note 50, at 17.

[FN96]. There is no reliable data on the number of hedge funds or their assets under management. See SEC, Implications of the Growth of Hedge Funds-- Staff Report to the United States Securities and Exchange Commission 1 n.2 (2003) [hereinafter SEC, Hedge Fund Report]. For the $1 trillion estimate in mid-2005, see At Deadline; CalSTRS Boosts Emerging, Pensions & Investments, Aug. 8, 2005, at 1 (reporting an estimate by Tremont Capital). It is clear, however, that the industry has grown rapidly. The Hennessee Group estimates that hedge fund assets grew from $50 billion in 1993 to $592 billion in 2003. SEC, Hedge Fund Report, supra, at 1 n.4.

[FN97]. See, e.g., Riva D. Atlas, Some Funds Taking Role Far Beyond Just Investor, N.Y. Times, Aug. 16, 2005, at C1; Lina Saigol, Hedge Funds Are Very Keen to Flex Their Secretive Shareholding Muscle, Fin. Times (London), Aug. 9, 2005, at 19 (Companies); Henny Sender, Hedge Funds: The New Corporate Activists, Wall St. J., May 13, 2005, at C1.

[FN98]. We discuss these reforms infra in Parts IV.C and V.D.

[FN99]. We discuss these market conventions supra in Part II.C.

[FN100]. See Neil Pathak & Weyinmi Popo, Cash-settled Equity Swaps in Takeovers, Freehills, June 30, 2005,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http:// www.freehills.com/publications/publications_5108.asp.

[FN101]. Chin-chong Liew, Disclosure Requirements for Purely Cash-settled Derivatives, H.K. Law., June 2000, at 59.

[FN102]. 2 Edward F. Greene et al., U.S Regulation of the International Securities and Derivatives Markets § 13.02(2) n.25 (7th ed. 2004).

[FN103]. We discuss Perry-Mylan supra in Part II.B, and Perry-Rubicon and Glencore-Austral Coal supra in Part II.C.

[FN104]. See Bettis et al., supra note 8, and our discussion of insider hedging supra in Part II.B.

[FN105]. See Christoffersen et al., supra note 21, and our discussion of this research infra in Part III.B.

[FN106]. See Bryan Frith, Portman Trading Should Be Reviewed, Australian, Mar. 4, 2005, at 22.

[FN107]. See Richard Fletcher, US Hedge Fund Builds Up Large Stake in DFS, Sunday Times (London), Aug. 22, 2004, at 2.

[FN108]. See, e.g., Martin Dickson, The Secret City Battle over Canary Wharf: Role of Derivatives in Takeover Battles, Fin. Times (London), Apr. 24, 2004, at 2 (Companies); Lina Saigol, UBS Wins Takeover Panel Appeal over Canary Vote, Fin. Times (London), Apr. 24, 2004, at 2 (Companies).

[FN109]. See Bank of England, Stock Lending and Repo Committee, Summary of Meeting Held at the Bank of England (Dec. 11, 2002), http:// www.bankofengland.co.uk/markets/gilts/slrcdec02.pdf.

[FN110]. See, e.g., Robert Charles Clark, Corporate Law 93-95, 389-400 (1986); Easterbrook & Fischel, supra note 27, at 403-06, 408-10.

[FN111]. See Clark, supra note 110, at 390; Easterbrook & Fischel, supra note 27, at 408-10.

[FN112]. See, e.g., Ronald J. Gilson, Evaluating Dual Class Common Stock: The Relevance of Substitutes, 73 Va. L. Rev. 807, 808-09 (1987).

[FN113]. Blasius Indus. v. Atlas Corp., 564 A.2d 651, 659 (Del. Ch. 1988).

[FN114]. Id. at 661. See also MM Cos. v. Liquid Audio, Inc., 813 A.2d 1118, 1121, 1131 (Del. 2003).

[FN115]. MM Cos., 813 A.2d at 1127 (quoting Giuricich v. Emtrol Corp., 449 A.2d 232, 239 (Del. 1982)).

[FN116]. Ronald J. Gilson & Alan Schwartz, Sales and Elections as Methods for Transferring Corporate Control, 2 Theoretical Inquiries in Law 783 (2001).

[FN117]. See Oliver Hart, Firms, Contracts, and Financial Structure 95-125 (1995); Sanford J. Grossman & Oliver D. Hart, One Share--One Vote and the Market for Corporate Control, 20 J. Fin. Econ. 175 (1988); Milton Harris & Artur Raviv, Corporate Governance: Voting Rights and Majority Rules, 20 J. Econ. Fin. 203, 226-28 (1988).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

79 SCALR 811                                                                                    Page 70
79 S. Cal. L. Rev. 811
**(Cite as: 79 S. Cal. L. Rev. 811)**

[FN118]. See Andrei Shleifer & Robert W. Vishny, Large Shareholders and Corporate Control, 94 J. Pol. Econ. 461, 463 (1986).

[FN119]. See Lucian Arye Bebchuk, Reinier Kraakman & George G. Triantis, Stock Pyramids, Cross-ownership, and Dual Class Equity: The Mechanisms and Agency Costs of Separating Control from Cash-flow Rights, in Concentrated Corporate Ownership 295 (Randall K. Morck ed., 2000); Art Durnev & E. Han Kim, To Steal or Not to Steal: Firm Attributes, Legal Environment, and Valuation, 60 J. Fin. 1461 (2005).

[FN120]. See supra note 45.

[FN121]. Joel S. Hellman, Geraint Jones & Daniel Kaufmann, Seize the State, Seize the Day: State Capture and Influence in Transition Economies, 31 J. Comparative Econ. 751 (2003); Randall Morck, Daniel Wolfenzon & Bernard Yeung, Corporate Governance, Economic Entrenchment, and Growth, 43 J. Econ. Literature 655, 655-57 (2005).

[FN122]. Curtis J. Milhaupt, Property Rights in Firms. 84 Va. L. Rev. 1145 (1998).

[FN123]. Marco Pagano & Paolo F. Volpin, The Political Economy of Corporate Governance, 95 Am. Econ. Rev. 1005, 1007-08, 1027 (2005).

[FN124]. See J.S. Milnor & Lloyd S. Shapley, Value of Large Games II: Oceanic Games, 3 Mathematics of Operations Research 290 (1978); N.Z. Shapiro & Lloyd S. Shapley, Value at Large Games I: A Limit Theorem, 3 Mathematics of Operations Research 1 (1978). Cf. Jeffrey Zwiebel, Block Investment and Partial Benefits of Corporate Control, 62 Rev. Econ. Stud. 161 (1995) (applying the concept to blockholdings in firms).

[FN125]. See, e.g., Douglas H. Blair, Devra L. Golbe & James M. Gerard, Unbundling the Voting Rights and Profit Claims of Common Shares, 97 J. Pol. Econ. 420 (1989); Zvika Neeman and Gerhard O. Orosel, On the Efficiency of Vote Buying When Voters Have Common Interests, Int'l Rev. of L. & Econ. (forthcoming 2007).

[FN126]. Blair et al., supra note 125, at 423.

[FN127]. Ronald J. Gilson, The Case Against Shark Repellent Amendments: Structural Limitations on the Enabling Concept, 34 Stan. L. Rev. 775, 775 n.2 (1982) (discussing "Saturday night specials" and other tender offer terminology).

[FN128]. Frank H. Easterbrook & Daniel R. Fischel, The Proper Role of a Target's Management in Responding to a Tender Offer, 94 Harv. L. Rev. 1161, 1162-63 (1981) (discussing the history of tender offer regulation).

[FN129]. We discuss these recapitalizations infra in Part III.C.

[FN130]. See, e.g., Larry Y. Dann & Harry DeAngelo, Corporate Financial Policy and Corporate Control: A Study of Defensive Adjustments in Asset and Ownership Structure, 20 J. Fin. Econ. 87 (1988); Jeffrey N. Gordon, Ties That Bond: Dual Class Common Stock and the Problem of Shareholder Choice. 76 Cal. L. Rev. 1 (1988); Gregg A. Jarrell & Annette B. Poulsen, Dual-class Recapitalizations as Antitakeover Mechanisms, 20 J. Fin. Econ. 129 (1988). But see M. Megan Partch, The Creation of a Class of Limited Voting Common Stock and Shareholder Wealth, 18 J. Fin. Econ. 313 (1987) (finding no significant effect).

[FN131]. See Claessens et al., supra note 2, at 82-83, 110.

79 SCALR 811
79 S. Cal. L. Rev. 811
**(Cite as: 79 S. Cal. L. Rev. 811)**

Page 71

[FN132]. Gompers et al., supra note 2.

[FN133]. See Stijn Claessens, Simeon Djankov, Joseph Fan & Larry Lang, Disentangling the Incentive and Entrenchment Effects of Large Shareholdings, 57 J. Fin. 2741 (2002); Karl V. Lins, Equity Ownership and Firm Value in Emerging Markets, 38 J. Fin. & Quantitative Analysis 159 (2003); Bernard Black, Hasung Jang & Woochan Kim, Does Corporate Governance Predict Firms' Market Values? Evidence from Korea, 22 J.L. Econ. & Org. (forthcoming 2006), available at http://ssrn.com/abstract=311275.

[FN134]. Gompers et al., supra note 2; Sung Wook Joh, Corporate Governance and Firm Profitability: Evidence from Korea Before the Economic Crisis, 68 J. Fin. Econ. 287, 290 (2003).

[FN135]. Alexander Dyck & Luigi Zingales, Private Benefits of Control: An International Comparison, 59 J. Fin. 537 (2004).

[FN136]. Tatiana Nenova, The Value of Corporate Voting Rights and Control: A Cross-country Analysis, 68 J. Fin. Econ. 325 (2003).

[FN137]. In addition to these cross-country studies, other single country estimates of the value of control as a percentage of firm value include 3%-8% in Sweden, see Kristian Rydqvist, Takeover Bids and the Relative Prices of Shares That Differ in Their Voting Rights, 20 J. Banking & Fin. 1407, 1419-20 (1996); and 30% in Italy, see Luigi Zingales, The Value of the Voting Right: A Study of the Milan Stock Exchange Experience, 7 Rev. Fin. Stud. 125 (1994).

[FN138]. See Michael J. Barclay & Clifford G. Holderness, Private Benefits from Control of Public Corporations, 25 J. Fin. Econ. 371, 394 (1989) (discussing value difference based on large block trades); Nenova, supra note 136.

[FN139]. See Harry DeAngelo & Linda DeAngelo, Managerial Ownership of Voting Rights: A Study of Public Corporations with Dual Classes of Common Stock, 14 J Fin. Econ. 33 (1985); Luigi Zingales, What Determines the Value of Corporate Votes?, 110 Q.J. Econ. 1047, 1049-52 (1995).

[FN140]. See Ronald C. Lease, John J. McConnell & Wayne H. Mikkelson, The Market Value of Control in Publicly-traded Corporations, 11 J. Fin. Econ. 439, 469 (1983); Zingales, supra note 139, at 1047.

[FN141]. See Zingales, supra note 137, at 126 (also collecting other single country estimates, including 6.5% in Sweden, 13% in the United Kingdom, 23% in Canada, 27% in Switzerland, and 45% in Israel).

[FN142]. See Paul Gompers, Joy Ishii & Andrew Metrick, Corporate Governance and Equity Prices, 118 Q.J. Econ. 107 (2003).

[FN143]. K.J. Martijn Cremers & Vinay B. Nair, Governance Mechanisms and Equity Prices, 60 J. Fin. 2859 (2005).

[FN144]. Christoffersen et al., supra note 21.

[FN145]. We discuss share lending practices supra in Part II.E and infra in Part V.C.

[FN146]. See Stewart C. Myers & Nicholas S. Majluf, Corporate Financing and Investment Decisions When Firms Have Information That Investors Do Not Have, 13 J. Fin. Econ. 187 (1984).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN147]. See Lucian Arye Bebchuk, A Rent-protection Theory of Corporate Ownership and Control (Nat'l Bureau of Econ. Research, Working Paper No. W7203, 1999), available at http://ssrn.com/abstract=203110.

[FN148]. Edward Glaeser, Simon Johnson & Andrei Shleifer, Coase Versus the Coasians, 116 Q.J. Econ. 853 (2001); Vladimir Atanasov, Bernard Black, Conrad S. Ciccotello & Stanley B. Gyoshev, The Anatomy of Financial Tunneling in an Emerging Market (May 16, 2006) (unpublished manuscript), available at http:// ssrn.com/abstract=902766.

[FN149]. See, e.g., Gordon, supra note 130; Joel Seligman, Equal Protection in Shareholder Voting Rights: The One Common Share, One Vote Controversy, 54 Geo. Wash. L. Rev. 687 (1986).

[FN150]. See Gilson, supra note 112.

[FN151]. See sources cited supra note 130.

[FN152]. See Business Roundtable v. SEC, 905 F.2d 406 (D.C. Cir. 1990) (invalidating the SEC's prior effort to ban dual-class recapitalizations); Stephen M. Bainbridge, The Short Life and Resurrection of SEC Rule 19c-4, 69 Wash. U. L.Q. 565 (1991); Gilson, supra note 112.

[FN153]. On the current system and its origins, see, for example, Issuer Restrictions or Prohibitions on Ownership by Securities Intermediaries, Exchange Act Release No. 34-50758, 69 Fed. Reg. 70,852, 70,852 nn.1-2 (Dec. 7, 2004); Michael T. Reddy, Securities Operations 127-64 (2d ed. 1995).

[FN154]. See NYSE, Inc., Rule 452 (2002). On the origins and structure of Rule 452 and similar NASDAQ and American Stock Exchange rules, see Bainbridge, supra note 152; Task Force on S'holder Proposals of the Comm. on Fed. Regulation of Sec., Am. Bar Ass'n, Report on Proposed Changes in Proxy Rules and Regulations Regarding Procedures for the Election of Corporate Directors, 59 Bus. Law. 109 (2003).

[FN155]. See, e.g., Chew v. Inverness Mgmt. Corp., 352 A.2d 426 (Del. Ch. 1976); Robert Charles Clark, Vote Buying and Corporate Law, 29 Case W. Res. L. Rev. 776 (1979) (compiling cases); Michael D. Schmitz, Comment, Shareholder Vote Buying--A Rebuttable Presumption of Illegality, 1968 Wis. L. Rev. 927.

[FN156]. Restatement of Contracts § 569 (1932).

[FN157]. N.Y. Bus. Corp. Law § 609(e) (McKinney 2003).

[FN158]. Schreiber v. Carney, 447 A.2d 17 (Del. Ch. 1982).

[FN159]. Id. at 25.

[FN160]. Id. at 24.

[FN161]. Id. at 26.

[FN162]. Schreiber, 447 A.2d at 23.

[FN163]. We discuss this example supra in Part II.B.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN164]. Hewlett v. Hewlett-Packard Co., No. Civ.A. 19513-NC, 2002 WL 818091, at *12 (Del. Ch. Apr. 30, 2002).

[FN165]. For further discussion of vote buying, see Thomas J. Andre, Jr., A Preliminary Inquiry into the Utility of Vote Buying in the Market for Corporate Control, 63 S. Cal. L. Rev. 533 (1990); Clark, supra note 155; Douglas R. Cole, E-proxies for Sale? Corporate Vote-buying in the Internet Age, 76 Wash. L. Rev. 793 (2001).

[FN166]. Christoffersen et al., supra note 21.

[FN167]. Schedule 13D, supra note 14.

[FN168]. Schedule 13G, supra note 14.

[FN169]. Form 13F, supra note 13.

[FN170]. See infra Part IV.B.4.

[FN171]. See Exchange Act Rule 13d-1, Filing of Schedules 13D and 13G, 17 C.F.R. § 240.13d-1(a), (i) (2005).

[FN172]. See Exchange Act Rule 13d-1(b), 17 C.F.R. § 240.13d-1(b) (2005). When ownership first exceeds 10%, Schedule 13G must be filed by the tenth day of the next month. Id.

[FN173]. Exchange Act Rule 13d-3(a), 17 C.F.R. § 240.13d-3(a) (2005).

[FN174]. Exchange Act Rule 13d-3(d)(1)(i), 17 C.F.R. § 240.13d-3(d)(1)(i) (2005).

[FN175]. Exchange Act Rule 13d-3(b), 17 C.F.R. § 240.13d-3(b) (2005).

[FN176]. Schedule 13D, supra note 14, at Item 5; Schedule 13G, supra note 14, at Item 4.

[FN177]. Schedule 13D, supra note 14, at Item 6.

[FN178]. Id. at Item 7.

[FN179]. We discuss this transaction supra in Part II.C.

[FN180]. See Greene, supra note 102 (book by Cleary Gottlieb); Liew, supra note 101 (article by Allen & Overy partner).

[FN181]. We discuss the Sears Canada incident supra in Part II.C.

[FN182]. We discuss the Glencore-Austral Coal transaction supra in Part II.C.

[FN183]. See Austral Coal Takeovers Panel Decision, supra note 75. The Takeovers Panel based this decision on the policy concerns underlying large shareholder disclosure rules, rather than on the specific language of the statute.

[FN184]. See Glencore Int'l AG, supra note 75.

[FN185]. The key stock parking case, United States v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991), discusses parking arrangements.

[FN186]. See Neil Whoriskey & Brandon W. Gardner, Arbitrage in an M&A Context--Issues Raised by the Mylan Case, M&A Law., Sept. 2005, at 15.

[FN187]. Perry Corp., Schedule 13D as to Mylan Laboratories, Inc., at Items 4, 6 (Nov. 19, 2004).

[FN188]. We discuss these examples supra in Parts II.B and II.D, respectively.

[FN189]. Schedule 13D, supra note 14, at Item 6 (emphasis added).

[FN190]. Item 7 of Schedule 13D requires filing of "all written agreements, contracts, arrangements, understandings, plans or proposals relating to...the transfer or voting of the securities, finder's fees, joint ventures, options, puts, calls, guarantees of loans, guarantees against loss or of profit, or the giving or withholding of any proxy as disclosed in Item 6." Id. at Item 7. Perry's counsel presumably decided that its hedges were none of these.

[FN191]. Swaps were introduced in secrecy in the late 1970s and became full-fledged financial products only in 1981, with the disclosure of some details of a currency swap between IBM and the World Bank. See Henry T. C. Hu, Swaps, the Modern Process of Financial Innovation and the Vulnerability of a Regulatory Paradigm, 138 U. Pa. L. Rev. 333, 363 (1989).

[FN192]. The filings are publicly available. A manager may request confidential treatment, but only under narrow circumstances, and the SEC does not often grant such requests. See Form 13F, supra note 13.

[FN193]. See Exchange Act § 13(f)(1), (f)(5)(A) (2000); 15 U.S.C. § 78m(f)(1), (f)(5)(A) (2000); Exchange Act Rule 13f-1, 17 C.F.R. § 240.13f-1 (2005).

[FN194]. See Exchange Act § 13(f)(5)(A); 15 U.S.C. § 78m(f)(5)(A).

[FN195]. See Exchange Act Rule 13f-1, 17 C.F.R. § 240.13f-1 (2005); SEC Division of Investment Management: FAQ About Form 13F, Question 4 (May 2005), http://www.sec.gov/divisions/investment/13ffaq.htm [hereinafter SEC 13F FAQ]. For an example of the use of Form 13F information to track hedge fund trading, see Markus K. Brunnermeier & Stefan Nagel, Hedge Funds and the Technology Bubble (EFA Annual Conference Paper No. 446, 2003), available at http:/ ssrn.com/abstract=423940.

[FN196]. See Exchange Act Rule 13f-1(c), 17 C.F.R. § 240.13f-1(c) (2005); SEC 13F FAQ, supra note 195, at Question 7.

[FN197]. SEC Form 13F FAQ, supra note 195, at Question 41 ("You should not include short positions on Form 13F. You also should not subtract your short position(s) in a security from your long position(s) in that same security; report only the long position.").

[FN198]. Id. at Question 42.

[FN199]. See Form 13F, supra note 13, at Special Instructions PP 9-12.

[FN200]. Id. at Special Instructions P 12(b)(viii).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN201]. See Exchange Act Rules 16a-1(a), 16a-2, 17 C.F.R. §§ 240.16a-1(a), 16a-2 (2005).

[FN202]. 17 C.F.R. § 240.16a-1(a). Registered broker-dealers, banks, and certain other entities and individuals are exempt so long as they hold shares without "divesting such person of beneficial ownership of a security" or entering into an arrangement that would violate the antigaming provisions of 17 C.F.R. § 240.13d-3(b). Id.

[FN203]. Exchange Act Rule 16a-2, 17 C.F.R. § 240.16a-2 (2005). For nonexperts in securities law, yes, the SEC has indeed defined the same term-- beneficial ownership--in two different ways, once under Section 13(d) and once under Section 16.

[FN204]. Form 3, Initial Statement of Beneficial Ownership of Securities, 17 C.F.R. § 249.103 (2005) [hereinafter Form 3]; Form 4, Statement of Changes in Beneficial Ownership of Securities, 17 C.F.R. § 249.104 (2005) [hereinafter Form 5]; Form 5, Annual Statement of Beneficial Ownership of Securities, 17 C.F.R. § 249.105 (2005) [hereinafter Form 5].

[FN205]. Exchange Act Rule 16a-3, 17 C.F.R. § 240.16a-3(a) (2005); Form 3, supra note 204, at Instruction 3.

[FN206]. 17 C.F.R. §§ 240.16a-2, .16a-3, & .16a-4.

[FN207]. Exchange Act Rule 16a-1(c), 17 C.F.R. § 240.16a-1(c).

[FN208]. Id.

[FN209]. Form 3, supra note 204.

[FN210]. Form 4, supra note 204.

[FN211]. Share borrowing would, however, clearly count toward triggering disclosure by 10% shareholders, which is governed by the separate Section 13(d) rules.

[FN212]. See, e.g., Arnold S. Jacobs, 16A Section 16 of the Securities Exchange Act § 7.31 (2005). We concede that the lender's economic position does not remain completely the same. For instance, there are tax differences between dividends and payments by the borrower in lieu of dividends, but these seem too thin a reed on which to hang a disclosure obligation, especially since this difference has been significant only since the 2003 reduction in the dividend tax rate.

[FN213]. The basic forms for mutual fund disclosure are Forms N-1A, N-CSR, and N-Q. See SEC, Shareholder Reports and Quarterly Portfolio Disclosure of Registered Management Investment Companies, Securities Act Release No. 33-8393, 69 Fed. Reg. 11,244, 11,254-57 (Mar. 9, 2004); SEC Form N-1A, Registration Statement Under the Securities Act of 1933, General Instructions, P 22 (b)-(c), available at http://www.sec.gov/about/forms/formn-1a.pdf (discussing annual and semiannual reports); SEC Form N-CSR, Certified Shareholder Report of Registered Management Investment Companies, General Instructions, P 6, available at http://www.sec.gov/about/forms/formn-csr.pdf; SEC Form N-Q, Quarterly Schedule of Portfolio Holdings of Registered Management Investment Company, General Instructions, available at http://sec.gov/about/forms/formn-q.pdf.

[FN214]. Mutual funds typically list the securities that they have lent in their schedule of investments with a footnote stating that "[a]ll or a portion of this security is on loan." Susan C. Peters, Accounting Treatment of Loans of Securities, in Securities Finance & Lending, supra note 50, at 205. Mutual fund balance sheets disclose the total

value of securities on loan. Id. A mutual fund with a short position has negative economic ownership which must be disclosed; implicit in this disclosure is that the fund had borrowed shares.

[FN215]. We discuss the benefits and costs of disclosure in more detail in Hu & Black, Hedge Funds and Empty Voting, supra note 24, at Part 4.

[FN216]. The principal arguments for disclosure are the value of simplicity and symmetry, the practical difficulty in drafting an exception that is limited to a short position with no accompanying formal or informal voting rights, reduced gaming risk, and the value to investors of more complete knowledge of other investors' market positions. The principal arguments against disclosure are that short selling is a valuable policing mechanism for share prices, our markets and regulatory systems already burden short sellers in various ways, and disclosure would add to these burdens. For a discussion of how U.S. tax and regulatory rules raise the cost of short selling, and, thus, contribute to market inefficiency, see Michael R. Powers, David M. Schizer & Martin Shubik, <u>Market Bubbles and Wasteful Avoidance: Tax and Regulatory Constraints on Short Sales, 57 Tax L. Rev. 233 (2004)</u>.

[FN217]. For analyses of how financial innovation subverts traditional classification-based regulation, see Hu, Misunderstood Derivatives, supra note 4; Hu, supra note 191; Edward D. Kleinbard, <u>Equity Derivative Products: Financial Innovation's Newest Challenge to the Tax System, 69 Tex. L. Rev. 1319 (1991)</u>.

[FN218]. See Code Comm., U.K. Panel on Takeovers & Mergers, Dealings in Derivatives and Options: Detailed Proposals Relating to Amendments Proposed to Be Made to the Takeover Code--Part 1: Disclosure Issues §§ 5.1-5.2 (May 2005); Code Comm., U.K. Panel on Takeovers & Mergers, Dealings in Derivatives and Options: Statement by the Code Committee of the Panel Following the External Consultation Processes on Disclosure Issues in PCP 2005/1 and PCP 2005/2 (Aug. 2005); Panel Executive, U.K. Panel on Takeovers & Mergers, Summary of Changes to the Takeover Code (Oct. 2005). Cf. Fin. Servs. Auth. (U.K.), Hedge Funds: A Discussion of Risk and Regulatory Engagement (Fin. Servs. Auth., Discussion Paper No. 05/4, 2005).

[FN219]. See Hong Kong Sec. & Futures Comm'n, Outline of Part XV of the Securities and Futures Ordinance (Cap. 571)--Disclosure of Interests (Aug. 2003) [hereinafter Hong Kong SFC, Part XV Outline]; Hong Kong Sec. & Futures Comm'n, Review of the Disclosure of Interests Regime Under Part XV of the Securities and Futures Ordinance (Jan. 2005) [hereinafter Hong Kong SFC, Review]. Previously, insiders had reportedly made extensive use of OTC derivatives to reduce or increase their economic ownership in their own companies, precisely because of what the head of equity derivatives at a major institution called the "nondisclosure factor." Melvyn Westlake, Rules of the Game, Asia Risk, Apr. 2002, available at http:// www.asiarisk.com.hk/public/showPage.html?page=3206.

[FN220]. See, e.g., Cheng, supra note 57.

[FN221]. On Form 13F enforcement, see James D. Cox & Randall S. Thomas, <u>Letting Billions Slip Through Your Fingers: Empirical Evidence and Legal Implications of the Failure of Financial Institutions to Participate in Securities Class Action Settlements, 58 Stan. L. Rev. 411, 446-48 (2005)</u>.

[FN222]. More technically, delta is the partial derivative of the option price with respect to the price of the underlying asset. E. Briys, M. Bellalah, H.M. Mai & F. de Varenne, Options, Futures and Exotic Derivatives 124 (1998).

[FN223]. <u>17 C.F.R. § 240.13d-3 (2005)</u>.

[FN224]. See Hong Kong SFC, Part XV Outline, supra note 219, § 2.5 (section entitled "How many shares am I taken to be interested in if I hold equity derivatives?").

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN225]. Thus, one specialist's May 2005 estimate of the size of the United States' institutional securities lending market drew on a combination of the firm's own internal client surveys and Federal Reserve statistics. See Plitch, supra note 93, at 1. Cf. Dan Barnes, Learning the Cost of Stock Lending, Banker, May 2005, at 62, 63 (explaining that the size of the global securities lending market is "fairly unclear").

[FN226]. For a discussion of so-called risk reporting to hedge fund investors, see Leslie Rahl, Hedge Fund Risk Transparency 65-81 (2003).

[FN227]. We discuss the AXA-MONY example supra in Part II.B.

[FN228]. We discuss the Laxey Partners-British Land example supra in Part II.B.

[FN229]. See Int'l Corp. Governance Network, ICGN Stock Lending Code of Best Practice (2005);Lintstock, Share Lending Vis-à-Vis Voting: A Report Commissioned by the International Corporate Governance Network 3, 22 (2004).

[FN230]. We discuss the Sears Canada incident supra in Part II.C.

[FN231]. See Business Roundtable v. SEC. 905 F.2d 406, 413 (D.C. Cir. 1990) (invalidating the SEC's effort to ban dual-class recapitalizations because it "invades the 'firmly established' state jurisdiction over corporate governance"); Bainbridge, supra note 152.

[FN232]. See, e.g., Roberta Romano, The Sarbanes-Oxley Act and the Making of Quack Corporate Governance, 114 Yale L.J. 1521 (2005); Kate Litvak, The Effect of the Sarbanes-Oxley Act on Non-US Companies Cross-listed in the US (Univ. of Texas, Law & Econ. Research Paper No. 55, 2005), available at http:// ssrn.com/abstract=876624.

[FN233]. Martin & Partnoy, supra note 26, at 776.

[FN234]. Id. at 793-94. In effect, Martin and Partnoy deal with certain narrow aspects of what we refer to as empty voting, and do not deal at all with hidden (morphable) ownership, the other half of the new vote buying.

[FN235]. We discuss this transaction supra in Part II.B.

[FN236]. See Christoffersen et al., supra note 21 and our position on their analysis in Part III.B.

[FN237]. We first discussed the opt-in approach in the initial 2005 draft of this Article. See supra note 24.

[FN238]. Paul Myners, Review of the Impediments to Voting UK Shares 4-5 (2005).

[FN239]. See Mark C. Faulkner, Int'l Sec. Lending Ass'n, Securities Lending & Corporate Governance 7-8 (2005) (providing charts showing the difference between normal lending levels and lending levels near dividend dates); Angus McCrone, Hints for Private Punters from the Secretive World of Stock Lending, Evening Standard (London), Jan. 30, 2004, at A44.

[FN240]. Lintstock, supra note 229, § 8.4. See also Myners, supra note 238, at 4-5 (noting the problem, but not proposing a solution). Setting separate voting and dividend record dates is permitted under Delaware law. Del. Code Ann. tit. 8, § 213 (2005).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN241]. MM Cos. v. Liquid Audio, Inc., 813 A.2d 1118, 1127 (Del. 2003).

[FN242]. Del. Code Ann. tit. 8, § 212(a) (2005).

[FN243]. Williams v. Geier, 671 A.2d 1368, 1377 (Del. 1996) (affirming summary judgment upholding a charter amendment). This case involved a "time-phased" voting arrangement in which shareholders who held shares for three years would have ten votes per share, while other shareholders would have only one vote per share. Id. at 1370-71. See also Blasius Indus. v. Atlas Corp., 564 A.2d 651, 659 (Del. Ch. 1988); Gilson & Black, supra note 39, at ch. 24.

[FN244]. Id. at 1385-87 (Hartnett, J., dissenting) (referencing Unocal Corp. v. Mesa Petroleum Co., 493 A.2d 946 (Del. 1985)).

[FN245]. This approach has a historical antecedent as a response to (truly old) empty voting. Shareholders often gamed the original English rule of one vote per shareholder by splitting their shares among their friends, each of whom could then cast one vote. Parliament responded to this strategy in 1767, by providing that only shareholders who had held shares for at least six months could vote. This limited vote-splitting to long-term friends, who were presumably in scarcer supply. See C.A. Cooke, Corporation Trust and Company: An Essay in Legal History 74 (1951).

[FN246]. NYSE, Inc., Listed Company Manual § 313(A) (1998).

[FN247]. The NYSE states that its voting rights policy "will be flexible, recognizing that both the capital markets and the circumstances and needs of listed companies change over time." Id.

[FN248]. See, e.g., Robert Daines & Michael Klausner, Do IPO Charter Provisions Maximize Firm Value? Antitakeover Protection in IPOs, 17 J.L., Econ. & Org. 83 (2001).

[FN249]. See Lucian Arye Bebchuk, Limiting Contractual Freedom in Corporate Law: The Desirable Constraints on Charter Amendments, 102 Harv. L. Rev. 1820 (1989); Bernard S. Black, Is Corporate Law Trivial?: A Political and Economic Analysis, 84 Nw. U. L. Rev. 542 (1990).

[FN250]. For such proposals, see Lucian Arye Bebchuk, The Case for Increasing Shareholder Power, 118 Harv. L. Rev. 833, 865-70 (2005); Bernard Black & Reinier Kraakman, A Self-enforcing Model of Corporate Law, 109 Harv. L. Rev. 1911, 1945-46 (1996).

[FN251]. Hewlett v. Hewlett-Packard Co., No. Civ.A. 19513-NC, 2002 WL 818091, at *1, *8, *9 (Del. Ch. Apr. 30, 2002).

[FN252]. Id. at *9 (finding that "[d]uring the conference call [between Hewlett-Packard and Deutsche Bank], no one from HP used any threats or inducements regarding future business relationships.... Instead, [Hewlett-Packard CEO Carleton] Fiorina and [CFO Robert] Wayman argued HP's case entirely on the merits.").

[FN253]. See Warner Fuller, Restrictions Imposed by the Directorship Status on the Personal Business Activities of Directors, 26 Wash. U. L.Q. 189 (1941). Cf. Golden Rod Mining Co. v. Bukvich, 92 P.2d 316 (Mont. 1939) (involving an outside director who was a competitor).

[FN254]. Gilson & Schwartz, supra note 116.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN255]. See, e.g., Andrew R. Brownstein & Igor Kirman, Can a Board Say No When Shareholders Say Yes? Responding to Majority Vote Resolutions, 60 Bus. Law. 23, 52-59 (2004).

[FN256]. See, e.g., Martin Dickson, Myners' Whiffometer, Fin. Times (London), Mar. 15, 2005, at 22 (Companies) ("[S]ome fund managers may not be aware that the shares have been lent, since the beneficial owners may contract directly with custodians to lend."); Kit Bingham, Myners Rejects Calls for Curbs on Stock Lending, Fin. News Online, Mar. 21, 2005.

[FN257]. See Lintstock, supra note 229.

[FN258]. Id. at 15.

[FN259]. Myners, supra note 238, at 4-5, 11.

[FN260]. Kit Bingham, Concern Grows over Borrowed Votes, Fin. News Online, May 8, 2005.

[FN261]. See Kit Bingham, EC Acts to Speed Up Translated Reports, Fin. News Online, May 22, 2005.

[FN262]. Gregory Crawford, Asking Questions: Securities Lending Scrutinized, Pensions & Investments, Oct. 4, 2004, at 15.

[FN263]. See CalPERS, Securities Lending as It Relates to Proxy Voting 3 (2005) (report by CalPERS staff). We confess to being a bit skeptical about CalPERS' ability to know its borrowers well enough to implement this goal.

[FN264]. See Gene Picone & Paul Wilson, Lending Arrangements--Exclusive Risks, Exclusive Rewards, Global Investor, Mar. 2005, at 1, 1-2.

[FN265]. See, e.g., Super-hero or Super-villain? Is Securities Lending Unpatriotic and Detrimental to the Market, or Does It Improve Liquidity and Efficiency?, Banker, Nov. 1, 2002.

[FN266]. See DTC Begins Testing for Agency Lending Disclosure, Sec. Industry News, July 13, 2005; Shane Kite, Deadline Looms for Securities Lenders--Two-year Agency Disclosure Initiative Still Trying to Fill Membership Gaps, Sec. Industry News, Mar. 15, 2006; Department of the Treasury, Financial Crimes Network, Frequently Asked Question--Customer Identification Program Responsibilities Under the Agency Lending Disclosure Initiative (Apr. 25, 2006), http://www.fincen.gov/cip_faq.html.

[FN267]. For an introduction to these over-voting issues, see Martin & Partnoy, supra note 26; Chris Kentouris, Decisive Movement on Proxy Miscounts, Sec. Industry News, Dec. 6, 2004; Robert C. Apfel, John E. Parsons, G. William Schwert & Geoffrey S. Stewart, Short Sales, Damages, and Class Certification in 10b-5 Actions (Univ. of Rochester, Simon School of Bus. Admin., Working Paper No. FR 01-19, 2001), available at http://papers.ssrn.com/sol3/papers.cfm? abstract_id=285768.

[FN268]. Kentouris, supra note 267.

[FN269]. See Seidman & Assocs. v. G.A. Fin., Inc., 837 A.2d 21 (Del. Ch. 2003). See also Robert C. Apfel et al., supra note 267 (discussing a proxy contest at Integrated Circuit Systems and associated voting actions taken by brokers).

[FN270]. Bob Drummond, One Share, One Vote: Short Selling Short-circuits the System, Int'l Herald Trib., Mar. 1,

2006, at 20.

[FN271]. Id. (quoting Thomas Montrone, CEO of Registrar & Transfer, which oversees shareholder elections).

[FN272]. See Peter A. Ambrosini & Karen B. Clark, Custody of Mutual Fund Assets, in Mutual Fund Regulation § 10:1 (Clifford E. Kirsch ed., ring-bound ed. 2005).

[FN273]. See, e.g., The Brinson Funds et al., SEC No-Action Letter, 1997 SEC No-Act. LEXIS 1024 (Nov. 25, 1997); State Street Bank & Trust Co., SEC No-Action Letter, 1972 SEC No-Act. LEXIS 4607 (Sept. 29, 1972) [hereinafter State Street Bank & Trust, September]; State Street Bank & Trust Co., SEC No-Action Letter, 1972 SEC No-Act. LEXIS 4798 (Jan. 29, 1972).

[FN274]. State Street Bank & Trust, September, supra note 273, at *2. Cf. Peters, supra note 214, at 209 (explaining that mutual funds must have the ability to recall any security on loan to vote on a material event proxy).

[FN275]. See Final Rule, Disclosure of Proxy Voting Policies and Proxy Voting Records by Registered Management Investment Companies, Investment Company Act Release No. 33-8188, 2003 WL 215451 (Jan. 31, 2003); Final Rule, Proxy Voting by Investment Advisers, Investment Advisors Act Release No. IA-2106, § II(A)(2)(a) & n.3, 2003 WL 255222 (Jan. 31, 2003) (discussing the circumstances when investment advisors need not vote).

[FN276]. See Interpretive Bulletin 94-2, in Interpretive Bulletins Relating to the Employment Retirement Income Security Act of 1974, 59 Fed. Reg. 38,86 (Dep't of Labor, July 29, 1994) (to be codified at 29 C.F.R. pt. 2509) [hereinafter Interpretive Bulletin 94-2]; Clifford E. Kirsch, Proxy Voting, in Mutual Fund Regulation, supra note 272, § 11.4 (describing the DoL's approach).

[FN277]. Interpretive Bulletin 94-2, supra note 276, at 38,862.

[FN278]. Pension & Welfare Benefit Programs, Op. Dep't of Labor No. 79-11A, 1979 ERISA LEXIS 81, at *6 (Feb. 23, 1979).

[FN279]. Margaret Price, Stock Lending, Proxy Votes Don't Always Mix, Pensions & Investments, Mar. 16, 1992, at 23 (describing a February 1992 statement of Ivan L. Strasfeld of the Labor Department).

[FN280]. See NYSE, Inc., Rule 452 (2002); supra note 154 and accompanying text.

[FN281]. See Black & Kraakman, supra note 250 (discussing institutional conflicts generally); Roberta Romano, Public Pension Fund Activism in Corporate Governance Reconsidered, 93 Colum. L. Rev. 795, 795-853 (1993) (discussing public pension fund conflicts).

[FN282]. For discussion of how these tax considerations could give tax-exempt pension funds a comparative advantage over mutual funds in lending, see Phyllis Feinberg, Reduced Supply: New Law to Slow Mutual Funds' Securities Lending, Pensions & Investments, Sept. 1, 2003, at 6.

[FN283]. Taxable investors faced a risk that a loan would be taxed as a sale while tax-exempt investors were concerned that lending income would be taxed as unrelated business income. See David M. Schizer, Frictions as a Constraint on Tax Planning, 101 Colum. L. Rev. 1312 (2001) (discussing Internal Revenue Code section 1058 for taxable investors and section 512(a)(5) for tax-exempt investors).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN284]. See Short Sales, Exchange Act Release No. 34-50103, supra note 51.

[FN285]. See Rule 15c3-1, Net Capital Rule, 17 C.F.R. § 240.15c3-1 (2005).

[FN286]. SEC Customer Protection Rule, 17 C.F.R. § 240.15c3-3 (2005). See generally Michael P. Jamroz, The Customer Protection Rule, 57 Bus. Law. 1069 (2002).

[FN287]. See Class Exemption to Permit Certain Loans of Securities by Employee Benefit Plans, 46 Fed. Reg. 7527 (Jan. 23, 1981); Class Exemption to Permit Payment of Compensation to Plan Fiduciaries for the Provision of Securities Lending Services, 47 Fed. Reg. 14,804 (Apr. 6, 1982); Proposed Class Exemption to Permit Certain Loans of Securities by Employee Benefit Plans, 68 Fed. Reg. 60,715 (Dep't of Labor Oct. 23, 2003). Cf. Charles E. Dropkin, Developing Effective Guidelines for Managing Legal Risks--U.S. Guidelines, in Securities Finance & Lending, supra note 50, at 167 (briefly discussing regulatory regime for ERISA lenders).

[FN288]. See Revised Policy Statement on Securities Lending, 62 Fed. Reg. 38,991 (Fed. Fin. Insts. Examination Council July 21, 1997).

[FN289]. See Basel Comm. on Banking Supervision, International Convergence of Capital Measurement and Capital Standards--A Revised Framework (2005) (discussing Basel II standards generally); Basel Comm. on Banking Supervision, The Application of Basel II to Trading Activities and the Treatment of Double Default Effects 1 (2005) (describing the application of Basel II to OTC derivatives and securities lending); Hu, supra note 217 (discussing the 1988 Basel I standards); Chris Kentouris, Basel II Brings Choice, Uncertainty to Securities Lenders, Sec. Industry News, Jan. 17, 2005 (discussing the impact of Basel II on securities lending).

[FN290]. See Rule 15c3-1, Net Capital Rule, 17 C.F.R. § 240.15c3-1 (2005) (capital adequacy rules for broker-dealers); Final Rule, OTC Derivatives Dealers, Exchange Act Release No. 34-40594, 1998 WL 760754 (Nov. 3, 1998) (capital adequacy rules for broker-dealer affiliates that engage in derivatives transactions).

[FN291]. See In re Enron Corp. Sec. Litig., Civ. No. H-01-3624, 2005 U.S. Dist. LEXIS 39867 (S.D. Tex. Dec. 22, 2005) (class action lawsuit against various investment and commercial banks and other defendants, in which settlements to date exceed $6 billion). Bernard Black is an expert witness for the plaintiffs in this litigation.

[FN292]. See In re Citigroup, Inc., Exchange Act Release No. 48,230, 2003 SEC LEXIS 1778 (July 28, 2003); SEC, In re J.P. Morgan Chase & Co., Litigation Release No. 18,252 (July 28, 2003), available at http://www.sec.gov/litigation/litreleases/lr18252.htm.

[FN293]. In re Am. Int'l Group, Inc., Exchange Act Release No. 48,477, 2003 SEC LEXIS 2163 (Sept. 11, 2003).

[FN294]. See Policy Statement: Interagency Statement on Sound Practices Concerning Complex Structured Finance Activities, Exchange Act Release No. 34-49695, 2004 WL 1514906 (May 13, 2004).

[FN295]. Different rules apply to different types of lenders. Dropkin, supra note 287.

[FN296]. Exchange Act § 7, 15 U.S.C. § 78g (2000).

[FN297]. See Regulation T, 12 C.F.R. § 220.2 (2005) (defining the "exempted borrower" exemption for major broker-dealers). Cf. Dropkin, supra note 287, at 172-74 (describing the general reach of Regulation T).

[FN298]. See 12 C.F.R. § 220.10(c) (describing the "permitted purpose" exemption).

[FN299]. In the analogous situation of dividend record date capture, the Federal Reserve staff ruled that share lending was not a permitted purpose. Federal Reserve Board Rulings and Staff Opinions Interpreting Regulation T, Fed. Reserve Regulatory Serv. 5-615.01 (July 6, 1984).

[FN300]. See Myners, supra note 238, at 13; Bank of Eng., Securities Borrowing and Lending Code of Guidance P 7.4 (2000) (stating that there is "consensus...in the market" that securities "should not be borrowed solely for the purposes of exercising the voting rights at [a shareholder meeting]").

[FN301]. If the hedge fund transacts with a single derivatives dealer, the dealer can hedge by selling shares short to the hedge fund; thus, there is no market impact. If the hedge fund buys shares from one dealer and hedges with another, both sides must engage in market transactions, incurring both trading and market impact costs. One dealer will be buying while the other will be selling, but their actions will not be coordinated, so each side's trades will move the market to some extent.

[FN302]. 26 U.S.C. § 1259 (2000 & Supp. 2004).

[FN303]. For discussions of 26 U.S.C. § 1259, see, for example, Alex Raskolnikov, Contextual Analysis of Tax Ownership, 85 B.U. L. Rev. 431 (2005); Deborah H. Schenk, An Efficiency Approach to Reforming a Realization-based Tax, 57 Tax L. Rev. 503, 532-33 (2004) (noting that a "very limited number of taxpayers" pay tax under § 1259); Simon D. Ulcickas, Note, Internal Revenue Code Section 1259: A Legitimate Foundation for Taxing Short Sales Against the Box or a Mere Makeover?, 39 Wm. & Mary L. Rev. 1355 (1998).

79 S. Cal. L. Rev. 811

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE MATTER OF THE SECURITIES ACT
R.S.O. 1990, c. S.5, AS AMENDED

- AND –

IN THE MATTER OF
SEARS CANADA INC.,
SEARS HOLDINGS CORPORATION,
AND SHLD ACQUISITION CORP.

- AND –

IN THE MATTER OF
HAWKEYE CAPITAL MANAGEMENT, LLC,
KNOTT PARTNERS MANAGEMENT, LLC, and
PERSHING SQUARE CAPITAL MANAGEMENT, L.P.

REASONS AND DECISION

| | | |
|---|---|---|
| **Hearing** | - | July 4 - 6, 2006 |

**Panel**

| | | |
|---|---|---|
| Susan Wolburgh Jenah | - | Vice-Chair (Chair of the Panel) |
| Robert W. Davis, FCA | - | Commissioner |
| Carol S. Perry | - | Commissioner |

**Counsel**

| | | |
|---|---|---|
| For Staff | - | Kelley McKinnon |
| | - | Naizam Kanji |
| | - | Michael Brown |
| | | |
| For Sears Holdings Corporation | - | Mark Gelowitz |
| SHLD Acquisition Corp. | - | Allan Coleman |
| | - | Shawn Irving |

| | | |
|---|---|---|
| | - | Donald Ross |
| | - | Don Gilchrist |
| | | |
| For Hawkeye Capital Management LLC | - | Kent Thomson |
| Knott Partners Management LLC | - | Luis Sarabia |
| Pershing Square Capital Management, L.P. | - | Patricia Olasker |
| | - | Steven Harris |
| | - | Sean Campbell |
| | | |
| For Sears Canada Inc. | - | Andrew Gray |
| | - | Kathleen Keller-Hobson |
| | | |
| For The Bank of Nova Scotia and Scotia Capital Inc. | - | Paul Steep |
| | - | Gary Girvan |
| | - | Thomas Sutton |
| | - | Peter Neumann |
| | - | Lyla Simon |
| | | |
| For The Royal Bank of Canada | - | Peter Howard |
| | - | Mihkel Voore |
| | | |
| For William Anderson | - | Gerald Ranking |

# TABLE OF CONTENTS

I. Overview ................................................................................................................. 1
   A.  Background to the Proceeding ............................................................................. 1
   B.  The Parties ......................................................................................................... 2
   C.  The Applications ............................................................................................... 4
      Events Prior to the Announcement of the Offer ................................................... 4
      Relevant Events Relating to the Offer ................................................................. 6
   D.  The Hearing ...................................................................................................... 13
II. Summary of Allegations and Relief Sought by Sears Holdings ............................................. 13
   A.  The Allegations ................................................................................................. 13
   B.  Order Sought by Sears Holdings ......................................................................... 14
III. Sears Holdings – Allegations Against the Pershing Group ................................................. 14
   A.  Did Pershing Violate the Early Warning Requirements of Sections 101 and 102 of the Act? ...................................................................................................... 15
      (i) Were Pershing and Vornado "Joint Actors"? ................................................. 17
      (ii) Are Pershing, Hawkeye and Knott Joint Actors? ........................................... 20
      (iii) Did Pershing Use Swaps to Avoid Disclosure Obligations? ............................ 23
   B.  Did Pershing's April 7 Press Release Violate Section 198 of the Regulation? ............... 27
   C.  Did Pershing Engage in a Course of Conduct that Violated Sections 126.1 and 126.2 of the Act? ......................................................................................................... 29
IV. Summary of Allegations and Relief Sought by the Pershing Group ..................................... 32
   A.  The Allegations ................................................................................................. 32
   B.  Order Sought by the Pershing Group ................................................................... 33
V. The Pershing Group – Allegations Against Sears Holdings ................................................. 37
   A.  Are BNS and Scotia Capital "Joint Actors" with Sears Holdings? ............................. 37
   B.  Were the Support Agreements Entered into in Contravention of Subsection 94(2) of the Act? ........................................................................................................... 45
   C.  Did Sears Holdings Comply with its Disclosure Obligations? .................................. 48
   D.  Did the Support Agreements and the Vornado Agreement Contravene Subsection 97(2) of the Act? ...................................................................................................... 55
      (i) What Are the Elements of the "Collateral Benefits" Prohibition? ........................ 55
      (ii) The Vornado Agreement .......................................................................... 56
      (iii) The Support Agreements .......................................................................... 60
      (iv) What is the Appropriate Remedy in Relation to the Vornado Agreement and the Support Agreements? ................................................................................... 70
         (a) Extending the Release to Sears Canada Shareholders .................................. 71
         (b) The Minority Approval Requirement of Rule 61-501 .................................. 73
   E.  Was the Conduct of Sears Holdings in Connection with its Offer Coercive and/or Abusive? ......................................................................................................... 76
      (i) The Absence of a "Minimum Tender Condition" ............................................ 77
      (ii) The Offer Was at a Price Below the Genuity Valuation ................................... 78
      (iii) Interference with the Genuity Valuation Process ........................................... 78
      (iv) Decision by Sears Holdings to Cease Dividend Payments ............................... 79
      (v) Sears Holdings' Dealings with the Special Committee of Sears Canada ............... 80

(vi) Dissent Rights ............................................................................................. 86
(vii) Exemption Application in Relation to the Valuation.................................... 86
(viii) Threatening Legal Action Against Desjardins ......................................... 87
(ix) April 20 Complaint Against the Principal of Pershing ............................... 87
(x) Other Complaints ......................................................................................... 88
(xi) What is the Appropriate Remedy? ............................................................ 88

## REASONS AND DECISION

### I. Overview

#### A. Background to the Proceeding

[1]   Two Applications were filed in relation to an offer of SHLD Acquisition Corp. (SHLD), a wholly-owned subsidiary of Sears Holdings Corporation to acquire all of the outstanding common shares of Sears Canada Inc. (Sears Canada) not owned by it or its affiliates (the "Offer").  The Offer was announced on December 5, 2005, formally commenced on February 9, 2006 and expires on August 31, 2006.

[2]   In conjunction with the Offer, Sears Holdings informed the shareholders of Sears Canada of its intention to take Sears Canada private following the completion of the Offer pursuant to a second step subsequent acquisition transaction (SAT), for which "majority of the minority" approval would be required under Ontario Securities Commission Rule 61-501 - *Insider Bids, Issuers Bids, Business Combinations and Related Party Transactions* (2004), 27 O.S.C.B. 5975 ("Rule 61-501").  Sears Holdings intends to complete the SAT in December 2006.

[3]   On April 6, 2006, Sears Holdings announced that it had entered into agreements with holders of a sufficient number of Sears Canada shares to assure that any SAT undertaken by Sears Holdings would be approved by a majority of the minority of the shareholders of Sears Canada.

[4]   On June 5, 2006, SHLD and Sears Holdings Corporation (collectively, Sears Holdings) filed an application for relief (the Sears Holdings Application) under sections 104 and 127 of the *Securities Act*, R.S.O. 1990, c. S.5 (the Act) in respect of the conduct of Pershing Square Capital Management L.P. (Pershing), Hawkeye Capital Management, LLC (Hawkeye) and Knott Partners Management LLC (Knott) (collectively, the Pershing Group) in connection with the Offer.  The fundamental allegation against the Pershing Group is that they engaged in joint activity in a coordinated effort to thwart the Offer and to frustrate the expressed will of the majority of the minority shareholders of

1

Sears Canada. They allege numerous breaches of Ontario securities law and seek relief from the Commission against Pershing and the Pershing Group under sections 127 and 104 of the Act.

[5]    On June 5, 2006, the Pershing Group filed an application for relief against Sears Holdings (the Pershing Application) under sections 104 and 127 of the Act. They allege that various aspects of the conduct of Sears Holdings in pursuing its Offer violated Ontario securities law and constituted abusive and coercive conduct. The Pershing Group therefore requests that the Commission exercise its public interest jurisdiction and make an order under sections 127 and 104 of the Act.

[6]    The Commission issued a Notice of Hearing pursuant to subsection 104(1) and section 127 of the Act on May 17, 2006, scheduling a hearing commencing on Wednesday July 5, 2006 to consider the above-noted Applications. An Amended Notice of Hearing was issued on June 7, 2006 setting down the hearing for July 4, 2006.

[7]    Although The Bank of Nova Scotia (BNS), Scotia Capital Inc. (Scotia Capital) and The Royal Bank of Canada (RBC) are not named as parties to the Pershing Application, certain issues have been raised by the Pershing Group which relate to and could impact on BNS, Scotia Capital and RBC. Accordingly, we granted full standing to BNS, Scotia Capital and RBC on the consent of all the parties and subject to the conditions set out in our Orders.

[8]    Prior to the hearing, we also heard and determined several motions for production of documents made by the parties. Most of these motions were heard and determined by the Chair of the panel at the request and with the consent of the parties. These motions resulted in several orders for pre-hearing production. We also made an order compelling William Anderson to testify at the hearing on the merits.

## B. The Parties

[9]    Sears Holdings Corporation is the United States' third largest broadline retailer with annual revenues in excess of $55 billion. It is the leading home appliance retailer as well as a leader in

2

tools, garden, electronics, home and automotive repair and maintenance. Prior to the announcement of the Offer, Sears Holdings held 57,732,517 common shares of Sears Canada (approximately 53.8 percent of the outstanding common shares). It is therefore an insider within the meaning of Rule 61-501.

[10] SHLD is a wholly-owned subsidiary of Sears Holdings Corporation. SHLD was incorporated for the sole purpose of making the Offer.

[11] Pershing is a New York based registered investment advisor to several investment funds (the Pershing Funds) with total capital of more than U.S. $1.8 billion. William Ackman is the founder and principal of Pershing. Pershing manages capital on behalf of more than 200 individuals, pension funds, charitable organizations, educational endowments and other institutional and corporate investors. Pershing began investing in Sears Canada in February 2005 based on its belief that Sears Canada was undervalued. In their written submissions, the Pershing Group stated that the Pershing Funds owned 5,601,400 Sears Canada shares (approximately 5.2 percent of the outstanding shares). The Pershing Funds are also entitled to the economic benefit of an additional 6,900,000 Sears Canada shares (approximately 6.4 percent of the outstanding shares of Sears Canada) under cash-settled derivatives transactions with a resulting total economic interest equal to approximately 11.6 percent of the outstanding shares of Sears Canada.

[12] Hawkeye was founded in November 1999 and is a provider of investment management services in New York. Hawkeye's activities are focused on researching and investing in equity and debt securities on behalf of Hawkeye Capital L.P.'s limited partners. The written submissions indicate that Hawkeye owned or controlled 1,525,872 Sears Canada shares (approximately 1.42 percent of the outstanding shares of Sears Canada).

[13] Knott is a New York limited liability company. Knott provides discretionary investment advisory services which include managing and directing the investment of assets for individuals, institutional clients and private investment limited partnerships. The written submissions indicate that Knott owned or controlled 1,114,300 Sears Canada shares (approximately 1.04 percent of the

outstanding shares of Sears Canada). In addition to trading in the shares of Sears Canada for its own account, Knott trades shares in Sears Canada on behalf of a number of investment funds.

## C. The Applications

[14] The relevant events leading up to both the Sears Holdings and the Pershing Group's Applications being filed with the Commission are as follows.

### Events Prior to the Announcement of the Offer

[15] Sears Holdings Corporation was formed as a result of the merger between Sears, Roebuck and Co. and Kmart Holdings Corporation on March 24, 2005.

[16] On June 13, 2005, Sears Canada announced it would consider strategic alternatives for its credit and financial services business.

[17] On August 31, 2005, Sears Canada announced an agreement with J.P. Morgan Chase & Co. to sell its credit and financial services business for approximately $2.2 billion in cash proceeds and stated that it proposed to make a substantial cash distribution from the proceeds of the sale to the shareholders of Sears Canada.

[18] The same day, the Institutional Equity Group at Scotia Capital purchased 125,000 Sears Canada. From August 31 to December 16, 2005, Scotia Capital Institutional Equity Group made further purchases of Sears Canada shares for an aggregate of 513,000 shares.

[19] On September 14, 2005, Sears Canada announced that it proposed to distribute approximately $2 billion of the proceeds of the sale of the credit card and financial services assets to its shareholders. Sears Canada's share price increased to over $30.00 per share after the announcement.

[20] Between, October 31 and November 29, 2005, Scotia Capital's Capital Markets Group purchased 4,000,000 Sears Canada shares. These shares were purchased in the market through trades effected over the facilities of the TSX. Scotia Capital's Capital Markets Group purchased these 4,000,000 Sears Canada shares to partially hedge its risk in relation to equity swap transactions it had entered into with SunTrust Capital Markets Inc. ("SunTrust") and a broker dealer. To further reduce its exposure, between November 29, 2005 and December 13, 2005, Scotia Capital's Capital Markets Group also entered into three total return swaps with Canadian institutions in relation to 2,042,100 Sears Canada shares.

[21] In November 2005, Sears Canada presented a proposal to its board of directors (code named "Project Dawn") setting out a number of cost saving initiatives for an estimated total of $301 million.

[22] On December 2, 2005, Sears Canada announced that its board of directors had declared that $4.38 per share would be paid to all shareholders of Sears Canada on December 16, 2005 as a return of capital and that a $14.26 per share dividend would also be paid on that day. The Pershing Funds are non-resident shareholders of Sears Canada for the purpose of Canadian tax laws. As a result, Pershing approached SunTrust with a view to entering into cash-settled total return swaps approximately equivalent to 5.3 million Sears Canada shares (the "2005 Pershing Swaps"). The purpose of Pershing entering into the 2005 Pershing Swaps was to minimize its exposure to Canadian withholding taxes by disposing of its Sears Canada shares prior to receiving the dividend while maintaining an economic interest in the performance of Sears Canada shares. In anticipation of entering into the 2005 Swaps, Pershing sold all of its shares of Sears Canada between October 31, 2005 and December 8, 2005. Pershing has no right to terminate the 2005 Pershing Swaps prior to their scheduled expiration in December of 2006 and has no right to obtain physical settlement of the 2005 Pershing Swaps upon termination.

[23] On December 4, 2005, Sears Holdings advised the directors of Sears Canada that it intended to make an insider bid to acquire all of the Sears Canada shares not then held by Sears Holdings for a purchase price of $16.86 per share. Sears Holdings also advised the directors of Sears Canada that it

had entered into an agreement with Natcan Investment Management Inc. ("Natcan") pursuant to which Natcan has agreed to tender 9,699,862 shares of Sears Canada to the intended Offer.

[24] On December 4, 2005, Scotia Capital, having heard of the yet to be announced bid, contacted Sears Holdings to secure a retainer as the financial advisor to Sears Holdings in connection with the Offer. Between December 4 and 16, 2005, Scotia Capital concurrently sought a retainer as the financial advisor to the Special Committee of Sears Canada (described below) but was not selected because of concerns about its lack of independence due to its banking relationship with Sears Canada. On December 16, 2005, Scotia Capital pursued its effort to secure a retainer as the financial advisor to Sears Holdings. On December 29, 2005, Scotia Capital met with representatives of Sears Holdings to make a pitch for the financial advisory mandate. The retainer was formalized in an engagement letter dated January 6, 2006 (the Engagement Letter). Under the Engagement Letter, Scotia Capital was entitled to a fee of $50,000 per month and a success fee of $400,000 if the transaction was accomplished at a price at or below the initial Offer price of $16.86 per share.

### Relevant Events Relating to the Offer

[25] On December 5, 2005, Sears Holdings publicly announced its intention to make an insider bid to acquire all of the outstanding shares of Sears Canada not owned by it at a price of $16.86 per share. The announcement indicated that the insider bid would be subject to the usual condition that a majority (on a fully diluted basis) of the Sears Canada shares not owned by Sears Holdings be tendered (the Minimum Tender Condition). Sears Holdings also publicly disclosed that it had entered into a lock-up agreement with Natcan on December 3, 2005, pursuant to which Natcan had agreed to tender 9,699,862 shares, representing 9.06 percent of the outstanding shares of Sears Canada, into Sears Holdings' proposed insider bid.

[26] The next day, the board of directors of Sears Canada formed a Special Committee of its directors (the "Special Committee") which consisted of the six independent directors of Sears Canada, to supervise the preparation of a formal valuation and to review and make a recommendation to the board of directors of Sears Canada with respect to the proposed insider bid.

6

Mr. William Anderson (Anderson) was appointed Chair of the Special Committee. The Special Committee was authorized to retain independent legal counsel and independent financial advisors to assist it in carrying out its responsibilities. The Fasken Martineau law firm was retained on December 9, 2005. Genuity Capital Markets ("Genuity") was retained on December 15, 2005, to serve as independent valuator and financial advisor to the Special Committee. Genuity was asked to provide a formal valuation of Sears Canada and an opinion as to the fairness of the proposed Offer of Sears Holdings to the minority shareholders of Sears Canada.

[27] On January 10, 2006, Sears Holdings applied to the securities regulators in Ontario and a number of other provinces across Canada for exemptive relief from the requirement of Ontario securities law (and the analogous requirement in the other Canadian jurisdictions) to include a formal valuation of the Sears Canada shares in its Take-Over Bid Circular on the grounds that the Genuity valuation was not being prepared in a timely manner. Staff of the Commission (Commission Staff) advised Sears Holdings that it was not prepared to grant the requested relief at that time. However, Commission Staff agreed that such exemptive relief sought by Sears Holdings would be granted in the event that Genuity failed to deliver its valuation by the end of the week of February 6, 2006. Genuity delivered its formal Valuation and Inadequacy Opinion to the Special Committee on February 7, 2006 (the Genuity Valuation).

[28] On January 16, 2006, representatives of Sears Holdings met with Genuity to convey their views in relation to the Genuity Valuation. On January 25, 2006, Genuity advised the Special Committee that it anticipated reaching the conclusion that the consideration Sears Holdings proposed to offer to the minority shareholders of Sears Canada would be below the "bottom end of the range of the fair market value" of the common shares. The Special Committee arranged further meetings between Genuity and Sears Holdings in advance of Genuity finalizing its formal valuation and opinion regarding the insider bid. During these meetings, Genuity made a presentation to representatives of Sears Holdings concerning its valuation and methodologies.

[29] On February 6, 2006, Genuity met with and assured the Special Committee that it had given "fair consideration" to the issues and concerns that Sears Holdings had raised in respect of Genuity's valuation approach. On February 7, 2006, Genuity delivered its Valuation to the Special Committee

indicating that, in its opinion, the fair market value of the shares of Sears Canada was in the range of $19.00 to $22.25 per share and that the consideration under the proposed Offer of Sears Holdings was inadequate from a financial point of view. In its calculation of value, Genuity estimated costs savings of $95 million rather the $301 million in costs savings originally identified by the Sears Canada Project Dawn initiative.

[30] On February 6, 2006, Sears Holdings issued a press release announcing its intention to mail the Take-Over Bid Circular and that the Offer would not be subject to the previously announced Minimum Tender Condition.

[31] Scotia Capital entered into an agreement with Sears Holdings on February 8, 2006 to form and manage a soliciting dealer group. Under this agreement, and subject to a number of exceptions and limitations, soliciting dealers would be entitled to a fee of $0.10 per common share for each share tendered to the Offer.

[32] On February 9, 2006, following the delivery of the Genuity Valuation, Sears Holdings commenced its Offer for the shares of Sears Canada at $16.86 per share by distributing its Offer and Take-Over Bid Circular ("Circular") to the shareholders of Sears Canada. In its Circular, Sears Holdings was critical of the Genuity Valuation for "ignoring" the matters that had been brought to Genuity's attention by Sears Holdings. The insider bid was not subject to the Minimum Tender Condition. The Circular indicated that the Offer would expire on March 17, 2006 and that any SAT would be pursued within 120 days thereafter.

[33] Sears Canada distributed its Directors' Circular in relation to the insider bid on February 21, 2006. The voting members of Sears Canada's board (being the six independent directors comprising the Special Committee) recommended unanimously that the shareholders of Sears Canada reject the Offer and not tender their shares to the insider bid. They expressed the view that the Offer was opportunistically timed and exerted pressure on Sears Canada and its minority shareholders as evidenced by factors such as Sears Holdings' application for exemptive relief from the requirement to include a formal valuation of the shares of Sears Canada in its Circular as well as the absence of a Minimum Tender Condition. In support of this recommendation, the Special Committee noted

8

among other things, that the Offer was financially inadequate, significantly below the Genuity Valuation range and significantly below the average trading price of the shares on the Toronto Stock Exchange since the announcement of the Offer on December 5, 2005.

[34] On February 22, 2006, Sears Holdings issued a lengthy press release responding to the Directors' Circular.

[35] On February 27, 2006, Sears Canada announced that all six of the independent directors of the board of Sears Canada had given notice that they would not stand for re-election at the next annual meeting of shareholders.

[36] In late February 2006, Sears Holdings were advised by Scotia Capital that a significant number of shares of Sears Canada were potentially held by Canadian banks and had been acquired in connection with derivative trades transacted in connection with the extraordinary cash dividend paid by Sears Canada in December 2005. On February 28, 2006, Scotia Capital confirmed to Sears Holdings that based on its inquiries it estimated about 9 to 10 percent of the total shares outstanding were held by such shareholders, including 4 million shares held by BNS, 0.5 million shares held by Scotia Capital, 2 million shares held indirectly by BNS through swaps and 3 million shares held by RBC.

[37] On March 17, 2006, the initial expiration date of the Offer, Sears Holdings took up 10,161,968 Sears Canada shares of which 9,699,862 or more than 95 percent, had been deposited pursuant to the Natcan lock-up agreement. By this date, Sears Holdings owned 67,894,485 Sears Canada shares, representing 63.2 percent of the total outstanding shares.

[38] On March 20, 2006, Sears Holdings issued a Notice of Extension of its insider bid to March 31, 2006. The Notice of Extension indicated that, if "Sears Holdings does not acquire a majority of the minority of Sears Canada", it will support the elimination of what it characterized as the "recent practice" of Sears Canada of paying quarterly dividends. This message was also conveyed by Sears Holdings in a press release it issued that same day.

[39] On March 28, 2006, Sears Holdings entered into Support Agreements with each of BNS and Scotia Capital at a price of $16.86 per Sears Canada share. On the same day, Sears Holdings entered into Escrow Agreements with each of BNS and Scotia Capital for a total of 4,511,000 shares. These Escrow Agreements provide that the Support Agreements involving BNS and Scotia Capital would be held in escrow until at least a majority of the Sears Canada shares held by the minority shareholders was acquired by Sears Holdings pursuant to its insider bid or had become subject to support agreements substantially similar to the Support Agreements entered into by BNS and Scotia Capital.

[40] On March 31, 2006, Pershing sold 1,600,000 shares of Sears Canada to SunTrust and entered into another cash-settled total return swap transaction with SunTrust (the "2006 Pershing Swaps"), on substantially the same terms as the 2005 Pershing Swaps. SunTrust offered Pershing the alternative of cash or physical settlement. At the time Pershing entered into the swap it elected cash settlement. Pershing did not maintain a legal or beneficial interest in, or the power to exercise control or direction over, the voting rights in respect of the Sears Canada shares that were sold by it at the end of March.

[41] On April 1, 2006, Sears Holdings entered into a deposit agreement with Vornado (the Vornado Agreement) whereby Vornado agreed to deposit its 7,500,000 shares of Sears Canada to a revised Offer by Sears Holdings at an increased price of $18.00 per share and an extended expiry date. These shares were subsequently deposited and taken up such that Sears Holdings owned 75,441,763 (70.2 percent) of the outstanding Sears Canada shares. Pursuant to the terms of the Vornado Agreement, Sears Holdings agreed to provide Vornado with price protection until December 31, 2008 as a result of which it would pay to Vornado the highest price paid to any other shareholder of Sears Canada under its insider bid. Sears Holdings also provided a "litigation release" (the Release) to Vornado as discussed more fully below. Sears Holdings undertook to cause Sears Canada to provide the same Release in favour of Vornado.

[42] On April 3, 2006, Sears Holdings disclosed the Vornado Agreement in a press release. It also announced that it had increased its Offer to the shareholders of Sears Canada from $16.86 per share to $18.00 per share and extended its Offer to April 19, 2006. Sears Holdings further indicated that its

Offer had been amended to provide that any dividend paid by Sears Canada after the date of the Offer, including regular quarterly dividends would have to be remitted to Sears Holdings by shareholders who tender.

[43] Sears Holdings issued a Notice of Extension and Variation on April 4, 2006, which described the amendments to the Offer and extended to all shareholders of Sears Canada whose shares were acquired pursuant to the Offer the price protection that had been granted to Vornado. The Release was not referred to.

[44] On April 5, 2006, Pershing purchased 204,000 additional shares of Sears Canada, which brought its ownership to approximately 3.47 percent of the outstanding shares of Sears Canada.

[45] On April 5, 2006, Sears Holdings entered into a Support Agreement with RBC in respect of 3.1 million of the 3.9 million Sears Canada shares owned by RBC.

[46] On April 6, 2006, Sears Holdings announced that unnamed shareholders holding 7,611,000 Sears Canada shares (being the number of shares subject to the Support Agreements with BNS, Scotia Capital and RBC) had agreed to vote in favour of a SAT at $18.00 a share to be effected either as a share consolidation or plan of arrangement. Sears Holdings also stated that Sears Holdings and its affiliates "will own or have support commitments for sufficient shares to assure the necessary shareholder approval of a going private transaction of Sears Canada at the offer price of C$18.00 per share."

[47] The same day, Pershing acquired 1,868,400 additional shares of Sears Canada, increasing its interest to 5.21 percent and Hawkeye purchased 100,000 shares of Sears Canada.

[48] On April 7, 2006, Pershing issued a press release regarding its ownership of Sears Canada shares pursuant to section 102 of the Act.

[49] Sears Holdings issued a Notice of Variation and Change of Information dated April 7, 2006 extending the expiry date of its Offer to August 31, 2006. It described the terms, but not the parties with whom it had entered into the Support Agreements. It also indicated that a subsequent going

private transaction was expected to close in December 2006. The extension by Sears Holdings of its Offer from April 19, 2006 to August 31, 2006 would ensure that no more than 120 days would elapse between the expiry of the Offer and the SAT. This meant that it would avoid the need to obtain a new independent valuation and would also allow shares tendered under the insider bid to be counted when the required "majority of the minority" approval was sought in connection with the SAT.

[50] On April 10, 2006, Sears Canada issued two press releases concerning changes to the composition of its senior management team. In the first press release, Sears Canada announced that Brent Hollister, the President and CEO of Sears Canada would be stepping down effective May 9, 2006, would leave the company and would not stand for re-election to its board of directors. The second press release announced that Dene Rogers, a senior executive of Sears Holdings, had been appointed to the role of Acting President of Sears Canada, effectively replacing Mr. Hollister.

[51] On April 12, 2006, the independent directors of Sears Canada issued a Notice of Change of Directors' Circular relating to the revised Offer. This Notice of Change indicated that on April 11, 2006, Genuity had provided to members of the Special Committee a summary of its updated Valuation and Inadequacy Opinion together with a description of the due diligence it had undertaken in its preparation. The Notice included a copy of the updated Genuity Valuation which reaffirmed that the fair market value of Sears Canada shares as of April 11 was $19.00 to $22.25 and that Sears Holdings' revised Offer remained inadequate. The Notice also stated that the Special Committee had unanimously determined not to make a recommendation concerning the revised Offer. The Special Committee continued to have a number of reservations with respect to the revised Offer of Sears Holdings which were detailed in this Notice of Change.

[52] On April 14, Pershing, Hawkeye and Knott formed a group to oppose the efforts of Sears Holdings to take Sears Canada private. On April 17, 2006, they jointly announced that they had formed a group to "take all appropriate action to halt" the Sears Holdings bid. They also disclosed that they collectively owned 8,241,572, approximately 7.7 percent, of the then outstanding common shares of Sears Canada.

12

[53] On May 9, 2006, Sears Canada held its annual meeting at which a new board was elected comprised of four Sears Holdings employees, an employee of Sears Canada and three "independent" members nominated for election by Sears Holdings.

## D. The Hearing

[54] The hearing on the merits to consider the two Applications commenced on July 4, 2006 and took place over three consecutive days. We heard evidence over the first two days of the hearing and closing submissions were made by the parties on the last day. In total, seven witnesses were called to testify. They were: William Ackman, the founder and principal of Pershing; William Anderson, the Chair of the Special Committee of Sears Canada; Richard Murawczyk, an investment analyst and member of Knott; Richard Rubin, a managing member of Hawkeye; William C. Crowley, the Executive Vice President, Chief Financial Officer and Administrative Officer of Sears Holdings; Kieran O'Donnell, an employee of BNS and a member of the Capital Markets Group of Scotia Capital; and Greg Rudka, an employee in the Investment Banking Group of Scotia Capital.

## II. Summary of Allegations and Relief Sought by Sears Holdings

## A. The Allegations

[55] The main allegations or submissions made by Sears Holdings against the Pershing Group are summarized as follows:

> (1) Pershing and its joint actors acquired beneficial ownership of common shares of Sears Canada during the Offer period and failed to comply with the early warning disclosure requirements under sections 101 and/or 102 of the Act;

> (2) Pershing issued a news release with respect to its acquisition of common shares of Sears Canada during the Offer period that failed to comply with the requirements of section 198 of the Regulations and contained material misrepresentations contrary to section 126.2 of the

Act;

(3) Pershing and its joint actors engaged in activities that resulted in an artificial price of Sears Canada shares contrary to section 126.1 of the Act; and

(4) Pershing and its joint actors engaged in abusive minority tactics contrary to the public interest.

## B. Order Sought by Sears Holdings

[56] Sears Holdings seeks the following relief from the Commission:

(i)      an order that Pershing and its joint actors be reprimanded;

(ii)     an order requiring that Pershing and its joint actors comply with Part XX and the related regulations by selling into the market the common shares of Sears Canada each of them purchased during the period in which they were required to disclose their position as joint actors under Part XX but failed to do so;

(iii)    an order requiring that Pershing and its joint actors be prohibited from acquiring any further common shares of Sears Canada;

(iv)    or in the alternative, an order directing that the votes attached to any common shares of Sears Canada owned or controlled by Pershing and its joint actors be excluded in determining whether minority approval of any subsequent acquisition transaction in connection with the Offer has been obtained pursuant to Rule 61-501.

## III. Sears Holdings – Allegations Against the Pershing Group

14

[57] Sears Holdings alleges that the Pershing Group has violated sections 101, 102, 126.1 and 126.2 of the Act and has engaged in abusive minority tactics contrary to the public interest. The particulars of their allegations are discussed below.

## A. Did Pershing Violate the Early Warning Requirements of Sections 101 and 102 of the Act?

[58] On April 7, 2006, Pershing issued a press release (the "April 7 Press Release") disclosing that it owned 5,601,400 common shares of Sears Canada, representing approximately 5.2 percent of the outstanding common shares. This was Pershing's first public disclosure filing relating to its holdings in Sears Canada. In the same press release, Pershing also disclosed, for the first time, that Pershing was entitled to the economic benefit of an additional 6,900,000 common shares of Sears Canada as a result of certain cash-settled derivatives transactions it had entered into with SunTrust (the 2005 and 2006 Pershing Swaps).

[59] Between October 31 and December 8, 2005, Pershing sold its then entire position of 5.3 million Sears Canada Shares in connection with entering into the 2005 Pershing Swaps. Mr. Ackman testified at the hearing that these shares were sold in "market-on-close" transactions which were arranged by SunTrust with one or more ultimate counterparties including BNS (although at the time of the trades the identity of the counterparty was not known to Pershing).

[60] According to Mr. Ackman's Affidavit of June 14, 2006, the purpose of entering into the 2005 Pershing Swaps "was to minimize its exposure to Canadian withholding taxes by disposing of its Sears Canada shares prior to receiving the Sears Canada dividend while maintaining an economic interest in the performance of Sears Canada shares." Mr. Ackman further indicated that the 2005 Pershing Swaps were arranged in the fall of 2005 before Sears Holdings announced its intention to proceed with its Offer.

[61] On March 16, Pershing began again to purchase shares of Sears Canada in the open market and continued to do so up until April 6, 2006.

15

[62] On March 31, 2006, Pershing sold 1,600,000 shares of Sears Canada and entered into another equity swap transaction with SunTrust for an equivalent number of shares. This occurred prior to Sears Holdings' announcement that it had entered into the Vornado Agreement and the Support Agreements.

*Evidence, Law and Analysis*

[63] Sears Holdings alleges that the Pershing Group, due to their actions with each other and/or with third parties, violated sections 101 and 102 of the Act by failing to comply with the applicable early warning disclosure requirements.

[64] Subsection 101(1) of the Act requires an "offeror that acquires beneficial ownership of, or the power to exercise control or direction over ... voting or equity securities of any class of a reporting issuer that, together with each offeror's securities of that class, would constitute 10 percent or more of the outstanding securities of that class" to issue and file forthwith a news release containing the prescribed information and, within two business days, to file a report. For purposes of section 101, an offeror is defined to include a person or company who acquires a security, whether or not by way of a take-over bid, issuer bid or offer to acquire.

[65] During the course of a formal take-over bid, the relevant reporting threshold pursuant to section 102 of the Act is reduced from 10 percent to 5 percent. The purpose of section 102 of the Act is to provide a signal to the marketplace that competing bidders may be interested in making a formal bid (or blocking a formal bid) and that others are purchasing the target issuer's shares [*Securities Law & Practice*, Thomson Canada Limited, 2006, at para. 20.15.1].

[66] The trading records over the relevant period of time showed that Hawkeye and Knott owned 1.4 percent and 1 percent, respectively, of the total outstanding shares of Sears Canada and therefore did not violate sections 101 or 102 of the Act in the absence of any finding that they were joint actors with Pershing.

16

[67] Similarly, the trading records indicate that at no point during the relevant time did Pershing own more than 10 percent of the outstanding Sears Canada shares. On its face, and subject to the discussion below, Pershing did not violate section 101 of the Act.

[68] Pershing's trading records show that between February 9, 2006 (the day the bid was made) and April 6, 2006 (the last day that Pershing acquired Sears Canada shares), Pershing crossed the five percent reporting threshold of section 102 of the Act on April 6, 2006 as a result of its purchase of 1,868,400 Sears Canada shares. The next business day, Pershing issued the previously discussed April 7 Press Release. Based on this evidence, Pershing did not violate section 102 of the Act.

[69] The analysis does not end there, however. In determining whether a party has acquired securities in excess of the 10 percent and 5 percent thresholds in sections 101 and 102 of the Act, respectively, one must aggregate the number of securities which a party beneficially owns or exercises control or direction over, with those which its "joint actors" beneficially own or exercise control or direction over. In other words, the relevant thresholds in sections 101 and 102 of the Act are aggregated for persons acting "jointly or in concert".

[70] Section 91 of the Act provides that it is a question of fact as to whether persons are "acting jointly or in concert". The purpose of section 91 of the Act is to ensure that all persons or companies who are effectively engaged in a common investment or purchase program, whether in support of, or in opposition to, a take-over bid, abide by the rules that govern securities transactions prior to, during and subsequent to the bid (*Report of the Committee to Review the Provisions of the Securities Act (Ontario) Relating to Take-Over Bids and Issuer Bids* (Toronto: Securities Commission, September 23, 1983)).

### (i)    Were Pershing and Vornado "Joint Actors"?

[71] Sears Holdings has asked us to determine, as a matter of fact, that Pershing was acting jointly and in concert with Vornado, at least up until the time that Vornado decided to enter into the Deposit

Agreement with Sears Holdings on April 1, 2006. If we were to reach that conclusion based on the evidence, they say Pershing would have contravened both sections 101 and 102 of the Act because Sears Canada shares acquired by Pershing from March 16 to March 31, 2006, when aggregated with the 7.5 million Sears Canada shares then held by Vornado, would have exceeded both the 10 and 5 percent thresholds set out in these sections.

[72] What did the evidence establish about the relationship between Pershing and Vornado? On or about February 15, 2005, Pershing entered into an arrangement with Vornado pursuant to which Pershing agreed to split with Vornado its purchases of Sears Canada shares. Between February and September, 2005, Pershing sold to Vornado approximately 7,400,000 Sears Canada shares pursuant to this arrangement.

[73] Mr. Ackman, during his cross-examination by counsel for Sears Holdings, indicated that this joint purchasing arrangement with Vornado was oral and was both entered into and terminated over the telephone. Mr. Ackman explained that, as both Vornado and Pershing wanted to buy Sears Canada shares over the relevant period, Vornado suggested that they split the stock purchases rather that "compete in the marketplace". Mr. Ackman testified that the arrangement was terminated at the end of September because Vornado "had no interest in buying additional shares".

[74] In support of its allegation of continuing "joint activity" between Pershing and Vornado, counsel for Sears Holdings drew to our attention a "finder's fee" of $2.5 million that Vornado indicated it would pay to Pershing towards the end of February, 2006. Mr. Ackman confirmed in his Reply Affidavit and in his testimony that in the fall of 2005, he had approached Mr. Roth, Chairman and CEO of Vornado, and requested that Vornado pay Pershing a finder's fee for bringing the Sears Canada investment opportunity to the attention of Vornado and that Mr. Roth had agreed to consider Pershing's request. When pressed as to the unexplained timing gap between the request and Vornado's decision to pay the fee Mr. Ackman testified that:

> "I think the reason why he had to determine – finalize the amount of the fee in February, is they were in the process of filing their 10-K with the SEC, and that they needed to accrue for what the amount of the fee was in preparation with that filing."

18

(Hearing Transcript dated July 4, 2006 at page 90)

[75] According to the evidence, on April 2, 2006, Mr. Roth of Vornado phoned Mr. Ackman at home to alert him to the fact that he had entered into the Deposit Agreement with Sears Holdings. This call came one day prior to Sears Holdings' public announcement relating to the Vornado Agreement. The evidence was that Mr. Ackman was surprised by this turn of events. There was no evidence advanced to suggest that Mr. Ackman knew of the Vornado Agreement or the negotiations that led up to it prior to this point in time.

[76] In this regard, Sears Holdings relied upon an e-mail that was sent from Mr. Ferguson of Pershing after Pershing learned of the Vornado Agreement, in which he stated: "I can't believe these guys tendered. Talk about getting sold out."

[77] Mr. Ackman explained this comment, however, in the course of his evidence as follows:

> "It was not a good day for minority shareholders of Sears Canada when Vornado announced the Deposit Agreement because it increased the probability that minority holders were going to get squeezed out at a below-market price, a price significantly below fair value.
>
> What made it particularly upsetting to us is that we brought this idea to Vornado to begin with. So here we give them this investment idea on which they made a hundred million dollars, and then they effectively cost us a lot of money by choosing to tender. And had we not even brought this idea to the attention of Vornado, we would have been much better off. And I think Mr. Ferguson is expressing that frustration."

(Hearing Transcript dated July 4, 2006 at page 97)

[78] We accept Mr. Ackman's explanation for this e-mail and reject Sears Holdings' contention that it provides evidence of joint activity between Pershing and Vornado over the period of the Offer.

19

[79] Sears Holdings submits that a formal agreement between parties, while helpful in establishing joint actor status from an evidentiary point of view, is not a prerequisite (*Re 243978 Alberta Limited et al.* (1982), 4 O.S.C.B. 566C). We agree with this general proposition. However, in the absence of the proverbial "smoking gun", there must be evidence to support a finding that parties have acted jointly or in concert. Credible and plausible alternative explanations were provided by Pershing, as noted above, in reference to the evidence relied upon by Sears Holdings in support of its allegation. We therefore conclude that the evidence does not support Sears Canada's contention that Vornado and Pershing acted jointly or in concert for purposes of their obligations under sections 101 and 102 of the Act or in connection with the Offer more generally.

[80] We note, in obiter, that Sears Holdings' allegations were focused on Pershing having acted jointly or in concert with Vornado. The necessary corollary to such a finding (which we have rejected as noted above) would be that Vornado acted jointly or in concert with Pershing although no such allegation was made by Sears Holdings against Vornado. Sears Holdings' request that the Commission exclude the votes attached to shares of Sears Canada owned or controlled by "Pershing and its joint actors" for purposes of determining minority approval of the SAT may equally have applied to Vornado had we made a finding of joint actor status as we were urged to do so by Sears Holdings. In light of our determination on this issue, we need not address the consequential implications that a finding against Pershing might have had on Vornado.

### (ii)    Are Pershing, Hawkeye and Knott Joint Actors?

[81] The essence of Sears Holdings' allegation is that the principals behind the Pershing Group – Mr. Ackman of Pershing, Mr. Rubin of Hawkeye and Mr. Murawczyk of Knott – purchased shares during the Offer period as a result of an agreement, commitment or understanding with each other with respect to Sears Canada shares and in order to "thwart the Offer" and to prevent Sears Holdings from securing the "majority of the minority" approval required for the SAT to proceed.

[82] Their allegations in this regard involve Mr. Mayers of Desjardins Securities Inc. (Desjardins), a broker who had telephone conversations with the Pershing Group principals over the period of the

Offer. In the course of cross-examination, Mr. Ackman, Mr. Rubin and Mr. Murawczyk were asked to explain various conversations that each of them had had with Mr. Mayers in relation to the Offer. These conversations were contained in a transcript that had been prepared at the behest of Commission Staff based on tapes of telephone conversations previously provided to Commission Staff by Desjardins.

[83] Sears Holdings submitted that, in the event the Commission were to determine that the Pershing Group acted jointly and in concert prior to April 6, 2006 (the date of the last purchase of Sears Canada shares by one of the Pershing Group parties), this would support a finding of a breach of section 102 of the Act because, taken together, the Pershing Group holds more than 5 percent of the outstanding shares of Sears Canada.

[84] The evidence established that, on April 6, 2006, the Pershing Group met to discuss the Sears Canada situation. Messrs. Ackman and Rubin attended a meeting held on April 10, 2006, organized by Mr. Mayers. They apparently discussed Mr. Mayers' proposal that he be elected as an independent director of Sears Canada. We learned little about the outcome of this meeting.

[85] The evidence was that the Pershing Group determined on April 14 to form a group to oppose the Offer and Sears Holdings' efforts to take Sears Canada private. This was the subject of a press release issued on April 17 by the Group. It stated, in part, as follows:

> "... These shareholders believe that Sears Holdings is engaging in coercive tactics to force the minority shareholders of Sears Canada to enter into an undervalued and unsupported offer. As such, the group intends to take all appropriate legal action to halt the transaction so Sears Canada remains a public company, or, alternatively, to ensure that those shareholders who desire to sell their shares in Sears Canada are treated fairly."

(Exhibit 63 to the Pershing Application Record)

[86] Despite lengthy cross-examinations of Mr. Ackman as well as Mr. Rubin and Mr. Murawczyk, the evidence does not support the allegation that the Pershing Group parties acted jointly or in concert prior to April 14 when they clearly joined forces and promptly announced their joint purpose in the April 17 Press Release referenced above.

[87] In support of their allegations, Sears Holdings relied upon the Desjardins transcript to show that Mr. Mayers and Mr. Ackman were attempting to make lists of shareholders that opposed the bid. However, counsel for Pershing, in his closing submission, argued that this activity was innocuous and reflected the same process that was going on in the Sears Holdings camp. Counsel for Pershing in referring to Mr. Ackman' testimony described the process as follows:

> "This is like an election. You keep a tally. You try and figure out who is going to do what. There is nothing wrong in that. It happens all the time. Who is a friend? Who is a foe?"

> (Hearing Transcript dated July 6, 2006 at page 127)

[88] For purposes of section 102 of the Act, subsection 89(1) of the Act provides that an "offeror's securities" includes securities "beneficially owned, or over which control or direction is exercised, on the date of an offer to acquire, by the offeror or any person acting jointly or in concert with the offeror."

[89] Although the Act does not define "control or direction" over securities, the Commission has held that in order to exercise control or direction over shares of a company not owned by the offeror, the offeror must have the ability to exercise the attributes of ownership – voting power and investment power, including the power to acquire or dispose of the shares (*Re Robinson* (1996), 19 O.S.C.B. 2643 at 2675).

[90] Based on the evidence and for the reasons set out above, we have concluded that Sears Holdings has failed to make out its claim that Pershing, Hawkeye and Knott were acting jointly or in concert prior to April 6, 2006, and we therefore do not find that they violated section 102 of the Act.

### *(iii)* *Did Pershing Use Swaps to Avoid Disclosure Obligations?*

[91] In their written submissions, Sears Holdings alleged that "Pershing contravened sections 101 and 102 of the Act through its use of swap arrangements to dispose of beneficial ownership of its Sears Canada shares with the understanding that it would exercise a degree of direction or control over the shares that were the subject of the swaps."

[92] Sears Holdings also alleges that Pershing and its joint actors have engaged in abusive minority tactics by seeking to "park" 6.9 million common shares of Sears Canada that are the subject of total return swaps with SunTrust, with the understanding that: (a) the Pershing/SunTrust Swaps could be unwound and the 6.9 million shares returned to Pershing; and (b) in any SAT, the votes attached to the 6.9 million shares would be voted as directed by Pershing or not voted at all.

[93] Based on this understanding, Sears Holdings submits that Pershing secretly acquired shares of Sears Canada in the market during the Offer period, without disclosing to the public the fact that Pershing understood it had control or direction of the votes attached to these shares. Sears Holdings submits that Pershing understood that the 6.9 million shares that were the subject of the swaps would either be returned to Pershing or not voted, and therefore it had "parked" the 6.9 million shares by removing them from the pool of shares that would be voted in the minority approval of the SAT.

[94] Sears Holdings further alleges that Pershing used the swap transactions to avoid its reporting obligations under the Act. This "parking behaviour" on the part of Pershing, they say, raises serious public interest concerns, and even if no breach of the Act can be proven, constitutes abusive minority tactics that ought to engage the public interest jurisdiction of the Commission.

[95] Pershing sold 5.3 million Sears Canada shares in connection with entering into the Pershing 2005 Swaps. As discussed above, they did so for tax reasons relating to the extraordinary dividend that had been declared by Sears Canada as a result of the sale of its Credit Card business in the fall of 2005.

23

[96]  On March 31, 2006, Pershing entered into a further swap transaction with SunTrust involving 1,600,000 Sears Canada shares.

[97]  In their written submissions, Sears Holdings acknowledged that: "The effect of the swap arrangements between Pershing and SunTrust, all of which ended up being cash-settled swaps, was that Pershing would maintain an economic interest in the performance of ... Sears Canada shares." (Sears Holdings Written Submissions at para. 115.)

[98]  Mr. Ackman was forthright in giving his evidence with regard to the Pershing 2005 Swap Transactions. He confirmed that he liked Sears Canada as an investment and wanted to retain economic ownership. He wanted to participate in "the appreciation of the stock" despite the need to sell the actual shares to avoid an undesirable tax consequence at the time (Hearing Transcript dated July 4, 2006 at page 179).

[99]  With respect to the reason for the Pershing 2006 Swap which, as Mr. Ackman put it had initially puzzled Commission Staff, he explained that he did not expect, based on what he knew about Mr. Lampert's approach to business transactions, that Mr. Lampert would raise his bid above $16.86. [Edward Lampert is the Chairman of Sears Holdings Corporation and the Chairman of ESL Investments].  Indeed, Sears Holdings had said as much publicly. The shares of Sears Canada had consistently traded above the Offer price and with the bid set to expire on March 31, Mr. Ackman believed the insider bid would fail and Sears Canada would remain a public company.

[100] Pershing therefore began to purchase shares of Sears Canada in the open market as of March 16. Mr. Ackman described himself as a long-term investor in Sears Canada who bought shares "before Mr. Lampert ever owned a single share." He testified that he believed in the long term prospects of the company.

[101] In reference to the Pershing 2006 Swap, Mr. Ackman's evidence was that he wanted to increase his exposure to the shares of Sears Canada while remaining below a public reporting position. When pressed to explain this by counsel for Sears Holdings, Mr. Ackman explained his motive as follows:

"... I wanted to be able to maintain this economic ownership in Sears without raising – without Eddie Lampert knowing that I wanted to – that I was the guy who had been buying stock during his offer.

And the reason why I didn't want to do that is it's like throwing, you know, salt into the eyes of the dragon. You know you don't go off and – it's an act of war, in a situation like this, for me to surface as a buyer of a stock in his deal."

(Hearing Transcript dated July 4, 2006 at page 191)

[102] In other words Mr. Ackman did not want to antagonize Mr. Lampert, a significant participant in the U.S. capital markets, with whom he expected to have business dealings in the future.

[103] As it turns out, when Pershing sold its shares in 2005 in connection with the Pershing 2005 Swaps, BNS was a purchaser of the shares. Pershing did not know who had purchased the shares and BNS did not know who had sold them. It is self-evident that Pershing did not continue to exercise "control or direction" over the shares it sold which were bought by BNS.

[104] The Pershing 2006 Swap was a cash-settled transaction. Mr. Ackman's Affidavit states that Pershing did not maintain a legal or beneficial interest in, or the power to exercise control or direction over, any or the 1,600,000 Sears Canada shares related to the Pershing 2006 Swap.

[105] In their written submissions, Commission Staff maintain that, even if the 1,600,000 Sears Canada shares were under the control or direction of Pershing after March 31, the trading data provided by Pershing shows that it would not have affected the date by which Pershing crossed the 5 percent threshold contained in section 102 of the Act. There was no evidence adduced by Sears Holdings to support a finding that Pershing and its Swap counterparties had an understanding that the shares would be returned or otherwise made available to be voted so that Pershing could be said to exercise "control or direction" over the shares within the meaning of sections 101 and 102 of the Act notwithstanding that Pershing did not have legal ownership.

25

[106] Based on the evidence and the law, there is no basis to conclude that Pershing violated sections 101 and 102 of the Act through the use of the Pershing 2005 and 2006 Swaps.

[107] This still leaves the issue of whether their conduct in using the swaps to avoid disclosure obligations under the Act was "abusive of the capital markets" so as to engage the Commission's public interest jurisdiction.

[108] Counsel for Pershing relies upon the fact that swap arrangements are "perfectly normal economic transactions". In closing argument, he said:

> "They are entered into all of the time by many of the participants in this proceeding and there is nothing whatsoever untoward about entering into a swap transaction. It is a common practice. It is entirely consistent with the actions of a valued investor who believes strongly in the prospects of the company, but does not to want to own the shares."

> (Hearing Transcript dated July 6, 2006 at pages 122-123).

[109] Counsel for Pershing pointed out to us that Pershing's assessment of its reporting obligations in relation to the swaps was apparently shared by RBC. Evidently, between April 3 and 6, 2006, RBC, which owned 3.9 million Sears Canada shares at the time, purchased cash-settled swaps on 3.9 million shares for a total economic exposure of 7.8 million shares constituting approximately 7.2 percent of the outstanding Sears Canada shares. It made no public disclosure of these transactions.

[110] Based on the evidence we heard and in light of Mr. Ackman's explanation as to the reason he entered into the Pershing 2005 and 2006 Swaps, we have concluded that there is insufficient evidence to support a finding that Pershing's conduct in this regard was abusive of the capital markets so as to invoke our public interest jurisdiction under section 127 of the Act.

[111] This finding is based on the evidence and circumstances of this case. We wish to underscore that there might well be situations, in the context of a take-over bid, where the use of swaps to "park

26

securities" in a deliberate effort to avoid reporting obligations under the Act and for the purpose of affecting an outstanding offer could constitute abusive conduct sufficient to engage the Commission's public interest jurisdiction. This is not such a case.

## B. Did Pershing's April 7 Press Release Violate Section 198 of the Regulation?

[112] On April 7, 2006, Pershing issued a Press Release announcing that it had acquired more than 5 percent of the shares of Sears Canada. The Press Release disclosed that Pershing held 5,601,400 Sears Canada shares and was entitled to the economic benefit of an additional 6,900,000 shares, for a total economic interest in Sears Canada equal to approximately 11.6 percent.

[113] Sears Holdings alleges that the Pershing Press Release failed to disclose either Pershing's purpose in acquiring Sears Canada shares during the Offer period or its intention to acquire further common shares of Sears Canada in violation of section 198(e) of the Regulation under the Act.

[114] Sears Holdings submits that the April 7 Press Release was silent on the purpose of Pershing in acquiring shares during the Offer period, stating only that:

> "Pershing Square and its affiliates intend to exercise all of their legal rights, including appraisal rights to ensure that their reasonable expectations are not frustrated and to ensure that they receive fair value for their investments in Sears Canada."

> (Sears Holdings Written Submissions at para. 149)

[115] It was obvious, they say, that this was not the only purpose Pershing had in acquiring shares during the Offer period. Rather, given that Pershing acquired shares after Sears Holdings announced that majority of the minority approval of the SAT was assured, Sears Holdings says that the true purpose was to maintain the price of Sears Canada shares above the Offer price. This true purpose was not disclosed, they say. Additionally, in failing to disclose that Pershing was acting jointly or in

27

concert with other shareholders including Knott and Hawkeye in order to thwart the Offer, Pershing's Press Release also violated section 126.2 of the Act.

[116] We note that, in addition to the paragraph in the Press Release which Sears Holdings pointed out to us in support of their allegation, reproduced above, the Press Release also says:

> "Pershing Square believes that the consideration offered by Sears Holdings Corporation ... has been, and continues to be, wholly inadequate and intends that the Pershing Square funds will remain shareholders of Sears Canada rather than accept the current offer by Sears Holdings."

> (Exhibit 58 of the Pershing Group Application Record)

[117] It appears to us that this expression of dissatisfaction with the Offer combined with their stated intention to remain shareholders of Sears Canada is consistent with their actions in purchasing shares on April 6, 2006 and constitutes adequate disclosure for purposes of section 198 of the Regulation.

[118] Similarly, we reject any claim that the Press Release failed to disclose "any future intention to increase the beneficial ownership, control or direction" of Pershing over shares of Sears Canada. As Pershing's counsel put it:

> "...Pershing Square had no intention when its press release was issued on April 7, 2006 to acquire, and has not in fact acquired, any additional legal or beneficial ownership of, or control or direction over, Sears Canada shares...

> Holdings seeks to impute to Pershing Square an intention it did not have, and then to fault Pershing Square for failing to disclose this non-existent intention. For obvious reasons its contention is fallacious."

> (Pershing Group's Written Submissions at paras. 326 and 327)

28

[119] In conclusion, we find that Pershing's April 7 Press Release constituted adequate disclosure for purposes of section 198 of the Regulation and dismiss Sears Holdings' allegation in this regard.

## C. Did Pershing Engage in a Course of Conduct that Violated Sections 126.1 and 126.2 of the Act?

[120] Sears Holdings alleges that Pershing and its joint actors engaged in a course of conduct that they knew, or ought reasonably to have known, would result in an artificial price for the Sears Canada shares contrary to section 126.1 of the Act by secretly acquiring shares during the Offer period and by orchestrating carefully "calculated and unattributed" press coverage for the purpose of maintaining the price of Sears Canada shares.

[121] It is submitted that Pershing was timing its purchases of Sears Canada to maintain its share price above the Offer price. Sears Holdings submits that this conduct violated section 126.1 of the Act because Pershing and its joint actors knew or reasonably ought to have known that it would result in an artificial price for the shares of Sears Canada.

[122] Two provisions in the Act address the issue of market manipulation. Section 126.1 of the Act provides that:

> 126.1    A person or company shall not, directly or indirectly, engage in or participate in any act, practice or course of conduct relating to securities or derivatives of securities that the person or company knows or reasonably ought to know,
>
> > (a) results in or contributes to a misleading appearance of trading activity in, or on artificial price for, a security or derivative of a security; or
>
> > (b) perpetrates a fraud on any person or company.

[123] Section 126.2 of the Act prohibits a person or company from making a statement that the person or company knows or reasonably ought to know is misleading or untrue in a material respect or omits to state a fact required to be stated in order to make a statement not misleading where the statement would reasonably by expected to have a significant effect on the market price of a security.

[124]   The essence of Sears Holdings' allegation in this regard is that Pershing and its joint actors violated section 126.1 of the Act by deliberately timing their purchases of Sears Canada shares during the Offer period in order to artificially maintain the price of the shares above the Offer price.

[125]   Sears Holdings contends that the timing of Pershing's purchases on March 16 (the day before the Offer was originally scheduled to expire) and on April 6 (the same day the Support Agreements were announced) supports the inference that these purchases were made by Pershing to maintain the price of Sears Canada shares.

[126]   They maintain that this trading activity was coupled with a media campaign in which Pershing attempted with the assistance of Mr. Mayers of Desjardins, by means of incomplete and misleading disclosure to reporters, to create the impression that the SAT would not occur due to failure to win majority of minority approval, the Offer would fail and a higher Offer price would be forthcoming.

[127]   What is an "artificial price" for a security? An artificial price for a security is one that differs from the price that would prevail had the market operated freely and fairly on the basis of true market supply and demand. Creating a misleading appearance of trading activity in a security distorts normal forces of supply and demand and such conduct is contrary to the public interest because it misleads other buyers and sellers (*Re Roche Securities Ltd.*, [2004] A.S.C.D. No 400 (QL) at paras. 53-57; and *Re Podorieszach*, (2004) ABSECCOM REA #1459118v1).

[128]   Securities regulators generally evaluate allegations of market manipulation by considering the nature of the trades and the circumstances surrounding their execution. Individual trades must not be reviewed in isolation. Similarly, the conduct of an alleged market manipulator must be

considered as a whole to determine whether he or she has attempted to sustain an artificial price by creating the appearance of public interest at a particular price level (*Re Cycomm International Inc.* (1994), 17 O.S.C.B. 21; *Re Fatir Hussain Siddiqi*, [2005] B.C.S.C.D. No 542 (QL) at paras. 114-118).

[129]  Pershing's counsel submits, and Commission Staff agrees, that there was either no, or insufficient, evidence led to support a finding that Pershing breached either section 126.1 or section 126.2 of the Act.

[130]  The Pershing Group's trades were executed through the facilities of the TSX at the prevailing market price. They were executed during the trading day, not timed to coincide with the close of the market.

[131]  Sears Holdings asks us to conclude, based on the fact that Pershing's trades took place on March 16 and April 6, as noted above, that the purchases were made for the purpose of maintaining the price of Sears Canada shares.

[132]  Intent to manipulate can be inferred from circumstantial evidence. However, where two alternative inferences are equally plausible, intent to manipulate will not generally be inferred (*Sebastian v. Golden Capital Securities Ltd.*, [2006] B.C.J. No. 506 (Sup. Ct.) (QL) at para. 34).

[133]  The conduct of Pershing and the Pershing Group when viewed as a whole, and in light of the surrounding circumstances, is consistent with their stated view that Sears Canada shares were undervalued, that the bid price was inadequate and that they would oppose the Offer.

[134]  Pershing's counsel submits that, from the time that Sears Holdings first announced its Offer, Sears Canada shares have consistently traded at a premium to Sears Holdings' Offer price. He submits that, during this period of time, there were 120 trading days and the Pershing Group only executed trades in shares of Sears Canada on fewer than 10 percent of those days. These facts suggest that other shareholders of Sears Canada, besides the Pershing Group, must also have believed the bid price to be inadequate given that they were executing trades in the market at a premium to it.

[135]   Based upon the evidence and for the reasons discussed above, we dismiss Sears Holdings' allegations that Pershing and its joint actors breached sections 126.1 and 126.2 of the Act through their trading activity.

[136]   In conclusion, and for the reasons set out above, all of the allegations made by Sears Holdings against the Pershing Group are dismissed.

## IV. Summary of Allegations and Relief Sought by the Pershing Group

### A. The Allegations

[137]   The Pershing Group states that its Application concerns the "important issue of whether the minority shareholders of a public company in Ontario are entitled to be treated equally and fairly when a bid is made by the majority shareholder of that company for their shares". The Application allegedly concerns unprecedented conduct by Sears Holdings that calls into question the "fairness, efficiency and integrity of the capital markets".

[138] The allegations in the Application filed on behalf of the Pershing Group in relation to Sears Holdings and its insider bid are summarized as follows:

(1)   Sears Holdings violated subsection 97(2) of the Act by entering into the Support Agreements with BNS, Scotia Capital and RBC and the Deposit Agreement with Vornado;

(2)   Sears Holdings violated subsection 94(2) of the Act by entering into the Support Agreements with BNS, Scotia Capital and RBC;

(3)   Sears Canada shares held by BNS, Scotia Capital and RBC should be excluded for the purposes of minority approval of the second step going private transaction pursuant to subsection 8.1(2) of Rule 61-501;

(4)  Sears Canada shares owned by Sears Holdings that were deposited by Vornado to the insider bid of Sears Holdings pursuant to the Vornado Agreement should be excluded for the purposes of minority approval of the second step going private transaction pursuant to subsection 8.2(b) of Rule 61-501;

(5)  Sears Canada shares now owned by Sears Holdings that were deposited to the Offer of Sears Holdings should be excluded for the purposes of minority approval of the second step going private transaction given the failure of Sears Holdings to comply with paragraph 8.2(f) of Rule 61-501 and/or shareholders were coerced by Sears Holdings to tender;

(6)  The Circular of Sears Holdings contained a misrepresentation arising from the failure to disclose the substantial shareholdings of Scotia Capital and BNS and the Circular as amended and varied on April 4, 2006 contained misrepresentations or material omissions arising from the failure of Sears Holdings to disclose the Support Agreements with BNS and Scotia Capital and the related Escrow Agreements;

(7)  further or in the alternative, the Commission should exercise its public interest jurisdiction pursuant to section 127 of the Act to cease trade or prohibit the insider bid of Sears Holdings and its proposed second step going private transaction on the grounds that the conduct of Sears Holdings has been coercive and abusive of shareholders generally, including the minority shareholders of Sears Canada, jeopardizes the fairness and efficiency of the capital markets and confidence in those markets, and that such an order is necessary to protect investors in Sears Canada from the unfair and improper conduct and practices of Sears Holdings.

## B. Order Sought by the Pershing Group

[139] In its Application, the Pershing Group originally sought various orders under subsections 104(1) and 127(1) of the Act as follows:

(a)    pursuant to clause 104(1)(c) of the Act directing that Sears Holdings comply with the regulations related to Part XX of the Act (specifically, Rule 61-501) as follows:

   (i)    comply with section 8.1 of Rule 61-501 and exclude from the calculation of the majority of the minority on any second step going private transaction the shares of Sears Canada held by its joint actors, including BNS and Scotia Capital;

   (ii)   comply with section 8.2 of Rule 61-501 and exclude from the calculation of the majority of the minority on any second step going private transaction the shares of Sears Canada acquired by Sears Holdings from Vornado pursuant to the Vornado Agreement;

   (iii)  comply with section 8.2 of Rule 61-501 and exclude from the calculation of the majority of the minority on any second step going private transaction the shares of Sears Canada acquired by Sears Holdings pursuant to its take-over bid for Sears Canada from the date that is five business days after Sears Holdings has complied with the order requested in paragraph (c) below;

(b)    pursuant to subsection 104(1)(b) of the Act requiring that Sears Holdings amend the terms of its Offer for the shares of Sears Canada to irrevocably exclude from the calculation of the majority of the minority on any second step going private transaction the shares of Sears Canada held by BNS, Scotia Capital and RBC;

(c)    pursuant to subsection 104(1)(c) of the Act directing Sears Holdings to remedy its non-compliance with subsections 94(2) and 97(2) of the Act;

(d)    pursuant to clauses 104(1)(b) and (c) of the Act requiring that Sears Holdings amend its Take-Over Bid Circular to:

34

(i)  disclose that Sears Holdings will exclude from the calculation of the majority of the minority on any second step going private transaction the shares of Sears Canada that it is prohibited from including in such calculation as provided in paragraphs (a) and (b) above;

(ii)  disclose the existence and terms of the Release granted to Vornado pursuant to the Vornado Agreement and to grant an identical Release to all other shareholders of Sears Canada whose shares are acquired under the take-over bid or in any second step going private transaction;

(iii)  disclose the identities and interests of the parties to the Support Agreements, describe the collateral benefits received by them including the tax benefits to them and the liquidity covenant and disclose the banking relationship and any other material relationships between Sears Holdings, Sears Canada and the parties to the Support Agreements;

(iv)  provide an opportunity of at least ten business days from the date of mailing of the amended Take-Over Bid Circular for all shareholders who tendered to withdraw their Sears Canada shares from the Offer notwithstanding that such shares may have been taken up and paid for; and

(v)  correct all other misrepresentations and omissions in the Take-Over Bid Circular and all amendments and variations made thereto;

(e)  pursuant to subsection 127(1) of the Act reprimanding Sears Holdings for violating subsections 94(2) and 97(2) of the Act and for disseminating a Take-Over Bid Circular or amendments and variations made thereto containing misrepresentations and omissions;

(f)  pursuant to subsection 127(1) of the Act cease trading Sears Holdings' take-over bid for Sears Canada until the foregoing orders are complied with;

(g)    in the alternative, an order pursuant to subsection 127(1) of the Act cease trading Sears Holdings' take-over bid for Sears Canada; and

(h)    such other orders as counsel may request and the Commission considers appropriate.

[140] At the conclusion of the hearing, the Pershing Group submitted a draft Order outlining the revised nature of the specific relief they were seeking against Sears Holdings. It reads as follows:

"IT IS ORDERED pursuant to subsections 104(1) and 127(1) of the *Securities Act* (the "Act") that:

1.     Sears Holdings Corporation and SHLD Acquisition Corp. ("Sears Holdings") have not complied with and are not complying with Part XX of the *Securities Act (Ontario)* and the regulations relating to such Part (collectively, "Ontario Securities Law") in respect of the bid (the "Offer") for shares of Sears Canada Inc. ("Sears Canada").

2.     Sears Holdings is directed to comply with Ontario Securities Law in respect of the Offer and all other offers made or to be made for shares of Sears Canada.

3.     The directors and senior officers of Sears Holdings Corporation and SHLD Acquisition Corp. are directed to cause their respective corporations to comply with, and to cease to contravene, Ontario Securities Law.

4.     The Offer and any other offer made or to be made for shares of Sears Canada by Sears Holdings or any affiliate thereof is cease traded until:

(a) the support agreements entered into by Scotia Capital Inc. (Scotia Capital), Bank of Nova Scotia ("BNS") and Royal Bank of Canada ("RBC") in respect of the Offer are terminated; and

(b) the take over bid circular in respect of the Offer is amended to disclose that Sears Holdings will exclude from the calculation of the majority of the minority on any second step going private transaction the shares of Sears Canada held by or acquired from Scotia Capital, BNS and RBC and the shares of Sears Canada acquired by Holdings from Vornado pursuant to the Vornado Deposit Agreement."

[141] The Pershing Group also requests that the Sears Holdings Application be dismissed in its entirety.

## V. The Pershing Group – Allegations Against Sears Holdings

### A. Are BNS and Scotia Capital "Joint Actors" with Sears Holdings?

[142] For this part of the Reasons, it is important to understand who the various parties are, and, in the case of BNS and Scotia Capital, what the various business units are, and what retainers and involvement they had in relation to Sears Canada, Sears Holdings and the Sears Holdings Offer. Briefly, the structure of the entities and business units within BNS and Scotia Capital is as follows. Scotia Capital is a wholly-owned subsidiary of BNS. Scotia Capital is organized into two groups-Global Capital Markets and Global Corporate & Investment Banking. The Capital Markets Group (Scotia CMG) is a business sub-unit of Scotia Capital's Global Capital Markets with business lines serving both BNS and Scotia Capital. Scotia CMG's business activities include equity and credit derivatives, foreign exchange, interest rate hedging, debt capital markets and securitization. The Institutional Equity Group (Scotia IEG) is another sub-unit of Scotia Capital's Global Capital Markets. Scotia IEG's business activities include proprietary trading and the purchase of securities for risk arbitrage purposes. The Investment Banking Group and the Mergers and Acquisitions Group are sub-units of Scotia Capital's Global Corporate & Investment Banking. The manner in which BNS and Scotia Capital are organized and the way in which they are structured and operated

in order to clearly separate the relevant business units of BNS and Scotia Capital is not, we understand, atypical for integrated Canadian financial institutions.

[143] In November, 2005, Sears Canada engaged Scotia Capital to arrange a $500 million credit facility (the lending relationship). Scotia Capital had a banking relationship with Sears Holdings and was the lead banker on the financing for Sears Canada.

[144] On January 6, 2006, Sears Holdings engaged Scotia Capital to advise it with respect to the Offer and this retainer was put in writing on January 10, 2006, with effect as of January 6, 2006 (the "Engagement Letter"). Professionals from both Scotia Capital's Investment Banking and Mergers and Acquisitions Groups were assigned to the engagement team. For simplicity, the party engaged by Sears Holdings is referred to as Scotia M & A. Under the terms of the Engagement Letter, Scotia M & A was entitled to a work fee of $50,000.00 per month and a success fee of $400,000.00 if the Offer was successful at or below a share price of $16.86 (which did not happen and therefore Scotia M & A was not entitled to the success fee under the terms of its engagement). If the share price was increased above $16.86, the payment of a success fee was within the sole discretion of Sears Holdings and if Sears Holdings did not acquire a majority of the minority of the shares in Sears Canada, no success fee would be payable. No success fee was paid to Scotia M & A, a fact that Sears Holdings publicly announced and confirmed in evidence before us. According to the submissions of counsel for BNS and Scotia Capital, Scotia M & A is not entitled to and will not receive any other compensation beyond the monthly work fee described above.

[145] On February 8, 2006, Scotia M & A entered into a dealer-manager agreement with Sears Holdings (the Dealer-Manager Agreement). Scotia M & A is not entitled to any additional fees from Sears Holdings as a consequence of agreeing to act as dealer-manager. The Dealer-Manager Agreement provides for a solicitation fee of $.10 per share payable in respect of shares validly tendered to the Offer and not withdrawn. The Agreement provides for a maximum fee payable for each deposit. This solicitation fee is payable only to the individual broker within Scotia Capital's brokerage arm and other individual brokers within the brokerage firms that form part of the Canadian Solicitor Dealer Group in connection with the Offer. No solicitation fees are payable for shares tendered by Natcan or Vornado or for shares not tendered to the Offer but voted in favour of

38

any SAT that may be undertaken, including the shares of Sears Canada held by Scotia Capital, BNS and RBC.

[146] Against this background, the Pershing Group alleges that Scotia Capital and BNS are "joint actors" with Sears Holdings. They seek this determination in order that the votes attached to the Sears Canada shares held by Scotia Capital and BNS should be excluded from the minority in determining whether the SAT obtains "majority of the minority" approval. The Pershing Group submits that the public interest requires that parties which are as "linked" to the bidder as are Scotia Capital and BNS through the various Support Agreements, the financial advisor and dealer-manager engagements and lending relationships, ought not to be permitted to determine the outcome of a vote that is required to be determined by the true minority shareholders of the target.

*Evidence, Law and Analysis*

[147] The legal backdrop to consideration of this issue is fairly straightforward. The SAT is a business combination for Sears Canada under Rule 61-501 because it is the transaction by which Sears Holdings intends to acquire any Sears Canada shares that are not tendered to its Offer. In order for the SAT to be carried out, it must be approved by the minority shareholders. For purposes of Rule 61-501, the minority shareholders exclude any joint actors of Holdings.

[148] For purposes of Rule 61-501, the term "joint actors" is generally defined to mean persons or companies "acting jointly or in concert" with the offeror as defined in section 91 of the Act. Section 91 provides that it is a question of fact as to whether a person or company is acting "jointly or in concert" with an offeror.

[149] The policy underpinning of the joint actor concept is to ensure that all persons or companies who are effectively engaged in a common investment or purchase program, whether in support of or in opposition to a take-over bid, are required to abide by the requirements of Ontario securities law that govern securities transactions prior to, during and subsequent to the bid (Practitioners Report, at page 10, in *Securities Law and Practice*, 3rd edition, Borden Ladner Gervais LLP, Part 20, Take-Over Bids and Issuers Bids (Toronto: Carswell, 2002)).

[150] Subsection 91(2) of the Act provides that a registered dealer acting solely in an agency capacity for an offeror in connection with a take-over bid and that does not execute principal transactions for its own account in the class of securities subject to the offer to acquire or does not perform services beyond a customary dealer's functions will not be presumed, solely by reason of such an agency relationship, to be acting jointly or in concert.   Subsection 8.1(2) of Rule 61-501 provides similarly.

[151] The Pershing Group submits that there are essentially four key elements of the relationship between Scotia Capital, BNS and Sears Holdings that points to a finding that they were all acting jointly or in concert with regard to the Offer and the SAT:

    (a) Scotia Capital and BNS attach critical importance to their business relationship with Sears Holdings;

    (b) The Offer and SAT, as revised, provide significant tax benefits to Scotia Capital and BNS;

    (c) BNS has virtually no economic interest in the Sears Canada shares given the swap transactions it had entered into with SunTrust;  and

    (d) Scotia Capital's prospect of earning a success fee on the transaction.

[152] Scotia Capital and BNS submit that Scotia CMG, the sub-unit that acquired Sears Canada shares on behalf of BNS, and Scotia IEG, which acquired Sears Canada shares for risk arbitrage purposes, are effectively "walled off" from each other and from Scotia M & A, the group that provided financial advisory services to Sears Holdings.  They submit that policies and procedures are in place relating to the handling of confidential and non-public information and that no evidence was adduced that these policies and procedures were not followed by Scotia M & A in relation to the Offer or that confidential, non-public information flowed from Scotia M & A to either Scotia CMG or Scotia IEG.  Commission Staff emphasized that the creation of firewalls between and within the Canadian banks and their investment banking subsidiaries is a well-established and recognized practice.

40

[153] The Pershing Group submits that the existence of firewalls between BNS and Scotia Capital and the absence of the exchange of confidential information between them is not germane to the question of fact that must be determined in this case: Did BNS and Scotia Capital act jointly and in concert with Sears Holdings in planning, promoting and structuring the Offer to ensure its success beyond the customary role of a financial advisor? In addressing this question in the context of Part XX of the Act, the Commission and the courts have focused on whether there has been an agreement, commitment or understanding by two or more parties with respect to a common acquisition or investment program or the exercise of voting rights (*Re 243978 Alberta Limited et al* (1982), 4 O.S.C.B. 566C at 568C and 573C).

[154] Scotia Capital and BNS also deny that Scotia M & A, on the one hand, and Scotia CMG and Scotia IEG, on the other hand, had any actual commonality of interest in the outcome of the Offer. They submit that Scotia M & A was motivated solely, as a soliciting dealer for Sears Holdings, to identify shareholders and put them in contact with Sears Holdings so they could potentially negotiate their own terms for participation in the Offer. Scotia CMG and Scotia IEG, on the other hand, were motivated to maximize returns on their investments in Sears Canada shares in the most tax effective manner possible. This is, of course, a factual determination driven by the evidence we heard as discussed below.

[155] The Pershing Group concedes in their Application that, if Scotia Capital provided only customary advisory and administrative functions to Sears Holdings, it would not be presumed to be acting jointly or in concert with Sears Holdings. We are unable to conclude, based on the evidence, that Scotia Capital's role extended beyond the provision of customary advisory and administrative support to Sears Holdings. In particular, we note that neither Scotia Capital nor BNS acquired any shares of Sears Canada for their own account after Scotia Capital was engaged by Sears Holdings. We accept that it is a customary soliciting dealer function to identify the owners of shares of an offeree issuer and to ascertain their willingness to tender to the bid – which is what Scotia Capital did in this case.

41

[156] In the course of the hearing we heard testimony from Mr. Greg Rudka, a member of Scotia Capital's Investment Banking Group and the senior person on the Scotia M & A engagement team responsible for advising Sears Holdings in relation to their bid.   In addition, we heard testimony from Mr. Kieran O'Donnell, an employee of BNS and a member of Scotia CMG.  Mr. O'Donnell, whose evidence we found to be very cogent, straightforward and credible, swore in his Affidavit and emphasized in his viva voce evidence, that BNS and Scotia Capital, the two entities that signed the Support Agreements with Sears Holdings, did not, at any time, "work together" with the Scotia M & A team "to deliver the votes necessary to ensure the success of the Expropriation transaction" as alleged by Mr. Ackman in his Affidavit.  This was borne out by the e-mail and other documentary evidence filed with us that showed that Scotia M & A did not take part in the negotiations and the decisions by BNS and Scotia Capital to enter into the Support Agreements.  In fact, Scotia M & A was careful to insist that those negotiations take place directly between BNS and Scotia Capital and Sears Holdings and their respective counsel.

[157] In a particularly telling exchange of e-mails we reviewed, at one point Mr. Crowley, the Executive Vice President and CFO of Sears Holdings, and the principal in charge of overseeing the Sears Holdings Offer, became quite frustrated with the length of time it was taking to negotiate the Support Agreements with the Banks.  He expressed this sense of frustration to Mr. Rudka and others within the Scotia M & A team and suggested that he wished to speak with the CEOs of both BNS and RBC to better understand the delays and the process timeline.  As Sears Holdings' frustration level as a result of the delays grew, Mr. Rudka and his colleagues attempted to convey the gravity of the situation to Mr. O'Donnell and others who were working on the Support Agreements on the other side of the wall.  Mr. O'Donnell responded that more time was required and was, it would appear, somewhat impervious to the pressure attempted to be applied by Scotia M & A and Sears Holdings.  In short, BNS, Scotia CMG and Scotia IEG were motivated to take the necessary time in their negotiations to maximize returns on their investments in Sears Canada shares in the most tax-effective manner possible in their own, and in their shareholders' best interests.  Their interest in this regard was independent of Sears Holdings' interest in successfully completing the bid and does not support a finding that they shared a commonality of interest with Sears Holdings in this regard.

[158] The Pershing Group also points to an unusual degree of collaboration and co-operation between BNS and RBC in the course of negotiating the Support Agreements with Sears Holdings, including an offer to share tax opinions with RBC. While this did, indeed, appear to be the case, it does not logically lead to a finding that they did so in an effort to assist Sears Holding in planning, promoting and structuring their Offer. Rather, it is consistent with the motivation of BNS and Scotia Capital to ensure that they were in the strongest position to negotiate Support Agreements which reflected terms which advanced their own best interests.

[159] In response to the Pershing Group's allegation that BNS has virtually no economic interest in the shares of Sears Canada, Mr. O'Donnell responded in his Affidavit that both BNS and Scotia Capital have a meaningful interest in the Sears Canada shares that they own. The Sears Canada shares purchased by Scotia Capital represent proprietary trading positions with full exposure to the value of Sears Canada shares. While BNS purchased its Sears Canada shares to reduce its exposure under its SunTrust swap agreements, it has exposure to the price of the shares as its after-tax return increases with an increased SAT share price and, accordingly, BNS has some economic interest in the shares.

[160] In the absence of cogent evidence that a party to a transaction intervened or attempted to manipulate the outcome of a bid or similar transaction, we are of the view that it would be a dangerous path for us to follow to exclude shares from voting or tendering into a transaction on the basis that the holder lacks a sufficient economic interest in the securities that are the subject of the transaction. Such an inquiry is highly subjective, fraught with factual uncertainty and ought not to be a determining factor in a contested take-over bid context. If this matter warrants study, it should be undertaken in a broader policy context. In this regard, it is also noteworthy that the traditional focus of our conflict of interest related rules as they apply to mergers and acquisitions is on those conflicts which give rise to a bidder's active intervention or the existence of collateral benefits that could distort the incentives for security holders (the latter issue is, of course, the subject of a distinct allegation of the Pershing Group and is dealt with as a distinct matter).

[161] While we accept that both Scotia Capital and BNS may well attach critical importance to their business relationship with Sears Holdings, as the Pershing Group claims, we cannot logically

proceed from that premise, accepting it to be true, to a finding that they acted jointly or in concert with Sears Holdings. As regards Scotia Capital's prospect of earning a success fee, the evidence was clear that there is no such prospect. Moreover, the prospect of a success fee was never assured from the outset of what were, evidently, difficult negotiations with Sears Holdings over fees in relation to Scotia Capital's engagement as financial advisor in connection with the Offer.

[162] The fact that Scotia Capital and BNS agreed, under the Support Agreements, to vote their shares in favour of the SAT does not establish that they were joint actors with Sears Holdings. If this were so, RBC would also be a joint actor with Sears Holdings on this basis, an allegation that was not made by the Pershing Group.

[163] The law, as described above, makes it clear that the provision by a dealer of financial advice in respect of an offer is not, on its own, sufficient to lead to the presumption of joint actor status. This safe harbor may not apply, however, where the dealer's activities include playing an integral role in presenting proposals to management and actively promoting the success of an offer, where such activities exceed what is customary for a dealer (*Re Seel Mortgage Investment Corporation and Dominion Trustco Capital Inc.* (1992), 15 O.S.C.B. 4287). The facts in *Seel* are distinguishable from this case.

[164] This leads us to the final assertion of the Pershing Group that the public interest compels a finding that Scotia Capital and BNS are joint actors with Sears Holdings. They say that public appearance and the perception of the investing public as a result of Sears Holdings, Scotia Capital and BNS engaging in transactions "perceived to be delivering collateral benefits" warrants Commission intervention. The allegations relating to collateral benefits and consideration of the appropriate consequences that ought to flow from any findings in this regard based on the Commission's public interest jurisdiction are dealt with in these Reasons as a separate matter.

[165] The evidence established that:

- BNS and Scotia Capital, through Scotia CMG and Scotia IEG respectively, purchased their shares in Sears Canada for their own accounts between August 31, 2005 and December 16, 2005

and neither conducted further trading in Sears Canada shares for their own accounts after December 16, 2005;

- Sears Holdings retained Scotia M & A on January 6, 2006 to provide financial advisory services in relation to its anticipated bid for Sears Canada and retained Scotia M & A to be dealer-manager for the Offer on February 8, 2006;

- As a result of information containment processes and internal controls, Scotia M & A was not aware that BNS or Scotia Capital owned Sears Canada shares prior to the solicitation process at the end of February 2006;

- Similarly, no one at Scotia CMG or Scotia IEG were aware that Sears Holdings was negotiating with or had retained, Scotia M & A until after the retainer was finalized;

- Scotia M & A took no part in the negotiations and decisions by BNS and Scotia Capital to enter into the Support Agreements; rather, these decisions appeared to be made independently of Scotia M & A and for business and commercial purposes unrelated to the Scotia M & A assignment;

[166] In conclusion, it does not appear, based upon the application of the law to the facts and the evidence before us, that Scotia Capital and BNS were "joint actors" of Sears Holdings in relation to their Offer and the SAT.

**B. Were the Support Agreements Entered into in Contravention of Subsection 94(2) of the Act?**

*Law and Analysis*

[167] The Pershing Group alleges that, by entering into the Support Agreements, Sears Holdings has contravened subsection 94(2) of the Act because it has entered into an agreement to acquire shares of Sears Canada other than pursuant to the Offer.   Subsection 94(2) reads as follows:

> 94(2) An offeror shall not offer to acquire or make, or enter into, any agreement, commitment or understanding to acquire beneficial ownership of any securities of the class that are subject to a take-over bid otherwise than pursuant to the bid on and from the day of the announcement of the offeror's intention to make the bid until its expiry.

[168] Subsection 94(2) of the Act has very limited exceptions, including subsection 185(1) of the Regulations which were not argued to be applicable in this case.

[169]The policy purpose served by subsection 94(2) of the Act is to ensure that an offeror is not able to avoid or circumvent the equal treatment and other protections afforded target company shareholders under Ontario securities law by entering into a private agreement to acquire shares outside the bid, during the currency of the bid (*Report of the Committee to Review the Provisions of the Securities Act (Ontario) Relating to Take Over Bids and Issuer Bids*, cited above, at page 20).

[170] Sears Holdings says in response that the Support Agreements do not constitute agreements to acquire beneficial ownership of shares within the meaning of subsection 94(2) of the Act.   Rather, they commit BNS, Scotia Capital and RBC to vote their shares in favour of the SAT.   They argue that, if the Pershing Group's interpretation of the provision were to be accepted, then every instance in which an offeror announces its intention to carry out a SAT following completion of a bid (which the offeror would be legally obliged to disclose provided they have such an intention) would violate subsection 94(2) because it would constitute an "offer to acquire" or a "commitment to acquire" securities other than pursuant to the bid.

[171] The Pershing Group contends, however, that the Support Agreements in this case are properly viewed as private agreements to acquire shares entered into outside of, but during the course of, the bid.   They say that this is so because the effect of entering into them was to guarantee satisfaction of

the Minority Approval requirement which, in turn, guaranteed the acquisition of the Sears Canada shares to be voted by BNS, Scotia Capital and RBC in favour of the SAT pursuant to the terms of the Support Agreements. Once the Support Agreement with RBC was signed, Sears Holdings had contractual commitments to support the SAT such that, in their words, "success of our Offer was assured." Accordingly, Pershing submits, "there could be no clearer understanding that Holdings would acquire Sears Canada shares held by BNS, Scotia Capital and RBC in the second step going private transaction and outside of the Offer."

[172] Commission Staff took the position, consistent with that of Sears Holdings, that the Support Agreements are not agreements to purchase Sears Canada shares outside of the Offer within the meaning of subsection 94(2) of the Act. However, they point out that it is unusual for a bidder to enter into a support agreement with a target shareholder during the course of a bid that provides for the target shareholder to vote their shares in favour of a SAT rather then tender into the bid. In this case, it is clear from the evidence that BNS, Scotia Capital and RBC were not prepared to tender to the bid as it was not in their economic best interests to do so. Mr. Kieran O'Donnell of BNS, in his Affidavit, clearly states that "the essence of the Support Agreements was that BNS and Scotia Capital would agree to hold on to their shares and vote them in favour of a form of second step going private transaction." (Affidavit of Kieran O'Donnell sworn June 22, 2006, Record of The Bank of Nova Scotia and Scotia Capital Inc., Volume 2, Tab 2, at para. 27).

[173] Commission Staff nonetheless submit that we might consider the unusual nature and effect of these Support Agreements in assessing, under our public interest jurisdiction, whether Sears Holdings' conduct in relation to the bid was "abusive" overall as alleged by the Pershing Group.

[174] We acknowledge that, on their face, the Support Agreements do not "technically" appear to offend subsection 94(2) of the Act because they are not, in form, agreements to purchase or acquire shares, but rather, agreements to vote shares in favour of the SAT. However, as Commission Staff concede, the nature of these Support Agreements is unusual. By the time the Support Agreements were released from escrow, approval of the SAT was effectively assured as explained above. The true substance and intended effect of the Support Agreements was that BNS, Scotia Capital and RBC would vote their Sears Canada shares in favour of the SAT and Sears Holdings would acquire their

shares pursuant to the SAT in December 2006. If one looks through the form of these agreements to their true substance and intended effect, the complaint that they contravene subsection 94(2) of the Act has merit.

[175] However, this allegation is not central to our Decision or Reasons and we have therefore determined that it is unnecessary to make a conclusive finding on this issue.

## C. Did Sears Holdings Comply with its Disclosure Obligations?

[176] The Pershing Group has made a number of allegations that Sears Holdings failed to comply with its disclosure obligations in connection with its Offer. In particular, they allege that Sears Holdings' disclosure was deficient with regard to the following matters:

   (a) Scotia Capital had been retained as Sears Holdings' financial advisor;

   (b) Scotia Capital/BNS held shares of Sears Canada as principal;

   (c) the Vornado Agreement included a Release in favour of Vornado in respect of any claims arising out of Vornado's purchases and sales of Sears Canada shares;

   (d) the Support Agreements with Scotia Capital and BNS had been signed on March 28, 2006 and were being held in escrow pursuant to Escrow Agreements that had also been signed by them and Sears Holdings;

   (e) Scotia Captial, BNS and RBC were the parties to the Support Agreements together with the specific terms of the Support Agreements;

   (f) the lock-up agreement with Natcan contained a price-protection provision (although this was ultimately disclosed in the Sears Holdings' Circular it was not disclosed in the press release

which announced the Offer and simultaneously announced the Natcan Deposit Agreement); and

(g)  the tax consequences of the Offer and the SAT were not properly and fully described in the Circular in that it did not expressly address the "stop-loss" and other income tax aspects of the deal that would have been of relevance to other Canadian corporations besides BNS, Scotia Capital and RBC.

[177] The essence of the Pershing Group's complaint as regards the standard of disclosure to which Sears Holdings adhered to in its press releases, Circular and Notice of Variation and Change in Information which described its revised Offer, is that, on the whole, it was inadequate and either not provided on a timely basis or not provided at all.   The Pershing Group alleges that Sears Holdings failed to disclose, or failed to disclose on a timely basis, facts and information that they were obliged to disclose and that minority shareholders would consider to be material in the circumstances.   As such, they say, remedial action is warranted.

[178] Sears Holdings says that the Pershing Group's allegations are without merit and proceed from the faulty premise that because something was not disclosed, the non-disclosure must be improper. They argue that, to warrant Commission intervention, non-disclosure must be coupled with an obligation to disclose.   Below we review the disclosure complaints in more detail against the backdrop of what is required.

*Arguments, Law and Analysis*

[179] Under the Act, subsection 98(1) requires delivery of a take-over bid circular by the offeror. In the event of a change in the information contained in the bid circular that would reasonably be expected to affect the decision of security holders of the offeree issuer, the offeror is required under

49

subsection 98(2) to issue and deliver a Notice of Change in Information. The information required to be disclosed in these documents is prescribed by Form 32.

[180] Sears Holdings disclosed in its Circular that it had retained Scotia Capital as dealer-manager of the soliciting dealer group. It did not disclose, and maintains that it had no obligation to disclose, that Scotia Capital had also been retained to act as Sears Holdings financial advisor. However, it did in fact disclose in its February 9 press release which announced the mailing of the Offer that Scotia Capital had been retained as its financial advisor.

[181] Sears Holdings submits that it had no obligation to issue a Notice of Change of Information disclosing that Scotia Capital and BNS were shareholders of Sears Canada after it first became aware of this information.

[182] Sears Holdings also maintains that they had no obligation to disclose the fact that the Vornado Agreement included the litigation Release in favour of Vornado in respect of its purchases and sales of Sears Canada shares because the existence of the Release was not a material fact.

[183] Similarly, they maintain that they were not obligated to disclose the fact that Support Agreements with Scotia Capital and BNS had been signed "in escrow" because, until such time as the Minority Condition was satisfied, the Support Agreements were not binding and, if the Minority Condition was never satisfied, the Support Agreements would be deemed not to have been delivered. Sears Holdings maintains that disclosure that the Support Agreements had been signed in escrow by BNS and Scotia Capital would have been misleading to the market given that there was no assurance that the Minority Condition would be satisfied and this information was withheld "in order to protect minority shareholders from tendering under a misapprehension."

[184] Sears Holdings submits that it had no obligation to disclose the identity of the parties to the Support Agreements on the basis that this information "was not, in any sense, material to shareholders."

[185] Counsel for Sears Holdings submitted in his closing submissions that the tax impact of the extension of the Offer that resulted from the Support Agreement negotiations as well as the "stop-

loss" aspect of the *Income Tax Act* were, in fact, properly disclosed and that shareholders were, as is customary, advised to consult with their own advisors.

[186] With regard to the failure to mention the price protection provided to Natcan when the lock-up agreement was first disclosed in connection with the announcement of the Offer, counsel for Sears Holdings submits that whether or not a particular term of an agreement ought to be disclosed is "a matter of business judgment."   In addition, they say, the price protection provided to Natcan was ultimately disclosed in the Bid Circular.

[187] Full, accurate and timely disclosure is a fundamental underpinning of Ontario securities law. In a take-over bid context, a principal means of protecting the bona fide interests of the shareholders of target companies is by ensuring that they are provided with information that might reasonably affect their decision to accept or reject a bid for their shares.   Information is material, and therefore should be disclosed, if there is a substantial likelihood that a reasonable shareholder would consider it important when deciding whether to accept or reject the bid.   This determination involves more than the application of "appropriate business practices or judgment." (*Re Maple Leaf Sports & Entertainment Ltd.* (1999), 22 O.S.C.B. 2027; *Beringer Properties Inc.*, (1993) 18 B.C.S.C. Weekly Summary 18 at 22; and *Re Standard Broadcasting Corp. Ltd.* (1985), 8 O.S.C.B. 3672 at 3676-3677).

[188] In his closing submissions, counsel for Sears Holdings referred us to the *MacDonald Oil* case where the Commission, in its reasons, indicated that it is often the case that allegations of non-disclosure or inadequate disclosure are made during the course of a take-over bid.   They further noted that "there is a difference between perfect disclosure, which no two opposing counsel likely would ever agree upon, acceptable disclosure and material non-disclosure or materially misleading disclosure."   Counsel submitted, and we agree, that this is a sensible framework against which to assess the Pershing Group's allegations of non-disclosure in this case (*Re MacDonald Oil Exploration* (1999), 22 O.S.C.B. 6453).

[189] To the sensible framework laid out by the Commission in the *MacDonald Oil* case, supra, we would add that there is also a difference between disclosure which strictly follows the "line items

requirements" in a form or a rule and disclosure that focuses on information that may be material to an investor's decision to tender their shares to a bid in the particular circumstances. Sears Holdings' defence of their disclosure approach in the context of their insider bid rests upon the absence of a specific line item obligation to disclose coupled with their view that the information was not likely to be important to investors in determining how to respond to the Offer.

[190] No-one should be held to a standard of infallibility when it comes to judging disclosure with the benefit of hindsight. However, meeting one's disclosure obligations is a contextual, and not purely mechanical exercise, and requires the exercise of judgment. In the context of a bid, the success of which is conditional upon a particular shareholder tendering his shares or agreeing to vote in favour of a SAT, tentative agreements with that shareholder are fundamentally important and should be disclosed. Sears Holdings' defence that there is no general obligation to disclose the identity of shareholders who choose to tender to a bid is not an appropriate analogy. A deal with an individual shareholder to support a SAT in the midst of a bid that otherwise appeared to be failing is unusual and cannot be equated with an anonymous decision on the part of a shareholder to tender to the bid. The identity of the counterparties to the Support Agreements was material information in these circumstances and ought to have been disclosed. That the counterparties may have preferred for this information to be kept confidential would not relieve Sears Holdings of any disclosure obligation that they might have had.

[191] With regard to the confidentially provisions in the Support Agreements, the evidence we heard conflicted to a certain extent. On the one hand, Mr. Crowley of Sears Holdings testified that the confidentiality provisions were added to the Support Agreements by counsel acting on behalf of BNS and Scotia Capital. The impetus for their inclusion did not come from Sears Holdings. Mr. O'Donnell of BNS did not dispute this. However, Mr. O'Donnell indicated that, notwithstanding BNS's earlier insistence on inclusion of the provision, continued confidentiality was not critical from their perspective. As speculation and interest in knowing the identity of the counterparties to the Support Agreements mounted in the press and elsewhere, BNS apparently communicated to Sears Holdings their willingness to have their identity revealed. In fact, we heard evidence that it was Mr. Frank Switzer, an official spokesperson for BNS, who first confirmed in an April 12 Wall Street Journal article that the Bank was a party to the Support Agreement.

[192] The fact that the Support Agreements were being held in escrow and subject to the Minority Condition does not necessarily mean that their existence could not have been disclosed, together with the necessary disclosure about the conditions to which they were subject so as to ensure that they would not be "misleading to the marketplace".    Indeed, as both the Pershing Group and Commission Staff pointed out, in the April 4, 2006 Notice of Extension and Variation, Sears Holdings certified that there were "no contracts, arrangements or understandings" between it and any security holder in relation to the Offer although there was such an arrangement, albeit conditional and held in escrow. This certification did not accurately and fairly reflect the reality at the time. Counsel for Sears Holdings said in closing submissions: "Those Support Agreements, the signed documents that later became the Support Agreements, simply <u>did not exist</u> until the escrow condition was satisfied." (emphasis added). We reject this characterization. There is no basis in fact or logic for us to conclude that the heavily negotiated, signed Support Agreements did not exist simply because they were subject to a condition pre-requisite to their release and effectiveness.

[193] The evidence showed that the Vornado Release, regardless of any lack of importance that Sears Holdings may have attached to it, was of critical importance to Vornado.  This, too, was material information that might have provided more objective information to other shareholders with which to assess the import of the Vornado Agreement.

[194] Similarly, the Sears Holdings press release of December 5, 2005, announced that it had entered into a lock-up agreement with Natcan pursuant to which Natcan "has agreed to tender all 9,699,862 shares that it owns or controls in response to Sears Holdings' Offer". Shareholder and marketplace assessment of an independent third party agreement to tender to Sears Holdings' Offer at $16.86 per share might well have been impacted had they known that Natcan had received 3 month price protection under the terms of the lock-up agreement.

[195] The Pershing Group has urged us to conclude that the public disclosure of Sears Holdings in the circumstances of this case was woefully inadequate, self-serving, and sometimes misleading. They maintain, and Commission Staff agree, that decisions with respect to disclosure appear to have been made for tactical purposes, to advance the self interest of Sears Holdings rather than to ensure that the investing public received proper and timely disclosure.

[196] Viewed as a whole, the panel is troubled by the approach taken by Sears Holdings to their disclosure obligations in the context of their Offer. Insider bids are subject to the rigorous disclosure, valuation, majority of the minority shareholder approval and Special Committee requirements which are the protective pillars so central to Rule 61-501. These protections are intended to safeguard the rights and interests of minority shareholders in circumstances where related party transactions are undertaken, such as the insider bid in question. Insiders such as Sears Holdings must ensure that they treat minority shareholders fairly and comply fully with the spirit and intent of their disclosure and other obligations. We are particularly troubled by Sears Holdings' approach with respect to making proper and timely disclosure to the Special Committee of Sears Canada. Our concerns with regard to interactions between Sears Holdings and the Special Committee extend beyond the failure to provide the Committee with the disclosure and information they sought in order to properly fulfill their mandate. We address these latter concerns in detail later in these Reasons.

[197] In their written submissions, Sears Holdings maintains that even if we were to find that they fell short of their disclosure obligations, the remedy originally sought by the Pershing Group of cease trading the Offer or excluding from the minority the shares held by the parties to the Vornado Agreement and the Support Agreements would be disconnected from, and disproportionate to, the wrong alleged. On balance, we agree that such relief would be disproportionate in the circumstances. We also note that the revised draft relief which the Pershing Group presented for our consideration at the hearing did not include a request that we generally cease trade the Offer. Although a "compliance order" pursuant to section 104 of the Act is subject to the inherent limitations of addressing disclosure deficiencies on an ex post facto basis, we have concluded that this is the most appropriate and proportionate remedy available to us in relation to the disclosure deficiencies. At the same time, such an Order, considered in conjunction with these Reasons, will signal to the marketplace more generally the importance of complying with the spirit and intent, as well as the form, of our disclosure requirements.

**D. Did the Support Agreements and the Vornado Agreement Contravene Subsection 97(2) of the Act?**

*The Legislative Scheme*

[198]  Subsection 97(1) of the Act sets out the basic requirement that, where a bid is made, all of the holders of the same class of securities must be offered identical consideration.

[199]  Subsection 97(2) of the Act prohibits an offeror making or intending to make a take-over bid from entering into "any collateral agreement, commitment or understanding with any holder of beneficial owner of securities of the offeree issuer that has the effect of providing to the holder or owner a consideration of greater value than that offered to the other holders of the same class of securities."

[200]  Subsection 97(3) of the Act provides that, where the terms of take-over bid are varied prior to its expiration so as to increase the value of the consideration offered for the securities subject to the bid, the offeror must pay the increased consideration to each person or company whose securities are taken up pursuant to the bid, including those whose securities were taken up prior to the variation.

*(i) What Are the Elements of the "Collateral Benefits" Prohibition?*

[201]  Although the use of the term "collateral benefit" does not, in fact appear in the actual text of the legislative prohibition in subsection 97(2) of the Act, it is the descriptive title which appears before the section and is often used to describe the prohibition enshrined in subsection 97(2).  For purposes of these Reasons, we use the term "Collateral Benefits Prohibition" in referring to the subsection 97(2) prohibition.

[202]  In order for there to be a violation of subsection 97(2) of the Act, two conditions must be met:

    a.  there must be a collateral agreement, commitment or understanding between the

offeror and a shareholder: and

    b.  such agreement, commitment or understanding must have the effect of providing the shareholder with consideration of greater value than that offered to other shareholders of the target corporation.

[203] As regards the first condition, the Commission has described a "collateral agreement" as: "...an agreement separate and apart from any agreement resulting from acceptance of the offeree's take-over bid itself...The primary dictionary meaning of collateral is "running side by side — parallel." (*Re Genstar Corp.* (1982) 4 O.S.C.B. 326C at 338C).

[204] In this case, there is no dispute between the parties that the Vornado Agreement and the Support Agreements satisfy the first branch of the two-part test in the Collateral Benefits Prohibition.

[205] The issue in dispute is whether the Vornado and Support Agreements had the effect of providing to the shareholders that were parties to them consideration of greater value than that which was offered to other shareholders of Sears Canada.

*(ii) The Vornado Agreement*

[206] On April 1, 2006, Sears Holdings entered into its deposit agreement with Vornado (the Vornado Agreement) under which Vornado agreed to deposit its 7.5 million shares of Sears Canada to a revised Offer of Sears Holdings at a price of $18.00 per share. Sears Holdings agreed to pay Vornado, and all other Sears Canada shareholders whose shares are taken up under the Offer including those shareholders who had already tendered their shares to the Offer, any increased consideration paid by Sears Holdings either under the Offer or any subsequent acquisition of all Sears Canada shares prior to December 31, 2008, under the Deposit Agreement (Price Protection). Sears Holdings also provided the following release to Vornado (the Release):

"In consideration for entering into (the Deposit Agreement), Sears Holdings Corporation...hereby releases Vornado Realty L.P....(and their respective officers, directors, employees and agents) from any and all claims and demands of any nature arising out of or otherwise based upon the activities of Vornado...in connection with Vornado Realty L.P.'s acquisition and disposition of Common Shares of Sears Canada Inc. and entering into and performing this Agreement...In addition, Sears Holdings Corporation agrees....to cause Sears Canada Inc. to execute an instrument expressly agreeing to this release on behalf of itself and its subsidiaries."

[207] Sears Holdings did not disclose this Release when it publicly announced the Vornado Agreement nor did it do so in its Notice of Extension and Variation dated April 4, 2006. The existence of the Release was first disclosed by Sears Holdings on June 10, 2006, in the course of carrying out its production obligations in connection with these proceedings.

*Arguments, Law and Analysis*

[208] The Pershing Group submits that consideration of greater value has been provided to Vornado in the form of the Release and that this consideration has not been offered to other shareholders of Sears Canada. On its face, the granting of the Release in favour of Vornado pursuant to its Deposit Agreement with Sears Holdings therefore contravenes subsection 97(2) of the Act. The onus, they argue, then shifts to the offeror to demonstrate that the special features of the arrangement, in this case, the Release, did not give rise to consideration of greater value than was offered to the other shareholders (*Re Royal Trustco Ltd. and Campeau Corporation* (No. 2) (1980), 11 B.L.R. 298 at 309).

[209] Sears Holdings' disputes that the Release has the effect of providing consideration of greater value to Vornado than that which was offered to other shareholders. They say that, as Sears Holdings did not believe that either it or Sears Canada had any private cause of action against Vornado in any event, granting Vornado the Release did not have the effect of providing Vornado with anything of value.

[210] Although Sears Holdings may not have attached any value to the Release, the evidence at the hearing during the cross-examination of Mr. Crowley clearly established that Vornado attached significance to the Release. Mr. Crowley confirmed that Mr. Roth, Chairman of Vornado, was directly involved in discussions with Mr. Lampert relating to the scope of the Release. As neither Mr. Roth nor Mr. Lampert were called as witnesses at the hearing, we do not know what the precise nature of those discussions were but Mr. Crowley suggested in his evidence that successfully negotiating the form and wording of the Release was important to Vornado in causing it to enter into the Deposit Agreement. He indicated that Vornado was originally negotiating for a broader form of indemnity but ultimately agreed to the Release.

[211] The Pershing Group, in its written submissions, referred to the following statement by Mr. Roth in connection with Vornado's Annual Report for 2005:

> "With respect to Sears Canada, sure there's more value there than the offered price, but we made a fine profit here and fighting for a few more bucks is not our game. In this case, we'll leave that to others. Our shares have been tendered and taken up, we have received our $118 million in cash and enjoy price protection through December 31, 2008."

[212] As we have previously noted in connection with Sears Holdings' allegations against the Pershing Group, if the Pershing Group was found to be a joint actor with Vornado in connection with its purchases of Sears Canada shares, the corollary would also have been true although it was not alleged. We do not know, and cannot speculate, as to whether this played any role in the negotiations between Mr. Roth and Mr. Lampert in connection with the Deposit Agreement.

[213] The law provides that, for purposes of subsection 97(2), it is not necessary to determine whether the quantum of the consideration is large or small. (*Royal Trustco Ltd.*, supra).

[214] In the *CDC Life Sciences* case, the Commission held that, even in the face of conflicting evidence about value, value can be inferred from the very fact that a shareholder entered into an agreement. Specifically, the Commission stated in its decision that it was "confident that the

(security holder) would not have entered into the agreement unless it saw some value to itself in so doing." (*Re CDC Life Sciences Inc., Caisse de depot et placement du Quebec and Institut Merieux S.A.* (1988), 11. O.S.C.B. 2541 at 2554).

[215] In the *Olympia and York* case, the British Columbia Securities Commission explicitly recognized, by granting an exemption from a Collateral Benefits Prohibition equivalent to subsection 97(2) in respect of an indemnity against legal liability that had been provided to a shareholder, that benefits of this nature are otherwise prohibited (*Re Olympia & York Developments Ltd.*, (1989) B.C.S.C. Weekly Summary 131).

[216] We have concluded that the granting of the Release in connection with the Vornado Agreement constituted a violation of subsection 97(2) of the Act.    On its face, it constitutes consideration of greater value than that offered to other shareholders of Sears Canada in connection with the Offer and Sears Holdings has not discharged the burden of persuading us that it did not provide consideration of greater value than that offered to other shareholders of Sears Canada.

[217] In coming to this conclusion we have considered Sears Holdings' argument that, as they did not consider the Release to have any value, Sears Holdings could not have contravened subsection 97(2) of the Act by providing it.  To accept this argument would be to concede that the offeror's subjective assessment of the value of the consideration provided, or in this case the alleged lack thereof, is determinative.

[218] The Canadian Oxford Dictionary defines consideration, in a legal context, to mean "anything given or promised or forborne by one party in exchange for the promise or undertaking of another."  The Black's Law Dictionary similarly provides that consideration means "something (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee".  In both cases, the concept of "forbearance" is relevant.

[219] The law is well settled that "forbearance to sue is good consideration."   Even where the validity of a claim is in doubt, the courts have held that forbearance to enforce it can be good consideration." (*B. v. Arkin* (1996), 138 D.L.R. (4th) 309 (Man. Q.B.) at 313 and 314).

[220] In this case, the Release that was provided gave Vornado comfort that Sears Holdings would "forbear" from suing Vornado in connection with its purchases and sales of Sears Canada shares. It went further in also providing Vornado with Sears Holdings' commitment to secure the same release from Sears Canada in favour of Vornado (although we were advised during the hearing that this release had not yet been executed by Sears Canada). This Release is presumed to have value and constitutes consideration of greater value than that offered to other minority shareholders who have not received such a release.

### (iii) The Support Agreements

[221] The facts relating to the ownership of the Sears Canada shares to which the Support Agreements relate were not contested. Briefly, Scotia Capital IEG purchased, for risk arbitrage purposes, 513,000 Sears Canada shares between August 31, 2005 and December 16, 2005. BNS, through Scotia CMG, acquired 4 million Sears Canada shares as a partial hedge against the swap agreements it had entered into with SunTrust and a broker dealer and hedged the rest of its exposure under the swap agreements by entering into offsetting swaps. RBC owns 3.9 million Sears Canada shares and also entered into various equity swap agreements.

[222] The BNS Support Agreement relates to the 4 million Sears Canada shares owned by BNS. The Scotia Capital Support Agreement relates to 511,000 of their Sears Canada shares. The RBC Support Agreement relates to 3.1 million of the 3.9 million shares owned by RBC. In the aggregate, the Support Agreements covered approximately 7.1% of the then outstanding Sears Canada shares.

[223] From the time that Sears Holdings first announced their Offer in early December, 2005, BNS and RBC (referred to collectively as the Banks), as Canadian corporate shareholders, were aware of the potential impact of the Offer on their tax position. Once the Offer came to the attention of Mr. O'Donnell of BNS CMG, he wrote to his colleague Mr. Chris Purkis to raise awareness of the potential impact of the Offer on BNS. Thereafter, they began to consider and discuss strategies to improve the tax treatment on the taxable dividend BNS had received in December, 2005, including negotiating an exit strategy with Sears Holdings which would permit BNS to hold its Sears Canada

shares for more than one year.  In paragraph 25 of his Affidavit, Mr. O'Donnell said: "We recognized that we may have to negotiate to have the bid re-structured and extended in order to achieve this objective."  Similarly, the potential impact of the Offer was also apparent to RBC as evidenced by the following e-mail from Mr. Richard Tavoso of RBC:

> "…The current takeover for us is negative in that it will force the stock to stop trading and we will not be able to age our inventory for one year in order to qualify for a tax gross-up.  We believe there are certain ways the company can structure the deal so that its shareholders can qualify for a tax gross-up and would like to talk to the company and see if they are amenable…."

[224] The tax impact of the Offer that was of concern to the Banks arose from the payment of the extraordinary cash dividend to all Sears Canada shareholders on December 14, 2005.  Briefly, under the "stop loss" rules contained in the *Income Tax Act*, tax losses cannot be deducted where tax free dividends have been received and the shares in question have been held for less than 365 days from the date of purchase.  Accordingly, if the SAT were to have been successfully completed before December, 2006, the Banks would not have held their shares for more than 365 days and the stop loss rules would therefore apply to the disposition of their shares.  In addition, under either of the two forms of SAT preferred by the Banks, they would be able to elect deemed dividend treatment on the disposition of their Sears Canada shares.

[225] Following inquiries, Scotia M & A reported to Sears Holdings and their counsel as to the identity of the banks that owned significant blocks of shares of Sears Canada.  The Banks were the only Canadian financial institutions identified as having significant holdings.  Sears Holdings realized that the Banks would have an incentive not to tender their shares to the Offer prior to the one-year anniversary of their acquisition because it would result in less advantageous after tax positions as compared to their tax position if they continued to hold the shares until at least December 2006. Based on this assessment, Sears Holdings approached BNS, Scotia Capital and RBC to determine if there was a way in which these parties would be prepared to either tender their shares to the Offer or agree to vote their shares in favour of the SAT.

[226] Following extensive negotiations, by March 28, 2006, Sears Holdings reached an agreement with BNS and Scotia Capital as to the terms of the Support Agreements. However, neither BNS nor Scotia Capital were willing to deliver a binding support agreement until each of them was certain that Sears Holdings had obtained sufficient shares, either pursuant to the Offer or through support agreements negotiated with other parties, to ensure that Sears Holdings would obtain the votes of a majority of the minority shareholders in the SAT (the Minority Condition). Accordingly, the signed Support Agreements were held in escrow.

[227] During the week of April 3, 2006, Sears Holdings continued its negotiations with RBC and, on April 5, 2006, Sears Holdings entered into the Support Agreement with RBC. At that point in time, and in light of the Vornado Agreement, the Minority Condition was satisfied and the Support Agreements executed with BNS and Scotia Capital were released from escrow and became effective agreements.

[228] The Banks both filed materials in aid of establishing the quantum of the tax advantage to each of them as a result of their successful negotiations with Sears Holdings which resulted in an extension of the expiry date of the Offer and negotiation of the precise form of the SAT out of the four possible forms of SAT initially identified in Sears Holdings' Circular. According to BNS and Scotia Capital, the tax benefits were approximately $39.67 million in relation to the 4 million shares held by Scotia CMG if those shares were disposed of in accordance with the Support Agreements. According to the memorandum of Brad Rowse, Senior Vice president, Taxation on March 30, 2006 these benefits would result from a combination of the elimination of the "stop loss' rule by extending the SAT to December 2006 ($16.07 million) and the election to dispose of shares to Sears Canada ($23.60 million). In addition, the per share tax benefit to Scotia IEG in relation to their 511,000 shares would be comparable. According to a letter filed by counsel to RBC, their tax position was as follows: if RBC sold the 3.1 million shares referenced in the Support Agreement before December 9, 2006, RBC would be obliged to pay approximately $15,339,000 of tax referable to the extraordinary dividend paid in December, 2005. This is in addition to an additional $19,307,000 of tax that it would not be obliged to pay were it to dispose of its shares in a re-purchase by Sears Canada at any time after December 9, 2006.

62

[229] Under the terms of the Support Agreements, BNS, Scotia Capital and RBC each agreed to vote the Sears Canada shares in favour of the SAT and Sears Holdings, in return, agreed that:

    (a) the meeting of Sears Canada shareholders to approve the SAT would be held, and any court approval obtained, prior to November 15, 2006;

    (b) the SAT would be completed and closed between December 14 and 17, 2006;

    (c) the SAT would take the form of either a reverse stock split or consolidation of Sears Canada shares or a plan of arrangement under section 192 of the *Canada Business Corporations Act*; and

    (d) in the event that the SAT was not completed by December 15,2006, or December 17, 2006 (as per the BNS/Scotia Capital and RBC Support Agreements respectively) Sears Holdings would consult with BNS, Scotia Capital and RBC as to what future steps should be taken to enable them to dispose of their Sears Canada shares (the Liquidity Consultation Provision).

[230] The quid pro quo for the Banks entering into the Support Agreements was Sears Holdings' agreement to revise the Offer and the SAT to accommodate their tax planning objectives. Specifically, the changes to the Offer were as follows:

    (a) the expiry date of the Offer was extended to August 31, 2006 and the SAT was deferred to December 2006 (the Offer Extension) as a result of which the Banks were able to preserve a significant tax loss deduction in connection with their Sears Canada shares;  and

    (b) the narrowing down of the SAT to one of two forms of transaction out of the four possibilities originally identified by Sears Holdings in their Circular, which would be treated as a redemption for tax purposes from the perspective of the Banks which, in turn, would result in a substantial tax free deemed dividend to BNS, Scotia Capital and RBC (the SAT Election).

*Arguments, Law and Analysis*

[231] Sears Holdings argues that, upon completion of the SAT in December, 2006, the consideration that will have been paid to all minority shareholders of Sears Canada under the Offer will be $18.00 per share. In other words, the Support Agreements (and the Vornado Agreement) will not have the "effect" of providing consideration of greater value to the Banks (and Vornado) than was offered to the remaining minority shareholders of Sears Canada. We accept the first part of this submission inasmuch as all shareholders will receive $18.00 per share under the Offer and upon successful completion of the SAT. In other words, all holders of the same class of securities are being offered identical consideration under the Offer as required by subsection 97(1) of the Act.

[232] The Pershing Group's allegation is that the effect of entering into the Support Agreements was to provide the Banks with consideration of greater value than that offered to other shareholders in violation of subsection 97(2) of the Act. Counsel for the Pershing Group characterized the arguments made on behalf of itself and Sears Holdings as "two ships passing in the night. We are arguing a 97(2) case and they are arguing 97(1)." Subsection 97(2) of the Act establishes an "effects based" test for determining whether a collateral agreement, commitment or understanding has been entered into in violation of its provisions.

[233] Sears Holdings and the Banks argued several points with regard to whether the tax advantages that are available to the Banks as a result of the successful negotiation of the revised terms of the Offer and SAT violate the Collateral Benefits Prohibition. They say that some other shareholders may well be in the same position as the Banks and will be able to benefit from the same revised terms of the Offer by holding on to their shares and voting in favour of the SAT as the Banks have agreed to do. The difficulty we have with this argument is that the evidence clearly shows that millions of shares traded during the period between the commencement of the Offer and the revised Offer being announced. Even if we accept, as we do, Sears Holdings' argument that it is for the individual shareholders of Sears Canada to determine their own financial and tax position with regard to the Offer and the SAT, the fact that the revised Offer followed months of extensive trading in the shares of Sears Canada after commencement of the bid is fatal to the argument that other

64

shareholders of Sears Canada who are in a similar tax position to the Banks have the same opportunity to benefit from the revised Offer. As counsel for Pershing put it in his closing submissions, "They can't take 25 million pieces of toothpaste and stick them back in the toothpaste tube, because that is how many shares have traded in the time the bid was pending."

[234] The submissions from the Banks and Sears Holdings emphasized that both subsections 97(1) and 97(2) of the Act focus on the consideration offered under the bid and not on the after-tax impact of the consideration received by individual shareholders. It is, of course, true that the after-tax impact of the consideration ultimately realized pursuant to the Offer or upon successful completion of the SAT will vary across the diverse shareholder base depending on whether the shareholder is an individual, corporation, tax exempt entity or even a resident of Canada. In his Affidavit, Mr. Crowley stated as follows:

> Throughout his Affidavit, Mr. Ackman emphasizes that the Support Agreements were negotiated with a view to the tax position of BNS, Scotia Capital and RBC. This is certainly the case. There was nothing even remotely improper in Sears Holdings taking into account the tax position of shareholders of the target corporation in determining how to make the proposed acquisition the most appealing to holders of the largest number of shares. This is a common factor taken into account by offerors and it would have been irrational for Sears Holdings not to do so.

> (Affidavit of Mr. William C. Crowley sworn June 21, 2006 at para. 101).

[235] We agree entirely with these submissions. Section 97 of the Act cannot be interpreted to mean that all holders of the same class of securities must be offered identical after-tax consideration or that bidders are required to adjust the consideration offered to account for the unique tax positions of diverse groups of shareholders. In fact, offerors are required to provide adequate disclosure of the tax consequences of an Offer precisely to allow shareholders to assess the impact of the Offer on their own tax position and take this into account in deciding whether or not to tender, participate in the SAT or exercise any other rights that may be available to them. As a general proposition, there is nothing wrong with bidders taking into account the tax planning objectives of shareholders

generally in the course of structuring their bids.    Clearly, the Act cannot and should not be interpreted so as to require offerors to provide identical consideration to shareholders on a post-tax basis.  This would be neither practical nor sensible.

[236] The Pershing Group relied upon two previous Commission decisions in support of their position that "tax benefits" can be found to violate the Collateral Benefits Prohibition.

[237] In the *Royal Trustco Ltd.* case, Campeau made an all-cash bid for the common and preferred shares of Royal Trustco.  Prior to launching the bid, Campeau had obtained a call option on the Royal Trustco shares owned by Unicorp in consideration for which Unicorp received convertible preference shares of Campeau which, on the third anniversary date from issuance, would automatically convert into common shares of Campeau.  Unicorp also entered into a shareholders' agreement with Campeau's principal shareholder which would allow Unicorp the option of either selling its convertible preference shares to, or buying Campeau common shares from, the principal shareholder.  Campeau apparently applied for relief from the Collateral Benefits Prohibition but withdrew its application prior to the conclusion of the hearing.  The Commission found that the call option and shareholders' agreements made it possible for Unicorp to receive advantages or benefits that were not offered to other shareholders of the same class in the form of a "tax-free rollover of its Royal Trustco shares into Campeau shares."  The Commission stated in its decision that "the onus was on Campeau to demonstrate that the special features of the arrangement with Unicorp did not give rise to consideration of greater value than that offered the other shareholders of the class."  The Commission ultimately found that Unicorp did not receive the same consideration as other Royal Trustco shareholders and that the call and shareholders' agreements constituted Prohibited Collateral Benefits.  (*Royal Trustco Ltd.*, cited above, at page 309).

[238] Sears Holdings and the Banks argue that the conclusions reached by the Commission in the *Royal Trustco Ltd.* case are not applicable in this case as they are limited to a situation in which the bidder provides certain shareholders with a different form of consideration than that offered to other target shareholders.  In this case, all Sears Canada shareholders are being offered the same consideration of $18.00 per share.  While the Royal Trustco situation is not on all fours with this case, it is relevant in establishing that the onus rests with Sears Holdings and the Banks to establish

that the special features of the Support Agreements do not "give rise to consideration of greater value than that offered the other shareholders" of Sears Canada.

[239] In the *Noranda case*, the Commission gave relief from the Collateral Benefits Prohibition. In that case, the target shareholders were given the option of receiving cash or voting preferred shares redeemable for the same amount as the cash consideration. The preferred share option provided the controlling shareholders with favourable tax treatment. Although all shareholders were given the same choice between cash or preferred shares, the controlling shareholders were the only shareholders who would stand to realize a tax advantage in choosing the preferred share option. For this reason, an order from the Commission was sought. While the *Noranda* case is, again, not on all fours with the instant case, it establishes that a bidder that seeks to accommodate the specific tax planning objectives of certain target shareholders (in that case, the controlling shareholders) in preference to other shareholders may well be considered to have violated the Collateral Benefits Prohibition. In *Noranda*, all target shareholders were given the same choice of cash or preferred shares redeemable for the same amount as the cash consideration. However, the controlling shareholders were the only parties who were in a position to realize a tax advantage from the preferred share option. Similarly, in this case, Sears Holdings and the Banks argue that all minority shareholders are being offered the same revised Offer as the Banks. The practical reality is that the Banks may well be the only shareholders who can take advantage of the tax benefits that will be available to them as a result of the negotiation of the revised terms of the Offer and the SAT mid-bid and neither Sears Holdings nor the Banks have established otherwise. These arguments are not, in any event, dispositive in determining the application of the Collateral Benefits Prohibition to the Support Agreements in these circumstances.

[240] Counsel for RBC argued that, with the exception of the *Noranda* case, none of the authorities or precedents addressed the situation where the alleged benefit does not emanate from the bidder directly but, rather, follows from the application of general tax laws to the particular circumstances of a shareholder. Counsel for Sears Holdings made a similar submission in which he argued that the concept of "consideration of greater value" which is central to the Collateral Benefits Prohibition under subsection 97(2) must emanate from the offeror. Our finding with regard to whether or not the Support Agreements had the effect of providing consideration of greater value to the Banks than

67

to other shareholders of Sears Canada does not depend on this interpretive issue as will be clear from our reasoning below. However, we note that the Collateral Benefits Prohibition does not expressly require that the consideration of greater value, if it is found to exist, must emanate from the offeror or the person acting jointly or in concert with the offeror. Rather, the Collateral Benefits Prohibition requires a determination of whether a collateral agreement, commitment or understanding has the "effect" of providing to a shareholder consideration of greater value than that offered to other shareholders.

[241] The *Royal Trustco Ltd.* case, supra, is helpful in addressing a further interpretive issue that was raised in connection with the ambit of subsection 97(2) of the Act. Section 97 applies to take-over bids as defined. A take-over bid is defined in subsection 89(1) of the Act as "an offer to acquire ...securities...". The *Royal Trustco Ltd.* case established that agreements which confer collateral benefits on shareholders even though they contemplate the acquisition of shares outside of a bid are still subject to subsection 97(2) of the Act. In that case, the Commission found that there was a prohibited collateral benefit where the offeror proposed to acquire shares outside of a bid pursuant to a call agreement. As a matter of principle and policy, it should not be possible for an offeror to avoid the application of the Collateral Benefits Prohibition by agreeing to provide collateral benefits to a shareholder whose shares are to be acquired outside the bid in a SAT or other transaction. There is nothing in the language of subsection 97(2) which expressly requires or even implies that the shares at issue must be acquired under the bid. To interpret the provision otherwise where avoidance of its intent could so easily be achieved would be to undermine the fundamental principle of equal treatment of shareholders. We also note that it would be inconsistent with Rule 61-501 which treats the combination of the Offer and the SAT as the equivalent of a single transaction for purposes of determining whether the Minority Approval requirement has been satisfied.

[242] As noted above in the context of the consideration of the Vornado Agreement, consideration is not a defined term under the Act. In the case of *Currie v. Misa*, an English court provided a definition of consideration which has frequently been cited with approval by courts in Canada. It was said to consist in "some right, interest, profit or benefit accruing to the one party or some forbearance, detriment, loss or responsibility, given, suffered, or undertaken by the other." (*Currie v. Misa* (1875), L.R. 10 Exch. 153; affirmed (1876), 1 App. Cas. 554 (H.L.). Consideration has

68

been held by the courts to mean something which is of value in the eyes of the law and could include an act, or promise of an act, which is incapable of being given a monetary value, though it has some value or benefit in the sense of advantage for the party who is the present or future recipient or beneficiary of the act. (*Thomas v. Thomas* (1842), 2. Q.B.851 at 859; *Meisner v. Bourgaux Estate* (1994), 131 N.S.R. (2d) 244 (N.S.S.C); *Bank of Nova Scotia v. MacLellan* (1977), 78 D.L.R. (3d) 1 (N.S.S.C)).

[243] Commission Staff take the position that the Support Agreements violate the Collateral Benefits Prohibition. They reject the arguments of Sears Holdings and the Banks to the contrary for a number of reasons including the following:

- Sears Holdings took into account the tax objectives of a select group of Sears Canada shareholders whose votes it required and not those of all other shareholders;

- if the Collateral Benefits Prohibition were to be interpreted as focusing only on the identical consideration issue, this would make subsection 97(1), which sets out the basic requirement for identical consideration, superfluous; and

- it is clear from the evidence that the Banks would have suffered severe tax losses if the Offer and the SAT had been completed within the timeframe and in the form originally contemplated by Sears Holdings and if Sears Holdings had chosen not to enter into the Support Agreements and had simply raised the bid price under the Offer.

[244] Counsel for the Pershing Group submits that, at the end of the day, the effect of the Support Agreements was to do exactly what subsection 97(2) of the Act is directed at preventing. The Banks agreed to support the SAT in circumstances where they would not, in fact, have tendered to the bid because they received consideration of greater value in exchange for entering into the Support Agreements.

[245] We agree. The consideration of greater value that was received by the Banks in this case consisted of the promise of the Offer Extension, the SAT Election and the Liquidity Consultation

Provision which, in turn, ensured that the Banks would be in a position to preserve and realize millions of dollars worth of tax benefits. By entering into the Support Agreements, the Banks were able to negotiate these revised terms of the Offer which ensured that they would not be forced to tender into the bid prior to December, 2006 and thereby lose these tax benefits. By entering into the Support Agreements, the Banks were able to ensure that the form of the SAT, which would otherwise have been at the option of Sears Holdings to choose from among the four possibilities outlined in the Bid Circular, was one which would be advantageous to the Banks from a tax point of view. The Support Agreements also provided the Banks with the benefit of the Liquidity Consultation Provision, described above, which was not available to other shareholders of Sears Canada. This commitment on the part of Sears Holdings to consult with BNS, Scotia Capital and RBC as to future steps that might be taken to enable them to dispose of their shares in the event that the SAT was not successfully completed by December, 2006, appears to provide consideration of greater value than that offered to other Sears Canada shareholders particularly in light of Sears Holdings' persistent warnings that the Sears Canada shares would be very illiquid upon completion of the Offer. No evidence was offered to the contrary. In return for the Banks support of the SAT, Sears Holdings promised to take the foregoing actions which constituted consideration that was of considerable value to the Banks in ensuring that they would not be effectively forced to tender to the Offer and thereby lose the tax benefits that they wished to preserve and realize.

[246] We have concluded, for the reasons and based on the analysis set out above, that the effect of the Support Agreements was to provide consideration of greater value to the Banks than that offered to other Sears Canada shareholders. We are satisfied that no other conclusion, in the unique circumstances of this case, would be consistent with the wording, spirit and intent underlying the Collateral Benefits Prohibition which is a fundamental element of the protections afforded under Part XX of the Act.

*(iv)  What is the Appropriate Remedy in Relation to the Vornado Agreement and the Support Agreements?*

*(a) Extending the Release to Sears Canada Shareholders*

[247] Given our finding that the Vornado Agreement contravened subsection 97(2) of the Act, what is the appropriate remedy?   Counsel for the Pershing Group submits that the votes attached to the Sears Canada shares acquired by Sears Holdings from Vornado pursuant to the Deposit Agreement ought not to be included in the minority for purposes of the minority approval of the SAT.  They say that exemptive relief under subsection 104(2) of the Act could not have been available to Sears Holdings had it been sought as the Deposit Agreement was not made for reasons other than to increase the value of the consideration paid to Vornado.

[248] Sears Holdings submits that the relief sought by the Pershing Group is disconnected from and disproportionate to the alleged wrong.  They say that a more appropriate remedy, if one is required at all, would be for Sears Holdings to issue a Notice of Variation pursuant to subsection 98(4) of the Act to extend the same release, in effect, to all other shareholders whose shares are acquired pursuant to the Offer.

[249] Commission Staff maintain that it is unclear how providing a similar release to other Sears Canada shareholders would eliminate the benefit received by Vornado when the release is likely to have greater value for Vornado than any other Sears Canada shareholder.

[250] Deposit agreements, support agreements, and lock-up agreements are all contemplated by the Act and Rule 61-501 and are not, in and of themselves, objectionable or illegal.  As counsel for RBC pointed out to us in closing submissions, such agreements are a common and accepted tool for bidders in this jurisdiction.  Insider bidders are also entitled to lock-up a majority of the minority votes and to have those votes count in a second stage transaction.  Although we must analyze the Vornado Agreement and the Support Agreements separately, they were, as counsel for Sears Holdings put it, in the nature of a "package deal."  Another description offered was of a "three legged stool."  It was Vornado that was successful in negotiating for an increase in the bid price from $16.86 per share to $18.00 per share.  As counsel for Sears Holdings put it in closing submissions: "Mr. Roth knew he had Sears Holdings where he wanted them, and he had the ability

71

to extract the last nickel out of Sears Holdings, and he did it...And he was probably, in the circumstances, the only person who could have done that."

[251] The remedy we fashion must be preventive and protective in nature and not punitive.    In balancing the nature and effect of the collateral benefit provided by Sears Holdings to Vornado, the extent of the preferential treatment afforded to Vornado in the form of the Release, the impact of the granting of the Release on the integrity of the process and shareholder confidence against the increase in the bid price that resulted from the Vornado negotiations to the benefit of all Sears Canada minority shareholders, we are of the view that, in order to address the inherent unfairness of the Release having been granted only to Vornado, Sears Holdings ought to amend the Take-Over Bid Circular in respect of the Offer to disclose the existence and terms of the Release granted to Vornado pursuant to the Vornado Agreement and grant the same Release to other shareholders whose shares were or are acquired under the bid or the proposed SAT.

[252] Vornado clearly negotiated in its own commercial self-interest and the result of that negotiation was a higher bid price that accrued to the benefit of all Sears Canada shareholders including the Pershing Group.

[253] The nature of the collateral benefit that was obtained by Vornado is such that it can feasibly and pragmatically be extended to all shareholders of Sears Canada whose shares were or are acquired under the Offer.  We are of the view that extending the release to other shareholders of Sears Canada whose shares are acquired under the bid or under the proposed SAT is appropriate and fair in the circumstances and consistent with the principle of equal treatment of all shareholders under a bid.  To do so is also consistent with the animating principle underlying s. 97(3) of the Act.

[254] We are equally of the view, however, that on its own, this remedy is inadequate and fails to redress the real harm which has been done by Sears Holdings in granting the release to Vornado in the context of negotiating the Deposit Agreement.  Merely granting the Release to other Sears Canada shareholders will not, of course, result in equal treatment. These shareholders do not have the opportunity that Vornado had to make their decision to tender to the bid conditional upon the receipt of a satisfactory form of Release.  From the evidence, we know that receipt of the Release

was important to Vornado in its decision to tender to the bid. Accordingly, we must address the impact, if any, that the tendered Vornado shares ought to have on the minority approval of the SAT required to be obtained in accordance with the terms of Rule 61-501 and its Companion Policy. This matter is addressed immediately below.

### (b) The Minority Approval Requirement of Rule 61-501

[255] Our overriding obligation must be to ensure that the consequences to the Offer and the SAT that result from our findings above are consistent with the spirit and intent of the equal treatment requirements which govern insider bids under the Act and consistent with the Minority Approval requirement which is a key protective pillar under Rule 61-501.

[256] The SAT is a business combination under Rule 61-501 because it is a transaction by which Sears Holdings intends to acquire any Sears Canada shares that are not tendered to it under the Offer. The Companion Policy to Rule 61-501 states that the Commission does not consider the types of transactions covered by Rule 61-501 to be inherently unfair. However, the Policy notes that such transactions are capable of being abusive and unfair and that the Commission has therefore adopted the protections set out in the Rule animated by the principles set out in the Companion Policy to Rule 61-501. In order for the SAT to proceed, it must be approved by the minority shareholders in accordance with the provisions of the Rule.

[257] The votes attached to the Sears Canada shares which were tendered to the Offer may generally be included in determining whether Minority Approval of the SAT has been obtained under Rule 61-501 with numerous exceptions. Votes attached to shares of joint actors would have to be excluded. In addition, votes attached to shares of a party that received a collateral benefit under the bid would also have to be excluded. For purposes of Rule 61-501, which focuses on related party transactions, the definition of "collateral benefit" differs from that under the Act and applies to "related parties". The Rule 61-501 definition of "collateral benefit" is not applicable in this case as none of BNS, Scotia Capital, RBC or Vornado are "related parties" as therein defined.

[258] We are therefore left to determine the appropriate remedy based on the application of the policy and principles which underlie the Minority Approval requirement to these circumstances where collateral benefits have been granted to non-related third parties. In responding to comments received on the proposed January 2004 amendments to Rule 61-501, Commission Staff stated as follows:

> In the case of a business combination, <u>where a majority of security holders can force the minority to relinquish their securities against their will, it is important that this majority be comprised, to the extent possible, of security holders who are voting solely on the merits of the business combination.</u> (emphasis added)

> (Notice of Proposed Amendments to Rule 61-501 – Insider Bids, Issuer Bids, Going Private Transactions and Related Party Transactions and Companion Policy 61-501 CP (2004), 27 O.S.C.B. 550 at 566).

[259] In its Notice of Amendments to Rule 61-501, in commenting on the nature of the Minority Approval requirement, the Commission expressed the expectation that those voting have interests which are as aligned and as free from conflicts as possible:

> …<u>when a majority vote of security holders can force the minority to relinquish their securities against their will at a price they may regard as inadequate, it is reasonable to require that the security holders comprising the majority be as free from conflicts as possible so that their interests are aligned with those of the minority.</u> (emphasis added).

> (Notice of Amendments to Rule 61-501 (2004), 27 O.S.C.B. 4483 at 4486).

[260] In recently introducing the definition of collateral benefits for purposes of Rule 61-501, the Commission noted that collateral benefits can, in fact or perception, induce the recipient shareholders to tender to a bid or to support a business combination. Even where motives are above reproach, the Commission further noted that collateral benefits can cause a transaction to have economic consequences that vary among security holders entitled to vote on the transaction. This can have a distortional impact on the required minority vote.

74

[261] These principles are applicable in the instant case. It is clear that the Banks agreed to support the SAT in return for the collateral benefits which they received as outlined above. In the case of the Vornado Agreement, we do not know what role the Release played in Vornado's decision to tender to an $18.00 bid price. We know from Mr. Roth's statement in Vornado Annual Report that he believed there was more value there. The result of the Vornado Agreement and the Support Agreements – the "package deal" that Sears Holdings had negotiated with select shareholders – was to ensure the success of the vote on the SAT. This result was prejudicial to the remaining shareholders of Sears Canada who not only had lost their collective leverage with respect to the bid price but also were certain to lose their shares despite how they might otherwise have been inclined to vote on the SAT. We have concluded that, to permit the votes attached to the Vornado shares tendered to Sears Holdings and the votes committed in favour of the SAT under the Support Agreements to count as part of the Minority Approval would be to distort the outcome of the Minority Approval process and vitiate its intended benefit.

[262] Finally, subsection 2.1 (5) of the Companion Policy to Rule 61-501 expressly contemplates the possibility of Commission intervention on public interest grounds where an arm's length security holder is receiving preferential treatment in return for its support of a business combination: "…giving a security holder preferential treatment in order to obtain that holder's support of the transaction will not normally be considered justifiable." Commission Staff submit, and we agree, that the preferential treatment extended by Sears Holdings to the Banks in order to accommodate their legitimate tax planning objectives in the context of a bid that did not otherwise appear to be succeeding affords a basis to conclude that Sears Holdings ought not to be permitted to count the votes in favour of the SAT pursuant to the Support Agreements.

[263] As the Act prohibits agreements with specific shareholders which have the effect of providing consideration of greater value than that offered to other shareholders, we also considered whether to allow the Offer to proceed in circumstances where it has been determined that collateral benefits have been provided to certain shareholders. The Commission may grant exemptions from the Collateral Benefits Prohibition if it is satisfied that it would not be prejudicial to the public interest and the collateral agreement was made for reasons other than to increase the value of consideration

paid for the securities of a selling security holder (subsection 104(2)(a)). This determination would be based primarily on the business purpose for providing the benefit. There was no basis for granting exemptions in this case. However, we decided that a permanent cease-trade order of the Offer would not be an appropriate remedy given the stage of the bid, the nature of the collateral benefits and their effect on other shareholders and taking into account that such a remedy was not put forward by any of the parties, including Commission Staff, in their final submissions to us. In fashioning an appropriate remedy in this case, we are mindful of the challenges we face in attempting to redress various aspects of Sears Holdings' conduct in the pursuit of its Offer given the stage of the Offer and the fact that so many shareholders have already traded or tendered their shares. The Order we are making will ensure that if Sears Holdings does proceed with a SAT, that they must be scrupulous in ensuring that the decision on the SAT is determined by the minority shareholders of Sears Canada uninfluenced by the inclusion of shares or votes secured by conferring collateral benefits and preferential treatment to specific shareholders.

[264] Therefore, we conclude that the Take-Over Bid Circular in respect of the Offer ought to be amended to disclose that Sears Holdings will exclude from the calculation of the majority of the minority, on the anticipated SAT, the shares of Sears Canada acquired by Sears Holdings from Vornado pursuant to the Vornado Agreement and the shares of Sears Canada held by or acquired from Scotia Capital, BNS and RBC, which are the subject of the Support Agreements, including on any other offer or SAT in the future.

### E.  Was the Conduct of Sears Holdings in Connection with its Offer Coercive and/or Abusive?

[265] The Pershing Group submits that, in considering all of the circumstances of this case, the bid of Sears Holdings is coercive and/or abusive of the minority shareholders of Sears Canada and contrary to the public interest. Counsel for Pershing provided the panel with a summary document enumerating all aspects of the conduct at issue in this matter which they allege, when viewed as a whole, amounts to coercive and abusive conduct. We deal with these complaints below.

[266] Counsel for Sears Holdings urged us to be cautious in applying words like "coercive" and "abusive" to the Offer as these words are often applied loosely and strategically by those who stand in opposition to an offeror and its bid. According to the Webster's Dictionary, "coercive" means to dominate or control especially by exploiting fear or anxiety. The dictionary definition of "abusive" which is relevant in this context means to mistreat. Not surprisingly, previous Commission decisions have not attempted to define these terms in the abstract but rather, have applied the Commission's public interest jurisdiction in the context of particular transactions and circumstances that call out for a remedy. This approach is, perhaps, analogous to the manner in which the Courts have been reluctant to define pornography but, rather, "know it when they see it."

### (i) The Absence of a "Minimum Tender Condition"

[267] The Pershing Group takes issue with the fact that the Offer does not contain a minimum tender condition despite the earlier public representation by Sears Holdings to the contrary. They say this is coercive because, in the circumstances, shareholders may well feel pressured to tender for fear of holding shares in an even less liquid post-bid entity.

[268] Sears Holdings submits that their bid is not a partial bid but is, rather, an all-cash premium bid for all outstanding Sears Canada shares and therefore cannot be said to be coercive.

[269] We cannot conclude that the absence of a minimum tender condition is necessarily coercive on its own. There is no obligation to include a minimum tender condition in every offer and nothing, per se, improper with announcing the intention to include such a condition but subsequently deciding not to include it once the bid is formally launched. We also note that even where take-over bids do include such a condition, the condition can typically be waived in the sole discretion of the offeror.

[270] However, liquidity concerns on the part of shareholders who would prefer not to tender to the Offer which lacks the protection of a minimum tender condition can create pressure on shareholders to tender despite their views as to the adequacy of the offer. On its own, this does not warrant

Commission intervention but it is a factor to bear in mind in considering the other claims of coercive or abusive conduct relating to the Offer.

### (ii) The Offer Was at a Price Below the Genuity Valuation

[271] There is nothing inherently improper about an offeror deciding to make a bid at a price which is less than the valuation range of the independent valuator. The role of the Commission is not to form an opinion as to the fair value of Sears Canada shares. Similarly, our role is not to weigh in as to the relative merits of the Genuity Valuation or the financial adequacy of the Sears Holdings' bid price. That is for the shareholders of Sears Canada to decide with the benefit of the required valuation and the views of the Special Committee formed pursuant to the requirements of Rule 61-501.

[272] Provided that shareholders have had the benefit of an independent valuation conducted in accordance with the terms of Rule 61-501 and a meaningful opportunity to accept or reject the bid, there is no basis for the Commission to intervene on the basis that the bid is lower than the lowest end of the independent valuation range.

### (iii) Interference with the Genuity Valuation Process

[273] Sears Holdings had several meetings with Genuity, organized by the Special Committee, in an effort to ensure that Genuity was aware of information that Sears Holdings believed ought to be considered by Genuity in formulating its valuation opinion. The fact that such discussions took place and that Sears Holdings was desirous of communicating with Genuity prior to completion of the valuation should not be viewed as objectionable or coercive. That such meetings took place would not, absent other conduct, afford a basis to conclude that there was any improper attempt to influence or intimidate Genuity. Proof of the latter would, of course, raise significant concerns.

[274] Following the issuance of the Genuity Valuation, Sears Holdings was openly critical of Genuity, accusing it of having made indefensible assumptions and of ignoring highly relevant

factors which it ought to have considered and which Sears Holdings had brought to its attention. There is nothing wrong with parties disagreeing on the question of fair market value -- in fact, this is to be expected. However, the manner in which Sears Holdings chose to attack the integrity of the Genuity Valuation is reflective of the manner in which they dealt with others – such as the Special Committee and the Pershing Group – who got in the way of the successful completion of their bid.

### (iv) Decision by Sears Holdings to Cease Dividend Payments

[275] On March 20, 2006, Sears Holdings issued a press release stating that: "in the event that Sears Holdings does not acquire a majority of the minority of Sears Canada shares, Sears Canada will face the increasingly competitive Canadian retail environment without the financial and operating benefits of being owned 100% by Sears Holdings.   Therefore, Sears Holdings, consistent with its practice in the United States, will support the elimination of the recent practice of Sears Canada of paying quarterly dividends of C$0.06.  In addition, Sears Holdings would not support any extraordinary dividend or distribution to public shareholders in 2006."

[276] Mr. Crowley explained in his Affidavit that Sears Holdings made this public statement of what its intentions were with respect to the payment of dividends.   He further explained that Sears Holdings does not pay quarterly dividends and believed that a consistent practice was appropriate for Sears Canada.

[277] Mr. Crowley's characterization of the reasons underlying this public statement by Sears Holdings in the course of its insider bid flies in the face of contemporaneous non-public communications from Mr. Rudka, financial advisor to Sears Holdings, to his colleagues at Scotia Capital.   From these e-mails, it is clear that Mr. Crowley intended to use the threat that Sears Holdings would eliminate the Sears Canada dividend in order to exert pressure, or coerce, the shareholders of Sears Canada to tender into the insider bid.   The e-mail dated March 13, 2006, from Mr. Rudka to Messrs. Vaux and Asmundson at Scotia Capital states as follows: "Crowley called. …He wants to send out a press release this week reminding people to tender and perhaps threatening no 2006 dividend." (emphasis added)

79

[278] Sears Holdings followed up on this "threat" by issuing the March 20 press release which announced the intention to eliminate dividend payments at Sears Canada.    In so doing, it is noteworthy that Sears Holdings mischaracterized quarterly dividend payments as a "recent practice" when, in fact, Sears Canada had been paying dividends for the past 20 years.

[279] Subsequently, on April 3, 2006, Sears Holdings announced that its Offer had been amended to provide that any dividend paid by Sears Canada after the date of the Offer, including regular quarterly dividends, would have to be remitted to Sears Holdings by shareholders who tender. An e-mail sent April 26, 2006, to Mr. Crowley from Mr. William Phelan, VP & Controller of Sears Holdings stated as follows:

> "From my perspective, the key point is that the majority of the minority have already accepted the $18.00 offer and all shareholders can receive their $18.00 immediately (actually ten days after) when they tender.    To pay a dividend would provide a mixed message to these shareholders, giving them a reason to hold the shares longer and delay the process.    That would not be in the best interest of Sears Canada, its associates or the shareholders."

[280] Viewed in the context of events that were unfolding in relation to the Offer, the statements relating to the non-payment of dividends could be construed as threatening in nature and, together with other "warnings" relating to decreased liquidity and the increasingly competitive Canadian retail environment, intended to exert pressure on the minority shareholders to tender to the bid. Despite the business purpose advanced by Sears Holdings in explaining their decision to announce the cessation of dividend payments to Sears Canada shareholders, we do not regard it as co-incidental that this announcement was issued at a time when it appeared that minority shareholders were unwilling to tender at the then bid price.

*(v) Sears Holdings' Dealings with the Special Committee of Sears Canada*

[281] The Pershing Group raised several complaints relating to the manner in which Sears Holdings dealt with the Special Committee of Sears Canada. They submit that this conduct is remarkable and should be deeply troubling to the Commission. In evaluating the validity of these complaints, we had the benefit of the testimony of Mr. William Anderson, the Chair of the Special Committee. All of the parties, including Sears Holdings, acknowledged Mr. Anderson to be a very credible and impressive witness. We found Mr. Anderson to be a credible witness who gave his evidence in a straightforward, thoughtful and balanced fashion.

[282] It is important to set out the factual background to the complaints made in this regard. On February 21, 2006, Sears Canada mailed its Directors' Circular concerning the insider bid. The voting members of Sears Canada's board (i.e. the six independent directors comprising the Special Committee) recommended unanimously that the shareholders of Sears Canada reject the Offer of Sears Holdings and not tender their shares to the insider bid. The mere fact that Sears Holdings chose to pursue a bid which the Special Committee considered to be inadequate does not, in our view, constitute evidence of coercive conduct as suggested by the Pershing Group.

[283] In support of this recommendation to reject the Offer, the Special Committee noted, among other things, that:

(a) the Offer of Sears Holdings was financially inadequate;

(b) the consideration offered by Sears Holdings was significantly below the valuation range of Genuity;

(c) the consideration offered by Sears Holdings was at a significant discount to the average trading price of the shares of Sears Canada on the Toronto Stock Exchange over the period following the initial announcement of the Offer on December 5, 2005;

(d) the Offer was made at a time when the impact of the steps being taken by Sears Canada in the last half of 2005 to reduce costs and improve the company's financial results had not yet become evident; and

81

(e) the Offer did not reflect the benefits and savings that would be realized by Sears Holdings if its Offer was successful.

[284] In addition, the Special Committee also expressed their view that the Offer had been "opportunistically timed" and that it "exerts pressure" on Sears Canada and its minority shareholders as evidenced by a number of factors including Sears Holdings' application for exemptive relief to permit it to mail its Circular without including the required formal valuation as well as the absence of a minimum tender condition under the Offer.

[285] This set off a chain of events. On February 22, 2006, Sears Holdings issued a press release in response to the Directors' Circular. This press release quoted Alan Lacy, the Vice Chairman of Sears Holdings as follows:

> "We are disappointed that the Special Committee has recommended against our Offer; however we recognize that the Special Committee was constrained in its ability to recommend that shareholders accept our offer as a result of the valuation range contained in what we believe to be a flawed valuation report."

[286] Having in essence attacked the basis for the Special Committee's recommendation as being "flawed", Sears Holdings went on in their press release to set out a detailed chronology of the purchases and sales of Sears Canada shares by members of the Special Committee in the three years prior to the issuance of the Directors' Circular. They suggest in their press release that shareholders should consider whether these actions of the individual members of the Special Committee are "consistent with the Genuity valuation report, which is the principal underpinning of the Special Committee's recommendation." Mr. Anderson, in giving his evidence, made it clear that he felt that these comments were unfair and misleading in that they did not reflect the fact that some members of the Special Committee were precluded from buying Sears Canada shares as a result of trading restrictions during the relevant time period. We have concluded that the purpose of these statements in the Sears Holdings press release was to call into question the good faith and bona fides of the Special Committee members by underscoring the perceived inconsistency between their

82

recommendation with regard to the Offer and their own past trading practices with regard to the shares of Sears Canada.

[287] The Sears Holdings press release also attributed to members of the Special Committee concerns pertaining to the financial condition and stability and the ongoing business prospects of Sears Canada. Mr. Anderson's evidence before us was that these statements were taken out of context. We have concluded that Sears Holdings used these prior statements out of context and in a misleading fashion in an effort to pressure the shareholders of Sears Canada to tender to its bid.

[288] Mr. Anderson made it clear that despite numerous requests made to Sears Holdings for access to information which the Special Committee felt they needed in order to fulfill their statutory mandate, access to this information and documentation was either delayed or never provided at all. Into the latter category falls the Natcan lock-up agreement, the Vornado Agreement and the Support Agreements with BNS, Scotia Capital and RBC.

[289] In the cross-examination of Mr. Anderson, we learned that the draft Notice of Change to Directors' Circular originally described the insider bid of Sears Holdings as "coercive". The final version of the Notice of Change to Directors' Circular dated April 12, 2006, did not include that word. Mr. Anderson conceded that the Special Committee agreed to take that reference out of the final version of their Directors' Circular as a result of requests made by representatives of Sears Holdings. However, his evidence was that the Special Committee was not coerced into doing so.

[290] Subsequently, on February 27, 2006, Sears Canada issued a press release announcing that all six of the independent directors on its board did not intend to stand for re-election at the next annual meeting of shareholders in the spring, 2006. These six directors constituted the members of the Special Committee. At this time, Mr. Vaux of Scotia M & A sent an e-mail dated February 28, 2006, to Mr. Crowley and others in which he stated as follows:

> "If there was a time to issue a press release about Holdings intending to put forth its own slate of directors and to effect some changes, this is probably it. Just try to sound disappointed with their actions and again let's raise the inconsistencies about

how this obviously further distances them from their reject recommendation."

[291] The day after the announcement was made that the independent directors would not stand for re-election, Mr. Lacy, the representative of Sears Holdings on the Sears Canada board, approached the independent directors to ask them if they would resign immediately instead of waiting for the annual general meeting on May 9, 2006.  The independent directors refused to do so because of the fiduciary obligations they owed to Sears Canada.  That Sears Holdings would seek the early resignation of the members of the Special Committee in the midst of an insider bid in respect of which the Special Committee had expressed serious reservations is of significant concern to the panel.  It is also noteworthy that someone at Sears Holdings apparently leaked to the media the message that the independent directors of Sears Canada were "running for the hills" which appeared in a subsequent news report.

[292] Following the increase of the Sears Holdings Offer to $18.00 a share in conjunction with the announcement of the Vornado Agreement and the Support Agreements, the Special Committee received an updated Valuation and Inadequacy Opinion from Genuity which re-affirmed Genuity's prior valuation range for the Sears Canada shares.  The Special Committee issued a Notice of Change of Directors' Circular in response to the revised Offer in which they continued to express a number of reservations "with respect to, or arising in light of, the revised Offer" of Sears Holdings but unanimously determined not to make a recommendation concerning the revised Offer.   In their Notice, the Special Committee stated as follows:

> "The Special Committee has not been provided with copies of the support agreements pursuant to which certain Minority Shareholders have agreed to vote their Common Shares in favour of a going private transaction or the names of such shareholders.   As a result, the Special Committee is unable to assess whether the Common Shares subject to such agreements may be voted as part of the minority with respect to a going private transaction involving Sears Canada." (emphasis added).

[293] We do not and cannot know what impact the provision of the requested information and documentation might have had on the Special Committee's consideration of the revised Offer or on their determination not to make any recommendation to the Sears Canada minority shareholders with respect thereto. The result of Sears Holdings' refusal to provide this information to the Special Committee on the basis, as counsel to Sears Holdings submitted to us, that they had no specific statutory obligation to do so, was that the minority shareholders of Sears Canada were effectively denied the opportunity to know what impact the information might have had on the Special Committee's consideration of the revised Offer and on their determination to proceed with a neutral recommendation.

[294] As the Commission emphasized in the context of the *Hollinger* decision, the role of the Special Committee in the context of an insider bid is a critical component of the protections afforded to minority shareholders pursuant to Rule 61-501 (*Re Hollinger Inc.* (2005), 28 O.S.C.B. 3309). It is understandable that all bidders, including insider bidders, will want to successfully complete their bid at the lowest price reasonably possible in the circumstances. In fact, it is to be expected that parties will act rationally and in their own economic interests. For this very reason, minority shareholders cannot be expected to look to the insider making the bid to protect their rights and interests. Rather, it is the statutorily mandated role of the Special Committee in such circumstances to safeguard the rights and interests of the public shareholders of the company during the course of an insider bid by, among other things, obtaining a formal valuation from an independent valuator of its choice and making an informed recommendation to the shareholders in relation to the insider bid.

[295] Insiders who wish to make an insider bid for a public company and take it private assume an obligation to co-operate with the Special Committee as it discharges its important and statutorily mandated function. We do not know to what extent Sears Holdings' actions and public attacks on the members of the Special Committee played a role in the individual decisions of the members not to seek re-election. We do know that, had the members of the Special Committee resigned immediately as Sears Holdings requested, that would have left no-one on the board of Sears Canada to protect the rights and interests of that company's minority shareholders during the pendency of the insider bid. We are of the view that the conduct of Sears Holdings as regards their dealings with

the Special Committee, formed in accordance with the requirements of Rule 61-501, fell far short of the conduct we would expect of even the most determined offeror in the pursuit of its insider bid.

### (vi) Dissent Rights

[296] The February 22 press release of Sears Holdings quotes Mr. Lacy as saying: "On March 17, 2006, shareholders will have two choices: either tender to the Sears Holdings offer or continue to hold shares, which we believe will thereafter trade at a significant discount to our offer." Counsel for Sears Holdings, BNS and Scotia Capital and RBC all urged us to bear in mind that those shareholders who are unhappy with the Offer can exercise their dissent and appraisal rights under Canadian corporate law. We agree. It is noteworthy that this choice was not mentioned as an option for shareholders in the February 22 press release. We cannot do more than speculate as to whether this omission reflects Sears Holdings' view as expressed by Mr. Crowley in a February 24 e-mail to Mr. Lampert that "dissenters rights in Canada do not work well for the dissenter in practice. It can take years for the dissenter to get the money (10 years in one case). Not a practical solution for shareholders." It is worth noting that, by extending the expiry date of the Offer to August 31, 2006, and the closing date for the proposed SAT to mid-December 2006, in accordance with the terms of the Support Agreements, there is resulting delay to other Sears Canada shareholders who might wish to commence the dissent and appraisal process.

### (vii) Exemption Application in Relation to the Valuation

[297] As noted earlier in these Reasons, Sears Holdings applied to the Commission and other securities regulators for relief from the requirement to include a formal valuation of the Sears Canada shares in its Take-Over Bid Circular on the basis that the Genuity Valuation was not being prepared quickly enough. The resolution of the exemption request is described earlier in these Reasons and need not be repeated here. While the Valuation was, of course, critical information for minority shareholders to have, Sears Holdings considered it appropriate to seek exemptive relief to

dispense with the need to include the Valuation in its Circular so that they could proceed with its mailing.

### (viii) Threatening Legal Action Against Desjardins

[298] When Sears Holdings took note of Mr. Mayers comments in the press in which he was generally critical of the bid price under the Offer, Sears Holdings took steps to commence a libel action against Desjardins.   Desjardins subsequently issued a public apology for the previous comments of Mr. Mayers, one of their executives.   We are unable to conclude, based on the little we know about what precipitated these events, that this action on the part of Sears Holdings provides evidence of coercive conduct.

### (ix) April 20 Complaint Against the Principal of Pershing

[299] On April 20, 2006, Sears Holdings filed a complaint with Commission Staff in relation to the conduct of the Pershing Group.   This complaint had two components to it.   The first of these components outlined allegations of breaches of the act against the Pershing Group which have been fully addressed earlier in these Reasons.    The other component of the complaint related to the past conduct of Mr. Ackman.   Sears Holdings included with their complaint a number of articles and U.S. court decisions concerning Gotham Partners L.P., a public and private equity partnership that Mr. Ackman had co-managed before he launched Pershing in January 2004.  Mr. Ackman, through his counsel, took objection to what he characterized as a pre-emptive, personal attack based on his past business dealings which were unrelated to Pershing, Sears Holdings or Sears Canada.  Mr. Ackman's response to the complaint made against him underscored the selective and misleading nature of the materials that were filed with Commission Staff.  The Commission takes complaints which are filed with it seriously and we expect that all market participants, acting directly or through their counsel, will be duly diligent in ensuring that information filed in support of such complaints is balanced, accurate and not misleading.

*(x) Other Complaints*

[300] The Pershing Group made a number of other complaints in support of their claim that the Offer is coercive and abusive which relate to the fact that Sears Holdings entered into the Vornado Agreement and the Support Agreements, provided inadequate and deficient disclosure and generally took steps designed to coerce minority shareholders to tender into their insider bid. We need not address these complaints here as they are dealt with elsewhere in these Reasons.

*(xi) What is the Appropriate Remedy?*

[301] The Commission may make an order under subsection 127(1) of the Act that trading in any securities by or of a person or company cease permanently or for such period as may be specified (the cease trade order) where, in its opinion, it is in the public interest to do so.

[302] The Commission's public interest jurisdiction is derived from the broad mandate conferred upon it under the Act to provide protection to investors from unfair, improper, or fraudulent practices and to foster fair and efficient capital market and confidence in their integrity (section 1.1 of the Act).

[303] In *Re Cablecasting Ltd.*, (1978) O.S.C.B. 37, the Commission applied its public interest jurisdiction to a "going private transaction" effected in compliance with the requirements of the Ontario *Business Corporations Act*, R.S.O. 1990, c. B.16 but not in compliance with the disclosure requirements applicable to issuer bids under the predecessor policy to Rule 61-501. In its decision, the Commission balanced the need for intervention where a transaction was inconsistent with the best interests of investors against a preference for a policy oriented solution but, ultimately, did not have to issue a cease trade order because the respondent undertook to obtain minority approval. The Commission, however, provided guidance on when it was more likely to intervene under the rubric of its public interest jurisdiction despite the absence of any breach of Ontario securities law:

"If the transaction under attack was of an entirely novel nature, Commission action

might seem more appropriate.  Another relevant consideration in assessing whether to act against a particular transaction is whether the principle of the new policy ruling that would be required to deal with the transaction is foreshadowed by principles already enunciated in the Act, the regulations or prior policy statements.  Where this is the case the Commission will be less reluctant to exercise its discretionary authority than it will be in cases that involve an entirely new principle." (*Re Cablecasting*, supra, at page 43).

[304] The frequently cited *Canadian Tire* decision established that the Commission can and will intervene on public interest grounds even if there is no breach of the Act, the regulations or Commission policies.  In such circumstances, the Commission's public interest jurisdiction will be invoked where necessary to prevent an otherwise abusive transaction from occurring.  Accordingly, the standard for intervention in such circumstances is more than a complaint of unfairness and will generally involve some showing of a broader impact on the operation of the capital markets (*Re Canadian Tire Corp.* (1987), 10 O.S.C.B. 858 at 948, affirmed (1987) 37 D.L.R (4th) 94 (Div. Ct).

[305] In the *H.E.R.O. Industries* case, the Commission intervened in the public interest to stop a transaction where a market participant initiated a transaction that was purposefully designed to exploit a loophole in securities legislation.  The Commission stated that:

"Finally, Middlefield's conduct seems to us to be clearly abusive of the integrity of the capital markets, which have every right to expect that market participants like Middlefield will adhere to both the letter and spirit of the rules that are intended to guarantee equal treatment of offerees in the course of a take-over bid..." (*Re H.E.R.O. Industries Ltd.* (1990), 13 O.S.C.B. 3775 at page 3795).

[306] The parties in this case, including Commission Staff, all agreed that in the absence of any contravention of Ontario securities law, a finding that the conduct of Sears Holdings in relation to their Offer was abusive of the capital markets would be required in order to warrant an order being made to cease trade the Offer under section 127 of the Act.

[307] In view of the fact that we have found that the Vornado Agreement and the Support Agreements were entered into in contravention of subsection 97(2) of the Act, it is unnecessary for us to make a finding that the conduct of Sears Holdings in connection with their insider bid or the bid itself was "abusive" in order to support the exercise of our public interest jurisdiction under section 127 of the Act.

[308] Although it is unnecessary for us to do so, we find that elements of the conduct of Sears Holdings in pursuing their Offer were coercive and abusive of the minority shareholders of Sears Canada and the capital markets generally.   Our finding in this regard is based on the detailed analysis and assessment of the conduct of Sears Holdings considered in totality as described in detail above.

[309] Sears Holdings relied upon the Support Agreements as a means of obtaining assurance of the necessary shareholder approval of a SAT.   The purpose and effect of the Support Agreements are well described in an e-mail dated April 6, 2006, from Mr. Rudka to Mr. Crowley and Mr. Lacy of Sears Holdings after Sears Holdings had issued its press release announcing the Support Agreements.   The e-mail congratulates Sears Holdings on its success and states:

> "Today's announcement will surprise the market and, given our conversations with the analysts and institutional shareholders, it will catch most off-guard.  In fact, the rather unique tactic of securing the support of the majority through the derivatives trades and support agreements will make this transaction one of the most intriguing Canadian M & A trades in a long time."

[310] Sears Holdings and their financial advisor were aware that the approach they had employed to ensure the success of their Offer was "unique."   Despite the unique and novel nature of the approach, the principle of fair and equal treatment to all minority shareholders without preference to some shareholders over others is a well-enunciated principle in Ontario securities law in the bid context and we therefore have no hesitation in applying this principle to this transaction in accordance with the Commission's guidance in the *Cablecasting* decision cited above.

[311] In this case, had we found that subsection 97(2) had not, technically, been contravened and despite the absence of a finding of joint actor status, we would nonetheless have determined that an order under section 127 of the Act was warranted to ensure that the votes attached to the shares that are the subject of the Support Agreements as well as the votes attached to the shares acquired by Sears Holdings pursuant to the Vornado Agreement ought not to count in the majority of the minority vote required on the SAT.

[312] Such intervention would be justified in the public interest in the circumstances of this case and consistent with our mandate under the Act. The purpose and effect of the Support Agreements was to secure the votes of a select few shareholders – namely, BNS, Scotia Capital and RBC – in connection with the SAT in return for which a deal was negotiated with respect to the Offer that ensured that the interests of these parties was addressed through the terms of the Offer. While there is nothing wrong with BNS, Scotia Capital and RBC wanting to ensure that the Offer was structured in the most advantageous manner possible from their particular tax perspective, allowing their votes to count in the majority of the minority vote on the SAT in these circumstances would be to turn a blind eye to the overriding principle underlying Rule 61-501 that all shareholders be treated, and be seen to be treated, fairly and equally unless differential treatment is reasonably justified. In our view, the same rationale applies to the Vornado shares. As subsection 2.1(5) of the Companion Policy to Rule 61-501 provides, giving a security holder preferential treatment in order to obtain that holder's support of the transaction will not normally be considered justifiable.

[313] Although we find that certain aspects of Sears Holdings' conduct in connection with the Offer was unfair, coercive, and at times abusive, we are not of the view that the transaction as a whole is so abusive of the minority shareholders or the capital markets as to warrant an order cease trading the Offer entirely. Rather, we believe that a more proportionate and appropriate remedy is to order that Sears Holdings comply with all of its obligations under Ontario securities law in relation to its Offer and to cease trade the Offer subject to certain conditions. These conditions include a requirement that Sears Holdings amend its Take-Over Bid Circular in respect of the Offer and disclose that the votes attached to the shares of BNS, Scotia Capital and RBC as well as the Vornado shares previously tendered to Sears Holdings will be excluded for purposes of the required minority vote in connection with the SAT under Rule 61-501.

[314] The Pershing Group has requested that the Support Agreements be terminated as a term and condition of the cease trade order. Commission Staff urged us to carefully consider whether our jurisdiction to impose terms and conditions pursuant to section 127 extends so far as to permit us to effectively order that legal agreements between the bidder and third parties be terminated. Counsel for the Pershing Group maintains that they are not seeking an order that the Support Agreements be terminated. Rather, they are seeking an order that the bid be cease traded unless and until the Support Agreements are terminated. They argue that termination of the Support Agreements is therefore not a mandatory term of the order.

[315] The parameters of the Commission's jurisdiction to impose terms and conditions under a section 127 order was addressed by both the Ontario Court of Appeal and the Supreme Court of Canada in the *Asbestos* decision. The Supreme Court there stated as follows:

> "The breadth of the OSC's discretion to act in the public interest is also evident in the range and potential seriousness of the sanctions it can impose under s. 127(1). Furthermore, pursuant to s. 127(2), the OSC has an unrestricted discretion to attach terms and conditions to any order made under s. 127(1)."

> (*Committee in the Equal Treatment of Asbestos Minority Shareholders v. Ontario (Securities Commission,* [2001] 2 S.C.R. 132 at page 149).

[316] The Court went on to say that the nature of any section 127 order and the terms and conditions that may attach to it must be consistent with the Commission's overall mandate under the Act.

[317] While we take significant comfort from the broad interpretation given to our section 127 authority by the Supreme Court of Canada, it is unnecessary in this case to test the precise limits of that jurisdiction. Counsel for the Pershing Group explained in their closing submissions the reason they are seeking the termination condition as follows: "If the order simply excludes from voting the shares of the banks, then one likely outcome is that we will then proceed to a subsequent acquisition transaction. The vote may well fail...Holdings is then perfectly at liberty to commence another offer, and our read of the support agreements is that they continue. There is no obvious termination

provision, based on our understanding of these agreements, and so the banks would continue to be bound to support that subsequent offer. We think that would have the effect of vitiating the order we have asked you to make today."

[318] It is a legitimate concern that the Order be cast broadly enough to ensure that the votes attached to the shares held by the parties to the Support Agreements, and to which the Support Agreements relate, are not included in calculating whether minority approval of any SAT has been achieved. As the Order refers to the Offer and any other offer made or to be made by Sears Holdings or any affiliate for the shares of Sears Canada, it appears to us broad enough to address this concern without including a condition that the Support Agreements be terminated. The issue of the continued effectiveness of the Support Agreements is not a matter that we need to address and is best left to the parties to deal with. Our Order makes it clear that Sears Holdings cannot include the votes attached to the shares of Scotia Capital, BNS or RBC to which the Support Agreements relate in the required minority approval under Rule 61-501 in the context of this Offer or any future offer which they may launch for the shares of Sears Canada. We believe that the desired result is achieved by cease trading the Offer or any future offer to be made by Sears Holdings for the shares of Sears Canada unless and until Sears Holdings abides by the condition set out immediately above and discloses the same in their Take-Over Bid Circular relating to this Offer or any future offer for the shares of Sears Canada.

DATED at Toronto this 8th day of August, 2006.


"Susan Wolburgh Jenah"                                    "Robert W. Davis"
Susan Wolburgh Jenah                                      Robert W. Davis


"Carol S. Perry"
Carol S. Perry

93



| Home | Treatise | Handbook | Updates | Forms | Compliance Tools | Online Resources | Electronic Filing |

# Q & A Discussion Forum

Our "Q&A Discussion Forum" is a place for practitioners to raise questions, share developments and stay on top of cutting-edge practices. We encourage you to post questions as well as answer them (anonymously or otherwise). Please be aware that your question may not be answered – and that we <u>disclaim</u> any responsibility for the answers provided in our forum.

<u>Search</u>
<u>Start a discussion/ new topic</u>
<u>Unsubscribe from topics</u>

◉ Sort topics by last posting date

◯ Sort topics by original posting date

**Color key:**
Indicates a topic
Indicates a new topic or reply
Indicates a reply

---

Page: 1 **2 3 4 5 6 7 8 9 10** ...

TOPIC # 4165
1 reply

[ Subscribe ]

**Failure to File Form 3 for 10% or More Stockholder**    Last Post: 5/23/2008 3:12:47 PM

A stockholder has owned just under 10% of the company's stock for a long time, and has made Schedule 13G accordingly. It inadvertently went over the 10% ownership threshhold in February 2008. As soon as the stockholder realized that it had done this, it sold off enough shares to go under the 10% threshhold, which happened in May 2008. The stockholder realized that it did not file a Form 3 reporting its status as a Section 16 reporting person and then a Form 4 reporting its sale and the fact that it was no longer a Section 16 filer. Technically, we can file a late Form 3, and then a late Form 4, with this information. Subsequently, the issuer would have to make the appropriate disclosure under Item 405 of Regulation S-K. However, what are the down sides of not filing the Forms 3 and 4? And what is the likeliness of any issues arising if the stockholder does not file these late forms? The stockholder would rather not file, even if there is a small risk involved, but will file if it otherwise makes sense.

[ Reply ]                                                                *5/23/2008 12:37:32 PM*

**RE: Failure to File Form 3 for 10% or More Stockholder**

The failure to file a required Form 3 and Form 4 puts the investor at the same risk as any other person who fails to file a required 1934 Act report, inclu, including an issuer or any other person. The SEC may bring an enforcement action against the stockholder, seeking a cease and desist order, an injuction, or civil money penalties, among other remedies. Also, if the insider engaged in a purchase after going over 10%, and that purchase is matchable with the sale that took the insider below 10%, the statute of limitations on the 16(b) action is tolled for as long as the Forms 4 aren't filed. If the filings aren't made, the likelihood of detection, of course, is low.

*Alan Dye, Hogan & Hartson LLP*    *5/23/2008 3:12:47 PM*

[ Reply ]

---

TOPIC # 4164
1 reply

**Rebalancing**                                                        Last Post: 5/22/2008 7:28:06 PM

An insider, which is an investment manager of funds, filed a Form 4 disclosing the shares it beneficially owned through the funds. In a footnote the insider only disclosed on behalf

**Subscribe**

of what funds the shares are held, without specifying how many shares are held by each fund. The funds themselves are not separate reporting owners. The funds did a rebalancing transferring less than 1% of the shares from one fund to the other, such that one of the two funds no longer holds any shares.

Two questions related hereto:
1. Does this rebalancing require the insider to file a Form 4 to correct the footnote since now the shares are only held by one fund, not by the two funds?

2. In the insider's Schedule 13D, both funds are listed as reporting persons. The rebalancing resulted in one of the reporting persons no longer holding any shares. Does the rebalancing of less than 1% require the schedule 13D to be amended?

**Reply**                                                              *GS    5/22/2008 4:22:41 PM*

### RE: Rebalancing

Your question highlights why the instructions to the forms require that each indirect holding be reported separately. I see this requirement disregarded fairly often, and I've never heard the staff complain about it, but in your case I think you may need to break out the holdings of two of the funds to report the transfer. If the manager's pecuniary interest has not changed (e.g., it has a 1% interest in each partnership), you may not need to report the transfer at all, in reliance on Rule 16a-13 (exempting changes in the form of beneficial ownership). If you can't rely on Rule 16a-13, I think you'll need to file a Form 4 reporting the disposition by one fund and the acquisition by the other.

**Reply**                                   *Alan Dye, Hogan & Hartson LLP    5/22/2008 7:28:06 PM*

---

TOPIC # 4162
5 replies

**Trust Stock Purchase**                                     Last Post: 5/22/2008 2:23:28 PM

We have a director who has a living trust--where he and his spouse are the sole trustees and sole lifetime beneficiaries. The trust purchased shares of our stock in the public market using the trust assets--all of which are community property.

**Subscribe**

How do I report the purchase of stock by the director's trust? As it's a living trust and the assets are community property, is it as if the director purchased the shares directly and, therefore, I do not even mention the trust in the Form 4? In other words, do I just disregard the trust?

Do you need more information on the trust?

Thanks in advance.

**Reply**                                                          *Gunner    5/21/2008 6:03:56 PM*

report the trust's holdings as directly owned. Otherwise, the director should report the shares as indirectly owned. It would be acceptable to report the shares as indirectly owned in any case. See Model Form 44.

**Reply**                                                  *Alan Dye    5/21/2008 6:12:23 PM*

### RE: Trust Stock Purchase

Are you saying that (considering that all of the trust property is community property) the determining question in this case is whether the director can revoke the entire trust without his or her spouse's consent?

**Reply**                                                    *Gunner    5/21/2008 6:35:27 PM*

**RE: Trust Stock Purchase**
There isn't much staff guidance on this reporting issue. The letters cited on page 343 of
the Treatise (other than Park Chemical, from 1976) really address a prior version of the
rules which required a trust to file separately as a Section 16 insider if an insider served
as trustee and a beneficiary, and there the staff said only that a "living trust" would not
ordinarily be required to file separately. Here, the question is whether securities in a
living trust should be reported as directly owned or indirectly owned, but I think the
staff's old letters might be instructive. If the insider can revoke the trust without the
spouse's consent, then I think the insider should be able to report the shares as directly
owned. If any portion of the securities could not be reaquried by the insider without the
spouse's consent, then I think those securities would be reportble as indirectly owned
through the trust. I base those conclusions primarily on the Sonnenschein letter (1992).
                                    *Alan Dye, Hogan & Hartson LLP    5/22/2008 10:58:01 AM*

**Reply**

**RE: Trust Stock Purchase**
Thanks, but, in this case, the insider would not be "reaquir[ing]" the securities because
the securites were purchased by the trust. The trust bought the securities with trust
assets. Also, please note that I have heard back from our indsider and he cannot revoke
the trust without his wife's consent.

Does the fact that the insider would not be "reaquir[ing]" the shares since they were
initially purchased by the trust change your answer?

Thanks again for your help.

                                                            *Gunner    5/22/2008 2:01:16 PM*

**Reply**

**RE: Trust Stock Purchase**
When the trust acquires the shares, the insider acquires indirect beneficial ownership. If
the insider then revokes the trust, he "reacquires" them by acquiring direct ownership. If
the insider can't revoke the trust without the consent of the spouse, the shares should
be reported as indirectly owned through the trust.
                                    *Alan Dye, Hogan & Hartson LLP    5/22/2008 2:23:28 PM*

**Reply**

---

TOPIC # 4161
1 reply

**Subscribe**

**Section 13 Amendment Requirements**                    Last Post: 5/22/2008 10:50:14 AM

A few questions on the requirement to amend section 13 reports when the number of
outstanding shares of an issuer decreases:

1. X filed a Schedule 13D disclosing the beneficial ownership of 6% of the outstanding
shares of Issuer A. Issuer A repurchases some of its shares, which decreases the total
number of outstanding shares and increases X's beneficial ownership from 6% to 7%.
I am trying to determine whether this would require X to file a 13D amendment. The
language of Rule 13d-2(a) provides for the requirement to amend a 13D when there is a
"material change" and further provides that an acquisition or disposition of 1% is deemed
material. In this case there was no acquisition or disposition.

2. Rule 13d-2(c) provides for an amendment requirement for institutional investors filing a
13G when its beneficial ownership exceeds 10% and when there is 5% increase or
decrease in beneficial ownership. Does this mean that there is no acquisition
requirement, but a change in the outstanding shares of the issuer could require an

institutional investor to file a 13G amendment if this would change its beneficial ownership to more than 10% or by 5%?

3. Rule 13d-2(d) provides that upon acquiring greater than 10% or by increasing or decreasing your beneficial ownership position by more than 5%, a passive investor should file a 13G amendment. Should we read this literally and require (i) an acquisition that puts you over 10% to trigger the first amendment obligation of the 13G, i.e. a mere decrease in the number of outstanding shares will not trigger this obligation even if the passive investor now beneficially owns more than 10% and (ii) any 5% change in beneficial ownership, even without acquisition by the passive investor, to trigger the second amendment obligation?

Reply                                                            GS    5/21/2008 3:24:25 PM

**RE: Section 13 Amendment Requirements**
Your questions underscore the need for the staff to provide some filing guidance, since the wording of the various sections of Rule 13d-2 suggests that in some cases an amendment is required only if an acauisition occurs, while in other cases merely crrossing the percentage threshold as a result of issuer repurchases triggers an amendment. The good news, I suppose, is that the staff also isn't suing people for failing to file 13D amendments, so the uncertainty has little consequence. In any case, here are my thoughts, after consulting with Joe Connolly, who interpreted the 13(d) rules for the Commission in the early 1980's.

1. I don't think an amendment would be required here, because the filer has not acquired any additional shares. Joe tells me that the staff says that, if the filer is an officer or director and therefore was in a position to influence the stock repurchase, the filer should file an amendment to the 13D.

2. Based on the wording of the rule, I think an amendment should be filed in this circumstance. That seems inconsistent with paragraphs (a) and (d) of the rule, and for that reason the staff might interpret its way to a different result, but the rule seems to require that conclusion.

3. I think your "literal" summary of the rule gets you to the correct conclusion.
                                                         Alan Dye    5/22/2008 10:50:14 AM

Reply

---

TOPIC # 4160
1 reply

Subscribe

**Merger Reporting**                              Last Post: 5/22/2008 6:16:39 AM

Company X plans to enter into a merger agreement with Company Y. The merger is structured as a cash tender offer followed by a "back-end" merger. In connection with entering into the merger agreement, Company Y has requested that Company X's Section 16 insiders enter into a Stockholder Support Agreement ("Support Agreement") with Company Y. Under the Support Agreement, the Section 16 insiders would agree to the following:

1. Each Section 16 insider would agree to tender their shares of Company X common stock to Company Y in the tender offer at the tender offer price;
2. Each Section 16 insider would agree to vote their shares of Company X common stock for the merger contemplated by the merger agreement; and
3. Each Section 16 insider would grant to Company Y an irrevocable option, exercisable at the tender offer price, in the event the Section 16 insider fails to tender his or her shares in the tender offer prior to the expiration or termination of the tender offer. Thus, the option is only exercisable following the expiration or termination of the tender offer and only if the Section 16 insider did not tender his or her shares in the tender offer.

I'm trying to sort out the Section 16 ramifications of the foregoing and have concluded the following:

1. The tender of shares to Company Y in the tender offer would be reportable on Form 4 and would a non-exempt transaction under Section 16(b).

2. Since the irrevocable option is conditioned upon failing to tender shares in the tender offer (and would not be exercisable until the expiration or termination of the tender offer), I am assuming that that the grant of the irrevocable option would reportable on Form 4 in Table II (as a call option per Model Form 145) within 2 business days of the expiration or termination of the tender offer. Or would the grant of the irrevocable option be reportable within 2 business days of entering into the Support Agreement regardless of whether subject to the above-specified conditions?

3. The exercise of the irrevocable option by Company Y would be exempt from 16(b) if at or in the money, but would be reportable on Form 4.

Please let me know your thoughts on the above. Thanks.

Reply                                                          *5/21/2008 2:56:34 PM*

**RE: Merger Reporting**
1. I agree with these conclusions. See Model Form 181.

2. I too would treat the option as not reportable unless and until the condition to its exercise is met. Generally, a material condition to exercise prevents an option from being a derivative security only where the occurrence of the condition is beyond the insider's control. Here, that might not be the case if the insider's failure to tender is the only condition to exercise, but I'm assuming the option will expire if the acquiror elects not to consummate the tender offer. (If that's not the case, you might consider the staff's position that some private arrangements (e.g., rights of first refusal and come-along rights) are not derivative securities, because they are short-term, non-marketable rights--see Hechinger, Inc., 1992.) Once the condition to exercise occurred, I would treat the short option position as "acquired" and report it on Form 4.

3. Agreed.

Reply                                    *Alan Dye    5/22/2008 6:16:39 AM*

---

**Shares purchased in joint name**                    Last Post: 5/21/2008 7:06:11 PM
In a community property state where community property is used to purchase stock, does it make a difference from a reporting perspective whether the stock is purcahsed in the insider's name or in the name of the insider and the spouse as joint holders? Thanks for your help.

Subscribe

Reply                                        *Gunner    5/21/2008 7:01:22 PM*

**RE: Shares purchased in joint name**
The instructions to the forms say that shares are deemed "directly owned" if held in the insider's name or held jointly with the insider's spouse. It makes no difference whether the insider resides in a community property state.

                                        *Alan Dye    5/21/2008 7:06:11 PM*
Reply

TOPIC # 4159
1 reply

[Subscribe]

### Matching

Last Post: 5/21/2008 12:41:34 PM

In March 2008, Insider purchases 100 shares of Issuer common stock in the open market at a purchase price of $5.00. In April 2008, Insider acquires 100 shares of Issuer common stock upon the exercise of an in-the-money stock option granted in accordance with 16b-3. In June 2008, Insider wishes to sell 100 shares of Issuer common stock (assume the sale price will be in excess of $5.00). How does Insider "trace" the shares being sold that it is clear Insider is selling the 100 shares received upon the exercise of the stock option vs. the shares acquired in the open market transaction for the purpose of avoiding Section 16(b) liability?

[Reply]                                                                      *5/21/2008 11:33:15 AM*

### RE: Matching

Unlike Rule 144, Section 16(b) does not contemplate tracing of stock certificates. Section 16(b) permits matching of any sale with any purchase, as long as the purchase and sale involve the same class of equity security. So, it wouldn't matter if Insider sold the option shares or the shares purchased in March. The sale would be matchable with the March purchase in either case.

[Reply]                                                     *Alan Dye    5/21/2008 12:41:34 PM*

---

TOPIC # 4158
1 reply

[Subscribe]

### Rule 144 and Warrants

Last Post: 5/21/2008 10:57:01 AM

We are seeking advice on a fairly straight-forward Rule 144 matter.

Holder purchased warrants fifteen months ago. Under the terms of the warrant, the holder may exchange one warrant and pay $3.00 to receive one share of the Company's common stock. The shares to be received are not registered shares, and the holder is not listed in any resale registration statement.

Quesetion: When holder exercises its warrants for shares, must it hold the unregistered shares for six months or can it tack the fifteen months that it held the warrants to meet the Rule 144 holding period?

Any responses welcome. Thank you in advance.

[Reply]                                              *Jeff, B&C (lawfirm)    5/21/2008 10:54:52 AM*

### RE: Rule 144 and Warrants

I don't think tacking would be appropriate under staff positions. The staff allows tacking where the exercise was "cashless," essentially involving an exchange of one security (the warrant) for another (the common stock). Where the warrant holder "purchases" the underlying stock by providing additiona consideration (cash), a new holding period starts.

[Reply]                                                     *Alan Dye    5/21/2008 10:57:01 AM*

---

TOPIC # 4143
7 replies

[Subscribe]

### 2 questions re. post-spin-off transactions

Last Post: 5/21/2008 10:54:47 AM

Public company A, recently spun-off an already public majority-owned subsidiary, public company B, on a pro rata basis. A's stock price dropped significantly in connection with the spin-off. This has now raised 2 questions:

1) Are we correct that transactions in the stock of B are not matchable against

transactions in the stock of A, since A and B are separate issuers? If it matters to the analysis, A and B were already separate issuers before the spin-off. B had been in existence for some time. B's common is also registered under Section 12, and it was already registered under Section 12 for some time prior to the spin-off.

2) What is the proper way to calculate profit realized from opposite-way transactions in A stock that took place before and after the spin-off? E.g., someone sold A stock before the spin-off and then bought more A stock after the spin-off. Is there any case law or other authority that supports making an adjustment to reflect the spin-off?

Thanks in advance for your reply.

| Reply | | anon, anon    5/14/2008 8:58:02 AM |

### RE: 2 questions re. post-spin-off transactions

1) I think it's clear that transactions in B stock post-spin-off are not matchable with transactions in A stock post-spin-off. I believe it should also be the case that transactions in B stock pre-spin-off should not be matchable with transactions in A stock pre- or post-spin-off. I think that conclusion is supported by the merger cases saying a purchase of target stock can't be matched post-merger with stock of the acquiror, and I covered this issue in the 2008 edition of the Treatise (and a recent issue of Updates). I don't know of any case law on point, however.

2) Yes, there is one case supporting that conclusion. See Falco v. Donner Foundation, Fed Sec. L. Rep. (CCH) para. 90,612 (SDNY 1953), rev'd on other grounds, 208 F.2d 600.

| Reply | | Alan Dye    5/14/2008 12:26:18 PM |

### RE: 2 questions re. post-spin-off transactions

Thank you very much for your helpful replies.

I have had a hard time so far finding any case law involving the matching of a transaction in parent stock pre-spin-off with a transaction in parent stock post-spin-off (which surprised me, because it seems like this must come up rather often...so please do let me know if you're aware of any). In the absense of any cases directly on point, after looking at the treatise and the case you cited and others referenced in the treatise (Blau v. Lamb, e.g.), it seems to me that the simplest and most logical way to analyze a spin-off is as an extraordinary dividend. I wonder if you agree with that?

Using the extraordinary dividend as our analytical framework, because our insiders were directors at all relevant times and it certainly was no ordinary dividend, nor did any of the other exceptions from the 2nd circuit strike me as generally applicable to a spin-off situation, it seems that the following ought to be the case:

1) where the director bought parent stock, then received stock in the spin-off, then sold parent stock within the period, the value of the spun-off stock should be added to the profit to be disgorged.

2) where the director sold, then received stock, then bought (yes, we actually have both of these scenarios it unfortunately appears), then we offset the profit with a credit equal to the value of the stock received in the spin-off.

Assuming you agree with that, then I wonder the best way to value the stock received in the spin-off? I propose that if a director actually sold the stock received in the spin-off, then value should be the actual price received in the sale of the spin-off stock,

regardless of when it was sold (i.e., even if it was sold after the short-swing period ended) -- although I realize that perhaps that might be subject to question, especially if it sold much much later at a much lower price than the current prevailing market price at the time of the spin-off. For each match, the highest price received for a share of such stock (which has not already been added to a match) would be added. Where a director never sold the spin-off stock or I suppose I should say has not yet sold the spin-off stock at the time of disgorgement (or in the case of a director who is receiving a credit, where a director never received stock in the spin-off), then the value would be based on the highest price in the market during the short-swing period.

Does this seem like a logical way to do this? Is there a better way to do it?

Thanks as always for your assistance.

*anon, anon    5/16/2008 12:58:25 PM*

[Reply]

### RE: 2 questions re. post-spin-off transactions
I agree completely with your statements in (1) and (2), although, as you note, there have been no cases testing these conclusions in the spin-off context. I think the value of the stock received as a dividend should be measured as of the date of the dividend. Any subsequent increase or decrease in price after that date would not affect the calculation. But, that conclusion, too, is untested in any case of which I'm aware.

*Alan Dye    5/16/2008 1:19:06 PM*

[Reply]

### RE: 2 questions re. post-spin-off transactions
I appreciate your quick reply. I wonder whether you would still use the price on the date of the dividend, even if the director sold the stock shortly thereafter?

*anon, anon    5/16/2008 1:41:07 PM*

[Reply]

### RE: 2 questions re. post-spin-off transactions
I suppose there's a reasonable basis for that approach--maybe the interpretive issue is "profit realized." If the insider sold the stock at a different price than its value on the dividend date, the argument would be that, despite its value on that date, the insider's profit was something else.

*Alan Dye    5/16/2008 2:01:33 PM*

[Reply]

### RE: 2 questions re. post-spin-off transactions
Thinking further about as of what date the spun-off stock properly ought to be valued has led me into a quagmire of analysis from which I am hoping you can extricate me.

By adding in an extraordinary dividend, are we in essence treating the dividend as a partial liquidation ala Bolton v. Gramlich (section 10.06 in the treatise)? The more I think about it, after reading Steel Partners v. Bell again, the more it begins to seem as though even an extraordinary dividend ought to be added in to a matchable purchase-followed-by-sale only if the purchase is considered to arise from the purchase *and sale*. And yet, the dividend is received regardless of whether the later sale takes place or not. Also, it struck me that this result [i.e., requiring disgorgement of the dividend] produces some inequity if an insider who bought and then received the dividend gets to keep the dividend so long as there is no subsequent, apparently unrelated, sale (within the period). But this led me to wonder -- maybe such an insider does NOT get to keep the dividend? Maybe an extraordinary dividend is [sometimes?] a sale?

So my follow-up questions now are:

1) is there perhaps a reasonable argument which I overlooked before that a director who bought, then received a dividend, and then sold, does NOT have to disgorge the dividend?

2) if the director who bought and sold does have to disgorge, then does that also imply that a director who merely bought and received the dividend but did not sell must also treat the dividend as a sale?

*anon, anon*    *5/21/2008 10:00:13 AM*

Reply

### RE: 2 questions re. post-spin-off transactions

I suppose it's not possible to know whether an extraordinary dividend will be treated as a partial sale of the stock or just part of realized profit if the stock is sold within six months of a purchase. In the absence of a planned liquidation of the issuer, I wouldn't report a dividend as a sale. That would minimize the likelihood of a plaintiff ever trying to make the case for a sale (and avoid having to try to figure out how to calculate the profit).

*Alan Dye*    *5/21/2008 10:54:47 AM*

Reply

---

TOPIC # 4157
3 replies

Subscribe

### Restricted Stock Units v. Deferred Stock Units
Last Post: 5/21/2008 8:57:51 AM

Is there a difference in how a director should report deferred stock units, as opposed to restricted stock units? The deferred stock units vest over three years with delivery of the underlying shares to occur within 90 days after the three year period. The deferred stock units are to be settled solely for common stock. The directors plan to report the acquisition on Tabel I as shares of common stock. Is this the correct way to report the acquisition of the DSUs? Thanks.

*Anonymous*    *5/21/2008 7:25:34 AM*

Reply

### RE: Restricted Stock Units v. Deferred Stock Units

Yes, that's the (or "a") correct way to report the acquisition of the DSUs, assuming they will be settled in stock and can't be settled in cash. From a reporting standpoint, the DSUs are essentially the same as RSUs.

*Alan Dye*    *5/21/2008 7:49:47 AM*

Reply

### RE: Restricted Stock Units v. Deferred Stock Units

Thanks. One follow up question - If a director also owns common stock indirectly through an entity, should the Form 4 reporting the DSU grant also include as a separate line item in Table I the shares indirectly held by the director? Is there a model Form that shows how to report both direct and indirect ownership in the same Form 4? Thanks in advance.

*Anonymous*    *5/21/2008 8:30:42 AM*

Reply

### RE: Restricted Stock Units v. Deferred Stock Units

Yes, the indirect holding should be reported on a separate line. Take a look at Model Forms 35 and 113 (Reporting Principle 18).

*Alan Dye*    *5/21/2008 8:57:51 AM*

Reply

---

TOPIC # 4155    **Equity Swap**    Last Post: 5/20/2008 1:42:25 PM

1 reply

Subscribe

We are trying to follow the table in Section IV.F of the Section 16 Deskbook in order to determine the Section 16 treatment of the exercise of a total return equity swap. The instrument is the reverse of the swap in Model Form 140. The swap is an obligation to buy, so the holder has a short put position. Under "Put Options" in the table on page 565, we think the settlement of the swap would be the "Exercise of short put option...." but we are not sure what you mean by "....by other party". In our case, while we are settling, it is not that the other party is electing to settle or forcing us to settle. Is this relevant, or would the Section 16 treatment be as you have listed in the table?

Reply                                    *NBS*    *5/20/2008 10:22:25 AM*

### RE: Equity Swap

Settlement should be reported as indicated in the table, and the Section 16 consequences should be the same. What we were trying to communicate in the tables is that short puts are options involving the insider's purchase of securities when the counterparty is ready to sell them. We were just trying to make the concept easy to understand. The table works well for a standard option, but not as well for a swap.

*Alan Dye*    *5/20/2008 1:42:25 PM*

Reply

---

TOPIC # 4154
1 reply

Subscribe

### 13d-7 question                                    Last Post: 5/20/2008 9:18:14 AM

I am trying to determine whether filing a Schedule 13D electronically through EDGAR also satisifes the Rule 13d-7 requirement that a copy of the 13D be sent to the NYSE, as it does in the case of Form 3's. Can anybody offer assistance? Many thanks.

Reply                                              *5/20/2008 8:29:43 AM*

### RE: 13d-7 question

Yes, electronic filing of the 13D through EDGAR satisfies the NYSE filing requirement. See the no-action letter issued to the NYSE in 1998.

*Alan Dye*    *5/20/2008 9:18:14 AM*

Reply

---

TOPIC # 4153
1 reply

Subscribe

### Short Swing Profit Issue and Form 4 Notation                Last Post: 5/20/2008 8:46:56 AM

Dear Ladies and Gentlemen:

I have an individual that is an affiliate of a publicly held company, XYZ. The material facts are as follows:

1. ABC of which the affiliate was a controlling manager granted an option to a non-affiliate in 2004 to acquire stock in XYZ that ABC owned.
2. In 2006, ABC was dissloved, the XYZ stock was distributed pro rata to its members and the member owned by affiliate assumed the option responsibility to the non-affiliate.
3. The affiliate made a market purchase of 2,000 shares of XYZ stock on April 15, 2008, at a price that is about double the 2004 option exercise price, for an aggregate of about $20,000; there are no other transactions within the six prior months.
4. The non-affiliate has indicated that he will exercise the option that was granted in 2004.

Is there a short swing issue here if the option is exercised? Is it moot because the option price is about half the purchase price on April 15, 2008? It seems to me that first there is no profit; and second, that the sales date should track to 2004. Can you direct me to an

area in the web site that will answer this question? How is this handled on the Form 4?

Your assistance would be appreciated.

Thank you.

Leonard

Reply

*Leonard W. Burningham, Burningham & Burningham*
*5/20/2008 8:19:42 AM*

### RE: Short Swing Profit Issue and Form 4 Notation
The affiliate's assumption of the warrant obligation in 2006 was an acquisition of a derivative security (assuming the exercise price of the warrant was fixed, as seems to have been the case). That event was the equivalent of the "sale" of the underlying stock. See Rule 16a-4 and Rule 16b-6. The warrant holder's exercise of the option would be an exempt sale by the affiliate, by virtue of Rule 16b-6(b). So, it wouldn't be matchable with the open market purchase. And you're right, even if it were, the sale price is lower than the purchase price, so there would be no recoverable profit. You might look at Model Forms 149 and 152.

Reply

*Alan Dye   5/20/2008 8:46:56 AM*

---

TOPIC # 4152
1 reply

Subscribe

### Form 144 filing requirement
Last Post: 5/20/2008 8:39:31 AM

I hope you can help me with this question. We have a Section 16 officer who plans to sell stock today. The stock is not restricted, but is considered "control stock". We have met all the requirements of Rule 144, and the officer is selling an amount above the $50,000 limit, which requires the filing of a Form 144. The glitch is that the officer is planning to sell via an on-line service provided by the company's transfer agent, and not through a broker. This is the first time we have run into this situation.
Can you advise:
1. Is the Form 144 filing still required?
2. How would we fill out item 3(b), since no broker is being used?
3. Is there any issue with the company filing this on his behalf, as long as he signs it?
4. We will file a paper copy with the SEC. Is there a requirement to file with the exchange as well (it's the NYSE).
5. Any other points for us to be aware of?
Thanks in advance for your help.

Reply

*5/20/2008 7:40:48 AM*

### RE: Form 144 filing requirement
If the officer is an affiliate and intends to rely on Rule 144 for an exemption from registration, a Form 144 will need to be filed, and the sale will have to be made through a "broker's transaction" (or directly with a market-maker or in a riskless principal transaction). Even though you use an online service, I think your TA will utilize the services of a broker to make the sale. You might check with the TA for the name of the broker. Assuming you are able to rely on Rule 144, the Form 144 can be filed by the company so long as signed by the affiliate. You should file 3 copies with the SEC and one with the NYSE.

Reply

*Alan Dye   5/20/2008 8:39:31 AM*

---

TOPIC # 4151
1 reply

**Pragmatic Approach in Share Withholding Warrant Exercise**

Last Post: 5/19/2008 2:48:18 PM

Subscribe

A 10% shareholder entered into a warrant in favor of a lender. The lender refinanced a defaulted loan to the issuer and required the warrant as part of the refinancing. The Warrant has a cashless exercise feature allowing the lender to pay the exercise price by having shares withheld. Withheld shares are valued at a 20-day average price immediately before exercise. The shareholder is not compensated by the issuer for the warrant. Over a year after the warrant is issued, the lender exercises the warrant and elects to have shares withheld to pay the exercise price. The exercise, presumably, would be reported by the 10% shareholder as shown in Model Form 146 as the exempt disposition of the warrant and the exempt disposition of the gross number of shares. Presumably also the shares withheld to pay the exercise price would be reported as a non-exempt purchase as described in reporting principles 3 and 8 of Form 109.

Because the warrant exercise and the use of share withholding to pay the exercise price are outside of the 10% shareholder's control (it is completely up to the lender), do you think the pragmatic approach to unorthodox transactions could apply to exempt the deemed purchase of the withheld shares? I note that footnote 74 in Section 10.01(4)(c) of the Second Edition of the Section 16 Treatise and Reporting Guide indicates that the authors are not aware of any instance in which a court has applied Section 16 to a transaction over which an insider had no control. Would an insider who granted the warrant report the deemed purchase of the withheld shares in a manner different from the person who exercised the warrant?

*Bob Krueger    5/19/2008 1:30:34 PM*

Reply

### RE: Pragmatic Approach in Share Withholding Warrant Exercise

I think the reporting of the purchase could be accomplished with a "J" transaction code or a "P" transaction code, but not "M" or "X." This seems like a good case for application of the unorthodox transaction exception, given that the insider has no control over whether the purchase will occur. The difficulty with the unorthodox transaction exception is that it's application is so fact-specific and depends on the temperament of the particular judge. Nevertheless, I think the Centillium decision in the SDNY (relating to forwards) provides a lot of support for the availabilty of the exception on these facts.

*Alan Dye    5/19/2008 2:48:18 PM*

Reply

---

Subscribe

control and has a 5% pecuniary interest in the partnership. The partnership subsequently makes a series of purchases each at prices less than the sale price. The aggregate purchases exceed 5% of the number of shares sold.

How should the lowest-in-highest-out method be used to match the purchases against the sale? Because the individual has only a 5% interest in each purchase transaction, should the number of shares available for matching in each transaction be limited to his pecuniary interest or should it be assumed that his 5% pecuniary interest is in the shares purchased at the lowest purchase price or prices in order to maximize the calculated profits?

*5/18/2008 6:44:01 PM*

Reply

### RE: Matching mutlpe sales to one purchase

I think you would treat 5% of the number of shares involved in each purchase as attributable to the insider and therefore matchable with an equal number of shares sold by the insider to the partnership. First, of course, you would match the lowest priced purchase with the sale, followed by matching the next lowest price purchase, and so on.

Alan Dye    5/19/2008 11:58:14 AM

`Reply`

---

Topic # 3749
3 replies

**Form 3 / 13D for Acquiror in Merger**          Last Post: 5/19/2008 11:48:39 AM

When a company acquires 100% of a target in a cash merger where the target's shareholders are cashed out and the target and its stock dissolve, is the acquiror nevertheless required to file a Form 3 or Schedule 13D? Even if the acquiror files a Form 15 to terminate registration of the target's shares, the acquired shares are technically still registered until that becomes effective, so Section 13 and 16 would seem to still apply.

`Subscribe`

`Reply`                                                                    11/8/2007 12:21:07 PM

**RE: Form 3 / 13D for Acquiror in Merger**

Trying to track down an answer to this question has been interesting. On your fact pattern, where the shares of the issuer are (I think) canceled at the effective time of the merger, I think you could take the position that the acquiror never beneficially owned the stock and therefore never became obligated to file a 13D or Form 3. If the shares weren't canceled immediately, though, or if the target were acquired as a wholly owned subsidiary, that position couldn't be sustained. While I know of no rule or published interpretation that would excuse the acquiror from filing in that context, the truth is that no one ever does, because filing would not serve the purposes of either regulatory scheme. The purpose of Section 13(d) is to alert the issuer and the investing public to a possible change in control of the issuer. That purpose can't be served where there is only one shareholder of the issuer, and that shareholder is the one that would file the 13D. The purpose of Section 16 is to alert the equity owners of the issuer to insider's assessment of the issuer's prospects and short-swing transactions that might result in a recoverable profit under Section 16(b). That purpose can't be served where the issuer has only one shareholder. I spoke with Joe Connolly, one of the partners at my firm and formerly Chief of the Office of Tender Offers in Corp Fin. He tells me that, when he was responsible for interpreting 13(d), the staff took the position that a 13D filer who disposed of all of his or her stock in a cash merger was not required to file a 13D to report the disposition, because the purposes of Section 13(d) would not be served. I suspect that the staff would take a similar position here, even though the rules technically require the filing of both a 13D and a Form 3.

Alan Dye    11/8/2007 6:34:35 PM

`Reply`

**RE: Form 3 / 13D for Acquiror in Merger**

Given the analysis in the answer above, would a 5% owner have to file an amendment to its 13D upon disposing of their stock to the Acquiror in the merger (before the Form 15 is effective)? Would 10% owners have to file a Form 4?

5/19/2008 9:54:29 AM

`Reply`

**RE: Form 3 / 13D for Acquiror in Merger**

I think the staff's position would be that a 13D/A would not be required. But, I think a Form 4 would be required, to assure that transactions potentially subject to Section 16 (b) are reported.

Alan Dye    5/19/2008 11:48:39 AM

`Reply`

---

Topic # 4145
7 replies

**Stock Exchange**          Last Post: 5/16/2008 10:54:36 AM

We have 2 classes of stock - 1) registered common stock and 2) unregistered limited vote stock (same rights as common but with less voting rights). Several of our officers and

Subscribe

directors own both common and limited vote stock. Would an officer's/director's acquisition for cash of additional limited vote stock from a non-affiliate be a non-exempt transaction? I'm assuming so. What about the situation where the company conducts an exchange offer (e.g., exchange of limited vote stock for cash or common stock). Would any part of the exchange be deemed an exempt transaction? We're trying to address any short-swing issues that any of our offices or directors may face with such an exchange. Thanks

Reply                                                        *5/15/2008 10:32:38 AM*

### RE: Stock Exchange

A private purchase of stock from anyone other than possibly the issuer would not be eligible for any exemption from Section 16(b) and therefore could be matched with sales of stock of the same class that occur within six months of the purchase. The issuer's redemption of stock for cash could be eligible for exemption from Section 16(b) under Rule 16b-3(e), if the approval conditions of the rule are satisfied.

                                        *Alan Dye    5/15/2008 11:55:20 AM*

Reply

### RE: Stock Exchange

Thanks. Thus, if our board approved in advance the disposition of the limited vote stock and simultaneous acquisition of the common stock through the exchange offer in accordance with Rule 16b-3(d)(1), both the acquisition and disposition would be deemed exempt and would not be matchable against any future transactions? Would both the acquisition and disposition need to be reported on a Form 4 (again, the limited vote stock is unregistered)? If so, is Model Form 180 the appropriate reference? Thanks

                                                        *5/15/2008 12:58:45 PM*

Reply

### RE: Stock Exchange

Yes, if the board resolutions are worded correctly, both the acquisition and the disposition should be exempt. In any case, both transactions would be reportable on Form 4 (using transaction codes A and D). Model Form 180 is the right Model Form to look at.

                                        *Alan Dye    5/15/2008 1:25:46 PM*

Reply

### RE: Stock Exchange

Great - one last question. Does your answer change if the exchange offer is not 1 for 1. In other words, if the exchange offer was set up such that for each share of limited vote (which i believe is a derivative security as it converts into common stock immediately upon sale) the insider receives two shares of common stock or one share of common stock plus cash. Thanks

                                                        *5/15/2008 2:05:46 PM*

Reply

### RE: Stock Exchange

That wouldn't change the answer. All that's important for purposes of Rule 16b-3(d) and (e) is that the approval requirements be satisfied.

                                        *Alan Dye    5/15/2008 2:07:42 PM*

Reply

### RE: Stock Exchange

Sorry - last question. In the situation where one of our insiders exchanges his own common stock for limited vote common stock held by a non-insider (assume 2 shares of common stock for 1 share of limited vote stock), would either the insider's disposition or

acquisition be deemed an exempt transaction? How would such transaction be reported? Thanks.

*5/16/2008 8:40:55 AM*

Reply

**RE: Stock Exchange**
I can't think of any basis for exempting either the disposition or the acquisition from Section 16.

*Alan Dye    5/16/2008 10:54:36 AM*

Reply

---

TOPIC # 4149
1 reply

**XBRL Compliance**
Will mandated XBRL compliance apply to Forms 3, 4 and 5?

Last Post: 5/16/2008 10:52:45 AM

Subscribe    Reply

*5/16/2008 7:58:42 AM*

**RE: XBRL Compliance**
Broc Romanek keeps up with the XBRL proposal. Here's what he has to say:

Based on comments made at the open Commission meeting, the SEC will propose that only the financials be "filed" with the SEC (I say "filed," because they may only require that they be "furnished" - the distinction is a liability one).

However, some comments were made indicating that the SEC will ask in the proposing release whether other numbers be tagged in XBRL in SEC filings, like the executive compensation tables. Thus, so long as the SEC asks the question in the proposing release, something like this could possibly be adopted.

*Alan Dye    5/16/2008 10:52:45 AM*

Reply

---

TOPIC # 4148
1 reply

**Prior Holdings Incorrect**
In auditing our filings, I found that a transaction attempting to move shares from direct to indirect was done incorrectly, somehow serving to accurately reflect the indirect holdings while duplicating the shares in the direct holdings. There was no additional transaction; it was just the totals that were wrong on the one form (it appears to be due to a transaction input to show the indirect that was never filed), as I've fixed the transaction for the filing due later tonight. Is it necessary to amend the prior form to show just the updated total, or is correctly reflecting the total on this new form and footnoting the variation acceptable?

Last Post: 5/16/2008 3:46:14 AM

Subscribe

*5/16/2008 12:18:01 AM*

Reply

**RE: Prior Holdings Incorrect**
I would just fix the total in the Form 4 you are filing and explain the error in a footnote. That makes clear that the prior report had an error, without the burden of an additional filing to say the same thing again.

*Alan Dye    5/16/2008 3:46:14 AM*

Reply

---

Page:   1 2 3 4 5 6 7 8 9 10 ...

info@section16.net

November 28, 2006

The Honorable Karon O. Bowdre
United States District Court of the
 Northern District of Alabama
Hugo L. Black United States Courthouse
1729 Fifth Ave. North, Room 519
Birmingham, AL 35203

RE:   In re HealthSouth Securities Litigation, No. CV-03-BE-1500-S (N.D. Ala.)

Dear Judge Bowdre:

        You have asked the Securities and Exchange Commission to address an issue relating to
Preliminary Note 3 to Rule 144A under the Securities Act of 1933. That Note provides that the
safe harbor from registration created by the Rule for sales to Qualified Institutional Buyers
(QIBs) is not available if a transaction or series of transactions, although in technical compliance
with the Rule, is part of a "plan or scheme to evade" the Act's registration requirements. The
Court's question is:

        Accepting the facts alleged by plaintiffs, whether any provision of the Securities
        Act, including Note 3, invalidates the Exxon Capital Exchange Structure utilized
        in the bond offerings at issue in this case so as to divest the investment banks of
        an exemption from the registration process.

In summary, the Commission responds as follows:

        (a) Note 3 does not invalidate the Rule 144A/Exxon Capital exchange structure
utilized in the bond offerings at issue. Plaintiffs' allegations concerning defendants'
motivations for relying on Rule 144A do not implicate Note 3 because the availability of
the safe harbor under Rule 144A does not turn on the security offeror's motive. Instead,
the safe harbor is unavailable under Note 3 if an offeror's technical compliance with Rule
144A is an attempt to evade registration of an offering to the public, for which
registration is otherwise required. For example, the safe harbor would not be available if
defendants had sold the bonds to QIBs for the purpose of having the QIBs make an
unregistered distribution of the securities to public investors. By contrast, the safe harbor
provided under Rule 144A is available where, as plaintiffs allege in this case, the
transaction substantively and procedurally complied with the Rule.

        (b) Assuming that, contrary to our view, the Court were to conclude that the safe
harbor would be lost under the circumstances alleged, that would not mean, as plaintiffs
argue, that the offerors of the securities in the unregistered Rule 144A offerings were
therefore liable under Sections 11 and 12(a)(2) for misrepresentations in the registration
statement and prospectus used in the subsequent registered exchange offer for
substantially identical securities.

This is not to say that plaintiffs are necessarily without a remedy under the securities laws. The banks would be liable if they committed fraud in violation of Rule 10b-5, and plaintiffs have pleaded a claim under that provision against them. While there are differences in procedure and proof in asserting claims under Rule 10b-5 as opposed to under Sections 11 and 12(a)(2), such differences should not be a basis for distorting the meaning and purpose of Note 3.

The balance of this letter explains the bases for our answers to the Court's question. [1] We first provide, as background, a description of relevant features of Rule 144A and Note 3, and of the Exxon Capital no-action position, before analyzing the application of the Note to the alleged facts in this case.

## BACKGROUND

A.    The Rule 144A Safe Harbor from Registration

Rule 144A creates a safe harbor from the registration and prospectus delivery requirements of Section 5 of the Securities Act for the resale of securities that meet the Rule's conditions. In a typical Rule 144A transaction, investment banks (referred to as initial purchasers) buy securities from an issuer in an exempt transaction, and then resell the securities in an unregistered transaction that relies on the Rule 144A safe harbor.

The safe harbor is available only on the condition that the securities are offered and sold exclusively to QIBs, which are, generally speaking, institutional investors that own and invest on a discretionary basis at least $100 million in securities. See Rule 144A(a) (definition of QIB), (d)(1) (conditions to be met to qualify for the exemption). The Rule is based on the Commission's determination that QIBs do not need the investor protections arising from the registration and prospectus delivery requirements of the Securities Act. See, e.g., SEC Rel. No. 33-6806, 1988 SEC LEXIS 2104, *51 (October 25, 1988) ("The key to the analysis of proposed Rule 144A is that certain institutions can fend for themselves and that, therefore, offers and sales to such institutions do not involve a public offering.").

The Rule provides that sales by any person (other than an issuer) that meet the Rule's

---

[1]    Plaintiffs also allege that the banks and their counsel participated throughout the registered exchange offers, including the preparation of the registration statements and prospectuses used to conduct the exchanges, and that as a result the banks should be considered "underwriters," potentially liable under Section 11, and "sellers," potentially liable under Section 12(a)(2), regardless of whether they prevail on their argument that Note 3 invalidates the Exxon Capital exchange structure. The Court did not ask the Commission's views on this theory, and in our view the factual allegations are too conclusory to permit the Commission to provide meaningful guidance. We therefore do not address this claim.

conditions qualify for certain statutory exemptions under Section 4 of the Act. [2]  Specifically, Section 4(1) exempts all transactions "by any person other than an issuer, underwriter, or dealer," and Section 4(3) exempts all "transactions by a dealer," subject to specified exceptions. [3]  The Rule states that (1) any person other than the issuer or a dealer "who offers or sells securities in compliance with" the conditions of the Rule "shall be deemed not to be engaged in a distribution of such securities and therefore not to be an underwriter of such securities within the meaning of sections 2(a)(11) and 4(1)" of the Act; and (2) a dealer who offers or sells securities in compliance with the requirements of the rule is deemed "not to be participating in a distribution" within the meaning of Section 4(3)(C), and not to be an "underwriter" within the meaning of Section 2(a)(11), and the securities "shall be deemed not to have been offered to the public within the meaning of section 4(3)(A) of the Act."

---

[2]  As a short-hand reference, the Commission, the parties, and the courts sometimes refer to the Rule as creating an exemption, or to transactions as being exempt under the Rule.  Strictly speaking, the exemptions are created by the Act, not by the Rule.  The Rule provides that transactions meeting its requirements qualify for certain statutory exemptions.

[3]  Section 2(a)(11) defines "underwriter" to mean

> any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking * * *.  As used in this [definition] the term "issuer" shall include, in addition to an issuer [as defined in Section 2(a)(4)] any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

"Dealer" means "any person who engages * * * in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person."  Section 2(a)(12).  Among dealer transactions that are not exempt are any transaction taking place within the first 40 days after the security is first "offered to the public" by the issuer or by or through an underwriter (Section 4(3)(A)), and any transaction as to securities constituting the whole or part of an unsold allotment to or subscription by a dealer "as a participant in the distribution of such securities by the issuer or by or through an underwriter" (Section 4(3)(C)).

B.  The Note 3 Qualification to the Safe Harbor

Like a number of other Commission rules, Rule 144A contains an anti-abuse provision. Note 3 states:

> In view of the objective of this section and the policies underlying the Act, this section is not available with respect to any transaction or series of transactions that, although in technical compliance with this section, is part of a plan or scheme to evade the registration provisions of the Act.  In such cases, registration under the Act is required.

C.  The <u>Exxon Capital</u> No-action Position

In the <u>Exxon Capital</u> no-action letter, an issuer requested the Commission staff's position on the following set of facts:  The issuer proposed to sell securities by means of a private placement.  The issuer wished to proceed with the private placement as soon as practical "[i]n view of current market conditions and other factors."  Furthermore, the issuer had been advised that it could achieve a lower cost of capital by broadening the market for the securities if the securities could be remarketed to the public subsequent to the private placement.  Therefore, the proposed private placement would be followed as soon as practical by a registered exchange offer in which the privately placed securities could be exchanged with the issuer for substantially identical securities.  The memorandum for the private placement would disclose the material elements of the contemplated exchange offer, though there would be no assurance that the exchange offer would take place.

The issuer sought confirmation from the staff that subsequent sales of the registered securities by exchange offerees would be viewed no differently from resales by non-affiliated purchasers after completion of any registered primary offering of securities, and, therefore, that resales of the securities by the exchange offerees could be effected without any further registration under the Securities Act or the delivery of a prospectus.  The staff replied that, based on the facts presented, and under the assumption that the exchange offerees were not affiliates of the issuer, it was of the view that the exchange offerees could resell the registered securities

> without compliance with the registration and prospectus delivery provisions of the Securities Act provided that such securities are acquired in the ordinary course of their business and such purchasers have no arrangement with any person to participate in the distribution of such securities.

In the intervening years, private placements followed by a registered exchange offer for substantially identical securities have become a common means of raising capital in those sectors of the securities markets where transactions are mostly among institutional investors, including, as in the case now under consideration, in the market for high yield bonds.  One variation on the original <u>Exxon Capital</u> fact pattern that has developed is that, rather than merely describing a

possible registered exchange offer, the purchasers are given a contractual right to have the issuer conduct such an offer. The sales contracts in this case provided such a right.

## ANALYSIS

The Commission does not write on a blank slate in this area. It earlier filed a letter amicus curiae in response to the district court's request in In re Safety-Kleen Bondholders Litigation, No. 3:00-1145-17 (D.S.C.). In that letter, the Commission urged rejection of arguments that would have imposed liability under Sections 11 and 12(a)(2) on the initial purchasers in a Rule 144A/Exxon Capital transaction. The court in Safety-Kleen agreed with the Commission's position.

Plaintiffs in this case attempt to distinguish Safety-Kleen, based principally on their allegations that not only did the banks intend there to be a subsequent registered exchange offering and act with knowledge that misstatements would be made in that offering, as was alleged in Safety-Kleen, but that the banks elected to structure the offer of the securities as a Rule 144A/Exxon Capital transaction for the specific purposes of avoiding Commission scrutiny, detection of the fraud, and liability under Sections 11 and 12(a)(2) for themselves. The key question for the Commission in responding to the Court's request is, therefore, whether this purported distinction is a valid basis on which to find liability here when liability was denied in Safety-Kleen.

In the discussion that follows, we explain why we believe that plaintiffs' proposed distinction of this case from Safety-Kleen is not a persuasive basis for finding liability, and why Note 3 does not deprive the banks of the ability to rely on Rule 144A for their sales to the QIBs. [4] We also discuss why, even if plaintiffs' proposed distinction were valid, that still would not make the banks liable for any misstatements or omissions in the registration statement or prospectus for the subsequent registered exchange offer.

A.    Overview – Plaintiffs' Note 3 theories are unprecedented and unsupported under the securities laws.

Though this case arises in the context of a Rule 144A/Exxon Capital transaction, plaintiffs' argument that an otherwise valid exemption should be denied whenever the offeror has committed fraud, or has chosen to make a private offering because it desired to avoid Section 11 or 12(a)(2) liability, or because of some other motive unrelated to the actual nature of the transaction, could be asserted in a wide range of circumstances. Yet plaintiffs have not identified any instance involving Rule 144A *or any other provision of the federal securities laws* in which a transaction that complied in substance with the requirements for an exemption was nonetheless

---

[4]    We note that the Supreme Court has held that a regulatory agency's interpretation in an amicus brief of its own regulations is controlling unless plainly erroneous or inconsistent with the regulation. See Auer v. Robbins, 519 U.S. 452, 461 (1997).

denied that exemption solely on the ground that the motives of the participants rendered the transaction part of a "scheme to evade" registration. Nor have they identified any instance in which the result of denying an exemption was to make the offerors for the non-exempt transaction liable for misstatements in the registration statement or prospectus used in a subsequent registered transaction. We believe that these unprecedented interpretations are unwarranted under the language and structure of the governing provisions.

    B.    This case raises two issues not addressed in the Commission's <u>Safety-Kleen</u> letter, in which the Commission urged that the mere fact that a Rule 144A offering was to be followed by a registered exchange offer did not mean that the Rule 144A transaction should be treated as a public offering, or that the investment banks that made the Rule 144A offering were liable for misstatements in the exchange offer registration statement, even if the banks knew of the misstatements.

Plaintiffs in <u>Safety-Kleen</u> alleged that the issuer had engaged in accounting fraud and that the initial purchasers knew or should have known of the fraud, yet included misstatements in the offering memorandum they used in a Rule 144A sale. Plaintiffs further alleged that the initial purchasers knew that the registration statement and prospectus that would be prepared by the issuer for the exchange offer would be based on the offering memorandum, and that these documents would therefore repeat the misrepresentations in that document. Based on these allegations, plaintiffs claimed that the initial purchasers should be liable under Section 11 as underwriters of the exchange offer, and under Section 12(a)(2) for misstatements in the offering memorandum. They also claimed as additional grounds for holding the initial purchasers liable for the registered exchange offer that the Rule 144A sale and the exchange offer should be "integrated," i.e., treated as a single transaction.

The Commission began its <u>Safety-Kleen</u> letter by making the point that simply because a Rule 144A sale is made with the expectation that it will be followed by a registered exchange offer provides no basis for holding the initial purchasers liable under Section 11 or 12(a)(2) for misstatements made in the Rule 144A sales. Section 11 creates a private right of action only for persons acquiring a security subject to a registration statement, and there is no registration statement in a Rule 144A offering. Section 12(a)(2) creates liability only for sales made by means of a "prospectus" (or related oral statement), which the Supreme Court defined in <u>Gustafson v. Alloyd, Co.</u>, 513 U.S. 561, 569 (1995), to mean a document "related to <u>public</u> offerings by an issuer or its controlling shareholders" (emphasis added), and, as we have seen, Rule 144A offerings are identified by the Commission as transactions not involving a public offering. For these reasons, the Commission concluded that the Supreme Court would hold that a Rule 144A offering memorandum is not a prospectus.

Plaintiffs in <u>Safety-Kleen</u>, like plaintiffs in this case, urged that the Rule 144A sale and the registered exchange offer should be "integrated," by which they meant that the two-step transaction should be considered one offer and sale of registered securities, so that the initial purchasers would be deemed to be the underwriters of the registered exchange offer and therefore

liable under Section 11 for misstatements in the registration statement. The Commission explained that "integration" has a specific meaning in the securities laws, and that it was part of the "analytical framework for determining whether multiple securities transactions should be considered part of the same offering" for registration purposes. SEC Rel. 33-7943, 2001 SEC LEXIS 166 at *9 (Jan. 26, 2001). This doctrine

> prevents an issuer from improperly avoiding registration by artificially dividing a single offering so that Securities Act exemptions appear to apply to the individual parts where none would be available for the whole. Improper reliance on an exemption can harm investors by depriving them of the benefits of full and fair disclosure or of the civil remedies that flow from registration for material misstatements and omissions of fact. [Id. at *10.]

The well-established result of finding that offerings should be integrated, the Commission explained, is "the loss of an exemption [from registration] for one or more of the offerings unless an exemption is available for the integrated offering." Id. at *10 n.18. The Safety-Kleen plaintiffs explicitly disclaimed any assertion that the Rule 144A offering should have been registered, however, so the Commission concluded that "the concept of integration for Section 5 purposes is not relevant to this case."

Putting aside the doctrine of Section 5 integration, the Commission also stated that it did "not perceive any basis under the allegations of the complaint on which the Rule 144A offering may be validly exempted from registration for Section 5 purposes, and yet somehow be deemed to be registered or part of a registered transaction for purposes of Section 11." Thus, "[a]bsent allegations of greater participation in the registered exchange offer than are contained in plaintiffs' complaint," the Commission did not believe "that the initial purchasers should be considered 'underwriters'" of the exchange offer "under Section 2(a)(11) and subject to liability under Section 11." See also In re Livent, 2001 U.S. Dist. LEXIS 8933 (S.D.N.Y. June 29, 2001) (reaching similar conclusion).

Finally, the Commission did not find that the allegations in the complaint "establish that the Rule 144A offering should be considered 'part of a plan or scheme to evade the registration provisions of the Act'" under Note 3. The mere fact that the exempt sale was followed by a registered exchange offer pursuant to a pattern common in the industry did not make the initial sale an attempt to evade registration.

The current case presents two issues that were not raised in Safety-Kleen: (A) Assuming that a transaction substantively meets the conditions of Rule 144A in that it is not a disguised means of making an unregistered public offering, is reliance on the Rule nonetheless a scheme to evade registration, so that the transaction should have been registered, where the initial purchasers not only knew that material misrepresentations were to be made in the offer and sale, but also specifically chose to rely on the Rule in order to avoid either Commission scrutiny, detection of the fraud, or liability under Sections 11 and 12(a)(2); and (B) If the exemption is

lost, should the two transactions then be "integrated," so that the initial purchasers are liable for misstatements in the registration statement and prospectus for the registered exchange offer?

C.  Plaintiffs' averments that the investment banks chose the Section 144A/Exxon Capital structure with knowledge of fraud in the sale of HealthSouth bonds, and for the purposes of avoiding Commission scrutiny, detection of the fraud, and Section 11 and 12(a)(2) liability, do not allege a "scheme to evade" registration within the meaning of Note 3.

Note 3 defeats reliance on Rule 144A when the substance of a transaction is contrary to the Rule even though the transaction is structured so as to comply with the Rule's technical requirements, such as when the transaction is a sham designed to create the illusion that it should be exempt.  The adopting release for Rule 144A gives one example of where this principle would apply, and cases brought under Regulation S, which has an anti-abuse provision like Note 3, provide additional guidance by analogy.

The adopting release example concerns the Rule's restriction on the fungibility of the offered securities with securities that are already trading:  the Rule provides that in order to qualify for the safe harbor, the securities offered or sold may not have been listed on a national exchange or quoted on an automated quotation system when they were issued.  Rule 144A(d)(3)(i).  As an illustration of Note 3's application, the adopting release explained that "where an issuer resorted to use of convertible securities or warrants for the purpose of evading the restriction on fungibility, the Rule would not be available."  Adopting Release, No. 33-6862, 1990 SEC LEXIS 739, at * 16 (Apr. 23, 1990).

Regulation S under the Securities Act creates a safe harbor from registration for offers and sales of securities outside the United States.  Preliminary Note 2 to Regulation S is identical to Note 3 to Rule 144A.  The Commission and the courts have consistently held that Regulation S is not available when securities that are purportedly sold overseas are actually placed offshore temporarily as part of a sham transaction to evade the Securities Act's registration requirements.  See, e.g., Geiger v. SEC, 363 F.3d 481, 488 (D.C. Cir. 2004) (upholding Commission ruling that Regulation S "does not apply to transactions that, though in technical compliance, are designed to evade the registration requirement"); In re Robert Weeks, SEC Rel. No. 33-8313, 2003 SEC Lexis 2572, *42-*44 (Oct. 23, 2003) ("schemes involving parking securities with offshore affiliates of the issuer do not qualify for the Regulation S safe harbor since they are nothing more than sham offshore transactions structured to evade the Securities Act registration requirements"); SEC v. Ari Parnes, Adar Equities, LLC, 2001 U.S. Dist. Lexis 21722 (S.D.N.Y. Dec. 21, 2001) (upholding sufficiency of complaint alleging scheme designed to evade registration requirements by nominally placing securities offshore with entities cooperating with defendants).

These examples demonstrate that the Note applies when the actual substance of the transaction is such that the exemption should not be available, regardless of technical

-8-

compliance. Regulation S relies on the fact that securities are offered and sold overseas as a basis for not requiring registration, and the Regulation S safe harbor is defeated when the securities are not actually placed overseas, but are merely parked there in a sham transaction. Similarly, Rule 144A depends upon the fact that when the requirements of the rule are complied with, the securities will be offered and sold only to entities that do not need the protections that the registration and prospectus delivery requirements provide to public investors. Therefore, Note 3 is implicated when a transaction is designed to place securities in the hands of the public, even though it gives the appearance of being a sale to sophisticated investors, not involving a public offering. For example, the safe harbor would not be available if the initial purchasers resold to QIBs for the purpose of having the QIBs make an unregistered distribution of the securities to public investors.

Plaintiffs do not dispute that the transactions at issue here substantively qualified for the exemption. There is no allegation, for example, that the QIBs were intended to be mere conduits for unregistered sales to the public. Nevertheless, plaintiffs urge that the exemption should be lost because the banks knew of the misstatements that were to be made to investors, and they relied on Rule 144A, not for legitimate business reasons, but to avoid Commission scrutiny and detection of the fraud, and to shield themselves from liability under Sections 11 and 12(a)(2).

We note in response that there is nothing inherently nefarious about seeking to avoid Commission review or the possibility of Section 11 or 12(a)(2) liability. An issuer or an investment bank is free to choose whether to make a private or public offering based on the actual nature of the transaction. As mentioned above, there is no precedent for making the exemption question turn solely on offeror motives that are independent of the substance of the transaction. That is not what the Commission has understood the Note to mean, and we believe it would be disruptive of the markets to adopt that position, particularly where the contours of liability under plaintiffs' proposed theory are undefined by current law or by any clearly stated limiting principles.

Not only would the banks not reasonably have anticipated being held liable under plaintiffs' theories; we also have not seen evidence that those theories have been relied upon by the purchasers of the securities. Though we have received several letters from institutional investors urging that Securities Act liability should be available when the initial purchasers knowingly orchestrate a fraudulent scheme, or stating that they rely on the private remedies under the Securities Act in both public and private offerings, or urging that Rule 144A/Exxon Capital transactions are in truth public offerings, none of these institutions claimed that it has ever actually relied on the viability of theories like those advanced by plaintiffs here in deciding whether to invest.

The basis for the Rule 144A exemption is that the purchasers are sophisticated entities with substantial resources who should be able to ascertain what their rights are under various forms of securities offerings. Furthermore, the Securities Act provides investors, and sophisticated investors in particular, with the ultimate choice here. If they want to be assured of

being able to invoke remedies available under Sections 11 and 12(a)(2), they should invest only in registered offerings.

> D.     Even if plaintiffs adequately alleged a "scheme to evade" registration, that would not justify holding the banks liable for misstatements in the registration statement and prospectus for the registered exchange offer.

A finding that the transactions did not meet the requirements of Rule 144A is only the first step in plaintiffs' theory of defendants' liability for misrepresentations in the second step of the transaction. They must also find a way to tie the banks to the registered exchange offer, even though the banks were not identified as underwriters in the registration statement and they did not make any sales by means of the exchange offer prospectus. One of the ways plaintiffs seek to do this is by what they call "integrating" the Rule 144A sales with the exchange offer. By "integration," they mean that the Rule 144A sale and the registered exchange offer would be treated as one transaction, and the banks therefore held liable under Sections 11 and Section 12(a)(2).

As noted in the <u>Safety-Kleen</u> letter, integration is understood in the securities laws to mean the doctrine under which transactions that are claimed to be two or more separate transactions are deemed to be the same transaction for purposes of determining whether a registration exemption is available. [5] For example, an issuer might make an offering that is purportedly exempt under the intrastate offering exemption (Section 3(a) (11)) and what purports to be a separate offering that is registered. If it is determined that the supposedly independent transactions should be integrated, that would mean that the intrastate offering should have been registered, and that the offer and sale of those securities would be a violation of Section 5, remediable in a private action under Section 12(a)(1).

Plaintiffs propose to apply "integration" in an entirely novel manner which stands the concept on its head – rather than being a *means* of testing *whether* a transaction qualifies for an exemption, plaintiffs would make integration a *consequence* of the finding that a transaction was *not* exempt. They would then hold the offeror in the unregistered transaction not only liable for selling unregistered securities, but also liable for misrepresentations in the registration statement and prospectus used in the registered transaction with which the unregistered transaction is integrated, even though the offeror was not otherwise an underwriter of the registered transaction, and did not use the prospectus to sell securities.

---

[5]     The Commission has looked to five factors in determining whether transactions should be integrated, and plaintiffs rely on these same factors to support integration here: (1) are the offerings part of a single plan of financing, (2) do the offerings involve issuance of the same class of securities, (3) are the offerings made at or about the same time, (4) are the same types of consideration involved, and (5) are the offerings made for the same general purpose.

We do not see any basis for holding that the banks are liable for misrepresentations in the registration statement and prospectus for the registered exchange offer solely because they did not have a valid exemption for the unregistered sale. Certainly the integration factors were not developed for the purpose of determining whether a party to one transaction should be held liable for misrepresentations made in a second transaction, and they are ill-suited for that purpose. For instance, the keystone to plaintiffs' argument is that the banks were involved in a fraudulent scheme, yet involvement in fraud is not one of the factors they rely on as a basis for "integration." Every court that has been presented with a similar "integration" theory has rejected it. See, e.g., American High-Income Trust v. AlliedSignal, 329 F. Supp.2d 534, 541-44 (S.D.N.Y. 2004); In re Safety-Kleen Corp. Bondholders Litig., 2002 U.S. Dist. LEXIS 26735, at *2-4 (D.S.C. Mar. 27, 2002).

It seems to us that use of the term "integration" here merely seeks to put a recognized technical label on the conclusions plaintiffs ask the Court to reach, namely that a two-step Rule 144A/Exxon Capital transaction is in truth a single registered offering, that the banks are functionally indistinguishable from underwriters of that offering, and that the exchange offer with the issuer is a formality that should not cut off the banks' underwriter liability. This position is the one that the Commission and the district court rejected in Safety-Kleen. The Commission, and securities market participants, recognize the two steps to be separate transactions. Indeed, the QIBs who bought from the banks in this case presumably relied on that understanding lest they face the possibility that they would themselves be deemed underwriters of the single, "integrated" transaction, with attendant liability. For the reasons discussed above, that settled understanding should not be overturned based on allegations that the banks had motives for making an unregistered offering that are divorced from the actual nature of the transaction.

## CONCLUSION

For the foregoing reasons, the Commission urges the Court to hold that (1) the Rule 144A safe harbor should not be denied on the Note 3 grounds raised by plaintiffs, and (2) even if the safe harbor were not available, that would not mean that the banks should be held liable for misrepresentations in the registration statement and prospectus used in the subsequent registered exchange offer.

Respectfully submitted,

Jacob H. Stillman
Solicitor
202-551-5130

cc: Robin H. Jones, Esq.
    David J. Guin, Esq.

-11-

```
<DOCUMENT>
<TYPE>13F-HR
<SEQUENCE>1
<FILENAME>form13fhr.txt
<DESCRIPTION>THE CHILDREN'S INVESTMENT FUND MANAGEMENT
<TEXT>
```

                         UNITED STATES
               SECURITIES AND EXCHANGE COMMISSION
                    Washington, D.C.  20549


                           Form 13F

                     Form 13F COVER PAGE

Report for the Calendar Year or Quarter Ended:  March 31, 2007
                                                ------------------------

Check here if Amendment [    ]; Amendment Number:
                                                 -----
    This Amendment (Check only one.):  [   ] is a restatement.
                                       [   ] adds new holdings entries.

Institutional Investment Manager Filing this Report:

Name:     The Children's Investment Fund Management (UK) LLP
          ---------------------------------------------------
Address:  7 Clifford Street
          ---------------------------------------------------
          London W1S 2WE
          ---------------------------------------------------
             England
          ---------------------------------------------------

Form 13F File Number:       028-11900
                            ------------------

The institutional investment manager filing this report and the person by whom
it is signed hereby represent that the person signing the report is authorized
to submit it, that all information contained herein is true, correct and
complete, and that it is understood that all required items, statements,
schedules, lists, and tables, are considered integral parts of this form.

Person Signing this Report on Behalf of Reporting Manager:

Name:     Joe O'Flynn
          ---------------------------------------------------
Title:    Chief Financial Officer
          ---------------------------------------------------
Phone:    +44 207 440 2397
          ---------------------------------------------------

Signature, Place, and Date of Signing:

      /s/ Joe O'Flynn              London, England            5/15/07
      ------------------------     ----------------------------   ----------

```
<PAGE>
```

Report Type (Check only one.):

[ X ]    13F HOLDINGS REPORT. (Check here if all holdings of this reporting
         manager are reported in this report.)

[   ]    13F NOTICE. (Check here if no holdings reported are in this report,
         and all holdings are reported by other reporting manager(s).)

[   ]    13F COMBINATION REPORT. (Check here if a portion of the holdings for
         this reporting manager are reported in this report and a portion are
         reported by other reporting manager(s).)

<PAGE>


                         FORM 13F SUMMARY PAGE


Report Summary:


Number of Other Included Managers:              0
                                          -------------

Form 13F Information Table Entry Total:          1
                                          -------------

Form 13F Information Table Value Total:      399,738
                                          -------------
                                          (thousands)


List of Other Included Managers:


Provide a numbered list of the name(s) and Form 13F file number(s) of all
institutional investment managers with respect to which this report is filed,
other than the manager filing this report.


<PAGE>


<TABLE>

<CAPTION>
                         Form 13F INFORMATION TABLE


          COLUMN 1           COLUMN 2         COLUMN 3     COLUMN 4     COLUMN 5         COLUMN
       -------------------   ---------------  -----------  ---------   ------------------  -------
<c>                          <c>              <c>          <c>         <c>                 <c>

| NAME OF ISSUER | TITLE OF CLASS | CUSIP | VALUE (x$1000) | SHRS OR PRN AMT | SH/ PRN | PUT/ CALL | INVEST DISCRE |
|---|---|---|---|---|---|---|---|
| CEMEX SAB DE CV | SPON ADR 5 ORD | 151290889 | 399,738 | 12,205,740 | SH | | SOLE |

The following Form 13F Information Table updates the foregoing information for the q
acquired and disposed of after March 31, 2007 and reports such information as of May

| CEMEX SAB DE CV | SPON ADR 5 ORD | 151290889 | 224,807 | 6,606,133 | SH | | SOLE |
| CSX CORP | COM | 126408103 | 798,907 | 17,796,998 | SH | | SOLE |
| NORFOLK SOUTHERN CORP | COM | 655844108 | 236,980 | 4,315,000 | SH | | SOLE |
| UNION PAC CORP | COM | 907818108 | 251,257 | 2,140,000 | SH | | SOLE |

</TABLE>


</TEXT>
</DOCUMENT>

FOCUS - 2 of 2 DOCUMENTS

Copyright 2007 Factiva ®, from Dow Jones
All Rights Reserved

## Dow Jones Factiva

(c) 2007 Dow Jones & Company, Inc.

### Dow Jones Newswires
Dow Jones News Service

April 18, 2007 Wednesday 4:56 PM GMT

**LENGTH:** 543 words

**HEADLINE:** 2nd UPDATE:Hedge Fund Files To Acquire Over $500M In CSX Stk

**BODY:**

(Adds comments from CSX CEO, adds background on Children's Investment, notes that it declined to comment and updates share price.)

By Bhattiprolu Murti and Desiree J. Hanford
Of DOW JONES NEWSWIRES

The Children's Investment Fund Management (U.K.) LLP plans to acquire more than $500 million of  CSX Corp. (CSX) stock, the railroad said Wednesday.

In its quarterly report filed with the Securities and Exchange Commission, the railroad said the fund currently holds "a significant economic position" through common-stock ownership and derivative contracts tied to the value of CSX stock.

Children's Investment Fund, a London hedge fund known as TCI, declined to comment. The hedge fund is best known for its role in ousting Deutsche Boerse Chief Executive Werner Seifert in May 2005 and more recently for calling for a sale or break-up of Dutch bank  ABN Amro Holding NV (ABN), in which it holds a stake of about 2%.

CSX said the fund made a filing under the Hart-Scott-Rodino Antitrust Improvements Act, a U.S. law that requires prospective buyers to get regulatory clearance of antitrust concerns under some circumstances.

CSX shares recently traded at $45.05, up $1.72, or 4%, on volume of 18.1 million shares, more than twice the daily average. Earlier Wednesday, the stock set a 52-week intraday high of $46.23. The previous 52-week high had been $44, set on Thursday. The shares' 52-week low of $28.60 was set in August.

The Jacksonville, Fla., company's disclosure comes as the railroad sector has drawn attention since billionaire investor Warren Buffett recently divulged that his  Berkshire Hathaway Inc. (BRKA, BRKB) owns a 10.9% stake in  Burlington Northern Santa Fe Corp. (BNI), and possibly two other U.S. railroads.

2nd UPDATE:Hedge Fund Files To Acquire Over $500M In CSX Stk Dow Jones News
Service April 18, 2007 Wednesday 4:56 PM GMT

Following Berkshire Hathaway's disclosure of its stake in Burlington North-
ern, stock prices of railroads CSX, Union Pacific (UNP) and Canadian Pacific
Railway (CP) reached 52-week highs Thursday.

CSX views the Children's Investment Fund Management's filing as another sign
of interest in the railroad industry, CSX Chairman, President and Chief Execu-
tive Michael Ward told Dow Jones Newswires Wednesday. CSX has had discussions
with the company, much like it has discussions with any shareholder who wants
to have a dialogue, he said.

As for Children's Investment Fund's intentions, Ward said it appears to have
a strong interest in the rail industry and CSX in particular.

"What they want is what other investors want, a significant value creation in
terms of the stock price," he said. "We've doubled our value in the last few
years."

Separately, CSX said in its quarterly report that it repurchased 3.5 million
shares in the first quarter of 2007 under its $2 billion stock-buyback program
announced in February.

CSX said it plans to complete at least $1 billion of the repurchase program
by the end of this year and the remainder during 2008. On a cumulative basis,
during the past four quarters, CSX has bought back 19.4 million shares under
various repurchase programs.

(Margot Patrick contributed to this story.)

- By Bhattiprolu Murti, Dow Jones Newswires; 202-862-1357

- and Desiree J. Hanford, Dow Jones Newswires; 312-750-4135; de-
siree.hanford@dowjones.com [ 04-18-07 1256ET ]

**NOTES:**
PUBLISHER: Dow Jones & Company, Inc.

**LOAD-DATE:** April 19, 2007



**U.S. Securities and Exchange Commission**

## Item 402 of Regulation S-K — Executive Compensation

**Last Update: August 8, 2007**

The bracketed date following each interpretation is the latest date of publication or revision.

**Note:** For ease of discussion, we refer to the disclosure requirements and related rules adopted in the Executive Compensation rulemaking, including the August 2006 Executive Compensation and Related Person Disclosure rulemaking (Securities Act Release No. 8732A) and the December 2006 Executive Compensation amendments (Securities Act Release No. 8765), as the "new rules" and we refer to the disclosure requirements and related rules that were changed in the Executive Compensation rulemaking as the "old rules."

### QUESTIONS AND ANSWERS OF GENERAL APPLICABILITY

### Section 1. Item 402 — General Guidance

Question 1.01

**Question:** What was the effective date of the interim final rules adopted in Release No. 33-8765, and what are the relevant compliance dates?

**Answer:** The interim final rules, which amended the Summary Compensation Table, Grants of Plan-Based Awards Table and Director Compensation Table requirements in Item 402 of Regulation S-K, were effective on December 29, 2006. Compliance with these amendments is required for proxy statements, information statements and registration statements filed on or after December 15, 2006, that are required to include Item 402 disclosure for fiscal years ending on or after December 15, 2006, and for Forms 10-K and 10-KSB for fiscal years ending on or after December 15, 2006. [January 24, 2007]

Question 1.02

**Question:** A company with a calendar year end plans to file a Form S-3 after December 15, 2006, but before it files its 2006 Form 10-K. Can the company incorporate by reference the Form 10-K for the fiscal year ended December 31, 2005 with disclosure under the old rules?

**Answer:** Yes. The company would not be required to incorporate by reference the disclosure under the new rules until it is required to include that information in the Form 10-K for the fiscal year ended December 31, 2006. [January 24, 2007]

Question 1.03

**Question:** When a company that is in the process of restating its financial statements has not filed its Form 10-K for the fiscal year ended December 31, 2005, must the company comply with the new rules when it ultimately files the Form 10-K for the fiscal year ended December 31, 2005?

**Answer:** The company is not required to comply with the new rules in the Form 10-K for the fiscal year ended December 31, 2005. [January 24, 2007]

Question 1.04

**Question:** If a company files a preliminary proxy statement under Exchange Act Rule 14a-6 which omits the executive and director compensation disclosure required by Item 402 of Regulation S-K, would the staff request a revised preliminary proxy statement and deem that the 10-calendar day waiting period specified in Rule 14a-6 does not begin to run until the required information is filed?

**Answer:** Yes. However, given that the executive and director compensation rules were substantially revised in 2006, in a situation where a company that is complying with the new rules for the first time files a preliminary proxy statement excluding the required executive and director compensation disclosure, the staff will not request a revised preliminary proxy statement nor deem the 10-calendar day waiting period specified in Rule 14a-6 to be tolled, so long as: (1) the omitted executive and director compensation disclosure is included in the definitive proxy statement; (2) the omitted disclosure does not relate to the matter or matters that caused the company to have to file preliminary proxy materials; and (3) the omitted disclosure is not otherwise made available to the public prior to the filing of the definitive proxy statement. [February 12, 2007]

**Section 2. Item 402(a) — General**

None

**Section 3. Item 402(b) — Compensation Discussion and Analysis**

Question 3.01

**Question:** Is the guidance regarding Compensation Discussion and Analysis disclosure concerning option grants that is provided in Section II.A.2. of Securities Act Release No. 8732A applicable to other forms of equity compensation?

**Answer:** The same disclosure provisions governing required disclosure about option grants also govern disclosure about restricted stock and other non-option equity awards. This includes the example of potential material information identified in Item 402(b)(2)(iv) of Regulation S-K, which indicates that it may be appropriate to discuss how the determination is made as to when awards are granted, including awards of equity-based compensation such as options. [January 24, 2007]

Question 3.02

**Question:** In presenting Compensation Discussion and Analysis disclosure about prior option grant programs, plans or practices, are companies required to provide disclosures about programs, plans or practices that occurred outside the scope of the information contained in the tables and otherwise disclosed pursuant to Item 402 (including periods before and after the information contained in the tables and otherwise disclosed pursuant to Item 402)?

**Answer:** Yes, in certain cases, depending on a company's particular circumstances, disclosure may be required as contemplated by Instruction 2 to Item 402(b) of Regulation S-K. [January 24, 2007]

Question 3.03

**Question:** Are companies required to include disclosure about programs, plans or practices relating to option grants in the Compensation Discussion and Analysis disclosure for their first fiscal year ending on or after December 15, 2006, or is this disclosure only required for future fiscal periods?

**Answer:** Companies are required to include disclosure about programs, plans or practices relating to option grants in the Compensation Discussion and Analysis disclosure for fiscal years ending on or after December 15, 2006, as well as any other periods where necessary as contemplated by Instruction 2 to Item 402(b) of Regulation S-K. [January 24, 2007]

Question 3.04

**Question:** How does a company determine if it may omit disclosure of performance target levels or other factors or criteria under Instruction 4 to Item 402(b)?

**Answer:** The new rules clarify that a company should use the same standard for evaluating whether target levels (and other factors or criteria) may be omitted as it would use when making a confidential treatment request under Securities Act Rule 406 or Exchange Act Rule 24b-2; however, no confidential treatment request is required to be submitted in connection with the omission of a performance target level or other factors or criteria. The company must make its determination based on the established standards for what constitutes confidential commercial or financial information, the disclosure of which would cause competitive harm. These standards have largely been addressed in case law, including *National Parks and Conservation Association v. Morton*, 498 F.2d 765 (D.C. Cir. 1974); *National Parks and Conservation Association v. Kleppe*, 547 F.2d 673 (D.C. Cir. 1976); and *Critical Mass Energy Project v. NRC*, 931 F.2d 939 (D.C. Cir. 1991), *vacated & reh'g en banc granted*, 942 F.2d 799 (D.C. Cir. 1991), *grant of summary judgment to agency aff'd en banc*, 975 F.2d 871 (D.C. Cir. 1992). To the extent that a performance target level or other factor or criteria otherwise has been disclosed publicly, a company cannot rely on the instruction to withhold the information. Because Compensation Discussion and Analysis will be subject to staff review, a company may be required to demonstrate that withholding target

information meets the confidential treatment standard, and will be required to disclose the information if that standard is not met. A company that relies on the instruction to withhold information must discuss how difficult it will be for the executive or how likely it will be for the company to achieve the undisclosed target level, factor or criteria, which was not required prior to the new rules. [January 24, 2007]

## Section 4. Item 402(c) — Summary Compensation Table

Question 4.01

**Question:** If a person that was not a named executive officer in fiscal years 1 and 2 became a named executive officer in fiscal year 3, must compensation information be disclosed in the Summary Compensation Table for that person for all three fiscal years?

**Answer:** No, the compensation information only for fiscal year 3 need be provided in the Summary Compensation Table. [January 24, 2007]

Question 4.02

**Question:** Should a discretionary cash bonus that was not based on any performance criteria be reported in the Bonus column (column (d)) of the Summary Compensation Table pursuant to Item 402(c)(2)(iv) or in the Non-equity Incentive Plan Compensation column (column (g)) pursuant to Item 402(c)(2)(vii)?

**Answer:** The bonus should be reported in the Bonus column (column (d)). In order to be reported in the Non-equity Incentive Plan Compensation column (column (g)) pursuant to Item 402(c)(2)(vii), the bonus would have to be pursuant to a plan providing for compensation intended to serve as incentive for performance to occur over a specified period that does not fall within the scope of Financial Accounting Standards Board Statement of Financial Accounting Standards No. 123 (revised 2004), *Share-Based Payment* ("FAS 123R"). The outcome with respect to the relevant performance target must be substantially uncertain at the time the performance target is established and the target is communicated to the executives. The length of the performance period is not relevant to this analysis, so that a plan serving as an incentive for a period less than a year would be considered an incentive plan under Item 402(a)(6)(iii). Further, amounts earned under a plan that meets the definition of a non-equity incentive plan, but that permits the exercise of negative discretion in determining the amounts of bonuses, generally would still be reportable in the Non-equity Incentive Plan Compensation column (column (g)). The basis for the use of various targets and negative discretion may be material information to be disclosed in the Compensation Discussion and Analysis. If, in the exercise of discretion, an amount is paid over and above the amounts earned by meeting the performance measure in the non-equity incentive plan, that amount should be reported in the Bonus column (column (d)). [January 24, 2007]

Question 4.03

**Question:** Instruction 2 to Item 402(c)(2)(iii) and (iv) provides that

companies are to include in the Salary column (column (c)) or the Bonus column (column (d) any amount of salary or bonus forgone at the election of a named executive officer under which stock, equity-based, or other forms of non-cash compensation have been received instead by the named executive officer. In a situation where the value of the stock, equity-based or other form of non-cash compensation is the same as the amount of salary or bonus foregone at the election of the named executive officer, does this mean the amounts are only reported in the Salary or Bonus column and not in any other column of the Summary Compensation Table?

**Answer:** Yes, under Instruction 2 to Item 402(c)(2)(iii) and (iv) the amounts should be disclosed in the Salary or Bonus column, as applicable. The result would be different if the amount of salary or bonus foregone at the election of the named executive officer was less than the value of the equity-based compensation received instead of the salary or bonus, or if the agreement pursuant to which the named executive officer had the option to elect settlement in stock or equity-based compensation was within the scope of FAS123R (*e.g.*, the right to stock settlement is embedded in the terms of the award). In the former case, the incremental value of an equity award would be reported in the Stock Awards or Option Awards columns, and in the latter case the award would be reported in the Stock Awards or Option Awards columns. In both of these special cases, the amounts reported in the Stock Awards and Option Awards columns would be the dollar amounts recognized for financial statement reporting purposes with respect to the applicable fiscal year, and footnote disclosure should be provided regarding the circumstances of the awards. Appropriate disclosure about equity-based compensation received instead of salary or bonus must be provided in the Grants of Plan-Based Awards Table, the Outstanding Equity Awards at Fiscal Year End Table and the Option Exercises and Stock Vested Table. [August 8, 2007]

Question 4.04

**Question:** The Instruction to Item 402(c)(2)(v) and (vi) provides that a company disclose the assumptions made in the valuation for awards reported in the Option Awards column (column (e)) and the Stock Awards column (column (f)) by reference to a discussion of those assumptions in the registrant's financial statements, footnotes to the financial statements, or discussion in the Management's Discussion and Analysis. Is the disclosure of valuation assumptions limited to awards made in the covered fiscal year or does it include any award reported in column (e) or (f) even if granted in an earlier fiscal year?

**Answer:** The disclosure of valuation assumptions should relate to any award reported in the Option Awards column (column (e)) or the Stock Award column (column (f)). [January 24, 2007]

Question 4.05

**Question:** If an equity award is made after the end of the fiscal year but relates to services performed in that completed fiscal year, when should that equity award be reported in the Summary Compensation Table and the Grants of Plan-Based Awards Table?

**Answer:** Under Item 402(c)(2)(v) and (vi), the dollar amount recognized

for financial statement reporting purposes with respect to the fiscal year must be reported in the Summary Compensation Table for stock and option awards. With respect to the Grants of the Plan-Based Awards Table, under Item 402(d)(1), information as to the awards is to be reported in the fiscal year in which the award was made. In preparing the Compensation Discussion and Analysis under Item 402(b), companies should consider the application of Instruction 2 to Item 402(b) with respect to awards granted after the end of the fiscal year but relating back to service in that completed fiscal year. [January 24, 2007]

Question 4.06

**Question:** Instruction 3 to Item 402(c)(2)(viii) provides that where the amount of the change in the actuarial present value of the accumulated pension benefit computed pursuant to Item 402(c)(2)(viii)(A) is negative, the amount should be disclosed by footnote but should not be reflected in the sum reported in the Change in Pension Value and Nonqualified Deferred Compensation Earnings column (column (h)). When a company aggregates all of the decreases and increases in the value of a named executive officer's individual pension plans, should the company subtract negative values from positive values or should any individual plan decreases be treated as a zero?

**Answer:** In applying this instruction, a company may subtract negative values when aggregating the changes in the actuarial present values of the accumulated benefits under the plans, and apply the "no negative number" position of the instruction for the final number after aggregating all plans. Under this approach, if one plan had a $500 increase and another plan had a $200 decrease, then the net change in the actuarial present value of the accumulated pension benefits would be $300. [January 24, 2007]

Question 4.07

**Question:** Item 402(c)(2)(ix)(A) and Instruction 4 to that item require a company to report as "All Other Compensation" perquisites and personal benefits if the total amount exceeds $10,000, and to identify each such item by type, regardless of the amount. If the $10,000 threshold is otherwise exceeded, must a company list by type those perquisites and personal benefits as to which there was no aggregate incremental cost to the company, or as to which the executive officer fully reimbursed the company for such cost?

**Answer:** If a perquisite or other personal benefit has no aggregate incremental cost, it must still be separately identified by type. Any item for which an executive officer has actually fully reimbursed the company for its total cost should not be considered a perquisite or other personal benefit and therefore need not be separately identified by type. In this regard, for example, an executive officer would have "fully reimbursed" the company for a meal at a country club if she reimbursed not only the cost of the meal, but also a proportional amount of the country club dues paid by the company. [August 8, 2007]

Question 4.08

**Question:** Item 402(c)(2)(ix)(C) indicates that stock purchased at a discount needs to be disclosed unless that discount is available generally to all security holders or to all salaried employees. The compensation cost, if any, is computed in accordance with FAS 123R. Footnote 221 to <u>Securities Act Release No. 8732A</u> seems to indicate that sometimes under FAS 123R there is no compensation cost. Does the footnote indicate that 423 plans must be disclosed?

**Answer:** No. Typically 423 plans need to be broad based and non-discriminatory to qualify for preferential tax treatment, which would be within the exception, even if they require some minimum of work hours — such as 10 hours a week — in order to be in the plan or the discount is larger than the 5% example in the footnote. The footnote explains that even if there is some discount, there may not be compensation cost under the accounting standard. [January 24, 2007]

Question 4.09

**Question:** Item 402(c)(2)(ix)(G) requires disclosure of the dollar value of any dividends when those amounts were not factored into the grant date fair value required to be reported in the Grants of Plan-Based Awards Table. With regard to the treatment of dividends, dividend equivalents or other earnings on equity awards, is disclosure required in the All Other Compensation column (column (i)) if disclosure was not previously provided in the Grants of Plan-Based Awards Table for that named executive officer?

**Answer:** The company should analyze whether the dividends, dividend equivalents or other earnings would have been factored into the grant date fair value in accordance with FAS 123R. In this regard, the disclosure turns on how the rights to the dividends are structured and whether or not that brings them within the scope of FAS123R for the purpose of the grant date fair value calculation. [January 24, 2007]

Question 4.10

**Question:** Are deferred compensation payouts, lump sum distributions under Section 401(k) plans and earnings on 401(k) plans required to be disclosed in the Summary Compensation Table?

**Answer:** Non-qualified deferred compensation payouts are not disclosed in the Summary Compensation Table, but are rather disclosed in the Aggregate Withdrawals/ Distributions column (column (e)) of the Nonqualified Deferred Compensation Table. Lump sum distributions from 401(k) plans are not disclosed in the Summary Compensation Table, because the compensation that was deferred into the 401(k) plan was already disclosed in the Summary Compensation Table, as would be any company matching contributions. Earnings on 401(k) plans are not disclosed in the Summary Compensation Table because the disclosure requirement only extends to above-market or preferential earnings on non-qualified deferred compensation. [January 24, 2007]

Question 4.11

**Question:** An equity award subject to disclosure pursuant to Item 402(c)

(2)(v) or (vi) may be disclosed as a negative number because the expense is reversed under FAS 123R, such as when an award is forfeited during the fiscal year, achievement of a performance-based condition becomes no longer probable, or when liability accounting applies to an award such as a cash-settled stock unit program and the stock price declines during the year. What portion of the award that was previously expensed and is reversed under FAS 123R may be deducted from the amount reported in, or shown as a negative number in, the Stock Awards or Option Awards Column?

**Answer:** Only the previously expensed portions of awards that were previously reported in the Summary Compensation Table may be reversed in the Summary Compensation Table. Therefore, an expensed amount that relates to periods before effectiveness of the new rules or before the person became a named executive officer should not be deducted from the amount reported in, or shown as a negative number in, the Stock Awards or Option Awards column. [August 8, 2007]

Question 4.12

**Question:** Item 402(c)(2)(ix)(D) requires disclosure in the "All Other Compensation" column of the amount paid or accrued to any named executive officer pursuant to any plan or arrangement in connection with any termination of such executive officer's employment with the company or its subsidiaries, or a change in control of the company. For this purpose, what standard applies for determining whether such an amount is reportable because it is accrued?

**Answer:** Instruction 5 to Item 402(c)(2)(ix) states that for purposes of Item 402(c)(2)(ix)(D) an accrued amount is an amount for which payment has become due. If the named executive officer's performance necessary to earn an amount is complete, it is an amount that should be disclosed. For example, if the named executive officer has completed all performance to earn an amount, but payment is subject to a six-month deferral in order to comply with Internal Revenue Code Section 409A, the amount would be an accrued amount subject to Item 402(c)(2)(ix)(D) disclosure. In contrast, if an amount will be payable two years after a termination event if the named executive officer cooperates with (or complies with a covenant not to compete with) the company during that period, the amount is not reportable under Item 402(c)(2)(ix)(D) because the executive officer's performance is still necessary for the payment to become due. As noted in Footnote 217 to <u>Securities Act Release No. 8732A</u>, such amounts that are payable in the future, as well as amounts reportable under Item 402(c)(2)(ix)(D), are reportable under Item 402(j). [August 8, 2007]

## Section 5. Item 402(d) — Grants of Plan Based Awards Table

Question 5.01

**Question:** If an equity incentive plan award is denominated in dollars, but payable in stock, how is it disclosed in the Grants of Plan-Based Awards Table since the headings for equity-based awards (columns (f), (g) and (h)) only refer to numbers and not dollars?

**Answer:** The award should be disclosed in the Grants of Plan-Based Awards Table by including the dollar value and a footnote to explain that it will be paid out in stock in the form of whatever number of shares that amount translates into at the time of the payout. In this limited circumstance, and if all the awards in this column are structured in this manner, it is acceptable to change the captions for columns (f) through (h) to show "($)" instead of "(#)." [August 8, 2007]

Question 5.02

**Question:** If all of the non-equity incentive plan awards were made for annual plans, where the awards have already been earned, may the company change the heading over columns (c), (d) and (e) of the Grants of Plan-Based Awards Table that refers to "Estimated future payouts under non-equity incentive plan awards?"

**Answer:** Yes, if the awards were made in the same year they were earned and the earned amounts are therefore disclosed in the Summary Compensation Table, the heading over columns (c), (d) and (e) may be changed to "Estimated possible payouts under Non-equity incentive plan awards." [January 24, 2007]

### Section 6. Item 402(e) — Narrative Disclosure to Summary Compensation Table and Grants of Plan-Based Awards Table

None

### Section 7. Item 402(f) — Outstanding Equity Awards at Fiscal Year-End Table

Question 7.01

**Question:** Should a company include in the Outstanding Equity Awards at Fiscal Year-End Table in-kind earnings on restricted stock awards that have earned share dividends or share dividend equivalents?

**Answer:** Yes. Outstanding in-kind earnings at the end of the fiscal year should be included in the table. However, in-kind earnings that vested during the fiscal year, or in-kind earnings that are already vested when the dividends are declared, instead should be reported in the Option Exercises and Stock Vested Table under Item 402(g) of Regulation S-K. [January 24, 2007]

Question 7.02

**Question:** Instruction 3 to Item 402(f)(2) states that the issuer should report the market value of equity incentive plan awards using the closing market price at the end of the last completed fiscal year. The next sentence, however, states that the number of shares or units reported should be based on achieving threshold performance goals, "except that if the previous fiscal year's performance" has exceeded the threshold, disclosure is based on the next higher measure. Is the "previous fiscal year" the same year as the last completed fiscal year, or the year that preceded the last completed fiscal year?

**Answer:** For this purpose, the "previous fiscal year" means the same year as the "last completed fiscal year." [August 8, 2007]

Question 7.03

**Question:** A company has an equity incentive plan pursuant to which it grants awards that will vest, if at all, based on total shareholder return over a 3-year period. Awards were granted in 2005 ("2005 Awards") and will vest based on the company's total shareholder return from 1/1/05 through 12/31/07. 2006 was the second year of the 3-year performance period. Performance during 2005 was well above the maximum level. Performance during 2006 was below the threshold level. The combined performance for 2005 and 2006 would result in a payout at target if the performance period had ended on 12/31/06. Is it permissible to base disclosure on the actual multi-year performance to date (through the end of the last completed fiscal year)?

**Answer:** Yes. The number of shares or units reported in columns (d) or (i), and the payout value reported in column (j), should be based on achieving threshold performance goals, except that if performance during the last completed fiscal year (or, if the payout is based on performance to occur over more than one year, the last completed fiscal years over which performance is measured) has exceeded the threshold, the disclosure shall be based on the next higher performance measure (target or maximum) that exceeds the last completed fiscal year's performance (or, if the payout is based on performance to occur over more than one year, the last completed fiscal years over which performance is measured) . [August 8, 2007]

## Section 8. Item 402(g) — Option Exercises and Stock Vested Table

Question 8.01

**Question:** When reporting on the exercise or settlement of a stock appreciation right in the Number of Shares Acquired on Exercise column (column (b)) of the Option Exercises and Stock Vested Table, should a company report the net number of shares received upon exercise, or the gross number of shares underlying the exercised stock appreciation right?

**Answer:** As would be the case with the cashless exercise of options, the total number of shares underlying the exercised stock appreciation right should be reported in column (b), rather than just the amount representing the increase of the stock price since the grant of the award. A footnote or narrative accompanying the table could explain and quantify the net number of shares received. [January 24, 2007]

## Section 9. Item 402(h) — Pension Benefits

Question 9.01

**Question:** Instruction 2 to Item 402(h)(2) indicates that the company must use the same assumptions used for financial reporting purposes under generally accepted accounting principles, except for the retirement age assumption, when computing the actuarial present value of a named

executive officer's accumulated benefit under each pension plan. May the company deviate from the assumptions used for accounting purposes given the individual circumstances of the named executive officer or the plan?

**Answer:** No. [January 24, 2007]

Question 9.02

**Question:** Instruction 2 to Item 402(h)(2) specifies that in calculating the actuarial present value of a named executive officer's accumulated pension benefits, the assumed retirement age is to be the normal retirement age as defined in the plan, or, if not defined, the earliest time at which the named executive officer may retire without any benefit reduction. While many plans have a specifically defined retirement age, some plans also have a provision that allows participants to retire at an earlier age without any benefit reduction. In this case, which age should the company use in making its calculation?

**Answer:** When a plan has a stated "normal" retirement age and also a younger age at which retirement benefits may be received without any reduction in benefits, the younger age should be used for determining pension benefits. The older age may be included as an additional column. [January 24, 2007]

Question 9.03

**Question:** How do you measure the actuarial present value of the accumulated benefit of a pension plan in the situation where a particular benefit is earned at a specified age? For instance, if a named executive officer at age 40 is granted an award if he stays with his company until age 60, how should the company measure this benefit when the executive is age 50 and the normal retirement age under the plan is age 65?

**Answer:** The computation should be based on the accumulated benefit as of the pension measurement date, assuming that the named executive continues to live and will work at the company until retirement and thus will reach age 60 and receive the award. [January 24, 2007]

Question 9.04

**Question:** Should assumptions regarding pre-retirement decrements be factored into the calculation of the actuarial present value of a named executive officer's accumulated benefit under a pension plan?

**Answer:** For purposes of calculating the actuarial present value for the Pension Benefits Table, the registrant should assume that each named executive officer will live to and retire at the plan's normal retirement age (or the earlier retirement age if the named executive officer may retire with unreduced benefits) and ignore for the purposes of the calculations what actuaries refer to as pre-retirement decrements. Therefore, the assumptions used for financial statement reporting purposes that should be used for calculating the actuarial present value are the discount rate, the lump sum interest rate (if applicable), post-retirement mortality, and payment distribution assumptions. Any contingent benefits arising upon

death, early retirement or other termination of employment events should be disclosed in the post-employment narrative disclosure required under Item 402(j) of Regulation S-K. [January 24, 2007]

Question 9.05

**Question:** A cash balance pension plan is a defined benefit plan in which the retiree's benefits may be determined by the amount represented in a hypothetical "account" for that participant. The "accrued benefit" is the amount credited to a participant's cash balance account as of any date, which the participant has the right to receive as a lump sum upon termination of employment. Can a company report, as the present value of the accumulated benefit for a cash balance plan, the "accrued benefit"?

**Answer:** No. The same as for other defined benefit plans, the amount disclosable in the Pension Benefits Table as the present value of accumulated benefit for a cash balance plan is the actuarial present value of the named executive officer's accumulated benefit under the plan, computed as of the same plan measurement date used for purposes of the company's audited financial statements for the last completed fiscal year. [August 8, 2007]

## Section 10. Item 402(i) — Non-Qualified Deferred Compensation Table

Question 10.01

**Question:** The instruction to Item 402(i)(2) of Regulation S-K requires footnote disclosure quantifying the extent to which amounts reported in the table were reported as compensation in the Summary Compensation Table in the last completed fiscal year and in previous fiscal years. What should be noted by footnote when amounts were not previously reported (either because of the transition guidance in Securities Act Release No. 8732A or when a named executive officer appears in the table for the first time)?

**Answer:** The purpose of the instruction is to facilitate an understanding that non-qualified deferred compensation is reported elsewhere within the executive compensation disclosure over time. Amounts only need to be disclosed by footnote if they were actually previously reported in the Summary Compensation Table. [January 24, 2007]

Question 10.02

**Question:** Item 402(i)(2)(iv) requires disclosure of the dollar amount of aggregate interest or other earnings accrued during the registrant's last fiscal year. What items, other than interest, are "earnings" for this purpose?

**Answer:** "Earnings" include dividends, stock price appreciation (or depreciation), and other similar items. The purpose of the table is to show changes in the aggregate account balance at fiscal year end for each named executive office. Thus, "earnings" should encompass any increase or decrease in the account balance during the last completed fiscal year that is not attributable to contributions, withdrawals or distributions during the

year. [August 8, 2007]

## Section 11. Item 402(j) — Potential Payments upon Termination or Change-in-Control

Question 11.01

**Question:** In the event that options are accelerated upon a termination or change-in- control, for purposes of Item 402(j) disclosure should the value of the accelerated options be calculated using the "spread" between exercise and market price (as of fiscal year end) or the FAS 123R value recognized in connection with the acceleration?

**Answer:** For purposes of Item 402(j), the company should use the "spread" to calculate the value of the award. Since Item 402(j) requires quantification of what a named executive officer would have received assuming the event took place on the last business day of the registrant's last completed fiscal year, disclosure of the "spread" at that date is consistent with Instruction 1 to 402(j), which prescribes using the closing market price per share of the registrant's securities on last business day of the registrant's last completed fiscal year. [August 8, 2007]

Question 11.02

**Question:** A company's employee stock option plan provides for full and immediate vesting of all outstanding unvested awards upon a change-in-control of the company and this provision is included in each option recipient's award agreement (whether the recipient is an executive officer or an employee). Instruction 5 to Item 402(j) provides that a company need not provide information with respect to contracts, agreements, plans, or arrangements to the extent they are available generally to all salaried employees and do not discriminate in scope, terms, or operation, in favor of executive officers of the company. Can the company rely on Instruction 5 to omit disclosure of these awards when quantifying the estimated payments and benefits that would be provided to named executive officers upon a change-in-control?

**Answer:** No. The Instruction 5 standard that the "scope" of arrangements not discriminate in favor of executive officers would not be satisfied where the option awards to executives are in amounts greater than those provided to all salaried employees. [August 8, 2007]

## Section 12. Item 402(k) — Director Compensation Table

Question 12.01

**Question:** Is director compensation disclosure required under Item 402(k) of Regulation S-K for a person who served as a director for part of the last completed fiscal year, even if the person was no longer a director at the end of the last completed fiscal year?

**Answer:** Yes. If a person served as a director during any part of the last completed fiscal year the person must be included in the Director Compensation Table. [January 24, 2007]

Question 12.02

**Question:** Is director compensation disclosure required under Item 402(k) of Regulation S-K for a person who served as a director during the last completed fiscal year but will not stand for re-election the next year?

**Answer:** Yes. If a person served as a director during any part of the last completed fiscal year the person must be included in the Director Compensation Table. [January 24, 2007]

Question 12.03

**Question:** Does the Instruction to Item 402(k)(2)(iii) and (iv) require footnote disclosure, for each director, of the grant date fair value of each equity award outstanding or only of the awards granted during the company's last completed fiscal year?

**Answer:** Like the corresponding disclosure for named executive officers in the Grants of Plan-Based Awards Table, this Director Compensation Table requirement applies only to stock and option awards granted during the company's last completed fiscal year. [August 8, 2007]

Question 12.04

**Question:** Does the Instruction to Item 402(k)(2)(iii) and (iv) requirement to provide footnote disclosure, for each director, of the aggregate number of stock awards and the aggregate number of option awards outstanding at fiscal year end include exercised options or vested stock awards?

**Answer:** No. Like the corresponding disclosure for named executive officers in the Outstanding Equity Awards at Fiscal Year-End Table, this Director Compensation Table requirement applies only to unexercised option awards (whether or not exercisable) and unvested stock awards (including unvested stock units). [August 8, 2007]

Question 12.05

**Question:** Can a charitable matching program that is available to all employees be excluded from the disclosure required of "director legacy or charitable awards programs" under Item 402(k)(2)(vii)(G) based on the exclusion for "information regarding group life, health, hospitalization, or medical reimbursement plans that do not discriminate in scope, terms or operation, in favor of executive officers or directors of the registrant and that are available generally to all salaried employees" in the Item 402(a)(6)(ii) definition of "plan"?

**Answer:** No. A charitable matching program available to all employees must be included in the Director Compensation Table. The Director Compensation Table disclosure applies to "the annual costs of payments and promises of payments pursuant to director legacy programs and similar charitable award programs." Any company-sponsored charitable award program in which a director can participate would be a "similar charitable award program." [August 8, 2007]

## INTERPRETIVE RESPONSES REGARDING PARTICULAR SITUATIONS

### Section 1. Item 402 — General Guidance

**1.01**   Whether a spin-off is treated like the IPO of a new "spun-off" registrant for purposes of Item 402 disclosure depends on the particular facts and circumstances. When determining whether disclosure of compensation before the spin-off is necessary, the "spun-off" registrant should consider whether it was a reporting company or a separate division before the spin-off, as well as its continuity of management. For example, if a parent company spun off a subsidiary which conducted one line of the parent company's business, and before and after the spin-off the executive officers of the subsidiary: (1) were the same; (2) provided the same type of services to the subsidiary; and (3) provided no services to the parent, historical compensation disclosure likely would be required. In contrast, if a parent company spun off a newly formed subsidiary consisting of portions of several different parts of the parent's business and having new management, it is more likely that the spin-off could be treated as the IPO of a new "spun-off" registrant. [January 24, 2007]

**1.02**   Following a merger among operating companies, there is no concept of "successor" compensation. Therefore, the surviving company in the merger need not report on compensation paid by predecessor corporations that disappeared in the merger. Similarly, a parent corporation would not pick up compensation paid to an employee of its subsidiary prior to the time the subsidiary became a subsidiary (i.e., when it was a target). Moreover, income paid by such predecessor companies need not be counted in computing whether an individual is a named executive officer of the surviving corporation. A different result may apply, however, in situations involving an amalgamation or combination of companies. A different result also applies where an operating company combines with a shell company, as defined in Securities Act Rule 405, as provided in Interpretive Response 1.12, below. [August 8, 2007]

**1.03**   A subsidiary of a public company is going public. The officers of the subsidiary previously were officers of the parent, and in some cases all of the work that they did for the parent related to the subsidiary. The registration statement of the subsidiary would not be required to include compensation previously awarded by the parent corporation. The subsidiary would start reporting as of the IPO date. [January 24, 2007]

**1.04**   Instruction 1 to Item 402(a)(3) states that the generally required compensation disclosure regarding highly compensated executive officers need not be set forth for an executive officer (other than the principal executive officer or principal financial officer) whose total compensation for the last fiscal year, reduced by the amount required to be disclosed by Item 402(c)(2)(viii), did not exceed $100,000. A reporting company that recently changed its fiscal year end from December 31st to June 30th is preparing its transition report for the 6-month period ended June 30th, having filed its Form 10-K for the fiscal year ended 6 months earlier on December 31st. The reporting company generally has a group of executive officers that earn in excess of $100,000 each year. In addition, during the 6-month period, the company made an acquisition that resulted in new executive officers that, on an annual basis, will earn more than $100,000. During the 6-month period, however, none of these existing or new officers

earned more than $100,000 in total compensation. The company asked whether disclosure under Item 402 regarding these officers therefore would not be required in the report being prepared for the 6-month period. The Division staff advised that no disclosure need be provided with respect to executive officers that started employment with the company during the 6-month period and did not, during that period of employment, earn more than $100,000. With respect to executive officers that were employed by the company both during and before the 6-month period, however, Item 402 disclosure would have to be provided for those who earned in excess of $100,000 during the one-year period ending June 30th (the same ending date as the six-month period, but extending back over 6 months of the preceding fiscal year). [January 24, 2007]

**1.05** If a company changes its fiscal year, report compensation for the "stub period," and do not annualize or restate compensation. In addition, report compensation for the last three full fiscal years, in accordance with Item 402 of Regulation S-K. For example, in late 1997 a company changed its fiscal year end from June 30 to December 31. In the Summary Compensation Table, provide disclosure for each of the following four periods: July 1, 1997 to December 31, 1997; July 1, 1996 to June 30, 1997; July 1, 1995 to June 30, 1996; and July 1, 1994 to June 30, 1995. Continue providing such disclosure for four periods (three full fiscal years and the stub period) until there is disclosure for three full fiscal years after the stub period (December 31, 2000 in the example). If the company was not a reporting company and was to do an IPO in February 1998, it would furnish disclosure for both of the following periods in the Summary Compensation Table: July 1, 1997 to December 31, 1997; and July 1, 1996 to June 30, 1997. [January 24, 2007]

**1.06** Compensation of both incoming and departing executives should not be annualized. [January 24, 2007]

**1.07** Where a named executive officer exercises "reload" options and receives additional options upon such exercise, the registrant is required to report the additional options as an option grant in the Grants of Plan-Based Awards Table. In the Summary Compensation Table, the registrant would report the dollar amount recognized for the additional options for financial statement purposes with respect to the fiscal year in accordance with FAS 123R. [January 24, 2007]

**1.08** Options or other rights to purchase securities of the parent or a subsidiary of the registrant should be reported in the same manner as compensatory options to purchase registrant securities. [January 24, 2007]

**1.09** A caller asked whether an executive officer, other than the principal executive officer or principal financial officer, could be considered a "named executive officer" if the executive officer became a non-executive employee during the last completed fiscal year and did not depart from the registrant. If an executive officer becomes a non-executive employee of a registrant during the preceding fiscal year, consider the compensation the person received during the entire fiscal year for purposes of determining whether the person is a named executive officer for that fiscal year. If the person thus would qualify as a named executive officer, disclose all of the person's compensation for the full fiscal year, *i.e.* compensation for when the person was an executive officer and for when the person was a non-executive

employee. [January 24, 2007]

**1.10**   A parent and its subsidiary are both Exchange Act reporting companies. Some of the executive officers of the parent may receive a portion of their compensation from the subsidiary corporation. The Division staff advised that if an executive spends 100% (or near 100%) of the executive's time for the subsidiary but is paid by the parent, then the compensation paid by the parent has to be reported in the executive compensation table of the subsidiary. However, if an allocation of the monies paid by the parent would be necessary because the executive officer splits time between the parent and the subsidiary, the payments made by the parent need not be included in the subsidiary's executive compensation table. In addition, in the event that the subsidiary pays a management fee to the parent for use of the executives, disclosure of the structure of the management agreement and fees would have to be reported under Item 404. Compensation paid by the subsidiary to executives of the parent company must be included in the parent's executive compensation table if such payments are paid directly by the subsidiary. If the payments are part of a management contract, disclosure of the structure of the management agreement and fees would have to be reported under Item 404. [January 24, 2007]

**1.11**   A company's reimbursement to an officer of legal expenses with respect to a lawsuit in which the officer was named as a defendant, in her capacity as an officer, is not disclosable pursuant to Item 402 of Regulation S-K. [January 24, 2007]

**1.12**   Shareholders of a shell company, as defined in Securities Act Rule 405, will vote on combining the shell company with an operating company. The combination will have the effect of making the operating company subject to the reporting requirements of Section 13(a) or 15(d) of the Exchange Act. The disclosure document soliciting shareholder approval of the combination (whether a proxy statement, Form S-4, or Form F-4) needs to disclose: (1) Item 402 disclosure for the shell company before the combination; (2) Item 402 disclosure regarding the operating company that the operating company would be required to make if filing a 1934 Act registration statement, including Compensation Discussion and Analysis disclosure; and (3) Item 402 disclosure regarding each person who will serve as a director or an executive officer of the surviving company required by Item 18(a)(7)(ii) or 19(a)(7)(ii) of Form S-4, including Compensation Discussion and Analysis disclosure that may emphasize new plans or policies (as provided in the Release 33-8732A text at n. 97). The Form 10-K of the combined entity for the fiscal year in which the combination occurs would provide Item 402 disclosure for the named executive officers and directors of the combined entity, complying with Item 402(a)(4) of Regulation S-K and Instruction 1 to Item 402(c) of Regulation S-K. [August 8, 2007]

### Section 2. Item 402(a) — General

None

### Section 3. Item 402(b) — Compensation Discussion and Analysis

None

**Section 4. Item 402(c) — Summary Compensation Table**

**4.01**   A caller inquired whether a filing that is made on January 2 must include compensation for the previous year ended December 31 when compensation information may not be incorporated by reference into the filing. The Division staff's position is that compensation must be included for such year because registrants should have those numbers available. However, if bonus or other amounts for the prior year have not yet been determined, this should be noted in a footnote together with disclosure regarding the date the bonus will be determined, any formula or criteria that will be used and any other pertinent information. When determined, the bonus or other amount must be disclosed in a filing under Item 5.02(f) of Form 8-K. Further, where the compensation disclosure depends upon assumptions used in the financial statements and those financial statements have not yet been audited, it is permissible for the company to note this fact in the compensation disclosure. [January 24, 2007]

**4.02**   Item 402(c)(2)(viii) of Regulation S-K and Item 402(h)(2)(iii) and (iv) of Regulation S-K require amounts that are computed as of the same pension plan measurement date used for financial reporting purposes with respect to the company's audited financial statements for the last completed fiscal year. The rules reference the same pension plan measurement date as is used for financial statement reporting purposes so that the company would not have to use different assumptions when computing the present value for executive compensation disclosure and financial reporting purposes.  The pension plan measurement date for most pension plans is September 30, which, in the case of calendar-year companies, does not correspond with the company's fiscal year.  This means that the pension benefit information will be presented for a period that differs from the fiscal year period covered by the disclosure.  Under recent changes in pension accounting standards, the pension measurement date will be changed to be the same as the end of the company's fiscal year.  In the year in which companies change their pension measurement date, they may use an annualized approach for the disclosure of the change in the value of the accumulated pension benefits in the Summary Compensation Table (thereby adjusting the 15 month period to a 12 month period) when the transition in pension plan measurement date occurs, so long as the company includes disclosure explaining it has followed this approach. The actuarial present value computed on the new measurement date should be reported in the Pension Benefits Table. [January 24, 2007]

**4.03**   A registrant need not report earnings on compensation that is deferred on a basis that is not tax qualified as above-market or preferential earnings within the meaning of Item 402(c)(2)(viii)(B) where the return on such earnings is calculated in the same manner and at the same rate as earnings on externally managed investments to employees participating in a tax-qualified plan providing for broad-based employee participation. See n. 43 to Release No. 34-31327 (Oct. 16, 1992); American Society of Corporate Secretaries (January 6, 1993). For example, many issuers provide for deferral of salary or bonus amounts not covered by tax-qualified plans where the return on such amounts is the same as the return paid on amounts invested in an externally managed investment fund, such as an equity mutual fund, available to all employees participating in a non-discriminatory, tax-qualified plan (*e.g.*, 401(k) plan). Although this position generally will be available for so-called "excess benefit plans" (as defined

for Rule 16b-3(b)(2) purposes), it may not be appropriately applied in the case of a pure "top-hat" plan or SERP (Supplemental Employee Retirement Plan) that bears no relationship to a tax-qualified plan of the issuer. When in doubt, consult the staff. For a deferred compensation plan with a cash-based, interest-only return, earnings would not be reportable as "above-market" unless the rate of interest exceeded 120% of the applicable federal long-term rate, as stated in Instruction 2 to Item 402(c)(2)(viii). Non-qualified deferred compensation plan earnings that are "above-market or preferential" are reportable even if the deferred compensation plan is unfunded and thus subject to risk of loss of principal. [January 24, 2007]

**4.04**  Item 402(c)(2)(ix)(G) requires disclosure in the "All Other Compensation" column of the dollar value of any dividends or other earnings paid on stock or option awards, when those amounts were not factored into the grant date fair value required to be reported for the stock or option award. If a company credits stock dividends on unvested restricted stock units, but does not actually pay them out until the restricted stock units vest, those dividends should be reported in the year credited, rather than the year vested (and actually paid). [August 8, 2007]

### Section 5. Item 402(d) — Grants of Plan Based Awards Table

**5.01**  If plans do not include thresholds or maximums (or equivalent items), the registrant need not include arbitrary sample threshold and maximum amounts. For example, for a non-equity incentive plan that does not specify threshold or maximum payout amounts (for example, a plan in which each unit entitles the executive to $1.00 of payment for each $.01 increase in earnings per share during the performance period), threshold and maximum levels need not be shown as "0" and "N/A" because the payouts theoretically may range from nothing to infinity. Rather, an appropriate footnote should state that there are no thresholds or maximums (or equivalent items). [January 24, 2007]

### Section 6. Item 402(e) — Narrative Disclosure to Summary Compensation Table and Grants of Plan-Based Awards Table

None

### Section 7. Item 402(f) — Outstanding Equity Awards at Fiscal Year-End Table

None

### Section 8. Item 402(g) — Option Exercises and Stock Vested Table

**8.01**  A company grants stock options that provide for immediate exercise in full as of the grant date, subject to the company's right to repurchase (at the exercise price) if the executive terminates employment with the company before a specified date. If the executive officer exercises the option before the repurchase restriction lapses, he or she effectively receives restricted stock subject to forfeiture until the repurchase restriction lapses. In this circumstance, the Outstanding Equity Awards table should show the shares received as stock awards that have not vested (columns (g) and (h)) until the repurchase restriction lapses, and the exercise should

not be reported in the Option Exercises and Stock Vested Table. Instead, as the shares acquired by the executive officer cease to be subject to the repurchase provision, those shares should be reported as stock awards (columns (d) and (e)) in the Option Exercises and Stock Vested Table. If the executive officer exercises the option after the repurchase restriction lapses, it is reported in the same manner as a regular stock option. [August 8, 2007]

## Section 9. Item 402(h) — Pension Benefits

**9.01**   If the actuarial present value of the accumulated pension benefit for a named executive officer on the pension measurement date of the prior fiscal year was $1,000,000, and the present value of the accumulated pension benefit on the pension measurement date of the most recently completed fiscal year is $1,000,000, but during the most recently completed fiscal year the named executive officer earned and received an in-service distribution of $200,000, then $200,000 should be reported as the increase in pension value in the Change in Pension Value and Nonqualified Deferred Compensation Earnings column (column (h)) of the Summary Compensation Table. [January 24, 2007]

## Section 10. Item 402(i) — Non-Qualified Deferred Compensation Table

None

## Section 11. Item 402(j) — Potential Payments upon Termination or Change-in-Control

**11.01**   Item 402(j) requires quantitative disclosure of estimated payments and benefits, applying the assumptions that the triggering event took place on the last business day of the company's last completed fiscal year and the price per share of the company's securities is the closing market price as of that date. The date used for Item 402(j) quantification disclosure can affect the quantification of tax gross-ups with respect to the Internal Revenue Code Section 280G excise tax on excess parachute payments, such as by suggesting that benefits would be accelerated or by changing the five-year "base period" for computing the average annual taxable amount to which the parachute payment is compared. Where the last business day of the last completed fiscal year for a calendar year company is not December 31, the company may calculate the excise tax and related gross-up on the assumption that the change-in-control occurred on December 31, rather than the last business day of its last completed fiscal year, using the company stock price as of the last business day of its last completed fiscal year. The company may not substitute January 1 of the current year for the last business day of the company's last completed fiscal year, which would change the five-year "base period" to include the company's last completed fiscal year. [August 8, 2007]

**11.02**   Following the end of the last completed fiscal year (2006), but before the proxy statement is filed, a named executive officer leaves the company (in early 2007). A Form 8-K disclosing this termination is filed, as required by Item 5.02(b) of Form 8-K. This named executive officer is not the Principal Executive Officer or the Principal Financial Officer and will not be a named executive officer for the current fiscal year (2007) based on

Item 402(a)(3)(iv). The severance package that applied to the named executive officer's termination is not newly negotiated but instead has the same terms that otherwise would apply. In these limited circumstances, it is permissible to provide Item 402(j) disclosure for the named executive officer only for the triggering event that actually occurred (even though beyond the scope of Instruction 4 to Item 402(j) because it took place after the end of the last completed fiscal year), rather than providing the disclosure for several additional scenarios that no longer can occur. [August 8, 2007]

**11.03**    A company will file a proxy statement for its regular annual meeting that also will solicit shareholder approval of a transaction in which the company would be acquired. The company has post-termination compensation arrangements that apply generally. Assuming that the acquisition is approved, however, all the named executive officers will be covered by termination agreements that that will be specific to the acquisition. The company can not satisfy Item 402(j) by disclosing *only* the termination agreements that are specific to the pending acquisition for the following reasons: If the company's shareholders and/or any applicable regulatory authority do not approve the acquisition, the company's generally applicable post-termination arrangements will continue to apply. In addition, comparison of the acquisition-specific agreements with the generally applicable post-termination arrangements may be material. [August 8, 2007]

## Section 12. Item 402(k) — Director Compensation Table

**12.01**    Consulting arrangements between the registrant and a director are disclosable as director compensation under Item 402(k)(2)(vii), even where such arrangements cover services provided by the director to the issuer other than as director (e.g., as an economist). [January 24, 2007]

**12.02**    A company has an executive officer (who is not a named executive officer) who is also a director. This executive officer does not receive any additional compensation for services provided as a director, and the conditions in Instruction 5.a.ii to Item 404(a) of Regulation S-K are satisfied. The compensation that this director receives for services as an executive officer does not need to be reported in the Director Compensation Table under Item 402(k) of Regulation S-K. The director may be omitted from the table, provided that footnote or narrative disclosure explains that the director is an executive officer, other than a named executive officer, who does not receive any additional compensation for services provided as a director. [August 8, 2007]

**12.03**    A company has a director who also is an employee (but not an executive officer). Item 404(a) requires disclosure of the transaction pursuant to which the director is compensated for services provided as an employee. (Instruction 5 to Item 404(a) does not apply because the person is not an executive officer or does not have compensation reported for services as a director in the Director Compensation Table required by Item 402(k).) However, disclosure of this employee compensation transaction in the Director Compensation Table typically would result in a clearer, more concise presentation of the information. In this situation, if the employee compensation transaction is reported in the Director Compensation Table, it need not be repeated with the other Item 404(a) disclosure. Footnote or

narrative disclosure to the Director Compensation Table should explain the allocation to services provided as an employee. [August 8, 2007]

**12.04**   A current director previously was an employee of the company and receives a pension that was earned for services rendered as a company employee. If payment of the pension is not conditioned on his or her service as a director, the pension benefits do not need to be disclosed in the Director Compensation Table, whether or not the director receives compensation for services provided as a director. If service as a director generates new accruals to the pension, disclosure would be required in column (f) of the Director Compensation Table. [August 8, 2007]

*http://www.sec.gov/divisions/corpfin/guidance/execcomp402interp.htm*

```
<DOCUMENT>
<TYPE>13F-HR
<SEQUENCE>1
<FILENAME>form13fhr.txt
<DESCRIPTION>THE CHILDREN'S INVESTMENT FUND MANAGEMENT (UK) LLP
<TEXT>
```

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

Form 13F

Form 13F COVER PAGE

Report for the Calendar Year or Quarter Ended:  June 30, 2007
                                                ------------------------

Check here if Amendment [   ]; Amendment Number:
                                                -----
    This Amendment (Check only one.):   [   ] is a restatement.
                                        [   ] adds new holdings entries.

Institutional Investment Manager Filing this Report:

Name:     The Children's Investment Fund Management (UK) LLP
          -------------------------------------------------
Address:  7 Clifford Street
          -------------------------------------------------
          London W1S 2WE
          -------------------------------------------------
          England
          -------------------------------------------------

Form 13F File Number:     028-11900
                          ------------------

The institutional investment manager filing this report and the person by whom
it is signed hereby represent that the person signing the report is authorized
to submit it, that all information contained herein is true, correct and
complete, and that it is understood that all required items, statements,
schedules, lists, and tables, are considered integral parts of this form.

Person Signing this Report on Behalf of Reporting Manager:

Name:     Catherine O'Reilly
          -------------------------------------------------
Title:    Chief Operating Officer
          -------------------------------------------------
Phone:    +44 207 440 2388
          -------------------------------------------------

Signature, Place, and Date of Signing:

          /s/ Catherine O'Reilly        London, England          8/14/07
          -----------------------       ----------------------------    ----------


```
<PAGE>
```

Report Type (Check only one.):

[ X ]   13F HOLDINGS REPORT. (Check here if all holdings of this reporting
        manager are reported in this report.)

[   ]   13F NOTICE. (Check here if no holdings reported are in this report,
        and all holdings are reported by other reporting manager(s).)

[   ]   13F COMBINATION REPORT. (Check here if a portion of the holdings for
        this reporting manager are reported in this report and a portion are
        reported by other reporting manager(s).)


<PAGE>


                        FORM 13F SUMMARY PAGE


Report Summary:


Number of Other Included Managers:                0
                                        -------------

Form 13F Information Table Entry Total:            4
                                        -------------

Form 13F Information Table Value Total:      1,518,806
                                        -------------
                                        (thousands)


List of Other Included Managers:


Provide a numbered list of the name(s) and Form 13F file number(s) of all
institutional investment managers with respect to which this report is filed,
other than the manager filing this report.

NONE


<PAGE>


<TABLE>

<CAPTION>

                        Form 13F INFORMATION TABLE

<S>      <C>              <C>              <C>          <C>            <C>

         COLUMN 1         COLUMN 2         COLUMN 3     COLUMN 4       COLUMN 5
--------------------  ---------------    ---------    --------    ----------------
                                                        VALUE       SHRS OR   SH/ P
      NAME OF ISSUER   TITLE OF CLASS     CUSIP        (x$1000)    PRN AMT   PRN CA
--------------------  ---------------    ---------    --------    ----------------
CEMEX SAB DE CV       SPON ADR 5 ORD     151290889     243,257    6,592,336 SH
CSX CORP              COM                126408103     802,288   17,796,998 SH

```
NORFOLK SOUTHERN CORP    COM              655844108         226,840      4,315,000 SH
UNION PAC CORP           COM              907818108         246,421      2,140,000 SH

</TABLE>
</TEXT>
</DOCUMENT>
```

```
<DOCUMENT>
<TYPE>13F-HR
<SEQUENCE>1
<FILENAME>form13fhr.txt
<DESCRIPTION>THE CHILDREN'S INVESTMENT FUND MANAGEMENT (UK) LP
<TEXT>
```

                          UNITED STATES
                SECURITIES AND EXCHANGE COMMISSION
                      Washington, D.C. 20549


                            Form 13F

                       Form 13F COVER PAGE

Report for the Calendar Year or Quarter Ended: September 30, 2007
                                               ------------------------

Check here if Amendment [   ]; Amendment Number:
                                               -----
    This Amendment (Check only one.):  [   ] is a restatement.
                                       [   ] adds new holdings entries.

Institutional Investment Manager Filing this Report:

Name:     The Children's Investment Fund Management (UK) LLP
          --------------------------------------------------
Address:  7 Clifford Street
          --------------------------------------------------
          London W1S 2WE
          --------------------------------------------------
          England
          --------------------------------------------------

Form 13F File Number:     028-11900
                          ------------------


The institutional investment manager filing this report and the person by whom
it is signed hereby represent that the person signing the report is authorized
to submit it, that all information contained herein is true, correct and
complete, and that it is understood that all required items, statements,
schedules, lists, and tables, are considered integral parts of this form.

Person Signing this Report on Behalf of Reporting Manager:

Name:     Angus Milne
          --------------------------------------------------
Title:    Head of Compliance
          --------------------------------------------------
Phone:    +44 207 025 7613
          --------------------------------------------------

Signature, Place, and Date of Signing:

       /s/ Angus Milne          London, England          11/14/07
       ------------------------ ------------------------- ----------


```
<PAGE>
```

Report Type (Check only one.):

[ X ]    13F HOLDINGS REPORT. (Check here if all holdings of this reporting
          manager are reported in this report.)

[   ]    13F NOTICE. (Check here if no holdings reported are in this report,
          and all holdings are reported by other reporting manager(s).)

[   ]    13F COMBINATION REPORT. (Check here if a portion of the holdings for
          this reporting manager are reported in this report and a portion are
          reported by other reporting manager(s).)


<PAGE>


                            FORM 13F SUMMARY PAGE


Report Summary:


Number of Other Included Managers:              0
                                        -------------

Form 13F Information Table Entry Total:          5
                                        -------------

Form 13F Information Table Value Total:    1,878,077
                                        -------------
                                          (thousands)


List of Other Included Managers:


Provide a numbered list of the name(s) and Form 13F file number(s) of all
institutional investment managers with respect to which this report is filed,
other than the manager filing this report.

NONE


<PAGE>


<TABLE>
<CAPTION>
<S>                              <C>            <C>          <C>        <C>

                                       FORM 13F INFORMATION TABLE

           COLUMN 1                   COLUMN 2       COLUMN 3    COLUMN 4        COLUMN
--------------------------------  ---------------- ----------  --------  ---------------
                                                                VALUE     SHRS OR    SH

| NAME OF ISSUER | TITLE OF CLASS | CUSIP | (x$1000) | PRN AMT | PR |
|---|---|---|---|---|---|
| TRANSALTA CORP | COM | 89346D107 | 21,621 | 684,900 | SH |
| STERLITE INDS INDIA LTD | ADS | 859737207 | 172,587 | 9,329,000 | SH |
| CSX CORP | COM | 126408103 | 760,466 | 17,796,998 | SH |
| NORFOLK SOUTHERN CORP | COM | 655844108 | 103,301 | 1,990,000 | SH |
| UNION PAC CORP | COM | 907818108 | 820,102 | 7,253,684 | SH |

```
</TABLE>


</TEXT>
</DOCUMENT>
```



THE FLORIDA TIMES-UNION
JACKSONVILLE.COM

**Most popular stories:** <u>Most viewed</u> | <u>Most printed</u> | <u>Most e-mailed</u>

**December 19, 2007**

# Investors partner to nominate minority slate to CSX board

**By TRAVIS REED**
*Associated Press Writer*

ORLANDO, Fla. - An activist London asset manager intensified pressure Wednesday on CSX Corp. to change leadership by partnering with a private firm and nominating a new minority slate for the rail company's board.

The Children's Investment Fund Management LLP has been trying for months to leverage its 4.2 percent ownership of outstanding CSX shares into changes for the Jacksonville-based rail carrier. CSX officials rebuffed those efforts, and TCI launched a new partnership detailed in a Securities and Exchange Commission filing.

TCI formed with 3G Capital Partners Ltd., which manages a global investment fund and owns about 4.1 percent of CSX's outstanding shares, giving the partnership 8.3 percent total. The members also hold derivative securities with economic interest in an additional 11.8 percent.

"CSX's incumbent board has overseen a railroad that for many years has lagged its peers on many of the key metrics of operational and financial performance," said TCI Managing Partner Christopher Hohn, who is among the board nominees.

The remaining four have experience managing railroads or overseeing rail company splits and mergers - some of it vast. For example, Alexandre Behring, 3G's managing director, is a locomotive engineer and for seven years was CEO of America Latina Logistica, a huge Latin American rail company.

The other nominees are Gilbert Lamphere, managing director of private investment firm Lamphere Capital Management; Timothy O'Toole, managing director of the London Underground; and Gary Wilson, former chairman of Northwest Airlines.

The slate will be up for election at the company's 2008 annual shareholders meeting.

CSX, which operates the largest railroad in the eastern United States, said in a written statement it stood behind the current board.

"This group of directors has driven the company's successes, including nearly tripling the stock price in the past three years, and provided shareholders a return better than the rest of the North American rail industry and 89 percent of all S&P companies," the statement said.

TCI set the events in motion with an October letter to the CSX board asking the company to separate the roles of chairman and chief executive officer, add new directors with railroad experience, formulate a better operations plan and improve labor relations.

The letter suggested CSX management "does not fully understand the economics of the business, is cavalier about potential risks (and) is undisciplined about spending," among other things.

CSX shares were up three cents to $43.64 in mid-afternoon trading.

This story can be found on Jacksonville.com at http://www.jacksonville.com/tu-apnews/stories/121907/D8TKNUF80.shtml.

Home | News | Business | Entertainment | Sports | Community | Resources

*This site, and all its content,* © *The Florida Times-Union*

**Contacts:**
George Sard/Jonathan Gasthalter/Renée Soto
Sard Verbinnen & Co.
(212) 687-8080

## TCI AND 3G FORM GROUP OWNING 8.3% OF CSX SHARES
## AND AN ADDITIONAL 11.8% ECONOMIC INTEREST

### PLAN TO NOMINATE MINORITY BOARD SLATE OF FIVE DIRECTORS

**NEW YORK, DECEMBER 19, 2007** – The Children's Investment Fund Management (UK) LLP ("TCI") and 3G Capital Partners, LTD. ("3G") today filed a Schedule 13D with the Securities and Exchange Commission disclosing that they and several individuals have formed a group ("Group") whose members own in the aggregate 8.3% of the outstanding common shares of CSX Corporation (NYSE: CSX). The members of the Group also hold derivative securities providing economic exposure equivalent to an additional 11.8% of CSX's outstanding shares.

The filing also disclosed that the Group intends to nominate five directors for election to the Board of Directors of CSX at its 2008 Annual Meeting of Shareholders.

The Group believes its nominees will strengthen CSX's Board by adding strong independent directors with a shareholder orientation, a broad range of railroad and other relevant experience, and a firm commitment to improving CSX's operating performance and corporate governance.

Christopher Hohn, Managing Partner of TCI, said, "CSX's incumbent Board has overseen a railroad that for many years has lagged its peers on many of the key metrics of operational and financial performance. Rather than engage in a constructive dialogue with one of its largest shareholders, the CSX Board has consistently ignored our substantive concerns and failed to hold management accountable for continuing operational underperformance. Our goal is a strong CSX that can provide the returns shareholders deserve, the service shippers demand, a safety record communities can count on, and a working environment employees can be proud of. To this end, we are nominating to the Board the principals of two major shareholders and three distinguished independents with meaningful railroad experience. We are committed to working constructively with members of the Board to help improve CSX for the benefit of all of its stakeholders."

The director nominees are:

➢ **Christopher Hohn**
Before founding TCI in 2003, Mr. Hohn spent seven years at Perry Capital and was the portfolio manager leading its European investment strategy from 1997 to 2003. Mr. Hohn has previously served on the Board of RIT Capital Partners plc, which is publicly listed on the London Stock Exchange.

Key reasons Mr. Hohn is being nominated and can add value to CSX are:

- Mr. Hohn has a long and successful track record of fundamental investing and actively maximizing value of public companies, including the Deutsche Börse Group, ABN AMRO, and Euronext N.V.
- Mr. Hohn has successfully advocated for strong corporate governance and shareholder rights in situations around the world.
- TCI owns approximately 4.2% of CSX's outstanding shares.

Mr. Hohn received a B.S. degree in Accounting and Business Economics (1st Class Honors) from Southampton University and an M.B.A. degree (high distinction) from Harvard Business School.

➢ **Alexandre Behring**
Mr. Behring is the Managing Director of 3G, a private investment firm.  Previously, he spent 10 years at GP Investments, Latin America's largest private-equity firm, including eight years as a Partner and Member of the firm's Investment Committee.  He served for seven years as CEO of America Latina Logistica (ALL), Latin America's largest independent railroad and logistics company, which operates more than 13,000 miles of track in Brazil and Argentina. He continues to serve on the Management Committee of ALL's Board.

Key reasons Mr. Behring is being nominated and can add value to CSX are:

- Mr. Behring is a unique combination of a large CSX shareholder (3G owns approximately 4.1% of CSX's outstanding shares) and an experienced, accomplished, hands-on railroad executive.
- Under his leadership, ALL's accident rate was reduced by 86%, locomotive productivity increased at a double-digit compound annual growth rate, and its EBITDA margin improved from 6% to 42% through the third quarter 2007.
- ALL is now one of the most efficient and technologically advanced freight railroads in the world and has also been voted several times by its employees as one of the best companies to work for in Latin America.
- As a publicly traded company, ALL's market capitalization of $6.5 billion is over 30 times the amount Mr. Behring and his partners paid for the company 10 years ago.

Mr. Behring received a B.S. degree in Electric Engineering from Pontifícia Universidade Católica and an M.B.A. degree (high distinction) from Harvard Business School.  He is also a locomotive engineer.

➢ **Gilbert Lamphere**
Mr. Lamphere is the Managing Director of Lamphere Capital Management, a private investment firm.  Previously, he was a Director of Canadian National Railway, Chairman of Illinois Central Railroad prior to its sale to Canadian National in 1998, and a Director of Florida East Coast Industries (a railroad and real estate company). He also participated in the acquisition, financing, and oversight of MidSouth Rail.  Mr. Lamphere has served as a Director of nine other public companies, including Carlyle Industries, Inc., Cleveland-Cliffs Inc., R. P. Scherer Corporation, Global Natural Resources Corporation and Recognition International, Inc.  Earlier in his career, Mr. Lamphere was a Vice President of Mergers & Acquisitions at Morgan Stanley.

Key reasons Mr. Lamphere is being nominated and can add value to CSX are:

- Mr. Lamphere has been Chairman or a director at three of the most successful and efficient railroads in North America.
- During his tenure on the Boards of Canadian National and Illinois Central, where he worked closely with Hunter Harrison, the Companies' operating ratios improved from 76% to 64% and from over 90% to 63%, respectively.
- Mr. Lamphere is deeply knowledgeable of the best practices in railroad operations and a proven value-added railroad board director.

Mr. Lamphere received an A.B. degree in Economics from Princeton University and an M.B.A. degree (high distinction) from Harvard Business School.

➢ **Timothy O'Toole**

Mr. O'Toole has over 25 years of railroad industry experience. He is currently the Managing Director of the London Underground, where he is responsible for operating and rebuilding the Tube, the world's oldest metropolitan railway. Previously, he served as President and Chief Executive Officer of Conrail from 1998 to 2001. During his more than 20 years at Conrail, he served in various senior management roles, including Senior Vice President of Law and Government Affairs, Senior Vice President of Finance and Chief Financial Officer, Vice President and Treasurer, and Vice President and General Counsel.

Key reasons Mr. O'Toole is being nominated and can add value to CSX are:

- Mr. O'Toole was a prominent figure in the transaction splitting the former Conrail business between CSX and Norfolk Southern, providing him with first-hand knowledge of CSX's assets and operations.
- Under his leadership, Conrail achieved record financial results and safety performance. Similarly, under his leadership the London Underground has improved service and safety and moved record numbers of passengers, all while undergoing an historic rebuilding program.
- Mr. O'Toole was made an Honorary Commander of the British Empire in recognition of his performance following the terrorist attack on London's transport system in 2005.

Mr. O'Toole received a B.A. degree in English Literature (Maxima Cum Laude) from LaSalle University, a J.D. degree from the University of Pittsburgh School of Law, and an Honorary Doctor of Humane Letters degree from LaSalle University.

➢ **Gary Wilson**

Mr. Wilson was a principal investor and Co-Chairman of the Board of Northwest Airlines from 1991 to 1997 and Chairman from 1997 to 2007. From 1985 to 1990, he was Chief Financial Officer and a director of The Walt Disney Company and served on its Board until 2006. Prior to joining Disney, Mr. Wilson served for 11 years in senior executive positions at Marriott Corp., including Executive Vice President and Chief Financial Officer, Head of Corporate Development, and Treasurer. He is a current director of Yahoo! Inc. (NASDAQ: YHOO) and CB Richard Ellis Group Inc. (NYSE: CBG).

Key reasons Mr. Wilson is being nominated and can add value to the CSX Board are:

- Mr. Wilson has a track record – as an executive, director and investor – of leading major companies through strategic transitions and creating substantial shareholder value. He is also a strong advocate of improved corporate governance in public companies.
- Mr. Wilson successfully transitioned Marriott from an owner-operator to the more profitable and scaleable business model of a hotel management company.
- During his tenure as CFO, Disney's market value increased significantly and Mr. Wilson expanded its hotel and theme park assets while utilizing innovative financing techniques.
- Mr. Wilson was an investor in and a director of Progress Rail, one of North America's largest providers of railroad products and services.

Mr. Wilson received a B.A. degree from Duke University and an M.B.A. degree from The Wharton School of the University of Pennsylvania.

For further information, please visit www.strongercsx.com.

**About TCI**

TCI is a London-based asset manager founded in 2003 which manages The Children's Investment Master Fund. TCI makes long-term investments in companies globally. The management company is authorized and regulated in the United Kingdom by the Financial Services Authority. The majority of TCI's profits go to The Children's Investment Fund Foundation, a non-profit organization focused on improving the lives of children living in poverty in developing countries.

**About 3G**

3G manages a private investment fund that invests in global equities and special situations. 3G Fund L.P. leverages its deep industry and operating expertise in different sectors to identify attractive, long-duration investment opportunities.

# # #

THIS PRESS RELEASE IS FOR GENERAL INFORMATIONAL PURPOSES ONLY. IT DOES NOT HAVE REGARD TO THE SPECIFIC INVESTMENT OBJECTIVE, FINANCIAL SITUATION, SUITABILITY, OR THE PARTICULAR NEED OF ANY SPECIFIC PERSON WHO MAY RECEIVE THIS PRESS RELEASE, AND SHOULD NOT BE TAKEN AS ADVICE ON THE MERITS OF ANY INVESTMENT DECISION. THE VIEWS EXPRESSED HEREIN REPRESENT THE OPINIONS OF THE CHILDREN'S INVESTMENT FUND MANAGEMENT (UK) LLP, THE CHILDREN'S INVESTMENT FUND MANAGEMENT (CAYMAN) LTD., THE CHILDREN'S INVESTMENT MASTER FUND, 3G CAPITAL PARTNERS LTD., 3G CAPITAL PARTNERS, L.P., 3G FUND L.P., CHRISTOPHER HOHN, ALEXANDRE BEHRING, GILBERT LAMPHERE, TIMOTHY O'TOOLE AND GARY WILSON (COLLECTIVELY, THE "POTENTIAL PARTICIPANTS"), AND ARE BASED ON PUBLICLY AVAILABLE INFORMATION WITH RESPECT TO CSX CORPORATION (THE "ISSUER").

EXCEPT FOR THE HISTORICAL INFORMATION CONTAINED HEREIN, THE MATTERS ADDRESSED IN THIS PRESS RELEASE ARE FORWARD-LOOKING STATEMENTS THAT INVOLVE CERTAIN RISKS AND UNCERTAINTIES. YOU SHOULD BE AWARE THAT ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE CONTAINED IN THE FORWARD-LOOKING STATEMENTS. THE POTENTIAL PARTICIPANTS ASSUME NO OBLIGATION TO UPDATE THE FORWARD-LOOKING INFORMATION.

THE POTENTIAL PARTICIPANTS RESERVE THE RIGHT TO CHANGE ANY OF THEIR OPINIONS EXPRESSED HEREIN AT ANY TIME AS THEY DEEM APPROPRIATE. THE POTENTIAL PARTICIPANTS DISCLAIM ANY OBLIGATION TO UPDATE THE INFORMATION CONTAINED HEREIN.

THE POTENTIAL PARTICIPANTS HAVE NOT SOUGHT OR OBTAINED CONSENT FROM ANY THIRD PARTY TO USE ANY STATEMENTS OR INFORMATION INDICATED IN THIS PRESS RELEASE AS HAVING BEEN OBTAINED OR DERIVED FROM STATEMENTS MADE OR PUBLISHED BY THIRD PARTIES. ANY SUCH STATEMENTS OR INFORMATION SHOULD NOT BE VIEWED AS INDICATING THE SUPPORT OF SUCH THIRD PARTY FOR THE VIEWS EXPRESSED HEREIN. NO WARRANTY IS MADE THAT DATA OR INFORMATION, WHETHER DERIVED OR OBTAINED FROM FILINGS MADE WITH THE SEC OR FROM ANY THIRD PARTY, ARE ACCURATE.

THE POTENTIAL PARTICIPANTS SHALL NOT BE RESPONSIBLE OR HAVE ANY LIABILITY FOR ANY MISINFORMATION CONTAINED IN ANY SEC FILING OR THIRD PARTY REPORT. THERE IS NO ASSURANCE OR GUARANTEE WITH RESPECT TO THE PRICES AT WHICH ANY SECURITIES OF THE ISSUER WILL TRADE, AND SUCH SECURITIES MAY NOT TRADE AT PRICES THAT MAY BE IMPLIED IN THIS PRESS RELEASE.  ANY ESTIMATES, PROJECTIONS AND PRO FORMA INFORMATION SET FORTH IN THIS PRESS RELEASE ARE BASED ON ASSUMPTIONS THAT THE POTENTIAL PARTICIPANTS BELIEVE TO BE REASONABLE, BUT THERE CAN BE NO ASSURANCE OR GUARANTEE THAT ACTUAL RESULTS OR PERFORMANCE OF THE ISSUER WILL NOT DIFFER, AND SUCH DIFFERENCES MAY BE MATERIAL. THIS PRESS RELEASE DOES NOT RECOMMEND THE PURCHASE OR SALE OF ANY SECURITY.

THIS PRESS RELEASE DOES NOT RECOMMEND THE PURCHASE OR SALE OF ANY SECURITY. UNDER NO CIRCUMSTANCES IS THIS PRESS RELEASE TO BE USED OR CONSIDERED AS AN OFFER TO SELL OR A SOLICITATION OF AN OFFER TO BUY ANY SECURITY. THE POTENTIAL PARTICIPANTS CURRENTLY OWN AN AGGREGATE OF APPROXIMATELY 8.3% OF THE OUTSTANDING COMMON STOCK OF THE ISSUER. THE POTENTIAL PARTICIPANTS INCLUDE FUNDS AND ACCOUNTS THAT ARE IN THE BUSINESS OF TRADING – BUYING AND SELLING - PUBLIC SECURITIES. IT IS POSSIBLE THAT THERE WILL BE DEVELOPMENTS IN THE FUTURE THAT CAUSE ONE OR MORE OF THE POTENTIAL PARTICIPANTS FROM TIME TO TIME TO SELL ALL OR A PORTION OF THEIR SHARES IN OPEN MARKET TRANSACTIONS OR OTHERWISE (INCLUDING VIA SHORT SALES), BUY ADDITIONAL SHARES (IN OPEN MARKET OR PRIVATELY NEGOTIATED TRANSACTIONS OR OTHERWISE), OR TRADE IN OPTIONS, PUTS, CALLS OR OTHER DERIVATIVE INSTRUMENTS RELATING TO SUCH SHARES.

ALL STOCKHOLDERS OF THE ISSUER ARE ADVISED TO READ THE DEFINITIVE PROXY STATEMENT AND OTHER DOCUMENTS RELATED TO THE SOLICITATION OF PROXIES BY THE POTENTIAL PARTICIPANTS FROM THE STOCKHOLDERS OF THE ISSUER FOR USE AT THE 2008 ANNUAL MEETING OF STOCKHOLDERS OF THE ISSUER WHEN AND IF THEY BECOME AVAILABLE BECAUSE THEY WILL CONTAIN IMPORTANT INFORMATION. WHEN AND IF COMPLETED, THE DEFINITIVE PROXY STATEMENT AND FORM OF PROXY WILL BE MAILED TO STOCKHOLDERS OF THE ISSUER AND WILL, ALONG WITH OTHER RELEVANT DOCUMENTS, BE AVAILABLE AT NO CHARGE ON THE SEC'S WEB SITE AT HTTP://WWW.SEC.GOV. IN ADDITION, THE POTENTIAL PARTICIPANTS IN THE PROXY SOLICITATION WILL PROVIDE COPIES OF THE DEFINITIVE PROXY STATEMENT WITHOUT CHARGE UPON REQUEST. INFORMATION RELATING TO THE PARTICIPANTS IS CONTAINED IN EXHIBIT 3 TO THE SCHEDULE 14A FILED BY THE PARTICIPANTS WITH THE SEC ON DECEMBER 19, 2007.

12/20/07 N.Y. Times C2
2007 WLNR 25067668

New York Times (NY)
Copyright 2007 The New York Times Company

December 20, 2007

Section: C

Hedge   Funds   Propose   CSX   Directors , Starting Proxy Battle

MICHAEL J. de la MERCED

 An activist  hedge   fund  that has feuded with the railroad operator   CSX   over
its  strategy  proposed  a slate of five alternate  directors  on Wednesday,
beginning a proxy fight.

   The  hedge   fund , the Children's Investment  Fund , teamed up with 3G Capital
Management, another  hedge   fund  company, in  proposing  the board candidates.
Together, the two hold some 8.3 percent of   CSX , plus derivative holdings whose
exposure is equivalent to 11.8 percent, the  funds  said in a statement.

   The move constituted an escalation in hostilities between Children's  Investment
and CSX over the company's spending and corporate governance structure.

   In their statement, the two funds said their nominees would ''strengthen CSX's
board by adding strong independent directors with a shareholder orientation, a
broad range of railroad and other relevant experience, and a firm commitment to
improving CSX's operating performance and corporate governance.''

   Two months ago, Children's Investment Fund made public a letter it sent to CSX's
directors, contending that although it had tried for months to reach management,
CSX  executives refused to hold substantive discussions about the company's
spending.

   In the letter, the fund asked that the chairman and chief executive roles be
split, more independent directors with industry experience be added and some
operational expenses be curtailed.

   Last month, the board responded in a public letter, in which it supported the
company's management, led by its chairman and chief executive, Michael J. Ward.

   In a statement  Wednesday, CSX said it had a strong board with a broad range of
experience. ''This group of directors has driven the company's successes, including

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

nearly tripling the stock price in the past three years, and provided shareholders a return better than the rest of the North American rail industry and 89 percent of all S.& P. companies,'' the statement said.

Last year, the Children's Investment Fund successfully persuaded Deutsche Borse to abandon merger efforts with the London Stock Exchange. This year, it pushed ABN Amro, the Dutch banking giant, to sell itself. ABN later agreed to be purchased by a consortium of banks for 71.9 billion euros.

Among the board candidates proposed Wednesday were Christopher Hohn, founder and managing partner of Children's Investment Fund, and Alexandre Behring, 3G's managing director and former chief executive of America Latina Logistica, a large Latin American rail company.

The other candidates are a former director of the Canadian National Railway, the managing director of the London Underground system and the former chairman of Northwest Airlines.

---- INDEX REFERENCES ----

COMPANY: CSX CORP; ABN AMRO HOLDING NV; CANADIAN NATIONAL RAILWAY CO; CANADIAN NATIONAL RAILWAY; NORTHWEST AIRLINES CORP NEW; 3G; NORTHWEST AIRLINES

INDUSTRY: (Transportation (1TR48); Railroads (1RA98); Land Transportation (1LA43); Investment Management (1IN34); Financial Services (1FI37))

REGION: (United Kingdom (1UN38); Europe (1EU83); England (1EN10); Western Europe (1WE41))

Language: EN

OTHER INDEXING: (3G; 3G CAPITAL MANAGEMENT; ABN; ABN AMRO; AMERICA LATINA LOGISTICA; CANADIAN NATIONAL RAILWAY; CSX; HEDGE FUNDS PROPOSE CSX DIRECTORS STARTING PROXY BATTLE; NORTHWEST AIRLINES) (Alexandre Behring; Christopher Hohn; Deutsche Borse; Michael J. Ward)

EDITION: Late Edition - Final

Word Count: 530
12/20/07 NYT C2
END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

```
<DOCUMENT>
<TYPE>13F-HR
<SEQUENCE>1
<FILENAME>p08-0546form13fhr.txt
<DESCRIPTION>THE CHILDREN'S INVESTMENT FUND MANAGEMENT (UK) LLP
<TEXT>
```

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

Form 13F

Form 13F COVER PAGE

Report for the Calendar Year or Quarter Ended:  December 31, 2007
                                                ------------------------

Check here if Amendment [   ]; Amendment Number:
                                                 -----
    This Amendment (Check only one.):  [   ] is a restatement.
                                       [   ] adds new holdings entries.

Institutional Investment Manager Filing this Report:

Name:      The Children's Investment Fund Management (UK) LLP
           ----------------------------------------------------
Address:   7 Clifford Street
           ----------------------------------------------------
           London W1S 2WE
           ----------------------------------------------------
           England
           ----------------------------------------------------

Form 13F File Number:      028-11900
                           ------------------

The institutional investment manager filing this report and the person by whom
it is signed hereby represent that the person signing the report is authorized
to submit it, that all information contained herein is true, correct and
complete, and that it is understood that all required items, statements,
schedules, lists, and tables, are considered integral parts of this form.

Person Signing this Report on Behalf of Reporting Manager:

Name:      Angus Milne
           ----------------------------------------------------
Title:     Head of Compliance
           ----------------------------------------------------
Phone:     +44 207 025 7613
           ----------------------------------------------------

Signature, Place, and Date of Signing:

     /s/ Angus Milne          London, England              02/14/08
     -----------------------  ----------------------------  ----------

```
<PAGE>
```

Report Type (Check only one.):

[ X ] 13F HOLDINGS REPORT. (Check here if all holdings of this reporting
        manager are reported in this report.)

[   ] 13F NOTICE. (Check here if no holdings reported are in this report,
        and all holdings are reported by other reporting manager(s).)

[   ] 13F COMBINATION REPORT. (Check here if a portion of the holdings for
        this reporting manager are reported in this report and a portion are
        reported by other reporting manager(s).)


<PAGE>


                        FORM 13F SUMMARY PAGE


Report Summary:


Number of Other Included Managers:              0
                                        -------------

Form 13F Information Table Entry Total:          4
                                        -------------

Form 13F Information Table Value Total:    2,397,396
                                        -------------
                                         (thousands)


List of Other Included Managers:


Provide a numbered list of the name(s) and Form 13F file number(s) of all
institutional investment managers with respect to which this report is filed,
other than the manager filing this report.

NONE


<PAGE>


<TABLE>

<CAPTION>

                        Form 13F INFORMATION TABLE

<c>                     <c>           <c>      <c>      <c>             <c>
        COLUMN 1            COLUMN 2      COLUMN 3 COLUMN 4       COLUMN 5       COLUMN
-------------------- ---------------- -------- -------- -------------------- -------

| NAME OF ISSUER | TITLE OF CLASS | CUSIP | VALUE (x$1000) | SHRS OR PRN AMT | SH/ PRN | PUT/ CALL | INVESTM DISCRET |
|---|---|---|---|---|---|---|---|
| TRANSALTA CORP | COM | 89346D107 | 123,620 | 3,694,500 | SH | | SOLE |
| STERLITE INDS INDIA LTD | ADS | 859737207 | 363,853 | 13,956,779 | SH | | SOLE |
| CSX CORP | COM | 126408103 | 782,712 | 17,796,998 | SH | | SOLE |
| UNION PAC CORP | COM | 907818108 | 1,127,211 | 8,973,184 | SH | | SOLE |
| </TABLE> | | | | | | | |

</TEXT>
</DOCUMENT>

```
<DOCUMENT>
<TYPE>13F-HR
<SEQUENCE>1
<FILENAME>p08-0997form13fhr.txt
<DESCRIPTION>ANGUS MILNE
<TEXT>
```

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C.  20549

Form 13F

Form 13F COVER PAGE

Report for the Calendar Year or Quarter Ended:   March 31, 2008
                                               ------------------------

Check here if Amendment [   ]; Amendment Number:
                                               -----
   This Amendment (Check only one.):   [   ] is a restatement.
                                       [   ] adds new holdings entries.

Institutional Investment Manager Filing this Report:

Name:     The Children's Investment Fund Management (UK) LLP
          ---------------------------------------------------
Address:  7 Clifford Street
          ---------------------------------------------------
          London W1S 2WE
          ---------------------------------------------------
          England
          ---------------------------------------------------

Form 13F File Number:      028-11900
                           ------------------

The institutional investment manager filing this report and the person by whom
it is signed hereby represent that the person signing the report is authorized
to submit it, that all information contained herein is true, correct and
complete, and that it is understood that all required items, statements,
schedules, lists, and tables, are considered integral parts of this form.

Person Signing this Report on Behalf of Reporting Manager:

Name:     Angus Milne
          ---------------------------------------------------
Title:    Head of Compliance
          ---------------------------------------------------
Phone:    +44 207 025 7613
          ---------------------------------------------------

Signature, Place, and Date of Signing:

      /s/ Angus Milne          London, England              05/15/08
      -----------------------  -----------------------------  ----------

```
<PAGE>
```

Report Type (Check only one.):

[ X ]    13F HOLDINGS REPORT. (Check here if all holdings of this reporting
         manager are reported in this report.)

[   ]    13F NOTICE. (Check here if no holdings reported are in this report,
         and all holdings are reported by other reporting manager(s).)

[   ]    13F COMBINATION REPORT. (Check here if a portion of the holdings for
         this reporting manager are reported in this report and a portion are
         reported by other reporting manager(s).)

                                    2

<PAGE>

                            FORM 13F SUMMARY PAGE

Report Summary:

Number of Other Included Managers:              0
                                         -------------

Form 13F Information Table Entry Total:          9
                                         -------------

Form 13F Information Table Value Total:       3,937,599
                                         -------------
                                         (thousands)

List of Other Included Managers:

Provide a numbered list of the name(s) and Form 13F file number(s) of all
institutional investment managers with respect to which this report is filed,
other than the manager filing this report.

NONE

                                    3

<PAGE>

<TABLE>

<CAPTION>

                        Form 13F INFORMATION TABLE

<c>              <c>           <c>           <c>           <c>      <c>
    COLUMN 1         COLUMN 2      COLUMN 3      COLUMN 4      COLUMN 5   COLUMN

| NAME OF ISSUER | TITLE OF CLASS | CUSIP | VALUE (x$1000) | SHRS OR PRN AMT | SH/ PRN | PUT/ CALL | INVES DISCRE |
|---|---|---|---|---|---|---|---|
| TRANSALTA CORP | COM | 89346D107 | 180,262 | 5,792,600 | SH | | SO |
| STERLITE INDS INDIA LTD | ADS | 859737207 | 253,837 | 14,244,479 | SH | | SO |
| CSX CORP | COM | 126408103 | 997,878 | 17,796,998 | SH | | SO |
| CME GROUP INC | COM | 12572Q105 | 244,120 | 520,400 | SH | | SO |
| MARTIN MARIETTA MATLS INC | COM | 573284106 | 56,774 | 534,750 | SH | | SO |
| MASTERCARD INC | CL A | 57636Q104 | 445,467 | 1,997,700 | SH | | SO |
| NYMEX HOLDINGS INC | COM | 62948N104 | 31,358 | 346,000 | SH | | SO |
| UNION PAC CORP | COM | 907818108 | 1,441,870 | 11,500,000 | SH | | SO |
| VULCAN MATLS CO | COM | 929160109 | 286,033 | 4,307,720 | SH | | SO |

```
</TABLE>

</TEXT>
</DOCUMENT>
```

Westlaw.

156 UPALR 625                                                                                                    Page 1
156 U. Pa. L. Rev. 625
(Cite as: 156 U. Pa. L. Rev. 625)

C University of Pennsylvania Law Review
January, 2008

Articles

**\*625** EQUITY AND DEBT DECOUPLING AND EMPTY VOTING II: IMPORTANCE AND EXTENSIONS
[FNd1]

Henry T. C. Hu [FNdd1]

Bernard Black [FNddd1]

Copyright (c) 2008 University of Pennsylvania Law Review; Henry T. C. Hu; Bernard Black

**\*626** We extend our prior work on how both supply (including the emergence of OTC equity derivatives and growth in share lending) and demand (including the growth of hedge funds) factors now facilitate the large-scale, low-cost decoupling of shareholder voting rights from shareholder economic interests. Both inside and outside shareholders, as well as corporations themselves, can engage in what we termed "empty voting"--voting while holding greater voting power than economic ownership. Shareholders can also have "hidden (morphable) ownership"--economic ownership, ostensibly without voting rights, which remains undisclosed under current disclosure rules, but can quickly morph to include voting ownership as well. These forms of decoupling pose important risks to the one-share-one-vote paradigm that underlies conventional models of corporate governance and shareholder voting.

We extend our prior work in five primary ways. First, we treat decoupling of voting rights from economic ownership of shares (empty voting and hidden ownership) as special instances of a more general pattern--investors, and corporations themselves, can unbundle the package of rights and obligations which have traditionally been associated with equity ("equity decoupling") as well as debt ("debt decoupling"). Second, we provide evidence that equity decoupling is an important worldwide phenomenon, which adds urgency to the need for disclosure and perhaps other reforms. Third, we go beyond decoupling by shareholders, examine decoupling strategies that corporations can use to fend off changes in control, and expand our integrated equity ownership disclosure proposal to address corporate decoupling. Fourth, we propose responses to empty voting which go beyond disclosure, including constrained corporate power to limit the voting rights of empty voters, condensing the period from record date to shareholder meeting date, and encouraging institutional investors to recall and vote lent shares. Fifth, we sketch several extensions of our decoupling framework to (a) the full range of shareholder rights and obligations, (b) debt decoupling, and (c) the possible revival of the "street sweep" takeover strategy.

Introduction.                                                              628


I. Shareholder and Corporate                                                632
Decoupling.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A. Decoupling: Overall                          632
Picture.

B. Functional Elements and                      636
Terminology.

C. Shareholder Rights: Empty                    640
Voting.

1. Hedge Funds and Other                        640
Shareholders.

2. Soft Parking by the                          642
Corporation Itself.

3. Employee Stock                               648
Ownership Plans; Restricted Stock
Plans.

4. Empty Voting of Another                      651
Company's Shares.

D. Shareholder Obligations:                     652
Avoiding Disclosure.

1. Outside Shareholders.                        652

2. Insiders.                                    653

3. The Corporation Itself.                      654

II. Real World Significance of                  654
Decoupling.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A. Swiss Stealth Takeovers, 2005-2007.                                             655

B. The Swiss Regulatory Response.                                                 658

C. The Worldwide Scope of Decoupling.                                            659

III. Updating Our Ownership Disclosure Proposal.                                  682

A. Our Integrated Ownership Disclosure Proposal.                                  682

1. Current Rules and Our Disclosure Proposal.                                     682

2. Regulatory Action to Date.                                                     684

B. U.K. Experience with Disclosure Reform.                                        686

C. Extending Our Disclosure Reform Proposal to Corporate Decoupling.              688

1. Current Disclosure Rules for Corporate Decoupling.                             688

2. Corporate Decoupling: Disclosure Proposal.                                     691

D. Reporting Shares Lent and Voted on Form 13F.                                   692

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

IV. Responses to Empty Voting: Beyond Disclosure Reform.                694

  A. Overview.                694

  B. Voting Rights.                697

    1. Direct Limits on Voting Rights.                697

    2. Voting with Negative Economic Ownership.                701

    3. Voting by Record Owners: Extension to OTC Equity Derivatives.                703

    4. Voting by Record Owners: Proportional Voting if No Instructions.                705

    5. Empty Voting by Insiders.                706

  C. Strategies Affecting the Share Lending Market.                707

    1. The Importance of Share Lending and Recent Industry Developments.                707

    2. Safe Harbor for Voting Instead of Lending; Lending Disclosure.                709

156 UPALR 625
156 U. Pa. L. Rev. 625
(Cite as: 156 U. Pa. L. Rev. 625)

3. Lending to Empty Voters: Know-Your-Customer's-Purpose Rules. — 712

4. Recent Changes in Share Lending Practices. — 714

D. Strategies Focused on Voting Architecture. — 715

1. Technical Changes. — 715

2. Direct Voting by Economic Owners. — 716

3. Minimizing the Gap Between Record Date and Meeting Date. — 718

E. The Substance of Voting Procedure: Last-Minute Scrambles for Votes. — 720

V. Extensions of the Decoupling Framework. — 721

A. Other Shareholder Rights and Obligations. — 721

1. Unbundling Shareholder Rights. — 721

2. Unbundling Shareholder Obligations. — 725

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                                    Page 6
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

        B. Debt Decoupling and                                          728
Empty Crediting.

        C. The Reemergence of Street                                     735
Sweep Takeover Bids.

        Conclusion.                                                      737

## *628 Introduction

    Ownership of shares customarily conveys economic, voting, and other rights and disclosure and other obligations. Longstanding legal and economic theories of the public corporation assume that the elements of this package of rights and obligations cannot readily be decoupled--and in particular that voting rights cannot be decoupled from an economic interest in the corporation. The "one-share-one-vote" pattern, with voting rights held in proportion to economic interest, is a familiar instance of this assumption.

    This foundational assumption can no longer be relied on. In prior work, we explored the implications of decoupling of voting rights from economic ownership and the resulting gaps in disclosure rules (collectively, Decoupling I). [FN1] We explored why decoupling of voting*629 rights from economic interest is increasingly a matter of choice. The emergence of equity swaps and other over-the-counter (OTC) equity derivatives, the growth of lightly regulated hedge funds, related growth in the share lending market, and other factors now permit decoupling of voting rights from economic interest to occur quickly, at low cost, on a large scale, and often hidden from view. Investors can have greater voting than economic ownership, a pattern we termed "empty voting." Conversely, investors can have greater economic than voting ownership, which under current rules often allows them to avoid public disclosure of their ownership. Often, this hidden economic ownership can be quickly transformed to include voting ownership as well, a combination we termed "hidden (morphable) ownership." We referred to empty voting and hidden (morphable) ownership together as the "new vote buying." We set out the functional elements of these two forms of decoupling, provided a taxonomy of decoupling strategies, described the legal and regulatory environment, proposed enhanced shareholder disclosure of both economic and voting ownership, and sketched possible additional responses to empty voting.

    In this Article, we reexamine and extend our prior work in light of new developments, which show the real-world significance of these decoupling strategies, illustrate uses beyond those we had anticipated, and confirm the urgency of a disclosure-based response. We also propose additional regulatory responses to empty voting.

    This Article is organized as follows. Part I offers an overview of decoupling strategies and uses. We embed empty voting and hidden (morphable) ownership in a new general framework, in which the separation of economic and voting rights is one instance of the broader ability of investors to unbundle much of the package of rights and obligations customarily associated with share ownership. In our prior work, we focused on decoupling by shareholders. Here, we also add decoupling by corporations to an overall family of "equity decoupling" strategies. The firm cannot vote its own shares. But the firm's managers can often use decoupling strategies to arrange for friendly shareholders to hold votes but limited or no economic rights, where the shareholders are expected to support management, and have incentives to do so, or at least no incentives to *630 vote against management. In one recent takeover battle, for example, a Hungarian firm repurchased 40% of its own shares and lent the shares to friendly

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

banks (thus transferring voting rights but not economic risk). One might call the strategy "soft parking" of shares (we define this term more carefully below). OTC equity derivatives offer other options for the firm to place votes but little or no economic risk with friendly third parties. Employee stock ownership plans (ESOPs) and restricted stock plans place votes, with only limited economic ownership, in friendly hands. And acquirers can be empty voters of target shares, or vice versa. We also develop the uses of decoupling to avoid a number of regulatory requirements, not just ownership disclosure.

A recurring response to Decoupling I from U.S. readers was, "This is interesting, but is it important?" Part II provides fresh evidence. We can now say unequivocally that equity decoupling is an important worldwide phenomenon. Some recent examples have been dramatic, including stealth takeover attempts relying on hidden (morphable) ownership strategies. The managers and shareholders of major firms have woken up one morning to learn that their company suddenly has a new 30% or 40% shareholder.

In Switzerland, decoupling has been the stuff of front page headlines, involving the acquisition of controlling stakes in several leading Swiss firms, the resignation of the CEO of a major Swiss bank for facilitating this hidden ownership, and rapid government responses. Nothing in current U.S. rules prevents similar stealth bids here. Poison pills may do so, but their existence in perhaps half of our major public firms will not help the other half, nor justify regulatory complacency.

More broadly, our list of decoupling examples worldwide (see Part II and Table 1, infra) has grown--from 21 in 2006 to over 80 today, in over 20 countries. Some of the new examples are disquieting. Moreover, our prior examples primarily involved hedge funds and other outside shareholders. A number of the new examples involve corporate decoupling. These examples confirm the importance of insider and corporate decoupling.

In Part III, we refine our earlier integrated ownership disclosure reform proposal to respond to the newly emerging forms of decoupling, especially corporate decoupling, and to expand disclosure of share lending. We also argue that the emergence of sneak takeover attacks in Europe, which could be replicated here, makes disclosure reform urgent. At present, the Securities and Exchange Commission *631 (SEC) is known to be considering disclosure reforms, but no public proposal has been made. We also review evidence from the U.K., which in 2005 revised its rules for disclosure during takeover bids, and has recently proposed additional disclosure more broadly. The U.K. experience suggests that decoupling around takeover bids is reasonably common, that a disclosure-based response can provide valuable information on its extent, and that disclosure is not very burdensome to filers. Even hedge funds may be coming to believe that derivatives-based ownership should be disclosed. In October 2007, a group of 14 of London's biggest hedge funds called for European regulators to require this disclosure. [FN2]

Part IV discusses responses that go beyond disclosure, which we believe should be implemented in the near- to medium-term. In our prior work, we sketched possible approaches but believed it was premature to propose specific measures. We now propose that corporate law should allow firms to adopt charter amendments to limit empty voting, subject to an array of limits designed to ensure that these amendments produce better voting, rather than voting tilted toward insiders. We present a specific example of a charter amendment, under which large shareholders could attest to non-empty voter status. We also recommend revising current record date practices to better connect votes to economic ownership, make empty voting more difficult, and address "overvoting" (a practice that, despite its name, often results in valid votes not being counted). And we propose measures to encourage institutional investors to vote shares for which they have economic ownership.

Part V briefly outlines three extensions of our analytical framework. First, we extend the concept of decoupling to the full range of rights and obligations customarily associated with share ownership--call this "equity decoupling." The relevant rights include not only voting rights, but also rights relating to appraisal, directors' fiduciary duties, bringing lawsuits, shareholder proposals, and inspection of corporate records. The relevant obligations include not only disclosure but also, depending on each state's or country's laws, antitakeover laws, mandatory bid requirements, antitrust approval, holding company or investment company status, and short-swing

profit recapture. Second, equity decoupling has a close companion in debt markets-- call this "debt decoupling." Creditors can use credit derivatives and other means to decouple exposure to default risk from control and **\*632** other rights under loan agreements and bankruptcy law. Corporations may thus have "empty creditors" as well as empty voters, "hidden debt ownership" as well as hidden equity ownership, and perhaps morphable debt ownership as well. [FN3] Third, decoupling facilitates the reemergence of a takeover technique--the "street sweep"--which appeared briefly in the 1980s, threatened to undermine U.S. tender offer regulation, and then disappeared when the poison pill defense emerged. This pattern--"the new street sweep"--has already occurred in Europe.

Part VI concludes. A related finance-oriented paper offers a more systematic and extended analysis of debt decoupling and introduces hybrid debt-equity decoupling. [FN4]

<div align="center">I. Shareholder and Corporate Decoupling</div>

A. Decoupling: Overall Picture

At the core of the governance of the publicly held corporation is the shareholder vote. That governance, for the vast majority of companies, is based on a proportional relationship between voting power and economic ownership: one share, one vote.

The linkage of voting rights and economic interest serves several goals. It places the power to oversee company managers with those who have an incentive to exercise that power to increase firm value. The more shares owned, the greater the incentive and thus the greater the number of votes. Beyond the instrumental role of voting, the concept of shareholder-as-owner-and-voter is a core ideological **\*633** basis for managerial exercise of authority over property the managers do not own. [FN5]

This linkage also underlies most regulation of the rights and obligations of shareholders. With limited exceptions, the rules governing public firms-- including state and federal corporate, securities, and other laws, federal securities rules, and stock exchange rules (collectively, "corporate governance rules")--presume that ownership of shares is a meaningful concept and conveys a standard package of shareholder rights. Some of these rights are directly economic, including dividend, liquidation, and appraisal rights under corporate law, and gain (loss) from an increase (decrease) in trading prices. We call this package of rights "economic ownership." Some rights are not purely monetary, including voting rights, director fiduciary duties, rights to bring suits and inspect corporate records, and so on. The special case of record ownership of shares by banks and broker-dealers is handled by obscure rules governing record owners, which partly reconnects economic rights with voting and other rights. Some corporate governance rules are based on formal record ownership; some are based on who holds voting rights. However, most of these rules regulate, lightly or not at all, persons who have economic ownership but not voting rights.

Over the course of the last century, all this sort of worked. The underlying assumption of a linked set of economic, voting, and other rights ("full ownership") was mostly satisfied. The special rules for record owners sort of handled the most important exception. When gaps appeared, as they sometimes did, perhaps a tinkering fix was applied, or perhaps the breakdown was simply ignored.

This underlying assumption works no longer. The derivatives revolution in finance, the growth of sophisticated, lightly regulated hedge funds, and the related growth in the share lending market now make it easy to decouple voting rights from economic ownership. Economic ownership can be further decomposed. For instance, appraisal and dividend rights can be decoupled from other economic rights. Other types of equity decoupling are possible as well, if the need arises. We focus here on the decoupling of voting rights from **\*634** economic ownership. We return to other types of equity decoupling in Part V.A.

One concern raised by decoupling is that an investor can have a large voting stake, yet a zero or even negative stake in the company's welfare. In March 2006, for example, Multi-Fineline Electronix (M-Flex), a Delaware company, offered to buy a Singapore company, MFS Technologies (MFS). [FN6] WBL, another Singapore company, owns a majority stake in both M-Flex and MFS. Under M-Flex's charter, the offer required approval both by a majority of all shares and by a majority of M-Flex's minority shareholders. M-Flex set up a special committee to consider whether the acquisition was good for M-Flex's minority shareholders; the committee decided it was not and recommended that the minority shareholders vote against the acquisition. M-Flex then sued WBL, seeking to compel WBL to vote against the acquisition based on WBL's fiduciary duty as a controlling shareholder. M-Flex claimed that this was necessary because Stark, a hedge fund, held at least 48% of the minority M-Flex shares and had an incentive to vote for the offer even if it was bad for M-Flex. Stark owned a large stake in the target, MFS, and had hedged most or all of its interest in M-Flex. It would therefore be happy if M-Flex overpaid for MFS.

In the terminology we developed in Decoupling I (terms defined there are in italics), Stark had voting ownership of M-Flex shares, but zero (or nearly zero) economic ownership. Stark was thus engaged in empty voting: its shares had voting rights, but had been emptied of the economic ownership that customarily accompanies those rights. Indeed,*635 including its position in MFS, Stark likely had a negative overall economic interest in M-Flex, and would gain if M-Flex overpaid for MFS. [FN7]

The opposite pattern is also common--investors can use cash-settled equity swaps and other cash-settled equity derivatives to obtain economic ownership without voting rights (call these "economic only" positions). A central reason for doing this is that large shareholder ownership disclosure requirements are usually based on voting ownership; physically settled derivatives, which convey rights to obtain shares, might count, but economic ownership through cash-settled derivatives generally does not count. By shedding voting rights, hedge funds and other outside investors can avoid disclosing their positions. [FN8] These economic-only positions thus result in hidden ownership-- economic ownership that is not disclosed, even though it would be disclosed if held directly through shares. [FN9]

Equity swaps and other OTC derivatives--individually negotiated, customized contracts typically entered into by investors with derivatives dealers--offer opportunities that go beyond merely creating economic-only ownership. [FN10] They also make possible morphable voting ownership. Assume that an investor takes the long side of an equity swap, and thus receives the economic return on shares from the dealer, who takes the short side. The dealer will typically hedge its exposure, often by holding "matched shares," so that gain (loss) on the matched shares offsets loss (gain) on the equity swap. Without more, the dealer is now an empty voter--it has voting rights but no economic interest. The investor is, let us assume, a hidden owner--putting aside the potential for morphable voting rights, it has economic-only ownership, no voting rights, and thus generally no disclosure obligation.

Suppose now that the investor later wants to vote. Under common market practices, it can usually return to the dealer, unwind the swap, obtain the matched shares, and, presto, the investor has voting rights to accompany its economic ownership. Or perhaps, as sometimes occurs*636 in the U.K., the investor can ask the dealer to vote as it would have voted. In Decoupling I, we called the combination of hidden ownership and likely informal ability to obtain voting rights "hidden (morphable) ownership." Both hidden and disclosed economic-only ownership may convey informal, morphable voting rights.

If the investor had clear rights to unwind the swap and obtain shares, or to instruct the dealer on how to vote, the investor would be considered to have voting rights under Securities Exchange Act of 1934 (Exchange Act) section 13(d), [FN11] and would have to disclose ownership on Schedule 13D. [FN12] But as long as the investor's voting rights are implicit and not enforceable, current practice generally supports nondisclosure.

Hedge funds and other outside investors can use hidden ownership to build up large, otherwise disclosable positions, yet disclose their ownership only when they are ready. For example, in May 2007, hedge funds SAC Capital Advisors and Jana Partners claimed they were TD Ameritrade's largest economic owners, with a combined

8.4% economic interest--without making any public filings. [FN13] Atticus Capital, another prominent hedge fund, told the Wall Street Journal that it routinely uses derivatives in order to avoid disclosure, which would tip off competitors to its activities. [FN14] Atticus used equity swaps and other OTC derivatives to acquire large stakes in Phelps Dodge in 2006 and Freeport-McMoran in 2007. [FN15]

B. Functional Elements and Terminology

    Because of the many ways in which decoupling can occur, it is useful to set out its functional elements and specify some terminology. We do so here, while being intentionally brief for elements described in Decoupling I. By "formal voting rights," we refer to the legal right to *637 vote shares under company law (as supplemented by rules governing voting of shares held by record owners in "street name"), including the legal power to instruct someone else how to vote. Thus, in the common situation where a broker holds shares in street name for a customer, the customer has formal voting rights because it has the right under stock exchange rules to instruct the broker how to vote the customer's shares. By "voting rights" or "voting ownership" of shares, we refer to either formal or informal rights to vote shares, including the de facto power to instruct someone else how to vote. The company at which voting takes place is the "host company."

    By "economic ownership," we will generally refer to the economic returns associated with shares. Strictly speaking, economic ownership includes related rights, such as those associated with appraisal. [FN16] This ownership can be achieved directly by holding shares. Appraisal and other related rights aside, economic ownership can also be achieved indirectly by holding a "coupled asset" that conveys returns that relate directly to those on the shares. Economic ownership can be either positive (the same direction as the return on shares), or negative (the opposite direction from the return on shares).

    Someone who owns voting shares has "full ownership": he has all of the rights and obligations associated with shares, including voting rights and economic rights. Putting aside the other rights we discuss in Part V, one can think of full ownership as consisting of voting ownership plus direct economic ownership. But it is also possible to decouple these two rights and have voting-only ownership or economic-only ownership. Economic-only ownership may or may not be hidden (i.e., exempt from the disclosure rules that would apply to full ownership, and not voluntarily disclosed), and may or may not be accompanied by morphable voting rights. [FN17]

    Decoupling voting and economic rights often depends on combining full ownership of shares with ownership of a coupled asset. Coupled assets include derivatives (such as options, futures, and equity*638 swaps), contractual rights (such as rights under a share loan agreement), and other financial products, which convey an economic return that relates directly to the return on shares. The coupled asset affects economic ownership, but leaves voting rights unchanged. In principle, one could also decouple voting and economic rights by holding shares and having a side contract relating to the votes, but this is not common in practice. By "net economic ownership," we refer to a person's combined economic ownership, based on both host shares and coupled assets. The level of net economic ownership may depend on share price. For example, if a company's shares trade at $50, and an executive has a collar that caps upside at $60 and downside at $45, the option "deltas" (and thus the executive's economic exposure to share price changes) depend on share price.

    We refer to anyone who has substantially greater voting than economic ownership as an "empty voter." Voting can be partially or fully empty. For example, an executive who hedges economic exposure to the company's shares with a zero-cost collar will often be--depending on the executive's securities and stock option holdings--a partially empty owner. We similarly refer to anyone who has substantially greater economic than voting ownership, where that extra ownership falls outside ownership disclosure rules, as a "hidden owner." If the hidden owner likely has effective access to voting rights when needed, he has "hidden (morphable) ownership."

    Hidden (morphable) ownership can also be seen as one form of "soft parking" of shares: shares held in friendly

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                      Page 11
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

hands to avoid regulatory or other burdens of direct ownership, yet providing access to the desired shareholder rights. Here is a soft definition of soft parking of shares. One party (the "parkee") holds shares and thus apparent voting rights, but limited or no economic ownership. The parkee is informally expected to either (1) vote as another party (the "parker") would want, or informally requests, or (2) arrange, if the parker requests, to unwind the parking transaction and return the voting rights to the parker. The parkee will often be a derivatives dealer or bank. The parker could be an outside shareholder, an insider, or a corporation. If a corporation or its insiders are the parker, the parked shares will often be the corporation's own shares, but could be shares of a subsidiary or transaction counterparty. Economic ownership corresponding to the parked shares will often but not always reside with the parker. In corporate decoupling, for example, the company may have effectively repurchased its own shares; there will then be no true economic owner.

   **\*639** Soft parking can serve a number of purposes, including: (1) letting the parker avoid disclosure of economic ownership, voting ownership, or both; (2) especially for corporate decoupling, ensuring that shares retain voting rights, which they might lose in the parker's hands; (3) avoiding other regulatory requirements, such as mandatory bid rules; and (4) tax arbitrage, if dividends or other cash flows on shares are more lightly taxed for the parkee than for the parker. Its boundaries are fuzzy. As informal expectations on how the parkee will act become firmer, and potentially enforceable, soft parking shades into hard. As the parkee's economic ownership increases, the parking analogy loses it force.

   Investors may also hold "related non-host assets"--assets, often securities of another company, whose value is related to the value of the host company's shares. For example, if the host company plans to acquire a target in a share-for-share merger with a fixed exchange ratio, the target's shares are a related non-host asset. The combined return from host shares, coupled assets, and related non-host assets produces an "overall economic interest" in taking actions that affect firm value, which can be positive, zero, or negative.

   Empty voting, as we have defined it, includes some longstanding arrangements for concentrating voting power. These include dual-class capital structures, with one class holding greater voting power relative to economic rights, and pyramids and circular ownership structures, which concentrate effective voting control in the hands of the person, family, or group at the top of the pyramid or the "center" of the circular ownership structure. The implications and regulation of these techniques are beyond the scope of this Article. [FN18]

   More subtly, one might see proxy voting advisors, such as Institutional Shareholder Services (ISS), as empty voters as well. These advisory services have no direct economic interest in shares, yet wield substantial voting power through their advice to institutional investors. Voting advisors may also have conflicts of interest (e.g., ISS and its affiliates sell services to both investors and companies). ISS's advice reaches investors controlling $25 trillion in equities, and about 25% of those investors routinely cast their votes according to ISS guidelines. Case-by-case exceptions are possible but not common. [FN19] Thus, ISS and **\*640** other voting advisors, as a practical matter, have significant voting ownership, but no economic ownership. But they are empty voters only at the sufferance of their principals. Analysis of ISS and other voting advisors as empty voters is also beyond our scope.

C. Shareholder Rights: Empty Voting

   1. Hedge Funds and Other Shareholders

   Hedge funds and other outside shareholders largely accomplish empty voting through the use of coupled assets (such as equity derivatives or stock loan agreements), as well as through related non-host assets. Since we have detailed these strategies in Decoupling I, we touch on their mechanics only lightly.

   One core strategy for empty voting is to hold shares but hedge the economic return on the shares, such as through a short equity swap position, buying put options (or selling call options), or a short position on a single

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                    Page 12
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

stock future. Absent a major change in doctrine, the strategy of equity derivatives as coupled assets would not run afoul of corporate law rules limiting vote buying.

Corporate law seeks to limit the decoupling of economic interest and voting power through the classic common law prohibition on "vote buying," defined to be the transfer of a shareholder's voting rights, shorn of empty economic interest, to a third party. [FN20] The current Delaware attitude is more tolerant. In the leading 1982 case of Schreiber v. Carney, [FN21] the court held that each vote buying arrangement "must be examined in light of its object or purpose"; [FN22] vote buying was permitted if it satisfied a test for intrinsic fairness. [FN23] As under the common law, Delaware considers vote buying to involve a vote seller who transfers the voting rights to a vote buyer. [FN24]

*641 A new vote buyer using equity derivatives can acquire voting rights through a two-step process in which neither step involves a transfer of voting rights: first, purchase shares; and second, shed the economic interests associated with those shares. The share purchaser is left holding only the voting rights associated with the economics.

Consider the Stark/M-Flex situation. Stark purchased M-Flex shares and entered into equity derivatives, which hedged its economic exposure. Neither step involved either a vote seller or a transfer of voting rights. Instead, these transactions involved a share purchaser and a transfer of economic interests. The decoupling is achieved by two normal market transactions--a share purchase and a hedging transaction--rather than a single suspect purchase of votes.

An alternate empty voting strategy is known as record date capture. (Below, we refer to the voting record date simply as the "record date," except when we need to distinguish the voting record date from the dividend record date.) This strategy involves borrowing shares in the stock loan market just before the record date and returning the shares immediately afterwards. Under standard borrowing arrangements, the borrower has no economic exposure to the company. The borrower contracts with the share lender to (1) return the shares to the lender at any time at the election of either side, and (2) pay the lender an amount equal to any dividends or other distributions the borrower receives on the shares. Taxes aside, this loan agreement (a "coupled asset" in our framework) leaves the borrower holding votes without economic ownership, while the lender has economic ownership without votes.

Stock borrowings originally developed to facilitate short selling. The borrower sells the borrowed shares and ends up with negative economic ownership and no voting rights. The buyer of the sold-short shares has full ownership; the share lender has economic-only ownership. Decoupling still exists, but there is no empty voter. But omit the short sale, and stock borrowing becomes a vehicle for empty voting. [FN25]

A subtle yet central aspect of these empty voting strategies is that they do not directly require market trading of shares. Thus, they can often be carried out, rapidly and on a large scale, with little impact on share price. Consider the share borrowing strategy. The empty voter borrows shares, and votes simply move from the share lender to the empty voter. No shares are bought or sold. This strategy will affect voting only if the borrowing is on a scale which affects the ability of short-sellers or hedgers to ply their trade. More complex alternatives can also produce little or no direct impact on share trading. Consider the strategy (buy shares, hedge with equity swaps). An empty voter can buy shares from a dealer and simultaneously take the short side of an equity swap with the same dealer. The dealer will want to hedge. A direct way to do so is to borrow the shares (with no share trading) at the same time it creates the swap. The empty voter ends up with hedged share ownership, the dealer is hedged as well, and votes have again moved from the share lender to the empty voter, without either the investor or the dealer having bought or sold any shares. The equity swap transaction itself is private and undisclosed.

The borrowing directly affects the share lending market, but for most companies, at most times, this market includes a large pool of borrowable shares, available at a quite modest price, on the order of 20 basis points per year. [FN26] One constraint on the scale of these approaches is the number of shares that can be readily borrowed. Hard

156 UPALR 625                                                                    Page 13
156 U. Pa. L. Rev. 625
(Cite as: 156 U. Pa. L. Rev. 625)

numbers are not available, but a conservative estimate is that for most large U.S. public companies, at most times, 20% or more of the outstanding shares can be readily borrowed. [FN27]

Empty voters can, of course, trade shares between the record and voting dates. In some cases, their voting position will let them profit from this trading. Efforts to model the efficiency properties of empty voting are only beginning, but one recent model suggests that this ability to trade can sometimes be efficiency enhancing, and sometimes not. [FN28]

2. Soft Parking by the Corporation Itself

In Decoupling I, we discussed how both outside and inside shareholders can engage in empty voting. Two of our examples involved corporations themselves doing so, but we did not analyze this systematically. In hindsight, we should have done so. In fact, corporations can use decoupling techniques to allow insiders or other friendly third parties to vote shares with partial or no economic exposure. Often the goal is to ward off changes in control. In doing so, corporations are **643** doing indirectly what corporate law forbids doing directly--owning and voting the company's shares in itself. Corporations can also use a hedged position in another company to influence the outcome of a takeover bid or other major transaction.

Most strategies for corporate empty voting are variants on the soft parking theme we discussed above for hidden (morphable) ownership. Company insiders arrange for voting ownership to be held by someone else, and ensure that the someone else has incentives to vote pro-management. Usually, the voteholder is not formally obliged to vote as management directs--that would invite disallowance of the votes under corporate law. Incentives and informal understandings do the work instead. The corporation can soft park their shares with a variety of people, in a variety of ways. A nonexhaustive list of examples includes equity swaps, forward transactions, share loans to trustworthy stock borrowers, ESOPs, and issuance of restricted shares. We discuss these in turn.

One strategy involves the corporation acquiring economic ownership of its shares through an equity swap or other equity derivative contract with a derivatives dealer or other professional friend. In substance, the corporation has repurchased its own shares. But the shares remain outstanding and votable. By whom?

The dealer, in all likelihood. The dealer will be short on the swap. It can hedge its economic risk by holding matched shares, much as if it entered into a similar swap with an outside investor. The structure of this transaction is the same as the hidden ownership structure we discussed above for outside shareholders--except that, unlike an outside shareholder, the corporation should be seen as having repurchased its shares, rather than being an economic owner. Formally, a corporation's own shares, when owned by the corporation, are no longer considered to be outstanding. [FN29] If the dealer will vote as directed by the corporation, the corporation can be seen as an empty voter, with hidden, morphable voting rights. The dealer becomes the corporation's voting agent. The transaction could well be large; the principal limit is the corporation's financial ability to repurchase its own shares.

The dealer's incentives to vote as its client would want are similar to the hidden ownership scenario. The dealer wants to stay on good **644** terms with this client and preserve a reputation for treating clients well. The incentives that give outside investors morphable voting rights are the same or perhaps stronger. The dealer will presumably understand that the company is acquiring swaps rather than shares for the purpose of leaving votes in friendly hands. The dealer would frustrate the transaction's purpose if it were to either hedge with anything but matched shares, or fail to vote as its client wants. A further factor is the dealer's need to sell the matched shares when the swap expires; this can be especially important if the shares are thinly traded or the swap is related to a sizeable block of shares. The company will be the most likely and sometimes the only plausible purchaser of the shares. By voting against management, the derivatives dealer could undermine its ability to unwind the transaction--and for what? The dealer has no economic stake in the company and doesn't really care how the vote comes out.

156 UPALR 625
156 U. Pa. L. Rev. 625
(Cite as: 156 U. Pa. L. Rev. 625)

This soft parking strategy has advantages over two similar defensive strategies sometimes used by companies to defend against outside attacks: stock buybacks and sale of shares to a "white squire." [FN30] As with a stock buyback, the company's share price may increase, making the outside bid less attractive. But, unlike a stock buyback, the purchased shares can be voted. Suppose, for example, that insiders control 25% of a company's shares. A buyback of another 20% will leave them owning 25%--a stronger but not impregnable position. Soft parking of another 20% will give them 40% of the votes, and thus come much closer to full control.

An alternative is to place stock directly into friendly hands: a so-called "white squire" who is expected, and sometimes contractually required, to support management, at least for a period of time. However, here too, soft parking can have advantages. First, it is quick. It takes time to identify, negotiate, and consummate a transaction with a white squire, and the effort might fail altogether. Second, the white squire transaction is more likely to require public disclosure. [FN31] Third, the New York Stock Exchange generally requires shareholder approval for a company to issue more than 20% of its shares in this context, so *645 white squire transactions typically remain below this threshold. [FN32] There is no comparable shareholder approval rule for derivatives transactions. Finally, white squires may not remain faithful.

There are potential risks to this strategy. First, shares in the hands of the derivatives dealer could be deemed akin to shares in the hands of a subsidiary or other entity controlled by the corporation, in which case they could not be voted. [FN33] But this issue has not been litigated and the applicability of these analogies is far from clear. [FN34] Second, takeover defenses are subject to judicial scrutiny. The likely standard of review would be that of Unocal Corp. v. Mesa Petroleum Co. and Unitrin, Inc. v. American General Corp. Under the Unocal test, as refined in Unitrin, a defensive action cannot be coercive or preclusive, and must otherwise fall within a range of reasonableness as a response to a perceived threat. [FN35] A change of control transaction must meet the stricter standard of Revlon, Inc. v. MacAndrews & Forbes Holdings, but the informal nature of soft parking, even if it conveys effective control, might well let it escape Revlon scrutiny. [FN36]

We are not yet aware of U.S. corporations employing this equity-swap strategy, but it is used in Europe. We are aware of one major derivatives dealer using PowerPoint outlines to market such strategies to European corporations. In addition, an effort to park treasury shares with a dealer (Barclays Bank) formed part of Portugal Telecom's successful defense against a 2006 takeover bid by its smaller rival, Sonaecom.*646[FN37] As part of its defense, the board of Portugal Telecom also offered to spin off its affiliate, PT Multimedia. A press report noted that Portugal Telecom held 58% of PT Multimedia's shares directly and "controls also another 10 pct, which are in the hands of British Barclays, in the scope of two 'equity swap' contracts." [FN38]

Other variations on the soft parking theme are also possible. A simple forward transaction with a friendly shareholder can also do. Consider the 1994 proxy fight between the Union Bank of Switzerland (UBS) and activist Martin Ebner. [FN39] UBS reportedly entered into forward contracts with two large shareholders, under which UBS would buy these shareholders' UBS shares soon after a critical stockholders' meeting. The economics were equivalent to an immediate repurchase of shares, plus a short-term loan from the sellers to UBS. However, the voting rights remained with the sellers, at least one of which was expected to vote as UBS wanted. [FN40]

Several additional soft parking strategies are based on the use of "treasury shares"--shares that a company has repurchased, which it cannot directly vote. The company can either (1) "sell" the shares to a friendly dealer, while taking back an equity swap or otherwise protecting the dealer against loss; or (2) simply lend the shares to a friendly holder. Consider share lending. The borrower would be an empty voter, serving as the agent of the corporation. There are no cases on point, but as long as the borrower is not contractually bound to vote as the lender's management wishes, its votes might well count. We as yet *647 know of no significant U.S. examples, but this form of soft parking has been used a number of times in Europe.

In the summer of 2007, OMV, an Austrian oil and gas firm, raised its stake in its Hungarian competitor, MOL, from 10% to 18.6%, and soon thereafter launched a takeover bid. [FN41] As a defensive measure, MOL launched a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                    Page 15
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

massive stock buyback program. By late August, MOL had bought back nearly half (48.8%) of its own previously outstanding shares, with 7.8% held directly and another 41% lent to two Hungarian banks. MOL spent more than $2 billion buying itself.

Decoupling played a critical part in MOL's defense. Under Hungarian law, a firm cannot vote its own shares. [FN42] MOL avoided this limitation by lending most of the repurchased shares to the two banks. The banks were nominally free to vote as they wished but could not sell the shares and were widely expected to vote them as MOL management wished. OMV said as much publicly in September 2007, when it announced an offer to purchase MOL shares. OMV referred to "MOL management's effective control of shares in MOL which many in the financial markets believe now amounts to control over approximately 40% of the shares established through the use of various structural arrangements (a situation that has not been refuted by MOL)." [FN43]

In the Netherlands, corporate soft parking has been common, at least until recently. One example involves the issuance of shares to a company-controlled foundation, which then sells depositary receipts **\*648** to the public. [FN44] The depositary receipts are nonvoting; the public ends up with economic ownership while the foundation retains the voting rights. Dutch firms have also granted to a company foundation a call option, which the foundation can exercise to acquire shares and thus voting rights if a threat to control arises. [FN45] In 2006, for example, two hedge funds acquired 31% of Stork NV. In response, the Stork Foundation exercised an option (granted in 1990) to acquire preference shares with a high ratio of votes to economic rights; the preference shares represented just less than 50% of Stork's total voting rights. The Dutch courts disallowed the issuance. [FN46]

3. Employee Stock Ownership Plans; Restricted Stock Plans

A company can also arrange for friendly votes through ESOPs and like plans, and by granting restricted shares to its executives. Employees who own shares can be expected to support management against a hostile takeover, because they fear a threat to their jobs (rightly or not). [FN47] One recent study estimates that "each additional percentage point of employee ownership reduces the annual probability of takeover by 0.44 percentage points." [FN48]

How, though, does employee ownership relate to empty voting? There are two principal possibilities. Consider ESOPs first. The term covers a variety of arrangements, some subject to the Employee Retirement Income Security Act (ERISA), others not and hence offering greater flexibility. [FN49] The company can simply allocate shares to employees**\*649** over time as the shares vest. If so, there would be no empty voting. But a company can also contribute a block of stock to an ESOP, with the shares to vest over an extended period. In this arrangement, all shares carry voting rights, even though employees economically own only the vested shares. There are then two common choices for how these shares are voted. In the first approach, the trustees for the ESOP decide how to vote these shares. Those trustees can be anyone, including company managers. The trustee becomes an empty voter, and will predictably vote pro-manager. This is similar to soft parking except that the structure is long term and the shares will eventually vest in employee hands.

In the second approach, the ESOP trust agreement provides that unvested shares will be voted proportionately to the votes cast by employees with respect to vested shares, and perhaps that unvested shares will be tended into a tender or exchange offer in the same proportion as vested shares. [FN50] Here the employees are partially empty voters--they have more voting power than economic ownership. The Department of Labor has found proportional voting to be reasonable under ERISA. [FN51]

"Leveraged" ESOPs, which have more total shares than vested shares, have long been used as a takeover defense, though perhaps less often once poison pills became the dominant defense. [FN52] One notable example was NCR Corporation's (NCR) attempt to defeat a takeover by AT&T in 1991. NCR's board responded to the AT&T bid by adopting an ESOP which held 8% of NCR's total votes; each employee received 1 vested share and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

228 unvested shares, which would vest over the next 25 years. [FN53] The effort failed; the Ohio court found that the adoption of the ESOP was "not related to benefits objectives but, rather, was an attempt to place as large a number of shares into friendly hands as possible." [FN54]

**\*650** Some additional examples follow. In the United States, as with any takeover defense, the creation or expansion of an ESOP will be judged under the Unocal standard, discussed above for soft parking. [FN55] Some were allowed by the courts; others were not.

     • In 2002, Quanta Services adopted an ESOP in response to Aquila's takeover attempt. [FN56]
    •In 1999, in response to LVMH's acquisition of 34% of the outstanding shares of Gucci, Gucci established an ESOP and issued an equal number of shares to it. [FN57]

    •In 1989, Dunkin' Donuts created an ESOP to respond to a possible hostile takeover bid by Kingsbridge Capital Group. [FN58]

    •In 1988, Polaroid adopted an ESOP involving 14% of its shares in response to a takeover bid by Shamrock Holdings. [FN59]

    •In 1988, Macmillan attempted (unsuccessfully) to fend off Maxwell Communications by, among other things, contributing shares to an existing ESOP and replacing the trustee with members of management. [FN60]

A second possibility for empty voting arises from grants of restricted shares, often principally to managers and key employees. [FN61] The shares are "restricted" because they vest over time, typically several years; unvested shares are usually forfeited if the employee leaves. [FN62] Both vested and unvested shares usually carry voting rights. [FN63]**\*651** Thus, the recipient has more voting rights than economic interest, leading to partially empty voting. [FN64] As restricted stock plans grow in popularity relative to stock options, these plans could become a significant source of empty voting. [FN65]

4. Empty Voting of Another Company's Shares

A further possibility involving corporate empty voting involves two firms whose fortunes are linked in some way--acquirer and target are the most obvious possibilities. First, any time an acquirer needs a shareholder vote to complete an acquisition, the target and its shareholders may try to influence the acquirer's vote by obtaining votes without accompanying economic ownership. The Perry-Mylan incident, discussed in Decoupling I, involves such an effort by a target shareholder. [FN66] But targets could use similar strategies themselves, either directly or through friendly investment banks. No disclosure rules directly address this possibility, so it might well remain hidden, especially if done indirectly.

It is also possible for the acquirer or its shareholders to buy target votes. In Decoupling I, we described the effort of Sears Holding to influence the votes on shares of its Sears Canada subsidiary, ostensibly held by minority shareholders, in order to obtain the majority-of-minority approval it needed under Canadian law to complete a freezeout. [FN67] In Germany, Lindner Holding sought in 2006 to use borrowed shares in a subsidiary to reach the 95% threshold under German**\*652** law needed to complete a freezeout. The German courts did not allow the borrowed shares to count toward the threshold. [FN68]

More generally, activist shareholders fairly often oppose buyouts and freezeouts, seeking a higher price. Do some acquirers, when facing active opposition, directly or indirectly buy some target votes, using one or more of the strategies we have outlined? Do deal opponents sometimes buy votes? Rumors swirl, but no one knows for sure how often this happens.

The recent high-profile takeover battle for ABN Amro offers a twist on these scenarios. There were two bidders: Barclays (U.K.) and a consortium of Fortis (Belgium), Royal Bank of Scotland, and Santander (Spain). [FN69] Fortis needed shareholder approval to issue shares to finance its part of the consortium's bid. Some traders believed that ABN Amro borrowed Fortis shares so it could vote against the financing. One trader reported receiving an "unlimited borrow" request by ABN Amro for Fortis shares, and said that Fortis borrowing levels "went through the roof." [FN70] ABN Amro denied that it was borrowing Fortis shares on its own behalf. The true facts are unclear, but it seems likely that many investors borrowed Fortis shares in order to vote on the financing.

D. Shareholder Obligations: Avoiding Disclosure

1. Outside Shareholders

Thus far, we have focused primarily on how decoupling has affected shareholder rights, most notably voting rights. Decoupling can also affect shareholder obligations, such as the obligation to disclose large ownership stakes. The United States and many other countries require large shareholder disclosure, in various forms. [FN71] These disclosure*653 rules often depend on possession of voting rights beyond specified thresholds. Thus, in the United States, a 5% (voting ownership) shareholder must file a Schedule 13D or 13G, and all institutions must report their shareholdings quarterly on Form 13F. Physically settled derivatives count toward the 13D/13G threshold, but cash-settled derivatives do not. In contrast, economic-only ownership usually does not count toward triggering disclosure, and may not need to be disclosed even if a filing is otherwise required. [FN72]

This leads to a simple avoidance strategy, which we discuss in Decoupling I and summarize above: an investor can hold economic-only ownership, through equity swaps or other derivatives. As we discussed above, this ownership is often morphable--the investor has no official voting rights, but can acquire them, to high probability, when needed.

2. Insiders

In contrast to outside shareholders, insiders--directors, officers, and 10% shareholders of U.S. public companies--generally cannot use decoupling to avoid disclosing their economic ownership stakes. These persons are subject to disclosure requirements under Exchange Act section 16. Section 16, in contrast to Schedule 13D, Schedule 13G, and Form 13F, focuses on economic ownership, and will thus capture equity swaps and other equity derivatives, whether physically settled or cash-settled. [FN73]

Decoupling can, however, be helpful in two ways. First, for 10% shareholders, the reporting obligation includes economic ownership, but the 10% ownership threshold is based on the same concept of beneficial ownership used in Schedule 13D, which focuses on voting power. Thus, a large shareholder can avoid becoming covered by section 16 by holding equity swaps instead of shares. Second, the disclosure is on an obscure filing--it may well be buried in the flurry of insider ownership reports under Section 16. There can be dozens or hundreds of such reports per firm per year. Many investors rely on *654 the firm's annual proxy statement to indicate inside ownership--yet proxy statement disclosure is again focused on voting rights. [FN74]

3. The Corporation Itself

We have discussed above how firms can engage indirectly in empty voting. One strategy involves the firm holding equity swaps on its own shares. Here, one can see the corporation as economically having repurchased its own shares, while leaving the voting rights outstanding and in friendly hands. What is hidden is the firm's repurchase of its own shares. All else is similar to shareholder use of equity swaps to create hidden (morphable) ownership. In the share lending variant of corporate soft parking, in contrast, the company's ownership of its own shares is disclosed, but not the existence of voting rights, which are normally extinguished by a repurchase, but

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                                          Page 18
156 U. Pa. L. Rev. 625
(Cite as: 156 U. Pa. L. Rev. 625)

reappear when the company lends the shares to an outsider.

For both variants, we discuss in Part III.C.1 the rules that govern corporate disclosure. Depending on context and amount, these strategies will often fall outside the usual corporate disclosure rules, which focus on the company's transactions in its own shares.

## II. Real World Significance of Decoupling

Is decoupling merely a curiosity? We often get this question in the United States, but seldom in Europe. We believe that there is now substantial evidence that decoupling is important and common, and that it can materially affect the control of major corporations throughout the world. Its public visibility--and perhaps its actual use--has thus far been less in the United States than in Europe. Why this is so is not clear. The techniques that work there largely will work here as well. Our investors, insiders, investment bankers, and lawyers are as clever as European ones--indeed, the investors, bankers, and lawyers are often the same firms and sometimes the same people. Perhaps U.S. market participants are better at keeping what they do hidden. Perhaps they have thus far been more cautious. Many U.S. firms have poison pill defenses, which limit the value of acquiring a large economic-only position by impeding the later acquisition of voting rights. But U.S. examples exist--and more will surely emerge.

*655 In this Part, we provide two kinds of evidence of the worldwide importance of decoupling. First, we offer a case study of Switzerland, which illustrates decoupling's worldwide characteristics and its potential to influence takeover battles for major firms. What has happened in Switzerland can happen elsewhere, including the United States. Second, we provide a cumulative table of worldwide decoupling examples, which is greatly expanded compared to a similar table in Decoupling I.

A. Swiss Stealth Takeovers, 2005-2007

Airport novels are fun: dark intrigues, financiers wealthy beyond imagining, complex schemes, and the control of huge enterprises--if not nations--hanging in the balance. For the Swiss, much of this occurred for real in 2007. [FN75] Sulzer, a major engineering firm, and other flagship corporations discovered that deep-pocketed foreign investors had secretly acquired massive stakes--32% in the case of Sulzer--with a takeover bid soon to follow. With respect to Sulzer, these foreigners--two Austrians and a Russian oligarch--had been helped by a major Swiss bank, Zurcher Kantonalbank (ZKB). Similar dramas in 2005-2007 involved Saurer, first versus Laxey Partners, a hedge fund, and later versus this Austro-Russian group (which acquired Laxey's stake in Saurer); Ascom versus the Austrians alone (Victory Industriebeteiligung (Victory Industrial)); Converium versus Scor (its French competitor); Implenia versus Laxey Partners; and Unaxis versus Victory Industrial. The real or imagined presence of Victory Industrial may have caused jumps in the shares of many other mid-sized Swiss industrial companies. [FN76]

Let us look at these examples, which all involve hidden (morphable) ownership, starting with Sulzer. As background, at the beginning of 2007, Swiss rules required disclosure of large ownership stakes but focused on possession of voting rights. Public disclosure was required if an investor's holdings of shares exceeded 5% of the shares. The rules also captured physically settled call options, but not cash-settled derivatives.

Sulzer/Victory Industrial-Vekselberg (2007). The Swiss business community and regulators were shocked when an Austro-Russian group *656 announced it had secretly amassed a 32% stake in the engineering firm. The group proceeded to bid for and acquire Sulzer. Meanwhile, the news created an uproar resulting in the resignations of the CEO and head of investment banking at ZKB and a police raid on Deutsche Bank's Zurich offices. [FN77]

Viktor Vekselberg, a Russian oligarch and billionaire investor, and his company Renova joined forces with two prominent Austrian raiders, Georg Stumpf and Ronny Pecik, and their company Victory Holdings. Their investment vehicle, named Everest, used cash-settled call options, provided primarily by ZKB and Deutsche Bank, to amass a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

large stake in Sulzer. When it was ready to disclose its stake and make a bid, it unwound the swaps and obtained these dealers' matched shares. In early 2007, Sulzer's shares rose amid speculation that Victory was secretly acquiring shares. Finally, Everest announced in April that it owned 18% of Sulzer's shares and held options to acquire another 14%--32% overall. ZKB then came under fire for participating in Everest's secret build-up in ZKB's own long-time client, Sulzer. The chief executive of ZKB and various department heads resigned or were fired. The bank's board stated that, while ZKB would continue derivatives activity, it would not knowingly participate in hostile takeovers of the bank's clients.

Ascom/Victory Industrial (2007) and Unaxis/Victory Industrial (2005). Earlier in 2007, Victory announced it had acquired a 20% stake in Ascom, a Swiss electronics systems company. The stake was composed of 15% shares and 5% call options. Victory later raised its stake to 25%. Here too, Ascom's share price rose before the announcement on speculation that Victory might make a bid. Several months later, and after Ascom's share price had nearly doubled, Victory sold its stake to ZKB. [FN78]

Victory first used decoupling strategies to build a hidden stake in 2005 at Unaxis, a Swiss technology company. [FN79] Victory secretly acquired*657 a 30% stake in Unaxis using call options. Victory then replaced the entire Unaxis board, except the CEO, and changed the company's name to OC Oerlikon. In July 2007, under new Swiss disclosure regulations, Victory announced it held 68% of Oerlikon--30% through shares, 21% in physical-delivery call options, and 17% in various cash-settled derivatives. The SWX Swiss Exchange is reportedly investigating Oerlikon for possible breaches of disclosure and publication rules.

Saurer/(Laxey Partners and Later Victory Industrial) (2006-2007). Hidden (morphable) ownership tactics were used twice with Saurer, the Swiss machinery maker. First, hedge fund Laxey Partners announced a previously undisclosed 13% stake, through a combination of shares and options. [FN80] Laxey demanded various governance changes and built its stake to 24%. Unaxis separately used cash-settled options to acquire a further 21%, bought Laxey's stake, and emerged as a 45% holder, without prior disclosure. Unaxis (now Oerlikon) then announced a tender offer for the remaining Saurer shares. The Saurer board accepted a revised offer.

Implenia/Laxey Partners (2007). Laxey Partners again built a large stake in a Swiss company. Laxey announced in April 2007 that it held 23% of Implenia, a construction group. The stake was likely acquired initially through cash-settled options. [FN81] Implenia asked regulators to investigate how Laxey had built its stake without disclosure. Implenia also refused Laxey's attempts to register Laxey's holding of more than 4.9% of its shares, citing the Swiss Lex Koller law, which prevents foreigners from buying Swiss real estate. Laxey then sued Implenia and *658 forced Implenia into mediation. It remains to be seen whether Laxey, or someone else, will acquire Implenia.

Converium/Scor (2007). Scor SA, a French reinsurer, announced in February 2007 that it had acquired 33% of Swiss rival Converium Holding AG, and planned to acquire the Swiss company. [FN82] Scor said it had purchased 8% through direct market purchases and the balance through share purchase agreements. Patinex, the investment vehicle for Swiss financier Martin Ebner, acknowledged it had accumulated and then sold to Scor close to 20% of Converium, in stock and options. The Swiss Federal Banking Commission later ruled that Ebner and Scor had acted together in acquiring Converium shares, but this ruling had little effect, since Converium later agreed to Scor's takeover.

B. The Swiss Regulatory Response

Prior to 2007, Swiss disclosure rules were similar to current U.S. rules and required disclosure if an investor held more than 5% voting ownership in a Swiss public company. Physically settled call options counted toward the threshold, but cash-settled options and other derivatives did not. As we have seen, this led to widespread use of hidden ownership, which then morphed into access to shares and voting rights when needed. [FN83]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*659** In response to the events discussed above, the Swiss Federal Banking Commission amended its rules, effective July 1, 2007, to also require disclosure of cash-settled call options. Meanwhile, the Swiss Parliament rapidly adopted legislation, effective December 1, 2007, to reduce the disclosure threshold to 3% and to require disclosure of holdings of any financial product that would enable the holder to acquire voting rights with respect to a potential public takeover. In November 2007, the Commission, among other things, indicated that it would require additional disclosure of securities lending. [FN84] This new regulatory regime should quell stealth takeovers, but leaves empty voting not directly addressed.

C. The Worldwide Scope of Decoupling

The Swiss examples of stealth takeover bids are dramatic. But what about the rest of the world? How much decoupling activity is there? Without effective disclosure, we don't know. We can, however, collect examples--the visible tip of the potential iceberg. Table 1 provides such a list. It expands on a similar table in Decoupling I. We then had 21 examples; we're now over 80.

This number seemingly grows almost anytime one of us travels somewhere, gives a talk, and asks the audience for examples we are not aware of. Moreover, as we discuss in Part III.B, the U.K. Takeover Panel has determined that after it changed its disclosure rules to cover cash-settled derivatives, the number of pertinent ownership disclosures increased by about 19% over the period November 7, 2005, to May 31, 2007. Our own preliminary search for these disclosures for May 2007 produced 13 instances of disclosed decoupling for that single month.

The supply and demand factors that promote decoupling remain in place. The emergence of huge sovereign wealth funds, and their increasing proclivity to take large stakes in Western public corporations, may add to this trend. Today, sovereign wealth funds hold $1.5-**\*660** 2.5 trillion in assets-- comparable to hedge funds. [FN85] This level is growing rapidly, fueled by high oil prices. Borse Dubai used decoupling as part of its 2007 takeover bid for OMX Group, the Swedish stock exchange operator, apparently in violation of both Swedish and British rules. [FN86]

**\*661** Table 1: Worldwide Significance: Cumulative Table of Decoupling Examples

This table lists, roughly in reverse chronological order, the known (or rumored) instances of decoupling of economic and voting ownership we were able to collect from a combination of public news stories, regulatory studies, and anecdotes provided by readers and workshop participants. An "X" in the "hidden ownership" column, without more, indicates that ownership was hidden; "X (disclosed)" indicates economic-only ownership that was not hidden. The table generally excludes cases of disclosed decoupling under the new U.K. Takeover Panel rules. The table is an expanded version of a similar table in Decoupling I [FN87] and reflects the examples known to us as of year-end 2007. It is © 2008 Henry T. C. Hu.

| No. Date | Host Company | Country | Vote Buyer or Hidden Owner | Empty Voting | Hidden Ownership | Other Goals | Coupled or Related Asset | Description | Documentation |
|---|---|---|---|---|---|---|---|---|---|
| 82 on-going | many compan | U.S. | company itself | | X | | ESOP | Empty voting | See Part I.C.2. |

| No. | Timing | Scope | Jurisdiction | Entity | X | X | Description | Description | See |
|---|---|---|---|---|---|---|---|---|---|
| | | ies | | | | | | of non-vested shares. | |
| 81 | on-going | many companies | U.S. | company itself | X | | restricted stock | Empty voting from being able to vote restricted shares. | See Part I.C.2. |
| 80 | on-going | many companies | various | insiders | X | | various | Insiders reduce economic stake by hedging, retain voting control | See footnote.[FN][FN88] |
| 79 | on-going | some companies | U.S., U.K. | insiders or company itself | X | | various | Insiders expect close vote, arrange for friendly investors to engage in record date capture. | See Part I.C.2. |
| 78 | | | | | | X | re- | | See |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 2007 | Turkcell | Turkey | Alfa Group | | purchase agreement | Arbitration panel orders Alfa to reduce stake in Kyivstar to under 5%; Alfa sells part of Turkcell (which owns part of Kyivstar) to Kazakh company, retains repurchase rights. | Part V.A. |
| 77 | 2007 | Endesa | Spain | Enel | Avoid regulatory limit on share position | equity swaps | Enel uses swaps to acquire 25% of Endesa, direct holding of 9.99% is under 10% regulatory limit. | See footnote.[FN] [FN89] |
| 76 | 2007 | Fortis | Netherlands | hedge funds | | share loans | Record date capture, | See Part I.C.4. |

156 UPALR 625 Page 23
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | (and rumors as to ABN Amro) | | | | | to influence Fortis's ability to raise funds to bid for ABN Amro. | |
| 75 | 2007 | ABN Amro | Netherlands | Royal Bank of Scotland | X | equity swaps, call options | Takeover bidder quietly increases stake from 4% to 8%, then discloses new stake. | See footnote.[FN90] |
| 74 | 2007 | OMX | Sweden | Borse Dubai | X | call options | Borse Dubai emerges with 28.4% of OMX, mostly through option agreements with hedge funds, competes with NASDAQ deal to buy | See Part III.A.2. |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625  
156 U. Pa. L. Rev. 625  
**(Cite as: 156 U. Pa. L. Rev. 625)**

OMX.

| 73 | 2007 | MOL | Hungary | MOL | X | | share loans | As defense to takeover bid, MOL buys 40% of own shares, lends them to Hungarian banks, which can vote them. | See Part I.C.2. |
| 72 | 2007 | Target | U.S. | Pershing Square (hedge fund) | X (disclosed) | Avoid short-swing profit recap-ture | call options, equity swaps | Pershing Square initially acquires 9.6% of Target, mostly through equity derivatives; later announces holding 9.97% in shares and 12.6% total economic stake. | See footnote.[FN91] |

| 71 | 200 7 | TD Ameritr ade | U.S. | Jana Partners , SAC Capital (hedge funds) | X | | uns pecified | Hed ge funds seek sale of compan y, advise it that they have 8.4% stake; no 13D filing. | See Part II.A. |
| 70 | 200 7 | Imp lenia | Swi tzerland | Lax ey Partners (hedge fund) | X | | cash -settled call options | Lax ey announ ces 23% stake in Impleni a; no prior disclosu re. | See Part II.A. |
| 69 | 200 7 | Con verium | Swi tzerland | Sco r (France ) | X | | cash -settled call options | Sco r acquire s 33% stake in Converi um as part of takeove r bid, without prior disclosu re. | See Part II.A. |

| 68 | 2007 | CVS Caremark | U.S. | broker votes in director election | X | | | record ownership | Broker votes of client shares reelect director Roger Headrick despite "vote no" campaign. | See footnote.[FN][FN92] |
| 67 | 2007 | Borders Group | U.S. | Spencer Capital Management | X | | | options | Spencer obtains 6.8% stake in Borders, about one-third of which is in form of options. | See footnote.[FN][FN93] |
| 66 | 2007 | Freeport-McMo-Ran and others | U.S., Europe | Atticus Capital (hedge fund) | X | | | unspecified derivatives | Atticus Capital discloses that it owns 6.4% of Freeport but had "long economic exposure" to 11.5% | See Part I.A. |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | because of equity swaps and other derivatives. |
| 65 | 2007 | Sulzer | Switzerland | Victory Industrial & Viktor Vekselberg | X | | cash-settled call options, otherderivatives | ZKB and Deutsche Bank provide derivatives to let investor group acquire 32% hidden position in Sulzer. | See Part II.A. |
| 64 | 2007 | Tribune | U.S. | Chandler family | X | | unspecified hedges | Chandlers own 20% of Tribune, support Zell merger proposal, expected to hedge economic interest but retain voting rights. | See footnote.[FN94] |

156 UPALR 625                                                                                  Page 28
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

| 63 | 2007 | London Stock Exchange (LSE) | U.K. | Heyman, Kinetics, and Paulson money managers | X (disclosed) | | equity swaps | Money managers hold 23% of LSE through equity swaps, support LSE against NASD AQ bid. | See footnote. FN [FN95] |
| 62 | 2007 | Ascom | Switzerland | Victory Industrial (Austria) | X | | cash-settled call options | Victory announces holding of 20% of Ascom, through shares and options. | See Part II.A. |
| 61 | 2007 | PT Multimedia | Portugal | Portugal Telecom (parent) | X | | equity swaps | Portugal Telecom holds 58% of PT Multimedia directly, another 10% through equity swaps with | See Part I.C.2. |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                 Page 29
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

Barclays.

| No. | Year | Issuer | Country | Counterparty | X | Type of derivative | Description | Reference |
|---|---|---|---|---|---|---|---|---|
| 60 | 2007 | Stork NV | Netherlands | company itself | X | | Company responds to Centaurus and Paulson by placing high-voting preferred shares with foundation. | See Part I.C.2. |
| 59 | 2007 | Stork NV | Netherlands | Centaurus and Paulson hedge funds | X | unspecified derivatives | Hedge funds holding 31% of Stork seek breakup; Stork claims they initially hid their ownership. | See footnote.[FN96] |
| 58 | 2007 | U.S. Global Investors | U.S. | un-specified hedge funds | X | | Company claims that share volatility "may | See Decoupling I. |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | be amplified" by hedge funds engaging in empty voting who oppose charter amendments. | |
| 57 | 2007 | Ceridian Corp. | U.S. | Pershing Square (hedge fund) | X (disclosed) | | OTC call options | Pershing makes initial disclosure because of share stake and later also acquires OTC call options. | See footnote.[FN97] |
| 56 | 2006 | Multi-Fineline-Electronix | U.S./Singapore | Stark (hedge fund) | X | | unspecified hedges | Freezeout by parent company; Stark holds large position in parent plus hedged position in sub, | See Decoupling I. |

156 UPALR 625　　　　　　　　　　　　　　　　　　　　　　　　　　Page 31
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

| No. | Year | Company | Country | Acquirer | | | | | Reference |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | supports freezeout. | |
| 55 | 2006 | EADS | | Lagardere | X | convertible bonds | Lagardere issues bonds convertible into EADS shares, retains shares and hence votes until bonds are converted. | | See footnote.[FN98] |
| 54 | 2006 | Lindner Holding KGaA | Germany | Lindner Holding GmbH (controlling share-holder) | X | complete freeze-out | share borrowing | Parent uses borrowed shares to meet 95% threshold for freezeout; effort blocked by Munich appeals court. | See Part I.C.4. |
| 53 | 2006 | Hyundai | Korea | Hyundai | X | avoid | re-purchase | Elevator | See Part V.A. |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Merchant Marine | Elevator | | | holding company rules | agreement | seeks votes to block takeover bid by Hyundai Heavy Industries; will be regulated as holding company if holds shares directly; arranges for IXIS Bank to buy shares and vote as directed. |
| 52 | 2006 Portugal Telecom | Portugal | Company itself | X | | unspecified hedges | Son aecom bids for Portugal Telecom, which places Treasury shares with Barclays; Barclays will vote against bidder, |

is protected against loss.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 51 | 2006 | Arcelor | Luxembourg | unspecified hedge funds | X | unspecified hedges | Hedge funds, supporting Mittal's bid, rumored to have acquired votes to oppose white squire deal with Severstal. | See footnote e.FN [FN99] |
| 50 | 2006 | Arcelor | Luxembourg | Company itself | X | Dutch foundation | Arcelor places shares of major subsidary with Dutch foundation as defense against Mittal takeover bid. | See footnote e.FN [FN100] |
| 49 | | | | | X | | | See |

156 UPALR 625                                                    Page 34
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

|  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
|  | 2006 | Telent PLC | U.K. | Polygon (hedge fund) |  |  | share borrowing and/or equity swaps | Polygon blocks acquisition of Telent, exercising voting power beyond its economic interest. | Decoupling I. |
| 48 | 2006 | Sears Canada | Canada | Pershing Square (hedge fund) | X (Scotiabank) | X (unsuccessful, by Pershing Square) | equity swaps | Sears Holdings wants to freeze out minority in Sears Canada subsidiary; Pershing Square holds equity swaps in Sears Canada; Scotiabank is dealer manager for parent's offer, refuses to unwind swap, plans to | See Decoupling I. |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | vote for offer. |
| 47 | 2006 | Saurer | Switzerland | Victory Industrial (Austria) | X | | cash-settled call options | Victory announces that it holds 45% stake-- 24% shares bought from Laxey Partners (see below) plus 21% through options--no prior disclosure, makes tender offer for rest of Saurer. | See Part II.A. |
| 46 | 2006 | Saurer | Switzerland | Laxey Partners (hedge fund) | X | | unspecified | Laxey announces in July 2006 that it holds over 25% stake in Saurer, no prior disclosu | See Part II.A. |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                 Page 36
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

re.

| 45 | 2006 | Euronext | France | Company itself | X | | | unclear | French government recruits French banks to hold "pool shares" of Euronext to defend against Deutsche Börse takeover bid. | See Part I.C.2. |
|---|---|---|---|---|---|---|---|---|---|---|
| 44 | 2006 | Henderson Investment | Hong Kong | Hedge fund(s) | X | X (short position) | | share borrowing + short sale | Parent Henderson Land proposed freezeout of its subsidiary, Henderson Investment. Hedge fund borrows enough shares to let it kill the freezeout, voted | See Decoupling I. |

156 UPALR 625                        Page 37
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | no, then sells short and profits when voting outcome is announced. | |
| 43 | 2006 | Time Warner | U.S. | Istithmar (private investment fund) | X | equity-linked notes | Istithmar acquires 2.4% economic ownership through equity-linked notes purchased from UBS, which agrees to "consult" its client before voting or disposing of its matched shares. | See footnote.[FN101] |
| 42 | 2006 | Phelps Dodge | U.S. | Atticus Capital (hedge fund) | X | options | Atticus becomes largest shareho | See Part I.A. |

lder in Phelps Dodge.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 41 | ~2005 | Confidential company | U.S. | Hedge fund(s) | | X | possible | ??? | Hedge fund holds 4.9% of shares, wants divestiture, rebuffed; 2 weeks later has 51% of votes, no apparent share accumulation (no market impact). | See footnote e.[FN] [FN102] |
| 40 | 2005 | Unaxis | Switzerland | Victory Industrial (Austria) | | X | | physically and cash-settled call options | Victory uses shares and options to accumulate 30% stake without prior disclosure. | See Part II.A. |
| 39 | 200 | OA | Rus | Leo | | X | | offs | Rei | See footnot |

156 UPALR 625                                                      Page 39
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 5 | | O Megafo n | sia | nid Reiman | | hore trust | man (Russia n telecom minister ) holds Megafo n shares through trust; his lawyer controls trust, claims to be benefici al owner. | e.[FN] [FN103] |
| 38 | 200 5 | We ndy's Int'l | U.S. | Pers hing Square (hedge fund) | X (disclos ed) | opti ons | Pers hing reports holding 9.3% stake, with more than 6% in form of options. | See footnot e.[FN] [FN104] |
| 37 | 200 5 | We ndy's Int'l | U.S. | Tria n and allied hedge funds | X (disclos ed) | mat ched call and put options | Tria n mounts proxy campai gn for spinoff of Wendy' s subsidia ry; its econom ic | See footnot e.[FN] [FN105] |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | ownership is primarily through options. | |
| 36 | 2005 | Banca Antonveneta | Italy | Banco Popolare di Lodi | X | avoid mandatory bid rules | call options | Banco Popolare holds 29.3% of Antonveneta directly, 46% total; Consob requires mandatory bid. | See footnote.[FN106] |
| 35 | 2005 | Fiat | Italy | Agnelli family | X | avoid mandatory bid rules | equity swaps | Agnelli family acquires equity swaps in Fiat, instead of shares, to preserve control without triggering mandatory bid rule, perhaps also to avoid disclosu | See Decoupling I. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | re and hence market impact. | |
| 34 | 2005 | Austral Coal | Australia | Glencore | X | equity swaps | Glencore acquires 10% stake in Austral Coal through combination of disclosed share purchases and undisclosed swaps. | See Decoupling I and footnote.[FN] [FN107] |
| 33 | 2005 | Exar | U.S. | GWA Investments (hedge fund) | X | short sales | GWA seeks minority board seats; its position in Exar is 96% hedged. | See footnote.[FN] [FN108] |
| 32 | 2005 | Fuji TV | Japan | Nippon Broadcasting | X | Deny voting rights to takeover bidder | stock lending | Nippon lends its shares in Fuji TV to others as a defense to | See Decoupling I. |

| No. | Year | Company | Country | Investor | | Mechanism | Description | Source |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | takeover bid by Livedoor; Nippon's economic ownership is morphable but not hidden. | |
| 31 | 2005 | Deutsche Börse | Germany | Hedge funds | X | short sale of target shares | Opponents of Deutsche Börse bid for LSE, go long Deutsche Börse, short LSE. | See Decoupling I. |
| 30 | 2005 | Portman Mining | Australia | Seneca (hedge fund) | X | equity swaps | Cleveland Cliffs bids to acquire Portman. Seneca holds 9% economic interest in Portman through equity swaps. | See Decoupling I. |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| # | Year | | | | X | | | |
|---|---|---|---|---|---|---|---|---|
| 29 | 2004-2005 | WMC Resources | Australia | BHP Billiton | X | equity swaps | Acquisition of 4.3% toehold through equity swaps. | See Decoupling I. |
| 28 | 2004-2005 | Mylan Laboratories | U.S. | Perry Corp. (hedge fund) | X | equity swap | Perry and Citadel hold shares in King, which Mylan proposes to acquire; they buy hedged positions in Mylan to vote for the merger. | See Decoupling I. |
| 27 | | | | Citadel (hedge fund) | X | | unknown | See Decoupling I. |
| 26 | 2004 | DFS | U.K. | Polygon (hedge fund) | X | equity swap | Polygon seeks to influence DFS despite owning only | See Decoupling I. |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

|  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  | one share of stock (it had 3% economic ownership through equity swaps). |  |
| 25 | 2004 | Alvis | U.K. | Hedge |  | X | equity swap | Hedge funds with equity swaps as to Alvis shares support BAE Systems bid for Alvis. | See Decoupling I. |
| 24 | 2004 | Hyundai Merchant Marine | Korea | Hyundai Elevator | X | X | avoid holding company rules | complex option and voting contract | Elevator wants to control more shares of Marine to block a takeover bid, arranges for Cape Fortune to hold them | See Part V.A. |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                 Page 45
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

and vote as directed.

| # | Year | Name | Country | Target | | | | |
|---|------|------|---------|--------|---|---|---|---|
| 23 | 2004 | Marks and Spencer | U.K. | Hedge funds (helping Philip Green to acquire Marks and Spencer) | X | equity swap | Dealers who hold matched shares to hedge equity swaps support Green's bid. | See Decoupling I. |
| 22 | 2004 | Canary Wharf | U.K. | "Song-bird" consortium (seeking to acquire Canary Wharf) | X | equity swap | Derivatives dealer UBS holds 7.7% of Canary as matched shares to support equity swaps held by Songbird members. | See Decoupling I. |
| 21 | 2004 | MONY Group | U.S. | Holders and short sellers | X | | acquirer's convertible bonds | Holders (short sellers) of AXA | See Decoupling I. |

156 UPALR 625                                                                                      Page 46
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

| No. | Year | Company | Country | Technique | X | Hidden/Morphable | Disclosure | Description | Citation |
|---|---|---|---|---|---|---|---|---|---|
| | | | | of AXA convertible bonds | | | | bonds support (oppose) merger with MONY, hoping to profit from AXA bond holdings. | |
| 20 | 2004 | Disney Co. | U.S. | Broker votes in director election | X | | record ownership | Broker votes of client shares reelect CEO Michael Eisner despite "vote no" campaign. | See footnote.[FN109] |
| 19 | 2004 | News Corp. | Australia & U.S. | Liberty Media | X | Hidden: yes Morphable: maybe | forward contract and equity swap | Liberty Media holds voting and nonvoting News Corp. shares, uses derivatives to adjust its econom | See Decoupling I. |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

|   |   |   |   |   |   |   |   | ic exposure. |
|---|---|---|---|---|---|---|---|---|
| 18 | 2003 | SK Corp.; SK Telecom | Korea | SK Networks | X | private contracts | SK Networks arranges for offshore money managers to hold SK Corp and SK Telecom shares, SK Networks retains economic risk and de facto voting rights. | See footnote.[FN110] |
| 17 | 2002 | P&O Princess | U.K. | Investor (favor Carnival bid for P&O Princess) | X | may be | share borrowing | P&O shareholders who favor Carnival's bid reportedly borrow shares in order to vote for acceptance. | See Decoupling I. |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

Page 48

| 16 | 2002 | Moss Brothers | U.K. | Legendary Investments | X | equity swap | Legendary uses equity swaps to obtain 20% economic interest, obtains formal assignment of voting rights of matching shares from the counterparty. | See footnote.[FN111] |
| 15 | 2002 | Hewlett-Packard | U.S. | Holders of Compaq shares (target of HP merger bid) | X | target shares | Compaq shareholders are rumored to have acquired hedged HP positions to support HP's merger with Compaq. | See Decoupling I. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 14 | 2002 | Coles Myer | Australia | Solomon Lew (proxy contestant) | X | no | options | Lew buys additional shares, but hedges with options. | See Decoupling I. |
| 13 | 2002 | Quanta Services | U.S. | Company itself | X | | ESOP | Quanta adopts ESOP in response to takeover bid by Aquila. | See Part I.C.3. |
| 12 | 2002 | British Land | U.K. | Laxey Partners | X | | share borrowing | Laxey holds 1% of British Land, borrows another 8% to support a breakup proposal. | See Decoupling I. |
| 11 | 2001 | Telecom Italia | Italy | Unknown share borrowers | X | | share borrowing | Fidelity and Morgan Stanley hold 10% of | See Part III.D. |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Telecom Italia, oppose Pirelli bid, but can cast only 1% of the votes; their other shares were lent and can't be recalled in time. | |
| 10 | 2001 | Fondiaria | Italy | SAI (acquirer) | X | avoid mandatory bid rule | call options | SAI parks Fondiaria shares with banks to avoid Italy's mandatory bid rule, retains call options on the shares. | See footnote.[FN112] |
| 9 | 2001 | Rubicon | New Zealand | Perry Corp. | X | equity swaps | Perry holds equity swaps to conceal ownership in Rubico | See Decoupling I. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | n, later unwinds swaps and votes at Rubicon meeting. | |
| 8 | 1999 | Gucci | Netherlands | Company itself | X | | ESOP | LVMH buys 34% stake in Gucci; Gucci establishes ESOP to hold equal number of shares, neutralizing LVMH's interest. | See Part I.C.3. |
| 7 | 1997 | John Fairfax Holdings | Australia | Brierley Investments | | avoid mandatory bid rule | equity swaps | Brierley holds equity swaps instead of Fairfax shares to avoid Australia's mandatory bid rules. | See Decoupling I. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6 | 1994 | Northern Electric | U.K. | Trafalgar House | | equity swaps | Trafalgar enters into equity swaps before making bid for Northern Electric. | See footnote.[FN] [FN113] |
| 5 | 1994 | UBS | Switzerland | UBS | X | share borrowing, forward contracts | In response to takeover bid by Martin Ebner, UBS seeks to amend charter, agrees to repurchase shares from two major shareholders after a shareholder meeting; the shares are voted in favor of the amendment. | See Part I.C.2. |

| 4 | 1991 | NCR | U.S. | Company itself | X | | ESOP | NCR adopts ESOP as defense against bid by AT&T. | See Part I.C.3. |
| 3 | 1989 | Dunkin' Donuts | U.S. | Company itself | X | | ESOP | Dunkin' Donuts adopts ESOP as defense against takeover bid Kingsbridge Capital and DD Acquisition. | See Part I.C.3. |
| 2 | 1988 | Polaroid | U.S. | Company itself | X | | ESOP | Polaroid adopts ESOP in response to takeover bid from Shamrock Holdings. | See Part I.C.3. |
| 1 | | | | | X | | | | See |

156 UPALR 625                                                              Page 54
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

| 1988 | Macmillan | U.K. | Company itself | | ESOP | Macmillan contributes additional shares to ESOP, replaces ESOP trustees with members of management. | Part I.C.3. |

**\*682** III. Updating Our Ownership Disclosure Proposal

The developments described in Part II suggest that there is urgency to regulatory reform, in the United States and elsewhere. In Decoupling I, we argued that, in regulating equity decoupling, disclosure offers the best place to start. [FN114] Section A summarizes the integrated ownership disclosure proposal we developed there, and reviews disclosure reforms in other countries. Section B evaluates the U.K.'s apparent success in implementing shareholder disclosure rules similar to those we propose. Section C extends our proposal to cover corporations. Section D proposes enhanced disclosure of share lending and borrowing.

A. Our Integrated Ownership Disclosure Proposal

1. Current Rules and Our Disclosure Proposal

The United States currently has five sets of ownership disclosure rules. With regard to equity decoupling, these rules treat economically similar positions differently both within and across disclosure regimes, allow much new vote buying to remain undisclosed, allow much economic-only ownership to remain hidden, provide little or no disclosure of share lending and borrowing, and do not directly address corporate decoupling. The current ownership disclosure regimes for shareholders are:

• active 5% shareholders report their voting ownership and material changes in ownership on Schedule 13D;
• passive investors report their voting ownership annually on Schedule 13G, plus a filing if they cross 10%;

• institutional investors holding over $100 million in U.S. equity securities report their share ownership (plus exchange traded call options) quarterly on Form 13F;

• insiders (directors, officers, and 10% shareholders) report their economic ownership under section 16 of the Exchange Act; and

• mutual funds report their economic ownership quarterly, through Forms N-1A, N-CSR, and N-Q. The proxy

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                                    Page 55
156 U. Pa. L. Rev. 625
(Cite as: 156 U. Pa. L. Rev. 625)

rules and the tender offer rules may require additional disclosures by someone who launches a proxy contest or a tender offer.

**\*683** To complicate matters further, the ownership positions that trigger the disclosure requirements and the positions that must be disclosed once disclosure is required are often different. For example, a 13D filer must disclose contracts related to the company's shares, presumably including equity swaps. But equity swap holdings do not count toward the disclosure threshold. Similarly, a 10% shareholder must disclose economic ownership under section 16, but economic-only ownership does not count toward the 10% threshold. OTC derivatives are often not subject to disclosure when an equivalent position using exchange-traded derivatives would be captured. Holding a call option is sometimes treated differently from the nearly equivalent writing of a put option.

These differences may once have made sense and some of the gaps may once have been unimportant. But in a world of easy, large-scale decoupling of economic from voting ownership and often easy recoupling when needed, a massive OTC derivatives market, and a pool of sophisticated hedge funds with the skill and incentives to use decoupling to hide ownership or cast empty votes, broader, more consistent coverage is needed.

We thus offered an "integrated ownership disclosure" proposal that would provide improved public disclosure of both empty voting and hidden ownership, while also streamlining the current ownership disclosure rules. Our proposal contemplated:

> (1) consistency as to which positions count toward disclosure thresholds, and which positions must be disclosed if the threshold is crossed;
> (2) disclosure of both voting and economic ownership, arising from shares or coupled assets;

> (3) symmetric disclosure of positive and negative economic ownership;

> (4) reporting of share lending and borrowing positions; and

> (5) reporting of significant instances of empty voting, above a threshold percentage of the company's shares, such as 0.5%. The proposal would ensure that economic-only ownership, whether morphable or not, is not hidden. We would require real-time disclosure of most empty voting by 13D and 16(b) filers, who must report ownership changes promptly, but only delayed reporting by other filers.

We discuss the policy factors bearing on the optimal level of shareholder disclosure in Decoupling I, and do not repeat that analysis here. These requirements are rooted in the belief that investors, as **\*684** well as society at large, should know who a company's major shareholders are. Investors should also know whether those shareholders are buying and selling and should have an opportunity to respond. From an economic standpoint, share pricing will be more efficient if investors know what major investors are doing and have advance notice of possible changes in control. The integrity of, and confidence in, the stock market will be enhanced. We also identified reasons more directly related to equity decoupling. Disclosure can provide information on the frequency of empty voting and hidden (morphable) ownership. Disclosure may also deter some new vote buying: not everyone will do in the sunshine what they will do in the dark. Moreover, some empty voting strategies may be less effective if disclosed.

2. Regulatory Action to Date

Our integrated ownership disclosure proposal is consistent with regulatory changes made by the U.K. Takeover Panel in November 2005 to govern ownership disclosure during takeover bids, in Hong Kong in 2003 in response to aspects of the new vote buying, and in Switzerland this year in response to the events recounted above. [FN115]

Other regulators have also responded or are considering how to respond to equity decoupling. In the U.K., the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                              Page 56
156 U. Pa. L. Rev. 625
(Cite as: 156 U. Pa. L. Rev. 625)

Financial Services Authority has issued a consultation paper on disclosure reforms, which would apply generally, not just during takeover bids. [FN116] In Hong Kong, the Securities and Futures Commission (SFC) reviewed the effectiveness of its 2003 reforms, released a consultation paper in 2005, and put together a working group of market participants and investors to investigate possible changes. [FN117] The Italian securities regulator, Consob, is expected to review soon how its disclosure rules should respond to hidden ownership. In September 2007, the Australian Takeovers Panel issued a draft guidance note and a discussion paper, seeking public comment on an approach that contemplates treating equity derivatives, whether physically settled or cash-settled, the same as holdings*685 of shares for both disclosure and mandatory bid rules. [FN118] In the Netherlands, a May 2007 report by the Corporate Governance Code Monitoring Committee expresses concern with both disclosure of significant holdings and empty voting; the Finance Ministry has placed the Committee's report at the top of its work program for 2008. [FN119]

    In the United States, both the SEC [FN120] and the Delaware judiciary [FN121] have shown concern over decoupling. Institutional investors have noted the importance of the issue. [FN122] Senior SEC officials, including *686 Chairman Christopher Cox and Commissioner Paul Atkins, have spoken publicly about empty voting and hidden (morphable) ownership. There have been published rumors as to forthcoming SEC disclosure reforms, but as yet no proposed rules. [FN123]

B. U.K. Experience with Disclosure Reform

    Recent U.K. experience provides reason to believe that disclosure reform, along the lines we propose, is workable and not unduly costly. We review that evidence in this section.

    Since November 2005, the U.K. Takeover Panel has required disclosure of both long and short economic ownership of 1% or more in a target company during the pendency of a takeover bid, though not at other times. This includes ownership through cash-settled "contracts for differences" or "CFDs" (the British version of equity swaps). [FN124] The 1% threshold aside, these reforms are similar to our proposal. In 2007, the Takeover Panel Executive invited comments on the new regime from trade bodies, hedge funds, companies which had received takeover offers, money managers, and other capital market participants. It received 89 responses out of 113 contacted entities. The Panel Executive also sought to determine how the disclosure reforms affected the number of filings. [FN125] It estimated that filings increased by approximately 19% over the period from November 2005 through May 2007. The overwhelming majority of the additional disclosures involved CFDs. The Executive found that these disclosures were generally not complex or difficult to understand.

    There was strong support for the enhanced disclosures across all constituencies. Ninety percent of the respondents favored the new disclosure regime, and most of those agreed that the rules had significantly improved market transparency during offer periods. The Panel Executive felt that the responses indicated that market participants *687 had little difficulty in analyzing the disclosures. The Panel Executive's report concluded that the disclosure rules were achieving the Panel's principal objectives without imposing undue burdens on market participants and, accordingly, that the rules were a proportionate regulatory response to the use of derivatives during takeover bids.

    In November 2007, the Financial Services Authority (FSA), Britain's umbrella financial industry regulator, proposed disclosure rules for CFDs. Unlike the Takeover Panel rules, this proposal is not limited to the period during a takeover bid. The FSA advanced two alternative approaches for public comment. The first would deem a holder of CFDs to have access to voting rights unless the holder meets safe harbor requirements, including an explicit agreement with the CFD writer that precludes the holder from exercising or seeking to exercise voting rights, plus the holder's statement that it does not intend to use CFDs to seek access to voting rights. If the safe harbor were not met, CFDs would be disclosable if the holder's combined CFD and share position exceeded 3%. [FN126] If the safe harbor was met, the issuer could still require disclosure of economic interests above 5%. [FN127] The second alternative would require disclosure of all CFDs and other equity derivative-based economic

interests above a 5% threshold, which would be separate from the 3% disclosure threshold for shares, with no aggregation across the two types of holdings. [FN128]

Some hedge funds themselves have advocated increased transparency. In an effort to guide or perhaps deflect regulation by the U.K. and other European countries, a group of 14 leading London-based hedge funds convened a working group (Hedge Fund Working Group) to prepare a hedge fund code of conduct, covering disclosure and other matters. The Working Group's report, issued in October 2007, supports disclosure reform. [FN129] The report recommends that European regulators adopt rules requiring all market participants to disclose economic-only interests, including those held through equity swaps. The Working Group agreed that companies "have a right to *688 know who owns them" as well as those "who [have] an ability to easily obtain significant voting power"--that is, those with morphable ownership. [FN130] The Working Group recommended legal action because it believed that voluntary disclosure by some hedge funds would cause distortions because only some market participants would provide this disclosure. The Working Group members stated their willingness to work with regulators on the details of a mandatory regime, applicable to all parties, that "ties votes to underlying economic exposure." [FN131]

C. Extending Our Disclosure Reform Proposal to Corporate Decoupling

In Decoupling I, we focused on decoupling by hedge funds and other outside investors. We were less concerned with insider disclosure, because current section 16(b) disclosure already captures economic ownership, and we did not discuss soft parking or other corporate decoupling. We now need to do so.

1. Current Disclosure Rules for Corporate Decoupling

We review in this section the rules that apply to soft parking and other corporate decoupling; we propose additional disclosures in the next section. Assume that a corporation engages in soft parking of shares, in one of the ways outlined above. To make the analysis concrete, assume that the company takes the long side of equity swaps with a derivatives dealer, expecting the dealer to hedge with matched shares and vote with management. What disclosure rules apply?

No specific "line item" rules clearly apply. In some circumstances, general disclosure principles based on "materiality" may apply. However, the SEC's past actions on disclosure of stock repurchases suggest, at best, ambiguity as to the need for disclosure in many circumstances. Stock exchange rules also provide no clear disclosure requirements.

The most directly relevant disclosure rule relates to corporate repurchases of shares. Until 2003, the SEC did not have a specific rule on disclosure of share repurchases. [FN132] In late 2002, the SEC proposed adding Item 703 to Regulation S-K. In its proposing release, the SEC *689 specifically asked for comments on whether corresponding disclosure should be required for derivatives transactions. [FN133]

The SEC apparently decided not to require disclosure of derivatives transactions. Neither Item 703 nor the adopting release refers to derivatives transactions. [FN134] Under Item 703 and associated changes to Forms 10-Q and 10-K, companies must provide information on purchases of "shares or other units of any class of the issuer's equity securities" registered under the Exchange Act. [FN135] Equity swaps are generally not considered securities, nor are they registered under the Exchange Act, so they are not covered. [FN136]

If a derivatives transaction is financially material, it might be captured as part of the quarterly umbrella Management's Discussion and Analysis of Financial Condition and Results of Operations (MD&A) disclosure requirement. [FN137]

In particular, MD&A disclosure includes various "off-balance sheet arrangements," defined to include "[a]ny

obligation . . . under a contract that would be accounted for as a derivative instrument." [FN138] This term would include equity derivatives. However, MD&A disclosure is required only for

> off-balance sheet arrangements that have or are reasonably likely to have a current or future effect on the registrant's financial condition, changes in financial condition, revenues or expenses, results of operations, liquidity, capital expenditures or capital resources that is material to investors. [FN139]*690 For the arrangements that concern us here, the primary impact is not on the company's finances but on voting rights. Some of the transactions we discuss above, if large enough, might have a financially material impact--for example, a large long equity swap position. But others would not. A share loan, for example, has no financial statement impact. We know of no SEC statement suggesting that a potential effect on control alone would trigger MD&A disclosure.

Corporate soft parking might implicate other SEC disclosure rules or principles, or general antifraud provisions. But the analysis is even muddier. A company must file a Form 8-K on the occurrence of certain events, generally within four business days after occurrence. One such occurrence is when the company enters into a "material definitive agreement not made in the ordinary course of business" or any material amendment thereof. [FN140] If so, Item 1.01 requires the company to provide information about the agreement. This requirement would likely capture a single equity swap contract, if it was large enough to be "material." How large that is, we can't be sure. Whether it captures a material effect on voting power, without a material effect on the company's finances, is uncertain. Whether Item 1.01 captures the gradual accumulation of a position, through many smaller transactions, is also unclear. Nor do we know how much the company must say, if it reports anything.

Broad SEC disclosure principles and antifraud provisions are similarly unhelpful. Under both the Securities Act of 1933 (Securities Act) and the Exchange Act, companies are required to provide "such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made, not misleading." [FN141] These general principles provide little guidance as to when or how a soft parking transaction would need to be disclosed. [FN142]

Stock exchange rules are no more helpful. The NYSE requires listed companies to notify it quarterly if the company acquires or disposes*691 of its shares. The timing is different than for SEC rules, but the rule appears to reach only shares, not derivatives. [FN143] Companies must also notify the Exchange if the available public float is diminished "by the deposit of stock under a voting trust agreement, or other deposit agreements." [FN144] This language could perhaps be stretched to cover share loans, but even if so stretched, disclosure is only to the Exchange, not to the public. The NYSE and NASDAQ require companies to timely disclose information that may affect security values or influence investment decisions, such as stock buyback programs. [FN145] But whether this general disclosure principle reaches corporate decoupling is unclear.

Corporate soft parking is not, to our knowledge, currently disclosed. This might mean it doesn't happen. It could also mean that it occurs but is outside--or is deemed by companies to be outside--current disclosure rules.

2. Corporate Decoupling: Disclosure Proposal

For shareholders, we propose disclosure of both voting ownership and economic ownership, partly to reflect the practical reality that an economic-only owner often has de facto access to votes when needed. For 13D filers, this disclosure would be on a close to real-time basis (within ten days after crossing the 5% threshold), and would prompt reporting of changes thereafter. [FN146] Schedule 13D also requires filers to attach pertinent agreements.

For corporations, we propose that they disclose significant transactions in their shares or equity derivatives, and any share borrowing or lending, following the 13D pattern. To ensure close to real-time disclosure, initial reporting would be on Form 8-K, with follow-up periodic reporting on Forms 10-Q and 10-K. Relevant agreements would be attached to these filings. Form 8-K is generally required to be filed within four business days after a triggering

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

event, which is roughly comparable to Schedule 13D; we would not change this timing.

More specifically, one could revise Form 8-K, Item 1.01, to specify that the acquisition of voting or economic ownership, or the borrowing or lending of shares, beyond some threshold amount (perhaps *692 1%) by the corporation should be disclosed, and relevant agreements attached as exhibits. [FN147] As for shareholders, voting ownership would be determined in accordance with Schedule 13D precepts, while economic ownership would be determined in accordance with section 16 precepts. Economic ownership would be measured in the same crude manner we propose for shareholder disclosure, ignoring option deltas.

D. Reporting Shares Lent and Voted on Form 13F

In Part IV.C, we suggest that regulators should encourage, but not require, share lenders to recall and vote shares on record dates. In Decoupling I, we proposed that Form 13F filings by institutional investors should disclose their share lending and borrowing on record dates. We also proposed that 13F filers (and other periodic filers such as mutual funds) report any occasions where they cast substantially more votes than their economic ownership. To limit the reporting burden for filers who engage in ordinary hedging activities, we would require disclosure only if a filer cast a number of votes which exceeded its economic ownership by at least 0.5% (or some other threshold amount) of a company's outstanding shares.

We propose here somewhat expanded disclosure: if an institution owns shares in a company on a record date, it should disclose in its next Form 13F filing its total economic ownership (including coupled assets); the number of potentially votable shares (shares held directly or in street name), the number of shares lent, the number of shares borrowed, and the number voted. This would provide a fuller picture of the institution's voting (including empty voting), borrowing, and lending activity. We would not require investors to vote their shares, merely to disclose whether they had done so. To limit the disclosure burden, we would allow several exceptions:

(1) An institution would not need to report economic ownership below a threshold dollar amount, or a threshold fraction of its total assets, if that ownership reflects long or short positions in broad market indices. For example, an institution which holds S&P 500 Index futures would not need to adjust its reported ownership of every company in the index.

*693 (2) An institution would not need to report share borrowing or lending if the net amount fell below a threshold amount, measured as a fraction of its holdings, the company's outstanding shares, or both.

(3) An institution would not need to report number of shares voted if its holdings of potentially votable shares fell below a threshold amount, measured as a fraction of its holdings or the company's outstanding shares.

(4) We would require only omnibus disclosure of voting--were the shares voted or not? We would not impose the additional burden of reporting how many shares were voted on each agenda item.

This disclosure may give institutional investors incentives to vote the shares they economically own, and only the shares they economically own, to avoid the potential embarrassment of being a known empty voter. These disclosures would likely prompt some institutions to improve their practices with respect to exercising voting rights, including ensuring that they can recall and vote shares if they want to. [FN148]

Currently, most institutions treat share lending and proxy voting as distinct activities. [FN149] Sometimes, they discover too late that shares which they planned to vote have instead been lent by their share lending office or a lending agent. One such incident was prominent enough to merit inclusion in our decoupling list (see Table 1, supra). In 2001, Fidelity and Morgan Stanley, together holding 10% of Telecom Italia, led a campaign against a takeover offer by Pirelli. They discovered, however, that they held only 1% of the votes; their remaining shares had been lent and could not be recalled in time for the shareholder meeting, at which the Pirelli bid was approved. Who

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625
156 U. Pa. L. Rev. 625
(Cite as: 156 U. Pa. L. Rev. 625)

voted the shares is unknown. [FN150]

   **\*694** It may be useful to compare our proposal to the SEC's rule requiring mutual funds to disclose how they voted on proposals presented at shareholder meetings. [FN151] We would not require disclosure of how the 13F filer voted, only whether it voted or not. However, the mutual fund rule requires no disclosure of number of shares voted; we would require this disclosure. In short, the mutual fund rule requires disclosure of voting direction, but not magnitude. In theory a fund could own 3 million shares, vote one of them for a proposal, abstain for the rest, and report that it had supported the proposal. Our proposal requires the reverse: magnitude, but not direction. Mutual funds would be subject to both rules.

<center>IV. Responses to Empty Voting: Beyond Disclosure Reform</center>

A. Overview

   Enhanced disclosure may be a sufficient response to hidden ownership, which would no longer be hidden. It will also open windows into the share lending market and into the extent of empty voting. Disclosure is likely to reduce the incidence of empty voting. Shareholders and firms will not always do publicly what they might do in secret. Soft parkees, derivatives dealers, and other facilitators would incur increased reputational risk. At ZKB, for example, the CEO and the head of derivatives trading lost their jobs and suffered front page ignominy, in significant part due to ZKB's role in the hidden attack on Sulzer. [FN152]

   But some firms, shareholders, and third-party facilitators will barrel ahead. In Hungary, MOL made no secret of lending 40% of its shares to friendly local banks to fend off OMV's takeover bid. [FN153] In the United States, firms have publicly placed mostly empty votes with ESOP plans as a takeover defense. In Korea, Hyundai Elevator's initial hard parking of shares in Hyundai Merchant Marine remained in place, even though later disclosed; and Hyundai Elevator later openly **\*695** expanded the parking arrangement with a second counterparty. [FN154] Disclosure will also likely do little to deter the use of decoupling to avoid mandatory bid rules.

   Sometimes, too, disclosure will come too late to matter. Consider the Henderson Investments scenario described in Decoupling I. One or more hedge funds borrowed shares just before the record date for a merger vote, voted them against an apparently beneficial transaction, and then sold the shares short before the meeting date, profiting while defeating the transaction. After-the-fact disclosure would not have changed its ability to profit at other shareholders' expense. [FN155]

   Or consider the inability of Pershing Square, a major economic owner of Sears Canada through equity swaps, to obtain the matched shares in Sears Canada that were held by Bank of Nova Scotia (Scotiabank). In substance, Scotiabank was an empty voter, akin to a nominal holder, while Pershing Square was the economic owner. Or, perhaps Sears Holdings was the true empty voter. The Ontario Securities Commission blocked Scotiabank from voting, finding that Sears Holding had offered side consideration to Scotiabank. It would otherwise have voted, despite Pershing Square's public complaints. [FN156]

   As we discussed in Decoupling I, there are circumstances in which decoupling can be beneficial, and in which a suitably regulated market for votes, decoupled from shares, could work reasonably well. [FN157] It is also hard to regulate an activity that can take many shifting forms. We therefore offered a menu of regulatory approaches, but made no specific recommendations. The developments since, discussed in Part II, suggest that we should be less cautious. There is need, we now believe, for measured regulatory responses to address the risks posed by decoupling. Moreover, it is likely better to regulate sensibly and gently now, before a crisis hits, than to wait and risk a postcrisis overreaction. Below, we discuss three families of strategies. [FN158]

   **\*696** One family focuses on voting rights (Section B): when should the voting rights of an empty voter be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                                                    Page 61
156 U. Pa. L. Rev. 625
(Cite as: 156 U. Pa. L. Rev. 625)

limited based on economic ownership? We propose amending corporate law to provide constrained power for corporations to amend their charters to limit empty voting. We would constrain this power in a number of ways, including majority of minority approval of the charter amendment, to reduce the risk that insiders will propose amendments that block the empty voting techniques favored by outsiders, while permitting those favored by insiders. We develop a proposal for an "attestation" charter provision, which would require major shareholders to attest to their economic ownership, and would limit voting rights above the attested level. We would also amend corporate law to bar voting by shareholders with negative economic ownership. And we would extend current rules governing record holders to also apply to derivatives dealers who hold matched shares to hedge a short equity derivatives position held by an investor. We would generally require the dealers to pass voting rights through to their counterparty, who is the economic owner.

A second family of strategies focuses on supply and demand forces relating to the new vote buying (Section C). We recommend that regulators provide a safe harbor to allow institutional investors to recall and vote lent shares without risking a fiduciary duty lawsuit for not lending the shares instead. (Recall from Part III that our disclosure proposal would require 13F filers to disclose whether they voted or lent their shares.) Regulators should encourage, and perhaps require, large institutional lenders to develop the ability to recall lent shares on short notice. And record owners who have lent shares held in street name should be required to recall a number of shares sufficient, based on past experience, to honor the expected number of client voting instructions.

Third, the mechanics of shareholder voting need rethinking (Section D). Our proposal on limiting share loans by record owners should reduce the problem of "overvoting." [FN159] If overvotes still occur, **697** state law should be amended to allow companies to honor the properly cast votes (counting yes and no votes proportionately to the votes cast). Voting agendas should be available before the record date. And dividend and voting record dates should be separated.

Some larger changes in the voting architecture are also appropriate in an electronic age, and would improve the quality of voting. Economic owners should vote directly, instead of the current clumsy and often faulty system in which record owners solicit voting instructions and then try to follow them. And the time gap between the record date and the meeting date should be dramatically shortened.

We assume familiarity with the menu of possible approaches we presented in Decoupling I, and with the current voting system. [FN160] We focus on specific proposals, which we believe should be adopted in the near term, and on amendments to U.S. rules. We address European reforms in related work. [FN161]

B. Voting Rights

1. Direct Limits on Voting Rights

One way to address empty voting is to limit the voting rights of shareholders who hold greater voting than economic ownership. This solution may seem obvious in extreme cases, such as the negative economic ownership. But that extreme case aside, when it is appropriate to limit voting rights is as yet unclear. For complex positions, how to measure economic ownership can also be unclear. We therefore propose an incremental approach. Delaware (and other states) should amend its corporate law to permit firms to modify their charters to limit voting rights based on a shareholder's economic ownership. [FN162] This will permit firms to experiment with different approaches. Below,**698** we discuss the general proposal, and develop one possible implementation, in which large shareholders would attest to their economic ownership when they vote.

The key risk for a charter amendment is that insiders will propose amendments that allow decoupling techniques likely to be used by insiders, while restricting techniques likely to be used by outsiders. This risk is especially high for "midstream" charter amendments by already public companies. [FN163] We would therefore limit the scope of

permissible charter provisions in a number of ways. First, a midstream charter amendment should be approved by a majority vote of nonaffiliated shareholders in a separate vote, not tied to any other agenda item. [FN164] Second, any charter provision should be facially neutral--it should not exempt particular classes of persons or particular levels of ownership, should not permit case-by-case examinations, and should not depend on the period for which shares have been held. Time-phased rules are a familiar way to privilege insiders, who are more likely to meet the time restrictions. [FN165] Third, the rules should not be punitive--a shareholder should not lose a large number of votes because of a small disparity between economic and voting ownership. Fourth, the rules should permit holding shares in street name, as long as the record holder votes based on instructions from an economic owner. Fifth, there should be an expedited procedure for shareholders to verify, before voting, whether their votes will count. There should be no ex post "gotchas," in which a firm's insiders deny votes to a particular shareholder and thereby win a close vote they would otherwise have lost. Sixth, judges should have equitable jurisdiction to uphold the spirit of the charter provision and allow (deny) voting rights in situations**\*699** where the voter did (did not) have matching economic and voting ownership. [FN166]

Shareholder attestation offers an approach that satisfies these criteria and avoids the problems with specifying particular types of permitted or not-permitted decoupling, or developing a detailed measure of economic ownership. A company could adopt a charter provision requiring major shareholders, say those holding over 1% of its shares, to attest when voting that the voted shares do not exceed their economic ownership by a specified percentage--say, by 20%. In computing economic ownership, we would let shareholders not count general hedges (long company X, but also short a broad index that includes company X). For simplicity, the attestation would involve only coupled assets, not related non-host assets. This relatively soft approach will reduce the number of instances in which votes are disallowed, as well as related transaction costs, while still ensuring that votes are generally cast by people with incentives to increase firm value. Since for some derivative positions, economic ownership can vary with share price, the attestation should be as of the record date.

This proposal assumes adoption of our separate proposal that economic owners should vote directly, rather than indirectly by giving instructions to record owners. If record owners vote, the attestation obligation would follow the voting rights they pass to economic owners.

This proposal would put the burden on the shareholder to monitor its own economic ownership, and cast only the number of votes to which it is entitled. The company could not by itself go behind the attestation. But most attesting shareholders will also be required to file federal ownership disclosure reports under our integrated ownership disclosure proposal, including an ex post recitation of instances in which they cast empty votes. There are federal criminal penalties for filing false reports, which constrain false federal filings. And it seems unlikely that many shareholders will falsely attest to economic ownership when voting, then truthfully report a divergence between voting and economic ownership in a later federal filing. So the attestations should be credible. If an attestation is false and this is later **\*700** discovered, the courts can decide on a case-by-case basis whether to require a new vote and what sanctions to impose.

We would address the situation where one person or entity controls several others who each hold shares in the same company, by requiring parent-level attestation. Otherwise, the attestation rule could be evaded. [FN167]

We would apply the attestation rule only to large shareholders for several reasons. First, transaction costs will likely outweigh benefits for smaller shareholders. Second, smaller shareholders who hold more votes than economic ownership are likely to be simply hedging, not engaging in deliberate empty voting. Third, the empty votes of small shareholders are unlikely to affect many voting outcomes. Finally, additional burdens on individual investors will encourage even more passivity.

It is possible, but we think unlikely, that attestation, or another plausible, facially neutral charter amendment, would require changing NYSE rules, which state that voting rights "cannot be disparately reduced or restricted through any corporate action or issuance." [FN168] The NYSE states that its voting rights policy "will be flexible,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                                          Page 63
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

recognizing that both the capital markets and the circumstances and needs of listed companies change over time." [FN169] It is more likely that attestation would require technical changes to implicate the federal proxy rules, given the SEC's broad power to regulate the proxy process, including the form of proxies. [FN170]

Disallowing votes raises a technical concern. One would not want disallowance of voting rights to cause companies to have trouble obtaining a quorum. Nor would one want disallowance to create implicit no votes, based on the approval needed for a particular decision. For example, a merger or a charter amendment requires approval by a majority of the outstanding shares. Disallowed votes should not count as no votes. A natural solution is to exclude nonvotable shares in determining the number of outstanding shares, in the same way that *701 Treasury shares, or shares held by a company's subsidiaries, are not treated as outstanding. [FN171]

The difficulty comes in identifying nonvotable shares. One needs, in effect, to count the number of shares in each of five categories instead of the usual four: (1) yes votes; (2) no votes; (3) abstain (neither yes nor no, but counts toward a quorum); (4) non-votes of votable shares (does not count toward a quorum); and (5) the new category of disallowed votes (reduces the number of effectively outstanding shares). One approach would be to require shareholders who hold disallowed votes, when they vote and attest to economic ownership, to also attest to how many shares they hold for which votes are disallowed. [FN172]

2. Voting with Negative Economic Ownership

We also believe that corporate law should intervene directly and bar voting in the extreme case of negative economic ownership. Possible holdings of related non-host assets aside, negative economic ownership gives the shareholder incentives to vote against the interests of other shareholders. [FN173]

Corporate law does not generally police the reasons why shareholders vote as they do. Shareholders can vote based on their private interests, even if those diverge from corporate interests. For instance, employee shareholders can vote to preserve their jobs, at the expense of firm value, and diversified shareholders can vote to benefit their overall portfolio, rather than the company's interests, and a controlling shareholder can vote against a merger proposal that creates *702 higher dollar value for all shareholders, itself included, to preserve its own control. The primary exception is the fiduciary duty of a controlling shareholder to treat minority shareholders fairly in a freezeout or other self-dealing transaction. [FN174] The freedom to vote to favor one's private interests is largely taken for granted, rather than seen as needing justification.

One can readily develop several justifications. First, if most shareholders have incentives to vote in ways that are likely to increase value and the cases where they do not are uncommon, it may not be worthwhile to worry about limiting the power to vote one's private interests. Second, it will often be hard to determine a shareholder's reasons for voting. Third, allowing controlling shareholders to vote as they please may offer rough justice on access to private benefits. Corporate law limits self-dealing, albeit not perfectly. Yet if private benefits were too low, controllers might decline to retain control, to the detriment of other shareholders, or might not take the firm public in the first place. [FN175] Fourth, there is value in speed and finality in determining voting outcomes.

None of these justifications is compelling for a shareholder who holds a negative economic ownership (a net short position) in company X. We propose that state corporate law should presume that such a shareholder is voting against the interests of other shareholders and disallow voting rights, thus leaving the decision to be made by other shareholders. The presumption could be rebuttable, to allow for the case in which a shareholder could show that his overall economic interest, including related non-host assets, was positive. Or it could be a flat rule, on the grounds that holding voting while holding negative net economic ownership is already uncommon, and the exception to the exception--negative economic ownership yet positive overall economic interest-- is rare enough not to be worth addressing.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                                                 Page 64
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

Such a rule is analogous to the rules in many countries, though not the United States, which require majority of minority approval for *703 freezeouts or related party transactions, thus limiting voting rights to unconflicted shareholders. Indeed, even without a legislative amendment, one can imagine courts using their equitable powers to disallow voting by shareholders with negative economic ownership. This situation is analogous to cases limiting voting by directors whose personal interests conflict with the corporation's interests. [FN176] Current case law is limited to directors and officers, who have an explicit fiduciary duty to the corporation. But one can imagine the courts creating a limited fiduciary duty on the part of shareholders not to vote in this situation, much as they have created a limited fiduciary duty of controlling shareholders in a freezeout.

Our proposal to bar voting by persons with negative economic interests is similar in spirit to the Hedge Fund Working Group proposal to bar voting of shares in which market participants had no economic interest. [FN177] The group felt that this might result in votes being exercised against the best interests of the lender. In contrast, our proposal only applies to those with negative overall economic interests. However, our proposal is not limited to share lending. [FN178]

3. Voting by Record Owners: Extension to OTC Equity Derivatives

The case of empty voting by shareholders with zero economic ownership deserves special attention because it is common and, in part, already regulated. Record ownership decouples economic from voting ownership. Our legal system has responded by partially recoupling the two. Economic owners can provide voting instructions, which record owners must follow; if no instructions are given, the record owner can vote on routine matters but not major matters.

These rules can provide precedent for a broader effort to reconnect voting rights to economic ownership when financial innovation has severed them. Consider, for example, a derivatives dealer who *704 holds matched shares to hedge the short side of an equity swap. As we discussed, under common market practices, the long swap holder often has informal rights either to unwind the swap and obtain and vote the matching shares, or to instruct the dealer on how to vote. Disclosure aside, these informal rights are analogous to the rules governing record owners. We would make them formal: Dealers who hold matched shares to hedge a short equity swap position with a known counterparty should be treated the same as record owners, and should pass voting rights on to the counterparty. Similar rules should apply in other situations in which a dealer holds matched shares to hedge another equity derivatives position where a single counterparty with economic ownership can be identified.

Some caveats and exceptions: This proposal would not require dealers to hedge in any particular way; it would apply only if they hedged through matched shares. This proposal would not apply if a dealer hedges its risks on a portfolio basis rather than a transaction basis. [FN179] One might need a de minimis rule, to ensure that a dealer can't vote a million shares by holding one share unhedged. Finally, if the counterparty is the issuer of the shares or an affiliate of the issuer, the dealer should simply not vote.

Record owners currently need not investigate whether the person for whom they hold shares is hedged. We would not change this. Record owners should pass votes on to apparent economic owners based on their own knowledge. We would rely on the provisions discussed above (charter amendments and denial of voting rights to persons with negative net economic interest) to operate directly on the apparent economic owner.

This transfer of voting rights from derivatives dealers to their customers would limit investors' ability to hold large-scale hidden (morphable) ownership, even under existing U.S. disclosure rules. Reporting on Schedule 13D and Schedule 13G is largely triggered by access to voting rights. If derivatives dealers transferred voting rights to long equity swap holders, the holders would have clear rights to the votes on the matched shares, so these shares would count toward the 5% trigger. However, the transfer rules would not affect reporting on Form 13F. This proposal would also substantially limit corporate soft parking.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*705** Consider next other cases of zero economic ownership. The shareholder may not have bad incentives, it merely has no incentives. Should state law prevent voting? Our answer is a cautious "no." In effect, we need to draw a line somewhere between two classes of situations: (1) positive economic ownership, where the default rule is the right to vote, but we would allow companies to limit empty voting through a charter provision; and (2) negative economic ownership, where we believe the case against voting is clear enough so that the corporate law should bar voting. Zero economic ownership (or, a bit more broadly, economic ownership that is small in relation to voting rights) falls right on the line. We address above zero economic ownership by record owners and derivatives dealers. We would let the remaining instances lie.

### 4. Voting by Record Owners: Proportional Voting if No Instructions

Record owners sometimes receive more voting instructions from economic owners than they can honor--which creates the overvoting problem. But often they receive fewer instructions than they hold votes. Broker-dealers are barred from voting for many important decisions; banks are not covered by these rules but apparently routinely do not vote unless instructed. The NYSE has proposed to extend the ban on broker-dealer voting to routine director elections effective for annual meetings in 2008; at this writing, the SEC is reviewing this proposal. [FN180] When not barred from voting, record owners can vote as they see fit, and usually support management's recommendations.

An alternative approach would be for record owners, when they have more votable shares than instructions, to vote all shares in proportion to the instructions they receive (assuming, as is usually the case, that the instructions represent a reasonable fraction of the shares). This would somewhat overweight the instructions that shareholders convey, but creates no obvious incentive problems. At the **\*706** margin, the prospect of overweighted voting might induce more economic owners to vote. The Securities Industry and Financial Markets Association--a trade association representing most major securities firms, banks and asset managers--encourages its members to adopt proportional voting; some major broker-dealers have already done so. [FN181]

In keeping with our overall incremental approach, we would limit this approach to instances where broker-dealers can currently vote. But it may well be extendable to elections in which broker-dealers currently can vote only shares on which they receive voting instructions.

### 5. Empty Voting by Insiders

Directors, officers, and controlling shareholders can also engage in empty voting, either directly or by inducing corporate action. We have already discussed ESOPs. The fiduciary duty rules and cases which apply there also apply to other efforts by insiders to use empty voting to resist a takeover bid. [FN182]

Here, we address insider empty voting outside of the takeover context. Corporate officers and directors are fiduciaries, so the duty of loyalty offers a natural framework to discuss this practice. The greater rigor with which courts police shareholder elections outside the takeover context makes it possible, even likely, that company officers or directors would breach the duty of loyalty if they used corporate assets or the promise of future business to procure votes. In the Hewlett v. Hewlett-Packard proxy fight, for example, major shareholders, led by Walter Hewlett, opposed a merger between Compaq and HP, on the grounds that HP was overpaying. HP's managers barely obtained a majority shareholder vote for the merger. Hewlett then sued, claiming that HP's management had procured votes from Deutsche Bank through promises or threats related to future business dealings between the two companies. [FN183] HP's managers defended on the grounds that they had made no promises or threats, but had merely sought vigorously to present their case on the merits. Chancellor Chandler concurred. [FN184]

**\*707** If HP's managers had procured votes through a promise or threat relating to future business, that would presumably both violate management's fiduciary duty and constitute classic vote buying. Both sides in the HP case

assumed this was improper. We believe that the same conclusion should apply to corporate stock parking, whether hard or soft. The remedy should be that the counterparty should not vote.

Suppose now that the insiders engage in empty voting directly, rather than through parking by the company. Partially empty voting by insiders is already common; many executives who hold zero-cost collars or other hedges are partially empty voters. Our tentative view is that if directors and officers engaged in new vote buying for their personal accounts in contemplation of a specific vote, say, by buying shares while hedging, the breach of fiduciary duty is the same as with corporate soft parking--the insiders are controlling votes on shares they do not economically own--and the outcome should be the same.

What then if the insider holds a partially empty position, established some time ago, without regard to a particular vote? We would, for now, leave this situation to be addressed, if at all, by corporations themselves. To be sure, the ability to buy votes in advance of a particular vote might lead insiders to do so, and then propose no such amendment. Thus, if large scale insider hedging becomes common, this issue might need to be revisited.

C. Strategies Affecting the Share Lending Market

    1. The Importance of Share Lending and Recent Industry Developments

A second family of regulatory interventions would focus on supply and demand for share borrowing and lending. Share lending plays a key role in decoupling. First, the very act of borrowing decouples economic ownership from voting ownership. Tax differences between the return on shares and the mirror return paid by the borrower to the lender aside, borrowing of shares is really borrowing of votes. In record date capture, a share borrower simply keeps the shares and votes them. Other empty voting strategies often rely on share lending as well. In particular, the strategy (buy shares, hold short equity swaps) will often have as a counterparty a derivatives dealer who is short shares (having borrowed them) and long the equity swap.

**\*708** The cost of share borrowing is quite low. A typical borrowing cost is around 20 basis points per year, or less than 0.1 basis points (0.001%) per day. Thus, unless prices are higher for borrowing on a record date, one can borrow the votes on $1 billion of shares for less than $10,000 ($1 billion x .001% = $10,000).

With regard to scale, the stock loan market is huge and growing. In the United States alone, the volume of outstanding stock loans at mid-year 2005 was about $1.5 trillion. [FN185] Most stocks can be borrowed. During the second quarter of 2007, $3.6 trillion of U.S. equities were available for borrowing from just 16 lending banks, based on a survey by the Risk Management Association (RMA). [FN186] These shares represent roughly 17% of the combined market capitalization of the NYSE and NASDAQ. [FN187] Additional shares would be available from other sources, including broker-dealers who hold shares for retail investors or hedge funds, and from institutional investors who run their own lending programs. A knowledgeable source advised us, as a conservative "guesstimate," that, in normal (non-takeover) circumstances, roughly 20% or more of the shares of a typical large U.S. publicly held company can be borrowed. [FN188] In the U.K., one source suggests that for large firms in the Financial Times Stock Exchange (FTSE) 100 Index, as much as 50% of their shares are generally borrowable. [FN189]

On the lending side, stock lenders know that their vote is unlikely to swing an election. Moreover, lenders who recall shares on record dates--thus forcing borrowers to find an alternate lender, perhaps at a difficult time if other lenders also behave this way--are less reliable lenders, and are likely to be chosen last when borrowers choose their lenders from among a normally ample supply or to receive lower lending fees. To be sure, if enough institutions recalled and voted shares, **\*709** a separate market might develop for lending shares that would be recalled on record dates, with a lower borrowing rate. Such a market does not yet exist. A different balance of supply and demand might also cause a spike in the price of borrowing on the record date, which would then constrain demand, but that too has yet to happen.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2. Safe Harbor for Voting Instead of Lending; Lending Disclosure

How might we change the current equilibrium--in which share borrowing for empty voting is easy and lender recalls of shares for voting are the exception-- without significantly disrupting the valuable, nonvoting reasons for share borrowing, including hedging and short-selling?

Regulators already encourage institutions to recall and vote lent shares. The SEC does so for mutual funds; the Department of Labor does so for ERISA pension funds. [FN190] But these are only nudges. Moreover, the record date, and hence the need to decide whether to recall shares, often occurs before the voting agenda is known. Indeed, it sometimes takes effort even to learn the record date before it has passed. [FN191] These regulatory nudges appear to have limited effect on lending behavior. They may, however, provide an implicit safe harbor for institutions which prefer to vote their shares rather than lend them, against a claim by their clients or beneficiaries that the institution breached its fiduciary duty by not maximizing lending income. The reliability of the safe harbor is uncertain; we know of no cases challenging decisions to vote shares instead of lending them, or vice versa.

An initial step would be to create a firm regulatory safe harbor, for all major classes of institutions, if they vote shares rather than lend them. A safe harbor is appropriate because for major shareholders, voting is plausibly socially optimal, even if not privately optimal for any *710 one shareholder due to the low likelihood that one's vote will be determinative.

A further disclosure step, which we recommended in Part III, would be to require institutions to disclose the fraction of shares they voted, could have voted but did not, and the fraction lent. This disclosure could create soft pressure on some institutions (especially mutual funds and public pension funds) to vote instead of lend, or at least to explain their lending decisions. [FN192]

We do not recommend that regulators require institutions to recall and vote lent shares. For many routine votes, this would impose costs, for little benefit. Moreover, widespread recall of lent shares could create an "artificial" squeeze on the supply of lendable shares, which might undermine the market for short-selling and for hedging strategies which employ borrowed shares. Also, many institutional investors want to stay on good terms with company managers. Such a dynamic could explain why, when acquirer shareholders must vote on acquisitions, the acquisitions are almost invariably approved, even if stock price reactions suggest that the acquirer has overpaid. [FN193] The fear that mutual fund managers would be more likely to cast pro-management votes if their votes were disclosed created controversy over SEC rules which require this disclosure. [FN194] Institutions' willingness to be persuaded could help to explain why, when a vote is close, managers can often round up just enough yes votes to win. [FN195] Meanwhile, public pension funds are not beholden to companies, but can have political motives. Thus, it is not clear that forcing institutions to vote is the right approach, when the alternative might often be for the institutions to lend shares to unconflicted hedge funds.

We do recommend, however, that regulators address the practical problem that institutions' efforts to recall lent shares not infrequently *711 fail. [FN196] Strong regulatory encouragement, and perhaps a requirement, that institutions have the technical ability to recall shares in order to vote would prompt technical changes in the ways shares are lent, which would facilitate both recall and disclosure of lending activity.

At present, market participants are embedded in an overall system in which recall is sometimes difficult. Indeed, some institutions currently do not lend shares in part because of difficulties in recalling shares. [FN197] Change will take collective action, which institutional lenders may not have sufficient incentives to undertake. An analogy is to regulatory forcing of shorter share settlement periods. The regulation should specify the minimum period needed to achieve recall. We expect that 48 hours will be enough, and 24 hours might well suffice as the regulations develop, even if not immediately.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

We also recommend that broker-dealers, who lend shares held in margin accounts in street names, should be required to hold enough shares on the record date so they can honor the voting instructions they expect to receive, based on past experience with client voting instructions. The regulations can specify a safety margin or a maximum acceptable probability of not honoring all instructions. For enforcement, we would require broker-dealers to, first, notify their clients if voting rights are limited because the broker lent out too many shares, and second, publicly disclose instances in which it could not honor voting instructions because it had lent too many shares. We would limit this rule to shares held in individuals' and other noninstitutional accounts. Institutional investors can fend for themselves and decide whether and on what terms to lend their own shares. Under this approach, when broker-dealers lend shares, these shares would otherwise likely have gone unvoted. The lent shares will often be voted by the new holder of the shares. The overall proportion of voted shares will rise, and the impact of rational apathy, which leads some shareholders not to vote, will be modestly reduced.

Broker-dealers should also be required to implement internal procedures so they know how many votes they hold, know how many voting instructions they have received, and can reliably vote only the shares they are entitled to vote, thus avoiding overvoting. This would *712 apply to all the shares they hold of record, for both individuals and institutions. The regulatory push here is needed because broker-dealers may have insufficient incentives to get this right on their own. [FN198]

If one sharply narrows the time gap between record date and meeting date, as we recommend below, broker-dealers will receive voting instructions before the record date. They could then be required to recall enough lent shares to honor all instructions received by a set time before the record date, plus any instructions they expect, based on experience, to receive between then and the record date. One might also require them to adopt procedures to rapidly process instructions that come in shortly before the record date.

### 3. Lending to Empty Voters: Know-Your-Customer's-Purpose Rules

There are already some limits on lending for record date capture. In the United States, Federal Reserve Board Regulation T limits the purposes for which broker-dealers who don't deal with the general public can lend shares. These broker-dealers must make a good faith effort to determine the borrower's purpose and cannot lend shares for voting purposes. [FN199] However, even for covered broker-dealers, Regulation T would not prevent a transaction in which a client acquires votes without economic ownership through a combined share purchase and equity swap. Yet, as we discussed in Part I.C, this transaction is a full substitute for a direct share loan. In the U.K., market norms also limit record date capture. But here too, these norms apparently do not impede the long shares, short equity swaps equivalent. [FN200]

*713 We recommend expanding the reach of these rules and norms. They should apply to all banks, broker-dealers, and other derivatives dealers. Moreover, they should apply not only to share borrowing, but also to matched share purchases and equity swaps, and other multi-element transactions which are economically equivalent to share borrowing. To be sure, an empty voter could likely still achieve the same end by using different dealers for the two legs of a transaction, but this would increase trading and market impact costs. [FN201] Our proposed expansion of the current know-your-customer's-purpose rules will impose some transaction costs and could delay some share borrowing transactions. Yet for most of the year, borrowing for empty voting purposes is unlikely. One might therefore want these rules to apply primarily, or require more careful checking of the borrower's purpose, during the period directly preceding a record date.

One might ask, if we bar banks, broker-dealers, and other derivatives dealers from lending to empty voters, should other institutions be subject to similar limits on lending? Our answer is no. The entities we propose to regulate usually have little or no economic ownership of the underlying shares and hence no reason to care how their borrower votes. Other investors are usually economic owners, and could be rationally deciding to lend their votes to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

others, who may be more informed or less conflicted voters. [FN202]

Suppose that most share lenders were to recall and vote their shares on record dates. One likely market response would be a higher lending price for the record date. If the overnight lending price were high enough, some lenders might then decide whether to lend or vote depending on that price. Limited availability of borrowable shares, or a high-enough borrowing price, would also affect many hedging strategies, as well as short selling, which depends on the availability of *714 borrowed shares. In theory, widespread recall of borrowed shares could create a one-day short squeeze. Moreover, right now, the market imposes a large cost on lenders who recall and vote shares-- they become less predictable and hence less desirable lenders. One possible solution to both problems would be to allow naked shorting, for the record date alone, for borrowers who have already established positions (say, for a minimum number of days), so that the short seller could simply return the borrowed shares, and reborrow right after the record date, without having to unwind any other transactions. We raise this as a possibility, without recommending it, because we do not believe we understand the implications of naked shorting well enough, and there is no immediate need for this step. [FN203]

4. Recent Changes in Share Lending Practices

Recent publicity on the role of share lending in empty voting may be leading some lenders to voluntarily change their practices. [FN204] For instance, some institutional investors are now hiring independent monitors to try to ensure that securities loans go to "reputable, responsible borrowers," rather than to empty voters who might act against the interests of long-term shareholders. [FN205] These moves by individual institutions are helpful, but may have limited effect unless they are formalized in an explicit industry self-regulatory agreement, and address both direct lending for record date capture and indirect equivalents. Such an expanded self-regulatory effort might gain support from the Hedge Fund Working Group report, which recommends*715 a regulatory ban on the use of borrowed shares for empty voting purposes. [FN206]

D. Strategies Focused on Voting Architecture

The new vote buying has put stress on a "voting architecture" developed at a time when information about the voting agenda, and the votes themselves, were on paper, which moved slowly around a large country long before the emergence of modern decoupling strategies. That voting architecture is greatly complicated by the current need to embed it within a system of record ownership of most shares, developed to facilitate share trading and payment of dividends.

It is time to rethink the voting architecture in any case to reflect instant electronic access to the voting agenda, the potential for instant delivery of votes, and the potential for direct voting of shares by economic owners. The extra stress on the system due to new forms of decoupling might provide the impetus for that broader rethinking. We propose below a number of reforms-- some technical and narrow, others involving major restructuring of the current architecture.

1. Technical Changes

Several technical changes to current practices would facilitate voting by economic owners. First, the voting agenda should be available before the record date, and the record date should be publicly known before it has passed. This will ensure that share lenders know what they will be voting on when they decide whether to recall lent shares, and know when they will have to recall the shares. The SEC could use its "proxy rules" authority to require companies to announce the record date and a tentative agenda, say five business days before the record date.

Second, dividend record dates and voting record dates should be split. Right now, many companies combine them. Some investors will borrow shares on the dividend record date as part of a dividend capture strategy. If the

156 UPALR 625
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

two record dates coincide, the dividend capture investor also acquires votes, yet is an empty holder who will likely not exercise them. There is no substantive reason for the two dates to coincide. The SEC could use its proxy rules authority to require that the two dates be separated, say by at least five business days.

**\*716** Third, when overvoting occurs, the record owner should be treated as voting the number of shares it is entitled to, with yes, no, and abstain votes reduced proportionately. The current Delaware approach, in which a million valid votes are tossed out if a record owner reports 1,000,001 votes, has nothing to recommend it, at least nothing we can think of. [FN207] This would require a change in Delaware case law on how tabulators should handle overvotes, but no change in the Delaware corporate statute, which already provides a procedure for tabulators to reconcile overvotes. [FN208] The SEC could also prevent most overvoting by requiring record owners to verify the number of shares they are entitled to vote before voting and vote only that number of shares, in proportion to voting instructions received.

## 2. Direct Voting by Economic Owners

The current voting system routes many votes by economic owners, clumsily, with error and delay, through record owners. This is not inevitable. If we want to get voting right, we could greatly simplify the current system by getting record owners out of the middle, and having votes travel directly from economic owners to the company or to an outside vote tabulator. We assume below that a vote tabulator receives the votes, but the mechanics do not depend on this assumption.

This is not a new idea. Jay Brown suggested something similar in 1988, and other scholars have done so more recently. [FN209] Russia implemented a similar approach in 1995. [FN210] The Business Roundtable **\*717** proposed something similar in 2004. [FN211] Any country with a single central depository most likely has direct voting as well. [FN212] It would mean that record owners would have to tell companies who their economic owners are. However, most major shareholders are already known due to ownership disclosure rules. Firms know the identities of a fair number of other shareholders under SEC "OBO/NOBO rules," which require record owners to ask economic owners whether they object to disclosure of their identity to companies, and to disclose the identities of non-objectors. [FN213] Shareholders who wanted to remain anonymous could still hold through shell companies, or through nominee accounts at broker-dealers.

If anonymity were a serious concern--more than we believe it to be--companies could be required to use SEC-licensed vote tabulators, and record owners could provide information about economic owners only to tabulators, who would not disclose it to companies. This would be similar to the confidential voting procedures already used by many companies. If a company does not use a tabulator, or otherwise learns about votes as they come in, presumably a dissident should have the same access to this information.

Such a system is compatible with record ownership, but would be likely to affect share lending. For example, record owners might need to lend from identified accounts, instead of from an unidentified pool. Or record owners would need to tell tabulators something like "the following economic owners hold in aggregate x votable shares; please limit their voting rights accordingly." If voting is direct, there could be pressure to advise margin account holders if some of their votes were not counted because the corresponding shares had been lent; that disclosure could reduce willingness to hold shares in margin accounts. Tracing the impact of direct voting on share lending is beyond the scope of this Article.

Direct voting would require changes in both SEC and stock exchange rules. But it is not technically difficult; indeed, it is simpler **\*718** than the current system. It builds on technology that is already in place under the NOBO rules. Its greater simplicity should reduce the breakdowns that plague the current system, in which valid votes are not counted.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3. Minimizing the Gap Between Record Date and Meeting Date

For a typical firm, the time gap between the record date and the meeting date is about a month. That time used to be needed--for paper information about the meeting and requests for voting instructions to make their way through layers of record holders to the economic owner and back up. Today, that delay is largely unnecessary. Economic owners can be notified about the meeting by e-mail, obtain information about the meeting electronically, either from the company or the record owner, and give voting instructions online. Moreover, trading velocity has increased, and consequently so has the divergence between who holds shares on the record date and who still holds them on the meeting date; today, roughly 10% of a typical firm's shares will trade during this period. [FN214] Some of these will be round-trips, but still a significant mismatch between voting rights and economic rights is likely. The mismatch could be higher for an important vote, because investors will trade in anticipation of the voting outcome. The time gap also makes possible the strategy employed in Henderson Land, of borrowing on the record date, voting to decrease share price, and profiting by selling short before the meeting date.

Yet it is straightforward to compress the time between record date and meeting date. Suppose first that economic owners cast votes directly with tabulators. A shareholder could say "vote all my shares yes," and this would simply happen. The shareholder could also split votes by saying, for example, "vote 60% of my shares yes, 30% no, and 10% abstain." Or the shareholder could say "vote 1000 shares yes," and if it only holds 900 votes, then only 900 will be counted. If the shareholder says "vote 700 shares yes and 300 shares no," but owns only 900 shares, the tabulator would honor voting instructions pro rata, similar to our proposal above for overvoting. Under this approach,**\*719** shareholders could vote before the record date, and trades between the date they vote and the record date would not invalidate their voting instructions. [FN215]

The time gap between record date and meeting date turns on the vote tabulator's ability to verify voting rights, and match these against voting instructions. The tabulator will receive and verify votes as at present, as they come in, and enter them into a computer database. The tabulator will then receive ownership data from the firm and record holders, match the two, and report voting outcomes. In principle this could likely be done overnight, based on ownership as of the close of the prior trading day. At least initially, it might be more practical to allow an extra business day. Thus, voting for a Wednesday meeting would be based on ownership at Monday's close, and so on.

International comparisons suggest that this time frame is reasonable. The U.K. has compressed the time between record date and meeting date to two business days; Germany may effectively have a two-business-day period as well; France has three business days; and Spain has five days. [FN216] A recent EU Directive contemplates member states eliminating record dates entirely and allowing electronic voting at meetings, as long as shareholder identities can be established. [FN217]

**\*720** This would require amending state corporate laws to eliminate the current minimum time gap between record date and meeting date (ten days in Delaware [FN218]). The company should still be required to provide information about the voting agenda in advance of the meeting (a ten-day minimum period seems reasonable). [FN219] Under our proposal, voting would largely, perhaps completely, precede the record date. Thus, one would also need to amend state corporate law to allow voting instructions which do not specify the number of shares to be voted, such as "vote all my shares yes," and to allow proportional allocation of votes if a shareholder casts a number of votes that exceeds his actual voting rights. [FN220]

E. The Substance of Voting Procedure: Last-Minute Scrambles for Votes

Compressing the period between record date and meeting date will have substantive implications for how proxy contests are carried out. If the record date is established well before the meeting date, then ownership is fixed. For a contested issue, both sides can lobby voters, but they can no longer simply buy shares and accompanying votes. The time for that will have passed. Under our proposal, in contrast, shares can be bought--and then voted--until very

close to the meeting date.

We see this as generally fine, as long as the voters are real, rather than empty. But it could be problematic if some safeguards are not put into place. First, insiders often have private knowledge of how the voting is going. They should not be able to use that information to buy just enough shares, just in time, to win a close contest. Managers usually win the close votes already. [FN221] Adding last-minute share buying to their arsenal will not improve matters. Thus, we believe that section 16(b) insiders (directors, officers, and 10% shareholders), and the **721 company itself, should be barred from buying and then voting shares during a period just preceding the record date, say five business days. The same rules could apply to explicit outside proxy contestants.

We would still allow the contestants to urge their friends to buy and vote shares--indeed, it is hard to see how one could prevent this. But that raises a second risk. Buying real shares is expensive, but buying empty votes is cheap. Unless we have good rules in place to deter empty voting, the quality of elections might decline. Thus, this proposal assumes that we also implement the anti-empty-voting proposals discussed above.

### V. Extensions of the Decoupling Framework

We briefly discuss here several implications and extensions of our decoupling analysis: decoupling of shareholder rights and obligations beyond voting and economic ownership rights and disclosure obligations (Section A); debt decoupling (Section B); and the potential for return of street sweep takeover bids (Section C). [FN222]

A. Other Shareholder Rights and Obligations

1. Unbundling Shareholder Rights

In Decoupling I and in the bulk of this Article, we focused on two shareholder rights--"economic ownership" (the right to receive the economic return on shares) and voting rights--and one obligation--the obligation to disclose large ownership stakes. We also did not unpack the components of economic ownership. But shareholders have additional rights, large shareholders can have additional obligations, and economic ownership can be decomposed into smaller components.

We begin here to discuss that further set of rights and obligations, and the associated potential for unbundling. Empty voting, hidden ownership, and morphable ownership are important uses of decoupling, but they are not exclusive.

Shareholders who have full ownership of shares generally have at least the following rights:

**722 • they benefit from fiduciary duties of directors and officers, including the understanding that directors and officers should act in the shareholders' interest, even if shareholders have only limited ability to force this outcome, beyond the power, flowing from voting rights, to replace directors; [FN223]
• the right to sue, both derivatively and directly, to enforce the fiduciary duties of directors and officers; [FN224]

• the right to inspect the company's books and records; [FN225]

• the right to present resolutions at a shareholder meeting under state corporate law, and to include resolutions in the company proxy statement under federal securities law; [FN226]

• several rights that can be seen as components of economic ownership:

o appraisal rights;

o rights to receive dividends;

o rights to be paid in liquidation (after everyone else); and

o preemptive rights to acqure additional shares, in an offering which involves preemptive rights. [FN227]

Some of these rights are inherent in longstanding concepts of what it means to own shares; one might call these "embedded rights." Others are of more modern vintage. For each, one must ask: How can this right be decoupled from others? What impact does decoupling of some rights, such as decoupling of economic ownership from voting ownership, have on other rights? Full exploration of these issues is beyond the scope of this Article, but we sketch here some elements of the complex landscape.

Inspection rights. Some other rights will follow voting rights, without regard to economic ownership. In Delaware, for example, the *723 courts have allowed "empty inspecting" of the company's books by a person with no net economic ownership. [FN228]

Lawsuit rights under corporate law. In Delaware, for voting rights, only formal record ownership counts. In contrast, a shareholder who holds shares indirectly through a record owner can bring a lawsuit. Here, economic ownership suffices. Moreover, the court will not ask whether an apparent economic owner has hedged its position. "Empty suing" is permitted. [FN229]

Lawsuit rights under securities law. In federal securities cases, economic ownership suffices. A holder of equity swaps is a proper plaintiff in a securities class action under Exchange Act section 10(b). [FN230]

Shareholder resolution rights. Under Delaware law, only shareholders can attend a shareholder meeting and present resolutions. [FN231] However, a record owner, on request, will provide a proxy to an economic owner who wishes to attend and present a resolution. In contrast, for shareholder proposals included in the company proxy statement under Rule 14a-8, beneficial ownership in the 13D sense counts. Under SEC rules, persons who have filed a Form 13D, 13F, or 13G stating their beneficial ownership can simply present a resolution; other economic owners must provide proof of ownership, provided by the record owner. [FN232] Hedging does not affect the right to present a proposal, but would likely need to be disclosed under antifraud rules. [FN233]

Appraisal rights. The recent Transkaryotic case offers a road map for what can be termed "empty appraisal." [FN234] An investor acquired shares in the secondary market, largely after the record date for the vote on a merger. Thus, it had not itself voted against (or not for) the merger; nor could it show how or if these precise shares had been voted. The shareholder argued that more shares than it held had either not been voted, or had been voted against the merger, and the *724 particular shares it held therefore might meet the statutory requirement of not having been voted for the merger. [FN235] The Delaware Chancery Court found that this was a sufficient basis for exercising appraisal rights. [FN236] We focus here not on the merits of the decision, but on a decoupling strategy that it makes possible.

Under Transkaryotic, a hedge fund can seek appraisal even if it held neither economic nor voting ownership on the record date. It also need not hold net economic ownership when it seeks appraisal--nothing in the Transkaryotic decision suggests that hedging one's share ownership would result in the loss of appraisal rights. The hedge fund in Transkaryotic was a net economic owner, just not on the record date. But this need not always be the case. Thus, the right to seek appraisal potentially can be doubly empty--empty of the voting rights which were heretofore required to be held and exercised against or not for the deal, and potentially empty of economic ownership as

well. The court recognized that gaming opportunities were possible, but felt that a remedy had to come from the legislature. [FN237]

Unbundling economic ownership. Decoupling is also possible for the components of economic ownership. For example, strategies have been developed to use equity derivatives to avoid the withholding tax on dividends and, for tax-exempt entities, unrelated business income tax. [FN238] Moreover, just as there are record date capture strategies to obtain voting rights, there are similar capture strategies, based on owning shares on dividend record dates, to obtain dividends. These strategies are attractive because of tax quirks in particular countries. [FN239]**725** Preemptive rights can be decoupled as well; they can be acquired by borrowing shares, without economic ownership. [FN240]

In our view, investors' creativity in acquiring various rights--to sue, inspect books, obtain appraisal, or exercise preemptive rights--without economic ownership, if it becomes more than occasional, will call for a legislative or judicial response. At a minimum, we believe that courts should require disclosure of coupled and related non-host assets which affect economic interest in corporate and securities lawsuits. Perhaps too, the courts should look skeptically on exercise of rights without meaningful economic ownership, especially efforts to exercise rights with negative net economic interest.

2. Unbundling Shareholder Obligations

We turn next from rights to obligations. In addition to ownership disclosure, voting ownership conveys additional obligations, which can be sidestepped by acquiring economic-only ownership. First, anyone who crosses 10% voting ownership becomes subject to short swing profit forfeiture under Exchange Act section 16(b). This outcome can be avoided by holding a voting stake of less than 10%, regardless of one's total economic ownership as well.

Second, the Hart-Scott-Rodino Antitrust Improvements Act (Hart-Scott-Rodino Act) requires an investor which intends to purchase a sizeable stake in another company to obtain advance clearance from the U.S. antitrust authorities (Federal Trade Commission and Department of Justice). [FN241] An exemption lets institutional investors who have no control intent buy up to 10% of a company's shares, regardless of dollar amount. [FN242] However, the Hart-Scott-Rodino Act is triggered only by acquiring "voting securities"; [FN243] cash-settled derivatives arguably do not count. This may let an acquirer first obtain economic-only ownership, then seek antitrust clearance, then morph its economic ownership into voting ownership as well.

Third, some state antitakeover statutes impose obligations or create disabilities (such as loss of voting rights or inability to complete a **726** merger) if a shareholder crosses a specified ownership level. [FN244] In Indiana, for instance, when any person acquires either share ownership or "the power to direct the exercise of voting power" beyond a certain threshold, the shares generally lose voting rights unless the other shareholders vote to restore them. [FN245] In Delaware, an acquirer who crosses 15% ownership without the consent of the target board is generally barred from completing a merger with the target for three years. [FN246] While there are no cases on point, it seems unlikely that cash-settled equity derivatives would count toward the threshold. However, given the similar voting rights-based concept underlying the Schedule 13D trigger, we suspect that most practitioners would assume that the matched shares would generally not need to be included.

Fourth, standard poison pills are triggered by owning more than a specified percentage of the target's shares. The definition of ownership used in most pills is borrowed from Exchange Act section 13(d), and does not capture cash-settled derivatives. To be sure, pill documents could be amended to include economic-only ownership, if companies saw the need to do so.

A fifth avoidable obligation arises in countries with "mandatory bid" rules, under which a shareholder who crosses a threshold for near-controlling ownership, often 30% or 33%, must offer to buy all remaining shares at the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                    Page 75
156 U. Pa. L. Rev. 625
(Cite as: 156 U. Pa. L. Rev. 625)

price paid to acquire its stake. But the threshold is measured in terms of enforceable voting rights--the morphable rights that often accompany economic ownership do not count. Examples in Table 1 of the use of economic-only ownership to avoid making a bid for all other shares include Fiat (Italy), SAI-Fondiaria (Italy), and John Fairfax Holdings (Australia).

Shareholders may have additional obligations in particular countries, which can be avoided through decoupling. In Korea, for example, the controlling shareholders of Hyundai Elevator wanted to hold enough shares in Hyundai Merchant Marine (Marine) to block a takeover bid for Marine by Hyundai Heavy Industries (controlled by a separate branch of the Hyundai group's founding family). If it acquired more shares directly, it risked being considered a "holding company" under Korean law, with various adverse consequences. [FN247]

*727 Instead of purchasing Marine shares directly, Elevator arranged for outside investors--Cape Fortune in 2004 and Nexgen Capital (a subsidiary of French bank IXIS) in 2006--to hold the shares, while using equity swaps and other contracts to protect the investors against loss, keep 80% of any gain, ensure that the investors voted as directed, and keep the right to acquire the shares when the contract period expired. The parking in this case was "hard," because there were explicit contracts on economic return, voting, and disposal of the shares. The Korean Fair Trade Commission held in 2007 that Elevator's strategy was indeed outside the Holding Company Act. Korean observers have speculated that other firms can use similar strategies to avoid the holding company regulations. [FN248]

Similarly, in the United States, soft parking potentially provides a way for a firm to avoid being considered to be an "investment company" under the Investment Company Act of 1940. [FN249] An entity can become an "inadvertent" investment company if, among other things, it "owns . . . investment securities having a value exceeding [40%] of the value of such issuer's total assets." [FN250] "Investment securities" include common shares in another company, but might well not include equity swaps or other derivatives. [FN251]

*728 Sometimes, the obligation to be avoided arises under contract. In 2007, Russia's Alfa Group, which owned stakes in two competing Ukrainian mobile telephone companies, faced an arbitration award requiring it to cut its indirect ownership in one of them, Kyivstar, to below 5%. It complied, or claimed to, by selling half of its stake to a Kazakh company, but retaining the right to repurchase the shares. [FN252]

B. Debt Decoupling and Empty Crediting

Our analytical framework for equity decoupling, including many of its functional elements and terminology, can be extended to debt contracts. We discuss here some forms of debt decoupling and sketch some of their implications. Full treatment is beyond the scope of this Article. We offer a fuller treatment elsewhere. [FN253]

Just as the conventional understanding of share ownership assumes the bundling of a standard set of rights and obligations, so too a traditional conception of debt ownership includes a standard package of economic rights (principally principal and interest payments), control rights, default rights, and other rights and obligations under contractual covenants, federal bankruptcy law, and, to a limited extent, state corporate law. Just as shareholders can easily reduce or eliminate their economic exposure by holding equity derivatives and other coupled assets, creditors can often reduce or eliminate their economic exposure through credit derivatives and other coupled assets. Creditors, like shareholders, can hedge in a number of ways. Just as shareholders can be empty voters, so too we can have "empty creditors." And so on.

One simple way for a creditor to hedge involves a credit default swap. The holder of the long side of a credit default swap accepts default risk from the short side. A creditor can thus hedge default risk by holding both risky debt and an appropriate short credit default swap position, much as a shareholder can hedge equity risk by holding both shares and the short side of an equity swap. A creditor can also hedge through other credit derivatives (e.g., a

credit spread option *729 whose payoff depends on the spread between the yield on a particular bond and a reference yield) or through strategies involving the company's shares, such as buying put options on the shares, or taking the short side of an equity swap.

Another general strategy for debt decoupling arises from repackaging of debt. A "loan participation" offers a simple example: a lead bank lends money to a corporation, but then transfers some, most, or even all of its economic return to other lenders. Often, the lead bank agrees to exercise its rights under the loan agreement to declare or waive defaults, amend covenants, and so on, as instructed by the buyers of the loan participations, in proportion to dollar amount owned. But some loan participation contracts leave these control rights with the lead bank. [FN254] If so, the lead bank will have greater control rights than economic exposure. Decoupling is more common if the loans or other debt obligations are securitized into a collateralized loan obligations (CLOs) or collateralized debt obligations (CDOs). A trustee holds the formal rights as to the portfolio of debt. The terms of the CLO or CDO may or may not give the buyers of the CLO or CDO tranches rights to instruct the trustee on how to act. The interests of holders of different tranches can also differ widely. [FN255] To complicate matters further, loan participants or CLO or CDO holders may be fully or partly hedged, or have other interests in the company's equity or debt.

The current housing finance crisis highlights some of the issues arising from debt decoupling. In the past, homeowners facing financial difficulty could try to negotiate directly with lenders for waivers and loan modifications. This is harder today. Many home mortgage loans are resold by the initial lender, securitized, or both. If a loan has been securitized, the effective holder of the lender's contractual rights--the servicing agent for the loan that deals with the homeowner--may have limited authority to make accommodations--or too *730 little economic ownership to want to do so. [FN256] The economic interest will often be spread among a wide range of investors, potentially around the world. Even if these investors had congruent interests--and often they do not because of the way the underlying obligations were divided into tranches--the transaction costs simply to find them would be prohibitive. Sometimes it can be unclear who holds the right to foreclose. [FN257]

Beyond its implications for particular borrowers and creditors, debt decoupling may affect the stability of the world financial system. A potential benefit of decoupling is improved risk spreading, and thus reduced concentration of default risk on a limited number of financial institutions. On the other hand, the resting place of risk becomes uncertain. [FN258] Market participants often want to deal only with reliably solvent counterparties. When a new source of risk emerges, if the holders of that risk cannot be readily identified, illiquidity can spread, and compound the losses from the initial risk event.

An additional concern is that, when debt is repackaged and resold, it becomes harder to modify the initial terms of the debt contract even when it would be efficient for both sides to do so. For any one loan, this is an efficiency loss and no more, to be weighed against the risk-spreading and other benefits of securitization and other forms of decoupling. But for a zillion loans, the inflexibility of the relationships among creditors and debtors creates systemic risk.

In the rest of this section, we focus more narrowly on corporate debt and on hedging through credit default swaps and discuss some implications of this form of debt decoupling. A creditor who has partly or fully hedged through a credit default swap nevertheless retains*731 full contractual rights under the loan agreement or bond indenture, and full voting rights in bankruptcy. In contrast, the holder of the long side of the credit default swap bears default risk, but has no control rights. Control rights have been decoupled from economic rights. By analogy to empty voters, we can call a creditor which has hedged its economic risk an "empty creditor."

Just as equity investors can have negative economic ownership, and hence incentives to vote against the interests of other shareholders, so too can creditors. Suppose, for example, that a hedge fund, bank, or other investor holds $200 million of a company's bonds, but is also long a $500 million notional amount in credit default swaps on this debt. The investor has negative net economic ownership, and thus has an incentive to act to cause the company to fail--for example, to oppose an out-of-court restructuring--because it will profit more from its swap position than

it will lose from its bonds. Within bankruptcy, the investor has an incentive to vote in ways that will reduce the value of the debt class it holds. Here too, there is a parallel with equity investors, who can potentially hold shares yet have negative net economic ownership. [FN259]

The complexity of multiple classes of both equity and debt offers many possibilities for negative economic ownership. Instead of being long credit default swaps, our example investor could be long debt and short shares. It would then want to recover on its debt position but want to see little or no value left over for equity holders, so as to profit from its short position. Or, an investor could be long one class of the company's debt, and short another. It could be long both shares and debt, and seek to use its debt position primarily to generate a gain on its share position. And so on.

There is also an analogy to a shareholder's economic interest being affected by its positions in other companies-- which we call related non-host assets. A creditor could hold long or short positions in the shares or debt of the company's competitors, giving rise to complex incentives with regard to this company's value.

*732 Empty crediting can also affect creditor actions under the Bankruptcy Code. Suppose a creditor is fully hedged, with zero economic interest. The Code assumes that creditors will act to further their apparent economic interest, and will favor a bankruptcy filing only if they expect to receive more in bankruptcy than in an out-of-court restructuring. However, an empty creditor may prefer to force the company into bankruptcy, rather than agree to a restructuring, because the bankruptcy filing will trigger a contractual payoff on its swap position.

One important case in which "empty crediting" is rumored to be common involves investing in the debt of financially troubled companies. When a firm gets into financial distress, specialized "distressed debt" or "vulture" investors often accumulate large stakes in a debt class that are likely to be pivotal in the expected restructuring. For example, they may acquire a "blocking stake"--a position, typically one-third of a pivotal debt class, which may let the holder block adoption of a reorganization plan favored by other creditors, which ordinarily requires a two-thirds vote of creditors (though the judge can still approve a plan which does not receive this level of support). [FN260] Unless hedged, these large positions convey large exposure to default risk. It is widely believed that distressed debt investors often hedge some of this risk, thus acquiring a large voting block without corresponding economic exposure.

These possibilities raise obvious questions: How common is partly or fully empty crediting? How often do creditors have negative economic ownership? We simply don't know. Empty crediting occasionally comes to light in news stories. Bankruptcy practitioners worry about it. [FN261] But there is no general requirement to disclose hedges, either in or out of bankruptcy.

Bankruptcy Rule 2019(a) requires disclosures by creditors who serve on ad hoc creditor committees of direct holdings of the company's debt and equity. [FN262] But it is unclear whether this rule requires *733 disclosure of hedges, such as credit default swaps, which involve holding coupled assets rather than the company's own securities. One recent bankruptcy court decision requires disclosure of at least some coupled assets; another does not. [FN263] In any case, creditors can avoid this rule in a number of ways, including not serving on ad hoc committees and, oddly, gaining membership on an official creditor committee; official committees are exempt from Rule 2019. [FN264]

For the extreme case of creditor negative economic ownership, one sign of smoke, which might signal an underlying fire, is the recent tendency for credit default swap form contracts to require the long swap holder, if it is also a creditor, to act in the interests of other creditors. This suggests concern that the long swap holder might not otherwise do so. But how the swap counterparty can enforce this obligation, without disclosure either of hedges or of how the long swap holder has voted on a restructuring, is anyone's guess.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                                    Page 78
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

We do know that the opportunity for large-scale, undisclosed creditor hedging is present. Over the last decade, the credit default swap market has exploded. The notional amount of swaps outstanding often exceeds the amount of actual debt, sometimes many-fold. [FN265] We have also heard from bankruptcy judges that they sometimes see odd behavior in their courtrooms, which "empty crediting" might help to explain. For example, one bankruptcy judge described a recent case wherein a junior creditor complained of too high a valuation being assigned to the bankruptcy estate, for reasons the creditor did not offer to the judge. One possible explanation is that the junior *734 creditor had negative economic ownership of this debt class--or perhaps of the company's shares.

Corporate debt decoupling is also possible. Most bond indentures allow a company to hold and vote its own bonds. Even if an indenture does not allow the company to vote its own bonds, soft and hard parking offer ways to influence a vote on a restructuring proposal, in or out of bankruptcy.

There are parallels to equity decoupling with respect to disclosure as well. On the equity side, there is some disclosure of hedging and thus of economic ownership. [FN266] On the credit side, there is usually none. "Hidden creditors" can exist as well--for example, investors who have taken the short side of credit default swaps. The extent to which this economic-only debt ownership is likely to be morphable, if the investor decides it wants covenant rights or voting rights in bankruptcy, we do not know, but the possibility surely exists.

Just as equity decoupling can potentially undermine standard assumptions that underlie the equity side of corporate governance (call this "equity governance"), so too on the debt side (call this "debt governance"). Both loan contracts and the Bankruptcy Code are premised on the assumption that creditors are averse to downside risk, but otherwise have an economic interest in the company's success and will behave accordingly. Voting in bankruptcy, in proportion to principal amount of debt held, rests on the same logic as a one-share-one-vote regime on the equity side--that control rights should be held by those with an incentive to increase the value of the firm, or at least the value of the asset class that is held. Large-scale, hidden debt decoupling weakens our ability to rely on these assumptions. Empty crediting implicates other core aspects of the bankruptcy process, including which creditors should serve on official or ad hoc creditor committees, whether the court should approve paying an ad hoc creditors committee's legal fees, and the weight a court should give to the views of particular creditors.

All this pushes in several directions. The first and most direct implication involves disclosure. We believe that disclosure of coupled assets should become a routine part of bankruptcy proceedings, perhaps with an exception for de minimis hedges or general hedges tied to an asset class, rather than a particular company's debt. Put differently, fully or partly empty creditors should disclose their "hidden non-*735 interest": their lack of economic exposure to the company. Specifying details of such a disclosure regime is beyond the scope of this article.

A more complex disclosure area involves knowing who holds economic exposure to the company. This "hidden debt ownership" corresponds roughly to "hidden ownership" in the equity decoupling context. Here we have, as yet, no firm recommendations to offer.

Beyond disclosure, debt contracts may need to adjust to the new world of hedged interests, voting rights in bankruptcy may need to be based on net economic ownership instead of gross ownership of debt, and the extra complexities in devising sensible voting rules may provide support for proposals to rely more on auctions. Where auctions are not available, proposals should rely less on creditor voting and more on judicial discretion. Workout and reorganization procedures will need to reflect a more complex world, in which we can no longer assume that creditors want a higher recovery for their own class and, inter-creditor conflicts aside, want a higher overall company value.

C. The Reemergence of Street Sweep Takeover Bids

For a brief time in the mid-1980s, a new form of takeover bid, known as a street sweep, threatened to undermine

156 UPALR 625                                                                                      Page 79
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

U.S. takeover regulation. A bidder would launch a tender offer, shares would move to arbitrageurs, and then the bidder would drop the bid and rapidly buy a large block of shares from the arbitrageurs in the market. Once this technique had been tried a few times, the bidder didn't need to go out and seek shares at all--the arbitrageurs would come to it and offer their shares.

The culmination of the street sweep came in 1986, where Campeau dropped its tender offer for Federated Stores at 8:30 a.m., and by 9:00 a.m. the Jefferies investment bank had contacted the major arbitrageurs, put together a 48% block of shares in Federated, negotiated the price, and sold the block to Campeau, thus giving Campeau majority ownership of Federated. Takeover battle over. [FN267]

Bills were introduced in Congress to block street sweeps, and the SEC introduced its own proposed anti-sweep rule. [FN268] Before either body acted, street sweeps faded away, killed by a combination of poison*736 pills, state antitakeover laws, and the need for antitrust approval under the Hart-Scott-Rodino Act before a major acquisition. [FN269] Yet, not all states have antitakeover rules that block sweeps, not all firms have poison pills in place, and antitrust approval can potentially be received before a bid is launched. Moreover, while the known sweeps relied on first making and then terminating a tender offer, it was scarcely obvious then, and is even less likely today, that this is necessary--a bidder can announce its plans to make a takeover bid, or even privately so advise some major shareholders, and wait for an offer to sell a block of shares to arrive.

Decoupling makes the street sweep strategy easier still. A bidder can acquire, cross the 5% threshold for 13D disclosure, and then, during the ten-day window before the 13D must be filed, buy up to 9.9% of a target's shares (stopping short of the 10% level that would trigger short-swing profit forfeiture under Exchange Act section 16) and then use decoupling strategies to jump to a much higher level, perhaps to effective control. A bidder can borrow a block of shares while hedging, and then later release the hedge. Or it can acquire a large long equity swap position, and then unwind the swap to obtain shares. The key to both of these strategies is that they rely only on borrowing and a private transaction between a dealer or dealers and the bidder; they do not require market purchases and hence do not directly alert market participants or move market prices. Based on the facts available to us, the confidential case noted in Table 1 involves this fact pattern; it escaped publicity because the target was small.

If a bidder combines hedged purchases, with little or no market impact, with purchases from hedge funds, who often invest in parallel (the unkind term is "wolf pack"), [FN270] the first public announcement of Bidder's interest could be that Bidder has economic ownership, and possibly voting ownership, of a majority of Target's shares. Several of the European takeover examples in Table 1 involve sudden emergence of a bidder with close to effective control of the target, including Scor-Converium, Vekselberg group-Sulzer, and Victory-Saurer. A variant on this theme is Laxey-Implenia, where Laxey acquired a 23% stake, which market participants understand is for sale at the right price to a takeover bidder. That bidder could potentially acquire 20-*737 30%, then jump to a control position by buying Laxey's stake, all before any public disclosure.

Exchange Act section 16(b) does not block these strategies. It applies only once a shareholder already has 10% voting ownership, and thus it does not apply to shares acquired in a transaction in which a shareholder jumps from just under 10% to way over it. Nor does it reach shareholders who hold a 9.9% voting stake and the rest through long equity swaps.

A firm with a poison pill in place is still partly protected, and the pill could be amended to provide reasonably complete protection. Yet we scarcely want defense against a sneak takeover attack to require that every public company have a pill in place. The need for antitrust approval before turning economic ownership into voting ownership is a further obstacle to a street sweep. Still, the potential remains.

The right regulatory response is not obvious, and is beyond the scope of this Article. We observe here only that street sweeps are back today in Europe, and could appear tomorrow in the United States.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Conclusion

The concept that shareholders hold economic, voting, and other rights as well as disclosure and other obligations as an integrated whole is central to legal, regulatory, and economic understandings of the public corporation. This presumed coupling ensures that shareholders have an incentive to exercise voting rights to increase share value. The primary shareholder voting, corporate control market, disclosure, and other legal and market oversight mechanisms on which we rely to regulate public firms and their shareholders, and to constrain and incentivize managers to act in the interests of shareholder-owners, presume this coupling.

A similar assumption underlies the contractual and regulatory treatment of creditors. This coupling ensures that creditors have an incentive to exercise their contractual and bankruptcy rights well, which reduces the expected costs of financial distress. The presumed coupling of these rights and obligations pervades contracting practice, the Uniform Commercial Code, and the Bankruptcy Code.

Yet on both the equity and the debt side, these couplings are increasingly optional. On the equity side, shareholders can now readily decouple economic from voting rights, resulting in such patterns as empty voting, hidden ownership, morphable ownership, and empty appraisal. Corporations as well as shareholders can play the decoupling**738** game. On the debt side too, the unbundling of rights and disclosure obligations poses new and important challenges, both for individual creditors and debtors and perhaps for the financial system as a whole.

In this Article, we have concentrated on equity decoupling, and do so for the balance of the Conclusion. In Decoupling I, we examined the decoupling by shareholders of voting rights from economic ownership, and the associated potential for empty voting and hidden (morphable) ownership. In this Article, we treat these as specific examples of a broader concept of equity decoupling. We show how other standard shareholder rights and obligations can be delinked as well and offer illustrative examples.

We extend the concept of equity decoupling to decoupling by the corporation itself. A corporation cannot vote its own shares, but it can often do so in practice by "soft parking" shares in the friendly hands of derivatives dealers or other third parties.

We also provide evidence that equity decoupling has become an important worldwide phenomenon. We offer dramatic new examples, involving sneak decoupling-based takeover attacks on major firms, where a raider acquires a controlling or near-controlling stake prior to any public disclosure. In Switzerland, a series of these takeovers led to public outcry and a regulatory response. We can expect a similar outcry here if--perhaps when--similar examples emerge. It is appropriate to regulate now, because waiting for a crisis could lead to overreaction. We expand our prior integrated ownership disclosure proposal to cover corporate decoupling and better address share lending, and discuss recent U.K. evidence suggesting that our disclosure proposal is likely to yield valuable information without imposing large burdens on investors.

We also present a number of specific proposals that go beyond disclosure and respond to empty voting. These include providing constrained corporate power to limit the voting rights of empty voters, reconfiguring the relationships among annual meeting dates and voting and record dates, and encouraging institutional investors to recall and vote lent shares.

Finally, we discuss several implications and extensions of our analytical framework. We extend the concept of equity decoupling to include a full set of share-related rights and obligations. We extend the concept of decoupling to include debt decoupling. And we discuss how decoupling can contribute to the return of "street sweep" takeovers.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*739** U.S. observers who continue to see equity decoupling as a curiosity of no current urgency would do well to look abroad. They also need to appreciate that a decade ago no one thought that debt decoupling raised serious public policy concerns. The benefits of debt decoupling were clear, but some important costs were not. As the front-page events that unfolded in mid-2007 have now made clear, debt decoupling has affected world economies in complex and important ways. Equity decoupling may have the same potential. Regulators elsewhere are responding: indeed, some major hedge funds have now called for regulatory responses to address hidden ownership and empty voting.

The development of large-scale equity decoupling is still fairly new. Its extent is only partly known. Its benefits and costs are largely unknown. We have therefore offered measured, cost-sensitive responses. We offer a simple, low-cost proposal for integrated ownership disclosure. This proposal will not prevent empty voting, but will likely reduce its extent. Our principal substantive proposal is for constrained corporate self-help--corporations can amend their charters to address empty voting, while being constrained not to use this new power in ways that are likely to entrench insiders. If, once disclosure reforms are in place, the level of empty voting is low, many corporations may do nothing. If they do something, they are unlikely to do much harm to share values. We propose reforms to encourage institutions to vote shares rather than lend them on record dates, but would not force them to do so.

Equity decoupling has benefits, and quite possibly larger benefits than costs, if one takes into account the value of hedging and short selling, which both involve decoupling. But equity decoupling is occurring against the background of a corporate governance paradigm and legal rules which largely assume that shareholders have coupled rights and obligations. Innovation now allows the decomposition of what seemed elemental. The granularity of analysis and regulation must change accordingly. A new set of possibilities and risks is emerging. It is appropriate to take measured steps to address those risks.

[FNd1]. Copyright © 2008 by Henry T. C. Hu. All rights reserved. Permission is hereby granted for noncommercial reproduction of this Article for classroom use only in nonprofit academic institutions, provided that the copy includes the authors' names, a complete citation, and this copyright notice and grant of permission. This Article is also available at http:// ssrn.com/abstract=1030721.

[FNdd1]. Allan Shivers Chair in the Law of Banking and Finance, University of Texas Law School.

[FNddd1]. Hayden W. Head Regents Chair for Faculty Excellence, University of Texas Law School, and Professor of Finance, University of Texas, McCombs School of Business.

We have benefited from an extraordinary range of workshops and individual comments. We thank participants at conferences or other meetings hosted by the Council of Institutional Investors (Washington, DC - Sept. 2006), Jacob Weinberg Center for Corporate Governance at the University of Delaware (Newark, DE - Oct. 2006), Society of Corporate Secretaries and Governance Professionals (Newport, RI - Oct. 2006), American Bar Association Section of Business Law (Washington, DC - Dec. 2006 and Webcast - Mar. 2007), West Legalworks (New York, NY - Dec. 2006), Association of Investment Companies (London - Feb. 2007), International Corporate Governance Network (London - Mar. 2007), Institutional Shareholder Services (Webcast - Mar. 2007 and Apr. 2007), European Corporate Governance Institute (Frankfurt - Apr. 2007), Vanderbilt Law School (Nashville, TN - Apr. 2007), University of Pennsylvania Law School (Philadelphia, PA - Apr. 2007), Eidgenössische Technische Hochschule Zürich (Zurich - Apr. 2007), Bocconi University Institute of Comparative Law (Milan - May 2007), University of Amsterdam/Amsterdam Center for Corporate Finance (Amsterdam - May 2007), Niederer Kraft & Frey (Zurich - May 2007), New York Stock Exchange (New York, NY - May 2007), Conference Board (New York, NY - May 2007), U.S. Securities and Exchange Commission (Washington, DC - May 2007), Yale School of Management (New Haven, CT - May 2007), Northeast Business Law Center (New York, NY - June 2007), Boston College School of Management (Boston, MA - June 2007), European Financial Management Association (Vienna - June 2007), National University of Singapore/Singapore Academy of Law (Singapore - Aug. 2007), 6th European Company Law and Corporate Governance Conference (Lisbon - Oct. 2007), Securities Industry and Financial

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Markets Association (New York, NY - Oct. 2007), University of Texas Law School (Austin, TX - Oct. 2007), University of Chicago Law School (Chicago, IL - Nov. 2007), Yale Law School (New York, NY - Nov. 2007), National Investor Relations Institute (Laguna Beach, CA - Nov. 2007), and West Legalworks (New York, NY - Dec. 2007). We also thank Sandro Abegglen, John Armour, Paul Atkins, Diana Bourke, Thomas Briggs, Johannes Buergi, Kathleen Casey, Jens Dammann, David Donald, Darrell Duffie, Charles Elson, Luca Enriques, Michael Ewing-Chow, Mark Faulkner, Markus Feller, Guido Ferrarini, Arthur Field, Daniel Godfrey, Jeff Gordon, Will Duff Gordon, Georg Gotschev, Jeremy Grant, Philip Haas, Larry Hamermesh, Michelle Hamer, Carol Hayes, Linda Hayman, Eva Hüpkes, Jack Jacobs, Calvin Johnson, Roy Katzovicz, Irving Klubeck, Vanessa Knapp, Bruce Kraus, Peter Kuster, Todd Lang, Paul Lee, Joseph McCahery, Robert Moore, Kevin Moynihan, Charles Nathan, Richard Nolan, Jeff Pontiff, Tony Pullinger, Duccio Regoli, Roberta Romano, Paul Roth, Anne Simpson, Erik Sirri, A. Gilchrist Sparks III, Dmitry Stepanov, Franz Stirnimann, Leo Strine, Jr., Darla Stuckey, Randall Thomas, Hans Tjio, Scott Vdoviak, Marco Ventoruzzo, Rolf Watter, Marc Weingarten, John Wilcox, Huub Willems, Wan Wai Yee, Ann Yerger, Daniel Züberbuehler, and Urs Zulauf for comments and other assistance. We are deeply grateful to those in the private and public sectors, in the United States and overseas (most of whom would prefer not to be named), who have been kind enough to discuss with us the issues raised by decoupling and often to provide us with additional examples. We also thank Melissa Bernstein, Mark Ditto, Kate Doty, Ryan Gorsche, Anthony Kaim, Jane O'Connell, Jacob Scheick, and Rachael Solomon for their excellent assistance.

[FN1]. We developed the concepts of empty voting and hidden (morphable) ownership in several recent, related articles. Henry T. C. Hu & Bernard Black, The New Vote Buying: Empty Voting and Hidden (Morphable) Ownership, 79 S. Cal. L. Rev. 811 (2006) [hereinafter Hu & Black, Decoupling I (Law Review Version)], available at http://ssrn.com/abstract=904004 (article directed at legal academics); Henry T. C. Hu & Bernard Black, Empty Voting and Hidden (Morphable) Ownership: Taxonomy, Implications, and Reforms, 61 Bus. Law. 1011 (2006), available at http://ssrn.com/abstract=887183 (shorter version, directed at lawyers, judges, and regulators); Henry T. C. Hu & Bernard Black, Hedge Funds, Insiders, and the Decoupling of Economic and Voting Ownership: Empty Voting and Hidden (Morphable) Ownership, 13 J. Corp. Fin. 343 (2007) [hereinafter Hu & Black, Decoupling I (Finance Version)], near-final version available at http://ssrn.com/abstract=874098 (version directed at finance academics, with expanded theoretical discussion). Below, we refer where appropriate to the first article and, in some cases, the third, but assume general familiarity with this prior work.

[FN2]. See infra Part III.B.

[FN3]. The extensions of the decoupling framework to other shareholder rights and to decoupling by creditors were introduced in Henry T. C. Hu, Shareholder and Creditor Decoupling: Separating "Embedded Rights" and Contractual Rights from Economic Interests 1, 4, 20-21, 23 (10th Singapore Conference on International Business Law, Aug. 22-23, 2007) (Aug. 17, 2007 draft, on file with authors) [hereinafter Hu, Shareholder and Creditor Decoupling], and subsequently discussed in Henry T. C. Hu & Jay L. Westbrook, Abolition of the Corporate Duty to Creditors, 107 Colum. L. Rev. 1321, 1329-30, 1366, 1382-89, 1395-98, 1401-03 (2007) [hereinafter Hu & Westbrook, Shareholder and Creditor Interests], available at http:// ssrn.com/abstract=977582.

[FN4]. Henry T. C. Hu & Bernard Black, Debt, Equity, and Hybrid Decoupling: Governance and Systemic Risk Implications, 14 Eur. Fin. Mgmt. (forthcoming 2008), available at http://ssrn.com/abstract=1084075 [hereinafter Hu & Black, Debt, Equity, and Hybrid Decoupling].

[FN5]. We seek throughout this Article to limit overlap with Decoupling I. We indicate in occasional footnotes, including this one, where to find further discussion of points addressed there. Unless there is specific need, we do not repeat citations that appear there or decoupling examples discussed there. On the goals served by linking voting and economic rights, see Hu & Black, Decoupling I (Law Review Version) (2006), supra note 1, at 850-54.

[FN6]. This discussion is based primarily on the M-Flex complaint against WBL, in the Delaware Court of Chancery, and a court order in the U.S. District Court for the Central District of California dismissing a different M-

Flex complaint against Stark. See Complaint for Declaratory and Injunctive Relief, Multi-Fineline Electronix, Inc. v. WBL Corp., No. 2482-N, 2006 WL 4781677 (Del. Ch. Oct. 17, 2006); Order Granting Defendants' Motion To Dismiss First Amended Complaint, Multi-Fineline Electronix, Inc. v. Stark Master Fund Ltd., No. 06-0960 (C.D. Cal. Dec. 4, 2006). We have assumed that M-Flex's factual allegations are correct. For subsequent developments, see Sarah Tolkoff, Freed from Deal, M-Flex Seeks To Diversify, Orange County Bus. J., July 2, 2007, at 3 (describing M-Flex's future after WBL shareholders voted against the merger with M-Flex); and Multi-Fineline Announces WBL Shareholders Vote Against Accepting the MFS Technology Offer, Reuters, June 26, 2007, available at http:// www.reuters.com/article/inPlayBriefing/idUSIN20070626083553MFLX20070626 (discussing the WBL shareholder vote against the merger).

[FN7]. Readers familiar with Decoupling I will recognize that the M-Flex/Stark/MFS pattern here is closely analogous to the Mylan/Perry/King Pharmaceuticals pattern discussed there.

[FN8]. We discuss the disclosure requirements for cash-settled derivatives in Hu & Black, Decoupling I (Law Review Version) (2006), supra note 1, at 864-75.

[FN9]. References in the remainder of this Article to equity swaps and other equity derivatives are to cash-settled derivatives, unless otherwise specified.

[FN10]. As to the distinction between exchange-traded derivatives and OTC derivatives, see Henry T. C. Hu, Misunderstood Derivatives: The Causes of Informational Failure and the Promise of Regulatory Incrementalism, 102 Yale L.J. 1457, 1464-65 (1993).

[FN11]. 15 U.S.C. § 78m (2000).

[FN12]. For the classic case involving disclosable hard stock parking, see United States v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991). For an account of how stock parking was used in the 1980s, see Connie Bruck, The Predators' Ball: The Junk-Bond Raiders and the Man Who Staked Them 320-29 (1988).

[FN13]. Our discussion of TD Ameritrade is based on Gaston F. Ceron, Ameritrade Gets Pressure from Funds for a Merger, Wall St. J., June 6, 2007, at C3; Kaja Whitehouse, David Enrich & Mara Lemos Stein, Activist Hedge Funds Use Derivatives To Target Larger Prey, Dow Jones News Wires, July 11, 2007; and TD Ameritrade Holding Corp., Current Report (Form 8-K), at 1 (June 5, 2007).

[FN14]. Gregory Zuckerman, Concentration Proves Winner at Hedge Fund, Wall St. J., May 14, 2007, at C1.

[FN15]. Id.; Whitehouse, Enrich & Stein (2007), supra note 13.

[FN16]. See infra Part V.A. Nothing in the framework presumes that shareholder rights in general--or shareholder economic rights--are limited to those that would be possessed by a residual claimant. For discussion of the limitations of the "residual claimant" notion in characterizing shareholder rights, see Hu & Westbrook, Shareholder and Creditor Interests (2007), supra note 3, at 1382-89, 1393-98.

[FN17]. Economic-only ownership, accompanied by morphable voting rights, is not truly "economic-only." We judged that this imprecision did not justify creating yet another term for this type of ownership, which would fall in between economic-only and full ownership.

[FN18]. We discuss these techniques in Hu & Black, Decoupling I (Law Review Version) (2006), supra note 1, at 858-59.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN19]. Joe Bacchus, Rockville-Based Corporate Governance Firm To Merge with RiskMetrics, Daily Record (Baltimore), Nov. 2, 2006, available at 2006 WLNR 19183261; Robert D. Hershey, Jr., A Little Industry with a Lot of Sway on Proxy Votes, N.Y. Times, June 18, 2006, § 3, at 6.

[FN20]. See, e.g., Chew v. Inverness Mgmt. Corp., 352 A.2d 426 (Del. Ch. 1976) (prohibiting transfer of voting rights); Robert Charles Clark, Vote Buying and Corporate Law, 29 Case W. Res. L. Rev. 776 (1979) (discussing vote buying law and policy implications); Michael D. Schmitz, Comment, Shareholder Vote Buying--A Rebuttable Presumption of Illegality, 1968 Wis. L. Rev. 927 (same).

[FN21]. 447 A.2d 17 (Del. Ch. 1982).

[FN22]. Id. at 25.

[FN23]. Id. at 26.

[FN24]. More specifically, Schreiber defines vote buying as "a voting agreement supported by consideration personal to the stockholder, whereby the stockholder divorces his discretionary voting power and votes as directed by the offeror." Id. at 23.

[FN25]. As discussed infra in Part IV.C, there are bank regulatory and other limitations on borrowing shares for voting purposes in certain circumstances.

[FN26]. Lauren Cohen, Karl B. Diether & Christopher J. Malloy, Supply and Demand Shifts in the Shorting Market, 62 J. Fin. 2061, 2067-70 (2007).

[FN27]. We discuss the size of the share lending market infra in Part IV.C.1.

[FN28]. Alon Brav & Richmond D. Mathews, Empty Voting and Efficiency (Nov. 14, 2007) (unpublished manuscript, on file with authors).

[FN29]. See, e.g., Del. Code Ann. tit. 8, § 160(c) (2001); Am. Bar Ass'n Comm. on Corporate Laws, Changes in the Model Business Corporation Act-- Amendments to Financial Provisions, 34 Bus. Law. 1867, 1869, 1878 (1979).

[FN30]. For descriptions of these two non-decoupling-based strategies, see Dennis J. Block, Public Company M&A: Recent Developments in Corporate Control, Protective Mechanisms and Other Deal Protection Techniques, in Contests for Corporate Control 2007: Current Offensive & Defensive Strategies in M&A Transactions 7, 145-46 (PLI Corporate Law & Practice, Course Handbook Series No. B-1584, 2007).

[FN31]. We discuss the disclosure rules that apply to soft parking infra in Part III.C.

[FN32]. NYSE Euronext, Listed Company Manual § 312.03(c) (2007).

[FN33]. On voting of shares held by a subsidiary or otherwise controlled by the corporation, see James D. Cox, Thomas Lee Hazen & F. Hodge O'Neal, Corporations §§ 13.16, 21.7 (1997). The risk of the shares losing voting power might increase if the corporation were to bind the dealer contractually to hedge through matched shares, to ensure that the dealer retained voting rights.

[FN34]. Similar issues have been litigated in New Zealand and Australia, with regard to whether morphable

economic ownership was covered by large shareholder disclosure rules. In both countries, appellate courts ruled that disclosure was not required. See Hu & Black, Decoupling I (Law Review Version) (2006), supra note 1, at 836-37 (Perry-Rubicon) and 840 (Glencore-Austral Coal).

[FN35]. Unocal Corp. v. Mesa Petroleum Co., 493 A.2d 946, 955 (Del. 1985); Unitrin, Inc. v. Am. Gen. Corp., 651 A.2d 1361, 1373 (Del. 1995); see also Meredith M. Brown & William D. Regner, The Duties of Target Company Directors Under State Law: The Business Judgment Rule and Other Standards of Judicial Review, in Contests for Corporate Control 2007: Current Offensive & Defensive Strategies in M&A Transactions, supra note 30, at 187, 193.

[FN36]. See Revlon, Inc. v. MacAndrews & Forbes Holdings, 506 A.2d 173, 180 (Del. 1986) (requiring close judicial scrutiny of transactions which result in a change of control, often referred to as "Revlon" scrutiny).

[FN37]. Our discussion of Portugal Telecom is based on information provided by knowledgeable Portuguese investment bankers and lawyers. See also Lisbon Shares Lower Midmorning Led by Telecoms Ahead of Portugal Telecom EGM, AFX Int'l Focus, Mar. 2, 2007 (stating that "PT management also intends to use 1.8 pct of the company's shares held by Barclays Bank to vote at the EGM [Extraordinary General Meeting] today").

[FN38]. Portugal Telecom Shareholders Turn Down Sonaecom Takeover Bid, Port. Bus. Dig., Mar. 5, 2007. For general information about the Sonaecom bid for Portugal Telecom, though not specifically about share parking, see, for example, Paul Betts, Low Ceilings, Fin. Times (London), Mar. 7, 2007, at 22; Peter Wise, Investors Block Sonaecom Bid for PT Telecoms, Fin. Times (London), Mar. 3, 2007, at 19.

[FN39]. Our discussion relies on Claudio Loderer & Pius Zgraggen, When Shareholders Choose Not To Maximize Value: The Union Bank of Switzerland's 1994 Proxy Fight, J. Applied Corp. Fin., Fall 1999, at 91.

[FN40]. By way of comparison, U.S. companies sometimes enter into forward purchases of their own shares to hedge obligations under employee benefit plans. See Jim Rothwell, Common Derivatives and Their Uses--Equity Derivatives, in SWAPs and Other Derivatives in 2006, at 51, 73 (PLI Corp. Law & Practice, Course Handbook No. B-1559, 2006). No one has suggested that the counterparty loses voting rights.

[FN41]. Our discussion of MOL is based on Austrian Oil Company Chief Interviewed on Likely Hungarian Merger, Russian Links, BBC Monitoring Eur., Aug. 17, 2007; Budapest Stock Buyback News in Brief--MOL, OTP, Hung. Bus. Dig., Aug. 27, 2007; The Hungarian Defence, Economist, Aug. 11, 2007, at 58; Hungarian MOL Willing To Buy into OMV, Hung. Bus. Dig., Aug. 22, 2007; Hungarian Stock Buyback News in Brief--MOL, OTP, Hung. Bus. Dig., Aug. 17, 2007; Karin Strohecker, OMV's Bid for MOL Seen with Slim Chance of Success, Reuters (U.K.), Sept. 26, 2007, available at http:// uk.reuters.com/article/oilRpt/idUKL2688797420070926; Sandra Pointel & Katalin Toth, OMV Will Not Launch Takeover Immediately, But Pressure on MOL's Management Could Increase, FT.com, Sept. 26, 2007, http:// www.ft.com/cms/s/2/af36860e-6c2c-11dc-a0cf-0000779fd2ac,dwp_uuid=e8477cc4-c820-11db-b0dc-000b5df10621.html.

[FN42]. Act IV of 2006 on Business Associations, §§ 227, 285 (Hung.), available at http://www.irm.hu/?katid=265&id=294.

[FN43]. OMV Sends Declaration of Intent to Hungary's MOL, Would Offer HUF 32,000 per Share, Portfolio.hu, Sept. 25, 2007, http:// www.portfolio.hu/en/tool/print.tdp?cCheck=1&k=1&i=13041. For a description of the offer, see, for example, Guy Chazan, OMV's Bid Fails To Sway MOL, Wall St. J., Sept. 26, 2007, at A8. MOL has not denied controlling the bank-held shares. See Ed Crooks, OMV Asks Brussels' Approval for € 14bn Mol Bid, Fin. Times (London), Oct. 18, 2007, at 20.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 UPALR 625                                                                  Page 86
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

[FN44]. See Brian Quinton, Continental Shifts, Corp. Legal Times, Aug. 2004, at 54; cf. Jan van der Horst & Marleen van Uchelen-Schipper, The Netherlands (undated analysis, provided Oct. 29, 2007 by Prof. Joseph McCahery to Henry Hu) (describing how depositary receipts work under Dutch law).

[FN45]. Bill McIntosh, Court Nixes Stork Poison Pill, but Cancels EGM, HedgeWorld Daily News, Jan. 17, 2007, available at 2007 WLNR 962714. Some foundations are apparently being dismantled. See Dry Questions for Dutch Investors, Fin. Times Eur., Mar. 21, 2006, at 12, available at 2006 WLNR 4650147.

[FN46]. See Centaurus Alpha Master Fund Ltd. v. Stork N.V., College van Beroep voor het Bedrijfsleven [CBB] [court of appeal from decisions of public trade organizations], Amsterdam, 17 januari 2007, No. 15/2007 OK, available at http://zoeken.rechspraak.nl (search by docket number).

[FN47]. See, e.g., Block (2007), supra note 30, at 147 ("ESOP shares are likely to be voted or tendered in a manner consistent with management's interests.").

[FN48]. Joshua D. Rauh, Own Company Stock in Defined Contribution Pension Plans: A Takeover Defense?, 81 J. Fin. Econ. 379, 381 (2006).

[FN49]. See Robert Hockett, What Kinds of Stock Ownership Plans Should There Be? Of ESOPs, Other SOPs, and "Ownership Societies," 92 Cornell L. Rev. 865, 885 (2007); see also Theodore N. Mirvis, Takeover Law and Practice 2006, in What All Business Lawyers & Litigators Must Know About Delaware Law Developments 2007, at 147 (PLI Corp. Law & Practice, Course Handbook Series No. B-1599, 2007) (describing various plans designed to encourage employee ownership of stock, including non-ERISA Stock Employee Compensation Trusts).

[FN50]. See Block (2007), supra note 30, at 148; Mirvis (2007), supra note 49, at 258.

[FN51]. See Mirvis (2007), supra note 49, at 258-60; cf. Brown & Regner (2007), supra note 35, at 262-63 (noting that Delaware courts have similarly found proportional voting reasonable).

[FN52]. See, e.g., Lilli A. Gordon & John Pound, ESOPs and Corporate Control, 27 J. Fin. Econ. 525, 527-30 (1990); Mirvis (2007), supra note 49, at 260.

[FN53]. NCR Corp. v. AT&T, 761 F. Supp. 475, 478-82 (S.D. Ohio 1991).

[FN54]. Id. at 482.

[FN55]. See supra note 35 and accompanying text.

[FN56]. Aquila, Inc. v. Quanta Servs., Inc., 805 A.2d 196, 199-202 (Del. Ch. 2002). The Chancery Court concluded that Quanta's decision to create the ESOP would likely not satisfy the second prong of the Unocal test for defensive tactics, that of a proportionate response to the threat posed by the Aquila bid. Id. at 207-08.

[FN57]. The Netherlands courts suspended the voting rights of both the ESOP and LVMH. Jan Willem van der Staay, Public Takeovers in the Netherlands, Corp. Fin., Jan. 2000, at 83.

[FN58]. See Kingsbridge Capital Group v. Dunkin' Donuts, Inc., Nos. 10907, 10809, 10825, 10829, 10831, and 10889, 1989 WL 89449, at *2 (Del. Ch. Aug. 7, 1989).

[FN59]. See Shamrock Holdings, Inc. v. Polaroid Corp., 559 A.2d 278, 281 (Del. Ch. 1989).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN60]. Cynthia Crossen & Karen Blumenthal, An Anti-Takeover Arsenal that Failed, Wall St. J., Nov. 4, 1988, at B1.

[FN61]. See Brad J. Schwartzberg & Evan Weiner, Attracting and Retaining Key Employees by Offering Equity-Based Incentive Compensation, Metropolitan Corp. Couns., June 2007, at 44.

[FN62]. See Janice Kay McClendon, Bringing the Bulls to Bear: Regulating Executive Compensation To Realign Management and Shareholders' Interests and Promote Corporate Long-Term Productivity, 39 Wake Forest L. Rev. 971, 1026 (2004); Nazar Khodorovsky, Note, Inconsistent Obligations: Robinson v. United States or How an Agency Problem Whipsawed the IRS, 15 Fed. Cir. B.J. 463 (2006).

[FN63]. See George G. Jones & Mark A. Luscombe, Changes to Tax Laws Boost Interest in Restricted Stock, Acct. Today, Aug. 18, 2003, at 10, 11; Stuart R. Singer, Deferred Compensation for Executives Under Sec. 409A (pt. 1), Tax Adviser, July 2006, at 402, 405.

[FN64]. The extent of empty voting by executives who receive restricted shares will depend on, among other things, the recipient's expectation that he will likely stay through the vesting period and the possibility that the recipient also holds employee stock options (which convey economic ownership without voting rights) and hence may not be an empty voter based on the recipient's full position.

[FN65]. On the growing popularity of restricted stock relative to stock options, see, for example, Jones & Luscombe (2003), supra note 63, at 10; Harry Levitt & Bill Gardiner, Phantom Stock Plans: A Viable Alternative to Restricted Stock?, Compensation & Benefits Rev., July-Aug. 2004, at 19.

[FN66]. Hu & Black, Decoupling I (Law Review Version) (2006), supra note 1, at 816-17.

[FN67]. Id. at 839.

[FN68]. We thank Professor Dr. Theo Baums for providing information on this case. See Oberlandesgericht München [OLG München] [Munich Court of Appeals] Nov. 23, 2006, 2006 Zeitschrift für Wirtschaftsrecht [ZIP] 2370 (F.R.G.) (German decisions do not include party names).

[FN69]. Our discussion of ABN Amro is based primarily on Louise Armitstead, Dutch Options Riddle, Sunday Times (London), July 22, 2007, § 3, at 2; Jane Croft, Fears that Hedge Funds Are Out To Block Fortis, Fin. Times (London), July 27, 2007, at 22; Steve Goldstein, ABN Amro Declares Neutrality on Buyout Offers, Dow Jones Bus. News, July 30, 2007; Carrick Mollenkamp, Fortis Borrowing Surges: Backers, Opponents Work Toward Position To Influence Vote, Wall St. J. Eur., July 27, 2007, at 18.

[FN70]. Armitstead (2007), supra note 69.

[FN71]. We discuss the U.S. rules in Hu & Black, Decoupling I (Law Review Version) (2006), supra note 1, at 867-75.

[FN72]. The relevant definition of beneficial ownership is in Securities Exchange Act of 1934 (Exchange Act) Rule 13d-3, 17 C.F.R. § 240.13d-3 (2007).

[FN73]. We discuss the section 16 disclosure requirements for cash-settled derivatives in Hu & Black, Decoupling I (Law Review Version) (2006), supra note 1, at 873-74.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN74]. Exchange Act Schedule 14A, Item 7, 17 C.F.R. § 240.14a-101 (2007) (requiring ownership disclosure in proxy statements). Other periodic filings do not indicate inside ownership.

[FN75]. See Henry T. C. Hu, Die Offenlegung anpassen, Finanz und Wirtschaft, Sept. 19, 2007, at 1.

[FN76]. Haig Simonian, Victory Jitters Strike Swiss Industrialists, Fin. Times (London), Mar. 19, 2007, at 24.

[FN77]. Our discussion of Sulzer is based on Paul Betts, Locusts in Switzerland, Fin. Times (London), Apr. 25, 2007, at 26; Carl Mortished, Deutsche's Zurich Offices Raided in Options Inquiry, Times (London), May 25, 2007, at 56; and Haig Simonian, ZKB Head Quits in Row on Disclosure, Fin. Times (London), May 8, 2007, at 24.

[FN78]. Our discussion of Ascom and Unaxis is based on Ascom Plunges As Victory Divestment Ends Takeover Speculations, AFX Int'l Focus, May 24, 2007; Chris Flood, Dexia "Hidden Jewel" Highlighted, Fin. Times (London), Jan. 19, 2007, at 36; OC Oerlikon Owner Victory Holds 20.1 Pct Stake in Swiss Telecoms Co Ascom, AFX Int'l Focus, Jan. 17, 2007; and Haig Simonian, Raiders Unnerve Swiss Regulator, Fin. Times Eur., Mar. 21, 2007, at 17.

[FN79]. Our discussion of Unaxis is based on Carl Mortished, Bodycote Board Rejects Fourth Takeover Approach from Sulzer, Times (London), Apr. 19, 2007, at 58; Simonian (2007), supra note 76; Simonian (2007), supra note 78; Press Release, OC Oerlikon, Disclosure of Victory Interests in Accordance with Stock Market Rules (Apr. 14, 2005), available at http:// www.oerlikon.com/ecomaXL/index.php?site=OERLIKON_EN_ad_hoc_releases_detail&udtx_id=135; and OC Oerlikon, Disclosure of Shareholding Pursuant to Stock Exchange Act (July 11, 2007), available at http:// www.oerlikon.com/ecomaXL/index.php?site=OERLIKON_EN_mandatory_notifications_detail&udtx_id=4432.

[FN80]. Our discussion of Saurer is based on OC Oerlikon, Annual Report 2006: Living High Technology 5 (2006), available at http:// www.oerlikon.com/annualreport2006/downloads/Oerlikon_Annual_Report_2006_e.pdf; Andrew Bulkeley, U.K.'s Laxey Ends Saurer Feud, Daily Deal, Sept. 7, 2006; Martin Gelnar, Saurer 1H Net Pft -40%: Plans To Stay Solo, Dow Jones Int'l News, July 26, 2005; Carl Mortished, Swiss Investigate Vekselberg Firm Over Stake-Building in Engineer, Times (London), April 27, 2007, at 67.

[FN81]. Our discussion of Implenia is based on Implenia Says Views Laxey's Stake as Hostile, Reuters (U.K.), Apr. 18, 2007; Implenia Shares Fall, Laxey Exerts Pressure, Reuters, July 23, 2007; Strabag To Announce Next Week Purchase of Stake in Implenia, AFX Int'l Focus, June 20, 2007; and Swiss Implenia Seen as Takeover Target for Hochtief, Strabag, Bouygues, AFX Int'l Focus, June 13, 2007.

[FN82]. Our discussion of Converium is based on Andrew Bulkeley, Converium Sues French Suitor, Daily Deal, Apr. 18, 2007; Swiss Banking Commission Says Ebner, Scor Acted as Team in Converium Takeover, AFX Int'l Focus, July 22, 2007; Swiss Reinsurer Rejects Takeover Bid by French, Int'l Herald Trib., Feb. 20, 2007, at 16; and Press Release, Swiss Fed. Banking Comm'n, Takeover Chamber of the SFBC Confirms TOB-Recommendation IV Dated 9 June 2007 Regarding Converium (July 18, 2007).

[FN83]. See Loi fédérale sur les bourses et le commerce des valeurs mobilières [LBVM] [Federal Act on Stock Exchange and Securities Trading (SESTA)] Mar. 24, 1995, SR 954.1, art. 20 (Switz.), available at http:// www.admin.ch/f/rs/9/954.1.fr.pdf; Ordinance de la Commission Fédérale des banques sur les bourse et le commerce des valeurs mobilières [OBVM-CFB] [Ordinance of the Swiss Federal Banking Commission on Stock Exchange and Securities Trading] June 25, 1997, SR 954.193, art. 13(3) (Switz.) (repealed 2007), available at http://www.admin.ch/ch/f/rs/9/954/93.fr.pdf. Our discussion of these rules and the 2007 amendments is based on discussions with Swiss regulators and knowledgeable Swiss market participants, as well as Alexander Vogel &

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Christoph Heiz, Proposed Amendments of Swiss Disclosure Rules To Close Raider Loopholes, in Euromoney Derivatives & Risk Management Handbook 2007/08 (2007); Georg G. Gotschev, The Duty To Disclose Significant Holdings in Listed Companies--The Federal Banking Commission Tightens the Regime, NewsLetter (Walder Wyss & Partners, Zurich, Switz.), July 2007; Swiss Banking Commission To Tighten Disclosure of Shareholding Rules from July, AFX Int'l Focus, May 13, 2007 (mentioning Daniel Zuberbuehler's discussion of the need for this change in order to curb secretive takeovers); Letter from the Swiss Fed. Banking Comm'n to Interested Persons (Apr. 18, 2007), available at http:// www.ebk.admin.ch/e/aktuell/index.html (appending a table displaying proposed rule changes and commentary as of April 16, 2007); and Press Release, Swiss Fed. Banking Comm'n, SFBC To Strengthen       Shareholding       Disclosure       Rules       (June       1,       2007),       available       at http://www.ebk.admin.ch/e/aktuell/index.html.

[FN84]. Swiss Fed. Banking Comm'n, New Provisions Regarding the Disclosure of Shareholders (Nov. 7, 2007), http://www.ebk.ch/e/aktuell/index.html; E-mail from Gérard Hertig to Henry Hu (Nov. 10, 2007) (on file with author) (describing the central features of these changes).

[FN85]. On the assets held by sovereign wealth funds, see Joanna Chung & Tony Tassell, The $2,500bn Question: How Sovereign Wealth Funds Are Muscling in on Global Markets, Fin. Times (London), May 25, 2007, at 11. On their activities, see, for example, Norma Cohen, Rivals Grab Half of London Bourse, Fin. Times USA, Sept. 21, 2007, at 1; Andrew Ross Sorkin, Carlyle To Sell Stake to a Mideast Government--20% of Buyout Firm To Be Owned by Capital of United Arab Emirates, N.Y. Times, Sept. 21, 2007, at C1; John Willman, Big Spenders: How Sovereign Funds Are Stirring Up Protectionism, Fin. Times (London), July 30, 2007, at 7.

[FN86]. After findings by the Swedish Securities Council as to a breach of best practices and an earlier finding by the U.K. Financial Services Authority of a breach of securities rules, Borse Dubai's CEO conceded that it "ought to have included further information on the option contracts." Niklas Magnusson, Borse Dubai's OMX Bid Draws a New Reprimand, Int'l Herald Trib., Sept. 11, 2007, at 14; see also Jonas Bergman, Swedish Regulator Ends OMX Inquiry, Int'l Herald Trib., Sept. 4, 2007, at 16; David Ibison, Borse Dubai Suffers Double Blow in Its Efforts To Take Over OMX, Fin. Times (London), Aug. 24, 2007, at 15; Stanley Reed, The Battle for Sweden's OMX, BusinessWeek.com,                           Aug.                           23,                           2007, http://www.businessweek.com/globalbiz/content/aug2007/gb20070823_153192.htm.

[FN87]. Hu & Black, Decoupling I (Finance Version) (2007), supra note 1.

[FN88]. Insider hedging was part of the reason for Hong Kong's 2003 disclosure reforms, as discussed in Decoupling I. Similar hedging is rumored to take place elsewhere. The value of diversification is substantial enough so that, with hedging opportunities now widely available, it would be surprising if partial insider hedging were not widespread.

[FN89]. See Enel Moves To Raise Stake in Endesa to 22 Percent with New Share-Swap Deal, Associated Press, Mar. 2, 2007; Italy Enel Exercises Equity Swap on Spain Endesa Stake, ANSA English Corp. News Serv., June 4, 2007.

[FN90]. See Peter Thal Larsen, RBS-Led Group Has Doubled ABN Stake, Fin. Times (London), Sept. 26, 2007, at 23.

[FN91]. Jonathan Birchall, Ackman Takes 9.6% Stake in Target To Push for Changes, Fin. Times (London), July 17, 2007, at 21; Jared A. Favole & Mike Barris, With 9.6% Stake in Target, Ackman Fires Value Salvo, Wall St. J., July 17, 2007, at C3; Lisa Gewirtz-Ward & John E. Morris, Pershing Buys 9.6% Stake in Target, Daily Deal, July 17, 2007; Hedge Fund Raises Stake in Target, Reuters, Dec. 25, 2007.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN92]. Kara Scannell, "Broker Votes": Opponents May Win One, Wall St. J., June 13, 2007, at C1.

[FN93]. Whitehouse, Enrich & Stein (2007), supra note 13.

[FN94]. Information on the Chandlers' plans to hedge is from a source familiar with the transaction. See also Michael Oneal & John McCormick, Tribune Co. Welcomes Zell to Board; Chandlers Exit, Chi. Trib., May 10, 2007, § 3, at 1.

[FN95]. See James Quinn, No Resting on Their Laurels at the LSE, Daily Telegraph, Feb. 15, 2007, at 5. Information that the 23% position was held through derivatives was provided by a knowledgeable U.K. market participant.

[FN96]. Sarah Spikes, Funds' Battle with Stork Heats Up, Fin. Times (London), Nov. 24, 2006, at 24; Press Release, Stork NV, Stork Requests Hearing of Witnesses Centaurus and Paulson (Oct. 4, 2006), available at http:// www.stork.nl/page.html?ch=DEF&id=4875&pr=200610/1079294.

[FN97]. Public Company News, Saint Paul Pioneer Press, Feb. 11, 2007, at 4D; Whitehouse, Enrich & Stein (2007), supra note 13.

[FN98]. Andrea Rothman & Heather Smith, Lagardere Shares Fall on EADS Insider Trading Report, Bloomberg, Oct. 3, 2007.

[FN99]. Information provided by a knowledgeable market observer.

[FN100]. See Adam Cohen, Wielding "Stichting" To Fight Takeovers: Dutch Tactic Allows Companies To Shelter Assets from Predators, Wall St. J. Eur., May 22, 2006, at 4.

[FN101]. Istithmar PJSC, General Statement of Acquisition of Beneficial Ownership (Schedule 13D) (Feb. 16, 2006) (relating to Time Warner, Inc.).

[FN102]. Information on this transaction is from a private source.

[FN103]. Personal knowledge of Bernard Black, arising from participation as expert witness in arbitration between IPOC International Growth Fund Limited (Bermuda) and OAO "CT-Mobile" case before the Arbitration Institute of the Stockholm Chamber (2005-2006).

[FN104]. Barnet D. Wolf, Big Investor Wants Changes at Wendy's, Columbus Dispatch, Apr. 27, 2005, at 1A; Whitehouse, Enrich & Stein (2007), supra note 13.

[FN105]. Trian Fund Mgmt, L.P., General Statement of Acquisition of Beneficial Ownership (Schedule 13D) (Dec. 13, 2005) (relating to Wendy's International, Inc.).

[FN106]. Heather Smith, Bank Raid, Focus Eur., Summer 2006, at 32 (supp. to Am. Law.).

[FN107]. This and a number of other Australian examples are summarized in Takeovers Panel (Austl.), Equity Derivatives: Draft Guidance Note 2 (Sept. 10, 2007) and Takeovers Panel (Austl.), Discussion Paper: Equity Derivatives (Sept. 10, 2007).

[FN108]. Exar Corp., Definitive Proxy Statement, Contested Solicitations (Schedule 14A) (Oct. 3, 2005).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN109]. Dennis Fitzgerald & Heidi Moore, Movers & Shakers: Week of April 12, 2004, Daily Deal, Apr. 12, 2004.

[FN110]. Information provided by Professor Woochan Kim of KDI School of Management and Public Policy. Professor Kim is affiliated with PSPD (Peoples' Solidarity for Participatory Democracy), a Korean shareholder rights group, which reported the incident in a Korean language report in 2003.

[FN111]. Ashurst, Investment Banking Briefing: Use of CFDs in Public M&A (May 2004), available at http://www.ashurst.com/doc/aspx?id_Content=926.

[FN112]. Tom Kirchmaier & Jeremy Grant, Financial Tunnelling and the Revenge of the Insider System (London Sch. Econ., Financial Markets Group Discussion Paper No. LSE 536, 2005), available at http://ssrn.com/abstract=613945.

[FN113]. Takeovers Panel (Austl.), Discussion Paper: Equity Derivatives (2007), supra note 107, ¶ 44.

[FN114]. See Hu & Black, Decoupling I (Law Review Version) (2006), supra note 1, at 864-86.

[FN115]. See id. at 879-80.

[FN116]. Fin. Servs. Auth. (U.K.), Disclosure of Contracts for Differences: Consultation and Draft Handbook Text (2007), available at http:// www.fsa.gov.uk/pubs/cp/cp07_20.pdf.

[FN117]. See Sec. & Futures Comm'n (H.K.), Consultation Paper on the Review of the Disclosure of Interests Regime Under Part XV of the Securities and Futures Ordinance 1 (2005), available at http:// www.sfc.hk/sfc/notes/consult/EN/apps/som/direviewconsult.nsf/content/Download/1/ $FILE/Part%20XY%C20Consultation%C20Paper%C20200105%20-%20English.pdf.

[FN118]. See Takeovers Panel (Austl.), Equity Derivatives: Draft Guidance Note (2007), supra note 107; Takeovers Panel (Austl.), Discussion Paper: Equity Derivatives (2007), supra note 107. The enthusiasm for disclosure reform is not universal. For instance, Singapore's Securities Industry Council has been more hesitant. See Sec. Indus. Council, Consultation Conclusions on Revision of the Singapore Code on Take-overs and Mergers (2007); Sec. Indus. Council, Consultation Paper on Revision of the Singapore Code on Take-overs and Mergers (2006). In Hong Kong, the initial uproar over the 2006 Henderson Land short sale/empty voting incident, discussed in Hu & Black, Decoupling I (Law Review Version) (2006), supra note 1, at 834-35, has not prompted further regulation, beyond the 2002 disclosure reforms.

[FN119]. See Corporate Governance Code Monitoring Comm. (Neth.), Advisory Report on the Company-Shareholder Relationship and on the Scope of the Code (2007), available at http:// www.commissiecorporategovernance.nl/page/downloads/Monitoring_Committee_ Advisory_Report_May_2007.pdf; Ministerie van Financien, Werkprogramma Corporate Governance 2008/2009 (Corporate Governance Work Program 2008/2009) (Neth.), http://www.minfin.nl/nl/actueel/kamerstukken_en_besluiten,2007/10/FM07-2587.html (last visited Jan. 20, 2008).

[FN120]. See, e.g., Kara Scannell, How Borrowed Shares Swing Company Votes, Wall St. J., Jan. 26, 2007, at A1 [hereinafter Scannell, Borrowed Shares] (reporting Chairman Cox's statement that empty voting "is already a serious issue" and "is almost certainly going to force further regulatory response"); cf. Paul S. Atkins, SEC Commissioner, Remarks Before 9th Annual Alternative Investment Roundup (Jan. 29, 2007), available at http:// www.sec.gov/news/speech/2007/spch012907psa.htm (offering an extended analysis of empty voting and vote

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

morphing); Sec. Exch. Comm'n, Roundtable on Proxy Voting Mechanics (May 24, 2007), available at http://www.sec.gov/spotlight/proxyprocess/proxyvotingbrief.htm (discussing share ownership and voting issues); Ron Orol, SEC Holds Hearing on Proxy Rules, Daily Deal, May 28, 2007 (discussing SEC hearing relating to empty voting and hidden (morphable) ownership); Kara Scannell, Hedge Funds Vote (Often): In Proxies, Borrowed Shares Fill Ballot Box, Wall St. J., Mar. 22, 2007, at C1 (stating that Chairman Cox asked senior staffers to provide recommendations by year's end).

[FN121]. For example, Delaware Supreme Court Justice Jack Jacobs has stated that, "[s]hould an egregious case of empty voting abuse arise, that in turn may lead to legislation and to court decisions that would result in a new paradigm for share voting." Jack B. Jacobs, Paradigm Shifts in American Corporate Governance Law: A Quarter Century of Experience, Corp. Governance Advisor, Sept.-Oct. 2007, at 1, 4.

[FN122]. See, e.g., Ben White, Concern in US over "Empty Voting," Fin. Times (London), Oct. 6, 2006, at 29 (quoting John Wilcox of TIAA-CREF as saying that decoupling "undermine[s] the most fundamental assumption in corporate governance"); Ben White, Thesis on Hedge Fund Tactics Gives Investors a Shock-- Professor's Warning on "Empty Voting" Has Had Big Impact in the US, Fin. Times (London), Oct. 6, 2006, at 29 (noting the impact of decoupling analysis on institutional investors); cf. Barry Burr, Editorial, "Morphing" Hedge Fund Ownership, Pensions & Investments, Oct. 16, 2006, at 10 (endorsing our disclosure approach).

[FN123]. See Ron Orol, SEC Eyes Investors in Takeover Fights, Daily Deal, May 14, 2007 (reporting rumors as to possible new SEC disclosure rules to address decoupling).

[FN124]. The Takeover Code, Rule 8.3 (2006) (U.K.); see also Takeover Panel (U.K.), Dealings in Derivatives and Options (May 13, 2005), available at http://www.thetakeoverpanel.org.uk/new/consultation/DATA//PCP200502.pdf (consultation paper).

[FN125]. Takeover Panel Code Comm. (U.K.), Derivatives and Options Regime: 2007 Review (June 29, 2007).

[FN126]. Fin. Servs. Auth. (U.K.) (2007), supra note 116, ¶¶ 1.28, 5.33.

[FN127]. Id. ¶¶ 1.30, 5.35.

[FN128]. Id. ¶¶ 1.32, 5.51-5.53, 5.57.

[FN129]. Hedge Fund Working Group, Hedge Fund Standards Consultation Paper Part 2: The Best Practice Standards 60 (Oct. 2007). For background on this draft code of conduct, see Bertrand Benoit & James Mackintosh, German Support for Draft Hedge Fund Code Eases Industry Pressure, Fin. Times (London), Oct. 13, 2007, at 15; James Mackintosh, London Hedge Funds Planning First Voluntary Code of Conduct, Fin. Times USA, Oct. 11, 2007, at 1.

[FN130]. Hedge Fund Working Group (2007), supra note 129, at 47.

[FN131]. Id. at 61.

[FN132]. See Matthew J. Gardella, New SEC Rules for Stock Repurchases, Insights, Jan. 2004, at 19.

[FN133]. Rule 10b-18 and Purchases of Certain Equity Securities by the Issuer and Others, Securities Act Release No. 8160, Exchange Act Release No. 46,980, 67 Fed. Reg. 77,594, 77,604 (proposed Dec. 10, 2002).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN134]. Regulation S-K, Item 703, 17 C.F.R. § 229.703 (2007); Purchases of Certain Equity Securities by the Issuer and Others, Securities Act Release No. 8335, Exchange Act Release No. 48,766, 68 Fed. Reg. 64,952 (Nov. 10, 2003).

[FN135]. Regulation S-K, Item 703, 17 C.F.R. § 229.703(a) (2007).

[FN136]. "Security-based swap agreements" are not considered securities under Securities Act § 2A(b)(1), 15 U.S.C. § 77b-1(b) (2000), and Exchange Act § 3A(b)(1), 15 U.S.C. § 78c-1(b) (2000). Item 703 deals with a company's purchases of shares and related equity securities. Regulation S-K, Item 701, 17 C.F.R. § 229.701 (2007), addresses sales of unregistered securities. Item 701 might be implicated in some soft parking arrangements. However, we expect that the most likely forms will involve transactions in OTC equity derivatives. In part, this reflects the nature of the underlying soft parking transactions; in part, it reflects the reality that if a company can achieve the same soft parking end in two economically similar ways, it will often prefer the form that avoids disclosure.

[FN137]. See Louis Loss & Joel Seligman, Fundamentals of Securities Regulation 175 (5th ed. 2004).

[FN138]. Regulation S-K, Item 303(a)(4)(ii)(C), 17 C.F.R. § 229.303(a)(4)(ii)(C) (2007).

[FN139]. Regulation S-K, Item 303(a)(4)(i), 17 C.F.R. § 229.303(a)(4)(i) (2007).

[FN140]. SEC Form 8-K, Item 1.01(a) (2006).

[FN141]. 17 C.F.R. §§ 230.408, 240.12b-20 (2007).

[FN142]. The Rule 10b-5 ban on insider trading covers corporate repurchases of shares, and presumably applies as well to the equity swaps hypothetical. A corporation's knowledge of the "true" distribution of votes may well be inside information. However, insider trading liability rests on the same materiality requirement that underlies the company's public filings. Moreover, the usual insider trading rule is "disclose or abstain." Here, the counterparty will often have the same information as the company. It thus seems unlikely that insider trading rules will have much impact on corporate soft parking.

[FN143]. NYSE Euronext, Listed Company Manual § 204.25 (2007).

[FN144]. Id. § 204.09.

[FN145]. Id. § 201.00; NASDAQ Marketplace Rule IM-4120 (2007).

[FN146]. See Exchange Act Rule 13d-1, Filing of Schedules 13D and 13G, 17 C.F.R. § 240.13d-1(a)(2007).

[FN147]. An exception to the requirement to attach related agreements might be appropriate for derivatives transactions that follow a standard, publicly available form contract.

[FN148]. We offer a specific reform proposal on share recall procedures infra in Part IV.C.2. There may be additional benefits to greater transparency with respect to stock lending and borrowing. For instance, in September 2007, criminal charges were brought against former stock loan employees at a number of brokerage firms; prosecutors allege that because prices in the share loan market were so obscure, the employees could rip off their own firms by arranging for the firms to overpay when borrowing shares. See Floyd Norris, Stock Loans Are No Place for Secrecy, N.Y. Times, Sept. 28, 2007, at C1.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN149]. See Inst'l S'holder Servs., ISS Share Lending Flash Survey (2007) (PowerPoint presentation provided by Diana Bourke to Henry Hu) (discussing survey findings on institutional investors' voting and lending policies).

[FN150]. Kirchmaier & Grant (2005), supra note 112, at 18-22. There were rumors that the votes may have found their way to Pirelli.

[FN151]. 17 C.F.R. § 270.30b1-4 (2007); SEC Form N-PX (2003). For studies of the impact of this mutual fund rule, see Gerald F. Davis & E. Han Kim, Business Ties and Proxy Voting by Mutual Funds, 85 J. Fin. Econ. 552 (2007); Martijn Cremers & Roberta Romano, Institutional Investors and Proxy Voting: The Impact of the 2003 Mutual Fund Voting Disclosure Regulation (Working Paper, 2007), available at http://ssrn.com/abstract=982493.

[FN152]. We discuss Sulzer, and ZKB's role, supra in Part II.A.

[FN153]. We discuss OMV's bid for MOL supra in Part I.C.2.

[FN154]. We discuss Hyundai Elevator's use of decoupling to avoid Korea's holding company rules infra in Part V.A.

[FN155]. We discuss the Henderson Land case in Hu & Black, Decoupling I (Law Review Version) (2006), supra note 1, at 834-35.

[FN156]. We discuss Pershing Square-Sears Canada in Hu and Black, Decoupling I (Finance Version) (2007), supra note 1, at 352.

[FN157]. Hu and Black, Decoupling I (Finance Version) (2007), supra note 1, at 354-55.

[FN158]. Shaun P. Martin and Frank Partnoy have proposed eliminating all voting rights for anyone who hedges even part of their interest, but they did not propose specific implementation strategies. See Shaun Martin & Frank Partnoy, Encumbered Shares, 2005 U. Ill. L. Rev. 775, 793-94. We discuss and criticize their proposal in Hu & Black, Decoupling I (Law Review Version) (2006), supra note 1 at 888-90. A subsequent work proposes to reduce the gap between the record date and meeting date, and also suggests a second look at time-phased voting. See Charles M. Nathan, "Empty Voting" and Other Fault Lines Undermining Shareholder Democracy: The New Hunting Ground for Hedge Funds, Corp. Governance Advisor, Jan.-Feb. 2007, at 1, 8. On "overvoting" and other voting slippages due to technical problems in the voting architecture, see Marcel Kahan & Edward B. Rock, The Hanging Chads of Corporate Voting 28-32 (Working Paper, 2007), available at http://ssrn.com/abstract=1007065.

[FN159]. Overvoting involves a record owner which, having lent some of its shares, seeks to cast more votes than its remaining votable shares. See Kahan & Rock (2007), supra note 158, at 31.

[FN160]. For detailed overviews of the current system, see John C. Wilcox & John J. Purcell III, "Street Name" Registration & the Proxy Solicitation Process, in A Practical Guide to SEC Proxy and Compensation Rules § 12-1 (Amy L. Goodman & John F. Olson eds., 3d ed. Supp. 2003); Kahan & Rock (2007), supra note 158, at 4-39.

[FN161]. Hu & Black, Debt, Equity, and Hybrid Decoupling (2008), supra note 4.

[FN162]. One could argue that this power is already conveyed by a general provision such as section 212(a) of the Delaware General Corporation Law, which provides, "Unless otherwise provided in the certificate of incorporation..., each stockholder shall be entitled to 1 vote for each share of capital stock held by such

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

stockholder." Del. Code Ann. tit. 8, § 212(a) (2001). However, one could also view this provision as conveying power to specify in the charter the voting rights conveyed by each share, not power to condition voting rights on attributes of the shareholder, such as whether the shareholder also holds coupled or related non-host assets.

[FN163]. On the risks posed by midstream charter amendments, see Lucian Arye Bebchuk, Limiting Contractual Freedom in Corporate Law: The Desirable Constraints on Charter Amendments, 102 Harv. L. Rev. 1820, 1823 (1989); Bernard S. Black, Is Corporate Law Trivial?: A Political and Economic Analysis, 84 Nw. U. L. Rev. 542, 567-68 (1990). A majority of minority requirement prior to going public is not feasible, but also not important. Most scholars believe that a pre-IPO charter provision is not likely to be seriously inefficient, because if it were, the insiders would expect to receive a lower price for their shares. See, e.g., Robert Daines & Michael Klausner, Do IPO Charters Maximize Firm Value? Antitakeover Protection in IPOs, 17 J.L. Econ. & Org. 83, 91 (2001).

[FN164]. This proposal draws, in spirit, from the general "self-enforcing" approach to corporate law proposed in Bernard Black & Reinier Kraakman, A Self-Enforcing Model of Corporate Law, 109 Harv. L. Rev. 1911 (1996).

[FN165]. NYSE rules do not allow time-phased voting. NYSE Euronext, Listed Company Manual § 313(A) (2007).

[FN166]. For empty voting by insiders--directly or through the corporation-- the courts may already have the power to intervene. As the Delaware Supreme Court stated in MM Cos. v. Liquid Audio, Inc., 813 A.2d 1118, 1127 (Del. 2003), the Delaware courts "have remained assiduous in carefully reviewing any board actions designed to interfere with or impede the effective exercise of corporate democracy by shareholders, especially in an election of directors." Our proposal would ensure that the courts have this power for insiders, and would extend it to voting by outsiders.

[FN167]. Parent could, for example, arrange for subsidiary 1 to be long 1 million shares of company X, while subsidiary 2 is short 1 million shares. Parent is thus fully hedged, yet if attestation is not at the parent level, subsidiary 1 could vote its 1 million shares.

[FN168]. NYSE Euronext, Listed Company Manual § 313(A) (2007). Examples of such plans include time-phased voting (longer-term shareholders get more votes per share) and capped voting (a cap on the number of votes by a single shareholder).

[FN169]. Id.

[FN170]. Exchange Act § 14(a), 15 U.S.C. § 78n(a) (2000); Exchange Act Rule 14a-4, 17 C.F.R. § 240.14a-4 (2007).

[FN171]. See Del. Code Ann. tit. 8, § 160(c) (2001). On the complexities in determining whether a particular proposal has passed or received majority support, see Janet Fisher & Mary Alcock, Voting at Annual Meetings, Mergers & Acquisitions Corp. Governance Rep. (Cleary Gottlieb Steen & Hamilton, N.Y., N.Y.), June-Sept. 2007, at                                    14,                            available                             at                               http:// www.clearygottlieb.com/files/tbl_s47Details%5CFileUpload265%5C759%5CCG%C20M&A%C20and%C20cor porate%C2020Governance%R eport.pdf.

[FN172]. A potential concern with a charter amendment approach is that the general potential for empty voting means that the vote on a charter amendment might itself be bought. We think this is an acceptable risk. Empty voting is still the exception and not the rule, and it is not clear why an attestation rule would be controversial enough to attract an empty voting effort, whether to support or defeat it.

[FN173]. We need not specify here the precise nature of those interests or of the company value at stake. For a discussion of three conceptions of the corporate objective and differences between actual and blissful shareholder

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

wealth maximization and between shareholder wealth maximization and shareholder welfare maximization, see Henry T. C. Hu, Behind the Corporate Hedge: Information and the Limits of "Shareholder Wealth Maximization," J. Applied Corp. Fin., Fall 1996, at 39, 40-43, 48-50.

[FN174]. See William T. Allen, Reinier Kraakman & Guhan Subramanian, Commentaries and Cases on the Law of Business Organization ch. 12.10 (2d ed. 2007). For discussion of a counterexample, see William A. Klein & John C. Coffee, Jr., Business Organization and Finance: Legal and Economic Principles 168-70 (10th ed. 2007). Some other jurisdictions impose greater duties on controlling shareholders. See, e.g., Gambotto v. W.C.P. Ltd. (1995), 182 C.L.R. 432 (Austl.) (requiring majority shareholders to act in the best interests of their company); Gambotto v WCP Ltd: Its Implications for Corporate Regulation (Ian M. Ramsay ed., 1996).

[FN175]. See Jens Dammann, Majority Freezeouts 16-17 (Univ. of Tex. Law Sch., Law & Econ. Research Paper No. 114, 2007), available at http:// ssrn.com/abstract=1013082.

[FN176]. See Warner Fuller, Restrictions Imposed by the Directorship Status on the Personal Business Activities of Directors, 26 Wash. U. L.Q. 189, 189 (1941) (discussing the restrictions of corporate directors' "freedom to engage in purely personal business activities"); cf. Golden Rod Mining Co. v. Bukvich, 92 P.2d 316, 320 (Mont. 1939) (addressing the situation of an outside director who was a competitor).

[FN177]. Hedge Fund Working Group (2007), supra note 129, at 61.

[FN178]. Jonathan Cohen, Negative Voting: Why It Destroys Shareholder Value and a Proposal To Prevent It, 45 Harv. J. on Legis. (forthcoming 2008), proposes a private right of action for shareholders harmed by voting with negative economic interest. In our view, this remedy is too mild, even assuming effective disclosure, because harm will often be hard to show.

[FN179]. For example, a dealer may hold shares to hedge an overall book of options positions, with calls held by some clients and puts held by others. In this situation, economic ownership will be split, and there may be no obvious person to pass voting rights to. The rights should then remain with the derivatives dealer. Our proposal focuses on situations where the locus of economic ownership is clear.

[FN180]. For the current rules, see NYSE Euronext, NYSE Rule 452 (2003), available at http://rules.nyse.com/nysetools/Exchangeviewer.asp? SelectedNode=chp_1_2&manual=nyse/nyse_rules/nyse-rules. For the proposed rule change, see NYSE Euronext, Report and Recommendations of the Proxy Working Group to the New York Stock Exchange (2006), available at http:// www.nyse.com/pdfs/PWG_REPORT.pdf; NYSE Euronext, August 27, 2007 Addendum to the Report and Recommendations of the Proxy Working Group to the New York Stock Exchange Dated June 5, 2006, available at http:// www.nyse.com/pdfs/PWGAddendumfinal.pdf. For the current status of the proposal, see Sec. & Exch. Comm'n, Briefing Paper, Roundtable on Proxy Voting Mechanics (May 23, 2007), available at http:// www.sec.gov/spotlight/proxyprocess/proxyvotingbrief.htm.

[FN181]. See Letter from Donald D. Kittell, Executive Vice President, Sec. Indus. & Fin. Mkts. Ass'n, to Nancy M. Morris, Sec'y, Sec. Exch. Comm'n 2 (Mar. 30, 2007), available at http://www.sec.gov/comments/s7-03-07/s70307-20.pdf.

[FN182]. See supra Part I.C.3.

[FN183]. Hewlett v. Hewlett-Packard Co., No. 19513-NC, 2002 WL 818091, at *1, *8-9 (Del. Ch. Apr. 30, 2002).

[FN184]. See id. at *9 ("During the conference call [between Hewlett-Packard and Deutsche Bank], no one from HP used any threats or inducements regarding future business relationships.... Instead, [HP's executives] argued HP's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

case entirely on the merits.").

[FN185]. See John Hintze, Automation Has Greater Impact as Securities Lending Increases, Sec. Indus. News, May 8, 2006, at 16, 33.

[FN186]. RMA Securities Lending Industry Composite, Averages for the Period: 2nd Quarter 2007, available at http://rmahq.org/NR/rdonlyres/77B9BCC6-5FB2-4961-884D-BAAB3ADAED2B/0/Survey2ndQtr2007.xls.

[FN187]. See Focus (World Fed'n of Exchs.), Sept. 2007, at 41, 42 tbl.1.1 (providing data on market capitalization).

[FN188]. Telephone Interview with Irving Klubeck, President, Sec. Lending Div., Sec. Indus. & Fin. Mkt. Ass'n, and Managing Dir., Pershing LLC (Oct. 23, 2007).

[FN189]. Peter Butler, Founder & CEO, Governance for Owners, Address at the International Corporate Governance Network Conference: Creating Value--Building Trust (July 7, 2006) (PowerPoint slides on file with authors) (providing data on shares borrowed as a percentage of shares outstanding and as a percentage of borrowable shares; one can combine the two percentages to estimate borrowable shares as a fraction of shares outstanding).

[FN190]. We discuss these efforts in Hu & Black, Decoupling I (Law Review Version) (2006), supra note 1, at 899-901.

[FN191]. Companies must inform record holders (under Exchange Act Rule 14a-13, 17 C.F.R. § 240.14a-13 (2007)) and exchanges (under exchange rules) of record dates in advance. They normally do not provide advance notice to shareholders. However, institutions can learn record dates from stock exchanges (the NYSE publishes them in a weekly circular) or from specialized services that provide this information. Jennifer E. Bethel, Gang Hu & Qinghai Wang, Institutional Investor Activism: Evidence from Voting and Daily Trading Around Mergers and Acquisitions 6-7 (Working Paper, 2007) (on file with authors).

[FN192]. A modest extension, which on balance we would not adopt, would be a "vote or explain" rule, under which institutions would have to either vote or explain why they did not. We expect that the explanations would soon become boilerplate.

[FN193]. See Ehud Kamar, Does Shareholder Voting on Acquisitions Matter? 37 n.32 (Working Paper, 2006), available at http:// law.bepress.com/alea/16th/art64; see also Bethel, Hu & Wang (2007), supra note 191, at 14-15.

[FN194]. See Cremers & Romano (2007), supra note 151.

[FN195]. See Yair Listokin, Management Always Wins the Close Ones (Working Paper, 2007), available at http://ssrn.com/abstract=980695. Soft parking may provide an alternative explanation; if managers anticipate a close vote, they may arrange for votes to be held by friendly hands, and then call in enough votes to win once they see how the voting is going.

[FN196]. We discuss this and other problems associated with stock lending practices in Hu & Black, Decoupling I (Law Review Version) (2006), supra note 1, at 895-98.

[FN197]. In a recent survey by Institutional Shareholder Services, 31% of the institutions who do not currently lend shares indicated that they would do so "if there were an automated way to identify meetings for which they wanted to vote and to recall the shares to retain voting rights." Inst'l S'holder Servs. (2007), supra note 149, at slide 3.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN198]. For an extreme example where a broker-dealer routinely overvoted and apparently didn't try to limit its voting based on the shares it was entitled to vote, see In re Deutsche Bank Securities Inc., NYSE Request for Review of Exchange Hearing Panel Decision 05-45, at 2 (Feb. 2, 2006), available at http://www.nyse.com/pdfs/05-045.pdf (NYSE fines Deutsche Bank based on stipulated facts, including overvoting "on numerous occasions").

[FN199]. See Regulation T, 12 C.F.R. § 220.2 (2007) (defining the "exempted borrower" exemption for major broker-dealers). For a more detailed description of Regulation T, see Charles E. Dropkin, Developing Effective Guidelines for Managing Legal Risks--U.S. Guidelines, in Securities Finance: Securities Lending and Repurchase Agreements 167, 172-76 (Frank J. Fabozzi & Steven V. Mann eds., 2005).

[FN200]. See, e.g., Bank of England, Securities Borrowing and Lending Code of Guidance § 7.4 (Dec. 2004) (stating that there is a "consensus... in the market that securities should not be borrowed solely for the purposes of exercising the voting rights at [a shareholder meeting]"), available at http://www.bankofengland.co.uk/markets/gilts/stockborrowing.pdf; Paul Myners, Shareholder Voting Working Group, Review of the Impediments to Voting UK Shares 12-13 (Mar. 2005), available at http://www.investmentuk.org/press/2005/20050314-01.pdf (Myners Committee report, advocating greater industry safeguards to address stock lending); cf. Hedge Fund Working Group (2007), supra note 129, at 61 (recommending a ban on voting borrowed shares without economic interest, but not addressing the long shares, short equity swaps equivalent).

[FN201]. As we discuss above, if an empty voter both buys shares and takes the short side of an equity swap with a single dealer, the dealer can hedge by selling shares short to the hedge fund; thus, there may well be no direct market impact. If the empty voter must buy shares from one dealer and hedges with another, both sides must engage in market transactions, incurring trading and market impact costs. The two dealers will enter into offsetting transactions, but their actions will not be coordinated, so each side's trades will move the market to some extent.

[FN202]. See Susan E.K. Christoffersen, Christopher C. Géczy, David K. Musto & Adam V. Reed, Vote Trading and Information Aggregation, 62 J. Fin. 2897 (2007).

[FN203]. If naked shorting were to be allowed, who has voting rights--the lender who has recalled the shares or the counterparty to whom a short seller has sold shares? The only realistic answer is both. In an anonymous market, the counterparty cannot even be found. This does not trouble us. Both are economic owners. Both have the right incentives, subject to their other holdings. One loses some ex ante certainty about the number of votable shares, but this is not a significant departure from the current environment, when the number of shares that will be voted is unknown ex ante.

[FN204]. See Amanda Gerut, Emerging Practices in Securities Lending and Proxy Voting Nexus, BoardIQ, Apr. 3, 2007, available at http:// www.riskmetrics.com/press/articles/040307boardiq.html (quoting an industry expert as saying that "[y]ou can't ignore a page one story in The Wall Street Journal," referring to a story by Scannell, Borrowed Shares (2007), supra note 122, which is based on Decoupling I (Law Review Version)); cf. Inst'l S'holder Servs. (2007), supra note 149, at slide 1 ("Securities lending and the impact on proxy voting policies and practices are gaining increasing exposure in the corporate governance industry.").

[FN205]. Gerut (2007), supra note 204.

[FN206]. Hedge Fund Working Group (2007), supra note 129, at 61.

[FN207]. See Seidman & Assocs., L.L.C. v. G.A. Fin., Inc., 837 A.2d 21, 25-28 (Del. Ch. 2003) (invalidating 230,000 otherwise valid votes because of a 0.3% overvote). Vote tabulators can sometimes resolve overvotes by contacting the record owner and getting corrected data, but this effort is sometimes not made and, even when made,

sometimes fails.

[FN208]. See Del. Code Ann. tit. 8, § 231(d) (2001) (providing that "inspectors may consider other reliable information for the limited purpose of reconciling proxies and ballots" where overvoting is suspected).

[FN209]. See J. Robert Brown, Jr., The Shareholder Communication Rules and the Securities and Exchange Commission: An Exercise in Regulatory Utility or Futility?, 13 J. Corp. L. 683 (1988). For a recent return to this theme, see David Donald, The Rise and Effects of the Indirect Holding System: How Corporate America Ceded Its Shareholders to Intermediaries (Working Paper, 2007), available at http://ssrn.com/abstract=1017206.

[FN210].

[Law on Joint Stock Companies of the Russian Federation], Federal Law No. 208-FZ, art. 51, Ros. gaz., Dec. 29, 1995, latest amendments published in Ros. gaz., Jan. 11, 2006; see also Bernard S. Black, Reinier Kraakman & Anna Tarassova, A Guide to the Russian Law on Joint Stock Companies 325-26 (1998).

[FN211]. See Business Roundtable, Request for Rulemaking Concerning Shareholder Communications (Petition 4-493) (Apr. 12, 2004), available at http://www.sec.gov/rules/petitions/petn4-493.htm (recommending that the SEC "consider requiring brokers and banks to provide companies with contact information for all beneficial owners, and permit companies to mail proxy materials directly to all beneficial owners").

[FN212]. See, e.g., Vladimir Atanasov, Conrad S. Ciccotello & Stanley B. Gyoshev, Learning from the General Principles of Company Law for Transition Economies: The Case of Bulgaria, 31 J. Corp. L. 1003 (2006).

[FN213]. Exchange Act Rule 14b-1, 17 C.F.R. § 240.14b-1 (2007).

[FN214]. For instance, annual turnover rates on the New York Stock Exchange increased from about 20% in 1966 to about 73% in 1987 and 88% in 2000. See Henry T.C. Hu, New Financial Products, the Modern Process of Financial Innovation, and the Puzzle of Shareholder Welfare, 69 Tex. L. Rev. 1273, 1302-03 (1991); W. Scott Bauman, Robert E. Miller & E. Theodore Veit, Managing Portfolio Turnover: An Empirical Study, 44 Q.J. Bus. & Econ. 15, 15 (2005).

[FN215]. If voting rights are limited by reference to economic ownership, then major shareholders who voted before the record date and attested to economic ownership at that time, would presumably need to reattest, or correct a prior attestation, as of the record date. One form of attestation could be "I have, and at the record date will have, economic ownership the shares for which I have voting rights," thus allowing for unhedged trading between the attestation date and the record date.

[FN216]. In the U.K., see Companies Act, 2006, c. 46, § 327(2) (Eng.). German law does not use the concept of a record date for registered shares; shareholders as of the meeting date can vote. Aktiengesetz [AktG] [Stock Corporation Act], Sept. 6, 1965, BGBl. I at 1089, last amended by Gesetz, July 16, 2007, BGBl. I at 1330, § 67(2) (F.R.G.). Thus, the minimum time is set by the share trading settlement period, currently two business days. In practice, a somewhat longer period is sometimes needed to allow the company to update its share register. Uwe Hüffer, Aktiengesetz 334 (7th ed. 2006). Germany also allows bearer shares; for these shares the time gap is three weeks. Aktiengesetz § 123(3). On the French system, see Decree No. 06-1566 of Dec. 11, 2006, Journal Officiel de la République Française [J.O.] [Official Gazette of France], Dec. 12, 2006 (amending Code de Commerce art. R225-85); Jean-Paul Valuet, Le décret du 11 décembre 2006 sur les sociétés commerciales, 2007 Revue des Sociétés 227, 233-34. On Spain, which uses a two-level dematerialized system of shareholding with record owners as the first level and economic owners as the second level, see Kahan & Rock (2007), supra note 158, at 36. See also Nathan (2007), supra note 158, at 8 (proposing to compress the time between record and meeting dates).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN217]. Council Directive 2007/36, art. 7.2, 2007 O.J. (L 184/17) (EC), allows companies to dispense with a record date if they can identify shareholders on the meeting date. Article 8.1-2 of the Directive requires companies to offer shareholders direct electronic voting at a meeting "subject only to such requirements and constraints as are necessary to ensure the identification of shareholders and the security of the electronic communication."

[FN218]. Del. Code Ann. tit. 8, § 213(a) (2007).

[FN219]. This approach is consistent with the current European approach. See Council Directive 2007/36, supra note 217, at art. 5.1 (minimum period for notice of a general meeting, including the agenda, of either fourteen or twenty-one days).

[FN220]. We contemplate a default corporate law provision, changeable in a company's charter, which would provide for a variety of types of voting instructions that can remain valid despite changes in the number of shares owned, and create procedures for handling the most common sources of conflict between voting instructions and actual ownership.

[FN221]. See Listokin (2007), supra note 195, at 2.

[FN222]. Sections A and B expand on related discussions in Hu, Shareholder and Creditor Decoupling (2007), supra note 3, at 1, 4, 20-21 & 23; and Hu & Westbrook, Shareholder and Creditor Interests (2007), supra note 3, at 1321, 1329-30, 1366, 1382-89, 1395-98, 1401-03.

[FN223]. See, e.g., Hu (1991), supra note 214, at 1288-1300 (proposing the concept of shareholder "maximization rights").

[FN224]. On shareholder rights to sue for fiduciary breaches, see, for example, Melvin Aron Eisenberg, Corporations and Other Business Organizations 258-75, 912-1039 (9th ed. 2005).

[FN225]. See Del. Code Ann. tit. 8, § 220 (2001).

[FN226]. See Exchange Act Rule 14a-8, 17 C.F.R. § 240.14a-8 (2007).

[FN227]. See Del. Code Ann. tit. 8, § 262 (2001) (appraisal rights); id. § 170 (dividends); id. § 271 (liquidation).

[FN228]. Deephaven Risk Arb Trading Ltd. v. Unitedglobalcom, Inc., No. 379-N, 2005 WL 1713067 (Del. Ch. July 13, 2005).

[FN229]. Deephaven, 2005 WL 1713067. In Deephaven, a shareholder first borrowed shares in one account, then "sold" these shares to its own account with a different dealer. The Delaware court found that this created ownership in the second account and allowed a suit to proceed.

[FN230]. Exchange Act § 10(b), 15 U.S.C. § 78j(b) (2000).

[FN231]. Del. Code Ann. tit. 8, § 211 (2001).

[FN232]. Exchange Act Rule 14a-8(b), 17 C.F.R. § 240.14a-8(b) (2007).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN233]. Exchange Act Rule 14a-9, 17 C.F.R. § 240.14a-9 (2007).

[FN234]. In re Appraisal of Transkaryotic Therapies, Inc., No. 1554-CC, 2007 WL 1378345 (Del. Ch. May 2, 2007).

[FN235]. See Del. Code Ann. tit. 8, § 262 (2001).

[FN236]. The investor held shares through a record owner, and thus ultimately through Cede & Co., which is the first-tier record holder for most banks and brokers. The court limited the number of appraisable shares to the number held of record by Cede & Co. which were voted against the merger or not voted. This is a loose limit because Cede & Co. holds of record a large fraction of the shares in most public companies, and a significant percentage of these will go unvoted in a typical merger.

[FN237]. Transkaryotic, 2007 WL 1378345, at *5.

[FN238]. See Anita Raghavan, Happy Returns: How Lehman Sold Plan To Sidestep Tax Man--Hedge Funds Use Swaps To Avoid Dividend Hit; IRS Seeks Information, Wall St. J., Sept. 17, 2007, at A1; Anita Raghavan, Hedge Funds Could Lose Offshore Shelter: Senate Panel Weighs Targeting Derivatives by Change in Tax Rules, Wall St. J., Oct. 1, 2007, at C1; Jeffrey L. Rubinger, Tax Planning Strategies with Equity Derivatives, Fla. Bar J., Apr. 2002, at 45, 49.

[FN239]. See Chris Hughes, Dividends--The Accidental Asset Class, Fin. Times (London), July 12, 2007, at 15.

[FN240]. Deephaven Risk Arb Trading Ltd. v. Unitedglobalcom, Inc., No. 379-N, 2005 WL 1713067 (Del. Ch. July 13, 2005).

[FN241]. Clayton Act § 7A, 15 U.S.C. § 18a (2000).

[FN242]. 16 C.F.R. § 802.9 (2007); see also Malcomb Pfunder, Shareholder Activism and the Hart-Scott-Rodino Act Exemption for Acquisitions of Voting Securities Solely for the Purposes of Investment, Antitrust, Summer 2006, at 74.

[FN243]. Clayton Act § 7A(a), 15 U.S.C. § 18a(a) (2000).

[FN244]. For discussion of these laws, see Stephen M. Bainbridge, Corporation Law and Economics § 12.12 (2002).

[FN245]. See Ind. Code Ann. §§ 23-1-42-1, 23-1-42-2, 23-1-42-9 (West 2005).

[FN246]. Del. Code Ann. tit. 8, § 203 (2001).

[FN247]. This discussion is based on a series of reports by the Korean Center for Good Corporate Governance: Hyundai Elevator Again Enters into a Complicated Derivative Deal, Issue Rep. (Ctr. for Good Corporate Governance, Seoul, Korea), Oct. 26, 2006; Hyundai Group Avoids Being Subject to "Holding Company Regulations": What Is Its Impact?, Issue Rep. (Ctr. for Good Corporate Governance, Seoul, Korea), Sept. 19, 2007; Hyundai Group Faces Possible Holding Company Conversion, Issue Rep. (Ctr. for Good Corporate Governance, Seoul, Korea), May 3, 2007.

[FN248]. Hyundai Group Avoids Being Subject to "Holding Company Regulations": What Is Its Impact? (2007), supra note 247.

[FN249]. Investment Company Act § 3(a)(1)(C), 15 U.S.C. § 80a-3(a)(1)(C) (2000); see also Meredith M. Brown, Michael P. Harrell & William D. Regner, Internet Incubators: How To Invest in the New Economy Without Becoming an Investment Company, 56 Bus. Law. 273, 274 (2000); John S. Dzienkowski & Robert J. Peroni, The Decline in Lawyer Independence: Lawyer Equity Investments in Clients, 81 Tex. L. Rev. 405, 494-95 (2002).

[FN250]. Investment Company Act § 3(a)(1)(C), 15 U.S.C. § 80a-3(a)(1)(C) (2000).

[FN251]. Investment Company Act § 3(a)(2), 15 U.S.C. § 80a-3(a)(2) (2000). The definition of investment security depends on the definition of "security." Investment Company Act § 2(a)(36), 15 U.S.C. § 80a-2(a)(36) (2000), copies the definition of security in Securities Act § 2(a)(1), 15 U.S.C. § 77b(a)(1) (2000), and courts have accordingly interpreted the terms similarly. See, e.g., SEC v. Nat'l Presto Indus., Inc., 486 F.3d 305, 309-10 (7th Cir. 2007). Thus, it is not illogical to extend the parallelism one step further. Securities Act § 2A(b)(1), 15 U.S.C. § 77b-1(b) (2000), has been amended to state that a security "does not include any security-based swap agreement." There was no parallel amendment to the Investment Company Act. Nonetheless, a court might interpret the Investment Company Act definition similarly; if so, equity swaps and perhaps other derivatives would fall outside the Investment Company Act definition. We know of no court decisions on point.

[FN252]. Alfa owned part of a Turkish cell phone company, Turkcell, which owned part of Kyivstar. After the arbitration decision, Alfa sold half of its stake in Turkcell. See Timofei Dzyadko, Sold to Hold, Vedomosti, Dec. 4, 2007 [

], available at http://www.vedomosti.ru/newspaper/article.shtml? 2007/12/04/137331; Number Portability To Stay, Says Court, Turkish Daily News, Dec. 5, 2007, available at http://www.turkishdailynews.com.tr/article.php? enewsid=90435.

[FN253]. See Hu & Black, Debt, Equity, and Hybrid Decoupling (2008), supra note 4.

[FN254]. For a loan participation example involving decoupling of economic interest from control rights, see AutoStyle Plastics, Inc. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.), 269 F.3d 726, 736-37 (6th Cir. 2001).

[FN255]. Repackaging can also result in conflicts of interest. For example, CDO repackagers sometimes retain part of the securities they create. Citibank retained $43 billion in highly rated, senior tranches (only to later take a $10 billion write-off). Cracks in the Edifice, Economist, Nov. 10, 2007, at 89. If Citibank retained control rights for the underlying debt, it might face a conflict between actions that would benefit its own position and actions that would benefit more junior tranches.

[FN256]. See Lingling Wei, Investors Look to Loan Servicers, Wall St. J., Jan. 4, 2007; Lingling Wei, Ruth Simon & James R. Hagerty, Subprime Woes Weave Tangled Web, Wall St. J., June 29, 2007, at C1.

[FN257]. See, e.g., In re Foreclosure Cases, Nos. 3:07CV043, 07CV085, 07CV138, 07CV237, 07CV240, 07CV246, 07CV257, 07CV286, 07CV304, 07CV312, 07CV317, 07CV343, 07CV353, 07CV360, 07CV386, 07CV389, 07CV390, and 07CV433, 2007 WL 4056586 (N.D. Ohio Nov. 15, 2007); In re Foreclosure Cases, Nos. 1:07CV2282, 07CV2532, 07CV2560, 07CV2602, 07CV2631, 07CV2638, 07CV2681, 07CV2695, 07CV2920, 07CV2930, 07CV2949, 07CV2950, 07CV3000, and 07CV3029, 2007 WL 3232430 (N.D. Ohio Oct. 31, 2007) (rejecting foreclosure claims); cf. Gretchen Morgenson, Foreclosures Hit a Snag for Lenders, N.Y. Times, Nov. 15, 2007, at C1 (noting that lawyers for troubled homeowners may use this opinion to resist foreclosures on other loans).

[FN258]. In this Article, we leave aside several other ways in which debt decoupling may affect systemic risk, such

156 UPALR 625                                                      Page 103
156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

as the impact of such decoupling on the initial credit decision and the impact of informational asymmetries with respect to the risk/return characteristics of the many complex securities that are often created.

[FN259]. Apart from Hu, Shareholder and Creditor Decoupling (2007), supra note 3, and Hu & Westbrook, Shareholder and Creditor Interests (2007), supra note 3, the only academic discussions we are aware of that consider the possibility of empty crediting and negative creditor economic ownership are short discussions in Frank Partnoy & David A. Skeel, Jr., The Promise and Perils of Credit Derivatives, 75 U. Cin. L. Rev. 1019, 1034-35 (2007), and an early stage working paper, Douglas Baird & Robert Rasmussen, Anti-Bankruptcy (Working Paper, Dec. 2007) (on file with authors).

[FN260]. See 11 U.S.C. § 1126(c) (2000).

[FN261]. See, e.g., Eric B. Fisher & Andrew L. Buck, Hedge Funds and the Changing Face of Corporate Bankruptcy Practice, Am. Bankr. Inst. J., Dec. 2006-Jan. 2007, at 24, 24; Living on the [H]edge: New Ethical Challenges, Panel Discussion at the 81st Annual National Conference of Bankruptcy Judges (Oct. 11, 2007) (summary paper on file with authors) (stating that "[t]he presence of credit default swaps may fundamentally change the economic interest of lenders").

[FN262]. Fed. R. Bankr. P. 2019(a) ("[E]very entity or committee representing more than one creditor or equity security holder... shall file a verified statement [including]... the amounts of claims or interests owned by... the members of the committee..., the times when acquired, the amounts paid therefor, and any sales or other disposition thereof."). Common practice, however, is not to disclose purchase dates or amounts paid. Mark Berman, Will the Sunlight of Disclosure Chill Hedge Funds?, Am. Bankr. Inst. J., May 2007, at 24, 25 n.13.

[FN263]. Compare In re Nw. Airlines Corp., 363 B.R. 701, 704 (Bankr. S.D.N.Y. 2007) (disclosure required), with In re Scotia Dev. LLC, No. 07-20027-C-11, 2007 WL 2726902, at *1 (Bankr. S.D. Tex. May 29, 2007) (disclosure not required). For discussion of the Northwest Airlines case, see Berman (2007), supra note 262.

[FN264]. See Evan D. Flaschen & Kurt A. Mayr, Bankruptcy Rule 2019 and the Unwarranted Attack on Hedge Funds, Am. Bankr. Inst. J., Sept. 2007, at 16, 16 (arguing that there is no policy reason to require disclosure for ad hoc committees, but not official committees). In theory, a sophisticated bankruptcy trustee could condition appointment of a creditor to an official committee on disclosure of coupled assets.

[FN265]. See Gillian Tett & Paul J. Davies, Unbound: How a Market Storm Has Seen Derivatives Eclipse Corporate Bonds, Fin. Times, Aug. 8, 2007, at 11 (explaining that the market for credit default swaps is now ten times larger than the dollar amount of underlying bonds); Richard Beales, Uncertain Road Ahead for Delphi, Fin. Times (London), Nov. 8, 2005, at 45 (describing the bankruptcy of Delphi, which had $2 billion of outstanding bonds, but ten times that amount in outstanding credit derivatives).

[FN266]. See Hu & Black, Decoupling I (Law Review Version) (2006), supra note 1; supra Part IV.B.

[FN267]. For a discussion of this and other street sweeps, see Dale A. Oesterle, The Rise and Fall of Street Sweep Takeovers, 1989 Duke L.J. 202, 205-12.

[FN268]. See Acquisitions of Substantial Amounts of Securities and Related Activities Undertaken During and Following a Tender Offer for Those Securities, Exchange Act Release No. 24,976, 52 Fed. Reg. 37,472 (proposed Oct. 7, 1987).

[FN269]. 15 U.S.C. § 18a (2000).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 U. Pa. L. Rev. 625
**(Cite as: 156 U. Pa. L. Rev. 625)**

[FN270]. See Carrick Mollenkamp et al., For Hedge Funds, Hunting in Packs Pays Dividends: Financier Hohn Sparks Battle for ABN Amro, Gets Help from Allies, Wall St. J., Sept. 19, 2007, at A1.

156 U. Pa. L. Rev. 625

END OF DOCUMENT

1/7/08 Traffic World (Pg. Unavail. Online)
2008 WLNR 276792

Traffic World
Copyright 2008 Commonwealth Business Media

January 7, 2008

CSX, TCI Dig In
John D. Boyd
Associate Editor

The struggle between CSX Transportation's management and an activist hedge fund is shifting into a tougher mode.

The Children's Investment Fund Management late last month struck a partnership with 3G Capital Partners and others to gain control of more of the railroad shares and to install board members sympathetic to their calls for change.

Click to Enlarge

And these are not just any board members. Besides the top officials of two large investment funds, the planned minority slate includes well-known former rail executives from Conrail and Illinois Central, and another from Northwest Airlines.

Christopher Hohn, TCI's managing partner, said in a statement that the board of the largest rail carrier in the Eastern United States "has overseen a railroad that for many years has lagged its peers on many of the key metrics of operational and financial performance."

In a shared filing with the Securities and Exchange Commission, TCI and 3G said TCI holds 4.2 percent of outstanding CSX common stock and 3G about 4.1 percent, for 8.3 percent together. Atticus Capital has been the largest shareholder with about 4.9 percent, but by working together TCI and 3G would control significantly more. The group said its members also hold derivative securities "providing economic exposure equivalent to an additional 11.8 percent of CSX's outstanding shares."

The group said it would offer a slate of five minority directors at the next CSX annual meeting. They would be: Hohn; 3G Managing Director Alexandre Behring; former Conrail CEO Timothy O'Toole; former Illinois Central Chairman Gilbert Lamphere; and Gary Wilson, a former chairman at Northwest Airlines - the only major U.S. passenger airline that also operates a fleet of large freighters.

Shortly after the Dec. 19 announcement by dissident shareholders, CSX said in effect that its board and management are doing just fine.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

---- INDEX REFERENCES ----

COMPANY: ILLINOIS CENTRAL TRANSPORTATION CO; BEAR STEARNS COMPANIES INC; CANADIAN
NATIONAL RAILWAY CO; CANADIAN NATIONAL RAILWAY; BNSF RAILWAY CO; BEAR STEARNS AND
CO; BEAR STEARNS AND CO INC; NORTHWEST AIRLINES CORP NEW; NORTHWEST AIRLINES; 3G;
TELECOMMUNICATIONS COOPERATIVE NETWORK INC; US SECURITIES AND EXCHANGE COMMISSION;
CONSOLIDATED RAIL CORP; BNSF; CSX CORP; CONRAIL INC; CANADIAN PACIFIC RAILWAY;
BERKSHIRE HATHAWAY INC; CANADIAN PACIFIC RAILWAY LTD

NEWS SUBJECT:  (Meeting Announcements (1ME17))

INDUSTRY:  (Transportation (1TR48); Passenger Railroads (1PA89); Railroads (1RA98);
Land Transportation (1LA43); Passenger Transportation (1PA35))

REGION:  (USA (1US73); Americas (1AM92); Illinois (1IL01); North America (1NO39))

Language:  EN

OTHER INDEXING:  (3G; 3G CAPITAL PARTNERS; 3G MANAGING; ATTICUS CAPITAL; BEAR
STEARNS; BERKSHIRE HATHAWAY; BNSF; CANADIAN NATIONAL RAILWAY; CANADIAN PACIFIC
RAILWAY; CONRAIL; CONRAIL AND ILLINOIS CENTRAL; CSX; CSX BOARD; CSX TRANSPORTATION;
ELGIN; ILLINOIS CENTRAL; INVESTMENT FUND MANAGEMENT; NORTHWEST AIRLINES; SECURITIES
AND EXCHANGE COMMISSION; TCI; TCI PARTNER SNEHAL AMIN)  (Alexandre Behring;
Christopher Hohn; Click; Enlarge; Gary Wilson; Gilbert Lamphere; Hohn; Joliet
Eastern; Michael Ward; Timothy O'Toole; Ward; Warren Buffett)

Word Count: 929
1/7/08 TRFCW (No Page)
END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

DEFA14A 1 defa14a.htm SCHEDULE 14A

**SCHEDULE 14A**
**(Rule 14a-101)**

**INFORMATION REQUIRED IN PROXY STATEMENT**

# SCHEDULE 14A INFORMATION

**Proxy Statement Pursuant to Section 14(a) of the Securities**

**Exchange Act of 1934 (Amendment No.      )**

Filed by the Registrant ☒

Filed by a Party other than the Registrant ☐

Check the appropriate box:

☐ Preliminary Proxy Statement
☐ Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))
☐ Definitive Proxy Statement
☐ Definitive Additional Materials
☒ Soliciting Material under Rule 14a-12

# CSX Corporation

(Name of Registrant as Specified In Its Charter)

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☒ No fee required.
☐ Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

   (1)   Title of each class of securities to which transaction applies:

   (2)   Aggregate number of securities to which transaction applies:

   (3)   Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

   (4)   Proposed maximum aggregate value of transaction:

(5)    Total fee paid:

☐   Fee paid previously with preliminary materials.
☐   Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

(1)   Amount Previously Paid:

_____

(2)   Form, Schedule or Registration Statement No.:

_____

(3)   Filing Party:

_____

(4)   Date Filed:

_____

On March 17, 2008, CSX sent the following letter to its employees:

Dear CSX Employees --

Today, I would like to inform you of some exciting news about the company's near- and long-term outlook, as well as some additional actions we announced today. The related two press releases can be found on the Gateway under "News and Announcements."

POSITIVE FINANCIAL GUIDANCE
First, thanks to the momentum that you have created in our safety, service and financial performance, as well as the positive market environment for rail transportation, we had the privilege of announcing financial guidance for the first quarter and full-year 2008 that is well above current Wall Street expectations. We're off to a fast start to the year, and the market for our services remains strong. In addition, we have raised our long-term guidance on several important financial measures, including our belief that we can achieve compound annual growth in operating income by 2010 that is 25 to 30 percent higher than we had previously informed Wall Street.

ADDITIONAL SHARE REPURCHASES AND DIVIDEND INCREASE
Also as a result of our confidence in CSX, its marketplace, and your ability to sustain our strong performance, we announced two specific actions to increase shareholder value. First, the Board has authorized the repurchase of an additional $2.4 billion in CSX shares. This action has the potential effect of increasing the value of remaining shares held by investors. In addition to the share repurchase, we are increasing our dividend by 20 percent, the fourth time we have raised the dividend in the past two and a half years.

It is important for you to know that, in addition to creating value through this increased share buyback and dividend increase, we remain committed to continuing to make significant investments in our railroad and maintaining a credit rating that enables us to do so. That's what we mean when we tell our investors that we believe in a balanced and sensible approach to the management of their money.

LEGAL ACTION AGAINST TWO HEDGE FUNDS

I also want to share with you another important action authorized by the Board to protect the interests of CSX and all of its stakeholders. CSX has filed a lawsuit in federal court against TCI and 3G alleging that, among other things, these activist hedge funds have provided CSX shareholders with materially misleading information regarding the extent of their ownership interests in CSX and the level of control they seek to exert over the company. We believe that TCI and 3G have violated securities laws and that CSX shareholders are entitled to complete and accurate information about this group and their plans and intentions.

ADDITIONAL PERSPECTIVE

Because of the significant recent news coverage related to our differences with TCI, I know that a good number of you have a strong interest in the matter.

I would like to share with you an opinion editorial that appeared in the *Washington Times* on March 11. It describes some of my views on the implications of activist investors in rail stocks, which I recently made known on Capitol Hill. The "op-ed" is also found on the Gateway.

Regardless of your views on hedge funds, one thing is clear: The future of our great company rides on the continuation of the outstanding improvements that you have made in our business. When we do that, we create value for all shareholders while also meeting the needs of customers, communities and employees. I know I've said this many times before, and I can assure you that it is critical.

By almost every measure of safety, service and financial performance, we are leading the industry in improvement and are now forging absolute leadership positions in many areas of operating the business. The Board and management team are tremendously proud of the work you have been doing and will continue to stand behind you in every way possible.

The momentum we have built together is paying dividends, literally! I encourage you to remain focused on these fundamentals, and confident that together we can achieve even greater success.

Best Regards,


Michael Ward



*Forward Looking Statements*

This information and other statements by the company contain forward-looking statements within the meaning of the Private Securities Litigation Reform Act with respect to, among other items: projections and estimates of earnings, revenues, cost-savings, expenses, or other financial items; statements of management's plans, strategies and objectives for future operation, and management's expectations as to future performance and operations and the time by which objectives will be achieved; statements concerning proposed new products and services; and statements regarding future economic, industry or market conditions or performance. Forward-looking statements are typically identified by words or phrases such as "believe," "expect," "anticipate," "project," "estimate" and similar expressions. Forward-looking statements speak only as of the date they are made, and the company undertakes no obligation to update or revise any forward-looking statement. If the company does update any forward-looking statement, no inference should be drawn that the company will make additional updates with respect to that statement or any other forward-looking statements.

Forward-looking statements are subject to a number of risks and uncertainties, and actual performance or results could differ materially from that anticipated by these forward-looking statements. Factors that may cause actual results to differ materially from those contemplated by these forward-looking statements include, among others: (i) the company's success in implementing its financial and operational initiatives, (ii) changes in domestic or international economic or business conditions, including those affecting the rail industry (such as the impact of industry competition, conditions, performance and consolidation); (iii) legislative or regulatory changes; (iv) the inherent business risks associated with safety and security; and (v) the outcome of claims and litigation involving or affecting the company.

Other important assumptions and factors that could cause actual results to differ materially from those in the forward-looking statements are specified in the company's SEC reports, accessible on the SEC's website at www.sec.gov and the company's website at www.csx.com.

*Important Proxy Information*
On February 22, 2008, CSX Corporation ("CSX") filed with the SEC a revised preliminary proxy statement in connection with its 2008 Annual Meeting. CSX plans to file with the SEC and furnish to its shareholders a definitive Proxy Statement in connection with its 2008 Annual Meeting, and advises its security holders to read the definitive Proxy Statement when it becomes available, because it will contain important information. Security holders may obtain a free copy of the definitive Proxy Statement and other documents (when available) that CSX files with the SEC at the SEC's website at www.sec.gov. The definitive Proxy Statement and these other documents may also be obtained for free from CSX by directing a request to CSX Corporation, Attn: Investor Relations, David Baggs, 500 Water Street C110, Jacksonville, FL 32202.

CSX, its directors, director nominee and certain named executive officers and employees may be deemed to be participants in the solicitation of CSX's security holders in connection with its 2008 Annual Meeting. Security holders may obtain information regarding the names, affiliations and interests of such individuals in CSX's revised preliminary proxy statement filed on February 22, 2008 with the SEC.

## Rewards for railroads

March 11, 2008
By Michael J. Ward

America's railroads are solving real problems for the nation - big problems like traffic congestion on the highways and emissions from motor vehicles. Rail demand is expected to skyrocket over the next several years.

Railroads deliver around 70 percent of the automobiles produced in this country, ethanol that fuels a growing number of those vehicles, one-third of the nation's grain, raw materials to produce energy and military equipment that helps keep our nation secure. Our tracks also support passenger services nationwide.

It would be a real shame if we let the rail system fall prey to the whims of short-sighted investors. I'm the CEO of one of the nation's largest railroads, and that's what we're fighting today.

A common criticism of corporate managers is that they "live for the quarter." But that is precisely what some activist investors are demanding of railroads, regardless of the impact on safety, service and shareholder value. One hedge fund, for example, actually demanded that CSX freeze investment in its rail system and pile on large amounts of debt on the eve of the recent credit crisis. Keep in mind, the CSX railroad delivers essential products to two thirds of the American population.

By their very nature, railroads require constant investment to ensure high levels of safety and customer service. They invest well more than 15 percent of their revenues back into track, facilities and equipment. By contrast, the average American manufacturer incurs only about 3 percent in capital expenditures. In 2006 alone, the major U.S. railroads invested a record $8.5 billion in track and equipment.

At the same time, rail investors are being rewarded in a big way. CSX's stock price, for example, tripled from 2004 to 2007, placing it in the top 10 percent of all S&P 500 companies in share appreciation. This value is created by bringing real solutions to real problems and exercising balanced judgment in the way we invest our shareholders' money.

At a time when America's highway infrastructure is overcrowded and failing in some areas, railroads take freight off the highways and are four times more fuel efficient than trucks. In fact, it takes several hundred trucks to pull the freight of one train. What's more, it can easily cost $15 million to add a single lane to a mile of highway, compared to $1 million to $3 million and relatively little time to add a mile of rail. And taxpayers foot the entire bill for highways, while railroads are supported almost exclusively by private investment.

Intensive capital investment and strategic long-term planning are responsible for the renaissance of the American rails. And with railroads playing an important role in meeting new challenges, this is no time for railroad companies to succumb to investor demands that will limit their ability to serve the nation.

Any activist hedge fund that would order a railroad to freeze capital expenditures is merely putting its narrow agenda ahead of the long-term interests of the company, their fellow shareholders, and the customers who sustain the business. Such investors seem to lack a complete understanding of why railroads are vibrant again and providing more benefits than ever before.

Railroads have a long, proud history and a network of tracks that extend from border to border and sea to sea. We will not be detoured by ill-considered decisions and distractions. The best of American railroads, like the vast majority of railroad investors, are seeking value for the long haul.

Michael J. Ward is chairman, president and CEO of CSX.

### *Important Proxy Information*
On February 22, 2008, CSX Corporation ("CSX") filed with the SEC a revised preliminary proxy statement in connection with its 2008 Annual Meeting.  CSX plans to file with the SEC and furnish to its shareholders a definitive Proxy Statement in connection with its 2008 Annual Meeting, and advises its security holders to read the definitive Proxy Statement when it becomes available, because it will contain important information. Security holders may obtain a free copy of the definitive Proxy Statement and other documents (when available) that CSX files with the SEC at the SEC's website at www.sec.gov. The definitive Proxy Statement and these other documents may also be obtained for free from CSX by directing a request to CSX Corporation, Attn: Investor Relations, David Baggs, 500 Water Street C110, Jacksonville, FL 32202.

CSX, its directors, director nominee and certain named executive officers and employees may be deemed to be participants in the solicitation of CSX's security holders in connection with its 2008 Annual Meeting. Security holders may obtain information regarding the names, affiliations and interests of such individuals in CSX's revised preliminary proxy statement filed on February 22, 2008 with the SEC.

 **CITIGROUP INC** (C)

399 PARK AVENUE
NEW YORK, NY 10043
212. 559.1000
http://www.citigroup.com/citigroup/homepage/

# 13F–HR

**Filed on 02/14/2008 – Period: 12/31/2007**
File Number 028–02427



**LIVEDGAR**® Information Provided by Global Securities Information, Inc.
800.669.1154
www.gsionline.com

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

Form 13F

Form 13F COVER PAGE

Report for the Calendar Year or Quarter Ended: December 31, 2007

Check here if Amendment { }; Amendment Number: _____
    This Amendment (Check only one.):  { } is a restatement.
                                        { } adds new holdings entries.

Institutional Investment Manager Filing this Report:

Name:    Citigroup Inc.*
Address: 399 Park Avenue,
         New York, New York 10043

Form 13F File Number: 28-2427

The institutional investment manager filing this report and the person by who
it is signed hereby represent that the person signing the report is authorize
to submit it, that all information contained herein is true, correct and
complete, and that it is understood that all required items, statements,
schedules, lists, and tables, are considered integral parts of this form.

Person Signing this Report on Behalf of Reporting Manager:

Name:    Riqueza V. Feaster
Title:   Assistant Secretary
Phone:   (212) 559-3041

Signature, Place, and Date of Signing:

/s/ Riqueza V. Feaster            New York, New York    February 14, 2008
 * In accordance with Securities and Exchange Commission Release No. 34-39538
(January 12, 1998), this filing reflects securities beneficially owned by
Citigroup, a holding company for a global financial services group, on behalf
of itself and its subsidiaries, excluding the Old Lane Partners ("Old Lane")
business.  Old Lane, its executive officers and directors and its direct and
indirect subsidiaries may beneficially own securities of the Company, and such
securities are not reported in this filing.  Citigroup (other than Old Lane)
disclaims beneficial ownership of securities beneficially owned by Old Lane,
and Old Lane disclaims beneficial ownership of the securities reported herein.

Report Type (Check only one.):
{ X } 13F HOLDINGS REPORT.  (Check here if all holdings of this reporting
      manager are reported in this report.)

{    } 13F NOTICE.  (Check here if no holdings reported are in this report,
      and all holdings are reported by other reporting manager(s).)

{    } 13F COMBINATION REPORT.  (Check here if a portion of the holdings
      for this reporting manager are reported in this report and a portion ar
      reported by other reporting manager(s).)

Form 13F SUMMARY PAGE

Report Summary:

Number of Other Included Managers:                        45
Form 13F Information Table Entry Total:               14,474
Form 13F Information Table Value Total:        $169,010,800,403


List of Other Included Managers:

Provide a numbered list of the name(s) and Form 13F file number(s) of all
institutional investment managers with respect to which this report is filed,
other than the manager filing this report.

| No. | Form 13F File Number | Name |
|-----|-----|-----|
| 01 | 28-10815 | Acciones y Valores Banamex, S.A. de C.V., Casa de Bolsa, Integrante del Grupo Financiero Banamex |
| 02 | 28-10818 | Citi Overseas Investments Bahamas Inc. |
| 03 | 28-4289 | Citibank (Switzerland) |
| 04 | 28-6215 | Citibank Canada |
| 05 | | Citibank Investments Limited |
| 06 | 28-5347 | Citibank Overseas Investment Corporation |
| 07 | 28-4287 | Citibank, N.A. |
| 08 | 28-10819 | Citicorp (Mexico) Holdings LLC |
| 09 | 28-4349 | Citicorp Banking Corporation |
| 10 | 28-10814 | Citicorp Deutschland GmbH |
| 11 | 28-11520 | Citicorp Holdings Inc. |
| 12 | | Citicorp Trust South Dakota |
| 13 | 28-12382 | Citicorp Trust, National Association |
| 14 | 28-10293 | Citigroup Alternative Investments LLC |
| 15 | 28-11547 | Citigroup Derivatives Markets Inc. |
| 16 | 28-1114 | Citigroup Financial Products Inc. |
| 17 | 28-11201 | Citigroup Global Markets (International) Finance AG |
| 18 | 28-10817 | Citigroup Global Markets Deutschland AG & Co. KGaA |
| 19 | 28-4305 | Citigroup Global Markets Europe Limited |
| 20 | 28-10821 | Citigroup Global Markets Finance Corporation & Co. beschrankt haftende KG |
| 21 | 28-12380 | Citigroup Global Markets Finance LLC |
| 22 | 28-11199 | Citigroup Global Markets Financial Products LLC |
| 23 | 28-11200 | Citigroup Global Markets Holdings GmbH |
| 24 | 28-1109 | Citigroup Global Markets Holdings Inc. |
| 25 | 28-541 | Citigroup Global Markets Inc. |
| 26 | 28-4311 | Citigroup Global Markets International LLC |
| 27 | 28-4309 | Citigroup Global Markets Limited |
| 28 | 28-11707 | Citigroup Global Markets Management AG |
| 29 | 28-6229 | Citigroup Global Markets U.K. Equity Limited |
| 30 | 28-5476 | Citigroup Institutional Trust Company |
| 31 | 28-10295 | Citigroup Investments Inc. |
| 32 | | Citigroup Japan Holdings Ltd. |
| 33 | | Citigroup Trust - Delaware, National Association |
| 34 | 28-11205 | Citigroup Venture Capital Equity Partners, L.P. |
| 35 | 28-11206 | Citigroup Venture Capital GP Holdings, Ltd. |
| 36 | 28-10071 | Court Square Capital Limited |
| 37 | 28-11207 | CVC Partners, LLC |
| 38 | 28-10816 | Grupo Financiero Banamex, S.A. de C.V. |
| 39 | 28-10822 | Impulsora de Fondos Banamex, S.A. de C.V., Sociedad Operadora de Sociedades de Inversion |
| 40 | | Nikko Asset Management |
| 41 | | Nikko Cordial Corporation |
| 42 | 28-12381 | Phibro LLC |
| 43 | | Quilter & Co. Limited |
| 44 | | Quilter Holdings Limited |
| 45 | 28-4325 | Tribeca Global Management LLC |

FORM 13F INFORMATION TABLE

| NAME OF ISSUER | TITLE CLASS | CUSIP | VALUE (X\$1000) | SHARES/ PRN AMT | SH/ PRN | PUT/ CALL | INVSTMT DSCRETN | OTHER MANAGERS | SOLE | VOTING AUTHORITY SHARED | NONE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DAIMLER AG | REG SHS | D1668R123 | 8690 | 90870 | SH | | DEFINED | 3,9 | 0 | 0 | 90870 |
| DAIMLER AG | REG SHS | D1668R123 | 5917 | 61873 | SH | | DEFINED | 7,11 | 0 | 0 | 61873 |
| DAIMLER AG | REG SHS | D1668R123 | 3034 | 31723 | SH | | DEFINED | 15,16,24 | 31723 | 0 | 0 |
| DAIMLER AG | REG SHS | D1668R123 | 6275 | 65617 | SH | | DEFINED | 16,24,25 | 58146 | 0 | 7470 |
| DAIMLER AG | REG SHS | D1668R123 | 61467 | 642758 | SH | | DEFINED | 32,40,41 | 642758 | 0 | 0 |
| DAIMLER AG | REG SHS | D1668R123 | 390 | 4080 | SH | | DEFINED | 5-7,11,43,44 | 0 | 4080 | 0 |
| DAIMLER AG | REG SHS | D1668R123 | 204670 | 2140230 | SH | | DEFINED | 16,19,24,26,27 | 2140230 | 0 | 0 |
| DAIMLER AG | REG SHS | D1668R123 | 74208 | 775988 | SH | | DEFINED | 2,6,7,10-11,18,20,21,28 | 775988 | 0 | 0 |
| DAIMLER AG | REG SHS | D1668R123 | 21718 | 227100 | SH | | DEFINED | 15,16,24 | 227100 | 0 | 0 |
| DAIMLER AG | REG SHS | D1668R123 | 409868 | 4285978 | SH | CALL | DEFINED | 16,19,24,26,27 | 4285978 | 0 | 0 |
| DAIMLER AG | REG SHS | D1668R123 | 19547 | 204400 | SH | PUT | DEFINED | 15,16,24 | 204400 | 0 | 0 |
| DAIMLER AG | REG SHS | D1668R123 | 1913 | 20000 | SH | PUT | DEFINED | 16,24,25 | 20000 | 0 | 0 |
| DAIMLER AG | REG SHS | D1668R123 | 582903 | 6095397 | SH | PUT | DEFINED | 16,19,24,26,27 | 6095397 | 0 | 0 |
| DEUTSCHE BANK AG NAM | ORD | D18190898 | 294 | 2271 | SH | | DEFINED | 3,9 | 0 | 0 | 2271 |
| DEUTSCHE BANK AG NAM | ORD | D18190898 | 820 | 6339 | SH | | DEFINED | 7,11 | 0 | 0 | 6339 |
| DEUTSCHE BANK AG NAM | ORD | D18190898 | 5 | 41 | SH | | DEFINED | 7,11,13 | 41 | 0 | 0 |
| DEUTSCHE BANK AG NAM | ORD | D18190898 | 1044 | 8064 | SH | | DEFINED | 16,24,25 | 7345 | 0 | 719 |
| DEUTSCHE BANK AG NAM | ORD | D18190898 | 27267 | 210706 | SH | | DEFINED | 32,40,41 | 210706 | 0 | 0 |
| DEUTSCHE BANK AG NAM | ORD | D18190898 | 3095 | 23917 | SH | | DEFINED | 5-7,11,43,44 | 0 | 23917 | 0 |
| DEUTSCHE BANK AG NAM | ORD | D18190898 | 46915 | 362533 | SH | | DEFINED | 16,19,24,26,27 | 362533 | 0 | 0 |
| DEUTSCHE BANK AG NAM | ORD | D18190898 | 85841 | 663326 | SH | | DEFINED | 2,6,7,10-11,18,20,21,28 | 663326 | 0 | 0 |
| DEUTSCHE BANK AG NAM | ORD | D18190898 | 2588 | 20000 | SH | CALL | DEFINED | 16,24,25 | 20000 | 0 | 0 |
| DEUTSCHE BANK AG NAM | ORD | D18190898 | 446590 | 3450966 | SH | CALL | DEFINED | 16,19,24,26,27 | 3450966 | 0 | 0 |
| DEUTSCHE BANK AG NAM | ORD | D18190898 | 499023 | 3856136 | SH | PUT | DEFINED | 16,19,24,26,27 | 3856136 | 0 | 0 |
| ACE LTD | ORD | G0070K103 | 457 | 7400 | SH | | DEFINED | 30 | 7400 | 0 | 0 |
| ACE LTD | ORD | G0070K103 | 2213 | 35827 | SH | | DEFINED | 7,11 | 35307 | 0 | 520 |
| ACE LTD | ORD | G0070K103 | 1606 | 26000 | SH | | DEFINED | 16,24 | 26000 | 0 | 0 |
| ACE LTD | ORD | G0070K103 | 258 | 4170 | SH | | DEFINED | 7,11,13 | 4170 | 0 | 0 |
| ACE LTD | ORD | G0070K103 | 20358 | 329526 | SH | | DEFINED | 16,24,25 | 308100 | 0 | 21426 |
| ACE LTD | ORD | G0070K103 | 638 | 10320 | SH | | DEFINED | 32,40,41 | 10320 | 0 | 0 |
| ACE LTD | ORD | G0070K103 | 1965 | 31800 | SH | PUT | DEFINED | 7,11 | 31800 | 0 | 0 |
| AIRCASTLE LTD | COM | G0129K104 | 8 | 298 | SH | | DEFINED | 7,11 | 298 | 0 | 0 |
| AIRCASTLE LTD | COM | G0129K104 | 4502 | 170998 | SH | | DEFINED | 16,24 | 170998 | 0 | 0 |
| AIRCASTLE LTD | COM | G0129K104 | 8753 | 332429 | SH | | DEFINED | 16,24,25 | 294851 | 0 | 37578 |
| ALLIED WRLD ASSUR CO | SHS | G0219G203 | 2 | 38 | SH | | DEFINED | 3,9 | 0 | 0 | 38 |
| ALLIED WRLD ASSUR CO | SHS | G0219G203 | 7 | 145 | SH | | DEFINED | 7,11,13 | 0 | 0 | 145 |
| ALLIED WRLD ASSUR CO | SHS | G0219G203 | 9869 | 196718 | SH | | DEFINED | 16,24,25 | 148449 | 0 | 48269 |
| AMDOCS LTD | ORD | G02601103 | 505 | 14650 | SH | | DEFINED | 30 | 14650 | 0 | 0 |
| AMDOCS LTD | ORD | G02601103 | 907 | 26309 | SH | | DEFINED | 7,11 | 26309 | 0 | 0 |
| AMDOCS LTD | ORD | G02601103 | 53 | 1525 | SH | | DEFINED | 7,11,13 | 1275 | 0 | 250 |
| AMDOCS LTD | ORD | G02601103 | 1522 | 44147 | SH | | DEFINED | 15,16,24 | 44147 | 0 | 0 |
| AMDOCS LTD | ORD | G02601103 | 9903 | 287294 | SH | | DEFINED | 16,24,25 | 250742 | 0 | 36552 |
| AMDOCS LTD | ORD | G02601103 | 648 | 18800 | SH | CALL | DEFINED | 15,16,24 | 18800 | 0 | 0 |
| AMDOCS LTD | ORD | G02601103 | 376 | 10900 | SH | CALL | DEFINED | 16,24,25 | 10900 | 0 | 0 |
| AMDOCS LTD | ORD | G02601103 | 2285 | 66300 | SH | PUT | DEFINED | 15,16,24 | 66300 | 0 | 0 |
| AMDOCS LTD | ORD | G02601103 | 651 | 18900 | SH | PUT | DEFINED | 16,24,25 | 18900 | 0 | 0 |
| AMERICAN SAFETY INS | ORD | G02995101 | 281 | 14310 | SH | | DEFINED | 16,24,25 | 12111 | 0 | 2199 |
| APEX SILVER MINES LT | ORD | G04074103 | 277 | 18153 | SH | | DEFINED | 7,11 | 18153 | 0 | 0 |
| APEX SILVER MINES LT | ORD | G04074103 | 857 | 56259 | SH | | DEFINED | 15,16,24 | 56259 | 0 | 0 |
| APEX SILVER MINES LT | ORD | G04074103 | 102 | 6695 | SH | | DEFINED | 16,24,25 | 6695 | 0 | 0 |
| APEX SILVER MINES LT | ORD | G04074103 | 2082 | 136600 | SH | CALL | DEFINED | 15,16,24 | 136600 | 0 | 0 |
| APEX SILVER MINES LT | ORD | G04074103 | 2588 | 169800 | SH | PUT | DEFINED | 15,16,24 | 169800 | 0 | 0 |
| ARCH CAP GROUP LTD | ORD | G0450A105 | 16 | 225 | SH | | DEFINED | 7,11,33 | 0 | 0 | 225 |
| ARCH CAP GROUP LTD | ORD | G0450A105 | 15445 | 219540 | SH | | DEFINED | 16,24,25 | 185890 | 0 | 33650 |
| ARGO GROUP INTL HLDG | COM | G0464B107 | 1221 | 28990 | SH | | DEFINED | 31,45 | 28990 | 0 | 0 |
| ARGO GROUP INTL HLDG | COM | G0464B107 | 94 | 2235 | SH | | DEFINED | 7,11,13 | 2235 | 0 | 0 |
| ARGO GROUP INTL HLDG | COM | G0464B107 | 73 | 1727 | SH | | DEFINED | 16,24,25 | 1545 | 0 | 182 |
| ARIES MARITIME TRNSP | SHS | G0474B105 | 238 | 36355 | SH | | DEFINED | 16,24,25 | 18605 | 0 | 17750 |
| ARLINGTON TANKERS LT | COM | G04899103 | 1328 | 60030 | SH | | DEFINED | 16,24,25 | 51939 | 0 | 8091 |
| ARLINGTON TANKERS LT | COM | G04899103 | 8 | 375 | SH | | DEFINED | 5-7,11,43,44 | 0 | 375 | 0 |
| ASPEN INSURANCE HOLD | SHS | G05384105 | 1341 | 46490 | SH | | DEFINED | 16,24,25 | 32286 | 0 | 14204 |
| ASPEN INSURANCE HOLD | SHS | G05384105 | 12 | 400 | SH | | DEFINED | 5-7,11,43,44 | 0 | 400 | 0 |
| ASSURED GUARANTY LTD | SHS | G0585R106 | 273 | 10300 | SH | | DEFINED | 30 | 10300 | 0 | 0 |
| ASSURED GUARANTY LTD | SHS | G0585R106 | 4517 | 170213 | SH | | DEFINED | 16,24,25 | 155544 | 0 | 14669 |
| AXIS CAPITAL HOLDING | SHS | G0692U109 | 284 | 7287 | SH | | DEFINED | 7,11 | 7287 | 0 | 0 |
| AXIS CAPITAL HOLDING | SHS | G0692U109 | 1481 | 38000 | SH | | DEFINED | 16,24 | 38000 | 0 | 0 |
| AXIS CAPITAL HOLDING | SHS | G0692U109 | 638 | 16379 | SH | | DEFINED | 16,24,25 | 15879 | 0 | 500 |
| AXIS CAPITAL HOLDING | SHS | G0692U109 | 152 | 3895 | SH | | DEFINED | 32,40,41 | 3895 | 0 | 0 |
| ACCENTURE LTD BERMUD | CL A | G1150G111 | 18 | 500 | SH | | DEFINED | 12 | 0 | 0 | 500 |
| ACCENTURE LTD BERMUD | CL A | G1150G111 | 2852 | 79163 | SH | | DEFINED | 7,11 | 79163 | 0 | 0 |
| ACCENTURE LTD BERMUD | CL A | G1150G111 | 1245 | 34559 | SH | | DEFINED | 7,11,13 | 32984 | 0 | 1575 |
| ACCENTURE LTD BERMUD | CL A | G1150G111 | 110 | 3060 | SH | | DEFINED | 7,11,33 | 0 | 0 | 3060 |
| ACCENTURE LTD BERMUD | CL A | G1150G111 | 1192 | 33074 | SH | | DEFINED | 15,16,24 | 33074 | 0 | 0 |
| ACCENTURE LTD BERMUD | CL A | G1150G111 | 9488 | 263331 | SH | | DEFINED | 16,24,25 | 230024 | 0 | 33307 |
| ACCENTURE LTD BERMUD | CL A | G1150G111 | 1061 | 29440 | SH | | DEFINED | 32,40,41 | 29440 | 0 | 0 |
| ACCENTURE LTD BERMUD | CL A | G1150G111 | 937 | 26000 | SH | | DEFINED | 5-7,11,43,44 | 0 | 26000 | 0 |
| ACCENTURE LTD BERMUD | CL A | G1150G111 | 1715 | 47600 | SH | CALL | DEFINED | 15,16,24 | 47600 | 0 | 0 |
| ACCENTURE LTD BERMUD | CL A | G1150G111 | 966 | 26800 | SH | CALL | DEFINED | 16,24,25 | 26800 | 0 | 0 |
| ACCENTURE LTD BERMUD | CL A | G1150G111 | 3235 | 89800 | SH | PUT | DEFINED | 15,16,24 | 89800 | 0 | 0 |
| ACCENTURE LTD BERMUD | CL A | G1150G111 | 861 | 23900 | SH | PUT | DEFINED | 16,24,25 | 23900 | 0 | 0 |
| BUNGE LIMITED | COM | G16962105 | 454 | 3900 | SH | | DEFINED | 30 | 3900 | 0 | 0 |
| BUNGE LIMITED | COM | G16962105 | 3567 | 30638 | SH | | DEFINED | 7,11 | 30638 | 0 | 0 |
| BUNGE LIMITED | COM | G16962105 | 81 | 700 | SH | | DEFINED | 7,11,13 | 100 | 0 | 600 |
| BUNGE LIMITED | COM | G16962105 | 1705 | 14646 | SH | | DEFINED | 7,11,33 | 0 | 0 | 0 |
| BUNGE LIMITED | COM | G16962105 | 15033 | 129137 | SH | | DEFINED | 15,16,24 | 129137 | 0 | 0 |
| BUNGE LIMITED | COM | G16962105 | 81254 | 697995 | SH | | DEFINED | 16,24,25 | 603311 | 0 | 94683 |
| BUNGE LIMITED | COM | G16962105 | 1164 | 10003 | SH | | DEFINED | 32,40,41 | 10003 | 0 | 0 |
| BUNGE LIMITED | COM | G16962105 | 23282 | 200000 | SH | CALL | DEFINED | 7,11 | 200000 | 0 | 0 |
| BUNGE LIMITED | COM | G16962105 | 30849 | 265000 | SH | CALL | DEFINED | 15,16,24 | 265000 | 0 | 0 |
| BUNGE LIMITED | COM | G16962105 | 12 | 100 | SH | CALL | DEFINED | 16,24,25 | 100 | 0 | 0 |
| BUNGE LIMITED | COM | G16962105 | 43502 | 373700 | SH | PUT | DEFINED | 15,16,24 | 373700 | 0 | 0 |
| CENTRAL EUROPEAN MED | CL A NEW | G20045202 | 43 | 375 | SH | | DEFINED | 7,11 | 375 | 0 | 0 |
| CENTRAL EUROPEAN MED | CL A NEW | G20045202 | 32457 | 279850 | SH | | DEFINED | 16,24,25 | 279850 | 0 | 0 |
| CENTRAL EUROPEAN MED | CL A NEW | G20045202 | 8837 | 76190 | SH | | DEFINED | 16,24,25 | 59945 | 0 | 16245 |
| CENTRAL EUROPEAN MED | CL A NEW | G20045202 | 92 | 795 | SH | | DEFINED | 32,40,41 | 795 | 0 | 0 |
| CENTRAL EUROPEAN MED | CL A NEW | G20045202 | 55984 | 482700 | SH | PUT | DEFINED | 16,19,24,26,27 | 482700 | 0 | 0 |
| CDC CORP | SHS A | G20221L106 | 52 | 10629 | SH | | DEFINED | 15,16,24 | 10629 | 0 | 0 |
| CDC CORP | SHS A | G20221L106 | 73 | 15023 | SH | | DEFINED | 16,24,25 | 13623 | 0 | 1400 |
| CDC CORP | SHS A | G20221L106 | 709 | 145600 | SH | CALL | DEFINED | 15,16,24 | 145600 | 0 | 0 |
| CDC CORP | SHS A | G20221L106 | 593 | 121800 | SH | PUT | DEFINED | 15,16,24 | 121800 | 0 | 0 |
| CHINA YUCHAI INTL LT | COM | G21082105 | 229 | 23149 | SH | | DEFINED | 15,16,24 | 23149 | 0 | 0 |
| CHINA YUCHAI INTL LT | COM | G21082105 | 17 | 1700 | SH | | DEFINED | 16,24,25 | 1700 | 0 | 0 |
| CHINA YUCHAI INTL LT | COM | G21082105 | 533 | 53800 | SH | CALL | DEFINED | 15,16,24 | 53800 | 0 | 0 |
| CHINA YUCHAI INTL LT | COM | G21082105 | 584 | 58900 | SH | PUT | DEFINED | 15,16,24 | 58900 | 0 | 0 |
| CHIPMOS TECH BERMUDA | SHS | G2110R106 | 604 | 141864 | SH | | DEFINED | 16,24,25 | 133518 | 0 | 8346 |
| CONSOLIDATED WATER C | ORD | G23773107 | 192 | 7616 | SH | | DEFINED | 7,11 | 7616 | 0 | 0 |

| Name | Class | CUSIP | | | Type | Codes | | | |
|---|---|---|---|---|---|---|---|---|---|
| CONSOLIDATED WATER C | ORD | G23773107 | 4 | 166 SH | DEFINED | 7,11,13 | 166 | 0 | 0 |
| CONSOLIDATED WATER C | ORD | G23773107 | 860 | 34143 SH | DEFINED | 16,24,25 | 26026 | 0 | 8117 |
| COOPER INDS LTD | CL A | G24182100 | 3886 | 73480 SH | DEFINED | 7,11 | 20680 | 0 | 52800 |
| COOPER INDS LTD | CL A | G24182100 | 896 | 16950 SH | DEFINED | 7,11 | 16950 | 0 | 0 |
| COOPER INDS LTD | CL A | G24182100 | 52 | 990 SH | DEFINED | 7,11,33 | 0 | 0 | 990 |
| COOPER INDS LTD | CL A | G24182100 | 14478 | 273791 SH | DEFINED | 16,24,25 | 229499 | 0 | 44291 |
| COOPER INDS LTD | CL A | G24182100 | 3158 | 59724 SH | DEFINED | 32,40,41 | 59724 | 0 | 0 |
| CREDICORP LTD | COM | G2519Y108 | 160032 | 2097404 SH | DEFINED | 7,11 | 2097404 | 0 | 0 |
| CREDICORP LTD | COM | G2519Y108 | 60 | 789 SH | DEFINED | 16,24 | 789 | 0 | 0 |
| CREDICORP LTD | COM | G2519Y108 | 141 | 1850 SH | DEFINED | 32,40,41 | 1850 | 0 | 0 |
| COSAN LTD | SHS A | G25343107 | 21 | 1700 SH | DEFINED | 16,24 | 1700 | 0 | 0 |
| COSAN LTD | SHS A | G25343107 | 926 | 73530 SH | DEFINED | 7,11,33 | 0 | 0 | 73530 |
| COSAN LTD | SHS A | G25343107 | 3105 | 246441 SH | DEFINED | 16,24,25 | 241737 | 0 | 4704 |
| COVIDIEN LTD | COM | G2552X108 | 5 | 109 SH | DEFINED | 3,9 | 0 | 0 | 0 |
| COVIDIEN LTD | COM | G2552X108 | 12117 | 273572 SH | DEFINED | 7,11 | 257072 | 0 | 16500 |
| COVIDIEN LTD | COM | G2552X108 | 671 | 15160 SH | DEFINED | 7,11,13 | 15115 | 0 | 45 |
| COVIDIEN LTD | COM | G2552X108 | 57 | 1294 SH | DEFINED | 7,11,33 | 0 | 0 | 1294 |
| COVIDIEN LTD | COM | G2552X108 | 465 | 10494 SH | DEFINED | 15,16,24 | 10494 | 0 | 0 |
| COVIDIEN LTD | COM | G2552X108 | 75865 | 1712906 SH | DEFINED | 16,24,25 | 1575243 | 0 | 137662 |
| COVIDIEN LTD | COM | G2552X108 | 685 | 15462 SH | DEFINED | 32,40,41 | 15462 | 0 | 0 |
| COVIDIEN LTD | COM | G2552X108 | 7 | 154 SH | DEFINED | 5-7,11,43,44 | 0 | 154 | 0 |
| COVIDIEN LTD | COM | G2552X108 | 932 | 21046 SH | DEFINED | 16,19,24,26,27 | 21046 | 0 | 0 |
| COVIDIEN LTD | COM | G2552X108 | 2219 | 50100 SH | CALL | DEFINED | 15,16,24 | 50100 | 0 | 0 |
| COVIDIEN LTD | COM | G2552X108 | 2454 | 55400 SH | PUT | DEFINED | 15,16,24 | 55400 | 0 | 0 |
| ENDURANCE SPECIALTY | SHS | G30397106 | 2602 | 62356 SH | DEFINED | 7,11 | 62356 | 0 | 0 |
| ENDURANCE SPECIALTY | SHS | G30397106 | 6239 | 149516 SH | DEFINED | 16,24,25 | 137486 | 0 | 12030 |
| ENSTAR GROUP LIMITED | SHS | G3075P101 | 86 | 700 SH | DEFINED | 7,11,33 | 0 | 0 | 700 |
| ENSTAR GROUP LIMITED | SHS | G3075P101 | 1695 | 13847 SH | DEFINED | 16,24,25 | 8797 | 0 | 5050 |
| ASA LIMITED | COM | G3156P103 | 5911 | 78639 SH | DEFINED | 7,11 | 65885 | 0 | 12754 |
| EVEREST RE GROUP LTD | COM | G3223R108 | 2352 | 23422 SH | DEFINED | 7,11 | 23422 | 0 | 0 |
| EVEREST RE GROUP LTD | COM | G3223R108 | 514 | 5118 SH | DEFINED | 16,24,25 | 5038 | 0 | 80 |
| EVEREST RE GROUP LTD | COM | G3223R108 | 482 | 4802 SH | DEFINED | 32,40,41 | 4802 | 0 | 0 |
| EVEREST RE GROUP LTD | COM | G3223R108 | 1365 | 13600 SH | DEFINED | 16,19,24,26,27 | 13600 | 0 | 0 |
| FOSTER WHEELER LTD | SHS NEW | G36535139 | 1868 | 12047 SH | DEFINED | 7,11 | 12047 | 0 | 0 |
| FOSTER WHEELER LTD | SHS NEW | G36535139 | 283 | 1826 SH | DEFINED | 16,24 | 1826 | 0 | 0 |
| FOSTER WHEELER LTD | SHS NEW | G36535139 | 16691 | 107672 SH | DEFINED | 16,24,25 | 96489 | 0 | 11183 |
| FOSTER WHEELER LTD | SHS NEW | G36535139 | 934 | 6028 SH | DEFINED | 32,40,41 | 6028 | 0 | 0 |
| FOSTER WHEELER LTD | SHS NEW | G36535139 | 2251 | 14523 SH | CALL | DEFINED | 7,11 | 14523 | 0 | 0 |
| FOSTER WHEELER LTD | SHS NEW | G36535139 | 87679 | 565600 SH | CALL | DEFINED | 15,16,24 | 565600 | 0 | 0 |
| FOSTER WHEELER LTD | SHS NEW | G36535139 | 279 | 1800 SH | DEFINED | 16,24,25 | 1800 | 0 | 0 |
| FOSTER WHEELER LTD | SHS NEW | G36535139 | 59791 | 385700 SH | PUT | DEFINED | 15,16,24 | 385700 | 0 | 0 |
| FOSTER WHEELER LTD | SHS NEW | G36535139 | 3352 | 21623 SH | PUT | DEFINED | 16,24,25 | 21623 | 0 | 0 |
| FRESH DEL MONTE PROD | ORD | G36738105 | 3297 | 98176 SH | DEFINED | 7,11 | 98176 | 0 | 0 |
| FRESH DEL MONTE PROD | ORD | G36738105 | 4448 | 132463 SH | DEFINED | 16,24,25 | 99342 | 0 | 33121 |
| FRONTLINE LTD | SHS | G3682E127 | 28 | 575 SH | DEFINED | 7,11 | 575 | 0 | 0 |
| FRONTLINE LTD | SHS | G3682E127 | 2 | 36 SH | DEFINED | 7,11,13 | 36 | 0 | 0 |
| FRONTLINE LTD | SHS | G3682E127 | 979 | 20403 SH | DEFINED | 7,11,33 | 0 | 0 | 20403 |
| FRONTLINE LTD | SHS | G3682E127 | 15536 | 323657 SH | DEFINED | 16,24,25 | 287927 | 0 | 35730 |
| FRONTLINE LTD | SHS | G3682E127 | 92 | 1924 SH | DEFINED | 32,40,41 | 1924 | 0 | 0 |
| FRONTLINE LTD | SHS | G3682E127 | 625 | 13017 SH | DEFINED | 16,19,24,26,27 | 13017 | 0 | 0 |
| FRONTLINE LTD | SHS | G3682E127 | 6624 | 138000 SH | CALL | DEFINED | 15,16,24 | 138000 | 0 | 0 |
| FRONTLINE LTD | SHS | G3682E127 | 4622 | 96300 SH | PUT | DEFINED | 15,16,24 | 96300 | 0 | 0 |
| GARMIN LTD | ORD | G37260109 | 4697 | 48423 SH | DEFINED | 7,11 | 48423 | 0 | 0 |
| GARMIN LTD | ORD | G37260109 | 228 | 2353 SH | DEFINED | 16,24 | 2353 | 0 | 0 |
| GARMIN LTD | ORD | G37260109 | 78 | 800 SH | DEFINED | 7,11,13 | 450 | 0 | 350 |
| GARMIN LTD | ORD | G37260109 | 83 | 858 SH | DEFINED | 7,11,33 | 0 | 0 | 858 |
| GARMIN LTD | ORD | G37260109 | 3331 | 34338 SH | DEFINED | 15,16,24 | 34338 | 0 | 0 |
| GARMIN LTD | ORD | G37260109 | 29145 | 300468 SH | DEFINED | 16,24,25 | 220603 | 0 | 79865 |
| GARMIN LTD | ORD | G37260109 | 516 | 5322 SH | DEFINED | 32,40,41 | 5322 | 0 | 0 |
| GARMIN LTD | ORD | G37260109 | 42535 | 438500 SH | CALL | DEFINED | 15,16,24 | 438500 | 0 | 0 |
| GARMIN LTD | ORD | G37260109 | 53496 | 551500 SH | PUT | DEFINED | 15,16,24 | 551500 | 0 | 0 |
| GLOBAL CROSSING LTD | SHS NEW | G3921A175 | 351 | 15916 SH | DEFINED | 16,24,25 | 15021 | 0 | 895 |
| GLOBAL CROSSING LTD | SHS NEW | G3921A175 | 331 | 15000 SH | CALL | DEFINED | 15,16,24 | 15000 | 0 | 0 |
| GLOBAL CROSSING LTD | SHS NEW | G3921A175 | 216 | 9800 SH | PUT | DEFINED | 16,24,25 | 9800 | 0 | 0 |
| GLOBAL SOURCES LTD | ORD | G39300101 | 1590 | 56332 SH | DEFINED | 16,24,25 | 48320 | 0 | 8012 |
| GREENLIGHT CAPITAL R | CLASS A | G4095J109 | 241 | 11582 SH | DEFINED | 16,24,25 | 11508 | 0 | 74 |
| HELEN OF TROY CORP L | COM | G4388N106 | 192 | 11200 SH | DEFINED | 16,24,25 | 11130 | 0 | 70 |
| HERBALIFE LTD | COM USD SH | G4412G101 | 24 | 598 SH | DEFINED | 7,11 | 598 | 0 | 0 |
| HERBALIFE LTD | COM USD SH | G4412G101 | 8685 | 215610 SH | DEFINED | 16,24 | 215610 | 0 | 0 |
| HERBALIFE LTD | COM USD SH | G4412G101 | 230 | 5710 SH | DEFINED | 7,11,13 | 5710 | 0 | 0 |
| HERBALIFE LTD | COM USD SH | G4412G101 | 1014 | 25180 SH | DEFINED | 16,24,25 | 22601 | 0 | 2579 |
| HERBALIFE LTD | COM USD SH | G4412G101 | 5301 | 131600 SH | CALL | DEFINED | 15,16,24 | 131600 | 0 | 0 |
| HERBALIFE LTD | COM USD SH | G4412G101 | 4250 | 105500 SH | PUT | DEFINED | 15,16,24 | 105500 | 0 | 0 |
| INGERSOLL-RAND COMPA | CL A | G4776G101 | 71 | 1530 SH | DEFINED | 12 | 0 | 0 | 1530 |
| INGERSOLL-RAND COMPA | CL A | G4776G101 | 1927 | 42887 SH | DEFINED | 7,11 | 22169 | 0 | 20300 |
| INGERSOLL-RAND COMPA | CL A | G4776G101 | 1063 | 22872 SH | DEFINED | 7,11,13 | 22722 | 0 | 150 |
| INGERSOLL-RAND COMPA | CL A | G4776G101 | 77 | 1666 SH | DEFINED | 7,11,33 | 0 | 0 | 1666 |
| INGERSOLL-RAND COMPA | CL A | G4776G101 | 20591 | 443095 SH | DEFINED | 16,24,25 | 371803 | 0 | 71291 |
| INGERSOLL-RAND COMPA | CL A | G4776G101 | 538 | 11569 SH | DEFINED | 32,40,41 | 11569 | 0 | 0 |
| INGERSOLL-RAND COMPA | CL A | G4776G101 | 10223 | 220000 SH | CALL | DEFINED | 15,16,24 | 220000 | 0 | 0 |
| INGERSOLL-RAND COMPA | CL A | G4776G101 | 2728 | 58700 SH | CALL | DEFINED | 15,16,24 | 58700 | 0 | 0 |
| INGERSOLL-RAND COMPA | CL A | G4776G101 | 6785 | 146000 SH | PUT | DEFINED | 15,16,24 | 146000 | 0 | 0 |
| INGERSOLL-RAND COMPA | CL A | G4776G101 | 2960 | 63700 SH | PUT | DEFINED | 16,24,25 | 63700 | 0 | 0 |
| INVESCO LTD | SHS | G491BT108 | 3 | 100 SH | DEFINED | 16,24 | 100 | 0 | 0 |
| INVESCO LTD | SHS | G491BT108 | 2513 | 80086 SH | DEFINED | 16,24,25 | 67602 | 0 | 12484 |
| INVESCO LTD | SHS | G491BT108 | 18259 | 581865 SH | DEFINED | 32,40,41 | 581865 | 0 | 0 |
| INVESCO LTD | SHS | G491BT108 | 978 | 31161 SH | DEFINED | 5-7,11,43,44 | 0 | 31161 | 0 |
| INVESCO LTD | SHS | G491BT108 | 515 | 16396 SH | DEFINED | 16,19,24,26,27 | 16396 | 0 | 0 |
| INVESCO LTD | SHS | G491BT108 | 5249 | 167267 SH | CALL | DEFINED | 16,19,24,26,27 | 167267 | 0 | 0 |
| INVESCO LTD | SHS | G491BT108 | 5249 | 167267 SH | CALL | DEFINED | 16,19,24,26,27 | 167267 | 0 | 0 |
| IPC HLDGS LTD | ORD | G4933P101 | 92 | 3175 SH | DEFINED | 30 | 3175 | 0 | 0 |
| IPC HLDGS LTD | ORD | G4933P101 | 84 | 2925 SH | DEFINED | 7,11,13 | 2925 | 0 | 0 |
| IPC HLDGS LTD | ORD | G4933P101 | 1934 | 66984 SH | DEFINED | 16,24,25 | 51351 | 0 | 15633 |
| JINPAN INTL LTD | ORD | G51381100 | 924 | 29904 SH | DEFINED | 16,24,25 | 15154 | 0 | 14750 |
| KNIGHTSBRIDGE TANKER | ORD | G5299G106 | 265 | 10970 SH | DEFINED | 16,24,25 | 10870 | 0 | 100 |
| LAZARD LTD | SHS A | G54050102 | 25 | 619 SH | DEFINED | 7,11 | 619 | 0 | 0 |
| LAZARD LTD | SHS A | G54050102 | 1953 | 48013 SH | DEFINED | 16,24,25 | 43572 | 0 | 4441 |
| LJ INTL INC | ORD | G55312105 | 1 | 120 SH | DEFINED | 16,24,25 | 120 | 0 | 0 |
| LJ INTL INC | ORD | G55312105 | 775 | 135500 SH | CALL | DEFINED | 15,16,24 | 135500 | 0 | 0 |
| LJ INTL INC | ORD | G55312105 | 45 | 7900 SH | PUT | DEFINED | 15,16,24 | 7900 | 0 | 0 |
| MARVELL TECHNOLOGY G | ORD | G5876H105 | 260 | 18600 SH | DEFINED | 30 | 18600 | 0 | 0 |
| MARVELL TECHNOLOGY G | ORD | G5876H105 | 4335 | 310111 SH | DEFINED | 7,11 | 310111 | 0 | 0 |
| MARVELL TECHNOLOGY G | ORD | G5876H105 | 6 | 400 SH | DEFINED | 16,24 | 400 | 0 | 0 |
| MARVELL TECHNOLOGY G | ORD | G5876H105 | 1484 | 106143 SH | DEFINED | 7,11,13 | 106143 | 0 | 0 |
| MARVELL TECHNOLOGY G | ORD | G5876H105 | 8143 | 582464 SH | DEFINED | 15,16,24 | 582464 | 0 | 0 |
| MARVELL TECHNOLOGY G | ORD | G5876H105 | 10467 | 748735 SH | DEFINED | 16,24,25 | 733793 | 0 | 14942 |
| MARVELL TECHNOLOGY G | ORD | G5876H105 | 708 | 50660 SH | DEFINED | 32,40,41 | 50660 | 0 | 0 |
| MARVELL TECHNOLOGY G | ORD | G5876H105 | 24283 | 1737000 SH | CALL | DEFINED | 15,16,24 | 1737000 | 0 | 0 |
| MARVELL TECHNOLOGY G | ORD | G5876H105 | 25276 | 1807986 SH | CALL | DEFINED | 16,24,25 | 1807986 | 0 | 0 |
| MARVELL TECHNOLOGY G | ORD | G5876H105 | 3608 | 258086 SH | PUT | DEFINED | 7,11 | 258086 | 0 | 0 |
| MARVELL TECHNOLOGY G | ORD | G5876H105 | 20988 | 1501300 SH | PUT | DEFINED | 15,16,24 | 1501300 | 0 | 0 |
| MARVELL TECHNOLOGY G | ORD | G5876H105 | 8515 | 609100 SH | PUT | DEFINED | 16,24,25 | 609100 | 0 | 0 |
| MAX CAPITAL GROUP LT | SHS | G6052F103 | 6 | 199 SH | DEFINED | 16,24 | 199 | 0 | 0 |
| MAX CAPITAL GROUP LT | SHS | G6052F103 | 272 | 9708 SH | DEFINED | 16,24,25 | 9511 | 0 | 197 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| MF GLOBAL LTD | SHS | G60642108 | 12141 | 385802 | SH | DEFINED | 16,24,25 | 381097 | 0 | 4705 |
| MF GLOBAL LTD | SHS | G60642108 | 9494 | 301700 | SH | DEFINED | 32,40,41 | 301700 | 0 | 0 |
| NABORS INDUSTRIES LT | SHS | G6359F103 | 649 | 23700 | SH | DEFINED | 30 | 23700 | 0 | 0 |
| NABORS INDUSTRIES LT | SHS | G6359F103 | 7206 | 263100 | SH | DEFINED | 42 | 263100 | 0 | 0 |
| NABORS INDUSTRIES LT | SHS | G6359F103 | 77553 | 2831421 | SH | DEFINED | 7,11 | 2828879 | 0 | 2542 |
| NABORS INDUSTRIES LT | SHS | G6359F103 | 162 | 5915 | SH | DEFINED | 7,11,13 | 5915 | 0 | 0 |
| NABORS INDUSTRIES LT | SHS | G6359F103 | 2 | 90 | SH | DEFINED | 7,11,33 | 0 | 0 | 90 |
| NABORS INDUSTRIES LT | SHS | G6359F103 | 22753 | 830704 | SH | DEFINED | 16,24,25 | 748604 | 0 | 82100 |
| NABORS INDUSTRIES LT | SHS | G6359F103 | 876 | 31989 | SH | DEFINED | 32,40,41 | 31989 | 0 | 0 |
| NABORS INDUSTRIES LT | SHS | G6359F103 | 1088 | 39740 | SH | DEFINED | 16,19,24,26,27 | 39740 | 0 | 0 |
| NABORS INDUSTRIES LT | SHS | G6359F103 | 977677 | 35694667 | SH | CALL DEFINED | 7,11 | 35694667 | 0 | 0 |
| NABORS INDUSTRIES LT | SHS | G6359F103 | 4489 | 163900 | SH | CALL DEFINED | 15,16,24 | 163900 | 0 | 0 |
| NABORS INDUSTRIES LT | SHS | G6359F103 | 1233 | 45000 | SH | CALL DEFINED | 16,24,25 | 45000 | 0 | 0 |
| NABORS INDUSTRIES LT | SHS | G6359F103 | 8480 | 309600 | SH | PUT DEFINED | 15,16,24 | 309600 | 0 | 0 |
| NABORS INDUSTRIES LT | SHS | G6359F103 | 6400 | 233667 | SH | PUT DEFINED | 16,24,25 | 233667 | 0 | 0 |
| NOBLE CORPORATION | SHS | G65422100 | 3068 | 54300 | SH | DEFINED | 42 | 54300 | 0 | 0 |
| NOBLE CORPORATION | SHS | G65422100 | 1240 | 21938 | SH | DEFINED | 3,9 | 0 | 0 | 21938 |
| NOBLE CORPORATION | SHS | G65422100 | 4085 | 72283 | SH | DEFINED | 7,11 | 63208 | 0 | 9075 |
| NOBLE CORPORATION | SHS | G65422100 | 1910 | 33804 | SH | DEFINED | 7,11,13 | 33564 | 0 | 240 |
| NOBLE CORPORATION | SHS | G65422100 | 99 | 1750 | SH | DEFINED | 7,11,33 | 0 | 0 | 1750 |
| NOBLE CORPORATION | SHS | G65422100 | 61046 | 1080271 | SH | DEFINED | 16,24,25 | 923898 | 0 | 156373 |
| NOBLE CORPORATION | SHS | G65422100 | 742 | 13132 | SH | DEFINED | 32,40,41 | 13132 | 0 | 0 |
| NOBLE CORPORATION | SHS | G65422100 | 48158 | 852200 | SH | CALL DEFINED | 15,16,24 | 852200 | 0 | 0 |
| NOBLE CORPORATION | SHS | G65422100 | 9465 | 167500 | SH | CALL DEFINED | 16,24,25 | 167500 | 0 | 0 |
| NOBLE CORPORATION | SHS | G65422100 | 35963 | 636400 | SH | PUT DEFINED | 15,16,24 | 636400 | 0 | 0 |
| NOBLE CORPORATION | SHS | G65422100 | 13218 | 233900 | SH | PUT DEFINED | 16,24,25 | 233900 | 0 | 0 |
| NORDIC AMERICAN TANK | COM | G65773106 | 12 | 373 | SH | DEFINED | 7,11 | 373 | 0 | 0 |
| NORDIC AMERICAN TANK | COM | G65773106 | 7877 | 240014 | SH | DEFINED | 16,24,25 | 220503 | 0 | 19510 |
| ORIENT-EXPRESS HOTEL | CL A | G67743107 | 28 | 492 | SH | DEFINED | 7,11 | 492 | 0 | 0 |
| ORIENT-EXPRESS HOTEL | CL A | G67743107 | 4503 | 78292 | SH | DEFINED | 16,24,25 | 49241 | 0 | 29051 |
| ORIENT-EXPRESS HOTEL | CL A | G67743107 | 40 | 700 | SH | DEFINED | 32,40,41 | 700 | 0 | 0 |
| ORIGIN AGRITECH LIMI | COM | G6782B106 | 211 | 31960 | SH | DEFINED | 16,24,25 | 21490 | 0 | 10470 |
| PARTNERRE LTD | COM | G6852T105 | 74 | 900 | SH | DEFINED | 12 | 0 | 0 | 900 |
| PARTNERRE LTD | COM | G6852T105 | 18965 | 229794 | SH | DEFINED | 7,11 | 212874 | 0 | 16920 |
| PARTNERRE LTD | COM | G6852T105 | 227 | 2750 | SH | DEFINED | 7,11,13 | 2700 | 0 | 50 |
| PARTNERRE LTD | COM | G6852T105 | 27 | 325 | SH | DEFINED | 7,11,33 | 0 | 0 | 325 |
| PARTNERRE LTD | COM | G6852T105 | 2926 | 35458 | SH | DEFINED | 16,24,25 | 29947 | 0 | 5511 |
| PARTNERRE LTD | COM | G6852T105 | 133 | 1617 | SH | DEFINED | 32,40,41 | 1617 | 0 | 0 |
| PARTNERRE LTD | COM | G6852T105 | 588662 | 7132700 | SH | CALL DEFINED | 7,11 | 7132700 | 0 | 0 |
| PARTNERRE LTD | COM | G6852T105 | 21045 | 255000 | SH | CALL DEFINED | 16,24,25 | 255000 | 0 | 0 |
| PARTNERRE LTD | COM | G6852T105 | 2641 | 32000 | SH | PUT DEFINED | 16,24,25 | 32000 | 0 | 0 |
| QIAO XING UNIVERSAL | ORD | G7303A109 | 636 | 77140 | SH | DEFINED | 15,16,24 | 77140 | 0 | 0 |
| QIAO XING UNIVERSAL | ORD | G7303A109 | 12 | 1459 | SH | DEFINED | 16,24,25 | 1315 | 0 | 144 |
| QIAO XING UNIVERSAL | ORD | G7303A109 | 1339 | 162300 | SH | CALL DEFINED | 15,16,24 | 162300 | 0 | 0 |
| QIAO XING UNIVERSAL | ORD | G7303A109 | 535 | 64800 | SH | PUT DEFINED | 15,16,24 | 64800 | 0 | 0 |
| QIAO XING MOBILE COM | SHS | G7303I109 | 553 | 65500 | SH | DEFINED | 16,19,24,26,27 | 65500 | 0 | 0 |
| QUANTA CAPITAL HLDGS | SHS | G7313F106 | 4335 | 1700000 | SH | DEFINED | 16,24 | 1700000 | 0 | 0 |
| SCOTTISH RE GROUP LI | SHS | G7857R410 | 22 | 30979 | SH | DEFINED | 16,24,25 | 29979 | 0 | 1000 |
| RAM HOLDINGS LTD | SHS | G7368R104 | 78 | 15867 | SH | DEFINED | 16,24,25 | 15460 | 0 | 407 |
| RENAISSANCERE HOLDIN | COM | G7496G103 | 2332 | 38708 | SH | DEFINED | 7,11 | 38578 | 0 | 130 |
| RENAISSANCERE HOLDIN | COM | G7496G103 | 14 | 233 | SH | DEFINED | 7,11,13 | 193 | 0 | 40 |
| RENAISSANCERE HOLDIN | COM | G7496G103 | 531 | 8812 | SH | DEFINED | 16,24,25 | 7669 | 0 | 1143 |
| RENAISSANCERE HOLDIN | COM | G7496G103 | 352 | 5848 | SH | DEFINED | 32,40,41 | 5848 | 0 | 0 |
| SEAGATE TECHNOLOGY | SHS | G7945J104 | 375 | 14700 | SH | DEFINED | 30 | 14700 | 0 | 0 |
| SEAGATE TECHNOLOGY | SHS | G7945J104 | 10 | 393 | SH | DEFINED | 3,9 | 0 | 0 | 393 |
| SEAGATE TECHNOLOGY | SHS | G7945J104 | 1269 | 49783 | SH | DEFINED | 7,11 | 28841 | 0 | 20942 |
| SEAGATE TECHNOLOGY | SHS | G7945J104 | 351 | 13776 | SH | DEFINED | 7,11,13 | 12576 | 0 | 1200 |
| SEAGATE TECHNOLOGY | SHS | G7945J104 | 85 | 3326 | SH | DEFINED | 7,11,33 | 0 | 0 | 3326 |
| SEAGATE TECHNOLOGY | SHS | G7945J104 | 102065 | 4002549 | SH | DEFINED | 16,24,25 | 3699809 | 0 | 302740 |
| SEAGATE TECHNOLOGY | SHS | G7945J104 | 5423 | 212650 | SH | DEFINED | 32,40,41 | 212650 | 0 | 0 |
| SEAGATE TECHNOLOGY | SHS | G7945J104 | 16190 | 634900 | SH | CALL DEFINED | 15,16,24 | 634900 | 0 | 0 |
| SEAGATE TECHNOLOGY | SHS | G7945J104 | 6857 | 268900 | SH | PUT DEFINED | 15,16,24 | 268900 | 0 | 0 |
| SEAGATE TECHNOLOGY | SHS | G7945J104 | 1680 | 65900 | SH | PUT DEFINED | 16,24,25 | 65900 | 0 | 0 |
| SHANGHAI CENTURY ACQ | SHS | G80637104 | 2445 | 278500 | SH | DEFINED | 16,24,25 | 278500 | 0 | 0 |
| SHIP FINANCE INTERNA | SHS | G81075106 | 17 | 596 | SH | DEFINED | 7,11 | 596 | 0 | 0 |
| SHIP FINANCE INTERNA | SHS | G81075106 | 60 | 2177 | SH | DEFINED | 7,11,33 | 0 | 0 | 2177 |
| SHIP FINANCE INTERNA | SHS | G81075106 | 0 | 17 | SH | DEFINED | 15,16,24 | 17 | 0 | 0 |
| SHIP FINANCE INTERNA | SHS | G81075106 | 3763 | 135813 | SH | DEFINED | 16,24,25 | 114461 | 0 | 21352 |
| SHIP FINANCE INTERNA | SHS | G81075106 | 32 | 1170 | SH | DEFINED | 16,19,24,26,27 | 1170 | 0 | 0 |
| SINA CORP | ORD | G81477104 | 2983 | 67314 | SH | DEFINED | 16,24,25 | 63581 | 0 | 3733 |
| SINA CORP | ORD | G81477104 | 9 | 195 | SH | DEFINED | 5-7,11,43,44 | 0 | 195 | 0 |
| SINA CORP | ORD | G81477104 | 6367 | 143700 | SH | CALL DEFINED | 15,16,24 | 143700 | 0 | 0 |
| SINA CORP | ORD | G81477104 | 9115 | 205700 | SH | PUT DEFINED | 15,16,24 | 205700 | 0 | 0 |
| SMART MODULAR TECHNO | ORD SHS | G8224S104 | 199 | 19511 | SH | DEFINED | 16,24,25 | 15560 | 0 | 3951 |
| TRANSOCEAN INC NEW | SHS | G9007S100 | 120 | 836 | SH | DEFINED | 12 | 0 | 0 | 836 |
| TRANSOCEAN INC NEW | SHS | G9007S100 | 1006 | 7027 | SH | DEFINED | 30 | 7027 | 0 | 0 |
| TRANSOCEAN INC NEW | SHS | G9007S100 | 9275 | 64792 | SH | DEFINED | 42 | 64792 | 0 | 0 |
| TRANSOCEAN INC NEW | SHS | G9007S100 | 13641 | 95290 | SH | DEFINED | 7,11 | 78446 | 0 | 16844 |
| TRANSOCEAN INC NEW | SHS | G9007S100 | 4625 | 32308 | SH | DEFINED | 7,11,13 | 30189 | 0 | 2119 |
| TRANSOCEAN INC NEW | SHS | G9007S100 | 163 | 1137 | SH | DEFINED | 7,11,33 | 0 | 0 | 1137 |
| TRANSOCEAN INC NEW | SHS | G9007S100 | 121447 | 848392 | SH | DEFINED | 16,24,25 | 765018 | 0 | 83374 |
| TRANSOCEAN INC NEW | SHS | G9007S100 | 2584 | 18053 | SH | DEFINED | 32,40,41 | 18053 | 0 | 0 |
| TRANSOCEAN INC NEW | SHS | G9007S100 | 205 | 1433 | SH | DEFINED | 5-7,11,43,44 | 0 | 1433 | 0 |
| TRANSOCEAN INC NEW | SHS | G9007S100 | 7871 | 54983 | SH | CALL DEFINED | 7,11 | 54983 | 0 | 0 |
| TRANSOCEAN INC NEW | SHS | G9007S100 | 435348 | 3041200 | SH | CALL DEFINED | 15,16,24 | 3041200 | 0 | 0 |
| TRANSOCEAN INC NEW | SHS | G9007S100 | 8160 | 57000 | SH | CALL DEFINED | 16,24,25 | 57000 | 0 | 0 |
| TRANSOCEAN INC NEW | SHS | G9007S100 | 194269 | 1357100 | SH | PUT DEFINED | 15,16,24 | 1357100 | 0 | 0 |
| TRANSOCEAN INC NEW | SHS | G9007S100 | 9431 | 65883 | SH | PUT DEFINED | 16,24,25 | 65883 | 0 | 0 |
| TSAKOS ENERGY NAVIGA | SHS | G9108L108 | 70 | 1900 | SH | DEFINED | 30 | 1900 | 0 | 0 |
| TSAKOS ENERGY NAVIGA | SHS | G9108L108 | 1820 | 49155 | SH | DEFINED | 16,24,25 | 44990 | 0 | 4165 |
| TYCO INTL LTD BERMUD | | G9143X208 | 12 | 312 | SH | DEFINED | 3,9 | 0 | 0 | 312 |
| TYCO INTL LTD BERMUD | | G9143X208 | 8651 | 218175 | SH | DEFINED | 7,11 | 201675 | 0 | 16500 |
| TYCO INTL LTD BERMUD | | G9143X208 | 480 | 12095 | SH | DEFINED | 7,11,13 | 12095 | 0 | 0 |
| TYCO INTL LTD BERMUD | | G9143X208 | 57 | 1429 | SH | DEFINED | 7,11,33 | 0 | 0 | 1429 |
| TYCO INTL LTD BERMUD | | G9143X208 | 75015 | 1891924 | SH | DEFINED | 16,24,25 | 1760217 | 0 | 131707 |
| TYCO INTL LTD BERMUD | | G9143X208 | 2165 | 54603 | SH | DEFINED | 32,40,41 | 54603 | 0 | 0 |
| TYCO INTL LTD BERMUD | | G9143X208 | 6 | 154 | SH | DEFINED | 5-7,11,43,44 | 0 | 154 | 0 |
| TYCO INTL LTD BERMUD | | G9143X208 | 2137 | 53904 | SH | CALL DEFINED | 7,11 | 53904 | 0 | 0 |
| TYCO INTL LTD BERMUD | | G9143X208 | 6336 | 159800 | SH | CALL DEFINED | 15,16,24 | 159800 | 0 | 0 |
| TYCO INTL LTD BERMUD | | G9143X208 | 634 | 16000 | SH | CALL DEFINED | 16,24,25 | 16000 | 0 | 0 |
| TYCO INTL LTD BERMUD | | G9143X208 | 2617 | 66000 | SH | PUT DEFINED | 15,16,24 | 66000 | 0 | 0 |
| TYCO INTL LTD BERMUD | | G9143X208 | 2930 | 73904 | SH | PUT DEFINED | 16,24,25 | 73904 | 0 | 0 |
| TYCO ELECTRONICS LTD | COM NEW | G9144P105 | 11 | 296 | SH | DEFINED | 3,9 | 0 | 0 | 296 |
| TYCO ELECTRONICS LTD | COM NEW | G9144P105 | 4641 | 124983 | SH | DEFINED | 7,11 | 108483 | 0 | 16500 |
| TYCO ELECTRONICS LTD | COM NEW | G9144P105 | 147 | 3946 | SH | DEFINED | 7,11,13 | 3946 | 0 | 0 |
| TYCO ELECTRONICS LTD | COM NEW | G9144P105 | 86 | 2322 | SH | DEFINED | 7,11,33 | 0 | 0 | 2322 |
| TYCO ELECTRONICS LTD | COM NEW | G9144P105 | 1047 | 28211 | SH | DEFINED | 15,16,24 | 28211 | 0 | 0 |
| TYCO ELECTRONICS LTD | COM NEW | G9144P105 | 78481 | 2113681 | SH | DEFINED | 16,24,25 | 1958096 | 0 | 155584 |
| TYCO ELECTRONICS LTD | COM NEW | G9144P105 | 566 | 15245 | SH | DEFINED | 32,40,41 | 15245 | 0 | 0 |
| TYCO ELECTRONICS LTD | COM NEW | G9144P105 | 6 | 154 | SH | DEFINED | 5-7,11,43,44 | 0 | 154 | 0 |
| TYCO ELECTRONICS LTD | COM NEW | G9144P105 | 706 | 19012 | SH | DEFINED | 16,19,24,26,27 | 19012 | 0 | 0 |
| TYCO ELECTRONICS LTD | COM NEW | G9144P105 | 10705 | 288300 | SH | CALL DEFINED | 15,16,24 | 288300 | 0 | 0 |
| TYCO ELECTRONICS LTD | COM NEW | G9144P105 | 38192 | 1028600 | SH | CALL DEFINED | 15,16,24 | 1028600 | 0 | 0 |
| TYCO ELECTRONICS LTD | COM NEW | G9144P105 | 10497 | 282700 | SH | PUT DEFINED | 15,16,24 | 282700 | 0 | 0 |

```
TYCO ELECTRONICS LTD COM NEW      G9144P105    962     25900 SH  PUT  DEFINED   16,24,25           25900        0        0
VISTAPRINT LIMITED   SHS          G93762204    201      4693 SH       DEFINED   16,24,25            4523        0      170
VISTAPRINT LIMITED   SHS          G93762204     64      1500 SH       DEFINED   16,24,25            1500        0        0
WARNER CHILCOTT LIMI COM CL A     G9435N108     19      1093 SH       DEFINED   7,11                1093        0        0
WARNER CHILCOTT LIMI COM CL A     G9435N108    145      8202 SH       DEFINED   16,24,25            8054        0      148
WARNER CHILCOTT LIMI COM CL A     G9435N108    101      5700 SH       DEFINED   32,40,41            5700        0        0
GOLAR LNG LTD BERMUD SHS          G9456A100    360     16282 SH       DEFINED   16,24,25           16217        0       65
GOLAR LNG LTD BERMUD SHS          G9456A100    446     20163 SH       DEFINED   16,19,24,26,27     20163        0        0
WEATHERFORD INTERNAT COM          G95089101   1149     16750 SH       DEFINED   30                 16750        0        0
WEATHERFORD INTERNAT COM          G95089101   7868    114700 SH       DEFINED   42                114700        0        0
WEATHERFORD INTERNAT COM          G95089101     13       191 SH       DEFINED   3,9                    0        0      191
WEATHERFORD INTERNAT COM          G95089101 130657   1904622 SH       DEFINED   7,11             1904322        0      300
WEATHERFORD INTERNAT COM          G95089101    353      5141 SH       DEFINED   7,11,13             5101        0       40
WEATHERFORD INTERNAT COM          G95089101    710     10355 SH       DEFINED   7,11,33                0        0    10355
WEATHERFORD INTERNAT COM          G95089101   2587     37705 SH       DEFINED   15,16,24           37705        0        0
WEATHERFORD INTERNAT COM          G95089101 253847   3700390 SH       DEFINED   16,24,25         3404981        0   295408
WEATHERFORD INTERNAT COM          G95089101   8961    130623 SH       DEFINED   32,40,41          130623        0        0
WEATHERFORD INTERNAT COM          G95089101 147820   2154809 SH  CALL DEFINED   7,11             2154809        0        0
WEATHERFORD INTERNAT COM          G95089101  13569    197800 SH  CALL DEFINED   15,16,24          197800        0        0
WEATHERFORD INTERNAT COM          G95089L01 105857   1543098 SH  CALL DEFINED   16,24,25         1543098        0        0
WEATHERFORD INTERNAT COM          G95089101  93817   1367598 SH  PUT  DEFINED   7,11             1367598        0        0
WEATHERFORD INTERNAT COM          G95089101  17774    259100 SH  PUT  DEFINED   15,16,24          259100        0        0
WEATHERFORD INTERNAT COM          G95089101   3121     45500 SH  PUT  DEFINED   16,24,25           45500        0        0
WHITE MTNS INS GROUP COM          G96188107    267       519 SH       DEFINED   7,11                 519        0        0
WHITE MTNS INS GROUP COM          G96188107      8        15 SH       DEFINED   7,11,13               15        0        0
WHITE MTNS INS GROUP COM          G96188107   9878     19216 SH       DEFINED   16,24,25           16992        0     2223
WILLIS GROUP HOLDING SHS          G96655108    195      5127 SH       DEFINED   7,11                5127        0        0
WILLIS GROUP HOLDING SHS          G96655108   2642     69578 SH       DEFINED   16,24,25           66867        0     2711
WILLIS GROUP HOLDING SHS          G96655108    893     23525 SH       DEFINED   32,40,41           23525        0        0
XOMA LTD             ORD          G98258107    129     38013 SH       DEFINED   16,24,25           37613        0      400
XL CAP LTD           CL A         G98255105   7267    144438 SH       DEFINED   7,11              144438        0        0
XL CAP LTD           CL A         G98255105      4        75 SH       DEFINED   7,11,13               75        0        0
XL CAP LTD           CL A         G98255105     13       265 SH       DEFINED   7,11,33                0        0      265
XL CAP LTD           CL A         G98255105    340      6764 SH       DEFINED   15,16,24            6764        0        0
XL CAP LTD           CL A         G98255105  17260    343079 SH       DEFINED   16,24,25          323174        0    19905
XL CAP LTD           CL A         G98255105   3442     68421 SH       DEFINED   32,40,41           68421        0        0
XL CAP LTD           CL A         G98255105   7627    151600 SH  CALL DEFINED   15,16,24          151600        0        0
XL CAP LTD           CL A         G98255105   7746    153975 SH  CALL DEFINED   16,24,25          153975        0        0
XL CAP LTD           CL A         G98255105   6599    131175 SH  PUT  DEFINED   7,11              131175        0        0
XL CAP LTD           CL A         G98255105   8070    160400 SH  PUT  DEFINED   15,16,24          160400        0        0
XL CAP LTD           CL A         G98255105  18197    361700 SH  PUT  DEFINED   16,24,25          361700        0        0
ALCON INC            COM SHS      H01301102    386      2700 SH       DEFINED   30                  2700        0        0
ALCON INC            COM SHS      H01301102   4241     29648 SH       DEFINED   7,11               29048        0      600
ALCON INC            COM SHS      H01301102      4        25 SH       DEFINED   7,11,13               25        0        0
ALCON INC            COM SHS      H01301102     59       410 SH       DEFINED   7,11,33                0        0      410
ALCON INC            COM SHS      H01301102  25128    175669 SH       DEFINED   16,24,25          161319        0    14349
ALCON INC            COM SHS      H01301102   3473     24281 SH  CALL DEFINED   7,11               24281        0        0
ALCON INC            COM SHS      H01301102  18123    126700 SH  CALL DEFINED   15,16,24          126700        0        0
ALCON INC            COM SHS      H01301102  22300    155900 SH  PUT  DEFINED   15,16,24          155900        0        0
ALCON INC            COM SHS      H01301102   3473     24281 SH  PUT  DEFINED   16,24,25           24281        0        0
LOGITECH INTL S A    SHS          H50430232    290      7916 SH       DEFINED   7,11                7916        0        0
LOGITECH INTL S A    SHS          H50430232    334      9124 SH       DEFINED   16,24,25            8192        0      932
LOGITECH INTL S A    SHS          H50430232   9151    249756 SH       DEFINED   32,40,41          249756        0        0
UBS AG               SHS NEW      H89231338    294      6400 SH       DEFINED   3,9                    0        0     6400
UBS AG               SHS NEW      H89231338     21       450 SH       DEFINED   7,11,13              450        0        0
UBS AG               SHS NEW      H89231338     24       512 SH       DEFINED   7,11,33                0        0      512
UBS AG               SHS NEW      H89231338   3663     79637 SH       DEFINED   16,24,25           55024        0    24613
UBS AG               SHS NEW      H89231338   6271    136318 SH       DEFINED   32,40,41          136318        0        0
UBS AG               SHS NEW      H89231338   4017     87322 SH       DEFINED   5-7,11,43,44           0    87322        0
UBS AG               SHS NEW      H89231338   3582     77864 SH       DEFINED 2,6,7,10-11,18,20,21,28  77864        0        0
MILLICOM INTL CELLUL SHS NEW      L6388F110    516      4374 SH       DEFINED   7,11                4374        0        0
MILLICOM INTL CELLUL SHS NEW      L6388F110    127      1074 SH       DEFINED   16,24               1074        0        0
MILLICOM INTL CELLUL SHS NEW      L6388F110   1040      8819 SH       DEFINED   16,24,25            2087        0     6732
MILLICOM INTL CELLUL SHS NEW      L6388F110  14577    123600 SH       DEFINED   32,40,41          123600        0        0
ALVARION LTD         SHS          M0861T100    169     17833 SH       DEFINED   15,16,24           17833        0        0
ALVARION LTD         SHS          M0861T100    855     89960 SH       DEFINED   16,24,25           75939        0    14021
ALVARION LTD         SHS          M0861T100    494     52000 SH  CALL DEFINED   15,16,24           52000        0        0
ALVARION LTD         SHS          M0861T100    168     17700 SH  PUT  DEFINED   15,16,24           17700        0        0
AUDIOCODES LTD       ORD          M15342104     12      2300 SH       DEFINED   16,24,25             300        0     2000
AUDIOCODES LTD       ORD          M15342104    339     67000 SH  CALL DEFINED   16,24,25           67000        0        0
CELLCOM ISRAEL LTD   SHS          M21960109    304      9559 SH       DEFINED   16,24,25            8397        0     1162
CERAGON NETWORKS LTD ORD          M22013102     34      3400 SH       DEFINED   16,24,25            3400        0        0
CERAGON NETWORKS LTD ORD          M22013102     78      7900 SH  CALL DEFINED   15,16,24            7900        0        0
CERAGON NETWORKS LTD ORD          M22013102     27      2700 SH  PUT  DEFINED   15,16,24            2700        0        0
CHECK POINT SOFTWARE ORD          M22465104    455     20706 SH       DEFINED   7,11               20706        0        0
CHECK POINT SOFTWARE ORD          M22465104    150      6825 SH       DEFINED   7,11,13             6825        0        0
CHECK POINT SOFTWARE ORD          M22465104   1779     81020 SH       DEFINED   16,24,25           73723        0     7297
CHECK POINT SOFTWARE ORD          M22465104     82      3715 SH       DEFINED   32,40,41            3715        0        0
CHECK POINT SOFTWARE ORD          M22465104      1        45 SH       DEFINED   16,19,24,26,27        45        0        0
CHECK POINT SOFTWARE ORD          M22465104   2763    125800 SH  CALL DEFINED   15,16,24          125800        0        0
CHECK POINT SOFTWARE ORD          M22465104    343     15600 SH  CALL DEFINED   16,24,25           15600        0        0
CHECK POINT SOFTWARE ORD          M22465104    729     33200 SH  PUT  DEFINED   15,16,24           33200        0        0
CHECK POINT SOFTWARE ORD          M22465104    152      6900 SH  PUT  DEFINED   16,24,25            6900        0        0
COMPUGEN LTD         ORD          M25722105    712    444815 SH       DEFINED   16,24,25          301557        0   143258
ELBIT SYS LTD        ORD          M3760D101   2017     33859 SH       DEFINED   16,24,25           28443        0     5416
ELBIT SYS LTD        ORD          M3760D101     30       505 SH       DEFINED   32,40,41             505        0        0
ELBIT SYS LTD        ORD          M3760D101     30       511 SH       DEFINED   16,19,24,26,27       511        0        0
G WILLI FOOD INTL LT ORD          M52523103     77     12909 SH       DEFINED   16,24,25           11725        0     1184
INTERNET GOLD-GOLDEN ORD          M56595107    151     12690 SH       DEFINED   16,24,25           11965        0      725
LANOPTICS LTD        ORD          M6706C103   2115    115490 SH       DEFINED   16,24,25           78130        0    37360
MAGAL SECURITY SYS L ORD          M6786D104     77     12200 SH       DEFINED   16,24,25           12200        0        0
MIND C T I LTD       ORD          M70240102     62     27756 SH       DEFINED   16,24,25           26106        0     1650
RADVISION LTD        ORD          M81869105    137     12376 SH       DEFINED   16,24,25            9881        0     2495
RETALIX LTD          ORD          M8215W109    156     10027 SH       DEFINED   16,19,24,26,27     10027        0        0
SYNERON MEDICAL LTD  ORD SHS      M87245102     69      5133 SH       DEFINED   15,16,24            5133        0        0
SYNERON MEDICAL LTD  ORD SHS      M87245102    418     31240 SH       DEFINED   16,24,25           29484        0     1756
SYNERON MEDICAL LTD  ORD SHS      M87245102     91      6800 SH  PUT  DEFINED   15,16,24            6800        0        0
ASM INT N V          COM          N07045102    368     15364 SH       DEFINED   16,19,24,26,27     15364        0        0
ASML HOLDING N V     NY REG SHS   N07059186  12307    393321 SH       DEFINED   16,24,25          378618        0    14703
ASML HOLDING N V     NY REG SHS   N07059186   2167     69244 SH       DEFINED   32,40,41           69244        0        0
ASML HOLDING N V     NY REG SHS   N07059186   1627     52000 SH  CALL DEFINED   15,16,24           52000        0        0
ASML HOLDING N V     NY REG SHS NEW N07059186  3414    109100 SH  PUT  DEFINED   16,24,25          109100        0        0
CNH GLOBAL N V       ORD          N20935206   7922    120359 SH       DEFINED   16,24,25          102918        0    17440
CORE LABORATORIES N  COM          N22717107     21       165 SH       DEFINED   7,11,13              165        0        0
CORE LABORATORIES N  COM          N22717107     44       352 SH       DEFINED   7,11,33                0        0      352
CORE LABORATORIES N  COM          N22717107  49559    397364 SH       DEFINED   16,24,25          366798        0    30566
QIAGEN N V           ORD          N72482107    354     16838 SH       DEFINED   16,24,25           10869        0     5969
QIAGEN N V           ORD          N72482107    115      5463 SH       DEFINED   32,40,41            5463        0        0
QIAGEN N V           ORD          N72482107     32      1537 SH       DEFINED   16,19,24,26,27      1537        0        0
BANCO LATINOAMERICAN CL E         P16994132    556     34086 SH       DEFINED   16,24,25           32960        0     1126
COPA HOLDINGS SA     CL A         P31076105    814     21658 SH       DEFINED   7,11               21658        0        0
COPA HOLDINGS SA     CL A         P31076105    171      4560 SH       DEFINED   16,24,25            3882        0      678
SINOVAC BIOTECH LTD  ORD          P8696W104     56     11000 SH       DEFINED   16,24,25           10200        0      800
STEINER LEISURE LTD  ORD          P8744Y102      2        39 SH       DEFINED   3,9                    0        0       39
```

```
STEINER LEISURE LTD  ORD          P8744Y102    254    5760 SH      DEFINED    16,24,25        5362      0      398
EXCEL MARITIME CARRI COM          V3267N107   1206   30000 SH      DEFINED    15,16,24       30000      0        0
EXCEL MARITIME CARRI COM          V3267N107    994   24739 SH      DEFINED    16,24,25       22501      0     2238
EXCEL MARITIME CARRI COM          V3267N107    567   14100 SH CALL DEFINED    15,16,24       14100      0        0
EXCEL MARITIME CARRI COM          V3267N107     12     300 SH CALL DEFINED    16,24,25         300      0        0
EXCEL MARITIME CARRI COM          V3267N107   1656   41200 SH  PUT DEFINED    15,16,24       41200      0        0
ROYAL CARIBBEAN CRUI COM          V7780T103    342    8068 SH      DEFINED       7,11        8068      0        0
ROYAL CARIBBEAN CRUI COM          V7780T103     38     900 SH      DEFINED     7,11,13         900      0        0
ROYAL CARIBBEAN CRUI COM          V7780T103   5170  121829 SH      DEFINED    16,24,25       70640      0    51188
ROYAL CARIBBEAN CRUI COM          V7780T103    174    4098 SH      DEFINED    32,40,41        4098      0        0
ROYAL CARIBBEAN CRUI COM          V7780T103      1      15 SH      DEFINED 16,19,24,26,27      15       0        0
ROYAL CARIBBEAN CRUI COM          V7780T103   6604  155600 SH CALL DEFINED    15,16,24      155600      0        0
ROYAL CARIBBEAN CRUI COM          V7780T103  13246  312100 SH  PUT DEFINED    15,16,24      312100      0        0
ROYAL CARIBBEAN CRUI COM          V7780T103   1485   35000 SH  PUT DEFINED    16,24,25       35000      0        0
DANAOS CORPORATION   SHS          Y1968P105   1394   52770 SH      DEFINED       16,24       52770      0        0
DANAOS CORPORATION   SHS          Y1968P105   2195   83114 SH      DEFINED    16,24,25       69802      0    13312
DIANA SHIPPING INC   COM          Y2066G104   6882  218767 SH      DEFINED    16,24,25      189865      0    28902
DRYSHIPS INC         SHS          Y2109Q101  11241  145232 SH      DEFINED    16,24,25      124106      0    21226
DRYSHIPS INC         SHS          Y2109Q101  49660  641600 SH CALL DEFINED    15,16,24      641600      0        0
DRYSHIPS INC         SHS          Y2109Q101  19365  250200 SH  PUT DEFINED    15,16,24      250200      0        0
DOUBLE HULL TANKERS  COM          Y2111U104   3886  317476 SH      DEFINED    16,24,25      278498      0    38978
EAGLE BULK SHIPPING  COM          Y2187A101   4851  182700 SH      DEFINED       16,24      182700      0        0
EAGLE BULK SHIPPING  COM          Y2187A101   9050  340882 SH      DEFINED    16,24,25      294540      0    46342
EUROSEAS LTD         COM NEW      Y23S92200    636   51291 SH      DEFINED    16,24,25       39111      0    12180
FLEXTRONICS INTL LTD ORD          Y2573F102    633   52500 SH      DEFINED          30       52500      0        0
FLEXTRONICS INTL LTD ORD          Y2573F102   1007   83478 SH      DEFINED        7,11       79999      0     3479
FLEXTRONICS INTL LTD ORD          Y2573F102    141   11706 SH      DEFINED       16,24       11706      0        0
FLEXTRONICS INTL LTD ORD          Y2573F102    457   37900 SH      DEFINED     7,11,13       37900      0        0
FLEXTRONICS INTL LTD ORD          Y2573F102   1355  112384 SH      DEFINED    15,16,24      112384      0        0
FLEXTRONICS INTL LTD ORD          Y2573F102  23162 1920532 SH      DEFINED    16,24,25     1675505      0   245027
FLEXTRONICS INTL LTD ORD          Y2573F102   3584  297155 SH      DEFINED    32,40,41      297155      0        0
FLEXTRONICS INTL LTD ORD          Y2573F102      6     482 SH      DEFINED 16,17,22-24       482      0        0
FLEXTRONICS INTL LTD ORD          Y2573F102   8596  712800 SH CALL DEFINED    15,16,24      712800      0        0
FLEXTRONICS INTL LTD ORD          Y2573F102   3192  264700 SH CALL DEFINED    16,24,25      264700      0        0
FLEXTRONICS INTL LTD ORD          Y2573F102   7428  615900 SH  PUT DEFINED    15,16,24      615900      0        0
GENCO SHIPPING & TRA SHS          Y2685T107     66    1200 SH      DEFINED          30        1200      0        0
GENCO SHIPPING & TRA SHS          Y2685T107   5926  108216 SH      DEFINED    16,24,25       96046      0    12170
GENERAL MARITIME COR SHS          Y2692M103     56    2300 SH      DEFINED          30        2300      0        0
GENERAL MARITIME COR SHS          Y2692M103     12     495 SH      DEFINED        7,11         495      0        0
GENERAL MARITIME COR SHS          Y2692M103    496   20281 SH      DEFINED     7,11,33       20281      0    20281
GENERAL MARITIME COR SHS          Y2692M103   3007  122968 SH      DEFINED    16,24,25      118629      0     4339
GIGAMEDIA LTD        ORD          Y27I1Y104     38    2000 SH      DEFINED        7,11           0      0     2000
GIGAMEDIA LTD        ORD          Y27I1Y104    270   14426 SH      DEFINED    16,24,25       11380      0     3046
NAVIOS MARITIME HOLD COM          Y62196103    634   51749 SH      DEFINED    16,24,25       39901      0    11848
OCEANFREIGHT INC     SHS          Y64202107   3930  204354 SH      DEFINED    16,24,25      204054      0      300
QUINTANA MARITIME LT SHS          Y7169G109    115    5000 SH      DEFINED    15,16,24        5000      0        0
QUINTANA MARITIME LT SHS          Y7169G109   2452  106682 SH      DEFINED    16,24,25       83076      0    23606
QUINTANA MARITIME LT SHS          Y7169G109    696   30300 SH CALL DEFINED    15,16,24       30300      0        0
QUINTANA MARITIME LT SHS          Y7169G109    322   14000 SH  PUT DEFINED    16,24,25       14000      0        0
SEANERGY MARITIME CO UNIT 99/99   Y73760202   1613  150000 SH      DEFINED    16,24,25      150000      0        0
SEASPAN CORP         SHS          Y75638109    100    4100 SH      DEFINED     7,11,33           0      0     4100
SEASPAN CORP         SHS          Y75638109     56    2283 SH      DEFINED       16,24        2283      0        0
SEASPAN CORP         SHS          Y75638109  13643  557081 SH      DEFINED    16,24,25      467147      0    89934
SEASPAN CORP         SHS          Y75638109     17     700 SH      DEFINED 5-7,11,43,44        0    700        0
SEASPAN CORP         SHS          Y75638109   2028   82800 SH CALL DEFINED    15,16,24       82800      0        0
SEASPAN CORP         SHS          Y75638109    911   37200 SH  PUT DEFINED    15,16,24       37200      0        0
STAR BULK CARRIERS C COM          Y8162K105    635   49431 SH      DEFINED    16,24,25       32636      0    16795
STAR BULK CARRIERS C *W EXP 12/   Y8162K113    126   27380 SH      DEFINED    16,24,25       20780      0     6600
TEEKAY LNG PARTNERS  PRTNRSP UN   Y8564M105   1377   46423 SH      DEFINED    16,24,25       32213      0    14210
TEEKAY CORPORATION   COM          Y8564W103    179    3371 SH      DEFINED        7,11        3371      0        0
TEEKAY CORPORATION   COM          Y8564W103      4      76 SH      DEFINED     7,11,13          56      0       20
TEEKAY CORPORATION   COM          Y8564W103   1290   24248 SH      DEFINED    15,16,24       24248      0        0
TEEKAY CORPORATION   COM          Y8564W103    345    6491 SH      DEFINED    16,24,25        5697      0      794
TEEKAY CORPORATION   COM          Y8564W103   5050   94900 SH CALL DEFINED    15,16,24       94900      0        0
TEEKAY CORPORATION   COM          Y8564W103    798   15000 SH CALL DEFINED    15,16,24       15000      0        0
TEEKAY CORPORATION   COM          Y8564W103   8546  160600 SH  PUT DEFINED    15,16,24      160600      0        0
TEEKAY TANKERS LTD   CL A         Y8565N102  11851  538665 SH      DEFINED    16,24,25      538665      0        0
VERIGY LTD           SHS          Y93691106     23     837 SH      DEFINED        7,11           0      0      837
VERIGY LTD           SHS          Y93691106     10     350 SH      DEFINED     7,11,13         350      0        0
VERIGY LTD           SHS          Y93691106     10     355 SH      DEFINED     7,11,33           0      0      355
VERIGY LTD           SHS          Y93691106      6     205 SH      DEFINED    15,16,24         205      0        0
VERIGY LTD           SHS          Y93691106  13993  512826 SH      DEFINED    16,24,25      421595      0    91231
AAR CORP             COM          000361105     12     322 SH      DEFINED        7,11         322      0        0
AAR CORP             COM          000361105   1601   42092 SH      DEFINED    16,24,25       29876      0    12216
ABB LTD              SPONSORED    000375204   1392   48323 SH      DEFINED        7,11           0      0    48323
ABB LTD              SPONSORED    000375204      3     118 SH      DEFINED     7,11,13         118      0        0
ABB LTD              SPONSORED    000375204   1235   42899 SH      DEFINED    15,16,24       42899      0        0
ABB LTD              SPONSORED    000375204  20336  706126 SH      DEFINED    16,24,25      577100      0   129025
ABB LTD              SPONSORED    000375204   1083   37600 SH CALL DEFINED    15,16,24       37600      0        0
ABB LTD              SPONSORED    000375204   2578   89500 SH  PUT DEFINED    15,16,24       89500      0        0
ABX AIR INC          COM          00080S101     80   19221 SH      DEFINED    16,24,25       11944      0     7277
ACA CAPITAL HOLDINGS COM          000833103     52   60925 SH      DEFINED    16,24,25       60925      0        0
A D C TELECOMMUNICAT FRNT         000886AB7     38   41000 PRN      DEFINED    16,24,25       41000      0        0
A D C TELECOMMUNICAT COM NEW      000886309    264   17000 SH      DEFINED         3,9           0      0    17000
A D C TELECOMMUNICAT COM NEW      000886309     16    1046 SH      DEFINED        7,11        1046      0     1046
A D C TELECOMMUNICAT COM NEW      000886309     28    1830 SH      DEFINED       16,24        1830      0        0
A D C TELECOMMUNICAT COM NEW      000886309    107    6875 SH      DEFINED     7,11,13        6875      0        0
A D C TELECOMMUNICAT COM NEW      000886309   1451   93335 SH      DEFINED    16,24,25       88492      0     4843
A D C TELECOMMUNICAT COM NEW      000886309     31    2020 SH      DEFINED    32,40,41        2020      0        0
A D C TELECOMMUNICAT COM NEW      000886309   3073  197600 SH CALL DEFINED    15,16,24      197600      0        0
A D C TELECOMMUNICAT COM NEW      000886309    476   30600 SH CALL DEFINED    16,24,25       30600      0        0
A D C TELECOMMUNICAT COM NEW      000886309   2166  139300 SH  PUT DEFINED    15,16,24      139300      0        0
A D C TELECOMMUNICAT COM NEW      000886309    748   48100 SH  PUT DEFINED    16,24,25       48100      0        0
ACM MANAGED DLR INCO COM          000949107     21    2965 SH      DEFINED    16,24,25        1665      0     1300
ACM MANAGED DLR INCO COM          000949107    215   29900 SH      DEFINED 16,19,24,26,27   29900      0        0
ABM INDS INC         COM          000957100     59    2875 SH      DEFINED     7,11,13        2875      0        0
ABM INDS INC         COM          000957100    223   10921 SH      DEFINED    16,24,25        8124      0     2797
AFLAC INC            COM          001055102   5676   90627 SH      DEFINED        7,11       90627      0        0
AFLAC INC            COM          001055102   1104   17626 SH      DEFINED     7,11,13       17626      0        0
AFLAC INC            COM          001055102    148    2365 SH      DEFINED     7,11,33           0      0     2365
AFLAC INC            COM          001055102  14952  238731 SH      DEFINED    16,24,25      170752      0    67979
AFLAC INC            COM          001055102   7616  121601 SH      DEFINED    32,40,41      121601      0        0
AFLAC INC            COM          001055102    188    3000 SH      DEFINED 5-7,11,43,44        0   3000        0
AFLAC INC            COM          001055102  20731  331000 SH CALL DEFINED    15,16,24      331000      0        0
AFLAC INC            COM          001055102   6576  105000 SH CALL DEFINED    16,24,25      105000      0        0
AFLAC INC            COM          001055102   2161   34500 SH  PUT DEFINED        7,11       34500      0        0
AFLAC INC            COM          001055102  14417  230200 SH  PUT DEFINED    15,16,24      230200      0        0
AFLAC INC            COM          001055102   7960  127100 SH  PUT DEFINED    16,24,25      127100      0        0
AGCO CORP            COM          001084102   4098   60282 SH      DEFINED        7,11       60282      0        0
AGCO CORP            COM          001084102   5288   77790 SH      DEFINED    16,24,25       61633      0    16157
AGL RES INC          COM          001204106     57    1516 SH      DEFINED     7,11,13        1516      0        0
AGL RES INC          COM          001204106     30     800 SH      DEFINED     7,11,33           0      0      800
AGL RES INC          COM          001204106   2035   54056 SH      DEFINED    16,24,25       46744      0     7312
AES CORP             COM          00130H105   2821  131894 SH      DEFINED        7,11      131894      0        0
```

| Name | Type | CUSIP | Col1 | Col2 | Ind | | Codes | Col3 | Col4 | Col5 |
|---|---|---|---|---|---|---|---|---|---|---|
| AES CORP | COM | 00130H105 | 244 | 11400 | SH | DEFINED | 7,11,13 | 11400 | 0 | 0 |
| AES CORP | COM | 00130H105 | 64 | 3000 | SH | DEFINED | 7,11,33 | 0 | 0 | 3000 |
| AES CORP | COM | 00130H105 | 9801 | 458212 | SH | DEFINED | 16,24,25 | 320976 | 0 | 137236 |
| AES CORP | COM | 00130H105 | 4037 | 188711 | SH | DEFINED | 32,40,41 | 188711 | 0 | 0 |
| AES CORP | COM | 00130H105 | 49 | 2300 | SH | DEFINED | 16,19,24,26,27 | 2300 | 0 | 0 |
| AES CORP | COM | 00130H105 | 3059 | 143000 | SH | CALL DEFINED | 15,16,24 | 143000 | 0 | 0 |
| AES CORP | COM | 00130H105 | 2287 | 106900 | SH | CALL DEFINED | 16,24,25 | 106900 | 0 | 0 |
| AES CORP | COM | 00130H105 | 1536 | 71800 | SH | PUT DEFINED | 15,16,24 | 71800 | 0 | 0 |
| AES CORP | COM | 00130H105 | 1688 | 78900 | SH | PUT DEFINED | 16,24,25 | 78900 | 0 | 0 |
| AK STL HLDG CORP | COM | 001547108 | 444 | 9600 | SH | DEFINED | 3,9 | 0 | 0 | 9600 |
| AK STL HLDG CORP | COM | 001547108 | 4095 | 88570 | SH | DEFINED | 7,11 | 88570 | 0 | 0 |
| AK STL HLDG CORP | COM | 001547108 | 1156 | 25000 | SH | DEFINED | 31,45 | 25000 | 0 | 0 |
| AK STL HLDG CORP | COM | 001547108 | 8281 | 179082 | SH | DEFINED | 16,24,25 | 177628 | 0 | 1454 |
| AK STL HLDG CORP | COM | 001547108 | 712 | 15400 | SH | DEFINED | 32,40,41 | 15400 | 0 | 0 |
| AK STL HLDG CORP | COM | 001547108 | 4343 | 93931 | SH | CALL DEFINED | 7,11 | 93931 | 0 | 0 |
| AK STL HLDG CORP | COM | 001547108 | 59150 | 1279200 | SH | CALL DEFINED | 15,16,24 | 1279200 | 0 | 0 |
| AK STL HLDG CORP | COM | 001547108 | 2751 | 59500 | SH | CALL DEFINED | 16,24,25 | 59500 | 0 | 0 |
| AK STL HLDG CORP | COM | 001547108 | 54142 | 1170900 | SH | PUT DEFINED | 15,16,24 | 1170900 | 0 | 0 |
| AK STL HLDG CORP | COM | 001547108 | 10993 | 237731 | SH | PUT DEFINED | 16,24,25 | 237731 | 0 | 0 |
| AMB PROPERTY CORP | COM | 00163T109 | 274 | 4764 | SH | DEFINED | 7,11 | 4764 | 0 | 0 |
| AMB PROPERTY CORP | COM | 00163T109 | 3995 | 69400 | SH | DEFINED | 14,31 | 69400 | 0 | 0 |
| AMB PROPERTY CORP | COM | 00163T109 | 146 | 2544 | SH | DEFINED | 16,24,25 | 2544 | 0 | 0 |
| AMB PROPERTY CORP | COM | 00163T109 | 24243 | 421172 | SH | DEFINED | 32,40,41 | 421172 | 0 | 0 |
| AMAG PHARMACEUTICALS | COM | 00163U106 | 935 | 15556 | SH | DEFINED | 15,16,24 | 15556 | 0 | 0 |
| AMAG PHARMACEUTICALS | COM | 00163U106 | 1693 | 28162 | SH | DEFINED | 16,24,25 | 28162 | 0 | 0 |
| AMAG PHARMACEUTICALS | COM | 00163U106 | 3476 | 57800 | SH | CALL DEFINED | 15,16,24 | 57800 | 0 | 0 |
| AMAG PHARMACEUTICALS | COM | 00163U106 | 2976 | 49500 | SH | PUT DEFINED | 15,16,24 | 49500 | 0 | 0 |
| AMR CORP | NOTE 4.50 | 001765BB1 | 6187 | 5971000 | PRN | DEFINED | 16,24,25 | 5971000 | 0 | 0 |
| AMR CORP | COM | 001765106 | 2350 | 167528 | SH | DEFINED | 7,11 | 167528 | 0 | 0 |
| AMR CORP | COM | 001765106 | 1725 | 122957 | SH | DEFINED | 15,16,24 | 122957 | 0 | 0 |
| AMR CORP | COM | 001765106 | 20842 | 1485503 | SH | DEFINED | 16,24,25 | 1428501 | 0 | 57002 |
| AMR CORP | COM | 001765106 | 17289 | 1232300 | SH | CALL DEFINED | 15,16,24 | 1232300 | 0 | 0 |
| AMR CORP | COM | 001765106 | 3297 | 235000 | SH | CALL DEFINED | 16,24,25 | 235000 | 0 | 0 |
| AMR CORP | COM | 001765106 | 18884 | 1346000 | SH | PUT DEFINED | 15,16,24 | 1346000 | 0 | 0 |
| AMR CORP | COM | 001765106 | 702 | 50000 | SH | DEFINED | 16,24,25 | 50000 | 0 | 0 |
| APAC CUSTOMER SERVIC | COM | 00185B106 | 38 | 33000 | SH | DEFINED | 16,24,25 | 0 | 0 | 33000 |
| APP PHARMACEUTICALS | COM | 00202H108 | 7 | 657 | SH | DEFINED | 7,11 | 657 | 0 | 0 |
| APP PHARMACEUTICALS | COM | 00202H108 | 1 | 100 | SH | DEFINED | 7,11,13 | 100 | 0 | 0 |
| APP PHARMACEUTICALS | COM | 00202H108 | 383 | 37295 | SH | DEFINED | 15,16,24 | 37295 | 0 | 0 |
| APP PHARMACEUTICALS | COM | 00202H108 | 189 | 18438 | SH | DEFINED | 16,24,25 | 15823 | 0 | 2615 |
| APP PHARMACEUTICALS | COM | 00202H108 | 1 | 100 | SH | CALL DEFINED | 15,16,24 | 100 | 0 | 0 |
| APP PHARMACEUTICALS | COM | 00202H108 | 153 | 14900 | SH | PUT DEFINED | 15,16,24 | 14900 | 0 | 0 |
| AT&T INC | COM | 00206R102 | 2336 | 56200 | SH | DEFINED | 12 | 0 | 0 | 56200 |
| AT&T INC | COM | 00206R102 | 382 | 9200 | SH | DEFINED | 30 | 9200 | 0 | 0 |
| AT&T INC | COM | 00206R102 | 8175 | 196693 | SH | DEFINED | 3,9 | 0 | 0 | 196693 |
| AT&T INC | COM | 00206R102 | 236535 | 5691404 | SH | DEFINED | 7,11 | 3985311 | 14356 | 1691737 |
| AT&T INC | COM | 00206R102 | 1621 | 39000 | SH | DEFINED | 16,24 | 39000 | 0 | 0 |
| AT&T INC | COM | 00206R102 | 4989 | 120045 | SH | DEFINED | 7,11,13 | 43431 | 0 | 76614 |
| AT&T INC | COM | 00206R102 | 787 | 18942 | SH | DEFINED | 7,11,33 | 0 | 0 | 18942 |
| AT&T INC | COM | 00206R102 | 1223 | 29435 | SH | DEFINED | 15,16,24 | 29435 | 0 | 0 |
| AT&T INC | COM | 00206R102 | 449347 | 10812017 | SH | DEFINED | 16,24,25 | 9761206 | 0 | 1050810 |
| AT&T INC | COM | 00206R102 | 82503 | 1985146 | SH | DEFINED | 32,40,41 | 1985146 | 0 | 0 |
| AT&T INC | COM | 00206R102 | 2520 | 60625 | SH | DEFINED | 5-7,11,43,44 | 0 | 60625 | 0 |
| AT&T INC | COM | 00206R102 | 552 | 13284 | SH | DEFINED | 16,19,24,26,27 | 13284 | 0 | 0 |
| AT&T INC | COM | 00206R102 | 562 | 13511 | SH | CALL DEFINED | 7,11 | 13511 | 0 | 0 |
| AT&T INC | COM | 00206R102 | 34985 | 841800 | SH | CALL DEFINED | 15,16,24 | 841800 | 0 | 0 |
| AT&T INC | COM | 00206R102 | 10314 | 248170 | SH | CALL DEFINED | 16,24,25 | 248170 | 0 | 0 |
| AT&T INC | COM | 00206R102 | 41834 | 1006600 | SH | PUT DEFINED | 15,16,24 | 1006600 | 0 | 0 |
| AT&T INC | COM | 00206R102 | 9521 | 229100 | SH | PUT DEFINED | 16,24,25 | 229100 | 0 | 0 |
| ATMI INC | COM | 00207R101 | 252 | 7805 | SH | DEFINED | 30 | 7805 | 0 | 0 |
| ATMI INC | COM | 00207R101 | 159 | 4927 | SH | DEFINED | 16,24,25 | 3135 | 0 | 1792 |
| ATP OIL & GAS CORP | COM | 00208108 | 741 | 14670 | SH | DEFINED | 16,24,25 | 14230 | 0 | 440 |
| AU OPTRONICS CORP | SPONSORED | 002255107 | 115 | 5982 | SH | DEFINED | 30 | 5982 | 0 | 0 |
| AU OPTRONICS CORP | SPONSORED | 002255107 | 133 | 6933 | SH | DEFINED | 7,11 | 0 | 0 | 6933 |
| AU OPTRONICS CORP | SPONSORED | 002255107 | 447 | 23273 | SH | DEFINED | 15,16,24 | 23273 | 0 | 0 |
| AU OPTRONICS CORP | SPONSORED | 002255107 | 4574 | 238229 | SH | DEFINED | 16,24,25 | 213267 | 0 | 24962 |
| AU OPTRONICS CORP | SPONSORED | 002255107 | 574 | 29900 | SH | CALL DEFINED | 15,16,24 | 29900 | 0 | 0 |
| AU OPTRONICS CORP | SPONSORED | 002255107 | 1152 | 60000 | SH | CALL DEFINED | 16,24,25 | 60000 | 0 | 0 |
| AU OPTRONICS CORP | SPONSORED | 002255107 | 1910 | 99500 | SH | PUT DEFINED | 15,16,24 | 99500 | 0 | 0 |
| AVI BIOPHARMA INC | COM | 002346104 | 24 | 17280 | SH | DEFINED | 15,16,24 | 17280 | 0 | 0 |
| AVI BIOPHARMA INC | COM | 002346104 | 5 | 3261 | SH | DEFINED | 16,24,25 | 3261 | 0 | 0 |
| AVI BIOPHARMA INC | COM | 002346104 | 16 | 11400 | SH | CALL DEFINED | 15,16,24 | 11400 | 0 | 0 |
| AVI BIOPHARMA INC | COM | 002346104 | 33 | 23300 | SH | PUT DEFINED | 15,16,24 | 23300 | 0 | 0 |
| AVX CORP NEW | COM | 002444107 | 2 | 114 | SH | DEFINED | 7,11 | 114 | 0 | 0 |
| AVX CORP NEW | COM | 002444107 | 146 | 10911 | SH | DEFINED | 16,24,25 | 10651 | 0 | 260 |
| AASTROM BIOSCIENCES | COM | 002530107 | 7 | 13200 | SH | DEFINED | 16,24,25 | 12200 | 0 | 1000 |
| AARON RENTS INC | COM | 002535201 | 82 | 4280 | SH | DEFINED | 30 | 4280 | 0 | 0 |
| AARON RENTS INC | COM | 002535201 | 561 | 29138 | SH | DEFINED | 16,24,25 | 29138 | 0 | 0 |
| ABAXIS INC | COM | 002567105 | 746 | 20805 | SH | DEFINED | 16,24,25 | 17739 | 0 | 3066 |
| ABBOTT LABS | COM | 002824100 | 83 | 1482 | SH | DEFINED | 12 | 0 | 0 | 1482 |
| ABBOTT LABS | COM | 002824100 | 55 | 973 | SH | DEFINED | 3,9 | 0 | 0 | 973 |
| ABBOTT LABS | COM | 002824100 | 41963 | 747345 | SH | DEFINED | 7,11 | 443227 | 0 | 304118 |
| ABBOTT LABS | COM | 002824100 | 9813 | 174769 | SH | DEFINED | 7,11,13 | 171880 | 0 | 2889 |
| ABBOTT LABS | COM | 002824100 | 382 | 6800 | SH | DEFINED | 7,11,33 | 0 | 0 | 6800 |
| ABBOTT LABS | COM | 002824100 | 90350 | 1609088 | SH | DEFINED | 16,24,25 | 1297145 | 0 | 311943 |
| ABBOTT LABS | COM | 002824100 | 14000 | 249325 | SH | DEFINED | 32,40,41 | 249325 | 0 | 0 |
| ABBOTT LABS | COM | 002824100 | 410 | 7310 | SH | DEFINED | 5-7,11,43,44 | 195213 | 7310 | 0 |
| ABBOTT LABS | COM | 002824100 | 10961 | 195213 | SH | DEFINED | 16,19,24,26,27 | 195213 | 0 | 0 |
| ABBOTT LABS | COM | 002824100 | 12913 | 229968 | SH | CALL DEFINED | 7,11 | 229968 | 0 | 0 |
| ABBOTT LABS | COM | 002824100 | 17979 | 320200 | SH | CALL DEFINED | 15,16,24 | 320200 | 0 | 0 |
| ABBOTT LABS | COM | 002824100 | 6053 | 107800 | SH | CALL DEFINED | 16,24,25 | 107800 | 0 | 0 |
| ABBOTT LABS | COM | 002824100 | 7406 | 131900 | SH | PUT DEFINED | 15,16,24 | 131900 | 0 | 0 |
| ABBOTT LABS | COM | 002824100 | 20482 | 364768 | SH | PUT DEFINED | 16,24,25 | 364768 | 0 | 0 |
| ABERCROMBIE & FITCH | CL A | 002896207 | 1019 | 12741 | SH | DEFINED | 7,11 | 12741 | 0 | 0 |
| ABERCROMBIE & FITCH | CL A | 002896207 | 1216 | 15210 | SH | DEFINED | 7,11,13 | 15210 | 0 | 0 |
| ABERCROMBIE & FITCH | CL A | 002896207 | 153 | 1911 | SH | DEFINED | 7,11,33 | 0 | 0 | 1911 |
| ABERCROMBIE & FITCH | CL A | 002896207 | 20071 | 250977 | SH | DEFINED | 16,24,25 | 211581 | 0 | 39395 |
| ABERCROMBIE & FITCH | CL A | 002896207 | 1091 | 13644 | SH | DEFINED | 32,40,41 | 13644 | 0 | 0 |
| ABERCROMBIE & FITCH | CL A | 002896207 | 4222 | 52794 | SH | DEFINED | 16,19,24,26,27 | 52794 | 0 | 0 |
| ABERCROMBIE & FITCH | CL A | 002896207 | 26846 | 335700 | SH | CALL DEFINED | 15,16,24 | 335700 | 0 | 0 |
| ABERCROMBIE & FITCH | CL A | 002896207 | 7685 | 96100 | SH | CALL DEFINED | 16,24,25 | 96100 | 0 | 0 |
| ABERCROMBIE & FITCH | CL A | 002896207 | 27206 | 340200 | SH | PUT DEFINED | 15,16,24 | 340200 | 0 | 0 |
| ABERCROMBIE & FITCH | CL A | 002896207 | 10868 | 135900 | SH | PUT DEFINED | 16,24,25 | 135900 | 0 | 0 |
| ABERDEEN ASIA PACIFI | COM | 003009107 | 22491 | 3877755 | SH | DEFINED | 16,24,25 | 3551598 | 0 | 326156 |
| ABERDEEN AUSTRALIA E | COM | 003011103 | 5 | 299 | SH | DEFINED | 16,24 | 299 | 0 | 0 |
| ABERDEEN AUSTRALIA E | COM | 003011103 | 680 | 38444 | SH | DEFINED | 16,24,25 | 34144 | 0 | 4300 |
| ABERDEEN GLOBAL INCO | COM | 003013109 | 1406 | 118662 | SH | DEFINED | 16,24,25 | 108836 | 0 | 9826 |
| ABINGTON BANCORP INC | COM | 00350L109 | 99 | 10500 | SH | DEFINED | 16,24,25 | 1500 | 0 | 9000 |
| ABIOMED INC | COM | 003654100 | 260 | 16702 | SH | DEFINED | 16,24,25 | 10668 | 0 | 6034 |
| ABITIBIBOWATER INC | COM | 003687100 | 238 | 11544 | SH | DEFINED | 7,11 | 11440 | 0 | 104 |
| ABITIBIBOWATER INC | COM | 003687100 | 9283 | 450396 | SH | DEFINED | 16,24,25 | 413804 | 0 | 36592 |
| ABITIBIBOWATER INC | COM | 003687100 | 10806 | 524300 | SH | CALL DEFINED | 15,16,24 | 524300 | 0 | 0 |
| ABITIBIBOWATER INC | COM | 003687100 | 17479 | 848100 | SH | PUT DEFINED | 15,16,24 | 848100 | 0 | 0 |
| ABITIBIBOWATER INC | COM | 003687100 | 2885 | 140000 | SH | PUT DEFINED | 16,24,25 | 140000 | 0 | 0 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ABRAXIS BIOSCIENCE I | COM | 00383Y102 | 2 | 25 | SH | DEFINED | 7,11,13 | 25 | 0 | 0 |
| ABRAXIS BIOSCIENCE I | COM | 00383Y102 | 543 | 7900 | SH | DEFINED | 15,16,24 | 7900 | 0 | 0 |
| ABRAXIS BIOSCIENCE I | COM | 00383Y102 | 778 | 11313 | SH | DEFINED | 16,24,25 | 10849 | 0 | 464 |
| ABRAXAS PETE CORP | COM | 00383O106 | 5047 | 1307485 | SH | DEFINED | 16,24,25 | 1307485 | 0 | 0 |
| ACADIA PHARMACEUTICA | COM | 00425108 | 236 | 21314 | SH | DEFINED | 16,24,25 | 21023 | 0 | 291 |
| ACADIA RLTY TR | COM SH BEN | 004239109 | 13 | 500 | SH | DEFINED | 7,11,25 | 500 | 0 | 0 |
| ACADIA RLTY TR | COM SH BEN | 004239109 | 438 | 17106 | SH | DEFINED | 32,40,41 | 17106 | 0 | 0 |
| ACCESS NATL CORP | COM | 00437T101 | 66 | 11001 | SH | DEFINED | 16,24,25 | 9001 | 0 | 2000 |
| ACCURAY INC | COM | 00437T105 | 1047 | 68759 | SH | DEFINED | 16,24,25 | 47613 | 0 | 21146 |
| ACCURIDE CORP | COM | 00439103 | 144 | 18280 | SH | DEFINED | 16,24,25 | 12690 | 0 | 5590 |
| ACERGY S A | SPONSORED | 00443E104 | 654 | 29749 | SH | DEFINED | 16,24,25 | 29749 | 0 | 0 |
| ACI WORLDWIDE INC | COM | 004498101 | 574 | 30150 | SH | DEFINED | 7,11,13 | 29150 | 0 | 1000 |
| ACI WORLDWIDE INC | COM | 004498101 | 64 | 3382 | SH | DEFINED | 16,24,25 | 3042 | 0 | 340 |
| ACORDA THERAPEUTICS | COM | 00484M106 | 13710 | 624310 | SH | DEFINED | 16,24 | 624310 | 0 | 0 |
| ACORDA THERAPEUTICS | COM | 00484M106 | 15 | 705 | SH | DEFINED | 16,24,25 | 705 | 0 | 0 |
| ACTIVISION INC NEW | COM NEW | 00930202 | 1015 | 34180 | SH | DEFINED | 7,11 | 34180 | 0 | 0 |
| ACTIVISION INC NEW | COM NEW | 00930202 | 45 | 1505 | SH | DEFINED | 7,11,13 | 1505 | 0 | 0 |
| ACTIVISION INC NEW | COM NEW | 00930202 | 6935 | 233513 | SH | DEFINED | 16,24,25 | 217487 | 0 | 16026 |
| ACTIVISION INC NEW | COM NEW | 00930202 | 250 | 8405 | SH | DEFINED | 32,40,41 | 8405 | 0 | 0 |
| ACTIVISION INC NEW | COM NEW | 00930202 | 13323 | 448580 | SH | CALL | DEFINED | 15,16,24 | 448580 | 0 | 0 |
| ACTIVISION INC NEW | COM NEW | 00930202 | 11932 | 401759 | SH | PUT | DEFINED | 15,16,24 | 401759 | 0 | 0 |
| ACTIONS SEMICONDUCTO | ADR | 00507E107 | 374 | 91754 | SH | DEFINED | 16,24,25 | 86488 | 0 | 5266 |
| ACTUATE CORP | COM | 00508B102 | 186 | 23952 | SH | DEFINED | 16,24,25 | 20442 | 0 | 3510 |
| ACTUANT CORP | CL A NEW | 00508X203 | 309 | 9099 | SH | DEFINED | 30 | 9099 | 0 | 0 |
| ACTUANT CORP | CL A NEW | 00508X203 | 722 | 21220 | SH | DEFINED | 7,11,13 | 20070 | 0 | 1150 |
| ACTUANT CORP | CL A NEW | 00508X203 | 830 | 24394 | SH | DEFINED | 16,24,25 | 24136 | 0 | 258 |
| ACUITY BRANDS INC | COM | 00508Y102 | 176 | 3900 | SH | DEFINED | 30 | 3900 | 0 | 0 |
| ACUITY BRANDS INC | COM | 00508Y102 | 2334 | 51872 | SH | DEFINED | 7,11 | 51872 | 0 | 0 |
| ACUITY BRANDS INC | COM | 00508Y102 | 273 | 6075 | SH | DEFINED | 7,11,13 | 6075 | 0 | 0 |
| ACUITY BRANDS INC | COM | 00508Y102 | 217 | 4822 | SH | DEFINED | 16,24,25 | 4519 | 0 | 303 |
| ACXIOM CORP | COM | 005125109 | 9 | 765 | SH | DEFINED | 7,11 | 765 | 0 | 0 |
| ACXIOM CORP | COM | 005125109 | 101 | 8608 | SH | DEFINED | 16,24,25 | 8608 | 0 | 0 |
| ACXIOM CORP | COM | 005125109 | 1806 | 154000 | SH | CALL | DEFINED | 16,24,25 | 154000 | 0 | 0 |
| ADAMS EXPRESS CO | COM | 006212104 | 3195 | 226252 | SH | DEFINED | 16,24,25 | 194350 | 0 | 31902 |
| ADAMS RESPIRATORY TH | COM | 00635P107 | 975 | 16314 | SH | DEFINED | 16,24,25 | 16314 | 0 | 0 |
| ADAMS RESPIRATORY TH | COM | 00635P107 | 8785 | 147058 | SH | DEFINED | 16,19,24,26,27 | 147058 | 0 | 0 |
| ADAPTEC INC | NOTE 0.75 | 00651FAG3 | 25 | 26000 | PRN | DEFINED | 16,24,25 | 26000 | 0 | 0 |
| ADAPTEC INC | COM | 00651F108 | 1 | 316 | SH | DEFINED | 15,16,24 | 316 | 0 | 0 |
| ADAPTEC INC | COM | 00651F108 | 417 | 123251 | SH | DEFINED | 16,24,25 | 120497 | 0 | 2754 |
| ADAPTEC INC | COM | 00651F108 | 206 | 61000 | SH | CALL | DEFINED | 15,16,24 | 61000 | 0 | 0 |
| ADAPTEC INC | COM | 00651F108 | 3 | 1000 | SH | PUT | DEFINED | 15,16,24 | 1000 | 0 | 0 |
| ADMINISTAFF INC | COM | 007094105 | 471 | 16660 | SH | DEFINED | 16,24,25 | 15665 | 0 | 995 |
| ADOBE SYS INC | COM | 00724F101 | 854 | 19990 | SH | DEFINED | 30 | 19990 | 0 | 0 |
| ADOBE SYS INC | COM | 00724F101 | 6983 | 163421 | SH | DEFINED | 7,11 | 161731 | 0 | 1700 |
| ADOBE SYS INC | COM | 00724F101 | 19 | 436 | SH | DEFINED | 7,11,13 | 436 | 0 | 0 |
| ADOBE SYS INC | COM | 00724F101 | 611 | 14295 | SH | DEFINED | 7,11,13 | 0 | 0 | 14295 |
| ADOBE SYS INC | COM | 00724F101 | 124634 | 2916790 | SH | DEFINED | 16,24,25 | 2494894 | 0 | 421896 |
| ADOBE SYS INC | COM | 00724F101 | 4547 | 106414 | SH | DEFINED | 32,40,41 | 106414 | 0 | 0 |
| ADOBE SYS INC | COM | 00724F101 | 1117 | 2730 | SH | DEFINED | 5-7,11,43,44 | 0 | 2730 | 0 |
| ADOBE SYS INC | COM | 00724F101 | 5335 | 124855 | SH | CALL | DEFINED | 7,11 | 124855 | 0 | 0 |
| ADOBE SYS INC | COM | 00724F101 | 20169 | 472000 | SH | CALL | DEFINED | 15,16,24 | 472000 | 0 | 0 |
| ADOBE SYS INC | COM | 00724F101 | 28441 | 665600 | SH | CALL | DEFINED | 16,24,25 | 665600 | 0 | 0 |
| ADOBE SYS INC | COM | 00724F101 | 21374 | 500200 | SH | PUT | DEFINED | 15,16,24 | 500200 | 0 | 0 |
| ADOBE SYS INC | COM | 00724F101 | 9164 | 214455 | SH | PUT | DEFINED | 16,24,25 | 214455 | 0 | 0 |
| ADOLOR CORP | COM | 00724X102 | 86 | 18800 | SH | DEFINED | 30 | 18800 | 0 | 0 |
| ADOLOR CORP | COM | 00724X102 | 9 | 1935 | SH | DEFINED | 16,24,25 | 1935 | 0 | 0 |
| ADTRAN INC | COM | 00738A106 | 1215 | 56840 | SH | DEFINED | 7,11,13 | 56840 | 0 | 0 |
| ADTRAN INC | COM | 00738A106 | 687 | 32142 | SH | DEFINED | 16,24,25 | 31614 | 0 | 528 |
| ADTRAN INC | COM | 00738A106 | 1715 | 80200 | SH | CALL | DEFINED | 15,16,24 | 80200 | 0 | 0 |
| ADTRAN INC | COM | 00738A106 | 644 | 30100 | SH | CALL | DEFINED | 16,24,25 | 30100 | 0 | 0 |
| ADTRAN INC | COM | 00738A106 | 1969 | 92100 | SH | PUT | DEFINED | 15,16,24 | 92100 | 0 | 0 |
| ADTRAN INC | COM | 00738A106 | 793 | 37100 | SH | PUT | DEFINED | 16,24,25 | 37100 | 0 | 0 |
| ADVANCE AUTO PARTS I | COM | 00751Y106 | 3179 | 83690 | SH | DEFINED | 7,11 | 83690 | 0 | 0 |
| ADVANCE AUTO PARTS I | COM | 00751Y106 | 5038 | 132619 | SH | DEFINED | 16,24,25 | 125899 | 0 | 6719 |
| ADVANCE AUTO PARTS I | COM | 00751Y106 | 148 | 3889 | SH | DEFINED | 32,40,41 | 3889 | 0 | 0 |
| ADVANCE AUTO PARTS I | COM | 00751Y106 | 2610 | 68702 | SH | CALL | DEFINED | 16,24,25 | 68702 | 0 | 0 |
| ADVANCE AUTO PARTS I | COM | 00751Y106 | 2610 | 68702 | SH | PUT | DEFINED | 7,11 | 68702 | 0 | 0 |
| ADVANCED TECHNOLOGY | UNIT 06/11 | 00756202 | 800 | 100000 | SH | DEFINED | 16,24,25 | 100000 | 0 | 0 |
| ADVANCED SEMICONDUCT | SPONSORED | 00756M404 | 86 | 17218 | SH | DEFINED | 30 | 17218 | 0 | 0 |
| ADVANCED SEMICONDUCT | SPONSORED | 00756M404 | 218 | 43478 | SH | DEFINED | 16,24,25 | 42478 | 0 | 1000 |
| ADVANCED SEMICONDUCT | SPONSORED | 00756M404 | 24 | 4730 | SH | DEFINED | 16,17,22-24 | 4730 | 0 | 0 |
| ADVANCED SEMICONDUCT | SPONSORED | 00756M404 | 186 | 37000 | SH | DEFINED | 16,19,24,26,27 | 37000 | 0 | 0 |
| ADVANTAGE ENERGY INC | TR UNIT | 00762L101 | 975 | 110628 | SH | DEFINED | 16,24,25 | 59867 | 0 | 50761 |
| ADVANCED MEDICAL OPT | NOTE 2.50 | 00763MAG3 | 11 | 12000 | PRN | DEFINED | 16,24,25 | 12000 | 0 | 0 |
| ADVANCED MEDICAL OPT | NOTE 1.37 | 00763MAJ7 | 2166 | 2500000 | PRN | DEFINED | 31,45 | 2500000 | 0 | 0 |
| ADVANCED MEDICAL OPT | NOTE 3.25 | 00763MAK4 | 9450 | 12000000 | PRN | DEFINED | 31,45 | 12000000 | 0 | 0 |
| ADVANCED MEDICAL OPT | NOTE 3.25 | 00763MAK4 | 20 | 25000 | PRN | DEFINED | 16,24,25 | 25000 | 0 | 0 |
| ADVANCED MEDICAL OPT | COM | 00763M108 | 18 | 718 | SH | DEFINED | 7,11 | 718 | 0 | 0 |
| ADVANCED MEDICAL OPT | COM | 00763M108 | 542 | 22082 | SH | DEFINED | 15,16,24 | 22082 | 0 | 0 |
| ADVANCED MEDICAL OPT | COM | 00763M108 | 765 | 31179 | SH | DEFINED | 16,24,25 | 30838 | 0 | 341 |
| ADVANCED MEDICAL OPT | COM | 00763M108 | 5524 | 225200 | SH | CALL | DEFINED | 16,24,25 | 225200 | 0 | 0 |
| ADVANCED MEDICAL OPT | COM | 00763M108 | 245 | 10000 | SH | CALL | DEFINED | 16,24,25 | 10000 | 0 | 0 |
| ADVANCED MEDICAL OPT | COM | 00763M108 | 3069 | 125100 | SH | PUT | DEFINED | 15,16,24 | 125100 | 0 | 0 |
| ADVENT CLAY GBL CONV | BENE I | 00763910 | 1303 | 85145 | SH | DEFINED | 16,24,25 | 83433 | 0 | 1712 |
| ADVENT CLAYMORE CV S | COM | 00764C109 | 2137 | 91903 | SH | DEFINED | 16,24,25 | 87868 | 0 | 4034 |
| ADVENT CLAYMORE CV S | COM | 00764C109 | 81 | 3500 | SH | DEFINED | 16,19,24,26,27 | 3500 | 0 | 0 |
| ADVENT CLAYMORE ENH | COM | 00765E104 | 191 | 11974 | SH | DEFINED | 16,24,25 | 10097 | 0 | 1877 |
| AECOM TECHNOLOGY COR | COM | 00766T100 | 2074 | 72585 | SH | DEFINED | 16,24,25 | 68728 | 0 | 3857 |
| AEROPOSTALE | COM | 007865108 | 98 | 3700 | SH | DEFINED | 30 | 3700 | 0 | 0 |
| AEROPOSTALE | COM | 007865108 | 294 | 11100 | SH | DEFINED | 3,9 | 0 | 0 | 11100 |
| AEROPOSTALE | COM | 007865108 | 4255 | 160583 | SH | DEFINED | 7,11 | 160271 | 0 | 312 |
| AEROPOSTALE | COM | 007865108 | 921 | 34761 | SH | DEFINED | 15,16,24 | 34761 | 0 | 0 |
| AEROPOSTALE | COM | 007865108 | 4326 | 163263 | SH | DEFINED | 16,24,25 | 153399 | 0 | 9864 |
| AEROPOSTALE | COM | 007865108 | 1248 | 47100 | SH | CALL | DEFINED | 15,16,24 | 47100 | 0 | 0 |
| AEROPOSTALE | COM | 007865108 | 2417 | 91200 | SH | PUT | DEFINED | 15,16,24 | 91200 | 0 | 0 |
| ADVANCED MICRO DEVIC | NOTE 6.00 | 007903AL1 | 27595 | 38798000 | PRN | DEFINED | 16,24,25 | 38798000 | 0 | 0 |
| ADVANCED MICRO DEVIC | NOTE 5.75 | 007903AN7 | 15900 | 20000000 | PRN | DEFINED | 16,24,25 | 20000000 | 0 | 0 |
| ADVANCED MICRO DEVIC | COM | 007903107 | 28017 | 3735569 | SH | DEFINED | 7,11 | 3732841 | 0 | 2728 |
| ADVANCED MICRO DEVIC | COM | 007903107 | 22 | 2921 | SH | DEFINED | 7,11,13 | 2921 | 0 | 0 |
| ADVANCED MICRO DEVIC | COM | 007903107 | 1981 | 264159 | SH | DEFINED | 15,16,24 | 264159 | 0 | 0 |
| ADVANCED MICRO DEVIC | COM | 007903107 | 10271 | 1369532 | SH | DEFINED | 16,24,25 | 1320988 | 0 | 48544 |
| ADVANCED MICRO DEVIC | COM | 007903107 | 130 | 17363 | SH | DEFINED | 32,40,41 | 17363 | 0 | 0 |
| ADVANCED MICRO DEVIC | COM | 007903107 | 1894 | 252480 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 252480 | 0 | 0 |
| ADVANCED MICRO DEVIC | COM | 007903107 | 4582 | 610957 | SH | CALL | DEFINED | 7,11 | 610957 | 0 | 0 |
| ADVANCED MICRO DEVIC | COM | 007903107 | 13532 | 1804300 | SH | CALL | DEFINED | 15,16,24 | 1804300 | 0 | 0 |
| ADVANCED MICRO DEVIC | COM | 007903107 | 2831 | 377500 | SH | CALL | DEFINED | 16,24,25 | 377500 | 0 | 0 |
| ADVANCED MICRO DEVIC | COM | 007903107 | 19415 | 2588600 | SH | PUT | DEFINED | 15,16,24 | 2588600 | 0 | 0 |
| ADVANCED MICRO DEVIC | COM | 007903107 | 20321 | 2709457 | SH | PUT | DEFINED | 16,24,25 | 2709457 | 0 | 0 |
| AEGON N V | ORD AMER R | 007924103 | 270 | 15410 | SH | DEFINED | 30 | 15410 | 0 | 0 |
| AEGON N V | ORD AMER R | 007924103 | 2 | 105 | SH | DEFINED | 7,11 | 0 | 0 | 105 |
| AEGON N V | ORD AMER R | 007924103 | 4357 | 248518 | SH | DEFINED | 16,24,25 | 213370 | 0 | 35147 |
| ADVANCED ENVIRON REC | CL A | 007947104 | 10 | 14249 | SH | DEFINED | 16,24,25 | 14000 | 0 | 249 |
| ADVENT SOFTWARE INC | COM | 007974108 | 267 | 4935 | SH | DEFINED | 7,11 | 4845 | 0 | 90 |
| ADVENT SOFTWARE INC | COM | 007974108 | 78 | 1435 | SH | DEFINED | 7,11,33 | 0 | 0 | 1435 |

| Name | Class | CUSIP | Qty | Value | Unit | Type | Code | Val2 | Val3 | Val4 |
|---|---|---|---|---|---|---|---|---|---|---|
| ADVENT SOFTWARE INC | COM | 007974108 | 34497 | 637657 | SH | DEFINED | 16,24,25 | 603724 | 0 | 33933 |
| AEROVIRONMENT INC | COM | 008073108 | 407 | 16816 | SH | DEFINED | 16,24,25 | 6625 | 0 | 10191 |
| AES TR III | PFD CV 6.7 | 00808N202 | 2534 | 54621 | SH | DEFINED | 16,24,25 | 30646 | 0 | 23975 |
| AETNA INC NEW | COM | 00817Y108 | 911 | 15775 | SH | DEFINED | 12 | 0 | 0 | 15775 |
| AETNA INC NEW | COM | 00817Y108 | 658 | 11400 | SH | DEFINED | 3,9 | 0 | 0 | 11400 |
| AETNA INC NEW | COM | 00817Y108 | 28232 | 489033 | SH | DEFINED | 7,11 | 139361 | 500 | 349172 |
| AETNA INC NEW | COM | 00817Y108 | 1839 | 31849 | SH | DEFINED | 7,11,13 | 7768 | 0 | 24081 |
| AETNA INC NEW | COM | 00817Y108 | 72 | 1248 | SH | DEFINED | 7,11,33 | 0 | 0 | 1248 |
| AETNA INC NEW | COM | 00817Y108 | 27942 | 484008 | SH | DEFINED | 16,24,25 | 433011 | 0 | 50996 |
| AETNA INC NEW | COM | 00817Y108 | 1294 | 22419 | SH | DEFINED | 32,40,41 | 22419 | 0 | 0 |
| AETNA INC NEW | COM | 00817Y108 | 1674 | 29000 | SH | DEFINED | 16,19,24,26,27 | 29000 | 0 | 0 |
| AETNA INC NEW | COM | 00817Y108 | 3458 | 59895 | SH | CALL DEFINED | 7,11 | 59895 | 0 | 0 |
| AETNA INC NEW | COM | 00817Y108 | 31093 | 538600 | SH | CALL DEFINED | 15,16,24 | 538600 | 0 | 0 |
| AETNA INC NEW | COM | 00817Y108 | 21620 | 374500 | SH | CALL DEFINED | 16,24,25 | 374500 | 0 | 0 |
| AETNA INC NEW | COM | 00817Y108 | 17723 | 307000 | SH | PUT DEFINED | 15,16,24 | 307000 | 0 | 0 |
| AETNA INC NEW | COM | 00817Y108 | 31965 | 553695 | SH | PUT DEFINED | 16,24,25 | 553695 | 0 | 0 |
| AFFILIATED COMPUTER | CL A | 008190100 | 402 | 8907 | SH | DEFINED | 7,11 | 8907 | 0 | 0 |
| AFFILIATED COMPUTER | CL A | 008190100 | 125 | 2770 | SH | DEFINED | 7,11,13 | 2770 | 0 | 0 |
| AFFILIATED COMPUTER | CL A | 008190100 | 1663 | 36877 | SH | DEFINED | 15,16,24 | 36877 | 0 | 0 |
| AFFILIATED COMPUTER | CL A | 008190100 | 2666 | 59102 | SH | DEFINED | 16,24,25 | 56545 | 0 | 2557 |
| AFFILIATED COMPUTER | CL A | 008190100 | 2653 | 58827 | SH | DEFINED | 32,40,41 | 58827 | 0 | 0 |
| AFFILIATED COMPUTER | CL A | 008190100 | 3567 | 79100 | SH | CALL DEFINED | 15,16,24 | 79100 | 0 | 0 |
| AFFILIATED COMPUTER | CL A | 008190100 | 7428 | 164700 | SH | PUT DEFINED | 16,24,25 | 164700 | 0 | 0 |
| AFFILIATED MANAGERS | DBCV | 00825 2A88 | 76683 | 26185000 | PRN | DEFINED | 16,24,25 | 26185000 | 0 | 0 |
| AFFILIATED MANAGERS | COM | 008252108 | 150 | 1275 | SH | DEFINED | 30 | 1275 | 0 | 0 |
| AFFILIATED MANAGERS | COM | 008252108 | 2151 | 18316 | SH | DEFINED | 7,11 | 18316 | 0 | 0 |
| AFFILIATED MANAGERS | COM | 008252108 | 2629 | 22382 | SH | DEFINED | 16,24,25 | 18906 | 0 | 3476 |
| AFFILIATED MANAGERS | COM | 008252108 | 2702 | 23000 | SH | CALL DEFINED | 16,24,25 | 23000 | 0 | 0 |
| AFFYMETRIX INC | COM | 00826T108 | 37 | 1604 | SH | DEFINED | 7,11 | 1604 | 0 | 0 |
| AFFYMETRIX INC | COM | 00826T108 | 537 | 23188 | SH | DEFINED | 16,24,25 | 21173 | 0 | 2015 |
| AFFYMETRIX INC | COM | 00826T108 | 1854 | 80100 | SH | CALL DEFINED | 15,16,24 | 80100 | 0 | 0 |
| AFFYMETRIX INC | COM | 00826T108 | 393 | 17000 | SH | CALL DEFINED | 16,24,25 | 17000 | 0 | 0 |
| AFFYMETRIX INC | COM | 00826T108 | 2721 | 117600 | SH | PUT DEFINED | 15,16,24 | 117600 | 0 | 0 |
| AFFYMETRIX INC | COM | 00826T108 | 1099 | 47500 | SH | PUT DEFINED | 16,24,25 | 47500 | 0 | 0 |
| AFTERMARKET TECHNOLO | COM | 008318107 | 406 | 14881 | SH | DEFINED | 16,24,25 | 14881 | 0 | 0 |
| AGERE SYS INC | NOTE 6.50 | 00845VAA8 | 4103 | 4067000 | PRN | DEFINED | 16,24,25 | 4067000 | 0 | 0 |
| AGILENT TECHNOLOGIES | COM | 00846U101 | 1784 | 48558 | SH | DEFINED | 7,11 | 40677 | 0 | 7881 |
| AGILENT TECHNOLOGIES | COM | 00846U101 | 112 | 3040 | SH | DEFINED | 7,11,13 | 3040 | 0 | 0 |
| AGILENT TECHNOLOGIES | COM | 00846U101 | 7 | 200 | SH | DEFINED | 7,11,33 | 0 | 0 | 200 |
| AGILENT TECHNOLOGIES | COM | 00846U101 | 22306 | 607142 | SH | DEFINED | 16,24,25 | 524993 | 0 | 82149 |
| AGILENT TECHNOLOGIES | COM | 00846U101 | 4586 | 124800 | SH | DEFINED | 32,40,41 | 124830 | 0 | 0 |
| AGILENT TECHNOLOGIES | COM | 00846U101 | 3869 | 105300 | SH | CALL DEFINED | 15,16,24 | 105300 | 0 | 0 |
| AGILENT TECHNOLOGIES | COM | 00846U101 | 2201 | 59900 | SH | CALL DEFINED | 16,24,25 | 59900 | 0 | 0 |
| AGILENT TECHNOLOGIES | COM | 00846U101 | 5537 | 150700 | SH | PUT DEFINED | 15,16,24 | 150700 | 0 | 0 |
| AGILENT TECHNOLOGIES | COM | 00846U101 | 1554 | 42300 | SH | PUT DEFINED | 16,24,25 | 42300 | 0 | 0 |
| AGILYSYS INC | COM | 00847J105 | 172 | 11400 | SH | DEFINED | 16,24,25 | 11300 | 0 | 100 |
| AGNICO EAGLE MINES L | COM | 008474108 | 71 | 1300 | SH | DEFINED | 30 | 1300 | 0 | 0 |
| AGNICO EAGLE MINES L | COM | 008474108 | 1691 | 30951 | SH | DEFINED | 15,16,24 | 30951 | 0 | 0 |
| AGNICO EAGLE MINES L | COM | 008474108 | 7668 | 140736 | SH | DEFINED | 16,24,25 | 109991 | 0 | 30745 |
| AGNICO EAGLE MINES L | COM | 008474108 | 212 | 3881 | SH | DEFINED | 32,40,41 | 3881 | 0 | 0 |
| AGNICO EAGLE MINES L | COM | 008474108 | 90 | 1654 | SH | DEFINED | 4,6,7,11 | 1654 | 0 | 0 |
| AGNICO EAGLE MINES L | COM | 008474108 | 87 | 1600 | SH | DEFINED | 5-7,11,43,44 | 0 | 1600 | 0 |
| AGNICO EAGLE MINES L | COM | 008474108 | 10440 | 191100 | SH | CALL DEFINED | 15,16,24 | 191100 | 0 | 0 |
| AGNICO EAGLE MINES L | COM | 008474108 | 16 | 300 | SH | CALL DEFINED | 16,24,25 | 300 | 0 | 0 |
| AGNICO EAGLE MINES L | COM | 008474108 | 12865 | 235500 | SH | PUT DEFINED | 15,16,24 | 235500 | 0 | 0 |
| AGNICO EAGLE MINES L | COM | 008474108 | 2732 | 50000 | SH | PUT DEFINED | 16,24,25 | 50000 | 0 | 0 |
| AGREE REALTY CORP | COM | 008492100 | 204 | 6775 | SH | DEFINED | 16,24,25 | 4475 | 0 | 2300 |
| AGREE REALTY CORP | COM | 008492100 | 118 | 3935 | SH | DEFINED | 32,40,41 | 3935 | 0 | 0 |
| AGRIUM INC | COM | 008916108 | 404 | 5600 | SH | DEFINED | 30 | 5600 | 0 | 0 |
| AGRIUM INC | COM | 008916108 | 1394 | 19300 | SH | DEFINED | 3,9 | 0 | 0 | 19300 |
| AGRIUM INC | COM | 008916108 | 509 | 7050 | SH | DEFINED | 7,11,13 | 7050 | 0 | 0 |
| AGRIUM INC | COM | 008916108 | 7 | 100 | SH | DEFINED | 7,11,33 | 0 | 0 | 100 |
| AGRIUM INC | COM | 008916108 | 25220 | 349258 | SH | DEFINED | 16,24,25 | 313689 | 0 | 35569 |
| AGRIUM INC | COM | 008916108 | 9443 | 130776 | SH | DEFINED | 32,40,41 | 130776 | 0 | 0 |
| AGRIUM INC | COM | 008916108 | 2733 | 37850 | SH | DEFINED | 4,6,7,11 | 37850 | 0 | 0 |
| AIR FRANCE KLM | SPONSORED | 009119108 | 26 | 755 | SH | DEFINED | 7,11 | 0 | 0 | 755 |
| AIR FRANCE KLM | SPONSORED | 009119108 | 833 | 23887 | SH | DEFINED | 16,24,25 | 16306 | 0 | 7581 |
| AIR METHODS CORP | COM PAR $. | 009128307 | 1051 | 21160 | SH | DEFINED | 16,24,25 | 18652 | 0 | 2508 |
| AIR PRODS & CHEMS IN | COM | 009158106 | 1465 | 14850 | SH | DEFINED | 12 | 0 | 0 | 14850 |
| AIR PRODS & CHEMS IN | COM | 009158106 | 1932 | 19588 | SH | DEFINED | 3,9 | 0 | 0 | 19588 |
| AIR PRODS & CHEMS IN | COM | 009158106 | 11638 | 118001 | SH | DEFINED | 7,11 | 18554 | 0 | 99447 |
| AIR PRODS & CHEMS IN | COM | 009158106 | 242 | 2454 | SH | DEFINED | 7,11,13 | 1654 | 0 | 800 |
| AIR PRODS & CHEMS IN | COM | 009158106 | 36 | 360 | SH | DEFINED | 7,11,33 | 0 | 0 | 360 |
| AIR PRODS & CHEMS IN | COM | 009158106 | 16712 | 169442 | SH | DEFINED | 16,24,25 | 143135 | 0 | 26306 |
| AIR PRODS & CHEMS IN | COM | 009158106 | 772 | 7826 | SH | DEFINED | 32,40,41 | 7826 | 0 | 0 |
| AIR T INC | COM | 009207101 | 619 | 68390 | SH | DEFINED | 16,24,25 | 57890 | 0 | 10500 |
| AIRGAS INC | COM | 009363102 | 98 | 1875 | SH | DEFINED | 30 | 1875 | 0 | 0 |
| AIRGAS INC | COM | 009363102 | 46 | 889 | SH | DEFINED | 7,11 | 889 | 0 | 0 |
| AIRGAS INC | COM | 009363102 | 5385 | 103331 | SH | DEFINED | 16,24,25 | 84896 | 0 | 18435 |
| AIRNET SYS INC | COM | 009417106 | 290 | 155050 | SH | DEFINED | 16,24,25 | 155000 | 0 | 50 |
| AIRTRAN HLDGS INC | COM | 00949P108 | 79 | 11000 | SH | DEFINED | 30 | 11000 | 0 | 0 |
| AIRTRAN HLDGS INC | COM | 00949P108 | 366 | 51050 | SH | DEFINED | 7,11,13 | 51050 | 0 | 0 |
| AIRTRAN HLDGS INC | COM | 00949P108 | 2507 | 350079 | SH | DEFINED | 16,24,25 | 238169 | 0 | 111910 |
| AIRTRAN HLDGS INC | COM | 00949P108 | 447 | 62400 | SH | CALL DEFINED | 16,24,25 | 62400 | 0 | 0 |
| AIRTRAN HLDGS INC | COM | 00949P108 | 15 | 2100 | SH | CALL DEFINED | 16,24,25 | 2100 | 0 | 0 |
| AIRTRAN HLDGS INC | COM | 00949P108 | 128 | 17900 | SH | PUT DEFINED | 15,16,24 | 17900 | 0 | 0 |
| AIRTRAN HLDGS INC | COM | 00949P108 | 36 | 5000 | SH | PUT DEFINED | 16,24,25 | 5000 | 0 | 0 |
| AKAMAI TECHNOLOGIES | NOTE 1.00 | 00971TAE1 | 300 | 130000 | PRN | DEFINED | 16,24,25 | 130000 | 0 | 0 |
| AKAMAI TECHNOLOGIES | COM | 00971T101 | 833 | 24082 | SH | DEFINED | 7,11 | 24082 | 0 | 0 |
| AKAMAI TECHNOLOGIES | COM | 00971T101 | 103 | 2968 | SH | DEFINED | 16,24 | 2968 | 0 | 0 |
| AKAMAI TECHNOLOGIES | COM | 00971T101 | 495 | 14315 | SH | DEFINED | 15,16,24 | 14315 | 0 | 0 |
| AKAMAI TECHNOLOGIES | COM | 00971T101 | 10905 | 315167 | SH | DEFINED | 16,24,25 | 230191 | 0 | 84976 |
| AKAMAI TECHNOLOGIES | COM | 00971T101 | 173 | 4986 | SH | DEFINED | 32,40,41 | 4986 | 0 | 0 |
| AKAMAI TECHNOLOGIES | COM | 00971T101 | 22258 | 643300 | SH | CALL DEFINED | 15,16,24 | 643300 | 0 | 0 |
| AKAMAI TECHNOLOGIES | COM | 00971T101 | 6557 | 189500 | SH | CALL DEFINED | 16,24,25 | 189500 | 0 | 0 |
| AKAMAI TECHNOLOGIES | COM | 00971T101 | 23180 | 670400 | SH | PUT DEFINED | 15,16,24 | 670400 | 0 | 0 |
| AKAMAI TECHNOLOGIES | COM | 00971T101 | 1339 | 38700 | SH | PUT DEFINED | 16,24,25 | 38700 | 0 | 0 |
| ALABAMA NATL BANCORP | COM | 010317105 | 4 | 52 | SH | DEFINED | 7,11 | 0 | 0 | 52 |
| ALABAMA NATL BANCORP | COM | 010317105 | 4 | 50 | SH | DEFINED | 7,11,13 | 0 | 0 | 50 |
| ALABAMA NATL BANCORP | COM | 010317105 | 2754 | 35394 | SH | DEFINED | 16,24,25 | 35394 | 0 | 0 |
| ALASKA AIR GROUP INC | COM | 011659109 | 9 | 346 | SH | DEFINED | 7,11 | 0 | 0 | 346 |
| ALASKA AIR GROUP INC | COM | 011659109 | 8 | 330 | SH | DEFINED | 7,11,13 | 330 | 0 | 0 |
| ALASKA AIR GROUP INC | COM | 011659109 | 1302 | 52050 | SH | DEFINED | 16,24,25 | 48079 | 0 | 3971 |
| ALASKA COMMUNICATION | COM | 01167P101 | 1409 | 93944 | SH | DEFINED | 16,24,25 | 74505 | 0 | 19439 |
| ALBANY MOLECULAR RES | COM | 012423109 | 315 | 21899 | SH | DEFINED | 16,24,25 | 1054 | 0 | 20845 |
| ALBEMARLE CORP | COM | 012653101 | 2280 | 55282 | SH | DEFINED | 15,16,24 | 55282 | 0 | 0 |
| ALBEMARLE CORP | COM | 012653101 | 2152 | 52171 | SH | DEFINED | 16,24,25 | 50381 | 0 | 1790 |
| ALBEMARLE CORP | COM | 012653101 | 8 | 200 | SH | DEFINED | 32,40,41 | 200 | 0 | 0 |
| ALBERTO CULVER CO NE | COM | 013078100 | 119 | 4865 | SH | DEFINED | 7,11 | 4865 | 0 | 0 |
| ALBERTO CULVER CO NE | COM | 013078100 | 289 | 11760 | SH | DEFINED | 7,11,13 | 11760 | 0 | 0 |
| ALBERTO CULVER CO NE | COM | 013078100 | 2212 | 90145 | SH | DEFINED | 16,24,25 | 69964 | 0 | 20181 |
| ALBERTO CULVER CO NE | COM | 013078100 | 25 | 1000 | SH | DEFINED | 32,40,41 | 1000 | 0 | 0 |
| ALCOA INC | COM | 013817101 | 376 | 10300 | SH | DEFINED | 30 | 10300 | 0 | 0 |
| ALCOA INC | COM | 013817101 | 3590 | 98216 | SH | DEFINED | 3,9 | 0 | 0 | 98216 |

| Issuer | Class | CUSIP | Value | Shares | SH | Type | Mgrs | Shares | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ALCOA INC | COM | 013817101 | 52017 | 1423171 | SH | DEFINED | 7,11 | 1200289 | 0 | 222882 |
| ALCOA INC | COM | 013817101 | 9348 | 255760 | SH | DEFINED | 16,24 | 255760 | 0 | 0 |
| ALCOA INC | COM | 013817101 | 2758 | 75447 | SH | DEFINED | 7,11,13 | 74532 | 0 | 915 |
| ALCOA INC | COM | 013817101 | 288 | 7875 | SH | DEFINED | 7,11,33 | 0 | 0 | 7875 |
| ALCOA INC | COM | 013817101 | 2969 | 81235 | SH | DEFINED | 15,16,24 | 81235 | 0 | 0 |
| ALCOA INC | COM | 013817101 | 112547 | 3079257 | SH | DEFINED | 16,24,25 | 2665911 | 0 | 413345 |
| ALCOA INC | COM | 013817101 | 1064 | 29112 | SH | DEFINED | 32,40,41 | 29112 | 0 | 0 |
| ALCOA INC | COM | 013817101 | 6932 | 189670 | SH | DEFINED | 5-7,11,43,44 | 0 | 189670 | 0 |
| ALCOA INC | COM | 013817101 | 5229 | 143055 | SH | DEFINED | 16,19,24,26,27 | 143055 | 0 | 0 |
| ALCOA INC | COM | 013817101 | 55929 | 1530200 | SH | CALL | DEFINED | 15,16,24 | 1530200 | 0 | 0 |
| ALCOA INC | COM | 013817101 | 23527 | 643700 | SH | CALL | DEFINED | 16,24,25 | 643700 | 0 | 0 |
| ALCOA INC | COM | 013817101 | 57906 | 1584300 | SH | PUT | DEFINED | 15,16,24 | 1584300 | 0 | 0 |
| ALCOA INC | COM | 013817101 | 16714 | 457300 | SH | PUT | DEFINED | 16,24,25 | 457300 | 0 | 0 |
| ALCATEL-LUCENT | SPONSORED | 013904305 | 2 | 273 | SH | DEFINED | 7,11 | 0 | 0 | 273 |
| ALCATEL-LUCENT | SPONSORED | 013904305 | 0 | 25 | SH | DEFINED | 7,11,13 | 25 | 0 | 0 |
| ALCATEL-LUCENT | SPONSORED | 013904305 | 557 | 76042 | SH | DEFINED | 15,16,24 | 76042 | 0 | 0 |
| ALCATEL-LUCENT | SPONSORED | 013904305 | 9115 | 1245231 | SH | DEFINED | 16,24,25 | 1096466 | 0 | 148765 |
| ALCATEL-LUCENT | SPONSORED | 013904305 | 0 | 29 | SH | DEFINED | 5-7,11,43,44 | 0 | 29 | 0 |
| ALCATEL-LUCENT | SPONSORED | 013904305 | 2186 | 298622 | SH | DEFINED | 16,19,24,26,27 | 298622 | 0 | 0 |
| ALCATEL-LUCENT | SPONSORED | 013904305 | 36 | 4860 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 4860 | 0 | 0 |
| ALCATEL-LUCENT | SPONSORED | 013904305 | 470 | 64200 | SH | CALL | DEFINED | 15,16,24 | 64200 | 0 | 0 |
| ALCATEL-LUCENT | SPONSORED | 013904305 | 367 | 50200 | SH | CALL | DEFINED | 16,24,25 | 50100 | 0 | 100 |
| ALCATEL-LUCENT | SPONSORED | 013904305 | 865 | 118200 | SH | PUT | DEFINED | 15,16,24 | 118200 | 0 | 0 |
| ALEXANDER & BALDWIN | COM | 014482103 | 1990 | 38520 | SH | DEFINED | 16,24,25 | 30851 | 0 | 7669 |
| ALESCO FINL INC | COM | 01448S106 | 281 | 85590 | SH | DEFINED | 16,24,25 | 71690 | 0 | 13900 |
| ALEXANDERS INC | COM | 014752109 | 368 | 1043 | SH | DEFINED | 16,24,25 | 1004 | 0 | 39 |
| ALEXANDERS INC | COM | 014752109 | 344 | 974 | SH | DEFINED | 32,40,41 | 974 | 0 | 0 |
| ALEXANDRIA REAL ESTA | COM | 015271109 | 508 | 5000 | SH | DEFINED | 7,11 | 5000 | 0 | 0 |
| ALEXANDRIA REAL ESTA | COM | 015271109 | 10335 | 101650 | SH | DEFINED | 14,31 | 101650 | 0 | 0 |
| ALEXANDRIA REAL ESTA | COM | 015271109 | 25 | 250 | SH | DEFINED | 7,11,33 | 0 | 0 | 250 |
| ALEXANDRIA REAL ESTA | COM | 015271109 | 3850 | 37867 | SH | DEFINED | 16,24,25 | 36374 | 0 | 1493 |
| ALEXANDRIA REAL ESTA | COM | 015271109 | 17512 | 172242 | SH | DEFINED | 32,40,41 | 172242 | 0 | 0 |
| ALEXION PHARMACEUTIC | COM | 015351109 | 405 | 5400 | SH | DEFINED | 30 | 5400 | 0 | 0 |
| ALEXION PHARMACEUTIC | COM | 015351109 | 5558 | 74077 | SH | DEFINED | 7,11 | 74077 | 0 | 0 |
| ALEXION PHARMACEUTIC | COM | 015351109 | 3823 | 50958 | SH | DEFINED | 15,16,24 | 50958 | 0 | 0 |
| ALEXION PHARMACEUTIC | COM | 015351109 | 1557 | 20747 | SH | DEFINED | 16,24,25 | 20667 | 0 | 80 |
| ALEXION PHARMACEUTIC | COM | 015351109 | 4577 | 61000 | SH | DEFINED | 32,40,41 | 61000 | 0 | 0 |
| ALEXION PHARMACEUTIC | COM | 015351109 | 13670 | 182200 | SH | CALL | DEFINED | 15,16,24 | 182200 | 0 | 0 |
| ALEXION PHARMACEUTIC | COM | 015351109 | 15882 | 211677 | SH | CALL | DEFINED | 16,24,25 | 211677 | 0 | 0 |
| ALEXION PHARMACEUTIC | COM | 015351109 | 5558 | 74077 | SH | PUT | DEFINED | 7,11 | 74077 | 0 | 0 |
| ALEXION PHARMACEUTIC | COM | 015351109 | 21751 | 289900 | SH | PUT | DEFINED | 15,16,24 | 289900 | 0 | 0 |
| ALEXION PHARMACEUTIC | COM | 015351109 | 713 | 9500 | SH | PUT | DEFINED | 16,24,25 | 9500 | 0 | 0 |
| ALFA CORP | COM | 015385107 | 1137 | 52488 | SH | DEFINED | 31,45 | 52488 | 0 | 0 |
| ALFA CORP | COM | 015385107 | 43 | 2000 | SH | DEFINED | 16,24,25 | 2000 | 0 | 0 |
| ALIGN TECHNOLOGY INC | COM | 016255101 | 200 | 12000 | SH | DEFINED | 30 | 12000 | 0 | 0 |
| ALIGN TECHNOLOGY INC | COM | 016255101 | 17 | 1000 | SH | DEFINED | 16,24,25 | 0 | 0 | 1000 |
| ALKERMES INC | COM | 01642T108 | 15 | 960 | SH | DEFINED | 7,11,33 | 0 | 0 | 960 |
| ALKERMES INC | COM | 01642T108 | 9610 | 616401 | SH | DEFINED | 16,24,25 | 543364 | 0 | 73037 |
| ALKERMES INC | COM | 01642T108 | 1939 | 124400 | SH | CALL | DEFINED | 16,24,25 | 124400 | 0 | 0 |
| ALKERMES INC | COM | 01642T108 | 2049 | 131400 | SH | PUT | DEFINED | 15,16,24 | 131400 | 0 | 0 |
| ALLEGHANY CORP DEL | COM | 017175100 | 4357 | 10838 | SH | DEFINED | 16,24,25 | 5645 | 0 | 5193 |
| ALLEGHENY ENERGY INC | COM | 017361106 | 622 | 9782 | SH | DEFINED | 7,11 | 9782 | 0 | 0 |
| ALLEGHENY ENERGY INC | COM | 017361106 | 32 | 500 | SH | DEFINED | 7,11,13 | 500 | 0 | 0 |
| ALLEGHENY ENERGY INC | COM | 017361106 | 2639 | 41486 | SH | DEFINED | 16,24,25 | 35746 | 0 | 5740 |
| ALLEGHENY ENERGY INC | COM | 017361106 | 364 | 5728 | SH | DEFINED | 32,40,41 | 5728 | 0 | 0 |
| ALLEGHENY TECHNOLOGI | COM | 01741R102 | 1098 | 12708 | SH | DEFINED | 7,11 | 12433 | 0 | 275 |
| ALLEGHENY TECHNOLOGI | COM | 01741R102 | 1382 | 16000 | SH | DEFINED | 16,24 | 16000 | 0 | 0 |
| ALLEGHENY TECHNOLOGI | COM | 01741R102 | 335 | 3875 | SH | DEFINED | 7,11,13 | 3875 | 0 | 0 |
| ALLEGHENY TECHNOLOGI | COM | 01741R102 | 11192 | 129534 | SH | DEFINED | 15,16,24 | 129534 | 0 | 0 |
| ALLEGHENY TECHNOLOGI | COM | 01741R102 | 15752 | 182309 | SH | DEFINED | 16,24,25 | 170492 | 0 | 11816 |
| ALLEGHENY TECHNOLOGI | COM | 01741R102 | 1615 | 18695 | SH | DEFINED | 32,40,41 | 18695 | 0 | 0 |
| ALLEGHENY TECHNOLOGI | COM | 01741R102 | 21125 | 244500 | SH | CALL | DEFINED | 15,16,24 | 244500 | 0 | 0 |
| ALLEGHENY TECHNOLOGI | COM | 01741R102 | 2652 | 30700 | SH | CALL | DEFINED | 16,24,25 | 30700 | 0 | 0 |
| ALLEGHENY TECHNOLOGI | COM | 01741R102 | 49680 | 575000 | SH | PUT | DEFINED | 15,16,24 | 575000 | 0 | 0 |
| ALLEGHENY TECHNOLOGI | COM | 01741R102 | 1780 | 20600 | SH | PUT | DEFINED | 16,24,25 | 20600 | 0 | 0 |
| ALLERGAN INC | COM | 018490102 | 2574 | 40068 | SH | DEFINED | 7,11 | 40068 | 0 | 0 |
| ALLERGAN INC | COM | 018490102 | 13 | 200 | SH | DEFINED | 7,11,13 | 200 | 0 | 0 |
| ALLERGAN INC | COM | 018490102 | 220 | 3420 | SH | DEFINED | 7,11,33 | 0 | 0 | 3420 |
| ALLERGAN INC | COM | 018490102 | 139 | 2165 | SH | DEFINED | 15,16,24 | 2165 | 0 | 0 |
| ALLERGAN INC | COM | 018490102 | 39076 | 608288 | SH | DEFINED | 16,24,25 | 544630 | 0 | 63658 |
| ALLERGAN INC | COM | 018490102 | 8440 | 131379 | SH | DEFINED | 32,40,41 | 131379 | 0 | 0 |
| ALLERGAN INC | COM | 018490102 | 3700 | 57600 | SH | CALL | DEFINED | 15,16,24 | 57600 | 0 | 0 |
| ALLERGAN INC | COM | 018490102 | 668 | 10400 | SH | CALL | DEFINED | 16,24,25 | 10400 | 0 | 0 |
| ALLERGAN INC | COM | 018490102 | 7246 | 112800 | SH | PUT | DEFINED | 15,16,24 | 112800 | 0 | 0 |
| ALLERGAN INC | COM | 018490102 | 989 | 15400 | SH | PUT | DEFINED | 16,24,25 | 15400 | 0 | 0 |
| ALLETE INC | COM NEW | 018522300 | 747 | 18874 | SH | DEFINED | 16,24,25 | 17875 | 0 | 998 |
| ALLIANCE DATA SYSTEM | COM | 018581108 | 284 | 3786 | SH | DEFINED | 7,11 | 3786 | 0 | 0 |
| ALLIANCE DATA SYSTEM | COM | 018581108 | 375 | 5000 | SH | DEFINED | 31,45 | 5000 | 0 | 0 |
| ALLIANCE DATA SYSTEM | COM | 018581108 | 88 | 1175 | SH | DEFINED | 7,11,33 | 0 | 0 | 1175 |
| ALLIANCE DATA SYSTEM | COM | 018581108 | 901 | 12019 | SH | DEFINED | 16,24,25 | 11118 | 0 | 901 |
| ALLIANCE DATA SYSTEM | COM | 018581108 | 200 | 2670 | SH | DEFINED | 32,40,41 | 2670 | 0 | 0 |
| ALLIANCE IMAGING INC | COM NEW | 018606202 | 182 | 18901 | SH | DEFINED | 16,24,25 | 10756 | 0 | 8145 |
| ALLIANCEBERNSTEIN NA | COM | 01864U106 | 29 | 2200 | SH | DEFINED | 7,11,13 | 0 | 0 | 2200 |
| ALLIANCEBERNSTEIN NA | COM | 01864U106 | 403 | 30079 | SH | DEFINED | 16,24,25 | 26285 | 0 | 3794 |
| ALLIANCE RES PARTNER UT LTD PAR | 01877R108 | 116 | 3200 | SH | DEFINED | 7,11,13 | 3200 | 0 | 0 |
| ALLIANCE RES PARTNER UT LTD PAR | 01877R108 | 3808 | 104995 | SH | DEFINED | 16,24,25 | 93390 | 0 | 11604 |
| ALLIANCEBERNSTEIN GB | COM | 01879R106 | 222 | 17600 | SH | DEFINED | 7,11 | 0 | 0 | 17600 |
| ALLIANCEBERNSTEIN GB | COM | 01879R106 | 16198 | 1284537 | SH | DEFINED | 16,24,25 | 1135608 | 0 | 148929 |
| ALLIANCEBERNSTEIN GB | COM | 01879R106 | 25 | 2000 | SH | DEFINED | 16,19,24,26,27 | 2000 | 0 | 0 |
| ALLIANT ENERGY CORP | COM | 018802108 | 219 | 5392 | SH | DEFINED | 7,11 | 5392 | 0 | 0 |
| ALLIANT ENERGY CORP | COM | 018802108 | 976 | 23976 | SH | DEFINED | 7,11,13 | 23976 | 0 | 0 |
| ALLIANT ENERGY CORP | COM | 018802108 | 2886 | 70926 | SH | DEFINED | 16,24,25 | 50774 | 0 | 20152 |
| ALLIANT ENERGY CORP | COM | 018802108 | 153 | 3755 | SH | DEFINED | 32,40,41 | 3755 | 0 | 0 |
| ALLIANT TECHSYSTEMS | COM | 018804104 | 123 | 1080 | SH | DEFINED | 30 | 1080 | 0 | 0 |
| ALLIANT TECHSYSTEMS | COM | 018804104 | 1315 | 11563 | SH | DEFINED | 7,11 | 1963 | 0 | 9600 |
| ALLIANT TECHSYSTEMS | COM | 018804104 | 57 | 500 | SH | DEFINED | 7,11,33 | 0 | 0 | 500 |
| ALLIANT TECHSYSTEMS | COM | 018804104 | 4666 | 41017 | SH | DEFINED | 16,24,25 | 38550 | 0 | 2467 |
| ALLIANT TECHSYSTEMS | COM | 018804104 | 330 | 2900 | SH | DEFINED | 32,40,41 | 2900 | 0 | 0 |
| ALLIANZ SE | SP ADR 1/1 | 018805101 | 285 | 13420 | SH | DEFINED | 7,11 | 0 | 0 | 17200 |
| ALLIANZ SE | SP ADR 1/1 | 018805101 | 366 | 17200 | SH | DEFINED | 7,11 | 0 | 0 | 17200 |
| ALLIANZ SE | SP ADR 1/1 | 018805101 | 877 | 41250 | SH | DEFINED | 16,24,25 | 38949 | 0 | 2301 |
| ALLIANZ SE | SP ADR 1/1 | 018805101 | 346 | 16300 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 16300 | 0 | 0 |
| ALLIANCEBERNSTEIN IN | COM | 01881J101 | 16 | 2000 | SH | DEFINED | 7,11,13 | 2000 | 0 | 0 |
| ALLIANCEBERNSTEIN IN | COM | 01881J101 | 2384 | 296143 | SH | DEFINED | 16,24,25 | 247020 | 0 | 49123 |
| ALLIANCEBERNSTEIN HO UNIT LTD P | 01881G106 | 512 | 6800 | SH | DEFINED | 12 | 0 | 0 | 6800 |
| ALLIANCEBERNSTEIN HO UNIT LTD P | 01881G106 | 7505 | 99735 | SH | DEFINED | 7,11,33 | 0 | 0 | 99735 |
| ALLIANCEBERNSTEIN HO UNIT LTD P | 01881G106 | 883 | 11735 | SH | DEFINED | 7,11,13 | 11677 | 0 | 58 |
| ALLIANCEBERNSTEIN HO UNIT LTD P | 01881G106 | 1152 | 15310 | SH | DEFINED | 7,11,33 | 0 | 0 | 15310 |
| ALLIANCEBERNSTEIN HO UNIT LTD P | 01881G106 | 10034 | 133336 | SH | DEFINED | 16,24,25 | 95104 | 0 | 38231 |
| ALLIANCEBERNSTEIN HO UNIT LTD P | 01881G106 | 19335 | 256950 | SH | DEFINED | 32,40,41 | 256950 | 0 | 0 |
| ALLIED CAP CORP NEW | COM | 01903Q108 | 265 | 12327 | SH | DEFINED | 7,11 | 12327 | 0 | 0 |
| ALLIED CAP CORP NEW | COM | 01903Q108 | 168 | 7835 | SH | DEFINED | 7,11,13 | 7535 | 0 | 300 |
| ALLIED CAP CORP NEW | COM | 01903Q108 | 36 | 1665 | SH | DEFINED | 7,11,33 | 0 | 0 | 1665 |
| ALLIED CAP CORP NEW | COM | 01903Q108 | 53 | 2484 | SH | DEFINED | 15,16,24 | 2484 | 0 | 0 |

```
ALLIED CAP CORP NEW    COM          01903Q108  14431   671219 SH       DEFINED              16,24,25     540097      0   131121
ALLIED CAP CORP NEW    COM          01903Q108     95     4435 SH       DEFINED              32,40,41       4435      0        0
ALLIED CAP CORP NEW    COM          01903Q108    310    14400 SH  CALL DEFINED              15,16,24      14400      0        0
ALLIED CAP CORP NEW    COM          01903Q108    271    12600 SH  PUT  DEFINED              15,16,24      12600      0        0
ALLIED IRISH BKS P L SPON ADR O     019228402    302     6580 SH       DEFINED                    30       6580      0        0
ALLIED IRISH BKS P L SPON ADR O     019228402    198     4320 SH       DEFINED                  7,11          0      0     4320
ALLIED IRISH BKS P L SPON ADR O     019228402     34      742 SH       DEFINED               7,11,13        742      0        0
ALLIED IRISH BKS P L SPON ADR O     019228402   3375    73468 SH       DEFINED              16,24,25      58845      0    14622
ALLIED NEVADA GOLD C COM            01934410O    112    18020 SH       DEFINED              16,24,25      17148      0      872
ALLIED WASTE INDS IN SDCV   4.25    01958QAD2    199   214000 PRN      DEFINED              16,24,25     214000      0        0
ALLIED WASTE INDS IN COM PAR$.0     019589308    316    28700 SH       DEFINED              16,24,25          0      0    28700
ALLIED WASTE INDS IN COM PAR$.0     019589308    443    40182 SH       DEFINED               7,11,13      18091      0    22091
ALLIED WASTE INDS IN COM PAR$.0     019589308      9      830 SH       DEFINED               7,11,13          0      0      830
ALLIED WASTE INDS IN COM PAR$.0     019589308     13     1200 SH       DEFINED               7,11,13          0      0     1200
ALLIED WASTE INDS IN COM PAR$.0     019589308   1540   139748 SH       DEFINED              16,24,25     136916      0     2832
ALLIED WASTE INDS IN COM PAR$.0     019589308    446    40500 SH  PUT  DEFINED              16,24,25      40500      0        0
ALLIED WASTE INDS IN PFD CV D 6     01958970X   16176    56352 SH       DEFINED              16,24,25      56352      0        0
ALLSCRIPTS HEALTHCAR COM            01988P108    459    23650 SH       DEFINED               7,11,13      23650      0        0
ALLSCRIPTS HEALTHCAR COM            01988P108   1046    53860 SH       DEFINED              16,24,25      48129      0     5731
ALLSTATE CORP         COM            020002101     63     1200 SH       DEFINED                    12          0      0     1200
ALLSTATE CORP         COM            020002101   1018    19500 SH       DEFINED                    30      19500      0        0
ALLSTATE CORP         COM            020002101  14627   280052 SH       DEFINED                  7,11     214508      0    65544
ALLSTATE CORP         COM            020002101    488     9345 SH       DEFINED               7,11,13       4835      0     4510
ALLSTATE CORP         COM            020002101  36696   702578 SH       DEFINED              16,24,25     608729      0    93849
ALLSTATE CORP         COM            020002101  18563   355401 SH       DEFINED              32,40,41     355401      0        0
ALLSTATE CORP         COM            020002101     36      681 SH       DEFINED      16,19,24,26,27        681      0        0
ALLSTATE CORP         COM            020002101   6264   119938 SH  CALL DEFINED                  7,11     119938      0        0
ALLSTATE CORP         COM            020002101  28617   547900 SH  CALL DEFINED              15,16,24     547900      0        0
ALLSTATE CORP         COM            020002101  11015   210900 SH  CALL DEFINED              16,24,25     210900      0        0
ALLSTATE CORP         COM            020002101  21054   403100 SH  PUT  DEFINED              15,16,24     403100      0        0
ALLSTATE CORP         COM            020002101  15295   292838 SH  PUT  DEFINED              16,24,25     292838      0        0
ALMADEN MINERALS LTD  COM            020283107     50    19762 SH       DEFINED              16,24,25      19762      0        0
ALMOST FAMILY INC     COM            020409108    387    19916 SH       DEFINED              16,24,25      13825      0     6091
ALNYLAM PHARMACEUTIC  COM            02043Q107   1174    40367 SH       DEFINED              16,24,25      39887      0      480
ALON USA ENERGY INC   COM            020520102      9      329 SH       DEFINED                  7,11          0      0      329
ALON USA ENERGY INC   COM            020520102    340    12515 SH       DEFINED              16,24,25      11470      0     1045
ALPHA NATURAL RESOUR  COM            02076X102     95     2933 SH       DEFINED              15,16,24       2933      0        0
ALPHA NATURAL RESOUR  COM            02076X102    641    19742 SH       DEFINED              16,24,25      18641      0     1101
ALPHA NATURAL RESOUR  COM            02076X102   3839   118200 SH  CALL DEFINED              15,16,24     118200      0        0
ALPHA NATURAL RESOUR  COM            02076X102   3722   114600 SH  PUT  DEFINED              15,16,24     114600      0        0
ALPHARMA INC          CL A           020813101      4      200 SH       DEFINED               7,11,13        200      0        0
ALPHARMA INC          CL A           020813101    176     8739 SH       DEFINED              16,24,25       8239      0      500
ALPHARMA INC          CL A           020813101    393    19500 SH  PUT  DEFINED              16,24,25      19500      0        0
ALPINE GLOBAL DYNAMI  COM            02082E106   4047   187876 SH       DEFINED              16,24,25     166117      0    21758
ALPINE GLOBAL PREMIE  COM SBI        02083A103   9110   682389 SH       DEFINED              16,24,25     610518      0    71871
ALPINE TOTAL DYNAMIC  COM SBI        021060108      0        2 SH       DEFINED               7,11,13          2      0        0
ALPINE TOTAL DYNAMIC  COM SBI        01060108   14091   829877 SH       DEFINED              16,24,25     763675      0    66202
ALTAIR NANOTECHNOLOG  COM            021373105    149    35275 SH       DEFINED              16,24,25      31775      0     3500
ALTERA CORP           COM            021441100   1056    54663 SH       DEFINED                  7,11      54663      0        0
ALTERA CORP           COM            021441100     40     2060 SH       DEFINED               7,11,13       2060      0        0
ALTERA CORP           COM            021441100     44     2270 SH       DEFINED               7,11,33          0      0     2270
ALTERA CORP           COM            021441100   6252   323593 SH       DEFINED              16,24,25     281102      0    42490
ALTERA CORP           COM            021441100   5719   296031 SH       DEFINED              32,40,41     296031      0        0
ALTERA CORP           COM            021441100     94     4870 SH       DEFINED      16,19,24,26,27       4870      0        0
ALTERA CORP           COM            021441100   2680   138700 SH  CALL DEFINED              15,16,24     138700      0        0
ALTERA CORP           COM            021441100   1478    76500 SH  CALL DEFINED              16,24,25      76500      0        0
ALTERA CORP           COM            021441100   4988   258200 SH  PUT  DEFINED              15,16,24     258200      0        0
ALTERA CORP           COM            021441100   1275    66000 SH  PUT  DEFINED              16,24,25      66000      0        0
ALTERNATIVE ASSET MG  COM            021491101   1134   123900 SH       DEFINED              16,24,25      92600      0    31300
ALTERNATIVE ASSET MG *W EXP 08/      02149U119    159   122500 SH       DEFINED              16,24,25      83200      0    39300
ALTRA HOLDINGS INC    COM            02208R106    573    34460 SH       DEFINED              16,24,25      17915      0    16545
ALTRIA GROUP INC      COM            02209S103   4497    59500 SH       DEFINED                    12          0      0    59500
ALTRIA GROUP INC      COM            02209S103   1417    18750 SH       DEFINED                    30      18750      0        0
ALTRIA GROUP INC      COM            02209S103    443     5856 SH       DEFINED                   3,9          0      0     5856
ALTRIA GROUP INC      COM            02209S103 449446  5946626 SH       DEFINED                  7,11    5505554  12200   428872
ALTRIA GROUP INC      COM            02209S103  46312   612760 SH       DEFINED                  16,24     612760      0        0
ALTRIA GROUP INC      COM            02209S103   2503    33117 SH       DEFINED               7,11,13      21204      0    11913
ALTRIA GROUP INC      COM            02209S103    493     6521 SH       DEFINED               7,11,33          0      0     6521
ALTRIA GROUP INC      COM            02209S103  11239   148706 SH       DEFINED              15,16,24     148706      0        0
ALTRIA GROUP INC      COM            02209S103 363451  4808824 SH       DEFINED              16,24,25    4364273      0   444551
ALTRIA GROUP INC      COM            02209S103 100889  1334863 SH       DEFINED              32,40,41    1334863      0        0
ALTRIA GROUP INC      COM            02209S103   3072    40649 SH       DEFINED           5-7,11,43,44          0  40649        0
ALTRIA GROUP INC      COM            02209S103  16881   223359 SH       DEFINED      16,19,24,26,27     223359      0        0
ALTRIA GROUP INC      COM            02209S103  34926   462100 SH       DEFINED  2,6,7,10-11,18,20,21,28     462100      0        0
ALTRIA GROUP INC      COM            02209S103 114341  1512845 SH  CALL DEFINED                  7,11    1512845      0        0
ALTRIA GROUP INC      COM            02209S103  52007   688100 SH  CALL DEFINED              15,16,24     688100      0        0
ALTRIA GROUP INC      COM            02209S103   8435   111600 SH  CALL DEFINED              16,24,25     111600      0        0
ALTRIA GROUP INC      COM            02209S103  82367  1089800 SH  PUT  DEFINED              15,16,24    1089800      0        0
ALTRIA GROUP INC      COM            02209S103 214731  2841106 SH  PUT  DEFINED              16,24,25    2841106      0        0
ALUMINA LTD           SPONSORED      022205108    297    13441 SH       DEFINED              16,24,25      11546      0     1895
ALUMINUM CORP CHINA   SPON ADR H     022276109     30      600 SH       DEFINED                  7,11          0      0      600
ALUMINUM CORP CHINA   SPON ADR H     022276109     30      598 SH       DEFINED               7,11,13        524      0       74
ALUMINUM CORP CHINA   SPON ADR H     022276109   4744    93672 SH       DEFINED              15,16,24      93672      0        0
ALUMINUM CORP CHINA   SPON ADR H     022276109    706    13938 SH       DEFINED              16,24,25      10800      0     3138
ALUMINUM CORP CHINA   SPON ADR H     022276109   6564   129617 SH       DEFINED          16,17,22-24     129617      0        0
ALUMINUM CORP CHINA   SPON ADR H     022276109   8963   177000 SH  CALL DEFINED                  7,11     177000      0        0
ALUMINUM CORP CHINA   SPON ADR H     022276109   4492    88700 SH  CALL DEFINED              15,16,24      88700      0        0
ALUMINUM CORP CHINA   SPON ADR H     022276109   3545    70000 SH  PUT  DEFINED                  7,11      70000      0        0
ALUMINUM CORP CHINA   SPON ADR H     022276109  10052   198500 SH  PUT  DEFINED              15,16,24     198500      0        0
ALYST ACQUISITION COR UNIT 99/99     02263A204   3855   500000 SH       DEFINED              16,24,25     500000      0        0
AMARIN CORP PLC       SPONSORED      023111107     60   230100 SH       DEFINED              16,24,25     228600      0     1500
AMARIN CORP PLC       SPONSORED      023111107     12    44586 SH       DEFINED           5-7,11,43,44          0  44586        0
AMAZON COM INC        NOTE  4.75     02135AF3    290   238979 PRN      DEFINED              16,24,25     195979      0    43000
AMAZON COM INC        COM            023135106    375     4050 SH       DEFINED                    30       4050      0        0
AMAZON COM INC        COM            023135106    375      325 SH       DEFINED                   3,9          0      0      325
AMAZON COM INC        COM            023135106  15856   171155 SH       DEFINED                  7,11     142505      0    28650
AMAZON COM INC        COM            023135106    477     5150 SH       DEFINED               7,11,13       5150      0        0
AMAZON COM INC        COM            023135106    142     1530 SH       DEFINED               7,11,33          0      0     1530
AMAZON COM INC        COM            023135106 125186  1351322 SH       DEFINED              16,24,25    1125284      0   226038
AMAZON COM INC        COM            023135106   2570    27740 SH       DEFINED              32,40,41      27740      0        0
AMAZON COM INC        COM            023135106     52      560 SH       DEFINED           5-7,11,43,44          0    560        0
AMAZON COM INC        COM            023135106  17299   186730 SH       DEFINED  2,6,7,10-11,18,20,21,28     186730      0        0
AMAZON COM INC        COM            023135106   9711   104820 SH  CALL DEFINED              15,16,24     104820      0        0
AMAZON COM INC        COM            023135106  48330   521700 SH  CALL DEFINED              16,24,25     521700      0        0
AMAZON COM INC        COM            023135106   7383    79700 SH  CALL DEFINED              16,24,25      79700      0        0
AMAZON COM INC        COM            023135106   2316    25000 SH  PUT  DEFINED                  7,11      25000      0        0
AMAZON COM INC        COM            023135106  87295   942300 SH  PUT  DEFINED              15,16,24     942300      0        0
AMAZON COM INC        COM            023135106  63775   688420 SH  PUT  DEFINED              16,24,25     688420      0        0
AMBAC FINL GROUP INC  COM            023139108    192     7458 SH       DEFINED                  7,11       7458      0        0
AMBAC FINL GROUP INC  COM            023139108     28     1100 SH       DEFINED               7,11,33          0      0     1100
AMBAC FINL GROUP INC  COM            023139108      2       89 SH       DEFINED              15,16,24         89      0        0
AMBAC FINL GROUP INC  COM            023139108  16776   650976 SH       DEFINED              16,24,25     526775      0   124201
AMBAC FINL GROUP INC  COM            023139108   4421   171546 SH       DEFINED              32,40,41     171546      0        0
AMBAC FINL GROUP INC  COM            023139108    278    10800 SH  CALL DEFINED              15,16,24      10800      0        0
```

```
AMBAC FINL GROUP INC COM        023139108    1670     64800 SH  CALL DEFINED   16,24,25      64800    0       0
AMBAC FINL GROUP INC COM        023139108    7728    299900 SH  PUT  DEFINED   16,24,25     299900    0       0
AMCOL INTL CORP         COM     02341W103    1070     29707 SH       DEFINED   16,24,25      29650    0      57
AMDOCS LTD              NOTE 0.50 02342TAD1   199    196000 PRN      DEFINED   16,24,25     196000    0       0
AMEDISYS INC            COM     023436108     540     11135 SH       DEFINED   16,24,25       8269    0    2866
AMERCO                  COM     023586100     278      4232 SH       DEFINED   16,24,25       3312    0     920
AMEREN CORP             COM     023608102     399      7000 SH       DEFINED         30       7000    0       0
AMEREN CORP             COM     023608102    1019     18790 SH       DEFINED       7,11      18790    0       0
AMEREN CORP             COM     023608102     366      6757 SH       DEFINED   7,11,13       4428    0    2329
AMEREN CORP             COM     023608102      56      1031 SH       DEFINED   7,11,33          0    0    1031
AMEREN CORP             COM     023608102   10820    199597 SH       DEFINED   16,24,25     162960    0   36636
AMEREN CORP             COM     023608102    8763    161649 SH       DEFINED   32,40,41     161649    0       0
AMEREN CORP             COM     023608102     340      6265 SH       DEFINED 16,19,24,26,27    6265    0       0
AMERICA FIRST TAX EX BEN UNIT C 02364V107     990    153666 SH       DEFINED   16,24,25     151166    0    2500
AMERICA MOVIL SAB DE SPON ADR L 02364W105    1245     20280 SH       DEFINED         30      20280    0       0
AMERICA MOVIL SAB DE SPON ADR L 02364W105    1743     28388 SH       DEFINED        3,9          0    0   28388
AMERICA MOVIL SAB DE SPON ADR L 02364W105   12832    209019 SH       DEFINED       7,11     118039    0   90980
AMERICA MOVIL SAB DE SPON ADR L 02364W105      28       450 SH       DEFINED   7,11,13        450    0       0
AMERICA MOVIL SAB DE SPON ADR L 02364W105       6       100 SH       DEFINED   7,11,33          0    0     100
AMERICA MOVIL SAB DE SPON ADR L 02364W105   47258    769795 SH       DEFINED   16,24,25     527295    0  242499
AMERICA MOVIL SAB DE SPON ADR L 02364W105    9086    148000 SH       DEFINED   32,40,41     148000    0       0
AMERICA MOVIL SAB DE SPON ADR L 02364W105     921     15000 SH  CALL DEFINED       7,11      15000    0       0
AMERICA MOVIL SAB DE SPON ADR L 02364W105    7477    121800 SH  CALL DEFINED   15,16,24     121800    0       0
AMERICA MOVIL SAB DE SPON ADR L 02364W105    1363     22200 SH  CALL DEFINED   16,24,25      22200    0       0
AMERICA MOVIL SAB DE SPON ADR L 02364W105    4492     73165 SH  PUT  DEFINED       7,11      73165    0       0
AMERICA MOVIL SAB DE SPON ADR L 02364W105   14224    231700 SH  PUT  DEFINED   15,16,24     231700    0       0
AMERICA MOVIL SAB DE SPON ADR L 02364W105    5108     83200 SH  PUT  DEFINED   16,24,25      83200    0       0
AMERICAN APPAREL INC *W EXP 12/ 023850118    2327    258500 SH       DEFINED   16,24,25     258500    0       0
AMERICAN AXLE & MFG     COM     024061103       7       392 SH       DEFINED       7,11          0    0     392
AMERICAN AXLE & MFG     COM     024061103     433     23238 SH       DEFINED   16,24,25      22553    0     685
AMERICAN AXLE & MFG     COM     024061103    3305    177500 SH  CALL DEFINED   15,16,24     177500    0       0
AMERICAN AXLE & MFG     COM     024061103     138      7400 SH  CALL DEFINED   16,24,25       7400    0       0
AMERICAN AXLE & MFG     COM     024061103   11006    591100 SH  PUT  DEFINED   15,16,24     591100    0       0
AMERICAN AXLE & MFG     COM     024061103     559     30000 SH  PUT  DEFINED   16,24,25      30000    0       0
AMERICAN BILTRITE IN COM        024591109     116     23150 SH       DEFINED   16,24,25      20650    0    2500
AMER BIO MEDICA CORP COM        024600108      62     62823 SH       DEFINED   16,24,25      51196    0   11627
AMERICAN CAMPUS CMNT COM        024835100    1197     44585 SH       DEFINED   16,24,25      40985    0    3600
AMERICAN CAMPUS CMNT COM        024835100     343     12784 SH       DEFINED   32,40,41      12784    0       0
AMERICAN CAPITAL STR COM        024937104     933     28315 SH       DEFINED       7,11      28115    0     200
AMERICAN CAPITAL STR COM        024937104     437     13246 SH       DEFINED   7,11,13      11021    0    2225
AMERICAN CAPITAL STR COM        024937104      10       300 SH       DEFINED   7,11,33          0    0     300
AMERICAN CAPITAL STR COM        024937104   25973    788017 SH       DEFINED   16,24,25     643447    0  144569
AMERICAN CAPITAL STR COM        024937104    2940     89206 SH       DEFINED   32,40,41      89206    0       0
AMERICAN CAPITAL STR COM        024937104     343     10400 SH       DEFINED 16,19,24,26,27   10400    0       0
AMERICAN CMNTY PPTYS COM        0520N106      249     12750 SH       DEFINED   16,24,25      12350    0     400
AMERICAN CMNTY NEWSP *W EXP 06/ 02520T111      21    212000 SH       DEFINED   16,24,25     212000    0       0
AMERICAN EAGLE OUTFI COM        02553E106     199      9575 SH       DEFINED         12          0    0    9575
AMERICAN EAGLE OUTFI COM        02553E106    2590    124690 SH       DEFINED       7,11      14146    0  110544
AMERICAN EAGLE OUTFI COM        02553E106    1769     85150 SH       DEFINED   7,11,13      74113    0   11037
AMERICAN EAGLE OUTFI COM        02553E106       3       150 SH       DEFINED   7,11,33          0    0     150
AMERICAN EAGLE OUTFI COM        02553E106    4269    205521 SH       DEFINED   15,16,24     205521    0       0
AMERICAN EAGLE OUTFI COM        02553E106    3501    168538 SH       DEFINED   16,24,25     141918    0   26619
AMERICAN EAGLE OUTFI COM        02553E106     113      5452 SH       DEFINED   32,40,41       5452    0       0
AMERICAN EAGLE OUTFI COM        02553E106   11000    529600 SH  CALL DEFINED   15,16,24     529600    0       0
AMERICAN EAGLE OUTFI COM        02553E106    2428    116900 SH  CALL DEFINED   16,24,25     116900    0       0
AMERICAN EAGLE OUTFI COM        02553E106    6104    293900 SH  PUT  DEFINED   15,16,24     293900    0       0
AMERICAN EAGLE OUTFI COM        02553E106    2939    141500 SH  PUT  DEFINED   16,24,25     141500    0       0
AMERICAN ELEC PWR IN COM        025537101     822     17650 SH       DEFINED         12          0    0   17650
AMERICAN ELEC PWR IN COM        025537101   23388    502327 SH       DEFINED       7,11     272387 1800  228140
AMERICAN ELEC PWR IN COM        025537101     629     13508 SH       DEFINED   7,11,13       4808    0    8700
AMERICAN ELEC PWR IN COM        025537101     161      3450 SH       DEFINED   7,11,33          0    0    3450
AMERICAN ELEC PWR IN COM        025537101   18224    391401 SH       DEFINED   16,24,25     340648    0   50752
AMERICAN ELEC PWR IN COM        025537101     546     11727 SH       DEFINED   32,40,41      11727    0       0
AMERICAN ELEC PWR IN COM        025537101   14327    307700 SH  CALL DEFINED   15,16,24     307700    0       0
AMERICAN ELEC PWR IN COM        025537101   10904    234200 SH  CALL DEFINED   16,24,25     234200    0       0
AMERICAN ELEC PWR IN COM        025537101    8195    176000 SH  PUT  DEFINED   15,16,24     176000    0       0
AMERICAN ELEC PWR IN COM        025537101   11770    252800 SH  PUT  DEFINED   16,24,25     252800    0       0
AMERICAN EXPRESS CO  COM        025816109      90      1731 SH       DEFINED        3,9          0    0    1731
AMERICAN EXPRESS CO  COM        025816109   64775   1245201 SH       DEFINED       7,11     974397    0  270804
AMERICAN EXPRESS CO  COM        025816109     962     18500 SH       DEFINED      16,24      18500    0       0
AMERICAN EXPRESS CO  COM        025816109    2125     40843 SH       DEFINED   7,11,13      29721    0   11122
AMERICAN EXPRESS CO  COM        025816109     909     17475 SH       DEFINED   7,11,33          0    0   17475
AMERICAN EXPRESS CO  COM        025816109  161770   3109760 SH       DEFINED   16,24,25    2429123    0  680637
AMERICAN EXPRESS CO  COM        025816109    2526     48559 SH       DEFINED   32,40,41      48559    0       0
AMERICAN EXPRESS CO  COM        025816109     230      4425 SH       DEFINED 5-7,11,43,44       0    0    4425
AMERICAN EXPRESS CO  COM        025816109     155      2973 SH       DEFINED 16,19,24,26,27    2973    0       0
AMERICAN EXPRESS CO  COM        025816109   22782    437939 SH  CALL DEFINED       7,11     437939    0       0
AMERICAN EXPRESS CO  COM        025816109   49507    951700 SH  CALL DEFINED   15,16,24     951700    0       0
AMERICAN EXPRESS CO  COM        025816109   31134    598500 SH  CALL DEFINED   16,24,25     598500    0       0
AMERICAN EXPRESS CO  COM        025816109   58314   1121000 SH  PUT  DEFINED   15,16,24    1121000    0       0
AMERICAN EXPRESS CO  COM        025816109   29929    575339 SH  PUT  DEFINED   16,24,25     575239    0     100
AMERICAN FINL GROUP  NOTE 1.48 025932AD6   21617  42180000 PRN      DEFINED   16,24,25   42180000    0       0
AMERICAN FINL GROUP  COM        025932104      66      2300 SH       DEFINED         30       2300    0       0
AMERICAN FINL GROUP  COM        025932104    1750     60596 SH       DEFINED       7,11      60596    0       0
AMERICAN FINL GROUP  COM        025932104     161      5576 SH       DEFINED   16,24,25       5526    0      50
AMERICAN FINL RLTY T COM        02607P305     573     71429 SH       DEFINED       7,11      71429    0       0
AMERICAN FINL RLTY T COM        02607P305     271     33800 SH       DEFINED      14,31      33800    0       0
AMERICAN FINL RLTY T COM        02607P305     308     38454 SH       DEFINED   16,24,25      29304    0    9150
AMERICAN FINL RLTY T COM        02607P305     488     60808 SH       DEFINED   32,40,41      60808    0       0
AMERICAN INCOME FD I COM        02672T109     264     33416 SH       DEFINED   16,24,25      30595    0    2820
AMERICAN INTL GROUP  COM        026874107    1941     33300 SH       DEFINED         12          0    0   33300
AMERICAN INTL GROUP  COM        026874107     335      5752 SH       DEFINED        3,9          0    0    5752
AMERICAN INTL GROUP  COM        026874107  145727   2499597 SH       DEFINED       7,11    2128746 9000  361851
AMERICAN INTL GROUP  COM        026874107    2894     49644 SH       DEFINED   7,11,13      31837    0   17807
AMERICAN INTL GROUP  COM        026874107     979     16799 SH       DEFINED   7,11,33          0    0   16799
AMERICAN INTL GROUP  COM        026874107   35343    606229 SH       DEFINED   15,16,24     606229    0       0
AMERICAN INTL GROUP  COM        026874107  163180   2798967 SH       DEFINED   16,24,25    2300338    0  498629
AMERICAN INTL GROUP  COM        026874107   17607    302002 SH       DEFINED   32,40,41     302002    0       0
AMERICAN INTL GROUP  COM        026874107     736     12629 SH       DEFINED 5-7,11,43,44       0    0   12629
AMERICAN INTL GROUP  COM        026874107     601     10315 SH       DEFINED 2,6,7,10-11,18,20,21,28  10315    0       0
AMERICAN INTL GROUP  COM        026874107  202667   3476286 SH  CALL DEFINED       7,11    3476286    0       0
AMERICAN INTL GROUP  COM        026874107   52814    905900 SH  CALL DEFINED   15,16,24     905900    0       0
AMERICAN INTL GROUP  COM        026874107   42816    734400 SH  CALL DEFINED   16,24,25     734400    0       0
AMERICAN INTL GROUP  COM        026874107    2122     36400 SH  PUT  DEFINED       7,11      36400    0       0
AMERICAN INTL GROUP  COM        026874107   90995   1560800 SH  PUT  DEFINED   15,16,24    1560800    0       0
AMERICAN INTL GROUP  COM        026874107   62385   1070070 SH  PUT  DEFINED   16,24,25    1070070    0       0
AMERICAN MED SYS HLD COM        02744M108     120      8300 SH       DEFINED         30       8300    0       0
AMERICAN MED SYS HLD COM        02744M108     426     29439 SH       DEFINED   16,24,25      28439    0    1000
AMERICAN NATL INS CO COM        028591105    1750     14435 SH       DEFINED   16,24,25      11839    0    2596
AMERICAN ORIENTAL BI COM        028731107    2368    213757 SH       DEFINED       7,11     213757    0       0
AMERICAN ORIENTAL BI COM        028731107     808     72930 SH       DEFINED   7,11,33          0    0   72930
AMERICAN ORIENTAL BI COM        028731107    3105    280274 SH       DEFINED   16,24,25     269895    0   10379
AMERICAN ORIENTAL BI COM        028731107    1618    146000 SH  CALL DEFINED   15,16,24     146000    0       0
AMERICAN ORIENTAL BI COM        028731107     349     31500 SH  PUT  DEFINED   15,16,24      31500    0       0
```

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| AMERICAN ORIENTAL BI COM | | 028731107 | 133 | 12000 SH | PUT | DEFINED | 16,24,25 | 12000 | 0 | 0 |
| AMERICAN REPROGRAPHI COM | | 029263100 | 789 | 47885 SH | | DEFINED | 16,24,25 | 43641 | 0 | 4244 |
| AMERICAN RIVER BANKS COM | | 029326105 | 2 | 98 SH | | DEFINED | 16,24 | 98 | 0 | 0 |
| AMERICAN RIVER BANKS COM | | 029326105 | 276 | 16088 SH | | DEFINED | 16,24,25 | 16088 | 0 | 0 |
| AMERICAN SCIENCE & E COM | | 029429107 | 1437 | 25317 SH | | DEFINED | 16,24,25 | 24627 | 0 | 690 |
| AMERICAN SOFTWARE IN CL A | | 029683109 | 902 | 106900 SH | | DEFINED | 16,24,25 | 93183 | 0 | 12906 |
| AMERICAN STS WTR CO COM | | 029899101 | 243 | 6440 SH | | DEFINED | 7,11 | 6440 | 0 | 0 |
| AMERICAN STS WTR CO COM | | 029899101 | 837 | 22200 SH | | DEFINED | 16,24,25 | 17305 | 0 | 4894 |
| AMERICAN TOWER CORP NOTE 5.00 | | 029912AP9 | 80 | 80000 PRN | | DEFINED | 16,24,25 | 80000 | 0 | 0 |
| AMERICAN TOWER CORP NOTE 3.00 | | 029912AR3 | 35964 | 16964000 PRN | | DEFINED | 16,24,25 | 16964000 | 0 | 0 |
| AMERICAN TOWER CORP CL A | | 029912201 | 553 | 12990 SH | | DEFINED | 30 | 12990 | 0 | 0 |
| AMERICAN TOWER CORP CL A | | 029912201 | 4750 | 111495 SH | | DEFINED | 7,11 | 51495 | 0 | 60000 |
| AMERICAN TOWER CORP CL A | | 029912201 | 82 | 1935 SH | | DEFINED | 7,11,33 | 0 | 0 | 1935 |
| AMERICAN TOWER CORP CL A | | 029912201 | 52902 | 1241830 SH | | DEFINED | 16,24,25 | 1099941 | 0 | 141889 |
| AMERICAN TOWER CORP CL A | | 029912201 | 12400 | 291070 SH | | DEFINED | 32,40,41 | 291070 | 0 | 0 |
| AMERICAN TOWER CORP CL A | | 029912201 | 17104 | 401500 SH | CALL | DEFINED | 15,16,24 | 401500 | 0 | 0 |
| AMERICAN TOWER CORP CL A | | 029912201 | 192 | 4500 SH | CALL | DEFINED | 16,24,25 | 4500 | 0 | 0 |
| AMERICAN TOWER CORP CL A | | 029912201 | 15813 | 371200 SH | PUT | DEFINED | 15,16,24 | 371200 | 0 | 0 |
| AMERICAN TOWER CORP CL A | | 029912201 | 354 | 8300 SH | PUT | DEFINED | 16,24,25 | 8300 | 0 | 0 |
| AMERICAN STRATEGIC I COM | | 03009T101 | 144 | 13151 SH | | DEFINED | 16,24,25 | 12751 | 0 | 400 |
| AMERN STRATEGIC INCO COM | | 030099105 | 250 | 23407 SH | | DEFINED | 16,24,25 | 22407 | 0 | 1000 |
| AMERICAN SUPERCONDUC COM | | 030111108 | 60 | 2206 SH | | DEFINED | 7,11 | 2206 | 0 | 0 |
| AMERICAN SUPERCONDUC COM | | 030111108 | 114 | 4154 SH | | DEFINED | 16,24 | 4154 | 0 | 0 |
| AMERICAN SUPERCONDUC COM | | 030111108 | 2 | 75 SH | | DEFINED | 7,11,13 | 75 | 0 | 0 |
| AMERICAN SUPERCONDUC COM | | 030111108 | 6681 | 244381 SH | | DEFINED | 16,24,25 | 216049 | 0 | 28332 |
| AMERICAN SUPERCONDUC COM | | 030111108 | 347 | 12699 SH | | DEFINED | 16,19,24,26,27 | 12699 | 0 | 0 |
| AMERICAN VANGUARD CO COM | | 030371108 | 466 | 26866 SH | | DEFINED | 16,24,25 | 25501 | 0 | 1365 |
| AMERICAN WOODMARK CO COM | | 030506109 | 18640 | 1025310 SH | | DEFINED | 30 | 1025310 | 0 | 0 |
| AMERICAN WOODMARK CO COM | | 030506109 | 44 | 2400 SH | | DEFINED | 16,24,25 | 2400 | 0 | 0 |
| AMERICREDIT CORP NOTE 0.75 | | 03060RAP6 | 16619 | 23407000 PRN | | DEFINED | 16,24,25 | 23407000 | 0 | 0 |
| AMERICREDIT CORP COM | | 03060R101 | 74 | 5756 SH | | DEFINED | 7,11 | 5756 | 0 | 0 |
| AMERICREDIT CORP COM | | 03060R101 | 851 | 66557 SH | | DEFINED | 16,24,25 | 58602 | 0 | 7955 |
| AMERICREDIT CORP COM | | 03060R101 | 1456 | 113800 SH | | DEFINED | 32,40,41 | 113800 | 0 | 0 |
| AMERICREDIT CORP COM | | 03060R101 | 2896 | 226400 SH | CALL | DEFINED | 15,16,24 | 226400 | 0 | 0 |
| AMERICREDIT CORP COM | | 03060R101 | 2495 | 195100 SH | PUT | DEFINED | 15,16,24 | 195100 | 0 | 0 |
| AMERICAS CAR MART IN COM | | 03062T105 | 189 | 15068 SH | | DEFINED | 16,24,25 | 15068 | 0 | 0 |
| AMERISTAR CASINOS IN COM | | 03070Q101 | 351 | 12753 SH | | DEFINED | 16,24,25 | 12130 | 0 | 623 |
| AMERISAFE INC COM | | 03071H100 | 312 | 20124 SH | | DEFINED | 16,24,25 | 20124 | 0 | 0 |
| AMEREN INTL INC COM | | 03071I107 | 198 | 2154 SH | | DEFINED | 7,11 | 2154 | 0 | 0 |
| AMEREN INTL INC COM | | 03071I107 | 211 | 2290 SH | | DEFINED | 16,24,25 | 2153 | 0 | 137 |
| AMERISOURCEBERGEN CO COM | | 03073E105 | 874 | 19484 SH | | DEFINED | 7,11 | 15116 | 0 | 4368 |
| AMERISOURCEBERGEN CO COM | | 03073E105 | 91 | 2025 SH | | DEFINED | 7,11,13 | 2025 | 0 | 0 |
| AMERISOURCEBERGEN CO COM | | 03073E105 | 779 | 17355 SH | | DEFINED | 15,16,24 | 17355 | 0 | 0 |
| AMERISOURCEBERGEN CO COM | | 03073E105 | 3210 | 71532 SH | | DEFINED | 16,24,25 | 52634 | 0 | 18898 |
| AMERISOURCEBERGEN CO COM | | 03073E105 | 269 | 5989 SH | | DEFINED | 32,40,41 | 5989 | 0 | 0 |
| AMERISOURCEBERGEN CO COM | | 03073E105 | 2782 | 62000 SH | CALL | DEFINED | 16,24,25 | 62000 | 0 | 0 |
| AMERISOURCEBERGEN CO COM | | 03073E105 | 2728 | 60800 SH | CALL | DEFINED | 16,24,25 | 60800 | 0 | 0 |
| AMERISOURCEBERGEN CO COM | | 03073E105 | 3765 | 83900 SH | | DEFINED | 15,16,24 | 83900 | 0 | 0 |
| AMERISOURCEBERGEN CO COM | | 03073E105 | 2728 | 60800 SH | PUT | DEFINED | 16,24,25 | 60800 | 0 | 0 |
| AMERIGROUP CORP COM | | 03073T102 | 0 | 11 SH | | DEFINED | 3,9 | 0 | 0 | 11 |
| AMERIGROUP CORP COM | | 03073T102 | 1229 | 33717 SH | | DEFINED | 16,24,25 | 32817 | 0 | 900 |
| AMERIPRISE FINL INC COM | | 03076C106 | 4204 | 76275 SH | | DEFINED | 7,11 | 35734 | 0 | 40541 |
| AMERIPRISE FINL INC COM | | 03076C106 | 274 | 4963 SH | | DEFINED | 7,11,13 | 1349 | 0 | 3614 |
| AMERIPRISE FINL INC COM | | 03076C106 | 1390 | 25230 SH | | DEFINED | 15,16,24 | 25230 | 0 | 0 |
| AMERIPRISE FINL INC COM | | 03076C106 | 2986 | 54183 SH | | DEFINED | 16,24,25 | 40822 | 0 | 13360 |
| AMERIPRISE FINL INC COM | | 03076C106 | 375 | 6798 SH | | DEFINED | 32,40,41 | 6798 | 0 | 0 |
| AMERIPRISE FINL INC COM | | 03076C106 | 5 | 88 SH | | DEFINED | 5-7,11,43,44 | 0 | 88 | 0 |
| AMERIPRISE FINL INC COM | | 03076C106 | 637 | 11556 SH | | DEFINED | 16,19,24,26,27 | 11556 | 0 | 0 |
| AMERIGAS PARTNERS L UNIT L P I | | 030975106 | 423 | 11750 SH | | DEFINED | 7,11,13 | 11475 | 0 | 275 |
| AMERIGAS PARTNERS L UNIT L P I | | 030975106 | 2271 | 63019 SH | | DEFINED | 16,24,25 | 60063 | 0 | 2956 |
| AMERIGAS PARTNERS L UNIT L P I | | 030975106 | 2506 | 69541 SH | | DEFINED | 32,40,41 | 69541 | 0 | 0 |
| AMETEK INC NEW COM | | 031100100 | 61 | 1292 SH | | DEFINED | 30 | 1292 | 0 | 0 |
| AMETEK INC NEW COM | | 031100100 | 88 | 1875 SH | | DEFINED | 7,11,13 | 1875 | 0 | 0 |
| AMETEK INC NEW COM | | 031100100 | 3471 | 74094 SH | | DEFINED | 16,24,25 | 67296 | 0 | 6798 |
| AMGEN INC NOTE | | 031162AL4 | 41 | 63000 PRN | | DEFINED | 16,24,25 | 63000 | 0 | 0 |
| AMGEN INC NOTE 0.12 | | 031162AN0 | 5504 | 6040000 PRN | | DEFINED | 16,24,25 | 6040000 | 0 | 0 |
| AMGEN INC NOTE 0.37 | | 031162AQ3 | 4831 | 5498000 PRN | | DEFINED | 16,24,25 | 5498000 | 0 | 0 |
| AMGEN INC COM | | 031162100 | 14 | 300 SH | | DEFINED | 12 | 0 | 0 | 300 |
| AMGEN INC COM | | 031162100 | 38 | 829 SH | | DEFINED | 3,9 | 0 | 0 | 829 |
| AMGEN INC COM | | 031162100 | 38330 | 825362 SH | | DEFINED | 7,11 | 750112 | 0 | 75250 |
| AMGEN INC COM | | 031162100 | 743 | 16007 SH | | DEFINED | 16,24 | 16007 | 0 | 0 |
| AMGEN INC COM | | 031162100 | 4070 | 87632 SH | | DEFINED | 7,11,13 | 84982 | 0 | 2650 |
| AMGEN INC COM | | 031162100 | 130 | 2790 SH | | DEFINED | 7,11,33 | 0 | 0 | 2790 |
| AMGEN INC COM | | 031162100 | 180414 | 3884879 SH | | DEFINED | 16,24,25 | 3293269 | 0 | 591610 |
| AMGEN INC COM | | 031162100 | 1639 | 35292 SH | | DEFINED | 32,40,41 | 35292 | 0 | 0 |
| AMGEN INC COM | | 031162100 | 241 | 5200 SH | | DEFINED | 5-7,11,43,44 | 0 | 5200 | 0 |
| AMGEN INC COM | | 031162100 | 3136 | 67536 SH | | DEFINED | 16,19,24,26,27 | 67536 | 0 | 0 |
| AMGEN INC COM | | 031162100 | 7110 | 153108 SH | | DEFINED | 2,6,7,10-11,18,20,21,28 | 153108 | 0 | 0 |
| AMGEN INC COM | | 031162100 | 32937 | 709236 SH | CALL | DEFINED | 7,11 | 709236 | 0 | 0 |
| AMGEN INC COM | | 031162100 | 32801 | 706300 SH | | DEFINED | 15,16,24 | 706300 | 0 | 0 |
| AMGEN INC COM | | 031162100 | 31607 | 680600 SH | CALL | DEFINED | 16,24,25 | 680600 | 0 | 0 |
| AMGEN INC COM | | 031162100 | 32415 | 698000 SH | PUT | DEFINED | 15,16,24 | 698000 | 0 | 0 |
| AMGEN INC COM | | 031162100 | 36364 | 783036 SH | PUT | DEFINED | 16,24,25 | 783036 | 0 | 0 |
| AMIS HLDGS INC COM | | 031538101 | 109 | 10900 SH | | DEFINED | 30 | 10900 | 0 | 0 |
| AMIS HLDGS INC COM | | 031538101 | 31 | 3137 SH | | DEFINED | 7,11 | 3137 | 0 | 0 |
| AMIS HLDGS INC COM | | 031538101 | 105673 | 10546212 SH | | DEFINED | 9,34-37 | 10546212 | 0 | 0 |
| AMIS HLDGS INC COM | | 031538101 | 10960 | 105810 SH | | DEFINED | 9,35-37 | 105810 | 0 | 0 |
| AMIS HLDGS INC COM | | 031538101 | 945 | 94276 SH | | DEFINED | 9,35,36 | 94276 | 0 | 0 |
| AMIS HLDGS INC COM | | 031538101 | 1 | 100 SH | | DEFINED | 16,24,25 | 100 | 0 | 0 |
| AMKOR TECHNOLOGY INC COM | | 031652100 | 2039 | 239047 SH | | DEFINED | 7,11 | 239047 | 0 | 0 |
| AMKOR TECHNOLOGY INC COM | | 031652100 | 1221 | 143108 SH | | DEFINED | 15,16,24 | 143108 | 0 | 0 |
| AMKOR TECHNOLOGY INC COM | | 031652100 | 824 | 96652 SH | | DEFINED | 16,24,25 | 87989 | 0 | 8663 |
| AMKOR TECHNOLOGY INC COM | | 031652100 | 1597 | 187200 SH | CALL | DEFINED | 15,16,24 | 187200 | 0 | 0 |
| AMKOR TECHNOLOGY INC COM | | 031652100 | 154 | 18000 SH | CALL | DEFINED | 16,24,25 | 18000 | 0 | 0 |
| AMKOR TECHNOLOGY INC COM | | 031652100 | 3106 | 364100 SH | PUT | DEFINED | 15,16,24 | 364100 | 0 | 0 |
| AMKOR TECHNOLOGY INC COM | | 031652100 | 96 | 11300 SH | PUT | DEFINED | 16,24,25 | 11300 | 0 | 0 |
| AMPCO-PITTSBURGH COR COM | | 032037103 | 61 | 1600 SH | | DEFINED | 7,11 | 0 | 0 | 1600 |
| AMPCO-PITTSBURGH COR COM | | 032037103 | 74 | 1950 SH | | DEFINED | 7,11,13 | 1950 | 0 | 0 |
| AMPCO-PITTSBURGH COR COM | | 032037103 | 116 | 3048 SH | | DEFINED | 16,24,25 | 2988 | 0 | 60 |
| AMPHENOL CORP NEW CL A | | 032095101 | 1408 | 30364 SH | | DEFINED | 7,11 | 30364 | 0 | 0 |
| AMPHENOL CORP NEW CL A | | 032095101 | 1288 | 27780 SH | | DEFINED | 7,11,13 | 27780 | 0 | 0 |
| AMPHENOL CORP NEW CL A | | 032095101 | 33241 | 716867 SH | | DEFINED | 16,24,25 | 642862 | 0 | 74005 |
| AMPHENOL CORP NEW CL A | | 032095101 | 217 | 4670 SH | | DEFINED | 32,40,41 | 4670 | 0 | 0 |
| AMPHENOL CORP NEW CL A | | 032095101 | 51 | 1100 SH | CALL | DEFINED | 16,24,25 | 1100 | 0 | 0 |
| AMSURG CORP COM | | 03232P405 | 651 | 24057 SH | | DEFINED | 16,24,25 | 24057 | 0 | 0 |
| AMYLIN PHARMACEUTICA NOTE 2.50 | | 032346AD0 | 5184 | 4110000 PRN | | DEFINED | 16,24,25 | 4110000 | 0 | 0 |
| AMYLIN PHARMACEUTICA NOTE 3.00 | | 032346AP5 | 9 | 10000 PRN | | DEFINED | 16,24,25 | 10000 | 0 | 0 |
| AMYLIN PHARMACEUTICA COM | | 032346108 | 502 | 13581 SH | | DEFINED | 7,11 | 13581 | 0 | 0 |
| AMYLIN PHARMACEUTICA COM | | 032346108 | 2843 | 76836 SH | | DEFINED | 15,16,24 | 76836 | 0 | 0 |
| AMYLIN PHARMACEUTICA COM | | 032346108 | 975 | 26359 SH | | DEFINED | 16,24,25 | 25948 | 0 | 411 |
| AMYLIN PHARMACEUTICA COM | | 032346108 | 621 | 16794 SH | | DEFINED | 32,40,41 | 16794 | 0 | 0 |
| AMYLIN PHARMACEUTICA COM | | 032346108 | 11133 | 300900 SH | CALL | DEFINED | 15,16,24 | 300900 | 0 | 0 |
| AMYLIN PHARMACEUTICA COM | | 032346108 | 466 | 12600 SH | CALL | DEFINED | 16,24,25 | 12600 | 0 | 0 |
| AMYLIN PHARMACEUTICA COM | | 032346108 | 8377 | 226400 SH | PUT | DEFINED | 15,16,24 | 226400 | 0 | 0 |

```
AMYLIN PHARMACEUTICA COM        032346108    274     7400 SH  PUT  DEFINED      16,24,25      7400        0        0
AMTRUST FINANCIAL SE COM        032359309    210    15234 SH       DEFINED      16,24,25     15234        0        0
ANADARKO PETE CORP   COM        032511107    152     2310 SH       DEFINED            12         0        0     2310
ANADARKO PETE CORP   COM        032511107    907    13800 SH       DEFINED            30     13800        0        0
ANADARKO PETE CORP   COM        032511107  12954   197200 SH       DEFINED            42    197200        0        0
ANADARKO PETE CORP   COM        032511107     18      277 SH       DEFINED           3,9         0        0      277
ANADARKO PETE CORP   COM        032511107  11094  1688B6 SH        DEFINED          7,11    122767        0    46119
ANADARKO PETE CORP   COM        032511107 234525  3570173 SH       DEFINED         16,24  3570173        0        0
ANADARKO PETE CORP   COM        032511107   1532    23324 SH       DEFINED       7,11,13     16499        0     6825
ANADARKO PETE CORP   COM        032511107    284     4325 SH       DEFINED       7,11,33         0        0     4325
ANADARKO PETE CORP   COM        032511107   5804    88357 SH       DEFINED      15,16,24     88357        0        0
ANADARKO PETE CORP   COM        032511107 267016  4064792 SH       DEFINED      16,24,25  3741973        0   322818
ANADARKO PETE CORP   COM        032511107   3693    56224 SH       DEFINED      32,40,41     56224        0        0
ANADARKO PETE CORP   COM        032511107    141     2153 SH       DEFINED  16,19,24,26,27     2153        0        0
ANADARKO PETE CORP   COM        032511107  19181   292000 SH  CALL DEFINED      15,16,24    292000        0        0
ANADARKO PETE CORP   COM        032511107  19564   297824 SH  CALL DEFINED      16,24,25    297824        0        0
ANADARKO PETE CORP   COM        032511107   3069    46724 SH  PUT  DEFINED          7,11     46724        0        0
ANADARKO PETE CORP   COM        032511107  33423   508800 SH  PUT  DEFINED      15,16,24    508800        0        0
ANADARKO PETE CORP   COM        032511107  10254   156100 SH  PUT  DEFINED      16,24,25    156100        0        0
ANADIGICS INC        COM        032515108    628    54287 SH       DEFINED      16,24,25     41700        0    12587
ANALOG DEVICES INC   COM        032654105   1263    39849 SH       DEFINED          7,11     39849        0        0
ANALOG DEVICES INC   COM        032654105    133     4200 SH       DEFINED         16,24      4200        0        0
ANALOG DEVICES INC   COM        032654105     13      410 SH       DEFINED       7,11,13       410        0        0
ANALOG DEVICES INC   COM        032654105    785    24751 SH       DEFINED      15,16,24     24751        0        0
ANALOG DEVICES INC   COM        032654105   9417   297061 SH       DEFINED      16,24,25    297610        0    20351
ANALOG DEVICES INC   COM        032654105    520    16406 SH       DEFINED      32,40,41     16406        0        0
ANALOG DEVICES INC   COM        032654105   6711   211700 SH  CALL DEFINED      15,16,24    211700        0        0
ANALOG DEVICES INC   COM        032654105   3829   120800 SH  CALL DEFINED      16,24,25    120800        0        0
ANALOG DEVICES INC   COM        032654105   8857   279400 SH  PUT  DEFINED      15,16,24    279400        0        0
ANALOG DEVICES INC   COM        032654105   5595   176500 SH  PUT  DEFINED      16,24,25    176500        0        0
ANALOGIC CORP        COM PAR $0 032657207    261     3847 SH       DEFINED      16,24,25      3847        0        0
ANAREN INC           COM        032744104    887    53795 SH       DEFINED      16,24,25     46191        0     7604
ANDERSONS INC        COM        034164103   2914    65036 SH       DEFINED      16,24,25     56899        0     8137
ANDREW CORP          NOTE 3.25  034425AB4  35636 32396000 PRN      DEFINED      16,24,25 32396000        0        0
ANGLO AMERN PLC      ADR NEW    03485P201    781    25703 SH       DEFINED          7,11         0        0    25703
ANGLO AMERN PLC      ADR NEW    03485P201    875    28813 SH       DEFINED       7,11,33         0        0    28813
ANGLO AMERN PLC      ADR NEW    03485P201    372    12252 SH       DEFINED      15,16,24     12252        0        0
ANGLO AMERN PLC      ADR NEW    03485P201  10141   333907 SH       DEFINED      16,24,25    303676        0    30231
ANGLO AMERN PLC      ADR NEW    03485P201  17605   579671 SH  CALL DEFINED  16,19,24,26,29   579671        0        0
ANGLO AMERN PLC      ADR NEW    03485P201   1351    44500 SH  CALL DEFINED      15,16,24     44500        0        0
ANGLO AMERN PLC      ADR NEW    03485P201   1130    37200 SH  PUT  DEFINED      15,16,24     37200        0        0
ANGLOGOLD ASHANTI LT SPONSORED  03512820G    107     2500 SH       DEFINED       7,11,13      2500        0        0
ANGLOGOLD ASHANTI LT SPONSORED  03512820G   2487    58087 SH       DEFINED      15,16,24     58087        0        0
ANGLOGOLD ASHANTI LT SPONSORED  03512820G   5840   136414 SH       DEFINED      16,24,25    122699        0    13715
ANGLOGOLD ASHANTI LT SPONSORED  03512820G    292     6830 SH       DEFINED  16,19,24,26,27     6830        0        0
ANGLOGOLD ASHANTI LT SPONSORED  03512820G   7273   169900 SH  CALL DEFINED      15,16,24    169900        0        0
ANGLOGOLD ASHANTI LT SPONSORED  03512820G  14427   337000 SH  PUT  DEFINED      15,16,24    337000        0        0
ANHEUSER BUSCH COS I COM        035229103    393     7500 SH       DEFINED            12         0        0     7500
ANHEUSER BUSCH COS I COM        035229103    372     7100 SH       DEFINED            30      7100        0        0
ANHEUSER BUSCH COS I COM        035229103  18214   347993 SH       DEFINED          7,11    175058     1130   171805
ANHEUSER BUSCH COS I COM        035229103   7385   141093 SH       DEFINED       7,11,13    137248        0     3845
ANHEUSER BUSCH COS I COM        035229103  61235  1169937 SH       DEFINED      16,24,25    968741        0   201196
ANHEUSER BUSCH COS I COM        035229103   4543    86803 SH       DEFINED      32,40,41     86803        0        0
ANHEUSER BUSCH COS I COM        035229103    445     8498 SH       DEFINED   5-7,11,43,44         0     8498        0
ANHEUSER BUSCH COS I COM        035229103  10609   202703 SH  CALL DEFINED          7,11    202703        0        0
ANHEUSER BUSCH COS I COM        035229103  19251   367800 SH  CALL DEFINED      15,16,24    367800        0        0
ANHEUSER BUSCH COS I COM        035229103   6124   117000 SH  CALL DEFINED      16,24,25    117000        0        0
ANHEUSER BUSCH COS I COM        035229103   3926    75000 SH  PUT  DEFINED          7,11     75000        0        0
ANHEUSER BUSCH COS I COM        035229103  11394   217700 SH  PUT  DEFINED      15,16,24    217700        0        0
ANHEUSER BUSCH COS I COM        035229103  16660   318303 SH  PUT  DEFINED      16,24,25    318303        0        0
ANIXTER INTL INC     NOTE 1.00  03529DA74   9809  8595000 PRN      DEFINED      16,24,25  8595000        0        0
ANNALY CAP MGMT INC  COM        035710409    237    13050 SH       DEFINED            12         0        0    13050
ANNALY CAP MGMT INC  COM        035710409    591    32515 SH       DEFINED           3,9         0        0    32515
ANNALY CAP MGMT INC  COM        035710409   2979   163869 SH       DEFINED          7,11     11100        0   152769
ANNALY CAP MGMT INC  COM        035710409    113     6190 SH       DEFINED       7,11,13         0        0     6190
ANNALY CAP MGMT INC  COM        035710409    123     6760 SH       DEFINED       7,11,33         0        0     6760
ANNALY CAP MGMT INC  COM        035710409  11731   645252 SH       DEFINED      16,24,25    600312        0    44940
ANNALY CAP MGMT INC  COM        035710409   4422   243218 SH  CALL DEFINED  16,19,24,26,27   243218        0        0
ANNALY CAP MGMT INC  COM        035710409   2865   157600 SH  CALL DEFINED      15,16,24    157600        0        0
ANNALY CAP MGMT INC  COM        035710409   1922   105700 SH  PUT  DEFINED      15,16,24    105700        0        0
ANNTAYLOR STORES COR COM        036115103     13      500 SH       DEFINED            12         0        0      500
ANNTAYLOR STORES COR COM        036115103    659    25794 SH       DEFINED          7,11       644        0    25150
ANNTAYLOR STORES COR COM        036115103     28     1100 SH       DEFINED       7,11,13         0        0     1100
ANNTAYLOR STORES COR COM        036115103      4      150 SH       DEFINED       7,11,33         0        0      150
ANNTAYLOR STORES COR COM        036115103   1988    77788 SH       DEFINED      15,16,24     77788        0        0
ANNTAYLOR STORES COR COM        036115103    902    35307 SH       DEFINED      16,24,25     34494        0      813
ANNTAYLOR STORES COR COM        036115103   2702   105700 SH  CALL DEFINED      15,16,24    105700        0        0
ANNTAYLOR STORES COR COM        036115103    493    19300 SH  CALL DEFINED      15,16,24     19300        0        0
ANNTAYLOR STORES COR COM        036115103   8264   323300 SH  PUT  DEFINED      15,16,24    323300        0        0
ANNTAYLOR STORES COR COM        036115103   1183    46300 SH  PUT  DEFINED      16,24,25     46300        0        0
ANSYS INC            COM        03662Q105    116     2800 SH       DEFINED            30      2800        0        0
ANSYS INC            COM        03662Q105    442    10669 SH       DEFINED          7,11     10669        0        0
ANSYS INC            COM        03662Q105    541    13050 SH       DEFINED       7,11,13     12675        0      375
ANSYS INC            COM        03662Q105    444    10702 SH       DEFINED      16,24,25     10508        0      194
ANSWERTHINK INC      COM        036916104     53    11042 SH       DEFINED      16,24,25     11042        0        0
ANSWERTHINK INC      COM        036916104     10     2000 SH       DEFINED   5-7,11,43,44         0     2000        0
ANTHRACITE CAP INC   COM        03702310B    282    38901 SH       DEFINED      16,24,25     35298        0     3603
ANTIGENICS INC DEL   NOTE 5.25  037032AC3    944  1600000 PRN      DEFINED      16,24,25  1600000        0        0
ANTIGENICS INC DEL   COM        037032109     49    24148 SH       DEFINED      15,16,24     24148        0        0
ANTIGENICS INC DEL   COM        037032109      4     1825 SH       DEFINED      15,16,24      1825        0        0
ANTIGENICS INC DEL   COM        037032109     26    12900 SH  CALL DEFINED      15,16,24     12900        0        0
ANTIGENICS INC DEL   COM        037032109     37    17900 SH  PUT  DEFINED      15,16,24     17900        0        0
ANWORTH MORTGAGE ASS COM        037347101    236    28579 SH       DEFINED      16,24,25     28167        0      412
AON CORP             COM        037389103     30      626 SH       DEFINED           3,9         0        0      626
AON CORP             COM        037389103   1798    37697 SH       DEFINED          7,11     37697        0        0
AON CORP             COM        037389103    653    13700 SH       DEFINED       7,11,13     13700        0        0
AON CORP             COM        037389103   1554    32580 SH       DEFINED      15,16,24     32580        0        0
AON CORP             COM        037389103  10951   229636 SH       DEFINED      16,24,25    192879        0    36756
AON CORP             COM        037389103    392     8220 SH       DEFINED      32,40,41      8220        0        0
AON CORP             COM        037389103   2504    52500 SH  CALL DEFINED      15,16,24     52500        0        0
AON CORP             COM        037389103   2218    46500 SH  CALL DEFINED      16,24,25     46500        0        0
AON CORP             COM        037389103   3543    74300 SH  PUT  DEFINED      16,24,25     74300        0        0
AON CORP             COM        037389103   2227    46700 SH  PUT  DEFINED      16,24,25     46700        0        0
APACHE CORP          COM        037411105  12109   112600 SH       DEFINED            42    112600        0        0
APACHE CORP          COM        037411105   9012    83804 SH       DEFINED          7,11     67924        0    15880
APACHE CORP          COM        037411105   2896    26933 SH       DEFINED       7,11,13     25166        0     1767
APACHE CORP          COM        037411105    246     2291 SH       DEFINED       7,11,33         0        0     2291
APACHE CORP          COM        037411105  67352   626301 SH       DEFINED      16,24,25    514379        0   111922
APACHE CORP          COM        037411105   1119    10410 SH       DEFINED      32,40,41     10410        0        0
APACHE CORP          COM        037411105    559     5200 SH       DEFINED   5-7,11,43,44         0     5200        0
APACHE CORP          COM        037411105   4480    41660 SH       DEFINED  16,19,24,26,27    41660        0        0
APACHE CORP          COM        037411105     54      500 SH       DEFINED 2,6,7,10-11,18,20,21,28   500    0        0
APACHE CORP          COM        037411105  67922   631600 SH  CALL DEFINED      15,16,24    631600        0        0
APACHE CORP          COM        037411105   6270    58300 SH  CALL DEFINED      16,24,25     58300        0        0
```

```
APACHE CORP            COM           037411105   34778    323400 SH  PUT DEFINED              15,16,24     323400       0        0
APACHE CORP            COM           037411105    6463     60100 SH  PUT DEFINED              16,24,25      60100       0        0
APARTMENT INVT & MGM CL A            03748R101     431     12419 SH      DEFINED                 7,11      12419        0        0
APARTMENT INVT & MGM CL A            03748R101       7       200 SH      DEFINED                 7,11,13     200         0        0
APARTMENT INVT & MGM CL A            03748R101     900     25900 SH      DEFINED              16,24,25      16271       0     9629
APARTMENT INVT & MGM CL A            03748R101   20632    594057 SH      DEFINED              32,40,41     594057       0        0
APARTMENT INVT & MGM CL A            03748R101      78      2238 SH      DEFINED           16,19,24,26,27     2238       0        0
APOGEE ENTERPRISES I COM             037598109      94      5500 SH      DEFINED                   30       5500        0        0
APOGEE ENTERPRISES I COM             037598109       4       229 SH      DEFINED                 7,11        229        0      229
APOGEE ENTERPRISES I COM             037598109     272     15905 SH      DEFINED              16,24,25      14995       0      910
APEX SILVER MINES LT NOTE  2.87      03760XAB7    8589  10942000 PRN     DEFINED              16,24,25   10942000       0        0
APEX SILVER MINES LT NOTE  4.00      03760XAD3    6376   7590000 PRN     DEFINED              16,24,25    7590000       0        0
APOLLO GROUP INC       CL A          037604105    1851     26391 SH      DEFINED                 7,11       26271       0      120
APOLLO GROUP INC       CL A          037604105      18       250 SH      DEFINED                 7,11,13      250        0        0
APOLLO GROUP INC       CL A          037604105   15889    226499 SH      DEFINED              16,24,25     188151       0    38348
APOLLO GROUP INC       CL A          037604105     729     10385 SH      DEFINED              32,40,41      10385       0        0
APOLLO GROUP INC       CL A          037604105    2311     32944 SH  CALL DEFINED                 7,11       32944       0        0
APOLLO GROUP INC       CL A          037604105   20561    293100 SH  CALL DEFINED              15,16,24     293100       0        0
APOLLO GROUP INC       CL A          037604105    6685     95300 SH  CALL DEFINED              16,24,25      95300       0        0
APOLLO GROUP INC       CL A          037604105    1754     25000 SH  PUT DEFINED                 7,11       25000       0        0
APOLLO GROUP INC       CL A          037604105   16555    236000 SH  PUT DEFINED              15,16,24     236000       0        0
APOLLO GROUP INC       CL A          037604105   31592    450344 SH  PUT DEFINED              16,24,25     450344       0        0
APOLLO INVT CORP       COM           03761U106     779     45678 SH      DEFINED                 7,11       45678       0        0
APOLLO INVT CORP       COM           03761U106      24      1400 SH      DEFINED                 7,11,13     1400        0        0
APOLLO INVT CORP       COM           03761U106   13134    770347 SH      DEFINED              16,24,25     657145       0   113202
APOLLO INVT CORP       COM           03761U106     406     23800 SH  PUT DEFINED              16,24,25      23800       0        0
APPLE INC              COM           037833100     927      4680 SH      DEFINED                   30        4680       0        0
APPLE INC              COM           037833100    1070      5400 SH      DEFINED                  3,9           0       0     5400
APPLE INC              COM           037833100  115169    581428 SH      DEFINED                 7,11      573578       0     7850
APPLE INC              COM           037833100     337      1701 SH      DEFINED                 7,11,13     1665        0       36
APPLE INC              COM           037833100    1593      8041 SH      DEFINED                 7,11,33        0       0     8041
APPLE INC              COM           037833100   35567    179560 SH      DEFINED              15,16,24     179560       0        0
APPLE INC              COM           037833100  381246   1924706 SH      DEFINED              16,24,25    1625204       0   299501
APPLE INC              COM           037833100   23560    118941 SH      DEFINED              32,40,41     118941       0        0
APPLE INC              COM           037833100    2446     12347 SH      DEFINED               5-7,11,43,44      0       0    12347
APPLE INC              COM           037833100   61745    311720 SH      DEFINED  2,6,7,10-11,18,20,21,28  311720      0        0
APPLE INC              COM           037833100   29224    147536 SH  CALL DEFINED                 7,11      147536       0        0
APPLE INC              COM           037833100  479552   2421000 SH  CALL DEFINED              15,16,24    2421000       0        0
APPLE INC              COM           037833100   87868    443600 SH  CALL DEFINED              16,24,25     443600       0        0
APPLE INC              COM           037833100   19986    100900 SH  PUT DEFINED                 7,11      100900       0        0
APPLE INC              COM           037833100  574531   2900500 SH  PUT DEFINED              15,16,24    2900500       0        0
APPLE INC              COM           037833100  128680    649636 SH  PUT DEFINED              16,24,25     649636       0        0
APRIA HEALTHCARE GRO COM             037933108    1224     56725 SH      DEFINED              15,16,24      56725       0        0
APRIA HEALTHCARE GRO COM             037933108    2038     94468 SH      DEFINED              16,24,25      92391       0     2077
APRIA HEALTHCARE GRO COM             037933108    3760    174300 SH  CALL DEFINED              15,16,24     174300       0        0
APRIA HEALTHCARE GRO COM             037933108    3313    153600 SH  PUT DEFINED              16,24,25     153600       0        0
APRIA HEALTHCARE GRO COM             037933108     151      7000 SH  PUT DEFINED              16,24,25       7000       0        0
APPLERA CORP           COM AP BIO    038020103    2689     79265 SH      DEFINED                 7,11       79265       0        0
APPLERA CORP           COM AP BIO    038020103     542     15975 SH      DEFINED                 7,11,13    15975        0        0
APPLERA CORP           COM AP BIO    038020103    1556     45869 SH      DEFINED              16,24,25      38075       0     7793
APPLERA CORP           COM AP BIO    038020103    3586    105707 SH      DEFINED              32,40,41     105707       0        0
APPLERA CORP           COM AP BIO    038020103    3368     99300 SH  CALL DEFINED              15,16,24      99300       0        0
APPLERA CORP           COM AP BIO    038020103    2069     61000 SH  CALL DEFINED              16,24,25      61000       0        0
APPLERA CORP           COM AP BIO    038020103    3226     95100 SH  CALL DEFINED              15,16,24      95100       0        0
APPLERA CORP           COM AP BIO    038020103    2269     66900 SH  PUT DEFINED              16,24,25      66900       0        0
APPLERA CORP           COM CELERA    038020202     127      8000 SH      DEFINED                   30        8000       0        0
APPLERA CORP           COM CELERA    038020202      45      2836 SH      DEFINED                 7,11        2836        0        0
APPLERA CORP           COM CELERA    038020202     183     11525 SH      DEFINED              16,24,25      11296       0      229
APPLIED INDL TECHNOL COM             03820C105      61      2100 SH      DEFINED                   30        2100       0        0
APPLIED INDL TECHNOL COM             03820C105    1020     35139 SH      DEFINED              16,24,25      34235       0      904
APPLIED MATLS INC      COM           038222105     293     16500 SH      DEFINED                   12           0       0    16500
APPLIED MATLS INC      COM           038222105   23967   1349497 SH      DEFINED                 7,11     1264822       0    84675
APPLIED MATLS INC      COM           038222105     270     15210 SH      DEFINED                 7,11,13    15210        0        0
APPLIED MATLS INC      COM           038222105      67      3770 SH      DEFINED                 7,11,33        0       0     3770
APPLIED MATLS INC      COM           038222105   64258   3618122 SH      DEFINED              16,24,25    3116393       0   501728
APPLIED MATLS INC      COM           038222105   13253    746246 SH      DEFINED              32,40,41     746246       0        0
APPLIED MATLS INC      COM           038222105      38      2130 SH      DEFINED               5-7,11,43,44      0    2130        0
APPLIED MATLS INC      COM           038222105      86      4870 SH      DEFINED           16,19,24,26,27     4870       0        0
APPLIED MATLS INC      COM           038222105      63      3572 SH      DEFINED  2,6,7,10-11,18,20,21,28    3572      0        0
APPLIED MATLS INC      COM           038222105   17788   1001600 SH  CALL DEFINED              15,16,24    1001600       0        0
APPLIED MATLS INC      COM           038222105    8431    474700 SH  CALL DEFINED              16,24,25     474700       0        0
APPLIED MATLS INC      COM           038222105   14162    797400 SH  PUT DEFINED              15,16,24     797400       0        0
APPLIED MATLS INC      COM           038222105   14114    794700 SH  PUT DEFINED              16,24,25     794700       0        0
APTARGROUP INC         COM           038336103      41      1000 SH      DEFINED                 7,11,13    1000        0        0
APTARGROUP INC         COM           038336103     291      7109 SH      DEFINED              16,24,25      7109        0        0
AQUA AMERICA INC       COM           03836W103     289     13632 SH      DEFINED                 7,11       13632       0        0
AQUA AMERICA INC       COM           03836W103     183      8634 SH      DEFINED                 7,11,13    8634        0        0
AQUA AMERICA INC       COM           03836W103    8469    399491 SH      DEFINED              16,24,25     257532       0   141959
AQUA AMERICA INC       COM           03836W103     117      5542 SH      DEFINED              32,40,41       5542       0        0
AQUILA INC             COM           03840P102     785    210588 SH      DEFINED              16,24,25     175240       0    35348
ARACRUZ CELULOSE S A SPON ADR P      03849620 4      28       380 SH      DEFINED                 7,11        200        0      180
ARACRUZ CELULOSE S A SPON ADR P      03849620 4      19       250 SH      DEFINED                 7,11,33       0       0      250
ARACRUZ CELULOSE S A SPON ADR P      03849620 4    3227     43400 SH      DEFINED              16,24,25      37283       0     6117
ARACRUZ CELULOSE S A SPON ADR P      03849620 4      61       825 SH      DEFINED              32,40,41        825       0        0
ARACRUZ CELULOSE S A SPON ADR P      03849620 4      79      1066 SH      DEFINED           16,19,24,26,27    1066       0        0
ARCH CHEMICALS INC     COM           03937R102      68      1857 SH      DEFINED                 7,11        1857        0        0
ARCH CHEMICALS INC     COM           03937R102     278      7565 SH      DEFINED              16,24,25       7365       0      200
ARCELORMITTAL SA LUX NY REGISTR      03938L104   30940    400000 SH      DEFINED                 7,11      400000       0        0
ARCELORMITTAL SA LUX NY REGISTR      03938L104      15       190 SH      DEFINED                 7,11,33        0       0      190
ARCELORMITTAL SA LUX NY REGISTR      03938L104   35137    454262 SH      DEFINED              16,24,25     439307       0    14955
ARCELORMITTAL SA LUX NY REGISTR      03938L104    9282    120000 SH  CALL DEFINED                 7,11      120000       0        0
ARCELORMITTAL SA LUX NY REGISTR      03938L104     162      2100 SH  CALL DEFINED              15,16,24       2100       0        0
ARCELORMITTAL SA LUX NY REGISTR      03938L104    1253     16200 SH  PUT DEFINED              15,16,24      16200       0        0
ARCELORMITTAL SA LUX NY REGISTR      03938L104    9282    120000 SH  PUT DEFINED              16,24,25     120000       0        0
ARCH COAL INC          COM           039380100      77      1706 SH      DEFINED                 7,11        1706        0        0
ARCH COAL INC          COM           039380100    2963     65937 SH      DEFINED                 7,11        65937       0      150
ARCH COAL INC          COM           039380100      54      1200 SH      DEFINED                 7,11,33        0       0     1200
ARCH COAL INC          COM           039380100    8301    184746 SH      DEFINED              16,24,25     152806       0    31939
ARCH COAL INC          COM           039380100    2926     65126 SH      DEFINED              32,40,41      65126       0        0
ARCH COAL INC          COM           039380100   41816    930700 SH  CALL DEFINED              15,16,24     930700       0        0
ARCH COAL INC          COM           039380100    9314    207300 SH  PUT DEFINED              15,16,24     207300       0        0
ARCHER DANIELS MIDLA COM             039483102      70      1500 SH      DEFINED                   12           0       0     1500
ARCHER DANIELS MIDLA COM             039483102    1286     27700 SH      DEFINED                   30       27700       0        0
ARCHER DANIELS MIDLA COM             039483102  133525   2875844 SH      DEFINED                 7,11     2804840       0    71004
ARCHER DANIELS MIDLA COM             039483102     239      5144 SH      DEFINED                 7,11,13    1694        0     3450
ARCHER DANIELS MIDLA COM             039483102    1802     38819 SH      DEFINED                 7,11,33       0       0    38819
ARCHER DANIELS MIDLA COM             039483102  165775   3570423 SH      DEFINED              16,24,25    3206865       0   363557
ARCHER DANIELS MIDLA COM             039483102     820     17667 SH      DEFINED              32,40,41      17667       0        0
ARCHER DANIELS MIDLA COM             039483102     302      6500 SH      DEFINED           16,19,24,26,27    6500       0        0
ARCHER DANIELS MIDLA COM             039483102  543417  11704000 SH  CALL DEFINED              15,16,24   11704000       0        0
ARCHER DANIELS MIDLA COM             039483102   49833   1073300 SH  CALL DEFINED              15,16,24    1073300       0        0
ARCHER DANIELS MIDLA COM             039483102   27798    598700 SH  CALL DEFINED              16,24,25     598700       0        0
ARCHER DANIELS MIDLA COM             039483102      93      2000 SH  PUT DEFINED                 7,11        2000       0        0
ARCHER DANIELS MIDLA COM             039483102   26423    569100 SH  PUT DEFINED              15,16,24     569100       0        0
```

| Issuer | Class | CUSIP | | Value | Type | Option | Status | Codes | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ARCHER DANIELS MIDLA | COM | 039483102 | 32111 | 691600 | SH | PUT | DEFINED | 16,24,25 | 691600 | 0 | 0 |
| ARENA RESOURCES INC | COM | 040049108 | 89 | 2125 | SH | | DEFINED | 30 | 2125 | 0 | 0 |
| ARENA RESOURCES INC | COM | 040049108 | 447 | 10478 | SH | | DEFINED | 16,24,25 | 10478 | 0 | 250 |
| ARES CAP CORP | COM | 04010L103 | 119 | 8152 | SH | | DEFINED | 7,11 | 8152 | 0 | 0 |
| ARES CAP CORP | COM | 04010L103 | 3417 | 233554 | SH | | DEFINED | 16,24,25 | 209985 | 0 | 23569 |
| ARIAD PHARMACEUTICAL | COM | 04033A100 | 13 | 3133 | SH | | DEFINED | 15,16,24 | 3133 | 0 | 0 |
| ARIAD PHARMACEUTICAL | COM | 04033A100 | 102 | 23922 | SH | | DEFINED | 16,24,25 | 20922 | 0 | 3000 |
| ARIAD PHARMACEUTICAL | COM | 04033A100 | 10 | 2300 | SH | PUT | DEFINED | 15,16,24 | 2300 | 0 | 0 |
| ARIBA INC | COM NEW | 04033V203 | 50 | 4504 | SH | | DEFINED | 15,16,24 | 4504 | 0 | 0 |
| ARIBA INC | COM NEW | 04033V203 | 125 | 11225 | SH | | DEFINED | 16,24,25 | 11225 | 0 | 0 |
| ARIBA INC | COM NEW | 04033V203 | 198 | 17800 | SH | CALL | DEFINED | 15,16,24 | 17800 | 0 | 0 |
| ARIBA INC | COM NEW | 04033V203 | 86 | 7700 | SH | PUT | DEFINED | 15,16,24 | 7700 | 0 | 0 |
| ARKANSAS BEST CORP D | COM | 040790107 | 42 | 1900 | SH | | DEFINED | 30 | 1900 | 0 | 0 |
| ARKANSAS BEST CORP D | COM | 040790107 | 7 | 330 | SH | | DEFINED | 7,11 | 0 | 0 | 330 |
| ARKANSAS BEST CORP D | COM | 040790107 | 364 | 16597 | SH | | DEFINED | 16,24,25 | 15956 | 0 | 641 |
| ARM HLDGS PLC | SPONSORED | 042068106 | 150 | 20294 | SH | | DEFINED | 16,24,25 | 5559 | 0 | 14735 |
| ARMSTRONG WORLD INDS | COM | 04247X102 | 1003 | 25000 | SH | | DEFINED | 31,45 | 25000 | 0 | 0 |
| ARMSTRONG WORLD INDS | COM | 04247X102 | 137 | 3405 | SH | | DEFINED | 16,24,25 | 2221 | 0 | 1184 |
| ARRIS GROUP INC | COM | 04269Q100 | 542 | 54284 | SH | | DEFINED | 7,11,13 | 54284 | 0 | 0 |
| ARRIS GROUP INC | COM | 04269Q100 | 5 | 461 | SH | | DEFINED | 7,11,13 | 0 | 0 | 461 |
| ARRIS GROUP INC | COM | 04269Q100 | 26 | 2648 | SH | | DEFINED | 15,16,24 | 2648 | 0 | 0 |
| ARRIS GROUP INC | COM | 04269Q100 | 1258 | 126086 | SH | | DEFINED | 16,24,25 | 93034 | 0 | 33052 |
| ARRIS GROUP INC | COM | 04269Q100 | 307 | 30800 | SH | | DEFINED | 32,40,41 | 30800 | 0 | 0 |
| ARRIS GROUP INC | COM | 04269Q100 | 602 | 60300 | SH | CALL | DEFINED | 15,16,24 | 60300 | 0 | 0 |
| ARRIS GROUP INC | COM | 04269Q100 | 327 | 32800 | SH | PUT | DEFINED | 15,16,24 | 32800 | 0 | 0 |
| ARRAY BIOPHARMA INC | COM | 04269X105 | 66 | 7800 | SH | | DEFINED | 30 | 7800 | 0 | 0 |
| ARRAY BIOPHARMA INC | COM | 04269X105 | 36 | 4295 | SH | | DEFINED | 16,24,25 | 4295 | 0 | 0 |
| ARROW ELECTRS INC | COM | 042735100 | 3493 | 88919 | SH | | DEFINED | 7,11 | 88919 | 0 | 0 |
| ARROW ELECTRS INC | COM | 042735100 | 1301 | 33124 | SH | | DEFINED | 16,24,25 | 30488 | 0 | 2636 |
| ARROW ELECTRS INC | COM | 042735100 | 532 | 13550 | SH | | DEFINED | 32,40,41 | 13550 | 0 | 0 |
| ARTESIAN RESOURCES C | CL A | 043113208 | 9 | 450 | SH | | DEFINED | 7,11,13 | 450 | 0 | 0 |
| ARTESIAN RESOURCES C | CL A | 043113208 | 286 | 15129 | SH | | DEFINED | 16,24,25 | 14418 | 0 | 711 |
| ARTHROCARE CORP | COM | 043136100 | 768 | 15974 | SH | | DEFINED | 16,24,25 | 15958 | 0 | 16 |
| ARTS WAY MFG INC | COM | 043168103 | 436 | 15197 | SH | | DEFINED | 16,24,25 | 13072 | 0 | 2125 |
| ARUBA NETWORKS INC | COM | 043176106 | 104 | 7000 | SH | | DEFINED | 30 | 7000 | 0 | 0 |
| ARUBA NETWORKS INC | COM | 043176106 | 88 | 5916 | SH | | DEFINED | 16,24,25 | 3831 | 0 | 2085 |
| ARVINMERITOR INC | COM | 043353101 | 49 | 4200 | SH | | DEFINED | 30 | 4200 | 0 | 0 |
| ARVINMERITOR INC | COM | 043353101 | 7 | 562 | SH | | DEFINED | 7,11 | 0 | 0 | 562 |
| ARVINMERITOR INC | COM | 043353101 | 1813 | 154582 | SH | | DEFINED | 16,24,25 | 106887 | 0 | 47695 |
| ARVINMERITOR INC | COM | 043353101 | 59 | 5000 | SH | CALL | DEFINED | 16,24,25 | 5000 | 0 | 0 |
| ASHFORD HOSPITALITY | COM SHS | 044103109 | 2124 | 299356 | SH | | DEFINED | 16,24,25 | 173324 | 0 | 122032 |
| ASHFORD HOSPITALITY | COM SHS | 044103109 | 362 | 50345 | SH | | DEFINED | 32,40,41 | 50345 | 0 | 0 |
| ASHLAND INC NEW | COM | 044209104 | 401 | 8460 | SH | | DEFINED | 7,11 | 8460 | 0 | 0 |
| ASHLAND INC NEW | COM | 044209104 | 17 | 352 | SH | | DEFINED | 7,11,13 | 352 | 0 | 0 |
| ASHLAND INC NEW | COM | 044209104 | 1563 | 32959 | SH | | DEFINED | 15,16,24 | 32959 | 0 | 0 |
| ASHLAND INC NEW | COM | 044209104 | 541 | 11405 | SH | | DEFINED | 16,24,25 | 10130 | 0 | 1275 |
| ASHLAND INC NEW | COM | 044209104 | 3 | 56 | SH | | DEFINED | 32,40,41 | 56 | 0 | 0 |
| ASHLAND INC NEW | COM | 044209104 | 4786 | 100900 | SH | CALL | DEFINED | 15,16,24 | 100900 | 0 | 0 |
| ASHLAND INC NEW | COM | 044209104 | 8936 | 188400 | SH | PUT | DEFINED | 15,16,24 | 188400 | 0 | 0 |
| ASIA PAC FD INC | COM | 04901106 | 395 | 16267 | SH | | DEFINED | 16,24,25 | 14860 | 0 | 1407 |
| ASIA TIGERS FD INC | COM | 04516T105 | 1214 | 40475 | SH | | DEFINED | 16,24,25 | 17237 | 0 | 23238 |
| ASIAINFO HLDGS INC | COM | 04518A104 | 127 | 11558 | SH | | DEFINED | 16,24,25 | 11487 | 0 | 71 |
| ASPECT MED SYS INC | COM | 045235108 | 145 | 10385 | SH | | DEFINED | 16,24,25 | 3710 | 0 | 6675 |
| ASPEN TECHNOLOGY INC | COM | 045327103 | 323 | 19883 | SH | | DEFINED | 16,24,25 | 19883 | 0 | 0 |
| ASPREVA PHARMACEUTIC | COM | 04538T109 | 213 | 8187 | SH | | DEFINED | 16,24,25 | 8047 | 0 | 140 |
| ASSOCIATED BANC CORP | COM | 045487105 | 319 | 11775 | SH | | DEFINED | 7,11 | 11775 | 0 | 0 |
| ASSOCIATED BANC CORP | COM | 045487105 | 16 | 600 | SH | | DEFINED | 7,11,13 | 600 | 0 | 0 |
| ASSOCIATED BANC CORP | COM | 045487105 | 1391 | 51343 | SH | | DEFINED | 16,24,25 | 39250 | 0 | 12093 |
| ASSOCIATED BANC CORP | COM | 045487105 | 126 | 4659 | SH | | DEFINED | 32,40,41 | 4659 | 0 | 0 |
| ASSURANT INC | COM | 04621X108 | 718 | 10738 | SH | | DEFINED | 7,11 | 10738 | 0 | 0 |
| ASSURANT INC | COM | 04621X108 | 3341 | 49942 | SH | | DEFINED | 16,24,25 | 45425 | 0 | 4517 |
| ASSURANT INC | COM | 04621X108 | 95 | 1425 | SH | | DEFINED | 32,40,41 | 1425 | 0 | 0 |
| ASTA FDG INC | COM | 046220109 | 376 | 14225 | SH | | DEFINED | 7,11,13 | 14225 | 0 | 0 |
| ASTA FDG INC | COM | 046220109 | 257 | 9730 | SH | | DEFINED | 16,24,25 | 8235 | 0 | 1495 |
| ASTORIA FINL CORP | COM | 046265104 | 0 | 1 | SH | | DEFINED | 30 | 1 | 0 | 0 |
| ASTORIA FINL CORP | COM | 046265104 | 2808 | 120679 | SH | | DEFINED | 7,11 | 120679 | 0 | 0 |
| ASTORIA FINL CORP | COM | 046265104 | 4450 | 191214 | SH | | DEFINED | 16,24,25 | 153882 | 0 | 37332 |
| ASTRAZENECA PLC | SPONSORED | 046353108 | 295 | 6880 | SH | | DEFINED | 30 | 6880 | 0 | 0 |
| ASTRAZENECA PLC | SPONSORED | 046353108 | 196 | 4586 | SH | | DEFINED | 7,11 | 0 | 0 | 4586 |
| ASTRAZENECA PLC | SPONSORED | 046353108 | 12 | 270 | SH | | DEFINED | 7,11,13 | 270 | 0 | 0 |
| ASTRAZENECA PLC | SPONSORED | 046353108 | 10948 | 255668 | SH | | DEFINED | 15,16,24 | 255668 | 0 | 0 |
| ASTRAZENECA PLC | SPONSORED | 046353108 | 3898 | 91029 | SH | | DEFINED | 16,24,25 | 79471 | 0 | 11557 |
| ASTRAZENECA PLC | SPONSORED | 046353108 | 11313 | 264200 | SH | | DEFINED | 32,40,41 | 264200 | 0 | 0 |
| ASTRAZENECA PLC | SPONSORED | 046353108 | 18554 | 433304 | SH | | DEFINED | 16,19,24,26,29 | 433304 | 0 | 0 |
| ASTRAZENECA PLC | SPONSORED | 046353108 | 4081 | 95300 | SH | CALL | DEFINED | 15,16,24 | 95300 | 0 | 0 |
| ASTRAZENECA PLC | SPONSORED | 046353108 | 17620 | 411500 | SH | PUT | DEFINED | 15,16,24 | 411500 | 0 | 0 |
| ATHENAHEALTH INC | COM | 04685W103 | 513 | 14245 | SH | | DEFINED | 15,16,24 | 14245 | 0 | 0 |
| ATHENAHEALTH INC | COM | 04685W103 | 175 | 4868 | SH | | DEFINED | 16,24,25 | 2168 | 0 | 2700 |
| ATHENAHEALTH INC | COM | 04685W103 | 3006 | 83500 | SH | | DEFINED | 15,16,24 | 83500 | 0 | 0 |
| ATHENAHEALTH INC | COM | 04685W103 | 1573 | 43700 | SH | PUT | DEFINED | 15,16,24 | 43700 | 0 | 0 |
| ATHEROS COMMUNICATIO | COM | 04743P108 | 113 | 3700 | SH | | DEFINED | 30 | 3700 | 0 | 0 |
| ATHEROS COMMUNICATIO | COM | 04743P108 | 106 | 3467 | SH | | DEFINED | 16,24,25 | 3297 | 0 | 170 |
| ATHEROS COMMUNICATIO | COM | 04743P108 | 5198 | 170200 | SH | CALL | DEFINED | 15,16,24 | 170200 | 0 | 0 |
| ATHEROS COMMUNICATIO | COM | 04743P108 | 31 | 1000 | SH | CALL | DEFINED | 16,24,25 | 1000 | 0 | 0 |
| ATHEROS COMMUNICATIO | COM | 04743P108 | 809 | 26500 | SH | PUT | DEFINED | 15,16,24 | 26500 | 0 | 0 |
| ATHEROS COMMUNICATIO | COM | 04743P108 | 73 | 2400 | SH | PUT | DEFINED | 16,24,25 | 2400 | 0 | 0 |
| ATHEROGENICS INC | NOTE 1.50 | 04743A9D6 | 1052 | 15030000 | PRN | | DEFINED | 16,24,25 | 15030000 | 0 | 0 |
| ATHEROGENICS INC | COM | 047439104 | 40 | 105511 | SH | | DEFINED | 15,16,24 | 105511 | 0 | 0 |
| ATHEROGENICS INC | COM | 047439104 | 10 | 25974 | SH | | DEFINED | 16,24,25 | 25824 | 0 | 150 |
| ATHEROGENICS INC | COM | 047439104 | 47 | 124000 | SH | CALL | DEFINED | 15,16,24 | 124000 | 0 | 0 |
| ATHEROGENICS INC | COM | 047439104 | 46 | 121800 | SH | PUT | DEFINED | 15,16,24 | 121800 | 0 | 0 |
| ATLAS AIR WORLDWIDE | COM NEW | 049164205 | 241 | 4438 | SH | | DEFINED | 16,24,25 | 4438 | 0 | 0 |
| ATLAS AMER INC | COM | 049167109 | 412 | 6969 | SH | | DEFINED | 16,24,25 | 6806 | 0 | 163 |
| ATLAS ENERGY RESOURC | COM | 049303100 | 3 | 100 | SH | | DEFINED | 16,24 | 100 | 0 | 0 |
| ATLAS ENERGY RESOURC | COM | 049303100 | 426 | 13704 | SH | | DEFINED | 16,24,25 | 13625 | 0 | 79 |
| ATLAS PIPELINE HOLDI | COM UNITS | 04939R108 | 1157 | 42640 | SH | | DEFINED | 16,24,25 | 25930 | 0 | 16710 |
| ATLAS PIPELINE PARTN | UNIT L P I | 04939Z103 | 16601 | 387415 | SH | | DEFINED | 16,24,25 | 366213 | 0 | 21201 |
| ATMEL CORP | COM | 049513104 | 1948 | 450955 | SH | | DEFINED | 7,11 | 450955 | 0 | 0 |
| ATMEL CORP | COM | 049513104 | 535 | 123884 | SH | | DEFINED | 16,24,25 | 121784 | 0 | 2100 |
| ATMEL CORP | COM | 049513104 | 302 | 69970 | SH | | DEFINED | 32,40,41 | 69970 | 0 | 0 |
| ATMOS ENERGY CORP | COM | 049560105 | 64 | 2300 | SH | | DEFINED | 30 | 2300 | 0 | 0 |
| ATMOS ENERGY CORP | COM | 049560105 | 972 | 34677 | SH | | DEFINED | 7,11 | 34577 | 0 | 100 |
| ATMOS ENERGY CORP | COM | 049560105 | 10 | 364 | SH | | DEFINED | 7,11,13 | 0 | 0 | 364 |
| ATMOS ENERGY CORP | COM | 049560105 | 1399 | 49910 | SH | | DEFINED | 16,24,25 | 43402 | 0 | 6508 |
| ATWOOD OCEANICS INC | COM | 050095108 | 95 | 950 | SH | | DEFINED | 30 | 950 | 0 | 0 |
| ATWOOD OCEANICS INC | COM | 050095108 | 3874 | 38650 | SH | | DEFINED | 16,24,25 | 35126 | 0 | 3524 |
| AUDIBLE INC | COM NEW | 05069A302 | 304 | 34068 | SH | | DEFINED | 16,24,25 | 27638 | 0 | 6430 |
| AUDIOCODES LTD | NOTE 2.00 | 050732AB2 | 73 | 79000 | PRN | | DEFINED | 16,24,25 | 79000 | 0 | 0 |
| AUDIOVOX CORP | CL A | 050757103 | 291 | 23453 | SH | | DEFINED | 16,24,25 | 22440 | 0 | 1013 |
| AUGUSTA RES CORP | COM NEW | 050912203 | 32 | 7343 | SH | | DEFINED | 16,24,25 | 6894 | 0 | 449 |
| AUGUSTA RES CORP | COM NEW | 050912203 | 1346 | 306544 | SH | | DEFINED | 4,6,7,11 | 306544 | 0 | 0 |
| AURIZON MINES LTD | COM | 05155P106 | 1 | 208 | SH | | DEFINED | 16,24,25 | 208 | 0 | 0 |
| AURIZON MINES LTD | COM | 05155P106 | 641 | 164802 | SH | | DEFINED | 4,6,7,11 | 164802 | 0 | 0 |
| AUTODESK INC | COM | 052769106 | 463 | 9300 | SH | | DEFINED | 30 | 9300 | 0 | 0 |

| Name | Class | CUSIP | Col1 | Col2 | SH/PRN | Type | Codes | ColA | ColB | ColC |
|---|---|---|---|---|---|---|---|---|---|---|
| AUTODESK INC | COM | 052769106 | 3 | 166 | SH | DEFINED | 3,9 | 0 | 0 | 166 |
| AUTODESK INC | COM | 052769106 | 3539 | 71126 | SH | DEFINED | 7,11 | 71126 | 0 | 0 |
| AUTODESK INC | COM | 052769106 | 827 | 16625 | SH | DEFINED | 7,11,13 | 16625 | 0 | 0 |
| AUTODESK INC | COM | 052769106 | 530 | 10660 | SH | DEFINED | 7,11,33 | 0 | 0 | 10660 |
| AUTODESK INC | COM | 052769106 | 106690 | 2144101 | SH | DEFINED | 16,24,25 | 2021301 | 0 | 122800 |
| AUTODESK INC | COM | 052769106 | 346 | 6956 | SH | DEFINED | 32,40,41 | 6956 | 0 | 0 |
| AUTODESK INC | COM | 052769106 | 3668 | 73705 | SH | DEFINED | 7,11 | 73705 | 0 | 0 |
| AUTODESK INC | COM | 052769106 | 5399 | 108500 | SH | CALL DEFINED | 15,16,24 | 108500 | 0 | 0 |
| AUTODESK INC | COM | 052769106 | 6986 | 140400 | SH | CALL DEFINED | 16,24,25 | 140400 | 0 | 0 |
| AUTODESK INC | COM | 052769106 | 9221 | 185300 | SH | PUT DEFINED | 15,16,24 | 185300 | 0 | 0 |
| AUTODESK INC | COM | 052769106 | 7544 | 151605 | SH | PUT DEFINED | 16,24,25 | 151605 | 0 | 0 |
| AUTOLIV INC | COM | 052800109 | 284 | 5386 | SH | DEFINED | 7,11 | 4363 | 0 | 1023 |
| AUTOLIV INC | COM | 052800109 | 1794 | 34035 | SH | DEFINED | 7,11,13 | 34035 | 0 | 0 |
| AUTOLIV INC | COM | 052800109 | 3296 | 62532 | SH | DEFINED | 16,24,25 | 60962 | 0 | 1570 |
| AUTOMATIC DATA PROCE | COM | 053015103 | 234 | 5250 | SH | DEFINED | 12 | 0 | 0 | 5250 |
| AUTOMATIC DATA PROCE | COM | 053015103 | 11492 | 258069 | SH | DEFINED | 7,11 | 51939 | 975 | 205155 |
| AUTOMATIC DATA PROCE | COM | 053015103 | 4269 | 95868 | SH | DEFINED | 7,11,13 | 87568 | 0 | 8300 |
| AUTOMATIC DATA PROCE | COM | 053015103 | 381 | 8559 | SH | DEFINED | 7,11,33 | 0 | 0 | 8559 |
| AUTOMATIC DATA PROCE | COM | 053015103 | 54439 | 1222513 | SH | DEFINED | 16,24,25 | 935444 | 0 | 287068 |
| AUTOMATIC DATA PROCE | COM | 053015103 | 721 | 16197 | SH | DEFINED | 32,40,41 | 16197 | 0 | 0 |
| AUTOMATIC DATA PROCE | COM | 053015103 | 27956 | 627800 | SH | CALL DEFINED | 15,16,24 | 627800 | 0 | 0 |
| AUTOMATIC DATA PROCE | COM | 053015103 | 8861 | 199000 | SH | DEFINED | 16,24,25 | 199000 | 0 | 0 |
| AUTOMATIC DATA PROCE | COM | 053015103 | 12117 | 272100 | SH | PUT DEFINED | 15,16,24 | 272100 | 0 | 0 |
| AUTOMATIC DATA PROCE | COM | 053015103 | 9374 | 210500 | SH | PUT DEFINED | 16,24,25 | 210500 | 0 | 0 |
| AUTONATION INC | COM | 05329W102 | 258 | 16451 | SH | DEFINED | 7,11 | 16451 | 0 | 0 |
| AUTONATION INC | COM | 05329W102 | 5465 | 348985 | SH | DEFINED | 16,24,25 | 325090 | 0 | 23895 |
| AUTONATION INC | COM | 05329W102 | 82 | 5260 | SH | DEFINED | 32,40,41 | 5260 | 0 | 0 |
| AUTONATION INC | COM | 05329W102 | 1483 | 94700 | SH | CALL DEFINED | 15,16,24 | 94700 | 0 | 0 |
| AUTONATION INC | COM | 05329W102 | 777 | 49600 | SH | CALL DEFINED | 16,24,25 | 49600 | 0 | 0 |
| AUTONATION INC | COM | 05329W102 | 855 | 54600 | SH | PUT DEFINED | 15,16,24 | 54600 | 0 | 0 |
| AUTONATION INC | COM | 05329W102 | 2170 | 138600 | SH | PUT DEFINED | 16,24,25 | 138600 | 0 | 0 |
| AUTOZONE INC | COM | 053332102 | 3010 | 25098 | SH | DEFINED | 7,11 | 21998 | 0 | 3100 |
| AUTOZONE INC | COM | 053332102 | 240 | 2000 | SH | DEFINED | 7,11,13 | 2000 | 0 | 0 |
| AUTOZONE INC | COM | 053332102 | 11176 | 93203 | SH | DEFINED | 16,24,25 | 87989 | 0 | 5214 |
| AUTOZONE INC | COM | 053332102 | 524 | 4369 | SH | DEFINED | 32,40,41 | 4369 | 0 | 0 |
| AUTOZONE INC | COM | 053332102 | 14641 | 122100 | SH | CALL DEFINED | 15,16,24 | 122100 | 0 | 0 |
| AUTOZONE INC | COM | 053332102 | 504 | 4200 | SH | CALL DEFINED | 16,24,25 | 4200 | 0 | 0 |
| AUTOZONE INC | COM | 053332102 | 21188 | 176700 | SH | PUT DEFINED | 15,16,24 | 176700 | 0 | 0 |
| AUTOZONE INC | COM | 053332102 | 552 | 4600 | SH | PUT DEFINED | 16,24,25 | 4600 | 0 | 0 |
| AUXILIUM PHARMACEUTI | COM | 05334D107 | 3406 | 113569 | SH | DEFINED | 16,24,25 | 98894 | 0 | 14675 |
| AVANIR PHARMACEUTICA CL A NEW | COM | 05348P401 | 16 | 12572 | SH | DEFINED | 16,24,25 | 4947 | 0 | 7625 |
| AVALONBAY CMNTYS INC | COM | 053484101 | 1222 | 12981 | SH | DEFINED | 7,11 | 10168 | 0 | 2813 |
| AVALONBAY CMNTYS INC | COM | 053484101 | 9678 | 102800 | SH | DEFINED | 14,31 | 102800 | 0 | 0 |
| AVALONBAY CMNTYS INC | COM | 053484101 | 39 | 410 | SH | DEFINED | 7,11,13 | 400 | 0 | 10 |
| AVALONBAY CMNTYS INC | COM | 053484101 | 634 | 6729 | SH | DEFINED | 16,24,25 | 4499 | 0 | 2230 |
| AVALONBAY CMNTYS INC | COM | 053484101 | 8090 | 85935 | SH | DEFINED | 32,40,41 | 85935 | 0 | 0 |
| AVALONBAY CMNTYS INC | COM | 053484101 | 174 | 1844 | SH | DEFINED | 16,19,24,26,27 | 1844 | 0 | 0 |
| AVATAR HLDGS INC | NOTE 4.50 | 05349AAF7 | 13302 | 13820000 | PRN | DEFINED | 16,24,25 | 13820000 | 0 | 0 |
| AVERY DENNISON CORP | COM | 053611109 | 345 | 6500 | SH | DEFINED | 30 | 6500 | 0 | 0 |
| AVERY DENNISON CORP | COM | 053611109 | 2425 | 45627 | SH | DEFINED | 7,11 | 35143 | 0 | 10484 |
| AVERY DENNISON CORP | COM | 053611109 | 2154 | 40539 | SH | DEFINED | 7,11,13 | 40314 | 0 | 225 |
| AVERY DENNISON CORP | COM | 053611109 | 12 | 220 | SH | DEFINED | 7,11,33 | 0 | 0 | 220 |
| AVERY DENNISON CORP | COM | 053611109 | 9160 | 172367 | SH | DEFINED | 16,24,25 | 147914 | 0 | 24452 |
| AVERY DENNISON CORP | COM | 053611109 | 5953 | 112029 | SH | DEFINED | 32,40,41 | 112029 | 0 | 0 |
| AVERY DENNISON CORP | COM | 053611109 | 32 | 600 | SH | DEFINED | 5-7,11,43,44 | 0 | 600 | 0 |
| AVID TECHNOLOGY INC | COM | 05367P100 | 1535 | 54172 | SH | DEFINED | 7,11 | 54172 | 0 | 0 |
| AVID TECHNOLOGY INC | COM | 05367P100 | 1166 | 41149 | SH | DEFINED | 16,24,25 | 16979 | 0 | 24170 |
| AVID TECHNOLOGY INC | COM | 05367P100 | 2262 | 79800 | SH | CALL DEFINED | 15,16,24 | 79800 | 0 | 0 |
| AVID TECHNOLOGY INC | COM | 05367P100 | 1057 | 37300 | SH | PUT DEFINED | 15,16,24 | 37300 | 0 | 0 |
| AVIS BUDGET GROUP | COM | 053774105 | 6 | 437 | SH | DEFINED | 7,11 | 437 | 0 | 0 |
| AVIS BUDGET GROUP | COM | 053774105 | 3900 | 300000 | SH | DEFINED | 16,24 | 300000 | 0 | 0 |
| AVIS BUDGET GROUP | COM | 053774105 | 548 | 42135 | SH | DEFINED | 16,24,25 | 34644 | 0 | 7490 |
| AVIS BUDGET GROUP | COM | 053774105 | 77 | 5941 | SH | DEFINED | 32,40,41 | 5941 | 0 | 0 |
| AVIS BUDGET GROUP | COM | 053774105 | 3627 | 279000 | SH | CALL DEFINED | 15,16,24 | 279000 | 0 | 0 |
| AVIS BUDGET GROUP | COM | 053774105 | 2152 | 165500 | SH | CALL DEFINED | 16,24,25 | 165500 | 0 | 0 |
| AVIS BUDGET GROUP | COM | 053774105 | 640 | 49200 | SH | PUT DEFINED | 15,16,24 | 49200 | 0 | 0 |
| AVISTA CORP | COM | 05379B107 | 20 | 907 | SH | DEFINED | 7,11,13 | 907 | 0 | 0 |
| AVISTA CORP | COM | 05379B107 | 551 | 25600 | SH | DEFINED | 16,24,25 | 23805 | 0 | 1794 |
| AVISTA CORP | COM | 05379B107 | 132 | 6134 | SH | DEFINED | 16,19,24,26,27 | 6134 | 0 | 0 |
| AVNET INC | DBCV 2.00 | 053807AL7 | 169 | 144000 | PRN | DEFINED | 16,24,25 | 144000 | 0 | 0 |
| AVNET INC | COM | 053807103 | 234 | 6700 | SH | DEFINED | 3,9 | 0 | 0 | 6700 |
| AVNET INC | COM | 053807103 | 2354 | 67314 | SH | DEFINED | 7,11 | 67314 | 0 | 0 |
| AVNET INC | COM | 053807103 | 358 | 10225 | SH | DEFINED | 7,11,13 | 10225 | 0 | 0 |
| AVNET INC | COM | 053807103 | 3763 | 107602 | SH | DEFINED | 16,24,25 | 103049 | 0 | 4553 |
| AVNET INC | COM | 053807103 | 664 | 18995 | SH | DEFINED | 32,40,41 | 18995 | 0 | 0 |
| AVOCENT CORP | COM | 053893103 | 47 | 2000 | SH | DEFINED | 7,11,13 | 2000 | 0 | 0 |
| AVOCENT CORP | COM | 053893103 | 169 | 7263 | SH | DEFINED | 16,24,25 | 6213 | 0 | 1050 |
| AVOCENT CORP | COM | 053893103 | 396 | 17000 | SH | CALL DEFINED | 15,16,24 | 17000 | 0 | 0 |
| AVOCENT CORP | COM | 053893103 | 443 | 19000 | SH | PUT DEFINED | 15,16,24 | 19000 | 0 | 0 |
| AVON PRODS INC | COM | 054303102 | 198 | 5000 | SH | DEFINED | 12 | 0 | 0 | 5000 |
| AVON PRODS INC | COM | 054303102 | 3788 | 95832 | SH | DEFINED | 7,11 | 94932 | 0 | 900 |
| AVON PRODS INC | COM | 054303102 | 1587 | 40137 | SH | DEFINED | 7,11,13 | 36401 | 0 | 3736 |
| AVON PRODS INC | COM | 054303102 | 4 | 100 | SH | DEFINED | 7,11,33 | 0 | 0 | 100 |
| AVON PRODS INC | COM | 054303102 | 79822 | 2019283 | SH | DEFINED | 16,24,25 | 1901379 | 0 | 117904 |
| AVON PRODS INC | COM | 054303102 | 1495 | 37812 | SH | DEFINED | 32,40,41 | 37812 | 0 | 0 |
| AVON PRODS INC | COM | 054303102 | 390 | 9875 | SH | DEFINED | 16,19,24,26,27 | 9875 | 0 | 0 |
| AVON PRODS INC | COM | 054303102 | 2961 | 74912 | SH | CALL DEFINED | 7,11 | 74912 | 0 | 0 |
| AVON PRODS INC | COM | 054303102 | 7890 | 199600 | SH | CALL DEFINED | 15,16,24 | 199600 | 0 | 0 |
| AVON PRODS INC | COM | 054303102 | 439 | 11100 | SH | CALL DEFINED | 16,24,25 | 11100 | 0 | 0 |
| AVON PRODS INC | COM | 054303102 | 7851 | 198600 | SH | PUT DEFINED | 15,16,24 | 198600 | 0 | 0 |
| AVON PRODS INC | COM | 054303102 | 3400 | 86012 | SH | PUT DEFINED | 16,24,25 | 86012 | 0 | 0 |
| AXA | SPONSORED | 054536107 | 303 | 7620 | SH | DEFINED | 30 | 7620 | 0 | 0 |
| AXA | SPONSORED | 054536107 | 883 | 22228 | SH | DEFINED | 7,11 | 0 | 0 | 22228 |
| AXA | SPONSORED | 054536107 | 22 | 542 | SH | DEFINED | 7,11,13 | 468 | 0 | 74 |
| AXA | SPONSORED | 054536107 | 97 | 2432 | SH | DEFINED | 7,11,33 | 0 | 0 | 2432 |
| AXA | SPONSORED | 054536107 | 6802 | 171293 | SH | DEFINED | 16,24,25 | 139890 | 0 | 31402 |
| AXCELIS TECHNOLOGIES | COM | 054540109 | 18 | 3890 | SH | DEFINED | 7,11 | 0 | 0 | 3890 |
| AXCELIS TECHNOLOGIES | COM | 054540109 | 538 | 116937 | SH | DEFINED | 16,24,25 | 96797 | 0 | 20140 |
| AXSYS TECHNOLOGIES I | COM | 054615109 | 701 | 19139 | SH | DEFINED | 16,24,25 | 18106 | 0 | 1033 |
| BB&T CORP | COM | 054937107 | 2537 | 82714 | SH | DEFINED | 7,11 | 81014 | 0 | 1700 |
| BB&T CORP | COM | 054937107 | 1820 | 59327 | SH | DEFINED | 7,11,13 | 58552 | 0 | 775 |
| BB&T CORP | COM | 054937107 | 10510 | 342694 | SH | DEFINED | 16,24,25 | 227881 | 0 | 114812 |
| BB&T CORP | COM | 054937107 | 495 | 16147 | SH | DEFINED | 32,40,41 | 16147 | 0 | 0 |
| BB&T CORP | COM | 054937107 | 4266 | 139100 | SH | CALL DEFINED | 15,16,24 | 139100 | 0 | 0 |
| BB&T CORP | COM | 054937107 | 5245 | 171000 | SH | CALL DEFINED | 16,24,25 | 171000 | 0 | 0 |
| BB&T CORP | COM | 054937107 | 2808 | 91500 | SH | PUT DEFINED | 15,16,24 | 91500 | 0 | 0 |
| B & G FOODS INC NEW | UNIT 99/99 | 05508R205 | 7 | 400 | SH | DEFINED | 7,11 | 0 | 0 | 400 |
| B & G FOODS INC NEW | UNIT 99/99 | 05508R205 | 392 | 21901 | SH | DEFINED | 16,24,25 | 19728 | 0 | 2173 |
| BCE INC | COM NEW | 05534B760 | 65 | 1647 | SH | DEFINED | 7,11 | 0 | 0 | 1647 |
| BCE INC | COM NEW | 05534B760 | 28 | 700 | SH | DEFINED | 16,24 | 700 | 0 | 0 |
| BCE INC | COM NEW | 05534B760 | 471 | 11862 | SH | DEFINED | 7,11,13 | 11862 | 0 | 0 |
| BCE INC | COM NEW | 05534B760 | 4017 | 101089 | SH | DEFINED | 16,24,25 | 86334 | 2 | 14755 |
| BCE INC | COM NEW | 05534B760 | 10321 | 259710 | SH | DEFINED | 32,40,41 | 259710 | 0 | 0 |
| BCE INC | COM NEW | 05534B760 | 2451 | 61688 | SH | DEFINED | 4,6,7,11 | 61688 | 0 | 0 |

| Name | Type | CUSIP | Col1 | Col2 | Ind | Status | Codes | Col3 | Col4 | Col5 | Col6 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| BFC FINL CORP | CL A | 055384200 | 20 | 13543 | SH | DEFINED | 16,24,25 | 12650 | 0 | 893 | |
| BHP BILLITON PLC | SPONSORED | 05545E209 | 307 | 5001 | SH | DEFINED | 16,24,25 | 4068 | 0 | 933 | |
| BHP BILLITON PLC | SPONSORED | 05545E209 | 1077 | 17567 | SH | DEFINED | 16,19,24,26,29 | 17567 | 0 | 0 | |
| BJS WHOLESALE CLUB I | COM | 05548J106 | 984 | 29075 | SH | DEFINED | 7,11 | 29075 | 0 | 0 | |
| BJS WHOLESALE CLUB I | COM | 05548J106 | 112 | 3325 | SH | DEFINED | 7,11,13 | 3325 | 0 | 0 | |
| BJS WHOLESALE CLUB I | COM | 05548J106 | 11126 | 328877 | SH | DEFINED | 16,24,25 | 309662 | 0 | 19215 | |
| BJ SVCS CO | COM | 054482103 | 8869 | 365600 | SH | DEFINED | 42 | 365600 | 0 | 0 | |
| BJ SVCS CO | COM | 054482103 | 1948 | 80279 | SH | DEFINED | 7,11 | 80279 | 0 | 0 | |
| BJ SVCS CO | COM | 054482103 | 164 | 6775 | SH | DEFINED | 7,11,13 | 6775 | 0 | 0 | |
| BJ SVCS CO | COM | 054482103 | 8 | 340 | SH | DEFINED | 7,11,33 | 0 | 0 | 340 | |
| BJ SVCS CO | COM | 054482103 | 17215 | 709591 | SH | DEFINED | 16,24,25 | 589520 | 0 | 120071 | |
| BJ SVCS CO | COM | 054482103 | 7898 | 325554 | SH | DEFINED | 32,40,41 | 325554 | 0 | 0 | |
| BJ SVCS CO | COM | 054482103 | 14864 | 612700 | SH | CALL DEFINED | 15,16,24 | 612700 | 0 | 0 | |
| BJ SVCS CO | COM | 054482103 | 3857 | 159000 | SH | CALL DEFINED | 16,24,25 | 159000 | 0 | 0 | |
| BJ SVCS CO | COM | 054482103 | 6162 | 254000 | SH | PUT DEFINED | 15,16,24 | 254000 | 0 | 0 | |
| BJ SVCS CO | COM | 054482103 | 3850 | 158700 | SH | PUT DEFINED | 16,24,25 | 158700 | 0 | 0 | |
| BP PLC | SPONSORED | 055622104 | 5180 | 70800 | SH | DEFINED | 12 | 0 | 0 | 70800 | |
| BP PLC | SPONSORED | 055622104 | 284 | 3880 | SH | DEFINED | 30 | 3880 | 0 | 0 | |
| BP PLC | SPONSORED | 055622104 | 53563 | 732037 | SH | DEFINED | 7,11 | 0 | 3360 | 728677 | |
| BP PLC | SPONSORED | 055622104 | 4374 | 59781 | SH | DEFINED | 7,11,13 | 51350 | 0 | 8431 | |
| BP PLC | SPONSORED | 055622104 | 15269 | 208681 | SH | DEFINED | 7,11,33 | 0 | 0 | 208681 | |
| BP PLC | SPONSORED | 055622104 | 65919 | 900908 | SH | DEFINED | 16,24,25 | 682985 | 0 | 217923 | |
| BP PLC | SPONSORED | 055622104 | 1045 | 14275 | SH | DEFINED | 5-7,11,43,44 | 0 | 14275 | 0 | |
| BP PLC | SPONSORED | 055622104 | 337 | 4608 | SH | DEFINED | 16,19,24,26,27 | 4608 | 0 | 0 | |
| BP PLC | SPONSORED | 055622104 | 80663 | 1102411 | SH | DEFINED | 16,19,24,26,29 | 1102411 | 0 | 0 | |
| BP PLC | SPONSORED | 055622104 | 20839 | 284800 | SH | CALL DEFINED | 15,16,24 | 284800 | 0 | 0 | |
| BP PLC | SPONSORED | 055622104 | 17327 | 236800 | SH | PUT DEFINED | 15,16,24 | 236800 | 0 | 0 | |
| BP PRUDHOE BAY RTY T UNIT BEN I | | 055630107 | 96 | 1200 | SH | DEFINED | 7,11,13 | 1200 | 0 | 0 | |
| BP PRUDHOE BAY RTY T UNIT BEN I | | 055630107 | 18 | 225 | SH | DEFINED | 7,11,33 | 0 | 0 | 225 | |
| BP PRUDHOE BAY RTY T UNIT BEN I | | 055630107 | 8685 | 108286 | SH | DEFINED | 16,24,25 | 93759 | 0 | 14526 | |
| BRE PROPERTIES INC | CL A | 05564E106 | 127 | 3132 | SH | DEFINED | 7,11 | 0 | 0 | 3132 | |
| BRE PROPERTIES INC | CL A | 05564E106 | 2059 | 50807 | SH | DEFINED | 16,24,25 | 34620 | 0 | 16187 | |
| BRE PROPERTIES INC | CL A | 05564E106 | 3675 | 90685 | SH | DEFINED | 32,40,41 | 90685 | 0 | 0 | |
| BT GROUP PLC | ADR | 05577E101 | 429 | 7955 | SH | DEFINED | 7,11,33 | 0 | 0 | 7955 | |
| BT GROUP PLC | ADR | 05577E101 | 64408 | 1194503 | SH | DEFINED | 16,24,25 | 1016940 | 0 | 177563 | |
| BT GROUP PLC | ADR | 05577E101 | 16 | 305 | SH | DEFINED | 5-7,11,43,44 | 0 | 305 | 0 | |
| BMC SOFTWARE INC | COM | 055921100 | 829 | 23250 | SH | DEFINED | 12 | 0 | 0 | 23250 | |
| BMC SOFTWARE INC | COM | 055921100 | 1831 | 51368 | SH | DEFINED | 3,9 | 0 | 0 | 51368 | |
| BMC SOFTWARE INC | COM | 055921100 | 18077 | 507197 | SH | DEFINED | 7,11 | 154815 | 1000 | 351382 | |
| BMC SOFTWARE INC | COM | 055921100 | 808 | 22670 | SH | DEFINED | 7,11,13 | 22670 | 0 | 0 | |
| BMC SOFTWARE INC | COM | 055921100 | 53 | 1500 | SH | DEFINED | 7,11,33 | 0 | 0 | 1500 | |
| BMC SOFTWARE INC | COM | 055921100 | 1007 | 28261 | SH | DEFINED | 15,16,24 | 28261 | 0 | 0 | |
| BMC SOFTWARE INC | COM | 055921100 | 2525 | 70851 | SH | DEFINED | 16,24,25 | 66301 | 0 | 4550 | |
| BMC SOFTWARE INC | COM | 055921100 | 235 | 6599 | SH | DEFINED | 32,40,41 | 6599 | 0 | 0 | |
| BMC SOFTWARE INC | COM | 055921100 | 2559 | 71800 | SH | CALL DEFINED | 15,16,24 | 71800 | 0 | 0 | |
| BMC SOFTWARE INC | COM | 055921100 | 659 | 18500 | SH | CALL DEFINED | 16,24,25 | 18500 | 0 | 0 | |
| BMC SOFTWARE INC | COM | 055921100 | 2484 | 69700 | SH | PUT DEFINED | 15,16,24 | 69700 | 0 | 0 | |
| BMC SOFTWARE INC | COM | 055921100 | 788 | 22100 | SH | PUT DEFINED | 16,24,25 | 22100 | 0 | 0 | |
| BADGER METER INC | COM | 056525108 | 488 | 10852 | SH | DEFINED | 7,11 | 10852 | 0 | 0 | |
| BADGER METER INC | COM | 056525108 | 467 | 10393 | SH | DEFINED | 16,24,25 | 10356 | 0 | 37 | |
| BAIDU COM INC | SPON ADR R | 056752108 | 14059 | 36068 | SH | DEFINED | 7,11 | 36068 | 0 | 0 | |
| BAIDU COM INC | SPON ADR R | 056752108 | 21423 | 54959 | SH | DEFINED | 16,24,25 | 49040 | 0 | 5919 | |
| BAIDU COM INC | SPON ADR R | 056752108 | 1208 | 3100 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 3100 | 0 | 0 | |
| BAIDU COM INC | SPON ADR R | 056752108 | 6889 | 17673 | SH | CALL DEFINED | 7,11 | 17673 | 0 | 0 | |
| BAIDU COM INC | SPON ADR R | 056752108 | 217080 | 556900 | SH | CALL DEFINED | 15,16,24 | 556900 | 0 | 0 | |
| BAIDU COM INC | SPON ADR R | 056752108 | 60419 | 155000 | SH | CALL DEFINED | 16,24,25 | 155000 | 0 | 0 | |
| BAIDU COM INC | SPON ADR R | 056752108 | 7796 | 20000 | SH | PUT DEFINED | 7,11 | 20000 | 0 | 0 | |
| BAIDU COM INC | SPON ADR R | 056752108 | 272938 | 700200 | SH | PUT DEFINED | 15,16,24 | 700200 | 0 | 0 | |
| BAIDU COM INC | SPON ADR R | 056752108 | 14685 | 37673 | SH | PUT DEFINED | 16,24,25 | 37673 | 0 | 0 | |
| BAKER MICHAEL CORP | COM | 057149106 | 627 | 15245 | SH | DEFINED | 16,24,25 | 8437 | 0 | 6808 | |
| BAKER HUGHES INC | COM | 057224107 | 681 | 8400 | SH | DEFINED | 30 | 8400 | 0 | 0 | |
| BAKER HUGHES INC | COM | 057224107 | 1727 | 21300 | SH | DEFINED | 42 | 21300 | 0 | 0 | |
| BAKER HUGHES INC | COM | 057224107 | 14 | 176 | SH | DEFINED | 3,9 | 0 | 0 | 176 | |
| BAKER HUGHES INC | COM | 057224107 | 8387 | 103419 | SH | DEFINED | 7,11 | 101891 | 0 | 1528 | |
| BAKER HUGHES INC | COM | 057224107 | 3138 | 38694 | SH | DEFINED | 7,11,13 | 37644 | 0 | 1050 | |
| BAKER HUGHES INC | COM | 057224107 | 51 | 627 | SH | DEFINED | 7,11,33 | 0 | 0 | 627 | |
| BAKER HUGHES INC | COM | 057224107 | 22848 | 281728 | SH | DEFINED | 16,24,25 | 234350 | 0 | 47378 | |
| BAKER HUGHES INC | COM | 057224107 | 12483 | 153919 | SH | DEFINED | 32,40,41 | 153919 | 0 | 0 | |
| BAKER HUGHES INC | COM | 057224107 | 656 | 8090 | SH | DEFINED | 5-7,11,43,44 | 0 | 8090 | 0 | |
| BAKER HUGHES INC | COM | 057224107 | 31645 | 390200 | SH | CALL DEFINED | 15,16,24 | 390200 | 0 | 0 | |
| BAKER HUGHES INC | COM | 057224107 | 5555 | 68500 | SH | CALL DEFINED | 16,24,25 | 68500 | 0 | 0 | |
| BAKER HUGHES INC | COM | 057224107 | 23819 | 293700 | SH | PUT DEFINED | 15,16,24 | 293700 | 0 | 0 | |
| BAKER HUGHES INC | COM | 057224107 | 4825 | 59500 | SH | PUT DEFINED | 16,24,25 | 59500 | 0 | 0 | |
| BALDOR ELEC CO | COM | 057741100 | 114 | 3385 | SH | DEFINED | 7,11 | 3385 | 0 | 0 | |
| BALDOR ELEC CO | COM | 057741100 | 1340 | 39815 | SH | DEFINED | 7,11,13 | 39090 | 0 | 725 | |
| BALDOR ELEC CO | COM | 057741100 | 91 | 2714 | SH | DEFINED | 16,24,25 | 2114 | 0 | 600 | |
| BALDOR ELEC CO | COM | 057741100 | 195 | 5797 | SH | DEFINED | 16,19,24,26,27 | 5797 | 0 | 0 | |
| BALDWIN TECHNOLOGY I | CL A | 058264102 | 76 | 16059 | SH | DEFINED | 16,24,25 | 15865 | 0 | 194 | |
| BALL CORP | COM | 058498106 | 457 | 10163 | SH | DEFINED | 7,11 | 10163 | 0 | 0 | |
| BALL CORP | COM | 058498106 | 27 | 600 | SH | DEFINED | 7,11,13 | 600 | 0 | 0 | |
| BALL CORP | COM | 058498106 | 1334 | 29642 | SH | DEFINED | 16,24,25 | 24416 | 0 | 5226 | |
| BALL CORP | COM | 058498106 | 443 | 9839 | SH | DEFINED | 32,40,41 | 9839 | 0 | 0 | |
| BALLARD PWR SYS INC | COM | 05858H104 | 182 | 34665 | SH | DEFINED | 16,24,25 | 20728 | 0 | 13937 | |
| BALLARD PWR SYS INC | COM | 05858H104 | 49 | 9300 | SH | CALL DEFINED | 15,16,24 | 9300 | 0 | 0 | |
| BALLARD PWR SYS INC | COM | 05858H104 | 35 | 6700 | SH | PUT DEFINED | 15,16,24 | 6700 | 0 | 0 | |
| BALLY TECHNOLOGIES I | COM | 05874B107 | 10 | 200 | SH | DEFINED | 7,11 | 0 | 0 | 200 | |
| BALLY TECHNOLOGIES I | COM | 05874B107 | 1011 | 20338 | SH | DEFINED | 16,24,25 | 20338 | 0 | 0 | |
| BALLY TECHNOLOGIES I | COM | 05874B107 | 847 | 17036 | SH | DEFINED | 16,24,25 | 15431 | 0 | 1605 | |
| BALLY TECHNOLOGIES I | COM | 05874B107 | 5544 | 111500 | SH | CALL DEFINED | 15,16,24 | 111500 | 0 | 0 | |
| BALLY TECHNOLOGIES I | COM | 05874B107 | 497 | 10000 | SH | CALL DEFINED | 16,24,25 | 10000 | 0 | 0 | |
| BALLY TECHNOLOGIES I | COM | 05874B107 | 8999 | 181000 | SH | PUT DEFINED | 15,16,24 | 181000 | 0 | 0 | |
| BANCO BILBAO VIZCAYA | SPONSORED | 05946K101 | 758 | 31244 | SH | DEFINED | 7,11 | 2324 | 0 | 28920 | |
| BANCO BILBAO VIZCAYA | SPONSORED | 05946K101 | 280 | 11535 | SH | DEFINED | 7,11,13 | 8290 | 0 | 3245 | |
| BANCO BILBAO VIZCAYA | SPONSORED | 05946K101 | 3300 | 136066 | SH | DEFINED | 16,24,25 | 122032 | 0 | 14033 | |
| BANCO BRADESCO S A | SP ADR PFD | 059460303 | 2301 | 71903 | SH | DEFINED | 7,11 | 71903 | 0 | 0 | |
| BANCO BRADESCO S A | SP ADR PFD | 059460303 | 7727 | 241475 | SH | DEFINED | 16,24,25 | 195316 | 0 | 46159 | |
| BANCO BRADESCO S A | SP ADR PFD | 059460303 | 22596 | 706122 | SH | DEFINED | 32,40,41 | 706122 | 0 | 0 | |
| BANCO BRADESCO S A | SP ADR PFD | 059460303 | 1619 | 50579 | SH | DEFINED | 16,19,24,26,27 | 50579 | 0 | 0 | |
| BANCO ITAU HLDG FINA | SP ADR 500 | 059602201 | 1233 | 47695 | SH | DEFINED | 16,24,25 | 43300 | 0 | 4395 | |
| BANCO ITAU HLDG FINA | SP ADR 500 | 059602201 | 27500 | 1063420 | SH | DEFINED | 32,40,41 | 1063420 | 0 | 0 | |
| BANCO ITAU HLDG FINA | SP ADR 500 | 059602201 | 1505 | 58199 | SH | DEFINED | 16,19,24,26,27 | 58199 | 0 | 0 | |
| BANCO SANTANDER SA | ADR | 05964H105 | 302 | 14020 | SH | DEFINED | 30 | 14020 | 0 | 0 | |
| BANCO SANTANDER SA | ADR | 05964H105 | 11 | 500 | SH | DEFINED | 7,11,13 | 500 | 0 | 0 | |
| BANCO SANTANDER SA | ADR | 05964H105 | 2930 | 136010 | SH | DEFINED | 16,24,25 | 107096 | 0 | 28914 | |
| BANCO SANTANDER SA | ADR | 05964H105 | 648 | 30100 | SH | DEFINED | 16,19,24,26,27 | 30100 | 0 | 0 | |
| BANCO SANTANDER CHIL | SP ADR REP | 05965X109 | 224 | 4385 | SH | DEFINED | 16,24,25 | 4385 | 0 | 0 | |
| BANCOLOMBIA S A | SPON ADR P | 05968L102 | 5 | 136 | SH | DEFINED | 7,11,13 | 136 | 0 | 0 | |
| BANCOLOMBIA S A | SPON ADR P | 05968L102 | 264 | 7773 | SH | DEFINED | 16,24,25 | 7123 | 0 | 650 | |
| BANCOLOMBIA S A | SPON ADR P | 05968L102 | 64 | 1870 | SH | DEFINED | 32,40,41 | 1870 | 0 | 0 | |
| BANCORPSOUTH INC | COM | 059692103 | 61 | 2600 | SH | DEFINED | 30 | 2600 | 0 | 0 | |
| BANCORPSOUTH INC | COM | 059692103 | 67 | 2842 | SH | DEFINED | 7,11 | 0 | 0 | 2842 | |
| BANCORPSOUTH INC | COM | 059692103 | 3016 | 127761 | SH | DEFINED | 7,11,13 | 1000 | 0 | 126761 | |
| BANCORPSOUTH INC | COM | 059692103 | 111 | 4696 | SH | DEFINED | 16,24,25 | 1974 | 0 | 2722 | |
| BANCROFT FUND LTD | COM | 059695106 | 423 | 21919 | SH | DEFINED | 7,11,33 | 0 | 0 | 21919 | |

```
BANCROFT FUND LTD         059695106    153      7919 SH   DEFINED             16,24,25      7802         0      117
BANK OF AMERICA CORP COM  060505104   2812     68150 SH   DEFINED                   12         0     68150
BANK OF AMERICA CORP COM  060505104    375      9100 SH   DEFINED                   30      9100         0        0
BANK OF AMERICA CORP COM  060505104   8146    197442 SH   DEFINED                  3,9         0    197442
BANK OF AMERICA CORP COM  060505104 193167   4681708 SH   DEFINED                 7,11   3079106      5086  1597516
BANK OF AMERICA CORP COM  060505104  14722    356800 SH   DEFINED                16,24    356800         0        0
BANK OF AMERICA CORP COM  060505104   9965    241514 SH   DEFINED              7,11,13    199481         0    42033
BANK OF AMERICA CORP COM  060505104   1010     24485 SH   DEFINED              7,11,33         0     24485
BANK OF AMERICA CORP COM  060505104  41923   1016063 SH   DEFINED             15,16,24   1016063         0        0
BANK OF AMERICA CORP COM  060505104 426355  10333363 SH   DEFINED             16,24,25   8557505         0  1775857
BANK OF AMERICA CORP COM  060505104  58723   1423232 SH   DEFINED             32,40,41   1423232         0        0
BANK OF AMERICA CORP COM  060505104   1566     37944 SH   DEFINED         5-7,11,43,44         0     37944        0
BANK OF AMERICA CORP COM  060505104  73296   1776435 SH   DEFINED       16,19,24,26,27   1776435         0        0
BANK OF AMERICA CORP COM  060505104     14       339 SH   DEFINED 2,6,7,10-11,18,20,21,28    339         0        0
BANK OF AMERICA CORP COM  060505104  33421    810000 SH   CALL DEFINED            7,11    810000         0
BANK OF AMERICA CORP COM  060505104 127134   3081300 SH   CALL DEFINED        15,16,24   3081300         0
BANK OF AMERICA CORP COM  060505104   7542    182800 SH   CALL DEFINED        16,24,25    182800         0
BANK OF AMERICA CORP COM  060505104  55845   1353500 SH   PUT DEFINED             7,11   1353500         0
BANK OF AMERICA CORP COM  060505104  90805   2200800 SH   PUT DEFINED         15,16,24   2200800         0
BANK OF AMERICA CORP COM  060505104 103724   2513900 SH   PUT DEFINED         16,24,25   2513900         0
BANK OF GRANITE CORP COM  062401104    109     10341 SH   DEFINED             16,24,25     10341         0        0
BANK HAWAII CORP      COM  062540109     66      1300 SH   DEFINED                   30      1300         0
BANK HAWAII CORP      COM  062540109    730     14279 SH   DEFINED                 7,11     14179         0      100
BANK HAWAII CORP      COM  062540109     18       350 SH   DEFINED              7,11,13       350         0        0
BANK HAWAII CORP      COM  062540109   2029     39678 SH   DEFINED             16,24,25     36802         0     2876
BANK OF MARIN BANCOR COM  063425102      0         4 SH   DEFINED                16,24         4         0        0
BANK OF MARIN BANCOR COM  063425102    217      7426 SH   DEFINED             16,24,25      7426         0        0
BANK MONTREAL QUE     COM  063671101    573     10121 SH   DEFINED             16,24,25      9661         0      460
BANK MONTREAL QUE     COM  063671101    855     15103 SH   DEFINED             32,40,41     15103         0        0
BANK MONTREAL QUE     COM  063671101   6292    111158 SH   DEFINED             4,6,7,11    111158         0        0
BANK MONTREAL QUE     COM  063671101    897     15856 SH   DEFINED         5-7,11,43,44         0     15856        0
BANK OF NEW YORK MEL COM  064058100   1056     21659 SH   DEFINED                   12         0     21659
BANK OF NEW YORK MEL COM  064058100  49060   1006152 SH   DEFINED                 7,11    298791      6309   701052
BANK OF NEW YORK MEL COM  064058100   3920     80404 SH   DEFINED              7,11,13     64530         0    15874
BANK OF NEW YORK MEL COM  064058100    232      4761 SH   DEFINED              7,11,33         0      4761
BANK OF NEW YORK MEL COM  064058100  38615    791943 SH   DEFINED             16,24,25    569194         0   222749
BANK OF NEW YORK MEL COM  064058100   1738     35652 SH   DEFINED             32,40,41     35652         0        0
BANK OF NEW YORK MEL COM  064058100    156      3207 SH   DEFINED         5-7,11,43,44         0      3207        0
BANK OF NEW YORK MEL COM  064058100   4231     86776 SH   DEFINED                 7,11     86776         0
BANK OF NEW YORK MEL COM  064058100  37106    761000 SH   CALL DEFINED        15,16,24    761000         0
BANK OF NEW YORK MEL COM  064058100     63      1300 SH   CALL DEFINED        16,24,25      1300         0
BANK OF NEW YORK MEL COM  064058100  27223    558300 SH   PUT DEFINED         15,16,24    558300         0
BANK OF NEW YORK MEL COM  064058100   5314    108976 SH   PUT DEFINED         16,24,25    108976         0
BANK NOVA SCOTIA HAL COM  064149107     10       200 SH   DEFINED              7,11,13       200         0
BANK NOVA SCOTIA HAL COM  064149107   3468     68675 SH   DEFINED             16,24,25     61248         0     7427
BANK NOVA SCOTIA HAL COM  064149107   1500     29697 SH   DEFINED             32,40,41     29697         0        0
BANK NOVA SCOTIA HAL COM  064149107  14287    282912 SH   DEFINED             4,6,7,11    282912         0        0
BANK NOVA SCOTIA HAL COM  064149107    384      7610 SH   DEFINED         5-7,11,43,44         0      7610        0
BANKATLANTIC BANCORP CL A 065908501      8      2000 SH   DEFINED              7,11,13      2000         0
BANKATLANTIC BANCORP CL A 065908501    197     48747 SH   DEFINED             16,24,25     47747         0      300
BANKRATE INC          COM  06646V108   3806     79144 SH   DEFINED                 7,11     78977         0      167
BANKRATE INC          COM  06646V108   1252     26039 SH   DEFINED             16,24,25     26039         0        0
BANNER CORP           COM  06652V109    241      8399 SH   DEFINED                16,24      8399         0        0
BANNER CORP           COM  06652V109     63      2188 SH   DEFINED             16,24,25      2188         0        0
BARCLAYS BK PLC  DJAIG CMDT 06738C778    28       500 SH   DEFINED                 7,11         0       500
BARCLAYS BK PLC  DJAIG CMDT 06738C778    70      1250 SH   DEFINED              7,11,33         0      1250
BARCLAYS BK PLC  DJAIG CMDT 06738C778 15003    266802 SH   DEFINED             16,24,25    251115         0    15687
BARCLAYS BK PLC  IPGS CRUDO 06738C786    34       610 SH   DEFINED              7,11,33         0       610
BARCLAYS BK PLC  IPGS CRUDO 06738C786  1134     20187 SH   DEFINED             16,24,25     19260         0      927
BARCLAYS BK PLC  GSCI TTL R 06738C794   749     14079 SH   DEFINED             16,24,25     12886         0     1193
BARCLAYS PLC          ADR  06738E204     59      1466 SH   DEFINED                 7,11         0      1466
BARCLAYS PLC          ADR  06738E204   8640    214008 SH   DEFINED             16,24,25    208298         0     5710
BARCLAYS PLC          ADR  06738E204    938     23238 SH   DEFINED       16,19,24,26,29     23238         0        0
BARCLAYS BK PLC  ETN IPTH I 06738G407   443     10102 SH   DEFINED             16,24,25      9661         0      441
BARD C R INC          COM  067383109   2678     28249 SH   DEFINED                 7,11     10849         0    17400
BARD C R INC          COM  067383109    671      7076 SH   DEFINED              7,11,13      7076         0        0
BARD C R INC          COM  067383109      5        48 SH   DEFINED             15,16,24        48         0        0
BARD C R INC          COM  067383109   8321     87772 SH   DEFINED             16,24,25     66140         0    21632
BARD C R INC          COM  067383109    308      3251 SH   DEFINED             32,40,41      3251         0        0
BARCLAYS BK PLC  ETN CBOE S 06739F135   308      5993 SH   DEFINED             16,24,25      5993         0
BARCLAYS BK PLC  EUR/USD EX 06739F184  1274     23152 SH   DEFINED             16,24,25     23152         0
BARCLAYS BK PLC  IP MSCI IN 06739F291   702      7180 SH   DEFINED                 7,11      7180         0
BARCLAYS BK PLC  IP MSCI IN 06739F291 28562    292078 SH   DEFINED             16,24,25    268989         0    23089
BARCLAYS BK PLC  ADR 2 PREF 06739F390  1665     76646 SH   DEFINED             16,24,25     59296         0    17350
BARCLAYS BANK PLC ETN IPTH A 06739H206    6       100 SH   DEFINED                16,24       100         0
BARCLAYS BANK PLC ETN IPTH A 06739H206 1153     20474 SH   DEFINED             16,24,25     19112         0     1362
BARCLAYS BANK PLC ETN H305  06739H305    16       270 SH   DEFINED                16,24       270         0
BARCLAYS BANK PLC ETN H305  06739H305   707     12298 SH   DEFINED             16,24,25     10921         0     1377
BARCLAYS BANK PLC ETN H644  06739H644   834     17556 SH   DEFINED             16,24,25     15232         0     2324
BARCLAYS BANK PLC ETN IPTH L 06739H743  765     16117 SH   DEFINED             16,24,25     10499         0     5618
BARCLAYS BANK PLC SP ADR 7.1 06739H776 1103     46430 SH   DEFINED             16,24,25     41680         0     4750
BARE ESCENTUALS INC   COM  067511105    259     10700 SH   DEFINED                   30     10700         0
BARE ESCENTUALS INC   COM  067511105     11       471 SH   DEFINED                 7,11       471         0
BARE ESCENTUALS INC   COM  067511105    646     26634 SH   DEFINED             16,24,25     25059         0     1575
BARE ESCENTUALS INC   COM  067511105   1916     79000 SH   DEFINED             32,40,41     79000         0        0
BARNES & NOBLE INC    COM  067774109      8       220 SH   DEFINED                 7,11        55         0      165
BARNES & NOBLE INC    COM  067774109   3987    115736 SH   DEFINED             16,24,25     82975         0    32761
BARNES GROUP INC      COM  067806109     67      2000 SH   DEFINED                   30      2000         0
BARNES GROUP INC      COM  067806109     33      1000 SH   DEFINED              7,11,13      1000         0
BARNES GROUP INC      COM  067806109    897     26850 SH   DEFINED             16,24,25     25794         0     1076
BARRICK GOLD CORP     COM  067901108    193      4600 SH   DEFINED                   30      4600         0
BARRICK GOLD CORP     COM  067901108    304      7234 SH   DEFINED                 7,11      6734         0      500
BARRICK GOLD CORP     COM  067901108      3        61 SH   DEFINED              7,11,13        61         0        0
BARRICK GOLD CORP     COM  067901108   1088     25872 SH   DEFINED              7,11,33         0     25872
BARRICK GOLD CORP     COM  067901108  11790    280381 SH   DEFINED             15,16,24    280381         0        0
BARRICK GOLD CORP     COM  067901108  65268   1552158 SH   DEFINED             16,24,25   1303266         0   248891
BARRICK GOLD CORP     COM  067901108  19203    456680 SH   DEFINED             32,40,41    456680         0        0
BARRICK GOLD CORP     COM  067901108   2244     53358 SH   DEFINED             4,6,7,11     53358         0        0
BARRICK GOLD CORP     COM  067901108   3318     78903 SH   DEFINED       16,19,24,26,27     78903         0        0
BARRICK GOLD CORP     COM  067901108  14381    342000 SH   CALL DEFINED        15,16,24    342000         0
BARRICK GOLD CORP     COM  067901108  31315    744700 SH   CALL DEFINED        16,24,25    744700         0
BARRICK GOLD CORP     COM  067901108  19208    456800 SH   PUT DEFINED             7,11    456800         0
BARRICK GOLD CORP     COM  067901108  25768    612800 SH   PUT DEFINED         15,16,24    612800         0
BARRICK GOLD CORP     COM  067901108    555     13200 SH   PUT DEFINED         16,24,25     13200         0
BARR PHARMACEUTICALS COM  068306109    478      9000 SH   DEFINED                   30      9000         0
BARR PHARMACEUTICALS COM  068306109   1299     24461 SH   DEFINED                 7,11     23935         0      526
BARR PHARMACEUTICALS COM  068306109    849     15985 SH   DEFINED              7,11,13     15985         0        0
BARR PHARMACEUTICALS COM  068306109  10972    206627 SH   DEFINED             16,24,25    175528         0    31099
BARR PHARMACEUTICALS COM  068306109    148      2785 SH   DEFINED             32,40,41      2785         0        0
BARR PHARMACEUTICALS COM  068306109   4269     80401 SH   DEFINED       16,19,24,26,27     80401         0        0
BARR PHARMACEUTICALS COM  068306109   4519     85100 SH   CALL DEFINED        15,16,24     85100         0
BARR PHARMACEUTICALS COM  068306109   1789     33700 SH   CALL DEFINED        16,24,25     33700         0
BARR PHARMACEUTICALS COM  068306109   1896     35700 SH   PUT DEFINED         15,16,24     35700         0
BARR PHARMACEUTICALS COM  068306109   2129     40100 SH   PUT DEFINED         16,24,25     40100         0
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| BARRETT BILL CORP | COM | 06846N104 | 496 | 11836 | SH | DEFINED | 16,24,25 | 9075 | 0 | 2761 |
| BASIN WTR INC | COM | 07011T306 | 3099 | 374774 | SH | DEFINED | 16,24,25 | 259484 | 0 | 115290 |
| BAXTER INTL INC | COM | 071813109 | 13198 | 227358 | SH | DEFINED | 16,24,25 | 187628 | 0 | 39730 |
| BAXTER INTL INC | COM | 071813109 | 2052 | 35343 | SH | DEFINED | 7,11,13 | 35193 | 0 | 150 |
| BAXTER INTL INC | COM | 071813109 | 266 | 4581 | SH | DEFINED | 15,16,24 | 4581 | 0 | 0 |
| BAXTER INTL INC | COM | 071813109 | 20529 | 353637 | SH | DEFINED | 16,24,25 | 309143 | 0 | 44494 |
| BAXTER INTL INC | COM | 071813109 | 17474 | 301019 | SH | DEFINED | 32,40,41 | 301019 | 0 | 0 |
| BAXTER INTL INC | COM | 071813109 | 3969 | 68380 | SH | CALL DEFINED | 7,11 | 68380 | 0 | 0 |
| BAXTER INTL INC | COM | 071813109 | 14100 | 242900 | SH | CALL DEFINED | 15,16,24 | 242900 | 0 | 0 |
| BAXTER INTL INC | COM | 071813109 | 3379 | 58200 | SH | CALL DEFINED | 16,24,25 | 58200 | 0 | 0 |
| BAXTER INTL INC | COM | 071813109 | 7541 | 129900 | SH | PUT DEFINED | 15,16,24 | 129900 | 0 | 0 |
| BAXTER INTL INC | COM | 071813109 | 7882 | 135780 | SH | PUT DEFINED | 16,24,25 | 135780 | 0 | 0 |
| BAYTEX ENERGY TR | TRUST UNIT | 073176109 | 2198 | 115000 | SH | DEFINED | 42 | 115000 | 0 | 0 |
| BAYTEX ENERGY TR | TRUST UNIT | 073176109 | 680 | 35578 | SH | DEFINED | 16,24,25 | 32505 | 0 | 3093 |
| BE AEROSPACE INC | COM | 073302101 | 58 | 1099 | SH | DEFINED | 7,11 | 1099 | 0 | 0 |
| BE AEROSPACE INC | COM | 073302101 | 62 | 1165 | SH | DEFINED | 7,11,33 | 0 | 0 | 1165 |
| BE AEROSPACE INC | COM | 073302101 | 5223 | 98727 | SH | DEFINED | 16,24,25 | 55809 | 0 | 42918 |
| BE AEROSPACE INC | COM | 073302101 | 16 | 300 | SH | DEFINED | 32,40,41 | 300 | 0 | 0 |
| BEA SYS INC | COM | 073325102 | 2222 | 140785 | SH | DEFINED | 7,11 | 140785 | 0 | 0 |
| BEA SYS INC | COM | 073325102 | 1184 | 75000 | SH | DEFINED | 31,45 | 75000 | 0 | 0 |
| BEA SYS INC | COM | 073325102 | 35 | 2200 | SH | DEFINED | 7,11,13 | 2200 | 0 | 0 |
| BEA SYS INC | COM | 073325102 | 788 | 49934 | SH | DEFINED | 15,16,24 | 49934 | 0 | 0 |
| BEA SYS INC | COM | 073325102 | 9837 | 623395 | SH | DEFINED | 16,24,25 | 600593 | 0 | 22802 |
| BEA SYS INC | COM | 073325102 | 191 | 12080 | SH | DEFINED | 32,40,41 | 12080 | 0 | 0 |
| BEA SYS INC | COM | 073325102 | 79 | 5000 | SH | DEFINED | 5-7,11,13,44 | 0 | 5000 | 0 |
| BEA SYS INC | COM | 073325102 | 107 | 6800 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 6800 | 0 | 0 |
| BEA SYS INC | COM | 073325102 | 10224 | 647900 | SH | CALL DEFINED | 16,24,25 | 647900 | 0 | 0 |
| BEA SYS INC | COM | 073325102 | 2874 | 182100 | SH | CALL DEFINED | 16,24,25 | 182100 | 0 | 0 |
| BEA SYS INC | COM | 073325102 | 6096 | 386300 | SH | PUT DEFINED | 15,16,24 | 386300 | 0 | 0 |
| BEA SYS INC | COM | 073325102 | 3076 | 194900 | SH | PUT DEFINED | 16,24,25 | 194900 | 0 | 0 |
| BEACON POWER CORP | COM | 073677106 | 70 | 45855 | SH | DEFINED | 16,24,25 | 44752 | 0 | 1103 |
| BEAR STEARNS COS INC | COM | 073902108 | 19305 | 218748 | SH | DEFINED | 7,11 | 216543 | 0 | 2205 |
| BEAR STEARNS COS INC | COM | 073902108 | 110 | 1250 | SH | DEFINED | 7,11,13 | 1250 | 0 | 0 |
| BEAR STEARNS COS INC | COM | 073902108 | 12953 | 146771 | SH | DEFINED | 15,16,24 | 146771 | 0 | 0 |
| BEAR STEARNS COS INC | COM | 073902108 | 6639 | 75228 | SH | DEFINED | 16,24,25 | 63791 | 0 | 11437 |
| BEAR STEARNS COS INC | COM | 073902108 | 137 | 1550 | SH | DEFINED | 32,40,41 | 1550 | 0 | 0 |
| BEAR STEARNS COS INC | COM | 073902108 | 7943 | 90000 | SH | CALL DEFINED | 7,11 | 90000 | 0 | 0 |
| BEAR STEARNS COS INC | COM | 073902108 | 54433 | 616800 | SH | CALL DEFINED | 15,16,24 | 616800 | 0 | 0 |
| BEAR STEARNS COS INC | COM | 073902108 | 34111 | 386522 | SH | CALL DEFINED | 16,24,25 | 386522 | 0 | 0 |
| BEAR STEARNS COS INC | COM | 073902108 | 18111 | 205222 | SH | PUT DEFINED | 7,11 | 205222 | 0 | 0 |
| BEAR STEARNS COS INC | COM | 073902108 | 68985 | 781700 | SH | PUT DEFINED | 15,16,24 | 781700 | 0 | 0 |
| BEAR STEARNS COS INC | COM | 073902108 | 14526 | 164600 | SH | PUT DEFINED | 16,24,25 | 164600 | 0 | 0 |
| BEAR STEARNS COS INC | COM ALER MLP27 | 073902835 | 877 | 25446 | SH | DEFINED | 16,24,25 | 24899 | 0 | 547 |
| BEARINGPOINT INC | COM | 074002106 | 0 | 2 | SH | DEFINED | 7,11,13 | 2 | 0 | 0 |
| BEARINGPOINT INC | COM | 074002106 | 3815 | 1348017 | SH | DEFINED | 16,24,25 | 1339622 | 0 | 8395 |
| BEAZER HOMES USA INC NOTE 4.62 | 07556QAL9 | | 12150 | 17326000 | PRN | DEFINED | 16,24,25 | 17326000 | 0 | 0 |
| BEAZER HOMES USA INC | COM | 07556Q105 | 1858 | 250000 | SH | DEFINED | 16,24 | 250000 | 0 | 0 |
| BEAZER HOMES USA INC | COM | 07556Q105 | 4859 | 653978 | SH | DEFINED | 16,24,25 | 532612 | 0 | 121365 |
| BEAZER HOMES USA INC | COM | 07556Q105 | 7075 | 952200 | SH | CALL DEFINED | 15,16,24 | 952200 | 0 | 0 |
| BEAZER HOMES USA INC | COM | 07556Q105 | 2632 | 354300 | SH | CALL DEFINED | 16,24,25 | 354300 | 0 | 0 |
| BEAZER HOMES USA INC | COM | 07556Q105 | 9117 | 1227100 | SH | DEFINED | 16,24,25 | 1227100 | 0 | 0 |
| BEAZER HOMES USA INC | COM | 07556Q105 | 15 | 2000 | SH | PUT DEFINED | 16,24,25 | 0 | 0 | 2000 |
| BEBE STORES INC | COM | 075571109 | 77 | 6025 | SH | DEFINED | 30 | 6025 | 0 | 0 |
| BEBE STORES INC | COM | 075571109 | 590 | 45902 | SH | DEFINED | 7,11 | 45902 | 0 | 0 |
| BEBE STORES INC | COM | 075571109 | 190 | 14777 | SH | DEFINED | 16,24,25 | 14777 | 0 | 0 |
| BEBE STORES INC | COM | 075571109 | 231 | 18000 | SH | CALL DEFINED | 15,16,24 | 18000 | 0 | 0 |
| BEBE STORES INC | COM | 075571109 | 64 | 5000 | SH | CALL DEFINED | 16,24,25 | 5000 | 0 | 0 |
| BEBE STORES INC | COM | 075571109 | 399 | 31000 | SH | PUT DEFINED | 15,16,24 | 31000 | 0 | 0 |
| BEBE STORES INC | COM | 075571109 | 386 | 30000 | SH | PUT DEFINED | 16,24,25 | 30000 | 0 | 0 |
| BECKMAN COULTER INC | COM | 075811109 | 263 | 3615 | SH | DEFINED | 7,11 | 3615 | 0 | 0 |
| BECKMAN COULTER INC | COM | 075811109 | 242 | 3330 | SH | DEFINED | 7,11,13 | 3330 | 0 | 0 |
| BECKMAN COULTER INC | COM | 075811109 | 749 | 10291 | SH | DEFINED | 16,24,25 | 6543 | 0 | 3748 |
| BECKMAN COULTER INC | COM | 075811109 | 337 | 4628 | SH | DEFINED | 32,40,41 | 4628 | 0 | 0 |
| BECKMAN COULTER INC | COM | 075811109 | 4761 | 65400 | SH | CALL DEFINED | 15,16,24 | 65400 | 0 | 0 |
| BECKMAN COULTER INC | COM | 075811109 | 3807 | 52300 | SH | PUT DEFINED | 15,16,24 | 52300 | 0 | 0 |
| BECTON DICKINSON & C | COM | 075887109 | 3548 | 42448 | SH | DEFINED | 7,11 | 26848 | 0 | 15600 |
| BECTON DICKINSON & C | COM | 075887109 | 1662 | 19880 | SH | DEFINED | 7,11,13 | 19880 | 0 | 0 |
| BECTON DICKINSON & C | COM | 075887109 | 7 | 85 | SH | DEFINED | 7,11,33 | 0 | 0 | 85 |
| BECTON DICKINSON & C | COM | 075887109 | 9 | 112 | SH | DEFINED | 15,16,24 | 112 | 0 | 0 |
| BECTON DICKINSON & C | COM | 075887109 | 17446 | 208738 | SH | DEFINED | 16,24,25 | 160193 | 0 | 48545 |
| BECTON DICKINSON & C | COM | 075887109 | 759 | 9081 | SH | DEFINED | 32,40,41 | 9081 | 0 | 0 |
| BED BATH & BEYOND IN | COM | 075896100 | 15 | 511 | SH | DEFINED | 3,9 | 0 | 0 | 511 |
| BED BATH & BEYOND IN | COM | 075896100 | 1254 | 42668 | SH | DEFINED | 7,11 | 42668 | 0 | 0 |
| BED BATH & BEYOND IN | COM | 075896100 | 819 | 27850 | SH | DEFINED | 7,11,13 | 27250 | 0 | 600 |
| BED BATH & BEYOND IN | COM | 075896100 | 23 | 770 | SH | DEFINED | 7,11,33 | 0 | 0 | 770 |
| BED BATH & BEYOND IN | COM | 075896100 | 607 | 20640 | SH | DEFINED | 15,16,24 | 20640 | 0 | 0 |
| BED BATH & BEYOND IN | COM | 075896100 | 33123 | 1127015 | SH | DEFINED | 16,24,25 | 988024 | 0 | 138991 |
| BED BATH & BEYOND IN | COM | 075896100 | 265 | 9032 | SH | DEFINED | 32,40,41 | 9032 | 0 | 0 |
| BED BATH & BEYOND IN | COM | 075896100 | 1343 | 45700 | SH | CALL DEFINED | 15,16,24 | 45700 | 0 | 0 |
| BED BATH & BEYOND IN | COM | 075896100 | 10087 | 343200 | SH | CALL DEFINED | 16,24,25 | 343200 | 0 | 0 |
| BED BATH & BEYOND IN | COM | 075896100 | 4059 | 138100 | SH | PUT DEFINED | 15,16,24 | 138100 | 0 | 0 |
| BED BATH & BEYOND IN | COM | 075896100 | 13052 | 444100 | SH | PUT DEFINED | 16,24,25 | 444100 | 0 | 0 |
| BEL FUSE INC | CL A | 077347201 | 238 | 7000 | SH | DEFINED | 16,24,25 | 7000 | 0 | 0 |
| BELDEN INC | COM | 077454106 | 11 | 256 | SH | DEFINED | 7,11 | 0 | 0 | 256 |
| BELDEN INC | COM | 077454106 | 13 | 281 | SH | DEFINED | 7,11,13 | 281 | 0 | 0 |
| BELDEN INC | COM | 077454106 | 378 | 8499 | SH | DEFINED | 16,24,25 | 6019 | 0 | 2480 |
| BELL MICROPRODUCTS I NOTE 3.75 | 078137AC0 | | 16960 | 19300000 | PRN | DEFINED | 16,24,25 | 19300000 | 0 | 0 |
| BELL MICROPRODUCTS I | COM | 078137106 | 88 | 14600 | SH | DEFINED | 16,24,25 | 14600 | 0 | 0 |
| BELO CORP | COM SER A | 080555105 | 54 | 3100 | SH | DEFINED | 30 | 3100 | 0 | 0 |
| BELO CORP | COM SER A | 080555105 | 706 | 40458 | SH | DEFINED | 7,11,13 | 39883 | 0 | 575 |
| BELO CORP | COM SER A | 080555105 | 1406 | 80594 | SH | DEFINED | 16,24,25 | 79504 | 0 | 1090 |
| BELO CORP | COM SER A | 080555105 | 70 | 4000 | SH | CALL DEFINED | 16,24,25 | 4000 | 0 | 0 |
| BEMIS INC | COM | 081437105 | 522 | 19050 | SH | DEFINED | 7,11 | 7050 | 0 | 12000 |
| BEMIS INC | COM | 081437105 | 1009 | 36850 | SH | DEFINED | 7,11,13 | 35975 | 0 | 875 |
| BEMIS INC | COM | 081437105 | 2015 | 73587 | SH | DEFINED | 16,24,25 | 55688 | 0 | 17899 |
| BEMIS INC | COM | 081437105 | 3 | 105 | SH | DEFINED | 32,40,41 | 105 | 0 | 0 |
| BENCHMARK ELECTRS IN | COM | 08160H101 | 183 | 10299 | SH | DEFINED | 16,24,25 | 10178 | 0 | 121 |
| BENJAMIN FRANKLIN BA | COM | 082073107 | 650 | 49500 | SH | DEFINED | 16,24,25 | 41000 | 0 | 8500 |
| BENTLEY PHARMACEUTIC | COM | 082657107 | 11233 | 744395 | SH | DEFINED | 16,24,25 | 525587 | 0 | 218808 |
| BERKLEY W R CORP | COM | 084423102 | 4253 | 142686 | SH | DEFINED | 7,11 | 142686 | 0 | 0 |
| BERKLEY W R CORP | COM | 084423102 | 4012 | 134581 | SH | DEFINED | 16,24,25 | 126494 | 0 | 8087 |
| BERKLEY W R CORP | COM | 084423102 | 3502 | 117468 | SH | DEFINED | 32,40,41 | 117468 | 0 | 0 |
| BERKSHIRE HATHAWAY I | CL A | 084670108 | 7080 | 50 | SH | DEFINED | 7,11 | 39 | 0 | 11 |
| BERKSHIRE HATHAWAY I | CL A | 084670108 | 142 | 1 | SH | DEFINED | 7,11,13 | 1 | 0 | 0 |
| BERKSHIRE HATHAWAY I | CL A | 084670108 | 21382 | 151 | SH | DEFINED | 16,24,25 | 125 | 0 | 26 |
| BERKSHIRE HATHAWAY I | CL A | 084670108 | 8071 | 57 | SH | DEFINED | 32,40,41 | 57 | 0 | 0 |
| BERKSHIRE HATHAWAY I | CL A | 084670108 | 142 | 1 | SH | DEFINED | 16,19,24,26,27 | 1 | 0 | 0 |
| BERKSHIRE HATHAWAY I | CL B | 084670207 | 43 | 9 | SH | DEFINED | 12 | 0 | 0 | 9 |
| BERKSHIRE HATHAWAY I | CL B | 084670207 | 137 | 29 | SH | DEFINED | 3,9 | 0 | 0 | 29 |
| BERKSHIRE HATHAWAY I | CL B | 084670207 | 60839 | 12846 | SH | DEFINED | 7,11 | 10094 | 0 | 2752 |
| BERKSHIRE HATHAWAY I | CL B | 084670207 | 1127 | 238 | SH | DEFINED | 7,11,13 | 233 | 0 | 5 |
| BERKSHIRE HATHAWAY I | CL B | 084670207 | 251 | 53 | SH | DEFINED | 7,11,33 | 0 | 0 | 53 |
| BERKSHIRE HATHAWAY I | CL B | 084670207 | 203814 | 43035 | SH | DEFINED | 16,24,25 | 32977 | 0 | 10058 |
| BERKSHIRE HATHAWAY I | CL B | 084670207 | 1146 | 242 | SH | DEFINED | 32,40,41 | 242 | 0 | 0 |

| Issuer | Class | CUSIP | Value | Amount | Type | Status | Codes | Sole | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|
| BERKSHIRE HATHAWAY I | CL B | 084670207 | 374 | 79 | SH | DEFINED | 5-7,11,43,44 | 0 | 79 | 0 |
| BERKSHIRE HATHAWAY I | CL B | 084670207 | 36908 | 7793 | SH | DEFINED | 16,19,24,26,27 | 7793 | | 0 |
| BERRY PETE CO | CL A | 085789105 | 67 | 1500 | SH | DEFINED | 30 | 1500 | | 0 |
| BERRY PETE CO | CL A | 085789105 | 4445 | 100000 | SH | DEFINED | 42 | 100000 | | 0 |
| BERRY PETE CO | CL A | 085789105 | 265 | 5958 | SH | DEFINED | 16,24,25 | 4858 | | 1100 |
| BEST BUY INC | SDCV 2.25 | 086516AF8 | 1916 | 1593000 | PRN | DEFINED | 16,24,25 | 1593000 | | 0 |
| BEST BUY INC | COM | 086516101 | 27110 | 513966 | SH | DEFINED | 7,11 | 513866 | | 1040 |
| BEST BUY INC | COM | 086516101 | 5803 | 110226 | SH | DEFINED | 7,11,13 | 108251 | | 1975 |
| BEST BUY INC | COM | 086516101 | 93 | 1764 | SH | DEFINED | 7,11,33 | 0 | | 1764 |
| BEST BUY INC | COM | 086516101 | 77791 | 1477504 | SH | DEFINED | 16,24,25 | 1302934 | | 174569 |
| BEST BUY INC | COM | 086516101 | 13310 | 252611 | SH | DEFINED | 32,40,41 | 252611 | | 0 |
| BEST BUY INC | COM | 086516101 | 441 | 8373 | SH | DEFINED | 16,19,24,26,27 | 8373 | | 0 |
| BEST BUY INC | COM | 086516101 | 14974 | 284399 | CALL | DEFINED | 7,11 | 284399 | | 0 |
| BEST BUY INC | COM | 086516101 | 27133 | 515350 | CALL | DEFINED | 15,16,24 | 515350 | | 0 |
| BEST BUY INC | COM | 086516101 | 77745 | 1476645 | SH | DEFINED | 16,24,25 | 1476645 | | 0 |
| BEST BUY INC | COM | 086516101 | 174790 | 3319845 | PUT | DEFINED | 7,11 | 3319845 | | 0 |
| BEST BUY INC | COM | 086516101 | 31013 | 589050 | PUT | DEFINED | 15,16,24 | 589050 | | 0 |
| BEST BUY INC | COM | 086516101 | 54719 | 1039299 | PUT | DEFINED | 16,24,25 | 1039299 | | 0 |
| BHP BILLITON LTD | SPONSORED | 088606108 | 272 | 3886 | SH | DEFINED | 7,11 | 0 | | 3886 |
| BHP BILLITON LTD | SPONSORED | 088606108 | 1452 | 20727 | SH | DEFINED | 7,11,33 | 0 | | 20727 |
| BHP BILLITON LTD | SPONSORED | 088606108 | 3789 | 54098 | SH | DEFINED | 15,16,24 | 54098 | | 0 |
| BHP BILLITON LTD | SPONSORED | 088606108 | 44538 | 635887 | SH | DEFINED | 16,24,25 | 531078 | | 104809 |
| BHP BILLITON LTD | SPONSORED | 088606108 | 8713 | 124400 | SH CALL | DEFINED | 15,16,24 | 124400 | | 0 |
| BHP BILLITON LTD | SPONSORED | 088606108 | 70 | 1000 | SH CALL | DEFINED | 16,24,25 | 1000 | | 0 |
| BHP BILLITON LTD | SPONSORED | 088606108 | 14631 | 208900 | SH PUT | DEFINED | 15,16,24 | 208900 | | 0 |
| BIG 5 SPORTING GOODS | COM | 08915P101 | 336 | 23283 | SH | DEFINED | 16,24,25 | 23283 | | 0 |
| BIG LOTS INC | COM | 089302103 | 265 | 16550 | SH | DEFINED | 3,9 | 0 | | 16550 |
| BIG LOTS INC | COM | 089302103 | 1498 | 93677 | SH | DEFINED | 7,11 | 93677 | | 0 |
| BIG LOTS INC | COM | 089302103 | 612 | 38270 | SH | DEFINED | 16,24,25 | 33585 | | 4685 |
| BIG LOTS INC | COM | 089302103 | 12 | 722 | SH | DEFINED | 32,40,41 | 722 | | 0 |
| BIO RAD LABS INC | CL A | 090572207 | 680 | 6563 | SH | DEFINED | 16,24,25 | 6495 | | 68 |
| BIOCRYST PHARMACEUTI | COM | 09058V103 | 25 | 4077 | SH | DEFINED | 15,16,24 | 4077 | | 0 |
| BIOCRYST PHARMACEUTI | COM | 09058V103 | 242 | 39099 | SH | DEFINED | 16,24,25 | 35989 | | 3110 |
| BIOCRYST PHARMACEUTI | COM | 09058V103 | 304 | 49200 | SH CALL | DEFINED | 15,16,24 | 49200 | | 0 |
| BIOCRYST PHARMACEUTI | COM | 09058V103 | 126 | 20400 | SH PUT | DEFINED | 16,24,25 | 20400 | | 0 |
| BIOJECT MED TECH INC | COM NEW | 09059T206 | 6 | 10400 | SH | DEFINED | 16,24,25 | 10000 | | 400 |
| BIOMARIN PHARMACEUTI | NOTE 1.87 | 09061GAD3 | 47207 | 25500000 | PRN | DEFINED | 16,24,25 | 25500000 | | 0 |
| BIOMARIN PHARMACEUTI | COM | 09061G101 | 2214 | 62547 | SH | DEFINED | 16,24,25 | 61324 | | 1223 |
| BIOMARIN PHARMACEUTI | COM | 09061G101 | 800 | 22600 | SH CALL | DEFINED | 16,24,25 | 22600 | | 0 |
| BIOGEN IDEC INC | COM | 09062X103 | 842 | 14800 | SH | DEFINED | 30 | 14800 | | 0 |
| BIOGEN IDEC INC | COM | 09062X103 | 2625 | 46115 | SH | DEFINED | 7,11 | 43765 | | 2350 |
| BIOGEN IDEC INC | COM | 09062X103 | 222 | 3905 | SH | DEFINED | 16,24 | 3905 | | 0 |
| BIOGEN IDEC INC | COM | 09062X103 | 35 | 609 | SH | DEFINED | 7,11,13 | 609 | | 0 |
| BIOGEN IDEC INC | COM | 09062X103 | 285 | 5015 | SH | DEFINED | 7,11,33 | 0 | | 5015 |
| BIOGEN IDEC INC | COM | 09062X103 | 4241 | 74508 | SH | DEFINED | 15,16,24 | 74508 | | 0 |
| BIOGEN IDEC INC | COM | 09062X103 | 230273 | 4045561 | SH | DEFINED | 16,24,25 | 3670250 | | 375311 |
| BIOGEN IDEC INC | COM | 09062X103 | 534 | 9379 | SH | DEFINED | 32,40,41 | 9379 | | 0 |
| BIOGEN IDEC INC | COM | 09062X103 | 48877 | 858700 | SH CALL | DEFINED | 15,16,24 | 858700 | | 0 |
| BIOGEN IDEC INC | COM | 09062X103 | 43652 | 766900 | SH CALL | DEFINED | 16,24,25 | 766900 | | 0 |
| BIOGEN IDEC INC | COM | 09062X103 | 32792 | 576100 | SH PUT | DEFINED | 15,16,24 | 576100 | | 0 |
| BIOGEN IDEC INC | COM | 09062X103 | 5191 | 91200 | SH PUT | DEFINED | 16,24,25 | 91200 | | 0 |
| BIOMED REALTY TRUST | COM | 09063H107 | 273 | 11770 | SH | DEFINED | 16,24,25 | 11770 | | 0 |
| BIOMED REALTY TRUST | COM | 09063H107 | 1462 | 63089 | SH | DEFINED | 32,40,41 | 63089 | | 0 |
| BIOFUEL ENERGY CORP | COM | 09064Y109 | 97 | 13840 | SH | DEFINED | 16,24,25 | 12573 | | 1267 |
| BIOTECH HOLDRS TR | DEPOSITRY R | 09067D201 | 275 | 1700 | SH | DEFINED | 7,11 | 0 | | 1700 |
| BIOTECH HOLDRS TR | DEPOSITRY R | 09067D201 | 31959 | 197573 | SH | DEFINED | 15,16,24 | 197573 | | 0 |
| BIOTECH HOLDRS TR | DEPOSITRY R | 09067D201 | 218247 | 1349200 | SH | DEFINED | 16,24,25 | 1348285 | | 915 |
| BIOTECH HOLDRS TR | DEPOSITRY R | 09067D201 | 39599 | 244800 | SH CALL | DEFINED | 16,24,25 | 244800 | | 0 |
| BIOTECH HOLDRS TR | DEPOSITRY R | 09067D201 | 1618 | 10000 | SH CALL | DEFINED | 16,24,25 | 10000 | | 0 |
| BIOTECH HOLDRS TR | DEPOSITRY R | 09067D201 | 42138 | 260500 | SH PUT | DEFINED | 15,16,24 | 260500 | | 0 |
| BIOVAIL CORP | COM | 09067J109 | 26 | 1900 | SH | DEFINED | 12 | 0 | | 1900 |
| BIOVAIL CORP | COM | 09067J109 | 951 | 70675 | SH | DEFINED | 7,11 | 0 | | 70675 |
| BIOVAIL CORP | COM | 09067J109 | 50 | 3715 | SH | DEFINED | 7,11,13 | 0 | | 3715 |
| BIOVAIL CORP | COM | 09067J109 | 8 | 600 | SH | DEFINED | 7,11,33 | 0 | | 600 |
| BIOVAIL CORP | COM | 09067J109 | 402 | 29883 | SH | DEFINED | 15,16,24 | 29883 | | 0 |
| BIOVAIL CORP | COM | 09067J109 | 1088 | 80853 | SH | DEFINED | 16,24,25 | 77825 | | 3028 |
| BIOVAIL CORP | COM | 09067J109 | 868 | 64465 | SH | DEFINED | 32,40,41 | 64465 | | 0 |
| BIOVAIL CORP | COM | 09067J109 | 130 | 9646 | SH | DEFINED | 4,6,7,11 | 9646 | | 0 |
| BIOVAIL CORP | COM | 09067J109 | 1131 | 84000 | SH CALL | DEFINED | 15,16,24 | 84000 | | 0 |
| BIOVAIL CORP | COM | 09067J109 | 1513 | 112400 | SH PUT | DEFINED | 15,16,24 | 112400 | | 0 |
| BIOSCRIP INC | COM | 09069N108 | 3 | 200 | SH | DEFINED | 7,11,13 | 200 | | 0 |
| BIOSCRIP INC | COM | 09069N108 | 333 | 43101 | SH | DEFINED | 16,24,25 | 43101 | | 0 |
| BIOLASE TECHNOLOGY I | COM | 090911108 | 92 | 39037 | SH | DEFINED | 16,24,25 | 31486 | | 7551 |
| BITSTREAM INC | CL A | 091736108 | 6 | 1000 | SH | DEFINED | 7,11,13 | 1000 | | 0 |
| BITSTREAM INC | CL A | 091736108 | 87 | 13500 | SH | DEFINED | 16,24,25 | 13500 | | 0 |
| BLACK & DECKER CORP | COM | 091797100 | 369 | 5300 | SH | DEFINED | 30 | 5300 | | 0 |
| BLACK & DECKER CORP | COM | 091797100 | 415 | 5955 | SH | DEFINED | 7,11 | 5955 | | 0 |
| BLACK & DECKER CORP | COM | 091797100 | 14 | 200 | SH | DEFINED | 16,24 | 200 | | 0 |
| BLACK & DECKER CORP | COM | 091797100 | 760 | 10910 | SH | DEFINED | 7,11,13 | 10760 | | 150 |
| BLACK & DECKER CORP | COM | 091797100 | 389 | 5582 | SH | DEFINED | 15,16,24 | 5582 | | 0 |
| BLACK & DECKER CORP | COM | 091797100 | 4558 | 65444 | SH | DEFINED | 16,24,25 | 57252 | | 8192 |
| BLACK & DECKER CORP | COM | 091797100 | 123 | 1767 | SH | DEFINED | 32,40,41 | 1767 | | 0 |
| BLACK & DECKER CORP | COM | 091797100 | 6067 | 87100 | SH CALL | DEFINED | 15,16,24 | 87100 | | 0 |
| BLACK & DECKER CORP | COM | 091797100 | 13330 | 19100 | SH CALL | DEFINED | 15,16,24 | 19100 | | 0 |
| BLACK & DECKER CORP | COM | 091797100 | 20136 | 289100 | SH PUT | DEFINED | 15,16,24 | 289100 | | 0 |
| BLACK & DECKER CORP | COM | 091797100 | 1407 | 20200 | SH PUT | DEFINED | 16,24,25 | 20200 | | 0 |
| BLACK BOX CORP DEL | COM | 091826107 | 483 | 13354 | SH | DEFINED | 16,24,25 | 12970 | | 384 |
| BLACKBOARD INC | COM | 091935502 | 165 | 4100 | SH | DEFINED | 30 | 4100 | | 0 |
| BLACKBOARD INC | COM | 091935502 | 1 | 21 | SH | DEFINED | 16,24 | 21 | | 0 |
| BLACKBOARD INC | COM | 091935502 | 771 | 19152 | SH | DEFINED | 16,24,25 | 18897 | | 255 |
| BLACKROCK GLOBAL FLG | COM | 09411004 | 515 | 32636 | SH | DEFINED | 16,24,25 | 25245 | | 7390 |
| BLACKROCK GLOBAL FLG | COM | 09411004 | 110 | 7000 | SH | DEFINED | 16,19,24,26,27 | 7000 | | 0 |
| BLACK HILLS CORP | COM | 092113109 | 646 | 14650 | SH | DEFINED | 7,11,13 | 14650 | | 0 |
| BLACK HILLS CORP | COM | 092113109 | 4036 | 91529 | SH | DEFINED | 16,24,25 | 75927 | | 15602 |
| BLACKBAUD INC | COM | 09227Q100 | 2465 | 87925 | SH | DEFINED | 7,11,13 | 84850 | | 3075 |
| BLACKBAUD INC | COM | 09227Q100 | 118 | 4217 | SH | DEFINED | 16,24,25 | 4217 | | 0 |
| BLACKROCK INVT QUALI | COM | 09247D105 | 467 | 32157 | SH | DEFINED | 16,24,25 | 26556 | | 5601 |
| BLACKROCK INCOME TR | COM | 09247F107 | 220 | 39875 | SH | DEFINED | 16,24,25 | 24755 | | 15120 |
| BLACKROCK CA INSD MU | COM | 09247G108 | 152 | 10056 | SH | DEFINED | 16,24,25 | 10056 | | 0 |
| BLACKROCK FL INSD MU | COM | 09247H106 | 160 | 10867 | SH | DEFINED | 16,24,25 | 10867 | | 0 |
| BLACKROCK INSD MUN 2 | COM | 09247K109 | 895 | 59516 | SH | DEFINED | 16,24,25 | 58396 | | 1120 |
| BLACKROCK INC | COM | 09247X101 | 97 | 446 | SH | DEFINED | 7,11 | 446 | | 0 |
| BLACKROCK INC | COM | 09247X101 | 33738 | 155620 | SH | DEFINED | 16,24,25 | 139177 | | 16443 |
| BLACKROCK INC | COM | 09247X101 | 4986 | 23000 | SH CALL | DEFINED | 16,24,25 | 23000 | | 0 |
| BLACKROCK INSD MUN T | COM | 09247X105 | 9 | 897 | SH | DEFINED | 16,24 | 897 | | 0 |
| BLACKROCK INSD MUN T | COM | 09247L105 | 942 | 95111 | SH | DEFINED | 16,24,25 | 79754 | | 15356 |
| BLACKROCK INCOME OPP | COM | 09247S102 | 190 | 20037 | SH | DEFINED | 16,24,25 | 17367 | | 2670 |
| BLACKROCK INSD MUN I | COM | 09247N104 | 381 | 26523 | SH | DEFINED | 16,24,25 | 25023 | | 1500 |
| BLACKROCK MUNI 2018 | COM | 09248C106 | 2717 | 178485 | SH | DEFINED | 16,24,25 | 174338 | | 4146 |
| BLACKROCK CALIF MUN | SH BEN INT | 09248E102 | 1 | 96 | SH | DEFINED | 16,24 | 96 | | 0 |
| BLACKROCK CALIF MUN | SH BEN INT | 09248E102 | 240 | 16027 | SH | DEFINED | 16,24,25 | 14727 | | 1300 |
| BLACKROCK MUN INCOME | SH BEN INT | 09248F109 | 14 | 1000 | SH | DEFINED | 7,11,33 | 0 | | 1000 |
| BLACKROCK MUN INCOME | SH BEN INT | 09248F109 | 5302 | 385919 | SH | DEFINED | 16,24,25 | 340157 | | 45761 |
| BLACKROCK N J MUN IN | SH BEN INT | 09248J101 | 0 | 7 | SH | DEFINED | 16,24 | 7 | | 0 |

```
BLACKROCK N J MUN IN SH BEN INT    09248J101   1413    85456 SH    DEFINED    16,24,25      58936    0    26519
BLACKROCK NY MUNI 20 COM           09248K108    396    24466 SH    DEFINED    16,24,25      20816    0     3650
BLACKROCK CA MUNI 20 COM           09249C105      0        1 SH    DEFINED    16,24          1       0        0
BLACKROCK CA MUNI 20 COM           09249C105     23     1500 SH    DEFINED    7,11,33        0       0     1500
BLACKROCK CA MUNI 20 COM           09249C105    416    27003 SH    DEFINED    16,24,25      22421    0     4582
BLACKROCK CORE BD TR SHS BEN IN    09249E101    305    25878 SH    DEFINED    16,24,25      19991    0     5887
BLACKROCK CORE BD TR SHS BEN IN    09249E101     41     3500 SH    DEFINED    16,19,24,26,27 3500    0        0
BLACKROCK STRTGC BON COM           09249G106    223     1978 SH    DEFINED    16,24,25      15210    0     4066
BLACKROCK MUNICIPAL  COM           09249H104    280    19432 SH    DEFINED    16,24,25      11367    0     8065
BLACKROCK MD MUNICIP  COM          09249L105    185    12233 SH    DEFINED    16,24,25       6834    0     5399
BLACKROCK MUNI INCOM COM           09249N101   1136    83134 SH    DEFINED    16,24,25      67040    0    16094
BLACKROCK PFD OPPORT COM SHS       09249V103    386    22304 SH    DEFINED    16,24,25      16466    0     5838
BLACKROCK LTD DURATI COM           09249W101    226    14230 SH    DEFINED    7,11           0       0    14230
BLACKROCK LTD DURATI COM SHS       09249W101     13      800 SH    DEFINED    7,11,33        0       0      800
BLACKROCK LTD DURATI COM SHS       09249W101   7842   494436 SH    DEFINED    16,24,25     458525    0    35900
BLACKROCK MUN 2020 T COM SHS       09249X109    764    56149 SH    DEFINED    16,24,25      55520    0      629
BLACKROCK STRAT DIVD COM           09249Y107   2065   168130 SH    DEFINED    16,24,25     142138    0    25991
BLACKROCK LONG-TERM  COM           09250B103    159    13511 SH    DEFINED    16,24,25      13511    0        0
BLACKROCK S&P QLTY R SHS BEN IN    09250D109    269    15814 SH    DEFINED    16,24,25       8064    0     7750
BLACKROCK HIGH INCOM SHS BEN IN    09250E107     43    20000 SH    DEFINED    7,11           0       0    20000
BLACKROCK HIGH INCOM SHS BEN IN    09250E107     16     7261 SH    DEFINED    16,24,25       2440    0     4821
BLACKROCK WORLD INVT COM SHS BN    09250K103   2648   153035 SH    DEFINED    16,24,25     134797    0    18238
BLACKROCK DIVID ACHI COM           09250N107      9      720 SH    DEFINED    7,11,13        720     0        0
BLACKROCK DIVID ACHI COM           09250N107    865    70358 SH    DEFINED    16,24,25      52093    0    18265
BLACKROCK GLBL ENRGY COM           09250U101   6443   205323 SH    DEFINED    16,24,25     165477    0    39845
BLACKROCK HEALTH SCI COM           09250W107   1093    40426 SH    DEFINED    16,24,25      36618    0     3808
BLACKROCK GLOBAL OPP COM           09250L105   2529    85796 SH    DEFINED    16,24,25      49008    0    36788
BLACKROCK PFD & EQ A COM           09250P105   5650   330196 SH    DEFINED    16,24,25     148040    0   182156
BLACKROCK ENHANCED D COM           09251A104     15     1300 SH    DEFINED    7,11,13       1300     0        0
BLACKROCK ENHANCED D COM           09251A104   1062    93568 SH    DEFINED    16,24,25      71670    0    21897
BLACKROCK INTL GRWTH COM BENE I    09252A107   1716   102072 SH    DEFINED    16,24,25      76519    0    25553
BLACKROCK MUNIVEST F COM           09253R105    894   106614 SH    DEFINED    16,24,25      92873    0     7741
BLACKSTONE GROUP L P COM UNIT L    09253U108   3586   162059 SH    DEFINED    16,24,25     162059    0        0
BLACKSTONE GROUP L P COM UNIT L    09253U108     66     3000 SH    DEFINED    7,11,33        0       0     3000
BLACKSTONE GROUP L P COM UNIT L    09253U108    271    12238 SH    DEFINED    15,16,24      12238    0        0
BLACKSTONE GROUP L P COM UNIT L    09253U108  15627   706141 SH    DEFINED    16,24,25     536622    0   169519
BLACKSTONE GROUP L P COM UNIT L    09253U108   1770    80000 SH    CALL DEFINED 7,11        80000    0        0
BLACKSTONE GROUP L P COM UNIT L    09253U108   3189   144100 SH    CALL DEFINED 15,16,24   144100    0        0
BLACKSTONE GROUP L P COM UNIT L    09253U108     24     1100 SH    CALL DEFINED 16,24,25     1000     0      100
BLACKSTONE GROUP L P COM UNIT L    09253U108   2257   102000 SH    PUT DEFINED  15,16,24   102000    0        0
BLACKROCK MUNIYIELD  COM           09253W104   4417   311728 SH    DEFINED    16,24,25     291784    0    19943
BLACKROCK MUNIYIELD  COM           09253Y100     45     4400 SH    DEFINED    7,11,13       4400     0        0
BLACKROCK MUNIYIELD  COM           09253Y100   1826   177308 SH    DEFINED    16,24,25     171168    0     6140
BLACKROCK MUNIHLDGS  COM           09254A101    866    71901 SH    DEFINED    16,24,25      55335    0    16566
BLACKROCK REAL ASSET COM           09254B109   3288   193882 SH    DEFINED    16,24,25     173492    0    20390
BLACKROCK MUNIHLDGS  COM           09254C107    524    43735 SH    DEFINED    16,24,25      41484    0     2251
BLACKROCK MUNIYIELD I COM          09254E103    178    14047 SH    DEFINED    7,11,33        0       0    14047
BLACKROCK MUNIYIELD I COM          09254E103   1094    86110 SH    DEFINED    16,24,25      76027    0    10083
BLACKROCK MUNIYIELD  COM           09254G108    192    16553 SH    DEFINED    16,24,25      12053    0     4500
BLACKROCK MUNIYIELD  COM           09254K109    390    30360 SH    DEFINED    16,24,25      26360    0     4000
BLACKROCK MUNIHOLDIN COM           09254X101    444    33743 SH    DEFINED    16,24,25      26643    0     7100
BLACKROCK MUNIYIELD  COM           09254Y109    581    42736 SH    DEFINED    16,24,25      36536    0     6200
BLACKROCK ECOSOLUTIO COM SH        09254G100   1266    70467 SH    DEFINED    16,24,25      65982    0     4485
BLACKROCK MUNIYIELD  COM           09255A100    361    26928 SH    DEFINED    16,24,25      23928    0     3000
BLACKROCK MUNIHOLDIN COM           09255C106    205    15976 SH    DEFINED    16,24,25      15976    0        0
BLACKROCK GBL EQTY I COM           09255D104    197    12124 SH    DEFINED    16,24,25       7739    0     4384
BLACKROCK MUNIYIELD  COM           09255E102    757    61178 SH    DEFINED    16,24,25      56133    0     5045
BLACKROCK MUNI N Y I COM           09255F109    164    12802 SH    DEFINED    16,24,25      12802    0        0
BLACKROCK PFD INCOME COM           09255H105     30     1900 SH    DEFINED    7,11,13       1900     0        0
BLACKROCK PFD INCOME COM           09255H105   4522   283844 SH    DEFINED    16,24,25     247103    0    36741
BLACKROCK ENHANCED G COM           09255K108    685    43275 SH    DEFINED    16,24,25      39375    0     3900
BLACKROCK CORPOR HIG COM           09255L106    404    57188 SH    DEFINED    16,24,25      49238    0     7950
BLACKROCK CORPOR HI  COM           09255N102   2759   235827 SH    DEFINED    16,24,25     232922    0     2905
BLACKROCK CORPOR HI  COM           09255N102    369    31500 SH    DEFINED    16,19,24,26,27 31500   0        0
BLACKROCK CORPOR HI  COM           09255P107   1682   142933 SH    DEFINED    16,24,25     136369    0     6564
BLACKROCK CORPOR HI  COM           09255P107    441    37500 SH    DEFINED    16,19,24,26,27 37500   0        0
BLACKROCK DEBT STRAT COM           09255R103    135    23690 SH    DEFINED    7,11           0       0    23690
BLACKROCK DEBT STRAT COM           09255R103   2338   411603 SH    DEFINED    16,24,25     373914    0    37688
BLACKROCK SR HIGH IN COM           09255T109   5756  1065896 SH    DEFINED    16,24,25    1002595    0    63301
BLACKROCK FLOAT RATE COM           09255X100   1213    75923 SH    DEFINED    16,24,25      66496    0     9426
BLACKROCK FLOAT RATE COM           09255X100    208    13000 SH    DEFINED    16,19,24,26,27 13000   0        0
BLACKROCK FLOAT RATE COM SHS       09255Y108     15      923 SH    CALL DEFINED 7,11       1376932    0  1376932
BLACKROCK FL RATE OM COM SHS       09255Y108     15      923 SH    DEFINED    16,24,25       923     0        0
BLACKROCK FL RATE OM COM SHS       09255Y108    412    26000 SH    DEFINED    16,19,24,26,27 13000   0        0
BLACKROCK CAP & INCO COM           09256A109   4477   223184 SH    DEFINED    16,24,25     208999    0    14185
BLDRS INDEX FDS TR  ASIA 50 AD     09348R102   1944    56811 SH    DEFINED    16,24,25      53960    0     2851
BLDRS INDEX FDS TR  DEV MK 100     09348R201   7909   250856 SH    DEFINED    16,24,25     211252    0    39604
BLDRS INDEX FDS TR  EMER MK 50     09348R300  11450   208748 SH    DEFINED    16,24,25     189098    0    18940
BLDRS INDEX FDS TR  EUR 100 AD     09348R409    382    11858 SH    DEFINED    16,24,25      10681    0     1177
BLOCK H & R INC      COM           09367110S   2358   126993 SH    DEFINED    7,11          113993    0    13000
BLOCK H & R INC      COM           09367110S    354    19069 SH    DEFINED    7,11,13       19069    0        0
BLOCK H & R INC      COM           09367110S   1950   105017 SH    DEFINED    15,16,24     105017    0        0
BLOCK H & R INC      COM           09367110S   1474    79393 SH    DEFINED    16,24,25      71948    0     7445
BLOCK H & R INC      COM           09367110S    189    10202 SH    DEFINED    32,40,41      10202    0        0
BLOCK H & R INC      COM           09367110S   4347   234100 SH    CALL DEFINED 15,16,24   234100    0        0
BLOCK H & R INC      COM           09367110S    189    10200 SH    CALL DEFINED 16,24,25    10200    0        0
BLOCK H & R INC      COM           09367110S   7855   423000 SH    PUT DEFINED  15,16,24   423000    0        0
BLOCK H & R INC      COM           09367110S    297   16000 SH    PUT DEFINED  16,24,25    16000    0        0
BLOCKBUSTER INC      CL A          09367910S   1007   258153 SH    DEFINED    15,16,24     258153    0        0
BLOCKBUSTER INC      CL A          09367910S    283    72458 SH    DEFINED    16,24,25      68169    0     4289
BLOCKBUSTER INC      CL A          09367910S    106    27100 SH    CALL DEFINED 15,16,24    27100    0        0
BLOCKBUSTER INC      CL A          09367910S     12     3000 SH    CALL DEFINED 16,24,25     3000     0        0
BLOCKBUSTER INC      CL A          09367910S   1135   291000 SH    PUT DEFINED  15,16,24   291000    0        0
BLOUNT INTL INC NEW  COM           09523110S    589    47866 SH    DEFINED    16,24,25      37635    0    10231
BLUE COAT SYSTEMS IN COM NEW       09534T508   2555    77742 SH    DEFINED    7,11          77742     0        0
BLUE COAT SYSTEMS IN COM NEW       09534T508     36     1100 SH    DEFINED    7,11,13       1100     0        0
BLUE COAT SYSTEMS IN COM NEW       09534T508   3930   119568 SH    DEFINED    16,24,25      90339    0    29229
BLUE COAT SYSTEMS IN COM NEW       09534T508   6702   203900 SH    DEFINED    15,16,24     203900    0        0
BLUE COAT SYSTEMS IN COM NEW       09534T508     66     2000 SH    CALL DEFINED 16,24,25     2000     0        0
BLUE COAT SYSTEMS IN COM NEW       09534T508   2597    79000 SH    PUT DEFINED  15,16,24    79000    0        0
BLUE NILE INC        COM           09578R103   1477    21696 SH    DEFINED    7,11          21583     0      113
BLUE NILE INC        COM           09578R103     76     1120 SH    DEFINED    16,24         1120     0        0
BLUE NILE INC        COM           09578R103    963    14149 SH    DEFINED    16,24,25       3561    0    10588
BLUE SQUARE - ISRAEL SPONSORED     06065510S    188    14019 SH    DEFINED    16,24,25      12287    0     1732
BLYTH INC            COM           09643P108      8      342 SH    DEFINED    7,11           342     0      342
BLYTH INC            COM           09643P108    330    15031 SH    DEFINED    16,24,25      14350    0      681
BMS MUNAI INC        COM           06656A105   1248   200000 SH    DEFINED    32,40,41     200000    0        0
BOARDWALK PIPELINE P UT LTD PAR    09662710S   4074   132069 SH    DEFINED    16,24,25      87730    0    43259
BOB EVANS FARMS INC  COM           09676110S   1192    44278 SH    DEFINED    16,24,25      43878    0      400
BOEING CO            COM           09702310S    394     4500 SH    DEFINED    12             0       0     4500
BOEING CO            COM           09702310S    589     6730 SH    DEFINED    30             0       0     6730
BOEING CO            COM           09702310S   3188    36454 SH    DEFINED    3,9            0       0    36454
BOEING CO            COM           09702310S  46714   534116 SH    DEFINED    7,11         440143    0    93973
BOEING CO            COM           09702310S    843     9642 SH    DEFINED    7,11,13       3222    0     6420
```

| Name | Class | CUSIP | Value | Amount | SH/PRN | Put/Call | Discretion | Mgrs | Sole | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|---|
| BOEING CO | COM | 097023105 | 97 | 1110 | SH | | DEFINED | 7,11,33 | | 0 | 1110 |
| BOEING CO | COM | 097023105 | 12606 | 144132 | SH | | DEFINED | 15,16,24 | 144132 | 0 | 0 |
| BOEING CO | COM | 097023105 | 70590 | 807114 | SH | | DEFINED | 16,24,25 | 721556 | 0 | 85558 |
| BOEING CO | COM | 097023105 | 19812 | 226529 | SH | | DEFINED | 32,40,41 | 226529 | 0 | 0 |
| BOEING CO | COM | 097023105 | 664 | 7595 | SH | | DEFINED | 5-7,11,43,44 | | 7595 | 0 |
| BOEING CO | COM | 097023105 | 30632 | 350242 | SH | CALL | DEFINED | 7,11 | 350242 | 0 | 0 |
| BOEING CO | COM | 097023105 | 67773 | 774900 | SH | CALL | DEFINED | 16,24,25 | 774900 | 0 | 0 |
| BOEING CO | COM | 097023105 | 19985 | 228500 | SH | CALL | DEFINED | 16,24,25 | 228500 | 0 | 0 |
| BOEING CO | COM | 097023105 | 62009 | 709000 | SH | PUT | DEFINED | 15,16,24 | 709000 | 0 | 0 |
| BOEING CO | COM | 097023105 | 39387 | 450342 | SH | PUT | DEFINED | 16,24,25 | 450342 | 0 | 0 |
| BOIS D ARC ENERGY IN | COM | 097380U03 | 583 | 29350 | SH | | DEFINED | 16,24,25 | 27480 | 0 | 1870 |
| BOLT TECHNOLOGY CORP | COM | 09769B104 | 283 | 7456 | SH | | DEFINED | 16,24,25 | 7456 | 0 | 0 |
| BON-TON STORES INC | COM | 09776J101 | 634 | 66821 | SH | | DEFINED | 16,24,25 | 56956 | 0 | 9865 |
| BON-TON STORES INC | COM | 09776J101 | 28 | 3000 | SH | CALL | DEFINED | 16,24,25 | 3000 | 0 | 0 |
| BOOTS & COOTS/INTL W | COM NEW | 099469504 | 159 | 97613 | SH | | DEFINED | 16,24,25 | 94262 | 0 | 3351 |
| BORDERS GROUP INC | COM | 099709107 | 1739 | 163311 | SH | | DEFINED | 16,24,25 | 122076 | 0 | 41235 |
| BORGWARNER INC | COM | 099724106 | 35727 | 738011 | SH | | DEFINED | 7,11 | 737791 | 0 | 220 |
| BORGWARNER INC | COM | 099724106 | 29 | 600 | SH | | DEFINED | 7,11,13 | 600 | 0 | 0 |
| BORGWARNER INC | COM | 099724106 | 13004 | 268621 | SH | | DEFINED | 16,24,25 | 229891 | 0 | 38729 |
| BORGWARNER INC | COM | 099724106 | 77 | 1600 | SH | | DEFINED | 32,40,41 | 1600 | 0 | 0 |
| BORGWARNER INC | COM | 099724106 | 484 | 10000 | SH | CALL | DEFINED | 7,11 | 10000 | 0 | 0 |
| BORGWARNER INC | COM | 099724106 | 1210 | 25000 | SH | CALL | DEFINED | 16,24,25 | 25000 | 0 | 0 |
| BORGWARNER INC | COM | 099724106 | 547 | 11300 | SH | PUT | DEFINED | 16,24,25 | 11300 | 0 | 0 |
| BOSTON BEER INC | CL A | 100557107 | 266 | 7071 | SH | | DEFINED | 16,24,25 | 5969 | 0 | 1102 |
| BOSTON PRIVATE FINL | COM | 101119105 | 5186 | 191493 | SH | | DEFINED | 16,24,25 | 159638 | 0 | 31855 |
| BOSTON PROPERTIES IN | COM | 101121101 | 1921 | 20929 | SH | | DEFINED | 7,11 | 15504 | 0 | 5425 |
| BOSTON PROPERTIES IN | COM | 101121101 | 8658 | 94300 | SH | | DEFINED | 14,31 | 94300 | 0 | 0 |
| BOSTON PROPERTIES IN | COM | 101121101 | 9 | 95 | SH | | DEFINED | 7,11,13 | 95 | 0 | 0 |
| BOSTON PROPERTIES IN | COM | 101121101 | 165 | 1800 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1800 |
| BOSTON PROPERTIES IN | COM | 101121101 | 2678 | 29168 | SH | | DEFINED | 16,24,25 | 23449 | 0 | 5719 |
| BOSTON PROPERTIES IN | COM | 101121101 | 42423 | 462069 | SH | | DEFINED | 32,40,41 | 462069 | 0 | 0 |
| BOSTON PROPERTIES IN | COM | 101121101 | 249 | 2707 | SH | | DEFINED | 16,19,24,26,27 | 2707 | 0 | 0 |
| BOSTON PROPERTIES IN | COM | 101121101 | 689 | 7500 | SH | CALL | DEFINED | 16,24,25 | 7500 | 0 | 0 |
| BOSTON SCIENTIFIC CO | COM | 101137107 | 25009 | 2150413 | SH | | DEFINED | 7,11 | 2150413 | 0 | 0 |
| BOSTON SCIENTIFIC CO | COM | 101137107 | 5 | 419 | SH | | DEFINED | 7,11,13 | 419 | 0 | 0 |
| BOSTON SCIENTIFIC CO | COM | 101137107 | 3995 | 343533 | SH | | DEFINED | 15,16,24 | 343533 | 0 | 0 |
| BOSTON SCIENTIFIC CO | COM | 101137107 | 11718 | 1007532 | SH | | DEFINED | 16,24,25 | 970202 | 0 | 37330 |
| BOSTON SCIENTIFIC CO | COM | 101137107 | 467 | 40133 | SH | | DEFINED | 32,40,41 | 40133 | 0 | 0 |
| BOSTON SCIENTIFIC CO | COM | 101137107 | 14 | 1230 | SH | | DEFINED | 5-7,11,43,44 | 0 | 1230 | 0 |
| BOSTON SCIENTIFIC CO | COM | 101137107 | 1745 | 150000 | SH | | DEFINED | 16,19,24,26,27 | 150000 | 0 | 0 |
| BOSTON SCIENTIFIC CO | COM | 101137107 | 25656 | 2206000 | SH | CALL | DEFINED | 7,11 | 2206000 | 0 | 0 |
| BOSTON SCIENTIFIC CO | COM | 101137107 | 17968 | 1545000 | SH | | DEFINED | 15,16,24 | 1545000 | 0 | 0 |
| BOSTON SCIENTIFIC CO | COM | 101137107 | 61202 | 5262455 | SH | CALL | DEFINED | 16,24,25 | 5262455 | 0 | 0 |
| BOSTON SCIENTIFIC CO | COM | 101137107 | 11921 | 1025055 | SH | PUT | DEFINED | 7,11 | 1025055 | 0 | 0 |
| BOSTON SCIENTIFIC CO | COM | 101137107 | 10076 | 866400 | SH | PUT | DEFINED | 15,16,24 | 866400 | 0 | 0 |
| BOSTON SCIENTIFIC CO | COM | 101137107 | 159 | 13700 | SH | PUT | DEFINED | 16,24,25 | 13700 | 0 | 0 |
| BOULDER TOTAL RETURN | COM | 101541100 | 1384 | 63217 | SH | | DEFINED | 16,24,25 | 53037 | 0 | 10179 |
| BOWNE & CO INC | COM | 103043105 | 477 | 27091 | SH | | DEFINED | 16,24,25 | 18891 | 0 | 8200 |
| BOYD GAMING CORP | COM | 103304101 | 331 | 9720 | SH | | DEFINED | 30 | 9720 | 0 | 0 |
| BOYD GAMING CORP | COM | 103304101 | 40 | 1163 | SH | | DEFINED | 7,11 | 670 | 0 | 493 |
| BOYD GAMING CORP | COM | 103304101 | 10 | 300 | SH | | DEFINED | 7,11,13 | 300 | 0 | 0 |
| BOYD GAMING CORP | COM | 103304101 | 2212 | 64911 | SH | | DEFINED | 16,24,25 | 64911 | 0 | 0 |
| BOYD GAMING CORP | COM | 103304101 | 2676 | 78532 | SH | | DEFINED | 16,24,25 | 69079 | 0 | 9453 |
| BOYD GAMING CORP | COM | 103304101 | 9461 | 277700 | SH | CALL | DEFINED | 15,16,24 | 277700 | 0 | 0 |
| BOYD GAMING CORP | COM | 103304101 | 68 | 2000 | SH | CALL | DEFINED | 16,24,25 | 2000 | 0 | 0 |
| BOYD GAMING CORP | COM | 103304101 | 3339 | 98000 | SH | PUT | DEFINED | 15,16,24 | 98000 | 0 | 0 |
| BRADY CORP | CL A | 104674106 | 1078 | 30735 | SH | | DEFINED | 7,11,13 | 29210 | 0 | 1525 |
| BRADY CORP | CL A | 104674106 | 86 | 2450 | SH | | DEFINED | 16,24,25 | 2450 | 0 | 0 |
| BRANDYWINE RLTY TR | SH BEN INT | 105368203 | 368 | 20500 | SH | | DEFINED | 14,31 | 20500 | 0 | 0 |
| BRANDYWINE RLTY TR | SH BEN INT | 105368203 | 30 | 1650 | SH | | DEFINED | 7,11,13 | 1650 | 0 | 0 |
| BRANDYWINE RLTY TR | SH BEN INT | 105368203 | 3100 | 172869 | SH | | DEFINED | 16,24,25 | 136288 | 0 | 36580 |
| BRANDYWINE RLTY TR | SH BEN INT | 105368203 | 733 | 40895 | SH | | DEFINED | 32,40,41 | 40895 | 0 | 0 |
| BRASIL TELECOM PARTI | SPON ADR P | 105530109 | 178 | 2390 | SH | | DEFINED | 16,24,25 | 2252 | 0 | 138 |
| BRASIL TELECOM PARTI | SPON ADR P | 105530109 | 7199 | 96525 | SH | | DEFINED | 32,40,41 | 96525 | 0 | 0 |
| BREITBURN ENERGY PAR | COM UT LTD | 106776107 | 53518 | 1851850 | SH | | DEFINED | 16,24 | 1851850 | 0 | 0 |
| BREITBURN ENERGY PAR | COM UT LTD | 106776107 | 7 | 230 | SH | | DEFINED | 7,11,33 | 0 | 0 | 230 |
| BREITBURN ENERGY PAR | COM UT LTD | 106776107 | 23002 | 795902 | SH | | DEFINED | 16,24,25 | 773182 | 0 | 22720 |
| BRIGGS & STRATTON CO | COM | 109043109 | 11 | 500 | SH | | DEFINED | 30 | 500 | 0 | 0 |
| BRIGGS & STRATTON CO | COM | 109043109 | 1476 | 65136 | SH | | DEFINED | 16,24,25 | 58205 | 0 | 6931 |
| BRIGHAM EXPLORATION | COM | 109178103 | 190 | 25219 | SH | | DEFINED | 16,24,25 | 20669 | 0 | 4550 |
| BRIGHT HORIZON FAMIL | COM | 109195107 | 1187 | 34363 | SH | | DEFINED | 16,24,25 | 31608 | 0 | 2755 |
| BRIGHTPOINT INC | COM NEW | 109473405 | 692 | 45075 | SH | | DEFINED | 7,11,13 | 45075 | 0 | 0 |
| BRIGHTPOINT INC | COM NEW | 109473405 | 327 | 21309 | SH | | DEFINED | 16,24,25 | 21080 | 0 | 229 |
| BRINKER INTL INC | COM | 109641100 | 12 | 600 | SH | | DEFINED | 12 | 0 | 0 | 600 |
| BRINKER INTL INC | COM | 109641100 | 2871 | 146773 | SH | | DEFINED | 7,11 | 146623 | 0 | 150 |
| BRINKER INTL INC | COM | 109641100 | 9 | 450 | SH | | DEFINED | 7,11,13 | 450 | 0 | 0 |
| BRINKER INTL INC | COM | 109641100 | 224 | 11458 | SH | | DEFINED | 16,24,25 | 8218 | 0 | 3240 |
| BRINKS CO | COM | 109696104 | 32 | 529 | SH | | DEFINED | 7,11 | 529 | 0 | 0 |
| BRINKS CO | COM | 109696104 | 9858 | 165007 | SH | | DEFINED | 16,24,25 | 164617 | 0 | 390 |
| BRISTOL MYERS SQUIBB | DBCV | 110122AN8 | 9990 | 9965000 | PRN | | DEFINED | 16,24,25 | 9960000 | 0 | 5000 |
| BRISTOL MYERS SQUIBB | COM | 110122108 | 64 | 2400 | SH | | DEFINED | 12 | 0 | 0 | 2400 |
| BRISTOL MYERS SQUIBB | COM | 110122108 | 636 | 23989 | SH | | DEFINED | 3,9 | 0 | 0 | 23989 |
| BRISTOL MYERS SQUIBB | COM | 110122108 | 31115 | 1173247 | SH | | DEFINED | 7,11 | 694511 | 11000 | 467736 |
| BRISTOL MYERS SQUIBB | COM | 110122108 | 3534 | 133244 | SH | | DEFINED | 7,11,13 | 125896 | 0 | 7348 |
| BRISTOL MYERS SQUIBB | COM | 110122108 | 40 | 1500 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1500 |
| BRISTOL MYERS SQUIBB | COM | 110122108 | 4210 | 158750 | SH | | DEFINED | 15,16,24 | 158750 | 0 | 0 |
| BRISTOL MYERS SQUIBB | COM | 110122108 | 96351 | 3633149 | SH | | DEFINED | 16,24,25 | 3155546 | 0 | 477602 |
| BRISTOL MYERS SQUIBB | COM | 110122108 | 19502 | 735379 | SH | | DEFINED | 32,40,41 | 735379 | 0 | 0 |
| BRISTOL MYERS SQUIBB | COM | 110122108 | 315 | 11878 | SH | | DEFINED | 5-7,11,43,44 | 0 | 11878 | 0 |
| BRISTOL MYERS SQUIBB | COM | 110122108 | 4150 | 156468 | SH | | DEFINED | 16,19,24,26,27 | 156468 | 0 | 0 |
| BRISTOL MYERS SQUIBB | COM | 110122108 | 142023 | 5355300 | SH | CALL | DEFINED | 15,16,24 | 5355300 | 0 | 0 |
| BRISTOL MYERS SQUIBB | COM | 110122108 | 11823 | 445822 | SH | CALL | DEFINED | 16,24,25 | 445822 | 0 | 0 |
| BRISTOL MYERS SQUIBB | COM | 110122108 | 5962 | 224822 | SH | PUT | DEFINED | 7,11 | 224822 | 0 | 0 |
| BRISTOL MYERS SQUIBB | COM | 110122108 | 43830 | 1652700 | SH | PUT | DEFINED | 15,16,24 | 1652700 | 0 | 0 |
| BRISTOL MYERS SQUIBB | COM | 110122108 | 6118 | 230700 | SH | PUT | DEFINED | 16,24,25 | 230700 | 0 | 0 |
| BRISTOW GROUP INC | PFD CNV 5. | 110394402 | 21312 | 300000 | SH | | DEFINED | 16,24 | 300000 | 0 | 0 |
| BRISTOW GROUP INC | PFD CNV 5. | 110394400 | 20114 | 283138 | SH | | DEFINED | 16,24,25 | 283138 | 0 | 0 |
| BRITISH AMERN TOB PL | SPONSORED | 110448107 | 21 | 268 | SH | | DEFINED | 7,11,13 | 233 | 0 | 35 |
| BRITISH AMERN TOB PL | SPONSORED | 110448107 | 2269 | 28877 | SH | | DEFINED | 16,24,25 | 26205 | 0 | 2672 |
| BRITISH AMERN TOB PL | SPONSORED | 110448107 | 1964 | 25000 | SH | | DEFINED | 16,19,24,26,29 | 25000 | 0 | 0 |
| BRITISH SKY BROADCAS | SPONSORED | 111013108 | 5 | 100 | SH | | DEFINED | 31,45 | 100 | 0 | 0 |
| BRITISH SKY BROADCAS | SPONSORED | 111013108 | 885 | 18084 | SH | | DEFINED | 16,24,25 | 17780 | 0 | 304 |
| BROADBAND HOLDRS TR | DEPOSITORY | 11130P104 | 123 | 8800 | SH | | DEFINED | 15,16,24 | 8800 | 0 | 0 |
| BROADBAND HOLDRS TR | DEPOSITORY | 11130P104 | 282 | 20229 | SH | | DEFINED | 16,24,25 | 19729 | 0 | 500 |
| BROADCOM CORP | CL A | 111320107 | 6 | 247 | SH | | DEFINED | 3,9 | 0 | 0 | 247 |
| BROADCOM CORP | CL A | 111320107 | 1889 | 72272 | SH | | DEFINED | 7,11 | 72272 | 0 | 0 |
| BROADCOM CORP | CL A | 111320107 | 8 | 287 | SH | | DEFINED | 7,11,13 | 287 | 0 | 0 |
| BROADCOM CORP | CL A | 111320107 | 49 | 1860 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1860 |
| BROADCOM CORP | CL A | 111320107 | 57717 | 2208005 | SH | | DEFINED | 16,24,25 | 2088339 | 0 | 119666 |
| BROADCOM CORP | CL A | 111320107 | 7415 | 283683 | SH | | DEFINED | 32,40,41 | 283683 | 0 | 0 |
| BROADCOM CORP | CL A | 111320107 | 127 | 4870 | SH | | DEFINED | 16,19,24,26,27 | 4870 | 0 | 0 |
| BROADCOM CORP | CL A | 111320107 | 40865 | 1563300 | SH | CALL | DEFINED | 15,16,24 | 1563300 | 0 | 0 |
| BROADCOM CORP | CL A | 111320107 | 10746 | 411100 | SH | CALL | DEFINED | 16,24,25 | 411100 | 0 | 0 |
| BROADCOM CORP | CL A | 111320107 | 29018 | 1110100 | SH | PUT | DEFINED | 15,16,24 | 1110100 | 0 | 0 |

```
BROADCOM CORP          CL A    111320107     178      6800 SH  PUT DEFINED    16,24,25       6800        0        0
BROADRIDGE FINL SOLU   COM      11133T103    6107    272280 SH      DEFINED     7,11       236170      243    35867
BROADRIDGE FINL SOLU   COM      11133T103      36      1600 SH      DEFINED    7,11,13       1000        0      600
BROADRIDGE FINL SOLU   COM      11133T103       6       250 SH      DEFINED    7,11,33          0        0      250
BROADRIDGE FINL SOLU   COM      11133T103     219      9772 SH      DEFINED    15,16,24       9772        0        0
BROADRIDGE FINL SOLU   COM      11133T103    1207     53813 SH      DEFINED    16,24,25      41720        0    12093
BROADRIDGE FINL SOLU   COM      11133T103      48      2134 SH      DEFINED    32,40,41       2134        0        0
BROADRIDGE FINL SOLU   COM      11133T103     852     38000 SH  CALL DEFINED   15,16,24      38000        0        0
BROADRIDGE FINL SOLU   COM      11133T103      79      3500 SH  PUT DEFINED    15,16,24       3500        0        0
BROCADE COMMUNICATIO   COM NEW  111621306    1709    232899 SH      DEFINED     7,11       232899        0        0
BROCADE COMMUNICATIO   COM NEW  111621306      29      3900 SH      DEFINED    7,11,13       3900        0        0
BROCADE COMMUNICATIO   COM NEW  111621306     570     77720 SH      DEFINED    15,16,24      77720        0        0
BROCADE COMMUNICATIO   COM NEW  111621306    3277    446494 SH      DEFINED    16,24,25     416331        0    30163
BROCADE COMMUNICATIO   COM NEW  111621306    3666    499400 SH      DEFINED    32,40,41     499400        0        0
BROCADE COMMUNICATIO   COM NEW  111621306    2516    342800 SH  CALL DEFINED   15,16,24     342800        0        0
BROCADE COMMUNICATIO   COM NEW  111621306    2517    342900 SH  PUT DEFINED    15,16,24     342900        0        0
BRONCO DRILLING CO I   COM      12221107      906     61000 SH      DEFINED       42        61000        0        0
BRONCO DRILLING CO I   COM      12221107       16      1075 SH      DEFINED    16,24,25       1075        0        0
BROOKDALE SR LIVING    COM      12463104        3       109 SH      DEFINED      7,11         109        0        0
BROOKDALE SR LIVING    COM      12463104     8062    283776 SH      DEFINED    16,24,25     268598        0    15178
BROOKFIELD ASSET MGM   CL A LTD V 12585104   6569    184154 SH      DEFINED    16,24,25     101032        0    83122
BROOKFIELD ASSET MGM   CL A LTD V 12585104    527     14772 SH      DEFINED    32,40,41      14772        0        0
BROOKFIELD ASSET MGM   CL A LTD V 12585104   2674     74976 SH      DEFINED    4,6,7,11      74976        0        0
BROOKFIELD ASSET MGM   CL A LTD V 12585104     61      1700 SH  CALL DEFINED   16,24,25       1700        0        0
BROOKFIELD HOMES COR   COM      12723101      336     21271 SH      DEFINED    16,24,25      17971        0     3300
BROOKFIELD PPTYS COR   COM      129900105   15970    829600 SH      DEFINED      14,31      829600        0        0
BROOKFIELD PPTYS COR   COM      129900105     360    186678 SH      DEFINED    16,24,25      18173        0      505
BROOKFIELD PPTYS COR   COM      129900105     120      6254 SH      DEFINED    32,40,41       6254        0        0
BROOKFIELD PPTYS COR   COM      129900105     322     16728 SH      DEFINED    4,6,7,11      16728        0        0
BROOKLINE BANCORP IN   COM      11373M107    1934    190395 SH      DEFINED     31,45      190395        0        0
BROOKLINE BANCORP IN   COM      11373M107    1591    156615 SH      DEFINED    16,24,25     126215        0    30400
BROOKS AUTOMATION IN   COM      114340102      71      5400 SH      DEFINED       30         5400        0        0
BROOKS AUTOMATION IN   COM      114340102     132     10001 SH      DEFINED    15,16,24      10001        0        0
BROOKS AUTOMATION IN   COM      114340102     158     11965 SH      DEFINED    16,24,25      11065        0      900
BROOKS AUTOMATION IN   COM      114340102      87      6600 SH  CALL DEFINED   15,16,24       6600        0        0
BROOKS AUTOMATION IN   COM      114340102      38      2900 SH  PUT DEFINED    15,16,24       2900        0        0
BROWN & BROWN INC      COM      115236101     191      8129 SH      DEFINED      7,11        8129        0        0
BROWN & BROWN INC      COM      115236101     887     37765 SH      DEFINED    7,11,13       36190        0     1575
BROWN & BROWN INC      COM      115236101     846     35992 SH      DEFINED    16,24,25      31356        0     4636
BROWN & BROWN INC      COM      115236101     110      4665 SH      DEFINED    32,40,41       4665        0        0
BROWN FORMAN CORP      CL A     115637100      82      1095 SH      DEFINED      7,11        1095        0        0
BROWN FORMAN CORP      CL A     115637100     120      1600 SH      DEFINED    16,24,25       1580        0       20
BROWN FORMAN CORP      CL B     115637209     767     10354 SH      DEFINED      7,11       10354        0        0
BROWN FORMAN CORP      CL B     115637209     162      2180 SH      DEFINED    7,11,13        2135        0       45
BROWN FORMAN CORP      CL B     115637209      20       270 SH      DEFINED    7,11,33          0        0      270
BROWN FORMAN CORP      CL B     115637209    2715     36641 SH      DEFINED    16,24,25      25972        0    10669
BROWN FORMAN CORP      CL B     115637209     273      3684 SH      DEFINED    32,40,41       3684        0        0
BROWN SHOE INC NEW     COM      115736100      15       975 SH      DEFINED       30          975        0        0
BROWN SHOE INC NEW     COM      115736100     201     13282 SH      DEFINED    16,24,25      12782        0      500
BRUKER BIOSCIENCES C   COM      116794108     209     15700 SH      DEFINED    16,24,25      15000        0      700
BRUNSWICK CORP         COM      117043109      45      2650 SH      DEFINED       30         2650        0        0
BRUNSWICK CORP         COM      117043109     111      6521 SH      DEFINED      7,11        6521        0        0
BRUNSWICK CORP         COM      117043109     233     13650 SH      DEFINED    16,24,25      13066        0      584
BRUNSWICK CORP         COM      117043109      35      2038 SH      DEFINED    32,40,41       2038        0        0
BRUNSWICK CORP         COM      117043109    3163    185500 SH  CALL DEFINED   15,16,24     185500        0        0
BRUNSWICK CORP         COM      117043109    2077    121800 SH  PUT DEFINED    15,16,24     121800        0        0
BRUSH ENGINEERED MAT   COM      117421107     244      6594 SH      DEFINED    7,11,33          0        0     6594
BRUSH ENGINEERED MAT   COM      117421107     881     23791 SH      DEFINED    16,24,25      22885        0      906
BUCKEYE GP HOLDINGS    COM UNITS 118167105     191      6775 SH      DEFINED    7,11,33          0        0     6775
BUCKEYE GP HOLDINGS    COM UNITS 118167105     158      5601 SH      DEFINED    16,24,25       4851        0      750
BUCKEYE PARTNERS L P   UNIT LTD P 118230101   3119     63125 SH      DEFINED      7,11           0        0    63125
BUCKEYE PARTNERS L P   UNIT LTD P 118230101    170      3450 SH      DEFINED    7,11,13        3450        0        0
BUCKEYE PARTNERS L P   UNIT LTD P 118230101   9537    193017 SH      DEFINED    16,24,25     166562        0    26455
BUCKLE INC             COM      118440106     212      6420 SH      DEFINED    16,24,25       6120        0      300
BUCYRUS INTL INC NEW   CL A     118759109    1335     13433 SH      DEFINED    15,16,24      13433        0        0
BUCYRUS INTL INC NEW   CL A     118759109    5688     57234 SH      DEFINED    16,24,25      49756        0     7478
BUCYRUS INTL INC NEW   CL A     118759109    5844     58800 SH  CALL DEFINED   15,16,24      58800        0        0
BUCYRUS INTL INC NEW   CL A     118759109   16548    166500 SH  PUT DEFINED    15,16,24     166500        0        0
BUFFALO WILD WINGS I   COM      119848109     653     28137 SH      DEFINED    16,24,25      25305        0     2832
BUILD A BEAR WORKSHO   COM      120076104     367     26300 SH      DEFINED    16,24,25      25682        0      618
BUILDING MATLS HLDG    COM      120113105      52      9336 SH      DEFINED    16,24,25       9336        0        0
BUILDING MATLS HLDG    COM      120113105     742    134100 SH  CALL DEFINED   15,16,24     134100        0        0
BUILDING MATLS HLDG    COM      120113105     367     66400 SH  PUT DEFINED    15,16,24      66400        0        0
BURGER KING HLDGS IN   COM      121208201      22       756 SH      DEFINED      7,11         756        0        0
BURGER KING HLDGS IN   COM      121208201     143      5000 SH      DEFINED    7,11,13        5000        0        0
BURGER KING HLDGS IN   COM      121208201    2931    102800 SH      DEFINED    16,24,25      97077        0     5722
BURLINGTON NORTHN SA   COM      12189T104     237      2850 SH      DEFINED       12            0        0     2850
BURLINGTON NORTHN SA   COM      12189T104    4811     57800 SH      DEFINED       42        57800        0        0
BURLINGTON NORTHN SA   COM      12189T104   10855    130423 SH      DEFINED      7,11       97105        0    33318
BURLINGTON NORTHN SA   COM      12189T104     661      7944 SH      DEFINED    7,11,13        2542        0     5402
BURLINGTON NORTHN SA   COM      12189T104     256      3080 SH      DEFINED    7,11,33          0        0     3080
BURLINGTON NORTHN SA   COM      12189T104    4747     57033 SH      DEFINED    15,16,24      57033        0        0
BURLINGTON NORTHN SA   COM      12189T104   57604    692104 SH      DEFINED    16,24,25     563580        0   128524
BURLINGTON NORTHN SA   COM      12189T104     893     10729 SH      DEFINED    32,40,41      10729        0        0
BURLINGTON NORTHN SA   COM      12189T104    2967     35647 SH      DEFINED      7,11        35647        0        0
BURLINGTON NORTHN SA   COM      12189T104   38769    465800 SH  CALL DEFINED   15,16,24     465800        0        0
BURLINGTON NORTHN SA   COM      12189T104   22680    272500 SH  CALL DEFINED   16,24,25     272500        0        0
BURLINGTON NORTHN SA   COM      12189T104   28956    347900 SH  PUT DEFINED    15,16,24     347900        0        0
BURLINGTON NORTHN SA   COM      12189T104    7386     88747 SH  PUT DEFINED    16,24,25      88747        0        0
BUSINESS OBJECTS S A   SPONSORED 12328X107    4259     69940 SH      DEFINED    16,24,25      53394        0    16546
BUSINESS OBJECTS S A   SPONSORED 12328X107   16053    263600 SH  CALL DEFINED   15,16,24     263600        0        0
BUSINESS OBJECTS S A   SPONSORED 12328X107    6571    107900 SH  PUT DEFINED    15,16,24     107900        0        0
CAE INC                COM      124765108      14      1077 SH      DEFINED    16,24,25       1077        0        0
CAE INC                COM      124765108     103      7695 SH      DEFINED    32,40,41       7695        0        0
CAE INC                COM      124765108      46      3455 SH      DEFINED    4,6,7,11       3455        0        0
CBIZ INC               COM      124805102     449     45798 SH      DEFINED    16,24,25      45198        0      600
CBL & ASSOC PPTYS IN   COM      124830100      45      1900 SH      DEFINED       30         1900        0        0
CBL & ASSOC PPTYS IN   COM      124830100     215      9000 SH      DEFINED      14,31        9000        0        0
CBL & ASSOC PPTYS IN   COM      124830100     720     30098 SH      DEFINED    16,24,25      26989        0     3109
CBL & ASSOC PPTYS IN   COM      124830100    1420     59391 SH      DEFINED    32,40,41      59391        0        0
CBS CORP NEW           CL A     124857103     258      9656 SH      DEFINED    16,24,25       8696        0      959
CBS CORP NEW           CL B     124857202      25       900 SH      DEFINED       30          900        0        0
CBS CORP NEW           CL B     124857202     390     14300 SH      DEFINED       30        14300        0        0
CBS CORP NEW           CL B     124857202    7516    275802 SH      DEFINED      7,11      160329        0   115473
CBS CORP NEW           CL B     124857202     805     29535 SH      DEFINED    7,11,13       26600        0     2935
CBS CORP NEW           CL B     124857202   12586    461854 SH      DEFINED    16,24,25     440064        0    21790
CBS CORP NEW           CL B     124857202    5259    192992 SH      DEFINED    32,40,41     192992        0        0
CBS CORP NEW           CL B     124857202      83      3051 SH      DEFINED   16,19,24,26,27   3051        0        0
CBS CORP NEW           CL B     124857202    3416    125351 SH  CALL DEFINED     7,11       125351        0        0
CBS CORP NEW           CL B     124857202    4469    164000 SH  CALL DEFINED   15,16,24     164000        0        0
CBS CORP NEW           CL B     124857202    3927    144100 SH  CALL DEFINED   16,24,25     144100        0        0
CBS CORP NEW           CL B     124857202    1766     64800 SH  PUT DEFINED    15,16,24      64800        0        0
CBS CORP NEW           CL B     124857202    9735    357251 SH  PUT DEFINED    16,24,25     357251        0        0
CCA INDS INC           COM      124867102     270     27960 SH      DEFINED    16,24,25      25960        0     2000
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| CBRL GROUP INC | COM | 12489V106 | 2235 | 68989 | SH | DEFINED | 7,11 | 68989 | 0 | 0 |
| CBRL GROUP INC | COM | 12489V106 | 622 | 19213 | SH | DEFINED | 15,16,24 | 19213 | 0 | 0 |
| CBRL GROUP INC | COM | 12489V106 | 166 | 5137 | SH | DEFINED | 16,24,25 | 3862 | 0 | 1275 |
| CBRL GROUP INC | COM | 12489V106 | 1351 | 41700 | SH | CALL DEFINED | 15,16,24 | 41700 | 0 | 0 |
| CBRL GROUP INC | COM | 12489V106 | 1111 | 34300 | SH | PUT DEFINED | 15,16,24 | 34300 | 0 | 0 |
| CB RICHARD ELLIS GRO | CL A | 12497T101 | 505 | 23450 | SH | DEFINED | 12 | 0 | 0 | 23450 |
| CB RICHARD ELLIS GRO | CL A | 12497T101 | 2572 | 119338 | SH | DEFINED | 3,9 | 0 | 0 | 119338 |
| CB RICHARD ELLIS GRO | CL A | 12497T101 | 6482 | 300812 | SH | DEFINED | 7,11 | 30206 | 0 | 270606 |
| CB RICHARD ELLIS GRO | CL A | 12497T101 | 317 | 14700 | SH | DEFINED | 7,11,13 | 6650 | 0 | 8050 |
| CB RICHARD ELLIS GRO | CL A | 12497T101 | 2 | 100 | SH | DEFINED | 7,11,33 | 0 | 0 | 100 |
| CB RICHARD ELLIS GRO | CL A | 12497T101 | 4699 | 218036 | SH | DEFINED | 16,24,25 | 129567 | 0 | 88469 |
| CB RICHARD ELLIS GRO | CL A | 12497T101 | 143 | 6638 | SH | DEFINED | 32,40,41 | 6638 | 0 | 0 |
| CB RICHARD ELLIS GRO | CL A | 12497T101 | 94 | 4350 | SH | DEFINED | 16,19,24,26,27 | 4350 | 0 | 0 |
| CBRE REALTY FINANCE | COM | 12498B307 | 7168 | 1342279 | SH | DEFINED | 7,11 | 1342279 | 0 | 0 |
| CBRE REALTY FINANCE | COM | 12498B307 | 2136 | 400000 | SH | DEFINED | 16,24 | 400000 | 0 | 0 |
| CBRE REALTY FINANCE | COM | 12498B307 | 1860 | 348380 | SH | DEFINED | 16,24,25 | 313500 | 0 | 34879 |
| CF INDS HLDGS INC | COM | 125269100 | 303 | 2750 | SH | DEFINED | 3,9 | 0 | 0 | 2750 |
| CF INDS HLDGS INC | COM | 125269100 | 4666 | 42391 | SH | DEFINED | 7,11 | 42391 | 0 | 0 |
| CF INDS HLDGS INC | COM | 125269100 | 2396 | 21771 | SH | DEFINED | 15,16,24 | 21771 | 0 | 0 |
| CF INDS HLDGS INC | COM | 125269100 | 14780 | 134288 | SH | DEFINED | 16,24,25 | 121475 | 0 | 12813 |
| CF INDS HLDGS INC | COM | 125269100 | 22606 | 205400 | SH | CALL DEFINED | 15,16,24 | 205400 | 0 | 0 |
| CF INDS HLDGS INC | COM | 125269100 | 16289 | 148000 | SH | PUT DEFINED | 15,16,24 | 148000 | 0 | 0 |
| CHC HELICOPTER CORP | CL A SUB V | 12541C203 | 1186 | 46603 | SH | DEFINED | 4,6,7,11 | 46603 | 0 | 0 |
| CH ENERGY GROUP INC | COM | 12541M102 | 67 | 1500 | SH | DEFINED | 7,11 | 0 | 0 | 1500 |
| CH ENERGY GROUP INC | COM | 12541M102 | 19 | 425 | SH | DEFINED | 7,11,13 | 425 | 0 | 0 |
| CH ENERGY GROUP INC | COM | 12541M102 | 556 | 12493 | SH | DEFINED | 16,24,25 | 10025 | 0 | 2467 |
| C H ROBINSON WORLDWI | COM NEW | 12541W209 | 1437 | 26543 | SH | DEFINED | 7,11 | 24543 | 0 | 2000 |
| C H ROBINSON WORLDWI | COM NEW | 12541W209 | 65 | 1200 | SH | DEFINED | 7,11,33 | 0 | 0 | 1200 |
| C H ROBINSON WORLDWI | COM NEW | 12541W209 | 3620 | 66892 | SH | DEFINED | 16,24,25 | 51659 | 0 | 15233 |
| C H ROBINSON WORLDWI | COM NEW | 12541W209 | 871 | 16101 | SH | DEFINED | 32,40,41 | 16101 | 0 | 0 |
| C H ROBINSON WORLDWI | COM NEW | 12541W209 | 6007 | 111000 | SH | CALL DEFINED | 15,16,24 | 111000 | 0 | 0 |
| C H ROBINSON WORLDWI | COM NEW | 12541W209 | 1169 | 21600 | SH | CALL DEFINED | 16,24,25 | 21600 | 0 | 0 |
| C H ROBINSON WORLDWI | COM NEW | 12541W209 | 13178 | 243500 | SH | PUT DEFINED | 15,16,24 | 243500 | 0 | 0 |
| C H ROBINSON WORLDWI | COM NEW | 12541W209 | 1364 | 25200 | SH | PUT DEFINED | 16,24,25 | 25200 | 0 | 0 |
| CIGNA CORP | COM | 125509109 | 266 | 4950 | SH | DEFINED | 12 | 0 | 0 | 4950 |
| CIGNA CORP | COM | 125509109 | 253 | 4700 | SH | DEFINED | 3,9 | 0 | 0 | 4700 |
| CIGNA CORP | COM | 125509109 | 13498 | 251215 | SH | DEFINED | 7,11 | 83692 | 0 | 167523 |
| CIGNA CORP | COM | 125509109 | 167 | 3106 | SH | DEFINED | 7,11,13 | 1867 | 0 | 1239 |
| CIGNA CORP | COM | 125509109 | 1764 | 32830 | SH | DEFINED | 15,16,24 | 32830 | 0 | 0 |
| CIGNA CORP | COM | 125509109 | 9143 | 170158 | SH | DEFINED | 16,24,25 | 147954 | 0 | 22203 |
| CIGNA CORP | COM | 125509109 | 1075 | 20004 | SH | DEFINED | 32,40,41 | 20004 | 0 | 0 |
| CIGNA CORP | COM | 125509109 | 40 | 750 | SH | DEFINED | 5-7,11,43,44 | 0 | 750 | 0 |
| CIGNA CORP | COM | 125509109 | 1483 | 27600 | SH | DEFINED | 16,19,24,26,27 | 27600 | 0 | 0 |
| CIGNA CORP | COM | 125509109 | 8398 | 156300 | SH | CALL DEFINED | 15,16,24 | 156300 | 0 | 0 |
| CIGNA CORP | COM | 125509109 | 290 | 5400 | SH | CALL DEFINED | 16,24,25 | 5400 | 0 | 0 |
| CIGNA CORP | COM | 125509109 | 19117 | 355800 | SH | PUT DEFINED | 15,16,24 | 355800 | 0 | 0 |
| CIGNA CORP | COM | 125509109 | 451 | 8400 | SH | PUT DEFINED | 16,24,25 | 8400 | 0 | 0 |
| CIT GROUP INC | COM | 125581108 | 2909 | 121057 | SH | DEFINED | 7,11 | 121057 | 0 | 0 |
| CIT GROUP INC | COM | 125581108 | 2521 | 104911 | SH | DEFINED | 15,16,24 | 104911 | 0 | 0 |
| CIT GROUP INC | COM | 125581108 | 16734 | 696386 | SH | DEFINED | 16,24,25 | 669217 | 0 | 27169 |
| CIT GROUP INC | COM | 125581108 | 159 | 6636 | SH | DEFINED | 32,40,41 | 6636 | 0 | 0 |
| CIT GROUP INC | COM | 125581108 | 5287 | 220000 | SH | CALL DEFINED | 7,11 | 220000 | 0 | 0 |
| CIT GROUP INC | COM | 125581108 | 5205 | 216600 | SH | CALL DEFINED | 15,16,24 | 216600 | 0 | 0 |
| CIT GROUP INC | COM | 125581108 | 19325 | 804218 | SH | CALL DEFINED | 16,24,25 | 804218 | 0 | 0 |
| CIT GROUP INC | COM | 125581108 | 2569 | 106918 | SH | PUT DEFINED | 7,11 | 106918 | 0 | 0 |
| CIT GROUP INC | COM | 125581108 | 5366 | 223300 | SH | PUT DEFINED | 15,16,24 | 223300 | 0 | 0 |
| CIT GROUP INC | COM | 125581108 | 13541 | 563500 | SH | PUT DEFINED | 16,24,25 | 563500 | 0 | 0 |
| CKE RESTAURANTS INC | UNIT 99/99 | 125581405 | 785 | 41625 | SH | DEFINED | 16,24,25 | 40950 | 0 | 675 |
| CKE RESTAURANTS INC | COM | 12561E105 | 54 | 4100 | SH | DEFINED | 30 | 4100 | 0 | 0 |
| CKE RESTAURANTS INC | COM | 12561E105 | 223 | 16920 | SH | DEFINED | 16,24,25 | 10620 | 0 | 6300 |
| CLECO CORP NEW | COM | 12561W105 | 67 | 2400 | SH | DEFINED | 30 | 2400 | 0 | 0 |
| CLECO CORP NEW | COM | 12561W105 | 6447 | 23276 | SH | DEFINED | 16,24,25 | 14451 | 0 | 8825 |
| CME GROUP INC | COM | 12572Q105 | 549 | 800 | SH | DEFINED | 30 | 800 | 0 | 0 |
| CME GROUP INC | COM | 12572Q105 | 9127 | 13305 | SH | DEFINED | 7,11 | 13305 | 0 | 0 |
| CME GROUP INC | COM | 12572Q105 | 29966 | 43681 | SH | DEFINED | 16,24,25 | 37880 | 0 | 5801 |
| CME GROUP INC | COM | 12572Q105 | 9711 | 14156 | SH | DEFINED | 32,40,41 | 14156 | 0 | 0 |
| CME GROUP INC | COM | 12572Q105 | 17630 | 25700 | SH | CALL DEFINED | 15,16,24 | 25700 | 0 | 0 |
| CME GROUP INC | COM | 12572Q105 | 823 | 1200 | SH | CALL DEFINED | 16,24,25 | 1200 | 0 | 0 |
| CME GROUP INC | COM | 12572Q105 | 8026 | 11700 | SH | PUT DEFINED | 15,16,24 | 11700 | 0 | 0 |
| CMS ENERGY CORP | NOTE 2.87 | 125896AW0 | 33 | 25000 | PRN | DEFINED | 16,24,25 | 25000 | 0 | 0 |
| CMS ENERGY CORP | NOTE 3.37 | 125896AY6 | 8306 | 5000000 | PRN | DEFINED | 31,45 | 5000000 | 0 | 0 |
| CMS ENERGY CORP | COM | 125896100 | 169 | 9703 | SH | DEFINED | 7,11 | 9703 | 0 | 0 |
| CMS ENERGY CORP | COM | 125896100 | 6561 | 377496 | SH | DEFINED | 16,24 | 377496 | 0 | 0 |
| CMS ENERGY CORP | COM | 125896100 | 6274 | 360980 | SH | DEFINED | 16,24,25 | 324287 | 0 | 36692 |
| CMS ENERGY CORP | COM | 125896100 | 2277 | 130998 | SH | DEFINED | 32,40,41 | 130998 | 0 | 0 |
| CMS ENERGY CORP | COM | 125896100 | 261 | 15000 | SH | CALL DEFINED | 16,24,25 | 15000 | 0 | 0 |
| CSK AUTO CORP | COM | 125965103 | 1646 | 328625 | SH | DEFINED | 16,24,25 | 328625 | 0 | 0 |
| CNA FINL CORP | COM | 126117100 | 41 | 1208 | SH | DEFINED | 7,11 | 1208 | 0 | 0 |
| CNA FINL CORP | COM | 126117100 | 587 | 17400 | SH | DEFINED | 16,24,25 | 3400 | 0 | 14000 |
| CNA FINL CORP | COM | 126117100 | 37 | 1100 | SH | CALL DEFINED | 15,16,24 | 1100 | 0 | 0 |
| CNA SURETY CORP | COM | 12612L108 | 328 | 16553 | SH | DEFINED | 16,24,25 | 16553 | 0 | 0 |
| CNET NETWORKS INC | COM | 12613R104 | 7 | 776 | SH | DEFINED | 15,16,24 | 776 | 0 | 0 |
| CNET NETWORKS INC | COM | 12613R104 | 279 | 30549 | SH | DEFINED | 16,24,25 | 26710 | 0 | 3839 |
| CNET NETWORKS INC | COM | 12613R104 | 248 | 27100 | SH | CALL DEFINED | 15,16,24 | 27100 | 0 | 0 |
| CNET NETWORKS INC | COM | 12613R104 | 298 | 32600 | SH | PUT DEFINED | 15,16,24 | 32600 | 0 | 0 |
| CNOOC LTD | SPONSORED | 126132109 | 18 | 105 | SH | DEFINED | 7,11,33 | 0 | 0 | 105 |
| CNOOC LTD | SPONSORED | 126132109 | 3982 | 23784 | SH | DEFINED | 15,16,24 | 23784 | 0 | 0 |
| CNOOC LTD | SPONSORED | 126132109 | 4552 | 27187 | SH | DEFINED | 16,24,25 | 24046 | 0 | 3141 |
| CNOOC LTD | SPONSORED | 126132109 | 20076 | 119905 | SH | DEFINED | 16,17,22-24 | 119905 | 0 | 0 |
| CNOOC LTD | SPONSORED | 126132109 | 5458 | 32600 | SH | CALL DEFINED | 7,11 | 32600 | 0 | 0 |
| CNOOC LTD | SPONSORED | 126132109 | 12038 | 71900 | SH | CALL DEFINED | 15,16,24 | 71900 | 0 | 0 |
| CNOOC LTD | SPONSORED | 126132109 | 11955 | 71400 | SH | PUT DEFINED | 15,16,24 | 71400 | 0 | 0 |
| CPFL ENERGIA S A | SPONSORED | 126153105 | 5 | 88 | SH | DEFINED | 7,11 | 88 | 0 | 0 |
| CPFL ENERGIA S A | SPONSORED | 126153105 | 561 | 9905 | SH | DEFINED | 16,24,25 | 9521 | 0 | 384 |
| CPFL ENERGIA S A | SPONSORED | 126153105 | 6 | 100 | SH | DEFINED | 16,19,24,26,27 | 100 | 0 | 0 |
| CRH PLC | ADR | 12626K203 | 199 | 5710 | SH | DEFINED | 30 | 5710 | 0 | 0 |
| CRH PLC | ADR | 12626K203 | 11 | 315 | SH | DEFINED | 7,11,33 | 0 | 0 | 315 |
| CRH PLC | ADR | 12626K203 | 2023 | 57995 | SH | DEFINED | 16,24,25 | 51979 | 0 | 6016 |
| CRH PLC | ADR | 12626K203 | 42 | 1200 | SH | DEFINED | 16,19,24,26,27 | 1200 | 0 | 0 |
| CSG SYS INTL INC | COM | 126349109 | 2 | 150 | SH | DEFINED | 7,11,13 | 150 | 0 | 0 |
| CSG SYS INTL INC | COM | 126349109 | 596 | 40522 | SH | DEFINED | 16,24,25 | 39408 | 0 | 1114 |
| CSP INC | COM | 126389105 | 2 | 306 | SH | DEFINED | 7,11 | 306 | 0 | 0 |
| CSP INC | COM | 126389105 | 105 | 15700 | SH | DEFINED | 16,24,25 | 15700 | 0 | 0 |
| CSX CORP | COM | 126408103 | 468 | 10650 | SH | DEFINED | 12 | 0 | 0 | 10650 |
| CSX CORP | COM | 126408103 | 5781 | 131441 | SH | DEFINED | 7,11 | 56663 | 450 | 74328 |
| CSX CORP | COM | 126408103 | 790976 | 17984900 | SH | DEFINED | 16,24 | 17984900 | 0 | 0 |
| CSX CORP | COM | 126408103 | 625 | 14200 | SH | DEFINED | 7,11,13 | 6485 | 0 | 7715 |
| CSX CORP | COM | 126408103 | 40 | 900 | SH | DEFINED | 7,11,33 | 0 | 0 | 900 |
| CSX CORP | COM | 126408103 | 7056 | 160427 | SH | DEFINED | 16,24,25 | 160427 | 0 | 0 |
| CSX CORP | COM | 126408103 | 10355 | 235450 | SH | DEFINED | 16,24,25 | 165301 | 0 | 70148 |
| CSX CORP | COM | 126408103 | 1028 | 23382 | SH | DEFINED | 32,40,41 | 23382 | 0 | 0 |
| CSX CORP | COM | 126408103 | 24589 | 559100 | SH | CALL DEFINED | 15,16,24 | 559100 | 0 | 0 |
| CSX CORP | COM | 126408103 | 33456 | 760700 | SH | CALL DEFINED | 16,24,25 | 760700 | 0 | 0 |
| CSX CORP | COM | 126408103 | 32088 | 729600 | SH | PUT DEFINED | 15,16,24 | 729600 | 0 | 0 |

| Name | Type | | CUSIP | Col1 | Col2 | Unit | Status | Codes | Val1 | Col3 | Col4 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CSX CORP | COM | | 126408103 | 6949 | 158000 | SH | PUT | DEFINED | 16,24,25 | 158000 | 0 | 0 |
| CVB FINL CORP | COM | | 126600105 | 112 | 10838 | SH | | DEFINED | 16,24,25 | 10577 | 0 | 261 |
| CVR ENERGY INC | COM | | 12662P108 | 812 | 32540 | SH | | DEFINED | 16,24,25 | 31065 | 0 | 1475 |
| CVS CAREMARK CORPORA | COM | | 126650100 | 2884 | 72550 | SH | | DEFINED | 12 | 0 | 0 | 72550 |
| CVS CAREMARK CORPORA | COM | | 126650100 | 2496 | 62780 | SH | | DEFINED | 30 | 62780 | 0 | 0 |
| CVS CAREMARK CORPORA | COM | | 126650100 | 1770 | 44527 | SH | | DEFINED | 3,9 | 0 | 0 | 44527 |
| CVS CAREMARK CORPORA | COM | | 126650100 | 47919 | 1205505 | SH | | DEFINED | 7,11 | 368612 | 2500 | 834393 |
| CVS CAREMARK CORPORA | COM | | 126650100 | 6207 | 156153 | SH | | DEFINED | 7,11,13 | 126468 | 0 | 29685 |
| CVS CAREMARK CORPORA | COM | | 126650100 | 675 | 16978 | SH | | DEFINED | 7,11,33 | 0 | 0 | 16978 |
| CVS CAREMARK CORPORA | COM | | 126650100 | 2886 | 72606 | SH | | DEFINED | 15,16,24 | 72606 | 0 | 0 |
| CVS CAREMARK CORPORA | COM | | 126650100 | 106517 | 2679661 | SH | | DEFINED | 16,24,25 | 2140339 | 0 | 539321 |
| CVS CAREMARK CORPORA | COM | | 126650100 | 10678 | 268635 | SH | | DEFINED | 32,40,41 | 268635 | 0 | 0 |
| CVS CAREMARK CORPORA | COM | | 126650100 | 40 | 1000 | SH | | DEFINED | 5-7,11,43,44 | 0 | 1000 | 0 |
| CVS CAREMARK CORPORA | COM | | 126650100 | 9383 | 236046 | SH | CALL | DEFINED | 7,11 | 236046 | 0 | 0 |
| CVS CAREMARK CORPORA | COM | | 126650100 | 14242 | 358300 | SH | CALL | DEFINED | 15,16,24 | 358300 | 0 | 0 |
| CVS CAREMARK CORPORA | COM | | 126650100 | 28787 | 724200 | SH | CALL | DEFINED | 16,24,25 | 724200 | 0 | 0 |
| CVS CAREMARK CORPORA | COM | | 126650100 | 20276 | 510100 | SH | PUT | DEFINED | 15,16,24 | 510100 | 0 | 0 |
| CVS CAREMARK CORPORA | COM | | 126650100 | 45369 | 1141346 | SH | PUT | DEFINED | 16,24,25 | 1141346 | 0 | 0 |
| CV THERAPEUTICS INC | NOTE 2.00 | | 126667AD6 | 6072 | 6910000 | PRN | | DEFINED | 16,24,25 | 6910000 | 0 | 0 |
| CV THERAPEUTICS INC | NOTE 2.75 | | 126667AF1 | 8037 | 9625000 | PRN | | DEFINED | 16,24,25 | 9625000 | 0 | 0 |
| CV THERAPEUTICS INC | NOTE 3.25 | | 126667AG9 | 4476 | 5500000 | PRN | | DEFINED | 31,45 | 5500000 | 0 | 0 |
| CV THERAPEUTICS INC | NOTE 3.25 | | 126667AG9 | 81 | 100000 | PRN | | DEFINED | 16,24,25 | 100000 | 0 | 0 |
| CV THERAPEUTICS INC | COM | | 126667104 | 23239 | 2567795 | SH | | DEFINED | 7,11 | 2567795 | 0 | 0 |
| CV THERAPEUTICS INC | COM | | 126667104 | 180 | 19890 | SH | | DEFINED | 16,24 | 19890 | 0 | 0 |
| CV THERAPEUTICS INC | COM | | 126667104 | 362 | 40000 | SH | | DEFINED | 31,45 | 40000 | 0 | 0 |
| CV THERAPEUTICS INC | COM | | 126667104 | 2779 | 307102 | SH | | DEFINED | 16,24,25 | 304704 | 0 | 2398 |
| CV THERAPEUTICS INC | COM | | 126667104 | 2662 | 294197 | SH | | DEFINED | 7,11 | 294197 | 0 | 0 |
| CV THERAPEUTICS INC | COM | | 126667104 | 1561 | 172500 | SH | CALL | DEFINED | 15,16,24 | 172500 | 0 | 0 |
| CV THERAPEUTICS INC | COM | | 126667104 | 251 | 27700 | SH | PUT | DEFINED | 15,16,24 | 27700 | 0 | 0 |
| CV THERAPEUTICS INC | COM | | 126667104 | 2662 | 294197 | SH | PUT | DEFINED | 16,24,25 | 294197 | 0 | 0 |
| CA INC | COM | | 12673P105 | 111320 | 4461717 | SH | | DEFINED | 7,11 | 4461717 | 0 | 0 |
| CA INC | COM | | 12673P105 | 50 | 2000 | SH | | DEFINED | 7,11,13 | 2000 | 0 | 0 |
| CA INC | COM | | 12673P105 | 14192 | 568813 | SH | | DEFINED | 7,11 | 427754 | 0 | 141059 |
| CA INC | COM | | 12673P105 | 311 | 12466 | SH | | DEFINED | 32,40,41 | 12466 | 0 | 0 |
| CA INC | COM | | 12673P105 | 286352 | 11477046 | SH | CALL | DEFINED | 7,11 | 11477046 | 0 | 0 |
| CA INC | COM | | 12673P105 | 4019 | 161100 | SH | CALL | DEFINED | 15,16,24 | 161100 | 0 | 0 |
| CA INC | COM | | 12673P105 | 250 | 10000 | SH | CALL | DEFINED | 16,24,25 | 10000 | 0 | 0 |
| CA INC | COM | | 12673P105 | 1594 | 63900 | SH | PUT | DEFINED | 16,24,25 | 63900 | 0 | 0 |
| CA INC | COM | | 12673P105 | 501 | 20100 | SH | PUT | DEFINED | 16,24,25 | 20100 | 0 | 0 |
| CABELAS INC | COM | | 126804301 | 1796 | 119197 | SH | | DEFINED | 16,24,25 | 107762 | 0 | 11435 |
| CABLEVISION SYS CORP | CL A NY CA | | 12686C109 | 9 | 377 | SH | | DEFINED | 3,9 | 0 | 0 | 377 |
| CABLEVISION SYS CORP | CL A NY CA | | 12686C109 | 292 | 11920 | SH | | DEFINED | 7,11 | 11920 | 0 | 0 |
| CABLEVISION SYS CORP | CL A NY CA | | 12686C109 | 97 | 3940 | SH | | DEFINED | 7,11,13 | 0 | 0 | 3940 |
| CABLEVISION SYS CORP | CL A NY CA | | 12686C109 | 691 | 28217 | SH | | DEFINED | 15,16,24 | 28217 | 0 | 0 |
| CABLEVISION SYS CORP | CL A NY CA | | 12686C109 | 82645 | 3373276 | SH | | DEFINED | 16,24,25 | 3178000 | 0 | 195276 |
| CABLEVISION SYS CORP | CL A NY CA | | 12686C109 | 2429 | 99140 | SH | | DEFINED | 32,40,41 | 99140 | 0 | 0 |
| CABLEVISION SYS CORP | CL A NY CA | | 12686C109 | 125661 | 5129000 | SH | CALL | DEFINED | 7,11 | 5129000 | 0 | 0 |
| CABLEVISION SYS CORP | CL A NY CA | | 12686C109 | 5851 | 238800 | SH | CALL | DEFINED | 15,16,24 | 238800 | 0 | 0 |
| CABLEVISION SYS CORP | CL A NY CA | | 12686C109 | 277 | 11300 | SH | CALL | DEFINED | 16,24,25 | 11300 | 0 | 0 |
| CABLEVISION SYS CORP | CL A NY CA | | 12686C109 | 4876 | 199000 | SH | PUT | DEFINED | 15,16,24 | 199000 | 0 | 0 |
| CABLEVISION SYS CORP | CL A NY CA | | 12686C109 | 61 | 2500 | SH | PUT | DEFINED | 16,24,25 | 2500 | 0 | 0 |
| CABOT CORP | COM | | 127055101 | 228 | 6852 | SH | | DEFINED | 7,11 | 3852 | 0 | 3000 |
| CABOT CORP | COM | | 127055101 | 83 | 2484 | SH | | DEFINED | 16,24,25 | 1284 | 0 | 1200 |
| CABOT MICROELECTRONI | COM | | 12709P103 | 40 | 1126 | SH | | DEFINED | 7,11 | 0 | 0 | 1126 |
| CABOT MICROELECTRONI | COM | | 12709P103 | 408 | 11369 | SH | | DEFINED | 15,16,24 | 11369 | 0 | 0 |
| CABOT MICROELECTRONI | COM | | 12709P103 | 3662 | 101987 | SH | | DEFINED | 16,24,25 | 91025 | 0 | 10962 |
| CABOT MICROELECTRONI | COM | | 12709P103 | 1361 | 37900 | SH | CALL | DEFINED | 15,16,24 | 37900 | 0 | 0 |
| CABOT MICROELECTRONI | COM | | 12709P103 | 1246 | 34700 | SH | PUT | DEFINED | 15,16,24 | 34700 | 0 | 0 |
| CABOT OIL & GAS CORP | COM | | 127097103 | 69 | 1700 | SH | | DEFINED | 30 | 1700 | 0 | 0 |
| CABOT OIL & GAS CORP | COM | | 127097103 | 244 | 6052 | SH | | DEFINED | 7,11 | 1152 | 0 | 4900 |
| CABOT OIL & GAS CORP | COM | | 127097103 | 377 | 9348 | SH | | DEFINED | 16,24,25 | 7773 | 0 | 1575 |
| CABOT OIL & GAS CORP | COM | | 127097103 | 57 | 1400 | SH | | DEFINED | 32,40,41 | 1400 | 0 | 0 |
| CACI INTL INC | CL A | | 127190304 | 270 | 6035 | SH | | DEFINED | 16,24,25 | 5143 | 0 | 892 |
| CADBURY SCHWEPPES PL | ADR | | 127209302 | 987 | 20000 | SH | | DEFINED | 7,11 | 0 | 0 | 20000 |
| CADBURY SCHWEPPES PL | ADR | | 127209302 | 130 | 2625 | SH | | DEFINED | 7,11,13 | 2625 | 0 | 0 |
| CADBURY SCHWEPPES PL | ADR | | 127209302 | 3288 | 66604 | SH | | DEFINED | 16,24,25 | 61989 | 0 | 4615 |
| CADBURY SCHWEPPES PL | ADR | | 127209302 | 0 | 3 | SH | | DEFINED | 16,19,24,26,29 | 3 | 0 | 0 |
| CADENCE DESIGN SYSTE | COM | | 127387108 | 151 | 8875 | SH | | DEFINED | 12 | 0 | 0 | 8875 |
| CADENCE DESIGN SYSTE | COM | | 127387108 | 345 | 20300 | SH | | DEFINED | 30 | 20300 | 0 | 0 |
| CADENCE DESIGN SYSTE | COM | | 127387108 | 2468 | 145076 | SH | | DEFINED | 7,11 | 52103 | 0 | 92973 |
| CADENCE DESIGN SYSTE | COM | | 127387108 | 49 | 2880 | SH | | DEFINED | 7,11,13 | 600 | 0 | 2280 |
| CADENCE DESIGN SYSTE | COM | | 127387108 | 18 | 1079 | SH | | DEFINED | 15,16,24 | 1079 | 0 | 0 |
| CADENCE DESIGN SYSTE | COM | | 127387108 | 215 | 12644 | SH | | DEFINED | 16,24,25 | 11339 | 0 | 1305 |
| CADENCE DESIGN SYSTE | COM | | 127387108 | 241 | 14185 | SH | | DEFINED | 32,40,41 | 14185 | 0 | 0 |
| CADENCE DESIGN SYSTE | COM | | 127387108 | 162 | 9500 | SH | CALL | DEFINED | 15,16,24 | 9500 | 0 | 0 |
| CADENCE DESIGN SYSTE | COM | | 127387108 | 111 | 6500 | SH | PUT | DEFINED | 15,16,24 | 6500 | 0 | 0 |
| CAL MAINE FOODS INC | COM NEW | | 128030202 | 7 | 261 | SH | | DEFINED | 16,24 | 261 | 0 | 0 |
| CAL MAINE FOODS INC | COM NEW | | 128030202 | 623 | 23465 | SH | | DEFINED | 16,24,25 | 23428 | 0 | 37 |
| CALAMOS GBL DYN INCO | COM | | 12811L107 | 6208 | 489560 | SH | | DEFINED | 16,24,25 | 460946 | 0 | 28613 |
| CALAMOS CONV & HIGH | COM SHS | | 12811P108 | 22 | 1650 | SH | | DEFINED | 7,11,13 | 1650 | 0 | 0 |
| CALAMOS CONV & HIGH | COM SHS | | 12811P108 | 8567 | 651510 | SH | | DEFINED | 16,24,25 | 575882 | 0 | 75627 |
| CALAMOS ASSET MGMT I | CL A | | 12811R104 | 2407 | 80248 | SH | | DEFINED | 16,24,25 | 76246 | 0 | 4582 |
| CALAMOS CONV OPP AND | SH BEN INT | | 128117108 | 77 | 5300 | SH | | DEFINED | 7,11,13 | 5300 | 0 | 0 |
| CALAMOS CONV OPP AND | SH BEN INT | | 128117108 | 4495 | 308931 | SH | | DEFINED | 16,24,25 | 256431 | 0 | 52500 |
| CALAMOS GLOBAL TOTAL | COM SH BEN | | 128118106 | 34 | 1804 | SH | | DEFINED | 7,11,13 | 1804 | 0 | 0 |
| CALAMOS GLOBAL TOTAL | COM SH BEN | | 128118106 | 2066 | 108193 | SH | | DEFINED | 16,24,25 | 95098 | 0 | 13095 |
| CALAMOS STRATEGIC TO | COM SH BEN | | 128125101 | 160 | 11455 | SH | | DEFINED | 7,11,13 | 8955 | 0 | 2500 |
| CALAMOS STRATEGIC TO | COM SH BEN | | 128125101 | 19889 | 1420671 | SH | | DEFINED | 16,24,25 | 1180501 | 0 | 240169 |
| CALGON CARBON CORP | COM | | 129603106 | 296 | 18620 | SH | | DEFINED | 7,11 | 18620 | 0 | 0 |
| CALGON CARBON CORP | COM | | 129603106 | 1553 | 97744 | SH | | DEFINED | 16,24,25 | 76561 | 0 | 21183 |
| CALIFORNIA WTR SVC G | COM | | 130788102 | 236 | 6369 | SH | | DEFINED | 7,11 | 6369 | 0 | 0 |
| CALIFORNIA WTR SVC G | COM | | 130788102 | 6 | 150 | SH | | DEFINED | 7,11,13 | 150 | 0 | 0 |
| CALIFORNIA WTR SVC G | COM | | 130788102 | 2077 | 56113 | SH | | DEFINED | 16,24,25 | 45261 | 0 | 10851 |
| CALUMET SPECIALTY PR | UT LTD PAR | | 131476103 | 350 | 9458 | SH | | DEFINED | 16,24,25 | 9147 | 0 | 311 |
| CAMCO FINL CORP | COM | | 13261B109 | 619 | 55977 | SH | | DEFINED | 16,24,25 | 49937 | 0 | 6040 |
| CAMDEN PPTY TR | SH BEN INT | | 133131102 | 101 | 2100 | SH | | DEFINED | 14,31 | 2100 | 0 | 0 |
| CAMDEN PPTY TR | SH BEN INT | | 133131102 | 303 | 6285 | SH | | DEFINED | 7,11,13 | 5985 | 0 | 300 |
| CAMDEN PPTY TR | SH BEN INT | | 133131102 | 1309 | 27175 | SH | | DEFINED | 16,24,25 | 21653 | 0 | 5522 |
| CAMDEN PPTY TR | SH BEN INT | | 133131102 | 14988 | 311277 | SH | | DEFINED | 32,40,41 | 311277 | 0 | 0 |
| CAMECO CORP | COM | | 13321L108 | 3981 | 100000 | SH | | DEFINED | 42 | 100000 | 0 | 0 |
| CAMECO CORP | COM | | 13321L108 | 3044 | 76457 | SH | | DEFINED | 15,16,24 | 76457 | 0 | 0 |
| CAMECO CORP | COM | | 13321L108 | 6441 | 161799 | SH | | DEFINED | 16,24,25 | 144181 | 0 | 17618 |
| CAMECO CORP | COM | | 13321L108 | 14495 | 364103 | SH | | DEFINED | 32,40,41 | 364103 | 0 | 0 |
| CAMECO CORP | COM | | 13321L108 | 863 | 21675 | SH | | DEFINED | 4,6,7,11 | 21675 | 0 | 0 |
| CAMECO CORP | COM | | 13321L108 | 36 | 900 | SH | | DEFINED | 5-7,11,43,44 | 0 | 900 | 0 |
| CAMECO CORP | COM | | 13321L108 | 9391 | 235900 | SH | CALL | DEFINED | 15,16,24 | 235900 | 0 | 0 |
| CAMECO CORP | COM | | 13321L108 | 119 | 3000 | SH | CALL | DEFINED | 16,24,25 | 3000 | 0 | 0 |
| CAMECO CORP | COM | | 13321L108 | 9606 | 241300 | SH | PUT | DEFINED | 15,16,24 | 241300 | 0 | 0 |
| CAMERON INTERNATIONA | NOTE 2.50 | | 13342BAB1 | 360 | 234000 | PRN | | DEFINED | 7,11 | 234000 | 0 | 0 |
| CAMERON INTERNATIONA | COM | | 13342B105 | 855 | 17768 | SH | | DEFINED | 7,11 | 17768 | 0 | 0 |
| CAMERON INTERNATIONA | COM | | 13342B105 | 292 | 6074 | SH | | DEFINED | 7,11,13 | 6074 | 0 | 0 |
| CAMERON INTERNATIONA | COM | | 13342B105 | 8 | 170 | SH | | DEFINED | 7,11,33 | 0 | 0 | 170 |
| CAMERON INTERNATIONA | COM | | 13342B105 | 127 | 2630 | SH | | DEFINED | 15,16,24 | 2630 | 0 | 0 |
| CAMERON INTERNATIONA | COM | | 13342B105 | 35255 | 732501 | SH | | DEFINED | 16,24,25 | 594919 | 0 | 137582 |

```
CAMERON INTERNATIONA COM      13342B105     238     4953 SH     DEFINED     32,40,41        4953         0          0
CAMERON INTERNATIONA COM      13342B105   20162   418900 SH CALL DEFINED    15,16,24      418900         0          0
CAMERON INTERNATIONA COM      13342B105   18386   382000 SH PUT  DEFINED    15,16,24      382000         0          0
CAMERON INTERNATIONA COM      13342B105     337     7000 SH     DEFINED     16,24,25        7000         0          0
CAMPBELL SOUP CO     COM      134429109     482    13500 SH     DEFINED           30       13500         0          0
CAMPBELL SOUP CO     COM      134429109    3125    87459 SH     DEFINED         7,11       63453         0      24006
CAMPBELL SOUP CO     COM      134429109      84     2350 SH     DEFINED      7,11,13        2350         0          0
CAMPBELL SOUP CO     COM      134429109      14      400 SH     DEFINED      7,11,13           0         0        400
CAMPBELL SOUP CO     COM      134429109    4098   114694 SH     DEFINED     16,24,25       81425         0      33269
CAMPBELL SOUP CO     COM      134429109    3085    86349 SH     DEFINED     32,40,41       86349         0          0
CAMPBELL SOUP CO     COM      134429109      69     1920 SH     DEFINED   5-7,11,43,44         0      1920          0
CDN IMPERIAL BK OF C COM      136069101     261     3652 SH     DEFINED     16,24,25        3652         0          0
CDN IMPERIAL BK OF C COM      136069101     750    10497 SH     DEFINED     32,40,41       10497         0          0
CDN IMPERIAL BK OF C COM      136069101    5321    74489 SH     DEFINED      4,6,7,11       74489         0          0
CDN IMPERIAL BK OF C COM      136069101     175     2454 SH     DEFINED   5-7,11,43,44         0      2454          0
CDN IMPERIAL BK OF C COM      136069101    3814    53400 SH     DEFINED  16,19,24,26,27     53400         0          0
CANADIAN NATL RY CO  COM      136375102    1408    30004 SH     DEFINED          3,9           0         0      30004
CANADIAN NATL RY CO  COM      136375102      70     1500 SH     DEFINED         7,11           0         0       1500
CANADIAN NATL RY CO  COM      136375102      38      800 SH     DEFINED      7,11,13         800         0          0
CANADIAN NATL RY CO  COM      136375102      31      668 SH     DEFINED      7,11,13           0         0        668
CANADIAN NATL RY CO  COM      136375102    9681   206294 SH     DEFINED     16,24,25      142678         0      63616
CANADIAN NATL RY CO  COM      136375102    2198    46832 SH     DEFINED     32,40,41       46832         0          0
CANADIAN NATL RY CO  COM      136375102    1485    31642 SH     DEFINED      4,6,7,11       31642         0          0
CANADIAN NATL RY CO  COM      136375102     207     4410 SH     DEFINED   5-7,11,43,44         0      4410          0
CANADIAN NAT RES LTD COM      136385101    5390    73700 SH     DEFINED           42       73700         0          0
CANADIAN NAT RES LTD COM      136385101      46      633 SH     DEFINED      7,11,13         633         0          0
CANADIAN NAT RES LTD COM      136385101     146     2000 SH     DEFINED      7,11,13           0         0       2000
CANADIAN NAT RES LTD COM      136385101     215     2944 SH     DEFINED     15,16,24        2944         0          0
CANADIAN NAT RES LTD COM      136385101    6899    94323 SH     DEFINED     16,24,25       71081         0      23242
CANADIAN NAT RES LTD COM      136385101    1196    16350 SH     DEFINED     32,40,41       16350         0          0
CANADIAN NAT RES LTD COM      136385101    5014    68557 SH     DEFINED      4,6,7,11       68557         0          0
CANADIAN NAT RES LTD COM      136385101   21357   292000 SH CALL DEFINED    15,16,24      292000         0          0
CANADIAN NAT RES LTD COM      136385101       7      100 SH CALL DEFINED    16,24,25         100         0          0
CANADIAN NAT RES LTD COM      136385102   22271   304500 SH PUT  DEFINED    15,16,24      304500         0          0
CANADIAN PAC RY LTD  COM      13645T100     113     1750 SH     DEFINED         7,11           0         0       1750
CANADIAN PAC RY LTD  COM      13645T100     253     3915 SH     DEFINED      7,11,13        3880         0         35
CANADIAN PAC RY LTD  COM      13645T100    4368    67575 SH     DEFINED     16,24,25       38778         0      28797
CANADIAN PAC RY LTD  COM      13645T100     722    11166 SH     DEFINED     32,40,41       11166         0          0
CANADIAN PAC RY LTD  COM      13645T100    1699    26279 SH     DEFINED      4,6,7,11       26279         0          0
CANADIAN PAC RY LTD  COM      13645T100      14      222 SH     DEFINED   5-7,11,43,44         0       222          0
CANADIAN PAC RY LTD  COM      13645T100    1073    16600 SH CALL DEFINED    15,16,24       16600         0          0
CANADIAN PAC RY LTD  COM      13645T100     142     2200 SH PUT  DEFINED    15,16,24        2200         0          0
CANADIAN SOLAR INC   COM      13635J109     357    12688 SH     DEFINED     16,24,25       12688         0        100
CANADIAN SUPERIOR EN COM      13664410J     171    58600 SH     DEFINED     16,24,25       58600         0          0
CANETIC RES TR              137513107    2725   202870 SH     DEFINED     15,16,24      202870         0          0
CANETIC RES TR              137513107    8967   667698 SH     DEFINED     16,24,25      652650         0      15047
CANETIC RES TR              137513107      85     6365 SH     DEFINED     32,40,41        6365         0          0
CANETIC RES TR              137513107      38     2796 SH     DEFINED      4,6,7,11        2796         0          0
CANETIC RES TR              137513107    2138   159200 SH CALL DEFINED    15,16,24      159200         0          0
CANETIC RES TR              137513107    2998   223200 SH PUT  DEFINED    15,16,24      223200         0          0
CANO PETE INC        COM      137801106      74    10688 SH     DEFINED     16,24,25       10688         0          0
CANON INC            ADR      138006309     644    14050 SH     DEFINED         7,11           0         0      14050
CANON INC            ADR      138006309       8      185 SH     DEFINED      7,11,13         145         0         40
CANON INC            ADR      138006309      32      690 SH     DEFINED      7,11,13           0         0        690
CANON INC            ADR      138006309   15769   344068 SH     DEFINED     16,24,25      285105         0      58963
CANON INC            ADR      138006309      22      487 SH     DEFINED   5-7,11,43,44         0       487          0
CAPELLA EDUCATION CO COM      139594105     493     7537 SH     DEFINED     16,24,25        7425         0        112
CAPLEASE INC         COM      140288101     109    12905 SH     DEFINED     16,24,25       12305         0        600
CAPLEASE INC         COM      140288101     189    22422 SH     DEFINED     32,40,41       22422         0          0
CAPITAL ONE FINL COR COM      14040H105   18144   383926 SH     DEFINED         7,11      383926         0          0
CAPITAL ONE FINL COR COM      14040H105    2705    57231 SH     DEFINED      7,11,13       57161         0         70
CAPITAL ONE FINL COR COM      14040H105       6      132 SH     DEFINED      7,11,13           0         0        132
CAPITAL ONE FINL COR COM      14040H105   17565   371673 SH     DEFINED     16,24,25      341230         0      30442
CAPITAL ONE FINL COR COM      14040H105    3884    82185 SH     DEFINED     32,40,41       82185         0          0
CAPITAL ONE FINL COR COM      14040H105    8095   171279 SH     DEFINED         7,11      171279         0          0
CAPITAL ONE FINL COR COM      14040H105   23261   492200 SH CALL DEFINED    15,16,24      492200         0          0
CAPITAL ONE FINL COR COM      14040H105    4943   104600 SH     DEFINED     16,24,25      104600         0          0
CAPITAL ONE FINL COR COM      14040H105   30227   639600 SH PUT  DEFINED    15,16,24      639600         0          0
CAPITAL ONE FINL COR COM      14040H105   13411   283779 SH PUT  DEFINED    16,24,25      283779         0          0
CAPITAL SOUTHWEST CO COM      140501107     205     1734 SH     DEFINED     16,24,25        1734         0          0
CAPITAL TRUST INC MD CL A NEW 14028H506     491    16035 SH     DEFINED     16,24,25       13905         0       2130
CAPITALSOURCE INC    DBCV 4.00 14055XAE2    9402 10164000 PRN    DEFINED    16,24,25    10164000         0          0
CAPITALSOURCE INC    DBCV 1.62 14055XAF9   61821 65593000 PRN    DEFINED    16,24,25    65593000         0          0
CAPITALSOURCE INC    COM      14055X102   52027  2957732 SH     DEFINED         7,11     2957732         0          0
CAPITALSOURCE INC    COM      14055X102       3      150 SH     DEFINED      7,11,33           0         0        150
CAPITALSOURCE INC    COM      14055X102   17789  1011327 SH     DEFINED     16,24,25      863932         0     147395
CAPITOL FED FINL     COM      14057C106       6      183 SH     DEFINED         7,11         183         0          0
CAPITOL FED FINL     COM      14057C106     418    13463 SH     DEFINED     16,24,25       13462         0          0
CAPSTONE TURBINE COR COM      14067D102      45    27514 SH     DEFINED     16,24,25       27514         0          0
CAPSTEAD MTG CORP    COM NO PAR 14067E506   4968   376666 SH     DEFINED     16,24,25      336341         0      40325
CARBO CERAMICS INC   COM      107811105     251     6736 SH     DEFINED     16,24,25        5896         0        840
CARDICA INC          COM      14141R101     114    11174 SH     DEFINED     16,24,25       10639         0        535
CARDINAL FINL CORP   COM      14149F109     457    49000 SH     DEFINED     16,24,25       31000         0      18000
CARDINAL HEALTH INC  COM      14149Y108     401     6950 SH     DEFINED           12           0         0       6950
CARDINAL HEALTH INC  COM      14149Y108   11466   198551 SH     DEFINED         7,11       82821       400     115330
CARDINAL HEALTH INC  COM      14149Y108    2828    48963 SH     DEFINED      7,11,13       41138         0       7825
CARDINAL HEALTH INC  COM      14149Y108      12      200 SH     DEFINED      7,11,33           0         0        200
CARDINAL HEALTH INC  COM      14149Y108    7650   132472 SH     DEFINED     15,16,24      132472         0          0
CARDINAL HEALTH INC  COM      14149Y108   13112   227051 SH     DEFINED     16,24,25      161990         0      65060
CARDINAL HEALTH INC  COM      14149Y108     788    13648 SH     DEFINED     32,40,41       13648         0          0
CARDINAL HEALTH INC  COM      14149Y108   13502   233800 SH CALL DEFINED    15,16,24      233800         0          0
CARDINAL HEALTH INC  COM      14149Y108    9685   167700 SH CALL DEFINED    16,24,25      167700         0          0
CARDINAL HEALTH INC  COM      14149Y108   20634   357300 SH PUT  DEFINED    15,16,24      357300         0          0
CARDINAL HEALTH INC  COM      14149Y108    5007    86700 SH PUT  DEFINED    16,24,25       86700         0          0
CAREER EDUCATION COR COM      141665109     149     5939 SH     DEFINED         7,11        5539         0        400
CAREER EDUCATION COR COM      141665109     625    24860 SH     DEFINED     15,16,24       24860         0          0
CAREER EDUCATION COR COM      141665109    9297   369794 SH     DEFINED     16,24,25      317555         0      52239
CAREER EDUCATION COR COM      141665109     144     5745 SH     DEFINED     32,40,41        5745         0          0
CAREER EDUCATION COR COM      141665109    5171   205700 SH CALL DEFINED    15,16,24      205700         0          0
CAREER EDUCATION COR COM      141665109    1119    44500 SH     DEFINED     16,24,25       44500         0          0
CAREER EDUCATION COR COM      141665109    4266   169700 SH PUT  DEFINED    15,16,24      169700         0          0
CAREER EDUCATION COR COM      141665109    9229   367100 SH PUT  DEFINED    16,24,25      367100         0          0
CARDIUM THERAPEUTICS COM      14191G106      92    35455 SH     DEFINED     16,24,25       35455         0          0
CARLISLE COS INC     COM      142339100     265     7161 SH     DEFINED         7,11        7161         0          0
CARLISLE COS INC     COM      142339100    4038   109056 SH     DEFINED     16,24,25       75350         0      33705
CARLISLE COS INC     COM      142339100      48     1300 SH     DEFINED     32,40,41        1300         0          0
CARMAX INC           COM      143130102      50     2547 SH     DEFINED         7,11        2547         0          0
CARMAX INC           COM      143130102      20     1000 SH     DEFINED      7,11,13        1000         0          0
CARMAX INC           COM      143130102     288    14557 SH     DEFINED     15,16,24       14557         0          0
CARMAX INC           COM      143130102    1887    95524 SH     DEFINED     16,24,25       76156         0      19368
CARMAX INC           COM      143130102     133     6740 SH     DEFINED     32,40,41        6740         0          0
CARMAX INC           COM      143130102    2688   136100 SH CALL DEFINED    15,16,24      136100         0          0
CARMAX INC           COM      143130102      47     2400 SH CALL DEFINED    16,24,25        2400         0          0
CARMAX INC           COM      143130102    3519   178200 SH PUT  DEFINED    15,16,24      178200         0          0
```

```
CARMAX INC              COM         143130102    5413    274100 SH   PUT DEFINED      16,24,25    274100       0        0
CARNIVAL CORP           DBCV 1.13   143658AV4    1360   2056000 PRN      DEFINED      16,24,25   2056000       0        0
CARNIVAL CORP           PAIRED CTF  143658300   2748927  61787525 SH      DEFINED         30          0        0 61787525
CARNIVAL CORP           PAIRED CTF  143658300   2667     59954 SH       DEFINED      7,11       58554        0     1400
CARNIVAL CORP           PAIRED CTF  143658300    36       800 SH        DEFINED      7,11,13       700        0      100
CARNIVAL CORP           PAIRED CTF  143658300   37072    833266 SH      DEFINED      16,24,25    750251       0    83015
CARNIVAL CORP           PAIRED CTF  143658300    587     13196 SH       DEFINED      32,40,41    13196        0        0
CARNIVAL CORP           PAIRED CTF  143658300     1       17 SH         DEFINED      16,19,24,26,27    17       0        0
CARNIVAL CORP           PAIRED CTF  143658300   13347    300000 SH  CALL DEFINED      15,16,24    300000       0        0
CARNIVAL CORP           PAIRED CTF  143658300   11038    248100 SH  CALL DEFINED      16,24,25    248100       0        0
CARNIVAL CORP           PAIRED CTF  143658300   14833    333400 SH  PUT DEFINED      15,16,24    333400       0        0
CARNIVAL CORP           PAIRED CTF  143658300   9236     207600 SH  PUT DEFINED      16,24,25    207600       0        0
CARPENTER TECHNOLOGY    COM         144285103   3381     44983 SH       DEFINED      7,11       44983        0        0
CARPENTER TECHNOLOGY    COM         144285103    676      8987 SH       DEFINED      15,16,24     8987        0        0
CARPENTER TECHNOLOGY    COM         144285103    759     10090 SH       DEFINED      16,24,25     8157        0     1932
CARPENTER TECHNOLOGY    COM         144285103   8539     113600 SH  CALL DEFINED      15,16,24    113600       0        0
CARPENTER TECHNOLOGY    COM         144285103   9201     122400 SH  PUT DEFINED      16,24,25    122400       0        0
CARRIZO OIL & CO INC    COM         144577103    850     15532 SH       DEFINED      16,24,25    15319        0      213
CARROLS RESTAURANT G    COM         14574X104    335     35000 SH       DEFINED      16,24      35000        0        0
CASEYS GEN STORES IN    COM         147528103     2       68 SH         DEFINED      3,9          0         0       68
CASEYS GEN STORES IN    COM         147528103    264      8900 SH       DEFINED      7,11,13     8900        0        0
CASEYS GEN STORES IN    COM         147528103   1520     51323 SH       DEFINED      16,24,25    50388        0      935
CASH AMER INTL INC      COM         14754D100   8820     273063 SH      DEFINED      16,24,25    245622       0    27441
CASUAL MALE RETAIL G    COM         148711104     99     19051 SH       DEFINED      16,24,25    19051        0        0
CATERPILLAR INC DEL     COM         149123101    457      6300 SH       DEFINED      12           0         0     6300
CATERPILLAR INC DEL     COM         149123101    377      5200 SH       DEFINED      30         5200        0        0
CATERPILLAR INC DEL     COM         149123101   210172  2896523 SH      DEFINED      7,11      2818033       0    78490
CATERPILLAR INC DEL     COM         149123101   1008     13891 SH       DEFINED      7,11,13     6929        0     6962
CATERPILLAR INC DEL     COM         149123101    128      1759 SH       DEFINED      7,11,33       0         0     1759
CATERPILLAR INC DEL     COM         149123101   7765     107009 SH      DEFINED      15,16,24    107009       0        0
CATERPILLAR INC DEL     COM         149123101  156877  2162025 SH      DEFINED      16,24,25   1847021       0   315004
CATERPILLAR INC DEL     COM         149123101   7074     97490 SH       DEFINED      32,40,41    97490        0        0
CATERPILLAR INC DEL     COM         149123101   3757     51783 SH       DEFINED      5-7,11,43,44   0        0    51783
CATERPILLAR INC DEL     COM         149123101  25524    351762 SH  CALL DEFINED      7,11       351762       0        0
CATERPILLAR INC DEL     COM         149123101  27682    381500 SH  CALL DEFINED      15,16,24    381500       0        0
CATERPILLAR INC DEL     COM         149123101   7256     100000 SH  PUT DEFINED      7,11       100000       0        0
CATERPILLAR INC DEL     COM         149123101  46047    634600 SH  PUT DEFINED      15,16,24    634600       0        0
CATERPILLAR INC DEL     COM         149123101  48961    674762 SH  PUT DEFINED      16,24,25    674762       0        0
CATHAY GENERAL BANCO    COM         149150104     7       270 SH        DEFINED      7,11         0         0      270
CATHAY GENERAL BANCO    COM         149150104     29      1081 SH       DEFINED      7,11,33       0         0     1081
CATHAY GENERAL BANCO    COM         149150104   2706     102133 SH      DEFINED      16,24,25    64925        0    37208
CATO CORP NEW           CL A        149205106     48      3050 SH       DEFINED      30         3050        0        0
CATO CORP NEW           CL A        149205106     1       84 SH         DEFINED      3,9          0         0       84
CATO CORP NEW           CL A        149205106    149      9482 SH       DEFINED      16,24,25     9482        0        0
CAVALIER HOMES INC      COM         149507105     25     12608 SH       DEFINED      16,24,25    10479        0     2129
CAVIUM NETWORKS INC     COM         14965AL01     87      3800 SH       DEFINED      30         3800        0        0
CAVIUM NETWORKS INC     COM         14965AL01    357     15518 SH       DEFINED      16,24,25    13031        0     2487
CBEYOND INC             COM         149847105    129      3300 SH       DEFINED      30         3300        0        0
CBEYOND INC             COM         149847105    538     13787 SH       DEFINED      16,24,25    13502        0      285
CEDAR FAIR L P          DEPOSITORY  150185106    562     26597 SH       DEFINED      7,11,13    25372        0     1225
CEDAR FAIR L P          DEPOSITORY  150185106   1628     77039 SH       DEFINED      16,24,25    70124        0     6915
CEDAR SHOPPING CTRS     COM NEW     150602209    140     13702 SH       DEFINED      16,24,25    12202        0     1500
CEDAR SHOPPING CTRS     COM NEW     150602209    263     25674 SH       DEFINED      32,40,41    25674        0        0
CELANESE CORP DEL       COM SER A   150870103   2505     59190 SH       DEFINED      7,11       59190        0        0
CELANESE CORP DEL       COM SER A   150870103   6352     150092 SH      DEFINED      16,24,25    140754       0     9338
CELANESE CORP DEL       COM SER A   150870103   2464     58230 SH       DEFINED      32,40,41    58230        0        0
CELL GENESYS INC        COM         150921104    451     196002 SH      DEFINED      16,24,25    60235        0   135767
CELL THERAPEUTICS IN    NOTE 5.75   150934ACI   1480    2000000 PRN      DEFINED      31,45     2000000       0        0
CELL THERAPEUTICS IN    NOTE 5.75   150934AD9  10452   13400000 PRN      DEFINED      31,45    13400000       0        0
CELL THERAPEUTICS IN    NOTE 4.00   150934AK3    275     500000 PRN      DEFINED      16,24,25    500000       0        0
CELL THERAPEUTICS IN    NOTE 7.50   150934AK3    650    1000000 PRN      DEFINED      31,45    1000000       0        0
CELL THERAPEUTICS IN    COM NEW     150934404      4       1982 SH       DEFINED      16,24,25     1932        0       50
CELL THERAPEUTICS IN    COM NEW     150934404    328     174313 SH      DEFINED      16,19,24,26,27  174313   0        0
CELESTICA INC           SUB VTG SH  15101Q108    172     29666 SH       DEFINED      16,24,25    27930        0     1736
CELESTICA INC           SUB VTG SH  15101Q108     25      4350 SH       DEFINED      32,40,41     4350        0        0
CELESTICA INC           SUB VTG SH  15101Q108     71     12270 SH       DEFINED      4,6,7,11    12270        0        0
CELESTICA INC           SUB VTG SH  15101Q108    330     56900 SH  CALL DEFINED      15,16,24    56900        0        0
CELESTICA INC           SUB VTG SH  15101Q108    441     76100 SH  PUT DEFINED      15,16,24    76100        0        0
CELGENE CORP            NOTE 1.75   151020AC8    763     200000 PRN      DEFINED      16,24,25    200000       0        0
CELGENE CORP            COM         151020104    705     15250 SH       DEFINED      30         15250        0        0
CELGENE CORP            COM         151020104  12705    274949 SH       DEFINED      7,11       272449       0     2500
CELGENE CORP            COM         151020104    663     14340 SH       DEFINED      16,24      14340        0        0
CELGENE CORP            COM         151020104     46      1000 SH       DEFINED      7,11,33       0         0     1000
CELGENE CORP            COM         151020104  36871    797904 SH       DEFINED      16,24,25    678982       0   118922
CELGENE CORP            COM         151020104   3261     70560 SH       DEFINED      32,40,41    70560        0        0
CELGENE CORP            COM         151020104     30       660 SH        DEFINED      5-7,11,43,44   0       660        0
CELGENE CORP            COM         151020104   1688     36526 SH       DEFINED      2,6,7,10-11,18,20,21,28  36526  0   0
CELGENE CORP            COM         151020104   2495     54000 SH  CALL DEFINED      7,11       54000        0        0
CELGENE CORP            COM         151020104  34071    737300 SH  CALL DEFINED      15,16,24    737300       0        0
CELGENE CORP            COM         151020104   3627     78500 SH  CALL DEFINED      16,24,25    78500        0        0
CELGENE CORP            COM         151020104   6469    140000 SH  PUT DEFINED      7,11       140000       0        0
CELGENE CORP            COM         151020104  26261    568300 SH  PUT DEFINED      15,16,24    568300       0        0
CELGENE CORP            COM         151020104   2652     57400 SH  PUT DEFINED      16,24,25    57400        0        0
CEMEX SAB DE CV         SPON ADR N  15129088 9    310     12000 SH       DEFINED      30         12000        0        0
CEMEX SAB DE CV         SPON ADR N  15129088 9     20       765 SH        DEFINED      3,9          0         0      765
CEMEX SAB DE CV         SPON ADR N  15129088 9  33138   1281933 SH      DEFINED      7,11      1281933       0        0
CEMEX SAB DE CV         SPON ADR N  15129088 9     16       618 SH        DEFINED      7,11,13      559        0       59
CEMEX SAB DE CV         SPON ADR N  15129088 9   7527     291170 SH      DEFINED      15,16,24    291170       0        0
CEMEX SAB DE CV         SPON ADR N  15129088 9  34445   1332493 SH      DEFINED      16,24,25   1011409       0   321083
CEMEX SAB DE CV         SPON ADR N  15129088 9    106      4090 SH       DEFINED      32,40,41     4090        0        0
CEMEX SAB DE CV         SPON ADR N  15129088 9     79      3047 SH       DEFINED      5-7,11,43,44   0      3047        0
CEMEX SAB DE CV         SPON ADR N  15129088 9   8306     321300 SH  CALL DEFINED      7,11       321300       0        0
CEMEX SAB DE CV         SPON ADR N  15129088 9  26814   1037300 SH  CALL DEFINED      15,16,24   1037300       0        0
CEMEX SAB DE CV         SPON ADR N  15129088 9  18439     713300 SH  CALL DEFINED      16,24,25    713300       0        0
CEMEX SAB DE CV         SPON ADR N  15129088 9  10025     387800 SH  PUT DEFINED      7,11       387800       0        0
CEMEX SAB DE CV         SPON ADR N  15129088 9  19773     764900 SH  PUT DEFINED      15,16,24    764900       0        0
CEMEX SAB DE CV         SPON ADR N  15129088 9  13269     513300 SH  PUT DEFINED      16,24,25    513300       0        0
CENTERLINE HOLDINGS     SH BEN INT  15188T108    586     69921 SH       DEFINED      16,24,25    69921        0     7033
CENTERPOINT ENERGY I    NOTE 3.75   15189TAM9   83828   54700000 PRN      DEFINED      31,45    54700000       0        0
CENTERPOINT ENERGY I    NOTE 3.75   15189TAM9   75862   49502000 PRN      DEFINED      16,24,25  49502000       0        0
CENTERPOINT ENERGY I    COM         15189T107    565     32995 SH       DEFINED      7,11       32995        0        0
CENTERPOINT ENERGY I    COM         15189T107      5       300 SH        DEFINED      7,11,13      300        0        0
CENTERPOINT ENERGY I    COM         15189T107     36      2110 SH       DEFINED      7,11,33       0         0     2110
CENTERPOINT ENERGY I    COM         15189T107  16889     985928 SH      DEFINED      16,24,25    855525       0   130402
CENTERPOINT ENERGY I    COM         15189T107    174     10163 SH       DEFINED      32,40,41    10163        0        0
CENTERPLATE INC         UNIT 99/99  15200E204    197     21853 SH       DEFINED      16,24,25    12403        0     9450
CENTEX CORP             COM         152312104    297     11747 SH       DEFINED      7,11        9247        0     2500
CENTEX CORP             COM         152312104  22476    889770 SH       DEFINED      16,24      889770       0        0
CENTEX CORP             COM         152312104   2517     99640 SH       DEFINED      16,24,25    73204        0    26436
CENTEX CORP             COM         152312104    119      4703 SH       DEFINED      32,40,41     4703        0        0
CENTEX CORP             COM         152312104  10885    430900 SH  CALL DEFINED      15,16,24    430900       0        0
CENTEX CORP             COM         152312104   6441    255000 SH  PUT DEFINED      15,16,24    255000       0        0
CENTEX CORP             COM         152312104  18377    727500 SH  PUT DEFINED      15,16,24    727500       0        0
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| CENTEX CORP | COM | 152312104 | 1998 | 79100 | SH | PUT | DEFINED | 16,24,25 | 79100 | 0 | 0 |
| CENTRAL EUROPEAN DIS | COM | 153435102 | 1883 | 32415 | SH | | DEFINED | 16,24,25 | 28791 | 0 | 3624 |
| CENTRAL EUROPE AND R | COM | 153436100 | 49 | 850 | SH | | DEFINED | 7,11,13 | 500 | 0 | 350 |
| CENTRAL EUROPE AND R | COM | 153436100 | 1395 | 24046 | SH | | DEFINED | 16,24,25 | 15818 | 0 | 8228 |
| CENTRAL FD CDA LTD | CL A | 153501101 | 1224 | 113223 | SH | | DEFINED | 16,24,25 | 105989 | 0 | 7234 |
| CENTRAL GARDEN & PET | COM | 153527106 | 3974 | 690000 | SH | | DEFINED | 7,11 | 690000 | 0 | 0 |
| CENTRAL GARDEN & PET | COM | 153527106 | 3 | 600 | SH | | DEFINED | 16,24,25 | 400 | 0 | 200 |
| CENTRAL SECS CORP | COM | 155123102 | 5415 | 201756 | SH | | DEFINED | 16,24,25 | 183059 | 0 | 18696 |
| CENTRAL VT PUB SVC C | COM | 155771108 | 1158 | 37561 | SH | | DEFINED | 16,24,25 | 30361 | 0 | 7200 |
| CENTURY ALUM CO | COM | 156431108 | 215 | 3990 | SH | | DEFINED | 16,24,25 | 3110 | 0 | 880 |
| CEPHEID | COM | 156708R107 | 1079 | 40959 | SH | | DEFINED | 16,24,25 | 40759 | 0 | 200 |
| CENVEO INC | COM | 15670S105 | 17 | 1000 | SH | | DEFINED | 7,11,13 | 1000 | 0 | 0 |
| CENVEO INC | COM | 15670S105 | 4460 | 255292 | SH | | DEFINED | 16,24,25 | 201252 | 0 | 54040 |
| CENTURYTEL INC | COM | 156700106 | 1496 | 36072 | SH | | DEFINED | 7,11 | 36072 | 0 | 0 |
| CENTURYTEL INC | COM | 156700106 | 5149 | 124191 | SH | | DEFINED | 16,24,25 | 112742 | 0 | 11449 |
| CENTURYTEL INC | COM | 156700106 | 4 | 98 | SH | | DEFINED | 32,40,41 | 98 | 0 | 0 |
| CEPHALON INC | NOTE | 156708A78 | 20 | 15000 | PRN | | DEFINED | 16,24,25 | 15000 | 0 | 0 |
| CEPHALON INC | NOTE | 156708AK5 | 2583 | 2085000 | PRN | | DEFINED | 16,24,25 | 2085000 | 0 | 0 |
| CEPHALON INC | NOTE | 156708AL3 | 8940 | 6703000 | PRN | | DEFINED | 16,24,25 | 6703000 | 0 | 0 |
| CEPHALON INC | NOTE 2.00 | 156708AP4 | 83267 | 50465000 | PRN | | DEFINED | 16,24,25 | 50465000 | 0 | 0 |
| CEPHALON INC | COM | 156708109 | 121 | 1690 | SH | | DEFINED | 12 | 0 | 0 | 1690 |
| CEPHALON INC | COM | 156708109 | 129 | 1800 | SH | | DEFINED | 30 | 1800 | 0 | 0 |
| CEPHALON INC | COM | 156708109 | 251 | 3500 | SH | | DEFINED | 3,9 | 0 | 0 | 3500 |
| CEPHALON INC | COM | 156708109 | 4887 | 68098 | SH | | DEFINED | 7,11 | 10188 | 0 | 57910 |
| CEPHALON INC | COM | 156708109 | 158 | 2200 | SH | | DEFINED | 7,11,13 | 175 | 0 | 2025 |
| CEPHALON INC | COM | 156708109 | 60 | 835 | SH | | DEFINED | 7,11,33 | 0 | 0 | 835 |
| CEPHALON INC | COM | 156708109 | 1969 | 27432 | SH | | DEFINED | 16,24,25 | 26485 | 0 | 947 |
| CEPHALON INC | COM | 156708109 | 144 | 2000 | SH | | DEFINED | 32,40,41 | 2000 | 0 | 0 |
| CEPHALON INC | COM | 156708109 | 4279 | 59635 | SH | | DEFINED | 16,19,24,26,27 | 59635 | 0 | 0 |
| CEPHALON INC | COM | 156708109 | 525 | 7320 | SH | | DEFINED 2,6,7,10-11,18,20,21,28 | 7320 | 0 | 0 |
| CEPHALON INC | COM | 156708109 | 20337 | 283400 | SH | CALL | DEFINED | 15,16,24 | 283400 | 0 | 0 |
| CEPHALON INC | COM | 156708109 | 3430 | 47800 | SH | CALL | DEFINED | 16,24,25 | 47800 | 0 | 0 |
| CEPHALON INC | COM | 156708109 | 20416 | 284500 | SH | PUT | DEFINED | 15,16,24 | 284500 | 0 | 0 |
| CEPHALON INC | COM | 156708109 | 4026 | 56100 | SH | PUT | DEFINED | 16,24,25 | 56100 | 0 | 0 |
| CERADYNE INC | NOTE 2.87 | 156710AA3 | 5243 | 4935000 | PRN | | DEFINED | 16,24,25 | 4935000 | 0 | 0 |
| CERADYNE INC | COM | 156710105 | 1 | 30 | SH | | DEFINED | 16,24 | 30 | 0 | 0 |
| CERADYNE INC | COM | 156710105 | 41 | 875 | SH | | DEFINED | 7,11,13 | 875 | 0 | 0 |
| CERADYNE INC | COM | 156710105 | 505 | 10757 | SH | | DEFINED | 15,16,24 | 10757 | 0 | 0 |
| CERADYNE INC | COM | 156710105 | 4505 | 95996 | SH | | DEFINED | 16,24,25 | 94288 | 0 | 1708 |
| CERADYNE INC | COM | 156710105 | 8095 | 172500 | SH | CALL | DEFINED | 15,16,24 | 172500 | 0 | 0 |
| CERADYNE INC | COM | 156710105 | 3834 | 81700 | SH | PUT | DEFINED | 15,16,24 | 81700 | 0 | 0 |
| CERNER CORP | COM | 156782104 | 45 | 791 | SH | | DEFINED | 7,11 | 791 | 0 | 0 |
| CERNER CORP | COM | 156782104 | 567 | 10050 | SH | | DEFINED | 7,11,13 | 9650 | 0 | 400 |
| CERNER CORP | COM | 156782104 | 4852 | 86026 | SH | | DEFINED | 16,24,25 | 67612 | 0 | 18414 |
| CERNER CORP | COM | 156782104 | 2341 | 41500 | SH | | DEFINED | 32,40,41 | 41500 | 0 | 0 |
| CERNER CORP | COM | 156782104 | 4969 | 88100 | SH | CALL | DEFINED | 15,16,24 | 88100 | 0 | 0 |
| CERNER CORP | COM | 156782104 | 4901 | 86900 | SH | PUT | DEFINED | 15,16,24 | 86900 | 0 | 0 |
| CHAMPION ENTERPRISES | COM | 158496109 | 2394 | 254147 | SH | | DEFINED | 16,24,25 | 179079 | 0 | 75068 |
| CHAMPION ENTERPRISES | COM | 158496109 | 125 | 13300 | SH | CALL | DEFINED | 15,16,24 | 13300 | 0 | 0 |
| CHAMPION ENTERPRISES | COM | 158496109 | 39 | 4100 | SH | PUT | DEFINED | 15,16,24 | 4100 | 0 | 0 |
| CHAMPION INDS INC W | COM | 158520106 | 258 | 57033 | SH | | DEFINED | 16,24,25 | 51623 | 0 | 5410 |
| CHARLES & COLVARD LT | COM | 159765106 | 36 | 16182 | SH | | DEFINED | 16,24,25 | 14882 | 0 | 1300 |
| CHARLES RIV LABS INT | COM | 159864107 | 18 | 277 | SH | | DEFINED | 7,11 | 277 | 0 | 0 |
| CHARLES RIV LABS INT | COM | 159864107 | 399 | 6069 | SH | | DEFINED | 16,24,25 | 5977 | 0 | 92 |
| CHARLES RIV LABS INT | COM | 159864107 | 427 | 6495 | SH | | DEFINED | 32,40,41 | 6495 | 0 | 0 |
| CHARMING SHOPPES INC | COM | 161133103 | 35 | 6425 | SH | | DEFINED | 7,11,33 | 0 | 0 | 6425 |
| CHARMING SHOPPES INC | COM | 161133103 | 12913 | 2386938 | SH | | DEFINED | 16,24,25 | 2243365 | 0 | 143573 |
| CHARTER COMMUNICATIO | NOTE 6.50 | 16117MAF4 | 12622 | 21214000 | PRN | | DEFINED | 31,45 | 21214000 | 0 | 0 |
| CHARTER COMMUNICATIO | NOTE 6.50 | 16117MAF4 | 23312 | 39179000 | PRN | | DEFINED | 16,24,25 | 39179000 | 0 | 0 |
| CHARTER COMMUNICATIO | NOTE 6.50 | 16117MAF4 | 9790 | 16454000 | PRN | | DEFINED | 16,19,24,26,27 | 16454000 | 0 | 0 |
| CHARTER COMMUNICATIO | CL A | 16117M107 | 2075 | 1773207 | SH | | DEFINED | 16,24,25 | 1759757 | 0 | 13450 |
| CHARTWELL DIVD & INC | COM | 16139P104 | 170 | 23371 | SH | | DEFINED | 16,24,25 | 23371 | 0 | 0 |
| CHATTEM INC | COM | 162456107 | 42 | 555 | SH | | DEFINED | 7,11,33 | 0 | 0 | 555 |
| CHATTEM INC | COM | 162456107 | 3337 | 44173 | SH | | DEFINED | 16,24,25 | 43661 | 0 | 512 |
| CHECKPOINT SYS INC | COM | 162825103 | 1545 | 59475 | SH | | DEFINED | 7,11,13 | 59475 | 0 | 0 |
| CHECKPOINT SYS INC | COM | 162825103 | 253 | 9757 | SH | | DEFINED | 16,24,25 | 7320 | 0 | 2437 |
| CHEESECAKE FACTORY I | COM | 163072101 | 46 | 1923 | SH | | DEFINED | 7,11 | 873 | 0 | 1050 |
| CHEESECAKE FACTORY I | COM | 163072101 | 630 | 26550 | SH | | DEFINED | 7,11,13 | 25550 | 0 | 1000 |
| CHEESECAKE FACTORY I | COM | 163072101 | 4813 | 202975 | SH | | DEFINED | 16,24,25 | 156589 | 0 | 46386 |
| CHEMED CORP NEW | NOTE 1.87 | 16359RAC7 | 755 | 795000 | PRN | | DEFINED | 16,24,25 | 795000 | 0 | 0 |
| CHEMED CORP NEW | COM | 16359R103 | 12053 | 215691 | SH | | DEFINED | 7,11 | 215691 | 0 | 0 |
| CHEMED CORP NEW | COM | 16359R103 | 13 | 240 | SH | | DEFINED | 7,11,33 | 0 | 0 | 240 |
| CHEMED CORP NEW | COM | 16359R103 | 15424 | 276024 | SH | | DEFINED | 16,24,25 | 253862 | 0 | 22162 |
| CHEMED CORP NEW | COM | 16359R103 | 69291 | 1240000 | SH | CALL | DEFINED | 7,11 | 1240000 | 0 | 0 |
| CHEMTURA CORP | COM | 163893100 | 128 | 16390 | SH | | DEFINED | 7,11 | 190 | 0 | 16200 |
| CHEMTURA CORP | COM | 163893100 | 391 | 50075 | SH | | DEFINED | 7,11,13 | 50075 | 0 | 0 |
| CHEMTURA CORP | COM | 163893100 | 298 | 38181 | SH | | DEFINED | 16,24,25 | 34901 | 0 | 3280 |
| CHENIERE ENERGY PART | COM UNIT | 16411Q101 | 2566 | 159752 | SH | | DEFINED | 16,24,25 | 151252 | 0 | 8500 |
| CHENIERE ENERGY INC | NOTE 2.25 | 16411RAE9 | 7035 | 6700000 | PRN | | DEFINED | 31,45 | 6700000 | 0 | 0 |
| CHENIERE ENERGY INC | NOTE 2.25 | 16411RAE9 | 35247 | 33569000 | PRN | | DEFINED | 16,24,25 | 33569000 | 0 | 0 |
| CHENIERE ENERGY INC | COM NEW | 16411R208 | 3310 | 101423 | SH | | DEFINED | 7,11 | 101423 | 0 | 0 |
| CHENIERE ENERGY INC | COM NEW | 16411R208 | 98 | 3000 | SH | | DEFINED | 31,45 | 3000 | 0 | 0 |
| CHENIERE ENERGY INC | COM NEW | 16411R208 | 3090 | 94665 | SH | | DEFINED | 15,16,24 | 94665 | 0 | 0 |
| CHENIERE ENERGY INC | COM NEW | 16411R208 | 1017 | 31162 | SH | | DEFINED | 16,24,25 | 26152 | 0 | 5010 |
| CHENIERE ENERGY INC | COM NEW | 16411R208 | 111 | 3400 | SH | | DEFINED | 32,40,41 | 3400 | 0 | 0 |
| CHENIERE ENERGY INC | COM NEW | 16411R208 | 11424 | 350000 | SH | CALL | DEFINED | 7,11 | 350000 | 0 | 0 |
| CHENIERE ENERGY INC | COM NEW | 16411R208 | 12028 | 368500 | SH | CALL | DEFINED | 15,16,24 | 368500 | 0 | 0 |
| CHENIERE ENERGY INC | COM NEW | 16411R208 | 7360 | 225500 | SH | CALL | DEFINED | 16,24,25 | 225500 | 0 | 0 |
| CHENIERE ENERGY INC | COM NEW | 16411R208 | 8206 | 251400 | SH | PUT | DEFINED | 15,16,24 | 251400 | 0 | 0 |
| CHESAPEAKE CORP | COM | 165159104 | 947 | 182519 | SH | | DEFINED | 16,24,25 | 147705 | 0 | 34814 |
| CHESAPEAKE ENERGY CO | NOTE 2.75 | 165167B W6 | 15144 | 12888000 | PRN | | DEFINED | 16,24,25 | 12888000 | 0 | 0 |
| CHESAPEAKE ENERGY CO | NOTE 2.50 | 165167CA3 | 5574 | 5000000 | PRN | | DEFINED | 16,24,25 | 5000000 | 0 | 0 |
| CHESAPEAKE ENERGY CO | COM | 165167107 | 643 | 16410 | SH | | DEFINED | 30 | 16410 | 0 | 0 |
| CHESAPEAKE ENERGY CO | COM | 165167107 | 2067 | 52722 | SH | | DEFINED | 7,11 | 52722 | 0 | 0 |
| CHESAPEAKE ENERGY CO | COM | 165167107 | 90 | 2297 | SH | | DEFINED | 7,11,13 | 2297 | 0 | 0 |
| CHESAPEAKE ENERGY CO | COM | 165167107 | 1242 | 31680 | SH | | DEFINED | 7,11,33 | 0 | 0 | 31680 |
| CHESAPEAKE ENERGY CO | COM | 165167107 | 79176 | 2019796 | SH | | DEFINED | 16,24,25 | 1718148 | 0 | 301647 |
| CHESAPEAKE ENERGY CO | COM | 165167107 | 548 | 13985 | SH | | DEFINED | 32,40,41 | 13985 | 0 | 0 |
| CHESAPEAKE ENERGY CO | COM | 165167107 | 106 | 2700 | SH | | DEFINED | 16,19,24,26,27 | 2700 | 0 | 0 |
| CHESAPEAKE ENERGY CO | COM | 165167107 | 30639 | 781600 | SH | CALL | DEFINED | 15,16,24 | 781600 | 0 | 0 |
| CHESAPEAKE ENERGY CO | COM | 165167107 | 17656 | 450400 | SH | CALL | DEFINED | 16,24,25 | 450400 | 0 | 0 |
| CHESAPEAKE ENERGY CO | COM | 165167107 | 35194 | 897800 | SH | PUT | DEFINED | 15,16,24 | 897800 | 0 | 0 |
| CHESAPEAKE ENERGY CO | COM | 165167107 | 6519 | 166300 | SH | PUT | DEFINED | 16,24,25 | 166300 | 0 | 0 |
| CHESAPEAKE ENERGY CO | PFD CONV | 165167842 | 1828 | 16288 | SH | | DEFINED | 16,24,25 | 14759 | 0 | 1529 |
| CHESAPEAKE UTILS COR | COM | 165303108 | 277 | 8705 | SH | | DEFINED | 7,11,13 | 8705 | 0 | 0 |
| CHESAPEAKE UTILS COR | COM | 165303108 | 33 | 1050 | SH | | DEFINED | 16,24,25 | 1050 | 0 | 0 |
| CHEVRON CORP NEW | COM | 166764100 | 2240 | 24005 | SH | | DEFINED | 12 | 0 | 0 | 24005 |
| CHEVRON CORP NEW | COM | 166764100 | 980 | 10500 | SH | | DEFINED | 30 | 10500 | 0 | 0 |
| CHEVRON CORP NEW | COM | 166764100 | 9856 | 105600 | SH | | DEFINED | 42 | 105600 | 0 | 0 |
| CHEVRON CORP NEW | COM | 166764100 | 14058 | 150624 | SH | | DEFINED | 3,9 | 0 | 0 | 150624 |
| CHEVRON CORP NEW | COM | 166764100 | 157918 | 1692038 | SH | | DEFINED | 7,11 | 749545 | 4808 | 937685 |
| CHEVRON CORP NEW | COM | 166764100 | 1587 | 17000 | SH | | DEFINED | 16,24 | 17000 | 0 | 0 |
| CHEVRON CORP NEW | COM | 166764100 | 8400 | 90007 | SH | | DEFINED | 7,11,13 | 64257 | 0 | 25750 |
| CHEVRON CORP NEW | COM | 166764100 | 1884 | 20188 | SH | | DEFINED | 7,11,33 | 0 | 0 | 20188 |

```
CHEVRON CORP NEW        COM           166764100   381893   4091853 SH   DEFINED   16,24,25         3288287   0   803566
CHEVRON CORP NEW        COM           166764100    72969    781839 SH   DEFINED   32,40,41          781839   0        0
CHEVRON CORP NEW        COM           166764100     1218     13048 SH   DEFINED   5-7,11,43,44           0   13048     0
CHEVRON CORP NEW        COM           166764100     4256     45601 SH   DEFINED   16,19,24,26,27     45601   0        0
CHEVRON CORP NEW        COM           166764100    47402    507900 SH   CALL DEFINED   7,11          507900   0        0
CHEVRON CORP NEW        COM           166764100    78248    838400 SH   CALL DEFINED   15,16,24      838400   0        0
CHEVRON CORP NEW        COM           166764100    19403    207900 SH   CALL DEFINED   16,24,25      207900   0        0
CHEVRON CORP NEW        COM           166764100    31200    334300 SH   PUT DEFINED    15,16,24      334300   0        0
CHEVRON CORP NEW        COM           166764100    71668    767900 SH   PUT DEFINED    16,24,25      767900   0        0
CHICAGO BRIDGE & IRO N Y REGIST 167250109     15       250 SH   DEFINED    7,11,13             250   0        0
CHICAGO BRIDGE & IRO N Y REGIST 167250109   2827     46767 SH   DEFINED    15,16,24          46767   0        0
CHICAGO BRIDGE & IRO N Y REGIST 167250109  23319    385820 SH   DEFINED    16,24,25         309296   0    76523
CHICAGO BRIDGE & IRO N Y REGIST 167250109   5337     88300 SH   CALL DEFINED   15,16,24      88300   0        0
CHICAGO BRIDGE & IRO N Y REGIST 167250109   5168     85500 SH   PUT DEFINED    15,16,24      85500   0        0
CHICOS FAS INC         COM           168615102     96     10623 SH   DEFINED    7,11            10623   0        0
CHICOS FAS INC         COM           168615102    131     14485 SH   DEFINED    7,11,13         14485   0        0
CHICOS FAS INC         COM           168615102     58      6443 SH   DEFINED    16,24            6443   0        0
CHICOS FAS INC         COM           168615102   2995    331713 SH   DEFINED    16,24,25       286996   0    44717
CHICOS FAS INC         COM           168615102   1660    183800 SH   CALL DEFINED   15,16,24   183800   0        0
CHICOS FAS INC         COM           168615102    107     11900 SH   CALL DEFINED   16,24,25    11900   0        0
CHICOS FAS INC         COM           168615102    801     88700 SH   PUT DEFINED    15,16,24    88700   0        0
CHICOS FAS INC         COM           168615102    138     15300 SH   PUT DEFINED    16,24,25    15300   0        0
CHILDRENS PL RETAIL    COM           16890510T   8615    332251 SH   DEFINED    16,24,25       330438   0     1813
CHIMERA INVT CORP      COM           16934Q109   1103     61684 SH   DEFINED    16,24,25        61290   0      394
CHINA BAK BATTERY IN   COM           16936Y100      1       100 SH   DEFINED    16,24             100   0        0
CHINA BAK BATTERY IN   COM           16936Y100     73     11647 SH   DEFINED    15,16,24        11647   0        0
CHINA BAK BATTERY IN   COM           16936Y100     70     11179 SH   DEFINED    16,24,25        11179   0        0
CHINA BAK BATTERY IN   COM           16936Y100    145     23200 SH   CALL DEFINED   15,16,24    23200   0        0
CHINA BAK BATTERY IN   COM           16936Y100    172     27500 SH   PUT DEFINED    16,24,25    27500   0        0
CHINA FD INC           COM           16937310T      4       100 SH   DEFINED    16,24             100   0        0
CHINA FD INC           COM           16937310T   1984     52187 SH   DEFINED    16,24,25        44584   0     7603
CHINA FIN ONLINE CO SPONSORED 16937910A   1033     47184 SH   DEFINED    16,24,25        44307   0     2877
CHINA DIGITAL TV HLD SPONSORED 16938010T    402     14883 SH   DEFINED    16,24,25        13311   0     1572
CHINA DIRECT INC       COM           16938410A    286     32501 SH   DEFINED    16,24,25        29001   0     3500
CHINA LIFE INS CO LT SPON ADR R 16939P106    138      1800 SH   DEFINED    7,11                 0   0     1800
CHINA LIFE INS CO LT SPON ADR R 16939P106    670      8752 SH   DEFINED    15,16,24          8752   0        0
CHINA LIFE INS CO LT SPON ADR R 16939P106  10132    132448 SH   DEFINED    16,24,25        115301   0    17147
CHINA LIFE INS CO LT SPON ADR R 16939P106  11490    150191 SH   DEFINED    16,17,22-24     150191   0        0
CHINA LIFE INS CO LT SPON ADR R 16939P106    221      2894 SH   DEFINED    16,19,24,26,27    2894   0        0
CHINA LIFE INS CO LT SPON ADR R 16939P106   7558     98800 SH   CALL DEFINED   7,11          98800   0        0
CHINA LIFE INS CO LT SPON ADR R 16939P106  25612    334800 SH   CALL DEFINED   15,16,24     334800   0        0
CHINA LIFE INS CO LT SPON ADR R 16939P106    230      3000 SH   CALL DEFINED   16,24,25       3000   0        0
CHINA LIFE INS CO LT SPON ADR R 16939P106   6656     87000 SH   PUT DEFINED    7,11          87000   0        0
CHINA LIFE INS CO LT SPON ADR R 16939P106  32742    428000 SH   PUT DEFINED    15,16,24     428000   0        0
CHINA LIFE INS CO LT SPON ADR R 16939P106   8690    113600 SH   PUT DEFINED    16,24,25     113600   0        0
CHINA NETCOM GROUP C SPONSORED 16940Q101    167      2813 SH   DEFINED    15,16,24          2813   0        0
CHINA NETCOM GROUP C SPONSORED 16940Q101    959     16139 SH   DEFINED    16,24,25         10385   0     5754
CHINA NETCOM GROUP C SPONSORED 16940Q101   3124     52600 SH   DEFINED    15,16,24         52600   0        0
CHINA NETCOM GROUP C SPONSORED 16940Q101   3386     57000 SH   PUT DEFINED    16,24,25     57000   0        0
CHINA SOUTHN AIRLS L SPON ADR C 16940910Q   1873     28619 SH   DEFINED    16,24,25        27817   0      802
CHINA PRECISION STEE COM           16941J106    104     17000 SH   DEFINED    16,24,25        17000   0        0
CHINA MOBILE LIMITED SPONSORED 16941M109  11678    134428 SH   DEFINED    7,11            133428   0     1000
CHINA MOBILE LIMITED SPONSORED 16941M109      6        70 SH   DEFINED    7,11,13             70   0        0
CHINA MOBILE LIMITED SPONSORED 16941M109    125      1439 SH   DEFINED    7,11,13              0   0     1439
CHINA MOBILE LIMITED SPONSORED 16941M109   5614     64620 SH   DEFINED    15,16,24         64620   0        0
CHINA MOBILE LIMITED SPONSORED 16941M109  33861    389788 SH   DEFINED    16,24,25        334450   0    55337
CHINA MOBILE LIMITED SPONSORED 16941M109   8861    102000 SH   DEFINED    16,17,22-24     102000   0        0
CHINA MOBILE LIMITED SPONSORED 16941M109  13196    151900 SH   CALL DEFINED   7,11         151900   0        0
CHINA MOBILE LIMITED SPONSORED 16941M109  30439    350400 SH   CALL DEFINED   15,16,24     350400   0        0
CHINA MOBILE LIMITED SPONSORED 16941M109  11467    132000 SH   PUT DEFINED    7,11         132000   0        0
CHINA MOBILE LIMITED SPONSORED 16941M109  29866    343800 SH   PUT DEFINED    16,24,25     343800   0        0
CHINA PETE & CHEM CO SPON ADR H 16941R108    110       740 SH   DEFINED    30                740   0        0
CHINA PETE & CHEM CO SPON ADR H 16941R108   7264     49017 SH   DEFINED    15,16,24         49017   0        0
CHINA PETE & CHEM CO SPON ADR H 16941R108  18797    126833 SH   DEFINED    16,24,25        122248   0     4585
CHINA PETE & CHEM CO SPON ADR H 16941R108   5217     35200 SH   DEFINED    16,17,22-24      35200   0        0
CHINA PETE & CHEM CO SPON ADR H 16941R108    387      2610 SH   DEFINED    16,19,24,26,27    2610   0        0
CHINA PETE & CHEM CO SPON ADR H 16941R108  18258    123200 SH   CALL DEFINED   15,16,24    123200   0        0
CHINA PETE & CHEM CO SPON ADR H 16941R108  26928    181700 SH   PUT DEFINED    16,24,25    181700   0        0
CHINA SEC & SURVE TE COM           16942J105    854     39097 SH   DEFINED    16,24,25        33475   0     5622
CHINA TECHFAITH WIRL SPONSORED 16942410B     98     16870 SH   DEFINED    15,16,24         16870   0        0
CHINA TECHFAITH WIRL SPONSORED 16942410B      9      1520 SH   DEFINED    16,24,25          1520   0        0
CHINA TECHFAITH WIRL SPONSORED 16942410B     43      7500 SH   CALL DEFINED   15,16,24     7500   0        0
CHINA TECHFAITH WIRL SPONSORED 16942410B    143     24600 SH   PUT DEFINED    15,16,24    24600   0        0
CHINA TELECOM CORP L SPON ADR H 16942610J   4433     56788 SH   DEFINED    7,11            56788   0        0
CHINA TELECOM CORP L SPON ADR H 16942610J    487      6239 SH   DEFINED    15,16,24          6239   0        0
CHINA TELECOM CORP L SPON ADR H 16942610J   3133     40132 SH   DEFINED    16,17,22-24      30275   0     9857
CHINA TELECOM CORP L SPON ADR H 16942610J   8962    114800 SH   DEFINED    15,16,24        114800   0        0
CHINA TELECOM CORP L SPON ADR H 16942610J   2826     36200 SH   CALL DEFINED   15,16,24    36200   0        0
CHINA TELECOM CORP L SPON ADR H 16942610J   3904     50000 SH   PUT DEFINED    7,11         50000   0        0
CHINA TELECOM CORP L SPON ADR H 16942610J   4309     55200 SH   PUT DEFINED    15,16,24     55200   0        0
CHINA UNICOM LTD        SPONSORED 16945R104   4316    192690 SH   DEFINED    7,11           192690   0        0
CHINA UNICOM LTD        SPONSORED 16945R104    639     28505 SH   DEFINED    15,16,24         28505   0        0
CHINA UNICOM LTD        SPONSORED 16945R104   8396    374837 SH   DEFINED    16,24,25        349017   0    25820
CHINA UNICOM LTD        SPONSORED 16945R104  11451    511200 SH   CALL DEFINED   15,16,24   511200   0        0
CHINA UNICOM LTD        SPONSORED 16945R104   1427     63700 SH   CALL DEFINED   15,16,24    63700   0        0
CHINA UNICOM LTD        SPONSORED 16945R104  11451    511200 SH   PUT DEFINED    7,11        511200   0        0
CHINA UNICOM LTD        SPONSORED 16945R104   1210     54000 SH   PUT DEFINED    16,24,25     54000   0        0
CHINDEX INTERNATIONA COM           16946710T    379     10975 SH   DEFINED    16,24,25         9975   0     1000
CHINA MED TECHNOLOGI SPONSORED 16948310A    784     17653 SH   DEFINED    16,24,25        17653   0        0
CHINA MED TECHNOLOGI SPONSORED 16948310A   1947     43853 SH   DEFINED    15,16,24         35449   0     8404
CHINA MED TECHNOLOGI SPONSORED 16948310A   4284     96500 SH   CALL DEFINED   15,16,24     96500   0        0
CHINA MED TECHNOLOGI SPONSORED 16948310A   1651     37200 SH   PUT DEFINED    15,16,24     37200   0        0
CHIPOTLE MEXICAN GRI CL A        169656105      6        41 SH   DEFINED    7,11                 0   0       41
CHIPOTLE MEXICAN GRI CL A        169656105   8112     55158 SH   DEFINED    16,24,25        48133   0     7025
CHIPOTLE MEXICAN GRI CL A        169656105  21428    145700 SH   CALL DEFINED   15,16,24   145700   0        0
CHIPOTLE MEXICAN GRI CL A        169656105  18119    123200 SH   PUT DEFINED    15,16,24   123200   0        0
CHIPOTLE MEXICAN GRI CL B        16965620A   5441     44220 SH   DEFINED    7,11            44220   0        0
CHIPOTLE MEXICAN GRI CL B        16965620A     97       789 SH   DEFINED    16,24,25          655   0      134
CHIPOTLE MEXICAN GRI CL B        16965620A   1550     12600 SH   CALL DEFINED   15,16,24    12600   0        0
CHIPOTLE MEXICAN GRI CL B        16965620A   1735     14100 SH   PUT DEFINED    15,16,24    14100   0        0
CHOICE HOTELS INTL I COM           169905106     15       443 SH   DEFINED    7,11              443   0        0
CHOICE HOTELS INTL I COM           169905106      7       200 SH   DEFINED    7,11,13           200   0        0
CHOICE HOTELS INTL I COM           169905106    216      6103 SH   DEFINED    16,24,25         4103   0     2400
CHIQUITA BRANDS INTL *N EXP 03/ 17003211A     95     28519 SH   DEFINED    16,24,25         5367   0    23152
CHITTENDEN CORP        COM           170228100   3993    112100 SH   DEFINED    16,24,25       107094   0     5005
CHOICEPOINT INC        COM           17038810Z    145      4530 SH   DEFINED    7,11            4530   0        0
CHOICEPOINT INC        COM           17038810Z   1203     33034 SH   DEFINED    16,24,25        29986   0     3048
CHOICEPOINT INC        COM           17038810Z    117      3218 SH   DEFINED    32,40,41        3218   0        0
CHRISTOPHER & BANKS COM           17104610S    586     51208 SH   DEFINED    16,24,25        51208   0        0
CHROMCRAFT REVINGTON COM           17111710A     59     12362 SH   DEFINED    16,24,25        10213   0     2149
CHUBB CORP             COM           171232101    420      7700 SH   DEFINED    12                 0   0     7700
CHUBB CORP             COM           171232101  27395    501924 SH   DEFINED    7,11           97244   0   404680
CHUBB CORP             COM           171232101   1583     29000 SH   DEFINED    16,24          29000   0        0
CHUBB CORP             COM           171232101    558     10215 SH   DEFINED    7,11,13         4380   0     5835
```

```
CHUBB CORP            COM           171232101    150     2748 SH   DEFINED      7,11,33                   0        0    2748
CHUBB CORP            COM           171232101   1267    23217 SH   DEFINED      15,16,24              23217        0       0
CHUBB CORP            COM           171232101  47187   864549 SH   DEFINED      16,24,25             709714        0  154835
CHUBB CORP            COM           171232101   5352    98053 SH   DEFINED      32,40,41              98053        0       0
CHUBB CORP            COM           171232101     74     1350 SH   DEFINED      5-7,11,43,44             0     1350       0
CHUBB CORP            COM           171232101   5829   106800 SH   CALL DEFINED 15,16,24             106800        0       0
CHUBB CORP            COM           171232101   7789   142700 SH   CALL DEFINED 16,24,25             142700        0       0
CHUBB CORP            COM           171232101   9502   174100 SH   PUT DEFINED  15,16,24             174100        0       0
CHUBB CORP            COM           171232101   7909   144900 SH   PUT DEFINED  16,24,25             144900        0       0
CHUNGHWA TELECOM CO   SPONSORED     17133Q205   3939   215481 SH   DEFINED      16,24,25             188350        0   27131
CHURCH & DWIGHT INC   COM           171340102     40      748 SH   DEFINED      7,11                    748        0       0
CHURCH & DWIGHT INC   COM           171340102    358     6625 SH   DEFINED      7,11,13                6425        0     200
CHURCH & DWIGHT INC   COM           171340102     30      550 SH   DEFINED      7,11,33                   0        0     550
CHURCH & DWIGHT INC   COM           171340102   2314    42792 SH   DEFINED      16,24,25              37296        0    5496
CHURCH & DWIGHT INC   COM           171340102    411     7600 SH   DEFINED      32,40,41               7600        0       0
CHURCHILL VENTURES L  *W EXP 03/    17157P117     70   100000 SH   DEFINED      16,24,25             100000        0       0
CIENA CORP            NOTE 3.75     171779AA9     55    55000 PRN  DEFINED      16,24,25              55000        0       0
CIENA CORP            NOTE 0.25     171779AB7   5734  5500000 PRN  DEFINED      31,45               5500000        0       0
CIENA CORP            NOTE 0.87     171779AE1   4215  4000000 PRN  DEFINED      31,45               4000000        0       0
CIENA CORP            COM NEW       171779309    109     3209 SH   DEFINED      7,11                   3209        0       0
CIENA CORP            COM NEW       171779309   5328   156208 SH   DEFINED      15,16,24             156208        0       0
CIENA CORP            COM NEW       171779309   1172    34372 SH   DEFINED      16,24,25              29577        0    4795
CIENA CORP            COM NEW       171779309    785    23000 SH   DEFINED      32,40,41              23000        0       0
CIENA CORP            COM NEW       171779309  12843   376500 SH   CALL DEFINED 15,16,24             376500        0       0
CIENA CORP            COM NEW       171779309  13320   390500 SH   PUT DEFINED  15,16,24             390500        0       0
CIENA CORP            COM NEW       171779309    600    17600 SH   PUT DEFINED  16,24,25              17600        0       0
CIMAREX ENERGY CO     COM           171798101     68     1600 SH   DEFINED      30                     1600        0       0
CIMAREX ENERGY CO     COM           171798101   3212    75527 SH   DEFINED      42                    75527        0       0
CIMAREX ENERGY CO     COM           171798101     13      306 SH   DEFINED      7,11,13                 306        0       0
CIMAREX ENERGY CO     COM           171798101    314     7383 SH   DEFINED      15,16,24               7383        0       0
CIMAREX ENERGY CO     COM           171798101   4411   103726 SH   DEFINED      16,24,25              95166        0    8560
CIMAREX ENERGY CO     COM           171798101    120     2815 SH   DEFINED      32,40,41               2815        0       0
CIMAREX ENERGY CO     COM           171798101   2726    64100 SH   CALL DEFINED 15,16,24              64100        0       0
CIMAREX ENERGY CO     COM           171798101   1795    42200 SH   PUT DEFINED  15,16,24              42200        0       0
CINCINNATI BELL INC   COM           171871106    113    23775 SH   DEFINED      16,24,25              21840        0    1935
CINCINNATI FINL CORP  COM           172062101    478    12082 SH   DEFINED      7,11                  12082        0       0
CINCINNATI FINL CORP  COM           172062101    129     3271 SH   DEFINED      7,11,13                3271        0       0
CINCINNATI FINL CORP  COM           172062101   3002    75930 SH   DEFINED      16,24,25              60153        0   15777
CINCINNATI FINL CORP  COM           172062101    178     4493 SH   DEFINED      32,40,41               4493        0       0
CIRCUIT CITY STORE I  COM           172737108    394    93720 SH   DEFINED      7,11                  93720        0       0
CIRCUIT CITY STORE I  COM           172737108      9     2255 SH   DEFINED      7,11,13                2255        0       0
CIRCUIT CITY STORE I  COM           172737108    161    38302 SH   DEFINED      15,16,24              38302        0       0
CIRCUIT CITY STORE I  COM           172737108   3417   813613 SH   DEFINED      16,24,25             797356        0   16256
CIRCUIT CITY STORE I  COM           172737108      1      162 SH   DEFINED      32,40,41                162        0       0
CIRCUIT CITY STORE I  COM           172737108   1919   456900 SH   CALL DEFINED 15,16,24             456900        0       0
CIRCUIT CITY STORE I  COM           172737108   2800   666700 SH   CALL DEFINED 16,24,25             666700        0       0
CIRCUIT CITY STORE I  COM           172737108   1504   358200 SH   PUT DEFINED  15,16,24             358200        0       0
CISCO SYS INC         COM           17275R102   2324    85853 SH   DEFINED      12                        0        0   85853
CISCO SYS INC         COM           17275R102    921    34020 SH   DEFINED      30                    34020        0       0
CISCO SYS INC         COM           17275R102   1089    40242 SH   DEFINED      3,9                       0        0   40242
CISCO SYS INC         COM           17275R102  92217  3406721 SH   DEFINED      7,11                2151121     5950 1249650
CISCO SYS INC         COM           17275R102    623    23000 SH   DEFINED      16,24                 23000        0       0
CISCO SYS INC         COM           17275R102   3799   140350 SH   DEFINED      7,11,13              118475        0   21875
CISCO SYS INC         COM           17275R102   1196    44174 SH   DEFINED      7,11,33                   0        0   44174
CISCO SYS INC         COM           17275R102    670    24745 SH   DEFINED      15,16,24              24745        0       0
CISCO SYS INC         COM           17275R102 461262 17040215 SH   DEFINED      16,24,25           14013607        0 3026608
CISCO SYS INC         COM           17275R102  41005  1514847 SH   DEFINED      32,40,41            1514847        0       0
CISCO SYS INC         COM           17275R102   6597   243722 SH   DEFINED      5-7,11,43,44              0   243722       0
CISCO SYS INC         COM           17275R102   1862    68787 SH   DEFINED      16,19,24,26,27        68787        0       0
CISCO SYS INC         COM           17275R102 100674  3719153 SH   DEFINED      2,6,7,10-11,18,20,21,28 3719153    0       0
CISCO SYS INC         COM           17275R102  23056   851766 SH   CALL DEFINED 7,11                 851766        0       0
CISCO SYS INC         COM           17275R102  63260  2337000 SH   CALL DEFINED 15,16,24            2337000        0       0
CISCO SYS INC         COM           17275R102  13188   487200 SH   CALL DEFINED 16,24,25             487200        0       0
CISCO SYS INC         COM           17275R102    623    23000 SH   CALL DEFINED 16,19,24,26,27        23000        0       0
CISCO SYS INC         COM           17275R102  12181   450000 SH   PUT DEFINED  7,11                 450000        0       0
CISCO SYS INC         COM           17275R102  54103  1998700 SH   PUT DEFINED  15,16,24            1998700        0       0
CISCO SYS INC         COM           17275R102  45443  1678766 SH   PUT DEFINED  16,24,25            1678366        0     400
CIRRUS LOGIC INC      COM           17275S100      2      400 SH   DEFINED      7,11,33                   0        0     400
CIRRUS LOGIC INC      COM           17275S100   1286   243585 SH   DEFINED      16,24,25             209075        0   34510
CITADEL BROADCASTING  COM           17285T106      1      330 SH   DEFINED      12                        0        0     330
CITADEL BROADCASTING  COM           17285T106      0       74 SH   DEFINED      3,9                       0        0      74
CITADEL BROADCASTING  COM           17285T106     60    29018 SH   DEFINED      7,11                   6558        0   22460
CITADEL BROADCASTING  COM           17285T106      0      138 SH   DEFINED      7,11,13                   0        0     138
CITADEL BROADCASTING  COM           17285T106      0      229 SH   DEFINED      7,11,33                   0        0     229
CITADEL BROADCASTING  COM           17285T106   1035   502448 SH   DEFINED      16,24,25             456946        0   45502
CITADEL BROADCASTING  COM           17285T106      0      194 SH   DEFINED      5-7,11,43,44              0      194       0
CITADEL BROADCASTING  COM           17285T106   4687  2275154 SH   DEFINED      16,19,24,26,27      2275154        0       0
CINTAS CORP           COM           172908105   4473   133060 SH   DEFINED      7,11                  35560        0   97500
CINTAS CORP           COM           172908105    165     4894 SH   DEFINED      16,24                  4894        0       0
CINTAS CORP           COM           172908105     10      300 SH   DEFINED      7,11,33                   0        0     300
CINTAS CORP           COM           172908105   7863   233872 SH   DEFINED      16,24,25             205517        0   28354
CINTAS CORP           COM           172908105    163     4843 SH   DEFINED      32,40,41               4843        0       0
CITIGROUP INC         COM           172967101    324    11000 SH   DEFINED      12                        0        0   11000
CITIGROUP INC         COM           172967101    331    11250 SH   DEFINED      3,9                       0        0   11250
CITIGROUP INC         COM           172967101   7412   251756 SH   DEFINED      7,11                      0        0  251756
CITIGROUP INC         COM           172967101    125     4243 SH   DEFINED      7,11,13                3765        0     478
CITIGROUP INC         COM           172967101  21973   746366 SH   DEFINED      16,24,25             449002        0  297363
CITIGROUP INC         COM           172967101  31115  1056911 SH   DEFINED      32,40,41            1056911        0       0
CITIGROUP INC         COM           172967101 716823 24348594 SH   DEFINED      1,8,38,39                 0 24348594       0
CITIGROUP INC         COM           172967101   1127    38284 SH   DEFINED      5-7,11,43,44              0    38284       0
CITIGROUP INC         COM           172967101    582    19777 SH   DEFINED      16,19,24,26,27        19777        0       0
CITIGROUP INC         COM           172967101  23452   796600 SH   CALL DEFINED 16,24,25             796600        0       0
CITIGROUP INC         COM           172967101     59     2000 SH   PUT DEFINED  16,24,25               2000        0       0
CITIGROUP GLOBAL MKT  NOTE 3.00     17307JAA5   4230  4360500 PRN  DEFINED      16,24,25            4360500        0       0
CITIGROUP FDG INC     NOTE 1.00     17308CAT3   2105  2000000 PRN  DEFINED      16,24,25            2000000        0       0
CITIGROUP FDG INC     NOTE 0.50     17308CDA1   1175  1294000 PRN  DEFINED      16,24,25            1294000        0       0
CITIZENS REPUBLIC BA  COM           174420109     15     1033 SH   DEFINED      7,11,13                1033        0       0
CITIZENS REPUBLIC BA  COM           174420109   2853   196650 SH   DEFINED      16,24,25             175505        0   21145
CITIZENS COMMUNICATI  COM           17453B101    315    24714 SH   DEFINED      7,11                  24114        0     600
CITIZENS COMMUNICATI  COM           17453B101      3      200 SH   DEFINED      7,11,33                   0        0     200
CITIZENS COMMUNICATI  COM           17453B101      6      505 SH   DEFINED      7,11,33                   0        0     505
CITIZENS COMMUNICATI  COM           17453B101   7745   608433 SH   DEFINED      16,24,25             472082        0  136351
CITIZENS COMMUNICATI  COM           17453B101   7968   625945 SH   DEFINED      32,40,41             625945        0       0
CITIZENS COMMUNICATI  COM           17453B101     15     1200 SH   CALL DEFINED 15,16,24               1200        0       0
CITIZENS COMMUNICATI  COM           17453B101    108     8500 SH   PUT DEFINED  15,16,24               8500        0       0
CITIZENS UTILS TR     PFD EPPICS    17351J202    536     9501 SH   DEFINED      16,24,25               9501        0       0
CITRIX SYS INC        COM           177376100   1671    43952 SH   DEFINED      7,11                  43952        0       0
CITRIX SYS INC        COM           177376100     70     1850 SH   DEFINED      7,11,33                   0        0    1850
CITRIX SYS INC        COM           177376100  12482   328394 SH   DEFINED      16,24,25             232016        0   96378
CITRIX SYS INC        COM           177376100    266     6999 SH   DEFINED      32,40,41               6999        0       0
CITRIX SYS INC        COM           177376100   2045    53800 SH   CALL DEFINED 7,11                  53800        0       0
CITRIX SYS INC        COM           177376100   4090   107600 SH   CALL DEFINED 15,16,24             107600        0       0
CITRIX SYS INC        COM           177376100   4821   126800 SH   CALL DEFINED 16,24,25             126800        0       0
CITRIX SYS INC        COM           177376100   8206   215900 SH   PUT DEFINED  15,16,24             215900        0       0
```

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CITRIX SYS INC | COM | 177376100 | 487 | 12800 | SH | PUT DEFINED | 16,24,25 | 12800 | 0 | 0 |
| CITY NATL CORP | COM | 178566105 | 1 | 16 | SH | DEFINED | 3,9 | 0 | 0 | 16 |
| CITY NATL CORP | COM | 178566105 | 765 | 12838 | SH | DEFINED | 7,11 | 12838 | 0 | 0 |
| CITY NATL CORP | COM | 178566105 | 6102 | 102466 | SH | DEFINED | 16,24,25 | 88964 | 0 | 13502 |
| CITY NATL CORP | COM | 178566105 | 4194 | 70430 | SH | DEFINED | 16,19,24,26,27 | 70430 | 0 | 0 |
| CLARCOR INC | COM | 179895107 | 161 | 4250 | SH | DEFINED | 7,11 | 4250 | 0 | 0 |
| CLARCOR INC | COM | 179895107 | 360 | 9475 | SH | DEFINED | 7,11,13 | 9475 | 0 | 0 |
| CLARCOR INC | COM | 179895107 | 4 | 100 | SH | DEFINED | 7,11,13 | 0 | 0 | 100 |
| CLARCOR INC | COM | 179895107 | 643 | 16929 | SH | DEFINED | 16,24,25 | 12324 | 0 | 4605 |
| CLAYMONT STEEL HOLDI | COM | 18382P104 | 2966 | 127044 | SH | DEFINED | 16,24,25 | 127044 | 0 | 0 |
| CLAYMORE EXCHANGE TR BNY BRI&C | | 18383M100 | 161122 | 301961 | SH | DEFINED | 16,24,25 | 274195 | 0 | 27766 |
| CLAYMORE EXCHANGE TR SABRIENT I | | 18383M209 | 655 | 22393 | SH | DEFINED | 16,24,25 | 20762 | 0 | 1631 |
| CLAYMORE EXCHANGE TR SABRIENT S | | 18383M308 | 290 | 12657 | SH | DEFINED | 16,24,25 | 10982 | 0 | 1675 |
| CLAYMORE EXCHANGE TR ZACKS SECT | | 18383M407 | 1442 | 44657 | SH | DEFINED | 16,24,25 | 41162 | 0 | 3495 |
| CLAYMORE EXCHANGE TR ZACKS YLD | | 18383M506 | 595 | 25571 | SH | DEFINED | 16,24,25 | 24155 | 0 | 1416 |
| CLAYMORE ETF TRUST 2 S&P GBL WA | | 18383Q507 | 5517 | 213159 | SH | DEFINED | 16,24,25 | 188331 | 0 | 24828 |
| CLAYMORE ETF TRUST 2 SWM CDN EN | | 18383Q606 | 429 | 16680 | SH | DEFINED | 16,24,25 | 15295 | 0 | 1385 |
| CLAYMORE ETF TRUST 2 CL GLBL TI | | 18383Q879 | 1 | 49 | SH | DEFINED | 16,24 | 49 | 0 | 0 |
| CLAYMORE ETF TRUST 2 CL GLBL TI | | 18383Q879 | 619 | 25541 | SH | DEFINED | 16,24,25 | 23226 | 0 | 2315 |
| CLEAN HARBORS INC | COM | 184496107 | 112 | 2157 | SH | DEFINED | 7,11 | 2157 | 0 | 0 |
| CLEAN HARBORS INC | COM | 184496107 | 1405 | 27169 | SH | DEFINED | 16,24,25 | 23773 | 0 | 3396 |
| CLEAN ENERGY FUELS C | COM | 184499101 | 1239 | 81855 | SH | DEFINED | 16,24,25 | 70660 | 0 | 11195 |
| CLEAR CHANNEL COMMUN | COM | 184502102 | 2690 | 77917 | SH | DEFINED | 7,11 | 77917 | 0 | 0 |
| CLEAR CHANNEL COMMUN | COM | 184502102 | 155236 | 4497000 | SH | DEFINED | 16,24 | 4497000 | 0 | 0 |
| CLEAR CHANNEL COMMUN | COM | 184502102 | 201 | 5825 | SH | DEFINED | 7,11,13 | 5825 | 0 | 0 |
| CLEAR CHANNEL COMMUN | COM | 184502102 | 23433 | 678827 | SH | DEFINED | 15,16,24 | 678827 | 0 | 0 |
| CLEAR CHANNEL COMMUN | COM | 184502102 | 11015 | 319080 | SH | DEFINED | 16,24,25 | 293898 | 0 | 25182 |
| CLEAR CHANNEL COMMUN | COM | 184502102 | 550 | 15931 | SH | DEFINED | 32,40,41 | 15931 | 0 | 0 |
| CLEAR CHANNEL COMMUN | COM | 184502102 | 15441 | 447300 | SH | CALL DEFINED | 15,16,24 | 447300 | 0 | 0 |
| CLEAR CHANNEL COMMUN | COM | 184502102 | 22859 | 662200 | SH | PUT DEFINED | 15,16,24 | 662200 | 0 | 0 |
| CLEAR CHANNEL OUTDOO CL A | | 18451C109 | 13 | 475 | SH | DEFINED | 7,11 | 475 | 0 | 0 |
| CLEAR CHANNEL OUTDOO CL A | | 18451C109 | 712 | 25737 | SH | DEFINED | 16,24,25 | 21483 | 0 | 4254 |
| CLEVELAND BIOLABS IN | COM | 185860103 | 346 | 39263 | SH | DEFINED | 16,24,25 | 39263 | 0 | 0 |
| CLEVELAND CLIFFS INC | COM | 185896107 | 146 | 1450 | SH | DEFINED | 30 | 1450 | 0 | 0 |
| CLEVELAND CLIFFS INC | COM | 185896107 | 4453 | 44180 | SH | DEFINED | 7,11 | 44180 | 0 | 0 |
| CLEVELAND CLIFFS INC | COM | 185896107 | 28392 | 281668 | SH | DEFINED | 16,24,25 | 276406 | 0 | 5262 |
| CLEVELAND CLIFFS INC | COM | 185896107 | 1966 | 19500 | SH | DEFINED | 32,40,41 | 19500 | 0 | 0 |
| CLEVELAND CLIFFS INC | COM | 185896107 | 25576 | 253732 | SH | DEFINED | 7,11 | 253732 | 0 | 0 |
| CLEVELAND CLIFFS INC | COM | 185896107 | 56629 | 561800 | SH | CALL DEFINED | 15,16,24 | 561800 | 0 | 0 |
| CLEVELAND CLIFFS INC | COM | 185896107 | 31248 | 310000 | SH | PUT DEFINED | 15,16,24 | 310000 | 0 | 0 |
| CLEVELAND CLIFFS INC | COM | 185896107 | 25758 | 255532 | SH | PUT DEFINED | 16,24,25 | 255532 | 0 | 0 |
| CLINICAL DATA INC NE | COM | 18725U109 | 5766 | 151126 | SH | DEFINED | 16,24,25 | 151126 | 0 | 108032 |
| CLOROX CO DEL | COM | 189054109 | 47666 | 731403 | SH | DEFINED | 7,11 | 728403 | 0 | 3000 |
| CLOROX CO DEL | COM | 189054109 | 1342 | 20593 | SH | DEFINED | 7,11,13 | 20493 | 0 | 100 |
| CLOROX CO DEL | COM | 189054109 | 13886 | 213072 | SH | DEFINED | 16,24,25 | 196762 | 0 | 16310 |
| CLOROX CO DEL | COM | 189054109 | 326 | 5001 | SH | DEFINED | 32,40,41 | 5001 | 0 | 0 |
| CLOROX CO DEL | COM | 189054109 | 847 | 13000 | SH | CALL DEFINED | 15,16,24 | 13000 | 0 | 0 |
| CLOROX CO DEL | COM | 189054109 | 2476 | 38000 | SH | CALL DEFINED | 15,16,24 | 38000 | 0 | 0 |
| CLOROX CO DEL | COM | 189054109 | 541 | 8300 | SH | PUT DEFINED | 15,16,24 | 8300 | 0 | 0 |
| CLOUGH GLOBAL ALLOCA | COM SHS BE | 18913Y103 | 1844 | 86067 | SH | DEFINED | 16,24,25 | 79397 | 0 | 6670 |
| CLOUGH GLOBAL EQUITY | COM | 18914C100 | 1248 | 59455 | SH | DEFINED | 16,24,25 | 56029 | 0 | 3426 |
| CLOUGH GLOBAL OPPORT | SH BEN INT | 18914E106 | 2768 | 146156 | SH | DEFINED | 16,24,25 | 123079 | 0 | 23076 |
| COACH INC | COM | 189754104 | 1378 | 45074 | SH | DEFINED | 7,11 | 43158 | 0 | 1916 |
| COACH INC | COM | 189754104 | 18 | 579 | SH | DEFINED | 7,11,13 | 524 | 0 | 55 |
| COACH INC | COM | 189754104 | 1039 | 33969 | SH | DEFINED | 15,16,24 | 33969 | 0 | 0 |
| COACH INC | COM | 189754104 | 14428 | 471821 | SH | DEFINED | 16,24,25 | 397332 | 0 | 74489 |
| COACH INC | COM | 189754104 | 1929 | 63085 | SH | DEFINED | 32,40,41 | 63085 | 0 | 0 |
| COACH INC | COM | 189754104 | 205 | 6717 | SH | DEFINED | 16,19,24,26,27 | 6717 | 0 | 0 |
| COACH INC | COM | 189754104 | 11614 | 379800 | SH | CALL DEFINED | 15,16,24 | 379800 | 0 | 0 |
| COACH INC | COM | 189754104 | 410 | 13400 | SH | CALL DEFINED | 16,24,25 | 13400 | 0 | 0 |
| COACH INC | COM | 189754104 | 14198 | 464300 | SH | PUT DEFINED | 15,16,24 | 464300 | 0 | 0 |
| COACH INC | COM | 189754104 | 1254 | 41000 | SH | PUT DEFINED | 16,24,25 | 41000 | 0 | 0 |
| COACHMEN INDS INC | COM | 189873102 | 185 | 31050 | SH | DEFINED | 16,24,25 | 25550 | 0 | 5500 |
| COAST DISTR SYS | COM | 190345108 | 265 | 45047 | SH | DEFINED | 16,24,25 | 40875 | 0 | 4172 |
| COCA COLA BOTTLING C | COM | 191098102 | 285 | 4844 | SH | DEFINED | 7,11,13 | 4844 | 0 | 0 |
| COCA COLA BOTTLING C | COM | 191098102 | 108 | 1834 | SH | DEFINED | 16,24,25 | 1768 | 0 | 66 |
| COCA COLA HELLENIC B | SPONSORED | 1912EP104 | 1467 | 34227 | SH | DEFINED | 7,11 | 0 | 0 | 34227 |
| COCA COLA HELLENIC B | SPONSORED | 1912EP104 | 201 | 4698 | SH | DEFINED | 16,24,25 | 4373 | 0 | 325 |
| COCA COLA CO | COM | 191216100 | 245 | 4000 | SH | DEFINED | 12 | 0 | 0 | 4000 |
| COCA COLA CO | COM | 191216100 | 806 | 13140 | SH | DEFINED | 30 | 13140 | 0 | 0 |
| COCA COLA CO | COM | 191216100 | 3897 | 63493 | SH | DEFINED | 3,9 | 0 | 0 | 63493 |
| COCA COLA CO | COM | 191216100 | 207368 | 3378973 | SH | DEFINED | 7,11 | 2719174 | 0 | 659799 |
| COCA COLA CO | COM | 191216100 | 7844 | 127813 | SH | DEFINED | 7,11,13 | 124978 | 0 | 2835 |
| COCA COLA CO | COM | 191216100 | 993 | 16180 | SH | DEFINED | 7,11,13 | 0 | 0 | 16180 |
| COCA COLA CO | COM | 191216100 | 447497 | 7291782 | SH | DEFINED | 16,24,25 | 6464983 | 0 | 826798 |
| COCA COLA CO | COM | 191216100 | 34126 | 556066 | SH | DEFINED | 32,40,41 | 556066 | 0 | 0 |
| COCA COLA CO | COM | 191216100 | 983 | 16020 | SH | DEFINED | 5-7,11,43,44 | 0 | 16020 | 0 |
| COCA COLA CO | COM | 191216100 | 15950 | 259900 | SH | DEFINED | 16,19,24,26,27 | 259900 | 0 | 0 |
| COCA COLA CO | COM | 191216100 | 68337 | 1113517 | SH | CALL DEFINED | 7,11 | 1113517 | 0 | 0 |
| COCA COLA CO | COM | 191216100 | 100500 | 1637600 | SH | CALL DEFINED | 15,16,24 | 1637600 | 0 | 0 |
| COCA COLA CO | COM | 191216100 | 55632 | 906500 | SH | CALL DEFINED | 16,24,25 | 906500 | 0 | 0 |
| COCA COLA CO | COM | 191216100 | 61438 | 1001100 | SH | PUT DEFINED | 15,16,24 | 1001100 | 0 | 0 |
| COCA COLA CO | COM | 191216100 | 101013 | 1645966 | SH | PUT DEFINED | 16,24,25 | 1645966 | 0 | 0 |
| COCA COLA ENTERPRISE | COM | 191219104 | 1271 | 48813 | SH | DEFINED | 7,11 | 48813 | 0 | 0 |
| COCA COLA ENTERPRISE | COM | 191219104 | 644 | 24748 | SH | DEFINED | 7,11,13 | 24748 | 0 | 0 |
| COCA COLA ENTERPRISE | COM | 191219104 | 1970 | 75680 | SH | DEFINED | 16,24,25 | 75680 | 0 | 0 |
| COCA COLA ENTERPRISE | COM | 191219104 | 7944 | 305179 | SH | DEFINED | 16,24,25 | 273028 | 0 | 32151 |
| COCA COLA ENTERPRISE | COM | 191219104 | 97 | 3744 | SH | DEFINED | 32,40,41 | 3744 | 0 | 0 |
| COCA COLA ENTERPRISE | COM | 191219104 | 3085 | 118500 | SH | CALL DEFINED | 16,24,25 | 118500 | 0 | 0 |
| COCA COLA ENTERPRISE | COM | 191219104 | 1822 | 70000 | SH | CALL DEFINED | 16,24,25 | 70000 | 0 | 0 |
| COCA COLA ENTERPRISE | COM | 191219104 | 5388 | 207000 | SH | PUT DEFINED | 15,16,24 | 207000 | 0 | 0 |
| COCA COLA ENTERPRISE | COM | 191219104 | 1822 | 70000 | SH | PUT DEFINED | 16,24,25 | 70000 | 0 | 0 |
| COCA COLA FEMSA S A | SPON ADR R | 191241108 | 367 | 7440 | SH | DEFINED | 30 | 7440 | 0 | 0 |
| COCA COLA FEMSA S A | SPON ADR R | 191241108 | 2218 | 45000 | SH | DEFINED | 7,11 | 0 | 0 | 45000 |
| COCA COLA FEMSA S A | SPON ADR R | 191241108 | 2 | 40 | SH | DEFINED | 7,11,13 | 40 | 0 | 0 |
| COCA COLA FEMSA S A | SPON ADR R | 191241108 | 534 | 10829 | SH | DEFINED | 16,24,25 | 7097 | 0 | 3732 |
| COEUR D ALENE MINES | NOTE 1.25 | 192108AQ1 | 9 | 10000 | PRN | DEFINED | 16,24,25 | 10000 | 0 | 0 |
| COEUR D ALENE MINES | COM | 192108108 | 2976 | 602392 | SH | DEFINED | 7,11 | 602392 | 0 | 0 |
| COEUR D ALENE MINES | COM | 192108108 | 0 | 100 | SH | DEFINED | 16,24 | 100 | 0 | 0 |
| COEUR D ALENE MINES | COM | 192108108 | 2335 | 472701 | SH | DEFINED | 16,24 | 472701 | 0 | 0 |
| COEUR D ALENE MINES | COM | 192108108 | 683 | 138170 | SH | DEFINED | 16,24,25 | 126308 | 0 | 11861 |
| COEUR D ALENE MINES | COM | 192108108 | 77 | 15500 | SH | DEFINED | 5-7,11,43,44 | 0 | 15500 | 0 |
| COEUR D ALENE MINES | COM | 192108108 | 2057 | 416300 | SH | CALL DEFINED | 15,16,24 | 416300 | 0 | 0 |
| COEUR D ALENE MINES | COM | 192108108 | 2548 | 515755 | SH | CALL DEFINED | 16,24,25 | 515755 | 0 | 0 |
| COEUR D ALENE MINES | COM | 192108108 | 2543 | 514755 | SH | PUT DEFINED | 7,11 | 514755 | 0 | 0 |
| COEUR D ALENE MINES | COM | 192108108 | 3471 | 702700 | SH | PUT DEFINED | 15,16,24 | 702700 | 0 | 0 |
| COFFEE HLDGS INC | COM | 192176105 | 190 | 39145 | SH | DEFINED | 16,24,25 | 37145 | 0 | 2000 |
| COGENT COMM GROUP IN | COM NEW | 19239V302 | 25014 | 1055000 | SH | DEFINED | 16,24 | 1055000 | 0 | 0 |
| COGENT COMM GROUP IN | COM NEW | 19239V302 | 327 | 13779 | SH | DEFINED | 16,24,25 | 13676 | 0 | 103 |
| COGENT INC | COM | 19239Y108 | 9 | 765 | SH | DEFINED | 16,24 | 765 | 0 | 0 |
| COGENT INC | COM | 19239Y108 | 129 | 11581 | SH | DEFINED | 16,24,25 | 9904 | 0 | 1677 |
| COGENT INC | COM | 19239Y108 | 896 | 80400 | SH | CALL DEFINED | 15,16,24 | 80400 | 0 | 0 |
| COGENT INC | COM | 19239Y108 | 575 | 51600 | SH | PUT DEFINED | 15,16,24 | 51600 | 0 | 0 |

| Name | Class | CUSIP | Shares | Value | SH | Option/Defined | Codes | Val1 | Val2 | Val3 |
|---|---|---|---|---|---|---|---|---|---|---|
| COGNEX CORP | COM | 192422103 | 986 | 48950 | SH | DEFINED | 7,11,13 | 47450 | 0 | 1500 |
| COGNEX CORP | COM | 192422103 | 544 | 26985 | SH | DEFINED | 16,24,25 | 24385 | 0 | 2600 |
| COGNOS INC | COM | 19244C109 | 3317 | 57610 | SH | DEFINED | 7,11 | 57610 | 0 | 0 |
| COGNOS INC | COM | 19244C109 | 2634 | 45755 | SH | DEFINED | 16,24,25 | 45602 | 0 | 153 |
| COGNOS INC | COM | 19244C109 | 138 | 2400 | SH | DEFINED | 32,40,41 | 2400 | 0 | 0 |
| COGNOS INC | COM | 19244C109 | 317 | 5515 | SH | DEFINED | 4,6,7,11 | 5515 | 0 | 0 |
| COGNOS INC | COM | 19244C109 | 565 | 9814 | SH | DEFINED | 16,19,24,26,27 | 9814 | 0 | 0 |
| COGNOS INC | COM | 19244C109 | 52901 | 918900 | SH | CALL DEFINED | 15,16,24 | 918900 | 0 | 0 |
| COGNOS INC | COM | 19244C109 | 242 | 4200 | SH | CALL DEFINED | 16,24,25 | 4200 | 0 | 0 |
| COGNOS INC | COM | 19244C109 | 9332 | 162100 | SH | PUT DEFINED | 15,16,24 | 162100 | 0 | 0 |
| COGNOS INC | COM | 19244C109 | 317 | 5500 | SH | PUT DEFINED | 16,24,25 | 5500 | 0 | 0 |
| COGNIZANT TECHNOLOGY | CL A | 192446102 | 1043 | 30720 | SH | DEFINED | 30 | 30720 | 0 | 0 |
| COGNIZANT TECHNOLOGY | CL A | 192446102 | 1450 | 42709 | SH | DEFINED | 7,11 | 42309 | 0 | 400 |
| COGNIZANT TECHNOLOGY | CL A | 192446102 | 274 | 8063 | SH | DEFINED | 16,24 | 8063 | 0 | 0 |
| COGNIZANT TECHNOLOGY | CL A | 192446102 | 531 | 15650 | SH | DEFINED | 7,11,33 | 0 | 0 | 15650 |
| COGNIZANT TECHNOLOGY | CL A | 192446102 | 77665 | 2288299 | SH | DEFINED | 16,24,25 | 1894017 | 0 | 394282 |
| COGNIZANT TECHNOLOGY | CL A | 192446102 | 7484 | 220520 | SH | DEFINED | 32,40,41 | 220520 | 0 | 0 |
| COGNIZANT TECHNOLOGY | CL A | 192446102 | 8549 | 251900 | SH | CALL DEFINED | 15,16,24 | 251900 | 0 | 0 |
| COGNIZANT TECHNOLOGY | CL A | 192446102 | 3733 | 110000 | SH | CALL DEFINED | 16,24,25 | 110000 | 0 | 0 |
| COGNIZANT TECHNOLOGY | CL A | 192446102 | 11445 | 337200 | SH | PUT DEFINED | 15,16,24 | 337200 | 0 | 0 |
| COGNIZANT TECHNOLOGY | CL A | 192446102 | 255 | 7500 | SH | PUT DEFINED | 16,24,25 | 7500 | 0 | 0 |
| COHEN & STEERS QUALI | COM | 19247L106 | 41 | 2815 | SH | DEFINED | 7,11,13 | 2815 | 0 | 0 |
| COHEN & STEERS QUALI | COM | 19247L106 | 1533 | 105574 | SH | DEFINED | 16,24,25 | 57968 | 0 | 47605 |
| COHEN & STEERS TOTAL | COM | 19247R103 | 458 | 34750 | SH | DEFINED | 7,11,13 | 33550 | 0 | 1200 |
| COHEN & STEERS TOTAL | COM | 19247R103 | 105 | 7958 | SH | DEFINED | 16,24,25 | 6178 | 0 | 1780 |
| COHEN & STEERS PREM | COM | 19247V104 | 67 | 4550 | SH | DEFINED | 7,11,13 | 3150 | 0 | 1400 |
| COHEN & STEERS PREM | COM | 19247V104 | 948 | 64430 | SH | DEFINED | 16,24,25 | 42527 | 0 | 21902 |
| COHEN & STEERS ADV I | COM | 19247W102 | 99 | 6772 | SH | DEFINED | 7,11,13 | 5765 | 0 | 1007 |
| COHEN & STEERS ADV I | COM | 19247W102 | 2528 | 172799 | SH | DEFINED | 16,24,25 | 141532 | 0 | 31267 |
| COHEN & STEERS REIT | COM | 19247X100 | 1849 | 97831 | SH | DEFINED | 16,24,25 | 66422 | 0 | 31409 |
| COHEN & STEERS REIT | COM | 19247Y108 | 37 | 1851 | SH | DEFINED | 7,11,13 | 1851 | 0 | 0 |
| COHEN & STEERS REIT | COM | 19247Y108 | 13094 | 651137 | SH | DEFINED | 16,24,25 | 570289 | 0 | 80847 |
| COHERENT INC | COM | 19247J103 | 828 | 33030 | SH | DEFINED | 16,24,25 | 32630 | 0 | 400 |
| COHEN & STEERS SELEC | COM | 19248A109 | 4503 | 163762 | SH | DEFINED | 7,11,13 | 162687 | 0 | 1075 |
| COHEN & STEERS SELEC | COM | 19248A109 | 16710 | 607653 | SH | DEFINED | 16,24,25 | 587326 | 0 | 20327 |
| COHEN & STEERS SELEC | COM | 19248A109 | 382 | 13900 | SH | DEFINED | 16,19,24,26,27 | 13900 | 0 | 0 |
| COHEN & STEERS WRLDW | COM | 19248J100 | 2033 | 127083 | SH | DEFINED | 16,24,25 | 105698 | 0 | 21385 |
| COHEN & STEERS CLOSE | COM | 19248P106 | 1739 | 108912 | SH | DEFINED | 16,24,25 | 101702 | 0 | 7210 |
| COINSTAR INC | COM | 19259P300 | 104 | 3700 | SH | DEFINED | 30 | 3700 | 0 | 0 |
| COINSTAR INC | COM | 19259P300 | 886 | 31458 | SH | DEFINED | 15,16,24 | 31458 | 0 | 0 |
| COINSTAR INC | COM | 19259P300 | 109 | 3868 | SH | DEFINED | 16,24,25 | 2689 | 0 | 1179 |
| COINSTAR INC | COM | 19259P300 | 794 | 28200 | SH | CALL DEFINED | 15,16,24 | 28200 | 0 | 0 |
| COINSTAR INC | COM | 19259P300 | 363 | 12900 | SH | PUT DEFINED | 15,16,24 | 12900 | 0 | 0 |
| COLDWATER CREEK INC | COM | 193068103 | 5 | 744 | SH | DEFINED | 7,11 | 744 | 0 | 0 |
| COLDWATER CREEK INC | COM | 193068103 | 5 | 773 | SH | DEFINED | 16,24 | 773 | 0 | 0 |
| COLDWATER CREEK INC | COM | 193068103 | 359 | 53642 | SH | DEFINED | 15,16,24 | 53642 | 0 | 0 |
| COLDWATER CREEK INC | COM | 193068103 | 187 | 27933 | SH | DEFINED | 16,24,25 | 26033 | 0 | 1900 |
| COLDWATER CREEK INC | COM | 193068103 | 982 | 146800 | SH | CALL DEFINED | 15,16,24 | 146800 | 0 | 0 |
| COLDWATER CREEK INC | COM | 193068103 | 74 | 11000 | SH | CALL DEFINED | 16,24,25 | 11000 | 0 | 0 |
| COLDWATER CREEK INC | COM | 193068103 | 896 | 133900 | SH | PUT DEFINED | 15,16,24 | 133900 | 0 | 0 |
| COLGATE PALMOLIVE CO | COM | 194162103 | 312 | 4000 | SH | DEFINED | 12 | 0 | 0 | 4000 |
| COLGATE PALMOLIVE CO | COM | 194162103 | 15230 | 195363 | SH | DEFINED | 7,11 | 141542 | 200 | 53621 |
| COLGATE PALMOLIVE CO | COM | 194162103 | 3 | 40 | SH | DEFINED | 16,24 | 40 | 0 | 0 |
| COLGATE PALMOLIVE CO | COM | 194162103 | 4646 | 59593 | SH | DEFINED | 7,11,13 | 59118 | 0 | 475 |
| COLGATE PALMOLIVE CO | COM | 194162103 | 264 | 3383 | SH | DEFINED | 7,11,33 | 0 | 0 | 3383 |
| COLGATE PALMOLIVE CO | COM | 194162103 | 3260 | 41819 | SH | DEFINED | 15,16,24 | 41819 | 0 | 0 |
| COLGATE PALMOLIVE CO | COM | 194162103 | 64195 | 823440 | SH | DEFINED | 16,24,25 | 646729 | 0 | 176710 |
| COLGATE PALMOLIVE CO | COM | 194162103 | 1576 | 20221 | SH | DEFINED | 32,40,41 | 20221 | 0 | 0 |
| COLGATE PALMOLIVE CO | COM | 194162103 | 1529 | 19615 | SH | DEFINED | 5-7,11,43,44 | 0 | 19615 | 0 |
| COLGATE PALMOLIVE CO | COM | 194162103 | 676 | 8666 | SH | DEFINED | 16,19,24,26,27 | 8666 | 0 | 0 |
| COLGATE PALMOLIVE CO | COM | 194162103 | 2624 | 33662 | SH | CALL DEFINED | 7,11 | 33662 | 0 | 0 |
| COLGATE PALMOLIVE CO | COM | 194162103 | 8895 | 114100 | SH | CALL DEFINED | 15,16,24 | 114100 | 0 | 0 |
| COLGATE PALMOLIVE CO | COM | 194162103 | 842 | 10800 | SH | CALL DEFINED | 16,24,25 | 10800 | 0 | 0 |
| COLGATE PALMOLIVE CO | COM | 194162103 | 16387 | 210200 | SH | PUT DEFINED | 15,16,24 | 210200 | 0 | 0 |
| COLGATE PALMOLIVE CO | COM | 194162103 | 7497 | 96162 | SH | PUT DEFINED | 16,24,25 | 96162 | 0 | 0 |
| COLLECTIVE BRANDS IN | COM | 19421W100 | 25 | 1440 | SH | DEFINED | 7,11 | 0 | 0 | 1440 |
| COLLECTIVE BRANDS IN | COM | 19421W100 | 804 | 46214 | SH | DEFINED | 15,16,24 | 46214 | 0 | 0 |
| COLLECTIVE BRANDS IN | COM | 19421W100 | 965 | 55513 | SH | DEFINED | 16,24,25 | 55069 | 0 | 444 |
| COLLECTIVE BRANDS IN | COM | 19421W100 | 311 | 17900 | SH | CALL DEFINED | 15,16,24 | 17900 | 0 | 0 |
| COLLECTIVE BRANDS IN | COM | 19421W100 | 1163 | 66900 | SH | PUT DEFINED | 15,16,24 | 66900 | 0 | 0 |
| COLONIAL BANCGROUP I | COM | 195493309 | 159 | 11734 | SH | DEFINED | 7,11 | 7368 | 0 | 4366 |
| COLONIAL BANCGROUP I | COM | 195493309 | 710 | 52433 | SH | DEFINED | 16,24,25 | 50488 | 0 | 1945 |
| COLONIAL BANCGROUP I | COM | 195493309 | 102 | 7501 | SH | DEFINED | 32,40,41 | 7501 | 0 | 0 |
| COLONIAL PPTYS TR | COM SH BEN | 195872106 | 2576 | 113809 | SH | DEFINED | 16,24,25 | 109547 | 0 | 4262 |
| COLONIAL PPTYS TR | COM SH BEN | 195872106 | 521 | 23030 | SH | DEFINED | 32,40,41 | 23030 | 0 | 0 |
| COLUMBIA SPORTSWEAR | COM | 198516106 | 9 | 200 | SH | DEFINED | 12 | 0 | 0 | 200 |
| COLUMBIA SPORTSWEAR | COM | 198516106 | 64 | 1460 | SH | DEFINED | 30 | 1460 | 0 | 0 |
| COLUMBIA SPORTSWEAR | COM | 198516106 | 9 | 211 | SH | DEFINED | 7,11 | 0 | 0 | 211 |
| COLUMBIA SPORTSWEAR | COM | 198516106 | 2 | 50 | SH | DEFINED | 7,11,13 | 50 | 0 | 0 |
| COLUMBIA SPORTSWEAR | COM | 198516106 | 753 | 17083 | SH | DEFINED | 16,24,25 | 13217 | 0 | 3866 |
| COLUMBUS MCKINNON CO | COM | 199333105 | 640 | 19605 | SH | DEFINED | 16,24,25 | 19605 | 0 | 0 |
| COLUMBUS MCKINNON CO | COM | 199333105 | 1142 | 35000 | SH | CALL DEFINED | 16,24,25 | 35000 | 0 | 0 |
| COMFORT SYS USA INC | COM | 199908104 | 295 | 23100 | SH | DEFINED | 16,24,25 | 23100 | 0 | 0 |
| COMCAST CORP NEW | CL A | 20030N101 | 10 | 550 | SH | DEFINED | 12 | 0 | 0 | 550 |
| COMCAST CORP NEW | CL A | 20030N101 | 45325 | 2482212 | SH | DEFINED | 7,11 | 2367572 | 0 | 114640 |
| COMCAST CORP NEW | CL A | 20030N101 | 167 | 9133 | SH | DEFINED | 7,11,13 | 8883 | 0 | 250 |
| COMCAST CORP NEW | CL A | 20030N101 | 10 | 562 | SH | DEFINED | 7,11,33 | 0 | 0 | 562 |
| COMCAST CORP NEW | CL A | 20030N101 | 369258 | 20222249 | SH | DEFINED | 16,24,25 | 19961176 | 0 | 261073 |
| COMCAST CORP NEW | CL A | 20030N101 | 3806 | 208437 | SH | DEFINED | 32,40,41 | 208437 | 0 | 0 |
| COMCAST CORP NEW | CL A | 20030N101 | 37 | 2002 | SH | DEFINED | 16,19,24,26,27 | 2002 | 0 | 0 |
| COMCAST CORP NEW | CL A | 20030N101 | 14951 | 818800 | SH | CALL DEFINED | 15,16,24 | 818800 | 0 | 0 |
| COMCAST CORP NEW | CL A | 20030N101 | 9818 | 537700 | SH | CALL DEFINED | 16,24,25 | 537700 | 0 | 0 |
| COMCAST CORP NEW | CL A | 20030N101 | 6101 | 334100 | SH | PUT DEFINED | 15,16,24 | 334100 | 0 | 0 |
| COMCAST CORP NEW | CL A | 20030N101 | 2038 | 111600 | SH | PUT DEFINED | 16,24,25 | 111600 | 0 | 0 |
| COMCAST CORP NEW | CL A SPL | 20030N200 | 13 | 706 | SH | DEFINED | 3,9 | 0 | 0 | 706 |
| COMCAST CORP NEW | CL A SPL | 20030N200 | 19892 | 1097779 | SH | DEFINED | 7,11 | 1086154 | 0 | 11625 |
| COMCAST CORP NEW | CL A SPL | 20030N200 | 474 | 26182 | SH | DEFINED | 7,11,13 | 26182 | 0 | 0 |
| COMCAST CORP NEW | CL A SPL | 20030N200 | 130 | 7160 | SH | DEFINED | 7,11,33 | 0 | 0 | 7160 |
| COMCAST CORP NEW | CL A SPL | 20030N200 | 165681 | 9143550 | SH | DEFINED | 16,24,25 | 8448571 | 0 | 694979 |
| COMCAST CORP NEW | CL A SPL | 20030N200 | 515 | 28428 | SH | DEFINED | 32,40,41 | 28428 | 0 | 0 |
| COMCAST CORP NEW | CL A SPL | 20030N200 | 23 | 1284 | SH | DEFINED | 16,19,24,26,27 | 1284 | 0 | 0 |
| COMCAST CORP NEW | CL A SPL | 20030N200 | 13228 | 730000 | SH | DEFINED | 7,11 | 730000 | 0 | 0 |
| COMCAST CORP NEW | CL A SPL | 20030N200 | 18991 | 1048050 | SH | CALL DEFINED | 15,16,24 | 1048050 | 0 | 0 |
| COMCAST CORP NEW | CL A SPL | 20030N200 | 46580 | 2570650 | SH | CALL DEFINED | 16,24,25 | 2570650 | 0 | 0 |
| COMCAST CORP NEW | CL A SPL | 20030N200 | 13992 | 772200 | SH | PUT DEFINED | 7,11 | 772200 | 0 | 0 |
| COMCAST CORP NEW | CL A SPL | 20030N200 | 2246 | 123950 | SH | PUT DEFINED | 15,16,24 | 123950 | 0 | 0 |
| COMCAST CORP NEW | CL A SPL | 20030N200 | 1812 | 100000 | SH | PUT DEFINED | 16,24,25 | 100000 | 0 | 0 |
| COMCAST HOLDINGS COR | ZONES CV2% | 200300507 | 28085 | 702124 | SH | DEFINED | 16,24 | 702124 | 0 | 0 |
| COMCAST HOLDINGS COR | ZONES CV2% | 200300507 | 72811 | 1820280 | SH | DEFINED | 16,24,25 | 1820280 | 0 | 0 |
| COMERICA INC | COM | 200340107 | 5233 | 120215 | SH | DEFINED | 7,11 | 99815 | 0 | 20400 |
| COMERICA INC | COM | 200340107 | 3866 | 88804 | SH | DEFINED | 16,24,25 | 41633 | 0 | 47171 |
| COMERICA INC | COM | 200340107 | 223 | 5124 | SH | DEFINED | 32,40,41 | 5124 | 0 | 0 |
| COMERICA INC | COM | 200340107 | 940 | 21600 | SH | DEFINED | 16,19,24,26,27 | 21600 | 0 | 0 |
| COMERICA INC | COM | 200340107 | 3328 | 76461 | SH | CALL DEFINED | 16,24,25 | 76461 | 0 | 0 |

| Name | Type | CUSIP | Qty | Value | | | | Codes | Value2 | | Value3 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| COMERICA INC | COM | 200340107 | 3328 | 76461 | SH | PUT | DEFINED | 7,11 | 76461 | 0 | 0 |
| COMERICA INC | COM | 200340107 | 2177 | 50000 | SH | PUT | DEFINED | 16,24,25 | 50000 | 0 | 0 |
| COMMERCE BANCORP INC | COM | 200519106 | 1473 | 38628 | SH | | DEFINED | 7,11 | 38628 | 0 | 0 |
| COMMERCE BANCORP INC | COM | 200519106 | 260537 | 6831060 | SH | | DEFINED | 16,24 | 6831060 | 0 | 0 |
| COMMERCE BANCORP INC | COM | 200519106 | 1326 | 34778 | SH | | DEFINED | 7,11,13 | 34778 | 0 | 0 |
| COMMERCE BANCORP INC | COM | 200519106 | 30662 | 803945 | SH | | DEFINED | 16,24,25 | 798921 | 0 | 5024 |
| COMMERCE BANCORP INC | COM | 200519106 | 232 | 6092 | SH | | DEFINED | 32,40,41 | 6092 | 0 | 0 |
| COMMERCE BANCORP INC | COM | 200519106 | 11415 | 299300 | SH | CALL | DEFINED | 15,16,24 | 299300 | 0 | 0 |
| COMMERCE BANCORP INC | COM | 200519106 | 3075 | 80627 | SH | CALL | DEFINED | 16,24,25 | 80627 | 0 | 0 |
| COMMERCE BANCORP INC | COM | 200519106 | 12731 | 333800 | SH | PUT | DEFINED | 15,16,24 | 333800 | 0 | 0 |
| COMMERCE BANCORP INC | COM | 200519106 | 473 | 12400 | SH | PUT | DEFINED | 16,24,25 | 12400 | 0 | 0 |
| COMMERCE BANCSHARES | COM | 200525103 | 156 | 3472 | SH | | DEFINED | 7,11 | 3472 | 0 | 0 |
| COMMERCE BANCSHARES | COM | 200525103 | 676 | 15074 | SH | | DEFINED | 16,24,25 | 11040 | 0 | 4034 |
| COMMERCE BANCSHARES | COM | 200525103 | 4089 | 91140 | SH | CALL | DEFINED | 16,24,25 | 91140 | 0 | 0 |
| COMMERCE GROUP INC M | COM | 200641108 | 648 | 18016 | SH | | DEFINED | 16,24,25 | 16980 | 0 | 1036 |
| COMMERCIAL METALS CO | COM | 201723103 | 68 | 2300 | SH | | DEFINED | 30 | 2300 | 0 | 0 |
| COMMERCIAL METALS CO | COM | 201723103 | 9 | 300 | SH | | DEFINED | 7,11 | 0 | 0 | 300 |
| COMMERCIAL METALS CO | COM | 201723103 | 4337 | 147265 | SH | | DEFINED | 16,24,25 | 119838 | 0 | 27427 |
| COMMERCIAL METALS CO | COM | 201723103 | 1048 | 35600 | SH | CALL | DEFINED | 15,16,24 | 35600 | 0 | 0 |
| COMMERCIAL METALS CO | COM | 201723103 | 468 | 15900 | SH | PUT | DEFINED | 15,16,24 | 15900 | 0 | 0 |
| COMMSCOPE INC | COM | 203372107 | 118 | 2400 | SH | | DEFINED | 30 | 2400 | 0 | 0 |
| COMMSCOPE INC | COM | 203372107 | 4206 | 85468 | SH | | DEFINED | 7,11 | 85468 | 0 | 0 |
| COMMSCOPE INC | COM | 203372107 | 797 | 16188 | SH | | DEFINED | 31,45 | 16188 | 0 | 0 |
| COMMSCOPE INC | COM | 203372107 | 25 | 500 | SH | | DEFINED | 7,11,13 | 500 | 0 | 0 |
| COMMSCOPE INC | COM | 203372107 | 708 | 14379 | SH | | DEFINED | 16,24,25 | 11870 | 0 | 2509 |
| COMMSCOPE INC | COM | 203372107 | 887 | 18020 | SH | | DEFINED | 32,40,41 | 18020 | 0 | 0 |
| COMMSCOPE INC | COM | 203372107 | 620 | 12600 | SH | CALL | DEFINED | 15,16,24 | 12600 | 0 | 0 |
| COMMSCOPE INC | COM | 203372107 | 207 | 4200 | SH | PUT | DEFINED | 15,16,24 | 4200 | 0 | 0 |
| COMMSCOPE INC | COM | 203372107 | 1107 | 22500 | SH | PUT | DEFINED | 16,24,25 | 22500 | 0 | 0 |
| COMMUNITY BK SYS INC | COM | 203607106 | 332 | 16702 | SH | | DEFINED | 16,24,25 | 8850 | 0 | 7852 |
| COMMUNITY FINL CORP | | 20365L100 | 218 | 24300 | SH | | DEFINED | 16,24,25 | 20700 | 0 | 3600 |
| COMMUNITY HEALTH SYS | | 203668108 | 174 | 4711 | SH | | DEFINED | 7,11 | 4711 | 0 | 0 |
| COMMUNITY HEALTH SYS | | 203668108 | 1470 | 39885 | SH | | DEFINED | 16,24,25 | 27363 | 0 | 12522 |
| COMMUNITY HEALTH SYS | | 203668108 | 800 | 21700 | SH | CALL | DEFINED | 16,24,25 | 21700 | 0 | 0 |
| COMMUNITY HEALTH SYS | | 203668108 | 1500 | 40700 | SH | PUT | DEFINED | 16,24,25 | 40700 | 0 | 0 |
| COMMUNITY PARTNERS B | | 204018105 | 261 | 26142 | SH | | DEFINED | 16,24,25 | 20354 | 0 | 5788 |
| COMMVAULT SYSTEMS IN | COM | 204166102 | 309 | 14600 | SH | | DEFINED | 30 | 14600 | 0 | 0 |
| COMMVAULT SYSTEMS IN | COM | 204166102 | 2 | 100 | SH | | DEFINED | 16,24,25 | 100 | 0 | 0 |
| CGG VERITAS | SPONSORED | 204386106 | 664 | 11847 | SH | | DEFINED | 16,24,25 | 8878 | 0 | 2969 |
| COMPANHIA BRASILEIRA | SPON ADR P | 20440T201 | 204 | 5514 | SH | | DEFINED | 7,11 | 5514 | 0 | 0 |
| COMPANHIA BRASILEIRA | SPON ADR P | 20440T201 | 4 | 100 | SH | | DEFINED | 16,24,25 | 0 | 0 | 100 |
| COMPANHIA BRASILEIRA | SPON ADR P | 20440T201 | 44 | 1190 | SH | | DEFINED | 32,40,41 | 1190 | 0 | 0 |
| COMPANHIA SIDERURGIC | SPONSORED | 20440W105 | 262 | 2930 | SH | | DEFINED | 30 | 2930 | 0 | 0 |
| COMPANHIA SIDERURGIC | SPONSORED | 20440W105 | 1214 | 13557 | SH | | DEFINED | 16,24,25 | 11901 | 0 | 1656 |
| COMPANHIA SIDERURGIC | SPONSORED | 20440W105 | 8236 | 91955 | SH | | DEFINED | 32,40,41 | 91955 | 0 | 0 |
| COMPANHIA SIDERURGIC | SPONSORED | 20440W105 | 761 | 8501 | SH | | DEFINED | 16,19,24,26,27 | 8501 | 0 | 0 |
| COMPANHIA SIDERURGIC | SPONSORED | 20440W105 | 1747 | 19500 | SH | CALL | DEFINED | 15,16,24 | 19500 | 0 | 0 |
| COMPANHIA SIDERURGIC | SPONSORED | 20440W105 | 1209 | 13500 | SH | PUT | DEFINED | 15,16,24 | 13500 | 0 | 0 |
| COMPANHIA ENERGETICA | SP ADR N-V | 204409601 | 610 | 33057 | SH | | DEFINED | 7,11 | 33057 | 0 | 0 |
| COMPANHIA ENERGETICA | SP ADR N-V | 204409601 | 313 | 16969 | SH | | DEFINED | 16,24,25 | 14170 | 0 | 2799 |
| COMPANHIA ENERGETICA | SP ADR N-V | 204409601 | 27084 | 1467178 | SH | | DEFINED | 32,40,41 | 1467178 | 0 | 0 |
| COMPANHIA ENERGETICA | SP ADR N-V | 204409601 | 244 | 13213 | SH | | DEFINED | 16,19,24,26,27 | 13213 | 0 | 0 |
| COMPANHIA DE SANEAME | SPONSORED | 20441A102 | 2901 | 61717 | SH | | DEFINED | 7,11 | 61717 | 0 | 0 |
| COMPANHIA DE SANEAME | SPONSORED | 20441A102 | 39 | 826 | SH | | DEFINED | 7,11,13 | 696 | 0 | 130 |
| COMPANHIA DE SANEAME | SPONSORED | 20441A102 | 303 | 6455 | SH | | DEFINED | 16,24,25 | 5205 | 0 | 1250 |
| COMPANHIA DE SANEAME | SPONSORED | 20441A102 | 869 | 18480 | SH | | DEFINED | 32,40,41 | 18480 | 0 | 0 |
| COMPANHIA DE SANEAME | SPONSORED | 20441A102 | 244 | 5200 | SH | | DEFINED | 16,19,24,26,27 | 5200 | 0 | 0 |
| COMPANHIA PARANAENSE | SPON ADR P | 20441B407 | 477 | 31629 | SH | | DEFINED | 7,11 | 28905 | 0 | 2724 |
| COMPANHIA PARANAENSE | SPON ADR P | 20441B407 | 34 | 2275 | SH | | DEFINED | 32,40,41 | 2275 | 0 | 0 |
| COMPANHIA PARANAENSE | SPON ADR P | 20441B407 | 3 | 200 | SH | | DEFINED | 16,19,24,26,27 | 200 | 0 | 0 |
| COMPANHIA DE BEBIDAS | SPON ADR P | 20441W203 | 1472 | 20718 | SH | | DEFINED | 7,11 | 20718 | 0 | 0 |
| COMPANHIA DE BEBIDAS | SPON ADR P | 20441W203 | 2381 | 33519 | SH | | DEFINED | 16,24,25 | 26241 | 0 | 7278 |
| COMPANHIA DE BEBIDAS | SPON ADR P | 20441W203 | 14081 | 198240 | SH | | DEFINED | 32,40,41 | 198240 | 0 | 0 |
| COMPANHIA DE BEBIDAS | SPON ADR P | 20441W203 | 752 | 10592 | SH | | DEFINED | 16,19,24,26,27 | 10592 | 0 | 0 |
| COMPANHIA VALE DO RI | SPON ADR P | 204412100 | 523 | 18700 | SH | | DEFINED | 30 | 18700 | 0 | 0 |
| COMPANHIA VALE DO RI | SPON ADR P | 204412100 | 1354 | 48379 | SH | | DEFINED | 7,11 | 48379 | 0 | 0 |
| COMPANHIA VALE DO RI | SPON ADR P | 204412100 | 7209 | 257647 | SH | | DEFINED | 16,24,25 | 257547 | 0 | 100 |
| COMPANHIA VALE DO RI | SPON ADR P | 204412100 | 103178 | 3687549 | SH | | DEFINED | 32,40,41 | 3687549 | 0 | 0 |
| COMPANHIA VALE DO RI | SPON ADR P | 204412100 | 67 | 2400 | SH | | DEFINED | 16,19,24,26,27 | 2400 | 0 | 0 |
| COMPANHIA VALE DO RI | SPONSORED | 204412209 | 1715 | 52492 | SH | | DEFINED | 7,11 | 50992 | 0 | 1500 |
| COMPANHIA VALE DO RI | SPONSORED | 204412209 | 29 | 896 | SH | | DEFINED | 7,11,13 | 756 | 0 | 140 |
| COMPANHIA VALE DO RI | SPONSORED | 204412209 | 31 | 950 | SH | | DEFINED | 7,11,33 | 0 | 0 | 950 |
| COMPANHIA VALE DO RI | SPONSORED | 204412209 | 10966 | 335652 | SH | | DEFINED | 15,16,24 | 335652 | 0 | 0 |
| COMPANHIA VALE DO RI | SPONSORED | 204412209 | 30737 | 940836 | SH | | DEFINED | 16,24,25 | 762552 | 0 | 178283 |
| COMPANHIA VALE DO RI | SPONSORED | 204412209 | 8295 | 253900 | SH | | DEFINED | 32,40,41 | 253900 | 0 | 0 |
| COMPANHIA VALE DO RI | SPONSORED | 204412209 | 595 | 18200 | SH | | DEFINED | 5-7,11,43,44 | 0 | 18200 | 0 |
| COMPANHIA VALE DO RI | SPONSORED | 204412209 | 9724 | 297631 | SH | | DEFINED | 16,19,24,26,27 | 297631 | 0 | 0 |
| COMPANHIA VALE DO RI | SPONSORED | 204412209 | 2189 | 67000 | SH | | DEFINED | 2,6,7,10-11,18,20,21,28 | 67000 | 0 | 0 |
| COMPANHIA VALE DO RI | SPONSORED | 204412209 | 83266 | 2548700 | SH | CALL | DEFINED | 15,16,24 | 2548700 | 0 | 0 |
| COMPANHIA VALE DO RI | SPONSORED | 204412209 | 124 | 3800 | SH | CALL | DEFINED | 16,24,25 | 3800 | 0 | 0 |
| COMPANHIA VALE DO RI | SPONSORED | 204412209 | 71034 | 2174300 | SH | PUT | DEFINED | 15,16,24 | 2174300 | 0 | 0 |
| COMPANHIA VALE DO RI | SPONSORED | 204412209 | 6697 | 205000 | SH | PUT | DEFINED | 16,24,25 | 205000 | 0 | 0 |
| COMPANIA DE MINAS BU | SPONSORED | 204448104 | 758 | 13400 | SH | | DEFINED | 30 | 13400 | 0 | 0 |
| COMPANIA DE MINAS BU | SPONSORED | 204448104 | 1735 | 30647 | SH | | DEFINED | 7,11 | 30647 | 0 | 0 |
| COMPANIA DE MINAS BU | SPONSORED | 204448104 | 4 | 67 | SH | | DEFINED | 7,11,13 | 67 | 0 | 0 |
| COMPANIA DE MINAS BU | SPONSORED | 204448104 | 1054 | 18619 | SH | | DEFINED | 16,24,25 | 17919 | 0 | 700 |
| COMPANIA DE MINAS BU | SPONSORED | 204448104 | 132 | 2325 | SH | | DEFINED | 32,40,41 | 2325 | 0 | 0 |
| COMPANIA DE TELECOMU | SPON ADR N | 204449300 | 321 | 43025 | SH | | DEFINED | 7,11,13 | 43025 | 0 | 0 |
| COMPANIA DE TELECOMU | SPON ADR N | 204449300 | 19 | 2583 | SH | | DEFINED | 16,24,25 | 2382 | 0 | 201 |
| COMPANIA DE TELECOMU | SPON ADR N | 204449300 | 18 | 2405 | SH | | DEFINED | 32,40,41 | 2405 | 0 | 0 |
| COMPASS MINERALS INT | COM | 20451N101 | 1414 | 34477 | SH | | DEFINED | 16,24,25 | 31659 | 0 | 2817 |
| COMPASS DIVERSIFIED | SH BEN INT | 20451Q104 | 45 | 3039 | SH | | DEFINED | 7,11 | 3039 | 0 | 0 |
| COMPASS DIVERSIFIED | SH BEN INT | 20451Q104 | 1097 | 73644 | SH | | DEFINED | 16,24,25 | 71734 | 0 | 1910 |
| COMPLETE PRODUCTION | COM | 20453E109 | 160 | 8900 | SH | | DEFINED | 30 | 8900 | 0 | 0 |
| COMPLETE PRODUCTION | COM | 20453E109 | 35 | 1920 | SH | | DEFINED | 16,24,25 | 585 | 0 | 1335 |
| COMPUCREDIT CORP | COM | 20478N100 | 289 | 28991 | SH | | DEFINED | 16,24,25 | 28991 | 0 | 0 |
| COMPUCREDIT CORP | COM | 20478N100 | 5 | 500 | SH | CALL | DEFINED | 16,24,25 | 500 | 0 | 0 |
| COMPTON PETE CORP | | 204940100 | 1071 | 116450 | SH | | DEFINED | 16,24,25 | 115950 | 0 | 500 |
| COMPUTER SCIENCES CO | COM | 205363104 | 748 | 15125 | SH | | DEFINED | 7,11 | 12725 | 0 | 2400 |
| COMPUTER SCIENCES CO | COM | 205363104 | 516 | 10423 | SH | | DEFINED | 7,11,13 | 10423 | 0 | 0 |
| COMPUTER SCIENCES CO | COM | 205363104 | 4365 | 88244 | SH | | DEFINED | 16,24,25 | 82699 | 0 | 5545 |
| COMPUTER SCIENCES CO | COM | 205363104 | 256 | 5183 | SH | | DEFINED | 32,40,41 | 5183 | 0 | 0 |
| COMPUTER SCIENCES CO | COM | 205363104 | 6728 | 136000 | SH | CALL | DEFINED | 15,16,24 | 136000 | 0 | 0 |
| COMPUTER SCIENCES CO | COM | 205363104 | 727 | 14700 | SH | CALL | DEFINED | 16,24,25 | 14700 | 0 | 0 |
| COMPUTER SCIENCES CO | COM | 205363104 | 7989 | 161500 | SH | PUT | DEFINED | 15,16,24 | 161500 | 0 | 0 |
| COMPUTER SCIENCES CO | COM | 205363104 | 816 | 16500 | SH | PUT | DEFINED | 16,24,25 | 16500 | 0 | 0 |
| COMPUTER TASK GROUP | COM | 205477102 | 131 | 23767 | SH | | DEFINED | 16,24,25 | 22934 | 0 | 833 |
| COMPUWARE CORP | COM | 205638109 | 9 | 1000 | SH | | DEFINED | 12 | 0 | 0 | 1000 |
| COMPUWARE CORP | COM | 205638109 | 2966 | 333972 | SH | | DEFINED | 7,11 | 283123 | 0 | 50849 |
| COMPUWARE CORP | COM | 205638109 | 71 | 7950 | SH | | DEFINED | 7,11,13 | 6750 | 0 | 1200 |
| COMPUWARE CORP | COM | 205638109 | 1549 | 174389 | SH | | DEFINED | 16,24,25 | 156048 | 0 | 18341 |
| COMPUWARE CORP | COM | 205638109 | 65 | 7309 | SH | | DEFINED | 32,40,41 | 7309 | 0 | 0 |
| COMPUWARE CORP | COM | 205638109 | 102 | 11500 | SH | CALL | DEFINED | 15,16,24 | 11500 | 0 | 0 |
| COMSTOCK RES INC | COM NEW | 205768203 | 1692 | 49769 | SH | | DEFINED | 16,24,25 | 49769 | 0 | 0 |

```
COMTECH TELECOMMUNIC COM NEW    205826209       6      119 SH   DEFINED        7,11            0        0      119
COMTECH TELECOMMUNIC COM NEW    205826209    2880    53326 SH   DEFINED        16,24,25    43688        0     9638
CONAGRA FOODS INC    COM        205887102     471    19800 SH   DEFINED        30          19800        0        0
CONAGRA FOODS INC    COM        205887102     881    37041 SH   DEFINED        7,11        35911        0     1130
CONAGRA FOODS INC    COM        205887102     511    21460 SH   DEFINED        7,11,13,23  21110        0      350
CONAGRA FOODS INC    COM        205887102     108     4540 SH   DEFINED        7,11,33         0        0     4540
CONAGRA FOODS INC    COM        205887102  133938  5630019 SH   DEFINED        16,24,25  5133719        0   496299
CONAGRA FOODS INC    COM        205887102     371    15614 SH   DEFINED        32,40,41    15614        0        0
CONAGRA FOODS INC    COM        205887102    2512   105600 SH   CALL DEFINED   15,16,24   105600        0        0
CONAGRA FOODS INC    COM        205887102    2084    87600 SH   CALL DEFINED   16,24,25    87600        0        0
CONAGRA FOODS INC    COM        205887102    2331    98000 SH   PUT  DEFINED   15,16,24    98000        0        0
CONAGRA FOODS INC    COM        205887102    2458   103300 SH   PUT  DEFINED   16,24,25   103300        0        0
CON-WAY INC          COM        205944101    1091    26268 SH   DEFINED        7,11        26268        0        0
CON-WAY INC          COM        205944101     922    22199 SH   DEFINED        16,24,25    19595        0     2604
CONCUR TECHNOLOGIES  COM        206708109     174     4800 SH   DEFINED        30           4800        0        0
CONCUR TECHNOLOGIES  COM        206708109       1       33 SH   DEFINED        16,24          33        0        0
CONCUR TECHNOLOGIES  COM        206708109      76     2100 SH   DEFINED        16,24,25      900        0     1200
CONEXANT SYSTEMS INC COM        207142100      56    67100 SH   DEFINED        15,16,24    67100        0        0
CONEXANT SYSTEMS INC COM        207142100      45    54648 SH   DEFINED        16,24,25    53784        0      864
CONEXANT SYSTEMS INC COM        207142100       2     2200 SH   CALL DEFINED   15,16,24     2200        0        0
CONEXANT SYSTEMS INC COM        207142100      52    62100 SH   PUT  DEFINED   15,16,24    62100        0        0
CONMED CORP          COM        207410101     460    19917 SH   DEFINED        16,24,25    19717        0      200
CONNS INC            COM        208242107    3610   211000 SH   DEFINED        7,11       211000        0        0
CONNS INC            COM        208242107    3593   210000 SH   PUT  DEFINED   16,24,25   210000        0        0
CONOCOPHILLIPS       COM        20825C104     320     3620 SH   DEFINED        12              0        0     3620
CONOCOPHILLIPS       COM        20825C104     380     4300 SH   DEFINED        30           4300        0        0
CONOCOPHILLIPS       COM        20825C104   11523   130500 SH   DEFINED        42         130500        0        0
CONOCOPHILLIPS       COM        20825C104     829     9387 SH   DEFINED        3,9             0        0     9387
CONOCOPHILLIPS       COM        20825C104   94285  1067780 SH   DEFINED        7,11       925434        0   142346
CONOCOPHILLIPS       COM        20825C104    5057    57273 SH   DEFINED        7,11,13     38229        0    19044
CONOCOPHILLIPS       COM        20825C104    1338    15158 SH   DEFINED        7,11,33         0        0    15158
CONOCOPHILLIPS       COM        20825C104  117784  1333903 SH   DEFINED        16,24,25  1056768        0   277134
CONOCOPHILLIPS       COM        20825C104    6272    71032 SH   DEFINED        32,40,41    71032        0        0
CONOCOPHILLIPS       COM        20825C104    6603    74783 SH   DEFINED        5-7,11,43,44    0    74783        0
CONOCOPHILLIPS       COM        20825C104   12314   139455 SH   DEFINED        16,19,24,26,27 139455     0        0
CONOCOPHILLIPS       COM        20825C104   58420   661605 SH   CALL DEFINED   7,11       661605        0        0
CONOCOPHILLIPS       COM        20825C104  146887  1663500 SH   CALL DEFINED   15,16,24  1663500        0        0
CONOCOPHILLIPS       COM        20825C104  132035  1495300 SH   CALL DEFINED   16,24,25  1495300        0        0
CONOCOPHILLIPS       COM        20825C104   15453   175000 SH   PUT  DEFINED   7,11       175000        0        0
CONOCOPHILLIPS       COM        20825C104   99991  1132400 SH   PUT  DEFINED   15,16,24  1132400        0        0
CONOCOPHILLIPS       COM        20825C104  156150  1768405 SH   PUT  DEFINED   16,24,25  1768305        0      100
CONSECO INC          COM NEW    208464883       3      220 SH   DEFINED        15,16,24      220        0        0
CONSECO INC          COM NEW    208464883     117     9351 SH   DEFINED        16,24,25     8645        0      706
CONSECO INC          COM NEW    208464883    2187   174100 SH   DEFINED        15,16,24   174100        0        0
CONSECO INC          COM NEW    208464883      92     7300 SH   CALL DEFINED   16,24,25     7300        0        0
CONSECO INC          COM NEW    208464883     967    77000 SH   CALL DEFINED   15,16,24    77000        0        0
CONSECO INC          COM NEW    208464883     251    20000 SH   PUT  DEFINED   16,24,25    20000        0        0
CONSOL ENERGY INC    COM        20854P109    4287    59935 SH   DEFINED        7,11        59935        0        0
CONSOL ENERGY INC    COM        20854P109      21      300 SH   DEFINED        7,11,13       300        0        0
CONSOL ENERGY INC    COM        20854P109    8107   113353 SH   DEFINED        15,16,24   113353        0        0
CONSOL ENERGY INC    COM        20854P109    5600    78295 SH   DEFINED        16,24,25    70946        0     7348
CONSOL ENERGY INC    COM        20854P109     451     6308 SH   DEFINED        32,40,41     6308        0        0
CONSOL ENERGY INC    COM        20854P109   12595   176100 SH   CALL DEFINED   15,16,24   176100        0        0
CONSOL ENERGY INC    COM        20854P109   19657   274849 SH   CALL DEFINED   16,24,25   274849        0        0
CONSOL ENERGY INC    COM        20854T09     2972    41549 SH   PUT  DEFINED   7,11        41549        0        0
CONSOL ENERGY INC    COM        20854P109   28894   404000 SH   PUT  DEFINED   15,16,24   404000        0        0
CONSOL ENERGY INC    COM        20854P109    1738    24300 SH   PUT  DEFINED   16,24,25    24300        0        0
CONSOLIDATED COMM HL COM        290034027     296    14850 SH   DEFINED        16,24,25    14080        0      770
CONSOLIDATED EDISON  COM        209115104    3174    64968 SH   DEFINED        7,11        24580     2600    37788
CONSOLIDATED EDISON  COM        209115104      56     1152 SH   DEFINED        7,11,13      1152        0        0
CONSOLIDATED EDISON  COM        209115104   42862   877423 SH   DEFINED        16,24,25   761977        0   115446
CONSOLIDATED EDISON  COM        209115104    7774   159139 SH   DEFINED        32,40,41   159139        0        0
CONSOLIDATED EDISON  COM        209115104     375     7676 SH   DEFINED        16,19,24,26,27  7676      0        0
CONSOLIDATED EDISON  COM        209115104    1710    35000 SH   CALL DEFINED   7,11        35000        0        0
CONSOLIDATED EDISON  COM        209115104   11636   238200 SH   CALL DEFINED   15,16,24   238200        0        0
CONSOLIDATED EDISON  COM        209115104    9619   196900 SH   CALL DEFINED   16,24,25   196900        0        0
CONSOLIDATED EDISON  COM        209115104    1710    35000 SH   PUT  DEFINED   7,11        35000        0        0
CONSOLIDATED EDISON  COM        209115104    5955   121900 SH   PUT  DEFINED   15,16,24   121900        0        0
CONSOLIDATED EDISON  COM        209115104   12628   258500 SH   PUT  DEFINED   16,24,25   258500        0        0
CONSTELLATION BRANDS CL A       21036P108     531    22457 SH   DEFINED        7,11        22457        0        0
CONSTELLATION BRANDS CL A       21036P108       4      150 SH   DEFINED        7,11,13       150        0        0
CONSTELLATION BRANDS CL A       21036P108   13129   555377 SH   DEFINED        16,24,25   434494        0   120883
CONSTELLATION BRANDS CL A       21036P108    2253    95296 SH   DEFINED        32,40,41    95296        0        0
CONSTELLATION BRANDS CL A       21036P108    1213    51300 SH   CALL DEFINED   16,24,25    51300        0        0
CONSTELLATION BRANDS CL A       21036P108      19      800 SH   PUT  DEFINED   15,16,24      800        0        0
CONSTELLATION ENERGY COM        210371100    3136    30583 SH   DEFINED        7,11        28783        0     1800
CONSTELLATION ENERGY COM        210371100    1737    16940 SH   DEFINED        7,11,13     16390        0      550
CONSTELLATION ENERGY COM        210371100     179     1747 SH   DEFINED        7,11,33         0        0     1747
CONSTELLATION ENERGY COM        210371100   26866   262025 SH   DEFINED        16,24,25   194374        0    67651
CONSTELLATION ENERGY COM        210371100    1742    16986 SH   DEFINED        32,40,41    16986        0        0
CONSTELLATION ENERGY COM        210371100   29621   288900 SH   CALL DEFINED   15,16,24   288900        0        0
CONSTELLATION ENERGY COM        210371100    8274    80700 SH   CALL DEFINED   16,24,25    80700        0        0
CONSTELLATION ENERGY COM        210371100   18168   177200 SH   PUT  DEFINED   16,24,25   177200        0        0
CONSTELLATION ENERGY COM        210371100    8192    79900 SH   PUT  DEFINED   16,24,25    79900        0        0
CONSTELLATION ENERGY COM UNIT L 21038E101    1845    57107 SH   DEFINED        16,24       57107        0        0
CONSTELLATION ENERGY COM UNIT L 21038E101   14361   444603 SH   DEFINED        16,24,25   442962        0     1641
CONSUMER PORTFOLIO S COM        210502100      42    12587 SH   DEFINED        16,24,25    11366        0     1221
CONTANGO OIL & GAS C COM NEW    21075N204    1893    37204 SH   DEFINED        42          37204        0        0
CONTANGO OIL & GAS C COM NEW    21075N204    2877    56529 SH   DEFINED        16,24,25    32804        0    23725
CONTINENTAL AIRLS IN CL B       210795308    2724   122442 SH   DEFINED        7,11       122442        0        0
CONTINENTAL AIRLS IN CL B       210795308   13075   587636 SH   DEFINED        15,16,24   587636        0        0
CONTINENTAL AIRLS IN CL B       210795308    8257   371081 SH   DEFINED        16,24,25   362007        0     9074
CONTINENTAL AIRLS IN CL B       210795308   12596   566100 SH   CALL DEFINED   15,16,24   566100        0        0
CONTINENTAL AIRLS IN CL B       210795308    2559   115000 SH   CALL DEFINED   15,16,24   115000        0        0
CONTINENTAL AIRLS IN CL B       210795308   33629  1511400 SH   PUT  DEFINED   15,16,24  1511400        0        0
CONTINENTAL RESOURCE COM        212015101     113     4325 SH   DEFINED        30           4325        0        0
CONTINENTAL RESOURCE COM        212015101       4      168 SH   DEFINED        7,11          168        0        0
CONTINENTAL RESOURCE COM        212015101     953    36476 SH   DEFINED        16,24,25    31119        0     5357
CONVERGYS CORP       COM        212485106    3975   241517 SH   DEFINED        7,11       241517        0        0
CONVERGYS CORP       COM        212485106     250    15175 SH   DEFINED        7,11,13     15175        0        0
CONVERGYS CORP       COM        212485106     366    22245 SH   DEFINED        16,24,25    16520        0     5725
CONVERGYS CORP       COM        212485106      11      639 SH   DEFINED        32,40,41      639        0        0
COOPER CAMERON CORP  DBCV 1.50  216640AE2   67840 24272000 PRN  DEFINED        16,24,25 24272000        0        0
COOPER COS INC       COM NEW    216648402    2415    63562 SH   DEFINED        7,11        63562        0        0
COOPER COS INC       COM NEW    216648402     169     4449 SH   DEFINED        15,16,24     4449        0        0
COOPER COS INC       COM NEW    216648402     764    20114 SH   DEFINED        16,24,25    17382        0     2732
COOPER COS INC       COM NEW    216648402      45     1192 SH   DEFINED        32,40,41     1192        0        0
COOPER COS INC       COM NEW    216648402    2033    53500 SH   CALL DEFINED   15,16,24    53500        0        0
COOPER COS INC       COM NEW    216648402    2407    63348 SH   CALL DEFINED   16,24,25    63348        0        0
COOPER COS INC       COM NEW    216648402    2407    63348 SH   PUT  DEFINED   7,11        63348        0        0
COOPER COS INC       COM NEW    216648402    2531    66607 SH   PUT  DEFINED   15,16,24    66607        0        0
COOPER TIRE & RUBR C COM        216831107    3385   204163 SH   DEFINED        16,24,25   154713        0    49450
COPANO ENERGY L L C  COM UNITS  217202100    1408   288517 SH   DEFINED        16,24       288517        0        0
COPANO ENERGY L L C  COM UNITS  217202100    1909    52522 SH   DEFINED        16,24,25    45208        0     7314
```

```
COPART INC              COM        217204106    374      8800 SH   DEFINED            3,9              0          8800
COPART INC              COM        217204106     33       774 SH   DEFINED            7,11           774          0
COPART INC              COM        217204106    170      3995 SH   DEFINED         15,16,24         3995          0
COPART INC              COM        217204106   3573     83982 SH   DEFINED         16,24,25        76959          7023
COPART INC              COM        217204106     13       300 SH   PUT DEFINED      15,16,24          300          0
CORINTHIAN COLLEGES     COM        218868107    117      7588 SH   DEFINED               30         7588          0
CORINTHIAN COLLEGES     COM        218868107   2966   1926696 SH   DEFINED         16,24,25       140580         52026
CORINTHIAN COLLEGES     COM        218868107   1406     91300 SH   CALL DEFINED     15,16,24        91300          0
CORINTHIAN COLLEGES     COM        218868107    584     37900 SH   PUT DEFINED      15,16,24        37900          0
CORN PRODS INTL INC     COM        219023108    140      3800 SH   DEFINED               30         3800          0
CORN PRODS INTL INC     COM        219023108    301      8189 SH   DEFINED            3,9              0          8189
CORN PRODS INTL INC     COM        219023108    247      6717 SH   DEFINED            7,11          6717          0
CORN PRODS INTL INC     COM        219023108     31       840 SH   DEFINED         7,11,13            0           840
CORN PRODS INTL INC     COM        219023108  14248    387696 SH   DEFINED         16,24,25       320600         67096
CORNELL COMPANIES IN    COM        219141108   1677     71900 SH   DEFINED         16,24,25        48230         23670
CORNERSTONE STRATEGI    COM        21924B104     69     13717 SH   DEFINED         16,24,25        10033          3683
CORNING INC             COM        219350105  14944    629917 SH   DEFINED            7,11        600067         22850
CORNING INC             COM        219350105     19       791 SH   DEFINED         7,11,13          741            50
CORNING INC             COM        219350105     96      3985 SH   DEFINED         7,11,33            0          3985
CORNING INC             COM        219350105   4806    200345 SH   DEFINED         15,16,24       200345          0
CORNING INC             COM        219350105  49231   2052157 SH   DEFINED         16,24,25      1531574        520582
CORNING INC             COM        219350105  17696    737657 SH   DEFINED         32,40,41       737657          0
CORNING INC             COM        219350105  13612    567400 SH   CALL DEFINED        7,11       567400          0
CORNING INC             COM        219350105  14375    599200 SH   CALL DEFINED     15,16,24       599200          0
CORNING INC             COM        219350105   3476    144900 SH   CALL DEFINED     16,24,25       144900          0
CORNING INC             COM        219350105   6890    287200 SH   PUT DEFINED         7,11       287200          0
CORNING INC             COM        219350105  13135    547500 SH   PUT DEFINED      15,16,24       547500          0
CORNING INC             COM        219350105   6012    250600 SH   PUT DEFINED      16,24,25       250600          0
CORPORATE EXECUTIVE     COM        21988R102     27       449 SH   DEFINED            7,11          449           0
CORPORATE EXECUTIVE     COM        21988R102   1738     28855 SH   DEFINED         7,11,13         28855          60
CORPORATE EXECUTIVE     COM        21988R102   1405     23370 SH   DEFINED         16,24,25        17567          5803
CORPORATE OFFICE PPT SH BEN INT    22002T108   1121     35600 SH   DEFINED            14,31        35600          0
CORPORATE OFFICE PPT SH BEN INT    22002T108     15       475 SH   DEFINED         7,11,13          475           0
CORPORATE OFFICE PPT SH BEN INT    22002T108    196      6214 SH   DEFINED         16,24,25         3014          3200
CORPORATE OFFICE PPT SH BEN INT    22002T108   2489     79019 SH   DEFINED         32,40,41        79019          0
CORRECTIONS CORP AME    COM NEW    20025Y407     44      1499 SH   DEFINED            7,11         1499           0
CORRECTIONS CORP AME    COM NEW    20025Y407   3897    132052 SH   DEFINED         16,24,25       101148         30904
CORRECTIONS CORP AME    COM NEW    20025Y407    153      5200 SH   DEFINED         32,40,41         5200          0
CORRIENTE RES INC       COM        22027E409     59     10700 SH   DEFINED         16,24,25        10700          0
CORTS TR VI IBM DEB     CTF CAL 6. 22080F203    393     16575 SH   DEFINED         16,24,25        11475          5100
CORUS BANKSHARES INC    COM        220873103      5       484 SH   DEFINED            7,11            0           484
CORUS BANKSHARES INC    COM        220873103    611     57248 SH   DEFINED         16,24,25        46495         10753
COSTCO WHSL CORP NEW    COM        22160K105     56       800 SH   DEFINED               12            0           800
COSTCO WHSL CORP NEW    COM        22160K105    354      5080 SH   DEFINED               30         5080          0
COSTCO WHSL CORP NEW    COM        22160K105   3729     53460 SH   DEFINED            7,11        50970          2490
COSTCO WHSL CORP NEW    COM        22160K105    607      8702 SH   DEFINED            16,24         8702          0
COSTCO WHSL CORP NEW    COM        22160K105     73      1048 SH   DEFINED         7,11,13          548           500
COSTCO WHSL CORP NEW    COM        22160K105    292      4185 SH   DEFINED         7,11,33            0          4185
COSTCO WHSL CORP NEW    COM        22160K105   2173     31152 SH   DEFINED            16,24        31152          0
COSTCO WHSL CORP NEW    COM        22160K105  73160   1048732 SH   DEFINED         16,24,25       890126        158606
COSTCO WHSL CORP NEW    COM        22160K105   4358     62471 SH   DEFINED         32,40,41        62471          0
COSTCO WHSL CORP NEW    COM        22160K105     70      1000 SH   DEFINED       5-7,11,43,44        0      1000       0
COSTCO WHSL CORP NEW    COM        22160K105     22       321 SH   DEFINED      16,19,24,26,27       321          0
COSTCO WHSL CORP NEW    COM        22160K105  41403    593500 SH   CALL DEFINED     15,16,24       593500          0
COSTCO WHSL CORP NEW    COM        22160K105  14050    201400 SH   CALL DEFINED     16,24,25       201400          0
COSTCO WHSL CORP NEW    COM        22160K105  27918    400200 SH   PUT DEFINED      15,16,24       400200          0
COSTCO WHSL CORP NEW    COM        22160K105  25665    367900 SH   PUT DEFINED      16,24,25       367900          0
COTT CORP QUE           COM        21163N106      3       502 SH   DEFINED         7,11,13          502           0
COTT CORP QUE           COM        21163N106    307     46138 SH   DEFINED         16,24,25        40843          5295
COTT CORP QUE           COM        21163N106      7       987 SH   DEFINED       4,6,7,11          987           0
COUNTRYWIDE FINANCIA    DBCV       222372AN4   1014   1300000 PRN  DEFINED         16,24,25      1300000         0
COUNTRYWIDE FINANCIA    DBCV       222372AP9  12405  17000000 PRN  DEFINED         16,24,25     17000000         0
COUNTRYWIDE FINANCIA    COM        222372104   4578    512055 SH   DEFINED            7,11        512055          0
COUNTRYWIDE FINANCIA    COM        222372104     12      1390 SH   DEFINED         7,11,13         1347           43
COUNTRYWIDE FINANCIA    COM        222372104  12926   1445808 SH   DEFINED         16,24,25      1141788        304020
COUNTRYWIDE FINANCIA    COM        222372104    148     16541 SH   DEFINED         32,40,41        16541          0
COUNTRYWIDE FINANCIA    COM        222372104  12782   1429800 SH   DEFINED      16,19,24,26,27  1429800         0
COUNTRYWIDE FINANCIA    COM        222372104   4273    478016 SH   CALL DEFINED        7,11       478016          0
COUNTRYWIDE FINANCIA    COM        222372104  12928   1446100 SH   CALL DEFINED     15,16,24      1446100         0
COUNTRYWIDE FINANCIA    COM        222372104   6685    747800 SH   CALL DEFINED     16,24,25       747800          0
COUNTRYWIDE FINANCIA    COM        222372104  11783   1318000 SH   PUT DEFINED      15,16,24      1318000         0
COUNTRYWIDE FINANCIA    COM        222372104   3392    379416 SH   PUT DEFINED      16,24,25       379416          0
COURIER CORP            COM        222660102    225      6801 SH   DEFINED            7,11            1          6800
COUSINS PPTYS INC       COM        222795106   1023     46286 SH   DEFINED         16,24,25        46186          100
COUSINS PPTYS INC       COM        222795106    413     18679 SH   DEFINED         32,40,41        18679          0
COVAD COMMUNICATIONS    COM        22814204     23     26378 SH   DEFINED         16,24,25        25667          711
COVANCE INC             COM        22816100     142      1634 SH   DEFINED            7,11         1134           500
COVANCE INC             COM        22816100    7740     89358 SH   DEFINED         16,24,25        59362         29996
COVANCE INC             COM        22816100     303      3494 SH   DEFINED         32,40,41         3494          0
COVANTA HLDG CORP       COM        22282E102     40      1443 SH   DEFINED            7,11         1443           0
COVANTA HLDG CORP       COM        22282E102   5423    196051 SH   DEFINED         16,24,25       177004         19047
COVANTA HLDG CORP       COM        22282E102   3117    112700 SH   CALL DEFINED     15,16,24       112700          0
COVANTA HLDG CORP       COM        22282E102    238      8600 SH   CALL DEFINED     16,24,25         8600          0
COVANTA HLDG CORP       COM        22282E102   2301     83200 SH   PUT DEFINED      16,24,25        83200          0
COVANTA HLDG CORP       COM        22282E102    512     18500 SH   PUT DEFINED      16,24,25        18500          0
COVENTRY HEALTH CARE    COM        222862104   3767     63581 SH   DEFINED            7,11        63581          0
COVENTRY HEALTH CARE    COM        222862104   1472     24846 SH   DEFINED         7,11,13         23671          1175
COVENTRY HEALTH CARE    COM        222862104  17678    298362 SH   DEFINED         16,24,25       261911         36451
COVENTRY HEALTH CARE    COM        222862104   1383     23347 SH   DEFINED         32,40,41        23347          0
COVENTRY HEALTH CARE    COM        222862104   2308     38958 SH   CALL DEFINED        7,11        38958          0
COVENTRY HEALTH CARE    COM        222862104  13118    221400 SH   CALL DEFINED     15,16,24       221400          0
COVENTRY HEALTH CARE    COM        222862104    770     13000 SH   CALL DEFINED     16,24,25        13000          0
COVENTRY HEALTH CARE    COM        222862104  15473    261150 SH   PUT DEFINED      15,16,24       261150          0
COVENTRY HEALTH CARE    COM        222862104   4234     71458 SH   PUT DEFINED      16,24,25        71458          0
CRANE CO                COM        224399105     64      1500 SH   DEFINED               30         1500          0
CRANE CO                COM        224399105    300      7000 SH   DEFINED            3,9              0          7000
CRANE CO                COM        224399105    333      7753 SH   DEFINED         16,24,25         6453          1300
CREDIT SUISSE ASSET     COM        22491610     116     32535 SH   DEFINED         16,24,25        23829          8706
CRAY INC                COM NEW    225223304    103     17147 SH   DEFINED         16,24,25        17147          0
CRAY INC                COM NEW    225223304     17      2856 SH   DEFINED         16,24,25         2581          275
CRAY INC                COM NEW    225223304     29      4800 SH   CALL DEFINED     15,16,24         4800          0
CRAY INC                COM NEW    225223304    136     22700 SH   PUT DEFINED      15,16,24        22700          0
CREDENCE SYS CORP       COM        225302108     86     35575 SH   DEFINED         16,24,25        33475          2100
CREDENCE SYS CORP       COM        225302108     54     22500 SH   CALL DEFINED     15,16,24        22500          0
CREDIT SUISSE GROUP     SPONSORED  225401108   6299    104884 SH   DEFINED         16,24,25        91328         13476
CREDIT SUISSE HIGH Y SH BEN INT    22544F103    253     76250 SH   DEFINED         16,24,25        73254          2996
CREE INC                COM        225447101    280     10204 SH   DEFINED            7,11        10204          0
CREE INC                COM        225447101     21       750 SH   DEFINED         7,11,13          750           0
CREE INC                COM        225447101     71      2595 SH   DEFINED         7,11,33            0          2595
CREE INC                COM        225447101  41155   1498180 SH   DEFINED         16,24,25      1389175        109005
CREE INC                COM        225447101    117      4255 SH   DEFINED      16,19,24,26,27     4255          0
CREE INC                COM        225447101  48644   1770800 SH   CALL DEFINED     15,16,24      1770800         0
CREE INC                COM        225447101    190      6900 SH   CALL DEFINED     16,24,25         6900          0
CREE INC                COM        225447101  35909   1307200 SH   PUT DEFINED      15,16,24      1307200         0
```

```
CREE INC              COM         225447101    275    10000 SH  PUT DEFINED       16,24,25     10000     0        0
CRESCENT FINL CORP    COM         225744101      1       96 SH      DEFINED          16,24        96     0        0
CRESCENT FINL CORP    COM         225744101    206    21637 SH      DEFINED       16,24,25     19740     0     1897
CRESUD S A C I F Y A SPONSORED    224406106    609    30620 SH      DEFINED       16,24,25     10365     0    20255
CROCS INC             COM         227046109     48     1316 SH      DEFINED          7,11       940      0      376
CROCS INC             COM         227046109   4703   127754 SH      DEFINED       15,16,24    127754     0        0
CROCS INC             COM         227046109   2199    59747 SH      DEFINED       16,24,25     44615     0    15132
CROCS INC             COM         227046109    416    11300 SH      DEFINED       32,40,41     11300     0        0
CROCS INC             COM         227046109     13      366 SH      DEFINED      5-7,11,43,44      0    366        0
CROCS INC             COM         227046109  24666   670100 SH CALL DEFINED       15,16,24    670100     0        0
CROCS INC             COM         227046109    294     8000 SH CALL DEFINED       16,24,25      8000     0        0
CROCS INC             COM         227046109  32584   885200 SH  PUT DEFINED       16,24,25    885200     0        0
CROCS INC             COM         227046109    261     7100 SH  PUT DEFINED       16,24,25      7100     0        0
CROSS CTRY HEALTHCAR  COM         227483104      1       94 SH      DEFINED           3,9         0      0       94
CROSS CTRY HEALTHCAR  COM         227483104   1639   115107 SH      DEFINED       16,24,25     86418     0    28689
CROSSTEX ENERGY L P   COM         27651U102   8953   288620 SH      DEFINED       16,24,25    288163     0      457
CROSSTEX ENERGY INC   COM         22765Y104     16      434 SH      DEFINED           7,11       434     0        0
CROSSTEX ENERGY INC   COM         22765Y104    411    11040 SH      DEFINED       16,24,25      9165     0     1875
CROWN CASTLE INTL CO  COM         228227104   1591    38255 SH      DEFINED          7,11      38255     0        0
CROWN CASTLE INTL CO  COM         228227104    474    11389 SH      DEFINED       15,16,24     11389     0        0
CROWN CASTLE INTL CO  COM         228227104   1311    31508 SH      DEFINED       16,24,25     26117     0     5391
CROWN CASTLE INTL CO  COM         228227104   1236    29715 SH      DEFINED       32,40,41     29715     0        0
CROWN CASTLE INTL CO  COM         228227104   1023    24600 SH CALL DEFINED       15,16,24     24600     0        0
CROWN CASTLE INTL CO  COM         228227104    324     7800 SH CALL DEFINED       16,24,25      7800     0        0
CROWN CASTLE INTL CO  COM         228227104   2330    56000 SH  PUT DEFINED       15,16,24     56000     0        0
CROWN CASTLE INTL CO  COM         228227104    815    19600 SH  PUT DEFINED       16,24,25     19600     0        0
CROWN HOLDINGS INC    COM         228368106     51     1970 SH      DEFINED          7,11       1970     0        0
CROWN HOLDINGS INC    COM         228368106    376    14654 SH      DEFINED       15,16,24     14654     0        0
CROWN HOLDINGS INC    COM         228368106   3482   135752 SH      DEFINED       16,24,25    105973     0    29779
CROWN HOLDINGS INC    COM         228368106    982    38270 SH      DEFINED       32,40,41     38270     0        0
CROWN HOLDINGS INC    COM         228368106   2350    91600 SH CALL DEFINED       15,16,24     91600     0        0
CROWN HOLDINGS INC    COM         228368106     44     1700 SH CALL DEFINED       16,24,25      1700     0        0
CROWN HOLDINGS INC    COM         228368106   1937    75500 SH  PUT DEFINED       15,16,24     75500     0        0
CROWN HOLDINGS INC    COM         228368106    408    15900 SH  PUT DEFINED       16,24,25     15900     0        0
CROWN MEDIA HLDGS IN CL A         228411104    331    50902 SH      DEFINED       16,24,25     49479     0     1423
CRYOLIFE INC          COM         228903100   9934  1249559 SH      DEFINED       16,24,25   1029005     0   220554
CRYSTALLEX INTL CORP  COM         22942F101    583   205871 SH      DEFINED       15,16,24    205871     0        0
CRYSTALLEX INTL CORP  COM         22942F101     26    11300 SH      DEFINED       16,24,25      8300     0     3000
CRYSTALLEX INTL CORP  COM         22942F101     83    36300 SH CALL DEFINED       15,16,24     36300     0        0
CRYSTALLEX INTL CORP  COM         22942F101    601   263700 SH  PUT DEFINED       15,16,24    263700     0        0
CTRIP COM INTL LTD    ADR         22943F100   3824    66543 SH      DEFINED       16,24,25     52953     0    13590
CTRIP COM INTL LTD    ADR         22943F100   6442   112100 SH CALL DEFINED       16,24,25    112100     0        0
CTRIP COM INTL LTD    ADR         22943F100   2264    39400 SH  PUT DEFINED       15,16,24     39400     0        0
CUBIST PHARMACEUTICA NOTE  2.25   229678AC1   1542  1621000 PRN      DEFINED       16,24,25   1621000     0        0
CUBIST PHARMACEUTICA  COM         229678107    103     5000 SH      DEFINED           30        5000     0        0
CUBIST PHARMACEUTICA  COM         229678107   2821   137522 SH      DEFINED          7,11     137522     0        0
CUBIST PHARMACEUTICA  COM         229678107     40     1950 SH      DEFINED        7,11,13      1950     0        0
CUBIST PHARMACEUTICA  COM         229678107   1803    87904 SH      DEFINED       15,16,24     87904     0        0
CUBIST PHARMACEUTICA  COM         229678107   2092   101982 SH      DEFINED       16,24,25     96642     0     5340
CUBIST PHARMACEUTICA  COM         229678107   2695   131400 SH CALL DEFINED       15,16,24    131400     0        0
CUBIST PHARMACEUTICA  COM         229678107    724    35300 SH CALL DEFINED       16,24,25     35300     0        0
CUBIST PHARMACEUTICA  COM         229678107   2336   113900 SH  PUT DEFINED       15,16,24    113900     0        0
CULLEN FROST BANKERS  COM         229899109    152     3000 SH      DEFINED           30        3000     0        0
CULLEN FROST BANKERS  COM         229899109      3       58 SH      DEFINED           3,9         0      0       58
CULLEN FROST BANKERS  COM         229899109    434     8570 SH      DEFINED        7,11,13      8570     0        0
CULLEN FROST BANKERS  COM         229899109    597    11790 SH      DEFINED       16,24,25      6999     0     4791
CUMMINS INC           COM         231021106   6059    47572 SH      DEFINED          7,11      47572     0        0
CUMMINS INC           COM         231021106    357     2803 SH      DEFINED        7,11,13       235     0     2568
CUMMINS INC           COM         231021106    941     7391 SH      DEFINED       15,16,24      7391     0        0
CUMMINS INC           COM         231021106   7607    59726 SH      DEFINED       16,24,25     56130     0     3595
CUMMINS INC           COM         231021106    746     5855 SH      DEFINED       32,40,41      5855     0        0
CUMMINS INC           COM         231021106   2628    20630 SH CALL DEFINED          7,11      20630     0        0
CUMMINS INC           COM         231021106  35689   280200 SH CALL DEFINED       15,16,24    280200     0        0
CUMMINS INC           COM         231021106  41026   322100 SH  PUT DEFINED       15,16,24    322100     0        0
CUMMINS INC           COM         231021106   2628    20630 SH  PUT DEFINED       16,24,25     20630     0        0
CURAGEN CORP          NOTE  4.00  23126RAE1    431   605000 PRN      DEFINED       16,24,25    605000     0        0
CURRENCYSHARES SWEDI SWEDISH KR   23129R108    323     2081 SH      DEFINED       16,24,25      2021     0       60
CURRENCYSHRS BRIT POU BRIT POUND  23129S106   1307     6547 SH      DEFINED       16,24,25      6147     0      400
CURRENCYSHARES AUSTR AUSTRALIAN   23129U101   4817    54721 SH      DEFINED       16,24,25     47978     0     6743
CURRENCYSHARES SWISS SWISS FRAN   23129V109   3696    41815 SH      DEFINED       16,24,25     40728     0     1087
CURRENCYSHS CDN D CDN DOLLAR      23129X105   1454    14403 SH      DEFINED       16,24,25     13119     0     1284
CURRENCYSHARES JAPANESE JAPANESE Y 23130A102  26730   298328 SH      DEFINED       16,24,25    254218     0    44110
CURRENCY SHARES EURO EURO SHS     23130C108  12470    85179 SH      DEFINED       16,24,25     79340     0     5838
CURTISS WRIGHT CORP   COM         231561101    129     2564 SH      DEFINED        7,11,13      2564     0        0
CURTISS WRIGHT CORP   COM         231561101    238     4738 SH      DEFINED       16,24,25      3648     0     1090
CYBERSOURCE CORP      COM         23251C106    316    17800 SH      DEFINED           30       17800     0        0
CYBERSOURCE CORP      COM         23251J106   1758    98928 SH      DEFINED       16,24,25     65854     0    33074
CYBERONICS INC        COM         23251P102    180    13713 SH      DEFINED       15,16,24     13713     0        0
CYBERONICS INC        COM         23251P102    439    33340 SH      DEFINED       16,24,25     21240     0    12100
CYBERONICS INC        COM         23251P102    391    29700 SH CALL DEFINED       15,16,24     29700     0        0
CYBEROPTICS CORP      COM         23251T102   1042    87005 SH      DEFINED       16,24,25     62788     0    24217
CYMER INC             COM         23252I107   1660    42648 SH      DEFINED          7,11      42375     0      273
CYMER INC             COM         23252I107    888    22810 SH      DEFINED       16,24,25     22810     0        0
CYMER INC             COM         23252I107   2454    63044 SH      DEFINED       16,24,25     54562     0     8482
CYMER INC             COM         23252I107   2274    58400 SH CALL DEFINED       15,16,24     58400     0        0
CYMER INC             COM         23252I107   7440   191100 SH  PUT DEFINED       16,24,25    191100     0        0
CYNOSURE INC          CL A        232577205      1       44 SH      DEFINED          16,24        44     0        0
CYNOSURE INC          CL A        232577205   2173    82131 SH      DEFINED       16,24,25     77424     0     4707
CYPRESS BIOSCIENCES  COM PAR $.   232674507    555    50316 SH      DEFINED       16,24,25     43151     0     7165
CYPRESS SEMICONDUCTO  COM         232806109  18135   503332 SH      DEFINED          7,11     503332     0        0
CYPRESS SEMICONDUCTO  COM         232806109  11617   322436 SH      DEFINED       15,16,24    322436     0        0
CYPRESS SEMICONDUCTO  COM         232806109  28600   793786 SH      DEFINED       16,24,25    724398     0    69388
CYPRESS SEMICONDUCTO  COM         232806109   1011    28060 SH      DEFINED       32,40,41     28060     0        0
CYPRESS SEMICONDUCTO  COM         232806109  15558   431800 SH CALL DEFINED       15,16,24    431800     0        0
CYPRESS SEMICONDUCTO  COM         232806109  10797   299677 SH CALL DEFINED       15,16,24    299677     0        0
CYPRESS SEMICONDUCTO  COM         232806109  26180   726611 SH  PUT DEFINED          7,11     726611     0        0
CYPRESS SEMICONDUCTO  COM         232806109  10712   297300 SH  PUT DEFINED       15,16,24    297300     0        0
CYPRESS SEMICONDUCTO  COM         232806109  12791   355000 SH  PUT DEFINED       16,24,25    355000     0        0
CYTEC INDS INC        COM         232820100     47      760 SH      DEFINED           30         760     0        0
CYTEC INDS INC        COM         232820100    417     6769 SH      DEFINED       16,24,25      6197     0      572
CYTRX CORP            COM NEW     232828301     64    22525 SH      DEFINED       16,24,25     22525     0        0
CYTORI THERAPEUTICS  COM         23283K105    175    28980 SH      DEFINED       16,24,25     28685     0      295
DCP MIDSTREAM PARTNE COM UT LTD   23311P100   3591    78156 SH      DEFINED       16,24,25     70884     0     7272
DCT INDUSTRIAL TRUST  COM         233153105    194    20800 SH      DEFINED          14,31      20800     0        0
DCT INDUSTRIAL TRUST  COM         233153105   1302   139824 SH      DEFINED       16,24,25     62091     0    77732
DCT INDUSTRIAL TRUST  COM         233153105  18164  1951007 SH      DEFINED       32,40,41   1951007     0        0
DNP SELECT INCOME FD  COM         23325P104    116    10932 SH      DEFINED          7,11      10932     0        0
DNP SELECT INCOME FD  COM         23325P104     12     1104 SH      DEFINED          7,11       1104     0        0
DNP SELECT INCOME FD  COM         23325P104     13     1250 SH      DEFINED        7,11,13      1250     0        0
DNP SELECT INCOME FD  COM         23325P104   2265   213879 SH      DEFINED       16,24,25    175099     0    38780
DPL INC               COM         233293109   6968   235015 SH      DEFINED          7,11     233015     0     2000
DPL INC               COM         233293109     67     2255 SH      DEFINED        7,11,13      1855     0      400
DPL INC               COM         233293109   9496   320279 SH      DEFINED       16,24,25    310215     0    10063
```

```
DPL INC                      COM       233293109   6887    232279 SH  CALL DEFINED          16,24,25        232279      0        0
DPL INC                      COM       233293109   6887    232279 SH  PUT  DEFINED          7,11            232279      0        0
DRS TECHNOLOGIES INC COM               23330X100   11       200 SH       DEFINED           12              0           0        200
DRS TECHNOLOGIES INC COM               23330X100   138     2550 SH       DEFINED           30              2550        0        0
DRS TECHNOLOGIES INC COM               23330X100   1        27 SH        DEFINED           7,11            27          0        0
DRS TECHNOLOGIES INC COM               23330X100   5        100 SH       DEFINED           7,11,13         100         0        0
DRS TECHNOLOGIES INC COM               23330X100   3597    66285 SH      DEFINED           16,24,25        59521       0        6764
D R HORTON INC               COM       23331A109   2019    153285 SH     DEFINED           7,11            153285      0        0
D R HORTON INC               COM       23331A109   51      3850 SH       DEFINED           7,11,13         3850        0        0
D R HORTON INC               COM       23331A109   560     42483 SH      DEFINED           15,16,24        42483       0        0
D R HORTON INC               COM       23331A109   9726    738498 SH     DEFINED           16,24,25        665829      0        72668
D R HORTON INC               COM       23331A109   110     8326 SH       DEFINED           32,40,41        8326        0        0
D R HORTON INC               COM       23331A109   5496    417280 SH  CALL DEFINED          7,11            417280      0        0
D R HORTON INC               COM       23331A109   13498   1024900 SH CALL DEFINED          15,16,24        1024900     0        0
D R HORTON INC               COM       23331A109   26195   1988978 SH CALL DEFINED          16,24,25        1988978     0        0
D R HORTON INC               COM       23331A109   5690    432078 SH  PUT  DEFINED          7,11            432078      0        0
D R HORTON INC               COM       23331A109   5896    447700 SH  PUT  DEFINED          15,16,24        447700      0        0
D R HORTON INC               COM       23331A109   7815    593380 SH  PUT  DEFINED          16,24,25        593380      0        0
DST SYS INC DEL              DBCV 3.62 233326AD9   17      10000 PRN     DEFINED           16,24,25        10000       0        0
DST SYS INC DEL              COM       233326107   917     11105 SH      DEFINED           7,11            11105       0        0
DST SYS INC DEL              COM       233326107   15433   186954 SH     DEFINED           16,24,25        176030      0        10924
DST SYS INC DEL              COM       233326107   142     1724 SH       DEFINED           32,40,41        1724        0        0
DST SYS INC DEL              COM       233326107   9823    119000 SH  CALL DEFINED          16,24,25        119000      0        0
DTE ENERGY CO                COM       233311107   1104    25122 SH      DEFINED           7,11            19695       0        5427
DTE ENERGY CO                COM       233311107   141     3217 SH       DEFINED           7,11,13         3217        0        0
DTE ENERGY CO                COM       233311107   5202    118336 SH     DEFINED           16,24,25        97937       0        20398
DTE ENERGY CO                COM       233311107   22686   516068 SH     DEFINED           32,40,41        516068      0        0
DTF TAX-FREE INCOME          COM       23334J107   1294    92169 SH      DEFINED           16,24,25        75891       0        16278
DTS INC                      COM       23335C101   1270    49650 SH      DEFINED           16,24,25        44450       0        5200
DWS HIGH INCOME TR           SHS       23337C109   201     41864 SH      DEFINED           16,24,25        40452       0        1411
DWS MULTI MKT INCOME         SHS       23338L108   143     16295 SH      DEFINED           16,24,25        9580        0        6715
DWS GLOBAL HIGH INCO         COM       23338W104   578     66303 SH      DEFINED           16,24,25        58002       0        8300
DWS GLOBAL HIGH INCO         COM       23338W104   185     21200 SH      DEFINED           16,19,24,26,27   21200       0        0
DWS RREEF REAL ESTAT         COM       23338X102   1762    136582 SH     DEFINED           16,24,25        91531       0        45050
DWS GLOBAL COMMODITI         COM       23338X102   142     11000 SH      DEFINED           16,19,24,26,27   11000       0        0
DWS GLOBAL COMMODITI         COM       23338Y100   563     31985 SH      DEFINED           7,11,13         31985       0        0
DWS GLOBAL COMMODITI         COM       23338Y100   1561    88630 SH      DEFINED           16,24,25        75080       0        13549
DWS RREEF REAL ESTAT         COM       23338K106   417     23778 SH      DEFINED           16,24,25        23106       0        672
DWS DREMAN VAL INCOM COM               23339M105   1136    82351 SH      DEFINED           16,24,25        78371       0        3980
DAKTRONICS INC               COM       234264109   4768    211244 SH     DEFINED           16,24,25        167142      0        44102
DANAHER CORP DEL             NOTE      235851AF9   18      14000 PRN     DEFINED           16,24,25        14000       0        0
DANAHER CORP DEL             COM       235851102   526     6000 SH       DEFINED           12              0           0        6000
DANAHER CORP DEL             COM       235851102   351     4000 SH       DEFINED           30              4000        0        0
DANAHER CORP DEL             COM       235851102   32231   367349 SH     DEFINED           7,11            156984      0        210365
DANAHER CORP DEL             COM       235851102   2229    25400 SH      DEFINED           7,11,13         24200       0        1200
DANAHER CORP DEL             COM       235851102   175     1990 SH       DEFINED           7,11,33         0           0        1990
DANAHER CORP DEL             COM       235851102   1913    21805 SH      DEFINED           15,16,24        21805       0        0
DANAHER CORP DEL             COM       235851102   51654   588714 SH     DEFINED           16,24,25        502335      0        86378
DANAHER CORP DEL             COM       235851102   29501   336229 SH     DEFINED           32,40,41        336229      0        0
DANAHER CORP DEL             COM       235851102   219     2500 SH       DEFINED           5-7,11,43,44    0           2500     0
DANAHER CORP DEL             COM       235851102   6247    71200 SH  CALL DEFINED          7,11            71200       0        0
DANAHER CORP DEL             COM       235851102   3904    44500 SH  CALL DEFINED          15,16,24        44500       0        0
DANAHER CORP DEL             COM       235851102   10608   120900 SH CALL DEFINED          16,24,25        120900      0        0
DANAHER CORP DEL             COM       235851102   10538   120100 SH  PUT  DEFINED          15,16,24        120100      0        0
DANAHER CORP DEL             COM       235851102   5475    62400 SH  PUT  DEFINED          16,24,25        62400       0        0
DANKA BUSINESS SYS P SPONSORED         236277109   12      64095 SH      DEFINED           16,24,25        64095       0        0
DARDEN RESTAURANTS I COM               237194105   212     7650 SH       DEFINED           12              0           0        7650
DARDEN RESTAURANTS I COM               237194105   2719    98113 SH      DEFINED           3,9             0           0        98113
DARDEN RESTAURANTS I COM               237194105   5977    215691 SH     DEFINED           7,11            14504       0        201187
DARDEN RESTAURANTS I COM               237194105   110     3975 SH       DEFINED           7,11,13         300         0        3675
DARDEN RESTAURANTS I COM               237194105   3       100 SH        DEFINED           7,11,33         0           0        100
DARDEN RESTAURANTS I COM               237194105   137     4940 SH       DEFINED           15,16,24        4940        0        0
DARDEN RESTAURANTS I COM               237194105   681     24579 SH      DEFINED           16,24,25        23696       0        883
DARDEN RESTAURANTS I COM               237194105   114     4102 SH       DEFINED           32,40,41        4102        0        0
DARDEN RESTAURANTS I COM               237194105   277     10000 SH  CALL DEFINED          16,24,25        10000       0        0
DARDEN RESTAURANTS I COM               237194105   277     10000 SH  PUT  DEFINED          16,24,25        10000       0        0
DARLING INTL INC             COM       237266101   758     65598 SH      DEFINED           16,24,25        48188       0        17410
DARWIN PROFESSIONAL          COM       237502109   449     18561 SH      DEFINED           16,24,25        16741       0        1820
DASSAULT SYS A               SPONSORED 237545108   4       70 SH         DEFINED           16,24,25        70          0        0
DASSAULT SYS S A             SPONSORED 237545108   298     5070 SH       DEFINED           16,19,24,26,27   5070        0        0
DATAWATCH CORP               COM       237917208   444     75029 SH      DEFINED           16,24,25        71182       0        3847
DATASCOPE CORP               COM NEW   238113104   1909    52455 SH      DEFINED           7,11,13         50880       0        1575
DATASCOPE CORP               COM       238113104   1       18 SH         DEFINED           16,24,25        18          0        0
DAVITA INC                   COM       23918K108   3600    63878 SH      DEFINED           7,11            63878       0        0
DAVITA INC                   COM       23918K108   11      200 SH        DEFINED           7,11,13         200         0        0
DAVITA INC                   COM       23918K108   157     2790 SH       DEFINED           7,11,33         0           0        2790
DAVITA INC                   COM       23918K108   40784   723764 SH     DEFINED           16,24,25        636069      0        87695
DAVITA INC                   COM       23918K108   6646    117950 SH     DEFINED           32,40,41        117950      0        0
DAVITA INC                   COM       23918K108   3245    57588 SH  CALL DEFINED          16,24,25        57588       0        0
DAVITA INC                   COM       23918K108   3217    57088 SH  PUT  DEFINED          7,11            57088       0        0
DEALERTRACK HLDGS IN COM               242309102   60      1800 SH       DEFINED           30              1800        0        0
DEALERTRACK HLDGS IN COM               242309102   867     25889 SH      DEFINED           16,24,25        25889       0        0
DEAN FOODS CO NEW            COM       242370104   1142    44176 SH      DEFINED           7,11            44176       0        0
DEAN FOODS CO NEW            COM       242370104   13      500 SH        DEFINED           7,11,13         500         0        0
DEAN FOODS CO NEW            COM       242370104   10      400 SH        DEFINED           7,11,33         0           0        400
DEAN FOODS CO NEW            COM       242370104   1959    75737 SH      DEFINED           16,24,25        59367       0        16370
DEAN FOODS CO NEW            COM       242370104   380     14677 SH      DEFINED           32,40,41        14677       0        0
DECKERS OUTDOOR CORP COM               243537107   2680    17281 SH      DEFINED           7,11            17133       0        148
DECKERS OUTDOOR CORP COM               243537107   668     4307 SH       DEFINED           16,24,25        4299        0        8
DECKERS OUTDOOR CORP COM               243537107   1085    7000 SH  CALL DEFINED          16,24,25        7000        0        0
DECODE GENETICS INC  NOTE 3.50 243586A62          2626    3994000 PRN    DEFINED           16,24,25        3994000     0        0
DECODE GENETICS INC  NOTE 3.50 243586AD6          2630    4150000 PRN    DEFINED           16,24,25        4150000     0        0
DEERE & CO                   COM       244199105   736     7900 SH       DEFINED           30              7900        0        0
DEERE & CO                   COM       244199105   680     7300 SH       DEFINED           3,9             0           0        7300
DEERE & CO                   COM       244199105   8493    91202 SH      DEFINED           7,11            80302       0        10900
DEERE & CO                   COM       244199105   1460    15676 SH      DEFINED           7,11,13         13440       0        2236
DEERE & CO                   COM       244199105   317     3400 SH       DEFINED           7,11,33         0           0        3400
DEERE & CO                   COM       244199105   112177  1204651 SH    DEFINED           16,24,25        973793      0        230858
DEERE & CO                   COM       244199105   1362    14628 SH      DEFINED           32,40,41        14628       0        0
DEERE & CO                   COM       244199105   501     5382 SH       DEFINED           16,19,24,26,27   5382        0        0
DEERE & CO                   COM       244199105   46188   496000 SH  CALL DEFINED          15,16,24        496000      0        0
DEERE & CO                   COM       244199105   6267    67300 SH  CALL DEFINED          16,24,25        67300       0        0
DEERE & CO                   COM       244199105   58768   631100 SH  PUT  DEFINED          15,16,24        631100      0        0
DEERE & CO                   COM       244199105   15961   171400 SH  PUT  DEFINED          16,24,25        171400      0        0
DEFINED STRATEGY FD          COM       24476Y100   324     16764 SH      DEFINED           16,24,25        15497       0        1266
DEL MONTE FOODS CO           COM       24522P103   3       297 SH        DEFINED           3,9             0           0        297
DEL MONTE FOODS CO           COM       24522P103   209     22136 SH      DEFINED           7,11            9726        0        12410
DEL MONTE FOODS CO           COM       24522P103   175     18550 SH      DEFINED           7,11,13         16750       0        1800
DEL MONTE FOODS CO           COM       24522P103   556     58726 SH      DEFINED           16,24,25        44474       0        14252
DEL MONTE FOODS CO           COM       24522P103   47      5000 SH       DEFINED           5-7,11,43,44    0           5000     0
DELAWARE INVTS DIV & COM               245915103   47      21 SH         DEFINED           16,24           21          0        0
DELAWARE INVTS DIV & COM               245915103   534     51018 SH      DEFINED           16,24,25        28593       0        22424
DELAWARE ENHANCED GB COM               246060107   1655    109008 SH     DEFINED           16,24,25        95348       0        13660
DELAWAR INVTS AZ MUN COM               246100101   420     33732 SH      DEFINED           16,24,25        33732       0        0
```

```
DELAWARE INV CO INS     COM          246101109     190     12762 SH   DEFINED              16,24,25        12762        0        0
DELEK US HLDGS INC      COM          246647101    1677     82905 SH   DEFINED              16,24,25        81725        0     1180
DELL INC                COM          24702R101     108      4400 SH   DEFINED                    12            0        0     4400
DELL INC                COM          24702R101      25      1020 SH   DEFINED                   3,9            0        0     1020
DELL INC                COM          24702R101   30598   1248388 SH   DEFINED                  7,11      1215123        0    33265
DELL INC                COM          24702R101    1204     49126 SH   DEFINED              7,11,13         47126        0     2000
DELL INC                COM          24702R101     108      4390 SH   DEFINED              7,11,33            0         0     4390
DELL INC                COM          24702R101    7383    301207 SH   DEFINED              15,16,24       301207        0        0
DELL INC                COM          24702R101  127885   5217681 SH   DEFINED              16,24,25      4431883        0   785797
DELL INC                COM          24702R101    6391    260738 SH   DEFINED              32,40,41       260738        0        0
DELL INC                COM          24702R101     178      7245 SH   DEFINED              5-7,11,43,44       0      7245        0
DELL INC                COM          24702R101   21741    887029 SH   CALL DEFINED              7,11       887029        0        0
DELL INC                COM          24702R101   37331   1523100 SH   DEFINED              15,16,24      1523100        0        0
DELL INC                COM          24702R101   18103    738600 SH   CALL DEFINED         16,24,25       738600        0        0
DELL INC                COM          24702R101   46356   1891300 SH   PUT DEFINED          15,16,24      1891300        0        0
DELL INC                COM          24702R101   20903    852833 SH   DEFINED              16,24,25       852833        0        0
DELTA AIR LINES INC     COM NEW      247361702      44      2954 SH   DEFINED                  7,11         2954        0        0
DELTA AIR LINES INC     COM NEW      247361702    9406    631668 SH   DEFINED              15,16,24       631668        0        0
DELTA AIR LINES INC     COM NEW      247361702   23210   1558743 SH   DEFINED              16,24,25      1534814        0    23929
DELTA AIR LINES INC     COM NEW      247361702      54      3600 SH   DEFINED              32,40,41         3600        0        0
DELTA AIR LINES INC     COM NEW      247361702    5235    351600 SH   CALL DEFINED         15,16,24       351600        0        0
DELTA AIR LINES INC     COM NEW      247361702     745     50000 SH   DEFINED              16,24,25        50000        0        0
DELTA AIR LINES INC     COM NEW      247361702   10453    702000 SH   PUT DEFINED          15,16,24       702000        0        0
DELTA GALIL INDS LTD    SPONSORED    247637101     615    103392 SH   DEFINED              16,24,25        90672        0    12720
DELTIC TIMBER CORP      COM          247850100     255      4944 SH   DEFINED              16,24,25         4773        0      171
DELTA PETE CORP         COM NEW      247907207    5132    272245 SH   DEFINED              15,16,24       272245        0        0
DELTA PETE CORP         COM NEW      247907207    5441    288630 SH   DEFINED              16,24,25       162841        0   125789
DELTA PETE CORP         COM NEW      247907207    2051    108800 SH   CALL DEFINED         15,16,24       108800        0        0
DELTA PETE CORP         COM NEW      247907207       4       200 SH   DEFINED              16,24,25          200        0        0
DELTA PETE CORP         COM NEW      247907207    8328    441800 SH   PUT DEFINED          15,16,24       441800        0        0
DELTA PETE CORP         COM NEW      247907207      19      1000 SH   PUT DEFINED          16,24,25         1000        0        0
DENBURY RES INC         COM NEW      247916208      87      2918 SH   DEFINED                  7,11         2918        0        0
DENBURY RES INC         COM NEW      247916208    2346     78872 SH   DEFINED              15,16,24        78872        0        0
DENBURY RES INC         COM NEW      247916208    1137     38230 SH   DEFINED              16,24,25        37704        0      526
DENBURY RES INC         COM NEW      247916208     306     10294 SH   DEFINED              32,40,41        10294        0        0
DENBURY RES INC         COM NEW      247916208    5322    178900 SH   CALL DEFINED         15,16,24       178900        0        0
DENBURY RES INC         COM NEW      247916208    1842     61900 SH   PUT DEFINED          15,16,24        61900        0        0
DELTA FINANCIAL CORP    COM          247918105       6    129841 SH   DEFINED              16,24,25       129523        0      318
DELTA FINANCIAL CORP    COM          247918105       1     11000 SH   CALL DEFINED         16,24,25        11000        0        0
DELUXE CORP             COM          248019101      12       371 SH   DEFINED                  7,11            0        0      371
DELUXE CORP             COM          248019101     985     29943 SH   DEFINED              16,24,25        29496        0      446
DENALI FD INC           COM          24823A102    1802    103500 SH   DEFINED                 16,24       103500        0        0
DENALI FD INC           COM          24823A102      84      4797 SH   DEFINED              16,24,25         4497        0      300
DENDREON CORP           COM          24823Q107    1311    210696 SH   DEFINED              15,16,24       210696        0        0
DENDREON CORP           COM          24823Q107     253     40754 SH   DEFINED              16,24,25        35111        0     5643
DENDREON CORP           COM          24823Q107    2302    370100 SH   CALL DEFINED         15,16,24       370100        0        0
DENDREON CORP           COM          24823Q107      12      2000 SH   DEFINED              16,24,25         2000        0        0
DENDREON CORP           COM          24823Q107    2539    408200 SH   PUT DEFINED          15,16,24       408200        0        0
DENISON MINES CORP      COM          248356107   13102   1468800 SH   DEFINED                    42      1468800        0        0
DENISON MINES CORP      COM          248356107       5       506 SH   DEFINED              16,24,25          506        0        0
DENISON MINES CORP      COM          248356107     633     71000 SH   DEFINED              4,6,7,11        71000        0        0
DENTSPLY INTL INC NE    COM          249030107      18     15627 SH   DEFINED                    12            0        0      400
DENTSPLY INTL INC NE    COM          249030107     704     15627 SH   DEFINED                  7,11        15627        0        0
DENTSPLY INTL INC NE    COM          249030107     138      3058 SH   DEFINED                 16,24         3058        0        0
DENTSPLY INTL INC NE    COM          249030107      41       900 SH   DEFINED              7,11,33           900        0        0
DENTSPLY INTL INC NE    COM          249030107     357      7926 SH   DEFINED              15,16,24         7926        0        0
DENTSPLY INTL INC NE    COM          249030107    6827    151643 SH   DEFINED              16,24,25       126954        0    24689
DENTSPLY INTL INC NE    COM          249030107     389      8640 SH   DEFINED              32,40,41         8640        0        0
DENTSPLY INTL INC NE    COM          249030107     158      3500 SH   PUT DEFINED          15,16,24         3500        0        0
DEPOMED INC             COM          249908104      35     10700 SH   DEFINED                  7,11        10700        0        0
DEPOMED INC             COM          249908104       5      1502 SH   DEFINED              16,24,25         1502        0        0
DESARROLLADORA HOMEX    SPONSORED    25030W100    1199     24239 SH   DEFINED              16,24,25        19540        0     4699
DESARROLLADORA HOMEX    SPONSORED    25030W100      29       585 SH   DEFINED              32,40,41          585        0        0
DEUTSCHE TELEKOM AG     SPONSORED    251566105     235     10838 SH   DEFINED                  7,11            0        0    10838
DEUTSCHE TELEKOM AG     SPONSORED    251566105       9       400 SH   DEFINED              7,11,13           400        0        0
DEUTSCHE TELEKOM AG     SPONSORED    251566105     406     18741 SH   DEFINED              15,16,24        18741        0        0
DEUTSCHE TELEKOM AG     SPONSORED    251566105    7212    332797 SH   DEFINED              16,24,25       284688        0    48109
DEUTSCHE TELEKOM AG     SPONSORED    251566105   26823   1237800 SH   DEFINED   2,6,7,10-11,18,20,21,28  1237800        0        0
DEUTSCHE TELEKOM AG     SPONSORED    251566105     475     21900 SH   CALL DEFINED         15,16,24        21900        0        0
DEUTSCHE TELEKOM AG     SPONSORED    251566105     449     20700 SH   PUT DEFINED          15,16,24        20700        0        0
DEVELOPERS DIVERSIFI    COM          251591103    1960     51194 SH   DEFINED                  7,11        16194        0    35000
DEVELOPERS DIVERSIFI    COM          251591103    3527     92100 SH   DEFINED                 14,31        92100        0        0
DEVELOPERS DIVERSIFI    COM          251591103       8       200 SH   DEFINED                 31,45          200        0        0
DEVELOPERS DIVERSIFI    COM          251591103       7       175 SH   DEFINED              7,11,13          175        0        0
DEVELOPERS DIVERSIFI    COM          251591103     863     22542 SH   DEFINED              16,24,25        15403        0     7139
DEVELOPERS DIVERSIFI    COM          251591103    3613     94355 SH   DEFINED              32,40,41        94355        0        0
DEVELOPERS DIVERSIFI    COM          251591103     110      2870 SH   DEFINED              16,19,24,26,27    2870        0        0
DEVON ENERGY CORP NE    DEB    4.90  25179MAA1      98     56000 PRN  DEFINED                  7,11            0        0    56000
DEVON ENERGY CORP NE    DEB    4.95  25179MAA1   60839   3489000 PRN  DEFINED              16,24,25      3489000        0        0
DEVON ENERGY CORP NE    DEB    4.95  25179MAB9    1563    983000 PRN  DEFINED              16,24,25       983000        0        0
DEVON ENERGY CORP NE    COM          25179M103     600      6750 SH   DEFINED                    12            0        0     6750
DEVON ENERGY CORP NE    COM          25179M103    8518     95800 SH   DEFINED                   3,9            0        0      310
DEVON ENERGY CORP NE    COM          25179M103      28       310 SH   DEFINED                   3,9            0        0      310
DEVON ENERGY CORP NE    COM          25179M103    8168     91866 SH   DEFINED                  7,11        68264        0    23602
DEVON ENERGY CORP NE    COM          25179M103     540      6078 SH   DEFINED              7,11,13         2683        0     3395
DEVON ENERGY CORP NE    COM          25179M103      36       400 SH   DEFINED              7,11,33            0        0      400
DEVON ENERGY CORP NE    COM          25179M103   33237    373823 SH   DEFINED              16,24,25       253854        0   119969
DEVON ENERGY CORP NE    COM          25179M103    1211     13624 SH   DEFINED              32,40,41        13624        0        0
DEVON ENERGY CORP NE    COM          25179M103   45575    512600 SH   CALL DEFINED         15,16,24       512600        0        0
DEVON ENERGY CORP NE    COM          25179M103    3805     42800 SH   CALL DEFINED         16,24,25        42800        0        0
DEVON ENERGY CORP NE    COM          25179M103   46953    528100 SH   PUT DEFINED          15,16,24       528100        0        0
DEVON ENERGY CORP NE    COM          25179M103    2970     33400 SH   PUT DEFINED          16,24,25        33400        0        0
DEVRY INC DEL           COM          251893103    1343     25852 SH   DEFINED                  7,11        25852        0        0
DEVRY INC DEL           COM          251893103     893     17190 SH   DEFINED              16,24,25        16186        0     1004
DEXCOM INC              COM          252131107     185     20989 SH   DEFINED              16,24,25        20802        0      187
DIAGEO P L C            SPON ADR N   25243Q205     959     11168 SH   DEFINED              7,11,13         8894        0     2274
DIAGEO P L C            SPON ADR N   25243Q205      35       410 SH   DEFINED              7,11,33            0        0      410
DIAGEO P L C            SPON ADR N   25243Q205     535      6237 SH   DEFINED              15,16,24         6237        0        0
DIAGEO P L C            SPON ADR N   25243Q205   26007    303008 SH   DEFINED              16,24,25       231799        0    71208
DIAGEO P L C            SPON ADR N   25243Q205   14185    165274 SH   DEFINED           16,19,24,26,29    165274        0        0
DIAGEO P L C            SPON ADR N   25243Q205    2781     32400 SH   CALL DEFINED         15,16,24        32400        0        0
DIAGEO P L C            SPON ADR N   25243Q205    4137     48200 SH   PUT DEFINED          15,16,24        48200        0        0
DIAMOND OFFSHORE DRI    DBCV   1.50  25271CAE2      69     24000 PRN  DEFINED              16,24,25        24000        0        0
DIAMOND OFFSHORE DRI    COM          25271C102     185      1300 SH   DEFINED                    30         1300        0        0
DIAMOND OFFSHORE DRI    COM          25271C102    3919     27600 SH   DEFINED                    42        27600        0        0
DIAMOND OFFSHORE DRI    COM          25271C102    2332     16422 SH   DEFINED                  7,11        16422        0        0
DIAMOND OFFSHORE DRI    COM          25271C102    2684     18902 SH   DEFINED              7,11,13        18902        0        0
DIAMOND OFFSHORE DRI    COM          25271C102    1468     10339 SH   DEFINED              15,16,24        10339        0        0
DIAMOND OFFSHORE DRI    COM          25271C102   45594    321082 SH   DEFINED              16,24,25       291704        0    29378
DIAMOND OFFSHORE DRI    COM          25271C102   36818    259285 SH   DEFINED              32,40,41       259285        0        0
DIAMOND OFFSHORE DRI    COM          25271C102     298      2100 SH   DEFINED           16,19,24,26,27     2100        0        0
DIAMOND OFFSHORE DRI    COM          25271C102   65845    463700 SH   CALL DEFINED         15,16,24       463700        0        0
DIAMOND OFFSHORE DRI    COM          25271C102   10054     70800 SH   CALL DEFINED         16,24,25        70800        0        0
DIAMOND OFFSHORE DRI    COM          25271C102   91491    644300 SH   PUT DEFINED          15,16,24       644300        0        0
```

```
DIAMOND OFFSHORE DRI  COM           25271C102  11729   82600 SH  PUT DEFINED  16,24,25      82600      0        0
DIAMONDROCK HOSPITAL  COM           252784301  68       4550 SH      DEFINED        30       4550      0        0
DIAMONDROCK HOSPITAL  COM           252784301  91       6089 SH      DEFINED  16,24,25       4536      0     1553
DIAMONDROCK HOSPITAL  COM           252784301  4431   295810 SH      DEFINED  32,40,41     295810      0        0
DIAMONDS TR           UNIT SER 1    252787106  76808  579463 SH      DEFINED  16,24,25     539127      0    40336
DIAMONDS TR           UNIT SER 1    252787106  693422 5231400 SH      DEFINED  15,16,24    5231400      0        0
DIAMONDS TR           UNIT SER 1    252787106  27199  205200 SH  CALL DEFINED  16,24,25     205200      0        0
DIAMONDS TR           UNIT SER 1    252787106  977463 7374300 SH  PUT DEFINED  15,16,24    7374300      0        0
DIAMONDS TR           UNIT SER 1    252787106  45200  341000 SH  PUT DEFINED  16,24,25     341000      0        0
DICKS SPORTING GOODS  COM           253393102  28       1010 SH      DEFINED     7,11       1010      0        0
DICKS SPORTING GOODS  COM           253393102  343     12345 SH      DEFINED     7,11,13   12345      0        0
DICKS SPORTING GOODS  COM           253393102  50       1800 SH      DEFINED     7,11,33       0      0     1800
DICKS SPORTING GOODS  COM           253393102  386     13890 SH      DEFINED  15,16,24     13890      0        0
DICKS SPORTING GOODS  COM           253393102  4076   146838 SH      DEFINED  16,24,25    132789      0    14049
DICKS SPORTING GOODS  COM           253393102  3217   115900 SH  CALL DEFINED  15,16,24    115900      0        0
DICKS SPORTING GOODS  COM           253393102  1344    48400 SH  CALL DEFINED  16,24,25     48400      0        0
DICKS SPORTING GOODS  COM           253393102  6826   245900 SH  PUT DEFINED  16,24,25     245900      0        0
DICKS SPORTING GOODS  COM           253393102  1666    60000 SH  PUT DEFINED  15,16,24     60000      0        0
DIEBOLD INC           COM           253651103  164      5649 SH      DEFINED     7,11       3949      0     1700
DIEBOLD INC           COM           253651103  2035    70221 SH      DEFINED     7,11,13   69971      0      250
DIEBOLD INC           COM           253651103  2392    82527 SH      DEFINED  16,24,25     68753      0    13774
DIEBOLD INC           COM           253651103  154      5300 SH      DEFINED  32,40,41      5300      0        0
DIGIMARC CORP         COM           253807101  228     25797 SH      DEFINED  16,24,25     11550      0    14247
DIGITAL ANGEL CORP    COM           253830103  6       10000 SH      DEFINED  16,24,25     10000      0        0
DIGITAL RLTY TR INC   COM           253868103  2858    74480 SH      DEFINED     7,11      74480      0        0
DIGITAL RLTY TR INC   COM           253868103  5763   150200 SH      DEFINED    14,31     150200      0        0
DIGITAL RLTY TR INC   COM           253868103  7        195 SH      DEFINED     7,11,33       0      0      195
DIGITAL RLTY TR INC   COM           253868103  1018    26539 SH      DEFINED  16,24,25     26507      0       32
DIGITAL RLTY TR INC   COM           253868103  25061  653149 SH      DEFINED  32,40,41    653149      0        0
DIGITAL RIV INC       COM           25388B104  3855   116566 SH      DEFINED     7,11     116566      0        0
DIGITAL RIV INC       COM           25388B104  1236    37366 SH      DEFINED  15,16,24     37366      0        0
DIGITAL RIV INC       COM           25388B104  3249    98248 SH      DEFINED  16,24,25     97313      0      935
DIGITAL RIV INC       COM           25388B104  2705    81788 SH  CALL DEFINED     7,11     81788      0        0
DIGITAL RIV INC       COM           25388B104  2794    84500 SH  CALL DEFINED  15,16,24     84500      0        0
DIGITAL RIV INC       COM           25388B104  605     18300 SH  CALL DEFINED  16,24,25     18300      0        0
DIGITAL RIV INC       COM           25388B104  3849   116400 SH  PUT DEFINED  15,16,24    116400      0        0
DIGITAL RIV INC       COM           25388B104  4193   126788 SH  PUT DEFINED  16,24,25    126788      0        0
DILLARDS INC          CL A          254067101  66       3497 SH      DEFINED     7,11       3327      0      170
DILLARDS INC          CL A          254067101  657     34982 SH      DEFINED  15,16,24     34982      0        0
DILLARDS INC          CL A          254067101  1636    87100 SH      DEFINED  16,24,25     86233      0      867
DILLARDS INC          CL A          254067101  1         56 SH      DEFINED  32,40,41        56      0        0
DILLARDS INC          CL A          254067101  2667   142000 SH  CALL DEFINED  15,16,24    142000      0        0
DILLARDS INC          CL A          254067101  3226   171800 SH  PUT DEFINED  15,16,24    171800      0        0
DIME BANCORP INC NEW  *W EXP 99/    25429Q110  9        475 SH      DEFINED     7,11,13     475      0        0
DIME BANCORP INC NEW  *W EXP 99/    25429Q110  0        475 SH      DEFINED  16,24,25     20950      0     4490
DIODES INC            COM           254543101  972     32333 SH      DEFINED  16,24,25     31914      0      419
DIONEX CORP           COM           254546104  182      2200 SH      DEFINED        30       2200      0        0
DIONEX CORP           COM           254546104  173      2090 SH      DEFINED     7,11       2090      0        0
DIONEX CORP           COM           254546104  167      2016 SH      DEFINED  16,24,25      1330      0      686
DIONEX CORP           COM           254546104  249      3000 SH      DEFINED  32,40,41      3000      0        0
DIRECTV GROUP INC     COM           25459L106  664     28700 SH      DEFINED        30      28700      0        0
DIRECTV GROUP INC     COM           25459L106  6967   301345 SH      DEFINED     7,11     292415      0     8930
DIRECTV GROUP INC     COM           25459L106  496     21472 SH      DEFINED     7,11,13   21472      0        0
DIRECTV GROUP INC     COM           25459L106  18780  812266 SH      DEFINED  16,24,25    591509      0   220757
DIRECTV GROUP INC     COM           25459L106  1199    51851 SH      DEFINED  32,40,41     51851      0        0
DIRECTV GROUP INC     COM           25459L106  5054   218600 SH  CALL DEFINED  15,16,24    218600      0        0
DIRECTV GROUP INC     COM           25459L106  344     14900 SH  CALL DEFINED  16,24,25     14900      0        0
DIRECTV GROUP INC     COM           25459L106  3942   170500 SH  PUT DEFINED  15,16,24    170500      0        0
DIRECTV GROUP INC     COM           25459L106  553     23900 SH  PUT DEFINED  16,24,25     23900      0        0
DISCOVERY LABORATORI  COM           25466B106  166     77089 SH      DEFINED  16,24,25     77089      0        0
DISCOVERY HOLDING CO  CL A COM      25468Y107  1273    50617 SH      DEFINED     7,11      25487      0    25130
DISCOVERY HOLDING CO  CL A COM      25468Y107  10       400 SH      DEFINED     7,11,13       0      0      400
DISCOVERY HOLDING CO  CL A COM      25468Y107  24       944 SH      DEFINED     7,11,33       0      0      944
DISCOVERY HOLDING CO  CL A COM      25468Y107  20059  797877 SH      DEFINED  16,24,25    736462      0    61415
DISCOVERY HOLDING CO  CL A COM      25468Y107  834     33191 SH      DEFINED  32,40,41     33191      0        0
DISCOVERY HOLDING CO  CL A COM      25468Y107  10       400 SH      DEFINED  5-7,11,43,44     0    400        0
DISNEY WALT CO        NOTE  2.12    254687AU0  1349  1183000 PRN      DEFINED  16,24,25   1083000      0   100000
DISNEY WALT CO        COM DISNEY    254687106  481     14900 SH      DEFINED        12       0      0    14900
DISNEY WALT CO        COM DISNEY    254687106  27       836 SH      DEFINED      3,9        0      0      836
DISNEY WALT CO        COM DISNEY    254687106  71032 2200497 SH      DEFINED     7,11    1711306   3000   486191
DISNEY WALT CO        COM DISNEY    254687106  3390  108425 SH      DEFINED     7,11,13  104593      0     3832
DISNEY WALT CO        COM DISNEY    254687106  324    10044 SH      DEFINED     7,11,33       0      0    10044
DISNEY WALT CO        COM DISNEY    254687106  217536 6739023 SH      DEFINED  16,24,25   5529688      0  1209335
DISNEY WALT CO        COM DISNEY    254687106  15837  490620 SH      DEFINED  32,40,41    490620      0        0
DISNEY WALT CO        COM DISNEY    254687106  539    16695 SH      DEFINED  5-7,11,43,44     0  16695        0
DISNEY WALT CO        COM DISNEY    254687106  65      2011 SH      DEFINED  16,19,24,26,27  2011      0        0
DISNEY WALT CO        COM DISNEY    254687106  2247   69600 SH  CALL DEFINED     7,11     69600      0        0
DISNEY WALT CO        COM DISNEY    254687106  23474  727200 SH  CALL DEFINED  15,16,24    727200      0        0
DISNEY WALT CO        COM DISNEY    254687106  12805  396700 SH  CALL DEFINED  16,24,25    396700      0        0
DISNEY WALT CO        COM DISNEY    254687106  12612  390700 SH  PUT DEFINED  15,16,24    390700      0        0
DISNEY WALT CO        COM DISNEY    254687106  19791  613100 SH  PUT DEFINED  16,24,25    613100      0        0
DISCOVER FINL SVCS    COM           254709108  191    12675 SH      DEFINED        12       0      0    12675
DISCOVER FINL SVCS    COM           254709108  8613  571171 SH      DEFINED     7,11     416613   1350   153208
DISCOVER FINL SVCS    COM           254709108  136     9000 SH      DEFINED     16,24      9000      0        0
DISCOVER FINL SVCS    COM           254709108  40      2641 SH      DEFINED     7,11,33     441      0      200
DISCOVER FINL SVCS    COM           254709108  3        200 SH      DEFINED     7,11,33       0      0      200
DISCOVER FINL SVCS    COM           254709108  3207  212648 SH      DEFINED  16,24,25    194055      0    18593
DISCOVER FINL SVCS    COM           254709108  216    14354 SH      DEFINED  32,40,41     14354      0        0
DISCOVER FINL SVCS    COM           254709108  76     5033 SH      DEFINED  5-7,11,43,44     0   5033        0
DISCOVER FINL SVCS    COM           254709108  4096  271600 SH  CALL DEFINED  15,16,24    271600      0        0
DISCOVER FINL SVCS    COM           254709108  101    6700 SH  CALL DEFINED  16,24,25      6700      0        0
DISCOVER FINL SVCS    COM           254709108  5002  331700 SH  PUT DEFINED  15,16,24    331700      0        0
DISCOVER FINL SVCS    COM           254709108  302    20000 SH  PUT DEFINED  16,24,25     20000      0        0
DIVX INC              COM           25541310G  185    13208 SH      DEFINED     7,11,13   13208      0        0
DIVX INC              COM           25541310G  34      2450 SH      DEFINED  16,24,25      1950      0      500
DIXIE GROUP INC       SDCV  7.00    255519AA8  940  1000000 PRN      DEFINED  16,24,25   1000000      0        0
DR REDDYS LABS LTD    ADR           256135203  557    30652 SH      DEFINED  16,24,25     25674      0     4977
DR REDDYS LABS LTD    ADR           256135203  0        16 SH      DEFINED  16,17,22-24    16      0        0
DR REDDYS LABS LTD    ADR           256135203  605    33300 SH      DEFINED  16,19,24,26,27 33300      0        0
DOCUMENT SCIENCES CO  COM           256514R105  209   14400 SH      DEFINED  16,24,25     14100      0      300
DOCUMENT SEC SYS INC  COM           25614T101  235    36192 SH      DEFINED  16,24,25     24506      0    11686
DOLBY LABORATORIES I  COM           25659T107  24      480 SH      DEFINED     7,11        480      0        0
DOLBY LABORATORIES I  COM           25659T107  4937  99300 SH      DEFINED  16,24,25     68859      0    30441
DOLLAR FINL CORP      COM           256664103  18410 599878 SH      DEFINED     16,24    599878      0        0
DOLLAR FINL CORP      COM           256664103  703   22900 SH      DEFINED  16,24,25     22900      0        0
DOLLAR TREE STORES I  COM           256747106  297   11450 SH      DEFINED      3,9        0      0    11450
DOLLAR TREE STORES I  COM           256747106  2060  79462 SH      DEFINED     7,11      79462      0        0
DOLLAR TREE STORES I  COM           256747106  71     2751 SH      DEFINED     16,24      2751      0        0
DOLLAR TREE STORES I  COM           256747106  40     1525 SH      DEFINED     7,11,13    1525      0        0
DOLLAR TREE STORES I  COM           256747106  184    7101 SH      DEFINED  15,16,24      7101      0        0
DOLLAR TREE STORES I  COM           256747106  7466  288034 SH      DEFINED  16,24,25    283239      0     4795
DOLLAR TREE STORES I  COM           256747106  347   13400 SH      DEFINED  32,40,41     13400      0        0
DOLLAR TREE STORES I  COM           256747106  1477  57000 SH  CALL DEFINED  15,16,24     57000      0        0
DOLLAR TREE STORES I  COM           256747106  47     1800 SH  CALL DEFINED  16,24,25      1800      0        0
```

| Security | CUSIP | | Value | Unit | Opt | | Category | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DOLLAR TREE STORES I COM | 256747106 | 785 | 30300 | SH | PUT | DEFINED | 15,16,24 | 30300 | 0 | 0 |
| DOLLAR TREE STORES I COM | 256747106 | 174 | 6700 | SH | PUT | DEFINED | 16,24,25 | 6700 | 0 | 0 |
| DOMINION RES INC VA NOTE 2.12 | 25746UAT6 | 57 | 44000 | PRN | | DEFINED | 16,24,25 | 44000 | 0 | 0 |
| DOMINION RES INC VA COM | 25746U109 | 1499 | 31592 | SH | | DEFINED | 12 | 0 | 0 | 31592 |
| DOMINION RES INC VA COM | 25746U109 | 9665 | 203695 | SH | | DEFINED | 7,11 | 136373 | 0 | 67322 |
| DOMINION RES INC VA COM | 25746U109 | 468 | 9865 | SH | | DEFINED | 7,11,13 | 9865 | 0 | 0 |
| DOMINION RES INC VA COM | 25746U109 | 23087 | 486546 | SH | | DEFINED | 16,24,25 | 425446 | 0 | 61099 |
| DOMINION RES INC VA COM | 25746U109 | 15926 | 335640 | SH | | DEFINED | 32,40,41 | 335640 | 0 | 0 |
| DOMINION RES INC VA COM | 25746U109 | 912 | 19210 | SH | | DEFINED | 5-7,11,43,44 | 0 | 19210 | 0 |
| DOMINION RES INC VA COM | 25746U109 | 594 | 12512 | SH | | DEFINED | 16,19,24,26,27 | 12512 | 0 | 0 |
| DOMINION RES INC VA COM | 25746U109 | 13291 | 280100 | SH | CALL | DEFINED | 15,16,24 | 280100 | 0 | 0 |
| DOMINION RES INC VA COM | 25746U109 | 10472 | 220700 | SH | CALL | DEFINED | 16,24,25 | 220700 | 0 | 0 |
| DOMINION RES INC VA COM | 25746U109 | 19867 | 418700 | SH | PUT | DEFINED | 15,16,24 | 418700 | 0 | 0 |
| DOMINION RES INC VA COM | 25746U109 | 11896 | 250700 | SH | PUT | DEFINED | 16,24,25 | 250700 | 0 | 0 |
| DOMINOS PIZZA INC COM | 25754A201 | 1737 | 131275 | SH | | DEFINED | 7,11 | 131275 | 0 | 0 |
| DOMINOS PIZZA INC COM | 25754A201 | 4202 | 317636 | SH | | DEFINED | 16,24,25 | 316487 | 0 | 1149 |
| DOMTAR CORP COM | 257559104 | 22 | 2822 | SH | | DEFINED | 7,11 | 2822 | 0 | 0 |
| DOMTAR CORP COM | 257559104 | 819 | 106560 | SH | | DEFINED | 16,24,25 | 93509 | 0 | 13051 |
| DOMTAR CORP COM | 257559104 | 263 | 34170 | SH | | DEFINED | 32,40,41 | 34170 | 0 | 0 |
| DONALDSON INC COM | 257651109 | 233 | 5021 | SH | | DEFINED | 7,11 | 5021 | 0 | 0 |
| DONALDSON INC COM | 257651109 | 1004 | 21645 | SH | | DEFINED | 7,11,13 | 21545 | 0 | 100 |
| DONALDSON INC COM | 257651109 | 26 | 565 | SH | | DEFINED | 7,11,33 | 0 | 0 | 565 |
| DONALDSON INC COM | 257651109 | 632 | 13627 | SH | | DEFINED | 16,24,25 | 10562 | 0 | 3065 |
| DONNELLEY R R & SONS COM | 257867101 | 381 | 10100 | SH | | DEFINED | 30 | 10100 | 0 | 0 |
| DONNELLEY R R & SONS COM | 257867101 | 381 | 10100 | SH | | DEFINED | 3,9 | 0 | 0 | 10100 |
| DONNELLEY R R & SONS COM | 257867101 | 2844 | 75370 | SH | | DEFINED | 7,11 | 68630 | 0 | 6740 |
| DONNELLEY R R & SONS COM | 257867101 | 406 | 10769 | SH | | DEFINED | 7,11,13 | 10519 | 0 | 250 |
| DONNELLEY R R & SONS COM | 257867101 | 57 | 1500 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1500 |
| DONNELLEY R R & SONS COM | 257867101 | 19561 | 518299 | SH | | DEFINED | 16,24,25 | 449616 | 0 | 68683 |
| DONNELLEY R R & SONS COM | 257867101 | 485 | 12859 | SH | | DEFINED | 32,40,41 | 12859 | 0 | 0 |
| DORAL FINL CORP COM NEW | 25811P886 | 3 | 169 | SH | | DEFINED | 15,16,24 | 169 | 0 | 0 |
| DORAL FINL CORP COM NEW | 25811P886 | 2 | 99 | SH | | DEFINED | 7,11 | 31 | 0 | 68 |
| DORAL FINL CORP COM NEW | 25811P886 | 5085 | 281900 | SH | CALL | DEFINED | 15,16,24 | 281900 | 0 | 0 |
| DORCHESTER MINERALS COM UNIT | 25820R105 | 299 | 14831 | SH | | DEFINED | 16,24,25 | 14831 | 0 | 0 |
| DOUGLAS EMMETT INC COM | 25960P109 | 8965 | 396500 | SH | | DEFINED | 14,31 | 396500 | 0 | 0 |
| DOUGLAS EMMETT INC COM | 25960P109 | 57 | 2501 | SH | | DEFINED | 16,24,25 | 2501 | 0 | 0 |
| DOUGLAS EMMETT INC COM | 25960P109 | 2990 | 132253 | SH | | DEFINED | 32,40,41 | 132253 | 0 | 0 |
| DOVER CORP COM | 260003108 | 300 | 6500 | SH | | DEFINED | 12 | 0 | 0 | 6500 |
| DOVER CORP COM | 260003108 | 3460 | 75080 | SH | | DEFINED | 7,11 | 15086 | 0 | 59994 |
| DOVER CORP COM | 260003108 | 937 | 20337 | SH | | DEFINED | 7,11,13 | 18962 | 0 | 1375 |
| DOVER CORP COM | 260003108 | 105 | 2275 | SH | | DEFINED | 7,11,33 | 0 | 0 | 2275 |
| DOVER CORP COM | 260003108 | 15953 | 346128 | SH | | DEFINED | 16,24,25 | 275375 | 0 | 70753 |
| DOVER CORP COM | 260003108 | 272 | 5899 | SH | | DEFINED | 32,40,41 | 5899 | 0 | 0 |
| DOVER MOTORSPORTS IN COM | 260174107 | 762 | 116306 | SH | | DEFINED | 16,24,25 | 88206 | 0 | 28100 |
| DOW CHEM CO COM | 260543103 | 225 | 5700 | SH | | DEFINED | 12 | 0 | 0 | 5700 |
| DOW CHEM CO COM | 260543103 | 737 | 18700 | SH | | DEFINED | 30 | 18700 | 0 | 0 |
| DOW CHEM CO COM | 260543103 | 1121 | 28428 | SH | | DEFINED | 3,9 | 0 | 0 | 28428 |
| DOW CHEM CO COM | 260543103 | 23652 | 599998 | SH | | DEFINED | 7,11 | 357185 | 9200 | 233613 |
| DOW CHEM CO COM | 260543103 | 1025 | 26000 | SH | | DEFINED | 16,24 | 26000 | 0 | 0 |
| DOW CHEM CO COM | 260543103 | 750 | 19028 | SH | | DEFINED | 7,11,13 | 7980 | 0 | 11048 |
| DOW CHEM CO COM | 260543103 | 204 | 5165 | SH | | DEFINED | 7,11,33 | 0 | 0 | 5165 |
| DOW CHEM CO COM | 260543103 | 71207 | 1806358 | SH | | DEFINED | 16,24,25 | 1502500 | 0 | 303858 |
| DOW CHEM CO COM | 260543103 | 3918 | 99392 | SH | | DEFINED | 32,40,41 | 99392 | 0 | 0 |
| DOW CHEM CO COM | 260543103 | 178 | 4505 | SH | | DEFINED | 5-7,11,43,44 | 0 | 4505 | 0 |
| DOW CHEM CO COM | 260543103 | 6926 | 175705 | SH | CALL | DEFINED | 7,11 | 175705 | 0 | 0 |
| DOW CHEM CO COM | 260543103 | 21251 | 539100 | SH | CALL | DEFINED | 15,16,24 | 539100 | 0 | 0 |
| DOW CHEM CO COM | 260543103 | 7151 | 181400 | SH | CALL | DEFINED | 16,24,25 | 181400 | 0 | 0 |
| DOW CHEM CO COM | 260543103 | 7884 | 200000 | SH | PUT | DEFINED | 7,11 | 200000 | 0 | 0 |
| DOW CHEM CO COM | 260543103 | 13332 | 338200 | SH | PUT | DEFINED | 15,16,24 | 338200 | 0 | 0 |
| DOW CHEM CO COM | 260543103 | 22458 | 569705 | SH | PUT | DEFINED | 16,24,25 | 569705 | 0 | 0 |
| DOWNEY FINL CORP COM | 261018105 | 13 | 408 | SH | | DEFINED | 7,11 | 0 | 0 | 408 |
| DOWNEY FINL CORP COM | 261018105 | 391 | 12557 | SH | | DEFINED | 16,24,25 | 11642 | 0 | 915 |
| DREMAN/CLAYMORE DIVI COM | 26153R100 | 4954 | 313523 | SH | | DEFINED | 16,24,25 | 244318 | 0 | 69204 |
| DREMAN/CLAYMORE DIVI COM | 26153R100 | 32 | 2000 | SH | | DEFINED | 7,11 | 2000 | 0 | 0 |
| DRESS BARN INC COM | 26157010S | 1213 | 96932 | SH | | DEFINED | 16,24,26,27 | 74517 | 0 | 22415 |
| DRESSER-RAND GROUP I COM | 261608103 | 1800 | 46100 | SH | | DEFINED | 42 | 46100 | 0 | 0 |
| DRESSER-RAND GROUP I COM | 261608103 | 4258 | 109051 | SH | | DEFINED | 7,11 | 109051 | 0 | 0 |
| DRESSER-RAND GROUP I COM | 261608103 | 3355 | 85925 | SH | | DEFINED | 16,24,25 | 58271 | 0 | 27654 |
| DRESSER-RAND GROUP I COM | 261608103 | 555 | 14200 | SH | | DEFINED | 32,40,41 | 14200 | 0 | 0 |
| DRESSER-RAND GROUP I COM | 261608103 | 1050 | 26900 | SH | CALL | DEFINED | 15,16,24 | 26900 | 0 | 0 |
| DRESSER-RAND GROUP I COM | 261608103 | 750 | 19200 | SH | PUT | DEFINED | 15,16,24 | 19200 | 0 | 0 |
| DREYFUS STRATEGIC MU COM | 261932107 | 4 | 500 | SH | | DEFINED | 7,11 | 0 | 0 | 500 |
| DREYFUS STRATEGIC MU COM | 261932107 | 20 | 2481 | SH | | DEFINED | 7,11,13 | 2481 | 0 | 0 |
| DREYFUS STRATEGIC MU COM | 261932107 | 453 | 55098 | SH | | DEFINED | 16,24,25 | 48406 | 0 | 6691 |
| DREYFUS HIGH YIELD S SH BEN INT | 26200S101 | 81 | 21566 | SH | | DEFINED | 16,24,25 | 17049 | 0 | 4517 |
| DREYFUS HIGH YIELD S SH BEN INT | 26200S101 | 47 | 12500 | SH | | DEFINED | 16,19,24,26,27 | 12500 | 0 | 0 |
| DREYFUS MUN INCOME I SH BEN INT | 26201R102 | 195 | 23450 | SH | | DEFINED | 16,24,25 | 23450 | 0 | 0 |
| DRIL-QUIP INC COM | 262037104 | 600 | 10776 | SH | | DEFINED | 7,11 | 10093 | 0 | 683 |
| DRIL-QUIP INC COM | 262037104 | 1263 | 22700 | SH | | DEFINED | 15,16,24 | 22700 | 0 | 0 |
| DRIL-QUIP INC COM | 262037104 | 1725 | 31000 | SH | PUT | DEFINED | 15,16,24 | 31000 | 0 | 0 |
| DU PONT E I DE NEMOU COM | 263534109 | 353 | 8000 | SH | | DEFINED | 30 | 8000 | 0 | 0 |
| DU PONT E I DE NEMOU COM | 263534109 | 777 | 17624 | SH | | DEFINED | 3,9 | 0 | 0 | 17624 |
| DU PONT E I DE NEMOU COM | 263534109 | 54488 | 1235825 | SH | | DEFINED | 7,11 | 1024722 | 4700 | 206403 |
| DU PONT E I DE NEMOU COM | 263534109 | 1654 | 37519 | SH | | DEFINED | 7,11,13 | 35069 | 0 | 2450 |
| DU PONT E I DE NEMOU COM | 263534109 | 360 | 8172 | SH | | DEFINED | 7,11,33 | 0 | 0 | 8172 |
| DU PONT E I DE NEMOU COM | 263534109 | 8298 | 188211 | SH | | DEFINED | 15,16,24 | 188211 | 0 | 0 |
| DU PONT E I DE NEMOU COM | 263534109 | 178236 | 4042542 | SH | | DEFINED | 16,24,25 | 3610778 | 0 | 431764 |
| DU PONT E I DE NEMOU COM | 263534109 | 17226 | 390693 | SH | | DEFINED | 32,40,41 | 390693 | 0 | 0 |
| DU PONT E I DE NEMOU COM | 263534109 | 110 | 2500 | SH | | DEFINED | 5-7,11,43,44 | 0 | 2500 | 0 |
| DU PONT E I DE NEMOU COM | 263534109 | 5101 | 115699 | SH | | DEFINED | 16,19,24,26,27 | 115699 | 0 | 0 |
| DU PONT E I DE NEMOU COM | 263534109 | 22398 | 508014 | SH | CALL | DEFINED | 7,11 | 508014 | 0 | 0 |
| DU PONT E I DE NEMOU COM | 263534109 | 22601 | 512600 | SH | CALL | DEFINED | 15,16,24 | 512600 | 0 | 0 |
| DU PONT E I DE NEMOU COM | 263534109 | 28103 | 637400 | SH | CALL | DEFINED | 16,24,25 | 637400 | 0 | 0 |
| DU PONT E I DE NEMOU COM | 263534109 | 36899 | 836900 | SH | PUT | DEFINED | 15,16,24 | 836900 | 0 | 0 |
| DU PONT E I DE NEMOU COM | 263534109 | 30928 | 701465 | SH | PUT | DEFINED | 16,24,25 | 701465 | 0 | 0 |
| DUFF & PHELPS UTIL C COM | 26432K108 | 15 | 1500 | SH | | DEFINED | 7,11 | 1000 | 0 | 500 |
| DUFF & PHELPS UTIL C COM | 26432K108 | 391 | 37878 | SH | | DEFINED | 16,24,25 | 32979 | 0 | 4899 |
| DUFF & PHELPS UTIL C COM | 26432K108 | 60 | 5800 | SH | | DEFINED | 16,19,24,26,27 | 5800 | 0 | 0 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 512 | 25400 | SH | | DEFINED | 12 | 0 | 0 | 25400 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 49 | 2429 | SH | | DEFINED | 3,9 | 0 | 0 | 2429 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 29304 | 1452836 | SH | | DEFINED | 7,11 | 462745 | 5300 | 984791 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 552 | 27374 | SH | | DEFINED | 7,11,13 | 8394 | 0 | 18980 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 141 | 6972 | SH | | DEFINED | 7,11,33 | 0 | 0 | 6972 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 3183 | 157833 | SH | | DEFINED | 15,16,24 | 157833 | 0 | 0 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 51043 | 2530630 | SH | | DEFINED | 16,24,25 | 2136984 | 0 | 393646 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 783 | 38806 | SH | | DEFINED | 32,40,41 | 38806 | 0 | 0 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 57 | 2815 | SH | | DEFINED | 5-7,11,43,44 | 0 | 2815 | 0 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 261 | 12942 | SH | | DEFINED | 16,19,24,26,27 | 12942 | 0 | 0 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 6089 | 301863 | SH | CALL | DEFINED | 7,11 | 301863 | 0 | 0 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 3487 | 172900 | SH | CALL | DEFINED | 15,16,24 | 172900 | 0 | 0 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 10255 | 508438 | SH | CALL | DEFINED | 16,24,25 | 508438 | 0 | 0 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 9745 | 483138 | SH | PUT | DEFINED | 7,11 | 483138 | 0 | 0 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 2342 | 116100 | SH | PUT | DEFINED | 15,16,24 | 116100 | 0 | 0 |
| DUKE ENERGY CORP NEW COM | 26441C105 | 6597 | 327063 | SH | PUT | DEFINED | 16,24,25 | 327063 | 0 | 0 |

| Issuer | Class | CUSIP | | Amount | Type | Opt | | Category | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DUKE REALTY CORP | COM NEW | 264411505 | 329 | 12600 | SH | | DEFINED | 30 | 12600 | 0 | 0 |
| DUKE REALTY CORP | COM NEW | 264411505 | 3748 | 143726 | SH | | DEFINED | 7,11 | 142626 | 0 | 1100 |
| DUKE REALTY CORP | COM NEW | 264411505 | 151 | 5800 | SH | | DEFINED | 7,11,13 | 5800 | 0 | 0 |
| DUKE REALTY CORP | COM NEW | 264411505 | 10084 | 386640 | SH | | DEFINED | 16,24,25 | 351966 | 0 | 34674 |
| DUKE REALTY CORP | COM NEW | 264411505 | 3677 | 140990 | SH | | DEFINED | 32,40,41 | 140990 | 0 | 0 |
| DUN & BRADSTREET COR | COM | 26483E100 | 499 | 5631 | SH | | DEFINED | 7,11 | 3881 | 0 | 1750 |
| DUN & BRADSTREET COR | COM | 26483E100 | 41 | 460 | SH | | DEFINED | 7,11,13 | 460 | 0 | 0 |
| DUN & BRADSTREET COR | COM | 26483E100 | 1258 | 14189 | SH | | DEFINED | 16,24,25 | 12621 | 0 | 1568 |
| DUN & BRADSTREET COR | COM | 26483E100 | 307 | 3462 | SH | | DEFINED | 32,40,41 | 3462 | 0 | 0 |
| DUNCAN ENERGY PARTNE | COM UNITS | 265026104 | 15124 | 692805 | SH | | DEFINED | 16,24,25 | 648055 | 0 | 44750 |
| DYAX CORP | COM | 267468103 | 107 | 29353 | SH | | DEFINED | 16,24,25 | 26853 | 0 | 2500 |
| DYCOM INDS INC | COM | 267475101 | 357 | 13402 | SH | | DEFINED | 16,24,25 | 13402 | 0 | 0 |
| DYNAMIC MATLS CORP | COM | 267888105 | 1652 | 28040 | SH | | DEFINED | 7,11,13 | 27890 | 0 | 150 |
| DYNAMIC MATLS CORP | COM | 267888105 | 329 | 5588 | SH | | DEFINED | 16,24,25 | 5459 | 0 | 129 |
| DYNCORP INTL INC | CL A | 26817C101 | 226 | 8405 | SH | | DEFINED | 16,24,25 | 8110 | 0 | 295 |
| DYNEGY INC DEL | CL A | 26817G102 | 450 | 63082 | SH | | DEFINED | 7,11 | 63082 | 0 | 0 |
| DYNEGY INC DEL | CL A | 26817G102 | 1 | 100 | SH | | DEFINED | 7,11,13 | 100 | 0 | 0 |
| DYNEGY INC DEL | CL A | 26817G102 | 1154 | 161569 | SH | | DEFINED | 15,16,24 | 161569 | 0 | 0 |
| DYNEGY INC DEL | CL A | 26817G102 | 7543 | 1056481 | SH | | DEFINED | 16,24,25 | 807121 | 0 | 249360 |
| DYNEGY INC DEL | CL A | 26817G102 | 122 | 17134 | SH | | DEFINED | 32,40,41 | 17134 | 0 | 0 |
| DYNEGY INC DEL | CL A | 26817G102 | 2262 | 316800 | SH | CALL | DEFINED | 15,16,24 | 316800 | 0 | 0 |
| DYNEGY INC DEL | CL A | 26817G102 | 179 | 25000 | SH | | DEFINED | 16,24,25 | 25000 | 0 | 0 |
| DYNEGY INC DEL | CL A | 26817G102 | 3746 | 524700 | SH | PUT | DEFINED | 15,16,24 | 524700 | 0 | 0 |
| EFJ INC | COM | 26843B101 | 30 | 10772 | SH | | DEFINED | 16,24,25 | 10058 | 0 | 714 |
| E HOUSE CHINA HLDGS | ADR | 26852W103 | 1214 | 50945 | SH | | DEFINED | 15,16,24 | 50945 | 0 | 0 |
| E HOUSE CHINA HLDGS | ADR | 26852W103 | 2484 | 104245 | SH | | DEFINED | 16,24,25 | 83811 | 0 | 20434 |
| E HOUSE CHINA HLDGS | ADR | 26852W103 | 2009 | 84300 | SH | CALL | DEFINED | 15,16,24 | 84300 | 0 | 0 |
| E HOUSE CHINA HLDGS | ADR | 26852W103 | 1925 | 80800 | SH | PUT | DEFINED | 15,16,24 | 80800 | 0 | 0 |
| E M C CORP MASS | NOTE 1.75 | 268648AK8 | 49996 | 37000000 | PRN | | DEFINED | 7,11 | 37000000 | 0 | 0 |
| E M C CORP MASS | NOTE 1.75 | 268648AK8 | 19 | 14000 | PRN | | DEFINED | 16,24,25 | 14000 | 0 | 0 |
| E M C CORP MASS | NOTE 1.75 | 268648AM4 | 3593 | 2620000 | PRN | | DEFINED | 16,24,25 | 2620000 | 0 | 0 |
| E M C CORP MASS | COM | 268648102 | 1516 | 81800 | SH | | DEFINED | 12 | 0 | 0 | 81800 |
| E M C CORP MASS | COM | 268648102 | 60 | 3221 | SH | | DEFINED | 3,9 | 0 | 0 | 3221 |
| E M C CORP MASS | COM | 268648102 | 24038 | 1297228 | SH | | DEFINED | 7,11 | 741853 | 7400 | 547975 |
| E M C CORP MASS | COM | 268648102 | 431 | 23270 | SH | | DEFINED | 7,11,13 | 7120 | 0 | 16150 |
| E M C CORP MASS | COM | 268648102 | 230 | 12393 | SH | | DEFINED | 7,11,33 | 0 | 0 | 12393 |
| E M C CORP MASS | COM | 268648102 | 12219 | 659399 | SH | | DEFINED | 15,16,24 | 659399 | 0 | 0 |
| E M C CORP MASS | COM | 268648102 | 240549 | 12981602 | SH | | DEFINED | 16,24,25 | 11767319 | 0 | 1214283 |
| E M C CORP MASS | COM | 268648102 | 1738 | 93798 | SH | | DEFINED | 32,40,41 | 93798 | 0 | 0 |
| E M C CORP MASS | COM | 268648102 | 515 | 27780 | SH | | DEFINED | 5-7,11,43,44 | 0 | 27780 | 0 |
| E M C CORP MASS | COM | 268648102 | 15557 | 839571 | SH | | DEFINED | 2,6,7,10-11,18,20,21,28 | 839571 | 0 | 0 |
| E M C CORP MASS | COM | 268648102 | 502615 | 27124413 | SH | CALL | DEFINED | 7,11 | 27124413 | 0 | 0 |
| E M C CORP MASS | COM | 268648102 | 25129 | 1356100 | SH | | DEFINED | 15,16,24 | 1356100 | 0 | 0 |
| E M C CORP MASS | COM | 268648102 | 56748 | 3062507 | SH | | DEFINED | 16,24,25 | 3062507 | 0 | 0 |
| E M C CORP MASS | COM | 268648102 | 8094 | 436807 | SH | PUT | DEFINED | 7,11 | 436807 | 0 | 0 |
| E M C CORP MASS | COM | 268648102 | 32537 | 1755900 | SH | PUT | DEFINED | 15,16,24 | 1755900 | 0 | 0 |
| E M C CORP MASS | COM | 268648102 | 162612 | 8775613 | SH | PUT | DEFINED | 16,24,25 | 8775013 | 0 | 600 |
| EMS TECHNOLOGIES INC | COM | 26873N108 | 356 | 11778 | SH | | DEFINED | 16,24,25 | 11778 | 0 | 0 |
| ENSCO INTL INC | COM | 26874Q100 | 6063 | 101700 | SH | | DEFINED | 42 | 101700 | 0 | 0 |
| ENSCO INTL INC | COM | 26874Q100 | 4633 | 77714 | SH | | DEFINED | 7,11 | 77714 | 0 | 0 |
| ENSCO INTL INC | COM | 26874Q100 | 48 | 800 | SH | | DEFINED | 7,11,13 | 800 | 0 | 0 |
| ENSCO INTL INC | COM | 26874Q100 | 58 | 977 | SH | | DEFINED | 15,16,24 | 977 | 0 | 0 |
| ENSCO INTL INC | COM | 26874Q100 | 9583 | 160727 | SH | | DEFINED | 16,24,25 | 140594 | 0 | 20133 |
| ENSCO INTL INC | COM | 26874Q100 | 266 | 4468 | SH | | DEFINED | 32,40,41 | 4468 | 0 | 0 |
| ENSCO INTL INC | COM | 26874Q100 | 19847 | 332900 | SH | CALL | DEFINED | 15,16,24 | 332900 | 0 | 0 |
| ENSCO INTL INC | COM | 26874Q100 | 5855 | 98200 | SH | | DEFINED | 16,24,25 | 98200 | 0 | 0 |
| ENSCO INTL INC | COM | 26874Q100 | 24671 | 413800 | SH | PUT | DEFINED | 15,16,24 | 413800 | 0 | 0 |
| ENSCO INTL INC | COM | 26874Q100 | 7059 | 118400 | SH | PUT | DEFINED | 16,24,25 | 118400 | 0 | 0 |
| ENI S P A | SPONSORED | 26874R108 | 213 | 2940 | SH | | DEFINED | 30 | 2940 | 0 | 0 |
| ENI S P A | SPONSORED | 26874R108 | 843 | 11645 | SH | | DEFINED | 7,11 | 0 | 0 | 11645 |
| ENI S P A | SPONSORED | 26874R108 | 3 | 40 | SH | | DEFINED | 7,11,13 | 40 | 0 | 0 |
| ENI S P A | SPONSORED | 26874R108 | 3557 | 49109 | SH | | DEFINED | 16,24,25 | 45655 | 0 | 3454 |
| ENI S P A | SPONSORED | 26874R108 | 1405 | 19399 | SH | | DEFINED | 16,19,24,26,27 | 19399 | 0 | 0 |
| EOG RES INC | COM | 26875P101 | 5053 | 56612 | SH | | DEFINED | 7,11 | 41812 | 0 | 14800 |
| EOG RES INC | COM | 26875P101 | 136 | 1525 | SH | | DEFINED | 7,11,13 | 825 | 0 | 700 |
| EOG RES INC | COM | 26875P101 | 26514 | 297075 | SH | | DEFINED | 16,24,25 | 264708 | 0 | 32367 |
| EOG RES INC | COM | 26875P101 | 3841 | 43041 | SH | | DEFINED | 32,40,41 | 43041 | 0 | 0 |
| EOG RES INC | COM | 26875P101 | 18912 | 211900 | SH | CALL | DEFINED | 15,16,24 | 211900 | 0 | 0 |
| EOG RES INC | COM | 26875P101 | 13271 | 148700 | SH | CALL | DEFINED | 16,24,25 | 148700 | 0 | 0 |
| EOG RES INC | COM | 26875P101 | 41823 | 468600 | SH | PUT | DEFINED | 15,16,24 | 468600 | 0 | 0 |
| EOG RES INC | COM | 26875P101 | 13227 | 148200 | SH | PUT | DEFINED | 16,24,25 | 148200 | 0 | 0 |
| EPIX PHARMACEUTICALS | NOTE 3.00 | 26881QAB7 | 569 | 846000 | PRN | | DEFINED | 16,24,25 | 846000 | 0 | 0 |
| EPIQ SYS INC | COM | 26882D104 | 590 | 33916 | SH | | DEFINED | 16,24,25 | 33916 | 0 | 0 |
| ERP OPER LTD PARTNER | NOTE 3.85 | 26884AAV5 | 9590 | 10000000 | PRN | | DEFINED | 16,24 | 10000000 | 0 | 0 |
| E TRADE FINANCIAL CO | COM | 269246104 | 145 | 40882 | SH | | DEFINED | 7,11 | 40882 | 0 | 0 |
| E TRADE FINANCIAL CO | COM | 269246104 | 3 | 773 | SH | | DEFINED | 7,11,33 | 0 | 0 | 773 |
| E TRADE FINANCIAL CO | COM | 269246104 | 745 | 209913 | SH | | DEFINED | 15,16,24 | 209913 | 0 | 0 |
| E TRADE FINANCIAL CO | COM | 269246104 | 16136 | 4545207 | SH | | DEFINED | 16,24,25 | 4540251 | 0 | 5156 |
| E TRADE FINANCIAL CO | COM | 269246104 | 40 | 11365 | SH | | DEFINED | 32,40,41 | 11365 | 0 | 0 |
| E TRADE FINANCIAL CO | COM | 269246104 | 2511 | 707400 | SH | CALL | DEFINED | 15,16,24 | 707400 | 0 | 0 |
| E TRADE FINANCIAL CO | COM | 269246104 | 794 | 223600 | SH | CALL | DEFINED | 16,24,25 | 223600 | 0 | 0 |
| E TRADE FINANCIAL CO | COM | 269246104 | 1667 | 469700 | SH | PUT | DEFINED | 15,16,24 | 469700 | 0 | 0 |
| E TRADE FINANCIAL CO | COM | 269246104 | 26 | 7200 | SH | PUT | DEFINED | 16,24,25 | 7200 | 0 | 0 |
| EV ENERGY PARTNERS L | COM UNITS | 26926V107 | 3795 | 116767 | SH | | DEFINED | 16,24,25 | 69259 | 0 | 47508 |
| EXCO RESOURCES INC | COM | 269279402 | 8502 | 549218 | SH | | DEFINED | 16,24,25 | 489321 | 0 | 59897 |
| EV3 INC | COM | 26928A200 | 130 | 10200 | SH | | DEFINED | 30 | 10200 | 0 | 0 |
| EV3 INC | COM | 26928A200 | 6 | 455 | SH | | DEFINED | 7,11,13 | 455 | 0 | 0 |
| EV3 INC | COM | 26928A200 | 1486 | 116906 | SH | | DEFINED | 16,24,25 | 78610 | 0 | 38296 |
| EAGLE MATERIALS INC | COM | 26969P108 | 21 | 600 | SH | | DEFINED | 7,11 | 600 | 0 | 0 |
| EAGLE MATERIALS INC | COM | 26969P108 | 14192 | 400000 | SH | | DEFINED | 16,24 | 400000 | 0 | 0 |
| EAGLE MATERIALS INC | COM | 26969P108 | 42 | 1175 | SH | | DEFINED | 7,11,13 | 1175 | 0 | 0 |
| EAGLE MATERIALS INC | COM | 26969P108 | 777 | 21894 | SH | | DEFINED | 15,16,24 | 21894 | 0 | 0 |
| EAGLE MATERIALS INC | COM | 26969P108 | 212 | 5975 | SH | | DEFINED | 16,24,25 | 4981 | 0 | 994 |
| EAGLE MATERIALS INC | COM | 26969P108 | 3392 | 95600 | SH | CALL | DEFINED | 15,16,24 | 95600 | 0 | 0 |
| EAGLE MATERIALS INC | COM | 26969P108 | 3144 | 88600 | SH | PUT | DEFINED | 15,16,24 | 88600 | 0 | 0 |
| EAGLE ROCK ENERGY PA | UNIT | 26985R104 | 1673 | 91531 | SH | | DEFINED | 16,24,25 | 89668 | 0 | 1863 |
| EARTHLINK INC | NOTE 3.25 | 270321AA0 | 10325 | 10000000 | PRN | | DEFINED | 16,24 | 10000000 | 0 | 0 |
| EARTHLINK INC | COM | 270321102 | 876 | 123966 | SH | | DEFINED | 15,16,24 | 123966 | 0 | 0 |
| EARTHLINK INC | COM | 270321102 | 488 | 69006 | SH | | DEFINED | 16,24,25 | 61106 | 0 | 7900 |
| EARTHLINK INC | COM | 270321102 | 119 | 16900 | SH | CALL | DEFINED | 15,16,24 | 16900 | 0 | 0 |
| EARTHLINK INC | COM | 270321102 | 1109 | 156800 | SH | PUT | DEFINED | 15,16,24 | 156800 | 0 | 0 |
| EAST WEST BANCORP IN | COM | 27579R104 | 220 | 9075 | SH | | DEFINED | 7,11,13 | 9075 | 0 | 0 |
| EAST WEST BANCORP IN | COM | 27579R104 | 366 | 15103 | SH | | DEFINED | 16,24,25 | 15053 | 0 | 50 |
| EASTERN INS HLDGS IN | COM | 276534104 | 374 | 22686 | SH | | DEFINED | 16,24,25 | 22286 | 0 | 400 |
| EASTERN VA BANKSHARE | COM | 277196101 | 2326 | 137216 | SH | | DEFINED | 16,24,25 | 0 | 0 | 137216 |
| EASTGROUP PPTY INC | COM | 277276101 | 78 | 1869 | SH | | DEFINED | 16,24,25 | 969 | 0 | 899 |
| EASTGROUP PPTY INC | COM | 277276101 | 507 | 12125 | SH | | DEFINED | 32,40,41 | 12125 | 0 | 0 |
| EASTMAN CHEM CO | COM | 277432100 | 752 | 12304 | SH | | DEFINED | 7,11 | 6353 | 0 | 5951 |
| EASTMAN CHEM CO | COM | 277432100 | 452 | 7405 | SH | | DEFINED | 7,11,13 | 7405 | 0 | 0 |
| EASTMAN CHEM CO | COM | 277432100 | 19328 | 316388 | SH | | DEFINED | 16,24,25 | 286728 | 0 | 29659 |
| EASTMAN CHEM CO | COM | 277432100 | 140 | 2296 | SH | | DEFINED | 32,40,41 | 2296 | 0 | 0 |
| EASTMAN CHEM CO | COM | 277432100 | 2951 | 48300 | SH | CALL | DEFINED | 15,16,24 | 48300 | 0 | 0 |
| EASTMAN CHEM CO | COM | 277432100 | 2089 | 34200 | SH | PUT | DEFINED | 16,24,24 | 34200 | 0 | 0 |
| EASTMAN CHEM CO | COM | 277432100 | 3580 | 58600 | SH | PUT | DEFINED | 15,16,24 | 58600 | 0 | 0 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| EASTMAN CHEM CO | COM | 277432100 | 1900 | 31100 | SH | PUT DEFINED | 16,24,25 | 31100 | 0 | 0 |
| EASTMAN KODAK CO | COM | 277461109 | 2130 | 97410 | SH | DEFINED | 7,11 | 79435 | 0 | 17975 |
| EASTMAN KODAK CO | COM | 277461109 | 11 | 493 | SH | DEFINED | 7,11,13 | 0 | 0 | 493 |
| EASTMAN KODAK CO | COM | 277461109 | 2543 | 116286 | SH | DEFINED | 15,16,24 | 116286 | 0 | 0 |
| EASTMAN KODAK CO | COM | 277461109 | 11142 | 509456 | SH | DEFINED | 16,24,25 | 361521 | 0 | 147934 |
| EASTMAN KODAK CO | COM | 277461109 | 194 | 8872 | SH | DEFINED | 32,40,41 | 8872 | 0 | 0 |
| EASTMAN KODAK CO | COM | 277461109 | 5846 | 267300 | SH | DEFINED | 15,16,24 | 267300 | 0 | 0 |
| EASTMAN KODAK CO | COM | 277461109 | 14756 | 674700 | SH | CALL DEFINED | 16,24,25 | 674700 | 0 | 0 |
| EASTMAN KODAK CO | COM | 277461109 | 7574 | 346300 | SH | PUT DEFINED | 15,16,24 | 346300 | 0 | 0 |
| EASTMAN KODAK CO | COM | 277461109 | 1387 | 63400 | SH | PUT DEFINED | 16,24,25 | 63400 | 0 | 0 |
| EATON CORP | COM | 278058102 | 2609 | 26912 | SH | DEFINED | 7,11 | 12000 | 0 | 14912 |
| EATON CORP | COM | 278058102 | 765 | 7895 | SH | DEFINED | 7,11,13 | 7895 | 0 | 0 |
| EATON CORP | COM | 278058102 | 22814 | 235316 | SH | DEFINED | 16,24,25 | 215530 | 0 | 19786 |
| EATON CORP | COM | 278058102 | 556 | 5739 | SH | DEFINED | 32,40,41 | 5739 | 0 | 0 |
| EATON CORP | COM | 278058102 | 2094 | 21600 | SH | CALL DEFINED | 15,16,24 | 21600 | 0 | 0 |
| EATON CORP | COM | 278058102 | 281 | 2900 | SH | CALL DEFINED | 16,24,25 | 2900 | 0 | 0 |
| EATON CORP | COM | 278058102 | 5468 | 56400 | SH | PUT DEFINED | 15,16,24 | 56400 | 0 | 0 |
| EATON CORP | COM | 278058102 | 281 | 2900 | SH | PUT DEFINED | 16,24,25 | 2900 | 0 | 0 |
| EATON VANCE SR INCOM | SH BEN INT | 27826S103 | 1551 | 217794 | SH | DEFINED | 16,24,25 | 213226 | 0 | 4567 |
| EATON VANCE SR INCOM | SH BEN INT | 27826S103 | 292 | 41000 | SH | DEFINED | 16,19,24,26,27 | 41000 | 0 | 0 |
| EATON VANCE MUNI INC | SH BEN INT | 27826U108 | 515 | 37554 | SH | DEFINED | 16,24,25 | 32254 | 0 | 5300 |
| EATON VANCE NJ MUNI | SH BEN INT | 27826V106 | 414 | 32196 | SH | DEFINED | 16,24,25 | 28446 | 0 | 3750 |
| EATON VANCE NY MUNI | SH BEN INT | 27826W104 | 201 | 14639 | SH | DEFINED | 16,24,25 | 8250 | 0 | 6389 |
| EATON VANCE CORP | COM NON VT | 278265103 | 61 | 1339 | SH | DEFINED | 7,11 | 1339 | 0 | 0 |
| EATON VANCE CORP | COM NON VT | 278265103 | 54 | 1200 | SH | DEFINED | 7,11,13 | 1200 | 0 | 0 |
| EATON VANCE CORP | COM NON VT | 278265103 | 6383 | 140570 | SH | DEFINED | 16,24,25 | 107506 | 0 | 33063 |
| EATON VANCE CORP | COM NON VT | 278265103 | 282 | 6200 | SH | DEFINED | 32,40,41 | 6200 | 0 | 0 |
| EATON VANCE INS MUN | COM | 27827X101 | 4314 | 305955 | SH | DEFINED | 16,24,25 | 272001 | 0 | 33954 |
| EATON VANCE ENHANCED | COM | 278274105 | 586 | 32263 | SH | DEFINED | 16,24,25 | 28846 | 0 | 3416 |
| EATON VANCE ENH EQTY | COM | 27827T108 | 3813 | 214796 | SH | DEFINED | 16,24,25 | 194609 | 0 | 20187 |
| EATON VANCE FLTING R | COM | 27827910 | 3127 | 200344 | SH | DEFINED | 16,24,25 | 181290 | 0 | 19053 |
| EATON VANCE INS CA M | COM | 27828A100 | 235 | 17309 | SH | DEFINED | 16,24,25 | 17309 | 0 | 0 |
| EATON VANCE INS FL M | COM | 27828E102 | 157 | 12229 | SH | DEFINED | 16,24,25 | 12229 | 0 | 0 |
| EATON VANCE TAX ADVT | COM | 27828G107 | 172 | 6200 | SH | DEFINED | 7,11,33 | 0 | 0 | 6200 |
| EATON VANCE TAX ADVT | COM | 27828G107 | 11868 | 426738 | SH | DEFINED | 16,24,25 | 379663 | 0 | 47074 |
| EATON VANCE LTD DUR | COM | 27828H105 | 28297 | 1895316 | SH | DEFINED | 16,24,25 | 1714826 | 0 | 180490 |
| EATON VANCE TX MGD D | COM | 27828N102 | 66 | 4000 | SH | DEFINED | 7,11,33 | 0 | 0 | 4000 |
| EATON VANCE TX MGD D | COM | 27828N102 | 6373 | 383466 | SH | DEFINED | 16,24,25 | 341578 | 0 | 41888 |
| EATON VANCE SR FLTNG | COM | 27828Q105 | 155 | 10000 | SH | DEFINED | 7,11 | 0 | 0 | 10000 |
| EATON VANCE SR FLTNG | COM | 27828Q105 | 14821 | 956185 | SH | DEFINED | 16,24,25 | 847824 | 0 | 108361 |
| EATON VANCE SR FLTNG | COM | 27828Q105 | 253 | 16346 | SH | DEFINED | 16,19,24,26,27 | 16346 | 0 | 0 |
| EATON VANCE TX ADV G | COM | 27828S101 | 265 | 9800 | SH | DEFINED | 7,11,33 | 0 | 0 | 9800 |
| EATON VANCE TX ADV G | COM | 27828S101 | 11817 | 437511 | SH | DEFINED | 16,24,25 | 392948 | 0 | 44563 |
| EATON VANCE TX ADV G | COM | 27828U106 | 1567 | 46313 | SH | DEFINED | 16,24,25 | 41079 | 0 | 5234 |
| EATON VANCE SH TM DR | COM | 27828V104 | 1429 | 89173 | SH | DEFINED | 16,24,25 | 82225 | 0 | 6948 |
| EATON VANCE TAX MNGE | COM | 27828X100 | 3825 | 219460 | SH | DEFINED | 16,24,25 | 203186 | 0 | 16274 |
| EATON VANCE TX MNG B | COM | 27828Y108 | 732 | 43219 | SH | DEFINED | 16,24,25 | 40481 | 0 | 2738 |
| EATON VANCE TXMGD GL | COM | 27829C105 | 3391 | 195310 | SH | DEFINED | 16,24,25 | 168926 | 0 | 26383 |
| EATON VANCE TAX MNG | COM | 27829F108 | 19 | 1173 | SH | DEFINED | 16,24 | 1173 | 0 | 0 |
| EATON VANCE TAX MNG | COM | 27829F108 | 33 | 2000 | SH | DEFINED | 7,11,33 | 0 | 0 | 2000 |
| EATON VANCE TAX MNG | COM | 27829F108 | 5747 | 347880 | SH | DEFINED | 16,24,25 | 296885 | 0 | 50995 |
| EATON VANCE RISK MNG | COM | 27829G106 | 5022 | 268535 | SH | DEFINED | 16,24,25 | 262157 | 0 | 6377 |
| EBAY INC | COM | 278642103 | 282 | 8500 | SH | DEFINED | 30 | 8500 | 0 | 0 |
| EBAY INC | COM | 278642103 | 17 | 502 | SH | DEFINED | 3,9 | 0 | 0 | 502 |
| EBAY INC | COM | 278642103 | 49754 | 1499072 | SH | DEFINED | 7,11 | 1426872 | 0 | 72200 |
| EBAY INC | COM | 278642103 | 762 | 22947 | SH | DEFINED | 16,24 | 22947 | 0 | 0 |
| EBAY INC | COM | 278642103 | 5064 | 152590 | SH | DEFINED | 7,11,13 | 149765 | 0 | 2825 |
| EBAY INC | COM | 278642103 | 187 | 5642 | SH | DEFINED | 16,24,25 | 5642 | 0 | 0 |
| EBAY INC | COM | 278642103 | 172678 | 5202715 | SH | DEFINED | 15,16,24 | 4395056 | 0 | 807659 |
| EBAY INC | COM | 278642103 | 14246 | 429233 | SH | DEFINED | 32,40,41 | 429233 | 0 | 0 |
| EBAY INC | COM | 278642103 | 35 | 1060 | SH | DEFINED | 5-7,11,43,44 | 0 | 1060 | 0 |
| EBAY INC | COM | 278642103 | 3916 | 117989 | SH | DEFINED | 7,10-11,24,26,27 | 117989 | 0 | 0 |
| EBAY INC | COM | 278642103 | 582 | 17536 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 17536 | 0 | 0 |
| EBAY INC | COM | 278642103 | 218248 | 6575724 | SH | CALL DEFINED | 7,11 | 6575724 | 0 | 0 |
| EBAY INC | COM | 278642103 | 87409 | 2633600 | SH | CALL DEFINED | 15,16,24 | 2633600 | 0 | 0 |
| EBAY INC | COM | 278642103 | 6582 | 198300 | SH | CALL DEFINED | 16,24,25 | 198300 | 0 | 0 |
| EBAY INC | COM | 278642103 | 26678 | 803800 | SH | PUT DEFINED | 15,16,24 | 803800 | 0 | 0 |
| EBAY INC | COM | 278642103 | 124005 | 3736224 | SH | PUT DEFINED | 16,24,25 | 3736224 | 0 | 0 |
| EBIX INC | COM NEW | 278715206 | 311 | 4248 | SH | DEFINED | 16,24,25 | 4081 | 0 | 167 |
| ECHELON CORP | COM | 27874N105 | 48 | 2342 | SH | DEFINED | 7,11 | 2342 | 0 | 0 |
| ECHELON CORP | COM | 27874N105 | 415 | 20125 | SH | DEFINED | 16,24,25 | 8325 | 0 | 11800 |
| ECHOSTAR COMMUNICATI | CL A | 278762109 | 4381 | 116143 | SH | DEFINED | 7,11 | 116143 | 0 | 0 |
| ECHOSTAR COMMUNICATI | CL A | 278762109 | 14 | 365 | SH | DEFINED | 7,11,33 | 0 | 0 | 365 |
| ECHOSTAR COMMUNICATI | CL A | 278762109 | 10630 | 281810 | SH | DEFINED | 16,24,25 | 251369 | 0 | 30441 |
| ECHOSTAR COMMUNICATI | CL A | 278762109 | 823 | 21824 | SH | DEFINED | 32,40,41 | 21824 | 0 | 0 |
| ECHOSTAR COMMUNICATI | CL A | 278762109 | 22719 | 602300 | SH | CALL DEFINED | 15,16,24 | 602300 | 0 | 0 |
| ECHOSTAR COMMUNICATI | CL A | 278762109 | 3964 | 105100 | SH | CALL DEFINED | 16,24,25 | 105100 | 0 | 0 |
| ECHOSTAR COMMUNICATI | CL A | 278762109 | 9389 | 248900 | SH | PUT DEFINED | 15,16,24 | 248900 | 0 | 0 |
| ECHOSTAR COMMUNICATI | CL A | 278762109 | 196 | 5200 | SH | PUT DEFINED | 16,24,25 | 5200 | 0 | 0 |
| ECOLAB INC | COM | 278865100 | 422 | 8250 | SH | DEFINED | 30 | 8250 | 0 | 0 |
| ECOLAB INC | COM | 278865100 | 1773 | 34627 | SH | DEFINED | 7,11 | 29811 | 0 | 4816 |
| ECOLAB INC | COM | 278865100 | 954 | 18634 | SH | DEFINED | 7,11,13 | 18634 | 0 | 0 |
| ECOLAB INC | COM | 278865100 | 19 | 379 | SH | DEFINED | 7,11,33 | 0 | 0 | 379 |
| ECOLAB INC | COM | 278865100 | 10024 | 195743 | SH | DEFINED | 16,24,25 | 134088 | 0 | 61654 |
| ECOLAB INC | COM | 278865100 | 1221 | 23836 | SH | DEFINED | 32,40,41 | 23836 | 0 | 0 |
| ECOLOGY & ENVIRONMEN | CL A | 278781103 | 154 | 13927 | SH | DEFINED | 16,24,25 | 8152 | 0 | 5775 |
| EDGE PETE CORP DEL | PFD CONV A | 279862205 | 4636 | 137357 | SH | DEFINED | 16,24,25 | 137357 | 0 | 0 |
| EDGEWATER TECHNOLOGY | COM | 280358102 | 270 | 37050 | SH | DEFINED | 16,24,25 | 34505 | 0 | 2545 |
| EDISON INTL | COM | 281020107 | 3 | 50 | SH | DEFINED | 12 | 0 | 0 | 50 |
| EDISON INTL | COM | 281020107 | 7622 | 142807 | SH | DEFINED | 7,11 | 97542 | 0 | 45265 |
| EDISON INTL | COM | 281020107 | 142 | 2670 | SH | DEFINED | 7,11,13 | 0 | 0 | 2670 |
| EDISON INTL | COM | 281020107 | 72 | 1347 | SH | DEFINED | 7,11,33 | 0 | 0 | 1347 |
| EDISON INTL | COM | 281020107 | 2235 | 41883 | SH | DEFINED | 15,16,24 | 41883 | 0 | 0 |
| EDISON INTL | COM | 281020107 | 14570 | 273002 | SH | DEFINED | 16,24,25 | 228509 | 0 | 44492 |
| EDISON INTL | COM | 281020107 | 7103 | 133084 | SH | DEFINED | 32,40,41 | 133084 | 0 | 0 |
| EDISON INTL | COM | 281020107 | 2734 | 51224 | SH | CALL DEFINED | 7,11 | 51224 | 0 | 0 |
| EDISON INTL | COM | 281020107 | 7136 | 133700 | SH | CALL DEFINED | 15,16,24 | 133700 | 0 | 0 |
| EDISON INTL | COM | 281020107 | 2717 | 50900 | SH | CALL DEFINED | 16,24,25 | 50900 | 0 | 0 |
| EDISON INTL | COM | 281020107 | 10701 | 200500 | SH | PUT DEFINED | 15,16,24 | 200500 | 0 | 0 |
| EDISON INTL | COM | 281020107 | 5034 | 94324 | SH | PUT DEFINED | 16,24,25 | 94324 | 0 | 0 |
| EDUCATION RLTY TR IN | COM | 28140H104 | 0 | 1802 | SH | DEFINED | 16,24,25 | 1802 | 0 | 0 |
| EDUCATION RLTY TR IN | COM | 28140H104 | 164 | 14548 | SH | DEFINED | 32,40,41 | 14548 | 0 | 0 |
| EDWARDS LIFESCIENCES | COM | 28176E108 | 64 | 1397 | SH | DEFINED | 7,11 | 694 | 0 | 703 |
| EDWARDS LIFESCIENCES | COM | 28176E108 | 50 | 1085 | SH | DEFINED | 7,11,13 | 1085 | 0 | 0 |
| EDWARDS LIFESCIENCES | COM | 28176E108 | 1724 | 37483 | SH | DEFINED | 16,24,25 | 34464 | 0 | 3019 |
| 8X8 INC | COM NEW | 282914100 | 37 | 41200 | SH | DEFINED | 16,24,25 | 33200 | 0 | 8000 |
| EL PASO CORP | COM | 28336L109 | 764 | 44300 | SH | DEFINED | 30 | 44300 | 0 | 0 |
| EL PASO CORP | COM | 28336L109 | 2163 | 125477 | SH | DEFINED | 7,11 | 119721 | 0 | 5756 |
| EL PASO CORP | COM | 28336L109 | 9757 | 565962 | SH | DEFINED | 16,24 | 565962 | 0 | 0 |
| EL PASO CORP | COM | 28336L109 | 72 | 4175 | SH | DEFINED | 7,11,13 | 4175 | 0 | 0 |
| EL PASO CORP | COM | 28336L109 | 1259 | 73028 | SH | DEFINED | 15,16,24 | 73028 | 0 | 0 |
| EL PASO CORP | COM | 28336L109 | 31978 | 1854894 | SH | DEFINED | 16,24,25 | 1502385 | 0 | 352508 |
| EL PASO CORP | COM | 28336L109 | 330 | 19135 | SH | DEFINED | 32,40,41 | 19135 | 0 | 0 |
| EL PASO CORP | COM | 28336L109 | 362 | 20976 | SH | DEFINED | 16,19,24,26,27 | 20976 | 0 | 0 |

| Name | Type | CUSIP | Col1 | Col2 | SH | Opt | DEFINED | Code | Col3 | Col4 | Col5 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EL PASO CORP | COM | 28336L109 | 9506 | 551400 | SH | CALL | DEFINED | 15,16,24 | 551400 | 0 | 0 |
| EL PASO CORP | COM | 28336L109 | 2071 | 120100 | SH | CALL | DEFINED | 16,24,25 | 120100 | 0 | 0 |
| EL PASO CORP | COM | 28336L109 | 10484 | 608100 | SH | PUT | DEFINED | 15,16,24 | 608100 | 0 | 0 |
| EL PASO CORP | COM | 28336L109 | 2045 | 118600 | SH | PUT | DEFINED | 16,24,25 | 118600 | 0 | 0 |
| EL PASO ELEC CO | COM NEW | 283677854 | 837 | 32752 | SH | | DEFINED | 16,24,25 | 32752 | 0 | 0 |
| EL PASO ENERGY CAP T | PFD CV TR | 283678209 | 644 | 17900 | SH | | DEFINED | 7,11 | 0 | 0 | 17900 |
| EL PASO ENERGY CAP T | PFD CV TR | 283678209 | 1030 | 28612 | SH | | DEFINED | 16,24,25 | 22848 | 0 | 5764 |
| EL PASO PIPELINE PAR | COM UNIT L | 283702108 | 7316 | 292040 | SH | | DEFINED | 279715 | 279715 | 0 | 12325 |
| ELAN PLC | ADR | 284131208 | 965 | 43900 | SH | | DEFINED | 30 | 43900 | 0 | 0 |
| ELAN PLC | ADR | 284131208 | 66 | 3000 | SH | | DEFINED | 7,11 | 0 | 0 | 3000 |
| ELAN PLC | ADR | 284131208 | 3541 | 161091 | SH | | DEFINED | 16,24,25 | 128421 | 0 | 32670 |
| ELAN PLC | ADR | 284131208 | 9350 | 425400 | SH | | DEFINED | 32,40,41 | 425400 | 0 | 0 |
| ELAN PLC | ADR | 284131208 | 326 | 14845 | SH | | DEFINED | 5-7,11,43,44 | 0 | 14845 | 0 |
| ELAN PLC | ADR | 284131208 | 30321 | 1379500 | SH | CALL | DEFINED | 15,16,24 | 1379500 | 0 | 0 |
| ELAN PLC | ADR | 284131208 | 4 | 200 | SH | CALL | DEFINED | 16,24,25 | 200 | 0 | 0 |
| ELAN PLC | ADR | 284131208 | 16498 | 750600 | SH | PUT | DEFINED | 15,16,24 | 750600 | 0 | 0 |
| ELDORADO GOLD CORP N | COM | 284902103 | 21 | 3561 | SH | | DEFINED | 16,24,25 | 1761 | 0 | 1800 |
| ELDORADO GOLD CORP N | COM | 284902103 | 45 | 7795 | SH | | DEFINED | 32,40,41 | 7795 | 0 | 0 |
| ELDORADO GOLD CORP N | COM | 284902103 | 27 | 4694 | SH | | DEFINED | 4,6,7,11 | 4694 | 0 | 0 |
| ELECTRONIC ARTS INC | COM | 285512109 | 28 | 485 | SH | | DEFINED | 3,9 | 0 | 0 | 485 |
| ELECTRONIC ARTS INC | COM | 285512109 | 7561 | 129442 | SH | | DEFINED | 7,11 | 58972 | 0 | 70470 |
| ELECTRONIC ARTS INC | COM | 285512109 | 183 | 3125 | SH | | DEFINED | 7,11,13 | 3125 | 0 | 0 |
| ELECTRONIC ARTS INC | COM | 285512109 | 126 | 2155 | SH | | DEFINED | 7,11,13 | 0 | 0 | 2155 |
| ELECTRONIC ARTS INC | COM | 285512109 | 5107 | 87431 | SH | | DEFINED | 15,16,24 | 87431 | 0 | 0 |
| ELECTRONIC ARTS INC | COM | 285512109 | 55469 | 949642 | SH | | DEFINED | 16,24,25 | 814267 | 0 | 135375 |
| ELECTRONIC ARTS INC | COM | 285512109 | 20882 | 357505 | SH | | DEFINED | 32,40,41 | 357505 | 0 | 0 |
| ELECTRONIC ARTS INC | COM | 285512109 | 15 | 260 | SH | | DEFINED | 5-7,11,43,44 | 0 | 260 | 0 |
| ELECTRONIC ARTS INC | COM | 285512109 | 32786 | 561300 | SH | CALL | DEFINED | 15,16,24 | 561300 | 0 | 0 |
| ELECTRONIC ARTS INC | COM | 285512109 | 2033 | 34800 | SH | CALL | DEFINED | 16,24,25 | 34800 | 0 | 0 |
| ELECTRONIC ARTS INC | COM | 285512109 | 21127 | 361700 | SH | PUT | DEFINED | 15,16,24 | 361700 | 0 | 0 |
| ELECTRONIC ARTS INC | COM | 285512109 | 2588 | 44300 | SH | PUT | DEFINED | 16,24,25 | 44300 | 0 | 0 |
| ELECTRONIC DATA SYS | NOTE 3.87 | 285661AF1 | 1716 | 1727000 | PRN | | DEFINED | 16,24,25 | 1667000 | 0 | 60000 |
| ELECTRONIC DATA SYS | COM | 285661104 | 513 | 24750 | SH | | DEFINED | 12 | 0 | 0 | 24750 |
| ELECTRONIC DATA SYS | COM | 285661104 | 1073 | 51743 | SH | | DEFINED | 3,9 | 0 | 0 | 51743 |
| ELECTRONIC DATA SYS | COM | 285661104 | 10421 | 502710 | SH | | DEFINED | 7,11 | 170100 | 750 | 331860 |
| ELECTRONIC DATA SYS | COM | 285661104 | 264 | 12730 | SH | | DEFINED | 7,11,13 | 5275 | 0 | 7455 |
| ELECTRONIC DATA SYS | COM | 285661104 | 46 | 2200 | SH | | DEFINED | 7,11,33 | 0 | 0 | 2200 |
| ELECTRONIC DATA SYS | COM | 285661104 | 2634 | 127077 | SH | | DEFINED | 16,24,25 | 111460 | 0 | 15616 |
| ELECTRONIC DATA SYS | COM | 285661104 | 303 | 14628 | SH | | DEFINED | 32,40,41 | 14628 | 0 | 0 |
| ELECTRONIC DATA SYS | COM | 285661104 | 66 | 3200 | SH | | DEFINED | 16,19,24,26,27 | 3200 | 0 | 0 |
| ELECTRONIC DATA SYS | COM | 285661104 | 5796 | 279600 | SH | CALL | DEFINED | 15,16,24 | 279600 | 0 | 0 |
| ELECTRONIC DATA SYS | COM | 285661104 | 2088 | 100700 | SH | CALL | DEFINED | 16,24,25 | 100700 | 0 | 0 |
| ELECTRONIC DATA SYS | COM | 285661104 | 7241 | 349300 | SH | PUT | DEFINED | 15,16,24 | 349300 | 0 | 0 |
| ELECTRONIC DATA SYS | COM | 285661104 | 721 | 34800 | SH | PUT | DEFINED | 16,24,25 | 34800 | 0 | 0 |
| ELECTRONICS FOR IMAG | DBCV 1.50 | 286082AA0 | 459 | 457000 | PRN | | DEFINED | 16,24,25 | 457000 | 0 | 0 |
| ELECTRONICS FOR IMAG | COM | 286082102 | 436 | 19400 | SH | | DEFINED | 7,11 | 19400 | 0 | 0 |
| ELECTRONICS FOR IMAG | COM | 286082102 | 13 | 585 | SH | | DEFINED | 7,11,33 | 0 | 0 | 585 |
| ELECTRONICS FOR IMAG | COM | 286082102 | 12652 | 562809 | SH | | DEFINED | 16,24,25 | 519739 | 0 | 43070 |
| ELIZABETH ARDEN | COM | 28660G106 | 222 | 10911 | SH | | DEFINED | 16,24,25 | 9919 | 0 | 992 |
| ELIXIR GAMING TECHNO | COM | 28661G105 | 191 | 44400 | SH | | DEFINED | 16,24,25 | 42400 | 0 | 2000 |
| ELLSWORTH FUND LTD | COM | 289074106 | 953 | 116759 | SH | | DEFINED | 16,24,25 | 114735 | 0 | 2024 |
| EMAGEON INC | COM | 29076V109 | 507 | 125733 | SH | | DEFINED | 16,24,25 | 108925 | 0 | 16808 |
| EMBARQ CORP | COM | 29078E105 | 7332 | 148029 | SH | | DEFINED | 7,11 | 148029 | 0 | 0 |
| EMBARQ CORP | COM | 29078E105 | 38 | 763 | SH | | DEFINED | 7,11,13 | 763 | 0 | 0 |
| EMBARQ CORP | COM | 29078E105 | 6 | 127 | SH | | DEFINED | 7,11,33 | 0 | 0 | 127 |
| EMBARQ CORP | COM | 29078E105 | 12805 | 258523 | SH | | DEFINED | 16,24,25 | 237992 | 0 | 20531 |
| EMBARQ CORP | COM | 29078E105 | 217 | 4376 | SH | | DEFINED | 32,40,41 | 4376 | 0 | 0 |
| EMBARQ CORP | COM | 29078E105 | 13 | 253 | SH | | DEFINED | 5-7,11,43,44 | 0 | 253 | 0 |
| EMBARQ CORP | COM | 29078E105 | 1 | 15 | SH | | DEFINED | 16,19,24,26,27 | 15 | 0 | 0 |
| EMBARQ CORP | COM | 29078E105 | 1987 | 40120 | SH | CALL | DEFINED | 7,11 | 40120 | 0 | 0 |
| EMBARQ CORP | COM | 29078E105 | 1773 | 35800 | SH | CALL | DEFINED | 15,16,24 | 35800 | 0 | 0 |
| EMBARQ CORP | COM | 29078E105 | 248 | 5000 | SH | CALL | DEFINED | 16,24,25 | 5000 | 0 | 0 |
| EMBARQ CORP | COM | 29078E105 | 703 | 14200 | SH | PUT | DEFINED | 15,16,24 | 14200 | 0 | 0 |
| EMBARQ CORP | COM | 29078E105 | 2111 | 42620 | SH | PUT | DEFINED | 16,24,25 | 42620 | 0 | 0 |
| EMBRAER-EMPRESA BRAS | SP ADR COM | 29081M102 | 483 | 10600 | SH | | DEFINED | 30 | 10600 | 0 | 0 |
| EMBRAER-EMPRESA BRAS | SP ADR COM | 29081M102 | 1710 | 37500 | SH | | DEFINED | 7,11 | 37500 | 0 | 0 |
| EMBRAER-EMPRESA BRAS | SP ADR COM | 29081M102 | 14 | 300 | SH | | DEFINED | 7,11,33 | 0 | 0 | 300 |
| EMBRAER-EMPRESA BRAS | SP ADR COM | 29081M102 | 2372 | 52038 | SH | | DEFINED | 16,24,25 | 44450 | 0 | 7588 |
| EMBRAER-EMPRESA BRAS | SP ADR COM | 29081M102 | 34 | 750 | SH | | DEFINED | 32,40,41 | 750 | 0 | 0 |
| EMBRAER-EMPRESA BRAS | SP ADR COM | 29081M102 | 248 | 5433 | SH | | DEFINED | 16,19,24,26,27 | 5433 | 0 | 0 |
| EMCOR GROUP INC | COM | 29084Q100 | 2 | 66 | SH | | DEFINED | 3,9 | 0 | 0 | 66 |
| EMCOR GROUP INC | COM | 29084Q100 | 16 | 661 | SH | | DEFINED | 7,11 | 0 | 0 | 661 |
| EMCOR GROUP INC | COM | 29084Q100 | 613 | 25962 | SH | | DEFINED | 16,24,25 | 24077 | 0 | 1885 |
| EMCORE CORP | NOTE 5.50 | 290846AC8 | 31915 | 14682000 | PRN | | DEFINED | 16,24,25 | 14682000 | 0 | 0 |
| EMCORE CORP | COM | 290846104 | 315 | 20600 | SH | | DEFINED | 7,11,13 | 20600 | 0 | 0 |
| EMCORE CORP | COM | 290846104 | 329 | 21523 | SH | | DEFINED | 16,24,25 | 14248 | 0 | 7275 |
| EMERGING MKTS TELECO | COM | 290890102 | 1022 | 37570 | SH | | DEFINED | 16,24,25 | 11661 | 0 | 25909 |
| EMERSON ELEC CO | COM | 291011104 | 1762 | 31100 | SH | | DEFINED | 12 | 0 | 0 | 31100 |
| EMERSON ELEC CO | COM | 291011104 | 5218 | 92098 | SH | | DEFINED | 3,9 | 0 | 0 | 92098 |
| EMERSON ELEC CO | COM | 291011104 | 40909 | 722005 | SH | | DEFINED | 7,11 | 204043 | 1100 | 516862 |
| EMERSON ELEC CO | COM | 291011104 | 7847 | 138493 | SH | | DEFINED | 7,11,13 | 115053 | 0 | 23440 |
| EMERSON ELEC CO | COM | 291011104 | 869 | 15345 | SH | | DEFINED | 7,11,33 | 0 | 0 | 15345 |
| EMERSON ELEC CO | COM | 291011104 | 121616 | 2146425 | SH | | DEFINED | 16,24,25 | 1796380 | 0 | 350045 |
| EMERSON ELEC CO | COM | 291011104 | 5382 | 94992 | SH | | DEFINED | 32,40,41 | 94992 | 0 | 0 |
| EMERSON ELEC CO | COM | 291011104 | 272 | 4800 | SH | | DEFINED | 5-7,11,43,44 | 0 | 4800 | 0 |
| EMERSON ELEC CO | COM | 291011104 | 6127 | 108142 | SH | CALL | DEFINED | 7,11 | 108142 | 0 | 0 |
| EMERSON ELEC CO | COM | 291011104 | 25826 | 455800 | SH | CALL | DEFINED | 15,16,24 | 455800 | 0 | 0 |
| EMERSON ELEC CO | COM | 291011104 | 8131 | 143500 | SH | CALL | DEFINED | 16,24,25 | 143500 | 0 | 0 |
| EMERSON ELEC CO | COM | 291011104 | 8261 | 145800 | SH | PUT | DEFINED | 15,16,24 | 145800 | 0 | 0 |
| EMERSON ELEC CO | COM | 291011104 | 11408 | 201342 | SH | PUT | DEFINED | 16,24,25 | 201342 | 0 | 0 |
| EMISPHERE TECHNOLOGI | COM | 291345106 | 34 | 12600 | SH | | DEFINED | 16,24,25 | 12480 | 0 | 120 |
| EMMIS COMMUNICATIONS | PFD CV SER | 291525202 | 5104 | 136205 | SH | | DEFINED | 31,45 | 136205 | 0 | 0 |
| EMPIRE DIST ELEC CO | COM | 291641108 | 2 | 100 | SH | | DEFINED | 7,11 | 0 | 0 | 100 |
| EMPIRE DIST ELEC CO | COM | 291641108 | 803 | 35256 | SH | | DEFINED | 16,24,25 | 26656 | 0 | 8600 |
| EMPLOYERS HOLDINGS I | COM | 292218104 | 22141 | 1325000 | SH | | DEFINED | 16,24 | 1325000 | 0 | 0 |
| EMPLOYERS HOLDINGS I | COM | 292218104 | 74 | 4450 | SH | | DEFINED | 16,24,25 | 3050 | 0 | 1400 |
| EMPRESA NACIONAL DE | SPONSORED | 29244T101 | 522 | 13883 | SH | | DEFINED | 7,11 | 13883 | 0 | 0 |
| EMPRESA NACIONAL DE | SPONSORED | 29244T101 | 26 | 680 | SH | | DEFINED | 32,40,41 | 680 | 0 | 0 |
| EMULEX CORP | COM NEW | 292475209 | 55 | 3371 | SH | | DEFINED | 15,16,24 | 3371 | 0 | 0 |
| EMULEX CORP | COM NEW | 292475209 | 582 | 35663 | SH | | DEFINED | 16,24,25 | 17330 | 0 | 18333 |
| EMULEX CORP | COM NEW | 292475209 | 1377 | 84400 | SH | CALL | DEFINED | 15,16,24 | 84400 | 0 | 0 |
| EMULEX CORP | COM NEW | 292475209 | 1364 | 83600 | SH | PUT | DEFINED | 15,16,24 | 83600 | 0 | 0 |
| ENBRIDGE INC | COM | 29250N105 | 382 | 9443 | SH | | DEFINED | 16,24,25 | 8928 | 0 | 515 |
| ENBRIDGE INC | COM | 29250N105 | 392 | 9690 | SH | | DEFINED | 32,40,41 | 9690 | 0 | 0 |
| ENBRIDGE INC | COM | 29250N105 | 1503 | 37165 | SH | | DEFINED | 4,6,7,11 | 37165 | 0 | 0 |
| ENBRIDGE INC | COM | 29250N105 | 423 | 10454 | SH | | DEFINED | 16,19,24,26,27 | 10454 | 0 | 0 |
| ENBRIDGE ENERGY PART | COM | 29250R106 | 182 | 3600 | SH | | DEFINED | 7,11,13 | 3600 | 0 | 0 |
| ENBRIDGE ENERGY PART | COM | 29250R106 | 51 | 1000 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1000 |
| ENBRIDGE ENERGY PART | COM | 29250R106 | 10369 | 205164 | SH | | DEFINED | 16,24,25 | 169189 | 0 | 35975 |
| ENBRIDGE ENERGY PART | COM | 29250R106 | 8944 | 176965 | SH | | DEFINED | 32,40,41 | 176965 | 0 | 0 |
| ENBRIDGE ENERGY MANA | SHS UNITS | 29250X103 | 31 | 598 | SH | | DEFINED | 7,11,33 | 0 | 0 | 598 |
| ENBRIDGE ENERGY MANA | SHS UNITS | 29250X103 | 2081 | 39773 | SH | | DEFINED | 16,24,25 | 32468 | 0 | 7305 |
| ENCANA CORP | COM | 292505104 | 292 | 4300 | SH | | DEFINED | 30 | 4300 | 0 | 0 |
| ENCANA CORP | COM | 292505104 | 10214 | 150300 | SH | | DEFINED | 42 | 150300 | 0 | 0 |

```
ENCANA CORP           COM            292505104     254      3732 SH        DEFINED           3,9              0        0     3732
ENCANA CORP           COM            292505104     204      3000 SH        DEFINED          7,11              0        0     3000
ENCANA CORP           COM            292505104     163      2400 SH        DEFINED         7,11,13            0        0     2400
ENCANA CORP           COM            292505104     734     10798 SH        DEFINED         7,11,33            0        0    10798
ENCANA CORP           COM            292505104   10484    154264 SH        DEFINED        15,16,24        154264       0        0
ENCANA CORP           COM            292505104   33238    489076 SH        DEFINED        16,24,25        343332       0   145743
ENCANA CORP           COM            292505104    3111     45781 SH        DEFINED        32,40,41         45781        0        0
ENCANA CORP           COM            292505104    5069     74568 SH        DEFINED         4,6,7,11        74568        0        0
ENCANA CORP           COM            292505104      41       606 SH        DEFINED       5-7,11,43,44         0        606       0
ENCANA CORP           COM            292505104   14659    215700 SH   CALL DEFINED        15,16,24        215700       0        0
ENCANA CORP           COM            292505104    6796    100000 SH   CALL DEFINED         4,6,7,11       100000       0        0
ENCANA CORP           COM            292505104   38642    568600 SH   PUT  DEFINED        15,16,24        568600       0        0
ENCANA CORP           COM            292505104    2046     30100 SH   PUT  DEFINED        16,24,25         30100        0        0
ENCORE ACQUISITION C  COM            29255W100      747     22390 SH        DEFINED           30            22390        0        0
ENCORE CAP GROUP INC  NOTE   3.37    292554A88   11362  13730000 PRN       DEFINED         31,45        13730000       0        0
ENCYSIVE PHARMACEUTI  FRNT   2.50    29256XAB3    1123   2262000 PRN       DEFINED        16,24,25       2262000       0        0
ENCORE WIRE CORP      COM            292562105     274     17185 SH        DEFINED        15,16,24         17185        0        0
ENCORE WIRE CORP      COM            292562105     260     16310 SH        DEFINED        16,24,25         15110        0     1200
ENCORE WIRE CORP      COM            292562105     215     13500 SH   CALL DEFINED        15,16,24         13500        0        0
ENCORE WIRE CORP      COM            292562105     579     36400 SH   PUT  DEFINED        15,16,24         36400        0        0
ENCORE ENERGY PARTNE  COM UNIT       29257A106    2136    118665 SH        DEFINED        16,24,25         72219        0    46446
ENDEAVOUR SILVER COR  COM            29258Y103       6      1625 SH        DEFINED        16,24,25          1625        0        0
ENDEAVOUR SILVER COR  COM            29258Y103     113     28349 SH        DEFINED         4,6,7,11        28349        0        0
ENDEAVOUR SILVER COR  COM            29258Y103      56     14100 SH        DEFINED       5-7,11,43,44         0      14100       0
ENDO PHARMACEUTICALS  COM            29264F205      43      1615 SH        DEFINED          7,11           1615         0        0
ENDO PHARMACEUTICALS  COM            29264F205      18       675 SH        DEFINED         7,11,13          675         0        0
ENDO PHARMACEUTICALS  COM            29264F205    2386     89446 SH        DEFINED        16,24,25         85596        0     3850
ENDO PHARMACEUTICALS  COM            29264F205      53      2000 SH        DEFINED        32,40,41          2000        0        0
ENDO PHARMACEUTICALS  COM            29264F205      21       771 SH        DEFINED     16,19,24,26,27       771         0        0
ENERGEN CORP          COM            29265N108      64      1000 SH        DEFINED           30            1000         0        0
ENERGEN CORP          COM            29265N108    3386     52710 SH        DEFINED          7,11          52710        0        0
ENERGEN CORP          COM            29265N108    8214    127887 SH        DEFINED        16,24,25        108262       0    19624
ENEL SOCIETA PER AZI  ADR           29265W108    6081   1029986 SH        DEFINED        16,24,25         79671        0    23315
ENERGY CONVERSION DE  COM            292659109     158      4700 SH        DEFINED           30            4700         0        0
ENERGY CONVERSION DE  COM            292659109      41      1206 SH        DEFINED          7,11           1206         0        0
ENERGY CONVERSION DE  COM            292659109    7391    219651 SH        DEFINED        15,16,24        219651        0        0
ENERGY CONVERSION DE  COM            292659109     800     23762 SH        DEFINED        16,24,25         15836        0     7926
ENERGY CONVERSION DE  COM            292659109     631     18758 SH        DEFINED     16,19,24,26,27      18758        0        0
ENERGY CONVERSION DE  COM            292659109    2093     62200 SH   CALL DEFINED        15,16,24         62200        0        0
ENERGY CONVERSION DE  COM            292659109    9324    277100 SH   PUT  DEFINED        15,16,24        277100        0        0
ENERGY EAST CORP      COM            29266M109    2327     85532 SH        DEFINED          7,11          85432         0      100
ENERGY EAST CORP      COM            29266M109    6717    246868 SH        DEFINED         16,24         246868         0        0
ENERGY EAST CORP      COM            29266M109       4       150 SH        DEFINED         7,11,13          150         0        0
ENERGY EAST CORP      COM            29266M109   18338    673953 SH        DEFINED        16,24,25        640946        0    33007
ENERGY EAST CORP      COM            29266M109     137      5026 SH        DEFINED        32,40,41          5026        0        0
ENERGY EAST CORP      COM            29266M109    2117     77820 SH   CALL DEFINED        16,24,25         77820        0        0
ENERGY EAST CORP      COM            29266M109    2117     77820 SH   PUT  DEFINED          7,11          77820         0        0
ENERGIZER HLDGS INC   COM            29266R108    4488     40023 SH        DEFINED          7,11          40023         0        0
ENERGIZER HLDGS INC   COM            29266R108      67       600 SH        DEFINED         7,11,13          600         0        0
ENERGIZER HLDGS INC   COM            29266R108    6839     60990 SH        DEFINED        16,24,25         54977        0     6013
ENERGIZER HLDGS INC   COM            29266R108    4161     37106 SH        DEFINED        32,40,41         37106        0        0
ENERGY INCOME & GROW  COM            29267I109     245      9965 SH        DEFINED        16,24,25          7433        0     2532
ENERGY PARTNERS LTD   COM            29270U105     126     10675 SH        DEFINED        16,24,25          9692        0      983
ENERGY PARTNERS LTD   COM            29270U105    4074    345000 SH   CALL DEFINED          7,11         345000         0        0
ENERGY SVCS ACQUISIT  COM            29271Q103      75     13000 SH        DEFINED        16,24,25         13000        0        0
ENERGY TRANSFER PRTN  UNIT LTD P     29273R109     100      1860 SH        DEFINED         7,11,33            0        0     1860
ENERGY TRANSFER PRTN  UNIT LTD P     29273R109   40143    745046 SH        DEFINED        16,24,25        633821        0   111224
ENERGY TRANSFER PRTN  UNIT LTD P     29273R109   11207    208000 SH        DEFINED        32,40,41        208000        0        0
ENERGY TRANSFER EQUI  COM UT LTD     29273V100     571     16200 SH        DEFINED          7,11          16200         0        0
ENERGY TRANSFER EQUI  COM UT LTD     29273V100      25       700 SH        DEFINED         7,11,33            0        0      700
ENERGY TRANSFER EQUI  COM UT LTD     29273V100   21511    610590 SH        DEFINED        16,24,25        525504        0    85085
ENERPLUS RES FD       UNIT TR G      29274D604    2307     57600 SH        DEFINED           42           57600         0        0
ENERPLUS RES FD       UNIT TR G      29274D604      39       975 SH        DEFINED         7,11,13          975         0        0
ENERPLUS RES FD       UNIT TR G      29274D604     719     17946 SH        DEFINED        15,16,24         17946        0        0
ENERPLUS RES FD       UNIT TR G      29274D604   13294    331940 SH        DEFINED        16,24,25        290342        0    41598
ENERPLUS RES FD       UNIT TR G      29274D604     135      3375 SH        DEFINED        32,40,41          3375        0        0
ENERPLUS RES FD       UNIT TR G      29274D604      68      1688 SH        DEFINED         4,6,7,11         1688        0        0
ENERPLUS RES FD       UNIT TR G      29274D604    3801     94900 SH   CALL DEFINED        15,16,24         94900        0        0
ENERPLUS RES FD       UNIT TR G      29274D604    3985     99500 SH   PUT  DEFINED        15,16,24         99500        0        0
ENERSIS S A           SPONSORED      29274F104     518     32301 SH        DEFINED          7,11          32301         0        0
ENERSIS S A           SPONSORED      29274F104      15        15 SH        DEFINED         16,24            15          0        0
ENERSIS S A           SPONSORED      29274F104    1499     93494 SH        DEFINED        16,24,25         73342        0    20152
ENERSIS S A           SPONSORED      29274F104      25      1560 SH        DEFINED        32,40,41          1560        0        0
ENERSYS               COM            29275Y102     113      4520 SH        DEFINED          7,11           4520         0        0
ENERSYS               COM            29275Y102     801     32075 SH        DEFINED        16,24,25         32075        0        0
ENERNOC INC           COM            292764107     108      2200 SH        DEFINED           30            2200         0        0
ENERNOC INC           COM            292764107      16       320 SH        DEFINED          7,11           320          0        0
ENERNOC INC           COM            292764107     139      2834 SH        DEFINED        16,24,25          2834        0        0
ENOVA SYSTEMS INC     COM            29355M200    2792    581576 SH        DEFINED           9           581576         0        0
ENOVA SYSTEMS INC     COM NEW        29355M200       2       500 SH        DEFINED        16,24,25          500         0        0
ENPRO INDS INC        COM            29355X107     425     13851 SH        DEFINED        16,24,25          5551        0     8300
ENTEGRIS INC          COM            29362U104       2       242 SH        DEFINED          3,9            242          0        0
ENTEGRIS INC          COM            29362U104     648     75051 SH        DEFINED        16,24,25         60413        0    14638
ENTERCOM COMMUNICATI  CL A          29363910100    2656   1939774 SH        DEFINED        16,24,25       1799098        0    14876
ENTERGY CORP NEW      COM            29364G103    4281     35822 SH        DEFINED          7,11          35322         0      500
ENTERGY CORP NEW      COM            29364G103      45       375 SH        DEFINED         7,11,13          375         0        0
ENTERGY CORP NEW      COM            29364G103      12       100 SH        DEFINED         7,11,33            0        0      100
ENTERGY CORP NEW      COM            29364G103   19628    164221 SH        DEFINED        16,24,25        146874        0    17346
ENTERGY CORP NEW      COM            29364G103     732      6124 SH        DEFINED        32,40,41          6124        0        0
ENTERGY CORP NEW      COM            29364G103       9        78 SH        DEFINED     16,19,24,26,27       78          0        0
ENTERGY CORP NEW      EQUITY UNI     29364G202   15304    213297 SH        DEFINED        16,24,25        213297        0        0
ENTERPRISE ACQUISITI  UNIT 99/99     29365R207     250     25000 SH        DEFINED        16,24,25         25000        0        0
ENTERPRISE FINL SVCS  COM            293712105    2827    118739 SH        DEFINED        16,24,25         74110        0    44629
ENTERPRISE GP HLDGS   UNIT LP IN     293716106   23852    644300 SH        DEFINED         16,24         644300         0        0
ENTERPRISE GP HLDGS   UNIT LP IN     293716106   21779    588307 SH        DEFINED        16,24,25        548714        0    39593
ENTERPRISE PRODS PAR  COM            293792107     797     25000 SH        DEFINED          7,11              0        0    25000
ENTERPRISE PRODS PAR  COM            293792107     686     21511 SH        DEFINED         7,11,13        20848         0      663
ENTERPRISE PRODS PAR  COM            293792107     436     13681 SH        DEFINED         7,11,33            0        0    13681
ENTERPRISE PRODS PAR  COM            293792107  100993   3167895 SH        DEFINED        16,24,25       2653724        0   514171
ENTERPRISE PRODS PAR  COM            293792107    9181    288000 SH        DEFINED        32,40,41        288000        0        0
ENTERTAINMENT PPTYS   COM SH BEN     29380T105     317      6737 SH        DEFINED        16,24,25          5187        0     1550
ENTERTAINMENT PPTYS   COM SH BEN     29380T105   11416    242943 SH        DEFINED        16,24,25        242903        0        0
ENTERRA ENERGY TR     TR UNIT        29381P102      15     12728 SH        DEFINED        16,24,25          7604        0     5124
ENTERRA ENERGY TR     TR UNIT        29381P102       5      4300 SH   CALL DEFINED        15,16,24          4300        0        0
ENTERTAINMENT DIST C  COM            29382J105      21     30650 SH        DEFINED        16,24,25         30650        0        0
ENZON PHARMACEUTICAL  NOTE   4.50    293904AB4      35     35000 PRN       DEFINED        16,24,25         35000        0        0
ENZON PHARMACEUTICAL  NOTE   4.00    293904AB8    1260   1075000 PRN       DEFINED         31,45        1075000        0        0
ENZON PHARMACEUTICAL  NOTE   4.00    293904AE8    7621   6500000 PRN       DEFINED        16,24,25       6500000        0        0
ENZO BIOCHEM INC      COM            294100102    4577    359258 SH        DEFINED        16,24,25        235686        0   123572
EQUIFAX INC           COM            294429105     498     13698 SH        DEFINED          7,11          13698         0        0
EQUIFAX INC           COM            294429105    1657     45585 SH        DEFINED         7,11,13        45585         0        0
EQUIFAX INC           COM            294429105    2575     70819 SH        DEFINED        16,24,25         57671        0    13148
EQUIFAX INC           COM            294429105     192      5288 SH        DEFINED        32,40,41          5288        0        0
EQUINIX INC           DBCV   2.50    29444UAE6   14967   5762000 PRN       DEFINED        16,24,25       5762000        0        0
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| EQUINIX INC | NOTE 2.50 | 29444UAF3 | 220 | 195000 | SH | DEFINED | 16,24,25 | 195000 | 0 | 0 |
| EQUINIX INC | NOTE 3.00 | 29444UAG1 | 5641 | 4600000 | PRN | DEFINED | 16,24,25 | 4600000 | 0 | 0 |
| EQUINIX INC | COM NEW | 29444U502 | 532 | 5260 | SH | DEFINED | 30 | 5260 | 0 | 0 |
| EQUINIX INC | COM NEW | 29444U502 | 6996 | 69216 | SH | DEFINED | 16,24,25 | 64114 | 0 | 5102 |
| EQUITABLE RES INC | COM | 294549100 | 494 | 9264 | SH | DEFINED | 7,11 | 6964 | 0 | 2300 |
| EQUITABLE RES INC | COM | 294549100 | 78 | 1464 | SH | DEFINED | 7,11,13 | 1464 | 0 | 0 |
| EQUITABLE RES INC | COM | 294549100 | 5808 | 109012 | SH | DEFINED | 16,24,25 | 88038 | 0 | 20973 |
| EQUITABLE RES INC | COM | 294549100 | 324 | 6090 | SH | DEFINED | 32,40,41 | 6090 | 0 | 0 |
| EQUITY INCOME FD | UT 1 EX SR | 294700703 | 943 | 7602 | SH | DEFINED | 16,24,25 | 7502 | 0 | 100 |
| EQUITY LIFESTYLE PPT | COM | 29472R108 | 330 | 7216 | SH | DEFINED | 16,24,25 | 6516 | 0 | 700 |
| EQUITY LIFESTYLE PPT | COM | 29472R108 | 506 | 11084 | SH | DEFINED | 32,40,41 | 11084 | 0 | 0 |
| EQUITY ONE | COM | 294752100 | 64 | 2800 | SH | DEFINED | 30 | 2800 | 0 | 0 |
| EQUITY ONE | COM | 294752100 | 161 | 7000 | SH | DEFINED | 14,31 | 7000 | 0 | 0 |
| EQUITY ONE | COM | 294752100 | 736 | 31968 | SH | DEFINED | 16,24,25 | 18194 | 0 | 13774 |
| EQUITY ONE | COM | 294752100 | 390 | 16923 | SH | DEFINED | 32,40,41 | 16923 | 0 | 0 |
| EQUITY RESIDENTIAL | SH BEN INT | 29476L107 | 18 | 500 | SH | DEFINED | 12 | 0 | 0 | 500 |
| EQUITY RESIDENTIAL | SH BEN INT | 29476L107 | 1950 | 53482 | SH | DEFINED | 7,11 | 38252 | 850 | 14380 |
| EQUITY RESIDENTIAL | SH BEN INT | 29476L107 | 1904 | 52200 | SH | DEFINED | 14,31 | 52200 | 0 | 0 |
| EQUITY RESIDENTIAL | SH BEN INT | 29476L107 | 47 | 1300 | SH | DEFINED | 7,11,13 | 0 | 0 | 1300 |
| EQUITY RESIDENTIAL | SH BEN INT | 29476L107 | 4 | 100 | SH | DEFINED | 7,11,33 | 0 | 0 | 100 |
| EQUITY RESIDENTIAL | SH BEN INT | 29476L107 | 3272 | 89717 | SH | DEFINED | 16,24,25 | 73873 | 0 | 15844 |
| EQUITY RESIDENTIAL | SH BEN INT | 29476L107 | 13109 | 359458 | SH | DEFINED | 32,40,41 | 359458 | 0 | 0 |
| EQUITY RESIDENTIAL | SH BEN INT | 29476L107 | 246 | 6758 | SH | DEFINED | 16,19,24,26,27 | 6758 | 0 | 0 |
| EQUUS TOTAL RETURN I | COM | 294766100 | 407 | 64467 | SH | DEFINED | 16,24,25 | 59466 | 0 | 5001 |
| ERESEARCHTECHNOLOGY | COM | 29481V108 | 59 | 5000 | SH | DEFINED | 7,11,13 | 5000 | 0 | 0 |
| ERESEARCHTECHNOLOGY | COM | 29481V108 | 694 | 58681 | SH | DEFINED | 16,24,25 | 50758 | 0 | 7923 |
| ERESEARCHTECHNOLOGY | COM | 29481V108 | 1356 | 114700 | CALL | DEFINED | 15,16,24 | 114700 | 0 | 0 |
| ERESEARCHTECHNOLOGY | COM | 29481V108 | 524 | 44300 | PUT | DEFINED | 15,16,24 | 44300 | 0 | 0 |
| ERICSSON L M TEL CO | ADR B SEK | 294821608 | 152 | 6490 | SH | DEFINED | 30 | 6490 | 0 | 0 |
| ERICSSON L M TEL CO | ADR B SEK | 294821608 | 21 | 913 | SH | DEFINED | 7,11 | 0 | 0 | 913 |
| ERICSSON L M TEL CO | ADR B SEK | 294821608 | 287 | 12307 | SH | DEFINED | 15,16,24 | 12307 | 0 | 0 |
| ERICSSON L M TEL CO | ADR B SEK | 294821608 | 5819 | 249210 | SH | DEFINED | 16,24,25 | 239949 | 0 | 9261 |
| ERICSSON L M TEL CO | ADR B SEK | 294821608 | 6323 | 270800 | SH | DEFINED | 15,16,24 | 270800 | 0 | 0 |
| ERICSSON L M TEL CO | ADR B SEK | 294821608 | 7052 | 302000 | SH | DEFINED | 16,24,25 | 302000 | 0 | 0 |
| ERICSSON L M TEL CO | ADR B SEK | 294821608 | 2627 | 112500 | CALL | DEFINED | 15,16,24 | 112500 | 0 | 0 |
| ERICSSON L M TEL CO | ADR B SEK | 294821608 | 280 | 12000 | PUT | DEFINED | 16,24,25 | 12000 | 0 | 0 |
| ESCO TECHNOLOGIES IN | COM | 296315104 | 1024 | 25643 | SH | DEFINED | 7,11 | 3326 | 0 | 22317 |
| ESCO TECHNOLOGIES IN | COM | 296315104 | 1530 | 38302 | SH | DEFINED | 16,24,25 | 29198 | 0 | 9104 |
| ESPEED INC | CL A | 296643109 | 5052 | 447099 | SH | DEFINED | 16,24,25 | 85138 | 0 | 361961 |
| ESSEX PPTY TR INC | COM | 297178105 | 13 | 137 | SH | DEFINED | 7,11 | 137 | 0 | 0 |
| ESSEX PPTY TR INC | COM | 297178105 | 5030 | 51600 | SH | DEFINED | 14,31 | 51600 | 0 | 0 |
| ESSEX PPTY TR INC | COM | 297178105 | 36 | 371 | SH | DEFINED | 16,24,25 | 371 | 0 | 0 |
| ESSEX PPTY TR INC | COM | 297178105 | 26787 | 274768 | SH | DEFINED | 32,40,41 | 274768 | 0 | 0 |
| ESTERLINE TECHNOLOGI | COM | 297425100 | 264 | 5101 | SH | DEFINED | 16,24,25 | 5101 | 0 | 0 |
| ETABLISSEMENTS DELHA | SPONSORED | 29759W101 | 34 | 396 | SH | DEFINED | 7,11,13 | 0 | 0 | 396 |
| ETABLISSEMENTS DELHA | SPONSORED | 29759W101 | 4 | 43 | SH | DEFINED | 7,11,13 | 43 | 0 | 0 |
| ETABLISSEMENTS DELHA | SPONSORED | 29759W101 | 259 | 2994 | SH | DEFINED | 16,24,25 | 2557 | 0 | 437 |
| EURONET WORLDWIDE IN | DBCV 1.62 | 298736AD1 | 4415 | 4117000 | PRN | DEFINED | 16,24,25 | 4117000 | 0 | 0 |
| EURONET WORLDWIDE IN | NOTE 3.50 | 298736AP6 | 1471 | 1418000 | PRN | DEFINED | 16,24,25 | 1418000 | 0 | 0 |
| EURONET WORLDWIDE IN | COM | 298736109 | 1800 | 60000 | SH | DEFINED | 7,11 | 0 | 0 | 60000 |
| EURONET WORLDWIDE IN | COM | 298736109 | 1176 | 39191 | SH | DEFINED | 16,24,25 | 33844 | 0 | 5347 |
| EUROPE 2001 HOLDRS T | DEPOSITRY | 29875G105 | 239 | 2700 | SH | DEFINED | 16,24,25 | 800 | 0 | 1900 |
| EUROPEAN EQUITY FUND | COM | 298768102 | 512 | 41291 | SH | DEFINED | 16,24,25 | 31889 | 0 | 9401 |
| EVANS & SUTHERLAND C | COM | 299096107 | 34 | 28318 | SH | DEFINED | 16,24,25 | 28318 | 0 | 0 |
| EVERGREEN INCOME ADV | COM SHS | 30023Y105 | 1976 | 175213 | SH | DEFINED | 16,24,25 | 165823 | 0 | 9390 |
| EVERGREEN ENERGY INC | COM | 30024B104 | 885 | 399527 | SH | DEFINED | 15,16,24 | 398527 | 0 | 0 |
| EVERGREEN ENERGY INC | COM | 30024B104 | 25 | 11100 | SH | DEFINED | 16,24,25 | 11100 | 0 | 0 |
| EVERGREEN ENERGY INC | COM | 30024B104 | 382 | 171900 | CALL | DEFINED | 15,16,24 | 171900 | 0 | 0 |
| EVERGREEN ENERGY INC | COM | 30024B104 | 832 | 374700 | PUT | DEFINED | 15,16,24 | 374700 | 0 | 0 |
| EVERGREEN INTL BALAN | COM | 30024R109 | 289 | 14274 | SH | DEFINED | 16,24,25 | 13901 | 0 | 372 |
| EVERGREEN MULTI SECT | COM SHS | 30024Y104 | 629 | 40000 | SH | DEFINED | 7,11,33 | 0 | 0 | 40000 |
| EVERGREEN MULTI SECT | COM SHS | 30024Y104 | 14539 | 924877 | SH | DEFINED | 16,24,25 | 867178 | 0 | 57698 |
| EVERGREEN MULTI SECT | COM SHS | 30024Y104 | 31 | 2000 | SH | DEFINED | 16,19,24,26,27 | 2000 | 0 | 0 |
| EVERGREEN SOLAR INC | NOTE 4.37 | 30033RAB4 | 5744 | 2500000 | PRN | DEFINED | 16,24,25 | 2500000 | 0 | 0 |
| EVERGREEN SOLAR INC | COM | 30033B108 | 5746 | 332709 | SH | DEFINED | 16,24,25 | 224892 | 0 | 107817 |
| EVERGREEN SOLAR INC | COM | 30033B108 | 320 | 18553 | SH | DEFINED | 16,19,24,26,27 | 18553 | 0 | 0 |
| EVERGREEN SOLAR INC | COM | 30033B108 | 6597 | 382000 | CALL | DEFINED | 15,16,24 | 382000 | 0 | 0 |
| EVERGREEN SOLAR INC | COM | 30033B108 | 5979 | 346200 | PUT | DEFINED | 15,16,24 | 346200 | 0 | 0 |
| EXACT SCIENCES CORP | COM | 30063P105 | 66 | 20500 | SH | DEFINED | 16,24,25 | 20500 | 0 | 0 |
| EXACTECH INC | COM | 30064E109 | 761 | 36665 | SH | DEFINED | 16,24,25 | 35665 | 0 | 1000 |
| EXCEL TECHNOLOGY INC | COM | 30067T103 | 8 | 300 | SH | DEFINED | 7,11,33 | 0 | 0 | 300 |
| EXCEL TECHNOLOGY INC | COM | 30067T103 | 5440 | 200725 | SH | DEFINED | 16,24,25 | 146675 | 0 | 54050 |
| EXELON CORP | COM | 30161N101 | 23 | 282 | SH | DEFINED | 3,9 | 0 | 0 | 282 |
| EXELON CORP | COM | 30161N101 | 14620 | 179084 | SH | DEFINED | 7,11 | 176084 | 0 | 3000 |
| EXELON CORP | COM | 30161N101 | 551 | 6747 | SH | DEFINED | 7,11,13 | 4507 | 0 | 2240 |
| EXELON CORP | COM | 30161N101 | 57 | 700 | SH | DEFINED | 7,11,33 | 0 | 0 | 700 |
| EXELON CORP | COM | 30161N101 | 43055 | 527380 | SH | DEFINED | 16,24,25 | 473384 | 0 | 53995 |
| EXELON CORP | COM | 30161N101 | 2076 | 25433 | SH | DEFINED | 16,19,24,26,27 | 25433 | 0 | 0 |
| EXELON CORP | COM | 30161N101 | 323 | 3956 | SH | DEFINED | 16,19,24,26,27 | 3956 | 0 | 0 |
| EXELON CORP | COM | 30161N101 | 8154 | 99882 | CALL | DEFINED | 7,11 | 99882 | 0 | 0 |
| EXELON CORP | COM | 30161N101 | 25962 | 318000 | CALL | DEFINED | 15,16,24 | 318000 | 0 | 0 |
| EXELON CORP | COM | 30161N101 | 4131 | 50600 | CALL | DEFINED | 16,24,25 | 50600 | 0 | 0 |
| EXELON CORP | COM | 30161N101 | 19504 | 238900 | PUT | DEFINED | 15,16,24 | 238900 | 0 | 0 |
| EXELON CORP | COM | 30161N101 | 9012 | 110382 | PUT | DEFINED | 16,24,25 | 110382 | 0 | 0 |
| EXELIXIS INC | COM | 30161Q104 | 707 | 81897 | SH | DEFINED | 16,24,25 | 80672 | 0 | 1225 |
| EXELIXIS INC | COM | 30161Q104 | 2416 | 280000 | SH | DEFINED | 32,40,41 | 280000 | 0 | 0 |
| EXETER RES CORP | COM | 301835104 | 121 | 22369 | SH | DEFINED | 16,24,25 | 22369 | 0 | 0 |
| EXIDE TECHNOLOGIES | COM | 302051206 | 1058 | 132189 | SH | DEFINED | 31,45 | 132189 | 0 | 0 |
| EXIDE TECHNOLOGIES | COM NEW | 302051206 | 1 | 150 | SH | DEFINED | 16,24,25 | 150 | 0 | 0 |
| EXPEDIA INC DEL | COM | 30212P105 | 13 | 400 | SH | DEFINED | 12 | 0 | 0 | 400 |
| EXPEDIA INC DEL | COM | 30212P105 | 20 | 647 | SH | DEFINED | 3,9 | 0 | 0 | 647 |
| EXPEDIA INC DEL | COM | 30212P105 | 3353 | 106049 | SH | DEFINED | 7,11 | 85414 | 0 | 20635 |
| EXPEDIA INC DEL | COM | 30212P105 | 165 | 5224 | SH | DEFINED | 16,24 | 5224 | 0 | 0 |
| EXPEDIA INC DEL | COM | 30212P105 | 1732 | 54771 | SH | DEFINED | 31,45 | 54771 | 0 | 0 |
| EXPEDIA INC DEL | COM | 30212P105 | 56 | 1765 | SH | DEFINED | 7,11,13 | 115 | 0 | 1650 |
| EXPEDIA INC DEL | COM | 30212P105 | 59 | 1862 | SH | DEFINED | 7,11,33 | 0 | 0 | 1862 |
| EXPEDIA INC DEL | COM | 30212P105 | 44307 | 1401236 | SH | DEFINED | 16,24,25 | 1224932 | 0 | 176304 |
| EXPEDIA INC DEL | COM | 30212P105 | 172 | 5434 | SH | DEFINED | 32,40,41 | 5434 | 0 | 0 |
| EXPEDIA INC DEL | COM | 30212P105 | 32 | 1000 | SH | DEFINED | 5-7,11,43,44 | 0 | 1000 | 0 |
| EXPEDIA INC DEL | COM | 30212P105 | 6273 | 198400 | CALL | DEFINED | 15,16,24 | 198400 | 0 | 0 |
| EXPEDIA INC DEL | COM | 30212P105 | 2618 | 82800 | PUT | DEFINED | 15,16,24 | 82800 | 0 | 0 |
| EXPEDITORS INTL WASH | COM | 302130109 | 1402 | 31378 | SH | DEFINED | 7,11 | 31008 | 0 | 370 |
| EXPEDITORS INTL WASH | COM | 302130109 | 170 | 3800 | SH | DEFINED | 16,24 | 3800 | 0 | 0 |
| EXPEDITORS INTL WASH | COM | 302130109 | 23 | 525 | SH | DEFINED | 7,11,13 | 200 | 0 | 325 |
| EXPEDITORS INTL WASH | COM | 302130109 | 45 | 1000 | SH | DEFINED | 7,11,33 | 0 | 0 | 1000 |
| EXPEDITORS INTL WASH | COM | 302130109 | 7335 | 164177 | SH | DEFINED | 16,24,25 | 135344 | 0 | 28833 |
| EXPEDITORS INTL WASH | COM | 302130109 | 298 | 6676 | SH | DEFINED | 32,40,41 | 6676 | 0 | 0 |
| EXPEDITORS INTL WASH | COM | 302130109 | 9204 | 206000 | SH | DEFINED | 15,16,24 | 206000 | 0 | 0 |
| EXPEDITORS INTL WASH | COM | 302130109 | 1117 | 25000 | SH | DEFINED | 16,24,25 | 25000 | 0 | 0 |
| EXPEDITORS INTL WASH | COM | 302130109 | 7211 | 161400 | CALL | DEFINED | 15,16,24 | 161400 | 0 | 0 |
| EXPEDITORS INTL WASH | COM | 302130109 | 1117 | 25000 | PUT | DEFINED | 16,24,25 | 25000 | 0 | 0 |
| EXPRESSJET HOLDINGS | NOTE 4.25 | 30218UAB4 | 693 | 722000 | PRN | DEFINED | 16,24,25 | 722000 | 0 | 0 |
| EXPRESS SCRIPTS INC | COM | 302182100 | 2779 | 38065 | SH | DEFINED | 7,11 | 38065 | 0 | 0 |
| EXPRESS SCRIPTS INC | COM | 302182100 | 16 | 216 | SH | DEFINED | 7,11,13 | 216 | 0 | 0 |

| Name | Type | Rate | CUSIP | Val1 | Val2 | Unit | Opt | | Codes | N1 | N2 | N3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EXPRESS SCRIPTS INC | COM | | 302182100 | 188 | 2570 | SH | | DEFINED | 7,11,33 | 0 | 0 | 2570 |
| EXPRESS SCRIPTS INC | COM | | 302182100 | 1973 | 27029 | SH | | DEFINED | 15,16,24 | 27029 | 0 | 0 |
| EXPRESS SCRIPTS INC | COM | | 302182100 | 44304 | 606906 | SH | | DEFINED | 16,24,25 | 527194 | 0 | 79712 |
| EXPRESS SCRIPTS INC | COM | | 302182100 | 907 | 12418 | SH | | DEFINED | 32,40,41 | 12418 | 0 | 0 |
| EXPRESS SCRIPTS INC | COM | | 302182100 | 16398 | 224635 | SH | CALL | DEFINED | 7,11 | 224635 | 0 | 0 |
| EXPRESS SCRIPTS INC | COM | | 302182100 | 9862 | 135100 | SH | CALL | DEFINED | 15,16,24 | 135100 | 0 | 0 |
| EXPRESS SCRIPTS INC | COM | | 302182100 | 2570 | 35200 | SH | | DEFINED | 16,24,25 | 35200 | 0 | 0 |
| EXPRESS SCRIPTS INC | COM | | 302182100 | 15191 | 208100 | SH | PUT | DEFINED | 15,16,24 | 208100 | 0 | 0 |
| EXPRESS SCRIPTS INC | COM | | 302182100 | 5529 | 75735 | SH | PUT | DEFINED | 16,24,25 | 75735 | 0 | 0 |
| EXTRA SPACE STORAGE | COM | | 30225T102 | 171 | 12000 | SH | | DEFINED | 14,31 | 12000 | 0 | 0 |
| EXTRA SPACE STORAGE | COM | | 30225T102 | 29 | 2000 | SH | | DEFINED | 16,24 | 2000 | 0 | 0 |
| EXTRA SPACE STORAGE | COM | | 30225T102 | 2259 | 158090 | SH | | DEFINED | 16,24,25 | 157490 | 0 | 600 |
| EXTRA SPACE STORAGE | COM | | 30225T102 | 3507 | 245446 | SH | | DEFINED | 32,40,41 | 245446 | 0 | 0 |
| EXTERRAN HLDGS INC | COM | | 30225X103 | 243 | 2969 | SH | | DEFINED | 30 | 2969 | 0 | 0 |
| EXTERRAN HLDGS INC | COM | | 30225X103 | 417 | 5095 | SH | | DEFINED | 7,11,13 | 5095 | 0 | 0 |
| EXTERRAN HLDGS INC | COM | | 30225X103 | 5573 | 68128 | SH | | DEFINED | 16,24,25 | 59841 | 0 | 8287 |
| EXTERRAN HLDGS INC | COM | | 30225X103 | 146 | 1780 | SH | | DEFINED | 32,40,41 | 1780 | 0 | 0 |
| EXTREME NETWORKS INC | COM | | 30226D106 | 41 | 11535 | SH | | DEFINED | 15,16,24 | 11535 | 0 | 0 |
| EXTREME NETWORKS INC | COM | | 30226D106 | 269 | 75859 | SH | | DEFINED | 16,24,25 | 75659 | 0 | 200 |
| EXTREME NETWORKS INC | COM | | 30226D106 | 22 | 6200 | SH | CALL | DEFINED | 15,16,24 | 6200 | 0 | 0 |
| EXTREME NETWORKS INC | COM | | 30226D106 | 46 | 12900 | SH | PUT | DEFINED | 15,16,24 | 12900 | 0 | 0 |
| EZCORP INC | CL A NON V | | 30230110G | 442 | 39170 | SH | | DEFINED | 16,24,25 | 39170 | 0 | 0 |
| EXXON MOBIL CORP | COM | | 30231G102 | 4216 | 45000 | SH | | DEFINED | 12 | 0 | 0 | 45000 |
| EXXON MOBIL CORP | COM | | 30231G102 | 8994 | 96000 | SH | | DEFINED | 42 | 96000 | 0 | 0 |
| EXXON MOBIL CORP | COM | | 30231G102 | 14713 | 157041 | SH | | DEFINED | 3,9 | 0 | 0 | 157041 |
| EXXON MOBIL CORP | COM | | 30231G102 | 365208 | 3898045 | SH | | DEFINED | 7,11 | 1712325 | 6592 | 2179128 |
| EXXON MOBIL CORP | COM | | 30231G102 | 20969 | 223816 | SH | | DEFINED | 7,11,13 | 175012 | 0 | 48804 |
| EXXON MOBIL CORP | COM | | 30231G102 | 2714 | 28965 | SH | | DEFINED | 7,11,33 | 0 | 0 | 28965 |
| EXXON MOBIL CORP | COM | | 30231G102 | 549253 | 5862450 | SH | | DEFINED | 16,24,25 | 4568291 | 0 | 1294158 |
| EXXON MOBIL CORP | COM | | 30231G102 | 33404 | 356537 | SH | | DEFINED | 32,40,41 | 356537 | 0 | 0 |
| EXXON MOBIL CORP | COM | | 30231G102 | 8615 | 91957 | SH | | DEFINED | 5-7,11,43,44 | 0 | 91957 | 0 |
| EXXON MOBIL CORP | COM | | 30231G102 | 29077 | 310349 | SH | | DEFINED | 16,19,24,26,27 | 310349 | 0 | 0 |
| EXXON MOBIL CORP | COM | | 30231G102 | 292 | 3120 | SH | | DEFINED | 2,6,7,10-11,18,20,21,28 | 3120 | 0 | 0 |
| EXXON MOBIL CORP | COM | | 30231G102 | 32268 | 344415 | SH | CALL | DEFINED | 7,11 | 344415 | 0 | 0 |
| EXXON MOBIL CORP | COM | | 30231G102 | 190003 | 2028000 | SH | CALL | DEFINED | 15,16,24 | 2028000 | 0 | 0 |
| EXXON MOBIL CORP | COM | | 30231G102 | 50237 | 536200 | SH | CALL | DEFINED | 16,24,25 | 536200 | 0 | 0 |
| EXXON MOBIL CORP | COM | | 30231G102 | 92866 | 991200 | SH | PUT | DEFINED | 15,16,24 | 991200 | 0 | 0 |
| EXXON MOBIL CORP | COM | | 30231G102 | 55204 | 589215 | SH | PUT | DEFINED | 16,24,25 | 589215 | 0 | 0 |
| FEI CO | NOTE | | 30241LAD1 | 397 | 385000 | PRN | | DEFINED | 16,24,25 | 385000 | 0 | 0 |
| FEI CO | NOTE | 2.87 | 30241LAF6 | 4710 | 4292000 | PRN | | DEFINED | 16,24,25 | 4292000 | 0 | 0 |
| FLIR SYS INC | COM | | 302445101 | 8 | 258 | SH | | DEFINED | 7,11 | 0 | 0 | 258 |
| FLIR SYS INC | COM | | 302445101 | 25 | 804 | SH | | DEFINED | 16,24 | 804 | 0 | 0 |
| FLIR SYS INC | COM | | 302445101 | 13 | 400 | SH | | DEFINED | 7,11,13 | 400 | 0 | 0 |
| FLIR SYS INC | COM | | 302445101 | 3149 | 100611 | SH | | DEFINED | 16,24,25 | 79717 | 0 | 20894 |
| FMC TECHNOLOGIES INC | COM | | 30249U101 | 861 | 15182 | SH | | DEFINED | 16,24,25 | 15182 | 0 | 0 |
| FMC TECHNOLOGIES INC | COM | | 30249U101 | 2516 | 44373 | SH | | DEFINED | 16,24,25 | 37756 | 0 | 6617 |
| FMC TECHNOLOGIES INC | COM | | 30249U101 | 395 | 6974 | SH | | DEFINED | 32,40,41 | 6974 | 0 | 0 |
| F M C CORP | COM NEW | | 302491303 | 65 | 1200 | SH | | DEFINED | 30 | 1200 | 0 | 0 |
| F M C CORP | COM NEW | | 302491303 | 1167 | 21393 | SH | | DEFINED | 7,11 | 21127 | 0 | 266 |
| F M C CORP | COM NEW | | 302491303 | 8861 | 162443 | SH | | DEFINED | 16,24,25 | 123241 | 0 | 39202 |
| F N B UNITED CORP | COM | | 302519103 | 665 | 54662 | SH | | DEFINED | 16,24,25 | 52002 | 0 | 2660 |
| FNB CORP PA | COM | | 302520101 | 7 | 500 | SH | | DEFINED | 7,11,13 | 500 | 0 | 0 |
| FNB CORP PA | COM | | 302520101 | 1412 | 96073 | SH | | DEFINED | 16,24,25 | 92034 | 0 | 4039 |
| FPIC INS GROUP INC | COM | | 302563101 | 224 | 5223 | SH | | DEFINED | 16,24,25 | 5023 | 0 | 200 |
| FPL GROUP INC | COM | | 302571104 | 1105 | 16300 | SH | | DEFINED | 12 | 0 | 0 | 16300 |
| FPL GROUP INC | COM | | 302571104 | 32025 | 472478 | SH | | DEFINED | 7,11 | 58586 | 2890 | 411002 |
| FPL GROUP INC | COM | | 302571104 | 826 | 12184 | SH | | DEFINED | 7,11,13 | 4159 | 0 | 8025 |
| FPL GROUP INC | COM | | 302571104 | 530 | 7817 | SH | | DEFINED | 7,11,33 | 0 | 0 | 7817 |
| FPL GROUP INC | COM | | 302571104 | 31975 | 471749 | SH | | DEFINED | 16,24,25 | 364208 | 0 | 107540 |
| FPL GROUP INC | COM | | 302571104 | 979 | 14441 | SH | | DEFINED | 32,40,41 | 14441 | 0 | 0 |
| FPL GROUP INC | COM | | 302571104 | 147 | 2168 | SH | | DEFINED | 16,19,24,26,27 | 2168 | 0 | 0 |
| FPL GROUP INC | COM | | 302571104 | 42836 | 631990 | SH | | DEFINED | 7,11 | 631990 | 0 | 0 |
| FPL GROUP INC | COM | | 302571104 | 12228 | 180400 | SH | CALL | DEFINED | 15,16,24 | 180400 | 0 | 0 |
| FPL GROUP INC | COM | | 302571104 | 6066 | 89500 | SH | CALL | DEFINED | 16,24,25 | 89500 | 0 | 0 |
| FPL GROUP INC | COM | | 302571104 | 8567 | 126400 | SH | PUT | DEFINED | 15,16,24 | 126400 | 0 | 0 |
| FPL GROUP INC | COM | | 302571104 | 25627 | 378090 | SH | PUT | DEFINED | 16,24,25 | 378090 | 0 | 0 |
| FX ENERGY INC | COM | | 302695101 | 61 | 10700 | SH | | DEFINED | 16,24,25 | 10700 | 0 | 0 |
| FTI CONSULTING INC | NOTE | 3.75 | 302941AB5 | 4339 | 2049000 | PRN | | DEFINED | 16,24,25 | 2049000 | 0 | 0 |
| FTI CONSULTING INC | COM | | 302941109 | 1087 | 17635 | SH | | DEFINED | 16,24,25 | 10855 | 0 | 6780 |
| FACTSET RESH SYS INC | COM | | 303075105 | 387 | 6955 | SH | | DEFINED | 7,11 | 6955 | 0 | 0 |
| FACTSET RESH SYS INC | COM | | 303075105 | 1067 | 19161 | SH | | DEFINED | 16,24,25 | 13044 | 0 | 6116 |
| FACTSET RESH SYS INC | COM | | 303075105 | 45 | 800 | SH | | DEFINED | 32,40,41 | 800 | 0 | 0 |
| FAIR ISAAC CORP | NOTE | 1.50 | 303250AD6 | 2770 | 2809000 | PRN | | DEFINED | 16,24,25 | 2809000 | 0 | 0 |
| FAIR ISAAC CORP | COM | | 303250104 | 405 | 12608 | SH | | DEFINED | 7,11 | 12608 | 0 | 0 |
| FAIR ISAAC CORP | COM | | 303250104 | 4074 | 126720 | SH | | DEFINED | 16,24,25 | 119827 | 0 | 6893 |
| FAIR ISAAC CORP | COM | | 303250104 | 2360 | 73400 | SH | CALL | DEFINED | 16,24,25 | 73400 | 0 | 0 |
| FAIRCHILD CORP | CL A | | 303698104 | 52 | 20128 | SH | | DEFINED | 16,24,25 | 17328 | 0 | 2800 |
| FAIRCHILD SEMICONDUC | COM | | 303726103 | 2 | 163 | SH | | DEFINED | 3,9 | 0 | 0 | 163 |
| FAIRCHILD SEMICONDUC | COM | | 303726103 | 27 | 1892 | SH | | DEFINED | 7,11 | 1892 | 0 | 0 |
| FAIRCHILD SEMICONDUC | COM | | 303726103 | 3036 | 210383 | SH | | DEFINED | 16,24,25 | 195780 | 0 | 14603 |
| FAIRCHILD SEMICONDUC | COM | | 303726103 | 1968 | 136400 | SH | CALL | DEFINED | 15,16,24 | 136400 | 0 | 0 |
| FAIRCHILD SEMICONDUC | COM | | 303726103 | 159 | 11000 | SH | CALL | DEFINED | 16,24,25 | 11000 | 0 | 0 |
| FAIRCHILD SEMICONDUC | COM | | 303726103 | 1658 | 114900 | SH | PUT | DEFINED | 15,16,24 | 114900 | 0 | 0 |
| FAIRCHILD SEMICONDUC | COM | | 303726103 | 499 | 34600 | SH | PUT | DEFINED | 16,24,25 | 34600 | 0 | 0 |
| FAIRCHILD SEMICONDUC | NOTE | 5.00 | 303727A70 | 9719 | 9880000 | PRN | | DEFINED | 16,24,25 | 9880000 | 0 | 0 |
| FAIRFAX FINL HLDGS L | DBCV | 5.00 | 303901AL6 | 608 | 450000 | PRN | | DEFINED | 16,24,25 | 450000 | 0 | 0 |
| FAIRFAX FINL HLDGS L | SUB VTG | | 303901102 | 36 | 126 | SH | | DEFINED | 16,24 | 96 | 0 | 30 |
| FAIRFAX FINL HLDGS L | SUB VTG | | 303901102 | 1933 | 6757 | SH | | DEFINED | 32,40,41 | 6757 | 0 | 0 |
| FAIRFAX FINL HLDGS L | SUB VTG | | 303901102 | 67 | 235 | SH | | DEFINED | 4,6,7,11 | 235 | 0 | 0 |
| FAIRFAX FINL HLDGS L | SUB VTG | | 303901102 | 1888 | 6600 | SH | PUT | DEFINED | 16,24,25 | 6600 | 0 | 0 |
| FAIRPOINT COMMUNICAT | COM | | 305560104 | 1149 | 88210 | SH | | DEFINED | 16,24,25 | 86409 | 0 | 1801 |
| FAMILY DLR STORES IN | COM | | 307000109 | 206 | 10700 | SH | | DEFINED | 3,9 | 0 | 0 | 10700 |
| FAMILY DLR STORES IN | COM | | 307000109 | 2136 | 111100 | SH | | DEFINED | 7,11 | 111100 | 0 | 0 |
| FAMILY DLR STORES IN | COM | | 307000109 | 8096 | 421015 | SH | | DEFINED | 16,24,25 | 412534 | 0 | 8481 |
| FAMILY DLR STORES IN | COM | | 307000109 | 88 | 4575 | SH | | DEFINED | 32,40,41 | 4575 | 0 | 0 |
| FASTENAL CO | COM | | 311900104 | 617 | 15265 | SH | | DEFINED | 7,11 | 15265 | 0 | 0 |
| FASTENAL CO | COM | | 311900104 | 892 | 22070 | SH | | DEFINED | 7,11,13 | 21620 | 0 | 450 |
| FASTENAL CO | COM | | 311900104 | 1349 | 33386 | SH | | DEFINED | 15,16,24 | 33386 | 0 | 0 |
| FASTENAL CO | COM | | 311900104 | 8461 | 209329 | SH | | DEFINED | 16,24,25 | 166182 | 0 | 43147 |
| FASTENAL CO | COM | | 311900104 | 159 | 3924 | SH | | DEFINED | 32,40,41 | 3924 | 0 | 0 |
| FASTENAL CO | COM | | 311900104 | 4062 | 100500 | SH | CALL | DEFINED | 15,16,24 | 100500 | 0 | 0 |
| FASTENAL CO | COM | | 311900104 | 2223 | 55000 | SH | CALL | DEFINED | 16,24,25 | 55000 | 0 | 0 |
| FASTENAL CO | COM | | 311900104 | 3500 | 86600 | SH | PUT | DEFINED | 15,16,24 | 86600 | 0 | 0 |
| FCSTONE GROUP INC | COM | | 31308T100 | 108 | 2350 | SH | | DEFINED | 30 | 2350 | 0 | 0 |
| FCSTONE GROUP INC | COM | | 31308T100 | 2024 | 43965 | SH | | DEFINED | 16,24,25 | 31379 | 0 | 12586 |
| FEDERAL HOME LN MTG | COM | | 313400301 | 134654 | 3952287 | SH | | DEFINED | 7,11 | 3949587 | 0 | 2700 |
| FEDERAL HOME LN MTG | COM | | 313400301 | 12 | 340 | SH | | DEFINED | 16,24 | 340 | 0 | 0 |
| FEDERAL HOME LN MTG | COM | | 313400301 | 118 | 3475 | SH | | DEFINED | 7,11,13 | 2275 | 0 | 1200 |
| FEDERAL HOME LN MTG | COM | | 313400301 | 34 | 1010 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1010 |
| FEDERAL HOME LN MTG | COM | | 313400301 | 1913 | 56141 | SH | | DEFINED | 15,16,24 | 56141 | 0 | 0 |
| FEDERAL HOME LN MTG | COM | | 313400301 | 37796 | 1109377 | SH | | DEFINED | 16,24,25 | 1045877 | 0 | 63500 |
| FEDERAL HOME LN MTG | COM | | 313400301 | 7057 | 207120 | SH | | DEFINED | 32,40,41 | 207120 | 0 | 0 |
| FEDERAL HOME LN MTG | COM | | 313400301 | 3 | 100 | SH | | DEFINED | 5-7,11,43,44 | 0 | 100 | 0 |
| FEDERAL HOME LN MTG | COM | | 313400301 | 23 | 685 | SH | | DEFINED | 16,19,24,26,27 | 685 | 0 | 0 |

| Issuer | Class | CUSIP | Value | Shares | Type | Put/Call | Disc | Mgrs | Sole | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FEDERAL HOME LN MTG | COM | 313400301 | 23603 | 692782 | SH | CALL | DEFINED | 7,11 | 692782 | 0 | 0 |
| FEDERAL HOME LN MTG | COM | 313400301 | 16384 | 480900 | SH | CALL | DEFINED | 15,16,24 | 480900 | 0 | 0 |
| FEDERAL HOME LN MTG | COM | 313400301 | 29849 | 876100 | SH | | DEFINED | 16,24,25 | 876100 | 0 | 0 |
| FEDERAL HOME LN MTG | COM | 313400301 | 13778 | 404400 | SH | PUT | DEFINED | 15,16,24 | 404400 | 0 | 0 |
| FEDERAL HOME LN MTG | COM | 313400301 | 73788 | 2165782 | SH | PUT | DEFINED | 16,24,25 | 2165782 | 0 | 0 |
| FEDERAL NATL MTG ASS | COM | 31358G109 | 444990 | 11130323 | SH | | DEFINED | 7,11 | 11034801 | 0 | 95522 |
| FEDERAL NATL MTG ASS | COM | 31358G109 | 313 | 7830 | SH | | DEFINED | 7,11,13 | 6630 | 0 | 1200 |
| FEDERAL NATL MTG ASS | COM | 31358G109 | 28 | 710 | SH | | DEFINED | 7,11,13 | 0 | 0 | 710 |
| FEDERAL NATL MTG ASS | COM | 31358G109 | 41075 | 1027384 | SH | | DEFINED | 16,24,25 | 923142 | 0 | 104242 |
| FEDERAL NATL MTG ASS | COM | 31358G109 | 9129 | 228338 | SH | | DEFINED | 32,40,41 | 228338 | 0 | 0 |
| FEDERAL NATL MTG ASS | COM | 31358G109 | 38 | 953 | SH | | DEFINED | 16,19,24,26,27 | 953 | 0 | 0 |
| FEDERAL NATL MTG ASS | COM | 31358G109 | 2571 | 64317 | SH | CALL | DEFINED | 7,11 | 64317 | 0 | 0 |
| FEDERAL NATL MTG ASS | COM | 31358G109 | 28894 | 722700 | SH | | DEFINED | 15,16,24 | 722700 | 0 | 0 |
| FEDERAL NATL MTG ASS | COM | 31358G109 | 20158 | 504200 | SH | CALL | DEFINED | 16,24,25 | 504200 | 0 | 0 |
| FEDERAL NATL MTG ASS | COM | 31358G109 | 4398 | 110000 | SH | PUT | DEFINED | 7,11 | 110000 | 0 | 0 |
| FEDERAL NATL MTG ASS | COM | 31358G109 | 20710 | 518000 | SH | PUT | DEFINED | 15,16,24 | 518000 | 0 | 0 |
| FEDERAL NATL MTG ASS | COM | 31358G109 | 86242 | 2157117 | SH | PUT | DEFINED | 16,24,25 | 2157117 | 0 | 0 |
| FEDERAL REALTY INVT | SH BEN INT | 313747206 | 29 | 357 | SH | | DEFINED | 7,11 | 357 | 0 | 0 |
| FEDERAL REALTY INVT | SH BEN INT | 313747206 | 2990 | 36400 | SH | | DEFINED | 14,31 | 36400 | 0 | 0 |
| FEDERAL REALTY INVT | SH BEN INT | 313747206 | 8 | 100 | SH | | DEFINED | 16,24 | 100 | 0 | 0 |
| FEDERAL REALTY INVT | SH BEN INT | 313747206 | 90 | 1100 | SH | | DEFINED | 7,11,13 | 1100 | 0 | 0 |
| FEDERAL REALTY INVT | SH BEN INT | 313747206 | 1518 | 18473 | SH | | DEFINED | 16,24,25 | 12454 | 0 | 6019 |
| FEDERAL REALTY INVT | SH BEN INT | 313747206 | 3591 | 43709 | SH | | DEFINED | 32,40,41 | 43709 | 0 | 0 |
| FEDERATED INVS INC P | CL B | 314211103 | 21 | 510 | SH | | DEFINED | 12 | 0 | 0 | 510 |
| FEDERATED INVS INC P | CL B | 314211103 | 387 | 9400 | SH | | DEFINED | 3,9 | 0 | 0 | 9400 |
| FEDERATED INVS INC P | CL B | 314211103 | 2133 | 51828 | SH | | DEFINED | 7,11 | 22680 | 0 | 29148 |
| FEDERATED INVS INC P | CL B | 314211103 | 2417 | 58725 | SH | | DEFINED | 7,11,13 | 55225 | 0 | 3500 |
| FEDERATED INVS INC P | CL B | 314211103 | 27 | 650 | SH | | DEFINED | 7,11,13 | 0 | 0 | 650 |
| FEDERATED INVS INC P | CL B | 314211103 | 8642 | 209956 | SH | | DEFINED | 16,24,25 | 162065 | 0 | 47891 |
| FEDERATED INVS INC P | CL B | 314211103 | 3 | 76 | SH | | DEFINED | 32,40,41 | 76 | 0 | 0 |
| FEDEX CORP | COM | 31428X106 | 5478 | 61435 | SH | | DEFINED | 7,11 | 61335 | 0 | 100 |
| FEDEX CORP | COM | 31428X106 | 326 | 3654 | SH | | DEFINED | 7,11,13 | 2225 | 0 | 1429 |
| FEDEX CORP | COM | 31428X106 | 112 | 1260 | SH | | DEFINED | 7,11,13 | 0 | 0 | 1260 |
| FEDEX CORP | COM | 31428X106 | 6189 | 69405 | SH | | DEFINED | 15,16,24 | 69405 | 0 | 0 |
| FEDEX CORP | COM | 31428X106 | 56195 | 630202 | SH | | DEFINED | 16,24,25 | 535135 | 0 | 95067 |
| FEDEX CORP | COM | 31428X106 | 4720 | 52935 | SH | | DEFINED | 32,40,41 | 52935 | 0 | 0 |
| FEDEX CORP | COM | 31428X106 | 54 | 610 | SH | | DEFINED | 5-7,11,43,44 | 0 | 610 | 0 |
| FEDEX CORP | COM | 31428X106 | 33894 | 380100 | SH | CALL | DEFINED | 15,16,24 | 380100 | 0 | 0 |
| FEDEX CORP | COM | 31428X106 | 14758 | 165500 | SH | CALL | DEFINED | 16,24,25 | 165500 | 0 | 0 |
| FEDEX CORP | COM | 31428X106 | 29444 | 330200 | SH | PUT | DEFINED | 15,16,24 | 330200 | 0 | 0 |
| FEDEX CORP | COM | 31428X106 | 5903 | 66200 | SH | PUT | DEFINED | 16,24,25 | 66200 | 0 | 0 |
| FELCOR LODGING TR IN | COM | 31430P101 | 391 | 25323 | SH | | DEFINED | 16,24,25 | 22053 | 0 | 3270 |
| FELCOR LODGING TR IN | COM | 31430P101 | 477 | 30615 | SH | | DEFINED | 32,40,41 | 30615 | 0 | 0 |
| FELCOR LODGING TR IN | PFD CV A $ | 31430F200 | 670 | 32512 | SH | | DEFINED | 16,24,25 | 28612 | 0 | 3900 |
| FERRELLGAS PARTNERS | UNIT LTD P | 315293100 | 110 | 5000 | SH | | DEFINED | 7,11,13 | 5000 | 0 | 0 |
| FERRELLGAS PARTNERS | UNIT LTD P | 315293100 | 2029 | 92613 | SH | | DEFINED | 16,24,25 | 84849 | 0 | 7764 |
| FERRO CORP | COM | 315405100 | 695 | 33525 | SH | | DEFINED | 7,11,13 | 33525 | 0 | 0 |
| FERRO CORP | COM | 315405100 | 44 | 2136 | SH | | DEFINED | 16,24,25 | 636 | 0 | 1500 |
| F5 NETWORKS INC | COM | 315616102 | 1065 | 37333 | SH | | DEFINED | 7,11 | 37333 | 0 | 0 |
| F5 NETWORKS INC | COM | 315616102 | 1137 | 39871 | SH | | DEFINED | 15,16,24 | 39871 | 0 | 0 |
| F5 NETWORKS INC | COM | 315616102 | 4308 | 151043 | SH | | DEFINED | 16,24,25 | 141594 | 0 | 9449 |
| F5 NETWORKS INC | COM | 315616102 | 4652 | 163100 | SH | CALL | DEFINED | 16,24,25 | 163100 | 0 | 0 |
| F5 NETWORKS INC | COM | 315616102 | 3 | 100 | SH | | DEFINED | 16,24,25 | 100 | 0 | 0 |
| F5 NETWORKS INC | COM | 315616102 | 9092 | 318800 | SH | PUT | DEFINED | 15,16,24 | 318800 | 0 | 0 |
| FIDELITY NATL INFORM | COM | 31620M106 | 837 | 20130 | SH | | DEFINED | 7,11 | 20130 | 0 | 0 |
| FIDELITY NATL INFORM | COM | 31620M106 | 175 | 4205 | SH | | DEFINED | 7,11,13 | 4205 | 0 | 0 |
| FIDELITY NATL INFORM | COM | 31620M106 | 3116 | 74922 | SH | | DEFINED | 16,24,25 | 39310 | 0 | 35612 |
| FIDELITY NATL INFORM | COM | 31620M106 | 410 | 9869 | SH | | DEFINED | 32,40,41 | 9869 | 0 | 0 |
| FIDELITY NATL INFORM | COM | 31620M106 | 4991 | 120000 | SH | CALL | DEFINED | 15,16,24 | 120000 | 0 | 0 |
| FIDELITY NATL INFORM | COM | 31620M106 | 416 | 10000 | SH | CALL | DEFINED | 16,24,25 | 10000 | 0 | 0 |
| FIDELITY NATL INFORM | COM | 31620M106 | 1793 | 43100 | SH | PUT | DEFINED | 15,16,24 | 43100 | 0 | 0 |
| FIDELITY NATIONAL FI | CL A | 31620R105 | 4673 | 319867 | SH | | DEFINED | 7,11 | 319867 | 0 | 0 |
| FIDELITY NATIONAL FI | CL A | 31620R105 | 17574 | 1202900 | SH | | DEFINED | 16,24 | 1202900 | 0 | 0 |
| FIDELITY NATIONAL FI | CL A | 31620R105 | 5701 | 390212 | SH | | DEFINED | 16,24,25 | 323242 | 0 | 66970 |
| FIDELITY NATIONAL FI | CL A | 31620R105 | 111 | 7616 | SH | | DEFINED | 32,40,41 | 7616 | 0 | 0 |
| FIDELITY NATIONAL FI | CL A | 31620R105 | 4673 | 319867 | SH | CALL | DEFINED | 16,24,25 | 319867 | 0 | 0 |
| FIDELITY NATIONAL FI | CL A | 31620R105 | 4673 | 319867 | SH | PUT | DEFINED | 7,11 | 319867 | 0 | 0 |
| FIDUCIARY CLAYMORE M | COM | 31647Q106 | 2503 | 119870 | SH | | DEFINED | 16,24,25 | 82137 | 0 | 37733 |
| FIDUCIARY CLAYMORE D | COM | 31647T100 | 315 | 17890 | SH | | DEFINED | 16,24,25 | 3200 | 0 | 14689 |
| FIFTH THIRD BANCORP | COM | 316773100 | 5426 | 215921 | SH | | DEFINED | 7,11 | 215921 | 0 | 0 |
| FIFTH THIRD BANCORP | COM | 316773100 | 965 | 38383 | SH | | DEFINED | 7,11,13 | 37908 | 0 | 475 |
| FIFTH THIRD BANCORP | COM | 316773100 | 18 | 700 | SH | | DEFINED | 7,11,13 | 0 | 0 | 700 |
| FIFTH THIRD BANCORP | COM | 316773100 | 1706 | 67879 | SH | | DEFINED | 15,16,24 | 67879 | 0 | 0 |
| FIFTH THIRD BANCORP | COM | 316773100 | 12112 | 481987 | SH | | DEFINED | 16,24,25 | 394692 | 0 | 87294 |
| FIFTH THIRD BANCORP | COM | 316773100 | 3304 | 131488 | SH | | DEFINED | 32,40,41 | 131488 | 0 | 0 |
| FIFTH THIRD BANCORP | COM | 316773100 | 3945 | 157000 | SH | | DEFINED | 16,19,24,26,27 | 157000 | 0 | 0 |
| FIFTH THIRD BANCORP | COM | 316773100 | 3320 | 132100 | SH | CALL | DEFINED | 15,16,24 | 132100 | 0 | 0 |
| FIFTH THIRD BANCORP | COM | 316773100 | 2412 | 95969 | SH | CALL | DEFINED | 16,24,25 | 95969 | 0 | 0 |
| FIFTH THIRD BANCORP | COM | 316773100 | 2412 | 95969 | SH | PUT | DEFINED | 7,11 | 95969 | 0 | 0 |
| FIFTH THIRD BANCORP | COM | 316773100 | 4114 | 163700 | SH | PUT | DEFINED | 15,16,24 | 163700 | 0 | 0 |
| FINANCIAL TRENDS FUN | COM | 31771P106 | 796 | 57907 | SH | | DEFINED | 16,24,25 | 53953 | 0 | 3954 |
| FINISAR | NOTE 5.25 | 31787AAC5 | 78 | 80000 | PRN | | DEFINED | 16,24,25 | 80000 | 0 | 0 |
| FINISAR | COM | 31787A101 | 212 | 146200 | SH | | DEFINED | 7,11 | 146200 | 0 | 0 |
| FINISAR | COM | 31787A101 | 762 | 525217 | SH | | DEFINED | 16,24,25 | 517446 | 0 | 7771 |
| FINISAR | COM | 31787A101 | 35 | 24200 | SH | CALL | DEFINED | 15,16,24 | 24200 | 0 | 0 |
| FINISAR | COM | 31787A101 | 7 | 4600 | SH | PUT | DEFINED | 15,16,24 | 4600 | 0 | 0 |
| FINISH LINE INC | CL A | 31792S100 | 28 | 11547 | SH | | DEFINED | 16,24,25 | 11547 | 0 | 0 |
| FIRST AMERN CORP CAL | COM | 31852Z307 | 156 | 4569 | SH | | DEFINED | 7,11 | 4569 | 0 | 0 |
| FIRST AMERN CORP CAL | COM | 31852Z307 | 86 | 2524 | SH | | DEFINED | 15,16,24 | 2524 | 0 | 0 |
| FIRST AMERN CORP CAL | COM | 31852Z307 | 2793 | 81850 | SH | | DEFINED | 16,24,25 | 78788 | 0 | 3062 |
| FIRST AMERN CORP CAL | COM | 31852Z307 | 116 | 3409 | SH | | DEFINED | 32,40,41 | 3409 | 0 | 0 |
| FIRST AMERN CORP CAL | COM | 31852Z307 | 7080 | 207500 | SH | CALL | DEFINED | 15,16,24 | 207500 | 0 | 0 |
| FIRST AMERN CORP CAL | COM | 31852Z307 | 1092 | 32000 | SH | CALL | DEFINED | 16,24,25 | 32000 | 0 | 0 |
| FIRST AMERN CORP CAL | COM | 31852Z307 | 6572 | 192600 | SH | PUT | DEFINED | 15,16,24 | 192600 | 0 | 0 |
| FIRST AMERN CORP CAL | COM | 31852Z307 | 229 | 6700 | SH | PUT | DEFINED | 16,24,25 | 6700 | 0 | 0 |
| FIRST BANCORP P R | COM | 318672102 | 89 | 12249 | SH | | DEFINED | 16,24,25 | 12249 | 0 | 0 |
| FIRST CALIFORNIA FIN | COM NEW | 33395109 | 148 | 16347 | SH | | DEFINED | 16,24,25 | 9949 | 0 | 6398 |
| FIRST CASH FINL SVCS | COM | 31942D107 | 69 | 4675 | SH | | DEFINED | 30 | 4675 | 0 | 0 |
| FIRST CASH FINL SVCS | COM | 31942D107 | 261 | 17746 | SH | | DEFINED | 16,24,25 | 11587 | 0 | 6159 |
| FIRST CHARTER CORP | COM | 31943V105 | 776 | 26000 | SH | | DEFINED | 11 | 0 | 0 | 26000 |
| FIRST CHARTER CORP | COM | 31943V105 | 4951 | 165792 | SH | | DEFINED | 31,45 | 165792 | 0 | 0 |
| FIRST CHARTER CORP | COM | 31943V105 | 18 | 600 | SH | | DEFINED | 7,11,13 | 600 | 0 | 0 |
| FIRST CHARTER CORP | COM | 31943V105 | 139 | 4653 | SH | | DEFINED | 16,24,25 | 4620 | 0 | 33 |
| FIRST CMNTY BANCORP | COM | 31983B101 | 739 | 17909 | SH | | DEFINED | 16,24,25 | 15820 | 0 | 2089 |
| FIRST FED NORTHN MIC | COM | 32021X105 | 143 | 19500 | SH | | DEFINED | 16,24,25 | 1800 | 0 | 17700 |
| FIRST FINL FD INC | COM | 320228109 | 163 | 14827 | SH | | DEFINED | 16,24,25 | 14827 | 0 | 0 |
| FIRST HORIZON FIN INC | COM | 320517105 | 277 | 15247 | SH | | DEFINED | 7,11 | 15247 | 0 | 0 |
| FIRST HORIZON NATL C | COM | 320517105 | 6431 | 354339 | SH | | DEFINED | 16,24,25 | 296966 | 0 | 57373 |
| FIRST HORIZON NATL C | COM | 320517105 | 95 | 5217 | SH | | DEFINED | 32,40,41 | 5217 | 0 | 0 |
| FIRST HORIZON NATL C | COM | 320517105 | 3688 | 203100 | SH | CALL | DEFINED | 7,11 | 203100 | 0 | 0 |
| FIRST INDUSTRIAL REA | COM | 32054K103 | 59 | 1700 | SH | | DEFINED | 30 | 1700 | 0 | 0 |
| FIRST INDUSTRIAL REA | COM | 32054K103 | 557 | 16090 | SH | | DEFINED | 16,24,25 | 12109 | 0 | 3981 |
| FIRST INDUSTRIAL REA | COM | 32054K103 | 745 | 21541 | SH | | DEFINED | 32,40,41 | 21541 | 0 | 0 |
| FIRST ISRAEL FD INC | COM | 32063L100 | 2 | 101 | SH | | DEFINED | 16,24 | 101 | 0 | 0 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| FIRST ISRAEL FD INC | COM | 32063L100 | 229 | 9761 | SH | DEFINED | 16,24,25 | 8716 | 0 | 1045 |
| FIRST MARBLEHEAD COR | COM | 320771108 | 392 | 25621 | SH | DEFINED | 7,11 | 25621 | 0 | 0 |
| FIRST MARBLEHEAD COR | COM | 320771108 | 5 | 350 | SH | DEFINED | 7,11,13 | 0 | 0 | 350 |
| FIRST MARBLEHEAD COR | COM | 320771108 | 1623 | 106067 | SH | DEFINED | 16,24,25 | 92502 | 0 | 13565 |
| FIRST MARBLEHEAD COR | COM | 320771108 | 7309 | 477700 | SH | CALL | DEFINED | 15,16,24 | 477700 | 0 | 0 |
| FIRST MARBLEHEAD COR | COM | 320771108 | 6333 | 413900 | SH | PUT | DEFINED | 15,16,24 | 413900 | 0 | 0 |
| FIRST MARBLEHEAD COR | COM | 320771108 | 12 | 800 | SH | DEFINED | 16,24,25 | 800 | 0 | 0 |
| FIRST NIAGARA FINL G | COM | 33582V108 | 634 | 52695 | SH | DEFINED | 16,24,25 | 49725 | 0 | 2970 |
| FIRST POTOMAC RLTY T | COM | 33610F109 | 209 | 12100 | SH | DEFINED | 14,31 | 12100 | 0 | 0 |
| FIRST POTOMAC RLTY T | COM | 33610F109 | 3 | 201 | SH | DEFINED | 16,24,25 | 201 | 0 | 0 |
| FIRST POTOMAC RLTY T | COM | 33610F109 | 199 | 11501 | SH | DEFINED | 32,40,41 | 11501 | 0 | 0 |
| FIRST SOLAR INC | COM | 336433107 | 278 | 1040 | SH | DEFINED | 30 | 1040 | 0 | 0 |
| FIRST SOLAR INC | COM | 336433107 | 4739 | 17741 | SH | DEFINED | 7,11 | 17741 | 0 | 0 |
| FIRST SOLAR INC | COM | 336433107 | 18955 | 70954 | SH | DEFINED | 16,24,25 | 61875 | 0 | 9079 |
| FIRST SOLAR INC | COM | 336433107 | 789 | 2955 | SH | DEFINED | 32,40,41 | 2955 | 0 | 0 |
| FIRST SOLAR INC | COM | 336433107 | 527 | 1971 | SH | DEFINED | 16,19,24,26,27 | 1971 | 0 | 0 |
| FIRST SOLAR INC | COM | 336433107 | 112680 | 421800 | SH | CALL | DEFINED | 15,16,24 | 421800 | 0 | 0 |
| FIRST SOLAR INC | COM | 336433107 | 77337 | 289500 | SH | PUT | DEFINED | 15,16,24 | 289500 | 0 | 0 |
| FIRST TR IPOX 100 IN | SHS | 336920103 | 822 | 32368 | SH | DEFINED | 16,24,25 | 28913 | 0 | 3455 |
| FIRST TR/ABERDEEN EM | COM | 33731K102 | 298 | 15280 | SH | DEFINED | 16,24,25 | 15280 | 0 | 0 |
| FIRST TR ENHANCED EQ | COM | 33731B109 | 247 | 15287 | SH | DEFINED | 16,24,25 | 13060 | 0 | 2226 |
| FIRST TR ABERDEEN GL | COM SHS | 33731H107 | 539 | 32603 | SH | DEFINED | 16,24,25 | 30938 | 0 | 1664 |
| FIRST TR ISE CHINDIA | COM | 33733A102 | 1130 | 40773 | SH | DEFINED | 15,16,24 | 40773 | 0 | 0 |
| FIRST TR ISE CHINDIA | COM | 33733A102 | 1225 | 44200 | SH | DEFINED | 16,24,25 | 36360 | 0 | 7840 |
| FIRST TR ISE CHINDIA | COM | 33733A102 | 463 | 16700 | SH | CALL | DEFINED | 15,16,24 | 16700 | 0 | 0 |
| FIRST TR ISE CHINDIA | COM | 33733A102 | 1693 | 61100 | SH | PUT | DEFINED | 15,16,24 | 61100 | 0 | 0 |
| FIRST TR ISE WATER I | COM | 33733B100 | 115 | 5140 | SH | DEFINED | 7,11,33 | 0 | 0 | 5140 |
| FIRST TR ISE WATER I | COM | 33733B100 | 377 | 16818 | SH | DEFINED | 16,24,25 | 15778 | 0 | 1040 |
| FIRST TR EXCHANGE TR | DB STRAT V | 33733E104 | 25 | 1035 | SH | DEFINED | 16,24 | 1035 | 0 | 0 |
| FIRST TR EXCHANGE TR | DB STRAT V | 33733E104 | 766 | 31707 | SH | DEFINED | 16,24,25 | 30220 | 0 | 1487 |
| FIRST TR EXCHANGE TR | AMEX BIOTE | 33733E203 | 6500 | 266736 | SH | DEFINED | 16,24,25 | 229128 | 0 | 37608 |
| FIRST TR EXCHANGE TR | J INTERNT | 33733E302 | 7224 | 287462 | SH | DEFINED | 16,24,25 | 259248 | 0 | 28214 |
| FIRST TR EXCHANGE TR | NASDAQ CLE | 33733E500 | 329 | 9976 | SH | DEFINED | 16,24,25 | 5555 | 0 | 4421 |
| FIRST TR FOUR CRNRS | COM SHS | 33733Q107 | 120 | 8026 | SH | DEFINED | 16,24,25 | 8026 | 0 | 0 |
| FIRST TR FOUR CRNRS | COM | 33733Q108 | 88 | 5900 | SH | DEFINED | 16,19,24,26,27 | 5900 | 0 | 0 |
| FIRST TR FOUR CRNRS | COM | 33733U108 | 191 | 12749 | SH | DEFINED | 16,24,25 | 12514 | 0 | 234 |
| FIRST TRUST FIDAC MT | COM SHS | 33734E103 | 820 | 47788 | SH | DEFINED | 16,24,25 | 47443 | 0 | 344 |
| FIRST TR VALUE LINE | SHS | 33734H106 | 1438 | 92395 | SH | DEFINED | 16,24,25 | 79455 | 0 | 12940 |
| FIRST TR EXCHANGE TR | ENERGY ALP | 33734X127 | 451 | 19604 | SH | DEFINED | 16,24,25 | 19304 | 0 | 300 |
| FIRST TR EXCHANGE TR | MATERIALS | 33734X168 | 305 | 13943 | SH | DEFINED | 16,24,25 | 13943 | 0 | 0 |
| FIRST TR NAS360 EQ W | SHS | 337344105 | 914 | 41360 | SH | DEFINED | 16,24,25 | 39181 | 0 | 2179 |
| FIRST TR NASDAQ100 T | SHS | 337345102 | 1956 | 90928 | SH | DEFINED | 16,24,25 | 77526 | 0 | 13402 |
| FIRST TR VALUE LINE | COM SHS | 33735G107 | 1466 | 81322 | SH | DEFINED | 16,24,25 | 81001 | 0 | 321 |
| FIRST TR DJ STOXX SE | COMMON SHS | 33735T109 | 1506 | 49779 | SH | DEFINED | 16,24,25 | 49751 | 0 | 28 |
| FIRSTCITY FINL CORP | COM | 33761X107 | 1075 | 132224 | SH | DEFINED | 16,24,25 | 119724 | 0 | 12500 |
| FISERV INC | COM | 337738108 | 1425 | 25683 | SH | DEFINED | 7,11 | 25683 | 0 | 0 |
| FISERV INC | COM | 337738108 | 839 | 15125 | SH | DEFINED | 7,11,13 | 14685 | 0 | 440 |
| FISERV INC | COM | 337738108 | 108 | 1955 | SH | DEFINED | 7,11,33 | 0 | 0 | 1955 |
| FISERV INC | COM | 337738108 | 52102 | 938946 | SH | DEFINED | 16,24,25 | 793634 | 0 | 145312 |
| FISERV INC | COM | 337738108 | 274 | 4939 | SH | DEFINED | 32,40,41 | 4939 | 0 | 0 |
| FISERV INC | COM | 337738108 | 11919 | 214800 | SH | CALL | DEFINED | 15,16,24 | 214800 | 0 | 0 |
| FISERV INC | COM | 337738108 | 1870 | 33700 | SH | CALL | DEFINED | 16,24,25 | 33700 | 0 | 0 |
| FISERV INC | COM | 337738108 | 1165 | 21000 | SH | PUT | DEFINED | 15,16,24 | 21000 | 0 | 0 |
| FISERV INC | COM | 337738108 | 2519 | 45400 | SH | PUT | DEFINED | 16,24,25 | 45400 | 0 | 0 |
| FIRSTMERIT CORP | COM | 337915102 | 12 | 600 | SH | DEFINED | 30 | 600 | 0 | 0 |
| FIRSTMERIT CORP | COM | 337915102 | 7 | 357 | SH | DEFINED | 7,11 | 0 | 0 | 357 |
| FIRSTMERIT CORP | COM | 337915102 | 18 | 878 | SH | DEFINED | 16,24 | 878 | 0 | 0 |
| FIRSTMERIT CORP | COM | 337915102 | 686 | 34265 | SH | DEFINED | 7,11,13 | 33465 | 0 | 800 |
| FIRSTMERIT CORP | COM | 337915102 | 1177 | 58795 | SH | DEFINED | 16,24,25 | 57236 | 0 | 1559 |
| FLAGSTAR BANCORP INC | COM | 337930101 | 93 | 13323 | SH | DEFINED | 16,24,25 | 11212 | 0 | 2111 |
| FIRSTENERGY CORP | COM | 337932107 | 1209 | 16710 | SH | DEFINED | 12 | 0 | 0 | 16710 |
| FIRSTENERGY CORP | COM | 337932107 | 8339 | 115270 | SH | DEFINED | 7,11 | 35743 | 0 | 79527 |
| FIRSTENERGY CORP | COM | 337932107 | 1599 | 22101 | SH | DEFINED | 7,11,13 | 17241 | 0 | 4860 |
| FIRSTENERGY CORP | COM | 337932107 | 47 | 650 | SH | DEFINED | 7,11,33 | 0 | 0 | 650 |
| FIRSTENERGY CORP | COM | 337932107 | 2287 | 31615 | SH | DEFINED | 15,16,24 | 31615 | 0 | 0 |
| FIRSTENERGY CORP | COM | 337932107 | 9854 | 136221 | SH | DEFINED | 16,24,25 | 123351 | 0 | 12870 |
| FIRSTENERGY CORP | COM | 337932107 | 7422 | 102593 | SH | DEFINED | 32,40,41 | 102593 | 0 | 0 |
| FIRSTENERGY CORP | COM | 337932107 | 2262 | 31275 | SH | CALL | DEFINED | 7,11 | 31275 | 0 | 0 |
| FIRSTENERGY CORP | COM | 337932107 | 3711 | 51300 | SH | CALL | DEFINED | 15,16,24 | 51300 | 0 | 0 |
| FIRSTENERGY CORP | COM | 337932107 | 3017 | 41700 | SH | CALL | DEFINED | 16,24,25 | 41700 | 0 | 0 |
| FIRSTENERGY CORP | COM | 337932107 | 6843 | 94600 | SH | PUT | DEFINED | 15,16,24 | 94600 | 0 | 0 |
| FIRSTENERGY CORP | COM | 337932107 | 5279 | 72975 | SH | PUT | DEFINED | 16,24,25 | 72975 | 0 | 0 |
| FIVE STAR QUALITY CA | COM | 33832D106 | 276 | 33281 | SH | DEFINED | 16,24,25 | 29486 | 0 | 3795 |
| FLAHERTY & CRMN/CLYM | COM SHS | 33847B100 | 1473 | 91135 | SH | DEFINED | 16,24,25 | 76537 | 0 | 14597 |
| FLAHERTY & CRUMRINE | COM | 33848E106 | 5 | 500 | SH | DEFINED | 7,11,13 | 500 | 0 | 0 |
| FLAHERTY & CRUMRINE | COM | 33848E106 | 150 | 15868 | SH | DEFINED | 16,24,25 | 13442 | 0 | 2425 |
| FLAHERTY & CRUMRINE | COM | 33848Q106 | 254 | 21675 | SH | DEFINED | 16,24,25 | 15453 | 0 | 6221 |
| FLAMEL TECHNOLOGIES | SPONSORED | 33848B109 | 696 | 69730 | SH | DEFINED | 15,16,24 | 69730 | 0 | 0 |
| FLAMEL TECHNOLOGIES | SPONSORED | 33848B109 | 277 | 27783 | SH | DEFINED | 16,24,25 | 26998 | 0 | 785 |
| FLAMEL TECHNOLOGIES | SPONSORED | 33848B109 | 1183 | 118500 | SH | CALL | DEFINED | 15,16,24 | 118500 | 0 | 0 |
| FLAMEL TECHNOLOGIES | SPONSORED | 33848B109 | 1766 | 177000 | SH | PUT | DEFINED | 15,16,24 | 177000 | 0 | 0 |
| FLANDERS CORP | COM | 33849V107 | 212 | 37800 | SH | DEFINED | 16,24,25 | 36800 | 0 | 1000 |
| FLEXTRONICS INTL LTD | NOTE 1.00 | 33938EAL1 | 105 | 102000 | PRN | DEFINED | 16,24,25 | 102000 | 0 | 0 |
| FLEXSTEEL INDS INC | COM | 339382103 | 214 | 17836 | SH | DEFINED | 16,24,25 | 15336 | 0 | 2500 |
| FLORIDA PUB UTILS CO | COM | 341135101 | 2 | 165 | SH | DEFINED | 16,24 | 165 | 0 | 0 |
| FLORIDA PUB UTILS CO | COM | 341135101 | 167 | 14182 | SH | DEFINED | 16,24,25 | 9995 | 0 | 4187 |
| FLOTEK INDS INC DEL | COM | 343389102 | 29 | 800 | SH | DEFINED | 30 | 800 | 0 | 0 |
| FLOTEK INDS INC DEL | COM | 343389102 | 997 | 27654 | SH | DEFINED | 16,24,25 | 20199 | 0 | 7455 |
| FLUOR CORP NEW | NOTE 1.50 | 343412AA0 | 28871 | 11115000 | PRN | DEFINED | 16,24,25 | 11113000 | 0 | 2000 |
| FLUOR CORP NEW | COM | 343412102 | 4753 | 32619 | SH | DEFINED | 7,11 | 32619 | 0 | 0 |
| FLUOR CORP NEW | COM | 343412102 | 920 | 6311 | SH | DEFINED | 7,11,13 | 6286 | 0 | 25 |
| FLUOR CORP NEW | COM | 343412102 | 203 | 1390 | SH | DEFINED | 7,11,33 | 0 | 0 | 1390 |
| FLUOR CORP NEW | COM | 343412102 | 28440 | 195166 | SH | DEFINED | 16,24,25 | 159071 | 0 | 36094 |
| FLUOR CORP NEW | COM | 343412102 | 13587 | 93238 | SH | DEFINED | 32,40,41 | 93238 | 0 | 0 |
| FLUOR CORP NEW | COM | 343412102 | 20517 | 140800 | SH | CALL | DEFINED | 15,16,24 | 140800 | 0 | 0 |
| FLUOR CORP NEW | COM | 343412102 | 29 | 200 | SH | CALL | DEFINED | 16,24,25 | 200 | 0 | 0 |
| FLUOR CORP NEW | COM | 343412102 | 21363 | 146600 | SH | PUT | DEFINED | 15,16,24 | 146600 | 0 | 0 |
| FLOW INTL CORP | COM | 343468104 | 25 | 2642 | SH | DEFINED | 7,11 | 2642 | 0 | 0 |
| FLOW INTL CORP | COM | 343468104 | 6153 | 660152 | SH | DEFINED | 16,24,25 | 588290 | 0 | 71862 |
| FLOWERS FOODS INC | COM | 343498101 | 12 | 499 | SH | DEFINED | 7,11 | 0 | 0 | 499 |
| FLOWERS FOODS INC | COM | 343498101 | 36 | 1555 | SH | DEFINED | 7,11,13 | 1555 | 0 | 0 |
| FLOWERS FOODS INC | COM | 343498101 | 481 | 20528 | SH | DEFINED | 16,24,25 | 16357 | 0 | 4171 |
| FLOWSERVE CORP | COM | 34354P105 | 537 | 5578 | SH | DEFINED | 7,11 | 5578 | 0 | 0 |
| FLOWSERVE CORP | COM | 34354P105 | 46 | 480 | SH | DEFINED | 7,11,13 | 480 | 0 | 0 |
| FLOWSERVE CORP | COM | 34354P105 | 1631 | 16957 | SH | DEFINED | 16,24,25 | 12998 | 0 | 3959 |
| FLOWSERVE CORP | COM | 34354P105 | 173 | 1800 | SH | DEFINED | 32,40,41 | 1800 | 0 | 0 |
| FOCUS MEDIA HLDG LTD | SPONSORED | 34415V109 | 7101 | 125000 | SH | DEFINED | 7,11 | 125000 | 0 | 0 |
| FOCUS MEDIA HLDG LTD | SPONSORED | 34415V109 | 5166 | 90942 | SH | DEFINED | 15,16,24 | 90942 | 0 | 0 |
| FOCUS MEDIA HLDG LTD | SPONSORED | 34415V109 | 12653 | 222727 | SH | DEFINED | 16,24,25 | 169834 | 0 | 52893 |
| FOCUS MEDIA HLDG LTD | SPONSORED | 34415V109 | 8987 | 158200 | SH | DEFINED | 32,40,41 | 158200 | 0 | 0 |
| FOCUS MEDIA HLDG LTD | SPONSORED | 34415V109 | 9874 | 173800 | SH | CALL | DEFINED | 15,16,24 | 173800 | 0 | 0 |
| FOCUS MEDIA HLDG LTD | SPONSORED | 34415V109 | 2556 | 45000 | SH | CALL | DEFINED | 16,24,25 | 45000 | 0 | 0 |
| FOCUS MEDIA HLDG LTD | SPONSORED | 34415V109 | 1838 | 33000 | SH | PUT | DEFINED | 15,16,24 | 33000 | 0 | 0 |
| FOMENTO ECONOMICO ME | SPON ADR U | 344419106 | 6523 | 170897 | SH | DEFINED | 16,24,25 | 149818 | 0 | 21079 |

```
FOMENTO ECONOMICO ME SPON ADR U  344419106     46    1200 SH    DEFINED   32,40,41     1200           0         0
FOOT LOCKER INC      COM         344849104    102    7498 SH    DEFINED      7,11        7498           0         0
FOOT LOCKER INC      COM         344849104    226   16531 SH    DEFINED   16,24,25    16431           0       100
FOOT LOCKER INC      COM         344849104   1247   91300 SH    CALL DEFINED 15,16,24   91300           0         0
FOOT LOCKER INC      COM         344849104    426   31200 SH    CALL DEFINED 16,24,25   31200           0         0
FOOT LOCKER INC      COM         344849104    627   45900 SH    PUT DEFINED 15,16,24    45900           0         0
FORCE PROTECTION INC COM NEW     345203202    448   95810 SH    DEFINED   15,16,24    95810           0         0
FORCE PROTECTION INC COM NEW     345203202    271   57840 SH    DEFINED   16,24,25    53445           0      4395
FORCE PROTECTION INC COM NEW     345203202   1747  373300 SH    CALL DEFINED 15,16,24  373300           0         0
FORCE PROTECTION INC COM NEW     345203202   1466  313200 SH    PUT DEFINED 15,16,24   313200           0         0
FORD MTR CO DEL      NOTE  4.25  345370CF5   9938 10000000 PRN   DEFINED      31,45  10000000          0         0
FORD MTR CO DEL      NOTE  4.25  345370CP5  43165 43436000 PRN   DEFINED   16,24,25  43436000          0         0
FORD MTR CO DEL      NOTE  4.25  345370CP5   3247  3267000 PRN   DEFINED   32,40,41   3267000          0         0
FORD MTR CO DEL      COM PAR $0  345370860   2179  323751 SH     DEFINED      7,11     323751           0         0
FORD MTR CO DEL      COM PAR $0  345370860      7    1048 SH     DEFINED    7,11,13        0            0      1048
FORD MTR CO DEL      COM PAR $0  345370860     27    4000 SH     DEFINED    7,11,33        0            0      4000
FORD MTR CO DEL      COM PAR $0  345370860   5337  792983 SH     DEFINED   15,16,24   792983           0         0
FORD MTR CO DEL      COM PAR $0  345370860  21133 3140114 SH     DEFINED   16,24,25  2575868           0    564246
FORD MTR CO DEL      COM PAR $0  345370860   5499  817051 SH     DEFINED   32,40,41   817051           0         0
FORD MTR CO DEL      COM PAR $0  345370860   8832 1312400 SH     CALL DEFINED 16,24,25 1312400          0         0
FORD MTR CO DEL      COM PAR $0  345370860   3022  449000 SH     CALL DEFINED 16,24,25  449000          0         0
FORD MTR CO DEL      COM PAR $0  345370860  14303 2125200 SH     PUT DEFINED 15,16,24  2125200          0         0
FORD MTR CO DEL      COM PAR $0  345370860    325   48300 SH     PUT DEFINED 16,24,25   48300           0         0
FORD MTR CO CAP TR I PFD TR CV6  345395206    211    6500 SH     DEFINED      7,11        0            0      6500
FORD MTR CO CAP TR I PFD TR CV6  345395206     10     300 SH     DEFINED    7,11,13      300           0         0
FORD MTR CO CAP TR I PFD TR CV6  345395206  13479  415387 SH     DEFINED   16,24,25   322729           0     92657
FORDING CDN COAL TR  TR UNIT     345425102    129    3336 SH     DEFINED      7,11        0            0      3336
FORDING CDN COAL TR  TR UNIT     345425102   1331   34477 SH     DEFINED    7,11,33        0            0     34477
FORDING CDN COAL TR  TR UNIT     345425102  16560  429011 SH     DEFINED   16,24,25   377418           0     51593
FORDING CDN COAL TR  TR UNIT     345425102    161    4176 SH     DEFINED   32,40,41     4176           0         0
FORDING CDN COAL TR  TR UNIT     345425102   1457   37736 SH     DEFINED    4,6,7,11    37736           0         0
FORDING CDN COAL TR  TR UNIT     345425102   9577  248100 SH     CALL DEFINED 15,16,24  248100          0         0
FORDING CDN COAL TR  TR UNIT     345425102   5813  150600 SH     PUT DEFINED 15,16,24   150600          0         0
FOREST CITY ENTERPRI CL A        345550107     93    2102 SH     DEFINED       3,9        0            0      2102
FOREST CITY ENTERPRI CL A        345550107    204    4592 SH     DEFINED      7,11       4592           0         0
FOREST CITY ENTERPRI CL A        345550107   9292  209100 SH     DEFINED      14,31    209100           0         0
FOREST CITY ENTERPRI CL A        345550107     16     350 SH     DEFINED    7,11,33        0            0       350
FOREST CITY ENTERPRI CL A        345550107   2901   65268 SH     DEFINED   16,24,25    52763           0     12505
FOREST CITY ENTERPRI CL A        345550107    186    4195 SH     DEFINED   32,40,41     4195           0         0
FOREST LABS INC      COM         345838106     14     382 SH     DEFINED       3,9        0            0       382
FOREST LABS INC      COM         345838106   4189  114920 SH     DEFINED      7,11     114920           0         0
FOREST LABS INC      COM         345838106     15     415 SH     DEFINED    7,11,33      415           0         0
FOREST LABS INC      COM         345838106    114    3125 SH     DEFINED    7,11,33        0            0      3125
FOREST LABS INC      COM         345838106   2511   68880 SH     DEFINED   15,16,24    68880           0         0
FOREST LABS INC      COM         345838106 114376 3137875 SH     DEFINED   16,24,25  2911875           0    226000
FOREST LABS INC      COM         345838106  11013  302139 SH     DEFINED   32,40,41   302139           0         0
FOREST LABS INC      COM         345838106  10115  277500 SH     CALL DEFINED 15,16,24  277500          0         0
FOREST LABS INC      COM         345838106   1232   33800 SH     CALL DEFINED 16,24,25   33800          0         0
FOREST LABS INC      COM         345838106  10202  279900 SH     PUT DEFINED 15,16,24   279900          0         0
FOREST LABS INC      COM         345838106   1389   38100 SH     PUT DEFINED 16,24,25    38100          0         0
FOREST OIL CORP      COM PAR $0  346091705   4830   95000 SH     DEFINED        42      95000           0         0
FOREST OIL CORP      COM PAR $0  346091705     13     255 SH     DEFINED    7,11,33        0            0       255
FOREST OIL CORP      COM PAR $0  346091705  15227  299512 SH     DEFINED   16,24,25   255765           0     43747
FOREST OIL CORP      COM PAR $0  346091705   6563  129100 SH     CALL DEFINED 15,16,24  129100          0         0
FOREST OIL CORP      COM PAR $0  346091705   2888   56800 SH     PUT DEFINED 15,16,24    56800          0         0
FORESTAR REAL ESTATE COM         346233109     14     600 SH     DEFINED      7,11        0            0       600
FORESTAR REAL ESTATE COM         346233109    557   23603 SH     DEFINED   16,24,25    20059           0      3544
FORMFACTOR INC       COM         346375108   1359   41060 SH     DEFINED      7,11      41060           0         0
FORMFACTOR INC       COM         346375108    850   25693 SH     DEFINED   15,16,24    25693           0         0
FORMFACTOR INC       COM         346375108    152    4584 SH     DEFINED   16,24,25     4316           0       268
FORMFACTOR INC       COM         346375108   1453   43900 SH     CALL DEFINED 15,16,24   43900          0         0
FORMFACTOR INC       COM         346375108   2727   82400 SH     PUT DEFINED 15,16,24    82400          0         0
FORT DEARBORN INCOME COM         347200107    159   11183 SH     DEFINED   16,24,25    10526           0       657
FORTRESS INVESTMENT  CL A        34958B106    849   54473 SH     DEFINED      7,11      54473           0         0
FORTRESS INVESTMENT  CL A        34958B106   7829  502509 SH     DEFINED   16,24,25   354380           0    148128
FORTRESS INVESTMENT  CL A        34958B106  23405 1502237 SH     DEFINED 16,19,24,26,27 1502237         0         0
FORTRESS INVESTMENT  CL A        34958B106    442   28400 SH     CALL DEFINED 16,24,25   28400          0         0
FORTRESS INVESTMENT  CL A        34958B106   1246   80000 SH     PUT DEFINED 16,24,25    80000          0         0
FORTUNE BRANDS INC   COM         346931101   1872   25864 SH     DEFINED      7,11      12459           0     13405
FORTUNE BRANDS INC   COM         346931101   1117   15440 SH     DEFINED    7,11,13     14930           0       510
FORTUNE BRANDS INC   COM         346931101   5175   71516 SH     DEFINED   16,24,25    57562           0     13953
FORTUNE BRANDS INC   COM         346931101   2074   28659 SH     DEFINED   32,40,41    28659           0         0
40 / 86 STRATEGIC IN SH BEN INT  349739102    121   13648 SH     DEFINED   16,24,25    11630           0      2018
FOSSIL INC           COM         349882100   1057   25178 SH     DEFINED      7,11      24655           0       523
FOSSIL INC           COM         349882100   1004   23912 SH     DEFINED   16,24,25    23130           0       782
FOSTER L B CO        COM         350060109      4      75 SH     DEFINED      16,24       75            0         0
FOSTER L B CO        COM         350060109   1575   30444 SH     DEFINED   16,24,25    15447           0     14997
FOUNDATION COAL HLDG COM         35039W100    139    2650 SH     DEFINED        30       2650           0         0
FOUNDATION COAL HLDG COM         35039W100     29     550 SH     DEFINED      7,11        550           0         0
FOUNDATION COAL HLDG COM         35039W100   2815   53624 SH     DEFINED   15,16,24    53624           0         0
FOUNDATION COAL HLDG COM         35039W100   6548  124715 SH     DEFINED   16,24,25    97723           0     26992
FOUNDATION COAL HLDG COM         35039W100   2032   38700 SH     CALL DEFINED 15,16,24   38700          0         0
FOUNDATION COAL HLDG COM         35039W100   3528   67200 SH     PUT DEFINED 15,16,24    67200          0         0
FOUNDRY NETWORKS INC COM         35063R100    121    6900 SH     DEFINED        30       6900           0         0
FOUNDRY NETWORKS INC COM         35063R100    188   10725 SH     DEFINED    7,11,13     10725           0         0
FOUNDRY NETWORKS INC COM         35063R100   5220  297943 SH     DEFINED   16,24,25   276499           0     21444
FOUNDRY NETWORKS INC COM         35063R100   2730  155800 SH     CALL DEFINED 15,16,24  155800          0         0
FOUNTAIN POWERBOAT I COM NEW     350755302     27   22419 SH     DEFINED   16,24,25    13969           0      8450
FRANCE TELECOM       SPONSORED   35177Q105    442   12400 SH     DEFINED      7,11        0            0     12400
FRANCE TELECOM       SPONSORED   35177Q105   7355  206418 SH     DEFINED 16,19,24,26,27 157190          0     49228
FRANCE TELECOM       SPONSORED   35177Q105  17815  500000 SH     DEFINED   16,24,25   500000           0         0
FRANKLIN BK CORP DEL COM         35245L108    155   35900 SH     DEFINED   16,24,25    25400           0     10500
FRANKLIN ELEC INC    COM         353514102    294    7695 SH     DEFINED      7,11       7695           0         0
FRANKLIN ELEC INC    COM         353514102   4968  129812 SH     DEFINED   16,24,25   101991           0     27821
FRANKLIN RES INC     COM         354613101   4208   36775 SH     DEFINED      7,11      28775           0      8000
FRANKLIN RES INC     COM         354613101   1271   11106 SH     DEFINED    7,11,13     10338           0       768
FRANKLIN RES INC     COM         354613101     18     161 SH     DEFINED    7,11,33        0            0       161
FRANKLIN RES INC     COM         354613101  11279   98563 SH     DEFINED   16,24,25    84183           0     14379
FRANKLIN RES INC     COM         354613101   5736   50125 SH     DEFINED   32,40,41    50125           0         0
FRANKLIN STREET PPTY COM         35471R106   2772   18402 SH     DEFINED    7,11,33        0            0     18402
FRANKLIN STREET PPTY COM         35471R106    715   48290 SH     DEFINED   16,24,25    24945           0     23345
FRANKLIN STREET PPTY COM         35471R106    449   30310 SH     DEFINED   32,40,41    30310           0         0
FRANKLIN TEMPLETON L COM         35472T101    316   27315 SH     DEFINED   16,24,25    27315           0         0
FRANKLIN UNVL TR     SH BEN INT  355145103   3918  567055 SH     DEFINED   16,24,25   486407           0     80647
FRANKLIN UNVL TR     SH BEN INT  355145103     69   10000 SH     DEFINED 16,19,24,26,27  10000          0         0
FREDS INC            CL A        356108100     87    9000 SH     DEFINED    7,11,13     9000           0         0
FREDS INC            CL A        356108100    180   18649 SH     DEFINED      7,11      17749           0       900
FREEPORT-MCMORAN COP PFD CONV    35671D782  22616  150000 SH     DEFINED   16,24,25   150000           0         0
FREEPORT-MCMORAN COP COM         35671D857 186360 1236058 SH     DEFINED   16,24,25  1234328           0      1730
FREEPORT-MCMORAN COP COM         35671D857    699    4870 SH     DEFINED        12        0            0      4870
FREEPORT-MCMORAN COP COM         35671D857    430    4200 SH     DEFINED        30       4200           0         0
FREEPORT-MCMORAN COP COM         35671D857   3010   29382 SH     DEFINED       3,9        0            0     29382
FREEPORT-MCMORAN COP COM         35671D857  13626  133212 SH     DEFINED      7,11      69208           0     63804
FREEPORT-MCMORAN COP COM         35671D857    398    3885 SH     DEFINED    7,11,13     1166           0      2719
```

| Name | Type | CUSIP | Qty | Value | Unit | Option | Codes | Val1 | Val2 | Val3 |
|---|---|---|---|---|---|---|---|---|---|---|
| FREEPORT-MCMORAN COP COM | | 35671D857 | 1539 | 15021 | SH | DEFINED | 7,11,33 | 0 | 0 | 15021 |
| FREEPORT-MCMORAN COP COM | | 35671D857 | 27039 | 263952 | SH | DEFINED | 15,16,24 | 263952 | 0 | 0 |
| FREEPORT-MCMORAN COP COM | | 35671D857 | 100632 | 982349 | SH | DEFINED | 16,24,25 | 823537 | 0 | 158812 |
| FREEPORT-MCMORAN COP COM | | 35671D857 | 4794 | 46794 | SH | DEFINED | 32,40,41 | 46794 | 0 | 0 |
| FREEPORT-MCMORAN COP COM | | 35671D857 | 1670 | 16300 | SH | CALL DEFINED | 7,11 | 16300 | 0 | 0 |
| FREEPORT-MCMORAN COP COM | | 35671D857 | 253611 | 2475700 | SH | CALL DEFINED | 15,16,24 | 2475700 | 0 | 0 |
| FREEPORT-MCMORAN COP COM | | 35671D857 | 14792 | 144400 | SH | CALL DEFINED | 16,24,25 | 144400 | 0 | 0 |
| FREEPORT-MCMORAN COP COM | | 35671D857 | 271527 | 2650600 | SH | PUT DEFINED | 15,16,24 | 2650600 | 0 | 0 |
| FREEPORT-MCMORAN COP COM | | 35671D857 | 14342 | 140000 | SH | PUT DEFINED | 16,24,25 | 140000 | 0 | 0 |
| FREIGHTCAR AMER INC COM | | 357023100 | 1167 | 33332 | SH | DEFINED | 16,24,25 | 16890 | 0 | 16442 |
| FREMONT GEN CORP COM | | 357288109 | 210 | 60012 | SH | DEFINED | 16,24,25 | 60012 | 0 | 0 |
| FREQUENCY ELECTRS IN COM | | 358010106 | 947 | 98116 | SH | DEFINED | 16,24,25 | 87271 | 0 | 10845 |
| FRESENIUS MED CARE A SPONSORED | | 358029106 | 1486 | 28177 | SH | DEFINED | 7,11 | 0 | 0 | 28177 |
| FRESENIUS MED CARE A SPONSORED | | 358029106 | 4490 | 85118 | SH | DEFINED | 16,24,25 | 71921 | 0 | 13197 |
| FRESENIUS MED CARE A SPONSORED | | 358029106 | 3276 | 62100 | SH | DEFINED | 16,19,24,26,27 | 62100 | 0 | 0 |
| FRIEDMAN BILLINGS RA CL A | | 358434108 | 227 | 72438 | SH | DEFINED | 7,11 | 72438 | 0 | 0 |
| FRIEDMAN BILLINGS RA CL A | | 358434108 | 1 | 250 | SH | DEFINED | 7,11,13 | 250 | 0 | 0 |
| FRIEDMAN BILLINGS RA CL A | | 358434108 | 138 | 43921 | SH | DEFINED | 16,24,25 | 34597 | 0 | 9324 |
| FRIEDMAN BILLINGS RA CL A | | 358434108 | 1064 | 338800 | SH | CALL DEFINED | 15,16,24 | 338800 | 0 | 0 |
| FRIEDMAN BILLINGS RA CL A | | 358434108 | 636 | 202400 | SH | PUT DEFINED | 15,16,24 | 202400 | 0 | 0 |
| FRIEDMAN BILLINGS RA CL A | | 358434108 | 1570 | 500000 | SH | PUT DEFINED | 16,24,25 | 500000 | 0 | 0 |
| FRONTIER DEV GROUP I COM | | 35903Q106 | 656 | 65950 | SH | DEFINED | 15,16,24 | 65950 | 0 | 0 |
| FRONTIER DEV GROUP I COM | | 35903Q106 | 189 | 18960 | SH | DEFINED | 16,24,25 | 17875 | 0 | 1085 |
| FRONTIER DEV GROUP I COM | | 35903Q106 | 136 | 13700 | SH | CALL DEFINED | 15,16,24 | 13700 | 0 | 0 |
| FRONTIER DEV GROUP I COM | | 35903Q106 | 410 | 41200 | SH | PUT DEFINED | 15,16,24 | 41200 | 0 | 0 |
| FRONTIER AIRLINES HO COM | | 35905I102 | 36 | 6902 | SH | DEFINED | 15,16,24 | 6902 | 0 | 0 |
| FRONTIER AIRLINES HO COM | | 35905I102 | 880 | 167325 | SH | DEFINED | 16,24,25 | 120775 | 0 | 46550 |
| FRONTIER AIRLINES HO COM | | 35905I102 | 2 | 400 | SH | CALL DEFINED | 15,16,24 | 400 | 0 | 0 |
| FRONTIER AIRLINES HO COM | | 35905I102 | 16 | 3000 | SH | PUT DEFINED | 15,16,24 | 3000 | 0 | 0 |
| FRONTIER FINL CORP W COM | | 35907K105 | 454 | 24455 | SH | DEFINED | 16,24,25 | 21690 | 0 | 2765 |
| FRONTIER OIL CORP COM | | 35914P105 | 674 | 16600 | SH | DEFINED | 3,9 | 0 | 0 | 16600 |
| FRONTIER OIL CORP COM | | 35914P105 | 4135 | 101909 | SH | DEFINED | 7,11 | 101909 | 0 | 0 |
| FRONTIER OIL CORP COM | | 35914P105 | 1083 | 26680 | SH | DEFINED | 15,16,24 | 26680 | 0 | 0 |
| FRONTIER OIL CORP COM | | 35914P105 | 3899 | 96076 | SH | DEFINED | 16,24,25 | 89185 | 0 | 6890 |
| FRONTIER OIL CORP COM | | 35914P105 | 4837 | 119200 | SH | CALL DEFINED | 15,16,24 | 119200 | 0 | 0 |
| FRONTIER OIL CORP COM | | 35914P105 | 81 | 2000 | SH | DEFINED | 16,24,25 | 2000 | 0 | 0 |
| FRONTIER OIL CORP COM | | 35914P105 | 5024 | 123800 | SH | PUT DEFINED | 15,16,24 | 123800 | 0 | 0 |
| FUELCELL ENERGY INC COM | | 35952H106 | 353 | 35620 | SH | DEFINED | 16,24,25 | 31331 | 0 | 4289 |
| FUELCELL ENERGY INC COM | | 35952H106 | 414 | 41700 | SH | CALL DEFINED | 15,16,24 | 41700 | 0 | 0 |
| FUELCELL ENERGY INC COM | | 35952H106 | 872 | 87900 | SH | PUT DEFINED | 15,16,24 | 87900 | 0 | 0 |
| FUEL TECH INC COM | | 359523107 | 68 | 3023 | SH | DEFINED | 7,11 | 3023 | 0 | 0 |
| FUEL TECH INC COM | | 359523107 | 673 | 29705 | SH | DEFINED | 16,24,25 | 22924 | 0 | 6781 |
| FUJIFILM HLDGS CORP ADR 2 ORD | | 359586107 | 4 | 108 | SH | DEFINED | 16,24 | 108 | 0 | 0 |
| FUJIFILM HLDGS CORP ADR 2 ORD | | 359586107 | 42 | 1000 | SH | DEFINED | 7,11,33 | 0 | 0 | 1000 |
| FUJIFILM HLDGS CORP ADR 2 ORD | | 359586107 | 1822 | 43855 | SH | DEFINED | 16,24,25 | 30325 | 0 | 13530 |
| FULLER H B CO COM | | 359694106 | 1158 | 51599 | SH | DEFINED | 16,24,25 | 34846 | 0 | 16752 |
| FULTON FINL CORP PA COM | | 360271100 | 52 | 4600 | SH | DEFINED | 30 | 4600 | 0 | 0 |
| FULTON FINL CORP PA COM | | 360271100 | 94 | 8350 | SH | DEFINED | 7,11 | 8350 | 0 | 0 |
| FULTON FINL CORP PA COM | | 360271100 | 321 | 28566 | SH | DEFINED | 7,11,13 | 28566 | 0 | 0 |
| FULTON FINL CORP PA COM | | 360271100 | 1001 | 89204 | SH | DEFINED | 16,24,25 | 61953 | 0 | 27251 |
| FURNITURE BRANDS INT COM | | 360921100 | 2 | 173 | SH | DEFINED | 3,9 | 0 | 0 | 173 |
| FURNITURE BRANDS INT COM | | 360921100 | 484 | 48117 | SH | DEFINED | 16,24,25 | 43153 | 0 | 4964 |
| G & K SVCS INC CL A | | 361268105 | 530 | 14137 | SH | DEFINED | 16,24,25 | 14118 | 0 | 19 |
| GATX CORP COM | | 361448103 | 9 | 240 | SH | DEFINED | 7,11 | 240 | 0 | 0 |
| GATX CORP COM | | 361448103 | 28 | 763 | SH | DEFINED | 7,11,13 | 763 | 0 | 0 |
| GATX CORP COM | | 361448103 | 4 | 118 | SH | DEFINED | 15,16,24 | 118 | 0 | 0 |
| GATX CORP COM | | 361448103 | 2020 | 55080 | SH | DEFINED | 16,24,25 | 42381 | 0 | 12699 |
| GATX CORP COM | | 361448103 | 37 | 1000 | SH | CALL DEFINED | 15,16,24 | 1000 | 0 | 0 |
| GATX CORP COM | | 361448103 | 15 | 400 | SH | PUT DEFINED | 15,16,24 | 400 | 0 | 0 |
| GEO GROUP INC COM | | 36159R103 | 185 | 6600 | SH | DEFINED | 30 | 6600 | 0 | 0 |
| GEO GROUP INC COM | | 36159R103 | 563 | 20108 | SH | DEFINED | 16,24,25 | 17487 | 0 | 2621 |
| GFI GROUP INC COM | | 361652209 | 2 | 18 | SH | DEFINED | 16,24 | 18 | 0 | 0 |
| GFI GROUP INC COM | | 361652209 | 3050 | 31867 | SH | DEFINED | 16,24,25 | 27576 | 0 | 4291 |
| GFI GROUP INC COM | | 361652209 | 2297 | 24000 | SH | CALL DEFINED | 7,11 | 24000 | 0 | 0 |
| GMH CMNTYS TR COM | | 36188G102 | 27 | 4919 | SH | DEFINED | 16,24,25 | 4109 | 0 | 810 |
| GMH CMNTYS TR COM | | 36188G102 | 90 | 16383 | SH | DEFINED | 32,40,41 | 16383 | 0 | 0 |
| GSI COMMERCE INC COM | | 36238G102 | 428 | 21965 | SH | DEFINED | 16,24,25 | 21605 | 0 | 360 |
| GABELLI GLOBAL MULTI COM | | 36239Q109 | 3 | 224 | SH | DEFINED | 7,11,13 | 224 | 0 | 0 |
| GABELLI GLOBAL MULTI COM | | 36239Q109 | 2911 | 225807 | SH | DEFINED | 16,24,25 | 212294 | 0 | 13512 |
| GABELLI EQUITY TR IN COM | | 362397101 | 85 | 9189 | SH | DEFINED | 7,11,13 | 9189 | 0 | 0 |
| GABELLI EQUITY TR IN COM | | 362397101 | 2506 | 270355 | SH | DEFINED | 16,24,25 | 221487 | 0 | 48868 |
| GABELLI UTIL TR COM | | 36240A101 | 815 | 85739 | SH | DEFINED | 16,24,25 | 60456 | 0 | 25283 |
| GABELLI DIVD & INCOM COM | | 36242H104 | 951 | 46002 | SH | DEFINED | 7,11,13 | 46002 | 0 | 0 |
| GABELLI DIVD & INCOM COM | | 36242H104 | 21277 | 1028851 | SH | DEFINED | 16,24,25 | 882853 | 0 | 145997 |
| GABELLI DIVD & INCOM COM | | 36242H104 | 298 | 14400 | SH | DEFINED | 16,19,24,26,27 | 14400 | 0 | 0 |
| GABELLI GLOBL UTIL & COM SH BEN | | 36242L105 | 400 | 17400 | SH | DEFINED | 7,11,13 | 17400 | 0 | 0 |
| GABELLI GLOBL UTIL & COM SH BEN | | 36242L105 | 741 | 32255 | SH | DEFINED | 16,24,25 | 30505 | 0 | 1750 |
| GABELLI GLOBL UTIL & COM SH BEN | | 36242L105 | 170 | 7400 | SH | DEFINED | 16,19,24,26,27 | 7400 | 0 | 0 |
| GABELLI GLB GLD NAT COM SHS BEN | | 36244N109 | 1 | 50 | SH | DEFINED | 16,24 | 50 | 0 | 0 |
| GABELLI GLB GLD NAT COM SHS BEN | | 36244N109 | 0 | 3 | SH | DEFINED | 7,11,13 | 3 | 0 | 0 |
| GABELLI GLB GLD NAT COM SHS BEN | | 36244N109 | 13314 | 456110 | SH | DEFINED | 16,24,25 | 397139 | 0 | 58970 |
| GABELLI GLOBAL DEAL COM SBI | | 36245G103 | 2847 | 178063 | SH | DEFINED | 31,45 | 178063 | 0 | 0 |
| GABELLI GLOBAL DEAL COM SBI | | 36245G103 | 1557 | 97365 | SH | DEFINED | 16,24,25 | 88190 | 0 | 9175 |
| GAIAM INC CL A | | 36268Q103 | 4061 | 136815 | SH | DEFINED | 16,24,25 | 108779 | 0 | 28036 |
| GALLAGHER ARTHUR J & COM | | 363576109 | 117 | 4823 | SH | DEFINED | 7,11 | 4823 | 0 | 0 |
| GALLAGHER ARTHUR J & COM | | 363576109 | 2619 | 108275 | SH | DEFINED | 7,11,13 | 106250 | 0 | 2025 |
| GALLAGHER ARTHUR J & COM | | 363576109 | 132 | 5451 | SH | DEFINED | 16,24,25 | 5451 | 0 | 0 |
| GAMETECH INTERNATION COM | | 36466D102 | 79 | 10999 | SH | DEFINED | 16,24,25 | 8999 | 0 | 2000 |
| GAMMON GOLD INC COM | | 36467T106 | 127 | 15800 | SH | DEFINED | 15,16,24 | 15800 | 0 | 0 |
| GAMMON GOLD INC COM | | 36467T106 | 3 | 421 | SH | DEFINED | 16,24 | 421 | 0 | 0 |
| GAMMON GOLD INC COM | | 36467T106 | 278 | 34663 | SH | DEFINED | 4,6,7,11 | 34663 | 0 | 0 |
| GAMMON GOLD INC COM | | 36467T106 | 56 | 7000 | SH | DEFINED | 5-7,11,43,44 | 0 | 7000 | 0 |
| GAMMON GOLD INC COM | | 36467T106 | 994 | 124100 | SH | CALL DEFINED | 15,16,24 | 124100 | 0 | 0 |
| GAMMON GOLD INC COM | | 36467T106 | 120 | 15000 | SH | PUT DEFINED | 15,16,24 | 15000 | 0 | 0 |
| GAMESTOP CORP NEW CL A | | 36467W109 | 11240 | 180977 | SH | DEFINED | 7,11 | 180977 | 0 | 0 |
| GAMESTOP CORP NEW CL A | | 36467W109 | 7681 | 123661 | SH | DEFINED | 15,16,24 | 123661 | 0 | 0 |
| GAMESTOP CORP NEW CL A | | 36467W109 | 12813 | 206301 | SH | DEFINED | 16,24,25 | 164783 | 0 | 41518 |
| GAMESTOP CORP NEW CL A | | 36467W109 | 849 | 13674 | SH | DEFINED | 32,40,41 | 13674 | 0 | 0 |
| GAMESTOP CORP NEW CL A | | 36467W109 | 7037 | 113300 | SH | CALL DEFINED | 15,16,24 | 113300 | 0 | 0 |
| GAMESTOP CORP NEW CL A | | 36467W109 | 6735 | 108440 | SH | CALL DEFINED | 16,24,25 | 108440 | 0 | 0 |
| GAMESTOP CORP NEW CL A | | 36467W109 | 6735 | 108440 | SH | PUT DEFINED | 7,11 | 108440 | 0 | 0 |
| GAMESTOP CORP NEW CL A | | 36467W109 | 10577 | 170300 | SH | PUT DEFINED | 15,16,24 | 170300 | 0 | 0 |
| GAMESTOP CORP NEW CL A | | 36467W109 | 12 | 200 | SH | PUT DEFINED | 16,24,25 | 200 | 0 | 0 |
| GANNETT CO INC FRNT | | 364725A06 | 297510 | 300000000 | PRN | DEFINED | 16,24,25 | 300000000 | 0 | 0 |
| GANNETT INC COM | | 364730101 | 378 | 9700 | SH | DEFINED | 30 | 9700 | 0 | 0 |
| GANNETT INC COM | | 364730101 | 43 | 1093 | SH | DEFINED | 3,9 | 0 | 0 | 1093 |
| GANNETT INC COM | | 364730101 | 3053 | 78288 | SH | DEFINED | 7,11 | 54993 | 0 | 23295 |
| GANNETT INC COM | | 364730101 | 1170 | 30000 | SH | DEFINED | 16,24 | 30000 | 0 | 0 |
| GANNETT INC COM | | 364730101 | 8 | 200 | SH | DEFINED | 7,11,13 | 200 | 0 | 0 |
| GANNETT INC COM | | 364730101 | 7 | 175 | SH | DEFINED | 7,11,13 | 175 | 0 | 0 |
| GANNETT INC COM | | 364730101 | 1338 | 34305 | SH | DEFINED | 15,16,24 | 34305 | 0 | 0 |
| GANNETT INC COM | | 364730101 | 18525 | 474988 | SH | DEFINED | 16,24,25 | 434309 | 0 | 40678 |
| GANNETT INC COM | | 364730101 | 2309 | 59205 | SH | DEFINED | 32,40,41 | 59205 | 0 | 0 |
| GANNETT INC COM | | 364730101 | 4910 | 125900 | SH | CALL DEFINED | 15,16,24 | 125900 | 0 | 0 |

| Name | Class | CUSIP | | | | Opt | | Codes | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GANNETT INC | COM | 364730101 | 1931 | 49500 | SH | CALL | DEFINED | 16,24,25 | 49500 | 0 | 0 |
| GANNETT INC | COM | 364730101 | 2633 | 67500 | SH | PUT | DEFINED | 15,16,24 | 67500 | 0 | 0 |
| GANNETT INC | COM | 364730101 | 515 | 13200 | SH | PUT | DEFINED | 16,24,25 | 13200 | 0 | 0 |
| GAP INC DEL | COM | 364760108 | 9294 | 436742 | SH | | DEFINED | 7,11 | 386692 | 0 | 50050 |
| GAP INC DEL | COM | 364760108 | 797 | 37450 | SH | | DEFINED | 7,11,13 | 35050 | 0 | 2400 |
| GAP INC DEL | COM | 364760108 | 101 | 4740 | SH | | DEFINED | 7,11,33 | 0 | 0 | 4740 |
| GAP INC DEL | COM | 364760108 | 2768 | 130059 | SH | | DEFINED | 15,16,24 | 130059 | 0 | 0 |
| GAP INC DEL | COM | 364760108 | 22858 | 1074164 | SH | | DEFINED | 16,24,25 | 953268 | 0 | 120896 |
| GAP INC DEL | COM | 364760108 | 357 | 16785 | SH | | DEFINED | 32,40,41 | 16785 | 0 | 0 |
| GAP INC DEL | COM | 364760108 | 5 | 250 | SH | | DEFINED | 5-7,11,43,44 | 0 | 250 | 0 |
| GAP INC DEL | COM | 364760108 | 4 | 200 | SH | | DEFINED | 2,6,7,10-11,18,20,21,28 | 200 | 0 | 0 |
| GAP INC DEL | COM | 364760108 | 4662 | 219100 | SH | CALL | DEFINED | 15,16,24 | 219100 | 0 | 0 |
| GAP INC DEL | COM | 364760108 | 389 | 18300 | SH | CALL | DEFINED | 16,24,25 | 18300 | 0 | 0 |
| GAP INC DEL | COM | 364760108 | 6250 | 293700 | SH | PUT | DEFINED | 15,16,24 | 293700 | 0 | 0 |
| GAP INC DEL | COM | 364760108 | 1060 | 49800 | SH | PUT | DEFINED | 16,24,25 | 49800 | 0 | 0 |
| GARDNER DENVER INC | COM | 365558105 | 5 | 141 | SH | | DEFINED | 7,11 | 0 | 0 | 141 |
| GARDNER DENVER INC | COM | 365558105 | 940 | 28486 | SH | | DEFINED | 16,24,25 | 26231 | 0 | 2255 |
| GARTNER INC | COM | 366651107 | 207 | 11808 | SH | | DEFINED | 16,24,25 | 11522 | 0 | 286 |
| GASCO ENERGY INC | COM | 367220100 | 116 | 58434 | SH | | DEFINED | 16,24,25 | 56462 | 0 | 1972 |
| GATEHOUSE MEDIA INC | COM | 367348109 | 841 | 95801 | SH | | DEFINED | 16,24,25 | 85365 | 0 | 10436 |
| GAYLORD ENTMT CO NEW | COM | 367905106 | 8 | 205 | SH | | DEFINED | 7,11,33 | 0 | 0 | 205 |
| GAYLORD ENTMT CO NEW | COM | 367905106 | 2089 | 51626 | SH | | DEFINED | 16,24,25 | 45400 | 0 | 6226 |
| GEN-PROBE INC NEW | COM | 36866T103 | 39 | 617 | SH | | DEFINED | 7,11 | 617 | 0 | 0 |
| GEN-PROBE INC NEW | COM | 36866T103 | 13 | 200 | SH | | DEFINED | 7,11,13 | 200 | 0 | 0 |
| GEN-PROBE INC NEW | COM | 36866T103 | 330 | 5240 | SH | | DEFINED | 16,24,25 | 4740 | 0 | 500 |
| GEN-PROBE INC NEW | COM | 36866T103 | 176 | 2800 | SH | | DEFINED | 32,40,41 | 2800 | 0 | 0 |
| GEMSTAR-TV GUIDE INT | COM | 36866W106 | 1993 | 4186648 | SH | | DEFINED | 16,24,25 | 414860 | 0 | 3788 |
| GENCORP INC | COM | 368682100 | 154 | 13203 | SH | | DEFINED | 16,24,25 | 12216 | 0 | 987 |
| GENELABS TECHNOLOGIE | COM NEW | 368706206 | 0 | 2 | SH | | DEFINED | 16,24,25 | 2 | 0 | 0 |
| GENELABS TECHNOLOGIE | COM NEW | 368706206 | 13 | 10000 | SH | | DEFINED | 5-7,11,43,44 | 0 | 10000 | 0 |
| GENENTECH INC | COM NEW | 368710406 | 24 | 365 | SH | | DEFINED | 3,9 | 0 | 0 | 365 |
| GENENTECH INC | COM NEW | 368710406 | 5461 | 81418 | SH | | DEFINED | 7,11 | 72618 | 0 | 8800 |
| GENENTECH INC | COM NEW | 368710406 | 305 | 4547 | SH | | DEFINED | 7,11,13 | 4537 | 0 | 10 |
| GENENTECH INC | COM NEW | 368710406 | 1019 | 15195 | SH | | DEFINED | 7,11,33 | 0 | 0 | 15195 |
| GENENTECH INC | COM NEW | 368710406 | 512 | 7627 | SH | | DEFINED | 15,16,24 | 7627 | 0 | 0 |
| GENENTECH INC | COM NEW | 368710406 | 100833 | 1503399 | SH | | DEFINED | 16,24,25 | 1275514 | 0 | 227884 |
| GENENTECH INC | COM NEW | 368710406 | 20428 | 304574 | SH | | DEFINED | 32,40,41 | 304574 | 0 | 0 |
| GENENTECH INC | COM NEW | 368710406 | 194 | 2889 | SH | | DEFINED | 16,19,24,26,27 | 2889 | 0 | 0 |
| GENENTECH INC | COM NEW | 368710406 | 5889 | 87807 | SH | CALL | DEFINED | 7,11 | 87807 | 0 | 0 |
| GENENTECH INC | COM NEW | 368710406 | 68224 | 1017200 | SH | CALL | DEFINED | 15,16,24 | 1017200 | 0 | 0 |
| GENENTECH INC | COM NEW | 368710406 | 13790 | 205600 | SH | CALL | DEFINED | 16,24,25 | 205600 | 0 | 0 |
| GENENTECH INC | COM NEW | 368710406 | 37854 | 564400 | SH | PUT | DEFINED | 15,16,24 | 564400 | 0 | 0 |
| GENENTECH INC | COM NEW | 368710406 | 7774 | 115907 | SH | PUT | DEFINED | 16,24,25 | 115907 | 0 | 0 |
| GENERAL AMERN INVS I | COM | 368802104 | 205 | 5912 | SH | | DEFINED | 16,24,25 | 5476 | 0 | 436 |
| GENERAL CABLE CORP D | COM | 369300108 | 150 | 2050 | SH | | DEFINED | 30 | 2050 | 0 | 0 |
| GENERAL CABLE CORP D | COM | 369300108 | 46 | 629 | SH | | DEFINED | 7,11 | 629 | 0 | 0 |
| GENERAL CABLE CORP D | COM | 369300108 | 2683 | 36615 | SH | | DEFINED | 16,24,25 | 26588 | 0 | 10027 |
| GENERAL CABLE CORP D | COM | 369300108 | 7 | 100 | SH | | DEFINED | 32,40,41 | 100 | 0 | 0 |
| GENERAL CABLE CORP D | COM | 369300108 | 10992 | 150000 | SH | CALL | DEFINED | 15,16,24 | 150000 | 0 | 0 |
| GENERAL CABLE CORP D | COM | 369300108 | 7145 | 97500 | SH | PUT | DEFINED | 15,16,24 | 97500 | 0 | 0 |
| GENERAL DYNAMICS COR | COM | 369550108 | 36 | 400 | SH | | DEFINED | 12 | 0 | 0 | 400 |
| GENERAL DYNAMICS COR | COM | 369550108 | 626 | 7030 | SH | | DEFINED | 30 | 7030 | 0 | 0 |
| GENERAL DYNAMICS COR | COM | 369550108 | 10159 | 114162 | SH | | DEFINED | 7,11 | 99487 | 0 | 14675 |
| GENERAL DYNAMICS COR | COM | 369550108 | 2592 | 29129 | SH | | DEFINED | 7,11,13 | 11700 | 0 | 17429 |
| GENERAL DYNAMICS COR | COM | 369550108 | 43 | 485 | SH | | DEFINED | 7,11,33 | 0 | 0 | 485 |
| GENERAL DYNAMICS COR | COM | 369550108 | 24453 | 274782 | SH | | DEFINED | 16,24,25 | 228215 | 0 | 46567 |
| GENERAL DYNAMICS COR | COM | 369550108 | 13372 | 150266 | SH | | DEFINED | 32,40,41 | 150266 | 0 | 0 |
| GENERAL DYNAMICS COR | COM | 369550108 | 5959 | 66958 | SH | CALL | DEFINED | 7,11 | 66958 | 0 | 0 |
| GENERAL DYNAMICS COR | COM | 369550108 | 30693 | 344900 | SH | CALL | DEFINED | 15,16,24 | 344900 | 0 | 0 |
| GENERAL DYNAMICS COR | COM | 369550108 | 4610 | 51800 | SH | CALL | DEFINED | 16,24,25 | 51800 | 0 | 0 |
| GENERAL DYNAMICS COR | COM | 369550108 | 11195 | 125800 | SH | PUT | DEFINED | 15,16,24 | 125800 | 0 | 0 |
| GENERAL DYNAMICS COR | COM | 369550108 | 10559 | 118658 | SH | PUT | DEFINED | 16,24,25 | 118658 | 0 | 0 |
| GENERAL ELECTRIC CO | COM | 369604103 | 6451 | 174010 | SH | | DEFINED | 12 | 0 | 0 | 174010 |
| GENERAL ELECTRIC CO | COM | 369604103 | 454 | 12250 | SH | | DEFINED | 30 | 12250 | 0 | 0 |
| GENERAL ELECTRIC CO | COM | 369604103 | 5100 | 137586 | SH | | DEFINED | 3,9 | 0 | 0 | 137586 |
| GENERAL ELECTRIC CO | COM | 369604103 | 307961 | 8307563 | SH | | DEFINED | 7,11 | 3765478 | 22450 | 4519635 |
| GENERAL ELECTRIC CO | COM | 369604103 | 2169 | 58500 | SH | | DEFINED | 16,24 | 58500 | 0 | 0 |
| GENERAL ELECTRIC CO | COM | 369604103 | 20614 | 556092 | SH | | DEFINED | 7,11,13 | 467522 | 0 | 88570 |
| GENERAL ELECTRIC CO | COM | 369604103 | 2902 | 78287 | SH | | DEFINED | 7,11,33 | 0 | 0 | 78287 |
| GENERAL ELECTRIC CO | COM | 369604103 | 935876 | 25246189 | SH | | DEFINED | 16,24,25 | 20541848 | 0 | 4704340 |
| GENERAL ELECTRIC CO | COM | 369604103 | 107182 | 2891335 | SH | | DEFINED | 32,40,41 | 2891335 | 0 | 0 |
| GENERAL ELECTRIC CO | COM | 369604103 | 9795 | 264225 | SH | | DEFINED | 5-7,11,43,44 | 0 | 264225 | 0 |
| GENERAL ELECTRIC CO | COM | 369604103 | 23258 | 627420 | SH | | DEFINED | 16,19,24,26,27 | 627420 | 0 | 0 |
| GENERAL ELECTRIC CO | COM | 369604103 | 20546 | 554247 | SH | | DEFINED | 2,6,7,10-11,18,20,21,28 | 554247 | 0 | 0 |
| GENERAL ELECTRIC CO | COM | 369604103 | 217396 | 5864467 | SH | CALL | DEFINED | 7,11 | 5864467 | 0 | 0 |
| GENERAL ELECTRIC CO | COM | 369604103 | 133715 | 3607100 | SH | CALL | DEFINED | 15,16,24 | 3607100 | 0 | 0 |
| GENERAL ELECTRIC CO | COM | 369604103 | 49778 | 1342800 | SH | CALL | DEFINED | 16,24,25 | 1342800 | 0 | 0 |
| GENERAL ELECTRIC CO | COM | 369604103 | 37070 | 1000000 | SH | CALL | DEFINED | 16,19,24,26,27 | 1000000 | 0 | 0 |
| GENERAL ELECTRIC CO | COM | 369604103 | 10770 | 290532 | SH | PUT | DEFINED | 7,11 | 290532 | 0 | 0 |
| GENERAL ELECTRIC CO | COM | 369604103 | 113497 | 3061700 | SH | PUT | DEFINED | 15,16,24 | 3061700 | 0 | 0 |
| GENERAL ELECTRIC CO | COM | 369604103 | 70134 | 1891821 | SH | PUT | DEFINED | 16,24,25 | 1891821 | 0 | 100 |
| GENERAL GROWTH PPTYS | COM | 370021107 | 1063 | 25822 | SH | | DEFINED | 7,11 | 19447 | 3200 | 3175 |
| GENERAL GROWTH PPTYS | COM | 370021107 | 15694 | 381100 | SH | | DEFINED | 14,31 | 381100 | 0 | 0 |
| GENERAL GROWTH PPTYS | COM | 370021107 | 3 | 75 | SH | | DEFINED | 7,11,13 | 75 | 0 | 0 |
| GENERAL GROWTH PPTYS | COM | 370021107 | 1621 | 39354 | SH | | DEFINED | 16,24,25 | 35212 | 0 | 4142 |
| GENERAL GROWTH PPTYS | COM | 370021107 | 11695 | 283993 | SH | | DEFINED | 32,40,41 | 283993 | 0 | 0 |
| GENERAL GROWTH PPTYS | COM | 370021107 | 232 | 5639 | SH | | DEFINED | 16,19,24,26,27 | 5639 | 0 | 0 |
| GENERAL MLS INC | COM | 370334104 | 26306 | 461511 | SH | | DEFINED | 7,11 | 314453 | 0 | 147058 |
| GENERAL MLS INC | COM | 370334104 | 2374 | 41657 | SH | | DEFINED | 7,11,13 | 40957 | 0 | 700 |
| GENERAL MLS INC | COM | 370334104 | 20 | 350 | SH | | DEFINED | 7,11,33 | 0 | 0 | 350 |
| GENERAL MLS INC | COM | 370334104 | 6988 | 122602 | SH | | DEFINED | 15,16,24 | 122602 | 0 | 0 |
| GENERAL MLS INC | COM | 370334104 | 28037 | 491869 | SH | | DEFINED | 16,24,25 | 387076 | 0 | 104793 |
| GENERAL MLS INC | COM | 370334104 | 9581 | 168096 | SH | | DEFINED | 32,40,41 | 168096 | 0 | 0 |
| GENERAL MLS INC | COM | 370334104 | 4207 | 73800 | SH | CALL | DEFINED | 15,16,24 | 73800 | 0 | 0 |
| GENERAL MLS INC | COM | 370334104 | 4725 | 82900 | SH | CALL | DEFINED | 16,24,25 | 82900 | 0 | 0 |
| GENERAL MLS INC | COM | 370334104 | 11069 | 194200 | SH | PUT | DEFINED | 15,16,24 | 194200 | 0 | 0 |
| GENERAL MLS INC | COM | 370334104 | 4959 | 87000 | SH | PUT | DEFINED | 16,24,25 | 87000 | 0 | 0 |
| GENERAL MTRS CORP | COM | 370442105 | 105212 | 4227088 | SH | | DEFINED | 7,11 | 4223670 | 0 | 3418 |
| GENERAL MTRS CORP | COM | 370442105 | 105 | 4233 | SH | | DEFINED | 7,11,13 | 220 | 0 | 4013 |
| GENERAL MTRS CORP | COM | 370442105 | 79921 | 3210987 | SH | | DEFINED | 16,24,25 | 3072831 | 0 | 138155 |
| GENERAL MTRS CORP | COM | 370442105 | 1688 | 67819 | SH | | DEFINED | 32,40,41 | 67819 | 0 | 0 |
| GENERAL MTRS CORP | COM | 370442105 | 2651 | 106517 | SH | | DEFINED | 16,19,24,26,27 | 106517 | 0 | 0 |
| GENERAL MTRS CORP | COM | 370442105 | 115526 | 4641481 | SH | | DEFINED | 7,11 | 4641481 | 0 | 0 |
| GENERAL MTRS CORP | COM | 370442105 | 64562 | 2593900 | SH | CALL | DEFINED | 15,16,24 | 2593900 | 0 | 0 |
| GENERAL MTRS CORP | COM | 370442105 | 29507 | 1185500 | SH | CALL | DEFINED | 16,24,25 | 1185500 | 0 | 0 |
| GENERAL MTRS CORP | COM | 370442105 | 15982 | 642100 | SH | PUT | DEFINED | 7,11 | 642100 | 0 | 0 |
| GENERAL MTRS CORP | COM | 370442105 | 77288 | 3105200 | SH | PUT | DEFINED | 15,16,24 | 3105200 | 0 | 0 |
| GENERAL MTRS CORP | COM | 370442105 | 35664 | 1432870 | SH | PUT | DEFINED | 16,24,25 | 1432870 | 0 | 0 |
| GENERAL MTRS CORP | SENIOR DEB | 370442691 | 390789 | 16155000 | SH | | DEFINED | 7,11 | 16155000 | 0 | 0 |
| GENERAL MTRS CORP | DEB SR CV | 370442717 | 20612 | 1050000 | SH | | DEFINED | 31,45 | 1050000 | 0 | 0 |
| GENERAL MTRS CORP | DEB SR CV | 370442717 | 619 | 31547 | SH | | DEFINED | 16,24,25 | 30284 | 0 | 1262 |
| GENERAL MTRS CORP | DEB SR CV | 370442717 | 13741 | 700000 | SH | | DEFINED | 16,19,24,26,27 | 700000 | 0 | 0 |
| GENERAL MTRS CORP | DEB SR CON | 370442733 | 208925 | 10847586 | SH | | DEFINED | 16,24,25 | 10845913 | 0 | 1673 |
| GENEREX BIOTECHNOLOG | COM | 371485103 | 2 | 1000 | SH | | DEFINED | 7,11,13 | 1000 | 0 | 0 |

```
GENEREX BIOTECHNOLOG COM        371485103    13     8000 SH   DEFINED              16,24,25      5000      0     3000
GENEREX BIOTECHNOLOG COM        371485103     6     3600 SH   DEFINED              5-7,11,43,44     0   3600        0
GENESCO INC          COM        371532102   227     6010 SH   DEFINED              16,24,25      5995      0       15
GENESEE & WYO INC    CL A       37155910S   772    31939 SH   DEFINED              16,24,25     28083      0     3856
GENESIS LEASE LTD    ADR        31837I107   938    50000 SH   DEFINED              7,11        50000      0        0
GENESIS LEASE LTD    ADR        31837T107     9      485 SH   DEFINED              7,11,33         0      0      485
GENESIS LEASE LTD    ADR        31837I107  8141   433977 SH   DEFINED              16,24,25    362727      0    71250
GENESIS MICROCHIP IN COM        31184C103   148    17240 SH   DEFINED              15,16,24     17240      0        0
GENESIS MICROCHIP IN COM        31184C103    64     7451 SH   DEFINED              16,24,25      7351      0      100
GENESIS MICROCHIP IN COM        31184C103   524    61200 SH   CALL DEFINED         15,16,24     61200      0        0
GENESIS MICROCHIP IN COM        31184C103    73     8500 SH   CALL DEFINED         16,24,25      8500      0        0
GENESIS MICROCHIP IN COM        31184C103    16     1900 SH   PUT DEFINED          15,16,24      1900      0        0
GENESIS MICROCHIP IN COM        31184C103    29     3400 SH   PUT DEFINED          16,24,25      3400      0        0
GENEVA ACQUISITION C *W EXP 02/ 37185Y112    26    77600 SH   DEFINED              16,24,25     77600      0        0
GENTEX CORP          COM        371901109   153     8623 SH   DEFINED              7,11         8623      0        0
GENTEX CORP          COM        371901109    87     4915 SH   DEFINED              16,24,25      3469      0     1446
GENTEX CORP          COM        371901109   622    35000 SH   CALL DEFINED         16,24,25     35000      0        0
GENESIS ENERGY L P   UNIT LTD P 37192T104  2343    99685 SH   DEFINED              16,24,25     60315      0    39370
GENITOPE CORP        COM        37229P507     4     5292 SH   DEFINED              15,16,24      5292      0        0
GENITOPE CORP        COM        37229P507     5     6332 SH   DEFINED              16,24,25      5032      0     1300
GENLYTE GROUP INC    COM        372302109   353     3708 SH   DEFINED              7,11         3708      0        0
GENLYTE GROUP INC    COM        372302109  5144    54030 SH   DEFINED              16,24,25     53195      0      835
GENVEC INC           COM        37246C109    26    18009 SH   DEFINED              16,24,25     18009      0        0
GENUINE PARTS CO     COM        372460105  2082    44960 SH   DEFINED              7,11        12410      0    32550
GENUINE PARTS CO     COM        372460105  1192    25747 SH   DEFINED              7,11,13      25525      0      222
GENUINE PARTS CO     COM        372460105 10734   231831 SH   DEFINED              16,24,25    215841      0    15989
GENUINE PARTS CO     COM        372460105  2043    44123 SH   DEFINED              32,40,41     44123      0        0
GENTIVA HEALTH SERVI COM        37247A102    93     4900 SH   DEFINED              30           4900      0        0
GENTIVA HEALTH SERVI COM        37247A102   490    25732 SH   DEFINED              16,24,25     17823      0     7909
GENWORTH FINL INC    COM CL A   37247D106  8456   332264 SH   DEFINED              7,11        332264      0        0
GENWORTH FINL INC    COM CL A   37247D106  4699   184628 SH   DEFINED              16,24,25    144296      0    40331
GENWORTH FINL INC    COM CL A   37247D106   324    12745 SH   DEFINED              32,40,41     12745      0        0
GENWORTH FINL INC    COM CL A   37247D106 210879  8286000 SH  DEFINED              7,11       8286000      0        0
GENWORTH FINL INC    COM CL A   37247D106 175758  6906000 SH  CALL DEFINED         16,24      6906000      0        0
GENWORTH FINL INC    COM CL A   37247D106  4634   182100 SH   CALL DEFINED         16,24,25    182100      0        0
GENWORTH FINL INC    COM CL A   37247D106   433    17000 SH   PUT DEFINED          16,24,25     17000      0        0
GEOEYE INC           COM        37250W108  1128    33513 SH   DEFINED              16,24,25     33393      0      120
GENZYME CORP         NOTE 1.25  372917AN4   735   638000 PRN  DEFINED              16,24,25    638000      0        0
GENZYME CORP         COM        372917104    15      198 SH   DEFINED              3,9           0         0      198
GENZYME CORP         COM        372917104  3320    44594 SH   DEFINED              7,11        44354      0      240
GENZYME CORP         COM        372917104    24      325 SH   DEFINED              7,11,13       325       0        0
GENZYME CORP         COM        372917104   470     6320 SH   DEFINED              7,11,33        0        0     6320
GENZYME CORP         COM        372917104  1567    21044 SH   DEFINED              15,16,24     21044      0        0
GENZYME CORP         COM        372917104 215239  2891449 SH  DEFINED              16,24,25   2635058      0   256391
GENZYME CORP         COM        372917104  3558    47803 SH   DEFINED              32,40,41     47803      0        0
GENZYME CORP         COM        372917104    20      271 SH   DEFINED              2,6,7,10-11,18,20,21,28  271   0    0
GENZYME CORP         COM        372917104  4164    55932 SH   CALL DEFINED         7,11        55932      0        0
GENZYME CORP         COM        372917104 13347   179300 SH   CALL DEFINED         15,16,24    179300      0        0
GENZYME CORP         COM        372917104  4191    56300 SH   CALL DEFINED         16,24,25     56300      0        0
GENZYME CORP         COM        372917104 16444   220900 SH   PUT DEFINED          15,16,24    220900      0        0
GENZYME CORP         COM        372917104 11727   157532 SH   PUT DEFINED          16,24,25    157532      0        0
GEORGIA GULF CORP    COM PAR $0 373200203   596    89991 SH   DEFINED              16,24,25     84724      0     5267
GEORGIA GULF CORP    COM PAR $0 373200203     1      100 SH   CALL DEFINED         16,24,25       100      0        0
GERDAU AMERISTEEL CO COM        37373P105    14     1011 SH   DEFINED              15,16,24      1011      0        0
GERDAU AMERISTEEL CO COM        37373P105   464    32647 SH   DEFINED              16,24,25     27196      0     5451
GERDAU AMERISTEEL CO COM        37373P105    14     1000 SH   CALL DEFINED         15,16,24      1000      0        0
GERDAU S A           SPONSORED  37373T105  2121    73108 SH   DEFINED              7,11        73108      0        0
GERDAU S A           SPONSORED  37373T105  1874    64583 SH   DEFINED              16,24,25     62017      0     2566
GERDAU S A           SPONSORED  37373T105    52     1800 SH   DEFINED              32,40,41      1800      0        0
GERDAU S A           SPONSORED  37373T105   267     9191 SH   DEFINED              16,19,24,26,27 9191     0        0
GERON CORP           COM        374163103  2842   500395 SH   DEFINED              15,16,24    500395      0        0
GERON CORP           COM        374163103   559    98485 SH   DEFINED              16,24,25     90250      0     8235
GERON CORP           COM        374163103   415    73100 SH   CALL DEFINED         15,16,24     73100      0        0
GERON CORP           COM        374163103  2805   493800 SH   PUT DEFINED          15,16,24    493800      0        0
GETTY IMAGES INC     COM        374276103  1928    66477 SH   DEFINED              7,11        66477      0        0
GETTY IMAGES INC     COM        374276103  2740    94485 SH   DEFINED              16,24,25     90078      0     4407
GETTY RLTY CORP NEW  COM        374297109   254     9523 SH   DEFINED              16,24,25      6722      0     2801
GETTY RLTY CORP NEW  COM        374297109   240     8988 SH   DEFINED              32,40,41      8988      0        0
GEVITY HR INC        COM        374393106   120    15614 SH   DEFINED              16,24,25     15614      0        0
GIANT INTERACTIVE GR ADR        374511103   406    31312 SH   DEFINED              16,24,25     28418      0     2894
GILEAD SCIENCES INC  COM        375558103  1205    26180 SH   DEFINED              30          26180      0        0
GILEAD SCIENCES INC  COM        375558103 10336   224637 SH   DEFINED              7,11       219377      0     5260
GILEAD SCIENCES INC  COM        375558103   746    16205 SH   DEFINED              16,24       16205      0        0
GILEAD SCIENCES INC  COM        375558103    56     1222 SH   DEFINED              7,11,13      1222       0        0
GILEAD SCIENCES INC  COM        375558103   261     5680 SH   DEFINED              7,11,33        0        0     5680
GILEAD SCIENCES INC  COM        375558103 103053 2239801 SH   DEFINED              16,24,25   1894545      0   345256
GILEAD SCIENCES INC  COM        375558103 17079   371201 SH   DEFINED              32,40,41    371201      0        0
GILEAD SCIENCES INC  COM        375558103  1700    36958 SH   DEFINED              2,6,7,10-11,18,20,21,28  36958  0  0
GILEAD SCIENCES INC  COM        375558103 10200   221695 SH   CALL DEFINED         7,11       221695      0        0
GILEAD SCIENCES INC  COM        375558103 21395   465000 SH   CALL DEFINED         15,16,24    465000      0        0
GILEAD SCIENCES INC  COM        375558103  3961    86100 SH   CALL DEFINED         16,24,25     86100      0        0
GILEAD SCIENCES INC  COM        375558103 18192   395400 SH   PUT DEFINED          15,16,24    395400      0        0
GILEAD SCIENCES INC  COM        375558103 13991   304095 SH   PUT DEFINED          16,24,25    304095      0        0
GILDAN ACTIVEWEAR IN COM        375916103   552    13415 SH   DEFINED              16,24,25     11521      0     1894
GILDAN ACTIVEWEAR IN COM        375916103  3517    85445 SH   DEFINED              32,40,41     85445      0        0
GILDAN ACTIVEWEAR IN COM        375916103    68     1654 SH   DEFINED              4,6,7,11      1654      0        0
GLACIER BANCORP INC  COM        37637Q105   225    11992 SH   DEFINED              16,24,25      5366      0     6626
GLADSTONE CAPITAL CO COM        376535100    30     1753 SH   DEFINED              16,24         1753      0        0
GLADSTONE CAPITAL CO COM        376535100  1988   116845 SH   DEFINED              16,24,25    111688      0     5156
GLADSTONE COML CORP  COM        376536108  1340    76373 SH   DEFINED              16,24,25     74558      0     1815
GLADSTONE COML CORP  COM        376536108    34     1925 SH   DEFINED              32,40,41      1925      0        0
GLADSTONE INVT CORP  COM        376546107  1849   184494 SH   DEFINED              16,24,25    176555      0    11939
GLATFELTER           COM        377316104     2      150 SH   DEFINED              7,11,13       150       0        0
GLATFELTER           COM        377316104   322    21042 SH   DEFINED              16,24,25     19470      0     1572
GLAXOSMITHKLINE PLC  SPONSORED  37733W105   115     2287 SH   DEFINED              12            0         0     2287
GLAXOSMITHKLINE PLC  SPONSORED  37733W105   999    19830 SH   DEFINED              30          19830      0        0
GLAXOSMITHKLINE PLC  SPONSORED  37733W105  3588    71209 SH   DEFINED              7,11          0        0    71209
GLAXOSMITHKLINE PLC  SPONSORED  37733W105   619    12288 SH   DEFINED              7,11,13      12039      0      249
GLAXOSMITHKLINE PLC  SPONSORED  37733W105    61     1220 SH   DEFINED              7,11,33        0        0     1220
GLAXOSMITHKLINE PLC  SPONSORED  37733W105  7956   157881 SH   DEFINED              15,16,24    157881      0        0
GLAXOSMITHKLINE PLC  SPONSORED  37733W105 72938  1447469 SH   DEFINED              16,24,25   1250526      0   196943
GLAXOSMITHKLINE PLC  SPONSORED  37733W105   102     2025 SH   DEFINED              5-7,11,43,44     0   2025        0
GLAXOSMITHKLINE PLC  SPONSORED  37733W105 76603  1520208 SH   DEFINED              16,19,24,26,29 1520208  0      0
GLAXOSMITHKLINE PLC  SPONSORED  37733W105 11776   233700 SH   CALL DEFINED         15,16,24    233700      0        0
GLAXOSMITHKLINE PLC  SPONSORED  37733W105   166     3300 SH   CALL DEFINED         16,24,25      3300      0        0
GLAXOSMITHKLINE PLC  SPONSORED  37733W105 15727   312100 SH   PUT DEFINED          15,16,24    312100      0        0
GLAXOSMITHKLINE PLC  SPONSORED  37733W105   559    11100 SH   PUT DEFINED          16,24,25     11100      0        0
GLOBAL CASH ACCESS H COM        378967103   139    23003 SH   DEFINED              16,24,25     20346      0     2657
GLOBAL INCOME&CURREN COM        378968101   384    21891 SH   DEFINED              16,24,25     21741      0      150
GLIMCHER RLTY TR     SH BEN INT 379302102    15     1024 SH   DEFINED              16,24,25      1024      0        0
GLIMCHER RLTY TR     SH BEN INT 379302102   263    18407 SH   DEFINED              32,40,41     18407      0        0
GLOBAL HIGH INCOME F COM        37933G108   732    54242 SH   DEFINED              16,24,25     45572      0     8670
GLOBAL INDS LTD      COM        379336100  3490   162942 SH   DEFINED              7,11        162942      0        0
GLOBAL INDS LTD      COM        379336100    23     1065 SH   DEFINED              16,24         1065      0        0
```

```
GLOBAL INDS LTD       COM      379336100    21     1000 SH   DEFINED    7,11,13        1000      0       0
GLOBAL INDS LTD       COM      379336100    703   32826 SH   DEFINED    16,24,25      32774      0      52
GLOBAL INDS LTD       COM      379336100    319   14900 SH   DEFINED    32,40,41      14900      0       0
GLOBAL PMTS INC       COM      37940X102    660   14179 SH   DEFINED    7,11          13779      0     400
GLOBAL PMTS INC       COM      37940X102     30     655 SH   DEFINED    7,11,13           0      0     655
GLOBAL PMTS INC       COM      37940X102  32859  706341 SH   DEFINED    16,24,25     540396      0  165945
GLOBAL LOGISTICS ACQ *W EXP 02/ 379414113    56  215300 SH   DEFINED    16,24,25     215300      0       0
GMX RES INC           COM      38011M108    243    7535 SH   DEFINED    16,24,25       7352      0     183
GMARKET INC           SPON ADR 38012G100    371   14906 SH   DEFINED    16,24,25      14097      0     809
GOL LINHAS AEREAS IN SP ADR REP 38045R107   2287   92145 SH   DEFINED    7,11          92145      0       0
GOL LINHAS AEREAS IN SP ADR REP 38045R107    681   27418 SH   DEFINED    15,16,24      27418      0       0
GOL LINHAS AEREAS IN SP ADR REP 38045R107   4993  201151 SH   DEFINED    16,24,25     198192      0    2959
GOL LINHAS AEREAS IN SP ADR REP 38045R107     28    1110 SH   DEFINED    32,40,41       1110      0       0
GOL LINHAS AEREAS IN SP ADR REP 38045R107    962   38761 SH   DEFINED    16,19,24,26,27 38761     0       0
GOL LINHAS AEREAS IN SP ADR REP 38045R107    846   34100 SH   CALL DEFINED 15,16,24     34100      0       0
GOL LINHAS AEREAS IN SP ADR REP 38045R107   2135   86000 SH   PUT  DEFINED 7,11        86000      0       0
GOL LINHAS AEREAS IN SP ADR REP 38045R107   1700   68500 SH   PUT  DEFINED 16,24,25    68500      0       0
GOLD FIELDS LTD NEW   SPONSORED 38059T106    406   28600 SH   DEFINED    30            28600      0       0
GOLD FIELDS LTD NEW   SPONSORED 38059T106    373   26271 SH   DEFINED    7,11          24648      0    1623
GOLD FIELDS LTD NEW   SPONSORED 38059T106   3974  279861 SH   DEFINED    15,16,24     279861      0       0
GOLD FIELDS LTD NEW   SPONSORED 38059T106   9981  702881 SH   DEFINED    16,24,25     671941      0   30940
GOLD FIELDS LTD NEW   SPONSORED 38059T106     49    3450 SH   DEFINED    5-7,11,43,44      0   3450       0
GOLD FIELDS LTD NEW   SPONSORED 38059T106  45849 3228780 SH   DEFINED    16,19,24,26,27 3228780   0       0
GOLD FIELDS LTD NEW   SPONSORED 38059T106  72409 5099200 SH   CALL DEFINED 7,11       5099200      0       0
GOLD FIELDS LTD NEW   SPONSORED 38059T106   6515  458800 SH   CALL DEFINED 15,16,24    458800      0       0
GOLD FIELDS LTD NEW   SPONSORED 38059T106   5373  378400 SH   CALL DEFINED 16,24,25    378400      0       0
GOLD FIELDS LTD NEW   SPONSORED 38059T106  14289 1006300 SH   PUT  DEFINED 15,16,24   1006300      0       0
GOLD FIELDS LTD NEW   SPONSORED 38059T106   4687  330100 SH   PUT  DEFINED 16,24,25    330100      0       0
GOLDCORP INC NEW      COM      380956409    482   14200 SH   DEFINED    30            14200      0       0
GOLDCORP INC NEW      COM      380956409    810   23887 SH   DEFINED    7,11          23887      0       0
GOLDCORP INC NEW      COM      380956409  23489  692291 SH   DEFINED    15,16,24     692291      0       0
GOLDCORP INC NEW      COM      380956409  25219  743273 SH   DEFINED    16,24,25     670107      0   73166
GOLDCORP INC NEW      COM      380956409    709   20899 SH   DEFINED    32,40,41      20899      0       0
GOLDCORP INC NEW      COM      380956409   1469   43301 SH   DEFINED    4,6,7,11      43301      0       0
GOLDCORP INC NEW      COM      380956409     38    1120 SH   DEFINED    5-7,11,43,44      0   1120       0
GOLDCORP INC NEW      COM      380956409  52700 1553200 SH   CALL DEFINED 15,16,24   1553200      0       0
GOLDCORP INC NEW      COM      380956409  17773  523800 SH   CALL DEFINED 16,24,25    523800      0       0
GOLDCORP INC NEW      COM      380956409  74537 2196800 SH   PUT  DEFINED 15,16,24   2196800      0       0
GOLDCORP INC NEW      COM      380956409   6447  190000 SH   PUT  DEFINED 16,24,25    190000      0       0
GOLDEN STAR RES LTD   COM      38119T104    141   44500 SH   DEFINED    16,24,25      38000      0    6500
GOLDEN STAR RES LTD   COM      38119T104      3    1000 SH   CALL DEFINED 16,24,25     1000      0       0
GOLDEN TELECOM INC    COM      38122G107   1316   13039 SH   DEFINED    7,11          13039      0       0
GOLDEN TELECOM INC    COM      38122G107   1514   15000 SH   DEFINED    31,45         15000      0       0
GOLDEN TELECOM INC    COM      38122G107   1402   13889 SH   DEFINED    16,24,25      13861      0      28
GOLDMAN SACHS GROUP   COM      38141G104   1230    5720 SH   DEFINED    12               0      0    5720
GOLDMAN SACHS GROUP   COM      38141G104  50320  233993 SH   DEFINED    7,11         163015    125   70853
GOLDMAN SACHS GROUP   COM      38141G104   4095   19040 SH   DEFINED    7,11,13       15430      0    3610
GOLDMAN SACHS GROUP   COM      38141G104    455    2115 SH   DEFINED    7,11,33           0      0    2115
GOLDMAN SACHS GROUP   COM      38141G104 111189  517037 SH   DEFINED    16,24,25     449230      0   67807
GOLDMAN SACHS GROUP   COM      38141G104  27339  127128 SH   DEFINED    32,40,41     127128      0       0
GOLDMAN SACHS GROUP   COM      38141G104    225    1048 SH   DEFINED    5-7,11,43,44      0   1048       0
GOLDMAN SACHS GROUP   COM      38141G104   6363   29589 SH   DEFINED    16,19,24,26,27 29589      0       0
GOLDMAN SACHS GROUP   COM      38141G104 1585994 7375000 SH   CALL DEFINED 7,11      7375000      0       0
GOLDMAN SACHS GROUP   COM      38141G104 143159  665700 SH   CALL DEFINED 15,16,24    665700      0       0
GOLDMAN SACHS GROUP   COM      38141G104 121288  564000 SH   CALL DEFINED 16,24,25    564000      0       0
GOLDMAN SACHS GROUP   COM      38141G104 191308  889600 SH   PUT  DEFINED 15,16,24    889600      0       0
GOLDMAN SACHS GROUP   COM      38141G104 261931 1218000 SH   PUT  DEFINED 16,24,25   1218000      0       0
GOLF TR AMER INC      COM      38168B103     22   11000 SH   DEFINED    16,24,25      11000      0       0
GOODRICH CORP         COM      382388106   1069   15141 SH   DEFINED    7,11          11364      0    3777
GOODRICH CORP         COM      382388106   1500   21245 SH   DEFINED    7,11,13       20995      0     250
GOODRICH CORP         COM      382388106  11643  164887 SH   DEFINED    16,24,25     148052      0   16835
GOODYEAR TIRE & RUBR COM      382550101    472    6684 SH   DEFINED    32,40,41       6684      0       0
GOODYEAR TIRE & RUBR COM      382550101    462   16388 SH   DEFINED    7,11          15388      0    1000
GOODYEAR TIRE & RUBR COM      382550101  13109  464540 SH   DEFINED    16,24,25     358656      0  105883
GOODYEAR TIRE & RUBR COM      382550101    976   34569 SH   DEFINED    32,40,41      34569      0       0
GOODYEAR TIRE & RUBR COM      382550101  12200  432300 SH   CALL DEFINED 15,16,24    432300      0       0
GOODYEAR TIRE & RUBR COM      382550101  41520 1471300 SH   CALL DEFINED 16,24,25   1471300      0       0
GOODYEAR TIRE & RUBR COM      382550101    564   20000 SH   PUT  DEFINED 7,11        20000      0       0
GOODYEAR TIRE & RUBR COM      382550101   9713  344200 SH   PUT  DEFINED 15,16,24    344200      0       0
GOODYEAR TIRE & RUBR COM      382550101   4225  149700 SH   PUT  DEFINED 16,24,25    149700      0       0
GOOGLE INC            CL A     38259P508   1171    1694 SH   DEFINED    30             1694      0       0
GOOGLE INC            CL A     38259P508    553     800 SH   DEFINED    3,9               0      0     800
GOOGLE INC            CL A     38259P508 237155  342967 SH   DEFINED    7,11         342107      0     860
GOOGLE INC            CL A     38259P508    454     656 SH   DEFINED    7,11,13         648      0       8
GOOGLE INC            CL A     38259P508    443     640 SH   DEFINED    7,11,33           0      0     640
GOOGLE INC            CL A     38259P508 131986  190874 SH   DEFINED    16,24,25     158352      0   32522
GOOGLE INC            CL A     38259P508  68231   98674 SH   DEFINED    32,40,41      98674      0       0
GOOGLE INC            CL A     38259P508    139     201 SH   DEFINED    5-7,11,43,44      0    201       0
GOOGLE INC            CL A     38259P508   4278    6187 SH   DEFINED    16,19,24,26,27 6187      0       0
GOOGLE INC            CL A     38259P508   6151    8896 SH   DEFINED    2,6,7,10-11,18,20,21,28 8896  0   0
GOOGLE INC            CL A     38259P508 277115  400756 SH   CALL DEFINED 7,11        400756      0       0
GOOGLE INC            CL A     38259P508 253635  366800 SH   CALL DEFINED 15,16,24    366800      0       0
GOOGLE INC            CL A     38259P508  53617   77539 SH   CALL DEFINED 16,24,25     77539      0       0
GOOGLE INC            CL A     38259P508 191540  277000 SH   PUT  DEFINED 16,24,25    277000      0       0
GOOGLE INC            CL A     38259P508  15666   22656 SH   PUT  DEFINED 16,24,25     22656      0       0
GORMAN RUPP CO        COM      383082104    359   11516 SH   DEFINED    7,11          11516      0       0
GORMAN RUPP CO        COM      383082104     28     897 SH   DEFINED    7,11,13         897      0       0
GORMAN RUPP CO        COM      383082104   2713   86956 SH   DEFINED    16,24,25      54620      0   32336
GRACE W R & CO DEL N  COM      38388F108     29    1125 SH   DEFINED    15,16,24       1125      0       0
GRACE W R & CO DEL N  COM      38388F108     54    2060 SH   DEFINED    16,24,25       1585      0     475
GRACE W R & CO DEL N  COM      38388F108   4409  168400 SH   CALL DEFINED 15,16,24    168400      0       0
GRACE W R & CO DEL N  COM      38388F108   3019  115300 SH   PUT  DEFINED 15,16,24    115300      0       0
GRACO INC             COM      384109104     90    2409 SH   DEFINED    7,11            809      0    1600
GRACO INC             COM      384109104    328    8805 SH   DEFINED    7,11,13        8805      0       0
GRACO INC             COM      384109104    961   25804 SH   DEFINED    16,24,25      20604      0    5200
GRAFTECH INTL LTD     COM      384313102     24    1357 SH   DEFINED    7,11              0      0    1357
GRAFTECH INTL LTD     COM      384313102     46    2600 SH   DEFINED    7,11,13        2600      0       0
GRAFTECH INTL LTD     COM      384313102   1767   99558 SH   DEFINED    16,24,25      87585      0   11973
GRAHAM CORP           COM      384556106    360    6879 SH   DEFINED    16,24,25       5558      0    1321
GRAINGER W W INC      COM      384802104   2922   33388 SH   DEFINED    7,11          24588      0    8800
GRAINGER W W INC      COM      384802104    341    3900 SH   DEFINED    7,11,13        3175      0     725
GRAINGER W W INC      COM      384802104     43     495 SH   DEFINED    7,11,33           0      0     495
GRAINGER W W INC      COM      384802104   9782  111766 SH   DEFINED    16,24,25      97434      0   14332
GRAINGER W W INC      COM      384802104    190    2175 SH   DEFINED    32,40,41       2175      0       0
GRAMERCY CAP CORP     COM      384871109     27    1117 SH   DEFINED    16,24         1117      0       0
GRAMERCY CAP CORP     COM      384871109   3256  133954 SH   DEFINED    16,24,25     115657      0   18297
GRANITE CONSTR INC    COM      387328107     53    1475 SH   DEFINED    30             1475      0       0
GRANITE CONSTR INC    COM      387328107    173    4793 SH   DEFINED    7,11           4793      0       0
GRANITE CONSTR INC    COM      387328107  14401  398051 SH   DEFINED    16,24,25     396311      0    1740
GRANT PRIDECO INC     COM      38821G101   1599   28800 SH   DEFINED    42            28800      0       0
GRANT PRIDECO INC     COM      38821G101    556   10012 SH   DEFINED    7,11          10012      0       0
GRANT PRIDECO INC     COM      38821G101    833   15000 SH   DEFINED    31,45         15000      0       0
GRANT PRIDECO INC     COM      38821G101     18     316 SH   DEFINED    7,11,13         316      0       0
GRANT PRIDECO INC     COM      38821G101    133    2390 SH   DEFINED    7,11,33           0      0    2390
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| GRANT PRIDECO INC | COM | 38821G101 | 91274 | 1644272 | SH | DEFINED | 16,24,25 | 1513805 | 0 | 130467 |
| GRANT PRIDECO INC | COM | 38821G101 | 258 | 4654 | SH | DEFINED | 32,40,41 | 4654 | 0 | 0 |
| GRANT PRIDECO INC | COM | 38821G101 | 8299 | 149500 | SH | CALL | DEFINED | 15,16,24 | 149500 | 0 | 0 |
| GRANT PRIDECO INC | COM | 38821G101 | 577 | 10400 | SH | DEFINED | 16,24,25 | 10400 | 0 | 0 |
| GRANT PRIDECO INC | COM | 38821G101 | 11457 | 206400 | SH | PUT | DEFINED | 15,16,24 | 206400 | 0 | 0 |
| GRANT PRIDECO INC | COM | 38821G101 | 577 | 10400 | SH | DEFINED | 16,24,25 | 10400 | 0 | 0 |
| GRAY TELEVISION INC | COM | 389375106 | 377 | 47000 | SH | DEFINED | 16,24,25 | 47000 | 0 | 0 |
| GREAT NORTHN IRON OR CTFS BEN I | 391064102 | 339 | 2651 | SH | DEFINED | 16,24,25 | 2118 | 0 | 533 |
| GREAT PLAINS ENERGY | COM | 391164100 | 2737 | 93351 | SH | DEFINED | 16,24,25 | 89913 | 0 | 3438 |
| GREAT WOLF RESORTS I | COM | 391523107 | 17 | 1757 | SH | DEFINED | 16,24,25 | 1757 | 0 | 0 |
| GREAT WOLF RESORTS I | COM | 391523107 | 491 | 50000 | SH | CALL | DEFINED | 7,11 | 50000 | 0 | 0 |
| GREATER CHINA FD INC | COM | 39167B102 | 116 | 4690 | SH | DEFINED | 7,11,33 | 0 | 0 | 4690 |
| GREATER CHINA FD INC | COM | 39167B102 | 1258 | 50691 | SH | DEFINED | 16,24,25 | 41685 | 0 | 9006 |
| GREEN MTN COFFEE ROA | COM | 393122106 | 6743 | 165678 | SH | DEFINED | 16,24,25 | 127792 | 0 | 37886 |
| GREENHILL & CO INC | COM | 395259104 | 16 | 239 | SH | DEFINED | 7,11 | 0 | 0 | 239 |
| GREENHILL & CO INC | COM | 395259104 | 4279 | 64368 | SH | DEFINED | 16,24,25 | 62565 | 0 | 1803 |
| GREIF INC | CL A | 397624107 | 7 | 100 | SH | DEFINED | 7,11 | 0 | 0 | 100 |
| GREIF INC | CL A | 397624107 | 39 | 600 | SH | DEFINED | 7,11,13 | 600 | 0 | 0 |
| GREIF INC | CL A | 397624107 | 884 | 13528 | SH | DEFINED | 16,24,25 | 12265 | 0 | 1262 |
| GREY WOLF INC | COM | 397888108 | 1647 | 309037 | SH | DEFINED | 7,11 | 309037 | 0 | 0 |
| GREY WOLF INC | COM | 397888108 | 24 | 4493 | SH | DEFINED | 16,24,25 | 3993 | 0 | 500 |
| GREY WOLF INC | COM | 397888108 | 640 | 120100 | SH | CALL | DEFINED | 15,16,24 | 120100 | 0 | 0 |
| GREY WOLF INC | COM | 397888108 | 132 | 24700 | SH | CALL | DEFINED | 16,24,25 | 24700 | 0 | 0 |
| GREY WOLF INC | COM | 397888108 | 490 | 92000 | SH | PUT | DEFINED | 15,16,24 | 92000 | 0 | 0 |
| GRIFFON CORP | COM | 398433102 | 947 | 76050 | SH | DEFINED | 16,24 | 76050 | 0 | 0 |
| GRIFFON CORP | COM | 398433102 | 35 | 2840 | SH | DEFINED | 16,24,25 | 1200 | 0 | 1640 |
| GROUP 1 AUTOMOTIVE I | COM | 398905109 | 898 | 37821 | SH | DEFINED | 16,24,25 | 29180 | 0 | 8641 |
| GROUPE CGI INC | CL A SUB V | 39945C109 | 180 | 15460 | SH | DEFINED | 7,11 | 0 | 0 | 15460 |
| GROUPE CGI INC | CL A SUB V | 39945C109 | 215 | 18506 | SH | DEFINED | 16,24,25 | 17991 | 0 | 515 |
| GROUPE CGI INC | CL A SUB V | 39945C109 | 109 | 9350 | SH | DEFINED | 32,40,41 | 9350 | 0 | 0 |
| GROUPE CGI INC | CL A SUB V | 39945C109 | 209 | 17949 | SH | DEFINED | 4,6,7,11 | 17949 | 0 | 0 |
| GRUPO FINANCIERO GAL | SP ADR 10 | 399909100 | 236 | 31141 | SH | DEFINED | 30 | 31141 | 0 | 0 |
| GRUPO FINANCIERO GAL | SP ADR 10 | 399909100 | 584 | 77058 | SH | DEFINED | 16,24,25 | 54058 | 0 | 23000 |
| GRUPO FINANCIERO GAL | SP ADR 10 | 399909100 | 12 | 1530 | SH | DEFINED | 32,40,41 | 1530 | 0 | 0 |
| GRUBB&ELLIS RLTY ADV | *W EXP 02/ | 400096111 | 55 | 341900 | SH | DEFINED | 16,24,25 | 341900 | 0 | 0 |
| GRUMA SAB DE CV | SPON ADR C | 400131306 | 215 | 16079 | SH | DEFINED | 16,24,25 | 14525 | 0 | 1554 |
| GRUPO TELEVISA SA DE | SP ADR REP | 40049J206 | 475 | 20000 | SH | DEFINED | 7,11 | 0 | 0 | 20000 |
| GRUPO TELEVISA SA DE | SP ADR REP | 40049J206 | 6 | 265 | SH | DEFINED | 7,11,33 | 0 | 0 | 265 |
| GRUPO TELEVISA SA DE | SP ADR REP | 40049J206 | 1196 | 50316 | SH | DEFINED | 15,16,24 | 50316 | 0 | 0 |
| GRUPO TELEVISA SA DE | SP ADR REP | 40049J206 | 2164 | 91026 | SH | DEFINED | 16,24,25 | 70068 | 0 | 20958 |
| GRUPO TELEVISA SA DE | SP ADR REP | 40049J206 | 29 | 1200 | SH | DEFINED | 32,40,41 | 1200 | 0 | 0 |
| GRUPO TELEVISA SA DE | SP ADR REP | 40049J206 | 247 | 10400 | SH | CALL | DEFINED | 15,16,24 | 10400 | 0 | 0 |
| GRUPO TELEVISA SA DE | SP ADR REP | 40049J206 | 1899 | 79900 | SH | PUT | DEFINED | 15,16,24 | 79900 | 0 | 0 |
| GRUPO SIMEC S A B DE | ADR | 40049I106 | 534 | 51600 | SH | DEFINED | 8,38 | 51600 | 0 | 0 |
| GRUPO SIMEC S A B DE | ADR | 40049I106 | 148 | 14340 | SH | DEFINED | 16,24,25 | 12518 | 0 | 1822 |
| GRUPO TMM S A B | SP ADR A S | 40051D105 | 326 | 144933 | SH | DEFINED | 16,24,25 | 16533 | 0 | 128400 |
| GRUPO AEROPORTUARIO | SPON ADR S | 40051E202 | 50 | 817 | SH | DEFINED | 7,11 | 817 | 0 | 0 |
| GRUPO AEROPORTUARIO | SPON ADR S | 40051E202 | 698 | 11402 | SH | DEFINED | 16,24,25 | 8695 | 0 | 2707 |
| GRUPO AEROPORTUARIO | SPON ADR S | 40051E202 | 8 | 135 | SH | DEFINED | 32,40,41 | 135 | 0 | 0 |
| GTX INC DEL | COM | 40052B108 | 653 | 45538 | SH | DEFINED | 16,24,25 | 21838 | 0 | 23700 |
| GUARANTY FINL GROUP | COM | 40108N106 | 10 | 600 | SH | DEFINED | 7,11 | 0 | 0 | 600 |
| GUARANTY FINL GROUP | COM | 40108N106 | 432 | 27000 | SH | DEFINED | 16,24 | 27000 | 0 | 0 |
| GUARANTY FINL GROUP | COM | 40108N106 | 1428 | 89230 | SH | DEFINED | 16,24,25 | 85686 | 0 | 3544 |
| GUESS INC | COM | 401617105 | 25 | 668 | SH | DEFINED | 7,11 | 668 | 0 | 0 |
| GUESS INC | COM | 401617105 | 1288 | 33990 | SH | DEFINED | 16,24,25 | 33096 | 0 | 894 |
| GUESS INC | COM | 401617105 | 311 | 8200 | SH | DEFINED | 32,40,41 | 8200 | 0 | 0 |
| GULF ISLAND FABRICAT | COM | 402307102 | 232 | 7313 | SH | DEFINED | 16,24,25 | 5804 | 0 | 1509 |
| GULFMARK OFFSHORE IN | COM | 402629109 | 113 | 2414 | SH | DEFINED | 16,24,25 | 2342 | 0 | 72 |
| GULFMARK OFFSHORE IN | COM | 402629109 | 309 | 6600 | SH | DEFINED | 5-7,11,43,44 | 0 | 6600 | 0 |
| GULFPORT ENERGY CORP | COM NEW | 402635304 | 91 | 4975 | SH | DEFINED | 30 | 4975 | 0 | 0 |
| GULFPORT ENERGY CORP | COM NEW | 402635304 | 5 | 300 | SH | DEFINED | 16,24 | 300 | 0 | 0 |
| GULFPORT ENERGY CORP | COM NEW | 402635304 | 108 | 5904 | SH | DEFINED | 16,24,25 | 5904 | 0 | 0 |
| GYMBOREE CORP | COM | 403777105 | 680 | 22312 | SH | DEFINED | 16,24,25 | 21420 | 0 | 892 |
| H & Q HEALTHCARE FD | SH BEN INT | 404052102 | 16 | 951 | SH | DEFINED | 7,11,13 | 951 | 0 | 0 |
| H & Q HEALTHCARE FD | SH BEN INT | 404052102 | 2213 | 133885 | SH | DEFINED | 16,24,25 | 113919 | 0 | 19966 |
| H & Q LIFE SCIENCES | SH BEN INT | 404053100 | 1938 | 146252 | SH | DEFINED | 7,11,13 | 142902 | 0 | 3350 |
| H & Q LIFE SCIENCES | SH BEN INT | 404053100 | 4 | 283 | SH | DEFINED | 7,11,33 | 0 | 0 | 283 |
| H & Q LIFE SCIENCES | SH BEN INT | 404053100 | 3512 | 265082 | SH | DEFINED | 16,24,25 | 231733 | 0 | 33349 |
| HCC INS HLDGS INC | NOTE 1.30 | 40413ZAB8 | 30372 | 23296000 | PRN | DEFINED | 16,24,25 | 23296000 | 0 | 0 |
| HCC INS HLDGS INC | COM | 404132102 | 130 | 4530 | SH | DEFINED | 30 | 4530 | 0 | 0 |
| HCC INS HLDGS INC | COM | 404132102 | 16 | 575 | SH | DEFINED | 7,11 | 575 | 0 | 0 |
| HCC INS HLDGS INC | COM | 404132102 | 610 | 21265 | SH | DEFINED | 7,11,33 | 0 | 0 | 21265 |
| HCC INS HLDGS INC | COM | 404132102 | 53184 | 1854388 | SH | DEFINED | 16,24,25 | 1610085 | 0 | 244303 |
| HCP INC | COM | 40414L109 | 83 | 2400 | SH | DEFINED | 12 | 0 | 0 | 2400 |
| HCP INC | COM | 40414L109 | 7292 | 209672 | SH | DEFINED | 7,11 | 9897 | 0 | 199775 |
| HCP INC | COM | 40414L109 | 3478 | 100000 | SH | DEFINED | 14,31 | 100000 | 0 | 0 |
| HCP INC | COM | 40414L109 | 890 | 25590 | SH | DEFINED | 7,11,13 | 24665 | 0 | 925 |
| HCP INC | COM | 40414L109 | 70 | 2000 | SH | DEFINED | 7,11,33 | 0 | 0 | 2000 |
| HCP INC | COM | 40414L109 | 4810 | 138303 | SH | DEFINED | 16,24,25 | 96976 | 0 | 41326 |
| HCP INC | COM | 40414L109 | 21400 | 615306 | SH | DEFINED | 32,40,41 | 615306 | 0 | 0 |
| HDFC BANK LTD | ADR REPS 3 | 40415F101 | 1477 | 11320 | SH | DEFINED | 16,24,25 | 9324 | 0 | 1996 |
| HDFC BANK LTD | ADR REPS 3 | 40415F101 | 352 | 2700 | SH | DEFINED | 16,17,22,24 | 2700 | 0 | 0 |
| HD PARTNERS ACQUISIT | COM | 40415K100 | 2762 | 369300 | SH | DEFINED | 16,24,25 | 369300 | 0 | 0 |
| HD PARTNERS ACQUISIT | *W EXP 06/ | 40415K118 | 274 | 338600 | SH | DEFINED | 16,24,25 | 338600 | 0 | 0 |
| HLTH CORPORATION | COM | 40422Y101 | 5497 | 410234 | SH | DEFINED | 7,11 | 410234 | 0 | 0 |
| HLTH CORPORATION | COM | 40422Y101 | 88 | 6600 | SH | DEFINED | 7,11,13 | 6600 | 0 | 0 |
| HLTH CORPORATION | COM | 40422Y101 | 50 | 3746 | SH | DEFINED | 15,16,24 | 3746 | 0 | 0 |
| HLTH CORPORATION | COM | 40422Y101 | 13145 | 980980 | SH | DEFINED | 16,24,25 | 183731 | 0 | 797249 |
| HLTH CORPORATION | COM | 40422Y101 | 88 | 6600 | SH | DEFINED | 32,40,41 | 6600 | 0 | 0 |
| HLTH CORPORATION | COM | 40422Y101 | 3757 | 280400 | SH | CALL | DEFINED | 15,16,24 | 280400 | 0 | 0 |
| HLTH CORPORATION | COM | 40422Y101 | 139 | 10400 | SH | CALL | DEFINED | 16,24,25 | 10400 | 0 | 0 |
| HLTH CORPORATION | COM | 40422Y101 | 2789 | 208100 | SH | PUT | DEFINED | 15,16,24 | 208100 | 0 | 0 |
| HLTH CORPORATION | COM | 40422Y101 | 730 | 54500 | SH | PUT | DEFINED | 15,16,24 | 54500 | 0 | 0 |
| HNI CORP | COM | 404251100 | 21 | 593 | SH | DEFINED | 7,11 | 593 | 0 | 0 |
| HNI CORP | COM | 404251100 | 14 | 400 | SH | DEFINED | 7,11,13 | 400 | 0 | 0 |
| HNI CORP | COM | 404251100 | 396 | 11294 | SH | DEFINED | 16,24,25 | 10794 | 0 | 500 |
| HRPT PPTYS TR | COM SH BEN | 40426W101 | 53 | 6800 | SH | DEFINED | 30 | 6800 | 0 | 0 |
| HRPT PPTYS TR | COM SH BEN | 40426W101 | 7 | 850 | SH | DEFINED | 7,11,13 | 850 | 0 | 0 |
| HRPT PPTYS TR | COM SH BEN | 40426W101 | 1451 | 187701 | SH | DEFINED | 16,24,25 | 172652 | 0 | 15049 |
| HRPT PPTYS TR | COM SH BEN | 40426W101 | 865 | 111906 | SH | DEFINED | 32,40,41 | 111906 | 0 | 0 |
| HSBC HLDGS PLC | SPON ADR N | 404280406 | 181 | 2160 | SH | DEFINED | 30 | 2160 | 0 | 0 |
| HSBC HLDGS PLC | SPON ADR N | 404280406 | 222 | 2650 | SH | DEFINED | 7,11 | 0 | 0 | 2650 |
| HSBC HLDGS PLC | SPON ADR N | 404280406 | 126 | 1508 | SH | DEFINED | 7,11,13 | 1508 | 0 | 0 |
| HSBC HLDGS PLC | SPON ADR N | 404280406 | 19 | 231 | SH | DEFINED | 7,11,33 | 0 | 0 | 231 |
| HSBC HLDGS PLC | SPON ADR N | 404280406 | 12369 | 147757 | SH | DEFINED | 16,17,22,24 | 120912 | 0 | 26845 |
| HSBC HLDGS PLC | SPON ADR N | 404280406 | 6109 | 73000 | SH | DEFINED | 16,17,22,24 | 73000 | 0 | 0 |
| HSBC HLDGS PLC | SPON ADR N | 404280406 | 48 | 570 | SH | DEFINED | 5-7,11,43,44 | 0 | 570 | 0 |
| HSBC HLDGS PLC | SPON ADR N | 404280406 | 41481 | 495531 | SH | DEFINED | 16,19,24,26,29 | 495531 | 0 | 0 |
| HSBC HLDGS PLC | SPON ADR N | 404280406 | 2511 | 30000 | SH | CALL | DEFINED | 7,11 | 30000 | 0 | 0 |
| HSBC HLDGS PLC | SPON ADR N | 404280406 | 4361 | 52100 | SH | CALL | DEFINED | 15,16,24 | 52100 | 0 | 0 |
| HSBC HLDGS PLC | SPON ADR N | 404280406 | 2511 | 30000 | SH | PUT | DEFINED | 7,11 | 30000 | 0 | 0 |
| HSBC HLDGS PLC | SPON ADR N | 404280406 | 2269 | 27100 | SH | PUT | DEFINED | 15,16,24 | 27100 | 0 | 0 |
| HSBC HLDGS PLC | SPON ADR N | 404280406 | 26427 | 315700 | SH | PUT | DEFINED | 15,16,24 | 315700 | 0 | 0 |
| HSBC HLDGS PLC | ADR A 1/40 | 404280604 | 1985 | 97459 | SH | DEFINED | 16,24,25 | 62250 | 0 | 35209 |

| Security | Type | CUSIP | Val | Shares | Unit | Opt | Class | Categories | V1 | V2 | V3 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HAIN CELESTIAL GROUP | COM | 405217100 | 941 | 29392 | SH | | DEFINED | 7,11 | 29392 | 0 | 0 |
| HAIN CELESTIAL GROUP | COM | 405217100 | 10 | 300 | SH | | DEFINED | 7,11,13 | 300 | 0 | 0 |
| HAIN CELESTIAL GROUP | COM | 405217100 | 17 | 540 | SH | | DEFINED | 7,11,33 | 0 | 0 | 540 |
| HAIN CELESTIAL GROUP | COM | 405217100 | 13578 | 424298 | SH | | DEFINED | 16,24,25 | 382735 | 0 | 41563 |
| HAIN CELESTIAL GROUP | COM | 405217100 | 320 | 10000 | SH | | DEFINED | 32,40,41 | 10000 | 0 | 0 |
| HALLIBURTON CO | NOTE 3.12 | 406216AM3 | 18236 | 9000000 | PRN | | DEFINED | 31,45 | 9000000 | 0 | 0 |
| HALLIBURTON CO | NOTE 3.12 | 406216AM3 | 76965 | 37984000 | PRN | | DEFINED | 16,24,25 | 37984000 | 0 | 0 |
| HALLIBURTON CO | COM | 406216101 | 1312 | 34600 | SH | | DEFINED | 30 | 34600 | 0 | 0 |
| HALLIBURTON CO | COM | 406216101 | 53899 | 1421762 | SH | | DEFINED | 7,11 | 1402566 | 0 | 19196 |
| HALLIBURTON CO | COM | 406216101 | 2919 | 76999 | SH | | DEFINED | 7,11,13 | 76369 | 0 | 630 |
| HALLIBURTON CO | COM | 406216101 | 393 | 10354 | SH | | DEFINED | 7,11,33 | 0 | 0 | 10354 |
| HALLIBURTON CO | COM | 406216101 | 190784 | 5032543 | SH | | DEFINED | 16,24,25 | 4260381 | 0 | 772161 |
| HALLIBURTON CO | COM | 406216101 | 1034 | 27278 | SH | | DEFINED | 32,40,41 | 27278 | 0 | 0 |
| HALLIBURTON CO | COM | 406216101 | 222 | 5845 | SH | | DEFINED | 5-7,11,43,44 | 0 | 5845 | 0 |
| HALLIBURTON CO | COM | 406216101 | 37485 | 988800 | SH | CALL | DEFINED | 15,16,24 | 988800 | 0 | 0 |
| HALLIBURTON CO | COM | 406216101 | 18913 | 498900 | SH | CALL | DEFINED | 16,24,25 | 498900 | 0 | 0 |
| HALLIBURTON CO | COM | 406216101 | 19645 | 518200 | SH | PUT | DEFINED | 15,16,24 | 518200 | 0 | 0 |
| HALLIBURTON CO | COM | 406216101 | 14527 | 383200 | SH | PUT | DEFINED | 16,24,25 | 383200 | 0 | 0 |
| HALOZYME THERAPEUTIC | COM | 40637H109 | 322 | 45250 | SH | | DEFINED | 16,24,25 | 43850 | 0 | 1400 |
| JOHN HANCOCK BK &THR | SH BEN INT | 409735107 | 809 | 130719 | SH | | DEFINED | 31,45 | 130719 | 0 | 0 |
| JOHN HANCOCK BK &THR | SH BEN INT | 409735107 | 20 | 3225 | SH | | DEFINED | 7,11,13 | 3225 | 0 | 0 |
| JOHN HANCOCK BK &THR | SH BEN INT | 409735107 | 3892 | 628768 | SH | | DEFINED | 16,24,25 | 467965 | 0 | 160802 |
| HANCOCK HLDG CO | COM | 410120109 | 185 | 4850 | SH | | DEFINED | 7,11,13 | 4850 | 0 | 0 |
| HANCOCK HLDG CO | COM | 410120109 | 29 | 747 | SH | | DEFINED | 16,24,25 | 547 | 0 | 200 |
| HANCOCK JOHN INCOME | COM | 410123103 | 390 | 30322 | SH | | DEFINED | 16,24,25 | 16890 | 0 | 13432 |
| HANCOCK JOHN INCOME | COM | 410123103 | 50 | 3900 | SH | | DEFINED | 16,19,24,26,27 | 3900 | 0 | 0 |
| HANCOCK JOHN PATRIOT | COM SH BEN | 410137105 | 6296 | 631474 | SH | | DEFINED | 16,24,25 | 566255 | 0 | 65219 |
| HANCOCK JOHN PATRIOT | COM SH BEN | 410137105 | 287 | 28738 | SH | | DEFINED | 16,19,24,26,27 | 28738 | 0 | 0 |
| HANCOCK JOHN TAX-ADV | COM | 41013V100 | 4656 | 260095 | SH | | DEFINED | 16,24,25 | 237812 | 0 | 22282 |
| HANCOCK JOHN TAX-ADV | COM | 41013V100 | 347 | 19400 | SH | | DEFINED | 16,19,24,26,27 | 19400 | 0 | 0 |
| HANCOCK JOHN PFD INC | SH BEN INT | 41013W108 | 3977 | 209658 | SH | | DEFINED | 16,24,25 | 191277 | 0 | 18381 |
| HANCOCK JOHN PFD INC | COM | 41013X106 | 3557 | 189991 | SH | | DEFINED | 16,24,25 | 182891 | 0 | 7100 |
| HANCOCK JOHN INVS TR | COM | 410142103 | 274 | 16139 | SH | | DEFINED | 16,24,25 | 13059 | 0 | 3080 |
| HANCOCK JOHN PFD INC | COM | 41021PJ03 | 8723 | 483519 | SH | | DEFINED | 16,24,25 | 467905 | 0 | 15614 |
| HANCOCK JOHN PFD INC | COM | 41021PJ03 | 70 | 3900 | SH | | DEFINED | 16,19,24,26,27 | 3900 | 0 | 0 |
| HANDLEMAN CO DEL | COM | 410252100 | 20 | 11500 | SH | | DEFINED | 16,24,25 | 11500 | 0 | 0 |
| HANESBRANDS INC | COM | 410345102 | 5475 | 201514 | SH | | DEFINED | 7,11 | 197864 | 0 | 3650 |
| HANESBRANDS INC | COM | 410345102 | 98 | 3600 | SH | | DEFINED | 7,11,13 | 3600 | 0 | 0 |
| HANESBRANDS INC | COM | 410345102 | 11 | 387 | SH | | DEFINED | 7,11,33 | 0 | 0 | 387 |
| HANESBRANDS INC | COM | 410345102 | 260 | 9582 | SH | | DEFINED | 15,16,24 | 9582 | 0 | 0 |
| HANESBRANDS INC | COM | 410345102 | 389 | 14303 | SH | | DEFINED | 16,24,25 | 10553 | 0 | 3750 |
| HANESBRANDS INC | COM | 410345102 | 6019 | 221529 | SH | | DEFINED | 32,40,41 | 221529 | 0 | 0 |
| HANOVER COMPRESSOR C | NOTE 4.75 | 410768AC9 | 99 | 100000 | PRN | | DEFINED | 16,24,25 | 100000 | 0 | 0 |
| HANSEN MEDICAL INC | COM | 411307101 | 859 | 28701 | SH | | DEFINED | 16,24,25 | 27608 | 0 | 1093 |
| HANSEN NAT CORP | COM | 411310105 | 217 | 4893 | SH | | DEFINED | 7,11 | 4893 | 0 | 0 |
| HANSEN NAT CORP | COM | 411310105 | 629 | 14197 | SH | | DEFINED | 7,11,13 | 14197 | 0 | 0 |
| HANSEN NAT CORP | COM | 411310105 | 50 | 1120 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1120 |
| HANSEN NAT CORP | COM | 411310105 | 6001 | 135486 | SH | | DEFINED | 16,24,25 | 115652 | 0 | 19834 |
| HANSEN NAT CORP | COM | 411310105 | 86 | 1953 | SH | | DEFINED | 32,40,41 | 1953 | 0 | 0 |
| HANSEN NAT CORP | COM | 411310105 | 664 | 15000 | SH | | DEFINED | 5-7,11,43,44 | 0 | 15000 | 0 |
| HANSEN NAT CORP | COM | 411310105 | 2454 | 55400 | SH | CALL | DEFINED | 15,16,24 | 55400 | 0 | 0 |
| HANSEN NAT CORP | COM | 411310105 | 726 | 16400 | SH | PUT | DEFINED | 15,16,24 | 16400 | 0 | 0 |
| HARBIN ELECTRIC INC | COM | 41145W109 | 12 | 470 | SH | | DEFINED | 16,24 | 470 | 0 | 0 |
| HARBIN ELECTRIC INC | COM | 41145W109 | 501 | 19299 | SH | | DEFINED | 16,24,25 | 19233 | 0 | 66 |
| HARBOR ACQUISITION C | *W EXP 04/ | 41145X115 | 261 | 900000 | SH | | DEFINED | 16,24,25 | 900000 | 0 | 0 |
| HARLEY DAVIDSON INC | COM | 412822108 | 1215 | 26006 | SH | | DEFINED | 7,11 | 26006 | 0 | 0 |
| HARLEY DAVIDSON INC | COM | 412822108 | 1140 | 24410 | SH | | DEFINED | 7,11,13 | 24375 | 0 | 35 |
| HARLEY DAVIDSON INC | COM | 412822108 | 151 | 3235 | SH | | DEFINED | 7,11,33 | 0 | 0 | 3235 |
| HARLEY DAVIDSON INC | COM | 412822108 | 14054 | 300887 | SH | | DEFINED | 16,24,25 | 231359 | 0 | 69527 |
| HARLEY DAVIDSON INC | COM | 412822108 | 348 | 7452 | SH | | DEFINED | 32,40,41 | 7452 | 0 | 0 |
| HARLEY DAVIDSON INC | COM | 412822108 | 56 | 1200 | SH | | DEFINED | 5-7,11,43,44 | 0 | 1200 | 0 |
| HARLEY DAVIDSON INC | COM | 412822108 | 12775 | 273500 | SH | CALL | DEFINED | 15,16,24 | 273500 | 0 | 0 |
| HARLEY DAVIDSON INC | COM | 412822108 | 500 | 10700 | SH | CALL | DEFINED | 16,24,25 | 10700 | 0 | 0 |
| HARLEY DAVIDSON INC | COM | 412822108 | 7333 | 157000 | SH | PUT | DEFINED | 15,16,24 | 157000 | 0 | 0 |
| HARLEY DAVIDSON INC | COM | 412822108 | 504 | 10800 | SH | PUT | DEFINED | 16,24,25 | 10800 | 0 | 0 |
| HARLEYSVILLE GROUP I | COM | 412824104 | 243 | 6882 | SH | | DEFINED | 16,24,25 | 6798 | 0 | 84 |
| HARLEYSVILLE NATL CO | COM | 412850109 | 315 | 21652 | SH | | DEFINED | 16,24,25 | 20457 | 0 | 1195 |
| HARMAN INTL INDS INC | COM | 413086109 | 478 | 6484 | SH | | DEFINED | 7,11 | 6484 | 0 | 0 |
| HARMAN INTL INDS INC | COM | 413086109 | 130 | 1760 | SH | | DEFINED | 7,11,13 | 1760 | 0 | 0 |
| HARMAN INTL INDS INC | COM | 413086109 | 3761 | 51028 | SH | | DEFINED | 15,16,24 | 51028 | 0 | 0 |
| HARMAN INTL INDS INC | COM | 413086109 | 3400 | 46129 | SH | | DEFINED | 16,24,25 | 40239 | 0 | 5889 |
| HARMAN INTL INDS INC | COM | 413086109 | 390 | 5296 | SH | | DEFINED | 32,40,41 | 5296 | 0 | 0 |
| HARMAN INTL INDS INC | COM | 413086109 | 14609 | 198200 | SH | CALL | DEFINED | 15,16,24 | 198200 | 0 | 0 |
| HARMAN INTL INDS INC | COM | 413086109 | 8108 | 110000 | SH | PUT | DEFINED | 15,16,24 | 110000 | 0 | 0 |
| HARMONIC INC | COM | 413160102 | 66 | 6281 | SH | | DEFINED | 16,24 | 6281 | 0 | 0 |
| HARMONIC INC | COM | 413160102 | 292 | 27843 | SH | | DEFINED | 16,24,25 | 27843 | 0 | 0 |
| HARMONY GOLD MNG LTD | SPONSORED | 413216300 | 5652 | 548214 | SH | | DEFINED | 7,11 | 548214 | 0 | 0 |
| HARMONY GOLD MNG LTD | SPONSORED | 413216300 | 4 | 350 | SH | | DEFINED | 7,11,13 | 350 | 0 | 0 |
| HARMONY GOLD MNG LTD | SPONSORED | 413216300 | 3249 | 315173 | SH | | DEFINED | 15,16,24 | 315173 | 0 | 0 |
| HARMONY GOLD MNG LTD | SPONSORED | 413216300 | 42 | 4116 | SH | | DEFINED | 16,24,25 | 4116 | 0 | 0 |
| HARMONY GOLD MNG LTD | SPONSORED | 413216300 | 6660 | 646000 | SH | | DEFINED | 16,19,24,26,27 | 646000 | 0 | 0 |
| HARMONY GOLD MNG LTD | SPONSORED | 413216300 | 5631 | 546200 | SH | CALL | DEFINED | 15,16,24 | 546200 | 0 | 0 |
| HARMONY GOLD MNG LTD | SPONSORED | 413216300 | 155 | 15000 | SH | CALL | DEFINED | 16,24,25 | 15000 | 0 | 0 |
| HARMONY GOLD MNG LTD | SPONSORED | 413216300 | 11588 | 1124000 | SH | PUT | DEFINED | 15,16,24 | 1124000 | 0 | 0 |
| HARMONY GOLD MNG LTD | SPONSORED | 413216300 | 1547 | 150000 | SH | PUT | DEFINED | 16,24,25 | 150000 | 0 | 0 |
| HARRAHS ENTMT INC | COM | 413619107 | 2786 | 31388 | SH | | DEFINED | 7,11 | 31388 | 0 | 0 |
| HARRAHS ENTMT INC | COM | 413619107 | 131573 | 1482509 | SH | | DEFINED | 16,24 | 1482509 | 0 | 0 |
| HARRAHS ENTMT INC | COM | 413619107 | 52 | 586 | SH | | DEFINED | 7,11,13 | 576 | 0 | 10 |
| HARRAHS ENTMT INC | COM | 413619107 | 63 | 715 | SH | | DEFINED | 7,11,33 | 0 | 0 | 715 |
| HARRAHS ENTMT INC | COM | 413619107 | 107905 | 1215830 | SH | | DEFINED | 16,24,25 | 1215830 | 0 | 0 |
| HARRAHS ENTMT INC | COM | 413619107 | 21853 | 246233 | SH | | DEFINED | 16,24,25 | 222502 | 0 | 23731 |
| HARRAHS ENTMT INC | COM | 413619107 | 6823 | 76884 | SH | | DEFINED | 32,40,41 | 76884 | 0 | 0 |
| HARRAHS ENTMT INC | COM | 413619107 | 15389 | 173400 | SH | CALL | DEFINED | 15,16,24 | 173400 | 0 | 0 |
| HARRAHS ENTMT INC | COM | 413619107 | 3550 | 40000 | SH | CALL | DEFINED | 16,24,25 | 40000 | 0 | 0 |
| HARRAHS ENTMT INC | COM | 413619107 | 74239 | 836500 | SH | PUT | DEFINED | 15,16,24 | 836500 | 0 | 0 |
| HARRIS & HARRIS GROU | COM | 413833104 | 53 | 6079 | SH | | DEFINED | 7,11 | 6079 | 0 | 0 |
| HARRIS & HARRIS GROU | COM | 413833104 | 15 | 1750 | SH | | DEFINED | 7,11,13 | 1750 | 0 | 0 |
| HARRIS & HARRIS GROU | COM | 413833104 | 365 | 41475 | SH | | DEFINED | 16,24,25 | 27741 | 0 | 13734 |
| HARRIS CORP DEL | COM | 413875105 | 793 | 12650 | SH | | DEFINED | 12 | 0 | 0 | 12650 |
| HARRIS CORP DEL | COM | 413875105 | 8446 | 134740 | SH | | DEFINED | 7,11 | 8044 | 0 | 126696 |
| HARRIS CORP DEL | COM | 413875105 | 1017 | 16230 | SH | | DEFINED | 7,11,13 | 9965 | 0 | 6265 |
| HARRIS CORP DEL | COM | 413875105 | 6 | 100 | SH | | DEFINED | 7,11,33 | 0 | 0 | 100 |
| HARRIS CORP DEL | COM | 413875105 | 15036 | 239892 | SH | | DEFINED | 16,24,25 | 191571 | 0 | 48321 |
| HARRIS CORP DEL | COM | 413875105 | 151 | 2405 | SH | | DEFINED | 32,40,41 | 2405 | 0 | 0 |
| HARRIS CORP DEL | COM | 413875105 | 1943 | 31000 | SH | | DEFINED | 16,19,24,26,27 | 31000 | 0 | 0 |
| HARRIS INTERACTIVE I | COM | 414549105 | 96 | 22500 | SH | | DEFINED | 16,24,25 | 22300 | 0 | 200 |
| HARSCO CORP | COM | 415864107 | 64 | 1000 | SH | | DEFINED | 30 | 1000 | 0 | 0 |
| HARSCO CORP | COM | 415864107 | 64 | 1006 | SH | | DEFINED | 7,11 | 1006 | 0 | 0 |
| HARSCO CORP | COM | 415864107 | 1566 | 24446 | SH | | DEFINED | 16,24,25 | 22580 | 0 | 1866 |
| HARSCO CORP | COM | 415864107 | 498 | 7778 | SH | | DEFINED | 32,40,41 | 7778 | 0 | 0 |
| HARTE-HANKS INC | COM | 416196103 | 699 | 40425 | SH | | DEFINED | 7,11 | 425 | 0 | 40000 |
| HARTE-HANKS INC | COM | 416196103 | 350 | 20225 | SH | | DEFINED | 7,11,13 | 19950 | 0 | 275 |
| HARTE-HANKS INC | COM | 416196103 | 79 | 4581 | SH | | DEFINED | 16,24,25 | 4581 | 0 | 0 |
| HARTFORD FINL SVCS G | COM | 416515104 | 1059 | 12150 | SH | | DEFINED | 12 | 0 | 0 | 12150 |

| Name | Class | CUSIP | Col1 | Col2 | Unit | Type | Col3 | Col4 | Col5 | Col6 |
|---|---|---|---|---|---|---|---|---|---|---|
| HARTFORD FINL SVCS G | COM | 416515104 | 22565 | 258799 | SH | DEFINED | 7,11 | 92355 | 1900 | 164544 |
| HARTFORD FINL SVCS G | COM | 416515104 | 1985 | 22770 | SH | DEFINED | 7,11,13 | 2700 | 0 | 20070 |
| HARTFORD FINL SVCS G | COM | 416515104 | 81 | 925 | SH | DEFINED | 7,11,33 | 0 | 0 | 925 |
| HARTFORD FINL SVCS G | COM | 416515104 | 769 | 8818 | SH | DEFINED | 15,16,24 | 8818 | 0 | 0 |
| HARTFORD FINL SVCS G | COM | 416515104 | 41809 | 479513 | SH | DEFINED | 16,24,25 | 383878 | 0 | 95635 |
| HARTFORD FINL SVCS G | COM | 416515104 | 5790 | 66411 | SH | DEFINED | 32,40,41 | 66411 | 0 | 0 |
| HARTFORD FINL SVCS G | COM | 416515104 | 4298 | 49300 | SH | DEFINED | 7,11 | 49300 | 0 | 0 |
| HARTFORD FINL SVCS G | COM | 416515104 | 9364 | 107400 | SH | CALL DEFINED | 15,16,24 | 107400 | 0 | 0 |
| HARTFORD FINL SVCS G | COM | 416515104 | 6034 | 69200 | SH | CALL DEFINED | 16,24,25 | 69200 | 0 | 0 |
| HARTFORD FINL SVCS G | COM | 416515104 | 19757 | 226600 | SH | PUT DEFINED | 15,16,24 | 226600 | 0 | 0 |
| HARTFORD FINL SVCS G | COM | 416515104 | 6949 | 79700 | SH | PUT DEFINED | 16,24,25 | 79700 | 0 | 0 |
| HARTFORD INCOME SHS | COM | 416537108 | 93 | 13700 | SH | DEFINED | 7,11 | 0 | 0 | 13700 |
| HARTFORD INCOME SHS | COM | 416537108 | 5 | 801 | SH | DEFINED | 16,24,25 | 801 | 0 | 0 |
| HARTMAX CORP | COM | 417119104 | 123 | 36150 | SH | DEFINED | 16,24,25 | 28250 | 0 | 7900 |
| HARVEST ENERGY TR | TRUST UNIT | 41752X101 | 2312 | 111300 | SH | DEFINED | 42 | 111300 | 0 | 0 |
| HARVEST ENERGY TR | TRUST UNIT | 41752X101 | 4554 | 219261 | SH | DEFINED | 16,24,25 | 180702 | 0 | 38559 |
| HARVEST ENERGY TR | TRUST UNIT | 41752X101 | 85 | 4105 | SH | DEFINED | 32,40,41 | 4105 | 0 | 0 |
| HARVEST ENERGY TR | TRUST UNIT | 41752X101 | 30 | 1465 | SH | DEFINED | 4,6,7,11 | 1465 | 0 | 0 |
| HARVEST NATURAL RESO | COM | 41754V103 | 30 | 2425 | SH | DEFINED | 15,16,24 | 2425 | 0 | 0 |
| HARVEST NATURAL RESO | COM | 41754V103 | 154 | 12355 | SH | DEFINED | 16,24,25 | 11896 | 0 | 459 |
| HASBRO INC | COM | 418056107 | 30 | 1175 | SH | DEFINED | 12 | 0 | 0 | 1175 |
| HASBRO INC | COM | 418056107 | 279 | 10900 | SH | DEFINED | 3,9 | 0 | 0 | 10900 |
| HASBRO INC | COM | 418056107 | 5980 | 233792 | SH | DEFINED | 7,11 | 149712 | 0 | 84080 |
| HASBRO INC | COM | 418056107 | 58 | 2250 | SH | DEFINED | 7,11,13 | 0 | 0 | 2250 |
| HASBRO INC | COM | 418056107 | 17 | 650 | SH | DEFINED | 7,11,33 | 0 | 0 | 650 |
| HASBRO INC | COM | 418056107 | 4853 | 189721 | SH | DEFINED | 16,24,25 | 175235 | 0 | 14485 |
| HASBRO INC | COM | 418056107 | 152 | 5937 | SH | DEFINED | 32,40,41 | 5937 | 0 | 0 |
| HAVERTY FURNITURE IN | COM | 419596101 | 126 | 13982 | SH | DEFINED | 16,24,25 | 13057 | 0 | 925 |
| HAWAIIAN ELEC INDUST | COM | 419870100 | 214 | 9400 | SH | DEFINED | 7,11 | 0 | 800 | 8600 |
| HAWAIIAN ELEC INDUST | COM | 419870100 | 25 | 1100 | SH | DEFINED | 7,11,13 | 800 | 0 | 300 |
| HAWAIIAN ELEC INDUST | COM | 419870100 | 1620 | 71124 | SH | DEFINED | 16,24,25 | 61892 | 0 | 9232 |
| HAWK CORP | CL A | 420089104 | 186 | 10343 | SH | DEFINED | 16,24,25 | 3343 | 0 | 7000 |
| HAYNES INTERNATIONAL | COM NEW | 420877201 | 409 | 5887 | SH | DEFINED | 16,24,25 | 4662 | 0 | 1225 |
| HEALTHCARE SVCS GRP | COM | 421906108 | 69 | 3263 | SH | DEFINED | 30 | 3263 | 0 | 0 |
| HEALTHCARE SVCS GRP | COM | 421906108 | 2452 | 115769 | SH | DEFINED | 16,24,25 | 104310 | 0 | 11459 |
| HEALTHSOUTH CORP | COM NEW | 421924309 | 1937 | 93241 | SH | DEFINED | 16,24,25 | 63159 | 0 | 29082 |
| HEALTH MGMT ASSOC IN | NOTE 4.37 | 41933AP9 | 9802 | 10002000 | PRN | DEFINED | 16,24,25 | 10002000 | 0 | 0 |
| HEALTH MGMT ASSOC IN | CL A | 421933102 | 69 | 11592 | SH | DEFINED | 7,11 | 11592 | 0 | 0 |
| HEALTH MGMT ASSOC IN | CL A | 421933102 | 880 | 147169 | SH | DEFINED | 16,24,25 | 114465 | 0 | 32703 |
| HEALTH MGMT ASSOC IN | CL A | 421933102 | 18 | 3000 | SH | CALL DEFINED | 16,24,25 | 0 | 0 | 3000 |
| HEALTHCARE RLTY TR | COM | 421946104 | 51 | 2000 | SH | DEFINED | 30 | 2000 | 0 | 0 |
| HEALTHCARE RLTY TR | COM | 421946104 | 51 | 2000 | SH | DEFINED | 7,11,13 | 2000 | 0 | 0 |
| HEALTHCARE RLTY TR | COM | 421946104 | 1037 | 40858 | SH | DEFINED | 16,24,25 | 20515 | 0 | 20343 |
| HEALTHCARE RLTY TR | COM | 421946104 | 12882 | 507357 | SH | DEFINED | 32,40,41 | 507357 | 0 | 0 |
| HEADWATERS INC | NOTE 2.87 | 42210PAB8 | 4147 | 5019000 | PRN | DEFINED | 16,24,25 | 5019000 | 0 | 0 |
| HEADWATERS INC | COM | 42210P102 | 61 | 5170 | SH | DEFINED | 7,11 | 5170 | 0 | 0 |
| HEADWATERS INC | COM | 42210P102 | 750 | 63925 | SH | DEFINED | 7,11,13 | 63925 | 0 | 0 |
| HEADWATERS INC | COM | 42210P102 | 933 | 79433 | SH | DEFINED | 15,16,24 | 79433 | 0 | 0 |
| HEADWATERS INC | COM | 42210P102 | 1510 | 128597 | SH | DEFINED | 16,24,25 | 121132 | 0 | 7465 |
| HEADWATERS INC | COM | 42210P102 | 1007 | 85754 | SH | DEFINED | 16,19,24,26,27 | 85754 | 0 | 0 |
| HEADWATERS INC | COM | 42210P102 | 1043 | 88800 | SH | CALL DEFINED | 15,16,24 | 88800 | 0 | 0 |
| HEADWATERS INC | COM | 42210P102 | 12 | 1000 | SH | CALL DEFINED | 16,24,25 | 1000 | 0 | 0 |
| HEADWATERS INC | COM | 42210P102 | 1651 | 140600 | SH | PUT DEFINED | 15,16,24 | 140600 | 0 | 0 |
| HEALTH CARE REIT INC | COM | 42217K106 | 5 | 122 | SH | DEFINED | 7,11 | 122 | 0 | 0 |
| HEALTH CARE REIT INC | COM | 42217K106 | 13 | 300 | SH | DEFINED | 7,11 | 300 | 0 | 0 |
| HEALTH CARE REIT INC | COM | 42217K106 | 1803 | 40355 | SH | DEFINED | 16,24,25 | 31512 | 0 | 8843 |
| HEALTH CARE REIT INC | COM | 42217K106 | 1826 | 40853 | SH | DEFINED | 32,40,41 | 40853 | 0 | 0 |
| HEALTH GRADES INC | COM | 42218Q102 | 615 | 103360 | SH | DEFINED | 16,24,25 | 101420 | 0 | 1940 |
| HEALTHEXTRAS INC | COM | 42221L102 | 796 | 30509 | SH | DEFINED | 16,24,25 | 27944 | 0 | 2565 |
| HEALTH NET INC | COM | 42222Q108 | 261 | 5400 | SH | DEFINED | 3,9 | 0 | 0 | 5400 |
| HEALTH NET INC | COM | 42222Q108 | 823 | 17046 | SH | DEFINED | 7,11 | 17046 | 0 | 0 |
| HEALTH NET INC | COM | 42222Q108 | 157 | 3250 | SH | DEFINED | 7,11,13 | 3250 | 0 | 0 |
| HEALTH NET INC | COM | 42222Q108 | 3566 | 73825 | SH | DEFINED | 16,24,25 | 53765 | 0 | 20060 |
| HEALTH NET INC | COM | 42222Q108 | 648 | 13423 | SH | DEFINED | 32,40,41 | 13423 | 0 | 0 |
| HEALTHTRONICS INC | COM | 42222L107 | 52 | 11271 | SH | DEFINED | 16,24,25 | 11191 | 0 | 80 |
| HEALTHWAYS INC | COM | 422245100 | 60 | 1025 | SH | DEFINED | 7,11,33 | 0 | 0 | 1025 |
| HEALTHWAYS INC | COM | 422245100 | 769 | 13155 | SH | DEFINED | 16,24,25 | 9580 | 0 | 3575 |
| HEALTHSHARES INC | DIAGNST ID | 42226E109 | 2 | 60 | SH | DEFINED | 16,24 | 60 | 0 | 0 |
| HEALTHSHARES INC | DIAGNST ID | 42226E109 | 3254 | 98638 | SH | DEFINED | 16,24,25 | 95024 | 0 | 3614 |
| HEALTHSHARES INC | COMPOSITE | 42226E760 | 276 | 10331 | SH | DEFINED | 16,24,25 | 8425 | 0 | 1906 |
| HEALTHSHARES INC | ENABLING T | 42226E786 | 268 | 8405 | SH | DEFINED | 16,24,25 | 8074 | 0 | 331 |
| HEARST-ARGYLE TELEVI | COM | 422317107 | 1437 | 65000 | SH | DEFINED | 31,45 | 65000 | 0 | 0 |
| HEARST-ARGYLE TELEVI | COM | 422317107 | 203 | 9185 | SH | DEFINED | 16,24,25 | 7865 | 0 | 1320 |
| HEARTLAND EXPRESS IN | COM | 422347104 | 154 | 10875 | SH | DEFINED | 7,11,13 | 10225 | 0 | 650 |
| HEARTLAND EXPRESS IN | COM | 422347104 | 87 | 6127 | SH | DEFINED | 16,24,25 | 6127 | 0 | 0 |
| HEARTLAND PMT SYS IN | COM | 42235N108 | 480 | 17908 | SH | DEFINED | 16,24,25 | 10432 | 0 | 7476 |
| HECLA MNG CO | COM | 422704106 | 1385 | 148118 | SH | DEFINED | 7,11 | 148118 | 0 | 0 |
| HECLA MNG CO | COM | 422704106 | 5268 | 563469 | SH | DEFINED | 16,24,25 | 543556 | 0 | 19913 |
| HECLA MNG CO | COM | 422704106 | 61 | 6500 | SH | DEFINED | 5-7,11,43,44 | 0 | 6500 | 0 |
| HECLA MNG CO | COM | 422704106 | 1306 | 139700 | SH | CALL DEFINED | 15,16,24 | 139700 | 0 | 0 |
| HECLA MNG CO | COM | 422704106 | 1271 | 135900 | SH | PUT DEFINED | 15,16,24 | 135900 | 0 | 0 |
| HEICO CORP NEW | COM | 422806109 | 220 | 4043 | SH | DEFINED | 16,24,25 | 3652 | 0 | 390 |
| HEINZ H J CO | COM | 423074103 | 5092 | 109085 | SH | DEFINED | 7,11 | 72695 | 0 | 36390 |
| HEINZ H J CO | COM | 423074103 | 1055 | 22590 | SH | DEFINED | 7,11,13 | 21615 | 0 | 975 |
| HEINZ H J CO | COM | 423074103 | 93 | 1985 | SH | DEFINED | 7,11,33 | 0 | 0 | 1985 |
| HEINZ H J CO | COM | 423074103 | 38445 | 823595 | SH | DEFINED | 16,24,25 | 664258 | 0 | 159336 |
| HEINZ H J CO | COM | 423074103 | 516 | 11046 | SH | DEFINED | 32,40,41 | 11046 | 0 | 0 |
| HEINZ H J CO | COM | 423074103 | 140 | 3000 | SH | DEFINED | 5-7,11,43,44 | 0 | 3000 | 0 |
| HEINZ H J CO | COM | 423074103 | 2170 | 46489 | SH | DEFINED | 16,19,24,26,27 | 46489 | 0 | 0 |
| HEINZ H J CO | COM | 423074103 | 3039 | 65100 | SH | CALL DEFINED | 15,16,24 | 65100 | 0 | 0 |
| HEINZ H J CO | COM | 423074103 | 1905 | 40800 | SH | CALL DEFINED | 16,24,25 | 40800 | 0 | 0 |
| HEINZ H J CO | COM | 423074103 | 3618 | 77500 | SH | PUT DEFINED | 15,16,24 | 77500 | 0 | 0 |
| HEINZ H J CO | COM | 423074103 | 1905 | 40800 | SH | PUT DEFINED | 16,24,25 | 40800 | 0 | 0 |
| HELIX ENERGY SOLUTIO | COM | 42330P107 | 36 | 874 | SH | DEFINED | 7,11 | 874 | 0 | 0 |
| HELIX ENERGY SOLUTIO | COM | 42330P107 | 4189 | 100944 | SH | DEFINED | 15,16,24 | 100944 | 0 | 0 |
| HELIX ENERGY SOLUTIO | COM | 42330P107 | 3230 | 77835 | SH | DEFINED | 16,24,25 | 68379 | 0 | 9456 |
| HELIX ENERGY SOLUTIO | COM | 42330P107 | 41500 | 1000000 | SH | DEFINED | 7,11 | 1000000 | 0 | 0 |
| HELIX ENERGY SOLUTIO | COM | 42330P107 | 1013 | 24400 | SH | CALL DEFINED | 15,16,24 | 24400 | 0 | 0 |
| HELIX ENERGY SOLUTIO | COM | 42330P107 | 83000 | 2000000 | SH | PUT DEFINED | 7,11 | 2000000 | 0 | 0 |
| HELIX ENERGY SOLUTIO | COM | 42330P107 | 8615 | 207600 | SH | PUT DEFINED | 15,16,24 | 207600 | 0 | 0 |
| HELMERICH & PAYNE IN | COM | 423452101 | 1157 | 28870 | SH | DEFINED | 7,11 | 28870 | 0 | 0 |
| HELMERICH & PAYNE IN | COM | 423452101 | 4548 | 113493 | SH | DEFINED | 7,11,13 | 112718 | 0 | 775 |
| HELMERICH & PAYNE IN | COM | 423452101 | 4154 | 103671 | SH | DEFINED | 16,24,25 | 99548 | 0 | 4122 |
| HELMERICH & PAYNE IN | COM | 423452101 | 3037 | 75800 | SH | CALL DEFINED | 15,16,24 | 75800 | 0 | 0 |
| HELMERICH & PAYNE IN | COM | 423452101 | 641 | 16000 | SH | CALL DEFINED | 16,24,25 | 16000 | 0 | 0 |
| HELMERICH & PAYNE IN | COM | 423452101 | 2240 | 55900 | SH | PUT DEFINED | 15,16,24 | 55900 | 0 | 0 |
| HELMERICH & PAYNE IN | COM | 423452101 | 849 | 21200 | SH | PUT DEFINED | 16,24,25 | 21200 | 0 | 0 |
| HENRY JACK & ASSOC I | COM | 426281101 | 183 | 7506 | SH | DEFINED | 7,11 | 7506 | 0 | 0 |
| HENRY JACK & ASSOC I | COM | 426281101 | 3879 | 159385 | SH | DEFINED | 7,11,13 | 155535 | 0 | 3850 |
| HENRY JACK & ASSOC I | COM | 426281101 | 3372 | 138549 | SH | DEFINED | 16,24,25 | 126818 | 0 | 11736 |
| HERCULES INC | COM | 427056106 | 127 | 6551 | SH | DEFINED | 7,11 | 3788 | 0 | 2763 |
| HERCULES INC | COM | 427056106 | 14 | 700 | SH | DEFINED | 7,11,13 | 700 | 0 | 0 |
| HERCULES INC | COM | 427056106 | 549 | 28360 | SH | DEFINED | 16,24,25 | 28010 | 0 | 350 |
| HERCULES INC | COM | 427056106 | 2 | 104 | SH | DEFINED | 32,40,41 | 104 | 0 | 0 |

```
HERCULES OFFSHORE IN COM        427093109    5617    236191 SH    DEFINED            7,11    236191       0        0
HERCULES OFFSHORE IN COM        427093109    5561    233846 SH    DEFINED         15,16,24    233846       0        0
HERCULES OFFSHORE IN COM        427093109    6361    267487 SH    DEFINED         16,24,25    243277       0    24210
HERCULES OFFSHORE IN COM        427093109      50      2100 SH    DEFINED      5-7,11,43,44         0    2100        0
HERCULES OFFSHORE IN COM        427093109    2770    116500 SH    CALL DEFINED    15,16,24    116500       0        0
HERCULES OFFSHORE IN COM        427093109    7015    295000 SH    PUT DEFINED     15,16,24    295000       0        0
HERCULES TECH GROWTH COM        427096508    1686    135773 SH    DEFINED         16,24,25    131443       0     4329
HERLEY INDS INC DEL  COM        427398102     465     33800 SH    DEFINED         16,24,25     23800       0    10000
HERSHA HOSPITALITY T SH BEN INT 427825104     162     17000 SH    DEFINED            14,31     17000       0        0
HERSHA HOSPITALITY T SH BEN INT 427825104      10      1000 SH    DEFINED          7,11,13      1000       0        0
HERSHA HOSPITALITY T SH BEN INT 427825104      15      1616 SH    DEFINED         16,24,25       116       0     1500
HERSHA HOSPITALITY T SH BEN INT 427825104     175     18392 SH    DEFINED         32,40,41     18392       0        0
HERSHEY CO           COM        427866108    2696     68419 SH    DEFINED            7,11     33339       0    35080
HERSHEY CO           COM        427866108    1846     46856 SH    DEFINED          7,11,13     44325       0     2531
HERSHEY CO           COM        427866108      23       575 SH    DEFINED          7,11,33       575       0      575
HERSHEY CO           COM        427866108    1801     45718 SH    DEFINED         15,16,24     45718       0        0
HERSHEY CO           COM        427866108   38140    968026 SH    DEFINED         32,40,41    787203       0   180822
HERSHEY CO           COM        427866108     210      5324 SH    DEFINED         32,40,41      5324       0        0
HERSHEY CO           COM        427866108    5449    138300 SH    CALL DEFINED    15,16,24    138300       0        0
HERSHEY CO           COM        427866108     626     15900 SH    CALL DEFINED    15,16,24     15900       0        0
HERSHEY CO           COM        427866108    6607    167700 SH    PUT DEFINED     15,16,24    167700       0        0
HERSHEY CO           COM        427866108     232      5900 SH    PUT DEFINED     16,24,25      5900       0        0
HERTZ GLOBAL HOLDING COM        42805T105   13189    830012 SH    DEFINED              3,9    830012       0        0
HERTZ GLOBAL HOLDING COM        42805T105      39      2481 SH    DEFINED            7,11      2481       0        0
HERTZ GLOBAL HOLDING COM        42805T105     278     17494 SH    DEFINED         16,24,25     14111       0     3383
HERTZ GLOBAL HOLDING COM        42805T105     137      8650 SH    DEFINED         32,40,41      8650       0        0
HESS CORP            COM        42809H107   19577    194100 SH    DEFINED               42    194100       0        0
HESS CORP            COM        42809H107     464      4600 SH    DEFINED              3,9         0       0     4600
HESS CORP            COM        42809H107    9919     98349 SH    DEFINED            7,11     95349       0     3000
HESS CORP            COM        42809H107   78787    781148 SH    DEFINED         16,24,25    667774       0   113374
HESS CORP            COM        42809H107    2890     28652 SH    DEFINED         32,40,41     28652       0        0
HESS CORP            COM        42809H107    1866     18500 SH    CALL DEFINED      7,11     18500       0        0
HESS CORP            COM        42809H107   45760    453700 SH    CALL DEFINED    15,16,24    453700       0        0
HESS CORP            COM        42809H107   14110    139900 SH    CALL DEFINED    16,24,25    139900       0        0
HESS CORP            COM        42809H107    7565     75000 SH    PUT DEFINED        7,11     75000       0        0
HESS CORP            COM        42809H107   38942    386100 SH    PUT DEFINED     15,16,24    386100       0        0
HESS CORP            COM        42809H107   13001    128900 SH    PUT DEFINED     16,24,25    128900       0        0
HEWITT ASSOCS INC    COM        42822Q100      27       714 SH    DEFINED            7,11       714       0        0
HEWITT ASSOCS INC    COM        42822Q100    8628    225344 SH    DEFINED         16,24,25    225344       0        0
HEWITT ASSOCS INC    COM        42822Q100     260      6800 SH    DEFINED         32,40,41      6800       0        0
HEWITT ASSOCS INC    COM        42822Q100    5361    140000 SH    CALL DEFINED    16,24,25    140000       0        0
HEWLETT PACKARD CO   NOTE       42836AC7      17     20000 PRN    DEFINED               12         0       0    20000
HEWLETT PACKARD CO   COM        428236103    2702     53525 SH    DEFINED               12         0       0    53525
HEWLETT PACKARD CO   COM        428236103    1530     30310 SH    DEFINED               30     30310       0        0
HEWLETT PACKARD CO   COM        428236103   12117    240028 SH    DEFINED              3,9         0       0   240028
HEWLETT PACKARD CO   COM        428236103  100691   1994668 SH    DEFINED            7,11   1004835     700   989133
HEWLETT PACKARD CO   COM        428236103    1868     37000 SH    DEFINED            16,24     37000       0        0
HEWLETT PACKARD CO   COM        428236103    6880    136295 SH    DEFINED          7,11,13     98071       0    38224
HEWLETT PACKARD CO   COM        428236103     326      6457 SH    DEFINED          7,11,33         0       0     6457
HEWLETT PACKARD CO   COM        428236103  151739   3005924 SH    DEFINED         16,24,25   2591730       0   414194
HEWLETT PACKARD CO   COM        428236103   19519    386661 SH    DEFINED         32,40,41    386661       0        0
HEWLETT PACKARD CO   COM        428236103    4636     91832 SH    DEFINED      5-7,11,43,44         0   91832        0
HEWLETT PACKARD CO   COM        428236103     153      3026 SH    DEFINED   16,19,24,26,27      3026       0        0
HEWLETT PACKARD CO   COM        428236103    6045    119749 SH    DEFINED 2,6,7,10-11,18,20,21,28  119749   0    0
HEWLETT PACKARD CO   COM        428236103   63983   1267500 SH    CALL DEFINED    15,16,24   1267500       0        0
HEWLETT PACKARD CO   COM        428236103   19329    382900 SH    CALL DEFINED    16,24,25    382900       0        0
HEWLETT PACKARD CO   COM        428236103   35684    706900 SH    PUT DEFINED     15,16,24    706900       0        0
HEWLETT PACKARD CO   COM        428236103   29400    582400 SH    PUT DEFINED     16,24,25    582400       0        0
HEXCEL CORP NEW      COM        428291108       5       200 SH    DEFINED               30       200       0        0
HEXCEL CORP NEW      COM        428291108     175      7227 SH    DEFINED             7,11      7227       0        0
HEXCEL CORP NEW      COM        428291108     662     27245 SH    DEFINED         16,24,25     16345       0    10900
HEXCEL CORP NEW      COM        428291108     323     13300 SH    CALL DEFINED    15,16,24     13300       0        0
HEXCEL CORP NEW      COM        428291108     306     12600 SH    PUT DEFINED     15,16,24     12600       0        0
HI / FN INC          COM        428358105     119     20850 SH    DEFINED         16,24,25     20850       0        0
HI-TECH PHARMACAL IN COM        42840B101     456     46926 SH    DEFINED         16,24,25     43478       0     3448
HIBBETT SPORTS INC   COM        428567101     127      6375 SH    DEFINED          7,11,13      6375       0        0
HIBBETT SPORTS INC   COM        428567101      97      4853 SH    DEFINED         16,24,25      4778       0       75
HICKS ACQUISITION CO *W EXP 09/ 429086127      31     34200 SH    DEFINED         16,24,25         0       0    34200
HICKS ACQUISITION CO COM        429086309     266     28900 SH    DEFINED         16,24,25     28900       0        0
HIGH YIELD INCOME FD COM        429904105     117     24196 SH    DEFINED         16,24,25     23916       0      280
HIGHLAND CR STRATEGI COM        43005Q107    4298    271653 SH    DEFINED         16,24,25    271348       0      305
HIGHLAND DISTRESSED  COM        430067108       3       391 SH    DEFINED            16,24       391       0        0
HIGHLAND DISTRESSED  COM        430067108     444     51787 SH    DEFINED         16,24,25     45886       0     5900
HIGHWOODS PPTYS INC  COM        431284108     167      5668 SH    DEFINED         16,24,25      4126       0     1542
HIGHWOODS PPTYS INC  COM        431284108     791     26926 SH    DEFINED         32,40,41     26926       0        0
HILAND HLDGS GP LP   UNIT LP IN 43129M107    1737     63525 SH    DEFINED         16,24,25     61625       0     1900
HILAND PARTNERS L P  UT LTD PAR 431291103    2095     41453 SH    DEFINED         16,24,25     33028       0     8425
HILB ROGAL & HOBBS C COM        431294107      40      1965 SH    DEFINED               30      1965       0        0
HILB ROGAL & HOBBS C COM        431294107     868     21397 SH    DEFINED         16,24,25     21397       0        0
HILL INTERNATIONAL I COM        431466101    1050     74102 SH    DEFINED         16,24,25     47632       0    26470
HILLENBRAND INDS INC COM        431573104     173      3100 SH    DEFINED            7,11      3100       0        0
HILLENBRAND INDS INC COM        431573104     309      5549 SH    DEFINED          7,11,13      5549       0        0
HILLENBRAND INDS INC COM        431573104    1214     21779 SH    DEFINED         16,24,25     18876       0     2903
HILLENBRAND INDS INC COM        431573104     135      2422 SH    DEFINED         32,40,41      2422       0        0
HIMAX TECHNOLOGIES I SPONSORED  43289P106     173     40503 SH    DEFINED         16,24,25     40503       0        0
HITACHI LIMITED      ADR 10 COM 433758507     328      4490 SH    DEFINED          7,11,13      4415       0       75
HITACHI LIMITED      ADR 10 COM 433758507     475      6498 SH    DEFINED         16,24,25      5180       0     1318
HITACHI LIMITED      ADR 10 COM 433758507       5        75 SH    DEFINED      5-7,11,43,44         0      75        0
HITACHI LIMITED      ADR 10 COM 433758507      37       500 SH    DEFINED 2,6,7,10-11,18,20,21,28   500     0        0
HITTITE MICROWAVE CO COM        43365Y104    1455     24329 SH    DEFINED         16,24,25     24203       0      126
HOLLY CORP           COM PAR $0 435758305      61      1200 SH    DEFINED               30      1200       0        0
HOLLY CORP           COM PAR $0 435758305    3056     60049 SH    DEFINED            7,11     60049       0        0
HOLLY CORP           COM PAR $0 435758305      35       680 SH    DEFINED          7,11,33         0       0      680
HOLLY CORP           COM PAR $0 435758305    2674     52547 SH    DEFINED         15,16,24     52547       0        0
HOLLY CORP           COM PAR $0 435758305    1702     33436 SH    DEFINED         16,24,25     26844       0     6592
HOLLY CORP           COM PAR $0 435758305      97      1900 SH    DEFINED         32,40,41      1900       0        0
HOLLY CORP           COM PAR $0 435758305    1237     24300 SH    CALL DEFINED    15,16,24     24300       0        0
HOLLY CORP           COM PAR $0 435758305    4891     96100 SH    PUT DEFINED     15,16,24     96100       0        0
HOLLIS-EDEN PHARMACE COM        435902101      21     13360 SH    DEFINED         15,16,24     13360       0        0
HOLLIS-EDEN PHARMACE COM        435902101       2      1420 SH    DEFINED         16,24,25      1420       0        0
HOLLIS-EDEN PHARMACE COM        435902101      52     33300 SH    CALL DEFINED    15,16,24     33300       0        0
HOLLIS-EDEN PHARMACE COM        435902101      35     22500 SH    PUT DEFINED     16,24,25     22500       0        0
HOLOGIC INC          FRNT 2.00  436440AA9    6488   6000000 PRN   DEFINED           31,45   6000000       0        0
HOLOGIC INC          FRNT 2.00  436440AA9    7162   6620000 PRN   DEFINED         16,24,25   6620000       0        0
HOLOGIC INC          COM        436440101    8625    125651 SH    DEFINED            7,11    125426       0      225
HOLOGIC INC          COM        436440101      43       624 SH    DEFINED          7,11,33         0       0      624
HOLOGIC INC          COM        436440101    2137     31138 SH    DEFINED         15,16,24     31138       0        0
HOLOGIC INC          COM        436440101   48769    710505 SH    DEFINED         16,24,25    601412       0   109093
HOLOGIC INC          COM        436440101    8470    123391 SH    DEFINED         32,40,41    123391       0        0
HOLOGIC INC          COM        436440101   18787    273750 SH    CALL DEFINED    15,16,24    273750       0        0
HOLOGIC INC          COM        436440101   12080    175991 SH    CALL DEFINED    16,24,25    175991       0        0
HOLOGIC INC          COM        436440101    7433    108291 SH    PUT DEFINED        7,11    108291       0        0
HOLOGIC INC          COM        436440101   13735    200100 SH    PUT DEFINED     16,24,25    200100       0        0
HOLOGIC INC          COM        436440101    3075     44800 SH    PUT DEFINED     16,24,25     44800       0        0
```

| Issuer | Class | CUSIP | | | Unit | Option | Status | Notes | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HOME DEPOT INC | COM | 437076102 | 1141 | 42362 | SH | | DEFINED | 12 | 0 | 0 | 42362 |
| HOME DEPOT INC | COM | 437076102 | 353 | 13100 | SH | | DEFINED | 30 | 13100 | 0 | 0 |
| HOME DEPOT INC | COM | 437076102 | 4140 | 153677 | SH | | DEFINED | 3,9 | 0 | 0 | 153677 |
| HOME DEPOT INC | COM | 437076102 | 42353 | 1572129 | SH | | DEFINED | 7,11 | 765283 | 1626 | 805220 |
| HOME DEPOT INC | COM | 437076102 | 163713 | 6076967 | SH | | DEFINED | 16,24 | 6076967 | 0 | 0 |
| HOME DEPOT INC | COM | 437076102 | 4189 | 155502 | SH | | DEFINED | 7,11,13 | 139052 | 0 | 16450 |
| HOME DEPOT INC | COM | 437076102 | 254 | 9433 | SH | | DEFINED | 7,11,33 | 0 | 0 | 9433 |
| HOME DEPOT INC | COM | 437076102 | 14676 | 544752 | SH | | DEFINED | 15,16,24 | 544752 | 0 | 0 |
| HOME DEPOT INC | COM | 437076102 | 182034 | 6757029 | SH | | DEFINED | 16,24,25 | 5732232 | 0 | 1024797 |
| HOME DEPOT INC | COM | 437076102 | 4775 | 177264 | SH | | DEFINED | 32,40,41 | 177264 | 0 | 0 |
| HOME DEPOT INC | COM | 437076102 | 96 | 3560 | SH | | DEFINED | 5-7,11,43,44 | 0 | 3560 | 0 |
| HOME DEPOT INC | COM | 437076102 | 58 | 2164 | SH | | DEFINED | 16,19,24,26,27 | 2164 | 0 | 0 |
| HOME DEPOT INC | COM | 437076102 | 18516 | 687300 | SH | CALL | DEFINED | 15,16,24 | 687300 | 0 | 0 |
| HOME DEPOT INC | COM | 437076102 | 51975 | 1929300 | SH | CALL | DEFINED | 16,24,25 | 1929200 | 0 | 100 |
| HOME DEPOT INC | COM | 437076102 | 6412 | 238000 | SH | PUT | DEFINED | 7,11 | 238000 | 0 | 0 |
| HOME DEPOT INC | COM | 437076102 | 20895 | 775600 | SH | PUT | DEFINED | 15,16,24 | 775600 | 0 | 0 |
| HOME DEPOT INC | COM | 437076102 | 31372 | 1164500 | SH | PUT | DEFINED | 16,24,25 | 1164500 | 0 | 0 |
| HOME INNS & HOTELS M | SPON ADR | 43713M107 | 1258 | 35304 | SH | | DEFINED | 16,24,25 | 32249 | 0 | 3055 |
| HOME PROPERTIES INC | COM | 437306103 | 4 | 100 | SH | | DEFINED | 7,11,13 | 100 | 0 | 0 |
| HOME PROPERTIES INC | COM | 437306103 | 810 | 18061 | SH | | DEFINED | 16,24,25 | 15186 | 0 | 2875 |
| HOME PROPERTIES INC | COM | 437306103 | 13458 | 300062 | SH | | DEFINED | 32,40,41 | 300062 | 0 | 0 |
| HOME SOLUTIONS AMER | COM | 437355100 | 221 | 221415 | SH | | DEFINED | 16,24,25 | 220515 | 0 | 900 |
| HOME SOLUTIONS AMER | COM | 437355100 | 109 | 109300 | SH | CALL | DEFINED | 15,16,24 | 109300 | 0 | 0 |
| HOME SOLUTIONS AMER | COM | 437355100 | 86 | 85600 | SH | PUT | DEFINED | 15,16,24 | 85600 | 0 | 0 |
| HONDA MOTOR LTD | AMERN SHS | 438128308 | 159 | 4785 | SH | | DEFINED | 7,11 | 0 | 0 | 4785 |
| HONDA MOTOR LTD | AMERN SHS | 438128308 | 1013 | 30556 | SH | | DEFINED | 7,11,13 | 30556 | 0 | 0 |
| HONDA MOTOR LTD | AMERN SHS | 438128308 | 24 | 725 | SH | | DEFINED | 7,11,33 | 0 | 0 | 725 |
| HONDA MOTOR LTD | AMERN SHS | 438128308 | 15553 | 469322 | SH | | DEFINED | 16,24,25 | 401255 | 0 | 68067 |
| HONDA MOTOR LTD | AMERN SHS | 438128308 | 139 | 4200 | SH | | DEFINED | 2,6,7,10-11,18,20,21,28 | 4200 | 0 | 0 |
| HONEYWELL INTL INC | COM | 438516106 | 585 | 9500 | SH | | DEFINED | 12 | 0 | 0 | 9500 |
| HONEYWELL INTL INC | COM | 438516106 | 28900 | 469389 | SH | | DEFINED | 7,11 | 422279 | 0 | 47110 |
| HONEYWELL INTL INC | COM | 438516106 | 2067 | 33573 | SH | | DEFINED | 7,11,13 | 33323 | 0 | 250 |
| HONEYWELL INTL INC | COM | 438516106 | 104 | 1689 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1689 |
| HONEYWELL INTL INC | COM | 438516106 | 128888 | 2093353 | SH | | DEFINED | 16,24,25 | 1782480 | 0 | 310873 |
| HONEYWELL INTL INC | COM | 438516106 | 2526 | 41033 | SH | | DEFINED | 32,40,41 | 41033 | 0 | 0 |
| HONEYWELL INTL INC | COM | 438516106 | 62 | 1000 | SH | | DEFINED | 5-7,11,43,44 | 0 | 1000 | 0 |
| HONEYWELL INTL INC | COM | 438516106 | 8787 | 142712 | SH | CALL | DEFINED | 7,11 | 142712 | 0 | 0 |
| HONEYWELL INTL INC | COM | 438516106 | 32798 | 532700 | SH | CALL | DEFINED | 15,16,24 | 532700 | 0 | 0 |
| HONEYWELL INTL INC | COM | 438516106 | 17523 | 284600 | SH | CALL | DEFINED | 16,24,25 | 284600 | 0 | 0 |
| HONEYWELL INTL INC | COM | 438516106 | 5935 | 96400 | SH | PUT | DEFINED | 15,16,24 | 96400 | 0 | 0 |
| HONEYWELL INTL INC | COM | 438516106 | 32805 | 532812 | SH | PUT | DEFINED | 16,24,25 | 532812 | 0 | 0 |
| HORMEL FOODS CORP | COM | 440452100 | 202 | 5001 | SH | | DEFINED | 12 | 5001 | 0 | 0 |
| HORMEL FOODS CORP | COM | 440452100 | 578 | 14275 | SH | | DEFINED | 7,11,13 | 14275 | 0 | 0 |
| HORMEL FOODS CORP | COM | 440452100 | 3191 | 78841 | SH | | DEFINED | 16,24,25 | 69185 | 0 | 9656 |
| HORNBECK OFFSHORE SV | COM | 440543106 | 472 | 10503 | SH | | DEFINED | 7,11 | 10200 | 0 | 303 |
| HORNBECK OFFSHORE SV | COM | 440543106 | 1664 | 37018 | SH | | DEFINED | 16,24,25 | 31642 | 0 | 5376 |
| HORNBECK OFFSHORE SV | COM | 440543106 | 6743 | 150000 | SH | CALL | DEFINED | 7,11 | 150000 | 0 | 0 |
| HOSPITALITY PPTYS TR | COM SH BEN | 44106M102 | 146 | 4520 | SH | | DEFINED | 7,11 | 4520 | 0 | 0 |
| HOSPITALITY PPTYS TR | COM SH BEN | 44106M102 | 18 | 550 | SH | | DEFINED | 7,11,13 | 550 | 0 | 0 |
| HOSPITALITY PPTYS TR | COM SH BEN | 44106M102 | 5964 | 185097 | SH | | DEFINED | 16,24,25 | 134521 | 0 | 50575 |
| HOSPITALITY PPTYS TR | COM SH BEN | 44106M102 | 1444 | 44810 | SH | | DEFINED | 32,40,41 | 44810 | 0 | 0 |
| HOSPIRA INC | COM | 441060100 | 1233 | 28926 | SH | | DEFINED | 7,11 | 16936 | 0 | 11990 |
| HOSPIRA INC | COM | 441060100 | 501 | 11751 | SH | | DEFINED | 15,16,24 | 11751 | 0 | 0 |
| HOSPIRA INC | COM | 441060100 | 5661 | 132770 | SH | | DEFINED | 16,24,25 | 119715 | 0 | 13055 |
| HOSPIRA INC | COM | 441060100 | 941 | 22070 | SH | | DEFINED | 32,40,41 | 22070 | 0 | 0 |
| HOSPIRA INC | COM | 441060100 | 392 | 9200 | SH | CALL | DEFINED | 15,16,24 | 9200 | 0 | 0 |
| HOSPIRA INC | COM | 441060100 | 384 | 9000 | SH | PUT | DEFINED | 15,16,24 | 9000 | 0 | 0 |
| HOST HOTELS & RESORT | COM | 44107P104 | 228 | 13400 | SH | | DEFINED | 12 | 0 | 0 | 13400 |
| HOST HOTELS & RESORT | COM | 44107P104 | 4515 | 264982 | SH | | DEFINED | 7,11 | 67847 | 0 | 197135 |
| HOST HOTELS & RESORT | COM | 44107P104 | 4211 | 247119 | SH | | DEFINED | 14,31 | 247119 | 0 | 0 |
| HOST HOTELS & RESORT | COM | 44107P104 | 44 | 2554 | SH | | DEFINED | 7,11,13 | 2104 | 0 | 450 |
| HOST HOTELS & RESORT | COM | 44107P104 | 3 | 153 | SH | | DEFINED | 7,11,33 | 0 | 0 | 153 |
| HOST HOTELS & RESORT | COM | 44107P104 | 810 | 47537 | SH | | DEFINED | 15,16,24 | 47537 | 0 | 0 |
| HOST HOTELS & RESORT | COM | 44107P104 | 4398 | 258100 | SH | | DEFINED | 16,24,25 | 205659 | 0 | 52441 |
| HOST HOTELS & RESORT | COM | 44107P104 | 8370 | 491200 | SH | | DEFINED | 32,40,41 | 491200 | 0 | 0 |
| HOST HOTELS & RESORT | COM | 44107P104 | 205 | 12028 | SH | | DEFINED | 16,19,24,26,27 | 12028 | 0 | 0 |
| HOT TOPIC INC | COM | 441339108 | 72 | 12313 | SH | | DEFINED | 16,24,25 | 12313 | 0 | 0 |
| HOUSTON WIRE & CABLE | COM | 44244K109 | 472 | 33380 | SH | | DEFINED | 16,24,25 | 27030 | 0 | 6360 |
| HOVNANIAN ENTERPRISE | CL A | 442487203 | 2149 | 299770 | SH | | DEFINED | 16,24,25 | 277394 | 0 | 22376 |
| HOVNANIAN ENTERPRISE | CL A | 442487203 | 10166 | 1417900 | SH | CALL | DEFINED | 15,16,24 | 1417900 | 0 | 0 |
| HOVNANIAN ENTERPRISE | CL A | 442487203 | 3244 | 452400 | SH | CALL | DEFINED | 16,24,25 | 452400 | 0 | 0 |
| HOVNANIAN ENTERPRISE | CL A | 442487203 | 6317 | 881100 | SH | PUT | DEFINED | 15,16,24 | 881100 | 0 | 0 |
| HOVNANIAN ENTERPRISE | CL A | 442487203 | 526 | 73300 | SH | PUT | DEFINED | 16,24,25 | 71300 | 0 | 2000 |
| HUANENG PWR INTL INC | SPON ADR H | 443304100 | 1 | 20 | SH | | DEFINED | 7,11,13 | 20 | 0 | 0 |
| HUANENG PWR INTL INC | SPON ADR H | 443304100 | 54 | 1314 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1314 |
| HUANENG PWR INTL INC | SPON ADR H | 443304100 | 1379 | 33389 | SH | | DEFINED | 15,16,24 | 33389 | 0 | 0 |
| HUANENG PWR INTL INC | SPON ADR H | 443304100 | 6973 | 168843 | SH | | DEFINED | 16,24,25 | 158014 | 0 | 10829 |
| HUANENG PWR INTL INC | SPON ADR H | 443304100 | 2945 | 71300 | SH | CALL | DEFINED | 15,16,24 | 71300 | 0 | 0 |
| HUANENG PWR INTL INC | SPON ADR H | 443304100 | 2957 | 71600 | SH | PUT | DEFINED | 15,16,24 | 71600 | 0 | 0 |
| HUB GROUP INC | CL A | 443320106 | 258 | 9694 | SH | | DEFINED | 16,24,25 | 9403 | 0 | 291 |
| HUBBELL INC | CL A | 443510102 | 116 | 2100 | SH | | DEFINED | 7,11 | 2100 | 0 | 0 |
| HUBBELL INC | CL A | 443510102 | 138 | 2500 | SH | | DEFINED | 16,24,25 | 2200 | 0 | 300 |
| HUBBELL INC | CL A | 443510102 | 26 | 498 | SH | | DEFINED | 7,11 | 241 | 0 | 257 |
| HUBBELL INC | CL B | 443510201 | 156 | 3015 | SH | | DEFINED | 7,11,13 | 3015 | 0 | 0 |
| HUBBELL INC | CL B | 443510201 | 4597 | 89095 | SH | | DEFINED | 16,24,25 | 71731 | 0 | 17364 |
| HUBBELL INC | CL B | 443510201 | 646 | 12520 | SH | | DEFINED | 32,40,41 | 12520 | 0 | 0 |
| HUDSON CITY BANCORP | COM | 443683107 | 257 | 17125 | SH | | DEFINED | 3,9 | 0 | 0 | 17125 |
| HUDSON CITY BANCORP | COM | 443683107 | 679 | 45233 | SH | | DEFINED | 7,11 | 45233 | 0 | 0 |
| HUDSON CITY BANCORP | COM | 443683107 | 4387 | 292065 | SH | | DEFINED | 16,24,25 | 255352 | 0 | 36713 |
| HUDSON CITY BANCORP | COM | 443683107 | 7650 | 509308 | SH | | DEFINED | 32,40,41 | 509308 | 0 | 0 |
| HUDSON CITY BANCORP | COM | 443683107 | 4927 | 328000 | SH | CALL | DEFINED | 7,11 | 328000 | 0 | 0 |
| HUDSON HIGHLAND GROU | COM | 443792106 | 2744 | 326300 | SH | | DEFINED | 16,24 | 326300 | 0 | 0 |
| HUDSON HIGHLAND GROU | COM | 443792106 | 9 | 1036 | SH | | DEFINED | 16,24,25 | 1036 | 0 | 0 |
| HUDSON HIGHLAND GROU | COM | 443792106 | 3375 | 401300 | SH | | DEFINED | 16,19,24,26,27 | 401300 | 0 | 0 |
| HUGOTON RTY TR TEX | UNIT BEN I | 444717102 | 40 | 1775 | SH | | DEFINED | 7,11,13 | 1775 | 0 | 0 |
| HUGOTON RTY TR TEX | UNIT BEN I | 444717102 | 1249 | 55679 | SH | | DEFINED | 7,11,33 | 0 | 0 | 55679 |
| HUGOTON RTY TR TEX | UNIT BEN I | 444717102 | 11 | 510 | SH | | DEFINED | 15,16,24 | 510 | 0 | 0 |
| HUGOTON RTY TR TEX | UNIT BEN I | 444717102 | 14810 | 660270 | SH | | DEFINED | 16,24,25 | 536915 | 0 | 123354 |
| HUGOTON RTY TR TEX | UNIT BEN I | 444717102 | 45 | 2000 | SH | CALL | DEFINED | 16,24,25 | 2000 | 0 | 0 |
| HUMANA INC | COM | 444859102 | 535 | 7100 | SH | | DEFINED | 12 | 0 | 0 | 7100 |
| HUMANA INC | COM | 444859102 | 444 | 5900 | SH | | DEFINED | 3,9 | 0 | 0 | 5900 |
| HUMANA INC | COM | 444859102 | 10532 | 139855 | SH | | DEFINED | 7,11 | 68448 | 0 | 71407 |
| HUMANA INC | COM | 444859102 | 322 | 4280 | SH | | DEFINED | 7,11,13 | 610 | 0 | 3670 |
| HUMANA INC | COM | 444859102 | 99 | 1310 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1310 |
| HUMANA INC | COM | 444859102 | 53817 | 714610 | SH | | DEFINED | 16,24,25 | 644214 | 0 | 70396 |
| HUMANA INC | COM | 444859102 | 206 | 2730 | SH | | DEFINED | 32,40,41 | 2730 | 0 | 0 |
| HUMANA INC | COM | 444859102 | 13258 | 176051 | SH | CALL | DEFINED | 7,11 | 176051 | 0 | 0 |
| HUMANA INC | COM | 444859102 | 27104 | 359900 | SH | CALL | DEFINED | 15,16,24 | 359900 | 0 | 0 |
| HUMANA INC | COM | 444859102 | 18910 | 251100 | SH | CALL | DEFINED | 16,24,25 | 251100 | 0 | 0 |
| HUMANA INC | COM | 444859102 | 3728 | 49500 | SH | PUT | DEFINED | 7,11 | 49500 | 0 | 0 |
| HUMANA INC | COM | 444859102 | 13307 | 176700 | SH | PUT | DEFINED | 15,16,24 | 176700 | 0 | 0 |
| HUMANA INC | COM | 444859102 | 31423 | 417251 | SH | PUT | DEFINED | 16,24,25 | 417251 | 0 | 0 |
| HUMAN GENOME SCIENCE | NOTE 2.25 | 444903AK4 | 4706 | 5000000 | PRN | | DEFINED | 16,24,25 | 5000000 | 0 | 0 |
| HUMAN GENOME SCIENCE | NOTE 2.25 | 444903AM0 | 19699 | 22740000 | PRN | | DEFINED | 16,24,25 | 22740000 | 0 | 0 |

| Name | Class | CUSIP | Col1 | Col2 | SH | Opt | | Codes | V1 | V2 | V3 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HUMAN GENOME SCIENCE | COM | 444903108 | 131 | 12500 | SH | | DEFINED | 30 | 12500 | 0 | 0 |
| HUMAN GENOME SCIENCE | COM | 444903108 | 49 | 4660 | SH | | DEFINED | 7,11 | 4660 | 0 | 0 |
| HUMAN GENOME SCIENCE | COM | 444903108 | 300 | 28750 | SH | | DEFINED | 7,11,13 | 28750 | 0 | 0 |
| HUMAN GENOME SCIENCE | COM | 444903108 | 42 | 4000 | SH | | DEFINED | 7,11,33 | 0 | 0 | 4000 |
| HUMAN GENOME SCIENCE | COM | 444903108 | 9187 | 879933 | SH | | DEFINED | 16,24,25 | 728036 | 0 | 151897 |
| HUMAN GENOME SCIENCE | COM | 444903108 | 901 | 86272 | SH | | DEFINED 2,6,7,10-11,18,20,21,28 | | 86272 | 0 | 0 |
| HUMAN GENOME SCIENCE | COM | 444903108 | 894 | 85600 | SH | CALL | DEFINED | 15,16,24 | 85600 | 0 | 0 |
| HUMAN GENOME SCIENCE | COM | 444903108 | 2964 | 283900 | SH | CALL | DEFINED | 16,24,25 | 283900 | 0 | 0 |
| HUMAN GENOME SCIENCE | COM | 444903108 | 351 | 33600 | SH | PUT | DEFINED | 15,16,24 | 33600 | 0 | 0 |
| HUMAN GENOME SCIENCE | COM | 444903108 | 3684 | 352900 | SH | PUT | DEFINED | 16,24,25 | 352900 | 0 | 0 |
| HUNT J B TRANS SVCS | COM | 445658107 | 113 | 4100 | SH | | DEFINED | 30 | 4100 | 0 | 0 |
| HUNT J B TRANS SVCS | COM | 445658107 | 168 | 6102 | SH | | DEFINED | 7,11 | 6102 | 0 | 0 |
| HUNT J B TRANS SVCS | COM | 445658107 | 4253 | 154357 | SH | | DEFINED | 16,24,25 | 131507 | 0 | 22850 |
| HUNT J B TRANS SVCS | COM | 445658107 | 309 | 11200 | SH | | DEFINED | 32,40,41 | 11200 | 0 | 0 |
| HUNT J B TRANS SVCS | COM | 445658107 | 3650 | 132500 | SH | CALL | DEFINED | 7,11 | 132500 | 0 | 0 |
| HUNT J B TRANS SVCS | COM | 445658107 | 5700 | 206900 | SH | CALL | DEFINED | 15,16,24 | 206900 | 0 | 0 |
| HUNT J B TRANS SVCS | COM | 445658107 | 4447 | 161400 | SH | CALL | DEFINED | 16,24,25 | 161400 | 0 | 0 |
| HUNT J B TRANS SVCS | COM | 445658107 | 6185 | 224500 | SH | PUT | DEFINED | 15,16,24 | 224500 | 0 | 0 |
| HUNT J B TRANS SVCS | COM | 445658107 | 9207 | 334200 | SH | PUT | DEFINED | 16,24,25 | 334200 | 0 | 0 |
| HUNTINGTON BANCSHARE | COM | 446150104 | 741 | 50185 | SH | | DEFINED | 7,11 | 50185 | 0 | 0 |
| HUNTINGTON BANCSHARE | COM | 446150104 | 554 | 37518 | SH | | DEFINED | 7,11,13 | 37518 | 0 | 0 |
| HUNTINGTON BANCSHARE | COM | 446150104 | 2833 | 191954 | SH | | DEFINED | 16,24,25 | 171985 | 0 | 19969 |
| HUNTINGTON BANCSHARE | COM | 446150104 | 163 | 11066 | SH | | DEFINED | 32,40,41 | 11066 | 0 | 0 |
| HUNTINGTON BANCSHARE | COM | 446150104 | 4266 | 289000 | SH | CALL | DEFINED | 7,11 | 289000 | 0 | 0 |
| HUNTSMAN CORP | COM | 447011107 | 126 | 4898 | SH | | DEFINED | 16,24,25 | 3723 | 0 | 1175 |
| HUNTSMAN CORP | COM | 447011107 | 105 | 4085 | SH | | DEFINED | 32,40,41 | 4085 | 0 | 0 |
| HUNTSMAN CORP | COM | 447011107 | 6088 | 236900 | SH | CALL | DEFINED | 15,16,24 | 236900 | 0 | 0 |
| HUNTSMAN CORP | COM | 447011107 | 5207 | 202600 | SH | PUT | DEFINED | 15,16,24 | 202600 | 0 | 0 |
| HUNTSMAN CORP | PFD MND CV | 447011206 | 10041 | 203880 | SH | | DEFINED | 16,24,25 | 203880 | 0 | 0 |
| HURCO COMPANIES INC | COM | 447324104 | 611 | 13995 | SH | | DEFINED | 16,24,25 | 13995 | 0 | 0 |
| HUTCHISON TECHNOLOG | NOTE 3.25 | 448407AP3 | 6721 | 7001000 | PRN | | DEFINED | 16,24,25 | 7001000 | 0 | 0 |
| HUTCHISON TECHNOLOG | COM | 448407106 | 1176 | 44695 | SH | | DEFINED | 16,24,25 | 44695 | 0 | 0 |
| HUTCHISON TELECOMM I | SPONSORED | 448417107 | 280 | 12362 | SH | | DEFINED | 16,24,25 | 12362 | 0 | 0 |
| HYDROGENICS CORP | COM | 448882100 | 93 | 99453 | SH | | DEFINED | 16,24,25 | 90197 | 0 | 9256 |
| IDT CORP | CL B | 448947309 | 345 | 40798 | SH | | DEFINED | 16,24,25 | 35798 | 0 | 5000 |
| HYPERION BRKFLD TOTA | COM | 449145101 | 82 | 11960 | SH | | DEFINED | 16,24,25 | 10289 | 0 | 1670 |
| HYTHIAM INC | COM | 449197104 | 33 | 11126 | SH | | DEFINED | 16,24,25 | 5826 | 0 | 5300 |
| IAC INTERACTIVECORP | COM NEW | 44919P300 | 17 | 630 | SH | | DEFINED | 3,9 | 0 | 0 | 630 |
| IAC INTERACTIVECORP | COM NEW | 44919P300 | 1127 | 41851 | SH | | DEFINED | 7,11 | 41851 | 0 | 0 |
| IAC INTERACTIVECORP | COM NEW | 44919P300 | 2649 | 98400 | SH | | DEFINED | 31,45 | 98400 | 0 | 0 |
| IAC INTERACTIVECORP | COM NEW | 44919P300 | 41 | 1515 | SH | | DEFINED | 7,11,13 | 1515 | 0 | 0 |
| IAC INTERACTIVECORP | COM NEW | 44919P300 | 50 | 1862 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1862 |
| IAC INTERACTIVECORP | COM NEW | 44919P300 | 33227 | 1234270 | SH | | DEFINED | 16,24,25 | 1028729 | 0 | 205541 |
| IAC INTERACTIVECORP | COM NEW | 44919P300 | 2877 | 106864 | SH | | DEFINED | 32,40,41 | 106864 | 0 | 0 |
| IAC INTERACTIVECORP | COM NEW | 44919P300 | 8046 | 298900 | SH | CALL | DEFINED | 15,16,24 | 298900 | 0 | 0 |
| IAC INTERACTIVECORP | COM NEW | 44919P300 | 3050 | 113300 | SH | CALL | DEFINED | 16,24,25 | 113300 | 0 | 0 |
| IAC INTERACTIVECORP | COM NEW | 44919P300 | 6111 | 227000 | SH | PUT | DEFINED | 15,16,24 | 227000 | 0 | 0 |
| IAC INTERACTIVECORP | COM NEW | 44919P300 | 1973 | 73300 | SH | PUT | DEFINED | 16,24,25 | 73300 | 0 | 0 |
| ICF INTL INC | COM | 44925C103 | 230 | 9096 | SH | | DEFINED | 16,24,25 | 7596 | 0 | 1500 |
| ICT GROUP INC | COM | 44929Y101 | 361 | 30251 | SH | | DEFINED | 16,24,25 | 25166 | 0 | 5085 |
| ICO INC NEW | COM | 44929J109 | 172 | 13364 | SH | | DEFINED | 16,24,25 | 13298 | 0 | 66 |
| ICU MED INC | COM | 44930G107 | 16 | 450 | SH | | DEFINED | 7,11,13 | 450 | 0 | 0 |
| ICU MED INC | COM | 44930G107 | 280 | 7768 | SH | | DEFINED | 16,24,25 | 7214 | 0 | 554 |
| ICAD INC | COM | 44934S107 | 427 | 211400 | SH | | DEFINED | 16,24,25 | 211400 | 0 | 0 |
| I D SYSTEMS INC | COM | 44948W103 | 293 | 23502 | SH | | DEFINED | 16,24,25 | 23502 | 0 | 0 |
| ING PRIME RATE TR | SH BEN INT | 44977W106 | 69 | 11000 | SH | | DEFINED | 7,11 | 0 | 0 | 11000 |
| ING PRIME RATE TR | SH BEN INT | 44977W106 | 752 | 120500 | SH | | DEFINED | 31,45 | 120500 | 0 | 0 |
| ING PRIME RATE TR | SH BEN INT | 44977W106 | 6770 | 1085612 | SH | | DEFINED | 16,24,25 | 1008349 | 0 | 76663 |
| ING CLARION REAL EST | COM SHS | 44978B108 | 712 | 63603 | SH | | DEFINED | 16,24,25 | 55112 | 0 | 8490 |
| IPG PHOTONICS CORP | COM | 44980X109 | 313 | 15633 | SH | | DEFINED | 16,24,25 | 14820 | 0 | 813 |
| IPCS INC | COM NEW | 44980Y305 | 8750 | 243116 | SH | | DEFINED | 16,24 | 243116 | 0 | 0 |
| IPCS INC | COM NEW | 44980Y305 | 20344 | 565259 | SH | | DEFINED | 16,24,25 | 565259 | 0 | 0 |
| ING RISK MANAGED NAT | COM | 449810100 | 2705 | 159792 | SH | | DEFINED | 16,24,25 | 135824 | 0 | 23967 |
| ING CLARION GLB RE E | COM | 44982G104 | 11 | 800 | SH | | DEFINED | 7,11,33 | 0 | 0 | 800 |
| ING CLARION GLB RE E | COM | 44982G104 | 17658 | 1276809 | SH | | DEFINED | 16,24,25 | 1071034 | 0 | 205775 |
| ING CLARION GLB RE E | COM | 44982G104 | 35 | 2500 | SH | | DEFINED | 16,19,24,26,27 | 2500 | 0 | 0 |
| ING GLBL ADV & PREM | COM | 44982N109 | 3551 | 181989 | SH | | DEFINED | 16,24,25 | 156659 | 0 | 25329 |
| ING ASIA PAC HGH DIV | COM | 44983J107 | 1834 | 86488 | SH | | DEFINED | 16,24,25 | 78728 | 0 | 8161 |
| IMS HEALTH INC | COM | 449934108 | 612 | 26581 | SH | | DEFINED | 7,11 | 26581 | 0 | 0 |
| IMS HEALTH INC | COM | 449934108 | 1456 | 63205 | SH | | DEFINED | 7,11,13 | 63205 | 0 | 0 |
| IMS HEALTH INC | COM | 449934108 | 2 | 90 | SH | | DEFINED | 15,16,24 | 90 | 0 | 0 |
| IMS HEALTH INC | COM | 449934108 | 866 | 37607 | SH | | DEFINED | 16,24,25 | 29301 | 0 | 8305 |
| IMS HEALTH INC | COM | 449934108 | 174 | 7543 | SH | | DEFINED | 32,40,41 | 7543 | 0 | 0 |
| IRSA INVERSIONES Y R | GLOBL DEP | 450047204 | 641 | 44102 | SH | | DEFINED | 16,24,25 | 30512 | 0 | 13590 |
| ISTAR FINL INC | FRNT | 45031UBF7 | 5385 | 6085000 | PRN | | DEFINED | 16,24,25 | 6085000 | 0 | 0 |
| ISTAR FINL INC | COM | 45031U101 | 603 | 23148 | SH | | DEFINED | 7,11 | 23148 | 0 | 0 |
| ISTAR FINL INC | COM | 45031U101 | 10 | 400 | SH | | DEFINED | 16,24 | 400 | 0 | 0 |
| ISTAR FINL INC | COM | 45031U101 | 20 | 750 | SH | | DEFINED | 7,11,13 | 750 | 0 | 0 |
| ISTAR FINL INC | COM | 45031U101 | 19283 | 740240 | SH | | DEFINED | 16,24,25 | 676026 | 0 | 64213 |
| ISTAR FINL INC | COM | 45031U101 | 102 | 3908 | SH | | DEFINED | 32,40,41 | 3908 | 0 | 0 |
| ITT EDUCATIONAL SERV | COM | 45068B109 | 2902 | 34036 | SH | | DEFINED | 7,11 | 34036 | 0 | 0 |
| ITT EDUCATIONAL SERV | COM | 45068B109 | 1121 | 13151 | SH | | DEFINED | 16,24,25 | 11195 | 0 | 1956 |
| ITT EDUCATIONAL SERV | COM | 45068B109 | 674 | 7900 | SH | | DEFINED | 32,40,41 | 7900 | 0 | 0 |
| ITT EDUCATIONAL SERV | COM | 45068B109 | 5176 | 60700 | SH | CALL | DEFINED | 16,24,25 | 60700 | 0 | 0 |
| ITT EDUCATIONAL SERV | COM | 45068B109 | 30817 | 361400 | SH | PUT | DEFINED | 16,24,25 | 361400 | 0 | 0 |
| I-TRAX INC | COM NEW | 45069D203 | 157 | 44093 | SH | | DEFINED | 16,24,25 | 42336 | 0 | 1757 |
| IXIA | COM | 45071R109 | 224 | 23663 | SH | | DEFINED | 16,24,25 | 23663 | 0 | 0 |
| ITT CORP NEW | COM | 450911102 | 386 | 5850 | SH | | DEFINED | 30 | 5850 | 0 | 0 |
| ITT CORP NEW | COM | 450911102 | 1710 | 25889 | SH | | DEFINED | 7,11 | 25281 | 0 | 608 |
| ITT CORP NEW | COM | 450911102 | 585 | 8853 | SH | | DEFINED | 7,11,13 | 2014 | 0 | 6839 |
| ITT CORP NEW | COM | 450911102 | 14543 | 220214 | SH | | DEFINED | 16,24,25 | 164297 | 0 | 55916 |
| ITT CORP NEW | COM | 450911102 | 3108 | 47059 | SH | | DEFINED | 32,40,41 | 47059 | 0 | 0 |
| IAMGOLD CORP | COM | 450913108 | 66 | 8200 | SH | | DEFINED | 30 | 8200 | 0 | 0 |
| IAMGOLD CORP | COM | 450913108 | 36 | 4500 | SH | | DEFINED | 15,16,24 | 4500 | 0 | 0 |
| IAMGOLD CORP | COM | 450913108 | 151 | 18695 | SH | | DEFINED | 16,24,25 | 1695 | 0 | 17000 |
| IAMGOLD CORP | COM | 450913108 | 8 | 1000 | SH | CALL | DEFINED | 15,16,24 | 1000 | 0 | 0 |
| IAMGOLD CORP | COM | 450913108 | 22 | 2700 | SH | PUT | DEFINED | 15,16,24 | 2700 | 0 | 0 |
| ICON PUB LTD CO | SPONSORED | 45103T107 | 8308 | 134299 | SH | | DEFINED | 16,24,25 | 96459 | 0 | 37840 |
| ICICI BK LTD | ADR | 45104G104 | 2373 | 38579 | SH | | DEFINED | 7,11 | 38079 | 0 | 500 |
| ICICI BK LTD | ADR | 45104G104 | 1503 | 24436 | SH | | DEFINED | 7,11,33 | 0 | 0 | 24436 |
| ICICI BK LTD | ADR | 45104G104 | 14347 | 233285 | SH | | DEFINED | 16,24,25 | 194834 | 0 | 38451 |
| ICICI BK LTD | ADR | 45104G104 | 29575 | 480900 | SH | | DEFINED | 16,17,22-24 | 480900 | 0 | 0 |
| ICICI BK LTD | ADR | 45104G104 | 23619 | 384044 | SH | | DEFINED | 16,19,24,26,27 | 384044 | 0 | 0 |
| ICICI BK LTD | ADR | 45104G104 | 6943 | 112900 | SH | CALL | DEFINED | 15,16,24 | 112900 | 0 | 0 |
| ICICI BK LTD | ADR | 45104G104 | 5929 | 96400 | SH | PUT | DEFINED | 15,16,24 | 96400 | 0 | 0 |
| ICONIX BRAND GROUP I | COM | 451055107 | 124 | 6300 | SH | | DEFINED | 30 | 6300 | 0 | 0 |
| ICONIX BRAND GROUP I | COM | 451055107 | 439 | 22335 | SH | | DEFINED | 16,24,25 | 21514 | 0 | 821 |
| IDACORP INC | COM | 451107106 | 815 | 23136 | SH | | DEFINED | 16,24,25 | 20818 | 0 | 2318 |
| IDEARC INC | COM | 451663108 | 802 | 45699 | SH | | DEFINED | 7,11 | 40312 | 593 | 4794 |
| IDEARC INC | COM | 451663108 | 1 | 3 | SH | | DEFINED | 7,11,13 | 3 | 0 | 41 |
| IDEARC INC | COM | 451663108 | 74 | 4210 | SH | | DEFINED | 15,16,24 | 4210 | 0 | 0 |
| IDEARC INC | COM | 451663108 | 1469 | 83656 | SH | | DEFINED | 16,24,25 | 79145 | 0 | 4510 |
| IDEARC INC | COM | 451663108 | 80 | 4548 | SH | | DEFINED | 32,40,41 | 4548 | 0 | 0 |
| IDEARC INC | COM | 451663108 | 2 | 136 | SH | | DEFINED | 16,19,24,26,27 | 136 | 0 | 0 |

```
IDEARC INC           COM          451663108     14      800 SH CALL DEFINED    15,16,24       800    0      0
IDEARC INC           COM          451663108    263    15000 SH CALL DEFINED    16,24,25     15000    0      0
IDEARC INC           COM          451663108    132     7500 SH PUT  DEFINED    15,16,24      7500    0      0
IDEARC INC           COM          451663108    167     9500 SH PUT  DEFINED    16,24,25      9500    0      0
IDEX CORP            COM          45167R104      2       47 SH      DEFINED         3,9         0    0     47
IDEX CORP            COM          45167R104    418    11572 SH      DEFINED        7,11     11572    0      0
IDEX CORP            COM          45167R104     81     2250 SH      DEFINED      7,11,13      2250    0      0
IDEX CORP            COM          45167R104    140     3872 SH      DEFINED    16,24,25      3572    0    300
IDEX CORP            COM          45167R104    506    14000 SH      DEFINED    32,40,41     14000    0      0
IDEXX LABS INC       COM          45168D104      6      100 SH      DEFINED          12         0    0    100
IDEXX LABS INC       COM          45168D104    299     5095 SH      DEFINED        7,11      5095    0      0
IDEXX LABS INC       COM          45168D104     12      200 SH      DEFINED      7,11,13       200    0      0
IDEXX LABS INC       COM          45168D104     35      600 SH      DEFINED      7,11,33         0    0    600
IDEXX LABS INC       COM          45168D104   6659   113579 SH      DEFINED    16,24,25     82405    0  31174
IDEXX LABS INC       COM          45168D104    199     3400 SH      DEFINED    32,40,41      3400    0      0
IKON OFFICE SOLUTION COM          451713101   1124    86335 SH      DEFINED    16,24,25     81504    0   4831
IHS INC              CL A         451734107    998    16478 SH      DEFINED    16,24,25     15094    0   1384
ILLINOIS TOOL WKS IN COM          452308109   7168   133886 SH      DEFINED        7,11    123306    0  10580
ILLINOIS TOOL WKS IN COM          452308109   4407    82304 SH      DEFINED      7,11,13     80274    0   2030
ILLINOIS TOOL WKS IN COM          452308109    115     2150 SH      DEFINED      7,11,33         0    0   2150
ILLINOIS TOOL WKS IN COM          452308109  35551   664000 SH      DEFINED    16,24,25    559529    0 104471
ILLINOIS TOOL WKS IN COM          452308109   9599   179285 SH      DEFINED    32,40,41    179285    0      0
ILLINOIS TOOL WKS IN COM          452308109   2017    37675 SH CALL DEFINED        7,11     37675    0      0
ILLINOIS TOOL WKS IN COM          452308109  11715   218800 SH CALL DEFINED    15,16,24    218800    0      0
ILLINOIS TOOL WKS IN COM          452308109  10392   194100 SH CALL DEFINED    16,24,25    194100    0      0
ILLINOIS TOOL WKS IN COM          452308109   3266    61000 SH PUT  DEFINED    15,16,24     61000    0      0
ILLINOIS TOOL WKS IN COM          452308109  13046   243675 SH PUT  DEFINED    16,24,25    243675    0      0
ILLUMINA INC         COM          452327109    314     5300 SH      DEFINED          30      5300    0      0
ILLUMINA INC         COM          452327109  22205   374703 SH      DEFINED    16,24,25    285797    0  88906
ILLUMINA INC         COM          452327109   7437   125500 SH CALL DEFINED    15,16,24    125500    0      0
ILLUMINA INC         COM          452327109   6602   111400 SH CALL DEFINED    16,24,25    111400    0      0
ILLUMINA INC         COM          452327109   6850   115600 SH PUT  DEFINED    15,16,24    115600    0      0
ILLUMINA INC         COM          452327109  11088   187100 SH PUT  DEFINED    16,24,25    187100    0      0
IMATION CORP         COM          45245A107     13      620 SH      DEFINED        7,11         0    0    620
IMATION CORP         COM          45245A107    620    29525 SH      DEFINED      7,11,13     29325    0    200
IMATION CORP         COM          45245A107     30     1447 SH      DEFINED    16,24,25      1197    0    250
IMCLONE SYS INC      NOTE 1.37    45245WAP6  14589 15500000 PRN      DEFINED       31,45  15500000    0      0
IMCLONE SYS INC      COM          45245W109    204     4748 SH      DEFINED        7,11      4748    0      0
IMCLONE SYS INC      COM          45245W109     45     1035 SH      DEFINED      7,11,33         0    0   1035
IMCLONE SYS INC      COM          45245W109   2149    49984 SH      DEFINED    15,16,24     49984    0      0
IMCLONE SYS INC      COM          45245W109   8805   204773 SH      DEFINED    16,24,25    189637    0  15136
IMCLONE SYS INC      COM          45245W109  10079   234400 SH      DEFINED    32,40,41    234400    0      0
IMCLONE SYS INC      COM          45245W109    172     4000 SH      DEFINED 2,6,7,10-11,18,20,21,28  4000  0  0
IMCLONE SYS INC      COM          45245W109   5379   125100 SH CALL DEFINED    15,16,24    125100    0      0
IMCLONE SYS INC      COM          45245W109   2166    50300 SH CALL DEFINED    16,24,25     50300    0      0
IMCLONE SYS INC      COM          45245W109  12393   288200 SH PUT  DEFINED    15,16,24    288200    0      0
IMERGENT INC         COM          45247Q100    579    54676 SH      DEFINED    15,16,24     54676    0      0
IMERGENT INC         COM          45247Q100     34     3220 SH      DEFINED    16,24,25      3220    0      0
IMERGENT INC         COM          45247Q100    641    60500 SH CALL DEFINED    15,16,24     60500    0      0
IMERGENT INC         COM          45247Q100   1395   131700 SH PUT  DEFINED    15,16,24    131700    0      0
IMERGENT INC         COM          45247Q100     77     7300 SH PUT  DEFINED    16,24,25      7300    0      0
IMMERSION CORP       COM          452521107    497    38411 SH      DEFINED    16,24,25     35303    0   3108
IMMUCOR INC          COM          452526106    185     5431 SH      DEFINED          30      5431    0      0
IMMUCOR INC          COM          452526106    147     4330 SH      DEFINED    16,24,25      2888    0   1442
IMPAC MTG HLDGS INC  COM          45254P102     94   167672 SH      DEFINED    16,24,25    150872    0  16800
IMPAC MTG HLDGS INC  COM          45254P102     45    80800 SH      DEFINED    15,16,24     80800    0      0
IMPAC MTG HLDGS INC  COM          45254P102     20    35000 SH PUT  DEFINED    15,16,24     35000    0      0
IMPERIAL OIL LTD     COM          453038408   6463   117973 SH      DEFINED        7,11     76768    0  41204
IMPERIAL OIL LTD     COM NEW      453038408    671    12247 SH      DEFINED    32,40,41     12247    0      0
IMPERIAL OIL LTD     COM NEW      453038408   2875    52483 SH      DEFINED    4,6,7,11     52483    0      0
IMPERIAL OIL LTD     COM NEW      453038408     31      567 SH      DEFINED 5-7,11,43,44        0  567      0
IMPERIAL SUGAR CO NE COM NEW      45309620B    555    29545 SH      DEFINED    16,24,25     28628    0    917
IMPERIAL TOBACCO GRO SPONSORED    453142101    251     2341 SH      DEFINED        7,11         0    0   2341
IMPERIAL TOBACCO GRO SPONSORED    453142101    549     5113 SH      DEFINED    16,24,25      4693    0    420
IMPERIAL TOBACCO GRO SPONSORED    453142101   1296    12077 SH      DEFINED 16,19,24,26,29   12077    0      0
INCYTE CORP          NOTE 3.50    45337CAR2  28615 29125000 PRN      DEFINED    16,24,25  29125000    0      0
INCYTE CORP          COM          45337C102   2484   247164 SH      DEFINED    16,24,25    246764    0    400
INDEVUS PHARMACEUTIC COM          45407J209    431    61947 SH      DEFINED    16,24,25     51824    0  10123
INDIA GLOBALIZATION  COM          45408X100    539    91400 SH      DEFINED    16,24,25     91400    0      0
INDIA GLOBALIZATION  *W EXP 03/   45408X118    148   302100 SH      DEFINED    16,24,25    302100    0      0
INDIA FD INC         COM          454089103    233     3750 SH      DEFINED        7,11         0    0   3750
INDIA FD INC         COM          454089103     93     1496 SH      DEFINED       16,24      1496    0      0
INDIA FD INC         COM          454089103   1044    16766 SH      DEFINED      7,11,33         0    0  16766
INDIA FD INC         COM          454089103  21918   352044 SH      DEFINED    16,24,25    309272    0  42771
INDUSTRIAS BACHOCO S SPON ADR B   456463108    441    13872 SH      DEFINED    16,24,25     10394    0   3478
INDYMAC BANCORP INC  COM          456607100   2450   411803 SH      DEFINED        7,11    411803    0      0
INDYMAC BANCORP INC  COM          456607100    357    59972 SH      DEFINED    15,16,24     59972    0      0
INDYMAC BANCORP INC  COM          456607100    708   119027 SH      DEFINED    16,24,25    114793    0   4234
INDYMAC BANCORP INC  COM          456607100   1200   201700 SH      DEFINED    32,40,41    201700    0      0
INDYMAC BANCORP INC  COM          456607100   4239   712500 SH CALL DEFINED        7,11    712500    0      0
INDYMAC BANCORP INC  COM          456607100   2086   350600 SH CALL DEFINED    15,16,24    350600    0      0
INDYMAC BANCORP INC  COM          456607100   1783   299700 SH PUT  DEFINED    15,16,24    299700    0      0
INDYMAC BANCORP INC  COM          456607100   5390   905800 SH PUT  DEFINED    16,24,25    905800    0      0
INERGY HLDGS L P     COM          46611Q107  23213   536847 SH      DEFINED    16,24,25    490023    0  46824
INERGY L P           UNIT LTD P   46615S103  27940   898387 SH      DEFINED    16,24,25    877707    0  20679
INFINEON TECHNOLOGIE COM          45662N103    661    56800 SH      DEFINED          30     56800    0      0
INFINEON TECHNOLOGIE SPONSORED    45662N103     38     3294 SH      DEFINED        7,11         0    0   3294
INFINEON TECHNOLOGIE SPONSORED    45662N103    925    79467 SH      DEFINED    16,24,25     71709    0   7758
INFINEON TECHNOLOGIE SPONSORED    45662N103   2124   182500 SH      DEFINED 2,6,7,10-11,18,20,21,28  182500  0  0
INFINEON TECHNOLOGIE SPONSORED    45662N103    412    35400 SH CALL DEFINED    15,16,24     35400    0      0
INFINEON TECHNOLOGIE SPONSORED    45662N103     17     1500 SH PUT  DEFINED    15,16,24      1500    0      0
INFOCUS CORP         COM          45665B106     22    12300 SH      DEFINED    16,24,25     12300    0      0
INFORMATICA CORP     NOTE 3.00    45666QAB8   7622  6730000 PRN      DEFINED    16,24,25   6730000    0      0
INFORMATICA CORP     COM          45666Q102    141     7815 SH      DEFINED          30      7815    0      0
INFORMATICA CORP     COM          45666Q102    245    13598 SH      DEFINED        7,11     13598    0      0
INFORMATICA CORP     COM          45666Q102   3389   188069 SH      DEFINED    16,24,25    185812    0   2257
INFORMATION SERVICES *W EXP 01/   45675Y112     25    25000 SH      DEFINED       31,45     25000    0      0
INFOSPACE INC        COM          456787201      0        1 SH      DEFINED           9         1    0      0
INFOSPACE INC        COM NEW      456787201    114     6051 SH      DEFINED    15,16,24      6051    0      0
INFOSPACE INC        COM NEW      456787201     52     2741 SH      DEFINED    16,24,25      2291    0    450
INFOSPACE INC        COM NEW      456787201  10019   532900 SH CALL DEFINED    15,16,24    532900    0      0
INFOSPACE INC        COM NEW      456787201   6439   342500 SH PUT  DEFINED    15,16,24    342500    0      0
INFOSPACE INC        COM NEW      456787201    182     9700 SH PUT  DEFINED    16,24,25      9700    0      0
INFOSYS TECHNOLOGIES SPONSORED    456788108   6203   136749 SH      DEFINED        7,11    129962    0   6787
INFOSYS TECHNOLOGIES SPONSORED    456788108    145     3198 SH      DEFINED       16,24      3198    0      0
INFOSYS TECHNOLOGIES SPONSORED    456788108   1800    39668 SH      DEFINED      7,11,13     39263    0    425
INFOSYS TECHNOLOGIES SPONSORED    456788108     64     1400 SH      DEFINED      7,11,33         0    0   1400
INFOSYS TECHNOLOGIES SPONSORED    456788108   7024   154839 SH      DEFINED    16,24,25    132874    0  21965
INFOSYS TECHNOLOGIES SPONSORED    456788108   3402    75000 SH      DEFINED 16,17,22-24       75000    0      0
INFOSYS TECHNOLOGIES SPONSORED    456788108  15803   348388 SH      DEFINED 16,19,24,26,27   348388    0      0
INFOUSA INC NEW      COM          456818301    128    14312 SH      DEFINED    16,24,25     14138    0    174
ING GROEP N V        SPONSORED    456837103    251     6450 SH      DEFINED          30      6450    0      0
ING GROEP N V        SPONSORED    456837103     68     1749 SH      DEFINED      7,11,13      1659    0     90
ING GROEP N V        SPONSORED    456837103     44     1134 SH      DEFINED      7,11,33         0    0   1134
```

```
ING GROEP N V          SPONSORED   456837103   11844    304406 SH   DEFINED            16,24,25      264634     0    39771
ING GROEP N V          SPONSORED   456837103    1751     45000 SH   DEFINED   16,19,24,26,27        45000      0        0
ING GLOBAL EQTY DIV    COM         45684E107      14       867 SH   DEFINED            7,11,13          867      0        0
ING GLOBAL EQTY DIV    COM         45684E107   12199    736192 SH   DEFINED            16,24,25      661342      0    74850
INGLES MKTS INC        CL A        457030104   17974    707898 SH   DEFINED            16,24,25      703373      0     4525
INGRAM MICRO INC       CL A        457153104     417     23100 SH   DEFINED            16,24,25       23100      0        0
INGRAM MICRO INC       CL A        457153104      25        25 SH   DEFINED            7,11             0        0     1387
INGRAM MICRO INC       CL A        457153104      97      5350 SH   DEFINED            7,11,13         5350      0        0
INGRAM MICRO INC       CL A        457153104    1630     90335 SH   DEFINED            16,24,25       81930      0     8405
INLAND REAL ESTATE C   COM NEW     457461200     335     23676 SH   DEFINED            16,24,25       21521      0     2155
INLAND REAL ESTATE C   COM NEW     457461200     407     28738 SH   DEFINED            32,40,41       28738      0        0
INNOVEX INC            COM         457647105       1       800 SH   DEFINED            16,24            800      0        0
INNOVEX INC            COM         457647105      59     70817 SH   DEFINED            16,24,25       70459      0      358
INSIGHT ENTERPRISES    COM         45765U103       2        92 SH   DEFINED            16,24             92      0        0
INSIGHT ENTERPRISES    COM         45765U103     192     10544 SH   DEFINED            16,24,25        9249      0     1295
INSITE VISION INC      COM         457660108      10     13000 SH   DEFINED            16,24,25       13000      0        0
INSITUFORM TECHNOLOG   CL A        457667103     254     17186 SH   DEFINED            7,11           17186      0        0
INSITUFORM TECHNOLOG   CL A        457667103     736     49718 SH   DEFINED            16,24,25       46382      0     3336
INSITUFORM TECHNOLOG   CL A        457667103     131      8885 SH   DEFINED            32,40,41        8885      0        0
INTEGRA LIFESCIENCES   COM NEW     457985208    8384    199950 SH   DEFINED            7,11          199950      0        0
INTEGRA LIFESCIENCES   COM NEW     457985208     244      5816 SH   DEFINED            16,24,25        5571      0      245
INTEGRA LIFESCIENCES   COM NEW     457985208   52421   1250200 SH   CALL DEFINED       7,11         1250200      0        0
INSURED MUN INCOME F   COM         45809F104    3192    251346 SH   DEFINED            16,24,25      225920      0    25425
INTEGRATED DEVICE TE   COM         458118106     226     20000 SH   DEFINED            3,9              0        0    20000
INTEGRATED DEVICE TE   COM         458118106      25      2167 SH   DEFINED            7,11           2167       0        0
INTEGRATED DEVICE TE   COM         458118106    1574    139184 SH   DEFINED            16,24,25      121481      0    17703
INTEGRATED DEVICE TE   COM         458118106     637     56300 SH   CALL DEFINED       15,16,24       56300      0        0
INTEGRATED DEVICE TE   COM         458118106     103      9100 SH   CALL DEFINED       16,24,25        8100      0     1000
INTEGRATED DEVICE TE   COM         458118106     171     15100 SH   PUT DEFINED        15,16,24       15100      0        0
INTEL CORP             SDCV  2.95  45814OAD2     239    222000 PRN  DEFINED            16,24,25      122000      0   100000
INTEL CORP             COM         458140100    2427     91030 SH   DEFINED            12               0        0    91030
INTEL CORP             COM         458140100    2663     99890 SH   DEFINED            30           99890        0        0
INTEL CORP             COM         458140100    8470    317721 SH   DEFINED            3,9              0        0   317721
INTEL CORP             COM         458140100  124667   4676193 SH   DEFINED            7,11         3170843    4010  1501340
INTEL CORP             COM         458140100     332     12454 SH   DEFINED            16,24         12454       0        0
INTEL CORP             COM         458140100    8326    312305 SH   DEFINED            7,11,13       278206      0    34099
INTEL CORP             COM         458140100     980     36763 SH   DEFINED            7,11,33        0          0    36763
INTEL CORP             COM         458140100  605075  22695992 SH   DEFINED            16,24,25    19523150     0  3172842
INTEL CORP             COM         458140100   11319    424581 SH   DEFINED            32,40,41      424581      0        0
INTEL CORP             COM         458140100     525     19679 SH   DEFINED            5-7,11,43,44     0    19679       0
INTEL CORP             COM         458140100     302     11328 SH   DEFINED            16,19,24,26,27  11328      0        0
INTEL CORP             COM         458140100   11273    422852 SH   DEFINED    2,6,7,10-11,18,20,21,28  422852     0        0
INTEL CORP             COM         458140100  103118   3867900 SH   CALL DEFINED       15,16,24     3867900      0        0
INTEL CORP             COM         458140100   29057   1089900 SH   CALL DEFINED       16,24,25     1089900      0        0
INTEL CORP             COM         458140100   10664    400000 SH   PUT DEFINED        7,11         400000       0        0
INTEL CORP             COM         458140100   40976   1537000 SH   PUT DEFINED        15,16,24     1537000      0        0
INTEL CORP             COM         458140100   84723   3177900 SH   PUT DEFINED        16,24,25     3177900      0        0
INTELLI-CHECK INC      COM         45817G102      75     23500 SH   DEFINED            16,24,25       23500      0        0
INTEGRYS ENERGY GROU   COM         45822P105     170      3295 SH   DEFINED            7,11            3295       0        0
INTEGRYS ENERGY GROU   COM         45822P105    1159     22418 SH   DEFINED            7,11,13        21016      0     1402
INTEGRYS ENERGY GROU   COM         45822P105    2285     44198 SH   DEFINED            16,24,25       37729      0     6468
INTEGRYS ENERGY GROU   COM         45822P105       4        74 SH   DEFINED            32,40,41          74      0        0
INTERACTIVE INTELLIG   COM         45839M103     395     15006 SH   DEFINED            16,24,25       10006      0     5000
INTERACTIVE BROKERS    COM         45841N107    1389     42966 SH   DEFINED            7,11           42966      0        0
INTERACTIVE BROKERS    COM         45841N107   23140    715976 SH   DEFINED            16,24,25      709235      0     6741
INTERCONTINENTAL HTL   SPONS ADR   45857P301      34      1959 SH   DEFINED            16,24,25        1483      0      476
INTERCONTINENTAL HTL   SPONS ADR   45857P301     435     25000 SH   DEFINED   16,19,24,26,27        25000      0        0
INTERCONTINENTALEXCH   COM         45865V100    6391     33202 SH   DEFINED            42             33202       0        0
INTERCONTINENTALEXCH   COM         45865V100    3888     20197 SH   DEFINED            7,11           20197      0        0
INTERCONTINENTALEXCH   COM         45865V100     117       610 SH   DEFINED            7,11,33         0          0      610
INTERCONTINENTALEXCH   COM         45865V100    9243     48015 SH   DEFINED            16,24,25       46554      0     1461
INTERCONTINENTALEXCH   COM         45865V100    1748      9080 SH   DEFINED            32,40,41        9080      0        0
INTERCONTINENTALEXCH   COM         45865V100    3714     19295 SH   CALL DEFINED       7,11           19295      0        0
INTERCONTINENTALEXCH   COM         45865V100   37865    196700 SH   CALL DEFINED       15,16,24      196700      0        0
INTERCONTINENTALEXCH   COM         45865V100    3677    19100 SH    CALL DEFINED       16,24,25       19100      0        0
INTERCONTINENTALEXCH   COM         45865V100   30877    160400 SH   PUT DEFINED        15,16,24      160400      0        0
INTERCONTINENTALEXCH   COM         45865V100    7969     41395 SH   PUT DEFINED        16,24,25       41395      0        0
INTERFACE INC          CL A        458665106       1      6827 SH   DEFINED            7,11            6827       0        0
INTERFACE INC          CL A        458665106      16       981 SH   DEFINED            16,24            981      0        0
INTERFACE INC          CL A        458665106     126      7733 SH   DEFINED            16,24,25        7273      0      460
INTERDIGITAL INC       COM         45867G101    4083    175023 SH   DEFINED            7,11          175023      0        0
INTERDIGITAL INC       COM         45867G101    1100     47141 SH   DEFINED            15,16,24       47141      0        0
INTERDIGITAL INC       COM         45867G101     399     17098 SH   DEFINED            16,24,25       15508      0     1590
INTERDIGITAL INC       COM         45867G101    2986    128000 SH   CALL DEFINED       15,16,24      128000      0        0
INTERDIGITAL INC       COM         45867G101      14       600 SH   CALL DEFINED       16,24,25         600      0        0
INTERDIGITAL INC       COM         45867G101    3574    153200 SH   PUT DEFINED        15,16,24      153200      0        0
INTERMEC INC           COM         458786100      17       850 SH   DEFINED            7,11,13          850      0        0
INTERMEC INC           COM         458786100      90      4425 SH   DEFINED            7,11            4425       0        0
INTERMEC INC           COM         458786100     521     25661 SH   DEFINED            16,24,25       23772      0     1889
INTERMEC INC           COM         458786100     118      5800 SH   CALL DEFINED       15,16,24        5800      0        0
INTERMEC INC           COM         458786100     351     17300 SH   PUT DEFINED        15,16,24       17300      0        0
INTERNATIONAL ABSORB   COM NO PAR  45885E203     512    115450 SH   DEFINED            16,24,25      114150      0     1300
INTERNATIONAL BUSINE   COM         459200101    2953     27315 SH   DEFINED            12               0        0    27315
INTERNATIONAL BUSINE   COM         459200101   10371     95942 SH   DEFINED            3,9              0        0    95942
INTERNATIONAL BUSINE   COM         459200101  112664   1042224 SH   DEFINED            7,11          473615    9145   559464
INTERNATIONAL BUSINE   COM         459200101    8551     79104 SH   DEFINED            7,11,13        62277      0    16827
INTERNATIONAL BUSINE   COM         459200101     668      6178 SH   DEFINED            7,11,33         0          0     6178
INTERNATIONAL BUSINE   COM         459200101  257622   2383180 SH   DEFINED            16,24,25     1919262     0   463918
INTERNATIONAL BUSINE   COM         459200101   12487    115514 SH   DEFINED            32,40,41      115514      0        0
INTERNATIONAL BUSINE   COM         459200101     683      6317 SH   DEFINED            5-7,11,43,44     0     6317       0
INTERNATIONAL BUSINE   COM         459200101   24664    228182 SH   DEFINED   16,19,24,26,27        228182      0        0
INTERNATIONAL BUSINE   COM         459200101   51835    479513 SH   DEFINED    2,6,7,10-11,18,20,21,28  479513     0        0
INTERNATIONAL BUSINE   COM         459200101   24403    225745 SH   CALL DEFINED       7,11          225745      0        0
INTERNATIONAL BUSINE   COM         459200101   96382    891600 SH   CALL DEFINED       15,16,24      891600      0        0
INTERNATIONAL BUSINE   COM         459200101   70860    655500 SH   CALL DEFINED       16,24,25      655500      0        0
INTERNATIONAL BUSINE   COM         459200101   98987    915700 SH   PUT DEFINED        15,16,24      915700      0        0
INTERNATIONAL BUSINE   COM         459200101  169841   1571145 SH   PUT DEFINED        16,24,25     1571145      0        0
INTERNATIONAL COAL G   COM         45928H106     682    127235 SH   DEFINED            16,24,25      121412      0     5823
INTERNATIONAL FLAVOR   COM         459506101     391      8124 SH   DEFINED            7,11            8124       0        0
INTERNATIONAL FLAVOR   COM         459506101      18       375 SH   DEFINED            7,11,13          300      0       75
INTERNATIONAL FLAVOR   COM         459506101    2681     55703 SH   DEFINED            16,24,25       52285      0     3418
INTERNATIONAL FLAVOR   COM         459506101     146      3040 SH   DEFINED            32,40,41        3040      0        0
INTERNATIONAL GAME T   COM         459902102     457     10400 SH   DEFINED            30           10400        0        0
INTERNATIONAL GAME T   COM         459902102    6264    142583 SH   DEFINED            7,11           89931      0    52652
INTERNATIONAL GAME T   COM         459902102     253      5750 SH   DEFINED            7,11,13         5450      0      300
INTERNATIONAL GAME T   COM         459902102     408      9283 SH   DEFINED            7,11,33          0         0     9283
INTERNATIONAL GAME T   COM         459902102   12547    285616 SH   DEFINED            15,16,24      285616      0        0
INTERNATIONAL GAME T   COM         459902102  108933   2479687 SH   DEFINED            16,24,25     2001765     0   477922
INTERNATIONAL GAME T   COM         459902102     760     17293 SH   DEFINED            32,40,41       17293      0        0
INTERNATIONAL GAME T   COM         459902102   13021    296400 SH   CALL DEFINED       15,16,24      296400      0        0
INTERNATIONAL GAME T   COM         459902102    6343    144388 SH   CALL DEFINED       16,24,25      143388      0     1000
INTERNATIONAL GAME T   COM         459902102    2517     57288 SH   PUT DEFINED        7,11           57288      0        0
INTERNATIONAL GAME T   COM         459902102   19123    435300 SH   PUT DEFINED        15,16,24      435300      0        0
INTERNATIONAL GAME T   COM         459902102    6005    136700 SH   PUT DEFINED        16,24,25      136700      0        0
```

```
INTL PAPER CO          COM          460146103   2567    79268 SH    DEFINED     7,11                        65703      0    13565
INTL PAPER CO          COM          460146103   24       742 SH     DEFINED     7,11,13                         0      0      742
INTL PAPER CO          COM          460146103   13490   416602 SH   DEFINED     16,24,25                   370868      0    45734
INTL PAPER CO          COM          460146103   395      12214 SH   DEFINED     32,40,41                    12214      0        0
INTL PAPER CO          COM          460146103   6495    200600 SH   CALL DEFINED 15,16,24                  200600      0        0
INTL PAPER CO          COM          460146103   2192     67700 SH   CALL DEFINED 16,24,25                   67700      0        0
INTL PAPER CO          COM          460146103   5553    171500 SH   PUT DEFINED  15,16,24                  171500      0        0
INTL PAPER CO          COM          460146103   2746     84800 SH   PUT DEFINED  16,24,25                   84800      0        0
INTERNATIONAL RECTIF   COM          460254105   156      4589 SH    DEFINED     7,11                         4589      0        0
INTERNATIONAL RECTIF   COM          460254105   1209    35579 SH    DEFINED     15,16,24                    35579      0        0
INTERNATIONAL RECTIF   COM          460254105   6037   177703 SH    DEFINED     16,24,25                   160651      0    17052
INTERNATIONAL RECTIF   COM          460254105   141      4140 SH    DEFINED     16,19,24,26,27               4140      0        0
INTERNATIONAL RECTIF   COM          460254105   4294   126400 SH    CALL DEFINED 15,16,24                  126400      0        0
INTERNATIONAL RECTIF   COM          460254105   1158    34100 SH    CALL DEFINED 16,24,25                   34100      0        0
INTERNATIONAL RECTIF   COM          460254105   11696  344300 SH    PUT DEFINED  15,16,24                  344300      0        0
INTERNATIONAL RECTIF   COM          460254105   1913    56300 SH    PUT DEFINED  16,24,25                   56300      0        0
INTL SECS EXCHANGE H   CL A         46031W204   1235    18300 SH    CALL DEFINED 15,16,24                   18300      0        0
INTL SECS EXCHANGE H   CL A         46031W204   675     10000 SH    PUT DEFINED  15,16,24                   10000      0        0
INTERNATIONAL SPEEDW   CL A         460335201   3         75 SH     DEFINED     7,11,13                        75      0        0
INTERNATIONAL SPEEDW   CL A         460335201   1023    24847 SH    DEFINED     16,24,25                    24095      0      751
INTERNET CAP GROUP I   COM NEW      46059C205   117      9985 SH    DEFINED     7,11                         9985      0        0
INTERNET CAP GROUP I   COM NEW      46059C205   1        100 SH     DEFINED     16,24,25                       72      0       28
INTERNET INITIATIVE    SPONSORED    46059T109   1986   199000 SH    CALL DEFINED 15,16,24                  199000      0        0
INTERNET INITIATIVE    SPONSORED    46059T109   623     62400 SH    PUT DEFINED  15,16,24                   62400      0        0
INTERNET HOLDRS TR     DEPOSIT RC   46059W102   1279    21600 SH    DEFINED     15,16,24                    21600      0        0
INTERNET HOLDRS TR     DEPOSIT RC   46059W102   30310  511999 SH    DEFINED     16,24,25                   496449      0    15550
INTERNET HOLDRS TR     DEPOSIT RC   46059W102   1521    25700 SH    CALL DEFINED 15,16,24                   25700      0        0
INTERNET HOLDRS TR     DEPOSIT RC   46059W102   5180    87500 SH    PUT DEFINED  15,16,24                   87500      0        0
INTERSIL CORP          CL A         46069S109   3028   123695 SH    DEFINED     7,11                       123695      0        0
INTERSIL CORP          CL A         46069S109   23       932 SH     DEFINED     16,24                         932      0        0
INTERSIL CORP          CL A         46069S109   1         45 SH     DEFINED     7,11,13                         0      0       45
INTERSIL CORP          CL A         46069S109   636     25962 SH    DEFINED     15,16,24                    25962      0        0
INTERSIL CORP          CL A         46069S109   5092   208023 SH    DEFINED     16,24,25                   188824      0    19198
INTERSIL CORP          CL A         46069S109   328     13384 SH    DEFINED     32,40,41                    13384      0        0
INTERSIL CORP          CL A         46069S109   896     36600 SH    CALL DEFINED 15,16,24                   36600      0        0
INTERSIL CORP          CL A         46069S109   2476   101163 SH    DEFINED     16,24,25                   101163      0        0
INTERSIL CORP          CL A         46069S109   2476   101163 SH    PUT DEFINED  7,11                      101163      0        0
INTERSIL CORP          CL A         46069S109   1513    61800 SH    PUT DEFINED  16,24,25                   61800      0        0
INTERPUBLIC GROUP CO   NOTE  4.50   460690AT7   52      51000 PRN   DEFINED     16,24,25                    51000      0        0
INTERPUBLIC GROUP CO   COM          460690100   19       2361 SH    DEFINED     12                              0      0     2361
INTERPUBLIC GROUP CO   COM          460690100   445     54900 SH    DEFINED     30                          54900      0        0
INTERPUBLIC GROUP CO   COM          460690100   5843   720488 SH    DEFINED     7,11                       717072      0     3416
INTERPUBLIC GROUP CO   COM          460690100   161     19801 SH    DEFINED     15,16,24                    19801      0        0
INTERPUBLIC GROUP CO   COM          460690100   10363 1277752 SH    DEFINED     16,24,25                  1134032      0   143719
INTERPUBLIC GROUP CO   COM          460690100   149     18320 SH    DEFINED     32,40,41                    18320      0        0
INTERPUBLIC GROUP CO   COM          460690100   78781 9714000 SH    CALL DEFINED 7,11                     9714000      0        0
INTERPUBLIC GROUP CO   COM          460690100   454     56000 SH    CALL DEFINED 15,16,24                   56000      0        0
INTERPUBLIC GROUP CO   COM          460690100   638     78700 SH    CALL DEFINED 16,24,25                   78700      0        0
INTERPUBLIC GROUP CO   COM          460690100   479     59100 SH    PUT DEFINED  15,16,24                   59100      0        0
INTEROIL CORP          COM          460951106   322     16714 SH    DEFINED     15,16,24                    16714      0        0
INTEROIL CORP          COM          460951106   143      7402 SH    DEFINED     16,24,25                     7002      0      400
INTEROIL CORP          COM          460951106   3509   182200 SH    CALL DEFINED 15,16,24                  182200      0        0
INTEROIL CORP          COM          460951106   7897   410000 SH    PUT DEFINED  15,16,24                  410000      0        0
INTERVOICE INC NEW     COM          46114201    183     22863 SH    DEFINED     16,24,25                    22200      0      663
INTUITIVE SURGICAL I   COM NEW      46120E602   1251     3873 SH    DEFINED     7,11                         3873      0        0
INTUITIVE SURGICAL I   COM NEW      46120E602   32       100 SH     DEFINED     7,11,13                       100      0        0
INTUITIVE SURGICAL I   COM NEW      46120E602   65       200 SH     DEFINED     7,11,33                         0      0      200
INTUITIVE SURGICAL I   COM NEW      46120E602   3329    10307 SH    DEFINED     15,16,24                    10307      0        0
INTUITIVE SURGICAL I   COM NEW      46120E602   20733   64187 SH    DEFINED     16,24,25                    50738      0    13449
INTUITIVE SURGICAL I   COM NEW      46120E602   2313     7161 SH    DEFINED     32,40,41                     7161      0        0
INTUITIVE SURGICAL I   COM NEW      46120E602   16570   51300 SH    CALL DEFINED 15,16,24                   51300      0        0
INTUITIVE SURGICAL I   COM NEW      46120E602   32300  100000 SH    CALL DEFINED 16,24,25                  100000      0        0
INTUITIVE SURGICAL I   COM NEW      46120E602   27972   86600 SH    PUT DEFINED  15,16,24                   86600      0        0
INTUITIVE SURGICAL I   COM NEW      46120E602   6751    20900 SH    PUT DEFINED  16,24,25                   20900      0        0
INTUIT                 COM          461202103   6483   205107 SH    DEFINED     7,11                       205107      0        0
INTUIT                 COM          461202103   201      6350 SH    DEFINED     7,11,13                      5550      0      800
INTUIT                 COM          461202103   79       2495 SH    DEFINED     7,11,33                         0      0     2495
INTUIT                 COM          461202103   499     15786 SH    DEFINED     15,16,24                    15786      0        0
INTUIT                 COM          461202103   49692 1572044 SH    DEFINED     16,24,25                  1376086      0   195958
INTUIT                 COM          461202103   322     10185 SH    DEFINED     32,40,41                    10185      0        0
INTUIT                 COM          461202103   63       2000 SH    DEFINED     2,6,7,10-11,18,20,21,28      2000      0        0
INTUIT                 COM          461202103   6477   204906 SH    CALL DEFINED 7,11                      204906      0        0
INTUIT                 COM          461202103   4922   155700 SH    CALL DEFINED 15,16,24                  155700      0        0
INTUIT                 COM          461202103   888     28100 SH    CALL DEFINED 16,24,25                   28100      0        0
INTUIT                 COM          461202103   2535    80200 SH    PUT DEFINED  15,16,24                   80200      0        0
INTUIT                 COM          461202103   8247   260906 SH    PUT DEFINED  16,24,25                  260906      0        0
INVACARE CORP          COM          461203101   63       2500 SH    DEFINED     30                           2500      0        0
INVACARE CORP          COM          461203101   488     19375 SH    DEFINED     7,11,13                     19375      0        0
INVACARE CORP          COM          461203101   384     15249 SH    DEFINED     16,24,25                    14386      0      863
INVERNESS MED INNOVA   COM          46126P106   790     14065 SH    DEFINED     16,24,25                    12590      0     1475
INVERNESS MED INNOVA   COM          46126P106   28       500 SH     DEFINED     5-7,11,43,44                    0    500        0
INVESTMENT GRADE MUN   COM          46136B102   1516   117681 SH    DEFINED     16,24,25                   116011      0     1670
INVESTMENT TECHNOLOG   COM          46145F105   25       535 SH     DEFINED     7,11                          535      0        0
INVESTMENT TECHNOLOG   COM          46145F105   481     10116 SH    DEFINED     11,13                       10116      0        0
INVESTMENT TECHNOLOG   COM          46145F105   8788   184666 SH    DEFINED     16,24,25                   184666      0        0
INVESTMENT TECHNOLOG   COM          46145P103   12373  260000 SH    DEFINED     16,19,24,26,27             260000      0        0
INVESTOOLS INC         COM          46145P103   315     17775 SH    DEFINED     16,24,25                    11060      0     6715
INVESTORS BANCORP IN   COM          46146P106   296     20950 SH    DEFINED     16,24,25                    16650      0     4300
INVESTORS REAL ESTAT   SH BEN INT   46173O103   23       2580 SH    DEFINED     16,24                        2580      0        0
INVESTORS REAL ESTAT   SH BEN INT   46173O103   95      10567 SH    DEFINED     16,24,25                     9567      0     1000
INVESTORS REAL ESTAT   SH BEN INT   46173O103   278     30963 SH    DEFINED     32,40,41                    30963      0        0
INVESTORS TITLE CO     COM          46180410    6 336     8742 SH   DEFINED     16,24,25                     8142      0      600
INVITROGEN CORP        NOTE  2.00   46185RAJ9   21884 15171000 PRN  DEFINED     16,24,25                 15171000      0        0
INVITROGEN CORP        COM          46185R100   1354    14490 SH    DEFINED     12                              0      0    14490
INVITROGEN CORP        COM          46185R100   400      4280 SH    DEFINED     3,9                             0      0     4280
INVITROGEN CORP        COM          46185R100   10044  107527 SH    DEFINED     7,11                         2952    200   104375
INVITROGEN CORP        COM          46185R100   678      7263 SH    DEFINED     7,11,13                      1988      0     5275
INVITROGEN CORP        COM          46185R100   75       800 SH     DEFINED     7,11,33                         0      0      800
INVITROGEN CORP        COM          46185R100   3244    34733 SH    DEFINED     16,24,25                    25382      0     9350
INVITROGEN CORP        COM          46185R100   238      2544 SH    DEFINED     32,40,41                     2544      0        0
INVITROGEN CORP        COM          46185R100   9864   105600 SH    CALL DEFINED 15,16,24                  105600      0        0
INVITROGEN CORP        COM          46185R100   20214  216400 SH    CALL DEFINED 16,24,25                  216400      0        0
INVITROGEN CORP        COM          46185R100   2186    23400 SH    PUT DEFINED  16,24,25                   23400      0        0
INX INC                COM          46185W109   1016    97243 SH    DEFINED     16,24,25                    97243      0        0
ION GEOPHYSICAL CORP   COM          462044108   1334    84525 SH    DEFINED     16,24,25                    82715      0     1810
ION GEOPHYSICAL CORP   COM          462044108   1035    65600 SH    CALL DEFINED 15,16,24                   65600      0        0
ION GEOPHYSICAL CORP   COM          462044108   76       4800 SH    PUT DEFINED  15,16,24                    4800      0        0
IONA TECHNOLOGIES PL   SPONSORED    46206P109   48      14642 SH    DEFINED     16,24,25                    14234      0      408
IONATRON INC           COM          462070103   912    318804 SH    DEFINED     16,24,25                   318804      0        0
IONATRON INC           COM          462070103   130     45300 SH    DEFINED     16,24,25                    45300      0        0
IONATRON INC           COM          462070103   136     47500 SH    CALL DEFINED 15,16,24                   47500      0        0
IONATRON INC           COM          462070103   34      12000 SH    CALL DEFINED 16,24,25                   12000      0        0
IONATRON INC           COM          462070103   797    278700 SH    PUT DEFINED  15,16,24                  278700      0        0
IOWA TELECOMM SERVIC   COM          462594201   24       1500 SH    DEFINED     7,11,13                         0      0     1500
```

| IOWA TELECOMM SERVIC | COM | 462594201 | 2820 | 173455 | SH | DEFINED | 16,24,25 | 139622 | 0 | 33833 |
|---|---|---|---|---|---|---|---|---|---|---|
| IPASS INC | COM | 46261V108 | 130 | 32070 | SH | DEFINED | 16,24,25 | 32070 | 0 | 0 |
| IRELAND BK | SPONSORED | 46267Q103 | 9 | 148 | SH | DEFINED | 7,11,13 | 148 | 0 | 0 |
| IRELAND BK | SPONSORED | 46267Q103 | 8 | 135 | SH | DEFINED | 7,11,33 | 0 | 0 | 135 |
| IRELAND BK | SPONSORED | 46267Q103 | 2373 | 39255 | SH | DEFINED | 16,24,25 | 32374 | 0 | 6880 |
| IRIS INTL INC | COM | 46270W105 | 1070 | 54531 | SH | DEFINED | 16,24,25 | 44326 | 0 | 10205 |
| IRON MTN INC | COM | 462846106 | 433 | 11706 | SH | DEFINED | 7,11 | 11706 | 0 | 0 |
| IRON MTN INC | COM | 462846106 | 139 | 3750 | SH | DEFINED | 7,11,33 | 0 | 0 | 3750 |
| IRON MTN INC | COM | 462846106 | 1935 | 52275 | SH | DEFINED | 16,24,25 | 37526 | 0 | 14749 |
| IRON MTN INC | COM | 462846106 | 200 | 5402 | SH | DEFINED | 32,40,41 | 5402 | 0 | 0 |
| ISHARES SILVER TRUST | ISHARES | 46428Q109 | 838 | 5700 | SH | DEFINED | 7,11 | 5700 | 0 | 0 |
| ISHARES SILVER TRUST | ISHARES | 46428Q109 | 38937 | 264933 | SH | DEFINED | 16,24,25 | 248457 | 0 | 16476 |
| ISHARES S&P GSCI COM | UNIT BEN I | 46428R107 | 4311 | 81747 | SH | DEFINED | 16,24,25 | 79426 | 0 | 2321 |
| ISHARES COMEX GOLD T | ISHARES | 464285105 | 289 | 3500 | SH | DEFINED | 7,11 | 0 | 0 | 3500 |
| ISHARES COMEX GOLD T | ISHARES | 464285105 | 41 | 500 | SH | DEFINED | 7,11,13 | 0 | 0 | 500 |
| ISHARES COMEX GOLD T | ISHARES | 464285105 | 42930 | 520684 | SH | DEFINED | 16,24,25 | 463155 | 0 | 57529 |
| ISHARES INC | MSCI AUSTR | 464286103 | 91 | 3150 | SH | DEFINED | 7,11 | 3150 | 0 | 0 |
| ISHARES INC | MSCI AUSTR | 464286103 | 143772 | 4988614 | SH | DEFINED | 16,24,25 | 4642954 | 0 | 345660 |
| ISHARES INC | MSCI AUSTR | 464286202 | 22 | 605 | SH | DEFINED | 7,11,33 | 0 | 0 | 605 |
| ISHARES INC | MSCI AUSTR | 464286202 | 13224 | 358571 | SH | DEFINED | 16,24,25 | 325903 | 0 | 32668 |
| ISHARES INC | MSCI BELGI | 464286301 | 50 | 2035 | SH | DEFINED | 7,11,33 | 0 | 0 | 2035 |
| ISHARES INC | MSCI BELGI | 464286301 | 115571 | 4736500 | SH | DEFINED | 16,24,25 | 4421993 | 0 | 314507 |
| ISHARES INC | MSCI BRAZI | 464286400 | 51829 | 642239 | SH | DEFINED | 7,11 | 642239 | 0 | 0 |
| ISHARES INC | MSCI BRAZI | 464286400 | 68 | 839 | SH | DEFINED | 7,11,33 | 0 | 0 | 839 |
| ISHARES INC | MSCI BRAZI | 464286400 | 16654 | 206373 | SH | DEFINED | 15,16,24 | 206373 | 0 | 0 |
| ISHARES INC | MSCI BRAZI | 464286400 | 120241 | 1489972 | SH | DEFINED | 16,24,25 | 1378183 | 0 | 111789 |
| ISHARES INC | MSCI BRAZI | 464286400 | 9212 | 114157 | SH | DEFINED | 16,19,24,26,27 | 114157 | 0 | 0 |
| ISHARES INC | MSCI BRAZI | 464286400 | 20312 | 251700 | SH | CALL DEFINED | 15,16,24 | 251700 | 0 | 0 |
| ISHARES INC | MSCI BRAZI | 464286400 | 4842 | 60000 | SH | CALL DEFINED | 16,24,25 | 60000 | 0 | 0 |
| ISHARES INC | MSCI BRAZI | 464286400 | 2001 | 24800 | SH | PUT DEFINED | 7,11 | 24800 | 0 | 0 |
| ISHARES INC | MSCI BRAZI | 464286400 | 31820 | 394300 | SH | PUT DEFINED | 15,16,24 | 394300 | 0 | 0 |
| ISHARES INC | MSCI CDA I | 464286509 | 717 | 22323 | SH | DEFINED | 15,16,24 | 22323 | 0 | 0 |
| ISHARES INC | MSCI CDA I | 464286509 | 16325 | 508254 | SH | DEFINED | 16,24,25 | 439952 | 0 | 68302 |
| ISHARES INC | MSCI CDA I | 464286509 | 1715 | 53400 | SH | PUT DEFINED | 15,16,24 | 53400 | 0 | 0 |
| ISHARES INC | MSCI EMU I | 464286608 | 14 | 115 | SH | DEFINED | 7,11,13 | 0 | 0 | 115 |
| ISHARES INC | MSCI EMU I | 464286608 | 14618 | 122507 | SH | DEFINED | 16,24,25 | 114226 | 0 | 8280 |
| ISHARES INC | MSCI BRIC | 464286657 | 4 | 75 | SH | DEFINED | 16,24 | 75 | 0 | 0 |
| ISHARES INC | MSCI BRIC | 464286657 | 793 | 13324 | SH | DEFINED | 16,24,25 | 10952 | 0 | 2372 |
| ISHARES INC | MSCI PAC J | 464286665 | 525 | 3400 | SH | DEFINED | 7,11 | 0 | 0 | 3400 |
| ISHARES INC | MSCI PAC J | 464286665 | 14 | 90 | SH | DEFINED | 7,11,33 | 0 | 0 | 90 |
| ISHARES INC | MSCI PAC J | 464286665 | 32576 | 211148 | SH | DEFINED | 16,24,25 | 178746 | 0 | 32401 |
| ISHARES INC | MSCI SINGA | 464286673 | 62 | 4475 | SH | DEFINED | 7,11,33 | 0 | 0 | 4475 |
| ISHARES INC | MSCI SINGA | 464286673 | 34246 | 2483389 | SH | DEFINED | 16,24,25 | 2282054 | 0 | 201334 |
| ISHARES INC | MSCI SINGA | 464286673 | 827 | 60000 | SH | DEFINED | 16,17,22,24 | 60000 | 0 | 0 |
| ISHARES INC | MSCI UTD K | 464286699 | 98 | 4058 | SH | DEFINED | 7,11,33 | 0 | 0 | 4058 |
| ISHARES INC | MSCI UTD K | 464286699 | 107246 | 4453728 | SH | DEFINED | 16,24,25 | 4181975 | 0 | 271752 |
| ISHARES INC | MSCI FRANC | 464286707 | 109 | 2865 | SH | DEFINED | 7,11,33 | 0 | 0 | 2865 |
| ISHARES INC | MSCI FRANC | 464286707 | 101103 | 2658496 | SH | DEFINED | 16,24,25 | 2494777 | 0 | 163719 |
| ISHARES INC | MSCI TAIWA | 464286731 | 1468 | 97699 | SH | DEFINED | 7,11 | 97699 | 0 | 0 |
| ISHARES INC | MSCI TAIWA | 464286731 | 910 | 60578 | SH | DEFINED | 7,11,33 | 0 | 0 | 60578 |
| ISHARES INC | MSCI TAIWA | 464286731 | 19959 | 1327930 | SH | DEFINED | 16,24,25 | 1172239 | 0 | 155691 |
| ISHARES INC | MSCI SWITZ | 464286749 | 6362 | 244803 | SH | DEFINED | 16,24,25 | 233318 | 0 | 11485 |
| ISHARES INC | MSCI SWEDE | 464286756 | 61 | 2000 | SH | DEFINED | 7,11,33 | 0 | 0 | 2000 |
| ISHARES INC | MSCI SWEDE | 464286756 | 7551 | 245811 | SH | DEFINED | 16,24,25 | 228848 | 0 | 16963 |
| ISHARES INC | MSCI SPAIN | 464286764 | 80 | 1261 | SH | DEFINED | 7,11,33 | 0 | 0 | 1261 |
| ISHARES INC | MSCI SPAIN | 464286764 | 138137 | 2170252 | SH | DEFINED | 16,24,25 | 2029893 | 0 | 140359 |
| ISHARES INC | MSCI S KOR | 464286772 | 1248 | 19294 | SH | DEFINED | 7,11,33 | 0 | 0 | 19294 |
| ISHARES INC | MSCI S KOR | 464286772 | 76216 | 1177998 | SH | DEFINED | 16,24,25 | 1087086 | 0 | 90912 |
| ISHARES INC | MSCI S KOR | 464286772 | 1808 | 27950 | SH | DEFINED | 16,17,22,24 | 27950 | 0 | 0 |
| ISHARES INC | MSCI STH A | 464286780 | 11828 | 90907 | SH | DEFINED | 16,24,25 | 82878 | 0 | 8029 |
| ISHARES INC | MSCI GERMA | 464286806 | 6120 | 172673 | SH | DEFINED | 15,16,24 | 172673 | 0 | 0 |
| ISHARES INC | MSCI GERMA | 464286806 | 29682 | 837540 | SH | DEFINED | 16,24,25 | 784403 | 0 | 53137 |
| ISHARES INC | MSCI GERMA | 464286806 | 312 | 8800 | SH | CALL DEFINED | 15,16,24 | 8800 | 0 | 0 |
| ISHARES INC | MSCI GERMA | 464286806 | 7368 | 207900 | SH | PUT DEFINED | 15,16,24 | 207900 | 0 | 0 |
| ISHARES INC | MSCI NETHE | 464286814 | 4526 | 151057 | SH | DEFINED | 16,24,25 | 145928 | 0 | 5129 |
| ISHARES INC | MSCI MEXIC | 464286822 | 1940 | 34646 | SH | DEFINED | 7,11 | 34646 | 0 | 0 |
| ISHARES INC | MSCI MEXIC | 464286822 | 23616 | 421706 | SH | DEFINED | 16,24,25 | 374633 | 0 | 47073 |
| ISHARES INC | MSCI MALAY | 464286830 | 40551 | 3185435 | SH | DEFINED | 16,24,25 | 2840017 | 0 | 345417 |
| ISHARES INC | MSCI MALAY | 464286830 | 1909 | 149985 | SH | DEFINED | 16,19,24,26,27 | 149985 | 0 | 0 |
| ISHARES INC | MSCI JAPAN | 464286848 | 3694 | 277950 | SH | DEFINED | 7,11 | 147000 | 0 | 130950 |
| ISHARES INC | MSCI JAPAN | 464286848 | 3 | 250 | SH | DEFINED | 16,24 | 250 | 0 | 0 |
| ISHARES INC | MSCI JAPAN | 464286848 | 9 | 700 | SH | DEFINED | 7,11,13 | 700 | 0 | 0 |
| ISHARES INC | MSCI JAPAN | 464286848 | 84 | 6325 | SH | DEFINED | 7,11,33 | 0 | 0 | 6325 |
| ISHARES INC | MSCI JAPAN | 464286848 | 27092 | 2038526 | SH | DEFINED | 16,24,25 | 2038526 | 0 | 0 |
| ISHARES INC | MSCI JAPAN | 464286848 | 98817 | 7435426 | SH | DEFINED | 16,24,25 | 6829810 | 0 | 605615 |
| ISHARES INC | MSCI JAPAN | 464286848 | 2505 | 188500 | SH | CALL DEFINED | 15,16,24 | 188500 | 0 | 0 |
| ISHARES INC | MSCI JAPAN | 464286848 | 27 | 2000 | SH | CALL DEFINED | 16,24,25 | 2000 | 0 | 0 |
| ISHARES INC | MSCI JAPAN | 464286848 | 5010 | 377000 | SH | PUT DEFINED | 7,11 | 377000 | 0 | 0 |
| ISHARES INC | MSCI JAPAN | 464286848 | 23208 | 1746300 | SH | PUT DEFINED | 15,16,24 | 1746300 | 0 | 0 |
| ISHARES INC | MSCI ITALY | 464286855 | 5 | 150 | SH | DEFINED | 7,11,33 | 0 | 0 | 150 |
| ISHARES INC | MSCI ITALY | 464286855 | 6689 | 203051 | SH | DEFINED | 16,24,25 | 193651 | 0 | 9400 |
| ISHARES INC | MSCI HONG | 464286871 | 829 | 37787 | SH | DEFINED | 7,11 | 37787 | 0 | 0 |
| ISHARES INC | MSCI HONG | 464286871 | 55 | 2517 | SH | DEFINED | 7,11,13 | 2517 | 0 | 0 |
| ISHARES INC | MSCI HONG | 464286871 | 937 | 42717 | SH | DEFINED | 7,11,33 | 0 | 0 | 42717 |
| ISHARES INC | MSCI HONG | 464286871 | 3251 | 148234 | SH | DEFINED | 15,16,24 | 148234 | 0 | 0 |
| ISHARES INC | MSCI HONG | 464286871 | 39852 | 1817242 | SH | DEFINED | 16,24,25 | 1683792 | 0 | 133450 |
| ISHARES INC | MSCI HONG | 464286871 | 4175 | 190400 | SH | CALL DEFINED | 15,16,24 | 190400 | 0 | 0 |
| ISHARES INC | MSCI HONG | 464286871 | 548 | 25000 | SH | CALL DEFINED | 16,24,25 | 25000 | 0 | 0 |
| ISHARES INC | MSCI HONG | 464286871 | 4309 | 196500 | SH | PUT DEFINED | 15,16,24 | 196500 | 0 | 0 |
| ISHARES INC | MSCI HONG | 464286871 | 548 | 25000 | SH | PUT DEFINED | 16,24,25 | 25000 | 0 | 0 |
| ISHARES TR | S&P 100 ID | 464287101 | 1900 | 27620 | SH | DEFINED | 7,11 | 27470 | 0 | 150 |
| ISHARES TR | S&P 100 ID | 464287101 | 6378 | 92700 | SH | DEFINED | 15,16,24 | 92700 | 0 | 0 |
| ISHARES TR | S&P 100 ID | 464287101 | 39012 | 567036 | SH | DEFINED | 16,24,25 | 509574 | 0 | 57462 |
| ISHARES TR | S&P 100 ID | 464287101 | 14 | 200 | SH | PUT DEFINED | 16,24,25 | 200 | 0 | 0 |
| ISHARES TR | LRGE GRW I | 464287119 | 25 | 350 | SH | DEFINED | 7,11,33 | 0 | 0 | 350 |
| ISHARES TR | LRGE GRW I | 464287119 | 22648 | 316843 | SH | DEFINED | 16,24,25 | 265503 | 0 | 51339 |
| ISHARES TR | LRGE COMP | 464287127 | 3226 | 40094 | SH | DEFINED | 16,24,25 | 35678 | 0 | 4416 |
| ISHARES TR | NYSE 1001N | 464287135 | 1405 | 18488 | SH | DEFINED | 16,24,25 | 16315 | 0 | 2173 |
| ISHARES TR | S&P 1500 I | 464287150 | 254 | 1954 | SH | DEFINED | 16,24,25 | 1914 | 0 | 40 |
| ISHARES TR | DJ SEL DIV | 464287168 | 66828 | 1036254 | SH | DEFINED | 7,11 | 1036254 | 0 | 0 |
| ISHARES TR | DJ SEL DIV | 464287168 | 74 | 1145 | SH | DEFINED | 7,11,33 | 0 | 0 | 1145 |
| ISHARES TR | DJ SEL DIV | 464287168 | 124366 | 1928455 | SH | DEFINED | 16,24,25 | 1570542 | 0 | 357912 |
| ISHARES TR | DJ SEL DIV | 464287168 | 64490 | 1000000 | SH | CALL DEFINED | 7,11 | 1000000 | 0 | 0 |
| ISHARES TR | US TIPS BD | 464287176 | 3432 | 32438 | SH | DEFINED | 7,11 | 32438 | 0 | 0 |
| ISHARES TR | US TIPS BD | 464287176 | 32 | 300 | SH | DEFINED | 7,11,33 | 0 | 0 | 300 |
| ISHARES TR | US TIPS BD | 464287176 | 158707 | 1500065 | SH | DEFINED | 16,24,25 | 1388671 | 0 | 111393 |
| ISHARES TR | FTSE XINHUA | 464287184 | 712 | 4177 | SH | DEFINED | 7,11 | 4177 | 0 | 0 |
| ISHARES TR | FTSE XINHUA | 464287184 | 72 | 422 | SH | DEFINED | 7,11,33 | 0 | 0 | 422 |
| ISHARES TR | FTSE XINHUA | 464287184 | 92997 | 545596 | SH | DEFINED | 16,24,25 | 491810 | 0 | 53786 |
| ISHARES TR | FTSE XINHUA | 464287184 | 5878 | 34488 | SH | DEFINED | 16,17,22,24 | 34488 | 0 | 0 |
| ISHARES TR | FTSE XINHUA | 464287184 | 78509 | 460600 | SH | CALL DEFINED | 15,16,24 | 460600 | 0 | 0 |
| ISHARES TR | FTSE XINHUA | 464287184 | 19056 | 111800 | SH | CALL DEFINED | 16,24,25 | 111800 | 0 | 0 |
| ISHARES TR | FTSE XINHUA | 464287184 | 116724 | 684800 | SH | PUT DEFINED | 15,16,24 | 684800 | 0 | 0 |
| ISHARES TR | FTSE XINHUA | 464287184 | 127514 | 748100 | SH | PUT DEFINED | 15,16,24 | 748100 | 0 | 0 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ISHARES TR | FTSE XNHUA | 464287184 | 29317 | 172000 | SH | PUT | DEFINED | 16,24,25 | 172000 | 0 | 0 |
| ISHARES TR | TRANSP AVE | 464287192 | 31 | 381 | SH | | DEFINED | 7,11,33 | 0 | 0 | 381 |
| ISHARES TR | TRANSP AVE | 464287192 | 43146 | 531030 | SH | | DEFINED | 16,24,25 | 492004 | 0 | 39025 |
| ISHARES TR | S&P 500 IN | 464287200 | 461 | 3140 | SH | | DEFINED | 7,11 | 0 | 0 | 3140 |
| ISHARES TR | S&P 500 IN | 464287200 | 7 | 50 | SH | | DEFINED | 16,24 | 50 | 0 | 0 |
| ISHARES TR | S&P 500 IN | 464287200 | 155 | 1059 | SH | | DEFINED | 7,11,13 | 0 | 0 | 1059 |
| ISHARES TR | S&P 500 IN | 464287200 | 115570 | 787586 | SH | | DEFINED | 16,24,25 | 757212 | 0 | 30373 |
| ISHARES TR | LEHMAN AGG | 464287226 | 95 | 936 | SH | | DEFINED | 7,11,13 | 0 | 0 | 936 |
| ISHARES TR | LEHMAN AGG | 464287226 | 51 | 500 | SH | | DEFINED | 7,11,33 | 0 | 0 | 500 |
| ISHARES TR | LEHMAN AGG | 464287226 | 133506 | 1319624 | SH | | DEFINED | 16,24,25 | 1272936 | 0 | 46688 |
| ISHARES TR | MSCI EMERG | 464287234 | 1142 | 7600 | SH | | DEFINED | 12 | 0 | 0 | 7600 |
| ISHARES TR | MSCI EMERG | 464287234 | 29414 | 195703 | SH | | DEFINED | 7,11 | 186171 | 0 | 9532 |
| ISHARES TR | MSCI EMERG | 464287234 | 1268 | 8437 | SH | | DEFINED | 7,11,33 | 0 | 0 | 8437 |
| ISHARES TR | MSCI EMERG | 464287234 | 242188 | 1611365 | SH | | DEFINED | 16,24,25 | 1486806 | 0 | 124559 |
| ISHARES TR | MSCI EMERG | 464287234 | 28557 | 190000 | SH | CALL | DEFINED | 7,11 | 190000 | 0 | 0 |
| ISHARES TR | MSCI EMERG | 464287234 | 74624 | 496500 | SH | CALL | DEFINED | 15,16,24 | 496500 | 0 | 0 |
| ISHARES TR | MSCI EMERG | 464287234 | 751500 | 5000000 | SH | CALL | DEFINED | 16,19,24,26,27 | 5000000 | 0 | 0 |
| ISHARES TR | MSCI EMERG | 464287234 | 636821 | 4237000 | SH | PUT | DEFINED | 7,11 | 4237000 | 0 | 0 |
| ISHARES TR | MSCI EMERG | 464287234 | 118557 | 788800 | SH | PUT | DEFINED | 15,16,24 | 788800 | 0 | 0 |
| ISHARES TR | MSCI EMERG | 464287234 | 46368 | 308500 | SH | PUT | DEFINED | 16,24,25 | 308500 | 0 | 0 |
| ISHARES TR | IBOXX INV | 464287242 | 2151 | 20520 | SH | | DEFINED | 7,11,33 | 0 | 0 | 20520 |
| ISHARES TR | IBOXX INV | 464287242 | 61588 | 587450 | SH | | DEFINED | 16,24,25 | 549434 | 0 | 38015 |
| ISHARES TR | S&P GBL TE | 464287275 | 18 | 231 | SH | | DEFINED | 7,11,33 | 0 | 0 | 231 |
| ISHARES TR | S&P GBL TE | 464287275 | 22125 | 285739 | SH | | DEFINED | 16,24,25 | 257243 | 0 | 28496 |
| ISHARES TR | S&P GBL IN | 464287291 | 11644 | 178047 | SH | | DEFINED | 16,24,25 | 161251 | 0 | 16796 |
| ISHARES TR | S&P500 GRW | 464287309 | 1344 | 19250 | SH | | DEFINED | 7,11 | 19250 | 0 | 0 |
| ISHARES TR | S&P500 GRW | 464287309 | 64297 | 920768 | SH | | DEFINED | 16,24,25 | 869331 | 0 | 51437 |
| ISHARES TR | S&P GBL HI | 464287325 | 15518 | 266127 | SH | | DEFINED | 16,24,25 | 234687 | 0 | 31440 |
| ISHARES TR | S&P GBL FI | 464287333 | 7461 | 93483 | SH | | DEFINED | 16,24,25 | 86709 | 0 | 6774 |
| ISHARES TR | S&P GBL EN | 464287341 | 19163 | 135066 | SH | | DEFINED | 16,24,25 | 122043 | 0 | 13023 |
| ISHARES TR | S&P GSSI N | 464287374 | 134 | 1000 | SH | | DEFINED | 7,11 | 0 | 0 | 1000 |
| ISHARES TR | S&P GSSI N | 464287374 | 83 | 615 | SH | | DEFINED | 7,11,33 | 0 | 0 | 615 |
| ISHARES TR | S&P GSSI N | 464287374 | 54837 | 408074 | SH | | DEFINED | 16,24,25 | 379438 | 0 | 28635 |
| ISHARES TR | S&P/TOPIX | 464287382 | 1104 | 9463 | SH | | DEFINED | 16,24,25 | 8453 | 0 | 1010 |
| ISHARES TR | S&P LTN AM | 464287390 | 158 | 635 | SH | | DEFINED | 7,11,33 | 0 | 0 | 635 |
| ISHARES TR | S&P LTN AM | 464287390 | 79520 | 319473 | SH | | DEFINED | 16,24,25 | 296594 | 0 | 22878 |
| ISHARES TR | S&P LTN AM | 464287390 | 1245 | 5000 | SH | | DEFINED | 16,19,24,26,27 | 5000 | 0 | 0 |
| ISHARES TR | S&P 500 VA | 464287408 | 36355 | 476095 | SH | | DEFINED | 16,24,25 | 450948 | 0 | 25146 |
| ISHARES TR | 20+ YR TRS | 464287432 | 30667 | 329594 | SH | | DEFINED | 16,24,25 | 282770 | 0 | 46824 |
| ISHARES TR | 20+ YR TRS | 464287432 | 102219 | 1098600 | SH | CALL | DEFINED | 15,16,24 | 1098600 | 0 | 0 |
| ISHARES TR | 20+ YR TRS | 464287432 | 172161 | 1850300 | SH | PUT | DEFINED | 15,16,24 | 1850300 | 0 | 0 |
| ISHARES TR | 7-10 YR TR | 464287440 | 70 | 800 | SH | | DEFINED | 7,11,33 | 0 | 0 | 800 |
| ISHARES TR | 7-10 YR TR | 464287440 | 85665 | 984541 | SH | | DEFINED | 16,24,25 | 911432 | 0 | 73108 |
| ISHARES TR | 7-10 YR TR | 464287440 | 21230 | 244000 | SH | CALL | DEFINED | 15,16,24 | 244000 | 0 | 0 |
| ISHARES TR | 7-10 YR TR | 464287440 | 5125 | 58900 | SH | PUT | DEFINED | 15,16,24 | 58900 | 0 | 0 |
| ISHARES TR | 1-3 YR TRS | 464287457 | 29 | 350 | SH | | DEFINED | 7,11,33 | 0 | 0 | 350 |
| ISHARES TR | 1-3 YR TRS | 464287457 | 196375 | 2389276 | SH | | DEFINED | 16,24,25 | 2196179 | 0 | 193097 |
| ISHARES TR | 1-3 YR TRS | 464287457 | 8186 | 99600 | SH | CALL | DEFINED | 15,16,24 | 99600 | 0 | 0 |
| ISHARES TR | 1-3 YR TRS | 464287457 | 164 | 2000 | SH | PUT | DEFINED | 15,16,24 | 2000 | 0 | 0 |
| ISHARES TR | MSCI EAFE | 464287465 | 942 | 12000 | SH | | DEFINED | 12 | 0 | 0 | 12000 |
| ISHARES TR | MSCI EAFE | 464287465 | 10703 | 136342 | SH | | DEFINED | 7,11 | 0 | 6014 | 130328 |
| ISHARES TR | MSCI EAFE | 464287465 | 333 | 4243 | SH | | DEFINED | 7,11,33 | 0 | 0 | 4243 |
| ISHARES TR | MSCI EAFE | 464287465 | 1916 | 24409 | SH | | DEFINED | 7,11,33 | 0 | 0 | 24409 |
| ISHARES TR | MSCI EAFE | 464287465 | 671747 | 8557281 | SH | | DEFINED | 16,24,25 | 7940856 | 0 | 616425 |
| ISHARES TR | MSCI EAFE | 464287465 | 34501 | 439500 | SH | CALL | DEFINED | 15,16,24 | 439500 | 0 | 0 |
| ISHARES TR | MSCI EAFE | 464287465 | 16 | 200 | SH | | DEFINED | 16,24,25 | 200 | 0 | 0 |
| ISHARES TR | MSCI EAFE | 464287465 | 27247 | 347100 | SH | PUT | DEFINED | 15,16,24 | 347100 | 0 | 0 |
| ISHARES TR | RUSSELL MC | 464287473 | 395 | 2800 | SH | | DEFINED | 7,11 | 0 | 0 | 2800 |
| ISHARES TR | RUSSELL MC | 464287473 | 257 | 1821 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1821 |
| ISHARES TR | RUSSELL MC | 464287473 | 65159 | 461923 | SH | | DEFINED | 16,24,25 | 438426 | 0 | 23496 |
| ISHARES TR | RUSSELL MC | 464287481 | 351 | 3080 | SH | | DEFINED | 7,11,33 | 0 | 0 | 3080 |
| ISHARES TR | RUSSELL MC | 464287481 | 88217 | 774240 | SH | | DEFINED | 16,24,25 | 725811 | 0 | 48429 |
| ISHARES TR | RUSSELL MI | 464287499 | 150 | 1450 | SH | | DEFINED | 7,11 | 0 | 0 | 1450 |
| ISHARES TR | RUSSELL MI | 464287499 | 91 | 880 | SH | | DEFINED | 7,11,33 | 0 | 0 | 880 |
| ISHARES TR | RUSSELL MI | 464287499 | 45798 | 442321 | SH | | DEFINED | 16,24,25 | 410299 | 0 | 32021 |
| ISHARES TR | S&P MIDCAP | 464287507 | 8 | 100 | SH | | DEFINED | 7,11 | 0 | 0 | 100 |
| ISHARES TR | S&P MIDCAP | 464287507 | 13 | 150 | SH | | DEFINED | 7,11,13 | 150 | 0 | 0 |
| ISHARES TR | S&P MIDCAP | 464287507 | 46464 | 547022 | SH | | DEFINED | 16,24,25 | 504626 | 0 | 42395 |
| ISHARES TR | S&P GSTI S | 464287515 | 33 | 637 | SH | | DEFINED | 7,11,33 | 0 | 0 | 637 |
| ISHARES TR | S&P GSTI S | 464287515 | 63271 | 1226191 | SH | | DEFINED | 16,24,25 | 1141507 | 0 | 84684 |
| ISHARES TR | S&P GSTI S | 464287523 | 17 | 292 | SH | | DEFINED | 7,11,33 | 0 | 0 | 292 |
| ISHARES TR | S&P GSTI S | 464287523 | 11359 | 191196 | SH | | DEFINED | 16,24,25 | 171038 | 0 | 20158 |
| ISHARES TR | S&P GSTI N | 464287531 | 3 | 85 | SH | | DEFINED | 7,11,33 | 0 | 0 | 85 |
| ISHARES TR | S&P GSTI N | 464287531 | 13534 | 397718 | SH | | DEFINED | 16,24,25 | 387008 | 0 | 10710 |
| ISHARES TR | S&P GSTI T | 464287549 | 28129 | 472036 | SH | | DEFINED | 16,24,25 | 435268 | 0 | 36768 |
| ISHARES TR | NASDQ BIO | 464287556 | 8 | 100 | SH | | DEFINED | 7,11,13 | 100 | 0 | 0 |
| ISHARES TR | NASDQ BIO | 464287556 | 127 | 1561 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1561 |
| ISHARES TR | NASDQ BIO | 464287556 | 45511 | 560622 | SH | | DEFINED | 16,24,25 | 419368 | 0 | 141253 |
| ISHARES TR | NASDQ BIO | 464287556 | 13630 | 167900 | SH | CALL | DEFINED | 15,16,24 | 167900 | 0 | 0 |
| ISHARES TR | NASDQ BIO | 464287556 | 12575 | 154900 | SH | PUT | DEFINED | 15,16,24 | 154900 | 0 | 0 |
| ISHARES TR | COHEN&ST R | 464287564 | 387 | 4886 | SH | | DEFINED | 7,11,13 | 2650 | 0 | 2236 |
| ISHARES TR | COHEN&ST R | 464287564 | 70 | 881 | SH | | DEFINED | 7,11,33 | 0 | 0 | 881 |
| ISHARES TR | COHEN&ST R | 464287564 | 19252 | 243264 | SH | | DEFINED | 16,24,25 | 231872 | 0 | 11392 |
| ISHARES TR | S&P GLB100 | 464287572 | 18920 | 233667 | SH | | DEFINED | 16,24,25 | 210159 | 0 | 23508 |
| ISHARES TR | CONS SRVC | 464287580 | 133 | 2158 | SH | | DEFINED | 7,11,33 | 0 | 0 | 2158 |
| ISHARES TR | CONS SRVC | 464287580 | 22999 | 371970 | SH | | DEFINED | 16,24,25 | 347653 | 0 | 24317 |
| ISHARES TR | RUSSELL100 | 464287598 | 149 | 1853 | SH | | DEFINED | 7,11 | 0 | 0 | 1853 |
| ISHARES TR | RUSSELL100 | 464287598 | 1369 | 17064 | SH | | DEFINED | 7,11,33 | 0 | 0 | 17064 |
| ISHARES TR | RUSSELL100 | 464287598 | 316889 | 3948773 | SH | | DEFINED | 16,24,25 | 3763882 | 0 | 184891 |
| ISHARES TR | S&P MC 400 | 464287606 | 505 | 5669 | SH | | DEFINED | 7,11,33 | 0 | 0 | 5669 |
| ISHARES TR | S&P MC 400 | 464287606 | 59246 | 664792 | SH | | DEFINED | 16,24,25 | 632139 | 0 | 32653 |
| ISHARES TR | RUSSELL100 | 464287614 | 166 | 2724 | SH | | DEFINED | 7,11 | 0 | 0 | 2724 |
| ISHARES TR | RUSSELL100 | 464287614 | 304 | 5000 | SH | | DEFINED | 7,11,13 | 4000 | 0 | 1000 |
| ISHARES TR | RUSSELL100 | 464287614 | 2723 | 44795 | SH | | DEFINED | 7,11,33 | 0 | 0 | 44795 |
| ISHARES TR | RUSSELL100 | 464287614 | 585441 | 9632135 | SH | | DEFINED | 16,24,25 | 8999302 | 0 | 632833 |
| ISHARES TR | RUSSELL 10 | 464287622 | 16 | 207 | SH | | DEFINED | 7,11,33 | 0 | 0 | 207 |
| ISHARES TR | RUSSELL 10 | 464287622 | 36527 | 458883 | SH | | DEFINED | 16,24,25 | 336368 | 0 | 122515 |
| ISHARES TR | RUSSELL 10 | 464287622 | 10444 | 131200 | SH | | DEFINED | 4,6,7,11 | 131200 | 0 | 0 |
| ISHARES TR | RUSL 2000 | 464287630 | 486 | 6900 | SH | | DEFINED | 7,11 | 0 | 0 | 6900 |
| ISHARES TR | RUSL 2000 | 464287630 | 333 | 4725 | SH | | DEFINED | 7,11,33 | 0 | 0 | 4725 |
| ISHARES TR | RUSL 2000 | 464287630 | 828 | 11751 | SH | | DEFINED | 15,16,24 | 11751 | 0 | 0 |
| ISHARES TR | RUSL 2000 | 464287630 | 61956 | 879053 | SH | | DEFINED | 16,24,25 | 811398 | 0 | 67655 |
| ISHARES TR | RUSL 2000 | 464287630 | 36424 | 516800 | SH | CALL | DEFINED | 15,16,24 | 516800 | 0 | 0 |
| ISHARES TR | RUSL 2000 | 464287630 | 7 | 100 | SH | CALL | DEFINED | 16,24,25 | 100 | 0 | 0 |
| ISHARES TR | RUSL 2000 | 464287630 | 52790 | 749000 | SH | PUT | DEFINED | 15,16,24 | 749000 | 0 | 0 |
| ISHARES TR | RUSL 2000 | 464287648 | 543 | 6500 | SH | | DEFINED | 7,11 | 0 | 0 | 6500 |
| ISHARES TR | RUSL 2000 | 464287648 | 210 | 2510 | SH | | DEFINED | 7,11,33 | 0 | 0 | 2510 |
| ISHARES TR | RUSL 2000 | 464287648 | 78025 | 934652 | SH | | DEFINED | 16,24,25 | 884044 | 0 | 50607 |
| ISHARES TR | RUSL 2000 | 464287648 | 5343 | 64000 | SH | CALL | DEFINED | 15,16,24 | 64000 | 0 | 0 |
| ISHARES TR | RUSL 2000 | 464287648 | 2062 | 24700 | SH | PUT | DEFINED | 15,16,24 | 24700 | 0 | 0 |
| ISHARES TR | RUSSELL 20 | 464287655 | 573 | 7543 | SH | | DEFINED | 7,11 | 0 | 0 | 7543 |
| ISHARES TR | RUSSELL 20 | 464287655 | 8 | 100 | SH | | DEFINED | 16,24 | 100 | 0 | 0 |
| ISHARES TR | RUSSELL 20 | 464287655 | 89776 | 1182511 | SH | | DEFINED | 16,24,25 | 915998 | 0 | 266512 |
| ISHARES TR | RUSSELL 20 | 464287655 | 4624 | 60900 | SH | | DEFINED | 4,6,7,11 | 60900 | 0 | 0 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ISHARES TR | RUSSELL 20 | 464287655 | 348465 | 4589900 | SH | CALL | DEFINED | 15,16,24 | 4589900 | 0 | 0 |
| ISHARES TR | RUSSELL 20 | 464287655 | 367271 | 4837600 | SH | CALL | DEFINED | 16,24,25 | 4837600 | 0 | 0 |
| ISHARES TR | RUSSELL 20 | 464287655 | 325682 | 4289800 | SH | PUT | DEFINED | 15,16,24 | 4289800 | 0 | 0 |
| ISHARES TR | RUSSELL 20 | 464287655 | 468776 | 6174600 | SH | PUT | DEFINED | 16,24,25 | 6174600 | 0 | 0 |
| ISHARES TR | RUSL 3000 | 464287663 | 930 | 8950 | SH | | DEFINED | 16,24,25 | 8265 | 0 | 684 |
| ISHARES TR | RUSL 3000 | 464287671 | 16609 | 335264 | SH | | DEFINED | 16,24,25 | 328192 | 0 | 7072 |
| ISHARES TR | RUSSELL 30 | 464287689 | 89 | 1059 | SH | | DEFINED | 12 | 0 | 0 | 1059 |
| ISHARES TR | RUSSELL 30 | 464287689 | 80 | 948 | SH | | DEFINED | 7,11 | 0 | 0 | 948 |
| ISHARES TR | RUSSELL 30 | 464287689 | 1034 | 12257 | SH | | DEFINED | 7,11,13 | 0 | 0 | 12257 |
| ISHARES TR | RUSSELL 30 | 464287689 | 59949 | 710301 | SH | | DEFINED | 16,24,25 | 458485 | 0 | 251816 |
| ISHARES TR | DJ US UTIL | 464287697 | 159 | 1555 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1555 |
| ISHARES TR | DJ US UTIL | 464287697 | 55945 | 546286 | SH | | DEFINED | 16,24,25 | 508929 | 0 | 37357 |
| ISHARES TR | S&P MIDCP | 464287705 | 1909 | 24000 | SH | | DEFINED | 7,11 | 24000 | 0 | 0 |
| ISHARES TR | S&P MIDCP | 464287705 | 458 | 5754 | SH | | DEFINED | 7,11,33 | 0 | 0 | 5754 |
| ISHARES TR | S&P MIDCP | 464287705 | 54082 | 679760 | SH | | DEFINED | 16,24,25 | 635281 | 0 | 44478 |
| ISHARES TR | DJ US TELE | 464287713 | 48 | 1615 | SH | | DEFINED | 7,11,13 | 1615 | 0 | 0 |
| ISHARES TR | DJ US TELE | 464287713 | 198 | 6713 | SH | | DEFINED | 7,11,33 | 0 | 0 | 6713 |
| ISHARES TR | DJ US TELE | 464287713 | 47129 | 1596523 | SH | | DEFINED | 16,24,25 | 1492450 | 0 | 104072 |
| ISHARES TR | DJ US TECH | 464287721 | 226 | 3614 | SH | | DEFINED | 7,11,33 | 0 | 0 | 3614 |
| ISHARES TR | DJ US TECH | 464287721 | 46711 | 747851 | SH | | DEFINED | 16,24,25 | 700465 | 0 | 47386 |
| ISHARES TR | DJ US REAL | 464287739 | 127 | 1927 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1927 |
| ISHARES TR | DJ US REAL | 464287739 | 19337 | 294323 | SH | | DEFINED | 16,24,25 | 277066 | 0 | 17256 |
| ISHARES TR | DJ US REAL | 464287739 | 986 | 15000 | SH | | DEFINED | 16,19,24,26,27 | 15000 | 0 | 0 |
| ISHARES TR | DJ US REAL | 464287739 | 21201 | 322700 | SH | CALL | DEFINED | 15,16,24 | 322700 | 0 | 0 |
| ISHARES TR | DJ US REAL | 464287739 | 2470 | 37600 | SH | CALL | DEFINED | 16,24,25 | 37600 | 0 | 0 |
| ISHARES TR | DJ US REAL | 464287739 | 81166 | 1235400 | SH | PUT | DEFINED | 15,16,24 | 1235400 | 0 | 0 |
| ISHARES TR | DJ US REAL | 464287739 | 2497 | 38000 | SH | PUT | DEFINED | 16,24,25 | 38000 | 0 | 0 |
| ISHARES TR | DJ US INDU | 464287754 | 140 | 1929 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1929 |
| ISHARES TR | DJ US INDU | 464287754 | 22203 | 304992 | SH | | DEFINED | 16,24,25 | 286948 | 0 | 18044 |
| ISHARES TR | DJ US HEAL | 464287762 | 132 | 1874 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1874 |
| ISHARES TR | DJ US HEAL | 464287762 | 27904 | 394846 | SH | | DEFINED | 16,24,25 | 357147 | 0 | 37698 |
| ISHARES TR | DJ US FINL | 464287770 | 128 | 1252 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1252 |
| ISHARES TR | DJ US FINL | 464287770 | 19520 | 191111 | SH | | DEFINED | 16,24,25 | 181744 | 0 | 9367 |
| ISHARES TR | DJ US FINL | 464287788 | 18343 | 194845 | SH | | DEFINED | 16,24,25 | 170112 | 0 | 24732 |
| ISHARES TR | DJ US ENER | 464287796 | 14 | 100 | SH | | DEFINED | 7,11,13 | 100 | 0 | 0 |
| ISHARES TR | DJ US ENER | 464287796 | 170 | 1243 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1243 |
| ISHARES TR | DJ US ENER | 464287796 | 88833 | 648560 | SH | | DEFINED | 16,24,25 | 593946 | 0 | 54614 |
| ISHARES TR | S&P SMLCAP | 464287804 | 540 | 8300 | SH | | DEFINED | 7,11 | 2000 | 0 | 6300 |
| ISHARES TR | S&P SMLCAP | 464287804 | 71 | 1087 | SH | | DEFINED | 7,11,13 | 600 | 0 | 487 |
| ISHARES TR | S&P SMLCAP | 464287804 | 151 | 2326 | SH | | DEFINED | 7,11,33 | 0 | 0 | 2326 |
| ISHARES TR | S&P SMLCAP | 464287804 | 41873 | 643996 | SH | | DEFINED | 16,24,25 | 595967 | 0 | 48029 |
| ISHARES TR | CONS GOODS | 464287812 | 122 | 1903 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1903 |
| ISHARES TR | CONS GOODS | 464287812 | 21122 | 330438 | SH | | DEFINED | 16,24,25 | 308769 | 0 | 21668 |
| ISHARES TR | DJ US BAS | 464287838 | 123 | 1600 | SH | | DEFINED | 7,11 | 0 | 0 | 1600 |
| ISHARES TR | DJ US BAS | 464287838 | 48 | 625 | SH | | DEFINED | 7,11,13 | 625 | 0 | 0 |
| ISHARES TR | DJ US BAS | 464287838 | 207 | 2685 | SH | | DEFINED | 7,11,33 | 0 | 0 | 2685 |
| ISHARES TR | DJ US BAS | 464287838 | 80657 | 1048032 | SH | | DEFINED | 16,24,25 | 973963 | 0 | 74068 |
| ISHARES TR | DJ US INDE | 464287846 | 4459 | 62332 | SH | | DEFINED | 16,24,25 | 56424 | 0 | 5907 |
| ISHARES TR | S&P EURO P | 464287861 | 286 | 2500 | SH | | DEFINED | 7,11,33 | 0 | 0 | 2500 |
| ISHARES TR | S&P EURO P | 464287861 | 18266 | 159751 | SH | | DEFINED | 16,24,25 | 128507 | 0 | 31243 |
| ISHARES TR | S&P SMLCP | 464287879 | 248 | 3538 | SH | | DEFINED | 7,11,33 | 0 | 0 | 3538 |
| ISHARES TR | S&P SMLCP | 464287879 | 38053 | 5436116 | SH | | DEFINED | 16,24,25 | 520112 | 0 | 2075 |
| ISHARES TR | S&P SMLCP | 464287887 | 280 | 2075 | SH | | DEFINED | 7,11,33 | 0 | 0 | 2075 |
| ISHARES TR | S&P SMLCP | 464287887 | 38481 | 285336 | SH | | DEFINED | 16,24,25 | 269133 | 0 | 16203 |
| ISHARES TR | LARGE VAL | 464288109 | 7407 | 91778 | SH | | DEFINED | 16,24,25 | 88945 | 0 | 2833 |
| ISHARES TR | MID CORE I | 464288208 | 5545 | 67101 | SH | | DEFINED | 16,24,25 | 64751 | 0 | 2350 |
| ISHARES TR | MID GRWTH | 464288307 | 54 | 540 | SH | | DEFINED | 7,11,33 | 0 | 0 | 540 |
| ISHARES TR | MID GRWTH | 464288307 | 17797 | 1778806 | SH | | DEFINED | 16,24,25 | 171481 | 0 | 6325 |
| ISHARES TR | S&P NY MUN | 464288323 | 658 | 6462 | SH | | DEFINED | 16,24,25 | 6337 | 0 | 125 |
| ISHARES TR | S&P CALI E | 464288356 | 8 | 81 | SH | | DEFINED | 16,24 | 81 | 0 | 0 |
| ISHARES TR | S&P CALI E | 464288356 | 345 | 3307 | SH | | DEFINED | 16,24,25 | 3135 | 0 | 172 |
| ISHARES TR | MID VAL IN | 464288406 | 45777 | 58168 | SH | | DEFINED | 16,24,25 | 55932 | 0 | 2235 |
| ISHARES TR | S&P NATL M | 464288414 | 40 | 390 | SH | | DEFINED | 16,24 | 390 | 0 | 0 |
| ISHARES TR | S&P NATL M | 464288414 | 12654 | 124104 | SH | | DEFINED | 16,24,25 | 121569 | 0 | 2535 |
| ISHARES TR | S&P WLD EX | 464288422 | 1683 | 34099 | SH | | DEFINED | 16,24,25 | 33102 | 0 | 997 |
| ISHARES TR | DJ EPAC DI | 464288448 | 1505 | 32539 | SH | | DEFINED | 16,24,25 | 31749 | 0 | 790 |
| ISHARES TR | GBL RL EST | 464288489 | 1774 | 37510 | SH | | DEFINED | 16,24,25 | 35770 | 0 | 1740 |
| ISHARES TR | SMLL CORE | 464288505 | 1636 | 20271 | SH | | DEFINED | 16,24,25 | 19317 | 0 | 954 |
| ISHARES TR | HIGH YLD C | 464288513 | 1053 | 10450 | SH | | DEFINED | 7,11,33 | 0 | 0 | 10450 |
| ISHARES TR | HIGH YLD C | 464288513 | 9053 | 89886 | SH | | DEFINED | 16,24,25 | 85960 | 0 | 3926 |
| ISHARES TR | MRTG REIT | 464288539 | 337 | 11400 | SH | | DEFINED | 16,24,25 | 11400 | 0 | 0 |
| ISHARES TR | KLD 400 ID | 464288570 | 399 | 7650 | SH | | DEFINED | 16,24,25 | 7475 | 0 | 175 |
| ISHARES TR | MBS FIXED | 464288588 | 7722 | 75851 | SH | | DEFINED | 16,24,25 | 72103 | 0 | 3748 |
| ISHARES TR | LEHMAN GOV | 464288596 | 2780 | 27254 | SH | | DEFINED | 16,24,25 | 27199 | 0 | 55 |
| ISHARES TR | SMLL GRWTH | 464288604 | 2750 | 33612 | SH | | DEFINED | 16,24,25 | 30799 | 0 | 2813 |
| ISHARES TR | LEHMAN INT | 464288612 | 3279 | 31881 | SH | | DEFINED | 16,24,25 | 31799 | 0 | 82 |
| ISHARES TR | LEHMAN CR | 464288620 | 2055 | 20548 | SH | | DEFINED | 16,24,25 | 20366 | 0 | 182 |
| ISHARES TR | LEHMAN INT | 464288638 | 6767 | 67017 | SH | | DEFINED | 16,24,25 | 62901 | 0 | 4116 |
| ISHARES TR | LEHMAN 1-3 | 464288646 | 10301 | 101945 | SH | | DEFINED | 16,24,25 | 96902 | 0 | 5042 |
| ISHARES TR | LEHMAN 10- | 464288653 | 1115 | 10620 | SH | | DEFINED | 16,24,25 | 10164 | 0 | 456 |
| ISHARES TR | LEHMAN 3-7 | 464288661 | 11648 | 110388 | SH | | DEFINED | 16,24,25 | 97514 | 0 | 12874 |
| ISHARES TR | LEHMAN SH | 464288679 | 11 | 100 | SH | | DEFINED | 7,11,33 | 0 | 0 | 100 |
| ISHARES TR | LEHMAN SH | 464288679 | 47205 | 430698 | SH | | DEFINED | 16,24,25 | 374559 | 0 | 56139 |
| ISHARES TR | US PFD STK | 464288687 | 11 | 261 | SH | | DEFINED | 16,24 | 261 | 0 | 0 |
| ISHARES TR | US PFD STK | 464288687 | 922 | 22213 | SH | | DEFINED | 16,24,25 | 20213 | 0 | 2000 |
| ISHARES TR | S&G GL MAT | 464288695 | 14796 | 190793 | SH | | DEFINED | 16,24,25 | 157711 | 0 | 33082 |
| ISHARES TR | SMLL VAL I | 464288703 | 2012 | 27191 | SH | | DEFINED | 16,24,25 | 24559 | 0 | 1592 |
| ISHARES TR | S&P GL UTI | 464288711 | 8701 | 125417 | SH | | DEFINED | 16,24,25 | 102890 | 0 | 22527 |
| ISHARES TR | S&P GL IND | 464288729 | 40515 | 639844 | SH | | DEFINED | 16,24,25 | 600261 | 0 | 39583 |
| ISHARES TR | S&P GL C S | 464288737 | 4 | 56 | SH | | DEFINED | 16,24 | 56 | 0 | 0 |
| ISHARES TR | S&P GL C S | 464288737 | 4727 | 75105 | SH | | DEFINED | 16,24,25 | 71153 | 0 | 3952 |
| ISHARES TR | S&P GL CON | 464288745 | 3190 | 58253 | SH | | DEFINED | 16,24,25 | 55688 | 0 | 2565 |
| ISHARES TR | DJ HOME CO | 464288752 | 505 | 28645 | SH | | DEFINED | 7,11,33 | 0 | 0 | 28645 |
| ISHARES TR | DJ HOME CO | 464288752 | 7331 | 415850 | SH | | DEFINED | 16,24,25 | 333143 | 0 | 82707 |
| ISHARES TR | DJ AEROSPA | 464288760 | 33185 | 488514 | SH | | DEFINED | 16,24,25 | 463842 | 0 | 24672 |
| ISHARES TR | DJ REGIONA | 464288778 | 7 | 187 | SH | | DEFINED | 16,24 | 187 | 0 | 0 |
| ISHARES TR | DJ REGIONA | 464288778 | 1793 | 47682 | SH | | DEFINED | 16,24,25 | 36467 | 0 | 11215 |
| ISHARES TR | DJ INS IND | 464288786 | 133 | 2677 | SH | | DEFINED | 7,11,33 | 0 | 0 | 2677 |
| ISHARES TR | DJ INS IND | 464288786 | 10499 | 211462 | SH | | DEFINED | 16,24,25 | 208844 | 0 | 2618 |
| ISHARES TR | DJ BROKER- | 464288794 | 1598 | 31235 | SH | | DEFINED | 7,11 | 31235 | 0 | 0 |
| ISHARES TR | DJ BROKER- | 464288794 | 8012 | 156605 | SH | | DEFINED | 16,24,25 | 140653 | 0 | 15951 |
| ISHARES TR | KLD SL SOC | 464288802 | 166 | 2725 | SH | | DEFINED | 7,11 | 0 | 0 | 2725 |
| ISHARES TR | KLD SL SOC | 464288802 | 807 | 13243 | SH | | DEFINED | 16,24,25 | 13263 | 0 | 0 |
| ISHARES TR | DJ MED DEV | 464288810 | 4678 | 77173 | SH | | DEFINED | 16,24,25 | 68303 | 0 | 8870 |
| ISHARES TR | DJ HEALTH | 464288828 | 23977 | 379206 | SH | | DEFINED | 16,24,25 | 345812 | 0 | 33394 |
| ISHARES TR | DJ PHARMA | 464288836 | 4240 | 78831 | SH | | DEFINED | 16,24,25 | 63468 | 0 | 15363 |
| ISHARES TR | DJ OIL EQU | 464288844 | 21919 | 340561 | SH | | DEFINED | 16,24,25 | 325001 | 0 | 15560 |
| ISHARES TR | DJ OIL&GAS | 464288851 | 15090 | 226919 | SH | | DEFINED | 16,24,25 | 216613 | 0 | 10306 |
| ISHARES TR | RSSL MCRCP | 464288869 | 4959 | 93929 | SH | | DEFINED | 16,24,25 | 88530 | 0 | 5399 |
| ISHARES TR | MSCI VAL I | 464288877 | 753 | 10460 | SH | | DEFINED | 7,11,33 | 0 | 0 | 10460 |
| ISHARES TR | MSCI VAL I | 464288877 | 22410 | 311470 | SH | | DEFINED | 16,24,25 | 305187 | 0 | 6283 |
| ISHARES TR | MSCI GRW I | 464288885 | 974 | 12540 | SH | | DEFINED | 7,11,33 | 0 | 0 | 12540 |
| ISHARES TR | MSCI GRW I | 464288885 | 17711 | 227915 | SH | | DEFINED | 16,24,25 | 222335 | 0 | 5580 |
| ISIS PHARMACEUTICALS COM | | 464330109 | 18 | 1155 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1155 |

| Name | Class | CUSIP | Value | Shares/PRN | SH/PRN | Put/Call | Disc | Mgr Codes | Sole | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ISIS PHARMACEUTICALS | COM | 464330109 | 217 | 13775 | SH | | DEFINED | 15,16,24,25 | 13775 | 0 | |
| ISIS PHARMACEUTICALS | COM | 464330109 | 8149 | 517397 | SH | | DEFINED | 16,24,25 | 442714 | 0 | 74683 |
| ISIS PHARMACEUTICALS | COM | 464330109 | 2666 | 169300 | SH | CALL | DEFINED | 15,16,24 | 169300 | 0 | |
| ISIS PHARMACEUTICALS | COM | 464330109 | 2416 | 153400 | SH | PUT | DEFINED | 16,24,25 | 153400 | 0 | |
| ISIS PHARMACEUTICALS | NOTE 2.62 | 46437A8R4 | 17549 | 13591000 | PRN | | DEFINED | 16,24,25 | 13591000 | 0 | |
| ITRON INC | NOTE 2.50 | 465741AJ75 | 489 | 305000 | PRN | | DEFINED | 16,24,25 | 305000 | 0 | |
| ITRON INC | COM | 465741106 | 644 | 6713 | SH | | DEFINED | 7,11 | 6713 | 0 | |
| ITRON INC | COM | 465741106 | 1304 | 13591 | SH | | DEFINED | 7,11,33 | 0 | | 13591 |
| ITRON INC | COM | 465741106 | 8726 | 90919 | SH | | DEFINED | 16,24,25 | 72323 | 0 | 18596 |
| ITRON INC | COM | 465741106 | 864 | 9000 | SH | | DEFINED | 32,40,41 | 9000 | 0 | |
| ITRON INC | COM | 465741106 | 135 | 1405 | SH | | DEFINED | 16,19,24,26,27 | 1405 | 0 | |
| ITRON INC | COM | 465741106 | 8100 | 84400 | SH | CALL | DEFINED | 15,16,24 | 84400 | 0 | |
| ITRON INC | COM | 465741106 | 9165 | 95500 | SH | PUT | DEFINED | 15,16,24 | 95500 | 0 | |
| IVANHOE MINES LTD | COM | 46579N103 | 157 | 14604 | SH | | DEFINED | 16,24,25 | 12204 | 0 | 2400 |
| IVANHOE MINES LTD | COM | 46579N103 | 75 | 6975 | SH | | DEFINED | 32,40,41 | 6975 | 0 | |
| IVANHOE MINES LTD | COM | 46579N103 | 36 | 3332 | SH | | DEFINED | 4,6,7,11 | 3332 | 0 | |
| IVANHOE MINES LTD | COM | 46579N103 | 409 | 38100 | SH | CALL | DEFINED | 15,16,24 | 38100 | 0 | |
| IVANHOE MINES LTD | COM | 46579N103 | 446 | 41600 | SH | PUT | DEFINED | 15,16,24 | 41600 | 0 | |
| IVAX CORP | NOTE 4.50 | 465823AG7 | 433 | 415000 | PRN | | DEFINED | 16,24,25 | 415000 | 0 | |
| JA SOLAR HOLDINGS CO | SPON ADR | 466090107 | 874 | 12517 | SH | | DEFINED | 16,24,25 | 11817 | 0 | 700 |
| JA SOLAR HOLDINGS CO | SPON ADR | 466090107 | 252 | 3610 | SH | | DEFINED | 16,19,24,26,27 | 3610 | 0 | |
| JA SOLAR HOLDINGS CO | SPON ADR | 466090107 | 19624 | 281100 | SH | CALL | DEFINED | 15,16,24 | 281100 | 0 | |
| JA SOLAR HOLDINGS CO | SPON ADR | 466090107 | 5941 | 85100 | SH | PUT | DEFINED | 15,16,24 | 85100 | 0 | |
| J CREW GROUP INC | COM | 46612H402 | 3000 | 62237 | SH | | DEFINED | 16,24,25 | 59934 | 0 | 2303 |
| J CREW GROUP INC | COM | 46612H402 | 3124 | 64800 | SH | CALL | DEFINED | 15,16,24 | 64800 | 0 | |
| J CREW GROUP INC | COM | 46612H402 | 4329 | 89800 | SH | PUT | DEFINED | 15,16,24 | 89800 | 0 | |
| JDS UNIPHASE CORP | NOTE | 46612JAB7 | 13628 | 14345000 | PRN | | DEFINED | 16,24,25 | 14345000 | 0 | |
| JDS UNIPHASE CORP | NOTE 1.00 | 46612JAD3 | 4116 | 5145000 | PRN | | DEFINED | 16,24,25 | 5145000 | 0 | |
| JDS UNIPHASE CORP | COM PAR $0 | 46612J507 | 252 | 18956 | SH | | DEFINED | 7,11 | 18956 | 0 | |
| JDS UNIPHASE CORP | COM PAR $0 | 46612J507 | 71 | 5375 | SH | | DEFINED | 7,11,13 | 5375 | 0 | |
| JDS UNIPHASE CORP | COM PAR $0 | 46612J507 | 5839 | 439027 | SH | | DEFINED | 16,24,25 | 372955 | 0 | 66072 |
| JDS UNIPHASE CORP | COM PAR $0 | 46612J507 | 1 | 72 | SH | | DEFINED | 5-7,11,43,44 | 0 | 72 | |
| JDS UNIPHASE CORP | COM PAR $0 | 46612J507 | 1016 | 76400 | SH | CALL | DEFINED | 15,16,24 | 76400 | 0 | |
| JDS UNIPHASE CORP | COM PAR $0 | 46612J507 | 67 | 5000 | SH | CALL | DEFINED | 16,24,25 | 5000 | 0 | |
| JDS UNIPHASE CORP | COM PAR $0 | 46612J507 | 835 | 62800 | SH | PUT | DEFINED | 16,24,25 | 62800 | 0 | |
| JDA SOFTWARE GROUP I | COM | 46612K108 | 433 | 21163 | SH | | DEFINED | 16,24,25 | 20717 | 0 | 446 |
| JBR INVT TR INC | COM | 46614H301 | 126 | 11676 | SH | | DEFINED | 16,24,25 | 10709 | 0 | 967 |
| J F CHINA REGION FD | COM | 46614T107 | 657 | 25790 | SH | | DEFINED | 16,24,25 | 21947 | 0 | 3843 |
| JP MORGAN CHASE & CO | COM | 46625H100 | 2490 | 57037 | SH | | DEFINED | 12 | 0 | | 57037 |
| JP MORGAN CHASE & CO | COM | 46625H100 | 819 | 18760 | SH | | DEFINED | 30 | 18760 | 0 | |
| JP MORGAN CHASE & CO | COM | 46625H100 | 6206 | 142180 | SH | | DEFINED | 3,9 | 0 | | 142180 |
| JP MORGAN CHASE & CO | COM | 46625H100 | 170913 | 3915525 | SH | | DEFINED | 7,11 | 2791868 | 9160 | 1114497 |
| JP MORGAN CHASE & CO | COM | 46625H100 | 4 | 100 | SH | | DEFINED | 16,24 | 100 | 0 | |
| JP MORGAN CHASE & CO | COM | 46625H100 | 9800 | 224517 | SH | | DEFINED | 7,11,13 | 160533 | 0 | 63984 |
| JP MORGAN CHASE & CO | COM | 46625H100 | 1281 | 29343 | SH | | DEFINED | 7,11,33 | 0 | | 29343 |
| JP MORGAN CHASE & CO | COM | 46625H100 | 487070 | 11158540 | SH | | DEFINED | 16,24,25 | 9238381 | 0 | 1920159 |
| JP MORGAN CHASE & CO | COM | 46625H100 | 43502 | 996614 | SH | | DEFINED | 32,40,41 | 996614 | 0 | |
| JP MORGAN CHASE & CO | COM | 46625H100 | 174 | 3975 | SH | | DEFINED | 5-7,11,43,44 | 0 | 3975 | 0 |
| JP MORGAN CHASE & CO | COM | 46625H100 | 8645 | 198044 | SH | | DEFINED | 16,24,26,27 | 198044 | 0 | |
| JP MORGAN CHASE & CO | COM | 46625H100 | 2916 | 66811 | SH | | DEFINED | 2,6,7,10-11,18,20,21,28 | 66811 | 0 | |
| JP MORGAN CHASE & CO | COM | 46625H100 | 31247 | 715843 | SH | CALL | DEFINED | 7,11 | 715843 | 0 | |
| JP MORGAN CHASE & CO | COM | 46625H100 | 52537 | 1203600 | SH | CALL | DEFINED | 15,16,24 | 1203600 | 0 | |
| JP MORGAN CHASE & CO | COM | 46625H100 | 18473 | 423200 | SH | CALL | DEFINED | 16,24,25 | 421200 | 0 | 2000 |
| JP MORGAN CHASE & CO | COM | 46625H100 | 5456 | 125000 | SH | PUT | DEFINED | 7,11 | 125000 | 0 | |
| JP MORGAN CHASE & CO | COM | 46625H100 | 43502 | 996600 | SH | PUT | DEFINED | 16,24,25 | 996600 | 0 | |
| JP MORGAN CHASE & CO | COM | 46625H100 | 17373 | 398000 | SH | PUT | DEFINED | 15,16,24 | 397000 | 0 | 1000 |
| J2 GLOBAL COMMUNICAT | COM NEW | 46626E205 | 8 | 392 | SH | | DEFINED | 16,24 | 392 | 0 | |
| J2 GLOBAL COMMUNICAT | COM NEW | 46626E205 | 1072 | 50643 | SH | | DEFINED | 15,16,24 | 50643 | 0 | |
| J2 GLOBAL COMMUNICAT | COM NEW | 46626E205 | 776 | 36648 | SH | | DEFINED | 16,24,25 | 23667 | 0 | 12981 |
| J2 GLOBAL COMMUNICAT | COM NEW | 46626E205 | 843 | 39800 | SH | CALL | DEFINED | 15,16,24 | 39800 | 0 | |
| J2 GLOBAL COMMUNICAT | COM NEW | 46626E205 | 2447 | 115600 | SH | PUT | DEFINED | 15,16,24 | 115600 | 0 | |
| JMP GROUP INC | COM | 46629U107 | 124 | 14600 | SH | | DEFINED | 16,24,25 | 14600 | 0 | |
| JABIL CIRCUIT INC | COM | 466313103 | 3634 | 237982 | SH | | DEFINED | 7,11 | 236215 | 0 | 1767 |
| JABIL CIRCUIT INC | COM | 466313103 | 611 | 40000 | SH | | DEFINED | 16,24 | 40000 | 0 | |
| JABIL CIRCUIT INC | COM | 466313103 | 238 | 15600 | SH | | DEFINED | 7,11,13 | 13600 | 0 | 2000 |
| JABIL CIRCUIT INC | COM | 466313103 | 1378 | 90250 | SH | | DEFINED | 15,16,24 | 90250 | 0 | |
| JABIL CIRCUIT INC | COM | 466313103 | 4037 | 264405 | SH | | DEFINED | 16,24,25 | 127891 | 0 | 136514 |
| JABIL CIRCUIT INC | COM | 466313103 | 5922 | 387792 | SH | | DEFINED | 32,40,41 | 387792 | 0 | |
| JABIL CIRCUIT INC | COM | 466313103 | 1904 | 124700 | SH | CALL | DEFINED | 15,16,24 | 124700 | 0 | |
| JABIL CIRCUIT INC | COM | 466313103 | 3352 | 219533 | SH | CALL | DEFINED | 16,24,25 | 219533 | 0 | |
| JABIL CIRCUIT INC | COM | 466313103 | 3352 | 219533 | SH | PUT | DEFINED | 7,11 | 219533 | 0 | |
| JABIL CIRCUIT INC | COM | 466313103 | 1269 | 83100 | SH | PUT | DEFINED | 15,16,24 | 83100 | 0 | |
| JACK IN THE BOX INC | COM | 466367109 | 770 | 29871 | SH | | DEFINED | 16,24,25 | 29541 | 0 | 330 |
| JACOBS ENGR GROUP IN | COM | 469814107 | 1 | 12251 | SH | | DEFINED | 16,24,25 | 12251 | 0 | |
| JACOBS ENGR GROUP IN | COM | 469814107 | 34 | 356 | SH | | DEFINED | 7,11,13 | 356 | 0 | |
| JACOBS ENGR GROUP IN | COM | 469814107 | 15437 | 161454 | SH | | DEFINED | 16,24,25 | 116997 | 0 | 44457 |
| JACOBS ENGR GROUP IN | COM | 469814107 | 560 | 5854 | SH | | DEFINED | 32,40,41 | 5854 | 0 | |
| JAMBA INC | COM | 47023AL01 | 637 | 172055 | SH | | DEFINED | 16,24,25 | 145461 | 0 | 26594 |
| JAMBA INC | *W EXP 06/ | 47023AL19 | 377 | 672500 | SH | | DEFINED | 16,24,25 | 672500 | 0 | |
| JAMES HARDIE INDS N | SPONSORED | 47030M106 | 282 | 10000 | SH | | DEFINED | 16,24,25 | 10000 | 0 | |
| JANUS CAP GROUP INC | COM | 47102X105 | 4393 | 133720 | SH | | DEFINED | 7,11 | 133720 | 0 | |
| JANUS CAP GROUP INC | COM | 47102X105 | 7170 | 218279 | SH | | DEFINED | 16,24,25 | 108945 | 0 | 109334 |
| JANUS CAP GROUP INC | COM | 47102X105 | 194 | 5906 | SH | | DEFINED | 32,40,41 | 5906 | 0 | |
| JANUS CAP GROUP INC | COM | 47102X105 | 214 | 6500 | SH | CALL | DEFINED | 15,16,24 | 6500 | 0 | |
| JANUS CAP GROUP INC | COM | 47102X105 | 223 | 6800 | SH | PUT | DEFINED | 15,16,24 | 6800 | 0 | |
| JAPAN EQUITY FD INC | COM | 471057109 | 548 | 74042 | SH | | DEFINED | 16,24,25 | 63083 | 0 | 10959 |
| JAPAN SMALLER CAPTLZ | COM | 471090104 | 1460 | 153565 | SH | | DEFINED | 16,24,25 | 140052 | 0 | 13513 |
| JARDEN CORP | COM | 471109108 | 0 | 18 | SH | | DEFINED | 3,9 | 0 | | 18 |
| JARDEN CORP | COM | 471109108 | 10 | 437 | SH | | DEFINED | 7,11 | 437 | 0 | |
| JARDEN CORP | COM | 471109108 | 5874 | 248781 | SH | | DEFINED | 16,24,25 | 248334 | 0 | 447 |
| JARDEN CORP | COM | 471109108 | 1015 | 43000 | SH | | DEFINED | 32,40,41 | 43000 | 0 | |
| JARDEN CORP | COM | 471109108 | 2621 | 111000 | SH | CALL | DEFINED | 16,24,25 | 111000 | 0 | |
| JARDEN CORP | COM | 471109108 | 6327 | 268000 | SH | PUT | DEFINED | 16,24,25 | 268000 | 0 | |
| JAZZ TECHNOLOGIES IN | COM | 472148102 | 1508 | 913670 | SH | | DEFINED | 16,24,25 | 913670 | 0 | |
| JAZZ TECHNOLOGIES IN | *W EXP 03/ | 472148110 | 56 | 375000 | SH | | DEFINED | 31,45 | 375000 | 0 | |
| JEFFERIES GROUP INC | COM | 472319102 | 60 | 2600 | SH | | DEFINED | 30 | 2600 | 0 | |
| JEFFERIES GROUP INC | COM | 472319102 | 2257 | 97897 | SH | | DEFINED | 7,11 | 97897 | 0 | |
| JEFFERIES GROUP INC | COM | 472319102 | 2419 | 104947 | SH | | DEFINED | 16,24,25 | 102639 | 0 | 2308 |
| JEFFERIES GROUP INC | COM | 472319102 | 38 | 1650 | SH | | DEFINED | 5-7,11,43,44 | 0 | 1650 | 0 |
| JEFFERIES GROUP INC | COM | 472319102 | 2257 | 97897 | SH | CALL | DEFINED | 16,24,25 | 97897 | 0 | |
| JEFFERIES GROUP INC | COM | 472319102 | 2257 | 97897 | SH | PUT | DEFINED | 7,11 | 97897 | 0 | |
| JEFFERIES GROUP INC | COM | 472319102 | 461 | 20000 | SH | PUT | DEFINED | 16,24,25 | 20000 | 0 | |
| JETBLUE AWYS CORP | NOTE 3.50 | 477143AB7 | 8424 | 8618000 | PRN | | DEFINED | 16,24,25 | 8618000 | 0 | |
| JETBLUE AWYS CORP | DBCV 3.75 | 477143AC5 | 14314 | 16500000 | PRN | | DEFINED | 31,45 | 16500000 | 0 | |
| JETBLUE AWYS CORP | DBCV 3.75 | 477143AC5 | 82 | 95000 | PRN | | DEFINED | 16,24,25 | 95000 | 0 | |
| JETBLUE AWYS CORP | COM | 477143101 | 4 | 650 | SH | | DEFINED | 7,11,13 | 650 | 0 | |
| JETBLUE AWYS CORP | COM | 477143101 | 7154 | 1212612 | SH | | DEFINED | 15,16,24 | 1212612 | 0 | |
| JETBLUE AWYS CORP | COM | 477143101 | 3834 | 649809 | SH | | DEFINED | 16,24,25 | 561160 | 0 | 88649 |
| JETBLUE AWYS CORP | COM | 477143101 | 885 | 150000 | SH | CALL | DEFINED | 7,11 | 150000 | 0 | |
| JETBLUE AWYS CORP | COM | 477143101 | 1617 | 274000 | SH | CALL | DEFINED | 15,16,24 | 274000 | 0 | |
| JETBLUE AWYS CORP | COM | 477143101 | 2845 | 482200 | SH | CALL | DEFINED | 16,24,25 | 482200 | 0 | |
| JETBLUE AWYS CORP | COM | 477143101 | 8204 | 1390500 | SH | PUT | DEFINED | 15,16,24 | 1390500 | 0 | |
| JETBLUE AWYS CORP | COM | 477143101 | 1445 | 244900 | SH | PUT | DEFINED | 15,16,24 | 244900 | 0 | |
| JK ACQUISITION CORP | *W EXP 04/ | 47759H114 | 58 | 250000 | SH | | DEFINED | 16,24,25 | 250000 | 0 | |

| Name | Class | CUSIP | | | | Type | Codes | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| JOHNSON & JOHNSON | COM | 478160104 | 3869 | 58000 | SH | DEFINED | 12 | 0 | 0 | 58000 |
| JOHNSON & JOHNSON | COM | 478160104 | 6301 | 94472 | SH | DEFINED | 3,9 | 0 | 0 | 94472 |
| JOHNSON & JOHNSON | COM | 478160104 | 157491 | 2361185 | SH | DEFINED | 7,11 | 1152510 | 3650 | 1205025 |
| JOHNSON & JOHNSON | COM | 478160104 | 8563 | 128376 | SH | DEFINED | 7,11,13 | 107720 | 0 | 20656 |
| JOHNSON & JOHNSON | COM | 478160104 | 2324 | 34845 | SH | DEFINED | 7,11,33 | 0 | 0 | 34845 |
| JOHNSON & JOHNSON | COM | 478160104 | 625343 | 9375450 | SH | DEFINED | 16,24,25 | 7687040 | 0 | 1688409 |
| JOHNSON & JOHNSON | COM | 478160104 | 12017 | 180170 | SH | DEFINED | 32,40,41 | 180170 | 0 | 0 |
| JOHNSON & JOHNSON | COM | 478160104 | 3894 | 58375 | SH | DEFINED | 5-7,11,43,44 | 0 | 58375 | 0 |
| JOHNSON & JOHNSON | COM | 478160104 | 25663 | 384751 | SH | DEFINED | 16,19,24,26,27 | 384751 | 0 | 0 |
| JOHNSON & JOHNSON | COM | 478160104 | 322 | 4832 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 4832 | 0 | 0 |
| JOHNSON & JOHNSON | COM | 478160104 | 24248 | 363537 | SH | DEFINED | 7,11 | 363537 | 0 | 0 |
| JOHNSON & JOHNSON | COM | 478160104 | 79713 | 1195100 | SH CALL | DEFINED | 15,16,24 | 1195100 | 0 | 0 |
| JOHNSON & JOHNSON | COM | 478160104 | 100710 | 1509900 | SH CALL | DEFINED | 16,24,25 | 1509900 | 0 | 0 |
| JOHNSON & JOHNSON | COM | 478160104 | 34097 | 511200 | SH PUT | DEFINED | 15,16,24 | 511200 | 0 | 0 |
| JOHNSON & JOHNSON | COM | 478160104 | 60453 | 906337 | SH PUT | DEFINED | 16,24,25 | 906337 | 0 | 0 |
| JOHNSON CTLS INC | COM | 478366107 | 7353 | 204027 | SH | DEFINED | 7,11 | 173127 | 0 | 30900 |
| JOHNSON CTLS INC | COM | 478366107 | 5011 | 139042 | SH | DEFINED | 15,16,24 | 139042 | 0 | 0 |
| JOHNSON CTLS INC | COM | 478366107 | 17987 | 499087 | SH | DEFINED | 16,24,25 | 420515 | 0 | 78572 |
| JOHNSON CTLS INC | COM | 478366107 | 3662 | 101601 | SH | DEFINED | 32,40,41 | 101601 | 0 | 0 |
| JOHNSON CTLS INC | COM | 478366107 | 332 | 9200 | SH | DEFINED | 16,19,24,26,27 | 9200 | 0 | 0 |
| JOHNSON CTLS INC | COM | 478366107 | 9738 | 270200 | SH CALL | DEFINED | 15,16,24 | 270200 | 0 | 0 |
| JOHNSON CTLS INC | COM | 478366107 | 314 | 8700 | SH CALL | DEFINED | 16,24,25 | 8700 | 0 | 0 |
| JOHNSON CTLS INC | COM | 478366107 | 11900 | 330200 | SH PUT | DEFINED | 15,16,24 | 330200 | 0 | 0 |
| JOHNSON CTLS INC | COM | 478366107 | 314 | 8700 | SH PUT | DEFINED | 16,24,25 | 8700 | 0 | 0 |
| JOHNSON OUTDOORS INC CL A | | 479167108 | 267 | 11853 | SH | DEFINED | 16,24,25 | 9553 | 0 | 2300 |
| JONES LANG LASALLE I | COM | 48020Q107 | 135 | 1900 | SH | DEFINED | 3,9 | 0 | 0 | 1900 |
| JONES LANG LASALLE I | COM | 48020Q107 | 3213 | 45148 | SH | DEFINED | 7,11 | 45148 | 0 | 0 |
| JONES LANG LASALLE I | COM | 48020Q107 | 487 | 6843 | SH | DEFINED | 16,24,25 | 6693 | 0 | 150 |
| JONES SODA CO | COM | 48023P106 | 299 | 40129 | SH | DEFINED | 16,24,25 | 36589 | 0 | 3540 |
| JOS A BANK CLOTHIERS | COM | 480838101 | 1487 | 52254 | SH | DEFINED | 7,11 | 52254 | 0 | 0 |
| JOS A BANK CLOTHIERS | COM | 480838101 | 1429 | 50235 | SH | DEFINED | 16,24,25 | 48039 | 0 | 2226 |
| JOS A BANK CLOTHIERS | COM | 480838101 | 3158 | 111000 | SH CALL | DEFINED | 15,16,24 | 111000 | 0 | 0 |
| JOS A BANK CLOTHIERS | COM | 480838101 | 6489 | 228100 | SH PUT | DEFINED | 16,24,25 | 228100 | 0 | 0 |
| JOURNAL COMMUNICATIO CL A | | 481131022 | 742 | 83008 | SH | DEFINED | 16,24,25 | 75808 | 0 | 7200 |
| JOY GLOBAL INC | COM | 481165108 | 13378 | 203253 | SH | DEFINED | 7,11 | 203253 | 0 | 0 |
| JOY GLOBAL INC | COM | 481165108 | 23 | 350 | SH | DEFINED | 7,11,13 | 350 | 0 | 0 |
| JOY GLOBAL INC | COM | 481165108 | 34781 | 528428 | SH | DEFINED | 16,24,25 | 482737 | 0 | 45691 |
| JOY GLOBAL INC | COM | 481165108 | 214 | 3247 | SH | DEFINED | 32,40,41 | 3247 | 0 | 0 |
| JOY GLOBAL INC | COM | 481165108 | 3585 | 54462 | SH | DEFINED | 7,11 | 54462 | 0 | 0 |
| JOY GLOBAL INC | COM | 481165108 | 21602 | 328200 | SH CALL | DEFINED | 15,16,24 | 328200 | 0 | 0 |
| JOY GLOBAL INC | COM | 481165108 | 1316 | 20000 | SH CALL | DEFINED | 16,24,25 | 20000 | 0 | 0 |
| JOY GLOBAL INC | COM | 481165108 | 16080 | 244300 | SH PUT | DEFINED | 15,16,24 | 244300 | 0 | 0 |
| JOY GLOBAL INC | COM | 481165108 | 4901 | 74462 | SH PUT | DEFINED | 16,24,25 | 74462 | 0 | 0 |
| JUNIPER NETWORKS INC | NOTE | 48203RAC8 | 5701 | 3432000 | PRN | DEFINED | 16,24,25 | 3432000 | 0 | 0 |
| JUNIPER NETWORKS INC | COM | 48203R104 | 632 | 19030 | SH | DEFINED | 30 | 19030 | 0 | 0 |
| JUNIPER NETWORKS INC | COM | 48203R104 | 19268 | 580369 | SH | DEFINED | 7,11 | 580369 | 0 | 0 |
| JUNIPER NETWORKS INC | COM | 48203R104 | 15 | 450 | SH | DEFINED | 7,11,13 | 450 | 0 | 0 |
| JUNIPER NETWORKS INC | COM | 48203R104 | 64 | 1925 | SH | DEFINED | 7,11,33 | 0 | 0 | 1925 |
| JUNIPER NETWORKS INC | COM | 48203R104 | 15215 | 458290 | SH | DEFINED | 16,24,25 | 355533 | 0 | 102757 |
| JUNIPER NETWORKS INC | COM | 48203R104 | 724 | 21822 | SH | DEFINED | 32,40,41 | 21822 | 0 | 0 |
| JUNIPER NETWORKS INC | COM | 48203R104 | 10673 | 321482 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 321482 | 0 | 0 |
| JUNIPER NETWORKS INC | COM | 48203R104 | 92518 | 2786700 | SH | DEFINED | 7,11 | 2786700 | 0 | 0 |
| JUNIPER NETWORKS INC | COM | 48203R104 | 20209 | 608700 | SH CALL | DEFINED | 15,16,24 | 608700 | 0 | 0 |
| JUNIPER NETWORKS INC | COM | 48203R104 | 5903 | 177800 | SH CALL | DEFINED | 16,24,25 | 177800 | 0 | 0 |
| JUNIPER NETWORKS INC | COM | 48203R104 | 11969 | 360500 | SH PUT | DEFINED | 15,16,24 | 360500 | 0 | 0 |
| JUNIPER NETWORKS INC | COM | 48203R104 | 13 | 400 | SH PUT | DEFINED | 16,24,25 | 400 | 0 | 0 |
| KBL HEALTHCARE ACQUI *W EXP 07/ | | 48241N115 | 15 | 30700 | SH | DEFINED | 16,24,25 | 3600 | 0 | 27100 |
| KBR INC | COM | 48242W106 | 6467 | 166673 | SH | DEFINED | 16,24,25 | 123221 | 0 | 43452 |
| KBR INC | COM | 48242W106 | 187 | 4815 | SH | DEFINED | 32,40,41 | 4815 | 0 | 0 |
| KBR INC | COM | 48242W106 | 2611 | 67300 | SH CALL | DEFINED | 15,16,24 | 67300 | 0 | 0 |
| KBR INC | COM | 48242W106 | 2650 | 68300 | SH PUT | DEFINED | 15,16,24 | 68300 | 0 | 0 |
| KBW INC | COM | 48242J100 | 55 | 2150 | SH | DEFINED | 30 | 2150 | 0 | 0 |
| KBW INC | COM | 48242J100 | 958 | 37430 | SH | DEFINED | 16,24,25 | 36695 | 0 | 735 |
| KHD HUMBOLDT WEDAG I | COM | 48246Z108 | 1113 | 37110 | SH | DEFINED | 16,24,25 | 30110 | 0 | 7000 |
| KKR FINANCIAL HLDGS | COM | 48248A306 | 6 | 400 | SH | DEFINED | 7,11,33 | 0 | 0 | 400 |
| KKR FINANCIAL HLDGS | COM | 48248A306 | 9972 | 709781 | SH | DEFINED | 16,24,25 | 559591 | 0 | 150190 |
| KKR FINANCIAL HLDGS | COM | 48248A306 | 1756 | 125000 | SH | DEFINED | 16,19,24,26,27 | 125000 | 0 | 0 |
| KLA-TENCOR CORP | COM | 482480100 | 2140 | 44426 | SH | DEFINED | 7,11 | 44426 | 0 | 0 |
| KLA-TENCOR CORP | COM | 482480100 | 19 | 400 | SH | DEFINED | 7,11,13 | 400 | 0 | 0 |
| KLA-TENCOR CORP | COM | 482480100 | 14 | 293 | SH | DEFINED | 7,11,33 | 0 | 0 | 293 |
| KLA-TENCOR CORP | COM | 482480100 | 13267 | 275479 | SH | DEFINED | 16,24,25 | 259237 | 0 | 16242 |
| KLA-TENCOR CORP | COM | 482480100 | 12413 | 257745 | SH | DEFINED | 32,40,41 | 257745 | 0 | 0 |
| KLA-TENCOR CORP | COM | 482480100 | 235 | 4870 | SH | DEFINED | 16,19,24,26,27 | 4870 | 0 | 0 |
| KLA-TENCOR CORP | COM | 482480100 | 16158 | 335500 | SH CALL | DEFINED | 15,16,24 | 335500 | 0 | 0 |
| KLA-TENCOR CORP | COM | 482480100 | 13918 | 289000 | SH CALL | DEFINED | 16,24,25 | 289000 | 0 | 0 |
| KLA-TENCOR CORP | COM | 482480100 | 8520 | 176900 | SH PUT | DEFINED | 15,16,24 | 176900 | 0 | 0 |
| KLA-TENCOR CORP | COM | 482480100 | 10677 | 221700 | SH PUT | DEFINED | 16,24,25 | 221700 | 0 | 0 |
| KT CORP | SPONSORED | 48268K101 | 6 | 219 | SH | DEFINED | 7,11,13 | 219 | 0 | 0 |
| KT CORP | SPONSORED | 48268K101 | 3484 | 135035 | SH | DEFINED | 16,24,25 | 104713 | 0 | 30322 |
| KSW INC | COM | 48268R106 | 311 | 44640 | SH | DEFINED | 16,24,25 | 29240 | 0 | 15400 |
| K TRON INTL INC | COM | 482730108 | 167 | 1400 | SH | DEFINED | 16,24 | 1400 | 0 | 0 |
| K TRON INTL INC | COM | 482730108 | 125 | 1046 | SH | DEFINED | 16,24,25 | 1044 | 0 | 2 |
| KADANT INC | COM | 48282T104 | 86 | 2912 | SH | DEFINED | 7,11 | 2912 | 0 | 0 |
| KADANT INC | COM | 48282T104 | 962 | 32411 | SH | DEFINED | 16,24,25 | 17583 | 0 | 14828 |
| KAISER ALUMINUM CORP COM PAR $0 | | 483007704 | 7 | 91 | SH | DEFINED | 7,11 | 0 | 0 | 91 |
| KAISER ALUMINUM CORP COM PAR $0 | | 483007704 | 316 | 3980 | SH | DEFINED | 16,24,25 | 3680 | 0 | 300 |
| KAMAN CORP | COM | 483548103 | 74 | 2000 | SH | DEFINED | 7,11,13 | 2000 | 0 | 0 |
| KAMAN CORP | COM | 483548103 | 133 | 3603 | SH | DEFINED | 16,24,25 | 3087 | 0 | 516 |
| KANSAS CITY SOUTHERN COM NEW | | 485170302 | 28 | 802 | SH | DEFINED | 7,11 | 552 | 0 | 250 |
| KANSAS CITY SOUTHERN COM NEW | | 485170302 | 9 | 250 | SH | DEFINED | 7,11,13 | 250 | 0 | 0 |
| KANSAS CITY SOUTHERN COM NEW | | 485170302 | 9555 | 273320 | SH | DEFINED | 16,24,25 | 161436 | 0 | 116884 |
| KAPSTONE PAPER & PAC | COM | 48562P103 | 3929 | 561275 | SH | DEFINED | 16,24,25 | 517690 | 0 | 43585 |
| KAPSTONE PAPER & PAC *W EXP 08/ | | 48562P111 | 1226 | 612788 | SH | DEFINED | 16,24,25 | 612788 | 0 | 0 |
| KAYDON CORP | COM | 486587108 | 49 | 900 | SH | DEFINED | 7,11,13 | 900 | 0 | 0 |
| KAYDON CORP | COM | 486587108 | 543 | 9962 | SH | DEFINED | 16,24,25 | 8653 | 0 | 1309 |
| KAYNE ANDERSON ENRGY | COM | 486607104 | 19 | 700 | SH | DEFINED | 7,11,33 | 0 | 0 | 700 |
| KAYNE ANDERSON ENRGY | COM | 486607104 | 17483 | 632102 | SH | DEFINED | 16,24,25 | 532155 | 0 | 100147 |
| KAYNE ANDERSON ENERG | | 48660Q102 | 2317 | 101137 | SH | DEFINED | 16,24,25 | 94063 | 0 | 7073 |
| KAYNE ANDERSON MLP I | COM | 486606106 | 55 | 1867 | SH | DEFINED | 7,11,13 | 570 | 0 | 1297 |
| KAYNE ANDERSON MLP I | COM | 486606106 | 15 | 500 | SH | DEFINED | 7,11,33 | 0 | 0 | 500 |
| KAYNE ANDERSON MLP I | COM | 486606106 | 20538 | 699986 | SH | DEFINED | 16,24,25 | 565184 | 0 | 134801 |
| KB HOME | COM | 48666K109 | 4892 | 226478 | SH | DEFINED | 7,11 | 226478 | 0 | 0 |
| KB HOME | COM | 48666K109 | 4338 | 200838 | SH | DEFINED | 16,24 | 200838 | 0 | 0 |
| KB HOME | COM | 48666K109 | 6965 | 322473 | SH | DEFINED | 15,16,24 | 322473 | 0 | 0 |
| KB HOME | COM | 48666K109 | 4859 | 224937 | SH | DEFINED | 16,24,25 | 156411 | 0 | 68525 |
| KB HOME | COM | 48666K109 | 4 | 178 | SH | DEFINED | 32,40,41 | 178 | 0 | 0 |
| KB HOME | COM | 48666K109 | 1473 | 68205 | SH | DEFINED | 16,19,24,26,27 | 68205 | 0 | 0 |
| KB HOME | COM | 48666K109 | 10569 | 489300 | SH CALL | DEFINED | 15,16,24 | 489300 | 0 | 0 |
| KB HOME | COM | 48666K109 | 7512 | 347800 | SH CALL | DEFINED | 16,24,25 | 347800 | 0 | 0 |
| KB HOME | COM | 48666K109 | 2484 | 115000 | SH PUT | DEFINED | 7,11 | 115000 | 0 | 0 |
| KB HOME | COM | 48666K109 | 30126 | 1394700 | SH PUT | DEFINED | 15,16,24 | 1394700 | 0 | 0 |
| KB HOME | COM | 48666K109 | 104 | 4800 | SH PUT | DEFINED | 16,24,25 | 4800 | 0 | 0 |
| KELLOGG CO | COM | 487836108 | 2389 | 45560 | SH | DEFINED | 7,11 | 42760 | 0 | 2800 |
| KELLOGG CO | COM | 487836108 | 230 | 4393 | SH | DEFINED | 7,11,13 | 4383 | 0 | 10 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| KELLOGG CO | COM | 487836108 | 139 | 2650 | SH | | DEFINED | 7,11,33 | 0 | 0 | 2650 |
| KELLOGG CO | COM | 487836108 | 28656 | 546563 | SH | | DEFINED | 16,24,25 | 437133 | 0 | 109429 |
| KELLOGG CO | COM | 487836108 | 483 | 9210 | SH | | DEFINED | 32,40,41 | 9210 | 0 | 0 |
| KELLOGG CO | COM | 487836108 | 26 | 500 | SH | | DEFINED | 5-7,11,43,44 | 0 | 500 | 0 |
| KELLOGG CO | COM | 487836108 | 1300 | 24800 | SH | PUT | DEFINED | 15,16,24 | 24800 | 0 | 0 |
| KELLOGG CO | COM | 487836108 | 142 | 2700 | SH | PUT | DEFINED | 16,24,25 | 2600 | 0 | 100 |
| KELLWOOD CO | COM | 488044108 | 42 | 2500 | SH | | DEFINED | 30 | 2500 | 0 | 0 |
| KELLWOOD CO | COM | 488044108 | 171 | 10288 | SH | | DEFINED | 16,24,25 | 10288 | 0 | 0 |
| KEMET CORP | COM | 488360108 | 388 | 58500 | SH | | DEFINED | 7,11,13 | 56000 | 0 | 2500 |
| KEMET CORP | COM | 488360108 | 912 | 137555 | SH | | DEFINED | 16,24,25 | 99845 | 0 | 37710 |
| KENDLE INTERNATIONAL NOTE 3.37 | 48801LAA5 | 13135 | 10755000 | PRN | | DEFINED | 16,24,25 | 10755000 | 0 | 0 |
| KENDLE INTERNATIONAL | 48880LL07 | 113 | 2300 | SH | | DEFINED | 30 | 2300 | 0 | 0 |
| KENDLE INTERNATIONAL | 48880LL07 | 372 | 7600 | SH | | DEFINED | 16,24,25 | 3560 | 0 | 4040 |
| KENNAMETAL INC | COM | 489170100 | 150 | 3975 | SH | | DEFINED | 30 | 3975 | 0 | 0 |
| KENNAMETAL INC | COM | 489170100 | 21 | 550 | SH | | DEFINED | 7,11 | 550 | 0 | 0 |
| KENNAMETAL INC | COM | 489170100 | 515 | 13612 | SH | | DEFINED | 16,24,25 | 9542 | 0 | 4070 |
| KENNAMETAL INC | COM | 489170100 | 27 | 700 | SH | | DEFINED | 32,40,41 | 700 | 0 | 0 |
| KERYX BIOPHARMACEUTI | COM | 492515101 | 47 | 5600 | SH | | DEFINED | 30 | 5600 | 0 | 0 |
| KERYX BIOPHARMACEUTI | COM | 492515101 | 47 | 5600 | SH | | DEFINED | 7,11 | 5600 | 0 | 0 |
| KERYX BIOPHARMACEUTI | COM | 492515101 | 45 | 5313 | SH | | DEFINED | 16,24,25 | 5313 | 0 | 0 |
| KEWAUNEE SCIENTIFIC | COM | 492854104 | 4 | 196 | SH | | DEFINED | 16,24 | 196 | 0 | 0 |
| KEWAUNEE SCIENTIFIC | COM | 492854104 | 1248 | 63399 | SH | | DEFINED | 16,24,25 | 50399 | 0 | 13000 |
| KEY ENERGY SVCS INC | COM | 492914106 | 142 | 9900 | SH | | DEFINED | 30 | 9900 | 0 | 0 |
| KEY ENERGY SVCS INC | COM | 492914106 | 256 | 17770 | SH | | DEFINED | 16,24,25 | 4770 | 0 | 13000 |
| KEY TRONICS CORP | COM | 493144109 | 2400 | 574197 | SH | | DEFINED | 16,24,25 | 519292 | 0 | 54905 |
| KEYCORP NEW | COM | 493267108 | 371 | 15800 | SH | | DEFINED | 30 | 15800 | 0 | 0 |
| KEYCORP NEW | COM | 493267108 | 1269 | 54130 | SH | | DEFINED | 7,11 | 50730 | 0 | 3400 |
| KEYCORP NEW | COM | 493267108 | 107 | 4550 | SH | | DEFINED | 7,11,13 | 4550 | 0 | 0 |
| KEYCORP NEW | COM | 493267108 | 4781 | 203866 | SH | | DEFINED | 16,24,25 | 175741 | 0 | 28125 |
| KEYCORP NEW | COM | 493267108 | 256 | 10906 | SH | | DEFINED | 32,40,41 | 10906 | 0 | 0 |
| KEYCORP NEW | COM | 493267108 | 1867 | 79600 | SH | CALL | DEFINED | 15,16,24 | 79600 | 0 | 0 |
| KEYCORP NEW | COM | 493267108 | 708 | 30200 | SH | PUT | DEFINED | 15,16,24 | 30200 | 0 | 0 |
| KILROY RLTY CORP | COM | 49427F108 | 22 | 399 | SH | | DEFINED | 7,11 | 399 | 0 | 0 |
| KILROY RLTY CORP | COM | 49427F108 | 5 | 100 | SH | | DEFINED | 16,24 | 100 | 0 | 0 |
| KILROY RLTY CORP | COM | 49427F108 | 354 | 6432 | SH | | DEFINED | 7,11,13 | 3772 | 0 | 2660 |
| KILROY RLTY CORP | COM | 49427F108 | 4158 | 75658 | SH | | DEFINED | 16,24,25 | 75658 | 0 | 0 |
| KIMBALL INTL INC | CL B | 494274103 | 199 | 14547 | SH | | DEFINED | 16,24,25 | 14547 | 0 | 0 |
| KIMBERLY CLARK CORP | COM | 494368103 | 333 | 4800 | SH | | DEFINED | 12 | 0 | 0 | 4800 |
| KIMBERLY CLARK CORP | COM | 494368103 | 381 | 5500 | SH | | DEFINED | 30 | 5500 | 0 | 0 |
| KIMBERLY CLARK CORP | COM | 494368103 | 1570 | 22644 | SH | | DEFINED | 3,9 | 0 | 0 | 22644 |
| KIMBERLY CLARK CORP | COM | 494368103 | 13817 | 199260 | SH | | DEFINED | 7,11 | 40732 | 200 | 158328 |
| KIMBERLY CLARK CORP | COM | 494368103 | 2365 | 34112 | SH | | DEFINED | 7,11,13 | 32448 | 0 | 1664 |
| KIMBERLY CLARK CORP | COM | 494368103 | 399 | 5748 | SH | | DEFINED | 7,11,33 | 0 | 0 | 5748 |
| KIMBERLY CLARK CORP | COM | 494368103 | 69044 | 995733 | SH | | DEFINED | 16,24,25 | 834674 | 0 | 161058 |
| KIMBERLY CLARK CORP | COM | 494368103 | 14899 | 214868 | SH | | DEFINED | 32,40,41 | 214868 | 0 | 0 |
| KIMBERLY CLARK CORP | COM | 494368103 | 125 | 1800 | SH | | DEFINED | 5-7,11,43,44 | 0 | 1800 | 0 |
| KIMBERLY CLARK CORP | COM | 494368103 | 6712 | 96800 | SH | CALL | DEFINED | 15,16,24 | 96800 | 0 | 0 |
| KIMBERLY CLARK CORP | COM | 494368103 | 749 | 10800 | SH | CALL | DEFINED | 16,24,25 | 10800 | 0 | 0 |
| KIMBERLY CLARK CORP | COM | 494368103 | 10262 | 148000 | SH | PUT | DEFINED | 15,16,24 | 148000 | 0 | 0 |
| KIMBERLY CLARK CORP | COM | 494368103 | 749 | 10800 | SH | PUT | DEFINED | 16,24,25 | 10800 | 0 | 0 |
| KIMCO REALTY CORP | COM | 49446R109 | 1303 | 35788 | SH | | DEFINED | 7,11 | 31388 | 0 | 4400 |
| KIMCO REALTY CORP | COM | 49446R109 | 16027 | 440300 | SH | | DEFINED | 14,31 | 440300 | 0 | 0 |
| KIMCO REALTY CORP | COM | 49446R109 | 153 | 4194 | SH | | DEFINED | 7,11,33 | 0 | 0 | 4194 |
| KIMCO REALTY CORP | COM | 49446R109 | 1816 | 49882 | SH | | DEFINED | 16,24,25 | 41860 | 0 | 8022 |
| KIMCO REALTY CORP | COM | 49446R109 | 8313 | 228375 | SH | | DEFINED | 32,40,41 | 228375 | 0 | 0 |
| KIMCO REALTY CORP | COM | 49446R109 | 185 | 5081 | SH | | DEFINED | 16,19,24,26,27 | 5081 | 0 | 0 |
| KINDER MORGAN MANAGE | SHS | 49455U100 | 38 | 714 | SH | | DEFINED | 7,11 | 714 | 0 | 0 |
| KINDER MORGAN MANAGE | SHS | 49455U100 | 132 | 2502 | SH | | DEFINED | 7,11,33 | 0 | 0 | 2502 |
| KINDER MORGAN MANAGE | SHS | 49455U100 | 1480 | 27962 | SH | | DEFINED | 16,24,25 | 26000 | 0 | 1962 |
| KINDER MORGAN ENERGY | UT LTD PAR | 494550106 | 3202 | 59300 | SH | | DEFINED | 7,11 | 0 | 0 | 59300 |
| KINDER MORGAN ENERGY | UT LTD PAR | 494550106 | 992 | 18368 | SH | | DEFINED | 7,11,13 | 18368 | 0 | 0 |
| KINDER MORGAN ENERGY | UT LTD PAR | 494550106 | 11 | 200 | SH | | DEFINED | 7,11,33 | 0 | 0 | 200 |
| KINDER MORGAN ENERGY | UT LTD PAR | 494550106 | 3627 | 67180 | SH | | DEFINED | 15,16,24 | 67180 | 0 | 0 |
| KINDER MORGAN ENERGY | UT LTD PAR | 494550106 | 24179 | 447849 | SH | | DEFINED | 16,24,25 | 360715 | 0 | 87134 |
| KINDER MORGAN ENERGY | UT LTD PAR | 494550106 | 9259 | 171500 | SH | | DEFINED | 32,40,41 | 171500 | 0 | 0 |
| KINDER MORGAN ENERGY | UT LTD PAR | 494550106 | 3369 | 62400 | SH | CALL | DEFINED | 15,16,24 | 62400 | 0 | 0 |
| KINDER MORGAN ENERGY | UT LTD PAR | 494550106 | 5156 | 95500 | SH | PUT | DEFINED | 15,16,24 | 95500 | 0 | 0 |
| KINDRED HEALTHCARE I | COM | 494580103 | 1875 | 75055 | SH | | DEFINED | 16,24,25 | 65623 | 0 | 9432 |
| KINETIC CONCEPTS INC | COM NEW | 49460W208 | 262 | 4900 | SH | | DEFINED | 3,9 | 0 | 0 | 4900 |
| KINETIC CONCEPTS INC | COM NEW | 49460W208 | 166 | 3105 | SH | | DEFINED | 7,11 | 3105 | 0 | 0 |
| KINETIC CONCEPTS INC | COM NEW | 49460W208 | 36 | 675 | SH | | DEFINED | 7,11,13 | 675 | 0 | 0 |
| KINETIC CONCEPTS INC | COM NEW | 49460W208 | 228 | 4259 | SH | | DEFINED | 15,16,24 | 4259 | 0 | 0 |
| KINETIC CONCEPTS INC | COM NEW | 49460W208 | 1224 | 22850 | SH | | DEFINED | 16,24,25 | 20909 | 0 | 1941 |
| KINETIC CONCEPTS INC | COM NEW | 49460W208 | 359 | 6700 | SH | | DEFINED | 32,40,41 | 6700 | 0 | 0 |
| KINETIC CONCEPTS INC | COM NEW | 49460W208 | 5035 | 94000 | SH | CALL | DEFINED | 15,16,24 | 94000 | 0 | 0 |
| KINETIC CONCEPTS INC | COM NEW | 49460W208 | 5640 | 105300 | SH | PUT | DEFINED | 15,16,24 | 105300 | 0 | 0 |
| KING PHARMACEUTICALS | COM | 495582108 | 322 | 31400 | SH | | DEFINED | 3,9 | 0 | 0 | 31400 |
| KING PHARMACEUTICALS | COM | 495582108 | 1429 | 139550 | SH | | DEFINED | 7,11 | 139550 | 0 | 0 |
| KING PHARMACEUTICALS | COM | 495582108 | 939 | 91733 | SH | | DEFINED | 15,16,24 | 91733 | 0 | 0 |
| KING PHARMACEUTICALS | COM | 495582108 | 2339 | 228454 | SH | | DEFINED | 16,24,25 | 223374 | 0 | 5080 |
| KING PHARMACEUTICALS | COM | 495582108 | 3 | 255 | SH | | DEFINED | 32,40,41 | 255 | 0 | 0 |
| KING PHARMACEUTICALS | COM | 495582108 | 1393 | 136000 | SH | CALL | DEFINED | 15,16,24 | 136000 | 0 | 0 |
| KING PHARMACEUTICALS | COM | 495582108 | 1549 | 151300 | SH | PUT | DEFINED | 15,16,24 | 151300 | 0 | 0 |
| KINROSS GOLD CORP | COM NO PAR | 496902404 | 11 | 623 | SH | | DEFINED | 7,11 | 0 | 0 | 623 |
| KINROSS GOLD CORP | COM NO PAR | 496902404 | 780 | 42411 | SH | | DEFINED | 15,16,24 | 42411 | 0 | 0 |
| KINROSS GOLD CORP | COM NO PAR | 496902404 | 5047 | 274297 | SH | | DEFINED | 16,24,25 | 254352 | 0 | 19945 |
| KINROSS GOLD CORP | COM NO PAR | 496902404 | 311 | 16911 | SH | | DEFINED | 32,40,41 | 16911 | 0 | 0 |
| KINROSS GOLD CORP | COM NO PAR | 496902404 | 142 | 7720 | SH | | DEFINED | 4,6,7,11 | 7720 | 0 | 0 |
| KINROSS GOLD CORP | COM NO PAR | 496902404 | 3187 | 173200 | SH | CALL | DEFINED | 15,16,24 | 173200 | 0 | 0 |
| KINROSS GOLD CORP | COM NO PAR | 496902404 | 184 | 10000 | SH | CALL | DEFINED | 16,24,25 | 10000 | 0 | 0 |
| KINROSS GOLD CORP | COM NO PAR | 496902404 | 3192 | 173500 | SH | PUT | DEFINED | 15,16,24 | 173500 | 0 | 0 |
| KINROSS GOLD CORP | COM NO PAR | 496902404 | 184 | 10000 | SH | PUT | DEFINED | 16,24,25 | 10000 | 0 | 0 |
| KIRBY CORP | COM | 497266106 | 30 | 647 | SH | | DEFINED | 7,11 | 647 | 0 | 0 |
| KIRBY CORP | COM | 497266106 | 3625 | 77998 | SH | | DEFINED | 16,24,25 | 65145 | 0 | 12843 |
| KIRKLANDS INC | COM | 497498105 | 17 | 17200 | SH | | DEFINED | 16,24,25 | 12000 | 0 | 5200 |
| KITE RLTY GROUP TR | COM | 49803T102 | 35 | 2300 | SH | | DEFINED | 16,24,25 | 1100 | 0 | 1200 |
| KITE RLTY GROUP TR | COM | 49803T102 | 217 | 14181 | SH | | DEFINED | 32,40,41 | 14181 | 0 | 0 |
| KNIGHT CAPITAL GROUP | CL A | 499005106 | 937 | 65066 | SH | | DEFINED | 7,11 | 65066 | 0 | 0 |
| KNIGHT CAPITAL GROUP | CL A | 499005106 | 411 | 28532 | SH | | DEFINED | 15,16,24 | 28532 | 0 | 0 |
| KNIGHT CAPITAL GROUP | CL A | 499005106 | 5093 | 353686 | SH | | DEFINED | 16,24,25 | 350880 | 0 | 2806 |
| KNIGHT CAPITAL GROUP | CL A | 499005106 | 1512 | 105000 | SH | CALL | DEFINED | 15,16,24 | 105000 | 0 | 0 |
| KNIGHT CAPITAL GROUP | CL A | 499005106 | 1 | 100 | SH | CALL | DEFINED | 16,24,25 | 100 | 0 | 0 |
| KNIGHT CAPITAL GROUP | CL A | 499005106 | 680 | 47200 | SH | PUT | DEFINED | 15,16,24 | 47200 | 0 | 0 |
| KNIGHT CAPITAL GROUP | CL A | 499005106 | 14 | 1000 | SH | PUT | DEFINED | 16,24,25 | 1000 | 0 | 0 |
| KNOLOGY INC | COM | 499183804 | 3276 | 256300 | SH | | DEFINED | 16,24,25 | 256300 | 0 | 0 |
| KOHLS CORP | COM | 500255104 | 2275 | 49665 | SH | | DEFINED | 7,11 | 49665 | 0 | 0 |
| KOHLS CORP | COM | 500255104 | 761 | 16614 | SH | | DEFINED | 7,11,13 | 16264 | 0 | 350 |
| KOHLS CORP | COM | 500255104 | 2 | 50 | SH | | DEFINED | 7,11,33 | 0 | 0 | 0 |
| KOHLS CORP | COM | 500255104 | 9135 | 199457 | SH | | DEFINED | 16,24,25 | 199457 | 0 | 0 |
| KOHLS CORP | COM | 500255104 | 10673 | 233038 | SH | | DEFINED | 16,24,25 | 189427 | 0 | 43611 |
| KOHLS CORP | COM | 500255104 | 416 | 9076 | SH | | DEFINED | 32,40,41 | 9076 | 0 | 0 |
| KOHLS CORP | COM | 500255104 | 8794 | 192000 | SH | CALL | DEFINED | 15,16,24 | 192000 | 0 | 0 |
| KOHLS CORP | COM | 500255104 | 1511 | 33000 | SH | PUT | DEFINED | 15,16,24 | 33000 | 0 | 0 |
| KOHLS CORP | COM | 500255104 | 22181 | 484300 | SH | PUT | DEFINED | 15,16,24 | 484300 | 0 | 0 |

| Name | Type | CUSIP | | Amount | Opt | Status | Codes | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| KOHLS CORP | COM | 500255104 | 2730 | 59600 SH | PUT | DEFINED | 16,24,25 | 59600 | 0 | 0 |
| KONGZHONG CORP | SPONSORED | 50047P104 | 87 | 14300 SH | | DEFINED | 16,24,25 | 12300 | 0 | 2000 |
| KONGZHONG CORP | SPONSORED | 50047P104 | 158 | 26000 SH | CALL | DEFINED | 15,16,24 | 26000 | 0 | 0 |
| KONGZHONG CORP | SPONSORED | 50047P104 | 27 | 4500 SH | PUT | DEFINED | 15,16,24 | 4500 | 0 | 0 |
| KONINKLIJKE PHILIPS | NY REG SH | 500472303 | 237 | 5552 SH | | DEFINED | 7,11 | 0 | 0 | 5552 |
| KONINKLIJKE PHILIPS | NY REG SH | 500472303 | 302 | 7076 SH | | DEFINED | 7,11,13 | 5173 | 0 | 1903 |
| KONINKLIJKE PHILIPS | NY REG SH | 500472303 | 44 | 1020 SH | | DEFINED | 7,11,33 | 0 | 0 | 1020 |
| KONINKLIJKE PHILIPS | NY REG SH | 500472303 | 21852 | 511165 SH | | DEFINED | 16,24,25 | 370981 | 0 | 140184 |
| KOOKMIN BK NEW | SPONSORED | 50049M109 | 903 | 12135 SH | | DEFINED | 16,24,25 | 12135 | 0 | 178 |
| KOOKMIN BK NEW | SPONSORED | 50049M109 | 10646 | 145197 SH | | DEFINED | 32,40,41 | 145197 | 0 | 0 |
| KOOKMIN BK NEW | SPONSORED | 50049M109 | 20 | 270 SH | | DEFINED | 5-7,11,43,44 | 0 | 270 | 0 |
| KOOKMIN BK NEW | SPONSORED | 50049M109 | 8176 | 111508 SH | | DEFINED | 16,19,24,26,27 | 111508 | 0 | 0 |
| KOPIN CORP | COM | 500600101 | 477 | 150935 SH | | DEFINED | 16,24,25 | 42985 | 0 | 107950 |
| KOREA EQUITY FD INC | COM | 50063B104 | 741 | 56564 SH | | DEFINED | 16,24,25 | 41564 | 0 | 15000 |
| KOREA ELECTRIC PWR | SPONSORED | 500631106 | 32 | 1530 SH | | DEFINED | 7,11 | 1530 | 0 | 0 |
| KOREA ELECTRIC PWR | SPONSORED | 500631106 | 2 | 113 SH | | DEFINED | 7,11,13 | 113 | 0 | 0 |
| KOREA ELECTRIC PWR | SPONSORED | 500631106 | 37236 | 1785919 SH | | DEFINED | 16,24,25 | 1470747 | 0 | 315171 |
| KOREA ELECTRIC PWR | SPONSORED | 500631106 | 357 | 17100 SH | | DEFINED | 16,17,22-24 | 17100 | 0 | 0 |
| KOREA FD | COM | 500634100 | 1520 | 57324 SH | | DEFINED | 16,24,25 | 41856 | 0 | 15467 |
| KORN FERRY INTL | COM NEW | 500643200 | 2698 | 143340 SH | | DEFINED | 16,24,25 | 86508 | 0 | 56832 |
| KRAFT FOODS INC | CL A | 50075N104 | 1378 | 42246 SH | | DEFINED | 12 | 0 | 0 | 42246 |
| KRAFT FOODS INC | CL A | 50075N104 | 370 | 11336 SH | | DEFINED | 30 | 11336 | 0 | 0 |
| KRAFT FOODS INC | CL A | 50075N104 | 28 | 848 SH | | DEFINED | 3,9 | 0 | 0 | 848 |
| KRAFT FOODS INC | CL A | 50075N104 | 30810 | 944237 SH | | DEFINED | 7,11 | 693964 | 8822 | 241451 |
| KRAFT FOODS INC | CL A | 50075N104 | 11290 | 346012 SH | | DEFINED | 16,24 | 346012 | 0 | 0 |
| KRAFT FOODS INC | CL A | 50075N104 | 2904 | 89010 SH | | DEFINED | 7,11,13 | 80342 | 0 | 8668 |
| KRAFT FOODS INC | CL A | 50075N104 | 142 | 4358 SH | | DEFINED | 7,11,33 | 0 | 0 | 4358 |
| KRAFT FOODS INC | CL A | 50075N104 | 3669 | 112441 SH | | DEFINED | 15,16,24 | 112441 | 0 | 0 |
| KRAFT FOODS INC | CL A | 50075N104 | 62346 | 1910702 SH | | DEFINED | 16,24,25 | 1615992 | 0 | 294710 |
| KRAFT FOODS INC | CL A | 50075N104 | 25773 | 789859 SH | | DEFINED | 32,40,41 | 789859 | 0 | 0 |
| KRAFT FOODS INC | CL A | 50075N104 | 277 | 8499 SH | | DEFINED | 5-7,11,43,44 | 0 | 8499 | 0 |
| KRAFT FOODS INC | CL A | 50075N104 | 3923 | 120215 SH | | DEFINED | 16,19,24,26,27 | 120215 | 0 | 0 |
| KRAFT FOODS INC | CL A | 50075N104 | 16898 | 517880 SH | | DEFINED 2,6,7,10-11,18,20,21,28 | | 517880 | 0 | 0 |
| KRAFT FOODS INC | CL A | 50075N104 | 16312 | 499900 SH | CALL | DEFINED | 15,16,24 | 499900 | 0 | 0 |
| KRAFT FOODS INC | CL A | 50075N104 | 17199 | 527100 SH | | DEFINED | 16,24,25 | 527100 | 0 | 0 |
| KRAFT FOODS INC | CL A | 50075N104 | 16684 | 511300 SH | PUT | DEFINED | 15,16,24 | 511300 | 0 | 0 |
| KRAFT FOODS INC | CL A | 50075N104 | 2656 | 81400 SH | PUT | DEFINED | 16,24,25 | 81400 | 0 | 0 |
| KRATOS DEFENSE & SEC | COM | 50077B108 | 77 | 32776 SH | | DEFINED | 16,24,25 | 25445 | 0 | 7331 |
| KREISLER MFG CORP | COM | 500773106 | 1 | 96 SH | | DEFINED | 16,24 | 96 | 0 | 0 |
| KREISLER MFG CORP | COM | 500773106 | 423 | 29600 SH | | DEFINED | 16,24,25 | 19600 | 0 | 10000 |
| KRISPY KREME DOUGHNU | COM | 501014104 | 95 | 30026 SH | | DEFINED | 16,24,25 | 25171 | 0 | 4855 |
| KRISPY KREME DOUGHNU | COM | 501014104 | 427 | 135200 SH | CALL | DEFINED | 15,16,24 | 135200 | 0 | 0 |
| KRISPY KREME DOUGHNU | COM | 501014104 | 16 | 5000 SH | CALL | DEFINED | 16,24,25 | 5000 | 0 | 0 |
| KRISPY KREME DOUGHNU | COM | 501014104 | 984 | 311400 SH | PUT | DEFINED | 15,16,24 | 311400 | 0 | 0 |
| KROGER CO | COM | 501044101 | 448 | 16770 SH | | DEFINED | 12 | 0 | 0 | 16770 |
| KROGER CO | COM | 501044101 | 651 | 24366 SH | | DEFINED | 3,9 | 0 | 0 | 24366 |
| KROGER CO | COM | 501044101 | 7176 | 268676 SH | | DEFINED | 7,11 | 110162 | 2250 | 156264 |
| KROGER CO | COM | 501044101 | 898 | 33635 SH | | DEFINED | 7,11,13 | 24860 | 0 | 8775 |
| KROGER CO | COM | 501044101 | 37 | 1400 SH | | DEFINED | 7,11,33 | 0 | 0 | 1400 |
| KROGER CO | COM | 501044101 | 7391 | 276709 SH | | DEFINED | 16,24,25 | 229036 | 0 | 47672 |
| KROGER CO | COM | 501044101 | 769 | 28800 SH | | DEFINED | 32,40,41 | 28800 | 0 | 0 |
| KROGER CO | COM | 501044101 | 5841 | 218700 SH | CALL | DEFINED | 15,16,24 | 218700 | 0 | 0 |
| KROGER CO | COM | 501044101 | 112 | 4200 SH | CALL | DEFINED | 16,24,25 | 4200 | 0 | 0 |
| KROGER CO | COM | 501044101 | 1317 | 49300 SH | PUT | DEFINED | 15,16,24 | 49300 | 0 | 0 |
| KROGER CO | COM | 501044101 | 510 | 19100 SH | PUT | DEFINED | 16,24,25 | 19100 | 0 | 0 |
| KULICKE & SOFFA INDS | COM | 501242101 | 1 | 186 SH | | DEFINED | 3,9 | 0 | 0 | 186 |
| KULICKE & SOFFA INDS | COM | 501242101 | 166 | 24130 SH | | DEFINED | 15,16,24 | 24130 | 0 | 0 |
| KULICKE & SOFFA INDS | COM | 501242101 | 743 | 108314 SH | | DEFINED | 16,24,25 | 104310 | 0 | 4004 |
| KULICKE & SOFFA INDS | COM | 501242101 | 549 | 80000 SH | CALL | DEFINED | 15,16,24 | 80000 | 0 | 0 |
| KULICKE & SOFFA INDS | COM | 501242101 | 543 | 79200 SH | PUT | DEFINED | 15,16,24 | 79200 | 0 | 0 |
| KYOCERA CORP | ADR | 501556203 | 198 | 2271 SH | | DEFINED | 7,11 | 0 | 0 | 2271 |
| KYOCERA CORP | ADR | 501556203 | 59 | 680 SH | | DEFINED | 7,11,13 | 680 | 0 | 0 |
| KYOCERA CORP | ADR | 501556203 | 1215 | 13926 SH | | DEFINED | 16,24,25 | 8926 | 0 | 5000 |
| KYOCERA CORP | ADR | 501556203 | 140 | 1600 SH | | DEFINED 2,6,7,10-11,18,20,21,28 | | 1600 | 0 | 0 |
| LDK SOLAR CO LTD | SPONSORED | 50183L107 | 69 | 1477 SH | | DEFINED | 7,11 | 1477 | 0 | 0 |
| LDK SOLAR CO LTD | SPONSORED | 50183L107 | 33 | 693 SH | | DEFINED | 16,24 | 693 | 0 | 0 |
| LDK SOLAR CO LTD | SPONSORED | 50183L107 | 5241 | 111484 SH | | DEFINED | 15,16,24 | 111484 | 0 | 0 |
| LDK SOLAR CO LTD | SPONSORED | 50183L107 | 1127 | 23971 SH | | DEFINED | 16,24,25 | 18733 | 0 | 5238 |
| LDK SOLAR CO LTD | SPONSORED | 50183L107 | 119 | 2527 SH | | DEFINED | 16,19,24,26,27 | 2527 | 0 | 0 |
| LDK SOLAR CO LTD | SPONSORED | 50183L107 | 7832 | 166600 SH | CALL | DEFINED | 15,16,24 | 166600 | 0 | 0 |
| LDK SOLAR CO LTD | SPONSORED | 50183L107 | 12251 | 260600 SH | PUT | DEFINED | 15,16,24 | 260600 | 0 | 0 |
| LGL GROUP INC | COM | 50186A108 | 93 | 13607 SH | | DEFINED | 16,24,25 | 13607 | 0 | 0 |
| LG PHILIP LCD CO LTD | SPONS ADR | 50186V102 | 1057 | 40685 SH | | DEFINED | 16,24,25 | 31038 | 0 | 9647 |
| LHC GROUP INC | COM | 50187A107 | 89 | 3575 SH | | DEFINED | 30 | 3575 | 0 | 0 |
| LHC GROUP INC | COM | 50187A107 | 263 | 10411 SH | | DEFINED | 16,24,25 | 10411 | 0 | 126 |
| LKQ CORP | COM | 501889208 | 1765 | 83975 SH | | DEFINED | 16,24,25 | 81850 | 0 | 2125 |
| LMI AEROSPACE INC | COM | 502079106 | 733 | 27665 SH | | DEFINED | 16,24,25 | 16595 | 0 | 11070 |
| LMP CAP & INCOME FD | COM | 52208A102 | 20787 | 1151635 SH | | DEFINED | 16,24,25 | 1043630 | 0 | 108005 |
| LMP CORPORATE LN FD | COM | 52208B100 | 486 | 41563 SH | | DEFINED | 16,24,25 | 39650 | 0 | 1912 |
| LMP REAL ESTATE INCO | COM | 52208C108 | 1834 | 126304 SH | | DEFINED | 16,24,25 | 93830 | 0 | 32474 |
| L-1 IDENTITY SOLUTIO | COM | 50212A106 | 9 | 500 SH | | DEFINED | 7,11,13 | 500 | 0 | 0 |
| L-1 IDENTITY SOLUTIO | COM | 50212A106 | 1100 | 61257 SH | | DEFINED | 16,24,25 | 44052 | 0 | 17205 |
| LSI INDS INC | COM | 50216C108 | 635 | 34899 SH | | DEFINED | 16,24,25 | 34899 | 0 | 0 |
| LSB INDS INC | COM | 502160104 | 549 | 19446 SH | | DEFINED | 16,24,25 | 15527 | 0 | 3919 |
| LSI CORPORATION | NOTE 4.00 | 502161AJ1 | 55 | 57000 PRN | | DEFINED | 16,24,25 | 57000 | 0 | 0 |
| LSI CORPORATION | COM | 502161102 | 314 | 59057 SH | | DEFINED | 7,11 | 59010 | 0 | 47 |
| LSI CORPORATION | COM | 502161102 | 0 | 30 SH | | DEFINED | 7,11,13 | 30 | 0 | 0 |
| LSI CORPORATION | COM | 502161102 | 899 | 169225 SH | | DEFINED | 15,16,24 | 169225 | 0 | 0 |
| LSI CORPORATION | COM | 502161102 | 4011 | 755435 SH | | DEFINED | 16,24,25 | 668941 | 0 | 86494 |
| LSI CORPORATION | COM | 502161102 | 118 | 22246 SH | | DEFINED | 32,40,41 | 22246 | 0 | 0 |
| LSI CORPORATION | COM | 502161102 | 971 | 182900 SH | CALL | DEFINED | 15,16,24 | 182900 | 0 | 0 |
| LSI CORPORATION | COM | 502161102 | 21 | 4000 SH | CALL | DEFINED | 16,24,25 | 4000 | 0 | 0 |
| LSI CORPORATION | COM | 502161102 | 1909 | 359500 SH | PUT | DEFINED | 15,16,24 | 359500 | 0 | 0 |
| LTC PPTYS INC | COM | 502175102 | 6 | 225 SH | | DEFINED | 7,11,13 | 225 | 0 | 0 |
| LTC PPTYS INC | COM | 502175102 | 1308 | 52199 SH | | DEFINED | 16,24,25 | 27515 | 0 | 24684 |
| LTC PPTYS INC | COM | 502175102 | 259 | 10326 SH | | DEFINED | 32,40,41 | 10326 | 0 | 0 |
| L-3 COMMUNICATIONS C | DEBT 3.00 | 502413AW7 | 266 | 220000 PRN | | DEFINED | 16,24,25 | 220000 | 0 | 0 |
| L-3 COMMUNICATIONS H | COM | 502424104 | 10 | 99 SH | | DEFINED | 3,9 | 0 | 0 | 99 |
| L-3 COMMUNICATIONS H | COM | 502424104 | 4268 | 40291 SH | | DEFINED | 7,11 | 17904 | 0 | 22387 |
| L-3 COMMUNICATIONS H | COM | 502424104 | 636 | 6000 SH | | DEFINED | 16,24 | 6000 | 0 | 0 |
| L-3 COMMUNICATIONS H | COM | 502424104 | 403 | 3965 SH | | DEFINED | 7,11,13 | 3815 | 0 | 150 |
| L-3 COMMUNICATIONS H | COM | 502424104 | 874 | 8249 SH | | DEFINED | 7,11,33 | 0 | 0 | 8249 |
| L-3 COMMUNICATIONS H | COM | 502424104 | 9687 | 91434 SH | | DEFINED | 15,16,24 | 91434 | 0 | 0 |
| L-3 COMMUNICATIONS H | COM | 502424104 | 253757 | 2395287 SH | | DEFINED | 16,24,25 | 2116082 | 0 | 279204 |
| L-3 COMMUNICATIONS H | COM | 502424104 | 420 | 3962 SH | | DEFINED | 32,40,41 | 3962 | 0 | 0 |
| L-3 COMMUNICATIONS H | COM | 502424104 | 15838 | 149500 SH | CALL | DEFINED | 15,16,24 | 149500 | 0 | 0 |
| L-3 COMMUNICATIONS H | COM | 502424104 | 21040 | 198600 SH | CALL | DEFINED | 16,24,25 | 198600 | 0 | 0 |
| L-3 COMMUNICATIONS H | COM | 502424104 | 19228 | 181500 SH | PUT | DEFINED | 15,16,24 | 181500 | 0 | 0 |
| L-3 COMMUNICATIONS H | COM | 502424104 | 5774 | 54500 SH | PUT | DEFINED | 16,24,25 | 54500 | 0 | 0 |
| LA Z BOY INC | COM | 505336107 | 1626 | 205039 SH | | DEFINED | 16,24,25 | 188575 | 0 | 16464 |
| LABORATORY CORP AMER | COM NEW | 50540R409 | 2573 | 34069 SH | | DEFINED | 7,11 | 14759 | 0 | 19310 |
| LABORATORY CORP AMER | COM NEW | 50540R409 | 123 | 1635 SH | | DEFINED | 7,11,33 | 0 | 0 | 1635 |
| LABORATORY CORP AMER | COM NEW | 50540R409 | 72 | 958 SH | | DEFINED | 15,16,24 | 958 | 0 | 0 |
| LABORATORY CORP AMER | COM NEW | 50540R409 | 10170 | 134645 SH | | DEFINED | 16,24,25 | 105050 | 0 | 29595 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| LABORATORY CORP AMER | COM NEW | 50540R409 | 328 | 4348 | SH | | DEFINED | 32,40,41 | 4348 | 0 | 0 |
| LABORATORY CORP AMER | COM NEW | 50540R409 | 4758 | 63000 | SH | CALL | DEFINED | 15,16,24 | 63000 | 0 | 0 |
| LABORATORY CORP AMER | COM NEW | 50540R409 | 808 | 10700 | SH | CALL | DEFINED | 16,24,25 | 10700 | 0 | 0 |
| LABORATORY CORP AMER | COM NEW | 50540R409 | 9313 | 123300 | SH | PUT | DEFINED | 15,16,24 | 123300 | 0 | 0 |
| LABORATORY CORP AMER | COM NEW | 50540R409 | 612 | 8100 | SH | PUT | DEFINED | 16,24,25 | 8100 | 0 | 0 |
| LABRANCHE & CO INC | COM | 505447102 | 852 | 168957 | SH | | DEFINED | 16,24,25 | 118386 | 0 | 50571 |
| LACLEDE GROUP INC | COM | 505597104 | 3 | 100 | SH | | DEFINED | 7,11 | 0 | 0 | 100 |
| LACLEDE GROUP INC | COM | 505597104 | 996 | 29100 | SH | | DEFINED | 7,11,13 | 28700 | 0 | 400 |
| LACLEDE GROUP INC | COM | 505597104 | 111 | 3231 | SH | | DEFINED | 16,24,25 | 2731 | 0 | 500 |
| LADENBURG THALMAN FI | COM | 50575Q102 | 112 | 52814 | SH | | DEFINED | 16,24,25 | 43314 | 0 | 9500 |
| LADISH INC | COM NEW | 505754200 | 852 | 19732 | SH | | DEFINED | 16,24,25 | 17732 | 0 | 2000 |
| LAKELAND INDS INC | COM | 511795106 | 819 | 71386 | SH | | DEFINED | 16,24,25 | 69846 | 0 | 1540 |
| LAM RESEARCH CORP | COM | 512807108 | 342 | 7900 | SH | | DEFINED | 3,9 | 0 | 0 | 7900 |
| LAM RESEARCH CORP | COM | 512807108 | 3721 | 86070 | SH | | DEFINED | 7,11 | 86070 | 0 | 0 |
| LAM RESEARCH CORP | COM | 512807108 | 90 | 2085 | SH | | DEFINED | 16,24 | 2085 | 0 | 0 |
| LAM RESEARCH CORP | COM | 512807108 | 60 | 1393 | SH | | DEFINED | 7,11,13 | 1393 | 0 | 0 |
| LAM RESEARCH CORP | COM | 512807108 | 4340 | 100397 | SH | | DEFINED | 16,24,25 | 94036 | 0 | 6361 |
| LAM RESEARCH CORP | COM | 512807108 | 2422 | 56026 | SH | | DEFINED | 32,40,41 | 56026 | 0 | 0 |
| LAM RESEARCH CORP | COM | 512807108 | 3605 | 83400 | SH | CALL | DEFINED | 15,16,24 | 83400 | 0 | 0 |
| LAM RESEARCH CORP | COM | 512807108 | 3953 | 91443 | SH | CALL | DEFINED | 16,24,25 | 91443 | 0 | 0 |
| LAM RESEARCH CORP | COM | 512807108 | 3037 | 70243 | SH | PUT | DEFINED | 7,11 | 70243 | 0 | 0 |
| LAM RESEARCH CORP | COM | 512807108 | 5611 | 129800 | SH | PUT | DEFINED | 15,16,24 | 129800 | 0 | 0 |
| LAM RESEARCH CORP | COM | 512807108 | 8529 | 197300 | SH | PUT | DEFINED | 16,24,25 | 197300 | 0 | 0 |
| LAMAR ADVERTISING CO | CL A | 512815101 | 737 | 15324 | SH | | DEFINED | 7,11 | 15324 | 0 | 0 |
| LAMAR ADVERTISING CO | CL A | 512815101 | 32 | 670 | SH | | DEFINED | 7,11,13 | 0 | 0 | 670 |
| LAMAR ADVERTISING CO | CL A | 512815101 | 995 | 20695 | SH | | DEFINED | 16,24,25 | 20466 | 0 | 229 |
| LAMAR ADVERTISING CO | CL A | 512815101 | 713 | 14835 | SH | | DEFINED | 32,40,41 | 14835 | 0 | 0 |
| LAMAR ADVERTISING CO | CL A | 512815101 | 1154 | 24000 | SH | CALL | DEFINED | 16,24,25 | 24000 | 0 | 0 |
| LANCASTER COLONY COR | COM | 513847103 | 60 | 1500 | SH | | DEFINED | 30 | 1500 | 0 | 0 |
| LANCASTER COLONY COR | COM | 513847103 | 734 | 18499 | SH | | DEFINED | 16,24,25 | 18220 | 0 | 279 |
| LANDAMERICA FINL GRO | DBCV 3.12 | 514936A89 | 3276 | 3600000 | PRN | | DEFINED | 31,45 | 3600000 | 0 | 0 |
| LANDSTAR SYS INC | COM | 515098101 | 29 | 683 | SH | | DEFINED | 7,11 | 683 | 0 | 0 |
| LANDSTAR SYS INC | COM | 515098101 | 38 | 905 | SH | | DEFINED | 7,11,13 | 0 | 0 | 905 |
| LANDSTAR SYS INC | COM | 515098101 | 5903 | 140049 | SH | | DEFINED | 16,24,25 | 124822 | 0 | 15226 |
| LAS VEGAS SANDS CORP | COM | 517834107 | 654 | 6351 | SH | | DEFINED | 7,11 | 6351 | 0 | 0 |
| LAS VEGAS SANDS CORP | COM | 517834107 | 12 | 114 | SH | | DEFINED | 7,11,13 | 0 | 0 | 114 |
| LAS VEGAS SANDS CORP | COM | 517834107 | 9330 | 90535 | SH | | DEFINED | 16,24,25 | 70318 | 0 | 20217 |
| LAS VEGAS SANDS CORP | COM | 517834107 | 18058 | 175237 | SH | | DEFINED | 32,40,41 | 175237 | 0 | 0 |
| LAS VEGAS SANDS CORP | COM | 517834107 | 18 | 170 | SH | | DEFINED | 5-7,11,43,44 | 0 | 170 | 0 |
| LAS VEGAS SANDS CORP | COM | 517834107 | 39746 | 385700 | SH | CALL | DEFINED | 15,16,24 | 385700 | 0 | 0 |
| LAS VEGAS SANDS CORP | COM | 517834107 | 32183 | 312300 | SH | PUT | DEFINED | 15,16,24 | 312300 | 0 | 0 |
| LASALLE HOTEL PPTYS | COM SH BEN | 517942108 | 8198 | 257000 | SH | | DEFINED | 14,31 | 257000 | 0 | 0 |
| LASALLE HOTEL PPTYS | COM SH BEN | 517942108 | 361 | 11311 | SH | | DEFINED | 16,24,25 | 6914 | 0 | 4396 |
| LASALLE HOTEL PPTYS | COM SH BEN | 517942108 | 656 | 20558 | SH | | DEFINED | 32,40,41 | 20558 | 0 | 0 |
| LATIN AMER EQUITY FD | COM | 51827Q106 | 47 | 987 | SH | | DEFINED | 7,11,13 | 987 | 0 | 0 |
| LATIN AMER EQUITY FD | COM | 51827Q106 | 2086 | 44093 | SH | | DEFINED | 16,24,25 | 35841 | 0 | 8252 |
| LATIN AMERN DISCOVER | COM | 51828C106 | 8 | 275 | SH | | DEFINED | 7,11,13 | 275 | 0 | 0 |
| LATIN AMERN DISCOVER | COM | 51828C106 | 402 | 13366 | SH | | DEFINED | 16,24,25 | 12317 | 0 | 1049 |
| LAUDER ESTEE COS INC | CL A | 518439104 | 188 | 4300 | SH | | DEFINED | 12 | 0 | 0 | 4300 |
| LAUDER ESTEE COS INC | CL A | 518439104 | 839 | 19237 | SH | | DEFINED | 3,9 | 0 | 0 | 19237 |
| LAUDER ESTEE COS INC | CL A | 518439104 | 4678 | 107276 | SH | | DEFINED | 7,11 | 25246 | 0 | 82030 |
| LAUDER ESTEE COS INC | CL A | 518439104 | 2347 | 53828 | SH | | DEFINED | 7,11,13 | 45813 | 0 | 8015 |
| LAUDER ESTEE COS INC | CL A | 518439104 | 4 | 100 | SH | | DEFINED | 7,11,33 | 0 | 0 | 100 |
| LAUDER ESTEE COS INC | CL A | 518439104 | 10894 | 249803 | SH | | DEFINED | 16,24,25 | 239677 | 0 | 10125 |
| LAUDER ESTEE COS INC | CL A | 518439104 | 2481 | 56883 | SH | | DEFINED | 32,40,41 | 56883 | 0 | 0 |
| LAUDER ESTEE COS INC | CL A | 518439104 | 4189 | 96046 | SH | | DEFINED | 16,19,24,26,27 | 96046 | 0 | 0 |
| LAW ENFORCEMENT ASSO | COM | 519485106 | 10 | 18334 | SH | | DEFINED | 16,24,25 | 18334 | 0 | 0 |
| LAWSON SOFTWARE INC | COM | 52078P102 | 2 | 216 | SH | | DEFINED | 7,11 | 0 | 0 | 216 |
| LAWSON SOFTWARE INC | COM | 52078P102 | 205 | 20062 | SH | | DEFINED | 7,11,13 | 20062 | 0 | 0 |
| LAWSON SOFTWARE INC | COM | 52078P102 | 8627 | 842501 | SH | | DEFINED | 16,24,25 | 634247 | 0 | 208254 |
| LAYNE CHRISTENSEN CO | COM | 521050104 | 365 | 7410 | SH | | DEFINED | 7,11 | 7410 | 0 | 0 |
| LAYNE CHRISTENSEN CO | COM | 521050104 | 1351 | 27460 | SH | | DEFINED | 16,24,25 | 25011 | 0 | 2449 |
| LAYNE CHRISTENSEN CO | COM | 521050104 | 563 | 11448 | SH | | DEFINED | 32,40,41 | 11448 | 0 | 0 |
| LAZARD GLB TTL RET&I | COM | 52106W103 | 3921 | 168056 | SH | | DEFINED | 16,24,25 | 154262 | 0 | 13793 |
| LAZARD WORLD DIVID & | COM | 52107G109 | 634 | 32496 | SH | | DEFINED | 16,24,25 | 25356 | 0 | 7140 |
| LAZARE KAPLAN INTL I | COM | 521078105 | 103 | 12700 | SH | | DEFINED | 16,24,25 | 1300 | 0 | 11400 |
| LEAPFROG ENTERPRISES | CL A | 52186N106 | 265 | 39352 | SH | | DEFINED | 16,24,25 | 38951 | 0 | 401 |
| LEAP WIRELESS INTL I | COM NEW | 521863308 | 170 | 3638 | SH | | DEFINED | 7,11 | 3638 | 0 | 0 |
| LEAP WIRELESS INTL I | COM NEW | 521863308 | 32 | 692 | SH | | DEFINED | 16,24 | 692 | 0 | 0 |
| LEAP WIRELESS INTL I | COM NEW | 521863308 | 303 | 6490 | SH | | DEFINED | 16,24,25 | 5759 | 0 | 731 |
| LEAP WIRELESS INTL I | COM NEW | 521863308 | 163 | 3500 | SH | | DEFINED | 32,40,41 | 3500 | 0 | 0 |
| LEAR CORP | COM | 521865105 | 637 | 23033 | SH | | DEFINED | 16,24,25 | 22561 | 0 | 472 |
| LEAR CORP | COM | 521865105 | 41 | 1483 | SH | | DEFINED | 32,40,41 | 1483 | 0 | 0 |
| LEAR CORP | COM | 521865105 | 10688 | 386400 | SH | CALL | DEFINED | 15,16,24 | 386400 | 0 | 0 |
| LEAR CORP | COM | 521865105 | 15387 | 556300 | SH | PUT | DEFINED | 15,16,24 | 556300 | 0 | 0 |
| LEAR CORP | COM | 521865105 | 12447 | 450000 | SH | PUT | DEFINED | 16,24,25 | 450000 | 0 | 0 |
| LECG CORP | COM | 523234102 | 242 | 16100 | SH | | DEFINED | 16,24,25 | 15700 | 0 | 400 |
| LECROY CORP | NOTE 4.00 | 5232AWAB5 | 948 | 1000000 | PRN | | DEFINED | 31,45 | 1000000 | 0 | 0 |
| LEE ENTERPRISES INC | COM | 523768109 | 6 | 389 | SH | | DEFINED | 7,11 | 0 | 0 | 389 |
| LEE ENTERPRISES INC | COM | 523768109 | 18 | 1200 | SH | | DEFINED | 7,11,13 | 1200 | 0 | 0 |
| LEE ENTERPRISES INC | COM | 523768109 | 2131 | 145463 | SH | | DEFINED | 16,24,25 | 133793 | 0 | 11670 |
| LEGACY BANCORP INC | CL A | 52463G105 | 192 | 14500 | SH | | DEFINED | 16,24,25 | 14500 | 0 | 0 |
| LEGGETT & PLATT INC | COM | 524660107 | 215 | 12324 | SH | | DEFINED | 7,11 | 12324 | 0 | 0 |
| LEGGETT & PLATT INC | COM | 524660107 | 1133 | 64964 | SH | | DEFINED | 7,11,13 | 50700 | 0 | 14264 |
| LEGGETT & PLATT INC | COM | 524660107 | 1255 | 71965 | SH | | DEFINED | 16,24,25 | 64506 | 0 | 7459 |
| LEGGETT & PLATT INC | COM | 524660107 | 97 | 5584 | SH | | DEFINED | 32,40,41 | 5584 | 0 | 0 |
| LEGG MASON INC | COM | 524901105 | 12 | 300 | SH | | DEFINED | 12 | 0 | 0 | 300 |
| LEGG MASON INC | COM | 524901105 | 6500 | 88853 | SH | | DEFINED | 7,11 | 73703 | 0 | 15150 |
| LEGG MASON INC | COM | 524901105 | 1195 | 16342 | SH | | DEFINED | 7,11,13 | 16042 | 0 | 300 |
| LEGG MASON INC | COM | 524901105 | 33594 | 459247 | SH | | DEFINED | 16,24,25 | 318484 | 0 | 140762 |
| LEGG MASON INC | COM | 524901105 | 296 | 4044 | SH | | DEFINED | 32,40,41 | 4044 | 0 | 0 |
| LEGG MASON INC | COM | 524901105 | 19685 | 269100 | SH | CALL | DEFINED | 15,16,24 | 269100 | 0 | 0 |
| LEGG MASON INC | COM | 524901105 | 36011 | 492292 | SH | CALL | DEFINED | 16,24,25 | 492292 | 0 | 0 |
| LEGG MASON INC | COM | 524901105 | 4154 | 56792 | SH | PUT | DEFINED | 7,11 | 56792 | 0 | 0 |
| LEGG MASON INC | COM | 524901105 | 13789 | 188500 | SH | PUT | DEFINED | 15,16,24 | 188500 | 0 | 0 |
| LEGG MASON INC | COM | 524901105 | 5172 | 70700 | SH | PUT | DEFINED | 16,24,25 | 70700 | 0 | 0 |
| LEHMAN BROS HLDGS IN | COM | 524908100 | 285 | 4350 | SH | | DEFINED | 12 | 0 | 0 | 4350 |
| LEHMAN BROS HLDGS IN | COM | 524908100 | 416 | 6350 | SH | | DEFINED | 30 | 6350 | 0 | 0 |
| LEHMAN BROS HLDGS IN | COM | 524908100 | 37 | 569 | SH | | DEFINED | 3,9 | 0 | 0 | 569 |
| LEHMAN BROS HLDGS IN | COM | 524908100 | 14737 | 225205 | SH | | DEFINED | 7,11 | 193140 | 0 | 32065 |
| LEHMAN BROS HLDGS IN | COM | 524908100 | 135 | 2064 | SH | | DEFINED | 7,11,13 | 1999 | 0 | 65 |
| LEHMAN BROS HLDGS IN | COM | 524908100 | 398 | 6080 | SH | | DEFINED | 7,11,33 | 0 | 0 | 6080 |
| LEHMAN BROS HLDGS IN | COM | 524908100 | 196338 | 3000279 | SH | | DEFINED | 16,24,25 | 2735099 | 0 | 265180 |
| LEHMAN BROS HLDGS IN | COM | 524908100 | 8389 | 128194 | SH | | DEFINED | 32,40,41 | 128194 | 0 | 0 |
| LEHMAN BROS HLDGS IN | COM | 524908100 | 2955 | 45161 | SH | | DEFINED | 16,19,24,26,27 | 45161 | 0 | 0 |
| LEHMAN BROS HLDGS IN | COM | 524908100 | 46881 | 716400 | SH | CALL | DEFINED | 15,16,24 | 716400 | 0 | 0 |
| LEHMAN BROS HLDGS IN | COM | 524908100 | 17047 | 260500 | SH | CALL | DEFINED | 16,24,25 | 260500 | 0 | 0 |
| LEHMAN BROS HLDGS IN | COM | 524908100 | 64916 | 992000 | SH | PUT | DEFINED | 15,16,24 | 992000 | 0 | 0 |
| LEHMAN BROS HLDGS IN | COM | 524908100 | 77272 | 1180800 | SH | PUT | DEFINED | 16,24,25 | 1180800 | 0 | 0 |
| LENNAR CORP | CL A | 526057104 | 398 | 22230 | SH | | DEFINED | 7,11 | 22230 | 0 | 0 |
| LENNAR CORP | CL A | 526057104 | 1404 | 78489 | SH | | DEFINED | 15,16,24 | 78489 | 0 | 0 |
| LENNAR CORP | CL A | 526057104 | 9898 | 553247 | SH | | DEFINED | 16,24,25 | 518214 | 0 | 35032 |
| LENNAR CORP | CL A | 526057104 | 1502 | 83943 | SH | | DEFINED | 32,40,41 | 83943 | 0 | 0 |
| LENNAR CORP | CL A | 526057104 | 12035 | 672700 | SH | CALL | DEFINED | 15,16,24 | 672700 | 0 | 0 |

| Name | Class | CUSIP | Col1 | Col2 | Unit | Type | Codes | Col3 | Col4 | Col5 |
|---|---|---|---|---|---|---|---|---|---|---|
| LENNAR CORP | CL A | 526057104 | 10532 | 588700 | SH | CALL DEFINED | 16,24,25 | 588700 | 0 | 0 |
| LENNAR CORP | CL A | 526057104 | 14757 | 824900 | SH | PUT DEFINED | 15,16,24 | 824900 | 0 | 0 |
| LENNAR CORP | CL B | 526057302 | 673 | 40524 | SH | DEFINED | 16,24,25 | 40496 | 0 | 28 |
| LENNOX INTL INC | COM | 526107107 | 179 | 4330 | SH | DEFINED | 30 | 4330 | 0 | 0 |
| LENNOX INTL INC | COM | 526107107 | 618 | 14917 | SH | DEFINED | 7,11 | 14917 | 0 | 0 |
| LENNOX INTL INC | COM | 526107107 | 179 | 4322 | SH | DEFINED | 16,24,25 | 4222 | 0 | 100 |
| LENNOX INTL INC | COM | 526107107 | 25 | 600 | SH | DEFINED | 32,40,41 | 600 | 0 | 0 |
| LEUCADIA NATL CORP | COM | 527288104 | 1036 | 21990 | SH | DEFINED | 7,11 | 21680 | 0 | 310 |
| LEUCADIA NATL CORP | COM | 527288104 | 236 | 5000 | SH | DEFINED | 7,11,33 | 0 | 0 | 5000 |
| LEUCADIA NATL CORP | COM | 527288104 | 27859 | 591491 | SH | DEFINED | 16,24,25 | 457601 | 0 | 133890 |
| LEUCADIA NATL CORP | COM | 527288104 | 215 | 4570 | SH | DEFINED | 32,40,41 | 4570 | 0 | 0 |
| LEUCADIA NATL CORP | COM | 527288104 | 3697 | 78500 | SH | CALL DEFINED | 16,24,25 | 78500 | 0 | 0 |
| LEVEL 3 COMMUNICATIO | NOTE 6.00 | 52729NAG5 | 18 | 19000 | PRN | DEFINED | 16,24,25 | 19000 | 0 | 0 |
| LEVEL 3 COMMUNICATIO | NOTE 6.00 | 52729NAS9 | 90 | 101000 | PRN | DEFINED | 16,24,25 | 97000 | 0 | 4000 |
| LEVEL 3 COMMUNICATIO | NOTE 2.87 | 52729NBA7 | 603 | 691000 | PRN | DEFINED | 16,24,25 | 691000 | 0 | 0 |
| LEVEL 3 COMMUNICATIO | NOTE 3.50 | 52729NBK5 | 60913 | 69515000 | PRN | DEFINED | 16,24,25 | 69515000 | 0 | 0 |
| LEVEL 3 COMMUNICATIO | COM | 52729N100 | 510 | 167914 | SH | DEFINED | 7,11 | 167914 | 0 | 0 |
| LEVEL 3 COMMUNICATIO | COM | 52729N100 | 2556 | 840935 | SH | DEFINED | 16,24,25 | 578795 | 0 | 262140 |
| LEVEL 3 COMMUNICATIO | COM | 52729N100 | 2441 | 803000 | SH | DEFINED | 32,40,41 | 803000 | 0 | 0 |
| LEVEL 3 COMMUNICATIO | COM | 52729N100 | 19 | 6400 | SH | DEFINED | 5-7,11,43,44 | 0 | 6400 | 0 |
| LEVEL 3 COMMUNICATIO | COM | 52729N100 | 1019 | 335300 | SH | CALL DEFINED | 15,16,24 | 335300 | 0 | 0 |
| LEVEL 3 COMMUNICATIO | COM | 52729N100 | 152 | 50000 | SH | DEFINED | 16,24,25 | 50000 | 0 | 0 |
| LEVEL 3 COMMUNICATIO | COM | 52729N100 | 1849 | 608100 | SH | PUT DEFINED | 15,16,24 | 608100 | 0 | 0 |
| LEVEL 3 COMMUNICATIO | COM | 52729N100 | 669 | 220000 | SH | PUT DEFINED | 16,24,25 | 220000 | 0 | 0 |
| LEVITT CORP | CL A | 52742P108 | 34 | 15321 | SH | DEFINED | 16,24,25 | 11520 | 0 | 3801 |
| LEXINGTON REALTY TRU | COM | 529043101 | 4427 | 304470 | SH | DEFINED | 16,24,25 | 280210 | 0 | 24260 |
| LEXINGTON REALTY TRU | COM | 529043101 | 465 | 32034 | SH | DEFINED | 32,40,41 | 32034 | 0 | 0 |
| LEXINGTON REALTY TRU | PFD CONV S | 529043309 | 9453 | 250200 | SH | DEFINED | 16,24 | 250200 | 0 | 0 |
| LEXMARK INTL NEW | CL A | 529771107 | 2616 | 75041 | SH | DEFINED | 7,11 | 69931 | 0 | 5110 |
| LEXMARK INTL NEW | CL A | 529771107 | 3257 | 93442 | SH | DEFINED | 15,16,24 | 93442 | 0 | 0 |
| LEXMARK INTL NEW | CL A | 529771107 | 4312 | 123696 | SH | DEFINED | 16,24,25 | 110047 | 0 | 13649 |
| LEXMARK INTL NEW | CL A | 529771107 | 116 | 3331 | SH | DEFINED | 32,40,41 | 3331 | 0 | 0 |
| LEXMARK INTL NEW | CL A | 529771107 | 10193 | 292400 | SH | CALL DEFINED | 15,16,24 | 292400 | 0 | 0 |
| LEXMARK INTL NEW | CL A | 529771107 | 105 | 3000 | SH | CALL DEFINED | 16,24,25 | 3000 | 0 | 0 |
| LEXMARK INTL NEW | CL A | 529771107 | 11992 | 344000 | SH | PUT DEFINED | 15,16,24 | 344000 | 0 | 0 |
| LIBERTY ALL-STAR GRO | COM | 529900102 | 40 | 6651 | SH | DEFINED | 7,11,13 | 6651 | 0 | 0 |
| LIBERTY ALL-STAR GRO | COM | 529900102 | 36 | 6115 | SH | DEFINED | 16,24,25 | 3428 | 0 | 2687 |
| LIBERTY ALL STAR EQU | SH BEN INT | 530158104 | 16 | 2250 | SH | DEFINED | 7,11,13 | 2250 | 0 | 0 |
| LIBERTY ALL STAR EQU | SH BEN INT | 530158104 | 727 | 103083 | SH | DEFINED | 16,24,25 | 94441 | 0 | 8642 |
| LIBERTY GLOBAL INC | COM SER A | 530555101 | 3 | 67 | SH | DEFINED | 3,9 | 0 | 0 | 67 |
| LIBERTY GLOBAL INC | COM SER A | 530555101 | 1805 | 46052 | SH | DEFINED | 7,11 | 41578 | 0 | 4474 |
| LIBERTY GLOBAL INC | COM SER A | 530555101 | 79 | 2013 | SH | DEFINED | 7,11,33 | 0 | 0 | 2013 |
| LIBERTY GLOBAL INC | COM SER A | 530555101 | 30706 | 783512 | SH | DEFINED | 16,24,25 | 741325 | 0 | 42187 |
| LIBERTY GLOBAL INC | COM SER A | 530555101 | 1415 | 36113 | SH | DEFINED | 32,40,41 | 36113 | 0 | 0 |
| LIBERTY GLOBAL INC | COM SER A | 530555101 | 9 | 218 | SH | DEFINED | 5-7,11,43,44 | 0 | 218 | 0 |
| LIBERTY GLOBAL INC | COM SER A | 530555101 | 1548 | 39500 | SH | CALL DEFINED | 15,16,24 | 39500 | 0 | 0 |
| LIBERTY GLOBAL INC | COM SER A | 530555101 | 1285 | 32800 | SH | DEFINED | 16,24,25 | 32800 | 0 | 0 |
| LIBERTY GLOBAL INC | COM SER A | 530555101 | 29393 | 750000 | SH | PUT DEFINED | 16,24,25 | 750000 | 0 | 0 |
| LIBERTY GLOBAL INC | COM SER C | 530555309 | 516 | 14096 | SH | DEFINED | 7,11 | 9237 | 0 | 4859 |
| LIBERTY GLOBAL INC | COM SER C | 530555309 | 4574 | 125000 | SH | DEFINED | 31,45 | 125000 | 0 | 0 |
| LIBERTY GLOBAL INC | COM SER C | 530555309 | 13 | 360 | SH | DEFINED | 7,11,13 | 0 | 0 | 360 |
| LIBERTY GLOBAL INC | COM SER C | 530555309 | 14 | 380 | SH | DEFINED | 7,11,33 | 0 | 0 | 380 |
| LIBERTY GLOBAL INC | COM SER C | 530555309 | 8467 | 231412 | SH | DEFINED | 16,24,25 | 210132 | 0 | 21280 |
| LIBERTY GLOBAL INC | COM SER C | 530555309 | 206 | 5624 | SH | DEFINED | 32,40,41 | 5624 | 0 | 0 |
| LIBERTY GLOBAL INC | COM SER C | 530555309 | 8 | 221 | SH | DEFINED | 5-7,11,43,44 | 0 | 221 | 0 |
| LIBERTY MEDIA HLDG C | INT COM SE | 53071M104 | 13 | 668 | SH | DEFINED | 3,9 | 0 | 0 | 668 |
| LIBERTY MEDIA HLDG C | INT COM SE | 53071M104 | 2387 | 125123 | SH | DEFINED | 7,11 | 58626 | 1500 | 64997 |
| LIBERTY MEDIA HLDG C | INT COM SE | 53071M104 | 3 | 145 | SH | DEFINED | 7,11,13 | 145 | 0 | 0 |
| LIBERTY MEDIA HLDG C | INT COM SE | 53071M104 | 98 | 5136 | SH | DEFINED | 7,11,33 | 0 | 0 | 5136 |
| LIBERTY MEDIA HLDG C | INT COM SE | 53071M104 | 99530 | 5216469 | SH | DEFINED | 16,24,25 | 4872038 | 0 | 344430 |
| LIBERTY MEDIA HLDG C | INT COM SE | 53071M104 | 346 | 18155 | SH | DEFINED | 32,40,41 | 18155 | 0 | 0 |
| LIBERTY MEDIA HLDG C | INT COM SE | 53071M104 | 30 | 1575 | SH | DEFINED | 5-7,11,43,44 | 0 | 1575 | 0 |
| LIBERTY MEDIA HLDG C | INT COM SE | 53071M104 | 1442 | 75600 | SH | CALL DEFINED | 15,16,24 | 75600 | 0 | 0 |
| LIBERTY MEDIA HLDG C | INT COM SE | 53071M104 | 48295 | 2531200 | SH | PUT DEFINED | 7,11 | 2531200 | 0 | 0 |
| LIBERTY MEDIA HLDG C | INT COM SE | 53071M104 | 771 | 40400 | SH | PUT DEFINED | 15,16,24 | 40400 | 0 | 0 |
| LIBERTY MEDIA HLDG C | CAP COM SE | 53071M302 | 5 | 39 | SH | DEFINED | 3,9 | 0 | 0 | 39 |
| LIBERTY MEDIA HLDG C | CAP COM SE | 53071M302 | 3181 | 27306 | SH | DEFINED | 7,11 | 5926 | 370 | 21010 |
| LIBERTY MEDIA HLDG C | CAP COM SE | 53071M302 | 131 | 1125 | SH | DEFINED | 7,11,13 | 0 | 0 | 1125 |
| LIBERTY MEDIA HLDG C | CAP COM SE | 53071M302 | 104 | 897 | SH | DEFINED | 7,11,33 | 0 | 0 | 897 |
| LIBERTY MEDIA HLDG C | CAP COM SE | 53071M302 | 84839 | 728296 | SH | DEFINED | 16,24,25 | 670599 | 0 | 57696 |
| LIBERTY MEDIA HLDG C | CAP COM SE | 53071M302 | 404 | 3468 | SH | DEFINED | 32,40,41 | 3468 | 0 | 0 |
| LIBERTY MEDIA HLDG C | CAP COM SE | 53071M302 | 23 | 200 | SH | DEFINED | 5-7,11,43,44 | 0 | 200 | 0 |
| LIBERTY MEDIA HLDG C | CAP COM SE | 53071M302 | 577790 | 4960000 | SH | CALL DEFINED | 16,24,25 | 4960000 | 0 | 0 |
| LIBERTY MEDIA HLDG C | CAP COM SE | 53071M302 | 11311 | 97100 | SH | CALL DEFINED | 15,16,24 | 97100 | 0 | 0 |
| LIBERTY MEDIA HLDG C | CAP COM SE | 53071M302 | 8178 | 70200 | SH | PUT DEFINED | 15,16,24 | 70200 | 0 | 0 |
| LIBERTY MEDIA CORP | DEB 3.50 | 530715ANI | 93 | 105000 | PRN | DEFINED | 16,24,25 | 105000 | 0 | 0 |
| LIBERTY MEDIA CORP | DEB 0.75 | 530715AR2 | 3425 | 4684000 | PRN | DEFINED | 16,24,25 | 4484000 | 0 | 200000 |
| LIBERTY MEDIA CORP N | DEB 0.75 | 530718AP2 | 13016 | 12500000 | PRN | DEFINED | 7,11 | 12500000 | 0 | 0 |
| LIBERTY MEDIA CORP N | DEB | 530718AP2 | 82787 | 79507000 | PRN | DEFINED | 16,24,25 | 79507000 | 0 | 0 |
| LIBERTY PPTY TR | SH BEN INT | 531172104 | 128 | 4430 | SH | DEFINED | 7,11 | 4430 | 0 | 0 |
| LIBERTY PPTY TR | SH BEN INT | 531172104 | 42 | 1475 | SH | DEFINED | 7,11,13 | 1475 | 0 | 0 |
| LIBERTY PPTY TR | SH BEN INT | 531172104 | 358 | 12432 | SH | DEFINED | 16,24,25 | 10224 | 0 | 2207 |
| LIBERTY PPTY TR | SH BEN INT | 531172104 | 22113 | 767560 | SH | DEFINED | 32,40,41 | 767560 | 0 | 0 |
| LIFECELL CORP | COM | 531927101 | 6 | 138 | SH | DEFINED | 7,11 | 0 | 0 | 138 |
| LIFECELL CORP | COM | 531927101 | 6 | 150 | SH | DEFINED | 7,11,13 | 150 | 0 | 0 |
| LIFECELL CORP | COM | 531927101 | 456 | 10581 | SH | DEFINED | 15,16,24 | 10581 | 0 | 0 |
| LIFECELL CORP | COM | 531927101 | 1891 | 43859 | SH | DEFINED | 16,24,25 | 41260 | 0 | 2599 |
| LIFECELL CORP | COM | 531927101 | 1599 | 37100 | SH | CALL DEFINED | 15,16,24 | 37100 | 0 | 0 |
| LIFECELL CORP | COM | 531927101 | 2246 | 52100 | SH | PUT DEFINED | 15,16,24 | 52100 | 0 | 0 |
| LIFE TIME FITNESS IN | COM | 53217R207 | 333 | 6699 | SH | DEFINED | 16,24,25 | 5499 | 0 | 1200 |
| LIFEPOINT HOSPITALS | NOTE 3.50 | 53219LAH2 | 12691 | 14280000 | PRN | DEFINED | 16,24,25 | 14280000 | 0 | 0 |
| LIFEPOINT HOSPITALS | COM | 53219LL09 | 1 | 33 | SH | DEFINED | 3,9 | 0 | 0 | 33 |
| LIFEPOINT HOSPITALS | COM | 53219LL09 | 2714 | 91266 | SH | DEFINED | 7,11 | 91266 | 0 | 0 |
| LIFEPOINT HOSPITALS | COM | 53219LL09 | 2683 | 90215 | SH | DEFINED | 16,24,25 | 88080 | 0 | 2135 |
| LIFEPOINT HOSPITALS | COM | 53219LL09 | 4648 | 156300 | SH | PUT DEFINED | 7,11 | 156300 | 0 | 0 |
| LIGAND PHARMACEUTICA | CL B | 53220K207 | 4830 | 1000000 | SH | DEFINED | 7,11 | 1000000 | 0 | 0 |
| LIGAND PHARMACEUTICA | CL B | 53220K207 | 64 | 13339 | SH | DEFINED | 16,24,25 | 13089 | 0 | 250 |
| LIGAND PHARMACEUTICA | CL B | 53220K207 | 99 | 20500 | SH | CALL DEFINED | 15,16,24 | 20500 | 0 | 0 |
| LIGAND PHARMACEUTICA | CL B | 53220K207 | 40 | 8300 | SH | PUT DEFINED | 15,16,24 | 8300 | 0 | 0 |
| LIFETIME BRANDS INC | NOTE 4.75 | 53222QAB9 | 7826 | 9100000 | PRN | DEFINED | 16,24,25 | 9100000 | 0 | 0 |
| LIFETIME BRANDS INC | COM | 53222Q103 | 370 | 28530 | SH | DEFINED | 16,24,25 | 26180 | 0 | 2350 |
| LIHIR GOLD LTD | SPONSORED | 532349107 | 892 | 28594 | SH | DEFINED | 16,24,25 | 26399 | 0 | 2195 |
| LILLY ELI & CO | COM | 532457108 | 48 | 900 | SH | DEFINED | 12 | 0 | 0 | 900 |
| LILLY ELI & CO | COM | 532457108 | 486 | 9100 | SH | DEFINED | 30 | 9100 | 0 | 0 |
| LILLY ELI & CO | COM | 532457108 | 18493 | 346374 | SH | DEFINED | 7,11 | 250444 | 0 | 95930 |
| LILLY ELI & CO | COM | 532457108 | 728 | 13644 | SH | DEFINED | 7,11,13 | 12794 | 0 | 850 |
| LILLY ELI & CO | COM | 532457108 | 42 | 785 | SH | DEFINED | 7,11,33 | 0 | 0 | 785 |
| LILLY ELI & CO | COM | 532457108 | 44111 | 826999 | SH | DEFINED | 16,24,25 | 700746 | 0 | 125452 |
| LILLY ELI & CO | COM | 532457108 | 27527 | 515583 | SH | DEFINED | 32,40,41 | 515583 | 0 | 0 |
| LILLY ELI & CO | COM | 532457108 | 49 | 925 | SH | DEFINED | 5-7,11,43,44 | 0 | 925 | 0 |
| LILLY ELI & CO | COM | 532457108 | 3257 | 61050 | SH | CALL DEFINED | 7,11 | 61050 | 0 | 0 |
| LILLY ELI & CO | COM | 532457108 | 13940 | 261100 | SH | CALL DEFINED | 15,16,24 | 261100 | 0 | 0 |
| LILLY ELI & CO | COM | 532457108 | 8286 | 155200 | SH | PUT DEFINED | 15,16,24 | 155200 | 0 | 0 |
| LILLY ELI & CO | COM | 532457108 | 10742 | 201200 | SH | PUT DEFINED | 15,16,24 | 201200 | 0 | 0 |

| Name | Class | CUSIP | Col1 | Col2 | Type | Opt | Defined | Codes | Val1 | Zero | Val2 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| LILLY ELI & CO | COM | 532457108 | 15830 | 296500 | SH | PUT | DEFINED | 16,24,25 | 296500 | 0 | 0 |
| LIMITED BRANDS INC | COM | 532716107 | 413 | 21800 | SH | | DEFINED | 30 | 21800 | 0 | 0 |
| LIMITED BRANDS INC | COM | 532716107 | 1312 | 69310 | SH | | DEFINED | 7,11 | 35857 | 0 | 33453 |
| LIMITED BRANDS INC | COM | 532716107 | 191 | 10098 | SH | | DEFINED | 7,11,13 | 10098 | 0 | 0 |
| LIMITED BRANDS INC | COM | 532716107 | 17 | 904 | SH | | DEFINED | 7,11,33 | 0 | 0 | 904 |
| LIMITED BRANDS INC | COM | 532716107 | 444 | 23447 | SH | | DEFINED | 15,16,24 | 23447 | 0 | 0 |
| LIMITED BRANDS INC | COM | 532716107 | 1434 | 75755 | SH | | DEFINED | 16,24,25 | 72845 | 0 | 2910 |
| LIMITED BRANDS INC | COM | 532716107 | 452 | 23875 | SH | | DEFINED | 32,40,41 | 23875 | 0 | 0 |
| LIMITED BRANDS INC | COM | 532716107 | 2654 | 140200 | SH | CALL | DEFINED | 15,16,24 | 140200 | 0 | 0 |
| LIMITED BRANDS INC | COM | 532716107 | 44 | 2300 | SH | CALL | DEFINED | 16,24,25 | 2300 | 0 | 0 |
| LIMITED BRANDS INC | COM | 532716107 | 6832 | 360900 | SH | PUT | DEFINED | 15,16,24 | 360900 | 0 | 0 |
| LIMITED BRANDS INC | COM | 532716107 | 104 | 5500 | SH | PUT | DEFINED | 16,24,25 | 5500 | 0 | 0 |
| LINCARE HLDGS INC | COM | 532791100 | 1109 | 31548 | SH | | DEFINED | 7,11 | 31548 | 0 | 0 |
| LINCARE HLDGS INC | COM | 532791100 | 37 | 1039 | SH | | DEFINED | 16,24 | 1039 | 0 | 0 |
| LINCARE HLDGS INC | COM | 532791100 | 166 | 4720 | SH | | DEFINED | 7,11,13 | 4720 | 0 | 0 |
| LINCARE HLDGS INC | COM | 532791100 | 39 | 1115 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1115 |
| LINCARE HLDGS INC | COM | 532791100 | 1468 | 41762 | SH | | DEFINED | 16,24,25 | 38440 | 0 | 3322 |
| LINCARE HLDGS INC | COM | 532791100 | 95 | 2715 | SH | | DEFINED | 32,40,41 | 2715 | 0 | 0 |
| LINCARE HLDGS INC | COM | 532791100 | 4859 | 138200 | SH | CALL | DEFINED | 15,16,24 | 138200 | 0 | 0 |
| LINCARE HLDGS INC | COM | 532791100 | 7159 | 203600 | SH | PUT | DEFINED | 15,16,24 | 203600 | 0 | 0 |
| LINCOLN ELEC HLDGS I | COM | 533900106 | 183 | 2575 | SH | | DEFINED | 30 | 2575 | 0 | 0 |
| LINCOLN ELEC HLDGS I | COM | 533900106 | 25 | 358 | SH | | DEFINED | 7,11 | 358 | 0 | 0 |
| LINCOLN ELEC HLDGS I | COM | 533900106 | 52 | 733 | SH | | DEFINED | 7,11,33 | 0 | 0 | 733 |
| LINCOLN ELEC HLDGS I | COM | 533900106 | 2963 | 41630 | SH | | DEFINED | 16,24,25 | 29844 | 0 | 11786 |
| LINCOLN NATL CORP IN | COM | 534187109 | 380 | 6525 | SH | | DEFINED | 12 | 0 | 0 | 6525 |
| LINCOLN NATL CORP IN | COM | 534187109 | 378 | 6500 | SH | | DEFINED | 30 | 6500 | 0 | 0 |
| LINCOLN NATL CORP IN | COM | 534187109 | 5267 | 90466 | SH | | DEFINED | 7,11 | 34505 | 0 | 55961 |
| LINCOLN NATL CORP IN | COM | 534187109 | 3872 | 66504 | SH | | DEFINED | 7,11,13 | 59876 | 0 | 6628 |
| LINCOLN NATL CORP IN | COM | 534187109 | 245 | 4212 | SH | | DEFINED | 7,11,33 | 0 | 0 | 4212 |
| LINCOLN NATL CORP IN | COM | 534187109 | 44772 | 769014 | SH | | DEFINED | 16,24,25 | 595751 | 0 | 173263 |
| LINCOLN NATL CORP IN | COM | 534187109 | 480 | 8237 | SH | | DEFINED | 32,40,41 | 8237 | 0 | 0 |
| LINCOLN NATL CORP IN | COM | 534187109 | 448 | 7700 | SH | CALL | DEFINED | 7,11 | 7700 | 0 | 0 |
| LINCOLN NATL CORP IN | COM | 534187109 | 7854 | 134900 | SH | CALL | DEFINED | 15,16,24 | 134900 | 0 | 0 |
| LINCOLN NATL CORP IN | COM | 534187109 | 664 | 11400 | SH | CALL | DEFINED | 16,24,25 | 11400 | 0 | 0 |
| LINCOLN NATL CORP IN | COM | 534187109 | 6259 | 107500 | SH | PUT | DEFINED | 7,11 | 107500 | 0 | 0 |
| LINCOLN NATL CORP IN | COM | 534187109 | 7359 | 126400 | SH | PUT | DEFINED | 15,16,24 | 126400 | 0 | 0 |
| LINDSAY CORP | COM | 535555106 | 2865 | 40531 | SH | | DEFINED | 7,11 | 40531 | 0 | 0 |
| LINDSAY CORP | COM | 535555106 | 1256 | 17774 | SH | | DEFINED | 16,24,25 | 8367 | 0 | 9407 |
| LINEAR TECHNOLOGY CO | COM | 535678106 | 1135 | 35644 | SH | | DEFINED | 7,11 | 35644 | 0 | 0 |
| LINEAR TECHNOLOGY CO | COM | 535678106 | 408 | 12813 | SH | | DEFINED | 16,24 | 12813 | 0 | 0 |
| LINEAR TECHNOLOGY CO | COM | 535678106 | 839 | 26350 | SH | | DEFINED | 7,11,13 | 26350 | 0 | 0 |
| LINEAR TECHNOLOGY CO | COM | 535678106 | 32 | 1020 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1020 |
| LINEAR TECHNOLOGY CO | COM | 535678106 | 20386 | 640472 | SH | | DEFINED | 16,24,25 | 602424 | 0 | 38048 |
| LINEAR TECHNOLOGY CO | COM | 535678106 | 479 | 15047 | SH | | DEFINED | 32,40,41 | 15047 | 0 | 0 |
| LINEAR TECHNOLOGY CO | COM | 535678106 | 179 | 5609 | SH | | DEFINED | 16,19,24,26,27 | 5609 | 0 | 0 |
| LINEAR TECHNOLOGY CO | COM | 535678106 | 13779 | 432900 | SH | CALL | DEFINED | 15,16,24 | 432900 | 0 | 0 |
| LINEAR TECHNOLOGY CO | COM | 535678106 | 11325 | 355800 | SH | CALL | DEFINED | 16,24,25 | 355800 | 0 | 0 |
| LINEAR TECHNOLOGY CO | COM | 535678106 | 13903 | 436800 | SH | PUT | DEFINED | 15,16,24 | 436800 | 0 | 0 |
| LINEAR TECHNOLOGY CO | COM | 535678106 | 17850 | 560800 | SH | PUT | DEFINED | 16,24,25 | 560800 | 0 | 0 |
| LIONS GATE ENTMNT CO | COM NEW | 535919203 | 809 | 85909 | SH | | DEFINED | 15,16,24 | 85909 | 0 | 0 |
| LIONS GATE ENTMNT CO | COM NEW | 535919203 | 118 | 12511 | SH | | DEFINED | 16,24,25 | 12511 | 0 | 0 |
| LIONS GATE ENTMNT CO | COM NEW | 535919203 | 3162 | 335700 | SH | CALL | DEFINED | 15,16,24 | 335700 | 0 | 0 |
| LIONS GATE ENTMNT CO | COM NEW | 535919203 | 23 | 2400 | SH | CALL | DEFINED | 16,24,25 | 2400 | 0 | 0 |
| LIONS GATE ENTMNT CO | COM NEW | 535919203 | 1602 | 170100 | SH | PUT | DEFINED | 15,16,24 | 170100 | 0 | 0 |
| LIONS GATE ENTMNT CO | COM NEW | 535919203 | 245 | 26000 | SH | PUT | DEFINED | 16,24,25 | 26000 | 0 | 0 |
| LINKTONE LTD | ADR | 535925101 | 97 | 31382 | SH | | DEFINED | 16,24,25 | 30920 | 0 | 462 |
| LINN ENERGY LLC | UNIT LTD L | 536020100 | 16680 | 666418 | SH | | DEFINED | 16,24 | 666418 | 0 | 0 |
| LINN ENERGY LLC | UNIT LTD L | 536020100 | 17385 | 694578 | SH | | DEFINED | 16,24,25 | 691114 | 0 | 3463 |
| LIONBRIDGE TECHNOLOG | COM | 536252109 | 47 | 13369 | SH | | DEFINED | 16,24,25 | 11369 | 0 | 2000 |
| LITHIA MTRS INC | CL A | 536797103 | 1 | 41 | SH | | DEFINED | 3,9 | 0 | 0 | 41 |
| LITHIA MTRS INC | CL A | 536797103 | 164 | 11978 | SH | | DEFINED | 16,24,25 | 11545 | 0 | 433 |
| LITTELFUSE INC | COM | 537008104 | 238 | 7225 | SH | | DEFINED | 7,11,13 | 7000 | 0 | 225 |
| LITTELFUSE INC | COM | 537008104 | 165 | 5000 | SH | | DEFINED | 16,24,25 | 5000 | 0 | 0 |
| LIVE NATION INC | COM | 538034109 | 44 | 2997 | SH | | DEFINED | 16,24,25 | 2997 | 0 | 0 |
| LIVE NATION INC | COM | 538034109 | 100 | 6906 | SH | | DEFINED | 16,24,25 | 5163 | 0 | 1743 |
| LIVE NATION INC | COM | 538034109 | 67 | 4600 | SH | CALL | DEFINED | 15,16,24 | 4600 | 0 | 0 |
| LIZ CLAIBORNE INC | COM | 539320101 | 447 | 21980 | SH | | DEFINED | 7,11 | 18280 | 0 | 3700 |
| LIZ CLAIBORNE INC | COM | 539320101 | 319 | 15675 | SH | | DEFINED | 7,11,13 | 15675 | 0 | 0 |
| LIZ CLAIBORNE INC | COM | 539320101 | 1219 | 59909 | SH | | DEFINED | 16,24,25 | 53384 | 0 | 6525 |
| LIZ CLAIBORNE INC | COM | 539320101 | 85 | 4154 | SH | | DEFINED | 32,40,41 | 4154 | 0 | 0 |
| LLOYDS TSB GROUP PLC | SPONSORED | 539439109 | 10 | 272 | SH | | DEFINED | 7,11,13 | 272 | 0 | 0 |
| LLOYDS TSB GROUP PLC | SPONSORED | 539439109 | 29 | 780 | SH | | DEFINED | 7,11,33 | 0 | 0 | 780 |
| LLOYDS TSB GROUP PLC | SPONSORED | 539439109 | 6933 | 184137 | SH | | DEFINED | 16,24,25 | 160974 | 0 | 23163 |
| LOCKHEED MARTIN CORP | DBCV | 539830AP4 | 10022 | 6823000 | PRN | | DEFINED | 16,24,25 | 6823000 | 0 | 0 |
| LOCKHEED MARTIN CORP | COM | 539830109 | 7336 | 69698 | SH | | DEFINED | 7,11 | 69698 | 0 | 0 |
| LOCKHEED MARTIN CORP | COM | 539830109 | 71 | 679 | SH | | DEFINED | 7,11,13 | 679 | 0 | 0 |
| LOCKHEED MARTIN CORP | COM | 539830109 | 113 | 1075 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1075 |
| LOCKHEED MARTIN CORP | COM | 539830109 | 48782 | 463439 | SH | | DEFINED | 16,24,25 | 379227 | 0 | 84212 |
| LOCKHEED MARTIN CORP | COM | 539830109 | 2139 | 20321 | SH | | DEFINED | 32,40,41 | 20321 | 0 | 0 |
| LOCKHEED MARTIN CORP | COM | 539830109 | 105 | 1000 | SH | | DEFINED | 5-7,11,43,44 | 0 | 1000 | 0 |
| LOCKHEED MARTIN CORP | COM | 539830109 | 5560 | 52826 | SH | CALL | DEFINED | 7,11 | 52826 | 0 | 0 |
| LOCKHEED MARTIN CORP | COM | 539830109 | 19557 | 185800 | SH | CALL | DEFINED | 15,16,24 | 185800 | 0 | 0 |
| LOCKHEED MARTIN CORP | COM | 539830109 | 11947 | 113500 | SH | CALL | DEFINED | 16,24,25 | 113500 | 0 | 0 |
| LOCKHEED MARTIN CORP | COM | 539830109 | 25704 | 244200 | SH | PUT | DEFINED | 15,16,24 | 244200 | 0 | 0 |
| LOCKHEED MARTIN CORP | COM | 539830109 | 10666 | 101326 | SH | PUT | DEFINED | 16,24,25 | 101326 | 0 | 0 |
| LOEWS CORP | COM | 540424108 | 653 | 12975 | SH | | DEFINED | 12 | 0 | 0 | 12975 |
| LOEWS CORP | COM | 540424108 | 4269 | 84808 | SH | | DEFINED | 3,9 | 0 | 0 | 84808 |
| LOEWS CORP | COM | 540424108 | 20212 | 401509 | SH | | DEFINED | 7,11 | 216162 | 0 | 185347 |
| LOEWS CORP | COM | 540424108 | 697 | 13849 | SH | | DEFINED | 7,11,13 | 0 | 0 | 13849 |
| LOEWS CORP | COM | 540424108 | 35 | 705 | SH | | DEFINED | 7,11,33 | 0 | 0 | 705 |
| LOEWS CORP | COM | 540424108 | 43558 | 865272 | SH | | DEFINED | 16,24,25 | 685839 | 0 | 179433 |
| LOEWS CORP | COM | 540424108 | 326 | 6483 | SH | | DEFINED | 32,40,41 | 6483 | 0 | 0 |
| LOEWS CORP | CAROLNA GP | 540424207 | 82983 | 972835 | SH | | DEFINED | 7,11 | 972835 | 0 | 0 |
| LOEWS CORP | CAROLNA GP | 540424207 | 8922 | 104600 | SH | | DEFINED | 16,24 | 104600 | 0 | 0 |
| LOEWS CORP | CAROLNA GP | 540424207 | 60 | 700 | SH | | DEFINED | 7,11,33 | 0 | 0 | 700 |
| LOEWS CORP | CAROLNA GP | 540424207 | 11244 | 131815 | SH | | DEFINED | 16,24,25 | 113596 | 0 | 18219 |
| LOEWS CORP | CAROLNA GP | 540424207 | 591 | 6925 | SH | | DEFINED | 32,40,41 | 6925 | 0 | 0 |
| LOEWS CORP | CAROLNA GP | 540424207 | 12624 | 148000 | SH | CALL | DEFINED | 16,24,25 | 148000 | 0 | 0 |
| LOEWS CORP | CAROLNA GP | 540424207 | 16207 | 190000 | SH | PUT | DEFINED | 16,24,25 | 190000 | 0 | 0 |
| LONGS DRUG STORES CO | COM | 543162101 | 1244 | 26460 | SH | | DEFINED | 16,24,25 | 23907 | 0 | 2553 |
| LOOKSMART LTD | COM NEW | 543442503 | 38 | 11890 | SH | | DEFINED | 16,24,25 | 6410 | 0 | 5480 |
| LOUISIANA PAC CORP | COM | 546347105 | 69 | 5020 | SH | | DEFINED | 7,11 | 5020 | 0 | 0 |
| LOUISIANA PAC CORP | COM | 546347105 | 3497 | 255640 | SH | | DEFINED | 16,24,25 | 235255 | 0 | 20385 |
| LOUISIANA PAC CORP | COM | 546347105 | 62 | 4560 | SH | | DEFINED | 16,19,24,26,27 | 4560 | 0 | 0 |
| LOUISIANA PAC CORP | COM | 546347105 | 2041 | 149200 | SH | CALL | DEFINED | 15,16,24 | 149200 | 0 | 0 |
| LOUISIANA PAC CORP | COM | 546347105 | 114 | 8300 | SH | CALL | DEFINED | 16,24,25 | 8300 | 0 | 0 |
| LOUISIANA PAC CORP | COM | 546347105 | 2342 | 171200 | SH | PUT | DEFINED | 15,16,24 | 171200 | 0 | 0 |
| LOUISIANA PAC CORP | COM | 546347105 | 68 | 5000 | SH | PUT | DEFINED | 16,24,25 | 5000 | 0 | 0 |
| LOWES COS INC | NOTE | 548661CG0 | 13 | 14000 | PRN | | DEFINED | 16,24,25 | 14000 | 0 | 0 |
| LOWES COS INC | COM | 548661107 | 373 | 16500 | SH | | DEFINED | 12 | 0 | 0 | 16500 |
| LOWES COS INC | COM | 548661107 | 14 | 599 | SH | | DEFINED | 3,9 | 0 | 0 | 599 |
| LOWES COS INC | COM | 548661107 | 31111 | 1375380 | SH | | DEFINED | 7,11 | 1117530 | 0 | 257850 |
| LOWES COS INC | COM | 548661107 | 3253 | 143814 | SH | | DEFINED | 7,11,13 | 125604 | 0 | 18210 |
| LOWES COS INC | COM | 548661107 | 58 | 2550 | SH | | DEFINED | 7,11,33 | 0 | 0 | 2550 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| LOWES COS INC | COM | 548661107 | 60104 | 2657112 | SH | DEFINED | 16,24,25 | 2316753 | 0 | 340359 |
| LOWES COS INC | COM | 548661107 | 13696 | 605486 | SH | DEFINED | 32,40,41 | 605486 | 0 | 0 |
| LOWES COS INC | COM | 548661107 | 34 | 1516 | SH | DEFINED | 16,19,24,26,27 | 1516 | 0 | 0 |
| LOWES COS INC | COM | 548661107 | 11547 | 510457 | SH | DEFINED | 7,11 | 510457 | 0 | 0 |
| LOWES COS INC | COM | 548661107 | 14190 | 627300 | SH | CALL DEFINED | 15,16,24 | 627300 | 0 | 0 |
| LOWES COS INC | COM | 548661107 | 24269 | 1072900 | SH | CALL DEFINED | 16,24,25 | 1072800 | 0 | 100 |
| LOWES COS INC | COM | 548661107 | 7795 | 344600 | SH | PUT DEFINED | 15,16,24 | 344600 | 0 | 0 |
| LOWES COS INC | COM | 548661107 | 20443 | 903757 | SH | PUT DEFINED | 16,24,25 | 903757 | 0 | 0 |
| LUBRIZOL CORP | COM | 549271104 | 65 | 1200 | SH | DEFINED | 30 | 1200 | 0 | 0 |
| LUBRIZOL CORP | COM | 549271104 | 1123 | 20744 | SH | DEFINED | 7,11 | 20744 | 0 | 0 |
| LUBRIZOL CORP | COM | 549271104 | 520 | 9605 | SH | DEFINED | 7,11,13 | 9605 | 0 | 0 |
| LUBRIZOL CORP | COM | 549271104 | 8835 | 163129 | SH | DEFINED | 16,24,25 | 147425 | 0 | 15703 |
| LUBRIZOL CORP | COM | 549271104 | 22 | 400 | SH | DEFINED | 32,40,41 | 400 | 0 | 0 |
| LUBYS INC | COM | 549282101 | 158 | 15525 | SH | DEFINED | 16,24,25 | 12725 | 0 | 2800 |
| LUCENT TECHNOLOGIES | DBCV 2.75 | 549463AG2 | 63932 | 70063000 | PRN | DEFINED | 16,24,25 | 70063000 | 0 | 0 |
| LUCENT TECHNOLOGIES | DBCV 2.87 | 549463AH0 | 8268 | 10007000 | PRN | DEFINED | 16,24,25 | 10007000 | 0 | 0 |
| LUFKIN INDS INC | COM | 549764108 | 63 | 1100 | SH | DEFINED | 30 | 1100 | 0 | 0 |
| LUFKIN INDS INC | COM | 549764108 | 9 | 160 | SH | DEFINED | 7,11 | 0 | 0 | 160 |
| LUFKIN INDS INC | COM | 549764108 | 258 | 4501 | SH | DEFINED | 16,24,25 | 4357 | 0 | 144 |
| LULULEMON ATHLETICA | COM | 550021109 | 1 | 15 | SH | DEFINED | 16,24 | 15 | 0 | 0 |
| LULULEMON ATHLETICA | COM | 550021109 | 229 | 4832 | SH | DEFINED | 16,24,25 | 2300 | 0 | 2532 |
| LUMINEX CORP DEL | COM | 55027E102 | 203 | 12519 | SH | DEFINED | 16,24,25 | 12059 | 0 | 460 |
| LUMINENT MTG CAP INC | COM | 550278303 | 8 | 10600 | SH | DEFINED | 16,24,25 | 5000 | 0 | 5600 |
| LUMINENT MTG CAP INC | COM | 550278303 | 2 | 2000 | SH | CALL DEFINED | 16,24,25 | 2000 | 0 | 0 |
| LUNA INNOVATIONS | COM | 550351100 | 107 | 12432 | SH | DEFINED | 16,24,25 | 12432 | 0 | 0 |
| LUNDIN MINING CORP | COM | 550372106 | 1620 | 168964 | SH | DEFINED | 16,24,25 | 164819 | 0 | 4145 |
| LUNDIN MINING CORP | COM | 550372106 | 73 | 7620 | SH | DEFINED | 32,40,41 | 7620 | 0 | 0 |
| LUXOTTICA GROUP S P | SPONSORED | 55068R202 | 677 | 21505 | SH | DEFINED | 7,11 | 0 | 0 | 21505 |
| LUXOTTICA GROUP S P | SPONSORED | 55068R202 | 279 | 8852 | SH | DEFINED | 16,24,25 | 8332 | 0 | 520 |
| LUXOTTICA GROUP S P | SPONSORED | 55068R202 | 676 | 21455 | SH | DEFINED | 16,19,24,26,27 | 21455 | 0 | 0 |
| LYONDELL CHEMICAL CO | COM | 552078107 | 720 | 15000 | SH | DEFINED | 31,45 | 15000 | 0 | 0 |
| LYONDELL CHEMICAL CO | COM | 552078107 | 54 | 1130 | SH | DEFINED | 5-7,11,43,44 | 0 | 1130 | 0 |
| M & T BK CORP | COM | 55261P104 | 1286 | 15760 | SH | DEFINED | 7,11 | 15760 | 0 | 0 |
| M & T BK CORP | COM | 55261P104 | 80 | 979 | SH | DEFINED | 7,11,13 | 979 | 0 | 0 |
| M & T BK CORP | COM | 55261P104 | 3443 | 42214 | SH | DEFINED | 16,24,25 | 10128 | 0 | 32086 |
| M & T BK CORP | COM | 55261P104 | 162 | 1992 | SH | DEFINED | 32,40,41 | 1992 | 0 | 0 |
| MBIA INC | COM | 55262C100 | 2019 | 108392 | SH | DEFINED | 7,11 | 108392 | 0 | 0 |
| MBIA INC | COM | 55262C100 | 3 | 187 | SH | DEFINED | 7,11,13 | 187 | 0 | 0 |
| MBIA INC | COM | 55262C100 | 9698 | 520533 | SH | DEFINED | 16,24,25 | 399717 | 0 | 120815 |
| MBIA INC | COM | 55262C100 | 4183 | 224518 | SH | DEFINED | 32,40,41 | 224518 | 0 | 0 |
| MBIA INC | COM | 55262C100 | 20 | 1100 | SH | DEFINED | 5-7,11,43,44 | 0 | 1100 | 0 |
| MBIA INC | COM | 55262C100 | 1665 | 89356 | SH | CALL DEFINED | 7,11 | 89356 | 0 | 0 |
| MBIA INC | COM | 55262C100 | 9080 | 487400 | SH | CALL DEFINED | 15,16,24 | 487400 | 0 | 0 |
| MBIA INC | COM | 55262C100 | 16083 | 863300 | SH | CALL DEFINED | 16,24,25 | 862300 | 0 | 1000 |
| MBIA INC | COM | 55262C100 | 717 | 38500 | SH | PUT DEFINED | 7,11 | 38500 | 0 | 0 |
| MBIA INC | COM | 55262C100 | 8657 | 464700 | SH | PUT DEFINED | 15,16,24 | 464700 | 0 | 0 |
| MBIA INC | COM | 55262C100 | 4061 | 217956 | SH | PUT DEFINED | 16,24,25 | 217956 | 0 | 0 |
| MB FINANCIAL INC NEW | COM | 55264U108 | 123 | 4000 | SH | DEFINED | 7,11 | 0 | 0 | 4000 |
| MB FINANCIAL INC NEW | COM | 55264U108 | 111 | 3613 | SH | DEFINED | 16,24,25 | 3529 | 0 | 84 |
| MBF HEALTHCARE ACQUI | COM | 55265I013 | 76 | 10000 | SH | DEFINED | 16,24,25 | 10000 | 0 | 0 |
| MBIA CAP CLAYMORE MN | COM | 55266X100 | 138 | 11150 | SH | DEFINED | 16,24,25 | 11150 | 0 | 0 |
| M D C HLDGS INC | COM | 552676108 | 37130 | 1000000 | SH | DEFINED | 16,24 | 1000000 | 0 | 0 |
| M D C HLDGS INC | COM | 552676108 | 1797 | 48409 | SH | DEFINED | 16,24,25 | 47357 | 0 | 1052 |
| M D C HLDGS INC | COM | 552676108 | 10430 | 280900 | SH | CALL DEFINED | 15,16,24 | 280900 | 0 | 0 |
| M D C HLDGS INC | COM | 552676108 | 286 | 7700 | SH | CALL DEFINED | 16,24,25 | 7700 | 0 | 0 |
| M D C HLDGS INC | COM | 552676108 | 5291 | 142500 | SH | PUT DEFINED | 15,16,24 | 142500 | 0 | 0 |
| M D C HLDGS INC | COM | 552676108 | 286 | 7700 | SH | PUT DEFINED | 16,24,25 | 7700 | 0 | 0 |
| MDS INC | COM | 55269P302 | 0 | 10 | SH | DEFINED | 16,24,25 | 10 | 0 | 0 |
| MDS INC | COM | 55269P302 | 90 | 4622 | SH | DEFINED | 32,40,41 | 4622 | 0 | 0 |
| MDS INC | COM | 55269P302 | 153 | 7862 | SH | DEFINED | 4,6,7,11 | 7862 | 0 | 0 |
| MDU RES GROUP INC | COM | 552690109 | 242 | 8772 | SH | DEFINED | 7,11 | 8772 | 0 | 0 |
| MDU RES GROUP INC | COM | 552690109 | 260 | 9417 | SH | DEFINED | 7,11,13 | 9417 | 0 | 0 |
| MDU RES GROUP INC | COM | 552690109 | 9185 | 332674 | SH | DEFINED | 16,24,25 | 208413 | 0 | 124261 |
| MEMC ELECTR MATLS IN | COM | 552715104 | 115 | 1300 | SH | DEFINED | 30 | 1300 | 0 | 0 |
| MEMC ELECTR MATLS IN | COM | 552715104 | 9636 | 108898 | SH | DEFINED | 7,11 | 108898 | 0 | 0 |
| MEMC ELECTR MATLS IN | COM | 552715104 | 2 | 17 | SH | DEFINED | 7,11,13 | 17 | 0 | 0 |
| MEMC ELECTR MATLS IN | COM | 552715104 | 268 | 3030 | SH | DEFINED | 7,11,33 | 0 | 0 | 3030 |
| MEMC ELECTR MATLS IN | COM | 552715104 | 25829 | 291884 | SH | DEFINED | 16,24,25 | 265231 | 0 | 26653 |
| MEMC ELECTR MATLS IN | COM | 552715104 | 7291 | 82389 | SH | DEFINED | 32,40,41 | 82389 | 0 | 0 |
| MEMC ELECTR MATLS IN | COM | 552715104 | 239 | 2706 | SH | DEFINED | 16,19,24,26,27 | 2706 | 0 | 0 |
| MEMC ELECTR MATLS IN | COM | 552715104 | 4176 | 47191 | SH | CALL DEFINED | 7,11 | 47191 | 0 | 0 |
| MEMC ELECTR MATLS IN | COM | 552715104 | 40971 | 463000 | SH | CALL DEFINED | 15,16,24 | 463000 | 0 | 0 |
| MEMC ELECTR MATLS IN | COM | 552715104 | 4902 | 55400 | SH | CALL DEFINED | 16,24,25 | 55400 | 0 | 0 |
| MEMC ELECTR MATLS IN | COM | 552715104 | 43511 | 491700 | SH | PUT DEFINED | 15,16,24 | 491700 | 0 | 0 |
| MEMC ELECTR MATLS IN | COM | 552715104 | 9344 | 105591 | SH | PUT DEFINED | 16,24,25 | 105591 | 0 | 0 |
| MFS CHARTER INCOME T | SH BEN INT | 552727109 | 313 | 38115 | SH | DEFINED | 7,11,13 | 38115 | 0 | 0 |
| MFS CHARTER INCOME T | SH BEN INT | 552727109 | 20275 | 2469600 | SH | DEFINED | 16,24,25 | 2203929 | 0 | 265670 |
| MFS CHARTER INCOME T | SH BEN INT | 552727109 | 172 | 20900 | SH | DEFINED | 16,19,24,26,27 | 20900 | 0 | 0 |
| MFS INTER INCOME TR | SH BEN INT | 55273C107 | 21 | 3425 | SH | DEFINED | 7,11,13 | 3425 | 0 | 0 |
| MFS INTER INCOME TR | SH BEN INT | 55273C107 | 58 | 9500 | SH | DEFINED | 7,11,33 | 0 | 0 | 9500 |
| MFS INTER INCOME TR | SH BEN INT | 55273C107 | 15338 | 2522716 | SH | DEFINED | 16,24,25 | 2300800 | 0 | 221915 |
| MFS INTER INCOME TR | SH BEN INT | 55273C107 | 164 | 27000 | SH | DEFINED | 16,19,24,26,27 | 27000 | 0 | 0 |
| MFS MULTIMARKET INCO | SH BEN INT | 552737108 | 40 | 7000 | SH | DEFINED | 7,11,33 | 0 | 0 | 7000 |
| MFS MULTIMARKET INCO | SH BEN INT | 552737108 | 18900 | 3275585 | SH | DEFINED | 16,24,25 | 2920200 | 0 | 355384 |
| MGE ENERGY INC | COM | 55277P104 | 220 | 6211 | SH | DEFINED | 16,24,25 | 3962 | 0 | 2249 |
| MGIC INVT CORP WIS | COM | 552848103 | 155 | 6897 | SH | DEFINED | 7,11 | 6897 | 0 | 0 |
| MGIC INVT CORP WIS | COM | 552848103 | 4418 | 196990 | SH | DEFINED | 15,16,24 | 196990 | 0 | 0 |
| MGIC INVT CORP WIS | COM | 552848103 | 2895 | 129084 | SH | DEFINED | 16,24,25 | 119346 | 0 | 9737 |
| MGIC INVT CORP WIS | COM | 552848103 | 2 | 70 | SH | DEFINED | 32,40,41 | 70 | 0 | 0 |
| MGIC INVT CORP WIS | COM | 552848103 | 10329 | 460500 | SH | CALL DEFINED | 15,16,24 | 460500 | 0 | 0 |
| MGIC INVT CORP WIS | COM | 552848103 | 123 | 5500 | SH | CALL DEFINED | 16,24,25 | 5500 | 0 | 0 |
| MGIC INVT CORP WIS | COM | 552848103 | 13012 | 580100 | SH | PUT DEFINED | 15,16,24 | 580100 | 0 | 0 |
| MGI PHARMA INC | NOTE 1.68 | 552880AB2 | 9575 | 10000000 | PRN | DEFINED | 16,24,25 | 10000000 | 0 | 0 |
| MGI PHARMA INC | COM | 552880106 | 134 | 3300 | SH | DEFINED | 30 | 3300 | 0 | 0 |
| MGI PHARMA INC | COM | 552880106 | 10330 | 254885 | SH | DEFINED | 16,24,25 | 254508 | 0 | 377 |
| MGI PHARMA INC | COM | 552880106 | 61 | 1500 | SH | PUT DEFINED | 16,24,25 | 1500 | 0 | 0 |
| MFS GOVT MKTS INCOME | SH BEN INT | 552939100 | 37 | 5457 | SH | DEFINED | 7,11,13 | 5457 | 0 | 0 |
| MFS GOVT MKTS INCOME | SH BEN INT | 552939100 | 1764 | 261349 | SH | DEFINED | 16,24,25 | 224457 | 0 | 36892 |
| MGM MIRAGE | COM | 552953101 | 567 | 6750 | SH | DEFINED | 30 | 6750 | 0 | 0 |
| MGM MIRAGE | COM | 552953101 | 694 | 8263 | SH | DEFINED | 7,11 | 8263 | 0 | 0 |
| MGM MIRAGE | COM | 552953101 | 59 | 700 | SH | DEFINED | 7,11,13 | 700 | 0 | 0 |
| MGM MIRAGE | COM | 552953101 | 6520 | 77602 | SH | DEFINED | 16,24,25 | 52614 | 0 | 24988 |
| MGM MIRAGE | COM | 552953101 | 1469 | 17479 | SH | DEFINED | 32,40,41 | 17479 | 0 | 0 |
| MGM MIRAGE | COM | 552953101 | 19 | 225 | SH | DEFINED | 5-7,11,43,44 | 0 | 225 | 0 |
| MGM MIRAGE | COM | 552953101 | 39683 | 472300 | SH | CALL DEFINED | 15,16,24 | 472300 | 0 | 0 |
| MGM MIRAGE | COM | 552953101 | 176 | 2100 | SH | CALL DEFINED | 16,24,25 | 2100 | 0 | 0 |
| MGM MIRAGE | COM | 552953101 | 150707 | 1793700 | SH | PUT DEFINED | 15,16,24 | 1793700 | 0 | 0 |
| MGM MIRAGE | COM | 552953101 | 3840 | 45700 | SH | PUT DEFINED | 16,24,25 | 45700 | 0 | 0 |
| MGP INGREDIENTS INC | COM | 55302G103 | 868 | 92172 | SH | DEFINED | 16,24,25 | 69372 | 0 | 22800 |
| MKS INSTRUMENT INC | COM | 55306N104 | 473 | 24690 | SH | DEFINED | 16,24,25 | 23464 | 0 | 1226 |
| MCC CORPORATION | COM | 553166109 | 8 | 12000 | SH | DEFINED | 5-7,11,43,44 | 0 | 12000 | 0 |
| MPS GROUP INC | COM | 553409103 | 128 | 11700 | SH | DEFINED | 30 | 11700 | 0 | 0 |
| MPS GROUP INC | COM | 553409103 | 240 | 21964 | SH | DEFINED | 16,24,25 | 21844 | 0 | 120 |
| MRV COMMUNICATIONS I | COM | 553477100 | 57 | 24750 | SH | DEFINED | 16,24,25 | 19750 | 0 | 5000 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| MRU HLDGS INC | COM | 55348A102 | 2376 | 660064 | SH | DEFINED | 16,24,25 | 660064 | 0 | 0 |
| MSC INDL DIRECT INC | CL A | 553530106 | 23 | 563 | SH | DEFINED | 7,11 | 563 | 0 | 0 |
| MSC INDL DIRECT INC | CL A | 553530106 | 986 | 24353 | SH | DEFINED | 7,11,13 | 24353 | 0 | 0 |
| MSC INDL DIRECT INC | CL A | 553530106 | 1356 | 33506 | SH | DEFINED | 16,24,25 | 31987 | 0 | 1519 |
| MSC INDL DIRECT INC | CL A | 553530106 | 194 | 4800 | SH | DEFINED | 32,40,41 | 4800 | 0 | 0 |
| MSCI INC | CL A | 55354G100 | 1641 | 42730 | SH | DEFINED | 16,24,25 | 40159 | 0 | 2571 |
| MSCI INC | CL A | 55354G100 | 38 | 1000 | SH | CALL DEFINED | 16,24,25 | 0 | 0 | 1000 |
| MTR GAMING GROUP INC | COM | 553769100 | 965 | 142173 | SH | DEFINED | 16,24,25 | 141761 | 0 | 412 |
| MTS SYS CORP | COM | 553777103 | 315 | 7390 | SH | DEFINED | 16,24,25 | 6890 | 0 | 500 |
| MACATAWA BK CORP | COM | 554225102 | 1700 | 197891 | SH | DEFINED | 16,24,25 | 184181 | 0 | 13710 |
| MACERICH CO | COM | 554382101 | 308 | 4329 | SH | DEFINED | 7,11 | 4329 | 0 | 0 |
| MACERICH CO | COM | 554382101 | 3077 | 43300 | SH | DEFINED | 14,31 | 43300 | 0 | 0 |
| MACERICH CO | COM | 554382101 | 841 | 11833 | SH | DEFINED | 16,24,25 | 8798 | 0 | 3035 |
| MACERICH CO | COM | 554382101 | 6540 | 92034 | SH | DEFINED | 32,40,41 | 92034 | 0 | 0 |
| MACK CALI RLTY CORP | COM | 554489104 | 7 | 220 | SH | DEFINED | 7,11 | 0 | 0 | 220 |
| MACK CALI RLTY CORP | COM | 554489104 | 177 | 5200 | SH | DEFINED | 14,31 | 5200 | 0 | 0 |
| MACK CALI RLTY CORP | COM | 554489104 | 20 | 600 | SH | DEFINED | 7,11,13 | 600 | 0 | 0 |
| MACK CALI RLTY CORP | COM | 554489104 | 2095 | 61620 | SH | DEFINED | 16,24,25 | 55461 | 0 | 6158 |
| MACK CALI RLTY CORP | COM | 554489104 | 8925 | 262486 | SH | DEFINED | 32,40,41 | 262486 | 0 | 0 |
| MACROVISION CORP | COM | 559504101 | 4 | 200 | SH | DEFINED | 30 | 200 | 0 | 0 |
| MACROVISION CORP | COM | 559504101 | 151 | 8217 | SH | DEFINED | 7,11 | 8217 | 0 | 0 |
| MACROVISION CORP | COM | 559504101 | 3715 | 202681 | SH | DEFINED | 16,24,25 | 201981 | 0 | 700 |
| MACROVISION CORP | COM | 559504101 | 640 | 34900 | SH | CALL DEFINED | 16,24,25 | 34900 | 0 | 0 |
| MACQUARIE FT TR GB I | COM | 55607W100 | 1135 | 47111 | SH | DEFINED | 16,24,25 | 28309 | 0 | 18802 |
| MACQUARIE INFRASTR C | MEMBERSHIP | 55608B105 | 12 | 285 | SH | DEFINED | 7,11,33 | 0 | 0 | 285 |
| MACQUARIE INFRASTR C | MEMBERSHIP | 55608B105 | 12764 | 314926 | SH | DEFINED | 16,24,25 | 239151 | 0 | 75775 |
| MACQUARIE INFRASTR C | MEMBERSHIP | 55608B105 | 2716 | 67000 | SH | DEFINED | 32,40,41 | 67000 | 0 | 0 |
| MACQUARIE GLBL INFRA | COM | 55608D101 | 13438 | 447052 | SH | DEFINED | 16,24,25 | 406323 | 0 | 40728 |
| MACROSHARES OIL DOWN | SHS | 55610N105 | 847 | 84384 | SH | DEFINED | 16,24,25 | 81920 | 0 | 2464 |
| MACYS INC | COM | 55616P104 | 57 | 2200 | SH | DEFINED | 12 | 0 | 0 | 2200 |
| MACYS INC | COM | 55616P104 | 7909 | 305713 | SH | DEFINED | 7,11 | 119130 | 1700 | 184883 |
| MACYS INC | COM | 55616P104 | 81 | 3142 | SH | DEFINED | 7,11,13 | 1192 | 0 | 1950 |
| MACYS INC | COM | 55616P104 | 47 | 1800 | SH | DEFINED | 7,11,33 | 0 | 0 | 1800 |
| MACYS INC | COM | 55616P104 | 5140 | 198673 | SH | DEFINED | 15,16,24 | 198673 | 0 | 0 |
| MACYS INC | COM | 55616P104 | 9504 | 367361 | SH | DEFINED | 16,24,25 | 330024 | 0 | 37337 |
| MACYS INC | COM | 55616P104 | 895 | 34589 | SH | DEFINED | 32,40,41 | 34589 | 0 | 0 |
| MACYS INC | COM | 55616P104 | 10987 | 424700 | SH | CALL DEFINED | 15,16,24 | 424700 | 0 | 0 |
| MACYS INC | COM | 55616P104 | 898 | 34700 | SH | CALL DEFINED | 16,24,25 | 34700 | 0 | 0 |
| MACYS INC | COM | 55616P104 | 9955 | 384800 | SH | PUT DEFINED | 15,16,24 | 384800 | 0 | 0 |
| MACYS INC | COM | 55616P104 | 437 | 16900 | SH | PUT DEFINED | 16,24,25 | 16900 | 0 | 0 |
| MADDEN STEVEN LTD | COM | 556269108 | 1059 | 52959 | SH | DEFINED | 16,24 | 52959 | 0 | 0 |
| MADDEN STEVEN LTD | COM | 556269108 | 333 | 16639 | SH | DEFINED | 16,24,25 | 15889 | 0 | 750 |
| MADISON CLAYMORE CVR | COM | 556582104 | 597 | 52299 | SH | DEFINED | 16,24,25 | 44534 | 0 | 7764 |
| MADISON STRTG SECTOR | COM | 558268108 | 412 | 26510 | SH | DEFINED | 16,24,25 | 16282 | 0 | 10228 |
| MAG SILVER CORP | COM | 55903Q104 | 448 | 30160 | SH | DEFINED | 4,6,7,11 | 30160 | 0 | 0 |
| MAG SILVER CORP | COM | 55903Q104 | 111 | 7450 | SH | DEFINED | 5-7,11,43,44 | 0 | 7450 | 0 |
| MAGELLAN MIDSTREAM H | COM LP INT | 55907R108 | 12 | 450 | SH | DEFINED | 7,11,33 | 0 | 0 | 450 |
| MAGELLAN MIDSTREAM H | COM LP INT | 55907R108 | 27745 | 1035250 | SH | DEFINED | 16,24,25 | 903542 | 0 | 131708 |
| MAGELLAN HEALTH SVCS | COM NEW | 55907920T | 1590 | 34106 | SH | DEFINED | 16,24,25 | 33641 | 0 | 465 |
| MAGELLAN MIDSTREAM P | COM UNIT R | 55908O106 | 308 | 7100 | SH | DEFINED | 7,11,13 | 7100 | 0 | 0 |
| MAGELLAN MIDSTREAM P | COM UNIT R | 55908O106 | 41 | 950 | SH | DEFINED | 7,11,33 | 0 | 0 | 950 |
| MAGELLAN MIDSTREAM P | COM UNIT R | 55908O106 | 16727 | 385769 | SH | DEFINED | 16,24,25 | 313709 | 0 | 72059 |
| MAGELLAN MIDSTREAM P | COM UNIT R | 55908O106 | 7889 | 181950 | SH | DEFINED | 32,40,41 | 181950 | 0 | 0 |
| MAGMA DESIGN AUTOMAT | COM | 559181102 | 54 | 4400 | SH | DEFINED | 30 | 4400 | 0 | 0 |
| MAGMA DESIGN AUTOMAT | COM | 559181102 | 2 | 204 | SH | DEFINED | 16,24 | 204 | 0 | 0 |
| MAGMA DESIGN AUTOMAT | COM | 559181102 | 214 | 17492 | SH | DEFINED | 15,16,24 | 17492 | 0 | 0 |
| MAGMA DESIGN AUTOMAT | COM | 559181102 | 31 | 2500 | SH | DEFINED | 16,24,25 | 2500 | 0 | 0 |
| MAGMA DESIGN AUTOMAT | COM | 559181102 | 549 | 45000 | SH | CALL DEFINED | 15,16,24 | 45000 | 0 | 0 |
| MAGMA DESIGN AUTOMAT | COM | 559181102 | 476 | 39000 | SH | PUT DEFINED | 15,16,24 | 39000 | 0 | 0 |
| MAGNA ENTMT CORP | CL A | 559211107 | 11 | 11211 | SH | DEFINED | 16,24,25 | 11211 | 0 | 0 |
| MAGNA INTL INC | CL A | 559222401 | 3 | 42 | SH | DEFINED | 7,11,13 | 42 | 0 | 0 |
| MAGNA INTL INC | CL A | 559222401 | 1740 | 21634 | SH | DEFINED | 16,24,25 | 18894 | 0 | 2740 |
| MAGNA INTL INC | CL A | 559222401 | 258 | 3213 | SH | DEFINED | 32,40,41 | 3213 | 0 | 0 |
| MAGNA INTL INC | CL A | 559222401 | 731 | 9092 | SH | DEFINED | 4,6,7,11 | 9092 | 0 | 0 |
| MAGUIRE PPTYS INC | COM | 559775101 | 6250 | 212094 | SH | DEFINED | 16,24,25 | 211894 | 0 | 200 |
| MAGUIRE PPTYS INC | COM | 559775101 | 2185 | 74152 | SH | DEFINED | 32,40,41 | 74152 | 0 | 0 |
| MAGUIRE PPTYS INC | COM | 559775101 | 11700 | 397000 | SH | PUT DEFINED | 16,24,25 | 397000 | 0 | 0 |
| MAGYAR TELEKOM TELEC | SPONSORED | 559776109 | 371 | 13774 | SH | DEFINED | 16,24,25 | 11918 | 0 | 1856 |
| MAGYAR TELEKOM TELEC | SPONSORED | 559776109 | 0 | 11 | SH | DEFINED | 16,19,24,26,27 | 11 | 0 | 0 |
| MAKITA CORP | ADR NEW | 560877300 | 4 | 84 | SH | DEFINED | 16,24 | 84 | 0 | 0 |
| MAKITA CORP | ADR NEW | 560877300 | 329 | 7845 | SH | DEFINED | 16,24,25 | 5834 | 0 | 2011 |
| MALAYSIA FD INC | COM | 560905101 | 21 | 11125 | SH | DEFINED | 16,24,25 | 9125 | 0 | 2000 |
| MANAGED HIGH YIELD P | COM NEW | 561911108 | 4011 | 1092968 | SH | DEFINED | 16,24,25 | 1007929 | 0 | 85038 |
| MANHATTAN ASSOCS INC | COM | 562750109 | 672 | 25504 | SH | DEFINED | 16,24,25 | 25504 | 0 | 0 |
| MANITOWOC INC | COM | 563571108 | 712 | 14580 | SH | DEFINED | 3,9 | 0 | 0 | 14580 |
| MANITOWOC INC | COM | 563571108 | 2542 | 52055 | SH | DEFINED | 7,11 | 52055 | 0 | 0 |
| MANITOWOC INC | COM | 563571108 | 26249 | 537563 | SH | DEFINED | 16,24,25 | 417637 | 0 | 119926 |
| MANITOWOC INC | COM | 563571108 | 166 | 3405 | SH | DEFINED | 32,40,41 | 3405 | 0 | 0 |
| MANNATECH INC | COM | 563771104 | 68 | 10812 | SH | DEFINED | 16,24,25 | 10315 | 0 | 497 |
| MANNKIND CORP | COM | 56400P201 | 1 | 97 | SH | DEFINED | 16,24 | 97 | 0 | 0 |
| MANNKIND CORP | COM | 56400P201 | 164 | 20662 | SH | DEFINED | 16,24,25 | 19354 | 0 | 1308 |
| MANOR CARE INC NEW | NOTE 2.12 | 564055AM3 | 44888 | 30000000 | PRN | DEFINED | 16,24,25 | 30000000 | 0 | 0 |
| MANOR CARE INC NEW | NOTE 2.00 | 564055AP6 | 96 | 71000 | PRN | DEFINED | 16,24,25 | 71000 | 0 | 0 |
| MANOR CARE INC NEW | COM | 564055101 | 596 | 8900 | SH | DEFINED | 32,40,41 | 8900 | 0 | 0 |
| MANPOWER INC | COM | 56418H100 | 2538 | 44607 | SH | DEFINED | 7,11 | 44607 | 0 | 0 |
| MANPOWER INC | COM | 56418H100 | 1 | 12 | SH | DEFINED | 7,11,13 | 12 | 0 | 0 |
| MANPOWER INC | COM | 56418H100 | 2897 | 50917 | SH | DEFINED | 16,24,25 | 36002 | 0 | 14915 |
| MANPOWER INC | COM | 56418H100 | 380 | 6670 | SH | DEFINED | 32,40,41 | 6670 | 0 | 0 |
| MANPOWER INC | COM | 56418H100 | 768 | 13500 | SH | DEFINED | 5-7,11,43,44 | 0 | 13500 | 0 |
| MANTECH INTL CORP | CL A | 564563104 | 1579 | 36025 | SH | DEFINED | 16,24,25 | 33199 | 0 | 2826 |
| MANULIFE FINL CORP | COM | 56501R106 | 33 | 800 | SH | DEFINED | 12 | 0 | 0 | 800 |
| MANULIFE FINL CORP | COM | 56501R106 | 1179 | 28935 | SH | DEFINED | 7,11 | 0 | 0 | 28935 |
| MANULIFE FINL CORP | COM | 56501R106 | 161 | 3960 | SH | DEFINED | 7,11,13 | 1760 | 0 | 2200 |
| MANULIFE FINL CORP | COM | 56501R106 | 625 | 15349 | SH | DEFINED | 7,11,33 | 0 | 0 | 15349 |
| MANULIFE FINL CORP | COM | 56501R106 | 6565 | 161109 | SH | DEFINED | 16,24,25 | 129387 | 0 | 31721 |
| MANULIFE FINL CORP | COM | 56501R106 | 5248 | 128795 | SH | DEFINED | 32,40,41 | 128795 | 0 | 0 |
| MANULIFE FINL CORP | COM | 56501R106 | 3889 | 95441 | SH | DEFINED | 4,6,7,11 | 95441 | 0 | 0 |
| MARATHON ACQUISITION | COM | 565756103 | 958 | 123082 | SH | DEFINED | 16,24,25 | 103082 | 0 | 20000 |
| MARATHON ACQUISITION | *W EXP 08/ | 565756111 | 380 | 256900 | SH | DEFINED | 16,24,25 | 206900 | 0 | 50000 |
| MARATHON ACQUISITION | UNIT 08/24 | 565756202 | 90 | 10000 | SH | DEFINED | 16,24,25 | 10000 | 0 | 0 |
| MARATHON OIL CORP | COM | 568849106 | 371 | 6100 | SH | DEFINED | 30 | 6100 | 0 | 0 |
| MARATHON OIL CORP | COM | 568849106 | 19293 | 317000 | SH | DEFINED | 42 | 317000 | 0 | 0 |
| MARATHON OIL CORP | COM | 568849106 | 7900 | 129810 | SH | DEFINED | 7,11 | 128810 | 0 | 1000 |
| MARATHON OIL CORP | COM | 568849106 | 6087 | 100021 | SH | DEFINED | 7,11,13 | 96321 | 0 | 3700 |
| MARATHON OIL CORP | COM | 568849106 | 150 | 2466 | SH | DEFINED | 7,11,33 | 0 | 0 | 2466 |
| MARATHON OIL CORP | COM | 568849106 | 95066 | 1562049 | SH | DEFINED | 16,24,25 | 1314556 | 0 | 247493 |
| MARATHON OIL CORP | COM | 568849106 | 1373 | 22558 | SH | DEFINED | 32,40,41 | 22558 | 0 | 0 |
| MARATHON OIL CORP | COM | 568849106 | 714 | 11732 | SH | DEFINED | 4,6,7,11 | 11732 | 0 | 0 |
| MARATHON OIL CORP | COM | 568849106 | 122 | 2000 | SH | DEFINED | 5-7,11,43,44 | 0 | 2000 | 0 |
| MARATHON OIL CORP | COM | 568849106 | 1623 | 26663 | SH | DEFINED | 16,19,24,26,27 | 26663 | 0 | 0 |
| MARATHON OIL CORP | COM | 568849106 | 1278 | 21000 | SH | CALL DEFINED | 7,11 | 21000 | 0 | 0 |
| MARATHON OIL CORP | COM | 568849106 | 29608 | 486500 | SH | CALL DEFINED | 15,16,24 | 486500 | 0 | 0 |
| MARATHON OIL CORP | COM | 568849106 | 31592 | 519100 | SH | PUT DEFINED | 15,16,24 | 519100 | 0 | 0 |
| MARATHON OIL CORP | COM | 568849106 | 4260 | 70000 | SH | PUT DEFINED | 16,24,25 | 70000 | 0 | 0 |

| Name | Title | CUSIP | Value | Amount | Type | Put/Call | Disc | Sole | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|
| MARINEMAX INC | COM | 567908108 | 209 | 13500 | SH | | DEFINED | 16,24,25 | 13500 | 0 | 0 |
| MARINE PETE TR | UNIT BEN I | 568423107 | 255 | 7101 | SH | | DEFINED | 16,24,25 | 3101 | 0 | 4000 |
| MARINER ENERGY INC | COM | 56845T305 | 4241 | 185378 | SH | | DEFINED | 7,11 | 185378 | 0 | 0 |
| MARINER ENERGY INC | COM | 56845T305 | 727 | 31794 | SH | | DEFINED | 16,24,25 | 27702 | 0 | 4092 |
| MARKEL CORP | COM | 570535104 | 236 | 480 | SH | | DEFINED | 7,11 | 480 | 0 | 0 |
| MARKEL CORP | COM | 570535104 | 1893 | 3854 | SH | | DEFINED | 16,24,25 | 3777 | 0 | 77 |
| MARKET VECTORS ETF T GOLD MINER | COM | 57060U100 | 1297 | 28300 | SH | | DEFINED | 7,11 | 28300 | 0 | 0 |
| MARKET VECTORS ETF T GOLD MINER | COM | 57060U100 | 2707 | 59068 | SH | | DEFINED | 15,16,24 | 59068 | 0 | 0 |
| MARKET VECTORS ETF T GOLD MINER | COM | 57060U100 | 17177 | 374809 | SH | | DEFINED | 16,24,25 | 336501 | 0 | 38308 |
| MARKET VECTORS ETF T GOLD MINER | COM | 57060U100 | 23250 | 507300 | SH | CALL | DEFINED | 15,16,24 | 507300 | 0 | 0 |
| MARKET VECTORS ETF T GOLD MINER | COM | 57060ULL00 | 229 | 5000 | SH | CALL | DEFINED | 16,24,25 | 5000 | 0 | 0 |
| MARKET VECTORS ETF T GOLD MINER | COM | 57060U100 | 23172 | 505600 | SH | PUT | DEFINED | 15,16,24 | 505600 | 0 | 0 |
| MARKET VECTORS ETF T GOLD MINER | COM | 57060U100 | 229 | 5000 | SH | PUT | DEFINED | 16,24,25 | 5000 | 0 | 0 |
| MARKET VECTORS ETF T MV ENVIR S | COM | 57060U209 | 454 | 8743 | SH | | DEFINED | 16,24,25 | 8092 | 0 | 651 |
| MARKET VECTORS ETF T MV STEEL I | COM | 57060U308 | 14046 | 165170 | SH | | DEFINED | 16,24,25 | 153037 | 0 | 12133 |
| MARKET VECTORS ETF T GBL ALTER | | 57060U407 | 5571 | 92909 | SH | | DEFINED | 16,24,25 | 87244 | 0 | 5665 |
| MARKET VECTORS ETF T RUSSIA ETF | | 57060U506 | 3 | 50 | SH | | DEFINED | 16,24 | 50 | 0 | 0 |
| MARKET VECTORS ETF T RUSSIA ETF | | 57060U506 | 34874 | 684616 | SH | | DEFINED | 16,24,25 | 662813 | 0 | 21803 |
| MARKET VECTORS ETF T AGRIBUS ET | | 57060U605 | 16417 | 285762 | SH | | DEFINED | 16,24,25 | 259133 | 0 | 26629 |
| MARKET VECTORS ETF T NUC ENERGY | | 57060U704 | 3150 | 88480 | SH | | DEFINED | 16,24,25 | 82964 | 0 | 5516 |
| MARKWEST ENERGY PART UNIT LTD P | | 570759100 | 5794 | 171515 | SH | | DEFINED | 16,24,25 | 127400 | 0 | 44115 |
| MARKWEST ENERGY PART UNIT LTD P | | 570759100 | 3378 | 100000 | SH | PUT | DEFINED | 31,45 | 100000 | 0 | 0 |
| MARKWEST HYDROCARBON | COM | 570762104 | 4934 | 78751 | SH | | DEFINED | 31,45 | 78751 | 0 | 0 |
| MARKWEST HYDROCARBON | COM | 570762104 | 643 | 10264 | SH | | DEFINED | 16,24,25 | 9968 | 0 | 296 |
| MARSH & MCLENNAN COS | COM | 571748102 | 7080 | 267473 | SH | | DEFINED | 7,11 | 267473 | 0 | 0 |
| MARSH & MCLENNAN COS | COM | 571748102 | 800 | 30225 | SH | | DEFINED | 7,11,13 | 29550 | 0 | 675 |
| MARSH & MCLENNAN COS | COM | 571748102 | 6 | 215 | SH | | DEFINED | 7,11,33 | 0 | 0 | 215 |
| MARSH & MCLENNAN COS | COM | 571748102 | 7222 | 272819 | SH | | DEFINED | 15,16,24 | 272819 | 0 | 0 |
| MARSH & MCLENNAN COS | COM | 571748102 | 64833 | 2449305 | SH | | DEFINED | 16,24,25 | 2336406 | 0 | 112898 |
| MARSH & MCLENNAN COS | COM | 571748102 | 6559 | 247783 | SH | | DEFINED | 32,40,41 | 247783 | 0 | 0 |
| MARSH & MCLENNAN COS | COM | 571748102 | 824 | 31128 | SH | | DEFINED | 5-7,11,43,44 | 0 | 31128 | 0 |
| MARSH & MCLENNAN COS | COM | 571748102 | 3200 | 120900 | SH | CALL | DEFINED | 7,11 | 120900 | 0 | 0 |
| MARSH & MCLENNAN COS | COM | 571748102 | 3759 | 142000 | SH | CALL | DEFINED | 15,16,24 | 142000 | 0 | 0 |
| MARSH & MCLENNAN COS | COM | 571748102 | 866 | 32700 | SH | CALL | DEFINED | 16,24,25 | 32700 | 0 | 0 |
| MARSH & MCLENNAN COS | COM | 571748102 | 9757 | 368600 | SH | PUT | DEFINED | 15,16,24 | 368600 | 0 | 0 |
| MARSH & MCLENNAN COS | COM | 571748102 | 799 | 30200 | SH | PUT | DEFINED | 16,24,25 | 30200 | 0 | 0 |
| MARSHALL & ILSLEY CO | COM | 571837103 | 663 | 25032 | SH | | DEFINED | 7,11 | 25032 | 0 | 0 |
| MARSHALL & ILSLEY CO | COM | 571837103 | 9 | 325 | SH | | DEFINED | 7,11,13 | 325 | 0 | 0 |
| MARSHALL & ILSLEY CO | COM | 571837103 | 1981 | 74825 | SH | | DEFINED | 16,24,25 | 66480 | 0 | 8345 |
| MARSHALL & ILSLEY CO | COM | 571837103 | 201 | 7609 | SH | | DEFINED | 32,40,41 | 7609 | 0 | 0 |
| MARRIOTT INTL INC NE | CL A | 571903202 | 7309 | 213835 | SH | | DEFINED | 7,11 | 213835 | 0 | 0 |
| MARRIOTT INTL INC NE | CL A | 571903202 | 189 | 5522 | SH | | DEFINED | 7,11,13 | 5522 | 0 | 0 |
| MARRIOTT INTL INC NE | CL A | 571903202 | 595 | 17418 | SH | | DEFINED | 7,11,33 | 0 | 0 | 17418 |
| MARRIOTT INTL INC NE | CL A | 571903202 | 172390 | 5043583 | SH | | DEFINED | 16,24,25 | 4444257 | 0 | 599325 |
| MARRIOTT INTL INC NE | CL A | 571903202 | 337 | 9846 | SH | | DEFINED | 32,40,41 | 9846 | 0 | 0 |
| MARRIOTT INTL INC NE | CL A | 571903202 | 307 | 8975 | SH | | DEFINED | 5-7,11,43,44 | 0 | 8975 | 0 |
| MARRIOTT INTL INC NE | CL A | 571903202 | 1367 | 40000 | SH | CALL | DEFINED | 7,11 | 40000 | 0 | 0 |
| MARRIOTT INTL INC NE | CL A | 571903202 | 8955 | 262000 | SH | | DEFINED | 15,16,24 | 262000 | 0 | 0 |
| MARRIOTT INTL INC NE | CL A | 571903202 | 12930 | 378277 | SH | CALL | DEFINED | 16,24,25 | 378277 | 0 | 0 |
| MARRIOTT INTL INC NE | CL A | 571903202 | 5618 | 164377 | SH | PUT | DEFINED | 7,11 | 164377 | 0 | 0 |
| MARRIOTT INTL INC NE | CL A | 571903202 | 4225 | 123600 | SH | PUT | DEFINED | 15,16,24 | 123600 | 0 | 0 |
| MARRIOTT INTL INC NE | CL A | 571903202 | 12233 | 357900 | SH | PUT | DEFINED | 16,24,25 | 357900 | 0 | 0 |
| MARTEK BIOSCIENCES C | COM | 572901106 | 112 | 3783 | SH | | DEFINED | 7,11 | 3783 | 0 | 0 |
| MARTEK BIOSCIENCES C | COM | 572901106 | 9 | 300 | SH | | DEFINED | 7,11,13 | 300 | 0 | 0 |
| MARTEK BIOSCIENCES C | COM | 572901106 | 4391 | 148428 | SH | | DEFINED | 16,24,25 | 124950 | 0 | 23478 |
| MARTEK BIOSCIENCES C | COM | 572901106 | 1594 | 53900 | SH | | DEFINED | 15,16,24 | 53900 | 0 | 0 |
| MARTEK BIOSCIENCES C | COM | 572901106 | 423 | 14300 | SH | PUT | DEFINED | 15,16,24 | 14300 | 0 | 0 |
| MARTHA STEWART LIVIN | CL A | 573083102 | 1 | 150 | SH | | DEFINED | 7,11,13 | 150 | 0 | 0 |
| MARTHA STEWART LIVIN | CL A | 573083102 | 63 | 6828 | SH | | DEFINED | 15,16,24 | 6828 | 0 | 0 |
| MARTHA STEWART LIVIN | CL A | 573083102 | 165 | 17832 | SH | | DEFINED | 16,24,25 | 16541 | 0 | 1291 |
| MARTHA STEWART LIVIN | CL A | 573083102 | 36 | 3900 | SH | CALL | DEFINED | 15,16,24 | 3900 | 0 | 0 |
| MARTHA STEWART LIVIN | CL A | 573083102 | 315 | 34000 | SH | PUT | DEFINED | 15,16,24 | 34000 | 0 | 0 |
| MARTIN MARIETTA MATL | COM | 573284106 | 69 | 521 | SH | | DEFINED | 7,11 | 521 | 0 | 0 |
| MARTIN MARIETTA MATL | COM | 573284106 | 2141 | 16147 | SH | | DEFINED | 16,24,25 | 12837 | 0 | 3310 |
| MARTIN MARIETTA MATL | COM | 573284106 | 1062 | 8007 | SH | | DEFINED | 32,40,41 | 8007 | 0 | 0 |
| MARTIN MARIETTA MATL | COM | 573284106 | 58079 | 438000 | SH | CALL | DEFINED | 15,16,24 | 438000 | 0 | 0 |
| MARTIN MARIETTA MATL | COM | 573284106 | 42154 | 317900 | SH | PUT | DEFINED | 15,16,24 | 317900 | 0 | 0 |
| MARTIN MIDSTREAM PRT UNIT L P I | | 573331105 | 354 | 9967 | SH | | DEFINED | 16,24,25 | 9567 | 0 | 400 |
| MARVEL ENTERTAINMENT | COM | 57383T103 | 1053 | 39419 | SH | | DEFINED | 7,11 | 39419 | 0 | 0 |
| MARVEL ENTERTAINMENT | COM | 57383T103 | 3 | 100 | SH | | DEFINED | 7,11,13 | 0 | 0 | 100 |
| MARVEL ENTERTAINMENT | COM | 57383T103 | 843 | 31558 | SH | | DEFINED | 16,24,25 | 30446 | 0 | 1112 |
| MARVEL ENTERTAINMENT | COM | 57383T103 | 5257 | 196800 | SH | CALL | DEFINED | 15,16,24 | 196800 | 0 | 0 |
| MARVEL ENTERTAINMENT | COM | 57383T103 | 5443 | 203800 | SH | PUT | DEFINED | 15,16,24 | 203800 | 0 | 0 |
| MASCO CORP | NOTE | 5745998B1 | 11 | 25000 | PRN | | DEFINED | 16,24,25 | 25000 | 0 | 0 |
| MASCO CORP | COM | 574599106 | 5750 | 266101 | SH | | DEFINED | 7,11 | 235201 | 0 | 30900 |
| MASCO CORP | COM | 574599106 | 2090 | 96700 | SH | | DEFINED | 7,11,13 | 95567 | 0 | 1133 |
| MASCO CORP | COM | 574599106 | 5 | 215 | SH | | DEFINED | 7,11,33 | 0 | 0 | 215 |
| MASCO CORP | COM | 574599106 | 7957 | 368231 | SH | | DEFINED | 16,24,25 | 326078 | 0 | 42152 |
| MASCO CORP | COM | 574599106 | 255 | 11811 | SH | | DEFINED | 32,40,41 | 11811 | 0 | 0 |
| MASCO CORP | COM | 574599106 | 3540 | 163835 | SH | CALL | DEFINED | 16,24,25 | 163835 | 0 | 0 |
| MASCO CORP | COM | 574599106 | 2549 | 117935 | SH | PUT | DEFINED | 7,11 | 117935 | 0 | 0 |
| MASCO CORP | COM | 574599106 | 4925 | 227900 | SH | PUT | DEFINED | 16,24,25 | 227900 | 0 | 0 |
| MASIMO CORP | COM | 574795100 | 79 | 2000 | SH | | DEFINED | 30 | 2000 | 0 | 0 |
| MASIMO CORP | COM | 574795100 | 135 | 3425 | SH | | DEFINED | 16,24,25 | 3125 | 0 | 300 |
| MASSEY ENERGY CORP | COM | 576206106 | 35 | 966 | SH | | DEFINED | 7,11 | 966 | 0 | 0 |
| MASSEY ENERGY CORP | COM | 576206106 | 368 | 10300 | SH | | DEFINED | 7,11,13 | 10300 | 0 | 0 |
| MASSEY ENERGY CORP | COM | 576206106 | 4060 | 113576 | SH | | DEFINED | 16,24,25 | 101454 | 0 | 12121 |
| MASSEY ENERGY CORP | COM | 576206106 | 68 | 1907 | SH | | DEFINED | 32,40,41 | 1907 | 0 | 0 |
| MASSEY ENERGY CORP | COM | 576206106 | 8054 | 225300 | SH | CALL | DEFINED | 15,16,24 | 225300 | 0 | 0 |
| MASSEY ENERGY CORP | COM | 576206106 | 293 | 8200 | SH | CALL | DEFINED | 15,16,24 | 8200 | 0 | 0 |
| MASSEY ENERGY CORP | COM | 576206106 | 7207 | 201600 | SH | PUT | DEFINED | 15,16,24 | 201600 | 0 | 0 |
| MASSEY ENERGY CORP | COM | 576206106 | 358 | 10000 | SH | PUT | DEFINED | 16,24,25 | 10000 | 0 | 0 |
| MASTERCARD INC | CL A | 57636Q104 | 288 | 1340 | SH | | DEFINED | 30 | 1340 | 0 | 0 |
| MASTERCARD INC | CL A | 57636Q104 | 16 | 75 | SH | | DEFINED | 7,11,13 | 75 | 0 | 0 |
| MASTERCARD INC | CL A | 57636Q104 | 18 | 84 | SH | | DEFINED | 7,11,33 | 0 | 0 | 84 |
| MASTERCARD INC | CL A | 57636Q104 | 44713 | 207774 | SH | | DEFINED | 16,24,25 | 183558 | 0 | 24216 |
| MASTERCARD INC | CL A | 57636Q104 | 2016 | 9367 | SH | | DEFINED | 32,40,41 | 9367 | 0 | 0 |
| MATERIAL SCIENCES CO | COM | 576674105 | 368 | 49525 | SH | | DEFINED | 16,24,25 | 47075 | 0 | 2450 |
| MATRIA HEALTHCARE IN | COM NEW | 576817209 | 714 | 30033 | SH | | DEFINED | 16,24,25 | 29883 | 0 | 150 |
| MATRIXX INITIATIVES | COM | 5685L105 | 235 | 16911 | SH | | DEFINED | 16,24,25 | 16406 | 0 | 505 |
| MATSUSHITA ELEC INDL | ADR | 576879209 | 52 | 2550 | SH | | DEFINED | 7,11,13 | 2550 | 0 | 0 |
| MATSUSHITA ELEC INDL | ADR | 576879209 | 2250 | 110085 | SH | | DEFINED | 16,24,25 | 92639 | 0 | 17446 |
| MATTEL INC | COM | 577081102 | 358 | 18800 | SH | | DEFINED | 30 | 18800 | 0 | 0 |
| MATTEL INC | COM | 577081102 | 2061 | 108271 | SH | | DEFINED | 7,11 | 108271 | 0 | 0 |
| MATTEL INC | COM | 577081102 | 4 | 197 | SH | | DEFINED | 7,11,13 | 197 | 0 | 0 |
| MATTEL INC | COM | 577081102 | 159 | 8361 | SH | | DEFINED | 15,16,24 | 8361 | 0 | 0 |
| MATTEL INC | COM | 577081102 | 7764 | 407793 | SH | | DEFINED | 16,24,25 | 345467 | 0 | 62326 |
| MATTEL INC | COM | 577081102 | 7344 | 385736 | SH | | DEFINED | 32,40,41 | 385736 | 0 | 0 |
| MATTEL INC | COM | 577081102 | 1933 | 101518 | SH | | DEFINED | 7,11 | 101518 | 0 | 0 |
| MATTEL INC | COM | 577081102 | 762 | 40000 | SH | CALL | DEFINED | 15,16,24 | 40000 | 0 | 0 |
| MATTEL INC | COM | 577081102 | 1276 | 67200 | SH | PUT | DEFINED | 15,16,24 | 67200 | 0 | 0 |
| MATTEL INC | COM | 577081102 | 1933 | 101518 | SH | PUT | DEFINED | 16,24,25 | 101518 | 0 | 0 |
| MATTHEWS INTL CORP | CL A | 577128101 | 268 | 5720 | SH | | DEFINED | 7,11,13 | 5720 | 0 | 0 |
| MATTHEWS INTL CORP | CL A | 577128101 | 772 | 16480 | SH | | DEFINED | 16,24,25 | 16480 | 0 | 0 |

| MAXWELL TECHNOLOGIES | COM | 577767106 | 15 | 1855 | SH | DEFINED | 7,11 | 1855 | 0 | 0 |
|---|---|---|---|---|---|---|---|---|---|---|
| MAXWELL TECHNOLOGIES | COM | 577767106 | 107 | 12895 | SH | DEFINED | 16,24,25 | 5575 | 0 | 7320 |
| MAXIMUS INC | COM | 577933104 | 8 | 211 | SH | DEFINED | 7,11 | 0 | 0 | 211 |
| MAXIMUS INC | COM | 577933104 | 278 | 7200 | SH | DEFINED | 16,24,25 | 7200 | 0 | 0 |
| MCAFEE INC | COM | 579064106 | 2 | 61 | SH | DEFINED | 3,9 | 0 | 0 | 61 |
| MCAFEE INC | COM | 579064106 | 910 | 24273 | SH | DEFINED | 7,11 | 24273 | 0 | 0 |
| MCAFEE INC | COM | 579064106 | 13 | 350 | SH | DEFINED | 7,11,13 | 350 | 0 | 0 |
| MCAFEE INC | COM | 579064106 | 1183 | 31558 | SH | DEFINED | 15,16,24 | 31558 | 0 | 0 |
| MCAFEE INC | COM | 579064106 | 2868 | 76479 | SH | DEFINED | 16,24,25 | 68229 | 0 | 8250 |
| MCAFEE INC | COM | 579064106 | 379 | 10095 | SH | DEFINED | 32,40,41 | 10095 | 0 | 0 |
| MCAFEE INC | COM | 579064106 | 1508 | 40200 | SH | CALL DEFINED | 15,16,24 | 160200 | 0 | 0 |
| MCAFEE INC | COM | 579064106 | 6008 | 160200 | SH | PUT DEFINED | 15,16,24 | 160200 | 0 | 0 |
| MCCLATCHY CO | CL A | 579489105 | 39 | 3090 | SH | DEFINED | 7,11 | 2737 | 0 | 353 |
| MCCLATCHY CO | CL A | 579489105 | 91 | 7297 | SH | DEFINED | 7,11,13 | 7297 | 0 | 0 |
| MCCLATCHY CO | CL A | 579489105 | 4384 | 350137 | SH | DEFINED | 16,24,25 | 339560 | 0 | 10577 |
| MCCLATCHY CO | CL A | 579489105 | 7 | 558 | SH | DEFINED | 32,40,41 | 558 | 0 | 0 |
| MCCLATCHY CO | CL A | 579489105 | 6 | 511 | SH | DEFINED | 5-7,11,43,44 | 0 | 511 | 0 |
| MCCORMICK & CO INC | COM NON VT | 579780206 | 782 | 20617 | SH | DEFINED | 7,11 | 10917 | 0 | 9700 |
| MCCORMICK & CO INC | COM NON VT | 579780206 | 1038 | 27377 | SH | DEFINED | 7,11,13 | 26952 | 0 | 425 |
| MCCORMICK & CO INC | COM NON VT | 579780206 | 6855 | 180823 | SH | DEFINED | 16,24,25 | 132407 | 0 | 48416 |
| MCCORMICK & CO INC | COM NON VT | 579780206 | 184 | 4856 | SH | DEFINED | 32,40,41 | 4856 | 0 | 0 |
| MCDERMOTT INTL INC | COM | 580037109 | 374 | 6330 | SH | DEFINED | 30 | 6330 | 0 | 0 |
| MCDERMOTT INTL INC | COM | 580037109 | 772 | 13081 | SH | DEFINED | 7,11 | 13081 | 0 | 0 |
| MCDERMOTT INTL INC | COM | 580037109 | 61 | 1025 | SH | DEFINED | 7,11,33 | 0 | 0 | 1025 |
| MCDERMOTT INTL INC | COM | 580037109 | 18645 | 315852 | SH | DEFINED | 16,24,25 | 251175 | 0 | 64677 |
| MCDERMOTT INTL INC | COM | 580037109 | 427 | 7239 | SH | DEFINED | 32,40,41 | 7239 | 0 | 0 |
| MCDERMOTT INTL INC | COM | 580037109 | 23016 | 389900 | SH | CALL DEFINED | 15,16,24 | 389900 | 0 | 0 |
| MCDERMOTT INTL INC | COM | 580037109 | 11756 | 199150 | SH | PUT DEFINED | 15,16,24 | 199150 | 0 | 0 |
| MCDONALDS CORP | COM | 580135101 | 145987 | 2478131 | SH | DEFINED | 7,11 | 2257298 | 0 | 220833 |
| MCDONALDS CORP | COM | 580135101 | 1135 | 19260 | SH | DEFINED | 7,11,13 | 12674 | 0 | 6586 |
| MCDONALDS CORP | COM | 580135101 | 657 | 11151 | SH | DEFINED | 7,11,33 | 0 | 0 | 11151 |
| MCDONALDS CORP | COM | 580135101 | 2200 | 37352 | SH | DEFINED | 15,16,24 | 37352 | 0 | 0 |
| MCDONALDS CORP | COM | 580135101 | 207888 | 3528910 | SH | DEFINED | 16,24,25 | 2988108 | 0 | 540802 |
| MCDONALDS CORP | COM | 580135101 | 5228 | 88753 | SH | DEFINED | 32,40,41 | 88753 | 0 | 0 |
| MCDONALDS CORP | COM | 580135101 | 321 | 5455 | SH | DEFINED | 5-7,11,43,44 | 0 | 5455 | 0 |
| MCDONALDS CORP | COM | 580135101 | 4 | 71 | SH | DEFINED | 16,19,24,26,27 | 71 | 0 | 0 |
| MCDONALDS CORP | COM | 580135101 | 9484 | 160983 | SH | CALL DEFINED | 7,11 | 160983 | 0 | 0 |
| MCDONALDS CORP | COM | 580135101 | 19717 | 334700 | SH | CALL DEFINED | 15,16,24 | 334700 | 0 | 0 |
| MCDONALDS CORP | COM | 580135101 | 15205 | 258100 | SH | CALL DEFINED | 16,24,25 | 258100 | 0 | 0 |
| MCDONALDS CORP | COM | 580135101 | 35835 | 608300 | SH | PUT DEFINED | 15,16,24 | 608300 | 0 | 0 |
| MCDONALDS CORP | COM | 580135101 | 30055 | 510183 | SH | PUT DEFINED | 16,24,25 | 510183 | 0 | 0 |
| MCG CAPITAL CORP | COM | 58047P107 | 93 | 7986 | SH | DEFINED | 7,11 | 7986 | 0 | 0 |
| MCG CAPITAL CORP | COM | 58047P107 | 34 | 2975 | SH | DEFINED | 7,11,13 | 2975 | 0 | 0 |
| MCG CAPITAL CORP | COM | 58047P107 | 2270 | 195819 | SH | DEFINED | 16,24,25 | 183879 | 0 | 11939 |
| MCGRATH RENTCORP | COM | 580589109 | 64 | 2500 | SH | DEFINED | 30 | 2500 | 0 | 0 |
| MCGRATH RENTCORP | COM | 580589109 | 5 | 200 | SH | DEFINED | 7,11,13 | 200 | 0 | 0 |
| MCGRATH RENTCORP | COM | 580589109 | 456 | 17724 | SH | DEFINED | 16,24,25 | 17399 | 0 | 325 |
| MCGRAW HILL COS INC | COM | 580645109 | 1365 | 31150 | SH | DEFINED | 12 | 0 | 0 | 31150 |
| MCGRAW HILL COS INC | COM | 580645109 | 25539 | 582948 | SH | DEFINED | 7,11 | 96543 | 1420 | 484985 |
| MCGRAW HILL COS INC | COM | 580645109 | 1839 | 41969 | SH | DEFINED | 7,11,13 | 37294 | 0 | 4675 |
| MCGRAW HILL COS INC | COM | 580645109 | 129 | 2935 | SH | DEFINED | 7,11,33 | 0 | 0 | 2935 |
| MCGRAW HILL COS INC | COM | 580645109 | 15658 | 357399 | SH | DEFINED | 16,24,25 | 317525 | 0 | 39873 |
| MCGRAW HILL COS INC | COM | 580645109 | 1058 | 24152 | SH | DEFINED | 32,40,41 | 24152 | 0 | 0 |
| MCGRAW HILL COS INC | COM | 580645109 | 2046 | 46710 | SH | DEFINED | 5-7,11,43,44 | 0 | 46710 | 0 |
| MCGRAW HILL COS INC | COM | 580645109 | 1406 | 32100 | SH | DEFINED | 16,19,24,26,27 | 32100 | 0 | 0 |
| MCGRAW HILL COS INC | COM | 580645109 | 5827 | 133000 | SH | CALL DEFINED | 7,11 | 133000 | 0 | 0 |
| MCGRAW HILL COS INC | COM | 580645109 | 2918 | 66600 | SH | CALL DEFINED | 15,16,24 | 66600 | 0 | 0 |
| MCGRAW HILL COS INC | COM | 580645109 | 1468 | 33500 | SH | CALL DEFINED | 16,24,25 | 33500 | 0 | 0 |
| MCGRAW HILL COS INC | COM | 580645109 | 2037 | 46500 | SH | PUT DEFINED | 15,16,24 | 46500 | 0 | 0 |
| MCGRAW HILL COS INC | COM | 580645109 | 876 | 20000 | SH | PUT DEFINED | 16,24,25 | 20000 | 0 | 0 |
| MCKESSON CORP | COM | 58155Q103 | 14 | 219 | SH | DEFINED | 3,9 | 0 | 0 | 219 |
| MCKESSON CORP | COM | 58155Q103 | 4556 | 69554 | SH | DEFINED | 7,11 | 69554 | 0 | 0 |
| MCKESSON CORP | COM | 58155Q103 | 4511 | 68861 | SH | DEFINED | 7,11,13 | 68311 | 0 | 550 |
| MCKESSON CORP | COM | 58155Q103 | 140 | 2136 | SH | DEFINED | 7,11,33 | 0 | 0 | 2136 |
| MCKESSON CORP | COM | 58155Q103 | 12330 | 188210 | SH | DEFINED | 16,24,25 | 156158 | 0 | 32051 |
| MCKESSON CORP | COM | 58155Q103 | 647 | 9875 | SH | DEFINED | 32,40,41 | 9875 | 0 | 0 |
| MCKESSON CORP | COM | 58155Q103 | 9112 | 139100 | SH | CALL DEFINED | 15,16,24 | 139100 | 0 | 0 |
| MCKESSON CORP | COM | 58155Q103 | 2876 | 43900 | SH | CALL DEFINED | 16,24,25 | 43900 | 0 | 0 |
| MCKESSON CORP | COM | 58155Q103 | 7213 | 110100 | SH | PUT DEFINED | 15,16,24 | 110100 | 0 | 0 |
| MCKESSON CORP | COM | 58155Q103 | 3013 | 46000 | SH | PUT DEFINED | 16,24,25 | 46000 | 0 | 0 |
| MCMORAN EXPLORATION | COM | 58264L104 | 1292 | 98683 | SH | DEFINED | 16,24,25 | 88133 | 0 | 10550 |
| MEADE INSTRUMENTS CO | COM | 583062104 | 84 | 67500 | SH | DEFINED | 16,24,25 | 67500 | 0 | 0 |
| MEADWESTVACO CORP | COM | 583334107 | 760 | 24272 | SH | DEFINED | 7,11 | 13836 | 0 | 10436 |
| MEADWESTVACO CORP | COM | 583334107 | 1589 | 50759 | SH | DEFINED | 16,24,25 | 47106 | 0 | 3653 |
| MEADWESTVACO CORP | COM | 583334107 | 16780 | 536117 | SH | DEFINED | 32,40,41 | 536117 | 0 | 0 |
| MEADWESTVACO CORP | COM | 583334107 | 1155 | 36900 | SH | CALL DEFINED | 7,11 | 36900 | 0 | 0 |
| MEASUREMENT SPECIALT | COM | 583421102 | 2217 | 100310 | SH | DEFINED | 16,24,25 | 66201 | 0 | 34109 |
| MECHEL OAO | SPONSORED | 583840103 | 612 | 6300 | SH | DEFINED | 30 | 6300 | 0 | 0 |
| MECHEL OAO | SPONSORED | 583840103 | 282 | 2900 | SH | DEFINED | 15,16,24 | 2900 | 0 | 0 |
| MECHEL OAO | SPONSORED | 583840103 | 2311 | 23794 | SH | DEFINED | 16,24,25 | 20681 | 0 | 3113 |
| MECHEL OAO | SPONSORED | 583840103 | 32799 | 337645 | SH | DEFINED | 32,40,41 | 337645 | 0 | 0 |
| MECHEL OAO | SPONSORED | 583840103 | 1292 | 13301 | SH | DEFINED | 16,19,24,26,27 | 13301 | 0 | 0 |
| MECHEL OAO | SPONSORED | 583840103 | 2089 | 21500 | SH | CALL DEFINED | 15,16,24 | 21500 | 0 | 0 |
| MECHEL OAO | SPONSORED | 583840103 | 1603 | 16500 | SH | PUT DEFINED | 15,16,24 | 16500 | 0 | 0 |
| MEDAREX INC | COM | 583916101 | 499 | 47842 | SH | DEFINED | 7,11 | 47842 | 0 | 0 |
| MEDAREX INC | COM | 583916101 | 732 | 70225 | SH | DEFINED | 7,11,13 | 70225 | 0 | 0 |
| MEDAREX INC | COM | 583916101 | 781 | 74957 | SH | DEFINED | 15,16,24 | 74957 | 0 | 0 |
| MEDAREX INC | COM | 583916101 | 664 | 63738 | SH | DEFINED | 16,24,25 | 49257 | 0 | 14481 |
| MEDAREX INC | COM | 583916101 | 12540 | 1203500 | SH | CALL DEFINED | 15,16,24 | 1203500 | 0 | 0 |
| MEDAREX INC | COM | 583916101 | 2745 | 263400 | SH | CALL DEFINED | 16,24,25 | 263400 | 0 | 0 |
| MEDAREX INC | COM | 583916101 | 521 | 50000 | SH | PUT DEFINED | 7,11 | 50000 | 0 | 0 |
| MEDAREX INC | COM | 583916101 | 9793 | 939800 | SH | PUT DEFINED | 15,16,24 | 939800 | 0 | 0 |
| MEDALLION FINL CORP | COM | 583928106 | 844 | 84233 | SH | DEFINED | 7,11,13 | 82433 | 0 | 1800 |
| MEDALLION FINL CORP | COM | 583928106 | 31 | 3121 | SH | DEFINED | 16,24,25 | 2982 | 0 | 139 |
| MEDCO HEALTH SOLUTIO | COM | 58405U102 | 101 | 1000 | SH | DEFINED | 12 | 0 | 0 | 1000 |
| MEDCO HEALTH SOLUTIO | COM | 58405U102 | 345 | 3400 | SH | DEFINED | 3,9 | 0 | 0 | 3400 |
| MEDCO HEALTH SOLUTIO | COM | 58405U102 | 11453 | 112953 | SH | DEFINED | 7,11 | 27116 | 0 | 85837 |
| MEDCO HEALTH SOLUTIO | COM | 58405U102 | 3070 | 30274 | SH | DEFINED | 7,11,13 | 30274 | 0 | 0 |
| MEDCO HEALTH SOLUTIO | COM | 58405U102 | 47840 | 471791 | SH | DEFINED | 16,24,25 | 394803 | 0 | 76988 |
| MEDCO HEALTH SOLUTIO | COM | 58405U102 | 2623 | 25863 | SH | DEFINED | 32,40,41 | 25863 | 0 | 0 |
| MEDCO HEALTH SOLUTIO | COM | 58405U102 | 33543 | 330800 | SH | CALL DEFINED | 15,16,24 | 330800 | 0 | 0 |
| MEDCO HEALTH SOLUTIO | COM | 58405U102 | 18080 | 178300 | SH | CALL DEFINED | 16,24,25 | 178300 | 0 | 0 |
| MEDCO HEALTH SOLUTIO | COM | 58405U102 | 25664 | 253100 | SH | PUT DEFINED | 15,16,24 | 253100 | 0 | 0 |
| MEDCO HEALTH SOLUTIO | COM | 58405U102 | 12827 | 126500 | SH | PUT DEFINED | 16,24,25 | 126500 | 0 | 0 |
| MEDIA & ENTMT HOLDIN | COM | 58439W108 | 222 | 30000 | SH | DEFINED | 31,45 | 30000 | 0 | 0 |
| MEDIA & ENTMT HOLDIN | COM | 58439W108 | 1830 | 247600 | SH | DEFINED | 16,24,25 | 247600 | 0 | 0 |
| MEDIA & ENTMT HOLDIN | *W EXP 03/ | 58439W116 | 21 | 30000 | SH | DEFINED | 31,45 | 30000 | 0 | 0 |
| MEDIA & ENTMT HOLDIN | *W EXP 03/ | 58439W116 | 154 | 217300 | SH | DEFINED | 16,24,25 | 217300 | 0 | 0 |
| MEDIA GEN INC | CL A | 584404107 | 5 | 250 | SH | DEFINED | 7,11,13 | 250 | 0 | 0 |
| MEDIA GEN INC | CL A | 584404107 | 867 | 40796 | SH | DEFINED | 16,24,25 | 37257 | 0 | 3539 |
| MEDICAL NUTRITION US | COM | 58461X107 | 42 | 10000 | SH | DEFINED | 16,24,25 | 10000 | 0 | 0 |
| MEDICAL PPTYS TRUST | COM | 58463J304 | 153 | 15000 | SH | DEFINED | 14,31 | 15000 | 0 | 0 |
| MEDICAL PPTYS TRUST | COM | 58463J304 | 2178 | 213760 | SH | DEFINED | 16,24,25 | 159460 | 0 | 54300 |
| MEDICAL PPTYS TRUST | COM | 58463J304 | 229 | 22481 | SH | DEFINED | 32,40,41 | 22481 | 0 | 0 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| MEDICINES CO | COM | 584688105 | 249 | 13000 | SH | DEFINED | | 30 | 13000 | 0 |
| MEDICINES CO | COM | 584688105 | 123 | 6432 | SH | DEFINED | 16,24,25 | 6432 | 0 | 0 |
| MEDICIS PHARMACEUTIC CL A NEW | 1.50 | 584690AB7 | 18 | 18000 | PRN | DEFINED | 16,24,25 | 18000 | 0 | 0 |
| MEDICIS PHARMACEUTIC CL A NEW | | 584690309 | 10 | 400 | SH | DEFINED | | 12 | 0 | 400 |
| MEDICIS PHARMACEUTIC CL A NEW | | 584690309 | 130 | 5000 | SH | DEFINED | | 30 | 5000 | 0 |
| MEDICIS PHARMACEUTIC CL A NEW | | 584690309 | 9 | 344 | SH | DEFINED | 15,16,24 | 344 | 0 | 0 |
| MEDICIS PHARMACEUTIC CL A NEW | | 584690309 | 1263 | 48647 | SH | DEFINED | 16,24,25 | 47441 | 0 | 1206 |
| MEDICIS PHARMACEUTIC CL A NEW | | 584690309 | 20412 | 786000 | SH | CALL DEFINED | 15,16,24 | 786000 | 0 | 0 |
| MEDICIS PHARMACEUTIC CL A NEW | | 584690309 | 756 | 29100 | SH | DEFINED | 16,24,25 | 29100 | 0 | 0 |
| MEDICIS PHARMACEUTIC CL A NEW | | 584690309 | 17374 | 669000 | SH | PUT DEFINED | 15,16,24 | 669000 | 0 | 0 |
| MEDICIS PHARMACEUTIC CL A NEW | | 584690309 | 1740 | 67000 | SH | PUT DEFINED | 16,24,25 | 67000 | 0 | 0 |
| MEDIS TECHNOLOGIES L | COM | 58500P107 | 46 | 3000 | SH | DEFINED | 7,11,33 | 0 | 0 | 3000 |
| MEDIS TECHNOLOGIES L | COM | 58500P107 | 1587 | 102862 | SH | DEFINED | 15,16,24 | 102862 | 0 | 0 |
| MEDIS TECHNOLOGIES L | COM | 58500P107 | 17021 | 1103108 | SH | DEFINED | 16,24,25 | 874974 | 0 | 228134 |
| MEDIS TECHNOLOGIES L | COM | 58500P107 | 5660 | 366800 | SH | CALL DEFINED | 15,16,24 | 366800 | 0 | 0 |
| MEDIS TECHNOLOGIES L | COM | 58500P107 | 8281 | 536700 | SH | PUT DEFINED | 15,16,24 | 536700 | 0 | 0 |
| MEDTRONIC INC | COM | 585055AD8 | 50 | 50000 | PRN | DEFINED | 16,24,25 | 50000 | 0 | 0 |
| MEDTRONIC INC | NOTE 1.50 | 585055AL0 | 6405 | 6000000 | PRN | DEFINED | 7,11 | 6000000 | 0 | 0 |
| MEDTRONIC INC | NOTE 1.50 | 585055AL0 | 10251 | 9603000 | PRN | DEFINED | 16,24,25 | 9603000 | 0 | 0 |
| MEDTRONIC INC | COM | 585055106 | 284 | 5650 | SH | DEFINED | 12 | 0 | 0 | 5650 |
| MEDTRONIC INC | COM | 585055106 | 19083 | 379611 | SH | DEFINED | 7,11 | 308085 | 0 | 71526 |
| MEDTRONIC INC | COM | 585055106 | 4409 | 87710 | SH | DEFINED | 7,11,13 | 86810 | 0 | 900 |
| MEDTRONIC INC | COM | 585055106 | 231 | 4600 | SH | DEFINED | 7,11,13 | 0 | 0 | 4600 |
| MEDTRONIC INC | COM | 585055106 | 111219 | 2212433 | SH | DEFINED | 16,24,25 | 1789040 | 0 | 423392 |
| MEDTRONIC INC | COM | 585055106 | 10224 | 203387 | SH | DEFINED | 32,40,41 | 203387 | 0 | 0 |
| MEDTRONIC INC | COM | 585055106 | 96 | 1900 | SH | DEFINED | 5-7,11,43,44 | 0 | 1900 | 0 |
| MEDTRONIC INC | COM | 585055106 | 60 | 1195 | SH | DEFINED | 16,19,24,26,27 | 1195 | 0 | 0 |
| MEDTRONIC INC | COM | 585055106 | 15815 | 314600 | SH | CALL DEFINED | 15,16,24 | 314600 | 0 | 0 |
| MEDTRONIC INC | COM | 585055106 | 28123 | 559440 | SH | DEFINED | 16,24,25 | 559440 | 0 | 0 |
| MEDTRONIC INC | COM | 585055106 | 3727 | 74140 | SH | PUT DEFINED | 7,11 | 74140 | 0 | 0 |
| MEDTRONIC INC | COM | 585055106 | 10743 | 213700 | SH | PUT DEFINED | 15,16,24 | 213700 | 0 | 0 |
| MEDTRONIC INC | COM | 585055106 | 19982 | 397500 | SH | PUT DEFINED | 16,24,25 | 397500 | 0 | 0 |
| MELCO PBL ENTMNT LTD ADR | | 585464100 | 2468 | 213483 | SH | DEFINED | 15,16,24 | 213483 | 0 | 0 |
| MELCO PBL ENTMNT LTD ADR | | 585464100 | 2150 | 186009 | SH | DEFINED | 16,24,25 | 169184 | 0 | 16825 |
| MELCO PBL ENTMNT LTD ADR | | 585464100 | 186 | 16125 | SH | DEFINED | 32,40,41 | 16125 | 0 | 0 |
| MELCO PBL ENTMNT LTD ADR | | 585464100 | 827 | 71500 | SH | CALL DEFINED | 15,16,24 | 71500 | 0 | 0 |
| MELCO PBL ENTMNT LTD ADR | | 585464100 | 3512 | 303800 | SH | PUT DEFINED | 15,16,24 | 303800 | 0 | 0 |
| MEMSIC INC | COM | 586264103 | 782 | 77184 | SH | DEFINED | 16,24,25 | 77184 | 0 | 0 |
| MENS WEARHOUSE INC | COM | 587188104 | 57 | 2100 | SH | DEFINED | 30 | 2100 | 0 | 0 |
| MENS WEARHOUSE INC | COM | 587118100 | 581 | 21532 | SH | DEFINED | 7,11 | 21532 | 0 | 0 |
| MENS WEARHOUSE INC | COM | 587118100 | 374 | 13854 | SH | DEFINED | 16,24,25 | 13233 | 0 | 621 |
| MENTOR CORP MINN | COM | 587188103 | 1154 | 29520 | SH | DEFINED | 7,11 | 29261 | 0 | 259 |
| MENTOR CORP MINN | COM | 587188103 | 119 | 3050 | SH | DEFINED | 7,11,13 | 3050 | 0 | 0 |
| MENTOR CORP MINN | COM | 587188103 | 638 | 16320 | SH | DEFINED | 15,16,24 | 16320 | 0 | 0 |
| MENTOR CORP MINN | COM | 587188103 | 195 | 4978 | SH | DEFINED | 16,24,25 | 2828 | 0 | 2150 |
| MENTOR CORP MINN | COM | 587188103 | 2452 | 62700 | SH | CALL DEFINED | 15,16,24 | 62700 | 0 | 0 |
| MENTOR CORP MINN | COM | 587188103 | 3026 | 77400 | SH | PUT DEFINED | 15,16,24 | 77400 | 0 | 0 |
| MENTOR GRAPHICS CORP | COM | 587200106 | 149 | 13849 | SH | DEFINED | 7,11 | 13849 | 0 | 0 |
| MENTOR GRAPHICS CORP | COM | 587200106 | 27 | 2542 | SH | DEFINED | 24 | 2542 | 0 | 0 |
| MENTOR GRAPHICS CORP | COM | 587200106 | 72 | 6661 | SH | DEFINED | 15,16,24 | 6661 | 0 | 0 |
| MENTOR GRAPHICS CORP | COM | 587200106 | 24 | 2192 | SH | DEFINED | 16,24,25 | 2192 | 0 | 0 |
| MENTOR GRAPHICS CORP | COM | 587200106 | 71 | 6600 | SH | CALL DEFINED | 15,16,24 | 6600 | 0 | 0 |
| MENTOR GRAPHICS CORP | COM | 587200106 | 177 | 16400 | SH | PUT DEFINED | 15,16,24 | 16400 | 0 | 0 |
| MERCADOLIBRE INC | COM | 58733R102 | 725 | 9814 | SH | DEFINED | 16,24,25 | 9243 | 0 | 571 |
| MERCHANTS BANCSHARES | COM | 588448100 | 337 | 14340 | SH | DEFINED | 16,24,25 | 12540 | 0 | 1800 |
| MERCK & CO INC | COM | 589331107 | 5167 | 88910 | SH | DEFINED | 12 | 0 | 0 | 88910 |
| MERCK & CO INC | COM | 589331107 | 959 | 16500 | SH | DEFINED | 3,9 | 0 | 0 | 16500 |
| MERCK & CO INC | COM | 589331107 | 203881 | 3508535 | SH | DEFINED | 7,11 | 2212430 | 7075 | 1289030 |
| MERCK & CO INC | COM | 589331107 | 7624 | 131200 | SH | DEFINED | 16,24 | 131200 | 0 | 0 |
| MERCK & CO INC | COM | 589331107 | 1316 | 22640 | SH | DEFINED | 7,11,13 | 17563 | 0 | 5077 |
| MERCK & CO INC | COM | 589331107 | 256 | 4400 | SH | DEFINED | 7,11,33 | 0 | 0 | 4400 |
| MERCK & CO INC | COM | 589331107 | 8497 | 146047 | SH | DEFINED | 15,16,24 | 146047 | 0 | 0 |
| MERCK & CO INC | COM | 589331107 | 246160 | 4236110 | SH | DEFINED | 16,24,25 | 3746623 | 0 | 489486 |
| MERCK & CO INC | COM | 589331107 | 78961 | 1358815 | SH | DEFINED | 32,40,41 | 1358815 | 0 | 0 |
| MERCK & CO INC | COM | 589331107 | 4925 | 84750 | SH | DEFINED | 5-7,11,43,44 | 0 | 84750 | 0 |
| MERCK & CO INC | COM | 589331107 | 45424 | 781688 | SH | DEFINED | 16,19,24,26,27 | 781688 | 0 | 0 |
| MERCK & CO INC | COM | 589331107 | 1898 | 32670 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 32670 | 0 | 0 |
| MERCK & CO INC | COM | 589331107 | 54686 | 941080 | SH | CALL DEFINED | 7,11 | 941080 | 0 | 0 |
| MERCK & CO INC | COM | 589331107 | 34372 | 591500 | SH | CALL DEFINED | 15,16,24 | 591500 | 0 | 0 |
| MERCK & CO INC | COM | 589331107 | 55309 | 951800 | SH | DEFINED | 16,24,25 | 951800 | 0 | 0 |
| MERCK & CO INC | COM | 589331107 | 36743 | 632300 | SH | PUT DEFINED | 15,16,24 | 632300 | 0 | 0 |
| MERCK & CO INC | COM | 589331107 | 54080 | 930652 | SH | PUT DEFINED | 16,24,25 | 930552 | 0 | 100 |
| MERCURY COMPUTER SYS | COM | 589378108 | 216 | 13400 | SH | DEFINED | 16,24,25 | 13400 | 0 | 0 |
| MERCURY GENL CORP NE | COM | 589400100 | 73 | 1472 | SH | DEFINED | 7,11 | 1472 | 0 | 0 |
| MERCURY GENL CORP NE | COM | 589400100 | 255 | 5125 | SH | DEFINED | 7,11,13 | 4975 | 0 | 150 |
| MERCURY GENL CORP NE | COM | 589400100 | 662 | 13293 | SH | DEFINED | 16,24,25 | 11906 | 0 | 1387 |
| MEREDITH CORP | COM | 589433101 | 1157 | 21036 | SH | DEFINED | 12 | 0 | 0 | 21036 |
| MEREDITH CORP | COM | 589433101 | 645 | 11732 | SH | DEFINED | 7,11 | 11732 | 0 | 0 |
| MEREDITH CORP | COM | 589433101 | 115 | 2085 | SH | DEFINED | 7,11,13 | 1585 | 0 | 500 |
| MEREDITH CORP | COM | 589433101 | 6996 | 127245 | SH | DEFINED | 16,24,25 | 104269 | 0 | 22975 |
| MEREDITH CORP | COM | 589433101 | 57 | 1033 | SH | DEFINED | 32,40,41 | 1033 | 0 | 0 |
| MERIDIAN BIOSCIENCE | COM | 58958410 | 1546 | 51405 | SH | DEFINED | 16,24,25 | 42871 | 0 | 8534 |
| MERIT MED SYS INC | COM | 588889104 | 249 | 17900 | SH | DEFINED | 16,24,25 | 17900 | 0 | 0 |
| MERIDIAN GOLD INC | COM | 589975101 | 3991 | 112409 | SH | DEFINED | 15,16,24 | 112409 | 0 | 0 |
| MERIDIAN GOLD INC | COM | 589975101 | 227 | 6396 | SH | DEFINED | 16,24,25 | 6246 | 0 | 150 |
| MERIDIAN GOLD INC | COM | 589975101 | 90 | 2526 | SH | DEFINED | 32,40,41 | 2526 | 0 | 0 |
| MERIDIAN GOLD INC | COM | 589975101 | 863 | 24300 | SH | CALL DEFINED | 15,16,24 | 24300 | 0 | 0 |
| MERIDIAN GOLD INC | COM | 589975101 | 355 | 10000 | SH | CALL DEFINED | 16,24,25 | 10000 | 0 | 0 |
| MERIDIAN GOLD INC | COM | 589975101 | 3255 | 91700 | SH | PUT DEFINED | 15,16,24 | 91700 | 0 | 0 |
| MERIDIAN GOLD INC | COM | 589975101 | 355 | 10000 | SH | PUT DEFINED | 16,24,25 | 10000 | 0 | 0 |
| MERITAGE HOMES CORP | COM | 59001A102 | 347 | 23811 | SH | DEFINED | 16,24,25 | 20611 | 0 | 3200 |
| MERITAGE HOMES CORP | COM | 59001A102 | 1472 | 101000 | SH | CALL DEFINED | 15,16,24 | 101000 | 0 | 0 |
| MERITAGE HOMES CORP | COM | 59001A102 | 2471 | 169600 | SH | PUT DEFINED | 15,16,24 | 169600 | 0 | 0 |
| MERRILL LYNCH & CO I | NOTE | 590188W46 | 4353 | 4024000 | PRN | DEFINED | 16,24,25 | 3839000 | 0 | 185000 |
| MERRILL LYNCH & CO I | COM | 590188108 | 157 | 2925 | SH | DEFINED | 12 | 0 | 0 | 2925 |
| MERRILL LYNCH & CO I | COM | 590188108 | 327 | 6100 | SH | DEFINED | 30 | 6100 | 0 | 0 |
| MERRILL LYNCH & CO I | COM | 590188108 | 27 | 503 | SH | DEFINED | 3,9 | 0 | 0 | 503 |
| MERRILL LYNCH & CO I | COM | 590188108 | 37574 | 699956 | SH | DEFINED | 7,11 | 664466 | 0 | 35490 |
| MERRILL LYNCH & CO I | COM | 590188108 | 3315 | 61749 | SH | DEFINED | 7,11,13 | 61114 | 0 | 635 |
| MERRILL LYNCH & CO I | COM | 590188108 | 154 | 2875 | SH | DEFINED | 7,11,33 | 0 | 0 | 2875 |
| MERRILL LYNCH & CO I | COM | 590188108 | 9790 | 182382 | SH | DEFINED | 15,16,24 | 182382 | 0 | 0 |
| MERRILL LYNCH & CO I | COM | 590188108 | 140999 | 2626651 | SH | DEFINED | 16,24,25 | 2264613 | 0 | 362037 |
| MERRILL LYNCH & CO I | COM | 590188108 | 1451 | 27025 | SH | DEFINED | 32,40,41 | 27025 | 0 | 0 |
| MERRILL LYNCH & CO I | COM | 590188108 | 195 | 3625 | SH | DEFINED | 5-7,11,43,44 | 0 | 3625 | 0 |
| MERRILL LYNCH & CO I | COM | 590188108 | 50 | 923 | SH | DEFINED | 16,19,24,26,27 | 923 | 0 | 0 |
| MERRILL LYNCH & CO I | COM | 590188108 | 66327 | 1235600 | SH | CALL DEFINED | 15,16,24 | 1235600 | 0 | 0 |
| MERRILL LYNCH & CO I | COM | 590188108 | 54399 | 1013400 | SH | CALL DEFINED | 16,24,25 | 1013000 | 0 | 400 |
| MERRILL LYNCH & CO I | COM | 590188108 | 6710 | 125000 | SH | PUT DEFINED | 7,11 | 125000 | 0 | 0 |
| MERRILL LYNCH & CO I | COM | 590188108 | 107516 | 2002900 | SH | PUT DEFINED | 15,16,24 | 2002900 | 0 | 0 |
| MERRILL LYNCH & CO I | COM | 590188108 | 199716 | 3720500 | SH | PUT DEFINED | 16,24,25 | 3720500 | 0 | 0 |
| MESA AIR GROUP INC | NOTE 2.11 | 590479AD3 | 2985 | 6000000 | PRN | DEFINED | 31,45 | 6000000 | 0 | 0 |
| MESA AIR GROUP INC | NOTE 2.11 | 590479AD3 | 8919 | 17928000 | PRN | DEFINED | 16,24,25 | 17928000 | 0 | 0 |
| MESA AIR GROUP INC | COM | 590479101 | 66 | 21287 | SH | DEFINED | 16,24,25 | 20910 | 0 | 377 |
| MESA LABS INC | COM | 59064R109 | 3 | 100 | SH | DEFINED | 16,24 | 100 | 0 | 0 |

```
MESA LABS INC           COM         59064R109    582     23264 SH      DEFINED              16,24,25     4194       0    19070
MESA RTY TR             UNIT BEN I  590660106    233      3355 SH      DEFINED              16,24,25     2955       0      400
MESABI TR               CTF BEN IN  590672101   2911    140514 SH      DEFINED              16,24,25    91133       0    49381
METABOLIX INC           COM         591018809   1092     45901 SH      DEFINED              16,24,25    36369       0     9532
METAL MGMT INC          COM NEW     591097209    262      5750 SH      DEFINED                 31,45     5750       0        0
METAL MGMT INC          COM NEW     591097209    158      3469 SH      DEFINED              16,24,25     3103       0      366
METAVANTE TECHNOLOGI    COM         591407101     73      3120 SH      DEFINED                  7,11     3120       0        0
METAVANTE TECHNOLOGI    COM         591407101   1053     45165 SH      DEFINED              16,24,25    43093       0     2072
METAVANTE TECHNOLOGI    COM         591407101    243     10400 SH  CALL DEFINED             15,16,24    10400       0        0
METAVANTE TECHNOLOGI    COM         591407101     84      3600 SH  PUT  DEFINED             15,16,24     3600       0        0
METHANEX CORP           COM         59151K108     66      2400 SH      DEFINED                    30     2400       0        0
METHANEX CORP           COM         59151K108   1221     44243 SH      DEFINED              16,24,25    41755       0     2488
METHANEX CORP           COM         59151K108     92      3335 SH      DEFINED              32,40,41     3335       0        0
METHANEX CORP           COM         59151K108     41      1490 SH      DEFINED            4,6,7,11      1490       0        0
METHODE ELECTRS INC     COM         591520200    236     14340 SH      DEFINED               7,11,13    14340       0        0
METHODE ELECTRS INC     COM         591520200    206     12550 SH      DEFINED              16,24,25    12550       0        0
METLIFE INC             COM         59156R108    339      5500 SH      DEFINED                    12        0       0     5500
METLIFE INC             COM         59156R108   4390     71238 SH      DEFINED                   3,9        0       0    71238
METLIFE INC             COM         59156R108  12290    199445 SH      DEFINED                  7,11    98583     400   100462
METLIFE INC             COM         59156R108    163      2638 SH      DEFINED               7,11,13     1248       0     1390
METLIFE INC             COM         59156R108    464      7522 SH      DEFINED               7,11,33        0       0     7522
METLIFE INC             COM         59156R108 181657   2948018 SH      DEFINED              16,24,25  2652673       0   295344
METLIFE INC             COM         59156R108   1402     22745 SH      DEFINED              32,40,41    22745       0        0
METLIFE INC             COM         59156R108   1541     25000 SH      DEFINED        16,19,24,26,27    25000       0        0
METLIFE INC             COM         59156R108  25209    409100 SH  CALL DEFINED             15,16,24   409100       0        0
METLIFE INC             COM         59156R108   2249     36500 SH  CALL DEFINED             16,24,25    36500       0        0
METLIFE INC             COM         59156R108  36042    584900 SH  PUT  DEFINED             16,24,25   584900       0        0
METLIFE INC             COM         59156R108  95234   1545500 SH  PUT  DEFINED             16,24,25  1545500       0        0
METRO ONE TELECOMMUN    COM NEW     59163F204     86     50962 SH      DEFINED              16,24,25    29862       0    21100
METROPCS COMMUNICATI    COM         591708102     13       667 SH      DEFINED                  7,11      667       0        0
METROPCS COMMUNICATI    COM         591708102   2027    104206 SH      DEFINED              16,24,25    87206       0    17000
METROPCS COMMUNICATI    COM         591708102   8174    420260 SH      DEFINED              32,40,41   420260       0        0
METTLER TOLEDO INTER    COM         592688105   1471     12934 SH      DEFINED               7,11,33    12924       0        0
METTLER TOLEDO INTER    COM         592688105     11       100 SH      DEFINED                  7,11        0       0      100
METTLER TOLEDO INTER    COM         592688105   4087     35913 SH      DEFINED              16,24,25    32813       0     3100
METTLER TOLEDO INTER    COM         592688105    523      4600 SH      DEFINED              32,40,41     4600       0        0
MEXICO FD INC           COM         592835102   1809     51526 SH      DEFINED              16,24,25    38220       0    13306
MFS INVT GRADE MUN T    SH BEN INT  59318B108    116     12135 SH      DEFINED              16,24,25    10684       0     1450
MFS INTERMARKET INCO    SH BEN INT  59318R103    935    115377 SH      DEFINED              16,24,25   100438       0    14938
MFS INTERMARKET INCO    SH BEN INT  59318R103     57      7000 SH      DEFINED        16,19,24,26,27     7000       0        0
MFS INTERMEDIATE HIG    SH BEN INT  59318T109    380    122549 SH      DEFINED              16,24,25   117868       0     4680
MICREL INC              COM         594793101    739     87500 SH      DEFINED               7,11,13    84075       0     3425
MICREL INC              COM         594793101     40      4750 SH      DEFINED              16,24,25     4645       0      105
MICROS SYS INC          COM         594901100    216      3080 SH      DEFINED                    30     3080       0        0
MICROS SYS INC          COM         594901100    439      6253 SH      DEFINED                  7,11     6253       0        0
MICROS SYS INC          COM         594901100     56       800 SH      DEFINED               7,11,13      800       0        0
MICROS SYS INC          COM         594901100   2032     28957 SH      DEFINED              16,24,25    21253       0     7704
MICROSOFT CORP          COM         594918104   2850     80050 SH      DEFINED                    12        0       0    80050
MICROSOFT CORP          COM         594918104   1114     31300 SH      DEFINED                    30    31300       0        0
MICROSOFT CORP          COM         594918104  14813    416096 SH      DEFINED                   3,9        0       0   416096
MICROSOFT CORP          COM         594918104 212946   5981634 SH      DEFINED                  7,11  3577234    7600  2396800
MICROSOFT CORP          COM         594918104  18677    524621 SH      DEFINED               7,11,13   447877       0    76744
MICROSOFT CORP          COM         594918104   1439     40425 SH      DEFINED               7,11,33        0       0    40425
MICROSOFT CORP          COM         594918104 626925  17610261 SH      DEFINED              16,24,25 14788923       0  2821337
MICROSOFT CORP          COM         594918104   1440     40452 SH      DEFINED            5-7,11,43,44        0   40452        0
MICROSOFT CORP          COM         594918104  19379    544367 SH      DEFINED        16,19,24,26,27   544367       0        0
MICROSOFT CORP          COM         594918104    499     14027 SH      DEFINED  2,6,7,10-11,18,20,21,28    14027       0        0
MICROSOFT CORP          COM         594918104 119447   3355257 SH  CALL DEFINED                7,11  3355257       0        0
MICROSOFT CORP          COM         594918104 300471   8440200 SH  CALL DEFINED             15,16,24  8440200       0        0
MICROSOFT CORP          COM         594918104 149232   4191900 SH  CALL DEFINED        16,19,24,26,27  4191900       0        0
MICROSOFT CORP          COM         594918104  12396    348200 SH  CALL DEFINED        16,19,24,26,27   348200       0        0
MICROSOFT CORP          COM         594918104   4133    116100 SH  PUT  DEFINED                7,11   116100       0        0
MICROSOFT CORP          COM         594918104 149239   4192100 SH  PUT  DEFINED             15,16,24  4192100       0        0
MICROSOFT CORP          COM         594918104 209188   5876057 SH  PUT  DEFINED             16,24,25  5876057       0        0
MICROSTRATEGY INC       CL A NEW    594972408   3959     41633 SH      DEFINED                  7,11    41633       0        0
MICROSTRATEGY INC       CL A NEW    594972408   2169     22806 SH      DEFINED              16,24,25    22226       0      580
MICROSTRATEGY INC       CL A NEW    594972408  16928    178000 SH  CALL DEFINED             15,16,24   178000       0        0
MICROSTRATEGY INC       CL A NEW    594972408  17204    180900 SH  PUT  DEFINED             15,16,24   180900       0        0
MICROCHIP TECHNOLOGY    COM         595017104    854     27185 SH      DEFINED                  7,11    27000       0      185
MICROCHIP TECHNOLOGY    COM         595017104    100      3189 SH      DEFINED                 16,24     3189       0        0
MICROCHIP TECHNOLOGY    COM         595017104     64      2050 SH      DEFINED               7,11,33        0       0     2050
MICROCHIP TECHNOLOGY    COM         595017104    635     20211 SH      DEFINED             15,16,24     20211       0        0
MICROCHIP TECHNOLOGY    COM         595017104   4908    156219 SH      DEFINED              16,24,25   128721       0    27497
MICROCHIP TECHNOLOGY    COM         595017104   6938    220811 SH      DEFINED              32,40,41   220803       0        0
MICROCHIP TECHNOLOGY    COM         595017104    845     26900 SH  CALL DEFINED             15,16,24    26900       0        0
MICROCHIP TECHNOLOGY    COM         595017104    544     17300 SH  CALL DEFINED             16,24,25    17300       0        0
MICROCHIP TECHNOLOGY    COM         595017104   1090     34700 SH  PUT  DEFINED             15,16,24    34700       0        0
MICROCHIP TECHNOLOGY    COM         595017104    544     17300 SH  PUT  DEFINED             16,24,25    17300       0        0
MICRON TECHNOLOGY IN    NOTE  1.87  595112AH6   3251   4083000 PRN      DEFINED              16,24,25  4083000       0        0
MICRON TECHNOLOGY IN    COM         595112103      6       880 SH      DEFINED                   3,9        0       0      880
MICRON TECHNOLOGY IN    COM         595112103    446     61480 SH      DEFINED                  7,11    61480       0        0
MICRON TECHNOLOGY IN    COM         595112103     44      6065 SH      DEFINED               7,11,33        0       0     6065
MICRON TECHNOLOGY IN    COM         595112103   1178    162527 SH      DEFINED             15,16,24    162527       0        0
MICRON TECHNOLOGY IN    COM         595112103  48053   6627931 SH      DEFINED              16,24,25  6260804       0   367126
MICRON TECHNOLOGY IN    COM         595112103   6323    872179 SH      DEFINED              32,40,41   872179       0        0
MICRON TECHNOLOGY IN    COM         595112103     22      3000 SH      DEFINED        16,19,24,26,27     3000       0        0
MICRON TECHNOLOGY IN    COM         595112103    733    100389 SH      DEFINED  2,6,7,10-11,18,20,21,28   100389       0        0
MICRON TECHNOLOGY IN    COM         595112103   5667    781700 SH  CALL DEFINED             15,16,24   781700       0        0
MICRON TECHNOLOGY IN    COM         595112103  13407   1849200 SH  CALL DEFINED             15,16,24  1849200       0        0
MICRON TECHNOLOGY IN    COM         595112103   4483    618400 SH  PUT  DEFINED             15,16,24   618400       0        0
MICRON TECHNOLOGY IN    COM         595112103    230     31700 SH  PUT  DEFINED             16,24,25    31700       0        0
MICROSEMI CORP          COM         595137100    237     10700 SH      DEFINED                    30    10700       0        0
MICROSEMI CORP          COM         595137100     31      1412 SH      DEFINED              16,24,25     1412       0        0
MICROSEMI CORP          COM         595137100    357     16125 SH      DEFINED              32,40,41    16125       0        0
MID-AMER APT CMNTYS     COM         59522J103      1        34 SH      DEFINED                   3,9        0       0       34
MID-AMER APT CMNTYS     COM         59522J103    303      7080 SH      DEFINED              16,24,25     7019       0       61
MID-AMER APT CMNTYS     COM         59522J103    506     11835 SH      DEFINED              32,40,41    11835       0        0
MIDCAP SPDR TR          UNIT SER 1  595635103   1396      9000 SH      DEFINED                    12        0       0     9000
MIDCAP SPDR TR          UNIT SER 1  595635103    891      5753 SH      DEFINED                  7,11        0       0     5753
MIDCAP SPDR TR          UNIT SER 1  595635103    335      2158 SH      DEFINED               7,11,33        0       0     2158
MIDCAP SPDR TR          UNIT SER 1  595635103  55828    359950 SH      DEFINED              16,24,25   280581       0    79368
MIDCAP SPDR TR          UNIT SER 1  595635103 102847    663100 SH  CALL DEFINED             15,16,24   663100       0        0
MIDCAP SPDR TR          UNIT SER 1  595635103  38837    250400 SH  CALL DEFINED             15,16,24   250400       0        0
MIDCAP SPDR TR          UNIT SER 1  595635103 141219    910500 SH  PUT  DEFINED             15,16,24   910500       0        0
MIDDLEBY CORP           COM         596278101    871     11363 SH      DEFINED              16,24,25     9698       0     1665
MIDDLESEX WATER CO      COM         596680108    388     20496 SH      DEFINED              16,24,25    19410       0     1086
MIDWESTONE FINL GROU    COM         598510105    650     38283 SH      DEFINED              16,24,25    36363       0     1920
MILLENNIUM PHARMACEU    NOTE  2.25  599902AD5   4625   3953000 PRN      DEFINED              16,24,25  3953000       0        0
MILLENNIUM PHARMACEU    COM         599902103     11       760 SH      DEFINED                   3,9        0       0      760
MILLENNIUM PHARMACEU    COM         599902103   1523    101690 SH      DEFINED                  7,11   101690       0        0
MILLENNIUM PHARMACEU    COM         599902103     82      5465 SH      DEFINED               7,11,33        0       0     5465
MILLENNIUM PHARMACEU    COM         599902103  89954   6004934 SH      DEFINED              16,24,25  5689419       0   315515
MILLENNIUM PHARMACEU    COM         599902103   5032    335900 SH      DEFINED              32,40,41   335900       0        0
```

```
MILLENNIUM PHARMACEU COM       599902103    4804   320726 SH    DEFINED 2,6,7,10-11,18,20,21,28  320726       0        0
MILLENNIUM PHARMACEU COM       599902103    3964   264600 SH    CALL DEFINED          15,16,24   264600       0        0
MILLENNIUM PHARMACEU COM       599902103    1610   107500 SH    PUT DEFINED           15,16,24   107500       0        0
MILLENNIUM INDIA ACQ COM       60039Q101    2189   277400 SH    DEFINED               16,24,25   277400       0        0
MILLENNIUM INDIA ACQ *W EXP 07/ 60039Q119    342   180000 SH    DEFINED               16,24,25   180000       0        0
MILLER HERMAN INC    COM       600544100    1140    35186 SH    DEFINED                  7,11    35186       0        0
MILLER HERMAN INC    COM       600544100    2640    81516 SH    DEFINED               16,24,25    76492       0     5024
MILLIPORE CORP       COM       601073109     662     9042 SH    DEFINED                  7,11     9042       0        0
MILLIPORE CORP       COM       601073109    3142    42928 SH    DEFINED               16,24,25    38662       0     4266
MILLIPORE CORP       COM       601073109     783    10699 SH    DEFINED               32,40,41    10699       0        0
MINDRAY MEDICAL INTL SPON ADR  602675100    1581    36787 SH    DEFINED               15,16,24    36787       0        0
MINDRAY MEDICAL INTL SPON ADR  602675100    2777    64621 SH    DEFINED               16,24,25    58257       0     6364
MINDRAY MEDICAL INTL SPON ADR  602675100    2342    54500 SH    CALL DEFINED          15,16,24    54500       0        0
MINDRAY MEDICAL INTL SPON ADR  602675100    3695    86000 SH    PUT DEFINED           16,24,25    86000       0        0
MINE SAFETY APPLIANC COM       602720104      16      301 SH    DEFINED                 7,11,13     301       0        0
MINE SAFETY APPLIANC COM       602720104     555    10697 SH    DEFINED               16,24,25     9530       0     1167
MINERALS TECHNOLOGIE COM       603158106     831    12415 SH    DEFINED               16,24,25     7015       0     5400
MINRAD INTL INC      COM       60443P103      45    13800 SH    DEFINED               16,24,25    13800       0        0
MIRAMAR MINING CORP  COM       60466E100     103    16428 SH    DEFINED               16,24,25      500       0    15928
MIRAMAR MINING CORP  COM       60466E100     784   124706 SH    DEFINED               4,6,7,11   124706       0        0
MIRANT CORP NEW      COM       60467R100    1167    29939 SH    DEFINED                  7,11    29939       0        0
MIRANT CORP NEW      COM       60467R100     390    10000 SH    DEFINED                 31,45    10000       0        0
MIRANT CORP NEW      COM       60467R100   12291   315327 SH    DEFINED               16,24,25   308227       0     7100
MIRANT CORP NEW      COM       60467R100    1054    27047 SH    DEFINED               32,40,41    27047       0        0
MIRANT CORP NEW      COM       60467R100   38111   977700 SH    CALL DEFINED          15,16,24   977700       0        0
MIRANT CORP NEW      COM       60467R100   24234   621700 SH    PUT DEFINED           15,16,24   621700       0        0
MIRANT CORP NEW      *W EXP 01/ 60467R118       1       65 SH    DEFINED                 7,11,13      65       0        0
MIRANT CORP NEW      *W EXP 01/ 60467R118     207    11258 SH    DEFINED               16,24,25     1437       0     9821
MIRANT CORP NEW      *W EXP 250000/ 60467R126  4888   250000 SH    DEFINED               31,45   250000       0        0
MIRANT CORP NEW      *W EXP 01/ 60467R126      15      767 SH    DEFINED               16,24,25      767       0        0
MISSION WEST PPTYS I COM       605203108     303    31900 SH    DEFINED               16,24,25    28900       0     3000
MISSION WEST PPTYS I COM       605203108      97    10154 SH    DEFINED               32,40,41    10154       0        0
MITCHAM INDS INC     COM       606501104       2       98 SH    DEFINED                  16,24      98       0        0
MITCHAM INDS INC     COM       606501104     475    23111 SH    DEFINED               16,24,25    22811       0      300
MITSUBISHI UFJ FINL  SPONSORED 606822104     112    11991 SH    DEFINED                  7,11        0       0    11991
MITSUBISHI UFJ FINL  SPONSORED 606822104       6      600 SH    DEFINED                 7,11,33       0       0      600
MITSUBISHI UFJ FINL  SPONSORED 606822104    4715   505407 SH    DEFINED               16,24,25   457878       0    47529
MITSUBISHI UFJ FINL  SPONSORED 606822104      14     1500 SH    DEFINED               5-7,11,43,44     0    1500        0
MIZUHO FINL GROUP IN SPONSORED 60687Y109     682    71432 SH    DEFINED               16,24,25    70882       0      550
MOBILE TELESYSTEMS O COM       607040F105    261    14078 SH    DEFINED               16,24,25    11699       0     2379
MOBILE TELESYSTEMS O SPONSORED 607409109     522     5128 SH    DEFINED                    30     5128       0        0
MOBILE TELESYSTEMS O SPONSORED 607409109    8829    86738 SH    DEFINED               16,24,25    79629       0     7109
MOBILE TELESYSTEMS O SPONSORED 607409109     412     4045 SH    DEFINED               32,40,41     4045       0        0
MOBILE TELESYSTEMS O SPONSORED 607409109    8806    86509 SH    DEFINED         16,19,24,26,27    86509       0        0
MOBILE TELESYSTEMS O SPONSORED 607409109     204     2000 SH    CALL DEFINED          15,16,24     2000       0        0
MOBILE TELESYSTEMS O SPONSORED 607409109     163     1600 SH    PUT DEFINED           15,16,24     1600       0        0
MOBILITY ELECTRONICS COM       60741U101      44    28025 SH    DEFINED               16,24,25    28025       0        0
MOCON INC            COM       607494101    1728   152017 SH    DEFINED               16,24,25   129473       0    22544
MODTECH HLDGS INC    COM       60783C100       9    10300 SH    DEFINED               16,24,25      300       0    10000
MOHAWK INDS INC      COM       608190104     243     3261 SH    DEFINED                  7,11     3261       0        0
MOHAWK INDS INC      COM       608190104   10149   136412 SH    DEFINED               16,24,25   109767       0    26645
MOHAWK INDS INC      COM       608190104     135     1811 SH    DEFINED               32,40,41     1811       0        0
MOLECULAR INSIGHT PH COM       60852M104     286    31592 SH    DEFINED               16,24,25    31391       0      201
MOLINA HEALTHCARE IN NOTE 3.75 60855RAA8    3270  2926000 PRN   DEFINED               16,24,25  2926000       0        0
MOLEX INC            COM       608554101     351    12857 SH    DEFINED                  7,11    12857       0        0
MOLEX INC            COM       608554101     177     6475 SH    DEFINED                7,11,13     6475       0        0
MOLEX INC            COM       608554101     664    24315 SH    DEFINED               16,24,25    22808       0     1507
MOLEX INC            COM       608554101       4      130 SH    DEFINED               32,40,41      130       0        0
MOLEX INC            CL A      608554200      29     1121 SH    DEFINED                    12     1121       0        0
MOLEX INC            CL A      608554200     423    16087 SH    DEFINED                  7,11     3059       0    13028
MOLEX INC            CL A      608554200     105     4000 SH    DEFINED                7,11,33       0       0     4000
MOLEX INC            CL A      608554200     770    29315 SH    DEFINED               16,24,25    29128       0      187
MOLSON COORS BREWING CL B      60871R209     312     6048 SH    DEFINED                   3,9        0       0     6048
MOLSON COORS BREWING CL B      60871R209   20491   396965 SH    DEFINED                  7,11   396965       0        0
MOLSON COORS BREWING CL B      60871R209     121     2350 SH    DEFINED                7,11,13     2200       0      150
MOLSON COORS BREWING CL B      60871R209    7990   154792 SH    DEFINED               16,24,25   154592       0      200
MOLSON COORS BREWING CL B      60871R209     104     2019 SH    DEFINED               32,40,41     2019       0        0
MOLSON COORS BREWING CL B      60871R209   84332  1633700 SH    CALL DEFINED             7,11  1633700       0        0
MOLSON COORS BREWING CL B      60871R209    9049   175300 SH    CALL DEFINED          15,16,24   175300       0        0
MOLSON COORS BREWING CL B      60871R209    1667    32300 SH    CALL DEFINED          16,24,25    32300       0        0
MOLSON COORS BREWING CL B      60871R209    3030    58700 SH    PUT DEFINED           15,16,24    58700       0        0
MOLSON COORS BREWING CL B      60871R209    3417    66200 SH    PUT DEFINED           16,24,25    66200       0        0
MOMENTA PHARMACEUTIC COM       60877T100     759   106353 SH    DEFINED                  16,24   106353       0        0
MOMENTA PHARMACEUTIC COM       60877T100       9     1287 SH    DEFINED               16,24,25     1287       0        0
MONACO COACH CORP    COM       60886R103     433    48735 SH    DEFINED               16,24,25    38435       0    10300
MONARCH CASINO & RES COM       609027107     368    15272 SH    DEFINED               16,24,25    10912       0     4360
MONEYGRAM INTL INC   COM       60935Y109      77     4982 SH    DEFINED                  7,11     4982       0        0
MONEYGRAM INTL INC   COM       60935Y109     463    30100 SH    DEFINED                 31,45    30100       0        0
MONEYGRAM INTL INC   COM       60935Y109      18     1200 SH    DEFINED                7,11,33       0       0     1200
MONEYGRAM INTL INC   COM       60935Y109     355    23083 SH    DEFINED               16,24,25    21995       0     1088
MONSANTO CO NEW      COM       61166W101   66434   594810 SH    DEFINED                  7,11   574178       0    20632
MONSANTO CO NEW      COM       61166W101    5773    51688 SH    DEFINED                7,11,33    51338       0      350
MONSANTO CO NEW      COM       61166W101     144     1290 SH    DEFINED                7,11,33        0       0     1290
MONSANTO CO NEW      COM       61166W101    1098     9835 SH    DEFINED                7,11,13     9835       0        0
MONSANTO CO NEW      COM       61166W101  131820  1180230 SH    DEFINED               16,24,25  1040800       0   139429
MONSANTO CO NEW      COM       61166W101   22861   204681 SH    DEFINED               32,40,41   204681       0        0
MONSANTO CO NEW      COM       61166W101     323     2888 SH    DEFINED         16,19,24,26,27     2888       0        0
MONSANTO CO NEW      COM       61166W101   18361   164393 SH    CALL DEFINED             7,11   164393       0        0
MONSANTO CO NEW      COM       61166W101   51255   458900 SH    CALL DEFINED          15,16,24   458900       0        0
MONSANTO CO NEW      COM       61166L101   23198   207700 SH    CALL DEFINED          16,24,25   207700       0        0
MONSANTO CO NEW      COM       61166W101   41013   367200 SH    PUT DEFINED           15,16,24   367200       0        0
MONSANTO CO NEW      COM       61166W101   54627   489093 SH    PUT DEFINED           16,24,25   489093       0        0
MONSTER WORLDWIDE IN COM       61174Z107     556    17159 SH    DEFINED                  7,11    17159       0        0
MONSTER WORLDWIDE IN COM       61174Z107     112    96043 SH    DEFINED               15,16,24    96043       0        0
MONSTER WORLDWIDE IN COM       61174Z107   11382   351285 SH    DEFINED               16,24,25   299930       0    51355
MONSTER WORLDWIDE IN COM       61174Z107    1530    47214 SH    DEFINED               32,40,41    47214       0        0
MONSTER WORLDWIDE IN COM       61174Z107   20545   634100 SH    CALL DEFINED          15,16,24   634100       0        0
MONSTER WORLDWIDE IN COM       61174Z107    2044    63100 SH    CALL DEFINED          16,24,25    63100       0        0
MONSTER WORLDWIDE IN COM       61174Z107   20807   642200 SH    PUT DEFINED           15,16,24   642200       0        0
MONSTER WORLDWIDE IN COM       61174Z107    1720    53100 SH    PUT DEFINED           16,24,25    53100       0        0
MONTGOMERY STR INCOM COM       614115103     565    35037 SH    DEFINED               16,24,25    27212       0     7825
MONTGOMERY STR INCOM COM       614115103      71     4400 SH    DEFINED         16,19,24,26,27     4400       0        0
MOODYS CORP          COM       615369105    1420    39775 SH    DEFINED                  7,11    28975       0    10800
MOODYS CORP          COM       615369105    1191    33355 SH    DEFINED                7,11,13    33105       0      250
MOODYS CORP          COM       615369105     273     7658 SH    DEFINED               15,16,24     7658       0        0
MOODYS CORP          COM       615369105    4712   132000 SH    DEFINED               16,24,25   107544       0    24456
MOODYS CORP          COM       615369105    2797    78339 SH    DEFINED               32,40,41    78339       0        0
MOODYS CORP          COM       615369105   13612   381300 SH    CALL DEFINED          15,16,24   381300       0        0
MOODYS CORP          COM       615369105     639    17900 SH    CALL DEFINED          16,24,25    17900       0        0
MOODYS CORP          COM       615369105   26414   739900 SH    PUT DEFINED           15,16,24   739900       0        0
MOOG INC             CL A      615394202      90     1975 SH    DEFINED                    30     1975       0        0
MOOG INC             CL A      615394202       9      200 SH    DEFINED                7,11,13      200       0        0
MOOG INC             CL A      615394202     982    21447 SH    DEFINED               16,24,25    17091       0     4356
MORGAN STANLEY EASTN COM       61698B101     806    21138 SH    DEFINED               16,24,25    17630       0     3508
```

```
MORGAN STANLEY EMER    COM         61744G107   12      500 SH       DEFINED           7,11,13                    500        0        0
MORGAN STANLEY EMER    COM         61744G107   793     32036 SH     DEFINED           16,24,25                   27521      0        4514
MORGAN STANLEY EMER    COM         61744H105   1080    111369 SH    DEFINED           16,24,25                   88918      0        22450
MORGAN STANLEY EMER    COM         61744H105   731     75400 SH     DEFINED           16,19,24,26,27             75400      0        0
MORGAN STANLEY HIGH    COM         61744M104   196     34151 SH     DEFINED           16,24,25                   27987      0        6164
MORGAN STANLEY HIGH    COM         61744M104   135     23500 SH     DEFINED           16,19,24,26,27             23500      0        0
MORGAN STANLEY GBL O   COM         61744R103   43      6113 SH      DEFINED           16,24,25                   700        0        5412
MORGAN STANLEY GBL O   COM         61744R103   98      14000 SH     DEFINED           16,19,24,26,27             14000      0        0
MORGAN STANLEY ASIA    COM         61744U106   1780    88378 SH     DEFINED           16,24,25                   82088      0        6290
MORGAN STANLEY         COM NEW     617446448   1832    34500 SH      DEFINED           12                         0          0        34500
MORGAN STANLEY         COM NEW     617446448   2248    42334 SH      DEFINED           3,9                        0          0        42334
MORGAN STANLEY         COM NEW     617446448   88154   1659841 SH    DEFINED           7,11                       1105753    2700     551388
MORGAN STANLEY         COM NEW     617446448   4993    94016 SH      DEFINED           7,11,13                    71556      0        22460
MORGAN STANLEY         COM NEW     617446448   960     18070 SH      DEFINED           7,11,33                    0          0        18070
MORGAN STANLEY         COM NEW     617446448   105049  1977943 SH    DEFINED           16,24,25                   1687060    0        290882
MORGAN STANLEY         COM NEW     617446448   1565    29463 SH      DEFINED           32,40,41                   29463      0        0
MORGAN STANLEY         COM NEW     617446448   774     14577 SH      DEFINED           5-7,11,43,44               0          14577    0
MORGAN STANLEY         COM NEW     617446448   12213   229965 SH     CALL DEFINED      7,11                       229965     0        0
MORGAN STANLEY         COM NEW     617446448   33751   635500 SH     CALL DEFINED      15,16,24                   635500     0        0
MORGAN STANLEY         COM NEW     617446448   11137   209700 SH     CALL DEFINED      16,24,25                   209700     0        0
MORGAN STANLEY         COM NEW     617446448   48017   904100 SH     PUT DEFINED       15,16,24                   904100     0        0
MORGAN STANLEY         COM NEW     617446448   44409   836165 SH     PUT DEFINED       16,24,25                   836165     0        0
MORGAN STANLEY INDIA   COM         61745C105   4667    85021 SH      DEFINED           16,24,25                   66361      0        18659
MORGAN STANLEY         MUN PREM I  61745P429   255     30106 SH      DEFINED           16,24,25                   26622      0        3484
MORGAN STANLEY         MUN INC OP  61745P445   210     25501 SH      DEFINED           16,24,25                   21671      0        3829
MORGAN STANLEY         N Y QUALITY 61745P528   440     34107 SH      DEFINED           16,24,25                   30507      0        3600
MORGAN STANLEY         QULTY MUN   61745P585   893     66279 SH      DEFINED           16,24,25                   58259      0        8019
MORGAN STANLEY         QLT MUN IN  61745P668   130     10310 SH      DEFINED           16,24,25                   10310      0        0
MORGAN STANLEY         INSD MUN I  61745P791   458     33784 SH      DEFINED           16,24,25                   28630      0        5153
MORGAN STANLEY         INCOME SEC  61745P874   118     7765 SH       DEFINED           7,11,13                    7765       0        0
MORGAN STANLEY         INCOME SEC  61745P874   101     6651 SH       DEFINED           16,24,25                   5651       0        1000
MORGAN STANLEY CHINA   COM         617468103   549     10868 SH      DEFINED           7,11,33                    0          0        10868
MORGAN STANLEY CHINA   COM         617468103   4966    98320 SH      DEFINED           16,24,25                   92556      0        5764
MORGAN STANLEY EMERG   COM         617477104   739     42929 SH      DEFINED           16,24,25                   42929      0        0
MORGANS HOTEL GROUP    COM         61748W108   7555    391864 SH     DEFINED           7,11                       391864     0        0
MORGANS HOTEL GROUP    COM         61748W108   39      2016 SH       DEFINED           16,24,25                   1922       0        94
MORGANS HOTEL GROUP    COM         61748W108   33524   1738800 SH    CALL DEFINED      7,11                       1738800    0        0
MORNINGSTAR INC        COM         617700109   452     5818 SH       DEFINED           16,24,25                   5143       0        675
MORNINGSTAR INC        COM         617700109   855     11000 SH      CALL DEFINED      16,24,25                   11000      0        0
MOSAIC CO              COM         61945A107   482     5110 SH       DEFINED           30                         5110       0        0
MOSAIC CO              COM         61945A107   869     9210 SH       DEFINED           7,11                       9210       0        0
MOSAIC CO              COM         61945A107   19424   205894 SH     DEFINED           16,24,25                   183285     0        22609
MOSAIC CO              COM         61945A107   917     9720 SH       DEFINED           32,40,41                   9720       0        0
MOSAIC CO              COM         61945A107   4368    46300 SH      CALL DEFINED      15,16,24                   46300      0        0
MOSAIC CO              COM         61945A107   4047    42900 SH      PUT DEFINED       15,16,24                   42900      0        0
MOTOROLA INC           COM         620076109   842     52500 SH      DEFINED           12                         0          0        52500
MOTOROLA INC           COM         620076109   13314   830064 SH     DEFINED           7,11                       383740     0        446324
MOTOROLA INC           COM         620076109   1136    70836 SH      DEFINED           7,11,13                    61810      0        9026
MOTOROLA INC           COM         620076109   95      5925 SH       DEFINED           7,11,33                    0          0        5925
MOTOROLA INC           COM         620076109   4365    272134 SH     DEFINED           15,16,24                   272134     0        0
MOTOROLA INC           COM         620076109   58764   3663602 SH    DEFINED           16,24,25                   3025484    0        638117
MOTOROLA INC           COM         620076109   1170    72961 SH      DEFINED           32,40,41                   72961      0        0
MOTOROLA INC           COM         620076109   22      1370 SH       DEFINED           5-7,11,43,44               0          1370     0
MOTOROLA INC           COM         620076109   2846    177408 SH     DEFINED     2,6,7,10-11,18,20,21,28         177408     0        0
MOTOROLA INC           COM         620076109   11411   711400 SH     CALL DEFINED      15,16,24                   711400     0        0
MOTOROLA INC           COM         620076109   1800    112200 SH     CALL DEFINED      16,24,25                   112200     0        0
MOTOROLA INC           COM         620076109   11542   719600 SH     PUT DEFINED       15,16,24                   719600     0        0
MOTOROLA INC           COM         620076109   5166    322100 SH     PUT DEFINED       16,24,25                   322100     0        0
MOVE INC COM           COM         62458M108   537     219357 SH     DEFINED           16,24,25                   210426     0        8931
MOVADO GROUP INC       COM         624580106   208     8217 SH       DEFINED           16,24,25                   7783       0        434
MUELLER INDS INC       COM         624756102   64      2200 SH       DEFINED           30                         2200       0        0
MUELLER INDS INC       COM         624756102   4       150 SH        DEFINED           7,11,13                    150        0        0
MUELLER INDS INC       COM         624756102   193     6642 SH       DEFINED           16,24,25                   6209       0        433
MUELLER WTR PRODS IN   COM SER A   624758108   152     15971 SH      DEFINED           7,11                       15971      0        0
MUELLER WTR PRODS IN   COM SER A   624758108   1184    124375 SH     DEFINED           7,11,13                    121125     0        3250
MUELLER WTR PRODS IN   COM SER A   624758108   1954    205251 SH     DEFINED           16,24,25                   186758     0        18493
MUELLER WTR PRODS IN   COM SER A   624758108   26      2738 SH       DEFINED           32,40,41                   2738       0        0
MUELLER WTR PRODS IN   COM SER B   624758207   4210    422292 SH     DEFINED           7,11                       422292     0        0
MUELLER WTR PRODS IN   COM SER B   624758207   5552    556840 SH     DEFINED           16,24,25                   509159     0        47681
MUELLER WTR PRODS IN   COM SER B   624758207   417     41864 SH      DEFINED           32,40,41                   41864      0        0
MULTI FINELINE ELECT   COM         62541B101   222     12795 SH      DEFINED           16,24,25                   12795      0        0
MUNICIPAL MTG & EQUI   GROWTH SHS  62624B101   15      1000 SH       DEFINED           7,11,13                    0          0        1000
MUNICIPAL MTG & EQUI   GROWTH SHS  62624B101   2610    175895 SH     DEFINED           16,24,25                   109497     0        66397
MURPHY OIL CORP        COM         626717102   1610    18976 SH      DEFINED           7,11                       16776      0        2200
MURPHY OIL CORP        COM         626717102   254     2990 SH       DEFINED           7,11,13                    2990       0        0
MURPHY OIL CORP        COM         626717102   5762    67911 SH      DEFINED           15,16,24                   67911      0        0
MURPHY OIL CORP        COM         626717102   10316   121591 SH     DEFINED           16,24,25                   77892      0        43699
MURPHY OIL CORP        COM         626717102   263     3095 SH       DEFINED           32,40,41                   3095       0        0
MURPHY OIL CORP        COM         626717102   12412   146300 SH     CALL DEFINED      15,16,24                   146300     0        0
MURPHY OIL CORP        COM         626717102   1476    17400 SH      CALL DEFINED      16,24,25                   17400      0        0
MURPHY OIL CORP        COM         626717102   8068    95100 SH      PUT DEFINED       15,16,24                   95100      0        0
MURPHY OIL CORP        COM         626717102   1476    17400 SH      PUT DEFINED       16,24,25                   17400      0        0
MYERS INDS INC         COM         628464109   370     25583 SH      DEFINED           16,24,25                   23367      0        2216
MYLAN INC              NOTE 1.25   628530AG2   14376   15908000 PRN  DEFINED           16,24,25                   15908000   0        0
MYLAN INC              COM         628530107   426     30301 SH      DEFINED           7,11                       30301      0        0
MYLAN INC              COM         628530107   969     68952 SH      DEFINED           7,11,13                    67252      0        1700
MYLAN INC              COM         628530107   84      5982 SH       DEFINED           15,16,24                   5982       0        0
MYLAN INC              COM         628530107   8472    602590 SH     DEFINED           16,24,25                   556553     0        46037
MYLAN INC              COM         628530107   3       211 SH        DEFINED           32,40,41                   211        0        0
MYLAN INC              COM         628530107   7985    567900 SH     CALL DEFINED      15,16,24                   567900     0        0
MYLAN INC              COM         628530107   169     12000 SH      CALL DEFINED      16,24,25                   12000      0        0
MYLAN INC              COM         628530107   3734    265600 SH     PUT DEFINED       15,16,24                   265600     0        0
MYLAN INC              COM         628530107   474     33700 SH      PUT DEFINED       16,24,25                   33700      0        0
MYRIAD GENETICS INC    COM         62855J104   122     2625 SH       DEFINED           7,11,13                    2625       0        0
MYRIAD GENETICS INC    COM         62855J104   12      259 SH        DEFINED           15,16,24                   259        0        0
MYRIAD GENETICS INC    COM         62855J104   1046    22534 SH      DEFINED           16,24,25                   19130      0        3404
MYRIAD GENETICS INC    COM         62855J104   4410    95000 SH      CALL DEFINED      15,16,24                   95000      0        0
MYRIAD GENETICS INC    COM         62855J104   7464    160800 SH     PUT DEFINED       15,16,24                   160800     0        0
NBTY INC               COM         628782104   2357    86011 SH      DEFINED           7,11                       85714      0        297
NBTY INC               COM         628782104   1113    40625 SH      DEFINED           16,24,25                   28419      0        12206
NBTY INC               COM         628782104   96      3500 SH       DEFINED           32,40,41                   3500       0        0
NCR CORP NEW           COM         62886E108   1734    69078 SH      DEFINED           7,11                       68964      0        114
NCR CORP NEW           COM         62886E108   7       298 SH        DEFINED           7,11,13                    298        0        0
NCR CORP NEW           COM         62886E108   1699    67676 SH      DEFINED           16,24,25                   64900      0        2776
NCR CORP NEW           COM         62886E108   53      2100 SH       DEFINED           32,40,41                   2100       0        0
NCR CORP NEW           COM         62886E108   63      2500 SH       DEFINED           5-7,11,43,44               0          2500     0
NCI INC                CL A        62886K104   190     11130 SH      DEFINED           16,24,25                   7065       0        4065
NDS GROUP PLC          SPONSORED   628891103   491     8296 SH       DEFINED           16,24,25                   7737       0        559
NGP CAP RES CO         COM         62912R107   174     11150 SH      DEFINED           16,24,25                   10650      0        500
NII HLDGS INC          CL B NEW    62913F201   684     14150 SH      DEFINED           30                         14150      0        0
NII HLDGS INC          CL B NEW    62913F201   913     18890 SH      DEFINED           7,11                       18890      0        0
NII HLDGS INC          CL B NEW    62913F201   1253    25935 SH      DEFINED           7,11,13                    25535      0        400
NII HLDGS INC          CL B NEW    62913F201   5177    107149 SH     DEFINED           15,16,24                   107149     0        0
NII HLDGS INC          CL B NEW    62913F201   3549    73438 SH      DEFINED           16,24,25                   57448      0        15990
```

| Issuer | Class | CUSIP | Col4 | Col5 | Type | Opt | | Codes | Value | | Col12 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| NII HLDGS INC | CL B NEW | 62913F201 | 255 | 5271 | SH | | DEFINED | 32,40,41 | 5271 | 0 | 0 |
| NII HLDGS INC | CL B NEW | 62913F201 | 8475 | 175400 | SH | CALL | DEFINED | 15,16,24 | 175400 | 0 | 0 |
| NII HLDGS INC | CL B NEW | 62913F201 | 10 | 200 | SH | CALL | DEFINED | 16,24,25 | 200 | 0 | 0 |
| NII HLDGS INC | CL B NEW | 62913F201 | 15593 | 322700 | SH | PUT | DEFINED | 15,16,24 | 322700 | 0 | 0 |
| NMS COMMUNICATIONS C | COM | 62924B105 | 20 | 12450 | SH | | DEFINED | 16,24,25 | 12450 | 0 | 0 |
| NN INC | COM | 629337106 | 33 | 3500 | SH | | DEFINED | 7,11,13 | 3500 | 0 | 0 |
| NN INC | COM | 629337106 | 69 | 7300 | SH | | DEFINED | 16,24,25 | 7300 | 0 | 0 |
| NPS PHARMACEUTICALS | COM | 62936P103 | 67 | 17568 | SH | | DEFINED | 16,24,25 | 16368 | 0 | 1200 |
| NRG ENERGY INC | COM NEW | 629377508 | 13337 | 307731 | SH | | DEFINED | 7,11 | 307731 | 0 | 0 |
| NRG ENERGY INC | COM NEW | 629377508 | 31851 | 734919 | SH | | DEFINED | 15,16,24 | 734919 | 0 | 0 |
| NRG ENERGY INC | COM NEW | 629377508 | 2239 | 51655 | SH | | DEFINED | 16,24,25 | 45750 | 0 | 5905 |
| NRG ENERGY INC | COM NEW | 629377508 | 3024 | 69781 | SH | | DEFINED | 32,40,41 | 69781 | 0 | 0 |
| NRG ENERGY INC | COM NEW | 629377508 | 76833 | 1772800 | SH | CALL | DEFINED | 15,16,24 | 1772800 | 0 | 0 |
| NRG ENERGY INC | COM NEW | 629377508 | 28219 | 651100 | SH | CALL | DEFINED | 16,24,25 | 651100 | 0 | 0 |
| NRG ENERGY INC | COM NEW | 629377508 | 85315 | 1968500 | SH | PUT | DEFINED | 15,16,24 | 1968500 | 0 | 0 |
| NRG ENERGY INC | COM NEW | 629377508 | 217 | 5000 | SH | PUT | DEFINED | 16,24,25 | 5000 | 0 | 0 |
| NRG ENERGY INC | PFD CONV M | 629377870 | 20865 | 55537 | SH | | DEFINED | 16,24,25 | 55537 | 0 | 0 |
| NTR ACQUISITION CO | COM | 629415100 | 3505 | 368934 | SH | | DEFINED | 16,24,25 | 368934 | 0 | 0 |
| NTR ACQUISITION CO | *W EXP 06/ | 629415118 | 422 | 351305 | SH | | DEFINED | 16,24,25 | 279305 | 0 | 72000 |
| NTT DOCOMO INC | SPONS ADR | 62942M201 | 4045 | 246639 | SH | | DEFINED | 16,24,25 | 214110 | 0 | 32529 |
| NTT DOCOMO INC | SPONS ADR | 62942M201 | 82 | 5000 | SH | | DEFINED | 2,6,7,10-11,18,20,21,28 | 5000 | 0 | 0 |
| NVR INC | COM | 62944T105 | 215 | 410 | SH | | DEFINED | 7,11 | 410 | 0 | 0 |
| NVR INC | COM | 62944T105 | 1509 | 2880 | SH | | DEFINED | 16,24,25 | 2773 | 0 | 107 |
| NVR INC | COM | 62944T105 | 760 | 1450 | SH | | DEFINED | 32,40,41 | 1450 | 0 | 0 |
| NYMEX HOLDINGS INC | COM | 62948N104 | 321 | 2400 | SH | | DEFINED | 30 | 2400 | 0 | 0 |
| NYMEX HOLDINGS INC | COM | 62948N104 | 66820 | 500116 | SH | | DEFINED | 42 | 500116 | 0 | 0 |
| NYMEX HOLDINGS INC | COM | 62948N104 | 146 | 1096 | SH | | DEFINED | 7,11 | 1096 | 0 | 0 |
| NYMEX HOLDINGS INC | COM | 62948N104 | 27077 | 202657 | SH | | DEFINED | 16,24,25 | 189830 | 0 | 12827 |
| NYMEX HOLDINGS INC | COM | 62948N104 | 344 | 2576 | SH | | DEFINED | 32,40,41 | 2576 | 0 | 0 |
| NYMEX HOLDINGS INC | COM | 62948N104 | 31572 | 236300 | SH | CALL | DEFINED | 15,16,24 | 236300 | 0 | 0 |
| NYMEX HOLDINGS INC | COM | 62948N104 | 27524 | 206000 | SH | PUT | DEFINED | 15,16,24 | 206000 | 0 | 0 |
| NYMEX HOLDINGS INC | COM | 62948N104 | 267 | 2000 | SH | PUT | DEFINED | 16,24,25 | 2000 | 0 | 0 |
| NYSE EURONEXT | COM | 629491101 | 57938 | 660114 | SH | | DEFINED | 7,11 | 660114 | 0 | 0 |
| NYSE EURONEXT | COM | 629491101 | 24626 | 280573 | SH | | DEFINED | 15,16,24 | 280573 | 0 | 0 |
| NYSE EURONEXT | COM | 629491101 | 102515 | 1167991 | SH | | DEFINED | 16,24,25 | 1121945 | 0 | 46046 |
| NYSE EURONEXT | COM | 629491101 | 479 | 5456 | SH | | DEFINED | 32,40,41 | 5456 | 0 | 0 |
| NYSE EURONEXT | COM | 629491101 | 958 | 10917 | SH | | DEFINED | 16,19,24,26,27 | 10917 | 0 | 0 |
| NYSE EURONEXT | COM | 629491101 | 50701 | 577658 | SH | CALL | DEFINED | 15,16,24 | 577658 | 0 | 0 |
| NYSE EURONEXT | COM | 629491101 | 25251 | 287700 | SH | CALL | DEFINED | 16,24,25 | 287700 | 0 | 0 |
| NYSE EURONEXT | COM | 629491101 | 68320 | 778400 | SH | CALL | DEFINED | 16,24,25 | 778400 | 0 | 0 |
| NYSE EURONEXT | COM | 629491101 | 39181 | 446400 | SH | PUT | DEFINED | 15,16,24 | 446400 | 0 | 0 |
| NYSE EURONEXT | COM | 629491101 | 75724 | 862758 | SH | PUT | DEFINED | 16,24,25 | 862758 | 0 | 0 |
| NABI BIOPHARMACEUTIC | NOTE 2.87 | 629519AB5 | 3938 | 4500000 | PRN | | DEFINED | 31,45 | 4500000 | 0 | 0 |
| NABORS INDS INC | NOTE | 629568AL0 | 11420 | 11406000 | PRN | | DEFINED | 16,24,25 | 11406000 | 0 | 0 |
| NABORS INDS INC | NOTE 0.94 | 629568AP1 | 43362 | 46130000 | PRN | | DEFINED | 16,24,25 | 46130000 | 0 | 0 |
| NALCO HOLDING COMPAN | COM | 62985Q101 | 1213 | 50186 | SH | | DEFINED | 7,11 | 50186 | 0 | 0 |
| NALCO HOLDING COMPAN | COM | 62985Q101 | 1694 | 70075 | SH | | DEFINED | 7,11,13 | 63100 | 0 | 6975 |
| NALCO HOLDING COMPAN | COM | 62985Q101 | 5662 | 234159 | SH | | DEFINED | 16,24,25 | 166640 | 0 | 67519 |
| NALCO HOLDING COMPAN | COM | 62985Q101 | 1259 | 52050 | SH | | DEFINED | 32,40,41 | 52050 | 0 | 0 |
| NAM TAI ELECTRS INC | COM PAR $0 | 62986S205 | 2571 | 228151 | SH | | DEFINED | 16,24,25 | 216936 | 0 | 11214 |
| NANOGEN INC | COM | 630075109 | 34 | 95534 | SH | | DEFINED | 16,24,25 | 85846 | 0 | 9688 |
| NANOPHASE TCHNOLOGIE | COM | 630079101 | 532 | 139896 | SH | | DEFINED | 16,24,25 | 118354 | 0 | 21542 |
| NAPSTER INC | COM | 630797108 | 4 | 1939 | SH | | DEFINED | 15,16,24 | 1939 | 0 | 0 |
| NAPSTER INC | COM | 630797108 | 6 | 2982 | SH | | DEFINED | 16,24,25 | 482 | 0 | 2500 |
| NAPSTER INC | COM | 630797108 | 7 | 3700 | SH | CALL | DEFINED | 15,16,24 | 3700 | 0 | 0 |
| NAPSTER INC | COM | 630797108 | 26 | 13000 | SH | PUT | DEFINED | 15,16,24 | 13000 | 0 | 0 |
| NASDAQ PREM INCM & G | COM | 63110R105 | 183 | 10063 | SH | | DEFINED | 16,24,25 | 8316 | 0 | 1747 |
| NASDAQ STOCK MARKET | COM | 631103108 | 58 | 1178 | SH | | DEFINED | 7,11 | 1058 | 0 | 120 |
| NASDAQ STOCK MARKET | COM | 631103108 | 15 | 300 | SH | | DEFINED | 16,24 | 300 | 0 | 0 |
| NASDAQ STOCK MARKET | COM | 631103108 | 260 | 5260 | SH | | DEFINED | 7,11,13 | 5260 | 0 | 0 |
| NASDAQ STOCK MARKET | COM | 631103108 | 143 | 2890 | SH | | DEFINED | 7,11,33 | 0 | 0 | 2890 |
| NASDAQ STOCK MARKET | COM | 631103108 | 190 | 3837 | SH | | DEFINED | 15,16,24 | 3837 | 0 | 0 |
| NASDAQ STOCK MARKET | COM | 631103108 | 30363 | 613516 | SH | | DEFINED | 16,24,25 | 565881 | 0 | 47635 |
| NASDAQ STOCK MARKET | COM | 631103108 | 3207 | 64800 | SH | CALL | DEFINED | 7,11 | 64800 | 0 | 0 |
| NASDAQ STOCK MARKET | COM | 631103108 | 3529 | 71300 | SH | CALL | DEFINED | 15,16,24 | 71300 | 0 | 0 |
| NASDAQ STOCK MARKET | COM | 631103108 | 6523 | 131800 | SH | CALL | DEFINED | 16,24,25 | 129800 | 0 | 2000 |
| NASDAQ STOCK MARKET | COM | 631103108 | 2311 | 46700 | SH | PUT | DEFINED | 15,16,24 | 46700 | 0 | 0 |
| NASDAQ STOCK MARKET | COM | 631103108 | 20 | 400 | SH | PUT | DEFINED | 16,24,25 | 400 | 0 | 0 |
| NASTECH PHARMACEUTIC | COM PAR $0 | 631728409 | 50 | 13092 | SH | | DEFINED | 16,24,25 | 12792 | 0 | 300 |
| NASTECH PHARMACEUTIC | COM PAR $0 | 631728409 | 55 | 14400 | SH | CALL | DEFINED | 16,24,25 | 14400 | 0 | 0 |
| NATCO GROUP INC | CL A | 63227W203 | 130 | 2400 | SH | | DEFINED | 30 | 2400 | 0 | 0 |
| NATCO GROUP INC | CL A | 63227W203 | 193 | 3570 | SH | | DEFINED | 16,24,25 | 3369 | 0 | 201 |
| NATIONAL BK GREECE S | SPONSORED | 633643408 | 3 | 200 | SH | | DEFINED | 7,11,33 | 0 | 0 | 200 |
| NATIONAL BK GREECE S | SPONSORED | 633643408 | 17385 | 1260699 | SH | | DEFINED | 16,24,25 | 1155836 | 0 | 104863 |
| NATIONAL BK GREECE S | SPONSORED | 633643408 | 1123 | 81462 | SH | | DEFINED | 16,19,24,26,27 | 81462 | 0 | 0 |
| NATIONAL CINEMEDIA I | COM | 635309107 | 456 | 18071 | SH | | DEFINED | 16,24,25 | 17686 | 0 | 385 |
| NATIONAL CITY CORP | COM | 635405103 | 3287 | 199679 | SH | | DEFINED | 7,11 | 199679 | 0 | 0 |
| NATIONAL CITY CORP | COM | 635405103 | 7259 | 441000 | SH | | DEFINED | 16,24 | 441000 | 0 | 0 |
| NATIONAL CITY CORP | COM | 635405103 | 349 | 21225 | SH | | DEFINED | 7,11,13 | 21225 | 0 | 0 |
| NATIONAL CITY CORP | COM | 635405103 | 81 | 4900 | SH | | DEFINED | 7,11,33 | 0 | 0 | 4900 |
| NATIONAL CITY CORP | COM | 635405103 | 13292 | 807521 | SH | | DEFINED | 16,24,25 | 781383 | 0 | 26138 |
| NATIONAL CITY CORP | COM | 635405103 | 274 | 16667 | SH | | DEFINED | 32,40,41 | 16667 | 0 | 0 |
| NATIONAL CITY CORP | COM | 635405103 | 7056 | 428700 | SH | | DEFINED | 16,19,24,26,27 | 428700 | 0 | 0 |
| NATIONAL CITY CORP | COM | 635405103 | 3478 | 211300 | SH | CALL | DEFINED | 7,11 | 211300 | 0 | 0 |
| NATIONAL CITY CORP | COM | 635405103 | 8169 | 496300 | SH | CALL | DEFINED | 15,16,24 | 496300 | 0 | 0 |
| NATIONAL CITY CORP | COM | 635405103 | 3773 | 229200 | SH | PUT | DEFINED | 15,16,24 | 229200 | 0 | 0 |
| NATIONAL CITY CORP | COM | 635405103 | 2222 | 135000 | SH | PUT | DEFINED | 16,24,25 | 135000 | 0 | 0 |
| NATIONAL DENTEX CORP | COM | 63563H109 | 2 | 96 | SH | | DEFINED | 16,24 | 96 | 0 | 0 |
| NATIONAL DENTEX CORP | COM | 63563H109 | 174 | 10905 | SH | | DEFINED | 16,24,25 | 10905 | 0 | 0 |
| NATIONAL FINL PARTNE | COM | 63607P208 | 1536 | 33674 | SH | | DEFINED | 16,24,25 | 29511 | 0 | 4162 |
| NATIONAL FINL PARTNE | COM | 63607P208 | 653 | 14310 | SH | | DEFINED | 32,40,41 | 14310 | 0 | 0 |
| NATIONAL FUEL GAS CO | COM | 636180101 | 65 | 1400 | SH | | DEFINED | 30 | 1400 | 0 | 0 |
| NATIONAL FUEL GAS CO | COM | 636180101 | 215 | 4600 | SH | | DEFINED | 7,11 | 0 | 0 | 4600 |
| NATIONAL FUEL GAS CO | COM | 636180101 | 354 | 7575 | SH | | DEFINED | 7,11,13 | 3575 | 0 | 4000 |
| NATIONAL FUEL GAS CO | COM | 636180101 | 15204 | 325703 | SH | | DEFINED | 16,24,25 | 253345 | 0 | 72357 |
| NATIONAL GRID PLC | SPON ADR N | 636274300 | 558 | 6689 | SH | | DEFINED | 16,24,25 | 6012 | 0 | 677 |
| NATIONAL GRID PLC | SPON ADR N | 636274300 | 23558 | 282300 | SH | | DEFINED | 16,19,24,26,27 | 282300 | 0 | 0 |
| NATIONAL HEALTH INVS | COM | 63633D104 | 28 | 1000 | SH | | DEFINED | 7,11,13 | 1000 | 0 | 0 |
| NATIONAL HEALTH INVS | COM | 63633D104 | 46 | 1639 | SH | | DEFINED | 16,24,25 | 1630 | 0 | 9 |
| NATIONAL HEALTH INVS | COM | 63633D104 | 301 | 10781 | SH | | DEFINED | 32,40,41 | 10781 | 0 | 0 |
| NATIONAL INSTRS CORP | COM | 63651B102 | 31 | 933 | SH | | DEFINED | 7,11 | 688 | 0 | 245 |
| NATIONAL INSTRS CORP | COM | 63651B102 | 598 | 17939 | SH | | DEFINED | 16,24,25 | 9414 | 0 | 8525 |
| NATIONAL OILWELL VAR | COM | 637071101 | 775 | 10550 | SH | | DEFINED | 30 | 10550 | 0 | 0 |
| NATIONAL OILWELL VAR | COM | 637071101 | 5283 | 71920 | SH | | DEFINED | 7,11 | 71920 | 0 | 0 |
| NATIONAL OILWELL VAR | COM | 637071101 | 1808 | 24606 | SH | | DEFINED | 7,11,13 | 24606 | 0 | 0 |
| NATIONAL OILWELL VAR | COM | 637071101 | 556 | 7570 | SH | | DEFINED | 7,11,33 | 0 | 0 | 7570 |
| NATIONAL OILWELL VAR | COM | 637071101 | 116247 | 1582454 | SH | | DEFINED | 16,24,25 | 1321915 | 0 | 260539 |
| NATIONAL OILWELL VAR | COM | 637071101 | 1968 | 26790 | SH | | DEFINED | 32,40,41 | 26790 | 0 | 0 |
| NATIONAL OILWELL VAR | COM | 637071101 | 33020 | 449500 | SH | CALL | DEFINED | 15,16,24 | 449500 | 0 | 0 |
| NATIONAL OILWELL VAR | COM | 637071101 | 294 | 4000 | SH | CALL | DEFINED | 16,24,25 | 4000 | 0 | 0 |
| NATIONAL OILWELL VAR | COM | 637071101 | 25726 | 350200 | SH | PUT | DEFINED | 15,16,24 | 350200 | 0 | 0 |
| NATIONAL OILWELL VAR | COM | 637071101 | 206 | 2800 | SH | PUT | DEFINED | 16,24,25 | 2800 | 0 | 0 |
| NATIONAL PENN BANCSH | COM | 637138108 | 217 | 14318 | SH | | DEFINED | 16,24,25 | 14318 | 0 | 0 |
| NATIONAL RETAIL PROP | COM | 637417106 | 42 | 1800 | SH | | DEFINED | 7,11,13 | 1800 | 0 | 0 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| NATIONAL RETAIL PROP | COM | 637417106 | 2396 | 102471 | SH | DEFINED | 16,24,25 | 72233 | 0 | 30237 |
| NATIONAL RETAIL PROP | COM | 637417106 | 802 | 34296 | SH | DEFINED | 32,40,41 | 34296 | 0 | 0 |
| NATIONAL SEMICONDUCT | COM | 637640103 | 11 | 500 | SH | DEFINED | 12 | 0 | 0 | 500 |
| NATIONAL SEMICONDUCT | COM | 637640103 | 3430 | 151513 | SH | DEFINED | 7,11 | 138163 | 0 | 13350 |
| NATIONAL SEMICONDUCT | COM | 637640103 | 63 | 2800 | SH | DEFINED | 7,11,13 | 800 | 0 | 2000 |
| NATIONAL SEMICONDUCT | COM | 637640103 | 9201 | 406415 | SH | DEFINED | 16,24,25 | 352547 | 0 | 53867 |
| NATIONAL SEMICONDUCT | COM | 637640103 | 216 | 9522 | SH | DEFINED | 32,40,41 | 9522 | 0 | 0 |
| NATIONAL SEMICONDUCT | COM | 637640103 | 110 | 4870 | SH | DEFINED | 16,19,24,26,27 | 4870 | 0 | 0 |
| NATIONAL SEMICONDUCT | COM | 637640103 | 12124 | 535500 | SH | CALL DEFINED | 15,16,24 | 535500 | 0 | 0 |
| NATIONAL SEMICONDUCT | COM | 637640103 | 6124 | 270500 | SH | CALL DEFINED | 16,24,25 | 270500 | 0 | 0 |
| NATIONAL SEMICONDUCT | COM | 637640T03 | 7598 | 335600 | SH | PUT DEFINED | 15,16,24 | 335600 | 0 | 0 |
| NATIONAL SEMICONDUCT | COM | 637640103 | 5735 | 253300 | SH | PUT DEFINED | 16,24,25 | 253300 | 0 | 0 |
| NATIONWIDE FINL SVCS CL A | | 638612101 | 11 | 236 | SH | DEFINED | 7,11,13 | 236 | 0 | 0 |
| NATIONWIDE FINL SVCS CL A | | 638612101 | 898 | 19942 | SH | DEFINED | 16,24,25 | 18754 | 0 | 1188 |
| NATIONWIDE FINL SVCS CL A | | 638612101 | 30 | 675 | SH | DEFINED | 32,40,41 | 675 | 0 | 0 |
| NATIONWIDE HEALTH PP | COM | 638620104 | 63 | 2000 | SH | DEFINED | 30 | 2000 | 0 | 0 |
| NATIONWIDE HEALTH PP | COM | 638620104 | 511 | 16278 | SH | DEFINED | 7,11 | 16278 | 0 | 0 |
| NATIONWIDE HEALTH PP | COM | 638620104 | 223 | 7115 | SH | DEFINED | 7,11,13 | 7115 | 0 | 0 |
| NATIONWIDE HEALTH PP | COM | 638620104 | 2037 | 64946 | SH | DEFINED | 16,24,25 | 46772 | 0 | 18174 |
| NATIONWIDE HEALTH PP | COM | 638620104 | 21427 | 683053 | SH | DEFINED | 32,40,41 | 683053 | 0 | 0 |
| NATIONWIDE HEALTH PP PFD CV B 7 | | 638620302 | 2746 | 21094 | SH | DEFINED | 16,24 | 21094 | 0 | 0 |
| NATIONWIDE HEALTH PP PFD CV B 7 | | 638620302 | 74 | 570 | SH | DEFINED | 16,24,25 | 540 | 0 | 30 |
| NAVIGATORS GROUP INC | COM | 638904102 | 1842 | 28346 | SH | DEFINED | 16,24,25 | 28346 | 0 | 0 |
| NATURAL RESOURCE PAR COM UNIT L | | 639000103 | 32 | 1000 | SH | DEFINED | 7,11,13 | 0 | 0 | 1000 |
| NATURAL RESOURCE PAR COM UNIT L | | 639000103 | 9540 | 293905 | SH | DEFINED | 16,24,25 | 244294 | 0 | 49610 |
| NATUS MEDICAL INC DE | COM | 639050103 | 15351 | 793333 | SH | DEFINED | 16,24,25 | 607662 | 0 | 185671 |
| NAUTILUS INC | COM | 63910B102 | 9 | 1900 | SH | DEFINED | 7,11,13 | 1900 | 0 | 0 |
| NAUTILUS INC | COM | 63910B102 | 34 | 7085 | SH | DEFINED | 15,16,24 | 7085 | 0 | 0 |
| NAUTILUS INC | COM | 63910B102 | 396 | 81733 | SH | DEFINED | 16,24,25 | 75664 | 0 | 6069 |
| NAUTILUS INC | COM | 63910B102 | 300 | 61900 | SH | CALL DEFINED | 15,16,24 | 61900 | 0 | 0 |
| NAUTILUS INC | COM | 63910B102 | 389 | 80200 | SH | PUT DEFINED | 15,16,24 | 80200 | 0 | 0 |
| NAVARRE CORP | COM | 639208107 | 25 | 12000 | SH | DEFINED | 16,24,25 | 12000 | 0 | 0 |
| NAVIGANT CONSULTING | COM | 63935N107 | 15 | 1100 | SH | DEFINED | 7,11,13 | 1100 | 0 | 0 |
| NAVIGANT CONSULTING | COM | 63935N107 | 374 | 27369 | SH | DEFINED | 16,24,25 | 25769 | 0 | 1600 |
| NAVTEQ CORP | COM | 63936L100 | 1080 | 14280 | SH | DEFINED | 7,11 | 14280 | 0 | 0 |
| NAVTEQ CORP | COM | 63936L100 | 45 | 599 | SH | DEFINED | 15,16,24 | 599 | 0 | 0 |
| NAVTEQ CORP | COM | 63936L100 | 5123 | 67765 | SH | DEFINED | 16,24,25 | 64847 | 0 | 2918 |
| NAVTEQ CORP | COM | 63936L100 | 557 | 7373 | SH | DEFINED | 32,40,41 | 7373 | 0 | 0 |
| NAVTEQ CORP | COM | 63936L100 | 2188 | 28942 | SH | CALL DEFINED | 7,11 | 28942 | 0 | 0 |
| NAVTEQ CORP | COM | 63936L100 | 19081 | 252400 | SH | CALL DEFINED | 15,16,24 | 252400 | 0 | 0 |
| NAVTEQ CORP | COM | 63936L100 | 4067 | 53800 | SH | CALL DEFINED | 16,24,25 | 53800 | 0 | 0 |
| NAVTEQ CORP | COM | 63936L100 | 12406 | 164100 | SH | PUT DEFINED | 15,16,24 | 164100 | 0 | 0 |
| NAVTEQ CORP | COM | 63936L100 | 7170 | 94842 | SH | PUT DEFINED | 16,24,25 | 94842 | 0 | 0 |
| NEENAH PAPER INC | COM | 640079109 | 10 | 352 | SH | DEFINED | 7,11 | 0 | 0 | 352 |
| NEENAH PAPER INC | COM | 640079109 | 1 | 18 | SH | DEFINED | 7,11,13 | 0 | 0 | 18 |
| NEENAH PAPER INC | COM | 640079109 | 776 | 26633 | SH | DEFINED | 16,24,25 | 21363 | 0 | 5270 |
| NEKTAR THERAPEUTICS | NOTE 3.25 | 640268AH1 | 7013 | 8500000 | PRN | DEFINED | 31,45 | 8500000 | 0 | 0 |
| NEKTAR THERAPEUTICS | NOTE 3.25 | 640268AH1 | 2374 | 2878000 | PRN | DEFINED | 16,24,25 | 2878000 | 0 | 0 |
| NEKTAR THERAPEUTICS | COM | 640268108 | 108 | 16056 | SH | DEFINED | 7,11 | 16056 | 0 | 0 |
| NEKTAR THERAPEUTICS | COM | 640268108 | 162 | 24104 | SH | DEFINED | 15,16,24 | 24104 | 0 | 0 |
| NEKTAR THERAPEUTICS | COM | 640268108 | 191 | 28458 | SH | DEFINED | 16,24,25 | 23093 | 0 | 5365 |
| NEKTAR THERAPEUTICS | COM | 640268108 | 534 | 79600 | SH | CALL DEFINED | 31,45 | 79600 | 0 | 0 |
| NEKTAR THERAPEUTICS | COM | 640268108 | 699 | 104100 | SH | CALL DEFINED | 15,16,24 | 104100 | 0 | 0 |
| NEKTAR THERAPEUTICS | COM | 640268108 | 352 | 52500 | SH | CALL DEFINED | 16,24,25 | 52500 | 0 | 0 |
| NEKTAR THERAPEUTICS | COM | 640268108 | 527 | 78500 | SH | PUT DEFINED | 15,16,24 | 78500 | 0 | 0 |
| NEKTAR THERAPEUTICS | COM | 640268108 | 17 | 2500 | SH | PUT DEFINED | 16,24,25 | 2500 | 0 | 0 |
| NELNET INC | CL A | 64031N108 | 50 | 3948 | SH | DEFINED | 16,24,25 | 3948 | 0 | 0 |
| NELNET INC | CL A | 64031N108 | 216 | 16985 | SH | DEFINED | 32,40,41 | 16985 | 0 | 0 |
| NEOGEN CORP | COM | 640491106 | 400 | 15084 | SH | DEFINED | 16,24,25 | 14425 | 0 | 659 |
| NEOPHARM INC | COM | 640919106 | 1 | 1210 | SH | DEFINED | 16,24,25 | 1210 | 0 | 0 |
| NEOPHARM INC | COM | 640919106 | 7 | 12500 | SH | CALL DEFINED | 15,16,24 | 12500 | 0 | 0 |
| NEOPHARM INC | COM | 640919106 | 1 | 1200 | SH | PUT DEFINED | 15,16,24 | 1200 | 0 | 0 |
| NET 1 UEPS TECHNOLOG | COM NEW | 64107N206 | 161 | 5485 | SH | DEFINED | 30 | 5485 | 0 | 0 |
| NET 1 UEPS TECHNOLOG | COM NEW | 64107N206 | 1998 | 68046 | SH | DEFINED | 16,24,25 | 66646 | 0 | 1400 |
| NET SERVCOS DE COMU SPONSD ADR | | 64109T201 | 54 | 4511 | SH | DEFINED | 16,24,25 | 4511 | 0 | 0 |
| NET SERVCOS DE COMU SPONSD ADR | | 64109T201 | 3172 | 264772 | SH | DEFINED | 32,40,41 | 264772 | 0 | 0 |
| NET SERVCOS DE COMU SPONSD ADR | | 64109T201 | 2 | 200 | SH | DEFINED | 16,19,24,26,27 | 200 | 0 | 0 |
| NETFLIX INC | COM | 64110L106 | 4167 | 156535 | SH | DEFINED | 7,11 | 106157 | 0 | 50378 |
| NETFLIX INC | COM | 64110L106 | 3119 | 117173 | SH | DEFINED | 15,16,24 | 117173 | 0 | 0 |
| NETFLIX INC | COM | 64110L106 | 3334 | 125226 | SH | DEFINED | 16,24,25 | 124726 | 0 | 500 |
| NETFLIX INC | COM | 64110L106 | 2510 | 94300 | SH | CALL DEFINED | 15,16,24 | 94300 | 0 | 0 |
| NETFLIX INC | COM | 64110L106 | 2718 | 102089 | SH | CALL DEFINED | 16,24,25 | 102089 | 0 | 0 |
| NETFLIX INC | COM | 64110L106 | 2635 | 98989 | SH | PUT DEFINED | 7,11 | 98989 | 0 | 0 |
| NETFLIX INC | COM | 64110L106 | 8276 | 310900 | SH | PUT DEFINED | 15,16,24 | 310900 | 0 | 0 |
| NETFLIX INC | COM | 64110L106 | 157 | 5900 | SH | PUT DEFINED | 16,24,25 | 5900 | 0 | 0 |
| NETEASE COM INC | SPONSORED | 64110W102 | 1708 | 90110 | SH | DEFINED | 7,11 | 90110 | 0 | 0 |
| NETEASE COM INC | SPONSORED | 64110W102 | 1780 | 93859 | SH | DEFINED | 16,24,25 | 93859 | 0 | 0 |
| NETEASE COM INC | SPONSORED | 64110W102 | 344 | 18164 | SH | DEFINED | 16,24,25 | 15639 | 0 | 2525 |
| NETEASE COM INC | SPONSORED | 64110W102 | 10519 | 554800 | SH | CALL DEFINED | 15,16,24 | 554800 | 0 | 0 |
| NETEASE COM INC | SPONSORED | 64110W102 | 3781 | 199400 | SH | PUT DEFINED | 15,16,24 | 199400 | 0 | 0 |
| NETGEAR INC | COM | 64111Q104 | 849 | 23801 | SH | DEFINED | 16,24,25 | 21896 | 0 | 1905 |
| NETGEAR INC | COM | 64111Q104 | 2518 | 70600 | SH | CALL DEFINED | 15,16,24 | 70600 | 0 | 0 |
| NETGEAR INC | COM | 64111Q104 | 1441 | 40400 | SH | PUT DEFINED | 15,16,24 | 40400 | 0 | 0 |
| NETLOGIC MICROSYSTEM | COM | 64118B100 | 158 | 4937 | SH | DEFINED | 30 | 4937 | 0 | 0 |
| NETLOGIC MICROSYSTEM | COM | 64118B100 | 1563 | 48537 | SH | DEFINED | 16,24,25 | 48537 | 0 | 0 |
| NETLOGIC MICROSYSTEM | COM | 64118B100 | 6984 | 216900 | SH | CALL DEFINED | 15,16,24 | 216900 | 0 | 0 |
| NETLOGIC MICROSYSTEM | COM | 64118B100 | 7000 | 217400 | SH | PUT DEFINED | 15,16,24 | 217400 | 0 | 0 |
| NETWORK APPLIANCE IN | COM | 64120L104 | 2068 | 82855 | SH | DEFINED | 7,11 | 82855 | 0 | 0 |
| NETWORK APPLIANCE IN | COM | 64120L104 | 849 | 34000 | SH | DEFINED | 16,24 | 34000 | 0 | 0 |
| NETWORK APPLIANCE IN | COM | 64120L104 | 202 | 8100 | SH | DEFINED | 7,11,13 | 7750 | 0 | 350 |
| NETWORK APPLIANCE IN | COM | 64120L104 | 12 | 500 | SH | DEFINED | 7,11,13 | 0 | 0 | 500 |
| NETWORK APPLIANCE IN | COM | 64120L104 | 3428 | 137340 | SH | DEFINED | 16,24,25 | 125588 | 0 | 11752 |
| NETWORK APPLIANCE IN | COM | 64120L104 | 995 | 39857 | SH | DEFINED | 32,40,41 | 39857 | 0 | 0 |
| NETWORK APPLIANCE IN | COM | 64120L104 | 7363 | 295000 | SH | CALL DEFINED | 15,16,24 | 295000 | 0 | 0 |
| NETWORK APPLIANCE IN | COM | 64120L104 | 15470 | 619800 | SH | CALL DEFINED | 16,24,25 | 619800 | 0 | 0 |
| NETWORK APPLIANCE IN | COM | 64120L104 | 3697 | 148100 | SH | PUT DEFINED | 15,16,24 | 148100 | 0 | 0 |
| NETWORK APPLIANCE IN | COM | 64120L104 | 1757 | 70400 | SH | PUT DEFINED | 16,24,25 | 70400 | 0 | 0 |
| NEUBERGER BERMAN NY | COM | 64124K102 | 261 | 20855 | SH | DEFINED | 16,24,25 | 20522 | 0 | 333 |
| NEUBERGER BERMAN INT | COM | 64124P101 | 184 | 14293 | SH | DEFINED | 16,24,25 | 13693 | 0 | 600 |
| NEUROCRINE BIOSCIENC | COM | 64125C109 | 184 | 40488 | SH | DEFINED | 16,24,25 | 40488 | 0 | 0 |
| NEUROCRINE BIOSCIENC | COM | 64125C109 | 1019 | 224400 | SH | CALL DEFINED | 15,16,24 | 224400 | 0 | 0 |
| NEUROCRINE BIOSCIENC | COM | 64125C109 | 659 | 145200 | SH | PUT DEFINED | 15,16,24 | 145200 | 0 | 0 |
| NEUROCRINE BIOSCIENC | COM | 64125C109 | 73 | 16000 | SH | PUT DEFINED | 16,24,25 | 16000 | 0 | 0 |
| NEUROCHEM INC | COM | 64125K101 | 25 | 11009 | SH | DEFINED | 16,24,25 | 11009 | 0 | 0 |
| NEUBERGER BERMAN RLT | COM | 64126G109 | 2188 | 138303 | SH | DEFINED | 16,24 | 138303 | 0 | 0 |
| NEUBERGER BERMAN RLT | COM | 64126G109 | 6678 | 422106 | SH | DEFINED | 16,24,25 | 393116 | 0 | 28989 |
| NEUBERGER BERMAN INC SHS | | 64126L108 | 1336 | 119951 | SH | DEFINED | 16,24,25 | 108724 | 0 | 11227 |
| NEUSTAR INC | CL A | 64126X201 | 26 | 910 | SH | DEFINED | 7,11 | 910 | 0 | 0 |
| NEUSTAR INC | CL A | 64126X201 | 35 | 1205 | SH | DEFINED | 7,11,13 | 0 | 0 | 1205 |
| NEUSTAR INC | CL A | 64126X201 | 225 | 7857 | SH | DEFINED | 16,24,25 | 6482 | 0 | 1375 |
| NEUSTAR INC | CL A | 64126X201 | 11 | 400 | SH | CALL DEFINED | 15,16,24 | 400 | 0 | 0 |
| NEUSTAR INC | CL A | 64126X201 | 49 | 1700 | SH | PUT DEFINED | 15,16,24 | 1700 | 0 | 0 |
| NEUBERGER BERMAN DIV | COM | 64127J102 | 456 | 26510 | SH | DEFINED | 16,24,25 | 24391 | 0 | 2119 |
| NEURALSTEM INC | COM | 64127R302 | 56 | 15000 | SH | DEFINED | 16,24,25 | 9000 | 0 | 6000 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| NEW AMER HIGH INCOME | COM | 641876107 | 55 | 32297 | SH | DEFINED | 16,24,25 | 24297 | 0 | 8000 |
| NEUBERGER BERMAN RE | COM | 64190A103 | 1318 | 114525 | SH | DEFINED | 16,24,25 | 110070 | 0 | 4454 |
| NEW FRONTIER MEDIA I | COM | 644398109 | 188 | 34200 | SH | DEFINED | 16,24,25 | 34200 | 0 | 0 |
| NEW GERMANY FD INC | COM | 644465106 | 11979 | 685300 | SH | DEFINED | 16,24 | 685300 | 0 | 0 |
| NEW GERMANY FD INC | COM | 644465106 | 1040 | 59514 | SH | DEFINED | 16,24,25 | 32118 | 0 | 27395 |
| NEW GOLD INC CDA | COM | 644535106 | 32 | 6265 | SH | DEFINED | 16,24,25 | 6110 | 0 | 155 |
| NEW GOLD INC CDA | COM | 644535106 | 390 | 76584 | SH | DEFINED | 4,6,7,11 | 76584 | 0 | 0 |
| NEW JERSEY RES | COM | 646025106 | 507 | 10145 | SH | DEFINED | 7,11,13 | 10145 | 0 | 0 |
| NEW JERSEY RES | COM | 646025106 | 3996 | 79891 | SH | DEFINED | 16,24,25 | 60974 | 0 | 18916 |
| NEW ORIENTAL ED & TE SPON ADR | | 647581107 | 113 | 1400 | SH | DEFINED | 30 | 1400 | 0 | 0 |
| NEW ORIENTAL ED & TE SPON ADR | | 647581107 | 784 | 9731 | SH | DEFINED | 15,16,24 | 9731 | 0 | 0 |
| NEW ORIENTAL ED & TE SPON ADR | | 647581107 | 2582 | 32036 | SH | DEFINED | 16,24,25 | 22765 | 0 | 9271 |
| NEW ORIENTAL ED & TE SPON ADR | | 647581107 | 18221 | 226100 | SH | CALL DEFINED | 15,16,24 | 226100 | 0 | 0 |
| NEW ORIENTAL ED & TE SPON ADR | | 647581107 | 7833 | 97200 | SH | PUT DEFINED | 15,16,24 | 97200 | 0 | 0 |
| NEW YORK & CO INC | COM | 649295102 | 292 | 45800 | SH | DEFINED | 7,11,13 | 45800 | 0 | 0 |
| NEW YORK & CO INC | COM | 649295102 | 382 | 59823 | SH | DEFINED | 16,24,25 | 59823 | 0 | 0 |
| NEW YORK CMNTY BANCO | COM | 649445103 | 4332 | 246396 | SH | DEFINED | 7,11 | 246396 | 0 | 0 |
| NEW YORK CMNTY BANCO | COM | 649445103 | 21337 | 1213700 | SH | DEFINED | 16,24 | 1213700 | 0 | 0 |
| NEW YORK CMNTY BANCO | COM | 649445103 | 148 | 8421 | SH | DEFINED | 7,11,13 | 0 | 0 | 8421 |
| NEW YORK CMNTY BANCO | COM | 649445103 | 42554 | 2420566 | SH | DEFINED | 16,24,25 | 1992985 | 0 | 427581 |
| NEW YORK CMNTY BANCO | COM | 649445103 | 140 | 7984 | SH | DEFINED | 32,40,41 | 7984 | 0 | 0 |
| NEW YORK CMNTY BANCO | COM | 649445103 | 4799 | 273000 | SH | CALL DEFINED | 7,11 | 273000 | 0 | 0 |
| NEW YORK CMNTY BANCO | COM | 649445103 | 1301 | 74000 | SH | CALL DEFINED | 15,16,24 | 74000 | 0 | 0 |
| NEW YORK CMNTY BANCO | COM | 649445103 | 3767 | 214296 | SH | CALL DEFINED | 16,24,25 | 214296 | 0 | 0 |
| NEW YORK CMNTY BANCO | COM | 649445103 | 3727 | 211996 | SH | PUT DEFINED | 7,11 | 211996 | 0 | 0 |
| NEW YORK CMNTY BANCO | COM | 649445103 | 476 | 27110 | SH | PUT DEFINED | 15,16,24 | 27100 | 0 | 0 |
| NEW YORK CMNTY BANCO | COM | 649445103 | 88 | 5000 | SH | PUT DEFINED | 16,24,25 | 5000 | 0 | 0 |
| NEW YORK TIMES CO | CL A | 650111107 | 194 | 11042 | SH | DEFINED | 7,11 | 11042 | 0 | 0 |
| NEW YORK TIMES CO | CL A | 650111107 | 9 | 500 | SH | DEFINED | 7,11 | 500 | 0 | 0 |
| NEW YORK TIMES CO | CL A | 650111107 | 15174 | 865627 | SH | DEFINED | 16,24,25 | 828259 | 0 | 37368 |
| NEW YORK TIMES CO | CL A | 650111107 | 7 | 373 | SH | DEFINED | 32,40,41 | 373 | 0 | 0 |
| NEWALLIANCE BANCSHAR | COM | 650203102 | 260 | 22550 | SH | DEFINED | 16,24,25 | 12350 | 0 | 10200 |
| NEWBRIDGE BANCORP | COM | 65080T102 | 1014 | 94000 | SH | DEFINED | 16,24,25 | 83988 | 0 | 10012 |
| NEWCASTLE INVT CORP | COM | 65105M108 | 267 | 20600 | SH | DEFINED | 14,31 | 20600 | 0 | 0 |
| NEWCASTLE INVT CORP | COM | 65105M108 | 2467 | 190360 | SH | DEFINED | 16,24,25 | 172374 | 0 | 17985 |
| NEWCASTLE INVT CORP | COM | 65105M108 | 4251 | 328000 | SH | DEFINED | 16,19,24,26,27 | 328000 | 0 | 0 |
| NEWELL RUBBERMAID IN | COM | 651229106 | 2968 | 114664 | SH | DEFINED | 3,9 | 0 | 0 | 114664 |
| NEWELL RUBBERMAID IN | COM | 651229106 | 2816 | 108800 | SH | DEFINED | 7,11 | 22624 | 0 | 86176 |
| NEWELL RUBBERMAID IN | COM | 651229106 | 365 | 14116 | SH | DEFINED | 7,11,13 | 14116 | 0 | 0 |
| NEWELL RUBBERMAID IN | COM | 651229106 | 14 | 555 | SH | DEFINED | 7,11,13 | 0 | 0 | 555 |
| NEWELL RUBBERMAID IN | COM | 651229106 | 237 | 9153 | SH | DEFINED | 15,16,24 | 9153 | 0 | 0 |
| NEWELL RUBBERMAID IN | COM | 651229106 | 23473 | 906988 | SH | DEFINED | 16,24,25 | 795055 | 0 | 111933 |
| NEWELL RUBBERMAID IN | COM | 651229106 | 15437 | 596480 | SH | DEFINED | 32,40,41 | 596480 | 0 | 0 |
| NEWELL RUBBERMAID IN | COM | 651229106 | 7764 | 300000 | SH | CALL DEFINED | 7,11 | 300000 | 0 | 0 |
| NEWELL RUBBERMAID IN | COM | 651229106 | 16 | 600 | SH | CALL DEFINED | 15,16,24 | 600 | 0 | 0 |
| NEWELL RUBBERMAID IN | COM | 651229106 | 23 | 900 | SH | PUT DEFINED | 15,16,24 | 900 | 0 | 0 |
| NEWFIELD EXPL CO | COM | 651290108 | 327 | 6213 | SH | DEFINED | 7,11 | 6213 | 0 | 0 |
| NEWFIELD EXPL CO | COM | 651290108 | 46 | 875 | SH | DEFINED | 7,11,13 | 875 | 0 | 0 |
| NEWFIELD EXPL CO | COM | 651290108 | 2664 | 50558 | SH | DEFINED | 16,24,25 | 46805 | 0 | 3753 |
| NEWFIELD EXPL CO | COM | 651290108 | 211 | 4002 | SH | DEFINED | 32,40,41 | 4002 | 0 | 0 |
| NEWFIELD EXPL CO | COM | 651290108 | 23473 | 445400 | SH | CALL DEFINED | 15,16,24 | 445400 | 0 | 0 |
| NEWFIELD EXPL CO | COM | 651290108 | 2108 | 40000 | SH | CALL DEFINED | 16,24,25 | 40000 | 0 | 0 |
| NEWFIELD EXPL CO | COM | 651290108 | 5175 | 98200 | SH | PUT DEFINED | 15,16,24 | 98200 | 0 | 0 |
| NEWFIELD EXPL CO | COM | 651290108 | 791 | 15000 | SH | PUT DEFINED | 16,24,25 | 15000 | 0 | 0 |
| NEWMARKET CORP | COM | 651587107 | 5 | 96 | SH | DEFINED | 7,11 | 0 | 0 | 96 |
| NEWMARKET CORP | COM | 651587107 | 445 | 7997 | SH | DEFINED | 16,24,25 | 7591 | 0 | 406 |
| NEWMARKET CORP | COM | 651587107 | 4232 | 76000 | SH | CALL DEFINED | 7,11 | 76000 | 0 | 0 |
| NEWMONT MINING CORP | COM | 651639106 | 708 | 14500 | SH | DEFINED | 30 | 14500 | 0 | 0 |
| NEWMONT MINING CORP | COM | 651639106 | 1221 | 25000 | SH | DEFINED | 42 | 25000 | 0 | 0 |
| NEWMONT MINING CORP | COM | 651639106 | 25983 | 532121 | SH | DEFINED | 7,11 | 530505 | 0 | 1616 |
| NEWMONT MINING CORP | COM | 651639106 | 9 | 175 | SH | DEFINED | 7,11,13 | 175 | 0 | 0 |
| NEWMONT MINING CORP | COM | 651639106 | 73 | 1485 | SH | DEFINED | 7,11,13 | 0 | 0 | 1485 |
| NEWMONT MINING CORP | COM | 651639106 | 104398 | 2137997 | SH | DEFINED | 16,24,25 | 1824889 | 0 | 313107 |
| NEWMONT MINING CORP | COM | 651639106 | 2659 | 54445 | SH | DEFINED | 32,40,41 | 54445 | 0 | 0 |
| NEWMONT MINING CORP | COM | 651639106 | 384 | 7854 | SH | DEFINED | 5-7,11,43,44 | 0 | 7854 | 0 |
| NEWMONT MINING CORP | COM | 651639106 | 5656 | 115824 | SH | DEFINED | 16,19,24,26,27 | 115824 | 0 | 0 |
| NEWMONT MINING CORP | COM | 651639106 | 243173 | 4980000 | SH | CALL DEFINED | 7,11 | 4980000 | 0 | 0 |
| NEWMONT MINING CORP | COM | 651639106 | 17589 | 360200 | SH | CALL DEFINED | 15,16,24 | 360200 | 0 | 0 |
| NEWMONT MINING CORP | COM | 651639106 | 1304 | 26700 | SH | CALL DEFINED | 16,24,25 | 26700 | 0 | 0 |
| NEWMONT MINING CORP | COM | 651639106 | 16485 | 337600 | SH | PUT DEFINED | 15,16,24 | 337600 | 0 | 0 |
| NEWMONT MINING CORP | COM | 651639106 | 9712 | 198900 | SH | PUT DEFINED | 16,24,25 | 198900 | 0 | 0 |
| NEWPORT CORP | COM | 651824104 | 401 | 31341 | SH | DEFINED | 16,24,25 | 27515 | 0 | 3826 |
| NEWS CORP | CL A | 65248E104 | 9084 | 443344 | SH | DEFINED | 7,11 | 443310 | 0 | 34 |
| NEWS CORP | CL A | 65248E104 | 51 | 2500 | SH | DEFINED | 7,11,13 | 2500 | 0 | 0 |
| NEWS CORP | CL A | 65248E104 | 57 | 2775 | SH | DEFINED | 7,11,13 | 0 | 0 | 2775 |
| NEWS CORP | CL A | 65248E104 | 50554 | 2467236 | SH | DEFINED | 16,24,25 | 2320232 | 0 | 147003 |
| NEWS CORP | CL A | 65248E104 | 1803 | 87971 | SH | DEFINED | 32,40,41 | 87971 | 0 | 0 |
| NEWS CORP | CL A | 65248E104 | 57 | 2780 | SH | DEFINED | 5-7,11,43,44 | 0 | 2780 | 0 |
| NEWS CORP | CL A | 65248E104 | 54 | 2619 | SH | DEFINED | 16,19,24,26,27 | 2619 | 0 | 0 |
| NEWS CORP | CL A | 65248E104 | 2262 | 110400 | SH | CALL DEFINED | 7,11 | 110400 | 0 | 0 |
| NEWS CORP | CL A | 65248E104 | 561 | 27400 | SH | CALL DEFINED | 15,16,24 | 27400 | 0 | 0 |
| NEWS CORP | CL A | 65248E104 | 8124 | 396500 | SH | CALL DEFINED | 16,24,25 | 396500 | 0 | 0 |
| NEWS CORP | CL A | 65248E104 | 1094 | 53400 | SH | PUT DEFINED | 15,16,24 | 53400 | 0 | 0 |
| NEWS CORP | CL A | 65248E104 | 3520 | 171800 | SH | PUT DEFINED | 16,24,25 | 171800 | 0 | 0 |
| NEWS CORP | CL B | 65248E203 | 460 | 21654 | SH | DEFINED | 3,9 | 0 | 0 | 21654 |
| NEWS CORP | CL B | 65248E203 | 5125 | 241180 | SH | DEFINED | 7,11 | 239780 | 0 | 1400 |
| NEWS CORP | CL B | 65248E203 | 61 | 2885 | SH | DEFINED | 7,11,13 | 0 | 0 | 2885 |
| NEWS CORP | CL B | 65248E203 | 1678 | 78988 | SH | DEFINED | 15,16,24 | 78988 | 0 | 0 |
| NEWS CORP | CL B | 65248E203 | 52358 | 2463885 | SH | DEFINED | 16,24,25 | 2195525 | 0 | 268359 |
| NEWS CORP | CL B | 65248E203 | 274 | 12886 | SH | DEFINED | 32,40,41 | 12886 | 0 | 0 |
| NEWS CORP | CL B | 65248E203 | 16 | 773 | SH | DEFINED | 16,19,24,26,27 | 773 | 0 | 0 |
| NEWS CORP | CL B | 65248E203 | 34361 | 1617000 | SH | CALL DEFINED | 7,11 | 1617000 | 0 | 0 |
| NEWS CORP | CL B | 65248E203 | 1233 | 58000 | SH | CALL DEFINED | 15,16,24 | 58000 | 0 | 0 |
| NEWS CORP | CL B | 65248E203 | 325 | 15300 | SH | CALL DEFINED | 16,24,25 | 15300 | 0 | 0 |
| NEWS CORP | CL B | 65248E203 | 34361 | 1617000 | SH | PUT DEFINED | 7,11 | 1617000 | 0 | 0 |
| NEWS CORP | CL B | 65248E203 | 2514 | 118300 | SH | PUT DEFINED | 16,24,25 | 118300 | 0 | 0 |
| NEWSTAR FINANCIAL IN | COM | 65251F105 | 262 | 31588 | SH | DEFINED | 16,24,25 | 27863 | 0 | 3725 |
| NEXTEL COMMUNICATION | NOTE 5.25 | 65332VAY9 | 248 | 251000 | PRN | DEFINED | 16,24,25 | 51000 | 0 | 200000 |
| NEXEN INC | COM | 65334H102 | 2874 | 89046 | SH | DEFINED | 16,24,25 | 63388 | 0 | 25658 |
| NEXEN INC | COM | 65334H102 | 462 | 14322 | SH | DEFINED | 32,40,41 | 14322 | 0 | 0 |
| NEXEN INC | COM | 65334H102 | 2679 | 83004 | SH | DEFINED | 4,6,7,11 | 83004 | 0 | 0 |
| NFJ DIVID INT & PREM | COM SHS | 65337H109 | 7 | 319 | SH | DEFINED | 7,11,13 | 0 | 0 | 319 |
| NFJ DIVID INT & PREM | COM SHS | 65337H109 | 27524 | 1182828 | SH | DEFINED | 16,24,25 | 1036619 | 0 | 146209 |
| NEXTWAVE WIRELESS IN | COM | 65337Y102 | 359 | 66666 | SH | DEFINED | 31,45 | 66666 | 0 | 0 |
| NICE SYS LTD | SPONSORED | 653656108 | 141 | 4100 | SH | DEFINED | 30 | 4100 | 0 | 0 |
| NICE SYS LTD | SPONSORED | 653656108 | 1660 | 48357 | SH | DEFINED | 16,24,25 | 43550 | 0 | 4807 |
| NICHOLAS-APPLGT INTL | COM | 65370C108 | 1421 | 66102 | SH | DEFINED | 16,24,25 | 43946 | 0 | 22155 |
| NICHOLAS-APPLEGATE C | COM | 65370F101 | 61 | 5000 | SH | DEFINED | 7,11,13 | 5000 | 0 | 0 |
| NICHOLAS-APPLEGATE C | COM | 65370F101 | 2325 | 190556 | SH | DEFINED | 16,24,25 | 164942 | 0 | 25613 |
| NICHOLAS-APPLEGATE C | COM | 65370J109 | 5652 | 459910 | SH | DEFINED | 16,24,25 | 419735 | 0 | 40175 |
| NICHOLAS APPLEGATE E | COM | 65370K100 | 8 | 372 | SH | DEFINED | 16,24 | 372 | 0 | 0 |
| NICHOLAS APPLEGATE E | COM | 65370K100 | 3646 | 163294 | SH | DEFINED | 16,24,25 | 152253 | 0 | 11041 |
| NICHOLAS APPLEGATE G | COM | 65370L108 | 589 | 28550 | SH | DEFINED | 16,24,25 | 25500 | 0 | 3050 |
| NICOR INC | COM | 654086107 | 82 | 1933 | SH | DEFINED | 7,11 | 1833 | 0 | 100 |

```
NICOR INC                    COM          654086107      13      300 SH    DEFINED                        7,11,13        300        0        0
NICOR INC                    COM          654086107    2029    47916 SH    DEFINED                      16,24,25      35799        0    12116
NICOR INC                    COM          654086107       2       41 SH    DEFINED                      32,40,41         41        0        0
NIKE INC                     CL B         654106103     440     6850 SH    DEFINED                            12          0        0     6850
NIKE INC                     CL B         654106103    6732   104791 SH    DEFINED                           3,9          0        0   104791
NIKE INC                     CL B         654106103    9023   140450 SH    DEFINED                          7,11      50105        0    90345
NIKE INC                     CL B         654106103     538     8373 SH    DEFINED                       7,11,13       8108        0      265
NIKE INC                     CL B         654106103    4643    72271 SH    DEFINED                      15,16,24      72271        0        0
NIKE INC                     CL B         654106103   42470   661107 SH    DEFINED                      16,24,25     574138        0    86969
NIKE INC                     CL B         654106103    1737    27045 SH    DEFINED                      32,40,41      27045        0        0
NIKE INC                     CL B         654106103      91     1420 SH    DEFINED                 5-7,11,43,44          0     1420        0
NIKE INC                     CL B         654106103     653    10163 SH    DEFINED          16,19,24,26,27      10163        0        0
NIKE INC                     CL B         654106L13    2467    38400 SH    CALL DEFINED                   7,11      38400        0        0
NIKE INC                     CL B         654106L13   19914   310000 SH    CALL DEFINED               15,16,24     310000        0        0
NIKE INC                     CL B         654106103    2749    42800 SH    CALL DEFINED               16,24,25      42800        0        0
NIKE INC                     CL B         654106103   27771   432300 SH    PUT  DEFINED               15,16,24     432300        0        0
NIKE INC                     CL B         654106103    3315    51600 SH    PUT  DEFINED               16,24,25      51600        0        0
99 CENTS ONLY STORES COM                  654400106     650    81646 SH    DEFINED                      16,24,25      64546        0    17100
NIPPON TELEG & TEL C SPONSORED            654624105     352    14280 SH    DEFINED                            30      14280        0        0
NIPPON TELEG & TEL C SPONSORED            654624105       8      305 SH    DEFINED                       7,11,33          0        0      305
NIPPON TELEG & TEL C SPONSORED            654624105    2197    89110 SH    DEFINED                      16,24,25      82130        0     6980
NISOURCE INC                 COM          65473P105      50     2627 SH    DEFINED                           3,9          0        0     2627
NISOURCE INC                 COM          65473P105    1513    80097 SH    DEFINED                          7,11      73597        0     6500
NISOURCE INC                 COM          65473P105      54     2850 SH    DEFINED                       7,11,13       2850        0        0
NISOURCE INC                 COM          65473P105    4709   249272 SH    DEFINED                      16,24,25     216022        0    33250
NISOURCE INC                 COM          65473P105     148     7861 SH    DEFINED                      32,40,41       7861        0        0
NISSAN MOTORS                SPONSORED    654744408     514    23661 SH    DEFINED                       7,11,13      23661        0        0
NISSAN MOTORS                SPONSORED    654744408     974    44820 SH    DEFINED                      16,24,25      42812        0     2008
NISSAN MOTORS                SPONSORED    654744408      20      920 SH    DEFINED                 5-7,11,43,44          0      920        0
NOKIA CORP                   SPONSORED    654902204    2451    63850 SH    DEFINED                          7,11          0        0    63850
NOKIA CORP                   SPONSORED    654902204    1407    36655 SH    DEFINED                       7,11,13      36305        0      350
NOKIA CORP                   SPONSORED    654902204      75     1950 SH    DEFINED                       7,11,33          0        0     1950
NOKIA CORP                   SPONSORED    654902204   92659  2413631 SH    DEFINED                      16,24,25    1956437        0   457194
NOKIA CORP                   SPONSORED    654902204   14131   368100 SH    DEFINED                      32,40,41     368100        0        0
NOKIA CORP                   SPONSORED    654902204    7486   195000 SH    DEFINED          16,19,24,26,27     195000        0        0
NOKIA CORP                   SPONSORED    654902204   29141   759088 SH    DEFINED  2,6,7,10-11,18,20,21,28     759088        0        0
NOKIA CORP                   SPONSORED    654902204   13817   359900 SH    CALL DEFINED               15,16,24     359900        0        0
NOKIA CORP                   SPONSORED    654902204    3213    83700 SH    CALL DEFINED               16,24,25      83700        0        0
NOKIA CORP                   SPONSORED    654902204   11978   312000 SH    PUT  DEFINED               15,16,24     312000        0        0
NOKIA CORP                   SPONSORED    654902204      15      400 SH    PUT  DEFINED               16,24,25        400        0        0
NOBLE ENERGY INC             COM          655044105    1130    14214 SH    DEFINED                          7,11      14214        0        0
NOBLE ENERGY INC             COM          655044105     486     6115 SH    DEFINED                       7,11,13       6115        0        0
NOBLE ENERGY INC             COM          655044105    9543   120008 SH    DEFINED                      16,24,25     101657        0    18351
NOBLE ENERGY INC             COM          655044105     737     9271 SH    DEFINED                      32,40,41       9271        0        0
NOBLE ENERGY INC             COM          655044105      28      350 SH    DEFINED                 5-7,11,43,44          0      350        0
NOBLE ENERGY INC             COM          655044105    2282    28700 SH    CALL DEFINED               16,24,25      28700        0        0
NOBLE ENERGY INC             COM          655044105     215     2700 SH    CALL DEFINED               16,24,25       2700        0        0
NOBLE ENERGY INC             COM          655044105    1050    13200 SH    PUT  DEFINED               15,16,24      13200        0        0
NOBLE ENERGY INC             COM          655044105     374     4700 SH    PUT  DEFINED               16,24,25       4700        0        0
NOMURA HLDGS INC             SPONSORED    65535H208     104     6207 SH    DEFINED                          7,11          0        0     6207
NOMURA HLDGS INC             SPONSORED    65535H208       7      420 SH    DEFINED                       7,11,33          0        0      420
NOMURA HLDGS INC             SPONSORED    65535H208    2229   133103 SH    DEFINED                      16,24,25     129665        0     3438
NOMURA HLDGS INC             SPONSORED    65535H208     613    36600 SH    DEFINED  2,6,7,10-11,18,20,21,28      36600        0        0
NORAM ENERGY CORP            SDCV  6.00   65419AC3      85    87050 PRN    DEFINED                      16,24,25      80000        0     7050
NORDSON CORP                 COM          655663102     101     1750 SH    DEFINED                            30       1750        0        0
NORDSON CORP                 COM          655663102      20      350 SH    DEFINED                         16,24        350        0        0
NORDSON CORP                 COM          655663102    1902    32811 SH    DEFINED                      16,24,25      30888        0     1923
NORDSTROM INC                COM          655664100    1186    32303 SH    DEFINED                          7,11      26303        0     6000
NORDSTROM INC                COM          655664100      44     1207 SH    DEFINED                       7,11,13       1207        0        0
NORDSTROM INC                COM          655664100      37     1000 SH    DEFINED                       7,11,33          0        0     1000
NORDSTROM INC                COM          655664100    7992   217601 SH    DEFINED                      15,16,24     217601        0        0
NORDSTROM INC                COM          655664100   21493   585149 SH    DEFINED                      16,24,25     492801        0    92348
NORDSTROM INC                COM          655664100    2737    74516 SH    DEFINED                      32,40,41      74516        0        0
NORDSTROM INC                COM          655664100    9432   256800 SH    CALL DEFINED               15,16,24     256800        0        0
NORDSTROM INC                COM          655664100    4797   130600 SH    CALL DEFINED               16,24,25     130600        0        0
NORDSTROM INC                COM          655664100    8753   238300 SH    PUT  DEFINED               15,16,24     238300        0        0
NORDSTROM INC                COM          655664100    4488   122200 SH    PUT  DEFINED               16,24,25     122200        0        0
NORFOLK SOUTHERN COR COM                  655844108     832    16500 SH    DEFINED                            30      16500        0        0
NORFOLK SOUTHERN COR COM                  655844108    6318   125264 SH    DEFINED                          7,11     105296        0    19968
NORFOLK SOUTHERN COR COM                  655844108     775    15369 SH    DEFINED                       7,11,13       8024        0     7345
NORFOLK SOUTHERN COR COM                  655844108      18      364 SH    DEFINED                       7,11,33          0        0      364
NORFOLK SOUTHERN COR COM                  655844108    3253    64496 SH    DEFINED                      15,16,24      64496        0        0
NORFOLK SOUTHERN COR COM                  655844108   24210   479972 SH    DEFINED                      16,24,25     379974        0    99998
NORFOLK SOUTHERN COR COM                  655844108     648    12846 SH    DEFINED                      32,40,41      12846        0        0
NORFOLK SOUTHERN COR COM                  655844108     520    10300 SH    DEFINED          16,19,24,26,27      10300        0        0
NORFOLK SOUTHERN COR COM                  655844108   30516   605000 SH    CALL DEFINED               15,16,24     605000        0        0
NORFOLK SOUTHERN COR COM                  655844T08   31601   626500 SH    CALL DEFINED               16,24,25     626500        0        0
NORFOLK SOUTHERN COR COM                  655844108   24322   482200 SH    PUT  DEFINED               15,16,24     482200        0        0
NORFOLK SOUTHERN COR COM                  655844108    9937   197000 SH    PUT  DEFINED               16,24,25     197000        0        0
NORTEL NETWORKS CORP NOTE  4.25           65658AB8      20    21000 PRN    DEFINED                      16,24,25      21000        0        0
NORTEL NETWORKS CORP COM NEW              656568508    2862   189680 SH    DEFINED                          7,11     189680        0        0
NORTEL NETWORKS CORP COM NEW              656568508    1022    67713 SH    DEFINED                      16,24,25      45293        0    22420
NORTEL NETWORKS CORP COM NEW              656568508     178    11775 SH    DEFINED                      32,40,41      11775        0        0
NORTEL NETWORKS CORP COM NEW              656568508     405    26853 SH    DEFINED                      16,24,25      26853        0        0
NORTEL NETWORKS CORP COM NEW              656568508       1       85 SH    DEFINED                 5-7,11,43,44          0       85        0
NORTEL NETWORKS CORP COM NEW              656568508      54     3590 SH    DEFINED          16,19,24,26,27       3590        0        0
NORTEL NETWORKS CORP COM NEW              656568508     178    11800 SH    DEFINED  2,6,7,10-11,18,20,21,28      11800        0        0
NORTEL NETWORKS CORP COM NEW              656568508    4705   311800 SH    CALL DEFINED               15,16,24     311800        0        0
NORTEL NETWORKS CORP COM NEW              656568508   24912  1650900 SH    CALL DEFINED               16,24,25    1650900        0        0
NORTEL NETWORKS CORP COM NEW              656568508    5878   389500 SH    PUT  DEFINED               15,16,24     389500        0        0
NORTEL NETWORKS CORP COM NEW              656568508    3773   250000 SH    PUT  DEFINED               16,24,25     250000        0        0
NORTH AMERN INS LEAD COM                  65687M104    1170   150000 SH    DEFINED                         31,45     150000        0        0
NORTH AMERN INS LEAD *W EXP 03/           65687M112      66   150000 SH    DEFINED                         31,45     150000        0        0
NORTH EUROPEAN OIL R SH BEN INT           659310106     667    19617 SH    DEFINED                      16,24,25       8011        0    11605
NORTHEAST UTILS             COM           664397106     326    10397 SH    DEFINED                          7,11       7397        0     3000
NORTHEAST UTILS             COM           664397106      19      600 SH    DEFINED                       7,11,13        600        0        0
NORTHEAST UTILS             COM           664397106     731    23337 SH    DEFINED                      16,24,25      18658        0     4679
NORTHERN DYNASTY MIN COM NEW              66510M204     104     7884 SH    DEFINED                      16,24,25       7530        0      354
NORTHERN DYNASTY MIN COM NEW              66510M204     737    56118 SH    DEFINED                     4,6,7,11      56118        0        0
NORTHERN DYNASTY MIN COM NEW              66510M204      11      850 SH    DEFINED                 5-7,11,43,44          0      850        0
NORTHERN TR CORP            COM           665859104    2918    38100 SH    DEFINED                          7,11      33100        0     5000
NORTHERN TR CORP            COM           665859104      83     1083 SH    DEFINED                         16,24       1083        0        0
NORTHERN TR CORP            COM           665859104    1526    19932 SH    DEFINED                       7,11,13      19557        0      375
NORTHERN TR CORP            COM           665859104   17349   226543 SH    DEFINED                      16,24,25     196541        0    30002
NORTHERN TR CORP            COM           665859104    4909    64102 SH    DEFINED                      32,40,41      64102        0        0
NORTHERN TR CORP            COM           665859104     628    83200 SH    DEFINED                 5-7,11,43,44          0     8200        0
NORTHFIELD LABS INC COM                   666135108       3     3161 SH    DEFINED                      15,16,24       3161        0        0
NORTHFIELD LABS INC COM                   666135108       9     8465 SH    DEFINED                      16,24,25       7665        0      800
NORTHFIELD LABS INC COM                   666135108       7     6400 SH    DEFINED                      15,16,24       6400        0        0
NORTHFIELD LABS INC COM                   666135108       3     2900 SH    CALL DEFINED               16,24,25       2900        0        0
NORTHGATE MINERALS C COM                  666416102     498   166300 SH    DEFINED                      16,24,25      53800        0   110500
NORTHROP GRUMMAN COR COM                  666807102     530     6735 SH    DEFINED                            12          0        0     6735
NORTHROP GRUMMAN COR COM                  666807102    8861   112682 SH    DEFINED                          7,11      39895     1000    71787
NORTHROP GRUMMAN COR COM                  666807102       6       70 SH    DEFINED                         16,24         70        0        0
```

```
NORTHROP GRUMMAN COR COM          666807102    1111      14123 SH       DEFINED          7,11,13      6758       0     7365
NORTHROP GRUMMAN COR COM          666807102     179       2270 SH       DEFINED          7,11,33         0       0     2270
NORTHROP GRUMMAN COR COM          666807102   16284     207076 SH       DEFINED         16,24,25    170105       0    36971
NORTHROP GRUMMAN COR COM          666807102     843      10725 SH       DEFINED         32,40,41     10725       0        0
NORTHROP GRUMMAN COR COM          666807102   16428     208900 SH       CALL DEFINED    15,16,24    208900       0        0
NORTHROP GRUMMAN COR COM          666807102    8705     110700 SH       CALL DEFINED    16,24,25    110700       0        0
NORTHROP GRUMMAN COR COM          666807102   18504     235300 SH       PUT  DEFINED    15,16,24    235300       0        0
NORTHROP GRUMMAN COR COM          666807102    8705     110700 SH       PUT  DEFINED    16,24,25    110700       0        0
NORTHROP GRUMMAN COR PFD SER B    666807300    5964      40945 SH       DEFINED         16,24,25     40680       0      265
NORTHSTAR RLTY FIN C COM          66704R100     781      87578 SH       DEFINED         16,24,25     72866       0    14712
NORTHSTAR NEUROSCIEN COM          66704V101    2988     321311 SH       DEFINED         16,24,25    320561       0      750
NORTHWEST AIRLS CORP COM          667280408     159      10952 SH       DEFINED          7,11       10952       0        0
NORTHWEST AIRLS CORP COM          667280408    1182      81464 SH       DEFINED         31,45       81464       0        0
NORTHWEST AIRLS CORP COM          667280408    3211     221290 SH       DEFINED         15,16,24    221290       0        0
NORTHWEST AIRLS CORP COM          667280408    3859     265936 SH       DEFINED         16,24,25    265905       0       31
NORTHWEST AIRLS CORP COM          667280408      36       2500 SH       DEFINED         32,40,41      2500       0        0
NORTHWEST AIRLS CORP COM          667280408    2046     141000 SH       CALL DEFINED    15,16,24    141000       0        0
NORTHWEST AIRLS CORP COM          667280408    6424     442700 SH       PUT  DEFINED    15,16,24    442700       0        0
NORTHWEST BANCORP IN COM          667328108     657      24744 SH       DEFINED         16,24,25     24744       0        0
NORTHWEST NAT GAS CO COM          66765S104    1027      21100 SH       DEFINED          7,11       21000       0      100
NORTHWEST NAT GAS CO COM          66765S104    4616      94860 SH       DEFINED         16,24,25     83085       0    11775
NORTHWEST PIPE CO    COM          667746101     468      11959 SH       DEFINED         16,24,25     11843       0      116
NORTHWESTERN CORP    COM NEW      668074305    5163     175000 SH       DEFINED          7,11      175000       0        0
NORTHWESTERN CORP    COM NEW      668074305     157       5306 SH       DEFINED         31,45       5306        0        0
NORTHWESTERN CORP    COM NEW      668074305     399      13538 SH       DEFINED         16,24,25     11964       0     1574
NOVA CHEMICALS CORP  COM          66977W109      10        300 SH       DEFINED         12            0         0      300
NOVA CHEMICALS CORP  COM          66977W109   75121    2318543 SH       DEFINED          7,11      2312100      0     6443
NOVA CHEMICALS CORP  COM          66977W109       4        130 SH       DEFINED          7,11,13        0       0      130
NOVA CHEMICALS CORP  COM          66977W109      16        500 SH       DEFINED          7,11,33        0       0      500
NOVA CHEMICALS CORP  COM          66977W109      23        719 SH       DEFINED         16,24,25       719       0        0
NOVA CHEMICALS CORP  COM          66977W109      92       2830 SH       DEFINED         32,40,41      2830       0        0
NOVA CHEMICALS CORP  COM          66977W109     165       5102 SH       DEFINED         4,6,7,11      5102       0        0
NOVAGOLD RES INC     COM NEW      66987E206       3        400 SH       DEFINED          7,11,13       400       0        0
NOVAGOLD RES INC     COM NEW      66987E206     406      49752 SH       DEFINED         15,16,24     49752       0        0
NOVAGOLD RES INC     COM NEW      66987E206    1737     212840 SH       DEFINED         16,24,25    161460       0    51380
NOVAGOLD RES INC     COM NEW      66987E206     132      16200 SH       CALL DEFINED    15,16,24     16200       0        0
NOVAGOLD RES INC     COM NEW      66987E206     482      59100 SH       PUT  DEFINED    15,16,24     59100       0        0
NOVATEL WIRELESS INC COM NEW      66987M604     465      28700 SH       DEFINED         16,24,25     28700       0        0
NOVATEL WIRELESS INC COM NEW      66987M604    1064      65700 SH       CALL DEFINED    15,16,24     65700       0        0
NOVATEL WIRELESS INC COM NEW      66987M604       6        400 SH       CALL DEFINED    16,24,25       400       0        0
NOVATEL WIRELESS INC COM NEW      66987M604     744      45900 SH       PUT  DEFINED    15,16,24     45900       0        0
NOVARTIS A G         SPONSORED    66987V109     359       6610 SH       DEFINED          7,11          0       0     6610
NOVARTIS A G         SPONSORED    66987V109     313       5769 SH       DEFINED          7,11,13     5633       0      136
NOVARTIS A G         SPONSORED    66987V109     834      15354 SH       DEFINED          7,11,33        0       0    15354
NOVARTIS A G         SPONSORED    66987V109   44055     811182 SH       DEFINED         16,24,25    694995       0   116186
NOVARTIS A G         SPONSORED    66987V109     342       6300 SH       CALL DEFINED    15,16,24     6300       0        0
NOVARTIS A G         SPONSORED    66987V109      33        600 SH       PUT  DEFINED    15,16,24       600       0        0
NU HORIZONS ELECTRS  COM          669908105     496      71314 SH       DEFINED         16,24,25     66714       0     4600
NOVASTAR FINL INC    COM NEW      669947889      93      32300 SH       DEFINED         16,24,25     32300       0        0
NOVASTAR FINL INC    COM NEW      669947889      65      22500 SH       CALL DEFINED    15,16,24     22500       0        0
NOVASTAR FINL INC    COM NEW      669947889      32      11000 SH       CALL DEFINED    16,24,25     11000       0        0
NOVASTAR FINL INC    COM NEW      669947889      80      27600 SH       PUT  DEFINED    15,16,24     27600       0        0
NOVAVAX INC          COM          670002104     290      87050 SH       DEFINED         15,16,24     87050       0        0
NOVAVAX INC          COM          670002104     108      32460 SH       DEFINED         16,24,25     28260       0     4200
NOVAVAX INC          COM          670002104      33      10000 SH       CALL DEFINED    15,16,24     10000       0        0
NOVAVAX INC          COM          670002104     131      39300 SH       PUT  DEFINED    15,16,24     39300       0        0
NOVELL INC           DBCV  0.50   670006AC9    1138    1209000 PRN      DEFINED         16,24,25   1209000       0        0
NOVELL INC           COM          670006105    2347     341617 SH       DEFINED          7,11      341617       0        0
NOVELL INC           COM          670006105     549      79871 SH       DEFINED          7,11,13     79871       0        0
NOVELL INC           COM          670006105    2672     388960 SH       DEFINED         16,24,25    370351       0    18609
NOVELL INC           COM          670006105       3        390 SH       DEFINED         32,40,41       390       0        0
NOVELL INC           COM          670006105     664      96700 SH       CALL DEFINED    15,16,24     96700       0        0
NOVELL INC           COM          670006105    1340     195000 SH       CALL DEFINED    16,24,25    195000       0        0
NOVELL INC           COM          670006105     855     124400 SH       PUT  DEFINED    15,16,24    124400       0        0
NOVELL INC           COM          670006105    1164     169400 SH       PUT  DEFINED    16,24,25    169400       0        0
NOVELLUS SYS INC     COM          670008101      66       2400 SH       DEFINED         12            0       0     2400
NOVELLUS SYS INC     COM          670008101    8059     292312 SH       DEFINED          7,11      162615    1000   128697
NOVELLUS SYS INC     COM          670008101      66       2400 SH       DEFINED          7,11,13     1250       0     1150
NOVELLUS SYS INC     COM          670008101      17        610 SH       DEFINED          7,11,33        0       0      610
NOVELLUS SYS INC     COM          670008101   15786     572571 SH       DEFINED         16,24,25    466317       0   106254
NOVELLUS SYS INC     COM          670008101     113       4087 SH       DEFINED         32,40,41      4087       0        0
NOVELLUS SYS INC     COM          670008101     134       4870 SH       DEFINED        16,19,24,26,27  4870      0        0
NOVELLUS SYS INC     COM          670008101    7314     265300 SH       CALL DEFINED    15,16,24    265300       0        0
NOVELLUS SYS INC     COM          670008101    5158     187100 SH       CALL DEFINED    16,24,25    187100       0        0
NOVELLUS SYS INC     COM          670008101    9691     351500 SH       PUT  DEFINED    15,16,24    351500       0        0
NOVELLUS SYS INC     COM          670008101    6413     232600 SH       PUT  DEFINED    16,24,25    232600       0        0
NOVO-NORDISK A S     ADR          670100205      16        248 SH       DEFINED          7,11          0       0      248
NOVO-NORDISK A S     ADR          670100205     344       5300 SH       DEFINED          7,11,13     5300       0        0
NOVO-NORDISK A S     ADR          670100205      75       1160 SH       DEFINED          7,11,33        0       0     1160
NOVO-NORDISK A S     ADR          670100205    6600     101760 SH       DEFINED         16,24,25     78028       0    23731
NSTAR                COM          67019E107    1054      29109 SH       DEFINED          7,11       5109        0    24000
NSTAR                COM          67019E107      57       1566 SH       DEFINED          7,11,13     1566       0        0
NSTAR                COM          67019E107    3774     104184 SH       DEFINED         16,24,25     77628       0    26556
NTELOS HLDGS CORP    COM          67020Q107     297      10000 SH       DEFINED          7,11       10000       0        0
NTELOS HLDGS CORP    COM          67020Q107   24709     832234 SH       DEFINED          9,34-37    832234       0        0
NTELOS HLDGS CORP    COM          67020Q107     255       8573 SH       DEFINED          9,35-37     8573       0        0
NTELOS HLDGS CORP    COM          67020Q107     227       7630 SH       DEFINED          9,35,36     7630       0        0
NTELOS HLDGS CORP    COM          67020Q107      31       1038 SH       DEFINED         16,24,25     1038       0        0
NUANCE COMMUNICATION COM          67020Y100     438      23450 SH       DEFINED         30           23450       0        0
NUANCE COMMUNICATION COM          67020Y100     352      18825 SH       DEFINED          7,11       18825       0        0
NUANCE COMMUNICATION COM          67020Y100     739      39555 SH       DEFINED          7,11,13     39555       0        0
NUANCE COMMUNICATION COM          67020Y100    1717      91890 SH       DEFINED         15,16,24     91890       0        0
NUANCE COMMUNICATION COM          67020Y100    8998     481684 SH       DEFINED         16,24,25    417875       0    63809
NUANCE COMMUNICATION COM          67020Y100    2479     132700 SH       CALL DEFINED    15,16,24    132700       0        0
NUANCE COMMUNICATION COM          67020Y100     155       8300 SH       CALL DEFINED    16,24,25      8300       0        0
NUANCE COMMUNICATION COM          67020Y100    3142     168200 SH       PUT  DEFINED    15,16,24    168200       0        0
NUANCE COMMUNICATION COM          67020Y100     424      22700 SH       PUT  DEFINED    16,24,25     22700       0        0
NUCOR CORP           COM          670346105   12620     213108 SH       DEFINED          7,11      156623       0    56485
NUCOR CORP           COM          670346105    2622      44274 SH       DEFINED          7,11,13     43789       0      485
NUCOR CORP           COM          670346105   69993    1181919 SH       DEFINED         16,24,25   1117027       0    64891
NUCOR CORP           COM          670346105     538       9088 SH       DEFINED         32,40,41      9088       0        0
NUCOR CORP           COM          670346105   10215     172500 SH       CALL DEFINED    15,16,24    172500       0        0
NUCOR CORP           COM          670346105   27964     472200 SH       CALL DEFINED    16,24,25    472200       0        0
NUCOR CORP           COM          670346105    5786      97700 SH       CALL DEFINED    16,24,25     97700       0        0
NUCOR CORP           COM          670346105    1925      32500 SH       PUT  DEFINED     7,11       32500       0        0
NUCOR CORP           COM          670346105   32180     543400 SH       PUT  DEFINED    15,16,24    543400       0        0
NUCOR CORP           COM          670346105   18388     310500 SH       PUT  DEFINED    16,24,25    310500       0        0
NUSTAR ENERGY LP     UNIT COM     67058H102     235       4405 SH       DEFINED          7,11,13     4405       0        0
NUSTAR ENERGY LP     UNIT COM     67058H102     108       2026 SH       DEFINED          7,11,33        0       0     2026
NUSTAR ENERGY LP     UNIT COM     67058H102   30888     579514 SH       DEFINED         16,24,25    519159       0    60355
NUSTAR ENERGY LP     UNIT COM     67058H102    3783      70981 SH       DEFINED         32,40,41     70981       0        0
NUSTAR GP HOLDINGS L UNIT RESTG   67059L102     108       3794 SH       DEFINED          7,11,33        0       0     3794
NUSTAR GP HOLDINGS L UNIT RESTG   67059L102     562      19790 SH       DEFINED         16,24,25     14875       0     4825
NUVEEN INSD PREM INC COM          6706D8104     610      50139 SH       DEFINED         16,24,25     40974       0     9165
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| NUVEEN GBL VL OPPORT | COM | 6706EH103 | 8 | 425 | SH | DEFINED | 7,11,13 | 425 | 0 | 0 |
| NUVEEN GBL VL OPPORT | COM | 6706EH103 | 190 | 10375 | SH | DEFINED | 16,24,25 | 10375 | 0 | 0 |
| NUVEEN EQTY PRM OPPO | COM | 6706EM102 | 4520 | 276633 | SH | DEFINED | 16,24,25 | 227004 | 0 | 49628 |
| NUVEEN FLTNG RTE INC | COM SHS | 6706EN100 | 1200 | 104202 | SH | DEFINED | 16,24,25 | 88090 | 0 | 16112 |
| NUVEEN DIVERSIFIED D | COM | 6706EP105 | 4053 | 283800 | SH | DEFINED | 16,24,25 | 217414 | 0 | 66386 |
| NUVEEN EQUITY PREM I | COM | 6706ER101 | 1931 | 117677 | SH | DEFINED | 16,24,25 | 77556 | 0 | 40120 |
| NUVEEN EQUITY PREM A | COM | 6706ET107 | 776 | 47144 | SH | DEFINED | 16,24,25 | 39122 | 0 | 8021 |
| NUVEEN TAX ADV FLTG | COM | 6706EV102 | 464 | 42091 | SH | DEFINED | 16,24,25 | 37559 | 0 | 4531 |
| NUVEEN EQUITY PREM & | COM | 6706EW100 | 211 | 12324 | SH | DEFINED | 16,24,25 | 8986 | 0 | 3337 |
| NUVEEN PREM INCOME M | COM | 6706K4105 | 1150 | 98328 | SH | DEFINED | 16,24,25 | 94873 | 0 | 3455 |
| NUVEEN N C PREM INCO | SH BEN INT | 67060P100 | 207 | 15965 | SH | DEFINED | 16,24,25 | 12700 | 0 | 3265 |
| NUVEEN MD PREM INCOM | COM | 67061Q107 | 21 | 1640 | SH | DEFINED | 7,11,13 | 1640 | 0 | 0 |
| NUVEEN MD PREM INCOM | COM | 67061Q107 | 257 | 20213 | SH | DEFINED | 16,24,25 | 10453 | 0 | 9760 |
| NUVEEN SELECT MAT MU | SH BEN INT | 6706T1T101 | 99 | 10644 | SH | DEFINED | 16,24,25 | 9644 | 0 | 1000 |
| NUVEEN ARIZ PREM INC | COM | 67061W104 | 158 | 12640 | SH | DEFINED | 16,24,25 | 12640 | 0 | 0 |
| NUVEEN CALIF MUN VAL | COM | 67062C107 | 655 | 72123 | SH | DEFINED | 16,24,25 | 63576 | 0 | 8547 |
| NUVEEN INVT QUALITY | COM | 67062E103 | 284 | 20761 | SH | DEFINED | 16,24,25 | 17011 | 0 | 3750 |
| NUVEEN SELECT TAX FR | SH BEN INT | 67062F100 | 0 | 20 | SH | DEFINED | 16,24 | 20 | 0 | 0 |
| NUVEEN SELECT TAX FR | SH BEN INT | 67062F100 | 2539 | 179776 | SH | DEFINED | 16,24,25 | 156540 | 0 | 23236 |
| NUVEEN MUN ADVANTAGE | COM | 67062H106 | 388 | 27984 | SH | DEFINED | 16,24,25 | 17926 | 0 | 10058 |
| NUVEEN NY MUN VALUE | COM | 67062M105 | 492 | 53918 | SH | DEFINED | 16,24,25 | 47093 | 0 | 6825 |
| NUVEEN INSD QUALITY | COM | 67062N103 | 205 | 15156 | SH | DEFINED | 16,24,25 | 11306 | 0 | 3850 |
| NUVEEN PERFORMANCE P | COM | 67062P108 | 21 | 1600 | SH | DEFINED | 7,11,13 | 1600 | 0 | 0 |
| NUVEEN PERFORMANCE P | COM | 67062P108 | 663 | 49475 | SH | DEFINED | 16,24,25 | 33860 | 0 | 15614 |
| NUVEEN NY PERFORM PL | COM | 67062R104 | 250 | 17624 | SH | DEFINED | 16,24,25 | 15384 | 0 | 2240 |
| NUVEEN PREM INCOME M | COM | 67062T100 | 18 | 1372 | SH | DEFINED | 7,11,13 | 1372 | 0 | 0 |
| NUVEEN PREM INCOME M | COM | 67062T100 | 271 | 20517 | SH | DEFINED | 16,24,25 | 10630 | 0 | 9887 |
| NUVEEN MUN MKT OPPOR | COM | 67062W103 | 21 | 1550 | SH | DEFINED | 7,11,13 | 1550 | 0 | 0 |
| NUVEEN MUN MKT OPPOR | COM | 67062W103 | 560 | 42114 | SH | DEFINED | 16,24,25 | 26214 | 0 | 15900 |
| NUVEEN N Y INVT QUAL | COM | 67062X101 | 574 | 44106 | SH | DEFINED | 16,24,25 | 41606 | 0 | 2500 |
| NUVEEN NY SELECT TAX | SH BEN INT | 67063V104 | 208 | 15966 | SH | DEFINED | 16,24,25 | 10365 | 0 | 5601 |
| NUVEEN PREM INCOME M | COM | 67063W102 | 14 | 1034 | SH | DEFINED | 7,11,13 | 1034 | 0 | 0 |
| NUVEEN PREM INCOME M | COM | 67063W102 | 481 | 35395 | SH | DEFINED | 16,24,25 | 24163 | 0 | 11232 |
| NUVEEN VA PREM INCOM | COM | 67064R102 | 175 | 13065 | SH | DEFINED | 16,24,25 | 10043 | 0 | 3022 |
| NUVEEN TAX FREE ADV | COM | 670657105 | 262 | 18261 | SH | DEFINED | 16,24,25 | 11702 | 0 | 6559 |
| NVIDIA CORP | COM | 67066G104 | 655 | 19245 | SH | DEFINED | 30 | 19245 | 0 | 0 |
| NVIDIA CORP | COM | 67066G104 | 4195 | 123311 | SH | DEFINED | 7,11 | 123116 | 0 | 195 |
| NVIDIA CORP | COM | 67066G104 | 17 | 502 | SH | DEFINED | 7,11,13 | 502 | 0 | 0 |
| NVIDIA CORP | COM | 67066G104 | 144 | 4222 | SH | DEFINED | 7,11,33 | 0 | 0 | 4222 |
| NVIDIA CORP | COM | 67066G104 | 20697 | 608391 | SH | DEFINED | 16,24,25 | 520443 | 0 | 87948 |
| NVIDIA CORP | COM | 67066G104 | 542 | 15923 | SH | DEFINED | 32,40,41 | 15923 | 0 | 0 |
| NVIDIA CORP | COM | 67066G104 | 27332 | 803400 | SH | CALL DEFINED | 15,16,24 | 803400 | 0 | 0 |
| NVIDIA CORP | COM | 67066LL104 | 13176 | 387300 | SH | CALL DEFINED | 16,24,25 | 387300 | 0 | 0 |
| NVIDIA CORP | COM | 67066G104 | 14942 | 439200 | SH | PUT DEFINED | 15,16,24 | 439200 | 0 | 0 |
| NVIDIA CORP | COM | 67066G104 | 851 | 25000 | SH | PUT DEFINED | 16,24,25 | 25000 | 0 | 0 |
| NUVEEN DIVID ADVANTA | COM | 67066V101 | 605 | 45449 | SH | DEFINED | 16,24,25 | 38608 | 0 | 6841 |
| NUVEEN DIVID ADVN | COM | 67066V107 | 254 | 18805 | SH | DEFINED | 16,24,25 | 13505 | 0 | 5300 |
| NUVEEN CA DIVIDEND A | COM SHS | 67066Y105 | 142 | 10541 | SH | DEFINED | 16,24,25 | 9905 | 0 | 636 |
| NUVEEN SR INCOME FD | COM | 67067Y104 | 740 | 104830 | SH | DEFINED | 16,24,25 | 80250 | 0 | 24579 |
| NUVEEN MUN HIGH INC | COM | 67068Z103 | 12 | 777 | SH | DEFINED | 7,11,13 | 777 | 0 | 0 |
| NUVEEN MUN HIGH INC | COM | 67068Z103 | 304 | 20271 | SH | DEFINED | 16,24,25 | 18727 | 0 | 1543 |
| NUTRI SYS INC NEW | COM | 67069D108 | 103 | 3800 | SH | DEFINED | 30 | 3800 | 0 | 0 |
| NUTRI SYS INC NEW | COM | 67069D108 | 7572 | 280656 | SH | DEFINED | 7,11 | 280656 | 0 | 0 |
| NUTRI SYS INC NEW | COM | 67069D108 | 15667 | 580688 | SH | DEFINED | 16,24 | 580688 | 0 | 0 |
| NUTRI SYS INC NEW | COM | 67069D108 | 9213 | 341471 | SH | DEFINED | 15,16,24 | 341471 | 0 | 0 |
| NUTRI SYS INC NEW | COM | 67069D108 | 12025 | 445696 | SH | DEFINED | 16,24,25 | 352553 | 0 | 93143 |
| NUTRI SYS INC NEW | COM | 67069D108 | 2158 | 80000 | SH | CALL DEFINED | 7,11 | 80000 | 0 | 0 |
| NUTRI SYS INC NEW | COM | 67069D108 | 18125 | 671800 | SH | CALL DEFINED | 15,16,24 | 671800 | 0 | 0 |
| NUTRI SYS INC NEW | COM | 67069D108 | 834 | 30900 | SH | CALL DEFINED | 16,24,25 | 30900 | 0 | 0 |
| NUTRI SYS INC NEW | COM | 67069D108 | 24498 | 908000 | SH | PUT DEFINED | 15,16,24 | 908000 | 0 | 0 |
| NUTRI SYS INC NEW | COM | 67069D108 | 1619 | 60000 | SH | PUT DEFINED | 16,24,25 | 60000 | 0 | 0 |
| NUVEEN MD DIVID ADVA | COM SH BEN | 67069R107 | 72 | 5439 | SH | DEFINED | 7,11,13 | 5439 | 0 | 0 |
| NUVEEN MD DIVID ADVA | COM SH BEN | 67069R107 | 202 | 15246 | SH | DEFINED | 16,24,25 | 8181 | 0 | 7064 |
| NUVEEN NJ DIV ADVANT | COM | 67069Y102 | 252 | 19497 | SH | DEFINED | 16,24,25 | 17130 | 0 | 2367 |
| NUVEEN NY DIV ADVANT | COM | 67070A101 | 186 | 13878 | SH | DEFINED | 16,24,25 | 8078 | 0 | 5800 |
| NUVEEN DIV ADVANTAGE | COM | 67070F100 | 5 | 321 | SH | DEFINED | 16,24 | 321 | 0 | 0 |
| NUVEEN DIV ADVANTAGE | COM | 67070F100 | 1381 | 92213 | SH | DEFINED | 16,24,25 | 69808 | 0 | 22404 |
| NUVEEN MD DIV ADV MU | COM SH BEN | 67070V101 | 334 | 25135 | SH | DEFINED | 16,24,25 | 17035 | 0 | 8100 |
| NUVEEN DIV ADV MUNI | COM SH BEN | 67070X101 | 188 | 13855 | SH | DEFINED | 16,24,25 | 9505 | 0 | 4350 |
| NUVEEN CA DIV ADV MU | COM SH BEN | 67070Y109 | 195 | 15237 | SH | DEFINED | 16,24,25 | 12237 | 0 | 3000 |
| NUVASIVE INC | COM | 67074105 | 1828 | 46263 | SH | DEFINED | 16,24,25 | 45645 | 0 | 618 |
| NUVEEN REAL ESTATE I | COM | 67071B108 | 6985 | 439844 | SH | DEFINED | 16,24,25 | 326971 | 0 | 112873 |
| NUVEEN VA DIV ADV MU | COM | 67071C106 | 308 | 22982 | SH | DEFINED | 16,24,25 | 12666 | 0 | 10315 |
| NUVEEN N C DIV ADV F | COM | 67071D104 | 275 | 20624 | SH | DEFINED | 16,24,25 | 15801 | 0 | 4822 |
| NUVEEN QUALITY PFD I | COM | 67071S101 | 6561 | 635156 | SH | DEFINED | 16,24,25 | 561378 | 0 | 73778 |
| NUVEEN NEW JERSEY DI | COM | 67071T109 | 136 | 10223 | SH | DEFINED | 16,24,25 | 9223 | 0 | 1000 |
| NUVEEN CT DIV ADV MU | COM | 67071Y108 | 242 | 18295 | SH | DEFINED | 16,24,25 | 18295 | 0 | 0 |
| NUVEEN QUALITY PFD I | COM | 67072C105 | 14770 | 1366337 | SH | DEFINED | 16,24,25 | 1262856 | 0 | 103481 |
| NUVEEN NC DIV ADV MU | COM | 67072D103 | 367 | 27051 | SH | DEFINED | 16,24,25 | 24751 | 0 | 2300 |
| NUVEEN FLOATING RATE | COM | 67072T108 | 6867 | 596615 | SH | DEFINED | 16,24,25 | 548955 | 0 | 47660 |
| NUVEEN QUALITY PFD I | COM | 67072W101 | 192 | 18259 | SH | DEFINED | 16,24,25 | 14679 | 0 | 3580 |
| NUVEEN MULTI STRAT I | COM | 67073B106 | 5 | 500 | SH | DEFINED | 7,11 | 0 | 0 | 500 |
| NUVEEN MULTI STRAT I | COM | 67073B106 | 31 | 2825 | SH | DEFINED | 7,11,13 | 2825 | 0 | 0 |
| NUVEEN MULTI STRAT I | COM | 67073B106 | 3268 | 299023 | SH | DEFINED | 16,24,25 | 265630 | 0 | 33392 |
| NUVEEN MULTI STRAT I | COM SHS | 67073B106 | 85 | 7800 | SH | DEFINED | 16,19,24,26,27 | 7800 | 0 | 0 |
| NUVEEN MULTI STRAT I | COM SHS | 67073D102 | 24 | 2200 | SH | DEFINED | 7,11,13 | 2200 | 0 | 0 |
| NUVEEN MULTI STRAT I | COM SHS | 67073D102 | 4205 | 382259 | SH | DEFINED | 16,19,24,26,27 | 310953 | 0 | 71305 |
| NUVEEN MULTI STRAT I | COM SHS | 67073D102 | 65 | 5900 | SH | DEFINED | 7,11,13 | 5900 | 0 | 0 |
| NUVEEN TAX ADVANTAGE | COM | 67073G105 | 171 | 10498 | SH | DEFINED | 16,24,25 | 8472 | 0 | 2026 |
| NYMOX PHARMACEUTICAL | COM | 670671P02 | 73 | 12646 | SH | DEFINED | 16,24,25 | 12146 | 0 | 500 |
| OGE ENERGY CORP | COM | 670837103 | 65 | 1800 | SH | DEFINED | 30 | 1800 | 0 | 0 |
| OGE ENERGY CORP | COM | 670837103 | 367 | 10100 | SH | DEFINED | 3,9 | 0 | 0 | 10100 |
| OGE ENERGY CORP | COM | 670837103 | 2103 | 57942 | SH | DEFINED | 7,11,13 | 55052 | 0 | 2890 |
| OGE ENERGY CORP | COM | 670837103 | 974 | 26843 | SH | DEFINED | 7,11,13 | 26843 | 0 | 0 |
| OGE ENERGY CORP | COM | 670837103 | 5339 | 147109 | SH | DEFINED | 16,24,25 | 126307 | 0 | 20802 |
| OM GROUP INC | COM | 670872100 | 4109 | 71404 | SH | DEFINED | 7,11 | 71303 | 0 | 101 |
| OM GROUP INC | COM | 670872100 | 2401 | 41726 | SH | DEFINED | 15,16,24 | 41726 | 0 | 0 |
| OM GROUP INC | COM | 670872100 | 585 | 10166 | SH | DEFINED | 16,24,25 | 8797 | 0 | 1369 |
| OM GROUP INC | COM | 670872100 | 6427 | 111700 | SH | CALL DEFINED | 15,16,24 | 111700 | 0 | 0 |
| OM GROUP INC | COM | 670872100 | 3826 | 66500 | SH | PUT DEFINED | 15,16,24 | 66500 | 0 | 0 |
| NUVEEN TX ADV TOTAL | COM | 67090H102 | 933 | 42793 | SH | PUT DEFINED | 16,24,25 | 37354 | 0 | 5438 |
| NUVEEN MULT CURR ST | COM | 67090N109 | 6147 | 363072 | SH | DEFINED | 16,24,25 | 319876 | 0 | 43195 |
| NUVEEN MUN VALUE FD | COM | 67092B100 | 75 | 8054 | SH | DEFINED | 7,11,13 | 8054 | 0 | 0 |
| NUVEEN MUN VALUE FD | COM | 67092B100 | 16281 | 1746927 | SH | DEFINED | 16,24,25 | 1572198 | 0 | 174728 |
| NUVEEN FLA INVT QUAL | COM | 670701102 | 6 | 500 | SH | DEFINED | 7,11,13 | 500 | 0 | 0 |
| NUVEEN FLA INVT QUAL | COM | 670701102 | 372 | 28721 | SH | DEFINED | 16,24,25 | 6001 | 0 | 22720 |
| NUVEEN NJ INVT QUALI | COM | 670971100 | 8 | 600 | SH | DEFINED | 7,11,13 | 600 | 0 | 0 |
| NUVEEN NJ INVT QUALI | COM | 670971100 | 387 | 29921 | SH | DEFINED | 16,24,25 | 26290 | 0 | 3631 |
| NUVEEN SELECT QUALIT | COM | 670973106 | 2422 | 173364 | SH | DEFINED | 16,24,25 | 154251 | 0 | 19112 |
| NUVEEN CA SELECT QUA | COM | 670975101 | 232 | 17647 | SH | DEFINED | 16,24,25 | 15647 | 0 | 2000 |
| NUVEEN NY SELECT QUA | COM | 670976109 | 563 | 42592 | SH | DEFINED | 16,24,25 | 41052 | 0 | 1540 |
| NUVEEN QUALITY INCOM | COM | 670977107 | 7 | 500 | SH | DEFINED | 16,24 | 500 | 0 | 0 |
| NUVEEN QUALITY INCOM | COM | 670977107 | 310 | 23084 | SH | DEFINED | 16,24,25 | 13670 | 0 | 9414 |
| NUVEEN FLA QUALITY I | COM | 670978105 | 156 | 11982 | SH | DEFINED | 16,24,25 | 2254 | 0 | 9728 |

```
NUVEEN INSD MUN OPPO COM        670984103    1398    104737 SH    DEFINED                     16,24,25     87652     0    17085
NUVEEN NY QUALITY IN COM        670986108     243     18672 SH    DEFINED                     16,24,25     16332     0     2340
NUVEEN PREMIER MUN I COM        670988104     273     21163 SH    DEFINED                     16,24,25     16943     0     4220
NUVEEN NJ PREM INCOM COM        67101N106       8       600 SH    DEFINED                     7,11,13        600     0        0
NUVEEN NJ PREM INCOM COM        67101N106     261     19509 SH    DEFINED                     16,24,25     18259     0     1250
NUVEEN INSD FLA PREM COM        67101V108     464     34892 SH    DEFINED                     16,24,25      6542     0    28350
OSI PHARMACEUTICALS  NOTE 2.00  671040AP0    6930   4000000 PRN   DEFINED                     31,45     4000000     0        0
OSI PHARMACEUTICALS  COM        671040103     313      6450 SH    DEFINED                     30           6450     0        0
OSI PHARMACEUTICALS  COM        671040103      53      1085 SH    DEFINED                     7,11         1085     0        0
OSI PHARMACEUTICALS  COM        671040103    2052     42294 SH    DEFINED                     16,24,25    35475     0     6819
OSI PHARMACEUTICALS  COM        671040103    1140     23500 SH    DEFINED 2,6,7,10-11,18,20,21,28         23500     0        0
OSI PHARMACEUTICALS  COM        671040103    9139    188400 SH    CALL DEFINED                15,16,24    188400     0        0
OSI PHARMACEUTICALS  COM        671040103    2624     54100 SH    CALL DEFINED                15,16,24     54100     0        0
OSI PHARMACEUTICALS  COM        671040103    6767    139500 SH    PUT DEFINED                 15,16,24    139500     0        0
O2MICRO INTERNATIONA SPONS ADR  67107W100     280     24225 SH    DEFINED                     16,24       24225     0        0
O2MICRO INTERNATIONA SPONS ADR  67107W100     181     15658 SH    DEFINED                     16,24,25    14277     0     1381
OYO GEOSPACE CORP    COM        67107410Z       0         2 SH    DEFINED                     16,24           2     0        0
OYO GEOSPACE CORP    COM        67107410Z    2698     35802 SH    DEFINED                     16,24,25     7350     0    28452
OBAGI MEDICAL PRODUC COM        67423R108     184     10017 SH    DEFINED                     16,24,25     9642     0      375
OCCIDENTAL PETE CORP COM        674599105      66       860 SH    DEFINED                     12            860     0      860
OCCIDENTAL PETE CORP COM        674599105     912     11850 SH    DEFINED                     30          11850     0        0
OCCIDENTAL PETE CORP COM        674599105   31843    413600 SH    DEFINED                     42         413600     0        0
OCCIDENTAL PETE CORP COM        674599105    1587     20618 SH    DEFINED                     3,9             0     0    20618
OCCIDENTAL PETE CORP COM        674599105   14142    183682 SH    DEFINED                     7,11       154817     0    28865
OCCIDENTAL PETE CORP COM        674599105    3087     40094 SH    DEFINED                     7,11,13     25544     0    14550
OCCIDENTAL PETE CORP COM        674599105      15       200 SH    DEFINED                     7,11,13       200     0      200
OCCIDENTAL PETE CORP COM        674599105    5855     76052 SH    DEFINED                     15,16,24    76052     0        0
OCCIDENTAL PETE CORP COM        674599105  173384   2252028 SH    DEFINED                     16,24,25  2095533     0   156495
OCCIDENTAL PETE CORP COM        674599105    2628     34131 SH    DEFINED                     32,40,41    34131     0        0
OCCIDENTAL PETE CORP COM        674599105   35916    466500 SH    CALL DEFINED                15,16,24   466500     0        0
OCCIDENTAL PETE CORP COM        674599105    9416    122300 SH    CALL DEFINED                16,24,25   122300     0        0
OCCIDENTAL PETE CORP COM        674599105   46625    605600 SH    PUT DEFINED                 15,16,24   605600     0        0
OCCIDENTAL PETE CORP COM        674599105    9909    128700 SH    PUT DEFINED                 16,24,25   128700     0        0
OCEANAUT INC         COM        675227102     334     42500 SH    DEFINED                     16,24,25    30000     0    12500
OCEANAUT INC         *W EXP 01/ 675227110      78     47600 SH    DEFINED                     16,24           0     0    47600
OCEANAUT INC         UNIT 01/01 675227201     307     33340 SH    DEFINED                     16,24,25    32740     0      600
OCEANEERING INTL INC COM        675232102     198      2947 SH    DEFINED                     7,11         2947     0        0
OCEANEERING INTL INC COM        675232102    5745     85301 SH    DEFINED                     16,24,25    59369     0    25932
OCEANEERING INTL INC COM        675232102      20       300 SH    DEFINED                     32,40,41      300     0        0
OCEANEERING INTL INC COM        675232102    4728     70200 SH    CALL DEFINED                15,16,24    70200     0        0
OCEANEERING INTL INC COM        675232102    3704     55000 SH    PUT DEFINED                 15,16,24    55000     0        0
OCULUS INNOVATIVE SC COM        67575P108     525    128046 SH    DEFINED                     16,24,25   101028     0    27018
ODYSSEY HEALTHCARE I COM        67611V101     232     21000 SH    DEFINED                     7,11,13     19000     0     2000
ODYSSEY HEALTHCARE I COM        67611V101      50      4566 SH    DEFINED                     16,24,25     4186     0      380
ODYSSEY MARINE EXPLO COM        676118102     106     17200 SH    DEFINED                     5-7,11,43,44    0 17200        0
OFFICEMAX INC DEL    COM        67622P101     123      5953 SH    DEFINED                     7,11         5953     0        0
OFFICEMAX INC DEL    COM        67622P101    2268    109795 SH    DEFINED                     15,16,24   109795     0        0
OFFICEMAX INC DEL    COM        67622P101     560     27093 SH    DEFINED                     16,24,25    24915     0     2178
OFFICEMAX INC DEL    COM        67622P101       2        83 SH    DEFINED                     32,40,41       83     0        0
OFFICEMAX INC DEL    COM        67622P101    2930    141800 SH    CALL DEFINED                15,16,24   141800     0        0
OFFICEMAX INC DEL    COM        67622P101    4252    205800 SH    PUT DEFINED                 15,16,24   205800     0        0
OFFICE DEPOT INC     COM        676220106     361     25993 SH    DEFINED                     7,11        23633     0     2300
OFFICE DEPOT INC     COM        676220106   10923    785262 SH    DEFINED                     16,24,25   763651     0    21611
OFFICE DEPOT INC     COM        676220106     136      9765 SH    DEFINED                     32,40,41     9765     0        0
OFFICE DEPOT INC     COM        676220106    3203    230300 SH    CALL DEFINED                15,16,24   230300     0        0
OFFICE DEPOT INC     COM        676220106    1737    124900 SH    PUT DEFINED                 15,16,24   124900     0        0
OIL SVC HOLDRS TR    DEPOSTRY R 678002106       4        22 SH    DEFINED                     7,11           22     0        0
OIL SVC HOLDRS TR    DEPOSTRY R 678002106      18        93 SH    DEFINED                     16,24          93     0        0
OIL SVC HOLDRS TR    DEPOSTRY R 678002106 2358948  12479885 SH    DEFINED                     16,24,25 12475710     0     4175
OIL SVC HOLDRS TR    DEPOSTRY R 678002106  154996    820000 SH    CALL DEFINED                15,16,24   820000     0        0
OIL SVC HOLDRS TR    DEPOSTRY R 678002106   81543    431400 SH    CALL DEFINED                16,24,25   431400     0        0
OIL SVC HOLDRS TR    DEPOSTRY R 678002106  132465    700800 SH    PUT DEFINED                 15,16,24   700800     0        0
OIL SVC HOLDRS TR    DEPOSTRY R 678002106   59636    315500 SH    PUT DEFINED                 16,24,25   315500     0        0
OIL STS INTL INC     COM        678026105     254      7450 SH    DEFINED                     30           7450     0        0
OIL STS INTL INC     COM        678026105     277      8131 SH    DEFINED                     7,11         8131     0        0
OIL STS INTL INC     COM        678026105    3676    107730 SH    DEFINED                     7,11,13    103430     0     4300
OIL STS INTL INC     COM        678026105    2676     78440 SH    DEFINED                     16,24,25    76803     0     1637
OILSANDS QUEST INC   COM        678046103     237     58100 SH    DEFINED                     16,24,25    58100     0        0
OLD DOMINION FGHT LI COM        679580100     297     12850 SH    DEFINED                     16,24,25     5971     0     6879
OLD MUTUAL CLAYMORE  COM        68003N103    1139     74296 SH    DEFINED                     16,24,25    59944     0    14352
OLD NATL BANCORP IND COM        680033107      55      3656 SH    DEFINED                     30           3656     0        0
OLD NATL BANCORP IND COM        680033107       4       286 SH    DEFINED                     7,11           0     0      286
OLD NATL BANCORP IND COM        680033107     146      9788 SH    DEFINED                     16,24,25     9388     0      400
OLD POINT FINL CORP  COM        680194107     218     10703 SH    DEFINED                     16,24,25     4317     0     6386
OLD REP INTL CORP    COM        680223104     172     11135 SH    DEFINED                     7,11        11135     0        0
OLD REP INTL CORP    COM        680223104       2       140 SH    DEFINED                     7,11,13       140     0        0
OLD REP INTL CORP    COM        680223104    5978    387957 SH    DEFINED                     16,24,25   345737     0    42220
OLD REP INTL CORP    COM        680223104     148      9574 SH    DEFINED                     32,40,41     9574     0        0
OLIN CORP            COM PAR $1 680665205       2        83 SH    DEFINED                     3,9             0     0       83
OLIN CORP            COM PAR $1 680665205    1105     57183 SH    DEFINED                     16,24,25    51248     0     5935
OLYMPIC STEEL INC    COM        68162K106    1082     34116 SH    DEFINED                     7,11        25275     0     5203
OMNICARE INC         DBCV 3.25  681904AL2   21936  30101000 PRN   DEFINED                     16,24,25 30101000     0        0
OMNICARE INC         COM        681904108     137      6007 SH    DEFINED                     7,11         6007     0        0
OMNICARE INC         COM        681904108     143      6275 SH    DEFINED                     7,11,13      5275     0     1000
OMNICARE INC         COM        681904108    2750    120572 SH    DEFINED                     16,24,25   114291     0     6281
OMNICARE INC         COM        681904108      98      4289 SH    DEFINED                     32,40,41     4289     0        0
OMNICARE INC         COM        681904108    1462     64100 SH    CALL DEFINED                15,16,24    64100     0        0
OMNICARE INC         COM        681904108      36      1600 SH    CALL DEFINED                16,24,25     1600     0        0
OMNICARE INC         COM        681904108    2835    124300 SH    PUT DEFINED                 15,16,24   124300     0        0
OMNICARE INC         COM        681904108     303     13300 SH    PUT DEFINED                 16,24,25    13300     0        0
OMNICOM GROUP INC    NOTE       681919AK2    3528   3417000 PRN   DEFINED                     16,24,25  3417000     0        0
OMNICOM GROUP INC    COM        681919106     366      7700 SH    DEFINED                     30           7700     0        0
OMNICOM GROUP INC    COM        681919106    1585     33343 SH    DEFINED                     7,11        33343     0        0
OMNICOM GROUP INC    COM        681919106    2141     45048 SH    DEFINED                     7,11,13     42988     0     2060
OMNICOM GROUP INC    COM        681919106     306      6435 SH    DEFINED                     7,11,13      6435     0     6435
OMNICOM GROUP INC    COM        681919106     157      3300 SH    DEFINED                     15,16,24     3300     0        0
OMNICOM GROUP INC    COM        681919106   68014   1430970 SH    DEFINED                     16,24,25  1206959     0   224011
OMNICOM GROUP INC    COM        681919106    3116     65554 SH    DEFINED                     32,40,41    65554     0        0
OMNICOM GROUP INC    COM        681919106     144      3030 SH    DEFINED                     5-7,11,43,44    0  3030        0
OMNICOM GROUP INC    COM        681919106    6654    140000 SH    CALL DEFINED                15,16,24   140000     0        0
OMNICOM GROUP INC    COM        681919106    1602     33700 SH    CALL DEFINED                16,24,25    33700     0        0
OMNICOM GROUP INC    COM        681919106    5590    117600 SH    PUT DEFINED                 15,16,24   117600     0        0
OMNICOM GROUP INC    COM        681919106    1602     33700 SH    PUT DEFINED                 16,24,25    33700     0        0
OMEGA HEALTHCARE INV COM        681936100     263     16400 SH    DEFINED                     14,31       16400     0        0
OMEGA HEALTHCARE INV COM        681936100     249     15520 SH    DEFINED                     7,11,13     15520     0        0
OMEGA HEALTHCARE INV COM        681936100    5474    341043 SH    DEFINED                     16,24,25   285974     0    55068
OMEGA HEALTHCARE INV COM        681936100    9602    598226 SH    DEFINED                     32,40,41   598226     0        0
OMRIX BIOPHARMACEUTI COM        681989109     149      4300 SH    DEFINED                     30           4300     0        0
OMRIX BIOPHARMACEUTI COM        681989109    3428     98688 SH    DEFINED                     16,24,25    86722     0    11966
OMNI ENERGY SERVICES COM        68210720B     220     44991 SH    DEFINED                     16,24,25    39291     0     5700
OMNITURE INC         COM        68212S109    3068     92154 SH    DEFINED                     16,24,25    86561     0     5593
OMNIVISION TECHNOLOG COM        682128103    2063    131812 SH    DEFINED                     7,11       131812     0        0
OMNIVISION TECHNOLOG COM        682128103    8427    538961 SH    DEFINED                     16,24,25   538961     0        0
OMNIVISION TECHNOLOG COM        682128103    4068    259921 SH    DEFINED                     16,24,25   259266     0      655
```

```
OMNIVISION TECHNOLOG COM         682128103   6553   418700 SH  CALL DEFINED            15,16,24    418700     0        0
OMNIVISION TECHNOLOG COM         682128103   2063   131812 SH  CALL DEFINED            16,24,25    131812     0        0
OMNIVISION TECHNOLOG COM         682128103   2063   131812 SH  PUT  DEFINED            7,11        131812     0        0
OMNIVISION TECHNOLOG COM         682128103  15231   973200 SH  PUT  DEFINED            15,16,24    973200     0        0
OMNICELL INC        COM          68213N109    675    25065 SH       DEFINED            16,24,25     24115     0      950
ON ASSIGNMENT INC   COM          682159108    148    21050 SH       DEFINED            7,11,13      21050     0        0
ON ASSIGNMENT INC   COM          682159108      1      167 SH       DEFINED            16,24,25        47     0      120
ON SEMICONDUCTOR COR NOTE        68218AAE5    545   500000 PRN      DEFINED            16,24,25    500000     0        0
ON SEMICONDUCTOR COR COM         682189105  13982  1574559 SH       DEFINED            16,24,25   1294664     0   279895
ON SEMICONDUCTOR COR COM         682189105   1404   158100 SH  CALL DEFINED            15,16,24    158100     0        0
ON SEMICONDUCTOR COR COM         682189105    221    24900 SH  PUT  DEFINED            15,16,24     24900     0        0
1 800 FLOWERS COM   CL A         68243Q106    153    17488 SH       DEFINED            16,24,25     17488     0        0
ONEOK PARTNERS LP   UNIT LTD P   68268N103    208     3400 SH       DEFINED            7,11,13       3400     0        0
ONEOK PARTNERS LP   UNIT LTD P   68268N103  21524   351412 SH       DEFINED            16,24,25    315523     0    35888
ONEOK INC NEW       COM          682680103   1552    34669 SH       DEFINED            7,11         34669     0        0
ONEOK INC NEW       COM          682680103     25      550 SH       DEFINED            7,11,13        550     0        0
ONEOK INC NEW       COM          682680103   5718   127718 SH       DEFINED            16,24,25    117905     0     9813
ON2 TECHNOLOGIES INC COM         68338A107     73    71500 SH       DEFINED            16,24,25     69081     0     2419
ONYX PHARMACEUTICALS COM         683399109   5129    92207 SH       DEFINED            15,16,24     92207     0        0
ONYX PHARMACEUTICALS COM         683399109   1563    28099 SH       DEFINED            16,24,25     27366     0      733
ONYX PHARMACEUTICALS COM         683399109   7842   141000 SH  CALL DEFINED            15,16,24    141000     0        0
ONYX PHARMACEUTICALS COM         683399109    317     5700 SH  CALL DEFINED            16,24,25      5700     0        0
ONYX PHARMACEUTICALS COM         683399109  19111   343600 SH  PUT  DEFINED            15,16,24    343600     0        0
OPEN JT STK CO-VIMPE SPONSORED   68370R109    244     5862 SH       DEFINED            7,11             0     0     5862
OPEN JT STK CO-VIMPE SPONSORED   68370R109   7197   172998 SH       DEFINED            15,16,24    172998     0        0
OPEN JT STK CO-VIMPE SPONSORED   68370R109   7261   174546 SH       DEFINED            16,24,25    158370     0    16176
OPEN JT STK CO-VIMPE SPONSORED   68370R109    421    10125 SH       DEFINED            32,40,41     10125     0        0
OPEN JT STK CO-VIMPE SPONSORED   68370R109   8063   193817 SH       DEFINED            16,19,24,26,27 193817   0        0
OPEN JT STK CO-VIMPE SPONSORED   68370R109  22905   550600 SH  CALL DEFINED            15,16,24    550600     0        0
OPEN JT STK CO-VIMPE SPONSORED   68370R109  21699   521600 SH  PUT  DEFINED            15,16,24    521600     0        0
OPEN TEXT CORP      COM          683715106    667    21214 SH       DEFINED            16,24,25     20014     0     1200
OPEN TEXT CORP      COM          683715106     21      674 SH       DEFINED            4,6,7,11       674     0        0
OPENWAVE SYS INC    NOTE  2.75   683718AC4   3378  3500000 PRN      DEFINED            16,24,25   3500000     0        0
OPENWAVE SYS INC    COM NEW      683718308    418   160811 SH       DEFINED            15,16,24    160811     0        0
OPENWAVE SYS INC    COM NEW      683718308      9     3463 SH       DEFINED            16,24,25      3381     0       82
OPENWAVE SYS INC    COM NEW      683718308    850   327000 SH  CALL DEFINED            15,16,24    327000     0        0
OPENWAVE SYS INC    COM NEW      683718308     13     5000 SH  CALL DEFINED            16,24,25      5000     0        0
OPENWAVE SYS INC    COM NEW      683718308    384   147800 SH  PUT  DEFINED            15,16,24    147800     0        0
OPKO HEALTH INC     COM          68375N103     30    10480 SH       DEFINED            16,24,25     10275     0      205
OPPENHEIMER HLDGS IN CL A NON V  683797104    280     6612 SH       DEFINED            16,24,25      6612     0        0
ORACLE CORP         COM          68389X105   1309    57950 SH       DEFINED            12              0     0    57950
ORACLE CORP         COM          68389X105    827    36610 SH       DEFINED            30          36610     0        0
ORACLE CORP         COM          68389X105   5805   257073 SH       DEFINED            3,9              0     0   257073
ORACLE CORP         COM          68389X105  74981  3320667 SH       DEFINED            7,11       2369832  2250   948585
ORACLE CORP         COM          68389X105    361    16000 SH       DEFINED            16,24        16000     0        0
ORACLE CORP         COM          68389X105   4784   218877 SH       DEFINED            7,11,13     171202     0    40675
ORACLE CORP         COM          68389X105    264    11696 SH       DEFINED            7,11,33          0     0    11696
ORACLE CORP         COM          68389X105  22686  1004691 SH       DEFINED            15,16,24   1004691     0        0
ORACLE CORP         COM          68389X105 121211  5368072 SH       DEFINED            16,24,25   4447503     0   920569
ORACLE CORP         COM          68389X105  22146   980791 SH       DEFINED            32,40,41    980791     0        0
ORACLE CORP         COM          68389X105     19      830 SH       DEFINED            5-7,11,43,44     0   830        0
ORACLE CORP         COM          68389X105  14794   655169 SH       DEFINED            16,19,24,26,27 655169   0        0
ORACLE CORP         COM          68389X105   4157   184080 SH       DEFINED  2,6,7,10-11,18,20,21,28 184080   0        0
ORACLE CORP         COM          68389X105   2273   100644 SH  CALL DEFINED            7,11        100644     0        0
ORACLE CORP         COM          68389X105  27873  1234400 SH  CALL DEFINED            16,24,25   1234400     0        0
ORACLE CORP         COM          68389X105  20681   915900 SH  CALL DEFINED            16,24,25    915900     0        0
ORACLE CORP         COM          68389X105  60047  2659300 SH  PUT  DEFINED            15,16,24   2659300     0        0
ORACLE CORP         COM          68389X105  25464  1127744 SH  PUT  DEFINED            16,24,25   1127744     0        0
OPTIONSXPRESS HLDGS COM          684010101    248     7345 SH       DEFINED            7,11,13       7345     0        0
OPTIONSXPRESS HLDGS COM          684010101     51     1505 SH       DEFINED            7,11,33          0     0     1505
OPTIONSXPRESS HLDGS COM          684010101  10749   317821 SH       DEFINED            16,24,25    308147     0     9674
OPTIONSXPRESS HLDGS COM          684010101    329     9724 SH       DEFINED            32,40,41      9724     0        0
OPTIONSXPRESS HLDGS COM          684010101   2158    63800 SH  CALL DEFINED            15,16,24     63800     0        0
OPTIONSXPRESS HLDGS COM          684010101   6764   200000 SH  CALL DEFINED            16,24,25    200000     0        0
OPTIONSXPRESS HLDGS COM          684010101   2127    62900 SH  PUT  DEFINED            15,16,24     62900     0        0
ORASURE TECHNOLOGIES COM         68554V108    171    19258 SH       DEFINED            15,16,24     19258     0        0
ORASURE TECHNOLOGIES COM         68554V108    531    59710 SH       DEFINED            16,24,25     54610     0     5100
ORASURE TECHNOLOGIES COM         68554V108     14     1600 SH  CALL DEFINED            15,16,24      1600     0        0
ORASURE TECHNOLOGIES COM         68554V108     22     2500 SH  PUT  DEFINED            15,16,24      2500     0        0
ORBIT INTL CORP     COM NEW      685559304    219    25370 SH       DEFINED            16,24,25     23116     0     2254
ORBITAL SCIENCES COR COM         68556A106   1482    60427 SH       DEFINED            16,24,25     44784     0    15643
O REILLY AUTOMOTIVE  COM         686091109     45     1390 SH       DEFINED            7,11          1390     0        0
O REILLY AUTOMOTIVE  COM         686091109   1320    40717 SH       DEFINED            16,24,25     35751     0     4966
ORITANI FINL CORP   COM          68632J106    151    12272 SH       DEFINED            16,24,25      8814     0     3458
ORIX CORP           SPONSORED    686330101    161     1900 SH       DEFINED            30            1900     0        0
ORIX CORP           SPONSORED    686330101    133     1571 SH       DEFINED            7,11             0     0     1571
ORIX CORP           SPONSORED    686330101      6       70 SH       DEFINED            7,11,33          0     0       70
ORIX CORP           SPONSORED    686330101    651     7676 SH       DEFINED            16,24,25      7481     0      195
ORMAT TECHNOLOGIES I COM         686688102    601    10934 SH       DEFINED            7,11         10934     0        0
ORMAT TECHNOLOGIES I COM         686688102   1707    31034 SH       DEFINED            16,24,25     28918     0     2116
ORMAT TECHNOLOGIES I COM         686688102    376     6828 SH       DEFINED            16,19,24,26,27  6828    0        0
ORTHOVITA INC       COM          687501U02    293    83850 SH       DEFINED            16,24,25     32950     0    50900
OSCIENT PHARMACEUTIC NOTE  3.50  68812RAC9   1392  3481000 PRN      DEFINED            16,24,25   3481000     0        0
```

| Name of Issuer | Class | CUSIP | Value | Shares | SH/PRN | Put/Call | Discretion | Managers | Sole | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|---|
| OSCIENT PHARMACEUTIC | COM NEW | 68812R303 | 232 | 172125 | SH | | DEFINED | 31,45 | 172125 | 0 | 0 |
| OSCIENT PHARMACEUTIC | COM NEW | 68812R303 | 0 | 175 | SH | | DEFINED | 7,11,13 | 175 | 0 | 0 |
| OSCIENT PHARMACEUTIC | COM NEW | 68812R303 | 1 | 858 | SH | | DEFINED | 16,24,25 | 858 | 0 | 0 |
| OSHKOSH TRUCK CORP | COM | 688239201 | 564 | 11931 | SH | | DEFINED | 7,11 | 8331 | 0 | 3600 |
| OSHKOSH TRUCK CORP | COM | 688239201 | 954 | 20188 | SH | | DEFINED | 7,11,13 | 19788 | 0 | 400 |
| OSHKOSH TRUCK CORP | COM | 688239201 | 2789 | 59007 | SH | | DEFINED | 16,24,25 | 50889 | 0 | 8118 |
| OSHKOSH TRUCK CORP | COM | 688239201 | 277 | 5855 | SH | | DEFINED | 32,40,41 | 5855 | 0 | 0 |
| OSHKOSH TRUCK CORP | COM | 688239201 | 1115 | 23600 | SH | CALL | DEFINED | 15,16,24 | 23600 | 0 | 0 |
| OSHKOSH TRUCK CORP | COM | 688239201 | 3322 | 70300 | SH | PUT | DEFINED | 15,16,24 | 70300 | 0 | 0 |
| OSIRIS THERAPEUTICS | COM | 68827R108 | 132 | 11003 | SH | | DEFINED | 16,24,25 | 10823 | 0 | 180 |
| OSTEOTECH INC | COM | 688582105 | 58 | 7400 | SH | | DEFINED | 7,11,13 | 7400 | 0 | 0 |
| OSTEOTECH INC | COM | 688582105 | 252 | 32260 | SH | | DEFINED | 16,24,25 | 31570 | 0 | 690 |
| OTELCO INC | INCME DEP | 688823202 | 211 | 15151 | SH | | DEFINED | 16,24,25 | 15151 | 0 | 0 |
| OTTER TAIL CORP | COM | 689648103 | 565 | 16315 | SH | | DEFINED | 16,24,25 | 11771 | 0 | 4544 |
| OVERSEAS SHIPHOLDING | COM | 690368105 | 3708 | 49818 | SH | | DEFINED | 7,11 | 49818 | 0 | 0 |
| OVERSEAS SHIPHOLDING | COM | 690368105 | 50 | 675 | SH | | DEFINED | 7,11,13 | 675 | 0 | 0 |
| OVERSEAS SHIPHOLDING | COM | 690368105 | 1319 | 17722 | SH | | DEFINED | 16,24,25 | 16369 | 0 | 1352 |
| OVERSTOCK COM INC DE | NOTE 3.75 | 690370AB7 | 12 | 15000 | PRN | | DEFINED | 16,24,25 | 15000 | 0 | 0 |
| OVERSTOCK COM INC DE | COM | 690370101 | 1415 | 91145 | SH | | DEFINED | 15,16,24 | 91145 | 0 | 0 |
| OVERSTOCK COM INC DE | COM | 690370101 | 52 | 3340 | SH | | DEFINED | 16,24,25 | 3340 | 0 | 0 |
| OVERSTOCK COM INC DE | COM | 690370101 | 2893 | 186300 | SH | CALL | DEFINED | 15,16,24 | 186300 | 0 | 0 |
| OVERSTOCK COM INC DE | COM | 690370101 | 5622 | 362000 | SH | PUT | DEFINED | 15,16,24 | 362000 | 0 | 0 |
| OWENS & MINOR INC NE | COM | 690732102 | 129 | 3050 | SH | | DEFINED | 30 | 3050 | 0 | 0 |
| OWENS & MINOR INC NE | COM | 690732102 | 249 | 5865 | SH | | DEFINED | 7,11,13 | 5865 | 0 | 0 |
| OWENS & MINOR INC NE | COM | 690732102 | 165 | 3886 | SH | | DEFINED | 16,24,25 | 2411 | 0 | 1475 |
| OWENS CORNING NEW | COM | 690742101 | 1439 | 71160 | SH | | DEFINED | 15,16,24 | 71160 | 0 | 0 |
| OWENS CORNING NEW | COM | 690742101 | 295 | 14574 | SH | | DEFINED | 16,24,25 | 10654 | 0 | 3920 |
| OWENS CORNING NEW | COM | 690742101 | 3039 | 150300 | SH | CALL | DEFINED | 15,16,24 | 150300 | 0 | 0 |
| OWENS CORNING NEW | COM | 690742101 | 2608 | 129000 | SH | PUT | DEFINED | 15,16,24 | 129000 | 0 | 0 |
| OWENS ILL INC | COM NEW | 690768403 | 2647 | 53482 | SH | | DEFINED | 7,11 | 53482 | 0 | 0 |
| OWENS ILL INC | COM NEW | 690768403 | 8483 | 171372 | SH | | DEFINED | 15,16,24 | 171372 | 0 | 0 |
| OWENS ILL INC | COM NEW | 690768403 | 72796 | 1470629 | SH | | DEFINED | 16,24,25 | 1441491 | 0 | 29138 |
| OWENS ILL INC | COM NEW | 690768403 | 2725 | 55055 | SH | | DEFINED | 32,40,41 | 55055 | 0 | 0 |
| OWENS ILL INC | COM NEW | 690768403 | 3663 | 74000 | SH | CALL | DEFINED | 15,16,24 | 74000 | 0 | 0 |
| OWENS ILL INC | COM NEW | 690768403 | 9326 | 188400 | SH | PUT | DEFINED | 15,16,24 | 188400 | 0 | 0 |
| OWENS ILL INC | PFD CONV $ | 690768502 | 1629 | 32594 | SH | | DEFINED | 16,24,25 | 20280 | 0 | 12314 |
| OXFORD INDS INC | COM | 691497309 | 57 | 2200 | SH | | DEFINED | 30 | 2200 | 0 | 0 |
| OXFORD INDS INC | COM | 691497309 | 160 | 6221 | SH | | DEFINED | 16,24,25 | 4821 | 0 | 1400 |
| PCM FUND INC | COM | 69323T101 | 165 | 16087 | SH | | DEFINED | 16,24,25 | 9412 | 0 | 6675 |
| PC-TEL INC | COM | 69325Q105 | 484 | 70580 | SH | | DEFINED | 16,24,25 | 33830 | 0 | 36750 |
| PDL BIOPHARMA INC | COM | 69329Y104 | 2288 | 130611 | SH | | DEFINED | 7,11 | 130611 | 0 | 0 |
| PDL BIOPHARMA INC | COM | 69329Y104 | 1422 | 81142 | SH | | DEFINED | 16,24,25 | 64770 | 0 | 16372 |
| PDL BIOPHARMA INC | COM | 69329Y104 | 44 | 2485 | SH | | DEFINED | 32,40,41 | 2485 | 0 | 0 |
| PDL BIOPHARMA INC | COM | 69329Y104 | 15934 | 909500 | SH | | DEFINED | 15,16,24 | 909500 | 0 | 0 |
| PDL BIOPHARMA INC | COM | 69329Y104 | 4979 | 284200 | SH | CALL | DEFINED | 16,24,25 | 284200 | 0 | 0 |
| PDL BIOPHARMA INC | COM | 69329Y104 | 2905 | 165800 | SH | PUT | DEFINED | 15,16,24 | 165800 | 0 | 0 |
| PDL BIOPHARMA INC | COM | 69329Y104 | 2996 | 171000 | SH | PUT | DEFINED | 16,24,25 | 171000 | 0 | 0 |
| PG&E CORP | COM | 69331C108 | 13 | 300 | SH | | DEFINED | 12 | 0 | 0 | 300 |
| PG&E CORP | COM | 69331C108 | 7675 | 178115 | SH | | DEFINED | 7,11 | 118309 | 0 | 59806 |
| PG&E CORP | COM | 69331C108 | 58 | 1340 | SH | | DEFINED | 7,11,13 | 1315 | 0 | 25 |
| PG&E CORP | COM | 69331C108 | 15 | 350 | SH | | DEFINED | 7,11,33 | 0 | 0 | 350 |
| PG&E CORP | COM | 69331C108 | 18770 | 435601 | SH | | DEFINED | 16,24,25 | 415403 | 0 | 20197 |
| PG&E CORP | COM | 69331C108 | 5703 | 132351 | SH | | DEFINED | 32,40,41 | 132351 | 0 | 0 |
| PG&E CORP | COM | 69331C108 | 0 | 2 | SH | | DEFINED | 16,19,24,26,27 | 2 | 0 | 0 |
| PG&E CORP | COM | 69331C108 | 2291 | 53161 | SH | CALL | DEFINED | 7,11 | 53161 | 0 | 0 |
| PG&E CORP | COM | 69331C108 | 491 | 11400 | SH | CALL | DEFINED | 15,16,24 | 11400 | 0 | 0 |
| PG&E CORP | COM | 69331C108 | 427 | 9900 | SH | CALL | DEFINED | 16,24,25 | 9900 | 0 | 0 |
| PG&E CORP | COM | 69331C108 | 405 | 9400 | SH | PUT | DEFINED | 15,16,24 | 9400 | 0 | 0 |
| PG&E CORP | COM | 69331C108 | 2291 | 53161 | SH | PUT | DEFINED | 16,24,25 | 53161 | 0 | 0 |
| PFF BANCORP INC | COM | 69331W104 | 355 | 29476 | SH | | DEFINED | 16,24,25 | 27026 | 0 | 2450 |
| P F CHANGS CHINA BIS | COM | 69333Y108 | 1135 | 49705 | SH | | DEFINED | 15,16,24 | 49705 | 0 | 0 |
| P F CHANGS CHINA BIS | COM | 69333Y108 | 1624 | 71114 | SH | | DEFINED | 16,24,25 | 52462 | 0 | 18652 |
| P F CHANGS CHINA BIS | COM | 69333Y108 | 822 | 36000 | SH | CALL | DEFINED | 15,16,24 | 36000 | 0 | 0 |
| P F CHANGS CHINA BIS | COM | 69333Y108 | 1692 | 74100 | SH | PUT | DEFINED | 15,16,24 | 74100 | 0 | 0 |
| PICO HLDGS INC | COM | 69336205 | 23 | 674 | SH | | DEFINED | 7,11 | 674 | 0 | 0 |
| PICO HLDGS INC | COM NEW | 69336205 | 1456 | 43303 | SH | | DEFINED | 16,24,25 | 31025 | 0 | 12278 |
| PMC-SIERRA INC | COM | 69344F106 | 141 | 21600 | SH | | DEFINED | 30 | 21600 | 0 | 0 |
| PMC-SIERRA INC | COM | 69344F106 | 176 | 26925 | SH | | DEFINED | 7,11,13 | 26925 | 0 | 0 |
| PMC-SIERRA INC | COM | 69344F106 | 1006 | 153753 | SH | | DEFINED | 16,24,25 | 152172 | 0 | 1581 |
| PMC-SIERRA INC | COM | 69344F106 | 1555 | 237700 | SH | CALL | DEFINED | 15,16,24 | 237700 | 0 | 0 |
| PMC-SIERRA INC | COM | 69344F106 | 285 | 43600 | SH | PUT | DEFINED | 15,16,24 | 43600 | 0 | 0 |
| PMI GROUP INC | COM | 69344M101 | 55 | 4137 | SH | | DEFINED | 7,11 | 4137 | 0 | 0 |
| PMI GROUP INC | COM | 69344M101 | 2 | 140 | SH | | DEFINED | 7,11,33 | 0 | 0 | 140 |
| PMI GROUP INC | COM | 69344M101 | 7069 | 532272 | SH | | DEFINED | 16,24,25 | 474135 | 0 | 58137 |
| PNC FINL SVCS GROUP | COM | 693475105 | 31897 | 485872 | SH | | DEFINED | 7,11 | 482565 | 0 | 3307 |
| PNC FINL SVCS GROUP | COM | 693475105 | 1264 | 19250 | SH | | DEFINED | 7,11,13 | 16963 | 0 | 2287 |
| PNC FINL SVCS GROUP | COM | 693475105 | 3 | 48 | SH | | DEFINED | 7,11,33 | 0 | 0 | 48 |
| PNC FINL SVCS GROUP | COM | 693475105 | 18242 | 277863 | SH | | DEFINED | 16,24,25 | 222073 | 0 | 55789 |
| PNC FINL SVCS GROUP | COM | 693475105 | 702 | 10694 | SH | | DEFINED | 32,40,41 | 10694 | 0 | 0 |
| PNC FINL SVCS GROUP | COM | 693475105 | 27816 | 423700 | SH | CALL | DEFINED | 15,16,24 | 423700 | 0 | 0 |
| PNC FINL SVCS GROUP | COM | 693475105 | 4103 | 62500 | SH | CALL | DEFINED | 16,24,25 | 62500 | 0 | 0 |
| PNC FINL SVCS GROUP | COM | 693475105 | 20148 | 306900 | SH | PUT | DEFINED | 15,16,24 | 306900 | 0 | 0 |
| PNC FINL SVCS GROUP | COM | 693475105 | 4103 | 62500 | SH | PUT | DEFINED | 16,24,25 | 62500 | 0 | 0 |
| POSCO | SPONSORED | 693483109 | 1134 | 7539 | SH | | DEFINED | 3,9 | 0 | 0 | 7539 |
| POSCO | SPONSORED | 693483109 | 39 | 258 | SH | | DEFINED | 7,11 | 258 | 0 | 0 |
| POSCO | SPONSORED | 693483109 | 43 | 288 | SH | | DEFINED | 7,11,13 | 182 | 0 | 106 |
| POSCO | SPONSORED | 693483109 | 6052 | 40233 | SH | | DEFINED | 16,24,25 | 36073 | 0 | 4160 |
| POSCO | SPONSORED | 693483109 | 45 | 300 | SH | | DEFINED | 32,40,41 | 300 | 0 | 0 |
| POSCO | SPONSORED | 693483109 | 2407 | 16000 | SH | | DEFINED | 16,17,22-24 | 16000 | 0 | 0 |
| POSCO | SPONSORED | 693483109 | 1 | 4 | SH | | DEFINED | 16,19,24,26,27 | 4 | 0 | 0 |
| PNM RES INC | COM | 69349H107 | 363 | 16900 | SH | | DEFINED | 7,11,13 | 16900 | 0 | 0 |
| PNM RES INC | COM | 69349H107 | 346 | 16115 | SH | | DEFINED | 16,24,25 | 13249 | 0 | 2866 |
| PPG INDS INC | COM | 695061C07 | 91 | 1292 | SH | | DEFINED | 3,9 | 0 | 0 | 1292 |
| PPG INDS INC | COM | 695061C07 | 1279 | 18216 | SH | | DEFINED | 7,11 | 12216 | 0 | 6000 |
| PPG INDS INC | COM | 695061C07 | 1180 | 16801 | SH | | DEFINED | 7,11,13 | 16313 | 0 | 488 |
| PPG INDS INC | COM | 695061C07 | 262 | 3725 | SH | | DEFINED | 7,11,33 | 0 | 0 | 3725 |
| PPG INDS INC | COM | 695061C07 | 18822 | 268009 | SH | | DEFINED | 16,24,25 | 224576 | 0 | 43433 |
| PPG INDS INC | COM | 695061C07 | 326 | 4639 | SH | | DEFINED | 32,40,41 | 4639 | 0 | 0 |
| PPG INDS INC | COM | 695061C07 | 21 | 300 | SH | | DEFINED | 5-7,11,43,44 | 0 | 300 | 0 |
| PPG INDS INC | COM | 695061C07 | 17782 | 253200 | SH | CALL | DEFINED | 15,16,24 | 253200 | 0 | 0 |
| PPG INDS INC | COM | 695061C07 | 1194 | 17000 | SH | CALL | DEFINED | 16,24,25 | 17000 | 0 | 0 |
| PPG INDS INC | COM | 695061C07 | 3701 | 52700 | SH | PUT | DEFINED | 15,16,24 | 52700 | 0 | 0 |
| PPG INDS INC | COM | 695061C07 | 1060 | 15100 | SH | PUT | DEFINED | 16,24,25 | 15100 | 0 | 0 |
| PPL CORP | COM | 69351T106 | 2033 | 39023 | SH | | DEFINED | 7,11 | 36623 | 0 | 2400 |
| PPL CORP | COM | 69351T106 | 31254 | 600000 | SH | | DEFINED | 16,24 | 600000 | 0 | 0 |
| PPL CORP | COM | 69351T106 | 416 | 7989 | SH | | DEFINED | 7,11,13 | 7989 | 0 | 0 |
| PPL CORP | COM | 69351T106 | 16 | 300 | SH | | DEFINED | 7,11,33 | 0 | 0 | 300 |
| PPL CORP | COM | 69351T106 | 17356 | 333201 | SH | | DEFINED | 16,24,25 | 289998 | 0 | 43202 |
| PPL CORP | COM | 69351T106 | 16118 | 309420 | SH | | DEFINED | 32,40,41 | 309420 | 0 | 0 |
| PS BUSINESS PKS INC | COM | 69360J107 | 95 | 1800 | SH | | DEFINED | 16,24,25 | 1300 | 0 | 500 |
| PS BUSINESS PKS INC | COM | 69360J107 | 388 | 7384 | SH | | DEFINED | 32,40,41 | 7384 | 0 | 0 |
| PSS WORLD MED INC | COM | 69366A100 | 384 | 19620 | SH | | DEFINED | 16,24,25 | 16905 | 0 | 2715 |
| PACCAR INC | COM | 693718108 | 3015 | 55343 | SH | | DEFINED | 7,11 | 55343 | 0 | 0 |
| PACCAR INC | COM | 693718108 | 259 | 4751 | SH | | DEFINED | 16,24 | 4751 | 0 | 0 |

```
PACCAR INC              COM       693718108     6354   116638 SH   DEFINED       15,16,24   116638        0        0
PACCAR INC              COM       693718108    13121   240847 SH   DEFINED       16,24,25   230754        0    10092
PACCAR INC              COM       693718108     1052    19302 SH   DEFINED       32,40,41    19302        0        0
PACCAR INC              COM       693718108     6983   128171 SH   DEFINED         7,11    128171        0        0
PACCAR INC              COM       693718108    10199   187200 SH   CALL DEFINED  15,16,24   187200        0        0
PACCAR INC              COM       693718108    23669   434450 SH   PUT  DEFINED  15,16,24   434450        0        0
PACCAR INC              COM       693718108     6983   128171 SH   PUT  DEFINED  16,24,25   128171        0        0
PACIFIC CAP BANCORP     COM       69404P101        6      322 SH   DEFINED         7,11         0        0      322
PACIFIC CAP BANCORP     COM       69404P101      509    25268 SH   DEFINED       16,24,25    23724        0     1544
PACIFIC ETHANOL INC     COM       69423U107     1391   169420 SH   DEFINED       15,16,24   169420        0        0
PACIFIC ETHANOL INC     COM       69423U107      223    27104 SH   DEFINED       16,24,25    21687        0     5417
PACIFIC ETHANOL INC     COM       69423U107     2209   269100 SH   CALL DEFINED  15,16,24   269100        0        0
PACIFIC ETHANOL INC     COM       69423U107     4704   573000 SH   PUT  DEFINED  15,16,24   573000        0        0
PACIFIC SUNWEAR CALI    COM       694873100     2953   209299 SH   DEFINED         7,11    209299        0        0
PACIFIC SUNWEAR CALI    COM       694873100      838    59384 SH   DEFINED       16,24,25    51359        0     8025
PACIFIC SUNWEAR CALI    COM       694873100      632    44800 SH   CALL DEFINED  15,16,24    44800        0        0
PACIFIC SUNWEAR CALI    COM       694873100      545    38600 SH   PUT  DEFINED  15,16,24    38600        0        0
PACKAGING CORP AMER     COM       695156109       32     1121 SH   DEFINED         7,11      1121        0        0
PACKAGING CORP AMER     COM       695156109        8      300 SH   DEFINED        7,11,13      300        0        0
PACKAGING CORP AMER     COM       695156109     6121   217067 SH   DEFINED       16,24,25   193286        0    23781
PACKAGING CORP AMER     COM       695156109    13391   474850 SH   DEFINED       32,40,41   474850        0        0
PACKAGING CORP AMER     COM       695156109      598    21200 SH   CALL DEFINED  16,24,25    21200        0        0
PACKETEER INC           COM       695210104        3      550 SH   DEFINED        7,11,13      550        0        0
PACKETEER INC           COM       695210104      197    32022 SH   DEFINED       16,24,25    32022        0        0
PACTIV CORP             COM       695257105      353    13246 SH   DEFINED         7,11     13246        0        0
PACTIV CORP             COM       695257105      551    20675 SH   DEFINED        7,11,13    20675        0        0
PACTIV CORP             COM       695257105       41     1530 SH   DEFINED        7,11,33        0        0     1530
PACTIV CORP             COM       695257105    19843   745145 SH   DEFINED       16,24,25   678062        0    67083
PACTIV CORP             COM       695257105      159     5974 SH   DEFINED       32,40,41     5974        0        0
PACTIV CORP             COM       695257105       53     2000 SH   CALL DEFINED  16,24,25     2000        0        0
PAETEC HOLDING CORP     COM       69545N107     2653   272126 SH   DEFINED       16,24,25   271926        0      200
PAETEC HOLDING CORP     COM       69545N107     1248   128000 SH   CALL DEFINED    7,11    128000        0        0
PALL CORP               COM       696429307      351     8715 SH   DEFINED          3,9         0        0     8715
PALL CORP               COM       696429307      792    19633 SH   DEFINED         7,11     19633        0        0
PALL CORP               COM       696429307      838    20775 SH   DEFINED        7,11,13    20475        0      300
PALL CORP               COM       696429307      174     4320 SH   DEFINED        7,11,33        0        0     4320
PALL CORP               COM       696429307    96669  2397546 SH   DEFINED       16,24,25  2247262        0   150283
PALL CORP               COM       696429307     1587    39368 SH   DEFINED       32,40,41    39368        0        0
PALM HARBOR HOMES       NOTE 3.25 696639AB9      927  1310000 PRN  DEFINED       16,24,25  1310000        0        0
PALM INC NEW            COM       696643105      325    51269 SH   DEFINED       16,24,25    46092        0     5177
PALM INC NEW            COM       696643105     2480   391200 SH   CALL DEFINED  15,16,24   391200        0        0
PALM INC NEW            COM       696643105     2131   336100 SH   PUT  DEFINED  15,16,24   336100        0        0
PAN AMERICAN SILVER     COM       697900108     2016    57729 SH   DEFINED       15,16,24    57729        0        0
PAN AMERICAN SILVER     COM       697900108     3012    86225 SH   DEFINED       16,24,25    74693        0    11532
PAN AMERICAN SILVER     COM       697900108       82     2360 SH   DEFINED       32,40,41     2360        0        0
PAN AMERICAN SILVER     COM       697900108     2146    61445 SH   DEFINED        4,6,7,11    61445        0        0
PAN AMERICAN SILVER     COM       697900108      122     3500 SH   DEFINED     5-7,11,43,44        0     3500        0
PAN AMERICAN SILVER     COM       697900108     1970    56400 SH   CALL DEFINED  15,16,24    56400        0        0
PAN AMERICAN SILVER     COM       697900108     4527   129600 SH   PUT  DEFINED  15,16,24   129600        0        0
PANERA BREAD CO         CL A      69840W108       13      349 SH   DEFINED         7,11       349        0        0
PANERA BREAD CO         CL A      69840W108     6145   171552 SH   DEFINED       16,24,25   168024        0     3528
PANERA BREAD CO         CL A      69840W108     4703   131300 SH   CALL DEFINED  15,16,24   131300        0        0
PANERA BREAD CO         CL A      69840W108     1877    52400 SH   PUT  DEFINED  15,16,24    52400        0        0
PANTRY INC              COM       698657103     4965   190000 SH   DEFINED         7,11    190000        0        0
PANTRY INC              COM       698657103       77     2950 SH   DEFINED       16,24,25     2800        0      150
PAPA JOHNS INTL INC     COM       698813102       11      500 SH   DEFINED        7,11,13      500        0        0
PAPA JOHNS INTL INC     COM       698813102     1029    45342 SH   DEFINED       16,24,25    43721        0     1621
PAR PHARMACEUTICAL C    COM       69888P106     2703   112625 SH   DEFINED         7,11    112625        0        0
PAR PHARMACEUTICAL C    COM       69888P106      669    27886 SH   DEFINED       16,24,25    25314        0     2572
PAR PHARMACEUTICAL C    COM       69888P106      223     9300 SH   CALL DEFINED  15,16,24     9300        0        0
PAR PHARMACEUTICAL C    COM       69888P106       36     1500 SH   PUT  DEFINED  15,16,24     1500        0        0
PARAGON SHIPPING INC    CL A      69913R309      672    38024 SH   DEFINED       16,24,25    37524        0      500
PARALLEL PETR CORP D    COM       699157103       85     4800 SH   DEFINED           30      4800        0        0
PARALLEL PETR CORP D    COM       699157103      109     6184 SH   DEFINED       16,24,25     6184        0        0
PARAMETRIC TECHNOLOG    COM NEW   699173209      195    10949 SH   DEFINED         7,11     10949        0        0
PARAMETRIC TECHNOLOG    COM NEW   699173209      606    33926 SH   DEFINED       16,24,25    33778        0      148
PAREXEL INTL CORP       COM       699462107      251     5196 SH   DEFINED       16,24,25     5196        0        0
PARK OHIO HLDGS CORP    COM       700666100       45     1800 SH   DEFINED        7,11,13     1800        0        0
PARK OHIO HLDGS CORP    COM       700666100      407    16231 SH   DEFINED       16,24,25    13920        0     2311
PARKER DRILLING CO      COM       701081101      167    22065 SH   DEFINED       15,16,24    22065        0        0
PARKER DRILLING CO      COM       701081101       29     3828 SH   DEFINED       16,24,25     3404        0      424
PARKER DRILLING CO      COM       701081101      367    48600 SH   CALL DEFINED  15,16,24    48600        0        0
PARKER DRILLING CO      COM       701081101      378    50100 SH   PUT  DEFINED  15,16,24    50100        0        0
PARKER HANNIFIN CORP    COM       701094104      610     8100 SH   DEFINED           12         0        0     8100
PARKER HANNIFIN CORP    COM       701094104     6694    88887 SH   DEFINED          3,9         0        0    88887
PARKER HANNIFIN CORP    COM       701094104     7487    99413 SH   DEFINED         7,11     13373      600    85440
PARKER HANNIFIN CORP    COM       701094104      514     6821 SH   DEFINED        7,11,13     2621        0     4200
PARKER HANNIFIN CORP    COM       701094104       31      412 SH   DEFINED        7,11,33        0        0      412
PARKER HANNIFIN CORP    COM       701094104    14076   186903 SH   DEFINED       16,24,25   160333        0    26569
PARKER HANNIFIN CORP    COM       701094104     5446    72311 SH   DEFINED       32,40,41    72311        0        0
PARKERVISION INC        COM       701354102        0        6 SH   DEFINED         7,11         6        0        0
PARKERVISION INC        COM       701354102     4854   306800 SH   DEFINED       16,24,25   300800        0     6000
PARKERVISION INC        COM       701354102     4746   300000 SH   PUT  DEFINED  16,24,25   300000        0        0
PARKVALE FINL CORP      COM       701492100      242     8731 SH   DEFINED       16,24,25      731        0     8000
PARKWAY PPTYS INC       COM       70159Q104       41     1103 SH   DEFINED       16,24,25     1103        0        0
PARKWAY PPTYS INC       COM       70159Q104      270     7289 SH   DEFINED       32,40,41     7289        0        0
PARLUX FRAGRANCES IN    COM       701645103      241    59000 SH   DEFINED       16,24,25    51000        0     8000
PARTNER COMMUNICATIO    ADR       70211M109      205     9291 SH   DEFINED       16,24,25     7886        0     1405
PATNI COMPUTER SYS      SPONS ADR 703248203      439    27000 SH   DEFINED     16,17,22-24   27000        0        0
PATRICK INDS INC        COM       703343103      484    48600 SH   DEFINED       16,24,25    35200        0    13400
PATRIOT COAL CORP       COM       70336T104      199     4760 SH   DEFINED         7,11      4760        0        0
PATRIOT COAL CORP       COM       70336T104       11      262 SH   DEFINED        7,11,13      237        0       25
PATRIOT COAL CORP       COM       70336T104       91     2178 SH   DEFINED        7,11,13        0        0     2178
PATRIOT COAL CORP       COM       70336T104     1995    47328 SH   DEFINED       16,24,25    40825        0     6503
PATRIOT COAL CORP       COM       70336T104     1720    41200 SH   CALL DEFINED  15,16,24    41200        0        0
PATRIOT COAL CORP       COM       70336T104      259     6200 SH   PUT  DEFINED  15,16,24     6200        0        0
PATTERSON COMPANIES     COM       703395103      713    21010 SH   DEFINED         7,11     21010        0        0
PATTERSON COMPANIES     COM       703395103      998    29400 SH   DEFINED        7,11,13    29200        0      200
PATTERSON COMPANIES     COM       703395103        2       62 SH   DEFINED        7,11,33       62        0        0
PATTERSON COMPANIES     COM       703395103     4181   123147 SH   DEFINED       16,24,25    79057        0    44090
PATTERSON COMPANIES     COM       703395103      108     3192 SH   DEFINED       32,40,41     3192        0        0
PATTERSON UTI ENERGY    COM       703481101      141     7200 SH   DEFINED           30      7200        0        0
PATTERSON UTI ENERGY    COM       703481101     1775    90957 SH   DEFINED         7,11     90957        0        0
PATTERSON UTI ENERGY    COM       703481101      694    35575 SH   DEFINED        7,11,13    35075        0      500
PATTERSON UTI ENERGY    COM       703481101      229    11757 SH   DEFINED       15,16,24    11757        0        0
PATTERSON UTI ENERGY    COM       703481101     4182   214217 SH   DEFINED       16,24,25   181397        0    32820
PATTERSON UTI ENERGY    COM       703481101       89     4547 SH   DEFINED       32,40,41     4547        0        0
PATTERSON UTI ENERGY    COM       703481101     7240   370900 SH   CALL DEFINED  15,16,24   370900        0        0
PATTERSON UTI ENERGY    COM       703481101      960    49200 SH   CALL DEFINED  16,24,25    49200        0        0
PATTERSON UTI ENERGY    COM       703481101     5407   277000 SH   PUT  DEFINED    7,11    277000        0        0
PATTERSON UTI ENERGY    COM       703481101     1294    66300 SH   PUT  DEFINED  16,24,25    66300        0        0
PAYCHEX INC             COM       704326107     2003    55299 SH   DEFINED         7,11     54599        0      700
PAYCHEX INC             COM       704326107     1793    49503 SH   DEFINED        7,11,13    48528        0      975
PAYCHEX INC             COM       704326107      108     2990 SH   DEFINED        7,11,33        0        0     2990
```

```
PAYCHEX INC            COM          704326107    39386    1087414 SH      DEFINED       16,24,25      897452      0   189961
PAYCHEX INC            COM          704326107     3156      87141 SH      DEFINED       32,40,41       87141      0        0
PAYCHEX INC            COM          704326107     9707     268000 SH CALL DEFINED       15,16,24      268000      0        0
PAYCHEX INC            COM          704326107     9747     269100 SH CALL DEFINED       16,24,25      269100      0        0
PAYCHEX INC            COM          704326107     3905     107800 SH PUT  DEFINED       15,16,24      107800      0        0
PAYCHEX INC            COM          704326107     6987     192900 SH PUT  DEFINED       16,24,25      192900      0        0
PEABODY ENERGY CORP    SDCV  4.75   704549AQ9    29054   22922000 PRN     DEFINED       16,24,25    22922000     0        0
PEABODY ENERGY CORP    COM          704549104     3369      54659 SH      DEFINED        7,11        54659       0        0
PEABODY ENERGY CORP    COM          704549104      241       3910 SH      DEFINED        7,11,13      3660       0      250
PEABODY ENERGY CORP    COM          704549104     1403      22757 SH      DEFINED        7,11,33          0      0    22757
PEABODY ENERGY CORP    COM          704549104     2972      48215 SH      DEFINED       15,16,24      48215      0        0
PEABODY ENERGY CORP    COM          704549104    45411     736717 SH      DEFINED       16,24,25     600305      0   136411
PEABODY ENERGY CORP    COM          704549104     4210      68295 SH      DEFINED       32,40,41      68295      0        0
PEABODY ENERGY CORP    COM          704549104    47450     769800 SH CALL DEFINED       15,16,24     769800      0        0
PEABODY ENERGY CORP    COM          704549104    46298     751100 SH PUT  DEFINED       15,16,24     751100      0        0
PEARSON PLC            SPONSORED    705015105     1146      79079 SH      DEFINED       16,24,25      77562      0     1517
PEDIATRIX MED GROUP    COM          705324101      104       1525 SH      DEFINED         30          1525       0        0
PEDIATRIX MED GROUP    COM          705324101       40        584 SH      DEFINED        7,11          584       0        0
PEDIATRIX MED GROUP    COM          705324101     2698      39587 SH      DEFINED       16,24,25      25317      0    14270
PEDIATRIX MED GROUP    COM          705324101       27        400 SH      DEFINED       32,40,41       400       0        0
PEETS COFFEE & TEA I   COM          705560100     1088      37424 SH      DEFINED       16,24,25      36236      0     1188
PEMCO AVIATION INC     COM          706444106       38      13300 SH      DEFINED       16,24,25       2700      0    10600
PENGROWTH ENERGY TR    TR UNIT NE   706902509     5937     334084 SH      DEFINED       16,24,25     285448      0    48635
PENGROWTH ENERGY TR    TR UNIT NE   706902509     2536     142700 SH CALL DEFINED       15,16,24     142700      0        0
PENGROWTH ENERGY TR    TR UNIT NE   706902509      556      31300 SH      DEFINED       15,16,24      31300      0        0
PENGROWTH ENERGY TR    TR UNIT NE   706902509        5        300 SH PUT  DEFINED       16,24,25          0      0      300
PENFORD CORP           COM          707051108      354      13848 SH      DEFINED       16,24,25      13848      0        0
PENN NATL GAMING INC   COM          707569109       53        883 SH      DEFINED        7,11          883       0        0
PENN NATL GAMING INC   COM          707569109     2382      40006 SH      DEFINED       16,24,25      32528      0     7478
PENN NATL GAMING INC   COM          707569109      542       9100 SH      DEFINED       32,40,41       9100      0        0
PENN NATL GAMING INC   COM          707569109     2477      41600 SH CALL DEFINED       15,16,24      41600      0        0
PENN NATL GAMING INC   COM          707569109       71       1200 SH CALL DEFINED       16,24,25       1200      0        0
PENN NATL GAMING INC   COM          707569109      488       8200 SH PUT  DEFINED       15,16,24       8200      0        0
PENN NATL GAMING INC   COM          707569109      250       4200 SH PUT  DEFINED       16,24,25       4200      0        0
PENN TREATY AMERN CO   COM NEW      707874400      190      29340 SH      DEFINED       16,24,25      26340      0     3000
PENN VA CORP           COM          707882106       65       1500 SH      DEFINED         30          1500       0        0
PENN VA CORP           COM          707882106     2072      47498 SH      DEFINED       16,24,25      47498      0        0
PENN VA RESOURCES PA   COM          707884102      165       6700 SH      DEFINED        7,11,13      5500       0     1200
PENN VA RESOURCES PA   COM          707884102     2063      83943 SH      DEFINED       16,24,25      64073      0    19870
PENN WEST ENERGY TR    TR UNIT      707885109     6583     253200 SH      DEFINED         42         253200      0        0
PENN WEST ENERGY TR    TR UNIT      707885109     1571      60436 SH      DEFINED        7,11,33          0      0    60436
PENN WEST ENERGY TR    TR UNIT      707885109    12415     477516 SH      DEFINED       16,24,25     445664      0    31852
PENN WEST ENERGY TR    TR UNIT      707885109      197       7561 SH      DEFINED       32,40,41       7561      0        0
PENN WEST ENERGY TR    TR UNIT      707885109       84       3245 SH      DEFINED       4,6,7,11       3245      0        0
PENNEY J C INC         COM          708160106      318       7225 SH      DEFINED         12             0      0     7225
PENNEY J C INC         COM          708160106     3032      68928 SH      DEFINED        3,9             0      0    68928
PENNEY J C INC         COM          708160106     6597     149964 SH      DEFINED        7,11        19158       0   130806
PENNEY J C INC         COM          708160106      563      12792 SH      DEFINED        7,11,13      3517       0     9275
PENNEY J C INC         COM          708160106       12        280 SH      DEFINED        7,11,33          0      0      280
PENNEY J C INC         COM          708160106     5023     114182 SH      DEFINED       15,16,24     114182      0        0
PENNEY J C INC         COM          708160106    15822     359682 SH      DEFINED       16,24,25     316686      0    42996
PENNEY J C INC         COM          708160106      402       9133 SH      DEFINED       32,40,41       9133      0        0
PENNEY J C INC         COM          708160106       79       1800 SH      DEFINED       5-7,11,43,44       0  1800        0
PENNEY J C INC         COM          708160106    26121     593800 SH CALL DEFINED       15,16,24     593800      0        0
PENNEY J C INC         COM          708160106      554      12600 SH CALL DEFINED       16,24,25      12600      0        0
PENNEY J C INC         COM          708160106    29249     664900 SH PUT  DEFINED       15,16,24     664900      0        0
PENNEY J C INC         COM          708160106     1056      24000 SH PUT  DEFINED       16,24,25      24000      0        0
PENNS WOODS BANCORP    COM          708430103      378      11645 SH      DEFINED       16,24,25      10950      0      695
PENNSYLVANIA RL ESTA   SH BEN INT   709102107     1630      54930 SH      DEFINED        7,11        54930       0        0
PENNSYLVANIA RL ESTA   SH BEN INT   709102107      220       7400 SH      DEFINED       14,31         7400       0        0
PENNSYLVANIA RL ESTA   SH BEN INT   709102107     2922      98464 SH      DEFINED       16,24,25      68802      0    29661
PENNSYLVANIA RL ESTA   SH BEN INT   709102107      535      18035 SH      DEFINED       32,40,41      18035      0        0
PENNSYLVANIA RL ESTA   SH BEN INT   709102107    52088    1755000 SH CALL DEFINED        7,11       1755000      0        0
PENSKE AUTOMOTIVE GR   COM          70959W103      187      10716 SH      DEFINED       16,24,25      10716      0        0
PENSON WORLDWIDE INC   COM          709600100        1         54 SH      DEFINED       16,24           54       0        0
PENSON WORLDWIDE INC   COM          709600100      866      60376 SH      DEFINED       16,24,25      59876      0      500
PENTAIR INC            COM          709631105      640      18381 SH      DEFINED        7,11        18381       0        0
PENTAIR INC            COM          709631105      240       6905 SH      DEFINED        7,11,13      6905       0        0
PENTAIR INC            COM          709631105     7845     225364 SH      DEFINED       16,24,25     178217      0    47146
PENTAIR INC            COM          709631105      831      23859 SH      DEFINED       32,40,41      23859      0        0
PENWEST PHARMACEUTIC   COM          709754105       45       7619 SH      DEFINED       15,16,24      7619       0        0
PENWEST PHARMACEUTIC   COM          709754105       49       8396 SH      DEFINED       16,24,25      8396       0        0
PENWEST PHARMACEUTIC   COM          709754105      169      28900 SH CALL DEFINED       15,16,24     28900       0        0
PENWEST PHARMACEUTIC   COM          709754105       40       6900 SH PUT  DEFINED       15,16,24      6900       0        0
PEOPLES UNITED FINAN   COM          712704105      288      16186 SH      DEFINED        7,11        16186       0        0
PEOPLES UNITED FINAN   COM          712704105     1606      90224 SH      DEFINED       16,24,25      81836      0     8388
PEOPLES UNITED FINAN   COM          712704105      176       9890 SH      DEFINED       32,40,41      9890       0        0
PEOPLESUPPORT INC      COM          712714302      390      28500 SH      DEFINED       16,24,25      28500      0        0
PEP BOYS MANNY MOE &   COM          713278109     1344     117103 SH      DEFINED       16,24,25     105899      0    11203
PEP BOYS MANNY MOE &   COM          713278109      122      10600 SH CALL DEFINED       15,16,24     10600       0        0
PEPCO HOLDINGS INC     COM          713291102      544      18550 SH      DEFINED        7,11        18550       0        0
PEPCO HOLDINGS INC     COM          713291102      276       9425 SH      DEFINED        7,11,13      9425       0        0
PEPCO HOLDINGS INC     COM          713291102       44       1500 SH      DEFINED        7,11,33          0      0     1500
PEPCO HOLDINGS INC     COM          713291102     2356      80342 SH      DEFINED       16,24,25      56874      0    23468
PEPCO HOLDINGS INC     COM          713291102      177       6048 SH      DEFINED       32,40,41      6048       0        0
PEPSI BOTTLING GROUP   COM          713409100        3         75 SH      DEFINED         12             0      0       75
PEPSI BOTTLING GROUP   COM          713409100     4368     110693 SH      DEFINED        3,9             0      0   110693
PEPSI BOTTLING GROUP   COM          713409100     7713     195468 SH      DEFINED        7,11        96362       0    99106
PEPSI BOTTLING GROUP   COM          713409100    24071     610000 SH      DEFINED       16,24       610000       0        0
PEPSI BOTTLING GROUP   COM          713409100     1483      37575 SH      DEFINED        7,11,13     32742       0     4833
PEPSI BOTTLING GROUP   COM          713409100     7673     194453 SH      DEFINED       16,24,25     129335      0    65117
PEPSI BOTTLING GROUP   COM          713409100      174       4397 SH      DEFINED       32,40,41      4397       0        0
PEPSI BOTTLING GROUP   COM          713409100     6235     158000 SH CALL DEFINED        7,11       158000       0        0
PEPSI BOTTLING GROUP   COM          713409100     5716     144859 SH CALL DEFINED       16,24,25     144859      0        0
PEPSI BOTTLING GROUP   COM          713409100     2836      71859 SH PUT  DEFINED        7,11        71859       0        0
PEPSI BOTTLING GROUP   COM          713409100      813      20600 SH PUT  DEFINED       16,24,25      20600      0        0
PEPSIAMERICAS INC      COM          71343P200      155       4653 SH      DEFINED        7,11          4653      0        0
PEPSIAMERICAS INC      COM          71343P200      186       5580 SH      DEFINED        7,11,13      5580       0        0
PEPSIAMERICAS INC      COM          71343P200     1107      33234 SH      DEFINED       16,24,25      28639      0     4595
PEPSICO INC            COM          713448108     2114      27850 SH      DEFINED         12             0      0    27850
PEPSICO INC            COM          713448108     1224      16130 SH      DEFINED        3,9             0      0    16130
PEPSICO INC            COM          713448108    62331     821228 SH      DEFINED        7,11        463012    3000  355216
PEPSICO INC            COM          713448108    55971     737428 SH      DEFINED       16,24        737428       0        0
PEPSICO INC            COM          713448108     4247      55952 SH      DEFINED        7,11,13     46912       0     9040
PEPSICO INC            COM          713448108     2001      26365 SH      DEFINED        7,11,33          0      0    26365
PEPSICO INC            COM          713448108   409538    5395753 SH      DEFINED       16,24,25    4463483      0   932269
PEPSICO INC            COM          713448108    25290     333202 SH      DEFINED       32,40,41     333202      0        0
PEPSICO INC            COM          713448108     1294      17050 SH      DEFINED       5-7,11,43,44       0  17050        0
PEPSICO INC            COM          713448108    28230     371937 SH CALL DEFINED        7,11        371937      0        0
PEPSICO INC            COM          713448108    68272     899500 SH CALL DEFINED       15,16,24     899500      0        0
PEPSICO INC            COM          713448108    29525     389000 SH CALL DEFINED       16,24,25     389000      0        0
PEPSICO INC            COM          713448108    35256     464500 SH PUT  DEFINED       15,16,24     464500      0        0
PEPSICO INC            COM          713448108    86665    1141837 SH PUT  DEFINED       16,24,25    1141837      0        0
PEREGRINE PHARMACEUT   COM          713661106        4      12099 SH      DEFINED       16,24,25       9799      0     2300
```

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PERFECT WORLD CO LTD | SPON ADR R | 71372U104 | 986 | 35376 | SH | DEFINED | 16,24,25 | 32934 | 0 | 2442 |
| PERFICIENT INC | COM | 71375U101 | 674 | 42805 | SH | DEFINED | 16,24,25 | 42035 | 0 | 770 |
| PERICOM SEMICONDUCTO | COM | 713831105 | 32 | 1700 | SH | DEFINED | 7,11,13 | 1700 | 0 | 0 |
| PERICOM SEMICONDUCTO | COM | 713831105 | 1034 | 55306 | SH | DEFINED | 16,24,25 | 55306 | 0 | 0 |
| PERINI CORP | COM | 713839108 | 1 | 33 | SH | DEFINED | 3,9 | 0 | 0 | 33 |
| PERINI CORP | COM | 713839108 | 15 | 356 | SH | DEFINED | 7,11 | 0 | 0 | 356 |
| PERINI CORP | COM | 713839108 | 766 | 18485 | SH | DEFINED | 16,24,25 | 18245 | 0 | 240 |
| PERKINELMER INC | COM | 714046109 | 198 | 7600 | SH | DEFINED | 30 | 7600 | 0 | 0 |
| PERKINELMER INC | COM | 714046109 | 250 | 9600 | SH | DEFINED | 3,9 | 0 | 0 | 9600 |
| PERKINELMER INC | COM | 714046109 | 106 | 4066 | SH | DEFINED | 7,11 | 4066 | 0 | 0 |
| PERKINELMER INC | COM | 714046109 | 52 | 2000 | SH | DEFINED | 7,11,13 | 2000 | 0 | 0 |
| PERKINELMER INC | COM | 714046109 | 1 | 53 | SH | DEFINED | 15,16,24 | 53 | 0 | 0 |
| PERKINELMER INC | COM | 714046109 | 817 | 31417 | SH | DEFINED | 16,24,25 | 26666 | 0 | 4751 |
| PERKINELMER INC | COM | 714046109 | 113 | 4333 | SH | DEFINED | 32,40,41 | 4333 | 0 | 0 |
| PERMIAN BASIN RTY TR | UNIT BEN I | 714236106 | 3 | 200 | SH | DEFINED | 7,11,13 | 200 | 0 | 0 |
| PERMIAN BASIN RTY TR | UNIT BEN I | 714236106 | 3018 | 188871 | SH | DEFINED | 16,24,25 | 161320 | 0 | 27551 |
| PERRIGO CO | COM | 714290103 | 25 | 709 | SH | DEFINED | 7,11 | 0 | 0 | 709 |
| PERRIGO CO | COM | 714290103 | 5056 | 144420 | SH | DEFINED | 7,11,13 | 142895 | 0 | 1525 |
| PERRIGO CO | COM | 714290103 | 4763 | 136033 | SH | DEFINED | 16,24,25 | 128804 | 0 | 7229 |
| P T TELEKOMUNIKASI I | SPONSORED | 715684106 | 1680 | 40000 | SH | DEFINED | 7,11 | 40000 | 0 | 0 |
| P T TELEKOMUNIKASI I | SPONSORED | 715684106 | 3053 | 72680 | SH | DEFINED | 16,24,25 | 64975 | 0 | 7705 |
| PETMED EXPRESS INC | COM | 716382106 | 662 | 54727 | SH | DEFINED | 16,24,25 | 52323 | 0 | 2404 |
| PETRO-CDA | COM | 71644E102 | 276 | 5150 | SH | DEFINED | 12 | 0 | 0 | 5150 |
| PETRO-CDA | COM | 71644E102 | 1364 | 25435 | SH | DEFINED | 3,9 | 0 | 0 | 25435 |
| PETRO-CDA | COM | 71644E102 | 5602 | 104471 | SH | DEFINED | 7,11 | 16811 | 0 | 87660 |
| PETRO-CDA | COM | 71644E102 | 344 | 6415 | SH | DEFINED | 7,11,13 | 150 | 0 | 6265 |
| PETRO-CDA | COM | 71644E102 | 3929 | 73268 | SH | DEFINED | 16,24,25 | 70427 | 0 | 2841 |
| PETRO-CDA | COM | 71644E102 | 773 | 14410 | SH | DEFINED | 32,40,41 | 14410 | 0 | 0 |
| PETRO-CDA | COM | 71644E102 | 1785 | 33286 | SH | DEFINED | 4,6,7,11 | 33286 | 0 | 0 |
| PETRO-CDA | COM | 71644E102 | 456 | 8500 | SH | CALL DEFINED | 15,16,24 | 8500 | 0 | 0 |
| PETRO-CDA | COM | 71644E102 | 2681 | 50000 | SH | PUT DEFINED | 7,11 | 50000 | 0 | 0 |
| PETRO-CDA | COM | 71644E102 | 611 | 11400 | SH | PUT DEFINED | 15,16,24 | 11400 | 0 | 0 |
| PETROCHINA CO LTD | SPONSORED | 71646E100 | 9711 | 55345 | SH | DEFINED | 7,11 | 55045 | 0 | 300 |
| PETROCHINA CO LTD | SPONSORED | 71646E100 | 30845 | 175783 | SH | DEFINED | 16,24,25 | 152496 | 0 | 23287 |
| PETROCHINA CO LTD | SPONSORED | 71646E100 | 19113 | 108922 | SH | DEFINED | 16,17,22-24 | 108922 | 0 | 0 |
| PETROCHINA CO LTD | SPONSORED | 71646E100 | 1878 | 10700 | SH | DEFINED | 16,19,24,26,27 | 10700 | 0 | 0 |
| PETROCHINA CO LTD | SPONSORED | 71646E100 | 39872 | 227231 | SH | CALL DEFINED | 7,11 | 227231 | 0 | 0 |
| PETROCHINA CO LTD | SPONSORED | 71646E100 | 94227 | 537000 | SH | CALL DEFINED | 15,16,24 | 537000 | 0 | 0 |
| PETROCHINA CO LTD | SPONSORED | 71646E100 | 4404 | 25100 | SH | CALL DEFINED | 16,24,25 | 25100 | 0 | 0 |
| PETROCHINA CO LTD | SPONSORED | 71646E100 | 56993 | 324800 | SH | PUT DEFINED | 7,11 | 324800 | 0 | 0 |
| PETROCHINA CO LTD | SPONSORED | 71646E100 | 103492 | 589800 | SH | PUT DEFINED | 15,16,24 | 589800 | 0 | 0 |
| PETROCHINA CO LTD | SPONSORED | 71646E100 | 16043 | 91431 | SH | PUT DEFINED | 16,24,25 | 91431 | 0 | 0 |
| PETROCHINA CO LTD | SPONSORED | 71646E100 | 35094 | 200000 | SH | PUT DEFINED | 16,17,22-24 | 200000 | 0 | 0 |
| PETROBRAS ENERGIA PA | SP ADR B S | 71646M102 | 149 | 10675 | SH | DEFINED | 16,24,25 | 9675 | 0 | 1000 |
| PETROBRAS ENERGIA PA | SP ADR B S | 71646M102 | 51 | 3640 | SH | DEFINED | 32,40,41 | 3640 | 0 | 0 |
| PETROHAWK ENERGY COR | COM | 716495106 | 80 | 4625 | SH | DEFINED | 30 | 4625 | 0 | 0 |
| PETROHAWK ENERGY COR | COM | 716495106 | 766 | 44243 | SH | DEFINED | 15,16,24 | 44243 | 0 | 0 |
| PETROHAWK ENERGY COR | COM | 716495106 | 1054 | 60898 | SH | DEFINED | 16,24,25 | 49637 | 0 | 11261 |
| PETROHAWK ENERGY COR | COM | 716495106 | 358 | 20700 | SH | CALL DEFINED | 15,16,24 | 20700 | 0 | 0 |
| PETROHAWK ENERGY COR | COM | 716495106 | 718 | 41500 | SH | PUT DEFINED | 15,16,24 | 41500 | 0 | 0 |
| PETROLEO BRASILEIRO | SP ADR NON | 71654V101 | 2396 | 24900 | SH | DEFINED | 30 | 24900 | 0 | 0 |
| PETROLEO BRASILEIRO | SP ADR NON | 71654V101 | 1847 | 19198 | SH | DEFINED | 7,11 | 19198 | 0 | 0 |
| PETROLEO BRASILEIRO | SP ADR NON | 71654V101 | 3158 | 32817 | SH | DEFINED | 16,24,25 | 29467 | 0 | 3350 |
| PETROLEO BRASILEIRO | SP ADR NON | 71654V101 | 7470 | 77634 | SH | DEFINED | 32,40,41 | 77634 | 0 | 0 |
| PETROLEO BRASILEIRO | SP ADR NON | 71654V101 | 87 | 900 | SH | DEFINED | 16,19,24,26,27 | 900 | 0 | 0 |
| PETROLEO BRASILEIRO | SPONSORED | 71654V408 | 540 | 4690 | SH | DEFINED | 30 | 4690 | 0 | 0 |
| PETROLEO BRASILEIRO | SPONSORED | 71654V408 | 821 | 7122 | SH | DEFINED | 7,11 | 6722 | 0 | 400 |
| PETROLEO BRASILEIRO | SPONSORED | 71654V408 | 865 | 7510 | SH | DEFINED | 7,11,13 | 7446 | 0 | 0 |
| PETROLEO BRASILEIRO | SPONSORED | 71654V408 | 15012 | 130266 | SH | DEFINED | 15,16,24 | 130266 | 0 | 0 |
| PETROLEO BRASILEIRO | SPONSORED | 71654V408 | 69891 | 606486 | SH | DEFINED | 16,24,25 | 516910 | 0 | 89576 |
| PETROLEO BRASILEIRO | SPONSORED | 71654V408 | 127499 | 1106382 | SH | DEFINED | 32,40,41 | 1106382 | 0 | 0 |
| PETROLEO BRASILEIRO | SPONSORED | 71654V408 | 7150 | 62045 | SH | DEFINED | 16,19,24,26,27 | 62045 | 0 | 0 |
| PETROLEO BRASILEIRO | SPONSORED | 71654V408 | 134808 | 1169800 | SH | CALL DEFINED | 15,16,24 | 1169800 | 0 | 0 |
| PETROLEO BRASILEIRO | SPONSORED | 71654V408 | 92192 | 800000 | SH | PUT DEFINED | 15,16,24 | 800000 | 0 | 0 |
| PETROLEUM & RES CORP | COM | 71654V100 | 2144 | 55464 | SH | DEFINED | 16,24,25 | 44333 | 0 | 11131 |
| PETROQUEST ENERGY IN | COM | 716748108 | 99 | 6900 | SH | DEFINED | 30 | 6900 | 0 | 0 |
| PETROQUEST ENERGY IN | COM | 716748108 | 1583 | 110696 | SH | DEFINED | 16,24,25 | 105346 | 0 | 5350 |
| PETSMART INC | COM | 716768106 | 327 | 13905 | SH | DEFINED | 7,11 | 13905 | 0 | 0 |
| PETSMART INC | COM | 716768106 | 251 | 10649 | SH | DEFINED | 15,16,24 | 10649 | 0 | 0 |
| PETSMART INC | COM | 716768106 | 5918 | 251498 | SH | DEFINED | 16,24,25 | 183535 | 0 | 67963 |
| PETSMART INC | COM | 716768106 | 100 | 4270 | SH | DEFINED | 32,40,41 | 4270 | 0 | 0 |
| PETSMART INC | COM | 716768106 | 1447 | 61500 | SH | CALL DEFINED | 15,16,24 | 61500 | 0 | 0 |
| PETSMART INC | COM | 716768106 | 184 | 7800 | SH | CALL DEFINED | 16,24,25 | 7800 | 0 | 0 |
| PETSMART INC | COM | 716768106 | 1031 | 43800 | SH | PUT DEFINED | 15,16,24 | 43800 | 0 | 0 |
| PETSMART INC | COM | 716768106 | 471 | 20000 | SH | PUT DEFINED | 16,24,25 | 20000 | 0 | 0 |
| PFIZER INC | COM | 717081103 | 1637 | 72030 | SH | DEFINED | 12 | 0 | 0 | 72030 |
| PFIZER INC | COM | 717081103 | 743 | 32700 | SH | DEFINED | 30 | 32700 | 0 | 0 |
| PFIZER INC | COM | 717081103 | 4638 | 204043 | SH | DEFINED | 3,9 | 0 | 0 | 204043 |
| PFIZER INC | COM | 717081103 | 145522 | 6402216 | SH | DEFINED | 7,11 | 4864134 | 2940 | 1535142 |
| PFIZER INC | COM | 717081103 | 34095 | 1500000 | SH | DEFINED | 16,24 | 1500000 | 0 | 0 |
| PFIZER INC | COM | 717081103 | 8171 | 359499 | SH | DEFINED | 7,11,13 | 290600 | 0 | 68899 |
| PFIZER INC | COM | 717081103 | 416 | 18297 | SH | DEFINED | 7,11,33 | 0 | 0 | 18297 |
| PFIZER INC | COM | 717081103 | 14661 | 645015 | SH | DEFINED | 15,16,24 | 645015 | 0 | 0 |
| PFIZER INC | COM | 717081103 | 327933 | 14427308 | SH | DEFINED | 16,24,25 | 12397804 | 0 | 2029503 |
| PFIZER INC | COM | 717081103 | 54358 | 2391451 | SH | DEFINED | 32,40,41 | 2391451 | 0 | 0 |
| PFIZER INC | COM | 717081103 | 1771 | 77919 | SH | DEFINED | 5-7,11,43,44 | 0 | 77919 | 0 |
| PFIZER INC | COM | 717081103 | 40658 | 1788738 | SH | DEFINED | 16,19,24,26,27 | 1788738 | 0 | 0 |
| PFIZER INC | COM | 717081103 | 14960 | 658163 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 658163 | 0 | 0 |
| PFIZER INC | COM | 717081103 | 61708 | 2714843 | SH | CALL DEFINED | 7,11 | 2714843 | 0 | 0 |
| PFIZER INC | COM | 717081103 | 31836 | 1400600 | SH | CALL DEFINED | 15,16,24 | 1400600 | 0 | 0 |
| PFIZER INC | COM | 717081103 | 27124 | 1193300 | SH | CALL DEFINED | 16,24,25 | 1193300 | 0 | 0 |
| PFIZER INC | COM | 717081103 | 10956 | 482000 | SH | PUT DEFINED | 7,11 | 482000 | 0 | 0 |
| PFIZER INC | COM | 717081103 | 31372 | 1380200 | SH | PUT DEFINED | 16,24,25 | 1380200 | 0 | 0 |
| PFIZER INC | COM | 717081103 | 27281 | 1200234 | SH | PUT DEFINED | 16,24,25 | 1200234 | 0 | 0 |
| PHARMACEUTICAL HLDRS | DEPOSITORY | 71712A206 | 1698 | 21441 | SH | DEFINED | 15,16,24 | 21441 | 0 | 0 |
| PHARMACEUTICAL HLDRS | DEPOSITORY | 71712A206 | 156091 | 1971093 | SH | DEFINED | 16,24,25 | 1963635 | 0 | 7458 |
| PHARMACEUTICAL HLDRS | DEPOSITORY | 71712A206 | 30195 | 381300 | SH | CALL DEFINED | 15,16,24 | 381300 | 0 | 0 |
| PHARMACEUTICAL HLDRS | DEPOSITORY | 71712A206 | 16860 | 212900 | SH | PUT DEFINED | 15,16,24 | 212900 | 0 | 0 |
| PHARMACEUTICAL PROD | COM | 717124101 | 78 | 1924 | SH | DEFINED | 7,11 | 1924 | 0 | 0 |
| PHARMACEUTICAL PROD | COM | 717124101 | 16 | 400 | SH | DEFINED | 7,11,13 | 400 | 0 | 0 |
| PHARMACEUTICAL PROD | COM | 717124101 | 2869 | 71056 | SH | DEFINED | 16,24,25 | 50094 | 0 | 20962 |
| PHARMACEUTICAL PROD | COM | 717124101 | 24 | 600 | SH | DEFINED | 32,40,41 | 600 | 0 | 0 |
| PHARMACEUTICAL PROD | COM | 717124101 | 791 | 19600 | SH | CALL DEFINED | 15,16,24 | 19600 | 0 | 0 |
| PHARMACEUTICAL PROD | COM | 717124101 | 848 | 21000 | SH | PUT DEFINED | 15,16,24 | 21000 | 0 | 0 |
| PHARMERICA CORP | COM | 71714F104 | 5 | 364 | SH | DEFINED | 7,11 | 0 | 0 | 364 |
| PHARMERICA CORP | COM | 71714F104 | 18 | 1308 | SH | DEFINED | 15,16,24 | 1308 | 0 | 0 |
| PHARMERICA CORP | COM | 71714F104 | 238 | 17176 | SH | DEFINED | 16,24,25 | 15201 | 0 | 1975 |
| PHARMERICA CORP | COM | 71714F104 | 1063 | 76600 | SH | CALL DEFINED | 15,16,24 | 76600 | 0 | 0 |
| PHARMERICA CORP | COM | 71714F104 | 1885 | 135800 | SH | PUT DEFINED | 15,16,24 | 135800 | 0 | 0 |
| PHARMANET DEV GROUP | COM | 717148100 | 6 | 146 | SH | DEFINED | 7,11 | 0 | 0 | 146 |
| PHARMANET DEV GROUP | COM | 717148100 | 218 | 5555 | SH | DEFINED | 16,24,25 | 5437 | 0 | 118 |
| PHARMANET DEV GROUP | COM | 717148100 | 5466 | 139400 | SH | CALL DEFINED | 15,16,24 | 139400 | 0 | 0 |
| PHARMANET DEV GROUP | COM | 717148100 | 1012 | 25800 | SH | PUT DEFINED | 15,16,24 | 25800 | 0 | 0 |
| PHARMION CORP | COM | 71715B409 | 232 | 3692 | SH | DEFINED | 16,24,25 | 3592 | 0 | 100 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| PHASE FORWARD INC | COM | 71721R406 | 291 | 13400 | SH | DEFINED | | 30 | 13400 | 0 |
| PHASE FORWARD INC | COM | 71721R406 | 203 | 9339 | SH | DEFINED | 16,24,25 | 9274 | 0 | 65 |
| PHILADELPHIA CONS HL COM | | 717528103 | 21 | 528 | SH | DEFINED | 7,11 | 528 | 0 | 0 |
| PHILADELPHIA CONS HL COM | | 717528103 | 903 | 22941 | SH | DEFINED | 16,24,25 | 20516 | 0 | 2425 |
| PHILIPPINE LONG DIST SPONSORED | | 718252604 | 4801 | 63407 | SH | DEFINED | 16,24,25 | 56931 | 0 | 6475 |
| PHILLIPS VAN HEUSEN | COM | 718592108 | 11 | 300 | SH | DEFINED | 12 | 0 | 0 | 300 |
| PHILLIPS VAN HEUSEN | COM | 718592108 | 206 | 5600 | SH | DEFINED | 3,9 | 0 | 0 | 5600 |
| PHILLIPS VAN HEUSEN | COM | 718592108 | 291 | 7896 | SH | DEFINED | 7,11 | 687 | 0 | 7209 |
| PHILLIPS VAN HEUSEN | COM | 718592108 | 5 | 148 | SH | DEFINED | 7,11,13 | 48 | 0 | 100 |
| PHILLIPS VAN HEUSEN | COM | 718592108 | 15 | 400 | SH | DEFINED | 7,11,33 | 0 | 0 | 400 |
| PHILLIPS VAN HEUSEN | COM | 718592108 | 148 | 4004 | SH | DEFINED | 16,24,25 | 3768 | 0 | 236 |
| PHOENIX COS INC NEW | COM | 719028109 | 49 | 4097 | SH | DEFINED | 7,11 | 0 | 0 | 4097 |
| PHOENIX COS INC NEW | COM | 719028109 | 252 | 21270 | SH | DEFINED | 16,24,25 | 19625 | 0 | 1645 |
| PHYSICIANS FORMULA H COM | | 719427106 | 140 | 11782 | SH | DEFINED | 16,24,25 | 11282 | 0 | 500 |
| PIEDMONT NAT GAS INC COM | | 720186105 | 34 | 1300 | SH | DEFINED | 7,11,13 | 1300 | 0 | 0 |
| PIEDMONT NAT GAS INC COM | | 720186105 | 3730 | 142580 | SH | DEFINED | 16,24,25 | 115340 | 0 | 27239 |
| PIER 1 IMPORTS INC | NOTE 6.37 | 720279AH1 | 7160 | 8679000 | PRN | DEFINED | 31,45 | 8679000 | 0 | 0 |
| PIER 1 IMPORTS INC | NOTE 6.37 | 720279AH1 | 7404 | 8975000 | PRN | DEFINED | 16,24,25 | 8975000 | 0 | 0 |
| PIER 1 IMPORTS INC | COM | 720279108 | 168 | 32074 | SH | DEFINED | 16,24,25 | 31939 | 0 | 135 |
| PIER 1 IMPORTS INC | COM | 720279108 | 0 | 3 | SH | DEFINED | 16,19,24,26,27 | 3 | 0 | 0 |
| PIER 1 IMPORTS INC | COM | 720279108 | 570 | 109000 | SH | PUT | DEFINED | 16,24,25 | 109000 | 0 | 0 |
| PILGRIMS PRIDE CORP | COM | 721467108 | 64 | 2200 | SH | DEFINED | 30 | 2200 | 0 | 0 |
| PILGRIMS PRIDE CORP | COM | 721467108 | 375 | 12950 | SH | DEFINED | 16,24,25 | 12567 | 0 | 383 |
| PIMCO CALIF MUN INCO COM | | 72200M108 | 250 | 18622 | SH | DEFINED | 16,24,25 | 18622 | 0 | 0 |
| PIMCO CA MUNICIPAL I COM | | 72200N106 | 210 | 13486 | SH | DEFINED | 16,24,25 | 12486 | 0 | 1000 |
| PIMCO MUNICIPAL INCO COM | | 72200R107 | 641 | 44227 | SH | DEFINED | 16,24,25 | 39742 | 0 | 4485 |
| PIMCO CORPORATE INCO COM | | 72200U100 | 8 | 650 | SH | DEFINED | 7,11,13 | 650 | 0 | 0 |
| PIMCO CORPORATE INCO COM | | 72200U100 | 1965 | 152823 | SH | DEFINED | 16,24,25 | 127653 | 0 | 25169 |
| PIMCO MUN INCOME FD | COM | 72200W104 | 1429 | 104350 | SH | DEFINED | 16,24,25 | 102820 | 0 | 1529 |
| PIMCO STRATEGIC GBL | COM | 72200X104 | 67 | 7000 | SH | DEFINED | 7,11,33 | 0 | 0 | 7000 |
| PIMCO MUN INCOME FD | COM | 72201A103 | 294 | 21135 | SH | DEFINED | 16,24,25 | 8848 | 0 | 12287 |
| PIMCO CORPORATE OPP | COM | 72201B101 | 9 | 650 | SH | DEFINED | 7,11,13 | 650 | 0 | 0 |
| PIMCO CORPORATE OPP | COM | 72201B101 | 1163 | 86496 | SH | DEFINED | 16,24,25 | 44779 | 0 | 41717 |
| PIMCO FLOATING RATE | COM | 72201H108 | 1065 | 67997 | SH | DEFINED | 16,24,25 | 45940 | 0 | 22057 |
| PIMCO FLOATING RATE | COM | 72201J104 | 1434 | 93584 | SH | DEFINED | 16,24,25 | 80313 | 0 | 13270 |
| PIMCO GLOBAL STOCKSP COM | | 72201L103 | 376 | 17003 | SH | DEFINED | 16,24,25 | 17003 | 0 | 0 |
| PIMCO MUN INCOME FD COM SHS | | 72201A107 | 3912 | 327950 | SH | DEFINED | 16,24,25 | 279814 | 0 | 48135 |
| PIMCO MUN ADVANTAGE | COM | 72201S104 | 208 | 16061 | SH | DEFINED | 16,24,25 | 14220 | 0 | 1840 |
| PINNACLE AIRL CORP | NOTE 3.25 | 72344A683 | 19820 | 15545000 | PRN | DEFINED | 16,24,25 | 15545000 | 0 | 0 |
| PINNACLE AIRL CORP | COM | 72344307 | 2817 | 184742 | SH | DEFINED | 7,11 | 184742 | 0 | 0 |
| PINNACLE AIRL CORP | COM | 72344307 | 1784 | 117000 | SH | DEFINED | 31,45 | 117000 | 0 | 0 |
| PINNACLE AIRL CORP | COM | 72344307 | 407 | 26713 | SH | DEFINED | 16,24,25 | 19875 | 0 | 6838 |
| PINNACLE WEST CAP CO COM | | 723484101 | 384 | 9046 | SH | DEFINED | 7,11 | 9046 | 0 | 0 |
| PINNACLE WEST CAP CO COM | | 723484101 | 182 | 4300 | SH | DEFINED | 7,11,13 | 4300 | 0 | 0 |
| PINNACLE WEST CAP CO COM | | 723484101 | 6623 | 156168 | SH | DEFINED | 16,24,25 | 133589 | 0 | 22578 |
| PINNACLE WEST CAP CO COM | | 723484101 | 3336 | 78671 | SH | DEFINED | 32,40,41 | 78671 | 0 | 0 |
| PIONEER DRILLING CO | COM | 723655106 | 81 | 6800 | SH | DEFINED | 30 | 6800 | 0 | 0 |
| PIONEER DRILLING CO | COM | 723655106 | 40 | 3394 | SH | DEFINED | 16,24,25 | 2094 | 0 | 1300 |
| PIONEER HIGH INCOME | COM | 7369N106 | 600 | 42797 | SH | DEFINED | 16,24,25 | 36956 | 0 | 5841 |
| PIONEER FLOATING RAT COM | | 7369J102 | 202 | 12752 | SH | DEFINED | 16,24,25 | 12306 | 0 | 446 |
| PIONEER MUN & EQUITY COM | | 723761102 | 6404 | 467467 | SH | DEFINED | 16,24,25 | 410661 | 0 | 56806 |
| PIONEER MUN HIGH INC COM SHS | | 723763108 | 40 | 3000 | SH | DEFINED | 7,11,13 | 0 | 0 | 3000 |
| PIONEER MUN HIGH INC COM SHS | | 723763108 | 268 | 19876 | SH | DEFINED | 16,24,25 | 8056 | 0 | 11819 |
| PIONEER NAT RES CO | COM | 723787107 | 1172 | 24000 | SH | DEFINED | 42 | 24000 | 0 | 0 |
| PIONEER NAT RES CO | COM | 723787107 | 288 | 5906 | SH | DEFINED | 7,11 | 5906 | 0 | 0 |
| PIONEER NAT RES CO | COM | 723787107 | 2700 | 55277 | SH | DEFINED | 15,16,24 | 55277 | 0 | 0 |
| PIONEER NAT RES CO | COM | 723787107 | 18108 | 370760 | SH | DEFINED | 16,24,25 | 286687 | 0 | 84072 |
| PIONEER NAT RES CO | COM | 723787107 | 171 | 3500 | SH | DEFINED | 32,40,41 | 3500 | 0 | 0 |
| PIONEER NAT RES CO | COM | 723787107 | 6159 | 126100 | SH | CALL | DEFINED | 15,16,24 | 126100 | 0 | 0 |
| PIONEER NAT RES CO | COM | 723787107 | 5 | 100 | SH | CALL | DEFINED | 16,24,25 | 100 | 0 | 0 |
| PIONEER NAT RES CO | COM | 723787107 | 6623 | 135600 | SH | PUT | DEFINED | 15,16,24 | 135600 | 0 | 0 |
| PITNEY BOWES INC | COM | 724479100 | 4079 | 107227 | SH | DEFINED | 7,11 | 75142 | 0 | 32085 |
| PITNEY BOWES INC | COM | 724479100 | 2275 | 59792 | SH | DEFINED | 7,11,13 | 58042 | 0 | 1750 |
| PITNEY BOWES INC | COM | 724479100 | 13 | 350 | SH | DEFINED | 7,11,33 | 0 | 0 | 350 |
| PITNEY BOWES INC | COM | 724479100 | 12433 | 326841 | SH | DEFINED | 16,24,25 | 267727 | 0 | 59113 |
| PITNEY BOWES INC | COM | 724479100 | 240 | 6309 | SH | DEFINED | 32,40,41 | 6309 | 0 | 0 |
| PIXELWORKS INC | SDCV 1.75 | 72581MAB3 | 13889 | 19290000 | PRN | DEFINED | 16,24,25 | 19290000 | 0 | 0 |
| PIXELWORKS INC | COM | 72581M107 | 2312 | 3041487 | SH | DEFINED | 16,24,25 | 3041387 | 0 | 100 |
| PLAINS ALL AMERN PIP UNIT LTD P | | 726503105 | 52 | 1000 | SH | DEFINED | 7,11,13 | 1000 | 0 | 0 |
| PLAINS ALL AMERN PIP UNIT LTD P | | 726503105 | 31 | 600 | SH | DEFINED | 7,11,33 | 0 | 0 | 600 |
| PLAINS ALL AMERN PIP UNIT LTD P | | 726503105 | 45352 | 872161 | SH | DEFINED | 16,24,25 | 802935 | 0 | 69225 |
| PLAINS EXPL& PRODTN | COM | 726505100 | 4657 | 86247 | SH | DEFINED | 7,11 | 81499 | 0 | 4748 |
| PLAINS EXPL& PRODTN | COM | 726505100 | 299 | 5534 | SH | DEFINED | 7,11,13 | 5534 | 0 | 0 |
| PLAINS EXPL& PRODTN | COM | 726505100 | 508 | 9411 | SH | DEFINED | 15,16,24 | 9411 | 0 | 0 |
| PLAINS EXPL& PRODTN | COM | 726505100 | 8614 | 159514 | SH | DEFINED | 16,24,25 | 75320 | 0 | 84194 |
| PLAINS EXPL& PRODTN | COM | 726505100 | 7949 | 147200 | SH | CALL | DEFINED | 15,16,24 | 147200 | 0 | 0 |
| PLAINS EXPL& PRODTN | COM | 726505100 | 5227 | 96793 | SH | CALL | DEFINED | 16,24,25 | 96793 | 0 | 0 |
| PLAINS EXPL& PRODTN | COM | 726505100 | 4109 | 76093 | SH | PUT | DEFINED | 7,11 | 76093 | 0 | 0 |
| PLAINS EXPL& PRODTN | COM | 726505100 | 6048 | 112000 | SH | PUT | DEFINED | 15,16,24 | 112000 | 0 | 0 |
| PLAINS EXPL& PRODTN | COM | 726505100 | 2916 | 54000 | SH | PUT | DEFINED | 16,24,25 | 54000 | 0 | 0 |
| PLANTRONICS INC NEW | COM | 727493108 | 2 | 70 | SH | DEFINED | 3,9 | 0 | 0 | 70 |
| PLANTRONICS INC NEW | COM | 727493108 | 121 | 4650 | SH | DEFINED | 7,11,13 | 4650 | 0 | 0 |
| PLANTRONICS INC NEW | COM | 727493108 | 494 | 18987 | SH | DEFINED | 16,24,25 | 17887 | 0 | 1100 |
| PLAYBOY ENTERPRISES | CL B | 728117300 | 39 | 4250 | SH | DEFINED | 7,11,13 | 4250 | 0 | 0 |
| PLAYBOY ENTERPRISES | CL B | 728117300 | 85 | 9308 | SH | DEFINED | 16,24,25 | 8071 | 0 | 1237 |
| PLEXUS CORP | COM | 729132100 | 9 | 361 | SH | DEFINED | 7,11 | 0 | 0 | 361 |
| PLEXUS CORP | COM | 729132100 | 1295 | 49302 | SH | DEFINED | 16,24,25 | 49302 | 0 | 0 |
| PLEXUS CORP | COM | 729132100 | 1696 | 64600 | SH | CALL | DEFINED | 15,16,24 | 64600 | 0 | 0 |
| PLEXUS CORP | COM | 729132100 | 3968 | 151100 | SH | PUT | DEFINED | 15,16,24 | 151100 | 0 | 0 |
| PLUG POWER INC | COM | 72919P103 | 879 | 222456 | SH | DEFINED | 16,24,25 | 183382 | 0 | 39074 |
| PLUM CREEK TIMBER CO COM | | 729251108 | 2136 | 46401 | SH | DEFINED | 7,11 | 23626 | 0 | 22775 |
| PLUM CREEK TIMBER CO COM | | 729251108 | 69 | 1490 | SH | DEFINED | 7,11,13 | 1490 | 0 | 0 |
| PLUM CREEK TIMBER CO COM | | 729251108 | 9 | 200 | SH | DEFINED | 7,11,33 | 0 | 0 | 200 |
| PLUM CREEK TIMBER CO COM | | 729251108 | 67 | 1453 | SH | DEFINED | 15,16,24 | 1453 | 0 | 0 |
| PLUM CREEK TIMBER CO COM | | 729251108 | 16302 | 354084 | SH | DEFINED | 16,24,25 | 307254 | 0 | 46829 |
| PLUM CREEK TIMBER CO COM | | 729251108 | 9871 | 214392 | SH | DEFINED | 32,40,41 | 214392 | 0 | 0 |
| PLUM CREEK TIMBER CO COM | | 729251108 | 186 | 4035 | SH | DEFINED | 16,19,24,26,27 | 4035 | 0 | 0 |
| PLUM CREEK TIMBER CO COM | | 729251108 | 64 | 1400 | SH | PUT | DEFINED | 15,16,24 | 1400 | 0 | 0 |
| POLARIS INDS INC | COM | 731068102 | 206 | 4315 | SH | DEFINED | 7,11,13 | 4315 | 0 | 0 |
| POLARIS INDS INC | COM | 731068102 | 361 | 7549 | SH | DEFINED | 15,16,24 | 7549 | 0 | 0 |
| POLARIS INDS INC | COM | 731068102 | 5146 | 107723 | SH | DEFINED | 16,24,25 | 102666 | 0 | 5057 |
| POLARIS INDS INC | COM | 731068102 | 1767 | 37000 | SH | CALL | DEFINED | 15,16,24 | 37000 | 0 | 0 |
| POLARIS INDS INC | COM | 731068102 | 3143 | 65800 | SH | PUT | DEFINED | 15,16,24 | 65800 | 0 | 0 |
| POLO RALPH LAUREN CO CL A | | 731572103 | 1725 | 27914 | SH | DEFINED | 7,11 | 27914 | 0 | 0 |
| POLO RALPH LAUREN CO CL A | | 731572103 | 6158 | 99660 | SH | DEFINED | 16,24,25 | 97432 | 0 | 2228 |
| POLO RALPH LAUREN CO CL A | | 731572103 | 433 | 7005 | SH | DEFINED | 32,40,41 | 7005 | 0 | 0 |
| POLO RALPH LAUREN CO CL A | | 731572103 | 117 | 1900 | SH | DEFINED | 16,19,24,26,27 | 1900 | 0 | 0 |
| POLO RALPH LAUREN CO CL A | | 731572103 | 729 | 11800 | SH | CALL | DEFINED | 16,24,25 | 11800 | 0 | 0 |
| POLO RALPH LAUREN CO CL A | | 731572103 | 6179 | 100000 | SH | PUT | DEFINED | 16,24,25 | 100000 | 0 | 0 |
| POLYCOM INC | COM | 73172K104 | 181 | 6500 | SH | DEFINED | 30 | 6500 | 0 | 0 |
| POLYCOM INC | COM | 73172K104 | 935 | 33667 | SH | DEFINED | 7,11 | 33667 | 0 | 0 |
| POLYCOM INC | COM | 73172K104 | 129 | 4646 | SH | DEFINED | 34 | 4646 | 0 | 0 |
| POLYCOM INC | COM | 73172K104 | 1372 | 49381 | SH | DEFINED | 16,24,25 | 46392 | 0 | 2989 |

```
POLYCOM INC             COM        73172K104    2209      79500 SH   DEFINED          32,40,41           79500     0        0
POLYONE CORP            COM        73179P106     294      44616 SH   DEFINED          16,24,25           42976     0     1640
POOL CORPORATION        COM        73278L105      12        603 SH   DEFINED          7,11                 603     0        0
POOL CORPORATION        COM        73278L105     313      15765 SH   DEFINED          7,11,13            15765     0        0
POOL CORPORATION        COM        73278L105     707      35643 SH   DEFINED          16,24,25           23198     0    12445
POPULAR INC             COM        733174106     289      27224 SH   DEFINED          7,11               27224     0        0
POPULAR INC             COM        733174106   10047     947800 SH   DEFINED          16,24            947800     0        0
POPULAR INC             COM        733174106     509      48009 SH   DEFINED          16,24,25           44460     0     3549
PORTFOLIO RECOVERY A    COM        73640Q105     228       5751 SH   DEFINED          16,24,25            5328     0      423
PORTLAND GEN ELEC CO    COM NEW    736508847       8        300 SH   DEFINED          16,24                300     0        0
PORTLAND GEN ELEC CO    COM NEW    736508847     768      27661 SH   DEFINED          16,24,25           20391     0     7270
PORTUGAL TELECOM SGP SPONSORED     737273102    2911     223578 SH   DEFINED          16,24,25          146035     0    77543
PORTUGAL TELECOM SGP SPONSORED     737273102      31       2372 SH   DEFINED          16,19,24,26,27      2372     0        0
POSSIS MEDICAL INC      COM        737407106     120       8200 SH   DEFINED          30                  8200     0        0
POSSIS MEDICAL INC      COM        737407106     201      13762 SH   DEFINED          16,24,25           12225     0     1537
POST PPTYS INC          COM        737464107   65660    1869600 SH   DEFINED          16,24            1869600     0        0
POST PPTYS INC          COM        737464107     109       3100 SH   DEFINED          7,11,13             3100     0        0
POST PPTYS INC          COM        737464107     359      10214 SH   DEFINED          16,24,25            9904     0      310
POST PPTYS INC          COM        737464107    1677      47759 SH   DEFINED          32,40,41           47759     0        0
POTASH CORP SASK INC COM           73755L107    1512     105000 SH   DEFINED          7,11              105000     0        0
POTASH CORP SASK INC COM           73755L107   43859     304662 SH   DEFINED          16,24,25          272518     0    32143
POTASH CORP SASK INC COM           73755L107   27864     193557 SH   DEFINED          32,40,41          193557     0        0
POTASH CORP SASK INC COM           73755L107    2797      19430 SH   DEFINED          4,6,7,11           19430     0        0
POTASH CORP SASK INC COM           73755L107     652       4530 SH   DEFINED          5-7,11,43,44        0     4530        0
POTASH CORP SASK INC COM           73755L107      58        400 SH   DEFINED          16,19,24,26,27       400     0        0
POTASH CORP SASK INC COM           73755L107  104529     726100 SH   CALL DEFINED     15,16,24          726100     0        0
POTASH CORP SASK INC COM           73755L107     173       1200 SH   CALL DEFINED     16,24,25            1200     0        0
POTASH CORP SASK INC COM           73755L107  103766     720800 SH   PUT  DEFINED     15,16,24          720800     0        0
POTASH CORP SASK INC COM           73755L107      58        400 SH   PUT  DEFINED     16,24,25             400     0        0
POTLATCH CORP NEW       COM        737630103      59       1320 SH   DEFINED          30                  1320     0        0
POTLATCH CORP NEW       COM        737630103    1494      33628 SH   DEFINED          7,11               33628     0        0
POTLATCH CORP NEW       COM        737630103     459      10328 SH   DEFINED          16,24,25           10161     0      167
POTLATCH CORP NEW       COM        737630103      55       1229 SH   DEFINED          16,19,24,26,27      1229     0        0
POWELL INDS INC         COM        739128106    1162      26370 SH   DEFINED          16,24,25           26220     0      150
POWER INTEGRATIONS I    COM        739276103     246       7149 SH   DEFINED          30                  7149     0        0
POWER INTEGRATIONS I    COM        739276103      11        306 SH   DEFINED          16,24                306     0        0
POWER INTEGRATIONS I    COM        739276103      20        595 SH   DEFINED          16,24,25             595     0        0
POWER-ONE INC           COM        739308104      66      16600 SH   DEFINED          30                16600     0        0
POWER-ONE INC           COM        739308104      40       9939 SH   DEFINED          7,11                9939     0        0
POWER-ONE INC           COM        739308104     222      55673 SH   DEFINED          16,24,25           51648     0     4025
POWERSHARES QQQ TRUS UNIT SER 1    73935A104     141       2750 SH   DEFINED          7,11,33             2750     0     2750
POWERSHARES QQQ TRUS UNIT SER 1    73935A104  204054    3983866 SH   DEFINED          16,24,25         3410911     0   572955
POWERSHARES QQQ TRUS UNIT SER 1    73935A104  326886    6382000 SH   CALL DEFINED     15,16,24         6382000     0        0
POWERSHARES QQQ TRUS UNIT SER 1    73935A104   90495    1766800 SH   CALL DEFINED     16,24,25         1766800     0        0
POWERSHARES QQQ TRUS UNIT SER 1    73935A104  880595   17192400 SH   PUT  DEFINED     15,16,24        17192400     0        0
POWERSHARES QQQ TRUS UNIT SER 1    73935A104  250507    4890800 SH   PUT  DEFINED     16,24,25         4890800     0        0
POWERSHARES DB CMDTY UNIT SER 1    73935S105   25037     793310 SH   DEFINED          16,24,25          708970     0    84360
POWERSHARES ETF TRUS DYNAMIC MK    73935X104   23393     451088 SH   DEFINED          16,24,25          410342     0    40746
POWERSHARES ETF TRUS DWA TECH L    73935X153      14        510 SH   DEFINED          16,24                510     0        0
POWERSHARES ETF TRUS DWA TECH L    73935X153   24637     902779 SH   DEFINED          16,24,25          817494     0    85285
POWERSHARES ETF TRUS WILDERHILL    73935X161    3645     122277 SH   DEFINED          16,24,25           99393     0    22884
POWERSHARES ETF TRUS VAL LN IND    73935X179    1047      35362 SH   DEFINED          16,24,25           31171     0     4191
POWERSHARES ETF TRUS PRVT EQTY     73935X195    4629     210122 SH   DEFINED          16,24,25          181426     0    28696
POWERSHARES ETF TRUS DYNAMIC OT    73935X203    3632      68759 SH   DEFINED          16,24,25           62016     0     6743
POWERSHARES ETF TRUS FINL PFD P    73935X229   17650     892320 SH   DEFINED          16,24,25          832296     0    60024
POWERSHARES ETF TRUS FTSERAFI F    73935X237     737      16975 SH   DEFINED          7,11,13            16975     0        0
POWERSHARES ETF TRUS FTSERAFI F    73935X237     747      17201 SH   DEFINED          16,24,25           15366     0     1835
POWERSHARES ETF TRUS CLEANTECH     73935X278    6575     184178 SH   DEFINED          16,24,25          162655     0    21523
POWERSHARES ETF TRUS DYNA BUYBK    73935X286    2599     106787 SH   DEFINED          16,24,25          100785     0     6002
POWERSHARES ETF TRUS AGGRESV GR    73935X294    1053      36828 SH   DEFINED          16,24,25           34774     0     2054
POWERSHARES ETF TRUS HI YLD EQ     73935X302      24       1800 SH   DEFINED          7,11,33             1800     0     1800
POWERSHARES ETF TRUS HI YLD EQ     73935X302    5364     402996 SH   DEFINED          16,24,25          371783     0    31213
POWERSHARES ETF TRUS DYNAM DEEP    73935X310     529      21485 SH   DEFINED          16,24,25           21485     0        0
POWERSHARES ETF TRUS HLTHCR SVC    73935X328       2         75 SH   DEFINED          16,24                 75     0        0
POWERSHARES ETF TRUS HLTHCR SVC    73935X328      56       1875 SH   DEFINED          7,11,13             1875     0        0
POWERSHARES ETF TRUS HLTHCR SVC    73935X328     707      23878 SH   DEFINED          16,24,25           23133     0      745
POWERSHARES ETF TRUS BNKING SEC    73935X336     292      15200 SH   DEFINED          7,11,13            15200     0        0
POWERSHARES ETF TRUS BNKING SEC    73935X336     315      16405 SH   DEFINED          16,24,25           15563     0      842
POWERSHARES ETF TRUS TECH SECT     73935X344      76       2800 SH   DEFINED          7,11,13             2800     0        0
POWERSHARES ETF TRUS TECH SECT     73935X344    1680      61701 SH   DEFINED          16,24,25           57648     0     4053
POWERSHARES ETF TRUS HLTHCR SEC    73935X351     135       4500 SH   DEFINED          7,11,13             4500     0        0
POWERSHARES ETF TRUS HLTHCR SEC    73935X351    1942      64568 SH   DEFINED          16,24,25           59969     0     4599
POWERSHARES ETF TRUS INDL SECT     73935X369      16        525 SH   DEFINED          7,11,13              525     0        0
POWERSHARES ETF TRUS INDL SECT     73935X369    2024      65578 SH   DEFINED          16,24,25           62445     0     3133
POWERSHARES ETF TRUS FINL SECT     73935X377     108       4300 SH   DEFINED          7,11,13             4300     0        0
POWERSHARES ETF TRUS FINL SECT     73935X377    1322      52825 SH   DEFINED          16,24,25           45732     0     7093
POWERSHARES ETF TRUS ENERGY SEC    73935X385    3081      85217 SH   DEFINED          16,24,25           81527     0     3690
POWERSHARES ETF TRUS CON STAPLE    73935X393      36       1325 SH   DEFINED          7,11,13             1325     0        0
POWERSHARES ETF TRUS CON STAPLE    73935X393     538      19707 SH   DEFINED          16,24,25           17031     0     2676
POWERSHARES ETF TRUS GOLDEN DRG    73935X401    7812     228096 SH   DEFINED          16,24,25          201697     0    26399
POWERSHARES ETF TRUS CON DISCRE    73935X419     154       6500 SH   DEFINED          7,11,13             6500     0        0
POWERSHARES ETF TRUS CON DISCRE    73935X419     996      42102 SH   DEFINED          16,24,25           39512     0     2590
POWERSHARES ETF TRUS BASIC MAT     73935X427       2         55 SH   DEFINED          16,24                 55     0        0
POWERSHARES ETF TRUS BASIC MAT     73935X427    3877     110783 SH   DEFINED          16,24,25           91898     0    18885
POWERSHARES ETF TRUS DYNAM SML     73935X435     303      12491 SH   DEFINED          16,24,25           12491     0        0
POWERSHARES ETF TRUS DYNAM MIDC    73935X443       2         70 SH   DEFINED          16,24                 70     0        0
POWERSHARES ETF TRUS DYNAM MIDC    73935X443     418      15452 SH   DEFINED          16,24,25           11452     0     4000
POWERSHARES ETF TRUS DYNAM LRGC    73935X450    1436      51610 SH   DEFINED          16,24,25           43680     0     7930
POWERSHARES ETF TRUS MAGNIQUANT    73935X468      27       1000 SH   DEFINED          7,11,33             1000     0     1000
POWERSHARES ETF TRUS MAGNIQUANT    73935X468    7016     262271 SH   DEFINED          16,24,25          241243     0    21028
POWERSHARES ETF TRUS FTSE RAFI     73935X476    1123      18785 SH   DEFINED          7,11,13            17725     0     1060
POWERSHARES ETF TRUS FTSE TELE     73935X484      54        900 SH   DEFINED          7,11,13              900     0        0
POWERSHARES ETF TRUS FTSE TELE     73935X484    1557      26139 SH   DEFINED          16,24,25           24451     0     1688
POWERSHARES ETF TRUS FTSE CONSM    73935X492     513      10525 SH   DEFINED          7,11,13            10525     0        0
POWERSHARES ETF TRUS FTSE CONSM    73935X492      54       1114 SH   DEFINED          16,24,25            1114     0        0
POWERSHARES ETF TRUS WNDRHLL CL    73935X500      27        964 SH   DEFINED          7,11,33              964     0        0
POWERSHARES ETF TRUS WNDRHLL CL    73935X500     942      34015 SH   DEFINED          15,16,24           34015     0        0
POWERSHARES ETF TRUS WNDRHLL CL    73935X500   32106    1159493 SH   DEFINED          16,24,25         1046444     0   113048
POWERSHARES ETF TRUS WNDRHLL CL    73935X500    2282      82400 SH   CALL DEFINED     15,16,24           82400     0        0
POWERSHARES ETF TRUS WNDRHLL CL    73935X500    1592      57500 SH   PUT  DEFINED     15,16,24           57500     0        0
POWERSHARES ETF TRUS FTSE HLTHC    73935X518     124       2300 SH   DEFINED          7,11,13             2300     0        0
POWERSHARES ETF TRUS FTSE HLTHC    73935X518     230       4249 SH   DEFINED          16,24,25            3893     0      356
POWERSHARES ETF TRUS FTSE BSIC     73935X542     400       5991 SH   DEFINED          16,24,25            5533     0      458
POWERSHARES ETF TRUS FTSERAFI E    73935X559    5313      69350 SH   DEFINED          16,24,25           62922     0     6428
POWERSHARES ETF TRUS FTSE US150    73935X567    1970      36851 SH   DEFINED          16,24,25           33257     0     3594
POWERSHARES ETF TRUS WATER RESO    73935X575      22       1045 SH   DEFINED          7,11,33             1045     0        0
POWERSHARES ETF TRUS WATER RESO    73935X575   32530    1520116 SH   DEFINED          16,24,25         1326582     0   193534
POWERSHARES ETF TRUS WATER RESO    73935X575      13        600 SH   PUT  DEFINED     16,24,25             600     0        0
POWERSHARES ETF TRUS FTSE RAFI     73935X583      29        500 SH   DEFINED          7,11,33              500     0        0
POWERSHARES ETF TRUS FTSE RAFI     73935X583   28359     487775 SH   DEFINED          16,24,25          462888     0    24887
POWERSHARES ETF TRUS DYN UTIL P    73935X591    2583     130499 SH   DEFINED          16,24,25          111705     0    18794
POWERSHARES ETF TRUS DYNM LRG C    73935X609   45406    2421636 SH   DEFINED          16,24,25         2224024     0   197611
POWERSHARES ETF TRUS DYN RETAIL    73935X617      98       6250 SH   DEFINED          7,11,13             6250     0        0
POWERSHARES ETF TRUS DYN RETAIL    73935X617    1448      92393 SH   DEFINED          16,24,25           85041     0     7352
```

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| POWERSHARES ETF TRUS DYN OIL SV | 73935X625 | 9529 | 344000 | SH | DEFINED | 16,24,25 | 303529 | 0 | 40471 |
| POWERSHARES ETF TRUS LX NANOTCH | 73935X633 | 105 | 6700 | SH | DEFINED | 7,11,13 | 6700 | 0 | 0 |
| POWERSHARES ETF TRUS LX NANOTCH | 73935X633 | 16 | 1000 | SH | DEFINED | 7,11,33 | 0 | 0 | 1000 |
| POWERSHARES ETF TRUS LX NANOTCH | 73935X633 | 1562 | 99652 | SH | DEFINED | 16,24,25 | 91308 | 0 | 8344 |
| POWERSHARES ETF TRUS DYN INS PT | 73935X641 | 236 | 13781 | SH | DEFINED | 16,24,25 | 10877 | 0 | 2904 |
| POWERSHARES ETF TRUS DYN EN EX | 73935X658 | 6 | 250 | SH | DEFINED | 7,11,13 | 250 | 0 | 0 |
| POWERSHARES ETF TRUS DYN EN EX | 73935X658 | 2975 | 117248 | SH | DEFINED | 16,24,25 | 109842 | 0 | 7406 |
| POWERSHARES ETF TRUS DYN BLDG C | 73935X666 | 867 | 47497 | SH | DEFINED | 16,24,25 | 47398 | 0 | 99 |
| POWERSHARES ETF TRUS ZACKS SML | 73935X674 | 370 | 14270 | SH | DEFINED | 16,24,25 | 13383 | 0 | 887 |
| POWERSHARES ETF TRUS VAL LINE T | 73935X682 | 7730 | 414277 | SH | DEFINED | 16,24,25 | 375941 | 0 | 38336 |
| POWERSHARES ETF TRUS AERSPC DEF | 73935X690 | 11 | 500 | SH | DEFINED | 7,11,33 | 0 | 0 | 500 |
| POWERSHARES ETF TRUS AERSPC DEF | 73935X690 | 5296 | 233823 | SH | DEFINED | 16,24,25 | 186886 | 0 | 46937 |
| POWERSHARES ETF TRUS DYNM LRG C | 73935X708 | 21461 | 1054600 | SH | DEFINED | 16,24,25 | 987581 | 0 | 67019 |
| POWERSHARES ETF TRUS INTL DIV A | 73935X716 | 21802 | 1059354 | SH | DEFINED | 16,24,25 | 951849 | 0 | 107505 |
| POWERSHARES ETF TRUS HI GRW RT | 73935X724 | 315 | 21020 | SH | DEFINED | 16,24,25 | 19930 | 0 | 1090 |
| POWERSHARES ETF TRUS DIV ACHV P | 73935X732 | 844 | 50413 | SH | DEFINED | 16,24,25 | 40126 | 0 | 10287 |
| POWERSHARES ETF TRUS ZACKS MC P | 73935X740 | 15 | 1000 | SH | DEFINED | 7,11,33 | 0 | 0 | 1000 |
| POWERSHARES ETF TRUS ZACKS MC P | 73935X740 | 8448 | 549632 | SH | DEFINED | 16,24,25 | 513874 | 0 | 35757 |
| POWERSHARES ETF TRUS DYN LSR & | 73935X757 | 189 | 11957 | SH | DEFINED | 16,24,25 | 11017 | 0 | 940 |
| POWERSHARES ETF TRUS DYNAMIC TE | 73935X765 | 212 | 11400 | SH | DEFINED | 7,11,13 | 11400 | 0 | 0 |
| POWERSHARES ETF TRUS DYNAMIC TE | 73935X765 | 1332 | 71556 | SH | DEFINED | 16,24,25 | 64682 | 0 | 6874 |
| POWERSHARES ETF TRUS DYN SFTWR | 73935X773 | 10895 | 543142 | SH | DEFINED | 16,24,25 | 502961 | 0 | 40181 |
| POWERSHARES ETF TRUS DYN SEMCT | 73935X781 | 165 | 9550 | SH | DEFINED | 7,11,13 | 9550 | 0 | 0 |
| POWERSHARES ETF TRUS DYN SEMCT | 73935X781 | 11 | 616 | SH | DEFINED | 7,11,33 | 0 | 0 | 616 |
| POWERSHARES ETF TRUS DYN SEMCT | 73935X781 | 30740 | 1780979 | SH | DEFINED | 16,24,25 | 1634745 | 0 | 146234 |
| POWERSHARES ETF TRUS DYN PHRMA | 73935X799 | 1 | 60 | SH | DEFINED | 16,24 | 60 | 0 | 0 |
| POWERSHARES ETF TRUS DYN PHRMA | 73935X799 | 120 | 6600 | SH | DEFINED | 7,11,13 | 6600 | 0 | 0 |
| POWERSHARES ETF TRUS DYN PHRMA | 73935X799 | 3578 | 196368 | SH | DEFINED | 16,24,25 | 173510 | 0 | 22858 |
| POWERSHARES ETF TRUS DYNM MC GR | 73935X807 | 34099 | 1405568 | SH | DEFINED | 16,24,25 | 1258888 | 0 | 146679 |
| POWERSHARES ETF TRUS DYN NETWKG | 73935X815 | 566 | 31397 | SH | DEFINED | 16,24,25 | 26679 | 0 | 4718 |
| POWERSHARES ETF TRUS DYN MEDIA | 73935X823 | 10 | 700 | SH | DEFINED | 7,11,13 | 700 | 0 | 0 |
| POWERSHARES ETF TRUS DYN MEDIA | 73935X823 | 11271 | 790934 | SH | DEFINED | 16,24,25 | 734164 | 0 | 56770 |
| POWERSHARES ETF TRUS DYNAMIC HA | 73935X831 | 1126 | 63210 | SH | DEFINED | 16,24,25 | 54157 | 0 | 9053 |
| POWERSHARES ETF TRUS DYN FD & B | 73935X849 | 1059 | 62568 | SH | DEFINED | 16,24,25 | 61416 | 0 | 1152 |
| POWERSHARES ETF TRUS DYN BIOT & | 73935X856 | 50 | 2660 | SH | DEFINED | 7,11,33 | 0 | 0 | 2660 |
| POWERSHARES ETF TRUS DYN BIOT & | 73935X856 | 24490 | 1307518 | SH | DEFINED | 16,24,25 | 1163790 | 0 | 143728 |
| POWERSHARES ETF TRUS DYNM SM CP | 73935X864 | 7 | 420 | SH | DEFINED | 7,11,33 | 0 | 0 | 420 |
| POWERSHARES ETF TRUS DYNM SM CP | 73935X864 | 3788 | 237507 | SH | DEFINED | 16,24,25 | 218176 | 0 | 19330 |
| POWERSHARES ETF TRUS DYNM SM CP | 73935X872 | 3928 | 224850 | SH | DEFINED | 16,24,25 | 209333 | 0 | 15517 |
| POWERSHARES ETF TRUS DYNM MC VA | 73935X880 | 4 | 220 | SH | DEFINED | 7,11,33 | 0 | 0 | 220 |
| POWERSHARES ETF TRUS DYNM MC VA | 73935X880 | 6522 | 355240 | SH | DEFINED | 16,24,25 | 338391 | 0 | 16848 |
| POWERSHARES DB G10 C COM UT BEN | 73935Y102 | 43 | 1560 | SH | DEFINED | 7,11,33 | 0 | 0 | 1560 |
| POWERSHARES DB G10 C COM UT BEN | 73935Y102 | 25902 | 942613 | SH | DEFINED | 16,24,25 | 876126 | 0 | 66487 |
| POWERSHARES DB MULTI SE DB ENERGY | 73936B101 | 4 | 100 | SH | DEFINED | 16,24 | 100 | 0 | 0 |
| POWERSHARES DB MULTI SE DB ENERGY | 73936B101 | 2531 | 71707 | SH | DEFINED | 16,24,25 | 47256 | 0 | 24451 |
| POWERSHS DB MULTI SE DB PREC MT | 73936B200 | 3 | 100 | SH | DEFINED | 16,24 | 100 | 0 | 0 |
| POWERSHS DB MULTI SE DB PREC MT | 73936B200 | 32 | 1025 | SH | DEFINED | 7,11,33 | 0 | 0 | 1025 |
| POWERSHS DB MULTI SE DB PREC MT | 73936B200 | 4993 | 161222 | SH | DEFINED | 16,24,25 | 151066 | 0 | 10156 |
| POWERSHS DB MULTI SE DB SILVER | 73936B309 | 339 | 12196 | SH | DEFINED | 16,24,25 | 9821 | 0 | 2375 |
| POWERSHS DB MULTI SE DB AGRICUL | 73936B408 | 33 | 1000 | SH | DEFINED | 7,11,33 | 0 | 0 | 1000 |
| POWERSHS DB MULTI SE DB AGRICUL | 73936B408 | 36916 | 1118997 | SH | DEFINED | 16,24,25 | 957646 | 0 | 161351 |
| POWERSHS DB MULTI SE DB OIL FUN | 73936B507 | 2788 | 80317 | SH | DEFINED | 16,24,25 | 75287 | 0 | 5030 |
| POWERSHS DB MULTI SE DB GOLD FU | 73936B606 | 815 | 25823 | SH | DEFINED | 16,24,25 | 24952 | 0 | 871 |
| POWERSHS DB MULTI SE DB BASE ME | 73936B705 | 485 | 22146 | SH | DEFINED | 16,24,25 | 20860 | 0 | 1286 |
| POWERSHARES DB US DOLLA DOLL INDX | 73936D107 | 5432 | 229196 | SH | DEFINED | 16,24,25 | 204878 | 0 | 24318 |
| POWERSHARES DB US DOLLA DOLL INDX | 73936D206 | 5661 | 205274 | SH | DEFINED | 16,24,25 | 186566 | 0 | 18708 |
| POWERSHARES GLOBAL E ASIA PAC O | 73936T102 | 1405 | 50547 | SH | DEFINED | 16,24,25 | 48438 | 0 | 2109 |
| POWERSHARES GLOBAL E WK VRDO TX | 73936T433 | 308 | 12310 | SH | DEFINED | 16,24,25 | 12310 | 0 | 0 |
| POWERSHARES GLOBAL E INSUR NATL | 73936T474 | 1029 | 40895 | SH | DEFINED | 16,24,25 | 37685 | 0 | 3210 |
| POWERSHARES GLOBAL E SOVEREIGN | 73936T573 | 9 | 341 | SH | DEFINED | 16,24 | 341 | 0 | 0 |
| POWERSHARES GLOBAL E SOVEREIGN | 73936T573 | 1864 | 70487 | SH | DEFINED | 16,24,25 | 66440 | 0 | 4047 |
| POWERSHARES GLOBAL E GBL CLEAN | 73936T615 | 11 | 350 | SH | DEFINED | 7,11,33 | 0 | 0 | 350 |
| POWERSHARES GLOBAL E GBL CLEAN | 73936T615 | 4283 | 135101 | SH | DEFINED | 16,24,25 | 108281 | 0 | 26820 |
| POWERSHARES GLOBAL E GBL WTR PO | 73936T623 | 2 | 98 | SH | DEFINED | 16,24 | 98 | 0 | 0 |
| POWERSHARES GLOBAL E GBL WTR PO | 73936T623 | 5010 | 202683 | SH | DEFINED | 16,24,25 | 184204 | 0 | 18479 |
| POWERSHARES GLOBAL E EMER MRKT | 73936T763 | 1 | 20 | SH | DEFINED | 7,11,33 | 0 | 0 | 20 |
| POWERSHARES GLOBAL E EMER MRKT | 73936T763 | 1698 | 65224 | SH | DEFINED | 16,24,25 | 58323 | 0 | 6901 |
| POWERSHARES GLOBAL E DEV MKTS E | 73936T789 | 954 | 18845 | SH | DEFINED | 16,24,25 | 17745 | 0 | 1100 |
| POWERSHARES GLOBAL E DEV INTL O | 73936T805 | 2 | 100 | SH | DEFINED | 16,24 | 100 | 0 | 0 |
| POWERSHARES GLOBAL E DEV INTL O | 73936T805 | 10 | 420 | SH | DEFINED | 7,11,33 | 0 | 0 | 420 |
| POWERSHARES GLOBAL E DEV INTL O | 73936T805 | 3693 | 155500 | SH | DEFINED | 16,24,25 | 143957 | 0 | 11543 |
| POWERSHARES GLOBAL E ASIA PC EX | 73936T847 | 5067 | 200290 | SH | DEFINED | 16,24,25 | 200290 | 0 | 0 |
| POWERWAVE TECHNOLOGI COM | 739363109 | 39 | 9715 | SH | DEFINED | 16,24 | 9715 | 0 | 0 |
| POWERWAVE TECHNOLOGI COM | 739363109 | 89 | 22122 | SH | DEFINED | 15,16,24 | 22122 | 0 | 0 |
| POWERWAVE TECHNOLOGI COM | 739363109 | 166 | 41311 | SH | DEFINED | 15,16,24 | 33349 | 0 | 7962 |
| POWERWAVE TECHNOLOGI COM | 739363109 | 375 | 93100 | SH | CALL DEFINED | 15,16,24 | 93100 | 0 | 0 |
| POWERWAVE TECHNOLOGI COM | 739363109 | 373 | 92600 | SH | PUT DEFINED | 15,16,24 | 92600 | 0 | 0 |
| POZEN INC | COM | 73941U102 | 1200 | 99994 | SH | DEFINED | 15,16,24 | 85062 | 0 | 14932 |
| POZEN INC | COM | 73941U102 | 798 | 66500 | SH | CALL DEFINED | 15,16,24 | 66500 | 0 | 0 |
| POZEN INC | COM | 73941U102 | 1031 | 85900 | SH | PUT DEFINED | 15,16,24 | 85900 | 0 | 0 |
| PRAXAIR INC | COM | 74005P104 | 501 | 5650 | SH | DEFINED | 30 | 5650 | 0 | 0 |
| PRAXAIR INC | COM | 74005P104 | 11207 | 126338 | SH | DEFINED | 7,11 | 30448 | 0 | 95890 |
| PRAXAIR INC | COM | 74005P104 | 79 | 889 | SH | DEFINED | 7,11,13 | 739 | 0 | 150 |
| PRAXAIR INC | COM | 74005P104 | 142 | 1600 | SH | DEFINED | 7,11,33 | 0 | 0 | 1600 |
| PRAXAIR INC | COM | 74005P104 | 38522 | 434244 | SH | DEFINED | 16,24,25 | 383200 | 0 | 51043 |
| PRAXAIR INC | COM | 74005P104 | 9377 | 105709 | SH | DEFINED | 32,40,41 | 105709 | 0 | 0 |
| PRAXAIR INC | COM | 74005P104 | 5667 | 63885 | SH | DEFINED | 5-7,11,43,44 | 0 | 63885 | 0 |
| PRECISION CASTPARTS | COM | 740189105 | 17326 | 124919 | SH | DEFINED | 7,11 | 124919 | 0 | 0 |
| PRECISION CASTPARTS | COM | 740189105 | 34 | 243 | SH | DEFINED | 7,11,13 | 223 | 0 | 20 |
| PRECISION CASTPARTS | COM | 740189105 | 6309 | 45485 | SH | DEFINED | 16,24,25 | 39182 | 0 | 6303 |
| PRECISION CASTPARTS | COM | 740189105 | 2597 | 18724 | SH | DEFINED | 32,40,41 | 18724 | 0 | 0 |
| PRECISION CASTPARTS | COM | 740189105 | 3093 | 22300 | SH | CALL DEFINED | 15,16,24 | 22300 | 0 | 0 |
| PRECISION CASTPARTS | COM | 740189105 | 1831 | 13200 | SH | PUT DEFINED | 15,16,24 | 13200 | 0 | 0 |
| PRECISION DRILLING T TR UNIT | 74021S108 | 79 | 5200 | SH | DEFINED | 30 | 5200 | 0 | 0 |
| PRECISION DRILLING T TR UNIT | 74021S108 | 166 | 10944 | SH | DEFINED | 15,16,24 | 10944 | 0 | 0 |
| PRECISION DRILLING T TR UNIT | 74021S108 | 2661 | 175430 | SH | DEFINED | 16,24,25 | 163160 | 0 | 12270 |
| PRECISION DRILLING T TR UNIT | 74021S108 | 27 | 1780 | SH | DEFINED | 32,40,41 | 1780 | 0 | 0 |
| PRECISION DRILLING T TR UNIT | 74021S108 | 13 | 840 | SH | DEFINED | 4,6,7,11 | 840 | 0 | 0 |
| PRECISION DRILLING T TR UNIT | 74021S108 | 34 | 2220 | SH | DEFINED | 5-7,11,43,44 | 0 | 2220 | 0 |
| PRECISION DRILLING T TR UNIT | 74021S108 | 3356 | 221200 | SH | CALL DEFINED | 15,16,24 | 221200 | 0 | 0 |
| PRECISION DRILLING T TR UNIT | 74021S108 | 61 | 4000 | SH | CALL DEFINED | 16,24,25 | 4000 | 0 | 0 |
| PRECISION DRILLING T TR UNIT | 74021S108 | 1924 | 126800 | SH | PUT DEFINED | 15,16,24 | 126800 | 0 | 0 |
| PREFERRED BK LOS ANG COM | 740367107 | 245 | 9400 | SH | DEFINED | 16,24,25 | 8100 | 0 | 1300 |
| PRESIDENTIAL LIFE CO COM | 740884101 | 6268 | 357955 | SH | DEFINED | 16,24,25 | 321238 | 0 | 36716 |
| PRESSTEK INC | COM | 741113104 | 121 | 23575 | SH | DEFINED | 16,24,25 | 23575 | 0 | 0 |
| PRESSTEK INC | COM | 741113104 | 5 | 1000 | SH | CALL DEFINED | 16,24,25 | 1000 | 0 | 0 |
| PRESTIGE BRANDS HLDG COM | 74112D101 | 251 | 33500 | SH | DEFINED | 16,24,25 | 28000 | 0 | 5500 |
| PRICE T ROWE GROUP I COM | 74144T108 | 2030 | 33340 | SH | DEFINED | 7,11 | 27340 | 0 | 6000 |
| PRICE T ROWE GROUP I COM | 74144T108 | 2100 | 34500 | SH | DEFINED | 7,11,13 | 34275 | 0 | 225 |
| PRICE T ROWE GROUP I COM | 74144T108 | 100 | 1650 | SH | DEFINED | 7,11,33 | 0 | 0 | 1650 |
| PRICE T ROWE GROUP I COM | 74144T108 | 18535 | 304457 | SH | DEFINED | 16,24,25 | 202041 | 0 | 102415 |
| PRICE T ROWE GROUP I COM | 74144T108 | 1443 | 23695 | SH | DEFINED | 32,40,41 | 23695 | 0 | 0 |
| PRICE T ROWE GROUP I COM | 74144T108 | 4158 | 68300 | SH | CALL DEFINED | 15,16,24 | 68300 | 0 | 0 |
| PRICE T ROWE GROUP I COM | 74144T108 | 938 | 15400 | SH | CALL DEFINED | 16,24,25 | 15400 | 0 | 0 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PRICE T ROWE GROUP I | COM | | 74144T108 | 2204 | 36200 | SH | PUT | DEFINED | 15,16,24 | 36200 | 0 | 0 |
| PRICE T ROWE GROUP I | COM | | 74144T108 | 1315 | 21600 | SH | PUT | DEFINED | 16,24,25 | 21600 | 0 | 0 |
| PRICELINE COM INC | NOTE 0.50 | | 741503AK2 | 1680 | 585000 | PRN | | DEFINED | 16,24,25 | 585000 | 0 | 0 |
| PRICELINE COM INC | COM NEW | | 741503403 | 391 | 3400 | SH | | DEFINED | 3,9 | 0 | 0 | 3400 |
| PRICELINE COM INC | COM NEW | | 741503403 | 509 | 4434 | SH | | DEFINED | 7,11 | 4268 | 0 | 166 |
| PRICELINE COM INC | COM NEW | | 741503403 | 85 | 736 | SH | | DEFINED | 16,24 | 736 | 0 | 0 |
| PRICELINE COM INC | COM NEW | | 741503403 | 37 | 325 | SH | | DEFINED | 7,11,13 | 325 | 0 | 0 |
| PRICELINE COM INC | COM NEW | | 741503403 | 9630 | 83845 | SH | | DEFINED | 15,16,24 | 83845 | 0 | 0 |
| PRICELINE COM INC | COM NEW | | 741503403 | 10029 | 87319 | SH | | DEFINED | 16,24,25 | 80033 | 0 | 7286 |
| PRICELINE COM INC | COM NEW | | 741503403 | 34159 | 297400 | SH | CALL | DEFINED | 15,16,24 | 297400 | 0 | 0 |
| PRICELINE COM INC | COM NEW | | 741503403 | 44612 | 388400 | SH | PUT | DEFINED | 15,16,24 | 388400 | 0 | 0 |
| PRICELINE COM INC | COM NEW | | 741503403 | 4594 | 40000 | SH | PUT | DEFINED | 16,24,25 | 40000 | 0 | 0 |
| PRIDE INTL INC DEL | NOTE 3.25 | | 74153QAD4 | 1341 | 995000 | PRN | | DEFINED | 16,24,25 | 995000 | 0 | 0 |
| PRIDE INTL INC DEL | COM | | 74153Q102 | 1239 | 36540 | SH | | DEFINED | 7,11 | 36540 | 0 | 0 |
| PRIDE INTL INC DEL | COM | | 74153Q102 | 2000 | 59007 | SH | | DEFINED | 16,24,25 | 46403 | 0 | 12604 |
| PRIDE INTL INC DEL | COM | | 74153Q102 | 172 | 5075 | SH | | DEFINED | 32,40,41 | 5075 | 0 | 0 |
| PRIDE INTL INC DEL | COM | | 74153Q102 | 24 | 700 | SH | | DEFINED | 5-7,11,43,44 | 0 | 700 | 0 |
| PRIDE INTL INC DEL | COM | | 74153Q102 | 16716 | 493100 | SH | CALL | DEFINED | 15,16,24 | 493100 | 0 | 0 |
| PRIDE INTL INC DEL | COM | | 74153Q102 | 11858 | 349800 | SH | CALL | DEFINED | 16,24,25 | 349800 | 0 | 0 |
| PRIDE INTL INC DEL | COM | | 74153Q102 | 4980 | 146900 | SH | PUT | DEFINED | 15,16,24 | 146900 | 0 | 0 |
| PRIDE INTL INC DEL | COM | | 74153Q102 | 4583 | 135200 | SH | PUT | DEFINED | 16,24,25 | 135200 | 0 | 0 |
| PRIMEWEST ENERGY TR | TR UNIT NE | | 741930309 | 728 | 26834 | SH | | DEFINED | 16,24,25 | 25033 | 0 | 1801 |
| PRIMEWEST ENERGY TR | TR UNIT NE | | 741930309 | 113 | 4155 | SH | | DEFINED | 32,40,41 | 4155 | 0 | 0 |
| PRIMEWEST ENERGY TR | TR UNIT NE | | 741930309 | 302 | 11131 | SH | | DEFINED | 4,6,7,11 | 11131 | 0 | 0 |
| PRINCIPAL FINANCIAL | COM | | 74251V102 | 1434 | 20830 | SH | | DEFINED | 7,11 | 20830 | 0 | 0 |
| PRINCIPAL FINANCIAL | COM | | 74251V102 | 452 | 6565 | SH | | DEFINED | 7,11,33 | 0 | 0 | 6565 |
| PRINCIPAL FINANCIAL | COM | | 74251V102 | 67407 | 979189 | SH | | DEFINED | 16,24,25 | 826960 | 0 | 152229 |
| PRINCIPAL FINANCIAL | COM | | 74251V102 | 526 | 7641 | SH | | DEFINED | 32,40,41 | 7641 | 0 | 0 |
| PROASSURANCE CORP | COM | | 74267C106 | 3 | 60 | SH | | DEFINED | 7,11 | 0 | 0 | 60 |
| PROASSURANCE CORP | COM | | 74267C106 | 778 | 14175 | SH | | DEFINED | 16,24,25 | 12048 | 0 | 2127 |
| PROCTER & GAMBLE CO | COM | | 742718109 | 1278 | 17412 | SH | | DEFINED | 12 | 0 | 0 | 17412 |
| PROCTER & GAMBLE CO | COM | | 742718109 | 744 | 10129 | SH | | DEFINED | 3,9 | 0 | 0 | 10129 |
| PROCTER & GAMBLE CO | COM | | 742718109 | 157437 | 2144337 | SH | | DEFINED | 7,11 | 1085924 | 3444 | 1054969 |
| PROCTER & GAMBLE CO | COM | | 742718109 | 7955 | 108346 | SH | | DEFINED | 7,11,13 | 98943 | 0 | 9403 |
| PROCTER & GAMBLE CO | COM | | 742718109 | 1907 | 25975 | SH | | DEFINED | 7,11,33 | 0 | 0 | 25975 |
| PROCTER & GAMBLE CO | COM | | 742718109 | 413859 | 5636863 | SH | | DEFINED | 16,24,25 | 4401936 | 0 | 1234927 |
| PROCTER & GAMBLE CO | COM | | 742718109 | 17476 | 238033 | SH | | DEFINED | 32,40,41 | 238033 | 0 | 0 |
| PROCTER & GAMBLE CO | COM | | 742718109 | 1567 | 21347 | SH | | DEFINED | 5-7,11,43,44 | 0 | 21347 | 0 |
| PROCTER & GAMBLE CO | COM | | 742718109 | 20744 | 282534 | SH | | DEFINED | 16,19,24,26,27 | 282534 | 0 | 0 |
| PROCTER & GAMBLE CO | COM | | 742718109 | 21657 | 294971 | SH | CALL | DEFINED | 7,11 | 294971 | 0 | 0 |
| PROCTER & GAMBLE CO | COM | | 742718109 | 58773 | 800500 | SH | CALL | DEFINED | 15,16,24 | 800500 | 0 | 0 |
| PROCTER & GAMBLE CO | COM | | 742718109 | 50851 | 692600 | SH | CALL | DEFINED | 16,24,25 | 692600 | 0 | 0 |
| PROCTER & GAMBLE CO | COM | | 742718109 | 62914 | 856900 | SH | PUT | DEFINED | 15,16,24 | 856900 | 0 | 0 |
| PROCTER & GAMBLE CO | COM | | 742718109 | 71612 | 975371 | SH | PUT | DEFINED | 16,24,25 | 975371 | 0 | 0 |
| PROGENICS PHARMACEUT | COM | | 743187106 | 827 | 45768 | SH | | DEFINED | 16,24,25 | 43373 | 0 | 2395 |
| PROGRESS ENERGY INC | COM | | 743263105 | 4263 | 88034 | SH | | DEFINED | 7,11 | 24940 | 0 | 63094 |
| PROGRESS ENERGY INC | COM | | 743263105 | 196 | 4043 | SH | | DEFINED | 7,11,13 | 3618 | 0 | 425 |
| PROGRESS ENERGY INC | COM | | 743263105 | 11316 | 233666 | SH | | DEFINED | 16,24,25 | 182431 | 0 | 51234 |
| PROGRESS ENERGY INC | COM | | 743263105 | 7301 | 150748 | SH | | DEFINED | 32,40,41 | 150748 | 0 | 0 |
| PROGRESS ENERGY INC | COM | | 743263105 | 242 | 5000 | SH | CALL | DEFINED | 7,11 | 5000 | 0 | 0 |
| PROGRESS ENERGY INC | COM | | 743263105 | 242 | 5000 | SH | PUT | DEFINED | 7,11 | 5000 | 0 | 0 |
| PROGRESSIVE CORP OHI | COM | | 743315103 | 1550 | 80888 | SH | | DEFINED | 7,11 | 80888 | 0 | 0 |
| PROGRESSIVE CORP OHI | COM | | 743315103 | 13421 | 700485 | SH | | DEFINED | 16,24 | 700485 | 0 | 0 |
| PROGRESSIVE CORP OHI | COM | | 743315103 | 10 | 500 | SH | | DEFINED | 7,11,13 | 500 | 0 | 0 |
| PROGRESSIVE CORP OHI | COM | | 743315103 | 4466 | 233109 | SH | | DEFINED | 16,24,25 | 183805 | 0 | 49304 |
| PROGRESSIVE CORP OHI | COM | | 743315103 | 2862 | 149384 | SH | | DEFINED | 32,40,41 | 149384 | 0 | 0 |
| PROGRESSIVE CORP OHI | COM | | 743315103 | 2428 | 126700 | SH | CALL | DEFINED | 15,16,24 | 126700 | 0 | 0 |
| PROGRESSIVE CORP OHI | COM | | 743315103 | 862 | 45000 | SH | CALL | DEFINED | 16,24,25 | 45000 | 0 | 0 |
| PROGRESSIVE CORP OHI | COM | | 743315103 | 203 | 10600 | SH | PUT | DEFINED | 15,16,24 | 10600 | 0 | 0 |
| PROGRESSIVE CORP OHI | COM | | 743315103 | 1073 | 56000 | SH | PUT | DEFINED | 16,24,25 | 56000 | 0 | 0 |
| PROGRESSIVE GAMING I | COM | | 74332S102 | 136 | 54764 | SH | | DEFINED | 16,24,25 | 48514 | 0 | 6250 |
| PROLOGIS | NOTE 1.87 | | 743410AR3 | 18600 | 20000000 | PRN | | DEFINED | 31,45 | 20000000 | 0 | 0 |
| PROLOGIS | SH BEN INT | | 743410102 | 2374 | 37456 | SH | | DEFINED | 7,11 | 37456 | 0 | 0 |
| PROLOGIS | SH BEN INT | | 743410102 | 27304 | 430800 | SH | | DEFINED | 14,31 | 430800 | 0 | 0 |
| PROLOGIS | SH BEN INT | | 743410102 | 26 | 417 | SH | | DEFINED | 7,11,33 | 0 | 0 | 417 |
| PROLOGIS | SH BEN INT | | 743410102 | 11684 | 184350 | SH | | DEFINED | 16,24,25 | 129652 | 0 | 54698 |
| PROLOGIS | SH BEN INT | | 743410102 | 48386 | 763425 | SH | | DEFINED | 32,40,41 | 763425 | 0 | 0 |
| PROLOGIS | SH BEN INT | | 743410102 | 375 | 5923 | SH | | DEFINED | 16,19,24,26,27 | 5923 | 0 | 0 |
| PROSHARES TR | ULTRA XIN | | 74347R321 | 5747 | 74760 | SH | | DEFINED | 16,24,25 | 70702 | 0 | 4058 |
| PROSHARES TR | ULTR SHRT | | 74347R339 | 661 | 8945 | SH | | DEFINED | 16,24,25 | 7991 | 0 | 954 |
| PROSHARES TR | ULTR SHRT | | 74347R354 | 1953 | 26721 | SH | | DEFINED | 16,24,25 | 19738 | 0 | 6983 |
| PROSHARES TR | SHRT MSCI | | 74347R370 | 229 | 3165 | SH | | DEFINED | 16,24,25 | 3056 | 0 | 109 |
| PROSHARES TR | ULSHRT2000 | | 74347R412 | 216 | 2413 | SH | | DEFINED | 16,24,25 | 2272 | 0 | 141 |
| PROSHARES TR | ULSHRT1000 | | 74347R420 | 234 | 3521 | SH | | DEFINED | 16,24,25 | 3140 | 0 | 381 |
| PROSHARES TR | ULSHRT1000 | | 74347R453 | 2991 | 39214 | SH | | DEFINED | 16,24,25 | 38857 | 0 | 357 |
| PROSHARES TR | SHORT S&P | | 74347R503 | 14811 | 243723 | SH | | DEFINED | 16,24,25 | 208839 | 0 | 34884 |
| PROSHARES TR | SEMICONDUC | | 74347R545 | 246 | 4382 | SH | | DEFINED | 16,24,25 | 4327 | 0 | 55 |
| PROSHARES TR | REAL EST P | | 74347R552 | 5641 | 50923 | SH | | DEFINED | 16,24,25 | 46817 | 0 | 4106 |
| PROSHARES TR | ULTRASHRT | | 74347R560 | 213 | 4203 | SH | | DEFINED | 16,24,25 | 3953 | 0 | 250 |
| PROSHARES TR | ULTRASHRT | | 74347R586 | 76 | 2100 | SH | | DEFINED | 7,11,33 | 0 | 0 | 2100 |
| PROSHARES TR | ULTRASHRT | | 74347R586 | 7688 | 213661 | SH | | DEFINED | 16,24,25 | 171642 | 0 | 42019 |
| PROSHARES TR | ULTRASHRT | | 74347R594 | 2 | 40 | SH | | DEFINED | 16,24 | 40 | 0 | 0 |
| PROSHARES TR | ULTRASHRT | | 74347R594 | 916 | 16281 | SH | | DEFINED | 16,24,25 | 15281 | 0 | 1000 |
| PROSHARES TR | SHORT QQQ | | 74347R602 | 6325 | 118863 | SH | | DEFINED | 16,24,25 | 104696 | 0 | 14167 |
| PROSHARES TR | ULTRASHRT | | 74347R628 | 11565 | 115787 | SH | | DEFINED | 16,24,25 | 106725 | 0 | 9062 |
| PROSHARES TR | CONSUM SV | | 74347R636 | 1608 | 18787 | SH | | DEFINED | 16,24,25 | 17710 | 0 | 1077 |
| PROSHARES TR | BASIC MTRL | | 74347R651 | 0 | 12 | SH | | DEFINED | 16,24 | 12 | 0 | 0 |
| PROSHARES TR | BASIC MTRL | | 74347R651 | 263 | 6470 | SH | | DEFINED | 16,24,25 | 6330 | 0 | 140 |
| PROSHARES TR | SHORT DOW | | 74347R701 | 7384 | 124421 | SH | | DEFINED | 16,24,25 | 100066 | 0 | 24355 |
| PROSHARES TR | ULTRA FINL | | 74347R743 | 1590 | 38275 | SH | | DEFINED | 16,24,25 | 34505 | 0 | 3770 |
| PROSHARES TR | SHRT SMLCA | | 74347R784 | 640 | 9051 | SH | | DEFINED | 16,24,25 | 8252 | 0 | 799 |
| PROSHARES TR | ULTSH SMCA | | 74347R792 | 3968 | 56607 | SH | | DEFINED | 16,24,25 | 50626 | 0 | 5981 |
| PROSHARES TR | SHORT MDCA | | 74347R800 | 8549 | 143197 | SH | | DEFINED | 16,24,25 | 124048 | 0 | 19149 |
| PROSHARES TR | SHORT RUS | | 74347R826 | 1967 | 27275 | SH | | DEFINED | 16,24,25 | 24574 | 0 | 2701 |
| PROSHARES TR | ULTSHT RUS | | 74347R834 | 20 | 285 | SH | | DEFINED | 7,11,33 | 0 | 0 | 285 |
| PROSHARES TR | ULTSHT RUS | | 74347R834 | 18083 | 257122 | SH | | DEFINED | 16,24,25 | 226845 | 0 | 30277 |
| PROSHARES TR | ULTRASHT M | | 74347R859 | 9013 | 164351 | SH | | DEFINED | 16,24,25 | 142603 | 0 | 21748 |
| PROSHARES TR | ULTRASHRT | | 74347R867 | 4082 | 81339 | SH | | DEFINED | 16,24,25 | 66605 | 0 | 14734 |
| PROSHARES TR | ULTRASHRT | | 74347R875 | 5181 | 136408 | SH | | DEFINED | 16,24,25 | 124241 | 0 | 12167 |
| PROSHARES TR | ULTRASHT S | | 74347R883 | 39 | 725 | SH | | DEFINED | 7,11,33 | 0 | 0 | 725 |
| PROSHARES TR | ULTRASHT S | | 74347R883 | 29021 | 535640 | SH | | DEFINED | 16,24,25 | 484029 | 0 | 51610 |
| PROSPECT ACQUISITION | UNIT 99/99 | | 74347T202 | 4405 | 449900 | SH | | DEFINED | 16,24,25 | 410300 | 0 | 39600 |
| PROSPECT CAPITAL COR | COM | | 74348T102 | 3240 | 248302 | SH | | DEFINED | 16,24,25 | 214725 | 0 | 33577 |
| PROSPECT STREET INCO | COM | | 743590101 | 246 | 48614 | SH | | DEFINED | 16,24,25 | 46257 | 0 | 2357 |
| PROSPECT STREET INCO | COM | | 743590101 | 27 | 5300 | SH | | DEFINED | 16,19,24,26,27 | 5300 | 0 | 0 |
| PROSPERITY BANCSHARE | COM | | 743606105 | 246 | 4816 | SH | | DEFINED | 30 | 3200 | 0 | 0 |
| PROSPERITY BANCSHARE | COM | | 743606105 | 187 | 6356 | SH | | DEFINED | 16,24,25 | 5736 | 0 | 620 |
| PROTECTIVE LIFE CORP | COM | | 743674103 | 6700 | 163343 | SH | | DEFINED | 7,11 | 3343 | 0 | 160000 |
| PROTECTIVE LIFE CORP | COM | | 743674103 | 12 | 290 | SH | | DEFINED | 7,11,13 | 290 | 0 | 0 |
| PROTECTIVE LIFE CORP | COM | | 743674103 | 833 | 20316 | SH | | DEFINED | 16,24,25 | 18859 | 0 | 1456 |
| PROTEIN DESIGN LABS | NOTE 2.75 | | 74369LAD5 | 11371 | 11000000 | PRN | | DEFINED | 16,24,25 | 11000000 | 0 | 0 |
| PROTEIN DESIGN LABS | NOTE 2.00 | | 74369LAF0 | 19758 | 20369000 | PRN | | DEFINED | 16,24,25 | 20369000 | 0 | 0 |
| PROVIDENCE SVC CORP | COM | | 743815102 | 234 | 8300 | SH | | DEFINED | 16,24,25 | 8300 | 0 | 0 |
| PROVIDENT BANKSHARES | COM | | 743859100 | 86 | 4025 | SH | | DEFINED | 30 | 4025 | 0 | 0 |

```
PROVIDENT BANKSHARES  COM              743859100        5       257 SH    DEFINED           7,11            0             0       257
PROVIDENT BANKSHARES  COM              743859100       73      3403 SH    DEFINED           7,11,13      3403             0         0
PROVIDENT BANKSHARES  COM              743859100      529     24724 SH    DEFINED          16,24,25     15976             0      8748
PROVIDENT ENERGY TR   TR UNIT          74386K104      420     42000 SH    DEFINED           7,11            0             0     42000
PROVIDENT ENERGY TR   TR UNIT          74386K104     1478    147839 SH    DEFINED           7,11,33         0             0    147839
PROVIDENT ENERGY TR   TR UNIT          74386K104     7526    752572 SH    DEFINED          16,24,25    693220             0     59352
PROVIDENT ENERGY TR   TR UNIT          74386K104       75      7475 SH    DEFINED          32,40,41      7475             0         0
PROVIDENT ENERGY TR   TR UNIT          74386K104       26      2634 SH    DEFINED         4,6,7,11      2634             0         0
PROVIDENT FINL SVCS   COM              74386T105      408     28264 SH    DEFINED          16,24,25     18925             0      9339
PROXYMED INC          COM NEW          744290305       33     12340 SH    DEFINED          16,24,25      9600             0      2740
PRUDENTIAL FINL INC   FRNT             744320AG7   182490 183113000 PRN    DEFINED          16,24,25 183113000            0         0
PRUDENTIAL FINL INC   COM              744320102       43       465 SH    DEFINED                12         0             0       465
PRUDENTIAL FINL INC   COM              744320102      312      3350 SH    DEFINED               3,9         0             0      3350
PRUDENTIAL FINL INC   COM              744320102    35415    380643 SH    DEFINED              7,11    353463           250     26930
PRUDENTIAL FINL INC   COM              744320102     1019     10956 SH    DEFINED           7,11,13      6086             0      4870
PRUDENTIAL FINL INC   COM              744320102      223      2398 SH    DEFINED           7,11,33         0             0      2398
PRUDENTIAL FINL INC   COM              744320102    34627    372172 SH    DEFINED          16,24,25    319573             0     52598
PRUDENTIAL FINL INC   COM              744320102     6632     71280 SH    DEFINED          32,40,41      7180             0         0
PRUDENTIAL FINL INC   COM              744320102    39468    424200 SH    CALL DEFINED     15,16,24    424200             0         0
PRUDENTIAL FINL INC   COM              744320102    13426    144300 SH    CALL DEFINED     16,24,25    144300             0         0
PRUDENTIAL FINL INC   COM              744320102    32778    352300 SH    PUT DEFINED      15,16,24    352300             0         0
PRUDENTIAL FINL INC   COM              744320102     2279     24500 SH    PUT DEFINED      16,24,25     24500             0         0
PRUDENTIAL PLC        ADR              74435K204      263      9170 SH    DEFINED                30      9170             0         0
PRUDENTIAL PLC        ADR              74435K204      382     13340 SH    DEFINED          16,24,25     12604             0       736
PRUDENTIAL PLC        ADR              74435K204      859     30000 SH    DEFINED       16,19,24,26,29   30000             0         0
PT INDOSAT TBK        SPONSORED        744383100       35       750 SH    DEFINED          16,24,25       100             0       650
PT INDOSAT TBK        SPONSORED        744383100      182      3900 SH    DEFINED       16,19,24,26,27   3900             0         0
PSYCHIATRIC SOLUTION  COM              74439H108        6       190 SH    DEFINED           7,11,33         0             0       190
PSYCHIATRIC SOLUTION  COM              74439H108    11098    310708 SH    DEFINED          16,24,25    267506             0     43202
PUBLIC SVC ENTERPRIS  COM              745473106        2        25 SH    DEFINED                12         0             0        25
PUBLIC SVC ENTERPRIS  COM              745473106     3660     37260 SH    DEFINED              7,11     27915          1000      8345
PUBLIC SVC ENTERPRIS  COM              745473106      551      5612 SH    DEFINED           7,11,13      4267             0      1345
PUBLIC SVC ENTERPRIS  COM              745473106       80       813 SH    DEFINED           7,11,33         0             0        25
PUBLIC SVC ENTERPRIS  COM              745473106    18244    185708 SH    DEFINED          16,24,25    158785             0     26923
PUBLIC SVC ENTERPRIS  COM              745473106      786      8001 SH    DEFINED          32,40,41      8001             0         0
PUBLIC SVC ENTERPRIS  COM              745473106      491      4997 SH    DEFINED       16,19,24,26,27   4997             0         0
PUBLIC STORAGE        COM              74460D109     1600     21796 SH    DEFINED              7,11     21796             0         0
PUBLIC STORAGE        COM              74460D109    11753    160100 SH    DEFINED             14,31    160100             0         0
PUBLIC STORAGE        COM              74460D109      465      6337 SH    DEFINED           7,11,13      6337             0         0
PUBLIC STORAGE        COM              74460D109     2769     37721 SH    DEFINED          16,24,25     22987             0     14734
PUBLIC STORAGE        COM              74460D109    31516    429315 SH    DEFINED          32,40,41    429315             0         0
PUBLIC STORAGE        COM              74460D109        5        66 SH    DEFINED       5-7,11,43,44        0            66         0
PUBLIC STORAGE        COM              74460D729      207      2826 SH    DEFINED       16,19,24,26,27   2826             0         0
PUBLIC STORAGE        COM A DP1/       74460D729      211      8445 SH    DEFINED          16,24,25      7196             0      1248
PUGET ENERGY INC NEW  COM              745310102      154      5622 SH    DEFINED              7,11      5622             0         0
PUGET ENERGY INC NEW  COM              745310102       27      1000 SH    DEFINED             16,24      1000             0         0
PUGET ENERGY INC NEW  COM              745310102        2        65 SH    DEFINED           7,11,13        65             0         0
PUGET ENERGY INC NEW  COM              745310102     1502     54757 SH    DEFINED          16,24,25     45221             0      9536
PULTE HOMES INC       COM              745867101      274     26037 SH    DEFINED              7,11     26037             0         0
PULTE HOMES INC       COM              745867101        5       500 SH    DEFINED           7,11,13       500             0         0
PULTE HOMES INC       COM              745867101     7472    708909 SH    DEFINED          16,24,25    660657             0     48252
PULTE HOMES INC       COM              745867101       80      7627 SH    DEFINED          32,40,41      7627             0         0
PULTE HOMES INC       COM              745867101     3863    366544 SH    CALL DEFINED         7,11    366544             0         0
PULTE HOMES INC       COM              745867101     9373    889300 SH    CALL DEFINED     15,16,24    889300             0         0
PULTE HOMES INC       COM              745867101    11340   1075900 SH    PUT DEFINED      15,16,24   1075900             0         0
PULTE HOMES INC       COM              745867101     4926    467344 SH    PUT DEFINED      16,24,25    467344             0         0
PUTNAM HIGH INCOME S  SHS BEN IN       746779107        5       608 SH    DEFINED             16,24       608             0         0
PUTNAM HIGH INCOME S  SHS BEN IN       746779107      349     43358 SH    DEFINED          16,24,25     38749             0      4609
PUTNAM HIGH YIELD MU  SH BEN INT       746781103      575     86005 SH    DEFINED          16,24,25     75485             0     10520
PUTNAM INVT GRADE MU  COM              746805100      238     25013 SH    DEFINED          16,24,25     24299             0       733
PUTNAM MANAGED MUN I  COM              746823103     1277    182950 SH    DEFINED          16,24,25    182950             0         0
PUTNAM PREMIER INCOM  SH BEN INT       746853100      165     26550 SH    DEFINED           7,11,13     26550             0         0
PUTNAM PREMIER INCOM  SH BEN INT       746853100    17200   2774130 SH    DEFINED          16,24,25   2232653             0    541477
PUTNAM PREMIER INCOM  SH BEN INT       746853100      168     27097 SH    DEFINED       16,19,24,26,27  27097             0         0
QIMONDA AG            SPONSORED        746904101      215     30100 SH    DEFINED                30     30100             0         0
QIMONDA AG            SPONSORED        746904101       10      1440 SH    DEFINED              7,11         0             0      1440
QIMONDA AG            SPONSORED        746904101        6       812 SH    DEFINED           7,11,13       812             0         0
QIMONDA AG            SPONSORED        746904101      475     66462 SH    DEFINED          16,24,25     60426             0      6036
QIMONDA AG            SPONSORED        746904101     1662    232400 SH    DEFINED          32,40,41    232400             0         0
QIMONDA AG            SPONSORED        746904101      515     72000 SH    CALL DEFINED     15,16,24     72000             0         0
QIMONDA AG            SPONSORED        746904101      133     18600 SH    PUT DEFINED      15,16,24     18600             0         0
PUTNAM MASTER INTER   SH BEN INT       746909100      138     21758 SH    DEFINED              7,11         0             0     21758
PUTNAM MASTER INTER   SH BEN INT       746909100     7669   1213467 SH    DEFINED          16,24,25   1014445             0    199022
PUTNAM MASTER INTER   SH BEN INT       746909100       45      7067 SH    DEFINED       16,19,24,26,27   7067             0         0
QLT INC               COM              746927102       86     19480 SH    DEFINED          16,24,25     18712             0       768
QLT INC               COM              746927102        5      1035 SH    DEFINED         4,6,7,11      1035             0         0
QLOGIC CORP           COM              747277101     2611    183906 SH    DEFINED              7,11    183906             0         0
QLOGIC CORP           COM              747277101      774     54535 SH    DEFINED          16,24,25     54535             0         0
QLOGIC CORP           COM              747277101     7640    538004 SH    DEFINED          16,24,25    528087             0      9917
QLOGIC CORP           COM              747277101       51      3595 SH    DEFINED          32,40,41      3595             0         0
QLOGIC CORP           COM              747277101     3438    242143 SH    DEFINED       16,19,24,26,27 242143             0         0
QLOGIC CORP           COM              747277101      676     47600 SH    CALL DEFINED     15,16,24     47600             0         0
QLOGIC CORP           COM              747277101       28      2000 SH    CALL DEFINED     16,24,25      2000             0         0
QLOGIC CORP           COM              747277101     1389     97800 SH    PUT DEFINED      15,16,24     97800             0         0
QUAKER CHEM CORP      COM              747316107      292     13283 SH    DEFINED          16,24,25     12716             0       567
QUALCOMM INC          COM              747525103      366      9300 SH    DEFINED                30      9300             0         0
QUALCOMM INC          COM              747525103    51739   1314849 SH    DEFINED              7,11   1137204             0    177645
QUALCOMM INC          COM              747525103     3020     76759 SH    DEFINED           7,11,13     75464             0      1295
QUALCOMM INC          COM              747525103      105      2675 SH    DEFINED           7,11,33         0             0      2675
QUALCOMM INC          COM              747525103    90274   2294120 SH    DEFINED          16,24,25   2019020             0    275099
QUALCOMM INC          COM              747525103    25340    643965 SH    DEFINED          32,40,41    643965             0         0
QUALCOMM INC          COM              747525103       10       255 SH    DEFINED       5-7,11,43,44        0           255         0
QUALCOMM INC          COM              747525103     1795     45627 SH    DEFINED          16,24,25     45627             0         0
QUALCOMM INC          COM              747525103       51      1296 SH    DEFINED  2,6,7,10-11,18,20,21,28   1296        0         0
QUALCOMM INC          COM              747525103    44449   1129575 SH    CALL DEFINED         7,11   1129575             0         0
QUALCOMM INC          COM              747525103    93622   2379200 SH    CALL DEFINED     15,16,24   2379200             0         0
QUALCOMM INC          COM              747525103    23146    588200 SH    CALL DEFINED     16,24,25    588200             0         0
QUALCOMM INC          COM              747525103   112915   2869500 SH    PUT DEFINED          7,11   2869500             0         0
QUALCOMM INC          COM              747525103    34132    867400 SH    PUT DEFINED      15,16,24    867400             0         0
QUALCOMM INC          COM              747525103    39074    992975 SH    PUT DEFINED      16,24,25    991375             0      1600
QUALITY SYS INC       COM              747582104       24       800 SH    DEFINED           7,11,13       800             0         0
QUALITY SYS INC       COM              747582104      241      7911 SH    DEFINED          16,24,25      6267             0      1644
QUANTA SVCS INC       COM              74762E102      339     12925 SH    DEFINED              7,11     12925             0         0
QUANTA SVCS INC       COM              74762E102     1057     40282 SH    DEFINED          16,24,25     34567             0      5715
QUANTA SVCS INC       COM              74762E102      144      5500 SH    DEFINED          32,40,41      5500             0         0
QUANTA SVCS INC       COM              74762E102     1202     45800 SH    CALL DEFINED     15,16,24     45800             0         0
QUANTA SVCS INC       COM              74762E102     1514     57700 SH    PUT DEFINED      15,16,24     57700             0         0
QUANTA SVCS INC       COM              74762E102     3411    130000 SH    PUT DEFINED      16,24,25    130000             0         0
QUANEX CORP           COM              747620102      335      6460 SH    DEFINED           7,11,13      6300             0       160
QUANEX CORP           COM              747620102      281      5413 SH    DEFINED          16,24,25      5233             0       180
QUANTUM FUEL SYS TEC  COM              74765E109        9     18765 SH    DEFINED          16,24,25     14371             0      4394
QUANTUM CORP          NOTE  4.37       747906AE5     6493   7000000 PRN    DEFINED             31,45   7000000             0         0
QUANTUM CORP          COM DSSG         747906204        7      2500 SH    DEFINED           7,11,33         0             0      2500
QUANTUM CORP          COM DSSG         747906204     3348   1244450 SH    DEFINED          16,24,25   1115623             0    128827
```

| Name | Class | CUSIP | Col4 | Col5 | Unit | Type | Codes | Amt1 | Amt2 | Amt3 |
|---|---|---|---|---|---|---|---|---|---|---|
| Q MED | COM | 747914109 | 2 | 10458 | SH | DEFINED | 16,24,25 | 458 | 0 | 10000 |
| QUEST DIAGNOSTICS IN | COM | 74834L100 | 2202 | 41628 | SH | DEFINED | 7,11 | 20628 | 0 | 21000 |
| QUEST DIAGNOSTICS IN | COM | 74834L100 | 3848 | 72745 | SH | DEFINED | 7,11,13 | 70270 | 0 | 2475 |
| QUEST DIAGNOSTICS IN | COM | 74834L100 | 33 | 625 | SH | DEFINED | 7,11,13 | 0 | 0 | 625 |
| QUEST DIAGNOSTICS IN | COM | 74834L100 | 2431 | 45961 | SH | DEFINED | 15,16,24 | 45961 | 0 | 0 |
| QUEST DIAGNOSTICS IN | COM | 74834L100 | 5256 | 99349 | SH | DEFINED | 16,24,25 | 90743 | 0 | 8605 |
| QUEST DIAGNOSTICS IN | COM | 74834L100 | 457 | 8644 | SH | DEFINED | 32,40,41 | 8644 | 0 | 0 |
| QUEST DIAGNOSTICS IN | COM | 74834L100 | 5745 | 108600 | SH | CALL DEFINED | 15,16,24 | 108600 | 0 | 0 |
| QUEST DIAGNOSTICS IN | COM | 74834L100 | 1132 | 21400 | SH | CALL DEFINED | 16,24,25 | 21400 | 0 | 0 |
| QUEST DIAGNOSTICS IN | COM | 74834L100 | 10453 | 197600 | SH | PUT DEFINED | 15,16,24 | 197600 | 0 | 0 |
| QUEST DIAGNOSTICS IN | COM | 74834L100 | 1328 | 25100 | SH | PUT DEFINED | 16,24,25 | 25100 | 0 | 0 |
| QUEST SOFTWARE INC | COM | 74834T103 | 199 | 10800 | SH | DEFINED | 30 | 10800 | 0 | 0 |
| QUEST SOFTWARE INC | COM | 74834T103 | 247 | 13411 | SH | DEFINED | 7,11 | 13411 | 0 | 0 |
| QUEST SOFTWARE INC | COM | 74834T103 | 2123 | 115128 | SH | DEFINED | 16,24,25 | 115128 | 0 | 0 |
| QUESTAR CORP | COM | 748356102 | 3420 | 63224 | SH | DEFINED | 7,11 | 58424 | 0 | 4800 |
| QUESTAR CORP | COM | 748356102 | 108 | 2000 | SH | DEFINED | 7,11,13 | 2000 | 0 | 0 |
| QUESTAR CORP | COM | 748356102 | 56 | 1030 | SH | DEFINED | 7,11,13 | 0 | 0 | 1030 |
| QUESTAR CORP | COM | 748356102 | 14584 | 269567 | SH | DEFINED | 16,24,25 | 245334 | 0 | 24232 |
| QUESTAR CORP | COM | 748356102 | 310 | 5738 | SH | DEFINED | 32,40,41 | 5738 | 0 | 0 |
| QUESTAR CORP | COM | 748356102 | 2138 | 39514 | SH | CALL DEFINED | 7,11 | 39514 | 0 | 0 |
| QUESTAR CORP | COM | 748356102 | 9581 | 177100 | SH | CALL DEFINED | 15,16,24 | 177100 | 0 | 0 |
| QUESTAR CORP | COM | 748356102 | 1001 | 18500 | SH | CALL DEFINED | 16,24,25 | 18500 | 0 | 0 |
| QUESTAR CORP | COM | 748356102 | 6449 | 119200 | SH | PUT DEFINED | 15,16,24 | 119200 | 0 | 0 |
| QUESTAR CORP | COM | 748356102 | 3139 | 58014 | SH | PUT DEFINED | 16,24,25 | 58014 | 0 | 0 |
| QUICKSILVER RESOURCE | COM | 74837R104 | 226 | 3800 | SH | DEFINED | 30 | 3800 | 0 | 0 |
| QUICKSILVER RESOURCE | COM | 74837R104 | 5065 | 85000 | SH | DEFINED | 42 | 85000 | 0 | 0 |
| QUICKSILVER RESOURCE | COM | 74837R104 | 36 | 608 | SH | DEFINED | 7,11 | 608 | 0 | 0 |
| QUICKSILVER RESOURCE | COM | 74837R104 | 2993 | 50220 | SH | DEFINED | 16,24,25 | 38761 | 0 | 11459 |
| QUICKSILVER RESOURCE | COM | 74837R104 | 4863 | 81600 | SH | CALL DEFINED | 15,16,24 | 81600 | 0 | 0 |
| QUICKSILVER RESOURCE | COM | 74837R104 | 6686 | 112200 | SH | PUT DEFINED | 15,16,24 | 112200 | 0 | 0 |
| QUIKSILVER INC | COM | 74838C106 | 35 | 4122 | SH | DEFINED | 7,11,33 | 0 | 0 | 4122 |
| QUIKSILVER INC | COM | 74838C106 | 2773 | 323163 | SH | DEFINED | 16,24,25 | 205547 | 0 | 117616 |
| QUIKSILVER INC | COM | 74838C106 | 5 | 600 | SH | DEFINED | 5-7,11,43,44 | 0 | 600 | 0 |
| QUIDEL CORP | COM | 74838J101 | 1094 | 56178 | SH | DEFINED | 16,24,25 | 56178 | 0 | 0 |
| QUICKSILVER GAS SVCS | COM UNITS | 74839G106 | 274 | 10949 | SH | DEFINED | 16,24,25 | 10749 | 0 | 200 |
| QWEST COMMUNICATIONS | COM | 749121109 | 95 | 13600 | SH | DEFINED | 12 | 0 | 0 | 13600 |
| QWEST COMMUNICATIONS | COM | 749121109 | 3691 | 526472 | SH | DEFINED | 7,11 | 389372 | 0 | 137100 |
| QWEST COMMUNICATIONS | COM | 749121109 | 249 | 35500 | SH | DEFINED | 7,11,13 | 35500 | 0 | 0 |
| QWEST COMMUNICATIONS | COM | 749121109 | 1316 | 187697 | SH | DEFINED | 16,24,25 | 168807 | 0 | 18890 |
| QWEST COMMUNICATIONS | COM | 749121109 | 324 | 46166 | SH | DEFINED | 32,40,41 | 46166 | 0 | 0 |
| QWEST COMMUNICATIONS | COM | 749121109 | 1901 | 271200 | SH | CALL DEFINED | 15,16,24 | 271200 | 0 | 0 |
| QWEST COMMUNICATIONS | COM | 749121109 | 736 | 105000 | SH | CALL DEFINED | 16,24,25 | 105000 | 0 | 0 |
| QWEST COMMUNICATIONS | COM | 749121109 | 483 | 68900 | SH | PUT DEFINED | 15,16,24 | 68900 | 0 | 0 |
| RAIT FINANCIAL TRUST | COM | 749227104 | 1235 | 143238 | SH | DEFINED | 16,24,25 | 125208 | 0 | 18030 |
| RCN CORP | COM NEW | 749361200 | 575 | 36897 | SH | DEFINED | 16,24,25 | 35815 | 0 | 1082 |
| R H DONNELLEY CORP | COM NEW | 74955W307 | 124 | 3407 | SH | DEFINED | 7,11 | 3407 | 0 | 0 |
| R H DONNELLEY CORP | COM NEW | 74955W307 | 28 | 768 | SH | DEFINED | 16,24,25 | 313 | 0 | 455 |
| R H DONNELLEY CORP | COM NEW | 74955W307 | 13647 | 374100 | SH | PUT DEFINED | 16,24,25 | 374100 | 0 | 0 |
| RF INDS LTD | COM PAR $0 | 749552105 | 1448 | 216175 | SH | DEFINED | 16,24,25 | 198875 | 0 | 17300 |
| RLI CORP | COM | 749607107 | 62 | 1100 | SH | DEFINED | 30 | 1100 | 0 | 0 |
| RLI CORP | COM | 749607107 | 208 | 3657 | SH | DEFINED | 16,24,25 | 3490 | 0 | 167 |
| RMK HIGH INCOME FD I | COM SHS | 74963B105 | 219 | 47526 | SH | DEFINED | 16,24,25 | 43778 | 0 | 3747 |
| RMR REAL ESTATE FD | SH BEN INT | 74963F106 | 1512 | 137093 | SH | DEFINED | 16,24,25 | 135835 | 0 | 1257 |
| RMR HOSPITALITY REAL | COM | 74963J108 | 49 | 3416 | SH | DEFINED | 16,24,25 | 2969 | 0 | 447 |
| RMR HOSPITALITY REAL | COM | 74963J108 | 100 | 6950 | SH | DEFINED | 16,19,24,26,27 | 6950 | 0 | 0 |
| RPM INTL INC | COM | 749685103 | 67 | 3300 | SH | DEFINED | 30 | 3300 | 0 | 0 |
| RPM INTL INC | COM | 749685103 | 25 | 1248 | SH | DEFINED | 7,11 | 1248 | 0 | 0 |
| RPM INTL INC | COM | 749685103 | 32 | 1575 | SH | DEFINED | 7,11,13 | 1575 | 0 | 0 |
| RPM INTL INC | COM | 749685103 | 3261 | 160631 | SH | DEFINED | 16,24,25 | 117490 | 0 | 43140 |
| RTI INTL METALS INC | COM | 74973W107 | 2494 | 36179 | SH | DEFINED | 15,16,24 | 36179 | 0 | 0 |
| RTI INTL METALS INC | COM | 74973W107 | 481 | 6971 | SH | DEFINED | 16,24,25 | 2971 | 0 | 4000 |
| RTI INTL METALS INC | COM | 74973W107 | 2916 | 42300 | SH | CALL DEFINED | 15,16,24 | 42300 | 0 | 0 |
| RTI INTL METALS INC | COM | 74973W107 | 11594 | 168200 | SH | PUT DEFINED | 15,16,24 | 168200 | 0 | 0 |
| RF MICRODEVICES INC | NOTE 1.00 | 749941AJ9 | 5964 | 6500000 | PRN | DEFINED | 16,24,25 | 6500000 | 0 | 0 |
| RF MICRODEVICES INC | COM | 749941100 | 1873 | 328065 | SH | DEFINED | 7,11 | 328065 | 0 | 0 |
| RF MICRODEVICES INC | COM | 749941100 | 540 | 94650 | SH | DEFINED | 7,11,13 | 91550 | 0 | 3100 |
| RF MICRODEVICES INC | COM | 749941100 | 253 | 44348 | SH | DEFINED | 15,16,24 | 44348 | 0 | 0 |
| RF MICRODEVICES INC | COM | 749941100 | 4694 | 822092 | SH | DEFINED | 16,24,25 | 713250 | 0 | 108842 |
| RF MICRODEVICES INC | COM | 749941100 | 1004 | 175800 | SH | CALL DEFINED | 15,16,24 | 175800 | 0 | 0 |
| RF MICRODEVICES INC | COM | 749941100 | 577 | 101200 | SH | PUT DEFINED | 15,16,24 | 101200 | 0 | 0 |
| RACKABLE SYS INC | COM | 750077109 | 81 | 8057 | SH | DEFINED | 16,24,25 | 7352 | 0 | 705 |
| RACKABLE SYS INC | COM | 750077109 | 690 | 69000 | SH | CALL DEFINED | 15,16,24 | 69000 | 0 | 0 |
| RACKABLE SYS INC | COM | 750077109 | 860 | 86000 | SH | PUT DEFINED | 15,16,24 | 86000 | 0 | 0 |
| RADIAN GROUP INC | COM | 750236101 | 63 | 5423 | SH | DEFINED | 7,11 | 5423 | 0 | 0 |
| RADIAN GROUP INC | COM | 750236101 | 300 | 25693 | SH | DEFINED | 16,24,25 | 21687 | 0 | 4006 |
| RADIAN GROUP INC | COM | 750236101 | 668 | 57200 | SH | CALL DEFINED | 16,24,25 | 57200 | 0 | 0 |
| RADIAN GROUP INC | COM | 750236101 | 668 | 57200 | SH | PUT DEFINED | 16,24,25 | 57200 | 0 | 0 |
| RADIOSHACK CORP | COM | 750438103 | 2587 | 153459 | SH | DEFINED | 7,11 | 153459 | 0 | 0 |
| RADIOSHACK CORP | COM | 750438103 | 2436 | 144506 | SH | DEFINED | 16,24,25 | 134056 | 0 | 10450 |
| RADIOSHACK CORP | COM | 750438103 | 331 | 19634 | SH | DEFINED | 32,40,41 | 19634 | 0 | 0 |
| RADIOSHACK CORP | COM | 750438103 | 1708 | 101300 | SH | CALL DEFINED | 15,16,24 | 101300 | 0 | 0 |
| RADIOSHACK CORP | COM | 750438103 | 7 | 400 | SH | DEFINED | 16,24,25 | 400 | 0 | 0 |
| RADIOSHACK CORP | COM | 750438103 | 2192 | 130000 | SH | PUT DEFINED | 15,16,24 | 130000 | 0 | 0 |
| RADISYS CORP | COM | 750459109 | 220 | 16400 | SH | DEFINED | 16,24,25 | 16400 | 0 | 0 |
| RAE SYS INC | COM | 75061P102 | 123 | 45731 | SH | DEFINED | 16,24,25 | 35858 | 0 | 9873 |
| RAMBUS INC DEL | COM | 750917106 | 3326 | 158824 | SH | DEFINED | 7,11 | 158824 | 0 | 0 |
| RAMBUS INC DEL | COM | 750917106 | 4673 | 223178 | SH | DEFINED | 16,24,25 | 223178 | 0 | 0 |
| RAMBUS INC DEL | COM | 750917106 | 504 | 24059 | SH | DEFINED | 16,24,25 | 22578 | 0 | 1481 |
| RAMBUS INC DEL | COM | 750917106 | 12939 | 617900 | SH | CALL DEFINED | 15,16,24 | 617900 | 0 | 0 |
| RAMBUS INC DEL | COM | 750917106 | 4036 | 192739 | SH | CALL DEFINED | 16,24,25 | 192739 | 0 | 0 |
| RAMBUS INC DEL | COM | 750917106 | 3282 | 156739 | SH | PUT DEFINED | 7,11 | 156739 | 0 | 0 |
| RAMBUS INC DEL | COM | 750917106 | 19390 | 926000 | SH | PUT DEFINED | 15,16,24 | 926000 | 0 | 0 |
| RALCORP HLDGS INC NE | COM | 751028101 | 117 | 1925 | SH | DEFINED | 30 | 1925 | 0 | 0 |
| RALCORP HLDGS INC NE | COM | 751028101 | 1019 | 16769 | SH | DEFINED | 7,11 | 16769 | 0 | 0 |
| RALCORP HLDGS INC NE | COM | 751028101 | 976 | 16047 | SH | DEFINED | 16,24,25 | 13574 | 0 | 2473 |
| RAMCO-GERSHENSON PPT | COM SH BEN | 751452202 | 11 | 518 | SH | DEFINED | 16,24,25 | 518 | 0 | 0 |
| RAMCO-GERSHENSON PPT | COM SH BEN | 751452202 | 204 | 9534 | SH | DEFINED | 32,40,41 | 9534 | 0 | 0 |
| RANDGOLD RES LTD | ADR | 752344309 | 4 | 100 | SH | DEFINED | 16,24 | 100 | 0 | 0 |
| RANDGOLD RES LTD | ADR | 752344309 | 1526 | 41102 | SH | DEFINED | 15,16,24 | 41102 | 0 | 0 |
| RANDGOLD RES LTD | ADR | 752344309 | 3760 | 101276 | SH | DEFINED | 16,24,25 | 59481 | 0 | 41795 |
| RANDGOLD RES LTD | ADR | 752344309 | 111 | 3000 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 3000 | 0 | 0 |
| RANDGOLD RES LTD | ADR | 752344309 | 2298 | 61900 | SH | CALL DEFINED | 15,16,24 | 61900 | 0 | 0 |
| RANDGOLD RES LTD | ADR | 752344309 | 3371 | 90800 | SH | PUT DEFINED | 15,16,24 | 90800 | 0 | 0 |
| RANGE RES CORP | COM | 75281A109 | 1239 | 24115 | SH | DEFINED | 7,11 | 24115 | 0 | 0 |
| RANGE RES CORP | COM | 75281A109 | 62 | 1205 | SH | DEFINED | 7,11,13 | 0 | 0 | 1205 |
| RANGE RES CORP | COM | 75281A109 | 2625 | 51109 | SH | DEFINED | 16,24,25 | 47755 | 0 | 3354 |
| RANGE RES CORP | COM | 75281A109 | 252 | 4904 | SH | DEFINED | 32,40,41 | 4904 | 0 | 0 |
| RANGE RES CORP | COM | 75281A109 | 5511 | 107300 | SH | CALL DEFINED | 15,16,24 | 107300 | 0 | 0 |
| RANGE RES CORP | COM | 75281A109 | 1469 | 28600 | SH | PUT DEFINED | 15,16,24 | 28600 | 0 | 0 |
| RAVEN INDS INC | COM | 754212108 | 567 | 14765 | SH | DEFINED | 16,24,25 | 14465 | 0 | 300 |
| RAYMOND JAMES FINANC | COM | 754730109 | 151 | 4633 | SH | DEFINED | 30 | 4633 | 0 | 0 |
| RAYMOND JAMES FINANC | COM | 754730109 | 457 | 14000 | SH | DEFINED | 3,9 | 0 | 0 | 14000 |
| RAYMOND JAMES FINANC | COM | 754730109 | 496 | 15184 | SH | DEFINED | 7,11 | 15184 | 0 | 0 |
| RAYMOND JAMES FINANC | COM | 754730109 | 13 | 400 | SH | DEFINED | 7,11,13 | 400 | 0 | 0 |

```
RAYMOND JAMES FINANC  COM           754730109    1872    57327 SH     DEFINED        16,24,25      52712       0    4615
RAYONIER INC          COM           754907103       3       57 SH     DEFINED        7,11          57          0       0
RAYONIER INC          COM           754907103     553    11695 SH     DEFINED        7,11,13       9395        0    2300
RAYONIER INC          COM           754907103    7766   164394 SH     DEFINED        16,24,25      148042      0   16352
RAYONIER INC          COM           754907103      94     2000 SH     DEFINED        16,19,24,26,27 2000       0       0
RAYTHEON CO           COM NEW       755111507    1031    16988 SH     DEFINED        12            0           0   16988
RAYTHEON CO           COM NEW       755111507    4544    74863 SH     DEFINED        3,9           0           0   74863
RAYTHEON CO           COM NEW       755111507   18932   311895 SH     DEFINED        7,11          82090       0  229855
RAYTHEON CO           COM NEW       755111507    1041    17157 SH     DEFINED        7,11,13       8357        0    8800
RAYTHEON CO           COM NEW       755111507     329     5420 SH     DEFINED        7,11,33       0           0    5420
RAYTHEON CO           COM NEW       755111507  135646  2234690 SH     DEFINED        16,24,25      1992088     0  242601
RAYTHEON CO           COM NEW       755111507     800    13174 SH     DEFINED        32,40,41      13174       0       0
RAYTHEON CO           COM NEW       755111507     243     4000 SH     DEFINED        5-7,11,43,44  0        4000       0
RAYTHEON CO           COM NEW       755111507   12437   204900 SH CALL DEFINED       15,16,24      204900      0       0
RAYTHEON CO           COM NEW       755111507    1724    28400 SH CALL DEFINED       16,24,25      28400       0       0
RAYTHEON CO           COM NEW       755111507    5712    94100 SH PUT  DEFINED       15,16,24      94100       0       0
RAYTHEON CO           COM NEW       755111507    1694    27900 SH PUT  DEFINED       16,24,25      27900       0       0
RBC BEARINGS INC      COM           75524B104     231     5315 SH     DEFINED        30            5315        0       0
RBC BEARINGS INC      COM           75524B104       4       81 SH     DEFINED        3,9           0           0      81
RBC BEARINGS INC      COM           75524B104     924    21262 SH     DEFINED        16,24,25      20954       0     308
REALNETWORKS INC      COM           75605L104      65    10654 SH     DEFINED        16,24,25      10048       0     606
REALTY INCOME CORP    COM           756109104     811    30000 SH     DEFINED        7,11          0           0   30000
REALTY INCOME CORP    COM           756109104    4665   172661 SH     DEFINED        16,24,25      142633      0   30028
REALTY INCOME CORP    COM           756109104   12374   457963 SH     DEFINED        32,40,41      457963      0       0
REAVES UTIL INCOME F  COM SH BEN    756158101   12252   486008 SH     DEFINED        16,24,25      474943      0   11064
REAVES UTIL INCOME F  COM SH BEN    756158101     179     7100 SH     DEFINED        16,19,24,26,27 7100      0       0
RECKSON OPER PARTNER DEB   4.00     756211AJ3      14    15000 PRN     DEFINED        16,24,25      15000       0       0
RED HAT INC           DBCV  0.50    75677AB88    6584  6503000 PRN     DEFINED        16,24,25      6503000     0       0
RED HAT INC           COM           756577102     447    21450 SH     DEFINED        7,11          21450       0       0
RED HAT INC           COM           756577102     403    19348 SH     DEFINED        16,24,25      17965       0    1383
RED HAT INC           COM           756577102     449    21550 SH     DEFINED        32,40,41      21550       0       0
RED HAT INC           COM           756577102       3      140 SH     DEFINED        5-7,11,43,44  0         140       0
RED HAT INC           COM           756577102   13348   640500 SH CALL DEFINED       15,16,24      640500      0       0
RED HAT INC           COM           756577102     286    13700 SH CALL DEFINED       16,24,25      13700       0       0
RED HAT INC           COM           756577102    6473   310600 SH PUT  DEFINED       15,16,24      310600      0       0
RED HAT INC           COM           756577102    1102    52900 SH PUT  DEFINED       16,24,25      52900       0       0
RED ROBIN GOURMET BU  COM           75689M101      58     1800 SH     DEFINED        30            1800        0       0
RED ROBIN GOURMET BU  COM           75689M101    1372    42484 SH     DEFINED        16,24,25      42484       0     400
REDDY ICE HLDGS INC   COM           75734R105    3701   146229 SH     DEFINED        16,24,25      145569      0     660
REDWOOD TR INC        COM           75075402     2624    76644 SH     DEFINED        16,24,25      53372       0   23272
REED ELSEVIER N V     SPONSORED     758204101     347     8740 SH     DEFINED        30            8740        0       0
REED ELSEVIER N V     SPONSORED     758204101     310     7829 SH     DEFINED        16,24,25      5310        0    2519
REED ELSEVIER P L C   SPONSORED     758205108      11      210 SH     DEFINED        16,24,25      198         0      12
REED ELSEVIER P L C   SPONSORED     758205108    7551   140084 SH     DEFINED        16,19,24,26,29 140084    0       0
REGAL BELOIT CORP     COM           758750103     151     3350 SH     DEFINED        30            3350        0       0
REGAL BELOIT CORP     COM           758750103       2       37 SH     DEFINED        3,9           0           0      37
REGAL BELOIT CORP     COM           758750103      32      705 SH     DEFINED        7,11,13       705         0       0
REGAL BELOIT CORP     COM           758750103    1266    28162 SH     DEFINED        16,24,25      23366       0    4796
REGAL ENTMT GROUP     CL A          758766109     673    37259 SH     DEFINED        7,11          37259       0       0
REGAL ENTMT GROUP     CL A          758766109     146     8079 SH     DEFINED        16,24,25      6892        0    1187
REGAL ENTMT GROUP     CL A          758766109      42     2300 SH     DEFINED        32,40,41      2300        0       0
REGENCY CTRS CORP     COM           758849103     213     3304 SH     DEFINED        7,11          3304        0       0
REGENCY CTRS CORP     COM           758849103    4108    63700 SH     DEFINED        14,31         63700       0       0
REGENCY CTRS CORP     COM           758849103     359     5565 SH     DEFINED        16,24,25      2565        0    3000
REGENCY CTRS CORP     COM           758849103   22353   346616 SH     DEFINED        32,40,41      346616      0       0
REGENCY ENERGY PARTN  COM UNITS     75885Y107     823    24663 SH     DEFINED        16,24,25      24563       0     100
REGENERATION TECH IN  COM           75886N100     209    24050 SH     DEFINED        16,24,25      21150       0    2900
REGENERX BIOPHARMACE  COM           75886X108      16    15600 SH     DEFINED        16,24,25      15600       0       0
REGIS CORP MINN       COM           758932107      57     2030 SH     DEFINED        30            2030        0       0
REGIS CORP MINN       COM           758932107     962    34415 SH     DEFINED        7,11,13       34240       0     175
REGIS CORP MINN       COM           758932107     460    16436 SH     DEFINED        16,24,25      14689       0    1747
REGIONAL BK HOLDRS T  DEPOSITORY    75902E100  286585  2177700 SH     DEFINED        16,24,25      2177496     0     204
REGIONS FINANCIAL CO  COM           7591EP100     705    29800 SH     DEFINED        30            29800       0       0
REGIONS FINANCIAL CO  COM           7591EP100    3316   140222 SH     DEFINED        7,11          126736      0   13486
REGIONS FINANCIAL CO  COM           7591EP100    2874   121533 SH     DEFINED        7,11,13       10335       0  111198
REGIONS FINANCIAL CO  COM           7591EP100    8904   376491 SH     DEFINED        16,24,25      307262      0   69229
REGIONS FINANCIAL CO  COM           7591EP100     468    19788 SH     DEFINED        32,40,41      19788       0       0
REINSURANCE GROUP AM  COM           75935L109     472     8991 SH     DEFINED        16,24,25      8991        0       0
RELIANCE STEEL & ALU  COM           759509102     370     6825 SH     DEFINED        12            0           0    6825
RELIANCE STEEL & ALU  COM           759509102    1690    31182 SH     DEFINED        7,11          9778        0   21404
RELIANCE STEEL & ALU  COM           759509102      30      550 SH     DEFINED        7,11,13       0           0     550
RELIANCE STEEL & ALU  COM           759509102     760    14029 SH     DEFINED        16,24,25      12264       0    1765
RELIANCE STEEL & ALU  COM           759509102      27      500 SH     DEFINED        32,40,41      500         0       0
RELIANCE STEEL & ALU  COM           759509102    1491    27500 SH CALL DEFINED       15,16,24      27500       0       0
RELIANCE STEEL & ALU  COM           759509102    1794    33100 SH PUT  DEFINED       15,16,24      33100       0       0
RELIANT ENERGY INC    COM           75952B105     429    16342 SH     DEFINED        7,11          16342       0       0
RELIANT ENERGY INC    COM           75952B105    4595   175102 SH     DEFINED        16,24,25      155840      0   19262
RELIANT ENERGY INC    COM           75952B105     237     9020 SH     DEFINED        32,40,41      9020        0       0
RELIANT ENERGY INC    COM           75952B105    8979   342200 SH CALL DEFINED       15,16,24      342200      0       0
RELIANT ENERGY INC    COM           75952B105    9425   359200 SH PUT  DEFINED       15,16,24      359200      0       0
RENOVIS INC           COM           79985106      21     7118 SH     DEFINED        16,24,25      7118        0       0
RENOVIS INC           COM           79985106      24     8000 SH CALL DEFINED       15,16,24      8000        0       0
RENT A CTR INC NEW    COM           76009N100    1459   100503 SH     DEFINED        16,24,25      99315       0    1188
RENTECH INC           COM           760112102     101    55850 SH     DEFINED        16,24,25      55450       0     400
REPUBLIC BANCORP KY   CL A          760281204       1       87 SH     DEFINED        16,24         87          0       0
REPUBLIC BANCORP KY   CL A          760281204     688    41649 SH     DEFINED        16,24,25      41019       0     630
REPUBLIC SVCS INC     COM           760759100    2478    79056 SH     DEFINED        7,11          79056       0       0
REPUBLIC SVCS INC     COM           760759100      25      810 SH     DEFINED        7,11,13       810         0       0
REPUBLIC SVCS INC     COM           760759100      66     2100 SH     DEFINED        7,11,33       0           0    2100
REPUBLIC SVCS INC     COM           760759100   63148  2014284 SH     DEFINED        16,24,25      1974658     0   39625
REPUBLIC SVCS INC     COM           760759100     191     6079 SH     DEFINED        32,40,41      6079        0       0
REPUBLIC SVCS INC     COM           760759100    2137    68152 SH CALL DEFINED       16,24,25      68152       0       0
REPUBLIC SVCS INC     COM           760759100    2137    68152 SH PUT  DEFINED       7,11          68152       0       0
REPUBLIC SVCS INC     COM           760759100      13      400 SH PUT  DEFINED       16,24,25      0           0     400
RESEARCH IN MOTION L  COM           760975102     564     4970 SH     DEFINED        30            4970        0       0
RESEARCH IN MOTION L  COM           760975102    3996    35240 SH     DEFINED        7,11          35040       0     200
RESEARCH IN MOTION L  COM           760975102   18603   164052 SH     DEFINED        15,16,24      164052      0       0
RESEARCH IN MOTION L  COM           760975102   43134   380367 SH     DEFINED        16,24,25      329461      0   50906
RESEARCH IN MOTION L  COM           760975102    8769    77331 SH     DEFINED        32,40,41      77331       0       0
RESEARCH IN MOTION L  COM           760975102    3820    33689 SH     DEFINED        4,6,7,11      33689       0       0
RESEARCH IN MOTION L  COM           760975102     329     2900 SH     DEFINED 2,6,7,10-11,18,20,21,28 2900    0       0
RESEARCH IN MOTION L  COM           760975102    6113    53909 SH CALL DEFINED       7,11          53909       0       0
RESEARCH IN MOTION L  COM           760975102  256828  2264800 SH CALL DEFINED       15,16,24      2264800     0       0
RESEARCH IN MOTION L  COM           760975102    2552    22500 SH CALL DEFINED       16,24,25      22500       0       0
RESEARCH IN MOTION L  COM           760975102  235418  2076000 SH PUT  DEFINED       15,16,24      2076000     0       0
RESEARCH IN MOTION L  COM           760975102   14471   127609 SH PUT  DEFINED       16,24,25      127609      0       0
RESMED INC            COM           761152107      49      930 SH     DEFINED        7,11          930         0       0
RESMED INC            COM           761152107     318     6055 SH     DEFINED        16,24,25      5405        0     650
RESOURCE CAP CORP     COM           76120W302     494    53066 SH     DEFINED        16,24,25      45448       0    7618
RESOURCES CONNECTION  COM           76122Q105    4636    24019 SH     DEFINED        16,24,25      23966       0      53
RESPIRONICS INC       COM           761230101      58      881 SH     DEFINED        7,11          881         0       0
RESPIRONICS INC       COM           761230101    1278    19520 SH     DEFINED        16,24,25      19520       0       0
RESPIRONICS INC       COM           761230101     832    12711 SH     DEFINED        32,40,41      12711       0       0
RETAIL HOLDRS TR      DEP RCPT      76127U101   22059   236308 SH     DEFINED        15,16,24      236308      0       0
```

```
RETAIL HOLDRS TR      DEP RCPT        76127U101  1799290  19274669 SH         DEFINED          16,24,25  19274669       0         0
RETAIL HOLDRS TR      DEP RCPT        76127U101    18418    197300 SH CALL     DEFINED          15,16,24    197300       0         0
RETAIL HOLDRS TR      DEP RCPT        76127U101    10269    110000 SH CALL     DEFINED          16,24,25    110000       0         0
RETAIL HOLDRS TR      DEP RCPT        76127U101    52593    563400 SH PUT       DEFINED          15,16,24    563400       0         0
RETAIL HOLDRS TR      DEP RCPT        76127U101    18623    199500 SH PUT       DEFINED          16,24,25    199500       0         0
RETAIL VENTURES INC   COM             76128Y102       88     17215 SH          DEFINED          16,24,25     17215       0         0
REUTERS GROUP PLC     SPONSORED       76132M102      594      7800 SH          DEFINED               7,11         0       0      7800
REUTERS GROUP PLC     SPONSORED       76132M102     1630     21422 SH          DEFINED          16,24,25     19915       0      1506
REVLON INC            CL A            76152S500     7840   6643909 SH          DEFINED          16,24,25   6641188       0      2721
REX STORES CORP       COM             76162A105      654     41498 SH          DEFINED          16,24,25     38084       0      3414
REYNOLDS AMERICAN IN  COM             761713106      376      5700 SH          DEFINED                 30      5700       0         0
REYNOLDS AMERICAN IN  COM             761713106    63294    959588 SH          DEFINED               7,11    959588       0         0
REYNOLDS AMERICAN IN  COM             761713106    13416    203403 SH          DEFINED          16,24,25    191138       0     12264
REYNOLDS AMERICAN IN  COM             761713106    15103    228970 SH          DEFINED          32,40,41    228970       0         0
REYNOLDS AMERICAN IN  COM             761713106    10943    165900 SH CALL     DEFINED          15,16,24    165900       0         0
REYNOLDS AMERICAN IN  COM             761713106     7143    108300 SH CALL     DEFINED          16,24,25    108300       0         0
REYNOLDS AMERICAN IN  COM             761713106      660     10000 SH PUT       DEFINED               7,11     10000       0         0
REYNOLDS AMERICAN IN  COM             761713106    19029    288500 SH PUT       DEFINED          15,16,24    288500       0         0
REYNOLDS AMERICAN IN  COM             761713106    11761    178300 SH PUT       DEFINED          16,24,25    178300       0         0
RIO TINTO PLC         SPONSORED       767204100        4        10 SH          DEFINED               7,11,13       10       0         0
RIO TINTO PLC         SPONSORED       767204100        6        15 SH          DEFINED               7,11,33        0       0        15
RIO TINTO PLC         SPONSORED       767204100    11995     28565 SH          DEFINED          16,24,25     23338       0      5226
RIO TINTO PLC         SPONSORED       767204100       61       145 SH          DEFINED        5-7,11,43,44         0     145         0
RIO TINTO PLC         SPONSORED       767204100    77338    184183 SH          DEFINED     16,19,24,26,29    184183       0         0
RIO TINTO PLC         SPONSORED       767204100    47743    113700 SH CALL     DEFINED          15,16,24    113700       0         0
RIO TINTO PLC         SPONSORED       767204100    43670    104000 SH PUT       DEFINED          15,16,24    104000       0         0
RIO VISTA ENERGY PAR  COM             767271109      744     43792 SH          DEFINED          16,24,25     18192       0     25600
RITCHIE BROS AUCTION  COM             767744105       33       400 SH          DEFINED               7,11,13      400       0         0
RITCHIE BROS AUCTION  COM             767744105      147      1781 SH          DEFINED          16,24,25      1598       0       183
RITCHIE BROS AUCTION  COM             767744105       98      1185 SH          DEFINED          32,40,41      1185       0         0
RITCHIE BROS AUCTION  COM             767744105       33       404 SH          DEFINED          4,6,7,11       404       0         0
RITE AID CORP         COM             767754104        2       800 SH          DEFINED               7,11,13      800       0         0
RITE AID CORP         COM             767754104     1276    457495 SH          DEFINED          16,24,25    408077       0     49418
RITE AID CORP         COM             767754104      980    351100 SH CALL     DEFINED          15,16,24    351100       0         0
RITE AID CORP         COM             767754104       18      6500 SH CALL     DEFINED          16,24,25      6500       0         0
RITE AID CORP         COM             767754104     1055    378100 SH PUT       DEFINED          15,16,24    378100       0         0
RIVERBED TECHNOLOGY   COM             768573107      144      5400 SH          DEFINED                 30      5400       0         0
RIVERBED TECHNOLOGY   COM             768573107        6       237 SH          DEFINED               7,11      237       0         0
RIVERBED TECHNOLOGY   COM             768573107     5054    189007 SH          DEFINED          15,16,24    189007       0         0
RIVERBED TECHNOLOGY   COM             768573107      862     32219 SH          DEFINED          16,24,25     27852       0      4367
RIVERBED TECHNOLOGY   COM             768573107     1572     58800 SH CALL     DEFINED          15,16,24     58800       0         0
RIVERBED TECHNOLOGY   COM             768573107     7190    268900 SH PUT       DEFINED          15,16,24    268900       0         0
RIVIERA HLDGS CORP    COM             769627100     6966    226154 SH          DEFINED          16,24,25    226054       0       104
RMR ASIA PAC REAL ES  COM             76969W108      276     16300 SH          DEFINED          16,24,25      1300       0     15000
ROBBINS & MYERS INC   COM             770196103       12       161 SH          DEFINED               7,11        0       0       161
ROBBINS & MYERS INC   COM             770196103      478      6318 SH          DEFINED          16,24,25      3785       0      2533
ROBBINS & MYERS INC   COM             770196103      293      3870 SH          DEFINED          32,40,41      3870       0         0
ROBERT HALF INTL INC  COM             770323103     1187     43906 SH          DEFINED               7,11     43906       0         0
ROBERT HALF INTL INC  COM             770323103      902     33367 SH          DEFINED               7,11,13    32467       0       900
ROBERT HALF INTL INC  COM             770323103     1695     62702 SH          DEFINED          16,24,25     47696       0     15006
ROBERT HALF INTL INC  COM             770323103      131      4848 SH          DEFINED          32,40,41      4848       0         0
ROCK-TENN CO          CL A            772739207      330     12979 SH          DEFINED          16,24,25     12979       0         0
ROCKWELL AUTOMATION   COM             773903109      410      5950 SH          DEFINED                 30      5950       0         0
ROCKWELL AUTOMATION   COM             773903109     1137     16491 SH          DEFINED               3,9        0       0     16491
ROCKWELL AUTOMATION   COM             773903109     4048     58697 SH          DEFINED               7,11     56497       0      2200
ROCKWELL AUTOMATION   COM             773903109      210      3040 SH          DEFINED               7,11,13     3040       0         0
ROCKWELL AUTOMATION   COM             773903109      278      4025 SH          DEFINED          15,16,24      4025       0         0
ROCKWELL AUTOMATION   COM             773903109     4189     60746 SH          DEFINED          16,24,25     50187       0     10559
ROCKWELL AUTOMATION   COM             773903109     1307     18953 SH          DEFINED          32,40,41     18953       0         0
ROCKWELL AUTOMATION   COM             773903109     1579     22900 SH CALL     DEFINED          15,16,24     22900       0         0
ROCKWELL AUTOMATION   COM             773903109      338      4900 SH CALL     DEFINED          16,24,25      4900       0         0
ROCKWELL AUTOMATION   COM             773903109     2386     34600 SH PUT       DEFINED          15,16,24     34600       0         0
ROCKWELL AUTOMATION   COM             773903109      338      4900 SH PUT       DEFINED          16,24,25      4900       0         0
ROCKWELL COLLINS INC  COM             774341101     1404     19511 SH          DEFINED               7,11     16511       0      3000
ROCKWELL COLLINS INC  COM             774341101     1609     22359 SH          DEFINED               7,11,13    22359       0         0
ROCKWELL COLLINS INC  COM             774341101     4024     55915 SH          DEFINED          16,24,25     49638       0      6277
ROCKWELL COLLINS INC  COM             774341101      355      4933 SH          DEFINED          32,40,41      4933       0         0
ROFIN SINAR TECHNOLO  COM             775043102       40       825 SH          DEFINED                 30       825       0         0
ROFIN SINAR TECHNOLO  COM             775043102     3805     79098 SH          DEFINED          16,24,25     72328       0      6770
ROGERS COMMUNICATION  CL B            775109200      109      2400 SH          DEFINED               7,11,13     2400       0         0
ROGERS COMMUNICATION  CL B            775109200      326      7203 SH          DEFINED          16,24,25      5449       0      1754
ROGERS COMMUNICATION  CL B            775109200     2617     57828 SH          DEFINED          32,40,41     57828       0         0
ROGERS COMMUNICATION  CL B            775109200     1540     34039 SH          DEFINED          4,6,7,11     34039       0         0
ROGERS COMMUNICATION  CL B            775109200     1312     29000 SH CALL     DEFINED          16,24,25     29000       0         0
ROHM & HAAS CO        COM             775371107     2208     41612 SH          DEFINED               7,11     20283       0     21329
ROHM & HAAS CO        COM             775371107      696     13112 SH          DEFINED               7,11,13    10362       0      2750
ROHM & HAAS CO        COM             775371107    17414    328135 SH          DEFINED          16,24,25    313654       0     14480
ROHM & HAAS CO        COM             775371107      213      4020 SH          DEFINED          32,40,41      4020       0         0
ROLLINS INC           COM             775711104       65      3375 SH          DEFINED               7,11,13     3375       0         0
ROLLINS INC           COM             775711104      234     12165 SH          DEFINED          16,24,25     10013       0      2152
ROMA FINANCIAL CORP   COM             77581P109      159     10124 SH          DEFINED          16,24,25     10124       0         0
ROPER INDS INC NEW    NOTE    1.48    776696A44    28900  3687400 PRN         DEFINED          16,24,25  3687400       0         0
ROPER INDS INC NEW    COM             776696106     1833     29305 SH          DEFINED               7,11     29305       0         0
ROPER INDS INC NEW    COM             776696106      811     12965 SH          DEFINED               7,11,13    12890       0        75
ROPER INDS INC NEW    COM             776696106       56       900 SH          DEFINED               7,11,33        0       0       900
ROPER INDS INC NEW    COM             776696106    45753    731578 SH          DEFINED          16,24,25    618789       0    112789
ROPER INDS INC NEW    COM             776696106     1792     28650 SH          DEFINED          32,40,41     28650       0         0
ROSETTA RESOURCES IN  COM             777779307        7       345 SH          DEFINED               7,11        0       0       345
ROSETTA RESOURCES IN  COM             777779307     1575     79403 SH          DEFINED          16,24,25     78854       0       549
ROSS STORES INC       COM             778296103      289     11300 SH          DEFINED               3,9        0       0     11300
ROSS STORES INC       COM             778296103      215      8411 SH          DEFINED               7,11      8411       0         0
ROSS STORES INC       COM             778296103       29      1124 SH          DEFINED              16,24      1124       0         0
ROSS STORES INC       COM             778296103     4928    192716 SH          DEFINED          16,24,25    190169       0      2546
ROSS STORES INC       COM             778296103      112      4398 SH          DEFINED          32,40,41      4398       0         0
ROSTELECOM OPEN JT S  SPONSORED       778529107      236      3392 SH          DEFINED          16,24,25      3082       0       310
ROSTELECOM OPEN JT S  SPONSORED       778529107      113      1625 SH          DEFINED          32,40,41      1625       0         0
ROSTELECOM OPEN JT S  SPONSORED       778529107     1240     17832 SH          DEFINED     16,19,24,26,27     17832       0         0
ROWAN COS INC         COM             779382100     8531    216200 SH          DEFINED                 42    216200       0         0
ROWAN COS INC         COM             779382100      454     11495 SH          DEFINED               7,11     11495       0         0
ROWAN COS INC         COM             779382100       22       545 SH          DEFINED               7,11,13      545       0         0
ROWAN COS INC         COM             779382100     3478     88132 SH          DEFINED          15,16,24     88132       0         0
ROWAN COS INC         COM             779382100     2611     66178 SH          DEFINED          16,24,25     52832       0     13346
ROWAN COS INC         COM             779382100      157      3968 SH          DEFINED          32,40,41      3968       0         0
ROWAN COS INC         COM             779382100     8030    203500 SH CALL     DEFINED          15,16,24    203500       0         0
ROWAN COS INC         COM             779382100     3090     78300 SH CALL     DEFINED          16,24,25     78300       0         0
ROWAN COS INC         COM             779382100     9313    236000 SH PUT       DEFINED          15,16,24    236000       0         0
ROWAN COS INC         COM             779382100     9265    234800 SH PUT       DEFINED          16,24,25    234800       0         0
ROYAL BK CDA MONTREA  COM             780087102      980     19200 SH          DEFINED                 30        0       0     19200
ROYAL BK CDA MONTREA  COM             780087102       33       650 SH          DEFINED               7,11,13      650       0         0
ROYAL BK CDA MONTREA  COM             780087102     5093     99782 SH          DEFINED          16,24,25     86525       0     13257
ROYAL BK CDA MONTREA  COM             780087102    10550    206701 SH          DEFINED          32,40,41    206701       0         0
ROYAL BK CDA MONTREA  COM             780087102    14454    283194 SH          DEFINED          4,6,7,11    283194       0         0
ROYAL BK CDA MONTREA  COM             780087102     5184    101560 SH          DEFINED        5-7,11,43,44        0  101560         0
ROYAL BK SCOTLAND GR  SP ADR PRE      780097713      265     11475 SH          DEFINED          16,24,25     11225       0       250
```

```
ROYAL BK SCOTLAND GR ADR REP   780097721    224    25003 SH   DEFINED         16,24,25     23407        0      1596
ROYAL BK SCOTLAND GR ADR PREF S 780097747   694    36361 SH   DEFINED         16,24,25     26961        0      9400
ROYAL BK SCOTLAND GR ADR PREF S 780097754  1185    56931 SH   DEFINED         16,24,25     18273        0     38658
ROYAL BK SCOTLAND GR ADR PFD SE 780097762   395    20507 SH   DEFINED         16,24,25     16572        0      3935
ROYAL BK SCOTLAND GR ADR PFD S 780097770   1458    74290 SH   DEFINED         16,24,25     66997        0      7293
ROYAL BK SCOTLAND GR ADR L R   780097788   1968   109925 SH   DEFINED         16,24,25     85633        0     24292
ROYAL BK SCOTLAND GR ADR PRE   780097796    376    19000 SH   DEFINED             7,11        0        0     19000
ROYAL BK SCOTLAND GR SP ADR PRE 780097804  2060   104190 SH   DEFINED         16,24,25     88332        0     15857
ROYAL BK SCOTLAND GR SPON ADR 0 780097879  1003    42695 SH   DEFINED         16,24,25     31795        0     10900
ROYAL DUTCH SHELL PL SPON ADR B 780259107   189     2275 SH   DEFINED             7,11        0        0      2275
ROYAL DUTCH SHELL PL SPON ADR B 780259107   269     3239 SH   DEFINED             7,11,13   3239        0         0
ROYAL DUTCH SHELL PL SPON ADR B 780259107    11      129 SH   DEFINED             7,11,33       0        0       129
ROYAL DUTCH SHELL PL SPON ADR B 780259107 12323   148472 SH   DEFINED         16,24,25    113997        0     34474
ROYAL DUTCH SHELL PL SPON ADR B 780259107 75720   912285 SH   DEFINED 16,19,24,26,29  17426,291        0         0
ROYAL DUTCH SHELL PL SPON ADR B 780259107 14849   178900 SH   CALL DEFINED       15,16,24   178900        0         0
ROYAL DUTCH SHELL PL SPON ADR B 780259107  3835    46200 SH   PUT  DEFINED       15,16,24    46200        0         0
ROYAL DUTCH SHELL PL SPONS ADR  780259206   244     2900 SH   DEFINED               12        0        0      2900
ROYAL DUTCH SHELL PL SPONS ADR  780259206   387     4600 SH   DEFINED               30     4600        0         0
ROYAL DUTCH SHELL PL SPONS ADR  780259206 23676   281186 SH   DEFINED             7,11        0     3500    277686
ROYAL DUTCH SHELL PL SPONS ADR  780259206  3005    35686 SH   DEFINED          7,11,13    32636        0      3050
ROYAL DUTCH SHELL PL SPONS ADR  780259206   204     2420 SH   DEFINED          7,11,33        0        0      2420
ROYAL DUTCH SHELL PL SPONS ADR  780259206 39981   474836 SH   DEFINED         16,24,25    330257        0    144579
ROYAL DUTCH SHELL PL SPONS ADR  780259206 18255   216800 SH   DEFINED         32,40,41    216800        0         0
ROYAL DUTCH SHELL PL SPONS ADR  780259206    15      175 SH   DEFINED        5-7,11,43,44       0      175         0
ROYAL DUTCH SHELL PL SPONS ADR  780259206 10289   122200 SH   CALL DEFINED       15,16,24   122200        0         0
ROYAL DUTCH SHELL PL SPONS ADR  780259206  8218    97600 SH   PUT  DEFINED       15,16,24    97600        0         0
ROYAL GOLD INC         COM      780287108    70     2300 SH   DEFINED               30     2300        0         0
ROYAL GOLD INC         COM      780287108   957    31366 SH   DEFINED         15,16,24     31366        0         0
ROYAL GOLD INC         COM      780287108  1857    60830 SH   DEFINED         16,24,25     59430        0      1400
ROYAL GOLD INC         COM      780287108  2558    83800 SH   CALL DEFINED     15,16,24     83800        0         0
ROYAL GOLD INC         COM      780287108   153     5000 SH   CALL DEFINED     16,24,25      5000        0         0
ROYAL GOLD INC         COM      780287108  2414    79100 SH   PUT  DEFINED     15,16,24     79100        0         0
ROYAL GOLD INC         COM      780287108   153     5000 SH   PUT  DEFINED     16,24,25      5000        0         0
ROYAL KPN NV       SPONSORED    780641205   725    39950 SH   DEFINED             7,11        0        0     39950
ROYAL KPN NV       SPONSORED    780641205   532    29286 SH   DEFINED         16,24,25     27647        0      1639
ROYAL KPN NV       SPONSORED    780641205   906    49925 SH   DEFINED 16,19,24,26,27      49925        0         0
ROYCE FOCUS TR         COM      780800N108   511    57002 SH   DEFINED         16,24,25     45592        0     11410
ROYCE VALUE TR INC     COM      780910105   705    37950 SH   DEFINED          7,11,13     36050        0      1900
ROYCE VALUE TR INC     COM      780910105  5457   293707 SH   DEFINED         16,24,25    204215        0     89492
ROYCE MICRO-CAP TR I COM        780915104   239    20025 SH   DEFINED          7,11,13     19025        0      1000
ROYCE MICRO-CAP TR I COM        780915104  2097   175669 SH   DEFINED         16,24,25    111051        0     64618
RUBY TUESDAY INC       COM      781182100   164    16828 SH   DEFINED             7,11        0        0     16828
RUBY TUESDAY INC       COM      781182100   188    19250 SH   DEFINED         16,24,25     17400        0      1850
RUSH ENTERPRISES INC CL A       781846209   233    12843 SH   DEFINED         16,24,25     11825        0      1018
RURAL CELLULAR CORP  CL A       781904107  7495   170000 SH   DEFINED             7,11    170000        0         0
RURAL CELLULAR CORP  CL A       781904107  1080    24500 SH   DEFINED          31,45      24500        0         0
RURAL CELLULAR CORP  CL A       781904107     6      139 SH   DEFINED         16,24,25       139        0         0
RUTHS CHRIS STEAK HS COM        783332109   105    11705 SH   DEFINED         16,24,25     10105        0      1600
RYANAIR HLDGS PLC    SPONSORED  783513104   205     5199 SH   DEFINED             7,11      5199        0         0
RYANAIR HLDGS PLC    SPONSORED  783513104    60     1512 SH   DEFINED             16,24     1512        0         0
RYANAIR HLDGS PLC    SPONSORED  783513104  1257    31875 SH   DEFINED         16,24,25     28381        0      3494
RYANAIR HLDGS PLC    SPONSORED  783513104  7837   198700 SH   DEFINED         32,40,41    198700        0         0
RYANAIR HLDGS PLC    SPONSORED  783513104    32      800 SH   DEFINED        5-7,11,43,44      0      800         0
RYDER SYS INC          COM      783549108    99     2100 SH   DEFINED               12        0        0      2100
RYDER SYS INC          COM      783549108   240     5100 SH   DEFINED              3,9        0        0      5100
RYDER SYS INC          COM      783549108   927    19719 SH   DEFINED             7,11      4170        0     15549
RYDER SYS INC          COM      783549108   138     2935 SH   DEFINED          7,11,13        0        0      2935
RYDER SYS INC          COM      783549108     4       75 SH   DEFINED          7,11,33        0        0        75
RYDER SYS INC          COM      783549108  2384    50705 SH   DEFINED         16,24,25     40194        0     10510
RYDER SYS INC          COM      783549108     3       57 SH   DEFINED         32,40,41        57        0         0
RYDEX ETF TRUST      S&P 500 EQ 78355W106   145     3080 SH   DEFINED          7,11,33        0        0      3080
RYDEX ETF TRUST      S&P 500 EQ 78355W106 32898   697294 SH   DEFINED         16,24,25    540742        0    156552
RYDEX ETF TRUST      TOP 50 ETF 78355W205    33      300 SH   DEFINED          7,11,33        0        0       300
RYDEX ETF TRUST      TOP 50 ETF 78355W205 25416   229945 SH   DEFINED         16,24,25    212143        0     17802
RYDEX ETF TRUST      S&P500 PUR 78355W304   493    15637 SH   DEFINED         16,24,25     15151        0       486
RYDEX ETF TRUST      S&P500 PUR 78355W403   968    25496 SH   DEFINED         16,24,25     22835        0      2660
RYDEX ETF TRUST      S&PMC400 P 78355W601   576    10112 SH   DEFINED         16,24,25     10112        0         0
RYDEX ETF TRUST      INV RUS200 78355W692   422     5487 SH   DEFINED         16,24,25      5183        0       304
RYDEX ETF TRUST      INV S&P500 78355W767   724     9313 SH   DEFINED         16,24,25      8432        0       881
RYDEX ETF TRUST      S&PSC600 P 78355W809   543    13244 SH   DEFINED         16,24,25     13244        0         0
RYDEX ETF TRUST      INDLS ETF  78355W832   629    11177 SH   DEFINED         16,24,25     10562        0       615
RYDEX ETF TRUST      CONSUMR DI 78355W882  3888    99679 SH   DEFINED         16,24,25     95191        0      4488
RYLAND GROUP INC       COM      783764103 35319  1282000 SH   DEFINED             16,24   1282000        0         0
RYLAND GROUP INC       COM      783764103  4023   146037 SH   DEFINED         16,24,25    108832        0     37205
RYLAND GROUP INC       COM      783764103 11130   404000 SH   CALL DEFINED     15,16,24    404000        0         0
RYLAND GROUP INC       COM      783764103   116     4200 SH   CALL DEFINED     16,24,25      4200        0         0
RYLAND GROUP INC       COM      783764103 10711   388800 SH   PUT  DEFINED     15,16,24    388800        0         0
RYLAND GROUP INC       COM      783764103   116     4200 SH   PUT  DEFINED     16,24,25      4200        0         0
S&P 500 COVERED CALL COM        78381P109   186    12092 SH   DEFINED         16,24,25     12092        0         0
S & P 500 GEARED FD  COM        78381R105   654    37998 SH   DEFINED         16,24,25     33916        0      4081
SBA COMMUNICATIONS C NOTE  0.37 78388JA75   5169  4600000 PRN  DEFINED         16,24,25   4600000        0         0
SBA COMMUNICATIONS C COM        78388J106 58188  1719493 SH   DEFINED             7,11   1719493        0         0
SBA COMMUNICATIONS C COM        78388J106  3921   115858 SH   DEFINED         16,24,25    115629        0       229
SBA COMMUNICATIONS C COM        78388J106 185748  5489000 SH   CALL DEFINED       7,11   5489000        0         0
SAIC INC               COM      78390X101  2877   142992 SH   DEFINED         16,24,25    136255        0      6737
SAIC INC               COM      78390X101  3205   159300 SH   CALL DEFINED     15,16,24   159300        0         0
SAIC INC               COM      78390X101   577    28700 SH   PUT  DEFINED     16,24,25     28700        0         0
SCO GROUP INC          COM      78403A106     1    14744 SH   DEFINED         16,24,25     14694        0        50
SEI INVESTMENTS CO     COM      784117103   279     8670 SH   DEFINED             7,11      8670        0         0
SEI INVESTMENTS CO     COM      784117103  1627    50562 SH   DEFINED             7,11     50562        0         0
SEI INVESTMENTS CO     COM      784117103    42     1300 SH   DEFINED          7,11,33        0        0      1300
SEI INVESTMENTS CO     COM      784117103  8648   268823 SH   DEFINED         16,24,25    196535        0     72288
SEI INVESTMENTS CO     COM      784117103   124     3860 SH   DEFINED         32,40,41      3860        0         0
SEI INVESTMENTS CO     COM      784117103   206     6400 SH   CALL DEFINED     15,16,24      6400        0         0
SEI INVESTMENTS CO     COM      784117103   225     7000 SH   PUT  DEFINED     15,16,24      7000        0         0
SESI L L C             NOTE  1.50 78412FAH7 2519  2500000 PRN  DEFINED         16,24,25   2500000        0         0
SI INTL INC            COM      78427V102   223     8109 SH   DEFINED         16,24,25      4708        0      3401
SJW CORP               COM      784305104   244     7029 SH   DEFINED             7,11      7029        0         0
SJW CORP               COM      784305104   901    25986 SH   DEFINED         16,24,25     23581        0      2405
SK TELECOM LTD       SPONSORED  78440P108  1235    41376 SH   DEFINED              3,9        0        0     41376
SK TELECOM LTD       SPONSORED  78440P108   250     8385 SH   DEFINED             7,11        0        0      8385
SK TELECOM LTD       SPONSORED  78440P108     7      250 SH   DEFINED          7,11,33        0        0       250
SK TELECOM LTD       SPONSORED  78440P108  2929    98141 SH   DEFINED         16,24,25     77198        0     20943
SL GREEN RLTY CORP     COM      78440X101     2       20 SH   DEFINED          7,11,13       20        0         0
SL GREEN RLTY CORP     COM      78440X101   831     8886 SH   DEFINED         16,24,25      8111        0       775
SL GREEN RLTY CORP     COM      78440X101 38170   408410 SH   DEFINED         32,40,41    408410        0         0
SLM CORP               COM      78442P106 172255  8552894 SH   DEFINED             7,11   8541894        0     11000
SLM CORP               COM      78442P106   705    35000 SH   DEFINED            31,45    35000        0         0
SLM CORP               COM      78442P106    39     1945 SH   DEFINED          7,11,13     1945        0         0
SLM CORP               COM      78442P106    10      485 SH   DEFINED          7,11,33        0        0       485
SLM CORP               COM      78442P106  8123   403304 SH   DEFINED         15,16,24    403304        0         0
SLM CORP               COM      78442P106 236769 11756137 SH   DEFINED         16,24,25  11694061        0     62075
SLM CORP               COM      78442P106  4497   222029 SH   DEFINED         32,40,41    222029        0         0
SLM CORP               COM      78442P106 13655   677988 SH   CALL DEFINED       7,11    677988        0         0
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SLM CORP | COM | 78442P106 | 30552 | 1517000 | SH | CALL | DEFINED | 15,16,24,25 | 1517000 | 0 | 0 |
| SLM CORP | COM | 78442P106 | 6888 | 342000 | SH | CALL | DEFINED | 16,24,25 | 342000 | 0 | 0 |
| SLM CORP | COM | 78442P106 | 18233 | 905300 | SH | PUT | DEFINED | 15,16,24 | 905300 | 0 | 0 |
| SLM CORP | COM | 78442P106 | 18428 | 914988 | SH | PUT | DEFINED | 16,24,25 | 914988 | 0 | 0 |
| SPDR TR | UNIT SER 1 | 78462F103 | 2822 | 19300 | SH | | DEFINED | 12 | 0 | 19300 |
| SPDR TR | UNIT SER 1 | 78462F103 | 555709 | 3800760 | SH | | DEFINED | 7,11 | 3782462 | 18298 |
| SPDR TR | UNIT SER 1 | 78462F103 | 689 | 4710 | SH | | DEFINED | 7,11,13 | 350 | 4360 |
| SPDR TR | UNIT SER 1 | 78462F103 | 841 | 5749 | SH | | DEFINED | 7,11,13 | 0 | 5749 |
| SPDR TR | UNIT SER 1 | 78462F103 | 1886172 | 12900431 | SH | | DEFINED | 15,16,24 | 12900431 | 0 |
| SPDR TR | UNIT SER 1 | 78462F103 | 813588 | 5564519 | SH | | DEFINED | 16,24,25 | 5339134 | 225384 |
| SPDR TR | UNIT SER 1 | 78462F103 | 3524 | 24100 | SH | | DEFINED | 16,19,24,26,27 | 24100 | 0 |
| SPDR TR | UNIT SER 1 | 78462F103 | 57022 | 390000 | SH | CALL | DEFINED | 7,11 | 390000 | 0 |
| SPDR TR | UNIT SER 1 | 78462F103 | 2144579 | 14667800 | SH | CALL | DEFINED | 15,16,24 | 14667800 | 0 |
| SPDR TR | UNIT SER 1 | 78462F103 | 687977 | 4705400 | SH | CALL | DEFINED | 16,24,25 | 4705400 | 0 |
| SPDR TR | UNIT SER 1 | 78462F103 | 8773 | 60000 | SH | PUT | DEFINED | 31,45 | 60000 | 0 |
| SPDR TR | UNIT SER 1 | 78462F103 | 6466357 | 44226500 | SH | PUT | DEFINED | 15,16,24 | 44226500 | 0 |
| SPDR TR | UNIT SER 1 | 78462F103 | 437840 | 2994600 | SH | PUT | DEFINED | 16,24,25 | 2994600 | 0 |
| SPSS INC | COM | 78462K102 | 199 | 5530 | SH | | DEFINED | 26 | 5530 | 0 |
| SPSS INC | COM | 78462K102 | 319 | 8891 | SH | | DEFINED | 16,24,25 | 8644 | 247 |
| S1 CORPORATION | COM | 78463B101 | 106 | 14509 | SH | | DEFINED | 16,24,25 | 12591 | 1918 |
| SPDR INDEX SHS FDS | DJ STOXX 5 | 78463X103 | 916 | 17310 | SH | | DEFINED | 16,24,25 | 15620 | 1690 |
| SPDR INDEX SHS FDS | DJ EURSTX5 | 78463X202 | 4306 | 68713 | SH | | DEFINED | 16,24,25 | 64135 | 4578 |
| SPDR INDEX SHS FDS | ASIA PACIF | 78463X301 | 990 | 11342 | SH | | DEFINED | 16,24,25 | 10662 | 680 |
| SPDR INDEX SHS FDS | S&P CHINA | 78463X400 | 2243 | 24962 | SH | | DEFINED | 16,24,25 | 23992 | 970 |
| SPDR INDEX SHS FDS | EMERG MKTS | 78463X509 | 2073 | 27027 | SH | | DEFINED | 16,24,25 | 25712 | 1315 |
| SPDR INDEX SHS FDS | EUROPE ETF | 78463X608 | 4623 | 65218 | SH | | DEFINED | 16,24,25 | 51378 | 13840 |
| SPDR INDEX SHS FDS | LATIN AMER | 78463X707 | 1937 | 23937 | SH | | DEFINED | 16,24,25 | 23748 | 189 |
| SPDR INDEX SHS FDS | S&P BRIC 4 | 78463X798 | 51141 | 1595664 | SH | | DEFINED | 16,24,25 | 1369532 | 226132 |
| SPDR INDEX SHS FDS | MIDEAST AF | 78463X806 | 6973 | 98730 | SH | | DEFINED | 16,24,25 | 94877 | 3853 |
| SPDR INDEX SHS FDS | RUSS NOM S | 78463X822 | 1397 | 31635 | SH | | DEFINED | 16,24,25 | 27441 | 4194 |
| SPDR INDEX SHS FDS | MSCI ACWI | 78463X848 | 9621 | 233179 | SH | | DEFINED | 16,24,25 | 225903 | 7276 |
| SPDR INDEX SHS FDS | MACQU GLBI | 78463X855 | 2 | 39 | SH | | DEFINED | 16,24 | 39 | 0 |
| SPDR INDEX SHS FDS | MACQU GLBI | 78463X855 | 769 | 12697 | SH | | DEFINED | 16,24,25 | 11325 | 1372 |
| SPDR INDEX SHS FDS | DJWS INTL | 78463X863 | 118 | 2065 | SH | | DEFINED | 7,11,33 | 0 | 2065 |
| SPDR INDEX SHS FDS | DJWS INTL | 78463X863 | 18493 | 324718 | SH | | DEFINED | 16,24,25 | 299809 | 24908 |
| SPDR INDEX SHS FDS | S&P INTL S | 78463X871 | 6160 | 178857 | SH | | DEFINED | 16,24,25 | 177086 | 1771 |
| SPDR INDEX SHS FDS | S&P WRLD E | 78463X889 | 991 | 30188 | SH | | DEFINED | 16,24,25 | 30043 | 145 |
| SPX CORP | COM | 784635104 | 5299 | 51522 | SH | | DEFINED | 7,11 | 51522 | 0 |
| SPX CORP | COM | 784635104 | 6080 | 59120 | SH | | DEFINED | 15,16,24 | 59120 | 0 |
| SPX CORP | COM | 784635104 | 7144 | 69460 | SH | | DEFINED | 16,24,25 | 60821 | 8639 |
| SPX CORP | COM | 784635104 | 192 | 1865 | SH | | DEFINED | 32,40,41 | 1865 | 0 |
| SPX CORP | COM | 784635104 | 7837 | 76200 | SH | CALL | DEFINED | 15,16,24 | 76200 | 0 |
| SPX CORP | COM | 784635104 | 4837 | 47027 | SH | CALL | DEFINED | 16,24,25 | 47027 | 0 |
| SPX CORP | COM | 784635104 | 4837 | 47027 | SH | PUT | DEFINED | 7,11 | 47027 | 0 |
| SPX CORP | COM | 784635104 | 11817 | 114900 | SH | PUT | DEFINED | 15,16,24 | 114900 | 0 |
| SPDR SERIES TRUST | MORGAN STN | 78464A102 | 1525 | 24613 | SH | | DEFINED | 16,24,25 | 23009 | 1604 |
| SPDR SERIES TRUST | DJWS SCAP | 78464A201 | 2299 | 23394 | SH | | DEFINED | 16,24,25 | 20416 | 2978 |
| SPDR SERIES TRUST | DJWS SMCAP | 78464A300 | 2030 | 30720 | SH | | DEFINED | 16,24,25 | 20790 | 9930 |
| SPDR SERIES TRUST | DJWS LGCAP | 78464A409 | 3811 | 64908 | SH | | DEFINED | 16,24,25 | 49908 | 15000 |
| SPDR SERIES TRUST | LEHMAN YLD | 78464A417 | 1031 | 21545 | SH | | DEFINED | 16,24,25 | 20924 | 621 |
| SPDR SERIES TRUST | SHRT TERM | 78464A425 | 2039 | 89461 | SH | | DEFINED | 16,24,25 | 89461 | 0 |
| SPDR SERIES TRUST | LEH MUN BD | 78464A458 | 5836 | 262196 | SH | | DEFINED | 16,24,25 | 250934 | 11262 |
| SPDR SERIES TRUST | DJWS LGCAP | 78464A508 | 2144 | 26049 | SH | | DEFINED | 16,24,25 | 23446 | 2602 |
| SPDR SERIES TRUST | LEHMN INTL | 78464A516 | 1 | 10 | SH | | DEFINED | 16,24 | 10 | 0 |
| SPDR SERIES TRUST | LEHMN INTL | 78464A516 | 8481 | 157637 | SH | | DEFINED | 16,24,25 | 150259 | 7378 |
| SPDR SERIES TRUST | DJWS REIT | 78464A607 | 61 | 875 | SH | | DEFINED | 7,11,33 | 0 | 875 |
| SPDR SERIES TRUST | DJWS REIT | 78464A607 | 4717 | 68060 | SH | | DEFINED | 16,24,25 | 61902 | 6157 |
| SPDR SERIES TRUST | LEH AGGR B | 78464A649 | 2 | 40 | SH | | DEFINED | 16,24 | 40 | 0 |
| SPDR SERIES TRUST | LEH AGGR B | 78464A649 | 1049 | 19520 | SH | | DEFINED | 7,11,33 | 0 | 19520 |
| SPDR SERIES TRUST | LEH AGGR B | 78464A649 | 1056 | 19656 | SH | | DEFINED | 16,24,25 | 19572 | 84 |
| SPDR SERIES TRUST | BARCL CAP | 78464A656 | 876 | 17206 | SH | | DEFINED | 16,24,25 | 16997 | 209 |
| SPDR SERIES TRUST | LEH LGTM T | 78464A664 | 7057 | 131547 | SH | | DEFINED | 16,24,25 | 130810 | 737 |
| SPDR SERIES TRUST | SPDR SR TR | 78464A680 | 782 | 17070 | SH | | DEFINED | 7,11,33 | 0 | 17070 |
| SPDR SERIES TRUST | SPDR SR TR | 78464A680 | 94898 | 2072470 | SH | | DEFINED | 16,24,25 | 2003761 | 68709 |
| SPDR SERIES TRUST | KBW REGL B | 78464A698 | 715 | 19272 | SH | | DEFINED | 7,11,33 | 0 | 19272 |
| SPDR SERIES TRUST | KBW REGL B | 78464A698 | 9228 | 248878 | SH | | DEFINED | 16,24,25 | 244906 | 3972 |
| SPDR SERIES TRUST | DJ GLB TIT | 78464A706 | 1155 | 14645 | SH | | DEFINED | 16,24,25 | 12247 | 2398 |
| SPDR SERIES TRUST | S&P RETAIL | 78464A714 | 11 | 316 | SH | | DEFINED | 7,11,33 | 0 | 316 |
| SPDR SERIES TRUST | S&P RETAIL | 78464A714 | 45341 | 1351057 | SH | | DEFINED | 16,24,25 | 1325245 | 25812 |
| SPDR SERIES TRUST | S&P OILGAS | 78464A730 | 3678 | 70728 | SH | | DEFINED | 16,24,25 | 66752 | 3976 |
| SPDR SERIES TRUST | OILGAS EQU | 78464A748 | 5468 | 134753 | SH | | DEFINED | 16,24,25 | 126236 | 8517 |
| SPDR SERIES TRUST | S&P METALS | 78464A755 | 6 | 83 | SH | | DEFINED | 16,24 | 83 | 0 |
| SPDR SERIES TRUST | S&P METALS | 78464A755 | 5303 | 76720 | SH | | DEFINED | 16,24,25 | 73210 | 3510 |
| SPDR SERIES TRUST | S&P DIVID | 78464A763 | 527 | 9567 | SH | | DEFINED | 16,24,25 | 9017 | 550 |
| SPDR SERIES TRUST | KBW CAP MK | 78464A771 | 18419 | 275205 | SH | | DEFINED | 16,24,25 | 256366 | 18839 |
| SPDR SERIES TRUST | KBW INS ET | 78464A789 | 24065 | 456115 | SH | | DEFINED | 16,24,25 | 432859 | 23256 |
| SPDR SERIES TRUST | KBW BK ETF | 78464A797 | 14063 | 322918 | SH | | DEFINED | 16,24,25 | 291722 | 31196 |
| SPDR SERIES TRUST | DJWS TOTAL | 78464A805 | 419 | 3970 | SH | | DEFINED | 16,24,25 | 3682 | 288 |
| SPDR SERIES TRUST | DJWS SMALL | 78464A813 | 645 | 10486 | SH | | DEFINED | 16,24,25 | 10486 | 0 |
| SPDR SERIES TRUST | DJWS MIDCA | 78464A821 | 574 | 8709 | SH | | DEFINED | 16,24,25 | 8703 | 6 |
| SPDR SERIES TRUST | DJWS MCAP | 78464A839 | 430 | 7626 | SH | | DEFINED | 16,24,25 | 7498 | 127 |
| SPDR SERIES TRUST | DJWS MIDCA | 78464A847 | 615 | 10995 | SH | | DEFINED | 16,24,25 | 8504 | 2491 |
| SPDR SERIES TRUST | S&P SEMICN | 78464A862 | 1286 | 27646 | SH | | DEFINED | 16,24,25 | 27646 | 0 |
| SPDR SERIES TRUST | S&P BIOTEC | 78464A870 | 15463 | 260498 | SH | | DEFINED | 16,24,25 | 238956 | 21542 |
| SPDR SERIES TRUST | S&P HOMEBU | 78464A888 | 23 | 1200 | SH | | DEFINED | 7,11 | 1200 | 0 |
| SPDR SERIES TRUST | S&P HOMEBU | 78464A888 | 3738 | 193175 | SH | | DEFINED | 15,16,24 | 193175 | 0 |
| SPDR SERIES TRUST | S&P HOMEBU | 78464A888 | 75577 | 390566 | SH | | DEFINED | 15,16,24 | 369644 | 20922 |
| SPDR SERIES TRUST | S&P HOMEBU | 78464A888 | 10879 | 562000 | SH | | DEFINED | 15,16,24 | 562000 | 0 |
| SPDR SERIES TRUST | S&P HOMEBU | 78464A888 | 122 | 6300 | SH | CALL | DEFINED | 16,24,25 | 6300 | 0 |
| SPDR SERIES TRUST | S&P HOMEBU | 78464A888 | 21254 | 1098400 | SH | PUT | DEFINED | 15,16,24 | 1098400 | 0 |
| SPDR SERIES TRUST | S&P HOMEBU | 78464A888 | 122 | 6300 | SH | PUT | DEFINED | 16,24,25 | 6300 | 0 |
| SRA INTL INC | CL A | 78464R105 | 135 | 4600 | SH | | DEFINED | 30 | 4600 | 0 |
| SRA INTL INC | CL A | 78464R105 | 9 | 300 | SH | | DEFINED | 7,11,13 | 300 | 0 |
| SRA INTL INC | CL A | 78464R105 | 603 | 20461 | SH | | DEFINED | 16,24,25 | 19200 | 1261 |
| SP ACQUISITION HOLDI | *W EXP 10/ | 78470A112 | 130 | 141400 | SH | | DEFINED | 16,24,25 | 141400 | 0 |
| SVB FINL GROUP | COM | 78486Q101 | 270 | 5362 | SH | | DEFINED | 7,11 | 5362 | 0 |
| SVB FINL GROUP | COM | 78486Q101 | 106 | 2109 | SH | | DEFINED | 16,24,25 | 2109 | 0 |
| SVB FINL GROUP | COM | 78486Q101 | 634 | 12575 | SH | | DEFINED | 32,40,41 | 12575 | 0 |
| SABA SOFTWARE INC | COM | 784932600 | 78 | 15125 | SH | | DEFINED | 16,24,25 | 15125 | 0 |
| SWS GROUP INC | COM | 78503N107 | 1126 | 88872 | SH | | DEFINED | 16,24,25 | 87679 | 1193 |
| SABINE ROYALTY TR | UNIT BEN I | 785688102 | 395 | 9200 | SH | | DEFINED | 16,24,25 | 7266 | 1934 |
| SADIA S A | SP ADR PFD | 786326108 | 294 | 5143 | SH | | DEFINED | 7,11 | 5143 | 0 |
| SADIA S A | SP ADR PFD | 786326108 | 936 | 16363 | SH | | DEFINED | 16,24,25 | 15729 | 634 |
| SADIA S A | SP ADR PFD | 786326108 | 44 | 770 | SH | | DEFINED | 32,40,41 | 770 | 0 |
| SADIA S A | SP ADR PFD | 786326108 | 6 | 100 | SH | | DEFINED | 16,19,24,26,27 | 100 | 0 |
| SAFECO CORP | COM | 786429100 | 1430 | 25678 | SH | | DEFINED | 7,11 | 25678 | 0 |
| SAFECO CORP | COM | 786429100 | 767 | 13766 | SH | | DEFINED | 16,24,25 | 12542 | 1224 |
| SAFECO CORP | COM | 786429100 | 189 | 3397 | SH | | DEFINED | 32,40,41 | 3397 | 0 |
| SAFEGUARD SCIENTIFIC | COM | 786439108 | 10379 | 5766215 | SH | | DEFINED | 16,24,25 | 5761366 | 4849 |
| SAFETY INS GROUP INC | COM | 78648T100 | 169 | 6581 | SH | | DEFINED | 16,24,25 | 6581 | 0 |
| SAFEWAY INC | COM NEW | 786514208 | 582 | 17000 | SH | | DEFINED | 3,9 | 0 | 17000 |
| SAFEWAY INC | COM NEW | 786514208 | 5047 | 147537 | SH | | DEFINED | 7,11 | 147537 | 0 |
| SAFEWAY INC | COM NEW | 786514208 | 269 | 7875 | SH | | DEFINED | 7,11,13 | 4600 | 3275 |
| SAFEWAY INC | COM NEW | 786514208 | 571 | 16682 | SH | | DEFINED | 15,16,24 | 16682 | 0 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| SAFEWAY INC | COM NEW | 786514208 | 8836 | 258301 SH | DEFINED | 16,24,25 | 233910 | 0 | 24390 |
| SAFEWAY INC | COM NEW | 786514208 | 545 | 15941 SH | DEFINED | 32,40,41 | 15941 | 0 | 0 |
| SAFEWAY INC | COM NEW | 786514208 | 4724 | 138100 SH | CALL DEFINED | 15,16,24 | 138100 | 0 | 0 |
| SAFEWAY INC | COM NEW | 786514208 | 643 | 18800 SH | CALL DEFINED | 16,24,25 | 18800 | 0 | 0 |
| SAFEWAY INC | COM NEW | 786514208 | 3294 | 96300 SH | PUT DEFINED | 15,16,24 | 96300 | 0 | 0 |
| SAFEWAY INC | COM NEW | 786514208 | 3171 | 92700 SH | PUT DEFINED | 16,24,25 | 92700 | 0 | 0 |
| ST JOE CO | COM | 790148100 | 160 | 4514 SH | DEFINED | 7,11 | 4514 | 0 | 0 |
| ST JOE CO | COM | 790148100 | 194 | 5475 SH | DEFINED | 7,11,13 | 5475 | 0 | 0 |
| ST JOE CO | COM | 790148100 | 2842 | 80039 SH | DEFINED | 16,24,25 | 65799 | 0 | 14240 |
| ST JOE CO | COM | 790148100 | 564 | 15885 SH | DEFINED | 32,40,41 | 15885 | 0 | 0 |
| ST JOE CO | COM | 790148100 | 4329 | 121900 SH | CALL DEFINED | 15,16,24 | 121900 | 0 | 0 |
| ST JOE CO | COM | 790148100 | 131 | 3700 SH | CALL DEFINED | 16,24,25 | 3700 | 0 | 0 |
| ST JOE CO | COM | 790148100 | 5376 | 151400 SH | PUT DEFINED | 15,16,24 | 151400 | 0 | 0 |
| ST JUDE MED INC | DBCV 2.80 | 790849AB9 | 94 | 94000 PRN | DEFINED | 16,24,25 | 94000 | 0 | 0 |
| ST JUDE MED INC | DBCV 1.22 | 790849AD5 | 4678 | 4666000 PRN | DEFINED | 16,24,25 | 4666000 | 0 | 0 |
| ST JUDE MED INC | COM | 790849103 | 1527 | 37567 SH | DEFINED | 7,11 | 37567 | 0 | 0 |
| ST JUDE MED INC | COM | 790849103 | 84 | 2060 SH | DEFINED | 7,11,33 | 0 | 0 | 2060 |
| ST JUDE MED INC | COM | 790849103 | 25369 | 624227 SH | DEFINED | 16,24,25 | 493463 | 0 | 130764 |
| ST JUDE MED INC | COM | 790849103 | 11402 | 280552 SH | DEFINED | 32,40,41 | 280552 | 0 | 0 |
| ST JUDE MED INC | COM | 790849103 | 21356 | 525500 SH | CALL DEFINED | 15,16,24 | 525500 | 0 | 0 |
| ST JUDE MED INC | COM | 790849103 | 3503 | 86200 SH | CALL DEFINED | 16,24,25 | 86200 | 0 | 0 |
| ST JUDE MED INC | COM | 790849103 | 4954 | 121900 SH | PUT DEFINED | 15,16,24 | 121900 | 0 | 0 |
| ST JUDE MED INC | COM | 790849103 | 3410 | 83900 SH | PUT DEFINED | 16,24,25 | 83900 | 0 | 0 |
| ST MARY LD & EXPL CO | COM | 792228108 | 66 | 1700 SH | DEFINED | 30 | 1700 | 0 | 0 |
| ST MARY LD & EXPL CO | COM | 792228108 | 16 | 425 SH | DEFINED | 7,11,13 | 425 | 0 | 0 |
| ST MARY LD & EXPL CO | COM | 792228108 | 3028 | 78437 SH | DEFINED | 16,24,25 | 75802 | 0 | 2635 |
| SAKS INC | COM | 79377W108 | 4803 | 231363 SH | DEFINED | 7,11 | 231363 | 0 | 0 |
| SAKS INC | COM | 79377W108 | 63025 | 3035906 SH | DEFINED | 16,24,25 | 3021931 | 0 | 13975 |
| SAKS INC | COM | 79377W108 | 159595 | 7687600 SH | CALL DEFINED | 7,11 | 7687600 | 0 | 0 |
| SAKS INC | COM | 79377W108 | 7418 | 357300 SH | CALL DEFINED | 15,16,24 | 357300 | 0 | 0 |
| SAKS INC | COM | 79377W108 | 160 | 7700 SH | CALL DEFINED | 16,24,25 | 7700 | 0 | 0 |
| SAKS INC | COM | 79377W108 | 6980 | 336200 SH | PUT DEFINED | 15,16,24 | 336200 | 0 | 0 |
| SAKS INC | COM | 79377W108 | 122 | 5900 SH | PUT DEFINED | 16,24,25 | 5900 | 0 | 0 |
| SALESFORCE COM INC | COM | 79466L302 | 645 | 10293 SH | DEFINED | 7,11 | 10293 | 0 | 0 |
| SALESFORCE COM INC | COM | 79466L302 | 5251 | 83769 SH | DEFINED | 16,24,25 | 74692 | 0 | 9077 |
| SALESFORCE COM INC | COM | 79466L302 | 154 | 2455 SH | DEFINED | 32,40,41 | 2455 | 0 | 0 |
| SALESFORCE COM INC | COM | 79466L302 | 16738 | 267000 SH | CALL DEFINED | 15,16,24 | 267000 | 0 | 0 |
| SALESFORCE COM INC | COM | 79466L302 | 3135 | 50000 SH | CALL DEFINED | 16,24,25 | 50000 | 0 | 0 |
| SALESFORCE COM INC | COM | 79466L302 | 24988 | 398600 SH | PUT DEFINED | 15,16,24 | 398600 | 0 | 0 |
| SALIX PHARMACEUTICAL | COM | 795435106 | 4 | 566 SH | DEFINED | 7,11 | 566 | 0 | 0 |
| SALIX PHARMACEUTICAL | COM | 795435106 | 2 | 225 SH | DEFINED | 7,11,13 | 225 | 0 | 0 |
| SALIX PHARMACEUTICAL | COM | 795435106 | 525 | 66673 SH | DEFINED | 16,24,25 | 64021 | 0 | 2652 |
| SALLY BEAUTY HLDGS I | COM | 79546E104 | 4 | 450 SH | DEFINED | 12 | 0 | 0 | 450 |
| SALLY BEAUTY HLDGS I | COM | 79546E104 | 3666 | 405038 SH | DEFINED | 7,11 | 404888 | 0 | 150 |
| SALLY BEAUTY HLDGS I | COM | 79546E104 | 14 | 1500 SH | DEFINED | 7,11,13 | 1500 | 0 | 0 |
| SALLY BEAUTY HLDGS I | COM | 79546E104 | 610 | 67411 SH | DEFINED | 16,24,25 | 59041 | 0 | 8370 |
| SAN JUAN BASIN RTY T | UNIT BEN I | 798241105 | 3866 | 115889 SH | DEFINED | 16,24,25 | 85274 | 0 | 30615 |
| SANDERSON FARMS INC | COM | 800013104 | 6 | 173 SH | DEFINED | 7,11 | 0 | 0 | 173 |
| SANDERSON FARMS INC | COM | 800013104 | 826 | 24462 SH | DEFINED | 16,24,25 | 19231 | 0 | 5231 |
| SANDISK CORP | NOTE 1.00 | 80004CAC5 | 8038 | 10000000 PRN | DEFINED | 7,11 | 10000000 | 0 | 0 |
| SANDISK CORP | NOTE 1.00 | 80004CAC5 | 410 | 510000 PRN | DEFINED | 7,11 | 510000 | 0 | 0 |
| SANDISK CORP | COM | 80004C101 | 5 | 155 SH | DEFINED | 3,9 | 0 | 0 | 155 |
| SANDISK CORP | COM | 80004C101 | 15990 | 482059 SH | DEFINED | 7,11 | 482059 | 0 | 0 |
| SANDISK CORP | COM | 80004C101 | 13 | 380 SH | DEFINED | 7,11,13 | 380 | 0 | 0 |
| SANDISK CORP | COM | 80004C101 | 205 | 6175 SH | DEFINED | 7,11,33 | 0 | 0 | 6175 |
| SANDISK CORP | COM | 80004C101 | 94496 | 2848835 SH | DEFINED | 16,24,25 | 2662893 | 0 | 185942 |
| SANDISK CORP | COM | 80004C101 | 11800 | 355730 SH | DEFINED | 32,40,41 | 355730 | 0 | 0 |
| SANDISK CORP | COM | 80004C101 | 162 | 4870 SH | DEFINED | 16,19,24,26,27 | 4870 | 0 | 0 |
| SANDISK CORP | COM | 80004C101 | 190 | 5740 SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 5740 | 0 | 0 |
| SANDISK CORP | COM | 80004C101 | 3747 | 112972 SH | CALL DEFINED | 7,11 | 112972 | 0 | 0 |
| SANDISK CORP | COM | 80004C101 | 33827 | 1019800 SH | CALL DEFINED | 15,16,24 | 1019800 | 0 | 0 |
| SANDISK CORP | COM | 80004C101 | 10498 | 316500 SH | CALL DEFINED | 16,24,25 | 316500 | 0 | 0 |
| SANDISK CORP | COM | 80004C101 | 7042 | 212300 SH | PUT DEFINED | 7,11 | 212300 | 0 | 0 |
| SANDISK CORP | COM | 80004C101 | 24363 | 734500 SH | PUT DEFINED | 15,16,24 | 734500 | 0 | 0 |
| SANDISK CORP | COM | 80004C101 | 19171 | 577972 SH | PUT DEFINED | 16,24,25 | 577972 | 0 | 0 |
| SANDRIDGE ENERGY INC | COM | 80007P307 | 776 | 21637 SH | DEFINED | 16,24,25 | 21087 | 0 | 550 |
| SANFILIPPO JOHN B & | COM | 800422107 | 2387 | 283520 SH | DEFINED | 16,24,25 | 246950 | 0 | 36570 |
| SANGAMO BIOSCIENCES | COM | 800677106 | 749 | 57547 SH | DEFINED | 16,24,25 | 55187 | 0 | 2360 |
| SANGAMO BIOSCIENCES | COM | 800677106 | 3698 | 284000 SH | DEFINED | 32,40,41 | 284000 | 0 | 0 |
| SANGAMO BIOSCIENCES | COM | 800677106 | 340 | 26100 SH | CALL DEFINED | 15,16,24 | 26100 | 0 | 0 |
| SANGAMO BIOSCIENCES | COM | 800677106 | 249 | 19100 SH | PUT DEFINED | 15,16,24 | 19100 | 0 | 0 |
| SANMINA SCI CORP | COM | 800907107 | 49 | 27085 SH | DEFINED | 7,11 | 27085 | 0 | 0 |
| SANMINA SCI CORP | COM | 800907107 | 2 | 1233 SH | DEFINED | 7,11,13 | 1233 | 0 | 0 |
| SANMINA SCI CORP | COM | 800907107 | 257 | 141418 SH | DEFINED | 15,16,24 | 141418 | 0 | 0 |
| SANMINA SCI CORP | COM | 800907107 | 1366 | 750769 SH | DEFINED | 16,24,25 | 713460 | 0 | 37309 |
| SANMINA SCI CORP | COM | 800907107 | 21 | 11439 SH | DEFINED | 32,40,41 | 11439 | 0 | 0 |
| SANMINA SCI CORP | COM | 800907107 | 81 | 44500 SH | CALL DEFINED | 15,16,24 | 44500 | 0 | 0 |
| SANMINA SCI CORP | COM | 800907107 | 224 | 123000 SH | PUT DEFINED | 15,16,24 | 123000 | 0 | 0 |
| SANOFI AVENTIS | SPONSORED | 80105N105 | 347 | 7620 SH | DEFINED | 30 | 7620 | 0 | 0 |
| SANOFI AVENTIS | SPONSORED | 80105N105 | 3303 | 72555 SH | DEFINED | 7,11,13 | 71635 | 0 | 920 |
| SANOFI AVENTIS | SPONSORED | 80105N105 | 9946 | 218453 SH | DEFINED | 16,24,25 | 195375 | 0 | 23078 |
| SANOFI AVENTIS | SPONSORED | 80105N105 | 8592 | 188700 SH | DEFINED | 32,40,41 | 188700 | 0 | 0 |
| SANOFI AVENTIS | SPONSORED | 80105N105 | 5400 | 118600 SH | CALL DEFINED | 15,16,24 | 118600 | 0 | 0 |
| SANOFI AVENTIS | SPONSORED | 80105N105 | 5 | 100 SH | CALL DEFINED | 16,24,25 | 100 | 0 | 0 |
| SANOFI AVENTIS | SPONSORED | 80105N105 | 2172 | 47700 SH | PUT DEFINED | 15,16,24 | 47700 | 0 | 0 |
| SANTA FE ENERGY TR | RCPT DEP U | 802013102 | 355 | 13475 SH | DEFINED | 16,24,25 | 7075 | 0 | 6400 |
| SANTA MONICA MEDIA C | COM | 80250L106 | 6044 | 809117 SH | DEFINED | 16,24,25 | 800417 | 0 | 8700 |
| SANTA MONICA MEDIA C | *W EXP 03/ | 80250L114 | 229 | 440400 SH | DEFINED | 16,24,25 | 428400 | 0 | 12000 |
| SANTOS LIMITED | SPONSORED | 803021609 | 1964 | 39771 SH | DEFINED | 16,24,25 | 24791 | 0 | 14980 |
| SAP AKTIENGESELLSCHA | SPONSORED | 803054204 | 51 | 997 SH | DEFINED | 7,11 | 0 | 0 | 997 |
| SAP AKTIENGESELLSCHA | SPONSORED | 803054204 | 97 | 1900 SH | DEFINED | 7,11,13 | 1900 | 0 | 0 |
| SAP AKTIENGESELLSCHA | SPONSORED | 803054204 | 7 | 145 SH | DEFINED | 7,11,33 | 0 | 0 | 145 |
| SAP AKTIENGESELLSCHA | SPONSORED | 803054204 | 9992 | 195721 SH | DEFINED | 16,24,25 | 174612 | 0 | 21109 |
| SAP AKTIENGESELLSCHA | SPONSORED | 803054204 | 2604 | 51000 SH | DEFINED | 32,40,41 | 51000 | 0 | 0 |
| SAP AKTIENGESELLSCHA | SPONSORED | 803054204 | 255 | 5000 SH | DEFINED | 16,19,24,26,27 | 5000 | 0 | 0 |
| SAP AKTIENGESELLSCHA | SPONSORED | 803054204 | 13761 | 269550 SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 269550 | 0 | 0 |
| SAP AKTIENGESELLSCHA | SPONSORED | 803054204 | 6024 | 118000 SH | CALL DEFINED | 15,16,24 | 118000 | 0 | 0 |
| SAP AKTIENGESELLSCHA | SPONSORED | 803054204 | 4630 | 90700 SH | PUT DEFINED | 15,16,24 | 90700 | 0 | 0 |
| SAPIENT CORP | COM | 803062108 | 152 | 17250 SH | DEFINED | 30 | 17250 | 0 | 0 |
| SAPIENT CORP | COM | 803062108 | 9 | 1000 SH | DEFINED | 7,11,13 | 1000 | 0 | 0 |
| SAPIENT CORP | COM | 803062108 | 1101 | 124928 SH | DEFINED | 16,24,25 | 121328 | 0 | 3600 |
| SARA LEE CORP | COM | 803111103 | 4163 | 259214 SH | DEFINED | 7,11 | 218314 | 0 | 40900 |
| SARA LEE CORP | COM | 803111103 | 495 | 30800 SH | DEFINED | 7,11,13 | 30800 | 0 | 0 |
| SARA LEE CORP | COM | 803111103 | 50 | 3100 SH | DEFINED | 7,11,33 | 0 | 0 | 3100 |
| SARA LEE CORP | COM | 803111103 | 10235 | 637310 SH | DEFINED | 16,24,25 | 593359 | 0 | 43950 |
| SARA LEE CORP | COM | 803111103 | 18205 | 1133545 SH | DEFINED | 32,40,41 | 1133545 | 0 | 0 |
| SARA LEE CORP | COM | 803111103 | 1751 | 109000 SH | CALL DEFINED | 7,11 | 109000 | 0 | 0 |
| SARA LEE CORP | COM | 803111103 | 4592 | 285900 SH | CALL DEFINED | 16,24,25 | 285900 | 0 | 0 |
| SARA LEE CORP | COM | 803111103 | 4031 | 251000 SH | CALL DEFINED | 16,24,25 | 251000 | 0 | 0 |
| SARA LEE CORP | COM | 803111103 | 834 | 51900 SH | PUT DEFINED | 15,16,24 | 51900 | 0 | 0 |
| SASOL LTD | SPONSORED | 803866300 | 2 | 41 SH | DEFINED | 7,11,13 | 41 | 0 | 0 |
| SASOL LTD | SPONSORED | 803866300 | 7953 | 160762 SH | DEFINED | 16,24,25 | 117902 | 0 | 42860 |
| SATYAM COMPUTER SERV | ADR | 804098101 | 3107 | 116265 SH | DEFINED | 7,11 | 116265 | 0 | 0 |
| SATYAM COMPUTER SERV | ADR | 804098101 | 239 | 8935 SH | DEFINED | 7,11,33 | 0 | 0 | 8935 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SATYAM COMPUTER SERV | ADR | 804098101 | 6821 | 255264 | SH | DEFINED | 16,24,25 | 213344 | 0 | 41920 |
| SATYAM COMPUTER SERV | ADR | 804098101 | 208 | 7800 | SH | DEFINED | 16,19,24,26,27 | 7800 | 0 | 0 |
| SAUL CTRS INC | COM | 804395101 | 615 | 11513 | SH | DEFINED | 16,24,25 | 10472 | 0 | 1041 |
| SAUL CTRS INC | COM | 804395101 | 275 | 5149 | SH | DEFINED | 32,40,41 | 5149 | 0 | 0 |
| SAVIENT PHARMACEUTIC | COM | 80517Q100 | 1934 | 84193 | SH | DEFINED | 16,24,25 | 60443 | 0 | 23750 |
| SAVVIS INC | COM NEW | 805423308 | 36 | 1306 | SH | DEFINED | 16,24,25 | 1232 | 0 | 74 |
| SAVVIS INC | COM NEW | 805423308 | 697 | 24975 | SH | DEFINED | 32,40,41 | 24975 | 0 | 0 |
| SCANA CORP NEW | COM | 80589M102 | 736 | 17467 | SH | DEFINED | 7,11 | 11307 | 0 | 6160 |
| SCANA CORP NEW | COM | 80589M102 | 36 | 843 | SH | DEFINED | 7,11,13 | 843 | 0 | 0 |
| SCANA CORP NEW | COM | 80589M102 | 8800 | 208776 | SH | DEFINED | 16,24,25 | 184147 | 0 | 24629 |
| SCANA CORP NEW | COM | 80589M102 | 134 | 3183 | SH | DEFINED | 32,40,41 | 3183 | 0 | 0 |
| SCANSOURCE INC | COM | 806037107 | 575 | 17789 | SH | DEFINED | 16,24,25 | 17789 | 0 | 0 |
| SCHEIN HENRY INC | COM | 806407102 | 18 | 300 | SH | DEFINED | 12 | 0 | 0 | 300 |
| SCHEIN HENRY INC | COM | 806407102 | 689 | 11218 | SH | DEFINED | 7,11 | 9318 | 0 | 1900 |
| SCHEIN HENRY INC | COM | 806407102 | 13 | 208 | SH | DEFINED | 7,11,13 | 208 | 0 | 0 |
| SCHEIN HENRY INC | COM | 806407102 | 6554 | 106740 | SH | DEFINED | 16,24,25 | 79905 | 0 | 26835 |
| SCHEIN HENRY INC | COM | 806407102 | 37 | 600 | SH | DEFINED | 32,40,41 | 600 | 0 | 0 |
| SCHERING PLOUGH CORP | COM | 806605101 | 642 | 24100 | SH | DEFINED | 12 | 0 | 0 | 24100 |
| SCHERING PLOUGH CORP | COM | 806605101 | 4039 | 151630 | SH | DEFINED | 3,9 | 0 | 0 | 151630 |
| SCHERING PLOUGH CORP | COM | 806605101 | 26978 | 1012684 | SH | DEFINED | 7,11 | 378754 | 0 | 633930 |
| SCHERING PLOUGH CORP | COM | 806605101 | 1493 | 56059 | SH | DEFINED | 7,11,13 | 26659 | 0 | 29400 |
| SCHERING PLOUGH CORP | COM | 806605101 | 208 | 7825 | SH | DEFINED | 7,11,13 | 0 | 0 | 7825 |
| SCHERING PLOUGH CORP | COM | 806605101 | 3390 | 127259 | SH | DEFINED | 15,16,24 | 127259 | 0 | 0 |
| SCHERING PLOUGH CORP | COM | 806605101 | 40400 | 1516500 | SH | DEFINED | 16,24,25 | 1198420 | 0 | 318079 |
| SCHERING PLOUGH CORP | COM | 806605101 | 13366 | 501725 | SH | DEFINED | 32,40,41 | 501725 | 0 | 0 |
| SCHERING PLOUGH CORP | COM | 806605101 | 8 | 285 | SH | DEFINED | 5-7,11,43,44 | 0 | 285 | 0 |
| SCHERING PLOUGH CORP | COM | 806605101 | 605 | 22698 | SH | DEFINED | 16,19,24,26,27 | 22698 | 0 | 0 |
| SCHERING PLOUGH CORP | COM | 806605101 | 4630 | 173800 | SH | CALL DEFINED | 15,16,24 | 173800 | 0 | 0 |
| SCHERING PLOUGH CORP | COM | 806605101 | 2938 | 110300 | SH | DEFINED | 16,24,25 | 110300 | 0 | 0 |
| SCHERING PLOUGH CORP | COM | 806605101 | 7731 | 290200 | SH | PUT DEFINED | 15,16,24 | 290200 | 0 | 0 |
| SCHERING PLOUGH CORP | COM | 806605101 | 2805 | 105300 | SH | PUT DEFINED | 16,24,25 | 105300 | 0 | 0 |
| SCHERING PLOUGH CORP | PFD CONV M | 806605705 | 31565 | 130000 | SH | DEFINED | 16,24 | 130000 | 0 | 0 |
| SCHERING PLOUGH CORP | PFD CONV M | 806605705 | 520 | 2143 | SH | DEFINED | 16,24,25 | 1643 | 0 | 500 |
| SCHERING PLOUGH CORP | PFD CONV M | 806605705 | 2282 | 9400 | SH | DEFINED | 32,40,41 | 9400 | 0 | 0 |
| SCHLUMBERGER LTD | DBCV 1.50 | 806857AC2 | 27 | 10000 | PRN | DEFINED | 16,24,25 | 10000 | 0 | 0 |
| SCHLUMBERGER LTD | DBCV 2.12 | 806857AD0 | 34326 | 13904000 | PRN | DEFINED | 16,24,25 | 13904000 | 0 | 0 |
| SCHLUMBERGER LTD | COM | 806857108 | 354 | 3600 | SH | DEFINED | 12 | 0 | 0 | 3600 |
| SCHLUMBERGER LTD | COM | 806857108 | 1997 | 20300 | SH | DEFINED | 42 | 20300 | 0 | 0 |
| SCHLUMBERGER LTD | COM | 806857108 | 113 | 1149 | SH | DEFINED | 3,9 | 0 | 0 | 1149 |
| SCHLUMBERGER LTD | COM | 806857108 | 75614 | 768673 | SH | DEFINED | 7,11 | 370556 | 1572 | 396545 |
| SCHLUMBERGER LTD | COM | 806857108 | 4395 | 44675 | SH | DEFINED | 7,11,13 | 37423 | 0 | 7252 |
| SCHLUMBERGER LTD | COM | 806857108 | 1876 | 19072 | SH | DEFINED | 7,11,13 | 0 | 0 | 19072 |
| SCHLUMBERGER LTD | COM | 806857108 | 128359 | 1304864 | SH | DEFINED | 16,24,25 | 1002788 | 0 | 302075 |
| SCHLUMBERGER LTD | COM | 806857108 | 36222 | 368226 | SH | DEFINED | 32,40,41 | 368226 | 0 | 0 |
| SCHLUMBERGER LTD | COM | 806857108 | 5102 | 51869 | SH | DEFINED | 5-7,11,43,44 | 0 | 51869 | 0 |
| SCHLUMBERGER LTD | COM | 806857108 | 39 | 400 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 400 | 0 | 0 |
| SCHLUMBERGER LTD | COM | 806857108 | 95025 | 966000 | SH | CALL DEFINED | 15,16,24 | 966000 | 0 | 0 |
| SCHLUMBERGER LTD | COM | 806857108 | 7624 | 77500 | SH | CALL DEFINED | 16,24,25 | 77500 | 0 | 0 |
| SCHLUMBERGER LTD | COM | 806857108 | 57546 | 585000 | SH | PUT DEFINED | 15,16,24 | 585000 | 0 | 0 |
| SCHLUMBERGER LTD | COM | 806857108 | 7151 | 72700 | SH | PUT DEFINED | 16,24,25 | 72700 | 0 | 0 |
| SCHNITZER STL INDS | CL A | 806822106 | 2584 | 37379 | SH | DEFINED | 15,16,24 | 37379 | 0 | 0 |
| SCHNITZER STL INDS | CL A | 806822106 | 1067 | 15434 | SH | DEFINED | 16,24,25 | 15134 | 0 | 300 |
| SCHNITZER STL INDS | CL A | 806822106 | 13218 | 191200 | SH | CALL DEFINED | 15,16,24 | 191200 | 0 | 0 |
| SCHNITZER STL INDS | CL A | 806822106 | 19253 | 278500 | SH | PUT DEFINED | 15,16,24 | 278500 | 0 | 0 |
| SCHOOL SPECIALTY INC | NOTE 3.75 | 807863AE5 | 13792 | 13758000 | PRN | DEFINED | 16,24,25 | 13758000 | 0 | 0 |
| SCHOOL SPECIALTY INC | COM | 807863105 | 575 | 16649 | SH | DEFINED | 16,24,25 | 16649 | 0 | 0 |
| SCHULMAN A INC | COM | 808194104 | 38 | 1750 | SH | DEFINED | 7,11,13 | 1750 | 0 | 0 |
| SCHULMAN A INC | COM | 808194104 | 1759 | 81640 | SH | DEFINED | 16,24,25 | 68513 | 0 | 13127 |
| SCHWAB CHARLES CORP | COM | 808513105 | 319 | 12500 | SH | DEFINED | 30 | 12500 | 0 | 0 |
| SCHWAB CHARLES CORP | COM | 808513105 | 4530 | 177297 | SH | DEFINED | 7,11 | 177297 | 0 | 0 |
| SCHWAB CHARLES CORP | COM | 808513105 | 19 | 760 | SH | DEFINED | 7,11,13 | 0 | 0 | 760 |
| SCHWAB CHARLES CORP | COM | 808513105 | 74765 | 2926232 | SH | DEFINED | 16,24,25 | 2519387 | 0 | 406844 |
| SCHWAB CHARLES CORP | COM | 808513105 | 781 | 30577 | SH | DEFINED | 32,40,41 | 30577 | 0 | 0 |
| SCHWAB CHARLES CORP | COM | 808513105 | 7734 | 302700 | SH | CALL DEFINED | 15,16,24 | 302700 | 0 | 0 |
| SCHWAB CHARLES CORP | COM | 808513105 | 2016 | 78900 | SH | CALL DEFINED | 16,24,25 | 78900 | 0 | 0 |
| SCHWAB CHARLES CORP | COM | 808513105 | 5675 | 222100 | SH | PUT DEFINED | 15,16,24 | 222100 | 0 | 0 |
| SCHWAB CHARLES CORP | COM | 808513105 | 2016 | 78900 | SH | PUT DEFINED | 16,24,25 | 78900 | 0 | 0 |
| SCHWEITZER-MAUDUIT I | COM | 808541106 | 5 | 200 | SH | DEFINED | 7,11 | 0 | 0 | 200 |
| SCHWEITZER-MAUDUIT I | COM | 808541106 | 1555 | 60033 | SH | DEFINED | 16,24,25 | 47433 | 0 | 12600 |
| SCIELE PHARMA INC | COM | 808627103 | 156 | 7650 | SH | DEFINED | 30 | 7650 | 0 | 0 |
| SCIELE PHARMA INC | COM | 808627103 | 1994 | 97514 | SH | DEFINED | 16,24,25 | 85529 | 0 | 11985 |
| SCIENTIFIC GAMES COR | CL A | 80874P109 | 591 | 17775 | SH | DEFINED | 7,11 | 17775 | 0 | 0 |
| SCIENTIFIC GAMES COR | CL A | 80874P109 | 1796 | 54009 | SH | DEFINED | 16,24,25 | 53631 | 0 | 378 |
| SCIENTIFIC GAMES COR | CL A | 80874P109 | 27 | 800 | SH | DEFINED | 32,40,41 | 800 | 0 | 0 |
| SCIENTIFIC GAMES COR | CL A | 80874P109 | 1716 | 51600 | SH | CALL DEFINED | 15,16,24 | 51600 | 0 | 0 |
| SCIENTIFIC GAMES COR | CL A | 80874P109 | 2304 | 69300 | SH | DEFINED | 16,24,25 | 69300 | 0 | 0 |
| SCIENTIFIC GAMES COR | CL A | 80874P109 | 868 | 26100 | SH | PUT DEFINED | 15,16,24 | 20000 | 0 | 0 |
| SCIENTIFIC GAMES COR | CL A | 80874P109 | 665 | 20000 | SH | PUT DEFINED | 16,24,25 | 20000 | 0 | 0 |
| SCOTTS MIRACLE GRO C | CL A | 810186106 | 75 | 2000 | SH | DEFINED | 30 | 2000 | 0 | 0 |
| SCOTTS MIRACLE GRO C | CL A | 810186106 | 4 | 99 | SH | DEFINED | 7,11 | 99 | 0 | 0 |
| SCOTTS MIRACLE GRO C | CL A | 810186106 | 4 | 100 | SH | DEFINED | 7,11,13 | 100 | 0 | 0 |
| SCOTTS MIRACLE GRO C | CL A | 810186106 | 7062 | 188712 | SH | DEFINED | 16,24,25 | 147259 | 0 | 41453 |
| SCRIPPS E W CO OHIO | CL A | 811054204 | 741 | 16457 | SH | DEFINED | 7,11 | 16457 | 0 | 0 |
| SCRIPPS E W CO OHIO | CL A | 811054204 | 461 | 10242 | SH | DEFINED | 16,24,25 | 7242 | 0 | 2999 |
| SCRIPPS E W CO OHIO | CL A | 811054204 | 55 | 1230 | SH | DEFINED | 32,40,41 | 1230 | 0 | 0 |
| SEACHANGE INTL INC | COM | 811699107 | 201 | 27760 | SH | DEFINED | 16,24,25 | 26760 | 0 | 1000 |
| SEACOAST BKG CORP FL | COM | 811707306 | 820 | 79751 | SH | DEFINED | 16,24,25 | 77951 | 0 | 1800 |
| SEACOR HOLDINGS INC | COM | 811904101 | 2159 | 23284 | SH | DEFINED | 7,11 | 23284 | 0 | 0 |
| SEACOR HOLDINGS INC | COM | 811904101 | 3960 | 42702 | SH | DEFINED | 16,24,25 | 38098 | 0 | 4604 |
| SEABRIDGE GOLD INC | COM | 811916105 | 466 | 15836 | SH | DEFINED | 16,24,25 | 13336 | 0 | 2500 |
| SEABRIDGE GOLD INC | COM | 811916105 | 62 | 2100 | SH | PUT DEFINED | 16,24,25 | 2100 | 0 | 0 |
| SEALED AIR CORP NEW | COM | 81211K100 | 283 | 12227 | SH | DEFINED | 7,11 | 12227 | 0 | 0 |
| SEALED AIR CORP NEW | COM | 81211K100 | 1002 | 43290 | SH | DEFINED | 16,24,25 | 43290 | 0 | 0 |
| SEALED AIR CORP NEW | COM | 81211K100 | 2843 | 122882 | SH | DEFINED | 16,24,25 | 115014 | 0 | 7867 |
| SEALED AIR CORP NEW | COM | 81211K100 | 121 | 5249 | SH | DEFINED | 32,40,41 | 5249 | 0 | 0 |
| SEALED AIR CORP NEW | COM | 81211K100 | 32 | 1400 | SH | CALL DEFINED | 15,16,24 | 1400 | 0 | 0 |
| SEALED AIR CORP NEW | COM | 81211K100 | 1051 | 45400 | SH | PUT DEFINED | 15,16,24 | 45400 | 0 | 0 |
| SEARS HLDGS CORP | COM | 812350106 | 2351 | 23039 | SH | DEFINED | 7,11 | 21970 | 0 | 1069 |
| SEARS HLDGS CORP | COM | 812350106 | 26 | 254 | SH | DEFINED | 7,11,13 | 0 | 0 | 254 |
| SEARS HLDGS CORP | COM | 812350106 | 5887 | 57686 | SH | DEFINED | 16,24,25 | 51049 | 0 | 6637 |
| SEARS HLDGS CORP | COM | 812350106 | 255 | 2498 | SH | DEFINED | 32,40,41 | 2498 | 0 | 0 |
| SEARS HLDGS CORP | COM | 812350106 | 1550 | 15185 | SH | CALL DEFINED | 7,11 | 15185 | 0 | 0 |
| SEARS HLDGS CORP | COM | 812350106 | 72690 | 712300 | SH | CALL DEFINED | 15,16,24 | 712300 | 0 | 0 |
| SEARS HLDGS CORP | COM | 812350106 | 12532 | 122800 | SH | CALL DEFINED | 16,24,25 | 122800 | 0 | 0 |
| SEARS HLDGS CORP | COM | 812350106 | 65332 | 640200 | SH | PUT DEFINED | 15,16,24 | 640200 | 0 | 0 |
| SEARS HLDGS CORP | COM | 812350106 | 2050 | 20085 | SH | PUT DEFINED | 16,24,25 | 20085 | 0 | 0 |
| SEATTLE GENETICS INC | COM | 812578102 | 290 | 25409 | SH | DEFINED | 16,24,25 | 13409 | 0 | 12000 |
| SELECT SECTOR SPDR T | SBI MATERI | 81369Y100 | 65 | 1560 | SH | DEFINED | 7,11,13 | 1560 | 0 | 0 |
| SELECT SECTOR SPDR T | SBI MATERI | 81369Y100 | 29 | 700 | SH | DEFINED | 7,11,13 | 0 | 0 | 700 |
| SELECT SECTOR SPDR T | SBI MATERI | 81369Y100 | 22465 | 538735 | SH | DEFINED | 16,24,25 | 511470 | 0 | 27265 |
| SELECT SECTOR SPDR T | SBI MATERI | 81369Y100 | 22651 | 543200 | SH | CALL DEFINED | 15,16,24 | 543200 | 0 | 0 |
| SELECT SECTOR SPDR T | SBI MATERI | 81369Y100 | 1739 | 41700 | SH | CALL DEFINED | 16,24,25 | 41700 | 0 | 0 |
| SELECT SECTOR SPDR T | SBI MATERI | 81369Y100 | 34807 | 834700 | SH | PUT DEFINED | 15,16,24 | 834700 | 0 | 0 |
| SELECT SECTOR SPDR T | SBI MATERI | 81369Y100 | 1739 | 41700 | SH | PUT DEFINED | 16,24,25 | 41700 | 0 | 0 |

| Name | Type | CUSIP | Qty1 | Qty2 | | | Codes | | Qty3 |
|---|---|---|---|---|---|---|---|---|---|
| SELECT SECTOR SPDR T | SBI HEALTH | 81369Y209 | 1457 | 41265 | SH | DEFINED | 7,11 | 41000 | 265 |
| SELECT SECTOR SPDR T | SBI HEALTH | 81369Y209 | 7 | 200 | SH | DEFINED | 7,11,13 | 200 | 0 |
| SELECT SECTOR SPDR T | SBI HEALTH | 81369Y209 | 30166 | 854315 | SH | DEFINED | 16,24,25 | 765559 | 88755 |
| SELECT SECTOR SPDR T | SBI HEALTH | 81369Y209 | 2369 | 67100 | SH | DEFINED | 15,16,24 | 67100 | 0 |
| SELECT SECTOR SPDR T | SBI HEALTH | 81369Y209 | 346 | 9800 | SH | CALL DEFINED | 16,24,25 | 9800 | 0 |
| SELECT SECTOR SPDR T | SBI HEALTH | 81369Y209 | 3662 | 103700 | SH | PUT DEFINED | 15,16,24 | 103700 | 0 |
| SELECT SECTOR SPDR T | SBI HEALTH | 81369Y209 | 346 | 9800 | SH | PUT DEFINED | 16,24,25 | 9800 | 0 |
| SELECT SECTOR SPDR T | SBI CONS S | 81369Y308 | 26156 | 908181 | SH | DEFINED | 16,24,25 | 863886 | 44294 |
| SELECT SECTOR SPDR T | SBI CONS D | 81369Y407 | 9879 | 302122 | SH | DEFINED | 16,24,25 | 277276 | 24846 |
| SELECT SECTOR SPDR T | SBI CONS D | 81369Y407 | 65400 | 2000000 | SH | PUT DEFINED | 16,24,25 | 2000000 | 0 |
| SELECT SECTOR SPDR T | SBI INT-EN | 81369Y506 | 2511 | 31640 | SH | DEFINED | 7,11 | 31500 | 140 |
| SELECT SECTOR SPDR T | SBI INT-EN | 81369Y506 | 40 | 500 | SH | DEFINED | 7,11,13 | 500 | 0 |
| SELECT SECTOR SPDR T | SBI INT-EN | 81369Y506 | 3078 | 38787 | SH | DEFINED | 15,16,24 | 38787 | 0 |
| SELECT SECTOR SPDR T | SBI INT-EN | 81369Y506 | 121629 | 1532812 | SH | DEFINED | 16,24,25 | 1374616 | 158196 |
| SELECT SECTOR SPDR T | SBI INT-EN | 81369Y506 | 39667 | 499900 | SH | CALL DEFINED | 15,16,24 | 499900 | 0 |
| SELECT SECTOR SPDR T | SBI INT-EN | 81369Y506 | 32002 | 403300 | SH | CALL DEFINED | 16,24,25 | 403300 | 0 |
| SELECT SECTOR SPDR T | SBI INT-EN | 81369Y506 | 146607 | 1847600 | SH | PUT DEFINED | 15,16,24 | 1847600 | 0 |
| SELECT SECTOR SPDR T | SBI INT-EN | 81369Y506 | 32621 | 411100 | SH | PUT DEFINED | 16,24,25 | 411100 | 0 |
| SELECT SECTOR SPDR T | SBI INT-FI | 81369Y605 | 11228 | 388123 | SH | DEFINED | 7,11 | 388123 | 0 |
| SELECT SECTOR SPDR T | SBI INT-FI | 81369Y605 | 70694 | 2443622 | SH | DEFINED | 16,24,25 | 2231973 | 211649 |
| SELECT SECTOR SPDR T | SBI INT-FI | 81369Y605 | 45901 | 1586616 | SH | CALL DEFINED | 7,11 | 1586616 | 0 |
| SELECT SECTOR SPDR T | SBI INT-FI | 81369Y605 | 25079 | 866900 | SH | DEFINED | 15,16,24 | 866900 | 0 |
| SELECT SECTOR SPDR T | SBI INT-FI | 81369Y605 | 35052 | 1211600 | SH | CALL DEFINED | 16,24,25 | 1211600 | 0 |
| SELECT SECTOR SPDR T | SBI INT-FI | 81369Y605 | 9384 | 324360 | SH | PUT DEFINED | 7,11 | 324360 | 0 |
| SELECT SECTOR SPDR T | SBI INT-FI | 81369Y605 | 52511 | 1815100 | SH | PUT DEFINED | 15,16,24 | 1815100 | 0 |
| SELECT SECTOR SPDR T | SBI INT-FI | 81369Y605 | 145260 | 5021100 | SH | PUT DEFINED | 16,24,25 | 477484 | 46241 |
| SELECT SECTOR SPDR T | SBI INT-IN | 81369Y704 | 20509 | 523725 | SH | DEFINED | 16,24,25 | 477484 | 46241 |
| SELECT SECTOR SPDR T | SBI INT-TE | 81369Y803 | 44107 | 1654420 | SH | DEFINED | 16,24,25 | 1512270 | 142149 |
| SELECT SECTOR SPDR T | SBI INT-TE | 81369Y803 | 7326 | 274800 | SH | CALL DEFINED | 15,16,24 | 274800 | 0 |
| SELECT SECTOR SPDR T | SBI INT-TE | 81369Y803 | 2469 | 92600 | SH | DEFINED | 16,24,25 | 92600 | 0 |
| SELECT SECTOR SPDR T | SBI INT-TE | 81369Y803 | 10096 | 378700 | SH | PUT DEFINED | 15,16,24 | 378700 | 0 |
| SELECT SECTOR SPDR T | SBI INT-TE | 81369Y803 | 3802 | 142600 | SH | PUT DEFINED | 16,24,25 | 142600 | 0 |
| SELECT SECTOR SPDR T | SBI INT-UT | 81369Y886 | 1510 | 35671 | SH | DEFINED | 7,11 | 35671 | 0 |
| SELECT SECTOR SPDR T | SBI INT-UT | 81369Y886 | 63 | 1490 | SH | DEFINED | 7,11,13 | 1490 | 0 |
| SELECT SECTOR SPDR T | SBI INT-UT | 81369Y886 | 42 | 1000 | SH | DEFINED | 7,11,33 | 0 | 1000 |
| SELECT SECTOR SPDR T | SBI INT-UT | 81369Y886 | 1521 | 35935 | SH | DEFINED | 15,16,24 | 35935 | 0 |
| SELECT SECTOR SPDR T | SBI INT-UT | 81369Y886 | 42720 | 1009215 | SH | DEFINED | 16,24,25 | 909470 | 99745 |
| SELECT SECTOR SPDR T | SBI INT-UT | 81369Y886 | 1270 | 30000 | SH | CALL DEFINED | 7,11 | 30000 | 0 |
| SELECT SECTOR SPDR T | SBI INT-UT | 81369Y886 | 2421 | 57200 | SH | DEFINED | 15,16,24 | 57200 | 0 |
| SELECT SECTOR SPDR T | SBI INT-UT | 81369Y886 | 2531 | 59800 | SH | CALL DEFINED | 16,24,25 | 59800 | 0 |
| SELECT SECTOR SPDR T | SBI INT-UT | 81369Y886 | 1270 | 30000 | SH | PUT DEFINED | 7,11 | 30000 | 0 |
| SELECT SECTOR SPDR T | SBI INT-UT | 81369Y886 | 5414 | 127900 | SH | PUT DEFINED | 15,16,24 | 127900 | 0 |
| SELECT SECTOR SPDR T | SBI INT-UT | 81369Y886 | 2531 | 59800 | SH | PUT DEFINED | 16,24,25 | 59800 | 0 |
| SECURE COMPUTING COR | COM | 813705100 | 334 | 34764 | SH | DEFINED | 16,24,25 | 31314 | 3450 |
| SECURE AMER ACQUISIT | UNIT 10/23 | 81372L202 | 2274 | 286700 | SH | DEFINED | 16,24,25 | 281500 | 5200 |
| SELECT COMFORT CORP | COM | 81616X103 | 2 | 225 | SH | DEFINED | 7,11 | 225 | 0 |
| SELECT COMFORT CORP | COM | 81616X103 | 151 | 21585 | SH | DEFINED | 16,24,25 | 20536 | 1049 |
| SELECT INS GROUP | COM | 816300107 | 7 | 318 | SH | DEFINED | 7,11 | 0 | 318 |
| SELECTIVE INS GROUP | COM | 816300107 | 275 | 11971 | SH | DEFINED | 16,24,25 | 11761 | 210 |
| SELIGMAN LASALLE INT | COM | 81634A101 | 781 | 48353 | SH | DEFINED | 16,24,25 | 43760 | 4593 |
| SELIGMAN SELECT MUN | COM | 81634A105 | 243 | 24720 | SH | DEFINED | 16,24,25 | 22350 | 2370 |
| SEMGROUP ENERGY PART | COM UNIT L | 81662W108 | 17093 | 592690 | SH | DEFINED | 16,24,25 | 552431 | 40470 |
| SEMICONDUCTOR HLDRS | DEP RCPT | 816636203 | 3 | 100 | SH | DEFINED | 7,11,13 | 100 | 0 |
| SEMICONDUCTOR HLDRS | DEP RCPT | 816636203 | 24495 | 754607 | SH | DEFINED | 15,16,24 | 754607 | 0 |
| SEMICONDUCTOR HLDRS | DEP RCPT | 816636203 | 75255 | 2318404 | SH | DEFINED | 16,24,25 | 2308864 | 9540 |
| SEMICONDUCTOR HLDRS | DEP RCPT | 816636203 | 40458 | 1246400 | SH | CALL DEFINED | 15,16,24 | 1246400 | 0 |
| SEMICONDUCTOR HLDRS | DEP RCPT | 816636203 | 35274 | 1086700 | SH | DEFINED | 16,24,25 | 1086700 | 0 |
| SEMICONDUCTOR HLDRS | DEP RCPT | 816636203 | 48589 | 1496900 | SH | PUT DEFINED | 15,16,24 | 1496900 | 0 |
| SEMICONDUCTOR HLDRS | DEP RCPT | 816636203 | 25296 | 779300 | SH | PUT DEFINED | 16,24,25 | 779300 | 0 |
| SEMTECH CORP | COM | 816850101 | 10 | 662 | SH | DEFINED | 7,11 | 0 | 662 |
| SEMTECH CORP | COM | 816850101 | 1577 | 101640 | SH | DEFINED | 16,24,25 | 94277 | 7363 |
| SEMPRA ENERGY | COM | 816851109 | 377 | 6100 | SH | DEFINED | 30 | 6100 | 0 |
| SEMPRA ENERGY | COM | 816851109 | 1519 | 24554 | SH | DEFINED | 7,11 | 24554 | 0 |
| SEMPRA ENERGY | COM | 816851109 | 25 | 398 | SH | DEFINED | 7,11,13 | 220 | 178 |
| SEMPRA ENERGY | COM | 816851109 | 424 | 6860 | SH | DEFINED | 7,11,33 | 0 | 6860 |
| SEMPRA ENERGY | COM | 816851109 | 73346 | 1185288 | SH | DEFINED | 16,24,25 | 1017695 | 167593 |
| SEMPRA ENERGY | COM | 816851109 | 469 | 7581 | SH | DEFINED | 32,40,41 | 7581 | 0 |
| SENIOR HSG PPTYS TR | SH BEN INT | 81721M109 | 279 | 12300 | SH | DEFINED | 14,31 | 12300 | 0 |
| SENIOR HSG PPTYS TR | SH BEN INT | 81721M109 | 3792 | 167212 | SH | DEFINED | 16,24,25 | 156941 | 10271 |
| SENIOR HSG PPTYS TR | SH BEN INT | 81721M109 | 3216 | 141813 | SH | DEFINED | 32,40,41 | 141813 | 0 |
| SENOMYX INC | COM | 81724Q107 | 1488 | 198612 | SH | DEFINED | 16,24,25 | 172689 | 25923 |
| SENOMYX INC | COM | 81724Q107 | 15 | 2000 | SH | CALL DEFINED | 7,11 | 2000 | 0 |
| SENORX INC | COM | 81724W104 | 1172 | 136318 | SH | DEFINED | 16,24,25 | 90272 | 46046 |
| SENSIENT TECHNOLOGIE | COM | 81725T100 | 62 | 2200 | SH | DEFINED | 30 | 2200 | 0 |
| SENSIENT TECHNOLOGIE | COM | 81725T100 | 2939 | 103938 | SH | DEFINED | 7,11,13 | 101538 | 2400 |
| SENSIENT TECHNOLOGIE | COM | 81725T100 | 421 | 14890 | SH | DEFINED | 16,24,25 | 13256 | 1634 |
| SEPRACOR INC | NOTE | 81315AW4 | 11297 | 12500000 | PRN | DEFINED | 31,45 | 12500000 | 0 |
| SEPRACOR INC | COM | 81315104 | 1166 | 44408 | SH | DEFINED | 7,11 | 44408 | 0 |
| SEPRACOR INC | COM | 81315104 | 3783 | 144116 | SH | DEFINED | 16,24,25 | 134041 | 10075 |
| SEPRACOR INC | COM | 81315104 | 4974 | 189500 | SH | DEFINED | 32,40,41 | 189500 | 0 |
| SEPRACOR INC | COM | 81315104 | 10744 | 409300 | SH | CALL DEFINED | 15,16,24 | 409300 | 0 |
| SEPRACOR INC | COM | 81315104 | 176 | 6700 | SH | DEFINED | 16,24,25 | 6700 | 0 |
| SEPRACOR INC | COM | 81315104 | 3468 | 132100 | SH | PUT DEFINED | 15,16,24 | 132100 | 0 |
| SEPRACOR INC | COM | 81315104 | 66 | 2500 | SH | PUT DEFINED | 16,24,25 | 2500 | 0 |
| SERVICE CORP INTL | COM | 817565104 | 5472 | 389457 | SH | DEFINED | 16,24,25 | 311901 | 77556 |
| SHANDA INTERACTIVE E | SPONSORED | 81941Q203 | 1778 | 53338 | SH | DEFINED | 15,16,24 | 53338 | 0 |
| SHANDA INTERACTIVE E | SPONSORED | 81941Q203 | 1507 | 45215 | SH | DEFINED | 16,24,25 | 40319 | 4896 |
| SHANDA INTERACTIVE E | SPONSORED | 81941Q203 | 4808 | 144200 | SH | CALL DEFINED | 15,16,24 | 144200 | 0 |
| SHANDA INTERACTIVE E | SPONSORED | 81941Q203 | 8015 | 240400 | SH | PUT DEFINED | 15,16,24 | 240400 | 0 |
| SHARPER IMAGE CORP | COM | 820013100 | 119 | 42650 | SH | DEFINED | 16,24,25 | 34250 | 8400 |
| SHAW COMMUNICATIONS | CL B CONV | 82028K200 | 635 | 26800 | SH | DEFINED | 3,9 | 0 | 26800 |
| SHAW COMMUNICATIONS | CL B CONV | 82028K200 | 1603 | 67703 | SH | DEFINED | 16,24,25 | 52657 | 15046 |
| SHAW COMMUNICATIONS | CL B CONV | 82028K200 | 3689 | 155785 | SH | DEFINED | 32,40,41 | 155785 | 0 |
| SHAW COMMUNICATIONS | CL B CONV | 82028K200 | 585 | 24708 | SH | DEFINED | 4,6,7,11 | 24708 | 0 |
| SHAW GROUP INC | COM | 820280105 | 516 | 8537 | SH | DEFINED | 7,11 | 8537 | 0 |
| SHAW GROUP INC | COM | 820280105 | 25 | 415 | SH | DEFINED | 7,11,13 | 415 | 0 |
| SHAW GROUP INC | COM | 820280105 | 5 | 75 | SH | DEFINED | 7,11,33 | 0 | 75 |
| SHAW GROUP INC | COM | 820280105 | 16392 | 271213 | SH | DEFINED | 16,24,25 | 233124 | 38089 |
| SHAW GROUP INC | COM | 820280105 | 15769 | 260900 | SH | CALL DEFINED | 15,16,24 | 260900 | 0 |
| SHAW GROUP INC | COM | 820280105 | 12390 | 205000 | SH | DEFINED | 16,24,25 | 205000 | 0 |
| SHAW GROUP INC | COM | 820280105 | 8564 | 141700 | SH | PUT DEFINED | 15,16,24 | 141700 | 0 |
| SHAW GROUP INC | COM | 820280105 | 2242 | 37100 | SH | PUT DEFINED | 16,24,25 | 37100 | 0 |
| SHENANDOAH TELECOMMU | COM | 82312B106 | 224 | 9322 | SH | DEFINED | 16,24,25 | 9280 | 42 |
| SHERWIN WILLIAMS CO | COM | 824348106 | 1034 | 17814 | SH | DEFINED | 7,11 | 14614 | 3200 |
| SHERWIN WILLIAMS CO | COM | 824348106 | 29 | 501 | SH | DEFINED | 7,11,13 | 501 | 0 |
| SHERWIN WILLIAMS CO | COM | 824348106 | 1261 | 21728 | SH | DEFINED | 15,16,24 | 21728 | 0 |
| SHERWIN WILLIAMS CO | COM | 824348106 | 7162 | 123404 | SH | DEFINED | 16,24,25 | 108665 | 14740 |
| SHERWIN WILLIAMS CO | COM | 824348106 | 620 | 10684 | SH | DEFINED | 32,40,41 | 10684 | 0 |
| SHERWIN WILLIAMS CO | COM | 824348106 | 7261 | 125100 | SH | CALL DEFINED | 15,16,24 | 125100 | 0 |
| SHERWIN WILLIAMS CO | COM | 824348106 | 1376 | 23700 | SH | DEFINED | 16,24,25 | 23700 | 0 |
| SHERWIN WILLIAMS CO | COM | 824348106 | 24052 | 414400 | SH | PUT DEFINED | 15,16,24 | 414400 | 0 |
| SHERWIN WILLIAMS CO | COM | 824348106 | 2995 | 51600 | SH | PUT DEFINED | 16,24,25 | 51600 | 0 |
| SHINHAN FINANCIAL GR | SPN ADR RE | 824596100 | 1471 | 12838 | SH | DEFINED | 16,24,25 | 10470 | 2356 |
| SHINHAN FINANCIAL GR | SPN ADR RE | 824596100 | 573 | 5000 | SH | DEFINED | 16,17,22-24 | 5000 | 0 |

```
SHIRE PLC               SPONSORED   82481R106    307    4450 SH    DEFINED                          30      4450         0        0
SHIRE PLC               SPONSORED   82481R106    142    2065 SH    DEFINED                        7,11        0         0     2065
SHIRE PLC               SPONSORED   82481R106     63     915 SH    DEFINED                     7,11,33        0         0      915
SHIRE PLC               SPONSORED   82481R106   2194   31821 SH    DEFINED                     15,16,24   31821         0        0
SHIRE PLC               SPONSORED   82481R106   1009   14638 SH    DEFINED                     16,24,25    9694         0     4944
SHIRE PLC               SPONSORED   82481R106  32040  464681 SH    DEFINED          16,19,24,26,29  464681         0        0
SHIRE PLC               SPONSORED   82481R106   5144   74600 SH    CALL DEFINED                15,16,24   74600         0        0
SHIRE PLC               SPONSORED   82481R106   7405  107400 SH    PUT  DEFINED                 15,16,24  107400         0        0
SHORE BANCSHARES INC COM            825107105      3     117 SH    DEFINED                        16,24      117         0        0
SHORE BANCSHARES INC COM            825107105   1186   54022 SH    DEFINED                     7,11,13   54022         0        0
SHORE BANCSHARES INC COM            825107105    249   11366 SH    DEFINED                     16,24,25    1899         0     9467
SHORETEL INC                        825211105    212   11160 SH    DEFINED                     16,24,25   11640         0     3510
SHUFFLE MASTER INC      NOTE  1.25  825549AB4   7095  7840000 PRN  DEFINED                     16,24,25  7840000        0        0
SHUFFLE MASTER INC      COM         825549108   1471  122645 SH    DEFINED                        7,11  122645         0        0
SHUFFLE MASTER INC      COM         825549108      3     250 SH    DEFINED                     7,11,33        0         0      250
SHUFFLE MASTER INC      COM         825549108    102    8512 SH    DEFINED                     16,24,25    6437         0     2075
SHUFFLE MASTER INC      COM         825549108   2417  201600 SH    CALL DEFINED                15,16,24  201600         0        0
SHUFFLE MASTER INC      COM         825549108    634   52900 SH    PUT  DEFINED                 15,16,24   52900         0        0
SHUTTERFLY INC          COM         82568P304    325   12674 SH    DEFINED                     16,24,25    9378         0     3296
SIEMENS A G             SPONSORED   826197501    916    5818 SH    DEFINED                        7,11    2561         0     3257
SIEMENS A G             SPONSORED   826197501     13      80 SH    DEFINED                     7,11,13       60         0       20
SIEMENS A G             SPONSORED   826197501  24982  158759 SH    DEFINED                     16,24,25  129030         0    29729
SIEMENS A G             SPONSORED   826197501   3336   21200 SH    DEFINED                     32,40,41   21200         0        0
SIEMENS A G             SPONSORED   826197501  28844  183300 SH    DEFINED  2,6,7,10-11,18,20,21,28  183300         0        0
SIEMENS A G             SPONSORED   826197501   1023    6500 SH    CALL DEFINED                15,16,24    6500         0        0
SIEMENS A G             SPONSORED   826197501   3242   20600 SH    PUT  DEFINED                 15,16,24   20600         0        0
SIERRA HEALTH SVCS I COM            826322109     28     668 SH    DEFINED                        7,11      668         0        0
SIERRA HEALTH SVCS I COM            826322109   2885   68767 SH    DEFINED                     16,24,25   67687         0     1080
SIERRA HEALTH SVCS I COM            826322109    285    6800 SH    DEFINED                     32,40,41    6800         0        0
SIERRA PAC RES NEW                  826428104    311   18300 SH    DEFINED                         3,9        0         0    18300
SIERRA PAC RES NEW                  826428104      7     387 SH    DEFINED                        7,11      387         0        0
SIERRA PAC RES NEW                  826428104   9546  562179 SH    DEFINED                     16,24,25  431707         0   130472
SIERRA WIRELESS INC  COM            826516106    863   58131 SH    DEFINED                     16,24,25   58131         0        0
SIERRA WIRELESS INC  COM            826516106   1040   70000 SH    PUT  DEFINED                 16,24,25   70000         0        0
SIFCO INDS INC          COM         826546103      3     200 SH    DEFINED                        16,24      200         0        0
SIFCO INDS INC          COM         826546103    407   24226 SH    DEFINED                     16,24,25   24226         0        0
SIGMA ALDRICH CORP      COM         826552101   1231   22540 SH    DEFINED                        7,11   17740         0     4800
SIGMA ALDRICH CORP      COM         826552101    739   13534 SH    DEFINED                     7,11,13   13534         0        0
SIGMA ALDRICH CORP      COM         826552101   7752  141971 SH    DEFINED                     16,24,25  133740         0     8231
SIGMA ALDRICH CORP      COM         826552101    249    4555 SH    DEFINED                     32,40,41    4555         0        0
SIGMA DESIGNS INC       COM         826565103    144    2600 SH    DEFINED                        7,11    2600         0        0
SIGMA DESIGNS INC       COM         826565103   3475   62948 SH    DEFINED                        7,11   62948         0        0
SIGMA DESIGNS INC       COM         826565103  11248  203761 SH    DEFINED                     15,16,24  203761         0        0
SIGMA DESIGNS INC       COM         826565103   2529   45817 SH    DEFINED                     16,24,25   42398         0     3419
SIGMA DESIGNS INC       COM         826565103   8153  147700 SH    CALL DEFINED                15,16,24  147700         0        0
SIGMA DESIGNS INC       COM         826565103   3475   62948 SH    CALL DEFINED                16,24,25   62948         0        0
SIGMA DESIGNS INC       COM         826565103   3475   62948 SH    PUT  DEFINED                    7,11   62948         0        0
SIGMA DESIGNS INC       COM         826565103  23466  425100 SH    PUT  DEFINED                 15,16,24  425100         0        0
SIGMATEL INC            COM         82661W107    103   48842 SH    DEFINED                     15,16,24   48842         0        0
SIGMATEL INC            COM         82661W107      2     946 SH    DEFINED                     16,24,25     946         0        0
SIGMATEL INC            COM         82661W107    182   86400 SH    PUT  DEFINED                 15,16,24   86400         0        0
SIGNET GROUP PLC        SP ADR REP  82668L872     83    5890 SH    DEFINED                          30    5890         0        0
SIGNET GROUP PLC        SP ADR REP  82668L872    119    8466 SH    DEFINED                        7,11        0         0     8466
SIGNET GROUP PLC        SP ADR REP  82668L872   3444  244284 SH    DEFINED                     16,24,25  244284         0        0
SIGNATURE BK NEW YOR COM            82669G104    137    4050 SH    DEFINED                          30    4050         0        0
SIGNATURE BK NEW YOR COM            82669G104    725   21478 SH    DEFINED                     16,24,25   14766         0     6712
SILICON LABORATORIES COM            826919102     62    1665 SH    DEFINED                        7,11    1401         0      264
SILICON LABORATORIES COM            826919102    878   23460 SH    DEFINED                     16,24,25   21941         0     1519
SILICON LABORATORIES COM            826919102    614   16400 SH    DEFINED                     32,40,41   16400         0        0
SILICON LABORATORIES COM            826919102   6015  160700 SH    CALL DEFINED                15,16,24  160700         0        0
SILICON LABORATORIES COM            826919102    550   14700 SH    CALL DEFINED                16,24,25   14700         0        0
SILICON LABORATORIES COM            826919102   4623  123500 SH    PUT  DEFINED                 15,16,24  123500         0        0
SILICON LABORATORIES COM            826919102    356    9500 SH    PUT  DEFINED                 16,24,25    9500         0        0
SILGAN HOLDINGS INC  COM            827048109    384    7390 SH    DEFINED                     7,11,13    7390         0        0
SILGAN HOLDINGS INC  COM            827048109   1755   33782 SH    DEFINED                     16,24,25   28754         0     5028
SILICON IMAGE INC       COM         82705T102    119   26400 SH    DEFINED                     16,24,25   26100         0      300
SILICON MOTION TECHN SPONSORED      82706C108     98    5500 SH    DEFINED                          30    5500         0        0
SILICON MOTION TECHN SPONSORED      82706C108    497   27979 SH    DEFINED                     16,24,25   25889         0     2090
SILICONWARE PRECISIO SPONSD ADR     827084864    137   11289 SH    DEFINED                          30   11289         0        0
SILICONWARE PRECISIO SPONSD ADR     827084864     20    2213 SH    DEFINED                     7,11,13    1863         0      350
SILICONWARE PRECISIO SPONSD ADR     827084864   1262  141979 SH    DEFINED                     16,24,25  125785         0    16194
SILICONWARE PRECISIO SPONSD ADR     827084864     16    1783 SH    DEFINED          16,19,24,26,27    1783         0        0
SILVER STD RES INC      COM         82823L106   1017   27837 SH    DEFINED                     15,16,24   27837         0        0
SILVER STD RES INC      COM         82823L106    462   12640 SH    DEFINED                     16,24,25   11763         0      877
SILVER STD RES INC      COM         82823L106    965   26425 SH    DEFINED                     4,6,7,11   26425         0        0
SILVER STD RES INC      COM         82823L106    716   19600 SH    CALL DEFINED                15,16,24   19600         0        0
SILVER STD RES INC      COM         82823L106   3525   96500 SH    PUT  DEFINED                 15,16,24   96500         0        0
SILVER WHEATON CORP     COM         828336107   1549   91293 SH    DEFINED                        7,11   91293         0        0
SILVER WHEATON CORP     COM         828336107   1123   66203 SH    DEFINED                     15,16,24   66203         0        0
SILVER WHEATON CORP     COM         828336107    736   43346 SH    DEFINED                     16,24,25   37246         0     6100
SILVER WHEATON CORP     COM         828336107     67    3970 SH    DEFINED               5-7,11,43,44       0      3970        0
SILVER WHEATON CORP     COM         828336107   1617   95300 SH    CALL DEFINED                15,16,24   95300         0        0
SILVER WHEATON CORP     COM         828336107   3058  180200 SH    PUT  DEFINED                 15,16,24  180200         0        0
SILVERLEAF RESORTS I COM            828395103      2     100 SH    DEFINED                        16,24     100         0        0
SILVERLEAF RESORTS I COM            828395103     45   10775 SH    DEFINED                     16,24,25   10650         0      125
SIMON PPTY GROUP INC COM            828806109   3069   35336 SH    DEFINED                        7,11   31936         0     3400
SIMON PPTY GROUP INC COM            828806109  28282  325600 SH    DEFINED                      14,31  325600         0        0
SIMON PPTY GROUP INC COM            828806109    241    2775 SH    DEFINED                     7,11,13    2775         0        0
SIMON PPTY GROUP INC COM            828806109   8972  103295 SH    DEFINED                     16,24,25   89139         0    14155
SIMON PPTY GROUP INC COM            828806109  67389  775831 SH    DEFINED                     32,40,41  775831         0        0
SIMON PPTY GROUP INC COM            828806109    450    5185 SH    DEFINED          16,19,24,26,27    5185         0        0
SIMON PPTY GROUP INC COM            828806109  14419  166000 SH    CALL DEFINED                15,16,24  166000         0        0
SIMON PPTY GROUP INC COM            828806109   1364   15700 SH    CALL DEFINED                16,24,25   15700         0        0
SIMON PPTY GROUP INC COM            828806109  16634  191500 SH    PUT  DEFINED                 15,16,24  191500         0        0
SIMON PPTY GROUP INC COM            828806109   1364   15700 SH    PUT  DEFINED                 16,24,25   15700         0        0
SIMPSON MANUFACTURIN COM            829073105     61    2300 SH    DEFINED                          30    2300         0        0
SIMPSON MANUFACTURIN COM            829073105      3     130 SH    DEFINED                     7,11,33        0         0      130
SIMPSON MANUFACTURIN COM            829073105   3584  134774 SH    DEFINED                     16,24,25  114285         0    20488
SINCLAIR BROADCAST G NOTE  3.00  829226AW9     22   25000 PRN   DEFINED                     16,24,25   25000         0        0
SINCLAIR BROADCAST G CL A           829226109     94   11439 SH    DEFINED                     16,24,25   11404         0       35
SINGAPORE FD INC        COM         82929L109    448   25196 SH    DEFINED                     16,24,25   20761         0     4435
SINOPEC SHANGHAI PET SPON ADR H     82935M109      6     101 SH    DEFINED                     7,11,13      66         0       35
SINOPEC SHANGHAI PET SPON ADR H     82935M109    683   11186 SH    DEFINED                     16,24,25    8176         0     3010
SIRIUS SATELLITE RAD NOTE  3.25  82966UAD5     34   35000 PRN   DEFINED                     16,24,25   35000         0        0
SIRIUS SATELLITE RAD COM            82966U103    482  159119 SH    DEFINED                        7,11  159119         0        0
SIRIUS SATELLITE RAD COM            82966U103     18    6080 SH    DEFINED                     7,11,13    5980         0      100
SIRIUS SATELLITE RAD COM            82966U103    956  315480 SH    DEFINED                     15,16,24  315480         0        0
SIRIUS SATELLITE RAD COM            82966U103   4900  1617060 SH   DEFINED                     16,24,25  1437304        0   179756
SIRIUS SATELLITE RAD COM            82966U103    152   50000 SH    DEFINED  2,6,7,10-11,18,20,21,28   50000         0        0
SIRIUS SATELLITE RAD COM            82966U103    908  299800 SH    CALL DEFINED                15,16,24  299800         0        0
SIRIUS SATELLITE RAD COM            82966U103    667  220000 SH    CALL DEFINED                16,24,25  220000         0        0
SIRIUS SATELLITE RAD COM            82966U103    621  204900 SH    PUT  DEFINED                 15,16,24  204900         0        0
SIRIUS SATELLITE RAD COM            82966U103   2720  897700 SH    PUT  DEFINED                 16,24,25  897700         0        0
SIRF TECHNOLOGY HLDG COM            82967H101     70    2800 SH    DEFINED                          30    2800         0        0
```

| Name | Type | Rate | CUSIP | MktVal | Shares | Unit | Opt | Disc | Other | Sole | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SIRF TECHNOLOGY HLDG | COM | | 82967H101 | 2938 | 116903 | SH | | DEFINED | 7,11 | 116589 | 0 | 314 |
| SIRF TECHNOLOGY HLDG | COM | | 82967H101 | 1995 | 79371 | SH | | DEFINED | 16,24,25 | 57386 | 0 | 21985 |
| SIRF TECHNOLOGY HLDG | COM | | 82967H101 | 353 | 14030 | SH | | DEFINED | 32,40,41 | 14030 | 0 | 0 |
| SIRF TECHNOLOGY HLDG | COM | | 82967H101 | 6413 | 255200 | SH | CALL | DEFINED | 15,16,24 | 255200 | 0 | 0 |
| SIRF TECHNOLOGY HLDG | COM | | 82967H101 | 2930 | 116589 | SH | CALL | DEFINED | 16,24,25 | 116589 | 0 | 0 |
| SIRF TECHNOLOGY HLDG | COM | | 82967H101 | 2930 | 116589 | SH | PUT | DEFINED | 7,11 | 116589 | 0 | 0 |
| SIRF TECHNOLOGY HLDG | COM | | 82967H101 | 3734 | 148600 | SH | PUT | DEFINED | 15,16,24 | 148600 | 0 | 0 |
| SIRTRIS PHARMACEUTIC | COM | | 82968A105 | 149 | 10915 | SH | | DEFINED | 16,24,25 | 10715 | 0 | 200 |
| SIX FLAGS INC | NOTE | 4.50 | 83001PA28 | 44955 | 62221000 | PRN | | DEFINED | 16,24,25 | 62221000 | 0 | 0 |
| SIX FLAGS INC | COM | | 83001P109 | 2 | 1106 | SH | | DEFINED | 7,11 | 1106 | 0 | 0 |
| SIX FLAGS INC | COM | | 83001P109 | 272 | 133945 | SH | | DEFINED | 16,24,25 | 132195 | 0 | 1750 |
| SIX FLAGS INC | COM | | 83001P109 | 735 | 362300 | SH | | DEFINED | 15,16,24 | 362300 | 0 | 0 |
| SIX FLAGS INC | COM | | 83001P109 | 316 | 155900 | SH | PUT | DEFINED | 15,16,24 | 155900 | 0 | 0 |
| SKECHERS U S A INC | CL A | | 830566105 | 1099 | 56325 | SH | | DEFINED | 16,24,25 | 55975 | 0 | 350 |
| SKYWEST INC | COM | | 830879102 | 62 | 2300 | SH | | DEFINED | 30 | 2300 | 0 | 0 |
| SKYWEST INC | COM | | 830879102 | 2573 | 95828 | SH | | DEFINED | 16,24,25 | 89730 | 0 | 6098 |
| SKYWORKS SOLUTIONS I | NOTE | 1.25 | 83088MAF9 | 79 | 71000 | PRN | | DEFINED | 16,24,25 | 71000 | 0 | 0 |
| SKYWORKS SOLUTIONS I | NOTE | 1.50 | 83088MAH5 | 9398 | 8524000 | PRN | | DEFINED | 16,24,25 | 8524000 | 0 | 0 |
| SKYWORKS SOLUTIONS I | COM | | 83088M102 | 1939 | 228085 | SH | | DEFINED | 7,11 | 227453 | 0 | 632 |
| SKYWORKS SOLUTIONS I | COM | | 83088M102 | 1619 | 190509 | SH | | DEFINED | 16,24,25 | 185242 | 0 | 5267 |
| SKYWORKS SOLUTIONS I | COM | | 83088M102 | 2785 | 327600 | SH | CALL | DEFINED | 15,16,24 | 327600 | 0 | 0 |
| SKYWORKS SOLUTIONS I | COM | | 83088M102 | 1636 | 192500 | SH | PUT | DEFINED | 15,16,24 | 192500 | 0 | 0 |
| SKILLSOFT PLC | SPONSORED | | 830928107 | 247 | 25820 | SH | | DEFINED | 30 | 25820 | 0 | 0 |
| SKILLSOFT PLC | SPONSORED | | 830928107 | 775 | 81056 | SH | | DEFINED | 16,24,25 | 47452 | 0 | 33604 |
| SKILLSOFT PLC | SPONSORED | | 830928107 | 8 | 800 | SH | | DEFINED | 5-7,11,43,44 | 0 | 800 | 0 |
| SMART BALANCE INC | COM | | 83169Y108 | 42355 | 3875100 | SH | | DEFINED | 16,24,25 | 3875100 | 0 | 0 |
| SMITH & NEPHEW PLC | SPDN ADR N | | 83175M205 | 190 | 3306 | SH | | DEFINED | 7,11 | | 0 | 3306 |
| SMITH & NEPHEW PLC | SPDN ADR N | | 83175M205 | 6 | 105 | SH | | DEFINED | 7,11,13 | | 0 | 105 |
| SMITH & NEPHEW PLC | SPDN ADR N | | 83175M205 | 2037 | 35470 | SH | | DEFINED | 16,24,25 | 27126 | 0 | 8344 |
| SMITH & NEPHEW PLC | SPDN ADR N | | 83175M205 | 695 | 12100 | SH | | DEFINED | 16,19,24,26,29 | 12100 | 0 | 0 |
| SMITH A O | COM | | 831865209 | 3 | 97 | SH | | DEFINED | 7,11 | | 0 | 97 |
| SMITH A O | COM | | 831865209 | 823 | 23475 | SH | | DEFINED | 7,11,13 | 23300 | 0 | 175 |
| SMITH A O | COM | | 831865209 | 54 | 1535 | SH | | DEFINED | 16,24,25 | 1138 | 0 | 397 |
| SMITH INTL INC | COM | | 832110100 | 1729 | 23407 | SH | | DEFINED | 7,11 | 22507 | 0 | 900 |
| SMITH INTL INC | COM | | 832110100 | 346 | 4689 | SH | | DEFINED | 7,11,13 | 4689 | 0 | 0 |
| SMITH INTL INC | COM | | 832110100 | 34 | 455 | SH | | DEFINED | 7,11,33 | | 0 | 455 |
| SMITH INTL INC | COM | | 832110100 | 22319 | 302225 | SH | | DEFINED | 16,24,25 | 272283 | 0 | 29942 |
| SMITH INTL INC | COM | | 832110100 | 948 | 12841 | SH | | DEFINED | 32,40,41 | 12841 | 0 | 0 |
| SMITH INTL INC | COM | | 832110100 | 7 | 100 | SH | | DEFINED | 5-7,11,43,44 | 0 | 100 | 0 |
| SMITH INTL INC | COM | | 832110100 | 8013 | 108500 | SH | CALL | DEFINED | 15,16,24 | 108500 | 0 | 0 |
| SMITH INTL INC | COM | | 832110100 | 369 | 5000 | SH | CALL | DEFINED | 16,24,25 | 5000 | 0 | 0 |
| SMITH INTL INC | COM | | 832110100 | 9106 | 123300 | SH | PUT | DEFINED | 15,16,24 | 123300 | 0 | 0 |
| SMITH INTL INC | COM | | 832110100 | 369 | 5000 | SH | PUT | DEFINED | 16,24,25 | 5000 | 0 | 0 |
| SMITH MICRO SOFTWARE | COM | | 832154108 | 73 | 8600 | SH | | DEFINED | 30 | 8600 | 0 | 0 |
| SMITH MICRO SOFTWARE | COM | | 832154108 | 64 | 7500 | SH | | DEFINED | 16,24,25 | 7500 | 0 | 0 |
| SMITHFIELD FOODS INC | COM | | 832248108 | 1 | 43 | SH | | DEFINED | 3,9 | | 0 | 43 |
| SMITHFIELD FOODS INC | COM | | 832248108 | 187 | 6465 | SH | | DEFINED | 7,11 | 6465 | 0 | 0 |
| SMITHFIELD FOODS INC | COM | | 832248108 | 30 | 1050 | SH | | DEFINED | 7,11,13 | 1050 | 0 | 0 |
| SMITHFIELD FOODS INC | COM | | 832248108 | 756 | 26141 | SH | | DEFINED | 16,24,25 | 20891 | 0 | 5250 |
| SMITHFIELD FOODS INC | COM | | 832248108 | 4708 | 162800 | SH | CALL | DEFINED | 15,16,24 | 162800 | 0 | 0 |
| SMITHFIELD FOODS INC | COM | | 832248108 | 4046 | 139900 | SH | PUT | DEFINED | 15,16,24 | 139900 | 0 | 0 |
| SMUCKER J M CO | COM NEW | | 832696405 | 67 | 1300 | SH | | DEFINED | 30 | 1300 | 0 | 0 |
| SMUCKER J M CO | COM NEW | | 832696405 | 954 | 18542 | SH | | DEFINED | 7,11 | 17621 | 0 | 921 |
| SMUCKER J M CO | COM NEW | | 832696405 | 767 | 14903 | SH | | DEFINED | 7,11,13 | 13953 | 0 | 950 |
| SMUCKER J M CO | COM NEW | | 832696405 | 7 | 130 | SH | | DEFINED | 7,11,33 | | 0 | 130 |
| SMUCKER J M CO | COM NEW | | 832696405 | 2273 | 44196 | SH | | DEFINED | 16,24,25 | 24624 | 0 | 19572 |
| SMURFIT-STONE CONTAI | COM | | 832727101 | 110 | 10393 | SH | | DEFINED | 7,11 | 9193 | 0 | 1200 |
| SMURFIT-STONE CONTAI | COM | | 832727101 | 15460 | 1464022 | SH | | DEFINED | 16,24,25 | 1334430 | 0 | 129592 |
| SMURFIT-STONE CONTAI | COM | | 832727101 | 1571 | 148800 | SH | CALL | DEFINED | 15,16,24 | 148800 | 0 | 0 |
| SMURFIT-STONE CONTAI | COM | | 832727101 | 2455 | 232500 | SH | PUT | DEFINED | 15,16,24 | 232500 | 0 | 0 |
| SMURFIT-STONE CONTAI | COM | | 832727101 | 14 | 1300 | SH | PUT | DEFINED | 16,24,25 | 1300 | 0 | 0 |
| SMURFIT-STONE CONTAI | PFD CV EX | | 832727200 | 543 | 27140 | SH | | DEFINED | 16,24,25 | 16090 | 0 | 11050 |
| SNAP ON INC | COM | | 833034101 | 190 | 3940 | SH | | DEFINED | 12 | | 0 | 3940 |
| SNAP ON INC | COM | | 833034101 | 2 | 36 | SH | | DEFINED | 3,9 | | 0 | 36 |
| SNAP ON INC | COM | | 833034101 | 1241 | 25719 | SH | | DEFINED | 7,11 | 1430 | 0 | 24289 |
| SNAP ON INC | COM | | 833034101 | 1479 | 30665 | SH | | DEFINED | 7,11,13 | 27710 | 0 | 2955 |
| SNAP ON INC | COM | | 833034101 | 24 | 500 | SH | | DEFINED | 7,11,33 | | 0 | 500 |
| SNAP ON INC | COM | | 833034101 | 1135 | 23532 | SH | | DEFINED | 16,24,25 | 22440 | 0 | 1092 |
| SNAP ON INC | COM | | 833034101 | 2 | 44 | SH | | DEFINED | 32,40,41 | 44 | 0 | 0 |
| SOCIEDAD QUIMICA MIN | SPON ADR S | | 833635105 | 327 | 1852 | SH | | DEFINED | 16,24,25 | 1850 | 0 | 2 |
| SOCIEDAD QUIMICA MIN | SPON ADR S | | 833635105 | 80 | 455 | SH | | DEFINED | 32,40,41 | 455 | 0 | 0 |
| SOFTWARE HOLDRS TR | DEPOSITORY | | 83404B103 | 45803 | 1044540 | SH | | DEFINED | 16,24,25 | 1044332 | 0 | 208 |
| SOHU COM INC | COM | | 83408W103 | 449 | 8230 | SH | | DEFINED | 7,11 | 8230 | 0 | 0 |
| SOHU COM INC | COM | | 83408W103 | 2155 | 39520 | SH | | DEFINED | 16,24,25 | 30689 | 0 | 8831 |
| SOHU COM INC | COM | | 83408W103 | 3053 | 56000 | SH | CALL | DEFINED | 7,11 | 56000 | 0 | 0 |
| SOHU COM INC | COM | | 83408W103 | 6346 | 116400 | SH | CALL | DEFINED | 15,16,24 | 116400 | 0 | 0 |
| SOHU COM INC | COM | | 83408W103 | 3538 | 64900 | SH | PUT | DEFINED | 15,16,24 | 64900 | 0 | 0 |
| SOLERA HOLDINGS INC | COM | | 83421A104 | 201 | 8100 | SH | | DEFINED | 30 | 8100 | 0 | 0 |
| SOLERA HOLDINGS INC | COM | | 83421A104 | 191 | 7725 | SH | | DEFINED | 16,24,25 | 6584 | 0 | 1141 |
| SONIC AUTOMOTIVE INC | CL A | | 83545G102 | 479 | 24747 | SH | | DEFINED | 16,24,25 | 23377 | 0 | 1370 |
| SONIC CORP | COM | | 835451105 | 479 | 21884 | SH | | DEFINED | 16,24,25 | 21048 | 0 | 836 |
| SONOCO PRODS CO | COM | | 835495102 | 47 | 1448 | SH | | DEFINED | 7,11 | | 0 | 1448 |
| SONOCO PRODS CO | COM | | 835495102 | 397 | 12150 | SH | | DEFINED | 7,11,13 | 12150 | 0 | 0 |
| SONOCO PRODS CO | COM | | 835495102 | 5 | 140 | SH | | DEFINED | 7,11,33 | | 0 | 140 |
| SONOCO PRODS CO | COM | | 835495102 | 856 | 26190 | SH | | DEFINED | 16,24,25 | 16523 | 0 | 9667 |
| SONY CORP | ADR NEW | | 835699307 | 99 | 1825 | SH | | DEFINED | 7,11,13 | 1625 | 0 | 200 |
| SONY CORP | ADR NEW | | 835699307 | 10637 | 195885 | SH | | DEFINED | 16,24,25 | 161832 | 0 | 34053 |
| SONY CORP | ADR NEW | | 835699307 | 1200 | 22092 | SH | | DEFINED | 16,19,24,26,27 | 22092 | 0 | 0 |
| SONY CORP | ADR NEW | | 835699307 | 152 | 2800 | SH | | DEFINED | 2,6,7,10-11,18,20,21,28 | 2800 | 0 | 0 |
| SONY CORP | ADR NEW | | 835699307 | 5408 | 99600 | SH | CALL | DEFINED | 15,16,24 | 99600 | 0 | 0 |
| SONY CORP | ADR NEW | | 835699307 | 2536 | 46700 | SH | CALL | DEFINED | 15,16,24 | 46700 | 0 | 0 |
| SONY CORP | ADR NEW | | 835699307 | 4235 | 78000 | SH | PUT | DEFINED | 15,16,24 | 78000 | 0 | 0 |
| SOTHEBYS | COM | | 835898107 | 2690 | 70613 | SH | | DEFINED | 7,11 | 70613 | 0 | 0 |
| SOTHEBYS | COM | | 835898107 | 1443 | 37885 | SH | | DEFINED | 16,24,25 | 35642 | 0 | 2242 |
| SOTHEBYS | COM | | 835898107 | 1010 | 26500 | SH | CALL | DEFINED | 16,24,25 | 26500 | 0 | 0 |
| SONUS NETWORKS INC | COM | | 835916107 | 634 | 108679 | SH | | DEFINED | 16,24,25 | 108679 | 0 | 0 |
| SONUS NETWORKS INC | COM | | 835916107 | 2891 | 495809 | SH | | DEFINED | 16,24,25 | 451953 | 0 | 43856 |
| SONUS NETWORKS INC | COM | | 835916107 | 1356 | 232600 | SH | CALL | DEFINED | 15,16,24 | 232600 | 0 | 0 |
| SONUS NETWORKS INC | COM | | 835916107 | 2636 | 452100 | SH | PUT | DEFINED | 15,16,24 | 452100 | 0 | 0 |
| SOURCE CAP INC | COM | | 836144105 | 511 | 8502 | SH | | DEFINED | 7,11 | 4867 | 0 | 3635 |
| SOURCE INTERLINK COS | COM NEW | | 836151209 | 63 | 21868 | SH | | DEFINED | 16,24,25 | 21868 | 0 | 0 |
| SOURCEFIRE INC | COM | | 83616T108 | 184 | 22085 | SH | | DEFINED | 16,24,25 | 12965 | 0 | 9120 |
| SOURCEFORGE INC | COM | | 83616W101 | 118 | 48187 | SH | | DEFINED | 16,24 | 48187 | 0 | 0 |
| SOURCEFORGE INC | COM | | 83616W101 | 4 | 1625 | SH | | DEFINED | 16,24,25 | 825 | 0 | 800 |
| SOUTH JERSEY INDS IN | COM | | 838518108 | 230 | 6367 | SH | | DEFINED | 16,24,25 | 6367 | 0 | 0 |
| SOUTHERN CO | COM | | 842587107 | 19065 | 491989 | SH | | DEFINED | 7,11 | 405557 | 0 | 86432 |
| SOUTHERN CO | COM | | 842587107 | 181 | 4670 | SH | | DEFINED | 7,11,13 | 4370 | 0 | 300 |
| SOUTHERN CO | COM | | 842587107 | 23 | 600 | SH | | DEFINED | 7,11,33 | | 0 | 600 |
| SOUTHERN CO | COM | | 842587107 | 22581 | 582725 | SH | | DEFINED | 16,24,25 | 493445 | 0 | 89279 |
| SOUTHERN CO | COM | | 842587107 | 841 | 21707 | SH | | DEFINED | 32,40,41 | 21707 | 0 | 0 |
| SOUTHERN CO | COM | | 842587107 | 161 | 4156 | SH | | DEFINED | 16,19,24,26,27 | 4156 | 0 | 0 |
| SOUTHERN CO | COM | | 842587107 | 2131 | 55000 | SH | CALL | DEFINED | 7,11 | 55000 | 0 | 0 |
| SOUTHERN CO | COM | | 842587107 | 6660 | 172400 | SH | CALL | DEFINED | 15,16,24 | 172400 | 0 | 0 |
| SOUTHERN CO | COM | | 842587107 | 8072 | 208300 | SH | CALL | DEFINED | 16,24,25 | 208300 | 0 | 0 |

```
SOUTHERN CO                COM            842587107   2131     55000 SH   PUT  DEFINED                     7,11        55000          0        0
SOUTHERN CO                COM            842587107   1798     46400 SH   PUT  DEFINED                  15,16,24       46400          0        0
SOUTHERN CO                COM            842587107   7149    184500 SH        DEFINED                  16,24,25      184500          0        0
SOUTHERN COPPER CORP COM   COM            84265V105   2357     22419 SH        DEFINED                     7,11        22419          0        0
SOUTHERN COPPER CORP COM   COM            84265V105     47       450 SH        DEFINED                  7,11,13          450          0        0
SOUTHERN COPPER CORP COM   COM            84265V105     62       590 SH        DEFINED                  7,11,33            0          0      590
SOUTHERN COPPER CORP COM   COM            84265V105   5982     56902 SH        DEFINED                  15,16,24       56902          0        0
SOUTHERN COPPER CORP COM   COM            84265V105  14158    134671 SH        DEFINED                  16,24,25      113195          0    21475
SOUTHERN COPPER CORP COM   COM            84265V105   1068     10155 SH        DEFINED                  32,40,41       10155          0        0
SOUTHERN COPPER CORP COM   COM            84265V105  19207    182700 SH   CALL DEFINED                  15,16,24      182700          0        0
SOUTHERN COPPER CORP COM   COM            84265V105  19638    186800 SH   PUT  DEFINED                  15,16,24      186800          0        0
SOUTHERN UN CO NEW         COM            844030106     36      1215 SH        DEFINED                  7,11,13         1215          0        0
SOUTHERN UN CO NEW         COM            844030106   3530    120230 SH        DEFINED                  16,24,25      107457          0    12773
SOUTHWEST AIRLS CO         COM            844741108   1056     86561 SH        DEFINED                     7,11        86561          0        0
SOUTHWEST AIRLS CO         COM            844741108   1500    122955 SH        DEFINED                  7,11,13       122955          0        0
SOUTHWEST AIRLS CO         COM            844741108    684     56086 SH        DEFINED                  15,16,24       56086          0        0
SOUTHWEST AIRLS CO         COM            844741108  12159    996666 SH        DEFINED                  16,24,25      899108          0    97557
SOUTHWEST AIRLS CO         COM            844741108   1989    163067 SH        DEFINED                  32,40,41      163067          0        0
SOUTHWEST AIRLS CO         COM            844741108   1532    125600 SH        DEFINED               16,19,24,26,27   125600          0        0
SOUTHWEST AIRLS CO         COM            844741108   2388    195700 SH   CALL DEFINED                  16,24,25      195700          0        0
SOUTHWEST AIRLS CO         COM            844741108   1648    135100 SH   CALL DEFINED                  16,24,25      135100          0        0
SOUTHWEST AIRLS CO         COM            844741108   4562    373900 SH   PUT  DEFINED                  15,16,24      373900          0        0
SOUTHWEST AIRLS CO         COM            844741108   4141    339400 SH   PUT  DEFINED                  16,24,25      339400          0        0
SOUTHWEST GAS CORP         COM            844895102     65      2200 SH        DEFINED                       30         2200          0        0
SOUTHWEST GAS CORP         COM            844895102   1005     33773 SH        DEFINED                     7,11       33773          0        0
SOUTHWEST GAS CORP         COM            844895102   1723     57879 SH        DEFINED                  16,24,25       33514          0    24365
SOUTHWEST WTR CO           COM            845331107    203     16188 SH        DEFINED                     7,11       16188          0        0
SOUTHWEST WTR CO           COM            845331107      4       300 SH        DEFINED                  7,11,13          300          0        0
SOUTHWEST WTR CO           COM            845331107    120      9608 SH        DEFINED                  16,24,25        6508          0     3100
SOUTHWESTERN ENERGY        COM            845467109    923     16570 SH        DEFINED                     7,11       16570          0        0
SOUTHWESTERN ENERGY        COM            845467109      4        75 SH        DEFINED                  7,11,33            0          0       75
SOUTHWESTERN ENERGY        COM            845467109    312      5604 SH        DEFINED                  15,16,24        5604          0        0
SOUTHWESTERN ENERGY        COM            845467109   9979    179092 SH        DEFINED                  16,24,25      142752          0    36340
SOUTHWESTERN ENERGY        COM            845467109    281      5036 SH        DEFINED                  32,40,41        5036          0        0
SOUTHWESTERN ENERGY        COM            845467109  13936    250100 SH   CALL DEFINED                  15,16,24      250100          0        0
SOUTHWESTERN ENERGY        COM            845467109     22       400 SH   CALL DEFINED                  16,24,25          400          0        0
SOUTHWESTERN ENERGY        COM            845467109  10174    182600 SH   PUT  DEFINED                  15,16,24      182600          0        0
SOVEREIGN BANCORP IN COM   COM            845905108   2363    207253 SH        DEFINED                     7,11      207253          0        0
SOVEREIGN BANCORP IN COM   COM            845905108    151     13258 SH        DEFINED                  7,11,13         3158          0    10100
SOVEREIGN BANCORP IN COM   COM            845905108    935     82002 SH        DEFINED                  15,16,24       82002          0        0
SOVEREIGN BANCORP IN COM   COM            845905108   9674    848618 SH        DEFINED                  16,24,25      791973          0    56644
SOVEREIGN BANCORP IN COM   COM            845905108    129     11323 SH        DEFINED                  32,40,41       11323          0        0
SOVEREIGN BANCORP IN COM   COM            845905108  35454   3110000 SH   CALL DEFINED                     7,11     3110000          0        0
SOVEREIGN BANCORP IN COM   COM            845905108   3881    340430 SH   CALL DEFINED                  15,16,24      340430          0        0
SOVEREIGN BANCORP IN COM   COM            845905108  49697   4359415 SH   CALL DEFINED                  16,24,25     4359415          0        0
SOVEREIGN BANCORP IN COM   COM            845905108   4406    386525 SH   PUT  DEFINED                  15,16,24      386525          0        0
SOVEREIGN BANCORP IN COM   COM            845905108  13610   1193900 SH   PUT  DEFINED                  16,24,25     1193900          0        0
SOVRAN SELF STORAGE        COM            84610H108    335      8364 SH        DEFINED                  16,24,25        6952          0     1412
SOVRAN SELF STORAGE        COM            84610H108    416     10364 SH        DEFINED                  32,40,41       10364          0        0
SPACEHAB INC               NOTE  5.50     846243A05    368    750000 PRN       DEFINED                  16,24,25      750000          0        0
SPANSION INC               COM CL A       84649R101   4346   1105941 SH        DEFINED                  16,24,25     1101978          0     3963
SPANSION INC               COM CL A       84649R101   1273    323800 SH   CALL DEFINED                  16,24,25      323800          0        0
SPANSION INC               COM CL A       84649R101    999    254300 SH   CALL DEFINED                  16,24,25      254300          0        0
SPANSION INC               COM CL A       84649R101    706    179600 SH   PUT  DEFINED                  15,16,24      179600          0        0
SPANSION INC               COM CL A       84649R101     39     10000 SH   PUT  DEFINED                  16,24,25       10000          0        0
SPARTAN STORES INC         COM            846822104      4       196 SH        DEFINED                    16,24          196          0        0
SPARTAN STORES INC         COM            846822104    401     17528 SH        DEFINED                  16,24,25       17331          0      197
SPARTECH CORP              COM NEW        847220209    194     13791 SH        DEFINED                  16,24,25        7841          0     5950
SPECTRA ENERGY PARTN COM   COM            84756N109   6649    277489 SH        DEFINED                  16,24,25      254586          0    22933
SPECTRA ENERGY CORP        COM            847560109    430     16650 SH        DEFINED                       12            0          0    16650
SPECTRA ENERGY CORP        COM            847560109     31      1214 SH        DEFINED                     3,9             0          0     1214
SPECTRA ENERGY CORP        COM            847560109  18074    699995 SH        DEFINED                     7,11      286779       1400   411816
SPECTRA ENERGY CORP        COM            847560109    154      5952 SH        DEFINED                  7,11,13         4240          0     1712
SPECTRA ENERGY CORP        COM            847560109     71      2734 SH        DEFINED                  7,11,33            0          0     2734
SPECTRA ENERGY CORP        COM            847560109     88      3401 SH        DEFINED                  15,16,24        3401          0        0
SPECTRA ENERGY CORP        COM            847560109  30875   1195790 SH        DEFINED                  16,24,25      978201          0   217589
SPECTRA ENERGY CORP        COM            847560109    481     18640 SH        DEFINED                  32,40,41       18640          0        0
SPECTRA ENERGY CORP        COM            847560109    792     30688 SH        DEFINED               16,19,24,26,27    30688          0        0
SPECTRA ENERGY CORP        COM            847560109   1461     56600 SH   CALL DEFINED                  15,16,24       56600          0        0
SPECTRA ENERGY CORP        COM            847560109     26      1000 SH   CALL DEFINED                  16,24,25        1000          0        0
SPECTRA ENERGY CORP        COM            847560109    418     16200 SH   PUT  DEFINED                  15,16,24       16200          0        0
SPECTRA ENERGY CORP        COM            847560109     26      1000 SH   PUT  DEFINED                  16,24,25        1000          0        0
SPECTRANETICS CORP         COM            84760C107    224     14600 SH        DEFINED                       30        14600          0        0
SPECTRANETICS CORP         COM            84760C107   1837    119843 SH        DEFINED                  16,24,25      107715          0    12128
SPECTRUM CTL INC           COM            84761S101    433     28234 SH        DEFINED                  16,24,25       19869          0     8365
SPECTRUM BRANDS INC        COM            84762L105    128     24050 SH        DEFINED                  16,24,25       24050          0        0
SPHERION CORP              COM            848420105    119     16348 SH        DEFINED                  16,24,25       16289          0       59
SPRINT NEXTEL CORP         COM SER 1      852061100  12010    914675 SH        DEFINED                     7,11      914675          0        0
SPRINT NEXTEL CORP         COM SER 1      852061100   1163     88545 SH        DEFINED                  7,11,13        86542          0     2003
SPRINT NEXTEL CORP         COM SER 1      852061100     12       912 SH        DEFINED                  7,11,33            0          0      912
SPRINT NEXTEL CORP         COM SER 1      852061100   2249    171252 SH        DEFINED                  15,16,24      171252          0        0
SPRINT NEXTEL CORP         COM SER 1      852061100  26186   1994339 SH        DEFINED                  16,24,25     1644478          0   349860
SPRINT NEXTEL CORP         COM SER 1      852061100   1108     84413 SH        DEFINED                  32,40,41       84413          0        0
SPRINT NEXTEL CORP         COM SER 1      852061100     67      5070 SH        DEFINED               16,19,24,26,27        0       5070        0
SPRINT NEXTEL CORP         COM SER 1      852061100   1243     94700 SH        DEFINED                5-7,11,43,44        0          0    94700
SPRINT NEXTEL CORP         COM SER 1      852061100  34138   2600000 SH   CALL DEFINED                     7,11     2600000          0        0
SPRINT NEXTEL CORP         COM SER 1      852061100  11112    846300 SH   CALL DEFINED                  15,16,24      846300          0        0
SPRINT NEXTEL CORP         COM SER 1      852061100  20978   1597700 SH   CALL DEFINED                  16,24,25     1597700          0        0
SPRINT NEXTEL CORP         COM SER 1      852061100  10550    803500 SH   PUT  DEFINED                  15,16,24      803500          0        0
SPRINT NEXTEL CORP         COM SER 1      852061100   7222    550000 SH   PUT  DEFINED                  16,24,25      550000          0        0
STAGE STORES INC           COM NEW        85254C305     34      2297 SH        DEFINED                       30         2297          0        0
STAGE STORES INC           COM NEW        85254C305    166     11215 SH        DEFINED                  16,24,25       11215          0        0
STAKTEK HLDGS INC          COM            85256P106      1       300 SH        DEFINED                    16,24          300          0        0
STAKTEK HLDGS INC          COM            85256P106     46     23559 SH        DEFINED                  16,24,25       23559          0        0
STAMPS COM INC             COM NEW        852857200    278     22795 SH        DEFINED                  16,24,25       22795          0        0
STANCORP FINL GROUP        COM            852891100   1411     28008 SH        DEFINED                  16,24,25       23072          0     4936
STANDARD MICROSYSTEM COM   COM            853626109     70      1800 SH        DEFINED                       30         1800          0        0
STANDARD MICROSYSTEM COM   COM            853626109  10600    271319 SH        DEFINED                  16,24,25      219369          0    51950
STANDARD MTR PRODS I SDCV  6.75           853666AB1    163    170000 PRN       DEFINED                  16,24,25      170000          0        0
STANDARD MTR PRODS I COM   COM            853666105      1        14 SH        DEFINED                     7,11           14          0        0
STANDARD MTR PRODS I COM   COM            853666105   1073    131456 SH        DEFINED                  16,24,25       92906          0    38550
STANDARD PAC CORP NE COM   COM            85375C101   2147    640787 SH        DEFINED                  16,24,25      609805          0    30981
STANDARD PAC CORP NE COM   COM            85375C101   2146    640600 SH   CALL DEFINED                  15,16,24      640600          0        0
STANDARD PAC CORP NE COM   COM            85375C101    218     65100 SH   CALL DEFINED                  16,24,25       65100          0        0
STANDARD PAC CORP NE COM   COM            85375C101   3384   1010100 SH   PUT  DEFINED                  15,16,24     1010100          0        0
STANDARD REGISTER CO       COM            853887107      3       250 SH        DEFINED                  7,11,13          250          0        0
STANDARD REGISTER CO       COM            853887107    360     30839 SH        DEFINED                  16,24,25       26887          0     3951
STANDEX INTL CORP          COM            854231107    551     31557 SH        DEFINED                  7,11,13        31557          0        0
STANDEX INTL CORP          COM            854231107   1082     62030 SH        DEFINED                  16,24,25       57520          0     4510
STANLEY INC                COM            854532108   1357     42385 SH        DEFINED                  16,24,25       23313          0    19072
STANLEY WKS                COM            854616109    417      8600 SH        DEFINED                     3,9             0          0     8600
STANLEY WKS                COM            854616109  10298    212420 SH        DEFINED                     7,11      212420          0        0
STANLEY WKS                COM            854616109    216      4451 SH        DEFINED                  7,11,13         4451          0        0
STANLEY WKS                COM            854616109   6751    139245 SH        DEFINED                  16,24,25      101252          0    37992
```

| Name | Type | CUSIP | Shares | Value | | Status | Codes | Amount | | |
|---|---|---|---|---|---|---|---|---|---|---|
| STANLEY WKS | COM | 854616109 | 163 | 3362 | SH | DEFINED | 32,40,41 | 3362 | 0 | 0 |
| STANLEY WKS | COM | 854616109 | 133175 | 2747000 | SH | CALL DEFINED | 7,11 | 2747000 | 0 | 0 |
| STANTEC INC | COM | 85472N109 | 507 | 13000 | SH | DEFINED | 32,40,41 | 13000 | 0 | 0 |
| STAPLES INC | COM | 855030102 | 14 | 600 | SH | DEFINED | 12 | 0 | 0 | 600 |
| STAPLES INC | COM | 855030102 | 2539 | 110059 | SH | DEFINED | 7,11 | 89509 | 0 | 20550 |
| STAPLES INC | COM | 855030102 | 1045 | 45303 | SH | DEFINED | 7,11,13 | 45103 | 0 | 200 |
| STAPLES INC | COM | 855030102 | 9 | 400 | SH | DEFINED | 7,11,33 | 0 | 0 | 400 |
| STAPLES INC | COM | 855030102 | 47969 | 2079260 | SH | DEFINED | 16,24,25 | 1715683 | 0 | 363576 |
| STAPLES INC | COM | 855030102 | 826 | 35816 | SH | DEFINED | 32,40,41 | 35816 | 0 | 0 |
| STAPLES INC | COM | 855030102 | 2229 | 96600 | SH | CALL DEFINED | 15,16,24 | 96600 | 0 | 0 |
| STAPLES INC | COM | 855030102 | 8111 | 351600 | SH | CALL DEFINED | 15,16,24 | 351600 | 0 | 0 |
| STAPLES INC | COM | 855030102 | 957 | 41500 | SH | PUT DEFINED | 15,16,24 | 41500 | 0 | 0 |
| STAPLES INC | COM | 855030102 | 2803 | 121500 | SH | PUT DEFINED | 16,24,25 | 121500 | 0 | 0 |
| STAR GAS PARTNERS L | UNIT LTD P | 85512C105 | 141 | 35508 | SH | DEFINED | 16,24,25 | 32223 | 0 | 3285 |
| STARBUCKS CORP | COM | 855244109 | 20 | 1000 | SH | DEFINED | 12 | 0 | 0 | 1000 |
| STARBUCKS CORP | COM | 855244109 | 37455 | 1829741 | SH | DEFINED | 7,11 | 1798675 | 0 | 31066 |
| STARBUCKS CORP | COM | 855244109 | 676 | 33040 | SH | DEFINED | 7,11,13 | 32203 | 0 | 837 |
| STARBUCKS CORP | COM | 855244109 | 125 | 6100 | SH | DEFINED | 7,11,33 | 0 | 0 | 6100 |
| STARBUCKS CORP | COM | 855244109 | 3846 | 187871 | SH | DEFINED | 15,16,24 | 187871 | 0 | 0 |
| STARBUCKS CORP | COM | 855244109 | 89419 | 4368293 | SH | DEFINED | 16,24,25 | 3788214 | 0 | 580079 |
| STARBUCKS CORP | COM | 855244109 | 2591 | 126571 | SH | DEFINED | 32,40,41 | 126571 | 0 | 0 |
| STARBUCKS CORP | COM | 855244109 | 5062 | 247308 | SH | DEFINED | 16,19,24,26,27 | 247308 | 0 | 0 |
| STARBUCKS CORP | COM | 855244109 | 974 | 47576 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 47576 | 0 | 0 |
| STARBUCKS CORP | COM | 855244109 | 5857 | 286113 | SH | CALL DEFINED | 7,11 | 286113 | 0 | 0 |
| STARBUCKS CORP | COM | 855244109 | 19522 | 953700 | SH | CALL DEFINED | 15,16,24 | 953700 | 0 | 0 |
| STARBUCKS CORP | COM | 855244109 | 41687 | 2036500 | SH | DEFINED | 16,24,25 | 2036200 | 0 | 300 |
| STARBUCKS CORP | COM | 855244109 | 16923 | 826700 | SH | PUT DEFINED | 15,16,24 | 826700 | 0 | 0 |
| STARBUCKS CORP | COM | 855244109 | 11603 | 566813 | SH | PUT DEFINED | 16,24,25 | 566813 | 0 | 0 |
| STARRETT L S CO | CL A | 855668109 | 1525 | 90201 | SH | DEFINED | 16,24,25 | 71626 | 0 | 18575 |
| STARTEK INC | COM | 85569C107 | 7 | 700 | SH | DEFINED | 7,11,13 | 700 | 0 | 0 |
| STARTEK INC | COM | 85569C107 | 551 | 59231 | SH | DEFINED | 16,24,25 | 53923 | 0 | 5308 |
| STATE BANCORP INC N. | COM | 855716106 | 236 | 18159 | SH | DEFINED | 16,24,25 | 2658 | 0 | 15500 |
| STARWOOD HOTELS&RESO | COM | 85590A401 | 869 | 19735 | SH | DEFINED | 7,11 | 19267 | 0 | 468 |
| STARWOOD HOTELS&RESO | COM | 85590A401 | 11417 | 259300 | SH | DEFINED | 14,31 | 259300 | 0 | 0 |
| STARWOOD HOTELS&RESO | COM | 85590A401 | 21 | 484 | SH | DEFINED | 7,11,13 | 454 | 0 | 30 |
| STARWOOD HOTELS&RESO | COM | 85590A401 | 11 | 250 | SH | DEFINED | 7,11,33 | 0 | 0 | 250 |
| STARWOOD HOTELS&RESO | COM | 85590A401 | 14474 | 328740 | SH | DEFINED | 15,16,24 | 328740 | 0 | 0 |
| STARWOOD HOTELS&RESO | COM | 85590A401 | 13894 | 315546 | SH | DEFINED | 16,24,25 | 274707 | 0 | 40838 |
| STARWOOD HOTELS&RESO | COM | 85590A401 | 3746 | 85083 | SH | DEFINED | 32,40,41 | 85083 | 0 | 0 |
| STARWOOD HOTELS&RESO | COM | 85590A401 | 106 | 2415 | SH | DEFINED | 5-7,11,43,44 | 0 | 2415 | 0 |
| STARWOOD HOTELS&RESO | COM | 85590A401 | 141 | 3200 | SH | DEFINED | 16,19,24,26,27 | 3200 | 0 | 0 |
| STARWOOD HOTELS&RESO | COM | 85590A401 | 33502 | 760900 | SH | CALL DEFINED | 15,16,24 | 760900 | 0 | 0 |
| STARWOOD HOTELS&RESO | COM | 85590A401 | 837 | 19000 | SH | CALL DEFINED | 16,24,25 | 19000 | 0 | 0 |
| STARWOOD HOTELS&RESO | COM | 85590A401 | 34484 | 783200 | SH | PUT DEFINED | 15,16,24 | 783200 | 0 | 0 |
| STARWOOD HOTELS&RESO | COM | 85590A401 | 5284 | 120000 | SH | PUT DEFINED | 16,24,25 | 120000 | 0 | 0 |
| STATE STR CORP | COM | 857477103 | 69 | 850 | SH | DEFINED | 12 | 0 | 0 | 850 |
| STATE STR CORP | COM | 857477103 | 10274 | 126526 | SH | DEFINED | 7,11 | 74286 | 0 | 52240 |
| STATE STR CORP | COM | 857477103 | 92 | 1128 | SH | DEFINED | 7,11,13 | 913 | 0 | 215 |
| STATE STR CORP | COM | 857477103 | 288 | 3545 | SH | DEFINED | 7,11,33 | 0 | 0 | 3545 |
| STATE STR CORP | COM | 857477103 | 50913 | 627004 | SH | DEFINED | 16,24,25 | 493048 | 0 | 133956 |
| STATE STR CORP | COM | 857477103 | 1050 | 12937 | SH | DEFINED | 32,40,41 | 12937 | 0 | 0 |
| STATE STR CORP | COM | 857477103 | 6496 | 80000 | SH | CALL DEFINED | 7,11 | 80000 | 0 | 0 |
| STATE STR CORP | COM | 857477103 | 14584 | 179600 | SH | CALL DEFINED | 15,16,24 | 179600 | 0 | 0 |
| STATE STR CORP | COM | 857477103 | 1023 | 12600 | SH | CALL DEFINED | 16,24,25 | 12600 | 0 | 0 |
| STATE STR CORP | COM | 857477103 | 9306 | 114600 | SH | PUT DEFINED | 15,16,24 | 114600 | 0 | 0 |
| STATE STR CORP | COM | 857477103 | 1023 | 12600 | SH | PUT DEFINED | 16,24,25 | 12600 | 0 | 0 |
| STATOILHYDRO ASA | SPONSORED | 85771P102 | 227 | 7437 | SH | DEFINED | 30 | 7437 | 0 | 0 |
| STATOILHYDRO ASA | SPONSORED | 85771P102 | 14 | 447 | SH | DEFINED | 7,11,13 | 447 | 0 | 0 |
| STATOILHYDRO ASA | SPONSORED | 85771P102 | 6421 | 210376 | SH | DEFINED | 16,24,25 | 171727 | 0 | 38649 |
| STEEL DYNAMICS INC | COM | 858119100 | 436 | 7320 | SH | DEFINED | 3,9 | 0 | 0 | 7320 |
| STEEL DYNAMICS INC | COM | 858119100 | 288 | 4827 | SH | DEFINED | 7,11 | 4827 | 0 | 0 |
| STEEL DYNAMICS INC | COM | 858119100 | 4314 | 72423 | SH | DEFINED | 15,16,24 | 72423 | 0 | 0 |
| STEEL DYNAMICS INC | COM | 858119100 | 13041 | 218913 | SH | DEFINED | 16,24,25 | 193254 | 0 | 25659 |
| STEEL DYNAMICS INC | COM | 858119100 | 14041 | 235700 | SH | CALL DEFINED | 15,16,24 | 235700 | 0 | 0 |
| STEEL DYNAMICS INC | COM | 858119100 | 26485 | 444600 | SH | PUT DEFINED | 15,16,24 | 444600 | 0 | 0 |
| STEIN MART INC | COM | 858375108 | 93 | 19600 | SH | DEFINED | 7,11,13 | 17300 | 0 | 2300 |
| STEIN MART INC | COM | 858375108 | 496 | 104571 | SH | DEFINED | 16,24,25 | 92771 | 0 | 11800 |
| STERICYCLE INC | COM | 858912108 | 363 | 6105 | SH | DEFINED | 7,11 | 5155 | 0 | 950 |
| STERICYCLE INC | COM | 858912108 | 36 | 600 | SH | DEFINED | 7,11,13 | 600 | 0 | 0 |
| STERICYCLE INC | COM | 858912108 | 121 | 2034 | SH | DEFINED | 7,11,33 | 0 | 0 | 2034 |
| STERICYCLE INC | COM | 858912108 | 21619 | 363957 | SH | DEFINED | 16,24,25 | 306928 | 0 | 57029 |
| STERICYCLE INC | COM | 858912108 | 333 | 5600 | SH | DEFINED | 32,40,41 | 5600 | 0 | 0 |
| STERIS CORP | COM | 859152001 | 1561 | 54128 | SH | DEFINED | 7,11,13 | 53153 | 0 | 975 |
| STERIS CORP | COM | 859152100 | 1139 | 39506 | SH | DEFINED | 16,24,25 | 33560 | 0 | 5945 |
| STERLING BANCORP | COM | 859158107 | 261 | 19159 | SH | DEFINED | 16,24,25 | 14358 | 0 | 4801 |
| STERLING FINL CORP | COM | 859317109 | 765 | 46615 | SH | DEFINED | 16,24,25 | 43742 | 0 | 2873 |
| STERLING FINL CORP W | COM | 859319105 | 423 | 25200 | SH | DEFINED | 16,24,25 | 23056 | 0 | 2144 |
| STERLITE INDS INDIA | ADS | 859737207 | 5 | 200 | SH | DEFINED | 16,24 | 200 | 0 | 0 |
| STERLITE INDS INDIA | ADS | 859737207 | 1101 | 42220 | SH | DEFINED | 16,24,25 | 30650 | 0 | 11570 |
| STERLITE INDS INDIA | ADS | 859737207 | 1163 | 44600 | SH | CALL DEFINED | 15,16,24 | 44600 | 0 | 0 |
| STERLITE INDS INDIA | ADS | 859737207 | 240 | 9200 | SH | PUT DEFINED | 15,16,24 | 9200 | 0 | 0 |
| STEWART ENTERPRISES | CL A | 860370105 | 131 | 14750 | SH | DEFINED | 30 | 14750 | 0 | 0 |
| STEWART ENTERPRISES | CL A | 860370105 | 64 | 7207 | SH | DEFINED | 16,24,25 | 6507 | 0 | 700 |
| STIFEL FINL CORP | COM | 860630102 | 5373 | 102215 | SH | DEFINED | 16,24,25 | 98665 | 0 | 3550 |
| STILLWATER MNG CO | COM | 86074Q102 | 966 | 100000 | SH | DEFINED | 42 | 100000 | 0 | 0 |
| STILLWATER MNG CO | COM | 86074Q102 | 192 | 19912 | SH | DEFINED | 16,24,25 | 19912 | 0 | 0 |
| STMICROELECTRONICS N | NY REGISTR | 861012102 | 107 | 7500 | SH | DEFINED | 7,11 | 0 | 0 | 7500 |
| STMICROELECTRONICS N | NY REGISTR | 861012102 | 102 | 7100 | SH | DEFINED | 7,11,13 | 7100 | 0 | 0 |
| STMICROELECTRONICS N | NY REGISTR | 861012102 | 304 | 21272 | SH | DEFINED | 16,24,25 | 20917 | 0 | 355 |
| STMICROELECTRONICS N | NY REGISTR | 861012102 | 427 | 29870 | SH | DEFINED | 16,19,24,26,27 | 29870 | 0 | 0 |
| STMICROELECTRONICS N | NY REGISTR | 861012102 | 831 | 58100 | SH | CALL DEFINED | 15,16,24 | 58100 | 0 | 0 |
| STMICROELECTRONICS N | NY REGISTR | 861012102 | 708 | 49500 | SH | PUT DEFINED | 15,16,24 | 49500 | 0 | 0 |
| STONE ENERGY CORP | COM | 861642106 | 1830 | 39009 | SH | DEFINED | 16,24,25 | 38724 | 0 | 285 |
| STONERIDGE INC | COM | 86183Q102 | 845 | 105050 | SH | DEFINED | 16,24,25 | 71350 | 0 | 33700 |
| STONELEIGH PARTNERS | *W EXP 05/ | 86192I126 | 699 | 1000000 | SH | DEFINED | 16,24,25 | 1000000 | 0 | 0 |
| STORA ENSO CORP | SPON ADR R | 86210M106 | 497 | 33784 | SH | DEFINED | 16,24,25 | 31962 | 0 | 1822 |
| STORA ENSO CORP | SPON ADR R | 86210M106 | 1584 | 107745 | SH | DEFINED | 16,19,24,26,27 | 107745 | 0 | 0 |
| STORM CAT ENERGY COR | COM | 862168101 | 18 | 25000 | SH | DEFINED | 16,24,25 | 25000 | 0 | 0 |
| STRATEGIC GLOBAL INC | COM | 862719101 | 2149 | 212819 | SH | DEFINED | 16,24,25 | 196036 | 0 | 16783 |
| STRATEGIC HOTELS & R | COM | 86272T106 | 19 | 1106 | SH | DEFINED | 16,24,25 | 1106 | 0 | 0 |
| STRATEGIC HOTELS & R | COM | 86272T106 | 624 | 37289 | SH | DEFINED | 32,40,41 | 37289 | 0 | 0 |
| STRAYER ED INC | COM | 863236105 | 3009 | 17639 | SH | DEFINED | 16,24,25 | 11109 | 0 | 6530 |
| STREETTRACKS GOLD TR | GOLD SHS | 86330T104 | 18 | 220 | SH | DEFINED | 7,11 | 0 | 0 | 220 |
| STREETTRACKS GOLD TR | GOLD SHS | 86330T104 | 41 | 500 | SH | DEFINED | 7,11,33 | 0 | 0 | 500 |
| STREETTRACKS GOLD TR | GOLD SHS | 86330T104 | 202558 | 2456441 | SH | DEFINED | 16,24,25 | 2236671 | 0 | 219770 |
| STRYKER CORP | COM | 863667101 | 15 | 200 | SH | DEFINED | 12 | 0 | 0 | 200 |
| STRYKER CORP | COM | 863667101 | 18015 | 241097 | SH | DEFINED | 7,11 | 121805 | 0 | 119292 |
| STRYKER CORP | COM | 863667101 | 5750 | 76953 | SH | DEFINED | 7,11,13 | 75654 | 0 | 1299 |
| STRYKER CORP | COM | 863667101 | 601 | 8041 | SH | DEFINED | 7,11,33 | 0 | 0 | 8041 |
| STRYKER CORP | COM | 863667101 | 2547 | 34087 | SH | DEFINED | 15,16,24 | 34087 | 0 | 0 |
| STRYKER CORP | COM | 863667101 | 86186 | 1153454 | SH | DEFINED | 16,24,25 | 908894 | 0 | 244560 |
| STRYKER CORP | COM | 863667101 | 1952 | 26121 | SH | DEFINED | 32,40,41 | 26121 | 0 | 0 |
| STRYKER CORP | COM | 863667101 | 13842 | 185248 | SH | DEFINED | 5-7,11,43,44 | 0 | 185248 | 0 |
| STRYKER CORP | COM | 863667101 | 4423 | 59200 | SH | CALL DEFINED | 7,11 | 59200 | 0 | 0 |

| Issuer | Class | CUSIP | Val1 | Val2 | Unit | Option | Status | Code | Col1 | Col2 | Col3 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| STRYKER CORP | COM | 863667101 | 4849 | 64900 | SH | CALL | DEFINED | 15,16,24 | 64900 | 0 | 0 |
| STRYKER CORP | COM | 863667101 | 4349 | 58200 | SH | CALL | DEFINED | 16,24,25 | 58200 | 0 | 0 |
| STRYKER CORP | COM | 863667101 | 1494 | 20000 | SH | PUT | DEFINED | 7,11 | 20000 | 0 | 0 |
| STRYKER CORP | COM | 863667101 | 5731 | 76700 | SH | PUT | DEFINED | 15,16,24 | 76700 | 0 | 0 |
| STRYKER CORP | COM | 863667101 | 4969 | 66500 | SH | PUT | DEFINED | 16,24,25 | 66500 | 0 | 0 |
| STUDENT LN CORP | COM | 863902102 | 1760000 | 16000000 | SH | | DEFINED | 7,11 | 16000000 | 0 | 0 |
| STUDENT LN CORP | COM | 863902102 | 60 | 547 | SH | | DEFINED | 16,24,25 | 547 | 0 | 0 |
| SUBURBAN PROPANE PAR | UNIT LTD P | 864482104 | 12 | 300 | SH | | DEFINED | 7,11,13 | 300 | 0 | 0 |
| SUBURBAN PROPANE PAR | UNIT LTD P | 864482104 | 126 | 3121 | SH | | DEFINED | 7,11,33 | 0 | 0 | 3121 |
| SUBURBAN PROPANE PAR | UNIT LTD P | 864482104 | 12951 | 319783 | SH | | DEFINED | 16,24,25 | 274661 | 0 | 45121 |
| SULPHCO INC | COM | 865378103 | 783 | 149974 | SH | | DEFINED | 15,16,24 | 149974 | 0 | 0 |
| SULPHCO INC | COM | 865378103 | 194 | 37151 | SH | | DEFINED | 16,24,25 | 36971 | 0 | 180 |
| SULPHCO INC | COM | 865378103 | 21 | 3950 | SH | | DEFINED | 5-7,11,43,44 | 0 | 3950 | 0 |
| SULPHCO INC | COM | 865378103 | 1525 | 292100 | SH | CALL | DEFINED | 15,16,24 | 292100 | 0 | 0 |
| SULPHCO INC | COM | 865378103 | 1059 | 202800 | SH | PUT | DEFINED | 15,16,24 | 202800 | 0 | 0 |
| SUN COMMUNITIES INC | COM | 866674104 | 0 | 2 | SH | | DEFINED | 16,24,25 | 2 | 0 | 0 |
| SUN COMMUNITIES INC | COM | 866674104 | 822 | 39009 | SH | | DEFINED | 32,40,41 | 39009 | 0 | 0 |
| SUN INC | SDCV 6.75 | 866762AG2 | 9810 | 4265000 | PRN | | DEFINED | 16,24,25 | 4265000 | 0 | 0 |
| SUN LIFE FINL INC | COM | 866796105 | 13 | 233 | SH | | DEFINED | 7,11,13 | 233 | 0 | 0 |
| SUN LIFE FINL INC | COM | 866796105 | 19 | 340 | SH | | DEFINED | 7,11,33 | 0 | 0 | 340 |
| SUN LIFE FINL INC | COM | 866796105 | 5218 | 93271 | SH | | DEFINED | 16,24,25 | 74343 | 0 | 18928 |
| SUN LIFE FINL INC | COM | 866796105 | 5353 | 95699 | SH | | DEFINED | 32,40,41 | 95699 | 0 | 0 |
| SUN LIFE FINL INC | COM | 866796105 | 2124 | 37972 | SH | | DEFINED | 4,6,7,11 | 37972 | 0 | 0 |
| SUN LIFE FINL INC | COM | 866796105 | 99 | 1770 | SH | | DEFINED | 5-7,11,43,44 | 0 | 1770 | 0 |
| SUN MICROSYSTEMS INC | COM NEW | 866810203 | 1523 | 84020 | SH | | DEFINED | 7,11 | 84020 | 0 | 0 |
| SUN MICROSYSTEMS INC | COM NEW | 866810203 | 171 | 9449 | SH | | DEFINED | 7,11,13 | 9449 | 0 | 0 |
| SUN MICROSYSTEMS INC | COM NEW | 866810203 | 6873 | 379080 | SH | | DEFINED | 16,24,25 | 283422 | 0 | 95658 |
| SUN MICROSYSTEMS INC | COM NEW | 866810203 | 2534 | 139783 | SH | | DEFINED | 32,40,41 | 139783 | 0 | 0 |
| SUN MICROSYSTEMS INC | COM NEW | 866810203 | 113 | 6233 | SH | | DEFINED | 5-7,11,43,44 | 0 | 6233 | 0 |
| SUN MICROSYSTEMS INC | COM NEW | 866810203 | 4580 | 252641 | SH | | DEFINED | 2,6,7,10-11,18,20,21,28 | 252641 | 0 | 0 |
| SUN MICROSYSTEMS INC | COM NEW | 866810203 | 10387 | 572900 | SH | CALL | DEFINED | 15,16,24 | 572900 | 0 | 0 |
| SUN MICROSYSTEMS INC | COM NEW | 866810203 | 7410 | 408700 | SH | PUT | DEFINED | 15,16,24 | 408700 | 0 | 0 |
| SUN MICROSYSTEMS INC | COM NEW | 866810203 | 696 | 38400 | SH | PUT | DEFINED | 16,24,25 | 37700 | 0 | 700 |
| SUN-TIMES MEDIA GROU | COM | 86688Q100 | 31 | 13931 | SH | | DEFINED | 16,24,25 | 13788 | 0 | 143 |
| SUN HEALTHCARE GROUP | COM NEW | 866933401 | 184 | 10700 | SH | | DEFINED | 30 | 10700 | 0 | 0 |
| SUN HEALTHCARE GROUP | COM NEW | 866933401 | 1258 | 73259 | SH | | DEFINED | 16,24,25 | 63097 | 0 | 10162 |
| SUN HYDRAULICS CORP | COM | 866942105 | 677 | 26821 | SH | | DEFINED | 16,24,25 | 23514 | 0 | 3306 |
| SUNAMERICA FCSED ALP | COM | 867037103 | 627 | 33164 | SH | | DEFINED | 16,24,25 | 31265 | 0 | 1898 |
| SUNAMERICA FOCUSE AL | COM | 867038101 | 1381 | 73307 | SH | | DEFINED | 16,24,25 | 41607 | 0 | 31700 |
| SUNCOR ENERGY INC | COM | 867229106 | 451 | 4150 | SH | | DEFINED | 30 | 4150 | 0 | 0 |
| SUNCOR ENERGY INC | COM | 867229106 | 471 | 4335 | SH | | DEFINED | 7,11 | 0 | 0 | 4335 |
| SUNCOR ENERGY INC | COM | 867229106 | 150 | 1377 | SH | | DEFINED | 7,11,13 | 1209 | 0 | 168 |
| SUNCOR ENERGY INC | COM | 867229106 | 180 | 1655 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1655 |
| SUNCOR ENERGY INC | COM | 867229106 | 66164 | 608515 | SH | | DEFINED | 16,24,25 | 506130 | 0 | 102384 |
| SUNCOR ENERGY INC | COM | 867229106 | 18976 | 174528 | SH | | DEFINED | 32,40,41 | 174528 | 0 | 0 |
| SUNCOR ENERGY INC | COM | 867229106 | 6149 | 56552 | SH | | DEFINED | 4,6,7,11 | 56552 | 0 | 0 |
| SUNCOR ENERGY INC | COM | 867229106 | 51429 | 473000 | SH | CALL | DEFINED | 15,16,24 | 473000 | 0 | 0 |
| SUNCOR ENERGY INC | COM | 867229106 | 11960 | 110000 | SH | CALL | DEFINED | 4,6,7,11 | 110000 | 0 | 0 |
| SUNCOR ENERGY INC | COM | 867229106 | 42057 | 386800 | SH | PUT | DEFINED | 15,16,24 | 386800 | 0 | 0 |
| SUNCOR ENERGY INC | COM | 867229106 | 979 | 9000 | SH | PUT | DEFINED | 16,24,25 | 9000 | 0 | 0 |
| SUNOPTA INC | COM | 8676BP108 | 217 | 16256 | SH | | DEFINED | 16,24,25 | 15426 | 0 | 830 |
| SUNOPTA INC | COM | 8676BP108 | 427 | 32000 | SH | | DEFINED | 32,40,41 | 32000 | 0 | 0 |
| SUNOCO LOGISTICS PRT | COM UNITS | 86764L108 | 3 | 50 | SH | | DEFINED | 16,24 | 50 | 0 | 0 |
| SUNOCO LOGISTICS PRT | COM UNITS | 86764L108 | 35 | 700 | SH | | DEFINED | 7,11,13 | 700 | 0 | 0 |
| SUNOCO LOGISTICS PRT | COM UNITS | 86764L108 | 2117 | 42188 | SH | | DEFINED | 16,24,25 | 39378 | 0 | 2810 |
| SUNOCO INC | COM | 86764P109 | 2339 | 32288 | SH | | DEFINED | 7,11 | 32288 | 0 | 0 |
| SUNOCO INC | COM | 86764P109 | 34 | 475 | SH | | DEFINED | 7,11,13 | 475 | 0 | 0 |
| SUNOCO INC | COM | 86764P109 | 497 | 6866 | SH | | DEFINED | 7,11 | 6866 | 0 | 0 |
| SUNOCO INC | COM | 86764P109 | 27007 | 372818 | SH | | DEFINED | 16,24,25 | 361779 | 0 | 11038 |
| SUNOCO INC | COM | 86764P109 | 268 | 3695 | SH | | DEFINED | 32,40,41 | 3695 | 0 | 0 |
| SUNOCO INC | COM | 86764P109 | 18704 | 258194 | SH | CALL | DEFINED | 7,11 | 258194 | 0 | 0 |
| SUNOCO INC | COM | 86764P109 | 18277 | 252300 | SH | CALL | DEFINED | 15,16,24 | 252300 | 0 | 0 |
| SUNOCO INC | COM | 86764P109 | 978 | 13500 | SH | CALL | DEFINED | 16,24,25 | 13500 | 0 | 0 |
| SUNOCO INC | COM | 86764P109 | 9417 | 130000 | SH | PUT | DEFINED | 7,11 | 130000 | 0 | 0 |
| SUNOCO INC | COM | 86764P109 | 27259 | 376300 | SH | PUT | DEFINED | 15,16,24 | 376300 | 0 | 0 |
| SUNOCO INC | COM | 86764P109 | 9721 | 134194 | SH | PUT | DEFINED | 16,24,25 | 134194 | 0 | 0 |
| SUNPOWER CORP | COM CL A | 867652109 | 312 | 2394 | SH | | DEFINED | 7,11 | 2394 | 0 | 0 |
| SUNPOWER CORP | COM CL A | 867652109 | 685 | 5251 | SH | | DEFINED | 15,16,24 | 5251 | 0 | 0 |
| SUNPOWER CORP | COM CL A | 867652109 | 6690 | 51309 | SH | | DEFINED | 16,24,25 | 42861 | 0 | 8448 |
| SUNPOWER CORP | COM CL A | 867652109 | 8846 | 67842 | SH | | DEFINED | 32,40,41 | 67842 | 0 | 0 |
| SUNPOWER CORP | COM CL A | 867652109 | 259 | 1990 | SH | | DEFINED | 16,19,24,26,27 | 1990 | 0 | 0 |
| SUNPOWER CORP | COM CL A | 867652109 | 130 | 1000 | SH | CALL | DEFINED | 15,16,24 | 1000 | 0 | 0 |
| SUNRISE SENIOR LIVIN | COM | 86768K106 | 476 | 15500 | SH | | DEFINED | 7,11 | 15500 | 0 | 0 |
| SUNRISE SENIOR LIVIN | COM | 86768K106 | 140 | 4560 | SH | | DEFINED | 7,11,13 | 4560 | 0 | 0 |
| SUNRISE SENIOR LIVIN | COM | 86768K106 | 169 | 5516 | SH | | DEFINED | 15,16,24 | 5516 | 0 | 0 |
| SUNRISE SENIOR LIVIN | COM | 86768K106 | 2599 | 84707 | SH | | DEFINED | 16,24,25 | 72989 | 0 | 11717 |
| SUNRISE SENIOR LIVIN | COM | 86768K106 | 245 | 8000 | SH | | DEFINED | 5-7,11,43,44 | 0 | 8000 | 0 |
| SUNRISE SENIOR LIVIN | COM | 86768K106 | 887 | 28900 | SH | CALL | DEFINED | 15,16,24 | 28900 | 0 | 0 |
| SUNRISE SENIOR LIVIN | COM | 86768K106 | 1408 | 45900 | SH | PUT | DEFINED | 15,16,24 | 45900 | 0 | 0 |
| SUNSTONE HOTEL INVS | COM | 867892101 | 55 | 3000 | SH | | DEFINED | 7,11,33 | 0 | 0 | 3000 |
| SUNSTONE HOTEL INVS | COM | 867892101 | 2808 | 153551 | SH | | DEFINED | 16,24,25 | 114569 | 0 | 38981 |
| SUNSTONE HOTEL INVS | COM | 867892101 | 2468 | 134911 | SH | | DEFINED | 32,40,41 | 134911 | 0 | 0 |
| SUNTRUST BKS INC | COM | 867914103 | 5789 | 92631 | SH | | DEFINED | 7,11 | 74645 | 0 | 17986 |
| SUNTRUST BKS INC | COM | 867914103 | 280 | 4478 | SH | | DEFINED | 7,11,13 | 4478 | 0 | 0 |
| SUNTRUST BKS INC | COM | 867914103 | 75 | 1205 | SH | | DEFINED | 7,11,33 | 0 | 0 | 1205 |
| SUNTRUST BKS INC | COM | 867914103 | 7602 | 121646 | SH | | DEFINED | 15,16,24 | 121646 | 0 | 0 |
| SUNTRUST BKS INC | COM | 867914103 | 8874 | 142004 | SH | | DEFINED | 16,24,25 | 90875 | 0 | 51129 |
| SUNTRUST BKS INC | COM | 867914103 | 4330 | 69286 | SH | | DEFINED | 32,40,41 | 69286 | 0 | 0 |
| SUNTRUST BKS INC | COM | 867914103 | 23909 | 382600 | SH | CALL | DEFINED | 15,16,24 | 382600 | 0 | 0 |
| SUNTRUST BKS INC | COM | 867914103 | 3593 | 57500 | SH | CALL | DEFINED | 16,24,25 | 57500 | 0 | 0 |
| SUNTRUST BKS INC | COM | 867914103 | 17735 | 283800 | SH | PUT | DEFINED | 15,16,24 | 283800 | 0 | 0 |
| SUNTRUST BKS INC | COM | 867914103 | 312 | 5000 | SH | PUT | DEFINED | 16,24,25 | 5000 | 0 | 0 |
| SUNTECH PWR HLDGS CO | ADR | 86800C104 | 2715 | 32982 | SH | | DEFINED | 7,11 | 32982 | 0 | 0 |
| SUNTECH PWR HLDGS CO | ADR | 86800C104 | 12201 | 148213 | SH | | DEFINED | 15,16,24 | 148213 | 0 | 0 |
| SUNTECH PWR HLDGS CO | ADR | 86800C104 | 24636 | 299272 | SH | | DEFINED | 16,24,25 | 248281 | 0 | 50991 |
| SUNTECH PWR HLDGS CO | ADR | 86800C104 | 15336 | 186300 | SH | | DEFINED | 32,40,41 | 186300 | 0 | 0 |
| SUNTECH PWR HLDGS CO | ADR | 86800C104 | 321 | 3900 | SH | | DEFINED | 16,19,24,26,27 | 3900 | 0 | 0 |
| SUNTECH PWR HLDGS CO | ADR | 86800C104 | 26137 | 317500 | SH | CALL | DEFINED | 15,16,24 | 317500 | 0 | 0 |
| SUNTECH PWR HLDGS CO | ADR | 86800C104 | 5779 | 70200 | SH | CALL | DEFINED | 16,24,25 | 70200 | 0 | 0 |
| SUNTECH PWR HLDGS CO | ADR | 86800C104 | 38443 | 467000 | SH | PUT | DEFINED | 15,16,24 | 467000 | 0 | 0 |
| SUPERGEN INC | COM | 868059106 | 311 | 85276 | SH | | DEFINED | 15,16,24 | 85276 | 0 | 0 |
| SUPERGEN INC | COM | 868059106 | 41 | 11171 | SH | | DEFINED | 16,24,25 | 11021 | 0 | 150 |
| SUPERGEN INC | COM | 868059106 | 537 | 147100 | SH | | DEFINED | 15,16,24 | 147100 | 0 | 0 |
| SUPERGEN INC | COM | 868059106 | 371 | 101600 | SH | PUT | DEFINED | 15,16,24 | 101600 | 0 | 0 |
| SUPERIOR ESSEX INC | COM | 86815V105 | 201 | 8384 | SH | | DEFINED | 16,24,25 | 8384 | 0 | 0 |
| SUPERIOR ENERGY SVCS | COM | 868157108 | 458 | 13300 | SH | | DEFINED | 30 | 13300 | 0 | 0 |
| SUPERIOR ENERGY SVCS | COM | 868157108 | 1280 | 37183 | SH | | DEFINED | 7,11 | 37183 | 0 | 0 |
| SUPERIOR ENERGY SVCS | COM | 868157108 | 10750 | 312321 | SH | | DEFINED | 16,24,25 | 249681 | 0 | 62640 |
| SUPERIOR ENERGY SVCS | COM | 868157108 | 258 | 7500 | SH | | DEFINED | 32,40,41 | 7500 | 0 | 0 |
| SUPERIOR INDS INTL I | COM | 868168105 | 2 | 94 | SH | | DEFINED | 3,9 | 0 | 0 | 94 |
| SUPERIOR INDS INTL I | COM | 868168105 | 225 | 12355 | SH | | DEFINED | 16,24,25 | 12024 | 0 | 331 |
| SUPERIOR OFFSHORE IN | COM | 86825Q104 | 163 | 32550 | SH | | DEFINED | 16,24,25 | 25950 | 0 | 6600 |
| SUPERIOR UNIFORM GP | COM | 868358102 | 100 | 10000 | SH | | DEFINED | 7,11,13 | 10000 | 0 | 0 |
| SUPERIOR UNIFORM GP | COM | 868358102 | 32 | 3232 | SH | | DEFINED | 16,24,25 | 1500 | 0 | 1731 |

| Issuer | Class | CUSIP | | Amount | | Type | Codes | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SUPERVALU INC | COM | 868536103 | 1588 | 42335 | SH | DEFINED | 7,11 | 42335 | 0 | 0 |
| SUPERVALU INC | COM | 868536103 | 55 | 1462 | SH | DEFINED | 7,11,13 | 1462 | 0 | 0 |
| SUPERVALU INC | COM | 868536103 | 5032 | 134114 | SH | DEFINED | 16,24,25 | 122466 | 0 | 11648 |
| SUPERVALU INC | COM | 868536103 | 258 | 6886 | SH | DEFINED | 32,40,41 | 6886 | 0 | 0 |
| SUPERVALU INC | COM | 868536103 | 1512 | 40300 | SH | DEFINED | 16,19,24,26,27 | 40300 | 0 | 0 |
| SUPERVALU INC | COM | 868536103 | 14632 | 389973 | SH | CALL DEFINED | 7,11 | 389973 | 0 | 0 |
| SUPERVALU INC | COM | 868536103 | 473 | 12600 | SH | DEFINED | 15,16,24 | 12600 | 0 | 0 |
| SUPERVALU INC | COM | 868536103 | 22388 | 596687 | SH | DEFINED | 16,24,25 | 596687 | 0 | 0 |
| SUPERVALU INC | COM | 868536103 | 15248 | 406387 | SH | PUT DEFINED | 7,11 | 406387 | 0 | 0 |
| SUPERVALU INC | COM | 868536103 | 597 | 15900 | SH | DEFINED | 15,16,24 | 15900 | 0 | 0 |
| SUPERVALU INC | COM | 868536103 | 16793 | 447573 | SH | PUT DEFINED | 16,24,25 | 447573 | 0 | 0 |
| SUPREME INDS INC | CL A | 868607102 | 76 | 13250 | SH | DEFINED | 16,24,25 | 13250 | 0 | 0 |
| SURMODICS INC | COM | 868873100 | 329 | 6060 | SH | DEFINED | 7,11,13 | 6060 | 0 | 0 |
| SURMODICS INC | COM | 868873100 | 1111 | 20466 | SH | DEFINED | 16,24,25 | 7191 | 0 | 13275 |
| SURMODICS INC | COM | 868873100 | 16 | 300 | SH | CALL DEFINED | 16,24,25 | 300 | 0 | 0 |
| SUSQUEHANNA BANCSHAR | COM | 869099101 | 59 | 3200 | SH | DEFINED | 30 | 3200 | 0 | 0 |
| SUSQUEHANNA BANCSHAR | COM | 869099101 | 78 | 4215 | SH | DEFINED | 7,11,13 | 4215 | 0 | 0 |
| SUSQUEHANNA BANCSHAR | COM | 869099101 | 467 | 25313 | SH | DEFINED | 16,24,25 | 21263 | 0 | 4050 |
| SUTRON CORP | COM | 869380105 | 150 | 14110 | SH | DEFINED | 16,24,25 | 12610 | 0 | 1500 |
| SWEDISH EXPT CR CORP | ROG ARGI E | 870297603 | 212 | 19380 | SH | DEFINED | 16,24,25 | 8475 | 0 | 10905 |
| SWEDISH EXPT CR CORP | ROG TTL ET | 870297801 | 259 | 24038 | SH | DEFINED | 16,24,25 | 18898 | 0 | 5140 |
| SWIFT ENERGY CO | COM | 870738101 | 8 | 184 | SH | DEFINED | 7,11 | 0 | 0 | 184 |
| SWIFT ENERGY CO | COM | 870738101 | 4383 | 99545 | SH | DEFINED | 16,24,25 | 72551 | 0 | 26994 |
| SWISS HELVETIA FD IN | COM | 870875101 | 311 | 18828 | SH | DEFINED | 7,11 | 0 | 0 | 18828 |
| SWISS HELVETIA FD IN | COM | 870875101 | 6076 | 368226 | SH | DEFINED | 16,24,25 | 313426 | 0 | 54799 |
| SWITCH & DATA FACILI | COM | 871043105 | 308 | 19228 | SH | DEFINED | 16,24,25 | 19228 | 0 | 0 |
| SYBASE INC | NOTE 1.75 | 871130A86 | 14556 | 12508000 | PRN | DEFINED | 16,24,25 | 12508000 | 0 | 0 |
| SYBASE INC | COM | 871130100 | 121 | 4650 | SH | DEFINED | 30 | 4650 | 0 | 0 |
| SYBASE INC | COM | 871130100 | 1 | 51 | SH | DEFINED | 3,9 | 0 | 0 | 51 |
| SYBASE INC | COM | 871130100 | 425 | 16304 | SH | DEFINED | 7,11 | 16304 | 0 | 0 |
| SYBASE INC | COM | 871130100 | 191 | 7320 | SH | DEFINED | 7,11,13 | 7320 | 0 | 0 |
| SYBASE INC | COM | 871130100 | 0 | 10 | SH | DEFINED | 7,11,33 | 0 | 0 | 10 |
| SYBASE INC | COM | 871130100 | 2552 | 97819 | SH | DEFINED | 16,24,25 | 75339 | 0 | 22480 |
| SYCAMORE NETWORKS IN | COM | 871206108 | 44 | 11409 | SH | DEFINED | 16,24,25 | 10734 | 0 | 675 |
| SYKES ENTERPRISES IN | COM | 871237103 | 342 | 19000 | SH | DEFINED | 16,24,25 | 19000 | 0 | 0 |
| SYMANTEC CORP | NOTE 0.75 | 871503AD0 | 1967 | 1887000 | PRN | DEFINED | 16,24,25 | 1887000 | 0 | 0 |
| SYMANTEC CORP | COM | 871503108 | 178 | 11050 | SH | DEFINED | 12 | 0 | 0 | 11050 |
| SYMANTEC CORP | COM | 871503108 | 433 | 26800 | SH | DEFINED | 30 | 26800 | 0 | 0 |
| SYMANTEC CORP | COM | 871503108 | 236282 | 14639558 | SH | DEFINED | 7,11 | 14526853 | 0 | 112705 |
| SYMANTEC CORP | COM | 871503108 | 1114 | 69046 | SH | DEFINED | 7,11,13 | 67246 | 0 | 1800 |
| SYMANTEC CORP | COM | 871503108 | 22 | 1380 | SH | DEFINED | 7,11,33 | 0 | 0 | 1380 |
| SYMANTEC CORP | COM | 871503108 | 25533 | 1581953 | SH | DEFINED | 16,24,25 | 1333905 | 0 | 248048 |
| SYMANTEC CORP | COM | 871503108 | 214 | 13261 | SH | DEFINED | 32,40,41 | 13261 | 0 | 0 |
| SYMANTEC CORP | COM | 871503108 | 11144 | 690477 | SH | DEFINED | 16,19,24,26,27 | 690477 | 0 | 0 |
| SYMANTEC CORP | COM | 871503108 | 181 | 11200 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 11200 | 0 | 0 |
| SYMANTEC CORP | COM | 871503108 | 886278 | 54911900 | SH | CALL DEFINED | 7,11 | 54911900 | 0 | 0 |
| SYMANTEC CORP | COM | 871503108 | 9172 | 568300 | SH | CALL DEFINED | 15,16,24 | 568300 | 0 | 0 |
| SYMANTEC CORP | COM | 871503108 | 954 | 59100 | SH | CALL DEFINED | 16,24,25 | 59100 | 0 | 0 |
| SYMANTEC CORP | COM | 871503108 | 4156 | 257500 | SH | PUT DEFINED | 15,16,24 | 257500 | 0 | 0 |
| SYMANTEC CORP | COM | 871503108 | 759 | 47000 | SH | PUT DEFINED | 16,24,25 | 47000 | 0 | 0 |
| SYMMETRICOM INC | COM | 871543104 | 19 | 4140 | SH | DEFINED | 16,24,25 | 1380 | 0 | 2760 |
| SYMMETRICOM INC | COM | 871543104 | 52 | 11000 | SH | CALL DEFINED | 16,24,25 | 11000 | 0 | 0 |
| SYMYX TECHNOLOGIES | COM | 871558108 | 814 | 106030 | SH | DEFINED | 16,24,25 | 79268 | 0 | 26762 |
| SYMS CORP | COM | 871551107 | 1193 | 79025 | SH | DEFINED | 31,45 | 79025 | 0 | 0 |
| SYMS CORP | COM | 871551107 | 115 | 7631 | SH | DEFINED | 16,24,25 | 7631 | 0 | 0 |
| SYNCHRONOSS TECHNOLO | COM | 87157B103 | 308 | 8700 | SH | DEFINED | 30 | 8700 | 0 | 0 |
| SYNCHRONOSS TECHNOLO | COM | 87157B103 | 1066 | 30068 | SH | DEFINED | 7,11 | 29862 | 0 | 206 |
| SYNCHRONOSS TECHNOLO | COM | 87157B103 | 464 | 13092 | SH | DEFINED | 16,24,25 | 11388 | 0 | 1704 |
| SYNAPTICS INC | COM | 87157D109 | 11 | 256 | SH | DEFINED | 7,11 | 0 | 0 | 256 |
| SYNAPTICS INC | COM | 87157D109 | 159 | 3872 | SH | DEFINED | 16,24,25 | 3348 | 0 | 524 |
| SYNAPTICS INC | COM | 87157D109 | 4915 | 119400 | SH | CALL DEFINED | 15,16,24 | 119400 | 0 | 0 |
| SYNAPTICS INC | COM | 87157D109 | 2066 | 50200 | SH | PUT DEFINED | 15,16,24 | 50200 | 0 | 0 |
| SYNGENTA AG | SPONSORED | 87160A100 | 1362 | 26890 | SH | DEFINED | 7,11,33 | 0 | 0 | 26890 |
| SYNGENTA AG | SPONSORED | 87160A100 | 6481 | 127927 | SH | DEFINED | 16,24,25 | 111373 | 0 | 16554 |
| SYNERGETICS USA INC | COM | 87160G107 | 731 | 299549 | SH | DEFINED | 16,24,25 | 126449 | 0 | 173100 |
| SYNOPSYS INC | COM | 871607107 | 6169 | 237891 | SH | DEFINED | 7,11 | 143706 | 0 | 94185 |
| SYNOPSYS INC | COM | 871607107 | 3885 | 149833 | SH | DEFINED | 16,24,25 | 143098 | 0 | 6735 |
| SYNOVUS FINL CORP | COM | 871607107 | 140 | 5395 | SH | DEFINED | 32,40,41 | 5395 | 0 | 0 |
| SYNOVUS FINL CORP | COM | 87161C105 | 418 | 17364 | SH | DEFINED | 7,11 | 17364 | 0 | 0 |
| SYNOVUS FINL CORP | COM | 87161C105 | 45 | 1860 | SH | DEFINED | 16,24 | 1860 | 0 | 0 |
| SYNOVUS FINL CORP | COM | 87161C105 | 1094 | 45425 | SH | DEFINED | 7,11,13 | 45250 | 0 | 175 |
| SYNOVUS FINL CORP | COM | 87161C105 | 174 | 7209 | SH | DEFINED | 7,11,33 | 0 | 0 | 7209 |
| SYNOVUS FINL CORP | COM | 87161C105 | 5809 | 241222 | SH | DEFINED | 16,24,25 | 204624 | 0 | 36597 |
| SYNTEL INC | COM | 87162H103 | 50 | 1310 | SH | DEFINED | 7,11,13 | 1310 | 0 | 0 |
| SYNTEL INC | COM | 87162H103 | 797 | 20679 | SH | DEFINED | 16,24,25 | 19629 | 0 | 1050 |
| SYNTAX BRILLIAN CORP | COM | 87163L103 | 15 | 4986 | SH | DEFINED | 16,24,25 | 4729 | 0 | 257 |
| SYNTAX BRILLIAN CORP | COM | 87163L103 | 287 | 93300 | SH | CALL DEFINED | 15,16,24 | 93300 | 0 | 0 |
| SYNTAX BRILLIAN CORP | COM | 87163L103 | 8 | 2500 | SH | DEFINED | 16,24,25 | 2500 | 0 | 0 |
| SYNTAX BRILLIAN CORP | COM | 87163L103 | 442 | 143600 | SH | PUT DEFINED | 15,16,24 | 143600 | 0 | 0 |
| SYSCO CORP | COM | 871829107 | 7338 | 235127 | SH | DEFINED | 7,11 | 137697 | 400 | 97030 |
| SYSCO CORP | COM | 871829107 | 5174 | 165765 | SH | DEFINED | 7,11,13 | 159215 | 0 | 6550 |
| SYSCO CORP | COM | 871829107 | 131 | 4190 | SH | DEFINED | 7,11,33 | 0 | 0 | 4190 |
| SYSCO CORP | COM | 871829107 | 31350 | 1004480 | SH | DEFINED | 16,24,25 | 868128 | 0 | 136352 |
| SYSCO CORP | COM | 871829107 | 564 | 18056 | SH | DEFINED | 32,40,41 | 18056 | 0 | 0 |
| SYSCO CORP | COM | 871829107 | 8065 | 258400 | SH | CALL DEFINED | 15,16,24 | 258400 | 0 | 0 |
| SYSCO CORP | COM | 871829107 | 4760 | 152500 | SH | CALL DEFINED | 16,24,25 | 152500 | 0 | 0 |
| SYSCO CORP | COM | 871829107 | 8277 | 265200 | SH | PUT DEFINED | 15,16,24 | 265200 | 0 | 0 |
| SYSCO CORP | COM | 871829107 | 4738 | 151800 | SH | PUT DEFINED | 16,24,25 | 151800 | 0 | 0 |
| SYSTEMAX INC | COM | 871851101 | 1658 | 81619 | SH | DEFINED | 16,24,25 | 57530 | 0 | 24089 |
| SYSTEMAX INC | COM | 871851101 | 142 | 7000 | SH | CALL DEFINED | 16,24,25 | 7000 | 0 | 0 |
| TCF FINL CORP | COM | 872275102 | 658 | 36723 | SH | DEFINED | 7,11 | 6115 | 0 | 30608 |
| TCF FINL CORP | COM | 872275102 | 3 | 175 | SH | DEFINED | 7,11,13 | 175 | 0 | 0 |
| TCF FINL CORP | COM | 872275102 | 472 | 26342 | SH | DEFINED | 16,24,25 | 24124 | 0 | 2218 |
| TCF FINL CORP | COM | 872275102 | 87 | 4853 | SH | DEFINED | 32,40,41 | 4853 | 0 | 0 |
| TC PIPELINES LP | UT COM LTD | 87233Q108 | 480 | 13256 | SH | DEFINED | 7,11 | 13256 | 0 | 0 |
| TC PIPELINES LP | UT COM LTD | 87233Q108 | 1052 | 29067 | SH | DEFINED | 16,24,25 | 28122 | 0 | 945 |
| TCW STRATEGIC INCOME | COM | 872340104 | 59 | 15992 | SH | DEFINED | 16,24,25 | 11442 | 0 | 4550 |
| TCW STRATEGIC INCOME | COM | 872340104 | 70 | 19000 | SH | DEFINED | 16,19,24,26,27 | 19000 | 0 | 0 |
| TD AMERITRADE HLDG C | COM | 87236Y108 | 2967 | 147917 | SH | DEFINED | 7,11 | 147917 | 0 | 0 |
| TD AMERITRADE HLDG C | COM | 87236Y108 | 388 | 19325 | SH | DEFINED | 7,11,13 | 19175 | 0 | 150 |
| TD AMERITRADE HLDG C | COM | 87236Y108 | 53448 | 2664396 | SH | DEFINED | 16,24,25 | 2653757 | 0 | 10639 |
| TD AMERITRADE HLDG C | COM | 87236Y108 | 71 | 3525 | SH | DEFINED | 32,40,41 | 3525 | 0 | 0 |
| TD AMERITRADE HLDG C | COM | 87236Y108 | 10273 | 512100 | SH | CALL DEFINED | 15,16,24 | 512100 | 0 | 0 |
| TD AMERITRADE HLDG C | COM | 87236Y108 | 2617 | 130475 | SH | CALL DEFINED | 16,24,25 | 130475 | 0 | 0 |
| TD AMERITRADE HLDG C | COM | 87236Y108 | 2617 | 130475 | SH | PUT DEFINED | 7,11 | 130475 | 0 | 0 |
| TD AMERITRADE HLDG C | COM | 87236Y108 | 6 | 300 | SH | PUT DEFINED | 15,16,24 | 300 | 0 | 0 |
| TECO ENERGY INC | COM | 872375100 | 605 | 35151 | SH | DEFINED | 7,11 | 19151 | 0 | 16000 |
| TECO ENERGY INC | COM | 872375100 | 307 | 17858 | SH | DEFINED | 7,11,13 | 17858 | 0 | 0 |
| TECO ENERGY INC | COM | 872375100 | 43 | 2500 | SH | DEFINED | 7,11,33 | 0 | 0 | 2500 |
| TECO ENERGY INC | COM | 872375100 | 13434 | 780595 | SH | DEFINED | 16,24,25 | 612509 | 0 | 168086 |
| TECO ENERGY INC | COM | 872375100 | 4 | 207 | SH | DEFINED | 32,40,41 | 207 | 0 | 0 |
| TECO ENERGY INC | COM | 872375100 | 380 | 22100 | SH | CALL DEFINED | 15,16,24 | 22100 | 0 | 0 |
| TEL OFFSHORE TR | UNIT BEN I | 872382106 | 583 | 30484 | SH | DEFINED | 16,24,25 | 28546 | 0 | 1938 |

```
TEPPCO PARTNERS L P   UT LTD PAR  872384102   2261    59000 SH    DEFINED           7,11               0       59000
TEPPCO PARTNERS L P   UT LTD PAR  872384102    292     7610 SH    DEFINED           7,11,13       6910     0       700
TEPPCO PARTNERS L P   UT LTD PAR  872384102     57     1500 SH    DEFINED           7,11,33            0     0      1500
TEPPCO PARTNERS L P   UT LTD PAR  872384102  34388   891157 SH    DEFINED          16,24,25     748190     0    148967
TFS FINL CORP         COM         87240R107      3      224 SH    DEFINED           7,11               0      224
TFS FINL CORP         COM         87240R107   3878   324800 SH    DEFINED          16,24,25     277800     0     47000
TICC CAPITAL CORP     COM         87244T109    591    64000 SH    DEFINED          16,24,25      56827     0      7173
THQ INC               COM         872443403    195     6927 SH    DEFINED           7,11            6927     0        0
THQ INC               COM         872443403    423    14997 SH    DEFINED           7,11,13       14997     0        0
THQ INC               COM NEW     872443403     70     2497 SH    DEFINED          15,16,24       2497     0        0
THQ INC               COM NEW     872443403    172     6104 SH    DEFINED          16,24,25       6104     0        0
THQ INC               COM NEW     872443403     56     2000 SH CALL DEFINED        15,16,24       2000     0        0
THQ INC               COM NEW     872443403    396    14050 SH PUT DEFINED         15,16,24      14050     0        0
TJX COS INC NEW       NOTE        872540AL3      1    11000 PRN    DEFINED          16,24,25      11000     0        0
TJX COS INC NEW       COM         872540109     11      400 SH    DEFINED              12             0     0      400
TJX COS INC NEW       COM         872540109   1322    46025 SH    DEFINED            3,9             0     0    46025
TJX COS INC NEW       COM         872540109   1291    44940 SH    DEFINED           7,11          44940     0        0
TJX COS INC NEW       COM         872540109    554    19300 SH    DEFINED           7,11,13       19300     0        0
TJX COS INC NEW       COM         872540109    685    23845 SH    DEFINED           7,11,33            0     0    23845
TJX COS INC NEW       COM         872540109  66929  2329569 SH    DEFINED          16,24,25    1999732     0   329836
TJX COS INC NEW       COM         872540109    385    13402 SH    DEFINED          32,40,41      13402     0        0
TJX COS INC NEW       COM         872540109    977    34000 SH CALL DEFINED        15,16,24      34000     0        0
TJX COS INC NEW       COM         872540109    256     8900 SH CALL DEFINED        16,24,25       8900     0        0
TJX COS INC NEW       COM         872540109    322    11200 SH PUT DEFINED         15,16,24      11200     0        0
TJX COS INC NEW       COM         872540109    256     8900 SH PUT DEFINED         16,24,25       8900     0        0
TLC VISION CORP       COM         87254N100    331    99282 SH    DEFINED             16,24      99282     0        0
TLC VISION CORP       COM         87254N100      1      205 SH    DEFINED          16,24,25        205     0        0
TLC VISION CORP       COM         87254N100    636   190865 SH    DEFINED    16,19,24,26,27   190865     0        0
TRC COS INC           COM         872625108    126    15806 SH    DEFINED          16,24,25      15071     0      735
TS&W CLAYMORE TAX AD  COM         87280R108    818    62418 SH    DEFINED          16,24,25      60283     0     2135
TSR INC               COM         872885108    164    40200 SH    DEFINED          16,24,25      28200     0    12000
TTM TECHNOLOGIES  IN  COM         87305R107    326    28001 SH    DEFINED          16,24,25      28001     0        0
T-3 ENERGY SRVCS INC  COM         87306E107    197     4200 SH    DEFINED             30          4200     0        0
T-3 ENERGY SRVCS INC  COM         87306E107     80     1709 SH    DEFINED          16,24,25       1620     0       89
TXCO RES INC          COM         87311M102    123    10180 SH    DEFINED          16,24,25      10180     0        0
TAIWAN GREATER CHINA  SH BEN INT  874037104    503    69632 SH    DEFINED          16,24,25      69632     0        0
TAIWAN SEMICONDUCTOR  SPONSORED   874039100    910    91391 SH    DEFINED            3,9             0     0    91391
TAIWAN SEMICONDUCTOR  SPONSORED   874039100     30     3061 SH    DEFINED           7,11             0     0     3061
TAIWAN SEMICONDUCTOR  SPONSORED   874039100   2052   206000 SH    DEFINED            16,24     206000     0        0
TAIWAN SEMICONDUCTOR  SPONSORED   874039100    331    33198 SH    DEFINED           7,11,13      33198     0        0
TAIWAN SEMICONDUCTOR  SPONSORED   874039100     28     2776 SH    DEFINED           7,11,33            0     0     2776
TAIWAN SEMICONDUCTOR  SPONSORED   874039100    223    22439 SH    DEFINED          15,16,24            0     0    22439
TAIWAN SEMICONDUCTOR  SPONSORED   874039100  24274  2437106 SH    DEFINED          16,24,25    2132965     0   304141
TAIWAN SEMICONDUCTOR  SPONSORED   874039100  17772  1784337 SH    DEFINED          32,40,41    1784337     0        0
TAIWAN SEMICONDUCTOR  SPONSORED   874039100   3048   306062 SH    DEFINED    16,19,24,26,27   306062     0        0
TAIWAN SEMICONDUCTOR  SPONSORED   874039100    700    70300 SH CALL DEFINED        15,16,24      70300     0        0
TAIWAN SEMICONDUCTOR  SPONSORED   874039100   1574   158000 SH PUT DEFINED         15,16,24     158000     0        0
TAKE-TWO INTERACTIVE  COM         874054109    225    12188 SH    DEFINED           7,11         12188     0        0
TAKE-TWO INTERACTIVE  COM         874054109   2447   132642 SH    DEFINED          15,16,24     132642     0        0
TAKE-TWO INTERACTIVE  COM         874054109    469    25433 SH    DEFINED          16,24,25      22848     0     2585
TAKE-TWO INTERACTIVE  COM         874054109  12088   655200 SH CALL DEFINED        15,16,24     655200     0        0
TAKE-TWO INTERACTIVE  COM         874054109   1138    61700 SH CALL DEFINED        16,24,25      61700     0        0
TAKE-TWO INTERACTIVE  COM         874054109  11871   643400 SH PUT DEFINED         15,16,24     643400     0        0
TAKE-TWO INTERACTIVE  COM         874054109    185    10000 SH PUT DEFINED         16,24,25      10000     0        0
TALBOTS INC           COM         874161102     32     2665 SH    DEFINED           7,11,13       1965     0      700
TALBOTS INC           COM         874161102    248    21018 SH    DEFINED          16,24,25      17434     0     3583
TALEO CORP            CL A        87424N104    796    26722 SH    DEFINED          16,24,25      22251     0     4471
TALISMAN ENERGY INC   COM         87425E103    279    15060 SH    DEFINED             30         15060     0        0
TALISMAN ENERGY INC   COM         87425E103     31     1650 SH    DEFINED           7,11,13       1650     0        0
TALISMAN ENERGY INC   COM         87425E103    789    42596 SH    DEFINED           7,11,33            0     0    42596
TALISMAN ENERGY INC   COM         87425E103   3232   174506 SH    DEFINED          16,24,25     168274     0     6232
TALISMAN ENERGY INC   COM         87425E103    559    30163 SH    DEFINED          32,40,41      30163     0        0
TALISMAN ENERGY INC   COM         87425E103   1735    93674 SH    DEFINED          4,6,7,11      93674     0        0
TALISMAN ENERGY INC   COM         87425E103     39     2100 SH    DEFINED       5-7,11,43,44          0     0     2100
TALISMAN ENERGY INC   COM         87425E103   5556   300000 SH CALL DEFINED        15,16,24     300000     0        0
TALISMAN ENERGY INC   COM         87425E103      6      300 SH CALL DEFINED        16,24,25        300     0        0
TALISMAN ENERGY INC   COM         87425E103   1163    62800 SH PUT DEFINED         15,16,24      62800     0        0
TAM SA                SP ADR REP  87484D103    666    27600 SH    DEFINED             30         27600     0        0
TAM SA                SP ADR REP  87484D103   1619    67108 SH    DEFINED           7,11         67108     0        0
TAM SA                SP ADR REP  87484D103   1097    45469 SH    DEFINED          16,24,25      45391     0       78
TAM SA                SP ADR REP  87484D103     24     1015 SH    DEFINED          32,40,41       1015     0        0
TANGER FACTORY OUTLE  COM         875465106     75     2000 SH    DEFINED           7,11             0     0     2000
TANGER FACTORY OUTLE  COM         875465106   2312    61300 SH    DEFINED             14,31      61300     0        0
TANGER FACTORY OUTLE  COM         875465106   1465    38854 SH    DEFINED          16,24,25      27720     0    11133
TANGER FACTORY OUTLE  COM         875465106    566    15017 SH    DEFINED          32,40,41      15017     0        0
TANGER PPTYS LTD PAR NOTE  3.75   875484AB7     17    15000 PRN    DEFINED          16,24,25      15000     0        0
TANZANIAN ROYALTY EX  COM         87600U104    130    19500 SH    DEFINED          16,24,25      18800     0      700
TARGA RESOURCES PART  COM UNIT    87611X105     79     2680 SH    DEFINED           7,11,33       2680     0        0
TARGA RESOURCES PART  COM UNIT    87611X105  46599  1573231 SH    DEFINED          16,24,25    1573231     0        0
TARGET CORP           COM         87612E106    911    18225 SH    DEFINED              12             0     0    18225
TARGET CORP           COM         87612E106    670    13400 SH    DEFINED             30         13400     0        0
TARGET CORP           COM         87612E106   2940    58803 SH    DEFINED            3,9             0     0    58803
TARGET CORP           COM         87612E106  22271   445425 SH    DEFINED           7,11        189526     0   255899
TARGET CORP           COM         87612E106   1500    30000 SH    DEFINED             16,24      30000     0        0
TARGET CORP           COM         87612E106   1881    37628 SH    DEFINED           7,11,13       4476     0    33152
TARGET CORP           COM         87612E106    417     8335 SH    DEFINED           7,11,33            0     0     8335
TARGET CORP           COM         87612E106    562    11241 SH    DEFINED          15,16,24      11241     0        0
TARGET CORP           COM         87612E106  83133  1662662 SH    DEFINED          16,24,25    1525517     0   137145
TARGET CORP           COM         87612E106  20241   404820 SH    DEFINED          32,40,41     404820     0        0
TARGET CORP           COM         87612E106     45     8893 SH    DEFINED    16,19,24,26,27       8893     0        0
TARGET CORP           COM         87612E106   3040    60800 SH CALL DEFINED         7,11         60800     0        0
TARGET CORP           COM         87612E106  25415   508300 SH CALL DEFINED        15,16,24     508300     0        0
TARGET CORP           COM         87612E106  67105  1342100 SH CALL DEFINED        16,24,25    1342100     0        0
TARGET CORP           COM         87612E106  49335   986700 SH PUT DEFINED          7,11        986700     0        0
TARGET CORP           COM         87612E106  48385   967700 SH PUT DEFINED         15,16,24     967700     0        0
TARGET CORP           COM         87612E106  34320   686400 SH PUT DEFINED         16,24,25     686400     0        0
TARRAGON CORP         COM         876287103     20    13033 SH    DEFINED          16,24,25       9500     0     3533
TASER INTL INC        COM         87651B104   3494   242800 SH    DEFINED          15,16,24     242800     0        0
TASER INTL INC        COM         87651B104   1989   138215 SH    DEFINED          16,24,25     121856     0    16359
TASER INTL INC        COM         87651B104     27     1900 SH    DEFINED       5-7,11,43,44          0  1900        0
TASER INTL INC        COM         87651B104   4953   344200 SH CALL DEFINED        15,16,24     344200     0        0
TASER INTL INC        COM         87651B104   4377   304200 SH PUT DEFINED         15,16,24     304200     0        0
TASEKO MINES LTD      COM         876511106     87    16700 SH    DEFINED          16,24,25      12500     0     4200
TATA MTRS LTD         SPONSORED   876568502   6559   347787 SH    DEFINED           7,11        347787     0        0
TATA MTRS LTD         SPONSORED   876568502   4438   235315 SH    DEFINED          16,24,25     188092     0    47223
TATA MTRS LTD         SPONSORED   876568502   1188    63000 SH    DEFINED    16,19,24,26,27      63000     0        0
TAUBMAN CTRS INC      COM         876664103   2835    57636 SH    DEFINED           7,11         57636     0        0
TAUBMAN CTRS INC      COM         876664103    208     4224 SH    DEFINED          16,24,25       4224     0        0
TAUBMAN CTRS INC      COM         876664103   1212    24646 SH    DEFINED          32,40,41      24646     0        0
TEAM INC              COM         878155100     37     1025 SH    DEFINED             30          1025     0        0
TEAM INC              COM         878155100    298     8136 SH    DEFINED          16,24,25       6497     0     1639
TECH DATA CORP        COM         878237106     18      484 SH    DEFINED           7,11             0     0      484
TECH DATA CORP        COM         878237106   7584   201065 SH    DEFINED          16,24,25     196733     0     4332
TECHE HLDG CO         COM         878330109    540    14300 SH    DEFINED          16,24,25      14000     0      300
```

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| TECHNE CORP | COM | 878377100 | 31 | 471 SH | DEFINED | 7,11 | 471 | 0 | 0 |
| TECHNE CORP | COM | 878377100 | 12 | 175 SH | DEFINED | 7,11,13 | 175 | 0 | 0 |
| TECHNE CORP | COM | 878377100 | 4819 | 72962 SH | DEFINED | 16,24,25 | 60199 | 0 | 12763 |
| TECK COMINCO LTD | CL B | 878742204 | 1483 | 41528 SH | DEFINED | 16,24,25 | 34663 | 0 | 6865 |
| TECK COMINCO LTD | CL B | 878742204 | 2991 | 83769 SH | DEFINED | 32,40,41 | 83769 | 0 | 0 |
| TECK COMINCO LTD | CL B | 878742204 | 2192 | 61384 SH | DEFINED | 4,6,7,11 | 61384 | 0 | 0 |
| TECK COMINCO LTD | CL B | 878742204 | 286 | 8000 SH | DEFINED | 5-7,11,43,44 | 0 | 8000 | 0 |
| TECUMSEH PRODS CO | CL A | 878895200 | 876 | 37400 SH | DEFINED | 16,24,25 | 32400 | 0 | 5000 |
| TEKELEC | COM | 879101103 | 192 | 15350 SH | DEFINED | 7,11,13 | 13350 | 0 | 2000 |
| TEKELEC | COM | 879101103 | 657 | 52560 SH | DEFINED | 16,24,25 | 52560 | 0 | 0 |
| TEKELEC | COM | 879101103 | 1286 | 102900 SH | CALL DEFINED | 15,16,24 | 102900 | 0 | 0 |
| TEKELEC | COM | 879101103 | 240 | 19200 SH | PUT DEFINED | 15,16,24 | 19200 | 0 | 0 |
| TELE NORTE LESTE PAR | SPON ADR P | 879246106 | 52 | 2680 SH | DEFINED | 30 | 2680 | 0 | 0 |
| TELE NORTE LESTE PAR | SPON ADR P | 879246106 | 12 | 645 SH | DEFINED | 7,11,33 | 0 | 0 | 645 |
| TELE NORTE LESTE PAR | SPON ADR P | 879246106 | 12378 | 641987 SH | DEFINED | 16,24,25 | 609556 | 0 | 32430 |
| TELE NORTE LESTE PAR | SPON ADR P | 879246106 | 59 | 3050 SH | DEFINED | 32,40,41 | 3050 | 0 | 0 |
| TELE NORTE LESTE PAR | SPON ADR P | 879246106 | 266 | 13797 SH | DEFINED | 16,19,24,26,27 | 13797 | 0 | 0 |
| TELECOM HLDRS TR | DEPOSITORY | 87927P200 | 6843 | 180222 SH | DEFINED | 16,24,25 | 175724 | 0 | 4498 |
| TELECOM ITALIA S P A | SPON ADR O | 87927Y102 | 1999 | 64828 SH | DEFINED | 16,24,25 | 54085 | 0 | 10743 |
| TELECOM ITALIA S P A | SPON ADR O | 87927Y102 | 0 | 1 SH | DEFINED | 16,19,24,26,27 | 1 | 0 | 0 |
| TELECOM ITALIA S P A | SPON ADR O | 87927Y201 | 700 | 29775 SH | DEFINED | 16,24,25 | 27845 | 0 | 1930 |
| TELECOM CORP NEW ZEA | SPONSORED | 879278208 | 18 | 1066 SH | DEFINED | 7,11,13 | 1066 | 0 | 0 |
| TELECOM CORP NEW ZEA | SPONSORED | 879278208 | 10222 | 615435 SH | DEFINED | 16,24,25 | 525296 | 0 | 90139 |
| TELECOMUNICACOES BRA | SPONSORED | 879287308 | 3345 | 142297 SH | DEFINED | 16,24,25 | 137096 | 0 | 5200 |
| TELECOMUNICACOES DE | SPON ADR P | 87929A102 | 2443 | 96001 SH | DEFINED | 16,24,25 | 87649 | 0 | 8352 |
| TELECOMMUNICATION SY | CL A | 879292103 | 39 | 11046 SH | DEFINED | 7,11,13 | 11046 | 0 | 0 |
| TELECOMMUNICATION SY | CL A | 879292103 | 18 | 5100 SH | DEFINED | 16,24,25 | 5100 | 0 | 0 |
| TELEDYNE TECHNOLOGIE | COM | 879360105 | 127 | 2388 SH | DEFINED | 7,11,13 | 2388 | 0 | 0 |
| TELEDYNE TECHNOLOGIE | COM | 879360105 | 0 | 3 SH | DEFINED | 7,11,33 | 0 | 0 | 3 |
| TELEDYNE TECHNOLOGIE | COM | 879360105 | 523 | 9808 SH | DEFINED | 16,24,25 | 9296 | 0 | 512 |
| TELEFLEX INC | COM | 879369106 | 95 | 1500 SH | DEFINED | 30 | 1500 | 0 | 0 |
| TELEFLEX INC | COM | 879369106 | 807 | 12813 SH | DEFINED | 7,11 | 12813 | 0 | 0 |
| TELEFLEX INC | COM | 879369106 | 957 | 15190 SH | DEFINED | 7,11,13 | 15190 | 0 | 0 |
| TELEFLEX INC | COM | 879369106 | 7011 | 111267 SH | DEFINED | 16,24,25 | 83207 | 0 | 28060 |
| TELEFONICA DE ARGENT | SPONSORED | 879378404 | 226 | 16770 SH | DEFINED | 16,24,25 | 16670 | 0 | 100 |
| TELEFONICA S A | SPONSORED | 879382208 | 521 | 5341 SH | DEFINED | 7,11 | 0 | 0 | 5341 |
| TELEFONICA S A | SPONSORED | 879382208 | 29 | 300 SH | DEFINED | 7,11,13 | 300 | 0 | 0 |
| TELEFONICA S A | SPONSORED | 879382208 | 10 | 107 SH | DEFINED | 7,11,33 | 0 | 0 | 107 |
| TELEFONICA S A | SPONSORED | 879382208 | 12968 | 132887 SH | DEFINED | 16,24,25 | 107051 | 0 | 25836 |
| TELEFONICA S A | SPONSORED | 879382208 | 5928 | 60744 SH | DEFINED | 16,19,24,26,27 | 60744 | 0 | 0 |
| TELEFONOS DE MEXICO | SPON ADR P | 879403780 | 15611 | 423747 SH | DEFINED | 7,11 | 306747 | 0 | 117000 |
| TELEFONOS DE MEXICO | SPON ADR O | 879403780 | 2019 | 54810 SH | DEFINED | 7,11,13 | 54735 | 0 | 75 |
| TELEFONOS DE MEXICO | SPON ADR O | 879403780 | 33 | 900 SH | DEFINED | 7,11,33 | 0 | 0 | 900 |
| TELEFONOS DE MEXICO | SPON ADR O | 879403780 | 53135 | 1442312 SH | DEFINED | 16,24,25 | 1174597 | 0 | 267714 |
| TELEFONOS DE MEXICO | SPON ADR O | 879403780 | 94 | 2540 SH | DEFINED | 32,40,41 | 2540 | 0 | 0 |
| TELEFONOS DE MEXICO | SPON ADR O | 879403780 | 14037 | 381034 SH | CALL DEFINED | 7,11 | 381034 | 0 | 0 |
| TELEFONOS DE MEXICO | SPON ADR O | 879403780 | 3316 | 90000 SH | CALL DEFINED | 15,16,24 | 90000 | 0 | 0 |
| TELEFONOS DE MEXICO | SPON ADR O | 879403780 | 4660 | 126500 SH | PUT DEFINED | 15,16,24 | 126500 | 0 | 0 |
| TELEFONOS DE MEXICO | SPON ADR O | 879403780 | 12195 | 331034 SH | PUT DEFINED | 16,24,25 | 331034 | 0 | 0 |
| TELEPHONE & DATA SYS | COM | 879433100 | 2024 | 32332 SH | DEFINED | 7,11 | 32332 | 0 | 0 |
| TELEPHONE & DATA SYS | COM | 879433100 | 969 | 15478 SH | DEFINED | 16,24,25 | 15013 | 0 | 465 |
| TELEPHONE & DATA SYS | COM | 879433100 | 316 | 5040 SH | DEFINED | 32,40,41 | 5040 | 0 | 0 |
| TELEPHONE & DATA SYS | SPL COM | 879433860 | 179 | 3115 SH | DEFINED | 7,11 | 3115 | 0 | 0 |
| TELEPHONE & DATA SYS | SPL COM | 879433860 | 1278 | 22193 SH | DEFINED | 16,24,25 | 4948 | 0 | 17245 |
| TELEPHONE & DATA SYS | SPL COM | 879433860 | 39 | 684 SH | DEFINED | 32,40,41 | 684 | 0 | 0 |
| TELIK INC | COM | 87959M109 | 35 | 10180 SH | DEFINED | 16,24,25 | 7980 | 0 | 2200 |
| TELIK INC | COM | 87959M109 | 97 | 28000 SH | CALL DEFINED | 15,16,24 | 28000 | 0 | 0 |
| TELIK INC | COM | 87959M109 | 0 | 100 SH | PUT DEFINED | 15,16,24 | 100 | 0 | 0 |
| TELKONET INC | COM | 879604106 | 1630 | 1963366 SH | DEFINED | 16,24,25 | 1320726 | 0 | 642640 |
| TELLABS INC | COM | 879664100 | 287 | 43874 SH | DEFINED | 7,11 | 43874 | 0 | 0 |
| TELLABS INC | COM | 879664100 | 3 | 481 SH | DEFINED | 7,11,13 | 481 | 0 | 0 |
| TELLABS INC | COM | 879664100 | 2615 | 399860 SH | DEFINED | 16,24,25 | 381349 | 0 | 18511 |
| TELLABS INC | COM | 879664100 | 96 | 14625 SH | DEFINED | 32,40,41 | 14625 | 0 | 0 |
| TELLABS INC | COM | 879664100 | 108 | 16500 SH | DEFINED | 16,19,24,26,27 | 16500 | 0 | 0 |
| TELLABS INC | COM | 879664100 | 635 | 97100 SH | CALL DEFINED | 15,16,24 | 97100 | 0 | 0 |
| TELLABS INC | COM | 879664100 | 128 | 19500 SH | CALL DEFINED | 16,24,25 | 19500 | 0 | 0 |
| TELLABS INC | COM | 879664100 | 38 | 5800 SH | PUT DEFINED | 15,16,24 | 5800 | 0 | 0 |
| TELLABS INC | COM | 879664100 | 65 | 10000 SH | PUT DEFINED | 16,24,25 | 10000 | 0 | 0 |
| TELUS CORP | NON-VTG SH | 87971M202 | 15368 | 318440 SH | DEFINED | 16,24 | 318440 | 0 | 0 |
| TELUS CORP | NON-VTG SH | 87971M202 | 132 | 2733 SH | DEFINED | 16,24,25 | 1491 | 0 | 1242 |
| TELUS CORP | NON-VTG SH | 87971M202 | 225 | 4668 SH | DEFINED | 32,40,41 | 4668 | 0 | 0 |
| TELUS CORP | NON-VTG SH | 87971M202 | 272 | 5638 SH | DEFINED | 4,6,7,11 | 5638 | 0 | 0 |
| TEMPLE INLAND INC | COM | 879868107 | 144 | 6897 SH | DEFINED | 7,11 | 5097 | 0 | 1800 |
| TEMPLE INLAND INC | COM | 879868107 | 1162 | 55754 SH | DEFINED | 16,24,25 | 55754 | 0 | 0 |
| TEMPLE INLAND INC | COM | 879868107 | 1468 | 70417 SH | DEFINED | 16,24,25 | 59770 | 0 | 10646 |
| TEMPLE INLAND INC | COM | 879868107 | 69 | 3330 SH | DEFINED | 32,40,41 | 3330 | 0 | 0 |
| TEMPLE INLAND INC | COM | 879868107 | 698 | 33500 SH | PUT DEFINED | 16,24,25 | 33500 | 0 | 0 |
| TEMPLE INLAND INC | EX-DISTRIB | 879868115 | 1830 | 95800 SH | DEFINED | 16,24,25 | 95800 | 0 | 0 |
| TELETECH HOLDINGS IN | COM | 879939106 | 1453 | 68318 SH | DEFINED | 16,24,25 | 66878 | 0 | 1440 |
| TEMPLETON DRAGON FD | COM | 88018T101 | 2 | 72 SH | DEFINED | 16,24 | 72 | 0 | 0 |
| TEMPLETON DRAGON FD | COM | 88018T101 | 5707 | 184657 SH | DEFINED | 16,24,25 | 155436 | 0 | 29262 |
| TEMPLETON EMERGING M | COM | 880191101 | 278 | 12000 SH | DEFINED | 7,11,33 | 0 | 0 | 12000 |
| TEMPLETON EMERGING M | COM | 880191101 | 3496 | 150685 SH | DEFINED | 16,24,25 | 140134 | 0 | 10550 |
| TEMPLETON EMERG MKTS | COM | 880192109 | 69 | 5257 SH | DEFINED | 7,11,13 | 5257 | 0 | 0 |
| TEMPLETON EMERG MKTS | COM | 880192109 | 158 | 12000 SH | DEFINED | 7,11,33 | 0 | 0 | 12000 |
| TEMPLETON EMERG MKTS | COM | 880192109 | 7569 | 575187 SH | DEFINED | 16,24,25 | 465762 | 0 | 109424 |
| TEMPLETON GLOBAL INC | COM | 880198106 | 14321 | 1696808 SH | DEFINED | 16,24,25 | 1559080 | 0 | 137728 |
| TEMPLETON RUS AND EA | COM | 88022P105 | 1135 | 15130 SH | DEFINED | 16,24,25 | 13958 | 0 | 1172 |
| TEMPUR PEDIC INTL IN | COM | 88023U101 | 132 | 5100 SH | DEFINED | 30 | 5100 | 0 | 0 |
| TEMPUR PEDIC INTL IN | COM | 88023U101 | 3110 | 119754 SH | DEFINED | 7,11 | 119154 | 0 | 609 |
| TEMPUR PEDIC INTL IN | COM | 88023U101 | 5416 | 208560 SH | DEFINED | 16,24,25 | 185675 | 0 | 22885 |
| TEMPUR PEDIC INTL IN | COM | 88023U101 | 18078 | 696100 SH | CALL DEFINED | 15,16,24 | 696100 | 0 | 0 |
| TEMPUR PEDIC INTL IN | COM | 88023U101 | 12081 | 465200 SH | PUT DEFINED | 16,24,25 | 465200 | 0 | 0 |
| TENARIS S A | SPONSORED | 88031M109 | 1448 | 32364 SH | DEFINED | 16,24 | 32364 | 0 | 0 |
| TENARIS S A | SPONSORED | 88031M109 | 3442 | 76944 SH | DEFINED | 16,24,25 | 63528 | 0 | 13416 |
| TENARIS S A | SPONSORED | 88031M109 | 188 | 4195 SH | DEFINED | 32,40,41 | 4195 | 0 | 0 |
| TENARIS S A | SPONSORED | 88031M109 | 2120 | 47400 SH | CALL DEFINED | 15,16,24 | 47400 | 0 | 0 |
| TENARIS S A | SPONSORED | 88031M109 | 3730 | 83400 SH | PUT DEFINED | 15,16,24 | 83400 | 0 | 0 |
| TENET HEALTHCARE COR | COM | 88033G100 | 214 | 42103 SH | DEFINED | 7,11 | 42103 | 0 | 0 |
| TENET HEALTHCARE COR | COM | 88033G100 | 4464 | 878739 SH | DEFINED | 16,24,25 | 701365 | 0 | 177374 |
| TENET HEALTHCARE COR | COM | 88033G100 | 2 | 468 SH | DEFINED | 32,40,41 | 468 | 0 | 0 |
| TENET HEALTHCARE COR | COM | 88033G100 | 9133 | 1797800 SH | CALL DEFINED | 15,16,24 | 1797800 | 0 | 0 |
| TENET HEALTHCARE COR | COM | 88033G100 | 5 | 1000 SH | CALL DEFINED | 16,24,25 | 1000 | 0 | 0 |
| TENET HEALTHCARE COR | COM | 88033G100 | 3819 | 751800 SH | PUT DEFINED | 15,16,24 | 751800 | 0 | 0 |
| TENGASCO INC | COM NEW | 88033R205 | 9 | 17580 SH | DEFINED | 16,24,25 | 7580 | 0 | 10000 |
| TENNANT CO | COM | 880345103 | 702 | 15842 SH | DEFINED | 7,11,13 | 15842 | 0 | 0 |
| TENNANT CO | COM | 880345103 | 447 | 10100 SH | DEFINED | 16,24,25 | 100 | 0 | 10000 |
| TENNECO INC | COM | 880349105 | 26 | 1000 SH | DEFINED | 7,11,13 | 1000 | 0 | 0 |
| TENNECO INC | COM | 880349105 | 683 | 26183 SH | DEFINED | 16,24,25 | 24834 | 0 | 1349 |
| TERADATA CORP DEL | COM | 88076W103 | 409 | 14924 SH | DEFINED | 7,11 | 14810 | 0 | 114 |
| TERADATA CORP DEL | COM | 88076W103 | 8 | 298 SH | DEFINED | 7,11,13 | 298 | 0 | 0 |
| TERADATA CORP DEL | COM | 88076W103 | 5199 | 189676 SH | DEFINED | 16,24,25 | 186543 | 0 | 3133 |
| TERADATA CORP DEL | COM | 88076W103 | 65 | 2354 SH | DEFINED | 32,40,41 | 2354 | 0 | 0 |
| TERADATA CORP DEL | COM | 88076W103 | 69 | 2500 SH | DEFINED | 5-7,11,43,44 | 0 | 2500 | 0 |

```
TERADATA CORP DEL    COM           88076W103  5482    200000 SH       DEFINED 16,19,24,26,27           200000      0       0
TERADYNE INC         COM           880770102   151     14610 SH       DEFINED 7,11                      14610      0       0
TERADYNE INC         COM           880770102  2676    258766 SH       DEFINED 16,24,25                 211142      0   47624
TERADYNE INC         COM           880770102     2       202 SH       DEFINED 32,40,41                    202      0       0
TERADYNE INC         COM           880770102   518     50100 SH  CALL DEFINED 15,16,24                  50100      0       0
TERADYNE INC         COM           880770102   310     30000 SH  CALL DEFINED 16,24,25                  30000      0       0
TERADYNE INC         COM           880770102   749     72400 SH  PUT  DEFINED 15,16,24                  72400      0       0
TEREX CORP NEW       COM           880779103  3786     57735 SH       DEFINED 7,11                      57585      0     150
TEREX CORP NEW       COM           880779103   126      1925 SH       DEFINED 7,11,13                    1925      0       0
TEREX CORP NEW       COM           880779103     7       100 SH       DEFINED 7,11,33                       0      0     100
TEREX CORP NEW       COM           880779103 29703    452990 SH       DEFINED 16,24,25                 386018      0   66972
TEREX CORP NEW       COM           880779103   460      7019 SH       DEFINED 32,40,41                   7019      0       0
TEREX CORP NEW       COM           880779103  7416    113100 SH  CALL DEFINED 15,16,24                 113100      0       0
TEREX CORP NEW       COM           880779103  1147     17500 SH  CALL DEFINED 16,24,25                  17500      0       0
TEREX CORP NEW       COM           880779103  9422    143700 SH  PUT  DEFINED 15,16,24                 143700      0       0
TEREX CORP NEW       COM           880779103  1147     17500 SH  PUT  DEFINED 16,24,25                  17500      0       0
TERNIUM SA           SPON ADR      880890108  1706     42544 SH       DEFINED 16,24,25                  38286      0    4258
TERNIUM SA           SPON ADR      880890108   602     15000 SH  CALL DEFINED 15,16,24                  15000      0       0
TERNIUM SA           SPON ADR      880890108   923     23000 SH  PUT  DEFINED 15,16,24                  23000      0       0
TERRA INDS INC       COM           880915103 10226    214102 SH       DEFINED 16,24,25                 172736      0   41366
TERRA INDS INC       COM           880915103 30223    632800 SH  CALL DEFINED 15,16,24                 632800      0       0
TERRA INDS INC       COM           880915103  2689     56300 SH  PUT  DEFINED 15,16,24                  56300      0       0
TERRA NITROGEN CO L  COM UNIT      881005201  1671     10744 SH       DEFINED 16,24,25                  10744      0     433
TERREMARK WORLDWIDE  NOTE   9.00   88144BAC8  1130   1113000 PRN      DEFINED 16,24,25                1113000      0       0
TERREMARK WORLDWIDE  COM NEW        881448203    96     14800 SH       DEFINED 16,24,25                  14300      0     500
TESORO CORP          COM           881609101  3606     75592 SH       DEFINED 7,11                      75592      0       0
TESORO CORP          COM           881609101 11882    249100 SH       DEFINED 16,24                    249100      0       0
TESORO CORP          COM           881609101  4991    104623 SH       DEFINED 15,16,24                 104623      0       0
TESORO CORP          COM           881609101 19425    407233 SH       DEFINED 16,24,25                 390198      0   17035
TESORO CORP          COM           881609101  1129     23662 SH       DEFINED 32,40,41                  23662      0       0
TESORO CORP          COM           881609101  6041    126653 SH  CALL DEFINED 7,11                     126653      0       0
TESORO CORP          COM           881609101 15741    330000 SH  CALL DEFINED 15,16,24                 330000      0       0
TESORO CORP          COM           881609101 31096    651900 SH  PUT  DEFINED 15,16,24                 651900      0       0
TESORO CORP          COM           881609101  6041    126653 SH  PUT  DEFINED 16,24,25                 126653      0       0
TETRA TECHNOLOGIES I COM           88162F105    14       869 SH       DEFINED 7,11                        869      0       0
TETRA TECHNOLOGIES I COM           88162F105   463     29725 SH       DEFINED 7,11,13                   28775      0     950
TETRA TECHNOLOGIES I COM           88162F105    71      4586 SH       DEFINED 16,24,25                   4586      0       0
TETRA TECH INC NEW   COM           88162G103   487     22663 SH       DEFINED 7,11                      22663      0       0
TETRA TECH INC NEW   COM           88162G103  1195     55600 SH       DEFINED 7,11,13                   55600      0       0
TETRA TECH INC NEW   COM           88162G103   203      9442 SH       DEFINED 16,24,25                   8617      0     825
TETRA TECH INC NEW   COM           88162G103   172      8000 SH       DEFINED 32,40,41                   8000      0       0
TEVA PHARMACEUTICAL  ADR           881624209   720     15500 SH       DEFINED 30                        15500      0       0
TEVA PHARMACEUTICAL  ADR           881624209  2435     52398 SH       DEFINED 7,11                      28636      0   23762
TEVA PHARMACEUTICAL  ADR           881624209  2565     55188 SH       DEFINED 7,11,13                   54388      0     800
TEVA PHARMACEUTICAL  ADR           881624209    11       230 SH       DEFINED 7,11,33                       0      0     230
TEVA PHARMACEUTICAL  ADR           881624209 67596   1454292 SH       DEFINED 16,24,25                1195400      0  258891
TEVA PHARMACEUTICAL  ADR           881624209     8       180 SH       DEFINED 16,19,24,26,27              180      0       0
TEVA PHARMACEUTICAL  ADR           881624209 18783    404100 SH  CALL DEFINED 15,16,24                 404100      0       0
TEVA PHARMACEUTICAL  ADR           881624209  2412     51900 SH  CALL DEFINED 16,24,25                  51900      0       0
TEVA PHARMACEUTICAL  ADR           881624209  4476     96300 SH  PUT  DEFINED 15,16,24                  96300      0       0
TEVA PHARMACEUTICAL  ADR           881624209  2412     51900 SH  PUT  DEFINED 16,24,25                  51900      0       0
TEVA PHARMACEUTICAL  DBCV   0.25   88163VAE9  3917   3775000 PRN      DEFINED 16,24,25                3775000      0       0
TESSERA TECHNOLOGIES COM           88164LL00   191      4600 SH       DEFINED 30                         4600      0       0
TESSERA TECHNOLOGIES COM           88164LL00     3        68 SH       DEFINED 16,24,25                     68      0       0
TESSERA TECHNOLOGIES COM           88164LL00  8104    194800 SH  CALL DEFINED 16,24,25                 194800      0       0
TESSERA TECHNOLOGIES COM           88164LL00  1107     26600 SH  PUT  DEFINED 15,16,24                  26600      0       0
TEVA PHARMACEUTICAL  DBCV   0.50   88164RAA5   123     98000 PRN      DEFINED 16,24,25                  98000      0       0
TEVA PHARMACEUTICAL  DBCV   0.025  88164RAB3 13663  10000000 PRN      DEFINED 16,24,25               10000000      0       0
TEVA PHARMACEUTICAL  DBCV   0.25   88164RAB3    86     63000 PRN      DEFINED 16,24,25                  63000      0       0
TEVA PHARMACEUTICAL  NOTE   1.75   88165FAA0    63     57000 PRN      DEFINED 16,24,25                  57000      0       0
TEXAS INDS INC       COM           882491103   751     10712 SH       DEFINED 16,24,25                   9651      0    1061
TEXAS INSTRS INC     COM           882508104   291      8700 SH       DEFINED 12                            0      0    8700
TEXAS INSTRS INC     COM           882508104    37      1116 SH       DEFINED 3,9                           0      0    1116
TEXAS INSTRS INC     COM           882508104 38609   1155973 SH       DEFINED 7,11                    1075418  10000   70555
TEXAS INSTRS INC     COM           882508104     0         3 SH       DEFINED 16,24                          3      0       0
TEXAS INSTRS INC     COM           882508104  3142     94080 SH       DEFINED 7,11,13                   87340      0    6740
TEXAS INSTRS INC     COM           882508104   955     28592 SH       DEFINED 7,11,33                       0      0   28592
TEXAS INSTRS INC     COM           882508104 207313  6206990 SH       DEFINED 16,24,25                5170913      0 1036076
TEXAS INSTRS INC     COM           882508104  6170    184723 SH       DEFINED 32,40,41                 184723      0       0
TEXAS INSTRS INC     COM           882508104    74      2216 SH       DEFINED 5-7,11,43,44                  0   2216       0
TEXAS INSTRS INC     COM           882508104   941     28168 SH       DEFINED 16,19,24,26,27            28168      0       0
TEXAS INSTRS INC     COM           882508104   844     25259 SH       DEFINED 2,6,7,10-11,18,20,21,28   25259      0       0
TEXAS INSTRS INC     COM           882508104 13725    410936 SH  CALL DEFINED 7,11                     410936      0       0
TEXAS INSTRS INC     COM           882508104 42458   1271200 SH  CALL DEFINED 15,16,24                1271200      0       0
TEXAS INSTRS INC     COM           882508104 38614   1156100 SH  PUT  DEFINED 15,16,24                1156100      0       0
TEXAS INSTRS INC     COM           882508104 43978   1316700 SH  PUT  DEFINED 16,24,25                1316700      0       0
TEXAS INSTRS INC     COM           882508104 45763   1370136 SH  PUT  DEFINED 16,24,25                1370136      0       0
TEXAS ROADHOUSE INC  CL A          882681109   116     10450 SH       DEFINED 30                        10450      0       0
TEXAS ROADHOUSE INC  CL A          882681109   136     12339 SH       DEFINED 16,24,25                   9860      0    2479
TEXAS ROADHOUSE INC  CL A          882681109  1106    100000 SH  CALL DEFINED 16,24,25                 100000      0       0
THAI FD INC          COM           882904105   330     25260 SH       DEFINED 16,24,25                  18480      0    6780
THAI CAP FD INC      COM NEW       882905201     0         5 SH       DEFINED 16,24                          5      0       0
THAI CAP FD INC      COM NEW       882905201   273     20082 SH       DEFINED 16,24,25                  18633      0    1449
TEXTRON INC          COM           883203101   629      8820 SH       DEFINED 30                         8820      0       0
TEXTRON INC          COM           883203101  2360     33096 SH       DEFINED 7,11                      33096      0       0
TEXTRON INC          COM           883203101  1360     19069 SH       DEFINED 7,11,13                   19069      0       0
TEXTRON INC          COM           883203101   210      2950 SH       DEFINED 7,11,33                       0      0    2950
TEXTRON INC          COM           883203101 79635   1116902 SH       DEFINED 16,24,25                 906716      0  210185
TEXTRON INC          COM           883203101   713      9994 SH       DEFINED 32,40,41                   9994      0       0
TEXTRON INC          COM           883203101 13283    186300 SH  CALL DEFINED 15,16,24                 186300      0       0
TEXTRON INC          COM           883203101 10916    153100 SH  PUT  DEFINED 15,16,24                 153100      0       0
THE9 LTD             ADR           88337K104     2       100 SH       DEFINED 16,24                        100      0       0
THE9 LTD             ADR           88337K104   721     33804 SH       DEFINED 15,16,24                  33804      0       0
THE9 LTD             ADR           88337K104   250     11715 SH       DEFINED 16,24,25                   8628      0    3087
THE9 LTD             ADR           88337K104  1130     53000 SH  CALL DEFINED 15,16,24                  53000      0       0
THE9 LTD             ADR           88337K104  1192     55900 SH  PUT  DEFINED 16,24,25                  55900      0       0
THERAVANCE INC       COM           88338T104    18       939 SH       DEFINED 16,24,25                    754      0     185
THERAVANCE INC       COM           88338T104  3900    200000 SH  CALL DEFINED 7,11                     200000      0       0
THERAVANCE INC       COM           88338T104  6045    310000 SH  CALL DEFINED 16,24,25                 310000      0       0
THERMO FISHER SCIENT COM           883556102  1347     23360 SH       DEFINED 30                        23360      0       0
THERMO FISHER SCIENT COM           883556102  2481     43009 SH       DEFINED 7,11                      41659      0    1400
THERMO FISHER SCIENT COM           883556102   467      8097 SH       DEFINED 7,11,13                    8097      0       0
THERMO FISHER SCIENT COM           883556102 36690    636099 SH       DEFINED 16,24,25                 452912      0  183187
THERMO FISHER SCIENT COM           883556102  2959     51294 SH       DEFINED 32,40,41                  51294      0       0
THERMO FISHER SCIENT COM           883556102   115      2000 SH       DEFINED 5-7,11,43,44                  0   2000       0
THERMO FISHER SCIENT COM           883556102   617     10700 SH  CALL DEFINED 15,16,24                  10700      0       0
THERMO FISHER SCIENT COM           883556102   329      5700 SH  PUT  DEFINED 15,16,24                   5700      0       0
THINKENGINE NETWORKS COM           884090105     6     20975 SH       DEFINED 16,24,25                  20975      0       0
THIRD WAVE TECHNOLOG COM           88428W108   239     24795 SH       DEFINED 16,24,25                  23825      0     970
THOMAS & BETTS CORP  COM           884315102  3720     75849 SH       DEFINED 7,11                      75849      0       0
THOMAS & BETTS CORP  COM           884315102    39       800 SH       DEFINED 7,11,13                     800      0       0
THOMAS & BETTS CORP  COM           884315102  4657     94959 SH       DEFINED 16,24,25                  90104      0    4855
THOMSON CORP         COM           884903105   118      2893 SH       DEFINED 7,11                        893      0    2000
THOMSON CORP         COM           884903105  1400     34366 SH       DEFINED 32,40,41                  34366      0       0
```

| Name | Type | CUSIP | | | | | Codes | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| THOMSON CORP | COM | 884903105 | 506 | 12417 | SH | DEFINED | 4,6,7,11 | 12417 | 0 | 0 |
| THOMSON CORP | COM | 884903105 | 541 | 13285 | SH | DEFINED | 5-7,11,43,44 | 0 | 13285 | 0 |
| THOMSON | SPONSORED | 885118109 | 324 | 23135 | SH | DEFINED | 16,24,25 | 22249 | 0 | 886 |
| THOR INDS INC | COM | 885160101 | 57 | 1500 | SH | DEFINED | 30 | 1500 | 0 | 0 |
| THOR INDS INC | COM | 885160101 | 14 | 377 | SH | DEFINED | 7,11 | 377 | 0 | 0 |
| THOR INDS INC | COM | 885160101 | 11 | 300 | SH | DEFINED | 7,11,13 | 300 | 0 | 0 |
| THOR INDS INC | COM | 885160101 | 1383 | 36372 | SH | DEFINED | 16,24,25 | 30732 | 0 | 5640 |
| THORATEC CORP | COM NEW | 885175307 | 778 | 42775 | SH | DEFINED | 7,11,13 | 42775 | 0 | 0 |
| THORATEC CORP | COM NEW | 885175307 | 24 | 1346 | SH | DEFINED | 16,24,25 | 1241 | 0 | 105 |
| THORNBURG MTG INC | COM | 885218107 | 3 | 300 | SH | DEFINED | 7,11 | 0 | 0 | 300 |
| THORNBURG MTG INC | COM | 885218107 | 1918 | 207621 | SH | DEFINED | 16,24,25 | 163203 | 0 | 44418 |
| THORNBURG MTG INC | COM | 885218107 | 9 | 1000 | SH | CALL DEFINED | 16,24,25 | 1000 | 0 | 0 |
| THORNBURG MTG INC | PFD CONV S | 885218701 | 8050 | 335409 | SH | DEFINED | 16,24,25 | 267345 | 0 | 68064 |
| 3COM CORP | COM | 885535104 | 5 | 1185 | SH | DEFINED | 7,11 | 0 | 0 | 1185 |
| 3COM CORP | COM | 885535104 | 4520 | 1000000 | SH | DEFINED | 16,24 | 1000000 | 0 | 0 |
| 3COM CORP | COM | 885535104 | 373 | 82572 | SH | DEFINED | 15,16,24 | 82572 | 0 | 0 |
| 3COM CORP | COM | 885535104 | 168 | 37091 | SH | DEFINED | 16,24,25 | 33028 | 0 | 4063 |
| 3COM CORP | COM | 885535104 | 5835 | 1290900 | SH | CALL DEFINED | 16,24,25 | 1290900 | 0 | 0 |
| 3COM CORP | COM | 885535104 | 122 | 27100 | SH | PUT DEFINED | 15,16,24 | 27100 | 0 | 0 |
| 3M CO | COM | 88579Y101 | 137 | 1628 | SH | DEFINED | 3,9 | 0 | 0 | 1628 |
| 3M CO | COM | 88579Y101 | 49319 | 584906 | SH | DEFINED | 7,11 | 411183 | 5600 | 168123 |
| 3M CO | COM | 88579Y101 | 2234 | 26500 | SH | DEFINED | 16,24 | 26500 | 0 | 0 |
| 3M CO | COM | 88579Y101 | 3712 | 44017 | SH | DEFINED | 7,11,13 | 38021 | 0 | 5996 |
| 3M CO | COM | 88579Y101 | 384 | 4560 | SH | DEFINED | 7,11,33 | 0 | 0 | 4560 |
| 3M CO | COM | 88579Y101 | 4523 | 53645 | SH | DEFINED | 15,16,24 | 53645 | 0 | 0 |
| 3M CO | COM | 88579Y101 | 120435 | 1428306 | SH | DEFINED | 16,24,25 | 1113833 | 0 | 314473 |
| 3M CO | COM | 88579Y101 | 2184 | 25902 | SH | DEFINED | 32,40,41 | 25902 | 0 | 0 |
| 3M CO | COM | 88579Y101 | 252 | 2990 | SH | DEFINED | 5-7,11,43,44 | 0 | 2990 | 0 |
| 3M CO | COM | 88579Y101 | 2696 | 31976 | SH | DEFINED | 16,19,24,26,27 | 31976 | 0 | 0 |
| 3M CO | COM | 88579Y101 | 34293 | 406700 | SH | CALL DEFINED | 15,16,24 | 406700 | 0 | 0 |
| 3M CO | COM | 88579Y101 | 15515 | 184000 | SH | CALL DEFINED | 16,24,25 | 184000 | 0 | 0 |
| 3M CO | COM | 88579Y101 | 30018 | 356000 | SH | PUT DEFINED | 15,16,24 | 356000 | 0 | 0 |
| 3M CO | COM | 88579Y101 | 24175 | 286700 | SH | PUT DEFINED | 16,24,25 | 286700 | 0 | 0 |
| TIBCO SOFTWARE INC | COM | 88632Q103 | 1467 | 181760 | SH | DEFINED | 7,11 | 181760 | 0 | 0 |
| TIBCO SOFTWARE INC | COM | 88632Q103 | 454 | 56200 | SH | DEFINED | 15,16,24 | 56200 | 0 | 0 |
| TIBCO SOFTWARE INC | COM | 88632Q103 | 1215 | 150506 | SH | DEFINED | 16,24,25 | 103482 | 0 | 47024 |
| TIBCO SOFTWARE INC | COM | 88632Q103 | 4510 | 558800 | SH | CALL DEFINED | 16,24,25 | 558800 | 0 | 0 |
| TIBCO SOFTWARE INC | COM | 88632Q103 | 24 | 3000 | SH | PUT DEFINED | 15,16,24 | 3000 | 0 | 0 |
| TIBCO SOFTWARE INC | COM | 88632Q103 | 525 | 65000 | SH | PUT DEFINED | 16,24,25 | 65000 | 0 | 0 |
| TIDEWATER INC | COM | 886423102 | 60 | 1100 | SH | DEFINED | 30 | 1100 | 0 | 0 |
| TIDEWATER INC | COM | 886423102 | 6918 | 126100 | SH | DEFINED | 42 | 126100 | 0 | 0 |
| TIDEWATER INC | COM | 886423102 | 5356 | 97632 | SH | DEFINED | 7,11 | 97632 | 0 | 0 |
| TIDEWATER INC | COM | 886423102 | 1 | 15 | SH | DEFINED | 16,24 | 15 | 0 | 0 |
| TIDEWATER INC | COM | 886423102 | 1186 | 21625 | SH | DEFINED | 7,11,13 | 21625 | 0 | 0 |
| TIDEWATER INC | COM | 886423102 | 7669 | 139795 | SH | DEFINED | 16,24,25 | 134325 | 0 | 5469 |
| TIDEWATER INC | COM | 886423102 | 121 | 2200 | SH | DEFINED | 32,40,41 | 2200 | 0 | 0 |
| TIDEWATER INC | COM | 886423102 | 4078 | 74341 | SH | CALL DEFINED | 7,11 | 74341 | 0 | 0 |
| TIDEWATER INC | COM | 886423102 | 8948 | 163100 | SH | CALL DEFINED | 15,16,24 | 163100 | 0 | 0 |
| TIDEWATER INC | COM | 886423102 | 2244 | 40900 | SH | CALL DEFINED | 16,24,25 | 40900 | 0 | 0 |
| TIDEWATER INC | COM | 886423102 | 2661 | 48500 | SH | PUT DEFINED | 15,16,24 | 48500 | 0 | 0 |
| TIDEWATER INC | COM | 886423102 | 5499 | 100241 | SH | PUT DEFINED | 16,24,25 | 100241 | 0 | 0 |
| TIFFANY & CO NEW | COM | 886547108 | 593 | 12885 | SH | DEFINED | 7,11 | 12885 | 0 | 0 |
| TIFFANY & CO NEW | COM | 886547108 | 5 | 100 | SH | DEFINED | 7,11,13 | 100 | 0 | 0 |
| TIFFANY & CO NEW | COM | 886547108 | 2848 | 61870 | SH | DEFINED | 15,16,24 | 61870 | 0 | 0 |
| TIFFANY & CO NEW | COM | 886547108 | 14890 | 323482 | SH | DEFINED | 16,24,25 | 236908 | 0 | 86574 |
| TIFFANY & CO NEW | COM | 886547108 | 909 | 19739 | SH | DEFINED | 32,40,41 | 19739 | 0 | 0 |
| TIFFANY & CO NEW | COM | 886547108 | 291 | 6329 | SH | DEFINED | 16,19,24,26,27 | 6329 | 0 | 0 |
| TIFFANY & CO NEW | COM | 886547108 | 5335 | 115900 | SH | CALL DEFINED | 15,16,24 | 115900 | 0 | 0 |
| TIFFANY & CO NEW | COM | 886547108 | 32 | 700 | SH | CALL DEFINED | 16,24,25 | 700 | 0 | 0 |
| TIFFANY & CO NEW | COM | 886547108 | 14780 | 321100 | SH | PUT DEFINED | 15,16,24 | 321100 | 0 | 0 |
| TIFFANY & CO NEW | COM | 886547108 | 157 | 3400 | SH | PUT DEFINED | 16,24,25 | 3400 | 0 | 0 |
| TIM HORTONS INC | COM | 88706M103 | 2669 | 72267 | SH | DEFINED | 7,11 | 72267 | 0 | 0 |
| TIM HORTONS INC | COM | 88706M103 | 35 | 947 | SH | DEFINED | 7,11,13 | 947 | 0 | 0 |
| TIM HORTONS INC | COM | 88706M103 | 792 | 21452 | SH | DEFINED | 16,24,25 | 19309 | 0 | 2143 |
| TIM HORTONS INC | COM | 88706M103 | 203 | 5502 | SH | DEFINED | 32,40,41 | 5502 | 0 | 0 |
| TIM HORTONS INC | COM | 88706M103 | 295 | 8000 | SH | CALL DEFINED | 15,16,24 | 8000 | 0 | 0 |
| TIM HORTONS INC | COM | 88706M103 | 281 | 7600 | SH | CALL DEFINED | 16,24,25 | 7600 | 0 | 0 |
| TIM HORTONS INC | COM | 88706M103 | 672 | 18200 | SH | PUT DEFINED | 15,16,24 | 18200 | 0 | 0 |
| TIM HORTONS INC | COM | 88706M103 | 273 | 7400 | SH | PUT DEFINED | 16,24,25 | 7400 | 0 | 0 |
| TIMBERLAND CO | CL A | 887100105 | 7 | 400 | SH | DEFINED | 12 | 0 | 0 | 400 |
| TIMBERLAND CO | CL A | 887100105 | 2 | 114 | SH | DEFINED | 3,9 | 0 | 0 | 114 |
| TIMBERLAND CO | CL A | 887100105 | 251 | 13866 | SH | DEFINED | 16,24,25 | 12972 | 0 | 894 |
| TIMBERLAND CO | CL A | 887100105 | 18 | 1000 | SH | DEFINED | 5-7,11,43,44 | 0 | 1000 | 0 |
| TIME WARNER INC | COM | 887317105 | 33 | 2027 | SH | DEFINED | 3,9 | 0 | 0 | 2027 |
| TIME WARNER INC | COM | 887317105 | 17198 | 1041662 | SH | DEFINED | 7,11 | 929687 | 3000 | 108975 |
| TIME WARNER INC | COM | 887317105 | 2418 | 146437 | SH | DEFINED | 7,11,13 | 145677 | 0 | 750 |
| TIME WARNER INC | COM | 887317105 | 305 | 18500 | SH | DEFINED | 7,11,33 | 0 | 0 | 18500 |
| TIME WARNER INC | COM | 887317105 | 9895 | 599314 | SH | DEFINED | 15,16,24 | 599314 | 0 | 0 |
| TIME WARNER INC | COM | 887317105 | 161445 | 9778643 | SH | DEFINED | 16,24,25 | 8157976 | 0 | 1620667 |
| TIME WARNER INC | COM | 887317105 | 5122 | 310216 | SH | DEFINED | 32,40,41 | 310216 | 0 | 0 |
| TIME WARNER INC | COM | 887317105 | 67 | 4040 | SH | DEFINED | 5-7,11,43,44 | 0 | 4040 | 0 |
| TIME WARNER INC | COM | 887317105 | 3886 | 235350 | SH | DEFINED | 16,19,24,26,27 | 235350 | 0 | 0 |
| TIME WARNER INC | COM | 887317105 | 19608 | 1187658 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 1187658 | 0 | 0 |
| TIME WARNER INC | COM | 887317105 | 6398 | 387500 | SH | CALL DEFINED | 7,11 | 387500 | 0 | 0 |
| TIME WARNER INC | COM | 887317105 | 17028 | 1031400 | SH | CALL DEFINED | 15,16,24 | 1031400 | 0 | 0 |
| TIME WARNER INC | COM | 887317105 | 21645 | 1311000 | SH | CALL DEFINED | 16,24,25 | 1311000 | 0 | 0 |
| TIME WARNER INC | COM | 887317105 | 15518 | 939900 | SH | PUT DEFINED | 15,16,24 | 939900 | 0 | 0 |
| TIME WARNER INC | COM | 887317105 | 9610 | 582100 | SH | PUT DEFINED | 16,24,25 | 582100 | 0 | 0 |
| TIME WARNER TELECOM | CL A | 887319101 | 4476 | 220617 | SH | DEFINED | 16,24,25 | 213913 | 0 | 6704 |
| TIME WARNER TELECOM | CL A | 887319101 | 7601 | 374640 | SH | DEFINED | 32,40,41 | 374640 | 0 | 0 |
| TIME WARNER CABLE IN | CL A | 88732J108 | 30 | 1074 | SH | DEFINED | 7,11 | 1074 | 0 | 0 |
| TIME WARNER CABLE IN | CL A | 88732J108 | 3169 | 114826 | SH | DEFINED | 16,24,25 | 111211 | 0 | 3615 |
| TIME WARNER CABLE IN | CL A | 88732J108 | 1782 | 64580 | SH | DEFINED | 32,40,41 | 64580 | 0 | 0 |
| TIME WARNER CABLE IN | CL A | 88732J108 | 1362 | 49347 | SH | DEFINED | 16,19,24,26,27 | 49347 | 0 | 0 |
| TIME WARNER CABLE IN | CL A | 88732J108 | 2691 | 97500 | SH | CALL DEFINED | 15,16,24 | 97500 | 0 | 0 |
| TIME WARNER CABLE IN | CL A | 88732J108 | 436 | 15800 | SH | PUT DEFINED | 15,16,24 | 15800 | 0 | 0 |
| TIMKEN CO | COM | 887389104 | 51 | 1541 | SH | DEFINED | 7,11,13 | 1541 | 0 | 0 |
| TIMKEN CO | COM | 887389104 | 2419 | 73631 | SH | DEFINED | 16,24,25 | 46652 | 0 | 26979 |
| TITANIUM METALS CORP | COM NEW | 888339207 | 344 | 13020 | SH | DEFINED | 7,11 | 13020 | 0 | 0 |
| TITANIUM METALS CORP | COM NEW | 888339207 | 1211 | 45795 | SH | DEFINED | 15,16,24 | 45795 | 0 | 0 |
| TITANIUM METALS CORP | COM NEW | 888339207 | 8839 | 334178 | SH | DEFINED | 16,24,25 | 300784 | 0 | 33394 |
| TITANIUM METALS CORP | COM NEW | 888339207 | 2 | 75 | SH | DEFINED | 32,40,41 | 75 | 0 | 0 |
| TITANIUM METALS CORP | COM NEW | 888339207 | 3737 | 141300 | SH | CALL DEFINED | 15,16,24 | 141300 | 0 | 0 |
| TITANIUM METALS CORP | COM NEW | 888339207 | 336 | 12700 | SH | CALL DEFINED | 16,24,25 | 12700 | 0 | 0 |
| TITANIUM METALS CORP | COM NEW | 888339207 | 4764 | 180100 | SH | PUT DEFINED | 15,16,24 | 180100 | 0 | 0 |
| TITANIUM METALS CORP | COM NEW | 888339207 | 1521 | 57500 | SH | PUT DEFINED | 16,24,25 | 57500 | 0 | 0 |
| TIVO INC | COM | 888706108 | 20998 | 2516500 | SH | DEFINED | 16,24 | 2516500 | 0 | 0 |
| TIVO INC | COM | 888706108 | 304 | 36473 | SH | DEFINED | 15,16,24 | 36473 | 0 | 0 |
| TIVO INC | COM | 888706108 | 3772 | 452305 | SH | DEFINED | 16,24,25 | 385518 | 0 | 66787 |
| TIVO INC | COM | 888706108 | 1541 | 184800 | SH | CALL DEFINED | 15,16,24 | 184800 | 0 | 0 |
| TIVO INC | COM | 888706108 | 282 | 33800 | SH | PUT DEFINED | 15,16,24 | 33800 | 0 | 0 |
| TODD SHIPYARDS CORP | COM | 889039103 | 239 | 12580 | SH | DEFINED | 16,24,25 | 11080 | 0 | 1500 |
| TOLL BROTHERS INC | COM | 889478103 | 1351 | 67372 | SH | DEFINED | 7,11 | 6272 | 0 | 61100 |
| TOLL BROTHERS INC | COM | 889478103 | 4 | 200 | SH | DEFINED | 16,24 | 200 | 0 | 0 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| TOLL BROTHERS INC | COM | 889478103 | 3712 | 185046 | SH | DEFINED | 16,24,25 | 160104 | 0 | 24942 |
| TOLL BROTHERS INC | COM | 889478103 | 177 | 8848 | SH | DEFINED | 32,40,41 | 8848 | 0 | 0 |
| TOLL BROTHERS INC | COM | 889478103 | 19 | 970 | SH | DEFINED | 5-7,11,43,44 | 0 | 970 | 0 |
| TOLL BROTHERS INC | COM | 889478103 | 9950 | 496000 | SH | DEFINED | 15,16,24 | 496000 | 0 | 0 |
| TOLL BROTHERS INC | COM | 889478103 | 526 | 26200 | SH | CALL DEFINED | 16,24,25 | 26200 | 0 | 0 |
| TOLL BROTHERS INC | COM | 889478103 | 18628 | 928600 | SH | PUT DEFINED | 15,16,24 | 928600 | 0 | 0 |
| TOLL BROTHERS INC | COM | 889478103 | 1174 | 58500 | SH | DEFINED | 16,24,25 | 58500 | 0 | 0 |
| TOMKINS PLC | SPONSORED | 890030208 | 144 | 10303 | SH | DEFINED | 7,11 | 0 | 0 | 10303 |
| TOMKINS PLC | SPONSORED | 890030208 | 2 | 140 | SH | DEFINED | 7,11,33 | 0 | 0 | 140 |
| TOMKINS PLC | SPONSORED | 890030208 | 416 | 29847 | SH | DEFINED | 16,24,25 | 29061 | 0 | 786 |
| TOMKINS PLC | SPONSORED | 890030208 | 2324 | 166629 | SH | DEFINED | 16,19,24,26,29 | 166629 | 0 | 0 |
| TOMOTHERAPY INC | COM | 890088107 | 192 | 9800 | SH | DEFINED | 30 | 9800 | 0 | 0 |
| TOMOTHERAPY INC | COM | 890088107 | 36 | 1855 | SH | DEFINED | 16,24,25 | 1855 | 0 | 0 |
| TOOTSIE ROLL INDS IN | COM | 890516107 | 59 | 2134 | SH | DEFINED | 7,11,13 | 2134 | 0 | 0 |
| TOOTSIE ROLL INDS IN | COM | 890516107 | 541 | 19734 | SH | DEFINED | 16,24,25 | 16154 | 0 | 3579 |
| TORCHMARK CORP | COM | 891027104 | 585 | 9669 | SH | DEFINED | 7,11 | 7269 | 0 | 2400 |
| TORCHMARK CORP | COM | 891027104 | 420 | 6935 | SH | DEFINED | 16,24,25 | 6685 | 0 | 250 |
| TORCHMARK CORP | COM | 891027104 | 161 | 2654 | SH | DEFINED | 32,40,41 | 2654 | 0 | 0 |
| TORO CO | COM | 891092108 | 27 | 488 | SH | DEFINED | 7,11 | 488 | 0 | 0 |
| TORO CO | COM | 891092108 | 907 | 16662 | SH | DEFINED | 16,24,25 | 15536 | 0 | 1126 |
| TORO CO | COM | 891092108 | 621 | 11400 | SH | DEFINED | 32,40,41 | 11400 | 0 | 0 |
| TORONTO DOMINION BK | COM NEW | 891160509 | 145 | 2076 | SH | DEFINED | 7,11 | 0 | 0 | 2076 |
| TORONTO DOMINION BK | COM NEW | 891160509 | 16 | 235 | SH | DEFINED | 7,11,13 | 235 | 0 | 0 |
| TORONTO DOMINION BK | COM NEW | 891160509 | 809 | 11571 | SH | DEFINED | 16,24,25 | 9781 | 0 | 1790 |
| TORONTO DOMINION BK | COM NEW | 891160509 | 3403 | 48656 | SH | DEFINED | 32,40,41 | 48656 | 0 | 0 |
| TORONTO DOMINION BK | COM NEW | 891160509 | 10293 | 147152 | SH | DEFINED | 4,6,7,11 | 147152 | 0 | 0 |
| TORONTO DOMINION BK | COM NEW | 891160509 | 1042 | 14897 | SH | DEFINED | 5-7,11,43,44 | 0 | 14897 | 0 |
| TORTOISE ENERGY INFR | COM | 89147L100 | 1283 | 38510 | SH | DEFINED | 16,24,25 | 28908 | 0 | 9601 |
| TORTOISE ENERGY CAP | COM | 89147U100 | 2848 | 112803 | SH | DEFINED | 16,24,25 | 103734 | 0 | 9069 |
| TOTAL S A | SPONSORED | 89151E109 | 495 | 5990 | SH | DEFINED | 30 | 5990 | 0 | 0 |
| TOTAL S A | SPONSORED | 89151E109 | 671 | 8122 | SH | DEFINED | 7,11 | 0 | 0 | 8122 |
| TOTAL S A | SPONSORED | 89151E109 | 386 | 4676 | SH | DEFINED | 7,11,13 | 4526 | 0 | 150 |
| TOTAL S A | SPONSORED | 89151E109 | 192 | 2330 | SH | DEFINED | 7,11,33 | 0 | 0 | 2330 |
| TOTAL S A | SPONSORED | 89151E109 | 1348 | 16318 | SH | DEFINED | 15,16,24 | 16318 | 0 | 0 |
| TOTAL S A | SPONSORED | 89151E109 | 28367 | 343430 | SH | DEFINED | 16,24,25 | 297124 | 0 | 46306 |
| TOTAL S A | SPONSORED | 89151E109 | 1814 | 21960 | SH | DEFINED | 16,19,24,26,27 | 21960 | 0 | 0 |
| TOTAL S A | SPONSORED | 89151E109 | 1545 | 18700 | SH | CALL DEFINED | 15,16,24 | 18700 | 0 | 0 |
| TOTAL S A | SPONSORED | 89151E109 | 3511 | 42500 | SH | PUT DEFINED | 15,16,24 | 42500 | 0 | 0 |
| TOTAL SYS SVCS INC | COM | 891906109 | 66 | 2354 | SH | DEFINED | 7,11 | 2354 | 0 | 0 |
| TOTAL SYS SVCS INC | COM | 891906109 | 98 | 3500 | SH | DEFINED | 16,24 | 3500 | 0 | 0 |
| TOTAL SYS SVCS INC | COM | 891906109 | 333 | 11875 | SH | DEFINED | 7,11,13 | 11875 | 0 | 0 |
| TOTAL SYS SVCS INC | COM | 891906109 | 2745 | 98037 | SH | DEFINED | 16,24,25 | 85272 | 0 | 12765 |
| TOWNEBANK PORTSMOUTH | COM | 89214P109 | 2 | 96 | SH | DEFINED | 16,24 | 96 | 0 | 0 |
| TOWNEBANK PORTSMOUTH | COM | 89214P109 | 668 | 41489 | SH | DEFINED | 16,24,25 | 33386 | 0 | 8103 |
| TOYOTA MOTOR CORP | SP ADR REP | 892331307 | 270 | 2540 | SH | DEFINED | 30 | 2540 | 0 | 0 |
| TOYOTA MOTOR CORP | SP ADR REP | 892331307 | 314 | 2955 | SH | DEFINED | 7,11 | 0 | 0 | 2955 |
| TOYOTA MOTOR CORP | SP ADR REP | 892331307 | 173 | 1628 | SH | DEFINED | 7,11,13 | 1558 | 0 | 70 |
| TOYOTA MOTOR CORP | SP ADR REP | 892331307 | 185 | 1740 | SH | DEFINED | 7,11,33 | 0 | 0 | 1740 |
| TOYOTA MOTOR CORP | SP ADR REP | 892331307 | 34067 | 320871 | SH | DEFINED | 16,24,25 | 245400 | 0 | 75471 |
| TOYOTA MOTOR CORP | SP ADR REP | 892331307 | 382 | 3600 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 3600 | 0 | 0 |
| TOYOTA MOTOR CORP | SP ADR REP | 892331307 | 15235 | 143500 | SH | CALL DEFINED | 15,16,24 | 143500 | 0 | 0 |
| TOYOTA MOTOR CORP | SP ADR REP | 892331307 | 53 | 500 | SH | CALL DEFINED | 16,24,25 | 500 | 0 | 0 |
| TOYOTA MOTOR CORP | SP ADR REP | 892331307 | 6827 | 64300 | SH | PUT DEFINED | 15,16,24 | 64300 | 0 | 0 |
| TRACTOR SUPPLY CO | COM | 892356106 | 20 | 563 | SH | DEFINED | 7,11 | 423 | 0 | 140 |
| TRACTOR SUPPLY CO | COM | 892356106 | 90 | 2510 | SH | DEFINED | 7,11,13 | 1910 | 0 | 600 |
| TRACTOR SUPPLY CO | COM | 892356106 | 3569 | 99316 | SH | DEFINED | 16,24,25 | 75726 | 0 | 23590 |
| TRANE INC | COM | 892893108 | 2546 | 54509 | SH | DEFINED | 7,11 | 54509 | 0 | 0 |
| TRANE INC | COM | 892893108 | 7 | 160 | SH | DEFINED | 7,11,13 | 160 | 0 | 0 |
| TRANE INC | COM | 892893108 | 6667 | 142741 | SH | DEFINED | 15,16,24 | 142741 | 0 | 0 |
| TRANE INC | COM | 892893108 | 24164 | 517320 | SH | DEFINED | 16,24,25 | 504226 | 0 | 13094 |
| TRANE INC | COM | 892893108 | 237 | 5067 | SH | DEFINED | 32,40,41 | 5067 | 0 | 0 |
| TRANE INC | COM | 892893108 | 11551 | 247300 | SH | CALL DEFINED | 15,16,24 | 247300 | 0 | 0 |
| TRANE INC | COM | 892893108 | 2256 | 48300 | SH | CALL DEFINED | 16,24,25 | 48300 | 0 | 0 |
| TRANE INC | COM | 892893108 | 7193 | 154000 | SH | PUT DEFINED | 15,16,24 | 154000 | 0 | 0 |
| TRANSACT TECHNOLOGIE | COM | 892918103 | 227 | 47399 | SH | DEFINED | 16,24,25 | 40387 | 0 | 7012 |
| TRANS-INDIA ACQUISIT | COM | 893237107 | 3215 | 433900 | SH | DEFINED | 16,24,25 | 433900 | 0 | 0 |
| TRANS-INDIA ACQUISIT | *W EXP 02/ | 893237115 | 738 | 1190750 | SH | DEFINED | 16,24,25 | 1190750 | 0 | 0 |
| TRANSALTA CORP | COM | 89346D107 | 1 | 40 | SH | DEFINED | 7,11 | 40 | 0 | 0 |
| TRANSALTA CORP | COM | 89346D107 | 9018 | 269355 | SH | DEFINED | 32,40,41 | 269355 | 0 | 0 |
| TRANSALTA CORP | COM | 89346D107 | 555 | 16565 | SH | DEFINED | 4,6,7,11 | 16565 | 0 | 0 |
| TRANSATLANTIC HLDGS | COM | 893521104 | 254 | 3500 | SH | DEFINED | 7,11 | 0 | 0 | 3500 |
| TRANSATLANTIC HLDGS | COM | 893521104 | 101 | 1385 | SH | DEFINED | 7,11 | 1385 | 0 | 0 |
| TRANSATLANTIC HLDGS | COM | 893521104 | 281 | 3865 | SH | DEFINED | 7,11,13 | 3865 | 0 | 0 |
| TRANSATLANTIC HLDGS | COM | 893521104 | 946 | 13022 | SH | DEFINED | 16,24,25 | 10975 | 0 | 2047 |
| TRANSATLANTIC HLDGS | COM | 893521104 | 22 | 300 | SH | DEFINED | 32,40,41 | 300 | 0 | 0 |
| TRANSCANADA CORP | COM | 89353D107 | 43 | 1062 | SH | DEFINED | 7,11,13 | 1002 | 0 | 60 |
| TRANSCANADA CORP | COM | 89353D107 | 1617 | 39496 | SH | DEFINED | 16,24,25 | 27553 | 0 | 11943 |
| TRANSCANADA CORP | COM | 89353D107 | 651 | 15898 | SH | DEFINED | 32,40,41 | 15898 | 0 | 0 |
| TRANSCANADA CORP | COM | 89353D107 | 2153 | 52613 | SH | DEFINED | 4,6,7,11 | 52613 | 0 | 0 |
| TRANSCANADA CORP | COM | 89353D107 | 556 | 13589 | SH | DEFINED | 16,19,24,26,27 | 13589 | 0 | 0 |
| TRANSDIGM GROUP INC | COM | 893641100 | 2016 | 49642 | SH | DEFINED | 16,24,25 | 27587 | 0 | 17035 |
| TRANSFORMA ACQUISITI | COM | 89366E100 | 141 | 18600 | SH | DEFINED | 16,24,25 | 18600 | 0 | 0 |
| TRANSFORMA ACQUISITI | *W EXP 12/ | 89366E118 | 532 | 783000 | SH | DEFINED | 16,24,25 | 783000 | 0 | 0 |
| TRANSITION THERAPEUT | COM NEW | 893716209 | 1 | 73 | SH | DEFINED | 16,24 | 73 | 0 | 0 |
| TRANSITION THERAPEUT | COM NEW | 893716209 | 204 | 18000 | SH | DEFINED | 16,24,25 | 18000 | 0 | 0 |
| TRANSMETA CORP DEL | COM | 89376R208 | 1462 | 107000 | SH | DEFINED | 7,11 | 107000 | 0 | 0 |
| TRANSMETA CORP DEL | COM | 89376R208 | 29 | 2138 | SH | DEFINED | 16,24,25 | 2038 | 0 | 100 |
| TRANSMONTAIGNE PARTN | COM UNIT L | 89376V100 | 343 | 12072 | SH | DEFINED | 16,24,25 | 11672 | 0 | 400 |
| TRANSOCEAN SEDCO FOR | NOTE 1.50 | 893830AV1 | 36038 | 33100000 | PRN | DEFINED | 16,24,25 | 33100000 | 0 | 0 |
| TRANSOCEAN SEDCO FOR | NOTE 1.50 | 893830AW9 | 14700 | 13533000 | PRN | DEFINED | 16,24,25 | 13533000 | 0 | 0 |
| TRANSPORTADORA DE GA | SPON ADR B | 893870204 | 158 | 26542 | SH | DEFINED | 16,24,25 | 24119 | 0 | 2423 |
| TRAVELERS COMPANIES | COM | 89417E109 | 508 | 9450 | SH | DEFINED | 12 | 0 | 0 | 9450 |
| TRAVELERS COMPANIES | COM | 89417E109 | 839 | 15600 | SH | DEFINED | 30 | 15600 | 0 | 0 |
| TRAVELERS COMPANIES | COM | 89417E109 | 5702 | 105984 | SH | DEFINED | 3,9 | 0 | 0 | 105984 |
| TRAVELERS COMPANIES | COM | 89417E109 | 16844 | 313085 | SH | DEFINED | 7,11 | 88944 | 0 | 224141 |
| TRAVELERS COMPANIES | COM | 89417E109 | 1560 | 29000 | SH | DEFINED | 16,24 | 29000 | 0 | 0 |
| TRAVELERS COMPANIES | COM | 89417E109 | 3399 | 63174 | SH | DEFINED | 7,11,13 | 57619 | 0 | 5555 |
| TRAVELERS COMPANIES | COM | 89417E109 | 228 | 4235 | SH | DEFINED | 7,11,33 | 0 | 0 | 4235 |
| TRAVELERS COMPANIES | COM | 89417E109 | 33790 | 628073 | SH | DEFINED | 16,24,25 | 492508 | 0 | 135564 |
| TRAVELERS COMPANIES | COM | 89417E109 | 1610 | 29917 | SH | DEFINED | 32,40,41 | 29917 | 0 | 0 |
| TRAVELERS COMPANIES | COM | 89417E109 | 31 | 571 | SH | DEFINED | 5-7,11,43,44 | 0 | 571 | 0 |
| TRAVELERS COMPANIES | COM | 89417E109 | 10378 | 192900 | SH | CALL DEFINED | 15,16,24 | 192900 | 0 | 0 |
| TRAVELERS COMPANIES | COM | 89417E109 | 5552 | 103200 | SH | CALL DEFINED | 16,24,25 | 103200 | 0 | 0 |
| TRAVELERS COMPANIES | COM | 89417E109 | 13601 | 252800 | SH | PUT DEFINED | 15,16,24 | 252800 | 0 | 0 |
| TRAVELERS COMPANIES | COM | 89417E109 | 5498 | 102200 | SH | PUT DEFINED | 16,24,25 | 102200 | 0 | 0 |
| TRAVELCENTERS OF AME | COM | 89417410L | 1988 | 159047 | SH | DEFINED | 7,11 | 159047 | 0 | 0 |
| TRAVELCENTERS OF AME | COM | 89417410L | 44 | 3515 | SH | DEFINED | 16,24,25 | 2840 | 0 | 675 |
| TRI CONTL CORP | COM | 895436103 | 108 | 5179 | SH | DEFINED | 7,11 | 5179 | 0 | 0 |
| TRI CONTL CORP | COM | 895436103 | 21070 | 1008111 | SH | DEFINED | 16,24 | 1008111 | 0 | 0 |
| TRI CONTL CORP | COM | 895436103 | 532 | 25465 | SH | DEFINED | 7,11,13 | 25465 | 0 | 0 |
| TRI CONTL CORP | COM | 895436103 | 4934 | 236087 | SH | DEFINED | 16,24,25 | 197729 | 0 | 38357 |
| TRI VY CORP | COM | 895735108 | 1092 | 147583 | SH | DEFINED | 16,24,25 | 147183 | 0 | 400 |
| TRIDENT MICROSYSTEMS | COM | 895919108 | 331 | 50452 | SH | DEFINED | 15,16,24 | 50452 | 0 | 0 |
| TRIDENT MICROSYSTEMS | COM | 895919108 | 60 | 9118 | SH | DEFINED | 16,24,25 | 9118 | 0 | 0 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| TRIDENT MICROSYSTEMS | COM | 895919108 | 1575 | 240100 | SH | CALL DEFINED | 15,16,24 | 240100 | 0 | 0 |
| TRIDENT MICROSYSTEMS | COM | 895919108 | 983 | 149900 | SH | PUT DEFINED | 15,16,24 | 149900 | 0 | 0 |
| TRIAD GTY INC | COM | 895925105 | 567 | 57825 | SH | DEFINED | 16,24,25 | 56794 | 0 | 1031 |
| TRIARC COS INC | CL A | 895927101 | 222 | 25400 | SH | DEFINED | 16,24,25 | 4200 | 0 | 21200 |
| TRIARC COS INC | CL B SER 1 | 895927309 | 73 | 8325 | SH | DEFINED | 30 | 8325 | 0 | 0 |
| TRIARC COS INC | CL B SER 1 | 895927309 | 512 | 58417 | SH | DEFINED | 16,24,25 | 7805 | 0 | 50612 |
| TRIBUNE CO NEW | COM | 896047107 | 1 | 16 | SH | DEFINED | 16,24,25 | 16 | 0 | 0 |
| TRIBUNE CO NEW | COM | 896047107 | 2175 | 64000 | SH | CALL DEFINED | 15,16,24 | 64000 | 0 | 0 |
| TRIBUNE CO NEW | COM | 896047107 | 1047 | 30800 | SH | PUT DEFINED | 15,16,24 | 30800 | 0 | 0 |
| TRICO MARINE SERVICE | NOTE 3.00 | 896106AQ4 | 3897 | 3600000 | PRN | DEFINED | 16,24,25 | 3600000 | 0 | 0 |
| TRIMBLE NAVIGATION L | COM | 896239100 | 196 | 6468 | SH | DEFINED | 7,11 | 6468 | 0 | 0 |
| TRIMBLE NAVIGATION L | COM | 896239100 | 90 | 2967 | SH | DEFINED | 16,24 | 2967 | 0 | 0 |
| TRIMBLE NAVIGATION L | COM | 896239100 | 461 | 15245 | SH | DEFINED | 7,11,13 | 15245 | 0 | 0 |
| TRIMBLE NAVIGATION L | COM | 896239100 | 10423 | 344688 | SH | DEFINED | 16,24,25 | 288769 | 0 | 55919 |
| TRIMBLE NAVIGATION L | COM | 896239100 | 194 | 6400 | SH | DEFINED | 32,40,41 | 6400 | 0 | 0 |
| TRINA SOLAR LIMITED | SPON ADR | 89628E104 | 488 | 9068 | SH | DEFINED | 16,24,25 | 7888 | 0 | 1180 |
| TRINA SOLAR LIMITED | SPON ADR | 89628E104 | 6795 | 126300 | SH | CALL DEFINED | 15,16,24 | 126300 | 0 | 0 |
| TRINA SOLAR LIMITED | SPON ADR | 89628E104 | 6461 | 120100 | SH | PUT DEFINED | 15,16,24 | 120100 | 0 | 0 |
| TRIQUINT SEMICONDUCT | NOTE 3.87 | 896522AF6 | 5114 | 5706000 | PRN | DEFINED | 16,24,25 | 5706000 | 0 | 0 |
| TRINITY INDS INC | COM | 896522109 | 24 | 852 | SH | DEFINED | 7,11 | 852 | 0 | 0 |
| TRINITY INDS INC | COM | 896522109 | 6 | 225 | SH | DEFINED | 7,11,13 | 225 | 0 | 0 |
| TRINITY INDS INC | COM | 896522109 | 93 | 3367 | SH | DEFINED | 15,16,24 | 3367 | 0 | 0 |
| TRINITY INDS INC | COM | 896522109 | 4370 | 157404 | SH | DEFINED | 16,24,25 | 130318 | 0 | 27085 |
| TRINITY INDS INC | COM | 896522109 | 650 | 23400 | SH | CALL DEFINED | 15,16,24 | 23400 | 0 | 0 |
| TRINITY INDS INC | COM | 896522109 | 278 | 10000 | SH | CALL DEFINED | 16,24,25 | 10000 | 0 | 0 |
| TRINITY INDS INC | COM | 896522109 | 2498 | 90000 | SH | PUT DEFINED | 15,16,24 | 90000 | 0 | 0 |
| TRIUMPH GROUP INC | COM | 896746103 | 1033 | 155758 | SH | DEFINED | 16,24,25 | 150592 | 0 | 5166 |
| TRIPLE-S MGMT CORP | CL B | 896749108 | 304 | 15055 | SH | DEFINED | 16,24,25 | 14555 | 0 | 500 |
| TRIPLECROWN ACQUISIT | COM | 89677G109 | 390 | 42700 | SH | DEFINED | 16,24,25 | 1000 | 0 | 41700 |
| TRIPLECROWN ACQUISIT | *W EXP 10/ | 89677G117 | 48 | 46900 | SH | DEFINED | 16,24,25 | 0 | 0 | 46900 |
| TRIUMPH GROUP INC NE | COM | 896818101 | 13 | 155 | SH | DEFINED | 7,11 | 0 | 0 | 155 |
| TRIUMPH GROUP INC NE | COM | 896818101 | 3494 | 42433 | SH | DEFINED | 16,24,25 | 32038 | 0 | 10395 |
| TRIZETTO GROUP INC | COM | 896882107 | 255 | 14675 | SH | DEFINED | 16,24,25 | 9275 | 0 | 5400 |
| TRONOX INC | COM CL B | 897051207 | 10 | 1112 | SH | DEFINED | 3,9 | 0 | 0 | 1112 |
| TRONOX INC | COM CL B | 897051207 | 4446 | 513958 | SH | DEFINED | 7,11 | 513958 | 0 | 0 |
| TRONOX INC | COM CL B | 897051207 | 18 | 2124 | SH | DEFINED | 16,24,25 | 1760 | 0 | 364 |
| TRUE RELIGION APPARE | COM | 89784N104 | 107 | 5000 | SH | DEFINED | 30 | 5000 | 0 | 0 |
| TRUE RELIGION APPARE | COM | 89784N104 | 1672 | 78309 | SH | DEFINED | 16,24,25 | 55081 | 0 | 23228 |
| TRUMP ENTMT RESORTS | COM | 89816T103 | 56 | 12931 | SH | DEFINED | 16,24,25 | 9276 | 0 | 3655 |
| TRUMP ENTMT RESORTS | COM | 89816T103 | 153 | 35500 | SH | CALL DEFINED | 15,16,24 | 35500 | 0 | 0 |
| TRUMP ENTMT RESORTS | COM | 89816T103 | 3039 | 706800 | SH | PUT DEFINED | 15,16,24 | 706800 | 0 | 0 |
| TRUSTCO BK CORP N Y | COM | 898349105 | 944 | 95175 | SH | DEFINED | 7,11,13 | 93075 | 0 | 2100 |
| TRUSTCO BK CORP N Y | COM | 898349105 | 330 | 33261 | SH | DEFINED | 16,24,25 | 31158 | 0 | 2102 |
| TRUSTMARK CORP | COM | 898402102 | 101 | 4000 | SH | DEFINED | 7,11 | 0 | 0 | 4000 |
| TRUSTMARK CORP | COM | 898402102 | 236 | 9320 | SH | DEFINED | 16,24,25 | 8165 | 0 | 1155 |
| TUESDAY MORNING CORP | COM NEW | 899035505 | 490 | 96737 | SH | DEFINED | 16,24,25 | 93353 | 0 | 3376 |
| TUPPERWARE BRANDS CO | COM | 899896104 | 22 | 660 | SH | DEFINED | 7,11 | 0 | 0 | 660 |
| TUPPERWARE BRANDS CO | COM | 899896104 | 3320 | 100521 | SH | DEFINED | 16,24,25 | 94921 | 0 | 5600 |
| TURBOCHEF TECHNOLOGI | COM NEW | 900006206 | 1109 | 67216 | SH | DEFINED | 15,16,24 | 67216 | 0 | 0 |
| TURBOCHEF TECHNOLOGI | COM NEW | 900006206 | 5770 | 349722 | SH | DEFINED | 16,24,25 | 332390 | 0 | 17332 |
| TURBOCHEF TECHNOLOGI | COM NEW | 900006206 | 175 | 10600 | SH | CALL DEFINED | 15,16,24 | 10600 | 0 | 0 |
| TURBOCHEF TECHNOLOGI | COM NEW | 900006206 | 917 | 55600 | SH | PUT DEFINED | 15,16,24 | 55600 | 0 | 0 |
| TURKCELL ILETISIM HI | SPON ADR N | 900111204 | 202 | 7322 | SH | DEFINED | 7,11 | 0 | 0 | 7322 |
| TURKCELL ILETISIM HI | SPON ADR N | 900111204 | 2513 | 91153 | SH | DEFINED | 16,24,25 | 80563 | 0 | 10590 |
| TURKCELL ILETISIM HI | SPON ADR N | 900111204 | 50 | 1800 | SH | DEFINED | 16,19,24,26,27 | 1800 | 0 | 0 |
| TURKISH INVT FD INC | COM | 900145103 | 362 | 18731 | SH | DEFINED | 16,24,25 | 15551 | 0 | 3180 |
| TUTOGEN MEDICAL INC | COM | 901107102 | 177 | 16978 | SH | DEFINED | 16,24,25 | 14978 | 0 | 2000 |
| TWEEN BRANDS INC | COM | 901166108 | 215 | 8131 | SH | DEFINED | 16,24,25 | 8131 | 0 | 0 |
| 21ST CENTY HLDG CO | COM | 90136Q100 | 1091 | 81174 | SH | DEFINED | 16,24,25 | 63521 | 0 | 17653 |
| II VI INC | COM | 902104108 | 64 | 2100 | SH | DEFINED | 7,11,13 | 2100 | 0 | 0 |
| II VI INC | COM | 902104108 | 666 | 21789 | SH | DEFINED | 16,24,25 | 12489 | 0 | 9300 |
| TYSON FOODS INC | CL A | 902494103 | 468 | 30553 | SH | DEFINED | 7,11 | 30553 | 0 | 0 |
| TYSON FOODS INC | CL A | 902494103 | 5719 | 373081 | SH | DEFINED | 16,24,25 | 362527 | 0 | 10553 |
| TYSON FOODS INC | CL A | 902494103 | 127 | 8259 | SH | DEFINED | 32,40,41 | 8259 | 0 | 0 |
| TYSON FOODS INC | CL A | 902494103 | 4325 | 282100 | SH | CALL DEFINED | 15,16,24 | 282100 | 0 | 0 |
| TYSON FOODS INC | CL A | 902494103 | 1666 | 108700 | SH | PUT DEFINED | 15,16,24 | 108700 | 0 | 0 |
| UAL CORP | DBCV 5.00 | 902549AE4 | 16688 | 16065191 | PRN | DEFINED | 16,24,25 | 16065191 | 0 | 0 |
| UAL CORP | COM NEW | 902549807 | 1423 | 39909 | SH | DEFINED | 7,11 | 39909 | 0 | 0 |
| UAL CORP | COM NEW | 902549807 | 89150 | 2500000 | SH | DEFINED | 16,24 | 2500000 | 0 | 0 |
| UAL CORP | COM NEW | 902549807 | 17112 | 479868 | SH | DEFINED | 16,24,25 | 479868 | 0 | 0 |
| UAL CORP | COM NEW | 902549807 | 7162 | 200837 | SH | DEFINED | 16,24,25 | 134172 | 0 | 66665 |
| UAL CORP | COM NEW | 902549807 | 20515 | 575300 | SH | CALL DEFINED | 15,16,24 | 575300 | 0 | 0 |
| UAL CORP | COM NEW | 902549807 | 1783 | 50000 | SH | CALL DEFINED | 16,24,25 | 50000 | 0 | 0 |
| UAL CORP | COM NEW | 902549807 | 27159 | 761600 | SH | PUT DEFINED | 15,16,24 | 761600 | 0 | 0 |
| UAL CORP | COM NEW | 902549807 | 3388 | 95000 | SH | PUT DEFINED | 16,24,25 | 95000 | 0 | 0 |
| UCBH HOLDINGS INC | COM | 90262T308 | 1 | 100 | SH | DEFINED | 3,9 | 0 | 0 | 100 |
| UCBH HOLDINGS INC | COM | 90262T308 | 605 | 42723 | SH | DEFINED | 16,24,25 | 34623 | 0 | 8100 |
| UDR INC | COM | 902653104 | 1070 | 53886 | SH | DEFINED | 7,11 | 1646 | 0 | 52240 |
| UDR INC | COM | 902653104 | 64 | 3200 | SH | DEFINED | 14,31 | 3200 | 0 | 0 |
| UDR INC | COM | 902653104 | 148 | 7438 | SH | DEFINED | 7,11,13 | 7438 | 0 | 0 |
| UDR INC | COM | 902653104 | 1467 | 73888 | SH | DEFINED | 16,24,25 | 63672 | 0 | 10216 |
| UDR INC | COM | 902653104 | 2595 | 130725 | SH | DEFINED | 32,40,41 | 130725 | 0 | 0 |
| UGI CORP NEW | COM | 902681105 | 354 | 13000 | SH | DEFINED | 12 | 0 | 0 | 13000 |
| UGI CORP NEW | COM | 902681105 | 65 | 2400 | SH | DEFINED | 30 | 2400 | 0 | 0 |
| UGI CORP NEW | COM | 902681105 | 1259 | 46197 | SH | DEFINED | 7,11 | 0 | 0 | 46197 |
| UGI CORP NEW | COM | 902681105 | 37 | 1375 | SH | DEFINED | 7,11,13 | 0 | 0 | 1375 |
| UGI CORP NEW | COM | 902681105 | 22 | 800 | SH | DEFINED | 7,11,13 | 0 | 0 | 800 |
| UGI CORP NEW | COM | 902681105 | 4274 | 156851 | SH | DEFINED | 16,24,25 | 121759 | 0 | 35092 |
| UIL HLDG CORP | COM | 902748102 | 144 | 3893 | SH | DEFINED | 7,11,13 | 3893 | 0 | 0 |
| UIL HLDG CORP | COM | 902748102 | 238 | 6453 | SH | DEFINED | 16,24,25 | 4672 | 0 | 1781 |
| UMB FINL CORP | COM | 902788108 | 317 | 8259 | SH | DEFINED | 16,24,25 | 8259 | 0 | 0 |
| UST INC | COM | 902911106 | 312 | 5700 | SH | DEFINED | 3,9 | 0 | 0 | 5700 |
| UST INC | COM | 902911106 | 5004 | 91311 | SH | DEFINED | 7,11 | 87311 | 0 | 4000 |
| UST INC | COM | 902911106 | 5383 | 98222 | SH | DEFINED | 16,24,25 | 92961 | 0 | 5260 |
| UST INC | COM | 902911106 | 9992 | 182343 | SH | DEFINED | 32,40,41 | 182343 | 0 | 0 |
| UST INC | COM | 902911106 | 564 | 10300 | SH | PUT DEFINED | 15,16,24 | 10300 | 0 | 0 |
| UST INC | COM | 902911106 | 2176 | 39700 | SH | PUT DEFINED | 16,24,25 | 39700 | 0 | 0 |
| U S GLOBAL INVS INC | CL A | 902952100 | 173 | 10369 | SH | DEFINED | 16,24,25 | 9261 | 0 | 1108 |
| US BANCORP DEL | DBCV | 902973AK2 | 10 | 10000 | PRN | DEFINED | 16,24,25 | 10000 | 0 | 0 |
| US BANCORP DEL | DBCV | 902973AQ9 | 32691 | 32885000 | PRN | DEFINED | 16,24,25 | 32885000 | 0 | 0 |
| US BANCORP DEL | DBCV | 902973AT3 | 6178 | 6218000 | PRN | DEFINED | 16,24,25 | 6218000 | 0 | 0 |
| US BANCORP DEL | COM NEW | 902973304 | 12909 | 406699 | SH | DEFINED | 7,11 | 370002 | 0 | 36697 |
| US BANCORP DEL | COM NEW | 902973304 | 1995 | 62846 | SH | DEFINED | 7,11,13 | 61271 | 0 | 1575 |
| US BANCORP DEL | COM NEW | 902973304 | 37341 | 1176475 | SH | DEFINED | 16,24,25 | 938661 | 0 | 237814 |
| US BANCORP DEL | COM NEW | 902973304 | 49779 | 1568342 | SH | DEFINED | 32,40,41 | 1568342 | 0 | 0 |
| US BANCORP DEL | COM NEW | 902973304 | 531 | 16745 | SH | DEFINED | 16,19,24,26,27 | 16745 | 0 | 0 |
| US BANCORP DEL | COM NEW | 902973304 | 14137 | 445386 | SH | CALL DEFINED | 7,11 | 445386 | 0 | 0 |
| US BANCORP DEL | COM NEW | 902973304 | 18616 | 586500 | SH | CALL DEFINED | 15,16,24 | 586500 | 0 | 0 |
| US BANCORP DEL | COM NEW | 902973304 | 10714 | 337554 | SH | CALL DEFINED | 16,24,25 | 300454 | 0 | 37100 |
| US BANCORP DEL | COM NEW | 902973304 | 9536 | 300454 | SH | PUT DEFINED | 7,11 | 300454 | 0 | 0 |
| US BANCORP DEL | COM NEW | 902973304 | 16498 | 519800 | SH | PUT DEFINED | 15,16,24 | 519800 | 0 | 0 |
| US BANCORP DEL | COM NEW | 902973304 | 29515 | 929886 | SH | PUT DEFINED | 16,24,25 | 929886 | 0 | 0 |
| U M H PROPERTIES INC | COM | 903002103 | 136 | 11525 | SH | DEFINED | 16,24,25 | 11005 | 0 | 520 |
| U M H PROPERTIES INC | COM | 903002103 | 12 | 985 | SH | DEFINED | 32,40,41 | 985 | 0 | 0 |

```
URS CORP NEW              COM          903236107      88     1625 SH     DEFINED                      30      1625       0        0
URS CORP NEW              COM          903236107    3125    57517 SH     DEFINED            7,11    57517       0        0
URS CORP NEW              COM          903236107     185     3405 SH     DEFINED         16,24,25     3205       0      200
URS CORP NEW              COM          903236107     674    12400 SH     DEFINED         32,40,41    12400       0        0
U S G CORP               COM NEW       903293405    3128    87391 SH     DEFINED         15,16,24    87391       0        0
U S G CORP               COM NEW       903293405   15112   422237 SH     DEFINED         16,24,25   335478       0    86759
U S G CORP               COM NEW       903293405   20311   567500 SH CALL DEFINED        15,16,24   567500       0        0
U S G CORP               COM NEW       903293405   21510   601000 SH     DEFINED         16,24,25   601000       0        0
U S G CORP               COM NEW       903293405   16367   457300 SH CALL DEFINED        15,16,24   457300       0        0
U S G CORP               COM NEW       903293405    6535   182600 SH PUT DEFINED         16,24,25   182600       0        0
USEC INC                 NOTE 3.00     90333EAC2    6843  7000000 PRN    DEFINED         16,24,25  7000000       0        0
USEC INC                 COM           90333E108    1439   159852 SH     DEFINED            7,11   159464       0      388
USEC INC                 COM           90333E108    3337   370736 SH     DEFINED         15,16,24   370736       0        0
USEC INC                 COM           90333E108    3157   350739 SH     DEFINED         16,24,25   277872       0    72867
USEC INC                 COM           90333E108       6      630 SH     DEFINED        5-7,11,43,44       0      630        0
USEC INC                 COM           90333E108     408    45300 SH CALL DEFINED        15,16,24    45300       0        0
USEC INC                 COM           90333E108      90    10000 SH CALL DEFINED        15,16,24    10000       0        0
USEC INC                 COM           90333E108    3776   419500 SH PUT DEFINED         15,16,24   419500       0        0
U S CONCRETE INC         COM           90333L102     118    35452 SH     DEFINED         16,24,25    30589       0     4863
U S AIRWAYS GROUP IN     COM           90341W108    1763   119834 SH     DEFINED            7,11   119834       0        0
U S AIRWAYS GROUP IN     COM           90341W108    7310   496952 SH     DEFINED         15,16,24   496952       0        0
U S AIRWAYS GROUP IN     COM           90341W108     460    31265 SH     DEFINED         16,24,25    27562       0     3703
U S AIRWAYS GROUP IN     COM           90341W108    2505   170300 SH CALL DEFINED        16,24,25   170300       0        0
U S AIRWAYS GROUP IN     COM           90341W108     219    14900 SH CALL DEFINED        16,24,25    14900       0        0
U S AIRWAYS GROUP IN     COM           90341W108    8699   591400 SH PUT DEFINED         15,16,24   591400       0        0
U S AIRWAYS GROUP IN     COM           90341W108     328    22300 SH PUT DEFINED         16,24,25    22300       0        0
UAP HLDG CORP            COM           903441103    3739   968466 SH     DEFINED          7,11,13    92741       0     4125
UAP HLDG CORP            COM           903441103    6311   163486 SH     DEFINED         16,24,25   163451       0       35
ULTRALIFE BATTERIES      COM           903899102      12      600 SH     DEFINED          7,11,13      600       0        0
ULTRALIFE BATTERIES      COM           903899102     792    39323 SH     DEFINED         16,24,25    29704       0     9619
ULTRA PETROLEUM CORP     COM           903914109    4648    65000 SH     DEFINED               42    65000       0        0
ULTRA PETROLEUM CORP     COM           903914109     523     7319 SH     DEFINED            7,11     7319       0        0
ULTRA PETROLEUM CORP     COM           903914109      11      158 SH     DEFINED          7,11,13      158       0        0
ULTRA PETROLEUM CORP     COM           903914109   14791   206863 SH     DEFINED         15,16,24   206863       0        0
ULTRA PETROLEUM CORP     COM           903914109    1808    25290 SH     DEFINED         16,24,25    23281       0     2009
ULTRA PETROLEUM CORP     COM           903914109   11460   160284 SH     DEFINED         32,40,41   160284       0        0
ULTRA PETROLEUM CORP     COM           903914109   58094   812500 SH CALL DEFINED        15,16,24   812500       0        0
ULTRA PETROLEUM CORP     COM           903914109   42128   589200 SH PUT DEFINED         15,16,24   589200       0        0
ULTRAPAR PARTICIPACO     SP ADR REP    90400P101     443    10753 SH     DEFINED         16,24,25    10753       0     2048
UNDER ARMOUR INC         CL A          904311107      26      600 SH     DEFINED                      30      600       0        0
UNDER ARMOUR INC         CL A          904311107      13      304 SH     DEFINED          7,11,33        0       0      304
UNDER ARMOUR INC         CL A          904311107    3957    90616 SH     DEFINED         15,16,24    90616       0        0
UNDER ARMOUR INC         CL A          904311107    4825   110495 SH     DEFINED         15,16,24    88024       0    22471
UNDER ARMOUR INC         CL A          904311107    4018    92000 SH CALL DEFINED        15,16,24    92000       0        0
UNDER ARMOUR INC         CL A          904311107     118     2700 SH CALL DEFINED        15,16,24     2700       0        0
UNDER ARMOUR INC         CL A          904311107   10380   237700 SH PUT DEFINED         15,16,24   237700       0        0
UNDER ARMOUR INC         CL A          904311107       9      200 SH PUT DEFINED         16,24,25      200       0        0
UNIBANCO-UNIAO DE BA     GDR REP PF    90458E107     573     4100 SH     DEFINED               3,9        0       0     4100
UNIBANCO-UNIAO DE BA     GDR REP PF    90458E107    1928    13804 SH     DEFINED            7,11    13804       0        0
UNIBANCO-UNIAO DE BA     GDR REP PF    90458E107    2514    18000 SH     DEFINED         15,16,24    18000       0        0
UNIBANCO-UNIAO DE BA     GDR REP PF    90458E107    8776    62848 SH     DEFINED         16,24,25    55949       0     6899
UNIBANCO-UNIAO DE BA     GDR REP PF    90458E107    9756    69864 SH     DEFINED         32,40,41    69864       0        0
UNIBANCO-UNIAO DE BA     GDR REP PF    90458E107    8745    62625 SH     DEFINED     16,19,24,26,27    62625       0        0
UNIBANCO-UNIAO DE BA     GDR REP PF    90458E107    2514    18000 SH CALL DEFINED        15,16,24    18000       0        0
UNIBANCO-UNIAO DE BA     GDR REP PF    90458E107   10250    73400 SH PUT DEFINED         15,16,24    73400       0        0
UNIFI INC                COM           904677101      69    28500 SH     DEFINED         16,24,25    20500       0     8000
UNIFIRST CORP MASS       COM           904708104     419    11038 SH     DEFINED         16,24,25    10722       0      316
UNILEVER PLC             COM           904767704      11      300 SH     DEFINED            7,11        0       0      300
UNILEVER PLC             SPON ADR N    904767704     898    24009 SH     DEFINED          7,11,13    23029       0      980
UNILEVER PLC             SPON ADR N    904767704     166     4438 SH     DEFINED          7,11,33        0       0     4438
UNILEVER PLC             SPON ADR N    904767704   87637  2341978 SH     DEFINED         16,24,25  1947180       0   394797
UNILEVER N V             N Y SHS NE    904784709     266     7115 SH     DEFINED     16,19,24,26,29     7115       0        0
UNILEVER N V             N Y SHS NE    904784709     339     9297 SH     DEFINED            7,11        0       0     9297
UNILEVER N V             N Y SHS NE    904784709     282     7725 SH     DEFINED          7,11,13     7725       0        0
UNILEVER N V             N Y SHS NE    904784709      28      775 SH     DEFINED          7,11,33        0       0      775
UNILEVER N V             N Y SHS NE    904784709   23479   643962 SH     DEFINED         16,24,25   542613       0   101348
UNILEVER N V             N Y SHS NE    904784709    5010   137400 SH     DEFINED         32,40,41   137400       0        0
UNION PAC CORP           COM           907818108   10678    85001 SH     DEFINED         15,16,24    54281       0    30720
UNION PAC CORP           COM           907818108     424     3379 SH     DEFINED          7,11,13     2889       0      490
UNION PAC CORP           COM           907818108   10616    84506 SH     DEFINED         15,16,24    84506       0        0
UNION PAC CORP           COM           907818108   18104   144120 SH     DEFINED         16,24,25   108063       0    36056
UNION PAC CORP           COM           907818108    1456    11592 SH     DEFINED         32,40,41    11592       0        0
UNION PAC CORP           COM           907818108   48916   389400 SH CALL DEFINED        15,16,24   389400       0        0
UNION PAC CORP           COM           907818108   13730   109300 SH CALL DEFINED        16,24,25   109300       0        0
UNION PAC CORP           COM           907818108   69619   554200 SH PUT DEFINED         15,16,24   554200       0        0
UNION PAC CORP           COM           907818108    9082    72300 SH PUT DEFINED         16,24,25    72300       0        0
UNION STREET ACQ COR     COM           908536105    1459   190700 SH     DEFINED         16,24,25   190700       0        0
UNION STREET ACQ COR     *W EXP 02/    908536113      34    62000 SH     DEFINED         16,24,25    62000       0        0
UNIONBANCAL CORP         COM           908906100     130     2661 SH     DEFINED            7,11     2661       0        0
UNIONBANCAL CORP         COM           908906100     428     8742 SH     DEFINED         16,24,25     7795       0      947
UNIONBANCAL CORP         COM           908906100      80     1641 SH     DEFINED         32,40,41     1641       0        0
UNISYS CORP              COM           909214108     121    25623 SH     DEFINED            7,11    25623       0        0
UNISYS CORP              COM           909214108      45     9469 SH     DEFINED         15,16,24     9469       0        0
UNISYS CORP              COM           909214108     478   101121 SH     DEFINED         16,24,25    78597       0    22524
UNISYS CORP              COM           909214108       2      338 SH     DEFINED         32,40,41      338       0        0
UNISYS CORP              COM           909214108      15     3200 SH CALL DEFINED        15,16,24     3200       0        0
UNISYS CORP              COM           909214108      24     5000 SH CALL DEFINED        16,24,25     5000       0        0
UNISYS CORP              COM           909214108     100    21200 SH PUT DEFINED         15,16,24    21200       0        0
UNIT CORP                COM           909218109     139     3000 SH     DEFINED               3,9        0       0     3000
UNIT CORP                COM           909218109      20      434 SH     DEFINED            7,11      434       0        0
UNIT CORP                COM           909218109    2087    45134 SH     DEFINED         15,16,24    45134       0        0
UNIT CORP                COM           909218109      38      822 SH     DEFINED         16,24,25      681       0      141
UNIT CORP                COM           909218109      56     1200 SH     DEFINED         32,40,41     1200       0        0
UNIT CORP                COM           909218109     527    11400 SH CALL DEFINED        15,16,24    11400       0        0
UNIT CORP                COM           909218109    1489    32200 SH PUT DEFINED         15,16,24    32200       0        0
UNITED AMERN HEALTHC     COM           90934C105      29    11234 SH     DEFINED         16,24,25    10115       0     1119
UNITED BANKSHARES IN     COM           909907107      50     1775 SH     DEFINED                      30     1775       0        0
UNITED BANKSHARES IN     COM           909907107       6      213 SH     DEFINED            7,11        0       0      213
UNITED BANKSHARES IN     COM           909907107      13      475 SH     DEFINED          7,11,13      475       0        0
UNITED BANKSHARES IN     COM           909907107    1709     8476 SH     DEFINED         16,24,25     8476       0        0
UNITED MICROELECTRON     SPON ADR N    910873405      60    17289 SH     DEFINED         16,24,25    17289       0        0
UNITED NAT FOODS INC     COM           911163103    1056    33290 SH     DEFINED            7,11    32658       0      632
UNITED NAT FOODS INC     COM           911163103    5217   164477 SH     DEFINED         16,24,25   124189       0    40288
UNITED ONLINE INC        COM           911268100      25     2125 SH     DEFINED          7,11,13     2125       0        0
UNITED ONLINE INC        COM           911268100    6905   584109 SH     DEFINED         16,24,25   576654       0     7545
UNITED ONLINE INC        COM           911268100    1123    95000 SH PUT DEFINED         16,24,25    94800       0      200
UNITED PARCEL SERVIC     CL B          911312106     389     5500 SH     DEFINED               12        0       0     5500
UNITED PARCEL SERVIC     CL B          911312106      82     1154 SH     DEFINED               3,9        0       0     1154
UNITED PARCEL SERVIC     CL B          911312106   43943   621360 SH     DEFINED            7,11   508606       0   112754
UNITED PARCEL SERVIC     CL B          911312106    3200    45249 SH     DEFINED          7,11,13    43519       0     1730
UNITED PARCEL SERVIC     CL B          911312106     431     6090 SH     DEFINED          7,11,33        0       0     6090
UNITED PARCEL SERVIC     CL B          911312106  109690  1551043 SH     DEFINED         16,24,25  1266595       0   284448
UNITED PARCEL SERVIC     CL B          911312106   18819   266104 SH     DEFINED         32,40,41   266104       0        0
UNITED PARCEL SERVIC     CL B          911312106      42      595 SH     DEFINED     16,19,24,26,27      595       0        0
```

```
UNITED PARCEL SERVIC CL B       911312106   27998    395897 SH  CALL DEFINED   7,11               395897      0         0
UNITED PARCEL SERVIC CL B       911312106  118053   1669300 SH  CALL DEFINED   15,16,24          1669300      0         0
UNITED PARCEL SERVIC CL B       911312106   69949    989100 SH       DEFINED   16,24,25           989100      0         0
UNITED PARCEL SERVIC CL B       911312106    1414     20000 SH  PUT  DEFINED   7,11                20000      0         0
UNITED PARCEL SERVIC CL B       911312106   64037    905500 SH  PUT  DEFINED   15,16,24           905500      0         0
UNITED PARCEL SERVIC CL B       911312106   56710    801901 SH  PUT  DEFINED   16,24,25           801901      0         0
UNITED RENTALS INC   COM        911363109     206     11200 SH       DEFINED   3,9                     0      0     11200
UNITED RENTALS INC   COM        911363109    1107     60320 SH       DEFINED   15,16,24            60320      0         0
UNITED RENTALS INC   COM        911363109     279     15193 SH       DEFINED   16,24,25            14993      0       200
UNITED RENTALS INC   COM        911363109    2075    113000 SH  CALL DEFINED   15,16,24           113000      0         0
UNITED RENTALS INC   COM        911363109    2429    132300 SH  PUT  DEFINED   15,16,24           132300      0         0
UNITED RENTALS NORTH NOTE  1.87 911365AM7    2607   2600000 PRN      DEFINED   16,24,25          2600000      0         0
UNITED STATES CELLUL COM        911684108       5        65 SH       DEFINED   7,11                   65      0         0
UNITED STATES CELLUL COM        911684108     228      2712 SH       DEFINED   16,24,25             2712      0         0
UNITED STATES NATL G UNIT       912318102    8322    229566 SH       DEFINED   16,24,25           216479      0     13087
UNITED STATES OIL FU UNITS      91232N108   28693    378737 SH       DEFINED   15,16,24           378737      0         0
UNITED STATES OIL FU UNITS      91232N108    1658     21886 SH       DEFINED   16,24,25            20537      0      1349
UNITED STATES OIL FU UNITS      91232N108  102806   1357000 SH  CALL DEFINED   15,16,24          1357000      0         0
UNITED STATES OIL FU UNITS      91232N108  147164   1942500 SH  PUT  DEFINED   15,16,24          1942500      0         0
U STORE IT TR        COM        91274F104      20      2179 SH       DEFINED   16,24,25             1829      0       350
U STORE IT TR        COM        91274F104     198     21562 SH       DEFINED   32,40,41            21562      0         0
UNITED STATES STL CO COM        912909108   30253    250207 SH       DEFINED   7,11               250207      0         0
UNITED STATES STL CO COM        912909108    3800     31431 SH       DEFINED   15,16,24            31431      0         0
UNITED STATES STL CO COM        912909108   20901    172865 SH       DEFINED   16,24,25           163582      0      9283
UNITED STATES STL CO COM        912909108     430      3557 SH       DEFINED   32,40,41             3557      0         0
UNITED STATES STL CO COM        912909108   98759    816800 SH  CALL DEFINED   15,16,24           816800      0         0
UNITED STATES STL CO COM        912909108   18874    156100 SH  CALL DEFINED   16,24,25           156100      0         0
UNITED STATES STL CO COM        912909108  130873   1082400 SH  PUT  DEFINED   15,16,24          1082400      0         0
UNITED STATES STL CO COM        912909108   52753    436300 SH  PUT  DEFINED   16,24,25           436300      0         0
UNITED STATIONERS IN COM        913004107     345      7465 SH       DEFINED   16,24,25             7465      0         0
UNITED TECHNOLOGIES  COM        913017109     850     11100 SH       DEFINED   12                      0      0     11100
UNITED TECHNOLOGIES  COM        913017109     925     12090 SH       DEFINED   30                  12090      0         0
UNITED TECHNOLOGIES  COM        913017109     170      2221 SH       DEFINED   3,9                     0      0      2221
UNITED TECHNOLOGIES  COM        913017109   59247    774063 SH       DEFINED   7,11               485285   2575    286203
UNITED TECHNOLOGIES  COM        913017109     969     12666 SH       DEFINED   7,11,13              6356      0      6310
UNITED TECHNOLOGIES  COM        913017109     723      9440 SH       DEFINED   7,11,33                 0      0      9440
UNITED TECHNOLOGIES  COM        913017109  129612   1693388 SH       DEFINED   16,24,25          1400352      0    293035
UNITED TECHNOLOGIES  COM        913017109   17397    227298 SH       DEFINED   32,40,41           227298      0         0
UNITED TECHNOLOGIES  COM        913017109    5490     71731 SH       DEFINED   5-7,11,43,44            0  71731         0
UNITED TECHNOLOGIES  COM        913017109    1849     24159 SH       DEFINED   16,19,24,26,27      24159      0         0
UNITED TECHNOLOGIES  COM        913017109   39097    510800 SH  CALL DEFINED   15,16,24           510800      0         0
UNITED TECHNOLOGIES  COM        913017109   10624    138800 SH  CALL DEFINED   16,24,25           138800      0         0
UNITED TECHNOLOGIES  COM        913017109   36081    471400 SH  PUT  DEFINED   15,16,24           471400      0         0
UNITED TECHNOLOGIES  COM        913017109    9644    126000 SH  PUT  DEFINED   16,24,25           126000      0         0
UNITED THERAPEUTICS NOTE  0.50  91307CAD4   13135   9250000 PRN      DEFINED   16,24,25          9250000      0         0
UNITED THERAPEUTICS  COM        91307C102     127      1300 SH       DEFINED   30                   1300      0         0
UNITED THERAPEUTICS  COM        91307C102       4        41 SH       DEFINED   7,11                    0      0        41
UNITED THERAPEUTICS  COM        91307C102       7        75 SH       DEFINED   7,11,13                75      0         0
UNITED THERAPEUTICS  COM        91307C102    4847     49632 SH       DEFINED   16,24,25            46704      0      2928
UNITED THERAPEUTICS  COM        91307C102   38669    396000 SH  CALL DEFINED   15,16,24           396000      0         0
UNITED THERAPEUTICS  COM        91307C102    2099     21500 SH       DEFINED   16,24,25            21500      0         0
UNITED THERAPEUTICS  COM        91307C102  119192   1220600 SH  PUT  DEFINED   15,16,24          1220600      0         0
UNITED THERAPEUTICS  COM        91307C102     488      5000 SH  PUT  DEFINED   16,24,25             5000      0         0
UNITEDHEALTH GROUP I COM        91324P102    1440     24750 SH       DEFINED   12                      0      0     24750
UNITEDHEALTH GROUP I COM        91324P102    4109     70595 SH       DEFINED   3,9                     0      0     70595
UNITEDHEALTH GROUP I COM        91324P102   45070    774407 SH       DEFINED   7,11               421248   2000    351159
UNITEDHEALTH GROUP I COM        91324P102    7839    134686 SH       DEFINED   7,11,13            116461      0     18225
UNITEDHEALTH GROUP I COM        91324P102    1234     21205 SH       DEFINED   7,11,33                 0      0     21205
UNITEDHEALTH GROUP I COM        91324P102  530394   9113302 SH       DEFINED   16,24,25          7960748      0   1152553
UNITEDHEALTH GROUP I COM        91324P102   26243    450903 SH       DEFINED   32,40,41           450903      0         0
UNITEDHEALTH GROUP I COM        91324P102    5723     98329 SH       DEFINED   16,19,24,26,27      98329      0         0
UNITEDHEALTH GROUP I COM        91324P102   21291    365825 SH  CALL DEFINED   7,11               365825      0         0
UNITEDHEALTH GROUP I COM        91324P102   35345    607300 SH  CALL DEFINED   15,16,24           607300      0         0
UNITEDHEALTH GROUP I COM        91324P102   12629    217000 SH  CALL DEFINED   16,24,25           217000      0         0
UNITEDHEALTH GROUP I COM        91324P102   27488    472300 SH  PUT  DEFINED   15,16,24           472300      0         0
UNITEDHEALTH GROUP I COM        91324P102   27996    481025 SH  PUT  DEFINED   16,24,25           481025      0         0
UNITIL CORP          COM        913259107     917     32155 SH       DEFINED   16,24,25            27500      0      4655
UNITRIN INC          COM        913275103     114      2369 SH       DEFINED   7,11                 2369      0         0
UNITRIN INC          COM        913275103     534     11135 SH       DEFINED   7,11,13             11135      0         0
UNITRIN INC          COM        913275103     246      5121 SH       DEFINED   16,24,25             5121      0         0
UNIVERSAL CORP VA    COM        913456109      67      1300 SH       DEFINED   30                   1300      0         0
UNIVERSAL CORP VA    COM        913456109     209      4085 SH       DEFINED   7,11,13              4085      0         0
UNIVERSAL CORP VA    COM        913456109     128      2505 SH       DEFINED   16,24,25             2233      0       272
UNIVERSAL CORP VA    COM        913456109    2817     55000 SH  CALL DEFINED   16,24,25            55000      0         0
UNIVERSAL DISPLAY CO COM        91347P105    1895     91656 SH       DEFINED   16,24,25            77497      0     14159
UNIVERSAL HEALTH RLT SH BEN INT 91359E105     274      7739 SH       DEFINED   16,24,25             6715      0      1024
UNIVERSAL HEALTH RLT SH BEN INT 91359E105     175      4938 SH       DEFINED   32,40,41             4938      0         0
UNIVERSAL HLTH SVCS  CL B       913903100     132      2587 SH       DEFINED   7,11                 2587      0         0
UNIVERSAL HLTH SVCS  CL B       913903100      20       400 SH       DEFINED   7,11,13               400      0         0
UNIVERSAL HLTH SVCS  CL B       913903100     598     11689 SH       DEFINED   16,24,25             7809      0      3880
UNUM GROUP           COM        91529Y106     634     26661 SH       DEFINED   7,11                26661      0         0
UNUM GROUP           COM        91529Y106      24      1000 SH       DEFINED   7,11,13              1000      0         0
UNUM GROUP           COM        91529Y106      13       565 SH       DEFINED   7,11,33                 0      0       565
UNUM GROUP           COM        91529Y106   45238   1901553 SH       DEFINED   16,24,25          1615954      0    285599
UNUM GROUP           COM        91529Y106     254     10678 SH       DEFINED   32,40,41            10678      0         0
UNUM GROUP           COM        91529Y106    3671    154300 SH  CALL DEFINED   15,16,24           154300      0         0
UNUM GROUP           COM        91529Y106     297     12500 SH  CALL DEFINED   16,24,25            12500      0         0
UNUM GROUP           COM        91529Y106    3312    139200 SH  PUT  DEFINED   15,16,24           139200      0         0
UNUM GROUP           COM        91529Y106     297     12500 SH  PUT  DEFINED   16,24,25            12500      0         0
URANIUM ENERGY CORP  COM        916896103     273     89155 SH       DEFINED   16,24,25            87555      0      1600
URANIUM RES INC      COM PAR $0 916901507     252     20200 SH       DEFINED   16,24,25            20200      0         0
URBAN OUTFITTERS INC COM        917047102     725     26578 SH       DEFINED   7,11                26578      0         0
URBAN OUTFITTERS INC COM        917047102   68150   2500000 SH       DEFINED   16                2500000      0         0
URBAN OUTFITTERS INC COM        917047102    8464    310492 SH       DEFINED   16,24,25           292778      0     17714
URBAN OUTFITTERS INC COM        917047102    3585    131500 SH       DEFINED   32,40,41           131500      0         0
URBAN OUTFITTERS INC COM        917047102    2682     98400 SH  CALL DEFINED   15,16,24            98400      0         0
URBAN OUTFITTERS INC COM        917047102    1306     47900 SH  PUT  DEFINED   15,16,24            47900      0         0
URBAN OUTFITTERS INC CL A       917047102    6741    247300 SH  PUT  DEFINED   16,24,25           247300      0         0
URSTADT BIDDLE PPTYS CL A       917286205      34      2200 SH       DEFINED   16,24,25             1200      0      1000
URSTADT BIDDLE PPTYS CL A       917286205     166     10707 SH       DEFINED   32,40,41            10707      0         0
UTILITIES HOLDRS TR  DEPOSITORY 918019100  204370   1500180 SH       DEFINED   16,24,25          1500180      0         0
UTSTARCOM INC        COM        918076100     321    116704 SH       DEFINED   15,16,24           116704      0         0
UTSTARCOM INC        COM        918076100     125     45419 SH       DEFINED   16,24,25            42422      0      2997
UTSTARCOM INC        COM        918076100     853    310300 SH  CALL DEFINED   15,16,24           310300      0         0
UTSTARCOM INC        COM        918076100     734    266900 SH  CALL DEFINED   16,24,25           266900      0         0
UTSTARCOM INC        COM        918076100    1640    596200 SH  PUT  DEFINED   15,16,24           596200      0         0
VCA ANTECH INC       COM        918194101       7       150 SH       DEFINED   12                      0      0       150
VCA ANTECH INC       COM        918194101      45      1015 SH       DEFINED   7,11                 1015      0         0
VCA ANTECH INC       COM        918194101    6282    142039 SH       DEFINED   16,24,25            91537      0     50502
VCA ANTECH INC       COM        918194101    9288    210000 SH       DEFINED   32,40,41           210000      0         0
V F CORP             COM        918204108     357      5200 SH       DEFINED   30                   5200      0         0
V F CORP             COM        918204108     704     10255 SH       DEFINED   7,11                10255      0         0
V F CORP             COM        918204108     229      3330 SH       DEFINED   7,11,13              3330      0         0
V F CORP             COM        918204108    3850     56067 SH       DEFINED   16,24,25            40994      0     15073
```

```
V F CORP                   COM         918204108    183      2660 SH   DEFINED           32,40,41    2660         0        0
V F CORP                   COM         918204108     18       258 SH   DEFINED        5-7,11,43,44       0       258        0
VSE CORP                   COM         918284100     35       716 SH   DEFINED              16,24      716         0        0
VSE CORP                   COM         918284100   1644     33665 SH   DEFINED           16,24,25    31761        0     1904
VAALCO ENERGY INC          COM NEW     91851C201    158     33976 SH   DEFINED           16,24,25    33976        0     1000
VAIL RESORTS INC           COM         91879Q109    660     12274 SH   DEFINED           16,24,25    11209        0     1065
VALENCE TECHNOLOGY I       COM         91891410?     66     32981 SH   DEFINED           16,24,25    14779        0    18202
VALEANT PHARMACEUTIC       COM         91911X104    518     43278 SH   DEFINED              7,11    43278         0        0
VALEANT PHARMACEUTIC       COM         91911X104      2       177 SH   DEFINED           7,11,13      177         0        0
VALEANT PHARMACEUTIC       COM         91911X104    582     48617 SH   DEFINED           15,16,24    48617        0        0
VALEANT PHARMACEUTIC       COM         91911X104    883     73769 SH   DEFINED           16,24,25    73385        0      384
VALEANT PHARMACEUTIC       COM         91911X104   1890    157900 SH   CALL DEFINED      15,16,24   157900        0        0
VALEANT PHARMACEUTIC       COM         91911X104   1147     95800 SH   PUT DEFINED       15,16,24    95800        0        0
VALE CAP LTD               NT RIO CV   91912C208  32360    500000 SH   DEFINED              7,11   500000         0        0
VALE CAP LTD               NT RIO CV   91912C208 112551   1739038 SH   DEFINED           16,24,25  1739038        0        0
VALE CAP LTD               NT RIO CV   91912C208  16180    250000 SH   DEFINED       16,19,24,26,27 250000        0        0
VALE CAP LTD               NT RIO P V  91912C307  25784    400000 SH   DEFINED              7,11   400000         0        0
VALE CAP LTD               NT RIO P V  91912C307  29152    452245 SH   DEFINED           16,24,25   451245        0     1000
VALERO ENERGY CORP N       COM         91913Y100    588      8400 SH   DEFINED                 12      8400        0     8400
VALERO ENERGY CORP N       COM         91913Y100    373      5330 SH   DEFINED                 30      5330        0        0
VALERO ENERGY CORP N       COM         91913Y100   3404     48611 SH   DEFINED                3,9         0        0    48611
VALERO ENERGY CORP N       COM         91913Y100  16669    238023 SH   DEFINED              7,11   136936        0   101087
VALERO ENERGY CORP N       COM         91913Y100     41      5873 SH   DEFINED           7,11,13     1650         0     4223
VALERO ENERGY CORP N       COM         91913Y100      7       100 SH   DEFINED           7,11,33        0         0      100
VALERO ENERGY CORP N       COM         91913Y100  27530    393118 SH   DEFINED           16,24,25   343103        0    50014
VALERO ENERGY CORP N       COM         91913Y100   3230     46128 SH   DEFINED           32,40,41    46128        0        0
VALERO ENERGY CORP N       COM         91913Y100   1157     16520 SH   DEFINED        5-7,11,43,44       0     16520        0
VALERO ENERGY CORP N       COM         91913Y100   4019     57391 SH   CALL DEFINED         7,11    57391         0        0
VALERO ENERGY CORP N       COM         91913Y100 109541   1564200 SH   CALL DEFINED      15,16,24  1564200        0        0
VALERO ENERGY CORP N       COM         91913Y100  60247    860300 SH   DEFINED           16,24,25   860300        0        0
VALERO ENERGY CORP N       COM         91913Y100  54371    776400 SH   PUT DEFINED       15,16,24   776400        0        0
VALERO ENERGY CORP N       COM         91913Y100  69630    994291 SH   PUT DEFINED       16,24,25   994291        0        0
VALLEY NATL BANCORP        COM         919794107    111      5833 SH   DEFINED                7,11     5833        0        0
VALLEY NATL BANCORP        COM         919794107   1492     78295 SH   DEFINED           16,24,25    72727        0     5568
VALMONT INDS INC           COM         920253101    450      5044 SH   DEFINED                7,11     5044        0        0
VALMONT INDS INC           COM         920253101   2504     28099 SH   DEFINED           16,24,25    19160        0     8939
VALMONT INDS INC           COM         920253101   1071     12014 SH   DEFINED           32,40,41    12014        0        0
VALSPAR CORP               COM         920355104     78      3475 SH   DEFINED                 30      3475        0        0
VALSPAR CORP               COM         920355104      3       148 SH   DEFINED                7,11      148        0        0
VALSPAR CORP               COM         920355104    145      6450 SH   DEFINED           7,11,13     6450         0        0
VALSPAR CORP               COM         920355104   5919    262602 SH   DEFINED           16,24,25   192027        0    70575
VALUECLICK INC             COM         92046N102    164      7500 SH   DEFINED                 30      7500        0        0
VALUECLICK INC             COM         92046N102      1        50 SH   DEFINED              16,24       50         0        0
VALUECLICK INC             COM         92046N102    265     12100 SH   DEFINED           7,11,13    12100         0        0
VALUECLICK INC             COM         92046N102    525     23995 SH   DEFINED           15,16,24    23995        0        0
VALUECLICK INC             COM         92046N102   1296     59172 SH   DEFINED           16,24,25    51828        0     7344
VALUECLICK INC             COM         92046N102   3241    148000 SH   CALL DEFINED      15,16,24   148000        0        0
VALUECLICK INC             COM         92046N102    289     13200 SH   CALL DEFINED      16,24,25    13200        0        0
VALUECLICK INC             COM         92046N102   3719    169800 SH   PUT DEFINED       15,16,24   169800        0        0
VALUECLICK INC             COM         92046N102    668     30500 SH   PUT DEFINED       16,24,25    30500        0        0
VALUEVISION MEDIA IN CL A             92047K107    137     21827 SH   DEFINED           16,24,25    21827        0        0
VAN KAMPEN HIGH INCO SH BEN INT        920913100    213     58608 SH   DEFINED           16,24,25    58608        0        0
VAN KAMPEN MUN TR    SH BEN INT        920919107    244     16228 SH   DEFINED           16,24,25    12828        0     3400
VAN KAMPEN TR INVT G COM         920929106    660     47882 SH   DEFINED           16,24,25    41362        0     6520
VAN KAMPEN TR INVT G COM         920931102    677     48872 SH   DEFINED           16,24,25    46633        0     2239
VAN KAMPEN TR INVT G COM         920933108    265     17440 SH   DEFINED           16,24,25    15840        0     1600
VAN KAMPEN MUN OPPOR COM         920935103      2       175 SH   DEFINED           7,11,13      175         0        0
VAN KAMPEN MUN OPPOR COM         920935103    510     35889 SH   DEFINED           16,24,25    32307        0     3582
VAN KAMPEN BD FD           COM         920955101      5       300 SH   DEFINED           7,11,13      300         0        0
VAN KAMPEN BD FD           COM         920955101    584     34843 SH   DEFINED           16,24,25    32993        0     1850
VAN KAMPEN BD FD           COM         920955101    174     10387 SH   DEFINED      16,19,24,26,27   10387        0        0
VAN KAMPEN SENIOR IN COM         920961109    146     21000 SH   DEFINED                7,11        0        0    21000
VAN KAMPEN SENIOR IN COM         920961109    138     19765 SH   DEFINED           7,11,33        0         0    19765
VAN KAMPEN SENIOR IN COM         920961109  26954   3872652 SH   DEFINED           16,24,25  3619409        0   253242
VAN KAMPEN SENIOR IN COM         920961109    174     25000 SH   DEFINED      16,19,24,26,27   25000        0        0
VAN KAMPEN ADVANTAGE SH BEN INT        92112K107    404     33425 SH   DEFINED           16,24,25    33425        0        0
VAN KAMPEN SELECT SE COM         92112M103    338     28748 SH   DEFINED           16,24,25    27072        0     1676
VAN KAMPEN PA VALUE        COM         92112T108     52      4000 SH   DEFINED                7,11     4000        0        0
VAN KAMPEN PA VALUE        COM         92112T108    215     16551 SH   DEFINED           7,11,13    16551         0        0
VANDA PHARMACEUTICAL COM         921659108     45      6500 SH   DEFINED                 30      6500        0        0
VANDA PHARMACEUTICAL COM         921659108   2408    350000 SH   DEFINED              16,24   350000        0        0
VANDA PHARMACEUTICAL COM         921659108    379     55047 SH   DEFINED           15,16,24    55047        0        0
VANDA PHARMACEUTICAL COM         921659108     49      7067 SH   DEFINED           16,24,25     5562        0     1505
VANDA PHARMACEUTICAL COM         921659108    742    107800 SH   CALL DEFINED      15,16,24   107800        0        0
VANDA PHARMACEUTICAL COM         921659108    654     95100 SH   PUT DEFINED       15,16,24    95100        0        0
VANGUARD SPECIALIZED DIV APP ET        921908844   3568     63768 SH   DEFINED           16,24,25    58478        0     5290
VANGUARD BD INDEX FD LONG TERM         921937793   2619     34096 SH   DEFINED           16,24,25    18885        0    15211
VANGUARD BD INDEX FD INTERM            921937819  12965    167674 SH   DEFINED           16,24,25   134293        0    33381
VANGUARD BD INDEX FD SHORT TRM         921937827  11322    146950 SH   DEFINED           16,24,25   123055        0    23895
VANGUARD BD INDEX FD TOTAL BND         921937835    677      8752 SH   DEFINED                 12     8752         0     8752
VANGUARD BD INDEX FD TOTAL BND         921937835  73192    945878 SH   DEFINED                7,11        0    15223   930655
VANGUARD BD INDEX FD TOTAL BND         921937835   2992     38662 SH   DEFINED           7,11,13        0         0    38662
VANGUARD BD INDEX FD TOTAL BND         921937835     62       800 SH   DEFINED           7,11,33        0         0      800
VANGUARD BD INDEX FD TOTAL BND         921937835  36902    476899 SH   DEFINED           16,24,25   447421        0    29477
VANGUARD TAX-MANAGED EUROPE PAC        921943858    381      7944 SH   DEFINED                7,11        0      6000     1944
VANGUARD TAX-MANAGED EUROPE PAC        921943858  38512    803673 SH   DEFINED           16,24,25   712613        0    91060
VANGUARD WHITEHALL F HIGH DIV Y        921946406   2135     41786 SH   DEFINED           16,24,25    40125        0     1661
VANGUARD WORLD FDS   CONSUM DIS        92204A108   7326    137752 SH   DEFINED           16,24,25   124609        0    13142
VANGUARD WORLD FDS   CONSUM STP        92204A207  45518    642996 SH   DEFINED           16,24,25   582503        0    60492
VANGUARD WORLD FDS   ENERGY ETF        92204A306  14850    130833 SH   DEFINED           16,24,25   121989        0     8843
VANGUARD WORLD FDS   FINANCIALS        92204A405     21       400 SH   DEFINED           7,11,33      400         0        0
VANGUARD WORLD FDS   FINANCIALS        92204A405  21501    408393 SH   DEFINED           16,24,25   385967        0    22426
VANGUARD WORLD FDS   HEALTH CAR        92204A504     72      1193 SH   DEFINED                7,11        0        0     1193
VANGUARD WORLD FDS   HEALTH CAR        92204A504  35251    581507 SH   DEFINED           16,24,25   522408        0    59099
VANGUARD WORLD FDS   INDUSTRIAL        92204A603  23475    321186 SH   DEFINED           16,24,25   295998        0    25188
VANGUARD WORLD FDS   INF TECH E        92204A702     18       300 SH   DEFINED                7,11        0        0      300
VANGUARD WORLD FDS   INF TECH E        92204A702  73446   1221644 SH   DEFINED           16,24,25  1152862        0    68802
VANGUARD WORLD FDS   MATERIALS         92204A801   9440    107348 SH   DEFINED           16,24,25   100126        0     7221
VANGUARD WORLD FDS   UTILITIES         92204A876     15       174 SH   DEFINED           7,11,33        0         0      174
VANGUARD WORLD FDS   UTILITIES         92204A876  15681    179045 SH   DEFINED           16,24,25   170838        0     8206
VANGUARD INTL EQUITY ALLWRLD EX        92204A884  13252    176053 SH   DEFINED           16,24,25   166606        0     9447
VANGUARD INTL EQUITY ALLWRLD EX        922042775     21       350 SH   DEFINED           7,11,33        0         0      350
VANGUARD INTL EQUITY ALLWRLD EX        922042775  20011    341431 SH   DEFINED           16,24,25   325339        0    16092
VANGUARD INTL EQUITY EMR MKT ET        922042858      9        83 SH   DEFINED                7,11        0        0       83
VANGUARD INTL EQUITY EMR MKT ET        922042858  82442    828746 SH   DEFINED           16,24,25   766346        0    62435
VANGUARD INTL EQUITY PACIFIC ET        922042864  30242    446383 SH   DEFINED           16,24,25   420969        0    25413
VANGUARD INTL EQUITY EURPEAN ET        922042874  85986   1149233 SH   DEFINED           16,24,25  1064105        0    85127
VARIAN MED SYS INC         COM         92220P105   2978     57094 SH   DEFINED                7,11    57094        0        0
VARIAN MED SYS INC         COM         92220P105   1339     25670 SH   DEFINED           7,11,13    24970         0      700
VARIAN MED SYS INC         COM         92220P105      3        56 SH   DEFINED           7,11,33       56         0        0
VARIAN MED SYS INC         COM         92220P105   6368    122084 SH   DEFINED           16,24,25   108413        0    13671
VARIAN MED SYS INC         COM         92220P105    423      8118 SH   DEFINED           32,40,41     8118        0        0
VARIAN MED SYS INC         COM         92220P105   2282     43751 SH   CALL DEFINED      16,24,25    43751        0        0
VARIAN MED SYS INC         COM         92220P105   2282     43751 SH   PUT DEFINED          7,11    43751         0        0
```

```
VARIAN INC                 COM        922206107     229      3500 SH    DEFINED                        30     3500      0        0
VARIAN INC                 COM        922206107     159      2430 SH    DEFINED               7,11,13          2430      0        0
VARIAN INC                 COM        922206107     810     12398 SH    DEFINED              16,24,25         11583      0      815
VARIAN SEMICONDUCTOR COM              922207105     111      3000 SH    DEFINED                        30     3000      0        0
VARIAN SEMICONDUCTOR COM              922207105     326      8800 SH    DEFINED                       3,9        0       0     8800
VARIAN SEMICONDUCTOR COM              922207105    3683     99547 SH    DEFINED                  7,11     99547       0        0
VARIAN SEMICONDUCTOR COM              922207105    3460     93507 SH    DEFINED              15,16,24     93507       0        0
VARIAN SEMICONDUCTOR COM              922207105     442     11956 SH    DEFINED              16,24,25     10417       0     1539
VARIAN SEMICONDUCTOR COM              922207105     196      5300 SH    DEFINED              32,40,41      5300       0        0
VARIAN SEMICONDUCTOR COM              922207105    4793    129550 SH    CALL DEFINED         15,16,24    129550       0        0
VARIAN SEMICONDUCTOR COM              922207105    3648     98596 SH    CALL DEFINED         16,24,25     98596       0        0
VARIAN SEMICONDUCTOR COM              922207105    3648     98596 SH    PUT  DEFINED              7,11     98596       0        0
VARIAN SEMICONDUCTOR COM              922207105   14389    388900 SH    PUT  DEFINED         15,16,24    388900       0        0
VASCO DATA SEC INTL        COM        92303Y104    1009     36138 SH    DEFINED              16,24,25     34085       0     2053
VECTREN CORP               COM        92240G101     181      6250 SH    DEFINED                        30     6250      0        0
VECTREN CORP               COM        92240G101     322     11100 SH    DEFINED                       3,9        0       0    11100
VECTREN CORP               COM        92240G101    1427     49198 SH    DEFINED              16,24,25     42514       0     6684
VECTOR GROUP LTD           NOTE  5.00 92240MAR8    3897    276600 PRN   DEFINED              16,24,25    276600       0        0
VECTOR GROUP LTD           COM        92240M108    1574     78465 SH    DEFINED              16,24,25     76205       0     2260
VEECO INSTRS INC DEL COM              922411100     376     22519 SH    DEFINED              16,24,25     21819       0      700
VENTAS INC                 COM        92276F100      73      1603 SH    DEFINED                  7,11      1603       0        0
VENTAS INC                 COM        92276F100   22008    486370 SH    DEFINED                 14,31    486370       0        0
VENTAS INC                 COM        92276F100    1816     40128 SH    DEFINED              16,24,25     34748       0     5380
VENTAS INC                 COM        92276F100   33625    743091 SH    DEFINED              32,40,41    743091       0        0
VENTANA MED SYS INC COM               92276H106     436      5000 SH    DEFINED                 31,45      5000       0        0
VENTANA MED SYS INC COM               92276H106     606      6947 SH    DEFINED              16,24,25      6447       0        0
VANGUARD INDEX FDS   MCAP VL ID       92298512    17098    321747 SH    DEFINED              16,24,25    300340       0    21407
VANGUARD INDEX FDS   MCAP GR ID       92298538    25795    398070 SH    DEFINED              16,24,25    378441       0    19629
VANGUARD INDEX FDS   REIT ETF         92298553    11129    181084 SH    DEFINED              16,24,25    171848       0     9235
VANGUARD INDEX FDS   SML CP GRW       92298595    26260    368359 SH    DEFINED              16,24,25    343028       0    25330
VANGUARD INDEX FDS   SM CP VAL        92298611    15089    233423 SH    DEFINED              16,24,25    219968       0    13455
VANGUARD INDEX FDS   MID CAP ET       92298629    16636    220026 SH    DEFINED              16,24,25    188773       0    31252
VANGUARD INDEX FDS   LARGE CAP        92298637    26753    407199 SH    DEFINED              16,24,25    370754       0    36445
VANGUARD INDEX FDS   EXTEND MKT       92298652    1968      18718 SH    DEFINED              16,24,25     17873       0      845
VANGUARD INDEX FDS   GROWTH ETF       92298736   167173   2592632 SH    DEFINED              16,24,25   2368881       0   223750
VANGUARD INDEX FDS   VALUE ETF        92298744    98807   1488279 SH    DEFINED              16,24,25   1342383       0   145895
VANGUARD INDEX FDS   SMALL CP E       92298751    34030    499921 SH    DEFINED                  7,11         0    9787   490134
VANGUARD INDEX FDS   SMALL CP E       92298751      41       608 SH     DEFINED              7,11,13          608      0        0
VANGUARD INDEX FDS   SMALL CP E       92298751     103      1513 SH     DEFINED              7,11,33         0        0     1513
VANGUARD INDEX FDS   SMALL CP E       92298751    15844    232766 SH    DEFINED              16,24,25    192263       0    40503
VANGUARD INDEX FDS   STK MRK ET       92298769    1093      7530 SH     DEFINED                   12         0       0     7530
VANGUARD INDEX FDS   STK MRK ET       92298769   124053    854654 SH    DEFINED                  7,11         0   15461   839193
VANGUARD INDEX FDS   STK MRK ET       92298769    5553     38260 SH     DEFINED              7,11,13         0        0    38260
VANGUARD INDEX FDS   STK MRK ET       92298769    38354    264238 SH    DEFINED              16,24,25    247183       0    17055
VEOLIA ENVIRONNEMENT SPONSORED        92334N103     583      6410 SH    DEFINED                  7,11      6410       0        0
VEOLIA ENVIRONNEMENT SPONSORED        92334N103      69       760 SH    DEFINED              7,11,33         0        0      760
VEOLIA ENVIRONNEMENT SPONSORED        92334N103   10788    118571 SH    DEFINED              16,24,25     93128       0    25443
VEOLIA ENVIRONNEMENT SPONSORED        92334N103    5320     58477 SH    DEFINED          16,19,24,26,27     58477       0        0
VERASUN ENERGY CORP  COM              92336G106     755     49420 SH    DEFINED              16,24,25     38035       0    11385
VERASUN ENERGY CORP  COM              92336G106     263     17185 SH    DEFINED          16,19,24,26,27     17185       0        0
VERIFONE HLDGS INC   COM              92342Y109      17       745 SH    DEFINED                  7,11       745       0        0
VERIFONE HLDGS INC   COM              92342Y109    2123     91326 SH    DEFINED              16,24,25     88312       0     3014
VERIFONE HLDGS INC   COM              92342Y109    3095    133100 SH    DEFINED              32,40,41    133100       0        0
VERISIGN INC          COM             92343E102   16036    426368 SH    DEFINED                  7,11    426368       0        0
VERISIGN INC          COM             92343E102     831     22085 SH    DEFINED              7,11,13     21935        0      150
VERISIGN INC          COM             92343E102      11       300 SH    DEFINED              7,11,33         0        0      300
VERISIGN INC          COM             92343E102   45510   1210056 SH    DEFINED              16,24,25   1131779       0    78277
VERISIGN INC          COM             92343E102     358      9520 SH    DEFINED              32,40,41      9520       0        0
VERISIGN INC          COM             92343E102   20483    544624 SH    CALL DEFINED              7,11    544624       0        0
VERISIGN INC          COM             92343E102   13179    350400 SH    CALL DEFINED         15,16,24    350400       0        0
VERISIGN INC          COM             92343E102   19380    515300 SH    CALL DEFINED         16,24,25    515300       0        0
VERISIGN INC          COM             92343E102   10019    266400 SH    PUT  DEFINED         15,16,24    266400       0        0
VERISIGN INC          COM             92343E102   13996    372124 SH    PUT  DEFINED         16,24,25    372124       0        0
VERIZON COMMUNICATIO COM              92343V104    1433     32800 SH    DEFINED                   12         0       0    32800
VERIZON COMMUNICATIO COM              92343V104     371      8500 SH    DEFINED                   30      8500       0        0
VERIZON COMMUNICATIO COM              92343V104    2628     60162 SH    DEFINED                   3,9        0       0    60162
VERIZON COMMUNICATIO COM              92343V104  131786   3016384 SH    DEFINED                  7,11   2286567   14161   715656
VERIZON COMMUNICATIO COM              92343V104    2202     50404 SH    DEFINED              7,11,13     17528       0    32876
VERIZON COMMUNICATIO COM              92343V104     258      5900 SH    DEFINED              7,11,33         0        0     5900
VERIZON COMMUNICATIO COM              92343V104  261901   5994520 SH    DEFINED              16,24,25   5473629       0   520891
VERIZON COMMUNICATIO COM              92343V104   77503   1773937 SH    DEFINED              32,40,41   1773937       0        0
VERIZON COMMUNICATIO COM              92343V104       7       150 SH    DEFINED            5-7,11,43,44        0      150        0
VERIZON COMMUNICATIO COM              92343V104   28104    643263 SH    DEFINED          16,19,24,26,27    643263       0        0
VERIZON COMMUNICATIO COM              92343V104   34345    786098 SH    CALL DEFINED              7,11    786098       0        0
VERIZON COMMUNICATIO COM              92343V104   31710    725800 SH    CALL DEFINED         15,16,24    725800       0        0
VERIZON COMMUNICATIO COM              92343V104    8790    201200 SH    CALL DEFINED         16,24,25    201200       0        0
VERIZON COMMUNICATIO COM              92343V104   25803    590600 SH    PUT  DEFINED         15,16,24    590600       0        0
VERIZON COMMUNICATIO COM              92343V104   41967    960560 SH    PUT  DEFINED         16,24,25    960560       0        0
VERSANT CORP         COM NEW          92S284309     862     29641 SH    DEFINED              16,24,25     26631       0     3010
VERSAR INC           COM              92S297103     265     40368 SH    DEFINED              16,24,25     36368       0     4000
VERTEX PHARMACEUTICA COM              92532F100     102      4400 SH    DEFINED                   30      4400       0        0
VERTEX PHARMACEUTICA COM              92532F100    1001     43100 SH    DEFINED                  7,11     43100       0        0
VERTEX PHARMACEUTICA COM              92532F100       2        82 SH    DEFINED                 16,24        82       0        0
VERTEX PHARMACEUTICA COM              92532F100      30      1300 SH    DEFINED              7,11,33         0        0     1300
VERTEX PHARMACEUTICA COM              92532F100     323     13888 SH    DEFINED              15,16,24     13888       0        0
VERTEX PHARMACEUTICA COM              92532F100    1491     64163 SH    DEFINED              16,24,25     47122       0    17041
VERTEX PHARMACEUTICA COM              92532F100    5789    249200 SH    CALL DEFINED         15,16,24    249200       0        0
VERTEX PHARMACEUTICA COM              92532F100     562    24200 SH     CALL DEFINED         16,24,25     24200       0        0
VERTEX PHARMACEUTICA COM              92532F100    5069    218200 SH    PUT  DEFINED         15,16,24    218200       0        0
VERTEX PHARMACEUTICA COM              92532F100     146      6300 SH    PUT  DEFINED         16,24,25      6300       0        0
VIASAT INC           COM              92552V100     724     21039 SH    DEFINED              16,24,25     20985       0       54
VIACOM INC NEW       CL A             92553P102    1182     26870 SH    DEFINED                  7,11     26870       0        0
VIACOM INC NEW       CL A             92553P102      13       300 SH    DEFINED              7,11,13       300       0        0
VIACOM INC NEW       CL A             92553P102     594     13500 SH    DEFINED              16,24,25     11857       0     1643
VIACOM INC NEW       CL B             92553P201      19       427 SH    DEFINED                   3,9        0       0      427
VIACOM INC NEW       CL B             92553P201    3387     77122 SH    DEFINED                  7,11     67251       0     9871
VIACOM INC NEW       CL B             92553P201      35       806 SH    DEFINED              7,11,13       806       0        0
VIACOM INC NEW       CL B             92553P201      22       500 SH    DEFINED              7,11,33         0        0      500
VIACOM INC NEW       CL B             92553P201   24893    566781 SH    DEFINED              16,24,25    483213       0    83568
VIACOM INC NEW       CL B             92553P201    4604    104831 SH    DEFINED              32,40,41    104831       0        0
VIACOM INC NEW       CL B             92553P201     237      5400 SH    DEFINED            5-7,11,43,44        0     5400        0
VIACOM INC NEW       CL B             92553P201    1273     28980 SH    DEFINED          16,19,24,26,27     28980       0        0
VIACOM INC NEW       CL B             92553P201    2174     49500 SH    CALL DEFINED              7,11     49500       0        0
VIACOM INC NEW       CL B             92553P201   11261    256400 SH    CALL DEFINED         15,16,24    256400       0        0
VIACOM INC NEW       CL B             92553P201    1621     36900 SH    PUT  DEFINED         15,16,24     36900       0        0
VICAL INC            COM              92602104     110     25973 SH     DEFINED              16,24,25     20555       0     5418
VICTORY ACQUISITION  COM              92644D100    1362    140600 SH    DEFINED              16,24,25    127900       0    12700
VICTORY ACQUISITION  *W EXP 04/       92644D118     198    118700 SH    DEFINED              16,24,25    106000       0    12700
VICTORY ACQUISITION  UNIT 99/99       92644D209     526     47200 SH    DEFINED              16,24,25     47200       0        0
VILLAGE SUPER MKT IN CL A NEW         927107409       3        68 SH    DEFINED                 16,24        68       0        0
VILLAGE SUPER MKT IN CL A NEW         927107409    1410     27700 SH    DEFINED              16,24,25     15492       0    12208
VINA CONCHA Y TORO S SPONSORED        927191106     688     16200 SH    DEFINED                  7,11     16200       0        0
VINA CONCHA Y TORO S SPONSORED        927191106       1        34 SH    DEFINED              16,24,25        34       0        0
VINA CONCHA Y TORO S SPONSORED        927191106       0         1 SH    DEFINED              16,24,25         1       0        0
```

| Name | Type | CUSIP | | | Unit | Status | Codes | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| VIRGIN MEDIA INC | COM | 92769L101 | 2172 | 126710 | SH | DEFINED | 7,11 | 126710 | 0 | 0 |
| VIRGIN MEDIA INC | COM | 92769L101 | 4722 | 275507 | SH | DEFINED | 15,16,24 | 275507 | 0 | 0 |
| VIRGIN MEDIA INC | COM | 92769L101 | 227 | 13228 | SH | DEFINED | 16,24,25 | 13228 | 0 | 0 |
| VIRGIN MEDIA INC | COM | 92769L101 | 125 | 7300 | SH | DEFINED | 32,40,41 | 7300 | 0 | 0 |
| VIRGIN MEDIA INC | COM | 92769L101 | 65 | 3816 | SH | DEFINED | 16,19,24,26,27 | 3816 | 0 | 0 |
| VIRGIN MEDIA INC | COM | 92769L101 | 4753 | 277300 | SH | CALL DEFINED | 15,16,24 | 277300 | 0 | 0 |
| VIRGIN MEDIA INC | COM | 92769L101 | 1650 | 96267 | SH | CALL DEFINED | 16,24,25 | 96267 | 0 | 0 |
| VIRGIN MEDIA INC | COM | 92769L101 | 1628 | 94967 | SH | PUT DEFINED | 7,11 | 94967 | 0 | 0 |
| VIRGIN MEDIA INC | COM | 92769L101 | 1949 | 113700 | SH | PUT DEFINED | 15,16,24 | 113700 | 0 | 0 |
| VIRGIN MEDIA INC | COM | 92769L101 | 48 | 2800 | SH | PUT DEFINED | 16,24,25 | 2800 | 0 | 0 |
| VIROPHARMA INC | COM | 928241108 | 749 | 94304 | SH | DEFINED | 15,16,24 | 94304 | 0 | 0 |
| VIROPHARMA INC | COM | 928241108 | 681 | 85766 | SH | DEFINED | 16,24,25 | 79056 | 0 | 6710 |
| VIROPHARMA INC | COM | 928241108 | 1100 | 138500 | SH | CALL DEFINED | 15,16,24 | 138500 | 0 | 0 |
| VIROPHARMA INC | COM | 928241108 | 1627 | 204900 | SH | PUT DEFINED | 15,16,24 | 204900 | 0 | 0 |
| VISHAY INTERTECHNOLO | NOTE 3.62 | 928298AP5 | 145 | 146000 | PRN | DEFINED | 16,24,25 | 146000 | 0 | 0 |
| VISHAY INTERTECHNOLO | COM | 928298108 | 282 | 24700 | SH | DEFINED | 12 | 0 | 0 | 24700 |
| VISHAY INTERTECHNOLO | COM | 928298108 | 5910 | 518001 | SH | DEFINED | 7,11 | 191959 | 1200 | 324842 |
| VISHAY INTERTECHNOLO | COM | 928298108 | 279 | 24426 | SH | DEFINED | 7,11,13 | 5926 | 0 | 18500 |
| VISHAY INTERTECHNOLO | COM | 928298108 | 14 | 1200 | SH | DEFINED | 7,11,33 | 0 | 0 | 1200 |
| VISHAY INTERTECHNOLO | COM | 928298108 | 103 | 9048 | SH | DEFINED | 15,16,24 | 9048 | 0 | 0 |
| VISHAY INTERTECHNOLO | COM | 928298108 | 2556 | 223978 | SH | DEFINED | 16,24,25 | 223223 | 0 | 755 |
| VISHAY INTERTECHNOLO | COM | 928298108 | 1351 | 118400 | SH | CALL DEFINED | 15,16,24 | 118400 | 0 | 0 |
| VISHAY INTERTECHNOLO | COM | 928298108 | 1369 | 120000 | SH | PUT DEFINED | 15,16,24 | 120000 | 0 | 0 |
| VISICU INC | COM | 92831L204 | 261 | 21955 | SH | DEFINED | 16,24,25 | 21455 | 0 | 500 |
| VISTEON CORP | COM | 92839U107 | 1975 | 449916 | SH | DEFINED | 15,16,24 | 449916 | 0 | 0 |
| VISTEON CORP | COM | 92839U107 | 415 | 94429 | SH | DEFINED | 16,24,25 | 92480 | 0 | 1949 |
| VISTEON CORP | COM | 92839U107 | 234 | 53400 | SH | CALL DEFINED | 15,16,24 | 53400 | 0 | 0 |
| VISTEON CORP | COM | 92839U107 | 4323 | 984700 | SH | PUT DEFINED | 15,16,24 | 984700 | 0 | 0 |
| VISUAL SCIENCES INC | COM | 92845H108 | 1532 | 82913 | SH | DEFINED | 31,45 | 82913 | 0 | 0 |
| VISUAL SCIENCES INC | COM | 92845H108 | 31 | 1689 | SH | DEFINED | 16,24,25 | 999 | 0 | 690 |
| VITRO SOCIEDAD ANONI | SPONSORED | 92850Z301 | 136 | 20647 | SH | DEFINED | 16,24,25 | 18297 | 0 | 2350 |
| VIVO PARTICIPACOES S | SPON ADR P | 92855S101 | 170 | 31079 | SH | DEFINED | 16,24,25 | 27934 | 0 | 3145 |
| VIVO PARTICIPACOES S | SPON ADR P | 92855S101 | 55 | 10130 | SH | DEFINED | 32,40,41 | 10130 | 0 | 0 |
| VMWARE INC | CL A COM | 928563402 | 110 | 1300 | SH | DEFINED | 30 | 1300 | 0 | 0 |
| VMWARE INC | CL A COM | 928563402 | 1304 | 15340 | SH | DEFINED | 15,16,24 | 15340 | 0 | 0 |
| VMWARE INC | CL A COM | 928563402 | 28161 | 331340 | SH | DEFINED | 16,24,25 | 302572 | 0 | 28768 |
| VMWARE INC | CL A COM | 928563402 | 34 | 400 | SH | DEFINED | 32,40,41 | 400 | 0 | 0 |
| VMWARE INC | CL A COM | 928563402 | 31633 | 372200 | SH | DEFINED | 15,16,24 | 372200 | 0 | 0 |
| VMWARE INC | CL A COM | 928563402 | 14032 | 165100 | SH | CALL DEFINED | 16,24,25 | 165100 | 0 | 0 |
| VMWARE INC | CL A COM | 928563402 | 28854 | 339500 | SH | PUT DEFINED | 15,16,24 | 339500 | 0 | 0 |
| VMWARE INC | CL A COM | 928563402 | 14661 | 172500 | SH | PUT DEFINED | 16,24,25 | 172500 | 0 | 0 |
| VODAFONE GROUP PLC N | SPONS ADR | 92857W209 | 259 | 6932 | SH | DEFINED | 30 | 6932 | 0 | 0 |
| VODAFONE GROUP PLC N | SPONS ADR | 92857W209 | 4417 | 118352 | SH | DEFINED | 7,11 | 0 | 500 | 117852 |
| VODAFONE GROUP PLC N | SPONS ADR | 92857W209 | 2376 | 63677 | SH | DEFINED | 7,11,13 | 60777 | 0 | 2900 |
| VODAFONE GROUP PLC N | SPONS ADR | 92857W209 | 53 | 1410 | SH | DEFINED | 7,11,33 | 0 | 0 | 1410 |
| VODAFONE GROUP PLC N | SPONS ADR | 92857W209 | 77 | 2063 | SH | DEFINED | 15,16,24 | 2063 | 0 | 0 |
| VODAFONE GROUP PLC N | SPONS ADR | 92857W209 | 57277 | 1534758 | SH | DEFINED | 16,24,25 | 1354695 | 0 | 180062 |
| VODAFONE GROUP PLC N | SPONS ADR | 92857W209 | 182120 | 4879958 | SH | DEFINED | 16,19,24,26,29 | 4879958 | 0 | 0 |
| VODAFONE GROUP PLC N | SPONS ADR | 92857W209 | 5326 | 142700 | SH | CALL DEFINED | 15,16,24 | 142700 | 0 | 0 |
| VODAFONE GROUP PLC N | SPONS ADR | 92857W209 | 11898 | 318800 | SH | PUT DEFINED | 15,16,24 | 318800 | 0 | 0 |
| VODAFONE GROUP PLC N | SPONS ADR | 92857W209 | 269 | 7200 | SH | PUT DEFINED | 16,24,25 | 7200 | 0 | 0 |
| VONAGE HLDGS CORP | COM | 92886T201 | 6 | 2700 | SH | DEFINED | 16,24,25 | 2700 | 0 | 0 |
| VONAGE HLDGS CORP | COM | 92886T201 | 1 | 530 | SH | DEFINED | 16,24,25 | 530 | 0 | 0 |
| VONAGE HLDGS CORP | COM | 92886T201 | 20 | 8600 | SH | CALL DEFINED | 15,16,24 | 8600 | 0 | 0 |
| VONAGE HLDGS CORP | COM | 92886T201 | 7 | 3100 | SH | PUT DEFINED | 16,24,25 | 3100 | 0 | 0 |
| VORNADO RLTY TR | DBCV 2.85 | 929042AC3 | 14140 | 16000000 | PRN | DEFINED | 16,24,25 | 16000000 | 0 | 0 |
| VORNADO RLTY TR | DBCV 2.85 | 929042AC3 | 8838 | 10000000 | PRN | DEFINED | 16,19,24,26,27 | 10000000 | 0 | 0 |
| VORNADO RLTY TR | SH BEN INT | 929042109 | 1778 | 20221 | SH | DEFINED | 7,11 | 20221 | 0 | 0 |
| VORNADO RLTY TR | SH BEN INT | 929042109 | 27484 | 312500 | SH | DEFINED | 14,31 | 312500 | 0 | 0 |
| VORNADO RLTY TR | SH BEN INT | 929042109 | 16 | 187 | SH | DEFINED | 7,11,13 | 0 | 0 | 187 |
| VORNADO RLTY TR | SH BEN INT | 929042109 | 70 | 800 | SH | DEFINED | 7,11,33 | 0 | 0 | 800 |
| VORNADO RLTY TR | SH BEN INT | 929042109 | 2636 | 29969 | SH | DEFINED | 16,24,25 | 22410 | 0 | 7559 |
| VORNADO RLTY TR | SH BEN INT | 929042109 | 54173 | 615948 | SH | DEFINED | 32,40,41 | 615948 | 0 | 0 |
| VORNADO RLTY TR | SH BEN INT | 929042109 | 261 | 2964 | SH | DEFINED | 16,19,24,26,27 | 2964 | 0 | 0 |
| VORNADO RLTY L P | DBCV 3.62 | 929043AE7 | 368 | 401000 | PRN | DEFINED | 16,24,25 | 401000 | 0 | 0 |
| VOTORANTIM CELULOSE | SPONSORED | 92906P106 | 468 | 15700 | SH | DEFINED | 30 | 15700 | 0 | 0 |
| VOTORANTIM CELULOSE | SPONSORED | 92906P106 | 33 | 1107 | SH | DEFINED | 7,11,13 | 932 | 0 | 175 |
| VOTORANTIM CELULOSE | SPONSORED | 92906P106 | 318 | 10655 | SH | DEFINED | 16,24,25 | 10413 | 0 | 242 |
| VOTORANTIM CELULOSE | SPONSORED | 92906P106 | 4554 | 152782 | SH | DEFINED | 32,40,41 | 152782 | 0 | 0 |
| VOTORANTIM CELULOSE | SPONSORED | 92906P106 | 6 | 200 | SH | DEFINED | 16,19,24,26,27 | 200 | 0 | 0 |
| VULCAN MATLS CO | COM | 929160109 | 869 | 10985 | SH | DEFINED | 7,11 | 10814 | 0 | 171 |
| VULCAN MATLS CO | COM | 929160109 | 470 | 5941 | SH | DEFINED | 31,45 | 5941 | 0 | 0 |
| VULCAN MATLS CO | COM | 929160109 | 101 | 1283 | SH | DEFINED | 7,11,13 | 321 | 0 | 962 |
| VULCAN MATLS CO | COM | 929160109 | 159 | 2009 | SH | DEFINED | 7,11,33 | 0 | 0 | 2009 |
| VULCAN MATLS CO | COM | 929160109 | 23475 | 296812 | SH | DEFINED | 15,16,24 | 296812 | 0 | 0 |
| VULCAN MATLS CO | COM | 929160109 | 8496 | 107426 | SH | DEFINED | 16,24,25 | 93566 | 0 | 13860 |
| VULCAN MATLS CO | COM | 929160109 | 797 | 10080 | SH | DEFINED | 32,40,41 | 10080 | 0 | 0 |
| VULCAN MATLS CO | COM | 929160109 | 43144 | 545500 | SH | CALL DEFINED | 15,16,24 | 545500 | 0 | 0 |
| VULCAN MATLS CO | COM | 929160109 | 38200 | 483000 | SH | PUT DEFINED | 15,16,24 | 483000 | 0 | 0 |
| WCI CMNTYS INC | COM | 92923C104 | 2 | 600 | SH | DEFINED | 7,11,13 | 600 | 0 | 0 |
| WCI CMNTYS INC | COM | 92923C104 | 1154 | 305176 | SH | DEFINED | 16,24,25 | 305086 | 0 | 89 |
| WCI CMNTYS INC | COM | 92923C104 | 1058 | 280000 | SH | CALL DEFINED | 7,11 | 280000 | 0 | 0 |
| WCI CMNTYS INC | COM | 92923C104 | 1737 | 459600 | SH | CALL DEFINED | 15,16,24 | 459600 | 0 | 0 |
| WCI CMNTYS INC | COM | 92923C104 | 393 | 104000 | SH | CALL DEFINED | 16,24,25 | 104000 | 0 | 0 |
| WCI CMNTYS INC | COM | 92923C104 | 1508 | 398900 | SH | PUT DEFINED | 15,16,24 | 398900 | 0 | 0 |
| WCI CMNTYS INC | COM | 92923C104 | 1134 | 300000 | SH | PUT DEFINED | 16,24,25 | 300000 | 0 | 0 |
| WD-40 CO | COM | 929236107 | 34 | 900 | SH | DEFINED | 30 | 900 | 0 | 0 |
| WD-40 CO | COM | 929236107 | 992 | 26130 | SH | DEFINED | 7,11,13 | 25780 | 0 | 350 |
| WD-40 CO | COM | 929236107 | 926 | 24388 | SH | DEFINED | 16,24,25 | 19938 | 0 | 4450 |
| WGL HLDGS INC | COM | 92924F106 | 62 | 1900 | SH | DEFINED | 30 | 1900 | 0 | 0 |
| WGL HLDGS INC | COM | 92924F106 | 26 | 800 | SH | DEFINED | 7,11,13 | 800 | 0 | 0 |
| WGL HLDGS INC | COM | 92924F106 | 1119 | 34166 | SH | DEFINED | 16,24,25 | 25838 | 0 | 8328 |
| WABCO HLDGS INC | COM | 92927K102 | 4572 | 91270 | SH | DEFINED | 7,11 | 91270 | 0 | 0 |
| WABCO HLDGS INC | COM | 92927K102 | 3 | 53 | SH | DEFINED | 7,11,13 | 53 | 0 | 0 |
| WABCO HLDGS INC | COM | 92927K102 | 443 | 8854 | SH | DEFINED | 15,16,24 | 8854 | 0 | 0 |
| WABCO HLDGS INC | COM | 92927K102 | 489 | 9760 | SH | DEFINED | 16,24,25 | 7872 | 0 | 1888 |
| WABCO HLDGS INC | COM | 92927K102 | 30 | 600 | SH | DEFINED | 32,40,41 | 600 | 0 | 0 |
| WMS INDS INC | COM | 929571109 | 181 | 4950 | SH | DEFINED | 30 | 4950 | 0 | 0 |
| WMS INDS INC | COM | 929571109 | 1161 | 31684 | SH | DEFINED | 16,24,25 | 29726 | 0 | 1958 |
| W P CAREY & CO LLC | COM | 92930Y107 | 1557 | 46903 | SH | DEFINED | 16,24,25 | 40685 | 0 | 6218 |
| WPP GROUP PLC | SPON ADR | 929309409 | 662 | 10300 | SH | DEFINED | 30 | 10300 | 0 | 0 |
| WPP GROUP PLC | SPON ADR | 929309409 | 40 | 615 | SH | DEFINED | 7,11 | 0 | 0 | 615 |
| WPP GROUP PLC | SPON ADR | 929309409 | 129 | 2000 | SH | DEFINED | 7,11,13 | 2000 | 0 | 0 |
| WPP GROUP PLC | SPON ADR | 929309409 | 5 | 80 | SH | DEFINED | 7,11,33 | 0 | 0 | 80 |
| WPP GROUP PLC | SPON ADR | 929309409 | 2335 | 36319 | SH | DEFINED | 16,24,25 | 25824 | 0 | 10495 |
| WPCS INTL INC | COM NEW | 92931L203 | 1272 | 134411 | SH | DEFINED | 16,24,25 | 12911 | 0 | 121500 |
| WNS HOLDINGS LTD | SPON ADR | 92932M101 | 312 | 19073 | SH | DEFINED | 16,24,25 | 18373 | 0 | 700 |
| WSFS FINL CORP | COM | 929328102 | 15 | 300 | SH | DEFINED | 7,11,13 | 300 | 0 | 0 |
| WSFS FINL CORP | COM | 929328102 | 394 | 7839 | SH | DEFINED | 16,24,25 | 7384 | 0 | 455 |
| WUXI PHARMATECH CAYM | SPONS ADR | 92935G102 | 205 | 6995 | SH | DEFINED | 16,24,25 | 6525 | 0 | 470 |
| WABTEC CORP | COM | 929740108 | 162 | 4700 | SH | DEFINED | 30 | 4700 | 0 | 0 |
| WABTEC CORP | COM | 929740108 | 1295 | 37600 | SH | DEFINED | 7,11,13 | 37600 | 0 | 0 |
| WABTEC CORP | COM | 929740108 | 1423 | 41325 | SH | DEFINED | 16,24,25 | 27217 | 0 | 14108 |
| WACHOVIA CORP NEW | COM | 929903102 | 157 | 4130 | SH | DEFINED | 12 | 0 | 0 | 4130 |

| Name | Class | CUSIP | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| WACHOVIA CORP NEW | COM | 929903102 | 365 | 9600 | SH | DEFINED | | 30 | 9600 | 0 | 0 |
| WACHOVIA CORP NEW | COM | 929903102 | 16 | 422 | SH | DEFINED | | 3,9 | 0 | 0 | 422 |
| WACHOVIA CORP NEW | COM | 929903102 | 33827 | 889481 | SH | DEFINED | | 7,11 | 642885 | 0 | 246596 |
| WACHOVIA CORP NEW | COM | 929903102 | 20124 | 529150 | SH | DEFINED | | 16,24 | 529150 | 0 | 0 |
| WACHOVIA CORP NEW | COM | 929903102 | 2094 | 55049 | SH | DEFINED | | 7,11,13 | 51782 | 0 | 3267 |
| WACHOVIA CORP NEW | COM | 929903102 | 80 | 2098 | SH | DEFINED | | 7,11,33 | 0 | 0 | 2098 |
| WACHOVIA CORP NEW | COM | 929903102 | 68020 | 1788599 | SH | DEFINED | | 16,24,25 | 1477171 | 0 | 311428 |
| WACHOVIA CORP NEW | COM | 929903102 | 32440 | 853017 | SH | DEFINED | | 32,40,41 | 853017 | 0 | 0 |
| WACHOVIA CORP NEW | COM | 929903102 | 60 | 1576 | SH | DEFINED | | 16,19,24,26,27 | 1576 | 0 | 0 |
| WACHOVIA CORP NEW | COM | 929903102 | 73253 | 1926200 | SH | CALL DEFINED | | 15,16,24 | 1926200 | 0 | 0 |
| WACHOVIA CORP NEW | COM | 929903102 | 14001 | 368166 | SH | CALL DEFINED | | 16,24,25 | 368166 | 0 | 0 |
| WACHOVIA CORP NEW | COM | 929903102 | 16869 | 443566 | SH | PUT DEFINED | | 7,11 | 443566 | 0 | 0 |
| WACHOVIA CORP NEW | COM | 929903102 | 29074 | 764500 | SH | PUT DEFINED | | 15,16,24 | 764500 | 0 | 0 |
| WACHOVIA CORP NEW | COM | 929903102 | 12660 | 332900 | SH | PUT DEFINED | | 16,24,25 | 332900 | 0 | 0 |
| WADDELL & REED FINL | CL A | 930059100 | 120 | 3325 | SH | DEFINED | | 30 | 3325 | 0 | 0 |
| WADDELL & REED FINL | CL A | 930059100 | 722 | 20001 | SH | DEFINED | | 16,24,25 | 14101 | 0 | 5900 |
| WAL MART STORES INC | COM | 931142103 | 1084 | 22800 | SH | DEFINED | | 12 | 0 | 0 | 22800 |
| WAL MART STORES INC | COM | 931142103 | 589 | 12392 | SH | DEFINED | | 3,9 | 0 | 0 | 12392 |
| WAL MART STORES INC | COM | 931142103 | 81777 | 1720544 | SH | DEFINED | | 7,11 | 1283055 | 0 | 437489 |
| WAL MART STORES INC | COM | 931142103 | 1651 | 34726 | SH | DEFINED | | 7,11,13 | 14546 | 0 | 20180 |
| WAL MART STORES INC | COM | 931142103 | 393 | 8260 | SH | DEFINED | | 7,11,33 | 0 | 0 | 8260 |
| WAL MART STORES INC | COM | 931142103 | 221368 | 4657432 | SH | DEFINED | | 16,24,25 | 4004276 | 0 | 653155 |
| WAL MART STORES INC | COM | 931142103 | 3606 | 75865 | SH | DEFINED | | 32,40,41 | 75865 | 0 | 0 |
| WAL MART STORES INC | COM | 931142103 | 422 | 8880 | SH | DEFINED | | 5-7,11,43,44 | 0 | 8880 | 0 |
| WAL MART STORES INC | COM | 931142103 | 2915 | 61325 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | | 61325 | 0 | 0 |
| WAL MART STORES INC | COM | 931142103 | 55020 | 1157575 | SH | CALL DEFINED | | 7,11 | 1157575 | 0 | 0 |
| WAL MART STORES INC | COM | 931142103 | 97437 | 2050000 | SH | CALL DEFINED | | 15,16,24 | 2050000 | 0 | 0 |
| WAL MART STORES INC | COM | 931142103 | 35590 | 748800 | SH | CALL DEFINED | | 16,24,25 | 744800 | 0 | 4000 |
| WAL MART STORES INC | COM | 931142103 | 13071 | 275000 | SH | PUT DEFINED | | 7,11 | 275000 | 0 | 0 |
| WAL MART STORES INC | COM | 931142103 | 77174 | 1623700 | SH | PUT DEFINED | | 15,16,24 | 1623700 | 0 | 0 |
| WAL MART STORES INC | COM | 931142103 | 91584 | 1926875 | SH | PUT DEFINED | | 16,24,25 | 1926875 | 0 | 0 |
| WALGREEN CO | COM | 931422109 | 21419 | 562481 | SH | DEFINED | | 7,11 | 121769 | 0 | 440712 |
| WALGREEN CO | COM | 931422109 | 971 | 25500 | SH | DEFINED | | 7,11,13 | 22059 | 0 | 3441 |
| WALGREEN CO | COM | 931422109 | 226 | 5935 | SH | DEFINED | | 7,11,33 | 0 | 0 | 5935 |
| WALGREEN CO | COM | 931422109 | 853 | 22406 | SH | DEFINED | | 15,16,24 | 22406 | 0 | 0 |
| WALGREEN CO | COM | 931422109 | 64530 | 1694579 | SH | DEFINED | | 16,24,25 | 1471851 | 0 | 222727 |
| WALGREEN CO | COM | 931422109 | 1237 | 32474 | SH | DEFINED | | 32,40,41 | 32474 | 0 | 0 |
| WALGREEN CO | COM | 931422109 | 2386 | 62666 | SH | DEFINED | | 5-7,11,43,44 | 0 | 62666 | 0 |
| WALGREEN CO | COM | 931422109 | 38 | 1007 | SH | DEFINED | | 16,19,24,26,27 | 1007 | 0 | 0 |
| WALGREEN CO | COM | 931422109 | 6912 | 181500 | SH | CALL DEFINED | | 15,16,24 | 181500 | 0 | 0 |
| WALGREEN CO | COM | 931422109 | 10742 | 282100 | SH | CALL DEFINED | | 16,24,25 | 282100 | 0 | 0 |
| WALGREEN CO | COM | 931422109 | 9619 | 252600 | SH | PUT DEFINED | | 15,16,24 | 252600 | 0 | 0 |
| WALGREEN CO | COM | 931422109 | 7129 | 187200 | SH | PUT DEFINED | | 16,24,25 | 187200 | 0 | 0 |
| WALTER INDS INC | COM | 93317Q105 | 2827 | 78669 | SH | DEFINED | | 7,11 | 78669 | 0 | 0 |
| WALTER INDS INC | COM | 93317Q105 | 1129 | 31430 | SH | DEFINED | | 7,11,13 | 31430 | 0 | 0 |
| WALTER INDS INC | COM | 93317Q105 | 12285 | 341918 | SH | DEFINED | | 16,24,25 | 191243 | 0 | 150675 |
| WALTER INDS INC | COM | 93317Q105 | 7067 | 196700 | SH | CALL DEFINED | | 15,16,24 | 196700 | 0 | 0 |
| WALTER INDS INC | COM | 93317Q105 | 1807 | 50300 | SH | PUT DEFINED | | 15,16,24 | 50300 | 0 | 0 |
| WARNACO GROUP INC | COM NEW | 934390402 | 1176 | 33800 | SH | DEFINED | | 7,11 | 33800 | 0 | 0 |
| WARNACO GROUP INC | COM NEW | 934390402 | 968 | 27806 | SH | DEFINED | | 16,24,25 | 24248 | 0 | 3558 |
| WARNER MUSIC GROUP C | COM | 934550104 | 1 | 239 | SH | DEFINED | | 7,11 | 239 | 0 | 0 |
| WARNER MUSIC GROUP C | COM | 934550104 | 191 | 31455 | SH | DEFINED | | 16,24,25 | 30155 | 0 | 1300 |
| WARREN RES INC | COM | 93564A100 | 590 | 41759 | SH | DEFINED | | 16,24,25 | 40943 | 0 | 816 |
| WASHINGTON FED INC | COM | 938824109 | 54 | 2546 | SH | DEFINED | | 30 | 2546 | 0 | 0 |
| WASHINGTON FED INC | COM | 938824109 | 13 | 600 | SH | DEFINED | | 7,11,13 | 600 | 0 | 0 |
| WASHINGTON FED INC | COM | 938824109 | 688 | 32605 | SH | DEFINED | | 16,24,25 | 30265 | 0 | 2340 |
| WASHINGTON MUT INC | COM | 939322103 | 23 | 1700 | SH | DEFINED | | 30 | 1700 | 0 | 0 |
| WASHINGTON MUT INC | COM | 939322103 | 14784 | 1086266 | SH | DEFINED | | 7,11 | 1058446 | 0 | 27820 |
| WASHINGTON MUT INC | COM | 939322103 | 3863 | 283800 | SH | DEFINED | | 16,24 | 283800 | 0 | 0 |
| WASHINGTON MUT INC | COM | 939322103 | 203 | 14947 | SH | DEFINED | | 7,11,13 | 9835 | 0 | 5112 |
| WASHINGTON MUT INC | COM | 939322103 | 1765 | 129718 | SH | DEFINED | | 15,16,24 | 129718 | 0 | 0 |
| WASHINGTON MUT INC | COM | 939322103 | 17514 | 1286876 | SH | DEFINED | | 16,24,25 | 1115228 | 0 | 171648 |
| WASHINGTON MUT INC | COM | 939322103 | 7281 | 534958 | SH | DEFINED | | 32,40,41 | 534958 | 0 | 0 |
| WASHINGTON MUT INC | COM | 939322103 | 6272 | 460857 | SH | DEFINED | | 16,19,24,26,27 | 460857 | 0 | 0 |
| WASHINGTON MUT INC | COM | 939322103 | 4787 | 351715 | SH | CALL DEFINED | | 7,11 | 351715 | 0 | 0 |
| WASHINGTON MUT INC | COM | 939322103 | 13315 | 978300 | SH | CALL DEFINED | | 15,16,24 | 978300 | 0 | 0 |
| WASHINGTON MUT INC | COM | 939322103 | 3518 | 258494 | SH | CALL DEFINED | | 16,24,25 | 258494 | 0 | 0 |
| WASHINGTON MUT INC | COM | 939322103 | 11155 | 819594 | SH | PUT DEFINED | | 7,11 | 819594 | 0 | 0 |
| WASHINGTON MUT INC | COM | 939322103 | 13821 | 1015500 | SH | PUT DEFINED | | 15,16,24 | 1015500 | 0 | 0 |
| WASHINGTON MUT INC | COM | 939322103 | 5006 | 367815 | SH | PUT DEFINED | | 16,24,25 | 367815 | 0 | 0 |
| WASHINGTON POST CO | CL B | 939640108 | 3393 | 4287 | SH | DEFINED | | 7,11 | 3712 | 0 | 575 |
| WASHINGTON POST CO | CL B | 939640108 | 2609 | 3297 | SH | DEFINED | | 16,24,25 | 2696 | 0 | 601 |
| WASHINGTON POST CO | CL B | 939640108 | 176 | 223 | SH | DEFINED | | 32,40,41 | 223 | 0 | 0 |
| WASHINGTON REAL ESTA | SH BEN INT | 939653101 | 150 | 4774 | SH | DEFINED | | 7,11,13 | 4774 | 0 | 0 |
| WASHINGTON REAL ESTA | SH BEN INT | 939653101 | 1231 | 39206 | SH | DEFINED | | 16,24,25 | 25615 | 0 | 13590 |
| WASHINGTON REAL ESTA | SH BEN INT | 939653101 | 694 | 22084 | SH | DEFINED | | 32,40,41 | 22084 | 0 | 0 |
| WASTE CONNECTIONS IN | COM | 941053100 | 59 | 1910 | SH | DEFINED | | 30 | 1910 | 0 | 0 |
| WASTE CONNECTIONS IN | COM | 941053100 | 1780 | 57620 | SH | DEFINED | | 16,24,25 | 51821 | 0 | 5799 |
| WASTE MGMT INC DEL | COM | 94106L109 | 91 | 2787 | SH | DEFINED | | 3,9 | 0 | 0 | 2787 |
| WASTE MGMT INC DEL | COM | 94106L109 | 1951 | 59731 | SH | DEFINED | | 7,11 | 53981 | 0 | 5750 |
| WASTE MGMT INC DEL | COM | 94106L109 | 5227 | 160000 | SH | DEFINED | | 16,24 | 160000 | 0 | 0 |
| WASTE MGMT INC DEL | COM | 94106L109 | 172 | 5251 | SH | DEFINED | | 7,11,13 | 5051 | 0 | 200 |
| WASTE MGMT INC DEL | COM | 94106L109 | 118 | 3600 | SH | DEFINED | | 7,11,33 | 0 | 0 | 3600 |
| WASTE MGMT INC DEL | COM | 94106L109 | 2424 | 74211 | SH | DEFINED | | 15,16,24 | 74211 | 0 | 0 |
| WASTE MGMT INC DEL | COM | 94106L109 | 48596 | 1487466 | SH | DEFINED | | 16,24,25 | 1285221 | 0 | 202244 |
| WASTE MGMT INC DEL | COM | 94106L109 | 529 | 16190 | SH | DEFINED | | 32,40,41 | 16190 | 0 | 0 |
| WASTE MGMT INC DEL | COM | 94106L109 | 4734 | 144900 | SH | CALL DEFINED | | 15,16,24 | 144900 | 0 | 0 |
| WASTE MGMT INC DEL | COM | 94106L109 | 1111 | 34000 | SH | CALL DEFINED | | 16,24,25 | 34000 | 0 | 0 |
| WASTE MGMT INC DEL | COM | 94106L109 | 5616 | 171900 | SH | PUT DEFINED | | 15,16,24 | 171900 | 0 | 0 |
| WASTE MGMT INC DEL | COM | 94106L109 | 781 | 23900 | SH | PUT DEFINED | | 16,24,25 | 23900 | 0 | 0 |
| WASTE SERVICES INC D | COM NEW | 941075202 | 210 | 24550 | SH | DEFINED | | 16,24,25 | 22685 | 0 | 1865 |
| WATERS CORP | COM | 941848103 | 4188 | 52960 | SH | DEFINED | | 7,11 | 52960 | 0 | 0 |
| WATERS CORP | COM | 941848103 | 132 | 1675 | SH | DEFINED | | 7,11,13 | 1675 | 0 | 0 |
| WATERS CORP | COM | 941848103 | 2222 | 28107 | SH | DEFINED | | 15,16,24 | 28107 | 0 | 0 |
| WATERS CORP | COM | 941848103 | 6690 | 84613 | SH | DEFINED | | 16,24,25 | 73291 | 0 | 11322 |
| WATERS CORP | COM | 941848103 | 524 | 6628 | SH | DEFINED | | 32,40,41 | 6628 | 0 | 0 |
| WATERS CORP | COM | 941848103 | 783 | 9900 | SH | CALL DEFINED | | 15,16,24 | 9900 | 0 | 0 |
| WATERS CORP | COM | 941848103 | 395 | 5000 | SH | CALL DEFINED | | 16,24,25 | 5000 | 0 | 0 |
| WATERS CORP | COM | 941848103 | 1795 | 22700 | SH | PUT DEFINED | | 15,16,24 | 22700 | 0 | 0 |
| WATERS CORP | COM | 941848103 | 395 | 5000 | SH | PUT DEFINED | | 16,24,25 | 5000 | 0 | 0 |
| WATSON PHARMACEUTICA | DBCV 1.75 | 942683103 | 202 | 213000 | PRN | DEFINED | | 16,24,25 | 213000 | 0 | 0 |
| WATSON PHARMACEUTICA | COM | 942683103 | 233 | 8600 | SH | DEFINED | | 3,9 | 0 | 0 | 8600 |
| WATSON PHARMACEUTICA | COM | 942683103 | 9144 | 336933 | SH | DEFINED | | 7,11 | 336933 | 0 | 0 |
| WATSON PHARMACEUTICA | COM | 942683103 | 421 | 15495 | SH | DEFINED | | 7,11,13 | 15495 | 0 | 0 |
| WATSON PHARMACEUTICA | COM | 942683103 | 4416 | 162720 | SH | DEFINED | | 16,24,25 | 151885 | 0 | 10835 |
| WATSON PHARMACEUTICA | COM | 942683103 | 3 | 94 | SH | DEFINED | | 32,40,41 | 94 | 0 | 0 |
| WATSON PHARMACEUTICA | COM | 942683103 | 2751 | 101358 | SH | CALL DEFINED | | 7,11 | 101358 | 0 | 0 |
| WATSON PHARMACEUTICA | COM | 942683103 | 5387 | 198500 | SH | CALL DEFINED | | 15,16,24 | 198500 | 0 | 0 |
| WATSON PHARMACEUTICA | COM | 942683103 | 586 | 21600 | SH | CALL DEFINED | | 16,24,25 | 21600 | 0 | 0 |
| WATSON PHARMACEUTICA | COM | 942683103 | 768 | 28300 | SH | PUT DEFINED | | 15,16,24 | 28300 | 0 | 0 |
| WATSON PHARMACEUTICA | COM | 942683103 | 3907 | 143958 | SH | PUT DEFINED | | 16,24,25 | 143958 | 0 | 0 |
| WATSON WYATT WORLDWI | CL A | 942712100 | 2 | 36 | SH | DEFINED | | 3,9 | 0 | 0 | 36 |
| WATSON WYATT WORLDWI | CL A | 942712100 | 6439 | 138750 | SH | DEFINED | | 16,24,25 | 131773 | 0 | 6976 |
| WATTS WATER TECHNOLO | CL A | 942749102 | 294 | 9875 | SH | DEFINED | | 7,11 | 9875 | 0 | 0 |

| Name | Type | CUSIP | Col1 | Col2 | Unit | Def | Code | Col3 | Col4 | Col5 |
|---|---|---|---|---|---|---|---|---|---|---|
| WATTS WATER TECHNOLO CL A | | 942749102 | 30 | 1000 | SH | DEFINED | 7,11,13 | 1000 | 0 | 0 |
| WATTS WATER TECHNOLO CL A | | 942749102 | 3580 | 120129 | SH | DEFINED | 16,24,25 | 86091 | 0 | 34037 |
| WATTS WATER TECHNOLO CL A | | 942749102 | 179 | 6000 | SH | DEFINED | 32,40,41 | 6000 | 0 | 0 |
| WAUSAU PAPER CORP | COM | 943315101 | 338 | 37550 | SH | DEFINED | 7,11,13 | 37550 | 0 | 0 |
| WAUSAU PAPER CORP | COM | 943315101 | 879 | 97781 | SH | DEFINED | 16,24,25 | 93591 | 0 | 4190 |
| WEBMD CORP | NOTE 1.75 | 94769MAE5 | 13965 | 14000000 | PRN | DEFINED | 31,45 | 14000000 | 0 | 0 |
| WEBMD CORP | NOTE 1.75 | 94769MAE5 | 10 | 10000 | PRN | DEFINED | 16,24,25 | 10000 | 0 | 0 |
| WEBMD HEALTH CORP | COM | 94770V102 | 4 | 90 | SH | DEFINED | 7,11 | 90 | 0 | 0 |
| WEBMD HEALTH CORP | CL A | 94770V102 | 3132 | 76268 | SH | DEFINED | 16,24,25 | 15763 | 0 | 60505 |
| WEBSTER FINL CORP CO | COM | 947890109 | 605 | 18911 | SH | DEFINED | 16,24,25 | 17257 | 0 | 1654 |
| WEIGHT WATCHERS INTL | COM | 948626106 | 105 | 2313 | SH | DEFINED | 7,11 | 2313 | 0 | 0 |
| WEIGHT WATCHERS INTL | COM | 948626106 | 17 | 375 | SH | DEFINED | 7,11,13 | 375 | 0 | 0 |
| WEIGHT WATCHERS INTL | COM | 948626106 | 763 | 16880 | SH | DEFINED | 16,24,25 | 16263 | 0 | 617 |
| WEINGARTEN RLTY INVS | NOTE 3.95 | 94874IAF0 | 577 | 616000 | PRN | DEFINED | 16,24,25 | 616000 | 0 | 0 |
| WEINGARTEN RLTY INVS | SH BEN INT | 948741103 | 159 | 5060 | SH | DEFINED | 7,11 | 5060 | 0 | 0 |
| WEINGARTEN RLTY INVS | SH BEN INT | 948741103 | 198 | 6286 | SH | DEFINED | 7,11,13 | 5286 | 0 | 1000 |
| WEINGARTEN RLTY INVS | SH BEN INT | 948741103 | 2822 | 89771 | SH | DEFINED | 16,24,25 | 67789 | 0 | 21982 |
| WEINGARTEN RLTY INVS | SH BEN INT | 948741103 | 11527 | 366626 | SH | DEFINED | 32,40,41 | 366626 | 0 | 0 |
| WEIS MKTS INC | COM | 948849104 | 60 | 1500 | SH | DEFINED | 30 | 1500 | 0 | 0 |
| WEIS MKTS INC | COM | 948849104 | 2 | 38 | SH | DEFINED | 7,11 | 0 | 0 | 38 |
| WEIS MKTS INC | COM | 948849104 | 1018 | 25483 | SH | DEFINED | 7,11,13 | 25483 | 0 | 0 |
| WEIS MKTS INC | COM | 948849104 | 42 | 1042 | SH | DEFINED | 16,24,25 | 842 | 0 | 200 |
| WELLCARE HEALTH PLAN | COM | 94946T106 | 21 | 492 | SH | DEFINED | 7,11 | 492 | 0 | 0 |
| WELLCARE HEALTH PLAN | COM | 94946T106 | 159 | 3758 | SH | DEFINED | 16,24,25 | 3592 | 0 | 166 |
| WELLCARE HEALTH PLAN | COM | 94946T106 | 76 | 1800 | SH | DEFINED | 32,40,41 | 1800 | 0 | 0 |
| WELLPOINT INC | COM | 94973V107 | 322 | 3675 | SH | DEFINED | 12 | 0 | 0 | 3675 |
| WELLPOINT INC | COM | 94973V107 | 691 | 7880 | SH | DEFINED | 30 | 7880 | 0 | 0 |
| WELLPOINT INC | COM | 94973V107 | 4623 | 52691 | SH | DEFINED | 3,9 | 0 | 0 | 52691 |
| WELLPOINT INC | COM | 94973V107 | 21072 | 240196 | SH | DEFINED | 7,11 | 111348 | 0 | 128848 |
| WELLPOINT INC | COM | 94973V107 | 2979 | 33953 | SH | DEFINED | 7,11,13 | 21218 | 0 | 12735 |
| WELLPOINT INC | COM | 94973V107 | 512 | 5840 | SH | DEFINED | 7,11,33 | 0 | 0 | 5840 |
| WELLPOINT INC | COM | 94973V107 | 178035 | 2029349 | SH | DEFINED | 16,24,25 | 1796478 | 0 | 232870 |
| WELLPOINT INC | COM | 94973V107 | 7082 | 80722 | SH | DEFINED | 32,40,41 | 80722 | 0 | 0 |
| WELLPOINT INC | COM | 94973V107 | 9636 | 109842 | SH | CALL | DEFINED | 7,11 | 109842 | 0 | 0 |
| WELLPOINT INC | COM | 94973V107 | 19608 | 223500 | SH | CALL | DEFINED | 15,16,24 | 223500 | 0 | 0 |
| WELLPOINT INC | COM | 94973V107 | 14958 | 170500 | SH | CALL | DEFINED | 16,24,25 | 170500 | 0 | 0 |
| WELLPOINT INC | COM | 94973V107 | 3948 | 45000 | SH | PUT | DEFINED | 7,11 | 45000 | 0 | 0 |
| WELLPOINT INC | COM | 94973V107 | 25196 | 287200 | SH | PUT | DEFINED | 15,16,24 | 287200 | 0 | 0 |
| WELLPOINT INC | COM | 94973V107 | 20208 | 230342 | SH | PUT | DEFINED | 16,24,25 | 230342 | 0 | 0 |
| WELLS FARGO & NEW | DBCV | 949746PA4 | 35265 | 35432000 | PRN | DEFINED | 16,24,25 | 35182000 | 0 | 250000 |
| WELLS FARGO & CO NEW | COM | 949746101 | 1887 | 62500 | SH | DEFINED | 12 | 0 | 0 | 62500 |
| WELLS FARGO & CO NEW | COM | 949746101 | 64 | 2132 | SH | DEFINED | 3,9 | 0 | 0 | 2132 |
| WELLS FARGO & CO NEW | COM | 949746101 | 60210 | 1994357 | SH | DEFINED | 7,11 | 927187 | 6790 | 1060380 |
| WELLS FARGO & CO NEW | COM | 949746101 | 3 | 100 | SH | DEFINED | 16,24 | 100 | 0 | 0 |
| WELLS FARGO & CO NEW | COM | 949746101 | 7222 | 239206 | SH | DEFINED | 7,11,13 | 197726 | 0 | 41480 |
| WELLS FARGO & CO NEW | COM | 949746101 | 558 | 18470 | SH | DEFINED | 7,11,33 | 0 | 0 | 18470 |
| WELLS FARGO & CO NEW | COM | 949746101 | 128058 | 4241723 | SH | DEFINED | 16,24,25 | 3308422 | 0 | 933300 |
| WELLS FARGO & CO NEW | COM | 949746101 | 18780 | 622062 | SH | DEFINED | 32,40,41 | 622062 | 0 | 0 |
| WELLS FARGO & CO NEW | COM | 949746101 | 1056 | 34980 | SH | DEFINED | 5-7,11,43,44 | 0 | 34980 | 0 |
| WELLS FARGO & CO NEW | COM | 949746101 | 101 | 3336 | SH | DEFINED | 16,19,24,26,27 | 3336 | 0 | 0 |
| WELLS FARGO & CO NEW | COM | 949746101 | 10348 | 342748 | SH | CALL | DEFINED | 7,11 | 342748 | 0 | 0 |
| WELLS FARGO & CO NEW | COM | 949746101 | 20970 | 694600 | SH | CALL | DEFINED | 15,16,24 | 694600 | 0 | 0 |
| WELLS FARGO & CO NEW | COM | 949746101 | 1510 | 50000 | SH | CALL | DEFINED | 16,24,25 | 50000 | 0 | 0 |
| WELLS FARGO & CO NEW | COM | 949746101 | 54411 | 1802300 | SH | PUT | DEFINED | 15,16,24 | 1802300 | 0 | 0 |
| WELLS FARGO & CO NEW | COM | 949746101 | 12005 | 397648 | SH | PUT | DEFINED | 16,24,25 | 397648 | 0 | 0 |
| WENDYS INTL INC | COM | 950590109 | 192 | 7443 | SH | DEFINED | 7,11 | 7443 | 0 | 0 |
| WENDYS INTL INC | COM | 950590109 | 16 | 600 | SH | DEFINED | 7,11,13 | 600 | 0 | 0 |
| WENDYS INTL INC | COM | 950590109 | 2581 | 99886 | SH | DEFINED | 16,24,25 | 95530 | 0 | 4356 |
| WENDYS INTL INC | COM | 950590109 | 89 | 3462 | SH | DEFINED | 32,40,41 | 3462 | 0 | 0 |
| WENDYS INTL INC | COM | 950590109 | 5142 | 199000 | SH | CALL | DEFINED | 7,11 | 199000 | 0 | 0 |
| WENDYS INTL INC | COM | 950590109 | 8036 | 311000 | SH | CALL | DEFINED | 15,16,24 | 311000 | 0 | 0 |
| WENDYS INTL INC | COM | 950590109 | 3044 | 117800 | SH | CALL | DEFINED | 16,24,25 | 117800 | 0 | 0 |
| WENDYS INTL INC | COM | 950590109 | 3574 | 138300 | SH | PUT | DEFINED | 15,16,24 | 138300 | 0 | 0 |
| WENDYS INTL INC | COM | 950590109 | 1450 | 56100 | SH | PUT | DEFINED | 16,24,25 | 56100 | 0 | 0 |
| WERNER ENTERPRISES I | COM | 950755108 | 61 | 3600 | SH | DEFINED | 30 | 3600 | 0 | 0 |
| WERNER ENTERPRISES I | COM | 950755108 | 18 | 1060 | SH | DEFINED | 16,24 | 1060 | 0 | 0 |
| WERNER ENTERPRISES I | COM | 950755108 | 11 | 625 | SH | DEFINED | 7,11,13 | 625 | 0 | 0 |
| WERNER ENTERPRISES I | COM | 950755108 | 215 | 12652 | SH | DEFINED | 16,24,25 | 11691 | 0 | 961 |
| WESCO FINL CORP | COM | 950817106 | 47 | 116 | SH | DEFINED | 7,11 | 116 | 0 | 0 |
| WESCO FINL CORP | COM | 950817106 | 2027 | 4981 | SH | DEFINED | 16,24,25 | 2801 | 0 | 2180 |
| WESCO INTL INC | COM | 95082P105 | 67 | 1685 | SH | DEFINED | 30 | 1685 | 0 | 0 |
| WESCO INTL INC | COM | 95082P105 | 22 | 565 | SH | DEFINED | 7,11 | 565 | 0 | 0 |
| WESCO INTL INC | COM | 95082P105 | 3883 | 97955 | SH | DEFINED | 16,24,25 | 70464 | 0 | 27491 |
| WEST BANCORPORATION | CAP STK | 95123P106 | 160 | 12249 | SH | DEFINED | 16,24,25 | 12249 | 0 | 0 |
| WEST MARINE INC | COM | 954235107 | 1 | 98 | SH | DEFINED | 3,9 | 0 | 0 | 98 |
| WEST MARINE INC | COM | 954235107 | 106 | 11798 | SH | DEFINED | 16,24,25 | 11798 | 0 | 0 |
| WEST PHARMACEUTICAL | COM | 955306105 | 65 | 1600 | SH | DEFINED | 30 | 1600 | 0 | 0 |
| WEST PHARMACEUTICAL | COM | 955306105 | 295 | 7260 | SH | DEFINED | 7,11,13 | 7260 | 0 | 0 |
| WEST PHARMACEUTICAL | COM | 955306105 | 103 | 2526 | SH | DEFINED | 16,24,25 | 2526 | 0 | 0 |
| WESTAR ENERGY INC | COM | 95709T100 | 136 | 5235 | SH | DEFINED | 30 | 5235 | 0 | 0 |
| WESTAR ENERGY INC | COM | 95709T100 | 953 | 36750 | SH | DEFINED | 7,11 | 35950 | 0 | 800 |
| WESTAR ENERGY INC | COM | 95709T100 | 36 | 1375 | SH | DEFINED | 7,11,13 | 375 | 0 | 1000 |
| WESTAR ENERGY INC | COM | 95709T100 | 935 | 36044 | SH | DEFINED | 16,24,25 | 34536 | 0 | 1507 |
| WESTAMERICA BANCORPO | COM | 957090103 | 881 | 19773 | SH | DEFINED | 16,24,25 | 8308 | 0 | 11465 |
| WESTERN ASSET EMRG M | COM | 95766A101 | 6980 | 392357 | SH | DEFINED | 16,24,25 | 347086 | 0 | 45270 |
| WESTERN ASSET EMRG M | COM | 95766A101 | 594 | 33400 | SH | DEFINED | 16,19,24,26,27 | 33400 | 0 | 0 |
| WESTERN AST GLB HI I | COM | 95768B109 | 166 | 14150 | SH | DEFINED | 7,11 | 0 | 0 | 14150 |
| WESTERN AST GLB HI I | COM | 95768B109 | 11039 | 940932 | SH | DEFINED | 16,24,25 | 846891 | 0 | 94040 |
| WESTERN ASSET EMRG M | COM | 95766C107 | 423 | 36533 | SH | DEFINED | 16,24,25 | 34176 | 0 | 2357 |
| WESTERN ASSET EMRG MKT | COM | 95766C107 | 107 | 9200 | SH | DEFINED | 16,19,24,26,27 | 9200 | 0 | 0 |
| WESTERN ASSET EMRG M | COM | 95766E103 | 536 | 42851 | SH | DEFINED | 16,24,25 | 37105 | 0 | 5746 |
| WESTERN ASSET EMRG M | COM | 95766F100 | 552 | 42850 | SH | DEFINED | 16,24,25 | 28850 | 0 | 14000 |
| WESTERN ASSET GLB PT | COM | 95766G108 | 38 | 2927 | SH | DEFINED | 16,19,24,26,27 | 2927 | 0 | 0 |
| WESTERN ASSET GLB PT | COM | 95766G108 | 50 | 4490 | SH | DEFINED | 7,11 | 0 | 0 | 4490 |
| WESTERN ASSET GLB PT | COM | 95766G108 | 562 | 50524 | SH | DEFINED | 16,24,25 | 50259 | 0 | 265 |
| WESTERN ASSET HIGH I | COM | 95766H106 | 376 | 41876 | SH | DEFINED | 16,24,25 | 40676 | 0 | 1200 |
| WESTERN ASSET HIGH I | COM | 95766H106 | 99 | 11000 | SH | DEFINED | 16,19,24,26,27 | 11000 | 0 | 0 |
| WESTERN ASSET HIGH I | COM | 95766J102 | 4654 | 460792 | SH | DEFINED | 16,24,25 | 399275 | 0 | 61517 |
| WESTERN ASSET HIGH I | COM | 95766K109 | 2340 | 390010 | SH | DEFINED | 16,24,25 | 356699 | 0 | 33311 |
| WESTERN ASSETT MGD H | COM | 95766L107 | 1374 | 239406 | SH | DEFINED | 16,24,25 | 208506 | 0 | 30899 |
| WESTERN ASSET MGD H | COM | 95766L107 | 86 | 14900 | SH | DEFINED | 16,19,24,26,27 | 14900 | 0 | 0 |
| WESTERN ASSET MNG MUN | COM | 95766M105 | 5084 | 468121 | SH | DEFINED | 16,24,25 | 387404 | 0 | 80656 |
| WESTERN ASST MN PRT | COM | 95766P108 | 54 | 4109 | SH | DEFINED | 7,11,13 | 0 | 0 | 4109 |
| WESTERN ASSET MN PRT | COM | 95766P108 | 2142 | 161769 | SH | DEFINED | 16,24,25 | 157394 | 0 | 4375 |
| WESTERN ASSET CLYM I | COM SH BEN | 95766Q106 | 228 | 19450 | SH | DEFINED | 7,11,13 | 19450 | 0 | 0 |
| WESTERN ASSET CLYM I | COM SH BEN | 95766Q106 | 3349 | 285541 | SH | DEFINED | 16,24,25 | 225744 | 0 | 59796 |
| WESTERN ASSET CLYM I | COM | 95766Q106 | 340 | 29000 | SH | DEFINED | 16,19,24,26,27 | 29000 | 0 | 0 |
| WESTERN ASSET CLYM I | COM | 95766R104 | 1310 | 111428 | SH | DEFINED | 7,11,13 | 107303 | 0 | 4125 |
| WESTERN ASSET CLYM I | COM | 95766R104 | 15300 | 1300995 | SH | DEFINED | 16,24,25 | 1118804 | 0 | 182191 |
| WESTERN ASSET CLYM I | COM | 95766R104 | 193 | 16400 | SH | DEFINED | 16,19,24,26,27 | 16400 | 0 | 0 |
| WESTERN ASSET INCOME | COM | 95766T100 | 20 | 1500 | SH | DEFINED | 7,11,13 | 1500 | 0 | 0 |
| WESTERN ASSET INCOME | COM | 95766T100 | 1741 | 128992 | SH | DEFINED | 16,24,25 | 67131 | 0 | 61861 |
| WESTERN ASSET INFL M | COM | 95766U107 | 305 | 18858 | SH | DEFINED | 16,24,25 | 18184 | 0 | 673 |
| WESTERN ASSET 2008 W | COM | 95766W103 | 33 | 3250 | SH | DEFINED | 7,11,13 | 3250 | 0 | 0 |

```
WESTERN ASSET 2008 W COM            95766W103     2200    218555 SH     DEFINED       16,24,25      204215    0     14339
WESTERN ASSET PREMIE SHS BEN IN     957664105       98      7443 SH     DEFINED       7,11,13         6918    0       525
WESTERN ASSET PREMIE SHS BEN IN     957664105     2283    173865 SH     DEFINED       16,24,25      111363    0     62502
WESTERN ASSET VAR RT COM            957667108     2260   1434477 SH     DEFINED       16,24,25      136497    0      6979
WESTERN ASSET VAR RT COM            957667108      189     12000 SH     DEFINED       16,19,24,26,27 12000    0         0
WESTERN ASSET WORLDW COM            957668106       74      5700 SH     DEFINED       7,11            0       0      5700
WESTERN ASSET WORLDW COM            957668106      984     75840 SH     DEFINED       16,24,25       71350    0      4490
WESTERN ASSET WORLDW COM            957668106       53      4100 SH     DEFINED       16,19,24,26,27  4100    0         0
WESTERN ASSET ZENIX  COM            957669104       45     19165 SH     DEFINED       16,24,25       19165    0         0
WESTERN DIGITAL CORP COM            958102105     1056     34945 SH     DEFINED       12              0       0     34945
WESTERN DIGITAL CORP COM            958102105     7354    243433 SH     DEFINED       3,9             0       0    243433
WESTERN DIGITAL CORP COM            958102105    17538    580522 SH     DEFINED       7,11          147379    0    433143
WESTERN DIGITAL CORP COM            958102105        3       112 SH     DEFINED       16,24          112      0         0
WESTERN DIGITAL CORP COM            958102105      412     13635 SH     DEFINED       7,11,13        250      0     13385
WESTERN DIGITAL CORP COM            958102105       59      1950 SH     DEFINED       7,11,33         0       0      1950
WESTERN DIGITAL CORP COM            958102105     1514     50122 SH     DEFINED       15,16,24       50122    0         0
WESTERN DIGITAL CORP COM            958102105    18404    609212 SH     DEFINED       16,24,25      554941    0     54271
WESTERN DIGITAL CORP COM            958102105     2790     92351 SH     DEFINED       32,40,41       92351    0         0
WESTERN DIGITAL CORP COM            958102105     2616     86600 SH CALL 15,16,24      86600    0         0
WESTERN DIGITAL CORP COM            958102105     4785    158400 SH PUT  16,24,25      158400    0         0
WESTERN ASSET INTM M COM            958435109        5       600 SH     DEFINED       16,24          600      0         0
WESTERN ASSET INTM M COM            958435109      986    113669 SH     DEFINED       16,24,25       97986    0     15683
WESTERN UN CO        COM            959802109      961     39600 SH     DEFINED       16,24           0       0     39600
WESTERN UN CO        COM            959802109    10380    427505 SH     DEFINED       7,11          343551    0     83954
WESTERN UN CO        COM            959802109     1218     50185 SH     DEFINED       7,11,13        50185    0         0
WESTERN UN CO        COM            959802109      139      5705 SH     DEFINED       7,11,33         0       0      5705
WESTERN UN CO        COM            959802109      227      9362 SH     DEFINED       15,16,24       9362     0         0
WESTERN UN CO        COM            959802109    43603   1795843 SH     DEFINED       16,24,25     1539755    0    256087
WESTERN UN CO        COM            959802109      577     23760 SH     DEFINED       32,40,41       23760    0         0
WESTERN UN CO        COM            959802109      138      5700 SH     DEFINED       5-7,11,43,44    0      5700        0
WESTERN UN CO        COM            959802109      714     29390 SH     DEFINED       16,19,24,26,27 29390    0         0
WESTERN UN CO        COM            959802109     3120    128496 SH CALL 7,11         128496    0         0
WESTERN UN CO        COM            959802109     4662    192000 SH CALL 15,16,24     192000    0         0
WESTERN UN CO        COM            959802109     4215    173600 SH CALL 16,24,25     173600    0         0
WESTERN UN CO        COM            959802109     6177    254400 SH PUT  15,16,24     254400    0         0
WESTERN UN CO        COM            959802109     3848    158496 SH PUT  16,24,25     158496    0         0
WESTLAKE CHEM CORP   COM            960413102       53      2800 SH     DEFINED       30             2800     0         0
WESTLAKE CHEM CORP   COM            960413102        9       456 SH     DEFINED       7,11            0       0       456
WESTLAKE CHEM CORP   COM            960413102      212     11177 SH     DEFINED       16,24,25       9190     0      1987
WESTPAC BKG CORP     SPONSORED      961214301     1636     13429 SH     DEFINED       16,24,25       12710    0       718
WESTWOOD ONE INC     COM            961815107       88     44287 SH     DEFINED       16,24,25       44248    0        39
WET SEAL INC         CL A           961840105      255    109601 SH     DEFINED       16,24,25       94801    0     14800
WET SEAL INC         CL A           961840105        6      2500 SH CALL 15,16,24      2500     0         0
WET SEAL INC         CL A           961840105       37     15700 SH PUT  15,16,24      15700    0         0
WEYERHAEUSER CO      COM            962166104     3018     40934 SH     DEFINED       7,11           34034    0      6900
WEYERHAEUSER CO      COM            962166104       22       302 SH     DEFINED       7,11,13        302      0         0
WEYERHAEUSER CO      COM            962166104       57       770 SH     DEFINED       7,11,33         0       0       770
WEYERHAEUSER CO      COM            962166104   115803   1570420 SH     DEFINED       16,24,25     1390483    0    179936
WEYERHAEUSER CO      COM            962166104      477      6463 SH     DEFINED       32,40,41       6463     0         0
WEYERHAEUSER CO      COM            962166104      119      1617 SH     DEFINED       16,19,24,26,27 1617     0         0
WEYERHAEUSER CO      COM            962166104     3871     52500 SH CALL 7,11         52500    0         0
WEYERHAEUSER CO      COM            962166104    30698    416300 SH CALL 15,16,24     416300    0         0
WEYERHAEUSER CO      COM            962166104     1814     24600 SH CALL 16,24,25     24600    0         0
WEYERHAEUSER CO      COM            962166104    13376    181400 SH PUT  15,16,24     181400    0         0
WEYERHAEUSER CO      COM            962166104     3628     49200 SH PUT  16,24,25     49200    0         0
WHIRLPOOL CORP       COM            963320106      269      3300 SH     DEFINED       30             3300     0         0
WHIRLPOOL CORP       COM            963320106     1342     16436 SH     DEFINED       7,11           6436     0     10000
WHIRLPOOL CORP       COM            963320106       29       350 SH     DEFINED       7,11,13        350      0         0
WHIRLPOOL CORP       COM            963320106     2878     35261 SH     DEFINED       15,16,24       35261    0         0
WHIRLPOOL CORP       COM            963320106     9990    122383 SH     DEFINED       16,24,25      115822    0      6561
WHIRLPOOL CORP       COM            963320106      319      3903 SH     DEFINED       32,40,41       3903     0         0
WHIRLPOOL CORP       COM            963320106    10269    125800 SH CALL 15,16,24     125800    0         0
WHIRLPOOL CORP       COM            963320106       16       200 SH CALL 16,24,25     200      0         0
WHIRLPOOL CORP       COM            963320106    25493    312300 SH PUT  15,16,24     312300    0         0
WHITING PETE CORP NE COM            966387102     2618     45401 SH     DEFINED       16,24,25       44372    0      1029
WHITNEY HLDG CORP    COM            966612103      113      4325 SH     DEFINED       30             4325     0         0
WHITNEY HLDG CORP    COM            966612103      252      9621 SH     DEFINED       16,24,25       4613     0      5008
WHOLE FOODS MKT INC  COM            966837106      832     20388 SH     DEFINED       7,11           20388    0         0
WHOLE FOODS MKT INC  COM            966837106       86      2110 SH     DEFINED       7,11,13        2100     0        10
WHOLE FOODS MKT INC  COM            966837106       59      1450 SH     DEFINED       7,11,33         0       0      1450
WHOLE FOODS MKT INC  COM            966837106     4625    113355 SH     DEFINED       15,16,24      113355    0         0
WHOLE FOODS MKT INC  COM            966837106    18851    462030 SH     DEFINED       16,24,25      402743    0     59286
WHOLE FOODS MKT INC  COM            966837106      184      4502 SH     DEFINED       32,40,41       4502     0         0
WHOLE FOODS MKT INC  COM            966837106     7956    195000 SH CALL 15,16,24     195000    0         0
WHOLE FOODS MKT INC  COM            966837106     1106     27100 SH CALL 16,24,25     27100    0         0
WHOLE FOODS MKT INC  COM            966837106    21726    532500 SH PUT  15,16,24     532500    0         0
WHOLE FOODS MKT INC  COM            966837106     1240     30400 SH PUT  16,24,25     30400    0         0
WIDEPOINT CORP       COM            967590100     5347   4997500 SH     DEFINED       16,24,25     4997500    0         0
WILEY JOHN & SONS IN CL A           968223206       37       860 SH     DEFINED       7,11            0       0       240
WILEY JOHN & SONS IN CL A           968223206       30       700 SH     DEFINED       7,11,13        700      0         0
WILEY JOHN & SONS IN CL A           968223206      591     13788 SH     DEFINED       16,24,25       10119    0      3669
WILEY JOHN & SONS IN CL A           968223206       30       700 SH     DEFINED       32,40,41       700      0         0
WILEY JOHN & SONS IN CL B           968223305      133      3100 SH     DEFINED       7,11,13         0       0      3100
WILEY JOHN & SONS IN CL B           968223305      322      7500 SH     DEFINED       16,24,25       7500     0         0
WILLBROS GROUP INC   COM            969199108      142      3700 SH     DEFINED       30             3700     0         0
WILLBROS GROUP INC   COM            969199108      276      7205 SH     DEFINED       16,24,25       6700     0       505
WILLBROS GROUP INC   COM            969199108      391     10200 SH CALL 15,16,24     10200    0         0
WILLBROS GROUP INC   COM            969199108      184      4800 SH PUT  15,16,24     4800     0         0
WILLIAMS COS INC DEL COM            969457100      717     20040 SH     DEFINED       30            20040     0         0
WILLIAMS COS INC DEL COM            969457100     4680    130809 SH     DEFINED       7,11          125809    0      5000
WILLIAMS COS INC DEL COM            969457100       64      1780 SH     DEFINED       7,11,13        1780     0         0
WILLIAMS COS INC DEL COM            969457100     1391     38865 SH     DEFINED       7,11,33         0       0     38865
WILLIAMS COS INC DEL COM            969457100    59623   1666376 SH     DEFINED       16,24,25     1425276    0    241099
WILLIAMS COS INC DEL COM            969457100      646     18047 SH     DEFINED       32,40,41       18047    0         0
WILLIAMS COS INC DEL COM            969457100      562     15701 SH     DEFINED       16,19,24,26,27 15701    0         0
WILLIAMS COS INC DEL COM            969457100    37533   1049000 SH CALL 15,16,24    1049000    0         0
WILLIAMS COS INC DEL COM            969457100     1528     42700 SH CALL 16,24,25     42700    0         0
WILLIAMS COS INC DEL COM            969457100    11951    334000 SH PUT  15,16,24     334000    0         0
WILLIAMS COS INC DEL COM            969457100     1510     42200 SH PUT  16,24,25     42200    0         0
WILLIAMS PARTNERS L  COM UNIT L     96950P104       67      1700 SH     DEFINED       7,11,33         0       0      1700
WILLIAMS PARTNERS L  COM UNIT L     96950F104    19639    501007 SH     DEFINED       16,24,25      492957    0      8050
WILLIAMS SONOMA INC  COM            969904101      170      6565 SH     DEFINED       7,11           6415     0       150
WILLIAMS SONOMA INC  COM            969904101     6615    255404 SH     DEFINED       16,24,25      226633    0     28771
WILLIAMS SONOMA INC  COM            969904101       69      2647 SH     DEFINED       32,40,41       2647     0         0
WILLIAMS SONOMA INC  COM            969904101     1624     62700 SH CALL 15,16,24     62700    0         0
WILLIAMS SONOMA INC  COM            969904101     3004    116000 SH CALL 16,24,25    116000    0         0
WILLIAMS SONOMA INC  COM            969904101     4623    178500 SH PUT  15,16,24    178500    0         0
WILLIAMS SONOMA INC  COM            969904101     3030    117000 SH PUT  16,24,25    117000    0         0
WILMINGTON TRUST COR COM            971807102        7       200 SH     DEFINED       7,11            0       0       200
WILMINGTON TRUST COR COM            971807102     2640     74992 SH     DEFINED       7,11,13        73817    0      1175
WILMINGTON TRUST COR COM            971807102      958     27203 SH     DEFINED       16,24,25       12530    0     14672
WILSONS THE LEATHER  COM            972463103       22     23900 SH     DEFINED       16,24,25       19700    0      4200
WIMM BILL DANN FOODS SPONSORED      97263M109      984      7512 SH     DEFINED       16,24,25       6868     0       644
WIMM BILL DANN FOODS SPONSORED      97263M109       38       290 SH     DEFINED       32,40,41       290      0         0
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| WIMM BILL DANN FOODS SPONSORED | | 97263M109 | 666 | 5079 | SH | DEFINED | 16,19,24,26,27 | 5079 | 0 | 0 |
| WIND RIVER SYSTEMS I | COM | 973149107 | 165 | 18501 | SH | DEFINED | 7,11 | 18501 | 0 | 0 |
| WIND RIVER SYSTEMS I | COM | 973149107 | 34 | 3762 | SH | DEFINED | 16,24,25 | 2812 | 0 | 950 |
| WINDSTREAM CORP | COM | 97381W104 | 383 | 29400 | SH | DEFINED | 30 | 29400 | 0 | 0 |
| WINDSTREAM CORP | COM | 97381W104 | 461 | 35414 | SH | DEFINED | 7,11 | 35414 | 0 | 0 |
| WINDSTREAM CORP | COM | 97381W104 | 30 | 2287 | SH | DEFINED | 7,11,13 | 2287 | 0 | 0 |
| WINDSTREAM CORP | COM | 97381W104 | 126 | 9687 | SH | DEFINED | 7,11,33 | 0 | 0 | 9687 |
| WINDSTREAM CORP | COM | 97381W104 | 219 | 16798 | SH | DEFINED | 15,16,24 | 16798 | 0 | 0 |
| WINDSTREAM CORP | COM | 97381W104 | 15192 | 1166824 | SH | DEFINED | 16,24,25 | 997456 | 0 | 169368 |
| WINDSTREAM CORP | COM | 97381W104 | 7482 | 574632 | SH | DEFINED | 32,40,41 | 574632 | 0 | 0 |
| WINTHROP RLTY TR | SH BEN INT | 976391102 | 179 | 33820 | SH | DEFINED | 16,24,25 | 32020 | 0 | 1800 |
| WINTHROP RLTY TR | SH BEN INT | 976391102 | 139 | 26344 | SH | DEFINED | 32,40,41 | 26344 | 0 | 0 |
| WIPRO LTD | SPON ADR 1 | 97651M109 | 78 | 5235 | SH | DEFINED | 7,11 | 5235 | 0 | 0 |
| WIPRO LTD | SPON ADR 1 | 97651M109 | 1822 | 122753 | SH | DEFINED | 16,24,25 | 115671 | 0 | 7081 |
| WIRELESS HLDGS TR | DEPOSITORY | 97653L208 | 227 | 3136 | SH | DEFINED | 16,24,25 | 1236 | 0 | 1900 |
| WISCONSIN ENERGY COR | COM | 976657106 | 2441 | 50122 | SH | DEFINED | 7,11 | 5635 | 0 | 44487 |
| WISCONSIN ENERGY COR | COM | 976657106 | 4871 | 100000 | SH | DEFINED | 16,24 | 100000 | 0 | 0 |
| WISCONSIN ENERGY COR | COM | 976657106 | 52 | 1069 | SH | DEFINED | 7,11,13 | 1069 | 0 | 0 |
| WISCONSIN ENERGY COR | COM | 976657106 | 11 | 220 | SH | DEFINED | 7,11,33 | 0 | 0 | 220 |
| WISCONSIN ENERGY COR | COM | 976657106 | 7233 | 148491 | SH | DEFINED | 16,24,25 | 123862 | 0 | 24628 |
| WISCONSIN ENERGY COR | COM | 976657106 | 211 | 4332 | SH | DEFINED | 32,40,41 | 4332 | 0 | 0 |
| WISDOMTREE TRUST | TOTAL DIVI | 97717W109 | 3491 | 61509 | SH | DEFINED | 16,24,25 | 40730 | 0 | 20779 |
| WISDOMTREE TRUST | HG-YIELDIN | 97717W208 | 2917 | 54900 | SH | DEFINED | 16,24,25 | 52265 | 0 | 2634 |
| WISDOMTREE TRUST | EMG MKTS S | 97717W281 | 1353 | 28683 | SH | DEFINED | 16,24,25 | 28510 | 0 | 173 |
| WISDOMTREE TRUST | LARGECAP D | 97717W307 | 10070 | 174338 | SH | DEFINED | 16,24,25 | 147577 | 0 | 26761 |
| WISDOMTREE TRUST | EMRG MKT H | 97717W315 | 6161 | 116781 | SH | DEFINED | 16,24,25 | 111254 | 0 | 5527 |
| WISDOMTREE TRUST | INTL REAL | 97717W331 | 17 | 350 | SH | DEFINED | 7,11,33 | 0 | 0 | 350 |
| WISDOMTREE TRUST | INTL REAL | 97717W331 | 5213 | 105642 | SH | DEFINED | 16,24,25 | 103303 | 0 | 2339 |
| WISDOMTREE TRUST | DIVID TOP | 97717W406 | 9128 | 162365 | SH | DEFINED | 16,24,25 | 154396 | 0 | 7969 |
| WISDOMTREE TRUST | MIDCAP DIV | 97717W505 | 6300 | 121101 | SH | DEFINED | 16,24,25 | 118262 | 0 | 2839 |
| WISDOMTREE TRUST | LOW P/E FU | 97717W547 | 1334 | 27420 | SH | DEFINED | 16,24,25 | 27298 | 0 | 122 |
| WISDOMTREE TRUST | EARN TOP10 | 97717W554 | 213 | 4228 | SH | DEFINED | 16,24,25 | 3403 | 0 | 825 |
| WISDOMTREE TRUST | SMLCAP EAR | 97717W562 | 1472 | 34871 | SH | DEFINED | 16,24,25 | 34163 | 0 | 708 |
| WISDOMTREE TRUST | MDCP EARN | 97717W570 | 3913 | 84740 | SH | DEFINED | 16,24,25 | 72561 | 0 | 12179 |
| WISDOMTREE TRUST | SMALLCAP D | 97717W604 | 4869 | 100324 | SH | DEFINED | 16,24,25 | 94951 | 0 | 5372 |
| WISDOMTREE TRUST | INTL UTILI | 97717W653 | 10138 | 289232 | SH | DEFINED | 16,24,25 | 279020 | 0 | 10212 |
| WISDOMTREE TRUST | INTL TECHN | 97717W661 | 559 | 22643 | SH | DEFINED | 16,24,25 | 21534 | 0 | 1109 |
| WISDOMTREE TRUST | INTL INDUS | 97717W679 | 2417 | 74867 | SH | DEFINED | 16,24,25 | 73556 | 0 | 1311 |
| WISDOMTREE TRUST | INTL FINAN | 97717W687 | 2349 | 87812 | SH | DEFINED | 16,24,25 | 84452 | 0 | 3360 |
| WISDOMTREE TRUST | INTL FINAN | 97717W695 | 1926 | 71986 | SH | DEFINED | 16,24,25 | 71000 | 0 | 986 |
| WISDOMTREE TRUST | DEFA FD | 97717W703 | 14326 | 206431 | SH | DEFINED | 16,24,25 | 200032 | 0 | 6399 |
| WISDOMTREE TRUST | INTL ENERG | 97717W711 | 17 | 500 | SH | DEFINED | 7,11,33 | 0 | 0 | 500 |
| WISDOMTREE TRUST | INTL ENERG | 97717W711 | 1671 | 49100 | SH | DEFINED | 16,24,25 | 47046 | 0 | 2054 |
| WISDOMTREE TRUST | INTL CONS | 97717W729 | 2034 | 67540 | SH | DEFINED | 16,24,25 | 64675 | 0 | 2765 |
| WISDOMTREE TRUST | INTL CONSU | 97717W737 | 1502 | 51851 | SH | DEFINED | 16,24,25 | 51016 | 0 | 835 |
| WISDOMTREE TRUST | INTL COMMU | 97717W745 | 820 | 23401 | SH | DEFINED | 16,24,25 | 22629 | 0 | 772 |
| WISDOMTREE TRUST | INTL BAS M | 97717W752 | 6695 | 178539 | SH | DEFINED | 16,24,25 | 174095 | 0 | 4444 |
| WISDOMTREE TRUST | INTL SMCAP | 97717W760 | 42 | 650 | SH | DEFINED | 7,11,33 | 0 | 0 | 650 |
| WISDOMTREE TRUST | INTL SMCAP | 97717W760 | 9516 | 148114 | SH | DEFINED | 16,24,25 | 140830 | 0 | 7283 |
| WISDOMTREE TRUST | INTL MIDCA | 97717W778 | 43 | 650 | SH | DEFINED | 7,11,33 | 0 | 0 | 650 |
| WISDOMTREE TRUST | INTL MIDCA | 97717W778 | 15343 | 230100 | SH | DEFINED | 16,24,25 | 218987 | 0 | 11113 |
| WISDOMTREE TRUST | INTL DV TO | 97717W786 | 13263 | 190122 | SH | DEFINED | 16,24,25 | 175102 | 0 | 15020 |
| WISDOMTREE TRUST | INTL LRGCA | 97717W794 | 15 | 225 | SH | DEFINED | 7,11,33 | 225 | 0 | 0 |
| WISDOMTREE TRUST | INTL LRGCA | 97717W794 | 46 | 675 | SH | DEFINED | 7,11,33 | 0 | 0 | 675 |
| WISDOMTREE TRUST | INTL LRGCA | 97717W794 | 5553 | 81471 | SH | DEFINED | 16,24,25 | 77730 | 0 | 3741 |
| WISDOMTREE TRUST | DEFA HG YL | 97717W802 | 5473 | 82612 | SH | DEFINED | 16,24,25 | 81074 | 0 | 1538 |
| WISDOMTREE TRUST | PAC EXJP H | 97717W810 | 1541 | 21858 | SH | DEFINED | 16,24,25 | 20559 | 0 | 1299 |
| WISDOMTREE TRUST | PAC EXJP T | 97717W828 | 44955 | 548235 | SH | DEFINED | 16,24,25 | 476691 | 0 | 71544 |
| WISDOMTREE TRUST | JP SMALLCP | 97717W836 | 4306 | 96122 | SH | DEFINED | 16,24,25 | 92867 | 0 | 3255 |
| WISDOMTREE TRUST | JP HG-YIEL | 97717W844 | 949 | 18191 | SH | DEFINED | 16,24,25 | 17595 | 0 | 596 |
| WISDOMTREE TRUST | JP TOTAL D | 97717W851 | 1008 | 19838 | SH | DEFINED | 16,24,25 | 19747 | 0 | 91 |
| WISDOMTREE TRUST | EUROPE SMC | 97717W869 | 1638 | 27702 | SH | DEFINED | 16,24,25 | 26670 | 0 | 1032 |
| WISDOMTREE TRUST | EUROPE HG- | 97717W877 | 2185 | 33749 | SH | DEFINED | 16,24,25 | 32498 | 0 | 1251 |
| WISDOMTREE TRUST | EUROPE TOT | 97717W885 | 2308 | 33960 | SH | DEFINED | 16,24,25 | 32766 | 0 | 1194 |
| WOLVERINE WORLD WIDE | COM | 978097103 | 669 | 27293 | SH | DEFINED | 16,24,25 | 25217 | 0 | 2076 |
| WONDER AUTO TECHNOLO | COM | 978166106 | 549 | 49550 | SH | DEFINED | 16,24,25 | 29050 | 0 | 20500 |
| WOODWARD GOVERNOR CO | COM | 980745103 | 213 | 3138 | SH | DEFINED | 7,11 | 3138 | 0 | 0 |
| WOODWARD GOVERNOR CO | COM | 980745103 | 7 | 100 | SH | DEFINED | 7,11,33 | 0 | 0 | 100 |
| WOODWARD GOVERNOR CO | COM | 980745103 | 1783 | 26238 | SH | DEFINED | 16,24,25 | 21068 | 0 | 5170 |
| WOORI FIN HLDGS CO L | ADR | 981063100 | 555 | 9303 | SH | DEFINED | 16,24,25 | 9303 | 0 | 0 |
| WORTHINGTON INDS INC | COM | 981811102 | 943 | 52735 | SH | DEFINED | 7,11,13 | 52735 | 0 | 0 |
| WORTHINGTON INDS INC | COM | 981811102 | 3321 | 185733 | SH | DEFINED | 16,24,25 | 158713 | 0 | 27019 |
| WRIGHT EXPRESS CORP | COM | 98233Q105 | 2639 | 74358 | SH | DEFINED | 16,24,25 | 63204 | 0 | 11154 |
| WRIGHT MED GROUP INC | COM | 98235T107 | 202 | 6927 | SH | DEFINED | 16,24,25 | 6927 | 0 | 0 |
| WRIGLEY WM JR CO | COM | 982526105 | 25 | 422 | SH | DEFINED | 3,9 | 0 | 0 | 422 |
| WRIGLEY WM JR CO | COM | 982526105 | 7034 | 120143 | SH | DEFINED | 7,11 | 26420 | 0 | 93723 |
| WRIGLEY WM JR CO | COM | 982526105 | 4012 | 68520 | SH | DEFINED | 7,11,13 | 66915 | 0 | 1605 |
| WRIGLEY WM JR CO | COM | 982526105 | 80 | 1362 | SH | DEFINED | 7,11,33 | 0 | 0 | 1362 |
| WRIGLEY WM JR CO | COM | 982526105 | 86581 | 1478744 | SH | DEFINED | 16,24,25 | 1206656 | 0 | 272088 |
| WRIGLEY WM JR CO | COM | 982526105 | 918 | 15671 | SH | DEFINED | 32,40,41 | 15671 | 0 | 0 |
| WRIGLEY WM JR CO | COM | 982526105 | 1288 | 22000 | SH | DEFINED | 16,19,24,26,27 | 22000 | 0 | 0 |
| WYETH | DBCV | 983024AD2 | 1757 | 1665000 | PRN | DEFINED | 16,24,25 | 1393000 | 0 | 272000 |
| WYETH | COM | 983024100 | 1116 | 25250 | SH | DEFINED | 12 | 0 | 0 | 25250 |
| WYETH | COM | 983024100 | 1363 | 30850 | SH | DEFINED | 30 | 30850 | 0 | 0 |
| WYETH | COM | 983024100 | 1238 | 28020 | SH | DEFINED | 3,9 | 0 | 0 | 28020 |
| WYETH | COM | 983024100 | 65148 | 1474279 | SH | DEFINED | 7,11 | 1038297 | 750 | 435232 |
| WYETH | COM | 983024100 | 1625 | 36766 | SH | DEFINED | 7,11,13 | 21946 | 0 | 14820 |
| WYETH | COM | 983024100 | 98 | 2225 | SH | DEFINED | 7,11,33 | 0 | 0 | 2225 |
| WYETH | COM | 983024100 | 10253 | 232029 | SH | DEFINED | 15,16,24 | 232029 | 0 | 0 |
| WYETH | COM | 983024100 | 98593 | 2231121 | SH | DEFINED | 16,24,25 | 1861732 | 0 | 369388 |
| WYETH | COM | 983024100 | 6180 | 139851 | SH | DEFINED | 32,40,41 | 139851 | 0 | 0 |
| WYETH | COM | 983024100 | 110 | 2490 | SH | DEFINED | 5-7,11,43,44 | 0 | 2490 | 0 |
| WYETH | COM | 983024100 | 6686 | 151295 | SH | DEFINED | 16,19,24,26,27 | 151295 | 0 | 0 |
| WYETH | COM | 983024100 | 44 | 1000 | SH | DEFINED | 2,6,7,10-11,18,20,21,28 | 1000 | 0 | 0 |
| WYETH | COM | 983024100 | 22007 | 498000 | CALL | DEFINED | 7,11 | 498000 | 0 | 0 |
| WYETH | COM | 983024100 | 28812 | 652000 | CALL | DEFINED | 15,16,24 | 652000 | 0 | 0 |
| WYETH | COM | 983024100 | 3473 | 78600 | CALL | DEFINED | 15,16,24 | 78600 | 0 | 0 |
| WYETH | COM | 983024100 | 32577 | 737200 | PUT | DEFINED | 15,16,24 | 737200 | 0 | 0 |
| WYETH | COM | 983024100 | 5780 | 130800 | PUT | DEFINED | 16,24,25 | 130800 | 0 | 0 |
| WYNDHAM WORLDWIDE CO | COM | 98310W108 | 339 | 14400 | SH | DEFINED | 30 | 14400 | 0 | 0 |
| WYNDHAM WORLDWIDE CO | COM | 98310W108 | 10 | 412 | SH | DEFINED | 3,9 | 0 | 0 | 412 |
| WYNDHAM WORLDWIDE CO | COM | 98310W108 | 3560 | 151098 | SH | DEFINED | 7,11 | 149770 | 0 | 1328 |
| WYNDHAM WORLDWIDE CO | COM | 98310W108 | 28272 | 1200000 | SH | DEFINED | 16,24 | 1200000 | 0 | 0 |
| WYNDHAM WORLDWIDE CO | COM | 98310W108 | 5 | 220 | SH | DEFINED | 7,11,13 | 220 | 0 | 0 |
| WYNDHAM WORLDWIDE CO | COM | 98310W108 | 132 | 5595 | SH | DEFINED | 15,16,24 | 5595 | 0 | 0 |
| WYNDHAM WORLDWIDE CO | COM | 98310W108 | 4319 | 183332 | SH | DEFINED | 16,24,25 | 160820 | 0 | 22512 |
| WYNDHAM WORLDWIDE CO | COM | 98310W108 | 133 | 5636 | SH | DEFINED | 32,40,41 | 5636 | 0 | 0 |
| WYNDHAM WORLDWIDE CO | COM | 98310W108 | 582 | 24700 | CALL | DEFINED | 15,16,24 | 24700 | 0 | 0 |
| WYNDHAM WORLDWIDE CO | COM | 98310W108 | 299 | 12700 | PUT | DEFINED | 15,16,24 | 12700 | 0 | 0 |
| WYNN RESORTS LTD | COM | 983134107 | 1440 | 12843 | SH | DEFINED | 7,11 | 12843 | 0 | 0 |
| WYNN RESORTS LTD | COM | 983134107 | 81 | 726 | SH | DEFINED | 16,24 | 726 | 0 | 0 |
| WYNN RESORTS LTD | COM | 983134107 | 1 | 10 | SH | DEFINED | 7,11,13 | 0 | 0 | 10 |
| WYNN RESORTS LTD | COM | 983134107 | 62 | 550 | SH | DEFINED | 7,11,33 | 0 | 0 | 550 |
| WYNN RESORTS LTD | COM | 983134107 | 6500 | 57970 | SH | DEFINED | 16,24,25 | 53615 | 0 | 4355 |

```
WYNN RESORTS LTD         COM              983134107    175    1560 SH        DEFINED             32,40,41      1560        0        0
WYNN RESORTS LTD         COM              983134107  44482  396700 SH  CALL  DEFINED          15,16,24    396700        0        0
WYNN RESORTS LTD         COM              983134107    561    5000 SH  CALL  DEFINED          16,24,25      5000        0        0
WYNN RESORTS LTD         COM              983134107    561    5000 SH  PUT   DEFINED             7,11       5000        0        0
WYNN RESORTS LTD         COM              983134107  79186  706200 SH  PUT   DEFINED          15,16,24    706200        0        0
XM SATELLITE RADIO H NOTE 1.75           983759AC5  10120 11500000 PRN       DEFINED          16,24,25  11500000        0        0
XM SATELLITE RADIO H CL A                983759101    222   18109 SH        DEFINED             7,11      18109        0        0
XM SATELLITE RADIO H CL A                983759101     15    1200 SH        DEFINED          7,11,13       1200        0        0
XM SATELLITE RADIO H CL A                983759101    788   64353 SH        DEFINED          15,16,24     64353        0        0
XM SATELLITE RADIO H CL A                983759101  15369 1255600 SH        DEFINED          16,24,25   1124806        0   130794
XM SATELLITE RADIO H CL A                983759101   4957  405000 SH  CALL  DEFINED          15,16,24    405000        0        0
XM SATELLITE RADIO H CL A                983759101   2017  164800 SH  CALL  DEFINED          16,24,25    164800        0        0
XM SATELLITE RADIO H CL A                983759101   6457  527500 SH  PUT   DEFINED          15,16,24    527500        0        0
XTO ENERGY INC          COM              98385X106   4327   84249 SH        DEFINED               42      84249        0        0
XTO ENERGY INC          COM              98385X106  12473  242846 SH        DEFINED             7,11     241754        0     1092
XTO ENERGY INC          COM              98385X106     13     257 SH        DEFINED          7,11,13        257        0        0
XTO ENERGY INC          COM              98385X106    237    4608 SH        DEFINED          7,11,33          0        0     4608
XTO ENERGY INC          COM              98385X106   8412  163791 SH        DEFINED          15,16,24    163791        0        0
XTO ENERGY INC          COM              98385X106  46804  911295 SH        DEFINED          16,24,25    807230        0   104065
XTO ENERGY INC          COM              98385X106   6572  127953 SH        DEFINED          32,40,41    127953        0        0
XTO ENERGY INC          COM              98385X106  30107  586200 SH  CALL  DEFINED          15,16,24    586200        0        0
XTO ENERGY INC          COM              98385X106   7072  137700 SH        DEFINED          16,24,25    137700        0        0
XTO ENERGY INC          COM              98385X106  21879  426000 SH  PUT   DEFINED          15,16,24    426000        0        0
XTO ENERGY INC          COM              98385X106   7062  137500 SH  PUT   DEFINED          16,24,25    137500        0        0
XCEL ENERGY INC         COM              98389B100   4912  217638 SH        DEFINED             7,11     205838        0    11800
XCEL ENERGY INC         COM              98389B100     96    4232 SH        DEFINED          7,11,13       4132        0      100
XCEL ENERGY INC         COM              98389B100     20     900 SH        DEFINED          7,11,33          0        0      900
XCEL ENERGY INC         COM              98389B100   5568  246700 SH        DEFINED          16,24,25    211157        0    35543
XCEL ENERGY INC         COM              98389B100   7648  338860 SH        DEFINED          32,40,41    338860        0        0
XCEL ENERGY INC         COM              98389B100   3780  167739 SH  CALL  DEFINED          16,24,25    167739        0        0
XCEL ENERGY INC         COM              98389B100   3786  167739 SH  PUT   DEFINED             7,11     167739        0        0
XILINX INC              DBCV  3.12       983919AD3    116  135000 PRN       DEFINED          16,24,25    135000        0        0
XILINX INC              COM              983919101   2580  117957 SH        DEFINED             7,11     117957        0        0
XILINX INC              COM              983919101     41    1885 SH        DEFINED          7,11,13       1885        0        0
XILINX INC              COM              983919101   9178  419674 SH        DEFINED          16,24,25    395580        0    24093
XILINX INC              COM              983919101   1841   84169 SH        DEFINED          32,40,41     84169        0        0
XILINX INC              COM              983919101    107    4870 SH        DEFINED     16,19,24,26,27      4870        0        0
XILINX INC              COM              983919101   2532  115774 SH  CALL  DEFINED             7,11     115774        0        0
XILINX INC              COM              983919101   7167  327700 SH  CALL  DEFINED          15,16,24    327700        0        0
XILINX INC              COM              983919101   4155  190000 SH  CALL  DEFINED          16,24,25    190000        0        0
XILINX INC              COM              983919101   6172  282200 SH  PUT   DEFINED          15,16,24    282200        0        0
XILINX INC              COM              983919101   6125  280074 SH  PUT   DEFINED          15,16,24    280074        0        0
XINHUA FIN MEDIA LTD SPONSORED           983982109     36    6066 SH        DEFINED          15,16,24      6066        0        0
XINHUA FIN MEDIA LTD SPONSORED           983982109     23    3900 SH  CALL  DEFINED          15,16,24      3900        0        0
XINHUA FIN MEDIA LTD SPONSORED           983982109     53    8900 SH  PUT   DEFINED          15,16,24      8900        0        0
XENOPORT INC            COM              98411C100    567   10148 SH        DEFINED          16,24,25      9439        0      709
XEROX CORP              COM              984121103     20    1224 SH        DEFINED              3,9          0        0     1224
XEROX CORP              COM              984121103   2475  152875 SH        DEFINED             7,11     150475        0     2400
XEROX CORP              COM              984121103     20    1262 SH        DEFINED          7,11,13       1262        0        0
XEROX CORP              COM              984121103     94    5824 SH        DEFINED          15,16,24      5824        0        0
XEROX CORP              COM              984121103  12074  745766 SH        DEFINED          16,24,25    581651        0   164115
XEROX CORP              COM              984121103    433   26763 SH        DEFINED          32,40,41     26763        0        0
XEROX CORP              COM              984121103   1468   90700 SH        DEFINED     16,19,24,26,27     90700        0        0
XEROX CORP              COM              984121103   4088  252500 SH  CALL  DEFINED          15,16,24    252500        0        0
XEROX CORP              COM              984121103     16    1000 SH  CALL  DEFINED          15,16,24      1000        0        0
XEROX CORP              COM              984121103   2998  185200 SH  PUT   DEFINED          15,16,24    185200        0        0
XERIUM TECHNOLOGIES     COM              98416J100   2318  445781 SH        DEFINED          16,24,25    418011        0    27769
YPF SOCIEDAD ANONIMA SPON ADR C          984245100    364    8432 SH        DEFINED          16,24,25      7166        0     1266
YRC WORLDWIDE INC       COM              984249102      4     210 SH        DEFINED            16,24        210        0        0
YRC WORLDWIDE INC       COM              984249102     54    3175 SH        DEFINED          7,11,13       2375        0      800
YRC WORLDWIDE INC       COM              984249102  10710  626700 SH        DEFINED          16,24,25    620807        0     5893
YRC WORLDWIDE INC       COM              984249102   4577  267800 SH  CALL  DEFINED          16,24,25    267800        0        0
YRC WORLDWIDE INC       COM              984249102   1504   88000 SH  CALL  DEFINED          16,24,25     88000        0        0
YRC WORLDWIDE INC       COM              984249102   1111   65000 SH  PUT   DEFINED             7,11      65000        0        0
YRC WORLDWIDE INC       COM              984249102   4566  267200 SH  PUT   DEFINED          15,16,24    267200        0        0
YRC WORLDWIDE INC       COM              984249102   9704  567800 SH  PUT   DEFINED          16,24,25    567800        0        0
YAHOO INC               COM              984332106     49    2102 SH        DEFINED              3,9          0        0     2102
YAHOO INC               COM              984332106 711733 30599031 SH       DEFINED             7,11   30586331        0    12700
YAHOO INC               COM              984332106     57    2439 SH        DEFINED          7,11,13       2150        0      289
YAHOO INC               COM              984332106    130    5572 SH        DEFINED          7,11,33          0        0     5572
YAHOO INC               COM              984332106 116116 4992081 SH        DEFINED          16,24,25   4191643        0   800437
YAHOO INC               COM              984332106  10067  432807 SH        DEFINED          32,40,41    432807        0        0
YAHOO INC               COM              984332106     13     540 SH        DEFINED      5-7,11,43,44         0      540        0
YAHOO INC               COM              984332106   4889  210201 SH        DEFINED     16,19,24,26,27    210201        0        0
YAHOO INC               COM              984332106  34333 1476068 SH        DEFINED 2,6,7,10-11,18,20,21,28 1476068   0        0
YAHOO INC               COM              984332106  13956  600000 SH  CALL  DEFINED             7,11     600000        0        0
YAHOO INC               COM              984332106  65100 2798800 SH  CALL  DEFINED          15,16,24   2798800        0        0
YAHOO INC               COM              984332106  72679 3124634 SH  CALL  DEFINED          15,16,24   3124634        0        0
YAHOO INC               COM              984332106 123167 5295234 SH  PUT   DEFINED             7,11    5295234        0        0
YAHOO INC               COM              984332106 121878 5239800 SH  PUT   DEFINED          15,16,24   5239800        0        0
YAHOO INC               COM              984332106  66400 2854700 SH  PUT   DEFINED          16,24,25   2854700        0        0
YAMANA GOLD INC         COM              98462Y100   6857  529924 SH        DEFINED          15,16,24    529924        0        0
YAMANA GOLD INC         COM              98462Y100   1942  150056 SH        DEFINED          16,24,25    101719        0    48337
YAMANA GOLD INC         COM              98462Y100    166   12840 SH        DEFINED          32,40,41     12840        0        0
YAMANA GOLD INC         COM              98462Y100     95    7374 SH        DEFINED          4,6,7,11      7374        0        0
YAMANA GOLD INC         COM              98462Y100     46    3571 SH        DEFINED      5-7,11,43,44         0     3571        0
YAMANA GOLD INC         COM              98462Y100   2100  162300 SH  CALL  DEFINED          15,16,24    162300        0        0
YAMANA GOLD INC         COM              98462Y100     89    6900 SH  CALL  DEFINED          16,24,25      6900        0        0
YAMANA GOLD INC         COM              98462Y100   8267  638900 SH  PUT   DEFINED          15,16,24    638900        0        0
YAMANA GOLD INC         COM              98462Y100     70    5400 SH  PUT   DEFINED          16,24,25      5400        0        0
YANZHOU COAL MNG CO SPON ADR H           984846105      3      36 SH        DEFINED          7,11,13         36        0        0
YANZHOU COAL MNG CO SPON ADR H           984846105   1112   11456 SH        DEFINED          16,24,25      9622        0     1834
YANZHOU COAL MNG CO SPON ADR H           984846105   1822   18770 SH        DEFINED          16,17,22-24  18770        0        0
YANZHOU COAL MNG CO SPON ADR H           984846105     29     296 SH        DEFINED     16,19,24,26,27       296        0        0
YINGLI GREEN ENERGY ADR                  98584B103   1871   48346 SH        DEFINED          15,16,24     48346        0        0
YINGLI GREEN ENERGY ADR                  98584B103    377    9751 SH        DEFINED          16,24,25      9300        0      451
YINGLI GREEN ENERGY ADR                  98584B103    257    6646 SH        DEFINED     16,19,24,26,27      6646        0        0
YINGLI GREEN ENERGY ADR                  98584B103   3560   92000 SH  CALL  DEFINED          15,16,24     92000        0        0
YINGLI GREEN ENERGY ADR                  98584B103   3483   90000 SH  PUT   DEFINED          15,16,24     90000        0        0
YUM BRANDS INC          COM              988498101   6586  172084 SH        DEFINED             7,11     165684        0     6400
YUM BRANDS INC          COM              988498101    571   14932 SH        DEFINED          7,11,13       9132        0     5800
YUM BRANDS INC          COM              988498101   3612   94372 SH        DEFINED          15,16,24     94372        0        0
YUM BRANDS INC          COM              988498101  14736  385041 SH        DEFINED          16,24,25    305606        0    79435
YUM BRANDS INC          COM              988498101    648   16931 SH        DEFINED          32,40,41     16931        0        0
YUM BRANDS INC          COM              988498101     10     250 SH        DEFINED      5-7,11,43,44         0      250        0
YUM BRANDS INC          COM              988498101   6315  165000 SH  CALL  DEFINED             7,11     165000        0        0
YUM BRANDS INC          COM              988498101   4290  112100 SH  CALL  DEFINED          15,16,24    112100        0        0
YUM BRANDS INC          COM              988498101   5121  133819 SH  CALL  DEFINED          15,16,24    133819        0        0
YUM BRANDS INC          COM              988498101   3349   87519 SH  PUT   DEFINED             7,11      87519        0        0
YUM BRANDS INC          COM              988498101   7076  184900 SH  PUT   DEFINED          15,16,24    184900        0        0
YUM BRANDS INC          COM              988498101   1860   48600 SH  PUT   DEFINED          16,24,25     48600        0        0
ZALE CORP NEW           COM              988858106   7343  457251 SH        DEFINED          16,24,25    457251        0        0
ZEBRA TECHNOLOGIES C CL A                989207105    158    4563 SH        DEFINED             7,11       4563        0        0
ZEBRA TECHNOLOGIES C CL A                989207105   2918   84106 SH        DEFINED          16,24,25     81631        0     2475
```

```
ZENITH NATL INS CORP COM      989390109       67     1500 SH     DEFINED                    30      1500      0          0
ZENITH NATL INS CORP COM      989390109       13      283 SH     DEFINED                  7,11         0      0        283
ZENITH NATL INS CORP COM      989390109     1358    30357 SH     DEFINED              16,24,25     28371      0       1986
ZIMMER HLDGS INC     COM      98956P102     3205    48455 SH     DEFINED                  7,11     26043      0      22412
ZIMMER HLDGS INC     COM      98956P102     2735    41345 SH     DEFINED               7,11,13     39580      0       1765
ZIMMER HLDGS INC     COM      98956P102     6748   102011 SH     DEFINED              15,16,24    102011      0          0
ZIMMER HLDGS INC     COM      98956P102    20374   307996 SH     DEFINED              16,24,25    254269      0      53727
ZIMMER HLDGS INC     COM      98956P102     1097    16583 SH     DEFINED              32,40,41     16583      0          0
ZIMMER HLDGS INC     COM      98956P102       53      800 SH     DEFINED           5-7,11,43,44         0    800          0
ZIMMER HLDGS INC     COM      98956P102        7      100 SH     DEFINED 2,6,7,10-11,18,20,21,28     100      0          0
ZIMMER HLDGS INC     COM      98956P102     9850   148900 SH CALL DEFINED              15,16,24    148900      0          0
ZIMMER HLDGS INC     COM      98956P102       13      200 SH CALL DEFINED              16,24,25       200      0          0
ZIMMER HLDGS INC     COM      98956P102    22511   340300 SH PUT  DEFINED              15,16,24    340300      0          0
ZIMMER HLDGS INC     COM      98956P102        7      100 SH PUT  DEFINED              16,24,25       100      0          0
ZIONS BANCORPORATION COM      989701107      704    15087 SH     DEFINED                  7,11     15087      0          0
ZIONS BANCORPORATION COM      989701107       10      219 SH     DEFINED               7,11,13       219      0          0
ZIONS BANCORPORATION COM      989701107     2232    47813 SH     DEFINED              16,24,25     41714      0       6099
ZIONS BANCORPORATION COM      989701107      156     3349 SH     DEFINED              32,40,41      3349      0          0
ZIONS BANCORPORATION COM      989701107     2344    50200 SH PUT  DEFINED              16,24,25     50200      0          0
ZIX CORP             COM      98974P100      213    46316 SH     DEFINED              16,24,25     43700      0       2616
ZORAN CORP           COM      98975F101     3891   172847 SH     DEFINED                  7,11    172319      0        528
ZORAN CORP           COM      98975F101      638    28352 SH     DEFINED              16,24,25     28309      0         43
ZOLTEK COS INC       COM      98975W104      121     2814 SH     DEFINED                  7,11      2814      0          0
ZOLTEK COS INC       COM      98975W104       62     1452 SH     DEFINED              15,16,24      1452      0          0
ZOLTEK COS INC       COM      98975W104     1943    45334 SH     DEFINED              16,24,25     36139      0       9195
ZOLTEK COS INC       COM      98975W104      232     5403 SH     DEFINED        16,19,24,26,27      5403      0          0
ZUMIEZ INC           COM      989817101      356    14625 SH     DEFINED              16,24,25     13432      0       1193
ZUMIEZ INC           COM      989817101      244    10000 SH CALL DEFINED              16,24,25     10000      0          0
ZWEIG FD             COM      989834106      580   115098 SH     DEFINED               7,11,13    113098      0       2000
ZWEIG FD             COM      989834106      138    27317 SH     DEFINED              16,24,25     27317      0          0
ZWEIG TOTAL RETURN F COM      989837109      266    58769 SH     DEFINED              16,24,25     55859      0       2909
ZYMOGENETICS INC     COM      98985T109      196    16801 SH     DEFINED              16,24,25     16801      0          0
ZYMOGENETICS INC     COM      98985T109     2689   230400 SH CALL DEFINED              15,16,24    230400      0          0
ZYMOGENETICS INC     COM      98985T109      439    37600 SH PUT  DEFINED              15,16,24     37600      0          0
ZOLL MED CORP        COM      989922109      717    26833 SH     DEFINED              16,24,25     26833      0          0
```

# DEUTSCHE BANK AG\ (DOD)

TAUNUSANLAGE 12 D–60325
FRANKFURT AM MAIN GE, I8

# 13F–HR

**DBAG 13F 12–31–07**
**Filed on 02/14/2008 – Period: 12/31/2007**
File Number 028–10103



**LIVEDGAR**[®] Information Provided by Global Securities Information, Inc.
800.669.1154
www.gsionline.com

UNITED STATES SECURITIES AND EXCHANGE
COMMISSION
Washington, D.C. 20549


FORM 13F


FORM 13F COVER PAGE


Report for the Calender Year or Quarter Ended: DECEMBER 31, 2007


Check here if Amendment { }; Amendment Number:
This Amendment (Check only one.): { } is a restatement.
{ } adds new holdings entries.

Institutional Investment Manager Filing this Report:

Name: Deutsche Bank Aktiengesellschaft
Address: Taunusanlage 12
60325 Frankfurt am Main, Germany

2513F File Number: 028-10103

The institutional investment manager filing this report and the person by whom
it is signed hereby represent that the person signing the report is authorized
to submit it, that all information contained herein is true, correct and
complete, and that is understood that all required items, statements, schedules,
lists, and tables, are considered integral parts of this form.


Person Signing this Report on Behalf of Reporting Manager:


Name:         Jeffrey Ruiz
Title:        Director
Phone:        212-250-3667
Signature, Place, and Date of Signing:


Jeffrey Ruiz          New York, New York      Feb 14, 2008


Report Type (Check only one.):

{X}         13F HOLDINGS REPORT.

{ }         13F NOTICE.

{ }         13F COMBINATION REPORT.


List of Other Managers Reporting for this Manager:
I AM SIGNING THIS REPORT AS REQUIRED BY THE SECURITIES EXCHANGE ACT OF 1934.

FORM 13F SUMMARY PAGE

Report Summary:

Number of Other Included Managers:              16

Form 13F Information Table Entry Total:         19406

Form 13F Information Table Value Total:     178734097   VALUE TOTAL (X$1000)

List of Other Included Managers:

No. Form 13F File Number Name

| No. | Form 13F File Number | Name |
|---|---|---|
| 01 | 28-05041 | Deutsche Bank Trust Company Americas |
| 02 | 28-05033 | Deutsche Bank Securities Inc. |
| 04 | 28-10152 | DWS Deutsche Bank Gesellschaft fur Wertpapiersparen mbH |
| 05 | 28-10154 | Deutsche Asset Management Limited |
| 06 | 28-10155 | Deutsche Asset Management Investmentgesellshaft |
| 10 | 28-10249 | Deutsche Investment Management Americas Inc. |
| 11 | 28-04760 | ROPRO US Holding, Inc. |
| 14 | 28-10468 | DWS (Austria) Investmentgesellschaft mgH |
| 15 | 28-11401 | Deutsche Asset Management Schweiz |
| 16 | 28-11403 | DWS Investments Schweiz |
| 19 | 28-11509 | Deutsche Bank (Suisse) S.A. |
| 20 | 28-11997 | Deutsche Bank National Trust Company |
| 21 | 28-11998 | Deutsche Bank Trust Company Delaware |
| 22 | 28-11999 | Deutsche Bank Florida, National Association |
| 23 | 28-12000 | Deutsche Bank Trust Company, National Association |
| 24 | 28-12485 | DWS Tust Co. |

Confidential treatment has been requested under separate cover for a portion of
the Manager's Securities positions held at the end of this quarter.

| NAME OF ISSUER | -TITLE OF CLASS- | --CUSIP-- | VALUES (X$1000) | SHARES/ PRN AMT | SH/ PRN | PUT/ CALL | INVSTMT DSCRETN | -MANAGERS- | SOLE | SHARED | NONE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| < | | | | | | | | | | | |
| D DAIMLER AG | REG SHS | D1668R12 | 6207140 | 64907879 | SH | | SHARED | | 64907879 | | |
| D DAIMLER AG | REG SHS | D1668R12 | 1584 | 16570 | SH | | SHARED | 01 | 16370 | | 200 |
| D DAIMLER AG | REG SHS | D1668R12 | 4642 | 48542 | SH | | SHARED | 02 | 48442 | | 100 |
| D DAIMLER AG | REG SHS | D1668R12 | 63953 | 668758 | SH | | SHARED | 04 | 638901 | | 29857 |
| D DAIMLER AG | REG SHS | D1668R12 | 824726 | 8624140 | SH | | SHARED | 04 | 8624140 | | |
| D DAIMLER AG | REG SHS | D1668R12 | 3638 | 38048 | SH | | SHARED | 05 | 38048 | | |
| D DAIMLER AG | REG SHS | D1668R12 | 59541 | 622621 | SH | | SHARED | 06 | | | 622621 |
| D DAIMLER AG | REG SHS | D1668R12 | 35037 | 366382 | SH | | SHARED | 10 | 334320 | | 32062 |
| D DAIMLER AG | REG SHS | D1668R12 | 5797 | 60625 | SH | | SHARED | 14 | 9370 | | 51255 |
| D DAIMLER AG | REG SHS | D1668R12 | 1219 | 12750 | SH | | SHARED | 19 | | | 12750 |
| D DAIMLER AG | REG SHS | D1668R12 | 65 | 680 | SH | | SHARED | 21 | 680 | | |
| D DAIMLER AG | REG SHS | D1668R12 | 26 | 274 | SH | | SHR/OTHR | 23 | | | 274 |
| D DAIMLER AG | REG SHS | D1668R12 | 631 | 6600 | SH | | SHARED | 24 | 6600 | | |
| D DEUTSCHE BANK AG NAMEN | ORD | D1819089 | 5217882 | 40323481 | SH | | SHARED | | 40281560 | | 41921 |
| D DEUTSCHE BANK AG NAMEN | ORD | D1819089 | 2789 | 21552 | SH | | SHARED | 01 | 13020 | | 8532 |
| D DEUTSCHE BANK AG NAMEN | ORD | D1819089 | 3170 | 24500 | SH | | SHR/OTHR | 01 | | | 24500 |
| D DEUTSCHE BANK AG NAMEN | ORD | D1819089 | 34807 | 268970 | SH | | SHARED | 04 | 248586 | | 20384 |
| D DEUTSCHE BANK AG NAMEN | ORD | D1819089 | 625575 | 4834061 | SH | | SHARED | 04 | 4834061 | | |
| D DEUTSCHE BANK AG NAMEN | ORD | D1819089 | 1117 | 8632 | SH | | SHARED | 05 | 8632 | | |
| D DEUTSCHE BANK AG NAMEN | ORD | D1819089 | 54028 | 417501 | SH | | SHARED | 06 | | | 417501 |
| D DEUTSCHE BANK AG NAMEN | ORD | D1819089 | 2207 | 17060 | SH | | SHARED | 10 | | | 17060 |
| D DEUTSCHE BANK AG NAMEN | ORD | D1819089 | 3341 | 25822 | SH | | SHARED | 14 | 7800 | | 18022 |
| D DEUTSCHE BANK AG NAMEN | ORD | D1819089 | 718 | 5550 | SH | | SHARED | 15 | | | 5550 |
| D DEUTSCHE BANK AG NAMEN | ORD | D1819089 | 11375 | 87901 | SH | | SHARED | 19 | | | 87901 |
| D DEUTSCHE BANK AG NAMEN | ORD | D1819089 | 332 | 2568 | SH | | SHARED | 20 | 2568 | | |
| D DEUTSCHE BANK AG NAMEN | ORD | D1819089 | 504 | 3900 | SH | | SHARED | 23 | | | 3900 |
| D TELVENT GIT SA | SHS | E9021510 | 9 | 338 | SH | | SHARED | | 338 | | |
| D TELVENT GIT SA | SHS | E9021510 | 23 | 825 | SH | | SHARED | 02 | 825 | | |
| D ACE LTD | ORD | G0070K10 | 43276 | 700486 | SH | | SHARED | | 674586 | | 25900 |
| D ACE LTD | ORD | G0070K10 | 4172 | 67546 | SH | | SHARED | 01 | 61526 | | 6020 |
| D ACE LTD | ORD | G0070K10 | 177 | 2875 | SH | | SHR/OTHR | 01 | | | 2875 |
| D ACE LTD | ORD | G0070K10 | 9935 | 160827 | SH | | SHARED | 04 | 160827 | | |
| D ACE LTD | ORD | G0070K10 | 1087 | 17600 | SH | | SHARED | 04 | 17600 | | |
| D ACE LTD | ORD | G0070K10 | 10 | 170 | SH | | SHARED | 05 | 170 | | |
| D ACE LTD | ORD | G0070K10 | 3371 | 54570 | SH | | SHARED | 06 | | | 54570 |
| D ACE LTD | ORD | G0070K10 | 105372 | 1705604 | SH | | SHARED | 10 | 1619004 | | 86600 |
| D ACE LTD | ORD | G0070K10 | 1394 | 22568 | SH | | SHARED | 14 | | | 22568 |
| D ACE LTD | ORD | G0070K10 | 822 | 13310 | SH | | SHARED | 20 | 11460 | | 1850 |
| D ACE LTD | ORD | G0070K10 | 206 | 3350 | SH | | SHR/OTHR | 20 | | | 3350 |
| D ACE LTD | ORD | G0070K10 | 79 | 1280 | SH | | SHARED | 21 | 1280 | | |
| D ACE LTD | ORD | G0070K10 | 27 | 445 | SH | | SHR/OTHR | 21 | | | 445 |
| D ACE LTD | ORD | G0070K10 | 52 | 850 | SH | | SHARED | 22 | | | 850 |

| | Issuer | Class | CUSIP | Value | Shares | Type | Discretion | Mgr | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|
| D | AIRCASTLE LTD | COM | G0129K10 | 26 | 1000 | SH | SHARED | | 1000 | |
| D | AIRCASTLE LTD | COM | G0129K10 | 669 | 25435 | SH | SHARED | | 25435 | |
| D | ALLIED WRLD ASSUR COM HLDG L | SHS | G0219G20 | 41 | 822 | SH | SHARED | | 822 | |
| D | ALLIED WRLD ASSUR COM HLDG L | SHS | G0219G20 | 70 | 1400 | SH | SHARED | | 1400 | |
| D | ALLIED WRLD ASSUR COM HLDG L | SHS | G0219G20 | 20878 | 416150 | SH | SHARED | 10 | 396950 | 19200 |
| D | AMDOCS LTD | ORD | G0260210 | 656 | 19045 | SH | SHARED | | 19045 | |
| D | AMDOCS LTD | ORD | G0260210 | 7603 | 220592 | SH | SHARED | 02 | 220592 | |
| D | AMDOCS LTD | ORD | G0260210 | 244 | 7100 | SH | SHARED | 10 | 7100 | |
| D | AMDOCS LTD | ORD | G0260210 | 97 | 2815 | SH | SHARED | 21 | 2815 | |
| D | AMERICAN SAFETY INS HLDGS LT | ORD | G0299510 | 5 | 259 | SH | SHARED | | 259 | |
| D | AMERICAN SAFETY INS HLDGS LT | ORD | G0299510 | 10 | 540 | SH | SHARED | 22 | 540 | |
| D | APEX SILVER MINES LTD | ORD | G0407410 | 143 | 9420 | SH | SHARED | | 9420 | |
| D | APEX SILVER MINES LTD | ORD | G0407410 | 34 | 2246 | SH | SHARED | 10 | 2246 | |
| D | ARCH CAP GROUP LTD | ORD | G0450A10 | 4074 | 57913 | SH | SHARED | | 57913 | |
| D | ARCH CAP GROUP LTD | ORD | G0450A10 | 1106 | 15730 | SH | SHARED | 01 | 10760 | 4970 |
| D | ARCH CAP GROUP LTD | ORD | G0450A10 | 161 | 2300 | SH | SHR/OTHR | 01 | | 2300 |
| D | ARCH CAP GROUP LTD | ORD | G0450A10 | 209 | 2975 | SH | SHARED | 02 | 2975 | |
| D | ARCH CAP GROUP LTD | ORD | G0450A10 | 98 | 1400 | SH | SHARED | 10 | 1400 | |
| D | ARCH CAP GROUP LTD | ORD | G0450A10 | 35 | 500 | SH | SHARED | 20 | 500 | |
| D | ARCH CAP GROUP LTD | ORD | G0450A10 | 24 | 345 | SH | SHR/OTHR | 21 | | 345 |
| D | ARCH CAP GROUP LTD | ORD | G0450A10 | 14 | 200 | SH | SHARED | 22 | 200 | |
| D | ARCH CAP GROUP LTD | ORD | G0450A10 | 63 | 900 | SH | SHARED | 23 | 900 | |
| D | ARCH CAP GROUP LTD | ORD | G0450A10 | 63 | 900 | SH | SHR/OTHR | 23 | | 900 |
| D | ARGO GROUP INTL HLDGS LTD | COM | G0464A10 | 1655 | 39285 | SH | SHARED | | 39285 | |
| D | ARGO GROUP INTL HLDGS LTD | COM | G0464A10 | 58 | 1394 | SH | SHARED | 01 | 1394 | |
| D | ARGO GROUP INTL HLDGS LTD | COM | G0464A10 | 11 | 275 | SH | SHARED | 02 | 275 | |
| D | ARGO GROUP INTL HLDGS LTD | COM | G0464A10 | 21961 | 521276 | SH | SHARED | 10 | 521276 | |
| D | ARIES MARITIME TRNSPRT LTD | SHS | G0474810 | 781 | 119326 | SH | SHARED | | 119326 | |
| D | ARLINGTON TANKERS LTD | COM | G0489910 | 87 | 3964 | SH | SHARED | | 3964 | |
| D | ASPEN INSURANCE HOLDINGS LTD | SHS | G0538410 | 4159 | 144218 | SH | SHARED | | 144218 | |
| D | ASPEN INSURANCE HOLDINGS LTD | SHS | G0538410 | 126 | 4400 | SH | SHARED | 01 | 2100 | 2300 |
| D | ASPEN INSURANCE HOLDINGS LTD | SHS | G0538410 | 4816 | 167000 | SH | SHARED | 10 | 167000 | |
| D | ASPEN INSURANCE HOLDINGS LTD | SHS | G0538410 | 235 | 8180 | SH | SHARED | 21 | 8180 | |
| D | ASSURED GUARANTY LTD | COM | G0585H10 | 798 | 30100 | SH | SHARED | | 30100 | |
| D | ASSURED GUARANTY LTD | COM | G0585H10 | 135 | 5100 | SH | SHARED | 01 | 5100 | |
| D | ASSURED GUARANTY LTD | COM | G0585H10 | 1064 | 40100 | SH | SHARED | 10 | 40100 | |
| D | AXIS CAPITAL HOLDINGS | SHS | G0692U10 | 2785 | 71466 | SH | SHARED | | 71466 | |
| D | AXIS CAPITAL HOLDINGS | SHS | G0692U10 | 1079 | 27690 | SH | SHARED | 01 | 18940 | 8750 |
| D | AXIS CAPITAL HOLDINGS | SHS | G0692U10 | 273 | 7025 | SH | SHR/OTHR | 01 | | 7025 |
| D | AXIS CAPITAL HOLDINGS | SHS | G0692U10 | 27 | 700 | SH | SHARED | 06 | 700 | |
| D | AXIS CAPITAL HOLDINGS | SHS | G0692U10 | 237 | 6100 | SH | SHARED | 10 | 6100 | |
| D | AXIS CAPITAL HOLDINGS | SHS | G0692U10 | 1735 | 44535 | SH | SHARED | 14 | 44535 | |
| D | AXIS CAPITAL HOLDINGS | SHS | G0692U10 | 23 | 615 | SH | SHR/OTHR | 21 | | 615 |
| D | ACCENTURE LTD BERMUDA | CL A | G1150G11 | 5327 | 147869 | SH | SHARED | | 109269 | 38600 |
| D | ACCENTURE LTD BERMUDA | CL A | G1150G11 | 1640 | 45537 | SH | SHARED | 01 | 35907 | 9630 |
| D | ACCENTURE LTD BERMUDA | CL A | G1150G11 | 310 | 8625 | SH | SHR/OTHR | 01 | | 8625 |
| D | ACCENTURE LTD BERMUDA | CL A | G1150G11 | 111 | 3083 | SH | SHARED | 02 | 3083 | |
| D | ACCENTURE LTD BERMUDA | CL A | G1150G11 | 154022 | 4274840 | SH | SHARED | 10 | 4274840 | |
| D | ACCENTURE LTD BERMUDA | CL A | G1150G11 | 1008 | 28000 | SH | SHARED | 20 | 19500 | 8500 |
| D | ACCENTURE LTD BERMUDA | CL A | G1150G11 | 706 | 19600 | SH | SHR/OTHR | 20 | | 19600 |
| D | ACCENTURE LTD BERMUDA | CL A | G1150G11 | 148 | 4120 | SH | SHARED | 20 | 4120 | |
| D | ACCENTURE LTD BERMUDA | CL A | G1150G11 | 111 | 3100 | SH | SHARED | 21 | 3100 | |
| D | ACCENTURE LTD BERMUDA | CL A | G1150G11 | 16 | 455 | SH | SHARED | 22 | 455 | |
| D | ACCENTURE LTD BERMUDA | CL A | G1150G11 | 104 | 2900 | SH | SHARED | 23 | 2900 | |
| D | ACCENTURE LTD BERMUDA | CL A | G1150G11 | 486 | 13500 | SH | SHARED | 23 | 13200 | 300 |
| D | ACCENTURE LTD BERMUDA | CL A | G1150G11 | 521 | 14475 | SH | SHR/OTHR | 23 | | 14475 |
| D | ACCENTURE LTD BERMUDA | CL A | G1150G11 | 85 | 2374 | SH | SHARED | 24 | 2374 | |
| D | BUNGE LIMITED | COM | G1696210 | 15915 | 136718 | SH | SHARED | | 136718 | |
| D | BUNGE LIMITED | COM | G1696210 | 104 | 900 | SH | SHARED | 01 | 900 | |
| D | BUNGE LIMITED | COM | G1696210 | 9989 | 85809 | SH | SHARED | | 85809 | |
| D | BUNGE LIMITED | COM | G1696210 | 4307 | 37000 | SH | SHARED | 10 | 37000 | |
| D | BUNGE LIMITED | COM | G1696210 | 151 | 1300 | SH | SHR/OTHR | 23 | | 1300 |
| D | CASTLEPOINT HOLDINGS LTD | COM | G1952211 | 75 | 6273 | SH | SHARED | | 6273 | |
| D | CASTLEPOINT HOLDINGS LTD | COM | G1952211 | 546 | 45500 | SH | SHARED | 10 | 45500 | |
| D | CENTRAL EUROPEAN MEDIA ENTRP | CL A NEW | G2004520 | 4485 | 38679 | SH | SHARED | | 38679 | |
| D | CENTRAL EUROPEAN MEDIA ENTRP | CL A NEW | G2004520 | 17397 | 150000 | SH | SHARED | 05 | 150000 | |
| D | CENTRAL EUROPEAN MEDIA ENTRP | CL A NEW | G2004520 | 11598 | 100000 | SH | SHARED | 06 | | 100000 |
| D | CENTRAL EUROPEAN MEDIA ENTRP | CL A NEW | G2004520 | 1246 | 10750 | SH | SHARED | 10 | 10750 | |
| D | CDC CORP | SHS A | G2022L10 | 378 | 77660 | SH | SHARED | | 77660 | |
| D | CDC CORP | SHS A | G2022L10 | 5 | 1170 | SH | SHARED | 19 | | 1170 |
| D | CHINA YUCHAI INTL LTD | COM | G2108210 | 21 | 2184 | SH | SHARED | | 2184 | |
| D | CHIPMOS TECH BERMUDA LTD | SHS | G2110H10 | 43 | 10291 | SH | SHARED | | 10291 | |
| D | CHINA NATURAL RESOURCES INC | COM | G2110U10 | 189 | 7870 | SH | SHARED | | 7870 | |
| D | CONSOLIDATED WATER CO INC | ORD | G2377310 | 6849 | 271925 | SH | SHARED | | 271925 | |
| D | CONSOLIDATED WATER CO INC | ORD | G2377310 | 720 | 28600 | SH | SHARED | 10 | 28600 | |
| D | COOPER INDS LTD | CL A | G2418210 | 11987 | 226691 | SH | SHARED | | 226691 | |
| D | COOPER INDS LTD | CL A | G2418210 | 935 | 17700 | SH | SHARED | 01 | 17700 | |
| D | COOPER INDS LTD | CL A | G2418210 | 330 | 6251 | SH | SHARED | 02 | 6251 | |
| D | COOPER INDS LTD | CL A | G2418210 | 6044 | 114300 | SH | SHARED | 10 | 114300 | |
| D | CREDICORP LTD | COM | G2519Y10 | 113 | 1490 | SH | SHARED | | | 1490 |
| D | CREDICORP LTD | COM | G2519Y10 | 6211 | 81403 | SH | SHARED | | 81403 | |
| D | CREDICORP LTD | COM | G2519Y10 | 9796 | 128400 | SH | SHARED | 01 | 128400 | |
| D | CREDICORP LTD | COM | G2519Y10 | 221 | 2906 | SH | SHARED | 02 | 2906 | |
| D | CREDICORP LTD | COM | G2519Y10 | 763 | 10000 | SH | SHARED | 04 | 10000 | |
| D | CREDICORP LTD | COM | G2519Y10 | 34426 | 451200 | SH | SHARED | 10 | 451200 | |
| D | COSAN LTD | SHS A | G2534310 | 151 | 12000 | SH | SHARED | | | 12000 |
| D | COSAN LTD | SHS A | G2534310 | 2 | 200 | SH | SHARED | 02 | 200 | |
| D | COVIDIEN LTD | COM | G2552X10 | 0 | 1 | SH | SHARED | | 1 | |
| D | COVIDIEN LTD | COM | G2552X10 | 41418 | 935171 | SH | SHARED | | 935171 | |
| D | COVIDIEN LTD | COM | G2552X10 | 2286 | 51624 | SH | SHARED | 01 | 49343 | 2281 |
| D | COVIDIEN LTD | COM | G2552X10 | 34 | 789 | SH | SHR/OTHR | 01 | | 789 |
| D | COVIDIEN LTD | COM | G2552X10 | 19989 | 451335 | SH | SHARED | 02 | 451335 | |
| D | COVIDIEN LTD | COM | G2552X10 | 1993 | 45000 | SH | SHARED | 04 | 45000 | |
| D | COVIDIEN LTD | COM | G2552X10 | 11 | 265 | SH | SHARED | 05 | 265 | |
| D | COVIDIEN LTD | COM | G2552X10 | 197 | 4470 | SH | SHARED | 06 | | 4470 |
| D | COVIDIEN LTD | COM | G2552X10 | 23826 | 537965 | SH | SHARED | 10 | 530540 | 7425 |
| D | COVIDIEN LTD | COM | G2552X10 | 281 | 6365 | SH | SHARED | 14 | 1200 | 5165 |
| D | COVIDIEN LTD | COM | G2552X10 | 11 | 250 | SH | SHARED | 19 | | 250 |
| D | COVIDIEN LTD | COM | G2552X10 | 54 | 1225 | SH | SHARED | 20 | | 225 |
| D | COVIDIEN LTD | COM | G2552X10 | 117 | 2650 | SH | SHR/OTHR | 20 | 1000 | 2650 |
| D | COVIDIEN LTD | COM | G2552X10 | 6 | 157 | SH | SHR/OTHR | 21 | | 157 |
| D | COVIDIEN LTD | COM | G2552X10 | 33 | 750 | SH | SHARED | 22 | 750 | |
| D | COVIDIEN LTD | COM | G2552X10 | 44 | 1000 | SH | SHARED | 23 | 875 | 125 |
| D | COVIDIEN LTD | COM | G2552X10 | 47 | 1075 | SH | SHR/OTHR | 23 | | 1075 |
| D | CRM HOLDINGS LTD | COM | G2554P10 | 4 | 567 | SH | SHARED | | 567 | |
| D | E FUTURE INFORMATION TECH IN | SHS | G2943810 | 244 | 12827 | SH | SHARED | | 12827 | |
| D | ENDURANCE SPECIALTY HLDGS LT | SHS | G3039710 | 4164 | 99790 | SH | SHARED | | 99170 | 620 |
| D | ENDURANCE SPECIALTY HLDGS LT | SHS | G3039710 | 32363 | 775542 | SH | SHARED | 10 | 775542 | |
| D | ENDURANCE SPECIALTY HLDGS LT | SHS | G3039710 | 343 | 8225 | SH | SHARED | 21 | 6325 | 1900 |
| D | ENSTAR GROUP LIMITED | COM | G3075P10 | 846 | 6918 | SH | SHARED | | 6918 | |
| D | ENSTAR GROUP LIMITED | COM | G3075P10 | 73 | 600 | SH | SHARED | 23 | 600 | |
| D | ASA LIMITED | SHS | G3156P10 | 2922 | 38881 | SH | SHARED | | 38881 | |
| D | CRYPTOLOGIC LIMITED | COM | G3159C10 | 0 | 15 | SH | SHARED | | 15 | |
| D | EVEREST RE GROUP LTD | COM | G3223K10 | 5315 | 52944 | SH | SHARED | | 52944 | |

```
D EVEREST RE GROUP LTD            COM          G3223R10    1930    19229 SH    SHARED    01                  19229
D EVEREST RE GROUP LTD            COM          G3223R10    1126    11217 SH    SHARED    02           11217
D EVEREST RE GROUP LTD            COM          G3223R10     140     1400 SH    SHARED    20                   1400
D EVEREST RE GROUP LTD            COM          G3223R10      45      450 SH    SHARED    23             450
D FLAGSTONE REINSURANCE HLDGS     SHS          G3529T10     616    44325 SH    SHARED                       44325
D FOSTER WHEELER LTD              SHS NEW      G3653513    5649    36443 SH    SHARED                       36443
D FOSTER WHEELER LTD              SHS NEW      G3653513    4550    29354 SH    SHARED    01           22414     6940
D FOSTER WHEELER LTD              SHS NEW      G3653513     948     6116 SH    SHR/OTHR  01                    6116
D FOSTER WHEELER LTD              SHS NEW      G3653513     115      746 SH    SHARED    02             746
D FOSTER WHEELER LTD              SHS NEW      G3653513    5425    35000 SH    SHARED    05           35000
D FOSTER WHEELER LTD              SHS NEW      G3653513     108      700 SH    SHARED    06                     700
D FOSTER WHEELER LTD              SHS NEW      G3653513     668     4313 SH    SHARED    10            3800      513
D FOSTER WHEELER LTD              SHS NEW      G3653513      39      252 SH    SHARED    14                     252
D FOSTER WHEELER LTD              SHS NEW      G3653513     124      806 SH    SHARED    20             410      396
D FOSTER WHEELER LTD              SHS NEW      G3653513     108      700 SH    SHR/OTHR  20                     700
D FOSTER WHEELER LTD              SHS NEW      G3653513      48      310 SH    SHARED    21             250       60
D FOSTER WHEELER LTD              SHS NEW      G3653513       6       40 SH    SHR/OTHR  21                      40
D FOSTER WHEELER LTD              SHS NEW      G3653513     399     2575 SH    SHARED    22            2485       90
D FOSTER WHEELER LTD              SHS NEW      G3653513      27      175 SH    SHR/OTHR  22                     175
D FOSTER WHEELER LTD              SHS NEW      G3653513     808     5216 SH    SHARED    23            4716      500
D FOSTER WHEELER LTD              SHS NEW      G3653513      96      621 SH    SHR/OTHR  23                     621
D FRESH DEL MONTE PRODUCE INC     ORD          G3673810   31233   930120 SH    SHARED              930120
D FRESH DEL MONTE PRODUCE INC     ORD          G3673810     107     3200 SH    SHARED    01            2400      800
D FRESH DEL MONTE PRODUCE INC     ORD          G3673810   11901   354418 SH    SHARED    10          354418
D FRONTLINE LTD                   SHS          G3682812     617    12873 SH    SHARED               12873
D FRONTLINE LTD                   SHS          G3682812     158     3300 SH    SHARED    10            3300
D FUNEI FILMS HLDGS CO LTD        SHS          G3704P10       2      449 SH    SHARED                         449
D GARMIN LTD                      ORD          G3726010    2393    24680 SH    SHARED               11980    12700
D GARMIN LTD                      ORD          G3726010     543     5600 SH    SHARED    01            5300      300
D GARMIN LTD                      ORD          G3726010      19      200 SH    SHR/OTHR  01                     200
D GARMIN LTD                      ORD          G3726010      46      480 SH    SHARED    02             480
D GARMIN LTD                      ORD          G3726010   13046   134500 SH    SHARED    10          130000     4500
D GLOBAL CROSSING LTD             SHS NEW      G3921A17      46     2123 SH    SHARED                        2123
D GLOBAL CROSSING LTD             SHS NEW      G3921A17    1276    57900 SH    SHARED    02           57900
D GLOBAL CROSSING LTD             SHS NEW      G3921A17       7      343 SH    SHARED    22             343
D GENPACT LIMITED                 SHS          G3922B10      21     1387 SH    SHARED                        1387
D GLOBAL SOURCES LTD              ORD          G3930010     119     4240 SH    SHARED                        4240
D GLOBAL SOURCES LTD              ORD          G3930010      24      880 SH    SHARED    01             880
D GLOBAL SOURCES LTD              ORD          G3930010       3      137 SH    SHARED    02             137
D GLOBAL SOURCES LTD              ORD          G3930010     707    25080 SH    SHARED    10           25080
D GREENLIGHT CAPITAL RE LTD       CLASS A      G4095J10     484    23318 SH    SHARED               23318
D HELEN OF TROY CORP LTD          COM          G4388N10     281    16442 SH    SHARED               16442
D HELEN OF TROY CORP LTD          COM          G4388N10     138     8100 SH    SHARED    10            8100
D HERBALIFE LTD                   COM USD SHS  G4412G10    4145   1029525 SH    SHARED               52325    50600
D HERBALIFE LTD                   COM USD SHS  G4412G10      29      725 SH    SHARED    01                     725
D HERBALIFE LTD                   COM USD SHS  G4412G10       5      125 SH    SHR/OTHR  01                     125
D HERBALIFE LTD                   COM USD SHS  G4412G10       1       26 SH    SHARED    02              26
D HERBALIFE LTD                   COM USD SHS  G4412G10     140     3500 SH    SHARED    04            3500
D HERBALIFE LTD                   COM USD SHS  G4412G10   38016   943800 SH    SHARED    10          932900    10900
D INGERSOLL-RAND COMPANY LTD      CL A         G4776G10   38447   827359 SH    SHARED              827359
D INGERSOLL-RAND COMPANY LTD      CL A         G4776G10    3478    74857 SH    SHARED    01           33236    41621
D INGERSOLL-RAND COMPANY LTD      CL A         G4776G10      13      300 SH    SHR/OTHR  01                     300
D INGERSOLL-RAND COMPANY LTD      CL A         G4776G10    2434    52384 SH    SHARED    02           52384
D INGERSOLL-RAND COMPANY LTD      CL A         G4776G10    6645   143000 SH    SHARED    10          143000
D INGERSOLL-RAND COMPANY LTD      CL A         G4776G10      24      525 SH    SHARED    20             525
D INGERSOLL-RAND COMPANY LTD      CL A         G4776G10     202     4365 SH    SHARED    21            4365
D INGERSOLL-RAND COMPANY LTD      CL A         G4776G10     506    10900 SH    SHARED    22            6800     4100
D INGERSOLL-RAND COMPANY LTD      CL A         G4776G10     194     4180 SH    SHARED    23            4180
D INGERSOLL-RAND COMPANY LTD      CL A         G4776G10      82     1780 SH    SHR/OTHR  23                    1780
D INVESCO LTD                     SHS          G491BT10    4071   129736 SH    SHARED              129736
D INVESCO LTD                     SHS          G491BT10   22057   702900 SH    SHARED              702900
D INVESCO LTD                     SHS          G491BT10      23      735 SH    SHARED    01             735
D INVESCO LTD                     SHS          G491BT10   21966   700000 SH    SHARED    04          700000
D INVESCO LTD                     SHS          G491BT10       9      308 SH    SHARED    05             308
D INVESCO LTD                     SHS          G491BT10      82     2625 SH    SHARED    06                    2625
D INVESCO LTD                     SHS          G491BT10     267     8521 SH    SHARED    10            8521
D INVESCO LTD                     SHS          G491BT10    1710    54516 SH    SHARED    14           54516
D INVESCO LTD                     SHS          G491BT10    1961    62500 SH    SHARED    15           62500
D INVESCO LTD                     SHS          G491BT10     451    14400 SH    SHARED    23           14400
D IPC HLDGS LTD                   ORD          G4933P10    4191   145200 SH    SHARED              145200
D IPC HLDGS LTD                   ORD          G4933P10    1587    55000 SH    SHARED    10           55000
D IPC HLDGS LTD                   ORD          G4933P10     256     8898 SH    SHARED    21            7200     1698
D JINPAN INTL LTD                 ORD          G5138L10      71     2316 SH    SHARED               2316
D KNIGHTSBRIDGE TANKERS LTD       ORD          G5299G10      86     3589 SH    SHARED                3589
D KNIGHTSBRIDGE TANKERS LTD       ORD          G5299G10       2      100 SH    SHARED    10             100
D LAZARD LTD                      SHS A        G5405010    1035    25459 SH    SHARED                1759    23700
D LAZARD LTD                      SHS A        G5405010     378     9300 SH    SHARED    01            9100      200
D LAZARD LTD                      SHS A        G5405010     260     6400 SH    SHR/OTHR  01                    6400
D LAZARD LTD                      SHS A        G5405010    1277    31400 SH    SHARED    02           31400
D LAZARD LTD                      SHS A        G5405010    5491   135000 SH    SHARED    04          135000
D LAZARD LTD                      SHS A        G5405010    3531    86800 SH    SHARED    10           76600    10200
D LAZARD LTD                      SHS A        G5405010    1374    33800 SH    SHARED    14           33800
D LJ INTL INC                     ORD          G5531210       3      556 SH    SHARED                 556
D MARVELL TECHNOLOGY GROUP LTD    ORD          G5876H10    8024   574005 SH    SHARED              574005
D MARVELL TECHNOLOGY GROUP LTD    ORD          G5876H10     273    19578 SH    SHARED    01            6825    12753
D MARVELL TECHNOLOGY GROUP LTD    ORD          G5876H10     112     8021 SH    SHR/OTHR  01                    8021
D MARVELL TECHNOLOGY GROUP LTD    ORD          G5876H10    1244    88995 SH    SHARED    02           88995
D MARVELL TECHNOLOGY GROUP LTD    ORD          G5876H10      48     3500 SH    SHARED    06                    3500
D MARVELL TECHNOLOGY GROUP LTD    ORD          G5876H10   10099   722400 SH    SHARED    10          722400
D MARVELL TECHNOLOGY GROUP LTD    ORD          G5876H10       2      200 SH    SHR/OTHR  10                     200
D MARVELL TECHNOLOGY GROUP LTD    ORD          G5876H10       2      200 SH    SHR/OTHR  21                     200
D MARVELL TECHNOLOGY GROUP LTD    ORD          G5876H10      48     3484 SH    SHARED    22            2484     1000
D MARVELL TECHNOLOGY GROUP LTD    ORD          G5876H10      19     1400 SH    SHARED    23            1250      150
D MARVELL TECHNOLOGY GROUP LTD    ORD          G5876H10     155    11125 SH    SHARED    23                   11125
D MAX CAPITAL GROUP LTD           SHS          G6052P10     456    16298 SH    SHARED               16298
D MAX CAPITAL GROUP LTD           SHS          G6052P10      33     1200 SH    SHARED    01            1200
D MAX CAPITAL GROUP LTD           SHS          G6052P10    4551   162600 SH    SHARED    10          162600
D MAX CAPITAL GROUP LTD           SHS          G6052P10      49     1777 SH    SHARED    21            1777
D MF GLOBAL LTD                   SHS          G6064210     179     5695 SH    SHARED                5695
D MF GLOBAL LTD                   SHS          G6064210     251     8000 SH    SHARED    10            8000
D MF GLOBAL LTD                   SHS          G6064210     808    25700 SH    SHARED    14                   25700
D MONTPELIER RE HOLDINGS LTD      SHS          G6218510    1622    95400 SH    SHARED               95400
D MONTPELIER RE HOLDINGS LTD      SHS          G6218510     666    39200 SH    SHARED    10           39200
D NABORS INDUSTRIES LTD           SHS          G6359P10   10113   369240 SH    SHARED              369240
D NABORS INDUSTRIES LTD           SHS          G6359P10     970    35450 SH    SHARED    10           35450
D NABORS INDUSTRIES LTD           SHS          G6359P10    2481    90581 SH    SHARED    02           90581
D NABORS INDUSTRIES LTD           SHS          G6359P10    8981   327896 SH    SHARED    10          263396    64500
D NABORS INDUSTRIES LTD           SHS          G6359P10      46     1685 SH    SHARED    21            1685
D NABORS INDUSTRIES LTD           SHS          G6359P10     572    20900 SH    SHARED    24           20900
D NOBLE CORPORATION               SHS          G6542210   70908  1254793 SH    SHARED             1254793
D NOBLE CORPORATION               SHS          G6542210    3263    57750 SH    SHARED    01           52250     5500
D NOBLE CORPORATION               SHS          G6542210     146     2600 SH    SHR/OTHR  01                    2600
D NOBLE CORPORATION               SHS          G6542210    1869    33087 SH    SHARED    02           33087
D NOBLE CORPORATION               SHS          G6542210       9      160 SH    SHARED    05             160
```

| D | Issuer | Class | CUSIP | | | | Voting | Mgr | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | NOBLE CORPORATION | SHS | G6542210 | 122072 | 2160200 SH | | SHARED | 10 | 2119000 | 41200 |
| D | NOBLE CORPORATION | SHS | G6542210 | 103 | 1830 SH | | SHARED | 21 | 1830 | |
| D | NOBLE CORPORATION | SHS | G6542210 | 262 | 4640 SH | | SHARED | 23 | 3300 | 1340 |
| D | NOBLE CORPORATION | SHS | G6542210 | 341 | 6050 SH | | SHR/OTHR | 23 | | 6050 |
| D | NOBLE CORPORATION | SHS | G6542210 | 76 | 1360 SH | | SHARED | 24 | 1360 | |
| D | NORDIC AMERICAN TANKER SHIPP | COM | G6577310 | 931 | 28389 SH | | SHARED | | 28389 | |
| D | NORDIC AMERICAN TANKER SHIPP | COM | G6577310 | 354 | 10800 SH | | SHARED | 10 | 10800 | |
| D | NORDIC AMERICAN TANKER SHIPP | COM | G6577310 | 37 | 1150 SH | | SHR/OTHR | 23 | | 1150 |
| D | OPENTV CORP | CL A | G6754310 | 2 | 1786 SH | | SHARED | | 1786 | |
| D | ONEBEACON INSURANCE GROUP LT | CL A | G6774210 | 83 | 3873 SH | | SHARED | | 3873 | |
| D | ONEBEACON INSURANCE GROUP LT | CL A | G6774210 | 86 | 4000 SH | | SHARED | 23 | | 4000 |
| D | ORIENT-EXPRESS HOTELS LTD | CL A | G6774310 | 898 | 15614 SH | | SHARED | | 15614 | |
| D | ORIENT-EXPRESS HOTELS LTD | CL A | G6774310 | 11 | 200 SH | | SHARED | 01 | | 200 |
| D | ORIENT-EXPRESS HOTELS LTD | CL A | G6774310 | 28432 | 494310 SH | | SHARED | 10 | 494310 | |
| D | ORIGIN AGRITECH LIMITED | SHS | G6782810 | 31 | 4782 SH | | SHARED | | 4782 | |
| D | PARTNERRE LTD | COM | G6852T10 | 2309 | 27989 SH | | SHARED | | 5689 | 22300 |
| D | PARTNERRE LTD | COM | G6852T10 | 742 | 9000 SH | | SHARED | 01 | 9000 | |
| D | PARTNERRE LTD | COM | G6852T10 | 387 | 4700 SH | | SHARED | 02 | 4700 | |
| D | PARTNERRE LTD | COM | G6852T10 | 15218 | 184400 SH | | SHARED | 10 | 167700 | 16700 |
| D | PARTNERRE LTD | COM | G6852T10 | 49 | 600 SH | | SHARED | 20 | 600 | |
| D | PARTNERRE LTD | COM | G6852T10 | 82 | 1000 SH | | SHR/OTHR | 20 | | 1000 |
| D | PLATINUM UNDERWRITER HLDGS L | COM | G7127P10 | 3828 | 107676 SH | | SHARED | | 107676 | |
| D | PLATINUM UNDERWRITER HLDGS L | COM | G7127P10 | 53 | 1500 SH | | SHARED | 01 | 1500 | |
| D | PLATINUM UNDERWRITER HLDGS L | COM | G7127P10 | 4917 | 138300 SH | | SHARED | 10 | 138300 | |
| D | PRIMUS GUARANTY LTD | SHS | G7245T10 | 1 | 260 SH | | SHARED | | 260 | |
| D | QIAO XING UNIVERSAL TELEPHON | ORD | G7303A10 | 24 | 2926 SH | | SHARED | | 2926 | |
| D | QIAO XING MOBILE COMM CO LTD | ORD | G7303110 | 11 | 1392 SH | | SHARED | | 1392 | |
| D | QUANTA CAPITAL HLDGS LTD | SHS | G7313F10 | 4038 | 1583762 SH | | SHARED | | 1583762 | |
| D | SCOTTISH RE GROUP LIMITED | SHS | G7353741 | 2 | 3387 SH | | SHARED | | 3387 | |
| D | SCOTTISH RE GROUP LIMITED | SHS | G7353741 | 27 | 38500 SH | | SHARED | 10 | 38500 | |
| D | RAM HOLDINGS LTD | SHS | G7368R10 | 96 | 19501 SH | | SHARED | | 19501 | |
| D | RENAISSANCERE HOLDINGS LTD | COM | G7496G10 | 1635 | 27149 SH | | SHARED | | 27149 | |
| D | RENAISSANCERE HOLDINGS LTD | COM | G7496G10 | 1028 | 17075 SH | | SHARED | 01 | 12420 | 4655 |
| D | RENAISSANCERE HOLDINGS LTD | COM | G7496G10 | 158 | 2625 SH | | SHR/OTHR | 01 | | 2625 |
| D | RENAISSANCERE HOLDINGS LTD | COM | G7496G10 | 1340 | 22260 SH | | SHARED | 02 | 22260 | |
| D | RENAISSANCERE HOLDINGS LTD | COM | G7496G10 | 234 | 3900 SH | | SHARED | 10 | 3900 | |
| D | RENAISSANCERE HOLDINGS LTD | COM | G7496G10 | 33 | 550 SH | | SHARED | 10 | 550 | |
| D | RENAISSANCERE HOLDINGS LTD | COM | G7496G10 | 5 | 95 SH | | SHARED | 21 | | 95 |
| D | RENAISSANCERE HOLDINGS LTD | COM | G7496G10 | 24 | 400 SH | | SHR/OTHR | 21 | | 400 |
| D | RENAISSANCERE HOLDINGS LTD | COM | G7496G10 | 12 | 200 SH | | SHARED | 22 | 200 | |
| D | SEAGATE TECHNOLOGY | SHS | G7945J10 | 15701 | 615753 SH | | SHARED | | 615753 | |
| D | SEAGATE TECHNOLOGY | SHS | G7945J10 | 107 | 4200 SH | | SHARED | 01 | 4200 | |
| D | SEAGATE TECHNOLOGY | SHS | G7945J10 | 1714 | 67225 SH | | SHARED | 01 | 67225 | |
| D | SEAGATE TECHNOLOGY | SHS | G7945J10 | 5492 | 215400 SH | | SHARED | 10 | 215400 | |
| D | SEAGATE TECHNOLOGY | SHS | G7945J10 | 22 | 865 SH | | SHARED | 21 | | 865 |
| D | SECURITY CAPITAL ASSURANCE | SHS | G8018D10 | 4146 | 1065819 SH | | SHARED | | 1065819 | |
| D | SECURITY CAPITAL ASSURANCE | SHS | G8018D10 | 315 | 81100 SH | | SHARED | 10 | 81100 | |
| D | SHANGHAI CENTURY ACQUISIT CO | SHS | G8063710 | 3134 | 357000 SH | | SHARED | | 357000 | |
| D | SHIP FINANCE INTERNATIONAL L | SHS | G8107510 | 216 | 7816 SH | | SHARED | | 7816 | |
| D | SHIP FINANCE INTERNATIONAL L | SHS | G8107510 | 8 | 300 SH | | SHARED | 10 | 300 | |
| D | SILVERSTAR HLDGS LTD | ORD | G8136510 | 0 | 516 SH | | SHARED | | 516 | |
| D | SINA CORP | ORD | G8147710 | 2820 | 63660 SH | | SHARED | | 63660 | |
| D | SMART MODULAR TECHNOLOGIES I | ORD SHS | G8224510 | 377 | 37118 SH | | SHARED | | 37118 | |
| D | CHINA TECH DEVELOPMENT GP CO | SHS | G8438410 | 88 | 9854 SH | | SHARED | | 9854 | |
| D | STEWART W P & CO LTD | COM | G8492210 | 86 | 16842 SH | | SHARED | | 16842 | |
| D | STEWART W P & CO LTD | COM | G8492210 | 29 | 5700 SH | | SHARED | 10 | 5700 | |
| D | TBS INTERNATIONAL LIMITED | COM CL A | G8697515 | 333 | 10093 SH | | SHARED | | 10093 | |
| D | TBS INTERNATIONAL LIMITED | COM CL A | G8697515 | 140 | 4245 SH | | SHARED | 01 | 4245 | |
| D | TBS INTERNATIONAL LIMITED | COM CL A | G8697515 | 2522 | 76300 SH | | SHARED | 10 | 76300 | |
| D | UTI WORLDWIDE INC | ORD | G8721010 | 4924 | 251260 SH | | SHARED | | 216360 | 34900 |
| D | UTI WORLDWIDE INC | ORD | G8721010 | 2980 | 152050 SH | | SHARED | 01 | 113540 | 38510 |
| D | UTI WORLDWIDE INC | ORD | G8721010 | 412 | 21040 SH | | SHR/OTHR | 01 | | 21040 |
| D | UTI WORLDWIDE INC | ORD | G8721010 | 441 | 22500 SH | | SHARED | 02 | 22500 | |
| D | UTI WORLDWIDE INC | ORD | G8721010 | 17 | 870 SH | | SHARED | 20 | 785 | 85 |
| D | UTI WORLDWIDE INC | ORD | G8721010 | 1 | 100 SH | | SHR/OTHR | 20 | | 100 |
| D | UTI WORLDWIDE INC | ORD | G8721010 | 30 | 1550 SH | | SHARED | 21 | 1550 | |
| D | UTI WORLDWIDE INC | ORD | G8721010 | 1 | 100 SH | | SHR/OTHR | 21 | | 100 |
| D | UTI WORLDWIDE INC | ORD | G8721010 | 230 | 11784 SH | | SHARED | 22 | 11669 | 115 |
| D | UTI WORLDWIDE INC | ORD | G8721010 | 19 | 1000 SH | | SHR/OTHR | 22 | | 1000 |
| D | UTI WORLDWIDE INC | ORD | G8721010 | 93 | 4780 SH | | SHARED | 23 | 4780 | |
| D | UTI WORLDWIDE INC | ORD | G8721010 | 46 | 2390 SH | | SHR/OTHR | 23 | | 2390 |
| D | TEXTAINER GROUP HOLDINGS LTD | SHS | G8766E10 | 253 | 17466 SH | | SHARED | | 17466 | |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 1575 | 11008 SH | | SHARED | | 1494 | 9514 |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 87978 | 614589 SH | | SHARED | | 580586 | 34033 |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 13492 | 94255 SH | | SHARED | 01 | 92511 | 1744 |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 340 | 2382 SH | | SHR/OTHR | 01 | | 2382 |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 16328 | 114069 SH | | SHARED | 02 | 114069 | |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 120014 | 838382 SH | | SHARED | 05 | 838382 | |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 7178 | 50149 SH | | SHARED | 05 | 50149 | |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 7576 | 52924 SH | | SHARED | 06 | 52924 | |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 189396 | 1323064 SH | | SHARED | 10 | 1306883 | 16181 |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 3564 | 24900 SH | | SHARED | 14 | 5000 | 19900 |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 4049 | 28291 SH | | SHARED | 16 | 28291 | |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 15 | 105 SH | | SHARED | 20 | 105 | |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 82 | 575 SH | | SHARED | 21 | 575 | |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 89 | 625 SH | | SHR/OTHR | 21 | | 625 |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 10 | 70 SH | | SHARED | 22 | 70 | |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 579 | 4046 SH | | SHARED | 23 | 4046 | |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 364 | 2549 SH | | SHR/OTHR | 23 | | 2549 |
| D | TRANSOCEAN INC NEW | SHS | G9007310 | 61 | 428 SH | | SHARED | 24 | 428 | |
| D | TSAKOS ENERGY NAVIGATION LTD | SHS | G9108L10 | 1034 | 27942 SH | | SHARED | | 27942 | |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 0 | 1 SH | | SHARED | | 1 | |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 34354 | 866434 SH | | SHARED | | 866434 | |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 2695 | 67974 SH | | SHARED | 01 | 62338 | 5646 |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 111 | 2814 SH | | SHR/OTHR | 01 | | 2814 |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 10135 | 255635 SH | | SHARED | 02 | 255635 | |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 872 | 22000 SH | | SHARED | 04 | 22000 | |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 365 | 9227 SH | | SHARED | 05 | 9227 | |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 177 | 4470 SH | | SHARED | 06 | | 4470 |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 18924 | 477300 SH | | SHARED | 10 | 472675 | 4625 |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 330 | 8347 SH | | SHARED | 14 | | 8347 |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 1848 | 46625 SH | | SHARED | 16 | 46625 | |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 9 | 250 SH | | SHARED | 19 | 250 | |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 68 | 1725 SH | | SHARED | 20 | 1500 | 225 |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 105 | 2650 SH | | SHR/OTHR | 20 | | 2650 |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 8 | 217 SH | | SHARED | 21 | | 217 |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 13 | 345 SH | | SHR/OTHR | 21 | | 345 |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 69 | 1750 SH | | SHARED | 22 | 1000 | 750 |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 39 | 1000 SH | | SHARED | 23 | 875 | 125 |
| D | TYCO INTL LTD BERMUDA | SHS | G9143X20 | 42 | 1075 SH | | SHR/OTHR | 23 | | 1075 |
| D | TYCO ELECTRONICS LTD | COM NEW | G9144H10 | 0 | 1 SH | | SHARED | | 1 | |
| D | TYCO ELECTRONICS LTD | COM NEW | G9144P10 | 25173 | 677983 SH | | SHARED | | 677983 | |
| D | TYCO ELECTRONICS LTD | COM NEW | G9144P10 | 1875 | 50524 SH | | SHARED | 01 | 48143 | 2381 |
| D | TYCO ELECTRONICS LTD | COM NEW | G9144P10 | 29 | 789 SH | | SHR/OTHR | 01 | | 789 |

| D | Name | Class | CUSIP | Col1 | Col2 | Unit | Type | Code | Col3 | Col4 |
|---|------|-------|-------|------|------|------|------|------|------|------|
| D | TYCO ELECTRONICS LTD | COM NEW | G9144P10 | 18235 | 491125 | SH | SHARED | 02 | 491125 | |
| D | TYCO ELECTRONICS LTD | COM NEW | G9144P10 | 259 | 7000 | SH | SHARED | 04 | 7000 | |
| D | TYCO ELECTRONICS LTD | COM NEW | G9144P10 | 10 | 275 | SH | SHARED | 05 | 275 | |
| D | TYCO ELECTRONICS LTD | COM NEW | G9144P10 | 165 | 4470 | SH | SHARED | 06 | | 4470 |
| D | TYCO ELECTRONICS LTD | COM NEW | G9144P10 | 16457 | 443249 | SH | SHARED | 10 | 434124 | 9125 |
| D | TYCO ELECTRONICS LTD | COM NEW | G9144P10 | 191 | 5165 | SH | SHARED | 14 | 5165 | |
| D | TYCO ELECTRONICS LTD | COM NEW | G9144P10 | 9 | 250 | SH | SHARED | 19 | | 250 |
| D | TYCO ELECTRONICS LTD | COM NEW | G9144P10 | 45 | 1225 | SH | SHARED | 20 | 1000 | 225 |
| D | TYCO ELECTRONICS LTD | COM NEW | G9144P10 | 98 | 2650 | SH | SHR/OTHR | 20 | | 2650 |
| D | TYCO ELECTRONICS LTD | COM NEW | G9144P10 | 27 | 750 | SH | SHARED | 23 | | 750 |
| D | TYCO ELECTRONICS LTD | COM NEW | G9144P10 | 37 | 1000 | SH | SHARED | 23 | 875 | 125 |
| D | TYCO ELECTRONICS LTD | COM NEW | G9144P10 | 39 | 1075 | SH | SHR/OTHR | 23 | | 1075 |
| D | VALIDUS HOLDINGS LTD | COM SHS | G9319H10 | 40 | 1569 | SH | SHARED | | 1569 | |
| D | VALIDUS HOLDINGS LTD | COM SHS | G9319H10 | 511 | 19700 | SH | SHARED | 10 | 19700 | |
| D | VISTAPRINT LIMITED | SHS | G9376220 | 83 | 1947 | SH | SHARED | | 1947 | |
| D | VISTAPRINT LIMITED | SHS | G9376220 | 370 | 8657 | SH | SHARED | 01 | | 8657 |
| D | VISTAPRINT LIMITED | SHS | G9376220 | 1555 | 36310 | SH | SHARED | 10 | 36310 | |
| D | WARNER CHILCOTT LIMITED | COM CL A | G9435N10 | 611 | 34503 | SH | SHARED | | 34503 | |
| D | GOLAR LNG LTD BERMUDA | SHS | G9456A10 | 280 | 12694 | SH | SHARED | | 12694 | |
| D | GOLAR LNG LTD BERMUDA | SHS | G9456A10 | 43 | 1945 | SH | SHARED | 01 | 1945 | |
| D | GOLAR LNG LTD BERMUDA | SHS | G9456A10 | 176 | 8000 | SH | SHARED | 10 | 8000 | |
| D | WEATHERFORD INTERNATIONAL LT | COM | G9508910 | 46341 | 675535 | SH | SHARED | | 675535 | |
| D | WEATHERFORD INTERNATIONAL LT | COM | G9508910 | 2935 | 42794 | SH | SHARED | 01 | 41894 | 900 |
| D | WEATHERFORD INTERNATIONAL LT | COM | G9508910 | 96 | 1400 | SH | SHR/OTHR | 01 | | 1400 |
| D | WEATHERFORD INTERNATIONAL LT | COM | G9508910 | 3003 | 43786 | SH | SHARED | 02 | 43786 | |
| D | WEATHERFORD INTERNATIONAL LT | COM | G9508910 | 5674 | 82716 | SH | SHARED | 10 | 82716 | |
| D | WEATHERFORD INTERNATIONAL LT | COM | G9508910 | 41 | 600 | SH | SHARED | 23 | 600 | |
| D | WEATHERFORD INTERNATIONAL LT | COM | G9508910 | 463 | 6750 | SH | SHR/OTHR | 23 | | 6750 |
| D | WHITE MTNS INS GROUP LTD | COM | G9618E10 | 58 | 114 | SH | SHARED | | 114 | |
| D | WHITE MTNS INS GROUP LTD | COM | G9618E10 | 12 | 25 | SH | SHARED | 02 | 25 | |
| D | WHITE MTNS INS GROUP LTD | COM | G9618E10 | 205 | 400 | SH | SHARED | 10 | 400 | |
| D | WHITE MTNS INS GROUP LTD | COM | G9618E10 | 164 | 320 | SH | SHARED | 23 | 70 | 250 |
| D | WHITE MTNS INS GROUP LTD | COM | G9618E10 | 35 | 70 | SH | SHR/OTHR | 23 | | 70 |
| D | WILLIS GROUP HOLDINGS LTD | SHS | G9665510 | 6919 | 182234 | SH | SHARED | | 182234 | |
| D | WILLIS GROUP HOLDINGS LTD | SHS | G9665510 | 58 | 1550 | SH | SHARED | 02 | 1550 | |
| D | XOMA LTD | ORD | G9825810 | 4014 | 1184102 | SH | SHARED | | 1184102 | |
| D | XL CAP LTD | CL A | G9825510 | 16471 | 327394 | SH | SHARED | | 293794 | 33600 |
| D | XL CAP LTD | CL A | G9825510 | 1915 | 38076 | SH | SHARED | 01 | 37576 | 500 |
| D | XL CAP LTD | CL A | G9825510 | 25 | 500 | SH | SHR/OTHR | 01 | | 500 |
| D | XL CAP LTD | CL A | G9825510 | 681 | 13552 | SH | SHARED | 02 | 13552 | |
| D | XL CAP LTD | CL A | G9825510 | 94995 | 1888200 | SH | SHARED | 10 | 1816000 | 72200 |
| D | XL CAP LTD | CL A | G9825510 | 85 | 1700 | SH | SHARED | 10 | | 1700 |
| D | XL CAP LTD | CL A | G9825510 | 657 | 13077 | SH | SHARED | 20 | 4375 | 8702 |
| D | XL CAP LTD | CL A | G9825510 | 155 | 3100 | SH | SHR/OTHR | 20 | | 3100 |
| D | XL CAP LTD | CL A | G9825510 | 156 | 3105 | SH | SHARED | 21 | 3105 | |
| D | XL CAP LTD | CL A | G9825510 | 7 | 150 | SH | SHARED | 23 | 150 | |
| D | XL CAP LTD | CL A | G9825510 | 42 | 850 | SH | SHR/OTHR | 23 | | 850 |
| D | XYRATEX LTD | COM | G9826810 | 723 | 45807 | SH | SHARED | | 45807 | |
| D | YUCHENG TECHNOLOGIES LTD | COM | G9877710 | 18 | 1431 | SH | SHARED | | 1431 | |
| D | YUCHENG TECHNOLOGIES LTD | COM | G9877710 | 1296 | 99800 | SH | SHARED | 10 | 99800 | |
| D | ALCON INC | COM SHS | H0130110 | 1058 | 7398 | SH | SHARED | | 7398 | |
| D | ALCON INC | COM SHS | H0130110 | 6812 | 47630 | SH | SHARED | 10 | 47630 | |
| D | ALCON INC | COM SHS | H0130110 | 308 | 2157 | SH | SHARED | 14 | | 2157 |
| D | ALCON INC | COM SHS | H0130110 | 686 | 4800 | SH | SHARED | 21 | 4800 | |
| D | LOGITECH INTL S A | SHS | H5043023 | 13385 | 365317 | SH | SHARED | | 365317 | |
| D | LOGITECH INTL S A | SHS | H5043023 | 161 | 4414 | SH | SHARED | 01 | 4414 | |
| D | LOGITECH INTL S A | SHS | H5043023 | 19236 | 525000 | SH | SHARED | 04 | 525000 | |
| D | LOGITECH INTL S A | SHS | H5043023 | 124 | 3400 | SH | SHARED | 06 | | 3400 |
| D | LOGITECH INTL S A | SHS | H5043023 | 1472 | 40185 | SH | SHARED | 10 | 35318 | 4867 |
| D | LOGITECH INTL S A | SHS | H5043023 | 468 | 12774 | SH | SHARED | 19 | | 12774 |
| D | UBS AG | SHS NEW | H8923133 | 9725 | 211414 | SH | SHARED | | 65863 | 145551 |
| D | UBS AG | SHS NEW | H8923133 | 576108 | 12524106 | SH | SHARED | | 1985470 | 538636 |
| D | UBS AG | SHS NEW | H8923133 | 8625 | 187503 | SH | SHARED | 01 | 184486 | 3017 |
| D | UBS AG | SHS NEW | H8923133 | 76 | 1669 | SH | SHR/OTHR | 01 | | 1669 |
| D | UBS AG | SHS NEW | H8923133 | 5333 | 115941 | SH | SHARED | 02 | 98411 | 17530 |
| D | UBS AG | SHS NEW | H8923133 | 171049 | 3718476 | SH | SHARED | 04 | 3718476 | |
| D | UBS AG | SHS NEW | H8923133 | 1201 | 26111 | SH | SHARED | 05 | 26111 | |
| D | UBS AG | SHS NEW | H8923133 | 27864 | 605750 | SH | SHARED | 06 | | 605750 |
| D | UBS AG | SHS NEW | H8923133 | 68932 | 1498526 | SH | SHARED | 10 | 1170594 | 327932 |
| D | UBS AG | SHS NEW | H8923133 | 2059 | 44781 | SH | SHARED | 14 | 950 | 43831 |
| D | UBS AG | SHS NEW | H8923133 | 181862 | 3953537 | SH | SHARED | 15 | | 3953537 |
| D | UBS AG | SHS NEW | H8923133 | 9715 | 211208 | SH | SHARED | 16 | 211208 | |
| D | UBS AG | SHS NEW | H8923133 | 11057 | 240389 | SH | SHARED | 19 | | 240389 |
| D | UBS AG | SHS NEW | H8923133 | 16 | 362 | SH | SHARED | 20 | 362 | |
| D | UBS AG | SHS NEW | H8923133 | 853 | 18561 | SH | SHARED | 24 | 18561 | |
| D | MILLICOM INTL CELLULAR S A | SHS NEW | L6388P11 | 1340 | 11365 | SH | SHARED | | 11365 | |
| D | MILLICOM INTL CELLULAR S A | SHS NEW | L6388P11 | 24471 | 207490 | SH | SHARED | 10 | 207490 | |
| D | MILLICOM INTL CELLULAR S A | SHS NEW | L6388P11 | 272 | 2310 | SH | SHARED | 21 | | 2310 |
| D | ALADDIN KNOWLEDGE SYS LTD | ORD | M0392N10 | 128 | 4910 | SH | SHARED | | 4910 | |
| D | ALLOT COMMUNICATIONS LTD | SHS | M0854Q10 | 395 | 81580 | SH | SHARED | 04 | 81580 | |
| D | ALVARION LTD | ORD | M0861T10 | 1274 | 134175 | SH | SHARED | | 134175 | |
| D | ALVARION LTD | ORD | M0861T10 | 633 | 66704 | SH | SHARED | 02 | 66704 | |
| D | AUDIOCODES LTD | ORD | M1534210 | 657 | 129912 | SH | SHARED | | 129912 | |
| D | BLUEPHOENIX SOLUTIONS LTD | ORD | M2015710 | 90 | 5000 | SH | SHARED | | 5000 | |
| D | CELLCOM ISRAEL LTD | ORD | M2196010 | 168 | 5300 | SH | SHARED | | 5300 | |
| D | CHECK POINT SOFTWARE TECH LT | ORD | M2246510 | 4987 | 227125 | SH | SHARED | | 227125 | |
| D | CHECK POINT SOFTWARE TECH LT | ORD | M2246510 | 6940 | 316071 | SH | SHARED | 02 | 316071 | |
| D | CHECK POINT SOFTWARE TECH LT | ORD | M2246510 | 2305 | 105000 | SH | SHARED | 04 | 105000 | |
| D | CHECK POINT SOFTWARE TECH LT | ORD | M2246510 | 1508 | 68700 | SH | SHARED | 10 | 68700 | |
| D | CHECK POINT SOFTWARE TECH LT | ORD | M2246510 | 1513 | 68900 | SH | SHARED | 14 | | 68900 |
| D | CLICKSOFTWARE TECHNOLOGIES L | ORD | M2508210 | 0 | 35 | SH | SHARED | | 35 | |
| D | ECTEL LTD | ORD | M2892510 | 0 | 53 | SH | SHARED | | 53 | |
| D | ELBIT SYS LTD | ORD | M3760D10 | 914 | 15361 | SH | SHARED | | 15361 | |
| D | ELBIT SYS LTD | ORD | M3760D10 | 2152 | 36148 | SH | SHARED | 01 | 36148 | |
| D | ELBIT SYS LTD | ORD | M3760D10 | 4764 | 80000 | SH | SHARED | 05 | 80000 | |
| D | ELBIT SYS LTD | ORD | M3760D10 | 8266 | 138800 | SH | SHARED | 10 | 138800 | |
| D | ELBIT SYS LTD | ORD | M3760D10 | 1226 | 20600 | SH | SHARED | 24 | 20600 | |
| D | FUNDTECH LTD | ORD | M4709510 | 4 | 347 | SH | SHARED | | 347 | |
| D | FUNDTECH LTD | ORD | M4709510 | 561 | 42000 | SH | SHARED | 10 | 42000 | |
| D | GIVEN IMAGING | ORD SHS | M5202010 | 22 | 958 | SH | SHARED | | 958 | |
| D | INTERNET GOLD-GOLDEN LINES L | ORD | M6659510 | 20 | 1725 | SH | SHARED | | 1725 | |
| D | ORBOTECH LTD | ORD | M7525310 | 38 | 2172 | SH | SHARED | | 2172 | |
| D | RRSAT GLOBAL COMM NTWRK LTD | SHS | M8183P10 | 12 | 659 | SH | SHARED | | 659 | |
| D | RRSAT GLOBAL COMM NTWRK LTD | SHS | M8183P10 | 582 | 29600 | SH | SHARED | 10 | 29600 | |
| D | RADVISION LTD | ORD | M8186910 | 2 | 235 | SH | SHARED | | 235 | |
| D | RADWARE LTD | ORD | M8187310 | 370 | 24076 | SH | SHARED | | 24076 | |
| D | RETALIX LTD | ORD | M8215M10 | 18 | 1198 | SH | SHARED | | 1198 | |
| D | SAIFUN SEMICONDUCTORS LTD | ORD SHS | M8233P10 | 24965 | 2849914 | SH | SHARED | | 2849914 | |
| D | SILICOM LTD | ORD | M8411610 | 72 | 5201 | SH | SHARED | | 5201 | |
| D | SYNERON MEDICAL LTD | ORD | M8724510 | 231 | 17348 | SH | SHARED | | 17348 | |
| D | SYNERON MEDICAL LTD | ORD | M8724510 | 18 | 1373 | SH | SHARED | 21 | 1373 | |
| D | TEFRON LTD | ORD | M8748210 | 6 | 1243 | SH | SHARED | | 1243 | |
| D | AERCAP HOLDINGS NV | SHS | N0098510 | 1059 | 50753 | SH | SHARED | | 50753 | |
| D | AERCAP HOLDINGS NV | SHS | N0098510 | 603 | 28900 | SH | SHARED | 14 | | 28900 |

| | Name | Class | CUSIP | Value | Shares | | Type | Code | Col1 | Col2 |
|---|---|---|---|---|---|---|---|---|---|---|
| D | ASM INTL N V | COM | N0704510 | 4275 | 178532 SH | | SHARED | | 178532 | |
| D | ASML HOLDING N V | NY REG SHS | N0705918 | 2865 | 91570 SH | | SHARED | | 91570 | |
| D | ASML HOLDING N V | NY REG SHS | N0705918 | 1792 | 57272 SH | | SHARED | 10 | 57272 | |
| D | CNH GLOBAL N V | SHS NEW | N2093520 | 1982 | 30122 SH | | SHARED | | 30122 | |
| D | CNH GLOBAL N V | SHS NEW | N2093520 | 197 | 3000 SH | | SHARED | 23 | | 3000 |
| D | CORE LABORATORIES N V | COM | N2271710 | 1094 | 8778 SH | | SHARED | | 8778 | |
| D | EURAND N V | SHS | N3101010 | 167 | 10583 SH | | SHARED | 02 | 10583 | |
| D | ORTHOFIX INTL N V | COM | N6748L10 | 91 | 1586 SH | | SHARED | | 1586 | |
| D | ORTHOFIX INTL N V | COM | N6748L10 | 13900 | 239794 SH | | SHARED | 10 | 239794 | |
| D | ORTHOFIX INTL N V | COM | N6748L10 | 52 | 914 SH | | SHARED | 21 | 914 | |
| D | QIAGEN N V | ORD | N7248210 | 4440 | 210971 SH | | SHARED | | 91969 | 119002 |
| D | QIAGEN N V | ORD | N7248210 | 34480 | 1638045 SH | | SHARED | | 1124395 | 513650 |
| D | QIAGEN N V | ORD | N7248210 | 10510 | 499326 SH | | SHARED | 01 | 499032 | 294 |
| D | QIAGEN N V | ORD | N7248210 | 107 | 5093 SH | | SHARED | 01 | 5093 | |
| D | QIAGEN N V | ORD | N7248210 | 18 | 901 SH | | SHARED | 02 | 901 | |
| D | QIAGEN N V | ORD | N7248210 | 6146 | 291985 SH | | SHARED | 04 | 81928 | 210057 |
| D | QIAGEN N V | ORD | N7248210 | 232756 | 11057320 SH | | SHARED | 04 | 1057320 | |
| D | QIAGEN N V | ORD | N7248210 | 11219 | 533000 SH | | SHARED | 06 | | 533000 |
| D | QIAGEN N V | ORD | N7248210 | 81992 | 3895141 SH | | SHARED | 10 | 3598646 | 296495 |
| D | QIAGEN N V | ORD | N7248210 | 1536 | 73000 SH | | SHARED | 14 | 73000 | |
| D | QIAGEN N V | ORD | N7248210 | 494 | 23500 SH | | SHARED | 15 | | 23500 |
| D | QIAGEN N V | ORD | N7248210 | 7675 | 364632 SH | | SHARED | 19 | | 364632 |
| D | QIAGEN N V | ORD | N7248210 | 20 | 960 SH | | SHARED | 20 | 960 | |
| D | QIAGEN N V | ORD | N7248210 | 905 | 43000 SH | | SHARED | 24 | 43000 | |
| D | BANCO LATINOAMERICANO DE EXP | CL E | P1699413 | 60 | 3700 SH | | SHARED | | 3700 | |
| D | BANCO LATINOAMERICANO DE EXP | CL E | P1699413 | 58 | 3600 SH | | SHARED | 01 | | 3600 |
| D | BANCO LATINOAMERICANO DE EXP | CL E | P1699413 | 1218 | 74700 SH | | SHARED | | 74700 | |
| D | COPA HOLDINGS SA | CL A | P3107610 | 139 | 3703 SH | | SHARED | | 3703 | |
| D | COPA HOLDINGS SA | CL A | P3107610 | 18627 | 495800 SH | | SHARED | 01 | 495800 | |
| D | COPA HOLDINGS SA | CL A | P3107610 | 10940 | 291200 SH | | SHARED | 04 | 291200 | |
| D | COPA HOLDINGS SA | CL A | P3107610 | 4696 | 125000 SH | | SHARED | 05 | 125000 | |
| D | SINOVAC BIOTECH LTD | SHS | P8696W10 | 0 | 31 SH | | SHARED | | 31 | |
| D | STEINER LEISURE LTD | ORD | P8744Y10 | 102 | 2318 SH | | SHARED | | 2318 | |
| D | STEINER LEISURE LTD | ORD | P8744Y10 | 61 | 1394 SH | | SHARED | 21 | 1170 | 224 |
| D | ULTRAPETROL BAHAMAS LTD | COM | P9439810 | 100 | 5900 SH | | SHARED | | | 5900 |
| D | ULTRAPETROL BAHAMAS LTD | COM | P9439810 | 2324 | 136637 SH | | SHARED | | 136637 | |
| D | ULTRAPETROL BAHAMAS LTD | COM | P9439810 | 45 | 2700 SH | | SHARED | 01 | 2700 | |
| D | ULTRAPETROL BAHAMAS LTD | COM | P9439810 | 1131 | 66500 SH | | SHARED | 04 | 66500 | |
| D | EXCEL MARITIME CARRIERS LTD | COM | V3267N10 | 1002 | 24933 SH | | SHARED | | 24933 | |
| D | ROYAL CARIBBEAN CRUISES LTD | COM | V7780T10 | 612 | 14440 SH | | SHARED | | 14440 | |
| D | ROYAL CARIBBEAN CRUISES LTD | COM | V7780T10 | 172 | 4071 SH | | SHR/OTHR | 01 | | 4071 |
| D | ROYAL CARIBBEAN CRUISES LTD | COM | V7780T10 | 1673 | 39436 SH | | SHARED | 02 | 39436 | |
| D | ROYAL CARIBBEAN CRUISES LTD | COM | V7780T10 | 483 | 11400 SH | | SHARED | 10 | 11400 | |
| D | AEGEAN MARINE PETROLEUM NETW | SHS | V0017810 | 208 | 5439 SH | | SHARED | | 5439 | |
| D | ASE TEST LTD | ORD | V0251610 | 183 | 12900 SH | | SHARED | | 12900 | |
| D | CAPITAL PRODUCT PARTNERS L P | COM UNIT LP | Y1108210 | 8 | 352 SH | | SHARED | | 352 | |
| D | DANAOS CORPORATION | SHS | Y1968010 | 371 | 14049 SH | | SHARED | | 14049 | |
| D | DIANA SHIPPING INC | COM | Y2066G10 | 488 | 15535 SH | | SHARED | | 15535 | |
| D | DIANA SHIPPING INC | COM | Y2066G10 | 37752 | 1200000 SH | | SHARED | 04 | 1200000 | |
| D | DRYSHIPS INC | SHS | Y2109Q10 | 2725 | 35218 SH | | SHARED | | 35218 | |
| D | DRYSHIPS INC | SHS | Y2109Q10 | 30960 | 400000 SH | | SHARED | 04 | 400000 | |
| D | DOUBLE HULL TANKERS INC | COM | Y2111010 | 158 | 12933 SH | | SHARED | | 12933 | |
| D | DOUBLE HULL TANKERS INC | COM | Y2111010 | 2 | 200 SH | | SHARED | 10 | 200 | |
| D | EAGLE BULK SHIPPING INC | COM | Y2187A10 | 1353 | 50980 SH | | SHARED | | 50980 | |
| D | EAGLE BULK SHIPPING INC | COM | Y2187A10 | 24062 | 906300 SH | | SHARED | 10 | 906300 | |
| D | EAGLE BULK SHIPPING INC | COM | Y2187A10 | 53 | 2000 SH | | SHARED | 20 | | 2000 |
| D | EAGLE BULK SHIPPING INC | COM | Y2187A10 | 7 | 300 SH | | SHR/OTHR | 23 | | 300 |
| D | EUROSEAS LTD | COM NEW | Y2359220 | 175 | 14189 SH | | SHARED | | 14189 | |
| D | FLEXTRONICS INTL LTD | ORD | Y2573F10 | 799 | 66331 SH | | SHARED | | 66331 | |
| D | FLEXTRONICS INTL LTD | ORD | Y2573F10 | 40 | 3360 SH | | SHARED | 01 | 3300 | 60 |
| D | FLEXTRONICS INTL LTD | ORD | Y2573F10 | 2386 | 197900 SH | | SHARED | 02 | 197900 | |
| D | FLEXTRONICS INTL LTD | ORD | Y2573F10 | 1206 | 100000 SH | | SHARED | 04 | 100000 | |
| D | FLEXTRONICS INTL LTD | ORD | Y2573F10 | 6 | 547 SH | | SHARED | 05 | 547 | |
| D | FLEXTRONICS INTL LTD | ORD | Y2573F10 | 85 | 7120 SH | | SHARED | 06 | | 7120 |
| D | FLEXTRONICS INTL LTD | ORD | Y2573F10 | 198 | 16500 SH | | SHARED | 10 | 16500 | |
| D | FLEXTRONICS INTL LTD | ORD | Y2573F10 | 245 | 20338 SH | | SHARED | 14 | | 20338 |
| D | FLEXTRONICS INTL LTD | ORD | Y2573F10 | 479 | 39800 SH | | SHARED | 23 | | 39800 |
| D | FREESEAS INC | COM | Y2649610 | 0 | 46 SH | | SHARED | | 46 | |
| D | GENCO SHIPPING & TRADING LTD | SHS | Y2685T10 | 3549 | 64821 SH | | SHARED | | 64821 | |
| D | GENCO SHIPPING & TRADING LTD | SHS | Y2685T10 | 65 | 1200 SH | | SHARED | 01 | 1200 | |
| D | GENCO SHIPPING & TRADING LTD | SHS | Y2685T10 | 432 | 7900 SH | | SHARED | 01 | 7900 | |
| D | GENCO SHIPPING & TRADING LTD | SHS | Y2685T10 | 109 | 2000 SH | | SHR/OTHR | 23 | | 2000 |
| D | GENERAL MARITIME CORP | SHS | Y2692M10 | 661 | 27047 SH | | SHARED | | 27047 | |
| D | GENERAL MARITIME CORP | SHS | Y2692M10 | 361 | 14800 SH | | SHARED | 10 | 14800 | |
| D | GIGAMEDIA LTD | ORD | Y2711Y10 | 105 | 5605 SH | | SHARED | | 5605 | |
| D | NAVIOS MARITIME HOLDINGS INC | COM | Y6219610 | 2779 | 226924 SH | | SHARED | | 226924 | |
| D | NAVIOS MARITIME HOLDINGS INC | COM | Y6219610 | 189 | 15500 SH | | SHARED | 10 | 15500 | |
| D | NAVIOS MARITIME HOLDINGS INC | COM | Y6219610 | 31 | 2575 SH | | SHARED | 21 | 2575 | |
| D | NAVIOS MARITIME HOLDINGS INC | *W EXP 12/09/200 | Y6219611 | 279 | 37309 SH | | SHARED | | 37309 | |
| D | NAVIOS MARITIME PARTNERS L P | UNIT LPI | Y6226710 | 5 | 274 SH | | SHARED | | 274 | |
| D | OCEANFREIGHT INC | SHS | Y6420210 | 40 | 2124 SH | | SHARED | | 2124 | |
| D | OMEGA NAVIGATION ENTERPRISES | CLASS A | Y6476410 | 144 | 9138 SH | | SHARED | | 9138 | |
| D | QUINTANA MARITIME LTD | SHS | Y7169G10 | 2408 | 104822 SH | | SHARED | | 104822 | |
| D | SEANERGY MARITIME CORP | SHS | Y7376010 | 1311 | 138754 SH | | SHARED | | 138754 | |
| D | SEANERGY MARITIME CORP | *W EXP 09/24/201 | Y7376011 | 114 | 85640 SH | | SHARED | | 85640 | |
| D | SEANERGY MARITIME CORP | UNIT 99/99/9999 | Y7376020 | 0 | 85 SH | | SHARED | | 85 | |
| D | SEASPAN CORP | SHS | Y7560J10 | 214 | 8752 SH | | SHARED | | 8752 | |
| D | STAR BULK CARRIERS CORP | *W EXP 12/16/200 | Y8162K11 | 397 | 21201 SH | | SHARED | | 21201 | |
| D | STEALTHGAS INC | SHS | Y8166910 | 3 | 261 SH | | SHARED | | 261 | |
| D | TEEKAY LNG PARTNERS L P | PRTNRSP UNITS | Y8556W10 | 60 | 2034 SH | | SHARED | | 2034 | |
| D | TEEKAY OFFSHORE PARTNERS L P | PARTNERSHIP | Y8565L10 | 5 | 210 SH | | SHARED | | 210 | |
| D | TEEKAY TANKERS LTD | CL A | Y8565N10 | 479 | 21800 SH | | SHARED | 23 | | 21800 |
| D | TOP TANKERS INC | COM | Y8897Y10 | 5516 | 1651563 SH | | SHARED | | 1651563 | |
| D | VERIGY LTD | SHS | Y9369110 | 4 | 164 SH | | SHR/OTHR | | | 164 |
| D | VERIGY LTD | SHS | Y9369110 | 4602 | 169412 SH | | SHARED | | 169412 | |
| D | VERIGY LTD | SHS | Y9369110 | 1449 | 53359 SH | | SHARED | 01 | 53009 | 350 |
| D | VERIGY LTD | SHS | Y9369110 | 1412 | 52000 SH | | SHR/OTHR | 01 | | 52000 |
| D | VERIGY LTD | SHS | Y9369110 | 0 | 13 SH | | SHARED | 02 | 13 | |
| D | VERIGY LTD | SHS | Y9369110 | 2 | 91 SH | | SHARED | 21 | 91 | |
| D | VERIGY LTD | SHS | Y9369110 | 23 | 850 SH | | SHARED | 23 | 850 | |
| D | VERIGY LTD | SHS | Y9369110 | 9 | 366 SH | | SHR/OTHR | 23 | | 366 |
| D | AAON INC | COM PAR $0.004 | 00036020 | 18 | 919 SH | | SHARED | | 919 | |
| D | AAR CORP | COM | 00036110 | 194 | 5112 SH | | SHARED | | 5112 | |
| D | AAR CORP | COM | 00036110 | 368 | 9700 SH | | SHARED | 01 | 9700 | |
| D | AAR CORP | COM | 00036110 | 64 | 1705 SH | | SHARED | 04 | 1705 | |
| D | AAR CORP | COM | 00036110 | 5 | 134 SH | | SHARED | 10 | 134 | |
| D | ABB LTD | SPONSORED ADR | 00037520 | 1550 | 53838 SH | | SHARED | | 53838 | |
| D | ABB LTD | SPONSORED ADR | 00037520 | 45 | 1573 SH | | SHARED | 01 | 73 | 1500 |
| D | ABX AIR INC | COM | 00080J10 | 0 | 39 SH | | SHARED | | 39 | |
| D | ABX AIR INC | COM | 00080J10 | 6148 | 1471050 SH | | SHARED | 10 | 1471050 | |
| D | ACCO BRANDS CORP | COM | 00081J10 | 30 | 1899 SH | | SHARED | 01 | 1870 | 29 |
| D | ACCO BRANDS CORP | COM | 00081J10 | 711 | 44353 SH | | SHARED | 10 | 44353 | |
| D | ACCO BRANDS CORP | COM | 00081J10 | 7 | 470 SH | | SHARED | 21 | 470 | |
| D | ACCO BRANDS CORP | COM | 00081J10 | 4 | 308 SH | | SHARED | 23 | 74 | 234 |

| | Issuer | Class | CUSIP | Value | Shares | Type | Discretion | Mgr | Shared | Other |
|---|---|---|---|---|---|---|---|---|---|---|
| D | ACCO BRANDS CORP | COM | 00081T10 | 14 | 879 | SH | SHR/OTHR | 23 | | 879 |
| D | A C MOORE ARTS & CRAFTS INC | COM | 00086T10 | 114 | 8303 | SH | SHARED | | 8303 | |
| D | A D A M INC | COM | 00088U10 | 1 | 220 | SH | SHARED | | 220 | |
| D | A D C TELECOMMUNICATIONS | NOTE 1.000% 6/1 | 00088AGD | 30382 | 31003008 | PRN | SHARED | | 1003008 | |
| D | A D C TELECOMMUNICATIONS | NOTE 1.000% 6/1 | 00088AGD | 0 | 1000 | PRN | SHARED | 02 | 1000 | |
| D | A D C TELECOMMUNICATIONS | COM NEW | 00088630 | 4276 | 275032 | SH | SHARED | | 275032 | |
| D | A D C TELECOMMUNICATIONS | COM NEW | 00088630 | 772 | 49700 | SH | SHARED | 01 | 10600 | 39100 |
| D | A D C TELECOMMUNICATIONS | COM NEW | 00088630 | 217 | 13984 | SH | SHARED | 02 | 13984 | |
| D | A D C TELECOMMUNICATIONS | COM NEW | 00088630 | 411 | 26456 | SH | SHARED | 10 | 21956 | 4500 |
| D | A D C TELECOMMUNICATIONS | COM NEW | 00088630 | 154 | 9951 | SH | SHARED | 14 | 9951 | |
| D | ABN AMRO HLDG NV | SPONSORED ADR | 00080210 | 240 | 4455 | SH | SHARED | | 4455 | |
| D | ACM MANAGED DLR INCOME FD | | 00094910 | 1 | 271 | SH | SHARED | | 271 | |
| D | ACM MANAGED DLR INCOME FD | | 00094910 | 3 | 521 | SH | SHARED | 01 | 521 | |
| D | ABM INDS INC | COM | 00095710 | 380 | 18673 | SH | SHARED | | 18673 | |
| D | ABM INDS INC | COM | 00095710 | 5 | 275 | SH | SHARED | 01 | 275 | |
| D | ABM INDS INC | COM | 00095710 | 536 | 26300 | SH | SHARED | 02 | 26300 | |
| D | ABM INDS INC | COM | 00095710 | 681 | 33400 | SH | SHARED | 10 | 33400 | |
| D | ABM INDS INC | COM | 00095710 | 7 | 348 | SH | SHARED | 21 | 348 | |
| D | AEP INDS INC | COM | 00103110 | 88 | 2755 | SH | SHARED | | 2755 | |
| D | AEP INDS INC | COM | 00103110 | 76 | 2400 | SH | SHARED | 01 | 600 | 1800 |
| D | AEP INDS INC | COM | 00103110 | 153 | 4800 | SH | SHARED | 10 | 4800 | |
| D | AFC ENTERPRISES INC | COM | 00104Q10 | 342 | 30248 | SH | SHARED | | 30248 | |
| D | AFC ENTERPRISES INC | COM | 00104Q10 | 20 | 1800 | SH | SHARED | 01 | 1800 | |
| D | AFC ENTERPRISES INC | COM | 00104Q10 | 422 | 37300 | SH | SHARED | 10 | 37300 | |
| D | AFC ENTERPRISES INC | COM | 00104Q10 | 28 | 2510 | SH | SHARED | 21 | 2510 | |
| D | AFLAC INC | COM | 00105510 | 3714 | 59305 | SH | SHARED | | 330 | 58975 |
| D | AFLAC INC | COM | 00105510 | 32025 | 511351 | SH | SHARED | | 511161 | 190 |
| D | AFLAC INC | COM | 00105510 | 13473 | 215133 | SH | SHARED | 01 | 153196 | 61937 |
| D | AFLAC INC | COM | 00105510 | 5223 | 83402 | SH | SHR-OTHR | 01 | | 83402 |
| D | AFLAC INC | COM | 00105510 | 1511 | 24128 | SH | SHARED | 02 | 24128 | |
| D | AFLAC INC | COM | 00105510 | 1482 | 23675 | SH | SHARED | 04 | 23675 | |
| D | AFLAC INC | COM | 00105510 | 1805 | 28830 | SH | SHARED | 05 | 28830 | |
| D | AFLAC INC | COM | 00105510 | 33436 | 533875 | SH | SHARED | 06 | 533875 | |
| D | AFLAC INC | COM | 00105510 | 82164 | 1311898 | SH | SHARED | 10 | 1263830 | 48068 |
| D | AFLAC INC | COM | 00105510 | 6010 | 95965 | SH | SHARED | 20 | 24310 | 71655 |
| D | AFLAC INC | COM | 00105510 | 2031 | 32440 | SH | SHR-OTHR | 20 | | 32440 |
| D | AFLAC INC | COM | 00105510 | 264 | 4224 | SH | SHARED | 21 | 4224 | |
| D | AFLAC INC | COM | 00105510 | 75 | 1200 | SH | SHR-OTHR | 21 | | 1200 |
| D | AFLAC INC | COM | 00105510 | 1456 | 23262 | SH | SHARED | 22 | 17557 | 5705 |
| D | AFLAC INC | COM | 00105510 | 644 | 10287 | SH | SHR-OTHR | 22 | | 10287 |
| D | AFLAC INC | COM | 00105510 | 4727 | 75488 | SH | SHARED | 23 | 68388 | 7100 |
| D | AFLAC INC | COM | 00105510 | 2965 | 47350 | SH | SHR-OTHR | 23 | | 47350 |
| D | AFLAC INC | COM | 00105510 | 82 | 1322 | SH | SHARED | 24 | 1322 | |
| D | AGCO CORP | COM | 00108410 | 34937 | 513937 | SH | SHARED | | 513937 | |
| D | AGCO CORP | COM | 00108410 | 2481 | 36500 | SH | SHARED | 01 | 8900 | 27600 |
| D | AGCO CORP | COM | 00108410 | 3206 | 47165 | SH | SHARED | 02 | 47165 | |
| D | AGCO CORP | COM | 00108410 | 35392 | 520634 | SH | SHARED | 04 | 520634 | |
| D | AGCO CORP | COM | 00108410 | 50923 | 749091 | SH | SHARED | 05 | 749091 | |
| D | AGCO CORP | COM | 00108410 | 28524 | 419600 | SH | SHARED | 10 | 362900 | 56700 |
| D | AGCO CORP | COM | 00108410 | 3 | 55 | SH | SHARED | 21 | 55 | |
| D | AGL RES INC | COM | 00120410 | 3201 | 85054 | SH | SHARED | | 85054 | |
| D | AGL RES INC | COM | 00120410 | 761 | 20025 | SH | SHARED | 01 | 525 | 19700 |
| D | AGL RES INC | COM | 00120410 | 200 | 5328 | SH | SHARED | 02 | 5328 | |
| D | AGL RES INC | COM | 00120410 | 233 | 6200 | SH | SHARED | 10 | 6200 | |
| D | AES CORP | COM | 00130H10 | 26 | 1260 | SH | SHARED | | 1260 | |
| D | AES CORP | COM | 00130H10 | 21750 | 1016836 | SH | SHARED | | 1016836 | |
| D | AES CORP | COM | 00130H10 | 1922 | 89863 | SH | SHARED | 01 | 89863 | |
| D | AES CORP | COM | 00130H10 | 2783 | 130148 | SH | SHARED | 02 | 130148 | |
| D | AES CORP | COM | 00130H10 | 8 | 390 | SH | SHARED | 05 | 390 | |
| D | AES CORP | COM | 00130H10 | 125 | 5880 | SH | SHARED | 06 | | 5880 |
| D | AES CORP | COM | 00130H10 | 6200 | 289897 | SH | SHARED | 10 | 289897 | |
| D | AES CORP | COM | 00130H10 | 584 | 27347 | SH | SHARED | 14 | | 27347 |
| D | AES CORP | COM | 00130H10 | 41 | 1918 | SH | SHARED | 20 | 1918 | |
| D | AK STL HLDG CORP | COM | 00154710 | 6728 | 145517 | SH | SHARED | | 145517 | |
| D | AK STL HLDG CORP | COM | 00154710 | 873 | 18890 | SH | SHARED | 01 | 18890 | |
| D | AK STL HLDG CORP | COM | 00154710 | 1735 | 37530 | SH | SHARED | 10 | 27830 | 9700 |
| D | AMB PROPERTY CORP | COM | 00163710 | 1477 | 25666 | SH | SHARED | | 24266 | 1400 |
| D | AMB PROPERTY CORP | COM | 00163710 | 2477 | 43035 | SH | SHARED | 01 | 8600 | 34435 |
| D | AMB PROPERTY CORP | COM | 00163710 | 126 | 2200 | SH | SHR-OTHR | 01 | | 2200 |
| D | AMB PROPERTY CORP | COM | 00163710 | 523 | 9091 | SH | SHARED | 02 | 9091 | |
| D | AMB PROPERTY CORP | COM | 00163710 | 638 | 11100 | SH | SHARED | 10 | 11100 | |
| D | AMB PROPERTY CORP | COM | 00163710 | 1231 | 21400 | SH | SHARED | 11 | 21400 | |
| D | AMB PROPERTY CORP | COM | 00163710 | 20 | 350 | SH | SHARED | 20 | 350 | |
| D | AMB PROPERTY CORP | COM | 00163710 | 15 | 270 | SH | SHR-OTHR | 21 | | 270 |
| D | AMB PROPERTY CORP | COM | 00163710 | 11 | 200 | SH | SHARED | 22 | 200 | |
| D | AMAG PHARMACEUTICALS INC | COM | 00163010 | 854 | 14219 | SH | SHARED | | 14219 | |
| D | AMAG PHARMACEUTICALS INC | COM | 00163010 | 1201 | 19979 | SH | SHARED | 02 | 19979 | |
| D | AMAG PHARMACEUTICALS INC | COM | 00163010 | 3297 | 54835 | SH | SHARED | 04 | 54835 | |
| D | AMDL INC | COM PAR 2006 | 00167850 | 1 | 269 | SH | SHARED | | 269 | |
| D | AMICAS INC | COM | 00171210 | 3 | 1168 | SH | SHARED | | 1168 | |
| D | AMN HEALTHCARE SERVICES INC | COM | 00174410 | 65 | 3800 | SH | SHARED | | 3800 | |
| D | AMR CORP | NOTE 4.500% 2/1 | 00176588 | 5180 | 5000000 | PRN | SHARED | | 5000000 | |
| D | AMR CORP | COM | 00176510 | 18428 | 1313497 | SH | SHARED | | 800097 | 513400 |
| D | AMR CORP | COM | 00176510 | 820 | 58515 | SH | SHARED | 01 | 58515 | |
| D | AMR CORP | COM | 00176510 | 19892 | 1417824 | SH | SHARED | 02 | 1417824 | |
| D | AMR CORP | COM | 00176510 | 57516 | 4099533 | SH | SHARED | 10 | 3811533 | 288000 |
| D | AMR CORP | COM | 00176510 | 154 | 11000 | SH | SHARED | 11 | 11000 | |
| D | AMR CORP | COM | 00176510 | 4 | 300 | SH | SHARED | 20 | 300 | |
| D | AMR CORP | COM | 00176510 | 28 | 2000 | SH | SHR-OTHR | 23 | | 2000 |
| D | AMR CORP | COM | 00176510 | 286 | 20400 | SH | SHARED | 24 | 20400 | |
| D | APAC CUSTOMER SERVICES INC | COM | 00185E10 | 0 | 775 | SH | SHARED | | 775 | |
| D | APA ENTERPRISES INC | COM | 00185310 | 0 | 246 | SH | SHARED | | 246 | |
| D | A S V INC | COM | 00196310 | 350 | 25304 | SH | SHARED | | 25304 | |
| D | APP PHARMACEUTICALS INC | COM | 00202H10 | 112 | 10975 | SH | SHARED | | 10975 | |
| D | APP PHARMACEUTICALS INC | COM | 00202H10 | 29 | 2900 | SH | SHARED | 02 | 2900 | |
| D | APP PHARMACEUTICALS INC | COM | 00202H10 | 4 | 415 | SH | SHARED | 10 | 415 | |
| D | AP PHARMA INC | COM NEW | 00202220 | 1 | 802 | SH | SHARED | | 802 | |
| D | APT SATELLITE HOLDINGS LTD | SPONSORED ADR | 00203810 | 94 | 44096 | SH | SHARED | | 44096 | |
| D | AT&T INC | COM | 00206R10 | 4053 | 97523 | SH | SHARED | | 61506 | 36017 |
| D | AT&T INC | COM | 00206R10 | 641997 | 15447486 | SH | SHARED | | 5235068 | 212418 |
| D | AT&T INC | COM | 00206R10 | 69746 | 1678218 | SH | SHARED | 01 | 1324990 | 353228 |
| D | AT&T INC | COM | 00206R10 | 7144 | 171916 | SH | SHR-OTHR | 01 | | 171916 |
| D | AT&T INC | COM | 00206R10 | 13930 | 335188 | SH | SHARED | 02 | 335188 | |
| D | AT&T INC | COM | 00206R10 | 39 | 950 | SH | SHARED | 04 | | 950 |
| D | AT&T INC | COM | 00206R10 | 121970 | 2934794 | SH | SHARED | 04 | 2934794 | |
| D | AT&T INC | COM | 00206R10 | 2401 | 57782 | SH | SHARED | 05 | 57782 | |
| D | AT&T INC | COM | 00206R10 | 69664 | 1676246 | SH | SHARED | 06 | 1676246 | |
| D | AT&T INC | COM | 00206R10 | 321084 | 7725801 | SH | SHARED | 10 | 7423499 | 302302 |
| D | AT&T INC | COM | 00206R10 | 3582 | 86193 | SH | SHARED | 14 | 86193 | |
| D | AT&T INC | COM | 00206R10 | 611 | 14720 | SH | SHARED | 15 | 14720 | |
| D | AT&T INC | COM | 00206R10 | 5756 | 138509 | SH | SHARED | 16 | 138509 | |
| D | AT&T INC | COM | 00206R10 | 7667 | 184502 | SH | SHARED | 19 | 184502 | |
| D | AT&T INC | COM | 00206R10 | 3344 | 80462 | SH | SHARED | 20 | 53850 | 26612 |
| D | AT&T INC | COM | 00206R10 | 644 | 15515 | SH | SHR-OTHR | 20 | | 15515 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | AT&T INC | COM | 00206R10 | 1041 | 25051 SH | SHARED | | 21 | 8308 | 16743 |
| D | AT&T INC | COM | 00206R10 | 682 | 16412 SH | SHR/OTHR | | 21 | | 16412 |
| D | AT&T INC | COM | 00206R10 | 1896 | 45636 SH | SHARED | | 22 | 33931 | 11705 |
| D | AT&T INC | COM | 00206R10 | 465 | 11199 SH | SHR/OTHR | | 22 | | 11199 |
| D | AT&T INC | COM | 00206R10 | 7247 | 174386 SH | SHARED | | 23 | 138523 | 35863 |
| D | AT&T INC | COM | 00206R10 | 9880 | 237749 SH | SHR/OTHR | | 23 | | 237749 |
| D | AT&T INC | COM | 00206R10 | 66 | 1600 SH | SHARED | | 24 | 1600 | |
| D | ATMI INC | COM | 00207R10 | 2856 | 88563 SH | SHARED | | | 88563 | |
| D | ATMI INC | COM | 00207R10 | 100 | 3120 SH | SHARED | | 01 | 3120 | |
| D | ATMI INC | COM | 00207R10 | 106 | 3300 SH | SHARED | | 02 | 3300 | |
| D | ATMI INC | COM | 00207R10 | 645 | 20000 SH | SHARED | | 10 | 20000 | |
| D | ATMI INC | COM | 00207R10 | 35 | 1102 SH | SHARED | | 21 | | 1102 |
| D | ATP OIL & GAS CORP | COM | 00208J10 | 90 | 1800 SH | SHARED | | | 1800 | |
| D | ATP OIL & GAS CORP | COM | 00208J10 | 613 | 12146 SH | SHARED | | | 12146 | |
| D | ATP OIL & GAS CORP | COM | 00208J10 | 406 | 8050 SH | SHARED | | 01 | 8050 | |
| D | ATP OIL & GAS CORP | COM | 00208J10 | 10 | 200 SH | SHARED | | 02 | 200 | |
| D | ATP OIL & GAS CORP | COM | 00208J10 | 1218 | 24100 SH | SHARED | | 10 | 24100 | |
| D | ATP OIL & GAS CORP | COM | 00208J10 | 39 | 772 SH | SHARED | | 21 | 772 | |
| D | A S DAMPSKIBSSELSKABET TORM | SPONSORED ADR | 00208W10 | 28 | 800 SH | SHR/OTHR | | 23 | | 800 |
| D | ATS MED INC | COM | 00203307 | 2 | 1205 SH | SHARED | | | 1205 | |
| D | ATC HEALTHCARE INC | CL A | 00209C10 | 0 | 1059 SH | SHARED | | | 1059 | |
| D | AU OPTRONICS CORP | SPONSORED ADR | 00225510 | 1990 | 103697 SH | SHARED | | | 103697 | |
| D | AU OPTRONICS CORP | SPONSORED ADR | 00225510 | 391 | 20398 SH | SHARED | | 04 | 20398 | |
| D | AU OPTRONICS CORP | SPONSORED ADR | 00225510 | 19048 | 992100 SH | SHARED | | 10 | 992100 | |
| D | AU OPTRONICS CORP | SPONSORED ADR | 00225510 | 2157 | 112379 SH | SHARED | | 14 | | 112379 |
| D | AVI BIOPHARMA INC | COM | 00234610 | 1 | 1240 SH | SHARED | | | 1240 | |
| D | AVX CORP NEW | COM | 00244410 | 298 | 22215 SH | SHARED | | | 22215 | |
| D | AVX CORP NEW | COM | 00244410 | 626 | 46700 SH | SHARED | | 01 | 46700 | |
| D | AVX CORP NEW | COM | 00244410 | 158 | 11800 SH | SHARED | | 02 | 11800 | |
| D | AVX CORP NEW | COM | 00244410 | 311 | 23185 SH | SHARED | | 10 | 23185 | |
| D | AXT INC | COM | 00246W10 | 27 | 4479 SH | SHARED | | | 4479 | |
| D | AZZ INC | COM | 00247410 | 210 | 7432 SH | SHARED | | | 7432 | |
| D | AZZ INC | COM | 00247410 | 657 | 23200 SH | SHARED | | 10 | 23200 | |
| D | AASTROM BIOSCIENCES INC | COM | 00253010 | 81 | 156428 SH | SHARED | | | 156428 | |
| D | AARON RENTS INC | COM | 00253520 | 2 | 131 SH | SHARED | | | 131 | |
| D | AARON RENTS INC | COM | 00253520 | 42 | 2225 SH | SHARED | | 01 | 2225 | |
| D | AARON RENTS INC | COM | 00253520 | 60 | 3154 SH | SHARED | | 02 | 3154 | |
| D | AARON RENTS INC | COM | 00253520 | 46 | 2394 SH | SHARED | | 21 | | 2394 |
| D | ABAXIS INC | COM | 00256710 | 0 | 13 SH | SHARED | | | 13 | |
| D | ABAXIS INC | COM | 00256710 | 8 | 245 SH | SHARED | | 21 | | 245 |
| D | ABBOTT LABS | COM | 00282410 | 8341 | 148550 SH | SHARED | | | 131209 | 17341 |
| D | ABBOTT LABS | COM | 00282410 | 147053 | 2618944 SH | SHARED | | | 2617244 | 1700 |
| D | ABBOTT LABS | COM | 00282410 | 42261 | 752651 SH | SHARED | | 01 | 524437 | 228214 |
| D | ABBOTT LABS | COM | 00282410 | 10775 | 191897 SH | SHR/OTHR | | 01 | | 191897 |
| D | ABBOTT LABS | COM | 00282410 | 7477 | 133177 SH | SHARED | | 02 | 133177 | |
| D | ABBOTT LABS | COM | 00282410 | 908 | 16180 SH | SHARED | | 04 | | 16180 |
| D | ABBOTT LABS | COM | 00282410 | 150989 | 2689040 SH | SHARED | | 04 | 2689040 | |
| D | ABBOTT LABS | COM | 00282410 | 35 | 630 SH | SHARED | | 05 | 630 | |
| D | ABBOTT LABS | COM | 00282410 | 41240 | 734466 SH | SHARED | | 06 | | 734466 |
| D | ABBOTT LABS | COM | 00282410 | 105181 | 1873226 SH | SHARED | | 10 | 1797426 | 75800 |
| D | ABBOTT LABS | COM | 00282410 | 168 | 3000 SH | SHR/OTHR | | 10 | 3000 | |
| D | ABBOTT LABS | COM | 00282410 | 4449 | 79236 SH | SHARED | | 14 | 18400 | 60836 |
| D | ABBOTT LABS | COM | 00282410 | 3369 | 60000 SH | SHARED | | 15 | | 60000 |
| D | ABBOTT LABS | COM | 00282410 | 5871 | 104575 SH | SHARED | | 16 | 104575 | |
| D | ABBOTT LABS | COM | 00282410 | 7879 | 140334 SH | SHARED | | 19 | | 140334 |
| D | ABBOTT LABS | COM | 00282410 | 8917 | 158823 SH | SHARED | | 20 | 73104 | 85719 |
| D | ABBOTT LABS | COM | 00282410 | 5122 | 91225 SH | SHR/OTHR | | 20 | | 91225 |
| D | ABBOTT LABS | COM | 00282410 | 734 | 13073 SH | SHARED | | 21 | 11123 | 1950 |
| D | ABBOTT LABS | COM | 00282410 | 28 | 500 SH | SHR/OTHR | | 21 | | 500 |
| D | ABBOTT LABS | COM | 00282410 | 1801 | 32088 SH | SHARED | | 22 | 26155 | 5933 |
| D | ABBOTT LABS | COM | 00282410 | 1054 | 18787 SH | SHR/OTHR | | 22 | | 18787 |
| D | ABBOTT LABS | COM | 00282410 | 22947 | 408680 SH | SHARED | | 23 | 370150 | 38530 |
| D | ABBOTT LABS | COM | 00282410 | 15866 | 282573 SH | SHR/OTHR | | 23 | | 282573 |
| D | ABBOTT LABS | COM | 00282410 | 78 | 1394 SH | SHARED | | 24 | 1394 | |
| D | ABERCROMBIE & FITCH CO | CL A | 00289620 | 19581 | 244866 SH | SHARED | | | 244866 | |
| D | ABERCROMBIE & FITCH CO | CL A | 00289620 | 691 | 8650 SH | SHARED | | 01 | 7450 | 1200 |
| D | ABERCROMBIE & FITCH CO | CL A | 00289620 | 55 | 700 SH | SHR/OTHR | | 01 | | 700 |
| D | ABERCROMBIE & FITCH CO | CL A | 00289620 | 7156 | 89487 SH | SHARED | | 02 | 89487 | |
| D | ABERCROMBIE & FITCH CO | CL A | 00289620 | 97 | 1220 SH | SHARED | | 06 | | 1220 |
| D | ABERCROMBIE & FITCH CO | CL A | 00289620 | 9116 | 114000 SH | SHARED | | 10 | 114000 | |
| D | ABERCROMBIE & FITCH CO | CL A | 00289620 | 15 | 200 SH | SHARED | | 14 | | 200 |
| D | ABERDEEN ASIA PACIFIC INCOM | COM | 00300910 | 13219 | 2279178 SH | SHARED | | | 2279178 | |
| D | ABIGAIL ADAMS NATL BANCORP I | COM | 00339010 | 0 | 74 SH | SHARED | | | 74 | |
| D | ABINGTON BANCORP INC | COM | 00350L10 | 6904 | 734560 SH | SHARED | | | 734560 | |
| D | ABIOMED INC | COM | 00365410 | 93 | 6024 SH | SHARED | | | 6024 | |
| D | ABIOMED INC | COM | 00365410 | 52 | 3400 SH | SHARED | | 02 | 3400 | |
| D | ABIOMED INC | COM | 00365410 | 1476 | 95000 SH | SHARED | | 04 | 95000 | |
| D | ABITIBIBOWATER INC | COM | 00368710 | 0 | 92 PRN | SHARED | | | 92 | |
| D | ABITIBIBOWATER INC | COM | 00368710 | 24 | 117660 PRN | SHARED | | | 117660 | |
| D | ABITIBIBOWATER INC | COM | 00368710 | 3 | 15260 PRN | SHARED | | 10 | 15260 | |
| D | ABRAXIS BIOSCIENCE INC NEW | COM | 00383110 | 36 | 525 SH | SHARED | | | 525 | |
| D | ABRAXAS PETE CORP | COM | 00383010 | 197 | 51198 SH | SHARED | | | 51198 | |
| D | ACADIA PHARMACEUTICALS INC | COM | 00422510 | 9 | 864 SH | SHARED | | | 864 | |
| D | ACADIA PHARMACEUTICALS INC | COM | 00422510 | 1423 | 128551 SH | SHARED | | 04 | 128551 | |
| D | ACADIA RLTY TR | COM SH BEN INT | 00423910 | 37 | 1481 SH | SHARED | | | 1481 | |
| D | ACCENTIA BIOPHARMACEUTICALS | COM | 00430L10 | 1 | 570 SH | SHARED | | | 570 | |
| D | ACCELRYS INC | COM | 00430U10 | 5 | 695 SH | SHARED | | | 695 | |
| D | ACCELR8 TECHNOLOGY CORP | COM NEW | 00430420 | 1 | 239 SH | SHARED | | | 239 | |
| D | ACCESS INTEGRATED TECHNLGS | CL A | 00432910 | 2 | 577 SH | SHARED | | | 577 | |
| D | ACCESS PLANS USA INC | COM | 00433N10 | 0 | 343 SH | SHARED | | | 343 | |
| D | ACCESS NATL CORP | COM | 00437710 | 1 | 306 SH | SHARED | | | 306 | |
| D | ACCURAY INC | COM | 00439710 | 16 | 1084 SH | SHARED | | | 1084 | |
| D | ACCURAY INC | COM | 00439710 | 4118 | 270600 SH | SHARED | | 10 | 270600 | |
| D | ACCURIDE CORP | COM | 00439810 | 38 | 4900 SH | SHARED | | 01 | | 4900 |
| D | ACERGY S A | SPONSORED ADR | 00443810 | 20 | 936 SH | SHARED | | | 186 | 750 |
| D | ACERGY S A | SPONSORED ADR | 00443810 | 0 | 3 SH | SHARED | | 02 | 3 | |
| D | ACETO CORP | COM | 00444610 | 380 | 47577 SH | SHARED | | | 47577 | |
| D | ACHILLION PHARMACEUTICALS IN | COM | 00448Q20 | 1 | 226 SH | SHARED | | | 226 | |
| D | ACI WORLDWIDE INC | COM | 00449810 | 63 | 3339 SH | SHARED | | | 3339 | |
| D | ACI WORLDWIDE INC | COM | 00449810 | 220 | 11600 SH | SHARED | | 01 | 500 | 11100 |
| D | ACI WORLDWIDE INC | COM | 00449810 | 199 | 10469 SH | SHARED | | 02 | 4669 | 5800 |
| D | ACME COMMUNICATION INC | COM | 00463110 | 0 | 347 SH | SHARED | | | 347 | |
| D | ACME COMMUNICATION INC | COM | 00463110 | 1 | 725 SH | SHARED | | 02 | 725 | |
| D | ACME PACKET INC | COM | 00476410 | 25 | 2055 SH | SHARED | | | 2055 | |
| D | ACME PACKET INC | COM | 00476410 | 4623 | 367200 SH | SHARED | | 10 | 367200 | |
| D | ACME PACKET INC | COM | 00476410 | 2 | 215 SH | SHARED | | 21 | | 215 |
| D | ACME UTD CORP | COM | 00481610 | 4 | 307 SH | SHARED | | | 307 | |
| D | ACORDA THERAPEUTICS INC | COM | 00484M10 | 1 | 73 SH | SHARED | | | 73 | |
| D | ACORDA THERAPEUTICS INC | COM | 00484M10 | 92 | 4195 SH | SHARED | | 01 | 4195 | |
| D | ACORDA THERAPEUTICS INC | COM | 00484M10 | 803 | 36600 SH | SHARED | | 04 | 36600 | |
| D | ACORDA THERAPEUTICS INC | COM | 00484M10 | 41 | 1900 SH | SHARED | | 10 | 1900 | |
| D | ACORN INTL INC | SPON ADR | 00485410 | 65 | 7025 SH | SHARED | | | 7025 | |
| D | ACTION PRODS INTL INC | COM | 00492010 | 0 | 83 SH | SHARED | | | 83 | |
| D | ACTIVISION INC NEW | COM NEW | 00493020 | 26605 | 895804 SH | SHARED | | | 895804 | |

| | Issuer | Class | CUSIP | Value | Amount | Type | Discretion | Mgr | Sole | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|---|
| D | ACTIVISION INC NEW | COM NEW | 00493020 | 2893 | 97423 | SH | SHARED | 01 | | 8100 | 89323 |
| D | ACTIVISION INC NEW | COM NEW | 00493020 | 3221 | 108458 | SH | SHARED | 02 | 108458 | | |
| D | ACTIVISION INC NEW | COM NEW | 00493020 | 4392 | 147900 | SH | SHARED | 04 | 147900 | | |
| D | ACTIVISION INC NEW | COM NEW | 00493020 | 25115 | 845650 | SH | SHARED | 06 | | | 845650 |
| D | ACTIVISION INC NEW | COM NEW | 00493020 | 59071 | 1988936 | SH | SHARED | 10 | 1988936 | | |
| D | ACTIVISION INC NEW | COM NEW | 00493020 | 34 | 1149 | SH | SHARED | 14 | | | 1149 |
| D | ACTIVISION INC NEW | COM NEW | 00493020 | 1072 | 36100 | SH | SHARED | 15 | | | 36100 |
| D | ACTIVISION INC NEW | COM NEW | 00493020 | 445 | 15000 | SH | SHARED | 19 | | | 15000 |
| D | ACTIVISION INC NEW | COM NEW | 00493020 | 246 | 8312 | SH | SHARED | 20 | 8312 | | |
| D | ACTIVISION INC NEW | COM NEW | 00493020 | 153 | 5170 | SH | SHARED | 21 | | | 5170 |
| D | ACTIVISION INC NEW | COM NEW | 00493020 | 1214 | 40900 | SH | SHARED | 23 | | | 40900 |
| D | ACTIVE POWER INC | COM | 00504W10 | 9 | 4486 | SH | SHARED | | 4486 | | |
| D | ACTIVIDENTITY CORP | COM | 00506P10 | 0 | 100 | SH | SHARED | | 100 | | |
| D | ACTIVIDENTITY CORP | COM | 00506P10 | 4 | 1187 | SH | SHARED | | 1187 | | |
| D | ACTIVIDENTITY CORP | COM | 00506P10 | 20 | 5400 | SH | SHARED | 02 | 5400 | | |
| D | ACTIONS SEMICONDUCTOR CO LTD | ADR | 00507E10 | 5860 | 1436300 | SH | SHARED | | 1436300 | | |
| D | ACTUATE CORP | COM | 00508B10 | 1420 | 182803 | SH | SHARED | | 182803 | | |
| D | ACTUATE CORP | COM | 00508B10 | 50 | 6500 | SH | SHARED | 01 | 6500 | | |
| D | ACTUATE CORP | COM | 00508B10 | 62 | 8089 | SH | SHARED | 02 | 8089 | | |
| D | ACTUATE CORP | COM | 00508B10 | 991 | 127600 | SH | SHARED | 10 | 127600 | | |
| D | ACTUANT CORP | SDCV 2.000%11/1 | 00508X2B | 3892 | 2250000 | PRN | SHARED | | 2250000 | | |
| D | ACTUANT CORP | CL A NEW | 00508X20 | 559 | 16450 | SH | SHARED | | 16450 | | |
| D | ACTUANT CORP | CL A NEW | 00508X20 | 108 | 3200 | SH | SHARED | 02 | 3200 | | |
| D | ACTUANT CORP | CL A NEW | 00508X20 | 1176 | 34600 | SH | SHARED | 10 | 34600 | | |
| D | ACTUANT CORP | CL A NEW | 00508X20 | 1408 | 41400 | SH | SHARED | 14 | | | 41400 |
| D | ACTUANT CORP | CL A NEW | 00508X20 | 60 | 1781 | SH | SHARED | 21 | | | 1781 |
| D | ACUITY BRANDS INC | COM | 00508Y10 | 2797 | 62166 | SH | SHARED | | 62166 | | |
| D | ACUITY BRANDS INC | COM | 00508Y10 | 58 | 1300 | SH | SHARED | 01 | 1300 | | |
| D | ACUITY BRANDS INC | COM | 00508Y10 | 414 | 9200 | SH | SHARED | 02 | 9200 | | |
| D | ACUITY BRANDS INC | COM | 00508Y10 | 2965 | 65900 | SH | SHARED | 10 | 65900 | | |
| D | ACUITY BRANDS INC | COM | 00508Y10 | 115 | 2560 | SH | SHARED | 23 | 1560 | | 1000 |
| D | ACUSPHERE INC | COM | 00511R87 | 0 | 1204 | SH | SHARED | | 1204 | | |
| D | ACXIOM CORP | COM | 00512510 | 1068 | 91052 | SH | SHARED | | 91052 | | |
| D | ACXIOM CORP | COM | 00512510 | 281 | 24000 | SH | SHARED | 01 | | | 24000 |
| D | ACXIOM CORP | COM | 00512510 | 139 | 11898 | SH | SHARED | 02 | 11898 | | |
| D | ACXIOM CORP | COM | 00512510 | 119 | 10200 | SH | SHARED | 10 | 10200 | | |
| D | ADA ES INC | COM | 00520810 | 1 | 146 | SH | SHARED | | 146 | | |
| D | ADAMS EXPRESS CO | COM | 00621210 | 6512 | 461211 | SH | SHARED | | 461211 | | |
| D | ADAMS RESPIRATORY THERAPEUTI | COM | 00635P10 | 2789 | 46700 | SH | SHARED | 02 | 46700 | | |
| D | ADAMS RES & ENERGY INC | COM NEW | 00635130 | 9 | 354 | SH | SHARED | | 354 | | |
| D | ADAMS RES & ENERGY INC | COM NEW | 00635130 | 0 | 6 | SH | SHARED | 02 | 6 | | |
| D | ADCARE HEALTH SYSTEMS INC | COM NEW | 0060W30 | 0 | 37 | SH | SHARED | | 37 | | |
| D | ADAPTEC INC | NOTE 0.750%12/2 | 00651PAG | 1414 | 1500000 | PRN | SHARED | | 1500000 | | |
| D | ADAPTEC INC | COM | 00651P10 | 214 | 63589 | SH | SHARED | | 63589 | | |
| D | ADAPTEC INC | COM | 00651P10 | 20 | 6100 | SH | SHARED | 02 | 6100 | | |
| D | ADDVANTAGE TECHNOLOGIES GP I | COM | 00674330 | 0 | 158 | SH | SHARED | | 158 | | |
| D | ADEPT TECHNOLOGY INC | COM NEW | 00685420 | 1 | 185 | SH | SHARED | | 185 | | |
| D | ADMINISTRADORA FONDOS PENSIO | SPONSORED ADR | 00709P10 | 739 | 19857 | SH | SHARED | | 19857 | | |
| D | ADMINISTAFF INC | COM | 00709410 | 2094 | 74066 | SH | SHARED | | 74066 | | |
| D | ADMINISTAFF INC | COM | 00709410 | 313 | 11100 | SH | SHARED | 01 | 11100 | | |
| D | ADMINISTAFF INC | COM | 00709410 | 49 | 1765 | SH | SHARED | 02 | 1765 | | |
| D | ADMINISTAFF INC | COM | 00709410 | 10179 | 359957 | SH | SHARED | 10 | 359957 | | |
| D | ADOBE SYS INC | COM | 00724P10 | 75009 | 1755434 | SH | SHARED | | 1755134 | | 300 |
| D | ADOBE SYS INC | COM | 00724P10 | 2860 | 66952 | SH | SHARED | 01 | 66322 | | 630 |
| D | ADOBE SYS INC | COM | 00724P10 | 8 | 200 | SH | SHR/OTHR | | | | 200 |
| D | ADOBE SYS INC | COM | 00724P10 | 4630 | 108365 | SH | SHARED | 02 | 108365 | | |
| D | ADOBE SYS INC | COM | 00724P10 | 15827 | 370400 | SH | SHARED | 04 | 370400 | | |
| D | ADOBE SYS INC | COM | 00724P10 | 12 | 290 | SH | SHARED | 05 | 290 | | |
| D | ADOBE SYS INC | COM | 00724P10 | 238 | 5570 | SH | SHARED | 06 | | | 5570 |
| D | ADOBE SYS INC | COM | 00724P10 | 91607 | 2143858 | SH | SHARED | 10 | 2085058 | | 58800 |
| D | ADOBE SYS INC | COM | 00724P10 | 13 | 321 | SH | SHARED | 14 | | | 321 |
| D | ADOBE SYS INC | COM | 00724P10 | 568 | 13300 | SH | SHARED | 21 | | | 13300 |
| D | ADOBE SYS INC | COM | 00724P10 | 213 | 5000 | SH | SHARED | 22 | 5000 | | |
| D | ADOBE SYS INC | COM | 00724P10 | 81 | 1912 | SH | SHARED | 24 | 1912 | | |
| D | ADOLOR CORP | COM | 00724X10 | 74 | 16121 | SH | SHARED | | 16121 | | |
| D | ADOLOR CORP | COM | 00724X10 | 41 | 8950 | SH | SHARED | 02 | 8950 | | |
| D | ADSTAR INC | COM | 00737P10 | 0 | 433 | SH | SHARED | | 433 | | |
| D | ADTRAN INC | COM | 00738A10 | 844 | 39521 | SH | SHARED | | 39521 | | |
| D | ADTRAN INC | COM | 00738A10 | 417 | 19545 | SH | SHARED | 01 | 1145 | | 18400 |
| D | ADTRAN INC | COM | 00738A10 | 1710 | 79982 | SH | SHARED | 02 | 79982 | | |
| D | ADTRAN INC | COM | 00738A10 | 516 | 24159 | SH | SHARED | 10 | 24159 | | |
| D | ADVANCE AMER CASH ADVANCE CT | COM | 00739910 | 274 | 27057 | SH | SHARED | | 27057 | | |
| D | ADVANCE AMER CASH ADVANCE CT | COM | 00739910 | 26 | 2600 | SH | SHARED | 02 | 2600 | | |
| D | ADVANCE AUTO PARTS INC | COM | 00751710 | 26443 | 696074 | SH | SHARED | | 696074 | | |
| D | ADVANCE AUTO PARTS INC | COM | 00751710 | 1202 | 31650 | SH | SHARED | 01 | | | 31650 |
| D | ADVANCE AUTO PARTS INC | COM | 00751710 | 2187 | 57583 | SH | SHARED | 02 | 57583 | | |
| D | ADVANCE AUTO PARTS INC | COM | 00751710 | 34 | 920 | SH | SHARED | 06 | | | 920 |
| D | ADVANCE AUTO PARTS INC | COM | 00751710 | 8644 | 227550 | SH | SHARED | 10 | 227550 | | |
| D | ADVANCED BATTERY TECHNOLOG I | COM | 00752810 | 5 | 1102 | SH | SHARED | | 1102 | | |
| D | ADVANCED ANALOGIC TECHNOLOGI | COM | 00752210 | 13 | 1190 | SH | SHARED | | 1190 | | |
| D | ADVANCED ANALOGIC TECHNOLOGI | COM | 00752210 | 14 | 1320 | SH | SHARED | 01 | 1320 | | |
| D | ADVANCED ANALOGIC TECHNOLOGI | COM | 00752210 | 143 | 12700 | SH | SHARED | 04 | 12700 | | |
| D | ADVANCED PHOTONIX INC | CL A | 00754E10 | 1 | 567 | SH | SHARED | | 567 | | |
| D | ADVANCED TECHNOLOGY ACQU COR | COM | 00755610 | 5290 | 712103 | SH | SHARED | | 712103 | | |
| D | ADVANCED TECHNOLOGY ACQU COR | *W EXP 06/18/201 | 00755611 | 77 | 128803 | SH | SHARED | | 128803 | | |
| D | ADVANCED TECHNOLOGY ACQU COR | UNIT 06/11/2011 | 00755620 | 3796 | 474500 | SH | SHARED | | 474500 | | |
| D | ADVANCED SEMICONDUCTOR ENGR | SPONSORED ADR | 00756410 | 83 | 16685 | SH | SHARED | | 16685 | | |
| D | ADVOCAT INC | COM | 00756610 | 5 | 520 | SH | SHARED | | 520 | | |
| D | AEHR TEST SYSTEMS | COM | 00760J10 | 1 | 191 | SH | SHARED | | 191 | | |
| D | ADVANTAGE ENERGY INCOME FD | TR UNIT | 0076ZL10 | 7114 | 807557 | SH | SHARED | | 807557 | | |
| D | ADVANTAGE ENERGY INCOME FD | TR UNIT | 0076ZL10 | 11 | 1250 | SH | SHR/OTHR | 23 | | | 1250 |
| D | ADVANTEST CORP | SPON ADR NEW | 00762J20 | 2 | 90 | SH | SHARED | | 90 | | |
| D | ADVISORY BRD CO | COM | 00762W10 | 186 | 2900 | SH | SHARED | | 2900 | | |
| D | ADVISORY BRD CO | COM | 00762W10 | 6 | 100 | SH | SHARED | 01 | 100 | | |
| D | ADVISORY BRD CO | COM | 00762W10 | 166 | 2600 | SH | SHARED | 10 | 2600 | | |
| D | ADVANCED MEDICAL OPTICS INC | NOTE 2.500% 7/1 | 00763MAG | 1315 | 1450000 | PRN | SHARED | | 1450000 | | |
| D | ADVANCED MEDICAL OPTICS INC | COM | 00763M10 | 1085 | 44232 | SH | SHARED | | 44232 | | |
| D | ADVANCED MEDICAL OPTICS INC | COM | 00763M10 | 510 | 20818 | SH | SHARED | 01 | 6910 | | 13908 |
| D | ADVANCED MEDICAL OPTICS INC | COM | 00763M10 | 297 | 12113 | SH | SHARED | 02 | 12113 | | |
| D | ADVANCED MEDICAL OPTICS INC | COM | 00763M10 | 5465 | 222800 | SH | SHARED | 10 | 222800 | | |
| D | ADVENT CLAYMORE CV SECS & IN | COM | 00764C10 | 2 | 100 | SH | SHARED | | 100 | | |
| D | ADVENTRX PHARMACEUTICALS INC | COM | 00764X10 | 16 | 35832 | SH | SHARED | | 35832 | | |
| D | ADVANCED LIFE SCIENCES HLDGS | COM | 00765H10 | 0 | 442 | SH | SHARED | | 442 | | |
| D | AECOM TECHNOLOGY CORP DELAWA | COM | 00766T10 | 13 | 472 | SH | SHARED | | | | 472 |
| D | AECOM TECHNOLOGY CORP DELAWA | COM | 00766T10 | 1889 | 66152 | SH | SHARED | 01 | 66152 | | |
| D | AECOM TECHNOLOGY CORP DELAWA | COM | 00766T10 | 6028 | 211022 | SH | SHARED | 04 | 211022 | | |
| D | AECOM TECHNOLOGY CORP DELAWA | COM | 00766T10 | 5421 | 189753 | SH | SHARED | 05 | 189753 | | |
| D | AECOM TECHNOLOGY CORP DELAWA | COM | 00766T10 | 241 | 8462 | SH | SHARED | 06 | | | 8462 |
| D | AECOM TECHNOLOGY CORP DELAWA | COM | 00766T10 | 25522 | 893329 | SH | SHARED | 10 | 893329 | | |
| D | AERO GROW INTL INC | COM | 00768M10 | 0 | 139 | SH | SHARED | | 139 | | |
| D | AEROCENTURY CORP | COM | 00773710 | 0 | 32 | SH | SHARED | | 32 | | |
| D | AEROPOSTALE | COM | 00786510 | 1332 | 50285 | SH | SHARED | | 50285 | | |
| D | AEROPOSTALE | COM | 00786510 | 931 | 35150 | SH | SHARED | 01 | 12500 | | 22650 |
| D | AEROPOSTALE | COM | 00786510 | 105 | 3985 | SH | SHARED | 02 | 3985 | | |

| | Name | Type | CUSIP | Shares | Value | | Status | Code | Amount1 | Amount2 |
|---|---|---|---|---|---|---|---|---|---|---|
| D | AEROPOSTALE | COM | 00786510 | 10111 | 381550 | SH | SHARED | 10 | 381550 | |
| D | AEROPOSTALE | COM | 00786510 | 10 | 409 | SH | SHARED | 21 | | 409 |
| D | ADVANCED MICRO DEVICES INC | NOTE 6.000% 5/0 | 007903AL | 22965 | 32300000 | PRN | SHARED | | 2300000 | |
| D | ADVANCED MICRO DEVICES INC | NOTE 6.000% 5/0 | 007903AL | 472 | 665000 | PRN | SHARED | 02 | 665000 | |
| D | ADVANCED MICRO DEVICES INC | COM | 00790310 | 26391 | 3518930 | SH | SHARED | | 2834030 | 684900 |
| D | ADVANCED MICRO DEVICES INC | COM | 00790310 | 833 | 111185 | SH | SHARED | 01 | 111185 | |
| D | ADVANCED MICRO DEVICES INC | COM | 00790310 | 420 | 56080 | SH | SHARED | 02 | 56080 | |
| D | ADVANCED MICRO DEVICES INC | COM | 00790310 | 1 | 261 | SH | SHARED | 05 | 261 | |
| D | ADVANCED MICRO DEVICES INC | COM | 00790310 | 24 | 3320 | SH | SHARED | 06 | | 3320 |
| D | ADVANCED MICRO DEVICES INC | COM | 00790310 | 18598 | 2479859 | SH | SHARED | 10 | 2079807 | 400052 |
| D | ADVANCED MICRO DEVICES INC | COM | 00790310 | 112 | 15000 | SH | SHARED | 15 | | 15000 |
| D | ADVANCED MICRO DEVICES INC | COM | 00790310 | 13 | 1800 | SH | SHR/OTHR | 23 | | 1800 |
| D | ADVANCED MICRO DEVICES INC | COM | 00790310 | 232 | 31000 | SH | SHARED | 24 | 31000 | |
| D | AEGON N V | ORD AMER REG | 00792410 | 36 | 2099 | SH | SHARED | | 2099 | |
| D | AEGON N V | ORD AMER REG | 00792410 | 2 | 148 | SH | SHARED | 01 | 148 | |
| D | AEGON N V | ORD AMER REG | 00792410 | 3 | 181 | SH | SHARED | 21 | | 181 |
| D | ADVANTA CORP | CL B | 00794220 | 78 | 9700 | SH | SHARED | | 9700 | |
| D | ADVANTA CORP | CL B | 00794220 | 427 | 52950 | SH | SHARED | 10 | 52950 | |
| D | ADVANCED ENVIRON RECYCLING T | CL A | 00794710 | 0 | 907 | SH | SHARED | | 907 | |
| D | ADVANCED ENERGY INDS | COM | 00797310 | 277 | 21216 | SH | SHARED | | 21216 | |
| D | ADVENT SOFTWARE INC | COM | 00797410 | 84 | 1565 | SH | SHARED | | 1565 | |
| D | ADVENT SOFTWARE INC | COM | 00797410 | 346 | 6400 | SH | SHARED | 01 | | 6400 |
| D | ADVENT SOFTWARE INC | COM | 00797410 | 237 | 4397 | SH | SHARED | 02 | 4397 | |
| D | AEROSONIC CORP DEL | COM PAR $0.40 | 00801530 | 0 | 93 | SH | SHARED | | 93 | |
| D | AEROVIRONMENT INC | COM | 00807310 | 77 | 3191 | SH | SHARED | | 3191 | |
| D | AEROVIRONMENT INC | COM | 00807310 | 73 | 3050 | SH | SHARED | 01 | | 3050 |
| D | AETRIUM INC | COM | 00817810 | 1 | 268 | SH | SHARED | | 268 | |
| D | AETNA INC NEW | COM | 00817Y10 | 28166 | 487901 | SH | SHARED | | 487901 | |
| D | AETNA INC NEW | COM | 00817Y10 | 4847 | 83962 | SH | SHARED | 01 | 83962 | |
| D | AETNA INC NEW | COM | 00817Y10 | 17794 | 308241 | SH | SHARED | 02 | 308241 | |
| D | AETNA INC NEW | COM | 00817Y10 | 6933 | 120100 | SH | SHARED | 04 | 120100 | |
| D | AETNA INC NEW | COM | 00817Y10 | 15 | 260 | SH | SHARED | 05 | 260 | |
| D | AETNA INC NEW | COM | 00817Y10 | 319 | 5540 | SH | SHARED | 06 | | 5540 |
| D | AETNA INC NEW | COM | 00817Y10 | 359583 | 6228708 | SH | SHARED | 10 | 6166908 | 61800 |
| D | AETNA INC NEW | COM | 00817Y10 | 434 | 7535 | SH | SHARED | 14 | 2700 | 4835 |
| D | AETNA INC NEW | COM | 00817Y10 | 4005 | 69387 | SH | SHARED | 16 | 69387 | |
| D | AETNA INC NEW | COM | 00817Y10 | 295 | 5120 | SH | SHR/OTHR | 23 | | 5120 |
| D | AFFILIATED COMPUTER SERVICES | CL A | 00819010 | 6704 | 148666 | SH | SHARED | | 148666 | |
| D | AFFILIATED COMPUTER SERVICES | CL A | 00819010 | 537 | 11920 | SH | SHARED | 01 | 11670 | 250 |
| D | AFFILIATED COMPUTER SERVICES | CL A | 00819010 | 38 | 850 | SH | SHR/OTHR | 01 | | 850 |
| D | AFFILIATED COMPUTER SERVICES | CL A | 00819010 | 137 | 3045 | SH | SHARED | 02 | 3045 | |
| D | AFFILIATED COMPUTER SERVICES | CL A | 00819010 | 26 | 590 | SH | SHARED | 06 | | 590 |
| D | AFFILIATED COMPUTER SERVICES | CL A | 00819010 | 5457 | 121009 | SH | SHARED | 10 | 121009 | |
| D | AFFILIATED COMPUTER SERVICES | CL A | 00819010 | 9 | 200 | SH | SHARED | 23 | 200 | |
| D | AFFILIATED COMPUTER SERVICES | CL A | 00819010 | 94 | 2100 | SH | SHR/OTHR | 23 | | 2100 |
| D | AFFILIATED MANAGERS GROUP | NOTE 0.375% 5/0 | 00825 2AC | 243 | 119000 | PRN | SHARED | 02 | 119000 | |
| D | AFFILIATED MANAGERS GROUP | COM | 00825210 | 11323 | 96404 | SH | SHARED | | 96404 | |
| D | AFFILIATED MANAGERS GROUP | COM | 00825210 | 1900 | 16180 | SH | SHARED | 01 | 15130 | 1050 |
| D | AFFILIATED MANAGERS GROUP | COM | 00825210 | 535 | 4555 | SH | SHR/OTHR | 01 | 4555 | |
| D | AFFILIATED MANAGERS GROUP | COM | 00825210 | 3182 | 27097 | SH | SHARED | 02 | 27097 | |
| D | AFFILIATED MANAGERS GROUP | COM | 00825210 | 43338 | 368965 | SH | SHARED | 10 | 368965 | |
| D | AFFILIATED MANAGERS GROUP | COM | 00825210 | 634 | 5400 | SH | SHARED | 14 | | 5400 |
| D | AFFILIATED MANAGERS GROUP | COM | 00825210 | 366 | 3124 | SH | SHARED | 21 | 2261 | 863 |
| D | AFFILIATED MANAGERS GROUP | COM | 00825210 | 187 | 1600 | SH | SHARED | 23 | 1600 | |
| D | AFFYMAX INC | COM | | 0 | 39 | SH | SHARED | | 39 | |
| D | AFFYMETRIX INC | COM | 00826C10 | 2750 | 118885 | SH | SHARED | | 118885 | |
| D | AFFYMETRIX INC | COM | 00826C10 | 382 | 16520 | SH | SHARED | 01 | 420 | 16100 |
| D | AFFYMETRIX INC | COM | 00826C10 | 142 | 6171 | SH | SHARED | 02 | 6171 | |
| D | AFFYMETRIX INC | COM | 00826C10 | 87 | 3800 | SH | SHARED | 10 | 3800 | |
| D | AFFIRMATIVE INS HLDGS INC | COM | 00827210 | 8 | 774 | SH | SHARED | | 774 | |
| D | AFTERMARKET TECHNOLOGY CORP | COM | 00831810 | 153 | 5618 | SH | SHARED | | 5618 | |
| D | AFTERMARKET TECHNOLOGY CORP | COM | 00831810 | 32 | 1200 | SH | SHARED | 01 | 1200 | |
| D | AFTERMARKET TECHNOLOGY CORP | COM | 00831810 | 14 | 550 | SH | SHARED | 02 | 550 | |
| D | AFTERMARKET TECHNOLOGY CORP | COM | 00831810 | 1365 | 50100 | SH | SHARED | 10 | 50100 | |
| D | AGILENT TECHNOLOGIES INC | COM | 00846010 | 50 | 1372 | SH | SHR/OTHR | | | 1372 |
| D | AGILENT TECHNOLOGIES INC | COM | 00846U10 | 15431 | 420018 | SH | SHARED | | 420018 | |
| D | AGILENT TECHNOLOGIES INC | COM | 00846U10 | 1932 | 52605 | SH | SHARED | 01 | 52605 | |
| D | AGILENT TECHNOLOGIES INC | COM | 00846U10 | 358 | 9764 | SH | SHARED | 02 | 9764 | |
| D | AGILENT TECHNOLOGIES INC | COM | 00846U10 | 8 | 225 | SH | SHARED | 05 | 225 | |
| D | AGILENT TECHNOLOGIES INC | COM | 00846U10 | 145 | 3970 | SH | SHARED | 06 | | 3970 |
| D | AGILENT TECHNOLOGIES INC | COM | 00846U10 | 10865 | 295738 | SH | SHARED | 10 | 295738 | |
| D | AGILENT TECHNOLOGIES INC | COM | 00846U10 | 11 | 307 | SH | SHARED | 14 | | 307 |
| D | AGILENT TECHNOLOGIES INC | COM | 00846U10 | 313 | 8536 | SH | SHARED | 21 | 8536 | |
| D | AGILENT TECHNOLOGIES INC | COM | 00846U10 | 129 | 3516 | SH | SHARED | 23 | 3516 | |
| D | AGILENT TECHNOLOGIES INC | COM | 00846U10 | 1664 | 45312 | SH | SHR/OTHR | 23 | | 45312 |
| D | AGILYSYS INC | COM | 00847710 | 10 | 677 | SH | SHARED | | 677 | |
| D | AGILYSYS INC | COM | 00847710 | 261 | 17300 | SH | SHARED | 10 | 17300 | |
| D | AGNICO EAGLE MINES LTD | COM | 00847410 | 5490 | 100511 | SH | SHARED | | 100511 | |
| D | AGNICO EAGLE MINES LTD | COM | 00847410 | 5 | 100 | SH | SHARED | 01 | | 100 |
| D | AGNICO EAGLE MINES LTD | COM | 00847410 | 3605 | 66000 | SH | SHARED | 04 | 66000 | |
| D | AGNICO EAGLE MINES LTD | COM | 00847410 | 5 | 100 | SH | SHARED | 05 | 100 | |
| D | AGNICO EAGLE MINES LTD | COM | 00847410 | 43 | 800 | SH | SHARED | 06 | | 800 |
| D | AGNICO EAGLE MINES LTD | COM | 00847410 | 26083 | 477460 | SH | SHARED | 10 | 477460 | |
| D | AGNICO EAGLE MINES LTD | COM | 00847410 | 44 | 819 | SH | SHR/OTHR | 20 | | 819 |
| D | AGREE REALTY CORP | COM | 00849210 | 0 | 1 | SH | SHARED | | 1 | |
| D | AGREE REALTY CORP | COM | 00849210 | 3 | 100 | SH | SHARED | 02 | 100 | |
| D | AGRIA CORP | SPONSORED ADR | 00850H10 | 2204 | 212160 | SH | SHARED | | 212160 | |
| D | AGRIA CORP | SPONSORED ADR | 00850H10 | 249 | 24023 | SH | SHARED | 10 | 24023 | |
| D | AGRIUM INC | COM | 00891610 | 13998 | 193865 | SH | SHARED | | 190665 | 3200 |
| D | AGRIUM INC | COM | 00891610 | 7 | 100 | SH | SHARED | 01 | 100 | |
| D | AGRIUM INC | COM | 00891610 | 20771 | 287659 | SH | SHARED | 04 | 287659 | |
| D | AGRIUM INC | COM | 00891610 | 29044 | 402224 | SH | SHARED | 05 | 402224 | |
| D | AGRIUM INC | COM | 00891610 | 64 | 900 | SH | SHARED | 06 | | 900 |
| D | AGRIUM INC | COM | 00891610 | 22746 | 315000 | SH | SHARED | 10 | 230000 | 85000 |
| D | AGRIUM INC | COM | 00891610 | 1971 | 27300 | SH | SHARED | 24 | 27300 | |
| D | AIR FRANCE KLM | SPONSORED ADR | 00911910 | 145 | 4160 | SH | SHARED | | 4160 | |
| D | AIR METHODS CORP | COM | 00912830 | 52 | 1062 | SH | SHARED | | 1062 | |
| D | AIR METHODS CORP | COM PAR $.06 | 00912810 | 1892 | 38100 | SH | SHARED | 10 | 38100 | |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 46872 | 475234 | SH | SHARED | | 475134 | 100 |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 3689 | 37404 | SH | SHARED | 01 | 26289 | 11115 |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 498 | 5055 | SH | SHR/OTHR | 01 | 5055 | |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 404 | 4104 | SH | SHARED | 02 | 4104 | |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 9 | 100 | SH | SHARED | 05 | 100 | |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 42381 | 429706 | SH | SHARED | 06 | | 429706 |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 29717 | 301304 | SH | SHARED | 10 | 251604 | 49700 |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 6999 | 70964 | SH | SHARED | 16 | 70964 | |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 3587 | 36369 | SH | SHARED | 20 | 4630 | 31739 |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 2229 | 22600 | SH | SHR/OTHR | 20 | 22600 | 22600 |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 119 | 1209 | SH | SHARED | 21 | | 1209 |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 311 | 3160 | SH | SHARED | 22 | 3160 | |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 155 | 1575 | SH | SHR/OTHR | 22 | | 1575 |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 1934 | 19617 | SH | SHARED | 23 | 18617 | 1000 |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 1364 | 13835 | SH | SHR/OTHR | 23 | | 13835 |
| D | AIR PRODS & CHEMS INC | COM | 00915810 | 1665 | 16890 | SH | SHARED | 24 | 16890 | |

| D | Name | Type | Number | Val1 | Val2 | Owner | Code | Val3 | Val4 |
|---|---|---|---|---|---|---|---|---|---|
| D | AIR T INC | COM | 00920710 | 0 | 60 SH | SHARED | | 60 | |
| D | AIRGAS INC | COM | 00936310 | 51065 | 979956 SH | SHARED | | 979956 | |
| D | AIRGAS INC | COM | 00936310 | 1219 | 23400 SH | SHARED | 01 | | 23400 |
| D | AIRGAS INC | COM | 00936310 | 216 | 4152 SH | SHARED | 02 | 4152 | |
| D | AIRGAS INC | COM | 00936310 | 145 | 2800 SH | SHARED | 10 | 2800 | |
| D | AIRGAS INC | COM | 00936310 | 49 | 948 SH | SHARED | 21 | | 948 |
| D | AIRNET SYS INC | COM | 00941710 | 112 | 59939 SH | SHARED | | 59939 | |
| D | AIRTRAN HLDGS INC | COM | 00949P10 | 314 | 43920 SH | SHARED | | 43920 | |
| D | AIRTRAN HLDGS INC | COM | 00949P10 | 180 | 25200 SH | SHARED | 01 | 3600 | 21600 |
| D | AIRTRAN HLDGS INC | COM | 00949P10 | 190 | 26645 SH | SHARED | 02 | 26645 | |
| D | AIRTRAN HLDGS INC | COM | 00949P10 | 25095 | 3505000 SH | SHARED | 04 | 3505000 | |
| D | AIRTRAN HLDGS INC | COM | 00949P10 | 600 | 83900 SH | SHARED | 10 | 83900 | |
| D | AIRSPAN NETWORKS INC | COM | 00950H10 | 257 | 146160 SH | SHARED | | 146160 | |
| D | AITVANA INC | COM | 00950V10 | 1411 | 260000 SH | SHARED | 04 | 260000 | |
| D | AIXTRON ARTIENGESELLSCHAFT | SPONSORED ADR | 00960610 | 1243 | 88843 SH | SHARED | | 88843 | |
| D | AKAMAI TECHNOLOGIES INC | NOTE 1.000%12/1 | 00971TAE | 4620 | 2000000 PRN | SHARED | | 2000000 | |
| D | AKAMAI TECHNOLOGIES INC | COM | 00971C10 | 16882 | 487937 SH | SHARED | | 265737 | 222200 |
| D | AKAMAI TECHNOLOGIES INC | COM | 00971C10 | 2147 | 62065 SH | SHARED | 01 | 60210 | 1855 |
| D | AKAMAI TECHNOLOGIES INC | COM | 00971C10 | 1241 | 35872 SH | SHARED | 02 | 35872 | |
| D | AKAMAI TECHNOLOGIES INC | COM | 00971C10 | 118136 | 3414344 SH | SHARED | 04 | 3414344 | |
| D | AKAMAI TECHNOLOGIES INC | COM | 00971C10 | 51 | 1500 SH | SHARED | 06 | | 1500 |
| D | AKAMAI TECHNOLOGIES INC | COM | 00971C10 | 69930 | 2021100 SH | SHARED | 10 | 1889100 | 132000 |
| D | AKAMAI TECHNOLOGIES INC | COM | 00971C10 | 896 | 25900 SH | SHARED | 14 | 25900 | |
| D | AKAMAI TECHNOLOGIES INC | COM | 00971C10 | 2034 | 58800 SH | SHARED | 15 | | 58800 |
| D | AKAMAI TECHNOLOGIES INC | COM | 00971C10 | 605 | 17500 SH | SHARED | 24 | 17500 | |
| D | AKEENA SOLAR INC DE | COM | 00972010 | 3 | 482 SH | SHARED | | 482 | |
| D | AKORN INC | COM | 00972810 | 28 | 3861 SH | SHARED | | 3861 | |
| D | ALABAMA NATL BANCORP DELA | COM | 01031710 | 21354 | 274448 SH | SHARED | | 274448 | |
| D | ALABAMA NATL BANCORP DELA | COM | 01031710 | 451 | 5800 SH | SHARED | 01 | 5800 | |
| D | ALABAMA NATL BANCORP DELA | COM | 01031710 | 505 | 6500 SH | SHARED | 10 | 6500 | |
| D | ALAMO GROUP INC | COM | 01131110 | 301 | 16648 SH | SHARED | | 16648 | |
| D | ALAMO GROUP INC | COM | 01131110 | 12 | 700 SH | SHARED | 02 | 700 | |
| D | ALANCO TECHNOLOGIES INC | CL A NO PV NEW | 01161260 | 0 | 410 SH | SHARED | | 410 | |
| D | ALASKA AIR GROUP INC | COM | 01165910 | 402 | 16074 SH | SHARED | | 16074 | |
| D | ALASKA AIR GROUP INC | COM | 01165910 | 730 | 29200 SH | SHARED | 01 | 14700 | 14500 |
| D | ALASKA AIR GROUP INC | COM | 01165910 | 50 | 2009 SH | SHARED | 02 | 2009 | |
| D | ALASKA AIR GROUP INC | COM | 01165910 | 3581 | 143200 SH | SHARED | 10 | 143200 | |
| D | ALASKA COMMUNICATIONS SYS GR | COM | 01167P10 | 652 | 43484 SH | SHARED | | 43484 | |
| D | ALASKA COMMUNICATIONS SYS GR | COM | 01167P10 | 65 | 4380 SH | SHARED | 01 | 4380 | |
| D | ALASKA COMMUNICATIONS SYS GR | COM | 01167P10 | 214 | 14300 SH | SHARED | 02 | 14300 | |
| D | ALASKA COMMUNICATIONS SYS GR | COM | 01167P10 | 20556 | 1370400 SH | SHARED | 10 | 1370400 | |
| D | ALBANY INTL CORP | CL A | 01234810 | 207 | 5583 SH | SHARED | | 5583 | |
| D | ALBANY INTL CORP | CL A | 01234810 | 510 | 13749 SH | SHARED | 10 | 13749 | |
| D | ALBANY MOLECULAR RESH INC | COM | 01242310 | 643 | 44772 SH | SHARED | | 44772 | |
| D | ALBANY MOLECULAR RESH INC | COM | 01242310 | 34 | 2400 SH | SHARED | 01 | 2400 | |
| D | ALBANY MOLECULAR RESH INC | COM | 01242310 | 1370 | 95300 SH | SHARED | 10 | 95300 | |
| D | ALBEMARLE CORP | COM | 01265310 | 1281 | 31063 SH | SHARED | | 31063 | |
| D | ALBEMARLE CORP | COM | 01265310 | 1070 | 25940 SH | SHARED | 01 | 1340 | 24600 |
| D | ALBEMARLE CORP | COM | 01265310 | 452 | 10967 SH | SHARED | 02 | 10967 | |
| D | ALBEMARLE CORP | COM | 01265310 | 315 | 7653 SH | SHARED | 10 | 7653 | |
| D | ALBERTO CULVER CO NEW | COM | 01307810 | 7430 | 302801 SH | SHARED | | 302801 | |
| D | ALBERTO CULVER CO NEW | COM | 01307810 | 666 | 27149 SH | SHARED | 01 | 3349 | 23800 |
| D | ALBERTO CULVER CO NEW | COM | 01307810 | 97 | 3968 SH | SHARED | 02 | 3968 | |
| D | ALBERTO CULVER CO NEW | COM | 01307810 | 120 | 4923 SH | SHARED | 10 | 4923 | |
| D | ALCOA INC | COM | 01381710 | 145677 | 3985709 SH | SHARED | | 3960139 | 25570 |
| D | ALCOA INC | COM | 01381710 | 4122 | 112795 SH | SHARED | 01 | 112445 | 350 |
| D | ALCOA INC | COM | 01381710 | 25 | 700 SH | SHR/OTHR | 01 | | 700 |
| D | ALCOA INC | COM | 01381710 | 51654 | 1413257 SH | SHARED | 02 | 1413257 | |
| D | ALCOA INC | COM | 01381710 | 43 | 1200 SH | SHARED | 04 | | 1200 |
| D | ALCOA INC | COM | 01381710 | 5924 | 162101 SH | SHARED | 04 | 162101 | |
| D | ALCOA INC | COM | 01381710 | 15 | 430 SH | SHARED | 05 | 430 | |
| D | ALCOA INC | COM | 01381710 | 3603 | 98600 SH | SHARED | 06 | | 98600 |
| D | ALCOA INC | COM | 01381710 | 58226 | 1593062 SH | SHARED | 10 | 1409162 | 183900 |
| D | ALCOA INC | COM | 01381710 | 138 | 3800 SH | SHARED | 14 | | 3800 |
| D | ALCOA INC | COM | 01381710 | 255 | 7000 SH | SHARED | 19 | | 7000 |
| D | ALCOA INC | COM | 01381710 | 208 | 5700 SH | SHARED | 20 | 2400 | 3300 |
| D | ALCOA INC | COM | 01381710 | 201 | 5500 SH | SHR/OTHR | 20 | | 5500 |
| D | ALCOA INC | COM | 01381710 | 330 | 9050 SH | SHARED | 21 | 8160 | 890 |
| D | ALCOA INC | COM | 01381710 | 16 | 450 SH | SHARED | 22 | 450 | |
| D | ALCOA INC | COM | 01381710 | 21 | 600 SH | SHR/OTHR | 22 | | 600 |
| D | ALCOA INC | COM | 01381710 | 21 | 600 SH | SHARED | 23 | 600 | |
| D | ALCOA INC | COM | 01381710 | 361 | 9900 SH | SHR/OTHR | 23 | | 9900 |
| D | ALCOA INC | COM | 01381710 | 1363 | 37300 SH | SHARED | 24 | 37300 | |
| D | ALCATEL-LUCENT | SPONSORED ADR | 01390430 | 25 | 3438 SH | SHARED | | 3 | 3435 |
| D | ALCATEL-LUCENT | SPONSORED ADR | 01390430 | 11 | 1571 SH | SHARED | 01 | 933 | 638 |
| D | ALCATEL-LUCENT | SPONSORED ADR | 01390430 | 2 | 390 SH | SHR/OTHR | 01 | | 390 |
| D | ALCATEL-LUCENT | SPONSORED ADR | 01390430 | 4571 | 624495 SH | SHARED | 02 | 624495 | |
| D | ALCATEL-LUCENT | SPONSORED ADR | 01390430 | 585 | 80000 SH | SHARED | 04 | 80000 | |
| D | ALCATEL-LUCENT | SPONSORED ADR | 01390430 | 3 | 493 SH | SHARED | 05 | 493 | |
| D | ALCATEL-LUCENT | SPONSORED ADR | 01390430 | 17 | 2342 SH | SHARED | 19 | | 2342 |
| D | ALCATEL-LUCENT | SPONSORED ADR | 01390430 | 7 | 996 SH | SHARED | 21 | 996 | |
| D | ALCATEL-LUCENT | SPONSORED ADR | 01390430 | 7 | 1015 SH | SHR/OTHR | 23 | | 1015 |
| D | ALDABRA 2 ACQUISITION CORP | | 01408A10 | 11688 | 1200000 SH | SHARED | | 1200000 | |
| D | ALDABRA 2 ACQUISITION CORP | *W EXP 06/18/201 | 01408AB | 646 | 200037 SH | SHARED | | 200037 | |
| D | ALDILA INC | COM NEW | 01438420 | 14 | 903 SH | SHARED | | 903 | |
| D | ALEXANDER & BALDWIN INC | COM | 01448210 | 485 | 9403 SH | SHARED | | 9403 | |
| D | ALEXANDER & BALDWIN INC | COM | 01448210 | 547 | 10600 SH | SHARED | 01 | | 10600 |
| D | ALEXANDER & BALDWIN INC | COM | 01448210 | 109 | 2127 SH | SHARED | 02 | 2127 | |
| D | ALEXANDER & BALDWIN INC | COM | 01448210 | 221 | 4282 SH | SHARED | 10 | 4282 | |
| D | ALEXANDER & BALDWIN INC | COM | 01448210 | 51 | 1000 SH | SHR/OTHR | 23 | | 1000 |
| D | ALESCO FINL INC | NOTE 7.625% 5/1 | 01448AB | 4920 | 7500000 PRN | SHARED | | 7500000 | |
| D | ALESCO FINL INC | COM | 01448510 | 4 | 1319 SH | SHARED | | 1319 | |
| D | ALESCO FINL INC | COM | 01448510 | 53 | 16400 SH | SHARED | 10 | 16400 | |
| D | ALEXANDERS INC | COM | 01475210 | 4 | 14 SH | SHARED | | 14 | |
| D | ALEXANDERS INC | COM | 01475210 | 732 | 2075 SH | SHARED | 01 | 2075 | |
| D | ALEXANDERS INC | COM | 01475210 | 105 | 300 SH | SHARED | 10 | 300 | |
| D | ALEXANDRIA REAL ESTATE EQ IN | COM | 01527110 | 3563 | 35053 SH | SHARED | | 35053 | |
| D | ALEXANDRIA REAL ESTATE EQ IN | COM | 01527110 | 1237 | 12175 SH | SHARED | 01 | 875 | 11300 |
| D | ALEXANDRIA REAL ESTATE EQ IN | COM | 01527110 | 153 | 1510 SH | SHARED | 02 | 1510 | |
| D | ALEXANDRIA REAL ESTATE EQ IN | COM | 01527110 | 2978 | 29300 SH | SHARED | 10 | 29300 | |
| D | ALEXION PHARMACEUTICALS INC | NOTE 1.375% 2/0 | 01535lAF | 3047 | 1250000 PRN | SHARED | | 1250000 | |
| D | ALEXION PHARMACEUTICALS INC | NOTE 1.375% 2/0 | 01535AF | 6716 | 2755000 PRN | SHARED | 02 | 2755000 | |
| D | ALEXION PHARMACEUTICALS INC | COM | 01535110 | 375 | 5008 SH | SHARED | | 5008 | |
| D | ALEXION PHARMACEUTICALS INC | COM | 01535110 | 330 | 4400 SH | SHARED | 01 | 4400 | |
| D | ALEXION PHARMACEUTICALS INC | COM | 01535110 | 1265 | 16868 SH | SHARED | 02 | 16868 | |
| D | ALEXION PHARMACEUTICALS INC | COM | 01535110 | 12048 | 160587 SH | SHARED | 04 | 160587 | |
| D | ALEXION PHARMACEUTICALS INC | COM | 01535110 | 5473 | 72956 SH | SHARED | 10 | 72956 | |
| D | ALEXZA PHARMACEUTICALS INC | COM | 01538410 | 1 | 161 SH | SHARED | | 161 | |
| D | ALFA CORP | COM | 01538510 | 5 | 260 SH | SHARED | | 260 | |
| D | ALFA CORP | COM | 01538510 | 11 | 550 SH | SHARED | 02 | 550 | |
| D | ALFA CORP | COM | 01538510 | 1646 | 76000 SH | SHARED | 10 | 76000 | |
| D | ALFACELL CORP | COM | 01540410 | 1 | 1061 SH | SHARED | | 1061 | |
| D | ALICO INC | COM | 01623010 | 30 | 843 SH | SHARED | | 843 | |
| D | ALICO INC | COM | 01623010 | 47 | 1300 SH | SHARED | 10 | 1300 | |

| D | Issuer | Class | CUSIP | Qty | Amount | Disc | Code | Val1 | Val2 |
|---|--------|-------|-------|-----|--------|------|------|------|------|
| D | ALIGN TECHNOLOGY INC | COM | 01625510 | 307 | 18431 SH | SHARED | | 18431 | |
| D | ALIGN TECHNOLOGY INC | COM | 01625510 | 45 | 2750 SH | SHARED | 01 | 2750 | |
| D | ALIGN TECHNOLOGY INC | COM | 01625510 | 101 | 6075 SH | SHARED | 02 | 6075 | |
| D | ALIGN TECHNOLOGY INC | COM | 01625510 | 1598 | 95807 SH | SHARED | 10 | 95807 | |
| D | ALKERMES INC | COM | 01642T10 | 1345 | 86336 SH | SHARED | | 86336 | |
| D | ALKERMES INC | COM | 01642T10 | 363 | 23300 SH | SHARED | 01 | 23300 | |
| D | ALKERMES INC | COM | 01642T10 | 346 | 22225 SH | SHARED | 02 | 22225 | |
| D | ALKERMES INC | COM | 01642T10 | 708 | 45477 SH | SHARED | 10 | 45477 | |
| D | ALLEGHANY CORP DEL | COM | 01717510 | 430 | 1070 SH | SHARED | | 1070 | |
| D | ALLEGHANY CORP DEL | COM | 01717510 | 211 | 525 SH | SHARED | 02 | 525 | |
| D | ALLEGHANY CORP DEL | COM | 01717510 | 160 | 400 SH | SHARED | 10 | 400 | |
| D | ALLEGHENY ENERGY INC | COM | 01736110 | 388832 | 610477 SH | SHARED | | 610477 | |
| D | ALLEGHENY ENERGY INC | COM | 01736110 | 1348 | 21195 SH | SHARED | | 21195 | |
| D | ALLEGHENY ENERGY INC | COM | 01736110 | 157 | 2473 SH | SHARED | 01 | 2473 | |
| D | ALLEGHENY ENERGY INC | COM | 01736110 | 53760 | 845151 SH | SHARED | 04 | 845151 | |
| D | ALLEGHENY ENERGY INC | COM | 01736110 | 78387 | 1232317 SH | SHARED | 06 | | 1232317 |
| D | ALLEGHENY ENERGY INC | COM | 01736110 | 70046 | 1101188 SH | SHARED | 10 | 1083688 | 17500 |
| D | ALLEGHENY ENERGY INC | COM | 01736110 | 349 | 5500 SH | SHARED | 14 | 5500 | |
| D | ALLEGHENY ENERGY INC | COM | 01736110 | 874 | 13750 SH | SHARED | 15 | | 13750 |
| D | ALLEGHENY ENERGY INC | COM | 01736110 | 6252 | 98292 SH | SHARED | 16 | 98292 | |
| D | ALLEGHENY ENERGY INC | COM | 01736110 | 362 | 5700 SH | SHARED | 19 | | 5700 |
| D | ALLEGHENY ENERGY INC | COM | 01736110 | 254 | 3994 SH | SHARED | 21 | 3994 | |
| D | ALLEGHENY ENERGY INC | COM | 01736110 | 286 | 4500 SH | SHARED | 23 | 4500 | |
| D | ALLEGHENY ENERGY INC | COM | 01736110 | 38 | 600 SH | SHARED | 24 | 600 | |
| D | ALLEGHENY TECHNOLOGIES INC | COM | 01741R10 | 15157 | 175437 SH | SHARED | | 175437 | |
| D | ALLEGHENY TECHNOLOGIES INC | COM | 01741R10 | 5088 | 58900 SH | SHARED | 01 | 45090 | 13810 |
| D | ALLEGHENY TECHNOLOGIES INC | COM | 01741R10 | 784 | 9080 SH | SHR/OTHR | 01 | | 9080 |
| D | ALLEGHENY TECHNOLOGIES INC | COM | 01741R10 | 7304 | 84546 SH | SHARED | 02 | 84546 | |
| D | ALLEGHENY TECHNOLOGIES INC | COM | 01741R10 | 77 | 900 SH | SHARED | 06 | | 900 |
| D | ALLEGHENY TECHNOLOGIES INC | COM | 01741R10 | 37086 | 429246 SH | SHARED | 10 | 404128 | 25118 |
| D | ALLEGHENY TECHNOLOGIES INC | COM | 01741R10 | 30 | 350 SH | SHARED | 20 | 195 | 155 |
| D | ALLEGHENY TECHNOLOGIES INC | COM | 01741R10 | 36 | 424 SH | SHARED | 21 | 424 | |
| D | ALLEGHENY TECHNOLOGIES INC | COM | 01741R10 | 323 | 3743 SH | SHARED | 22 | 3593 | 150 |
| D | ALLEGHENY TECHNOLOGIES INC | COM | 01741R10 | 25 | 300 SH | SHR/OTHR | 22 | | 300 |
| D | ALLEGHENY TECHNOLOGIES INC | COM | 01741R10 | 618 | 7154 SH | SHARED | 23 | 6054 | 1100 |
| D | ALLEGHENY TECHNOLOGIES INC | COM | 01741R10 | 660 | 7650 SH | SHR/OTHR | 23 | | 7650 |
| D | ALLEGHENY TECHNOLOGIES INC | COM | 01741R10 | 569 | 6587 SH | SHARED | 24 | 6587 | |
| D | ALLEGIANT TRAVEL CO | COM | 01748X10 | 11 | 359 SH | SHARED | | 359 | |
| D | ALLERGAN INC | NOTE 1.500% 4/0 | 018490AL | 3688 | 3150000 PRN | SHARED | | 3150000 | |
| D | ALLERGAN INC | NOTE 1.500% 4/0 | 018490AL | 117 | 100000 PRN | SHARED | 02 | 100000 | |
| D | ALLERGAN INC | COM | 0184901D | 18599 | 289537 SH | SHARED | | 289537 | |
| D | ALLERGAN INC | COM | 0184901D | 2292 | 35692 SH | SHARED | 01 | 35692 | |
| D | ALLERGAN INC | COM | 0184901D | 4040 | 62891 SH | SHARED | 02 | 62891 | |
| D | ALLERGAN INC | COM | 0184901D | 1349 | 21000 SH | SHARED | 04 | 21000 | |
| D | ALLERGAN INC | COM | 0184901D | 6 | 100 SH | SHARED | 05 | 100 | |
| D | ALLERGAN INC | COM | 0184901D | 173 | 2700 SH | SHARED | 06 | | 2700 |
| D | ALLERGAN INC | COM | 0184901D | 14644 | 227964 SH | SHARED | 10 | 227964 | |
| D | ALLERGAN INC | COM | 0184901D | 131 | 2040 SH | SHARED | 20 | | 2040 |
| D | ALLERGAN INC | COM | 0184901D | 161 | 2510 SH | SHR/OTHR | 20 | | 2510 |
| D | ALLERGAN INC | COM | 0184901D | 328 | 5118 SH | SHARED | 21 | 5118 | |
| D | ALLETE INC | COM NEW | 01852230 | 800 | 20225 SH | SHARED | | 20225 | |
| D | ALLETE INC | COM NEW | 01852230 | 8 | 207 SH | SHARED | 01 | 207 | |
| D | ALLETE INC | COM NEW | 01852230 | 23312 | 589000 SH | SHARED | 10 | 589000 | |
| D | ALLIANCE BANKSHARES CORP | COM | 01853510 | 400 | 61502 SH | SHARED | | 61502 | |
| D | ALLIANCE CALIF MUN INCOME FD | COM | 01858110 | 2 | 200 SH | SHARED | | 200 | |
| D | ALLIANCE DATA SYSTEMS CORP | COM | 01858110 | 61233 | 816553 SH | SHARED | | 816553 | |
| D | ALLIANCE DATA SYSTEMS CORP | COM | 01858110 | 1801 | 24025 SH | SHARED | 01 | 625 | 23400 |
| D | ALLIANCE DATA SYSTEMS CORP | COM | 01858110 | 279 | 3730 SH | SHARED | 02 | 3730 | |
| D | ALLIANCE DATA SYSTEMS CORP | COM | 01858110 | 37 | 500 SH | SHARED | 06 | | 500 |
| D | ALLIANCE DATA SYSTEMS CORP | COM | 01858110 | 217 | 2900 SH | SHARED | 10 | 2900 | |
| D | ALLIANCE IMAGING INC | COM NEW | 01860620 | 171 | 17800 SH | SHARED | | 17800 | |
| D | ALLIANCE IMAGING INC | COM NEW | 01860620 | 41 | 4300 SH | SHARED | 01 | 4300 | |
| D | ALLIANCE IMAGING INC | COM NEW | 01860620 | 1425 | 148200 SH | SHARED | 10 | 148200 | |
| D | ALLIANCE HOLDINGS GP LP | COM UNITS LP | 01861G10 | 97 | 4126 SH | SHARED | | 4126 | |
| D | ALLIANCEBERNSTEIN NATL MUNI | | 01864010 | 0 | 2 SH | SHARED | | 2 | |
| D | ALLIANCE FIBER OPTIC PRODS I | | 01868010 | 1 | 707 SH | SHARED | | 707 | |
| D | ALLIANCE NEW YORK MUN INC FD | | 01871410 | 1 | 105 SH | SHARED | | 105 | |
| D | ALLIANCE RES PARTNER L P | UT LTD PART | 01877R10 | 20 | 561 SH | SHARED | | 561 | |
| D | ALLIANCE ONE INTL INC | COM | 01877210 | 93 | 22940 SH | SHARED | | 22940 | |
| D | ALLIANCE ONE INTL INC | COM | 01877210 | 20 | 5100 SH | SHARED | 01 | 5100 | |
| D | ALLIANCE ONE INTL INC | COM | 01877210 | 399 | 98200 SH | SHARED | 10 | 98200 | |
| D | ALLIANCEBERNSTEIN GBL HGH IN | COM | 01879R10 | 1437 | 113960 SH | SHARED | | 113960 | |
| D | ALLIANCEBERNSTEIN GBL HGH IN | COM | 01879R10 | 12 | 1000 SH | SHARED | 22 | | 1000 |
| D | ALLIANT ENERGY CORP | COM | 01880210 | 20924 | 514250 SH | SHARED | | 514250 | |
| D | ALLIANT ENERGY CORP | COM | 01880210 | 1420 | 34900 SH | SHARED | 01 | 1300 | 33600 |
| D | ALLIANT ENERGY CORP | COM | 01880210 | 212 | 5226 SH | SHARED | 02 | 5226 | |
| D | ALLIANT ENERGY CORP | COM | 01880210 | 40 | 1000 SH | SHARED | 06 | | 1000 |
| D | ALLIANT ENERGY CORP | COM | 01880210 | 537 | 13200 SH | SHARED | 10 | 13200 | |
| D | ALLIANT TECHSYSTEMS INC | NOTE 2.750% 2/1 | 01880AM | 13734 | 9274000 PRN | SHARED | | 9274000 | |
| D | ALLIANT TECHSYSTEMS INC | COM | 01880410 | 7155 | 62899 SH | SHARED | | 62899 | |
| D | ALLIANT TECHSYSTEMS INC | COM | 01880410 | 1228 | 10800 SH | SHARED | 01 | 400 | 10400 |
| D | ALLIANT TECHSYSTEMS INC | COM | 01880410 | 361 | 3175 SH | SHARED | 02 | 3175 | |
| D | ALLIANT TECHSYSTEMS INC | COM | 01880410 | 12655 | 111250 SH | SHARED | 10 | 111250 | |
| D | ALLIANT TECHSYSTEMS INC | COM | 01880410 | 371 | 3269 SH | SHARED | 20 | 3269 | |
| D | ALLIANT TECHSYSTEMS INC | COM | 01880410 | 69 | 613 SH | SHARED | 21 | | 613 |
| D | ALLIANZ SE | SP ADR 1/10 SH | 01880510 | 210 | 9901 SH | SHARED | | 9901 | |
| D | ALLIANZ SE | SP ADR 1/10 SH | 01880510 | 0 | 42 SH | SHARED | 01 | 42 | |
| D | ALLIANCEBERNSTEIN HOLDING LP | UNIT LTD PARTN | 01881G10 | 27828 | 369815 SH | SHARED | | 369815 | |
| D | ALLIANCE BANCORP INC PA | COM | 01892110 | 4 | 666 SH | SHARED | | 666 | |
| D | ALLIED CAP CORP NEW | COM | 01903Q10 | 3386 | 157528 SH | SHARED | | 157528 | |
| D | ALLIED CAP CORP NEW | COM | 01903Q10 | 29 | 1350 SH | SHARED | 01 | 1350 | |
| D | ALLIED CAP CORP NEW | COM | 01903Q10 | 227 | 10600 SH | SHARED | 02 | 10600 | |
| D | ALLIED CAP CORP NEW | COM | 01903Q10 | 364 | 16946 SH | SHARED | 10 | 16946 | |
| D | ALLIED DEFENSE GROUP INC | COM | 01911810 | 0 | 173 SH | SHARED | | 173 | |
| D | ALLIANCE FINANCIAL CORP NY | COM | 01920510 | 3 | 125 SH | SHARED | | 125 | |
| D | ALLIED HEALTHCARE PRODS INC | COM | 01922210 | 0 | 124 SH | SHARED | | 124 | |
| D | ALLIED IRISH BKS P L C | SPON ADR ORD | 01922840 | 1158 | 25207 SH | SHARED | | 25207 | |
| D | ALLIED IRISH BKS P L C | SPON ADR ORD | 01922840 | 35 | 770 SH | SHARED | 21 | | 770 |
| D | ALLIED HEALTHCARE INTL INC | COM | 01923A10 | 1 | 659 SH | SHARED | | 659 | |
| D | ALLIED MOTION TECHNOLOGIES I | COM | 01933010 | 0 | 131 SH | SHARED | | 131 | |
| D | ALLIED NEVADA GOLD CORP | COM | 01934410 | 8 | 1395 SH | SHARED | | 1395 | |
| D | ALLIED WASTE INDS INC | COM PAR$.01NEW | 01958930 | 9669 | 877444 SH | SHARED | | 716844 | 160600 |
| D | ALLIED WASTE INDS INC | COM PAR$.01NEW | 01958930 | 789 | 71600 SH | SHARED | 01 | 71600 | |
| D | ALLIED WASTE INDS INC | COM PAR$.01NEW | 01958930 | 1546 | 140307 SH | SHARED | 02 | 140307 | |
| D | ALLIED WASTE INDS INC | COM PAR$.01NEW | 01958930 | 19033 | 1727221 SH | SHARED | 10 | 1682721 | 44500 |
| D | ALLIED WASTE INDS INC | COM PAR$.01NEW | 01958930 | 2778 | 252100 SH | SHARED | 14 | | 252100 |
| D | ALLIED WASTE INDS INC | PFD CV W/O W PAR$ | 01958970 | 108749 | 378851 SH | SHARED | | | 378851 |
| D | ALLION HEALTHCARE INC | COM | 01961510 | 2 | 422 SH | SHARED | | 422 | |
| D | ALLIS CHALMERS ENERGY INC | COM PAR $.01NEW | 01964550 | 38 | 2582 SH | SHARED | | 2582 | |
| D | ALLIS CHALMERS ENERGY INC | COM PAR $.01NEW | 01964550 | 115 | 7800 SH | SHARED | 10 | 7800 | |
| D | ALLOS THERAPEUTICS INC | COM | 01977710 | 3217 | 511556 SH | SHARED | 04 | 511556 | |
| D | ALLOY INC | NEW COM | 01985530 | 33 | 3510 SH | SHARED | | 3510 | |
| D | ALLOY INC | NEW COM | 01985530 | 0 | 1 SH | SHARED | 02 | 1 | |
| D | ALLSCRIPTS HEALTHCARE SOLUTI | DBCV 3.500% 7/1 | 01988PAB | 2682 | 1500000 PRN | SHARED | | 1500000 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | ALLSCRIPTS HEALTHCARE SOLUTI | COM | 01988P10 | 100 | 5150 SH | SHARED | | 5150 | |
| D | ALLSCRIPTS HEALTHCARE SOLUTI | COM | 01988P10 | 1787 | 92050 SH | SHARED | 04 | 92050 | |
| D | ALLSCRIPTS HEALTHCARE SOLUTI | COM | 01988P10 | 7305 | 376200 SH | SHARED | 10 | 376200 | |
| D | ALLSTATE CORP | COM | 02000210 | 60896 | 1165932 SH | SHARED | | 1165822 | 110 |
| D | ALLSTATE CORP | COM | 02000210 | 4088 | 78275 SH | SHARED | 01 | 77170 | 1105 |
| D | ALLSTATE CORP | COM | 02000210 | 125 | 2400 SH | SHR/OTHR | 01 | | 2400 |
| D | ALLSTATE CORP | COM | 02000210 | 3708 | 71004 SH | SHARED | 02 | 71004 | |
| D | ALLSTATE CORP | COM | 02000210 | 23 | 456 SH | SHARED | 04 | | 456 |
| D | ALLSTATE CORP | COM | 02000210 | 1898 | 36350 SH | SHARED | 05 | 36350 | |
| D | ALLSTATE CORP | COM | 02000210 | 38396 | 735141 SH | SHARED | 06 | | 735141 |
| D | ALLSTATE CORP | COM | 02000210 | 28398 | 543723 SH | SHARED | 10 | 543723 | |
| D | ALLSTATE CORP | COM | 02000210 | 484 | 9268 SH | SHARED | 14 | | 9268 |
| D | ALLSTATE CORP | COM | 02000210 | 4034 | 77250 SH | SHARED | 15 | | 77250 |
| D | ALLSTATE CORP | COM | 02000210 | 266 | 5100 SH | SHARED | 19 | 5100 | |
| D | ALLSTATE CORP | COM | 02000210 | 15 | 300 SH | SHARED | 20 | 255 | 45 |
| D | ALLSTATE CORP | COM | 02000210 | 19 | 365 SH | SHARED | 21 | | 365 |
| D | ALLSTATE CORP | COM | 02000210 | 52 | 1000 SH | SHARED | 22 | | 1000 |
| D | ALLSTATE CORP | COM | 02000210 | 144 | 2761 SH | SHARED | 23 | 2761 | |
| D | ALLSTATE CORP | COM | 02000210 | 1232 | 23598 SH | SHR/OTHR | 23 | | 23598 |
| D | ALMOST FAMILY INC | COM | 02040910 | 2 | 109 SH | SHARED | | 109 | |
| D | ALNYLAM PHARMACEUTICALS INC | COM | 02043Q10 | 1086 | 37370 SH | SHARED | | 37370 | |
| D | ALNYLAM PHARMACEUTICALS INC | COM | 02043Q10 | 84 | 2900 SH | SHARED | 01 | 2900 | |
| D | ALNYLAM PHARMACEUTICALS INC | COM | 02043Q10 | 11094 | 381500 SH | SHARED | 04 | 381500 | |
| D | ALON USA ENERGY INC | COM | 02052010 | 652 | 24020 SH | SHARED | | 24020 | |
| D | ALON USA ENERGY INC | COM | 02052010 | 481 | 17700 SH | SHARED | 01 | 17700 | |
| D | ALON USA ENERGY INC | COM | 02052010 | 10 | 375 SH | SHARED | 02 | 375 | |
| D | ALON USA ENERGY INC | COM | 02052010 | 6028 | 221800 SH | SHARED | 10 | 221800 | |
| D | ALON USA ENERGY INC | COM | 02052010 | 16 | 613 SH | SHARED | 21 | 613 | |
| D | ALPHA NATURAL RESOURCES INC | COM | 02076X10 | 2560 | 78847 SH | SHARED | | 78847 | |
| D | ALPHA NATURAL RESOURCES INC | COM | 02076X10 | 48 | 1500 SH | SHARED | 01 | 1500 | |
| D | ALPHA NATURAL RESOURCES INC | COM | 02076X10 | 1774 | 54645 SH | SHARED | 02 | 54645 | |
| D | ALPHA NATURAL RESOURCES INC | COM | 02076X10 | 1461 | 45000 SH | SHARED | 04 | 45000 | |
| D | ALPHA NATURAL RESOURCES INC | COM | 02076X10 | 1045 | 32200 SH | SHARED | 10 | 32200 | |
| D | ALPHA SEC GROUP CORP | COM | 02078A10 | 2776 | 296331 SH | SHARED | | 296331 | |
| D | ALPHA SEC GROUP CORP | *W EXP 03/23/201 | 02078A11 | 10 | 12456 SH | SHARED | | 12456 | |
| D | ALPHATEC HOLDINGS INC | COM | 02081G10 | 3 | 739 SH | SHARED | | 739 | |
| D | ALPHARMA INC | NOTE  2.125% 3/1 | 02081AH | 4435 | 5000000 PRN | SHARED | 02 | 5000000 | |
| D | ALPHARMA INC | CL A | 02081310 | 26 | 1306 SH | SHARED | | 1306 | |
| D | ALPHARMA INC | CL A | 02081310 | 34 | 1700 SH | SHARED | 01 | | 1700 |
| D | ALPHARMA INC | CL A | 02081310 | 146 | 7275 SH | SHARED | 02 | 7275 | |
| D | ALPHARMA INC | CL A | 02081310 | 858 | 42600 SH | SHARED | 10 | 42600 | |
| D | ALPHARMA INC | CL A | 02081310 | 40 | 2000 SH | SHARED | 23 | | 2000 |
| D | ALPINE GLOBAL PREMIER PPTYS | COM SBI | 02083A10 | 1791 | 134199 SH | SHARED | | 134199 | |
| D | ALSERES PHARMACEUTICALS INC | COM NEW | 02115210 | 0 | 271 SH | SHARED | | 271 | |
| D | ALSIUS CORPORATION | COM | 02121110 | 1406 | 380222 SH | SHARED | | 380222 | |
| D | ALTAIR NANOTECHNOLOGIES INC | COM | 02137310 | 14 | 3441 SH | SHARED | | | 3441 |
| D | ALTAIR NANOTECHNOLOGIES INC | COM | 02137310 | 15 | 3625 SH | SHARED | | 3625 | |
| D | ALTAIR NANOTECHNOLOGIES INC | COM | 02137310 | 5156 | 1218992 SH | SHARED | 04 | 1218992 | |
| D | ALTAIR NANOTECHNOLOGIES INC | COM | 02137310 | 6334 | 1497441 SH | SHARED | 05 | 1497441 | |
| D | ALTAIR NANOTECHNOLOGIES INC | COM | 02137310 | 211 | 49953 SH | SHARED | 06 | | 49953 |
| D | ALTAIR NANOTECHNOLOGIES INC | COM | 02137310 | 176 | 41662 SH | SHARED | 10 | 41662 | |
| D | ALTERA CORP | COM | 02144110 | 8465 | 438164 SH | SHARED | | 438164 | |
| D | ALTERA CORP | COM | 02144110 | 717 | 37150 SH | SHARED | 01 | 37150 | |
| D | ALTERA CORP | COM | 02144110 | 284 | 14750 SH | SHARED | 02 | 14750 | |
| D | ALTERA CORP | COM | 02144110 | 3 | 160 SH | SHARED | 05 | 160 | |
| D | ALTERA CORP | COM | 02144110 | 87 | 4520 SH | SHARED | 06 | | 4520 |
| D | ALTERA CORP | COM | 02144110 | 2564 | 132752 SH | SHARED | 10 | 132752 | |
| D | ALTERA CORP | COM | 02144110 | 289 | 15000 SH | SHARED | 20 | 15000 | |
| D | ALTIGEN COMMUNICATIONS INC | COM | 02148910 | 0 | 371 SH | SHARED | | 371 | |
| D | ALTERNATIVE ASSET MGMT ACQU | COM | 02149U10 | 8200 | 896209 SH | SHARED | | 896209 | |
| D | ALTERNATIVE ASSET MGMT ACQU | COM | 02149U10 | 15 | 1700 SH | SHARED | 02 | 1700 | |
| D | ALTERNATIVE ASSET MGMT ACQU | *W EXP 08/01/201 | 02149U11 | 123 | 95013 SH | SHARED | | 95013 | |
| D | ALTERNATIVE ASSET MGMT ACQU | UNIT 07/01/2012 | 02149U20 | 1612 | 155000 SH | SHARED | | 155000 | |
| D | ALTRA HOLDINGS INC | COM | 02208R10 | 16 | 985 SH | SHARED | | 985 | |
| D | ALTRIA GROUP INC | COM | 02209S10 | 105 | 1400 SH | SHARED | | 1400 | |
| D | ALTRIA GROUP INC | COM | 02209S10 | 1635210 | 21635488 SH | SHARED | | 1373696 | 261785 |
| D | ALTRIA GROUP INC | COM | 02209S10 | 32490 | 429883 SH | SHARED | 01 | 322348 | 107535 |
| D | ALTRIA GROUP INC | COM | 02209S10 | 163180 | 2159045 SH | SHR/OTHR | 01 | | 2159045 |
| D | ALTRIA GROUP INC | COM | 02209S10 | 177657 | 2350586 SH | SHARED | 02 | 2350586 | |
| D | ALTRIA GROUP INC | COM | 02209S10 | 88 | 1176 SH | SHARED | 04 | | 1176 |
| D | ALTRIA GROUP INC | COM | 02209S10 | 226890 | 3001991 SH | SHARED | 04 | 3001991 | |
| D | ALTRIA GROUP INC | COM | 02209S10 | 16300 | 215670 SH | SHARED | 05 | 215670 | |
| D | ALTRIA GROUP INC | COM | 02209S10 | 84982 | 1124405 SH | SHARED | 06 | | 1124405 |
| D | ALTRIA GROUP INC | COM | 02209S10 | 909195 | 12029574 SH | SHARED | 10 | 1846874 | 182700 |
| D | ALTRIA GROUP INC | COM | 02209S10 | 52 | 700 SH | SHR/OTHR | 10 | | 700 |
| D | ALTRIA GROUP INC | COM | 02209S10 | 5296 | 70083 SH | SHARED | 14 | 4000 | 66083 |
| D | ALTRIA GROUP INC | COM | 02209S10 | 11606 | 153560 SH | SHARED | 16 | 153560 | |
| D | ALTRIA GROUP INC | COM | 02209S10 | 2132 | 28216 SH | SHARED | 20 | 11866 | 16350 |
| D | ALTRIA GROUP INC | COM | 02209S10 | 2390 | 31626 SH | SHR/OTHR | 20 | | 31626 |
| D | ALTRIA GROUP INC | COM | 02209S10 | 246 | 3263 SH | SHARED | 21 | 3063 | 200 |
| D | ALTRIA GROUP INC | COM | 02209S10 | 347 | 4600 SH | SHARED | 22 | 4600 | |
| D | ALTRIA GROUP INC | COM | 02209S10 | 1950 | 25801 SH | SHARED | 23 | 23001 | 2800 |
| D | ALTRIA GROUP INC | COM | 02209S10 | 3094 | 40940 SH | SHR/OTHR | 23 | | 40940 |
| D | ALTUS PHARMACEUTICALS INC | COM | 02213N10 | 1 | 342 SH | SHARED | | 342 | |
| D | ALUMINA LTD | SPONSORED ADR | 02220S10 | 6 | 275 SH | SHARED | 21 | | 275 |
| D | ALUMINUM CORP CHINA LTD | SPON ADR H SHS | 02227610 | 489 | 9658 SH | SHARED | | 9658 | |
| D | ALYST ACQUISTION CORP | COM | 02263A10 | 803 | 111283 SH | SHARED | | 111283 | |
| D | ALYST ACQUISTION CORP | *W EXP 06/28/201 | 02263A11 | 41 | 79348 SH | SHARED | | 79348 | |
| D | ALYST ACQUISTION CORP | UNIT 99/99/9999 | 02263A20 | 3082 | 399800 SH | SHARED | | 399800 | |
| D | AMAZON COM INC | COM | 02313510 | 21 | 230 SH | SHARED | | 230 | |
| D | AMAZON COM INC | COM | 02313510 | 88117 | 951182 SH | SHARED | | 949582 | 1600 |
| D | AMAZON COM INC | COM | 02313510 | 3428 | 37013 SH | SHARED | 01 | 37013 | |
| D | AMAZON COM INC | COM | 02313510 | 10519 | 113551 SH | SHARED | 02 | 113551 | |
| D | AMAZON COM INC | COM | 02313510 | 6392 | 69000 SH | SHARED | 04 | 69000 | |
| D | AMAZON COM INC | COM | 02313510 | 13 | 150 SH | SHARED | 05 | 150 | |
| D | AMAZON COM INC | COM | 02313510 | 261 | 2820 SH | SHARED | 06 | | 2820 |
| D | AMAZON COM INC | COM | 02313510 | 12973 | 140040 SH | SHARED | 10 | 140040 | |
| D | AMAZON COM INC | COM | 02313510 | 148 | 1605 SH | SHARED | 14 | | 1605 |
| D | AMAZON COM INC | COM | 02313510 | 46 | 500 SH | SHARED | 20 | 500 | |
| D | AMBAC FINL GROUP INC | COM | 02313910 | 2858 | 110908 SH | SHARED | | 110908 | |
| D | AMBAC FINL GROUP INC | COM | 02313910 | 3650 | 141675 SH | SHARED | 01 | 135550 | 6125 |
| D | AMBAC FINL GROUP INC | COM | 02313910 | 138 | 5390 SH | SHR/OTHR | 01 | | 5390 |
| D | AMBAC FINL GROUP INC | COM | 02313910 | 4605 | 178724 SH | SHARED | 02 | 178724 | |
| D | AMBAC FINL GROUP INC | COM | 02313910 | 1 | 50 SH | SHARED | 05 | 50 | |
| D | AMBAC FINL GROUP INC | COM | 02313910 | 21 | 830 SH | SHARED | 06 | | 830 |
| D | AMBAC FINL GROUP INC | COM | 02313910 | 2422 | 94012 SH | SHARED | 10 | 94012 | |
| D | AMBAC FINL GROUP INC | COM | 02313910 | 28 | 1100 SH | SHARED | 14 | | 1100 |
| D | AMBAC FINL GROUP INC | COM | 02313910 | 598 | 23206 SH | SHARED | 20 | 19995 | 3211 |
| D | AMBAC FINL GROUP INC | COM | 02313910 | 250 | 9740 SH | SHR/OTHR | 20 | | 9740 |
| D | AMBAC FINL GROUP INC | COM | 02313910 | 274 | 10650 SH | SHARED | 23 | 1720 | 8930 |
| D | AMBAC FINL GROUP INC | COM | 02313910 | 5 | 200 SH | SHR/OTHR | 23 | | 200 |
| D | AMBASSADORS GROUP INC | COM | 02317710 | 95 | 5243 SH | SHARED | | 5243 | |
| D | AMCON DISTRG CO | COM NEW | 02341Q20 | 0 | 9 SH | SHARED | | 9 | |
| D | AMCOL INTL CORP | COM | 02341W10 | 223 | 6199 SH | SHARED | | 6199 | |

| | Name | Type | CUSIP | Value | Shares | SH/PRN | Authority | Code | Shared | Other |
|---|---|---|---|---|---|---|---|---|---|---|
| D | AMCOL INTL CORP | COM | 02341W10 | 176 | 4900 | SH | SHARED | 01 | 4900 | |
| D | AMCOL INTL CORP | COM | 02341W10 | 475 | 13200 | SH | SHARED | 10 | 13200 | |
| D | AMCOMP INC | COM | 02342J10 | 5 | 608 | SH | SHARED | | 608 | |
| D | AMCOMP INC | COM | 02342J10 | 494 | 52850 | SH | SHARED | 10 | 52850 | |
| D | AMDOCS LTD | NOTE 0.500% 3/1 | 02342TQ0 | 3556 | 3500000 | PRN | SHARED | | 3500000 | |
| D | AMEDISYS INC | COM | 02343610 | 174 | 3600 | SH | SHARED | | 3600 | |
| D | AMEDISYS INC | COM | 02343610 | 1946 | 40109 | SH | SHARED | 01 | 39709 | 400 |
| D | AMEDISYS INC | COM | 02343610 | 1989 | 41000 | SH | SHR/OTHR | 01 | | 41000 |
| D | AMEDISYS INC | COM | 02343610 | 24520 | 505362 | SH | SHARED | 10 | 505362 | |
| D | AMEN PPTYS INC | COM NEW | 02347720 | 0 | 88 | SH | SHARED | | 88 | |
| D | AMERCO | COM | 02358610 | 14449 | 220000 | SH | SHARED | | 220000 | |
| D | AMERCO | COM | 02358610 | 96 | 1475 | SH | SHARED | 01 | 1475 | |
| D | AMERCO | COM | 02358610 | 384 | 5850 | SH | SHARED | 02 | 5850 | |
| D | AMERCO | COM | 02358610 | 288 | 4400 | SH | SHARED | 10 | 4400 | |
| D | AMEREN CORP | COM | 02360810 | 11034 | 203546 | SH | SHARED | | 203546 | |
| D | AMEREN CORP | COM | 02360810 | 934 | 17247 | SH | SHARED | 01 | 17247 | |
| D | AMEREN CORP | COM | 02360810 | 368 | 6794 | SH | SHARED | 02 | 6794 | |
| D | AMEREN CORP | COM | 02360810 | 5 | 100 | SH | SHARED | 05 | 100 | |
| D | AMEREN CORP | COM | 02360810 | 87 | 1620 | SH | SHARED | 06 | | 1620 |
| D | AMEREN CORP | COM | 02360810 | 6604 | 121824 | SH | SHARED | 10 | 121824 | |
| D | AMEREN CORP | COM | 02360810 | 174 | 3221 | SH | SHARED | 21 | 1006 | 2215 |
| D | AMERIANA BANCORP | COM | 02361310 | 0 | 78 | SH | SHARED | | 78 | |
| D | AMERICA SVC GROUP INC | COM | 02364W10 | 375 | 51241 | SH | SHARED | | 51241 | |
| D | AMERICA MOVIL SAB DE CV | SPON ADR L SHS | 02364W10 | 263 | 4300 | SH | SHARED | | | 4300 |
| D | AMERICA MOVIL SAB DE CV | SPON ADR L SHS | 02364W10 | 31381 | 511179 | SH | SHARED | | 511179 | |
| D | AMERICA MOVIL SAB DE CV | SPON ADR L SHS | 02364W10 | 20196 | 328991 | SH | SHARED | 01 | 327691 | 1300 |
| D | AMERICA MOVIL SAB DE CV | SPON ADR L SHS | 02364W10 | 6 | 100 | SH | SHARED | 02 | 100 | |
| D | AMERICA MOVIL SAB DE CV | SPON ADR L SHS | 02364W10 | 32463 | 528800 | SH | SHARED | 04 | 528800 | |
| D | AMERICA MOVIL SAB DE CV | SPON ADR L SHS | 02364W10 | 3069 | 50000 | SH | SHARED | 06 | | 50000 |
| D | AMERICA MOVIL SAB DE CV | SPON ADR L SHS | 02364W10 | 206313 | 3360700 | SH | SHARED | | 3360700 | |
| D | AMERICA MOVIL SAB DE CV | SPON ADR L SHS | 02364W10 | 221 | 3600 | SH | SHARED | 20 | 3600 | |
| D | AMERICA MOVIL SAB DE CV | SPON ADR L SHS | 02364W10 | 217 | 3535 | SH | SHARED | 21 | 910 | 2625 |
| D | AMERICA MOVIL SAB DE CV | SPON ADR L SHS | 02364W10 | 184 | 3000 | SH | SHR/OTHR | 22 | | 3000 |
| D | AMERICA MOVIL SAB DE CV | SPON ADR L SHS | 02364W10 | 3738 | 60900 | SH | SHARED | 24 | 60900 | |
| D | AMERICAN APPAREL INC | COM | 02385010 | 7 | 520 | SH | SHARED | | 520 | |
| D | AMERICAN APPAREL INC | COM | 02385010 | 40 | 2700 | SH | SHARED | 02 | 2700 | |
| D | AMERICAN APPAREL INC | *W EXP 12/14/200 | 02385011 | 900 | 100000 | SH | SHARED | | 100000 | |
| D | AMCORE FINL INC | COM | 02391210 | 19 | 855 | SH | SHARED | | 855 | |
| D | AMCORE FINL INC | COM | 02391210 | 2 | 100 | SH | SHARED | | 100 | |
| D | AMCORE FINL INC | COM | 02391210 | 217 | 9600 | SH | SHARED | 10 | 9600 | |
| D | AMERICAN AXLE & MFG HLDGS IN | COM | 02406110 | 746 | 40116 | SH | SHARED | | 40116 | |
| D | AMERICAN AXLE & MFG HLDGS IN | COM | 02406110 | 27 | 1500 | SH | SHARED | 01 | 1500 | |
| D | AMERICAN AXLE & MFG HLDGS IN | COM | 02406110 | 2009 | 107937 | SH | SHARED | 02 | 107937 | |
| D | AMERICAN AXLE & MFG HLDGS IN | COM | 02406110 | 931 | 50000 | SH | SHARED | 04 | 50000 | |
| D | AMERICAN AXLE & MFG HLDGS IN | COM | 02406110 | 3975 | 213500 | SH | SHARED | 10 | 213500 | |
| D | AMERICAN BANCORP N J INC | COM | 02459110 | 6 | 690 | SH | SHARED | | 690 | |
| D | AMERICAN BILTRITE INC | COM | 02460010 | 0 | 40 | SH | SHARED | | 40 | |
| D | AMER BIO MEDICA CORP | COM | 02460010 | 0 | 473 | SH | SHARED | | 473 | |
| D | AMERICAN CAMPUS CMNTYS INC | COM | 02483510 | 0 | 4 | SH | SHARED | | 4 | |
| D | AMERICAN CAMPUS CMNTYS INC | COM | 02483510 | 4 | 185 | SH | SHARED | 01 | 185 | |
| D | AMERICAN CAMPUS CMNTYS INC | COM | 02483510 | 7029 | 261800 | SH | SHARED | 10 | 261800 | |
| D | AMERICAN CAMPUS CMNTYS INC | COM | 02483510 | 7429 | 276704 | SH | SHARED | 11 | 527670 | 276704 |
| D | AMERICAN CAPITAL STRATEGIES | COM | 02493710 | 17392 | 527670 | SH | SHARED | | 527670 | |
| D | AMERICAN CAPITAL STRATEGIES | COM | 02493710 | 1492 | 45277 | SH | SHARED | 01 | 35112 | 10165 |
| D | AMERICAN CAPITAL STRATEGIES | COM | 02493710 | 200 | 6075 | SH | SHR/OTHR | 01 | | 6075 |
| D | AMERICAN CAPITAL STRATEGIES | COM | 02493710 | 377 | 11452 | SH | SHARED | 02 | 11452 | |
| D | AMERICAN CAPITAL STRATEGIES | COM | 02493710 | 4049 | 122869 | SH | SHARED | 10 | 122869 | |
| D | AMERICAN CAPITAL STRATEGIES | COM | 02493710 | 207 | 6300 | SH | SHARED | 14 | 6300 | 6300 |
| D | AMERICAN CAPITAL STRATEGIES | COM | 02493710 | 62 | 1900 | SH | SHARED | 20 | 900 | 1000 |
| D | AMERICAN CAPITAL STRATEGIES | COM | 02493710 | 22 | 685 | SH | SHR/OTHR | 21 | | 685 |
| D | AMERICAN CAPITAL STRATEGIES | COM | 02493710 | 13 | 400 | SH | SHARED | 22 | 400 | |
| D | AMERICAN CAPITAL STRATEGIES | COM | 02493710 | 9 | 300 | SH | SHR/OTHR | 23 | | 300 |
| D | AMERICAN CARESOURCE HLDGS IN | COM | 02505A10 | 0 | 219 | SH | SHARED | | 219 | |
| D | AMERICAN CLAIMS EVALUATION I | COM | 02514410 | 0 | 30 | SH | SHARED | | 30 | |
| D | AMERICAN COMMERCIAL LINES | COM NEW | 02519520 | 228 | 14100 | SH | SHARED | | 14100 | |
| D | AMERICAN COMMERCIAL LINES | COM NEW | 02519520 | 105 | 6500 | SH | SHARED | 01 | 6500 | |
| D | AMERICAN COMMERCIAL LINES | COM NEW | 02519520 | 51 | 3200 | SH | SHARED | 10 | 3200 | |
| D | AMERICAN CMNTY PPTYS TR | COM | 02520N10 | 0 | 42 | SH | SHARED | | 42 | |
| D | AMERICAN CMNTY NEWSPAPERS IN | COM | 02520T10 | 0 | 278 | SH | SHARED | | 278 | |
| D | AMERICAN CMNTY BANCSHARES IN | COM | 02520W10 | 1 | 168 | SH | SHARED | | 168 | |
| D | AMERICAN DENTAL PARTNERS | COM | 02535310 | 55 | 5500 | SH | SHARED | | 5500 | |
| D | AMERICAN DENTAL PARTNERS | COM | 02535310 | 25 | 2500 | SH | SHARED | 01 | 2500 | |
| D | AMERICAN DENTAL PARTNERS | COM | 02535310 | 383 | 38200 | SH | SHARED | 10 | 38200 | |
| D | AMERICAN EAGLE OUTFITTERS NE | COM | 02553810 | 18767 | 903587 | SH | SHARED | | 903587 | |
| D | AMERICAN EAGLE OUTFITTERS NE | COM | 02553810 | 1452 | 69920 | SH | SHARED | 01 | 1870 | 68050 |
| D | AMERICAN EAGLE OUTFITTERS NE | COM | 02553810 | 576 | 27741 | SH | SHARED | 02 | 27741 | |
| D | AMERICAN EAGLE OUTFITTERS NE | COM | 02553810 | 21 | 1050 | SH | SHARED | 06 | | 1050 |
| D | AMERICAN EAGLE OUTFITTERS NE | COM | 02553810 | 328 | 15800 | SH | SHARED | 10 | 15800 | |
| D | AMERICAN EAGLE OUTFITTERS NE | COM | 02553810 | 217 | 10450 | SH | SHARED | 14 | 10450 | 10450 |
| D | AMERICAN ECOLOGY CORP | COM NEW | 02553340 | 19 | 823 | SH | SHARED | | 823 | |
| D | AMERICAN ECOLOGY CORP | COM NEW | 02553340 | 8928 | 380250 | SH | SHARED | 10 | 380250 | |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 319 | 6855 | SH | SHARED | | 6855 | |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 39158 | 841024 | SH | SHARED | | 839624 | 1400 |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 21898 | 470329 | SH | SHARED | 01 | 429984 | 40345 |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 1083 | 23271 | SH | SHR/OTHR | 01 | | 23271 |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 537 | 11551 | SH | SHARED | 02 | 11551 | |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 10 | 220 | SH | SHARED | 05 | 220 | |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 215 | 4630 | SH | SHARED | 06 | | 4630 |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 25208 | 541410 | SH | SHARED | 10 | 521740 | 19670 |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 185 | 3989 | SH | SHARED | 14 | 3989 | |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 88 | 1891 | SH | SHARED | 19 | 1891 | |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 1861 | 39990 | SH | SHARED | 20 | 32520 | 7470 |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 612 | 13165 | SH | SHARED | 21 | | 13165 |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 55 | 1200 | SH | SHARED | 21 | 1200 | |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 37 | 800 | SH | SHR/OTHR | 21 | | 800 |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 598 | 12860 | SH | SHARED | 22 | 12078 | 782 |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 33 | 729 | SH | SHR/OTHR | 22 | | 729 |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 1576 | 33870 | SH | SHARED | 23 | 32390 | 1480 |
| D | AMERICAN ELEC PWR INC | COM | 02553710 | 575 | 12363 | SH | SHR/OTHR | 23 | | 12363 |
| D | AMERICAN ELECTRIC TECH INC | COM | 02557610 | 0 | 100 | SH | SHARED | | 100 | |
| D | AMERICAN EQTY INVT LIFE HLD | NOTE 5.250%12/0 | 025676AE | 1874 | 2000000 | PRN | SHARED | | 2000000 | |
| D | AMERICAN EQTY INVT LIFE HLD | NOTE 5.250%12/0 | 025676AG | 9370 | 10000000 | PRN | SHARED | | 0000000 | |
| D | AMERICAN EQTY INVT LIFE HLD | COM | 02567620 | 10 | 1283 | SH | SHARED | | 1283 | |
| D | AMERICAN EQTY INVT LIFE HLD | COM | 02567620 | 104 | 12600 | SH | SHARED | 10 | 12600 | |
| D | AMERICAN EQTY INVT LIFE HLD | COM | 02567620 | 34 | 4143 | SH | SHARED | 21 | 4143 | |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 69 | 1335 | SH | SHARED | | 1335 | |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 138403 | 2660577 | SH | SHARED | | 2610615 | 49962 |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 12014 | 230962 | SH | SHARED | 01 | 163617 | 67345 |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 981 | 18875 | SH | SHR/OTHR | 01 | | 18875 |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 19109 | 367354 | SH | SHARED | 02 | 367354 | |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 39 | 750 | SH | SHARED | 03 | 750 | 750 |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 2210 | 42500 | SH | SHARED | 04 | 42500 | |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 23 | 450 | SH | SHARED | 04 | 450 | |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 563 | 10840 | SH | SHARED | 06 | | 10840 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | AMERICAN EXPRESS CO | COM | 02581610 | 52069 | 1000951 | SH | SHARED | 10 | 981251 | 19700 |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 728 | 13999 | SH | SHARED | 14 | | 13999 |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 47 | 920 | SH | SHARED | 19 | | 920 |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 2162 | 41571 | SH | SHARED | 20 | 12860 | 28711 |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 2213 | 42550 | SH | SHR/OTHR | 20 | | 42550 |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 877 | 16867 | SH | SHARED | 21 | 9637 | 7230 |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 29 | 560 | SH | SHARED | 21 | | 560 |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 247 | 4750 | SH | SHARED | 22 | 1600 | 3150 |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 192 | 3710 | SH | SHR/OTHR | 22 | | 3710 |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 1793 | 34482 | SH | SHARED | 23 | 30322 | 4160 |
| D | AMERICAN EXPRESS CO | COM | 02581610 | 8562 | 164608 | SH | SHR/OTHR | 23 | | 164608 |
| D | AMERICAN FINL GROUP INC OHIO | NOTE 1.486% 6/0 | 025932AD | 5939 | 11600000 | PRN | SHARED | | 1600000 | |
| D | AMERICAN FINL GROUP INC OHIO | NOTE 1.486% 6/0 | 025932AD | 269 | 527000 | PRN | SHARED | 02 | 527000 | |
| D | AMERICAN FINL GROUP INC OHIO | COM | 02593210 | 577 | 19991 | SH | SHARED | | 19991 | |
| D | AMERICAN FINL GROUP INC OHIO | COM | 02593210 | 1814 | 62833 | SH | SHARED | 01 | 33716 | 29117 |
| D | AMERICAN FINL GROUP INC OHIO | COM | 02593210 | 73 | 2545 | SH | SHR/OTHR | 01 | | 2545 |
| D | AMERICAN FINL GROUP INC OHIO | COM | 02593210 | 243 | 8444 | SH | SHARED | 02 | 8444 | |
| D | AMERICAN FINL GROUP INC OHIO | COM | 02593210 | 687 | 23800 | SH | SHARED | 10 | 23800 | |
| D | AMERICAN FINL GROUP INC OHIO | COM | 02593210 | 15 | 550 | SH | SHARED | 20 | 550 | |
| D | AMERICAN FINL GROUP INC OHIO | COM | 02593210 | 11 | 382 | SH | SHR/OTHR | 21 | | 382 |
| D | AMERICAN FINL GROUP INC OHIO | COM | 02593210 | 7 | 250 | SH | SHARED | 22 | 250 | |
| D | AMERICAN FINL RLTY TR | NOTE 4.375% 7/1 | 02607PAB | 10356 | 10600000 | PRN | SHARED | | 0600000 | |
| D | AMERICAN FINL RLTY TR | NOTE 4.375% 7/1 | 02607PAB | 2940 | 3010000 | PRN | SHARED | 02 | 3010000 | |
| D | AMERICAN FINL RLTY TR | COM | 02607P30 | 51157 | 6378711 | SH | SHARED | | 6378711 | |
| D | AMERICAN FINL RLTY TR | COM | 02607P30 | 136 | 17000 | SH | SHARED | 01 | 17000 | |
| D | AMERICAN FINL RLTY TR | COM | 02607P30 | 11366 | 1417300 | SH | SHARED | 10 | 1417300 | |
| D | AMERICAN FINL RLTY TR | COM | 02607P30 | 6878 | 857700 | SH | SHARED | 11 | | 857700 |
| D | AMERICAN GREETINGS CORP | CL A | 02637510 | 525 | 25896 | SH | SHARED | | 25896 | |
| D | AMERICAN GREETINGS CORP | CL A | 02637510 | 412 | 20300 | SH | SHARED | 01 | 2300 | 18000 |
| D | AMERICAN GREETINGS CORP | CL A | 02637510 | 160 | 7929 | SH | SHARED | 02 | 7929 | |
| D | AMERICAN GREETINGS CORP | CL A | 02637510 | 3377 | 166400 | SH | SHARED | 10 | 166400 | |
| D | AMERICAN GREETINGS CORP | CL A | 02637510 | 76 | 3750 | SH | SHR/OTHR | 20 | | 3750 |
| D | AMERICAN INDEPENDENCE CORP | COM NEW | 02676040 | 1 | 114 | SH | SHARED | | 114 | |
| D | AMERICAN INDEPENDENCE CORP | COM NEW | 02676040 | 11 | 1295 | SH | SHARED | 01 | 1295 | |
| D | AMERICAN INDEPENDENCE CORP | COM NEW | 02676040 | 1 | 150 | SH | SHARED | 02 | 150 | |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 2361 | 40500 | SH | SHARED | | 500 | 40000 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 255509 | 4382667 | SH | SHARED | | 4372667 | 10000 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 38452 | 659560 | SH | SHARED | 01 | 519582 | 139978 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 5401 | 92646 | SH | SHR/OTHR | 01 | | 92646 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 77698 | 1332728 | SH | SHARED | 02 | 1332728 | |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 47 | 820 | SH | SHARED | 04 | | 820 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 1166 | 20000 | SH | SHARED | 04 | 20000 | |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 54 | 939 | SH | SHARED | 05 | 939 | |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 1243 | 21329 | SH | SHARED | 06 | | 21329 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 115905 | 1988087 | SH | SHARED | 10 | 1938276 | 49811 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 78 | 1351 | SH | SHR/OTHR | 10 | | 1351 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 5130 | 87999 | SH | SHARED | 14 | | 87999 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 8140 | 139630 | SH | SHARED | 15 | | 139630 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 279 | 4800 | SH | SHARED | 19 | | 4800 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 9944 | 170573 | SH | SHARED | 20 | 60779 | 109794 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 4620 | 79259 | SH | SHR/OTHR | 20 | | 79259 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 908 | 15578 | SH | SHARED | 21 | 10408 | 5170 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 5 | 100 | SH | SHR/OTHR | 21 | | 100 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 312 | 5362 | SH | SHARED | 22 | 2019 | 3343 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 317 | 5439 | SH | SHR/OTHR | 22 | | 5439 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 5459 | 93653 | SH | SHARED | 23 | 84905 | 8748 |
| D | AMERICAN INTL GROUP INC | COM | 02687410 | 15546 | 266667 | SH | SHR/OTHR | 23 | | 266667 |
| D | AMERICAN LD LEASE INC | COM | 02711810 | 3305 | 166674 | SH | SHARED | | 166674 | |
| D | AMERICAN MED SYS HLDGS INC | NOTE 3.250% 7/0 | 02746MAA | 7902 | 8007000 | PRN | SHARED | | 8007000 | |
| D | AMERICAN MED SYS HLDGS INC | COM | 02744M10 | 49 | 3400 | SH | SHARED | 01 | 3400 | |
| D | AMERICAN MED SYS HLDGS INC | COM | 02744M10 | 52 | 3625 | SH | SHARED | 02 | 3625 | |
| D | AMERICAN MED SYS HLDGS INC | COM | 02744M10 | 49 | 3400 | SH | SHARED | 10 | 3400 | |
| D | AMERICAN MED SYS HLDGS INC | COM | 02744M10 | 1446 | 100000 | SH | SHARED | 15 | | 100000 |
| D | AMERICAN MOLD GUARD INC | COM | 02756E10 | 0 | 120 | SH | SHARED | | 120 | |
| D | AMERICAN MTG ACCEP CO | COM | 02756810 | 0 | 217 | SH | SHARED | | 217 | |
| D | AMERICAN NATL BANKSHARES INC | SH BEN INT | 02774510 | 2 | 141 | SH | SHARED | | 141 | |
| D | AMERICAN MED ALERT CORP | COM | 02790410 | 1 | 191 | SH | SHARED | | 191 | |
| D | AMERICAN NATL INS CO | COM | 02859110 | 41 | 344 | SH | SHARED | | 344 | |
| D | AMERICAN NATL INS CO | COM | 02859110 | 24 | 200 | SH | SHARED | 01 | 200 | |
| D | AMERICAN NATL INS CO | COM | 02859110 | 12 | 100 | SH | SHARED | 02 | 100 | |
| D | AMERICAN NATL INS CO | COM | 02859110 | 121 | 1000 | SH | SHARED | 10 | 1000 | |
| D | AMERICAN OIL & GAS INC NEW | COM | 02872310 | 9 | 1582 | SH | SHARED | | 1582 | |
| D | AMERICAN OIL & GAS INC NEW | COM | 02872310 | 24 | 4300 | SH | SHARED | 02 | 4300 | |
| D | AMERICAN ORIENTAL BIOENGR IN | COM | 02873110 | 166 | 15000 | SH | SHARED | | 15000 | |
| D | AMERICAN ORIENTAL BIOENGR IN | COM | 02873110 | 16 | 1500 | SH | SHARED | 01 | 1500 | |
| D | AMERICAN ORIENTAL BIOENGR IN | COM | 02873110 | 15485 | 1397600 | SH | SHARED | 10 | 1397600 | |
| D | AMERICAN PAC CORP | COM | 02874010 | 3 | 178 | SH | SHARED | | 178 | |
| D | AMERICAN PHYSICIANS SVC GROU | COM | 02888210 | 3 | 166 | SH | SHARED | | 166 | |
| D | AMERICAN PHYSICIANS CAPITAL | COM | 02888410 | 106 | 2573 | SH | SHARED | | 2573 | |
| D | AMERICAN PHYSICIANS CAPITAL | COM | 02888410 | 53 | 1300 | SH | SHARED | 10 | 1300 | |
| D | AMERICAN RAILCAR INDS INC | COM | 02916P10 | 286 | 14901 | SH | SHARED | | 14901 | |
| D | AMERICAN RAILCAR INDS INC | COM | 02916P10 | 30 | 1600 | SH | SHARED | 01 | 1600 | |
| D | AMERICAN RAILCAR INDS INC | COM | 02916P10 | 773 | 40200 | SH | SHARED | 10 | 40200 | |
| D | AMERICAN RLTY INVS INC | COM | 02916P10 | 29 | 3037 | SH | SHARED | | 3037 | |
| D | AMERICAN REPROGRAPHICS CO | COM | 02926310 | 416 | 25270 | SH | SHARED | | 25270 | |
| D | AMERICAN REPROGRAPHICS CO | COM | 02926310 | 6 | 377 | SH | SHARED | 21 | | 377 |
| D | AMERICAN RIVER BANKSHARES | COM | 02932610 | 2 | 155 | SH | SHARED | | 155 | |
| D | AMERICAN SCIENCE & ENGR INC | COM | 02942910 | 171 | 3024 | SH | SHARED | | 3024 | |
| D | AMERICAN SHARED HOSPITAL SVC | COM | 02959510 | 0 | 105 | SH | SHARED | | 105 | |
| D | AMERICAN SOFTWARE INC | CL A | 02968310 | 21 | 2478 | SH | SHARED | | 2478 | |
| D | AMERICAN SOFTWARE INC | CL A | 02968310 | 25 | 3000 | SH | SHARED | 02 | 3000 | |
| D | AMERICAN SPECTRUM REALTY INC | COM NEW | 02970Q20 | 0 | 22 | SH | SHARED | | 22 | |
| D | AMERICAN STS WTR CO | COM | 02989910 | 134 | 3561 | SH | SHARED | | 3561 | |
| D | AMERICAN STS WTR CO | COM | 02989910 | 8 | 225 | SH | SHARED | 01 | 225 | |
| D | AMERICAN STS WTR CO | COM | 02989910 | 109 | 2900 | SH | SHARED | 02 | 2900 | |
| D | AMERICAN STS WTR CO | COM | 02989910 | 817 | 21700 | SH | SHARED | 10 | 21700 | |
| D | AMERICAN TOWER CORP | NOTE 5.000% 2/1 | 029912AF | 4990 | 5000000 | PRN | SHARED | 02 | 5000000 | |
| D | AMERICAN TOWER CORP | NOTE 3.250% 8/0 | 029912AX | 3508 | 1000000 | PRN | SHARED | | 1000000 | |
| D | AMERICAN TOWER CORP | NOTE 3.250% 8/0 | 029912AK | 3841 | 1095000 | PRN | SHARED | | 1095000 | |
| D | AMERICAN TOWER CORP | NOTE 3.000% 8/1 | 029912AR | 8526 | 4022000 | PRN | SHARED | | 4022000 | |
| D | AMERICAN TOWER CORP | NOTE 3.000% 8/1 | 029912AM | 1424 | 672000 | PRN | SHARED | 02 | 672000 | |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 2071 | 48621 | SH | SHARED | | 35907 | 12714 |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 25036 | 587715 | SH | SHARED | | 587715 | |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 14530 | 341095 | SH | SHARED | 01 | 217713 | 123382 |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 2634 | 61848 | SH | SHR/OTHR | 01 | | 61848 |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 5260 | 123493 | SH | SHARED | 02 | 123493 | |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 452 | 10624 | SH | SHARED | 04 | | 10624 |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 8946 | 210000 | SH | SHARED | 04 | 210000 | |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 866 | 20330 | SH | SHARED | 05 | | 20330 |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 11242 | 263900 | SH | SHARED | 06 | | 263900 |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 40982 | 962030 | SH | SHARED | 10 | 934855 | 27175 |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 3774 | 88603 | SH | SHARED | 19 | | 88603 |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 2194 | 51515 | SH | SHARED | 20 | 28515 | 23000 |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 578 | 13575 | SH | SHR/OTHR | 20 | | 13575 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | AMERICAN TOWER CORP | CL A | 02991220 | 45 | 1070 SH | SHARED | 21 | | 1070 | |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 747 | 17545 SH | SHARED | 22 | | 11550 | 5995 |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 74 | 1750 SH | SHR/OTHR | 22 | | | 1750 |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 1904 | 44712 SH | SHARED | 23 | | 37787 | 6925 |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 889 | 20874 SH | SHR/OTHR | 23 | | | 20874 |
| D | AMERICAN TOWER CORP | CL A | 02991220 | 34 | 800 SH | SHARED | 24 | | 800 | |
| D | AMERICAN STRATEGIC INCM PTFL | COM | 03009810 | 0 | 33 SH | SHARED | | | 33 | |
| D | AMERN STRATEGIC INCOME PTFL | COM | 03009910 | 1 | 122 SH | SHARED | | | 122 | |
| D | AMERICAN SUPERCONDUCTOR CORP | COM | 03011110 | 1183 | 43282 SH | SHARED | | | 43282 | |
| D | AMERICAN SUPERCONDUCTOR CORP | COM | 03011110 | 117 | 4300 SH | SHARED | 01 | | 4300 | |
| D | AMERICAN SUPERCONDUCTOR CORP | COM | 03011110 | 1764 | 64556 SH | SHARED | 02 | | 64556 | |
| D | AMERICAN SUPERCONDUCTOR CORP | COM | 03011110 | 6862 | 251000 SH | SHARED | 04 | | 251000 | |
| D | AMERICAN SUPERCONDUCTOR CORP | COM | 03011110 | 814 | 29809 SH | SHARED | 05 | | 29809 | |
| D | AMERICAN SUPERCONDUCTOR CORP | COM | 03011110 | 421 | 15400 SH | SHARED | 06 | | | 15400 |
| D | AMERICAN SUPERCONDUCTOR CORP | COM | 03011110 | 382 | 14000 SH | SHARED | 14 | | 14000 | |
| D | AMERICAN TECHNOLOGY CORP | COM NEW | 03014520 | 1 | 685 SH | SHARED | | | 685 | |
| D | AMERICAN TELECOM SVCS INC | COM | 03015P10 | 0 | 141 SH | SHARED | | | 141 | |
| D | AMERICAN VANGUARD CORP | COM | 03037110 | 128 | 7398 SH | SHARED | | | 7398 | |
| D | AMERICAN WOODMARK CORP | COM | 03050610 | 132 | 7300 SH | SHARED | 10 | | 7300 | |
| D | AMERIWEST BANCORPORATION | COM | 03058P10 | 14 | 840 SH | SHARED | | | 840 | |
| D | AMERICANWEST BANCORPORATION | COM | 03058P10 | 6175 | 350300 SH | SHARED | 10 | | 350300 | |
| D | AMERICREDIT CORP | NOTE 1.750%11/1 | 03060RAM | 3804 | 4000000 PRN | SHARED | | | 4000000 | |
| D | AMERICREDIT CORP | NOTE 1.750%11/1 | 03060RAM | 1497 | 1575000 PRN | SHARED | 02 | | 1575000 | |
| D | AMERICREDIT CORP | NOTE 0.750% 9/1 | 03060RAP | 3550 | 5000000 PRN | SHARED | | | 5000000 | |
| D | AMERICREDIT CORP | NOTE 0.750% 9/1 | 03060RAP | 8771 | 12354000 PRN | SHARED | 02 | | 2354000 | |
| D | AMERICREDIT CORP | NOTE 2.125% 9/1 | 03060RAP | 3300 | 5000000 PRN | SHARED | | | 5000000 | |
| D | AMERICREDIT CORP | COM | 03060R10 | 16469 | 1287691 SH | SHARED | | | 1287691 | |
| D | AMERICREDIT CORP | COM | 03060R10 | 1402 | 109665 SH | SHARED | 01 | | 68665 | 41000 |
| D | AMERICREDIT CORP | COM | 03060R10 | 69 | 5407 SH | SHARED | 02 | | 5407 | |
| D | AMERICREDIT CORP | COM | 03060R10 | 226 | 17700 SH | SHARED | 10 | | 10300 | 7400 |
| D | AMERICREDIT CORP | COM | 03060R10 | 30 | 2377 SH | SHARED | 14 | | 2377 | |
| D | AMERICREDIT CORP | COM | 03060R10 | 3 | 250 SH | SHARED | 20 | | 250 | |
| D | AMERICASBANK CORP | COM NEW | 03061G30 | 0 | 63 SH | SHARED | | | 63 | |
| D | AMERICAS CAR MART INC | COM | 03062T10 | 14 | 1187 SH | SHARED | | | 1187 | |
| D | AMERIGON INC | COM | 03070L30 | 95 | 4500 SH | SHARED | | | 4500 | |
| D | AMERISTAR CASINOS INC | COM | 03070Q10 | 2564 | 93136 SH | SHARED | | | 93136 | |
| D | AMERISTAR CASINOS INC | COM | 03070Q10 | 110 | 4000 SH | SHARED | 02 | | 4000 | |
| D | AMERISTAR CASINOS INC | COM | 03070Q10 | 103 | 3766 SH | SHARED | 14 | | 3766 | |
| D | AMERISAFE INC | COM | 03071H10 | 1 | 104 SH | SHARED | | | 104 | |
| D | AMERISAFE INC | COM | 03071H10 | 9297 | 599450 SH | SHARED | 10 | | 599450 | |
| D | AMERON INTL INC | COM | 03071I10 | 368 | 4000 SH | SHARED | 14 | | 4000 | |
| D | AMERISOURCEBERGEN CORP | COM | 03073E10 | 13299 | 296401 SH | SHARED | | | 296401 | |
| D | AMERISOURCEBERGEN CORP | COM | 03073E10 | 1444 | 32194 SH | SHARED | 01 | | 32194 | |
| D | AMERISOURCEBERGEN CORP | COM | 03073E10 | 128 | 2870 SH | SHARED | 02 | | 2870 | |
| D | AMERISOURCEBERGEN CORP | COM | 03073E10 | 5 | 130 SH | SHARED | 05 | | 130 | |
| D | AMERISOURCEBERGEN CORP | COM | 03073E10 | 82 | 1830 SH | SHARED | 06 | | | 1830 |
| D | AMERISOURCEBERGEN CORP | COM | 03073E10 | 6449 | 143730 SH | SHARED | 10 | | 143730 | |
| D | AMERISOURCEBERGEN CORP | COM | 03073E10 | 155 | 3474 SH | SHARED | 14 | | 3474 | |
| D | AMERIGROUP CORP | NOTE 2.000% 5/1 | 03073TAB | 2182 | 2000000 PRN | SHARED | | | 2000000 | |
| D | AMERIGROUP CORP | COM | 03073T10 | 3051 | 83710 SH | SHARED | | | 83710 | |
| D | AMERIGROUP CORP | COM | 03073T10 | 301 | 8265 SH | SHARED | 01 | | 6445 | 1820 |
| D | AMERIGROUP CORP | COM | 03073T10 | 18943 | 519700 SH | SHARED | 10 | | 519700 | |
| D | AMERITYRE CORP | COM | 03073V10 | 0 | 555 SH | SHARED | | | 555 | |
| D | AMERISERV FINL INC | COM | 03074A10 | 1 | 489 SH | SHARED | | | 489 | |
| D | AMERISERV FINL INC | COM | 03074A10 | 5 | 2000 SH | SHARED | 01 | | 2000 | |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 38 | 702 SH | SHARED | | | 702 | |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 20059 | 363985 SH | SHARED | | | 363953 | 32 |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 2518 | 45697 SH | SHARED | 01 | | 40287 | 5410 |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 7 | 130 SH | SHR/OTHR | 01 | | | 130 |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 3399 | 61691 SH | SHARED | 02 | | 61691 | |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 6 | 120 SH | SHARED | 05 | | 120 | |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 102 | 1868 SH | SHARED | 06 | | | 1868 |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 27860 | 505549 SH | SHARED | 10 | | 433749 | 71800 |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 300 | 5457 SH | SHARED | 14 | | 5457 | |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 6 | 120 SH | SHARED | 19 | | 120 | |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 101 | 1841 SH | SHARED | 20 | 80 | | 1761 |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 131 | 2380 SH | SHR/OTHR | 20 | | | 2380 |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 16 | 305 SH | SHARED | 21 | 80 | | 225 |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 5 | 100 SH | SHARED | 22 | | | 100 |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 22 | 400 SH | SHR/OTHR | 22 | | | 400 |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 60 | 1092 SH | SHARED | 22 | | | 1092 |
| D | AMERIPRISE FINL INC | COM | 03076C10 | 731 | 13266 SH | SHR/OTHR | 23 | 420 | | 13266 |
| D | AMERIS BANCORP | COM | 03076K10 | 14 | 849 SH | SHARED | | | 849 | |
| D | AMERIGAS PARTNERS L P | UNIT L P INT | 03097510 | 31 | 862 SH | SHARED | | | 862 | |
| D | AMES NATL CORP | COM | 03100110 | 3 | 168 SH | SHARED | | | 168 | |
| D | AMETEK INC NEW | COM | 03110010 | 3642 | 77762 SH | SHARED | | | 54674 | 23088 |
| D | AMETEK INC NEW | COM | 03110010 | 659 | 14084 SH | SHARED | | | 14084 | |
| D | AMETEK INC NEW | COM | 03110010 | 23585 | 503535 SH | SHARED | 01 | | 288633 | 214902 |
| D | AMETEK INC NEW | COM | 03110010 | 7374 | 157432 SH | SHR/OTHR | 01 | | | 157432 |
| D | AMETEK INC NEW | COM | 03110010 | 677 | 14455 SH | SHARED | 02 | | 14455 | |
| D | AMETEK INC NEW | COM | 03110010 | 944 | 20156 SH | SHARED | 04 | | | 20156 |
| D | AMETEK INC NEW | COM | 03110010 | 2107 | 44990 SH | SHARED | 10 | | 41540 | 3450 |
| D | AMETEK INC NEW | COM | 03110010 | 7572 | 161658 SH | SHARED | 19 | | 161658 | |
| D | AMETEK INC NEW | COM | 03110010 | 3021 | 64517 SH | SHARED | 20 | | 36695 | 27822 |
| D | AMETEK INC NEW | COM | 03110010 | 675 | 14425 SH | SHR/OTHR | 20 | | | 14425 |
| D | AMETEK INC NEW | COM | 03110010 | 202 | 4316 SH | SHARED | 21 | | 4316 | |
| D | AMETEK INC NEW | COM | 03110010 | 18 | 400 SH | SHR/OTHR | 21 | | | 400 |
| D | AMETEK INC NEW | COM | 03110010 | 1730 | 36945 SH | SHARED | 22 | 29123 | | 7822 |
| D | AMETEK INC NEW | COM | 03110010 | 265 | 5674 SH | SHR/OTHR | 22 | | | 5674 |
| D | AMETEK INC NEW | COM | 03110010 | 5985 | 127776 SH | SHARED | 23 | | 105221 | 22555 |
| D | AMETEK INC NEW | COM | 03110010 | 2869 | 61255 SH | SHR/OTHR | 23 | | | 61255 |
| D | AMGEN INC | NOTE 3/0 | 03116 2AE | 5 | 8000 PRN | SHARED | 23 | | 8000 | |
| D | AMGEN INC | NOTE 3/0 | 03116 2AL | 97 | 150000 PRN | SHARED | 01 | | | 150000 |
| D | AMGEN INC | NOTE 0.125% 2/0 | 03116 2AN | 13665 | 15000000 PRN | SHARED | | | 5000000 | |
| D | AMGEN INC | NOTE 0.125% 2/0 | 03116 2AN | 10886 | 11950000 PRN | SHARED | 02 | | 1950000 | |
| D | AMGEN INC | NOTE 0.125% 2/0 | 03116 2AN | 61037 | 67000000 PRN | SHARED | 04 | | 7000000 | |
| D | AMGEN INC | NOTE 0.375% 2/0 | 03116 2AQ | 3863 | 4400000 PRN | SHARED | | | 4400000 | |
| D | AMGEN INC | NOTE 0.375% 2/0 | 03116 2AQ | 1909 | 2175000 PRN | SHARED | | | 2175000 | |
| D | AMGEN INC | COM | 03116 210 | 376 | 8116 SH | SHARED | | | | 8116 |
| D | AMGEN INC | COM | 03116 210 | 218753 | 4710462 SH | SHARED | | | 4704122 | 6340 |
| D | AMGEN INC | COM | 03116 210 | 10397 | 223896 SH | SHARED | 01 | | 198151 | 25745 |
| D | AMGEN INC | COM | 03116 210 | 465 | 10025 SH | SHR/OTHR | 01 | | | 10025 |
| D | AMGEN INC | COM | 03116 210 | 26205 | 564296 SH | SHARED | 02 | | 564296 | |
| D | AMGEN INC | COM | 03116 210 | 193424 | 4165037 SH | SHARED | 04 | | 4165037 | |
| D | AMGEN INC | COM | 03116 210 | 23 | 510 SH | SHARED | 05 | | 510 | |
| D | AMGEN INC | COM | 03116 210 | 18797 | 404760 SH | SHARED | 06 | | | 404760 |
| D | AMGEN INC | COM | 03116 210 | 131123 | 2823500 SH | SHARED | 10 | | 2712900 | 110600 |
| D | AMGEN INC | COM | 03116 210 | 4991 | 107490 SH | SHARED | 14 | | 31500 | 75990 |
| D | AMGEN INC | COM | 03116 210 | 3709 | 79869 SH | SHARED | 16 | | 79869 | |
| D | AMGEN INC | COM | 03116 210 | 18 | 400 SH | SHARED | 19 | | | 400 |
| D | AMGEN INC | COM | 03116 210 | 1873 | 40340 SH | SHARED | 20 | 7780 | | 32560 |
| D | AMGEN INC | COM | 03116 210 | 308 | 6645 SH | SHR/OTHR | 20 | | | 6645 |
| D | AMGEN INC | COM | 03116 210 | 27 | 590 SH | SHARED | 21 | | | 590 |
| D | AMGEN INC | COM | 03116 210 | 178 | 3850 SH | SHARED | 22 | 1000 | | 2850 |

```
D AMGEN INC                       COM              03116210      179      3855 SH    SHR/OTHR   22             3855
D AMGEN INC                       COM              03116210      784     16883 SH    SHARED     23    12403    4480
D AMGEN INC                       COM              03116210     1175     25303 SH    SHR/OTHR   23            25303
D AMICUS THERAPEUTICS INC         COM              03152N10        0        63 SH    SHARED                     63
D AMIS HLDGS INC                  COM              03153810      251     25100 SH    SHARED                   25100
D AMIS HLDGS INC                  COM              03153810       31      3100 SH    SHARED     01     3100
D AMIS HLDGS INC                  COM              03153810      268     26800 SH    SHARED     10    26800
D AMKOR TECHNOLOGY INC            NOTE  2.500% 5/1 031652AX     5737   6250000 PRN   SHARED          6250000
D AMKOR TECHNOLOGY INC            NOTE  2.500% 5/1 031652AX     4627   5041000 PRN   SHARED     02   5041000
D AMKOR TECHNOLOGY INC            COM              03165210      254     29801 SH    SHARED                   29801
D AMKOR TECHNOLOGY INC            COM              03165210      119     14045 SH    SHARED     01     6445    7600
D AMKOR TECHNOLOGY INC            COM              03165210        0       100 SH    SHARED     02      100
D AMKOR TECHNOLOGY INC            COM              03165210     6591    772690 SH    SHARED     10   772690
D AMPAL AMERN ISRAEL CORP         CL A             03201L10      126     17137 SH    SHARED                   17137
D AMPCO-PITTSBURGH CORP           COM              03203710      110      2890 SH    SHARED                    2890
D AMPCO-PITTSBURGH CORP           COM              03203710      224      5900 SH    SHARED     10     5900
D AMPEX CORP DEL                  CL A NEW         03209230        0        74 SH    SHARED                      74
D AMPHENOL CORP NEW               CL A             03209510     2441     52651 SH    SHARED                   52651
D AMPHENOL CORP NEW               CL A             03209510     2662     57420 SH    SHARED     01     4620   52800
D AMPHENOL CORP NEW               CL A             03209510     1113     24015 SH    SHARED     02    24015
D AMPHENOL CORP NEW               CL A             03209510       76      1640 SH    SHARED     06             1640
D AMPHENOL CORP NEW               CL A             03209510      287      6200 SH    SHARED     10     6200
D AMPHENOL CORP NEW               CL A             03209510       11       252 SH    SHARED     21      252      252
D AMPHENOL CORP NEW               CL A             03209510     1446     31200 SH    SHARED     23     6000   25200
D AMREIT                          CL A             03215810      986    137781 SH    SHARED                  137781
D AMREP CORP NEW                  COM              03215910        5       183 SH    SHARED                     183
D AMREP CORP NEW                  COM              03215910        2        78 SH    SHARED     02       78
D AMSURG CORP                     COM              03232P40     9242    341540 SH    SHARED                  341540
D AMSURG CORP                     COM              03232P40      192      7100 SH    SHARED     02     7100
D AMSURG CORP                     COM              03232P40     1371     50700 SH    SHARED     10    50700
D AMTECH SYS INC                  COM PAR $0.01N   03233250        4       311 SH    SHARED                     311
D AMYLIN PHARMACEUTICALS INC      NOTE  2.500% 4/1 032346AD      315    250000 PRN   SHARED           250000
D AMYLIN PHARMACEUTICALS INC      NOTE  3.000% 6/1 032346AE       94    100000 PRN   SHARED           100000
D AMYLIN PHARMACEUTICALS INC      NOTE  3.000% 6/1 032346AF    13174  14000000 PRN   SHARED     04  4000000
D AMYLIN PHARMACEUTICALS INC      COM              03234610      907     24520 SH    SHARED                   24520
D AMYLIN PHARMACEUTICALS INC      COM              03234610      375     10145 SH    SHARED     01     9895      250
D AMYLIN PHARMACEUTICALS INC      COM              03234610     6239    168623 SH    SHARED     02   168623
D AMYLIN PHARMACEUTICALS INC      COM              03234610    28321    765447 SH    SHARED     04   765447
D AMYLIN PHARMACEUTICALS INC      COM              03234610       22       600 SH    SHARED     06              600
D AMYLIN PHARMACEUTICALS INC      COM              03234610      945     25566 SH    SHARED     10    25566
D AMYLIN PHARMACEUTICALS INC      COM              03234610       22       600 SH    SHARED     14      600
D AMYLIN PHARMACEUTICALS INC      COM              03234610       46      1268 SH    SHARED     21             1268
D AMTRUST FINANCIAL SERVICES I    COM              03235930      120      8771 SH    SHARED                    8771
D AMTRUST FINANCIAL SERVICES I    COM              03235930       79      5800 SH    SHARED     01     5800
D AMTRUST FINANCIAL SERVICES I    COM              03235930      912     66300 SH    SHARED     10    66300
D ANADARKO PETE CORP              COM              03251110   119052   1812344 SH    SHARED                 1812344
D ANADARKO PETE CORP              COM              03251110     3791     57711 SH    SHARED     01    50280     7431
D ANADARKO PETE CORP              COM              03251110     1107     16858 SH    SHR/OTHR   01            16858
D ANADARKO PETE CORP              COM              03251110     5392     82090 SH    SHARED     02    82090
D ANADARKO PETE CORP              COM              03251110     6897    105000 SH    SHARED     04   105000
D ANADARKO PETE CORP              COM              03251110     4614     70240 SH    SHARED     05    70240
D ANADARKO PETE CORP              COM              03251110      291      4430 SH    SHARED     06             4430
D ANADARKO PETE CORP              COM              03251110   380959   5799349 SH    SHARED     10          5799349
D ANADARKO PETE CORP              COM              03251110      473      7204 SH    SHARED     14             7204
D ANADARKO PETE CORP              COM              03251110      275      4195 SH    SHARED     20     2025     2170
D ANADARKO PETE CORP              COM              03251110      289      4400 SH    SHR/OTHR   20             4400
D ANADARKO PETE CORP              COM              03251110      447      6805 SH    SHARED     21             6805
D ANADARKO PETE CORP              COM              03251110      633      9650 SH    SHARED     22     5700     3950
D ANADARKO PETE CORP              COM              03251110     1350     20555 SH    SHARED     23    19955      600
D ANADARKO PETE CORP              COM              03251110     2228     33930 SH    SHR/OTHR   23            33930
D ANADIGICS INC                   COM              03251510     1804    155957 SH    SHARED                  155957
D ANADYS PHARMACEUTICALS INC      COM              03252Q40      354    219901 SH    SHARED                  219901
D ANALOG DEVICES INC              COM              03265410    21716    685069 SH    SHARED                  618469   66600
D ANALOG DEVICES INC              COM              03265410     2135     67370 SH    SHARED     01    67370
D ANALOG DEVICES INC              COM              03265410     1521     47994 SH    SHARED     02    47994
D ANALOG DEVICES INC              COM              03265410        8       260 SH    SHARED     05      260
D ANALOG DEVICES INC              COM              03265410      103      3250 SH    SHARED     06             3250
D ANALOG DEVICES INC              COM              03265410     8416    265503 SH    SHARED     10   265503
D ANALOG DEVICES INC              COM              03265410      140      4425 SH    SHARED     20      425     4000
D ANALOG DEVICES INC              COM              03265410       10       340 SH    SHR/OTHR   23              340
D ANALOGIC CORP                   COM              03265720       81      1200 SH    SHARED                    1200
D ANALOGIC CORP                   COM PAR $0.05    03265720       50       750 SH    SHARED     02      750
D ANALOGIC CORP                   COM PAR $0.05    03265720      243      3600 SH    SHARED     10     3600
D ANALYSTS INTL CORP              COM              03268110        1       654 SH    SHARED                     654
D ANAREN INC                      COM              03274410       18      1130 SH    SHARED                    1130
D ANAREN INC                      COM              03274410       14       900 SH    SHARED     01      900
D ANCHOR BANCORP WIS INC          COM              03283910      684     41500 SH    SHARED                   41500
D ANCHOR BANCORP WIS INC          COM              03283910      108      4628 SH    SHARED                    4628
D ANDERSONS INC                   COM              03416410      395     16800 SH    SHARED     10    16800
D ANDERSONS INC                   COM              03416410      179     19178 SH    SHARED                   19178
D ANDREW CORP                     NOTE  3.250% 8/1 034425AB     1839   1672000 PRN   SHARED     10   4000
D ANESIVA INC COM                 COM              03460L10        2       550 SH    SHARED          1672000
D ANGEION CORP                    COM              03462H40        1       106 SH    SHARED                     550
D ANGEION CORP                    COM              03462H40        8       925 SH    SHARED     02      106
D ANGELICA CORP                   COM              03466310        3       179 SH    SHARED                     925
D ANGIODYNAMICS INC               COM              03475V10       51      2692 SH    SHARED                     179
D ANGIODYNAMICS INC               COM              03475V10       41      2200 SH    SHARED     10     2692
D ANGLO AMERN PLC                 ADR NEW          03485P20    18738    616996 SH    SHARED                    2200
D ANGLO AMERN PLC                 ADR NEW          03485P20      497     16380 SH    SHARED     01   616996
D ANGLO AMERN PLC                 ADR NEW          03485P20     1080     35581 SH    SHARED     23            16380
D ANGLO AMERN PLC                 ADR NEW          03485P20      829     27300 SH    SHR/OTHR   23     8281    27300
D ANGIOTECH PHARMACEUTICALS IN    COM              03491810       91     26408 SH    SHARED                   26408
D ANGLOGOLD ASHANTI LTD           SPONSORED ADR    03512820     8786    205247 SH    SHARED                  205247
D ANGLOGOLD ASHANTI LTD           SPONSORED ADR    03512820      256      6000 SH    SHARED     01     6000
D ANGLOGOLD ASHANTI LTD           SPONSORED ADR    03512820     8952    209126 SH    SHARED     02   209126
D ANGLOGOLD ASHANTI LTD           SPONSORED ADR    03512820    11558    270000 SH    SHARED     10   270000
D ANGLOGOLD ASHANTI LTD           SPONSORED ADR    03512820        8       208 SH    SHARED     21      208
D ANGLOGOLD ASHANTI LTD           SPONSORED ADR    03512820      462     10800 SH    SHARED     23    10800
D ANGLOGOLD ASHANTI LTD           SPONSORED ADR    03512820      299      7000 SH    SHR/OTHR   23             7000
D ANHEUSER BUSCH COS INC          COM              03522910      109      2100 SH    SHARED                    2100
D ANHEUSER BUSCH COS INC          COM              03522910    60842   1162442 SH    SHARED                 1055812  106630
D ANHEUSER BUSCH COS INC          COM              03522910     6049    115590 SH    SHARED     01   108574     7016
D ANHEUSER BUSCH COS INC          COM              03522910      203      3882 SH    SHR/OTHR   01             3882
D ANHEUSER BUSCH COS INC          COM              03522910    27845    532019 SH    SHARED     02   532019
D ANHEUSER BUSCH COS INC          COM              03522910      178      3403 SH    SHARED     04             3403
D ANHEUSER BUSCH COS INC          COM              03522910       18       350 SH    SHARED     05      350
D ANHEUSER BUSCH COS INC          COM              03522910      356      6820 SH    SHARED     06             6820
D ANHEUSER BUSCH COS INC          COM              03522910    32819    627053 SH    SHARED     10   626653
D ANHEUSER BUSCH COS INC          COM              03522910       20       400 SH    SHR/OTHR   10              400
D ANHEUSER BUSCH COS INC          COM              03522910     1408     26918 SH    SHARED     14    26918
D ANHEUSER BUSCH COS INC          COM              03522910     1570     30000 SH    SHARED     15    30000
D ANHEUSER BUSCH COS INC          COM              03522910       41       800 SH    SHARED     19              800
D ANHEUSER BUSCH COS INC          COM              03522910     3243     61961 SH    SHARED     20     8650    53311
```

```
D ANHEUSER BUSCH COS INC      COM              03522910    4641    88679 SH    SHR/OTHR    20              88679
D ANHEUSER BUSCH COS INC      COM              03522910     189     3625 SH    SHARED      21     3300       325
D ANHEUSER BUSCH COS INC      COM              03522910    1623    31015 SH    SHARED      23    31015
D ANHEUSER BUSCH COS INC      COM              03522910    3022    57742 SH    SHR/OTHR    23             57742
D ANIMAL HEALTH INTL INC      COM              03525N10       1      102 SH    SHARED                        102
D ANIKA THERAPEUTICS INC      COM              03525510       5      395 SH    SHARED                        395
D ANIXTER INTL INC            NOTE  1.000% 2/1 035290AJ    2852  2500000 PRN   SHARED            2500000
D ANIXTER INTL INC            COM              03529010     126     2031 SH    SHARED                       2031
D ANIXTER INTL INC            COM              03529010    1296    20825 SH    SHARED      01    20700       125
D ANIXTER INTL INC            COM              03529010     996    16000 SH    SHR/OTHR    01             16000
D ANIXTER INTL INC            COM              03529010     273     4398 SH    SHARED      02     4398
D ANIXTER INTL INC            COM              03529010   37010   594350 SH    SHARED      10   594350
D ANNALY CAP MGMT INC         COM              03571040   16037   882173 SH    SHARED            882173
D ANNALY CAP MGMT INC         COM              03571040     815    44870 SH    SHARED      01    36870      8000
D ANNALY CAP MGMT INC         COM              03571040     223    12311 SH    SHARED      02    12311
D ANNALY CAP MGMT INC         COM              03571040     218    12000 SH    SHARED      10    12000
D ANNALY CAP MGMT INC         COM              03571040    6363   350000 SH    SHARED      11            350000
D ANNALY CAP MGMT INC         COM              03571040     137     7540 SH    SHR/OTHR    21              7540
D ANNALY CAP MGMT INC         COM              03571040      27     1500 SH    SHR/OTHR    23              1500
D ANNAPOLIS BANCORP INC       COM              03584810       0       60 SH    SHARED                         60
D ANNTAYLOR STORES CORP       COM              03611510   41281  1615065 SH    SHARED           1615065
D ANNTAYLOR STORES CORP       COM              03611510     546    21400 SH    SHARED      01             21400
D ANNTAYLOR STORES CORP       COM              03611510     265    10406 SH    SHARED      02    10406
D ANNTAYLOR STORES CORP       COM              03611510    1400    54800 SH    SHARED      10    39100     15700
D ANOORAQ RES CORP            COM              03633810      57    12500 SH    SHARED            12500
D ANSOFT CORP                 COM              03638410      38     1479 SH    SHARED             1479
D ANSOFT CORP                 COM              03638410     152     5900 SH    SHARED      10     5900
D ANSYS INC                   COM              03662Q10     601    14496 SH    SHARED            14496
D ANSYS INC                   COM              03662Q10     185     4470 SH    SHARED      01     4470
D ANSYS INC                   COM              03662Q10      55     1350 SH    SHARED      02     1350
D ANSYS INC                   COM              03662Q10    1272    30700 SH    SHARED      10    30700
D ANSYS INC                   COM              03662Q10      64     1562 SH    SHARED      21     1162       400
D ANSWERS CORP                COM              03662210       1      207 SH    SHARED              207
D ANTARES PHARMA INC          COM              03664210       1     1464 SH    SHARED             1464
D ANSWERTHINK INC             COM              03691610       5     1179 SH    SHARED             1179
D ANSWERTHINK INC             COM              03691610      27     5725 SH    SHARED      02     5725
D ANTHRACITE CAP INC          COM              03702310     125    17300 SH    SHARED            17300
D ANTHRACITE CAP INC          COM              03702310      49     6800 SH    SHARED      02     6800
D ANTHRACITE CAP INC          COM              03702310     759   104900 SH    SHARED      10   104900
D ANTIGENICS INC DEL          NOTE  5.250% 2/0 037032AC     745  1263000 PRN   SHARED           1263000
D ANTIGENICS INC DEL          COM              03703210       1      741 SH    SHARED              741
D ANWORTH MORTGAGE ASSET CP   COM              03734710     235    28456 SH    SHARED            28456
D ANWORTH MORTGAGE ASSET CP   COM              03734710     168    20400 SH    SHARED      01    20400
D ANWORTH MORTGAGE ASSET CP   COM              03734710      82    10000 SH    SHARED      02    10000
D ANWORTH MORTGAGE ASSET CP   COM              03734710    5102   617700 SH    SHARED      10   617700
D AON CORP                    COM              03738910   32114   673405 SH    SHARED            673405
D AON CORP                    COM              03738910    1359    28500 SH    SHARED      01    28500
D AON CORP                    COM              03738910     449     9418 SH    SHARED      02     9418
D AON CORP                    COM              03738910       4      100 SH    SHARED      05      100
D AON CORP                    COM              03738910     120     2530 SH    SHARED      06              2530
D AON CORP                    COM              03738910    9701   203426 SH    SHARED      10   203426
D AON CORP                    COM              03738910     119     2500 SH    SHARED      21              2500
D APACHE CORP                 COM              03741110    1417    13181 SH    SHARED            13181
D APACHE CORP                 COM              03741110  174680  1624331 SH    SHARED           1601511     22820
D APACHE CORP                 COM              03741110   14790   137538 SH    SHARED      01   121663     15875
D APACHE CORP                 COM              03741110    2639    24545 SH    SHR/OTHR    01             24545
D APACHE CORP                 COM              03741110   75957   706321 SH    SHARED      02   706321
D APACHE CORP                 COM              03741110   67061   623600 SH    SHARED      04   623600
D APACHE CORP                 COM              03741110      18      170 SH    SHARED      05      170
D APACHE CORP                 COM              03741110     357     3320 SH    SHARED      06              3320
D APACHE CORP                 COM              03741110  352868  3281276 SH    SHARED      10  3209936     71340
D APACHE CORP                 COM              03741110     365     3400 SH    SHARED      14              3400
D APACHE CORP                 COM              03741110    1036     9640 SH    SHARED      20     3740      5900
D APACHE CORP                 COM              03741110     758     7050 SH    SHR/OTHR    20              7050
D APACHE CORP                 COM              03741110     439     4090 SH    SHARED      21     4090
D APACHE CORP                 COM              03741110     150     1400 SH    SHR/OTHR    21              1400
D APACHE CORP                 COM              03741110     537     5000 SH    SHARED      22     3500      1500
D APACHE CORP                 COM              03741110     134     1250 SH    SHR/OTHR    22              1250
D APACHE CORP                 COM              03741110    1988    18490 SH    SHARED      23    18290       200
D APACHE CORP                 COM              03741110    3358    31230 SH    SHR/OTHR    23             31230
D APACHE CORP                 COM              03741110    2465    22930 SH    SHARED      24             22930
D APARTMENT INVT & MGMT CO    CL A             03748R10   11830   340640 SH    SHARED           340640
D APARTMENT INVT & MGMT CO    CL A             03748R10     500    14400 SH    SHARED      01    14400
D APARTMENT INVT & MGMT CO    CL A             03748R10     201     5791 SH    SHARED      02     5791
D APARTMENT INVT & MGMT CO    CL A             03748R10   11143   320848 SH    SHARED      10   310548     10300
D APARTMENT INVT & MGMT CO    CL A             03748R10  253979  7312964 SH    SHARED      11  3042308   4270656
D APEX BIOVENTURES ACQ CORP   COM              03753Q10    7511  1017817 SH    SHARED           1017817
D APEX BIOVENTURES ACQ CORP   *W EXP 06/07/201 03753Q11     132   203514 SH    SHARED            203514
D APOGEE ENTERPRISES INC      COM              03759810      35     2100 SH    SHARED             2100
D APOGEE ENTERPRISES INC      COM              03759810     139     8172 SH    SHARED             8172
D APOGEE ENTERPRISES INC      COM              03759810      32     1900 SH    SHARED      01     1900
D APOGEE ENTERPRISES INC      COM              03759810     196    11500 SH    SHARED      02    11500
D APOGEE ENTERPRISES INC      COM              03759810     171    10000 SH    SHARED      04    10000
D APOGEE ENTERPRISES INC      COM              03759810     694    40600 SH    SHARED      10    40600
D APOGEE TECHNOLOGY INC       COM              03760410       0      206 SH    SHARED              206
D APEX SILVER MINES LTD       NOTE  2.875% 3/1 03760XAB    1769  2254000 PRN   SHARED           2254000
D APEX SILVER MINES LTD       NOTE  2.875% 3/1 03760XAB    1570  2000000 PRN   SHARED      02  2000000
D APOLLO GROUP INC            CL A             03760410     544     7767 SH    SHARED             7767
D APOLLO GROUP INC            CL A             03760410   13600   193883 SH    SHARED            193883
D APOLLO GROUP INC            CL A             03760410    1349    19234 SH    SHARED      01    19234
D APOLLO GROUP INC            CL A             03760410       7      100 SH    SHR/OTHR    01               100
D APOLLO GROUP INC            CL A             03760410     301     4303 SH    SHARED      02     4303
D APOLLO GROUP INC            CL A             03760410    1052    15000 SH    SHARED      04    15000
D APOLLO GROUP INC            CL A             03760410       7      100 SH    SHR/OTHR    05               100
D APOLLO GROUP INC            CL A             03760410     122     1750 SH    SHARED      06              1750
D APOLLO GROUP INC            CL A             03760410    6158    87786 SH    SHARED      10    87786
D APOLLO GROUP INC            CL A             03760410      92     1313 SH    SHARED      14              1313
D APOLLO GROUP INC            CL A             03760410     531     7581 SH    SHARED      21     6981       600
D APOLLO INVT CORP            COM              03761U10    6686   392172 SH    SHARED           392172
D APOLLO INVT CORP            COM              03761U10      51     3046 SH    SHARED             3046
D APOLLO INVT CORP            COM              03761U10   34794  2040742 SH    SHARED      10  2040742
D APOLLO INVT CORP            COM              03761U10     134     7890 SH    SHARED      20     7890
D APOLLO INVT CORP            COM              03761U10      93     5500 SH    SHARED      23              5500
D APPALACHIAN BANCSHARES INC  COM              03767510       1      126 SH    SHARED              126
D APPLE INC                   COM              03783310    4500    22719 SH    SHARED            17425      5294
D APPLE INC                   COM              03783310  543280  2742734 SH    SHARED          2708104     34630
D APPLE INC                   COM              03783310   59412   299944 SH    SHARED      01   234108     65836
D APPLE INC                   COM              03783310   12824    64743 SH    SHR/OTHR    01             64743
D APPLE INC                   COM              03783310  378857  1912649 SH    SHARED      02  1912649
D APPLE INC                   COM              03783310    1226     6190 SH    SHARED      04              6190
D APPLE INC                   COM              03783310   25512   128800 SH    SHARED      04   128800
D APPLE INC                   COM              03783310   19877   100350 SH    SHARED      05   100350
D APPLE INC                   COM              03783310    1653     8350 SH    SHARED      06              8350
D APPLE INC                   COM              03783310  371217  1874077 SH    SHARED      10  1830003     44074
```

| | Name | Class | Rate | CUSIP | Value | Shares | Unit | Discretion | Mgr | Sole | Shared |
|---|---|---|---|---|---|---|---|---|---|---|---|
| D | APPLE INC | COM | | 03783310 | 2179 | 11001 | SH | SHARED | 14 | | 11001 |
| D | APPLE INC | COM | | 03783310 | 7725 | 39000 | SH | SHARED | 15 | | 39000 |
| D | APPLE INC | COM | | 03783310 | 10368 | 52343 | SH | SHARED | 19 | | 52343 |
| D | APPLE INC | COM | | 03783310 | 6263 | 31620 | SH | SHARED | 20 | 20655 | 10965 |
| D | APPLE INC | COM | | 03783310 | 489 | 2470 | SH | SHR/OTHR | 20 | | 2470 |
| D | APPLE INC | COM | | 03783310 | 993 | 5018 | SH | SHARED | 21 | 1749 | 3269 |
| D | APPLE INC | COM | | 03783310 | 505 | 2550 | SH | SHR/OTHR | 21 | | 2550 |
| D | APPLE INC | COM | | 03783310 | 2273 | 11480 | SH | SHARED | 22 | 9410 | 2070 |
| D | APPLE INC | COM | | 03783310 | 427 | 2156 | SH | SHR/OTHR | 22 | | 2156 |
| D | APPLE INC | COM | | 03783310 | 7818 | 39473 | SH | SHARED | 23 | 29748 | 9725 |
| D | APPLE INC | COM | | 03783310 | 5515 | 27845 | SH | SHR/OTHR | 23 | | 27845 |
| D | APPLE INC | COM | | 03783310 | 158 | 800 | SH | SHARED | 24 | | 800 |
| D | APRIA HEALTHCARE GROUP INC | NOTE | 3.375% 9/0 | 037933AB | 37387 | 37500000 | PRN | SHARED | | | 7500000 |
| D | APRIA HEALTHCARE GROUP INC | NOTE | 3.375% 9/0 | 037933AB | 6480 | 6500000 | PRN | SHARED | 02 | | 6500000 |
| D | APRIA HEALTHCARE GROUP INC | COM | | 03793310 | 1832 | 84978 | SH | SHARED | | | 84978 |
| D | APRIA HEALTHCARE GROUP INC | COM | | 03793310 | 728 | 33795 | SH | SHARED | 01 | 16995 | 16800 |
| D | APRIA HEALTHCARE GROUP INC | COM | | 03793310 | 862 | 40000 | SH | SHR/OTHR | 01 | | 40000 |
| D | APRIA HEALTHCARE GROUP INC | COM | | 03793310 | 44 | 2071 | SH | SHARED | 02 | | 2071 |
| D | APRIA HEALTHCARE GROUP INC | COM | | 03793310 | 19262 | 893000 | SH | SHARED | 10 | | 893000 |
| D | APPLERA CORP | COM AP BIO GRP | | 03802010 | 21269 | 627055 | SH | SHARED | | | 627055 |
| D | APPLERA CORP | COM AP BIO GRP | | 03802010 | 1909 | 56290 | SH | SHARED | 01 | 46075 | 10215 |
| D | APPLERA CORP | COM AP BIO GRP | | 03802010 | 286 | 8450 | SH | SHR/OTHR | 01 | | 8450 |
| D | APPLERA CORP | COM AP BIO GRP | | 03802010 | 301 | 8883 | SH | SHARED | 02 | | 8883 |
| D | APPLERA CORP | COM AP BIO GRP | | 03802010 | 1763 | 52000 | SH | SHARED | 04 | | 52000 |
| D | APPLERA CORP | COM AP BIO GRP | | 03802010 | 80 | 2370 | SH | SHARED | 06 | | 2370 |
| D | APPLERA CORP | COM AP BIO GRP | | 03802010 | 4815 | 141964 | SH | SHARED | 10 | | 141964 |
| D | APPLERA CORP | COM AP BIO GRP | | 03802010 | 271 | 8000 | SH | SHARED | 14 | 1400 | 6600 |
| D | APPLERA CORP | COM AP BIO GRP | | 03802010 | 24 | 720 | SH | SHR/OTHR | 21 | | 720 |
| D | APPLERA CORP | COM CELERA GRP | | 03802020 | 22 | 1396 | SH | SHARED | | | 1396 |
| D | APPLERA CORP | COM CELERA GRP | | 03802020 | 203 | 12829 | SH | SHARED | 01 | 4475 | 8354 |
| D | APPLERA CORP | COM CELERA GRP | | 03802020 | 3729 | 235000 | SH | SHARED | 04 | | 235000 |
| D | APPLERA CORP | COM CELERA GRP | | 03802020 | 4461 | 281099 | SH | SHARED | 10 | | 281099 |
| D | APPLERA CORP | COM CELERA GRP | | 03802020 | 101 | 6400 | SH | SHARED | 14 | | 6400 |
| D | APPLIANCE RECYCLING CTRS AME | COM NEW | | 03814F20 | 0 | 84 | SH | SHARED | | | 84 |
| D | APPLIED DIGITAL SOLUTIONS | COM NEW | | 03818830 | 0 | 1836 | SH | SHARED | | | 1836 |
| D | APPLIED INDL TECHNOLOGIES IN | COM | | 03820C10 | 374 | 12900 | SH | SHARED | | | 12900 |
| D | APPLIED INDL TECHNOLOGIES IN | COM | | 03820C10 | 470 | 16200 | SH | SHARED | 01 | | 16200 |
| D | APPLIED INDL TECHNOLOGIES IN | COM | | 03820C10 | 15 | 525 | SH | SHARED | 02 | | 525 |
| D | APPLIED INDL TECHNOLOGIES IN | COM | | 03820C10 | 795 | 27415 | SH | SHARED | 10 | | 27415 |
| D | APPLIED MICRO CIRCUITS CORP | COM NEW | | 03822W40 | 134 | 15362 | SH | SHARED | | | 15362 |
| D | APPLIED MICRO CIRCUITS CORP | COM NEW | | 03822W40 | 4 | 500 | SH | SHARED | 02 | | 500 |
| D | APPLIED MICRO CIRCUITS CORP | COM NEW | | 03822W40 | 204 | 23425 | SH | SHARED | 10 | | 23425 |
| D | APPLIED MATLS INC | COM | | 03822210 | 58 | 3307 | SH | SHARED | | 850 | 2457 |
| D | APPLIED MATLS INC | COM | | 03822210 | 97851 | 5509649 | SH | SHARED | | | 5509649 |
| D | APPLIED MATLS INC | COM | | 03822210 | 3980 | 224123 | SH | SHARED | 01 | 166786 | 57337 |
| D | APPLIED MATLS INC | COM | | 03822210 | 539 | 30375 | SH | SHR/OTHR | 01 | | 30375 |
| D | APPLIED MATLS INC | COM | | 03822210 | 5267 | 296566 | SH | SHARED | 02 | | 296566 |
| D | APPLIED MATLS INC | COM | | 03822210 | 20035 | 1128126 | SH | SHARED | 04 | | 1128126 |
| D | APPLIED MATLS INC | COM | | 03822210 | 18673 | 1051438 | SH | SHARED | 05 | | 1051438 |
| D | APPLIED MATLS INC | COM | | 03822210 | 1055 | 59409 | SH | SHARED | 06 | | 59409 |
| D | APPLIED MATLS INC | COM | | 03822210 | 73174 | 4120164 | SH | SHARED | 10 | | 4120164 |
| D | APPLIED MATLS INC | COM | | 03822210 | 709 | 39939 | SH | SHARED | 14 | | 39939 |
| D | APPLIED MATLS INC | COM | | 03822210 | 4084 | 230000 | SH | SHARED | 15 | | 230000 |
| D | APPLIED MATLS INC | COM | | 03822210 | 86 | 4850 | SH | SHARED | 19 | | 4850 |
| D | APPLIED MATLS INC | COM | | 03822210 | 872 | 49135 | SH | SHARED | 20 | 9890 | 39245 |
| D | APPLIED MATLS INC | COM | | 03822210 | 1826 | 102836 | SH | SHR/OTHR | 20 | | 102836 |
| D | APPLIED MATLS INC | COM | | 03822210 | 392 | 22128 | SH | SHARED | 21 | | 22128 |
| D | APPLIED MATLS INC | COM | | 03822210 | 109 | 6150 | SH | SHARED | 22 | 1250 | 4900 |
| D | APPLIED MATLS INC | COM | | 03822210 | 1870 | 105300 | SH | SHARED | 23 | 103300 | 2000 |
| D | APPLIED MATLS INC | COM | | 03822210 | 675 | 38055 | SH | SHR/OTHR | 23 | | 38055 |
| D | APPLIED SIGNAL TECHNOLOGY IN | COM | | 03823710 | 34 | 2558 | SH | SHARED | | | 2558 |
| D | APTARGROUP INC | COM | | 03833610 | 751 | 18363 | SH | SHARED | | | 18363 |
| D | APTARGROUP INC | COM | | 03833610 | 376 | 9200 | SH | SHARED | 01 | | 9200 |
| D | APTARGROUP INC | COM | | 03833610 | 2986 | 73008 | SH | SHARED | 10 | | 73008 |
| D | APTARGROUP INC | COM | | 03833610 | 7 | 192 | SH | SHARED | 21 | | 192 |
| D | APPROACH RESOURCES INC | COM | | 03834A10 | 540 | 42000 | SH | SHARED | 04 | | 42000 |
| D | AQUA AMERICA INC | COM | | 03836W10 | 32787 | 1546597 | SH | SHARED | | 1541597 | 5000 |
| D | AQUA AMERICA INC | COM | | 03836W10 | 854 | 40323 | SH | SHARED | 01 | 690 | 39633 |
| D | AQUA AMERICA INC | COM | | 03836W10 | 3226 | 152213 | SH | SHARED | 02 | | 152213 |
| D | AQUA AMERICA INC | COM | | 03836W10 | 12380 | 583967 | SH | SHARED | 04 | | 583967 |
| D | AQUA AMERICA INC | COM | | 03836W10 | 15774 | 744095 | SH | SHARED | 05 | | 744095 |
| D | AQUA AMERICA INC | COM | | 03836W10 | 16 | 800 | SH | SHARED | 06 | | 800 |
| D | AQUA AMERICA INC | COM | | 03836W10 | 841 | 39705 | SH | SHARED | 10 | | 39705 |
| D | AQUA AMERICA INC | COM | | 03836W10 | 141 | 6666 | SH | SHARED | 22 | | 6666 |
| D | AQUA AMERICA INC | COM | | 03836W10 | 10 | 500 | SH | SHARED | 23 | | 500 |
| D | AQUILA INC | COM | | 03840P10 | 5988 | 1605483 | SH | SHARED | | | 1605483 |
| D | AQUILA INC | COM | | 03840P10 | 514 | 138000 | SH | SHARED | 01 | 17600 | 120400 |
| D | AQUILA INC | COM | | 03840P10 | 66 | 17808 | SH | SHARED | 02 | | 17808 |
| D | AQUILA INC | COM | | 03840P10 | 519 | 139200 | SH | SHARED | 10 | | 139200 |
| D | ARACRUZ CELULOSE S A | SPON ADR PFD B | | 03849620 | 1011 | 13600 | SH | SHARED | | | 13600 |
| D | ARACRUZ CELULOSE S A | SPON ADR PFD B | | 03849620 | 10175 | 136854 | SH | SHARED | | | 136854 |
| D | ARACRUZ CELULOSE S A | SPON ADR PFD B | | 03849620 | 8030 | 108012 | SH | SHARED | 01 | | 108012 |
| D | ARACRUZ CELULOSE S A | SPON ADR PFD B | | 03849620 | 9323 | 125400 | SH | SHARED | 04 | | 125400 |
| D | ARACRUZ CELULOSE S A | SPON ADR PFD B | | 03849620 | 10275 | 138200 | SH | SHARED | 10 | | 138200 |
| D | ARBINET THEXCHANGE INC | COM | | 03875Q10 | 3222 | 532583 | SH | SHARED | | | 532583 |
| D | ARBITRON INC | COM | | 03875Q10 | 270 | 6504 | SH | SHARED | | | 6504 |
| D | ARBITRON INC | COM | | 03875Q10 | 36 | 889 | SH | SHARED | 01 | | 889 |
| D | ARBITRON INC | COM | | 03875Q10 | 14 | 350 | SH | SHARED | 02 | | 350 |
| D | ARBITRON INC | COM | | 03875Q10 | 739 | 17800 | SH | SHARED | 10 | | 17800 |
| D | ARBOR RLTY TR INC | COM | | 03920910 | 226 | 14073 | SH | SHARED | | | 14073 |
| D | ARCADIA RES INC | COM | | 03920910 | 2 | 2161 | SH | SHARED | | | 2161 |
| D | ARCH CHEMICALS INC | COM | | 03937R10 | 4224 | 114957 | SH | SHARED | | | 114957 |
| D | ARCH CHEMICALS INC | COM | | 03937R10 | 407 | 11100 | SH | SHARED | 01 | 9600 | 1500 |
| D | ARCH CHEMICALS INC | COM | | 03937R10 | 3046 | 82897 | SH | SHARED | 10 | | 82897 |
| D | ARCELORMITTAL SA LUXEMBOURG | NY REGISTRY SH | | 03938L10 | 8748 | 113109 | SH | SHARED | | | 113109 |
| D | ARCELORMITTAL SA LUXEMBOURG | NY REGISTRY SH | | 03938L10 | 2 | 35 | SH | SHARED | 01 | | 35 |
| D | ARCH COAL INC | COM | | 03938010 | 13918 | 309771 | SH | SHARED | | | 309771 |
| D | ARCH COAL INC | COM | | 03938010 | 1963 | 43700 | SH | SHARED | 01 | 400 | 43300 |
| D | ARCH COAL INC | COM | | 03938010 | 1352 | 30104 | SH | SHARED | 02 | | 30104 |
| D | ARCH COAL INC | COM | | 03938010 | 10333 | 230000 | SH | SHARED | 04 | | 230000 |
| D | ARCH COAL INC | COM | | 03938010 | 31 | 700 | SH | SHARED | 06 | | 700 |
| D | ARCH COAL INC | COM | | 03938010 | 503 | 11200 | SH | SHARED | 10 | | 11200 |
| D | ARCH COAL INC | COM | | 03938010 | 4043 | 90000 | SH | SHARED | 16 | | 90000 |
| D | ARCHER DANIELS MIDLAND CO | COM | | 03948310 | 47 | 1031 | SH | SHARED | | | 1031 |
| D | ARCHER DANIELS MIDLAND CO | COM | | 03948310 | 297167 | 6400343 | SH | SHARED | | 5804043 | 596300 |
| D | ARCHER DANIELS MIDLAND CO | COM | | 03948310 | 8679 | 186929 | SH | SHARED | 01 | 177823 | 9106 |
| D | ARCHER DANIELS MIDLAND CO | COM | | 03948310 | 2751 | 59266 | SH | SHARED | 02 | | 59266 |
| D | ARCHER DANIELS MIDLAND CO | COM | | 03948310 | 171710 | 3698256 | SH | SHARED | 04 | | 3698256 |
| D | ARCHER DANIELS MIDLAND CO | COM | | 03948310 | 51836 | 1116436 | SH | SHARED | 05 | | 1116436 |
| D | ARCHER DANIELS MIDLAND CO | COM | | 03948310 | 17275 | 372080 | SH | SHARED | 06 | | 372080 |
| D | ARCHER DANIELS MIDLAND CO | COM | | 03948310 | 129680 | 2793025 | SH | SHARED | 10 | 2453725 | 339300 |
| D | ARCHER DANIELS MIDLAND CO | COM | | 03948310 | 1606 | 34600 | SH | SHARED | 14 | 24200 | 10400 |
| D | ARCHER DANIELS MIDLAND CO | COM | | 03948310 | 92 | 2000 | SH | SHARED | 23 | | 2000 |
| D | ARCHER DANIELS MIDLAND CO | COM | | 03948310 | 341 | 7358 | SH | SHR/OTHR | 23 | | 7358 |

```
D ARCHER DANIELS MIDLAND CO      COM              03948310    1369    29500 SH     SHARED    24    29500
D ARCTIC CAT INC                 COM              03967010     788    66033 SH     SHARED          66033
D ARCTIC CAT INC                 COM              03967010      47     4000 SH     SHARED    02     4000
D ARDEA BIOSCIENCES INC          COM              03969910   13737   897856 SH     SHARED         897856
D ARDEN GROUP INC                CL A             03976210       0        1 SH     SHARED              1
D ARENA PHARMACEUTICALS INC      COM              04004710      51     6572 SH     SHARED           6572
D ARENA PHARMACEUTICALS INC      COM              04004710    4434   566399 SH     SHARED    04   566399
D ARENA PHARMACEUTICALS INC      COM              04004710     441    56400 SH     SHARED    10    56400
D ARENA RESOURCES INC            COM              04004910    7193   172460 SH     SHARED         172460
D ARENA RESOURCES INC            COM              04004910     104     2500 SH     SHARED    01     2500
D ARENA RESOURCES INC            COM              04004910   14919   357700 SH     SHARED    10   357700
D ARENA RESOURCES INC            COM              04004910      47     1134 SH     SHARED    21          1134
D ARGAN INC                      COM              04010E10       1      116 SH     SHARED            116
D ARGAN INC                      COM              04010E10     103     7729 SH     SHR/OTHR  01     7729
D ARES CAP CORP                  COM              04010L10   24390 1667169 SH      SHARED        1667169
D ARES CAP CORP                  COM              04010L10     329    22500 SH     SHARED    10    22500
D ARGON ST INC                   COM              04014910      96     5213 SH     SHARED           5213
D ARGON ST INC                   COM              04014910      61     3325 SH     SHARED    02     3325
D ARIAD PHARMACEUTICALS INC      COM              04033A10       2      559 SH      SHARED            559
D ARIAD PHARMACEUTICALS INC      COM              04033A10       5     1316 SH      SHARED           1316
D ARIAD PHARMACEUTICALS INC      COM              04033A10      80    19000 SH      SHARED    10    19000
D ARIBA INC                      COM NEW          04033V20    2395   214882 SH      SHARED         214882
D ARIBA INC                      COM NEW          04033V20      61     5550 SH      SHARED    01     5550
D ARIBA INC                      COM NEW          04033V20     457    41000 SH      SHARED    04    41000
D ARIBA INC                      COM NEW          04033V20     357    32100 SH      SHARED    10    32100
D ARISTOTLE CORP                 COM NEW          04044820       0       29 SH      SHARED             29
D ARIZONA LD INCOME CORP         CL A             04051510       0       40 SH      SHARED             40
D ARK RESTAURANTS CORP           COM              04071210       1       45 SH      SHARED             45
D ARKANSAS BEST CORP DEL         COM              04079010    1043    47569 SH      SHARED          47569
D ARKANSAS BEST CORP DEL         COM              04079010      33     1525 SH      SHARED    02     1525
D ARKANSAS BEST CORP DEL         COM              04079010     423    19300 SH      SHARED    10    19300
D ARKANSAS BEST CORP DEL         COM              04079010      18      851 SH      SHARED    21      851
D ARM HLDGS PLC                  SPONSORED ADR    04206810     922   124607 SH      SHARED         124607
D ARMSTRONG WORLD INDS INC NEW   COM              04247A10      12      313 SH      SHARED            313
D ARMSTRONG WORLD INDS INC NEW   COM              04247X10   14383   358607 SH      SHARED         358607
D ARMSTRONG WORLD INDS INC NEW   COM              04247X10     144     3600 SH      SHARED    10     3600
D AROTECH CORP                   COM NEW          04268220       0      337 SH      SHARED            337
D ARQULE INC                     COM              04269E10     150    25983 SH      SHARED          25983
D ARRIS GROUP INC                COM              04269Q10   10939  1096138 SH      SHARED        1096138
D ARRIS GROUP INC                COM              04269Q10      96     9645 SH      SHARED    01     9645
D ARRIS GROUP INC                COM              04269Q10      63     6359 SH      SHARED    02     6359
D ARRIS GROUP INC                COM              04269Q10   17858  1789450 SH      SHARED    10  1789450
D ARRAY BIOPHARMA INC            COM              04269X10       7      833 SH      SHARED            833
D ARRAY BIOPHARMA INC            COM              04269X10    2602   309104 SH      SHARED    04   309104
D ARRHYTHMIA RESH TECHNOLOGY I   COM PAR $0.01    04269830       6     1004 SH      SHARED           1004
D ARROW ELECTRS INC              COM              04273510    2070    52702 SH      SHARED          52702  20000
D ARROW ELECTRS INC              COM              04273510    2486    63300 SH      SHARED    01    26600  36700
D ARROW ELECTRS INC              COM              04273510     125     3200 SH      SHR/OTHR  01            3200
D ARROW ELECTRS INC              COM              04273510     240     6132 SH      SHARED    02     6132
D ARROW ELECTRS INC              COM              04273510      27      700 SH      SHARED    06             700
D ARROW ELECTRS INC              COM              04273510   32490   827150 SH      SHARED    10   741750  85400
D ARROW FINL CORP                COM              04274410      12      591 SH      SHARED            591
D ARROW FINL CORP                COM              04274410      25     1206 SH      SHARED    02     1206
D ARROWHEAD RESH CORP            COM              04279710       0      123 SH      SHARED            123
D ARTES MEDICAL INC              COM              04301Q10       0      405 SH      SHARED            405
D ARTESIAN RESOURCES CORP        CL A             04311320       3      171 SH      SHARED            171
D ARTHROCARE CORP                COM              04313610     446     9300 SH      SHARED           9300
D ARTHROCARE CORP                COM              04313610     172     3600 SH      SHARED    01     3600
D ARTHROCARE CORP                COM              04313610      51     1075 SH      SHARED    02     1075
D ARTHROCARE CORP                COM              04313610    3844    80000 SH      SHARED    04    80000
D ARTHROCARE CORP                COM              04313610    3704    77100 SH      SHARED    10    77100
D ARTHROCARE CORP                COM              04313610      72     1500 SH      SHARED    14     1500
D ARTS WAY MFG INC               COM              04316810     127     4455 SH      SHARED           4455
D ARUBA NETWORKS INC             COM              04317610      84     5665 SH      SHARED           5665
D ARUBA NETWORKS INC             COM              04317610     298    20000 SH      SHARED         20000
D ARUBA NETWORKS INC             COM              04317610       2      180 SH      SHARED    21            180
D ARVINMERITOR INC               COM              04335310     114     9724 SH      SHARED           9724
D ARVINMERITOR INC               COM              04335310     158    13500 SH      SHARED    01    13500
D ARVINMERITOR INC               COM              04335310      54     4688 SH      SHARED    02     4688
D ARVINMERITOR INC               COM              04335310     282    24100 SH      SHARED    10    24100
D ARYX THERAPEUTICS INC          COM              04338710       1      130 SH      SHARED            130
D ARYX THERAPEUTICS INC          COM              04338710    2001   258300 SH      SHARED    04   258300
D ASBURY AUTOMOTIVE GROUP INC    COM              04343610    3542   235388 SH      SHARED         235388
D ASBURY AUTOMOTIVE GROUP INC    COM              04343610    1280    85100 SH      SHARED    02    85100
D ASBURY AUTOMOTIVE GROUP INC    COM              04343610     106     7100 SH      SHARED    10     7100
D ASCENDIA BRANDS INC            COM              04350910       0      514 SH      SHARED            514
D ASCENT SOLAR TECHNOLOGIES IN   COM              04363510     454    18281 SH      SHARED          18281
D ASHFORD HOSPITALITY TR INC     COM SHS          04410310       3      432 SH      SHARED            432
D ASHFORD HOSPITALITY TR INC     COM SHS          04410310      64     9000 SH      SHARED    01     9000
D ASHFORD HOSPITALITY TR INC     COM SHS          04410310      67     9412 SH      SHARED    02     9412
D ASHFORD HOSPITALITY TR INC     COM SHS          04410310   12563  1747400 SH      SHARED    10  1747400
D ASHFORD HOSPITALITY TR INC     COM SHS          04410310   44297  6160950 SH      SHARED    11       6160950
D ASHLAND INC NEW                COM              04420910   16372   345184 SH      SHARED         345184
D ASHLAND INC NEW                COM              04420910    1202    25350 SH      SHARED    01    23750   1600
D ASHLAND INC NEW                COM              04420910      53     1125 SH      SHR/OTHR  01            1125
D ASHLAND INC NEW                COM              04420910    1860    39233 SH      SHARED    02    39233
D ASHLAND INC NEW                COM              04420910      11      239 SH      SHARED    04             239
D ASHLAND INC NEW                COM              04420910      71     1510 SH      SHARED    04     1510
D ASHLAND INC NEW                COM              04420910    4252    89664 SH      SHARED    10    89664
D ASHLAND INC NEW                COM              04420910     287     6069 SH      SHARED    14            6069
D ASHLAND INC NEW                COM              04420910      18      400 SH      SHARED    20     400
D ASHLAND INC NEW                COM              04420910       9      200 SH      SHARED    21            200
D ASHLAND INC NEW                COM              04420910       8      175 SH      SHR/OTHR  21      175
D ASHLAND INC NEW                COM              04420910       7      150 SH      SHARED    22     150
D ASIA PAC FD INC                COM              04490110      52     2150 SH      SHARED           2150
D ASIA PAC FD INC                COM              04490110       2       85 SH      SHARED             85
D ASIA PAC FD INC                COM              04490110     364    15000 SH      SHR/OTHR  23           15000
D ASHWORTH INC                   COM              04516H10      68    24022 SH      SHARED          24022
D ASIAINFO HLDGS INC             COM              04518A10      91     8301 SH      SHARED           8301
D ASPECT MED SYS INC             COM              04523510      63     4500 SH      SHARED           4500
D ASPECT MED SYS INC             COM              04523510      53     3794 SH      SHARED    02     3794
D ASPEN TECHNOLOGY INC           COM              04532710     367    22672 SH      SHARED          22672
D ASPEN TECHNOLOGY INC           COM              04532710     260    16070 SH      SHARED    01    16070
D ASPEN TECHNOLOGY INC           COM              04532710      55     3450 SH      SHARED    02     3450
D ASPEN TECHNOLOGY INC           COM              04532710    1602    98800 SH      SHARED    10    98800
D ASPENBIO PHARMA INC            COM              04534610    3046   423945 SH      SHARED         423945
D ASPREVA PHARMACEUTICALS CORP   COM              04538T10     130     5000 SH      SHARED           5000
D ASPYRA INC                     COM              04538V10       0      209 SH      SHARED            209
D ASSET ACCEP CAP CORP           COM              04543P10      13     1300 SH      SHARED           1300
D ASSET ACCEP CAP CORP           COM              04543P10     163    15725 SH      SHARED    02    15725
D ASSET ACCEP CAP CORP           COM              04543P10      14     1400 SH      SHARED    10     1400
D ASSISTED LIVING CONCPT NEV N   CL A             04544X10     897   119600 SH      SHARED         119600
D ASSISTED LIVING CONCPT NEV N   CL A             04544X10     229    30600 SH      SHARED    10    30600
D ASSOCIATED BANC CORP           COM              04548710    2371    87536 SH      SHARED          87536
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | ASSOCIATED BANC CORP | COM | 04548710 | 942 | 34782 | SH | SHARED | 01 | 2085 | 32697 |
| D | ASSOCIATED BANC CORP | COM | 04548710 | 163 | 6019 | SH | SHARED | 02 | 6019 | |
| D | ASSOCIATED BANC CORP | COM | 04548710 | 30 | 1110 | SH | SHARED | 06 | | 1110 |
| D | ASSOCIATED BANC CORP | COM | 04548710 | 167 | 6200 | SH | SHARED | 10 | 6200 | |
| D | ASSOCIATED ESTATES RLTY CORP | COM | 04560410 | 32 | 3403 | SH | SHARED | | 3403 | |
| D | ASSURANT INC | COM | 04621X10 | 6121 | 91509 | SH | SHARED | | 91509 | |
| D | ASSURANT INC | COM | 04621X10 | 167 | 2500 | SH | SHARED | 01 | 2500 | |
| D | ASSURANT INC | COM | 04621X10 | 456 | 6829 | SH | SHARED | 02 | 6829 | |
| D | ASSURANT INC | COM | 04621X10 | 33 | 500 | SH | SHARED | 06 | | 500 |
| D | ASSURANT INC | COM | 04621X10 | 9458 | 141382 | SH | SHARED | 10 | 141382 | |
| D | ASTEA INTL INC | COM NEW | 04622E20 | 0 | 63 | SH | SHARED | | 63 | |
| D | ASTEA INTL INC | COM NEW | 04622E20 | 2 | 475 | SH | SHARED | 02 | 475 | |
| D | ASTA FDG INC | COM | 04622010 | 14 | 567 | SH | SHARED | | 567 | |
| D | ASTA FDG INC | COM | 04622010 | 8181 | 309450 | SH | SHARED | 10 | 309450 | |
| D | ASTA FDG INC | COM | 04622010 | 37 | 1428 | SH | SHARED | 21 | 1428 | |
| D | ASTEC INDS INC | COM | 04622410 | 378 | 10190 | SH | SHARED | | 10190 | |
| D | ASTEC INDS INC | COM | 04622410 | 208 | 5600 | SH | SHARED | 01 | 5600 | |
| D | ASTEC INDS INC | COM | 04622410 | 11158 | 300043 | SH | SHARED | 10 | 300043 | |
| D | ASTORIA FINL CORP | COM | 04626510 | 4044 | 173806 | SH | SHARED | | 173806 | |
| D | ASTORIA FINL CORP | COM | 04626510 | 1467 | 63075 | SH | SHARED | 01 | 1625 | 61450 |
| D | ASTORIA FINL CORP | COM | 04626510 | 369 | 15866 | SH | SHARED | 02 | 15866 | |
| D | ASTORIA FINL CORP | COM | 04626510 | 286 | 12300 | SH | SHARED | 10 | 12300 | |
| D | ASTRAZENECA PLC | SPONSORED ADR | 04635310 | 232360 | 5426458 | SH | SHARED | | 5426458 | |
| D | ASTRAZENECA PLC | SPONSORED ADR | 04635310 | 21 | 500 | SH | SHARED | 01 | | 500 |
| D | ASTRAZENECA PLC | SPONSORED ADR | 04635310 | 379 | 8868 | SH | SHARED | 02 | 8868 | |
| D | ASTRAZENECA PLC | SPONSORED ADR | 04635310 | 3 | 91 | SH | SHARED | 21 | | 91 |
| D | ASTRO-MED INC NEW | COM | 04638P10 | 1 | 129 | SH | SHARED | | 129 | |
| D | ASTRONICS CORP | COM | 04643310 | 338 | 7963 | SH | SHARED | | 7963 | |
| D | ASTRONICS CORP | COM | 04643310 | 34 | 800 | SH | SHARED | 02 | 800 | |
| D | ASYST TECHNOLOGY CORP | COM | 04648X10 | 179 | 54966 | SH | SHARED | | 54966 | |
| D | ASYST TECHNOLOGY CORP | COM | 04648X10 | 277 | 8500 | SH | SHARED | 01 | 8500 | |
| D | ASYST TECHNOLOGY CORP | COM | 04648X10 | 0 | 164 | SH | SHARED | 02 | 164 | |
| D | ASYST TECHNOLOGY CORP | COM | 04648X10 | 423 | 130000 | SH | SHARED | 10 | 130000 | |
| D | ATARI INC | COM NEW | 04651M20 | 46 | 36624 | SH | SHARED | | 36624 | |
| D | ATHENAHEALTH INC | COM | 04685W10 | 3 | 108 | SH | SHARED | | 108 | |
| D | ATHEROS COMMUNICATIONS INC | COM | 04743P10 | 1958 | 64131 | SH | SHARED | | 64131 | |
| D | ATHEROS COMMUNICATIONS INC | COM | 04743P10 | 590 | 19340 | SH | SHARED | 01 | 19340 | |
| D | ATHEROS COMMUNICATIONS INC | COM | 04743P10 | 11 | 392 | SH | SHARED | 02 | 392 | |
| D | ATHEROS COMMUNICATIONS INC | COM | 04743P10 | 19452 | 636940 | SH | SHARED | 10 | 636940 | |
| D | ATHEROGENICS INC | NOTE 1.500% 2/0 | 04743PAD | 700 | 10000000 | PRN | SHARED | 02 | 0000000 | |
| D | ATHEROGENICS INC | COM | 04743910 | 7 | 19464 | SH | SHARED | | 19464 | |
| D | ATLANTIC AMERN CORP | COM | 04820910 | 0 | 166 | SH | SHARED | | 166 | |
| D | ATLANTIC COAST FED CORP | COM | 04842510 | 44 | 3714 | SH | SHARED | | 3714 | |
| D | ATLANTIC SOUTHERN FINL GRP I | COM | 04887710 | 1 | 102 | SH | SHARED | | 102 | |
| D | ATLANTIC TELE NETWORK INC | COM NEW | 04907920 | 188 | 5576 | SH | SHARED | | 5576 | |
| D | ATLANTIC TELE NETWORK INC | COM NEW | 04907920 | 37 | 1100 | SH | SHARED | 01 | 1100 | |
| D | ATLANTIC TELE NETWORK INC | COM NEW | 04907920 | 8655 | 256225 | SH | SHARED | 10 | 256225 | |
| D | ATLANTIS PLASTICS INC | COM | 04915610 | 4 | 6891 | SH | SHARED | | 6891 | |
| D | ATLAS AIR WORLDWIDE HLDGS IN | COM NEW | 04916420 | 88 | 1641 | SH | SHARED | | 1641 | |
| D | ATLAS AIR WORLDWIDE HLDGS IN | COM NEW | 04916420 | 405 | 7470 | SH | SHARED | 01 | 7470 | |
| D | ATLAS AIR WORLDWIDE HLDGS IN | COM NEW | 04916420 | 401 | 7400 | SH | SHARED | 02 | 7400 | |
| D | ATLAS AIR WORLDWIDE HLDGS IN | COM NEW | 04916420 | 862 | 15900 | SH | SHARED | 10 | 15900 | |
| D | ATLAS AMER INC | COM | 04916710 | 4 | 84 | SH | SHARED | | 84 | |
| D | ATLAS AMER INC | COM | 04916710 | 419 | 7082 | SH | SHARED | 01 | 6950 | 132 |
| D | ATLAS AMER INC | COM | 04916710 | 43 | 733 | SH | SHR/OTHR | 01 | | 733 |
| D | ATLAS AMER INC | COM | 04916710 | 10 | 175 | SH | SHARED | 02 | 175 | |
| D | ATLAS AMER INC | COM | 04916710 | 11 | 200 | SH | SHARED | 10 | 200 | |
| D | ATLAS ENERGY RESOURCES LLC | COM | 04903010 | 14181 | 456137 | SH | SHARED | | 456137 | |
| D | ATLAS ENERGY RESOURCES LLC | COM | 04903010 | 4669 | 150187 | SH | SHARED | 01 | 150187 | |
| D | ATLAS PIPELINE HOLDINGS LP | COM UNITS LP | 04939R10 | 9043 | 333334 | SH | SHARED | | 333334 | |
| D | ATLAS PIPELINE HOLDINGS LP | COM UNITS LP | 04939R10 | 14404 | 530938 | SH | SHARED | 10 | 530938 | |
| D | ATLAS PIPELINE PARTNERS LP | UNIT L P INT | 04939210 | 131821 | 3076348 | SH | SHARED | | 3076348 | |
| D | ATMEL CORP | COM | 04951310 | 13178 | 3050594 | SH | SHARED | | 3050594 | |
| D | ATMEL CORP | COM | 04951310 | 656 | 151920 | SH | SHARED | 01 | 18120 | 133800 |
| D | ATMEL CORP | COM | 04951310 | 91 | 21274 | SH | SHARED | 02 | 21274 | |
| D | ATMEL CORP | COM | 04951310 | 92 | 21500 | SH | SHARED | 10 | 21500 | |
| D | ATMOS ENERGY CORP | COM | 04956010 | 2815 | 100403 | SH | SHARED | | 100403 | |
| D | ATMOS ENERGY CORP | COM | 04956010 | 178 | 6350 | SH | SHARED | 01 | 6350 | |
| D | ATMOS ENERGY CORP | COM | 04956010 | 227 | 8109 | SH | SHARED | 02 | 8109 | |
| D | ATMOS ENERGY CORP | COM | 04956010 | 187 | 6700 | SH | SHARED | 10 | 6700 | |
| D | ATMOS ENERGY CORP | COM | 04956010 | 5 | 190 | SH | SHARED | 21 | | 190 |
| D | ATRICURE INC | COM | 04963C20 | 3 | 241 | SH | SHARED | | 241 | |
| D | ATRION CORP | COM | 04990410 | 5 | 40 | SH | SHARED | | 40 | |
| D | ATRION CORP | COM | 04990410 | 25 | 200 | SH | SHARED | 02 | 200 | |
| D | ATWOOD OCEANICS INC | COM | 05009510 | 8825 | 88048 | SH | SHARED | | 88048 | |
| D | ATWOOD OCEANICS INC | COM | 05009510 | 1184 | 11820 | SH | SHARED | 01 | 11520 | 300 |
| D | ATWOOD OCEANICS INC | COM | 05009510 | 25 | 250 | SH | SHR/OTHR | 01 | | 250 |
| D | ATWOOD OCEANICS INC | COM | 05009510 | 63076 | 629250 | SH | SHARED | 10 | 629250 | |
| D | ATWOOD OCEANICS INC | COM | 05009510 | 51 | 509 | SH | SHARED | 21 | | 509 |
| D | AUDIBLE INC | COM NEW | 05069A30 | 4 | 506 | SH | SHARED | | 506 | |
| D | AUDIBLE INC | COM NEW | 05069A30 | 19 | 2200 | SH | SHARED | 02 | 2200 | |
| D | AUDIOVOX CORP | CL A | 05075710 | 8 | 690 | SH | SHARED | | 690 | |
| D | AURIZON MINES LTD | COM | 05155P10 | 3 | 1000 | SH | SHARED | | 1000 | |
| D | AURIZON MINES LTD | COM | 05155P10 | 972 | 250000 | SH | SHARED | 04 | 250000 | |
| D | AURORA OIL & GAS CORP | COM | 05203610 | 3 | 2445 | SH | SHARED | | 2445 | |
| D | AUTHENTIDATE HLDG CORP | COM | 05266610 | 0 | 897 | SH | SHARED | | 897 | |
| D | AUTOBYTEL INC | COM | 05275M10 | 2232 | 811803 | SH | SHARED | | 811803 | |
| D | AUTODESK INC | COM | 05276910 | 1 | 32 | SH | SHARED | | 32 | |
| D | AUTODESK INC | COM | 05276910 | 25117 | 504770 | SH | SHARED | | 504770 | |
| D | AUTODESK INC | COM | 05276910 | 1699 | 34144 | SH | SHARED | 01 | 34144 | |
| D | AUTODESK INC | COM | 05276910 | 336 | 6760 | SH | SHARED | 02 | 6760 | |
| D | AUTODESK INC | COM | 05276910 | 103 | 2070 | SH | SHARED | 06 | | 2070 |
| D | AUTODESK INC | COM | 05276910 | 7055 | 141796 | SH | SHARED | 10 | 141796 | |
| D | AUTODESK INC | COM | 05276910 | 460 | 9252 | SH | SHARED | 14 | | 9252 |
| D | AUTODESK INC | COM | 05276910 | 149 | 3000 | SH | SHARED | 20 | 3000 | |
| D | AUTODESK INC | COM | 05276910 | 49 | 1000 | SH | SHARED | 22 | | 1000 |
| D | AUTOLIV INC | COM | 05280010 | 5232 | 99268 | SH | SHARED | | 23168 | 76100 |
| D | AUTOLIV INC | COM | 05280010 | 1043 | 19790 | SH | SHARED | 01 | 19790 | |
| D | AUTOLIV INC | COM | 05280010 | 190 | 3609 | SH | SHARED | 02 | 3609 | |
| D | AUTOLIV INC | COM | 05280010 | 45462 | 862500 | SH | SHARED | 10 | 784700 | 77800 |
| D | AUTOLIV INC | COM | 05280010 | 8 | 153 | SH | SHR/OTHR | 23 | | 153 |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 28715 | 644858 | SH | SHARED | | 644858 | |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 3949 | 88704 | SH | SHARED | 01 | 71304 | 17400 |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 1915 | 43017 | SH | SHR/OTHR | 01 | | 43017 |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 947 | 21270 | SH | SHARED | 02 | 21270 | |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 18324 | 411500 | SH | SHARED | 04 | 411500 | |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 12 | 270 | SH | SHARED | 05 | 270 | |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 242 | 5439 | SH | SHARED | 06 | | 5439 |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 11167 | 250796 | SH | SHARED | 10 | 250196 | 600 |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 62 | 1400 | SH | SHR/OTHR | 10 | | 1400 |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 301 | 6772 | SH | SHARED | 14 | 5000 | 1772 |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 187 | 4200 | SH | SHARED | 20 | 4200 | |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 89 | 2000 | SH | SHR/OTHR | 20 | | 2000 |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 1353 | 30392 | SH | SHARED | 21 | 21142 | 9250 |

| D | Issuer | Class | CUSIP | Value | Shares | SH/PRN | Discretion | Mgr | Shared | None |
|---|--------|-------|-------|-------|--------|--------|-----------|-----|--------|------|
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 187 | 4200 | SH | SHR/OTHR | 21 | | 4200 |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 18 | 424 | SH | SHR/OTHR | 22 | | 424 |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 1778 | 39931 | SH | SHARED | 23 | 39931 | |
| D | AUTOMATIC DATA PROCESSING IN | COM | 05301510 | 1009 | 22660 | SH | SHARED | 23 | | 22660 |
| D | AUTONATION INC | COM | 05329W10 | 3583 | 228848 | SH | SHARED | | 228848 | |
| D | AUTONATION INC | COM | 05329W10 | 334 | 21334 | SH | SHARED | 01 | 21334 | |
| D | AUTONATION INC | COM | 05329W10 | 467 | 29852 | SH | SHARED | 02 | 29852 | |
| D | AUTONATION INC | COM | 05329W10 | 10 | 677 | SH | SHARED | 06 | | 677 |
| D | AUTONATION INC | COM | 05329W10 | 911 | 58210 | SH | SHARED | 10 | 58210 | |
| D | AUTONATION INC | COM | 05329W10 | 16 | 1043 | SH | SHARED | 14 | | 1043 |
| D | AUTOZONE INC | COM | 05333210 | 75 | 627 | SH | SHARED | | | 627 |
| D | AUTOZONE INC | COM | 05333210 | 19721 | 164465 | SH | SHARED | | 160465 | 4000 |
| D | AUTOZONE INC | COM | 05333210 | 1686 | 14061 | SH | SHARED | 01 | 11116 | 2945 |
| D | AUTOZONE INC | COM | 05333210 | 296 | 2475 | SH | SHR/OTHR | 01 | | 2475 |
| D | AUTOZONE INC | COM | 05333210 | 1887 | 15742 | SH | SHARED | 02 | 15742 | |
| D | AUTOZONE INC | COM | 05333210 | 34 | 290 | SH | SHARED | 06 | | 290 |
| D | AUTOZONE INC | COM | 05333210 | 53862 | 449195 | SH | SHARED | 10 | 448495 | 700 |
| D | AUTOZONE INC | COM | 05333210 | 83 | 700 | SH | SHARED | 14 | | 700 |
| D | AUTOZONE INC | COM | 05333210 | 55 | 465 | SH | SHARED | 20 | 300 | 165 |
| D | AUTOZONE INC | COM | 05333210 | 4 | 35 | SH | SHR/OTHR | 20 | | 35 |
| D | AUTOZONE INC | COM | 05333210 | 25 | 210 | SH | SHARED | 21 | | 210 |
| D | AUTOZONE INC | COM | 05333210 | 11 | 100 | SH | SHARED | 22 | 100 | |
| D | AUTOZONE INC | COM | 05333210 | 17 | 150 | SH | SHR/OTHR | 23 | | 150 |
| D | AVALON HLDGS CORP | CL A | 05343P10 | 0 | 68 | SH | SHARED | | | 68 |
| D | AVALON PHARMACEUTICALS INC | COM | 05346P10 | 1 | 398 | SH | SHARED | | | 398 |
| D | AVANIR PHARMACEUTICALS | CL A NEW | 05348P40 | 1 | 1110 | SH | SHARED | | | 1110 |
| D | AVANEX CORP | COM | 05348W10 | 76 | 76393 | SH | SHARED | | | 76393 |
| D | AVALONBAY CMNTYS INC | COM | 05348410 | 7373 | 78326 | SH | SHARED | | 77126 | 1200 |
| D | AVALONBAY CMNTYS INC | COM | 05348410 | 160 | 1700 | SH | SHARED | 01 | 1700 | |
| D | AVALONBAY CMNTYS INC | COM | 05348410 | 28 | 300 | SH | SHR/OTHR | 01 | | 300 |
| D | AVALONBAY CMNTYS INC | COM | 05348410 | 110 | 1171 | SH | SHARED | 02 | 1171 | |
| D | AVALONBAY CMNTYS INC | COM | 05348410 | 5 | 60 | SH | SHARED | 05 | | 60 |
| D | AVALONBAY CMNTYS INC | COM | 05348410 | 26439 | 280850 | SH | SHARED | 10 | 274350 | 6500 |
| D | AVALONBAY CMNTYS INC | COM | 05348410 | 454574 | 4828706 | SH | SHARED | 11 | 2786079 | 2042627 |
| D | AVALONBAY CMNTYS INC | COM | 05348410 | 75 | 800 | SH | SHR/OTHR | 23 | | 800 |
| D | AVANT IMMUNOTHERAPEUTICS INC | COM | 05349110 | 0 | 1932 | SH | SHARED | | | 1932 |
| D | AVATAR HLDGS INC | COM | 05349410 | 197 | 4732 | SH | SHARED | | | 4732 |
| D | AVATAR HLDGS INC | COM | 05349410 | 22 | 542 | SH | SHARED | 02 | | 542 |
| D | AVATAR HLDGS INC | COM | 05349410 | 125 | 3000 | SH | SHARED | 10 | | 3000 |
| D | AVENTINE RENEWABLE ENERGY | COM | 05356X40 | 13189 | 1033676 | SH | SHARED | | | 1033676 |
| D | AVENTINE RENEWABLE ENERGY | COM | 05356X40 | 59 | 4700 | SH | SHARED | 01 | | 4700 |
| D | AVENTINE RENEWABLE ENERGY | COM | 05356X40 | 1463 | 114700 | SH | SHARED | 10 | | 114700 |
| D | AVERY DENNISON CORP | COM | 05361110 | 6532 | 122936 | SH | SHARED | | 122936 | |
| D | AVERY DENNISON CORP | COM | 05361110 | 1245 | 23442 | SH | SHARED | 01 | 13367 | 10075 |
| D | AVERY DENNISON CORP | COM | 05361110 | 658 | 12385 | SH | SHARED | 01 | | 12385 |
| D | AVERY DENNISON CORP | COM | 05361110 | 830 | 15631 | SH | SHARED | 02 | 15631 | |
| D | AVERY DENNISON CORP | COM | 05361110 | 34 | 640 | SH | SHARED | 06 | | 640 |
| D | AVERY DENNISON CORP | COM | 05361110 | 2758 | 51917 | SH | SHARED | 10 | 51917 | |
| D | AVERY DENNISON CORP | COM | 05361110 | 534 | 10064 | SH | SHARED | 20 | 175 | 9889 |
| D | AVERY DENNISON CORP | COM | 05361110 | 30 | 583 | SH | SHR/OTHR | 20 | | 583 |
| D | AVERY DENNISON CORP | COM | 05361110 | 159 | 3000 | SH | SHARED | 21 | 3000 | |
| D | AVERY DENNISON CORP | COM | 05361110 | 36 | 681 | SH | SHR/OTHR | 22 | | 681 |
| D | AVERY DENNISON CORP | COM | 05361110 | 260 | 4900 | SH | SHARED | 23 | 4900 | |
| D | AVERY DENNISON CORP | COM | 05361110 | 1333 | 25092 | SH | SHR/OTHR | 23 | | 25092 |
| D | AVICI SYS INC | COM NEW | 05367L80 | 1241 | 156516 | SH | SHARED | | | 156516 |
| D | AVICI SYS INC | COM NEW | 05367L80 | 105 | 13254 | SH | SHARED | 02 | | 13254 |
| D | AVID TECHNOLOGY INC | COM | 05367P10 | 56 | 2002 | SH | SHARED | | | 2002 |
| D | AVID TECHNOLOGY INC | COM | 05367P10 | 46 | 1650 | SH | SHARED | 01 | | 1650 |
| D | AVID TECHNOLOGY INC | COM | 05367P10 | 10270 | 362400 | SH | SHARED | 10 | | 362400 |
| D | AVIGEN INC | COM | 05369010 | 2 | 698 | SH | SHARED | | | 698 |
| D | AVIS BUDGET GROUP | COM | 05377410 | 3048 | 234527 | SH | SHARED | | 208032 | 26495 |
| D | AVIS BUDGET GROUP | COM | 05377410 | 360 | 27740 | SH | SHARED | 01 | 3300 | 24440 |
| D | AVIS BUDGET GROUP | COM | 05377410 | 294 | 22640 | SH | SHARED | 02 | 22640 | |
| D | AVIS BUDGET GROUP | COM | 05377410 | 49 | 3800 | SH | SHARED | 10 | 3800 | |
| D | AVISTA CORP | COM | 05379B10 | 6 | 300 | SH | SHARED | | 300 | |
| D | AVISTA CORP | COM | 05379B10 | 242 | 11240 | SH | SHARED | 01 | 11240 | |
| D | AVISTA CORP | COM | 05379B10 | 1001 | 46474 | SH | SHARED | 10 | 46474 | |
| D | AVISTAR COMMUNICATIONS CORP | COM NEW | 05379X20 | 0 | 358 | SH | SHARED | | 358 | |
| D | AVNET INC | DBCV 2.000% 3/1 | 05380TAL | 18752 | 16000000 | PRN | SHARED | | 6000000 | |
| D | AVNET INC | DBCV 2.000% 3/1 | 05380TAL | 3511 | 2996000 | PRN | SHARED | 02 | 2996000 | |
| D | AVNET INC | COM | 05380710 | 5738 | 164106 | SH | SHARED | | 108806 | 55300 |
| D | AVNET INC | COM | 05380710 | 2416 | 69100 | SH | SHARED | 01 | 23700 | 45400 |
| D | AVNET INC | COM | 05380710 | 507 | 14507 | SH | SHARED | 02 | 14507 | |
| D | AVNET INC | COM | 05380710 | 55 | 1600 | SH | SHARED | 06 | | 1600 |
| D | AVNET INC | COM | 05380710 | 34900 | 998000 | SH | SHARED | 10 | 907900 | 90100 |
| D | AVIZA TECHNOLOGY INC | COM | 05381A10 | 0 | 262 | SH | SHARED | | | 262 |
| D | AVOCENT CORP | COM | 05389310 | 416 | 17860 | SH | SHARED | | 17860 | |
| D | AVOCENT CORP | COM | 05389310 | 584 | 25095 | SH | SHARED | 01 | 7925 | 17170 |
| D | AVOCENT CORP | COM | 05389310 | 55 | 2367 | SH | SHARED | 02 | 2367 | |
| D | AVOCENT CORP | COM | 05389310 | 1764 | 75700 | SH | SHARED | 10 | 75700 | |
| D | AVON PRODS INC | COM | 05430310 | 31391 | 794127 | SH | SHARED | | 794127 | |
| D | AVON PRODS INC | COM | 05430310 | 2638 | 66753 | SH | SHARED | 01 | 58278 | 8475 |
| D | AVON PRODS INC | COM | 05430310 | 2050 | 51872 | SH | SHR/OTHR | 01 | | 51872 |
| D | AVON PRODS INC | COM | 05430310 | 19129 | 483920 | SH | SHARED | 02 | 483920 | |
| D | AVON PRODS INC | COM | 05430310 | 59392 | 1502465 | SH | SHARED | 04 | 1502465 | |
| D | AVON PRODS INC | COM | 05430310 | 8 | 220 | SH | SHARED | 05 | | 220 |
| D | AVON PRODS INC | COM | 05430310 | 5302 | 134140 | SH | SHARED | 06 | | 134140 |
| D | AVON PRODS INC | COM | 05430310 | 10987 | 277965 | SH | SHARED | 10 | 276765 | 1200 |
| D | AVON PRODS INC | COM | 05430310 | 94 | 2400 | SH | SHARED | 14 | | 2400 |
| D | AVON PRODS INC | COM | 05430310 | 6 | 170 | SH | SHARED | 19 | | 170 |
| D | AVON PRODS INC | COM | 05430310 | 51 | 1300 | SH | SHARED | 20 | 400 | 900 |
| D | AVON PRODS INC | COM | 05430310 | 39 | 1000 | SH | SHR/OTHR | 20 | | 1000 |
| D | AVON PRODS INC | COM | 05430310 | 474 | 12000 | SH | SHARED | 21 | 12000 | |
| D | AVON PRODS INC | COM | 05430310 | 89 | 2267 | SH | SHARED | 22 | 467 | 1800 |
| D | AVON PRODS INC | COM | 05430310 | 305 | 7720 | SH | SHARED | 23 | 7720 | |
| D | AVON PRODS INC | COM | 05430310 | 1391 | 35200 | SH | SHR/OTHR | 23 | | 35200 |
| D | AWARE INC MASS | COM | 05453N10 | 21 | 5101 | SH | SHARED | | | 5101 |
| D | AXA | SPONSORED ADR | 05453610 | 150 | 3791 | SH | SHARED | | | 3791 |
| D | AXA | SPONSORED ADR | 05453610 | 44 | 1120 | SH | SHARED | 21 | | 1120 |
| D | AXCELIS TECHNOLOGIES INC | COM | 05454010 | 295 | 64189 | SH | SHARED | | | 64189 |
| D | AXCELIS TECHNOLOGIES INC | COM | 05454010 | 12 | 2736 | SH | SHARED | 01 | | 2736 |
| D | AXCELIS TECHNOLOGIES INC | COM | 05454010 | 124 | 27000 | SH | SHARED | 10 | | 27000 |
| D | AXCELIS TECHNOLOGIES INC | COM | 05454010 | 13 | 2828 | SH | SHARED | 23 | | 2828 |
| D | AXESSTEL INC | COM | 05459710 | 0 | 419 | SH | SHARED | | | 419 |
| D | AXSYS TECHNOLOGIES INC | COM | 05461510 | 43 | 1189 | SH | SHARED | | | 1189 |
| D | AXSYS TECHNOLOGIES INC | COM | 05461510 | 43 | 1200 | SH | SHARED | 02 | | 1200 |
| D | AXCAN PHARMA INC | COM | 05492310 | 459 | 19984 | SH | SHARED | | | 19984 |
| D | BB&T CORP | COM | 05493710 | 20224 | 659439 | SH | SHARED | | | 659439 |
| D | BB&T CORP | COM | 05493710 | 1563 | 50973 | SH | SHARED | 01 | | 50973 |
| D | BB&T CORP | COM | 05493710 | 250 | 8174 | SH | SHARED | 02 | | 8174 |
| D | BB&T CORP | COM | 05493710 | 7 | 260 | SH | SHARED | 05 | | 260 |
| D | BB&T CORP | COM | 05493710 | 152 | 4960 | SH | SHARED | 06 | | 4960 |
| D | BB&T CORP | COM | 05493710 | 11511 | 375329 | SH | SHARED | 10 | 357029 | 18300 |
| D | BB&T CORP | COM | 05493710 | 291 | 9500 | SH | SHARED | 14 | | 9500 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | BB&T CORP | COM | 05493710 | 157 | 5141 SH | SHR/OTHR | 20 | | | 5141 |
| D | BB&T CORP | COM | 05493710 | 98 | 3203 SH | SHARED | 21 | 3203 | | |
| D | BB&T CORP | COM | 05493710 | 49 | 1600 SH | SHR/OTHR | 22 | | | 1600 |
| D | BB&T CORP | COM | 05493710 | 95 | 3100 SH | SHR/OTHR | 23 | | | 3100 |
| D | BCSB BANCORP INC | COM | 05494810 | 0 | 43 SH | SHARED | | | 43 | |
| D | B & G FOODS INC NEW | CL A | 05508N10 | 9 | 959 SH | SHARED | | | 959 | |
| D | B & G FOODS INC NEW | CL A | 05508N10 | 46 | 4600 SH | SHARED | 02 | 4600 | | |
| D | BCB BANCORP INC | COM | 05529N10 | 1 | 122 SH | SHARED | | | 122 | |
| D | BCE INC | COM NEW | 05534B76 | 326410 | 8213659 SH | SHARED | | | 8213659 | |
| D | BCE INC | COM NEW | 05534B76 | 219 | 5522 SH | SHARED | 01 | 5322 | | 200 |
| D | BCE INC | COM NEW | 05534B76 | 7 | 201 SH | SHARED | 05 | 201 | | |
| D | BCE INC | COM NEW | 05534B76 | 58 | 1463 SH | SHARED | 06 | | | 1463 |
| D | BCE INC | COM NEW | 05534B76 | 959 | 24149 SH | SHARED | 10 | 24149 | | |
| D | BCE INC | COM NEW | 05534B76 | 585 | 14739 SH | SHARED | 14 | | | 14739 |
| D | BFC FINL CORP | CL A | 05538420 | 369 | 244457 SH | SHARED | | | 244457 | |
| D | BHP BILLITON PLC | SPONSORED ADR | 05545E20 | 98 | 1602 SH | SHARED | | | 1602 | |
| D | BHP BILLITON PLC | SPONSORED ADR | 05545E20 | 36 | 600 SH | SHARED | 01 | | | 600 |
| D | BHP BILLITON PLC | SPONSORED ADR | 05545E20 | 177 | 2900 SH | SHARED | 02 | 2900 | | |
| D | BIW LTD | COM | 05547U10 | 0 | 39 SH | SHARED | | | 39 | |
| D | BJS WHOLESALE CLUB INC | COM | 05548J10 | 2930 | 86633 SH | SHARED | | | 66216 | | 20417 |
| D | BJS WHOLESALE CLUB INC | COM | 05548J10 | 7761 | 229432 SH | SHARED | | | 207032 | | 22400 |
| D | BJS WHOLESALE CLUB INC | COM | 05548J10 | 8747 | 258571 SH | SHARED | 01 | 211943 | | 46628 |
| D | BJS WHOLESALE CLUB INC | COM | 05548J10 | 683 | 20197 SH | SHR/OTHR | 01 | | | 20197 |
| D | BJS WHOLESALE CLUB INC | COM | 05548J10 | 241 | 7136 SH | SHARED | 02 | 7136 | | |
| D | BJS WHOLESALE CLUB INC | COM | 05548J10 | 711 | 21019 SH | SHARED | 04 | | | 21019 |
| D | BJS WHOLESALE CLUB INC | COM | 05548J10 | 29730 | 878820 SH | SHARED | 10 | 755200 | | 123620 |
| D | BJS WHOLESALE CLUB INC | COM | 05548J10 | 5950 | 175887 SH | SHARED | 19 | | | 175887 |
| D | BJS WHOLESALE CLUB INC | COM | 05548J10 | 1330 | 39342 SH | SHARED | 20 | 32015 | | 7327 |
| D | BJS WHOLESALE CLUB INC | COM | 05548J10 | 110 | 3280 SH | SHR/OTHR | 20 | | | 3280 |
| D | BJS WHOLESALE CLUB INC | COM | 05548J10 | 257 | 7600 SH | SHARED | 22 | 4600 | | 3000 |
| D | BJS WHOLESALE CLUB INC | COM | 05548J10 | 0 | 25 SH | SHR/OTHR | 22 | | | 25 |
| D | BJS WHOLESALE CLUB INC | COM | 05548J10 | 628 | 18566 SH | SHARED | 23 | 10966 | | 7600 |
| D | BJS WHOLESALE CLUB INC | COM | 05548J10 | 27 | 823 SH | SHR/OTHR | 23 | | | 823 |
| D | BJ SVCS CO | COM | 05548J10 | 31399 | 1294289 SH | SHARED | | | 1294289 | |
| D | BJ SVCS CO | COM | 05548J10 | 774 | 31923 SH | SHARED | 01 | 29718 | | 2205 |
| D | BJ SVCS CO | COM | 05548J10 | 3 | 150 SH | SHR/OTHR | 01 | | | 150 |
| D | BJ SVCS CO | COM | 05548J10 | 3492 | 143947 SH | SHARED | 02 | 143947 | | |
| D | BJ SVCS CO | COM | 05548J10 | 76 | 3145 SH | SHARED | 04 | 3145 | | |
| D | BJ SVCS CO | COM | 05548J10 | 5 | 210 SH | SHARED | 05 | 210 | | |
| D | BJ SVCS CO | COM | 05548J10 | 67 | 2780 SH | SHARED | 06 | | | 2780 |
| D | BJ SVCS CO | COM | 05548J10 | 3976 | 163902 SH | SHARED | 10 | 163902 | | |
| D | BJ SVCS CO | COM | 05548J10 | 190 | 7845 SH | SHARED | 21 | 7845 | | |
| D | BJ SVCS CO | COM | 05548J10 | 19 | 800 SH | SHARED | 22 | 200 | | 600 |
| D | BJ SVCS CO | COM | 05548J10 | 24 | 1000 SH | SHR/OTHR | 22 | | | 1000 |
| D | BOK FINL CORP | COM NEW | 05561Q20 | 17 | 331 SH | SHARED | | | 331 | |
| D | BOK FINL CORP | COM NEW | 05561Q20 | 495 | 9577 SH | SHARED | 02 | 9577 | | |
| D | BP PLC | SPONSORED ADR | 05562210 | 93 | 1276 SH | SHARED | | | 1276 | |
| D | BP PLC | SPONSORED ADR | 05562210 | 43 | 600 SH | SHR/OTHR | | | | 600 |
| D | BP PLC | SPONSORED ADR | 05562210 | 124386 | 1699959 SH | SHARED | | | 1699959 | |
| D | BP PLC | SPONSORED ADR | 05562210 | 14534 | 198642 SH | SHARED | 01 | 65760 | | 132882 |
| D | BP PLC | SPONSORED ADR | 05562210 | 5180 | 70795 SH | SHARED | 01 | | | 70795 |
| D | BP PLC | SPONSORED ADR | 05562210 | 2355 | 32197 SH | SHARED | 10 | 31933 | | 264 |
| D | BP PLC | SPONSORED ADR | 05562210 | 4412 | 60309 SH | SHARED | 20 | 17138 | | 43171 |
| D | BP PLC | SPONSORED ADR | 05562210 | 2294 | 31362 SH | SHR/OTHR | 20 | | | 31362 |
| D | BP PLC | SPONSORED ADR | 05562210 | 6385 | 87268 SH | SHARED | 21 | 87135 | | 133 |
| D | BP PLC | SPONSORED ADR | 05562210 | 292 | 4000 SH | SHARED | 21 | | | 4000 |
| D | BP PLC | SPONSORED ADR | 05562210 | 344 | 4708 SH | SHARED | 22 | 4052 | | 656 |
| D | BP PLC | SPONSORED ADR | 05562210 | 429 | 5864 SH | SHARED | 22 | | | 5864 |
| D | BP PLC | SPONSORED ADR | 05562210 | 21391 | 292357 SH | SHARED | 23 | 284971 | | 7386 |
| D | BP PLC | SPONSORED ADR | 05562210 | 22068 | 301604 SH | SHR/OTHR | 23 | | | 301604 |
| D | BP PRUDHOE BAY RTY TR | UNIT BEN INT | 05563010 | 6600 | 82296 SH | SHARED | | | 82296 | |
| D | BP PRUDHOE BAY RTY TR | UNIT BEN INT | 05563010 | 176 | 2200 SH | SHARED | 01 | | | 2200 |
| D | BP PRUDHOE BAY RTY TR | UNIT BEN INT | 05563010 | 7931 | 98900 SH | SHARED | 10 | 98900 | | |
| D | BP PRUDHOE BAY RTY TR | UNIT BEN INT | 05563010 | 51 | 640 SH | SHR/OTHR | 23 | | | 640 |
| D | BRE PROPERTIES INC | NOTE 4.125% 8/1 | 05564EBH | 4600 | 5000000 PRN | SHARED | | | 5000000 | |
| D | BRE PROPERTIES INC | NOTE 4.125% 8/1 | 05564EBH | 4600 | 5000000 PRN | SHARED | 02 | 5000000 | | |
| D | BRE PROPERTIES INC | CL A | 05564E10 | 661 | 16309 SH | SHARED | | | 16309 | |
| D | BRE PROPERTIES INC | CL A | 05564E10 | 672 | 16600 SH | SHARED | | | | 16600 |
| D | BRE PROPERTIES INC | CL A | 05564E10 | 1663 | 41053 SH | SHARED | 02 | 41053 | | |
| D | BRE PROPERTIES INC | CL A | 05564E10 | 8823 | 217700 SH | SHARED | 10 | 217700 | | |
| D | BRE PROPERTIES INC | CL A | 05564E10 | 185176 | 4568870 SH | SHARED | 11 | 2718020 | | 1850850 |
| D | BRE PROPERTIES INC | CL A | 05564E10 | 28 | 700 SH | SHR/OTHR | 23 | | | 700 |
| D | BRT RLTY TR | SH BEN INT NEW | 05564E30 | 0 | 12 SH | SHARED | | | 12 | |
| D | BRT RLTY TR | SH BEN INT NEW | 05564E30 | 38 | 2500 SH | SHARED | 01 | 12 | | 2500 |
| D | BNC BANCORP | COM | 05566710 | 2 | 165 SH | SHARED | | | 165 | |
| D | BOFI HLDG INC | COM | 05566U10 | 1 | 146 SH | SHARED | | | 146 | |
| D | BSD MED CORP DEL | COM | 05566J20 | 1 | 267 SH | SHARED | | | 267 | |
| D | BT GROUP PLC | ADR | 05577H10 | 21 | 400 SH | SHARED | | | 400 | |
| D | BMC SOFTWARE INC | ADR | 05577820 | 57687 | 1069866 SH | SHARED | | | 1069866 | |
| D | BMC SOFTWARE INC | COM | 05592110 | 37 | 1050 SH | SHARED | | | 1050 | |
| D | BMC SOFTWARE INC | COM | 05592110 | 12882 | 361456 SH | SHARED | | | 361456 | |
| D | BMC SOFTWARE INC | COM | 05592110 | 2169 | 60874 SH | SHARED | 01 | 46919 | | 13955 |
| D | BMC SOFTWARE INC | COM | 05592110 | 234 | 6575 SH | SHR/OTHR | 01 | | | 6575 |
| D | BMC SOFTWARE INC | COM | 05592110 | 174 | 4907 SH | SHARED | 02 | 4907 | | |
| D | BMC SOFTWARE INC | COM | 05592110 | 2 | 70 SH | SHARED | 05 | 70 | | |
| D | BMC SOFTWARE INC | COM | 05592110 | 100 | 2810 SH | SHARED | 06 | | | 2810 |
| D | BMC SOFTWARE INC | COM | 05592110 | 3477 | 97575 SH | SHARED | 10 | 97575 | | |
| D | BMC SOFTWARE INC | COM | 05592110 | 292 | 8221 SH | SHARED | 14 | | | 8221 |
| D | BMC SOFTWARE INC | COM | 05592110 | 35 | 1000 SH | SHARED | 20 | 1000 | | |
| D | BMC SOFTWARE INC | COM | 05592110 | 24 | 685 SH | SHR/OTHR | 21 | | | 685 |
| D | BMC SOFTWARE INC | COM | 05592110 | 10 | 300 SH | SHARED | 22 | 300 | | |
| D | BPI ENERGY HOLDINGS INC | COM | 05593410 | 0 | 1 SH | SHARED | | | 1 | |
| D | BNCCORP INC | COM | 05593610 | 0 | 75 SH | SHARED | | | 75 | |
| D | BTU INTL INC | COM | 05603210 | 2 | 202 SH | SHARED | | | 202 | |
| D | B2B INTERNET HOLDRS TR | DEPOSITY RCPT | 05603310 | 0 | 60 SH | SHARED | 02 | 60 | | |
| D | BABCOCK & BROWN AIR LTD | SPONSORED ADR | 05614P10 | 0 | 50 SH | SHARED | | | 50 | |
| D | BABYUNIVERSE INC | COM | 05633210 | 1 | 231 SH | SHARED | | | 231 | |
| D | BADGER METER INC | COM | 05652510 | 310 | 6912 SH | SHARED | | | 6912 | |
| D | BADGER METER INC | COM | 05652510 | 40 | 900 SH | SHARED | 01 | 900 | | |
| D | BADGER METER INC | COM | 05652510 | 3011 | 67000 SH | SHARED | 10 | 67000 | | |
| D | BAIDU COM INC | SPON ADR REP A | 05675210 | 10801 | 27711 SH | SHARED | | | 27711 | |
| D | BAIDU COM INC | SPON ADR REP A | 05675210 | 6977 | 17900 SH | SHARED | 10 | 17900 | | |
| D | BAKER MICHAEL CORP | COM | 05714910 | 142 | 3456 SH | SHARED | | | 3456 | |
| D | BAKER MICHAEL CORP | COM | 05714910 | 32 | 800 SH | SHARED | 01 | 800 | | |
| D | BAKER MICHAEL CORP | COM | 05714910 | 1023 | 24900 SH | SHARED | 10 | 24900 | | |
| D | BAKER HUGHES INC | COM | 05722410 | 48708 | 600595 SH | SHARED | | | 600595 | |
| D | BAKER HUGHES INC | COM | 05722410 | 4801 | 59204 SH | SHARED | 01 | 56224 | | 2980 |
| D | BAKER HUGHES INC | COM | 05722410 | 36 | 450 SH | SHR/OTHR | 01 | | | 450 |
| D | BAKER HUGHES INC | COM | 05722410 | 1683 | 20757 SH | SHARED | 02 | 20757 | | |
| D | BAKER HUGHES INC | COM | 05722410 | 3244 | 40000 SH | SHARED | 04 | 40000 | | |
| D | BAKER HUGHES INC | COM | 05722410 | 11 | 140 SH | SHARED | 05 | 140 | | |
| D | BAKER HUGHES INC | COM | 05722410 | 20046 | 247177 SH | SHARED | 06 | | | 247177 |
| D | BAKER HUGHES INC | COM | 05722410 | 89416 | 1102544 SH | SHARED | 10 | 1058044 | | 44500 |
| D | BAKER HUGHES INC | COM | 05722410 | 1054 | 13000 SH | SHARED | 14 | | | 13000 |

```
D BAKER HUGHES INC              COM         05722410    3675    45315 SH    SHARED    16          45315
D BAKER HUGHES INC              COM         05722410      50      620 SH    SHARED    20            465            155
D BAKER HUGHES INC              COM         05722410       7       90 SH    SHARED    21             90
D BAKER HUGHES INC              COM         05722410     391     4825 SH    SHARED    22           2975           1850
D BAKER HUGHES INC              COM         05722410     113     1400 SH    SHR/OTHR  22                          1400
D BAKER HUGHES INC              COM         05722410     210     2600 SH    SHARED    23           2600
D BAKER HUGHES INC              COM         05722410      63      780 SH    SHR/OTHR  23                           780
D BAKER HUGHES INC              COM         05722410     114     1409 SH    SHARED    24           1409
D BAKERS FOOTWEAR GROUP INC     COM         05746510       0      137 SH    SHARED                  137
D BALCHEM CORP                  COM         05766520     818    36563 SH    SHARED               36563
D BALDOR ELEC CO                COM         05774110     637    18932 SH    SHARED               18932
D BALDOR ELEC CO                COM         05774110      30      900 SH    SHARED    01            900
D BALDOR ELEC CO                COM         05774110   10518   312500 SH    SHARED    10         312500
D BALDWIN & LYONS INC           CL B        05775520      16      589 SH    SHARED                  589
D BALDWIN & LYONS INC           CL B        05775520      96     3500 SH    SHARED    10           3500
D BALDWIN TECHNOLOGY INC        CL A        05826410       1      374 SH    SHARED                  374
D BALL CORP                     COM         05849810    8262   183604 SH    SHARED              183604
D BALL CORP                     COM         05849810     665    14798 SH    SHARED    01          14798
D BALL CORP                     COM         05849810    1070    23795 SH    SHARED    02          23795
D BALL CORP                     COM         05849810      23      520 SH    SHARED    06                           520
D BALL CORP                     COM         05849810    2848    63311 SH    SHARED    10          63311
D BALL CORP                     COM         05849810    3683    81856 SH    SHARED    16          81856
D BALLANTYNE OMAHA INC          COM         05851610       2      360 SH    SHARED                  360
D BALLARD PWR SYS INC           COM         05858H10      78    15000 SH    SHARED               15000
D BALLARD PWR SYS INC           COM         05858H10     928   176551 SH    SHARED              166551          10000
D BALLARD PWR SYS INC           COM         05858H10       0       90 SH    SHARED    19             90
D BALLY TECHNOLOGIES INC        COM         05874R10      78     1569 SH    SHARED                 1569
D BALLY TECHNOLOGIES INC        COM         05874R10     176     3545 SH    SHARED    01           3545
D BALLY TECHNOLOGIES INC        COM         05874R10     154     3100 SH    SHARED    10           3100
D BANCFIRST CORP                COM         05945P10     449    10500 SH    SHARED    10          10500
D BANCO BILBAO VIZCAYA ARGENTA  SPONSORED ADR 05946K10  2565   105779 SH    SHARED              105779
D BANCO BILBAO VIZCAYA ARGENTA  SPONSORED ADR 05946K10    42     1758 SH    SHARED    01           1758
D BANCO BILBAO VIZCAYA ARGENTA  SPONSORED ADR 05946K10  1385    57114 SH    SHARED    02          57114
D BANCO BILBAO VIZCAYA ARGENTA  SPONSORED ADR 05946K10    27     1118 SH    SHARED    06                          1118
D BANCO BRADESCO S A            SP ADR PFD NEW 05946030 79330  2479068 SH   SHARED             2477668           1400
D BANCO BRADESCO S A            SP ADR PFD NEW 05946030 13884   433900 SH   SHARED              433900
D BANCO BRADESCO S A            SP ADR PFD NEW 05946030  3627   113350 SH   SHARED    02        113350
D BANCO BRADESCO S A            SP ADR PFD NEW 05946030 11283   352600 SH   SHARED    04        352600
D BANCO BRADESCO S A            SP ADR PFD NEW 05946030  1568    49000 SH   SHARED    06                         49000
D BANCO BRADESCO S A            SP ADR PFD NEW 05946030 85113  2659800 SH   SHARED    10       2659800
D BANCO BRADESCO S A            SP ADR PFD NEW 05946030   595    18600 SH   SHARED    14          18600          18600
D BANCO BRADESCO S A            SP ADR PFD NEW 05946030   864    27000 SH   SHARED    24          27000
D BANCO DE CHILE                SPONSORED ADR 05952010      5      127 SH   SHARED                  127
D BANCO ITAU HLDG FINANCIERA S  SP ADR 500 PFD 05960220  114     4420 SH   SHARED                                4420
D BANCO ITAU HLDG FINANCIERA S  SP ADR 500 PFD 05960220 28862  1116117 SH  SHARED             1114617           1500
D BANCO ITAU HLDG FINANCIERA S  SP ADR 500 PFD 05960220  7142   276200 SH  SHARED    02        276200
D BANCO ITAU HLDG FINANCIERA S  SP ADR 500 PFD 05960220   185     7164 SH  SHARED    04                          7164
D BANCO ITAU HLDG FINANCIERA S  SP ADR 500 PFD 05960220  5327   206000 SH  SHARED    04        206000
D BANCO ITAU HLDG FINANCIERA S  SP ADR 500 PFD 05960220  2017    78000 SH  SHARED    06                         78000
D BANCO ITAU HLDG FINANCIERA S  SP ADR 500 PFD 05960220 16457   636400 SH  SHARED    10        636400
D BANCO MACRO SA                SPON ADR B  05961W10     148     6000 SH    SHARED                                6000
D BANCO MACRO SA                SPON ADR B  05961W10    8970   362606 SH    SHARED              362606
D BANCO MACRO SA                SPON ADR B  05961W10     697    28200 SH    SHARED    01          28200
D BANCO MACRO SA                SPON ADR B  05961W10   17019   687950 SH    SHARED    10         679450           8500
D BANCO MACRO SA                SPON ADR B  05961W10     173     7000 SH    SHARED    15           7000           7000
D BANCO MACRO SA                SPON ADR B  05961W10     330    13350 SH    SHARED    24          13350
D BANCO SANTANDER SA            ADR         05964H10     281    13056 SH    SHARED               13056
D BANCO SANTANDER SA            ADR         05964H10      57     2650 SH    SHARED    21           2650
D BANCO SANTANDER CHILE NEW     SP ADR REP COM 05965X10  339     6654 SH    SHARED                6654
D BANCO SANTANDER CHILE NEW     SP ADR REP COM 05965X10  775    15200 SH    SHARED    02          15200
D BANCOLOMBIA S A               SPON ADR PREF 05968L10  2547    74871 SH    SHARED               74871
D BANCOLOMBIA S A               SPON ADR PREF 05968L10   680    20000 SH    SHARED    04          20000
D BANCOLOMBIA S A               SPON ADR PREF 05968L10 34288  1007900 SH    SHARED    10       1007900
D BANCOLOMBIA S A               SPON ADR PREF 05968L10   649    19100 SH    SHARED    24          19100
D BANCORP INC DEL               COM         05969A10       1      110 SH    SHARED                  110
D BANCORP RHODE ISLAND INC      COM         05969010      11      335 SH    SHARED                  335
D BANCORP RHODE ISLAND INC      COM         05969010      42     1250 SH    SHR/OTHR  23                          1250
D BANCORPSOUTH INC              COM         05969210      17      749 SH    SHARED                  749
D BANCORPSOUTH INC              COM         05969210      18      800 SH    SHARED    01            800
D BANCORPSOUTH INC              COM         05969210     427    18100 SH    SHARED    04          18100
D BANCORPSOUTH INC              COM         05969210     252    10696 SH    SHARED    10          10696
D BANCROFT FUND LTD             COM         05969510    1061    55000 SH    SHARED               55000
D BANCTRUST FINANCIAL GP        COM         05978R10       6      553 SH    Named                  553
D BANCTRUST FINANCIAL GP        COM         05978R10      10      900 SH    SHARED    02            900
D BANK OF AMERICA CORPORATION   COM         06050510      70     1700 SH    SHARED                               1700
D BANK OF AMERICA CORPORATION   COM         06050510  298154  7226233 SH    SHARED             7134983          91250
D BANK OF AMERICA CORPORATION   COM         06050510   52612  1275138 SH    SHARED    01        945598         329540
D BANK OF AMERICA CORPORATION   COM         06050510    6364   154248 SH    SHR/OTHR  01                       154248
D BANK OF AMERICA CORPORATION   COM         06050510    3279    79477 SH    SHARED    02          79477
D BANK OF AMERICA CORPORATION   COM         06050510    3960    96000 SH    SHARED    04          96000
D BANK OF AMERICA CORPORATION   COM         06050510    9869   239200 SH    SHARED    05         239200
D BANK OF AMERICA CORPORATION   COM         06050510    1757    42597 SH    SHARED    06                         42597
D BANK OF AMERICA CORPORATION   COM         06050510  620824 15046633 SH    SHARED    10       4678601         368032
D BANK OF AMERICA CORPORATION   COM         06050510      63     1540 SH    SHR/OTHR  10                          1540
D BANK OF AMERICA CORPORATION   COM         06050510    2954    71613 SH    SHARED    14          71613
D BANK OF AMERICA CORPORATION   COM         06050510    1072    26000 SH    SHARED    15          26000
D BANK OF AMERICA CORPORATION   COM         06050510    7183   174094 SH    SHARED    20          85802          88292
D BANK OF AMERICA CORPORATION   COM         06050510    3576    86672 SH    SHR/OTHR  20                         86672
D BANK OF AMERICA CORPORATION   COM         06050510     914    22153 SH    SHARED    21          11983          10170
D BANK OF AMERICA CORPORATION   COM         06050510    2127    51570 SH    SHARED    22          37915          13655
D BANK OF AMERICA CORPORATION   COM         06050510     447    10853 SH    SHR/OTHR  22                         10853
D BANK OF AMERICA CORPORATION   COM         06050510    9721   235616 SH    SHARED    23         218716          16900
D BANK OF AMERICA CORPORATION   COM         06050510   12584   305000 SH    SHR/OTHR  23                        305000
D BANK FLA CORP NAPLES          COM         06212810       3      329 SH    SHARED                  329
D BANK OF GRANITE CORP          COM         06240110       4      473 SH    SHARED                  473
D BANK OF GRANITE CORP          COM         06240110      31     3000 SH    SHARED    02           3000
D BANK OF GRANITE CORP          COM         06240110      62     5925 SH    SHARED    10           5925
D BANK HAWAII CORP              COM         06254010   16513   322912 SH    SHARED              322912
D BANK HAWAII CORP              COM         06254010     880    17225 SH    SHARED    01           1625          15600
D BANK HAWAII CORP              COM         06254010     328     6423 SH    SHARED    02           6423
D BANK HAWAII CORP              COM         06254010     138     2700 SH    SHARED    10           2700
D BANK HAWAII CORP              COM         06254010      51     1000 SH    SHR/OTHR  23                          1000
D BANK OF MARIN BANCORP         COM         06342510       3      127 SH    SHARED                  127
D BANK MONTREAL QUE             COM         06367110     261     4628 SH    SHARED                 4628
D BANK MONTREAL QUE             COM         06367110   20754   366684 SH    SHARED              366684
D BANK MONTREAL QUE             COM         06367110      46      827 SH    SHARED    01            827
D BANK MONTREAL QUE             COM         06367110      12      228 SH    SHARED    05            228
D BANK MONTREAL QUE             COM         06367110     130     2300 SH    SHARED    06                          2300
D BANK MONTREAL QUE             COM         06367110     868    15352 SH    SHARED    10          15352
D BANK MONTREAL QUE             COM         06367110     592    10469 SH    SHARED    14          10469          10469
D BANK MUTUAL CORP NEW          COM         06375010     422    40000 SH    SHARED               40000
D BANK OF THE OZARKS INC        COM         06390410       2      109 SH    SHARED                  109
D BANK OF THE OZARKS INC        COM         06390410       1       75 SH    SHARED    01             75
D BANK OF NEW YORK MELLON CORP  COM         06405810    4061    83296 SH    SHARED               62343          20953
```

| | Name | Class | CUSIP | Val | Shares | Type | Code | Amt1 | Amt2 |
|---|---|---|---|---|---|---|---|---|---|
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 74893 | 1535963 SH | SHARED | | 1466663 | 69300 |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 30548 | 626503 SH | SHARED | 01 | 527071 | 99432 |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 20558 | 421632 SH | SHR/OTHR | 01 | | 421632 |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 4835 | 99162 SH | SHARED | 02 | 99162 | |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 1129 | 23162 SH | SHARED | 04 | | 23162 |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 1321 | 27100 SH | SHARED | 04 | 27100 | |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 22 | 464 SH | SHARED | 05 | 464 | |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 42518 | 871996 SH | SHARED | 06 | | 871996 |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 76697 | 1572961 SH | SHARED | 10 | 1508102 | 64859 |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 3110 | 63792 SH | SHARED | 14 | | 63792 |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 6157 | 126289 SH | SHARED | 16 | 126289 | |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 8723 | 178903 SH | SHARED | 19 | | 178903 |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 4009 | 82235 SH | SHARED | 20 | 39390 | 42845 |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 624 | 12810 SH | SHR/OTHR | 20 | | 12810 |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 328 | 6729 SH | SHARED | 21 | 6498 | 231 |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 850 | 17440 SH | SHARED | 22 | 16075 | 1365 |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 562 | 11531 SH | SHARED | 22 | | 11531 |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 9302 | 190777 SH | SHARED | 23 | 169377 | 21400 |
| D | BANK OF NEW YORK MELLON CORP | COM | 06405810 | 13716 | 281314 SH | SHR/OTHR | 23 | | 281314 |
| D | BANK NOVA SCOTIA HALIFAX | COM | 06414910 | 12199 | 241571 SH | SHARED | | 238771 | 2800 |
| D | BANK NOVA SCOTIA HALIFAX | COM | 06414910 | 67 | 1337 SH | SHARED | 01 | 1337 | |
| D | BANK NOVA SCOTIA HALIFAX | COM | 06414910 | 87120 | 1725150 SH | SHARED | 04 | 1725150 | |
| D | BANK NOVA SCOTIA HALIFAX | COM | 06414910 | 22 | 452 SH | SHARED | 05 | 452 | |
| D | BANK NOVA SCOTIA HALIFAX | COM | 06414910 | 242 | 4800 SH | SHARED | 06 | | 4800 |
| D | BANK NOVA SCOTIA HALIFAX | COM | 06414910 | 1982 | 39252 SH | SHARED | 10 | 39252 | |
| D | BANK NOVA SCOTIA HALIFAX | COM | 06414910 | 483 | 9579 SH | SHARED | 14 | | 9579 |
| D | BANK NOVA SCOTIA HALIFAX | COM | 06414910 | 3787 | 75000 SH | SHARED | 16 | 75000 | |
| D | BANK OF THE CAROLINAS CORP | COM | 06425U10 | 1 | 98 SH | SHARED | | 98 | |
| D | BANK SOUTH CAROLINA CORP | COM | 06506610 | 1 | 77 SH | SHARED | | 77 | |
| D | BANK VA CHESTERFIELD | COM | 06544P10 | 0 | 79 SH | SHARED | | 79 | |
| D | BANKATLANTIC BANCORP | CL A | 06590850 | 1766 | 430733 SH | SHARED | | 430733 | |
| D | BANKATLANTIC BANCORP | CL A | 06590850 | 60 | 14700 SH | SHARED | 10 | 14700 | |
| D | BANKFINANCIAL CORP | COM | 06643P10 | 170 | 10785 SH | SHARED | | 10785 | |
| D | BANKRATE INC | COM | 06646V10 | 219 | 4566 SH | SHARED | | 4566 | |
| D | BANKRATE INC | COM | 06646V10 | 279 | 5820 SH | SHARED | 01 | 5820 | |
| D | BANKRATE INC | COM | 06646V10 | 1510 | 31400 SH | SHARED | 05 | 31400 | |
| D | BANKRATE INC | COM | 06646V10 | 16499 | 343100 SH | SHARED | 10 | 343100 | |
| D | BANKS COM INC | COM | 06647010 | 0 | 84 SH | SHARED | | 84 | |
| D | BANKUNITED FINL CORP | NOTE 3.125% 3/0 | 06652BAE | 1316 | 2000000 PRN | SHARED | | 2000000 | |
| D | BANKUNITED FINL CORP | CL A | 06652B10 | 4735 | 686298 SH | SHARED | | 686298 | |
| D | BANKUNITED FINL CORP | CL A | 06652B10 | 165 | 23970 SH | SHARED | 01 | 23970 | |
| D | BANKUNITED FINL CORP | CL A | 06652B10 | 1 | 275 SH | SHARED | 02 | 275 | |
| D | BANKUNITED FINL CORP | CL A | 06652B10 | 1762 | 255500 SH | SHARED | 10 | 255500 | |
| D | BANNER CORP | COM | 06652V10 | 537 | 18700 SH | SHARED | 10 | 18700 | |
| D | BAR HBR BANKSHARES | COM | 06684910 | 2 | 75 SH | SHARED | | 75 | |
| D | BARCLAYS BK PLC | DJAIG CMDTY 36 | 06738C77 | 4203 | 74750 SH | SHARED | | 19087 | 55663 |
| D | BARCLAYS BK PLC | DJAIG CMDTY 36 | 06738C77 | 175 | 3125 SH | SHR/OTHR | 01 | | 3125 |
| D | BARCLAYS BK PLC | DJAIG CMDTY 36 | 06738C77 | 1206 | 21455 SH | SHARED | 01 | 16320 | 5135 |
| D | BARCLAYS BK PLC | DJAIG CMDTY 36 | 06738C77 | 873 | 15535 SH | SHR/OTHR | 01 | | 15535 |
| D | BARCLAYS BK PLC | DJAIG CMDTY 36 | 06738C77 | 180 | 3210 SH | SHARED | 21 | 3210 | |
| D | BARCLAYS BK PLC | DJAIG CMDTY 36 | 06738C77 | 179 | 3190 SH | SHR/OTHR | 21 | | 3190 |
| D | BARCLAYS BK PLC | DJAIG CMDTY 36 | 06738C77 | 720 | 12819 SH | SHARED | 22 | 12444 | 375 |
| D | BARCLAYS BK PLC | DJAIG CMDTY 36 | 06738C77 | 579 | 10310 SH | SHR/OTHR | 22 | | 10310 |
| D | BARCLAYS BK PLC | DJAIG CMDTY 36 | 06738C77 | 28815 | 512436 SH | SHARED | 23 | 496141 | 16295 |
| D | BARCLAYS BK PLC | DJAIG CMDTY 36 | 06738C77 | 8839 | 157187 SH | SHR/OTHR | 23 | | 157187 |
| D | BARCLAYS PLC | ADR | 06738E20 | 5748 | 142385 SH | SHARED | | 142385 | |
| D | BARCLAYS PLC | ADR | 06738E20 | 50 | 1245 SH | SHARED | 01 | 1245 | |
| D | BARCLAYS PLC | ADR | 06738E20 | 62 | 1550 SH | SHARED | 20 | 550 | 1000 |
| D | BARD C R INC | COM | 06738310 | 10016 | 105662 SH | SHARED | | 105662 | |
| D | BARD C R INC | COM | 06738310 | 1652 | 17434 SH | SHARED | 01 | 15569 | 1865 |
| D | BARD C R INC | COM | 06738310 | 132 | 1400 SH | SHR/OTHR | 01 | | 1400 |
| D | BARD C R INC | COM | 06738310 | 3949 | 41665 SH | SHARED | 02 | 41665 | |
| D | BARD C R INC | COM | 06738310 | 5839 | 61600 SH | SHARED | 04 | 61600 | |
| D | BARD C R INC | COM | 06738310 | 5 | 60 SH | SHARED | 05 | 60 | |
| D | BARD C R INC | COM | 06738310 | 6704 | 70720 SH | SHARED | 06 | | 70720 |
| D | BARD C R INC | COM | 06738310 | 58142 | 613322 SH | SHARED | 10 | 590622 | 22700 |
| D | BARD C R INC | COM | 06738310 | 132 | 1400 SH | SHARED | 14 | 1400 | |
| D | BARD C R INC | COM | 06738310 | 66 | 700 SH | SHARED | 21 | | 700 |
| D | BARD C R INC | COM | 06738310 | 28 | 300 SH | SHR/OTHR | 23 | | 300 |
| D | BARD C R INC | COM | 06738310 | 67 | 711 SH | SHARED | 24 | 711 | |
| D | BARCLAYS BK PLC | IP MSCI IND 36 | 06739P29 | 176 | 1800 SH | SHARED | | 1800 | |
| D | BARCLAYS BK PLC | IP MSCI IND 36 | 06739P29 | 134 | 1375 SH | SHARED | 01 | 1375 | |
| D | BARCLAYS BANK PLC | SP ADR 7.1%PP3 | 06739H77 | 4 | 19930 PRN | SHARED | 02 | 19930 | |
| D | BAR ESCENTUALS INC | COM | 06751110 | 102 | 4209 SH | SHARED | | 4209 | |
| D | BARNES & NOBLE INC | COM | 06777410 | 3456 | 100322 SH | SHARED | | 69622 | 30700 |
| D | BARNES & NOBLE INC | COM | 06777410 | 1284 | 37300 SH | SHARED | 01 | 20100 | 17200 |
| D | BARNES & NOBLE INC | COM | 06777410 | 199 | 5779 SH | SHARED | 02 | 5779 | |
| D | BARNES & NOBLE INC | COM | 06777410 | 9487 | 275404 SH | SHARED | 10 | 216604 | 58800 |
| D | BARNES & NOBLE INC | COM | 06777410 | 81 | 2380 SH | SHARED | 21 | | 2380 |
| D | BARNES GROUP INC | NOTE 3.750% 8/0 | 067806AB | 10531 | 6250000 PRN | SHARED | | 6250000 | |
| D | BARNES GROUP INC | NOTE 3.375% 3/1 | 067806A2 | 13933 | 10500000 PRN | SHARED | | 0500000 | |
| D | BARNES GROUP INC | COM | 06780610 | 224 | 6731 SH | SHARED | | 6731 | |
| D | BARNES GROUP INC | COM | 06780610 | 30 | 900 SH | SHARED | 01 | 900 | |
| D | BARNES GROUP INC | COM | 06780610 | 176 | 5300 SH | SHARED | 02 | 5300 | |
| D | BARNES GROUP INC | COM | 06780610 | 12462 | 373250 SH | SHARED | 10 | 373250 | |
| D | BARRICK GOLD CORP | COM | 06790110 | 253329 | 6024477 SH | SHARED | | 6017477 | 7000 |
| D | BARRICK GOLD CORP | COM | 06790110 | 120 | 2859 SH | SHARED | 01 | 2859 | |
| D | BARRICK GOLD CORP | COM | 06790110 | 95307 | 2266525 SH | SHARED | 01 | 2266525 | |
| D | BARRICK GOLD CORP | COM | 06790110 | 8325 | 198000 SH | SHARED | 04 | 198000 | |
| D | BARRICK GOLD CORP | COM | 06790110 | 17 | 422 SH | SHARED | 05 | 422 | |
| D | BARRICK GOLD CORP | COM | 06790110 | 180 | 4292 SH | SHARED | 06 | | 4292 |
| D | BARRICK GOLD CORP | COM | 06790110 | 66144 | 1572995 SH | SHARED | 10 | 1572995 | |
| D | BARRICK GOLD CORP | COM | 06790110 | 554 | 13190 SH | SHARED | 14 | | 13190 |
| D | BARRICK GOLD CORP | COM | 06790110 | 40 | 965 SH | SHARED | 16 | 965 | |
| D | BARRICK GOLD CORP | COM | 06790110 | 197 | 4707 SH | SHR/OTHR | 20 | | 4707 |
| D | BARRICK GOLD CORP | COM | 06790110 | 13 | 330 SH | SHARED | 21 | | 330 |
| D | BARRICK GOLD CORP | COM | 06790110 | 44 | 1050 SH | SHR/OTHR | 22 | | 1050 |
| D | BARRICK GOLD CORP | COM | 06790110 | 168 | 4000 SH | SHARED | 23 | 4000 | |
| D | BARRICK GOLD CORP | COM | 06790110 | 252 | 6000 SH | SHR/OTHR | 23 | | 6000 |
| D | BARNWELL INDS INC | COM | 06822110 | 1835 | 148540 SH | SHARED | | 148540 | |
| D | BARR PHARMACEUTICALS INC | COM | 06830610 | 693 | 13064 SH | SHARED | | 13064 | |
| D | BARR PHARMACEUTICALS INC | COM | 06830610 | 5118 | 96393 SH | SHARED | | 96393 | |
| D | BARR PHARMACEUTICALS INC | COM | 06830610 | 738 | 13900 SH | SHARED | 01 | 12900 | 1000 |
| D | BARR PHARMACEUTICALS INC | COM | 06830610 | 381 | 7178 SH | SHARED | 02 | 7178 | |
| D | BARR PHARMACEUTICALS INC | COM | 06830610 | 4270 | 80415 SH | SHARED | 10 | 80415 | |
| D | BARRETT BILL CORP | COM | 06846N10 | 596 | 14257 SH | SHARED | | 14257 | |
| D | BARRETT BILL CORP | COM | 06846N10 | 628 | 15000 SH | SHARED | 01 | 4900 | 10100 |
| D | BARRETT BILL CORP | COM | 06846N10 | 269 | 6446 SH | SHARED | 02 | 6446 | |
| D | BARRETT BILL CORP | COM | 06846N10 | 711 | 17000 SH | SHARED | 10 | 17000 | |
| D | BARRETT BUSINESS SERVICES IN | COM | 06846310 | 495 | 27501 SH | SHARED | | 27501 | |
| D | BARRIER THERAPEUTICS INC | COM | 06850M10 | 2 | 577 SH | SHARED | | 577 | |
| D | BARRY R G CORP OHIO | COM | 06879810 | 136 | 19374 SH | SHARED | | 19374 | |
| D | BASIC ENERGY SVCS INC NEW | COM | 06985P10 | 159 | 7269 SH | SHARED | | 7269 | |
| D | BASIC ENERGY SVCS INC NEW | COM | 06985P10 | 125 | 5700 SH | SHARED | 01 | 5700 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | BASIC ENERGY SVCS INC NEW | COM | 06985P10 | 364 | 16600 SH | SHARED | 10 | 16600 | |
| D | BASIN WTR INC | COM | 07011T30 | 16 | 1968 SH | SHARED | | 1968 | |
| D | BASIN WTR INC | COM | 07011T30 | 141 | 17069 SH | SHR/OTHR | 01 | | 17069 |
| D | BASIN WTR INC | COM | 07011T30 | 17 | 2100 SH | SHARED | 02 | 2100 | |
| D | BASSETT FURNITURE INDS INC | COM | 07020310 | 4 | 511 SH | SHARED | | 511 | |
| D | BASSETT FURNITURE INDS INC | COM | 07020310 | 0 | 1 SH | SHARED | 01 | 1 | |
| D | BASSETT FURNITURE INDS INC | COM | 07020310 | 18 | 1975 SH | SHARED | 02 | 1975 | |
| D | BASSETT FURNITURE INDS INC | COM | 07020310 | 17 | 1900 SH | SHARED | 10 | 1900 | |
| D | BAUER EDDIE HLDGS INC | COM | 07162510 | 946 | 149100 SH | SHARED | 10 | 149100 | |
| D | BAXTER INTL INC | COM | 07181310 | 64796 | 1116220 SH | SHARED | | 1012520 | 103700 |
| D | BAXTER INTL INC | COM | 07181310 | 6069 | 104562 SH | SHARED | 01 | 96512 | 8050 |
| D | BAXTER INTL INC | COM | 07181310 | 17 | 300 SH | SHR/OTHR | 01 | | 300 |
| D | BAXTER INTL INC | COM | 07181310 | 663 | 11432 SH | SHARED | 02 | 11432 | |
| D | BAXTER INTL INC | COM | 07181310 | 7 | 126 SH | SHARED | 04 | | 126 |
| D | BAXTER INTL INC | COM | 07181310 | 8504 | 146500 SH | SHARED | 04 | 146500 | |
| D | BAXTER INTL INC | COM | 07181310 | 16 | 290 SH | SHARED | 05 | 290 | |
| D | BAXTER INTL INC | COM | 07181310 | 48439 | 834447 SH | SHARED | 06 | | 834447 |
| D | BAXTER INTL INC | COM | 07181310 | 150182 | 2587120 SH | SHARED | 10 | 2521620 | 65500 |
| D | BAXTER INTL INC | COM | 07181310 | 1732 | 29841 SH | SHARED | 14 | 3600 | 26241 |
| D | BAXTER INTL INC | COM | 07181310 | 1953 | 33655 SH | SHARED | 20 | 10515 | 23140 |
| D | BAXTER INTL INC | COM | 07181310 | 52 | 900 SH | SHR/OTHR | 20 | | 900 |
| D | BAXTER INTL INC | COM | 07181310 | 371 | 6399 SH | SHARED | 21 | 6399 | |
| D | BAXTER INTL INC | COM | 07181310 | 785 | 13537 SH | SHARED | 22 | 5875 | 7662 |
| D | BAXTER INTL INC | COM | 07181310 | 194 | 3350 SH | SHR/OTHR | 22 | | 3350 |
| D | BAXTER INTL INC | COM | 07181310 | 976 | 16825 SH | SHARED | 23 | 16825 | |
| D | BAXTER INTL INC | COM | 07181310 | 3215 | 55395 SH | SHR/OTHR | 23 | | 55395 |
| D | BAXTER INTL INC | COM | 07181310 | 120 | 2072 SH | SHARED | 24 | 2072 | |
| D | BAY NATL CORP | COM | 07250010 | 0 | 55 SH | SHARED | | 55 | |
| D | BAYTEX ENERGY TR | TRUST UNIT | 07317610 | 13401 | 701300 SH | SHARED | | 701300 | |
| D | BBVA BANCO FRANCES S A | SPONSORED ADR | 07329M10 | 198 | 26200 SH | SHARED | | 26200 | |
| D | BBVA BANCO FRANCES S A | SPONSORED ADR | 07329M10 | 303 | 40000 SH | SHARED | 04 | 40000 | |
| D | BE AEROSPACE INC | COM | 07330210 | 3655 | 69100 SH | SHARED | | 112755 | |
| D | BE AEROSPACE INC | COM | 07330210 | 2063 | 39000 SH | SHR/OTHR | 01 | 40400 | 28700 |
| D | BE AEROSPACE INC | COM | 07330210 | 340 | 6436 SH | SHARED | | 39000 | |
| D | BE AEROSPACE INC | COM | 07330210 | 3174 | 60000 SH | SHARED | 02 | 6436 | |
| D | BE AEROSPACE INC | COM | 07330210 | 56006 | 1058720 SH | SHARED | 04 | 60000 | |
| D | BE AEROSPACE INC | COM | 07330210 | 3 | 60 SH | SHARED | 10 | 1058720 | |
| D | BEA SYS INC | COM | 07332510 | 37082 | 2349959 SH | SHARED | 21 | | 60 |
| D | BEA SYS INC | COM | 07332510 | 67 | 4265 SH | SHARED | | 2348959 | 1000 |
| D | BEA SYS INC | COM | 07332510 | 1504 | 95350 SH | SHARED | 01 | 4265 | |
| D | BEA SYS INC | COM | 07332510 | 2603 | 165000 SH | SHARED | 02 | 95350 | |
| D | BEA SYS INC | COM | 07332510 | 4 | 300 SH | SHARED | 04 | 165000 | |
| D | BEA SYS INC | COM | 07332510 | 54 | 3470 SH | SHARED | 05 | 300 | |
| D | BEA SYS INC | COM | 07332510 | 272 | 17300 SH | SHARED | 06 | | 3470 |
| D | BEA SYS INC | COM | 07332510 | 61 | 3917 SH | SHARED | 10 | 17300 | |
| D | BEACH FIRST NATL BANCSHARES | COM | 07333410 | 1 | 124 SH | SHARED | 14 | | 3917 |
| D | BEACON FED BANCORP INC | COM | 07358210 | 268 | 26826 SH | SHARED | | 124 | |
| D | BEACON POWER CORP | COM | 07367710 | 12 | 8510 SH | SHARED | | 26826 | |
| D | BEACON ROOFING SUPPLY INC | COM | 07368510 | 14 | 1775 SH | SHARED | 02 | 8510 | |
| D | BEAR STEARNS COS INC | COM | 07390210 | 34839 | 394779 SH | SHARED | | 1775 | |
| D | BEAR STEARNS COS INC | COM | 07390210 | 2020 | 22890 SH | SHARED | 01 | 394779 | |
| D | BEAR STEARNS COS INC | COM | 07390210 | 151 | 1717 SH | SHARED | 02 | 21290 | 1600 |
| D | BEAR STEARNS COS INC | COM | 07390210 | 97 | 1100 SH | SHARED | 06 | 1717 | |
| D | BEAR STEARNS COS INC | COM | 07390210 | 4514 | 51157 SH | SHARED | 10 | | 1100 |
| D | BEAR STEARNS COS INC | COM | 07390210 | 1 | 15 SH | SHARED | 20 | 51157 | |
| D | BEAR STEARNS COS INC | COM | 07390210 | 64 | 728 SH | SHARED | 21 | | 15 |
| D | BEARINGPOINT INC | COM | 07400210 | 16 | 5901 SH | SHARED | | 728 | |
| D | BEARINGPOINT INC | COM | 07400210 | 826 | 291881 SH | SHARED | 02 | 5901 | |
| D | BEARINGPOINT INC | COM | 07400210 | 181 | 64100 SH | SHARED | 10 | 291881 | |
| D | BEASLEY BROADCAST GROUP INC | CL A | 07401410 | 5 | 1051 SH | SHARED | | 64100 | |
| D | BEASLEY BROADCAST GROUP INC | CL A | 07401410 | 5 | 1000 SH | SHARED | 02 | 1051 | |
| D | BEAZER HOMES USA INC | COM | 07556Q10 | 21500 | 2893688 SH | SHARED | | 1000 | |
| D | BEAZER HOMES USA INC | COM | 07556Q10 | 3363 | 452650 SH | SHARED | 02 | 2893688 | |
| D | BEAZER HOMES USA INC | COM | 07556Q10 | 66 | 8900 SH | SHARED | 10 | 452650 | |
| D | BEBE STORES INC | COM | 07557110 | 645 | 50174 SH | SHARED | | 8900 | |
| D | BEBE STORES INC | COM | 07557110 | 10138 | 788360 SH | SHARED | 10 | 50174 | |
| D | BECKMAN COULTER INC | COM | 07581110 | 1013 | 13922 SH | SHARED | | 788360 | |
| D | BECKMAN COULTER INC | COM | 07581110 | 1485 | 20400 SH | SHARED | | 13922 | |
| D | BECKMAN COULTER INC | COM | 07581110 | 916 | 12596 SH | SHARED | 01 | 1300 | 19100 |
| D | BECKMAN COULTER INC | COM | 07581110 | 8736 | 120000 SH | SHARED | 02 | 12596 | |
| D | BECKMAN COULTER INC | COM | 07581110 | 21 | 290 SH | SHARED | 04 | 120000 | |
| D | BECKMAN COULTER INC | COM | 07581110 | 12892 | 177100 SH | SHARED | 06 | | 290 |
| D | BECKMAN COULTER INC | COM | 07581110 | 21 | 300 SH | SHARED | 10 | 177100 | |
| D | BECTON DICKINSON & CO | COM | 07588710 | 66 | 800 SH | SHARED | 14 | | 300 |
| D | BECTON DICKINSON & CO | COM | 07588710 | 593 | 7100 SH | SHR/OTHR | | 800 | |
| D | BECTON DICKINSON & CO | COM | 07588710 | 18602 | 222567 SH | SHARED | | | 7100 |
| D | BECTON DICKINSON & CO | COM | 07588710 | 3114 | 37268 SH | SHARED | | 222567 | |
| D | BECTON DICKINSON & CO | COM | 07588710 | 160 | 1925 SH | SHARED | 01 | 36643 | 625 |
| D | BECTON DICKINSON & CO | COM | 07588710 | 1008 | 12063 SH | SHR/OTHR | 01 | | 1925 |
| D | BECTON DICKINSON & CO | COM | 07588710 | 7020 | 84000 SH | SHARED | 02 | 12063 | |
| D | BECTON DICKINSON & CO | COM | 07588710 | 6 | 80 SH | SHARED | 04 | 84000 | |
| D | BECTON DICKINSON & CO | COM | 07588710 | 188 | 2250 SH | SHARED | 05 | 80 | |
| D | BECTON DICKINSON & CO | COM | 07588710 | 44754 | 535470 SH | SHARED | 06 | | 2250 |
| D | BECTON DICKINSON & CO | COM | 07588710 | 746 | 8936 SH | SHARED | 10 | 535470 | |
| D | BECTON DICKINSON & CO | COM | 07588710 | 3839 | 45935 SH | SHARED | 14 | 2500 | 6436 |
| D | BECTON DICKINSON & CO | COM | 07588710 | 2102 | 25150 SH | SHARED | 20 | 6350 | 39585 |
| D | BECTON DICKINSON & CO | COM | 07588710 | 33 | 401 SH | SHR/OTHR | 20 | | 25150 |
| D | BECTON DICKINSON & CO | COM | 07588710 | 33 | 400 SH | SHARED | 21 | 275 | 126 |
| D | BECTON DICKINSON & CO | COM | 07588710 | 779 | 9332 SH | SHR/OTHR | 21 | | 400 |
| D | BECTON DICKINSON & CO | COM | 07588710 | 170 | 2040 SH | SHARED | 22 | 2400 | 6932 |
| D | BECTON DICKINSON & CO | COM | 07588710 | 654 | 7825 SH | SHR/OTHR | 22 | | 2040 |
| D | BECTON DICKINSON & CO | COM | 07588710 | 2189 | 26200 SH | SHARED | 23 | 7825 | |
| D | BED BATH & BEYOND INC | COM | 07589610 | 26 | 910 SH | SHR/OTHR | 23 | | 26200 |
| D | BED BATH & BEYOND INC | COM | 07589610 | 12914 | 439421 SH | SHARED | | 910 | |
| D | BED BATH & BEYOND INC | COM | 07589610 | 817 | 27825 SH | SHARED | | 439421 | |
| D | BED BATH & BEYOND INC | COM | 07589610 | 36 | 1250 SH | SHR/OTHR | 01 | 27100 | 725 |
| D | BED BATH & BEYOND INC | COM | 07589610 | 5988 | 203752 SH | SHARED | 01 | | 1250 |
| D | BED BATH & BEYOND INC | COM | 07589610 | 5 | 200 SH | SHARED | 02 | 203752 | |
| D | BED BATH & BEYOND INC | COM | 07589610 | 78 | 2660 SH | SHARED | 06 | | 2660 |
| D | BED BATH & BEYOND INC | COM | 07589610 | 5360 | 182408 SH | SHARED | 10 | 182408 | |
| D | BED BATH & BEYOND INC | COM | 07589610 | 213 | 7250 SH | SHARED | 20 | 2400 | 4850 |
| D | BED BATH & BEYOND INC | COM | 07589610 | 11 | 400 SH | SHARED | 21 | 400 | |
| D | BED BATH & BEYOND INC | COM | 07589610 | 38 | 1300 SH | SHARED | 23 | 1300 | |
| D | BED BATH & BEYOND INC | COM | 07589610 | 408 | 13900 SH | SHR/OTHR | 23 | | 13900 |
| D | BEL FUSE INC | CL B | 07734730 | 373 | 12775 SH | SHARED | | 12775 | |
| D | BEL FUSE INC | CL B | 07734730 | 134 | 4600 SH | SHARED | 10 | 4600 | |
| D | BELDEN INC | COM | 07745410 | 697 | 15664 SH | SHARED | | 15664 | |
| D | BELDEN INC | COM | 07745410 | 520 | 11700 SH | SHARED | 01 | 11700 | |
| D | BELDEN INC | COM | 07745410 | 8051 | 180930 SH | SHARED | 10 | 180930 | |
| D | BELL INDS INC | COM | 07810710 | 0 | 209 SH | SHARED | | 209 | |
| D | BELL MICROPRODUCTS INC | COM | 07813710 | 5 | 951 SH | SHARED | | 951 | |
| D | BELO CORP | COM SER A | 08055510 | 26113 | 1497359 SH | SHARED | | 1497359 | |
| D | BELO CORP | COM SER A | 08055510 | 523 | 30000 SH | SHARED | 01 | | 30000 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| D BELO CORP | COM SER A | 08055510 | 1805 | 103545 SH | SHR/OTHR | 01 | | 103545 |
| D BELO CORP | COM SER A | 08055510 | 87 | 5015 SH | SHARED | 02 | 5015 | |
| D BELO CORP | COM SER A | 08055510 | 535 | 30700 SH | SHARED | 10 | 30700 | |
| D BEMIS INC | COM | 08143710 | 2677 | 97800 SH | SHARED | | 97800 | |
| D BEMIS INC | COM | 08143710 | 390 | 14269 SH | SHARED | 01 | 14269 | |
| D BEMIS INC | COM | 08143710 | 54 | 1995 SH | SHARED | 02 | 1995 | |
| D BEMIS INC | COM | 08143710 | 1067 | 39002 SH | SHARED | 10 | 39002 | |
| D BEMIS INC | COM | 08143710 | 139 | 5100 SH | SHARED | 21 | 5100 | |
| D BENCHMARK ELECTRS INC | COM | 08160H10 | 1133 | 63944 SH | SHARED | | 63944 | |
| D BENCHMARK ELECTRS INC | COM | 08160H10 | 221 | 12500 SH | SHARED | 01 | 12500 | |
| D BENCHMARK ELECTRS INC | COM | 08160H10 | 50 | 2823 SH | SHARED | 02 | 2823 | |
| D BENCHMARK ELECTRS INC | COM | 08160H10 | 667 | 37650 SH | SHARED | 10 | 37650 | |
| D BENCHMARK ELECTRS INC | COM | 08160H10 | 148 | 8355 SH | SHARED | 21 | 8355 | |
| D BENEFICIAL MUTUAL BANCORP IN | COM | 08173810 | 1819 | 187190 SH | SHARED | | 187190 | |
| D BENIHANA INC | COM | 08204710 | 150 | 11900 SH | SHARED | | 11900 | |
| D BENIHANA INC | CL A | 08204720 | 0 | 10 SH | SHARED | | 10 | |
| D BENIHANA INC | CL A | 08204720 | 963 | 75600 SH | SHARED | 10 | 75600 | |
| D BENJAMIN FRANKLIN BANCORP IN | COM | 08207310 | 9 | 758 SH | SHARED | | 758 | |
| D BENTLEY PHARMACEUTICALS INC | COM | 08265710 | 89 | 5902 SH | SHARED | | 5902 | |
| D BENTLEY PHARMACEUTICALS INC | COM | 08265710 | 21 | 1400 SH | SHARED | 01 | 1400 | |
| D BENTLEY PHARMACEUTICALS INC | COM | 08265710 | 184 | 12200 SH | SHARED | 10 | 12200 | |
| D BERKLEY W R CORP | COM | 08442310 | 9821 | 329477 SH | SHARED | | 329477 | |
| D BERKLEY W R CORP | COM | 08442310 | 2757 | 92501 SH | SHARED | 01 | 34151 | 58350 |
| D BERKLEY W R CORP | COM | 08442310 | 62 | 2100 SH | SHR/OTHR | 01 | | 2100 |
| D BERKLEY W R CORP | COM | 08442310 | 1295 | 43465 SH | SHARED | 02 | 43465 | |
| D BERKLEY W R CORP | COM | 08442310 | 37 | 1255 SH | SHARED | 06 | | 1255 |
| D BERKLEY W R CORP | COM | 08442310 | 14697 | 493031 SH | SHARED | 10 | 439131 | 53900 |
| D BERKLEY W R CORP | COM | 08442310 | 618 | 20744 SH | SHARED | 14 | 20744 | |
| D BERKLEY W R CORP | COM | 08442310 | 14 | 500 SH | SHARED | 20 | 500 | |
| D BERKLEY W R CORP | COM | 08442310 | 9 | 320 SH | SHR/OTHR | 21 | | 320 |
| D BERKLEY W R CORP | COM | 08442310 | 17 | 600 SH | SHARED | 22 | 600 | |
| D BERKSHIRE BANCORP INC DEL | COM NEW | 08459720 | 1 | 94 SH | SHARED | | 94 | |
| D BERKSHIRE HATHAWAY INC DEL | CL A | 08467010 | 0 | 1 SH | SHARED | | 1 | |
| D BERKSHIRE HATHAWAY INC DEL | CL A | 08467010 | 0 | 118 SH | SHARED | 01 | 107 | 11 |
| D BERKSHIRE HATHAWAY INC DEL | CL A | 08467010 | 0 | 83 SH | SHARED | 01 | 1 | 82 |
| D BERKSHIRE HATHAWAY INC DEL | CL A | 08467010 | 0 | 28 SH | SHR/OTHR | 01 | | 28 |
| D BERKSHIRE HATHAWAY INC DEL | CL A | 08467010 | 0 | 3 SH | SHARED | 02 | 2 | 1 |
| D BERKSHIRE HATHAWAY INC DEL | CL A | 08467010 | 0 | 19 SH | SHR/OTHR | 20 | | 19 |
| D BERKSHIRE HATHAWAY INC DEL | CL A | 08467010 | 0 | 4 SH | SHARED | 21 | | 4 |
| D BERKSHIRE HATHAWAY INC DEL | CL A | 08467010 | 0 | 1 SH | SHR/OTHR | 22 | | 1 |
| D BERKSHIRE HATHAWAY INC DEL | CL A | 08467010 | 0 | 11 SH | SHARED | 23 | 11 | |
| D BERKSHIRE HATHAWAY INC DEL | CL A | 08467010 | 0 | 4 SH | SHR/OTHR | 23 | | 4 |
| D BERKSHIRE HATHAWAY INC DEL | CL B | 08467020 | 99 | 21 SH | SHARED | | 21 | |
| D BERKSHIRE HATHAWAY INC DEL | CL B | 08467020 | 7771 | 1641 SH | SHARED | 01 | 1441 | 200 |
| D BERKSHIRE HATHAWAY INC DEL | CL B | 08467020 | 833 | 176 SH | SHARED | 01 | 99 | 77 |
| D BERKSHIRE HATHAWAY INC DEL | CL B | 08467020 | 478 | 101 SH | SHR/OTHR | 01 | | 101 |
| D BERKSHIRE HATHAWAY INC DEL | CL B | 08467020 | 51068 | 10783 SH | SHARED | 10 | 10783 | |
| D BERKSHIRE HATHAWAY INC DEL | CL B | 08467020 | 198 | 42 SH | SHARED | | | 42 |
| D BERKSHIRE HATHAWAY INC DEL | CL B | 08467020 | 227 | 48 SH | SHARED | 19 | | 48 |
| D BERKSHIRE HATHAWAY INC DEL | CL B | 08467020 | 1742 | 368 SH | SHARED | 20 | 204 | 164 |
| D BERKSHIRE HATHAWAY INC DEL | CL B | 08467020 | 781 | 165 SH | SHR/OTHR | 20 | | 165 |
| D BERKSHIRE HATHAWAY INC DEL | CL B | 08467020 | 1264 | 267 SH | SHARED | 21 | 162 | 105 |
| D BERKSHIRE HATHAWAY INC DEL | CL B | 08467020 | 279 | 59 SH | SHARED | 21 | | 59 |
| D BERKSHIRE HATHAWAY INC DEL | CL B | 08467020 | 118 | 25 SH | SHARED | 22 | | 25 |
| D BERKSHIRE HATHAWAY INC DEL | CL B | 08467020 | 473 | 100 SH | SHR/OTHR | 22 | | 100 |
| D BERKSHIRE HATHAWAY INC DEL | CL B | 08467020 | 1799 | 380 SH | SHARED | 23 | 350 | 30 |
| D BERKSHIRE HATHAWAY INC DEL | CL B | 08467020 | 2879 | 608 SH | SHR/OTHR | 23 | | 608 |
| D BERKSHIRE HILLS BANCORP INC | COM | 08468010 | 1 | 51 SH | SHARED | | 51 | |
| D BERKSHIRE HILLS BANCORP INC | COM | 08468010 | 197 | 7600 SH | SHARED | 10 | 7600 | |
| D BERKSHIRE HILLS BANCORP INC | COM | 08468010 | 28 | 1105 SH | SHR/OTHR | 23 | | 1105 |
| D BERRY PETE CO | CL A | 08578910 | 154 | 3484 SH | SHARED | | 3484 | |
| D BERRY PETE CO | CL A | 08578910 | 31 | 700 SH | SHARED | 01 | 700 | |
| D BERRY PETE CO | CL A | 08578910 | 10 | 225 SH | SHARED | 02 | 225 | |
| D BERRY PETE CO | CL A | 08578910 | 1262 | 28405 SH | SHARED | 10 | 28405 | |
| D BEST BUY INC | COM | 08651610 | 1137 | 21614 SH | SHARED | | 21614 | |
| D BEST BUY INC | COM | 08651610 | 200258 | 3803586 SH | SHARED | | 3803586 | |
| D BEST BUY INC | COM | 08651610 | 2930 | 55655 SH | SHARED | 01 | 54680 | 975 |
| D BEST BUY INC | COM | 08651610 | 125284 | 2379571 SH | SHARED | 02 | 2379571 | |
| D BEST BUY INC | COM | 08651610 | 12 | 230 SH | SHARED | 05 | 230 | |
| D BEST BUY INC | COM | 08651610 | 209 | 3985 SH | SHARED | 06 | | 3985 |
| D BEST BUY INC | COM | 08651610 | 43513 | 826458 SH | SHARED | 10 | 804658 | 21800 |
| D BEST BUY INC | COM | 08651610 | 2269 | 43100 SH | SHARED | 14 | 43100 | |
| D BEST BUY INC | COM | 08651610 | 11 | 220 SH | SHARED | 20 | 30 | 190 |
| D BEST BUY INC | COM | 08651610 | 210 | 4000 SH | SHARED | 21 | 4000 | |
| D BEST BUY INC | COM | 08651610 | 28 | 540 SH | SHARED | 23 | 540 | |
| D BEST BUY INC | COM | 08651610 | 36 | 700 SH | SHARED | 24 | 700 | |
| D BEVERLY HILLS BANCORP DEL | COM | 08786610 | 549 | 106869 SH | SHARED | | 106869 | |
| D BEVERLY NATL CORP | COM | 08811510 | 1 | 61 SH | SHARED | | 61 | |
| D BEVERLY NATL CORP | COM | 08811510 | 35 | 1755 SH | SHR/OTHR | 01 | | 1755 |
| D BHP BILLITON LTD | SPONSORED ADR | 08860610 | 125247 | 1788231 SH | SHARED | | 1788231 | |
| D BHP BILLITON LTD | SPONSORED ADR | 08860610 | 6984 | 99728 SH | SHARED | 01 | 56038 | 43690 |
| D BHP BILLITON LTD | SPONSORED ADR | 08860610 | 2931 | 41855 SH | SHR/OTHR | 01 | | 41855 |
| D BHP BILLITON LTD | SPONSORED ADR | 08860610 | 2857 | 40800 SH | SHARED | 02 | 40800 | |
| D BHP BILLITON LTD | SPONSORED ADR | 08860610 | 966 | 13800 SH | SHARED | 10 | 13800 | |
| D BHP BILLITON LTD | SPONSORED ADR | 08860610 | 2372 | 33870 SH | SHARED | 20 | 16080 | 17790 |
| D BHP BILLITON LTD | SPONSORED ADR | 08860610 | 1005 | 14360 SH | SHR/OTHR | 20 | | 14360 |
| D BHP BILLITON LTD | SPONSORED ADR | 08860610 | 150 | 2150 SH | SHARED | 21 | 2150 | |
| D BHP BILLITON LTD | SPONSORED ADR | 08860610 | 61 | 875 SH | SHR/OTHR | 21 | | 875 |
| D BHP BILLITON LTD | SPONSORED ADR | 08860610 | 395 | 5650 SH | SHARED | 22 | 3400 | 2250 |
| D BHP BILLITON LTD | SPONSORED ADR | 08860610 | 573 | 8189 SH | SHR/OTHR | 22 | | 8189 |
| D BHP BILLITON LTD | SPONSORED ADR | 08860610 | 1445 | 20635 SH | SHARED | 23 | 20305 | 330 |
| D BHP BILLITON LTD | SPONSORED ADR | 08860610 | 3486 | 49775 SH | SHR/OTHR | 23 | | 49775 |
| D BIDZ COM INC | COM | 08883T20 | 2 | 278 SH | SHARED | | 278 | |
| D BIG DOG HLDGS INC | COM | 08912810 | 1 | 84 SH | SHARED | | 84 | |
| D BIG 5 SPORTING GOODS CORP | COM | 08915P10 | 48 | 3341 SH | SHARED | | 3341 | |
| D BIG LOTS INC | COM | 08930210 | 4767 | 298174 SH | SHARED | | 125774 | 172400 |
| D BIG LOTS INC | COM | 08930210 | 1000 | 62600 SH | SHARED | 01 | 62300 | 300 |
| D BIG LOTS INC | COM | 08930210 | 479 | 30000 SH | SHR/OTHR | 01 | | 30000 |
| D BIG LOTS INC | COM | 08930210 | 159 | 9954 SH | SHARED | 02 | 9954 | |
| D BIG LOTS INC | COM | 08930210 | 43818 | 2740388 SH | SHARED | 10 | 2714088 | 26300 |
| D BIGBAND NETWORKS INC | COM | 08975060 | 9 | 1755 SH | SHARED | | 1755 | |
| D BIO IMAGING TECHNOLOGIES INC | COM | 09056N10 | 1 | 238 SH | SHARED | | 238 | |
| D BIO-REFERENCE LABS INC | COM $.01 NEW | 09057060 | 87 | 2675 SH | SHARED | | 2675 | |
| D BIO RAD LABS INC | CL A | 09057220 | 275 | 2658 SH | SHARED | | 2658 | |
| D BIO RAD LABS INC | CL A | 09057220 | 155 | 1500 SH | SHARED | 01 | 1500 | |
| D BIO RAD LABS INC | CL A | 09057220 | 51 | 500 SH | SHARED | 02 | 500 | |
| D BIO RAD LABS INC | CL A | 09057220 | 559 | 5400 SH | SHARED | 10 | 5400 | |
| D BIOANALYTICAL SYS INC | COM | 09058M10 | 0 | 90 SH | SHARED | | 90 | |
| D BIOCRYST PHARMACEUTICALS | COM | 09058V10 | 5 | 886 SH | SHARED | | 886 | |
| D BIOCRYST PHARMACEUTICALS | COM | 09058V10 | 27 | 4500 SH | SHARED | 02 | 4500 | |
| D BIOJECT MED TECH INC | COM NEW | 09059720 | 0 | 367 SH | SHARED | | 367 | |
| D BIODELIVERY SCIENCES INTL IN | COM | 09060J10 | 777 | 265337 SH | SHARED | | 265337 | |
| D BIOMARIN PHARMACEUTICAL INC | NOTE 1.875% 4/2 | 09061J10 | 8329 | 4500000 PRN | SHARED | | 4500000 | |
| D BIOMARIN PHARMACEUTICAL INC | COM | 09061G10 | 2072 | 58534 SH | SHARED | 02 | 58534 | |

```
D BIOMARIN PHARMACEUTICAL INC    COM                09061G10      406      11475 SH    SHARED      01     11475
D BIOMARIN PHARMACEUTICAL INC    COM                09061G10    28021     791555 SH    SHARED      04    791555
D BIOMARIN PHARMACEUTICAL INC    COM                09061G10     7425     209770 SH    SHARED      10    209770
D BIOMARIN PHARMACEUTICAL INC    COM                09061G10       70       2000 SH    SHARED      14      2000
D BIOGEN IDEC INC                COM                09062X10    76422    1342636 SH    SHARED            1342371         265
D BIOGEN IDEC INC                COM                09062X10     2075      36467 SH    SHARED      01     35967         500
D BIOGEN IDEC INC                COM                09062X10        5        100 SH    SHR/OTHR    01       100
D BIOGEN IDEC INC                COM                09062X10    27063     475457 SH    SHARED      02    475457
D BIOGEN IDEC INC                COM                09062X10    16051     282000 SH    SHARED      04    282000
D BIOGEN IDEC INC                COM                09062X10        5        100 SH    SHARED      05       100
D BIOGEN IDEC INC                COM                09062X10      183       3220 SH    SHARED      06                  3220
D BIOGEN IDEC INC                COM                09062X10    17984     315968 SH    SHARED      10    315968
D BIOGEN IDEC INC                COM                09062X10      529       9295 SH    SHARED      14      1500        7795
D BIOGEN IDEC INC                COM                09062X10       48        850 SH    SHARED      20       850
D BIOGEN IDEC INC                COM                09062X10      759      13350 SH    SHR/OTHR    23               13350
D BIOMED REALTY TRUST INC        COM                09063H10     2099      90600 SH    SHARED            90600
D BIOMED REALTY TRUST INC        COM                09063H10      183       7900 SH    SHARED             7900
D BIOMED REALTY TRUST INC        COM                09063H10     7771     335400 SH    SHARED      10    335400
D BIOMED REALTY TRUST INC        COM                09063H10   119265    5147393 SH    SHARED      11   2543259     2604134
D BIODEL INC                     COM                09064M10        4        188 SH    SHARED               188
D BIODEL INC                     COM                09064X10     3527     151859 SH    SHARED      04    151859
D BIOMIMETIC THERAPEUTICS INC    COM                09064X10        1        101 SH    SHARED               101
D BIOMIMETIC THERAPEUTICS INC    COM                09064X10     1099      63302 SH    SHARED      02     63302
D BIOFUEL ENERGY CORP            COM                09064X10        0        137 SH    SHARED               137
D BIONOVO INC                    COM                09064X10        0        111 SH    SHARED               111
D BIOPURE CORP                   CL A PAR $0.01     09065H40        0        846 SH    SHARED               846
D BIOPURE CORP                   CL A PAR $0.01     09065H40        6      10000 SH    SHARED      02     10000
D BIOPURE CORP                   CL A PAR $0.01     09065H40       42      66843 SH    SHARED      10     66843
D BIOSANTE PHARMACEUTICALS INC   COM NEW            09065V20        2        639 SH    SHARED               639
D BIOSPHERE MEDICAL INC          COM                09066X10        9       1901 SH    SHARED              1901
D BIRCH MTN RES LTD              COM                09066U10      760    1070600 SH    SHARED           1070600
D BIOTECH HOLDRS TR              DEPOSTRY RCPTS     09067D20     8728      53959 SH    SHARED              6859       47100
D BIOTECH HOLDRS TR              DEPOSTRY RCPTS     09067D20      614       3800 SH    SHARED      01      3800
D BIOTECH HOLDRS TR              DEPOSTRY RCPTS     09067D20      167       1035 SH    SHARED      02      1035
D BIOTECH HOLDRS TR              DEPOSTRY RCPTS     09067D20    25857     159850 SH    SHARED      10    132450       27400
D BIOTECH HOLDRS TR              DEPOSTRY RCPTS     09067D20      708       4380 SH    SHARED      15      4380
D BIOTECH HOLDRS TR              DEPOSTRY RCPTS     09067D20      210       1300 SH    SHARED      19      1300
D BIOTECH HOLDRS TR              DEPOSTRY RCPTS     09067D20      372       2300 SH    SHARED      24      2300
D BIOVAIL CORP                   COM                09067J10     1664     123628 SH    SHARED            123628
D BIOVAIL CORP                   COM                09067J10      164      12200 SH    SHARED      01     12200
D BIOVAIL CORP                   COM                09067J10       40       3000 SH    SHARED      02      3000
D BIOVAIL CORP                   COM                09067J10        1        100 SH    SHARED      05       100
D BIOVAIL CORP                   COM                09067J10       11        850 SH    SHARED      06                   850
D BIOVAIL CORP                   COM                09067J10     2582     191850 SH    SHARED      10    191850
D BIOVAIL CORP                   COM                09067J10      165      12273 SH    SHARED      14               12273
D BIOVAIL CORP                   COM                09067J10        4        310 SH    SHARED      21                   310
D BIOSCRIP INC                   COM                09069N10       76       9906 SH    SHARED              9906
D BIOSCRIP INC                   COM                09069N10       38       5000 SH    SHARED      02      5000
D BIRKS & MAYORS INC             CL A VTG           09088110        0         14 SH    SHARED                14
D BIOLASE TECHNOLOGY INC         COM                09091110        1        620 SH    SHARED               620
D BIRNER DENTAL MGMT SERVICES    COM NEW            09128320        0         26 SH    SHARED                26
D BITSTREAM INC                  CL A               09173610       12       1892 SH    SHARED              1892
D BLACK & DECKER CORP            COM                09179710     8334     119666 SH    SHARED            119666
D BLACK & DECKER CORP            COM                09179710      645       9270 SH    SHARED      01      9270
D BLACK & DECKER CORP            COM                09179710     2310      33172 SH    SHARED      02     33172
D BLACK & DECKER CORP            COM                09179710        4         60 SH    SHARED      05        60
D BLACK & DECKER CORP            COM                09179710       61        880 SH    SHARED      06                   880
D BLACK & DECKER CORP            COM                09179710     3168      45495 SH    SHARED      10     45495
D BLACK & DECKER CORP            COM                09179710      201       2900 SH    SHARED      14                  2900
D BLACK & DECKER CORP            COM                09179710       13        200 SH    SHARED      21                   200
D BJS RESTAURANTS INC            COM                09180C10        0         27 SH    SHARED                27
D BLACK BOX CORP DEL             COM                09182610      243       6728 SH    SHARED              6728
D BLACK BOX CORP DEL             COM                09182610      136       3770 SH    SHARED      01      3770
D BLACK BOX CORP DEL             COM                09182610    20356     562800 SH    SHARED      10    562800
D BLACKBOARD INC                 COM                09193550       96       2400 SH    SHARED              2400
D BLACKBOARD INC                 COM                09193550       24        600 SH    SHARED      01       600
D BLACKBOARD INC                 COM                09193550       55       1375 SH    SHARED      02      1375
D BLACKBOARD INC                 COM                09193550    12566     312200 SH    SHARED      10    312200
D BLACKROCK GLOBAL FLG INC TR    COM                09194110     1317      83500 SH    SHARED             83500
D BLACK HILLS CORP               COM                09211310      399       9056 SH    SHARED              9056
D BLACK HILLS CORP               COM                09211310      471      10700 SH    SHARED                       10700
D BLACK HILLS CORP               COM                09211310      375       8513 SH    SHARED      01      8513
D BLACK HILLS CORP               COM                09211310     2310      52400 SH    SHARED      10     52400
D BLACKBAUD INC                  COM                09227Q10      302      10780 SH    SHARED             10780
D BLACKBAUD INC                  COM                09227Q10       28       1020 SH    SHARED      01      1020
D BLACKBAUD INC                  COM                09227Q10       96       3425 SH    SHARED      02      3425
D BLACKBAUD INC                  COM                09227Q10      215       7700 SH    SHARED      10      7700
D BLACKBAUD INC                  COM                09227Q10       10        359 SH    SHARED      21                   359
D BLACKROCK NY INSD MUN 2008 T   COM                09247A10       23       1550 SH    SHARED      23                  1550
D BLACKROCK INC                  DBCV  2.625% 2/1   09247XAB     2152    1000000 PRN   SHARED           1000000
D BLACKROCK INC                  DBCV  2.625% 2/1   09247XAB    13144    6108000 PRN   SHARED      02   6108000
D BLACKROCK INC                  COM                09247X10      336       1552 SH    SHARED              1552
D BLACKROCK INC                  COM                09247X10       43        200 SH    SHARED                         200
D BLACKROCK INC                  COM                09247X10      494       2280 SH    SHARED      02      2280
D BLACKROCK INC                  COM                09247X10     2040       9410 SH    SHARED      10      9410
D BLACKROCK INCOME OPP TRUST I   COM                09247510      281       1300 SH    SHR/OTHR    23                  1300
D BLACKROCK CALIF MUN INCOME T   SH BEN INT         09248E10        9       1000 SH    SHARED      01      1000
D BLACKROCK N Y MUN INCOME TR    SH BEN INT         09248L10        0         63 SH    SHARED                63
D BLACKROCK CA INS MUN INC TR    COM                09248410       49       9333 SH    SHARED      20      3333
D BLACKROCK CA MUNICIPAL BOND    COM                09249J10        0         63 SH    SHARED                63
D BLACKROCK MUNI INCOME TR II    COM                09249N10        1        104 SH    SHARED               104
D BLACKROCK NY MUNICIPAL BOND    COM                09249P10        3        188 SH    SHARED               188
D BLACKROCK LTD DURATION INC T   COM SHS            09249U10     1733     109300 SH    SHARED            109300
D BLACKROCK STRAT DIVD ACHIEVE   COM                09250A10      167      13658 SH    SHARED             13658
D BLACKROCK LONG-TERM MUNI ADV   COM                09250B10     3140     267504 SH    SHARED            267504
D BLACKROCK S&P QLTY RK EQ MD    SHS BEN INT        09250D10     3696     217080 SH    SHARED            217080
D BLACKROCK HIGH INCOME SHS      SHS BEN INT        09250E10      155      72485 SH    SHARED             72485
D BLACKROCK FL INS MUN INC TR    COM                09250G10        7        600 SH    SHARED               600
D BLACKROCK FLA MUN 2020 TERM    COM SHS            09250M10       30       2350 SH    SHARED      01      2350
D BLACKROCK GLBL ENRGY & RES T   COM                09250810      627      20000 SH    SHARED             20000
D BLACKROCK PFD & EQ ADVANTAGE   COM                09250810     5601     327400 SH    SHARED            327400
D BLACKROCK ENHANCED DIV ACHV    COM                09251A10     2270     200000 SH    SHARED            200000
D BLACKROCK INTL GRWTH & INC T   COM BENE INTER     09252410       33       2000 SH    SHARED              2000
D BLACKSTONE GROUP L P           COM UNIT LTD       09253010     7667     346481 SH    SHARED             66881      279600
D BLACKSTONE GROUP L P           COM UNIT LTD       09253U10      539      24400 SH    SHARED             24400
D BLACKSTONE GROUP L P           COM UNIT LTD       09253U10    22314    1008350 SH    SHARED      10    846350      162000
D BLACKSTONE GROUP L P           COM UNIT LTD       09253U10     2374     107300 SH    SHARED      15               107300
D BLACKSTONE GROUP L P           COM UNIT LTD       09253U10      312      14100 SH    SHARED      24     14100
D BLACKROCK MUNIYIELD FD INC     COM                09253X10        1         84 SH    SHARED                84
D BLACKROCK MUNI INTER DR FD I   COM                09253X10     1471     112105 SH    SHARED            112105
D BLACKROCK MUNIHLDGS FD INC     COM                09254A10     1095      91020 SH    SHARED             91020
D BLACKROCK REAL ASSET EQUITY    COM                09254B10     6181     364500 SH    SHARED            364500
D BLACKROCK MUNIHLDGS INSD FDI   COM                09254C10     1515     126365 SH    SHARED            126365
```

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | BLACKROCK MUNIYIELD QUALITY | COM | 09254G10 | 355 | 30609 | SH | SHARED | | 30609 |
| D | BLACKROCK MUNIASSETS FD INC | COM | 09254J10 | 0 | 63 | SH | SHARED | | 63 |
| D | BLACKROCK MUNIHOLDINGS CALIF | COM | 09254L10 | 3682 | 287208 | SH | SHARED | | 287208 |
| D | BLACKROCK MUNIHOLDINGS CALIF IN | COM | 09254N10 | 1463 | 113196 | SH | SHARED | | 113196 |
| D | BLACKROCK MUNIHOLDINGS PLA I | COM | 09254P10 | 8903 | 713395 | SH | SHARED | | 713395 |
| D | BLACKROCK MUNIYIELD FLA INC | COM | 09254R10 | 1360 | 107100 | SH | SHARED | | 107100 |
| D | BLACKROCK MUNIYIELD FLA INSD | COM | 09254T10 | 210 | 16800 | SH | SHARED | | 16800 |
| D | BLACKROCK MUNIYIELD MICH INS | COM | 09254V10 | 1655 | 125327 | SH | SHARED | | 125327 |
| D | BLACKROCK MUNIYIELD MICH INS | COM | 09254W10 | 248 | 19900 | SH | SHARED | | 19900 |
| D | BLACKROCK MUNIHOLDINGS N Y I | COM | 09255C10 | 2317 | 180466 | SH | SHARED | | 180466 |
| D | BLACKROCK MUNIHOLDINGS N Y I | COM | 09255C10 | 0 | 7 | SH | SHARED | 01 | 7 |
| D | BLACKROCK MUNIYIELD N Y INSD | COM | 09255E10 | 1108 | 89650 | SH | SHARED | | 89650 |
| D | BLACKROCK MUNIYIELD PA INSD | COM | 09255G10 | 141 | 10355 | SH | SHARED | | 10355 |
| D | BLACKROCK PFD & CORPORATE IN | COM | 09255J10 | 1483 | 92400 | SH | SHARED | | 92400 |
| D | BLACKROCK CORPOR HIGH YLD FD | COM | 09255L10 | 1719 | 243501 | SH | SHARED | | 243501 |
| D | BLACKROCK CORPOR HI YLD III | COM | 09255M10 | 7131 | 1032109 | SH | SHARED | | 1032109 |
| D | BLACKROCK CORPOR HI YLD FD V | COM | 09255N10 | 10643 | 909674 | SH | SHARED | | 909674 |
| D | BLACKROCK CORPOR HI YLD FD V | COM | 09255P10 | 10137 | 861330 | SH | SHARED | | 861330 |
| D | BLACKROCK DEBT STRAT FD INC | COM | 09255R10 | 2430 | 427910 | SH | SHARED | | 427910 |
| D | BLACKROCK DIVERS OME STRATE | COM | 09255V10 | 1513 | 100100 | SH | SHARED | | 100100 |
| D | BLACKROCK FLOAT RATE OME STR | COM | 09255X10 | 94 | 5905 | SH | SHARED | | 5905 |
| D | BLACKROCK FL RATE OME STRA I | COM SHS | 09255Y10 | 1039 | 65651 | SH | SHARED | | 65651 |
| D | BLACKROCK CAP & INCOME STRA | COM | 09265M10 | 480 | 23934 | SH | SHARED | | 23934 |
| D | BLADELOGIC INC | COM | 09269N10 | 2 | 71 | SH | SHARED | | 71 |
| D | BLACKLOGIC INC | COM | 09265N10 | 295 | 10000 | SH | SHARED | 04 | 10000 |
| D | BLOCK H & R INC | COM | 09367I10 | 9313 | 501522 | SH | SHARED | | 501522 |
| D | BLOCK H & R INC | COM | 09367I10 | 870 | 46884 | SH | SHARED | 01 | 46684 | 200 |
| D | BLOCK H & R INC | COM | 09367I10 | 297 | 16035 | SH | SHARED | 02 | 16035 |
| D | BLOCK H & R INC | COM | 09367I10 | 3 | 200 | SH | SHARED | 05 | 200 |
| D | BLOCK H & R INC | COM | 09367I10 | 40 | 2180 | SH | SHARED | 06 | 2180 |
| D | BLOCK H & R INC | COM | 09367I10 | 5111 | 275282 | SH | SHARED | 10 | 275282 |
| D | BLOCK H & R INC | COM | 09367I10 | 2206 | 118800 | SH | SHARED | 14 | 118800 | 118800 |
| D | BLOCK H & R INC | COM | 09367I10 | 92 | 5000 | SH | SHARED | 20 | 4000 | 1000 |
| D | BLOCK H & R INC | COM | 09367I10 | 3 | 200 | SH | SHR/OTHR | 23 | | 200 |
| D | BLOCKBUSTER INC | CL A | 09367910 | 6635 | 1701346 | SH | SHARED | | 1701346 |
| D | BLOCKBUSTER INC | CL A | 09367910 | 265 | 68200 | SH | SHARED | 10 | 68200 |
| D | BLONDER TONGUE LABS INC | COM | 09369810 | 0 | 99 | SH | SHARED | | 99 |
| D | BLOUNT INTL INC NEW | COM | 09518010 | 36 | 2999 | SH | SHARED | | 2999 |
| D | BLOUNT INTL INC NEW | COM | 09518010 | 17 | 1425 | SH | SHARED | 02 | 1425 |
| D | BLOUNT INTL INC NEW | COM | 09518010 | 142 | 11600 | SH | SHARED | 10 | 11600 |
| D | BLUE COAT SYSTEMS INC | COM NEW | 09534T50 | 2731 | 83100 | SH | SHARED | | 83100 |
| D | BLUE COAT SYSTEMS INC | COM NEW | 09534T50 | 548 | 16700 | SH | SHARED | 01 | 16700 |
| D | BLUE COAT SYSTEMS INC | COM NEW | 09534T50 | 164 | 5000 | SH | SHARED | 02 | 5000 |
| D | BLUE COAT SYSTEMS INC | COM NEW | 09534T50 | 39 | 1200 | SH | SHARED | 10 | 1200 |
| D | BLUE COAT SYSTEMS INC | COM NEW | 09534T50 | 2 | 90 | SH | SHARED | 21 | | 90 |
| D | BLUE DOLPHIN ENERGY CO | COM NEW | 09539520 | 0 | 220 | SH | SHARED | | 220 |
| D | BLUE HLDGS INC | COM | 09560210 | 0 | 153 | SH | SHARED | | 153 |
| D | BLUE NILE INC | COM | 09578R10 | 869 | 12773 | SH | SHARED | | 12773 |
| D | BLUE NILE INC | COM | 09578R10 | 20 | 300 | SH | SHARED | 01 | 300 |
| D | BLUE NILE INC | COM | 09578R10 | 34 | 500 | SH | SHARED | 10 | 500 |
| D | BLUEFLY INC | COM | 09622710 | 0 | 503 | SH | SHARED | | 503 |
| D | BLUEGREEN CORP | COM | 09623110 | 39 | 5488 | SH | SHARED | | 5488 |
| D | BLUELINX HLDGS INC | COM | 09624N10 | 0 | 47 | SH | SHARED | | 47 |
| D | BLYTH INC | COM | 09643P10 | 946 | 43128 | SH | SHARED | | 43128 |
| D | BLYTH INC | COM | 09643P10 | 706 | 32200 | SH | SHARED | 01 | 21200 | 11000 |
| D | BLYTH INC | COM | 09643P10 | 306 | 13968 | SH | SHARED | 02 | 13968 |
| D | BLYTH INC | COM | 09643P10 | 1125 | 51300 | SH | SHARED | 10 | 51300 |
| D | BMB MUNAI INC | COM | 09656A10 | 254 | 40800 | SH | SHARED | | 40800 |
| D | BMB MUNAI INC | COM | 09656A10 | 167 | 26900 | SH | SHARED | 01 | 26900 |
| D | BMB MUNAI INC | COM | 09656A10 | 19 | 3200 | SH | SHARED | 02 | 3200 |
| D | BMB MUNAI INC | COM | 09656A10 | 374 | 60000 | SH | SHARED | 04 | 60000 |
| D | BMB MUNAI INC | COM | 09656A10 | 4216 | 675700 | SH | SHARED | 10 | 667100 | 8600 |
| D | BMB MUNAI INC | COM | 09656A10 | 49 | 8000 | SH | SHARED | 15 | | 8000 |
| D | BMB MUNAI INC | COM | 09656A10 | 87 | 14100 | SH | SHARED | 24 | 14100 |
| D | BOARDWALK BANCORP INC | COM | 09661Q10 | 2 | 112 | SH | SHARED | | 112 |
| D | BOARDWALK PIPELINE PARTNERS | UT LTD PARTNER | 09662710 | 46522 | 1495907 | SH | SHARED | | 1495907 |
| D | BOB EVANS FARMS INC | COM | 09676110 | 263 | 9777 | SH | SHARED | | 9777 |
| D | BOB EVANS FARMS INC | COM | 09676110 | 383 | 14250 | SH | SHARED | 01 | 2250 | 12000 |
| D | BOB EVANS FARMS INC | COM | 09676110 | 42 | 1567 | SH | SHARED | 02 | 1567 |
| D | BOB EVANS FARMS INC | COM | 09676110 | 1362 | 50588 | SH | SHARED | 10 | 50588 |
| D | BOEING CO | COM | 09702310 | 183671 | 2100059 | SH | SHARED | | 2024609 | 75450 |
| D | BOEING CO | COM | 09702310 | 12864 | 147092 | SH | SHARED | 01 | 134014 | 13078 |
| D | BOEING CO | COM | 09702310 | 837 | 9575 | SH | SHR/OTHR | 01 | | 9575 |
| D | BOEING CO | COM | 09702310 | 37656 | 430561 | SH | SHARED | 02 | 430561 |
| D | BOEING CO | COM | 09702310 | 83 | 950 | SH | SHARED | 04 | | 950 |
| D | BOEING CO | COM | 09702310 | 2658 | 30400 | SH | SHARED | 04 | 30400 |
| D | BOEING CO | COM | 09702310 | 27 | 320 | SH | SHARED | 05 | 320 |
| D | BOEING CO | COM | 09702310 | 6865 | 78500 | SH | SHARED | 06 | | 78500 |
| D | BOEING CO | COM | 09702310 | 166873 | 1905715 | SH | SHARED | 10 | 1885815 | 19900 |
| D | BOEING CO | COM | 09702310 | 1299 | 14861 | SH | SHARED | 14 | 2100 | 12761 |
| D | BOEING CO | COM | 09702310 | 65 | 745 | SH | SHARED | 20 | 745 |
| D | BOEING CO | COM | 09702310 | 94 | 1075 | SH | SHR/OTHR | 20 | | 1075 |
| D | BOEING CO | COM | 09702310 | 519 | 5945 | SH | SHARED | 21 | 4479 | 1466 |
| D | BOEING CO | COM | 09702310 | 27 | 320 | SH | SHR/OTHR | 21 | | 320 |
| D | BOEING CO | COM | 09702310 | 349 | 4000 | SH | SHARED | 22 | 4000 |
| D | BOEING CO | COM | 09702310 | 312 | 3575 | SH | SHARED | 23 | 3575 |
| D | BOEING CO | COM | 09702310 | 2029 | 23200 | SH | SHR/OTHR | 23 | | 23200 |
| D | BOIS D ARC ENERGY INC | COM | 09738U10 | 361 | 18226 | SH | SHARED | | 18226 |
| D | BOIS D ARC ENERGY INC | COM | 09738U10 | 539 | 27200 | SH | SHARED | 01 | 27200 |
| D | BOIS D ARC ENERGY INC | COM | 09738U10 | 10 | 525 | SH | SHARED | 02 | 525 |
| D | BOIS D ARC ENERGY INC | COM | 09738U10 | 1004 | 50600 | SH | SHARED | 10 | 50600 |
| D | BOLT TECHNOLOGY CORP | COM | 09769810 | 220 | 5816 | SH | SHARED | | 5816 |
| D | BON-TON STORES INC | COM | 09776210 | 0 | 44 | SH | SHARED | | 44 |
| D | BOOKHAM INC | COM | 09856810 | 0 | 67 | SH | SHARED | | 67 |
| D | BOOKHAM INC | COM | 09856810 | 6 | 2588 | SH | SHARED | | 2588 |
| D | BOOKS-A-MILLION INC | COM | 09857010 | 7689 | 645127 | SH | SHARED | | 645127 |
| D | BOOTS & COOTS/INTL WELL CTRL | COM NEW | 09946950 | 2 | 1589 | SH | SHARED | | 1589 |
| D | BORDERS GROUP INC | COM | 09970910 | 4206 | 394983 | SH | SHARED | | 394983 |
| D | BORDERS GROUP INC | COM | 09970910 | 160 | 15100 | SH | SHARED | 01 | | 15100 |
| D | BORDERS GROUP INC | COM | 09970910 | 31 | 2983 | SH | SHARED | 02 | 2983 |
| D | BORDERS GROUP INC | COM | 09970910 | 41756 | 3920783 | SH | SHARED | 10 | 3920783 |
| D | BORGWARNER INC | COM | 09972410 | 43 | 906 | SH | SHARED | | 906 |
| D | BORGWARNER INC | COM | 09972410 | 2775 | 57331 | SH | SHARED | | 57331 |
| D | BORGWARNER INC | COM | 09972410 | 2117 | 43740 | SH | SHARED | 01 | 5340 | 38400 |
| D | BORGWARNER INC | COM | 09972410 | 401 | 8293 | SH | SHARED | 02 | 8293 |
| D | BORGWARNER INC | COM | 09972410 | 19720 | 407360 | SH | SHARED | 04 | 407360 |
| D | BORGWARNER INC | COM | 09972410 | 20698 | 427574 | SH | SHARED | 05 | 427574 |
| D | BORGWARNER INC | COM | 09972410 | 797 | 16470 | SH | SHARED | 06 | | 16470 |
| D | BORGWARNER INC | COM | 09972410 | 1686 | 34833 | SH | SHARED | 10 | 25633 | 9200 |
| D | BORGWARNER INC | COM | 09972410 | 203 | 4200 | SH | SHARED | 23 | 4200 |
| D | BORLAND SOFTWARE CORP | COM | 09984910 | 2014 | 669431 | SH | SHARED | | 669431 |
| D | BORLAND SOFTWARE CORP | COM | 09984910 | 55 | 18375 | SH | SHARED | | 18375 |
| D | BOSTON BEER INC | CL A | 10055710 | 354 | 9403 | SH | SHARED | | 9403 |
| D | BOSTON BEER INC | CL A | 10055710 | 153 | 4077 | SH | SHARED | 02 | 4077 |

```
D BOSTON PRIVATE FINL HLDGS IN   NOTE 3.000% 7/1 101119AB    3489    3500000 PRN   SHARED         3500000
D BOSTON PRIVATE FINL HLDGS IN   COM              10111910     248       9183 SH   SHARED            9183
D BOSTON PRIVATE FINL HLDGS IN   COM              10111910     153       5670 SH   SHARED    01       5670
D BOSTON PRIVATE FINL HLDGS IN   COM              10111910    8641     319119 SH   SHARED    10     319119
D BOSTON PPTYS LTD PARTNERSHIP   NOTE 3.750% 5/1 10112BAQ    27650   25000000 PRN   SHARED         5000000
D BOSTON PPTYS LTD PARTNERSHIP   NOTE 2.875% 2/1 10112RAK     371     400000 PRN   SHARED          400000
D BOSTON PROPERTIES INC          COM              10112110    12350     134519 SH   SHARED          134519
D BOSTON PROPERTIES INC          COM              10112110     4335      47220 SH   SHARED    01      21435      25785
D BOSTON PROPERTIES INC          COM              10112110     1287      14025 SH   SHR/OTHR  01                 14025
D BOSTON PROPERTIES INC          COM              10112110     162       1774 SH   SHARED    01       1774
D BOSTON PROPERTIES INC          COM              10112110       5         60 SH   SHARED    05         60
D BOSTON PROPERTIES INC          COM              10112110    20496     223250 SH   SHARED    10     223250
D BOSTON PROPERTIES INC          COM              10112110   317162    3454550 SH   SHARED    11    2091350    1363200
D BOSTON PROPERTIES INC          COM              10112110     2228      24275 SH   SHARED    20       5235      19040
D BOSTON PROPERTIES INC          COM              10112110      73        800 SH   SHR/OTHR  20                   800
D BOSTON PROPERTIES INC          COM              10112110      21        235 SH   SHARED    21        235
D BOSTON PROPERTIES INC          COM              10112110      13        150 SH   SHARED    22        150
D BOSTON PROPERTIES INC          COM              10112110      27        300 SH   SHR/OTHR  22                   300
D BOSTON PROPERTIES INC          COM              10112110     426       4650 SH   SHARED    23       4650
D BOSTON PROPERTIES INC          COM              10112110     257       2800 SH   SHR/OTHR  23                  2800
D BOSTON SCIENTIFIC CORP         COM              10113710       5        500 SH   SHARED            500
D BOSTON SCIENTIFIC CORP         COM              10113710    19850    1706825 SH   SHARED         1706825
D BOSTON SCIENTIFIC CORP         COM              10113710     1790     153941 SH   SHARED    01     153941
D BOSTON SCIENTIFIC CORP         COM              10113710       4        418 SH   SHR/OTHR  01                   418
D BOSTON SCIENTIFIC CORP         COM              10113710     1344     115636 SH   SHARED    02     115636
D BOSTON SCIENTIFIC CORP         COM              10113710       5        445 SH   SHARED    05        445
D BOSTON SCIENTIFIC CORP         COM              10113710     142      12263 SH   SHARED    06      12263
D BOSTON SCIENTIFIC CORP         COM              10113710     7649     657741 SH   SHARED    10     657741
D BOSTON SCIENTIFIC CORP         COM              10113710     298      25700 SH   SHARED    14      25700
D BOSTON SCIENTIFIC CORP         COM              10113710     3256     280000 SH   SHARED    15     280000
D BOSTON SCIENTIFIC CORP         COM              10113710     695      59800 SH   SHARED    20      59800
D BOSTON SCIENTIFIC CORP         COM              10113710      11       1007 SH   SHARED    21       1007
D BOSTON SCIENTIFIC CORP         COM              10113710       7        671 SH   SHARED    22        671
D BOSTON SCIENTIFIC CORP         COM              10113710      41       3567 SH   SHARED    23       3567
D BOTTOMLINE TECH DEL INC        COM              10138810      13        982 SH   SHARED            982
D BOTTOMLINE TECH DEL INC        COM              10138810      56       4025 SH   SHARED    02       4025
D BOULDER TOTAL RETURN FD INC    COM              10154110    9744      445137 SH   SHARED          445137
D BOVIE MEDICAL CORP             COM              10211F10       4        754 SH   SHARED            754
D BOWL AMER INC                  CL A             10256510       1         67 SH   SHARED             67
D BOWNE & CO INC                 COM              10304310      30       1705 SH   SHARED           1705
D BOWNE & CO INC                 COM              10304310     114       6495 SH   SHARED    01       3195       3300
D BOWNE & CO INC                 COM              10304310     318      18113 SH   SHARED    02      18113
D BOWNE & CO INC                 COM              10304310      63       3600 SH   SHARED    10       3600
D BOYD GAMING CORP               COM              10330410    46510    1365151 SH   SHARED         1365151
D BOYD GAMING CORP               COM              10330410     603      17700 SH   SHARED    01      17700
D BOYD GAMING CORP               COM              10330410     124       3660 SH   SHARED    02       3660
D BOYD GAMING CORP               COM              10330410     341      10011 SH   SHARED    10      10011
D BOYD GAMING CORP               COM              10330410      34       1000 SH   SHARED    23       1000
D BRADLEY PHARMACEUTICALS INC    COM              10457510      18        950 SH   SHARED            950
D BRADY CORP                     CL A             10467410     140       4002 SH   SHARED           4002
D BRADY CORP                     CL A             10467410     856      24400 SH   SHARED    10      24400
D BRANDYWINE OPER PARTNERSHIP    NOTE 3.875%10/1 10534OAH     7235    8250000 PRN   SHARED         8250000
D BRANDYWINE OPER PARTNERSHIP    NOTE 3.875%10/1 10534OAH      438     500000 PRN   SHARED    02     500000
D BRANDYWINE RLTY TR             SH BEN INT NEW   10536820    6976      389102 SH   SHARED          389102
D BRANDYWINE RLTY TR             SH BEN INT NEW   10536820     197      11000 SH   SHARED    02      11000
D BRANDYWINE RLTY TR             SH BEN INT NEW   10536820     189      10564 SH   SHARED    10      10564
D BRANDYWINE RLTY TR             SH BEN INT NEW   10536820      51       2850 SH   SHARED    21       2850
D BRASIL TELECOM SA              SPONS ADR PFD    10553M10     421      13904 SH   SHARED          13904
D BRASIL TELECOM PARTICIPACOES   SPON ADR PFD     10553010     790      10600 SH   SHARED          10600
D BRASIL TELECOM PARTICIPACOES   SPON ADR PFD     10553010    3654      49000 SH   SHARED          49000
D BRASIL TELECOM PARTICIPACOES   SPON ADR PFD     10553010    9844     132000 SH   SHARED    04     132000
D BRASKEM S A                    SP ADR PFD A     10553210      13        826 SH   SHARED            826
D BREEZE EASTERN CORP            COM              10676410       2        193 SH   SHARED            193
D BREITBURN ENERGY PARTNERS LP   COM UT LTD PTN   10677610    53059    1835966 SH   SHARED         1835966
D BRIDGE CAP HLDGS               COM              10803010       3        164 SH   SHARED            164
D BRIDGELINE SOFTWARE INC        COM              10807Q20       0        100 SH   SHARED            100
D BRIDGFORD FOODS CORP           COM              10876310       0         82 SH   SHARED             82
D BRIGGS & STRATTON CORP         COM              10904310     538      23764 SH   SHARED          23764
D BRIGGS & STRATTON CORP         COM              10904310      40       1799 SH   SHARED    01       1799
D BRIGGS & STRATTON CORP         COM              10904310     881      38900 SH   SHARED    02      38900
D BRIGGS & STRATTON CORP         COM              10904310     447      19769 SH   SHARED    10      19769
D BRIGHAM EXPLORATION CO         COM              10917810     106      14100 SH   SHARED          14100
D BRIGHAM EXPLORATION CO         COM              10917810      25       3400 SH   SHARED    10       3400
D BRIGHAM EXPLORATION CO         COM              10917810    1293      172000 SH   SHARED    10     172000
D BRIGHT HORIZON FAMILY SOLUTI   COM              10919510       6        174 SH   SHARED            174
D BRIGHT HORIZON FAMILY SOLUTI   COM              10919510      36       1050 SH   SHARED    10       1050
D BRIGHT HORIZON FAMILY SOLUTI   COM              10919510      15        441 SH   SHARED    10        441
D BRIGHTPOINT INC                COM NEW          10947340      16       1098 SH   SHARED           1098
D BRIGHTPOINT INC                COM NEW          10947340     257      16760 SH   SHARED    01      16760
D BRIGHTPOINT INC                COM NEW          10947340    6137      399600 SH   SHARED    10     399600
D BRINKER INTL INC               COM              10964110     729      37307 SH   SHARED          37307
D BRINKER INTL INC               COM              10964110     830      42445 SH   SHARED    01       5620      36825
D BRINKER INTL INC               COM              10964110     515      26348 SH   SHARED    02      26348
D BRINKER INTL INC               COM              10964110     1057     54041 SH   SHARED    10      42241      11800
D BRINKER INTL INC               COM              10964110     189       9705 SH   SHARED    21       9705
D BRINKS CO                      COM              10969610     1517     25409 SH   SHARED          10209      15200
D BRINKS CO                      COM              10969610     1427     23900 SH   SHARED    01       9400      14500
D BRINKS CO                      COM              10969610     852      14273 SH   SHARED          14273
D BRINKS CO                      COM              10969610     7634     127800 SH   SHARED    10     120400       7400
D BRISTOL MYERS SQUIBB CO        DBCV        9/1 110122AN     4008    4000000 PRN   SHARED         4000000
D BRISTOL MYERS SQUIBB CO        DBCV        9/1 110122AN    36072   36000000 PRN   SHARED    04    6000000
D BRISTOL MYERS SQUIBB CO        COM              11012210      63       2390 SH   SHARED            800       1590
D BRISTOL MYERS SQUIBB CO        COM              11012210   202029    7617996 SH   SHARED         7419696     198300
D BRISTOL MYERS SQUIBB CO        COM              11012210    9040      340896 SH   SHARED    01     284488      56408
D BRISTOL MYERS SQUIBB CO        COM              11012210     948      35749 SH   SHR/OTHR  01      35749
D BRISTOL MYERS SQUIBB CO        COM              11012210    61819    2331039 SH   SHARED    04    2331039
D BRISTOL MYERS SQUIBB CO        COM              11012210    11615     438000 SH   SHARED    04     438000
D BRISTOL MYERS SQUIBB CO        COM              11012210      22        840 SH   SHARED    05        840
D BRISTOL MYERS SQUIBB CO        COM              11012210     500      18869 SH   SHARED    06                 18869
D BRISTOL MYERS SQUIBB CO        COM              11012210   132434    4993742 SH   SHARED    10    4993742
D BRISTOL MYERS SQUIBB CO        COM              11012210      99       3760 SH   SHR/OTHR  10                  3760
D BRISTOL MYERS SQUIBB CO        COM              11012210     1239     46756 SH   SHARED    14       7100      39656
D BRISTOL MYERS SQUIBB CO        COM              11012210    6618      249550 SH   SHARED    15     249550
D BRISTOL MYERS SQUIBB CO        COM              11012210     271      10250 SH   SHARED    19      10250
D BRISTOL MYERS SQUIBB CO        COM              11012210     329      12411 SH   SHARED    20       3835       8576
D BRISTOL MYERS SQUIBB CO        COM              11012210     401      15128 SH   SHR/OTHR  20                 15128
D BRISTOL MYERS SQUIBB CO        COM              11012210    5959      224703 SH   SHARED    21     224703
D BRISTOL MYERS SQUIBB CO        COM              11012210     524      19760 SH   SHARED    22       7700      12060
D BRISTOL MYERS SQUIBB CO        COM              11012210    2418      91196 SH   SHARED    23      91196
D BRISTOL MYERS SQUIBB CO        COM              11012210    46814    1765244 SH   SHR/OTHR  23                1765244
D BRISTOW GROUP INC              COM              11039410      45        806 SH   SHARED            806
D BRISTOW GROUP INC              COM              11039410     508       8975 SH   SHARED    01       8975
D BRISTOW GROUP INC              COM              11039410    9757      172250 SH   SHARED    10     172250
D BRISTOW GROUP INC              PFD CNV 5.50%    11039440    22244     313120 SH   SHARED          313120
```

```
D BRITISH AMERN TOB PLC        SPONSORED ADR    11044810      23      297 SH    SHARED            297
D BRITISH SKY BROADCASTING GRO SPONSORED ADR    11101310       4      100 SH    SHARED            100
D BROADBAND HOLDRS TR          DEPOSITRY RCPT   11130P10       0       10 SH    SHARED       02     10
D BROADCOM CORP                CL A             11132010   20073   767912 SH    SHARED            767912
D BROADCOM CORP                CL A             11132010    5232   200177 SH    SHARED       01    161613          38564
D BROADCOM CORP                CL A             11132010     729    27890 SH    SHR/OTHR     01     27890
D BROADCOM CORP                CL A             11132010   10669   408157 SH    SHARED       02    408157
D BROADCOM CORP                CL A             11132010   23285   890800 SH    SHARED       04    890800
D BROADCOM CORP                CL A             11132010       5      225 SH    SHARED       05      225
D BROADCOM CORP                CL A             11132010     702    26880 SH    SHARED       06           26880
D BROADCOM CORP                CL A             11132010   32624  1248085 SH    SHARED       10   1210935          37150
D BROADCOM CORP                CL A             11132010     601    23000 SH    SHARED       14     23000          23000
D BROADCOM CORP                CL A             11132010    3006   115000 SH    SHARED       16    115000
D BROADCOM CORP                CL A             11132010       1       75 SH    SHARED       20                       75
D BROADCOM CORP                CL A             11132010       7      300 SH    SHARED       21      300
D BROADCOM CORP                CL A             11132010     222     8525 SH    SHARED       22      8100            425
D BROADCOM CORP                CL A             11132010      24      925 SH    SHR/OTHR     22                      925
D BROADCOM CORP                CL A             11132010     430    16452 SH    SHARED       23     14252           2200
D BROADCOM CORP                CL A             11132010     105     4030 SH    SHR/OTHR     23      4030
D BROADCOM CORP                CL A             11132010      29     1110 SH    SHARED       24      1110
D BROADRIDGE FINL SOLUTIONS IN COM              11133T10    2633   117398 SH    SHARED            117398
D BROADRIDGE FINL SOLUTIONS IN COM              11133T10    1192    53168 SH    SHARED             6169          46999
D BROADRIDGE FINL SOLUTIONS IN COM              11133T10      11      504 SH    SHR/OTHR     01      504
D BROADRIDGE FINL SOLUTIONS IN COM              11133T10     178     7974 SH    SHARED       02     7974
D BROADRIDGE FINL SOLUTIONS IN COM              11133T10       1       70 SH    SHARED       05       70
D BROADRIDGE FINL SOLUTIONS IN COM              11133T10     251    11200 SH    SHARED       10    11200
D BROADRIDGE FINL SOLUTIONS IN COM              11133T10      17      800 SH    SHARED       20      800
D BROADRIDGE FINL SOLUTIONS IN COM              11133T10     109     4861 SH    SHARED       21     1661           3200
D BROADRIDGE FINL SOLUTIONS IN COM              11133T10      34     1557 SH    SHARED       23     1507             50
D BROADRIDGE FINL SOLUTIONS IN COM              11133T10      73     3296 SH    SHR/OTHR     23     3296
D BROADWAY FINL CORP DEL       COM              11144410       0       36 SH    SHARED             36
D BROCADE COMMUNICATIONS SYS I COM NEW          11162130    3084   420212 SH    SHARED            420212
D BROCADE COMMUNICATIONS SYS I COM NEW          11162130       5      764 SH    SHARED       01      764
D BROCADE COMMUNICATIONS SYS I COM NEW          11162130    1185   161494 SH    SHARED       02    161494
D BROCADE COMMUNICATIONS SYS I COM NEW          11162130   35360  4817537 SH    SHARED       04   4817537
D BROCADE COMMUNICATIONS SYS I COM NEW          11162130   25257  3441035 SH    SHARED       06                 3441035
D BROCADE COMMUNICATIONS SYS I COM NEW          11162130    4594   625977 SH    SHARED       10    625977
D BROCADE COMMUNICATIONS SYS I COM NEW          11162130    3781   515198 SH    SHARED       16    515198
D BRONCO DRILLING CO INC       COM              11221110      15     1033 SH    SHARED           1033
D BRONCO DRILLING CO INC       COM              11221110     123     8300 SH    SHARED       10    8300
D BROOKDALE SR LIVING INC      COM              11246310      25      900 SH    SHARED            900
D BROOKDALE SR LIVING INC      COM              11246310   17852   628401 SH    SHARED            628401
D BROOKDALE SR LIVING INC      COM              11246310       2      100 SH    SHARED       02      100
D BROOKDALE SR LIVING INC      COM              11246310     142     5000 SH    SHARED       10     5000
D BROOKE CAP CORP              COM              11249710       0       43 SH    SHARED             43
D BROOKE CORP                  COM              11250210       1      188 SH    SHARED            188
D BROOKFIELD ASSET MGMT INC    CL A LTD VT SH   11258510    6259   175484 SH    SHARED            172484           3000
D BROOKFIELD ASSET MGMT INC    CL A LTD VT SH   11258510       8      238 SH    SHARED       01      238
D BROOKFIELD ASSET MGMT INC    CL A LTD VT SH   11258510     891    25000 SH    SHARED       04     25000
D BROOKFIELD ASSET MGMT INC    CL A LTD VT SH   11258510      10      300 SH    SHARED       05      300
D BROOKFIELD ASSET MGMT INC    CL A LTD VT SH   11258510     100     2812 SH    SHARED       06           2812
D BROOKFIELD ASSET MGMT INC    CL A LTD VT SH   11258510     394    11050 SH    SHARED       10    11050
D BROOKFIELD ASSET MGMT INC    CL A LTD VT SH   11258510      77     2185 SH    SHARED       14           2185
D BROOKFIELD ASSET MGMT INC    CL A LTD VT SH   11258510     275     7726 SH    SHARED       21     7726
D BROOKFIELD ASSET MGMT INC    CL A LTD VT SH   11258510     251     7050 SH    SHARED       23     1800           5250
D BROOKFIELD HOMES CORP        COM              11272310      31     2014 SH    SHARED           2014
D BROOKFIELD HOMES CORP        COM              11272310      78     4950 SH    SHARED       02     4950
D BROOKFIELD PPTYS CORP        COM              11290010    1507    78314 SH    SHARED            78314
D BROOKFIELD PPTYS CORP        COM              11290010       2      150 SH    SHARED       01      150
D BROOKFIELD PPTYS CORP        COM              11290010      62     3225 SH    SHARED       06           3225
D BROOKFIELD PPTYS CORP        COM              11290010    8409   436850 SH    SHARED       10    436850
D BROOKFIELD PPTYS CORP        COM              11290010   33890  1760558 SH    SHARED       11   1217983         542575
D BROOKLINE BANCORP INC DEL    COM              11373M10      19     1928 SH    SHARED           1928
D BROOKLINE BANCORP INC DEL    COM              11373M10     170    16750 SH    SHARED       02    16750
D BROOKLINE BANCORP INC DEL    COM              11373M10     131    12900 SH    SHARED       10    12900
D BROOKLYN FEDERAL BANCORP INC COM              11403910     789    59693 SH    SHARED            59693
D BROOKS AUTOMATION INC        COM              11434010     348    26400 SH    SHARED       10    26400
D BROOKS AUTOMATION INC        COM              11434010     528    40036 SH    SHARED       10    40036
D BROOKS AUTOMATION INC        COM              11434010      39     2988 SH    SHARED       21           2988
D BROWN & BROWN INC            COM              11523610     786    33475 SH    SHARED            33475
D BROWN & BROWN INC            COM              11523610     865    36850 SH    SHARED       01     1950          34900
D BROWN & BROWN INC            COM              11523610     594    25299 SH    SHARED       02    25299
D BROWN & BROWN INC            COM              11523610      14      600 SH    SHARED       06            600
D BROWN & BROWN INC            COM              11523610     565    24080 SH    SHARED       10    24080
D BROWN FORMAN CORP            CL B             11563720    5699    76907 SH    SHARED            76907
D BROWN FORMAN CORP            CL B             11563720     897    12107 SH    SHARED       01    12107
D BROWN FORMAN CORP            CL B             11563720     239     3235 SH    SHARED       02     3235
D BROWN FORMAN CORP            CL B             11563720      22      300 SH    SHARED       06            300
D BROWN FORMAN CORP            CL B             11563720    5959    80408 SH    SHARED       10    55508          24900
D BROWN SHOE INC NEW           COM              11573610     390    25725 SH    SHARED            25725
D BROWN SHOE INC NEW           COM              11573610      51     3400 SH    SHARED       10     1600           1800
D BROWN SHOE INC NEW           COM              11573610     601    39625 SH    SHARED       10    39625
D BROWN SHOE INC NEW           COM              11573610    2047   135000 SH    SHR/OTHR     23            135000
D BRUKER BIOSCIENCES CORP      COM              11679410     140    10565 SH    SHARED            10565
D BRUKER BIOSCIENCES CORP      COM              11679410     361    27200 SH    SHARED       01    27200
D BRUKER BIOSCIENCES CORP      COM              11679410      53     4050 SH    SHARED       02     4050
D BRUNSWICK CORP               COM              11704310   19557  1147048 SH    SHARED           1147048
D BRUNSWICK CORP               COM              11704310     239    14019 SH    SHARED       01    14019
D BRUNSWICK CORP               COM              11704310     623    36569 SH    SHARED       02    36569
D BRUNSWICK CORP               COM              11704310    1180    69222 SH    SHARED       10    69222
D BRUNSWICK CORP               COM              11704310     111     6544 SH    SHARED       21     5165           1379
D BRUSH ENGINEERED MATLS INC   COM              11742110     573    15488 SH    SHARED            15488
D BRUSH ENGINEERED MATLS INC   COM              11742110       7      205 SH    SHARED       02      205
D BRUSH ENGINEERED MATLS INC   COM              11742110    5908   159600 SH    SHARED       10   159600
D BRYN MAWR BK CORP            COM              11766510       3      158 SH    SHARED            158
D BSQUARE CORP                 COM NEW          11776U30       1      255 SH    SHARED            255
D BSQUARE CORP                 COM NEW          11776U30       3      550 SH    SHARED       02      550
D BUCA INC                     COM              11776910       1     1834 SH    SHARED           1834
D BUCKEYE GP HOLDINGS LP       COM UNITS LP     11816710   42204  1497151 SH    SHARED           1497151
D BUCKEYE PARTNERS L P         UNIT LTD PARTN   11823010      70     1417 SH    SHARED           1417
D BUCKEYE TECHNOLOGIES INC     COM              11825510     318    25464 SH    SHARED            25464
D BUCKEYE TECHNOLOGIES INC     COM              11825510      42     3400 SH    SHARED       10     3400
D BUCKEYE TECHNOLOGIES INC     COM              11825510    3428   274300 SH    SHARED       10   274300
D BUCKLE INC                   COM              11844010      20      608 SH    SHARED            608
D BUCKLE INC                   COM              11844010      13      400 SH    SHARED       10      400
D BUCYRUS INTL INC NEW         CL A             11875910    4686    47156 SH    SHARED            47156
D BUCYRUS INTL INC NEW         CL A             11875910      49      500 SH    SHARED       01      500
D BUCYRUS INTL INC NEW         CL A             11875910    1177    11850 SH    SHARED       10    11850
D BUFFALO WILD WINGS INC       COM              11984810       7      306 SH    SHARED            306
D BUFFALO WILD WINGS INC       COM              11984810     776    33450 SH    SHARED       01    33000            450
D BUFFALO WILD WINGS INC       COM              11984810     882    38000 SH    SHR/OTHR     01            38000
D BUFFALO WILD WINGS INC       COM              11984810       6      279 SH    SHARED       02      279
D BUFFALO WILD WINGS INC       COM              11984810   14881   640880 SH    SHARED       10   640880
D BUILD A BEAR WORKSHOP        COM              12007610      80     5800 SH    SHARED           5800
```

```
D BUILD A BEAR WORKSHOP           COM                 12007610      10      775 SH    SHARED     21          775
D BUILDERS FIRSTSOURCE INC        COM                 12008R10     220    30591 SH    SHARED               30591
D BUILDERS FIRSTSOURCE INC        COM                 12008R10      52     7300 SH    SHARED     01         7300
D BUILDERS FIRSTSOURCE INC        COM                 12008R10      14     2000 SH    SHARED     02         2000
D BUILDERS FIRSTSOURCE INC        COM                 12008R10    1045   144800 SH    SHARED               144800
D BUILDING MATLS HLDG CORP        COM                 12011310    1378   249351 SH    SHARED               249351
D BUILDING MATLS HLDG CORP        COM                 12011310      44     8000 SH    SHARED     10         8000
D BURGER KING HLDGS INC           COM                 12120820    2578    90439 SH    SHARED               90439
D BURGER KING HLDGS INC           COM                 12120820     476    16700 SH    SHARED     10        16700
D BURLINGTON NORTHN SANTA FE C    COM                 12189710     239     2876 SH    SHARED                2876
D BURLINGTON NORTHN SANTA FE C    COM                 12189710  128190  1540192 SH    SHARED              1519392        20800
D BURLINGTON NORTHN SANTA FE C    COM                 12189710    9618   115565 SH    SHARED     01        85690        29875
D BURLINGTON NORTHN SANTA FE C    COM                 12189710    1186    14253 SH    SHR/OTHR   01                      14253
D BURLINGTON NORTHN SANTA FE C    COM                 12189710     536     6449 SH    SHARED     02         6449
D BURLINGTON NORTHN SANTA FE C    COM                 12189710     180     2168 SH    SHARED     04                       2168
D BURLINGTON NORTHN SANTA FE C    COM                 12189710    2496    30000 SH    SHARED     04        30000
D BURLINGTON NORTHN SANTA FE C    COM                 12189710      12      150 SH    SHARED     05          150
D BURLINGTON NORTHN SANTA FE C    COM                 12189710     293     3530 SH    SHARED     06                       3530
D BURLINGTON NORTHN SANTA FE C    COM                 12189710   32689   392764 SH    SHARED     10       391709         1055
D BURLINGTON NORTHN SANTA FE C    COM                 12189710      32      385 SH    SHARED     14          385
D BURLINGTON NORTHN SANTA FE C    COM                 12189710      68      823 SH    SHARED     19                        823
D BURLINGTON NORTHN SANTA FE C    COM                 12189710    2239    26910 SH    SHARED     20        21465         5445
D BURLINGTON NORTHN SANTA FE C    COM                 12189710     674     8103 SH    SHR/OTHR   20                       8103
D BURLINGTON NORTHN SANTA FE C    COM                 12189710     293     3526 SH    SHARED     21         1300         2226
D BURLINGTON NORTHN SANTA FE C    COM                 12189710     782     9400 SH    SHR/OTHR   21                       9400
D BURLINGTON NORTHN SANTA FE C    COM                 12189710     550     6609 SH    SHARED     22         4782         1827
D BURLINGTON NORTHN SANTA FE C    COM                 12189710      66      795 SH    SHR/OTHR   22                        795
D BURLINGTON NORTHN SANTA FE C    COM                 12189710    7077    85041 SH    SHARED     23        10085        74956
D BURLINGTON NORTHN SANTA FE C    COM                 12189710    9335   112170 SH    SHR/OTHR   23                     112170
D BUSINESS OBJECTS S A            SPONSORED ADR       12328X10   18965   311416 SH    SHARED               311416
D BUSINESS OBJECTS S A            SPONSORED ADR       12328X10     992    16300 SH    SHARED     02        16300
D BWAY HOLDING COMPANY            COM                 12429710       2      307 SH    SHARED                 307
D BWAY HOLDING COMPANY            COM                 12429710      13     1400 SH    SHARED     02         1400
D C&D TECHNOLOGIES INC            COM                 12466110       3      587 SH    SHARED                 587
D CAE INC                         COM                 12476510     590    44168 SH    SHARED               44168
D CAE INC                         COM                 12476510      18     1400 SH    SHARED     01         1400
D CAE INC                         COM                 12476510   17428  1303550 SH    SHARED              1303550
D CAS MED SYS INC                 COM PAR $0.004      12476920       1      238 SH    SHARED                 238
D CAI INTERNATIONAL INC           COM                 12477X10       1      171 SH    SHARED                 171
D CAI INTERNATIONAL INC           COM                 12477X10       8      800 SH    SHARED     02          800
D CBIZ INC                        NOTE  3.125% 6/0   124805AB    9990  9250000 PRN    SHARED              9250000
D CBIZ INC                        COM                 12480510      18     1868 SH    SHARED                1868
D CBIZ INC                        COM                 12480510     118    12052 SH    SHARED     02        12052
D CBL & ASSOC PPTYS INC           COM                 12483010    4880   204112 SH    SHARED               204112
D CBL & ASSOC PPTYS INC           COM                 12483010      59     2500 SH    SHARED     01         2500
D CBL & ASSOC PPTYS INC           COM                 12483010      19      800 SH    SHARED     02          800
D CBL & ASSOC PPTYS INC           COM                 12483010    6061   253500 SH    SHARED     10       253500
D CBL & ASSOC PPTYS INC           COM                 12483010   67912  2840350 SH    SHARED     11                    2840350
D CBS CORP NEW                    CL A                12485710       9      347 SH    SHARED                 347
D CBS CORP NEW                    CL A                12485710       0        3 SH    SHARED     02            3
D CBS CORP NEW                    CL B                12485720   74435  2731581 SH    SHARED              2731581
D CBS CORP NEW                    CL B                12485720    3495   128287 SH    SHARED     01       126888         1399
D CBS CORP NEW                    CL B                12485720      15      577 SH    SHR/OTHR   01                        577
D CBS CORP NEW                    CL B                12485720    1368    50234 SH    SHARED     02        50234
D CBS CORP NEW                    CL B                12485720    5450   200000 SH    SHARED     04       200000
D CBS CORP NEW                    CL B                12485720       6      235 SH    SHARED     05          235
D CBS CORP NEW                    CL B                12485720     179     6590 SH    SHARED     06                       6590
D CBS CORP NEW                    CL B                12485720   33686  1236191 SH    SHARED     10      1038691       197500
D CBS CORP NEW                    CL B                12485720     778    28579 SH    SHARED     14                      28579
D CBS CORP NEW                    CL B                12485720     369    13575 SH    SHARED     15                      13575
D CBS CORP NEW                    CL B                12485720     155     5700 SH    SHARED     19                       5700
D CBS CORP NEW                    CL B                12485720       8      300 SH    SHARED     20                        300
D CBS CORP NEW                    CL B                12485720      14      550 SH    SHARED     21                        550
D CBS CORP NEW                    CL B                12485720     212     7812 SH    SHARED     22         7812
D CBS CORP NEW                    CL B                12485720       4      175 SH    SHR/OTHR   22                        175
D CBS CORP NEW                    CL B                12485720      24      900 SH    SHARED     23          400          500
D CBS CORP NEW                    CL B                12485720     251     9228 SH    SHR/OTHR   23                       9228
D CCA INDS INC                    COM                 12486710      20     2084 SH    SHARED                2084
D CCF HLDG CO                     COM                 12487X10       0       74 SH    SHARED                  74
D CBRL GROUP INC                  COM                 12489V10     974    30074 SH    SHARED               30074
D CBRL GROUP INC                  COM                 12489V10     369    11395 SH    SHARED     01         2495         8900
D CBRL GROUP INC                  COM                 12489V10      36     1125 SH    SHARED     01         1125
D CBRL GROUP INC                  COM                 12489V10     498    15400 SH    SHARED     10        15400
D CB RICHARD ELLIS GROUP INC      CL A                12497T10       9      450 SH    SHARED                 450
D CB RICHARD ELLIS GROUP INC      CL A                12497T10    5260   244088 SH    SHARED               244088
D CB RICHARD ELLIS GROUP INC      CL A                12497T10    3287   152555 SH    SHARED     01       114970        37585
D CB RICHARD ELLIS GROUP INC      CL A                12497T10     417    19360 SH    SHR/OTHR   01                      19360
D CB RICHARD ELLIS GROUP INC      CL A                12497T10     461    21433 SH    SHARED     02        21433
D CB RICHARD ELLIS GROUP INC      CL A                12497T10       3      150 SH    SHARED     05          150
D CB RICHARD ELLIS GROUP INC      CL A                12497T10     100     4650 SH    SHARED     06                       4650
D CB RICHARD ELLIS GROUP INC      CL A                12497T10    1939    89977 SH    SHARED     10        89977
D CB RICHARD ELLIS GROUP INC      CL A                12497T10     247    11495 SH    SHARED     14                      11495
D CB RICHARD ELLIS GROUP INC      CL A                12497T10      38     1770 SH    SHARED     20         1500          270
D CB RICHARD ELLIS GROUP INC      CL A                12497T10       9      440 SH    SHR/OTHR   20                        440
D CB RICHARD ELLIS GROUP INC      CL A                12497T10      21     1000 SH    SHARED     21         1000
D CB RICHARD ELLIS GROUP INC      CL A                12497T10     156     7239 SH    SHARED     22         7239
D CB RICHARD ELLIS GROUP INC      CL A                12497T10      21     1000 SH    SHR/OTHR   22                       1000
D CB RICHARD ELLIS GROUP INC      CL A                12497T10     116     5415 SH    SHARED     23         5320           95
D CB RICHARD ELLIS GROUP INC      CL A                12497T10      31     1440 SH    SHR/OTHR   23                       1440
D CBRE REALTY FINANCE INC         COM                 12498B30    2356   441240 SH    SHARED               441240
D C COR INC                       COM                 12501010    1798   163524 SH    SHARED               163524
D C COR INC                       COM                 12501010       0       14 SH    SHARED     02           14
D C D I CORP                      COM                 12507110      46     1928 SH    SHARED                1928
D C D I CORP                      COM                 12507110      13      550 SH    SHARED     01          550
D C D I CORP                      COM                 12507110       3      146 SH    SHARED     02          146
D C D I CORP                      COM                 12507110     271    11200 SH    SHARED     10        11200
D CEC ENTMT INC                   COM                 12513710     155     5973 SH    SHARED                5973
D CEC ENTMT INC                   COM                 12513710    1902    73282 SH    SHARED     10        73282
D CECO ENVIRONMENTAL CORP         COM                 12514110     900    82019 SH    SHARED               82019
D CE FRANKLIN LTD                 COM                 12515110     664   102389 SH    SHARED               102389
D CFS BANCORP INC                 COM                 12526J10       7      525 SH    SHARED                 525
D CF INDS HLDGS INC               COM                 12526910    9626    87469 SH    SHARED               87469
D CF INDS HLDGS INC               COM                 12526910    3863    35100 SH    SHARED     01        19950        15150
D CF INDS HLDGS INC               COM                 12526910    2124    19300 SH    SHR/OTHR   01                      19300
D CF INDS HLDGS INC               COM                 12526910     250     2276 SH    SHARED     02         2276
D CF INDS HLDGS INC               COM                 12526910   11006   100000 SH    SHARED     05       100000
D CF INDS HLDGS INC               COM                 12526910   68506   622450 SH    SHARED     10       622450
D CHC HELICOPTER CORP             CL A SUB VTG        12541C20       5      200 SH    SHARED                 200
D CH ENERGY GROUP INC             COM                 12541M10       4      100 SH    SHARED                 100
D CH ENERGY GROUP INC             COM                 12541M10       8      200 SH    SHARED     01          200
D CH ENERGY GROUP INC             COM                 12541M10     262     5900 SH    SHARED     10         5900
D CH ENERGY GROUP INC             COM                 12541M10      89     2000 SH    SHARED     23                       2000
D C H ROBINSON WORLDWIDE INC      COM NEW             12541W20    8193   151390 SH    SHARED               151390
D C H ROBINSON WORLDWIDE INC      COM NEW             12541W20     422     7800 SH    SHARED     01         7800
```

```
D C H ROBINSON WORLDWIDE INC    COM NEW         12541W20      432     8000 SH   SHR/OTHR   01              8000
D C H ROBINSON WORLDWIDE INC    COM NEW         12541W20      136     2525 SH   SHARED     02       2525
D C H ROBINSON WORLDWIDE INC    COM NEW         12541W20       86     1600 SH   SHARED     06              1600
D C H ROBINSON WORLDWIDE INC    COM NEW         12541W20     5618   103820 SH   SHARED     10     103820
D C H ROBINSON WORLDWIDE INC    COM NEW         12541W20       18      333 SH   SHARED     21               333
D CIGNA CORP                    COM             12550910    22842   425139 SH   SHARED     21     425139
D CIGNA CORP                    COM             12550910     3510    65337 SH   SHARED     01      64917         420
D CIGNA CORP                    COM             12550910     2346    43681 SH   SHARED     02      43681
D CIGNA CORP                    COM             12550910        9      180 SH   SHARED     05        180
D CIGNA CORP                    COM             12550910      200     3730 SH   SHARED     06               3730
D CIGNA CORP                    COM             12550910    20276   377386 SH   SHARED     10     377386
D CIGNA CORP                    COM             12550910      495     9216 SH   SHARED     20        216        9000
D CIGNA CORP                    COM             12550910       11      222 SH   SHARED     21               222
D CIGNA CORP                    COM             12550910      950    17694 SH   SHARED     23      17694
D CIGNA CORP                    COM             12550910      483     9000 SH   SHR/OTHR   23               9000
D CIT GROUP INC                 COM             12558110       19      792 SH   SHARED                      792
D CIT GROUP INC                 COM             12558110     8057   335319 SH   SHARED            335319
D CIT GROUP INC                 COM             12558110      922    38371 SH   SHARED     01      38371
D CIT GROUP INC                 COM             12558110      971    40413 SH   SHARED     02      40413
D CIT GROUP INC                 COM             12558110        9      393 SH   SHARED     04                393
D CIT GROUP INC                 COM             12558110     1489    62000 SH   SHARED     10      62000
D CIT GROUP INC                 COM             12558110        2      110 SH   SHARED     05        110
D CIT GROUP INC                 COM             12558110     8367   348217 SH   SHARED     06            348217
D CIT GROUP INC                 COM             12558110    71263  2965597 SH   SHARED     10    2965597
D CIT GROUP INC                 COM             12558110      404    16844 SH   SHARED     14              16844
D CIT GROUP INC                 COM             12558110     1119    46571 SH   SHARED     16      46571
D CIT GROUP INC                 UNIT 99/99/9999 12558140    26554  1408000 SH   SHARED           1408000
D CKE RESTAURANTS INC           NOTE 4.000%10/0 12561EAG     1171   750000 PRN  SHARED            750000
D CKE RESTAURANTS INC           COM             12561E10      342    25945 SH   SHARED             25945
D CKE RESTAURANTS INC           COM             12561E10       34     2600 SH   SHARED     01               2600
D CKE RESTAURANTS INC           COM             12561E10      856    64921 SH   SHARED     10      64921
D CLECO CORP NEW                COM             12561W10     2003    72051 SH   SHARED             72051
D CLECO CORP NEW                COM             12561W10      394    14200 SH   SHARED     01      14200
D CLECO CORP NEW                COM             12561W10      353    12725 SH   SHARED     02      12725
D CLECO CORP NEW                COM             12561W10     1867    67172 SH   SHARED     10      67172
D CLECO CORP NEW                COM             12561W10      111     4000 SH   SHR/OTHR   23               4000
D CKX INC                       COM             12562M10     8694   724568 SH   SHARED            724568
D CKX INC                       COM             12562M10       15     1275 SH   SHARED     02       1275
D CKX LANDS INC                 COM             12562M10        0       51 SH   SHARED                       51
D CME GROUP INC                 COM             12572Q10    48998    71426 SH   SHARED             71426
D CME GROUP INC                 COM             12572Q10     3464     5050 SH   SHARED     01       5020         30
D CME GROUP INC                 COM             12572Q10     2689     3920 SH   SHARED     02       3920
D CME GROUP INC                 COM             12572Q10     2058     3000 SH   SHARED     04       3000
D CME GROUP INC                 COM             12572Q10    11675    17020 SH   SHARED     05      17020
D CME GROUP INC                 COM             12572Q10      298      435 SH   SHARED     06                435
D CME GROUP INC                 COM             12572Q10    74925   109221 SH   SHARED     10     105207        4014
D CME GROUP INC                 COM             12572Q10     4116     6000 SH   SHARED     15               6000
D CME GROUP INC                 COM             12572Q10    20758    30260 SH   SHARED     23      30260
D CME GROUP INC                 COM             12572Q10     1454     2120 SH   SHR/OTHR   23               2120
D CME GROUP INC                 COM             12572Q10       96      140 SH   SHARED     24       140
D CMGI INC                      COM NEW         12575030      212    16266 SH   SHARED             15866         400
D CMGI INC                      COM NEW         12575030       19     1500 SH   SHARED     01       1500
D CMGI INC                      COM NEW         12575030     1036    79220 SH   SHARED     10      79220
D CMGI INC                      COM NEW         12575030        0       70 SH   SHARED     20         70
D CMS ENERGY CORP               NOTE 2.875%12/0 12589GAW     1132   847000 PRN  SHARED     02     847000
D CMS ENERGY CORP               COM             12589610     3424   197029 SH   SHARED            197029
D CMS ENERGY CORP               COM             12589610     1054    60690 SH   SHARED     01      60690
D CMS ENERGY CORP               COM             12589610     1528    87918 SH   SHARED     02      87918
D CMS ENERGY CORP               COM             12589610     5515   317323 SH   SHARED     10     317323
D CMS ENERGY CORP               COM             12589610       86     5000 SH   SHR/OTHR   23               5000
D CPI CORP                      COM             12590210     5430   230603 SH   SHARED            230603
D CSS INDS INC                  COM             12590610     1606    43761 SH   SHARED             43761
D CSS INDS INC                  COM             12590610      613    16711 SH   SHARED     01      16711
D CSS INDS INC                  COM             12590610     1846    50300 SH   SHARED     10      50300
D CPI AEROSTRUCTURES INC        COM NEW         12591930        1      123 SH   SHARED                      123
D CTI INDUSTRIES CORP           COM             12596130        0       40 SH   SHARED                       40
D CSK AUTO CORP                 COM             12596510       45     9100 SH   SHARED             9100
D CSK AUTO CORP                 COM             12596510        3      700 SH   SHARED     02        700
D CSK AUTO CORP                 COM             12596510       70    14000 SH   SHARED     10      14000
D CNA FINL CORP                 COM             12611710     9953   295176 SH   SHARED            295176
D CNA FINL CORP                 COM             12611710      273     8124 SH   SHARED     01       8124
D CNA FINL CORP                 COM             12611710       11      350 SH   SHARED     02        350
D CNA FINL CORP                 COM             12611710      994    29500 SH   SHARED     10      29500
D CNA SURETY CORP               COM             12612L10       72     3673 SH   SHARED             3673
D CNA SURETY CORP               COM             12612L10      161     8150 SH   SHARED     02       8150
D CNA SURETY CORP               COM             12612L10      174     8800 SH   SHARED     10       8800
D CNB FINL CORP PA              COM             12612810        3      223 SH   SHARED                      223
D CNET NETWORKS INC             COM             12613810    16613  1817683 SH   SHARED           1817683
D CNET NETWORKS INC             COM             12613810       35     3900 SH   SHARED     01       3900
D CNET NETWORKS INC             COM             12613810      625    68400 SH   SHARED     04      68400
D CNET NETWORKS INC             COM             12613810      746    81700 SH   SHARED     10      81700
D CNOOC LTD                     SPONSORED ADR   12613210       99      592 SH   SHARED                      592
D CNOOC LTD                     SPONSORED ADR   12613210      301     1799 SH   SHARED     21       1799
D CPFL ENERGIA S A              SPONSORED ADR   12615310      402     7100 SH   SHARED             7100
D CP HOLDRS                     DEP RCPTS CP    12616K10       29      200 SH   SHR/OTHR   23               200
D CNX GAS CORP                  COM             12618H30       27      856 SH   SHARED              856
D CNX GAS CORP                  COM             12618H30      169     5300 SH   SHARED     02       5300
D CNX GAS CORP                  COM             12618H30      146     4600 SH   SHARED     10       4600
D CNX GAS CORP                  COM             12618H30       16      515 SH   SHARED     21                515
D CPI INTERNATIONAL INC         COM             12618M10        4      279 SH   SHARED              279
D CRA INTL INC                  COM             12618T10      110     2326 SH   SHARED             2326
D CRH PLC                       ADR             12626K20       46     1325 SH   SHARED             1325
D CRH PLC                       ADR             12626K20       34      990 SH   SHARED     21                990
D CSG SYS INTL INC              COM             12634910      464    31555 SH   SHARED             31555
D CSG SYS INTL INC              COM             12634910      207    14100 SH   SHARED     01       2000       12100
D CSG SYS INTL INC              COM             12634910      530    36007 SH   SHARED     02      36007
D CSG SYS INTL INC              COM             12634910     4132   280711 SH   SHARED     10     280711
D CSP INC                       COM             12638910        0       75 SH   SHARED                       75
D CSX CORP                      COM             12640810  1567344 35637664 SH   SHARED           5596160       41500
D CSX CORP                      COM             12640810     3363    76470 SH   SHARED     01      64470       12000
D CSX CORP                      COM             12640810    27977   636149 SH   SHARED     02     636149
D CSX CORP                      COM             12640810        7      180 SH   SHARED     05        180
D CSX CORP                      COM             12640810      184     4200 SH   SHARED     06               4200
D CSX CORP                      COM             12640810    30341   689900 SH   SHARED     10     689900
D CSX CORP                      COM             12640810      441    10032 SH   SHARED     23      10032
D CSX CORP                      COM             12640810      976    22200 SH   SHR/OTHR   23              22200
D CTC MEDIA INC                 COM             12642X10      183     6086 SH   SHARED             6086
D CTS CORP                      COM             12650110        3      365 SH   SHARED              365
D CTS CORP                      COM             12650110      368    37100 SH   SHARED     10      37100
D CVB FINL CORP                 COM             12660010       66     6449 SH   SHARED             6449
D CVB FINL CORP                 COM             12660010       82     8018 SH   SHARED     01       8018
D CVB FINL CORP                 COM             12660010      309    29900 SH   SHARED     02      29900
D CVB FINL CORP                 COM             12660010      189    18332 SH   SHARED     10      18332
D CVB FINL CORP                 COM             12660010        4      408 SH   SHARED     21                408
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | CVD EQUIPMENT CORP | COM | | 12660110 | 0 | 88 | SH | SHARED | | 88 |
| D | CVR ENERGY INC | COM | | 12662P10 | 3688 | 147876 | SH | SHARED | | 147876 |
| D | CVR ENERGY INC | COM | | 12662P10 | 4 | 200 | SH | SHARED | 01 | 200 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 710 | 17869 | SH | SHARED | | 17869 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 206169 | 5186661 | SH | SHARED | | 4975761 | 210900 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 7392 | 185974 | SH | SHARED | 01 | 161576 | 24398 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 19372 | 487361 | SH | SHR/OTHR | 01 | | 487361 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 28621 | 720046 | SH | SHARED | 02 | 720046 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 129570 | 3259636 | SH | SHARED | 04 | 3259636 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 1855 | 46680 | SH | SHARED | 05 | 46680 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 50173 | 1262222 | SH | SHARED | 06 | | 1262222 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 68050 | 1711968 | SH | SHARED | 10 | 1595368 | 116600 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 1009 | 25401 | SH | SHARED | 14 | 12700 | 12701 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 2385 | 60000 | SH | SHARED | 15 | 60000 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 6650 | 167301 | SH | SHARED | 16 | 167301 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 194 | 4900 | SH | SHARED | 20 | 1837 | 3063 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 355 | 8942 | SH | SHARED | 21 | 5913 | 3029 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 432 | 10891 | SH | SHARED | 22 | 6220 | 4671 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 19 | 500 | SH | SHR/OTHR | 22 | | 500 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 1823 | 45873 | SH | SHARED | 23 | 35812 | 10061 |
| D | CVS CAREMARK CORPORATION | COM | | 12665010 | 4799 | 120749 | SH | SHR/OTHR | 23 | | 120749 |
| D | CV THERAPEUTICS INC | NOTE | 2.000% 5/1 | 126667AD | 3431 | 3908000 | PRN | SHARED | | 3908000 |
| D | CV THERAPEUTICS INC | NOTE | 2.000% 5/1 | 126667AD | 439 | 500000 | PRN | SHARED | | 500000 |
| D | CV THERAPEUTICS INC | NOTE | 2.750% 5/1 | 126667AF | 1082 | 1296000 | PRN | SHARED | 02 | 1296000 |
| D | CV THERAPEUTICS INC | COM | | 12666710 | 759 | 83953 | SH | SHARED | | 83953 |
| D | CV THERAPEUTICS INC | COM | | 12666710 | 6 | 700 | SH | SHARED | 10 | 700 |
| D | CA INC | COM | | 12673P10 | 13501 | 541142 | SH | SHARED | | 541142 |
| D | CA INC | COM | | 12673P10 | 1865 | 74773 | SH | SHARED | 01 | 74773 |
| D | CA INC | COM | | 12673P10 | 297 | 11929 | SH | SHARED | 02 | 11929 |
| D | CA INC | COM | | 12673P10 | 7 | 300 | SH | SHARED | 05 | 300 |
| D | CA INC | COM | | 12673P10 | 104 | 4190 | SH | SHARED | 06 | | 4190 |
| D | CA INC | COM | | 12673P10 | 4910 | 196795 | SH | SHARED | 10 | 196795 |
| D | CA INC | COM | | 12673P10 | 1 | 67 | SH | SHARED | 14 | | 67 |
| D | CABELAS INC | COM | | 12680430 | 5 | 344 | SH | SHARED | | 344 |
| D | CABELAS INC | COM | | 12680430 | 176 | 11700 | SH | SHARED | 01 | 11700 |
| D | CABELAS INC | COM | | 12680430 | 6584 | 436900 | SH | SHARED | 10 | 436900 |
| D | CABLEVISION SYS CORP | CL A NY CABLVS | | 12686C10 | 12967 | 529281 | SH | SHARED | | 529281 |
| D | CABLEVISION SYS CORP | CL A NY CABLVS | | 12686C10 | 37 | 1538 | SH | SHARED | 01 | 1538 |
| D | CABLEVISION SYS CORP | CL A NY CABLVS | | 12686C10 | 194 | 7925 | SH | SHARED | 02 | 7925 |
| D | CABLEVISION SYS CORP | CL A NY CABLVS | | 12686C10 | 44 | 1820 | SH | SHARED | 06 | | 1820 |
| D | CABLEVISION SYS CORP | CL A NY CABLVS | | 12686C10 | 316 | 12900 | SH | SHARED | 10 | 12900 |
| D | CABLEVISION SYS CORP | CL A NY CABLVS | | 12686C10 | 110 | 4520 | SH | SHARED | 21 | | 4520 |
| D | CABLEVISION SYS CORP | CL A NY CABLVS | | 12686C10 | 245 | 10000 | SH | SHARED | 23 | | 10000 |
| D | CABOT CORP | COM | | 12705510 | 321 | 9653 | SH | SHARED | | 9653 |
| D | CABOT CORP | COM | | 12705510 | 610 | 18300 | SH | SHARED | 01 | 18300 |
| D | CABOT CORP | COM | | 12705510 | 103 | 3093 | SH | SHARED | 02 | 3093 |
| D | CABOT CORP | COM | | 12705510 | 93 | 2800 | SH | SHARED | 10 | 2800 |
| D | CABOT MICROELECTRONICS CORP | COM | | 12709P10 | 322 | 8994 | SH | SHARED | | 8994 |
| D | CABOT MICROELECTRONICS CORP | COM | | 12709P10 | 9 | 259 | SH | SHARED | 10 | 259 |
| D | CABOT OIL & GAS CORP | COM | | 12709710 | 2722 | 67447 | SH | SHARED | | 67447 |
| D | CABOT OIL & GAS CORP | COM | | 12709710 | 159 | 3950 | SH | SHARED | 01 | 3950 |
| D | CABOT OIL & GAS CORP | COM | | 12709710 | 2779 | 68850 | SH | SHARED | 02 | 68850 |
| D | CABOT OIL & GAS CORP | COM | | 12709710 | 213 | 5300 | SH | SHARED | 10 | 5300 |
| D | CACHE INC | COM NEW | | 12715030 | 134 | 14374 | SH | SHARED | | 14374 |
| D | CACI INTL INC | CL A | | 12719030 | 330 | 7382 | SH | SHARED | | 7382 |
| D | CACI INTL INC | CL A | | 12719030 | 335 | 7500 | SH | SHARED | 01 | 7500 |
| D | CACI INTL INC | CL A | | 12719030 | 69 | 1550 | SH | SHARED | 02 | 1550 |
| D | CACI INTL INC | CL A | | 12719030 | 22033 | 492150 | SH | SHARED | 14 | 492150 |
| D | CACI INTL INC | CL A | | 12719030 | 1320 | 29500 | SH | SHARED | 14 | | 29500 |
| D | CACI INTL INC | CL A | | 12719030 | 42 | 950 | SH | SHR/OTHR | 23 | | 950 |
| D | CADBURY SCHWEPPES PLC | ADR | | 12720930 | 4704 | 95291 | SH | SHARED | | 95291 |
| D | CADBURY SCHWEPPES PLC | ADR | | 12720930 | 246 | 5000 | SH | SHARED | 21 | | 5000 |
| D | CADBURY SCHWEPPES PLC | ADR | | 12720930 | 123 | 2500 | SH | SHARED | 23 | | 2500 |
| D | CADENCE FINL CORP | COM | | 12738A10 | 17 | 1193 | SH | SHARED | | 1193 |
| D | CADENCE PHARMACEUTICALS INC | COM | | 12738T10 | 5 | 388 | SH | SHARED | 02 | 388 |
| D | CADENCE DESIGN SYSTEM INC | NOTE | 8/1 | 12738TAB | 4608 | 4000000 | PRN | SHARED | | 4000000 |
| D | CADENCE DESIGN SYSTEM INC | COM | | 12738T10 | 29774 | 1750420 | SH | SHARED | | 1750420 |
| D | CADENCE DESIGN SYSTEM INC | COM | | 12738T10 | 1732 | 101859 | SH | SHARED | 01 | 10459 | 91400 |
| D | CADENCE DESIGN SYSTEM INC | COM | | 12738T10 | 462 | 27163 | SH | SHARED | 02 | 27163 |
| D | CADENCE DESIGN SYSTEM INC | COM | | 12738T10 | 43 | 2580 | SH | SHARED | 06 | | 2580 |
| D | CADENCE DESIGN SYSTEM INC | COM | | 12738T10 | 862 | 50700 | SH | SHARED | 10 | 50700 |
| D | CADENCE DESIGN SYSTEM INC | COM NEW | | 12738T10 | 258 | 15200 | SH | SHARED | 14 | | 15200 |
| D | CADIZ INC | COM | | 12753720 | 341 | 16274 | SH | SHARED | | 16274 |
| D | CAESARS ENTMT INC | FRNT | 4/1 | 12768AB | 3141 | 2315000 | PRN | SHARED | 02 | 2315000 |
| D | CAGLES INC | CL A | | 12770310 | 0 | 45 | SH | SHARED | | 45 |
| D | CAL DIVE INTL INC | NOTE | 3.250%12/1 | 129744AB | 80932 | 54500000 | PRN | SHARED | | 4500000 |
| D | CAL DIVE INTL INC | NOTE | 3.250%12/1 | 129744AB | 3638 | 2450000 | PRN | SHARED | 02 | 2450000 |
| D | CAL DIVE INTL INC DEL | COM | | 12802T10 | 131 | 9925 | SH | SHARED | | 9925 |
| D | CAL DIVE INTL INC DEL | COM | | 12802T10 | 142 | 10790 | SH | SHARED | 01 | 10790 |
| D | CAL DIVE INTL INC DEL | COM | | 12802T10 | 228 | 17264 | SH | SHARED | 10 | 17264 |
| D | CAL MAINE FOODS INC | COM NEW | | 12803020 | 384 | 14486 | SH | SHARED | | 14486 |
| D | CAL MAINE FOODS INC | COM NEW | | 12803020 | 31 | 1200 | SH | SHARED | 01 | 1200 |
| D | CAL MAINE FOODS INC | COM NEW | | 12803020 | 1201 | 45300 | SH | SHARED | 10 | 45300 |
| D | CALAMOS CONV & HIGH INCOME F | COM SHS | | | 12811R10 | 5 | 447 | SH | SHARED | | 447 |
| D | CALAMOS ASSET MGMT INC | CL A | | 12811R10 | 1757 | 59008 | SH | SHARED | | 59008 |
| D | CALAMOS ASSET MGMT INC | CL A | | 12811R10 | 378 | 12719 | SH | SHARED | 02 | 12719 |
| D | CALAMOS ASSET MGMT INC | CL A | | 12811R10 | 501 | 16836 | SH | SHARED | 10 | 16836 |
| D | CALAMP CORP | COM | | 12812610 | 3 | 1097 | SH | SHARED | | 1097 |
| D | CALAVO GROWERS INC | COM | | 12824610 | 5 | 303 | SH | SHARED | | 303 |
| D | CALAVO GROWERS INC | COM | | 12824610 | 26 | 1400 | SH | SHARED | 02 | 1400 |
| D | CALGON CARBON CORP | COM | | 12960310 | 105 | 6613 | SH | SHARED | | 6613 |
| D | CALGON CARBON CORP | COM | | 12960310 | 252 | 15900 | SH | SHARED | 10 | 15900 |
| D | CALIFORNIA COASTAL CMNTYS IN | COM NEW | | 12991520 | 1856 | 315719 | SH | SHARED | | 315719 |
| D | CALIFORNIA COASTAL CMNTYS IN | COM NEW | | 12991520 | 16 | 2725 | SH | SHARED | 02 | 2725 |
| D | CALIFORNIA COASTAL CMNTYS IN | COM NEW | | 12991520 | 1323 | 225000 | SH | SHARED | 10 | 225000 |
| D | CALIFORNIA FIRST NTNL BANCOR | COM | | 13022210 | 0 | 59 | SH | SHARED | | 59 |
| D | CALIFORNIA MICRO DEVICES COR | COM | | 13043910 | 2 | 599 | SH | SHARED | | 599 |
| D | CALIFORNIA PIZZA KITCHEN INC | COM | | 13054D10 | 315 | 20250 | SH | SHARED | | 20250 |
| D | CALIFORNIA PIZZA KITCHEN INC | COM | | 13054D10 | 43 | 2795 | SH | SHARED | 01 | 2795 |
| D | CALIFORNIA PIZZA KITCHEN INC | COM | | 13054D10 | 778 | 50000 | SH | SHARED | 02 | 50000 |
| D | CALIFORNIA PIZZA KITCHEN INC | COM | | 13054D10 | 315 | 20250 | SH | SHARED | 10 | 20250 |
| D | CALIFORNIA WTR SVC GROUP | COM | | 13078810 | 115 | 3121 | SH | SHARED | | 3121 |
| D | CALIFORNIA WTR SVC GROUP | COM | | 13078810 | 624 | 16870 | SH | SHARED | 10 | 16870 |
| D | CALIPER LIFE SCIENCES INC | COM | | 13087210 | 14 | 2543 | SH | SHARED | | 2543 |
| D | CALIPER LIFE SCIENCES INC | COM | | 13087210 | 31 | 5700 | SH | SHARED | 02 | 5700 |
| D | CALLAWAY GOLF CO | COM | | 13119310 | 371 | 21298 | SH | SHARED | | 21298 |
| D | CALLAWAY GOLF CO | COM | | 13119310 | 367 | 21100 | SH | SHARED | 01 | 1800 | 19300 |
| D | CALLAWAY GOLF CO | COM | | 13119310 | 17 | 1000 | SH | SHR/OTHR | 01 | | 1000 |
| D | CALLAWAY GOLF CO | COM | | 13119310 | 126 | 7265 | SH | SHARED | 02 | 7265 |
| D | CALLAWAY GOLF CO | COM | | 13119310 | 12373 | 709900 | SH | SHARED | 10 | 709900 |
| D | CALLISTO PHARMACEUTICALS NEW | COM | | 1312EMO0 | 0 | 1022 | SH | SHARED | | 1022 |
| D | CALLIDUS SOFTWARE INC | COM | | 13123E50 | 2 | 502 | SH | SHARED | | 502 |
| D | CALLIDUS SOFTWARE INC | COM | | 13123E50 | 17 | 3400 | SH | SHARED | 02 | 3400 |
| D | CALLON PETE CO DEL | COM | | 13123X10 | 8 | 536 | SH | SHARED | | 536 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | CALLWAVE INC DEL | COM | 13126N10 | 0 | 250 SH | SHARED | | 250 | |
| D | CALUMET SPECIALTY PRODS PTNR | UT LTD PARTNER | 13147610 | 13 | 378 SH | SHARED | | 378 | |
| D | CAM COMM SOLUTIONS INC | COM | 13191610 | 12 | 308 SH | SHARED | | 308 | |
| D | CAMBREX CORP | COM | 13201110 | 445 | 53156 SH | SHARED | | 53156 | |
| D | CAMBREX CORP | COM | 13201110 | 59 | 7100 SH | SHARED | 01 | 7100 | |
| D | CAMBREX CORP | COM | 13201110 | 2829 | 337600 SH | SHARED | 10 | 337600 | |
| D | CAMCO FINL CORP | COM | 13261810 | 2 | 188 SH | SHARED | | 188 | |
| D | CAMDEN NATL CORP | COM | 13303410 | 15 | 532 SH | SHARED | | 532 | |
| D | CAMDEN NATL CORP | COM | 13303410 | 5 | 200 SH | SHARED | 02 | 200 | |
| D | CAMDEN NATL CORP | COM | 13303410 | 116 | 4100 SH | SHARED | 10 | 4100 | |
| D | CAMDEN PPTY TR | SH BEN INT | 13313110 | 1443 | 29974 SH | SHARED | | 29974 | |
| D | CAMDEN PPTY TR | SH BEN INT | 13313110 | 871 | 18100 SH | SHARED | 01 | | 18100 |
| D | CAMDEN PPTY TR | SH BEN INT | 13313110 | 145 | 3031 SH | SHARED | 02 | 3031 | |
| D | CAMDEN PPTY TR | SH BEN INT | 13313110 | 125 | 2600 SH | SHARED | 10 | 2600 | |
| D | CAMDEN PPTY TR | SH BEN INT | 13313110 | 19 | 400 SH | SHARED | 14 | | 400 |
| D | CAMECO CORP | COM | 13321L10 | 13 | 350 SH | SHARED | | 350 | |
| D | CAMECO CORP | COM | 13321L10 | 17430 | 437853 SH | SHARED | | 416453 | 21400 |
| D | CAMECO CORP | COM | 13321L10 | 147 | 3714 SH | SHARED | 01 | 1314 | 2400 |
| D | CAMECO CORP | COM | 13321L10 | 101956 | 2561072 SH | SHARED | 04 | 2561072 | |
| D | CAMECO CORP | COM | 13321L10 | 7 | 200 SH | SHARED | 05 | 200 | |
| D | CAMECO CORP | COM | 13321L10 | 29465 | 740160 SH | SHARED | 06 | | 740160 |
| D | CAMECO CORP | COM | 13321L10 | 1172 | 29450 SH | SHARED | 10 | 29450 | |
| D | CAMECO CORP | COM | 13321L10 | 1356 | 34068 SH | SHARED | 14 | 33000 | 1068 |
| D | CAMECO CORP | COM | 13321L10 | 4898 | 123044 SH | SHARED | 16 | 123044 | |
| D | CAMECO CORP | COM | 13321L10 | 99 | 2500 SH | SHARED | 23 | 2500 | |
| D | CAMECO CORP | COM | 13321L10 | 119 | 3000 SH | SHR/OTHR | 23 | | 3000 |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 2126 | 44183 SH | SHARED | | 32908 | 11275 |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 9295 | 193132 SH | SHARED | | 193132 | |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 35370 | 734902 SH | SHARED | 01 | 455558 | 279344 |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 7368 | 153106 SH | SHR/OTHR | 01 | | 153106 |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 610 | 12682 SH | SHARED | 02 | 12682 | |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 6261 | 130090 SH | SHARED | 05 | 130090 | |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 48 | 1000 SH | SHARED | | 1000 | |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 10255 | 213071 SH | SHARED | 10 | 159401 | 53670 |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 336 | 7000 SH | SHARED | 14 | | 7000 |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 4297 | 89297 SH | SHARED | 19 | 89297 | |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 4715 | 97970 SH | SHARED | 20 | 51080 | 46890 |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 1774 | 36870 SH | SHARED | 20 | | 36870 |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 248 | 5156 SH | SHARED | 21 | 4988 | 168 |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 115 | 2400 SH | SHR/OTHR | 21 | | 2400 |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 1793 | 37262 SH | SHARED | 22 | 31194 | 6068 |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 202 | 4200 SH | SHR/OTHR | 22 | | 4200 |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 2985 | 62032 SH | SHARED | 23 | 50432 | 11600 |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 4377 | 90950 SH | SHR/OTHR | 23 | | 90950 |
| D | CAMERON INTERNATIONAL CORP | COM | 13342B10 | 819 | 17036 SH | SHARED | 24 | 17036 | |
| D | CAMPBELL SOUP CO | COM | 13442910 | 9028 | 252699 SH | SHARED | | 252699 | |
| D | CAMPBELL SOUP CO | COM | 13442910 | 6139 | 171823 SH | SHARED | 01 | 161223 | 10600 |
| D | CAMPBELL SOUP CO | COM | 13442910 | 132 | 3700 SH | SHR/OTHR | 01 | | 3700 |
| D | CAMPBELL SOUP CO | COM | 13442910 | 5731 | 160410 SH | SHARED | 02 | 160410 | |
| D | CAMPBELL SOUP CO | COM | 13442910 | 1393 | 39000 SH | SHARED | 04 | 39000 | |
| D | CAMPBELL SOUP CO | COM | 13442910 | 7 | 200 SH | SHARED | 05 | 200 | |
| D | CAMPBELL SOUP CO | COM | 13442910 | 74 | 2080 SH | SHARED | 06 | | 2080 |
| D | CAMPBELL SOUP CO | COM | 13442910 | 3548 | 99327 SH | SHARED | 10 | 99327 | |
| D | CAMPBELL SOUP CO | COM | 13442910 | 296 | 8300 SH | SHARED | 14 | | 8300 |
| D | CAMPBELL SOUP CO | COM | 13442910 | 4756 | 133125 SH | SHARED | 16 | 133125 | |
| D | CAMPBELL SOUP CO | COM | 13442910 | 800 | 22400 SH | SHARED | 20 | 14400 | 8000 |
| D | CAMPBELL SOUP CO | COM | 13442910 | 142 | 4000 SH | SHR/OTHR | 22 | 4000 | |
| D | CAMPBELL SOUP CO | COM | 13442910 | 114 | 3200 SH | SHR/OTHR | 23 | 3200 | |
| D | CDN IMPERIAL BK OF COMMERCE | COM | 13606910 | 280 | 3932 SH | SHARED | | 3932 | |
| D | CDN IMPERIAL BK OF COMMERCE | COM | 13606910 | 20665 | 289306 SH | SHARED | | 288506 | 800 |
| D | CDN IMPERIAL BK OF COMMERCE | COM | 13606910 | 36 | 514 SH | SHARED | 01 | 514 | |
| D | CDN IMPERIAL BK OF COMMERCE | COM | 13606910 | 28572 | 400000 SH | SHARED | 04 | 400000 | |
| D | CDN IMPERIAL BK OF COMMERCE | COM | 13606910 | 7 | 103 SH | SHARED | 05 | 103 | |
| D | CDN IMPERIAL BK OF COMMERCE | COM | 13606910 | 122 | 1720 SH | SHARED | 06 | | 1720 |
| D | CDN IMPERIAL BK OF COMMERCE | COM | 13606910 | 394 | 5520 SH | SHARED | 10 | 5520 | |
| D | CDN IMPERIAL BK OF COMMERCE | COM | 13606910 | 444 | 6227 SH | SHARED | 14 | | 6227 |
| D | CANADIAN NATL RY CO | COM | 13637510 | 19 | 415 SH | SHARED | | 415 | |
| D | CANADIAN NATL RY CO | COM | 13637510 | 66661 | 1420442 SH | SHARED | | 1418442 | 2000 |
| D | CANADIAN NATL RY CO | COM | 13637510 | 421 | 8976 SH | SHARED | 01 | 3776 | 5200 |
| D | CANADIAN NATL RY CO | COM | 13637510 | 56 | 1200 SH | SHR/OTHR | 01 | | 1200 |
| D | CANADIAN NATL RY CO | COM | 13637510 | 14501 | 309011 SH | SHARED | 04 | 309011 | |
| D | CANADIAN NATL RY CO | COM | 13637510 | 13367 | 284829 SH | SHARED | 05 | 284829 | |
| D | CANADIAN NATL RY CO | COM | 13637510 | 3434 | 73189 SH | SHARED | 06 | | 73189 |
| D | CANADIAN NATL RY CO | COM | 13637510 | 39204 | 835391 SH | SHARED | 10 | 835391 | |
| D | CANADIAN NATL RY CO | COM | 13637510 | 55 | 1176 SH | SHARED | 14 | | 1176 |
| D | CANADIAN NATL RY CO | COM | 13637510 | 3503 | 74646 SH | SHARED | 16 | 74646 | |
| D | CANADIAN NATL RY CO | COM | 13637510 | 21 | 460 SH | SHARED | 21 | 460 | |
| D | CANADIAN NATL RY CO | COM | 13637510 | 61 | 1300 SH | SHARED | 24 | 1300 | |
| D | CANADIAN NAT RES LTD | COM | 13638510 | 24903 | 340492 SH | SHARED | | 338692 | 1800 |
| D | CANADIAN NAT RES LTD | COM | 13638510 | 145 | 1992 SH | SHARED | 01 | 1992 | |
| D | CANADIAN NAT RES LTD | COM | 13638510 | 10897 | 149000 SH | SHARED | 04 | 149000 | |
| D | CANADIAN NAT RES LTD | COM | 13638510 | 21 | 300 SH | SHARED | 05 | 300 | |
| D | CANADIAN NAT RES LTD | COM | 13638510 | 219 | 3000 SH | SHARED | 06 | | 3000 |
| D | CANADIAN NAT RES LTD | COM | 13638510 | 5536 | 75700 SH | SHARED | 10 | 75700 | |
| D | CANADIAN NAT RES LTD | COM | 13638510 | 2254 | 30826 SH | SHARED | 14 | | 30826 |
| D | CANADIAN NAT RES LTD | COM | 13638510 | 31 | 435 SH | SHR/OTHR | 23 | | 435 |
| D | CANADIAN PAC RY LTD | COM | 13645T10 | 44 | 692 SH | SHARED | | 692 | |
| D | CANADIAN PAC RY LTD | COM | 13645T10 | 7801 | 120695 SH | SHARED | | 120695 | |
| D | CANADIAN PAC RY LTD | COM | 13645T10 | 130 | 2025 SH | SHARED | 01 | 900 | 1125 |
| D | CANADIAN PAC RY LTD | COM | 13645T10 | 2585 | 40000 SH | SHARED | 04 | 40000 | |
| D | CANADIAN PAC RY LTD | COM | 13645T10 | 10 | 155 SH | SHARED | 05 | 155 | |
| D | CANADIAN PAC RY LTD | COM | 13645T10 | 51 | 800 SH | SHARED | 06 | | 800 |
| D | CANADIAN PAC RY LTD | COM | 13645T10 | 659 | 10200 SH | SHARED | 10 | 10200 | |
| D | CANADIAN PAC RY LTD | COM | 13645T10 | 216 | 3350 SH | SHARED | 20 | | 3350 |
| D | CANADIAN PAC RY LTD | COM | 13645T10 | 12 | 195 SH | SHARED | 21 | | 195 |
| D | CANDELA CORP | COM | 13663510 | 3479 | 123600 SH | SHARED | | 123600 | |
| D | CANARGO ENERGY CORP | COM | 13690710 | 3 | 601 SH | SHARED | | 601 | |
| D | CANETIC RES TR | COM | 13722510 | 12 | 14000 SH | SHARED | | 14000 | |
| D | CANETIC RES TR | COM | 13751310 | 4214 | 313781 SH | SHARED | | 313781 | |
| D | CANETIC RES TR | COM | 13751310 | 6 | 500 SH | SHARED | 14 | | 500 |
| D | CANO PETE INC | COM | 13780110 | 6 | 964 SH | SHARED | | 964 | |
| D | CANO PETE INC | COM | 13780110 | 25 | 3700 SH | SHARED | 02 | 3700 | |
| D | CANO PETE INC | COM | 13780110 | 13 | 2000 SH | SHR/OTHR | 22 | | 2000 |
| D | CANON INC | ADR | 13800630 | 254 | 5551 SH | SHARED | | 5551 | |
| D | CANON INC | ADR | 13800630 | 40 | 892 SH | SHARED | 01 | 442 | 450 |
| D | CANON INC | ADR | 13800630 | 2804 | 61200 SH | SHARED | 10 | 61200 | |
| D | CANON INC | ADR | 13800630 | 61 | 1350 SH | SHARED | 21 | 1350 | |
| D | CANTEL MEDICAL CORP | COM | 13809810 | 0 | 28 SH | SHARED | | 28 | |
| D | CANTERBURY PARK HOLDING CORP | COM | 13811E10 | 0 | 72 SH | SHARED | | 72 | |
| D | CANYON RESOURCES CORP | COM NEW | 13886930 | 0 | 1383 SH | SHARED | | 1383 | |
| D | CAPE FEAR BK CORP | COM | 13938010 | 1 | 92 SH | SHARED | | 92 | |
| D | CAPELLA EDUCATION COMPANY | COM | 13959410 | 117 | 1800 SH | SHARED | 01 | 1800 | |
| D | CAPITAL CITY BK GROUP INC | COM | 13967410 | 16 | 591 SH | SHARED | | 591 | |
| D | CAPITAL CITY BK GROUP INC | COM | 13967410 | 138 | 4900 SH | SHARED | 10 | 4900 | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | CAPITAL ALLIANCE INCM TR REI | COM NEW | 13971R30 | 0 | 9 SH | SHARED | | 9 | | |
| D | CAPITAL BK CORP | COM | 13979310 | 3 | 285 SH | SHARED | | 285 | | |
| D | CAPITAL CORP OF THE WEST | COM NEW | 14006520 | 10 | 531 SH | SHARED | | 531 | | |
| D | CAPITAL CORP OF THE WEST | COM NEW | 14006520 | 50 | 2600 SH | SHARED | 10 | 2600 | | |
| D | CAPLEASE INC | COM | 14028810 | 6 | 780 SH | SHARED | | 780 | | |
| D | CAPLEASE INC | COM | 14028810 | 9957 | 1182550 SH | SHARED | 10 | 1182550 | | |
| D | CAPITAL ONE FINL CORP | COM | 14040H10 | 921 | 19488 SH | SHARED | | 19488 | | |
| D | CAPITAL ONE FINL CORP | COM | 14040H10 | 25603 | 541764 SH | SHARED | | 541764 | | |
| D | CAPITAL ONE FINL CORP | COM | 14040H10 | 2691 | 56960 SH | SHARED | 01 | 56888 | | 72 |
| D | CAPITAL ONE FINL CORP | COM | 14040H10 | 0 | 3 SH | SHR/OTHR | 01 | | | 3 |
| D | CAPITAL ONE FINL CORP | COM | 14040H10 | 397 | 8414 SH | SHARED | 02 | 8414 | | |
| D | CAPITAL ONE FINL CORP | COM | 14040H10 | 9 | 200 SH | SHARED | 05 | 200 | | |
| D | CAPITAL ONE FINL CORP | COM | 14040H10 | 170 | 3610 SH | SHARED | 06 | | | 3610 |
| D | CAPITAL ONE FINL CORP | COM | 14040H10 | 14810 | 313381 SH | SHARED | 10 | 283581 | | 29800 |
| D | CAPITAL ONE FINL CORP | COM | 14040H10 | 326 | 6900 SH | SHARED | 14 | | | 6900 |
| D | CAPITAL ONE FINL CORP | COM | 14040H10 | 1 | 27 SH | SHARED | 20 | | | 27 |
| D | CAPITAL ONE FINL CORP | COM | 14040H10 | 1 | 40 SH | SHR/OTHR | 23 | | | 40 |
| D | CAPITAL PPTYS INC R I | COM | 14043I0 | 0 | 36 SH | SHARED | | 36 | | |
| D | CAPITAL SR LIVING CORP | COM | 14047510 | 634 | 63927 SH | SHARED | | 63927 | | |
| D | CAPITAL SR LIVING CORP | COM | 14047510 | 29 | 3000 SH | SHARED | 10 | 3000 | | |
| D | CAPITAL SOUTHWEST CORP | COM | 14050110 | 2 | 18 SH | SHARED | | 18 | | |
| D | CAPITAL SOUTHWEST CORP | COM | 14050110 | 236 | 2000 SH | SHARED | 10 | 2000 | | |
| D | CAPITAL TRUST INC MD | CL A NEW | 14052H50 | 434 | 14162 SH | SHARED | | 14162 | | |
| D | CAPITAL TRUST INC MD | CL A NEW | 14052H50 | 134 | 4400 SH | SHARED | 02 | 4400 | | |
| D | CAPITAL TRUST INC MD | CL A NEW | 14052H50 | 199 | 6500 SH | SHARED | 10 | 6500 | | |
| D | CAPITOL ACQUISITION CORP DEL | | 14055E10 | 1166 | 129644 SH | SHARED | | 129644 | | |
| D | CAPITOL ACQUISITION CORP DEL | *W EXP 11/08/201 | 14055E11 | 97 | 110245 SH | SHARED | | 110245 | | |
| D | CAPITALSOURCE INC | COM | 14055X10 | 18187 | 1033974 SH | SHARED | | 1033974 | | |
| D | CAPITALSOURCE INC | COM | 14055X10 | 121 | 6900 SH | SHARED | 01 | 6900 | | |
| D | CAPITALSOURCE INC | COM | 14055X10 | 7 | 400 SH | SHARED | 02 | 400 | | |
| D | CAPITALSOURCE INC | COM | 14055X10 | 80 | 4600 SH | SHARED | 10 | 4600 | | |
| D | CAPITALSOURCE INC | COM | 14055X10 | 52 | 3000 SH | SHARED | 23 | 3000 | | |
| D | CAPITALSOURCE INC | COM | 14055X10 | 52 | 3000 SH | SHR/OTHR | 23 | | | 3000 |
| D | CAPITALSOUTH BANCORP | COM | 14056A10 | 0 | 106 SH | SHARED | | 106 | | |
| D | CAPITOL BANCORP LTD | COM | 14056D10 | 0 | 42 SH | SHARED | | 42 | | |
| D | CAPITOL BANCORP LTD | COM | 14056D10 | 1 | 94 SH | SHARED | 02 | 94 | | |
| D | CAPITOL FED FINL | COM | 14057C10 | 296 | 9570 SH | SHARED | 02 | 9570 | | |
| D | CAPITOL FED FINL | COM | 14057C10 | 3 | 100 SH | SHARED | 01 | 100 | | |
| D | CAPITOL FED FINL | COM | 14057C10 | 151 | 4900 SH | SHARED | 02 | 4900 | | |
| D | CAPITOL FED FINL | COM | 14057C10 | 163 | 5290 SH | SHARED | 10 | 5290 | | |
| D | CAPSTONE TURBINE CORP | COM | 14067D10 | 36 | 22373 SH | SHARED | | 22373 | | |
| D | CAPSTEAD MTG CORP | PFD B CV $1.26 | 14067E30 | 53 | 4200 SH | SHARED | 23 | | | 4200 |
| D | CAPSTEAD MTG CORP | COM NO PAR | 14067E50 | 238 | 18115 SH | SHARED | | 18115 | | |
| D | CAPSTEAD MTG CORP | COM NO PAR | 14067E50 | 48 | 3700 SH | SHARED | 02 | 3700 | | |
| D | CAPSTEAD MTG CORP | COM NO PAR | 14067E50 | 11871 | 900000 SH | SHARED | 11 | | | 900000 |
| D | CAPTARIS INC | COM | 14071N10 | 15 | 3531 SH | SHARED | | 3531 | | |
| D | CARACO PHARMACEUTICAL LABS L | COM | 14075T10 | 99 | 5804 SH | SHARED | | 5804 | | |
| D | CARACO PHARMACEUTICAL LABS L | COM | 14075T10 | 24 | 1400 SH | SHARED | 01 | 1400 | | |
| D | CARACO PHARMACEUTICAL LABS L | COM | 14075T10 | 492 | 28700 SH | SHARED | 10 | 28700 | | |
| D | CARBO CERAMICS INC | COM | 14078110 | 556 | 14967 SH | SHARED | | 14967 | | |
| D | CARBO CERAMICS INC | COM | 14078110 | 74 | 2000 SH | SHARED | 01 | 2000 | | |
| D | CARBO CERAMICS INC | COM | 14078110 | 70 | 1899 SH | SHARED | 10 | 1899 | | |
| D | CARBO CERAMICS INC | COM | 14078110 | 6 | 163 SH | SHARED | 21 | | | 163 |
| D | CARAUSTAR INDS INC | COM | 14090910 | 2 | 758 SH | SHARED | | 758 | | |
| D | CARDERO RES CORP | COM | 14140O10 | 0 | 68 SH | SHARED | | 68 | | |
| D | CARDIAC SCIENCE CORP | COM | 14141A10 | 4 | 537 SH | SHARED | | 537 | | |
| D | CARDICA INC | COM | 14141R10 | 132 | 13008 SH | SHARED | | 13008 | | |
| D | CARDINAL FINL CORP | COM | 14149F10 | 22 | 2379 SH | SHARED | | 2379 | | |
| D | CARDINAL FINL CORP | COM | 14149F10 | 27 | 3001 SH | SHARED | 02 | 3001 | | |
| D | CARDINAL HEALTH INC | COM | 14149Y10 | 101932 | 1765063 SH | SHARED | | 1765063 | | |
| D | CARDINAL HEALTH INC | COM | 14149Y10 | 3253 | 56343 SH | SHARED | 01 | 56343 | | |
| D | CARDINAL HEALTH INC | COM | 14149Y10 | 1639 | 28384 SH | SHARED | 02 | 28384 | | |
| D | CARDINAL HEALTH INC | COM | 14149Y10 | 10 | 190 SH | SHARED | 05 | 190 | | |
| D | CARDINAL HEALTH INC | COM | 14149Y10 | 214 | 3720 SH | SHARED | 06 | | | 3720 |
| D | CARDINAL HEALTH INC | COM | 14149Y10 | 13194 | 228468 SH | SHARED | 10 | 228468 | | |
| D | CARDINAL HEALTH INC | COM | 14149Y10 | 410 | 7102 SH | SHARED | 14 | | | 7102 |
| D | CARDINAL HEALTH INC | COM | 14149Y10 | 1271 | 22019 SH | SHARED | 20 | 5650 | | 16369 |
| D | CARDINAL HEALTH INC | COM | 14149Y10 | 287 | 4975 SH | SHR/OTHR | 20 | | | 4975 |
| D | CARDINAL HEALTH INC | COM | 14149Y10 | 40 | 700 SH | SHARED | 23 | 700 | | |
| D | CARDINAL HEALTH INC | COM | 14149Y10 | 85 | 1484 SH | SHR/OTHR | 23 | | | 1484 |
| D | CARDINAL STATE BANK DURHAM N | | 14154610 | 0 | 59 SH | SHARED | | 59 | | |
| D | CARDIOME PHARMA CORP | COM NEW | 14159U20 | 1790 | 200700 SH | SHARED | 04 | 200700 | | |
| D | CARDIOME PHARMA CORP | COM NEW | 14159U20 | 777 | 87200 SH | SHARED | 10 | 87200 | | |
| D | CARDIOME PHARMA CORP | COM NEW | 14159U20 | 53 | 6000 SH | SHARED | 14 | 6000 | | |
| D | CARDIOME PHARMA CORP | COM NEW | 14159U20 | 22 | 2471 SH | SHARED | 21 | 2471 | | |
| D | CARDIODYNAMICS INTL CORP | COM | 14159710 | 0 | 1093 SH | SHARED | | 1093 | | |
| D | CARDIOTECH INTL INC | COM | 14160C10 | 0 | 522 SH | SHARED | | 522 | | |
| D | CARDTRONICS INC | COM | 14161H10 | 3 | 313 SH | SHARED | | 313 | | |
| D | CARDTRONICS INC | COM | 14161H10 | 18384 | 1818439 SH | SHARED | 02 | 1818439 | | |
| D | CARE INVESTMENT TRUST INC | COM | 14165710 | 4 | 391 SH | SHARED | | 391 | | |
| D | CARE INVESTMENT TRUST INC | COM | 14165710 | 10 | 1000 SH | SHARED | 02 | 1000 | | |
| D | CAREER EDUCATION CORP | COM | 14166510 | 4477 | 178114 SH | SHARED | | 178114 | | |
| D | CAREER EDUCATION CORP | COM | 14166510 | 903 | 35920 SH | SHARED | 01 | 5620 | | 30300 |
| D | CAREER EDUCATION CORP | COM | 14166510 | 135 | 5406 SH | SHARED | 02 | 5406 | | |
| D | CAREER EDUCATION CORP | COM | 14166510 | 200 | 7974 SH | SHARED | 10 | 7974 | | |
| D | CAREER EDUCATION CORP | COM | 14166510 | 1236 | 49188 SH | SHARED | 14 | | | 49188 |
| D | CARDIUM THERAPEUTICS INC | COM | 14167310 | 2 | 923 SH | SHARED | | 923 | | |
| D | CARIBOU COFFEE INC | COM | 14204220 | 0 | 198 SH | SHARED | | 198 | | |
| D | CARLISLE COS INC | COM | 14233910 | 2507 | 67726 SH | SHARED | | 67726 | | |
| D | CARLISLE COS INC | COM | 14233910 | 947 | 25600 SH | SHARED | 01 | 7800 | | 17800 |
| D | CARLISLE COS INC | COM | 14233910 | 701 | 18937 SH | SHARED | 02 | 18937 | | |
| D | CARLISLE COS INC | COM | 14233910 | 151 | 4100 SH | SHARED | 10 | 4100 | | |
| D | CARMAX INC | COM | 14313010 | 857 | 43410 SH | SHARED | | 43410 | | |
| D | CARMAX INC | COM | 14313010 | 1585 | 80297 SH | SHARED | 01 | 14097 | | 66200 |
| D | CARMAX INC | COM | 14313010 | 223 | 11329 SH | SHARED | 02 | 11329 | | |
| D | CARMAX INC | COM | 14313010 | 20 | 1040 SH | SHARED | 06 | | | 1040 |
| D | CARMAX INC | COM | 14313010 | 2483 | 125772 SH | SHARED | 10 | 125772 | | |
| D | CARMIKE CINEMAS INC | COM | 14343640 | 10 | 1430 SH | SHARED | | 1430 | | |
| D | CARMIKE CINEMAS INC | COM | 14343640 | 58 | 8100 SH | SHARED | 02 | 8100 | | |
| D | CARMIKE CINEMAS INC | COM | 14343640 | 55 | 7600 SH | SHARED | 10 | 7600 | | |
| D | CARNIVAL PLC | ADR | 14365C10 | 361 | 8228 SH | SHARED | | 8228 | | |
| D | CARNIVAL CORP | DBCV 2.000% 4/1 | 14365AN | 584 | 500000 PRN | SHARED | | 500000 | | |
| D | CARNIVAL CORP | NOTE 10/2 | 14365AS | 757 | 1000000 PRN | SHARED | | 1000000 | | |
| D | CARNIVAL CORP | NOTE 10/2 | 14365AS | 13867 | 18319008 PRN | SHARED | 02 | 8319008 | | |
| D | CARNIVAL CORP | PAIRED CTF | 14365830 | 10 | 242 SH | SHARED | | 242 | | |
| D | CARNIVAL CORP | PAIRED CTF | 14365830 | 144734 | 3253199 SH | SHARED | | 3251699 | | 1500 |
| D | CARNIVAL CORP | PAIRED CTF | 14365830 | 2342 | 52659 SH | SHARED | 01 | 52659 | | |
| D | CARNIVAL CORP | PAIRED CTF | 14365830 | 24182 | 543544 SH | SHARED | 02 | 543544 | | |
| D | CARNIVAL CORP | PAIRED CTF | 14365830 | 200 | 4500 SH | SHARED | 04 | 4500 | | |
| D | CARNIVAL CORP | PAIRED CTF | 14365830 | 10 | 240 SH | SHARED | 05 | 240 | | |
| D | CARNIVAL CORP | PAIRED CTF | 14365830 | 181 | 4080 SH | SHARED | 06 | | | 4080 |
| D | CARNIVAL CORP | PAIRED CTF | 14365830 | 18790 | 422343 SH | SHARED | 10 | 422343 | | |
| D | CARNIVAL CORP | PAIRED CTF | 14365830 | 24 | 549 SH | SHARED | 14 | | | 549 |
| D | CARNIVAL CORP | PAIRED CTF | 14365830 | 33 | 750 SH | SHARED | 20 | | | 750 |

| | Issuer | Class | CUSIP | Value | Shares/Prn | Type | Disposition | Code | Col1 | Col2 |
|---|---|---|---|---|---|---|---|---|---|---|
| D | CARNIVAL CORP | PAIRED CTF | 14365830 | 38 | 860 | SH | SHR/OTHR | 20 | | 860 |
| D | CARNIVAL CORP | PAIRED CTF | 14365830 | 5 | 115 | SH | SHARED | 21 | | 115 |
| D | CARNIVAL CORP | PAIRED CTF | 14365830 | 37 | 840 | SH | SHR/OTHR | 23 | 840 | |
| D | CARNIVAL CORP | PAIRED CTF | 14365830 | 320 | 7200 | SH | SHR/OTHR | 23 | | 7200 |
| D | CARRIAGE SVCS INC | COM | 14390510 | 4 | 540 | SH | SHARED | | | 540 |
| D | CAROLINA NATL CORP | COM | 14406010 | 1 | 66 | SH | SHARED | | | 66 |
| D | CAROLINA TR BK LINCOLNTON NC | COM | 14420010 | 0 | 44 | SH | SHARED | | | 44 |
| D | CARPENTER TECHNOLOGY CORP | COM | 14428510 | 1935 | 25750 | SH | SHARED | | | 25750 |
| D | CARPENTER TECHNOLOGY CORP | COM | 14428510 | 1473 | 19600 | SH | SHARED | 01 | 4400 | 15200 |
| D | CARPENTER TECHNOLOGY CORP | COM | 14428510 | 551 | 7340 | SH | SHARED | 02 | 7340 | |
| D | CARPENTER TECHNOLOGY CORP | COM | 14428510 | 202 | 2700 | SH | SHARED | 10 | | 2700 |
| D | CARRIER ACCESS CORP | COM | 14446010 | 135 | 56341 | SH | SHARED | | | 56341 |
| D | CARRIZO OIL & CO INC | COM | 14457710 | 119 | 2178 | SH | SHARED | | | 2178 |
| D | CARRIZO OIL & CO INC | COM | 14457710 | 69 | 1275 | SH | SHARED | 01 | 600 | 675 |
| D | CARRIZO OIL & CO INC | COM | 14457710 | 27 | 500 | SH | SHR/OTHR | 01 | | 500 |
| D | CARRIZO OIL & CO INC | COM | 14457710 | 25909 | 473240 | SH | SHARED | 10 | | 473240 |
| D | CARROLLTON BANCORP | COM | 14528210 | 0 | 67 | SH | SHARED | | | 67 |
| D | CARROLS RESTAURANT GROUP INC | COM | 14574210 | 3501 | 365488 | SH | SHARED | | | 365488 |
| D | CARTER INC | COM | 14622910 | 44079 | 2277993 | SH | SHARED | | | 2277993 |
| D | CARTER INC | COM | 14622910 | 6207 | 320805 | SH | SHARED | 10 | | 320805 |
| D | CARTER INC | COM | 14622910 | 146 | 7595 | SH | SHARED | 21 | | 7595 |
| D | CARVER BANCORP INC | COM | 14687510 | 0 | 66 | SH | SHARED | | | 66 |
| D | CASCADE BANCORP | COM | 14715410 | 73 | 5300 | SH | SHARED | | | 5300 |
| D | CASCADE CORP | COM | 14719510 | 281 | 6059 | SH | SHARED | | | 6059 |
| D | CASCADE CORP | COM | 14719510 | 4 | 94 | SH | SHARED | 02 | | 94 |
| D | CASCADE CORP | COM | 14719510 | 436 | 9400 | SH | SHARED | 10 | | 9400 |
| D | CASCADE FINL CORP | COM | 14727210 | 3 | 286 | SH | SHARED | | | 286 |
| D | CASCADE MICROTECH INC | COM | 14732210 | 2 | 220 | SH | SHARED | | | 220 |
| D | CASELLA WASTE SYS INC | CL A | 14744810 | 108 | 8309 | SH | SHARED | | | 8309 |
| D | CASELLA WASTE SYS INC | CL A | 14744810 | 24 | 1900 | SH | SHARED | 01 | | 1900 |
| D | CASELLA WASTE SYS INC | CL A | 14744810 | 534 | 41000 | SH | SHARED | 10 | | 41000 |
| D | CASEYS GEN STORES INC | COM | 14752810 | 450 | 15213 | SH | SHARED | | | 15213 |
| D | CASEYS GEN STORES INC | COM | 14752810 | 387 | 13100 | SH | SHARED | 10 | | 13100 |
| D | CASEYS GEN STORES INC | COM | 14752810 | 2220 | 75000 | SH | SHARED | 10 | | 75000 |
| D | CASH AMER INTL INC | COM | 14754010 | 12 | 381 | SH | SHARED | | | 381 |
| D | CASH AMER INTL INC | COM | 14754010 | 575 | 17822 | SH | SHARED | 02 | | 17822 |
| D | CASH AMER INTL INC | COM | 14754010 | 1227 | 38000 | SH | SHARED | 04 | | 38000 |
| D | CASH AMER INTL INC | COM | 14754010 | 494 | 15300 | SH | SHARED | 10 | | 15300 |
| D | CASH SYSTEMS INC | COM | 14756810 | 2 | 481 | SH | SHARED | | | 481 |
| D | CASH TECHNOLOGIES INC | COM | 14791010 | 0 | 566 | SH | SHARED | | | 566 |
| D | CASS INFORMATION SYS INC | COM | 14808P10 | 2 | 75 | SH | SHARED | | | 75 |
| D | CASTLE A M & CO | COM | 14841110 | 8 | 328 | SH | SHARED | | | 328 |
| D | CASTLE A M & CO | COM | 14841110 | 867 | 31900 | SH | SHARED | 05 | | 31900 |
| D | CASTLE BRANDS INC | COM | 14843510 | 0 | 324 | SH | SHARED | | | 324 |
| D | CASTLE CONV FD INC | COM | 14844310 | 603 | 26500 | SH | SHARED | | | 26500 |
| D | CASUAL MALE RETAIL GRP INC | COM | 14871110 | 5 | 1078 | SH | SHARED | | | 1078 |
| D | CATALYST PHARM PARTNERS INC | COM | 14888010 | 0 | 213 | SH | SHARED | | | 213 |
| D | CATALYST SEMICONDUCTOR INC | COM | 14888110 | 1 | 426 | SH | SHARED | | | 426 |
| D | CATAPULT COMMUNICATIONS CORP | COM | 14901610 | 1 | 259 | SH | SHARED | | | 259 |
| D | CATAPULT COMMUNICATIONS CORP | COM | 14901610 | 6 | 925 | SH | SHARED | 02 | | 925 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 14 | 200 | SH | SHARED | | | 200 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 118679 | 1635607 | SH | SHARED | | 1616557 | 19050 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 7699 | 106115 | SH | SHARED | 01 | 101256 | 4859 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 277 | 3825 | SH | SHR/OTHR | 01 | | 3825 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 8707 | 120007 | SH | SHARED | 02 | 120007 | |
| D | CATERPILLAR INC DEL | COM | 14912310 | 71 | 980 | SH | SHARED | 04 | | 980 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 2176 | 30000 | SH | SHARED | 04 | 30000 | |
| D | CATERPILLAR INC DEL | COM | 14912310 | 19 | 270 | SH | SHARED | 05 | | 270 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 481 | 6640 | SH | SHARED | 06 | | 6640 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 101664 | 1401110 | SH | SHARED | 10 | 1380210 | 20900 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 170 | 2356 | SH | SHARED | 14 | | 2356 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 159 | 2200 | SH | SHARED | 15 | | 2200 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 1295 | 17852 | SH | SHARED | 20 | 9932 | 7920 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 3250 | 44800 | SH | SHR/OTHR | 20 | | 44800 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 15 | 215 | SH | SHARED | 21 | | 215 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 9 | 130 | SH | SHR/OTHR | 21 | | 130 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 92 | 1280 | SH | SHARED | 23 | | 480 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 718 | 9900 | SH | SHR/OTHR | 23 | | 9900 |
| D | CATERPILLAR INC DEL | COM | 14912310 | 360 | 4962 | SH | SHARED | 24 | | 4962 |
| D | CATHAY GENERAL BANCORP | COM | 14915010 | 477 | 18041 | SH | SHARED | | | 18041 |
| D | CATHAY GENERAL BANCORP | COM | 14915010 | 296 | 11175 | SH | SHARED | 01 | 1675 | 9500 |
| D | CATHAY GENERAL BANCORP | COM | 14915010 | 255 | 9659 | SH | SHARED | 02 | | 9659 |
| D | CATHAY GENERAL BANCORP | COM | 14915010 | 2953 | 111486 | SH | SHARED | 10 | | 111486 |
| D | CATO CORP NEW | CL A | 14920510 | 306 | 19542 | SH | SHARED | | | 19542 |
| D | CATO CORP NEW | CL A | 14920510 | 26 | 1700 | SH | SHARED | 01 | | 1700 |
| D | CATO CORP NEW | CL A | 14920510 | 1592 | 101700 | SH | SHARED | 10 | | 101700 |
| D | CAVALIER HOMES INC | COM | 14950710 | 0 | 477 | SH | SHARED | | | 477 |
| D | CAVCO INDS INC DEL | COM | 14956810 | 11 | 338 | SH | SHARED | | | 338 |
| D | CAVCO INDS INC DEL | COM | 14956810 | 8 | 238 | SH | SHARED | 01 | | 238 |
| D | CAVIUM NETWORKS INC | COM | 14965A10 | 56 | 2465 | SH | SHARED | | | 2465 |
| D | CAVIUM NETWORKS INC | COM | 14965A10 | 4304 | 187000 | SH | SHARED | 04 | | 187000 |
| D | CAVIUM NETWORKS INC | COM | 14965A10 | 654 | 28450 | SH | SHARED | 10 | | 28450 |
| D | CBEYOND INC | COM | 14984710 | 403 | 10350 | SH | SHARED | | | 10350 |
| D | CBEYOND INC | COM | 14984710 | 194 | 5000 | SH | SHARED | 04 | | 5000 |
| D | CBEYOND INC | COM | 14984710 | 19923 | 510986 | SH | SHARED | 10 | | 510986 |
| D | CEDAR FAIR L P | DEPOSITORY UNIT | 15018510 | 29 | 1408 | SH | SHARED | | | 1408 |
| D | CEDAR SHOPPING CTRS INC | COM NEW | 15060220 | 422 | 41289 | SH | SHARED | | | 41289 |
| D | CEDAR SHOPPING CTRS INC | COM NEW | 15060220 | 134 | 13100 | SH | SHARED | 11 | | 13100 |
| D | CEDAR SHOPPING CTRS INC | COM NEW | 15060220 | 8518 | 832700 | SH | SHARED | 11 | | 832700 |
| D | CDC-SCI CORP | COM | 15083740 | 1 | 2896 | SH | SHARED | | | 2896 |
| D | CELADON GROUP INC | COM | 15083810 | 6 | 751 | SH | SHARED | | | 751 |
| D | CELADON GROUP INC | COM | 15083810 | 100 | 11000 | SH | SHARED | 10 | | 11000 |
| D | CELANESE CORP DEL | COM SER A | 15087010 | 7210 | 170376 | SH | SHARED | 01 | 111376 | 59000 |
| D | CELANESE CORP DEL | COM SER A | 15087010 | 1002 | 23700 | SH | SHARED | 01 | 23700 | |
| D | CELANESE CORP DEL | COM SER A | 15087010 | 2606 | 61583 | SH | SHARED | 02 | 61583 | |
| D | CELANESE CORP DEL | COM SER A | 15087010 | 33 | 800 | SH | SHARED | 06 | | 800 |
| D | CELANESE CORP DEL | COM SER A | 15087010 | 35365 | 835675 | SH | SHARED | 10 | 824275 | 11400 |
| D | CELANESE CORP DEL | COM SER A | 15087010 | 105 | 2500 | SH | SHARED | 14 | | 2500 |
| D | CELANESE CORP DEL | COM SER A | 15087010 | 12 | 302 | SH | SHARED | 20 | 302 | |
| D | CELANESE CORP DEL | PFD 4.25% CONV | 15087020 | 17061 | 312825 | SH | SHARED | | | 312825 |
| D | CELANESE CORP DEL | PFD 4.25% CONV | 15087020 | 7502 | 137558 | SH | SHARED | 02 | | 137558 |
| D | CELL GENESYS INC | NOTE 3.125%11/0 | 15092IAB | 660 | 915000 | PRN | SHARED | | | 915000 |
| D | CELL GENESYS INC | NOTE 3.125%11/0 | 15092IAB | 722 | 1000000 | PRN | SHARED | 02 | | 1000000 |
| D | CELL GENESYS INC | COM | 15092110 | 0 | 131 | SH | SHARED | | | 131 |
| D | CELL THERAPEUTICS INC | COM NEW | 15093440 | 2 | 1443 | SH | SHARED | | | 1443 |
| D | CELEBRATE EXPRESS INC | COM | 15100A10 | 1 | 127 | SH | SHARED | | | 127 |
| D | CELESTICA INC | SUB VTG SHS | 15101Q10 | 15 | 2640 | SH | SHARED | | | 2640 |
| D | CELESTICA INC | SUB VTG SHS | 15101Q10 | 1195 | 206126 | SH | SHARED | | | 206126 |
| D | CELESTICA INC | SUB VTG SHS | 15101Q10 | 2222 | 383200 | SH | SHARED | 02 | | 383200 |
| D | CELESTICA INC | SUB VTG SHS | 15101Q10 | 1 | 300 | SH | SHARED | 05 | | 300 |
| D | CELGENE CORP | NOTE 1.750% 6/0 | 15102OAC | 15771 | 4134000 | PRN | SHARED | | | 4134000 |
| D | CELGENE CORP | NOTE 1.750% 6/0 | 15102OAC | 3799 | 996000 | PRN | SHARED | 02 | | 996000 |
| D | CELGENE CORP | COM | 15102010 | 2302 | 49832 | SH | SHARED | | 35174 | 14658 |
| D | CELGENE CORP | COM | 15102010 | 39342 | 851382 | SH | SHARED | 02 | | 851382 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | CELGENE CORP | COM | 15102010 | 26646 | 576632 SH | SHARED | 01 | 335720 | 240912 |
| D | CELGENE CORP | COM | 15102010 | 10136 | 219350 SH | SHR/OTHR | 01 | 219350 | |
| D | CELGENE CORP | COM | 15102010 | 1466 | 31740 SH | SHARED | 02 | 31740 | |
| D | CELGENE CORP | COM | 15102010 | 707 | 15320 SH | SHARED | 04 | | 15320 |
| D | CELGENE CORP | COM | 15102010 | 22629 | 489700 SH | SHARED | 04 | 489700 | |
| D | CELGENE CORP | COM | 15102010 | 8 | 190 SH | SHARED | 05 | 190 | |
| D | CELGENE CORP | COM | 15102010 | 183 | 3970 SH | SHARED | 06 | | 3970 |
| D | CELGENE CORP | COM | 15102010 | 54012 | 1168856 SH | SHARED | 10 | 1134231 | 34625 |
| D | CELGENE CORP | COM | 15102010 | 83 | 1800 SH | SHARED | 14 | 1800 | |
| D | CELGENE CORP | COM | 15102010 | 5483 | 118657 SH | SHARED | 19 | | 118657 |
| D | CELGENE CORP | COM | 15102010 | 2941 | 63645 SH | SHARED | 20 | 28900 | 34745 |
| D | CELGENE CORP | COM | 15102010 | 1264 | 27365 SH | SHR/OTHR | 20 | | 27365 |
| D | CELGENE CORP | COM | 15102010 | 73 | 1600 SH | SHARED | 21 | 1600 | |
| D | CELGENE CORP | COM | 15102010 | 50 | 1100 SH | SHR/OTHR | 21 | | 1100 |
| D | CELGENE CORP | COM | 15102010 | 1506 | 32605 SH | SHARED | 22 | 27520 | 5085 |
| D | CELGENE CORP | COM | 15102010 | 140 | 3050 SH | SHR/OTHR | 22 | | 3050 |
| D | CELGENE CORP | COM | 15102010 | 3940 | 85273 SH | SHARED | 23 | 80443 | 4830 |
| D | CELGENE CORP | COM | 15102010 | 4639 | 100396 SH | SHARED | 23 | | 100396 |
| D | CELGENE CORP | COM | 15102010 | 50 | 1100 SH | SHARED | 24 | 1100 | |
| D | CELSION CORPORATION | COM NEW | 15117N30 | 0 | 259 SH | SHARED | | 259 | |
| D | CEMEX SAB DE CV | SPON ADR NEW | 15129088 | 25359 | 981013 SH | SHARED | | 713546 | 267467 |
| D | CEMEX SAB DE CV | SPON ADR NEW | 15129088 | 4382 | 169518 SH | SHARED | 01 | 169518 | |
| D | CEMEX SAB DE CV | SPON ADR NEW | 15129088 | 10 | 400 SH | SHR/OTHR | 01 | | 400 |
| D | CEMEX SAB DE CV | SPON ADR NEW | 15129088 | 2197 | 85000 SH | SHARED | 04 | 85000 | |
| D | CEMEX SAB DE CV | SPON ADR NEW | 15129088 | 47707 | 1845555 SH | SHARED | 10 | 1689855 | 155700 |
| D | CEMEX SAB DE CV | SPON ADR NEW | 15129088 | 191 | 7400 SH | SHARED | 15 | 7400 | |
| D | CEMEX SAB DE CV | SPON ADR NEW | 15129088 | 7 | 288 SH | SHARED | 21 | | 288 |
| D | CEMEX SAB DE CV | SPON ADR NEW | 15129088 | 126 | 4904 SH | SHARED | 23 | 4904 | |
| D | CEMEX SAB DE CV | SPON ADR NEW | 15129088 | 1476 | 57100 SH | SHARED | 24 | 57100 | |
| D | CENTENNIAL COMMUNCTNS CORP N | CL A NEW | 15133V20 | 1797 | 193451 SH | SHARED | | 193451 | |
| D | CENTENNIAL COMMUNCTNS CORP N | CL A NEW | 15133V20 | 32 | 3500 SH | SHARED | 01 | 3500 | |
| D | CENTENNIAL COMMUNCTNS CORP N | CL A NEW | 15133V20 | 141 | 15200 SH | SHARED | 02 | 15200 | |
| D | CENTENNIAL COMMUNCTNS CORP N | CL A NEW | 15133V20 | 702 | 75600 SH | SHARED | 10 | 75600 | |
| D | CENTENNIAL BK HLDGS INC DEL | COM | 15134530 | 3 | 594 SH | SHARED | | 594 | |
| D | CENTENNIAL BK HLDGS INC DEL | COM | 15134530 | 42 | 7400 SH | SHARED | 10 | 7400 | |
| D | CENTENE CORP DEL | COM | 15135B10 | 82165 | 2994372 SH | SHARED | | 2994372 | |
| D | CENTENE CORP DEL | COM | 15135B10 | 3582 | 130545 SH | SHARED | 01 | 130045 | 500 |
| D | CENTENE CORP DEL | COM | 15135B10 | 2689 | 98000 SH | SHR/OTHR | 01 | | 98000 |
| D | CENTENE CORP DEL | COM | 15135B10 | 19372 | 706000 SH | SHARED | 10 | 706000 | |
| D | CENTER BANCORP INC | COM | 15140B10 | 3 | 335 SH | SHARED | | 335 | |
| D | CENTER FINL CORP CALIF | COM | 15146E10 | 101 | 8245 SH | SHARED | | 8245 | |
| D | CENTER FINL CORP CALIF | COM | 15146E10 | 23 | 1900 SH | SHARED | 01 | 1900 | |
| D | CENTER FINL CORP CALIF | COM | 15146E10 | 206 | 16800 SH | SHARED | 01 | 16800 | |
| D | CENTERLINE HOLDINGS CO | SH BEN INT | 15188T10 | 1912 | 250982 SH | SHARED | | 250982 | |
| D | CENTERLINE HOLDINGS CO | SH BEN INT | 15188T10 | 94 | 12400 SH | SHARED | 10 | 12400 | |
| D | CENTERPOINT ENERGY INC | COM | 15189T10 | 20343 | 1187592 SH | SHARED | | 1187592 | |
| D | CENTERPOINT ENERGY INC | COM | 15189T10 | 598 | 34944 SH | SHARED | 01 | 34944 | |
| D | CENTERPOINT ENERGY INC | COM | 15189T10 | 81 | 4779 SH | SHARED | 02 | 4779 | |
| D | CENTERPOINT ENERGY INC | COM | 15189T10 | 5 | 300 SH | SHARED | 05 | 300 | |
| D | CENTERPOINT ENERGY INC | COM | 15189T10 | 71 | 4200 SH | SHARED | 06 | | 4200 |
| D | CENTERPOINT ENERGY INC | COM | 15189T10 | 3296 | 192449 SH | SHARED | 10 | 192449 | |
| D | CENTERPOINT ENERGY INC | COM | 15189T10 | 198 | 11609 SH | SHARED | 14 | | 11609 |
| D | CENTERPOINT ENERGY INC | COM | 15189T10 | 246 | 14400 SH | SHR/OTHR | 23 | | 14400 |
| D | CENTERPLATE INC | UNIT 99/99/9999 | 15200E20 | 1206 | 133800 SH | SHARED | 10 | 133800 | |
| D | CENTERSTATE BKS FLA INC | COM | 15201P10 | 3 | 300 SH | SHARED | | 300 | |
| D | CENTEX CORP | COM | 15231210 | 14167 | 560879 SH | SHARED | | 560879 | |
| D | CENTEX CORP | COM | 15231210 | 428 | 16969 SH | SHARED | 01 | 16969 | |
| D | CENTEX CORP | COM | 15231210 | 4410 | 174609 SH | SHARED | 02 | 174609 | |
| D | CENTEX CORP | COM | 15231210 | 757 | 30000 SH | SHARED | 04 | 30000 | |
| D | CENTEX CORP | COM | 15231210 | 2 | 100 SH | SHARED | 05 | 100 | |
| D | CENTEX CORP | COM | 15231210 | 16371 | 648127 SH | SHARED | 06 | | 648127 |
| D | CENTEX CORP | COM | 15231210 | 1261 | 49939 SH | SHARED | 10 | 49939 | |
| D | CENTEX CORP | COM | 15231210 | 1911 | 75673 SH | SHARED | 16 | 75673 | |
| D | CENTEX CORP | COM | 15231210 | 75 | 3000 SH | SHARED | 23 | | 3000 |
| D | CENTILLIUM COMMUNICATIONS IN | COM | 15231910 | 2 | 2012 SH | SHARED | | 2012 | |
| D | CENTRAL BANCORP INC MASS | COM | 15241610 | 0 | 28 SH | SHARED | | 28 | |
| D | CENTRAL EUROPEAN DIST CORP | COM | 15343510 | 339 | 5852 SH | SHARED | | 5852 | |
| D | CENTRAL EUROPEAN DIST CORP | COM | 15343510 | 348 | 6000 SH | SHARED | 01 | 6000 | |
| D | CENTRAL EUROPEAN DIST CORP | COM | 15343510 | 249 | 4300 SH | SHARED | 10 | 4300 | |
| D | CENTRAL FED CORP | COM | 15346Q10 | 0 | 119 SH | SHARED | | 119 | |
| D | CENTRAL FD CDA LTD | CL A | 15350110 | 108 | 10000 SH | SHARED | 01 | | 10000 |
| D | CENTRAL GARDEN & PET CO | COM | 15352710 | 48 | 8340 SH | SHARED | 02 | 8340 | |
| D | CENTRAL GARDEN & PET CO | CL A NON-VTG | 15352720 | 5 | 1052 SH | SHARED | | 1052 | |
| D | CENTRAL GARDEN & PET CO | CL A NON-VTG | 15352720 | 162 | 30300 SH | SHARED | 10 | 30300 | |
| D | CENTRAL JERSEY BANCORP NJ | COM | 15377010 | 1 | 226 SH | SHARED | | 226 | |
| D | CENTRAL PAC FINL CORP | COM | 15476010 | 95 | 5200 SH | SHARED | | 5200 | |
| D | CENTRAL PAC FINL CORP | COM | 15476010 | 47 | 2600 SH | SHARED | 01 | 2600 | |
| D | CENTRAL PAC FINL CORP | COM | 15476010 | 666 | 36130 SH | SHARED | 02 | 36130 | |
| D | CENTRAL PAC FINL CORP | COM | 15476010 | 190 | 10333 SH | SHARED | 10 | 10333 | |
| D | CENTRAL SECS CORP | COM | 15512310 | 5 | 221 SH | SHARED | | 221 | |
| D | CENTRAL SUN MINING INC | COM | 15543210 | 128 | 108865 SH | SHARED | | 108865 | |
| D | CENTRAL VALLEY CMNTY BANCORP | COM | 15568510 | 1 | 126 SH | SHARED | | 126 | |
| D | CENTRAL VT PUB SVC CORP | COM | 15577110 | 0 | 21 SH | SHARED | | 21 | |
| D | CENTRAL VT PUB SVC CORP | COM | 15577110 | 46 | 1500 SH | SHARED | 23 | 1500 | |
| D | CENTRAL VA BANKSHARES INC | COM | 15579210 | 1 | 63 SH | SHARED | | 63 | |
| D | CENTRUE FINL CORP NEW | COM | 15643B10 | 2 | 132 SH | SHARED | | 132 | |
| D | CENTURY ALUM CO | COM | 15643110 | 82 | 1538 SH | SHARED | | 1538 | |
| D | CENTURY ALUM CO | COM | 15643110 | 14387 | 266727 SH | SHARED | 10 | 266727 | |
| D | CENTURY ALUM CO | COM | 15643110 | 64 | 1188 SH | SHARED | 21 | 1188 | |
| D | CENTURY BANCORP INC | CL A NON VTG | 15643210 | 1 | 82 SH | SHARED | | 82 | |
| D | CENTURY CASINOS INC | COM | 15649210 | 334 | 51958 SH | SHARED | | 51958 | |
| D | CEPHEID | COM | 15670R10 | 701 | 26611 SH | SHARED | | 26611 | |
| D | CEPHEID | COM | 15670R10 | 2766 | 105000 SH | SHARED | 04 | 105000 | |
| D | CEPHEID | COM | 15670R10 | 2967 | 112600 SH | SHARED | 10 | 112600 | |
| D | CEPHEID | COM | 15670R10 | 79 | 3000 SH | SHARED | 14 | 3000 | |
| D | CENVEO INC | COM | 15670S10 | 272 | 15600 SH | SHARED | | 15600 | |
| D | CENVEO INC | COM | 15670S10 | 137 | 7845 SH | SHARED | 10 | 7845 | |
| D | CENVEO INC | COM | 15670S10 | 668 | 38237 SH | SHARED | 10 | 38237 | |
| D | CENTURYTEL INC | COM | 15670010 | 6815 | 164396 SH | SHARED | | 164396 | |
| D | CENTURYTEL INC | COM | 15670010 | 1133 | 27351 SH | SHARED | 01 | 22536 | 4815 |
| D | CENTURYTEL INC | COM | 15670010 | 107 | 2600 SH | SHR/OTHR | 01 | 2600 | |
| D | CENTURYTEL INC | COM | 15670010 | 2056 | 49602 SH | SHARED | 02 | 49602 | |
| D | CENTURYTEL INC | COM | 15670010 | 19974 | 481774 SH | SHARED | 10 | 471774 | 10000 |
| D | CENTURYTEL INC | COM | 15670010 | 299 | 7232 SH | SHARED | 20 | 1752 | 5480 |
| D | CENTURYTEL INC | COM | 15670010 | 106 | 2569 SH | SHR/OTHR | 20 | | 2569 |
| D | CENTURYTEL INC | COM | 15670010 | 10 | 260 SH | SHR/OTHR | 21 | | 260 |
| D | CENTURYTEL INC | COM | 15670010 | 29 | 700 SH | SHARED | 22 | 700 | |
| D | CENTURYTEL INC | COM | 15670010 | 103 | 2500 SH | SHARED | 23 | | 2500 |
| D | CEPHALON INC | NOTE 6/1 | 15670A8L | 3347 | 2511000 PRN | SHARED | | 2511000 | |
| D | CEPHALON INC | NOTE 2.000% 6/0 | 15670A8P | 6078 | 3684000 SH | SHARED | | 3684000 | |
| D | CEPHALON INC | COM | 15670810 | 107895 | 1503567 SH | SHARED | | 1503567 | |
| D | CEPHALON INC | COM | 15670810 | 1769 | 24660 SH | SHARED | 01 | 4450 | 20210 |
| D | CEPHALON INC | COM | 15670810 | 32 | 450 SH | SHR/OTHR | 01 | | 450 |
| D | CEPHALON INC | COM | 15670810 | 10451 | 145639 SH | SHARED | 02 | 145639 | |

| D | Issuer | Class | Detail | CUSIP | Value | Amount | Auth | Code | Sole | Shared/Other |
|---|--------|-------|--------|-------|-------|--------|------|------|------|--------------|
| D | CEPHALON INC | COM | | 15670810 | 12950 | 180466 SH | SHARED | 04 | 180466 | |
| D | CEPHALON INC | COM | | 15670810 | 35 | 500 SH | SHARED | 06 | | 500 |
| D | CEPHALON INC | COM | | 15670810 | 343 | 4786 SH | SHARED | 10 | 4786 | |
| D | CEPHALON INC | COM | | 15670810 | 7 | 100 SH | SHARED | 20 | 100 | |
| D | CEPHALON INC | COM | | 15670810 | 5 | 70 SH | SHR/OTHR | 21 | | 70 |
| D | CERADYNE INC | COM | | 15671010 | 813 | 17337 SH | SHARED | | 17337 | |
| D | CERADYNE INC | COM | | 15671010 | 722 | 15400 SH | SHARED | 01 | 15400 | |
| D | CERADYNE INC | COM | | 15671010 | 101 | 2173 SH | SHARED | 02 | 2173 | |
| D | CERADYNE INC | COM | | 15671010 | 903 | 19253 SH | SHARED | 10 | 19253 | |
| D | CERNER CORP | COM | | 15678210 | 2643 | 46866 SH | SHARED | | 46866 | |
| D | CERNER CORP | COM | | 15678210 | 1242 | 22030 SH | SHARED | 01 | 1770 | 20260 |
| D | CERNER CORP | COM | | 15678210 | 250 | 4443 SH | SHARED | 02 | 4443 | |
| D | CERNER CORP | COM | | 15678210 | 4892 | 86750 SH | SHARED | 04 | 86750 | |
| D | CERNER CORP | COM | | 15678210 | 200 | 3548 SH | SHARED | 10 | 3548 | |
| D | CERUS CORP | COM | | 15708510 | 5 | 815 SH | SHARED | | 815 | |
| D | CERUS CORP | COM | | 15708510 | 58 | 8975 SH | SHARED | 02 | 8975 | |
| D | CEVA INC | COM | | 15721010 | 5 | 466 SH | SHARED | | 466 | |
| D | CHAD THERAPEUTICS INC | COM | | 15722810 | 0 | 241 SH | SHARED | | 241 | |
| D | CHAMPION ENTERPRISES INC | COM | | 15849610 | 449 | 47666 SH | SHARED | | 47666 | |
| D | CHAMPION ENTERPRISES INC | COM | | 15849610 | 84 | 8990 SH | SHARED | 01 | 8990 | |
| D | CHAMPION ENTERPRISES INC | COM | | 15849610 | 28 | 3049 SH | SHARED | 02 | 3049 | |
| D | CHAMPION INDS INC W VA | COM | | 15852010 | 0 | 148 SH | SHARED | | 148 | |
| D | CHANNELL COML CORP | COM | | 15918610 | 0 | 164 SH | SHARED | | 164 | |
| D | CHARLES & COLVARD LTD | COM | | 15976510 | 0 | 399 SH | SHARED | | 399 | |
| D | CHARLES RIVER ASSOCIATES | DBCV | 2.875% 6/1 | 159852AB | 1347 | 1000000 PRN | SHARED | | 1000000 | |
| D | CHARLES RIV LABS INTL INC | COM | | 15986410 | 775 | 11787 SH | SHARED | | 11787 | |
| D | CHARLES RIV LABS INTL INC | COM | | 15986410 | 1335 | 20300 SH | SHARED | 01 | | 20300 |
| D | CHARLES RIV LABS INTL INC | COM | | 15986410 | 839 | 12757 SH | SHARED | 02 | 12757 | |
| D | CHARLES RIV LABS INTL INC | COM | | 15986410 | 26 | 400 SH | SHARED | 06 | | 400 |
| D | CHARLES RIV LABS INTL INC | COM | | 15986410 | 25541 | 388175 SH | SHARED | 10 | 388175 | |
| D | CHARMING SHOPPES INC | COM | | 16113310 | 1592 | 294281 SH | SHARED | | 294281 | |
| D | CHARMING SHOPPES INC | COM | | 16113310 | 25 | 4800 SH | SHARED | 01 | 4800 | |
| D | CHARMING SHOPPES INC | COM | | 16113310 | 258 | 47828 SH | SHARED | 02 | 47828 | |
| D | CHARMING SHOPPES INC | COM | | 16113310 | 437 | 80800 SH | SHARED | 10 | 80800 | |
| D | CHART INDS INC | COM PAR $0.01 | | 16115Q30 | 250 | 8091 SH | SHARED | | 8091 | |
| D | CHART INDS INC | COM PAR $0.01 | | 16115Q30 | 1081 | 35000 SH | SHARED | 04 | 35000 | |
| D | CHART INDS INC | COM PAR $0.01 | | 16115Q30 | 321 | 10400 SH | SHARED | 10 | 10400 | |
| D | CHARTER COMMUNICATIONS INC D | CL A | | 16117M10 | 7 | 6707 SH | SHARED | | 6707 | |
| D | CHARTER COMMUNICATIONS INC D | CL A | | 16117M10 | 2 | 2000 SH | SHARED | 01 | | 2000 |
| D | CHARTER COMMUNICATIONS INC D | CL A | | 16117M10 | 51 | 44400 SH | SHARED | 10 | 44400 | |
| D | CHASE CORP | COM | | 16118610 | 3 | 153 SH | SHARED | | 153 | |
| D | CHATTEM INC | NOTE | 2.000%11/1 | 162456A2 | 5700 | 4000000 PRN | SHARED | | 4000000 | |
| D | CHATTEM INC | NOTE | 1.625% 5/0 | 162456AR | 2955 | 2500000 PRN | SHARED | | 2500000 | |
| D | CHATTEM INC | COM | | 16245610 | 25 | 342 SH | SHARED | | 342 | |
| D | CHATTEM INC | COM | | 16245610 | 1146 | 15175 SH | SHARED | 01 | 15000 | 175 |
| D | CHATTEM INC | COM | | 16245610 | 1473 | 19500 SH | SHR/OTHR | 01 | | 19500 |
| D | CHATTEM INC | COM | | 16245610 | 332 | 4400 SH | SHARED | 10 | 4400 | |
| D | CHATTEM INC | COM | | 16245610 | 662 | 8768 SH | SHARED | 21 | 868 | 7900 |
| D | CHECKPOINT SYS INC | COM | | 16282510 | 975 | 37541 SH | SHARED | | 37541 | |
| D | CHECKPOINT SYS INC | COM | | 16282510 | 40 | 1550 SH | SHARED | 01 | 1550 | |
| D | CHECKPOINT SYS INC | COM | | 16282510 | 1480 | 57000 SH | SHARED | 10 | 57000 | |
| D | CHEESECAKE FACTORY INC | COM | | 16307210 | 67574 | 2850037 SH | SHARED | | 2850037 | |
| D | CHEESECAKE FACTORY INC | COM | | 16307210 | 554 | 23393 SH | SHARED | 01 | | 23393 |
| D | CHEESECAKE FACTORY INC | COM | | 16307210 | 80 | 3377 SH | SHARED | 02 | 3377 | |
| D | CHEESECAKE FACTORY INC | COM | | 16307210 | 101 | 4300 SH | SHARED | 10 | 4300 | |
| D | CHELSEA THERAPEUTICS INTL LT | COM | | 16342810 | 5 | 681 SH | SHARED | | 681 | |
| D | CHEMED CORP NEW | COM | | 16359R10 | 347 | 6220 SH | SHARED | | 6220 | |
| D | CHEMED CORP NEW | COM | | 16359R10 | 423 | 7575 SH | SHARED | 01 | 7575 | |
| D | CHEMED CORP NEW | COM | | 16359R10 | 1251 | 22400 SH | SHARED | 10 | 22400 | |
| D | CHEMED CORP NEW | COM | | 16359R10 | 83 | 1500 SH | SHARED | 23 | | 1500 |
| D | CHEMICAL FINL CORP | COM | | 16373110 | 304 | 12780 SH | SHARED | | 12780 | |
| D | CHEMICAL FINL CORP | COM | | 16373110 | 380 | 16000 SH | SHARED | 02 | 16000 | |
| D | CHEMICAL FINL CORP | COM | | 16373110 | 114 | 4800 SH | SHARED | 10 | 4800 | |
| D | CHEMTURA CORP | COM | | 16389310 | 8198 | 1051144 SH | SHARED | | 1051144 | |
| D | CHEMTURA CORP | COM | | 16389310 | 468 | 60101 SH | SHARED | 01 | 1 | 60100 |
| D | CHEMTURA CORP | COM | | 16389310 | 2381 | 305326 SH | SHARED | 02 | 305326 | |
| D | CHEMTURA CORP | COM | | 16389310 | 266 | 34155 SH | SHARED | 10 | 34155 | |
| D | CHENIERE ENERGY PARTNERS LP | COM UNIT | | 16411Q10 | 5787 | 360352 SH | SHARED | | 360352 | |
| D | CHENIERE ENERGY PARTNERS LP | COM UNIT | | 16411Q10 | 46 | 2900 SH | SHARED | 02 | 2900 | |
| D | CHENIERE ENERGY INC | NOTE | 2.250% 8/0 | 16411RAE | 7914 | 7538000 PRN | SHARED | | 7538000 | |
| D | CHENIERE ENERGY INC | COM | | 16411R20 | 18953 | 580673 SH | SHARED | | 580673 | |
| D | CHENIERE ENERGY INC | COM NEW | | 16411R20 | 617 | 18930 SH | SHARED | 01 | 18930 | |
| D | CHENIERE ENERGY INC | COM NEW | | 16411R20 | 27492 | 842308 SH | SHARED | 02 | 842308 | |
| D | CHENIERE ENERGY INC | COM NEW | | 16411R20 | 110 | 3400 SH | SHARED | 10 | 3400 | |
| D | CHEROKEE INC DEL NEW | COM | | 16444H10 | 39 | 1238 SH | SHARED | | 1238 | |
| D | CHEROKEE INC DEL NEW | COM | | 16444H10 | 87 | 2700 SH | SHARED | 10 | 2700 | |
| D | CHEROKEE INTL CORP | COM | | 16445010 | 0 | 246 SH | SHARED | | 246 | |
| D | CHESAPEAKE CORP | COM | | 16515910 | 2 | 413 SH | SHARED | | 413 | |
| D | CHESAPEAKE ENERGY CORP | NOTE | 2.750%11/1 | 165167BW | 11845 | 11500000 PRN | SHARED | | 1500000 | |
| D | CHESAPEAKE ENERGY CORP | NOTE | 2.750%11/1 | 165167BW | 1852 | 1799000 PRN | SHARED | 02 | 1799000 | |
| D | CHESAPEAKE ENERGY CORP | NOTE | 2.500%11/1 | 165167BZ | 2690 | 2500000 PRN | SHARED | | 2500000 | |
| D | CHESAPEAKE ENERGY CORP | NOTE | 2.500% 5/1 | 165167BZ | 3449 | 3206000 PRN | SHARED | 02 | 3206000 | |
| D | CHESAPEAKE ENERGY CORP | NOTE | 2.500% 5/1 | 165167CA | 0 | 5800000 PRN | SHARED | | 5800000 | |
| D | CHESAPEAKE ENERGY CORP | COM | | 16516710 | 77686 | 1981788 SH | SHARED | | 1882588 | 99200 |
| D | CHESAPEAKE ENERGY CORP | COM | | 16516710 | 2810 | 71700 SH | SHARED | 01 | 71700 | |
| D | CHESAPEAKE ENERGY CORP | COM | | 16516710 | 3188 | 81332 SH | SHARED | 02 | 81332 | |
| D | CHESAPEAKE ENERGY CORP | COM | | 16516710 | 9 | 230 SH | SHARED | 05 | 230 | |
| D | CHESAPEAKE ENERGY CORP | COM | | 16516710 | 171 | 4380 SH | SHARED | 06 | | 4380 |
| D | CHESAPEAKE ENERGY CORP | COM | | 16516710 | 41898 | 1068851 SH | SHARED | 10 | 1007851 | 61000 |
| D | CHESAPEAKE ENERGY CORP | COM | | 16516710 | 419 | 10700 SH | SHARED | 14 | | 10700 |
| D | CHESAPEAKE ENERGY CORP | COM | | 16516710 | 27 | 700 SH | SHARED | 23 | 700 | |
| D | CHESAPEAKE ENERGY CORP | COM | | 16516710 | 27 | 700 SH | SHR/OTHR | 23 | | 700 |
| D | CHESAPEAKE UTILS CORP | PFD CONV | | 16516784 | 2357 | 21000 SH | SHARED | | 21000 | |
| D | CHESAPEAKE UTILS CORP | COM | | 16530310 | 37 | 1189 SH | SHARED | | 1189 | |
| D | CHEVRON CORP NEW | COM | | 16676410 | 1466 | 15717 SH | SHARED | | 4735 | 10982 |
| D | CHEVRON CORP NEW | COM | | 16676410 | 839883 | 8999070 SH | SHARED | | 8972370 | 26700 |
| D | CHEVRON CORP NEW | COM | | 16676410 | 44605 | 477933 SH | SHARED | 01 | 390146 | 87787 |
| D | CHEVRON CORP NEW | COM | | 16676410 | 6795 | 72809 SH | SHR/OTHR | 01 | 72809 | |
| D | CHEVRON CORP NEW | COM | | 16676410 | 110820 | 1187401 SH | SHARED | 02 | 1187401 | |
| D | CHEVRON CORP NEW | COM | | 16676410 | 149 | 1597 SH | SHARED | 04 | | 1597 |
| D | CHEVRON CORP NEW | COM | | 16676410 | 4450 | 47690 SH | SHARED | 04 | 47690 | |
| D | CHEVRON CORP NEW | COM | | 16676410 | 81 | 877 SH | SHARED | 05 | 877 | |
| D | CHEVRON CORP NEW | COM | | 16676410 | 23591 | 252774 SH | SHARED | 06 | | 252774 |
| D | CHEVRON CORP NEW | COM | | 16676410 | 585003 | 6268118 SH | SHARED | 10 | 6102588 | 165530 |
| D | CHEVRON CORP NEW | COM | | 16676410 | 149 | 1600 SH | SHR/OTHR | 10 | | 1600 |
| D | CHEVRON CORP NEW | COM | | 16676410 | 1803 | 19319 SH | SHARED | 14 | 19319 | |
| D | CHEVRON CORP NEW | COM | | 16676410 | 145 | 1562 SH | SHARED | 19 | 1562 | |
| D | CHEVRON CORP NEW | COM | | 16676410 | 9986 | 107003 SH | SHARED | 20 | 43135 | 63868 |
| D | CHEVRON CORP NEW | COM | | 16676410 | 11890 | 127405 SH | SHR/OTHR | 20 | | 127405 |
| D | CHEVRON CORP NEW | COM | | 16676410 | 169 | 1813 SH | SHARED | 21 | 1448 | 365 |
| D | CHEVRON CORP NEW | COM | | 16676410 | 53 | 570 SH | SHR/OTHR | 21 | | 570 |
| D | CHEVRON CORP NEW | COM | | 16676410 | 931 | 9985 SH | SHARED | 22 | 5020 | 4965 |
| D | CHEVRON CORP NEW | COM | | 16676410 | 329 | 3530 SH | SHR/OTHR | 22 | | 3530 |
| D | CHEVRON CORP NEW | COM | | 16676410 | 10431 | 111765 SH | SHARED | 23 | 106675 | 5090 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | CHEVRON CORP NEW | COM | 16676410 | 15559 | 166713 SH | SHR/OTHR | 23 | | 166713 |
| D | CHEVRON CORP NEW | COM | 16676410 | 1717 | 18400 SH | SHARED | 24 | 18400 | |
| D | CHEVIOT FINL CORP | COM | 16677410 | 7 | 834 SH | SHARED | | 834 | |
| D | CHICAGO BRIDGE & IRON CO N V | N Y REGISTRY SH | 16725010 | 28 | 472 SH | SHARED | | | 472 |
| D | CHICAGO BRIDGE & IRON CO N V | N Y REGISTRY SH | 16725010 | 3783 | 62596 SH | SHARED | | 62596 | |
| D | CHICAGO BRIDGE & IRON CO N V | N Y REGISTRY SH | 16725010 | 12754 | 211022 SH | SHARED | 04 | 211022 | |
| D | CHICAGO BRIDGE & IRON CO N V | N Y REGISTRY SH | 16725010 | 18349 | 303604 SH | SHARED | 05 | 303604 | |
| D | CHICAGO BRIDGE & IRON CO N V | N Y REGISTRY SH | 16725010 | 616 | 10197 SH | SHARED | 06 | | 10197 |
| D | CHICAGO BRIDGE & IRON CO N V | N Y REGISTRY SH | 16725010 | 56609 | 936615 SH | SHARED | 10 | 936615 | |
| D | CHICAGO BRIDGE & IRON CO N V | N Y REGISTRY SH | 16725010 | 9 | 150 SH | SHARED | 21 | | 150 |
| D | CHICAGO BRIDGE & IRON CO N V | N Y REGISTRY SH | 16725010 | 302 | 5000 SH | SHARED | 23 | | 5000 |
| D | CHICAGO RIVET & MACH CO | COM | 16808810 | 0 | 19 SH | SHARED | | 19 | |
| D | CHICOPEE BANCORP INC | COM | 16856510 | 1 | 151 SH | SHARED | | 151 | |
| D | CHICOS FAS INC | COM | 16861510 | 531 | 58869 SH | SHARED | | 58869 | |
| D | CHICOS FAS INC | COM | 16861510 | 550 | 60950 SH | SHARED | 01 | 1050 | 59900 |
| D | CHICOS FAS INC | COM | 16861510 | 113 | 12615 SH | SHARED | 02 | 12615 | |
| D | CHICOS FAS INC | COM | 16861510 | 142 | 15736 SH | SHARED | 10 | 15736 | |
| D | CHILDRENS PL RETAIL STORES I | COM | 16890510 | 802 | 30945 SH | SHARED | | 30945 | |
| D | CHINA AUTOMOTIVE SYS INC | COM | 16936R10 | 34 | 4439 SH | SHARED | | 4439 | |
| D | CHINA BAK BATTERY INC | COM | 16936V10 | 23 | 3800 SH | SHARED | 02 | 3800 | |
| D | CHINA EASTN AIRLS LTD | SPON ADR CL H | 16937R10 | 49 | 505 SH | SHARED | | 505 | |
| D | CHINA ARCHITECTURAL ENGR INC | COM | 16937S10 | 162 | 18768 SH | SHARED | | 18768 | |
| D | CHINA FD INC | COM | 16937310 | 2980 | 78400 SH | SHARED | | 78400 | |
| D | CHINA FD INC | COM | 16937310 | 101 | 2668 SH | SHR/OTHR | 23 | | 2668 |
| D | CHINA FIN ONLINE CO LTD | SPONSORED ADR | 16937910 | 10 | 482 SH | SHARED | | 482 | |
| D | CHINA DIGITAL TV HLDG CO LTD | SPONSORED ADR | 16938G10 | 1396 | 51773 SH | SHARED | | 51773 | |
| D | CHINA DIGITAL TV HLDG CO LTD | SPONSORED ADR | 16938G10 | 2 | 100 SH | SHARED | 01 | | 100 |
| D | CHINA GRENTECH CORP LTD | ADR | 16938P10 | 76 | 8608 SH | SHARED | | 8608 | |
| D | CHINA DIRECT INC | COM | 16938410 | 3 | 345 SH | SHARED | | 345 | |
| D | CHINA LIFE INS CO LTD | SPON ADR REP H | 16939P10 | 38 | 500 SH | SHARED | | 500 | |
| D | CHINA LIFE INS CO LTD | SPON ADR REP H | 16939P10 | 2763 | 36125 SH | SHARED | | 34925 | 1200 |
| D | CHINA LIFE INS CO LTD | SPON ADR REP H | 16939P10 | 1530 | 20000 SH | SHARED | 02 | 20000 | |
| D | CHINA LIFE INS CO LTD | SPON ADR REP H | 16939P10 | 14190 | 185500 SH | SHARED | 10 | 185500 | |
| D | CHINA HEALTHCARE ACQ CORP | COM | 16939Q10 | 3376 | 613895 SH | SHARED | | 613895 | |
| D | CHINA HEALTHCARE ACQ CORP | *W EXP 04/18/201 | 16939Q11 | 45 | 129577 SH | SHARED | | 129577 | |
| D | CHINA HEALTHCARE ACQ CORP | UNIT 07/11/2011 | 16939Q20 | 65 | 10900 SH | SHARED | | 10900 | |
| D | CHINA NETCOM GROUP CORP HK L | SPONSORED ADR | 16940Q10 | 4483 | 75477 SH | SHARED | | 75477 | |
| D | CHINA SOUTHN AIRLS LTD | SPON ADR CL H | 16940910 | 3 | 56 SH | SHARED | | 56 | |
| D | CHINA PRECISION STEEL INC | COM | 16941J10 | 56 | 9302 SH | SHARED | | 9302 | |
| D | CHINA MOBILE LIMITED | SPONSORED ADR | 16941M10 | 7752 | 89244 SH | SHARED | | 84244 | 5000 |
| D | CHINA MOBILE LIMITED | SPONSORED ADR | 16941M10 | 5659 | 65147 SH | SHARED | 01 | 65147 | |
| D | CHINA MOBILE LIMITED | SPONSORED ADR | 16941M10 | 1737 | 20000 SH | SHARED | 02 | 20000 | |
| D | CHINA MOBILE LIMITED | SPONSORED ADR | 16941M10 | 33766 | 388700 SH | SHARED | 10 | 388700 | |
| D | CHINA MOBILE LIMITED | SPONSORED ADR | 16941M10 | 343 | 3950 SH | SHARED | 21 | 1130 | 2820 |
| D | CHINA MOBILE LIMITED | SPONSORED ADR | 16941M10 | 4960 | 57100 SH | SHARED | 24 | 57100 | |
| D | CHINA PETE & CHEM CORP | SPON ADR H SHS | 16941R10 | 12531 | 84561 SH | SHARED | | 84561 | |
| D | CHINA SHENGHUO PHARM HLDGS I | COM | 16942J10 | 19 | 2645 SH | SHARED | | 2645 | |
| D | CHINA SEC & SURVE TECH INC | COM | 16942J10 | 62 | 2881 SH | SHARED | | 2881 | |
| D | CHINA HLDGS ACQUISITION CORP | UNIT 99/99/9999 | 16942N20 | 537 | 55123 SH | SHARED | | 55123 | |
| D | CHINA SUNERGY CO LTD | SPON ADR | 16942410 | 1511 | 91500 SH | SHARED | | 91500 | |
| D | CHINA TECHFAITH WIRLS COMM T | SPONSORED ADR | 16942410 | 127 | 22065 SH | SHARED | | 22065 | |
| D | CHINA TELECOM CORP LTD | SPON ADR H SHS | 16942610 | 142 | 1828 SH | SHARED | | 1828 | |
| D | CHINA TELECOM CORP LTD | SPON ADR H SHS | 16942610 | 2029 | 26000 SH | SHARED | 02 | 26000 | |
| D | CHINA UNICOM LTD | SPONSORED ADR | 16945R10 | 4099 | 183030 SH | SHARED | | 183030 | |
| D | CHINDEX INTERNATIONAL INC | COM | 16946710 | 5 | 167 SH | SHARED | | 167 | |
| D | CHINA MED TECHNOLOGIES INC | NOTE 3.500%11/1 | 16948JAB | 11377 | 7500000 PRN | SHARED | | 7500000 | |
| D | CHINA MED TECHNOLOGIES INC | SPONSORED ADR | 16948J10 | 108 | 2438 SH | SHARED | | 2438 | |
| D | CHINA MED TECHNOLOGIES INC | SPONSORED ADR | 16948J10 | 1700 | 38300 SH | SHARED | 01 | 38300 | |
| D | CHINA MED TECHNOLOGIES INC | SPONSORED ADR | 16948J10 | 4393 | 98973 SH | SHARED | 02 | 98973 | |
| D | CHINA MED TECHNOLOGIES INC | SPONSORED ADR | 16948J10 | 7364 | 165900 SH | SHARED | 10 | 165900 | |
| D | CHINA MED TECHNOLOGIES INC | SPONSORED ADR | 16948J10 | 1065 | 24000 SH | SHARED | 24 | 24000 | |
| D | CHIPOTLE MEXICAN GRILL INC | CL A | 16965610 | 581 | 3955 SH | SHARED | | 3955 | |
| D | CHIPOTLE MEXICAN GRILL INC | CL A | 16965610 | 1426 | 9700 SH | SHARED | 01 | | 9700 |
| D | CHIPOTLE MEXICAN GRILL INC | CL A | 16965610 | 229 | 1558 SH | SHARED | 02 | 1558 | |
| D | CHIPOTLE MEXICAN GRILL INC | CL A | 16965610 | 4412 | 30000 SH | SHARED | 05 | 30000 | |
| D | CHIPOTLE MEXICAN GRILL INC | CL A | 16965610 | 21403 | 145530 SH | SHARED | 10 | 145530 | |
| D | CHIPOTLE MEXICAN GRILL INC | CL B | 16965620 | 23384 | 190040 SH | SHARED | | 190040 | |
| D | CHIPOTLE MEXICAN GRILL INC | CL B | 16965620 | 49 | 400 SH | SHARED | 01 | 400 | |
| D | CHIPOTLE MEXICAN GRILL INC | CL B | 16965620 | 1058 | 8600 SH | SHARED | 10 | 8600 | |
| D | CHOICE HOTELS INTL INC | COM | 16990510 | 512 | 15450 SH | SHARED | | 15450 | |
| D | CHOICE HOTELS INTL INC | COM | 16990510 | 160 | 4821 SH | SHARED | 01 | 4821 | |
| D | CHOICE HOTELS INTL INC | COM | 16990510 | 139 | 4200 SH | SHARED | 10 | 4200 | |
| D | CHIQUITA BRANDS INTL INC | *W EXP 03/19/200 | 17003211 | 86 | 25991 SH | SHARED | | 25991 | |
| D | CHIQUITA BRANDS INTL INC | *W EXP 03/19/200 | 17003211 | 33 | 10000 SH | SHARED | 02 | 10000 | |
| D | CHIQUITA BRANDS INTL INC | COM | 17003280 | 21785 | 1184658 SH | SHARED | | 834658 | 350000 |
| D | CHIQUITA BRANDS INTL INC | COM | 17003280 | 709 | 38600 SH | SHARED | 01 | 37300 | 1300 |
| D | CHIQUITA BRANDS INTL INC | COM | 17003280 | 41448 | 2253850 SH | SHARED | 04 | 2253850 | |
| D | CHIQUITA BRANDS INTL INC | COM | 17003280 | 312 | 17000 SH | SHARED | 06 | | 17000 |
| D | CHIQUITA BRANDS INTL INC | COM | 17003280 | 29114 | 1583161 SH | SHARED | 10 | 1374461 | 208700 |
| D | CHIQUITA BRANDS INTL INC | COM | 17003280 | 196 | 10700 SH | SHARED | 15 | | 10700 |
| D | CHIQUITA BRANDS INTL INC | COM | 17003280 | 421 | 22900 SH | SHARED | 24 | 22900 | |
| D | CHITTENDEN CORP | COM | 17022810 | 1462 | 41051 SH | SHARED | | 41051 | |
| D | CHITTENDEN CORP | COM | 17022810 | 455 | 12800 SH | SHARED | 10 | 12800 | |
| D | CHOICEPOINT INC | COM | 17038810 | 982 | 26987 SH | SHARED | | 26987 | |
| D | CHOICEPOINT INC | COM | 17038810 | 864 | 23744 SH | SHARED | 01 | 1011 | 22733 |
| D | CHOICEPOINT INC | COM | 17038810 | 759 | 20854 SH | SHARED | 02 | 20854 | |
| D | CHOICEPOINT INC | COM | 17038810 | 16 | 450 SH | SHARED | 06 | | 450 |
| D | CHOICEPOINT INC | COM | 17038810 | 626 | 17200 SH | SHARED | 10 | 17200 | |
| D | CHOICEPOINT INC | COM | 17038810 | 250 | 6879 SH | SHARED | 23 | 6879 | |
| D | CHOICEPOINT INC | COM | 17038810 | 107 | 2939 SH | SHR/OTHR | 23 | | 2939 |
| D | CHORDIANT SOFTWARE INC | COM NEW | 17040430 | 635 | 74333 SH | SHARED | | 74333 | |
| D | CHORDIANT SOFTWARE INC | COM NEW | 17040430 | 13 | 1600 SH | SHARED | 01 | 1600 | |
| D | CHORDIANT SOFTWARE INC | COM NEW | 17040430 | 277 | 32500 SH | SHARED | 10 | 32500 | |
| D | CHRISTOPHER & BANKS CORP | COM | 17104610 | 12 | 1083 SH | SHARED | | 1083 | |
| D | CHRISTOPHER & BANKS CORP | COM | 17104610 | 96 | 8440 SH | SHARED | 01 | 8440 | |
| D | CHRISTOPHER & BANKS CORP | COM | 17104610 | 35 | 3100 SH | SHARED | 10 | 3100 | |
| D | CHROMCRAFT REVINGTON INC | COM | 17111710 | 0 | 99 SH | SHARED | | 99 | |
| D | CHUBB CORP | COM | 17123210 | 446714 | 818514 SH | SHARED | | 818514 | |
| D | CHUBB CORP | COM | 17123210 | 3747 | 68663 SH | SHARED | 01 | 45863 | 22800 |
| D | CHUBB CORP | COM | 17123210 | 285 | 5230 SH | SHR/OTHR | 01 | | 5230 |
| D | CHUBB CORP | COM | 17123210 | 1415 | 25931 SH | SHARED | 02 | 25931 | |
| D | CHUBB CORP | COM | 17123210 | 10 | 200 SH | SHARED | 05 | 200 | |
| D | CHUBB CORP | COM | 17123210 | 207 | 3810 SH | SHARED | 06 | | 3810 |
| D | CHUBB CORP | COM | 17123210 | 1756776 | 3218688 SH | SHARED | 10 | 3217288 | 1400 |
| D | CHUBB CORP | COM | 17123210 | 349 | 6400 SH | SHARED | 14 | 6400 | |
| D | CHUBB CORP | COM | 17123210 | 637 | 11680 SH | SHARED | 20 | 840 | 10840 |
| D | CHUBB CORP | COM | 17123210 | 39 | 718 SH | SHR/OTHR | 20 | 718 | |
| D | CHUBB CORP | COM | 17123210 | 87 | 1600 SH | SHR/OTHR | 22 | | 1600 |
| D | CHUBB CORP | COM | 17123210 | 852 | 15620 SH | SHARED | 23 | 15620 | |
| D | CHUBB CORP | COM | 17123210 | 491 | 9000 SH | SHR/OTHR | 23 | | 9000 |
| D | CHUNGHWA TELECOM CO LTD | SPONSORED ADR | 17133Q20 | 389 | 21247 SH | SHARED | | 21247 | |
| D | CHUNGHWA TELECOM CO LTD | SPONSORED ADR | 17133Q20 | 141 | 7740 SH | SHARED | 01 | 7740 | |
| D | CHUNGHWA TELECOM CO LTD | SPONSORED ADR | 17133Q20 | 71917 | 3921367 SH | SHARED | 04 | 3921367 | |
| D | CHUNGHWA TELECOM CO LTD | SPONSORED ADR | 17133Q20 | 10 | 578 SH | SHARED | 21 | | 578 |

| | Name | Class | Rate | CUSIP | Value | Amount | Type | Disc | Mgr | Sole | None |
|---|---|---|---|---|---|---|---|---|---|---|---|
| D | CHURCH & DWIGHT INC | DBCV | 5.250% 8/1 | 171340AC | 1758 | 1000000 | PRN | SHARED | | 1000000 | |
| D | CHURCH & DWIGHT INC | COM | | 17134010 | 4888 | 90419 | SH | SHARED | | 90419 | |
| D | CHURCH & DWIGHT INC | COM | | 17134010 | 1181 | 21850 | SH | SHARED | 01 | | 21850 |
| D | CHURCH & DWIGHT INC | COM | | 17134010 | 513 | 9500 | SH | SHR/OTHR | 01 | | 9500 |
| D | CHURCH & DWIGHT INC | COM | | 17134010 | 2462 | 45545 | SH | SHARED | 02 | 45545 | |
| D | CHURCH & DWIGHT INC | COM | | 17134010 | 161 | 2994 | SH | SHARED | 10 | 2994 | |
| D | CHURCH & DWIGHT INC | COM | | 17134010 | 10 | 185 | SH | SHARED | 21 | | 185 |
| D | CHURCHILL DOWNS INC | COM | | 17148410 | 0 | 17 | SH | SHARED | | 17 | |
| D | CHURCHILL DOWNS INC | COM | | 17148410 | 29 | 550 | SH | SHARED | 01 | 550 | |
| D | CHURCHILL DOWNS INC | COM | | 17148410 | 275 | 5100 | SH | SHARED | 10 | 5100 | |
| D | CHURCHILL VENTURES LTD | COM | | 17157P10 | 6306 | 828713 | SH | SHARED | | 828713 | |
| D | CHURCHILL VENTURES LTD | *W EXP 03/01/201 | | 17157P11 | 140 | 200000 | SH | SHARED | | 200000 | |
| D | CHYRON CORP | COM PAR $.01 | | 17160530 | 1 | 333 | SH | SHARED | | 333 | |
| D | CIBER INC | SDCV | 2.875%12/1 | 17163BAB | 8590 | 8967000 | PRN | SHARED | 02 | 8967000 | |
| D | CIBER INC | COM | | 17163B10 | 121 | 19885 | SH | SHARED | | 19885 | |
| D | CIBER INC | COM | | 17163B10 | 41 | 6725 | SH | SHARED | 02 | 6725 | |
| D | CIENA CORP | NOTE | 3.750% 2/0 | 171779AA | 9950 | 10000000 | PRN | SHARED | | 0000000 | |
| D | CIENA CORP | NOTE | 3.750% 2/0 | 171779AA | 39685 | 39885008 | PRN | SHARED | 02 | 9885008 | |
| D | CIENA CORP | NOTE | 0.250% 5/0 | 171779AB | 4597 | 4412000 | PRN | SHARED | 02 | 4412000 | |
| D | CIENA CORP | NOTE | 0.875% 6/1 | 171779AE | 7897 | 7500000 | PRN | SHARED | | 7500000 | |
| D | CIENA CORP | COM NEW | | 17177930 | 12246 | 359032 | SH | SHARED | | 359032 | |
| D | CIENA CORP | COM NEW | | 17177930 | 450 | 13217 | SH | SHARED | 01 | 13217 | |
| D | CIENA CORP | COM NEW | | 17177930 | 1520 | 44585 | SH | SHARED | 02 | 44585 | |
| D | CIENA CORP | COM NEW | | 17177930 | 1713 | 50228 | SH | SHARED | 04 | 50228 | |
| D | CIENA CORP | COM NEW | | 17177930 | 9898 | 290198 | SH | SHARED | 10 | 279398 | 10800 |
| D | CIMAREX ENERGY CO | COM | | 17179810 | 389 | 9168 | SH | SHARED | | 9168 | |
| D | CIMAREX ENERGY CO | COM | | 17179810 | 1423 | 33475 | SH | SHARED | 01 | 8975 | 24500 |
| D | CIMAREX ENERGY CO | COM | | 17179810 | 976 | 22957 | SH | SHARED | 02 | 22957 | |
| D | CIMAREX ENERGY CO | COM | | 17179810 | 21 | 500 | SH | SHARED | 06 | 500 | |
| D | CIMAREX ENERGY CO | COM | | 17179810 | 10590 | 249018 | SH | SHARED | 10 | 249018 | |
| D | CIMAREX ENERGY CO | COM | | 17179810 | 5 | 140 | SH | SHARED | 21 | | 140 |
| D | CINCINNATI BELL INC NEW | COM | | 17187106 | 501 | 105678 | SH | SHARED | | 105678 | |
| D | CINCINNATI BELL INC NEW | COM | | 17187110 | 419 | 88300 | SH | SHARED | 01 | 13900 | 74400 |
| D | CINCINNATI BELL INC NEW | COM | | 17187110 | 151 | 31954 | SH | SHARED | 01 | 31954 | |
| D | CINCINNATI BELL INC NEW | COM | | 17187110 | 2786 | 586700 | SH | SHARED | 10 | 586700 | |
| D | CINCINNATI FINL CORP | COM | | 17206210 | 12291 | 310866 | SH | SHARED | | 310866 | |
| D | CINCINNATI FINL CORP | COM | | 17206210 | 641 | 16220 | SH | SHARED | 01 | 16220 | |
| D | CINCINNATI FINL CORP | COM | | 17206210 | 276 | 6993 | SH | SHARED | 02 | 6993 | |
| D | CINCINNATI FINL CORP | COM | | 17206210 | 81 | 2062 | SH | SHARED | 06 | | 2062 |
| D | CINCINNATI FINL CORP | COM | | 17206210 | 9668 | 244513 | SH | SHARED | 10 | 244513 | |
| D | CINCINNATI FINL CORP | COM | | 17206210 | 284 | 7200 | SH | SHARED | 14 | | 7200 |
| D | CINCINNATI FINL CORP | COM | | 17206210 | 519 | 13137 | SH | SHARED | 20 | | 13137 |
| D | CINCINNATI FINL CORP | COM | | 17206210 | 165 | 4190 | SH | SHR/OTHR | 20 | | 4190 |
| D | CINEMARK HOLDINGS INC | COM | | 17243V10 | 6 | 388 | SH | SHARED | | 388 | |
| D | CINEMARK HOLDINGS INC | COM | | 17243V10 | 153 | 9000 | SH | SHARED | 10 | 9000 | |
| D | CIPRICO INC | COM | | 17252910 | 0 | 121 | SH | SHARED | | 121 | |
| D | CIRCOR INTL INC | COM | | 17273K10 | 2 | 62 | SH | SHARED | | 62 | |
| D | CIRCOR INTL INC | COM | | 17273K10 | 227 | 4900 | SH | SHARED | 10 | 4900 | |
| D | CIRCUIT CITY STORE INC | COM | | 17273710 | 17971 | 4278908 | SH | SHARED | | 4278908 | |
| D | CIRCUIT CITY STORE INC | COM | | 17273710 | 25 | 6094 | SH | SHARED | 01 | 6094 | |
| D | CIRCUIT CITY STORE INC | COM | | 17273710 | 911 | 217007 | SH | SHARED | 02 | 217007 | |
| D | CIRCUIT CITY STORE INC | COM | | 17273710 | 310 | 73888 | SH | SHARED | 10 | 73888 | |
| D | CISCO SYS INC | COM | | 17275R10 | 11186 | 413230 | SH | SHARED | | 303058 | 110172 |
| D | CISCO SYS INC | COM | | 17275R10 | 57 | 2132 | SH | SHR/OTHR | | | 2132 |
| D | CISCO SYS INC | COM | | 17275R10 | 353882 | 13072849 | SH | SHARED | | 2211014 | 861835 |
| D | CISCO SYS INC | COM | | 17275R10 | 56278 | 2078981 | SH | SHARED | 01 | 1465067 | 613914 |
| D | CISCO SYS INC | COM | | 17275R10 | 16187 | 597986 | SH | SHR/OTHR | 01 | | 597986 |
| D | CISCO SYS INC | COM | | 17275R10 | 24730 | 913589 | SH | SHARED | 02 | 913589 | |
| D | CISCO SYS INC | COM | | 17275R10 | 1469 | 54281 | SH | SHARED | 04 | | 54281 |
| D | CISCO SYS INC | COM | | 17275R10 | 413851 | 15288178 | SH | SHARED | 04 | 5288178 | |
| D | CISCO SYS INC | COM | | 17275R10 | 2057 | 76009 | SH | SHARED | 05 | 76009 | |
| D | CISCO SYS INC | COM | | 17275R10 | 49531 | 1829764 | SH | SHARED | 06 | | 1829764 |
| D | CISCO SYS INC | COM | | 17275R10 | 309393 | 11429370 | SH | SHARED | 10 | 0743236 | 686134 |
| D | CISCO SYS INC | COM | | 17275R10 | 5 | 200 | SH | SHR/OTHR | 10 | | 200 |
| D | CISCO SYS INC | COM | | 17275R10 | 5668 | 209407 | SH | SHARED | 14 | 130700 | 78707 |
| D | CISCO SYS INC | COM | | 17275R10 | 6769 | 250065 | SH | SHARED | 15 | | 250065 |
| D | CISCO SYS INC | COM | | 17275R10 | 5312 | 196242 | SH | SHARED | 16 | | 196242 |
| D | CISCO SYS INC | COM | | 17275R10 | 7496 | 276938 | SH | SHARED | 19 | | 276938 |
| D | CISCO SYS INC | COM | | 17275R10 | 11663 | 430877 | SH | SHARED | 20 | 178300 | 252577 |
| D | CISCO SYS INC | COM | | 17275R10 | 7966 | 294276 | SH | SHARED | 20 | | 294276 |
| D | CISCO SYS INC | COM | | 17275R10 | 1937 | 71581 | SH | SHARED | 21 | 35889 | 35692 |
| D | CISCO SYS INC | COM | | 17275R10 | 590 | 21800 | SH | SHR/OTHR | 21 | | 21800 |
| D | CISCO SYS INC | COM | | 17275R10 | 2724 | 100647 | SH | SHARED | 22 | 72187 | 28460 |
| D | CISCO SYS INC | COM | | 17275R10 | 961 | 35523 | SH | SHR/OTHR | 22 | | 35523 |
| D | CISCO SYS INC | COM | | 17275R10 | 12216 | 451299 | SH | SHARED | 23 | 402779 | 48520 |
| D | CISCO SYS INC | COM | | 17275R10 | 20399 | 753565 | SH | SHR/OTHR | 23 | | 753565 |
| D | CISCO SYS INC | COM | | 17275R10 | 1214 | 44875 | SH | SHARED | 24 | 44875 | |
| D | CIRRUS LOGIC INC | COM | | 17275S10 | 2607 | 493926 | SH | SHARED | | 493926 | |
| D | CIRRUS LOGIC INC | COM | | 17275S10 | 137 | 26050 | SH | SHARED | 02 | 26050 | |
| D | CITADEL BROADCASTING CORP | NOTE | 1.875% 2/1 | 17285TAB | 4553 | 5553000 | PRN | SHARED | | 5553000 | |
| D | CITADEL BROADCASTING CORP | COM | | 17285T10 | 1 | 677 | SH | SHARED | | 677 | |
| D | CITADEL BROADCASTING CORP | COM | | 17285T10 | 2968 | 1440855 | SH | SHARED | | 1440806 | 49 |
| D | CITADEL BROADCASTING CORP | COM | | 17285T10 | 16 | 8181 | SH | SHARED | 01 | 5950 | 2231 |
| D | CITADEL BROADCASTING CORP | COM | | 17285T10 | 0 | 38 | SH | SHR/OTHR | 01 | | 38 |
| D | CITADEL BROADCASTING CORP | COM | | 17285T10 | 113 | 55241 | SH | SHARED | 02 | 55241 | |
| D | CITADEL BROADCASTING CORP | COM | | 17285T10 | 69 | 33648 | SH | SHARED | 10 | 33648 | |
| D | CITADEL BROADCASTING CORP | COM | | 17285T10 | 1 | 834 | SH | SHARED | 20 | 184 | 650 |
| D | CITADEL BROADCASTING CORP | COM | | 17285T10 | 0 | 92 | SH | SHR/OTHR | 20 | | 92 |
| D | CITADEL BROADCASTING CORP | COM | | 17285T10 | 1 | 673 | SH | SHARED | 21 | 672 | 1 |
| D | CITADEL BROADCASTING CORP | COM | | 17285T10 | 0 | 65 | SH | SHARED | 22 | 65 | |
| D | CITADEL BROADCASTING CORP | COM | | 17285T10 | 0 | 115 | SH | SHR/OTHR | 22 | | 115 |
| D | CITADEL BROADCASTING CORP | COM | | 17285T10 | 3 | 1931 | SH | SHARED | 23 | 1701 | 230 |
| D | CITADEL BROADCASTING CORP | COM | | 17285T10 | 8 | 4113 | SH | SHR/OTHR | 23 | | 4113 |
| D | CINTAS CORP | COM | | 17290810 | 5454 | 162241 | SH | SHARED | | 162241 | |
| D | CINTAS CORP | COM | | 17290810 | 469 | 13955 | SH | SHARED | 01 | 13900 | 55 |
| D | CINTAS CORP | COM | | 17290810 | 9113 | 271066 | SH | SHARED | 02 | 271066 | |
| D | CINTAS CORP | COM | | 17290810 | 3 | 100 | SH | SHARED | 05 | 100 | |
| D | CINTAS CORP | COM | | 17290810 | 46 | 1390 | SH | SHARED | 06 | | 1390 |
| D | CINTAS CORP | COM | | 17290810 | 1735 | 51608 | SH | SHARED | 10 | 51608 | |
| D | CINTAS CORP | COM | | 17290810 | 161 | 4800 | SH | SHARED | 21 | 2850 | 1950 |
| D | CITIZENS & NORTHN CORP | COM | | 17292210 | 4 | 233 | SH | SHARED | | 233 | |
| D | CITIGROUP INC | COM | | 17296710 | 2059 | 69971 | SH | SHARED | | 7871 | 62100 |
| D | CITIGROUP INC | COM | | 17296710 | 23 | 800 | SH | SHR/OTHR | | | 800 |
| D | CITIGROUP INC | COM | | 17296710 | 593667 | 20165344 | SH | SHARED | | 9579632 | 585705 |
| D | CITIGROUP INC | COM | | 17296710 | 35675 | 1211802 | SH | SHARED | 01 | 976403 | 235399 |
| D | CITIGROUP INC | COM | | 17296710 | 5843 | 198503 | SH | SHR/OTHR | 01 | | 198503 |
| D | CITIGROUP INC | COM | | 17296710 | 123685 | 4201268 | SH | SHARED | 02 | 4201268 | |
| D | CITIGROUP INC | COM | | 17296710 | 483 | 16431 | SH | SHARED | 04 | | 16431 |
| D | CITIGROUP INC | COM | | 17296710 | 3779 | 128390 | SH | SHARED | 04 | 128390 | |
| D | CITIGROUP INC | COM | | 17296710 | 60 | 2060 | SH | SHARED | 05 | 2060 | |
| D | CITIGROUP INC | COM | | 17296710 | 21977 | 746505 | SH | SHARED | 06 | | 746505 |
| D | CITIGROUP INC | COM | | 17296710 | 311261 | 10572742 | SH | SHARED | 10 | 0141942 | 430800 |
| D | CITIGROUP INC | COM | | 17296710 | 2460 | 83588 | SH | SHARED | 14 | 83588 | |
| D | CITIGROUP INC | COM | | 17296710 | 2525 | 85800 | SH | SHARED | 15 | 85800 | |

| | Issuer | Class | CUSIP | | Shares | | Type | Code | Shared | Other |
|---|---|---|---|---|---|---|---|---|---|---|
| D | CITIGROUP INC | COM | 17296710 | 2684 | 91186 | SH | SHARED | 16 | 91186 | |
| D | CITIGROUP INC | COM | 17296710 | 5471 | 185862 | SH | SHARED | 20 | 104372 | 81490 |
| D | CITIGROUP INC | COM | 17296710 | 2714 | 92200 | SH | SHR/OTHR | 20 | 92200 | |
| D | CITIGROUP INC | COM | 17296710 | 1522 | 51723 | SH | SHARED | 21 | 51268 | 455 |
| D | CITIGROUP INC | COM | 17296710 | 184 | 6266 | SH | SHR/OTHR | 21 | 6266 | |
| D | CITIGROUP INC | COM | 17296710 | 1434 | 48719 | SH | SHARED | 22 | 35406 | 13313 |
| D | CITIGROUP INC | COM | 17296710 | 786 | 26699 | SH | SHARED | 22 | 26699 | |
| D | CITIGROUP INC | COM | 17296710 | 5949 | 202089 | SH | SHARED | 23 | 182997 | 19092 |
| D | CITIGROUP INC | COM | 17296710 | 6876 | 233590 | SH | SHR/OTHR | 23 | 233590 | |
| D | CITIGROUP INC | COM | 17296710 | 653 | 22200 | SH | SHARED | 24 | 22200 | |
| D | CITI TRENDS INC | COM | 17306X10 | 2 | 175 | SH | SHARED | | 175 | |
| D | CITIZENS REPUBLIC BANCORP IN | COM | 17442010 | 6549 | 424200 | SH | SHARED | 10 | 424200 | |
| D | CITIZENS REPUBLIC BANCORP IN | COM | 17442010 | 896 | 61798 | SH | SHARED | | 61798 | |
| D | CITIZENS REPUBLIC BANCORP IN | COM | 17442010 | 103 | 7100 | SH | SHARED | 01 | 7100 | |
| D | CITIZENS REPUBLIC BANCORP IN | COM | 17442010 | 15408 | 1061950 | SH | SHARED | 10 | 1061950 | |
| D | CITIZENS COMMUNICATIONS CO | COM | 17453B10 | 8693 | 682948 | SH | SHARED | | 682948 | |
| D | CITIZENS COMMUNICATIONS CO | COM | 17453B10 | 585 | 46024 | SH | SHARED | 01 | 45031 | 993 |
| D | CITIZENS COMMUNICATIONS CO | COM | 17453B10 | 2916 | 229078 | SH | SHARED | 02 | 229078 | |
| D | CITIZENS COMMUNICATIONS CO | COM | 17453B10 | 3651 | 286855 | SH | SHARED | 10 | 286855 | |
| D | CITIZENS COMMUNICATIONS CO | COM | 17453B10 | 65 | 5109 | SH | SHARED | 21 | 5109 | |
| D | CITIZENS FIRST BANCORP INC D | COM | 17461R10 | 8 | 687 | SH | SHARED | | 687 | |
| D | CITIZENS FIRST CORP | COM | 17462Q10 | 0 | 52 | SH | SHARED | | 52 | |
| D | CITIZENS CMNTY BANCORP INC M | COM | 17490310 | 1 | 186 | SH | SHARED | | 186 | |
| D | CITIZENS SOUTH BKG CP DEL | COM | 17668210 | 1 | 197 | SH | SHARED | | 197 | |
| D | CITRIX SYS INC | COM | 17737610 | 45432 | 1195273 | SH | SHARED | | 1195273 | |
| D | CITRIX SYS INC | COM | 17737610 | 757 | 19931 | SH | SHARED | 01 | 19931 | |
| D | CITRIX SYS INC | COM | 17737610 | 403 | 10622 | SH | SHARED | 02 | 10622 | |
| D | CITRIX SYS INC | COM | 17737610 | 5576 | 146700 | SH | SHARED | 04 | 146700 | |
| D | CITRIX SYS INC | COM | 17737610 | 21004 | 552610 | SH | SHARED | 06 | 552610 | |
| D | CITRIX SYS INC | COM | 17737610 | 75902 | 1996902 | SH | SHARED | 10 | 1996902 | |
| D | CITRIX SYS INC | COM | 17737610 | 38 | 1000 | SH | SHARED | 22 | 1000 | |
| D | CITRIX SYS INC | COM | 17737610 | 39 | 1050 | SH | SHR/OTHR | 22 | 1050 | |
| D | CITRIX SYS INC | COM | 17737610 | 7 | 200 | SH | SHR/OTHR | 23 | 200 | |
| D | CITY BK LYNNWOOD WASH | COM | 17770A10 | 0 | 14 | SH | SHARED | | 14 | |
| D | CITY BK LYNNWOOD WASH | COM | 17770A10 | 381 | 17000 | SH | SHARED | 10 | 17000 | |
| D | CITY HLDG CO | COM | 17783510 | 125 | 3712 | SH | SHARED | | 3712 | |
| D | CITY HLDG CO | COM | 17783510 | 23 | 700 | SH | SHARED | 01 | 700 | |
| D | CITY HLDG CO | COM | 17783510 | 653 | 19300 | SH | SHARED | 10 | 19300 | |
| D | CITY NATL CORP | COM | 17856610 | 1779 | 29885 | SH | SHARED | | 29885 | |
| D | CITY NATL CORP | COM | 17856610 | 768 | 12900 | SH | SHARED | 01 | 100 | 12800 |
| D | CITY NATL CORP | COM | 17856610 | 125 | 2114 | SH | SHARED | 02 | 2114 | |
| D | CITY NATL CORP | COM | 17856610 | 311 | 5227 | SH | SHARED | 10 | 5227 | |
| D | CITY TELECOM H K LTD | SPONSORED ADR | 17867720 | 0 | 50 | SH | SHARED | | 50 | |
| D | CLARCOR INC | COM | 17989510 | 17 | 472 | SH | SHARED | | 472 | |
| D | CLARCOR INC | COM | 17989510 | 308 | 8132 | SH | SHARED | | 8132 | |
| D | CLARCOR INC | COM | 17989510 | 30 | 800 | SH | SHARED | 01 | 800 | |
| D | CLARCOR INC | COM | 17989510 | 6009 | 158267 | SH | SHARED | 04 | 158267 | |
| D | CLARCOR INC | COM | 17989510 | 5561 | 146476 | SH | SHARED | 05 | 146476 | |
| D | CLARCOR INC | COM | 17989510 | 240 | 6336 | SH | SHARED | 06 | 6336 | |
| D | CLARCOR INC | COM | 17989510 | 927 | 24435 | SH | SHARED | 10 | 24435 | |
| D | CLARIENT INC | COM | 18048910 | 3 | 1939 | SH | SHARED | | 1939 | |
| D | CLAYMONT STEEL HOLDINGS INC | COM | 18382P10 | 1169 | 50077 | SH | SHARED | | 50077 | |
| D | CLAYMONT STEEL HOLDINGS INC | COM | 18382P10 | 18 | 800 | SH | SHARED | 10 | 800 | |
| D | CLAYMORE EXCHANGE TRADED FD | BNY BRI&C PTF | 18383M10 | 762 | 14276 | SH | SHARED | | 14276 | |
| D | CLAYMORE EXCHANGE TRADED FD | BNY BRI&C PTF | 18383M10 | 704 | 13200 | SH | SHARED | 02 | 13200 | |
| D | CLAYTON HLDGS INC | COM | 18418N10 | 3 | 690 | SH | SHARED | | 690 | |
| D | CLEAN DIESEL TECHNOLOGIES IN | COM NEW | 18449C30 | 3 | 154 | SH | SHARED | | 154 | |
| D | CLEAN HARBORS INC | COM | 18449610 | 359 | 6961 | SH | SHARED | | 6961 | |
| D | CLEAN HARBORS INC | COM | 18449610 | 321 | 6210 | SH | SHARED | 02 | 6210 | |
| D | CLEAN HARBORS INC | COM | 18449610 | 1 | 22 | SH | SHARED | 10 | 22 | |
| D | CLEAN ENERGY FUELS CORP | COM | 18449910 | 4 | 295 | SH | SHARED | | 295 | |
| D | CLEAN ENERGY FUELS CORP | COM | 18449910 | 12 | 800 | SH | SHR/OTHR | 01 | 800 | |
| D | CLEAR CHANNEL COMMUNICATIONS | COM | 18450210 | 4410055 | 127768000 | SH | SHARED | | 2776800 | 800 |
| D | CLEAR CHANNEL COMMUNICATIONS | COM | 18450210 | 1989 | 57639 | SH | SHARED | 01 | 50147 | 7492 |
| D | CLEAR CHANNEL COMMUNICATIONS | COM | 18450210 | 5662 | 164043 | SH | SHARED | 02 | 164043 | |
| D | CLEAR CHANNEL COMMUNICATIONS | COM | 18450210 | 517 | 15000 | SH | SHARED | 04 | 15000 | |
| D | CLEAR CHANNEL COMMUNICATIONS | COM | 18450210 | 6 | 178 | SH | SHARED | 05 | 178 | |
| D | CLEAR CHANNEL COMMUNICATIONS | COM | 18450210 | 141 | 4100 | SH | SHARED | 06 | 4100 | 4100 |
| D | CLEAR CHANNEL COMMUNICATIONS | COM | 18450210 | 8521 | 246865 | SH | SHARED | 10 | 246865 | |
| D | CLEAR CHANNEL COMMUNICATIONS | COM | 18450210 | 58 | 1693 | SH | SHARED | 14 | 1693 | 1693 |
| D | CLEAR CHANNEL COMMUNICATIONS | COM | 18450210 | 10 | 300 | SH | SHARED | 21 | 300 | |
| D | CLEAR CHANNEL COMMUNICATIONS | COM | 18450210 | 86 | 2500 | SH | SHARED | 23 | 2500 | 2500 |
| D | CLEAR CHANNEL OUTDOOR HLDGS | CL A | 18451C10 | 137 | 4985 | SH | SHARED | | 4985 | |
| D | CLEAR CHANNEL OUTDOOR HLDGS | CL A | 18451C10 | 315 | 11400 | SH | SHARED | | 11400 | |
| D | CLEAR CHANNEL OUTDOOR HLDGS | CL A | 18451C10 | 15 | 550 | SH | SHARED | 02 | 550 | |
| D | CLEARONE COMMUNICATIONS INC | COM | 18506010 | 1 | 240 | SH | SHARED | | 240 | |
| D | CLEARWIRE CORP | CL A | 18538530 | 2188 | 159596 | SH | SHARED | | 159596 | |
| D | CLEARWIRE CORP | CL A | 18538530 | 13744 | 1002500 | SH | SHARED | 10 | 1002500 | |
| D | CLEVELAND BIOLABS INC | COM | 18586010 | 1 | 125 | SH | SHARED | | 125 | |
| D | CLEVELAND CLIFFS INC | COM | 18589610 | 2820 | 27981 | SH | SHARED | | 27981 | |
| D | CLEVELAND CLIFFS INC | COM | 18589610 | 3112 | 30875 | SH | SHARED | 01 | 18425 | 12450 |
| D | CLEVELAND CLIFFS INC | COM | 18589610 | 2268 | 22500 | SH | SHR/OTHR | 01 | | 22500 |
| D | CLEVELAND CLIFFS INC | COM | 18589610 | 199 | 1981 | SH | SHARED | 02 | 1981 | |
| D | CLEVELAND CLIFFS INC | COM | 18589610 | 0 | 1 | SH | SHARED | 04 | 1 | |
| D | CLEVELAND CLIFFS INC | COM | 18589610 | 221 | 2200 | SH | SHARED | 10 | 2200 | |
| D | CLEVELAND CLIFFS INC | COM | 18589610 | 40 | 402 | SH | SHARED | 21 | | 402 |
| D | CLIFTON SVGS BANCORP INC | COM | 18712Q10 | 367 | 37534 | SH | SHARED | | 37534 | |
| D | CLINICAL DATA INC NEW | COM | 18725U10 | 205 | 9215 | SH | SHARED | | 9215 | |
| D | CLINICAL DATA INC NEW | COM | 18725U10 | 30 | 1350 | SH | SHARED | 02 | 1350 | |
| D | CLOROX CO DEL | COM | 18905410 | 16919 | 259624 | SH | SHARED | | 259624 | |
| D | CLOROX CO DEL | COM | 18905410 | 1763 | 27062 | SH | SHARED | 01 | 25727 | 1335 |
| D | CLOROX CO DEL | COM | 18905410 | 61 | 950 | SH | SHR/OTHR | 01 | | 950 |
| D | CLOROX CO DEL | COM | 18905410 | 871 | 13378 | SH | SHARED | 02 | 13378 | |
| D | CLOROX CO DEL | COM | 18905410 | 6 | 100 | SH | SHARED | 05 | 100 | |
| D | CLOROX CO DEL | COM | 18905410 | 101 | 1560 | SH | SHARED | 06 | | 1560 |
| D | CLOROX CO DEL | COM | 18905410 | 3894 | 59762 | SH | SHARED | 10 | 59762 | |
| D | CLOROX CO DEL | COM | 18905410 | 351 | 5400 | SH | SHARED | 14 | | 5400 |
| D | CLOROX CO DEL | COM | 18905410 | 429 | 6592 | SH | SHARED | 20 | 3575 | 3017 |
| D | CLOROX CO DEL | COM | 18905410 | 612 | 9400 | SH | SHR/OTHR | 20 | | 9400 |
| D | CLOROX CO DEL | COM | 18905410 | 9 | 140 | SH | SHR/OTHR | 21 | | 140 |
| D | CLOROX CO DEL | COM | 18905410 | 16 | 250 | SH | SHARED | 22 | 250 | |
| D | CLOROX CO DEL | COM | 18905410 | 208 | 3200 | SH | SHARED | 23 | | 3200 |
| D | COACH INC | COM | 18975410 | 12619 | 412662 | SH | SHARED | | 412662 | |
| D | COACH INC | COM | 18975410 | 6415 | 209794 | SH | SHARED | 01 | 175311 | 34483 |
| D | COACH INC | COM | 18975410 | 665 | 21764 | SH | SHR/OTHR | 01 | | 21764 |
| D | COACH INC | COM | 18975410 | 9567 | 312876 | SH | SHARED | 02 | 312876 | |
| D | COACH INC | COM | 18975410 | 1253 | 41000 | SH | SHARED | 04 | 41000 | |
| D | COACH INC | COM | 18975410 | 4 | 150 | SH | SHARED | 05 | 150 | |
| D | COACH INC | COM | 18975410 | 118 | 3870 | SH | SHARED | 06 | | 3870 |
| D | COACH INC | COM | 18975410 | 35498 | 1160850 | SH | SHARED | 10 | 1114450 | 46400 |
| D | COACH INC | COM | 18975410 | 107 | 3522 | SH | SHARED | 14 | | 3522 |
| D | COACH INC | COM | 18975410 | 78 | 2578 | SH | SHARED | 20 | 1080 | 1498 |
| D | COACH INC | COM | 18975410 | 767 | 25087 | SH | SHR/OTHR | 20 | | 25087 |
| D | COACH INC | COM | 18975410 | 13 | 430 | SH | SHARED | 21 | 430 | |

```
D COACH INC                      COM            18975410      100     3290 SH     SHARED     22      3075            215
D COACH INC                      COM            18975410       18      600 SH     SHR/OTHR   22                      600
D COACH INC                      COM            18975410      276     9037 SH     SHARED     23      8237            800
D COACH INC                      COM            18975410      664    21735 SH     SHR/OTHR   23                    21735
D COACH INC                      COM            18975410       45     1500 SH     SHARED     24      1500
D COACHMEN INDS INC              COM            18987310        3      573 SH     SHARED             573
D COACHMEN INDS INC              COM            18987310        9     1625 SH     SHARED     02     1625
D COACTIVE MARKETING GROUP INC   COM            18987510        0      143 SH     SHARED             143
D COAST DISTR SYS                COM            19034510        0       84 SH     SHARED              84
D COBIZ FINANCIAL INC            COM            19089710        0       34 SH     SHARED              34
D COBIZ FINANCIAL INC            COM            19089710      108     7275 SH     SHARED     01                     7275
D COBIZ FINANCIAL INC            COM            19089710    23046  1549841 SH     SHARED     23                  1549841
D COBIZ FINANCIAL INC            COM            19089710      800    53814 SH     SHR/OTHR   23                    53814
D COBRA ELECTRS CORP             COM            19104210        0      168 SH     SHARED             168
D COCA COLA BOTTLING CO CONS     COM            19109810       29      500 SH     SHARED     02      500
D COCA COLA HELLENIC BTTLG CO    SPONSORED ADR  1912EP10       85     1990 SH     SHARED     21     1990
D COCA COLA CO                   COM            19121610     2084    33960 SH     SHARED                            33960
D COCA COLA CO                   COM            19121610   368906  6011192 SH     SHARED           5962882         48310
D COCA COLA CO                   COM            19121610    18437   300430 SH     SHARED     01    283166          17264
D COCA COLA CO                   COM            19121610     1942    31657 SH     SHR/OTHR   01                    31657
D COCA COLA CO                   COM            19121610   205970  3356203 SH     SHARED     02   3356203
D COCA COLA CO                   COM            19121610       55      900 SH     SHARED     04                      900
D COCA COLA CO                   COM            19121610     2270    37000 SH     SHARED     04     37000
D COCA COLA CO                   COM            19121610     6188   100840 SH     SHARED     05    100840
D COCA COLA CO                   COM            19121610     1257    20495 SH     SHARED     06                    20495
D COCA COLA CO                   COM            19121610    66171  1078233 SH     SHARED     10   1036633          41600
D COCA COLA CO                   COM            19121610     1134    18491 SH     SHARED     14                    18491
D COCA COLA CO                   COM            19121610     3989    65000 SH     SHARED     15                    65000
D COCA COLA CO                   COM            19121610       98     1600 SH     SHARED     19                     1600
D COCA COLA CO                   COM            19121610     4508    73461 SH     SHARED     20     29025          44436
D COCA COLA CO                   COM            19121610    10223   166587 SH     SHR/OTHR   20                   166587
D COCA COLA CO                   COM            19121610      271     4425 SH     SHARED     21      2500           1925
D COCA COLA CO                   COM            19121610      613    10000 SH     SHR/OTHR   21                    10000
D COCA COLA CO                   COM            19121610      738    12030 SH     SHARED     22      6130           5900
D COCA COLA CO                   COM            19121610      856    13950 SH     SHR/OTHR   22                    13950
D COCA COLA CO                   COM            19121610     5056    82391 SH     SHARED     23     81891            500
D COCA COLA CO                   COM            19121610     5876    95760 SH     SHR/OTHR   23                    95760
D COCA COLA ENTERPRISES INC      COM            19121910     8015   307933 SH     SHARED           249333         58600
D COCA COLA ENTERPRISES INC      COM            19121910     1577    60600 SH     SHARED     01     56800           3800
D COCA COLA ENTERPRISES INC      COM            19121910       85     3300 SH     SHR/OTHR   01                     3300
D COCA COLA ENTERPRISES INC      COM            19121910     1535    58984 SH     SHARED     02     58984
D COCA COLA ENTERPRISES INC      COM            19121910       33     1300 SH     SHARED     06                     1300
D COCA COLA ENTERPRISES INC      COM            19121910    74475   286119 SH     SHARED     10   2611239         249900
D COCA COLA ENTERPRISES INC      COM            19121910      508    19536 SH     SHARED     14                    19536
D COCA COLA FEMSA S A B DE C V   SPON ADR REP L 19124110     5073   102947 SH     SHARED           102947
D CODORUS VY BANCORP INC         COM            19202510        1       87 SH     SHARED              87
D COEUR D ALENE MINES CORP IDA   COM            19210810     2252   455883 SH     SHARED           455883
D COEUR D ALENE MINES CORP IDA   COM            19210810      106    21635 SH     SHARED     01     9635          12000
D COEUR D ALENE MINES CORP IDA   COM            19210810        4     1000 SH     SHARED     02     1000
D COEUR D ALENE MINES CORP IDA   COM            19210810     8982  1818300 SH     SHARED     10   1818300
D COEUR D ALENE MINES CORP IDA   COM            19210810      251    51000 SH     SHARED     23     51000
D COEUR D ALENE MINES CORP IDA   COM            19210810      296    60000 SH     SHR/OTHR   23                    60000
D COFFEE HLDGS INC               COM            19217610        0       62 SH     SHARED              62
D COGDELL SPENCER INC            COM            19238U10     9374   587377 SH     SHARED           587377
D COGDELL SPENCER INC            COM            19238U10     3426   214700 SH     SHARED     10    214700
D COGENT COMM GROUP INC          COM NEW        19239V30    11940   503613 SH     SHARED           503613
D COGENT COMM GROUP INC          COM NEW        19239V30     1052    44404 SH     SHARED     01     43900            504
D COGENT COMM GROUP INC          COM NEW        19239V30     1280    54000 SH     SHR/OTHR   10                    54000
D COGENT COMM GROUP INC          COM NEW        19239V30       14      600 SH     SHARED     10      600
D COGENT INC                     COM            19239J10    12350  1107686 SH     SHARED           162186         945500
D COGENT INC                     COM            19239J10      941    84400 SH     SHARED     01     84400
D COGENT INC                     COM            19239J10    42610  3821572 SH     SHARED     10   3270172         551400
D COGENT INC                     COM            19239J10      299    26900 SH     SHARED     15                    26900
D COGENT INC                     COM            19239J10      574    51500 SH     SHARED     24     51500
D COGNEX CORP                    COM            19242210      137     6820 SH     SHARED            6820
D COGNEX CORP                    COM            19242210      332    16500 SH     SHARED     01     16500
D COGNEX CORP                    COM            19242210       48     2400 SH     SHARED     10      2400
D COGNOS INC                     COM            19244C10     1324    23008 SH     SHARED            23008
D COGNOS INC                     COM            19244C10       28      502 SH     SHARED     01      252            250
D COGNOS INC                     COM            19244C10     1151    20000 SH     SHARED     04     20000
D COGNOS INC                     COM            19244C10      109     1900 SH     SHARED     10      1900
D COGNOS INC                     COM            19244C10      298     5191 SH     SHARED     14                     5191
D COGNOS INC                     COM            19244C10      115     2000 SH     SHARED     23     2000
D COGNIZANT TECHNOLOGY SOLUTIO   CL A           19244610    10989   323798 SH     SHARED           323798
D COGNIZANT TECHNOLOGY SOLUTIO   CL A           19244610     1087    32050 SH     SHARED     01     31350            700
D COGNIZANT TECHNOLOGY SOLUTIO   CL A           19244610      274     8094 SH     SHARED     02     8094
D COGNIZANT TECHNOLOGY SOLUTIO   CL A           19244610        6      180 SH     SHARED     05      180
D COGNIZANT TECHNOLOGY SOLUTIO   CL A           19244610       86     2540 SH     SHARED     06                     2540
D COGNIZANT TECHNOLOGY SOLUTIO   CL A           19244610    12204   359600 SH     SHARED     10    359600
D COHEN & STEERS INC             COM            19247A10      291     9722 SH     SHARED            9722
D COHEN & STEERS INC             COM            19247A10       29     1000 SH     SHARED     01     1000
D COHEN & STEERS INC             COM            19247A10      491    16400 SH     SHARED     02     16400
D COHEN & STEERS INC             COM            19247A10      428    14300 SH     SHARED     10     14300
D COHEN & STEERS INC             COM            19247A10        9      325 SH     SHARED     21                      325
D COHEN & STEERS REIT & PFD IN   COM            19247X10     3780   200000 SH     SHARED           200000
D COHERENT INC                   COM            19247910       85     3400 SH     SHARED     01                     3400
D COHERENT INC                   COM            19247910      282    11274 SH     SHARED           11274
D COHEN & STEERS SELECT UTIL F   COM            19248A10      898    32670 SH     SHARED            32670
D COHEN & STEERS SELECT UTIL F   COM            19248A10      146     5312 SH     SHARED     20                     5312
D COHEN & STEERS DIV MJRS FDIN   COM            19248O10     8104   480978 SH     SHARED           480978
D COHESANT TECHNOLOGIES INC      COM            19248010        0       52 SH     SHARED              52
D COHU INC                       COM            19257610        5      360 SH     SHARED             360
D COHU INC                       COM            19257610        2      140 SH     SHARED     01      140
D COHU INC                       COM            19257610      123     8100 SH     SHARED     10     8100
D COINSTAR INC                   COM            19259P30        0       26 SH     SHARED     02       26
D COINSTAR INC                   COM            19259P30      340    12100 SH     SHARED     10     12100
D COLDWATER CREEK INC            COM            19306810       48     7256 SH     SHARED            7256
D COLDWATER CREEK INC            COM            19306810      163    24400 SH     SHARED     01                    24400
D COLDWATER CREEK INC            COM            19306810       67    10136 SH     SHARED     02     10136
D COLDWATER CREEK INC            COM            19306810      283    42400 SH     SHARED     05     42400
D COLE KENNETH PRODTNS INC       CL A           19329410      275    15757 SH     SHARED            15757
D COLEMAN CABLE INC              COM            19345930      370    39257 SH     SHARED            39257
D COLGATE PALMOLIVE CO           COM            19416210       20      262 SH     SHARED             262
D COLGATE PALMOLIVE CO           COM            19416210    88804  1139102 SH     SHARED          1104402         34700
D COLGATE PALMOLIVE CO           COM            19416210    30816   395291 SH     SHARED     01    279414         115877
D COLGATE PALMOLIVE CO           COM            19416210     5910    75809 SH     SHR/OTHR   01                    75809
D COLGATE PALMOLIVE CO           COM            19416210     9312   119446 SH     SHARED     02    119446
D COLGATE PALMOLIVE CO           COM            19416210   211856  2717500 SH     SHARED     04   2717500
D COLGATE PALMOLIVE CO           COM            19416210     3827    49100 SH     SHARED     06                    49100
D COLGATE PALMOLIVE CO           COM            19416210   149711  1920369 SH     SHARED     10   1872119         48250
D COLGATE PALMOLIVE CO           COM            19416210      168     2167 SH     SHR/OTHR   10                     2167
D COLGATE PALMOLIVE CO           COM            19416210     3008    38590 SH     SHARED     14     27000          11590
D COLGATE PALMOLIVE CO           COM            19416210       77     1000 SH     SHARED     19                     1000
D COLGATE PALMOLIVE CO           COM            19416210     4498    57700 SH     SHARED     20     49450           8250
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | COLGATE PALMOLIVE CO | COM | 19416210 | 4886 | 62675 SH | SHR/OTHR | 20 | | | 62675 |
| D | COLGATE PALMOLIVE CO | COM | 19416210 | 296 | 3802 SH | SHARED | 21 | | 3660 | 142 |
| D | COLGATE PALMOLIVE CO | COM | 19416210 | 54 | 700 SH | SHR/OTHR | 21 | | | 700 |
| D | COLGATE PALMOLIVE CO | COM | 19416210 | 2242 | 28766 SH | SHARED | 22 | | 23300 | 5466 |
| D | COLGATE PALMOLIVE CO | COM | 19416210 | 533 | 6837 SH | SHR/OTHR | 22 | | | 6837 |
| D | COLGATE PALMOLIVE CO | COM | 19416210 | 10162 | 130361 SH | SHARED | 23 | | 116721 | 13640 |
| D | COLGATE PALMOLIVE CO | COM | 19416210 | 9366 | 120149 SH | SHR/OTHR | 23 | | | 120149 |
| D | COLGATE PALMOLIVE CO | COM | 19416210 | 61 | 783 SH | SHARED | 24 | | 783 | |
| D | COLLAGENEX PHARMACEUTICALS I | COM | 19419B10 | 5 | 550 SH | SHARED | | | 550 | |
| D | COLLECTORS UNIVERSE INC | COM NEW | 19421R20 | 2 | 178 SH | SHARED | | | 178 | |
| D | COLLECTIVE BRANDS INC | COM | 19421W10 | 7123 | 409648 SH | SHARED | | | 409648 | |
| D | COLLECTIVE BRANDS INC | COM | 19421W10 | 1150 | 66146 SH | SHARED | 01 | | 41968 | 24178 |
| D | COLLECTIVE BRANDS INC | COM | 19421W10 | 121 | 7003 SH | SHARED | 02 | | 7003 | |
| D | COLLECTIVE BRANDS INC | COM | 19421W10 | 483 | 27800 SH | SHARED | 10 | | 27800 | |
| D | COLLECTIVE BRANDS INC | COM | 19421W10 | 0 | 15 SH | SHARED | 23 | | 15 | |
| D | COLLEGIATE PACIFIC INC | NOTE 5.750%12/0 | 194589AB | 6365 | 6750000 PRN | SHARED | | | 6750000 | |
| D | COLONIAL BANCGROUP INC | COM | 19549330 | 733 | 54209 SH | SHARED | | | 54209 | |
| D | COLONIAL BANCGROUP INC | COM | 19549330 | 598 | 44200 SH | SHARED | 01 | | 7300 | 36900 |
| D | COLONIAL BANCGROUP INC | COM | 19549330 | 428 | 31643 SH | SHARED | 02 | | 31643 | |
| D | COLONIAL BANCGROUP INC | COM | 19549330 | 10 | 800 SH | SHARED | 06 | | | 800 |
| D | COLONIAL BANCGROUP INC | COM | 19549330 | 347 | 25668 SH | SHARED | 10 | | 25668 | |
| D | COLONIAL BANCGROUP INC | COM | 19549330 | 240 | 17762 SH | SHARED | 14 | | | 17762 |
| D | COLONIAL BANKSHARES INC | COM | 19557210 | 6 | 636 SH | SHARED | | | 636 | |
| D | COLONIAL PPTYS TR | COM SH BEN INT | 19587210 | 1222 | 54022 SH | SHARED | | | 54022 | |
| D | COLONIAL PPTYS TR | COM SH BEN INT | 19587210 | 70 | 3100 SH | SHARED | 01 | | 3100 | |
| D | COLONIAL PPTYS TR | COM SH BEN INT | 19587210 | 183 | 8100 SH | SHARED | 02 | | 8100 | |
| D | COLONIAL PPTYS TR | COM SH BEN INT | 19587210 | 2816 | 124450 SH | SHARED | 10 | | 124450 | |
| D | COLONIAL PPTYS TR | COM SH BEN INT | 19587210 | 52270 | 2309773 SH | SHARED | 11 | | 875450 | 1434323 |
| D | COLONIAL PPTYS TR | COM SH BEN INT | 19587210 | 38 | 1700 SH | SHARED | 21 | | 1700 | |
| D | COLONY BANKCORP INC | COM | 19623P10 | 2 | 163 SH | SHARED | | | 163 | |
| D | COLUMBIA BANCORP ORE | COM | 19723110 | 11 | 717 SH | SHARED | | | 717 | |
| D | COLUMBIA BKG SYS INC | COM | 19723610 | 5 | 201 SH | SHARED | | | 201 | |
| D | COLUMBIA BKG SYS INC | COM | 19723610 | 14343 | 482450 SH | SHARED | 10 | | 482450 | |
| D | COLUMBIA LABS INC | COM | 19777910 | 2 | 1207 SH | SHARED | | | 1207 | |
| D | COLUMBIA SPORTSWEAR CO | COM | 19851610 | 407 | 9251 SH | SHARED | | | 9251 | |
| D | COLUMBIA SPORTSWEAR CO | COM | 19851610 | 35 | 800 SH | SHARED | 01 | | 800 | |
| D | COLUMBIA SPORTSWEAR CO | COM | 19851610 | 136 | 3100 SH | SHARED | 02 | | 3100 | |
| D | COLUMBIA SPORTSWEAR CO | COM | 19851610 | 551 | 12500 SH | SHARED | 10 | | 12500 | |
| D | COLUMBIA SPORTSWEAR CO | COM | 19851610 | 37 | 844 SH | SHARED | 21 | | | 844 |
| D | COLUMBUS ACQUISITION CORP | COM | 19885110 | 10013 | 1349526 SH | SHARED | | | 1349526 | |
| D | COLUMBUS ACQUISITION CORP | *W EXP 05/18/201 | 19885110 | 44 | 81625 SH | SHARED | | | 81625 | |
| D | COLUMBUS MCKINNON CORP N Y | COM | 19933310 | 389 | 11951 SH | SHARED | | | 11951 | |
| D | COLUMBUS MCKINNON CORP N Y | COM | 19933310 | 22 | 700 SH | SHARED | 01 | | 700 | |
| D | COLUMBUS MCKINNON CORP N Y | COM | 19933310 | 171 | 5264 SH | SHARED | 02 | | 5264 | |
| D | COLUMBUS MCKINNON CORP N Y | COM | 19933310 | 867 | 26600 SH | SHARED | 10 | | 26600 | |
| D | COLUMBUS MCKINNON CORP N Y | COM | 19933310 | 62 | 1926 SH | SHARED | 21 | | 1926 | |
| D | COMFORT SYS USA INC | COM | 19990810 | 95 | 7439 SH | SHARED | | | 7439 | |
| D | COMFORT SYS USA INC | COM | 19990810 | 23 | 1825 SH | SHARED | 02 | | 1825 | |
| D | COMFORT SYS USA INC | COM | 19990810 | 155 | 12200 SH | SHARED | 10 | | 12200 | |
| D | COMARCO INC | COM | 20008010 | 0 | 157 SH | SHARED | | | 157 | |
| D | COMBIMATRIX CORPORATION | COM | 20009710 | 1 | 155 SH | SHARED | | | 155 | |
| D | COMBINATORX INC | COM | 20010A10 | 322 | 72528 SH | SHARED | | | 72528 | |
| D | COMBINATORX INC | COM | 20010A10 | 443 | 99951 SH | SHARED | 04 | | 99951 | |
| D | COMCAST CORP NEW | CL A | 20030N10 | 75781 | 4150124 SH | SHARED | | | 4084524 | 65600 |
| D | COMCAST CORP NEW | CL A | 20030N10 | 7108 | 389298 SH | SHARED | 01 | | 386773 | 2525 |
| D | COMCAST CORP NEW | CL A | 20030N10 | 936 | 51300 SH | SHR/OTHR | 01 | | | 51300 |
| D | COMCAST CORP NEW | CL A | 20030N10 | 6009 | 329125 SH | SHARED | 02 | | 329125 | |
| D | COMCAST CORP NEW | CL A | 20030N10 | 10225 | 560000 SH | SHARED | 04 | | 560000 | |
| D | COMCAST CORP NEW | CL A | 20030N10 | 14 | 790 SH | SHARED | 05 | | | 790 |
| D | COMCAST CORP NEW | CL A | 20030N10 | 9223 | 505133 SH | SHARED | 06 | | | 505133 |
| D | COMCAST CORP NEW | CL A | 20030N10 | 67120 | 3675817 SH | SHARED | 10 | | 3371367 | 304450 |
| D | COMCAST CORP NEW | CL A | 20030N10 | 377 | 20650 SH | SHARED | 14 | | 20650 | |
| D | COMCAST CORP NEW | CL A | 20030N10 | 58 | 3231 SH | SHARED | 20 | | 3231 | |
| D | COMCAST CORP NEW | CL A | 20030N10 | 186 | 10240 SH | SHARED | 21 | | 10240 | |
| D | COMCAST CORP NEW | CL A | 20030N10 | 32 | 1800 SH | SHARED | 22 | | 854 | 946 |
| D | COMCAST CORP NEW | CL A | 20030N10 | 149 | 8191 SH | SHARED | 23 | | 241 | 7950 |
| D | COMCAST CORP NEW | CL A | 20030N10 | 60 | 3293 SH | SHR/OTHR | 23 | | | 3293 |
| D | COMCAST CORP NEW | CL A SPL | 20030N20 | 5574 | 307643 SH | SHARED | | | 307643 | |
| D | COMCAST CORP NEW | CL A SPL | 20030N20 | 1042 | 57551 SH | SHARED | 01 | | 48240 | 9311 |
| D | COMCAST CORP NEW | CL A SPL | 20030N20 | 53 | 2925 SH | SHR/OTHR | 01 | | | 2925 |
| D | COMCAST CORP NEW | CL A SPL | 20030N20 | 14 | 825 SH | SHARED | 02 | | 825 | |
| D | COMCAST CORP NEW | CL A SPL | 20030N20 | 7 | 420 SH | SHARED | 05 | | | 420 |
| D | COMCAST CORP NEW | CL A SPL | 20030N20 | 197 | 10920 SH | SHARED | 06 | | | 10920 |
| D | COMCAST CORP NEW | CL A SPL | 20030N20 | 7168 | 395600 SH | SHARED | 10 | | 395600 | |
| D | COMCAST CORP NEW | CL A SPL | 20030N20 | 1825 | 100729 SH | SHARED | 14 | | | 100729 |
| D | COMCAST CORP NEW | CL A SPL | 20030N20 | 265 | 14662 SH | SHARED | 20 | | 4500 | 10162 |
| D | COMCAST CORP NEW | CL A SPL | 20030N20 | 273 | 15093 SH | SHR/OTHR | 20 | | | 15093 |
| D | COMCAST CORP NEW | CL A SPL | 20030N20 | 99 | 5500 SH | SHARED | 21 | | 5020 | 480 |
| D | COMCAST CORP NEW | CL A SPL | 20030N20 | 149 | 8250 SH | SHARED | 22 | | 6427 | 1823 |
| D | COMCAST CORP NEW | CL A SPL | 20030N20 | 311 | 17170 SH | SHARED | 23 | | 15820 | 1350 |
| D | COMCAST CORP NEW | CL A SPL | 20030N20 | 466 | 25752 SH | SHR/OTHR | 23 | | | 25752 |
| D | COMERICA INC | COM | 20034010 | 26870 | 617289 SH | SHARED | | | 617289 | |
| D | COMERICA INC | COM | 20034010 | 645 | 14820 SH | SHARED | 01 | | 14820 | |
| D | COMERICA INC | COM | 20034010 | 6068 | 139410 SH | SHARED | 02 | | 70000 | |
| D | COMERICA INC | COM | 20034010 | 3047 | 70000 SH | SHARED | 04 | | 70000 | |
| D | COMERICA INC | COM | 20034010 | 4 | 100 SH | SHARED | 05 | | 100 | |
| D | COMERICA INC | COM | 20034010 | 10932 | 251147 SH | SHARED | 06 | | | 251147 |
| D | COMERICA INC | COM | 20034010 | 8631 | 198285 SH | SHARED | 10 | | 198285 | |
| D | COMERICA INC | COM | 20034010 | 187 | 4300 SH | SHARED | 14 | | | 4300 |
| D | COMERICA INC | COM | 20034010 | 292 | 6716 SH | SHARED | 20 | | 3225 | 3491 |
| D | COMERICA INC | COM | 20034010 | 41 | 947 SH | SHR/OTHR | 20 | | | 947 |
| D | COMERICA INC | COM | 20034010 | 38 | 885 SH | SHARED | 21 | | 790 | 95 |
| D | COMERICA INC | COM | 20034010 | 705 | 16200 SH | SHARED | 23 | | 16200 | |
| D | COMFORCE CORP | COM | 20338K10 | 0 | 291 SH | SHARED | | | 291 | |
| D | COMM BANCORP INC | COM | 20046810 | 1 | 38 SH | SHARED | | | 38 | |
| D | COMMAND SEC CORP | COM | 20050L10 | 0 | 151 SH | SHARED | | | 151 | |
| D | COMMERCE BANCORP INC NJ | COM | 20051910 | 204319 | 5357100 SH | SHARED | | | 5357100 | |
| D | COMMERCE BANCORP INC NJ | COM | 20051910 | 732 | 19200 SH | SHARED | 01 | | 19200 | |
| D | COMMERCE BANCORP INC NJ | COM | 20051910 | 10603 | 278025 SH | SHARED | 02 | | 278025 | |
| D | COMMERCE BANCORP INC NJ | COM | 20051910 | 66 | 1750 SH | SHARED | 06 | | | 1750 |
| D | COMMERCE BANCORP INC NJ | COM | 20051910 | 4885 | 128100 SH | SHARED | 10 | | 128100 | |
| D | COMMERCE BANCORP INC NJ | COM | 20051910 | 22 | 600 SH | SHR/OTHR | 22 | | | 600 |
| D | COMMERCE BANCSHARES INC | COM | 20052510 | 29 | 652 SH | SHARED | | | 652 | |
| D | COMMERCE BANCSHARES INC | COM | 20052510 | 43 | 968 SH | SHARED | 01 | | 968 | |
| D | COMMERCE BANCSHARES INC | COM | 20052510 | 112 | 2502 SH | SHARED | 02 | | 2502 | |
| D | COMMERCE BANCSHARES INC | COM | 20052510 | 174 | 3892 SH | SHARED | 10 | | 3892 | |
| D | COMMERCE ENERGY GROUP INC | COM | 20061Q10 | 0 | 685 SH | SHARED | | | 685 | |
| D | COMMERCE GROUP INC MASS | COM | 20064110 | 2503 | 69573 SH | SHARED | | | 69573 | |
| D | COMMERCE GROUP INC MASS | COM | 20064110 | 518 | 14400 SH | SHARED | 01 | | | 14400 |
| D | COMMERCE GROUP INC MASS | COM | 20064110 | 495 | 13775 SH | SHARED | 02 | | 13775 | |
| D | COMMERCE GROUP INC MASS | COM | 20064110 | 1237 | 34400 SH | SHARED | 10 | | 34400 | |
| D | COMMERCIAL METALS CO | COM | 20172310 | 1923 | 65326 SH | SHARED | | | 39726 | 25600 |
| D | COMMERCIAL METALS CO | COM | 20172310 | 1684 | 57200 SH | SHARED | 01 | | 19600 | 37600 |
| D | COMMERCIAL METALS CO | COM | 20172310 | 412 | 14018 SH | SHARED | 02 | | 14018 | |

```
D COMMERCIAL METALS CO          COM               20172310   20787  705857 SH    SHARED    10    553957
D COMMERCIAL METALS CO          COM               20172310     591   20080 SH    SHARED    24     20080         151900
D COMMERCIAL VEH GROUP INC      COM               20260810      24    1700 SH    SHARED    10      1700
D COMMONWEALTH BANKSHARES INC   COM               20273610     294   18484 SH    SHARED            18484
D COMMONWEALTH BIOTECHNOLOGIES  COM               20273910       0      86 SH    SHARED               86
D COMMSCOPE INC          SDCV 1.000% 3/1 203372AD     572  250000 PRN   SHARED          250000
D COMMSCOPE INC          SDCV 1.000% 3/1 203372AD     432  189000 PRN   SHARED          189000
D COMMSCOPE INC                 COM               20337210    2650   53864 SH    SHARED            53864
D COMMSCOPE INC                 COM               20337210    1488   30244 SH    SHARED    01      9761         20483
D COMMSCOPE INC                 COM               20337210     248    5055 SH    SHARED    02      5055
D COMMSCOPE INC                 COM               20337210   32160  653544 SH    SHARED    10    653544
D COMMSCOPE INC                 COM               20337210      64    1307 SH    SHARED    21      1307          1307
D COMMUNITY BANCSHARES INC S C  COM               20343F10       1     117 SH    SHARED              117
D COMMUNITY BANCORP NEV         COM               20343T10      99    5714 SH    SHARED             5714
D COMMUNITY BANCORP NEV         COM               20343T10      23    1340 SH    SHARED    02      1340
D COMMUNITY BANCORP NEV         COM               20343T10     336   19400 SH    SHARED    10     19400
D COMMUNITY BK SHS IND INC      COM               20359910       1      89 SH    SHARED               89
D COMMUNITY BK SYS INC          COM               20360710     111    5600 SH    SHARED             5600
D COMMUNITY BK SYS INC          COM               20360710     355   17900 SH    SHARED    02     17900
D COMMUNITY BK SYS INC          COM               20360710     544   27400 SH    SHARED    10     27400
D COMMUNITY BANKERS ACQUISITN   COM               20361810     493   66613 SH    SHARED            66613
D COMMUNITY CAP CORP S C        COM               20363C10       1     115 SH    SHARED              115
D COMMUNITY FINL CORP VA        COM               20365L10       0     106 SH    SHARED              106
D COMMUNITY HEALTH SYS INC NEW  COM               20366810   91797 2490438 SH    SHARED          2490438
D COMMUNITY HEALTH SYS INC NEW  COM               20366810    1275   34600 SH    SHARED    01      6400         28200
D COMMUNITY HEALTH SYS INC NEW  COM               20366810    1799   48828 SH    SHARED    02     48828
D COMMUNITY HEALTH SYS INC NEW  COM               20366810   39416 1069370 SH    SHARED    10   1069370
D COMMUNITY HEALTH SYS INC NEW  COM               20366810     247    6705 SH    SHARED    21      6705
D COMMUNICATIONS SYS INC        COM               20390010       1     148 SH    SHARED              148
D COMMUNITY PARTNERS BANCORP    COM               20401810       1     174 SH    SHARED              174
D COMMUNITY SHORES BANK CORP    COM               20404610       0      33 SH    SHARED               33
D COMMUNITY TR BANCORP INC      COM               20414910      26     949 SH    SHARED              949
D COMMUNITY TR BANCORP INC      COM               20414910      88    3200 SH    SHARED    10      3200
D COMMUNITY VALLEY BANCORP CA   COM               20415F10       1     175 SH    SHARED              175
D COMMUNITY WEST BANCSHARES     COM               20415710       1     136 SH    SHARED              136
D COMMVAULT SYSTEMS INC         COM               20416610     194    9182 SH    SHARED             9182
D COMMVAULT SYSTEMS INC         COM               20416610      27    1300 SH    SHARED    01      1300
D COMMVAULT SYSTEMS INC         COM               20416610     211   10000 SH    SHARED    04     10000
D COMMVAULT SYSTEMS INC         COM               20416610     942   42600 SH    SHARED    10     42600
D CGG VERITAS          SPONSORED ADR            20438610    1322   23599 SH    SHARED            23599
D CGG VERITAS          SPONSORED ADR            20438610     164    2927 SH    SHARED    01      2927
D COMPANHIA BRASILEIRA DE DIST  SPON ADR PFD      20440720      29     800 SH    SHARED              800
D COMPANHIA SIDERURGICA NACION  SPONSORED ADR     20440W10    5567   62153 SH    SHARED            61553           800
D COMPANHIA SIDERURGICA NACION  SPONSORED ADR     20440W10   10846  121100 SH    SHARED            121100          600
D COMPANHIA SIDERURGICA NACION  SPONSORED ADR     20440W10     223    2500 SH    SHARED    02      2500
D COMPANHIA SIDERURGICA NACION  SPONSORED ADR     20440W10    3591   40100 SH    SHARED    04     40100
D COMPANHIA ENERGETICA DE MINA  SP ADR N-V PFD    20440960      17     943 SH    SHARED              943
D COMPANHIA ENERGETICA DE MINA  SP ADR N-V PFD    20440960    4884  264601 SH    SHARED            262601         2000
D COMPANHIA ENERGETICA DE MINA  SP ADR N-V PFD    20440960       0      51 SH    SHARED    02        51
D COMPANHIA ENERGETICA DE MINA  SP ADR N-V PFD    20440960    6427  348187 SH    SHARED    04    348187
D COMPANHIA ENERGETICA DE MINA  SP ADR N-V PFD    20440960    5254  284629 SH    SHARED    05    284629
D COMPANHIA ENERGETICA DE MINA  SP ADR N-V PFD    20440960     260   14100 SH    SHARED    06     14100         14100
D COMPANHIA ENERGETICA DE MINA  SP ADR N-V PFD    20440960     221   12015 SH    SHARED    10     12015
D COMPANHIA DE SANEAMENTO BASI  SPONSORED ADR     20441A10     533   11350 SH    SHARED            11350         11350
D COMPANHIA DE SANEAMENTO BASI  SPONSORED ADR     20441A10    7654  162864 SH    SHARED           162864
D COMPANHIA DE SANEAMENTO BASI  SPONSORED ADR     20441A10   15960  339587 SH    SHARED    04    339587
D COMPANHIA DE SANEAMENTO BASI  SPONSORED ADR     20441A10   13682  291127 SH    SHARED    05    291127
D COMPANHIA PARANAENSE ENERG C  SPON ADR PFD      20441W30      49    3285 SH    SHARED             3285
D COMPANHIA DE BEBIDAS DAS AME  SPONSORED ADR     20441W10      42     631 SH    SHARED              631
D COMPANHIA DE BEBIDAS DAS AME  SPON ADR PFD      20441W20     365    5150 SH    SHARED             5150         5150
D COMPANHIA DE BEBIDAS DAS AME  SPON ADR PFD      20441W20    4225   59482 SH    SHARED            59482
D COMPANHIA DE BEBIDAS DAS AME  SPON ADR PFD      20441W20    4425   62300 SH    SHARED    04     62300
D COMPANHIA DE BEBIDAS DAS AME  SPON ADR PFD      20441W20   27289  384200 SH    SHARED    10    384200
D COMPANHIA DE BEBIDAS DAS AME  SPON ADR PFD      20441W20     532    7500 SH    SHARED    14      7500         7500
D COMPANHIA VALE DO RIO DOCE    SPON ADR PFD      20441210     517   18500 SH    SHARED            18500
D COMPANHIA VALE DO RIO DOCE    SPON ADR PFD      20441210  162959 5824144 SH    SHARED          5821144         3000
D COMPANHIA VALE DO RIO DOCE    SPON ADR PFD      20441210    6891  246300 SH    SHARED    01    246300
D COMPANHIA VALE DO RIO DOCE    SPON ADR PFD      20441210   17369  620800 SH    SHARED    04    620800
D COMPANHIA VALE DO RIO DOCE    SPON ADR PFD      20441210  177824 6355400 SH    SHARED    10   6355400
D COMPANHIA VALE DO RIO DOCE    SPON ADR PFD      20441210    7649  273400 SH    SHARED    14    140420        273400
D COMPANHIA VALE DO RIO DOCE    SPON ADR PFD      20441210    3928  140420 SH    SHARED    24    140420
D COMPANHIA VALE DO RIO DOCE    SPONSORED ADR     20441220     694   21250 SH    SHARED            21250
D COMPANHIA VALE DO RIO DOCE    SPONSORED ADR     20441220  143408 4389618 SH    SHARED          4385318         4300
D COMPANHIA VALE DO RIO DOCE    SPONSORED ADR     20441220   26038  797028 SH    SHARED    01    795628          1400
D COMPANHIA VALE DO RIO DOCE    SPONSORED ADR     20441220   10496  321279 SH    SHARED    02    321279
D COMPANHIA VALE DO RIO DOCE    SPONSORED ADR     20441220    6207  190000 SH    SHARED    06    190000         190000
D COMPANHIA VALE DO RIO DOCE    SPONSORED ADR     20441220   78669 2408000 SH    SHARED    10   2366000         42000
D COMPANHIA VALE DO RIO DOCE    SPONSORED ADR     20441220      24     760 SH    SHARED    20       760
D COMPANHIA VALE DO RIO DOCE    SPONSORED ADR     20441220     116    3560 SH    SHR/OTHR  23      3560          3560
D COMPANHIA VALE DO RIO DOCE    SPONSORED ADR     20441220     447   13700 SH    SHARED    24     13700
D COMPANIA CERVECERIAS UNIDAS   SPONSORED ADR     20440910     112    3152 SH    SHARED             3152
D COMPANIA DE MINAS BUENAVENTU  SPONSORED ADR     20444810     673   11893 SH    SHARED            11893
D COMPANIA DE MINAS BUENAVENTU  SPONSORED ADR     20444810    5377   95000 SH    SHARED    04     95000
D COMPANIA DE TELECOMUNICS CHI  SPON ADR NEW      20444930    1042   16705 SH    SHARED            16705
D COMPANIA DE TELECOMUNICS CHI  SPON ADR NEW      20444930    1004  134600 SH    SHARED    02    134600
D COMPASS MINERALS INTL INC     COM               20451N10     671   16386 SH    SHARED            16386
D COMPASS MINERALS INTL INC     COM               20451N10      36     900 SH    SHARED    01       900
D COMPASS MINERALS INTL INC     COM               20451N10    1734   42300 SH    SHARED    10     42300
D COMPASS MINERALS INTL INC     COM               20451N10      86    2100 SH    SHR/OTHR  23      2100          2100
D COMPRASS DIVERSIFIED HOLDING  SH BEN INT        20451Q10     332   22282 SH    SHARED            22282
D COMPRASS DIVERSIFIED HOLDING  SH BEN INT        20451Q10      50    3400 SH    SHARED    10      3400
D COMPRASS DIVERSIFIED HOLDING  SH BEN INT        20451Q10      22    1500 SH    SHARED    20      1500
D COMPETITIVE TECHNOLOGIES INC  COM               20451210       0     209 SH    SHARED              209
D COMPLETE PRODUCTION SERVICES  COM               20453810     306   17080 SH    SHARED            17080
D COMPLETE PRODUCTION SERVICES  COM               20453810     249   13875 SH    SHARED    01     13875
D COMPUCREDIT CORP         NOTE 3.625% 5/3 20478NAB    2085 4410000 PRN   SHARED          4410000
D COMPUCREDIT CORP              COM               20478N10    3577  358444 SH    SHARED           358444
D COMPUCREDIT CORP              COM               20478N10     146   14700 SH    SHARED    02     14700
D COMPUCREDIT CORP              COM               20478N10      23    2387 SH    SHARED    10      2387
D COMPUCREDIT CORP              COM               20478N10      15    1565 SH    SHARED    21      1565
D COMPUTER ASSOC INTL INC  NOTE 1.625%12/1 20491ZAQ   15096 11480000 PRN  SHARED         1480000
D COMPUTER ASSOC INTL INC  NOTE 1.625%12/1 20491ZAQ      26  20000 PRN    SHARED    02     20000
D COMPTON PETE CORP             COM               20494010      27    3000 SH    SHARED             3000
D COMPUTER PROGRAMS & SYS INC   COM               20530610      11     484 SH    SHARED              484
D COMPUTER PROGRAMS & SYS INC   COM               20530610      18     800 SH    SHARED    10       800
D COMPUTER PROGRAMS & SYS INC   COM               20530610       6     265 SH    SHARED    21       265           265
D COMPUTER SCIENCES CORP        COM               20536310   43449  878296 SH    SHARED           878296
D COMPUTER SCIENCES CORP        COM               20536310    1530   30946 SH    SHARED    01     29746          1200
D COMPUTER SCIENCES CORP        COM               20536310     715   14463 SH    SHARED    02     14463
D COMPUTER SCIENCES CORP        COM               20536310       6     130 SH    SHARED    05       130
D COMPUTER SCIENCES CORP        COM               20536310      82    1660 SH    SHARED    06              1660
D COMPUTER SCIENCES CORP        COM               20536310   43700  883364 SH    SHARED    10    854564         28800
D COMPUTER SCIENCES CORP        COM               20536310     630   12752 SH    SHARED    14     12752         12752
D COMPUTER TASK GROUP INC       COM               20547710       2     415 SH    SHARED              415
```

```
D COMPUTER TASK GROUP INC        COM            20547710      8      1550 SH      SHARED    02          1550
D COMPX INTERNATIONAL INC        CL A           20563920      2       195 SH      SHARED                 195
D COMPUWARE CORP                 COM            20563810   3879    436846 SH      SHARED              331746    105100
D COMPUWARE CORP                 COM            20563810    609     68600 SH      SHARED               68600
D COMPUWARE CORP                 COM            20563810   1096    123463 SH      SHARED    02        123463
D COMPUWARE CORP                 COM            20563810  11476   1292394 SH      SHARED    10       1241594     50800
D COMSTOCK HOMEBUILDING COS IN   CL A           20564610      0      1329 SH      SHARED                1329
D COMSTOCK RES INC               COM            20576820    654     19236 SH      SHARED               19236
D COMSTOCK RES INC               COM NEW        20576820    693     20400 SH      SHARED    01        20400
D COMSTOCK RES INC               COM NEW        20576820     10       300 SH      SHARED    02          300
D COMSTOCK RES INC               COM NEW        20576820   4433    130399 SH      SHARED    10        130399
D COMSYS IT PARTNERS INC         COM            20581810    124      7870 SH      SHARED                7870
D COMSYS IT PARTNERS INC         COM            20581E10     25      1600 SH      SHARED    01         1600
D COMSYS IT PARTNERS INC         COM            20581810    564     35800 SH      SHARED    10        35800
D COMTECH GROUP INC              COM            20582120    709     44058 SH      SHARED               44058
D COMTECH TELECOMMUNICATIONS C   NOTE  2.000% 2/0 205826AD   1317    750000 PRN    SHARED              750000
D COMTECH TELECOMMUNICATIONS C   COM NEW        20582620    173      3221 SH      SHARED                3221
D COMTECH TELECOMMUNICATIONS C   COM NEW        20582620    367      6800 SH      SHARED    01         6800
D COMTECH TELECOMMUNICATIONS C   COM NEW        20582620    415      7700 SH      SHARED    10         7700
D COMTECH TELECOMMUNICATIONS C   COM NEW        20582620     70      1314 SH      SHARED    21         1314
D COMVERGE INC                   COM            20585910     22       707 SH      SHARED                        707
D COMVERGE INC                   COM            20585910     41      1329 SH      SHARED                1329
D COMVERGE INC                   COM            20585910   7862    249690 SH      SHARED    04        249690
D COMVERGE INC                   COM            20585910   8516    270448 SH      SHARED    05        270448
D COMVERGE INC                   COM            20585910    343     10909 SH      SHARED    06                 10909
D COMVERGE INC                   COM            20585910    290      9214 SH      SHARED    10         9214
D CONAGRA FOODS INC              COM            20588710  63299   2660742 SH      SHARED             2660742
D CONAGRA FOODS INC              COM            20588710   1499     63018 SH      SHARED    01        61918      1100
D CONAGRA FOODS INC              COM            20588710   9875    415114 SH      SHARED    02       415114
D CONAGRA FOODS INC              COM            20588710      8       350 SH      SHARED    05          350
D CONAGRA FOODS INC              COM            20588710    117      4960 SH      SHARED    06                  4960
D CONAGRA FOODS INC              COM            20588710   8118    341257 SH      SHARED    10       340657       600
D CONAGRA FOODS INC              COM            20588710     76      3200 SH      SHR/OTHR  10                  3200
D CONAGRA FOODS INC              COM            20588710   2134     89722 SH      SHARED    14               89722
D CONAGRA FOODS INC              COM            20588710     21       915 SH      SHARED    20          915
D CONAGRA FOODS INC              COM            20588710    195      8200 SH      SHR/OTHR  20                  8200
D CONAGRA FOODS INC              COM            20588710     51      2164 SH      SHR/OTHR  23                  2164
D CON-WAY INC                    COM            20594410    534     12873 SH      SHARED               12873
D CON-WAY INC                    COM            20594410    767     18470 SH      SHARED    01         5370     13100
D CON-WAY INC                    COM            20594410    516     12438 SH      SHARED    01        12438
D CON-WAY INC                    COM            20594410    672     16200 SH      SHARED    10        16200
D CONCEPTUS INC                  COM            20601610     52      2725 SH      SHARED    02         2725
D CONCHO RES INC                 COM            20605P10    232     11300 SH      SHARED    01        11300
D CONCHO RES INC                 COM            20605P10     57      2784 SH      SHARED    21                  2784
D CONCORD CAMERA CORP            COM NEW        20615620      0       115 SH      SHARED                 115
D CONCORD CAMERA CORP            COM NEW        20615620      0        20 SH      SHARED    02           20
D CONCUR TECHNOLOGIES INC        COM            20670810     70      1940 SH      SHARED    01         1940
D CONCUR TECHNOLOGIES INC        COM            20670810     97      2700 SH      SHARED    10         2700
D CONCURRENT COMPUTER CORP NEW   COM            20671020      1      2170 SH      SHARED                2170
D CONEXANT SYSTEMS INC           NOTE  4.000% 3/0 20714ZAH  17424  22000000 PRN    SHARED            2000000
D CONEXANT SYSTEMS INC           COM            20714210   1567   1888380 SH      SHARED             1888380
D CONEXANT SYSTEMS INC           COM            20714210     13     16773 SH      SHARED    01        16773
D CONEXANT SYSTEMS INC           COM            20714210     40     48600 SH      SHARED    10        48600
D CONGOLEUM CORP NEW             CL A           20719510      0        95 SH      SHARED                  95
D CONMED CORP                    COM            20741010    403     17467 SH      SHARED               17467
D CONMED CORP                    COM            20741010     23      1000 SH      SHARED    01         1000
D CONMED CORP                    COM            20741010     51      2250 SH      SHARED    02         2250
D CONMED CORP                    COM            20741010    600     26000 SH      SHARED    10        26000
D CONNECTICUT BK&TR CO HART NE   COM            20754610      0        93 SH      SHARED                  93
D CONNECTICUT WTR SVC INC        COM            20779710      5       215 SH      SHARED                 215
D CONNS INC                      COM            20824210   1273     74433 SH      SHARED               74433
D CONNS INC                      COM            20824210      1       110 SH      SHARED    02          110
D CONNS INC                      COM            20824210   5446    318350 SH      SHARED    10        318350
D CONOCOPHILLIPS                 COM            20825C10   3056     34610 SH      SHARED                9370     25240
D CONOCOPHILLIPS                 COM            20825C10 345088   3908142 SH      SHARED             3865082     43060
D CONOCOPHILLIPS                 COM            20825C10  27938    316404 SH      SHARED    01       260594     55810
D CONOCOPHILLIPS                 COM            20825C10    675      7655 SH      SHR/OTHR  01                  7655
D CONOCOPHILLIPS                 COM            20825C10   4258     48226 SH      SHARED    02        48226
D CONOCOPHILLIPS                 COM            20825C10   7364     83400 SH      SHARED    04        83400
D CONOCOPHILLIPS                 COM            20825C10  12116    137220 SH      SHARED    05       137220
D CONOCOPHILLIPS                 COM            20825C10  64634    731987 SH      SHARED    06                731987
D CONOCOPHILLIPS                 COM            20825C10 964630  10924472 SH      SHARED    10       0760272    164200
D CONOCOPHILLIPS                 COM            20825C10   1843     20874 SH      SHARED    14        20874
D CONOCOPHILLIPS                 COM            20825C10   1156     13100 SH      SHARED    15        13100
D CONOCOPHILLIPS                 COM            20825C10    467      5300 SH      SHARED    19         5300
D CONOCOPHILLIPS                 COM            20825C10   3189     36120 SH      SHARED    20        22015     14105
D CONOCOPHILLIPS                 COM            20825C10   1177     13338 SH      SHR/OTHR  20                 13338
D CONOCOPHILLIPS                 COM            20825C10    495      5616 SH      SHARED    21         5231       385
D CONOCOPHILLIPS                 COM            20825C10    694      7868 SH      SHR/OTHR  21                  7868
D CONOCOPHILLIPS                 COM            20825C10    695      7880 SH      SHARED    22         2700      5180
D CONOCOPHILLIPS                 COM            20825C10    376      4266 SH      SHR/OTHR  22                  4266
D CONOCOPHILLIPS                 COM            20825C10   1620     18352 SH      SHARED    23        16286      2066
D CONOCOPHILLIPS                 COM            20825C10   6372     72169 SH      SHR/OTHR  23                 72169
D CONOLOG CORP                   COM PAR.01 NEW 20825488     81       928 SH      SHARED    24          928
D CONSECO INC                    COM            20846488      0       107 SH      SHARED                 107
D CONSECO INC                    COM NEW        20846488     38      3055 SH      SHARED                3055
D CONSECO INC                    COM NEW        20846488    146     11700 SH      SHARED    01        11700
D CONSECO INC                    COM NEW        20846488     97      7725 SH      SHARED    02         7725
D CONSECO INC                    COM NEW        20846488    275     21900 SH      SHARED    10        21900
D CONSOL ENERGY INC              COM            20854P10  24691    345245 SH      SHARED              345245
D CONSOL ENERGY INC              COM            20854P10   1416     19800 SH      SHARED    01        19800
D CONSOL ENERGY INC              COM            20854P10   6990     97736 SH      SHARED    02        97736
D CONSOL ENERGY INC              COM            20854P10   8546    119500 SH      SHARED    04       119500
D CONSOL ENERGY INC              COM            20854P10    113      1580 SH      SHARED    06                  1580
D CONSOL ENERGY INC              COM            20854P10   7060     98720 SH      SHARED    10        98720
D CONSOL ENERGY INC              COM            20854P10    650      9100 SH      SHARED    14         9100
D CONSOL ENERGY INC              COM            20854P10      5        70 SH      SHARED    21                   70
D CONSOLIDATED COMM HLDGS INC    COM            20903410      0        14 SH      SHARED                  14
D CONSOLIDATED COMM HLDGS INC    COM            20903410      7       400 SH      SHARED    10          400
D CONSOLIDATED EDISON INC        COM            20911510  76758   1571313 SH      SHARED             1571313
D CONSOLIDATED EDISON INC        COM            20911510   1952     39963 SH      SHARED    01        30843      9120
D CONSOLIDATED EDISON INC        COM            20911510    197      4039 SH      SHARED    02         4039
D CONSOLIDATED EDISON INC        COM            20911510      5       120 SH      SHARED    05          120
D CONSOLIDATED EDISON INC        COM            20911510    161      3300 SH      SHARED    06                  3300
D CONSOLIDATED EDISON INC        COM            20911510   7184    147073 SH      SHARED    10       147073
D CONSOLIDATED EDISON INC        COM            20911510     14       300 SH      SHARED    20          300
D CONSOLIDATED EDISON INC        COM            20911510     12       250 SH      SHR/OTHR  20                   250
D CONSOLIDATED EDISON INC        COM            20911510     14       304 SH      SHR/OTHR  22                   304
D CONSOLIDATED EDISON INC        COM            20911510    195      4000 SH      SHARED    23         4000
D CONSOLIDATED EDISON INC        COM            20911510     48      1000 SH      SHR/OTHR  23                  1000
D CONSOLIDATED GRAPHICS INC      COM            20934110    140      2931 SH      SHARED                2931
D CONSOLIDATED GRAPHICS INC      COM            20934110     28       600 SH      SHARED    01          600
D CONSOLIDATED GRAPHICS INC      COM            20934110    345      7220 SH      SHARED    02         7220
D CONSOLIDATED GRAPHICS INC      COM            20934110    650     13600 SH      SHARED    10        13600
```

```
D CONSOLIDATED TOMOKA LD CO    COM                21022610        0       10 SH   SHARED              10
D CONSTELLATION BRANDS INC     CL A               21036P10       70     3000 SH   SHARED            3000
D CONSTELLATION BRANDS INC     CL A               21036P10    13074   553071 SH   SHARED          553071
D CONSTELLATION BRANDS INC     CL A               21036P10      503    21300 SH   SHARED    01     21000      300
D CONSTELLATION BRANDS INC     CL A               21036P10     1020    43153 SH   SHARED    02     43153
D CONSTELLATION BRANDS INC     CL A               21036P10      354    15000 SH   SHARED    04     15000
D CONSTELLATION BRANDS INC     CL A               21036P10       60     2550 SH   SHARED    06               2550
D CONSTELLATION BRANDS INC     CL A               21036P10     2326    98400 SH   SHARED    10     98400
D CONSTELLATION BRANDS INC     CL A               21036P10      141     6000 SH   SHR/OTHR  23               6000
D CONSTELLATION BRANDS INC     CL B               21036P20        0       24 SH   SHARED    02        24
D CONSTAR INTL INC NEW         COM                21036010        5     1288 SH   SHARED            1288
D CONSTAR INTL INC NEW         COM                21036010        4     1100 SH   SHARED    02      1100
D CONSTELLATION ENERGY GROUP I COM                21037110   115082  1122428 SH   SHARED         1119728     2700
D CONSTELLATION ENERGY GROUP I COM                21037110     3090    30147 SH   SHARED    01     29947      200
D CONSTELLATION ENERGY GROUP I COM                21037110    16077   156812 SH   SHARED    02    156812
D CONSTELLATION ENERGY GROUP I COM                21037110        8       80 SH   SHARED    05        80
D CONSTELLATION ENERGY GROUP I COM                21037110     1319    12867 SH   SHARED    06              12867
D CONSTELLATION ENERGY GROUP I COM                21037110    25898   252597 SH   SHARED    10    252597
D CONSTELLATION ENERGY GROUP I COM                21037110      308     3013 SH   SHARED    14               3013
D CONSTELLATION ENERGY GROUP I COM                21037110      307     3000 SH   SHARED    23      3000
D CONSTELLATION ENERGY PRTNR L COM UNIT LLC B     21038B10      216     6700 SH   SHARED    02      6700
D CONSULIER ENGR INC           COM PAR $0.01      21044630        0       18 SH   SHARED              18
D CONSUMER PORTFOLIO SVCS INC  COM                21045010        1      350 SH   SHARED             350
D CONTANGO OIL & GAS COMPANY   COM NEW            21075N20        0        6 SH   SHARED               6
D CONTANGO OIL & GAS COMPANY   COM NEW            21075N20       77     1525 SH   SHARED    01      1525
D CONTINENTAL AIRLS INC        NOTE  5.000% 6/1   210795PJ     2952  2250000 PRN  SHARED         2250000
D CONTINENTAL AIRLS INC        CL B               21079S30     2159    97076 SH   SHARED           97076
D CONTINENTAL AIRLS INC        CL B               21079S30      751    33765 SH   SHARED    01     33765
D CONTINENTAL AIRLS INC        CL B               21079S30        8      400 SH   SHARED    02       400
D CONTINENTAL AIRLS INC        CL B               21079S30    28377  1275400 SH   SHARED    10   1256700    18700
D CONVERA CORP                 CL A               21191910        2      769 SH   SHARED             769
D CONVERA CORP                 CL A               21191910        3     1275 SH   SHARED    02      1275
D CONTINENTAL RESOURCES INC    COM                21201510      244     9361 SH   SHARED            9361
D CONTINENTAL RESOURCES INC    COM                21201510        7      300 SH   SHARED    10       300
D CONTINENTAL RESOURCES INC    COM                21201510       57     2210 SH   SHARED    21               2210
D CONTINUCARE CORP             COM                21217210        2     1090 SH   SHARED            1090
D CONVERGYS CORP               COM                21248510     2349   142770 SH   SHARED          142770
D CONVERGYS CORP               COM                21248510      210    12800 SH   SHARED    01     12800
D CONVERGYS CORP               COM                21248510     1499    91116 SH   SHARED    02     91116
D CONVERGYS CORP               COM                21248510      912    55459 SH   SHARED    10     55459
D CONVERGYS CORP               COM                21248510       68     4166 SH   SHARED    14               4166
D CONVERSION SERVICES INTL INC COM NEW            21254820        0      994 SH   SHARED             994
D COOPER CAMERON CORP          DBCV  1.500% 5/1   21668AE      7035  2517000 PRN  SHARED    02   2517000
D COOPER COS INC               DBCV  2.625% 7/0   21664AG     10326 10075000 PRN  SHARED    07  10075000
D COOPER COS INC               COM NEW            21664840     1044    27490 SH   SHARED           27490
D COOPER COS INC               COM NEW            21664840      100     2648 SH   SHARED    02      2648
D COOPER COS INC               COM NEW            21664840      570    15000 SH   SHARED    04     15000
D COOPER COS INC               COM NEW            21664840    15048   396000 SH   SHARED    10    396000
D COOPER TIRE & RUBR CO        COM                21683110     1324    79892 SH   SHARED           79892
D COOPER TIRE & RUBR CO        COM                21683110      202    12194 SH   SHARED    01     12194
D COOPER TIRE & RUBR CO        COM                21683110      180    10900 SH   SHARED    02     10900
D COOPER TIRE & RUBR CO        COM                21683110     8784   529800 SH   SHARED    10    529800
D COOPERATIVE BANKSHARES INC   COM                21684410        1      142 SH   SHARED             142
D COPANO ENERGY L L C          COM UNITS          21720210       62     1713 SH   SHARED            1713
D COPART INC                   COM                21720410      387     9114 SH   SHARED            9114
D COPART INC                   COM                21720410     1259    29600 SH   SHARED    01      7800    21800
D COPART INC                   COM                21720410      154     3632 SH   SHARED    02      3632
D COPART INC                   COM                21720410      144     3400 SH   SHARED    10      3400
D COPART INC                   COM                21720410        3       85 SH   SHARED    21                 85
D ORCEPT THERAPEUTICS INC      COM                21835210        1      586 SH   SHARED             586
D CORE LABORATORIES LP         NOTE  0.250%10/3   21868FAB     7115  5000000 PRN  SHARED         5000000
D CORE MARK HOLDING CO INC     COM                21868110     1026    35751 SH   SHARED           35751
D CORE MARK HOLDING CO INC     COM                21868110      275     9600 SH   SHARED    10      9600
D CORE MOLDING TECHNOLOGIES IN COM                21868310        0       64 SH   SHARED              64
D CORINTHIAN COLLEGES INC      COM                21886B02     2722   176815 SH   SHARED          176815
D CORINTHIAN COLLEGES INC      COM                21886B02      421    27345 SH   SHARED    01      3545    23800
D CORINTHIAN COLLEGES INC      COM                21886B02      249    16217 SH   SHARED    02     16217
D CORINTHIAN COLLEGES INC      COM                21886B02      924    60000 SH   SHARED    04     60000
D CORINTHIAN COLLEGES INC      COM                21886B02      120     7813 SH   SHARED    10      7813
D CORN PRODS INTL INC          COM                21902310    43201  1175541 SH   SHARED          925641   249900
D CORN PRODS INTL INC          COM                21902310     2217    60350 SH   SHARED    01     41850    18500
D CORN PRODS INTL INC          COM                21902310      130     3546 SH   SHARED    02      3546
D CORN PRODS INTL INC          COM                21902310    36966  1005881 SH   SHARED    10    859481   146400
D CORN PRODS INTL INC          COM                21902310      231     6300 SH   SHARED    15      6300
D CORN PRODS INTL INC          COM                21902310       43     1181 SH   SHARED    21      1181
D CORN PRODS INTL INC          COM                21902310      426    11600 SH   SHR/OTHR  23              11600
D CORN PRODS INTL INC          COM                21902310      516    14050 SH   SHARED    24     14050
D CORNING INC                  COM                21935010        7      300 SH   SHARED             300
D CORNING INC                  COM                21935010   109879  4580213 SH   SHARED         4579613      600
D CORNING INC                  COM                21935010     7032   293162 SH   SHARED    01    273466    19696
D CORNING INC                  COM                21935010     4004   166931 SH   SHARED    02    166931
D CORNING INC                  COM                21935010    49870  2078809 SH   SHARED    04   2078809
D CORNING INC                  COM                21935010       15      650 SH   SHARED    05       650
D CORNING INC                  COM                21935010    17259   719450 SH   SHARED    06             719450
D CORNING INC                  COM                21935010    18712   779997 SH   SHARED    10    779997
D CORNING INC                  COM                21935010     1915    79852 SH   SHARED    14     17900    61952
D CORNING INC                  COM                21935010     4107   171200 SH   SHARED    15    171200
D CORNING INC                  COM                21935010     3732   155577 SH   SHARED    16    155577
D CORNING INC                  COM                21935010      273    11400 SH   SHARED    19     11400
D CORNING INC                  COM                21935010       43     1800 SH   SHR/OTHR  20               1800
D CORNING INC                  COM                21935010       86     3585 SH   SHARED    21      3585
D CORNING INC                  COM                21935010       71     3000 SH   SHARED    22               3000
D CORNING INC                  COM                21935010      477    19900 SH   SHARED    23              19900
D CORNING INC                  COM                21935010      975    40650 SH   SHR/OTHR  23              40650
D CORPBANCA                    SP ADR REG S       21987A20       14      400 SH   SHARED             400
D CORPORATE EXECUTIVE BRD CO   COM                21988M10     1198    19941 SH   SHARED           19941
D CORPORATE EXECUTIVE BRD CO   COM                21988M10      868    14450 SH   SHARED    01      5650     8800
D CORPORATE EXECUTIVE BRD CO   COM                21988M10      142     2379 SH   SHARED    02      2379
D CORPORATE EXECUTIVE BRD CO   COM                21988M10      643    10713 SH   SHARED    10     10713
D CORPORATE OFFICE PPTYS TR    SH BEN INT         22002710      164     5217 SH   SHARED            5217
D CORPORATE OFFICE PPTYS TR    SH BEN INT         22002710      139     4420 SH   SHARED    01      4420
D CORPORATE OFFICE PPTYS TR    SH BEN INT         22002710     1578    50100 SH   SHARED    10     50100
D CORRECTIONS CORP AMER NEW    COM NEW            22025Y40      110     3742 SH   SHARED            3742
D CORRECTIONS CORP AMER NEW    COM NEW            22025Y40      177     6000 SH   SHARED    02      6000
D CORRECTIONS CORP AMER NEW    COM NEW            22025Y40    10639   360542 SH   SHARED    10    360542
D CORRECTIONS CORP AMER NEW    COM NEW            22025Y40      770    26100 SH   SHARED    14              26100
D CORRECTIONS CORP AMER NEW    COM NEW            22025Y40        8      304 SH   SHARED    21                304
D CORTEX PHARMACEUTICALS INC   COM NEW            22052430        0     1226 SH   SHARED            1226
D CORUS BANKSHARES INC         COM                22087310      842    78986 SH   SHARED           78986
D CORUS BANKSHARES INC         COM                22087310      123    11600 SH   SHARED    01     11600
D CORUS BANKSHARES INC         COM                22087310     1874   175700 SH   SHARED    10    175700
D CORUS BANKSHARES INC         COM                22087310       20     1961 SH   SHARED    21      1961
D CORUS ENTERTAINMENT INC      COM CL B NON VTG   22100610       11      227 SH   SHARED             227
D CORVEL CORP                  COM                22100610      124     5416 SH   SHARED            5416
```

```
D CORVEL CORP                    COM                 22100610      31    1350 SH      SHARED     01           1350
D CORVEL CORP                    COM                 22100610     722   31400 SH      SHARED     10          31400
D COSI INC                       COM                 22122P10       2     924 SH      SHARED                   924
D COST PLUS INC CALIF            COM                 22148510    4964 1143944 SH      SHARED              1143944
D COSTCO WHSL CORP NEW           COM                 22160K10   43337  621230 SH      SHARED               607630          13600
D COSTCO WHSL CORP NEW           COM                 22160K10    4712   67551 SH      SHARED     01          55251          12300
D COSTCO WHSL CORP NEW           COM                 22160K10     371    5325 SH      SHR/OTHR   01                          5325
D COSTCO WHSL CORP NEW           COM                 22160K10    1598   22911 SH      SHARED     02          22911
D COSTCO WHSL CORP NEW           COM                 22160K10      13     200 SH      SHARED     05            200
D COSTCO WHSL CORP NEW           COM                 22160K10     298    4280 SH      SHARED     06                          4280
D COSTCO WHSL CORP NEW           COM                 22160K10   64270  921308 SH      SHARED     10         919978          1330
D COSTCO WHSL CORP NEW           COM                 22160K10     930   13344 SH      SHARED     16          13344
D COSTCO WHSL CORP NEW           COM                 22160K10     766   10990 SH      SHARED     20           6105          4885
D COSTCO WHSL CORP NEW           COM                 22160K10    1123   16100 SH      SHR/OTHR   20                         16100
D COSTCO WHSL CORP NEW           COM                 22160K10     177     250 SH      SHR/OTHR   21                           250
D COSTCO WHSL CORP NEW           COM                 22160K10      55     800 SH      SHARED     22            400            400
D COSTCO WHSL CORP NEW           COM                 22160K10      45     659 SH      SHR/OTHR   22                           659
D COSTCO WHSL CORP NEW           COM                 22160K10     103    1480 SH      SHARED     23           1000            480
D COSTCO WHSL CORP NEW           COM                 22160K10     669    9600 SH      SHR/OTHR   23                          9600
D COSTAR GROUP INC               COM                 2/1          246    5209 SH      SHARED                  5209
D COSTAR GROUP INC               COM                 2/1           30     650 SH      SHARED     01            650
D COSTCO COMPANIES INC           NOTE     8/1     22160QAC        522  330000 PRN     SHARED             0 330000
D COTT CORP QUE                  COM                 22163N10       9    1411 SH      SHARED                  1411
D COTT CORP QUE                  COM                 22163N10     281   42334 SH      SHARED     02          42334
D COTT CORP QUE                  COM                 22163N10      11    1800 SH      SHARED     14                          1800
D COUGAR BIOTECHNOLOGY INC       COM                 22208310      12     374 SH      SHARED                   374
D COUNTRYWIDE FINANCIAL CORP     DBCV     4/1     222372AN       792 1017000 PRN     SHARED              1017000
D COUNTRYWIDE FINANCIAL CORP     DBCV     5/1     222372AP      7654 10500000 PRN    SHARED              0500000
D COUNTRYWIDE FINANCIAL CORP     COM                 22237210   12526 1401124 SH     SHARED              1401124
D COUNTRYWIDE FINANCIAL CORP     COM                 22237210     525   58800 SH      SHARED     01          58800
D COUNTRYWIDE FINANCIAL CORP     COM                 22237210    4950  553739 SH      SHARED     02         553739
D COUNTRYWIDE FINANCIAL CORP     COM                 22237210       2     308 SH      SHARED     05            308
D COUNTRYWIDE FINANCIAL CORP     COM                 22237210      37    4230 SH      SHARED     06                          4230
D COUNTRYWIDE FINANCIAL CORP     COM                 22237210    4839  541382 SH      SHARED     10         541382
D COUNTRYWIDE FINANCIAL CORP     COM                 22237210     777   87017 SH      SHARED     14                         87017
D COUNTRYWIDE FINANCIAL CORP     COM                 22237210      86    9680 SH      SHARED     21           9680
D COURIER CORP                   COM                 22266010       2      83 SH      SHARED                    83
D COURIER CORP                   COM                 22266010     148    4500 SH      SHARED     10           4500
D COUSINS PPTYS INC              COM                 22279510     204    9232 SH      SHARED                  9232
D COUSINS PPTYS INC              COM                 22279510    1092   49432 SH      SHARED     01          33550         15882
D COUSINS PPTYS INC              COM                 22279510     663   30000 SH      SHR/OTHR   01                         30000
D COUSINS PPTYS INC              COM                 22279510      70    3168 SH      SHARED     02           3168
D COUSINS PPTYS INC              COM                 22279510     623   28200 SH      SHARED     10          28200
D COVAD COMMUNICATIONS GROUP I   DBCV  3.000% 3/1 22281AR      1363 1432000 PRN     SHARED              1432000
D COVAD COMMUNICATIONS GROUP I   COM                 22281420      16   19235 SH      SHARED                 19235
D COVAD COMMUNICATIONS GROUP I   COM                 22281420       4    5701 SH      SHARED     02           5701
D COVANCE INC                    COM                 22281610     152    1761 SH      SHARED                  1761
D COVANCE INC                    COM                 22281610    5025   58020 SH      SHARED                 58020
D COVANCE INC                    COM                 22281610    1723   19902 SH      SHARED     01           1102         18800
D COVANCE INC                    COM                 22281610     277    3200 SH      SHARED     02           3200
D COVANCE INC                    COM                 22281610    9528  110000 SH      SHARED     05         110000
D COVANCE INC                    COM                 22281610      69     800 SH      SHARED     06                           800
D COVANCE INC                    COM                 22281610   29988  346213 SH      SHARED     10         346213
D COVANCE INC                    COM                 22281610       3      40 SH      SHARED     21                            40
D COVANCE INC                    COM                 22281610      69     800 SH      SHR/OTHR   23                           800
D COVANTA HLDG CORP              COM                 22282E10      26     943 SH      SHARED                   943
D COVANTA HLDG CORP              COM                 22282E10    1827   66056 SH      SHARED                 66056
D COVANTA HLDG CORP              COM                 22282E10     671   24285 SH      SHARED     01          24085            200
D COVANTA HLDG CORP              COM                 22282E10      11     425 SH      SHARED     02            425
D COVANTA HLDG CORP              COM                 22282E10   27689 1001068 SH      SHARED     04        1001068
D COVANTA HLDG CORP              COM                 22282E10   24602  889452 SH      SHARED     05         889452
D COVANTA HLDG CORP              COM                 22282E10     637   23043 SH      SHARED     06                         23043
D COVANTA HLDG CORP              COM                 22282E10    1393   50363 SH      SHARED     10          50363
D COVANTA HLDG CORP              COM                 22282E10       5     200 SH      SHR/OTHR   23            200            200
D COVENANT TRANSN GROUP INC      CL A                22284P10     941  140167 SH      SHARED                140167
D COVENANT TRANSN GROUP INC      CL A                22284P10       2     425 SH      SHARED     02            425
D COVENTRY HEALTH CARE INC       COM                 22286210   46240  780425 SH      SHARED                780425
D COVENTRY HEALTH CARE INC       COM                 22286210    1419   23950 SH      SHARED     01          23950
D COVENTRY HEALTH CARE INC       COM                 22286210    1865   31484 SH      SHARED     02          31484
D COVENTRY HEALTH CARE INC       COM                 22286210    2162   36500 SH      SHARED     04          36500
D COVENTRY HEALTH CARE INC       COM                 22286210      86    1465 SH      SHARED     06                          1465
D COVENTRY HEALTH CARE INC       COM                 22286210   40452  682743 SH      SHARED     10         682743
D COVENTRY HEALTH CARE INC       COM                 22286210     248    4197 SH      SHARED     14           1300          2897
D COVENTRY HEALTH CARE INC       COM                 22286210     252    4265 SH      SHARED     21           4265
D COWEN GROUP INC                COM                 22362110     808   85000 SH      SHR/OTHR   10          85000
D COWLITZ BANCORP LONGVIEW WAS   COM                 22376710       1     110 SH      SHARED                   110
D COX RADIO INC                  CL A                22405110       9     820 SH      SHARED                   820
D COX RADIO INC                  CL A                22405110      15    1250 SH      SHARED     02           1250
D CRAFTMADE INTL INC             COM                 22413810       7     853 SH      SHARED                   853
D CRANE CO                       COM                 22439910     888   20706 SH      SHARED                 20706
D CRANE CO                       COM                 22439910     771   17995 SH      SHARED     01                         15600
D CRANE CO                       COM                 22439910    1168   27240 SH      SHARED     02          18320          8920
D CRANE CO                       COM                 22439910     694   16194 SH      SHARED     10          13594          2600
D CRAWFORD & CO                  CL B                22463310       7    1794 SH      SHARED     02           1794
D CREDIT SUISSE ASSET MGMT INC   COM                 22491610     383  107010 SH      SHARED                107010
D CRAY INC                       COM NEW             22522330      22    3683 SH      SHARED                  3683
D CREDENCE SYS CORP              NOTE  1.500% 5/1 22530QAF      1087 1150000 PRN     SHARED              1150000
D CREDENCE SYS CORP              COM                 22530210   13702 5661988 SH      SHARED              5661988
D CREDENCE SYS CORP              COM                 22530210     102   42300 SH      SHARED     10          42300
D CREDIT SUISSE GROUP            SPONSORED ADR       22540110    1880   31291 SH      SHARED                 31291
D CREDIT SUISSE GROUP            SPONSORED ADR       22540110      21     350 SH      SHARED     01            350            350
D CREDIT SUISSE GROUP            SPONSORED ADR       22540110      44     740 SH      SHARED     21            740
D CREDO PETE CORP                COM PAR $0.10       22543920       4     471 SH      SHARED                   471
D CREDIT SUISSE HIGH YLD BND F   SH BEN INT          22544F10     584  176010 SH      SHARED                176010
D CREE INC                       COM                 22544710      28    1037 SH      SHARED                  1037          1037
D CREE INC                       COM                 22544710    7933  288824 SH      SHARED                288824
D CREE INC                       COM                 22544710     730   26600 SH      SHARED     01                         26600
D CREE INC                       COM                 22544710     251    9139 SH      SHARED     02           9139
D CREE INC                       COM                 22544710    7245  263778 SH      SHARED     04         263778
D CREE INC                       COM                 22544710    6515  237191 SH      SHARED     05         237191
D CREE INC                       COM                 22544710     289   10525 SH      SHARED     06                         10525
D CREE INC                       COM                 22544710     383   13943 SH      SHARED     10          13943
D CREE INC                       COM                 22544710      50    1832 SH      SHARED     21           1832
D CRESCENT FINL CORP             COM                 22574710       2     239 SH      SHARED                   239
D CRESUD S A C I F Y A           SPONSORED ADR       22640610     258   13000 SH      SHARED                 13000         13000
D CRESUD S A C I F Y A           SPONSORED ADR       22640610   16544  831373 SH      SHARED                831373
D CRESUD S A C I F Y A           SPONSORED ADR       22640610    9370  470860 SH      SHARED     01         470860
D CRESUD S A C I F Y A           SPONSORED ADR       22640610     636   32000 SH      SHARED     02          32000
D CRESUD S A C I F Y A           SPONSORED ADR       22640610    5014  252000 SH      SHARED     04         252000
D CRESUD S A C I F Y A           SPONSORED ADR       22640610    1990  100000 SH      SHARED     05         100000
D CRESUD S A C I F Y A           SPONSORED ADR       22640610     796   40000 SH      SHARED     06                         40000
D CRESUD S A C I F Y A           SPONSORED ADR       22640610     694   34900 SH      SHARED     10          34900
D CRITICAL THERAPEUTICS INC      COM                 22674710      12    9500 SH      SHARED                  9500
D CRITICARE SYS INC              COM                 22690110       0     286 SH      SHARED                   286
```

```
D CROCS INC                        COM                22704610    3725   101205 SH    SHARED            101205
D CROCS INC                        COM                22704610      81     2225 SH    SHARED    01        2225
D CROCS INC                        COM                22704610      39     1071 SH    SHARED    02        1071
D CROCS INC                        COM                22704610     552    15000 SH    SHARED    04       15000
D CROCS INC                        COM                22704610   14970   406700 SH    SHARED    10      406700
D CROSS A T CO                     CL A               22747810       1      191 SH    SHARED              191
D CROSS CTRY HEALTHCARE INC        COM                22748310      32     2303 SH    SHARED             2303
D CROSS CTRY HEALTHCARE INC        COM                22748310      58     4095 SH    SHARED    01        4095
D CROSS CTRY HEALTHCARE INC        COM                22748310     150    10600 SH    SHARED    02       10600
D CROSS CTRY HEALTHCARE INC        COM                22748310     112     7900 SH    SHARED    10        7900
D CROSS TIMBERS RTY TR             TR UNIT            22757810       6      156 SH    SHARED              156
D CROSSTEX ENERGY L P              COM                22765010      14      477 SH    SHARED              477
D CROSSTEX ENERGY INC              COM                22765Y10       8      235 SH    SHARED              235
D CROSSTEX ENERGY INC              COM                22765Y10      41     1109 SH    SHARED    10        1109
D CROWN CASTLE INTL CORP           COM                22822710  902771  2169985 SH    SHARED          2169985
D CROWN CASTLE INTL CORP           COM                22822710     357     8602 SH    SHARED    01        8590          12
D CROWN CASTLE INTL CORP           COM                22822710   20184   485202 SH    SHARED    02      485202
D CROWN CASTLE INTL CORP           COM                22822710    2496    60000 SH    SHARED    04       60000
D CROWN CASTLE INTL CORP           COM                22822710      91     2210 SH    SHARED    06        2210
D CROWN CASTLE INTL CORP           COM                22822710    7065   169840 SH    SHARED    10      169840
D CROWN CASTLE INTL CORP           COM                22822710      31      750 SH    SHARED    23         750
D CROWN CASTLE INTL CORP           COM                22822710      31      750 SH    SHR/OTHR  23                    750
D CROWN CRAFTS INC                 COM                22830910       0      222 SH    SHARED              222
D CROWN CRAFTS INC                 COM                22830910     520   145805 SH    SHR/OTHR  01                 145805
D CROWN HOLDINGS INC               COM                22836810    5371   209402 SH    SHARED           209402
D CROWN HOLDINGS INC               COM                22836810     318    12400 SH    SHARED    01       12400
D CROWN HOLDINGS INC               COM                22836810    1056    41200 SH    SHARED    02       41200
D CROWN HOLDINGS INC               COM                22836810     348    13597 SH    SHARED    10       13597
D CROWN HOLDINGS INC               COM                22836810      12      490 SH    SHARED    21         490          490
D CROWN MEDIA HLDGS INC            CL A               22841110       0        6 SH    SHARED                6
D CROWN MEDIA HLDGS INC            CL A               22841110      15     2450 SH    SHARED    02        2450
D CRUCELL N V                      SPONSORED ADR      22876910      13      800 SH    SHARED              800
D CRYOLIFE INC                     COM                22890310     252    31707 SH    SHARED            31707
D CRYOCOR INC                      COM                22901610       0      170 SH    SHARED              170
D CRYSTAL RIV CAP INC              COM                22939330       0       49 SH    SHARED               49
D CRYSTAL RIV CAP INC              COM                22939330      83     5800 SH    SHARED    10        5800
D CRYSTALLEX INTL CORP             COM                22942P10     106    46500 SH    SHARED            46500
D CTRIP COM INTL LTD               ADR                22943H710    114     2000 SH    SHARED             2000         2000
D CTRIP COM INTL LTD               ADR                22943H710   23768   413587 SH    SHARED           413587
D CTRIP COM INTL LTD               ADR                22943H710     388     6752 SH    SHARED    02        6752
D CTRIP COM INTL LTD               ADR                22943H710   23562   410000 SH    SHARED    04      410000
D CTRIP COM INTL LTD               ADR                22943H710    3045    53000 SH    SHARED    06       53000        53000
D CUBIC CORP                       COM                22966910     411    10493 SH    SHARED            10493
D CUBIC CORP                       COM                22966910     444    11350 SH    SHARED    01       10650          700
D CUBIC CORP                       COM                22966910     246     6300 SH    SHARED    02        6300
D CUBIC CORP                       COM                22966910    1764    45000 SH    SHARED    10       45000
D CUBIC CORP                       COM                22966910     156     4000 SH    SHR/OTHR  23                   4000
D CUBIST PHARMACEUTICALS INC       NOTE  2.250% 6/1   229678AC     961  1011000 PRN   SHARED          1011000
D CUBIST PHARMACEUTICALS INC       NOTE  2.250% 6/1   229678AC    1426  1500000 PRN   SHARED    02     1500000
D CUBIST PHARMACEUTICALS INC       COM                22967810    1890    92168 SH    SHARED            92168
D CUBIST PHARMACEUTICALS INC       COM                22967810     785    38295 SH    SHARED    01       38295
D CUBIST PHARMACEUTICALS INC       COM                22967810    9262   451612 SH    SHARED    04      451612
D CUBIST PHARMACEUTICALS INC       COM                22967810    6840   333500 SH    SHARED    10      333500
D CULLEN FROST BANKERS INC         COM                22989910    2134    42143 SH    SHARED            42143
D CULLEN FROST BANKERS INC         COM                22989910    1084    21400 SH    SHARED    01         100        21300
D CULLEN FROST BANKERS INC         COM                22989910     322     6372 SH    SHARED    02        6372
D CULLEN FROST BANKERS INC         COM                22989910     319     6300 SH    SHARED    10        6300
D CULLEN FROST BANKERS INC         COM                22989910      46      923 SH    SHARED    21         923          923
D CUISINE SOLUTIONS INC            COM                22990410       0      173 SH    SHARED              173
D CULP INC                         COM                23021510       3      488 SH    SHARED              488
D CUMMINS INC                      COM                23102110      51      406 SH    SHARED              406          406
D CUMMINS INC                      COM                23102110   13307   104482 SH    SHARED           104482
D CUMMINS INC                      COM                23102110    1668    13100 SH    SHARED    01       13100
D CUMMINS INC                      COM                23102110    1023     8035 SH    SHARED    02        8035
D CUMMINS INC                      COM                23102110   22796   178980 SH    SHARED    04      178980
D CUMMINS INC                      COM                23102110   24406   191622 SH    SHARED    05      191622
D CUMMINS INC                      COM                23102110     980     7697 SH    SHARED    06        7697         7697
D CUMMINS INC                      COM                23102110   11662    91561 SH    SHARED    10       91561
D CUMMINS INC                      COM                23102110     407     3200 SH    SHARED    14        3200         3200
D CUMMINS INC                      COM                23102110      25      200 SH    SHARED    22         200
D CUMMINS INC                      COM                23102110     203     1600 SH    SHR/OTHR  23        1600         1600
D CUMULUS MEDIA INC                CL A               23108210     523    65146 SH    SHARED            65146
D CUMULUS MEDIA INC                CL A               23108210      17     2145 SH    SHARED    01        2145
D CUMULUS MEDIA INC                CL A               23108210      63     7935 SH    SHARED    02        7935
D CURAGEN CORP                     COM                23126810      25    27415 SH    SHARED            27415
D CURIS INC                        COM                23126910       1     1647 SH    SHARED             1647
D CURRENCYSHS JAPANESE YEN TR      JAPANESE YEN       23130A10       1       17 SH    SHARED               17
D CURRENCYSHS JAPANESE YEN TR      JAPANESE YEN       23130A10       3       35 SH    SHARED    21          35           35
D CURRENCY SHARES EURO TR          EURO SHS           23130C10       4       30 SH    SHARED    01          30
D CURTISS WRIGHT CORP              COM                23156110     819    16334 SH    SHARED            16334
D CURTISS WRIGHT CORP              COM                23156110      80     1600 SH    SHARED    01        1600
D CURTISS WRIGHT CORP              COM                23156110     376     7500 SH    SHARED    02        7500
D CURTISS WRIGHT CORP              COM                23156110   11673   232532 SH    SHARED    10      232532
D CUTERA INC                       COM                23210910     344    21928 SH    SHARED            21928
D CUTERA INC                       COM                23210910      29     1900 SH    SHARED    01        1900
D CUTERA INC                       COM                23210910     595    37900 SH    SHARED    10       37900
D CYANOTECH CORP                   COM PAR $0.02      23243730       0      117 SH    SHARED              117
D CYBERSOURCE CORP                 COM                23251J10    1777     9982 SH    SHARED             9982
D CYBERSOURCE CORP                 COM                23251J10     241    13597 SH    SHARED    02       13597
D CYBERSOURCE CORP                 COM                23251J10   17743   998500 SH    SHARED    10      998500
D CYBERONICS INC                   COM                23251P10      32     2492 SH    SHARED             2492
D CYBERONICS INC                   COM                23251P10      51     3925 SH    SHARED    02        3925
D CYBERONICS INC                   COM                23251P10    1052    80000 SH    SHARED    15       80000        80000
D CYBEROPTICS CORP                 COM                23251710       7      595 SH    SHARED              595
D CYBEX INTL INC                   COM                23252810       1      288 SH    SHARED              288
D CYCLACEL PHARMACEUTICALS INC     COM                23254L10      28     5157 SH    SHARED             5157
D CYCLACEL PHARMACEUTICALS INC     PFD CONV EX 6%     23254L20    1218   256598 SH    SHARED           256598
D CYGNE DESIGNS INC                COM                23255610       0      356 SH    SHARED              356
D CYMER INC                        COM                23257210    3308    84996 SH    SHARED            84996
D CYMER INC                        COM                23257210     358     9200 SH    SHARED    01        9200
D CYMER INC                        COM                23257210    3298    84725 SH    SHARED    02       84725
D CYMER INC                        COM                23257210    2859    73459 SH    SHARED    10       73459
D CYNOSURE INC                     CL A               23257720     119     4517 SH    SHARED             4517
D CYNOSURE INC                     CL A               23257720      23      900 SH    SHARED    01         900
D CYNOSURE INC                     CL A               23257720      78     2950 SH    SHARED    04        2950
D CYNOSURE INC                     CL A               23257720     481    18200 SH    SHARED    10       18200
D CYPRESS BIOSCIENCES INC          COM PAR $.02       23267450     163    14816 SH    SHARED            14816
D CYPRESS BIOSCIENCES INC          COM PAR $.02       23267450      63     5745 SH    SHARED    01        5745
D CYPRESS BIOSCIENCES INC          COM PAR $.02       23267450      41     3725 SH    SHARED    02        3725
D CYPRESS BIOSCIENCES INC          COM PAR $.02       23267450    1988   180271 SH    SHARED    04      180271
D CYPRESS BIOSCIENCES INC          COM PAR $.02       23267450     545    49500 SH    SHARED    10       49500        49500
D CYPRESS SEMICONDUCTOR CORP       NOTE  1.000% 9/1   232806AK    8035  5000000 PRN   SHARED          5000000
D CYPRESS SEMICONDUCTOR CORP       COM                23280610   48995  1359859 SH    SHARED          1359859
D CYPRESS SEMICONDUCTOR CORP       COM                23280610    1816    50420 SH    SHARED    01        2820        47600
```

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | CYPRESS SEMICONDUCTOR CORP | COM | | 23280610 | 271 | 7541 SH | SHARED | 02 | 7541 |
| D | CYPRESS SEMICONDUCTOR CORP | COM | | 23280610 | 720 | 20000 SH | SHARED | 04 | 20000 |
| D | CYPRESS SEMICONDUCTOR CORP | COM | | 23280610 | 1144 | 31763 SH | SHARED | 10 | 31763 |
| D | CYTOKINETICS INC | COM | | 23282W10 | 0 | 112 SH | SHARED | | 112 |
| D | CYTOKINETICS INC | COM | | 23282W10 | 52 | 11100 SH | SHARED | 01 | 11100 |
| D | CYTEC INDS INC | COM | | 23282010 | 10530 | 170999 SH | SHARED | | 170999 |
| D | CYTEC INDS INC | COM | | 23282010 | 1520 | 24693 SH | SHARED | 01 | 3193 | 21500 |
| D | CYTEC INDS INC | COM | | 23282010 | 1865 | 30292 SH | SHARED | 02 | 30292 |
| D | CYTEC INDS INC | COM | | 23282010 | 1046 | 17000 SH | SHARED | 06 | 17000 |
| D | CYTEC INDS INC | COM | | 23282010 | 498 | 8100 SH | SHARED | 10 | 8100 |
| D | CYTEC INDS INC | COM | | 23282010 | 1046 | 17000 SH | SHARED | 14 | 17000 |
| D | CYTEC INDS INC | COM | | 23282010 | 33 | 551 SH | SHARED | 21 | 551 |
| D | CYTOGEN CORP | COM NEW | | 23282430 | 0 | 926 SH | SHARED | | 926 |
| D | CYTOMEDIX INC | COM NEW | | 23283B20 | 1 | 689 SH | SHARED | | 689 |
| D | CYTORI THERAPEUTICS INC | COM | | 23283K10 | 15 | 2536 SH | SHARED | | 2536 |
| D | D & E COMMUNICATIONS INC | COM | | 23286010 | 8 | 556 SH | SHARED | | 556 |
| D | CYCLE CTRY ACCESSORIES CORP | COM | | 23298410 | 0 | 110 SH | SHARED | | 110 |
| D | DCP MIDSTREAM PARTNERS LP | COM UT LTD PTN | | 23311J10 | 18 | 412 SH | SHARED | | 412 |
| D | DCT INDUSTRIAL TRUST INC | COM | | 23315310 | 51 | 5499 SH | SHARED | | 5499 |
| D | DCT INDUSTRIAL TRUST INC | COM | | 23315310 | 119 | 12800 SH | SHARED | 01 | 5200 | 7600 |
| D | DCT INDUSTRIAL TRUST INC | COM | | 23315310 | 2156 | 231600 SH | SHARED | 10 | 231600 |
| D | DCT INDUSTRIAL TRUST INC | COM | | 23315310 | 4427 | 475600 SH | SHARED | 11 | 475600 |
| D | DDI CORP | COM 0.0001 NEW | | 23316250 | 2125 | 377516 SH | SHARED | | 377516 |
| D | DGSE COMPANIES INC | COM | | 23323G10 | 0 | 94 SH | SHARED | | 94 |
| D | DNP SELECT INCOME FD | COM | | 23325P10 | 68 | 6500 SH | SHARED | 23 | 6500 |
| D | DG FASTCHANNEL INC | COM | | 23326R10 | 6 | 255 SH | SHARED | | 255 |
| D | DG FASTCHANNEL INC | COM | | 23326R10 | 135 | 5300 SH | SHARED | 10 | 5300 |
| D | DPL INC | COM | | 23329310 | 15102 | 509355 SH | SHARED | | 509355 |
| D | DPL INC | COM | | 23329310 | 1178 | 39762 SH | SHARED | 01 | 5200 | 34562 |
| D | DPL INC | COM | | 23329310 | 1025 | 34579 SH | SHARED | 02 | 34579 |
| D | DPL INC | COM | | 23329310 | 379 | 12791 SH | SHARED | 10 | 12791 |
| D | DPL INC | COM | | 23329310 | 180 | 6100 SH | SHARED | 23 | 1100 | 5000 |
| D | DRI CORPORATION | COM | | 23330F10 | 0 | 290 SH | SHARED | | 290 |
| D | DRS TECHNOLOGIES INC | COM | | 23330X10 | 1061 | 19552 SH | SHARED | | 19552 |
| D | DRS TECHNOLOGIES INC | COM | | 23330X10 | 944 | 17400 SH | SHARED | 01 | 2600 | 14800 |
| D | DRS TECHNOLOGIES INC | COM | | 23330X10 | 194 | 3576 SH | SHARED | 02 | 3576 |
| D | DRS TECHNOLOGIES INC | COM | | 23330X10 | 31140 | 573800 SH | SHARED | 10 | 573800 |
| D | DRS TECHNOLOGIES INC | COM | | 23330X10 | 40 | 748 SH | SHARED | 21 | 748 |
| D | D R HORTON INC | COM | | 23331A10 | 11346 | 861553 SH | SHARED | | 861553 |
| D | D R HORTON INC | COM | | 23331A10 | 467 | 35500 SH | SHARED | 01 | 35500 |
| D | D R HORTON INC | COM | | 23331A10 | 550 | 41798 SH | SHARED | 02 | 41798 |
| D | D R HORTON INC | COM | | 23331A10 | 2 | 200 SH | SHARED | 05 | 200 |
| D | D R HORTON INC | COM | | 23331A10 | 28 | 2189 SH | SHARED | 06 | 2189 |
| D | D R HORTON INC | COM | | 23331A10 | 1955 | 148500 SH | SHARED | 10 | 148500 |
| D | DSP GROUP INC | COM | | 23332B10 | 119 | 9835 SH | SHARED | | 9835 |
| D | DSP GROUP INC | COM | | 23332B10 | 103 | 8500 SH | SHARED | 10 | 8500 |
| D | DST SYS INC DEL | DBCV 4.125% 8/1 | | 233326AB | 9735 | 5500000 PRN | SHARED | | 5500000 |
| D | DST SYS INC DEL | DBCV 4.125% 8/1 | | 233326AB | 4425 | 2500000 PRN | SHARED | 02 | 2500000 |
| D | DST SYS INC DEL | DBCV 3.625% 8/1 | | 233326AD | 3880 | 2272000 PRN | SHARED | | 2272000 |
| D | DST SYS INC DEL | DBCV 3.625% 8/1 | | 233326AD | 5137 | 3008000 PRN | SHARED | 02 | 3008000 |
| D | DST SYS INC DEL | COM | | 23332610 | 5745 | 69605 SH | SHARED | | 69605 |
| D | DST SYS INC DEL | COM | | 23332610 | 1667 | 20200 SH | SHARED | 01 | | 20200 |
| D | DST SYS INC DEL | COM | | 23332610 | 123 | 1500 SH | SHR/OTHR | 01 | 1500 |
| D | DST SYS INC DEL | COM | | 23332610 | 377 | 4570 SH | SHARED | 02 | 4570 |
| D | DST SYS INC DEL | COM | | 23332610 | 26 | 320 SH | SHARED | 06 | 320 |
| D | DST SYS INC DEL | COM | | 23332610 | 767 | 9300 SH | SHARED | 10 | 9300 |
| D | DST SYS INC DEL | COM | | 23332610 | 33 | 400 SH | SHARED | 23 | 400 |
| D | DST SYS INC DEL | COM | | 23332610 | 33 | 400 SH | SHR/OTHR | 23 | | 400 |
| D | DTE ENERGY CO | COM | | 23331110 | 14085 | 320419 SH | SHARED | | 320419 |
| D | DTE ENERGY CO | COM | | 23333110 | 1461 | 33252 SH | SHARED | 01 | 31207 | 2045 |
| D | DTE ENERGY CO | COM | | 23333110 | 58 | 1325 SH | SHR/OTHR | 01 | 1325 |
| D | DTE ENERGY CO | COM | | 23333110 | 402 | 9163 SH | SHARED | 02 | 9163 |
| D | DTE ENERGY CO | COM | | 23333110 | 5 | 130 SH | SHARED | 05 | 130 |
| D | DTE ENERGY CO | COM | | 23333110 | 79 | 1800 SH | SHARED | 06 | 1800 |
| D | DTE ENERGY CO | COM | | 23333110 | 4301 | 97860 SH | SHARED | 10 | 97860 |
| D | DTE ENERGY CO | COM | | 23333110 | 17 | 400 SH | SHARED | 20 | 400 |
| D | DTE ENERGY CO | COM | | 23333110 | 8 | 200 SH | SHR/OTHR | 21 | | 200 |
| D | DTE ENERGY CO | COM | | 23333110 | 21 | 500 SH | SHARED | 23 | 500 |
| D | DSW INC | CL A | | 23334L10 | 69 | 3700 SH | SHARED | | 3700 |
| D | DSW INC | CL A | | 23334L10 | 175 | 9356 SH | SHARED | 02 | 9356 |
| D | DSW INC | CL A | | 23334L10 | 70 | 3738 SH | SHARED | 10 | 3738 |
| D | DTS INC | COM | | 23335C10 | 128 | 5027 SH | SHARED | | 5027 |
| D | DTS INC | COM | | 23335C10 | 3 | 138 SH | SHARED | 20 | 138 |
| D | DTS INC | COM | | 23335C10 | 30 | 1200 SH | SHARED | 23 | 1200 |
| D | DTS INC | COM | | 23335C10 | 30 | 1200 SH | SHR/OTHR | 23 | | 1200 |
| D | DWS HIGH INCOME TR | SHS | | 23337C10 | 4 | 1000 SH | SHARED | 01 | 1000 |
| D | DXP ENTERPRISES INC NEW | COM NEW | | 23337740 | 1405 | 30112 SH | SHARED | | 30112 |
| D | DXP ENTERPRISES INC NEW | COM NEW | | 23337740 | 14 | 300 SH | SHARED | 01 | | 300 |
| D | DXP ENTERPRISES INC NEW | COM NEW | | 23337740 | 4 | 88 SH | SHARED | 02 | 88 |
| D | DWS MULTI MKT INCOME TR | SHS | | 23338L10 | 1 | 137 SH | SHARED | | 137 |
| D | DWS MULTI MKT INCOME TR | SHS | | 23338L10 | 8 | 1000 SH | SHARED | 01 | 1000 |
| D | DWS STRATEGIC INCOME TR | SHS | | 23338N10 | 18 | 1566 SH | SHARED | | 1566 |
| D | DWS GLOBAL COMMODITIES STK F | COM | | 23338Y10 | 159 | 9052 SH | SHARED | | 9052 |
| D | DWS RREEF REAL ESTATE FD INC | COM | | 23384410 | 175 | 10000 SH | SHARED | | 10000 |
| D | DWS RREEF REAL ESTATE FD INC | COM | | 23384410 | 66 | 3800 SH | SHR/OTHR | 20 | | 3800 |
| D | DWS DREMAN VAL INCOME EDGE F | COM | | 23339M10 | 4484 | 325200 SH | SHARED | | 325200 |
| D | DWS RREEF WORLD REAL EST & T | COM | | 23372910 | 94 | 6720 SH | SHARED | | 6720 |
| D | DAG MEDIA INC | COM | | 23372910 | 0 | 49 SH | SHARED | | 49 |
| D | DAKTRONICS INC | COM | | 23426410 | 228 | 10115 SH | SHARED | | 10115 |
| D | DAKTRONICS INC | COM | | 23426410 | 15 | 700 SH | SHARED | 01 | 700 |
| D | DAKTRONICS INC | COM | | 23426410 | 2 | 106 SH | SHARED | 10 | 106 |
| D | DANAHER CORP DEL | COM | | 23585110 | 48404 | 551679 SH | SHARED | | 551679 |
| D | DANAHER CORP DEL | COM | | 23585110 | 2616 | 29824 SH | SHARED | 01 | 29024 | 800 |
| D | DANAHER CORP DEL | COM | | 23585110 | 26 | 300 SH | SHR/OTHR | 01 | | 300 |
| D | DANAHER CORP DEL | COM | | 23585110 | 630 | 7181 SH | SHARED | 02 | 7181 |
| D | DANAHER CORP DEL | COM | | 23585110 | 6624 | 75500 SH | SHARED | 04 | 75500 |
| D | DANAHER CORP DEL | COM | | 23585110 | 9 | 110 SH | SHARED | 05 | 110 |
| D | DANAHER CORP DEL | COM | | 23585110 | 190 | 2170 SH | SHARED | 06 | | 2170 |
| D | DANAHER CORP DEL | COM | | 23585110 | 13522 | 154116 SH | SHARED | 10 | 154116 |
| D | DANAHER CORP DEL | COM | | 23585110 | 1482 | 16900 SH | SHARED | 14 | | 16900 |
| D | DANAHER CORP DEL | COM | | 23585110 | 599 | 6834 SH | SHARED | 21 | 2400 | 4434 |
| D | DANAHER CORP DEL | COM | | 23585110 | 254 | 2900 SH | SHR/OTHR | 21 | | 2900 |
| D | DANAHER CORP DEL | COM | | 23585110 | 70 | 800 SH | SHARED | 22 | 800 |
| D | DANAHER CORP DEL | COM | | 23585110 | 622 | 7100 SH | SHARED | 23 | 7100 |
| D | DANAHER CORP DEL | COM | | 23585110 | 149 | 1700 SH | SHR/OTHR | 23 | | 1700 |
| D | DARDEN RESTAURANTS INC | COM | | 23719410 | 9207 | 332266 SH | SHARED | | 270566 | 61700 |
| D | DARDEN RESTAURANTS INC | COM | | 23719410 | 601 | 21694 SH | SHARED | 01 | 21694 |
| D | DARDEN RESTAURANTS INC | COM | | 23719410 | 427 | 15411 SH | SHARED | 02 | 15411 |
| D | DARDEN RESTAURANTS INC | COM | | 23719410 | 52 | 1910 SH | SHARED | 06 | | 1910 |
| D | DARDEN RESTAURANTS INC | COM | | 23719410 | 19945 | 719796 SH | SHARED | 10 | 707796 | 12000 |
| D | DARDEN RESTAURANTS INC | COM | | 23719410 | 384 | 13878 SH | SHARED | 14 | 13878 |
| D | DARDEN RESTAURANTS INC | COM | | 23719410 | 83 | 3000 SH | SHR/OTHR | 23 | | 3000 |
| D | DARLING INTL INC | COM | | 23726610 | 332 | 28759 SH | SHARED | | 28759 |
| D | DARWIN PROFESSIONAL UNDERWRI | COM | | 23750210 | 114 | 4727 SH | SHARED | | 4727 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| D DASSAULT SYS S A | SPONSORED ADR | 23754510 | 6 | 115 SH | SHARED | | 115 | |
| D DATA DOMAIN INC | COM | 23767P10 | 3 | 119 SH | SHARED | | 119 | |
| D DATA DOMAIN INC | COM | 23767P10 | 184 | 7000 SH | SHARED | 04 | 7000 | |
| D DATA I O CORP | COM | 23769010 | 1 | 187 SH | SHARED | | 187 | |
| D DATAWATCH CORP | COM NEW | 23791720 | 0 | 105 SH | SHARED | | 105 | |
| D DATALINK CORP | COM | 23793410 | 8 | 2370 SH | SHARED | | 2370 | |
| D DATARAM CORP | COM PAR $1 | 23810820 | 0 | 208 SH | SHARED | | 208 | |
| D DATASCOPE CORP | COM | 23811310 | 578 | 15900 SH | SHARED | | 15900 | |
| D DATASCOPE CORP | COM | 23811310 | 51 | 1425 SH | SHARED | 02 | 1425 | |
| D DATASCOPE CORP | COM | 23811310 | 174 | 4800 SH | SHARED | 10 | 4800 | |
| D DATATRAK INTL INC | COM | 23813K10 | 0 | 354 SH | SHARED | | 354 | |
| D DAVITA INC | COM | 23918K10 | 967 | 17164 SH | SHARED | | 17164 | |
| D DAVITA INC | COM | 23918K10 | 112 | 2000 SH | SHARED | 01 | 1900 | 100 |
| D DAVITA INC | COM | 23918K10 | 11 | 200 SH | SHR/OTHR | 01 | 200 | |
| D DAVITA INC | COM | 23918K10 | 112 | 2003 SH | SHARED | 02 | 2003 | |
| D DAVITA INC | COM | 23918K10 | 6829 | 121200 SH | SHARED | 04 | 121200 | |
| D DAVITA INC | COM | 23918K10 | 2033 | 36090 SH | SHARED | 06 | | 36090 |
| D DAVITA INC | COM | 23918K10 | 1126 | 19985 SH | SHARED | 10 | 19985 | |
| D DAVITA INC | COM | 23918K10 | 1972 | 35000 SH | SHARED | 14 | | 35000 |
| D DAWSON GEOPHYSICAL CO | COM | 23935910 | 437 | 6128 SH | SHARED | | 6128 | |
| D DAWSON GEOPHYSICAL CO | COM | 23935910 | 158 | 2220 SH | SHARED | 01 | 2220 | |
| D DAXOR CORP | COM | 23946710 | 0 | 39 SH | SHARED | | 39 | |
| D DAYSTAR TECHNOLOGIES INC | COM | 23962Q10 | 3 | 604 SH | SHARED | | 604 | |
| D DAYTON SUPERIOR CORP | COM | 24002830 | 0 | 231 SH | SHARED | | 231 | |
| D DEALERTRACK HLDGS INC | COM | 24230910 | 585 | 17488 SH | SHARED | | 17488 | |
| D DEALERTRACK HLDGS INC | COM | 24230910 | 20 | 600 SH | SHARED | 01 | 600 | |
| D DEALERTRACK HLDGS INC | COM | 24230910 | 903 | 27000 SH | SHARED | 04 | 27000 | |
| D DEALERTRACK HLDGS INC | COM | 24230910 | 6171 | 184400 SH | SHARED | 10 | 184400 | |
| D DEAN FOODS CO NEW | COM | 24237010 | 413 | 16000 SH | SHARED | | 16000 | |
| D DEAN FOODS CO NEW | COM | 24237010 | 46894 | 1813391 SH | SHARED | | 1270091 | 543300 |
| D DEAN FOODS CO NEW | COM | 24237010 | 1114 | 43107 SH | SHARED | 01 | 43107 | |
| D DEAN FOODS CO NEW | COM | 24237010 | 1532 | 59257 SH | SHARED | 02 | 59257 | |
| D DEAN FOODS CO NEW | COM | 24237010 | 11189 | 432682 SH | SHARED | 04 | 432682 | |
| D DEAN FOODS CO NEW | COM | 24237010 | 7606 | 294150 SH | SHARED | 06 | | 294150 |
| D DEAN FOODS CO NEW | COM | 24237010 | 83474 | 3227928 SH | SHARED | 10 | 2840728 | 387200 |
| D DEAN FOODS CO NEW | COM | 24237010 | 10 | 400 SH | SHARED | 14 | | 400 |
| D DEAN FOODS CO NEW | COM | 24237010 | 1174 | 45400 SH | SHARED | 15 | | 45400 |
| D DEAN FOODS CO NEW | COM | 24237010 | 3783 | 146324 SH | SHARED | 16 | 146324 | |
| D DEAN FOODS CO NEW | COM | 24237010 | 400 | 15500 SH | SHARED | 19 | | 15500 |
| D DEAN FOODS CO NEW | COM | 24237010 | 537 | 20767 SH | SHARED | 24 | 20767 | |
| D DEARBORN BANCORP INC | COM | 24242R10 | 23 | 3104 SH | SHARED | | 3104 | |
| D DEBT RESOLVE INC | COM NEW | 24276R20 | 0 | 172 SH | SHARED | | 172 | |
| D DECKERS OUTDOOR CORP | COM | 24353710 | 267 | 1727 SH | SHARED | | 1727 | |
| D DECKERS OUTDOOR CORP | COM | 24353710 | 2698 | 17400 SH | SHARED | 01 | 17200 | 200 |
| D DECKERS OUTDOOR CORP | COM | 24353710 | 2946 | 19000 SH | SHR/OTHR | 01 | | 19000 |
| D DECKERS OUTDOOR CORP | COM | 24353710 | 635 | 4100 SH | SHARED | 10 | 4100 | |
| D DECODE GENETICS INC | COM | 24358610 | 3 | 1000 SH | SHARED | 02 | 1000 | |
| D DECORATOR INDS INC | COM PAR $0.20 | 24363120 | 0 | 70 SH | SHARED | | 70 | |
| D DEERE & CO | COM | 24419910 | 73037 | 784338 SH | SHARED | | 784338 | |
| D DEERE & CO | COM | 24419910 | 6436 | 69116 SH | SHARED | 01 | 62816 | 6300 |
| D DEERE & CO | COM | 24419910 | 139 | 1500 SH | SHR/OTHR | 01 | | 1500 |
| D DEERE & CO | COM | 24419910 | 1850 | 19872 SH | SHARED | 02 | 19872 | |
| D DEERE & CO | COM | 24419910 | 22324 | 239742 SH | SHARED | 04 | 239742 | |
| D DEERE & CO | COM | 24419910 | 36845 | 395674 SH | SHARED | 05 | 395674 | |
| D DEERE & CO | COM | 24419910 | 415 | 4460 SH | SHARED | 06 | | 4460 |
| D DEERE & CO | COM | 24419910 | 17958 | 192856 SH | SHARED | 10 | 191256 | 1600 |
| D DEERE & CO | COM | 24419910 | 1629 | 17500 SH | SHARED | 14 | | 17500 |
| D DEERE & CO | COM | 24419910 | 1345 | 14450 SH | SHARED | 20 | 6530 | 7920 |
| D DEERE & CO | COM | 24419910 | 166 | 1790 SH | SHARED | 23 | 1790 | |
| D DEERE & CO | COM | 24419910 | 428 | 4600 SH | SHR/OTHR | 23 | | 4600 |
| D DEKANIA CORP | COM | 24488U10 | 7087 | 762106 SH | SHARED | | 762106 | |
| D DEL MONTE FOODS CO | COM | 24522P10 | -267 | -28269 SH | SHARED | | -28269 | |
| D DEL MONTE FOODS CO | COM | 24522P10 | 11660 | 1232649 SH | SHARED | | 1232649 | |
| D DEL MONTE FOODS CO | COM | 24522P10 | 62 | 6636 SH | SHARED | 01 | 5834 | 802 |
| D DEL MONTE FOODS CO | COM | 24522P10 | 22454 | 2373650 SH | SHARED | 04 | 2373650 | |
| D DEL MONTE FOODS CO | COM | 24522P10 | 12 | 1339 SH | SHARED | 20 | | 1339 |
| D DEL MONTE FOODS CO | COM | 24522P10 | 22 | 2344 SH | SHR/OTHR | 21 | | 2344 |
| D DEL MONTE FOODS CO | COM | 24522P10 | 81 | 8572 SH | SHARED | 23 | 3572 | 5000 |
| D DEL MONTE FOODS CO | COM | 24522P10 | 25 | 2678 SH | SHR/OTHR | 23 | | 2678 |
| D DELAWAR INVTS AZ MUN INCOME | COM | 24610010 | 46 | 3700 SH | SHARED | | 3700 | |
| D DELCATH SYS INC | COM | 24661P10 | 0 | 538 SH | SHARED | | 538 | |
| D DELEK US HLDGS INC | COM | 24664710 | 359 | 17789 SH | SHARED | | 17789 | |
| D DELEK US HLDGS INC | COM | 24664710 | 171 | 8500 SH | SHARED | 01 | 8500 | |
| D DELEK US HLDGS INC | COM | 24664710 | 483 | 23900 SH | SHARED | 10 | 23900 | |
| D DELIA*S INC NEW | COM | 24691110 | 8 | 3112 SH | SHARED | | 3112 | |
| D DELL INC | COM | 24702R10 | 522 | 21303 SH | SHARED | | 703 | 20600 |
| D DELL INC | COM | 24702R10 | 682601 | 5766878 SH | SHARED | | 5654825 | 112053 |
| D DELL INC | COM | 24702R10 | 8282 | 337903 SH | SHARED | 01 | 327703 | 10200 |
| D DELL INC | COM | 24702R10 | 112 | 4575 SH | SHR/OTHR | 01 | 4575 | |
| D DELL INC | COM | 24702R10 | 16392 | 668803 SH | SHARED | 02 | 647858 | 20945 |
| D DELL INC | COM | 24702R10 | 85987 | 3508250 SH | SHARED | 04 | 3508250 | |
| D DELL INC | COM | 24702R10 | 23 | 970 SH | SHARED | 05 | 970 | |
| D DELL INC | COM | 24702R10 | 24247 | 989282 SH | SHARED | 06 | | 989282 |
| D DELL INC | COM | 24702R10 | 93732 | 3824271 SH | SHARED | 10 | 3788771 | 35500 |
| D DELL INC | COM | 24702R10 | 1664 | 67928 SH | SHARED | 14 | 30450 | 37478 |
| D DELL INC | COM | 24702R10 | 3710 | 151397 SH | SHARED | 16 | 151397 | |
| D DELL INC | COM | 24702R10 | 166 | 6800 SH | SHARED | 20 | 2900 | 3900 |
| D DELL INC | COM | 24702R10 | 40 | 1633 SH | SHR/OTHR | 20 | | 1633 |
| D DELL INC | COM | 24702R10 | 41 | 1700 SH | SHARED | 21 | 1700 | |
| D DELL INC | COM | 24702R10 | 15 | 650 SH | SHARED | 22 | 650 | |
| D DELL INC | COM | 24702R10 | 47 | 1925 SH | SHARED | 23 | 1925 | |
| D DELL INC | COM | 24702R10 | 279 | 11400 SH | SHR/OTHR | 23 | | 11400 |
| D DELL INC | COM | 24702R10 | 29 | 1200 SH | SHARED | 24 | 1200 | |
| D DELPHAX TECHNOLOGIES INC | COM | 24712X10 | 0 | 139 SH | SHARED | | 139 | |
| D DELPHI FINL GROUP INC | CL A | 24713110 | 6899 | 195565 SH | SHARED | | 195565 | |
| D DELPHI FINL GROUP INC | CL A | 24713110 | 11 | 325 SH | SHARED | 02 | 325 | |
| D DELPHI FINL GROUP INC | CL A | 24713110 | 515 | 14609 SH | SHARED | 10 | 14609 | |
| D DELTA AIR LINES INC DEL | COM NEW | 24736170 | 12452 | 836325 SH | SHARED | | 836325 | |
| D DELTA AIR LINES INC DEL | COM NEW | 24736170 | 5017 | 336999 SH | SHARED | 02 | 336999 | |
| D DELTA AIR LINES INC DEL | COM NEW | 24736170 | 5784 | 388500 SH | SHARED | 10 | 365300 | 23200 |
| D DELTA APPAREL INC | COM | 24736810 | 1 | 166 SH | SHARED | | 166 | |
| D DELTA NAT GAS CO INC | COM | 24774810 | 2 | 86 SH | SHARED | | 86 | |
| D DELTATHREE INC | COM | 24783N10 | 0 | 512 SH | SHARED | | 512 | |
| D DELTIC TIMBER CORP | COM | 24785010 | 1 | 22 SH | SHARED | | 22 | |
| D DELTIC TIMBER CORP | COM | 24785010 | 2703 | 52499 SH | SHARED | 01 | | 52499 |
| D DELTIC TIMBER CORP | COM | 24785010 | 956 | 18571 SH | SHR/OTHR | 01 | | 18571 |
| D DELTIC TIMBER CORP | COM | 24785010 | 427 | 8312 SH | SHARED | 22 | 8312 | |
| D DELTA PETE CORP | COM NEW | 24790720 | 6786 | 360036 SH | SHARED | | 360036 | |
| D DELTA PETE CORP | COM NEW | 24790720 | 121 | 6420 SH | SHARED | | 6420 | |
| D DELTA PETE CORP | COM NEW | 24790720 | 3082 | 163535 SH | SHARED | 01 | 163535 | |
| D DELTA PETE CORP | COM NEW | 24790720 | 99 | 5300 SH | SHARED | 10 | 5300 | |
| D DENBURY RES INC | COM NEW | 24791620 | 994 | 33443 SH | SHARED | | 33443 | |
| D DENBURY RES INC | COM NEW | 24791620 | 2183 | 73400 SH | SHARED | 01 | 800 | 72600 |
| D DENBURY RES INC | COM NEW | 24791620 | 684 | 23022 SH | SHARED | 02 | 23022 | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D DENBURY RES INC | COM NEW | | 24791620 | 59 | 2000 SH | SHARED | 06 | | | 2000 |
| D DENBURY RES INC | COM NEW | | 24791620 | 690 | 23200 SH | SHARED | 10 | 23200 | |
| D DENBURY RES INC | COM NEW | | 24791620 | 565 | 19000 SH | SHARED | 21 | | | 19000 |
| D DELTA FINANCIAL CORP | COM | | 24791810 | 0 | 10031 SH | SHARED | | 10031 | |
| D DELTA FINANCIAL CORP | COM | | 24791810 | 0 | 5300 SH | SHR/OTHR | 22 | | | 5300 |
| D DELUXE CORP | COM | | 24801910 | 5579 | 169643 SH | SHARED | | 169643 | |
| D DELUXE CORP | COM | | 24801910 | 1053 | 32021 SH | SHARED | 01 | 12421 | | 19600 |
| D DELUXE CORP | COM | | 24801910 | 581 | 17669 SH | SHARED | 02 | 17669 | |
| D DELUXE CORP | COM | | 24801910 | 18931 | 575600 SH | SHARED | 10 | 575600 | |
| D DELUXE CORP | COM | | 24801910 | 57 | 1753 SH | SHR/OTHR | 20 | | | 1753 |
| D DEMANDTEC INC | COM NEW | | 24802R50 | 3 | 156 SH | SHARED | | 156 | |
| D DEMANDTEC INC | COM NEW | | 24802R50 | 15 | 800 SH | SHARED | 02 | 800 | |
| D DENALI FD INC | COM | | 24823A10 | 74 | 4300 SH | SHARED | | 4300 | |
| D DENDREON CORP | COM | | 24823Q10 | 200 | 32244 SH | SHARED | | 32244 | |
| D DENDREON CORP | COM | | 24823Q10 | 33 | 5400 SH | SHARED | 01 | 5400 | |
| D DENISON MINES CORP | COM | | 24835610 | 1185 | 132933 SH | SHARED | | 132933 | | 11000 |
| D DENISON MINES CORP | COM | | 24835610 | 874 | 98000 SH | SHARED | 04 | 98000 | |
| D DENNYS CORP | COM | | 24869Y10 | 3872 | 1032616 SH | SHARED | | 1032616 | |
| D DENTSPLY INTL INC NEW | COM | | 24903010 | 4230 | 93966 SH | SHARED | | 93966 | |
| D DENTSPLY INTL INC NEW | COM | | 24903010 | 2278 | 50600 SH | SHARED | 01 | 2800 | | 47800 |
| D DENTSPLY INTL INC NEW | COM | | 24903010 | 99 | 2200 SH | SHR/OTHR | 01 | | | 2200 |
| D DENTSPLY INTL INC NEW | COM | | 24903010 | 524 | 11649 SH | SHARED | 02 | 11649 | |
| D DENTSPLY INTL INC NEW | COM | | 24903010 | 68 | 1520 SH | SHARED | 06 | | | 1520 |
| D DENTSPLY INTL INC NEW | COM | | 24903010 | 2610 | 57990 SH | SHARED | 10 | 57990 | |
| D DENTSPLY INTL INC NEW | COM | | 24903010 | 535 | 11894 SH | SHARED | 14 | | | 11894 |
| D DENTSPLY INTL INC NEW | COM | | 24903010 | 90 | 2000 SH | SHARED | 23 | | | 2000 |
| D DEPOMED INC | COM | | 24990810 | 3 | 1110 SH | SHARED | | 1110 | |
| D DESARROLLADORA HOMEX S A DE | SPONSORED ADR | | 25030W10 | 12277 | 248274 SH | SHARED | | 248274 | |
| D DESARROLLADORA HOMEX S A DE | SPONSORED ADR | | 25030W10 | 9 | 200 SH | SHARED | 02 | 200 | |
| D DESARROLLADORA HOMEX S A DE | SPONSORED ADR | | 25030W10 | 469 | 9500 SH | SHR/OTHR | 23 | | | 9500 |
| D DESIGN WITHIN REACH INC | COM | | 25055710 | 0 | 261 SH | SHARED | | 261 | |
| D DEUTSCHE TELEKOM AG | SPONSORED ADR | | 25156610 | 698 | 32211 SH | SHARED | | 32211 | |
| D DEUTSCHE TELEKOM AG | SPONSORED ADR | | 25156610 | 130 | 6010 SH | SHARED | 21 | | | 6010 |
| D DEUTSCHE TELEKOM AG | SPONSORED ADR | | 25156610 | 97 | 4500 SH | SHR/OTHR | 23 | | | 4500 |
| D DEVCON INTL CORP | COM | | 25158810 | 0 | 63 SH | SHARED | | 63 | |
| D DEVELOPERS DIVERSIFIED RLTY | NOTE 3.500% 8/1 | | 25159AQ2 | 2220 | 2500000 PRN | SHARED | 02 | 2500000 | |
| D DEVELOPERS DIVERSIFIED RLTY | COM | | 25159110 | 4283 | 111877 SH | SHARED | | 111877 | |
| D DEVELOPERS DIVERSIFIED RLTY | COM | | 25159110 | 134 | 3525 SH | SHARED | 01 | 3525 | |
| D DEVELOPERS DIVERSIFIED RLTY | COM | | 25159110 | 89 | 2327 SH | SHARED | 02 | 2327 | |
| D DEVELOPERS DIVERSIFIED RLTY | COM | | 25159110 | 2894 | 75600 SH | SHARED | 10 | 75600 | |
| D DEVON ENERGY CORP NEW | DEB 4.900% 8/1 | | 25179MAA | 15 | 10000 PRN | SHARED | 01 | | | 10000 |
| D DEVON ENERGY CORP NEW | DEB 4.900% 8/1 | | 25179MAA | 302 | 190000 PRN | SHARED | 02 | 190000 | |
| D DEVON ENERGY CORP NEW | DEB 4.900% 8/1 | | 25179MAA | 125 | 79000 PRN | SHARED | 23 | 79000 | |
| D DEVON ENERGY CORP NEW | DEB 4.900% 8/1 | | 25179MAA | 15 | 10000 PRN | SHR/OTHR | 23 | | | 10000 |
| D DEVON ENERGY CORP NEW | DEB 4.950% 8/1 | | 25179MAB | 5161 | 3246000 PRN | SHARED | | 3246000 | |
| D DEVON ENERGY CORP NEW | COM | | 25179M10 | 264 | 2978 SH | SHARED | | 2978 | |
| D DEVON ENERGY CORP NEW | COM | | 25179M10 | 89258 | 1003916 SH | SHARED | | 1003916 | |
| D DEVON ENERGY CORP NEW | COM | | 25179M10 | 14961 | 168278 SH | SHARED | 01 | 166963 | | 1315 |
| D DEVON ENERGY CORP NEW | COM | | 25179M10 | 7462 | 83938 SH | SHARED | 02 | 83938 | |
| D DEVON ENERGY CORP NEW | COM | | 25179M10 | 2222 | 25000 SH | SHARED | 04 | 25000 | |
| D DEVON ENERGY CORP NEW | COM | | 25179M10 | 16 | 190 SH | SHARED | 05 | | | 190 |
| D DEVON ENERGY CORP NEW | COM | | 25179M10 | 41332 | 464880 SH | SHARED | 06 | | | 464880 |
| D DEVON ENERGY CORP NEW | COM | | 25179M10 | 500204 | 5625967 SH | SHARED | 10 | 5577367 | | 48600 |
| D DEVON ENERGY CORP NEW | COM | | 25179M10 | 678 | 7630 SH | SHARED | 14 | | | 7630 |
| D DEVON ENERGY CORP NEW | COM | | 25179M10 | 16 | 185 SH | SHARED | 20 | 25 | | 160 |
| D DEVON ENERGY CORP NEW | COM | | 25179M10 | 99 | 1115 SH | SHARED | 21 | 985 | | 130 |
| D DEVON ENERGY CORP NEW | COM | | 25179M10 | 355 | 4000 SH | SHARED | 22 | 2000 | | 2000 |
| D DEVON ENERGY CORP NEW | COM | | 25179M10 | 380 | 4284 SH | SHARED | 23 | 4284 | |
| D DEVON ENERGY CORP NEW | COM | | 25179M10 | 666 | 7500 SH | SHR/OTHR | 23 | | | 7500 |
| D DEVON ENERGY CORP NEW | COM | | 25179M10 | 128 | 1443 SH | SHARED | 24 | 1443 | |
| D DEVRY INC DEL | COM | | 25189310 | 1016 | 19555 SH | SHARED | | 19555 | |
| D DEVRY INC DEL | COM | | 25189310 | 1053 | 20275 SH | SHARED | 01 | 2675 | | 17600 |
| D DEVRY INC DEL | COM | | 25189310 | 152 | 2937 SH | SHARED | 02 | 2937 | |
| D DEVRY INC DEL | COM | | 25189310 | 1520 | 29261 SH | SHARED | 10 | 29261 | |
| D DEXCOM INC | NOTE 4.750% 3/1 | | 25213AD2 | 5020 | 4000000 PRN | SHARED | | 4000000 | |
| D DEXCOM INC | COM | | 25213110 | 5 | 678 SH | SHARED | | 678 | |
| D DEXCOM INC | COM | | 25213110 | 29 | 3300 SH | SHARED | 01 | 3300 | |
| D DEXCOM INC | COM | | 25213110 | 1324 | 150000 SH | SHARED | 04 | 150000 | |
| D DIAGEO P L C | SPON ADR NEW | | 25243Q20 | 2536 | 29557 SH | SHARED | | 29557 | |
| D DIAGEO P L C | SPON ADR NEW | | 25243Q20 | 85 | 1000 SH | SHARED | 01 | | | 1000 |
| D DIAGEO P L C | SPON ADR NEW | | 25243Q20 | 12314 | 143480 SH | SHARED | 10 | 143480 | |
| D DIAGEO P L C | SPON ADR NEW | | 25243Q20 | 17 | 200 SH | SHARED | 20 | 200 | |
| D DIAGEO P L C | SPON ADR NEW | | 25243Q20 | 184 | 2150 SH | SHARED | 23 | 2150 | |
| D DIALYSIS CORP AMER | COM | | 25252910 | 13 | 1551 SH | SHARED | | 1551 | |
| D DIAMOND FOODS INC | COM | | 25260310 | 8 | 388 SH | SHARED | | 388 | |
| D DIAMOND FOODS INC | COM | | 25260310 | 368 | 17200 SH | SHARED | 01 | 17000 | | 200 |
| D DIAMOND FOODS INC | COM | | 25260310 | 428 | 20000 SH | SHR/OTHR | 01 | | | 20000 |
| D DIAMOND FOODS INC | COM | | 25260310 | 45 | 2100 SH | SHARED | 02 | 2100 | |
| D DIAMOND FOODS INC | COM | | 25260310 | 4751 | 221700 SH | SHARED | 10 | 221700 | |
| D DIAMOND HILL INVESTMENT GROU | COM NEW | | 25264R20 | 3 | 51 SH | SHARED | | 51 | |
| D DIAMOND MGMT & TECHNOLOGY CO | COM | | 25269L10 | 238 | 32779 SH | SHARED | | 32779 | |
| D DIAMOND MGMT & TECHNOLOGY CO | COM | | 25269L10 | 21 | 2900 SH | SHARED | 01 | | | 2900 |
| D DIAMOND MGMT & TECHNOLOGY CO | COM | | 25269L10 | 339 | 46700 SH | SHARED | 10 | 46700 | |
| D DIAMOND OFFSHORE DRILLING IN | COM | | 25271C10 | 28427 | 200193 SH | SHARED | | 200193 | |
| D DIAMOND OFFSHORE DRILLING IN | COM | | 25271C10 | 411 | 2900 SH | SHARED | 01 | | | 2900 |
| D DIAMOND OFFSHORE DRILLING IN | COM | | 25271C10 | 76392 | 537972 SH | SHARED | 02 | 537972 | |
| D DIAMOND OFFSHORE DRILLING IN | COM | | 25271C10 | 147212 | 1036709 SH | SHARED | 04 | 1036709 | |
| D DIAMOND OFFSHORE DRILLING IN | COM | | 25271C10 | 10344 | 72850 SH | SHARED | 06 | | | 72850 |
| D DIAMOND OFFSHORE DRILLING IN | COM | | 25271C10 | 2615 | 18420 SH | SHARED | 10 | 18420 | |
| D DIAMOND OFFSHORE DRILLING IN | COM | | 25271C10 | 1846 | 13000 SH | SHARED | 14 | 13000 | |
| D DIAMOND OFFSHORE DRILLING IN | COM | | 25271C10 | 4741 | 33394 SH | SHARED | 16 | 33394 | |
| D DIAMOND OFFSHORE DRILLING IN | COM | | 25271C10 | 12 | 85 SH | SHARED | 21 | | | 85 |
| D DIAMONDROCK HOSPITALITY CO | COM | | 25278430 | 431 | 28835 SH | SHARED | | 28835 | |
| D DIAMONDROCK HOSPITALITY CO | COM | | 25278430 | 533 | 35600 SH | SHARED | 01 | 35600 | |
| D DIAMONDROCK HOSPITALITY CO | COM | | 25278430 | 447 | 29875 SH | SHARED | 02 | 29875 | |
| D DIAMONDROCK HOSPITALITY CO | COM | | 25278430 | 1041 | 69500 SH | SHARED | 10 | 69500 | |
| D DIAMONDROCK HOSPITALITY CO | COM | | 25278430 | 25422 | 1697100 SH | SHARED | 11 | | | 1697100 |
| D DIAMONDS TR | UNIT SER 1 | | 25278710 | 12088 | 91200 SH | SHARED | | 91200 | |
| D DIAMONDS TR | UNIT SER 1 | | 25278710 | 26 | 203 SH | SHARED | 01 | | | 203 |
| D DIAMONDS TR | UNIT SER 1 | | 25278710 | 24919 | 188000 SH | SHARED | 10 | 188000 | |
| D DIAMONDS TR | UNIT SER 1 | | 25278710 | 14315 | 108000 SH | SHARED | 15 | | | 108000 |
| D DIAMONDS TR | UNIT SER 1 | | 25278710 | 106 | 800 SH | SHARED | 23 | 800 | |
| D DICKS SPORTING GOODS INC | NOTE 1.606% 2/1 | | 253393AB | 2183 | 2199000 PRN | SHARED | 02 | 2199000 | |
| D DICKS SPORTING GOODS INC | COM | | 25339310 | 5978 | 215369 SH | SHARED | | 191669 | | 23700 |
| D DICKS SPORTING GOODS INC | COM | | 25339310 | 705 | 25400 SH | SHARED | 01 | 800 | | 24600 |
| D DICKS SPORTING GOODS INC | COM | | 25339310 | 109 | 3943 SH | SHARED | 02 | 3943 | |
| D DICKS SPORTING GOODS INC | COM | | 25339310 | 66249 | 2386500 SH | SHARED | 10 | 2372200 | | 14300 |
| D DIEBOLD INC | COM | | 25365110 | 1188 | 41000 SH | SHARED | | 41000 | |
| D DIEBOLD INC | COM | | 25365110 | 585 | 20200 SH | SHARED | 01 | | | 20200 |
| D DIEBOLD INC | COM | | 25365110 | 391 | 13516 SH | SHARED | 02 | 13516 | |
| D DIEBOLD INC | COM | | 25365110 | 446 | 15400 SH | SHARED | 10 | 15400 | |
| D DIEBOLD INC | COM | | 25365110 | 1382 | 47700 SH | SHARED | 14 | | | 47700 |
| D DIEDRICH COFFEE INC | COM NEW | | 25367520 | 0 | 77 SH | SHARED | | 77 | |
| D DIGI INTL INC | COM | | 25379810 | 4 | 299 SH | SHARED | | 299 | |

```
D DIGI INTL INC                  COM              25379810      45     3200 SH    SHARED   02        3200
D DIGIMARC CORP                  COM              25380710      11     1293 SH    SHARED             1293
D DIGIMARC CORP                  COM              25380710      16     1825 SH    SHARED   02        1825
D DIGIRAD CORP                   COM              25382710       1      402 SH    SHARED              402
D DIGITAL ANGEL CORP             COM              25383010       0      523 SH    SHARED              523
D DIGITAL PWR CORP               COM              25386210       0       82 SH    SHARED               82
D DIGITAL RLTY TR INC            COM              25386810    1458    38024 SH    SHARED            38024
D DIGITAL RLTY TR INC            COM              25386810     240     6270 SH    SHARED   01         6270
D DIGITAL RLTY TR INC            COM              25386810     101     2654 SH    SHARED   02         2654
D DIGITAL RLTY TR INC            COM              25386810    4143   108000 SH    SHARED   10       108000
D DIGITAL RLTY TR INC            COM              25386810   76059  1982277 SH    SHARED   11      1143267     839010
D DIGITAL RIV INC                NOTE  1.250% 1/0 25388BAB     31    31000 PRN   SHARED   02        31000
D DIGITAL RIV INC                COM              25388B10     515    15583 SH    SHARED            15583
D DIGITAL RIV INC                COM              25388B10    1576    47685 SH    SHARED   01        35310      12375
D DIGITAL RIV INC                COM              25388B10     859    26000 SH    SHR/OTHR 01                   26000
D DIGITAL RIV INC                COM              25388B10     212     6414 SH    SHARED   02         6414
D DIGITAL RIV INC                COM              25388B10     611    18500 SH    SHARED   04        18500
D DIGITAL RIV INC                COM              25388B10     141     4293 SH    SHARED   10         4293
D DIGITAL RIV INC                COM              25388B10    6614   200000 SH    SHARED   20       200000
D DIGITAL MUSIC GROUP INC        COM NEW          25388X20       0       84 SH    SHARED               84
D DIGITALFX INTL INC             COM              25389E10       0      170 SH    SHARED              170
D DIME CMNTY BANCSHARES          COM              25392210       7      580 SH    SHARED              580
D DIME CMNTY BANCSHARES          COM              25392210     223    17500 SH    SHARED   02        17500
D DIME CMNTY BANCSHARES          COM              25392210       8      675 SH    SHR/OTHR 23                     675
D DILLARDS INC                   CL A             25406710   49918  2658086 SH    SHARED           2658086
D DILLARDS INC                   CL A             25406710     153     8170 SH    SHARED   01         8170
D DILLARDS INC                   CL A             25406710     129     6908 SH    SHARED   02         6908
D DILLARDS INC                   CL A             25406710    1459    77719 SH    SHARED   10        77719
D DILLARDS INC                   CL A             25406710       8      355 SH    SHARED   21                     355
D DIME BANCORP INC NEW           *W EXP 99/99/999 25429Q11     137   848919 SH    SHARED           848919
D DIME BANCORP INC NEW           *W EXP 99/99/999 25429Q11       3    19500 SH    SHARED   01                   19500
D DIOMED HOLDINGS INC            COM NEW          25454R20       0      733 SH    SHARED              733
D DIODES INC                     NOTE  2.250%10/0 25453AA     216   211000 PRN   SHARED   02       211000
D DIODES INC                     COM              25454310      28      952 SH    SHARED              952
D DIODES INC                     COM              25454310     333    11100 SH    SHARED   01        11100
D DIODES INC                     COM              25454310      51     1725 SH    SHARED   02         1725
D DIONEX CORP                    COM              25454610     479     5791 SH    SHARED             5791
D DIONEX CORP                    COM              25454610     118     1425 SH    SHARED   01         1425
D DIONEX CORP                    COM              25454610      54      654 SH    SHARED   02          654
D DIONEX CORP                    COM              25454610     928    11200 SH    SHARED   10        11200
D DIRECTED ELECTRONICS INC       COM              25457510       0      367 SH    SHARED              367
D DIRECTV GROUP INC              COM              25459L10   35100  1518209 SH    SHARED           1290409     227800
D DIRECTV GROUP INC              COM              25459L10    2664   115238 SH    SHARED   01       115238
D DIRECTV GROUP INC              COM              25459L10    2712   117340 SH    SHARED   02       117340
D DIRECTV GROUP INC              COM              25459L10    4624   200000 SH    SHARED   04       200000
D DIRECTV GROUP INC              COM              25459L10       6      285 SH    SHARED   05          285
D DIRECTV GROUP INC              COM              25459L10     138     5980 SH    SHR/OTHR 06                    5980
D DIRECTV GROUP INC              COM              25459L10  106613  4611297 SH    SHARED   10      4593097      18200
D DIRECTV GROUP INC              COM              25459L10     924    40001 SH    SHARED   14        40001
D DIRECTV GROUP INC              COM              25459L10      64     2790 SH    SHARED   23           29        2761
D DIRECTV GROUP INC              COM              25459L10      10      475 SH    SHR/OTHR 23                     475
D DISCOVERY HOLDING CO           CL A COM         25468Y10    1099    43732 SH    SHARED            43732
D DISCOVERY HOLDING CO           CL A COM         25468Y10     386    15357 SH    SHARED   01        15206        151
D DISCOVERY HOLDING CO           CL A COM         25468Y10      15      600 SH    SHARED   02          600
D DISCOVERY HOLDING CO           CL A COM         25468Y10       4      196 SH    SHARED   05          196
D DISCOVERY HOLDING CO           CL A COM         25468Y10      73     2934 SH    SHR/OTHR 06                    2934
D DISCOVERY HOLDING CO           CL A COM         25468Y10     729    29018 SH    SHARED            29018
D DISCOVERY HOLDING CO           CL A COM         25468Y10      17      677 SH    SHR/OTHR 14                     677
D DISCOVERY HOLDING CO           CL A COM         25468Y10    1008    40100 SH    SHARED   14        40100
D DISCOVERY HOLDING CO           CL A COM         25468Y10     198     7886 SH    SHARED   20         7886
D DISCOVERY HOLDING CO           CL A COM         25468Y10      37     1500 SH    SHARED   23                    1500
D DISNEY WALT CO                 2.125% 4/1 25468 7AU    6042  5300000 PRN   SHARED           5300000
D DISNEY WALT CO                 NOTE  2.125% 4/1 25468 7AU   21660 19000000 PRN   SHARED   04      9000000
D DISNEY WALT CO                 COM DISNEY       25468710    6076   188256 SH    SHARED           188256
D DISNEY WALT CO                 COM DISNEY       25468710   78243  2423886 SH    SHARED           2404337      19549
D DISNEY WALT CO                 COM DISNEY       25468710   13008   403001 SH    SHARED   01       296748     106253
D DISNEY WALT CO                 COM DISNEY       25468710    2328    72119 SH    SHR/OTHR 01                   72119
D DISNEY WALT CO                 COM DISNEY       25468710   19289   597561 SH    SHARED   02       597561
D DISNEY WALT CO                 COM DISNEY       25468710      27      850 SH    SHARED   04                     850
D DISNEY WALT CO                 COM DISNEY       25468710   10113   313300 SH    SHARED   04       313300
D DISNEY WALT CO                 COM DISNEY       25468710      26      810 SH    SHARED   05          810
D DISNEY WALT CO                 COM DISNEY       25468710     582    18040 SH    SHR/OTHR 06                   18040
D DISNEY WALT CO                 COM DISNEY       25468710   40175  1244595 SH    SHARED   10      1197395      47200
D DISNEY WALT CO                 COM DISNEY       25468710     154     4800 SH    SHARED   10         4800
D DISNEY WALT CO                 COM DISNEY       25468710     823    25520 SH    SHR/OTHR 14                   25520
D DISNEY WALT CO                 COM DISNEY       25468710     613    19020 SH    SHARED   20         3300       15720
D DISNEY WALT CO                 COM DISNEY       25468710     214     6652 SH    SHR/OTHR 20                    6652
D DISNEY WALT CO                 COM DISNEY       25468710     514    15925 SH    SHARED   21        14800        1125
D DISNEY WALT CO                 COM DISNEY       25468710      14      450 SH    SHR/OTHR 21                     450
D DISNEY WALT CO                 COM DISNEY       25468710      38     1200 SH    SHARED   22         1200
D DISNEY WALT CO                 COM DISNEY       25468710      48     1500 SH    SHR/OTHR 23                    1500
D DISNEY WALT CO                 COM DISNEY       25468710    2259    69998 SH    SHARED   23        45498       24500
D DISNEY WALT CO                 COM DISNEY       25468710    3946   122264 SH    SHR/OTHR 23                  122264
D DISCOVER FINL SVCS             COM              25470910    9702   643414 SH    SHARED           643414
D DISCOVER FINL SVCS             COM              25470910     967    64153 SH    SHARED   01        62388        1765
D DISCOVER FINL SVCS             COM              25470910       1       75 SH    SHR/OTHR 01                      75
D DISCOVER FINL SVCS             COM              25470910    4495   298079 SH    SHARED   02       298079
D DISCOVER FINL SVCS             COM              25470910       2      195 SH    SHARED   05          195
D DISCOVER FINL SVCS             COM              25470910      78     5196 SH    SHARED   06                    5196
D DISCOVER FINL SVCS             COM              25470910    6268   415652 SH    SHARED   10       409552        6100
D DISCOVER FINL SVCS             COM              25470910     140     9317 SH    SHARED   14         9317
D DISCOVER FINL SVCS             COM              25470910      93     6170 SH    SHARED   15         6170
D DISCOVER FINL SVCS             COM              25470910      40     2700 SH    SHARED   19         2700
D DISCOVER FINL SVCS             COM              25470910      21     1438 SH    SHARED   20          362        1076
D DISCOVER FINL SVCS             COM              25470910       7      480 SH    SHR/OTHR 20                     480
D DISCOVER FINL SVCS             COM              25470910       2      146 SH    SHARED   21          146
D DISCOVER FINL SVCS             COM              25470910      62     4115 SH    SHARED   23         1065        3050
D DISCOVER FINL SVCS             COM              25470910     266    17689 SH    SHR/OTHR 23                   17689
D DISTRIBUTED ENERGY SYS CORP    COM              25475V10       1     3531 SH    SHARED             3531
D DISTRIBUCION Y SERVICIO D&S    SPONSORED ADR    25475310     252     8342 SH    SHARED             8342
D DITECH NETWORKS INC            COM              25500T10       7     2229 SH    SHARED             2229
D DIXIE GROUP INC                CL A             25551910      11     1325 SH    SHARED             1325
D DR REDDYS LABS LTD             ADR              25613520    2311   127259 SH    SHARED           127259
D DOCUMENT SCIENCES CORP         COM              25614R10       0       53 SH    SHARED               53
D DOCUMENT SEC SYS INC           COM              25614T10       1      217 SH    SHARED              217
D DOLAN MEDIA CO                 COM              25659P40     252     8660 SH    SHARED             8660
D DOLBY LABORATORIES INC         COM              25659T10     687    13837 SH    SHARED            13837
D DOLBY LABORATORIES INC         COM              25659T10     243     4897 SH    SHARED   02         4897
D DOLBY LABORATORIES INC         COM              25659T10   14916   300000 SH    SHARED   05       300000
D DOLBY LABORATORIES INC         COM              25659T10    1444    29045 SH    SHARED   10        28445         600
D DOLLAR FINL CORP               NOTE  2.875% 6/3 25664AB    12762 12500000 PRN   SHARED          2500000
D DOLLAR FINL CORP               COM              25666410    4237   138076 SH    SHARED           138076
D DOLLAR THRIFTY AUTOMOTIVE GP   COM              25674310      80     3414 SH    SHARED             3414
D DOLLAR THRIFTY AUTOMOTIVE GP   COM              25674310     107     4545 SH    SHARED   01         4545
```

```
D DOLLAR THRIFTY AUTOMOTIVE GP    COM              25674310     304    12850 SH    SHARED    02    12850
D DOLLAR THRIFTY AUTOMOTIVE GP    COM              25674310    1631    68900 SH    SHARED    10    68900
D DOLLAR TREE STORES INC          COM              25674710    4702   181408 SH    SHARED          107308         74100
D DOLLAR TREE STORES INC          COM              25674710    1493    57616 SH    SHARED    01    27766          29850
D DOLLAR TREE STORES INC          COM              25674710    1903    73455 SH    SHARED    02    73455
D DOLLAR TREE STORES INC          COM              25674710   23882   921400 SH    SHARED    10   920800            600
D DOLLAR TREE STORES INC          COM              25674710     263    10161 SH    SHARED    14           10161
D DOMINION HOMES INC              COM              25738610       0      378 SH    SHARED             378
D DOMINION RES INC VA NEW         COM              25746010   50892  1072549 SH    SHARED         1072549
D DOMINION RES INC VA NEW         COM              25746010    4632    97628 SH    SHARED    01    80666          16962
D DOMINION RES INC VA NEW         COM              25746010     104     2212 SH    SHR/OTHR  01            2212
D DOMINION RES INC VA NEW         COM              25746010    2340    49328 SH    SHARED    02    49328
D DOMINION RES INC VA NEW         COM              25746010   33712   710481 SH    SHARED    04   710481
D DOMINION RES INC VA NEW         COM              25746010      12      262 SH    SHARED    05     262
D DOMINION RES INC VA NEW         COM              25746010   27111   571366 SH    SHARED    06           571366
D DOMINION RES INC VA NEW         COM              25746010   12364   260573 SH    SHARED    10   260573
D DOMINION RES INC VA NEW         COM              25746010     177     3744 SH    SHARED    14            3744
D DOMINION RES INC VA NEW         COM              25746010     205     4340 SH    SHARED    20     3940            400
D DOMINION RES INC VA NEW         COM              25746010     156     3300 SH    SHR/OTHR  20            3300
D DOMINION RES INC VA NEW         COM              25746010     104     2200 SH    SHR/OTHR  21            2200
D DOMINION RES INC VA NEW         COM              25746010      94     2000 SH    SHARED    22            2000
D DOMINION RES INC VA NEW         COM              25746010    1461    30808 SH    SHARED    23    25908           4900
D DOMINION RES INC VA NEW         COM              25746010    1491    31426 SH    SHR/OTHR  23           31426
D DOMINOS PIZZA INC               COM              25754A20     323    24446 SH    SHARED            24446
D DOMINOS PIZZA INC               COM              25754A20      38     2900 SH    SHARED    01            2900
D DOMINOS PIZZA INC               COM              25754A20    2651   200400 SH    SHARED    10   200400
D DOMTAR CORP                     COM              25755910   20719  2694381 SH    SHARED         2694381
D DOMTAR CORP                     COM              25755910     182    23744 SH    SHARED    02    23744
D DOMTAR CORP                     COM              25755910       1      245 SH    SHARED    05     245
D DOMTAR CORP                     COM              25755910      23     3000 SH    SHARED    06            3000
D DOMTAR CORP                     COM              25755910    1023   133062 SH    SHARED    10   133062
D DOMTAR CORP                     COM              25755910    1721   223900 SH    SHARED    14          223900
D DONALDSON INC                   COM              25765110      21      472 SH    SHARED             472
D DONALDSON INC                   COM              25765110   26664   574904 SH    SHARED          574904
D DONALDSON INC                   COM              25765110    1038    22400 SH    SHARED    01    22400
D DONALDSON INC                   COM              25765110    1650    35576 SH    SHARED    02    35576
D DONALDSON INC                   COM              25765110    7340   158267 SH    SHARED    04   158267
D DONALDSON INC                   COM              25765110    9240   199240 SH    SHARED    05   199240
D DONALDSON INC                   COM              25765110     321     6933 SH    SHARED    06            6933
D DONALDSON INC                   COM              25765110     417     9004 SH    SHARED    14            9004
D DONEGAL GROUP INC               CL A             25770120       1       92 SH    SHARED              92
D DONNELLEY R R & SONS CO         COM              25786710    8833   234049 SH    SHARED          234049
D DONNELLEY R R & SONS CO         COM              25786710    1017    26969 SH    SHARED    01    26969
D DONNELLEY R R & SONS CO         COM              25786710    2026    53687 SH    SHARED    02    53687
D DONNELLEY R R & SONS CO         COM              25786710       4      130 SH    SHARED    05     130
D DONNELLEY R R & SONS CO         COM              25786710      80     2120 SH    SHARED    06            2120
D DONNELLEY R R & SONS CO         COM              25786710    6076   161000 SH    SHARED    10   161000
D DONNELLEY R R & SONS CO         COM              25786710     177     4700 SH    SHARED    14            4700
D DONNELLEY R R & SONS CO         COM              25786710      33      900 SH    SHR/OTHR  14             900
D DONNELLEY R R & SONS CO         COM              25786710      23      635 SH    SHARED    21             635
D DONNELLEY R R & SONS CO         COM              25786710     527    13986 SH    SHARED    23    13986
D DONNELLEY R R & SONS CO         COM              25786710     489    12966 SH    SHR/OTHR  23    12966
D DORAL FINL CORP                 COM NEW          25811P88    1859   103084 SH    SHARED          103084
D DORAL FINL CORP                 COM NEW          25811P88      10      600 SH    SHARED    02     600
D DORCHESTER MINERALS LP          COM UNIT         25820R10      13      695 SH    SHARED             695
D DORMAN PRODUCTS INC             COM              25827810       4      292 SH    SHARED             292
D DORMAN PRODUCTS INC             COM              25827810      18     1300 SH    SHARED    02    1300
D DOT HILL SYS CORP               COM              25848T10      71    29288 SH    SHARED           29288
D DOUBLE EAGLE PETE CO            COM PAR $0.10     25857020       3      222 SH    SHARED             222
D DOUBLE-TAKE SOFTWARE INC        COM              25859810      88     4057 SH    SHARED            4057
D DOUGLAS EMMETT INC              COM              25960P10      21      967 SH    SHARED             967
D DOUGLAS EMMETT INC              COM              25960P10     144     6400 SH    SHARED    01    6400
D DOUGLAS EMMETT INC              COM              25960P10     144     6400 SH    SHARED    02    6400
D DOUGLAS EMMETT INC              COM              25960P10    8757   387350 SH    SHARED    10   387350
D DOUGLAS EMMETT INC              COM              25960P10  175497  7761950 SH    SHARED    11  4804700        2957250
D DOVER CORP                      COM              26000310   13455   291938 SH    SHARED          291938
D DOVER CORP                      COM              26000310    1650    35809 SH    SHARED    01    29039           6770
D DOVER CORP                      COM              26000310    1070    23228 SH    SHARED    02    23228
D DOVER CORP                      COM              26000310       7      170 SH    SHARED    05     170
D DOVER CORP                      COM              26000310   26094   566163 SH    SHARED    06           566163
D DOVER CORP                      COM              26000310    8597   186537 SH    SHARED    10   186537
D DOVER CORP                      COM              26000310    2811    61000 SH    SHARED    14           61000
D DOVER CORP                      COM              26000310    5686   123373 SH    SHARED    16   123373
D DOVER CORP                      COM              26000310      50     1100 SH    SHARED    20    1015             85
D DOVER CORP                      COM              26000310      96     2100 SH    SHR/OTHR  20            2100
D DOVER CORP                      COM              26000310      11      260 SH    SHARED    21             260
D DOVER CORP                      COM              26000310      55     1200 SH    SHARED    22             900
D DOVER CORP                      COM              26000310     755    16400 SH    SHARED    22     300            900
D DOVER CORP                      COM              26000310      63     1370 SH    SHR/OTHR  23    16400
D DOVER DOWNS GAMING & ENTMT I    COM              26009510       7      654 SH    SHARED             654           1370
D DOVER MOTORSPORTS INC           COM              26017410       2      413 SH    SHARED             413
D DOVER MOTORSPORTS INC           COM              26017410      12     1900 SH    SHARED    02    1900
D DOVER SADDLERY INC              COM              26041210       0       57 SH    SHARED              57
D DOW CHEM CO                     COM              26054310     588    14940 SH    SHARED           14940
D DOW CHEM CO                     COM              26054310  191645  4861618 SH    SHARED         4858408           3210
D DOW CHEM CO                     COM              26054310    4983   126424 SH    SHARED    01   116184          10240
D DOW CHEM CO                     COM              26054310    2221    56350 SH    SHARED    02    56350
D DOW CHEM CO                     COM              26054310    1773    45000 SH    SHARED    04    45000
D DOW CHEM CO                     COM              26054310    1535    38940 SH    SHARED    05    38940
D DOW CHEM CO                     COM              26054310   21504   545516 SH    SHARED    06           545516
D DOW CHEM CO                     COM              26054310   42536  1079049 SH    SHARED    10   972649         106400
D DOW CHEM CO                     COM              26054310     360     9139 SH    SHARED    14            9139
D DOW CHEM CO                     COM              26054310     536    13600 SH    SHARED    15           13600
D DOW CHEM CO                     COM              26054310     224     5700 SH    SHARED    19            5700
D DOW CHEM CO                     COM              26054310     205     5225 SH    SHARED    20     520           4705
D DOW CHEM CO                     COM              26054310     681    17280 SH    SHR/OTHR  20           17280
D DOW CHEM CO                     COM              26054310      36      925 SH    SHARED    21             925
D DOW CHEM CO                     COM              26054310     394    10000 SH    SHARED    22    5700           4300
D DOW CHEM CO                     COM              26054310    1616    41008 SH    SHARED    23    36208           4800
D DOW CHEM CO                     COM              26054310    2649    67217 SH    SHR/OTHR  23           67217
D DOW CHEM CO                     COM              26054310    1371    34800 SH    SHARED    24    34800
D DOWNEY FINL CORP                COM              26101810   24930   801364 SH    SHARED          801364
D DOWNEY FINL CORP                COM              26101810     171     5525 SH    SHARED    01    5525
D DOWNEY FINL CORP                COM              26101810     376    12100 SH    SHARED    02    12100
D DOWNEY FINL CORP                COM              26101810     616    19804 SH    SHARED    10    19804
D DOWNEY FINL CORP                COM              26101810    1132    36400 SH    SHARED    14           36400
D DOWNEY FINL CORP                COM              26101810      20      645 SH    SHARED    21             645            36400
D DRDGOLD LIMITED                 SPON ADR NEW     26152H30      16     2277 SH    SHARED            2277
D DREAMWORKS ANIMATION SKG INC    CL A             26153C10    2625   102817 SH    SHARED          102817
D DREAMWORKS ANIMATION SKG INC    CL A             26153C10     318    12455 SH    SHARED    02    12455
D DREAMWORKS ANIMATION SKG INC    CL A             26153C10     429    16800 SH    SHARED    10    16800
D DREMAN/CLAYMORE DIVID & INC     COM              26153R10    9489   600574 SH    SHARED          600574
D DRESS BARN INC                  NOTE  2.500%12/1  26150DAB   2910  2100000 PRN    SHARED         2100000
D DRESS BARN INC                  NOTE  2.500%12/1  261570AB   3872  2794000 PRN    SHARED    02  2794000
```

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | DRESS BARN INC | COM | 26157010 | 252 | 20222 SH | SHARED | | | 20222 |
| D | DRESSER-RAND GROUP INC | COM | 26160810 | 1050 | 26894 SH | SHARED | | | 26894 |
| D | DRESSER-RAND GROUP INC | COM | 26160810 | 159 | 4095 SH | SHARED | 01 | | 4095 |
| D | DRESSER-RAND GROUP INC | COM | 26160810 | 12702 | 325300 SH | SHARED | 10 | | 325300 |
| D | DREW INDS INC | COM NEW | 26168L20 | 384 | 14023 SH | SHARED | | | 14023 |
| D | DREW INDS INC | COM NEW | 26168L20 | 46 | 1700 SH | SHARED | 01 | | 1700 |
| D | DREW INDS INC | COM NEW | 26168L20 | 15 | 550 SH | SHARED | 02 | | 550 |
| D | DREW INDS INC | COM NEW | 26168L20 | 1419 | 51800 SH | SHARED | 10 | | 51800 |
| D | DREAMS INC | COM | 26198320 | 1 | 731 SH | SHARED | | | 731 |
| D | DREYFUS HIGH YIELD STRATEGIE | SH BEN INT | 26200S10 | 2720 | 727343 SH | SHARED | | | 727343 |
| D | DRIL-QUIP INC | COM | 26203710 | 878 | 15778 SH | SHARED | | | 15778 |
| D | DRIL-QUIP INC | COM | 26203710 | 691 | 12420 SH | SHARED | 01 | | 12245 | 175 |
| D | DRIL-QUIP INC | COM | 26203710 | 15 | 275 SH | SHARED | 02 | | 275 |
| D | DRIL-QUIP INC | COM | 26203710 | 9211 | 165500 SH | SHARED | 10 | | 165500 |
| D | DRUGSTORE COM INC | COM | 26224110 | 70 | 21251 SH | SHARED | | | 21251 |
| D | DRUGSTORE COM INC | COM | 26224110 | 33 | 10000 SH | SHARED | 02 | | 10000 |
| D | DRYCLEAN USA INC | COM | 26243210 | 0 | 136 SH | SHARED | | | 136 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 282 | 6409 SH | SHARED | | | 1509 | 4900 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 147846 | 3353296 SH | SHARED | | | 3341896 | 11400 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 7897 | 179130 SH | SHARED | 01 | | 145748 | 33382 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 1124 | 25495 SH | SHR/OTHR | 01 | | 25495 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 8788 | 199325 SH | SHARED | 02 | | 198525 | 800 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 48 | 1100 SH | SHARED | 04 | | 1100 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 15959 | 361967 SH | SHARED | 04 | | 361967 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 21295 | 482997 SH | SHARED | 05 | | 482997 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 2275 | 51610 SH | SHARED | 06 | | 51610 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 24575 | 557392 SH | SHARED | 10 | | 557392 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 3952 | 89651 SH | SHARED | 14 | | 89651 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 2998 | 68000 SH | SHARED | 15 | | 68000 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 689 | 15648 SH | SHARED | 20 | | 4805 | 10843 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 334 | 7576 SH | SHR/OTHR | 20 | | 7576 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 403 | 9155 SH | SHARED | 21 | | 9155 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 253 | 5759 SH | SHARED | 22 | | 3659 | 2100 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 35 | 800 SH | SHR/OTHR | 22 | | 800 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 5781 | 131120 SH | SHARED | 23 | | 127015 | 4105 |
| D | DU PONT E I DE NEMOURS & CO | COM | 26353410 | 5990 | 135866 SH | SHR/OTHR | 23 | | 135866 |
| D | DUCKWALL-ALCO STORES INC NEW | COM | 26414210 | 829 | 25426 SH | SHARED | | | 25426 |
| D | DUCOMMUN INC DEL | COM | 26414710 | 239 | 6296 SH | SHARED | | | 6296 |
| D | DUCOMMUN INC DEL | COM | 26414710 | 49 | 1300 SH | SHARED | 02 | | 1300 |
| D | DUKE ENERGY CORP NEW | COM | 26441C10 | 39165 | 1941749 SH | SHARED | | | 1941749 |
| D | DUKE ENERGY CORP NEW | COM | 26441C10 | 3775 | 187166 SH | SHARED | 01 | | 154529 | 32637 |
| D | DUKE ENERGY CORP NEW | COM | 26441C10 | 123 | 6104 SH | SHR/OTHR | 01 | | 6104 |
| D | DUKE ENERGY CORP NEW | COM | 26441C10 | 926 | 45917 SH | SHARED | 02 | | 45917 |
| D | DUKE ENERGY CORP NEW | COM | 26441C10 | 51206 | 2538741 SH | SHARED | 04 | | 2538741 |
| D | DUKE ENERGY CORP NEW | COM | 26441C10 | 11 | 560 SH | SHARED | 05 | | 560 |
| D | DUKE ENERGY CORP NEW | COM | 26441C10 | 27460 | 1361439 SH | SHARED | 06 | | | 1361439 |
| D | DUKE ENERGY CORP NEW | COM | 26441C10 | 27619 | 1369323 SH | SHARED | 10 | | 1369323 |
| D | DUKE ENERGY CORP NEW | COM | 26441C10 | 75 | 3764 SH | SHARED | 14 | | 3764 |
| D | DUKE ENERGY CORP NEW | COM | 26441C10 | 65 | 3250 SH | SHARED | 20 | | 1700 | 1550 |
| D | DUKE ENERGY CORP NEW | COM | 26441C10 | 111 | 5518 SH | SHARED | 21 | | 5518 |
| D | DUKE ENERGY CORP NEW | COM | 26441C10 | 309 | 15325 SH | SHARED | 22 | | 9825 | 5500 |
| D | DUKE ENERGY CORP NEW | COM | 26441C10 | 141 | 7000 SH | SHARED | 23 | | 2000 | 5000 |
| D | DUKE ENERGY CORP NEW | COM | 26441C10 | 212 | 10512 SH | SHR/OTHR | 23 | | 10512 |
| D | DUKE REALTY CORP | COM NEW | 26441150 | 7718 | 295957 SH | SHARED | | | 295957 |
| D | DUKE REALTY CORP | COM NEW | 26441150 | 733 | 28125 SH | SHARED | 01 | | 1625 | 26500 |
| D | DUKE REALTY CORP | COM NEW | 26441150 | 190 | 7297 SH | SHARED | 02 | | 7297 |
| D | DUKE REALTY CORP | COM NEW | 26441150 | 148 | 5700 SH | SHARED | 10 | | 5700 |
| D | DUKE REALTY CORP | COM NEW | 26441150 | 31249 | 1198200 SH | SHARED | 11 | | | 1198200 |
| D | DUKE REALTY CORP | COM NEW | 26441150 | 114 | 4400 SH | SHARED | 14 | | 4400 |
| D | DUKE REALTY CORP | COM NEW | 26441150 | 10 | 420 SH | SHARED | 21 | | 420 |
| D | DUKE REALTY CORP | COM NEW | 26441150 | 62 | 2400 SH | SHARED | 23 | | 2400 |
| D | DUN & BRADSTREET CORP DEL NE | COM | 26483E10 | 1731 | 19535 SH | SHARED | | | 19535 |
| D | DUN & BRADSTREET CORP DEL NE | COM | 26483E10 | 5852 | 66038 SH | SHARED | 01 | | 38126 | 27912 |
| D | DUN & BRADSTREET CORP DEL NE | COM | 26483E10 | 141 | 1600 SH | SHR/OTHR | 01 | | 1600 |
| D | DUN & BRADSTREET CORP DEL NE | COM | 26483E10 | 269 | 3039 SH | SHARED | 02 | | 3039 |
| D | DUN & BRADSTREET CORP DEL NE | COM | 26483E10 | 3545 | 40000 SH | SHARED | 04 | | 40000 |
| D | DUN & BRADSTREET CORP DEL NE | COM | 26483E10 | 47 | 540 SH | SHARED | 06 | | 540 |
| D | DUN & BRADSTREET CORP DEL NE | COM | 26483E10 | 9054 | 102161 SH | SHARED | 10 | | 102161 |
| D | DUN & BRADSTREET CORP DEL NE | COM | 26483E10 | 8 | 100 SH | SHARED | 14 | | 100 |
| D | DUN & BRADSTREET CORP DEL NE | COM | 26483E10 | 53 | 600 SH | SHARED | 20 | | 600 |
| D | DUN & BRADSTREET CORP DEL NE | COM | 26483E10 | 21 | 240 SH | SHR/OTHR | 21 | | 240 |
| D | DUN & BRADSTREET CORP DEL NE | COM | 26483E10 | 13 | 150 SH | SHARED | 22 | | 150 |
| D | DUN & BRADSTREET CORP DEL NE | COM | 26483E10 | 2796 | 31550 SH | SHARED | 23 | | 31550 |
| D | DUN & BRADSTREET CORP DEL NE | COM | 26483E10 | 3337 | 37662 SH | SHR/OTHR | 23 | | | 37662 |
| D | DUNCAN ENERGY PARTNERS LP | COM UNITS | 26502610 | 21 | 990 SH | SHARED | | | 990 |
| D | DUNE ENERGY INC | COM NEW | 26533820 | 1 | 845 SH | SHARED | | | 845 |
| D | DUPONT FABROS TECHNOLOGY INC | COM | 26613Q10 | 2352 | 120000 SH | SHARED | | | 120000 |
| D | DUPONT FABROS TECHNOLOGY INC | COM | 26613Q10 | 5717 | 291700 SH | SHARED | 10 | | 291700 |
| D | DURECT CORP | NOTE  6.250% 6/1 | 26660SAB | 744 | 366000 PRN | SHARED | | | 366000 |
| D | DURECT CORP | COM | 26660510 | 41 | 6450 SH | SHARED | 02 | | 6450 |
| D | DUSA PHARMACEUTICALS INC | COM | 26689810 | 1 | 555 SH | SHARED | | | 555 |
| D | DYADIC INTL INC DEL | COM | 26745T10 | 0 | 530 SH | SHARED | | | 530 |
| D | DYADIC INTL INC DEL | COM | 26745T10 | 0 | 137700 SH | SHARED | 04 | | 137700 |
| D | DYAX CORP | COM | 26746E10 | 1085 | 296513 SH | SHARED | | | 296513 |
| D | DYCOM INDS INC | COM | 26747510 | 1195 | 44871 SH | SHARED | | | 44871 |
| D | DYCOM INDS INC | COM | 26747510 | 362 | 13600 SH | SHARED | 01 | | 1400 | 12200 |
| D | DYCOM INDS INC | COM | 26747510 | 51 | 1940 SH | SHARED | 02 | | 1940 |
| D | DYCOM INDS INC | COM | 26747510 | 2230 | 83700 SH | SHARED | 10 | | 83700 |
| D | DYNACQ HEALTHCARE INC | COM | 26779V10 | 0 | 173 SH | SHARED | | | 173 |
| D | DYNAMIC MATLS CORP | COM | 26780810 | 111 | 1893 SH | SHARED | | | 1893 |
| D | DYNAMIC MATLS CORP | COM | 26788810 | 69 | 1175 SH | SHARED | 01 | | 1175 |
| D | DYNAMICS RESH CORP | COM | 26805710 | 5 | 468 SH | SHARED | | | 468 |
| D | DYNATRONICS CORP | COM | 26815710 | 0 | 263 SH | SHARED | | | 263 |
| D | DYNAVAX TECHNOLOGIES CORP | COM | 26815810 | 5 | 1036 SH | SHARED | | | 1036 |
| D | DYNCORP INTL INC | CL A | 26817C10 | 295 | 10992 SH | SHARED | | | 10992 |
| D | DYNCORP INTL INC | CL A | 26817C10 | 26 | 1000 SH | SHARED | 01 | | 1000 |
| D | DYNCORP INTL INC | CL A | 26817C10 | 1018 | 37900 SH | SHARED | 10 | | 37900 |
| D | DYNEGY INC DEL | CL A | 26817G10 | 5015 | 702484 SH | SHARED | | | 702484 |
| D | DYNEGY INC DEL | CL A | 26817G10 | 520 | 72916 SH | SHARED | 01 | | 72916 |
| D | DYNEGY INC DEL | CL A | 26817G10 | 213 | 29885 SH | SHARED | 02 | | 29885 |
| D | DYNEGY INC DEL | CL A | 26817G10 | 21 | 3000 SH | SHARED | 06 | | | 3000 |
| D | DYNEGY INC DEL | CL A | 26817G10 | 5111 | 715862 SH | SHARED | 10 | | 715862 |
| D | DYNEGY INC DEL | CL A | 26817G10 | 60 | 8500 SH | SHARED | 21 | | | 8500 |
| D | DYNEX CAP INC | COM NEW | 26817Q50 | 118 | 13304 SH | SHARED | | | 13304 |
| D | E COM VENTURES INC | COM | 26830K20 | 1 | 50 SH | SHARED | | | 50 |
| D | EFJ INC | COM | 26838830 | 4 | 1539 SH | SHARED | | | 1539 |
| D | E HOUSE CHINA HLDGS LTD | ADR | 26852M10 | 12 | 512 SH | SHARED | | | 512 |
| D | EMAK WORLDWIDE INC | COM | 26861V10 | 0 | 90 SH | SHARED | | | 90 |
| D | E M C CORP MASS | NOTE  1.750%12/0 | 268648AK | 15266 | 11300000 PRN | SHARED | | | 1300000 |
| D | E M C CORP MASS | NOTE  1.750%12/0 | 268648AM | 54840 | 40000000 PRN | SHARED | | | 00000000 |
| D | E M C CORP MASS | COM | 26864810 | 2514 | 135697 SH | SHARED | | | 98495 | 37202 |
| D | E M C CORP MASS | COM | 26864810 | 215130 | 11609842 SH | SHARED | | | 1600722 | 9120 |
| D | E M C CORP MASS | COM | 26864810 | 19023 | 1026623 SH | SHARED | 01 | | 787760 | 238863 |
| D | E M C CORP MASS | COM | 26864810 | 4231 | 228345 SH | SHR/OTHR | 01 | | | 228345 |

| | Name | Class | CUSIP | Value | Shares | Vote | Code | Shared | Other |
|---|---|---|---|---|---|---|---|---|---|
| D | E M C CORP MASS | COM | 26864810 | 3887 | 209771 SH | SHARED | 02 | 209771 | |
| D | E M C CORP MASS | COM | 26864810 | 740 | 39977 SH | SHARED | 04 | | 39977 |
| D | E M C CORP MASS | COM | 26864810 | 33924 | 1830800 SH | SHARED | 04 | 1830800 | |
| D | E M C CORP MASS | COM | 26864810 | 17 | 920 SH | SHARED | 05 | 920 | |
| D | E M C CORP MASS | COM | 26864810 | 391 | 21140 SH | SHARED | 06 | | 21140 |
| D | E M C CORP MASS | COM | 26864810 | 95923 | 5176683 SH | SHARED | 10 | 5014438 | 162245 |
| D | E M C CORP MASS | COM | 26864810 | 3 | 200 SH | SHR/OTHR | 10 | | 200 |
| D | E M C CORP MASS | COM | 26864810 | 577 | 31182 SH | SHARED | 14 | | 31182 |
| D | E M C CORP MASS | COM | 26864810 | 2594 | 140000 SH | SHARED | 15 | | 140000 |
| D | E M C CORP MASS | COM | 26864810 | 5313 | 286735 SH | SHARED | 16 | 286735 | |
| D | E M C CORP MASS | COM | 26864810 | 4947 | 266979 SH | SHARED | 19 | | 266979 |
| D | E M C CORP MASS | COM | 26864810 | 1625 | 87705 SH | SHARED | 20 | 57420 | 30285 |
| D | E M C CORP MASS | COM | 26864810 | 390 | 21050 SH | SHR/OTHR | 20 | | 21050 |
| D | E M C CORP MASS | COM | 26864810 | 606 | 32720 SH | SHARED | 21 | 32720 | |
| D | E M C CORP MASS | COM | 26864810 | 48 | 2600 SH | SHR/OTHR | 21 | | 2600 |
| D | E M C CORP MASS | COM | 26864810 | 1091 | 58890 SH | SHARED | 22 | 53125 | 5765 |
| D | E M C CORP MASS | COM | 26864810 | 172 | 9325 SH | SHR/OTHR | 22 | | 9325 |
| D | E M C CORP MASS | COM | 26864810 | 2998 | 161803 SH | SHARED | 23 | 140348 | 21455 |
| D | E M C CORP MASS | COM | 26864810 | 3230 | 174335 SH | SHR/OTHR | 23 | | 174335 |
| D | E M C CORP MASS | COM | 26864810 | 91 | 4958 SH | SHARED | 24 | 4958 | |
| D | EMC INS GROUP INC | COM | 26866410 | 6 | 273 SH | SHARED | | 273 | |
| D | EMS TECHNOLOGIES INC | COM | 26873N10 | 397 | 13159 SH | SHARED | | 13159 | |
| D | EMS TECHNOLOGIES INC | COM | 26873N10 | 5503 | 182000 SH | SHARED | 10 | 182000 | |
| D | ENSCO INTL INC | COM | 26874Q10 | 24 | 403 SH | SHARED | | | 403 |
| D | ENSCO INTL INC | COM | 26874Q10 | 10068 | 168883 SH | SHARED | | 168883 | |
| D | ENSCO INTL INC | COM | 26874Q10 | 2012 | 33750 SH | SHARED | 01 | 26350 | 7400 |
| D | ENSCO INTL INC | COM | 26874Q10 | 237 | 3984 SH | SHR/OTHR | 01 | | 3984 |
| D | ENSCO INTL INC | COM | 26874Q10 | 4937 | 82811 SH | SHARED | 02 | 82811 | |
| D | ENSCO INTL INC | COM | 26874Q10 | 101 | 1695 SH | SHARED | 04 | | 1695 |
| D | ENSCO INTL INC | COM | 26874Q10 | 43869 | 735824 SH | SHARED | 04 | 735824 | |
| D | ENSCO INTL INC | COM | 26874Q10 | 7 | 120 SH | SHARED | 05 | 120 | |
| D | ENSCO INTL INC | COM | 26874Q10 | 25162 | 422043 SH | SHARED | 06 | | 422043 |
| D | ENSCO INTL INC | COM | 26874Q10 | 54800 | 919170 SH | SHARED | 10 | 916570 | 2600 |
| D | ENSCO INTL INC | COM | 26874Q10 | 2252 | 37782 SH | SHARED | 14 | | 37782 |
| D | ENSCO INTL INC | COM | 26874Q10 | 4246 | 71226 SH | SHARED | 16 | 71226 | |
| D | ENSCO INTL INC | COM | 26874Q10 | 61 | 1025 SH | SHARED | 20 | 1025 | |
| D | ENI S P A | SPONSORED ADR | 26874R10 | 4185 | 57781 SH | SHARED | | 57781 | |
| D | ENI S P A | SPONSORED ADR | 26874R10 | 18 | 250 SH | SHARED | 01 | | 250 |
| D | ENI S P A | SPONSORED ADR | 26874R10 | 194 | 2690 SH | SHARED | 21 | 2649 | 41 |
| D | ENI S P A | SPONSORED ADR | 26874R10 | 72 | 1000 SH | SHR/OTHR | 23 | | 1000 |
| D | EOG RES INC | COM | 26875P10 | 133 | 1496 SH | SHARED | | 1496 | |
| D | EOG RES INC | COM | 26875P10 | 33055 | 370368 SH | SHARED | | 370368 | |
| D | EOG RES INC | COM | 26875P10 | 6855 | 76811 SH | SHARED | 01 | 67296 | 9515 |
| D | EOG RES INC | COM | 26875P10 | 465 | 5212 SH | SHR/OTHR | 01 | | 5212 |
| D | EOG RES INC | COM | 26875P10 | 9532 | 106803 SH | SHARED | 02 | 106803 | |
| D | EOG RES INC | COM | 26875P10 | 892 | 10000 SH | SHARED | 04 | 10000 | |
| D | EOG RES INC | COM | 26875P10 | 11 | 130 SH | SHARED | 05 | 130 | |
| D | EOG RES INC | COM | 26875P10 | 227 | 2550 SH | SHARED | 06 | | 2550 |
| D | EOG RES INC | COM | 26875P10 | 109861 | 1230942 SH | SHARED | 10 | 1157802 | 73140 |
| D | EOG RES INC | COM | 26875P10 | 36 | 412 SH | SHARED | 19 | | 412 |
| D | EOG RES INC | COM | 26875P10 | 676 | 7585 SH | SHARED | 20 | 6560 | 1025 |
| D | EOG RES INC | COM | 26875P10 | 22 | 250 SH | SHR/OTHR | 20 | | 250 |
| D | EOG RES INC | COM | 26875P10 | 4 | 50 SH | SHR/OTHR | 21 | | 50 |
| D | EOG RES INC | COM | 26875P10 | 92 | 1035 SH | SHARED | 22 | 896 | 139 |
| D | EOG RES INC | COM | 26875P10 | 27 | 313 SH | SHR/OTHR | 22 | | 313 |
| D | EOG RES INC | COM | 26875P10 | 463 | 5190 SH | SHARED | 23 | 4965 | 225 |
| D | EOG RES INC | COM | 26875P10 | 468 | 5250 SH | SHR/OTHR | 23 | | 5250 |
| D | EOG RES INC | COM | 26875P10 | 1030 | 11542 SH | SHARED | 24 | 11542 | |
| D | EON COMMUNICATIONS CORP | COM | 26876310 | 0 | 259 SH | SHARED | | 259 | |
| D | EP MEDSYSTEMS INC | COM | 26881J10 | 1 | 670 SH | SHARED | | 670 | |
| D | EPIX PHARMACEUTICALS INC | COM NEW | 26881Q30 | 3 | 940 SH | SHARED | | 940 | |
| D | EPIQ SYS INC | COM | 26882D10 | 56 | 3225 SH | SHARED | 02 | 3225 | |
| D | ERP OPER LTD PARTNERSHIP | NOTE 3.850% 8/1 | 26884AV0 | 5130 | 5350000 PRN | SHARED | | 5350000 | |
| D | ESB FINL CORP | COM | 26884P10 | 2 | 295 SH | SHARED | | 295 | |
| D | EAGLE BANCORP INC MD | COM | 26894810 | 2 | 246 SH | SHARED | | 246 | |
| D | ESS TECHNOLOGY INC | COM | 26915110 | 7 | 5772 SH | SHARED | | 5772 | |
| D | E TRADE FINANCIAL CORP | COM | 26924610 | 3454 | 973214 SH | SHARED | | 973214 | |
| D | E TRADE FINANCIAL CORP | COM | 26924610 | 263 | 74090 SH | SHARED | 01 | 70940 | 3150 |
| D | E TRADE FINANCIAL CORP | COM | 26924610 | 1622 | 456930 SH | SHARED | 02 | 456930 | |
| D | E TRADE FINANCIAL CORP | COM | 26924610 | 497 | 140000 SH | SHARED | 04 | 140000 | |
| D | E TRADE FINANCIAL CORP | COM | 26924610 | 9 | 2600 SH | SHARED | 06 | | 2600 |
| D | E TRADE FINANCIAL CORP | COM | 26924610 | 807 | 227600 SH | SHARED | 10 | 227600 | |
| D | EVCI CAREER COLLEGES HLDG CO | COM NEW | 26926P30 | 0 | 112 SH | SHARED | | 112 | |
| D | EV ENERGY PARTNERS LP | COM UNITS | 26926V10 | 7 | 228 SH | SHARED | | 228 | |
| D | EXCO RESOURCES INC | COM | 26927940 | 9 | 588 SH | SHARED | | 588 | |
| D | EXCO RESOURCES INC | COM | 26927940 | 1021 | 65975 SH | SHARED | 01 | 65400 | 575 |
| D | EXCO RESOURCES INC | COM | 26927940 | 832 | 53775 SH | SHR/OTHR | 01 | | 53775 |
| D | EXCO RESOURCES INC | COM | 26927940 | 9325 | 602410 SH | SHARED | 10 | 602410 | |
| D | EV3 INC | COM | 26928A20 | 29 | 2358 SH | SHARED | | 1633 | 725 |
| D | EV3 INC | COM | 26928A20 | 146 | 11500 SH | SHARED | 01 | 11500 | |
| D | EV3 INC | COM | 26928A20 | 53 | 4175 SH | SHARED | 02 | 4175 | |
| D | EXX INC | CL A | 26928210 | 0 | 125 SH | SHARED | | 125 | |
| D | E Z EM INC | COM NEW | 26930540 | 3 | 191 SH | SHARED | | 191 | |
| D | EAGLE MATERIALS INC | COM | 26969P10 | 1878 | 52940 SH | SHARED | | 52940 | |
| D | EAGLE MATERIALS INC | COM | 26969P10 | 43 | 1236 SH | SHARED | 01 | 1236 | |
| D | EAGLE MATERIALS INC | COM | 26969P10 | 232 | 6557 SH | SHARED | 10 | 6557 | |
| D | EAGLE ROCK ENERGY PARTNERS L | UNIT | 27000610 | 7049 | 385621 SH | SHARED | | 385621 | |
| D | EAGLE TEST SYS INC | COM | 27000610 | 651 | 50950 SH | SHARED | | 50950 | |
| D | EARTHLINK INC | COM | 27032110 | 514 | 72810 SH | SHARED | | 72810 | |
| D | EARTHLINK INC | COM | 27032110 | 118 | 16700 SH | SHARED | 01 | 3900 | 12800 |
| D | EARTHLINK INC | COM | 27032110 | 278 | 39400 SH | SHARED | 02 | 39400 | |
| D | EARTHLINK INC | COM | 27032110 | 388 | 55000 SH | SHARED | 04 | 55000 | |
| D | EARTHLINK INC | COM | 27032110 | 1983 | 280584 SH | SHARED | 10 | 280584 | |
| D | EAST WEST BANCORP INC | COM | 27579810 | 176 | 7267 SH | SHARED | | 7267 | |
| D | EAST WEST BANCORP INC | COM | 27579810 | 81 | 3350 SH | SHARED | 01 | 3350 | |
| D | EAST WEST BANCORP INC | COM | 27579810 | 9 | 400 SH | SHARED | 02 | 400 | |
| D | EAST WEST BANCORP INC | COM | 27579810 | 780 | 32225 SH | SHARED | 10 | 32225 | |
| D | EASTERN CO | COM | 27631710 | 2 | 139 SH | SHARED | | 139 | |
| D | EASTERN INS HLDGS INC | COM | 27653410 | 11 | 716 SH | SHARED | | 716 | |
| D | EASTERN VA BANKSHARES INC | COM | 27719610 | 2 | 159 SH | SHARED | | 159 | |
| D | EASTGROUP PPTY INC | COM | 27727610 | 117 | 2800 SH | SHARED | | 2800 | |
| D | EASTGROUP PPTY INC | COM | 27727610 | 29 | 700 SH | SHARED | 01 | 700 | |
| D | EASTGROUP PPTY INC | COM | 27727610 | 405 | 9700 SH | SHARED | 10 | 9700 | |
| D | EASTGROUP PPTY INC | COM | 27727610 | 6114 | 146100 SH | SHARED | 11 | | 146100 |
| D | EASTMAN CHEM CO | COM | 27743210 | 52133 | 853384 SH | SHARED | | 838084 | 15300 |
| D | EASTMAN CHEM CO | COM | 27743210 | 531 | 8701 SH | SHARED | 01 | 8701 | |
| D | EASTMAN CHEM CO | COM | 27743210 | 47 | 783 SH | SHR/OTHR | 01 | | 783 |
| D | EASTMAN CHEM CO | COM | 27743210 | 996 | 16305 SH | SHARED | 02 | 16305 | |
| D | EASTMAN CHEM CO | COM | 27743210 | 27363 | 447916 SH | SHARED | 10 | 430316 | 17600 |
| D | EASTMAN CHEM CO | COM | 27743210 | 59 | 967 SH | SHARED | 22 | 911 | 56 |
| D | EASTMAN CHEM CO | COM | 27743210 | 4 | 75 SH | SHR/OTHR | 23 | | 75 |
| D | EASTMAN KODAK CO | COM | 27746110 | 9562 | 437265 SH | SHARED | | 437265 | |
| D | EASTMAN KODAK CO | COM | 27746110 | 728 | 33300 SH | SHARED | 01 | 33300 | |
| D | EASTMAN KODAK CO | COM | 27746110 | 43090 | 1970310 SH | SHARED | 02 | 1970310 | |

| | Issuer | Class | CUSIP | Value | Shares | Type | Code | Sole | Shared |
|---|---|---|---|---|---|---|---|---|---|
| D | EASTMAN KODAK CO | COM | 27746110 | 2 | 110 SH | SHARED | 05 | 110 | |
| D | EASTMAN KODAK CO | COM | 27746110 | 56 | 2600 SH | SHARED | 06 | | 2600 |
| D | EASTMAN KODAK CO | COM | 27746110 | 3351 | 153228 SH | SHARED | 10 | 153228 | |
| D | EASTMAN KODAK CO | COM | 27746110 | 216 | 9900 SH | SHARED | 14 | | 9900 |
| D | EASTMAN KODAK CO | COM | 27746110 | 2187 | 100000 SH | SHARED | 15 | | 100000 |
| D | EASTMAN KODAK CO | COM | 27746110 | 84 | 3870 SH | SHARED | 23 | 3645 | 225 |
| D | EASTMAN KODAK CO | COM | 27746110 | 203 | 9300 SH | SHR/OTHR | 23 | | 9300 |
| D | EASYLINK SERVICES INTL CORP | CL A | 27785810 | 1 | 633 SH | SHARED | | 633 | |
| D | EATON CORP | COM | 27805810 | 34004 | 350740 SH | SHARED | | 350740 | |
| D | EATON CORP | COM | 27805810 | 1754 | 18094 SH | SHARED | 01 | 18094 | |
| D | EATON CORP | COM | 27805810 | 569 | 5879 SH | SHARED | 02 | 5879 | |
| D | EATON CORP | COM | 27805810 | 1735 | 17900 SH | SHARED | 04 | 17900 | |
| D | EATON CORP | COM | 27805810 | 8 | 90 SH | SHARED | 05 | 90 | |
| D | EATON CORP | COM | 27805810 | 1598 | 16490 SH | SHARED | 06 | | 16490 |
| D | EATON CORP | COM | 27805810 | 18275 | 188509 SH | SHARED | 10 | 188509 | |
| D | EATON CORP | COM | 27805810 | 1842 | 19000 SH | SHARED | 14 | | 19000 |
| D | EATON CORP | COM | 27805810 | 96 | 1000 SH | SHARED | 21 | | 1000 |
| D | EATON CORP | COM | 27805810 | 387 | 4000 SH | SHARED | 23 | 4000 | |
| D | EATON VANCE CA MUNI INCOME T | SH BEN INT | 27826F10 | 132 | 10000 SH | SHARED | 20 | | 10000 |
| D | EATON VANCE NJ MUNI INCOME T | SH BEN INT | 27826V10 | 161 | 12600 SH | SHARED | | 12600 | |
| D | EATON VANCE CORP | COM NON VTG | 27826510 | 4272 | 94093 SH | SHARED | | 94093 | |
| D | EATON VANCE CORP | COM NON VTG | 27826510 | 1847 | 40695 SH | SHARED | 01 | 2695 | 38000 |
| D | EATON VANCE CORP | COM NON VTG | 27826510 | 411 | 9054 SH | SHARED | 02 | 9054 | |
| D | EATON VANCE CORP | COM NON VTG | 27826510 | 18628 | 410238 SH | SHARED | 10 | 410238 | |
| D | EATON VANCE INS MUN BD FD | COM | 27827J10 | 1 | 84 SH | SHARED | | 84 | |
| D | EATON VANCE CR OPPORTUNIT FD | COM | 27827110 | 340 | 20900 SH | SHARED | | 20900 | |
| D | EATON VANCE FLTING RATE INC | COM | 27827910 | 663 | 42503 SH | SHARED | | 42503 | |
| D | EATON VANCE INS CA MUN BD FD | COM | 27828A10 | 0 | 63 SH | SHARED | | 63 | |
| D | EATON VANCE LTD DUR INCOME F | COM | 27828H10 | 3907 | 261700 SH | SHARED | | 261700 | |
| D | EATON VANCE SR FLTNG RTE TR | COM | 27828Q10 | 7230 | 466500 SH | SHARED | | 466500 | |
| D | EATON VANCE SH TM DR DIVR IN | NOTE | 27828V10 | 802 | 50069 SH | SHARED | | 50069 | |
| D | EATON VANCE TAX MNG GBL DV E | COM | 27829F10 | 4956 | 300000 SH | SHARED | | 300000 | |
| D | EBAY INC | COM | 27864210 | 124408 | 3748372 SH | SHARED | | 3709472 | 38900 |
| D | EBAY INC | COM | 27864210 | 4488 | 135247 SH | SHARED | 01 | 135247 | |
| D | EBAY INC | COM | 27864210 | 1935 | 58321 SH | SHARED | 02 | 58321 | |
| D | EBAY INC | COM | 27864210 | 76446 | 2303300 SH | SHARED | 04 | 2303300 | |
| D | EBAY INC | COM | 27864210 | 16 | 490 SH | SHARED | 05 | 490 | |
| D | EBAY INC | COM | 27864210 | 360 | 10850 SH | SHARED | 06 | | 10850 |
| D | EBAY INC | COM | 27864210 | 54686 | 1647695 SH | SHARED | 10 | 1647695 | |
| D | EBAY INC | COM | 27864210 | 1726 | 52019 SH | SHARED | 14 | 18000 | 34019 |
| D | EBAY INC | COM | 27864210 | 13 | 400 SH | SHARED | 20 | 400 | |
| D | EBAY INC | COM | 27864210 | 9 | 292 SH | SHARED | 21 | | 292 |
| D | EBAY INC | COM | 27864210 | 26 | 800 SH | SHR/OTHR | 23 | | 800 |
| D | EBIX INC | COM NEW | 27871520 | 3 | 52 SH | SHARED | | 52 | |
| D | ECHELON CORP | COM | 27874N10 | 72 | 3513 SH | SHARED | | 3513 | |
| D | ECHELON CORP | COM | 27874N10 | 6 | 325 SH | SHARED | 22 | | 325 |
| D | ECHOSTAR COMMUNICATIONS NEW | CL A | 27876210 | 22236 | 589517 SH | SHARED | | 589517 | |
| D | ECHOSTAR COMMUNICATIONS NEW | CL A | 27876210 | 830 | 22016 SH | SHARED | 01 | 15046 | 6970 |
| D | ECHOSTAR COMMUNICATIONS NEW | CL A | 27876210 | 221 | 5875 SH | SHR/OTHR | 01 | | 5875 |
| D | ECHOSTAR COMMUNICATIONS NEW | CL A | 27876210 | 1815 | 48141 SH | SHARED | 02 | 48141 | |
| D | ECHOSTAR COMMUNICATIONS NEW | CL A | 27876210 | 67 | 1790 SH | SHARED | 06 | | 1790 |
| D | ECHOSTAR COMMUNICATIONS NEW | CL A | 27876210 | 1059 | 28082 SH | SHARED | 10 | 28082 | |
| D | ECHOSTAR COMMUNICATIONS NEW | CL A | 27876210 | 449 | 11908 SH | SHARED | 14 | | 11908 |
| D | ECHOSTAR COMMUNICATIONS NEW | CL A | 27876210 | 3 | 100 SH | SHARED | 20 | 100 | |
| D | ECHOSTAR COMMUNICATIONS NEW | CL A | 27876210 | 14 | 395 SH | SHR/OTHR | 21 | | 395 |
| D | ECHOSTAR COMMUNICATIONS NEW | CL A | 27876210 | 113 | 3000 SH | SHARED | 23 | | 3000 |
| D | ECLIPSYS CORP | COM | 27885610 | 107 | 4267 SH | SHARED | | 4267 | |
| D | ECLIPSYS CORP | COM | 27885610 | 364 | 14400 SH | SHARED | 01 | | 14400 |
| D | ECLIPSYS CORP | COM | 27885610 | 554 | 21900 SH | SHARED | 10 | 21900 | |
| D | ECOLAB INC | COM | 27886510 | 12289 | 239991 SH | SHARED | | 239991 | |
| D | ECOLAB INC | COM | 27886510 | 1289 | 25186 SH | SHARED | 01 | 24746 | 440 |
| D | ECOLAB INC | COM | 27886510 | 71 | 1400 SH | SHR/OTHR | 01 | | 1400 |
| D | ECOLAB INC | COM | 27886510 | 148 | 2898 SH | SHARED | 02 | 2898 | |
| D | ECOLAB INC | COM | 27886510 | 79 | 1550 SH | SHARED | 06 | | 1550 |
| D | ECOLAB INC | COM | 27886510 | 53212 | 1039098 SH | SHARED | 10 | 991998 | 47100 |
| D | ECOLAB INC | COM | 27886510 | 21 | 429 SH | SHARED | 14 | | 429 |
| D | ECOLAB INC | COM | 27886510 | 2560 | 50000 SH | SHARED | 15 | | 50000 |
| D | ECOLAB INC | COM | 27886510 | 207 | 4050 SH | SHARED | 21 | | 4050 |
| D | ECOLAB INC | COM | 27886510 | 14 | 280 SH | SHR/OTHR | 22 | | 280 |
| D | ECOLAB INC | COM | 27886510 | 496 | 9700 SH | SHARED | 23 | 9700 | |
| D | ECOLAB INC | COM | 27886510 | 944 | 18450 SH | SHR/OTHR | 23 | | 18450 |
| D | ECOLAB INC | COM | 27886510 | 75 | 1484 SH | SHARED | 24 | | 1484 |
| D | ECOLOGY & ENVIRONMENT INC | CL A | 27887810 | 0 | 32 SH | SHARED | | 32 | |
| D | EDAC TECHNOLOGIES CORP | COM | 27928510 | 1 | 109 SH | SHARED | | 109 | |
| D | EDEN BIOSCIENCE CORP | COM NEW | 27944588 | 0 | 145 SH | SHARED | | 145 | |
| D | EDGAR ONLINE INC | COM | 27976510 | 6 | 1950 SH | SHARED | | 1950 | |
| D | EDGE PETE CORP DEL | COM | 27986210 | 38 | 6575 SH | SHARED | | 6575 | |
| D | EDGE PETE CORP DEL | COM | 27986210 | 147 | 24800 SH | SHARED | 10 | 24800 | |
| D | EDGE PETE CORP DEL | PFD CONV A | 27986220 | 14077 | 417100 SH | SHARED | | 417100 | |
| D | EDGEWATER TECHNOLOGY INC | COM | 28035810 | 3 | 462 SH | SHARED | | 462 | |
| D | EDGEWATER TECHNOLOGY INC | COM | 28035810 | 3 | 425 SH | SHARED | 02 | 425 | |
| D | EDGEWATER TECHNOLOGY INC | COM | 28035810 | 584 | 80000 SH | SHARED | 10 | 80000 | |
| D | EDIETS COM INC | COM | 28059710 | 1 | 262 SH | SHARED | | 262 | |
| D | EDISON INTL | COM | 28102010 | 3902 | 73128 SH | SHARED | | 51880 | 21248 |
| D | EDISON INTL | COM | 28102010 | 37027 | 693787 SH | SHARED | | 638387 | 55400 |
| D | EDISON INTL | COM | 28102010 | 18876 | 353684 SH | SHARED | 01 | 298420 | 55264 |
| D | EDISON INTL | COM | 28102010 | 2652 | 49693 SH | SHR/OTHR | 01 | | 49693 |
| D | EDISON INTL | COM | 28102010 | 1182 | 22149 SH | SHARED | 02 | 22149 | |
| D | EDISON INTL | COM | 28102010 | 987 | 18495 SH | SHARED | 04 | | 18495 |
| D | EDISON INTL | COM | 28102010 | 471 | 8840 SH | SHARED | 04 | 8840 | |
| D | EDISON INTL | COM | 28102010 | 8 | 150 SH | SHARED | 05 | 150 | |
| D | EDISON INTL | COM | 28102010 | 1122 | 21030 SH | SHARED | 06 | | 21030 |
| D | EDISON INTL | COM | 28102010 | 50156 | 939782 SH | SHARED | 10 | 885607 | 54175 |
| D | EDISON INTL | COM | 28102010 | 959 | 17983 SH | SHARED | 14 | | 17983 |
| D | EDISON INTL | COM | 28102010 | 8253 | 154642 SH | SHARED | 19 | | 154642 |
| D | EDISON INTL | COM | 28102010 | 2182 | 40889 SH | SHARED | 20 | 29069 | 11820 |
| D | EDISON INTL | COM | 28102010 | 117 | 2200 SH | SHR/OTHR | 20 | | 2200 |
| D | EDISON INTL | COM | 28102010 | 109 | 2050 SH | SHARED | 21 | 2050 | |
| D | EDISON INTL | COM | 28102010 | 37 | 700 SH | SHR/OTHR | 21 | | 700 |
| D | EDISON INTL | COM | 28102010 | 1011 | 18961 SH | SHARED | 22 | 17935 | 1026 |
| D | EDISON INTL | COM | 28102010 | 114 | 2143 SH | SHR/OTHR | 22 | | 2143 |
| D | EDISON INTL | COM | 28102010 | 2766 | 51834 SH | SHARED | 23 | 37174 | 14660 |
| D | EDISON INTL | COM | 28102010 | 1785 | 33455 SH | SHR/OTHR | 23 | | 33455 |
| D | EDO CORP | NOTE 4.000%11/1/2 | 28134YAE | 504 | 300000 PRN | SHARED | 02 | 300000 | |
| D | EDUCATION RLTY TR INC | COM | 28140H10 | 15629 | 1390513 SH | SHARED | | 1390513 | |
| D | EDUCATION RLTY TR INC | COM | 28140H10 | 692 | 61600 SH | SHARED | 10 | 61600 | |
| D | EDUCATIONAL DEV CORP | COM | 28147910 | 0 | 73 SH | SHARED | | 73 | |
| D | EDWARDS LIFESCIENCES CORP | COM | 28176E10 | 2889 | 62835 SH | SHARED | | 62835 | |
| D | EDWARDS LIFESCIENCES CORP | COM | 28176E10 | 856 | 18634 SH | SHARED | 01 | 2004 | 16630 |
| D | EDWARDS LIFESCIENCES CORP | COM | 28176E10 | 507 | 11036 SH | SHARED | 02 | 11036 | |
| D | EDWARDS LIFESCIENCES CORP | COM | 28176E10 | 1103 | 24000 SH | SHARED | 04 | 24000 | |
| D | EDWARDS LIFESCIENCES CORP | COM | 28176E10 | 877 | 19079 SH | SHARED | 14 | 19079 | |
| D | EDWARDS LIFESCIENCES CORP | COM | 28176E10 | 551 | 12000 SH | SHR/OTHR | 23 | | 12000 |
| D | EHEALTH INC | COM | 28238P10 | 2 | 81 SH | SHARED | | 81 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | EHEALTH INC | COM | 28238P10 | 41 | 1300 SH | SHARED | 01 | 1300 | |
| D | EHEALTH INC | COM | 28238P10 | 680 | 21200 SH | SHARED | 04 | 21200 | |
| D | EHEALTH INC | COM | 28238P10 | 12576 | 391678 SH | SHARED | 10 | 391678 | |
| D | EINSTEIN NOAH REST GROUP INC | COM | 28257U10 | 2 | 130 SH | SHARED | | 130 | |
| D | EINSTEIN NOAH REST GROUP INC | COM | 28257U10 | 5377 | 296300 SH | SHARED | 10 | 296300 | |
| D | 8X8 INC NEW | COM | 28291410 | 261 | 293510 SH | SHARED | | 293510 | |
| D | EL PASO CORP | COM | 28336L10 | 32 | 1899 SH | SHARED | | | 1899 |
| D | EL PASO CORP | COM | 28336L10 | 21783 | 1263538 SH | SHARED | | 1256538 | 7000 |
| D | EL PASO CORP | COM | 28336L10 | 2389 | 138580 SH | SHARED | 01 | 115385 | 23195 |
| D | EL PASO CORP | COM | 28336L10 | 221 | 12826 SH | SHARED | 02 | 12826 | |
| D | EL PASO CORP | COM | 28336L10 | 132 | 7676 SH | SHARED | 04 | | 7676 |
| D | EL PASO CORP | COM | 28336L10 | 5815 | 337300 SH | SHARED | 04 | 337300 | |
| D | EL PASO CORP | COM | 28336L10 | 7 | 436 SH | SHARED | 05 | 436 | |
| D | EL PASO CORP | COM | 28336L10 | 23639 | 1371180 SH | SHARED | 06 | | 1371180 |
| D | EL PASO CORP | COM | 28336L10 | 5424 | 314652 SH | SHARED | 10 | 314652 | |
| D | EL PASO CORP | COM | 28336L10 | 354 | 20558 SH | SHARED | 14 | | 20558 |
| D | EL PASO CORP | COM | 28336L10 | 32 | 1859 SH | SHARED | 19 | | 1859 |
| D | EL PASO CORP | COM | 28336L10 | 173 | 10072 SH | SHARED | 21 | 9782 | 290 |
| D | EL PASO CORP | COM | 28336L10 | 884 | 51324 SH | SHARED | 23 | | 51324 |
| D | EL PASO ELEC CO | COM NEW | 28367785 | 614 | 24025 SH | SHARED | | 24025 | |
| D | EL PASO ELEC CO | COM NEW | 28367785 | 266 | 10420 SH | SHARED | 01 | 10420 | |
| D | EL PASO ELEC CO | COM NEW | 28367785 | 175 | 6851 SH | SHARED | 02 | 6851 | |
| D | EL PASO ELEC CO | COM NEW | 28367785 | 1030 | 40300 SH | SHARED | 10 | 40300 | |
| D | EL PASO ELEC CO | COM NEW | 28367785 | 51 | 2000 SH | SHARED | 23 | | 2000 |
| D | EL PASO PIPELINE PARTNERS L | COM UNIT LPI | 28370210 | 3091 | 123408 SH | SHARED | | 123408 | |
| D | ELAN PLC | ADR | 28413120 | 6490 | 295311 SH | SHARED | | 295311 | |
| D | ELAN PLC | ADR | 28413120 | 18 | 864 SH | SHARED | | 864 | |
| D | ELAN PLC | ADR | 28413120 | 251 | 11430 SH | SHARED | 02 | 11430 | |
| D | ELAN PLC | ADR | 28413120 | 164 | 7500 SH | SHARED | 22 | 4272 | 3228 |
| D | ELECSYS CORP | COM | 28473M10 | 0 | 70 SH | SHARED | | 70 | |
| D | ELDORADO GOLD CORP NEW | COM | 28490210 | 2156 | 371817 SH | SHARED | | 371817 | |
| D | ELDORADO GOLD CORP NEW | COM | 28490210 | 1024 | 176596 SH | SHARED | 04 | 176596 | |
| D | ELDORADO GOLD CORP NEW | COM | 28490210 | 17845 | 3076800 SH | SHARED | 10 | 3076800 | |
| D | ELECTRO ENERGY INC | COM | 28510610 | 0 | 435 SH | SHARED | | 435 | |
| D | ELECTRO OPTICAL SCIENCES INC | COM | 28519210 | 1 | 367 SH | SHARED | | 367 | |
| D | ELECTRO RENT CORP | COM | 28521810 | 2 | 187 SH | SHARED | | 187 | |
| D | ELECTRO RENT CORP | COM | 28521810 | 80 | 5400 SH | SHARED | 02 | 5400 | |
| D | ELECTRO RENT CORP | COM | 28521810 | 247 | 16700 SH | SHARED | 10 | 16700 | |
| D | ELECTRO SCIENTIFIC INDS | COM | 28522910 | 836 | 42164 SH | SHARED | | 42164 | |
| D | ELECTRO SCIENTIFIC INDS | COM | 28522910 | 136 | 6900 SH | SHARED | 02 | 6900 | |
| D | ELECTRO SCIENTIFIC INDS | COM | 28522910 | 271 | 13700 SH | SHARED | 10 | 13700 | |
| D | ELECTRO-SENSORS INC | COM | 28524010 | 0 | 50 SH | SHARED | | 50 | |
| D | ELECTROGLAS INC | COM | 28532410 | 1 | 689 SH | SHARED | | 689 | |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 24280 | 415685 SH | SHARED | | 415685 | |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 10421 | 178418 SH | SHARED | 01 | 108088 | 70330 |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 1761 | 30149 SH | SHR/OTHR | 01 | | 30149 |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 6151 | 105314 SH | SHARED | 02 | 105314 | |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 69373 | 1187700 SH | SHARED | 04 | 1187700 | |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 776 | 13300 SH | SHARED | 05 | 13300 | |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 1329 | 22760 SH | SHARED | 06 | | 22760 |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 73735 | 1262374 SH | SHARED | 10 | 1225379 | 36995 |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 1719 | 29430 SH | SHARED | 20 | 20050 | 9380 |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 401 | 6875 SH | SHR/OTHR | 20 | | 6875 |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 40 | 700 SH | SHARED | 21 | 700 | |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 11 | 200 SH | SHR/OTHR | 21 | | 200 |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 888 | 15208 SH | SHARED | 22 | 11643 | 3565 |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 79 | 1355 SH | SHR/OTHR | 22 | | 1355 |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 1641 | 28096 SH | SHARED | 23 | 24466 | 3630 |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 1169 | 20025 SH | SHR/OTHR | 23 | | 20025 |
| D | ELECTRONIC ARTS INC | COM | 28551210 | 60 | 1035 SH | SHARED | 24 | 1035 | |
| D | ELECTRONIC CLEARING HOUSE IN | COM PAR.01 NEW | 28556250 | 2 | 166 SH | SHARED | | 166 | |
| D | ELECTRONIC DATA SYS NEW | NOTE 3.875% 7/1 | 28566lAF | 1357 | 1367000 PRN | SHARED | | 1367000 | |
| D | ELECTRONIC DATA SYS NEW | COM | 28566110 | 28680 | 1383505 SH | SHARED | | 1383505 | |
| D | ELECTRONIC DATA SYS NEW | COM | 28566110 | 1502 | 72500 SH | SHARED | 01 | 72500 | |
| D | ELECTRONIC DATA SYS NEW | COM | 28566110 | 1232 | 59433 SH | SHARED | 02 | 59433 | |
| D | ELECTRONIC DATA SYS NEW | COM | 28566110 | 4 | 210 SH | SHARED | 05 | 210 | |
| D | ELECTRONIC DATA SYS NEW | COM | 28566110 | 111 | 5380 SH | SHARED | 06 | | 5380 |
| D | ELECTRONIC DATA SYS NEW | COM | 28566110 | 5057 | 243947 SH | SHARED | 10 | 243947 | |
| D | ELECTRONIC DATA SYS NEW | COM | 28566110 | 899 | 43385 SH | SHARED | 14 | | 43385 |
| D | ELECTRONIC DATA SYS NEW | COM | 28566110 | 0 | 48 SH | SHARED | 23 | 48 | |
| D | ELECTRONIC DATA SYS NEW | COM | 28566110 | 2 | 100 SH | SHR/OTHR | 23 | | 100 |
| D | ELECTRONICS FOR IMAGING INC | DBCV 1.500% 6/0 | 28608A2A | 811 | 807000 PRN | SHARED | | 807000 | |
| D | ELECTRONICS FOR IMAGING INC | COM | 28608210 | 1063 | 47322 SH | SHARED | | 47322 | |
| D | ELECTRONICS FOR IMAGING INC | COM | 28608210 | 200 | 8900 SH | SHARED | 01 | 8900 | |
| D | ELECTRONICS FOR IMAGING INC | COM | 28608210 | 6094 | 271121 SH | SHARED | 10 | 271121 | |
| D | ELITE PHARMACEUTICALS INC | CL A NEW | 28659Y20 | 1 | 540 SH | SHARED | | 540 | |
| D | ELIZABETH ARDEN INC | COM | 28660G10 | 39015 | 1917205 SH | SHARED | | 1917205 | |
| D | ELIZABETH ARDEN INC | COM | 28660G10 | 1552 | 76300 SH | SHARED | 10 | 76300 | |
| D | ELIXIR GAMING TECHNOLOGIES I | COM | 28661G10 | 9 | 2231 SH | SHARED | | 2231 | |
| D | ELIXIR GAMING TECHNOLOGIES I | COM | 28661G10 | 16 | 3900 SH | SHARED | 02 | 3900 | |
| D | ELLIS PERRY INTL INC | COM | 28885310 | 357 | 23219 SH | SHARED | | 23219 | |
| D | ELLIS PERRY INTL INC | COM | 28885310 | 63 | 4150 SH | SHARED | 01 | 2100 | 2050 |
| D | ELLIS PERRY INTL INC | COM | 28885310 | 2424 | 157650 SH | SHARED | 10 | 157650 | |
| D | ELMIRA SVGS BK FSB N Y | SPONSORED ADR | 28966010 | 0 | 38 SH | SHARED | | 38 | |
| D | ELONG INC | SPONSORED ADR | 29013820 | 21 | 2656 SH | SHARED | | 2656 | |
| D | ELOYALTY CORP | COM NEW | 29015130 | 2 | 154 SH | SHARED | | 154 | |
| D | ELOYALTY CORP | COM NEW | 29015130 | 7 | 575 SH | SHARED | 02 | 575 | |
| D | EMAGEON INC | COM | 29076V10 | 4 | 1139 SH | SHARED | | 1139 | |
| D | EMBARQ CORP | COM | 29078E10 | 23 | 472 SH | SHARED | | 8 | 464 |
| D | EMBARQ CORP | COM | 29078E10 | 19023 | 384077 SH | SHARED | | 339577 | 44500 |
| D | EMBARQ CORP | COM | 29078E10 | 1023 | 20663 SH | SHARED | 01 | 19363 | 1300 |
| D | EMBARQ CORP | COM | 29078E10 | 31 | 633 SH | SHR/OTHR | 01 | | 633 |
| D | EMBARQ CORP | COM | 29078E10 | 5783 | 116766 SH | SHARED | 02 | 116766 | |
| D | EMBARQ CORP | COM | 29078E10 | 45 | 927 SH | SHARED | 04 | | 927 |
| D | EMBARQ CORP | COM | 29078E10 | 2476 | 50000 SH | SHARED | 04 | 50000 | |
| D | EMBARQ CORP | COM | 29078E10 | 3 | 63 SH | SHARED | 05 | 63 | |
| D | EMBARQ CORP | COM | 29078E10 | 99 | 2000 SH | SHARED | 06 | | 2000 |
| D | EMBARQ CORP | COM | 29078E10 | 66253 | 1337651 SH | SHARED | 10 | 1311751 | 25900 |
| D | EMBARQ CORP | COM | 29078E10 | 313 | 6327 SH | SHARED | 14 | | 6327 |
| D | EMBARQ CORP | COM | 29078E10 | 1 | 22 SH | SHARED | 23 | 22 | |
| D | EMBARQ CORP | COM | 29078E10 | 6 | 125 SH | SHR/OTHR | 23 | | 125 |
| D | EMBRAER-EMPRESA BRASILEIRA D | SP ADR COM SHS | 29081M10 | 1535 | 33684 SH | SHARED | | 33684 | |
| D | EMBRAER-EMPRESA BRASILEIRA D | SP ADR COM SHS | 29081M10 | 22 | 500 SH | SHR/OTHR | 01 | | 500 |
| D | EMBRAER-EMPRESA BRASILEIRA D | SP ADR COM SHS | 29081M10 | 1640 | 35993 SH | SHARED | 10 | 35993 | |
| D | EMBOTELLADORA ANDINA S A | SPON ADR B | 29081P30 | 77 | 4126 SH | SHARED | | 4126 | |
| D | EMCOR GROUP INC | COM | 29084Q10 | 2172 | 91939 SH | SHARED | | 91939 | |
| D | EMCOR GROUP INC | COM | 29084Q10 | 633 | 26800 SH | SHARED | 01 | 26800 | |
| D | EMCOR GROUP INC | COM | 29084Q10 | 171 | 7275 SH | SHARED | 02 | 7275 | |
| D | EMCOR GROUP INC | COM | 29084Q10 | 26212 | 1109283 SH | SHARED | 10 | 1109283 | |
| D | EMCORE CORP | COM | 29084610 | 142 | 9292 SH | SHARED | | 9292 | |
| D | EMCORE CORP | COM | 29084610 | 76 | 5000 SH | SHARED | 02 | 5000 | |
| D | EMERGENT BIOSOLUTIONS INC | COM | 29089Q10 | 5 | 1012 SH | SHARED | | 1012 | |
| D | EMERGING MKTS TELECOMNC FD N | COM | 29089910 | 150 | 5531 SH | SHARED | | 5531 | |
| D | EMERGENCY MEDICAL SVCS CORP | CL A | 29100P10 | 11 | 380 SH | SHARED | | 380 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | EMERGENCY MEDICAL SVCS CORP | CL A | 29100P10 | 784 | 26800 SH | SHARED | | 26600 | 200 |
| D | EMERGENCY MEDICAL SVCS CORP | CL A | 29100P10 | 1024 | 35000 SH | SHR/OTHR | 01 | | 35000 |
| D | EMERGENCY MEDICAL SVCS CORP | CL A | 29100P10 | 281 | 9600 SH | SHARED | 10 | 9600 | |
| D | EMERITUS CORP | | 29100510 | 9 | 397 SH | SHARED | | 397 | |
| D | EMERSON ELEC CO | COM | 29101110 | 63 | 1114 SH | SHARED | | | 1114 |
| D | EMERSON ELEC CO | COM | 29101110 | 75465 | 1331892 SH | SHARED | | 1327492 | 4400 |
| D | EMERSON ELEC CO | COM | 29101110 | 12200 | 215330 SH | SHARED | 01 | 110466 | 104864 |
| D | EMERSON ELEC CO | COM | 29101110 | 2702 | 47688 SH | SHR/OTHR | 01 | | 47688 |
| D | EMERSON ELEC CO | COM | 29101110 | 1274 | 22489 SH | SHARED | 02 | 22489 | |
| D | EMERSON ELEC CO | COM | 29101110 | 39650 | 699798 SH | SHARED | 04 | 699798 | |
| D | EMERSON ELEC CO | COM | 29101110 | 36146 | 637959 SH | SHARED | 05 | 637959 | |
| D | EMERSON ELEC CO | COM | 29101110 | 31422 | 554573 SH | SHARED | 06 | | 554573 |
| D | EMERSON ELEC CO | COM | 29101110 | 144335 | 2547388 SH | SHARED | 10 | 2455088 | 92300 |
| D | EMERSON ELEC CO | COM | 29101110 | 45 | 800 SH | SHR/OTHR | 10 | | 800 |
| D | EMERSON ELEC CO | COM | 29101110 | 1070 | 18900 SH | SHARED | 14 | | 18900 |
| D | EMERSON ELEC CO | COM | 29101110 | 906 | 16000 SH | SHARED | 15 | | 16000 |
| D | EMERSON ELEC CO | COM | 29101110 | 379 | 6700 SH | SHARED | 19 | | 6700 |
| D | EMERSON ELEC CO | COM | 29101110 | 4889 | 86302 SH | SHR/OTHR | 20 | 15288 | 71014 |
| D | EMERSON ELEC CO | COM | 29101110 | 1780 | 31420 SH | SHARED | 20 | | 31420 |
| D | EMERSON ELEC CO | COM | 29101110 | 312 | 5510 SH | SHARED | 21 | 5400 | 110 |
| D | EMERSON ELEC CO | COM | 29101110 | 1359 | 24000 SH | SHR/OTHR | 21 | | 24000 |
| D | EMERSON ELEC CO | COM | 29101110 | 866 | 15300 SH | SHARED | 22 | 13700 | 1600 |
| D | EMERSON ELEC CO | COM | 29101110 | 82 | 1464 SH | SHR/OTHR | 22 | | 1464 |
| D | EMERSON ELEC CO | COM | 29101110 | 8493 | 149910 SH | SHARED | 23 | 138810 | 11100 |
| D | EMERSON ELEC CO | COM | 29101110 | 10064 | 177635 SH | SHR/OTHR | 23 | | 177635 |
| D | EMERSON ELEC CO | COM | 29101110 | 169 | 3000 SH | SHARED | 24 | 3000 | |
| D | EMERSON RADIO CORP | COM NEW | 29108720 | 62 | 47718 SH | SHARED | | 47718 | |
| D | EMISPHERE TECHNOLOGIES INC | COM | 29134510 | 2935 | 1075159 SH | SHARED | | 1075159 | |
| D | EMISPHERE TECHNOLOGIES INC | COM | 29134510 | 146 | 53701 SH | SHARED | 02 | 53701 | |
| D | EMMIS COMMUNICATIONS CORP | CL A | 29152510 | 1 | 367 SH | SHARED | | 367 | |
| D | EMMIS COMMUNICATIONS CORP | CL A | 29152510 | 15 | 4000 SH | SHARED | 02 | 4000 | |
| D | EMMIS COMMUNICATIONS CORP | PFD CV SER A | 29152520 | 26928 | 718676 SH | SHARED | | 718676 | |
| D | EMPIRE DIST ELEC CO | COM | 29164110 | 1 | 82 SH | SHARED | | 82 | |
| D | EMPIRE DIST ELEC CO | COM | 29164110 | 238 | 10451 SH | SHARED | 02 | 10451 | |
| D | EMPIRE DIST ELEC CO | COM | 29164110 | 410 | 18000 SH | SHARED | 10 | 18000 | |
| D | EMPIRE FINL HLDG CO | COM | 29165810 | 0 | 158 SH | SHARED | | 158 | |
| D | EMPIRE RESORTS INC | NOTE  8.000% 7/3 | 292052AB | 1002 | 1269000 PRN | SHARED | | 1269000 | |
| D | EMPIRE RESORTS INC | COM | 29205210 | 4 | 1326 SH | SHARED | | 1326 | |
| D | EMPIRE RES INC DEL | COM | 29206E10 | 17 | 3936 SH | SHARED | | 3936 | |
| D | EMPLOYERS HOLDINGS INC | COM | 29221810 | 37 | 2226 SH | SHARED | | 2226 | |
| D | EMPLOYERS HOLDINGS INC | COM | 29221810 | 441 | 26400 SH | SHARED | 10 | 26400 | |
| D | EMPRESA DIST Y COMERCIAL NOR | SPON ADR | 29244A10 | 321 | 14607 SH | SHARED | | 14607 | |
| D | EMPRESA NACIONAL DE ELCTRCID | SPONSORED ADR | 29244F10 | 607 | 16171 SH | SHARED | | 16171 | |
| D | EMPRESA NACIONAL DE ELCTRCID | SPONSORED ADR | 29244F10 | 10049 | 267500 SH | SHARED | 01 | 267500 | |
| D | EMPRESAS ICA S A DE CV | SPONS ADR NEW | 29244820 | 132 | 5000 SH | SHARED | | | 5000 |
| D | EMPRESAS ICA S A DE CV | SPONS ADR NEW | 29244820 | 1194 | 45235 SH | SHARED | | 45235 | |
| D | EMPRESAS ICA S A DE CV | SPONS ADR NEW | 29244820 | 605 | 22950 SH | SHARED | 01 | 22950 | |
| D | EMPRESAS ICA S A DE CV | SPONS ADR NEW | 29244820 | 5280 | 200000 SH | SHARED | 04 | 200000 | |
| D | EMPRESAS ICA S A DE CV | SPONS ADR NEW | 29244820 | 18400 | 696975 SH | SHARED | 10 | 689075 | 7900 |
| D | EMPRESAS ICA S A DE CV | SPONS ADR NEW | 29244820 | 200 | 7600 SH | SHARED | 15 | | 7600 |
| D | EMPRESAS ICA S A DE CV | SPONS ADR NEW | 29244820 | 367 | 13925 SH | SHARED | 24 | 13925 | |
| D | EN POINTE TECHNOLOGIES INC | COM | 29247F10 | 0 | 143 SH | SHARED | | 143 | |
| D | EMULEX CORP | COM NEW | 29247520 | 1637 | 100325 SH | SHARED | | 100325 | |
| D | EMULEX CORP | COM NEW | 29247520 | 274 | 16815 SH | SHARED | 01 | 16815 | |
| D | EMULEX CORP | COM NEW | 29247520 | 6124 | 375273 SH | SHARED | 10 | 375273 | |
| D | ENBRIDGE INC | COM | 29250N10 | 3112 | 76977 SH | SHARED | | 76977 | |
| D | ENBRIDGE INC | COM | 29250N10 | 32 | 796 SH | SHARED | 01 | 796 | |
| D | ENBRIDGE INC | COM | 29250N10 | 85471 | 2114057 SH | SHARED | 04 | 2114057 | |
| D | ENBRIDGE INC | COM | 29250N10 | 8 | 200 SH | SHARED | 05 | 200 | |
| D | ENBRIDGE INC | COM | 29250N10 | 74 | 1850 SH | SHARED | 06 | | 1850 |
| D | ENBRIDGE INC | COM | 29250N10 | 368 | 9110 SH | SHARED | 10 | 9110 | |
| D | ENBRIDGE ENERGY PARTNERS L P | COM | 29250R10 | 7986 | 158018 SH | SHARED | | 158018 | |
| D | ENBRIDGE ENERGY MANAGEMENT L | SHS UNITS LLI | 29250IC10 | 25 | 492 SH | SHARED | | 492 | |
| D | ENCANA CORP | COM | 29250510 | 3777 | 55578 SH | SHARED | | 55578 | |
| D | ENCANA CORP | COM | 29250510 | 470 | 6920 SH | SHARED | 01 | 2842 | 4078 |
| D | ENCANA CORP | COM | 29250510 | 33 | 500 SH | SHR/OTHR | 01 | | 500 |
| D | ENCANA CORP | COM | 29250510 | 221785 | 3263464 SH | SHARED | 04 | 3263464 | |
| D | ENCANA CORP | COM | 29250510 | 22 | 324 SH | SHARED | 05 | 324 | |
| D | ENCANA CORP | COM | 29250510 | 261 | 3850 SH | SHARED | 06 | | 3850 |
| D | ENCANA CORP | COM | 29250510 | 31499 | 463496 SH | SHARED | 10 | 379596 | 83900 |
| D | ENCANA CORP | COM | 29250510 | 3772 | 55513 SH | SHARED | 14 | 25200 | 30313 |
| D | ENCANA CORP | COM | 29250510 | 4077 | 60000 SH | SHARED | 16 | 60000 | |
| D | ENCANA CORP | COM | 29250510 | 622 | 9164 SH | SHARED | 20 | | 9164 |
| D | ENCANA CORP | COM | 29250510 | 254 | 3749 SH | SHARED | 21 | 3749 | |
| D | ENCANA CORP | COM | 29250510 | 40 | 600 SH | SHR/OTHR | 22 | | 600 |
| D | ENCANA CORP | COM | 29250510 | 598 | 8800 SH | SHARED | 23 | 4800 | 4000 |
| D | ENCANA CORP | COM | 29250510 | 339 | 5000 SH | SHR/OTHR | 23 | | 5000 |
| D | ENCANA CORP | COM | 29250510 | 1930 | 28400 SH | SHARED | 24 | 28400 | |
| D | ENCISION INC | COM | 29254Q10 | 0 | 97 SH | SHARED | | 97 | |
| D | ENCORE BANCSHARES INC | COM | 29255V20 | 1 | 53 SH | SHARED | | 53 | |
| D | ENCORE ACQUISITION CO | COM | 29255W10 | 364 | 10935 SH | SHARED | | 10935 | |
| D | ENCORE ACQUISITION CO | COM | 29255W10 | 707 | 21200 SH | SHARED | 01 | 5700 | 15500 |
| D | ENCORE ACQUISITION CO | COM | 29255W10 | 293 | 8794 SH | SHARED | 02 | 8794 | |
| D | ENCORE ACQUISITION CO | COM | 29255W10 | 1388 | 41618 SH | SHARED | 10 | 41618 | |
| D | ENCORE CAP GROUP INC | NOTE  3.375% 9/1 | 29255BAB | 25161 | 30425008 PRN | SHARED | | 0425008 | |
| D | ENCORE CAP GROUP INC | COM | 29255410 | 0 | 37 SH | SHARED | | 37 | |
| D | ENCORE CAP GROUP INC | COM | 29255410 | 261 | 27000 SH | SHARED | | 27000 | |
| D | ENCORE CAP GROUP INC | COM | 29255410 | 261 | 27000 SH | SHR/OTHR | 01 | | 27000 |
| D | ENCYSIVE PHARMACEUTICALS INC | FRNT  2.500% 3/1 | 29266XAB | 2823 | 5693000 PRN | SHARED | | 5693000 | |
| D | ENCYSIVE PHARMACEUTICALS INC | COM | 29256210 | 0 | 290 SH | SHARED | | 290 | |
| D | ENCORE WIRE CORP | COM | 29256210 | 973 | 61149 SH | SHARED | | 61149 | |
| D | ENCORE WIRE CORP | COM | 29256210 | 5 | 317 SH | SHARED | 02 | 317 | |
| D | ENCORE WIRE CORP | COM | 29256210 | 1501 | 94300 SH | SHARED | 10 | 94300 | |
| D | ENCORE ENERGY PARTNERS LP | COM UNIT | 29257A10 | 4 | 246 SH | SHARED | | 246 | |
| D | ENCORIUM GROUP INC | COM | 29257810 | 0 | 394 SH | SHARED | | 394 | |
| D | ENDEAVOUR INTL CORP | COM | 29259Q10 | 3 | 2913 SH | SHARED | | 2913 | |
| D | ENDWAVE CORP | COM NEW | 29264A20 | 2 | 303 SH | SHARED | | 303 | |
| D | ENDO PHARMACEUTICALS HLDGS I | COM | 29264P20 | 1751 | 65688 SH | SHARED | | 65688 | |
| D | ENDO PHARMACEUTICALS HLDGS I | COM | 29264P20 | 1269 | 47600 SH | SHARED | | 11300 | 36300 |
| D | ENDO PHARMACEUTICALS HLDGS I | COM | 29264P20 | 650 | 24402 SH | SHARED | 02 | 24402 | |
| D | ENDO PHARMACEUTICALS HLDGS I | COM | 29264P20 | 6183 | 231838 SH | SHARED | 10 | 231838 | |
| D | ENDOCARE INC | COM NEW | 29264P20 | 2 | 274 SH | SHARED | | 274 | |
| D | ENERGEN CORP | COM | 29265N10 | 1356 | 21123 SH | SHARED | | 21123 | |
| D | ENERGEN CORP | COM | 29265N10 | 1424 | 22175 SH | SHARED | | 875 | 21300 |
| D | ENERGEN CORP | COM | 29265N10 | 684 | 10657 SH | SHARED | 02 | 10657 | |
| D | ENERGEN CORP | COM | 29265N10 | 3215 | 50063 SH | SHARED | 10 | 48163 | 1900 |
| D | ENERGEN CORP | COM | 29265N10 | 96 | 1500 SH | SHARED | 21 | | 1500 |
| D | ENEL SOCIETA PER AZIONI | ADR | 29265W10 | 88 | 1499 SH | SHARED | | 1499 | |
| D | ENEL SOCIETA PER AZIONI | ADR | 29265W10 | 3 | 58 SH | SHARED | 01 | 58 | |
| D | ENEL SOCIETA PER AZIONI | ADR | 29265W10 | 124 | 2114 SH | SHARED | 21 | 2114 | |
| D | ENERGY CONVERSION DEVICES IN | COM | 29265910 | 8613 | 255975 SH | SHARED | | 255975 | |
| D | ENERGY CONVERSION DEVICES IN | COM | 29265910 | 2115 | 62858 SH | SHARED | 02 | 62858 | |
| D | ENERGY CONVERSION DEVICES IN | COM | 29265910 | 43 | 1291 SH | SHARED | 10 | 1291 | |
| D | ENERGY EAST CORP | COM | 29266M10 | 3598 | 132240 SH | SHARED | | 132240 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | ENERGY EAST CORP | COM | 29266M10 | 1377 | 50640 SH | SHARED | 01 | 1240 | 49400 |
| D | ENERGY EAST CORP | COM | 29266M10 | 204 | 7498 SH | SHARED | 02 | 7498 | |
| D | ENERGY EAST CORP | COM | 29266M10 | 19 | 720 SH | SHARED | 06 | | 720 |
| D | ENERGIZER HLDGS INC | COM | 29266R10 | 389 | 14300 SH | SHARED | 10 | 14300 | |
| D | ENERGIZER HLDGS INC | COM | 29266R10 | 2033 | 18132 SH | SHARED | | 18132 | |
| D | ENERGIZER HLDGS INC | COM | 29266R10 | 3807 | 33953 SH | SHARED | 01 | 9788 | 24165 |
| D | ENERGIZER HLDGS INC | COM | 29266R10 | 241 | 2150 SH | SHR/OTHR | 01 | | 2150 |
| D | ENERGIZER HLDGS INC | COM | 29266R10 | 380 | 3393 SH | SHARED | 02 | 3393 | |
| D | ENERGIZER HLDGS INC | COM | 29266R10 | 35 | 320 SH | SHARED | 06 | | 320 |
| D | ENERGIZER HLDGS INC | COM | 29266R10 | 639 | 5700 SH | SHARED | 10 | 5700 | |
| D | ENERGIZER HLDGS INC | COM | 29266R10 | 201 | 1800 SH | SHARED | 14 | 1800 | |
| D | ENERGIZER HLDGS INC | COM | 29266R10 | 33 | 300 SH | SHARED | 20 | 300 | |
| D | ENERGIZER HLDGS INC | COM | 29266R10 | 24 | 215 SH | SHR/OTHR | 21 | | 215 |
| D | ENERGIZER HLDGS INC P | COM | 29266R10 | 16 | 150 SH | SHARED | 22 | 150 | |
| D | ENERGIZER HLDGS INC | COM | 29266R10 | 269 | 2400 SH | SHARED | 23 | 2400 | |
| D | ENERGIZER HLDGS INC | COM | 29266R10 | 44 | 400 SH | SHR/OTHR | 23 | | 400 |
| D | ENDOLOGIX INC | COM | 29268310 | 2 | 976 SH | SHARED | | 976 | |
| D | ENERGY FOCUS INC | COM | 29268310 | 2 | 299 SH | SHARED | | 299 | |
| D | ENERGY INFRASTRUCTURE ACQUI | COM | 29269P10 | 3835 | 378219 SH | SHARED | | 378219 | |
| D | ENERGY INFRASTRUCTURE ACQUI | *W EXP 07/17/201 | 29269P11 | 27 | 24254 SH | SHARED | | 24254 | |
| D | ENERGY PARTNERS LTD | COM | 29270U10 | 3822 | 323672 SH | SHARED | | 323672 | |
| D | ENERGY PARTNERS LTD | COM | 29270U10 | 10 | 875 SH | SHARED | 02 | 875 | |
| D | ENERGY SVCS ACQUISITION CORP | COM | 29271Q10 | 535 | 92733 SH | SHARED | | 92733 | |
| D | ENERGY TRANSFER PRTNRS L P | UNIT LTD PARTN | 29273R10 | 142107 | 2637487 SH | SHARED | | 2637487 | |
| D | ENERGY TRANSFER EQUITY L P | COM UT LTD PTN | 29273V10 | 8607 | 244327 SH | SHARED | | 244327 | |
| D | ENERGY WEST INC | COM | 29274A10 | 0 | 55 SH | SHARED | | 55 | |
| D | ENERPLUS RES FD | UNIT TR G NEW | 29274D60 | 6130 | 153083 SH | SHARED | | 153083 | |
| D | ENERPLUS RES FD | UNIT TR G NEW | 29274D60 | 20 | 500 SH | SHARED | 01 | 500 | |
| D | ENERPLUS RES FD | UNIT TR G NEW | 29274D60 | 8 | 200 SH | SHR/OTHR | 01 | | 200 |
| D | ENERPLUS RES FD | UNIT TR G NEW | 29274D60 | 44 | 1100 SH | SHARED | 02 | 1100 | |
| D | ENERPLUS RES FD | UNIT TR G NEW | 29274D60 | 128 | 3200 SH | SHARED | 10 | 3200 | |
| D | ENERPLUS RES FD | UNIT TR G NEW | 29274D60 | 80 | 2000 SH | SHR/OTHR | 23 | | 2000 |
| D | ENERSIS S A | SPONSORED ADR | 29274F10 | 3955 | 246761 SH | SHARED | | 246761 | |
| D | ENERSIS S A | SPONSORED ADR | 29274F10 | 322 | 20097 SH | SHARED | 04 | | 20097 |
| D | ENERSYS | COM | 29275Y10 | 307 | 12302 SH | SHARED | | 12302 | |
| D | ENERSYS | COM | 29275Y10 | 448 | 17950 SH | SHARED | 10 | 13500 | 4450 |
| D | ENERSYS | COM | 29275Y10 | 289 | 11600 SH | SHARED | 10 | 11600 | |
| D | ENERGYSOLUTIONS INC | DEPOSITARY SH | 29275620 | 1009 | 37400 SH | SHARED | | 37400 | |
| D | ENERGYSOLUTIONS INC | DEPOSITARY SH | 29275620 | 1079 | 40000 SH | SHARED | 04 | 40000 | |
| D | ENERGYSOLUTIONS INC | DEPOSITARY SH | 29275620 | 14 | 550 SH | SHARED | 06 | | 550 |
| D | ENERGYSOLUTIONS INC | DEPOSITARY SH | 29275620 | 3388 | 125550 SH | SHARED | 10 | 125550 | |
| D | ENERGYSOLUTIONS INC | DEPOSITARY SH | 29275620 | 1147 | 42500 SH | SHARED | 16 | 42500 | |
| D | ENERNOC INC | COM | 29276410 | 32 | 668 SH | SHARED | | 668 | |
| D | ENERNOC INC | COM | 29276410 | 41 | 855 SH | SHARED | | | 668 |
| D | ENERNOC INC | COM | 29276410 | 12368 | 251913 SH | SHARED | 04 | | 855 |
| D | ENERNOC INC | COM | 29276410 | 13370 | 272315 SH | SHARED | 05 | 251913 | |
| D | ENERNOC INC | COM | 29276410 | 478 | 9755 SH | SHARED | 06 | 272315 | |
| D | ENERNOC INC | COM | 29276410 | 406 | 8286 SH | SHARED | 10 | 8286 | 9755 |
| D | ENERGYSOUTH INC | COM | 29297010 | 1 | 33 SH | SHARED | | 33 | |
| D | ENGLOBAL CORP | COM | 29303060 | 34 | 3034 SH | SHARED | | 3034 | |
| D | ENNIS INC | COM | 29338910 | 3 | 175 SH | SHARED | | 175 | |
| D | ENNIS INC | COM | 29338910 | 12700 | 705600 SH | SHARED | 10 | 705600 | |
| D | ENOVA SYSTEMS INC | COM NEW | 29338910 | 1 | 326 SH | SHARED | | 326 | |
| D | ENPRO INDS INC | DBCV 3.937%10/1 | 29355XAB | 30179 | 25750000 PRN | SHARED | | 5750000 | |
| D | ENPRO INDS INC | COM | 29355X10 | 2190 | 71459 SH | SHARED | | 71459 | |
| D | ENPRO INDS INC | COM | 29355X10 | 61 | 2002 SH | SHARED | 01 | 2002 | |
| D | ENPRO INDS INC | COM | 29355X10 | 1719 | 56100 SH | SHARED | 10 | 56100 | |
| D | ENTEGRIS INC | COM | 29362U10 | 304 | 35250 SH | SHARED | | 35250 | |
| D | ENTEGRIS INC | COM | 29362U10 | 45 | 5242 SH | SHARED | 01 | 5242 | |
| D | ENTEGRIS INC | COM | 29362U10 | 1754 | 203279 SH | SHARED | 10 | 203279 | |
| D | ENTERCOM COMMUNICATIONS CORP | CL A | 29363910 | 227 | 16636 SH | SHARED | | 16636 | |
| D | ENTERCOM COMMUNICATIONS CORP | CL A | 29363910 | 207 | 15122 SH | SHARED | 02 | 15122 | |
| D | ENTERCOM COMMUNICATIONS CORP | CL A | 29363910 | 207 | 15138 SH | SHARED | 10 | 15138 | |
| D | ENTERGY CORP NEW | COM | 29364G10 | 25 | 217 SH | SHARED | | | 217 |
| D | ENTERGY CORP NEW | COM | 29364G10 | 40186 | 336233 SH | SHARED | | 336145 | 88 |
| D | ENTERGY CORP NEW | COM | 29364G10 | 9633 | 80605 SH | SHARED | 01 | 71605 | 9000 |
| D | ENTERGY CORP NEW | COM | 29364G10 | 3265 | 27320 SH | SHR/OTHR | 01 | | 27320 |
| D | ENTERGY CORP NEW | COM | 29364G10 | 1206 | 10091 SH | SHARED | 02 | 10091 | |
| D | ENTERGY CORP NEW | COM | 29364G10 | 10718 | 89683 SH | SHARED | 04 | 89683 | |
| D | ENTERGY CORP NEW | COM | 29364G10 | 6356 | 53182 SH | SHARED | 05 | 53182 | |
| D | ENTERGY CORP NEW | COM | 29364G10 | 7506 | 62806 SH | SHARED | 06 | | 62806 |
| D | ENTERGY CORP NEW | COM | 29364G10 | 20116 | 168314 SH | SHARED | 10 | 167214 | 1100 |
| D | ENTERGY CORP NEW | COM | 29364G10 | 378 | 3165 SH | SHARED | 20 | 2215 | 950 |
| D | ENTERGY CORP NEW | COM | 29364G10 | 69 | 580 SH | SHR/OTHR | 20 | | 580 |
| D | ENTERGY CORP NEW | COM | 29364G10 | 47 | 400 SH | SHARED | 21 | 400 | |
| D | ENTERGY CORP NEW | COM | 29364G10 | 203 | 1700 SH | SHARED | 22 | 1500 | 200 |
| D | ENTERGY CORP NEW | COM | 29364G10 | 565 | 4735 SH | SHR/OTHR | 22 | | 4735 |
| D | ENTERGY CORP NEW | COM | 29364G10 | 2708 | 22662 SH | SHARED | 23 | 18187 | 4475 |
| D | ENTERGY CORP NEW | COM | 29364G10 | 4211 | 35234 SH | SHR/OTHR | 23 | | 35234 |
| D | ENTERGY CORP NEW | EQUITY UNIT | 29364G20 | 41474 | 578036 SH | SHARED | | 578036 | |
| D | ENTEROMEDICS INC | COM | 29365M10 | 1 | 130 SH | SHARED | | 130 | |
| D | ENTERPRISE ACQUISITION CORP | COM | 29365R10 | 2173 | 270000 SH | SHARED | 04 | 270000 | |
| D | ENTERPRISE ACQUISITION CORP | COM | 29365R10 | 2763 | 305398 SH | SHARED | | 305398 | |
| D | ENTERPRISE ACQUISITION CORP | *W EXP 11/07/201 | 29365R11 | 122 | 152857 SH | SHARED | | 152857 | |
| D | ENTERPRISE BANCORP INC MASS | COM | 29366810 | 1 | 155 SH | SHARED | | 155 | |
| D | ENTERPRISE FINL SVCS CORP | COM | 29371210 | 3 | 166 SH | SHARED | | 166 | |
| D | ENTERPRISE GP HLDGS L P | UNIT LP INT | 29371610 | 16091 | 434676 SH | SHARED | | 434676 | |
| D | ENTERPRISE PRODS PARTNERS L | COM | 29379210 | 159 | 5000 SH | SHARED | | 5000 | |
| D | ENTERPRISE PRODS PARTNERS L | COM | 29379210 | 15810 | 495935 SH | SHARED | | 495935 | |
| D | ENTERTAINMENT PPTYS TR | COM SH BEN INT | 29380T10 | 10 | 213 SH | SHARED | | 213 | |
| D | ENTERTAINMENT PPTYS TR | COM SH BEN INT | 29380T10 | 28 | 600 SH | SHARED | 01 | 600 | |
| D | ENTERTAINMENT PPTYS TR | COM SH BEN INT | 29380T10 | 2 | 50 SH | SHARED | 02 | 50 | |
| D | ENTERTAINMENT PPTYS TR | COM SH BEN INT | 29380T10 | 1151 | 24500 SH | SHARED | 10 | 24500 | |
| D | ENTERTAINMENT PPTYS TR | COM SH BEN INT | 29380T10 | 33509 | 712960 SH | SHARED | 11 | 142337 | 570623 |
| D | ENTERTAINMENT PPTYS TR | COM SH BEN INT | 29380T10 | 10 | 215 SH | SHARED | 21 | | 215 |
| D | ENTERTAINMENT PPTYS TR | PFD C CNV 5.75% | 29380T40 | 75 | 395700 PRN | SHARED | | 395700 | |
| D | ENTERTAINMENT PPTYS TR | PFD C CNV 5.75% | 29380T40 | 0 | 4100 PRN | SHARED | 02 | 4100 | |
| D | ENTERRA ENERGY TR | TR UNIT | 29381U10 | 4 | 3826 SH | SHARED | | 3826 | |
| D | ENTREMED INC | COM | 29382R10 | 1 | 1577 SH | SHARED | | 1577 | |
| D | ENTERTAINMENT DIST CO INC | COM | 29382J10 | 1 | 1796 SH | SHARED | | 1796 | |
| D | ENTRAVISION COMMUNICATIONS C | CL A | 29382R10 | 512 | 65450 SH | SHARED | | 65450 | |
| D | ENTRAVISION COMMUNICATIONS C | CL A | 29382R10 | 85 | 10950 SH | SHARED | | 10950 | |
| D | ENTREE GOLD INC | COM | 29383Q10 | 808 | 320000 SH | SHARED | 04 | 320000 | |
| D | ENTROPIC COMMUNICATIONS INC | COM | 29384810 | 1 | 209 SH | SHARED | | 209 | |
| D | ENTRUST INC | COM | 29384410 | 5 | 2864 SH | SHARED | | 2864 | |
| D | ENZON PHARMACEUTICALS INC | NOTE 4.500% 7/0 | 29394ANb | 1984 | 2000000 PRN | SHARED | | 2000000 | |
| D | ENZON PHARMACEUTICALS INC | NOTE 4.000% 6/0 | 29404Ab | 23440 | 20000000 PRN | SHARED | | 000000000 | |
| D | ENZON PHARMACEUTICALS INC | NOTE 4.000% 6/0 | 29404AE | 1172 | 1000000 PRN | SHARED | 02 | 1000000 | |
| D | ENZON PHARMACEUTICALS INC | COM | 29390410 | 240 | 25237 SH | SHARED | | 25237 | |
| D | ENZON PHARMACEUTICALS INC | COM | 29390410 | 9 | 1000 SH | SHARED | 02 | 1000 | |
| D | ENVIRONMENTAL PWR CORP | COM NEW | 29406L20 | 3 | 761 SH | SHARED | | 761 | |
| D | ENVIRONMENTAL TECTONICS CORP | COM | 29409210 | 0 | 107 SH | SHARED | | 107 | |
| D | ENZO BIOCHEM INC | COM | 29410010 | 12 | 992 SH | SHARED | | 992 | |
| D | EPIC BANCORP | COM | 29425010 | 1 | 102 SH | SHARED | | 102 | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| D EPICOR SOFTWARE CORP | COM | 29426L10 | 74 | 6335 SH | SHARED | | 6335 | |
| D EPICOR SOFTWARE CORP | COM | 29426L10 | 55 | 4725 SH | SHARED | 02 | 4725 | |
| D EPICEPT CORP | COM | 29426420 | 0 | 777 SH | SHARED | | 777 | |
| D EPOCH HOLDING CORP | COM | 29428B10 | 1 | 79 SH | SHARED | | 79 | |
| D EQUIFAX INC | COM | 29442910 | 5065 | 139315 SH | SHARED | | 139315 | |
| D EQUIFAX INC | COM | 29442910 | 992 | 27300 SH | SHARED | 01 | 13100 | 14200 |
| D EQUIFAX INC | COM | 29442910 | 316 | 8700 SH | SHR/OTHR | 01 | | 8700 |
| D EQUIFAX INC | COM | 29442910 | 71 | 1961 SH | SHARED | 02 | 1961 | |
| D EQUIFAX INC | COM | 29442910 | 3 | 90 SH | SHARED | 05 | 90 | |
| D EQUIFAX INC | COM | 29442910 | 41 | 1150 SH | SHARED | 06 | | 1150 |
| D EQUIFAX INC | COM | 29442910 | 1970 | 54200 SH | SHARED | 10 | 54200 | |
| D EQUIFAX INC | COM | 29442910 | 219 | 6035 SH | SHARED | 14 | | 6035 |
| D EQUIFAX INC | COM | 29442910 | 2120 | 58325 SH | SHARED | 20 | 28510 | 29815 |
| D EQUIFAX INC | COM | 29442910 | 448 | 12330 SH | SHR/OTHR | 20 | | 12330 |
| D EQUIFAX INC | COM | 29442910 | 2359 | 64900 SH | SHARED | 23 | 64900 | |
| D EQUIFAX INC | COM | 29442910 | 987 | 27150 SH | SHR/OTHR | 23 | | 27150 |
| D EQUINIX INC | DBCV  2.500% 2/1 | 29444UAE | 3903 | 1503000 PRN | SHARED | | 1503000 | |
| D EQUINIX INC | NOTE  3.000%10/1 | 29444UAG | 5682 | 4635000 PRN | SHARED | | 4635000 | |
| D EQUINIX INC | COM NEW | 29444U50 | 297 | 2944 SH | SHARED | | 2944 | |
| D EQUINIX INC | COM NEW | 29444U50 | 512 | 5070 SH | SHARED | 01 | 5070 | |
| D EQUINIX INC | COM NEW | 29444U50 | 28147 | 278500 SH | SHARED | 04 | 278500 | |
| D EQUINIX INC | COM NEW | 29444U50 | 912 | 9030 SH | SHARED | 10 | 9030 | |
| D EQUINIX INC | COM NEW | 29444U50 | 4 | 40 SH | SHARED | 21 | | 40 |
| D EQUITABLE RES INC | COM | 29454910 | 1440 | 27035 SH | SHARED | | 27035 | |
| D EQUITABLE RES INC | COM | 29454910 | 2802 | 52600 SH | SHARED | 01 | 600 | 52000 |
| D EQUITABLE RES INC | COM | 29454910 | 7979 | 149764 SH | SHARED | 02 | 149764 | |
| D EQUITABLE RES INC | COM | 29454910 | 62 | 1170 SH | SHARED | 06 | | 1170 |
| D EQUITABLE RES INC | COM | 29454910 | 5122 | 96142 SH | SHARED | 10 | 96142 | |
| D EQUITABLE RES INC | COM | 29454910 | 191 | 3600 SH | SHR/OTHR | 23 | | 3600 |
| D EQUITY INCOME FD | UT 1 EX SR-ATT | 29470070 | 186 | 1500 SH | SHARED | 20 | | 1500 |
| D EQUITY LIFESTYLE PPTYS INC | COM | 29472RE10 | 316 | 6938 SH | SHARED | | 6938 | |
| D EQUITY LIFESTYLE PPTYS INC | COM | 29472R10 | 375 | 8220 SH | SHARED | 01 | 7320 | 900 |
| D EQUITY LIFESTYLE PPTYS INC | COM | 29472R10 | 347 | 7600 SH | SHARED | 02 | 7600 | |
| D EQUITY LIFESTYLE PPTYS INC | COM | 29472R10 | 6734 | 147450 SH | SHARED | 10 | 147450 | |
| D EQUITY LIFESTYLE PPTYS INC | COM | 29472R10 | 124406 | 2724033 SH | SHARED | 11 | 1712609 | 1011424 |
| D EQUITY MEDIA HLDGS CORP | COM | 29472S10 | 11 | 3606 SH | SHARED | | 3606 | |
| D EQUITY ONE | COM | 29475210 | 244 | 10630 SH | SHARED | | 10630 | |
| D EQUITY ONE | COM | 29475210 | 313 | 13600 SH | SHARED | 01 | 1800 | 11800 |
| D EQUITY ONE | COM | 29475210 | 347 | 15075 SH | SHARED | 02 | 15075 | |
| D EQUITY ONE | COM | 29475210 | 1651 | 71700 SH | SHARED | 10 | 71700 | |
| D EQUITY ONE | COM | 29475210 | 8221 | 357000 SH | SHARED | 11 | | 357000 |
| D EQUITY RESIDENTIAL | SH BEN INT | 29476L10 | 16274 | 446245 SH | SHARED | | 436445 | 9800 |
| D EQUITY RESIDENTIAL | SH BEN INT | 29476L10 | 1600 | 43895 SH | SHARED | 01 | 33695 | 10200 |
| D EQUITY RESIDENTIAL | SH BEN INT | 29476L10 | 12 | 350 SH | SHR/OTHR | 01 | | 350 |
| D EQUITY RESIDENTIAL | SH BEN INT | 29476L10 | 846 | 23210 SH | SHARED | 02 | 23210 | |
| D EQUITY RESIDENTIAL | SH BEN INT | 29476L10 | 4 | 120 SH | SHARED | 05 | 120 | |
| D EQUITY RESIDENTIAL | SH BEN INT | 29476L10 | 22377 | 613590 SH | SHARED | 10 | 591490 | 22100 |
| D EQUITY RESIDENTIAL | SH BEN INT | 29476L10 | 273469 | 7498469 SH | SHARED | 11 | 3873894 | 3624575 |
| D EQUITY RESIDENTIAL | SH BEN INT | 29476L10 | 109 | 3010 SH | SHARED | 20 | 1500 | 1510 |
| D EQUITY RESIDENTIAL | SH BEN INT | 29476L10 | 324 | 8900 SH | SHR/OTHR | 20 | | 8900 |
| D EQUITY RESIDENTIAL | SH BEN INT | 29476L10 | 36 | 1000 SH | SHARED | 22 | | 1000 |
| D EQUITY RESIDENTIAL | SH BEN INT | 29476L10 | 45 | 1250 SH | SHARED | 23 | 1250 | |
| D EQUITY RESIDENTIAL | SH BEN INT | 29476L10 | 58 | 1600 SH | SHR/OTHR | 23 | | 1600 |
| D EQUUS TOTAL RETURN INC | COM | 29476610 | 218 | 34684 SH | SHARED | | 34684 | |
| D ERESEARCHTECHNOLOGY INC | COM | 29481V10 | 195 | 16500 SH | SHARED | | 16500 | |
| D ERESEARCHTECHNOLOGY INC | COM | 29481V10 | 345 | 29225 SH | SHARED | 01 | 29225 | |
| D ERESEARCHTECHNOLOGY INC | COM | 29481V10 | 127 | 10800 SH | SHARED | 02 | 10800 | |
| D ERESEARCHTECHNOLOGY INC | COM | 29481V10 | 241 | 20398 SH | SHARED | 10 | 20398 | |
| D ERICSSON L M TEL CO | ADR B SEK 10 | 29482160 | 5 | 220 SH | SHARED | | 220 | |
| D ERICSSON L M TEL CO | ADR B SEK 10 | 29482160 | 6184 | 264867 SH | SHARED | | 264867 | |
| D ERICSSON L M TEL CO | ADR B SEK 10 | 29482160 | 7 | 300 SH | SHARED | 01 | | 300 |
| D ERICSSON L M TEL CO | ADR B SEK 10 | 29482160 | 55 | 2386 SH | SHARED | 02 | 2386 | |
| D ERICSSON L M TEL CO | ADR B SEK 10 | 29482160 | 233 | 10000 SH | SHARED | 04 | 10000 | |
| D ERICSSON L M TEL CO | ADR B SEK 10 | 29482160 | 2 | 125 SH | SHARED | 21 | | 125 |
| D ERICSSON L M TEL CO | ADR B SEK 10 | 29482160 | 37 | 1600 SH | SHR/OTHR | 23 | | 1600 |
| D ERIE INDTY CO | CL A | 29530P10 | 292 | 5645 SH | SHARED | | 5645 | |
| D ERIE INDTY CO | CL A | 29530P10 | 76 | 1466 SH | SHARED | 02 | 1466 | |
| D ERIE INDTY CO | CL A | 29530P10 | 832 | 16038 SH | SHARED | 10 | 16038 | |
| D ESCALADE INC | COM | 29605610 | 13 | 1530 SH | SHARED | | 1530 | |
| D ESCALON MED CORP | COM NEW | 29607430 | 0 | 165 SH | SHARED | | 165 | |
| D ESCO TECHNOLOGIES INC | COM | 29631510 | 1503 | 37652 SH | SHARED | | 37652 | |
| D ESCO TECHNOLOGIES INC | COM | 29631510 | 3 | 100 SH | SHARED | 10 | 100 | |
| D ESMARK INC | COM | 29647510 | 98 | 6991 SH | SHARED | | 6991 | |
| D ESMARK INC | COM | 29647510 | 1 | 100 SH | SHARED | 02 | 100 | |
| D ESPEED INC | CL A | 29664310 | 60 | 5314 SH | SHARED | | 5314 | |
| D ESPEED INC | CL A | 29664310 | 21 | 1870 SH | SHARED | 01 | 1870 | |
| D ESPEED INC | CL A | 29664310 | 32 | 2900 SH | SHARED | 02 | 2900 | |
| D ESPEY MFG & ELECTRS CORP | COM | 29665010 | 0 | 38 SH | SHARED | | 38 | |
| D ESSA BANCORP INC | COM | 29667010 | 541 | 48158 SH | SHARED | | 48158 | |
| D ESSEX PORTFOLIO L P | NOTE  3.625%11/0 | 29717PAB | 13287 | 12500000 PRN | SHARED | | 2500000 | |
| D ESSEX PORTFOLIO L P | NOTE  3.625%11/0 | 29717PAB | 2657 | 2500000 PRN | SHARED | 02 | 2500000 | |
| D ESSEX PPTY TR INC | COM | 29717810 | 1165 | 11958 SH | SHARED | | 11958 | |
| D ESSEX PPTY TR INC | COM | 29717810 | 35 | 361 SH | SHARED | 02 | 361 | |
| D ESSEX PPTY TR INC | COM | 29717810 | 472 | 4850 SH | SHARED | 10 | 4850 | |
| D ESSEX PPTY TR INC | COM | 29717810 | 16079 | 164939 SH | SHARED | 11 | 79371 | 85568 |
| D ESTERLINE TECHNOLOGIES CORP | COM | 29742510 | 52797 | 1020242 SH | SHARED | | 1020242 | |
| D ESTERLINE TECHNOLOGIES CORP | COM | 29742510 | 557 | 10775 SH | SHARED | 01 | 10775 | |
| D ESTERLINE TECHNOLOGIES CORP | COM | 29742510 | 168 | 3250 SH | SHARED | 02 | 3250 | |
| D ESTERLINE TECHNOLOGIES CORP | COM | 29742510 | 2525 | 48800 SH | SHARED | 10 | 48800 | |
| D ETABLISSEMENTS DELHAIZE FRER | SPONSORED ADR | 29759W10 | 1687 | 19482 SH | SHARED | | 19482 | |
| D ETHAN ALLEN INTERIORS INC | COM | 29760210 | 844 | 29639 SH | SHARED | | 29639 | |
| D ETHAN ALLEN INTERIORS INC | COM | 29760210 | 106 | 3725 SH | SHARED | 02 | 3725 | |
| D ETHAN ALLEN INTERIORS INC | COM | 29760210 | 823 | 28900 SH | SHARED | 10 | 28900 | |
| D ETRIALS WORLDWIDE INC | COM | 29786P10 | 61 | 21133 SH | SHARED | | 21133 | |
| D EUROBANCSHARES INC | COM | 29871610 | 117 | 29416 SH | SHARED | | 29416 | |
| D EURONET WORLDWIDE INC | DBCV  1.625%12/1 | 298736AD | 1893 | 1766000 PRN | SHARED | 02 | 1766000 | |
| D EURONET WORLDWIDE INC | NOTE  3.500%10/1 | 298736AJ | 12703 | 12250000 PRN | SHARED | | 2250000 | |
| D EURONET WORLDWIDE INC | COM | 29873610 | 187 | 6235 SH | SHARED | | 6235 | |
| D EURONET WORLDWIDE INC | COM | 29873610 | 795 | 26500 SH | SHARED | 01 | 26300 | 200 |
| D EURONET WORLDWIDE INC | COM | 29873610 | 840 | 28000 SH | SHR/OTHR | 01 | | 28000 |
| D EURONET WORLDWIDE INC | COM | 29873610 | 1422 | 47424 SH | SHARED | 02 | 47424 | |
| D EURONET WORLDWIDE INC | COM | 29873610 | 9570 | 319000 SH | SHARED | 10 | 319000 | |
| D EUROPEAN EQUITY FUND | COM | 29876810 | 0 | 2 SH | SHARED | 02 | 2 | |
| D EVANS & SUTHERLAND COMPUTER | COM NEW | 29909610 | 0 | 231 SH | SHARED | | 231 | |
| D EVANS BANCORP INC | COM | 29911Q20 | 1 | 65 SH | SHARED | | 65 | |
| D EVERCORE PARTNERS INC | CLASS A | 29977A10 | 577 | 26812 SH | SHARED | | 26812 | |
| D EVERCORE PARTNERS INC | CLASS A | 29977A10 | 60 | 2800 SH | SHARED | 01 | | 2800 |
| D EVERGREEN INCOME ADVANTAGE F | COM SHS | 30023V10 | 15494 | 1373586 SH | SHARED | | 1373586 | |
| D EVERGREEN INCOME ADVANTAGE F | COM SHS | 30023V10 | 10182 | 902668 SH | SHARED | 10 | 902668 | |
| D EVERGREEN ENERGY INC | COM | 30024B10 | 228 | 103153 SH | SHARED | | 103153 | |
| D EVERGREEN ENERGY INC | COM | 30024B10 | 13 | 6100 SH | SHARED | 02 | 6100 | |
| D EVERGREEN ENERGY INC | COM | 30024B10 | 77 | 34900 SH | SHARED | 10 | 34900 | |
| D EVERGREEN GBL DIVID OPP FUND | COM | 30024H10 | 24 | 1428 SH | SHARED | 23 | 1428 | |
| D EVERGREEN MULTI SECT INC FUN | COM SHS | 30024Y10 | 11043 | 702516 SH | SHARED | | 702516 | |

| | Name | Class | CUSIP | Value | Shares | | Auth | Code | Col1 | Col2 |
|---|---|---|---|---|---|---|---|---|---|---|
| D | EVERGREEN MULTI SECT INC FUN | COM SHS | 30024Y10 | 0 | 4 | SH | SHARED | 01 | 4 | |
| D | EVERGREEN SOLAR INC | NOTE 4.375% 7/0 | 30033RAB | 72355 | 31500000 | PRN | SHARED | | 1500000 | |
| D | EVERGREEN SOLAR INC | COM | 30033R10 | 14364 | 831750 | SH | SHARED | | 785650 | 46100 |
| D | EVERGREEN SOLAR INC | COM | 30033R10 | 123 | 7170 | SH | SHARED | 01 | 7170 | |
| D | EVOLUTION PETROLEUM CORP | COM | 30049A10 | 2 | 490 | SH | SHARED | | 490 | |
| D | EVOLVING SYS INC | COM | 30049R10 | 1 | 460 | SH | SHARED | | 460 | |
| D | EXACT SCIENCES CORP | COM | 30063P10 | 2 | 700 | SH | SHARED | | 700 | |
| D | EXACTECH INC | COM | 30064E10 | 7 | 373 | SH | SHARED | | 373 | |
| D | EXAR CORP | COM | 30064S10 | 68 | 8600 | SH | SHARED | | 8600 | |
| D | EXCEL TECHNOLOGY INC | COM | 30067T10 | 7 | 295 | SH | SHARED | | 295 | |
| D | EXELON CORP | COM | 30161N10 | 2321 | 28438 | SH | SHARED | | 28438 | |
| D | EXELON CORP | COM | 30161N10 | 228175 | 2794894 | SH | SHARED | | 2790744 | 4150 |
| D | EXELON CORP | COM | 30161N10 | 7887 | 96610 | SH | SHARED | 01 | 95435 | 1175 |
| D | EXELON CORP | COM | 30161N10 | 31235 | 382602 | SH | SHARED | 02 | 382602 | |
| D | EXELON CORP | COM | 30161N10 | 113771 | 1393572 | SH | SHARED | 04 | 1393572 | |
| D | EXELON CORP | COM | 30161N10 | 11294 | 138350 | SH | SHARED | 05 | 138350 | |
| D | EXELON CORP | COM | 30161N10 | 82036 | 1004851 | SH | SHARED | 06 | | 1004851 |
| D | EXELON CORP | COM | 30161N10 | 23567 | 288680 | SH | SHARED | 10 | 288680 | |
| D | EXELON CORP | COM | 30161N10 | 2660 | 32593 | SH | SHARED | 14 | | 32593 |
| D | EXELON CORP | COM | 30161N10 | 3673 | 45000 | SH | SHARED | 15 | | 45000 |
| D | EXELON CORP | COM | 30161N10 | 6145 | 75275 | SH | SHARED | 16 | 75275 | |
| D | EXELON CORP | COM | 30161N10 | 1171 | 14354 | SH | SHARED | 20 | 8870 | 5484 |
| D | EXELON CORP | COM | 30161N10 | 564 | 6910 | SH | SHR/OTHR | 20 | 6910 | |
| D | EXELON CORP | COM | 30161N10 | 10 | 130 | SH | SHARED | 21 | 130 | |
| D | EXELON CORP | COM | 30161N10 | 163 | 2000 | SH | SHR/OTHR | 22 | 2000 | |
| D | EXELON CORP | COM | 30161N10 | 65 | 800 | SH | SHARED | 23 | 800 | |
| D | EXELON CORP | COM | 30161N10 | 422 | 5174 | SH | SHARED | 23 | | 5174 |
| D | EXELIXIS INC | COM | 30161Q10 | 246 | 28607 | SH | SHARED | | 28607 | |
| D | EXELIXIS INC | COM | 30161Q10 | 7209 | 835367 | SH | SHARED | 04 | 835367 | |
| D | EXELIXIS INC | COM | 30161Q10 | 44 | 5198 | SH | SHARED | 10 | 5198 | |
| D | EXELIXIS INC | COM | 30161Q10 | 60 | 7000 | SH | SHARED | 14 | 7000 | |
| D | EXFO ELECTRO OPTICAL ENGR IN | SUB VTG SHS | 30225L12 | 2 | 564 | SH | SHARED | | 564 | |
| D | EXIDE TECHNOLOGIES | *W EXP 05/05/201 | 30205L12 | 17 | 28574 | SH | SHARED | | 28574 | |
| D | EXIDE TECHNOLOGIES | COM NEW | 30205L20 | 14 | 1756 | SH | SHARED | | 1756 | |
| D | EXIDE TECHNOLOGIES | COM NEW | 30205L20 | 14 | 1850 | SH | SHARED | 02 | 1850 | |
| D | EXIDE TECHNOLOGIES | COM NEW | 30205L20 | 223 | 27900 | SH | SHARED | 10 | 27900 | |
| D | EXLSERVICE HOLDINGS INC | COM | 30208I10 | 46 | 2000 | SH | SHARED | | 2000 | |
| D | EXPEDIA INC DEL | COM | 30212P10 | 10450 | 330502 | SH | SHARED | | 330502 | |
| D | EXPEDIA INC DEL | COM | 30212P10 | 1966 | 62178 | SH | SHARED | 01 | 55438 | 6740 |
| D | EXPEDIA INC DEL | COM | 30212P10 | 151 | 4795 | SH | SHR/OTHR | 01 | 4795 | |
| D | EXPEDIA INC DEL | COM | 30212P10 | 97 | 3089 | SH | SHARED | 02 | 3089 | |
| D | EXPEDIA INC DEL | COM | 30212P10 | 4 | 150 | SH | SHARED | 05 | 150 | |
| D | EXPEDIA INC DEL | COM | 30212P10 | 64 | 2050 | SH | SHARED | 06 | | 2050 |
| D | EXPEDIA INC DEL | COM | 30212P10 | 2552 | 80723 | SH | SHARED | 10 | 80723 | |
| D | EXPEDIA INC DEL | COM | 30212P10 | 39 | 1236 | SH | SHARED | 14 | | 1236 |
| D | EXPEDIA INC DEL | COM | 30212P10 | 36 | 1150 | SH | SHARED | 20 | 1150 | |
| D | EXPEDIA INC DEL | COM | 30212P10 | 23 | 730 | SH | SHR/OTHR | 21 | | 730 |
| D | EXPEDIA INC DEL | COM | 30212P10 | 20 | 640 | SH | SHARED | 22 | 640 | |
| D | EXPEDIA INC DEL | *W EXP 02/04/200 | 30212P11 | 0 | 296 | SH | SHARED | 01 | 296 | |
| D | EXPEDIA INC DEL | *W EXP 02/04/200 | 30212P11 | 6397 | 327079 | SH | SHARED | | 327079 | |
| D | EXPEDITORS INTL WASH INC | COM | 30213010 | 8914 | 199524 | SH | SHARED | | 199524 | |
| D | EXPEDITORS INTL WASH INC | COM | 30213010 | 430 | 9630 | SH | SHARED | 01 | 9580 | 50 |
| D | EXPEDITORS INTL WASH INC | COM | 30213010 | 186 | 4170 | SH | SHARED | 02 | 4170 | |
| D | EXPEDITORS INTL WASH INC | COM | 30213010 | 80 | 1800 | SH | SHARED | 06 | | 1800 |
| D | EXPEDITORS INTL WASH INC | COM | 30213010 | 4929 | 110326 | SH | SHARED | 10 | 110326 | |
| D | EXPRESS 1 EXPEDITED SOLUTION | COM 8/0 | 30218U10 | 0 | 626 | SH | SHARED | | 626 | |
| D | EXPRESSJET HOLDINGS INC | NOTE 4.250% 8/0 | 30218UAB | 5520 | 5750000 | PRN | SHARED | | 5750000 | |
| D | EXPRESSJET HOLDINGS INC | CL A | 30218U10 | 66 | 26968 | SH | SHARED | | 26968 | |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 3301 | 45232 | SH | SHARED | | 32723 | 12509 |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 29702 | 406884 | SH | SHARED | | 406884 | |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 24331 | 333312 | SH | SHARED | 01 | 192722 | 140590 |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 4972 | 68111 | SH | SHR/OTHR | 01 | 68111 | |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 1073 | 14701 | SH | SHARED | 02 | 14701 | |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 846 | 11600 | SH | SHARED | 04 | 11600 | |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 8307 | 113800 | SH | SHARED | 04 | 113800 | |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 10 | 140 | SH | SHARED | 05 | 140 | |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 146 | 2000 | SH | SHARED | 06 | 2000 | |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 19674 | 269520 | SH | SHARED | 10 | 267380 | 2140 |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 332 | 4550 | SH | SHARED | 14 | 3000 | 1550 |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 7283 | 99774 | SH | SHARED | 19 | | 99774 |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 2706 | 37075 | SH | SHARED | 20 | 24485 | 12590 |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 1253 | 17175 | SH | SHR/OTHR | 20 | 17175 | |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 34 | 479 | SH | SHARED | 21 | 300 | 179 |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 43 | 600 | SH | SHARED | 21 | | 600 |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 1080 | 14802 | SH | SHARED | 22 | 12912 | 1890 |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 224 | 3075 | SH | SHARED | 22 | 3075 | |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 6152 | 84276 | SH | SHARED | 23 | 59126 | 25150 |
| D | EXPRESS SCRIPTS INC | COM | 30218210 | 3118 | 42725 | SH | SHR/OTHR | 23 | 42725 | |
| D | EXTERRAN PARTNERS LP | COM UNITS | 30225M10 | 786 | 24564 | SH | SHARED | | 24564 | |
| D | EXTRA SPACE STORAGE INC | COM | 30225T10 | 88 | 6222 | SH | SHARED | | 6222 | |
| D | EXTRA SPACE STORAGE INC | COM | 30225T10 | 83 | 5825 | SH | SHARED | 01 | 5825 | |
| D | EXTRA SPACE STORAGE INC | COM | 30225T10 | 1590 | 111300 | SH | SHARED | 10 | 111300 | |
| D | EXTRA SPACE STORAGE INC | COM | 30225T10 | 61267 | 4287450 | SH | SHARED | 11 | 115100 | 4172350 |
| D | EXTRA SPACE STORAGE INC | COM | 30225T10 | 42 | 3000 | SH | SHARED | 20 | 3000 | |
| D | EXTERRAN HLDGS INC | COM | 30225X10 | 7858 | 96065 | SH | SHARED | | 96065 | |
| D | EXTERRAN HLDGS INC | COM | 30225X10 | 1924 | 23528 | SH | SHARED | 01 | 4681 | 18847 |
| D | EXTERRAN HLDGS INC | COM | 30225X10 | 9069 | 110879 | SH | SHARED | 02 | 110879 | |
| D | EXTERRAN HLDGS INC | COM | 30225X10 | 73 | 900 | SH | SHARED | 06 | | 900 |
| D | EXTERRAN HLDGS INC | COM | 30225X10 | 4829 | 59036 | SH | SHARED | 10 | 59036 | |
| D | EXTERRAN HLDGS INC | COM | 30225X10 | 47 | 585 | SH | SHARED | 23 | 585 | |
| D | EXTERRAN HLDGS INC | COM | 30225X10 | 47 | 585 | SH | SHR/OTHR | 23 | | 585 |
| D | EXTREME NETWORKS INC | COM | 30226D10 | 476 | 134620 | SH | SHARED | | 134620 | |
| D | EXTREME NETWORKS INC | COM | 30226E10 | 133 | 37700 | SH | SHARED | 10 | 37700 | |
| D | EXULT INC DEL | NOTE 2.500%10/0 | 30228AAB | 15907 | 16315000 | PRN | SHARED | 02 | 6315000 | |
| D | EZCORP INC | CL A NON VTG | 30231U10 | 258 | 22920 | SH | SHARED | | 22920 | |
| D | EZCORP INC | CL A NON VTG | 30231U10 | 16 | 1500 | SH | SHARED | 01 | 1500 | |
| D | EZCORP INC | CL A NON VTG | 30231U10 | 147 | 13100 | SH | SHARED | 10 | 13100 | |
| D | EXXON MOBIL CORP | COM | 30231G10 | 6442 | 68768 | SH | SHARED | | 56048 | 12720 |
| D | EXXON MOBIL CORP | COM | 30231G10 | 841897 | 8985995 | SH | SHARED | | 8683570 | 302425 |
| D | EXXON MOBIL CORP | COM | 30231G10 | 167383 | 1786565 | SH | SHARED | 01 | 1112318 | 674247 |
| D | EXXON MOBIL CORP | COM | 30231G10 | 49918 | 532806 | SH | SHR/OTHR | 01 | 532806 | |
| D | EXXON MOBIL CORP | COM | 30231G10 | 13157 | 140434 | SH | SHARED | 02 | 140434 | |
| D | EXXON MOBIL CORP | COM | 30231G10 | 97 | 1040 | SH | SHARED | 04 | | 1040 |
| D | EXXON MOBIL CORP | COM | 30231G10 | 87014 | 928750 | SH | SHARED | 04 | 928750 | |
| D | EXXON MOBIL CORP | COM | 30231G10 | 206 | 2204 | SH | SHARED | 05 | 2204 | |
| D | EXXON MOBIL CORP | COM | 30231G10 | 47092 | 502637 | SH | SHARED | 06 | | 502637 |
| D | EXXON MOBIL CORP | COM | 30231G10 | 618832 | 6605111 | SH | SHARED | 10 | 6020711 | 584400 |
| D | EXXON MOBIL CORP | COM | 30231G10 | 779 | 8324 | SH | SHR/OTHR | 10 | 8324 | |
| D | EXXON MOBIL CORP | COM | 30231G10 | 7790 | 83149 | SH | SHARED | 14 | | 83149 |
| D | EXXON MOBIL CORP | COM | 30231G10 | 334 | 3568 | SH | SHARED | 15 | | 3568 |
| D | EXXON MOBIL CORP | COM | 30231G10 | 7824 | 83512 | SH | SHARED | 16 | 83512 | |
| D | EXXON MOBIL CORP | COM | 30231G10 | 63 | 681 | SH | SHARED | 19 | | 681 |
| D | EXXON MOBIL CORP | COM | 30231G10 | 27223 | 290575 | SH | SHARED | 20 | 117071 | 173504 |
| D | EXXON MOBIL CORP | COM | 30231G10 | 21692 | 231537 | SH | SHR/OTHR | 20 | | 231537 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | EXXON MOBIL CORP | COM | | 30231G10 | 8471 | 90418 SH | | SHARED | 21 | 79996 | 10422 |
| D | EXXON MOBIL CORP | COM | | 30231G10 | 1978 | 21115 SH | | SHR/OTHR | 21 | | 21115 |
| D | EXXON MOBIL CORP | COM | | 30231G10 | 7254 | 77435 SH | | SHARED | 22 | 47081 | 30354 |
| D | EXXON MOBIL CORP | COM | | 30231G10 | 2763 | 29496 SH | | SHR/OTHR | 22 | | 29496 |
| D | EXXON MOBIL CORP | COM | | 30231G10 | 94771 | 1011539 SH | | SHARED | 23 | 959080 | 52459 |
| D | EXXON MOBIL CORP | COM | | 30231G10 | 105820 | 1129476 SH | | SHR/OTHR | 23 | | 1129476 |
| D | EXXON MOBIL CORP | COM | | 30231G10 | 8144 | 86935 SH | | SHARED | 24 | 86935 | |
| D | FBL FINL GROUP INC | CL A | | 30239F10 | 107 | 3104 SH | | SHARED | | 3104 | |
| D | FBL FINL GROUP INC | CL A | | 30239F10 | 145 | 4200 SH | | SHARED | 01 | 4200 | |
| D | FBL FINL GROUP INC | CL A | | 30239F10 | 14 | 414 SH | | SHARED | 02 | 414 | |
| D | FBL FINL GROUP INC | CL A | | 30239F10 | 303 | 8800 SH | | SHARED | 10 | 8800 | |
| D | FEI CO | NOTE | 6/1 | 30241LAD | 3031 | 2940000 PRN | | SHARED | | 2940000 | |
| D | FEI CO | NOTE | 6/1 | 30241LAD | 3093 | 3000000 PRN | | SHARED | 02 | 3000000 | |
| D | FEI CO | NOTE | 2.875% 6/0 | 30241LAF | 3291 | 3000000 PRN | | SHARED | | 3000000 | |
| D | FEI CO | COM | | 30241L10 | 253 | 10228 SH | | SHARED | | 10228 | |
| D | FEI CO | COM | | 30241L10 | 398 | 16065 SH | | SHARED | 01 | 16065 | |
| D | FEI CO | COM | | 30241L10 | 454 | 18300 SH | | SHARED | 10 | 18300 | |
| D | FFD FINL CORP | COM | | 30243C10 | 0 | 23 SH | | SHARED | | 23 | |
| D | FLIR SYS INC | NOTE | 3.000% 6/0 | 302445AB | 13903 | 4750000 PRN | | SHARED | | 4750000 | |
| D | FLIR SYS INC | COM | | 30244510 | 839 | 26836 SH | | SHARED | | 26836 | |
| D | FLIR SYS INC | COM | | 30244510 | 178 | 5700 SH | | SHARED | 01 | 5700 | |
| D | FLIR SYS INC | COM | | 30244510 | 182 | 5819 SH | | SHARED | 02 | 5819 | |
| D | FLIR SYS INC | COM | | 30244510 | 7526 | 240474 SH | | SHARED | 10 | 240474 | |
| D | FMC TECHNOLOGIES INC | COM | | 30249010 | 5260 | 92771 SH | | SHARED | | 92771 | |
| D | FMC TECHNOLOGIES INC | COM | | 30249010 | 2938 | 51828 SH | | SHARED | 01 | 11536 | 40292 |
| D | FMC TECHNOLOGIES INC | COM | | 30249010 | 682 | 12040 SH | | SHARED | 02 | 12040 | |
| D | FMC TECHNOLOGIES INC | COM | | 30249010 | 79 | 1400 SH | | SHARED | 06 | | 1400 |
| D | FMC TECHNOLOGIES INC | COM | | 30249010 | 19278 | 340017 SH | | SHARED | 10 | 340017 | |
| D | FMC TECHNOLOGIES INC | COM | | 30249010 | 13 | 230 SH | | SHARED | 21 | | 230 |
| D | FMC TECHNOLOGIES INC | COM | | 30249010 | 1031 | 18200 SH | | SHARED | 23 | | 18200 |
| D | F M C CORP | COM NEW | | 30249130 | 22080 | 404776 SH | | SHARED | | 404776 | |
| D | F M C CORP | COM NEW | | 30249130 | 1453 | 26650 SH | | SHARED | 01 | 2250 | 24400 |
| D | F M C CORP | COM NEW | | 30249130 | 402 | 7381 SH | | SHARED | 02 | 7381 | |
| D | F M C CORP | COM NEW | | 30249130 | 2149 | 39400 SH | | SHARED | 10 | 39400 | |
| D | F M C CORP | COM NEW | | 30249130 | 14 | 262 SH | | SHARED | 20 | 262 | |
| D | F M C CORP | COM NEW | | 30249130 | 47 | 874 SH | | SHARED | 21 | | 874 |
| D | F N B UNITED CORP | COM | | 30251910 | 3 | 296 SH | | SHARED | | 296 | |
| D | FNB CORP PA | COM | | 30252010 | 367 | 24975 SH | | SHARED | | 24975 | |
| D | FNB CORP PA | COM | | 30252010 | 6 | 475 SH | | SHARED | 01 | 475 | |
| D | FNB CORP PA | COM | | 30252010 | 608 | 41400 SH | | SHARED | 02 | 41400 | |
| D | FNB CORP PA | COM | | 30252010 | 432 | 29406 SH | | SHARED | 10 | 29406 | |
| D | FPB BANCORP INC | COM | | 30254M10 | 0 | 48 SH | | SHARED | | 48 | |
| D | FPIC INS GROUP INC | COM | | 30256310 | 81 | 1900 SH | | SHARED | | 1900 | |
| D | FPIC INS GROUP INC | COM | | 30256310 | 14 | 333 SH | | SHARED | 02 | 333 | |
| D | FPIC INS GROUP INC | COM | | 30256310 | 103 | 2400 SH | | SHARED | 10 | 2400 | |
| D | FPL GROUP INC | COM | | 30257110 | 14 | 221 SH | | SHARED | | | 221 |
| D | FPL GROUP INC | COM | | 30257110 | 32277 | 476209 SH | | SHARED | | 476209 | |
| D | FPL GROUP INC | COM | | 30257110 | 5841 | 86177 SH | | SHARED | 01 | 54892 | 31285 |
| D | FPL GROUP INC | COM | | 30257110 | 766 | 11310 SH | | SHR/OTHR | 01 | | 11310 |
| D | FPL GROUP INC | COM | | 30257110 | 973 | 14356 SH | | SHARED | 02 | 14356 | |
| D | FPL GROUP INC | COM | | 30257110 | 20765 | 306361 SH | | SHARED | 04 | 306361 | |
| D | FPL GROUP INC | COM | | 30257110 | 25380 | 374453 SH | | SHARED | 05 | 374453 | |
| D | FPL GROUP INC | COM | | 30257110 | 38080 | 561825 SH | | SHARED | 06 | | 561825 |
| D | FPL GROUP INC | COM | | 30257110 | 21824 | 321985 SH | | SHARED | 10 | 321985 | |
| D | FPL GROUP INC | COM | | 30257110 | 1003 | 14800 SH | | SHARED | 14 | 14800 | |
| D | FPL GROUP INC | COM | | 30257110 | 3661 | 54017 SH | | SHARED | 16 | 54017 | |
| D | FPL GROUP INC | COM | | 30257110 | 3001 | 44286 SH | | SHARED | 20 | 8610 | 35676 |
| D | FPL GROUP INC | COM | | 30257110 | 199 | 2950 SH | | SHR/OTHR | 20 | | 2950 |
| D | FPL GROUP INC | COM | | 30257110 | 885 | 13069 SH | | SHARED | 22 | 8887 | 4182 |
| D | FPL GROUP INC | COM | | 30257110 | 177 | 2625 SH | | SHR/OTHR | 22 | | 2625 |
| D | FPL GROUP INC | COM | | 30257110 | 1222 | 18035 SH | | SHARED | 23 | 14770 | 3265 |
| D | FPL GROUP INC | COM | | 30257110 | 1551 | 22894 SH | | SHR/OTHR | 23 | | 22894 |
| D | FSI INTL INC | COM | | 30263310 | 1 | 791 SH | | SHARED | | 791 | |
| D | FTD GROUP INC | COM | | 30267U10 | 383 | 29766 SH | | SHARED | | 29766 | |
| D | FTD GROUP INC | COM | | 30267U10 | 110 | 8600 SH | | SHARED | 01 | 2000 | 6600 |
| D | FTD GROUP INC | COM | | 30267U10 | 1391 | 108000 SH | | SHARED | 10 | 108000 | |
| D | F N B CORP VA | COM | | 30293010 | 4 | 189 SH | | SHARED | | 189 | |
| D | FTI CONSULTING INC | NOTE | 3.750% 7/1 | 302941AB | 8468 | 4000000 PRN | | SHARED | | 4000000 | |
| D | FTI CONSULTING INC | COM | | 30294110 | 0 | 16 SH | | SHARED | | 16 | |
| D | FTI CONSULTING INC | COM | | 30294110 | 147 | 2400 SH | | SHARED | 01 | 2400 | |
| D | FTI CONSULTING INC | COM | | 30294110 | 5723 | 92846 SH | | SHARED | 02 | 92846 | |
| D | FTI CONSULTING INC | COM | | 30294110 | 21096 | 342260 SH | | SHARED | 10 | 342260 | |
| D | FACTSET RESH SYS INC | COM | | 30307510 | 3382 | 60721 SH | | SHARED | | 60721 | |
| D | FACTSET RESH SYS INC | COM | | 30307510 | 52 | 950 SH | | SHARED | 01 | 800 | 150 |
| D | FACTSET RESH SYS INC | COM | | 30307510 | 61 | 1100 SH | | SHARED | 02 | 1100 | |
| D | FACTSET RESH SYS INC | COM | | 30307510 | 17765 | 318954 SH | | SHARED | 10 | 314254 | 4700 |
| D | FACTSET RESH SYS INC | COM | | 30307510 | 20 | 371 SH | | SHARED | 21 | | 371 |
| D | FAIR ISAAC CORP | NOTE | 1.500% 8/1 | 303250AD | 5162 | 5236000 PRN | | SHARED | 02 | 5236000 | |
| D | FAIR ISAAC CORP | COM | | 30325010 | 938 | 29205 SH | | SHARED | | 29205 | |
| D | FAIR ISAAC CORP | COM | | 30325010 | 835 | 25987 SH | | SHARED | 01 | 2387 | 23600 |
| D | FAIR ISAAC CORP | COM | | 30325010 | 515 | 16032 SH | | SHARED | 02 | 16032 | |
| D | FAIR ISAAC CORP | COM | | 30325010 | 539 | 16791 SH | | SHARED | 10 | 16791 | |
| D | FAIR ISAAC CORP | COM | | 30325010 | 1726 | 53700 SH | | SHARED | 14 | | 53700 |
| D | FAIRCHILD CORP | CL A | | 30369R10 | 1 | 440 SH | | SHARED | | 440 | |
| D | FAIRCHILD CORP | CL A | | 30369R10 | 1 | 550 SH | | SHARED | 02 | 550 | |
| D | FAIRCHILD SEMICONDUCTOR INTL | COM | | 30372610 | 881 | 61114 SH | | SHARED | | 61114 | |
| D | FAIRCHILD SEMICONDUCTOR INTL | COM | | 30372610 | 823 | 57100 SH | | SHARED | 01 | 9900 | 47200 |
| D | FAIRCHILD SEMICONDUCTOR INTL | COM | | 30372610 | 1711 | 118628 SH | | SHARED | 02 | 118628 | |
| D | FAIRCHILD SEMICONDUCTOR INTL | COM | | 30372610 | 590 | 40944 SH | | SHARED | 10 | 40944 | |
| D | FAIRFAX FINL HLDGS LTD | DBCV | 5.000% 7/1 | 303901AL | 2702 | 2000000 PRN | | SHARED | | 2000000 | |
| D | FAIRFAX FINL HLDGS LTD | SUB VTG | | 30390110 | 4902 | 17134 SH | | SHARED | | 17134 | |
| D | FAIRFAX FINL HLDGS LTD | SUB VTG | | 30390110 | 28 | 100 SH | | SHARED | 06 | | 100 |
| D | FAIRFAX FINL HLDGS LTD | SUB VTG | | 30390110 | 56 | 196 SH | | SHARED | 14 | | 196 |
| D | FAIRPOINT COMMUNICATIONS INC | COM | | 30556010 | 911 | 70000 SH | | SHARED | | 70000 | |
| D | FAIRPOINT COMMUNICATIONS INC | COM | | 30556010 | 2939 | 225800 SH | | SHARED | 10 | 225800 | |
| D | FALCONSTOR SOFTWARE INC | COM | | 30613710 | 1976 | 175571 SH | | SHARED | | 175571 | |
| D | FALCONSTOR SOFTWARE INC | COM | | 30613710 | 37 | 3300 SH | | SHARED | 01 | 3300 | |
| D | FALCONSTOR SOFTWARE INC | COM | | 30613710 | 55 | 4925 SH | | SHARED | 02 | 4925 | |
| D | FALCONSTOR SOFTWARE INC | COM | | 30613710 | 662 | 58800 SH | | SHARED | 10 | 58800 | |
| D | FAMILY DLR STORES INC | COM | | 30700010 | 3127 | 162640 SH | | SHARED | | 162640 | |
| D | FAMILY DLR STORES INC | COM | | 30700010 | 262 | 13642 SH | | SHARED | 01 | 13642 | |
| D | FAMILY DLR STORES INC | COM | | 30700010 | 309 | 16089 SH | | SHARED | 02 | 16089 | |
| D | FAMILY DLR STORES INC | COM | | 30700010 | 14 | 730 SH | | SHARED | 06 | | 730 |
| D | FAMILY DLR STORES INC | COM | | 30700010 | 27265 | 1417842 SH | | SHARED | 10 | 1398742 | 19100 |
| D | FAMILY DLR STORES INC | COM | | 30700010 | 268 | 13959 SH | | SHARED | 14 | | 13959 |
| D | FAMOUS DAVES AMER INC | COM | | 30706810 | 128 | 9480 SH | | SHARED | | 9480 | |
| D | FARMER BROS CO | COM | | 30767510 | 149 | 6500 SH | | SHARED | | 6500 | |
| D | FARMERS CAP BK CORP | COM | | 30956210 | 4 | 179 SH | | SHARED | | 179 | |
| D | FARO TECHNOLOGIES INC | COM | | 31164210 | 108 | 3986 SH | | SHARED | | 3986 | |
| D | FASTENAL CO | COM | | 31190010 | 1484 | 36731 SH | | SHARED | | 36731 | |
| D | FASTENAL CO | COM | | 31190010 | 1586 | 39250 SH | | SHARED | 01 | 1450 | 37800 |
| D | FASTENAL CO | COM | | 31190010 | 256 | 6345 SH | | SHARED | 02 | 6345 | |
| D | FASTENAL CO | COM | | 31190010 | 26 | 650 SH | | SHARED | 06 | | 650 |
| D | FASTENAL CO | COM | | 31190010 | 227 | 5639 SH | | SHARED | 10 | 5639 | |

```
D FAVRILLE INC                   COM            31208840       1      857 SH     SHARED               857
D FCSTONE GROUP INC              COM            31308T10      15      347 SH     SHARED               347
D FCSTONE GROUP INC              COM            31308T10    3659    79500 SH     SHARED        04   79500
D FCSTONE GROUP INC              COM            31308T10     672    14600 SH     SHARED        05   14600
D FCSTONE GROUP INC              COM            31308T10   10957   238050 SH     SHARED        10  238050
D FEDERAL AGRIC MTG CORP         CL C           31314830      17      668 SH     SHARED               668
D FEDERAL AGRIC MTG CORP         CL C           31314830       2       93 SH     SHARED        02      93
D FEDERAL AGRIC MTG CORP         CL C           31314830     318    12100 SH     SHARED        10   12100
D FEDERAL HOME LN MTG CORP       COM            31340030   28542   837753 SH     SHARED            837753
D FEDERAL HOME LN MTG CORP       COM            31340030    2849    83649 SH     SHARED        01   81049         2600
D FEDERAL HOME LN MTG CORP       COM            31340030   15437   453118 SH     SHARED        02  453118
D FEDERAL HOME LN MTG CORP       COM            31340030      10      310 SH     SHARED        05     310
D FEDERAL HOME LN MTG CORP       COM            31340030     209     6150 SH     SHARED        06             6150
D FEDERAL HOME LN MTG CORP       COM            31340030  304557  8939180 SH     SHARED        10 8939180
D FEDERAL HOME LN MTG CORP       COM            31340030     255     7510 SH     SHARED        14              7510
D FEDERAL HOME LN MTG CORP       COM            31340030     228     6719 SH     SHARED        20    3190         3529
D FEDERAL NATL MTG ASSN          COM            31358610      11      300 SH     SHARED               300
D FEDERAL NATL MTG ASSN          COM            31358610  471445 11792024 SH     SHARED           1792024
D FEDERAL NATL MTG ASSN          COM            31358610    5787   144770 SH     SHARED        01  128370        16400
D FEDERAL NATL MTG ASSN          COM            31358610      17      444 SH     SHR/OTHR      01     444
D FEDERAL NATL MTG ASSN          COM            31358610    6811   170373 SH     SHARED        02  170373
D FEDERAL NATL MTG ASSN          COM            31358610      16      410 SH     SHARED        05     410
D FEDERAL NATL MTG ASSN          COM            31358610     366     9178 SH     SHARED        06             9178
D FEDERAL NATL MTG ASSN          COM            31358610  247546  6191751 SH     SHARED        10 6190951          800
D FEDERAL NATL MTG ASSN          COM            31358610      15      400 SH     SHR/OTHR      10     400
D FEDERAL NATL MTG ASSN          COM            31358610     578    14480 SH     SHARED        14   14480
D FEDERAL NATL MTG ASSN          COM            31358610     759    18995 SH     SHARED        20    6400        12595
D FEDERAL NATL MTG ASSN          COM            31358610     128     3213 SH     SHR/OTHR      20    6400
D FEDERAL NATL MTG ASSN          COM            31358610     191     4796 SH     SHARED        21    4796
D FEDERAL NATL MTG ASSN          COM            31358610      23      600 SH     SHARED        23     600
D FEDERAL REALTY INVT TR         SH BEN INT NEW 31374720    1276    15536 SH     SHARED            15536
D FEDERAL REALTY INVT TR         SH BEN INT NEW 31374720    1560    19000 SH     SHARED        01     100        18900
D FEDERAL REALTY INVT TR         SH BEN INT NEW 31374720     220     2682 SH     SHARED        02    2682
D FEDERAL REALTY INVT TR         SH BEN INT NEW 31374720       4       50 SH     SHARED        05      50
D FEDERAL REALTY INVT TR         SH BEN INT NEW 31374720   12737   155050 SH     SHARED        10  155050
D FEDERAL REALTY INVT TR         SH BEN INT NEW 31374720  268519  3268649 SH     SHARED        11 1996319      1272330
D FEDERAL SIGNAL CORP            COM            31385510      50     4528 SH     SHARED              4528
D FEDERAL SIGNAL CORP            COM            31385510     205    18300 SH     SHARED        01   18300
D FEDERAL SIGNAL CORP            COM            31385510      25     2269 SH     SHARED        02    2269
D FEDERAL SIGNAL CORP            COM            31385510     216    19277 SH     SHARED        10   19277
D FEDERAL TR CORP                COM            31401210      21    10563 SH     SHARED             10563
D FEDERATED INVS INC PA          CL B           31421110    6084   147822 SH     SHARED            147822
D FEDERATED INVS INC PA          CL B           31421110     343     8350 SH     SHARED        01    8350
D FEDERATED INVS INC PA          CL B           31421110     719    17486 SH     SHARED        02   17486
D FEDERATED INVS INC PA          CL B           31421110    5877   142800 SH     SHARED        10  136600         6200
D FEDEX CORP                     COM            31428X10      15      170 SH     SHARED               170
D FEDEX CORP                     COM            31428X10   32719   366929 SH     SHARED            366929
D FEDEX CORP                     COM            31428X10    3457    38776 SH     SHARED        01   37376         1400
D FEDEX CORP                     COM            31428X10    9020   101157 SH     SHARED        02  101157
D FEDEX CORP                     COM            31428X10       9      110 SH     SHARED        05     110
D FEDEX CORP                     COM            31428X10     256     2881 SH     SHARED        06             2881
D FEDEX CORP                     COM            31428X10   52260   586082 SH     SHARED        10  586082
D FEDEX CORP                     COM            31428X10      17      200 SH     SHR/OTHR      10     200
D FEDEX CORP                     COM            31428X10     380     4265 SH     SHARED        14    4265
D FEDEX CORP                     COM            31428X10     995    11165 SH     SHARED        20    1515         9650
D FEDEX CORP                     COM            31428X10      13      150 SH     SHR/OTHR      20     150
D FEDEX CORP                     COM            31428X10     273     3063 SH     SHARED        21    1055         2008
D FEDEX CORP                     COM            31428X10      13      150 SH     SHARED        22     150
D FEDEX CORP                     COM            31428X10      44      500 SH     SHARED        23     500
D FEDEX CORP                     COM            31428X10     726     8150 SH     SHR/OTHR      23            8150
D FEDFIRST FINL CORP             COM            31429X10      13     1533 SH     SHARED              1533
D FELCOR LODGING TR INC          COM            31430F10    2900   186047 SH     SHARED            186047
D FELCOR LODGING TR INC          COM            31430F10     361    23200 SH     SHARED        01   23200
D FELCOR LODGING TR INC          COM            31430F10   10028   643290 SH     SHARED        10  643290
D FELCOR LODGING TR INC          COM            31430F10    9460  6379740 SH     SHARED        11 2706973      3672767
D FELCOR LODGING TR INC          PFD CV A $1.95 31430F20     896    43460 SH     SHARED             43460
D FELDMAN MALL PPTYS INC         COM            31430810       1      312 SH     SHARED               312
D FEMALE HEALTH CO               COM            31446210       1      516 SH     SHARED               516
D FERRELLGAS PARTNERS L.P.       UNIT LTD PART  31529310      29     1324 SH     SHARED              1324
D FERRO CORP                     COM            31540510   62969  3037624 SH     SHARED           3037624
D FERRO CORP                     COM            31540510     358    17300 SH     SHARED        01            17300
D FERRO CORP                     COM            31540510      42     2061 SH     SHARED        02    2061
D FERRO CORP                     COM            31540510     302    14600 SH     SHARED        10   14600
D FERRO CORP                     COM            31540510     103     5000 SH     SHARED        23            5000
D F5 NETWORKS INC                COM            31561610    6318   221550 SH     SHARED            221550
D F5 NETWORKS INC                COM            31561610    1060    37190 SH     SHARED        01   10690        26500
D F5 NETWORKS INC                COM            31561610     243     8550 SH     SHR/OTHR      01            8550
D F5 NETWORKS INC                COM            31561610     124     4359 SH     SHARED        02    4359
D F5 NETWORKS INC                COM            31561610    2566    90000 SH     SHARED        04   90000
D F5 NETWORKS INC                COM            31561610     966    33900 SH     SHARED        05   33900
D F5 NETWORKS INC                COM            31561610   27354   959126 SH     SHARED        10  959126
D FIBERNET TELECOM GRP INC       COM PAR $0.001 31565340       1      188 SH     SHARED               188
D FIBERNET TELECOM GRP INC       COM PAR $0.001 31565340    4137   519134 SH     SHARED        02  519134
D FIBERTOWER CORP                COM            31567T10     136    59900 SH     SHARED        10   59900
D FIDELITY BANCORP INC           COM            31583110       0       66 SH     SHARED                66
D FIDELITY NATL INFORMATION SV   COM            31620M10   99452  2391258 SH     SHARED           2391258
D FIDELITY NATL INFORMATION SV   COM            31620M10     795    19138 SH     SHARED        01   16838         2300
D FIDELITY NATL INFORMATION SV   COM            31620M10     166     4000 SH     SHR/OTHR      01    4000
D FIDELITY NATL INFORMATION SV   COM            31620M10     326     7839 SH     SHARED        02    7839
D FIDELITY NATL INFORMATION SV   COM            31620M10      66     1596 SH     SHARED        06             1596
D FIDELITY NATL INFORMATION SV   COM            31620M10    3081    74096 SH     SHARED        10   74096
D FIDELITY NATL INFORMATION SV   COM            31620M10       0       20 SH     SHARED        21              20
D FIDELITY NATL INFORMATION SV   COM            31620M10    1376    33106 SH     SHARED        23   25825         7281
D FIDELITY NATL INFORMATION SV   COM            31620M10     467    11250 SH     SHR/OTHR      23   11250
D FIDELITY NATIONAL FINANCIAL    CL A           31620R10   46224  3163911 SH     SHARED           3163911
D FIDELITY NATIONAL FINANCIAL    CL A           31620R10    1233    84405 SH     SHARED        01    5366        79039
D FIDELITY NATIONAL FINANCIAL    CL A           31620R10     160    11017 SH     SHARED        02   11017
D FIDELITY NATIONAL FINANCIAL    CL A           31620R10      16     1162 SH     SHARED        06             1162
D FIDELITY NATIONAL FINANCIAL    CL A           31620R10     207    14200 SH     SHARED        10   14200
D FIDELITY NATIONAL FINANCIAL    CL A           31620R10     283    19421 SH     SHARED        23            19421
D FIDELITY SOUTHERN CORP NEW     COM            31634H10       7      777 SH     SHARED               777
D FIELDPOINT PETROLEUM CORP      COM            31657010       0      146 SH     SHARED               146
D FIFTH THIRD BANCORP            COM            31677310   21930   872691 SH     SHARED            872691
D FIFTH THIRD BANCORP            COM            31677310    1358    54074 SH     SHARED        01   53624          450
D FIFTH THIRD BANCORP            COM            31677310       3      150 SH     SHR/OTHR      01     150
D FIFTH THIRD BANCORP            COM            31677310     251    10024 SH     SHARED        02   10024
D FIFTH THIRD BANCORP            COM            31677310       5      210 SH     SHARED        05     210
D FIFTH THIRD BANCORP            COM            31677310     122     4880 SH     SHARED        06             4880
D FIFTH THIRD BANCORP            COM            31677310    6957   276844 SH     SHARED        10  276844
D FIFTH THIRD BANCORP            COM            31677310     243     9700 SH     SHARED        14            9700
D FIFTH THIRD BANCORP            COM            31677310      57     2286 SH     SHARED        21    2286
D FIFTH THIRD BANCORP            COM            31677310       3      150 SH     SHARED        23     150
D 51JOB INC                      SP ADR REP COM 31682710       3      195 SH     SHARED               195
D FINANCIAL FED CORP             COM            31749210       2      109 SH     SHARED               109
```

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | FINANCIAL FED CORP | COM | 31749210 | 473 | 21250 SH | SHARED | 02 | 21250 | |
| D | FINANCIAL FED CORP | COM | 31749210 | 207 | 9300 SH | SHARED | 10 | 9300 | |
| D | FINANCIAL FED CORP | COM | 31749210 | 6 | 300 SH | SHARED | 21 | | 300 |
| D | FINANCIAL INSTNS INC | COM | 31758540 | 5 | 312 SH | SHARED | | 312 | |
| D | FINANCIAL TRENDS FUND INC | COM | 31771910 | 2407 | 175110 SH | SHARED | | 175110 | |
| D | FINISAR | NOTE 5.250%10/1 | 31787AAC | 2910 | 3000000 PRN | SHARED | | 3000000 | |
| D | FINISAR | COM | 31787A10 | 232 | 160120 SH | SHARED | | | 160120 |
| D | FINISAR | COM | 31787A10 | 427 | 294781 SH | SHARED | | 294781 | |
| D | FINLAY ENTERPRISES INC | COM NEW | 31788420 | 0 | 199 SH | SHARED | | 199 | |
| D | FINISH LINE INC | CL A | 31792310 | 5065 | 2093203 SH | SHARED | | 2093203 | |
| D | FIRST ADVANTAGE CORP | CL A | 31845P10 | 0 | 28 SH | SHARED | | 28 | |
| D | FIRST ADVANTAGE CORP | CL A | 31845P10 | 136 | 8300 SH | SHARED | 02 | 8300 | |
| D | FIRST ACCEPTANCE CORP | COM | 31845710 | 0 | 18 SH | SHARED | | 18 | |
| D | FIRST ACCEPTANCE CORP | COM | 31845710 | 16 | 4000 SH | SHARED | 10 | 4000 | |
| D | FIRST ALBANY COS INC | COM | 31846510 | 0 | 417 SH | SHARED | | 417 | |
| D | FIRST ADVANTAGE BANCORP | COM | 31848L10 | 137 | 12974 SH | SHARED | | 12974 | |
| D | FIRST AMERN CORP CALIF | COM | 31852230 | 91076 | 2669313 SH | SHARED | | 2669313 | |
| D | FIRST AMERN CORP CALIF | COM | 31852230 | 1268 | 37175 SH | SHARED | 01 | 5875 | 31300 |
| D | FIRST AMERN CORP CALIF | COM | 31852230 | 160 | 4717 SH | SHARED | 02 | 4717 | |
| D | FIRST AMERN CORP CALIF | COM | 31852230 | 17 | 500 SH | SHARED | 06 | 500 | |
| D | FIRST AMERN CORP CALIF | COM | 31852230 | 136 | 4000 SH | SHARED | 10 | 4000 | |
| D | FIRST BANCORP P R | COM | 31867210 | 75 | 10300 SH | SHARED | | 10300 | |
| D | FIRST BANCORP P R | COM | 31867210 | 2 | 300 SH | SHARED | 02 | 300 | |
| D | FIRST BANCORP P R | COM | 31867210 | 237 | 32600 SH | SHARED | 10 | 32600 | |
| D | FIRST BANCSHARES INC MO | COM | 31868710 | 0 | 37 SH | SHARED | | 37 | |
| D | FIRST BANCORP N C | COM | 31891010 | 6 | 332 SH | SHARED | | 332 | |
| D | FIRST BANCSHARES INC MS | COM | 31891610 | 1 | 76 SH | SHARED | | 76 | |
| D | FIRST BUSEY CORP | COM | 31938310 | 2 | 128 SH | SHARED | | 128 | |
| D | FIRST BUS FINL SVCS INC WIS | COM | 31939010 | 0 | 56 SH | SHARED | | 56 | |
| D | FIRST CALIFORNIA FINANCIAL G | COM NEW | 31939510 | 1 | 216 SH | SHARED | | 216 | |
| D | FIRST CASH FINL SVCS INC | COM | 31942010 | 116 | 7904 SH | SHARED | | 7904 | |
| D | FIRST CASH FINL SVCS INC | COM | 31942D10 | 24 | 1700 SH | SHARED | 01 | 1700 | |
| D | FIRST CASH FINL SVCS INC | COM | 31942D10 | 215 | 14700 SH | SHARED | 10 | 14700 | |
| D | FIRST CASH FINL SVCS INC | COM | 31942D10 | 36 | 2508 SH | SHARED | 21 | | 2508 |
| D | FIRST CAPITAL BANCORP VA | COM | 31943810 | 0 | 77 SH | SHARED | | 77 | |
| D | FIRST CHARTER CORP | COM | 31943910 | 10405 | 348489 SH | SHARED | | 348489 | |
| D | FIRST CHARTER CORP | COM | 31943910 | 2 | 100 SH | SHARED | 01 | 100 | |
| D | FIRST CHARTER CORP | COM | 31943910 | 241 | 8100 SH | SHARED | 10 | 8100 | |
| D | FIRST CTZNS BANC CORP | COM NO PAR | 31945920 | 2 | 195 SH | SHARED | | 195 | |
| D | FIRST CTZNS BANCSHARES INC N | CL A | 31946M10 | 15 | 105 SH | SHARED | | 105 | |
| D | FIRST CTZNS BANCSHARES INC N | CL A | 31946M10 | 152 | 1044 SH | SHR/OTHR | 01 | | 1044 |
| D | FIRST CTZNS BANCSHARES INC N | CL A | 31946M10 | 218 | 1500 SH | SHARED | 10 | 1500 | |
| D | FIRST CLOVER LEAF FIN CORP | COM | 31969M10 | 2 | 216 SH | SHARED | | 216 | |
| D | FIRST COMWLTH FINL CORP PA | COM | 31982910 | 64 | 6080 SH | SHARED | | 6080 | |
| D | FIRST COMWLTH FINL CORP PA | COM | 31982910 | 181 | 17000 SH | SHARED | 10 | 17000 | |
| D | FIRST COMWLTH FINL CORP PA | COM | 31982910 | 578 | 54347 SH | SHARED | 11 | 54347 | |
| D | FIRST CMNTY BANCSHARES INC N | COM | 31983A10 | 2 | 72 SH | SHARED | | 72 | |
| D | FIRST CMNTY BANCSHARES INC N | COM | 31983A10 | 117 | 3700 SH | SHARED | 10 | 3700 | |
| D | FIRST CMNTY BANCORP CALIF | COM | 31983B10 | 443 | 10755 SH | SHARED | | 10755 | |
| D | FIRST CMNTY BANCORP CALIF | COM | 31983B10 | 395 | 9600 SH | SHARED | 01 | 900 | 8700 |
| D | FIRST CMNTY BANCORP CALIF | COM | 31983B10 | 152 | 3694 SH | SHARED | 02 | 3694 | |
| D | FIRST CMNTY BANCORP CALIF | COM | 31983B10 | 1765 | 42800 SH | SHARED | 10 | 42800 | |
| D | FIRST CMNTY CORP S C | COM | 31983510 | 1 | 84 SH | SHARED | | 84 | |
| D | FIRST CONSULTING GROUP INC | COM | 31986R10 | 8 | 633 SH | SHARED | | 633 | |
| D | FIRST CONSULTING GROUP INC | COM | 31986R10 | 41 | 3200 SH | SHARED | 02 | 3200 | |
| D | FIRST DEFIANCE FINL CORP | COM | 32006W10 | 10 | 476 SH | SHARED | | 476 | |
| D | FIRST FED BANCSHARES ARK INC | COM | 32020F10 | 1 | 102 SH | SHARED | | 102 | |
| D | FIRST FINL BANKSHARES | COM | 32020R10 | 120 | 3200 SH | SHARED | 10 | 3200 | |
| D | FIRST FED BANKSHARES INC DEL | COM | 32020V10 | 1 | 80 SH | SHARED | | 80 | |
| D | FIRST FINL BANCORP OH | COM | 32020910 | 5 | 456 SH | SHARED | | 456 | |
| D | FIRST FINL BANCORP OH | COM | 32020910 | 1 | 100 SH | SHARED | 02 | 100 | |
| D | FIRST FINL BANCORP OH | COM | 32020910 | 161 | 14200 SH | SHARED | 10 | 14200 | |
| D | FIRST FED NORTHN MICH BANCOR | COM | 32021L10 | 76 | 10370 SH | SHARED | | 10370 | |
| D | FIRST FINL CORP IND | COM | 32021810 | 3 | 134 SH | SHARED | | 134 | |
| D | FIRST FINL CORP IND | COM | 32021810 | 187 | 6600 SH | SHARED | 10 | 6600 | |
| D | FIRST FINL SVC CORP | COM | 32022D10 | 2 | 116 SH | SHARED | | 116 | |
| D | FIRST FINANCIAL NORTHWEST IN | COM | 32022K10 | 3042 | 309155 SH | SHARED | | 309155 | |
| D | FIRST FINL FD INC | COM | 32022810 | 119 | 10843 SH | SHARED | | 10843 | |
| D | FIRST FINL HLDGS INC | COM | 32023910 | 6 | 227 SH | SHARED | | 227 | |
| D | FIRST FINL HLDGS INC | COM | 32023910 | 244 | 8900 SH | SHARED | 10 | 8900 | |
| D | FIRST FRANKLIN CORP | COM | 32027210 | 0 | 29 SH | SHARED | | 29 | |
| D | FIRST HORIZON NATL CORP | COM | 32051710 | 8400 | 462819 SH | SHARED | | 462819 | |
| D | FIRST HORIZON NATL CORP | COM | 32051710 | 210 | 11600 SH | SHARED | 01 | 11600 | |
| D | FIRST HORIZON NATL CORP | COM | 32051710 | 83 | 4580 SH | SHARED | 02 | 4580 | |
| D | FIRST HORIZON NATL CORP | COM | 32051710 | 10 | 580 SH | SHARED | 06 | | 580 |
| D | FIRST HORIZON NATL CORP | COM | 32051710 | 1142 | 62949 SH | SHARED | 10 | 62949 | |
| D | 1ST INDEPENDENCE FINL GRP IN | COM | 32053610 | 0 | 46 SH | SHARED | | 46 | |
| D | FIRST INDUSTRIAL REALTY TRUS | COM | 32054010 | 7999 | 231201 SH | SHARED | | 231201 | |
| D | FIRST INDUSTRIAL REALTY TRUS | COM | 32054K10 | 224 | 6500 SH | SHARED | 01 | 5500 | 1000 |
| D | FIRST INDUSTRIAL REALTY TRUS | COM | 32054K10 | 1671 | 48300 SH | SHARED | 10 | 48300 | |
| D | FIRST INDUSTRIAL REALTY TRUS | COM | 32054K10 | 23431 | 677200 SH | SHARED | 11 | | 677200 |
| D | FIRST INDUSTRIAL REALTY TRUS | COM | 32054K10 | 69 | 2000 SH | SHR/OTHR | 21 | | 2000 |
| D | FIRST INDUSTRIAL REALTY TRUS | COM | 32054K10 | 8 | 250 SH | SHARED | 22 | | 250 |
| D | FIRST INDUSTRIAL REALTY TRUS | COM | 32054K10 | 91 | 2650 SH | SHARED | 23 | 2650 | |
| D | FIRST INDUSTRIAL REALTY TRUS | COM | 32054K10 | 65 | 1900 SH | SHR/OTHR | 23 | | 1900 |
| D | FIRST IND CORP | COM | 32054R10 | 0 | 1 SH | SHARED | | 1 | |
| D | FIRST IND CORP | COM | 32054R10 | 697 | 21810 SH | SHARED | 02 | 21810 | |
| D | FIRST IND CORP | COM | 32054R10 | 51 | 1600 SH | SHARED | 10 | 1600 | |
| D | FIRST ISRAEL FD INC | COM | 32063L10 | 0 | 37 SH | SHARED | | 37 | |
| D | FIRST ISRAEL FD INC | COM | 32063L10 | 58 | 2500 SH | SHARED | 01 | | 2500 |
| D | FIRST KEYSTONE FINL INC | COM | 32065510 | 0 | 50 SH | SHARED | | 50 | |
| D | FIRST LONG IS CORP | COM | 32073410 | 2 | 160 SH | SHARED | | 160 | |
| D | FIRST M & F CORP | COM | 32074410 | 3 | 220 SH | SHARED | | 220 | |
| D | FIRST MARBLEHEAD CORP | COM | 32077110 | 19997 | 1307055 SH | SHARED | | 1307055 | |
| D | FIRST MARBLEHEAD CORP | COM | 32077110 | 64 | 4200 SH | SHARED | 01 | 4200 | |
| D | FIRST MARBLEHEAD CORP | COM | 32077110 | 61 | 3994 SH | SHARED | 02 | 3994 | |
| D | FIRST MARBLEHEAD CORP | COM | 32077110 | 5209 | 340476 SH | SHARED | 10 | 328076 | 12400 |
| D | FIRST MARINER BANCORP | COM | 32079510 | 0 | 140 SH | SHARED | | 140 | |
| D | FIRST MERCHANTS CORP | COM | 32081710 | 17 | 795 SH | SHARED | | 795 | |
| D | FIRST MERCHANTS CORP | COM | 32081710 | 55 | 2537 SH | SHARED | 02 | 2537 | |
| D | FIRST MERCHANTS CORP | COM | 32081710 | 107 | 4900 SH | SHARED | 10 | 4900 | |
| D | FIRST MERCURY FINANCIAL CORP | COM | 32084110 | 1 | 73 SH | SHARED | | 73 | |
| D | FIRST MERCURY FINANCIAL CORP | COM | 32084110 | 444 | 18200 SH | SHARED | 10 | 18200 | |
| D | FIRST MIDWEST BANCORP DEL | COM | 32086710 | 477 | 15600 SH | SHARED | | 15600 | |
| D | FIRST MIDWEST BANCORP DEL | COM | 32086710 | 16 | 550 SH | SHARED | 01 | 550 | |
| D | FIRST MIDWEST BANCORP DEL | COM | 32086710 | 482 | 15754 SH | SHARED | 02 | 15754 | |
| D | FIRST MIDWEST BANCORP DEL | COM | 32086710 | 945 | 30900 SH | SHARED | 10 | 30900 | |
| D | FIRST NATL BANCSHARES INC S | COM | 32111B10 | 1 | 87 SH | SHARED | | 87 | |
| D | FIRST MUTUAL BANCSHARES INC | COM | 32190810 | 4 | 150 SH | SHARED | | 150 | |
| D | FIRST NATL LINCOLN CORP ME | COM | 33571610 | 3 | 257 SH | SHARED | | 257 | |
| D | FIRST NIAGARA FINL GP INC | COM | 33582V10 | 351 | 29229 SH | SHARED | | 29229 | |
| D | FIRST NIAGARA FINL GP INC | COM | 33582V10 | 350 | 29100 SH | SHARED | 01 | | 29100 |
| D | FIRST NIAGARA FINL GP INC | COM | 33582V10 | 60 | 4995 SH | SHARED | 02 | 4995 | |
| D | FIRST NIAGARA FINL GP INC | COM | 33582V10 | 646 | 53700 SH | SHARED | 10 | 53700 | |

```
D FIRST PACTRUST BANCORP INC      COM              33589V10     1       81 SH      SHARED             81
D FIRST PL FINL CORP              COM              33610T10     6      500 SH      SHARED            500
D FIRST PL FINL CORP              COM              33610T10    69     5000 SH      SHARED       10   5000
D FIRST REGL BANCORP              COM              33615C10  1300    68868 SH      SHARED          68868
D FIRST REGL BANCORP              COM              33615C10   475    25150 SH      SHARED       01  25000          150
D FIRST REGL BANCORP              COM              33615C10   472    25000 SH      SHR/OTHR     01            25000
D FIRST REGL BANCORP              COM              33615C10   132     7000 SH      SHARED       10   7000
D FIRST SEC GROUP INC             COM              33631210     4      459 SH      SHARED            459
D FIRST SOLAR INC                 COM              33643310    39      149 SH      SHARED                         149
D FIRST SOLAR INC                 COM              33643310  6578    24627 SH      SHARED          24627
D FIRST SOLAR INC                 COM              33643310   400     1500 SH      SHARED       01   1500
D FIRST SOLAR INC                 COM              33643310  3008    11262 SH      SHARED       02  11262
D FIRST SOLAR INC                 COM              33643310 16937    63403 SH      SHARED       04  63403
D FIRST SOLAR INC                 COM              33643310 25388    95038 SH      SHARED       05  95038
D FIRST SOLAR INC                 COM              33643310   770     2885 SH      SHARED       06                2885
D FIRST SOLAR INC                 COM              33643310 10248    38363 SH      SHARED       10  31463         6900
D FIRST ST BANCORPORATION         COM              33645310   587     2200 SH      SHARED       24   2200
D FIRST ST BANCORPORATION         COM              33645310    61     4436 SH      SHARED           4436
D FIRST ST BANCORPORATION         COM              33645310   671    48300 SH      SHARED       01  48000          300
D FIRST ST BANCORPORATION         COM              33645310   806    58000 SH      SHR/OTHR     01            58000
D FIRST ST BANCORPORATION         COM              33645310   271    19500 SH      SHARED       10  19500
D FIRST SOUTH BANCORP INC VA      COM              33646W10   774    34893 SH      SHARED          34893
D 1ST SOURCE CORP                 COM              33690110     8      490 SH      SHARED            490
D 1ST SOURCE CORP                 COM              33690110   135     7820 SH      SHARED       10   7820
D FIRST TR TAX ADVTG PFD INCM     COM              33691810   135    10088 SH      SHARED          10088
D FIRST TR FINL CORP FLA          COM              33708M20    37     3813 SH      SHARED           3813
D FIRST TR ENHANCED EQTY INC F    COM              33731810   648    40200 SH      SHARED          40200
D FIRST TR ABERDEEN GLBL OPP F    COM SHS          33731910  1478    89410 SH      SHARED          89410
D FIRST TR GALLATIN SPEC FINAN    COM BENE INTER   33733G10  1995   166132 SH      SHARED         166132
D FIRST TR/FOUR CRNRS SR FLOAT    COM              33733010  2431   161915 SH      SHARED         161915
D FIRST TRUST FIDAC MTG INCM P    COM              33734810    48     2800 SH      SHARED           2800
D FIRST TR STRTGC HIGH INCM FD    COM              33734710  2417   201130 SH      SHARED         201130
D FIRST TR STRAT HGH INC FD II    COM              33735C10   578    56608 SH      SHARED          56608
D FIRST TR STRATEGIC HIGH INC     COM SHS          33735310  3190   244516 SH      SHARED         244516
D FIRST UTD CORP                  COM              33741H10     3      159 SH      SHARED            159
D FIRST W VA BANCORP INC          COM              33749310     0       34 SH      SHARED             34
D FIRSTBANK CORP MICH             COM              33761G10    12      896 SH      SHARED            896
D FIRSTSERVICE CORP               SUB VTG SH       33761N10     1       36 SH      SHARED             36
D FIRSTCITY FINL CORP             COM              33761X10     2      253 SH      SHARED            253
D FISERV INC                      COM              33773810 18250   328896 SH      SHARED         328896
D FISERV INC                      COM              33773810  1231    22195 SH      SHARED       01  22195
D FISERV INC                      COM              33773810   244     4398 SH      SHARED       02   4398
D FISERV INC                      COM              33773810     7      130 SH      SHARED       05    130
D FISERV INC                      COM              33773810   102     1850 SH      SHARED       06                1850
D FISERV INC                      COM              33773810 54840   988292 SH      SHARED       10  957692        30600
D FISERV INC                      COM              33773810    11      200 SH      SHARED       20    200
D FISERV INC                      COM              33773810    11      200 SH      SHR/OTHR     23              200
D FISERV INC                      COM              33773810    55     1000 SH      SHARED       24   1000
D FISHER COMMUNICATIONS INC       COM              33775620     0        2 SH      SHARED              2
D FISHER COMMUNICATIONS INC       COM              33775620    15      400 SH      SHARED       02    400
D FISHER COMMUNICATIONS INC       COM              33775620   151     4000 SH      SHARED       10   4000
D FIRSTFED FINL CORP              COM              33790710   625    17452 SH      SHARED          17452
D FIRSTFED FINL CORP              COM              33790710   230     6445 SH      SHARED       01   6445
D FIRSTFED FINL CORP              COM              33790710    95     2675 SH      SHARED       02   2675
D FIRSTFED FINL CORP              COM              33790710   641    17900 SH      SHARED       10  17900
D FIRSTFED FINL CORP              COM              33790710    23      658 SH      SHARED       21    658
D FIRSTMERIT CORP                 COM              33791510  1206    60302 SH      SHARED          60302
D FIRSTMERIT CORP                 COM              33791510   680    34000 SH      SHARED       01   3700         30300
D FIRSTMERIT CORP                 COM              33791510   442    22112 SH      SHARED       02  22112
D FIRSTMERIT CORP                 COM              33791510  3845   192200 SH      SHARED       10 192200
D FLAGSTAR BANCORP INC            COM              33793010     9     1294 SH      SHARED           1294
D FLAGSTAR BANCORP INC            COM              33793010   111    16000 SH      SHARED       01  16000
D FIRSTENERGY CORP                COM              33793210 53101   734061 SH      SHARED         674961        59100
D FIRSTENERGY CORP                COM              33793210  3444    47613 SH      SHARED       01  45413         2200
D FIRSTENERGY CORP                COM              33793210   328     4535 SH      SHARED       02   4535
D FIRSTENERGY CORP                COM              33793210    10      140 SH      SHARED       05    140
D FIRSTENERGY CORP                COM              33793210 36574   505589 SH      SHARED       06               505589
D FIRSTENERGY CORP                COM              33793210 67721   936150 SH      SHARED       10  847950        88200
D FIRSTENERGY CORP                COM              33793210   485     6718 SH      SHARED       14   6718
D FIRSTENERGY CORP                COM              33793210    28      400 SH      SHR/OTHR     20              400
D FIRSTENERGY CORP                COM              33793210    15      213 SH      SHR/OTHR     23              213
D FISHER SCIENTIFIC INTL INC      NOTE  2.500%10/0 338032AW 78731 31914000 PRN     SHARED        1914000
D FIVE STAR QUALITY CARE INC      COM              33832D10     6      842 SH      SHARED            842
D FIVE STAR QUALITY CARE INC      COM              33832D10    34     4200 SH      SHARED       02   4200
D FIVE STAR QUALITY CARE INC      COM              33832D10 11529  1389100 SH      SHARED       10 1389100
D FIVE STAR QUALITY CARE INC      COM              33832D10     0        1 SH      SHARED       23      1
D FLAHERTY & CRMN/CLYMR PFD SE    COM SHS          33847810  7882   487800 SH      SHARED         487800
D FLAHERTY & CRMN/CLYMR PFD SE    COM SHS          33847810   533    33000 SH      SHARED       21  33000
D FLAHERTY & CRMNR CLYMRE T R     COM              33847910  3372   199821 SH      SHARED         199821
D FLAMEL TECHNOLOGIES SA          SPONSORED ADR    33848810  2556   256202 SH      SHARED         256202
D FLAMEL TECHNOLOGIES SA          SPONSORED ADR    33848810  7406   742100 SH      SHARED       10  742100
D FLANDERS CORP                   COM              33849410     8     1491 SH      SHARED           1491
D FLANIGANS ENTERPRISES INC       COM              33851710     0       33 SH      SHARED             33
D FLEETWOOD ENTERPRISES INC       COM              33909910    50     8444 SH      SHARED           8444
D FLEETWOOD ENTERPRISES INC       COM              33909910   149    25050 SH      SHARED       02  25050
D FLEETWOOD ENTERPRISES INC       COM              33909910    14     2500 SH      SHARED                        2500
D FLEXTRONICS INTL LTD            NOTE  1.000% 8/0 33938AAL  1473  1433000 PRN     SHARED        1433000
D FLEXSTEEL INDS INC              COM              33938210     1      161 SH      SHARED            161
D FLIGHT SAFETY TECH INC NEV      COM NEW          33942T20     0      192 SH      SHARED            192
D FLORIDA PUB UTILS CO            COM              34113510     1      148 SH      SHARED            148
D FLOTEK INDS INC DEL             COM              34338910   120     3350 SH      SHARED           3350
D FLOTEK INDS INC DEL             COM              34338910    52     1450 SH      SHARED       01   1450
D FLUOR CORP NEW                  NOTE  1.500% 2/1 34341AAA  2251   867000 PRN     SHARED         867000
D FLUOR CORP NEW                  COM              34341210 35931   246578 SH      SHARED         246578
D FLUOR CORP NEW                  COM              34341210  2443    16769 SH      SHARED       01  16769
D FLUOR CORP NEW                  COM              34341210   217     1490 SH      SHARED       02   1490
D FLUOR CORP NEW                  COM              34341210     8       60 SH      SHARED       05     60
D FLUOR CORP NEW                  COM              34341210   110      760 SH      SHARED       06                760
D FLUOR CORP NEW                  COM              34341210 59559   408729 SH      SHARED       10  408729
D FLUOR CORP NEW                  COM              34341210   702     4824 SH      SHARED       14   4824          4824
D FLOW INTL CORP                  COM              34346810   613    65773 SH      SHARED          65773
D FLOWERS FOODS INC               COM              34349810  1944    83070 SH      SHARED          83070
D FLOWERS FOODS INC               COM              34349810    30     1300 SH      SHARED       01   1300
D FLOWERS FOODS INC               COM              34349810  2564   109559 SH      SHARED       10 109559
D FLOWERS FOODS INC               COM              34349810    15      664 SH      SHARED       21                664
D FLOWERS FOODS INC               COM              34349810    70     3000 SH      SHARED       23               3000
D FLOWSERVE CORP                  COM              34354P10    15      165 SH      SHARED            165
D FLOWSERVE CORP                  COM              34354P10  1011    10511 SH      SHARED          10511
D FLOWSERVE CORP                  COM              34354P10  1885    19600 SH      SHARED       01   1700         17900
D FLOWSERVE CORP                  COM              34354P10   491     5106 SH      SHARED       02   5106
D FLOWSERVE CORP                  COM              34354P10  6474    67300 SH      SHARED       04  67300
D FLOWSERVE CORP                  COM              34354P10  6734    70000 SH      SHARED       05  70000
D FLOWSERVE CORP                  COM              34354P10   389     4045 SH      SHARED       06               4045
D FLOWSERVE CORP                  COM              34354P10  2858    29710 SH      SHARED       10  29710
```

| | Name | Type | CUSIP | Value | Shares | Unit | Discretion | Code | Auth1 | Auth2 |
|---|---|---|---|---|---|---|---|---|---|---|
| D | FLOWSERVE CORP | COM | 34354P10 | 192 | 2000 | SH | SHARED | 23 | | 2000 |
| D | FLUSHING FINL CORP | COM | 34387310 | 748 | 46613 | SH | SHARED | | 46613 | |
| D | FOCUS MEDIA HLDG LTD | SPONSORED ADR | 34415V10 | 1588 | 27954 | SH | SHARED | | 27954 | |
| D | FOCUS MEDIA HLDG LTD | SPONSORED ADR | 34415V10 | 3118 | 54900 | SH | SHARED | 01 | 54900 | |
| D | FOCUS MEDIA HLDG LTD | SPONSORED ADR | 34415V10 | 11475 | 202000 | SH | SHARED | 02 | 202000 | |
| D | FOCUS MEDIA HLDG LTD | SPONSORED ADR | 34415V10 | 3976 | 70000 | SH | SHARED | 04 | 70000 | |
| D | FOCUS MEDIA HLDG LTD | SPONSORED ADR | 34415V10 | 10964 | 193000 | SH | SHARED | 10 | 193000 | |
| D | FOCUS MEDIA HLDG LTD | SPONSORED ADR | 34415V10 | 1590 | 28000 | SH | SHARED | 24 | 28000 | |
| D | FOCUS ENHANCEMENTS INC | COM | 34415910 | 1 | 2065 | SH | SHARED | | 2065 | |
| D | FOMENTO ECONOMICO MEXICANO S | SPON ADR UNITS | 34441910 | 41 | 1100 | SH | SHARED | | | 1100 |
| D | FOMENTO ECONOMICO MEXICANO S | SPON ADR UNITS | 34441910 | 3526 | 92381 | SH | SHARED | | 92381 | |
| D | FOMENTO ECONOMICO MEXICANO S | SPON ADR UNITS | 34441910 | 1958 | 51300 | SH | SHARED | 02 | 51300 | |
| D | FOMENTO ECONOMICO MEXICANO S | SPON ADR UNITS | 34441910 | 5439 | 142500 | SH | SHARED | 10 | 142500 | |
| D | FOMENTO ECONOMICO MEXICANO S | SPON ADR UNITS | 34441910 | 40 | 1050 | SH | SHARED | 20 | 1050 | |
| D | FONAR CORP | COM NEW | 34443740 | 0 | 126 | SH | SHARED | | 126 | |
| D | FOOD TECHNOLOGY SERVICE INC | COM NEW | 34479820 | 0 | 48 | SH | SHARED | | 48 | |
| D | FOOT LOCKER INC | COM | 34484910 | 12625 | 924273 | SH | SHARED | | 924273 | |
| D | FOOT LOCKER INC | COM | 34484910 | 330 | 24175 | SH | SHARED | 01 | 975 | 23200 |
| D | FOOT LOCKER INC | COM | 34484910 | 245 | 17970 | SH | SHARED | 02 | 17970 | |
| D | FOOT LOCKER INC | COM | 34484910 | 135 | 9900 | SH | SHARED | 10 | 9900 | |
| D | FOOT LOCKER INC | COM | 34484910 | 40 | 3000 | SH | SHR/OTHR | 23 | | 3000 |
| D | FORBES MEDI-TECH INC | COM NEW | 34490710 | 2 | 8816 | SH | SHARED | 01 | | 8816 |
| D | FORCE PROTECTION INC | COM | 34520320 | 77 | 16545 | SH | SHARED | | 16545 | |
| D | FORD MTR CO DEL | NOTE 4.250%12/1 | 345370CF | 963414 | 70206208 | PRN | SHARED | | 0206208 | |
| D | FORD MTR CO DEL | NOTE 4.250%12/1 | 345370CF | 79 | 80000 | PRN | SHARED | 02 | 80000 | |
| D | FORD MTR CO DEL | NOTE 4.250%12/1 | 345370CF | 19 | 20000 | PRN | SHARED | 10 | 20000 | |
| D | FORD MTR CO DEL | COM PAR $0.01 | 34537086 | 21 | 3146 | SH | SHARED | | 3146 | |
| D | FORD MTR CO DEL | COM PAR $0.01 | 34537086 | 95457 | 14183830 | SH | SHARED | | 4183330 | 500 |
| D | FORD MTR CO DEL | COM PAR $0.01 | 34537086 | 1820 | 270502 | SH | SHARED | 01 | 220946 | 49556 |
| D | FORD MTR CO DEL | COM PAR $0.01 | 34537086 | 855 | 127069 | SH | SHARED | 02 | 127069 | |
| D | FORD MTR CO DEL | COM PAR $0.01 | 34537086 | 5 | 850 | SH | SHARED | 05 | 850 | |
| D | FORD MTR CO DEL | COM PAR $0.01 | 34537086 | 107 | 15910 | SH | SHARED | 06 | | 15910 |
| D | FORD MTR CO DEL | COM PAR $0.01 | 34537086 | 10710 | 1591460 | SH | SHARED | 10 | 1591460 | |
| D | FORD MTR CO DEL | COM PAR $0.01 | 34537086 | 1598 | 237500 | SH | SHARED | 14 | 237500 | |
| D | FORD MTR CO DEL | COM PAR $0.01 | 34537086 | 47 | 7130 | SH | SHARED | 20 | 3530 | 3600 |
| D | FORD MTR CO DEL | COM PAR $0.01 | 34537086 | 64 | 9614 | SH | SHR/OTHR | 23 | | 9614 |
| D | FORD MTR CO CAP TR II | PFD CV6.5% | 34539520 | 12168 | 375000 | SH | SHARED | | 375000 | |
| D | FORD MTR CO CAP TR II | PFD TR CV6.5% | 34539520 | 10546 | 325000 | SH | SHARED | 10 | 325000 | |
| D | FORDING CDN COAL TR | TR UNIT | 34542510 | 4 | 126 | SH | SHARED | | 126 | |
| D | FORDING CDN COAL TR | TR UNIT | 34542510 | 11085 | 287198 | SH | SHARED | | 287198 | |
| D | FORDING CDN COAL TR | TR UNIT | 34542510 | 43 | 1119 | SH | SHARED | 01 | | 1119 |
| D | FORDING CDN COAL TR | TR UNIT | 34542510 | 27 | 700 | SH | SHR/OTHR | 01 | | 700 |
| D | FORDING CDN COAL TR | TR UNIT | 34542510 | 34 | 900 | SH | SHARED | 06 | | 900 |
| D | FORDING CDN COAL TR | TR UNIT | 34542510 | 46 | 1200 | SH | SHARED | 10 | 1200 | |
| D | FORDING CDN COAL TR | TR UNIT | 34542510 | 128 | 3336 | SH | SHARED | 20 | | 3336 |
| D | FORDING CDN COAL TR | TR UNIT | 34542510 | 100 | 2600 | SH | SHR/OTHR | 23 | | 2600 |
| D | FOREST CITY ENTERPRISES INC | CL A | 34555010 | 483 | 10886 | SH | SHARED | | 10886 | |
| D | FOREST CITY ENTERPRISES INC | CL A | 34555010 | 71 | 1600 | SH | SHARED | 02 | 1600 | |
| D | FOREST CITY ENTERPRISES INC | CL A | 34555010 | 22 | 500 | SH | SHARED | 06 | | 500 |
| D | FOREST CITY ENTERPRISES INC | CL A | 34555010 | 167 | 3760 | SH | SHARED | 10 | 3760 | |
| D | FOREST LABS INC | COM | 34583810 | 30 | 850 | SH | SHARED | | | 850 |
| D | FOREST LABS INC | COM | 34583810 | 23302 | 639293 | SH | SHARED | | 639293 | |
| D | FOREST LABS INC | COM | 34583810 | 1034 | 28370 | SH | SHARED | 01 | 28170 | 200 |
| D | FOREST LABS INC | COM | 34583810 | 30 | 850 | SH | SHR/OTHR | 01 | | 850 |
| D | FOREST LABS INC | COM | 34583810 | 8565 | 234997 | SH | SHARED | | 234997 | |
| D | FOREST LABS INC | COM | 34583810 | 1530 | 42000 | SH | SHARED | 04 | 42000 | |
| D | FOREST LABS INC | COM | 34583810 | 4920 | 135000 | SH | SHARED | 06 | | 135000 |
| D | FOREST LABS INC | COM | 34583810 | 9744 | 267339 | SH | SHARED | 10 | 267339 | |
| D | FOREST LABS INC | COM | 34583810 | 2285 | 62702 | SH | SHARED | 14 | | 62702 |
| D | FOREST LABS INC | COM | 34583810 | 227 | 6250 | SH | SHARED | 20 | 2850 | 3400 |
| D | FOREST LABS INC | COM | 34583810 | 67 | 1850 | SH | SHR/OTHR | 23 | | 1850 |
| D | FOREST OIL CORP | COM PAR $0.01 | 34609170 | 3867 | 76066 | SH | SHARED | | 76066 | |
| D | FOREST OIL CORP | COM PAR $0.01 | 34609170 | 1438 | 28295 | SH | SHARED | 01 | 2395 | 25900 |
| D | FOREST OIL CORP | COM PAR $0.01 | 34609170 | 235 | 4623 | SH | SHARED | 02 | 4623 | |
| D | FOREST OIL CORP | COM PAR $0.01 | 34609170 | 703 | 13846 | SH | SHARED | 10 | 13846 | |
| D | FORESTAR REAL ESTATE GROUP I | COM | 34623310 | 552 | 23434 | SH | SHARED | | 23434 | |
| D | FORESTAR REAL ESTATE GROUP I | COM | 34623310 | 31 | 1320 | SH | SHARED | 01 | | 1320 |
| D | FORESTAR REAL ESTATE GROUP I | COM | 34623310 | 566 | 24000 | SH | SHARED | 02 | 24000 | |
| D | FORESTAR REAL ESTATE GROUP I | COM | 34623310 | 126 | 5366 | SH | SHARED | 10 | 5366 | |
| D | FORESTAR REAL ESTATE GROUP I | COM | 34623310 | 556 | 23600 | SH | SHARED | 14 | | 23600 |
| D | FORESTAR REAL ESTATE GROUP I | COM | 34623310 | 35 | 1500 | SH | SHARED | 20 | | 1500 |
| D | FORESTAR REAL ESTATE GROUP I | COM | 34623310 | 408 | 17320 | SH | SHR/OTHR | 20 | | 17320 |
| D | FORGENT NETWORKS INC | COM | 34629U10 | 0 | 700 | SH | SHARED | | 700 | |
| D | FORMFACTOR INC | COM | 34637510 | 8103 | 244817 | SH | SHARED | | 244817 | |
| D | FORMFACTOR INC | COM | 34637510 | 486 | 14700 | SH | SHARED | 01 | 14700 | |
| D | FORMFACTOR INC | COM | 34637510 | 10 | 325 | SH | SHARED | 02 | 325 | |
| D | FORMFACTOR INC | COM | 34637510 | 29406 | 888410 | SH | SHARED | 10 | 888410 | |
| D | FORRESTER RESH INC | COM | 34656310 | 155 | 5542 | SH | SHARED | | 5542 | |
| D | FORRESTER RESH INC | COM | 34656310 | 68 | 2450 | SH | SHARED | 02 | 2450 | |
| D | FORRESTER RESH INC | COM | 34656310 | 10723 | 382700 | SH | SHARED | 10 | 382700 | |
| D | FORTRESS INVESTMENT GROUP LL | CL A | 34958B10 | 3911 | 251029 | SH | SHARED | | 251029 | |
| D | FORTRESS INTL GROUP INC | COM | 34958D10 | 0 | 189 | SH | SHARED | | 189 | |
| D | FORTUNE INDUSTRIES INC | COM NEW | 34963X20 | 0 | 54 | SH | SHARED | | 54 | |
| D | FORTUNE BRANDS INC | COM | 34963110 | 20762 | 286927 | SH | SHARED | | 286927 | |
| D | FORTUNE BRANDS INC | COM | 34963110 | 6268 | 86624 | SH | SHARED | 01 | 61719 | 24905 |
| D | FORTUNE BRANDS INC | COM | 34963110 | 1849 | 25565 | SH | SHR/OTHR | 01 | | 25565 |
| D | FORTUNE BRANDS INC | COM | 34963110 | 283 | 3922 | SH | SHARED | 02 | 3922 | |
| D | FORTUNE BRANDS INC | COM | 34963110 | 2286 | 31600 | SH | SHARED | 04 | 31600 | |
| D | FORTUNE BRANDS INC | COM | 34963110 | 4 | 60 | SH | SHARED | 05 | 60 | |
| D | FORTUNE BRANDS INC | COM | 34963110 | 95 | 1320 | SH | SHARED | 06 | | 1320 |
| D | FORTUNE BRANDS INC | COM | 34963110 | 21627 | 298887 | SH | SHARED | 10 | 288987 | 9900 |
| D | FORTUNE BRANDS INC | COM | 34963110 | 2777 | 38385 | SH | SHARED | 20 | 18075 | 20310 |
| D | FORTUNE BRANDS INC | COM | 34963110 | 1340 | 18530 | SH | SHR/OTHR | 20 | | 18530 |
| D | FORTUNE BRANDS INC | COM | 34963110 | 220 | 3054 | SH | SHARED | 21 | 2879 | 175 |
| D | FORTUNE BRANDS INC | COM | 34963110 | 28 | 400 | SH | SHR/OTHR | 21 | | 400 |
| D | FORTUNE BRANDS INC | COM | 34963110 | 546 | 7551 | SH | SHARED | 22 | 5361 | 2190 |
| D | FORTUNE BRANDS INC | COM | 34963110 | 291 | 4024 | SH | SHR/OTHR | 22 | | 4024 |
| D | FORTUNE BRANDS INC | COM | 34963110 | 4362 | 60282 | SH | SHARED | 23 | 49307 | 10975 |
| D | FORTUNE BRANDS INC | COM | 34963110 | 2899 | 40075 | SH | SHR/OTHR | 23 | | 40075 |
| D | FORTUNE BRANDS INC | COM | 34963110 | 24 | 345 | SH | SHARED | 24 | 345 | |
| D | FORTUNET INC | COM | 34969Q10 | 1 | 154 | SH | SHARED | | 154 | |
| D | FORWARD AIR CORP | COM | 34985310 | 68 | 2200 | SH | SHARED | | 2200 | |
| D | FORWARD AIR CORP | COM | 34985310 | 105 | 3400 | SH | SHARED | 01 | 3400 | |
| D | FORWARD AIR CORP | COM | 34985310 | 155 | 4975 | SH | SHARED | 10 | 4975 | |
| D | FORWARD AIR CORP | COM | 34985310 | 48 | 1555 | SH | SHARED | 21 | | 1555 |
| D | FORWARD INDS INC N Y | COM NEW | 34986210 | 0 | 205 | SH | SHARED | | 205 | |
| D | FOSSIL INC | COM | 34988210 | 350 | 8345 | SH | SHARED | | 8345 | |
| D | FOSSIL INC | COM | 34988210 | 192 | 4595 | SH | SHARED | 01 | 4595 | |
| D | FOSSIL INC | COM | 34988210 | 50 | 1200 | SH | SHARED | 02 | 1200 | |
| D | FOSSIL INC | COM | 34988210 | 885 | 21100 | SH | SHARED | 10 | 21100 | |
| D | FOSSIL INC | COM | 34988210 | 9 | 235 | SH | SHARED | 21 | | 235 |
| D | FOSTER L B CO | COM | 35006010 | 74 | 1435 | SH | SHARED | | 1435 | |
| D | FOSTER L B CO | COM | 35006010 | 25 | 500 | SH | SHARED | 01 | | 500 |
| D | FOUNDATION COAL HLDGS INC | COM | 35039W10 | 42376 | 807173 | SH | SHARED | | 807173 | |

```
D FOUNDATION COAL HLDGS INC      COM            35039W10   1323    25200 SH    SHARED   01          25000          200
D FOUNDATION COAL HLDGS INC      COM            35039W10   1627    31000 SH    SHR/OTHR 01                       31000
D FOUNDATION COAL HLDGS INC      COM            35039W10   1724    32856 SH    SHARED   02          32856
D FOUNDATION COAL HLDGS INC      COM            35039W10   9912   188800 SH    SHARED   10         188800
D FOUNDRY NETWORKS INC           COM            35063810  147774   843289 SH   SHARED              843289
D FOUNDRY NETWORKS INC           COM            35063810    822    46925 SH    SHARED   01           2050         44875
D FOUNDRY NETWORKS INC           COM            35063810  49446  2822300 SH    SHARED   10        2822300
D FOUNTAIN POWERBOAT IND         COM NEW        35075530      0       66 SH    SHARED                  66
D 4 KIDS ENTMT INC               COM            35086510      6      509 SH    SHARED                 509
D 4 KIDS ENTMT INC               COM            35086510     36     2750 SH    SHARED   02           2750
D FOX CHASE BANCORP              COM            35137P10      7      616 SH    SHARED                 616
D FRANCE TELECOM                 SPONSORED ADR  35177Q10    841    23615 SH    SHARED              23615
D FRANCE TELECOM                 SPONSORED ADR  35177Q10    356    10000 SH    SHARED   02          10000
D FRANCE TELECOM                 SPONSORED ADR  35177Q10     67     1881 SH    SHARED   21           1881
D FRANKLIN BK CORP DEL           COM            35245110      0        1 SH    SHARED                   1
D FRANKLIN BK CORP DEL           COM            35245110     15     3500 SH    SHARED   10           3500
D FRANKLIN COVEY CO              COM            35346910      5      636 SH    SHARED                 636
D FRANKLIN CR MGMT CORP          COM NEW        35348720      0       96 SH    SHARED                  96
D FRANKLIN ELEC INC              COM            35351410    286     7489 SH    SHARED              7489
D FRANKLIN ELEC INC              COM            35351410     26      700 SH    SHARED   01            700
D FRANKLIN ELEC INC              COM            35351410    126     3300 SH    SHARED   10           3300
D FRANKLIN ELECTR PUBLISHERS I   COM            35351510      0      123 SH    SHARED                 123
D FRANKLIN RES INC               COM            35461310    237     2072 SH    SHARED              1672          400
D FRANKLIN RES INC               COM            35461310  33576   293426 SH   SHARED              293426
D FRANKLIN RES INC               COM            35461310   8300    72539 SH    SHARED              52284        20255
D FRANKLIN RES INC               COM            35461310   3502    30611 SH    SHR/OTHR 01                       30611
D FRANKLIN RES INC               COM            35461310   3935    34391 SH    SHARED   02          34391
D FRANKLIN RES INC               COM            35461310      8       70 SH    SHARED   05             70
D FRANKLIN RES INC               COM            35461310    194     1700 SH    SHARED   06           1700
D FRANKLIN RES INC               COM            35461310  11301    98763 SH    SHARED   10          97923          840
D FRANKLIN RES INC               COM            35461310     58      512 SH    SHARED   19            512
D FRANKLIN RES INC               COM            35461310   2199    19223 SH    SHARED   20          11125         8098
D FRANKLIN RES INC               COM            35461310    806     7050 SH    SHR/OTHR 20                        7050
D FRANKLIN RES INC               COM            35461310    144     1263 SH    SHARED   21           1263
D FRANKLIN RES INC               COM            35461310     82      725 SH    SHR/OTHR 21                         725
D FRANKLIN RES INC               COM            35461310    552     4825 SH    SHARED   22           4580          245
D FRANKLIN RES INC               COM            35461310    123     1075 SH    SHARED   22           1075
D FRANKLIN RES INC               COM            35461310   3130    27361 SH    SHARED   23          26451          910
D FRANKLIN RES INC               COM            35461310   2377    20779 SH    SHR/OTHR 23                       20779
D FRANKLIN STREET PPTYS CORP     COM            35471R10      1      114 SH    SHARED                 114
D FRANKLIN STREET PPTYS CORP     COM            35471R10    165    11200 SH    SHARED   01          11200
D FRANKLIN STREET PPTYS CORP     COM            35471R10     75     5096 SH    SHARED   02           5096
D FRANKLIN STREET PPTYS CORP     COM            35471R10    152    10300 SH    SHARED   10          10300
D FRANKLIN TEMPLETON LTD DUR I   COM            35472710   1925   166400 SH    SHARED             166400
D FRANKLIN UNVL TR               SH BEN INT     35514510     55     7966 SH    SHARED               7966
D FREDS INC                      CL A           35610810  21451  2227570 SH    SHARED            2227570
D FREDS INC                      CL A           35610810     87     9100 SH    SHARED   10           9100
D FREEPORT-MCMORAN COPPER & GO   PFD CONV       35671D78  463859  3076600 SH   SHARED            3076600
D FREEPORT-MCMORAN COPPER & GO   PFD CONV       35671D78  17119   113544 SH    SHARED   02         113544
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85   1987    19401 SH    SHARED              13353         6048
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85  556150  5429036 SH   SHARED            5388836        40200
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85  19968   194931 SH    SHARED   01         145633        49298
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85   3453    33711 SH    SHR/OTHR 01                       33711
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85  92673   904657 SH    SHARED   02         904657
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85    446     4356 SH    SHARED   04           4356
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85   2906    28375 SH    SHARED   04          28375
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85     17      170 SH    SHARED   05            170
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85    405     3958 SH    SHARED   06                        3958
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85  72899   711635 SH    SHARED   10         676840        34795
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85    624     6097 SH    SHARED   14           6097
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85   3814    37237 SH    SHARED   19          37237
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85   1845    18019 SH    SHARED   20           9910         8109
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85    681     6650 SH    SHR/OTHR 20           6650
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85    505     4931 SH    SHARED   21           3757         1174
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85    519     5072 SH    SHARED   22           4892          180
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85    113     1106 SH    SHR/OTHR 22           1106
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85   3547    34632 SH    SHARED   23          26834         7798
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85   1698    16583 SH    SHR/OTHR 23                       16583
D FREEPORT-MCMORAN COPPER & GO   COM            35671D85   2663    26000 SH    SHARED   24          26000
D FREIGHTCAR AMER INC            COM            35702310    869    24856 SH    SHARED              24856
D FREIGHTCAR AMER INC            COM            35702310    778    22250 SH    SHARED   01          22000          250
D FREIGHTCAR AMER INC            COM            35702310    763    21800 SH    SHR/OTHR 01                       21800
D FREMONT GEN CORP               COM            35728810      5     1644 SH    SHARED               1644
D FREMONT GEN CORP               COM            35728810     54    15500 SH    SHARED   10          15500
D FREMONT GEN CORP               COM            35728810     10     2991 SH    SHARED   21           2991
D FREQUENCY ELECTRS INC          COM            35801010      2      212 SH    SHARED                 212
D FRESENIUS MED CARE AG&CO KGA   SPONSORED ADR  35802910     24      460 SH    SHARED                 460
D FRESENIUS MED CARE AG&CO KGA   SPONSORED ADR  35802910     62     1184 SH    SHARED   01            712          472
D FRIEDMAN BILLINGS RAMSEY GRO   CL A           35843410     69    22202 SH    SHARED              22202
D FRIEDMAN BILLINGS RAMSEY GRO   CL A           35843410     37    11900 SH    SHARED   01          11900
D FRIEDMAN BILLINGS RAMSEY GRO   CL A           35843410    192    61300 SH    SHARED   10          61300
D FRIEDMAN INDS INC              COM            35843510      2      464 SH    SHARED                 464
D FRISCHS RESTAURANTS INC        COM            35874810      1       84 SH    SHARED                  84
D FRONTIER DEV GROUP INC         COM            35903Q10     95     9630 SH    SHARED               9630
D FRONTIER AIRLINES HOLDINGS I   COM            35905910     43     8218 SH    SHARED               8218
D FRONTIER AIRLINES INC NEW      DBCV 5.000%12/1 359065AA  10575 12500000 PRN  SHARED            2500000
D FRONTIER FINL CORP WASH        COM            35907K10      2      126 SH    SHARED                 126
D FRONTIER FINL CORP WASH        COM            35907K10   1337    72000 SH    SHARED   10          72000
D FRONTIER OIL CORP              COM            35914P10   6379   157217 SH    SHARED              92017        65200
D FRONTIER OIL CORP              COM            35914P10   2609    64300 SH    SHARED   01          30000        34300
D FRONTIER OIL CORP              COM            35914P10    376     9283 SH    SHARED   02           9283
D FRONTIER OIL CORP              COM            35914P10  61636  1518900 SH    SHARED   10        1417600       101300
D FRONTIER OIL CORP              COM            35914P10    450    11100 SH    SHARED   24          11100
D FROZEN FOOD EXPRESS INDS INC   COM            35936010      2      344 SH    SHARED                 344
D FUELCELL ENERGY INC            COM            35952810     18     1886 SH    SHARED                            1886
D FUELCELL ENERGY INC            COM            35952810   4060   409305 SH    SHARED             409305
D FUELCELL ENERGY INC            COM            35952810   6280   633069 SH    SHARED   04         633069
D FUELCELL ENERGY INC            COM            35952810   4705   474381 SH    SHARED   05         474381
D FUELCELL ENERGY INC            COM            35952810    253    25525 SH    SHARED   06                       25525
D FUEL SYS SOLUTIONS INC         COM            35952810    217    21924 SH    SHARED   10          21924
D FUEL SYS SOLUTIONS INC         COM            35952810   1267    88713 SH    SHARED              88713
D FUEL SYS SOLUTIONS INC         COM            35952810     22     1600 SH    SHARED   02           1600
D FUEL TECH INC                  COM            35952310     23     1028 SH    SHARED               1028
D FUEL TECH INC                  COM            35952310   2767   122177 SH    SHARED             122177                1028
D FUEL TECH INC                  COM            35952310   8364   369290 SH    SHARED   04         369290
D FUEL TECH INC                  COM            35952310   8313   367047 SH    SHARED   05         367047
D FUEL TECH INC                  COM            35952310    339    14970 SH    SHARED   06                       14970
D FUEL TECH INC                  COM            35952310  11712   517090 SH    SHARED   10         517090
D FUJIFILM HLDGS CORP            ADR 2 ORD      35958N10     15      365 SH    SHARED                 365
D FUJIFILM HLDGS CORP            ADR 2 ORD      35958N10      8      206 SH    SHARED   21                         206
D FULL HOUSE RESORTS INC         COM            35967810      0      341 SH    SHARED                 341
D FULLER H B CO                  COM            35969410    481    21462 SH    SHARED              21462
D FULLER H B CO                  COM            35969410    453    20200 SH    SHARED   01          20200
D FULLER H B CO                  COM            35969410    947    42189 SH    SHARED   10          42189
```

| | Name | Class | CUSIP | Value | Shares | Type | Auth | Code | Voting1 | Voting2 |
|---|---|---|---|---|---|---|---|---|---|---|
| D | FULTON FINL CORP PA | COM | 36027110 | 433 | 38644 | SH | SHARED | | 38644 | |
| D | FULTON FINL CORP PA | COM | 36027110 | 20 | 1800 | SH | SHARED | 02 | 1800 | |
| D | FULTON FINL CORP PA | COM | 36027110 | 125 | 11200 | SH | SHARED | 10 | 11200 | |
| D | FURNITURE BRANDS INTL INC | COM | 36092110 | 1310 | 130276 | SH | SHARED | | 130276 | |
| D | FURNITURE BRANDS INTL INC | COM | 36092110 | 239 | 23800 | SH | SHARED | 01 | | 23800 |
| D | FURNITURE BRANDS INTL INC | COM | 36092110 | 199 | 19797 | SH | SHARED | 02 | 19797 | |
| D | FURNITURE BRANDS INTL INC | COM | 36092110 | 120 | 12000 | SH | SHARED | 10 | 12000 | |
| D | FUQI INTERNATIONAL INC | COM NEW | 36102A20 | 4 | 513 | SH | SHARED | | 513 | |
| D | FURMANITE CORPORATION | COM | 36108610 | 13 | 1157 | SH | SHARED | | 1157 | |
| D | FURMANITE CORPORATION | COM | 36108610 | 54 | 4600 | SH | SHARED | 02 | 4600 | |
| D | FUSION TELECOMM INTL INC | COM | 36113B30 | 0 | 560 | SH | SHARED | | 560 | |
| D | G & K SVCS INC | CL A | 36126810 | 120 | 3204 | SH | SHARED | | 3204 | |
| D | G & K SVCS INC | CL A | 36126810 | 325 | 8675 | SH | SHARED | 01 | 8675 | |
| D | G & K SVCS INC | CL A | 36126810 | 668 | 17829 | SH | SHARED | 10 | 17829 | |
| D | GAMCO INVESTORS INC | COM | 36143810 | 301 | 4360 | SH | SHARED | 10 | 4360 | |
| D | GAMCO INVESTORS INC | COM | 36143810 | 207 | 3000 | SH | SHARED | 10 | 3000 | |
| D | GATX CORP | NOTE 5.000% 8/1 | 36144BAE | 3370 | 2250000 | PRN | SHARED | | 2250000 | |
| D | GATX CORP | COM | 36144810 | 13616 | 371225 | SH | SHARED | | 371225 | |
| D | GATX CORP | COM | 36144810 | 550 | 15000 | SH | SHARED | 01 | | 15000 |
| D | GATX CORP | COM | 36144810 | 851 | 23219 | SH | SHARED | 02 | 23219 | |
| D | GATX CORP | COM | 36144810 | 416 | 11359 | SH | SHARED | 10 | 11359 | |
| D | GATX CORP | COM | 36144810 | 55 | 1500 | SH | SHARED | 23 | | 1500 |
| D | G B & T BANCSHARES INC | COM | 36146210 | 3 | 370 | SH | SHARED | | 370 | |
| D | GEO GROUP INC | COM | 36159810 | 134 | 4800 | SH | SHARED | 01 | 4800 | |
| D | GEO GROUP INC | COM | 36159810 | 109 | 3900 | SH | SHARED | 10 | 3900 | |
| D | GEO GROUP INC | COM | 36159810 | 3 | 130 | SH | SHARED | 21 | | 130 |
| D | GFI GROUP INC | COM | 36165220 | 38 | 404 | SH | SHARED | | 404 | |
| D | GFI GROUP INC | COM | 36165220 | 301 | 3145 | SH | SHARED | 01 | 3045 | 100 |
| D | GFI GROUP INC | COM | 36165220 | 542 | 5665 | SH | SHARED | 02 | 5665 | |
| D | GFI GROUP INC | COM | 36165220 | 52 | 552 | SH | SHARED | 10 | 552 | |
| D | GFI GROUP INC | COM | 36165220 | 2 | 25 | SH | SHARED | 21 | | 25 |
| D | GMH CMNTYS TR | COM | 36188G10 | 1 | 198 | SH | SHARED | | 198 | |
| D | GMH CMNTYS TR | COM | 36188G10 | 1 | 300 | SH | SHARED | 10 | 300 | |
| D | GMH CMNTYS TR | COM | 36188G10 | 770 | 139500 | SH | SHARED | 11 | | 139500 |
| D | GP STRATEGIES CORP | COM | 36225V10 | 1586 | 148936 | SH | SHARED | | 148936 | |
| D | GSE SYS INC | COM | 36227X10 | 3 | 387 | SH | SHARED | | 387 | |
| D | GSI GROUP INC CDA | COM | 36229U10 | 1077 | 116610 | SH | SHARED | | 116610 | |
| D | G-III APPAREL GROUP LTD | COM | 36237H10 | 456 | 30902 | SH | SHARED | | 30902 | |
| D | G-III APPAREL GROUP LTD | COM | 36237H10 | 19 | 1300 | SH | SHARED | 01 | 1300 | |
| D | G-III APPAREL GROUP LTD | COM | 36237H10 | 159 | 10800 | SH | SHARED | 10 | 10800 | |
| D | GSI COMMERCE INC | COM | 36238G10 | 510 | 26181 | SH | SHARED | | 26181 | |
| D | GSI COMMERCE INC | COM | 36238G10 | 23 | 1200 | SH | SHARED | 01 | 1200 | |
| D | GSI COMMERCE INC | COM | 36238G10 | 975 | 50000 | SH | SHARED | 02 | 50000 | |
| D | GSI COMMERCE INC | COM | 36238G10 | 390 | 20000 | SH | SHARED | 04 | 20000 | |
| D | GSI COMMERCE INC | COM | 36238G10 | 443 | 22757 | SH | SHARED | 10 | 22757 | |
| D | GSI COMMERCE INC | COM | 36238G10 | 25 | 1330 | SH | SHARED | 21 | | 1330 |
| D | GTSI CORP | COM | 36238K10 | 1 | 179 | SH | SHARED | | 179 | |
| D | GTC BIOTHERAPEUTICS INC | COM | 36238T10 | 20 | 24040 | SH | SHARED | | 24040 | |
| D | GABELLI GLOBAL MULTIMEDIA TR | COM | 36239Q10 | 1058 | 82095 | SH | SHARED | | 82095 | |
| D | GABELLI EQUITY TR INC | COM | 36239T10 | 145 | 15726 | SH | SHARED | 01 | | 15726 |
| D | GABELLI UTIL TR | COM | 36240A10 | 1 | 166 | SH | SHARED | | 166 | |
| D | GSI TECHNOLOGY | COM | 36241U10 | 1 | 519 | SH | SHARED | | 519 | |
| D | GABELLI DIVD & INCOME TR | COM | 36242H10 | 3578 | 173026 | SH | SHARED | | 173026 | |
| D | GABELLI GLOBL UTIL & INCOME | COM SH BEN INT | 36242L10 | 0 | 38 | SH | SHARED | | 38 | |
| D | GSC INVESTMENT CORP | COM | 36249310 | 872 | 86000 | SH | SHARED | | 86000 | |
| D | GAINSCO INC | COM | 36312720 | 5 | 1393 | SH | SHARED | | 1393 | |
| D | GAINSCO INC | COM | 36312720 | 2 | 625 | SH | SHARED | 02 | 625 | |
| D | GALAXY ENERGY CORP | COM | 36318B10 | 0 | 1881 | SH | SHARED | | 1881 | |
| D | GALLAGHER ARTHUR J & CO | COM | 36357610 | 2120 | 87645 | SH | SHARED | | 87645 | |
| D | GALLAGHER ARTHUR J & CO | COM | 36357610 | 655 | 27100 | SH | SHARED | 01 | | 27100 |
| D | GALLAGHER ARTHUR J & CO | COM | 36357610 | 302 | 12523 | SH | SHARED | 02 | 12523 | |
| D | GALLAGHER ARTHUR J & CO | COM | 36357610 | 2037 | 84223 | SH | SHARED | 10 | 84223 | |
| D | GALLAGHER ARTHUR J & CO | COM | 36357610 | 43 | 1809 | SH | SHARED | 21 | 1809 | |
| D | GALLERY OF HISTORY INC | COM | 36381210 | 0 | 22 | SH | SHARED | | 22 | |
| D | GAMETECH INTERNATIONAL INC | COM | 36466D10 | 11 | 1569 | SH | SHARED | | 1569 | |
| D | GAMING PARTNERS INTL CORP | COM | 36467A10 | 0 | 99 | SH | SHARED | | 99 | |
| D | GAMMON GOLD INC | COM | 36467T10 | 385 | 48068 | SH | SHARED | | 48068 | |
| D | GAMMON GOLD INC | COM | 36467T10 | 16 | 2000 | SH | SHARED | | 2000 | 2000 |
| D | GAMMON GOLD INC | COM | 36467T10 | 2566 | 320417 | SH | SHARED | 10 | 320417 | |
| D | GAMESTOP CORP NEW | CL A | 36467W10 | 11404 | 183617 | SH | SHARED | | 183617 | |
| D | GAMESTOP CORP NEW | CL A | 36467W10 | 2124 | 34211 | SH | SHARED | 01 | 34211 | |
| D | GAMESTOP CORP NEW | CL A | 36467W10 | 422 | 6804 | SH | SHARED | 02 | 6804 | |
| D | GAMESTOP CORP NEW | CL A | 36467W10 | 93 | 1500 | SH | SHARED | 06 | | 1500 |
| D | GAMESTOP CORP NEW | CL A | 36467W10 | 53297 | 858110 | SH | SHARED | 10 | 824010 | 34100 |
| D | GAMESTOP CORP NEW | CL A | 36467W10 | 74 | 1200 | SH | SHARED | 24 | 1200 | |
| D | GANDER MOUNTAIN CO | COM | 36471210 | 17 | 3476 | SH | SHARED | | 3476 | |
| D | GANNETT CO INC | FRNT 7/1 | 364725AG | 83065 | 83820000 | PRN | SHARED | | 3820000 | |
| D | GANNETT INC | COM | 36473010 | 20333 | 521361 | SH | SHARED | | 521361 | |
| D | GANNETT INC | COM | 36473010 | 1871 | 47991 | SH | SHARED | 01 | 47616 | 375 |
| D | GANNETT INC | COM | 36473010 | 82 | 2124 | SH | SHR/OTHR | 01 | | 2124 |
| D | GANNETT INC | COM | 36473010 | 746 | 19153 | SH | SHARED | 02 | 19153 | |
| D | GANNETT INC | COM | 36473010 | 3 | 100 | SH | SHARED | 05 | 100 | |
| D | GANNETT INC | COM | 36473010 | 27417 | 703003 | SH | SHARED | 06 | | 703003 |
| D | GANNETT INC | COM | 36473010 | 6400 | 164128 | SH | SHARED | 10 | 164128 | |
| D | GANNETT INC | COM | 36473010 | 370 | 9489 | SH | SHARED | 14 | | 9489 |
| D | GANNETT INC | COM | 36473010 | 169 | 4340 | SH | SHARED | 20 | 1915 | 2425 |
| D | GANNETT INC | COM | 36473010 | 66 | 1700 | SH | SHR/OTHR | 20 | | 1700 |
| D | GANNETT INC | COM | 36473010 | 17 | 440 | SH | SHARED | 21 | | 440 |
| D | GANNETT INC | COM | 36473010 | 140 | 3600 | SH | SHARED | 23 | 3100 | 500 |
| D | GANNETT INC | COM | 36473010 | 386 | 9900 | SH | SHR/OTHR | 23 | | 9900 |
| D | GAP INC DEL | COM | 36476010 | 483 | 22740 | SH | SHARED | | | 22740 |
| D | GAP INC DEL | COM | 36476010 | 22053 | 1036366 | SH | SHARED | | 1036366 | |
| D | GAP INC DEL | COM | 36476010 | 1805 | 84840 | SH | SHARED | 01 | 84840 | |
| D | GAP INC DEL | COM | 36476010 | 18256 | 857931 | SH | SHARED | 02 | 857931 | |
| D | GAP INC DEL | COM | 36476010 | 4 | 225 | SH | SHARED | 05 | 225 | |
| D | GAP INC DEL | COM | 36476010 | 116 | 5490 | SH | SHARED | 06 | | 5490 |
| D | GAP INC DEL | COM | 36476010 | 4796 | 225390 | SH | SHARED | 10 | 225390 | |
| D | GAP INC DEL | COM | 36476010 | 1970 | 92599 | SH | SHARED | 14 | | 92599 |
| D | GAP INC DEL | COM | 36476010 | 3461 | 162680 | SH | SHARED | 16 | 162680 | |
| D | GAP INC DEL | COM | 36476010 | 241 | 11345 | SH | SHARED | 21 | 11345 | |
| D | GARDNER DENVER INC | COM | 36555810 | 1202 | 36430 | SH | SHARED | | 36430 | |
| D | GARDNER DENVER INC | COM | 36555810 | 2508 | 76021 | SH | SHR/OTHR | 01 | 49778 | 26243 |
| D | GARDNER DENVER INC | COM | 36555810 | 990 | 30000 | SH | SHARED | 01 | | 30000 |
| D | GARDNER DENVER INC | COM | 36555810 | 240 | 7300 | SH | SHARED | 02 | 7300 | |
| D | GARDNER DENVER INC | COM | 36555810 | 12683 | 384361 | SH | SHARED | 10 | 384361 | |
| D | GARDNER DENVER INC | COM | 36555810 | 46 | 1394 | SH | SHARED | 21 | 1394 | |
| D | GARDNER DENVER INC | COM | 36555810 | 50 | 1536 | SH | SHARED | 22 | 1536 | |
| D | GARTNER INC | COM | 36665110 | 426 | 24283 | SH | SHARED | | 24283 | |
| D | GARTNER INC | COM | 36665110 | 438 | 24953 | SH | SHARED | 01 | 2687 | 22266 |
| D | GARTNER INC | COM | 36665110 | 124 | 7087 | SH | SHARED | 02 | 7087 | |
| D | GARTNER INC | COM | 36665110 | 716 | 40800 | SH | SHARED | 10 | 40800 | |
| D | GARTNER INC | COM | 36665110 | 2 | 130 | SH | SHARED | 20 | 130 | |
| D | GARTNER INC | COM | 36665110 | 454 | 25909 | SH | SHARED | 23 | 25909 | |
| D | GARTNER INC | COM | 36665110 | 533 | 30393 | SH | SHR/OTHR | 23 | | 30393 |

| | | Type | CUSIP | Val | Shares | | Auth | Mgr | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | GASCO ENERGY INC | COM | 36722010 | 44 | 22334 | SH | SHARED | | 22334 | |
| D | GATEHOUSE MEDIA INC | COM | 36734810 | 2198 | 250350 | SH | SHARED | | 250350 | |
| D | GAYLORD ENTMT CO NEW | COM | 36790510 | 50253 | 1241739 | SH | SHARED | | 1241739 | |
| D | GAYLORD ENTMT CO NEW | COM | 36790510 | 3379 | 83507 | SH | SHARED | 10 | 83507 | |
| D | GAYLORD ENTMT CO NEW | COM | 36790510 | 121 | 3000 | SH | SHARED | 23 | | 3000 |
| D | GATEWAY FINL HLDGS INC | COM | 36814010 | 3 | 335 | SH | SHARED | | 335 | |
| D | GERIL CO | COM | 36848310 | 951 | 59322 | SH | SHARED | | 59322 | |
| D | GEN-PROBE INC NEW | COM | 36866T10 | 561 | 8922 | SH | SHARED | | 8922 | |
| D | GEN-PROBE INC NEW | COM | 36866T10 | 994 | 15800 | SH | SHARED | 01 | | 15800 |
| D | GEN-PROBE INC NEW | COM | 36866T10 | 720 | 11446 | SH | SHARED | 02 | 11446 | |
| D | GEN-PROBE INC NEW | COM | 36866T10 | 5705 | 90671 | SH | SHARED | 04 | 90671 | |
| D | GEN-PROBE INC NEW | COM | 36866T10 | 2030 | 32262 | SH | SHARED | 10 | 32262 | |
| D | GEN-PROBE INC NEW | COM | 36866T10 | 56 | 900 | SH | SHARED | 14 | 900 | |
| D | GEMSTAR-TV GUIDE INTL INC | COM | 36866W10 | 2380 | 500000 | SH | SHARED | | 500000 | |
| D | GEMSTAR-TV GUIDE INTL INC | COM | 36866W10 | 2668 | 560610 | SH | SHARED | 02 | 560610 | |
| D | GEMSTAR-TV GUIDE INTL INC | COM | 36866W10 | 92 | 19500 | SH | SHARED | 10 | 19500 | |
| D | GENAERA CORP | COM | 36867G20 | 0 | 452 | SH | SHARED | | 452 | |
| D | GENCORP INC | NOTE 4.000%11/1 | 368682AJ | 245 | 250000 | PRN | SHARED | | 250000 | |
| D | GENCORP INC | NOTE 4.000%11/1 | 368682AJ | 6387 | 6518000 | PRN | SHARED | 02 | 6518000 | |
| D | GENCORP INC | SDCV 2.250%11/1 | 368682AL | 1375 | 1532000 | PRN | SHARED | | 1532000 | |
| D | GENCORP INC | SDCV 2.250%11/1 | 368682AL | 359 | 400000 | PRN | SHARED | 02 | 400000 | |
| D | GENCORP INC | COM | 368682I0 | 8279 | 710081 | SH | SHARED | | 710081 | |
| D | GENCORP INC | COM | 368682I0 | 59 | 5125 | SH | SHARED | 02 | 5125 | |
| D | GENCORP INC | COM | 368682I0 | 27 | 2357 | SH | SHARED | 10 | 2357 | |
| D | GENE LOGIC INC | COM | 36868910 | 0 | 825 | SH | SHARED | | 825 | |
| D | GENELABS TECHNOLOGIES INC | COM NEW | 36870620 | 1 | 1123 | SH | SHARED | | 1123 | |
| D | GENELABS TECHNOLOGIES INC | COM NEW | 36870620 | 141 | 111791 | SH | SHARED | 02 | 111791 | |
| D | GENENTECH INC | COM NEW | 36871040 | 15206 | 226724 | SH | SHARED | | 226424 | 300 |
| D | GENENTECH INC | COM NEW | 36871040 | 1006 | 15000 | SH | SHARED | | 15000 | |
| D | GENENTECH INC | COM NEW | 36871040 | 95 | 1425 | SH | SHR-OTHR | 01 | | 1425 |
| D | GENENTECH INC | COM NEW | 36871040 | 261 | 3900 | SH | SHARED | 02 | 3900 | |
| D | GENENTECH INC | COM NEW | 36871040 | 3165 | 47200 | SH | SHARED | 04 | 47200 | |
| D | GENENTECH INC | COM NEW | 36871040 | 11 | 170 | SH | SHARED | 05 | 170 | |
| D | GENENTECH INC | COM NEW | 36871040 | 283 | 4220 | SH | SHARED | 06 | | 4220 |
| D | GENENTECH INC | COM NEW | 36871040 | 77691 | 1158370 | SH | SHARED | 10 | 1106770 | 51600 |
| D | GENENTECH INC | COM NEW | 36871040 | 337 | 5039 | SH | SHARED | 14 | 1500 | 3539 |
| D | GENENTECH INC | COM NEW | 36871040 | 7109 | 106000 | SH | SHARED | 15 | 106000 | |
| D | GENENTECH INC | COM NEW | 36871040 | 275 | 4108 | SH | SHARED | 20 | 400 | 3708 |
| D | GENENTECH INC | COM NEW | 36871040 | 290 | 4338 | SH | SHARED | 24 | | 4338 |
| D | GENENTECH INC | COM NEW | 36871040 | 99 | 1489 | SH | SHARED | | 1489 | |
| D | GENERAL CABLE CORP DEL NEW | NOTE 0.875%11/1 | 369300AD | 4015 | 2500000 | PRN | SHARED | | 2500000 | |
| D | GENERAL CABLE CORP DEL NEW | COM | 36930010 | 10599 | 144650 | SH | SHARED | | 144650 | |
| D | GENERAL CABLE CORP DEL NEW | COM | 36930010 | 718 | 9800 | SH | SHARED | 01 | 9800 | |
| D | GENERAL CABLE CORP DEL NEW | COM | 36930010 | 219 | 3000 | SH | SHARED | 02 | 3000 | |
| D | GENERAL CABLE CORP DEL NEW | COM | 36930010 | 36384 | 496520 | SH | SHARED | 10 | 496520 | |
| D | GENERAL CABLE CORP DEL NEW | COM | 36930010 | 80 | 1097 | SH | SHARED | 21 | | 1097 |
| D | GENERAL COMMUNICATION INC | CL A | 36938510 | 482 | 55148 | SH | SHARED | | 55148 | |
| D | GENERAL COMMUNICATION INC | CL A | 36938510 | 616 | 70400 | SH | SHARED | 10 | 70400 | |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 516 | 5800 | SH | SHARED | | 5800 | |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 35 | 400 | SH | SHR/OTHR | | | 400 |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 86893 | 976445 | SH | SHARED | | 976305 | 140 |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 7773 | 87351 | SH | SHARED | 01 | 50796 | 36555 |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 53 | 600 | SH | SHR/OTHR | 01 | | 600 |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 1271 | 14287 | SH | SHARED | 02 | 14287 | |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 2669 | 30000 | SH | SHARED | 04 | 30000 | |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 14 | 160 | SH | SHARED | 05 | 160 | |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 274 | 3080 | SH | SHARED | 06 | | 3080 |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 47772 | 536834 | SH | SHARED | 10 | 515634 | 21200 |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 240 | 2700 | SH | SHARED | 14 | | 2700 |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 787 | 8845 | SH | SHARED | 20 | 1920 | 6925 |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 3141 | 35300 | SH | SHR/OTHR | 20 | | 35300 |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 1270 | 14276 | SH | SHARED | 21 | 1700 | 12576 |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 213 | 2400 | SH | SHR/OTHR | 21 | | 2400 |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 262 | 2951 | SH | SHARED | 22 | 1551 | 1400 |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 35 | 400 | SH | SHR/OTHR | 22 | | 400 |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 30305 | 340550 | SH | SHARED | 23 | 9689 | 330861 |
| D | GENERAL DYNAMICS CORP | COM | 36955010 | 45290 | 508936 | SH | SHR/OTHR | 23 | | 508936 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 10109 | 272703 | SH | SHARED | | 130560 | 142143 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 575994 | 15538032 | SH | SHARED | | 5311802 | 226230 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 135769 | 3662525 | SH | SHARED | 01 | 2047933 | 1614592 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 25647 | 691870 | SH | SHR/OTHR | 01 | | 691870 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 59371 | 1601616 | SH | SHARED | 02 | 1601616 | |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 1329 | 35876 | SH | SHARED | 04 | | 35876 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 40899 | 1103296 | SH | SHARED | 04 | 1103296 | |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 34630 | 934201 | SH | SHARED | 05 | 934201 | |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 9243 | 249358 | SH | SHARED | 06 | | 249358 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 568333 | 15331367 | SH | SHARED | 10 | 4823292 | 508075 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 576 | 15563 | SH | SHR/OTHR | 10 | | 15563 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 5185 | 139873 | SH | SHARED | 14 | | 139873 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 10490 | 283000 | SH | SHARED | 15 | 283000 | |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 9996 | 269673 | SH | SHARED | 19 | | 269673 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 17716 | 477922 | SH | SHARED | 20 | 182115 | 295807 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 10391 | 280314 | SH | SHARED | 20 | | 280314 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 3544 | 95612 | SH | SHARED | 21 | 72712 | 22900 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 1280 | 34545 | SH | SHR/OTHR | 21 | | 34545 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 4936 | 133173 | SH | SHARED | 22 | 82430 | 50743 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 1548 | 41769 | SH | SHR/OTHR | 22 | | 41769 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 59697 | 1610394 | SH | SHARED | 23 | 1533619 | 76775 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 74480 | 2009190 | SH | SHR/OTHR | 23 | | 2009190 |
| D | GENERAL ELECTRIC CO | COM | 36960410 | 99 | 2686 | SH | SHARED | 24 | | 2686 |
| D | GENERAL EMPLOYMENT ENTERPRIS | NOTE | 36973010 | 0 | 109 | SH | SHARED | | 109 | |
| D | GENERAL FINANCE CORP | COM | 36982210 | 2 | 250 | SH | SHARED | | 250 | |
| D | GENERAL GROWTH PPTYS INC | COM | 37002110 | 11356 | 275769 | SH | SHARED | | 275769 | |
| D | GENERAL GROWTH PPTYS INC | COM | 37002110 | 1040 | 25270 | SH | SHARED | 01 | 25270 | |
| D | GENERAL GROWTH PPTYS INC | COM | 37002110 | 3013 | 73168 | SH | SHARED | 02 | 73168 | |
| D | GENERAL GROWTH PPTYS INC | COM | 37002110 | 5 | 130 | SH | SHARED | 05 | 130 | |
| D | GENERAL GROWTH PPTYS INC | COM | 37002110 | 22879 | 555600 | SH | SHARED | 10 | 555600 | |
| D | GENERAL GROWTH PPTYS INC | COM | 37002110 | 384862 | 9346346 | SH | SHARED | 11 | 5461673 | 3884673 |
| D | GENERAL GROWTH PPTYS INC | COM | 37002110 | 32 | 800 | SH | SHARED | 14 | 800 | |
| D | GENERAL GROWTH PPTYS INC | COM | 37002110 | 14 | 358 | SH | SHARED | 20 | 358 | |
| D | GENERAL MLS INC | COM | 37033410 | 29900 | 524571 | SH | SHARED | | 524571 | |
| D | GENERAL MLS INC | COM | 37033410 | 3134 | 54996 | SH | SHARED | | 43921 | 11075 |
| D | GENERAL MLS INC | COM | 37033410 | 378 | 6645 | SH | SHR/OTHR | 01 | | 6645 |
| D | GENERAL MLS INC | COM | 37033410 | 331 | 5823 | SH | SHARED | 02 | 5823 | |
| D | GENERAL MLS INC | COM | 37033410 | 11 | 200 | SH | SHARED | 05 | 200 | |
| D | GENERAL MLS INC | COM | 37033410 | 30902 | 542150 | SH | SHARED | 06 | | 542150 |
| D | GENERAL MLS INC | COM | 37033410 | 14402 | 252668 | SH | SHARED | 10 | 252668 | |
| D | GENERAL MLS INC | COM | 37033410 | 1147 | 20125 | SH | SHARED | 14 | | 20125 |
| D | GENERAL MLS INC | COM | 37033410 | 290 | 5090 | SH | SHARED | 20 | 4695 | 395 |
| D | GENERAL MLS INC | COM | 37033410 | 3 | 55 | SH | SHR/OTHR | 20 | | 55 |
| D | GENERAL MLS INC | COM | 37033410 | 51 | 900 | SH | SHARED | 21 | 900 | |
| D | GENERAL MLS INC | COM | 37033410 | 407 | 7150 | SH | SHARED | 22 | 4400 | 2750 |
| D | GENERAL MLS INC | COM | 37033410 | 906 | 15900 | SH | SHR/OTHR | 23 | 9200 | 6700 |
| D | GENERAL MLS INC | COM | 37033410 | 1773 | 31120 | SH | SHR/OTHR | 23 | | 31120 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | GENERAL MOLY INC | COM | 37037310 | 37 | 3208 SH | SHARED | | 3208 | |
| D | GENERAL MTRS CORP | COM | 37044210 | 39 | 1600 SH | SHARED | | 1600 | |
| D | GENERAL MTRS CORP | COM | 37044210 | 83532 | 3356067 SH | SHARED | | 3356067 | |
| D | GENERAL MTRS CORP | COM | 37044210 | 1533 | 61595 SH | SHARED | 01 | 60995 | 600 |
| D | GENERAL MTRS CORP | COM | 37044210 | 3495 | 140441 SH | SHARED | 02 | 140441 | |
| D | GENERAL MTRS CORP | COM | 37044210 | 19 | 800 SH | SHARED | 04 | | 800 |
| D | GENERAL MTRS CORP | COM | 37044210 | 5 | 235 SH | SHARED | 05 | 235 | |
| D | GENERAL MTRS CORP | COM | 37044210 | 101 | 4080 SH | SHARED | 06 | | 4080 |
| D | GENERAL MTRS CORP | COM | 37044210 | 5815 | 233637 SH | SHARED | 10 | 233637 | |
| D | GENERAL MTRS CORP | COM | 37044210 | 58 | 2339 SH | SHARED | 14 | | 2339 |
| D | GENERAL MTRS CORP | COM | 37044210 | 11 | 472 SH | SHARED | 23 | 272 | 200 |
| D | GENERAL MTRS CORP | COM | 37044210 | 199 | 8000 SH | SHR/OTHR | 23 | | 8000 |
| D | GENERAL MTRS CORP | SENIOR DEBEN D | 37044269 | 12699 | 525000 SH | SHARED | | 525000 | |
| D | GENERAL MTRS CORP | SENIOR DEBEN D | 37044269 | 241 | 10000 SH | SHARED | 02 | 10000 | |
| D | GENERAL MTRS CORP | DEB SR CV C 33 | 37044271 | 175292 | 8929825 SH | SHARED | | 8929825 | |
| D | GENERAL MTRS CORP | DEB SR CV C 33 | 37044271 | 21593 | 1100000 SH | SHARED | 10 | 1100000 | |
| D | GENERAL MTRS CORP | DEB SR CV C 33 | 37044271 | 443 | 22600 SH | SHARED | 14 | | 22600 |
| D | GENERAL MTRS CORP | DEB SR CONV B | 37044273 | 48507 | 2518560 SH | SHARED | | 2518560 | |
| D | GENERAL MTRS CORP | DEB SR CONV B | 37044273 | 14445 | 750000 SH | SHARED | 10 | 750000 | |
| D | GENERAL MTRS CORP | DEB SR CONV A | 37044274 | 1 | 100 SH | SHARED | | 100 | |
| D | GENERAL STEEL HOLDINGS INC | COM | 37085310 | 0 | 10 SH | SHARED | | 10 | |
| D | GENESCO INC | SDCV  4.125% 6/1 | 371532AN | 446 | 250000 PRN | SHARED | | 250000 | |
| D | GENESCO INC | COM | 37153210 | 19492 | 515664 SH | SHARED | | 515664 | |
| D | GENESCO INC | COM | 37153210 | 7560 | 200000 SH | SHARED | 02 | 200000 | |
| D | GENESCO INC | COM | 37153210 | 102 | 2700 SH | SHARED | 10 | 2700 | |
| D | GENESEE & WYO INC | CL A | 37155910 | 410 | 16977 SH | SHARED | | 16977 | |
| D | GENESEE & WYO INC | CL A | 37155910 | 79 | 3300 SH | SHARED | 02 | 3300 | |
| D | GENESEE & WYO INC | CL A | 37155910 | 12700 | 525450 SH | SHARED | 10 | 525450 | |
| D | GENESIS LEASE LTD | ADR | 37183710 | 12 | 661 SH | SHARED | | 661 | |
| D | GENESIS MICROCHIP INC DEL | COM | 37184C10 | 101 | 11881 SH | SHARED | | 11881 | |
| D | GENESIS MICROCHIP INC DEL | COM | 37184C10 | 0 | 1 SH | SHARED | 02 | 1 | |
| D | GENEVA ACQUISITION CORP | COM | 37185Y10 | 1900 | 345573 SH | SHARED | | 345573 | |
| D | GENTEX CORP | COM | 37190110 | 338 | 19024 SH | SHARED | | 19024 | |
| D | GENTEX CORP | COM | 37190110 | 854 | 48100 SH | SHARED | 01 | | 48100 |
| D | GENTEX CORP | COM | 37190110 | 555 | 31256 SH | SHARED | 02 | 31256 | |
| D | GENTEX CORP | COM | 37190110 | 5199 | 292572 SH | SHARED | 10 | 292572 | |
| D | GENESIS ENERGY L P | UNIT LTD PARTN | 37192710 | 5736 | 244106 SH | SHARED | | 244106 | |
| D | GENITOPE CORP | COM | 37229P50 | 0 | 919 SH | SHARED | | 919 | |
| D | GENLYTE GROUP INC | COM | 37230210 | 4798 | 50405 SH | SHARED | | 50405 | |
| D | GENLYTE GROUP INC | COM | 37230210 | 38 | 400 SH | SHARED | 01 | 400 | |
| D | GENLYTE GROUP INC | COM | 37230210 | 3103 | 32600 SH | SHARED | 02 | 32600 | |
| D | GENLYTE GROUP INC | COM | 37230210 | 13827 | 145250 SH | SHARED | 10 | 145250 | |
| D | GENOPTIX INC | COM | 37243V10 | 3 | 116 SH | SHARED | | 116 | |
| D | GENOMIC HEALTH INC | COM | 37244C10 | 26 | 1170 SH | SHARED | | 1170 | |
| D | GENTA INC | COM PAR $0.001 | 37245M50 | 0 | 798 SH | SHARED | | 798 | |
| D | GENTA INC | COM PAR $0.001 | 37245M50 | 0 | 1 SH | SHARED | 02 | 1 | |
| D | GENTEK INC | COM NEW | 37245X20 | 9643 | 329460 SH | SHARED | | 329460 | |
| D | GENTEK INC | COM NEW | 37245X20 | 29 | 1000 SH | SHARED | 01 | 1000 | |
| D | GENTEK INC | COM NEW | 37245X20 | 641 | 21911 SH | SHARED | 02 | 21911 | |
| D | GENVEC INC | COM | 37246C10 | 0 | 63 SH | SHARED | | 63 | |
| D | GENUINE PARTS CO | COM | 37246010 | 11065 | 238998 SH | SHARED | | 238998 | |
| D | GENUINE PARTS CO | COM | 37246010 | 1193 | 25771 SH | SHARED | 01 | 21646 | 4125 |
| D | GENUINE PARTS CO | COM | 37246010 | 583 | 12597 SH | SHARED | 02 | 12597 | |
| D | GENUINE PARTS CO | COM | 37246010 | 87 | 1881 SH | SHARED | 06 | | 1881 |
| D | GENUINE PARTS CO | COM | 37246010 | 3631 | 78430 SH | SHARED | 10 | 78430 | |
| D | GENUINE PARTS CO | COM | 37246010 | 49 | 1070 SH | SHR/OTHR | 10 | | 1070 |
| D | GENUINE PARTS CO | COM | 37246010 | 277 | 6000 SH | SHARED | 20 | | 6000 |
| D | GENUINE PARTS CO | COM | 37246010 | 21511 | 464618 SH | SHR/OTHR | 20 | | 464618 |
| D | GENUINE PARTS CO | COM | 37246010 | 138 | 3000 SH | SHARED | 23 | | 3000 |
| D | GENTIVA HEALTH SERVICES INC | COM | 37247A10 | 509 | 26774 SH | SHARED | | 26774 | |
| D | GENTIVA HEALTH SERVICES INC | COM | 37247A10 | 13 | 725 SH | SHARED | 01 | 725 | |
| D | GENTIVA HEALTH SERVICES INC | COM | 37247A10 | 504 | 26500 SH | SHARED | 02 | 26500 | |
| D | GENTIVA HEALTH SERVICES INC | COM | 37247A10 | 142 | 7500 SH | SHARED | 10 | 7500 | |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 2204 | 86606 SH | SHARED | | 62643 | 23963 |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 15241 | 598894 SH | SHARED | | 598894 | |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 9880 | 388214 SH | SHARED | 01 | 342854 | 45360 |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 1092 | 42914 SH | SHR/OTHR | 01 | | 42914 |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 341 | 13400 SH | SHARED | 02 | 13400 | |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 659 | 25922 SH | SHARED | 04 | | 25922 |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 516 | 20300 SH | SHARED | 04 | 20300 | |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 5 | 210 SH | SHARED | 05 | 210 | |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 36311 | 1426763 SH | SHARED | 06 | | 1426763 |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 8042 | 316010 SH | SHARED | 10 | 312200 | 3810 |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 291 | 11459 SH | SHARED | 14 | | 11459 |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 4358 | 171266 SH | SHARED | 19 | 171266 | |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 4685 | 184107 SH | SHARED | 19 | | 184107 |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 1672 | 65700 SH | SHARED | 20 | 59180 | 6520 |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 89 | 3500 SH | SHR/OTHR | 20 | | 3500 |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 6 | 250 SH | SHARED | 21 | 250 | |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 82 | 3238 SH | SHARED | 22 | 2349 | 889 |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 24 | 955 SH | SHR/OTHR | 22 | | 955 |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 1096 | 43075 SH | SHARED | 23 | 42085 | 990 |
| D | GENWORTH FINL INC | COM CL A | 37247D10 | 94 | 3710 SH | SHR/OTHR | 23 | | 3710 |
| D | GEORESOURCES INC | COM | 37248H30 | 0 | 92 SH | SHARED | | 92 | |
| D | GEOPETRO RESOURCES CO | COM | 37248H30 | 2 | 741 SH | SHARED | | 741 | |
| D | GEOGLOBAL RESOURCES INC | COM | 37249T10 | 162 | 32828 SH | SHARED | | 32828 | |
| D | GEOPHARMA INC | COM | 37250A10 | 0 | 259 SH | SHARED | | 259 | |
| D | GEOMET INC DEL | COM | 37250U20 | 0 | 113 SH | SHARED | | 113 | |
| D | GEOEYE INC | COM | 37250W10 | 612 | 18200 SH | SHARED | | 18200 | |
| D | GEOEYE INC | COM | 37250W10 | 26 | 800 SH | SHARED | 01 | | 800 |
| D | GEOKINETICS INC | COM PAR $0.01 | 37291030 | 0 | 15 SH | SHARED | | 15 | |
| D | GENZYME CORP | NOTE  1.250%12/0 | 372917AN | 5299 | 4600000 PRN | SHARED | | 4600000 | |
| D | GENZYME CORP | COM | 37291710 | 34954 | 469561 SH | SHARED | | 469561 | |
| D | GENZYME CORP | COM | 37291710 | 2228 | 29937 SH | SHARED | 01 | 27347 | 2590 |
| D | GENZYME CORP | COM | 37291710 | 2995 | 40244 SH | SHR/OTHR | 01 | | 40244 |
| D | GENZYME CORP | COM | 37291710 | 2905 | 39034 SH | SHARED | 02 | 39034 | |
| D | GENZYME CORP | COM | 37291710 | 20240 | 271897 SH | SHARED | 04 | 271897 | |
| D | GENZYME CORP | COM | 37291710 | 7 | 100 SH | SHARED | 05 | 100 | |
| D | GENZYME CORP | COM | 37291710 | 3406 | 45760 SH | SHARED | 06 | | 45760 |
| D | GENZYME CORP | COM | 37291710 | 14972 | 201140 SH | SHARED | 10 | 201140 | |
| D | GENZYME CORP | COM | 37291710 | 89 | 1200 SH | SHARED | 14 | | 1200 |
| D | GENZYME CORP | COM | 37291710 | 230 | 3101 SH | SHARED | 21 | 3101 | |
| D | GENZYME CORP | COM | 37291710 | 833 | 11200 SH | SHR/OTHR | 23 | | 11200 |
| D | GEORGIA GULF CORP | COM PAR $0.01 | 37320020 | 1361 | 205693 SH | SHARED | | 205693 | |
| D | GEORGIA GULF CORP | COM PAR $0.01 | 37320020 | 54 | 8300 SH | SHARED | 10 | 8300 | |
| D | GERDAU AMERISTEEL CORP | COM | 37373P10 | 3772 | 265300 SH | SHARED | | 265300 | |
| D | GERDAU AMERISTEEL CORP | COM | 37373P10 | 22877 | 1608800 SH | SHARED | 10 | 1608800 | |
| D | GERBER SCIENTIFIC INC | COM | 37373010 | 43 | 4000 SH | SHARED | | 4000 | |
| D | GERDAU S A | SPONSORED ADR | 37373710 | 6688 | 230552 SH | SHARED | | 229152 | 1400 |
| D | GERDAU S A | SPONSORED ADR | 37373710 | 7481 | 257901 SH | SHARED | 01 | 257901 | |
| D | GERDAU S A | SPONSORED ADR | 37373710 | 1160 | 40000 SH | SHARED | 02 | 40000 | |
| D | GERDAU S A | SPONSORED ADR | 37373710 | 21380 | 737000 SH | SHARED | 10 | 737000 | |
| D | GERDAU S A | SPONSORED ADR | 37373710 | 3807 | 131250 SH | SHARED | 14 | | 131250 |
| D | GERMAN AMERN BANCORP INC | COM | 37386510 | 3 | 287 SH | SHARED | | 287 | |

```
D GERON CORP                    COM                    37416310      77    13616 SH     SHARED           13616
D GETTY IMAGES INC              SDCV  0.500% 6/0   374276AH    3905  4039000 PRN    SHARED        02  4039000
D GETTY IMAGES INC              COM                    37427610     775    26746 SH     SHARED           26746
D GETTY IMAGES INC              COM                    37427610     445    15375 SH     SHARED        01     975      14400
D GETTY IMAGES INC              COM                    37427610    3018   104081 SH     SHARED        02  104081
D GETTY IMAGES INC              COM                    37427610     580    20000 SH     SHARED        04   20000
D GETTY IMAGES INC              COM                    37427610     492    16974 SH     SHARED        10   16974
D GETTY RLTY CORP NEW           COM                    37429710       0        1 SH     SHARED                 1
D GETTY RLTY CORP NEW           COM                    37429710     138     5200 SH     SHARED        02    5200
D GEVITY HR INC                 COM                    37439310     128    16670 SH     SHARED           16670
D GEVITY HR INC                 COM                    37439310      65     8475 SH     SHARED        02    8475
D GIBRALTAR INDS INC            COM                    37468910    1942   125965 SH     SHARED          125965
D GIBRALTAR INDS INC            COM                    37468910     135     8800 SH     SHARED        02    8800
D GIBRALTAR INDS INC            COM                    37468910      92     6000 SH     SHARED        10    6000
D GIGABEAM CORP                 COM                    37517W10       0      129 SH     SHARED             129
D GIGA TRONICS INC              COM                    37517510       0      113 SH     SHARED             113
D GILEAD SCIENCES INC           NOTE  0.500% 5/0   375558AG    3287  2500000 PRN    SHARED          2500000
D GILEAD SCIENCES INC           NOTE  0.625% 5/0   375558AH   30597 22800000 PRN    SHARED          2800000
D GILEAD SCIENCES INC           NOTE  0.625% 5/0   375558AH   12791  9532000 PRN    SHARED        02  9532000
D GILEAD SCIENCES INC           NOTE  0.625% 5/0   375558AH   15433 11500000 PRN    SHARED        04  1500000
D GILEAD SCIENCES INC           COM                    37555810    2152    46773 SH     SHARED           41148      5625
D GILEAD SCIENCES INC           COM                    37555810   58275  1266591 SH    SHARED         1144931    121660
D GILEAD SCIENCES INC           COM                    37555810   26533   576691 SH    SHARED        01  330401    246290
D GILEAD SCIENCES INC           COM                    37555810    7997   173812 SH    SHR/OTHR      01         173812
D GILEAD SCIENCES INC           COM                    37555810    5379   116921 SH    SHARED        02  116921
D GILEAD SCIENCES INC           COM                    37555810     731    15900 SH     SHARED        04           15900
D GILEAD SCIENCES INC           COM                    37555810   49562  1077215 SH    SHARED        04  1077215
D GILEAD SCIENCES INC           COM                    37555810      18      400 SH     SHARED        05     400
D GILEAD SCIENCES INC           COM                    37555810    4156    90340 SH     SHARED        06   90340
D GILEAD SCIENCES INC           COM                    37555810  221254  4808831 SH    SHARED        06 4701731   107100
D GILEAD SCIENCES INC           COM                    37555810     623    13548 SH     SHARED        14    4100      9448
D GILEAD SCIENCES INC           COM                    37555810    6177   134265 SH    SHARED        19          134265
D GILEAD SCIENCES INC           COM                    37555810    2616    56859 SH     SHARED        20   35554     21305
D GILEAD SCIENCES INC           COM                    37555810    1157    25160 SH    SHR/OTHR      20          25160
D GILEAD SCIENCES INC           COM                    37555810    1062    23090 SH     SHARED        21   12848     10242
D GILEAD SCIENCES INC           COM                    37555810     184     4000 SH    SHR/OTHR      21           4000
D GILEAD SCIENCES INC           COM                    37555810    1738    37792 SH     SHARED        22   28057      9735
D GILEAD SCIENCES INC           COM                    37555810     230     5000 SH    SHR/OTHR      22           5000
D GILEAD SCIENCES INC           COM                    37555810    6358   138194 SH     SHARED        23  130104      8090
D GILEAD SCIENCES INC           COM                    37555810    7174   155940 SH    SHR/OTHR      23          155940
D GILEAD SCIENCES INC           COM                    37555810     143     3114 SH     SHARED        24    3114
D GILDAN ACTIVEWEAR INC         COM                    37591610     619    15061 SH     SHARED           15061
D GILDAN ACTIVEWEAR INC         COM                    37591610      37      900 SH     SHARED        01     900
D GILDAN ACTIVEWEAR INC         COM                    37591610     172     4200 SH     SHARED        10    4200
D GLACIER BANCORP INC NEW       COM                    37637Q10      58     3100 SH     SHARED            3100
D GLACIER BANCORP INC NEW       COM                    37637Q10      74     4000 SH     SHARED        01    4000
D GLACIER BANCORP INC NEW       COM                    37637Q10    1313    70100 SH     SHARED        10   70100
D GLADSTONE CAPITAL CORP        COM                    37653510      71     4208 SH     SHARED            4208
D GLADSTONE CAPITAL CORP        COM                    37653510    2358   138639 SH     SHARED        02  138639
D GLADSTONE CAPITAL CORP        COM                    37653510      66     3900 SH     SHARED        10    3900
D GLADSTONE COML CORP           COM                    37653610       3      223 SH     SHARED             223
D GLADSTONE INVT CORP           COM                    37654610    2626   267703 SH     SHARED          267703
D GLATFELTER                    COM                    37731610      69     4520 SH     SHARED            4520
D GLATFELTER                    COM                    37731610      52     3400 SH     SHARED        01           3400
D GLATFELTER                    COM                    37731610     269    17600 SH     SHARED        10   17600
D GLAXOSMITHKLINE PLC           SPONSORED ADR          37733W10     117      341 SH     SHARED             341
D GLAXOSMITHKLINE PLC           SPONSORED ADR          37733W10    9644   191404 SH    SHARED          191404
D GLAXOSMITHKLINE PLC           SPONSORED ADR          37733W10     136     2700 SH     SHARED        01     200      2500
D GLAXOSMITHKLINE PLC           SPONSORED ADR          37733W10      80     1600 SH    SHR/OTHR      01           1600
D GLAXOSMITHKLINE PLC           SPONSORED ADR          37733W10    1063    21103 SH     SHARED        20   10990     10113
D GLAXOSMITHKLINE PLC           SPONSORED ADR          37733W10    1053    20916 SH    SHR/OTHR      20          20916
D GLAXOSMITHKLINE PLC           SPONSORED ADR          37733W10     558    11088 SH     SHARED        21   10378       710
D GLAXOSMITHKLINE PLC           SPONSORED ADR          37733W10      60     1200 SH     SHARED        22           1200
D GLAXOSMITHKLINE PLC           SPONSORED ADR          37733W10     114     2276 SH    SHR/OTHR      22           2276
D GLAXOSMITHKLINE PLC           SPONSORED ADR          37733W10     211     4200 SH     SHARED        23    4200
D GLAXOSMITHKLINE PLC           SPONSORED ADR          37733W10     998    19824 SH    SHR/OTHR      23          19824
D GLOBAL CASH ACCESS HLDGS INC  COM                    37896710      39     6444 SH     SHARED            6444
D GLOBAL CASH ACCESS HLDGS INC  COM                    37896710       5      900 SH     SHARED        10     900
D GLOBALSTAR INC                COM                    37897340     698    87267 SH     SHARED           87267
D GLOBAL BPO SVCS CORP          COM                    37898110    3158   438639 SH     SHARED          438639
D GLOBAL BPO SVCS CORP          *W EXP 10/17/201   37898111     249   402120 SH     SHARED          402120
D GLOBAL BPO SVCS CORP          *W EXP 99/99/9999  37898120    1825   229901 SH     SHARED          229901
D GLOBAL BRANDS ACQUISITION CO  UNIT 99/99/9999    37898130    1269   125985 SH     SHARED          125985
D GLOBAL CONSUMER ACQST CORP    UNIT 99/99/9999    37898320    2090   212010 SH     SHARED          212010
D GLOBAL CONSUMER ACQST CORP    UNIT 99/99/9999    37898320    4437   450000 SH     SHARED        02  450000
D GLG PARTNERS INC              COM                    37929X10     109     8087 SH     SHARED            8087
D GLG PARTNERS INC              COM                    37929X10     130     9600 SH     SHARED        10    9600
D GLG PARTNERS INC              *W EXP 12/28/201   37929X11     180    30000 SH     SHARED           30000
D GLIMCHER RLTY TR              SH BEN INT             37930210     544    38130 SH     SHARED           38130
D GLIMCHER RLTY TR              SH BEN INT             37930210      21     1500 SH     SHARED        01    1500
D GLIMCHER RLTY TR              SH BEN INT             37930210     451    31600 SH     SHARED        10   31600
D GLOBAL INDS LTD               COM                    37933610    3595   167873 SH     SHARED           41773     126100
D GLOBAL INDS LTD               COM                    37933610     979    45715 SH     SHARED        01   45715
D GLOBAL INDS LTD               COM                    37933610   37133  1733577 SH    SHARED        10 1713777     19800
D GLOBAL INCOME FD INC          COM                    37934Y10       2      561 SH     SHARED             561
D GLOBAL ENTMT CORP             COM NEW                37939C20       0       88 SH     SHARED              88
D GLOBALSCAPE INC               COM                    37940Q10       1      231 SH     SHARED             231
D GLOBAL PMTS INC               COM                    37940X10     439     9437 SH     SHARED            9437
D GLOBAL PMTS INC               COM                    37940X10    1194    25680 SH     SHARED        01    2080     23600
D GLOBAL PMTS INC               COM                    37940X10     350     7538 SH     SHARED        02    7538
D GLOBAL PMTS INC               COM                    37940X10   24181   519800 SH     SHARED        10  519800
D GLOBAL LOGISTICS ACQUISITION  COM                    37941410     230    30300 SH     SHARED           30300
D GLOBAL PARTNERS LP            COM UNITS              37946R10    2497    95874 SH     SHARED           95874
D GLOBAL TRAFFIC NETWORK INC    COM                    37947B10       1      253 SH     SHARED             253
D GLOBECOMM SYSTEMS INC         COM                    37956Q10     162    13902 SH     SHARED           13902
D GLOBECOMM SYSTEMS INC         COM                    37956Q10      30     2600 SH     SHARED        02    2600
D GLU MOBILE INC                COM                    37989010       2      282 SH     SHARED             282
D GMX RES INC                   COM                    38011M10      76     2355 SH     SHARED            2355
D GMARKET INC                   SPON ADR               38012G10      14      594 SH     SHARED             594
D GOAMERICA INC                 COM PAR $0.01          38020R30       0       64 SH     SHARED              64
D GOL LINHAS AEREAS INTLG S A   SP ADR REP PFD         38045R10     143     5800 SH     SHARED                      5800
D GOL LINHAS AEREAS INTLG S A   SP ADR REP PFD         38045R10    1281    51637 SH     SHARED           51637
D GOL LINHAS AEREAS INTLG S A   SP ADR REP PFD         38045R10     992    40000 SH     SHARED        02   40000
D GOL LINHAS AEREAS INTLG S A   SP ADR REP PFD         38045R10     129     5200 SH     SHARED        10    5200
D GOLD FIELDS LTD NEW           SPONSORED ADR          38059Y10    3256   229347 SH     SHARED          229347
D GOLD FIELDS LTD NEW           SPONSORED ADR          38059Y10     550    38800 SH     SHARED        01   23800     15000
D GOLD FIELDS LTD NEW           SPONSORED ADR          38059Y10     781    55005 SH     SHARED        02   55005
D GOLD FIELDS LTD NEW           SPONSORED ADR          38059Y10   24793  1746040 SH    SHARED        10 1607440    138600
D GOLD FIELDS LTD NEW           SPONSORED ADR          38059Y10      71     5000 SH     SHARED        15            5000
D GOLD FIELDS LTD NEW           SPONSORED ADR          38059Y10       4      301 SH     SHARED        21             301
D GOLD FIELDS LTD NEW           SPONSORED ADR          38059Y10     295    20800 SH     SHARED        23   20800
D GOLD FIELDS LTD NEW           SPONSORED ADR          38059Y10     340    24000 SH    SHR/OTHR      23          24000
D GOLD FIELDS LTD NEW           SPONSORED ADR          38059Y10     802    56500 SH     SHARED        24   56500
D GOLDCORP INC NEW              COM                    38095640   18827   554888 SH     SHARED          554888
```

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | GOLDCORP INC NEW | COM | 38095640 | 67 | 1980 SH | SHARED | 01 | 1980 | |
| D | GOLDCORP INC NEW | COM | 38095640 | 3392 | 99982 SH | SHARED | 02 | 99982 | |
| D | GOLDCORP INC NEW | COM | 38095640 | 26238 | 773300 SH | SHARED | 04 | 773300 | |
| D | GOLDCORP INC NEW | COM | 38095640 | 13 | 400 SH | SHARED | 05 | 400 | |
| D | GOLDCORP INC NEW | COM | 38095640 | 138 | 4072 SH | SHARED | 06 | | 4072 |
| D | GOLDCORP INC NEW | COM | 38095640 | 92579 | 2728548 SH | SHARED | 10 | 2728548 | |
| D | GOLDCORP INC NEW | COM | 38095640 | 71 | 2096 SH | SHARED | 14 | | 2096 |
| D | GOLDCORP INC NEW | COM | 38095640 | 239 | 7070 SH | SHARED | 15 | | 7070 |
| D | GOLDCORP INC NEW | COM | 38095640 | 373 | 11000 SH | SHR/OTHR | 23 | | 11000 |
| D | GOLDCORP INC NEW | COM | 38095640 | 149 | 4400 SH | SHARED | 24 | 4400 | |
| D | GOLDEN ENTERPRISES INC | COM | 38101010 | 0 | 110 SH | SHARED | | 110 | |
| D | GOLDEN POND HEALTHCARE INC | COM | 38116J10 | 186 | 26037 SH | SHARED | | 26037 | |
| D | GOLDEN POND HEALTHCARE INC | UNIT 99/99/9999 | 38116J20 | 632 | 80564 SH | SHARED | | 80564 | |
| D | GOLDEN POND HEALTHCARE INC | UNIT 99/99/9999 | 38116J20 | 10754 | 1370000 SH | SHARED | 02 | 1370000 | |
| D | GOLDEN STAR RES LTD CDA | COM | 38119T10 | 444 | 140616 SH | SHARED | | 140616 | |
| D | GOLDEN TELECOM INC | COM | 38122G10 | 484 | 4798 SH | SHARED | | 4798 | |
| D | GOLDEN TELECOM INC | COM | 38122G10 | 30 | 300 SH | SHARED | 01 | 300 | |
| D | GOLDEN TELECOM INC | COM | 38122G10 | 11982 | 118700 SH | SHARED | 02 | 118700 | |
| D | GOLDEN TELECOM INC | COM | 38122G10 | 8580 | 85000 SH | SHARED | 05 | 85000 | |
| D | GOLDEN TELECOM INC | COM | 38122G10 | 1070 | 10600 SH | SHARED | 10 | 10600 | |
| D | GOLDFIELD CORP | COM | 38137010 | 0 | 632 SH | SHARED | | 632 | |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 3176 | 14773 SH | SHARED | | 10923 | 3850 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 332058 | 1544098 SH | SHARED | | 1535098 | 9000 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 27960 | 130017 SH | SHARED | 01 | 95639 | 34378 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 8028 | 37334 SH | SHR/OTHR | 01 | | 37334 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 2966 | 13794 SH | SHARED | 02 | 13794 | |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 877 | 4080 SH | SHARED | 04 | | 4080 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 10195 | 47410 SH | SHARED | 04 | 47410 | |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 32 | 150 SH | SHARED | 05 | 150 | |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 746 | 3470 SH | SHARED | 06 | | 3470 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 229015 | 1064942 SH | SHARED | 10 | 1029267 | 35675 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 3013 | 14011 SH | SHARED | 14 | 700 | 13311 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 3870 | 18000 SH | SHARED | 16 | 18000 | |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 6795 | 31601 SH | SHARED | 19 | | 31601 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 3262 | 15172 SH | SHARED | 20 | 8270 | 6902 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 1742 | 8105 SH | SHR/OTHR | 20 | | 8105 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 1434 | 6669 SH | SHARSD | 21 | 1250 | 5419 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 397 | 1850 SH | SHR/OTHR | 21 | | 1850 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 1488 | 6921 SH | SHARED | 22 | 5206 | 1715 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 662 | 3079 SH | SHR/OTHR | 22 | | 3079 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 6397 | 29750 SH | SHARED | 23 | 24950 | 4800 |
| D | GOLDMAN SACHS GROUP INC | COM | 38141G10 | 5399 | 25107 SH | SHR/OTHR | 23 | | 25107 |
| D | GOLDLEAF FINANCIAL SOLUTIONS | COM NEW | 38144H20 | 0 | 388 SH | SHARED | | 388 | |
| D | GOLF TR AMER INC | COM | 38168B10 | 0 | 278 SH | SHARED | | 278 | |
| D | GOLFSMITH INTL HOLDINGS INC | COM | 38168Y10 | 0 | 156 SH | SHARED | | 156 | |
| D | GOOD TIMES RESTAURANTS INC | COM PAR $0.001 | 38214088 | 0 | 53 SH | SHARED | | 53 | |
| D | GOODRICH CORP | COM | 38238810 | 8994 | 127377 SH | SHARED | | 127377 | |
| D | GOODRICH CORP | COM | 38238810 | 5274 | 74704 SH | SHARED | 01 | 18394 | 56310 |
| D | GOODRICH CORP | COM | 38238810 | 483 | 6850 SH | SHR/OTHR | 01 | | 6850 |
| D | GOODRICH CORP | COM | 38238810 | 487 | 6908 SH | SHARED | 02 | 6908 | |
| D | GOODRICH CORP | COM | 38238810 | 2824 | 40000 SH | SHARED | 04 | 40000 | |
| D | GOODRICH CORP | COM | 38238810 | 17009 | 240900 SH | SHARED | 05 | 240900 | |
| D | GOODRICH CORP | COM | 38238810 | 84 | 1200 SH | SHARED | 06 | | 1200 |
| D | GOODRICH CORP | COM | 38238810 | 56930 | 806273 SH | SHARED | 10 | 771173 | 35100 |
| D | GOODRICH CORP | COM | 38238810 | 5 | 75 SH | SHR/OTHR | 20 | | 75 |
| D | GOODRICH CORP | COM | 38238810 | 324 | 4600 SH | SHARED | 22 | 2400 | 2200 |
| D | GOODRICH CORP | COM | 38238810 | 1195 | 16933 SH | SHARED | 23 | 16933 | |
| D | GOODRICH CORP | COM | 38238810 | 420 | 5950 SH | SHR/OTHR | 23 | | 5950 |
| D | GOODRICH CORP | COM | 38238810 | 70 | 1000 SH | SHARED | 24 | 1000 | |
| D | GOODMAN GLOBAL INC | COM | 38239A10 | 19 | 811 SH | SHARED | | 811 | |
| D | GOODRICH PETE CORP | NOTE 3.250%12/0 | 382410AB | 4689 | 5840000 PRN | SHARED | 02 | 5840000 | |
| D | GOODRICH PETE CORP | COM NEW | 38241040 | 19 | 869 SH | SHARED | | 869 | |
| D | GOODRICH PETE CORP | COM NEW | 38241040 | 10 | 450 SH | SHARED | 02 | 450 | |
| D | GOODRICH PETE CORP | COM NEW | 38241040 | 4 | 200 SH | SHARED | 10 | 200 | |
| D | GOODYEAR TIRE & RUBR CO | COM | 38255010 | 26202 | 928507 SH | SHARED | | 900617 | 27890 |
| D | GOODYEAR TIRE & RUBR CO | COM | 38255010 | 1298 | 46010 SH | SHARED | 01 | 45150 | 860 |
| D | GOODYEAR TIRE & RUBR CO | COM | 38255010 | 8162 | 289247 SH | SHARED | 02 | 289247 | |
| D | GOODYEAR TIRE & RUBR CO | COM | 38255010 | 33 | 1200 SH | SHARED | 06 | | 1200 |
| D | GOODYEAR TIRE & RUBR CO | COM | 38255010 | 8468 | 300090 SH | SHARED | 10 | 300090 | |
| D | GOODYEAR TIRE & RUBR CO | COM | 38255010 | 56 | 2000 SH | SHR/OTHR | 23 | | 2000 |
| D | GOOGLE INC | CL A | 38259P50 | 246635 | 356677 SH | SHARED | | 349952 | 6725 |
| D | GOOGLE INC | CL A | 38259P50 | 20640 | 29850 SH | SHARED | 01 | 29260 | 590 |
| D | GOOGLE INC | CL A | 38259P50 | 335 | 485 SH | SHR/OTHR | 01 | | 485 |
| D | GOOGLE INC | CL A | 38259P50 | 2967 | 4292 SH | SHARED | 02 | 4292 | |
| D | GOOGLE INC | CL A | 38259P50 | 20260 | 29300 SH | SHARED | 04 | 29300 | |
| D | GOOGLE INC | CL A | 38259P50 | 17349 | 25090 SH | SHARED | 05 | 25090 | |
| D | GOOGLE INC | CL A | 38259P50 | 6735 | 9740 SH | SHARED | 06 | | 9740 |
| D | GOOGLE INC | CL A | 38259P50 | 300815 | 435032 SH | SHARED | 10 | 426712 | 8320 |
| D | GOOGLE INC | CL A | 38259P50 | 4090 | 5915 SH | SHARED | 14 | | 5915 |
| D | GOOGLE INC | CL A | 38259P50 | 6914 | 10000 SH | SHARED | 15 | | 10000 |
| D | GOOGLE INC | CL A | 38259P50 | 102 | 148 SH | SHARED | 21 | | 148 |
| D | GOOGLE INC | CL A | 38259P50 | 6 | 10 SH | SHARED | 23 | | 10 |
| D | GOOGLE INC | CL A | 38259P50 | 172 | 250 SH | SHR/OTHR | 23 | | 250 |
| D | GOOGLE INC | CL A | 38259P50 | 93 | 135 SH | SHARED | 24 | 135 | |
| D | GORMAN RUPP CO | COM | 38308210 | 62 | 1988 SH | SHARED | | 1988 | |
| D | GOTTSCHALKS INC | COM | 38348510 | 3 | 1116 SH | SHARED | | 1116 | |
| D | GRACE W R & CO DEL NEW | COM | 38388F10 | 7657 | 292506 SH | SHARED | | 292506 | |
| D | GRACE W R & CO DEL NEW | COM | 38388F10 | 212 | 8125 SH | SHARED | 01 | 7675 | 450 |
| D | GRACE W R & CO DEL NEW | COM | 38388F10 | 824 | 31500 SH | SHARED | 10 | 31500 | |
| D | GRACO INC | COM | 38410910 | 607 | 16299 SH | SHARED | | 16299 | |
| D | GRACO INC | COM | 38410910 | 732 | 19650 SH | SHARED | 01 | | 19650 |
| D | GRACO INC | COM | 38410910 | 464 | 12479 SH | SHARED | 02 | 12479 | |
| D | GRACO INC | COM | 38410910 | 749 | 20125 SH | SHARED | 10 | 20125 | |
| D | GRAFTECH INTL LTD | DBCV 1.625% 1/1 | 384313AB | 1062 | 900000 PRN | SHARED | | 900000 | |
| D | GRAFTECH INTL LTD | COM | 38431310 | 27 | 1550 SH | SHARED | | | 1550 |
| D | GRAFTECH INTL LTD | COM | 38431310 | 315 | 17794 SH | SHARED | | 17794 | |
| D | GRAFTECH INTL LTD | COM | 38431310 | 2236 | 125990 SH | SHARED | 01 | 119640 | 6350 |
| D | GRAFTECH INTL LTD | COM | 38431310 | 2254 | 127000 SH | SHR/OTHR | 01 | | 127000 |
| D | GRAFTECH INTL LTD | COM | 38431310 | 11207 | 631424 SH | SHARED | 04 | 631424 | |
| D | GRAFTECH INTL LTD | COM | 38431310 | 12092 | 681283 SH | SHARED | 05 | 681283 | |
| D | GRAFTECH INTL LTD | COM | 38431310 | 447 | 25221 SH | SHARED | 06 | | 25221 |
| D | GRAFTECH INTL LTD | COM | 38431310 | 4991 | 281220 SH | SHARED | 10 | 281220 | |
| D | GRAHAM CORP | COM | 38455610 | 496 | 9480 SH | SHARED | | 9480 | |
| D | GRAHAM CORP | COM | 38455610 | 5 | 100 SH | SHARED | 01 | | 100 |
| D | GRAINGER W W INC | COM | 38480210 | 6486 | 74113 SH | SHARED | | 74113 | |
| D | GRAINGER W W INC | COM | 38480210 | 1180 | 13494 SH | SHARED | 01 | 11394 | 2100 |
| D | GRAINGER W W INC | COM | 38480210 | 35 | 400 SH | SHR/OTHR | 01 | | 400 |
| D | GRAINGER W W INC | COM | 38480210 | 459 | 5246 SH | SHARED | 02 | 5246 | |
| D | GRAINGER W W INC | COM | 38480210 | 72 | 830 SH | SHARED | 06 | | 830 |
| D | GRAINGER W W INC | COM | 38480210 | 5208 | 59508 SH | SHARED | 10 | 58608 | 900 |
| D | GRAINGER W W INC | COM | 38480210 | 240 | 2753 SH | SHARED | 14 | | 2753 |
| D | GRAINGER W W INC | COM | 38480210 | 303 | 3473 SH | SHARED | 20 | 423 | 3050 |
| D | GRAINGER W W INC | COM | 38480210 | 717 | 8200 SH | SHR/OTHR | 20 | | 8200 |
| D | GRAINGER W W INC | COM | 38480210 | 85 | 975 SH | SHR/OTHR | 23 | | 975 |

| Flag | Issuer | Class | CUSIP | Value | Amount | Type | Discretion | Mgr | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|
| D | GRAMERCY CAP CORP | COM | 38487110 | 1364 | 56120 | SH | SHARED | | 56120 | |
| D | GRAMERCY CAP CORP | COM | 38487110 | 296 | 12200 | SH | SHARED | 10 | 12200 | |
| D | GRAMERCY CAP CORP | COM | 38487110 | 5333 | 219400 | SH | SHARED | 11 | | 219400 |
| D | GRANAHAN MCCOURT ACQ CORP | COM | 38503410 | 1987 | 255776 | SH | SHARED | | 255776 | |
| D | GRANAHAN MCCOURT ACQ CORP | UNIT 10/18/2010 | 38503420 | 23977 | 289500 | SH | SHARED | 02 | 289500 | |
| D | GRANITE CITY FOOD & BREWERY | COM | 38724Q10 | 0 | 358 | SH | SHARED | | 358 | |
| D | GRANITE CONSTR INC | COM | 38732810 | 1674 | 46292 | SH | SHARED | | 46292 | |
| D | GRANITE CONSTR INC | COM | 38732810 | 569 | 15750 | SH | SHARED | 01 | 4800 | 10950 |
| D | GRANITE CONSTR INC | COM | 38732810 | 84 | 2342 | SH | SHARED | 02 | 2342 | |
| D | GRANITE CONSTR INC | COM | 38732810 | 11336 | 313347 | SH | SHARED | 10 | 313347 | |
| D | GRANITE CONSTR INC | COM | 38732810 | 30 | 838 | SH | SHARED | 21 | | 838 |
| D | GRANT PRIDECO INC | COM | 38821G10 | 18115 | 326344 | SH | SHARED | | 326344 | |
| D | GRANT PRIDECO INC | COM | 38821G10 | 12256 | 220796 | SH | SHARED | 01 | 177516 | 43280 |
| D | GRANT PRIDECO INC | COM | 38821G10 | 223 | 4025 | SH | SHR/OTHR | 01 | 4025 | |
| D | GRANT PRIDECO INC | COM | 38821G10 | 596 | 10750 | SH | SHARED | 02 | 10750 | |
| D | GRANT PRIDECO INC | COM | 38821G10 | 5 | 100 | SH | SHARED | 05 | 100 | |
| D | GRANT PRIDECO INC | COM | 38821G10 | 55 | 1000 | SH | SHARED | 06 | | 1000 |
| D | GRANT PRIDECO INC | COM | 38821G10 | 1915 | 34500 | SH | SHARED | 10 | 34500 | |
| D | GRANT PRIDECO INC | COM | 38821G10 | 431 | 7770 | SH | SHARED | 14 | | 7770 |
| D | GRANT PRIDECO INC | COM | 38821G10 | 24 | 450 | SH | SHARED | 20 | 450 | |
| D | GRANT PRIDECO INC | COM | 38821G10 | 16 | 295 | SH | SHR/OTHR | 21 | | 295 |
| D | GRANT PRIDECO INC | COM | 38821G10 | 11 | 200 | SH | SHARED | 22 | 200 | |
| D | GRAPHIC PACKAGING CORP DEL | COM | 38868810 | 1741 | 472033 | SH | SHARED | | 472033 | |
| D | GRAVITY CO LTD | SPONSORED ADR | 38911N10 | 12 | 3967 | SH | SHARED | | 3967 | |
| D | GRAY TELEVISION INC | COM | 38937510 | 2 | 314 | SH | SHARED | | 314 | |
| D | GRAY TELEVISION INC | COM | 38937510 | 14 | 1825 | SH | SHARED | 02 | 1825 | |
| D | GRAY TELEVISION INC | CL A | 38937520 | 0 | 50 | SH | SHARED | 02 | 50 | |
| D | GREAT ATLANTIC & PAC TEA INC | COM | 39006410 | 3536 | 112868 | SH | SHARED | | 112868 | |
| D | GREAT ATLANTIC & PAC TEA INC | COM | 39006410 | 363 | 11600 | SH | SHARED | 10 | 11600 | |
| D | GREAT BASIN GOLD LTD | COM | 39012410 | 487 | 183200 | SH | SHARED | 04 | 183200 | |
| D | GREAT BASIN GOLD LTD | COM | 39012410 | 6472 | 2433100 | SH | SHARED | 10 | 2433100 | |
| D | GREAT FLA BK MIAMI LAKES FLA | CL A | 39052810 | 356 | 32776 | SH | SHARED | | 32776 | |
| D | GREAT LAKES DREDGE & DOCK CO | COM | 39060710 | 95 | 10925 | SH | SHARED | | 10925 | |
| D | GREAT SOUTHN BANCORP INC | COM | 39090510 | 6 | 308 | SH | SHARED | | 308 | |
| D | GREAT SOUTHN BANCORP INC | COM | 39090510 | 81 | 3700 | SH | SHARED | 10 | 3700 | |
| D | GREAT LAKES BANCORP INC NEW | COM | 39091410 | 11 | 881 | SH | SHARED | | 881 | |
| D | GREAT NORTHN IRON ORE PPTYS | CTFS BEN INT | 39106410 | 6 | 54 | SH | SHARED | | 54 | |
| D | GREAT PLAINS ENERGY INC | COM | 39116410 | 427 | 14597 | SH | SHARED | | 14597 | |
| D | GREAT PLAINS ENERGY INC | COM | 39116410 | 809 | 27600 | SH | SHARED | 01 | 200 | 27400 |
| D | GREAT PLAINS ENERGY INC | COM | 39116410 | 426 | 14532 | SH | SHARED | 02 | 14532 | |
| D | GREAT PLAINS ENERGY INC | COM | 39116410 | 257 | 8780 | SH | SHARED | 10 | 8780 | |
| D | GREAT PLAINS ENERGY INC | COM | 39116410 | 61 | 2100 | SH | SHARED | 20 | | 2100 |
| D | GREAT PLAINS ENERGY INC | COM | 39116410 | 73 | 2500 | SH | SHARED | 21 | | 2500 |
| D | GREAT WOLF RESORTS INC | COM | 39152310 | 4 | 500 | SH | SHARED | | 500 | |
| D | GREAT WOLF RESORTS INC | COM | 39152310 | 36 | 3700 | SH | SHARED | 02 | | 3700 |
| D | GREAT WOLF RESORTS INC | COM | 39152310 | 104 | 10700 | SH | SHARED | 10 | 10700 | |
| D | GREATBATCH INC | SDCV 2.250% 6/1 | 39153LAB | 13020 | 15300000 | PRN | SHARED | | 5300000 | |
| D | GREATBATCH INC | SDCV 2.250% 6/1 | 39153LAB | 851 | 1000000 | PRN | SHARED | 02 | 1000000 | |
| D | GREATBATCH INC | COM | 39153L10 | 156 | 7850 | SH | SHARED | 02 | 7850 | |
| D | GREATER CHINA FD INC | COM | 39167B10 | 42 | 1720 | SH | SHARED | | 1720 | |
| D | GREATER COMMUNITY BANCORP | COM | 39167M10 | 3 | 205 | SH | SHARED | | 205 | |
| D | GREEN MTN COFFEE ROASTERS IN | COM | 39312210 | 211 | 5205 | SH | SHARED | | 5205 | |
| D | GREEN MTN COFFEE ROASTERS IN | COM | 39312210 | 122 | 3000 | SH | SHARED | 01 | 3000 | |
| D | GREEN MTN COFFEE ROASTERS IN | COM | 39312210 | 2165 | 53200 | SH | SHARED | 01 | 53200 | |
| D | GREEN PLAINS RENEWABLE ENERG | COM | 39322210 | 2 | 168 | SH | SHARED | | 168 | |
| D | GREENBRIER COS INC | NOTE 2.375% 5/1 | 39365TAQ | 2301 | 3000000 | PRN | SHARED | | 3000000 | |
| D | GREENBRIER COS INC | COM | 39365710 | 155 | 6971 | SH | SHARED | | 6971 | |
| D | GREENBRIER COS INC | COM | 39365710 | 31 | 1400 | SH | SHARED | 01 | 1400 | |
| D | GREENBRIER COS INC | COM | 39365710 | 825 | 37100 | SH | SHARED | 10 | 37100 | |
| D | GREENE COUNTY BANCORP INC | COM | 39435710 | 4 | 396 | SH | SHARED | | 396 | |
| D | GREEN BANKSHARES INC | COM NEW | 39436120 | 2 | 183 | SH | SHARED | | 183 | |
| D | GREEN BANKSHARES INC | COM NEW | 39436120 | 512 | 26700 | SH | SHARED | 10 | 26700 | |
| D | GREENFIELD ONLINE INC | COM | 39515010 | 160 | 11000 | SH | SHARED | | 11000 | |
| D | GREENFIELD ONLINE INC | COM | 39515010 | 35 | 2400 | SH | SHARED | 01 | 2400 | |
| D | GREENFIELD ONLINE INC | COM | 39515010 | 691 | 47300 | SH | SHARED | 10 | 47300 | |
| D | GREENHILL & CO INC | COM | 39525910 | 2542 | 38246 | SH | SHARED | | 38246 | |
| D | GREENHILL & CO INC | COM | 39525910 | 165 | 2495 | SH | SHARED | 01 | 2495 | |
| D | GREENHILL & CO INC | COM | 39525910 | 505 | 7600 | SH | SHARED | 02 | 7600 | |
| D | GREENHILL & CO INC | COM | 39525910 | 204 | 3081 | SH | SHARED | 10 | 3081 | |
| D | GREIF INC | CL A | 39762410 | 1241 | 18995 | SH | SHARED | | 18995 | |
| D | GREIF INC | CL A | 39762410 | 536 | 8200 | SH | SHARED | 01 | 8200 | |
| D | GREIF INC | CL A | 39762410 | 346 | 5300 | SH | SHARED | 02 | 5300 | |
| D | GREIF INC | CL A | 39762410 | 1052 | 16100 | SH | SHARED | 10 | 16100 | |
| D | GREY WOLF INC | NOTE 3.750% 5/0 | 39788BAD | 3316 | 3364000 | PRN | SHARED | 02 | 3364000 | |
| D | GREY WOLF INC | FRNT 4/0 | 39788BAF | 1068 | 1000000 | PRN | SHARED | | 1000000 | |
| D | GREY WOLF INC | COM | 39788810 | 357 | 67057 | SH | SHARED | | 67057 | |
| D | GREY WOLF INC | COM | 39788810 | 212 | 39900 | SH | SHARED | 01 | 39900 | |
| D | GREY WOLF INC | COM | 39788810 | 2604 | 488700 | SH | SHARED | 10 | 488700 | |
| D | GRIFFIN LD & NURSERIES INC | CL A | 39823110 | 2 | 70 | SH | SHARED | | 70 | |
| D | GRIFFON CORP | NOTE 4.000% 7/1 | 398433AC | 2523 | 2773000 | PRN | SHARED | | 2773000 | |
| D | GRIFFON CORP | NOTE 4.000% 7/1 | 398433AC | 4754 | 5225000 | PRN | SHARED | 02 | 5225000 | |
| D | GRIFFON CORP | COM | 39843310 | 26 | 2143 | SH | SHARED | 02 | 2143 | |
| D | GRIFFON CORP | COM | 39843310 | 7 | 585 | SH | SHARED | 01 | 585 | |
| D | GRIFFON CORP | COM | 39843310 | 95 | 7700 | SH | SHARED | 10 | 7700 | |
| D | GRILL CONCEPTS INC | COM NEW | 39850220 | 0 | 190 | SH | SHARED | | 190 | |
| D | GROUP 1 AUTOMOTIVE INC | FRNT 2.250% 6/1 | 398905AE | 12578 | 19000000 | PRN | SHARED | | 9000000 | |
| D | GROUP 1 AUTOMOTIVE INC | COM | 39890510 | 171 | 7200 | SH | SHARED | | 7200 | |
| D | GROUP 1 AUTOMOTIVE INC | COM | 39890510 | 193 | 8160 | SH | SHARED | 10 | 8160 | |
| D | GROUPE CGI INC | CL A SUB VTG | 39945C10 | 668 | 57419 | SH | SHARED | | 57419 | |
| D | GROUPE CGI INC | CL A SUB VTG | 39945C10 | 10 | 934 | SH | SHARED | 01 | 934 | |
| D | GROUPE CGI INC | CL A SUB VTG | 39945C10 | 46 | 4000 | SH | SHARED | 06 | | 4000 |
| D | GROUPE CGI INC | CL A SUB VTG | 39945C10 | 71 | 6100 | SH | SHARED | 10 | 6100 | |
| D | GROUPE CGI INC | CL A SUB VTG | 39945C10 | 314 | 27000 | SH | SHARED | 14 | | 27000 |
| D | GRUPO FINANCIERO GALICIA S A | SP ADR 10 SH B | 39990910 | 4411 | 582000 | SH | SHARED | | 582000 | |
| D | GRUPO FINANCIERO GALICIA S A | SP ADR 10 SH B | 39990910 | 203 | 26800 | SH | SHARED | | 26800 | |
| D | GRUBB & ELLIS CO | COM PAR $0.01 | 40009520 | 4 | 746 | SH | SHARED | | 746 | |
| D | GRUBB & ELLIS CO | COM PAR $0.01 | 40009520 | 4595 | 716968 | SH | SHARED | 02 | 716968 | |
| D | GRUBB&ELLIS RLTY ADVISORS IN | COM | 40009610 | 4296 | 722111 | SH | SHARED | | 722111 | |
| D | GRUBB&ELLIS RLTY ADVISORS IN | UNIT 02/27/2010 | 40009620 | 1018 | 167000 | SH | SHR/OTHR | 21 | | 167000 |
| D | GRUMA SAB DE CV | ADR CL B | 40013130 | 2 | 200 | SH | SHARED | | 200 | |
| D | GRUPO CASA SABA S A DE C V | SPONSORED ADR | 40048910 | 222 | 5622 | SH | SHARED | | 5622 | |
| D | GRUPO RADIO CENTRO S A DE C | SPONSORED ADR | 40049C10 | 12 | 1021 | SH | SHARED | | 1021 | |
| D | GRUPO TELEVISA SA DE CV | SP ADR REP ORD | 40049V20 | 178 | 7500 | SH | SHARED | | 7500 | |
| D | GRUPO TELEVISA SA DE CV | SP ADR REP ORD | 40049V20 | 34197 | 1438682 | SH | SHARED | | 485282 | 953400 |
| D | GRUPO TELEVISA SA DE CV | SP ADR REP ORD | 40049V20 | 4215 | 177350 | SH | SHARED | 01 | 177350 | |
| D | GRUPO TELEVISA SA DE CV | SP ADR REP ORD | 40049V20 | 8205 | 345200 | SH | SHARED | 04 | 345200 | |
| D | GRUPO TELEVISA SA DE CV | SP ADR REP ORD | 40049V20 | 110635 | 4654400 | SH | SHARED | 10 | 4102600 | 551800 |
| D | GRUPO TELEVISA SA DE CV | SP ADR REP ORD | 40049V20 | 601 | 25300 | SH | SHARED | 15 | 25300 | |
| D | GRUPO TELEVISA SA DE CV | SP ADR REP ORD | 40049V20 | 106 | 4500 | SH | SHARED | 23 | | 4500 |
| D | GRUPO TELEVISA SA DE CV | SP ADR REP ORD | 40049V20 | 2460 | 103500 | SH | SHARED | 24 | 103500 | |
| D | GRUPO SIMEC S A B DE C V | ADR | 40049110 | 138 | 13422 | SH | SHARED | | 13422 | |
| D | GRUPO AEROPORTUARIO CTR NORT | SPON ADR | 40050110 | 3 | 141 | SH | SHARED | | 141 | |
| D | GPO AEROPORTUARIO DEL PAC SA | SPON ADR B | 40050610 | 111 | 2500 | SH | SHARED | | | 2500 |
| D | GPO AEROPORTUARIO DEL PAC SA | SPON ADR B | 40050610 | 23493 | 526403 | SH | SHARED | | 526403 | |

| | Issuer | Title of Class | CUSIP | Value | Shares/Prin | SH/PRN | Disc | Mgr | Voting 1 | Voting 2 |
|---|---|---|---|---|---|---|---|---|---|---|
| D | GPO AEROPUERTUARIO DEL PAC SA | SPON ADR B | 40050610 | 11292 | 253033 | SH | SHARED | 01 | 253033 | |
| D | GPO AEROPUERTUARIO DEL PAC SA | SPON ADR B | 40050610 | 3704 | 83000 | SH | SHARED | 04 | 83000 | |
| D | GPO AEROPUERTUARIO DEL PAC SA | SPON ADR B | 40050610 | 11278 | 252700 | SH | SHARED | 10 | 252700 | |
| D | GRUPO AEROPUERTUARIO DEL SURE | SPON ADR SER B | 40051820 | 54 | 883 | SH | SHARED | | 883 | |
| D | GTX INC DEL | COM | 40052810 | 88 | 6200 | SH | SHARED | | 6200 | |
| D | GTX INC DEL | COM | 40052810 | 21 | 1500 | SH | SHARED | 01 | 1500 | |
| D | GTX INC DEL | COM | 40052810 | 407 | 28400 | SH | SHARED | 10 | 28400 | |
| D | GSC ACQUISITION COMPANY | COM | 40053Q10 | 10357 | 1099491 | SH | SHARED | | 1099491 | |
| D | GSC ACQUISITION COMPANY | *W EXP 06/25/201 | 40053Q11 | 72 | 65590 | SH | SHARED | | 65590 | |
| D | GSC ACQUISITION COMPANY | UNIT 99/99/9999 | 40053Q20 | 38 | 3800 | SH | SHARED | | 3800 | |
| D | GUANGSHEN RY LTD | SPONSORED ADR | 40065W10 | 241 | 6781 | SH | SHARED | | 6781 | |
| D | GUARANTY FINL GROUP INC | COM | 40108M10 | 374 | 23434 | SH | SHARED | | 23434 | |
| D | GUARANTY FINL GROUP INC | COM | 40108N10 | 21 | 1320 | SH | SHARED | 01 | | 1320 |
| D | GUARANTY FINL GROUP INC | COM | 40108N10 | 452 | 28300 | SH | SHARED | 02 | 28300 | |
| D | GUARANTY FINL GROUP INC | COM | 40108N10 | 2 | 166 | SH | SHARED | 10 | 166 | |
| D | GUARANTY FINL GROUP INC | COM | 40108N10 | 24 | 1500 | SH | SHARED | 20 | | 1500 |
| D | GUARANTY FINL GROUP INC | COM | 40108N10 | 277 | 17320 | SH | SHR/OTHR | 20 | | 17320 |
| D | GUARANTY FED BANCSHARES INC | COM | 40108N10 | 1 | 64 | SH | SHARED | | 64 | |
| D | GUESS INC | COM | 40161710 | 7112 | 187702 | SH | SHARED | | 187702 | |
| D | GUESS INC | COM | 40161710 | 1644 | 43410 | SH | SHARED | 01 | 24900 | 18510 |
| D | GUESS INC | COM | 40161710 | 1174 | 31000 | SH | SHR/OTHR | 01 | | 31000 |
| D | GUESS INC | COM | 40161710 | 113 | 2990 | SH | SHARED | 02 | 2990 | |
| D | GUESS INC | COM | 40161710 | 70816 | 1869000 | SH | SHARED | 10 | 1858800 | 10200 |
| D | GUIDANCE SOFTWARE INC | COM | 40169210 | 2 | 161 | SH | SHARED | | 161 | |
| D | GULF ISLAND FABRICATION INC | COM | 40230710 | 86 | 2735 | SH | SHARED | | 2735 | |
| D | GULF ISLAND FABRICATION INC | COM | 40230710 | 22 | 700 | SH | SHARED | 01 | 700 | |
| D | GULF ISLAND FABRICATION INC | COM | 40230710 | 180 | 5700 | SH | SHARED | 10 | 5700 | |
| D | GULFMARK OFFSHORE INC | COM | 40262910 | 117 | 2521 | SH | SHARED | | 2521 | |
| D | GULFMARK OFFSHORE INC | COM | 40262910 | 1501 | 32100 | SH | SHARED | 01 | 31200 | 900 |
| D | GULFMARK OFFSHORE INC | COM | 40262910 | 2110 | 45100 | SH | SHARED | 10 | 45100 | |
| D | GULFPORT ENERGY CORP | COM NEW | 40263530 | 296 | 16240 | SH | SHARED | | 16240 | |
| D | GULFPORT ENERGY CORP | COM NEW | 40263530 | 2 | 160 | SH | SHARED | 02 | 160 | |
| D | GULFPORT ENERGY CORP | COM NEW | 40263530 | 45 | 2474 | SH | SHARED | 21 | | 2474 |
| D | GYMBOREE CORP | COM | 40377710 | 745 | 24488 | SH | SHARED | | 24488 | |
| D | GYMBOREE CORP | COM | 40377710 | 30 | 1000 | SH | SHARED | 01 | 1000 | |
| D | GYMBOREE CORP | COM | 40377710 | 197 | 6478 | SH | SHARED | 02 | 6478 | |
| D | GYMBOREE CORP | COM | 40377710 | 337 | 11091 | SH | SHARED | 10 | 11091 | |
| D | GYRODYNE CO AMER INC | COM | 40381040 | 272 | 5936 | SH | SHARED | | 5936 | |
| D | H & E EQUIPMENT SERVICES INC | COM | 40403010 | 64 | 3428 | SH | SHARED | | 3428 | |
| D | HCC INS HLDGS INC | NOTE 1.300% 4/0 | 40413208 | 1025 | 787000 | PRN | SHARED | 02 | 787000 | |
| D | HCC INS HLDGS INC | COM | 40413210 | 1808 | 63060 | SH | SHARED | | 63060 | |
| D | HCC INS HLDGS INC | COM | 40413210 | 1147 | 40000 | SH | SHARED | 01 | 3400 | 36600 |
| D | HCC INS HLDGS INC | COM | 40413210 | 457 | 15942 | SH | SHARED | 02 | 15942 | |
| D | HCC INS HLDGS INC | COM | 40413210 | 10457 | 364619 | SH | SHARED | 10 | 353419 | 11200 |
| D | HCC INS HLDGS INC | COM | 40413210 | 74 | 2593 | SH | SHARED | 21 | 2593 | |
| D | HCC INS HLDGS INC | COM | 40413210 | 111 | 3900 | SH | SHARED | 23 | 3900 | |
| D | HCP INC | COM | 40414L10 | 2078 | 59766 | SH | SHARED | | 59766 | |
| D | HCP INC | COM | 40414L10 | 103 | 2975 | SH | SHARED | 01 | 2975 | |
| D | HCP INC | COM | 40414L10 | 120 | 3473 | SH | SHARED | 02 | 3473 | |
| D | HCP INC | COM | 40414L10 | 4630 | 133150 | SH | SHARED | 10 | 123750 | 9400 |
| D | HCP INC | COM | 40414L10 | 95865 | 2756350 | SH | SHARED | 11 | 1375600 | 1380750 |
| D | HCP INC | COM | 40414L10 | 47 | 1368 | SH | SHARED | 20 | 1368 | |
| D | HCP INC | COM | 40414L10 | 208 | 6000 | SH | SHR/OTHR | 20 | | 6000 |
| D | HCP INC | COM | 40414L10 | 111 | 3200 | SH | SHARED | 21 | 3200 | |
| D | HDFC BANK LTD | ADR REPS 3 SHS | 40415F10 | 5066 | 38842 | SH | SHARED | | 38842 | |
| D | HDFC BANK LTD | ADR REPS 3 SHS | 40415F10 | 456 | 3500 | SH | SHARED | 14 | | 3500 |
| D | HDFC BANK LTD | ADR REPS 3 SHS | 40415F10 | 88 | 680 | SH | SHARED | 21 | 680 | |
| D | HD PARTNERS ACQUISITION CORP | COM | 40415R10 | 3016 | 403300 | SH | SHARED | | 403300 | |
| D | HF FINL CORP | COM | 40417210 | 1 | 96 | SH | SHARED | | 96 | |
| D | HKN INC | COM | 40420R10 | 1 | 179 | SH | SHARED | | 179 | |
| D | HKN INC | COM | 40420R10 | 3 | 408 | SH | SHARED | 02 | 408 | |
| D | HLTH CORPORATION | COM | 40422Y10 | 1400 | 104497 | SH | SHARED | | 104497 | |
| D | HLTH CORPORATION | COM | 40422Y10 | 483 | 36100 | SH | SHARED | 01 | 36100 | |
| D | HLTH CORPORATION | COM | 40422Y10 | 33 | 2500 | SH | SHR/OTHR | 01 | | 2500 |
| D | HLTH CORPORATION | COM | 40422Y10 | 14 | 1095 | SH | SHARED | 02 | 1095 | |
| D | HLTH CORPORATION | COM | 40422Y10 | 22237 | 1659500 | SH | SHARED | 04 | 1659500 | |
| D | HLTH CORPORATION | COM | 40422Y10 | 163 | 12200 | SH | SHARED | 10 | 12200 | |
| D | HMG COURTLAND PPTYS INC | COM | 40423210 | 0 | 12 | SH | SHARED | | 12 | |
| D | HMN FINL INC | COM | 40424G10 | 2 | 91 | SH | SHARED | | 91 | |
| D | HMS HLDGS CORP | COM | 40425L10 | 233 | 7039 | SH | SHARED | | 7039 | |
| D | HMS HLDGS CORP | COM | 40425L10 | 6 | 190 | SH | SHARED | 01 | 190 | |
| D | HMS HLDGS CORP | COM | 40425L10 | 2059 | 62000 | SH | SHARED | 10 | 62000 | |
| D | HMS HLDGS CORP | COM | 40425L10 | 3 | 110 | SH | SHARED | 21 | | 110 |
| D | HNI CORP | COM | 40425110 | 3218 | 91795 | SH | SHARED | | 91795 | |
| D | HNI CORP | COM | 40425110 | 538 | 15350 | SH | SHARED | 01 | 450 | 14900 |
| D | HNI CORP | COM | 40425110 | 452 | 12899 | SH | SHARED | 02 | 12899 | |
| D | HNI CORP | COM | 40425110 | 19500 | 556200 | SH | SHARED | 10 | 556200 | |
| D | HQ SUSTAINABLE MARITIM IND I | COM NEW | 40426A20 | 1 | 120 | SH | SHARED | | 120 | |
| D | HRPT PPTYS TR | COM SH BEN INT | 40426W10 | 9141 | 1182640 | SH | SHARED | | 1182640 | |
| D | HRPT PPTYS TR | COM SH BEN INT | 40426W10 | 202 | 26200 | SH | SHARED | 02 | 26200 | |
| D | HRPT PPTYS TR | COM SH BEN INT | 40426W10 | 85 | 11000 | SH | SHARED | 10 | 11000 | |
| D | HRPT PPTYS TR | COM SH BEN INT | 40426W10 | 59206 | 7659271 | SH | SHARED | 11 | | 7659271 |
| D | HSBC HLDGS PLC | SPON ADR NEW | 40428040 | 25 | 300 | SH | SHARED | | 300 | |
| D | HSBC HLDGS PLC | SPON ADR NEW | 40428040 | 2615 | 31248 | SH | SHARED | | 31248 | |
| D | HSBC HLDGS PLC | SPON ADR NEW | 40428040 | 1454 | 17380 | SH | SHARED | 01 | 11891 | 5489 |
| D | HSBC HLDGS PLC | SPON ADR NEW | 40428040 | 380 | 4543 | SH | SHARED | 20 | 123 | 4420 |
| D | HSBC HLDGS PLC | SPON ADR NEW | 40428040 | 100 | 1200 | SH | SHARED | 23 | 1200 | |
| D | HSBC HLDGS PLC | SPON ADR NEW | 40428040 | 25 | 300 | SH | SHR/OTHR | 23 | | 300 |
| D | HSBC HLDGS PLC | ADR A 1/40PF A | 40428060 | 3481 | 170935 | SH | SHARED | 02 | 170935 | |
| D | HSBC HLDGS PLC | ADR A 1/40PF A | 40428060 | 122 | 6000 | SH | SHARED | 10 | 6000 | |
| D | HSBC HLDGS PLC | ADR A 1/40PF A | 40428060 | 81 | 4000 | SH | SHARED | 22 | | 4000 |
| D | HSW INTERNATIONAL INC | COM | 40431N10 | 697 | 111974 | SH | SHARED | | 111974 | |
| D | HSW INTERNATIONAL INC | COM | 40431N10 | 5809 | 932487 | SH | SHARED | 04 | 932487 | |
| D | HSW INTERNATIONAL INC | COM | 40431N10 | 441 | 70880 | SH | SHARED | 06 | | 70880 |
| D | HABERSHAM BANCORP INC | COM | 40445910 | 0 | 44 | SH | SHARED | | 44 | |
| D | HAEMONETICS CORP | COM | 40502410 | 1006 | 15971 | SH | SHARED | | 15971 | |
| D | HAEMONETICS CORP | COM | 40502410 | 61 | 981 | SH | SHARED | 02 | 981 | |
| D | HAEMONETICS CORP | COM | 40502410 | 132 | 2100 | SH | SHARED | 10 | 2100 | |
| D | HAEMONETICS CORP | COM | 40502410 | 6 | 101 | SH | SHARED | 21 | | 101 |
| D | HAIN CELESTIAL GROUP INC | COM | 40521710 | 64 | 2013 | SH | SHARED | | 2013 | |
| D | HAIN CELESTIAL GROUP INC | COM | 40521710 | 153 | 4800 | SH | SHARED | 01 | 4800 | |
| D | HAIN CELESTIAL GROUP INC | COM | 40521710 | 454 | 14200 | SH | SHARED | 10 | 14200 | |
| D | HALIFAX CORP | COM | 40575210 | 0 | 68 | SH | SHARED | | 68 | |
| D | HALLIBURTON CO | NOTE 3.125% 7/1 | 40621608 | 13412 | 6620000 | PRN | SHARED | 02 | 6620000 | |
| D | HALLIBURTON CO | COM | 40621610 | 404018 | 10657300 | SH | SHARED | | 10551240 | 106060 |
| D | HALLIBURTON CO | COM | 40621610 | 4617 | 121798 | SH | SHARED | 01 | 116653 | 5145 |
| D | HALLIBURTON CO | COM | 40621610 | 108 | 2875 | SH | SHR/OTHR | 01 | | 2875 |
| D | HALLIBURTON CO | COM | 40621610 | 1546 | 40795 | SH | SHARED | 02 | 40795 | |
| D | HALLIBURTON CO | COM | 40621610 | 38589 | 1017930 | SH | SHARED | 04 | 1017930 | |
| D | HALLIBURTON CO | COM | 40621610 | 14 | 392 | SH | SHARED | 05 | 392 | |
| D | HALLIBURTON CO | COM | 40621610 | 49876 | 1315649 | SH | SHARED | 06 | | 1315649 |
| D | HALLIBURTON CO | COM | 40621610 | 19612 | 517331 | SH | SHARED | 10 | 517331 | |
| D | HALLIBURTON CO | COM | 40621610 | 1449 | 38226 | SH | SHARED | 14 | | 38226 |
| D | HALLIBURTON CO | COM | 40621610 | 4772 | 125884 | SH | SHARED | 16 | 125884 | |

| | Name | Class | CUSIP | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | HALLIBURTON CO | COM | 40621610 | 30 | 815 SH | SHARED | 20 | 815 | |
| D | HALLIBURTON CO | COM | 40621610 | 13 | 345 SH | SHR/OTHR | 21 | | 345 |
| D | HALLIBURTON CO | COM | 40621610 | 1562 | 41210 SH | SHARED | 22 | 41210 | |
| D | HALLIBURTON CO | COM | 40621610 | 113 | 3000 SH | SHR/OTHR | 22 | | 3000 |
| D | HALLIBURTON CO | COM | 40621610 | 98 | 2600 SH | SHARED | 23 | 2600 | |
| D | HALLIBURTON CO | COM | 40621610 | 2164 | 57100 SH | SHR/OTHR | 23 | | 57100 |
| D | HALLMARK FINL SVCS INC    EC | COM NEW | 40624Q20 | 96 | 6110 SH | SHARED | | 6110 | |
| D | HALLMARK FINL SVCS INC    EC | COM NEW | 40624Q20 | 23 | 1500 SH | SHARED | 01 | 1500 | |
| D | HALLMARK FINL SVCS INC    EC | COM NEW | 40624Q20 | 567 | 35800 SH | SHARED | 10 | 35800 | |
| D | HALLWOOD GROUP INC | COM PAR $0.10 | 40636440 | 1 | 13 SH | SHARED | | 13 | |
| D | HALOZYME THERAPEUTICS INC | COM | 40637H10 | 2126 | 299091 SH | SHARED | | 299091 | |
| D | HAMPDEN BANCORP INC | COM | 40867E10 | 2 | 281 SH | SHARED | | 281 | |
| D | HAMPTON ROADS BANKSHARES INC | COM | 40932110 | 3 | 247 SH | SHARED | | 247 | |
| D | HANA BIOSCIENCES INC | COM | 40963910 | 0 | 729 SH | SHARED | | 729 | |
| D | HANCOCK HLDG CO | COM | 41012010 | 432 | 11328 SH | SHARED | 02 | 11328 | |
| D | HANCOCK HLDG CO | COM | 41012010 | 1298 | 34000 SH | SHARED | 10 | 34000 | |
| D | HANCOCK JOHN INCOME SECS TR | COM | 41012310 | 12 | 1000 SH | SHARED | 01 | 1000 | |
| D | HANCOCK JOHN PATRIOT PREM II | COM SH BEN INT | 41013T10 | 3168 | 317811 SH | SHARED | | 317811 | |
| D | HANCOCK JOHN TAX-ADV DIV INC | COM | 41013V10 | 208 | 11655 SH | SHARED | | 11655 | |
| D | HANDLEMAN CO DEL | COM | 41025210 | 59 | 34723 SH | SHARED | | 34723 | |
| D | HANESBRANDS INC | COM | 41034510 | 5233 | 192605 SH | SHARED | | 192605 | |
| D | HANESBRANDS INC | COM | 41034510 | 1022 | 37635 SH | SHARED | 01 | 7926 | 29709 |
| D | HANESBRANDS INC | COM | 41034510 | 16 | 593 SH | SHR/OTHR | 01 | | 593 |
| D | HANESBRANDS INC | COM | 41034510 | 829 | 30532 SH | SHARED | 02 | 30532 | |
| D | HANESBRANDS INC | COM | 41034510 | 2 | 75 SH | SHARED | 05 | 75 | |
| D | HANESBRANDS INC | COM | 41034510 | 8308 | 305800 SH | SHARED | 10 | 305800 | |
| D | HANESBRANDS INC | COM | 41034510 | 40 | 1500 SH | SHARED | 14 | | 1500 |
| D | HANESBRANDS INC | COM | 41034510 | 59 | 2200 SH | SHARED | 20 | 2200 | |
| D | HANESBRANDS INC | COM | 41034510 | 16 | 600 SH | SHR/OTHR | 20 | | 600 |
| D | HANESBRANDS INC | COM | 41034510 | 5 | 186 SH | SHARED | 23 | 186 | |
| D | HANESBRANDS INC | COM | 41034510 | 36 | 1350 SH | SHR/OTHR | 23 | | 1350 |
| D | HANGER ORTHOPEDIC GROUP INC | COM NEW | 41043F20 | 5 | 521 SH | SHARED | | 521 | |
| D | HANGER ORTHOPEDIC GROUP INC | COM NEW | 41043F20 | 333 | 30300 SH | SHARED | 01 | 30300 | |
| D | HANGER ORTHOPEDIC GROUP INC | COM NEW | 41043F20 | 31 | 2900 SH | SHARED | 02 | 2900 | |
| D | HANMI FINL CORP | COM | 41049510 | 73 | 8571 SH | SHARED | | 8571 | |
| D | HANMI FINL CORP | COM | 41049510 | 85 | 9900 SH | SHARED | 10 | 9900 | |
| D | HANOVER CAP MTG HLDGS INC | COM | 41076110 | 0 | 194 SH | SHARED | | 194 | |
| D | HANOVER COMPRESSOR CO | NOTE    4.750% 3/1 | 41076BAC | 1579 | 1600000 PRN | SHARED | | 1600000 | |
| D | HANOVER INS GROUP INC | COM | 41086710 | 6075 | 132651 SH | SHARED | | 132651 | |
| D | HANOVER INS GROUP INC | COM | 41086710 | 1770 | 38660 SH | SHARED | 01 | 21605 | 17055 |
| D | HANOVER INS GROUP INC | COM | 41086710 | 544 | 11909 SH | SHARED | 02 | 11909 | |
| D | HANOVER INS GROUP INC | COM | 41086710 | 24782 | 541100 SH | SHARED | 10 | 541100 | |
| D | HANSEN MEDICAL INC | COM | 41130710 | 157 | 5260 SH | SHARED | | 5260 | |
| D | HANSEN NAT CORP | COM | 41131010 | 11855 | 267686 SH | SHARED | | 267686 | |
| D | HANSEN NAT CORP | COM | 41131010 | 1098 | 24800 SH | SHARED | 01 | 7000 | 17800 |
| D | HANSEN NAT CORP | COM | 41131010 | 17 | 400 SH | SHR/OTHR | 01 | | 400 |
| D | HANSEN NAT CORP | COM | 41131010 | 125 | 2840 SH | SHARED | 02 | 2840 | |
| D | HANSEN NAT CORP | COM | 41131010 | 38414 | 867350 SH | SHARED | 04 | 867350 | |
| D | HANSEN NAT CORP | COM | 41131010 | 690 | 15600 SH | SHARED | 05 | 15600 | |
| D | HANSEN NAT CORP | COM | 41131010 | 15747 | 355550 SH | SHARED | 06 | | 355550 |
| D | HANSEN NAT CORP | COM | 41131010 | 232 | 5243 SH | SHARED | 10 | 5243 | |
| D | HANSEN NAT CORP | COM | 41131010 | 3838 | 86667 SH | SHARED | 16 | 86667 | |
| D | HANSEN NAT CORP | COM | 41131010 | 35 | 800 SH | SHARED | 20 | 800 | |
| D | HARBIN ELECTRIC INC | COM | 41145W10 | 20 | 802 SH | SHARED | | 802 | |
| D | HARBIN ELECTRIC INC | COM | 41145W10 | 3 | 119 SH | SHARED | 02 | 119 | |
| D | HARDINGE INC | COM | 41232430 | 644 | 38423 SH | SHARED | | 38423 | |
| D | HARDINGE INC | COM | 41232430 | 224 | 13400 SH | SHARED | 10 | 13400 | |
| D | HARLEY DAVIDSON INC | COM | 41282210 | 106 | 2270 SH | SHARED | | | 2270 |
| D | HARLEY DAVIDSON INC | COM | 41282210 | 49541 | 1060610 SH | SHARED | | 763110 | 297500 |
| D | HARLEY DAVIDSON INC | COM | 41282210 | 1907 | 40834 SH | SHARED | 01 | 40534 | 300 |
| D | HARLEY DAVIDSON INC | COM | 41282210 | 65 | 1400 SH | SHR/OTHR | 01 | | 1400 |
| D | HARLEY DAVIDSON INC | COM | 41282210 | 1845 | 39509 SH | SHARED | 02 | 39509 | |
| D | HARLEY DAVIDSON INC | COM | 41282210 | 6 | 130 SH | SHARED | 05 | 130 | |
| D | HARLEY DAVIDSON INC | COM | 41282210 | 140 | 3002 SH | SHARED | 06 | | 3002 |
| D | HARLEY DAVIDSON INC | COM | 41282210 | 76975 | 1647943 SH | SHARED | 10 | 1449443 | 198500 |
| D | HARLEY DAVIDSON INC | COM | 41282210 | 102 | 2200 SH | SHARED | 14 | | 2200 |
| D | HARLEY DAVIDSON INC | COM | 41282210 | 2586 | 55370 SH | SHARED | 15 | 55370 | |
| D | HARLEY DAVIDSON INC | COM | 41282210 | 23 | 500 SH | SHARED | 20 | 500 | |
| D | HARLEY DAVIDSON INC | COM | 41282210 | 3 | 75 SH | SHARED | 21 | 75 | |
| D | HARLEY DAVIDSON INC | COM | 41282210 | 177 | 3800 SH | SHR/OTHR | 23 | | 3800 |
| D | HARLEY DAVIDSON INC | COM | 41282210 | 529 | 11345 SH | SHARED | 24 | 11345 | |
| D | HARLEYSVILLE GROUP INC | COM | 41282410 | 227 | 6441 SH | SHARED | | 6441 | |
| D | HARLEYSVILLE GROUP INC | COM | 41282410 | 3 | 100 SH | SHARED | 01 | 100 | |
| D | HARLEYSVILLE GROUP INC | COM | 41282410 | 301 | 8525 SH | SHARED | 02 | 8525 | |
| D | HARLEYSVILLE GROUP INC | COM | 41282410 | 229 | 6500 SH | SHARED | 10 | 6500 | |
| D | HARLEYSVILLE NATL CORP PA | COM | 41285010 | 7 | 481 SH | SHARED | | 481 | |
| D | HARLEYSVILLE NATL CORP PA | COM | 41285010 | 141 | 9700 SH | SHARED | 02 | 9700 | |
| D | HARLEYSVILLE NATL CORP PA | COM | 41285010 | 118 | 8101 SH | SHARED | 10 | 8101 | |
| D | HARLEYSVILLE SVGS FINL CORP | COM | 41286510 | 1 | 88 SH | SHARED | | 88 | |
| D | HARMAN INTL INDS INC | COM | 41308610 | 7210 | 97828 SH | SHARED | | 97828 | |
| D | HARMAN INTL INDS INC | COM | 41308610 | 740 | 10050 SH | SHARED | 01 | 10050 | |
| D | HARMAN INTL INDS INC | COM | 41308610 | 84 | 1149 SH | SHARED | 02 | 1149 | |
| D | HARMAN INTL INDS INC | COM | 41308610 | 47 | 650 SH | SHARED | 06 | | 650 |
| D | HARMAN INTL INDS INC | COM | 41308610 | 9449 | 128200 SH | SHARED | 10 | 128200 | |
| D | HARMAN INTL INDS INC | COM | 41308610 | 0 | 13 SH | SHARED | 14 | | 13 |
| D | HARMONIC INC | COM | 41316010 | 440 | 42031 SH | SHARED | | 42031 | |
| D | HARMONIC INC | COM | 41316010 | 18 | 1800 SH | SHARED | 01 | 1800 | |
| D | HARMONY GOLD MNG LTD | SPONSORED ADR | 41321630 | 3222 | 312543 SH | SHARED | | 312543 | |
| D | HARMONY GOLD MNG LTD | SPONSORED ADR | 41321630 | 2279 | 221100 SH | SHARED | 02 | 221100 | |
| D | HARRAHS ENTMT INC | COM | 41361910 | 386301 | 4352691 SH | SHARED | | 4352691 | |
| D | HARRAHS ENTMT INC | COM | 41361910 | 2089 | 23541 SH | SHARED | 01 | 23541 | |
| D | HARRAHS ENTMT INC | COM | 41361910 | 247 | 2790 SH | SHARED | 02 | 2790 | |
| D | HARRAHS ENTMT INC | COM | 41361910 | 9 | 110 SH | SHARED | 05 | 110 | |
| D | HARRAHS ENTMT INC | COM | 41361910 | 138 | 1560 SH | SHARED | 06 | | 1560 |
| D | HARRAHS ENTMT INC | COM | 41361910 | 7211 | 81258 SH | SHARED | 10 | 81258 | |
| D | HARRINGTON WEST FINL GROUP I | COM | 41383L10 | 1 | 118 SH | SHARED | | 118 | |
| D | HARRIS & HARRIS GROUP INC | COM | 41383310 | 528 | 60137 SH | SHARED | | 60137 | |
| D | HARRIS & HARRIS GROUP INC | COM | 41383310 | 19 | 2200 SH | SHARED | 01 | 2200 | |
| D | HARRIS & HARRIS GROUP INC | COM | 41383310 | 26 | 3000 SH | SHARED | 02 | 3000 | |
| D | HARRIS CORP DEL | COM | 41387510 | 5592 | 89227 SH | SHARED | | 89227 | |
| D | HARRIS CORP DEL | COM | 41387510 | 3338 | 53265 SH | SHARED | 01 | 10770 | 42495 |
| D | HARRIS CORP DEL | COM | 41387510 | 839 | 13392 SH | SHARED | 02 | 13392 | |
| D | HARRIS CORP DEL | COM | 41387510 | 87 | 1400 SH | SHARED | 06 | | 1400 |
| D | HARRIS CORP DEL | COM | 41387510 | 6408 | 102240 SH | SHARED | 10 | 102240 | |
| D | HARRIS CORP DEL | COM | 41387510 | 53 | 850 SH | SHARED | 20 | 630 | 220 |
| D | HARRIS CORP DEL | COM | 41387510 | 12 | 195 SH | SHARED | 21 | | 195 |
| D | HARRIS CORP DEL | COM | 41387510 | 452 | 7225 SH | SHARED | 23 | 4450 | 2775 |
| D | HARRIS INTERACTIVE INC | COM | 41454910 | 47 | 11144 SH | SHARED | | 11144 | |
| D | HARRIS INTERACTIVE INC | COM | 41454910 | 14 | 3500 SH | SHARED | 02 | 3500 | |
| D | HARRIS STRATEX NTWRKS INC | CL A | 41457P10 | 0 | 21 SH | SHARED | | 21 | |
| D | HARSCO CORP | COM | 41586410 | 35 | 561 SH | SHARED | | | 561 |
| D | HARSCO CORP | COM | 41586410 | 3634 | 56724 SH | SHARED | | 54824 | 1900 |
| D | HARSCO CORP | COM | 41586410 | 3557 | 55520 SH | SHARED | 01 | 31120 | 24400 |
| D | HARSCO CORP | COM | 41586410 | 468 | 7320 SH | SHARED | 02 | 7320 | |

```
D HARSCO CORP                      COM          41586410      38     600 SH     SHARED   06              600
D HARSCO CORP                      COM          41586410   34469  538000 SH     SHARED   10    537100     900
D HARSCO CORP                      COM          41586410       7     110 SH     SHARED   21              110
D HARRY WINSTON DIAMOND CORP       COM          4158TB10    1089   33357 SH     SHARED         33357
D HARRY WINSTON DIAMOND CORP       COM          4158TB10     783   24000 SH     SHARED   04    24000
D HARRY WINSTON DIAMOND CORP       COM          4158TB10       3     100 SH     SHARED   10      100
D HARRY WINSTON DIAMOND CORP       COM          4158TB10      48    1500 SH     SHARED   14             1500
D HARTE-HANKS INC                  COM          41619610     470   27210 SH     SHARED         27210
D HARTE-HANKS INC                  COM          41619610     301   17450 SH     SHARED   01          17450
D HARTE-HANKS INC                  COM          41619610      54    3145 SH     SHARED   02     3145
D HARTE-HANKS INC                  COM          41619610     328   19000 SH     SHARED   10    19000
D HARTFORD FINL SVCS GROUP INC     COM          41651510   51944  595761 SH     SHARED        587661     8100
D HARTFORD FINL SVCS GROUP INC     COM          41651510    5245   60163 SH     SHARED   01    56547     3616
D HARTFORD FINL SVCS GROUP INC     COM          41651510      34     400 SH     SHR/OTHR 01              400
D HARTFORD FINL SVCS GROUP INC     COM          41651510     892   10234 SH     SHARED   02    10234
D HARTFORD FINL SVCS GROUP INC     COM          41651510    6064   69550 SH     SHARED   04    69550
D HARTFORD FINL SVCS GROUP INC     COM          41651510    2132   24460 SH     SHARED   05    24460
D HARTFORD FINL SVCS GROUP INC     COM          41651510   52977  607605 SH     SHARED   06             607605
D HARTFORD FINL SVCS GROUP INC     COM          41651510  204898 2350023 SH     SHARED   10   2284923    65100
D HARTFORD FINL SVCS GROUP INC     COM          41651510     496    5700 SH     SHARED   14     5700     5700
D HARTFORD FINL SVCS GROUP INC     COM          41651510    1827   20960 SH     SHARED   16    20960
D HARTFORD FINL SVCS GROUP INC     COM          41651510      43     495 SH     SHARED   20      360      135
D HARTFORD FINL SVCS GROUP INC     COM          41651510     139    1600 SH     SHARED   22             1600
D HARTFORD FINL SVCS GROUP INC     COM          41651510     221    2538 SH     SHARED   23     2538
D HARTFORD FINL SVCS GROUP INC     COM          41651510    1004   11522 SH     SHR/OTHR 23            11522
D HARVARD BIOSCIENCE INC           COM          41690610       2     636 SH     SHARED          636
D HARTMARX CORP                    COM          41711910     313   91843 SH     SHARED         91843
D HARVEST ENERGY TR                TRUST UNIT   41752210   19628  945041 SH     SHARED        945041
D HARVEST ENERGY TR                TRUST UNIT   41752210   23239 1118900 SH     SHARED   10   1118900
D HARVEST ENERGY TR                TRUST UNIT   41752210     191    9200 SH     SHARED   14             9200
D HARVEST ENERGY TR                TRUST UNIT   41752210      24    1200 SH     SHR/OTHR 23            1200
D HARVEST NATURAL RESOURCES IN     COM          41754V10       7     600 SH     SHARED          600
D HARVEST NATURAL RESOURCES IN     COM          41754V10      10     850 SH     SHARED   02      850
D HARVEST NATURAL RESOURCES IN     COM          41754V10      56    4500 SH     SHARED   10     4500
D HASBRO INC                       COM          41805610    6901  269793 SH     SHARED        251393    18400
D HASBRO INC                       COM          41805610    1001   39144 SH     SHARED   01    39144
D HASBRO INC                       COM          41805610    3705  144845 SH     SHARED   02   144845
D HASBRO INC                       COM          41805610      20     790 SH     SHARED   06              790
D HASBRO INC                       COM          41805610   18205  711710 SH     SHARED   10    696310    15400
D HASBRO INC                       COM          41805610     372   14543 SH     SHARED   14            14543
D HASTINGS ENTMT INC               COM          41836510       1     191 SH     SHARED          191
D HAPPAUGE DIGITAL INC             COM          41913110      21    4498 SH     SHARED         4498
D HAVERTY FURNITURE INC            COM          41959610     533   59300 SH     SHARED        59300
D HAWAIIAN ELEC INDUSTRIES         COM          41987010     457   20088 SH     SHARED        20088
D HAWAIIAN ELEC INDUSTRIES         COM          41987010     643   28275 SH     SHARED   01      875    27400
D HAWAIIAN ELEC INDUSTRIES         COM          41987010     119    5233 SH     SHARED   02     5233
D HAWAIIAN ELEC INDUSTRIES         COM          41987010     161    7085 SH     SHARED   10     7085
D HAWAIIAN ELEC INDUSTRIES         COM          41987010       9     400 SH     SHARED   20      400
D HAWAIIAN HOLDINGS INC            COM          41987910       4     891 SH     SHARED          891
D HAWK CORP                        CL A         42008910       2     155 SH     SHARED          155
D HAWKINS INC                      COM          42026110       3     220 SH     SHARED          220
D HAWTHORN BANCSHARES INC          COM          42047610       2     102 SH     SHARED          102
D HAYES LEMMERZ INTL INC           COM NEW      42078130    4826 1056100 SH     SHARED       1056100
D HAYES LEMMERZ INTL INC           COM NEW      42078130   20822 4556390 SH     SHARED   02  4556390
D HAYNES INTERNATIONAL INC         COM          42087720     581    8361 SH     SHARED         8361
D HAYNES INTERNATIONAL INC         COM NEW      42087720    5080   73100 SH     SHARED   10    73100
D HEALTHCARE SVCS GRP INC          COM          42190610     195    9217 SH     SHARED         9217
D HEALTHCARE SVCS GRP INC          COM          42190610      37    1780 SH     SHARED   21             1780
D HEALTHSOUTH CORP                 COM NEW      42192430   39813 1895870 SH     SHARED       1895870
D HEALTHSOUTH CORP                 COM NEW      42192430     529   25200 SH     SHARED   10    25200
D HEALTH MGMT ASSOC INC NEW        NOTE 4.375% 8/0 421933AF  63945 65250000 PRN SHARED      5250000
D HEALTH MGMT ASSOC INC NEW        NOTE 4.375% 8/0 421933AF   9731  9930000 PRN SHARED   02  9930000
D HEALTH MGMT ASSOC INC NEW        CL A         42193310     487   81595 SH     SHARED        81595
D HEALTH MGMT ASSOC INC NEW        CL A         42193310     526   88100 SH     SHARED   01     6000    82100
D HEALTH MGMT ASSOC INC NEW        CL A         42193310      68   11495 SH     SHARED   02    11495
D HEALTH MGMT ASSOC INC NEW        CL A         42193310     105   17600 SH     SHARED   10    17600
D HEALTH MGMT ASSOC INC NEW        CL A         42193310     127   21325 SH     SHARED   21    21325
D HEALTHCARE RLTY TR               COM          42194610    2960  116600 SH     SHARED       116600
D HEALTHCARE RLTY TR               COM          42194610      84    3325 SH     SHARED   01     3325
D HEALTHCARE RLTY TR               COM          42194610     426   16800 SH     SHARED   02    16800
D HEALTHCARE RLTY TR               COM          42194610   10028  394970 SH     SHARED   10   394970
D HEADWATERS INC                   NOTE 2.875% 6/0 42210PAB   821  995000 PRN SHARED        995000
D HEADWATERS INC                   NOTE 2.500% 2/0 42210PAD  1456 2000000 PRN SHARED       2000000
D HEADWATERS INC                   NOTE 2.500% 2/0 42210PAD   218  300000 PRN SHARED   02   300000
D HEADWATERS INC                   COM          42210Q10     632   53915 SH     SHARED        53915
D HEADWATERS INC                   COM          42210Q10     380   32437 SH     SHARED   01    32437
D HEADWATERS INC                   COM          42210Q10    4764  405850 SH     SHARED   10   405850
D HEADWATERS INC                   COM          42210Q10      12    1057 SH     SHARED   21             1057
D HEALTH CARE REIT INC             COM          42217K10    3434   76849 SH     SHARED        76849
D HEALTH CARE REIT INC             COM          42217K10    1130   25300 SH     SHARED   01      100    25200
D HEALTH CARE REIT INC             COM          42217K10     367    8220 SH     SHARED   02     8220
D HEALTH CARE REIT INC             COM          42217K10    1671   37400 SH     SHARED   10    37400
D HEALTH GRADES INC                COM          42218Q10       4     726 SH     SHARED          726
D HEALTHAXIS INC                   COM NEW      42215D30       0     163 SH     SHARED          163
D HEALTHEXTRAS INC                 COM          42221110     379   14563 SH     SHARED        14563
D HEALTHEXTRAS INC                 COM          42221110     320   12300 SH     SHARED   01    12300
D HEALTHEXTRAS INC                 COM          42221110      52    2000 SH     SHARED   02     2000
D HEALTHEXTRAS INC                 COM          42221110     144    5539 SH     SHARED   10     5539
D HEALTH NET INC                   COM          42222G10   70821 1466278 SH     SHARED       1399178    67100
D HEALTH NET INC                   COM          42222G10    2056   42584 SH     SHARED   01     8284    34300
D HEALTH NET INC                   COM          42222G10    1801   37288 SH     SHARED   02    37288
D HEALTH NET INC                   COM          42222G10    2937   60808 SH     SHARED   04    60808
D HEALTH NET INC                   COM          42222G10      70    1450 SH     SHARED   06             1450
D HEALTH NET INC                   COM          42222G10   57196 1184200 SH     SHARED   10   1174800     9400
D HEALTH NET INC                   COM          42222G10     533   11047 SH     SHARED   14     1100     9947
D HEALTH NET INC                   COM          42222G10     234    4860 SH     SHARED   21     4860
D HEALTHTRONICS INC                COM          42222L10       4    1080 SH     SHARED         1080
D HEALTHSTREAM INC                 COM          42222H10       1     393 SH     SHARED          393
D HEALTHSPRING INC                 COM          42224N10     475   24974 SH     SHARED        24974
D HEALTHSPRING INC                 COM          42224N10     375   19700 SH     SHARED   01    19700
D HEALTHSPRING INC                 COM          42224N10   31206 1638150 SH     SHARED   10  1638150
D HEALTHSPRING INC                 COM          42224N10      44    2316 SH     SHARED   21             2316
D HEALTHWAYS INC                   COM          42224510     369    6329 SH     SHARED         6329
D HEALTHWAYS INC                   COM          42224510     125    2145 SH     SHARED   01     2145
D HEALTHWAYS INC                   COM          42224510     245    4200 SH     SHARED   10     4200
D HEARST-ARGYLE TELEVISION INC     COM          42231710    1067   48271 SH     SHARED        48271
D HEARST-ARGYLE TELEVISION INC     COM          42231710      17     800 SH     SHARED   01      800
D HEARST-ARGYLE TELEVISION INC     COM          42231710      14     675 SH     SHARED   02      675
D HEARTLAND FINL USA INC           COM          42234Q10       9     489 SH     SHARED          489
D HEARTLAND EXPRESS INC            COM          42234710     201   14211 SH     SHARED        14211
D HEARTLAND EXPRESS INC            COM          42234710      29    2075 SH     SHARED   02     2075
D HEARTLAND EXPRESS INC            COM          42234710     167   11822 SH     SHARED   10    11822
D HEARTLAND PMT SYS INC            COM          42235N10     333   12441 SH     SHARED        12441
D HEARTLAND PMT SYS INC            COM          42235N10     190    7100 SH     SHARED   01     7100
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | HEARTLAND PMT SYS INC | COM | 42235N10 | 67 | 2525 | SH | SHARED | 02 | 2525 | |
| D | HEARTLAND PMT SYS INC | COM NEW | 42235N10 | 136 | 5100 | SH | SHARED | 10 | 5100 | |
| D | HEARUSA INC | COM | 42236030 | 1 | 781 | SH | SHARED | | 781 | |
| D | HECKMANN CORP | COM | 42268010 | 320 | 43565 | SH | SHARED | | 43565 | |
| D | HECKMANN CORP | UNIT 99/99/9999 | 42268020 | 7032 | 873595 | SH | SHARED | | 873595 | |
| D | HECLA MNG CO | COM | 42270410 | 3683 | 393982 | SH | SHARED | | 393982 | |
| D | HECLA MNG CO | COM | 42270410 | 274 | 29355 | SH | SHARED | 01 | 29355 | |
| D | HECLA MNG CO | COM | 42270410 | 120 | 12900 | SH | SHARED | 02 | 12900 | |
| D | HECLA MNG CO | COM | 42270410 | 173 | 18600 | SH | SHARED | 10 | 18600 | |
| D | HEELYS INC | COM | 42279M10 | 9 | 1409 | SH | SHARED | | 1409 | |
| D | HEELYS INC | COM | 42279M10 | 29 | 4300 | SH | SHARED | 01 | | 4300 |
| D | HEICO CORP NEW | COM | 42280610 | 505 | 9277 | SH | SHARED | | 9277 | |
| D | HEICO CORP NEW | COM | 42280610 | 108 | 2000 | SH | SHARED | 01 | | 2000 |
| D | HEICO CORP NEW | COM | 42280610 | 98 | 1802 | SH | SHARED | 02 | 1802 | |
| D | HEICO CORP NEW | COM | 42280610 | 98 | 1800 | SH | SHARED | 10 | 1800 | |
| D | HEICO CORP NEW | CL A | 42280620 | 23 | 548 | SH | SHARED | | 548 | |
| D | HEICO CORP NEW | CL A | 42280620 | 28 | 662 | SH | SHARED | 21 | | 662 |
| D | HEICO CORP NEW | CL A | 42280620 | 6 | 159 | SH | SHARED | 21 | | 159 |
| D | HEIDRICK & STRUGGLES INTL IN | COM | 42281910 | 230 | 6200 | SH | SHARED | | 6200 | |
| D | HEIDRICK & STRUGGLES INTL IN | COM | 42281910 | 765 | 20620 | SH | SHARED | 02 | 20620 | |
| D | HEINZ H J CO | COM | 42307410 | 348 | 7465 | SH | SHARED | | 1800 | 5665 |
| D | HEINZ H J CO | COM | 42307410 | 74818 | 1602805 | SH | SHARED | | 1602805 | |
| D | HEINZ H J CO | COM | 42307410 | 2458 | 52673 | SH | SHARED | 01 | 42523 | 10150 |
| D | HEINZ H J CO | COM | 42307410 | 341 | 7325 | SH | SHR/OTHR | 01 | | 7325 |
| D | HEINZ H J CO | COM | 42307410 | 17052 | 365314 | SH | SHARED | 02 | 365314 | |
| D | HEINZ H J CO | COM | 42307410 | 8 | 190 | SH | SHARED | 05 | 190 | |
| D | HEINZ H J CO | COM | 42307410 | 153 | 3280 | SH | SHARED | 06 | | 3280 |
| D | HEINZ H J CO | COM | 42307410 | 7745 | 165923 | SH | SHARED | 10 | 165923 | |
| D | HEINZ H J CO | COM | 42307410 | 1258 | 26970 | SH | SHARED | 20 | 12936 | 14034 |
| D | HEINZ H J CO | COM | 42307410 | 401 | 8600 | SH | SHR/OTHR | 20 | | 8600 |
| D | HEINZ H J CO | COM | 42307410 | 117 | 2520 | SH | SHARED | 21 | 2520 | |
| D | HEINZ H J CO | COM | 42307410 | 245 | 5250 | SH | SHR/OTHR | 21 | | 5250 |
| D | HEINZ H J CO | COM | 42307410 | 1295 | 27750 | SH | SHARED | 22 | | 27750 |
| D | HEINZ H J CO | COM | 42307410 | 46 | 1000 | SH | SHR/OTHR | 22 | | 1000 |
| D | HEINZ H J CO | COM | 42307410 | 1035 | 22175 | SH | SHARED | 23 | 21175 | 1000 |
| D | HEINZ H J CO | COM | 42307410 | 1178 | 25250 | SH | SHR/OTHR | 23 | | 25250 |
| D | HELICOS BIOSCIENCES CORP | COM | 42326R10 | 2 | 205 | SH | SHARED | | 205 | |
| D | HELIOS & MATHESON NORTH AMER | COM | 42327L10 | 0 | 30 | SH | SHARED | | 30 | |
| D | HELIX ENERGY SOLUTIONS GRP I | COM | 42330D10 | 24790 | 597369 | SH | SHARED | | 597369 | |
| D | HELIX ENERGY SOLUTIONS GRP I | COM | 42330D10 | 800 | 19295 | SH | SHARED | 01 | 19295 | |
| D | HELIX ENERGY SOLUTIONS GRP I | COM | 42330D10 | 23517 | 566678 | SH | SHARED | 10 | 566678 | |
| D | HELLENIC TELECOM ORGANIZATN | SPONSORED ADR | 42332S30 | 0 | 1 | SH | SHARED | | 1 | |
| D | HELMERICH & PAYNE INC | COM | 42345210 | 1729 | 43158 | SH | SHARED | | 29158 | 14000 |
| D | HELMERICH & PAYNE INC | COM | 42345210 | 2279 | 56895 | SH | SHARED | 01 | 25395 | 31500 |
| D | HELMERICH & PAYNE INC | COM | 42345210 | 256 | 6402 | SH | SHARED | 02 | 6402 | |
| D | HELMERICH & PAYNE INC | COM | 42345210 | 9244 | 230700 | SH | SHARED | 10 | 200600 | 30100 |
| D | HELMERICH & PAYNE INC | COM | 42345210 | 12 | 310 | SH | SHARED | 21 | | 310 |
| D | HEMISPHERX BIOPHARMA INC | COM | 42366C10 | 1 | 1877 | SH | SHARED | | 1877 | |
| D | HENRY JACK & ASSOC INC | COM | 42628110 | 1095 | 44992 | SH | SHARED | | 44992 | |
| D | HENRY JACK & ASSOC INC | COM | 42628110 | 642 | 26400 | SH | SHARED | 01 | 1700 | 24700 |
| D | HENRY JACK & ASSOC INC | COM | 42628110 | 242 | 9981 | SH | SHARED | 02 | 9981 | |
| D | HENRY JACK & ASSOC INC | COM | 42628110 | 29630 | 1217350 | SH | SHARED | 10 | 1217350 | |
| D | HENRY JACK & ASSOC INC | COM | 42628110 | 7 | 324 | SH | SHARED | 21 | | 324 |
| D | HENRY JACK & ASSOC INC | COM | 42628110 | 19 | 800 | SH | SHR/OTHR | 23 | | 800 |
| D | HERLEY BROS ELECTRONICS INC | COM | 42628610 | 0 | 110 | SH | SHARED | | 110 | |
| D | HERCULES INC | SDCV 8.000% 8/1 | 427056AK | 20 | 19500 | PRN | SHR/OTHR | 01 | | 19500 |
| D | HERCULES INC | SDCV 8.000% 8/1 | 427056AK | 10 | 10000 | PRN | SHARED | 10 | | 10000 |
| D | HERCULES INC | SDCV 8.000% 8/1 | 427056AK | 0 | 750 | PRN | SHR/OTHR | 23 | | 750 |
| D | HERCULES INC | COM | 42705610 | 4587 | 237057 | SH | SHARED | | 237057 | |
| D | HERCULES INC | COM | 42705610 | 303 | 15700 | SH | SHARED | 01 | 15700 | |
| D | HERCULES INC | COM | 42705610 | 2717 | 140420 | SH | SHARED | 02 | 140420 | |
| D | HERCULES INC | COM | 42705610 | 25191 | 1301887 | SH | SHARED | 10 | 1301887 | |
| D | HERCULES INC | COM | 42705610 | 46 | 2400 | SH | SHR/OTHR | 20 | | 2400 |
| D | HERCULES INC | COM | 42705610 | 10 | 530 | SH | SHARED | 21 | | 530 |
| D | HERCULES INC | COM | 42705610 | 58 | 3000 | SH | SHR/OTHR | 23 | | 3000 |
| D | HERCULES OFFSHORE INC | COM | 42709310 | 4092 | 172091 | SH | SHARED | | 172091 | |
| D | HERCULES OFFSHORE INC | COM | 42709310 | 648 | 27273 | SH | SHARED | 01 | 27273 | |
| D | HERCULES OFFSHORE INC | COM | 42709310 | 21089 | 886851 | SH | SHARED | 10 | 886851 | |
| D | HERCULES OFFSHORE INC | COM | 42709310 | 215 | 9045 | SH | SHARED | 21 | 9045 | |
| D | HERCULES TECH GROWTH CAP INC | COM | 42709650 | 45 | 3624 | SH | SHARED | | 3624 | |
| D | HERCULES TECH GROWTH CAP INC | COM | 42709650 | 286 | 23090 | SH | SHARED | 10 | 23090 | |
| D | HERITAGE FINL CORP WASH | COM | 47722Q10 | 3 | 151 | SH | SHARED | | 151 | |
| D | HERITAGE OAKS BANCORP | COM | 42724R10 | 1 | 135 | SH | SHARED | | 135 | |
| D | HERITAGE FINL GROUP | COM | 42725U10 | 0 | 86 | SH | SHARED | | 86 | |
| D | HERLEY INDS INC DEL | COM | 42739810 | 4 | 361 | SH | SHARED | | 361 | |
| D | HERSHA HOSPITALITY TR | SH BEN INT A | 42782510 | 0 | 10 | SH | SHARED | | 10 | |
| D | HERSHEY CO | COM | 42786610 | 11485 | 291504 | SH | SHARED | | 291504 | |
| D | HERSHEY CO | COM | 42786610 | 1176 | 29873 | SH | SHARED | 01 | 29273 | 600 |
| D | HERSHEY CO | COM | 42786610 | 31393 | 796799 | SH | SHARED | 02 | 796799 | |
| D | HERSHEY CO | COM | 42786610 | 65 | 1660 | SH | SHARED | 06 | | 1660 |
| D | HERSHEY CO | COM | 42786610 | 3668 | 93106 | SH | SHARED | 10 | 93106 | |
| D | HERSHEY CO | COM | 42786610 | 94 | 2400 | SH | SHARED | 20 | 200 | 2200 |
| D | HESKA CORP | COM | 42805E10 | 2 | 1165 | SH | SHARED | | 1165 | |
| D | HERTZ GLOBAL HOLDINGS INC | COM | 42805T10 | 3996 | 251507 | SH | SHARED | | 251507 | |
| D | HERTZ GLOBAL HOLDINGS INC | COM | 42805T10 | 74 | 4700 | SH | SHARED | 01 | 4700 | |
| D | HERTZ GLOBAL HOLDINGS INC | COM | 42805T10 | 31 | 2000 | SH | SHARED | 02 | 2000 | |
| D | HERTZ GLOBAL HOLDINGS INC | COM | 42805T10 | 12 | 800 | SH | SHARED | 06 | | 800 |
| D | HERTZ GLOBAL HOLDINGS INC | COM | 42805T10 | 287 | 18100 | SH | SHARED | 10 | 18100 | |
| D | HERTZ GLOBAL HOLDINGS INC | COM | 42805T10 | 147 | 9300 | SH | SHARED | 14 | | 9300 |
| D | HESS CORP | COM | 42809H10 | 100 | 1000 | SH | SHARED | | 1000 | |
| D | HESS CORP | COM | 42809H10 | 74258 | 736256 | SH | SHARED | | 679656 | 56600 |
| D | HESS CORP | COM | 42809H10 | 6197 | 61450 | SH | SHARED | 01 | 56180 | 5270 |
| D | HESS CORP | COM | 42809H10 | 10366 | 102778 | SH | SHARED | 02 | 102778 | |
| D | HESS CORP | COM | 42809H10 | 8673 | 86000 | SH | SHARED | 04 | 86000 | |
| D | HESS CORP | COM | 42809H10 | 16 | 160 | SH | SHARED | 05 | 160 | |
| D | HESS CORP | COM | 42809H10 | 32089 | 318163 | SH | SHARED | 10 | | 318163 |
| D | HESS CORP | COM | 42809H10 | 152012 | 1507159 | SH | SHARED | 10 | 1451759 | 55400 |
| D | HESS CORP | COM | 42809H10 | 542 | 5383 | SH | SHARED | 14 | | 5383 |
| D | HESS CORP | COM | 42809H10 | 4850 | 48093 | SH | SHARED | 16 | 48093 | |
| D | HESS CORP | COM | 42809H10 | 1413 | 14016 | SH | SHR/OTHR | 23 | | 14016 |
| D | HEWITT ASSOCS INC | COM | 42822Q10 | 558 | 14597 | SH | SHR/OTHR | | 14597 | |
| D | HEWITT ASSOCS INC | COM | 42822Q10 | 67 | 1775 | SH | SHARED | 02 | 1775 | |
| D | HEWITT ASSOCS INC | COM | 42822Q10 | 1049 | 27400 | SH | SHARED | 10 | 15400 | 12000 |
| D | HEWLETT PACKARD CO | NOTE 10/1 | 428236AC | 664 | 800000 | PRN | SHARED | 02 | 800000 | |
| D | HEWLETT PACKARD CO | COM | 42823610 | 2157 | 42732 | SH | SHARED | | 33543 | 9189 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 242 | 4800 | SH | SHR/OTHR | | | 4800 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 234620 | 4647796 | SH | SHARED | | 4643550 | 4246 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 42760 | 847076 | SH | SHARED | 01 | 668359 | 178717 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 8054 | 159554 | SH | SHR/OTHR | 01 | | 159554 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 3529 | 69909 | SH | SHARED | 02 | 69909 | |
| D | HEWLETT PACKARD CO | COM | 42823610 | 479 | 9500 | SH | SHARED | 02 | | 9500 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 57097 | 1131100 | SH | SHARED | 04 | 1131100 | |
| D | HEWLETT PACKARD CO | COM | 42823610 | 2204 | 43670 | SH | SHARED | 05 | 43670 | |
| D | HEWLETT PACKARD CO | COM | 42823610 | 28840 | 571331 | SH | SHARED | 06 | | 571331 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | HEWLETT PACKARD CO | COM | 42823610 | 259014 | 5131028 SH | | SHARED | 10 | 5000578 | 130450 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 10 | 200 SH | | SHR/OTHR | 10 | | 200 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 2487 | 49282 SH | | SHARED | 14 | 4100 | 45182 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 3630 | 71910 SH | | SHARED | 16 | 71910 | |
| D | HEWLETT PACKARD CO | COM | 42823610 | 3777 | 74829 SH | | SHARED | 19 | | 74829 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 6589 | 130532 SH | | SHARED | 20 | 75767 | 54765 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 6795 | 134618 SH | | SHR/OTHR | 20 | | 134618 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 2644 | 52387 SH | | SHARED | 21 | 42675 | 9712 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 595 | 11800 SH | | SHR/OTHR | 21 | | 11800 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 1059 | 20981 SH | | SHARED | 22 | 14894 | 6087 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 133 | 2650 SH | | SHR/OTHR | 22 | | 2650 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 6741 | 133540 SH | | SHARED | 23 | 128715 | 4825 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 11934 | 236429 SH | | SHR/OTHR | 23 | | 236429 |
| D | HEWLETT PACKARD CO | COM | 42823610 | 126 | 2500 SH | | SHARED | 24 | 2500 | |
| D | HEXCEL CORP NEW | COM | 42829110 | 3992 | 164454 SH | | SHARED | | 164454 | |
| D | HEXCEL CORP NEW | COM | 42829110 | 83 | 3425 SH | | SHARED | 02 | 3425 | |
| D | HEXCEL CORP NEW | COM | 42829110 | 180 | 7414 SH | | SHARED | 10 | 7414 | |
| D | HI / FN INC | COM | 42835810 | 1 | 336 SH | | SHARED | | | 336 |
| D | HI SHEAR TECHNOLOGY CORP | COM | 42839Y10 | 0 | 55 SH | | SHARED | | | 55 |
| D | HI-TECH PHARMACAL INC | COM | 42840B10 | 2 | 235 SH | | SHARED | | | 235 |
| D | HIBBETT SPORTS INC | COM | 42856710 | 367 | 18400 SH | | SHARED | | 18400 | |
| D | HIBBETT SPORTS INC | COM | 42856710 | 2 | 143 SH | | SHARED | 02 | | 143 |
| D | HICKORY TECH CORP | COM | 42908610 | 1156 | 124049 SH | | SHARED | | 124049 | |
| D | HICKS ACQUISITION CO I INC | *W EXP 09/28/201 | 42908612 | 141 | 157093 SH | | SHARED | | 157093 | |
| D | HICKS ACQUISITION CO I INC | COM | 42908630 | 11668 | 1269655 SH | | SHARED | | 1269655 | |
| D | HICKS ACQUISITION CO I INC | UNIT 99/99/9999 | 42908640 | 131 | 13179 SH | | SHARED | | 13179 | |
| D | HIGH YIELD PLUS FD INC | COM | 42990610 | 185 | 60846 SH | | SHARED | | 60846 | |
| D | HIGHLAND CR STRATEGIES FD | COM | 43005Q10 | 555 | 35100 SH | | SHARED | | 35100 | |
| D | HIGHLANDS ACQUISITION CORP | COM | 43088010 | 214 | 23799 SH | | SHARED | | 23799 | |
| D | HIGHLANDS ACQUISITION CORP | UNIT 99/99/9999 | 43088020 | 63 | 6552 SH | | SHARED | | 6552 | |
| D | HIGHWOODS PPTYS INC | COM | 43128410 | 225 | 7663 SH | | SHARED | | 7663 | |
| D | HIGHWOODS PPTYS INC | COM | 43128410 | 602 | 20500 SH | | SHARED | 01 | | 20500 |
| D | HIGHWOODS PPTYS INC | COM | 43128410 | 170 | 5807 SH | | SHARED | 02 | 5807 | |
| D | HIGHWOODS PPTYS INC | COM | 43128410 | 226 | 7700 SH | | SHARED | 10 | 7700 | |
| D | HIGHWOODS PPTYS INC | COM | 43128410 | 36322 | 1236300 SH | | SHARED | 11 | | 1236300 |
| D | HILAND HLDGS GP LP | UNIT LP INT | 43129M10 | 5 | 204 SH | | SHARED | | 204 | |
| D | HILAND PARTNERS L P | UT LTD PARTNR | 43129110 | 5 | 117 SH | | SHARED | | 117 | |
| D | HILB ROGAL & HOBBS CO | COM | 43129410 | 383 | 9456 SH | | SHARED | | 9456 | |
| D | HILB ROGAL & HOBBS CO | COM | 43129410 | 12 | 300 SH | | SHARED | 02 | 300 | |
| D | HILB ROGAL & HOBBS CO | COM | 43129410 | 803 | 19800 SH | | SHARED | 10 | 19800 | |
| D | HILB ROGAL & HOBBS CO | COM | 43129410 | 72 | 1786 SH | | SHARED | 21 | 736 | 1050 |
| D | HILL INTERNATIONAL INC | COM | 43146610 | 4 | 337 SH | | SHARED | | | 337 |
| D | HILL INTERNATIONAL INC | COM | 43146610 | 12164 | 858500 SH | | SHARED | 10 | 858500 | |
| D | HILLENBRAND INDS INC | COM | 43157310 | 556 | 9980 SH | | SHARED | | 9980 | |
| D | HILLENBRAND INDS INC | COM | 43157310 | 1269 | 22771 SH | | SHARED | 01 | 3771 | 19000 |
| D | HILLENBRAND INDS INC | COM | 43157310 | 220 | 3961 SH | | SHARED | 02 | 3961 | |
| D | HILLENBRAND INDS INC | COM | 43157310 | 39 | 700 SH | | SHARED | 06 | | 700 |
| D | HILLENBRAND INDS INC | COM | 43157310 | 9552 | 171400 SH | | SHARED | 10 | 171400 | |
| D | HILLENBRAND INDS INC | COM | 43157310 | 41 | 753 SH | | SHR/OTHR | 23 | | 753 |
| D | HILLTOP HOLDINGS INC | COM | 43274810 | 7320 | 670344 SH | | SHARED | | 670344 | |
| D | HILLTOP HOLDINGS INC | COM | 43274810 | 141 | 13000 SH | | SHARED | 10 | 13000 | |
| D | HINGHAM INSTN SVGS MASS | COM | 43332310 | 1 | 49 SH | | SHARED | | 49 | |
| D | HIRERIGHT INC | COM | 43353810 | 1 | 114 SH | | SHARED | | 114 | |
| D | HIRSCH INTL CORP | CL A | 43355010 | 0 | 170 SH | | SHARED | | 170 | |
| D | HITACHI LIMITED | ADR 10 COM | 43357850 | 45 | 627 SH | | SHARED | | 627 | |
| D | HITTITE MICROWAVE CORP | COM | 43365Y10 | 0 | 4 SH | | SHARED | | | 4 |
| D | HITTITE MICROWAVE CORP | COM | 43365Y10 | 176 | 3700 SH | | SHARED | 01 | 3700 | |
| D | HITTITE MICROWAVE CORP | COM | 43365Y10 | 148 | 3100 SH | | SHARED | 02 | 3100 | |
| D | HITTITE MICROWAVE CORP | COM | 43365Y10 | 329 | 6900 SH | | SHARED | 10 | 6900 | |
| D | HOKU SCIENTIFIC INC | COM | 43471210 | 7 | 689 SH | | SHARED | | 689 | |
| D | HOLLY CORP | COM PAR $0.01 | 43575830 | 346 | 6800 SH | | SHARED | | 6800 | |
| D | HOLLY CORP | COM PAR $0.01 | 43575830 | 8848 | 173875 SH | | SHARED | | 173875 | |
| D | HOLLY CORP | COM PAR $0.01 | 43575830 | 498 | 9800 SH | | SHARED | 01 | 9800 | |
| D | HOLLY CORP | COM PAR $0.01 | 43575830 | 1073 | 21100 SH | | SHARED | 02 | 21100 | |
| D | HOLLY CORP | COM PAR $0.01 | 43575830 | 645 | 12686 SH | | SHARED | 10 | 12686 | |
| D | HOLLY ENERGY PARTNERS L P | COM UT LTD PTN | 43576310 | 516 | 11798 SH | | SHARED | | 11798 | |
| D | HOLLIS-EDEN PHARMACEUTICALS | COM | 43590210 | 1 | 695 SH | | SHARED | | 695 | |
| D | HOLLYWOOD MEDIA CORP | COM | 43623310 | 2 | 872 SH | | SHARED | | 872 | |
| D | HOLOGIC INC | FRNT  2.000%12/1 | 43644AA | 21620 | 20000000 PRN | | SHARED | | 0000000 | |
| D | HOLOGIC INC | FRNT  2.000%12/1 | 43644AA | 37835 | 35000000 PRN | | SHARED | 04 | 5000000 | |
| D | HOLOGIC INC | COM | 43644010 | 6903 | 100571 SH | | SHARED | | 100571 | |
| D | HOLOGIC INC | COM | 43644010 | 2992 | 43596 SH | | SHARED | | 7750 | 35846 |
| D | HOLOGIC INC | COM | 43644010 | 356 | 5200 SH | | SHR/OTHR | 01 | | 5200 |
| D | HOLOGIC INC | COM | 43644010 | 458 | 6687 SH | | SHARED | 02 | 6687 | |
| D | HOLOGIC INC | COM | 43644010 | 26323 | 383500 SH | | SHARED | 04 | 383500 | |
| D | HOLOGIC INC | COM | 43644010 | 62 | 912 SH | | SHARED | 06 | | 912 |
| D | HOLOGIC INC | COM | 43644010 | 53275 | 776164 SH | | SHARED | 10 | 776164 | |
| D | HOLOGIC INC | COM | 43644010 | 127 | 1856 SH | | SHARED | 14 | 1700 | 156 |
| D | HOLOGIC INC | COM | 43644010 | 7 | 110 SH | | SHARED | 21 | | 110 |
| D | HOLOGIC INC | COM | 43644010 | 20 | 300 SH | | SHARED | 24 | 300 | |
| D | HOME BANCSHARES INC | COM | 43689320 | 1 | 59 SH | | SHARED | | 59 | |
| D | HOME FED BANCORP | COM | 43692610 | 1 | 84 SH | | SHARED | | 84 | |
| D | HOME DEPOT INC | COM | 43707610 | 183287 | 6803551 SH | | SHARED | | 6802451 | 1100 |
| D | HOME DEPOT INC | COM | 43707610 | 6850 | 254292 SH | | SHARED | 01 | 227358 | 26934 |
| D | HOME DEPOT INC | COM | 43707610 | 132 | 4911 SH | | SHR/OTHR | 01 | | 4911 |
| D | HOME DEPOT INC | COM | 43707610 | 3258 | 120943 SH | | SHARED | 02 | 120943 | |
| D | HOME DEPOT INC | COM | 43707610 | 26 | 1000 SH | | SHARED | 04 | | 1000 |
| D | HOME DEPOT INC | COM | 43707610 | 20 | 750 SH | | SHARED | 05 | 750 | |
| D | HOME DEPOT INC | COM | 43707610 | 446 | 16560 SH | | SHARED | 06 | | 16560 |
| D | HOME DEPOT INC | COM | 43707610 | 24828 | 921634 SH | | SHARED | 10 | 895834 | 25800 |
| D | HOME DEPOT INC | COM | 43707610 | 40 | 1500 SH | | SHARED | 10 | | 1500 |
| D | HOME DEPOT INC | COM | 43707610 | 394 | 14636 SH | | SHARED | 14 | | 14636 |
| D | HOME DEPOT INC | COM | 43707610 | 1616 | 60000 SH | | SHARED | 15 | | 60000 |
| D | HOME DEPOT INC | COM | 43707610 | 39 | 1480 SH | | SHARED | 19 | | 1480 |
| D | HOME DEPOT INC | COM | 43707610 | 738 | 27406 SH | | SHARED | 20 | 10211 | 17195 |
| D | HOME DEPOT INC | COM | 43707610 | 183 | 6822 SH | | SHR/OTHR | 20 | | 6822 |
| D | HOME DEPOT INC | COM | 43707610 | 267 | 9940 SH | | SHARED | 21 | 9360 | 580 |
| D | HOME DEPOT INC | COM | 43707610 | 44 | 1650 SH | | SHR/OTHR | 21 | | 1650 |
| D | HOME DEPOT INC | COM | 43707610 | 79 | 2968 SH | | SHARED | 22 | 718 | 2250 |
| D | HOME DEPOT INC | COM | 43707610 | 17 | 660 SH | | SHR/OTHR | 22 | | 660 |
| D | HOME DEPOT INC | COM | 43707610 | 396 | 14700 SH | | SHARED | 23 | 10050 | 4650 |
| D | HOME DEPOT INC | COM | 43707610 | 799 | 29694 SH | | SHR/OTHR | 23 | | 29694 |
| D | HOME DIAGNOSTICS INC DEL | COM | 43708010 | 2 | 333 SH | | SHARED | | 333 | |
| D | HOME INNS & HOTELS MGMT INC | SPON ADR | 43713W10 | 917 | 25747 SH | | SHARED | | 25747 | |
| D | HOME INNS & HOTELS MGMT INC | SPON ADR | 43713W10 | 1884 | 52917 SH | | SHARED | 02 | 52917 | |
| D | HOME PROPERTIES INC | COM | 43730610 | 495 | 11038 SH | | SHARED | | 11038 | |
| D | HOME PROPERTIES INC | COM | 43730610 | 44 | 1000 SH | | SHARED | 01 | | 1000 |
| D | HOME PROPERTIES INC | COM | 43730610 | 2847 | 63500 SH | | SHARED | 10 | 63500 | |
| D | HOME PROPERTIES INC | COM | 43730610 | 17222 | 384000 SH | | SHARED | 11 | | 384000 |
| D | HOME SOLUTIONS AMER INC | COM | 43735510 | 153 | 153335 SH | | SHARED | | 153335 | |
| D | HONDA MOTOR LTD | AMERN SHS | 43812830 | 920 | 27788 SH | | SHARED | | 27788 | |
| D | HONDA MOTOR LTD | AMERN SHS | 43812830 | 24 | 725 SH | | SHARED | 01 | 725 | |
| D | HONDA MOTOR LTD | AMERN SHS | 43812830 | 99 | 3000 SH | | SHARED | 23 | | 3000 |
| D | HONEYWELL INTL INC | COM | 43851610 | 2278 | 37000 SH | | SHARED | | | 37000 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| D HONEYWELL INTL INC | COM | 43851610 | 114849 | 1865355 SH | SHARED | | | 1778643 | 86712 |
| D HONEYWELL INTL INC | COM | 43851610 | 9733 | 158093 SH | SHARED | 01 | | 117144 | 40949 |
| D HONEYWELL INTL INC | COM | 43851610 | 150 | 2450 SH | SHR/OTHR | 01 | | | 2450 |
| D HONEYWELL INTL INC | COM | 43851610 | 11263 | 182937 SH | SHARED | 02 | | 156437 | 26500 |
| D HONEYWELL INTL INC | COM | 43851610 | 59 | 960 SH | SHARED | 04 | | | 960 |
| D HONEYWELL INTL INC | COM | 43851610 | 11168 | 181400 SH | SHARED | 04 | | 181400 | |
| D HONEYWELL INTL INC | COM | 43851610 | 20 | 330 SH | SHARED | 05 | | 330 | |
| D HONEYWELL INTL INC | COM | 43851610 | 60951 | 989960 SH | SHARED | 06 | | | 989960 |
| D HONEYWELL INTL INC | COM | 43851610 | 222719 | 3617331 SH | SHARED | 10 | | 3561931 | 55400 |
| D HONEYWELL INTL INC | COM | 43851610 | 3675 | 59697 SH | SHARED | 14 | | | 59697 |
| D HONEYWELL INTL INC | COM | 43851610 | 594 | 9650 SH | SHARED | 15 | | | 9650 |
| D HONEYWELL INTL INC | COM | 43851610 | 2787 | 45278 SH | SHARED | 16 | | 45278 | |
| D HONEYWELL INTL INC | COM | 43851610 | 264 | 4300 SH | SHARED | 19 | | | 4300 |
| D HONEYWELL INTL INC | COM | 43851610 | 13211 | 214572 SH | SHARED | 20 | | 150426 | 64146 |
| D HONEYWELL INTL INC | COM | 43851610 | 161 | 2628 SH | SHR/OTHR | 20 | | | 2628 |
| D HONEYWELL INTL INC | COM | 43851610 | 387 | 6290 SH | SHARED | 21 | | 6290 | |
| D HONEYWELL INTL INC | COM | 43851610 | 30 | 500 SH | SHR/OTHR | 21 | | | 500 |
| D HONEYWELL INTL INC | COM | 43851610 | 375 | 6100 SH | SHARED | 22 | | 3800 | 2300 |
| D HONEYWELL INTL INC | COM | 43851610 | 1814 | 29475 SH | SHARED | 23 | | 25375 | 4100 |
| D HONEYWELL INTL INC | COM | 43851610 | 2213 | 35950 SH | SHR/OTHR | 23 | | | 35950 |
| D HONEYWELL INTL INC | COM | 43851610 | 110 | 1800 SH | SHARED | 24 | | 1800 | |
| D HOOKER FURNITURE CORP | COM | 43903810 | 1717 | 85468 SH | SHARED | | | 85468 | |
| D HOOKER FURNITURE CORP | COM | 43903810 | 52 | 2600 SH | SHARED | 01 | | 2600 | |
| D HOOKER FURNITURE CORP | COM | 43903810 | 2154 | 107200 SH | SHARED | 10 | | 107200 | |
| D HOOPER HOLMES INC | COM | 43910410 | 3 | 1787 SH | SHARED | | | 1787 | |
| D HOPFED BANCORP INC | COM | 43973410 | 1 | 95 SH | SHARED | | | 95 | |
| D HORACE MANN EDUCATORS CORP N | COM | 44032710 | 79 | 4193 SH | SHARED | | | 4193 | |
| D HORACE MANN EDUCATORS CORP N | COM | 44032710 | 276 | 14600 SH | SHARED | 01 | | | 14600 |
| D HORACE MANN EDUCATORS CORP N | COM | 44032710 | 50 | 2678 SH | SHARED | 01 | | 2678 | |
| D HORACE MANN EDUCATORS CORP N | COM | 44032710 | 301 | 15900 SH | SHARED | 10 | | 15900 | |
| D HORIZON FINL CORP WASH | COM | 44041J10 | 2 | 138 SH | SHARED | | | 138 | |
| D HORIZON LINES INC | COM | 44044K10 | 1886 | 101200 SH | SHARED | | | 101200 | |
| D HORIZON LINES INC | COM | 44044K10 | 110 | 5920 SH | SHARED | 01 | | 5645 | 275 |
| D HORIZON LINES INC | COM | 44044K10 | 482 | 25900 SH | SHR/OTHR | 01 | | | 25900 |
| D HORIZON LINES INC | COM | 44044K10 | 14 | 800 SH | SHARED | 10 | | 800 | |
| D HORMEL FOODS CORP | COM | 44045210 | 854 | 21110 SH | SHARED | | | 21110 | |
| D HORMEL FOODS CORP | COM | 44045210 | 1115 | 27550 SH | SHARED | 01 | | | 27550 |
| D HORMEL FOODS CORP | COM | 44045210 | 207 | 5127 SH | SHARED | 02 | | 5127 | |
| D HORMEL FOODS CORP | COM | 44045210 | 11423 | 282200 SH | SHARED | 10 | | 282200 | |
| D HORMEL FOODS CORP | COM | 44045210 | 288 | 7133 SH | SHARED | 14 | | | 7133 |
| D HORNBECK OFFSHORE SVCS INC N | COM | 44054310 | 122 | 2720 SH | SHARED | | | 2720 | |
| D HORNBECK OFFSHORE SVCS INC N | COM | 44054310 | 985 | 21920 SH | SHARED | 01 | | 21920 | |
| D HORNBECK OFFSHORE SVCS INC N | COM | 44054310 | 584 | 13000 SH | SHARED | 10 | | 13000 | |
| D HORSEHEAD HLDG CORP | COM | 44069430 | 78 | 4611 SH | SHARED | | | 4611 | |
| D HOSPITALITY PPTYS TR | COM SH BEN INT | 44106M10 | 16877 | 523827 SH | SHARED | | | 518127 | 5700 |
| D HOSPITALITY PPTYS TR | COM SH BEN INT | 44106M10 | 1050 | 32600 SH | SHARED | 01 | | 2200 | 30400 |
| D HOSPITALITY PPTYS TR | COM SH BEN INT | 44106M10 | 504 | 15647 SH | SHARED | 02 | | 15647 | |
| D HOSPITALITY PPTYS TR | COM SH BEN INT | 44106M10 | 10247 | 318050 SH | SHARED | 10 | | 300450 | 17600 |
| D HOSPITALITY PPTYS TR | COM SH BEN INT | 44106M10 | 21179 | 657350 SH | SHARED | 11 | | | 657350 |
| D HOSPITALITY PPTYS TR | COM SH BEN INT | 44106M10 | 75 | 2340 SH | SHARED | 14 | | | 2340 |
| D HOSPITALITY PPTYS TR | COM SH BEN INT | 44106M10 | 4 | 145 SH | SHARED | 21 | | | 145 |
| D HOSPIRA INC | COM | 44106010 | 22 | 534 SH | SHARED | | | 534 | |
| D HOSPIRA INC | COM | 44106010 | 6315 | 148110 SH | SHARED | | | 148110 | |
| D HOSPIRA INC | COM | 44106010 | 1157 | 27150 SH | SHARED | 01 | | 24940 | 2210 |
| D HOSPIRA INC | COM | 44106010 | 100 | 2356 SH | SHR/OTHR | 01 | | | 2356 |
| D HOSPIRA INC | COM | 44106010 | 384 | 9019 SH | SHARED | 02 | | 9019 | |
| D HOSPIRA INC | COM | 44106010 | 5 | 120 SH | SHARED | 05 | | 120 | |
| D HOSPIRA INC | COM | 44106010 | 78 | 1840 SH | SHARED | 06 | | | 1840 |
| D HOSPIRA INC | COM | 44106010 | 3131 | 73442 SH | SHARED | 10 | | 73442 | |
| D HOSPIRA INC | COM | 44106010 | 12 | 300 SH | SHR/OTHR | 10 | | | 300 |
| D HOSPIRA INC | COM | 44106010 | 262 | 6146 SH | SHARED | 14 | | | 6146 |
| D HOSPIRA INC | COM | 44106010 | 107 | 2520 SH | SHARED | 20 | | | 2520 |
| D HOSPIRA INC | COM | 44106010 | 8 | 200 SH | SHR/OTHR | 20 | | | 200 |
| D HOSPIRA INC | COM | 44106010 | 9 | 220 SH | SHARED | 21 | | 220 | |
| D HOSPIRA INC | COM | 44106010 | 6 | 160 SH | SHARED | 22 | | 160 | |
| D HOSPIRA INC | COM | 44106010 | 130 | 3050 SH | SHR/OTHR | 22 | | | 3050 |
| D HOSPIRA INC | COM | 44106010 | 540 | 12678 SH | SHARED | 23 | | 9388 | 3290 |
| D HOSPIRA INC | COM | 44106010 | 587 | 13778 SH | SHR/OTHR | 23 | | | 13778 |
| D HOST HOTELS & RESORTS INC | COM | 44107P10 | 14246 | 836085 SH | SHARED | | | 824685 | 11400 |
| D HOST HOTELS & RESORTS INC | COM | 44107P10 | 2074 | 121714 SH | SHARED | 01 | | 48855 | 72859 |
| D HOST HOTELS & RESORTS INC | COM | 44107P10 | 11048 | 648406 SH | SHR/OTHR | 01 | | | 648406 |
| D HOST HOTELS & RESORTS INC | COM | 44107P10 | 1374 | 80671 SH | SHARED | 02 | | 80671 | |
| D HOST HOTELS & RESORTS INC | COM | 44107P10 | 3 | 191 SH | SHARED | 05 | | | 191 |
| D HOST HOTELS & RESORTS INC | COM | 44107P10 | 27214 | 1597123 SH | SHARED | 10 | | 1565523 | 31600 |
| D HOST HOTELS & RESORTS INC | COM | 44107P10 | 357348 | 20971168 SH | SHARED | 11 | | 2336661 | 8634512 |
| D HOST HOTELS & RESORTS INC | COM | 44107P10 | 690 | 40550 SH | SHARED | 14 | | | 40550 |
| D HOST HOTELS & RESORTS INC | COM | 44107P10 | 144 | 8500 SH | SHARED | 23 | | 8500 | |
| D HOST HOTELS & RESORTS INC | COM | 44107P10 | 4 | 244 SH | SHR/OTHR | 23 | | | 244 |
| D HOT TOPIC INC | COM | 44133910 | 154 | 26559 SH | SHARED | | | 26559 | |
| D HOT TOPIC INC | COM | 44133910 | 29 | 5100 SH | SHARED | | | 5100 | |
| D HOT TOPIC INC | COM | 44133910 | 596 | 102500 SH | SHARED | 10 | | 102500 | |
| D HOUSE OF TAYLOR JEWELRY INC | COM | 44176810 | 0 | 268 SH | SHARED | | | 268 | |
| D HOUSTON AMERN ENERGY CORP | COM | 44183U10 | 1 | 415 SH | SHARED | | | 415 | |
| D HOUSEVALUES INC | COM | 44183Y10 | 8 | 2886 SH | SHARED | | | 2886 | |
| D HOUSTON WIRE & CABLE CO | COM | 44244U10 | 24 | 1765 SH | SHARED | | | 1765 | |
| D HOVNANIAN ENTERPRISES INC | CL A | 44248720 | 11552 | 1611184 SH | SHARED | | | 1611184 | |
| D HOVNANIAN ENTERPRISES INC | CL A | 44248720 | 147 | 20600 SH | SHARED | 01 | | | 20600 |
| D HOVNANIAN ENTERPRISES INC | CL A | 44248720 | 37 | 5188 SH | SHARED | 02 | | 5188 | |
| D HOVNANIAN ENTERPRISES INC | CL A | 44248720 | 695 | 97000 SH | SHARED | 10 | | 97000 | |
| D HOVNANIAN ENTERPRISES INC | CL A | 44248720 | 71 | 10000 SH | SHARED | 20 | | 10000 | |
| D HUANENG PWR INTL INC | SPON ADR H SHS | 44330410 | 201 | 4877 SH | SHARED | | | 4877 | |
| D HUANENG PWR INTL INC | SPON ADR H SHS | 44330410 | 148 | 3600 SH | SHARED | 21 | | 3600 | |
| D HUB GROUP INC | CL A | 44332010 | 180 | 6800 SH | SHARED | | | 6800 | |
| D HUB GROUP INC | CL A | 44332010 | 106 | 4020 SH | SHARED | 01 | | 4020 | |
| D HUB GROUP INC | CL A | 44332010 | 645 | 24300 SH | SHARED | 10 | | 24300 | |
| D HUB GROUP INC | CL A | 44332010 | 717 | 27000 SH | SHR/OTHR | 23 | | | 27000 |
| D HUBBELL INC | CL A | 44351010 | 10 | 198 SH | SHARED | | | 198 | |
| D HUBBELL INC | CL B | 44351020 | 1342 | 26012 SH | SHARED | | | 26012 | |
| D HUBBELL INC | CL B | 44351020 | 866 | 16800 SH | SHARED | | | | 16800 |
| D HUBBELL INC | CL B | 44351020 | 662 | 12845 SH | SHARED | 01 | | 12845 | |
| D HUBBELL INC | CL B | 44351020 | 27647 | 535810 SH | SHARED | 10 | | 535600 | 210 |
| D HUBBELL INC | CL B | 44351020 | 54 | 1060 SH | SHR/OTHR | 22 | | | 1060 |
| D HUBBELL INC | CL B | 44351020 | 61 | 1200 SH | SHARED | 23 | | 1200 | |
| D HUDSON CITY BANCORP | COM | 44368310 | 25047 | 1667620 SH | SHARED | | | 1667620 | |
| D HUDSON CITY BANCORP | COM | 44368310 | 750 | 49985 SH | SHARED | 01 | | 49985 | |
| D HUDSON CITY BANCORP | COM | 44368310 | 28 | 1923 SH | SHR/OTHR | 01 | | | 1923 |
| D HUDSON CITY BANCORP | COM | 44368310 | 420 | 27984 SH | SHARED | 02 | | 27984 | |
| D HUDSON CITY BANCORP | COM | 44368310 | 72 | 4820 SH | SHARED | 06 | | | 4820 |
| D HUDSON CITY BANCORP | COM | 44368310 | 3086 | 205500 SH | SHARED | 10 | | 205500 | |
| D HUDSON CITY BANCORP | COM | 44368310 | 357 | 23800 SH | SHARED | 14 | | | 23800 |
| D HUDSON CITY BANCORP | COM | 44368310 | 617 | 41091 SH | SHR/OTHR | 23 | | | 41091 |
| D HUDSON HIGHLAND GROUP INC | COM | 44379210 | 1930 | 229500 SH | SHARED | | | 229500 | |
| D HUDSON HIGHLAND GROUP INC | COM | 44379210 | 42 | 5100 SH | SHARED | 01 | | 5100 | |
| D HUDSON HIGHLAND GROUP INC | COM | 44379210 | 4 | 566 SH | SHARED | 02 | | 566 | |

| | Name | Class | CUSIP | | | | Auth | Code | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | HUDSON HIGHLAND GROUP INC | COM | 44379210 | 846 | 100600 | SH | SHARED | 10 | 100600 | |
| D | HUDSON TECHNOLOGIES INC | COM | 44414410 | 0 | 61 | SH | SHARED | | 61 | |
| D | HUGHES COMMUNICATIONS INC | COM | 44439810 | 0 | 3 | SH | SHARED | | 3 | |
| D | HUGOTON RTY TR TEX | UNIT BEN INT | 44471710 | 3612 | 161043 | SH | SHARED | | 161043 | |
| D | HUMANA INC | COM | 44485910 | 16879 | 224127 | SH | SHARED | | 169427 | 54700 |
| D | HUMANA INC | COM | 44485910 | 2485 | 33000 | SH | SHARED | 01 | 33000 | |
| D | HUMANA INC | COM | 44485910 | 803 | 10666 | SH | SHARED | 02 | 10666 | |
| D | HUMANA INC | COM | 44485910 | 143 | 1900 | SH | SHARED | 06 | | 1900 |
| D | HUMANA INC | COM | 44485910 | 108199 | 1436726 | SH | SHARED | 10 | 1429826 | 6900 |
| D | HUMANA INC | COM | 44485910 | 165 | 2198 | SH | SHARED | 14 | | 2198 |
| D | HUMANA INC | COM | 44485910 | 12 | 162 | SH | SHARED | 21 | | 162 |
| D | HUMAN GENOME SCIENCES INC | NOTE 2.250%10/1 | 444903AK | 4097 | 4354000 | PRN | SHARED | | 4354000 | |
| D | HUMAN GENOME SCIENCES INC | NOTE 2.250%10/1 | 444903AK | 10129 | 10765000 | PRN | SHARED | 02 | 0765000 | |
| D | HUMAN GENOME SCIENCES INC | NOTE 2.250% 8/1 | 444903AM | 3464 | 4000000 | PRN | SHARED | | 4000000 | |
| D | HUMAN GENOME SCIENCES INC | NOTE 2.250% 8/1 | 444903AM | 3115 | 3598000 | PRN | SHARED | 02 | 3598000 | |
| D | HUMAN GENOME SCIENCES INC | COM | 44490310 | 731 | 70038 | SH | SHARED | | 70038 | |
| D | HUMAN GENOME SCIENCES INC | COM | 44490310 | 30 | 2900 | SH | SHARED | 01 | 2900 | |
| D | HUMAN GENOME SCIENCES INC | COM | 44490310 | 466 | 44700 | SH | SHARED | 02 | 44700 | |
| D | HUMAN GENOME SCIENCES INC | COM | 44490310 | 1 | 100 | SH | SHARED | 10 | 100 | |
| D | HUNGARIAN TEL & CABLE CORP | COM | 44554210 | 0 | 47 | SH | SHARED | | 47 | |
| D | HUNT J B TRANS SVCS INC | COM | 44565810 | 306 | 11113 | SH | SHARED | | 11113 | |
| D | HUNT J B TRANS SVCS INC | COM | 44565810 | 1139 | 41375 | SH | SHARED | 01 | 975 | 40400 |
| D | HUNT J B TRANS SVCS INC | COM | 44565810 | 380 | 13822 | SH | SHARED | 02 | 13822 | |
| D | HUNT J B TRANS SVCS INC | COM | 44565810 | 462 | 16800 | SH | SHARED | 10 | 16800 | |
| D | HUNTINGTON BANCSHARES INC | COM | 44615010 | 8077 | 547238 | SH | SHARED | | 547238 | |
| D | HUNTINGTON BANCSHARES INC | COM | 44615010 | 628 | 42600 | SH | SHARED | 01 | 42200 | 400 |
| D | HUNTINGTON BANCSHARES INC | COM | 44615010 | 106 | 7243 | SH | SHARED | 02 | 7243 | |
| D | HUNTINGTON BANCSHARES INC | COM | 44615010 | 4 | 300 | SH | SHARED | 05 | 300 | |
| D | HUNTINGTON BANCSHARES INC | COM | 44615010 | 33 | 2240 | SH | SHARED | 06 | | 2240 |
| D | HUNTINGTON BANCSHARES INC | COM | 44615010 | 8915 | 604033 | SH | SHARED | 10 | 604033 | |
| D | HUNTINGTON BANCSHARES INC | COM | 44615010 | 215 | 14600 | SH | SHARED | 14 | | 14600 |
| D | HUNTSMAN CORP | COM | 44701110 | 59081 | 2298882 | SH | SHARED | | 2298882 | |
| D | HUNTSMAN CORP | COM | 44701110 | 115 | 4500 | SH | SHARED | 10 | 4500 | |
| D | HUNTSMAN CORP | PFD MND CV 5% | 44701120 | 15262 | 309899 | SH | SHARED | | 309899 | |
| D | HURCO COMPANIES INC | COM | 44732410 | 212 | 4865 | SH | SHARED | | 4865 | |
| D | HURCO COMPANIES INC | COM | 44732410 | 218 | 5000 | SH | SHR/OTHR | 23 | | 5000 |
| D | HURON CONSULTING GROUP INC | COM | 44746210 | 2402 | 29800 | SH | SHARED | | 29800 | |
| D | HURON CONSULTING GROUP INC | COM | 44746210 | 185 | 2300 | SH | SHARED | 01 | 900 | 1400 |
| D | HURON CONSULTING GROUP INC | COM | 44746210 | 31211 | 387100 | SH | SHARED | 10 | 387100 | |
| D | HURRAY HLDGS CO LTD | SPONSORED ADR | 44777310 | 0 | 192 | SH | SHARED | | 192 | |
| D | HUTCHINSON TECHNOLOGY INC | NOTE 2.250% 3/1 | 448407AE | 2247 | 2182000 | PRN | SHARED | | 2182000 | |
| D | HUTCHINSON TECHNOLOGY INC | NOTE 3.250% 1/1 | 448407AF | 874 | 911000 | PRN | SHARED | 02 | 911000 | |
| D | HUTCHINSON TECHNOLOGY INC | COM | 44840710 | 256 | 9731 | SH | SHARED | | 9731 | |
| D | HUTCHINSON TECHNOLOGY INC | COM | 44840710 | 19 | 725 | SH | SHARED | 01 | 725 | |
| D | HUTCHINSON TECHNOLOGY INC | COM | 44840710 | 538 | 20453 | SH | SHARED | 02 | 20453 | |
| D | HUTCHINSON TECHNOLOGY INC | COM | 44840710 | 219 | 8322 | SH | SHARED | 10 | 8322 | |
| D | HUTCHISON TELECOMM INTL LTD | SPONSORED ADR | 44841I10 | 32 | 1433 | SH | SHARED | | 1433 | |
| D | HUTCHISON TELECOMM INTL LTD | SPONSORED ADR | 44841T10 | 31 | 1400 | SH | SHARED | 01 | 1400 | |
| D | HUTCHISON TELECOMM INTL LTD | SPONSORED ADR | 44841I10 | 78 | 3470 | SH | SHARED | 21 | | 3470 |
| D | HUTTIG BLDG PRODS INC | COM | 44845110 | 864 | 247738 | SH | SHARED | | 247738 | |
| D | HYDROGENICS CORP | COM | 44888210 | 3 | 4070 | SH | SHARED | | 4070 | |
| D | IDT CORP | CL B | 44894730 | 2 | 275 | SH | SHARED | | 275 | |
| D | IDT CORP | CL B | 44894730 | 4 | 500 | SH | SHARED | 02 | 500 | |
| D | IDT CORP | CL B | 44894730 | 92 | 11000 | SH | SHARED | 10 | 11000 | |
| D | HYPERDYNAMICS CORP | COM | 44895410 | 1 | 860 | SH | SHARED | | 860 | |
| D | HYPERION BRKFLD TOTAL RET FD | COM | 44914510 | 549 | 80000 | SH | SHARED | | 80000 | |
| D | HYPERION BRKFLD STRGC MTG IN | COM | 44915C10 | 79 | 8141 | SH | SHARED | | 8141 | |
| D | IAC INTERACTIVECORP | *W EXP 02/04/200 | 44919P11 | 0 | 1100 | SH | SHARED | | 1100 | |
| D | IAC INTERACTIVECORP | *W EXP 02/04/200 | 44919P11 | 0 | 296 | SH | SHARED | 01 | 296 | |
| D | IAC INTERACTIVECORP | COM | 44919P12 | 19561 | 1602079 | SH | SHARED | | 1602079 | |
| D | IAC INTERACTIVECORP | COM NEW | 44919P30 | 23062 | 856689 | SH | SHARED | | 856689 | |
| D | IAC INTERACTIVECORP | COM NEW | 44919P30 | 1106 | 41119 | SH | SHARED | 01 | 41119 | |
| D | IAC INTERACTIVECORP | COM NEW | 44919P30 | 139 | 5179 | SH | SHARED | 02 | 5179 | |
| D | IAC INTERACTIVECORP | COM NEW | 44919P30 | 2599 | 96546 | SH | SHARED | 04 | 96546 | |
| D | IAC INTERACTIVECORP | COM NEW | 44919P30 | 4 | 150 | SH | SHARED | 05 | 150 | |
| D | IAC INTERACTIVECORP | COM NEW | 44919P30 | 8 | 300 | SH | SHARED | 06 | | 300 |
| D | IAC INTERACTIVECORP | COM NEW | 44919P30 | 2194 | 81529 | SH | SHARED | 10 | 81529 | |
| D | IAC INTERACTIVECORP | COM NEW | 44919P30 | 2177 | 80900 | SH | SHARED | 14 | | 80900 |
| D | IAC INTERACTIVECORP | COM NEW | 44919P30 | 1615 | 60000 | SH | SHARED | 15 | | 60000 |
| D | IA GLOBAL INC | COM | 44920E10 | 0 | 644 | SH | SHARED | | 644 | |
| D | ICF INTL INC | COM | 44925C10 | 388 | 15364 | SH | SHARED | | 15364 | |
| D | ICF INTL INC | COM | 44925C10 | 47 | 1900 | SH | SHARED | 01 | 1900 | |
| D | ICO INC NEW | COM | 44929310 | 119 | 9332 | SH | SHARED | | 9332 | |
| D | ICO INC NEW | COM | 44929310 | 38 | 3000 | SH | SHARED | 02 | 3000 | |
| D | ICU MED INC | COM | 44930G10 | 13 | 365 | SH | SHARED | | 365 | |
| D | ICU MED INC | COM | 44930G10 | 52 | 1450 | SH | SHARED | 02 | 1450 | |
| D | ICO GLOBAL COMM HLDGS LTD DE | CL A | 44930K10 | 10 | 3397 | SH | SHARED | | 3397 | |
| D | ICOP DIGITAL INC | COM | 44930M20 | 0 | 152 | SH | SHARED | | 152 | |
| D | ICAD INC | COM | 44934S10 | 1 | 883 | SH | SHARED | | 883 | |
| D | IDM PHARMA INC | COM | 44939410 | 0 | 492 | SH | SHARED | | 492 | |
| D | I D SYSTEMS INC | COM | 44939410 | 24 | 1994 | SH | SHARED | | 1994 | |
| D | I-FLOW CORP | COM | 44952030 | 1 | 112 | SH | SHARED | | 112 | |
| D | I-FLOW CORP | COM NEW | 44952030 | 0 | 45 | SH | SHARED | 02 | 45 | |
| D | IGI INC | COM | 44957510 | 0 | 169 | SH | SHARED | | 169 | |
| D | IHOP CORP | COM | 44962310 | 146 | 4000 | SH | SHARED | | 4000 | |
| D | IHOP CORP | COM | 44962310 | 3 | 100 | SH | SHARED | 01 | 100 | |
| D | IHOP CORP | COM | 44962310 | 32 | 902 | SH | SHARED | 02 | 902 | |
| D | IHOP CORP | COM | 44962310 | 230 | 6300 | SH | SHARED | 10 | 6300 | |
| D | ILX RESORTS INC | COM NEW | 44966150 | 0 | 46 | SH | SHARED | | 46 | |
| D | I-MANY INC | COM | 44973Q10 | 3 | 1179 | SH | SHARED | | 1179 | |
| D | ING PRIME RATE TR | SH BEN INT | 44977W10 | 0 | 69 | SH | SHARED | | 69 | |
| D | ING CLARION REAL EST INCOME | COM SHS | 44978810 | 727 | 65000 | SH | SHARED | | 65000 | |
| D | IPG PHOTONICS CORP | COM | 44980X10 | 61 | 3087 | SH | SHARED | | 3087 | |
| D | IPG PHOTONICS CORP | COM | 44980X10 | 147 | 7400 | SH | SHARED | 10 | 7400 | |
| D | IPCS INC | COM | 44980Y30 | 10 | 293 | SH | SHARED | | 293 | |
| D | IPCS INC | COM NEW | 44980Y30 | 17 | 3530 | SH | SHARED | 10 | 3530 | |
| D | ING CLARION GLB RE EST INCM | COM | 44982G10 | 7670 | 554620 | SH | SHARED | | 554620 | |
| D | ING CLARION GLB RE EST INCM | COM | 44982G10 | 66 | 4816 | SH | SHARED | 23 | 4816 | |
| D | ING CLARION GLB RE EST INCM | COM | 44982G10 | 39 | 2832 | SH | SHR/OTHR | 23 | | 2832 |
| D | ING ASIA PAC HGH DIVID EQ IN | COM | 44983J10 | 91 | 4240 | SH | SHARED | | 4240 | |
| D | IMS HEALTH INC | COM | 44993410 | 4032 | 175040 | SH | SHARED | | 175040 | |
| D | IMS HEALTH INC | COM | 44993410 | 3523 | 152938 | SH | SHARED | 01 | 119053 | 33885 |
| D | IMS HEALTH INC | COM | 44993410 | 146 | 6350 | SH | SHR/OTHR | 01 | | 6350 |
| D | IMS HEALTH INC | COM | 44993410 | 82 | 3586 | SH | SHARED | 02 | 3586 | |
| D | IMS HEALTH INC | COM | 44993410 | 4 | 200 | SH | SHARED | 05 | 200 | |
| D | IMS HEALTH INC | COM | 44993410 | 62 | 2730 | SH | SHARED | 06 | | 2730 |
| D | IMS HEALTH INC | COM | 44993410 | 2127 | 92336 | SH | SHARED | 10 | 92336 | |
| D | IMS HEALTH INC | COM | 44993410 | 230 | 10000 | SH | SHARED | 14 | | 10000 |
| D | IMS HEALTH INC | COM | 44993410 | 52 | 2300 | SH | SHARED | 20 | 2300 | |
| D | IMS HEALTH INC | COM | 44993410 | 23 | 1000 | SH | SHR/OTHR | 20 | | 1000 |
| D | IMS HEALTH INC | COM | 44993410 | 20 | 885 | SH | SHR/OTHR | 21 | | 885 |
| D | IMS HEALTH INC | COM | 44993410 | 13 | 600 | SH | SHARED | 22 | 600 | |
| D | IMS HEALTH INC | COM | 44993410 | 1612 | 70000 | SH | SHR/OTHR | 23 | 69200 | 800 |
| D | IMS HEALTH INC | COM | 44993410 | 1624 | 70500 | SH | SHR/OTHR | 23 | | 70500 |

| | Name | Class | CUSIP | Value | Amount | | Discretion | Code | Sole | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|---|
| D | IRSA INVERSIONES Y REP S A | GLOBL DEP RCPT | 45004720 | 2629 | 180956 | SH | SHARED | | 180956 | | |
| D | IRSA INVERSIONES Y REP S A | GLOBL DEP RCPT | 45004720 | 293 | 20227 | SH | SHARED | | 20227 | | |
| D | IRSA INVERSIONES Y REP S A | GLOBL DEP RCPT | 45004720 | 900 | 62000 | SH | SHARED | 04 | | | 62000 |
| D | ISTAR FINL INC | COM | 45031U10 | 53419 | 2050663 | SH | SHARED | | 2050663 | | |
| D | ISTAR FINL INC | COM | 45031U10 | 33 | 1300 | SH | SHARED | 01 | 1300 | | |
| D | ISTAR FINL INC | COM | 45031U10 | 338 | 13000 | SH | SHARED | 02 | 13000 | | |
| D | ISTAR FINL INC | COM | 45031U10 | 195 | 7500 | SH | SHARED | 10 | 7500 | | |
| D | ISTAR FINL INC | COM | 45031U10 | 37858 | 1453300 | SH | SHARED | 11 | | | 1453300 |
| D | ISTAR FINL INC | COM | 45031U10 | 52 | 2000 | SH | SHARED | 21 | | | 2000 |
| D | ISTA PHARMACEUTICALS INC | COM NEW | 45031X20 | 19 | 4040 | SH | SHARED | | 4040 | | |
| D | ISTA PHARMACEUTICALS INC | COM NEW | 45031X20 | 12 | 2600 | SH | SHARED | 02 | 2600 | | |
| D | ITT EDUCATIONAL SERVICES INC | COM | 45068B10 | 3210 | 37656 | SH | SHARED | | 37656 | | |
| D | ITT EDUCATIONAL SERVICES INC | COM | 45068B10 | 1244 | 14595 | SH | SHARED | 01 | 4695 | | 9900 |
| D | ITT EDUCATIONAL SERVICES INC | COM | 45068B10 | 539 | 6328 | SH | SHARED | 02 | 6328 | | |
| D | ITT EDUCATIONAL SERVICES INC | COM | 45068B10 | 1662 | 19500 | SH | SHARED | 10 | 19500 | | |
| D | ITT EDUCATIONAL SERVICES INC | COM | 45068B10 | 17 | 200 | SH | SHARED | 21 | | | 200 |
| D | I-TRAX INC | COM NEW | 45069D20 | 3 | 1048 | SH | SHARED | | 1048 | | |
| D | IVAX DIAGNOSTICS INC | COM | 45070W10 | 0 | 201 | SH | SHARED | | 201 | | |
| D | IXIA | COM | 45071R10 | 26 | 2844 | SH | SHARED | | 2844 | | |
| D | IBERIABANK CORP | COM | 45082810 | 17 | 372 | SH | SHARED | | 372 | | |
| D | IBERIABANK CORP | COM | 45082810 | 575 | 12300 | SH | SHARED | 10 | 12300 | | |
| D | IBIS TECHNOLOGY CORP | COM | 45090910 | 0 | 373 | SH | SHARED | | 373 | | |
| D | ITT CORP NEW | COM | 45091110 | 21674 | 328197 | SH | SHARED | | 321997 | | 6200 |
| D | ITT CORP NEW | COM | 45091110 | 1895 | 28704 | SH | SHARED | 01 | 25688 | | 3016 |
| D | ITT CORP NEW | COM | 45091110 | 1597 | 24197 | SH | SHARED | 02 | 24197 | | |
| D | ITT CORP NEW | COM | 45091110 | 291571 | 4415074 | SH | SHARED | 04 | 4415074 | | |
| D | ITT CORP NEW | COM | 45091110 | 54208 | 820843 | SH | SHARED | 05 | 820843 | | |
| D | ITT CORP NEW | COM | 45091110 | 109 | 1660 | SH | SHARED | 06 | | | 1660 |
| D | ITT CORP NEW | COM | 45091110 | 5130 | 77686 | SH | SHARED | 10 | 77686 | | |
| D | ITT CORP NEW | COM | 45091110 | 2232 | 33800 | SH | SHARED | 14 | 33800 | | |
| D | ITT CORP NEW | COM | 45091110 | 132 | 2000 | SH | SHARED | 20 | 2000 | | |
| D | ITT CORP NEW | COM | 45091110 | 14 | 220 | SH | SHARED | 21 | | | 220 |
| D | ITT CORP NEW | COM | 45091110 | 95 | 1446 | SH | SHARED | 23 | 846 | | 600 |
| D | ITT CORP NEW | COM | 45091110 | 66 | 1000 | SH | SHR/OTHR | 23 | | | 1000 |
| D | IAMGOLD CORP | COM | 45091310 | 969 | 119660 | SH | SHARED | | 119660 | | |
| D | IAMGOLD CORP | COM | 45091310 | 1620 | 200000 | SH | SHARED | 04 | 200000 | | |
| D | IAMGOLD CORP | COM | 45091310 | 3862 | 476800 | SH | SHARED | 05 | 476800 | | |
| D | IAMGOLD CORP | COM | 45091310 | 33249 | 4104910 | SH | SHARED | 10 | 4104910 | | |
| D | ICON PUB LTD CO | SPONSORED ADR | 45103T10 | 236 | 3830 | SH | SHARED | | 3830 | | |
| D | ICON PUB LTD CO | SPONSORED ADR | 45103T10 | 58 | 945 | SH | SHARED | | 945 | | |
| D | ICON PUB LTD CO | SPONSORED ADR | 45103T10 | 13367 | 216100 | SH | SHARED | 10 | 216100 | | |
| D | ICICI BK LTD | ADR | 45104G10 | 307 | 5000 | SH | SHARED | | | | 5000 |
| D | ICICI BK LTD | ADR | 45104G10 | 28158 | 457869 | SH | SHARED | | 457869 | | |
| D | ICICI BK LTD | ADR | 45104G10 | 67 | 1100 | SH | SHARED | 01 | 1100 | | |
| D | ICICI BK LTD | ADR | 45104G10 | 9673 | 157300 | SH | SHARED | 02 | 157300 | | |
| D | ICICI BK LTD | ADR | 45104G10 | 204 | 3322 | SH | SHARED | 04 | | | 3322 |
| D | ICICI BK LTD | ADR | 45104G10 | 4471 | 72700 | SH | SHARED | 10 | 72700 | | |
| D | ICICI BK LTD | ADR | 45104G10 | 69 | 1138 | SH | SHARED | 21 | 1138 | | |
| D | ICAGEN INC | COM | 45104P10 | 1014 | 604042 | SH | SHARED | | 604042 | | |
| D | ICONIX BRAND GROUP INC | NOTE 1.875% 6/3 | 45105SAB | 14475 | 15000000 | PRN | SHARED | | 5000000 | | |
| D | ICONIX BRAND GROUP INC | COM | 45105510 | 26 | 1352 | SH | SHARED | | 1352 | | |
| D | ICONIX BRAND GROUP INC | COM | 45105510 | 304 | 15500 | SH | SHARED | 01 | 15500 | | |
| D | ICONIX BRAND GROUP INC | COM | 45105510 | 131 | 6700 | SH | SHARED | 10 | 6700 | | |
| D | ICAHN ENTERPRISES LP | DEPOSITORY UNIT | 45110010 | 50 | 387 | SH | SHARED | | 387 | | |
| D | IDACORP INC | COM | 45110710 | 5452 | 154805 | SH | SHARED | | 154805 | | |
| D | IDACORP INC | COM | 45110710 | 547 | 15545 | SH | SHARED | 01 | 1245 | | 14300 |
| D | IDACORP INC | COM | 45110710 | 75 | 2131 | SH | SHARED | 02 | 2131 | | |
| D | IDACORP INC | COM | 45110710 | 24083 | 683800 | SH | SHARED | 10 | 683800 | | |
| D | IDENIX PHARMACEUTICALS INC | COM | 45168R20 | 1 | 378 | SH | SHARED | 02 | 378 | | |
| D | IDEARC INC | COM | 45166310 | 0 | 37 | SH | SHARED | | 37 | | |
| D | IDEARC INC | COM | 45166310 | 0 | 25 | SH | SHR/OTHR | | | | 25 |
| D | IDEARC INC | COM | 45166310 | 4445 | 253155 | SH | SHARED | | 246948 | | 6207 |
| D | IDEARC INC | COM | 45166310 | 132 | 7528 | SH | SHARED | 01 | 5694 | | 1834 |
| D | IDEARC INC | COM | 45166310 | 6 | 356 | SH | SHR/OTHR | 01 | | | 356 |
| D | IDEARC INC | COM | 45166310 | 187 | 10655 | SH | SHARED | 02 | 10655 | | |
| D | IDEARC INC | COM | 45166310 | 1 | 59 | SH | SHARED | 05 | 59 | | |
| D | IDEARC INC | COM | 45166310 | 18 | 1034 | SH | SHARED | 06 | | | 1034 |
| D | IDEARC INC | COM | 45166310 | 6995 | 398376 | SH | SHARED | 10 | 377876 | | 20500 |
| D | IDEARC INC | COM | 45166310 | 13 | 752 | SH | SHARED | 14 | 752 | | |
| D | IDEARC INC | COM | 45166310 | 9 | 555 | SH | SHARED | 20 | 500 | | 55 |
| D | IDEARC INC | COM | 45166310 | 6 | 370 | SH | SHARED | 21 | | | 370 |
| D | IDEARC INC | COM | 45166310 | 0 | 46 | SH | SHARED | 22 | 30 | | 16 |
| D | IDEARC INC | COM | 45166310 | 0 | 25 | SH | SHR/OTHR | 22 | | | 25 |
| D | IDEARC INC | COM | 45166310 | 7 | 429 | SH | SHARED | 23 | 337 | | 92 |
| D | IDEARC INC | COM | 45166310 | 26 | 1507 | SH | SHR/OTHR | 23 | | | 1507 |
| D | IDEX CORP | COM | 45167R10 | 1317 | 36475 | SH | SHARED | | 36475 | | |
| D | IDEX CORP | COM | 45167R10 | 4539 | 125655 | SH | SHARED | | 82525 | | 43130 |
| D | IDEX CORP | COM | 45167R10 | 1005 | 27840 | SH | SHR/OTHR | 01 | | | 27840 |
| D | IDEX CORP | COM | 45167R10 | 139 | 3860 | SH | SHARED | 02 | 3860 | | |
| D | IDEX CORP | COM | 45167R10 | 115 | 3200 | SH | SHARED | 10 | 3200 | | |
| D | IDEX CORP | COM | 45167R10 | 964 | 26701 | SH | SHARED | 20 | 20782 | | 5919 |
| D | IDEX CORP | COM | 45167R10 | 9 | 275 | SH | SHR/OTHR | 20 | | | 275 |
| D | IDEX CORP | COM | 45167R10 | 203 | 5641 | SH | SHARED | 22 | 5641 | | |
| D | IDEX CORP | COM | 45167R10 | 54 | 1521 | SH | SHR/OTHR | 22 | | | 1521 |
| D | IDEX CORP | COM | 45167R10 | 276 | 7661 | SH | SHARED | 23 | 7404 | | 257 |
| D | IDEX CORP | COM | 45167R10 | 400 | 11075 | SH | SHR/OTHR | 23 | | | 11075 |
| D | IDEXX LABS INC | COM | 45168D10 | 1249 | 21317 | SH | SHARED | | 21317 | | |
| D | IDEXX LABS INC | COM | 45168D10 | 351 | 5995 | SH | SHARED | 02 | 5995 | | |
| D | IDEXX LABS INC | COM | 45168D10 | 13969 | 238268 | SH | SHARED | 10 | 238268 | | |
| D | IDEXX LABS INC | COM | 45168D10 | 680 | 11600 | SH | SHARED | 21 | | | 11600 |
| D | IDERA PHARMACEUTICALS INC | COM NEW | 45168K30 | 9 | 702 | SH | SHARED | | 702 | | |
| D | IGATE CORP | COM | 45169U10 | 159 | 18822 | SH | SHARED | | 18822 | | |
| D | IGATE CORP | COM | 45169U10 | 29 | 3500 | SH | SHARED | 02 | 3500 | | |
| D | IGATE CORP | COM | 45169U10 | 121 | 14400 | SH | SHARED | 10 | 14400 | | |
| D | IKON OFFICE SOLUTIONS INC | COM | 45171310 | 320 | 24649 | SH | SHARED | | 24649 | | |
| D | IKON OFFICE SOLUTIONS INC | COM | 45171310 | 1174 | 90215 | SH | SHARED | 01 | 90215 | | |
| D | IKON OFFICE SOLUTIONS INC | COM | 45171310 | 429 | 33000 | SH | SHARED | 02 | 33000 | | |
| D | IKON OFFICE SOLUTIONS INC | COM | 45171310 | 2192 | 168411 | SH | SHARED | 10 | 168411 | | |
| D | ILINC COMMUNICATIONS INC | COM | 45172410 | 0 | 875 | SH | SHARED | | 875 | | |
| D | IKANOS COMMUNICATIONS | COM | 45173810 | 3 | 583 | SH | SHARED | | 583 | | |
| D | IHS INC | CL A | 45173410 | 1384 | 22867 | SH | SHARED | | 22867 | | |
| D | IHS INC | CL A | 45173410 | 3197 | 52800 | SH | SHARED | 10 | 52800 | | |
| D | ILLINOIS TOOL WKS INC | COM | 45230810 | 321 | 6000 | SH | SHARED | | 6000 | | |
| D | ILLINOIS TOOL WKS INC | COM | 45230810 | 21642 | 404230 | SH | SHARED | | 404230 | | |
| D | ILLINOIS TOOL WKS INC | COM | 45230810 | 3898 | 72808 | SH | SHARED | 01 | 65363 | | 7445 |
| D | ILLINOIS TOOL WKS INC | COM | 45230810 | 439 | 8200 | SH | SHR/OTHR | 01 | | | 8200 |
| D | ILLINOIS TOOL WKS INC | COM | 45230810 | 1064 | 19875 | SH | SHARED | 02 | 19875 | | |
| D | ILLINOIS TOOL WKS INC | COM | 45230810 | 10 | 200 | SH | SHARED | 05 | 200 | | |
| D | ILLINOIS TOOL WKS INC | COM | 45230810 | 256 | 4790 | SH | SHARED | 06 | | | 4790 |
| D | ILLINOIS TOOL WKS INC | COM | 45230810 | 22837 | 426556 | SH | SHARED | 10 | 424676 | | 1880 |
| D | ILLINOIS TOOL WKS INC | COM | 45230810 | 2085 | 38945 | SH | SHARED | 20 | 10225 | | 28720 |
| D | ILLINOIS TOOL WKS INC | COM | 45230810 | 1347 | 25170 | SH | SHR/OTHR | 20 | | | 25170 |
| D | ILLINOIS TOOL WKS INC | COM | 45230810 | 913 | 17070 | SH | SHARED | 21 | 14570 | | 2500 |
| D | ILLINOIS TOOL WKS INC | COM | 45230810 | 42 | 800 | SH | SHR/OTHR | 21 | | | 800 |

```
D ILLINOIS TOOL WKS INC         COM               45230810      74     1400 SH     SHARED    22              800
D ILLINOIS TOOL WKS INC         COM               45230810     296     5540 SH     SHR/OTHR  22              600
D ILLINOIS TOOL WKS INC         COM               45230810    1936    36170 SH     SHARED    23           35570      600
D ILLINOIS TOOL WKS INC         COM               45230810     686    12822 SH     SHR/OTHR  23                     12822
D ILLUMINA INC                  NOTE 0.625% 2/1   45232TAB    9572  6525000 PRN     SHARED     02         6525000
D ILLUMINA INC                  COM               45232710    1201    20282 SH     SHARED                   20282
D ILLUMINA INC                  COM               45232710     388     6550 SH     SHARED     01            6550
D ILLUMINA INC                  COM               45232710   11746   198227 SH     SHARED     10          198227
D ILLUMINA INC                  COM               45232710       4       75 SH     SHARED     21                        75
D IMAGE ENTMT INC               COM NEW           45243920       1      408 SH     SHARED                     408
D IMAGE SENSING SYS INC         COM               45244C10       7      457 SH     SHARED                     457
D IMATION CORP                  COM               45245A10     698    33253 SH     SHARED                   33253
D IMATION CORP                  COM               45245A10     325    15490 SH     SHARED     01            1490    14000
D IMATION CORP                  COM               45245A10      32     1545 SH     SHARED                    1545
D IMATION CORP                  COM               45245A10     303    14469 SH     SHARED     10           14469
D IMAGEWARE SYS INC             COM               45245S10       0      437 SH     SHARED                     437
D IMCLONE SYS INC               NOTE 1.375% 5/1   45245WAF    2698  2868000 PRN     SHARED               2868000
D IMCLONE SYS INC               NOTE 1.375% 5/1   45245WAF   11362 12075000 PRN     SHARED     02        2075000
D IMCLONE SYS INC               COM               45245W10    2989    69531 SH     SHARED                   69531
D IMCLONE SYS INC               COM               45245W10     501    11670 SH     SHARED                   11670
D IMCLONE SYS INC               COM               45245W10    7582   176327 SH     SHARED     04          176327
D IMCLONE SYS INC               COM               45245W10     120     2800 SH     SHARED     10            2800
D IMERGENT INC                  COM               45247Q10     119    11327 SH     SHARED                   11327
D IMARX THERAPEUTICS INC        COM               45248L30       0       77 SH     SHARED                      77
D IMMTECH PHARMACEUTICALS INC   COM               45251910     117    33971 SH     SHARED                   33971
D IMMERSION CORP                COM               45252110       1      120 SH     SHARED                     120
D IMMERSION CORP                COM               45252110      77     6000 SH     SHARED     01            6000
D IMMERSION CORP                COM               45252110     145    11200 SH     SHARED     01           11200     6000
D IMMUCELL CORP                 COM PAR $0.10     45252530       0       67 SH     SHARED                      67
D IMMUCOR INC                   COM               45252610     137     4043 SH     SHARED                    4043
D IMMUCOR INC                   COM               45252610      16      500 SH     SHARED     01             500
D IMMUCOR INC                   COM               45252610      52     1550 SH     SHARED     02            1550
D IMMUCOR INC                   COM               45252610     112     3300 SH     SHARED     10            3300
D IMMUCOR INC                   COM               45252610       3       95 SH     SHARED     21                        95
D IMMUNOGEN INC                 COM               45253H10      21     5130 SH     SHARED                    5130
D IMPAC MTG HLDGS INC           COM               45254P10      88   157452 SH     SHARED                  157452
D IMPAC MTG HLDGS INC           COM               45254P10    1680  3000000 SH     SHARED     10         3000000
D IMMUNICON CORP DEL            COM               45260A10       0      671 SH     SHARED                     671
D IMPERIAL CAP BANCORP INC      COM               45268010       1      102 SH     SHARED                     102
D IMPERIAL CAP BANCORP INC      COM               45268010      51     2800 SH     SHARED     01            2800
D IMPERIAL CAP BANCORP INC      COM               45268010      47     2600 SH     SHARED     10            2600
D IMPERIAL INDS INC             COM NEW           45284840      19     4851 SH     SHARED                    4851
D IMMUNOMEDICS INC              COM               45290710       0      251 SH     SHARED                     251
D INCOME OPPORTUNITY RLTY INVS  COM               45292610       0       23 SH     SHARED                      23
D IMPERIAL OIL LTD              COM NEW           45303840    5910   107901 SH     SHARED                  106701     1200
D IMPERIAL OIL LTD              COM NEW           45303840     442     8086 SH     SHARED     01            3586     4500
D IMPERIAL OIL LTD              COM NEW           45303840      10      200 SH     SHARED     05             200
D IMPERIAL OIL LTD              COM NEW           45303840      93     1700 SH     SHARED     06                      1700
D IMPERIAL OIL LTD              COM NEW           45303840    1252    22860 SH     SHARED     10           20160     2700
D IMPERIAL OIL LTD              COM NEW           45303840     487     8900 SH     SHARED     14            8900
D IMPERIAL OIL LTD              COM NEW           45303840      49      900 SH     SHARED     19                       900
D IMPERIAL OIL LTD              COM NEW           45303840    3274    59775 SH     SHARED     20           11300    48475
D IMPERIAL OIL LTD              COM NEW           45303840    9109   166300 SH     SHR/OTHR   20                    166300
D IMPERIAL OIL LTD              COM NEW           45303840     210     3847 SH     SHARED     21            3847
D IMPERIAL OIL LTD              COM NEW           45303840     427     7800 SH     SHARED     23                      7800
D IMPERIAL SUGAR CO NEW         COM NEW           45309620     838    44646 SH     SHARED                   44646
D IMPERIAL SUGAR CO NEW         COM NEW           45309620      67     3600 SH     SHARED     01            1000     2600
D IMPERIAL SUGAR CO NEW         COM NEW           45309620    1803    96100 SH     SHARED     10           96100
D IMPERIAL TOBACCO GROUP PLC    SPONSORED ADR     45314210      21      200 SH     SHARED                     200
D IMPERIAL TOBACCO GROUP PLC    SPONSORED ADR     45314210    2227    20762 SH     SHARED                   20762
D IMPERIAL TOBACCO GROUP PLC    SPONSORED ADR     45314210   76280   711040 SH     SHARED     10          711040
D IMPERIAL TOBACCO GROUP PLC    SPONSORED ADR     45314210      98      920 SH     SHARED     21             920
D IMPLANT SCIENCES CORP         COM               45320810       0      261 SH     SHARED                     261
D INCYTE CORP                   NOTE 3.500% 2/1   45337CAF    3356  3340000 PRN     SHARED     02         3340000
D INCYTE CORP                   COM               45337C10     330    32838 SH     SHARED                   32838
D INCYTE CORP                   COM               45337C10      30     3000 SH     SHARED     01            3000
D INDEPENDENCE FED SVGS BK      COM               45343210       0       37 SH     SHARED                      37
D INDEPENDENCE HLDG CO NEW      COM NEW           45344030     491    38883 SH     SHARED                   38883
D INDEPENDENT BANK CORP MASS    COM               45383610      29     1077 SH     SHARED                    1077
D INDEPENDENT BANK CORP MASS    COM               45383610     155     5700 SH     SHARED     10            5700
D INDEPENDENT BANK CORP MICH    COM               45383810       4      458 SH     SHARED                     458
D INDEPENDENT BANK CORP MICH    COM               45383810      81     8600 SH     SHARED     10            8600
D INDEVUS PHARMACEUTICALS INC   COM               45407210     945   135991 SH     SHARED                  135991
D INDEVUS PHARMACEUTICALS INC   COM               45407210       4      632 SH     SHARED     01             632
D INDEVUS PHARMACEUTICALS INC   COM               45407210       2      391 SH     SHARED     02             391
D INDIA GLOBALIZATION CAP INC   COM               45408A10     581    98611 SH     SHARED                   98611
D INDIA FD INC                  COM               45408910    9259   148729 SH     SHARED                  148729
D INDIA FD INC                  COM               45408910      63     1013 SH     SHR/OTHR   23           12379
D INDONESIA FD INC              COM               45577810     148    12379 SH     SHARED                   12379
D INDUSTRIAL DISTR GROUP INC    COM               45606110     399    34708 SH     SHARED                   34708
D INDUSTRIAL SVCS AMER INC FLA  COM               45631410       1      260 SH     SHARED                     260
D INDUSTRIAS BACHOCO S A B DE   SPON ADR B        46646310      10      320 SH     SHARED                     320
D INDYMAC BANCORP INC           COM               45660710      72    12163 SH     SHARED                   12163
D INDYMAC BANCORP INC           COM               45660710     200    33700 SH     SHARED     01           33700    33700
D INDYMAC BANCORP INC           COM               45660710     286    48137 SH     SHARED     02           48137
D INDYMAC BANCORP INC           COM               45660710     821   137994 SH     SHARED     10           69794    68200
D INERGY HLDGS L P              COM               45661Q10      12      288 SH     SHARED                     288
D INERGY L P                    UNIT LTD PTNR     45661S10      33     1079 SH     SHARED                    1079
D INFINEON TECHNOLOGIES AG      SPONSORED ADR     45662N10   18689  1605595 SH     SHARED                 1605595
D INFINITY ENERGY RESOURCES IN  COM PAR .0001     45665B10       4     6516 SH     SHARED                    6516
D INFOCUS CORP                  COM               45665810      49    26989 SH     SHARED                   26989
D INFINITY PHARMACEUTICALS INC  COM               45665Q30       1      171 SH     SHARED                     171
D INFINITY PPTY & CAS CORP      COM               45665Q10     387    10733 SH     SHARED                   10733
D INFINITY PPTY & CAS CORP      COM               45665Q10     592    16400 SH     SHARED     02           16400
D INFINITY PPTY & CAS CORP      COM               45665Q10     345     9566 SH     SHARED     10            9566
D INFORMATICA CORP              NOTE 3.000% 3/1   45666QAB   35205 31100000 PRN     SHARED               1100000
D INFORMATICA CORP              NOTE 3.000% 3/1   45666QAB     183   162000 PRN     SHARED     02          162000
D INFORMATICA CORP              COM               45666Q10    1826   101384 SH     SHARED                  101384
D INFORMATICA CORP              COM               45666Q10     241    13375 SH     SHARED     02           13375
D INFORMATICA CORP              COM               45666Q10    1261    70000 SH     SHARED     04           70000
D INFORMATICA CORP              COM               45666Q10    7150   396800 SH     SHARED     10          396800
D INFINERA CORPORATION          COM               45666X10      21     1450 SH     SHARED                    1450
D INFOLOGIX INC                 COM               45668X10       0      343 SH     SHARED                     343
D INFORMATION SERVICES GROUP I  COM               45675Y10    8529  1245151 SH     SHARED     02         1245151
D INFORMATION SERVICES GROUP I  *W EXP 01/31/201  45675Y11     176   175000 SH     SHARED               175000
D INFORMATION SERVICES GROUP I  *W EXP 01/31/201  45675Y11      52    52000 SH     SHARED     02           52000
D INFOSPACE INC                 COM NEW           45678T20    7062   375666 SH     SHARED                  375666
D INFOSPACE INC                 COM NEW           45678T20      22     1200 SH     SHARED     01            1200
D INFOSPACE INC                 COM NEW           45678T20    1017    54100 SH     SHARED     10           54100
D INFOSONICS CORP               COM               45678410       0      230 SH     SHARED                     230
D INFOSYS TECHNOLOGIES LTD      SPONSORED ADR     45678810     467    10300 SH     SHARED                            10300
D INFOSYS TECHNOLOGIES LTD      SPONSORED ADR     45678810   28703   632789 SH     SHARED                  632789
D INFOSYS TECHNOLOGIES LTD      SPONSORED ADR     45678810      36      800 SH     SHARED     01             800
D INFOSYS TECHNOLOGIES LTD      SPONSORED ADR     45678810    3261    71900 SH     SHARED     02           71900
```

```
D INFOSYS TECHNOLOGIES LTD      SPONSORED ADR   45678810   1270    28000 SH    SHARED   04         28000
D INFOSYS TECHNOLOGIES LTD      SPONSORED ADR   45678810   1243    27424 SH    SHARED   10         27424
D INFOSYS TECHNOLOGIES LTD      SPONSORED ADR   45678810     53     1190 SH    SHARED   21          1190
D INFOUSA INC NEW               COM             45681830     79     8898 SH    SHARED               8898
D INFOUSA INC NEW               COM             45681830    337    37750 SH    SHARED   01         37750
D INFOUSA INC NEW               COM             45681830     91    10200 SH    SHARED   02         10200
D ING GROUP N V                 SPONSORED ADR   45683710   1136    29217 SH    SHARED              29217
D ING GROUP N V                 SPONSORED ADR   45683710     19      500 SH    SHARED                           500
D INGLES MKTS INC               CL A            45703010    119     4700 SH    SHARED                4700
D INGLES MKTS INC               CL A            45703010     27     1100 SH    SHARED   01          1100
D INGLES MKTS INC               CL A            45703010    624    24600 SH    SHARED   10         24600
D INGRAM MICRO INC              CL A            45715310   7379   409078 SH    SHARED             409078
D INGRAM MICRO INC              CL A            45715310   1107    61400 SH    SHARED   01         15800        45600
D INGRAM MICRO INC              CL A            45715310     50     2825 SH    SHR/OTHR 01                       2825
D INGRAM MICRO INC              CL A            45715310    314    17448 SH    SHARED   02         17448
D INGRAM MICRO INC              CL A            45715310    729    40448 SH    SHARED   10         40448
D INHIBITEX INC                 COM             45719710    323   415161 SH    SHARED             415161
D INLAND REAL ESTATE CORP       NOTE  4.625%11/1 457461AB   900  1000000 PRN   SHARED            1000000
D INLAND REAL ESTATE CORP       NOTE  4.625%11/1 457461AB   675   750000 PRN   SHARED   02        750000
D INLAND REAL ESTATE CORP       COM NEW         45746120   3418   241395 SH    SHARED             241395
D INLAND REAL ESTATE CORP       COM NEW         45746120     59     4200 SH    SHARED   01          4200
D INLAND REAL ESTATE CORP       COM NEW         45746120   1949   137700 SH    SHARED   10        137700
D INLAND REAL ESTATE CORP       COM NEW         45746120  33250  2348200 SH    SHARED   11       2348200     2348200
D INNODATA ISOGEN INC           COM             45764220      3      568 SH    SHARED                 568
D INNOVEX INC                   COM             45764710      0      500 SH    SHARED                 500
D INSIGHT ENTERPRISES INC       COM             45765U10      6      370 SH    SHARED                 370
D INSIGHT ENTERPRISES INC       COM             45765U10     56     3100 SH    SHARED   01          3100
D INSIGHT ENTERPRISES INC       COM             45765U10   1092    59900 SH    SHARED   10         59900
D INSIGNIA SYS INC              COM             45765Y10      1      370 SH    SHARED                 370
D INPUT/OUTPUT INC              NOTE  5.500%12/1 457652AB   743   200000 PRN   SHARED   02        200000
D INSITE VISION INC             COM             45766010      1     2128 SH    SHARED                2128
D INSITUFORM TECHNOLOGIES INC   CL A            45766710    230    15577 SH    SHARED              15577
D INSITUFORM TECHNOLOGIES INC   CL A            45766710     23     1600 SH    SHARED   02          1600
D INSITUFORM TECHNOLOGIES INC   CL A            45766710    159    10800 SH    SHARED   10         10800
D INSMED INC                    COM NEW         45766920      2     2997 SH    SHARED                2997
D INNOTRAC CORP                 COM             45767M10      0       68 SH    SHARED                  68
D INNOSPEC INC                  COM             45768S10     62     3635 SH    SHARED                3635
D INNOSPEC INC                  COM             45768S10    185    10800 SH    SHARED   10         10800
D INNOVATIVE SOLUTIONS & SUPPO  COM             45769N10     74     7637 SH    SHARED                7637
D INSIGHTFUL CORP               COM             45770X10      0      256 SH    SHARED                 256
D INOVIO BIOMEDICAL CORP        COM             45773H10      1     1132 SH    SHARED                1132
D INPLAY TECHNOLOGIES INC       COM             45773L10      0      232 SH    SHARED                 232
D INNOVATIVE CARD TECHNLGS INC  COM             45773R10      1      506 SH    SHARED                 506
D INNERWORKINGS INC             COM             45773Y10     13      811 SH    SHARED                 811
D INNERWORKINGS INC             COM             45773Y10   2970   172100 SH    SHARED   10        172100
D INSPIRE PHARMACEUTICALS INC   COM             45773310     30     5109 SH    SHARED                5109
D INSPIRE PHARMACEUTICALS INC   COM             45773310    916   153185 SH    SHARED   02        153185
D INSTEEL INDUSTRIES INC        COM             45774W10     20     1736 SH    SHARED                1736
D INSULET CORP                  COM             45784U10      7      334 SH    SHARED                 334
D INNSUITES HOSPITALITY TR      SH BEN INT      45784V10      0       88 SH    SHARED                  88
D INTEGRA LIFESCIENCES HLDGS C  NOTE  2.500% 3/1 457985AD 35699 29000000 PRN   SHARED            9000000
D INTEGRA LIFESCIENCES HLDGS C  COM NEW         45798520   1848    44089 SH    SHARED              44089
D INTEGRA LIFESCIENCES HLDGS C  COM NEW         45798520     51     1225 SH    SHARED   02          1225
D INSURE COM INC                COM             45807N10      0       56 SH    SHARED                  56
D INSURED MUN INCOME FD         COM             45809F10    118     9319 SH    SHARED                9319
D INSURED MUN INCOME FD         COM NEW         45809P10    431    34000 SH    SHARED   20           531        34000
D INSWEB CORP                   COM NEW         45809K20      0       53 SH    SHARED                  53
D INTEGRAL SYS INC MD           COM             45810J10     58     2516 SH    SHARED                2516
D INTEGRAMED AMER INC           COM NEW         45810N30      2      183 SH    SHARED                 183
D INTEGRATED ELECTRICAL SVC     COM             45811B30    262    13981 SH    SHARED              13981
D INTEGRATED ELECTRICAL SVC     COM             45811B30    762    40600 SH    SHARED   01         40400          200
D INTEGRATED ELECTRICAL SVC     COM             45811B30   1012    53900 SH    SHR/OTHR 01                      53900
D INTEGRATED ELECTRICAL SVC     COM             45811B30    578    30800 SH    SHARED   10         30800
D INTEGRATED BIOPHARMA INC      COM             45811V10      0      173 SH    SHARED                 173
D INTEGRATED DEVICE TECHNOLOGY  COM             45811810    829    73382 SH    SHARED              73382
D INTEGRATED DEVICE TECHNOLOGY  COM             45811810   1007    89070 SH    SHARED   01         29200        59870
D INTEGRATED DEVICE TECHNOLOGY  COM             45811810    272    24056 SH    SHARED   02         24056
D INTEGRATED DEVICE TECHNOLOGY  COM             45811810    217    19210 SH    SHARED   10         19210
D INTEGRATED DEVICE TECHNOLOGY  COM             45811810   1290   114100 SH    SHARED   14        114100
D INTEGRATED SILICON SOLUTION   COM             45812P10    297    44904 SH    SHARED              44904
D INTEGRATED SILICON SOLUTION   COM             45812P10     33     5100 SH    SHARED   02          5100
D INTEGRA BK CORP               COM             45814P10      3      254 SH    SHARED                 254
D INTEGRA BK CORP               COM             45814P10     25     1800 SH    SHARED   10          1800
D INTEL CORP                    SDCV  2.950%12/1 45814OAD 10456  9700000 PRN   SHARED            9700000
D INTEL CORP                    SDCV  2.950%12/1 45814OAD   323   300000 PRN   SHARED   02        300000
D INTEL CORP                    SDCV  2.950%12/1 45814OAD 49588 46000000 PRN   SHARED            6000000
D INTEL CORP                    COM             45814O10    146     5481 SH    SHARED                 130         5351
D INTEL CORP                    COM             45814O10 366066 13730911 SH    SHARED            3647121       83790
D INTEL CORP                    COM             45814O10  50547  1896021 SH    SHARED   01       1394290       501731
D INTEL CORP                    COM             45814O10   7478   280499 SH    SHR/OTHR 01                     280499
D INTEL CORP                    COM             45814O10 186757  7005140 SH    SHARED   02       7005140
D INTEL CORP                    COM             45814O10    170     6390 SH    SHARED   04                       6390
D INTEL CORP                    COM             45814O10  52904  1984400 SH    SHARED   04       1984400
D INTEL CORP                    COM             45814O10  14914   559440 SH    SHARED   05        559440
D INTEL CORP                    COM             45814O10  26051   977167 SH    SHARED   06                     977167
D INTEL CORP                    COM             45814O10 268196 10059890 SH    SHARED   10       9769600       290290
D INTEL CORP                    COM             45814O10    475    17826 SH    SHR/OTHR 10                      17826
D INTEL CORP                    COM             45814O10   5521   207114 SH    SHARED   14        207114
D INTEL CORP                    COM             45814O10   3999   150000 SH    SHARED   15        150000
D INTEL CORP                    COM             45814O10    181     6800 SH    SHARED   19                       6800
D INTEL CORP                    COM             45814O10  13093   491117 SH    SHARED   20        217511       273606
D INTEL CORP                    COM             45814O10   9872   370315 SH    SHR/OTHR 20                     370315
D INTEL CORP                    COM             45814O10   2593    97269 SH    SHARED   21         69378        27891
D INTEL CORP                    COM             45814O10    147     5527 SH    SHR/OTHR 21                       5527
D INTEL CORP                    COM             45814O10   2646    99252 SH    SHARED   22         81193        18059
D INTEL CORP                    COM             45814O10    802    30110 SH    SHR/OTHR 22                      30110
D INTEL CORP                    COM             45814O10   7557   283462 SH    SHARED   23        245842        37620
D INTEL CORP                    COM             45814O10  11141   417910 SH    SHR/OTHR 23                     417910
D INTEL CORP                    COM             45814O10    148     5567 SH    SHARED   24          5567
D INTELLIGENT SYS CORP NEW      COM             45816D10      0       97 SH    SHARED                  97
D INTELLON CORP                 COM             45816W50      1      196 SH    SHARED                 196
D INTELLON CORP                 COM             45816W50   1173   155662 SH    SHARED   02        155662
D INTELLI-CHECK INC             COM             45817Q10      1      319 SH    SHARED                 319
D INTEGRITY BANCSHARES INC      COM             45818D10      0      380 SH    SHARED                 380
D INTEGRYS ENERGY GROUP INC     COM             45822P10  15159   293285 SH    SHARED             293285
D INTEGRYS ENERGY GROUP INC     COM             45822P10    827    16008 SH    SHARED   01         13038         2970
D INTEGRYS ENERGY GROUP INC     COM             45822P10    699    13534 SH    SHARED   02         13534
D INTEGRYS ENERGY GROUP INC     COM             45822P10  27217   526551 SH    SHARED   10        526551
D INTEGRYS ENERGY GROUP INC     COM             45822P10     15      300 SH    SHARED   20           300
D INTEGRYS ENERGY GROUP INC     COM             45822P10    167     3249 SH    SHARED   21          1249         2000
D INTEGRYS ENERGY GROUP INC     COM             45822P10     63     1237 SH    SHR/OTHR 23                       1237
D INTER PARFUMS INC             COM             45833410      1      102 SH    SHARED                 102
D INTERACTIVE INTELLIGENCE INC  COM             45839M10    554    21030 SH    SHARED              21030
D INTERACTIVE INTELLIGENCE INC  COM             45839M10     15      600 SH    SHARED   01           600
```

| D | Name | Class | CUSIP | | | Unit | Type | Code | | |
|---|------|-------|-------|---|---|------|------|------|---|---|
| D | INTERACTIVE INTELLIGENCE INC | COM | 45839M10 | 61 | 2347 | SH | SHARED | 02 | 2347 | |
| D | INTERACTIVE INTELLIGENCE INC | COM | 45839M10 | 139 | 5300 | SH | SHARED | 10 | 5300 | |
| D | INTERACTIVE DATA CORP | COM | 45840J10 | 1081 | 32777 | SH | SHARED | | 32777 | |
| D | INTERACTIVE DATA CORP | COM | 45840J10 | 76 | 2320 | SH | SHARED | 01 | 2320 | |
| D | INTERACTIVE DATA CORP | COM | 45840J10 | 14 | 450 | SH | SHARED | 02 | 450 | |
| D | INTERACTIVE DATA CORP | COM | 45840J10 | 1333 | 40400 | SH | SHARED | 10 | 40400 | |
| D | INTERACTIVE BROKERS GROUP IN | COM | 45841N10 | 7858 | 243147 | SH | SHARED | | 243147 | |
| D | INTERACTIVE BROKERS GROUP IN | COM | 45841N10 | 458 | 14200 | SH | SHARED | 01 | 14200 | |
| D | INTERACTIVE BROKERS GROUP IN | COM | 45841N10 | 2052 | 63500 | SH | SHARED | 10 | 63500 | |
| D | INTERCONTINENTAL HTLS GRP PL | SPONS ADR NEW | 45857P30 | 56 | 3254 | SH | SHARED | | 3254 | |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 1181 | 6140 | SH | SHARED | | 5490 | 650 |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 17141 | 89045 | SH | SHARED | | 89045 | |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 13352 | 69365 | SH | SHARED | 01 | 52524 | 16841 |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 2682 | 13933 | SH | SHR/OTHR | 01 | 13933 | |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 1652 | 8586 | SH | SHARED | 02 | 8586 | |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 346 | 1800 | SH | SHARED | 04 | 1800 | |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 12512 | 65000 | SH | SHARED | 05 | 65000 | |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 96 | 500 | SH | SHARED | 06 | 500 | |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 8118 | 42175 | SH | SHARED | 10 | 41540 | 635 |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 1454 | 7555 | SH | SHARED | 20 | 4925 | 2630 |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 651 | 3385 | SH | SHR/OTHR | 20 | 3385 | |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 115 | 600 | SH | SHARED | 21 | 600 | |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 1153 | 5990 | SH | SHARED | 22 | 4850 | 1140 |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 163 | 850 | SH | SHR/OTHR | 22 | 850 | |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 2312 | 12014 | SH | SHARED | 23 | 8014 | 4000 |
| D | INTERCONTINENTALEXCHANGE INC | COM | 45865V10 | 579 | 3008 | SH | SHR/OTHR | 23 | 3008 | |
| D | INTERFACE INC | CL A | 45866510 | 244 | 14958 | SH | SHARED | | 14958 | |
| D | INTERFACE INC | CL A | 45866510 | 169 | 10400 | SH | SHARED | 01 | 10400 | |
| D | INTERFACE INC | CL A | 45866510 | 17 | 1100 | SH | SHARED | 02 | 1100 | |
| D | INTERFACE INC | CL A | 45866510 | 675 | 41394 | SH | SHARED | 10 | 41394 | |
| D | INTERDIGITAL INC | COM | 45867010 | 255 | 10940 | SH | SHARED | 01 | 10940 | |
| D | INTERDIGITAL INC | COM | 45867G10 | 340 | 14600 | SH | SHARED | 10 | 14600 | |
| D | INTERGROUP CORP | COM | 45868510 | 54 | 3015 | SH | SHARED | 20 | | 3015 |
| D | INTERLEUKIN GENETICS INC | COM | 45873810 | 0 | 470 | SH | SHARED | | 470 | |
| D | INTERLINE BRANDS INC | COM | 45874310 | 260 | 11904 | SH | SHARED | | 11904 | |
| D | INTERLINE BRANDS INC | COM | 45874310 | 14 | 675 | SH | SHARED | 02 | 675 | |
| D | INTERLINE BRANDS INC | COM | 45874310 | 183 | 8369 | SH | SHARED | 10 | 8369 | |
| D | INTERMEC INC | COM | 45878610 | 235 | 11600 | SH | SHARED | | 11600 | |
| D | INTERMEC INC | COM | 45878610 | 40 | 1981 | SH | SHARED | 10 | 1981 | |
| D | INTERMEC INC | COM | 45878610 | 60 | 3000 | SH | SHARED | 23 | | 3000 |
| D | INTERMUNE INC | NOTE 0.250% 3/0 | 45884XAC | 931 | 1000000 | PRN | SHARED | 02 | 1000000 | |
| D | INTERMUNE INC | COM | 45884X10 | 190 | 14311 | SH | SHARED | | 14311 | |
| D | INTERMUNE INC | COM | 45884X10 | 6880 | 516179 | SH | SHARED | 04 | 516179 | |
| D | INTERNAP NETWORK SVCS CORP | COM PAR $.001 | 45885A30 | 1837 | 220564 | SH | SHARED | | 220564 | |
| D | INTERNAP NETWORK SVCS CORP | COM PAR $.001 | 45885A30 | 14 | 1800 | SH | SHARED | 01 | 1800 | |
| D | INTERNAP NETWORK SVCS CORP | COM PAR $.001 | 45885A30 | 302 | 36300 | SH | SHARED | 10 | 36300 | |
| D | INTERNAP NETWORK SVCS CORP | COM PAR $.001 | 45885A30 | 4 | 504 | SH | SHARED | 20 | 504 | |
| D | INTER ATLANTIC FINANCIAL INC | COM | 45890H10 | 1165 | 160053 | SH | SHARED | | 160053 | |
| D | INTER ATLANTIC FINANCIAL INC | *W EXP 10/02/201 | 45890H11 | 70 | 85454 | SH | SHARED | | 85454 | |
| D | INTER ATLANTIC FINANCIAL INC | UNIT 99/99/9999 | 45890820 | 330 | 41149 | SH | SHARED | | 41149 | |
| D | INTERNATIONAL ASSETS HLDG CO | COM | 45902810 | 3 | 146 | SH | SHARED | | 146 | |
| D | INTERNATIONAL BANCSHARES COR | COM | 45904410 | 12 | 575 | SH | SHARED | | 575 | |
| D | INTERNATIONAL BANCSHARES COR | COM | 45904410 | 582 | 27800 | SH | SHARED | 10 | 27800 | |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 103 | 954 | SH | SHARED | | 954 | |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 332829 | 3078907 | SH | SHARED | | 2872811 | 206096 |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 29791 | 275588 | SH | SHARED | 01 | 225330 | 50258 |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 13478 | 124690 | SH | SHR/OTHR | 01 | 124690 | |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 3925 | 36315 | SH | SHARED | 02 | 36315 | |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 74866 | 692563 | SH | SHARED | 04 | 692563 | |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 965 | 8930 | SH | SHARED | 05 | 8930 | |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 6817 | 63066 | SH | SHARED | 06 | | 63066 |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 366284 | 3388385 | SH | SHARED | 10 | 3327585 | 60800 |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 41 | 384 | SH | SHR/OTHR | 10 | 384 | |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 1727 | 15979 | SH | SHARED | 14 | 6100 | 9879 |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 5553 | 51373 | SH | SHARED | 16 | 51373 | |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 16 | 150 | SH | SHARED | 19 | | 150 |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 7232 | 66909 | SH | SHARED | 20 | 17528 | 49381 |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 3723 | 34442 | SH | SHR/OTHR | 20 | 34442 | |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 669 | 6189 | SH | SHARED | 21 | 6089 | 100 |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 466 | 4320 | SH | SHR/OTHR | 21 | 4320 | |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 993 | 9190 | SH | SHARED | 22 | 7079 | 2111 |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 588 | 5442 | SH | SHR/OTHR | 22 | 5442 | |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 13745 | 127152 | SH | SHARED | 23 | 111700 | 15452 |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 25927 | 239847 | SH | SHR/OTHR | 23 | 239847 | |
| D | INTERNATIONAL BUSINESS MACHS | COM | 45920010 | 107 | 991 | SH | SHARED | 24 | 991 | |
| D | INTERNATIONAL COAL GRP INC N | COM | 45928810 | 970 | 181135 | SH | SHARED | | 181135 | |
| D | INTERNATIONAL COAL GRP INC N | COM | 45928H10 | 10 | 2025 | SH | SHARED | 02 | 2025 | |
| D | INTERNATIONAL COAL GRP INC N | COM | 45928H10 | 101 | 18900 | SH | SHARED | 10 | 18900 | |
| D | INTERNATIONAL FLAVORS&FRAGRA | COM | 45950610 | 25304 | 525748 | SH | SHARED | | 525748 | |
| D | INTERNATIONAL FLAVORS&FRAGRA | COM | 45950610 | 3961 | 82315 | SH | SHARED | 01 | 68756 | 13559 |
| D | INTERNATIONAL FLAVORS&FRAGRA | COM | 45950610 | 139 | 2907 | SH | SHR/OTHR | 01 | 2907 | |
| D | INTERNATIONAL FLAVORS&FRAGRA | COM | 45950610 | 813 | 16910 | SH | SHARED | 02 | 16910 | |
| D | INTERNATIONAL FLAVORS&FRAGRA | COM | 45950610 | 1703 | 35400 | SH | SHARED | 10 | 35400 | |
| D | INTERNATIONAL FLAVORS&FRAGRA | COM | 45950610 | 3636 | 75559 | SH | SHARED | 10 | 75559 | |
| D | INTERNATIONAL FLAVORS&FRAGRA | COM | 45950610 | 1371 | 28500 | SH | SHR/OTHR | 20 | 28500 | |
| D | INTERNATIONAL FLAVORS&FRAGRA | COM | 45950610 | 48 | 1000 | SH | SHARED | 23 | 1000 | |
| D | INTERNATIONAL GAME TECHNOLOG | DBCV 2.600%12/1 | 459902AP | 13398 | 13200000 | PRN | SHARED | | 3200000 | |
| D | INTERNATIONAL GAME TECHNOLOG | DBCV 2.600%12/1 | 459902AP | 1121 | 1105000 | PRN | SHARED | 02 | 1105000 | |
| D | INTERNATIONAL GAME TECHNOLOG | COM | 45990210 | 30910 | 703630 | SH | SHARED | | 703630 | |
| D | INTERNATIONAL GAME TECHNOLOG | COM | 45990210 | 1690 | 38492 | SH | SHARED | 01 | 38242 | 250 |
| D | INTERNATIONAL GAME TECHNOLOG | COM | 45990210 | 3316 | 75497 | SH | SHARED | 02 | 75497 | |
| D | INTERNATIONAL GAME TECHNOLOG | COM | 45990210 | 1559 | 35500 | SH | SHARED | 04 | 35500 | |
| D | INTERNATIONAL GAME TECHNOLOG | COM | 45990210 | 5 | 130 | SH | SHARED | 05 | 130 | |
| D | INTERNATIONAL GAME TECHNOLOG | COM | 45990210 | 136 | 3110 | SH | SHARED | 06 | | 3110 |
| D | INTERNATIONAL GAME TECHNOLOG | COM | 45990210 | 6040 | 137508 | SH | SHARED | 10 | 137508 | |
| D | INTERNATIONAL GAME TECHNOLOG | COM | 45990210 | 69 | 1580 | SH | SHARED | 20 | 310 | 1270 |
| D | INTERNATIONAL GAME TECHNOLOG | COM | 45990210 | 20 | 470 | SH | SHR/OTHR | 20 | 470 | |
| D | INTERNATIONAL GAME TECHNOLOG | COM | 45990210 | 52 | 1200 | SH | SHARED | 23 | 1200 | |
| D | INTERNATIONAL GAME TECHNOLOG | COM | 45990210 | 35 | 800 | SH | SHR/OTHR | 23 | | 800 |
| D | INTL PAPER CO | COM | 46014610 | 96343 | 2975406 | SH | SHARED | | 2965406 | 10000 |
| D | INTL PAPER CO | COM | 46014610 | 2476 | 76484 | SH | SHARED | 01 | 60013 | 16471 |
| D | INTL PAPER CO | COM | 46014610 | 347 | 10730 | SH | SHR/OTHR | 01 | 10730 | |
| D | INTL PAPER CO | COM | 46014610 | 5783 | 178621 | SH | SHARED | 02 | 178621 | |
| D | INTL PAPER CO | COM | 46014610 | 5 | 158 | SH | SHARED | 05 | 158 | |
| D | INTL PAPER CO | COM | 46014610 | 133 | 4120 | SH | SHARED | 06 | | 4120 |
| D | INTL PAPER CO | COM | 46014610 | 16801 | 518899 | SH | SHARED | 10 | 463099 | 55800 |
| D | INTL PAPER CO | COM | 46014610 | 233 | 7211 | SH | SHARED | 14 | 7211 | |
| D | INTL PAPER CO | COM | 46014610 | 43 | 1336 | SH | SHARED | 20 | 1336 | |
| D | INTL PAPER CO | COM | 46014610 | 145 | 4500 | SH | SHARED | 21 | 4500 | |
| D | INTL PAPER CO | COM | 46014610 | 237 | 7342 | SH | SHARED | 22 | 6600 | 742 |
| D | INTL PAPER CO | COM | 46014610 | 452 | 13978 | SH | SHR/OTHR | 23 | 13978 | |
| D | INTERNATIONAL RECTIFIER CORP | COM | 46025410 | 3890 | 114531 | SH | SHARED | | 114531 | |
| D | INTERNATIONAL RECTIFIER CORP | COM | 46025410 | 1063 | 31300 | SH | SHARED | 01 | 9600 | 21700 |
| D | INTERNATIONAL RECTIFIER CORP | COM | 46025410 | 259 | 7636 | SH | SHARED | 02 | 7636 | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | INTERNATIONAL RECTIFIER CORP | COM | 46025410 | 125 | 3700 | SH | SHARED | 10 | 3700 | |
| D | INTERNATIONAL ROYALTY CORP | COM | 46027710 | 1 | 291 | SH | SHARED | | 291 | |
| D | INTERNATIONAL SHIPHOLDING CO | COM NEW | 46032120 | 2 | 111 | SH | SHARED | | 111 | |
| D | INTERNATIONAL SHIPHOLDING CO | PFD 6% CONV EX | 46032130 | 232 | 4300 | SH | SHARED | 02 | 4300 | |
| D | INTERNATIONAL SPEEDWAY CORP | CL A | 46033520 | 545 | 13244 | SH | SHARED | | 13244 | |
| D | INTERNATIONAL SPEEDWAY CORP | CL A | 46033520 | 695 | 16900 | SH | SHARED | 01 | 7800 | 9100 |
| D | INTERNATIONAL SPEEDWAY CORP | CL A | 46033520 | 60 | 1465 | SH | SHARED | 02 | 1465 | |
| D | INTERNATIONAL SPEEDWAY CORP | CL A | 46033520 | 108 | 2638 | SH | SHARED | 10 | 2638 | |
| D | INTERPHARM HLDGS INC | COM | 46058810 | 0 | 591 | SH | SHARED | | 591 | |
| D | INTERNET INITIATIVE JAPAN IN | SPONSORED ADR | 46059Y10 | 41 | 4184 | SH | SHARED | | 4184 | |
| D | INTERNET HOLDRS TR | DEPOSIT RCPT | 46059W10 | 1142 | 19300 | SH | SHARED | 15 | 19300 | |
| D | INTERNET HOLDRS TR | DEPOSIT RCPT | 46059W10 | 467 | 7900 | SH | SHARED | 19 | 7900 | |
| D | INTERPHASE CORP | COM | 46059310 | 1 | 161 | SH | SHARED | | 161 | |
| D | INTERSIL CORP | CL A | 46069S10 | 4992 | 203933 | SH | SHARED | | 203933 | |
| D | INTERSIL CORP | CL A | 46069S10 | 1466 | 59915 | SH | SHARED | 01 | 16615 | 43300 |
| D | INTERSIL CORP | CL A | 46069S10 | 3036 | 124026 | SH | SHARED | 02 | 124026 | |
| D | INTERSIL CORP | CL A | 46069S10 | 24 | 1000 | SH | SHARED | 06 | 1000 | |
| D | INTERSIL CORP | CL A | 46069S10 | 273 | 11192 | SH | SHARED | 10 | 11192 | |
| D | INTERSIL CORP | CL A | 46069S10 | 21 | 895 | SH | SHARED | 14 | | 895 |
| D | INTERPUBLIC GROUP COS INC | NOTE  4.500% 3/1 | 46069OAT | 1060 | 1045000 | PRN | SHARED | | 1045000 | |
| D | INTERPUBLIC GROUP COS INC | NOTE  4.500% 3/1 | 46069OAT | 2729 | 2689000 | PRN | SHARED | 02 | 2689000 | |
| D | INTERPUBLIC GROUP COS INC | COM | 46069010 | 12882 | 1588505 | SH | SHARED | | 1588505 | |
| D | INTERPUBLIC GROUP COS INC | COM | 46069010 | 406 | 50124 | SH | SHARED | 01 | 50124 | |
| D | INTERPUBLIC GROUP COS INC | COM | 46069010 | 1395 | 172027 | SH | SHARED | 02 | 172027 | |
| D | INTERPUBLIC GROUP COS INC | COM | 46069010 | 3 | 400 | SH | SHARED | 05 | 400 | |
| D | INTERPUBLIC GROUP COS INC | COM | 46069010 | 16 | 2060 | SH | SHARED | 06 | | 2060 |
| D | INTERPUBLIC GROUP COS INC | COM | 46069010 | 1643 | 202644 | SH | SHARED | 10 | 202644 | |
| D | INTERPUBLIC GROUP COS INC | COM | 46069010 | 8 | 1000 | SH | SHARED | 22 | 570 | 430 |
| D | INTERSTATE HOTELS & RESRTS I | COM | 46088S10 | 44 | 11118 | SH | SHARED | | 11118 | |
| D | INTERSTATE HOTELS & RESRTS I | COM | 46088S10 | 25 | 6500 | SH | SHARED | 01 | | 6500 |
| D | INTERSTATE HOTELS & RESRTS I | COM | 46088S10 | 0 | 15 | SH | SHR/OTHR | 23 | | 15 |
| D | INTERVEST BANCSHARES CORP | CL A | 46092710 | 5 | 295 | SH | SHARED | | 295 | |
| D | INTERVEST BANCSHARES CORP | CL A | 46092710 | 10 | 600 | SH | SHARED | 02 | 600 | |
| D | INTEROIL CORP | COM | 46095110 | 16 | 875 | SH | SHARED | | 875 | |
| D | INTEROIL CORP | COM | 46095110 | 654 | 33989 | SH | SHARED | | 33989 | |
| D | INTERSECTIONS INC | COM | 46098130 | 7 | 949 | SH | SHARED | | 949 | |
| D | INTERWOVEN INC | COM NEW | 46114T50 | 3597 | 253016 | SH | SHARED | | 253016 | |
| D | INTERWOVEN INC | COM NEW | 46114T50 | 447 | 31499 | SH | SHARED | 23 | | 31499 |
| D | INTERVOICE INC NEW | COM | 46114210 | 53 | 6650 | SH | SHARED | 02 | 6650 | |
| D | INTEST CORP | COM | 46114710 | 0 | 200 | SH | SHARED | | 200 | |
| D | INTEVAC INC | COM | 46114810 | 190 | 13093 | SH | SHARED | | 13093 | |
| D | INTEVAC INC | COM | 46114810 | 21 | 1500 | SH | SHARED | 01 | 1500 | |
| D | INTEVAC INC | COM | 46114810 | 1744 | 120000 | SH | SHARED | 10 | 120000 | |
| D | INTRAWARE INC | COM | 46118M50 | 0 | 138 | SH | SHARED | | 138 | |
| D | INTROGEN THERAPEUTICS INC | COM | 46119F10 | 2 | 898 | SH | SHARED | | 898 | |
| D | INTUITIVE SURGICAL INC | COM NEW | 46120E60 | 4847 | 15009 | SH | SHARED | | 15009 | |
| D | INTUITIVE SURGICAL INC | COM NEW | 46120E60 | 4110 | 12725 | SH | SHARED | 01 | 1200 | 11525 |
| D | INTUITIVE SURGICAL INC | COM NEW | 46120E60 | 1870 | 5791 | SH | SHARED | 02 | 5791 | |
| D | INTUITIVE SURGICAL INC | COM NEW | 46120E60 | 11305 | 35000 | SH | SHARED | 05 | 35000 | |
| D | INTUITIVE SURGICAL INC | COM NEW | 46120E60 | 129 | 400 | SH | SHARED | 06 | | 400 |
| D | INTUITIVE SURGICAL INC | COM NEW | 46120E60 | 12259 | 37955 | SH | SHARED | 10 | 36455 | 1500 |
| D | INTUIT | COM | 46120210 | 12708 | 402050 | SH | SHARED | | 402050 | |
| D | INTUIT | COM | 46120210 | 1371 | 43397 | SH | SHARED | 01 | 43097 | 300 |
| D | INTUIT | COM | 46120210 | 4065 | 128607 | SH | SHARED | 02 | 128607 | |
| D | INTUIT | COM | 46120210 | 1548 | 49000 | SH | SHARED | 04 | 49000 | |
| D | INTUIT | COM | 46120210 | 6 | 200 | SH | SHARED | 05 | 200 | |
| D | INTUIT | COM | 46120210 | 104 | 3320 | SH | SHARED | 10 | | 3320 |
| D | INTUIT | COM | 46120210 | 4587 | 145136 | SH | SHARED | 14 | 145136 | |
| D | INTUIT | COM | 46120210 | 14 | 458 | SH | SHARED | 14 | | 458 |
| D | INTUIT | COM | 46120210 | 158 | 5000 | SH | SHARED | 21 | | 5000 |
| D | INVACARE CORP | COM | 46120310 | 191 | 7583 | SH | SHARED | | 7583 | |
| D | INVACARE CORP | COM | 46120310 | 52 | 2100 | SH | SHARED | 02 | 2100 | |
| D | INVACARE CORP | COM | 46120310 | 675 | 26800 | SH | SHARED | 10 | 26800 | |
| D | INTRICON CORP | COM | 46121H10 | 1 | 128 | SH | SHARED | | 128 | |
| D | INVENTURE GROUP INC | COM | 46121410 | 0 | 399 | SH | SHARED | | 399 | |
| D | INVENTIV HEALTH INC | COM | 46122810 | 96 | 3129 | SH | SHARED | | 3129 | |
| D | INVENTIV HEALTH INC | COM | 46122810 | 21 | 700 | SH | SHARED | 01 | | 700 |
| D | INVENTIV HEALTH INC | COM | 46122810 | 13594 | 439110 | SH | SHARED | 10 | 439110 | |
| D | INVERNESS MED INNOVATIONS IN | COM | 46126P10 | 200 | 3576 | SH | SHARED | | 3576 | |
| D | INVERNESS MED INNOVATIONS IN | COM | 46126P10 | 39 | 700 | SH | SHARED | 01 | | 700 |
| D | INVERNESS MED INNOVATIONS IN | COM | 46126P10 | 106 | 1900 | SH | SHARED | 02 | 1900 | |
| D | INVERNESS MED INNOVATIONS IN | COM | 46126P10 | 2287 | 40720 | SH | SHARED | 10 | 40720 | |
| D | INVESTMENT GRADE MUN INCOME | COM | 46136810 | 0 | 34 | SH | SHARED | | 34 | |
| D | INVESTMENT TECHNOLOGY GRP NE | COM | 46145F10 | 444 | 9345 | SH | SHARED | | 9345 | |
| D | INVESTMENT TECHNOLOGY GRP NE | COM | 46145F10 | 123 | 2600 | SH | SHARED | 10 | 2600 | |
| D | INVESTOOLS INC | COM | 46145P10 | 51 | 2922 | SH | SHARED | | 2922 | |
| D | INVESTOOLS INC | COM | 46145P10 | 50 | 2845 | SH | SHARED | 01 | 2845 | |
| D | INVESTOOLS INC | COM | 46145P10 | 572 | 32299 | SH | SHR/OTHR | 01 | | 32299 |
| D | INVESTORS BANCORP INC | COM | 46146P10 | 1094 | 77430 | SH | SHARED | 01 | 77430 | |
| D | INVESTORS BANCORP INC | COM | 46146P10 | 43 | 3100 | SH | SHARED | | 3100 | |
| D | INVESTORS BANCORP INC | COM | 46146P10 | 410 | 29000 | SH | SHARED | 02 | 29000 | |
| D | INVESTORS BANCORP INC | COM | 46146P10 | 172 | 12203 | SH | SHARED | 10 | 12203 | |
| D | INVESTORS CAP HLDGS LTD | COM | 46147M10 | 0 | 52 | SH | SHARED | | 52 | |
| D | INVESTORS REAL ESTATE TR | SH BEN INT | 46173010 | 34 | 3872 | SH | SHARED | | 3872 | |
| D | INVESTORS TITLE CO | COM | 46174410 | 2 | 58 | SH | SHARED | | 58 | |
| D | INVITROGEN CORP | NOTE  2.000% 8/0 | 46185RAF | 2115 | 1467000 | PRN | SHARED | | 1467000 | |
| D | INVITROGEN CORP | NOTE  2.000% 8/0 | 46185RAJ | 71110 | 49314016 | PRN | SHARED | | 9314016 | |
| D | INVITROGEN CORP | COM | 46185R10 | 3170 | 33937 | SH | SHARED | | 33937 | |
| D | INVITROGEN CORP | COM | 46185R10 | 1625 | 17400 | SH | SHARED | 01 | 3200 | 14200 |
| D | INVITROGEN CORP | COM | 46185R10 | 1572 | 16834 | SH | SHARED | 02 | 16834 | |
| D | INVITROGEN CORP | COM | 46185R10 | 5246 | 56169 | SH | SHARED | 04 | 56169 | |
| D | INVITROGEN CORP | COM | 46185R10 | 24 | 260 | SH | SHARED | 06 | | 260 |
| D | INVITROGEN CORP | COM | 46185R10 | 37382 | 400200 | SH | SHARED | 10 | 394000 | 6200 |
| D | INVITROGEN CORP | COM | 46185R10 | 35 | 375 | SH | SHARED | 14 | | 375 |
| D | INX INC | COM | 46185W10 | 1 | 129 | SH | SHARED | | 129 | |
| D | IOMAI CORP | COM | 46202P10 | 0 | 425 | SH | SHARED | | 425 | |
| D | IOMEGA CORP | COM | 46203030 | 127 | 36821 | SH | SHARED | | 36821 | |
| D | IOMEGA CORP | COM NEW | 46203030 | 26 | 7500 | SH | SHARED | 02 | 7500 | |
| D | ION GEOPHYSICAL CORP | COM | 46204410 | 1641 | 104021 | SH | SHARED | | 104021 | |
| D | ION GEOPHYSICAL CORP | COM | 46204410 | 328 | 20800 | SH | SHARED | 01 | 20800 | |
| D | ION GEOPHYSICAL CORP | COM | 46204410 | 9 | 601 | SH | SHARED | 02 | 601 | |
| D | ION GEOPHYSICAL CORP | COM | 46204410 | 370 | 23500 | SH | SHARED | 21 | 6500 | 17000 |
| D | ION GEOPHYSICAL CORP | COM | 46204410 | 189 | 12000 | SH | SHR/OTHR | 21 | | 12000 |
| D | ION GEOPHYSICAL CORP | COM | 46204410 | 23 | 1500 | SH | SHR/OTHR | 21 | | 1500 |
| D | IONA TECHNOLOGIES PLC | SPONSORED ADR | 46206P10 | 16 | 4960 | SH | SHARED | | 4960 | |
| D | IONATRON INC | COM | 46207010 | 5 | 2092 | SH | SHARED | | 2092 | |
| D | IONATRON INC | COM | 46207010 | 105 | 37025 | SH | SHARED | 02 | 37025 | |
| D | IOWA TELECOMM SERVICES INC | COM | 46259420 | 127 | 7840 | SH | SHARED | | 7840 | |
| D | IOWA TELECOMM SERVICES INC | COM | 46259420 | 14941 | 918900 | SH | SHARED | 10 | 918900 | |
| D | IPARTY CORP | COM | 46261R10 | 0 | 459 | SH | SHARED | | 459 | |
| D | IPASS INC | COM | 46261V10 | 58 | 14522 | SH | SHARED | | 14522 | |
| D | IRELAND BK | SPONSORED ADR | 46267Q10 | 390 | 6464 | SH | SHARED | | 6464 | |
| D | IRELAND BK | SPONSORED ADR | 46267Q10 | 22 | 380 | SH | SHARED | 21 | | 380 |
| D | IRIDEX CORP | COM | 46268410 | 0 | 199 | SH | SHARED | | 199 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | IRIS INTL INC | COM | 46270W10 | 9 | 475 SH | SHARED | | 475 | |
| D | IRIS INTL INC | COM | 46270W10 | 47 | 2400 SH | SHARED | 02 | 2400 | |
| D | IROBOT CORP | COM | 46272610 | 40 | 2223 SH | SHARED | | 2223 | |
| D | IROBOT CORP | COM | 46272610 | 18 | 1000 SH | SHARED | 02 | 1000 | |
| D | IRON MTN INC | COM | 46284610 | 2232 | 60314 SH | SHARED | | 60314 | |
| D | IRON MTN INC | COM | 46284610 | 66 | 1800 SH | SHARED | 01 | 1800 | |
| D | IRON MTN INC | COM | 46284610 | 239 | 6458 SH | SHARED | 02 | 6458 | |
| D | IRON MTN INC | COM | 46284610 | 70 | 1900 SH | SHARED | 06 | | 1900 |
| D | IRON MTN INC | COM | 46284610 | 5534 | 149507 SH | SHARED | 10 | 149507 | |
| D | IRVINE SENSORS CORP | COM NEW | 46366450 | 0 | 568 SH | SHARED | | 568 | |
| D | IRWIN FINL CORP | COM | 46411910 | 8 | 1167 SH | SHARED | | 1167 | |
| D | ISCO INTL INC | COM | 46426P10 | 0 | 2820 SH | SHARED | | 2820 | |
| D | ISCO INTL INC | COM | 46426P10 | 0 | 100 SH | SHARED | 01 | | 100 |
| D | ISHARES SILVER TRUST | ISHARES | | 2416 | 16444 SH | SHARED | | 16444 | |
| D | ISHARES S&P GSCI COMMODITY I | UNIT BEN INT | 46428R10 | 142 | 2700 SH | SHARED | | 2700 | |
| D | ISHARES COMEX GOLD TR | ISHARES | 46428510 | 24 | 300 SH | SHARED | | 300 | |
| D | ISHARES COMEX GOLD TR | ISHARES | 46428510 | 82 | 1000 SH | SHARED | 01 | | 1000 |
| D | ISHARES COMEX GOLD TR | ISHARES | 46428510 | 324 | 3930 SH | SHARED | 20 | | 3930 |
| D | ISHARES INC | MSCI AUSTRALIA | 46428610 | 219 | 7619 SH | SHARED | | 7619 | |
| D | ISHARES INC | MSCI AUSTRALIA | 46428610 | 8 | 300 SH | SHARED | 02 | 300 | |
| D | ISHARES INC | MSCI AUSTRALIA | 46428610 | 1210 | 42000 SH | SHARED | 15 | | 42000 |
| D | ISHARES INC | MSCI AUSTRALIA | 46428610 | 576 | 20000 SH | SHARED | 19 | | 20000 |
| D | ISHARES INC | MSCI AUSTRALIA | 46428610 | 15 | 524 SH | SHARED | 20 | 524 | |
| D | ISHARES INC | MSCI BRAZIL | 46428640 | 288476 | 3574677 SH | SHARED | | 3574677 | |
| D | ISHARES INC | MSCI BRAZIL | 46428640 | 80 | 1000 SH | SHR/OTHR | 01 | | 1000 |
| D | ISHARES INC | MSCI BRAZIL | 46428640 | 9201 | 114023 SH | SHARED | 06 | | 114023 |
| D | ISHARES INC | MSCI BRAZIL | 46428640 | 2630 | 32600 SH | SHARED | 15 | | 32600 |
| D | ISHARES INC | MSCI BRAZIL | 46428640 | 1049 | 13000 SH | SHARED | 19 | | 13000 |
| D | ISHARES INC | MSCI CDA INDEX | 46428650 | 416 | 12978 SH | SHARED | | 12978 | |
| D | ISHARES INC | MSCI CDA INDEX | 46428650 | 31140 | 969500 SH | SHARED | 02 | 969500 | |
| D | ISHARES INC | MSCI EMU INDEX | 46428660 | 562 | 4713 SH | SHARED | 19 | | 4713 |
| D | ISHARES INC | MSCI EMU INDEX | 46428660 | 44 | 372 SH | SHARED | 23 | 372 | |
| D | ISHARES INC | MSCI PAC J IDX | 46428666 | 146 | 950 SH | SHARED | | 950 | |
| D | ISHARES INC | MSCI PAC J IDX | 46428666 | 6642 | 43053 SH | SHARED | | 43053 | |
| D | ISHARES INC | MSCI PAC J IDX | 46428666 | 4004 | 25955 SH | SHARED | 01 | 25555 | 400 |
| D | ISHARES INC | MSCI PAC J IDX | 46428666 | 1002 | 6500 SH | SHARED | 15 | | 6500 |
| D | ISHARES INC | MSCI PAC J IDX | 46428666 | 555 | 3600 SH | SHARED | 19 | | 3600 |
| D | ISHARES INC | MSCI PAC J IDX | 46428666 | 77 | 500 SH | SHARED | 20 | | 500 |
| D | ISHARES INC | MSCI PAC J IDX | 46428666 | 30 | 200 SH | SHR/OTHR | 23 | | 200 |
| D | ISHARES INC | MSCI SINGAPORE | 46428667 | 454 | 32957 SH | SHARED | | 32957 | |
| D | ISHARES INC | MSCI SINGAPORE | 46428667 | 4068 | 295000 SH | SHARED | 02 | 295000 | |
| D | ISHARES INC | MSCI UTD KINGD | 46428669 | 91 | 3800 SH | SHARED | | 3800 | |
| D | ISHARES INC | MSCI UTD KINGD | 46428669 | 84 | 3525 SH | SHARED | 01 | 3525 | |
| D | ISHARES INC | MSCI UTD KINGD | 46428669 | 210 | 8757 SH | SHARED | 19 | | 8757 |
| D | ISHARES INC | MSCI UTD KINGD | 46428669 | 30 | 1253 SH | SHARED | 20 | 1253 | |
| D | ISHARES INC | MSCI UTD KINGD | 46428669 | 41 | 1714 SH | SHARED | 23 | 1714 | |
| D | ISHARES INC | MSCI FRANCE | 46428670 | 10 | 270 SH | SHARED | 20 | 270 | |
| D | ISHARES INC | MSCI TAIWAN | 46428673 | 374 | 24926 SH | SHARED | | 24926 | |
| D | ISHARES INC | MSCI TAIWAN | 46428673 | 171 | 11400 SH | SHARED | | 11400 | |
| D | ISHARES INC | MSCI TAIWAN | 46428673 | 4253 | 283000 SH | SHARED | 01 | 283000 | |
| D | ISHARES INC | MSCI TAIWAN | 46428673 | 3428 | 228101 SH | SHARED | 02 | 228101 | |
| D | ISHARES INC | MSCI TAIWAN | 46428673 | 368 | 24500 SH | SHARED | 21 | 10500 | 14000 |
| D | ISHARES INC | MSCI TAIWAN | 46428673 | 172 | 11500 SH | SHR/OTHR | 21 | | 11500 |
| D | ISHARES INC | MSCI TAIWAN | 46428673 | 22 | 1500 SH | SHR/OTHR | 23 | | 1500 |
| D | ISHARES INC | MSCI SWITZERLD | 46428674 | 21 | 810 SH | SHARED | 01 | 810 | |
| D | ISHARES INC | MSCI SWITZERLD | 46428674 | 20 | 800 SH | SHARED | 23 | 800 | |
| D | ISHARES INC | MSCI SPAIN | 46428676 | 8 | 136 SH | SHARED | 20 | 136 | |
| D | ISHARES INC | MSCI S KOREA | 46428677 | 3593 | 55547 SH | SHARED | | 55547 | |
| D | ISHARES INC | MSCI S KOREA | 46428677 | 1274 | 19700 SH | SHARED | 15 | | 19700 |
| D | ISHARES INC | MSCI S KOREA | 46428677 | 647 | 10000 SH | SHARED | 19 | | 10000 |
| D | ISHARES INC | MSCI S KOREA | 46428677 | 556 | 8600 SH | SHARED | 21 | 2800 | 5800 |
| D | ISHARES INC | MSCI S KOREA | 46428677 | 226 | 3500 SH | SHR/OTHR | 21 | | 3500 |
| D | ISHARES INC | MSCI S KOREA | 46428677 | 32 | 500 SH | SHR/OTHR | 23 | | 500 |
| D | ISHARES INC | MSCI STH AFRCA | 46428678 | 89 | 690 SH | SHARED | | 690 | |
| D | ISHARES INC | MSCI STH AFRCA | 46428678 | 2641 | 20300 SH | SHARED | 02 | 20300 | |
| D | ISHARES INC | MSCI STH AFRCA | 46428678 | 1571 | 12075 SH | SHARED | 06 | | 12075 |
| D | ISHARES INC | MSCI GERMAN | 46428680 | 708 | 20000 SH | SHARED | | 20000 | |
| D | ISHARES INC | MSCI GERMAN | 46428680 | 5 | 159 SH | SHARED | 20 | 159 | |
| D | ISHARES INC | MSCI NETHERLAND | 46428681 | 11 | 378 SH | SHARED | 20 | 378 | |
| D | ISHARES INC | MSCI MEXICO | 46428682 | 34207 | 610849 SH | SHARED | | 610849 | |
| D | ISHARES INC | MSCI MALAYSIA | 46428683 | 1389 | 109176 SH | SHARED | | 109176 | |
| D | ISHARES INC | MSCI MALAYSIA | 46428683 | 59 | 4700 SH | SHR/OTHR | 01 | | 4700 |
| D | ISHARES INC | MSCI JAPAN | 46428684 | 271 | 20457 SH | SHARED | | 20457 | |
| D | ISHARES INC | MSCI JAPAN | 46428684 | 18836 | 1417324 SH | SHARED | 01 | 1260873 | 156451 |
| D | ISHARES INC | MSCI JAPAN | 46428684 | 1512 | 113780 SH | SHR/OTHR | 01 | | 113780 |
| D | ISHARES INC | MSCI JAPAN | 46428684 | 140 | 10599 SH | SHARED | 19 | | 10599 |
| D | ISHARES INC | MSCI JAPAN | 46428684 | 640 | 48225 SH | SHARED | 20 | 43750 | 4475 |
| D | ISHARES INC | MSCI JAPAN | 46428684 | 25 | 1900 SH | SHR/OTHR | 20 | | 1900 |
| D | ISHARES INC | MSCI JAPAN | 46428684 | 511 | 38500 SH | SHARED | 21 | 11000 | 27500 |
| D | ISHARES INC | MSCI JAPAN | 46428684 | 245 | 18500 SH | SHR/OTHR | 21 | | 18500 |
| D | ISHARES INC | MSCI JAPAN | 46428684 | 7 | 600 SH | SHARED | 22 | | 600 |
| D | ISHARES INC | MSCI JAPAN | 46428684 | 2157 | 162370 SH | SHARED | 23 | 161970 | 400 |
| D | ISHARES INC | MSCI JAPAN | 46428684 | 592 | 44600 SH | SHR/OTHR | 23 | | 44600 |
| D | ISHARES INC | MSCI ITALY | 46428685 | 26 | 800 SH | SHARED | | 800 | |
| D | ISHARES INC | MSCI HONG KONG | 46428687 | 250 | 11400 SH | SHARED | | 11400 | |
| D | ISHARES INC | MSCI HONG KONG | 46428687 | 2368 | 108000 SH | SHARED | 02 | 108000 | |
| D | ISHARES INC | MSCI HONG KONG | 46428687 | 1684 | 76800 SH | SHARED | 15 | | 76800 |
| D | ISHARES INC | MSCI HONG KONG | 46428687 | 703 | 32100 SH | SHARED | 19 | | 32100 |
| D | ISHARES INC | MSCI HONG KONG | 46428687 | 9 | 434 SH | SHARED | 20 | 434 | |
| D | ISHARES INC | MSCI HONG KONG | 46428687 | 307 | 14000 SH | SHARED | 21 | 4000 | 10000 |
| D | ISHARES INC | MSCI HONG KONG | 46428687 | 175 | 8000 SH | SHR/OTHR | 21 | | 8000 |
| D | ISHARES TR | S&P 100 IDX FD | 46428710 | 12071 | 175459 SH | SHARED | | 175459 | |
| D | ISHARES TR | S&P 100 IDX FD | 46428710 | 10388 | 151000 SH | SHARED | 10 | 151000 | |
| D | ISHARES TR | S&P 100 IDX FD | 46428710 | 3656 | 53150 SH | SHARED | 19 | | 53150 |
| D | ISHARES TR | DJ SEL DIV INX | 46428716 | 161 | 2500 SH | SHARED | | 2500 | |
| D | ISHARES TR | DJ SEL DIV INX | 46428716 | 144 | 2237 SH | SHR/OTHR | 23 | | 2237 |
| D | ISHARES TR | US TIPS BD FD | 46428717 | 9763 | 92279 SH | SHARED | | 92279 | |
| D | ISHARES TR | US TIPS BD FD | 46428717 | 3914 | 36998 SH | SHARED | 11 | 12618 | 24380 |
| D | ISHARES TR | US TIPS BD FD | 46428717 | 495 | 4685 SH | SHR/OTHR | 11 | | 4685 |
| D | ISHARES TR | US TIPS BD FD | 46428717 | 287 | 2720 SH | SHARED | 20 | 1320 | 1400 |
| D | ISHARES TR | US TIPS BD FD | 46428717 | 21 | 200 SH | SHR/OTHR | 20 | | 200 |
| D | ISHARES TR | US TIPS BD FD | 46428717 | 40 | 380 SH | SHR/OTHR | 21 | | 380 |
| D | ISHARES TR | US TIPS BD FD | 46428717 | 988 | 9341 SH | SHARED | 22 | 7301 | 2040 |
| D | ISHARES TR | US TIPS BD FD | 46428717 | 282 | 2670 SH | SHR/OTHR | 22 | | 2670 |
| D | ISHARES TR | US TIPS BD FD | 46428717 | 9183 | 86805 SH | SHARED | 23 | 84450 | 2355 |
| D | ISHARES TR | US TIPS BD FD | 46428717 | 1535 | 14514 SH | SHR/OTHR | 23 | | 14514 |
| D | ISHARES TR | FTSE XNHUA IDX | 46428718 | 502 | 2950 SH | SHARED | | 2950 | |
| D | ISHARES TR | FTSE XNHUA IDX | 46428718 | 87257 | 511926 SH | SHARED | 02 | 511926 | |
| D | ISHARES TR | TRANSP AVE IDX | 46428719 | 25049 | 308300 SH | SHARED | | 308300 | |
| D | ISHARES TR | TRANSP AVE IDX | 46428719 | 22 | 273 SH | SHARED | | 273 | |
| D | ISHARES TR | MSCI EMERG MKT | 46428723 | 229 | 1527 SH | SHARED | | 1527 | |
| D | ISHARES TR | MSCI EMERG MKT | 46428723 | 244763 | 1628499 SH | SHARED | | 1628499 | |
| D | ISHARES TR | MSCI EMERG MKT | 46428723 | 6642 | 44196 SH | SHR/OTHR | 01 | 15046 | 29150 |
| D | ISHARES TR | MSCI EMERG MKT | 46428723 | 2083 | 13865 SH | SHR/OTHR | 01 | | 13865 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| D ISHARES TR | MSCI EMERG MKT | 46428723 | 909 | 6050 SH | SHARED | 02 | 6050 | |
| D ISHARES TR | MSCI EMERG MKT | 46428723 | 39509 | 262870 SH | SHARED | 10 | 262870 | |
| D ISHARES TR | MSCI EMERG MKT | 46428723 | 4163 | 27700 SH | SHARED | 15 | | 27700 |
| D ISHARES TR | MSCI EMERG MKT | 46428723 | 24048 | 160000 SH | SHARED | 19 | | 160000 |
| D ISHARES TR | MSCI EMERG MKT | 46428723 | 3689 | 24545 SH | SHARED | 20 | 16275 | 8270 |
| D ISHARES TR | MSCI EMERG MKT | 46428723 | 323 | 2150 SH | SHR/OTHR | 20 | | 2150 |
| D ISHARES TR | MSCI EMERG MKT | 46428723 | 807 | 5370 SH | SHARED | 21 | 5370 | |
| D ISHARES TR | MSCI EMERG MKT | 46428723 | 9112 | 60629 SH | SHARED | 22 | 40614 | 20015 |
| D ISHARES TR | MSCI EMERG MKT | 46428723 | 2617 | 17418 SH | SHR/OTHR | 22 | | 17418 |
| D ISHARES TR | MSCI EMERG MKT | 46428723 | 20522 | 136543 SH | SHARED | 23 | 134815 | 1728 |
| D ISHARES TR | MSCI EMERG MKT | 46428723 | 11009 | 73247 SH | SHR/OTHR | 23 | | 73247 |
| D ISHARES TR | S&P500 GRW | 46428730 | 104 | 1500 SH | SHARED | | 1500 | |
| D ISHARES TR | S&P500 GRW | 46428730 | 475 | 6810 SH | SHARED | 22 | | 6810 |
| D ISHARES TR | S&P GBL ENER | 46428734 | 8938 | 63000 SH | SHARED | 10 | 63000 | |
| D ISHARES TR | S&P GSSI NATL | 46428737 | 2791 | 20771 SH | SHARED | 01 | 2755 | 18016 |
| D ISHARES TR | S&P GSSI NATL | 46428737 | 1951 | 14525 SH | SHR/OTHR | 01 | | 14525 |
| D ISHARES TR | S&P GSSI NATL | 46428737 | 5665 | 42158 SH | SHARED | 20 | 24340 | 17818 |
| D ISHARES TR | S&P GSSI NATL | 46428737 | 1325 | 9865 SH | SHR/OTHR | 20 | | 9865 |
| D ISHARES TR | S&P GSSI NATL | 46428737 | 2758 | 20528 SH | SHARED | 22 | 11583 | 8945 |
| D ISHARES TR | S&P GSSI NATL | 46428737 | 454 | 3380 SH | SHR/OTHR | 22 | | 3380 |
| D ISHARES TR | S&P GSSI NATL | 46428737 | 7419 | 55213 SH | SHARED | 23 | 53593 | 1620 |
| D ISHARES TR | S&P GSSI NATL | 46428737 | 5982 | 44517 SH | SHR/OTHR | 23 | | 44517 |
| D ISHARES TR | S&P LTN AM 40 | 46428739 | 12662 | 50871 SH | SHARED | | 50871 | |
| D ISHARES TR | S&P 500 VALUE | 46428740 | 381761 | 4999500 SH | SHARED | 02 | 4999500 | |
| D ISHARES TR | S&P 500 VALUE | 46428740 | 446 | 5850 SH | SHARED | 22 | | 5850 |
| D ISHARES TR | S&P 500 VALUE | 46428740 | 273 | 3586 SH | SHR/OTHR | 23 | | 3586 |
| D ISHARES TR | 20+ YR TRS BD | 46428743 | 9 | 100 SH | SHARED | | 100 | |
| D ISHARES TR | 20+ YR TRS BD | 46428743 | 53 | 580 SH | SHARED | 01 | 580 | |
| D ISHARES TR | 20+ YR TRS BD | 46428743 | 37 | 400 SH | SHARED | 02 | 400 | |
| D ISHARES TR | 7-10 YR TRS BD | 46428744 | 5684 | 65327 SH | SHARED | | 65327 | |
| D ISHARES TR | 7-10 YR TRS BD | 46428744 | 678 | 7800 SH | SHARED | 01 | 7800 | |
| D ISHARES TR | 1-3 YR TRS BD | 46428745 | 52 | 642 SH | SHARED | 01 | | 642 |
| D ISHARES TR | MSCI EAFE IDX | 46428746 | 11301 | 143966 SH | SHARED | | 143966 | |
| D ISHARES TR | MSCI EAFE IDX | 46428746 | 7125 | 90766 SH | SHARED | 01 | 13425 | 77341 |
| D ISHARES TR | MSCI EAFE IDX | 46428746 | 1130 | 14405 SH | SHR/OTHR | 01 | | 14405 |
| D ISHARES TR | MSCI EAFE IDX | 46428746 | 302 | 3854 SH | SHARED | 02 | 3854 | |
| D ISHARES TR | MSCI EAFE IDX | 46428746 | 162 | 2070 SH | SHARED | 10 | | 2070 |
| D ISHARES TR | MSCI EAFE IDX | 46428746 | 245 | 3130 SH | SHR/OTHR | 10 | | 3130 |
| D ISHARES TR | MSCI EAFE IDX | 46428746 | 5960 | 75925 SH | SHARED | 20 | 29765 | 46160 |
| D ISHARES TR | MSCI EAFE IDX | 46428746 | 1586 | 20212 SH | SHR/OTHR | 20 | | 20212 |
| D ISHARES TR | MSCI EAFE IDX | 46428746 | 764 | 9744 SH | SHARED | 21 | 9744 | |
| D ISHARES TR | MSCI EAFE IDX | 46428746 | 881 | 11225 SH | SHARED | 22 | 6325 | 4900 |
| D ISHARES TR | MSCI EAFE IDX | 46428746 | 275 | 3510 SH | SHR/OTHR | 22 | | 3510 |
| D ISHARES TR | MSCI EAFE IDX | 46428746 | 6199 | 78970 SH | SHARED | 23 | 77445 | 1525 |
| D ISHARES TR | MSCI EAFE IDX | 46428746 | 3861 | 49190 SH | SHR/OTHR | 23 | | 49190 |
| D ISHARES TR | RUSSELL MIDCAP | 46428749 | 4 | 40 SH | SHARED | 02 | 40 | |
| D ISHARES TR | RUSSELL MIDCAP | 46428749 | 29923 | 289000 SH | SHARED | 10 | 289000 | |
| D ISHARES TR | RUSSELL MIDCAP | 46428749 | 59 | 570 SH | SHARED | 21 | 570 | |
| D ISHARES TR | S&P MIDCAP 400 | 46428750 | 15 | 185 SH | SHARED | 23 | 185 | |
| D ISHARES TR | S&P GSTI NTWRK | 46428753 | 452 | 13300 SH | SHARED | 02 | 13300 | |
| D ISHARES TR | S&P GSTI TECHN | 46428754 | 790 | 13259 SH | SHARED | | 13259 | |
| D ISHARES TR | S&P GSTI TECHN | 46428754 | 101 | 1709 SH | SHR/OTHR | 01 | | 1709 |
| D ISHARES TR | S&P GSTI TECHN | 46428754 | 6793 | 114000 SH | SHARED | 10 | 114000 | |
| D ISHARES TR | NASDQ BIO INDX | 46428755 | 22884 | 281899 SH | SHARED | | 28699 | 253200 |
| D ISHARES TR | NASDQ BIO INDX | 46428755 | 2370 | 29200 SH | SHARED | 01 | 29200 | |
| D ISHARES TR | NASDQ BIO INDX | 46428755 | 1404 | 17300 SH | SHARED | 02 | 17300 | |
| D ISHARES TR | NASDQ BIO INDX | 46428755 | 69887 | 860900 SH | SHARED | 10 | 713400 | 147500 |
| D ISHARES TR | NASDQ BIO INDX | 46428755 | 627 | 7727 SH | SHARED | 15 | | 7727 |
| D ISHARES TR | NASDQ BIO INDX | 46428755 | 40 | 500 SH | SHR/OTHR | 21 | | 500 |
| D ISHARES TR | NASDQ BIO INDX | 46428755 | 30 | 375 SH | SHR/OTHR | 23 | | 375 |
| D ISHARES TR | NASDQ BIO INDX | 46428755 | 1010 | 12450 SH | SHARED | 24 | 12450 | |
| D ISHARES TR | COHEN&ST RLTY | 46428756 | 52 | 658 SH | SHARED | | 658 | |
| D ISHARES TR | COHEN&ST RLTY | 46428756 | 5565 | 70328 SH | SHARED | 01 | 12630 | 57698 |
| D ISHARES TR | COHEN&ST RLTY | 46428756 | 1359 | 17175 SH | SHR/OTHR | 01 | | 17175 |
| D ISHARES TR | COHEN&ST RLTY | 46428756 | 15159 | 191554 SH | SHARED | 10 | 191554 | |
| D ISHARES TR | COHEN&ST RLTY | 46428756 | 371 | 4700 SH | SHARED | 20 | 3200 | 1500 |
| D ISHARES TR | COHEN&ST RLTY | 46428756 | 108 | 1370 SH | SHR/OTHR | 20 | | 1370 |
| D ISHARES TR | COHEN&ST RLTY | 46428756 | 4304 | 54396 SH | SHARED | 22 | 39516 | 14880 |
| D ISHARES TR | COHEN&ST RLTY | 46428756 | 1057 | 13368 SH | SHR/OTHR | 22 | | 13368 |
| D ISHARES TR | COHEN&ST RLTY | 46428756 | 5696 | 71980 SH | SHARED | 23 | 62615 | 9365 |
| D ISHARES TR | COHEN&ST RLTY | 46428756 | 6305 | 79675 SH | SHR/OTHR | 23 | | 79675 |
| D ISHARES TR | RUSSELL1000VAL | 46428759 | 88 | 1100 SH | SHARED | | 1100 | |
| D ISHARES TR | RUSSELL1000VAL | 46428759 | 64 | 800 SH | SHARED | 01 | 800 | |
| D ISHARES TR | RUSSELL1000VAL | 46428759 | 30254 | 377000 SH | SHARED | 10 | 377000 | |
| D ISHARES TR | RUSSELL1000VAL | 46428759 | 15 | 190 SH | SHARED | 20 | 190 | |
| D ISHARES TR | RUSSELL1000VAL | 46428759 | 83 | 1035 SH | SHARED | 21 | 1035 | |
| D ISHARES TR | RUSSELL1000VAL | 46428759 | 80 | 1000 SH | SHR/OTHR | 23 | | 1000 |
| D ISHARES TR | RUSSELL1000GRW | 46428761 | 2340 | 38500 SH | SHARED | | 38500 | |
| D ISHARES TR | RUSSELL1000GRW | 46428761 | 272 | 4476 SH | SHARED | 01 | 4476 | |
| D ISHARES TR | RUSSELL1000GRW | 46428761 | 10387 | 170900 SH | SHARED | 10 | 170900 | |
| D ISHARES TR | RUSSELL1000GRW | 46428761 | 984 | 16200 SH | SHARED | 22 | 16200 | |
| D ISHARES TR | RUSSELL1000GRW | 46428761 | 1068 | 17581 SH | SHR/OTHR | 23 | | 17581 |
| D ISHARES TR | RUSSELL 1000 | 46428762 | 294 | 3700 SH | SHARED | 02 | 3700 | |
| D ISHARES TR | RUSSELL 1000 | 46428762 | 44 | 558 SH | SHARED | 02 | 558 | |
| D ISHARES TR | RUSL 2000 VALU | 46428763 | 123347 | 1750100 SH | SHARED | | 1750100 | |
| D ISHARES TR | RUSL 2000 VALU | 46428763 | 35 | 500 SH | SHR/OTHR | 01 | | 500 |
| D ISHARES TR | RUSL 2000 VALU | 46428763 | 386 | 5484 SH | SHARED | 02 | 5484 | |
| D ISHARES TR | RUSL 2000 VALU | 46428763 | 91 | 1293 SH | SHARED | 02 | 1293 | |
| D ISHARES TR | RUSL 2000 VALU | 46428763 | 18 | 260 SH | SHARED | 21 | 260 | |
| D ISHARES TR | RUSL 2000 GROW | 46428764 | 68871 | 825000 SH | SHARED | | 825000 | |
| D ISHARES TR | RUSL 2000 GROW | 46428764 | 22 | 270 SH | SHARED | 01 | 270 | |
| D ISHARES TR | RUSL 2000 GROW | 46428764 | 7780 | 93200 SH | SHARED | 02 | 93200 | |
| D ISHARES TR | RUSL 2000 GROW | 46428764 | 21 | 255 SH | SHARED | 02 | 255 | |
| D ISHARES TR | RUSSELL 2000 | 46428765 | 1877391 | 24728544 SH | SHARED | | 4728544 | |
| D ISHARES TR | RUSSELL 2000 | 46428765 | 8447 | 111269 SH | SHARED | 01 | 9760 | 101509 |
| D ISHARES TR | RUSSELL 2000 | 46428765 | 4762 | 62727 SH | SHR/OTHR | 01 | | 62727 |
| D ISHARES TR | RUSSELL 2000 | 46428765 | 2892 | 38100 SH | SHARED | 02 | 38100 | |
| D ISHARES TR | RUSSELL 2000 | 46428765 | 6832 | 90000 SH | SHARED | 10 | 90000 | |
| D ISHARES TR | RUSSELL 2000 | 46428765 | 59 | 780 SH | SHARED | 10 | | 780 |
| D ISHARES TR | RUSSELL 2000 | 46428765 | 613 | 8080 SH | SHARED | 20 | 4915 | 3165 |
| D ISHARES TR | RUSSELL 2000 | 46428765 | 1059 | 13950 SH | SHR/OTHR | 20 | | 13950 |
| D ISHARES TR | RUSSELL 2000 | 46428765 | 43 | 579 SH | SHARED | 21 | 579 | |
| D ISHARES TR | RUSSELL 2000 | 46428765 | 786 | 10360 SH | SHARED | 22 | 1650 | 8710 |
| D ISHARES TR | RUSSELL 2000 | 46428765 | 375 | 4950 SH | SHR/OTHR | 22 | | 4950 |
| D ISHARES TR | RUSSELL 2000 | 46428765 | 3884 | 51167 SH | SHARED | 23 | 45367 | 5800 |
| D ISHARES TR | RUSSELL 2000 | 46428765 | 3189 | 42011 SH | SHR/OTHR | 23 | | 42011 |
| D ISHARES TR | RUSL 3000 GROW | 46428767 | 198 | 4000 SH | SHARED | 23 | 4000 | |
| D ISHARES TR | DJ US UTILS | 46428769 | 10241 | 100000 SH | SHARED | | 100000 | |
| D ISHARES TR | S&P MIDCP VALU | 46428770 | 238656 | 2999700 SH | SHARED | 02 | 2999700 | |

| D | Issuer | Class | CUSIP | Value | Shares/Principal | Discretion | Mgr | Sole | Other |
|---|--------|-------|-------|-------|------------------|------------|-----|------|-------|
| D | ISHARES TR | DJ US TELECOMM | 46428771 | 708 | 23994 SH | SHARED | 02 | 23994 | |
| D | ISHARES TR | DJ US TELECOMM | 46428771 | 34 | 1160 SH | SHARED | 23 | 1160 | |
| D | ISHARES TR | DJ US TECH SEC | 46428772 | 7 | 120 SH | SHARED | 19 | | 120 |
| D | ISHARES TR | DJ US TECH SEC | 46428772 | 527 | 8450 SH | SHARED | 23 | 8450 | |
| D | ISHARES TR | DJ US REAL EST | 46428773 | 34487 | 524922 SH | SHARED | | 524922 | |
| D | ISHARES TR | DJ US REAL EST | 46428773 | 69322 | 1055134 SH | SHARED | 02 | 1055134 | |
| D | ISHARES TR | DJ US REAL EST | 46428773 | 157 | 2400 SH | SHR/OTHR | 23 | | 2400 |
| D | ISHARES TR | DJ US INDUSTRL | 46428775 | 16 | 230 SH | SHARED | 01 | 230 | |
| D | ISHARES TR | DJ US HEALTHCR | 46428776 | 757 | 10725 SH | SHARED | 01 | 8800 | 1925 |
| D | ISHARES TR | DJ US HEALTHCR | 46428776 | 263 | 3735 SH | SHARED | 23 | 3735 | |
| D | ISHARES TR | DJ US FINL SEC | 46428778 | 118 | 1260 SH | SHARED | 20 | 1260 | |
| D | ISHARES TR | DJ US ENERGY | 46428857 | 21 | 159 SH | SHARED | 01 | | 159 |
| D | ISHARES TR | S&P SMLCAP 600 | 46428780 | 157059 | 2415556 SH | SHARED | | 2415556 | |
| D | ISHARES TR | S&P SMLCAP 600 | 46428780 | 8068 | 124100 SH | SHARED | 10 | 124100 | |
| D | ISHARES TR | S&P SMLCAP 600 | 46428780 | 132 | 2035 SH | SHARED | 23 | 2035 | |
| D | ISHARES TR | DJ US BAS MATL | 46428783 | 20 | 261 SH | SHARED | 01 | | 261 |
| D | ISHARES TR | S&P EURO PLUS | 46428786 | 15893 | 139000 SH | SHARED | 10 | 139000 | |
| D | ISHARES TR | S&P EURO PLUS | 46428786 | 228 | 2000 SH | SHARED | 20 | 2000 | |
| D | ISHARES TR | S&P EURO PLUS | 46428786 | 19 | 170 SH | SHR/OTHR | 23 | | 170 |
| D | ISHARES TR | S&P SMLCP VALU | 46428787 | 136500 | 1950000 SH | SHARED | 02 | 1950000 | |
| D | ISHARES TR | S&P SMLCP VALU | 46428787 | 677 | 9675 SH | SHARED | 20 | 3130 | 6545 |
| D | ISHARES TR | S&P SMLCP VALU | 46428787 | 5 | 84 SH | SHR/OTHR | 23 | | 84 |
| D | ISHARES TR | S&P SMLCP GROW | 46428788 | 4 | 30 SH | SHARED | 20 | 30 | |
| D | ISHARES TR | KLD 400 IDX FD | 46428857 | 190 | 3655 SH | SHARED | 01 | 3655 | |
| D | ISHARES TR | LEHMAN 3-7 YR | 46428866 | 595 | 5645 SH | SHARED | 19 | | 5645 |
| D | ISHARES TR | DJ HOME CONSTN | 46428875 | 10 | 600 SH | SHARED | | 600 | |
| D | ISHARES TR | DJ BROKER-DEAL | 46428879 | 1027 | 20075 SH | SHARED | | 20075 | |
| D | ISHARES TR | DJ BROKER-DEAL | 46428879 | 7167 | 140100 SH | SHARED | 02 | 140100 | |
| D | ISHARES TR | MSCI VAL IDX | 46428887 | 25 | 350 SH | SHR/OTHR | 20 | | 350 |
| D | ISILON SYS INC | COM | 46432L10 | 2 | 436 SH | SHARED | | 436 | |
| D | ISIS PHARMACEUTICALS INC | COM | 46433010 | 310 | 19703 SH | SHARED | | 19703 | |
| D | ISIS PHARMACEUTICALS INC | COM | 46433010 | 113 | 7200 SH | SHARED | 01 | 7200 | |
| D | ISIS PHARMACEUTICALS INC | COM | 46433010 | 218 | 13894 SH | SHARED | 02 | 13894 | |
| D | ISIS PHARMACEUTICALS INC | COM | 46433010 | 2345 | 148919 SH | SHARED | 04 | 148919 | |
| D | ISIS PHARMACEUTICALS INC | COM | 46433010 | 2953 | 187537 SH | SHARED | 10 | 187537 | |
| D | ISIS PHARMACEUTICALS INC DEL | NOTE 2.625% 2/1 | 464337AE | 879 | 681000 PRN | SHARED | | 681000 | |
| D | ISLE OF CAPRI CASINOS INC | COM | 46459210 | 1 | 101 SH | SHARED | | 101 | |
| D | ISLE OF CAPRI CASINOS INC | COM | 46459210 | 25 | 1875 SH | SHARED | 01 | 1875 | |
| D | ISOLAGEN INC | COM | 46489V10 | 2 | 981 SH | SHARED | | 981 | |
| D | ISORAY INC | COM | 46489V10 | 1 | 593 SH | SHARED | | 593 | |
| D | ISRAMCO INC | COM NEW | 46514140 | 1 | 35 SH | SHARED | | 35 | |
| D | ITERIS INC | COM | 46514110 | 2 | 725 SH | SHARED | | 725 | |
| D | ITC HLDGS CORP | COM | 46568510 | 26 | 472 SH | SHARED | | | 472 |
| D | ITC HLDGS CORP | COM | 46568510 | 175 | 3106 SH | SHARED | | 3106 | |
| D | ITC HLDGS CORP | COM | 46568510 | 124 | 2200 SH | SHARED | 01 | 2200 | |
| D | ITC HLDGS CORP | COM | 46568510 | 10810 | 191608 SH | SHARED | 04 | 191608 | |
| D | ITC HLDGS CORP | COM | 46568510 | 6691 | 118596 SH | SHARED | 05 | 118596 | |
| D | ITC HLDGS CORP | COM | 46568510 | 555 | 9846 SH | SHARED | 06 | | 9846 |
| D | ITC HLDGS CORP | COM | 46568510 | 872 | 15456 SH | SHARED | 10 | 15456 | |
| D | ITC HLDGS CORP | COM | 46568510 | 11 | 210 SH | SHARED | 21 | | 210 |
| D | ITRON INC | COM | 46574110 | 1831 | 19081 SH | SHARED | | 19081 | |
| D | ITRON INC | COM | 46574110 | 2867 | 29875 SH | SHARED | 01 | 29575 | 300 |
| D | ITRON INC | COM | 46574110 | 2687 | 28000 SH | SHR/OTHR | 01 | | 28000 |
| D | ITRON INC | COM | 46574110 | 10982 | 114433 SH | SHARED | 04 | 114433 | |
| D | ITRON INC | COM | 46574110 | 11619 | 121076 SH | SHARED | 05 | 121076 | |
| D | ITRON INC | COM | 46574110 | 959 | 10000 SH | SHARED | 06 | | 10000 |
| D | ITRON INC | COM | 46574110 | 46417 | 483670 SH | SHARED | 10 | 483670 | |
| D | ITRON INC | COM | 46574110 | 959 | 10000 SH | SHARED | 14 | | 10000 |
| D | I2 TECHNOLOGIES INC | COM NEW | 46575420 | 228 | 18121 SH | SHARED | | 18121 | |
| D | I2 TECHNOLOGIES INC | COM NEW | 46575420 | 347 | 27600 SH | SHARED | 10 | 27600 | |
| D | IVANHOE MINES LTD | COM | 46579N10 | 160 | 15000 SH | SHARED | | | 15000 |
| D | IVANHOE MINES LTD | COM | 46579N10 | 12141 | 1131518 SH | SHARED | | 1131518 | |
| D | IVANHOE MINES LTD | COM | 46579N10 | 11011 | 1026211 SH | SHARED | 04 | 1026211 | |
| D | IVANHOE MINES LTD | COM | 46579N10 | 4506 | 420000 SH | SHARED | 05 | 420000 | |
| D | IVANHOE MINES LTD | COM | 46579N10 | 2527 | 235600 SH | SHARED | 06 | | 235600 |
| D | IVANHOE MINES LTD | COM | 46579N10 | 99 | 9241 SH | SHARED | 21 | | 9241 |
| D | IVIVI TECHNOLOGIES INC | COM | 46589V10 | 0 | 192 SH | SHARED | | 192 | |
| D | IXYS CORP | COM | 46600W10 | 673 | 83921 SH | SHARED | | 83921 | |
| D | IXYS CORP | COM | 46600W10 | 4 | 510 SH | SHARED | 02 | 510 | |
| D | J & J SNACK FOODS CORP | COM | 46603210 | 202 | 6467 SH | SHARED | | 6467 | |
| D | J & J SNACK FOODS CORP | COM | 46603210 | 187 | 6000 SH | SHARED | 10 | 6000 | |
| D | JA SOLAR HOLDINGS CO LTD | SPON ADR | 46609010 | 19 | 279 SH | SHARED | | | 279 |
| D | JA SOLAR HOLDINGS CO LTD | SPON ADR | 46609010 | 10147 | 145364 SH | SHARED | | 137484 | 7880 |
| D | JA SOLAR HOLDINGS CO LTD | SPON ADR | 46609010 | 8327 | 119292 SH | SHARED | 04 | 119292 | |
| D | JA SOLAR HOLDINGS CO LTD | SPON ADR | 46609010 | 9856 | 141193 SH | SHARED | 05 | 141193 | |
| D | JA SOLAR HOLDINGS CO LTD | SPON ADR | 46609010 | 329 | 4721 SH | SHARED | 06 | | 4721 |
| D | JA SOLAR HOLDINGS CO LTD | SPON ADR | 46609010 | 610 | 8748 SH | SHARED | 10 | 8748 | |
| D | J ALEXANDER CORP | COM | 46609610 | 1 | 124 SH | SHARED | | 124 | |
| D | J CREW GROUP INC | COM | 46612H40 | 1925 | 39941 SH | SHARED | | 39941 | |
| D | J CREW GROUP INC | COM | 46612H40 | 212 | 4400 SH | SHARED | 10 | 4400 | |
| D | J CREW GROUP INC | COM | 46612H40 | 19 | 400 SH | SHARED | 23 | 400 | |
| D | JDS UNIPHASE CORP | NOTE 1.000% 5/1 | 46612AQ2 | 11200 | 14000000 PRN | SHARED | 04 | 4000000 | |
| D | JDS UNIPHASE CORP | COM PAR $0.001 | 46612J50 | 3 | 254 SH | SHARED | | 254 | |
| D | JDS UNIPHASE CORP | COM PAR $0.001 | 46612J50 | 13905 | 1045499 SH | SHARED | | 1045462 | 37 |
| D | JDS UNIPHASE CORP | COM PAR $0.001 | 46612J50 | 738 | 55543 SH | SHARED | 01 | 55462 | 81 |
| D | JDS UNIPHASE CORP | COM PAR $0.001 | 46612J50 | 1615 | 121455 SH | SHARED | 02 | 121455 | |
| D | JDS UNIPHASE CORP | COM PAR $0.001 | 46612J50 | 2 | 162 SH | SHARED | 05 | 162 | |
| D | JDS UNIPHASE CORP | COM PAR $0.001 | 46612J50 | 12 | 907 SH | SHARED | 06 | | 907 |
| D | JDS UNIPHASE CORP | COM PAR $0.001 | 46612J50 | 1192 | 89630 SH | SHARED | | 89630 | |
| D | JDS UNIPHASE CORP | COM PAR $0.001 | 46612J50 | 141 | 10620 SH | SHARED | 20 | 10620 | |
| D | JDS UNIPHASE CORP | COM PAR $0.001 | 46612J50 | 0 | 6 SH | SHR/OTHR | 23 | | 6 |
| D | JDA SOFTWARE GROUP INC | COM | 46612K10 | 861 | 42092 SH | SHARED | | 42092 | |
| D | JDA SOFTWARE GROUP INC | COM | 46612K10 | 26 | 1300 SH | SHARED | 01 | 1300 | |
| D | JDA SOFTWARE GROUP INC | COM | 46612K10 | 55 | 2725 SH | SHARED | 02 | 2725 | |
| D | JDA SOFTWARE GROUP INC | COM | 46612K10 | 3148 | 153900 SH | SHARED | 10 | 153900 | |
| D | JER INVT TR INC | COM | 46614H30 | 61 | 5727 SH | SHARED | | 5727 | |
| D | JER INVT TR INC | COM | 46614H30 | 58 | 5400 SH | SHARED | 10 | 5400 | |
| D | JER INVT TR INC | COM | 46614H30 | 3 | 300 SH | SHARED | 10 | 300 | |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 6937 | 158934 SH | SHARED | | 87512 | 71422 |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 246502 | 5647245 SH | SHARED | | 5610715 | 36530 |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 51009 | 1168613 SH | SHARED | 01 | 797020 | 371593 |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 7412 | 169816 SH | SHR/OTHR | 01 | | 169816 |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 5477 | 125478 SH | SHARED | 02 | 125478 | |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 1672 | 38323 SH | SHARED | 04 | 381 | 37942 |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 57567 | 1318840 SH | SHARED | 04 | 1318840 | |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 55 | 1270 SH | SHARED | 05 | 1270 | |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 27216 | 623528 SH | SHARED | 06 | | 623528 |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 216383 | 4957239 SH | SHARED | 10 | 4840430 | 116809 |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 161 | 3700 SH | SHR/OTHR | 10 | | 3700 |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 3454 | 79147 SH | SHARED | 14 | 79147 | |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 676 | 15500 SH | SHARED | 15 | 15500 | |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 5456 | 125013 SH | SHARED | 16 | 125013 | |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 8489 | 194492 SH | SHARED | 19 | | 194492 |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 8105 | 185686 SH | SHARED | 20 | 77085 | 108601 |

| D | Name | Class | CUSIP | Value | Amount | SH/PRN | Disc | Code | Voting1 | Voting2 |
|---|------|-------|-------|-------|--------|--------|------|------|---------|---------|
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 3477 | 79669 | SH | SHR/OTHR | 20 | | 79669 |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 674 | 15458 | SH | SHARED | 21 | 15108 | 350 |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 375 | 8600 | SH | SHR/OTHR | 21 | | 8600 |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 2670 | 61190 | SH | SHARED | 22 | 50574 | 10616 |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 267 | 6118 | SH | SHR/OTHR | 22 | | 6118 |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 15866 | 363499 | SH | SHARED | 23 | 277474 | 86025 |
| D | JP MORGAN CHASE & CO | COM | 46625H10 | 31093 | 712347 | SH | SHR/OTHR | 23 | | 712347 |
| D | J2 GLOBAL COMMUNICATIONS INC | COM NEW | 46626E20 | 428 | 20222 | SH | SHARED | | 20222 | |
| D | J2 GLOBAL COMMUNICATIONS INC | COM NEW | 46626E20 | 79 | 3770 | SH | SHARED | 01 | 3770 | |
| D | J2 GLOBAL COMMUNICATIONS INC | COM NEW | 46626E20 | 114 | 5400 | SH | SHARED | 02 | 5400 | |
| D | J2 GLOBAL COMMUNICATIONS INC | COM NEW | 46626E20 | 372 | 17600 | SH | SHARED | 04 | 17600 | |
| D | J2 GLOBAL COMMUNICATIONS INC | COM NEW | 46626E20 | 717 | 33912 | SH | SHARED | 10 | 33912 | |
| D | JMP GROUP INC | COM | 46629U10 | 4 | 508 | SH | SHARED | | 508 | |
| D | JABIL CIRCUIT INC | COM | 46631310 | 2852 | 186807 | SH | SHARED | | 186807 | |
| D | JABIL CIRCUIT INC | COM | 46631310 | 827 | 54200 | SH | SHARED | 01 | 54200 | |
| D | JABIL CIRCUIT INC | COM | 46631310 | 1680 | 110032 | SH | SHARED | 02 | 110032 | |
| D | JABIL CIRCUIT INC | COM | 46631310 | 458 | 30000 | SH | SHARED | 04 | 30000 | |
| D | JABIL CIRCUIT INC | COM | 46631310 | 12 | 820 | SH | SHARED | 06 | | 820 |
| D | JABIL CIRCUIT INC | COM | 46631310 | 1638 | 107322 | SH | SHARED | 10 | 107322 | |
| D | JACK IN THE BOX INC | COM | 46636710 | 9272 | 359818 | SH | SHARED | | 359818 | |
| D | JACK IN THE BOX INC | COM | 46636710 | 795 | 30850 | SH | SHARED | 01 | 30700 | 150 |
| D | JACK IN THE BOX INC | COM | 46636710 | 566 | 22000 | SH | SHR/OTHR | | | 22000 |
| D | JACKSON HEWITT TAX SVCS INC | COM | 46820210 | 2135 | 82887 | SH | SHARED | 10 | 82887 | |
| D | JACKSON HEWITT TAX SVCS INC | COM | 46820210 | 194 | 6114 | SH | SHARED | | 6114 | |
| D | JACKSON HEWITT TAX SVCS INC | COM | 46820210 | 41 | 1300 | SH | SHARED | 10 | 1300 | |
| D | JACKSONVILLE BANCORP INC ILL | COM | 46977210 | 1 | 152 | SH | SHARED | | 152 | |
| D | JACLYN INC | COM | 46977210 | 0 | 42 | SH | SHARED | | 42 | |
| D | JACO ELECTRS INC | COM | 46978310 | 0 | 112 | SH | SHARED | | 112 | |
| D | JACOBS ENGR GROUP INC DEL | COM | 46981410 | 14988 | 156763 | SH | SHARED | | 156763 | |
| D | JACOBS ENGR GROUP INC DEL | COM | 46981410 | 803 | 8400 | SH | SHARED | 01 | 8400 | |
| D | JACOBS ENGR GROUP INC DEL | COM | 46981410 | 436 | 4570 | SH | SHARED | 02 | 4570 | |
| D | JACOBS ENGR GROUP INC DEL | COM | 46981410 | 105 | 1100 | SH | SHARED | 06 | | 1100 |
| D | JACOBS ENGR GROUP INC DEL | COM | 46981410 | 4837 | 50600 | SH | SHARED | 10 | 50600 | |
| D | JACOBS ENGR GROUP INC DEL | COM | 46981410 | 612 | 6402 | SH | SHARED | 14 | 6402 | |
| D | JACOBS ENGR GROUP INC DEL | COM | 46981410 | 10 | 114 | SH | SHARED | 21 | 114 | |
| D | JAGUAR MNG INC | COM | 47009M10 | 298 | 25000 | SH | SHARED | 04 | 25000 | |
| D | JAGUAR MNG INC | COM | 47009M10 | 41 | 3500 | SH | SHARED | 23 | | 3500 |
| D | JAKKS PAC INC | NOTE 4.625% 6/1 | 47012EAB | 21890 | 16300000 | PRN | SHARED | | 6300000 | |
| D | JAKKS PAC INC | COM | 47012E10 | 185 | 7860 | SH | SHARED | | 7860 | |
| D | JAKKS PAC INC | COM | 47012E10 | 48 | 2050 | SH | SHARED | | | 2050 |
| D | JAKKS PAC INC | COM | 47012E10 | 72 | 3050 | SH | SHARED | 02 | 3050 | |
| D | JAKKS PAC INC | COM | 47012E10 | 304 | 12900 | SH | SHARED | 10 | 12900 | |
| D | JAKKS PAC INC | COM | 47012E10 | 49 | 2091 | SH | SHARED | 21 | 2091 | |
| D | JAMBA INC | COM | 47023A10 | 135 | 36510 | SH | SHARED | | 36510 | |
| D | JAMES RIVER COAL CO | COM NEW | 47035520 | 2263 | 202449 | SH | SHARED | | 202449 | |
| D | JAMES RIVER COAL CO | COM NEW | 47035520 | 10 | 975 | SH | SHARED | 02 | 975 | |
| D | JANUS CAP GROUP INC | COM | 47102X10 | 7403 | 225358 | SH | SHARED | | 225358 | |
| D | JANUS CAP GROUP INC | COM | 47102X10 | 545 | 16600 | SH | SHARED | 01 | 16600 | |
| D | JANUS CAP GROUP INC | COM | 47102X10 | 2424 | 73814 | SH | SHARED | 02 | 73814 | |
| D | JANUS CAP GROUP INC | COM | 47102X10 | 51 | 1570 | SH | SHARED | 06 | | 1570 |
| D | JANUS CAP GROUP INC | COM | 47102X10 | 2285 | 69589 | SH | SHARED | 10 | 69589 | |
| D | JANUS CAP GROUP INC | COM | 47102X10 | 65 | 2000 | SH | SHARED | 23 | 2000 | |
| D | JAPAN EQUITY FD INC | COM | 47105710 | 0 | 62 | SH | SHARED | | 62 | |
| D | JARDEN CORP | COM | 47110910 | 427 | 18114 | SH | SHARED | | 18114 | |
| D | JARDEN CORP | COM | 47110910 | 1088 | 46107 | SH | SHARED | 01 | 45200 | 907 |
| D | JARDEN CORP | COM | 47110910 | 613 | 26000 | SH | SHR/OTHR | 01 | | 26000 |
| D | JARDEN CORP | COM | 47110910 | 27 | 1175 | SH | SHARED | 02 | 1175 | |
| D | JARDEN CORP | COM | 47110910 | 604 | 25598 | SH | SHARED | 10 | 25598 | |
| D | JAZZ TECHNOLOGIES INC | COM | 47214E10 | 0 | 463 | SH | SHARED | | 463 | |
| D | JAZZ PHARMACEUTICALS INC | COM | 47214710 | 1 | 109 | SH | SHARED | | 109 | |
| D | JEFFERIES GROUP INC NEW | COM | 47231910 | 252 | 10960 | SH | SHARED | | 10960 | |
| D | JEFFERIES GROUP INC NEW | COM | 47231910 | 802 | 34800 | SH | SHARED | | 34800 | |
| D | JEFFERIES GROUP INC NEW | COM | 47231910 | 149 | 6495 | SH | SHARED | 01 | 6495 | |
| D | JEFFERIES GROUP INC NEW | COM | 47231910 | 210 | 9149 | SH | SHARED | 10 | 9149 | |
| D | JEFFERSON BANCSHARES INC TEN | COM | 47237510 | 1 | 153 | SH | SHARED | | 153 | |
| D | JEFFERSONVILLE BANCORP | COM | 47559A10 | 1 | 110 | SH | SHARED | | 110 | |
| D | JENNIFER CONVS INC | COM | 47613510 | 0 | 112 | SH | SHARED | | 112 | |
| D | JETBLUE AWYS CORP | DBCV 3.750% 3/1 | 47714AC | 13005 | 15000000 | PRN | SHARED | | 5000000 | |
| D | JETBLUE AWYS CORP | DBCV 3.750% 3/1 | 47143AC | 2601 | 3000000 | PRN | SHARED | 02 | 3000000 | |
| D | JETBLUE AWYS CORP | DBCV 3.750% 3/1 | 47143AC | 31 | 36500 | PRN | SHARED | | 36500 | |
| D | JETBLUE AWYS CORP | COM | 47714310 | 1055 | 178851 | SH | SHARED | | 178851 | |
| D | JETBLUE AWYS CORP | COM | 47714310 | 227 | 38500 | SH | SHARED | 01 | 3200 | 35300 |
| D | JETBLUE AWYS CORP | COM | 47714310 | 2 | 450 | SH | SHR/OTHR | 01 | | 450 |
| D | JETBLUE AWYS CORP | COM | 47714310 | 4603 | 780231 | SH | SHARED | 02 | 780231 | |
| D | JETBLUE AWYS CORP | COM | 47714310 | 1765 | 299234 | SH | SHARED | 10 | 299234 | |
| D | JETBLUE AWYS CORP | COM | 47714310 | 861 | 146000 | SH | SHARED | 14 | 146000 | |
| D | JETBLUE AWYS CORP | COM | 47714310 | 442 | 75000 | SH | SHARED | 15 | 75000 | |
| D | JEWETT CAMERON TRADING LTD | COM NEW | 47733C20 | 0 | 28 | SH | SHARED | | 28 | |
| D | JO-ANN STORES INC | COM | 47758P30 | 1979 | 151333 | SH | SHARED | | 151333 | |
| D | JO-ANN STORES INC | COM | 47758P30 | 34 | 2600 | SH | SHARED | | 2600 | |
| D | JO-ANN STORES INC | COM | 47758P30 | 1467 | 112200 | SH | SHARED | 10 | 112200 | |
| D | JK ACQUISITION CORP | COM | 47559H10 | 121 | 21700 | SH | SHARED | | 21700 | |
| D | JOES JEANS INC | COM | 47777N10 | 0 | 757 | SH | SHARED | | 757 | |
| D | JOHNSON & JOHNSON | COM | 47816010 | 1715 | 25720 | SH | SHARED | | 7744 | 17976 |
| D | JOHNSON & JOHNSON | COM | 47816010 | 593487 | 8897862 | SH | SHARED | | 8547422 | 350440 |
| D | JOHNSON & JOHNSON | COM | 47816010 | 52652 | 789393 | SH | SHARED | 01 | 528885 | 260508 |
| D | JOHNSON & JOHNSON | COM | 47816010 | 15161 | 227311 | SH | SHR/OTHR | 01 | | 227311 |
| D | JOHNSON & JOHNSON | COM | 47816010 | 68237 | 1023057 | SH | SHARED | 02 | 1023057 | |
| D | JOHNSON & JOHNSON | COM | 47816010 | 304 | 4560 | SH | SHARED | 04 | 4560 | |
| D | JOHNSON & JOHNSON | COM | 47816010 | 19209 | 288000 | SH | SHARED | 04 | 288000 | |
| D | JOHNSON & JOHNSON | COM | 47816010 | 1872 | 28080 | SH | SHARED | 05 | 28080 | |
| D | JOHNSON & JOHNSON | COM | 47816010 | 1891 | 28357 | SH | SHARED | 06 | | 28357 |
| D | JOHNSON & JOHNSON | COM | 47816010 | 308183 | 4620442 | SH | SHARED | 10 | 4299614 | 320828 |
| D | JOHNSON & JOHNSON | COM | 47816010 | 2399 | 35976 | SH | SHARED | 14 | 3600 | 32376 |
| D | JOHNSON & JOHNSON | COM | 47816010 | 1133 | 16993 | SH | SHARED | 15 | 16993 | |
| D | JOHNSON & JOHNSON | COM | 47816010 | 616 | 9248 | SH | SHARED | 19 | 9248 | |
| D | JOHNSON & JOHNSON | COM | 47816010 | 14847 | 222601 | SH | SHARED | 20 | 89205 | 133396 |
| D | JOHNSON & JOHNSON | COM | 47816010 | 13305 | 199482 | SH | SHARED | 20 | 199482 | |
| D | JOHNSON & JOHNSON | COM | 47816010 | 954 | 14307 | SH | SHARED | 21 | 11207 | 3100 |
| D | JOHNSON & JOHNSON | COM | 47816010 | 53 | 800 | SH | SHR/OTHR | 21 | | 800 |
| D | JOHNSON & JOHNSON | COM | 47816010 | 10285 | 154209 | SH | SHARED | 22 | 82172 | 72037 |
| D | JOHNSON & JOHNSON | COM | 47816010 | 1103 | 16546 | SH | SHR/OTHR | 22 | | 16546 |
| D | JOHNSON & JOHNSON | COM | 47816010 | 32493 | 487166 | SH | SHARED | 23 | 451771 | 35395 |
| D | JOHNSON & JOHNSON | COM | 47816010 | 54960 | 823996 | SH | SHR/OTHR | 23 | | 823996 |
| D | JOHNSON & JOHNSON | COM | 47816010 | 1344 | 20163 | SH | SHARED | 24 | 20163 | |
| D | JOHNSON CTLS INC | COM | 47836610 | 54 | 1518 | SH | SHARED | | 1518 | |
| D | JOHNSON CTLS INC | COM | 47836610 | 80909 | 2245004 | SH | SHARED | | 2107104 | 137900 |
| D | JOHNSON CTLS INC | COM | 47836610 | 3287 | 91221 | SH | SHARED | 01 | 91146 | 75 |
| D | JOHNSON CTLS INC | COM | 47836610 | 10 | 300 | SH | SHR/OTHR | 01 | | 300 |
| D | JOHNSON CTLS INC | COM | 47836610 | 3224 | 89474 | SH | SHARED | 02 | 89474 | |
| D | JOHNSON CTLS INC | COM | 47836610 | 19722 | 547249 | SH | SHARED | 04 | 547249 | |
| D | JOHNSON CTLS INC | COM | 47836610 | 22591 | 626832 | SH | SHARED | 05 | 626832 | |
| D | JOHNSON CTLS INC | COM | 47836610 | 1085 | 30115 | SH | SHARED | 06 | | 30115 |

| | Name | Class | CUSIP | Value | Shares | Type | Mgr | Sole | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|
| D | JOHNSON CTLS INC | COM | 47836610 | 67157 | 1863401 SH | SHARED | 10 | 1843301 | | 20100 |
| D | JOHNSON CTLS INC | COM | 47836610 | 5351 | 148500 SH | SHARED | 15 | | | 148500 |
| D | JOHNSON CTLS INC | COM | 47836610 | 32 | 900 SH | SHARED | 23 | 900 | | |
| D | JOHNSON OUTDOORS INC | CL A | 47916710 | 2 | 118 SH | SHARED | | | | 118 |
| D | JONES APPAREL GROUP INC | COM | 48007410 | 1219 | 76276 SH | SHARED | | 76276 | | |
| D | JONES APPAREL GROUP INC | COM | 48007410 | 161 | 10070 SH | SHARED | 01 | 10070 | | |
| D | JONES APPAREL GROUP INC | COM | 48007410 | 1082 | 67729 SH | SHARED | 02 | 67729 | | |
| D | JONES APPAREL GROUP INC | COM | 48007410 | 709 | 44354 SH | SHARED | 10 | 44354 | | |
| D | JONES LANG LASALLE INC | COM | 48020Q10 | 339 | 4770 SH | SHARED | | 4770 | | |
| D | JONES LANG LASALLE INC | COM | 48020Q10 | 1764 | 24791 SH | SHARED | | 24791 | | |
| D | JONES LANG LASALLE INC | COM | 48020Q10 | 946 | 13300 SH | SHARED | 01 | 4500 | | 8800 |
| D | JONES LANG LASALLE INC | COM | 48020Q10 | 573 | 8063 SH | SHARED | 02 | 8063 | | |
| D | JONES LANG LASALLE INC | COM | 48020Q10 | 8442 | 118637 SH | SHARED | 10 | 118637 | | |
| D | JONES SODA CO | COM | | 0 | 100 SH | SHARED | | 100 | | |
| D | JOS A BANK CLOTHIERS INC | COM | 48083810 | 590 | 20768 SH | SHARED | | 20768 | | |
| D | JOS A BANK CLOTHIERS INC | COM | 48083810 | 36 | 1300 SH | SHARED | 01 | 1300 | | |
| D | JOS A BANK CLOTHIERS INC | COM | 48083810 | 770 | 27100 SH | SHARED | 10 | 27100 | | |
| D | JOS A BANK CLOTHIERS INC | COM | 48083810 | 228 | 8033 SH | SHARED | 22 | | | 8033 |
| D | JOURNAL COMMUNICATIONS INC | CL A | 48113010 | 543 | 60835 SH | SHARED | | 60835 | | |
| D | JOURNAL COMMUNICATIONS INC | CL A | 48113010 | 54 | 6070 SH | SHARED | 02 | 6070 | | |
| D | JOURNAL REGISTER CO | COM | 48113810 | 63 | 36015 SH | SHARED | | 36015 | | |
| D | JOURNAL REGISTER CO | COM | 48113810 | 1 | 861 SH | SHARED | 02 | 861 | | |
| D | JOY GLOBAL INC | COM | 48116510 | 4260 | 64726 SH | SHARED | | 64726 | | |
| D | JOY GLOBAL INC | COM | 48116510 | 14586 | 221607 SH | SHARED | 01 | 91055 | | 130552 |
| D | JOY GLOBAL INC | COM | 48116510 | 3472 | 52753 SH | SHR/OTHR | 01 | | | 52753 |
| D | JOY GLOBAL INC | COM | 48116510 | 1034 | 15718 SH | SHARED | 02 | 15718 | | |
| D | JOY GLOBAL INC | COM | 48116510 | 7240 | 110000 SH | SHARED | 04 | 110000 | | |
| D | JOY GLOBAL INC | COM | 48116510 | 1862 | 28300 SH | SHARED | 05 | 28300 | | |
| D | JOY GLOBAL INC | COM | 48116510 | 19 | 300 SH | SHARED | 06 | | | 300 |
| D | JOY GLOBAL INC | COM | 48116510 | 17439 | 264960 SH | SHARED | 10 | 262600 | | 2360 |
| D | JOY GLOBAL INC | COM | 48116510 | 388 | 5900 SH | SHARED | 14 | | | 5900 |
| D | JOY GLOBAL INC | COM | 48116510 | 1096 | 16655 SH | SHARED | 20 | 9960 | | 6695 |
| D | JOY GLOBAL INC | COM | 48116510 | 572 | 8700 SH | SHR/OTHR | 20 | | | 8700 |
| D | JOY GLOBAL INC | COM | 48116510 | 95 | 1450 SH | SHARED | 21 | 1450 | | |
| D | JOY GLOBAL INC | COM | 48116510 | 6 | 100 SH | SHR/OTHR | 21 | | | 100 |
| D | JOY GLOBAL INC | COM | 48116510 | 1165 | 17705 SH | SHARED | 22 | 15320 | | 2385 |
| D | JOY GLOBAL INC | COM | 48116510 | 127 | 1939 SH | SHR/OTHR | 22 | | | 1939 |
| D | JOY GLOBAL INC | COM | 48116510 | 4094 | 62200 SH | SHARED | 23 | 50700 | | 11500 |
| D | JOY GLOBAL INC | COM | 48116510 | 1703 | 25880 SH | SHR/OTHR | 23 | | | 25880 |
| D | JUNIPER NETWORKS INC | NOTE 6/1 | 48139RAC | 81 | 49000 PRN | SHARED | 02 | 49000 | | |
| D | JUNIPER NETWORKS INC | COM | 48203R10 | 1176 | 35425 SH | SHARED | | 35425 | | |
| D | JUNIPER NETWORKS INC | COM | 48203R10 | 24407 | 735162 SH | SHARED | | 735162 | | |
| D | JUNIPER NETWORKS INC | COM | 48203R10 | 2272 | 68447 SH | SHARED | 01 | 65147 | | 3300 |
| D | JUNIPER NETWORKS INC | COM | 48203R10 | 2792 | 84110 SH | SHARED | 02 | 84110 | | |
| D | JUNIPER NETWORKS INC | COM | 48203R10 | 1460 | 44000 SH | SHARED | 04 | 44000 | | |
| D | JUNIPER NETWORKS INC | COM | 48203R10 | 4 | 140 SH | SHARED | 05 | 140 | | |
| D | JUNIPER NETWORKS INC | COM | 48203R10 | 160 | 4820 SH | SHARED | 06 | | | 4820 |
| D | JUNIPER NETWORKS INC | COM | 48203R10 | 34940 | 1052420 SH | SHARED | 10 | 1052420 | | |
| D | JUNIPER NETWORKS INC | COM | 48203R10 | 173 | 5235 SH | SHARED | 14 | | | 5235 |
| D | JUPITERMEDIA CORP | COM | 48207D10 | 206 | 54171 SH | SHARED | | 54171 | | |
| D | KBL HEALTHCARE ACQUIS CORP I | COM | 48241N10 | 4204 | 582370 SH | SHARED | | 582370 | | |
| D | KBL HEALTHCARE ACQUIS CORP I | *W EXP 07/18/201 | 48241N11 | 108 | 241517 SH | SHARED | | 241517 | | |
| D | KBR INC | COM | 48242W10 | 4968 | 128043 SH | SHARED | | 128043 | | |
| D | KBR INC | COM | 48242W10 | 2141 | 55200 SH | SHARED | 01 | 2600 | | 52600 |
| D | KBR INC | COM | 48242W10 | 375 | 9682 SH | SHARED | 02 | 9682 | | |
| D | KBR INC | COM | 48242W10 | 34036 | 877239 SH | SHARED | 04 | 877239 | | |
| D | KBR INC | COM | 48242W10 | 73 | 1900 SH | SHARED | 06 | | | 1900 |
| D | KBR INC | COM | 48242W10 | 380 | 9800 SH | SHARED | 10 | 9800 | | |
| D | KBR INC | COM | 48242W10 | 252 | 6500 SH | SHARED | 14 | | | 6500 |
| D | KBR INC | COM | 48242W10 | 2588 | 66715 SH | SHARED | 16 | 66715 | | |
| D | KBR INC | COM | 48242W10 | 5 | 140 SH | SHARED | 21 | | | 140 |
| D | KBW INC | COM | 48243310 | 781 | 30523 SH | SHARED | | 30523 | | |
| D | KBW INC | COM | 48243310 | 335 | 13100 SH | SHARED | 10 | 13100 | | |
| D | KBW INC | COM | 48243310 | 30 | 1184 SH | SHARED | 21 | | | 1184 |
| D | K FED BANCORP | COM | 48246310 | 343 | 34045 SH | SHARED | | 34045 | | |
| D | KHD HUMBOLDT WEDAG INTL LTD | COM | 48246210 | 31 | 1048 SH | SHARED | | 1048 | | |
| D | KKR FINANCIAL HLDGS LLC | COM | 48248A30 | 57795 | 4113565 SH | SHARED | | 4113565 | | |
| D | KKR FINANCIAL HLDGS LLC | COM | 48248A30 | 288 | 20500 SH | SHARED | 01 | 20500 | | |
| D | KKR FINANCIAL HLDGS LLC | COM | 48248A30 | 7697 | 547885 SH | SHARED | 02 | 547885 | | |
| D | KKR FINANCIAL HLDGS LLC | COM | 48248A30 | 160 | 11400 SH | SHARED | 10 | 11400 | | |
| D | KLA-TENCOR CORP | COM | 48248010 | 10233 | 212498 SH | SHARED | | 212498 | | |
| D | KLA-TENCOR CORP | COM | 48248010 | 972 | 20191 SH | SHARED | | 20191 | | |
| D | KLA-TENCOR CORP | COM | 48248010 | 163 | 3400 SH | SHR/OTHR | 01 | | | 3400 |
| D | KLA-TENCOR CORP | COM | 48248010 | 9301 | 193131 SH | SHARED | 02 | 193131 | | |
| D | KLA-TENCOR CORP | COM | 48248010 | 481 | 10000 SH | SHARED | 04 | 10000 | | |
| D | KLA-TENCOR CORP | COM | 48248010 | 4 | 100 SH | SHARED | 05 | 100 | | |
| D | KLA-TENCOR CORP | COM | 48248010 | 92 | 1920 SH | SHARED | 06 | | | 1920 |
| D | KLA-TENCOR CORP | COM | 48248010 | 13676 | 283990 SH | SHARED | 10 | 283990 | | |
| D | KLA-TENCOR CORP | COM | 48248010 | 32 | 669 SH | SHARED | 20 | 394 | | 275 |
| D | KMG CHEMICALS INC | COM | 48256410 | 73 | 5059 SH | SHARED | | 5059 | | |
| D | KMG CHEMICALS INC | COM | 48256410 | 18 | 1300 SH | SHARED | 02 | 1300 | | |
| D | KT CORP | SPONSORED ADR | 48268X10 | 7120 | 276001 SH | SHARED | | 276001 | | |
| D | KT CORP | SPONSORED ADR | 48268X10 | 585 | 22700 SH | SHARED | 14 | | | 22700 |
| D | KT CORP | SPONSORED ADR | 48268X10 | 9 | 375 SH | SHARED | 21 | | | 375 |
| D | KSW INC | COM | 48268H10 | 0 | 141 SH | SHARED | | 141 | | |
| D | K SEA TRANSN PARTNERS LP | COM | 48268Y10 | 8 | 245 SH | SHARED | | 245 | | |
| D | K-SWISS INC | CL A | 48268610 | 7088 | 391614 SH | SHARED | | 391614 | | |
| D | K12 INC | COM | 48273U10 | 840 | 32500 SH | SHARED | | 32500 | | |
| D | K12 INC | COM | 48273U10 | 103 | 4000 SH | SHARED | 06 | | | 4000 |
| D | K12 INC | COM | 48273U10 | 103 | 4000 SH | SHARED | 10 | 4000 | | |
| D | K TRON INTL INC | COM | 48273010 | 7 | 66 SH | SHARED | | 66 | | |
| D | K TRON INTL INC | COM | 48273010 | 35 | 300 SH | SHARED | 02 | 300 | | |
| D | KVH INDS INC | COM | 48273810 | 8 | 1091 SH | SHARED | | 1091 | | |
| D | K V PHARMACEUTICAL CO | NOTE 2.500% 5/1 | 48274OAC | 496 | 390000 PRN | SHARED | 02 | 390000 | | |
| D | K V PHARMACEUTICAL CO | CL B CONV | 48274010 | 2 | 96 SH | SHARED | 02 | 96 | | |
| D | K V PHARMACEUTICAL CO | CL A | 48274020 | 93 | 3274 SH | SHARED | | 3274 | | |
| D | K V PHARMACEUTICAL CO | CL A | 48274020 | 41 | 1450 SH | SHARED | 02 | 1450 | | |
| D | KADANT INC | COM | 48282T10 | 107 | 3626 SH | SHARED | | 3626 | | |
| D | KADANT INC | COM | 48282T10 | 75 | 2550 SH | SHARED | 01 | | | 2550 |
| D | KNBT BANCORP INC | COM | 48292110 | 3 | 244 SH | SHARED | | 244 | | |
| D | KNBT BANCORP INC | COM | 48292110 | 121 | 7900 SH | SHARED | 10 | 7900 | | |
| D | KAISER ALUMINUM CORP | COM PAR $0.01 | 48300770 | 3105 | 39076 SH | SHARED | | 39076 | | |
| D | KAISER ALUMINUM CORP | COM PAR $0.01 | 48300770 | 31 | 400 SH | SHARED | 01 | | | 400 |
| D | KAISER ALUMINUM CORP | COM PAR $0.01 | 48300770 | 643 | 8100 SH | SHARED | 10 | 8100 | | |
| D | KAMAN CORP | COM | 48354810 | 1717 | 46649 SH | SHARED | | 46649 | | |
| D | KAMAN CORP | COM | 48354810 | 263 | 7150 SH | SHARED | 02 | 7150 | | |
| D | KAMAN CORP | COM | 48354810 | 235 | 6400 SH | SHARED | 10 | 6400 | | |
| D | KANSAS CITY LIFE INS CO | COM | 48483610 | 11 | 275 SH | SHARED | 02 | 275 | | |
| D | KANSAS CITY SOUTHERN | COM NEW | 48517030 | 367 | 10699 SH | SHARED | | 8899 | | 1800 |
| D | KANSAS CITY SOUTHERN | COM NEW | 48517030 | 762 | 22200 SH | SHARED | | 22200 | | |
| D | KANSAS CITY SOUTHERN | COM NEW | 48517030 | 130 | 3810 SH | SHARED | 01 | 3810 | | |
| D | KANSAS CITY SOUTHERN | COM NEW | 48517030 | 1348 | 39290 SH | SHARED | 10 | 26690 | | 12600 |
| D | KAPSTONE PAPER & PACKAGING C | COM | 48562P10 | 3 | 551 SH | SHARED | | 551 | | |
| D | KAPSTONE PAPER & PACKAGING C | *W EXP 08/15/200 | 48562P11 | 809 | 404857 SH | SHARED | | 404857 | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D KAYDON CORP | NOTE | 4.000% 5/2 | 486587AB | 31909 | 17000000 | PRN | SHARED | 7000000 | |
| D KAYDON CORP | COM | | 48658710 | 16 | 300 | SH | SHARED | | 300 |
| D KAYDON CORP | COM | | 48658710 | 196 | 3600 | SH | SHARED | 3600 | |
| D KAYDON CORP | COM | | 48658710 | 5476 | 100421 | SH | SHARED | 02 | 100421 |
| D KAYDON CORP | COM | | 48658710 | 14725 | 270000 | SH | SHARED | 04 | 270000 |
| D KAYDON CORP | COM | | 48658710 | 18112 | 332087 | SH | SHARED | 05 | 332087 |
| D KAYDON CORP | COM | | 48658710 | 365 | 6700 | SH | SHARED | 06 | 6700 |
| D KAYDON CORP | COM | | 48658710 | 327 | 6000 | SH | SHARED | 10 | 6000 |
| D KB HOME | COM | | 48666K10 | 4512 | 208896 | SH | SHARED | | 208896 |
| D KB HOME | COM | | 48666K10 | 343 | 15901 | SH | SHARED | 01 | 15901 |
| D KB HOME | COM | | 48666K10 | 4884 | 226135 | SH | SHARED | 02 | 226135 |
| D KB HOME | COM | | 48666K10 | 820 | 38007 | SH | SHARED | 10 | 38007 |
| D KEARNY FINL CORP | COM | | 48716910 | 693 | 58243 | SH | SHARED | | 58243 |
| D KEITHLEY INSTRS INC | COM | | 48758410 | 3 | 365 | SH | SHARED | | 365 |
| D KELLOGG CO | COM | | 48783610 | 52 | 1000 | SH | SHARED | | 1000 |
| D KELLOGG CO | COM | | 48783610 | 20779 | 396323 | SH | SHARED | | 396323 |
| D KELLOGG CO | COM | | 48783610 | 8565 | 163377 | SH | SHARED | 01 | 140527 | 22850 |
| D KELLOGG CO | COM | | 48783610 | 1236 | 23585 | SH | SHR/OTHR | 01 | | 23585 |
| D KELLOGG CO | COM | | 48783610 | 693 | 13226 | SH | SHARED | 02 | 13226 |
| D KELLOGG CO | COM | | 48783610 | 2034 | 38800 | SH | SHARED | 04 | 38800 |
| D KELLOGG CO | COM | | 48783610 | 3 | 70 | SH | SHARED | 05 | 70 |
| D KELLOGG CO | COM | | 48783610 | 143 | 2730 | SH | SHARED | 06 | 2730 |
| D KELLOGG CO | COM | | 48783610 | 54674 | 1042804 | SH | SHARED | 10 | 975704 | 67100 |
| D KELLOGG CO | COM | | 48783610 | 595 | 11357 | SH | SHARED | 14 | 11357 |
| D KELLOGG CO | COM | | 48783610 | 3153 | 60145 | SH | SHARED | 20 | 38670 | 21475 |
| D KELLOGG CO | COM | | 48783610 | 253 | 4840 | SH | SHR/OTHR | 20 | | 4840 |
| D KELLOGG CO | COM | | 48783610 | 241 | 4600 | SH | SHARED | 21 | 4600 |
| D KELLOGG CO | COM | | 48783610 | 41 | 800 | SH | SHR/OTHR | 21 | | 800 |
| D KELLOGG CO | COM | | 48783610 | 236 | 4505 | SH | SHARED | 22 | 4215 | 290 |
| D KELLOGG CO | COM | | 48783610 | 46 | 893 | SH | SHR/OTHR | 22 | | 893 |
| D KELLOGG CO | COM | | 48783610 | 795 | 15170 | SH | SHARED | 23 | 13385 | 1785 |
| D KELLOGG CO | COM | | 48783610 | 1516 | 28921 | SH | SHR/OTHR | 23 | | 28921 |
| D KELLOGG CO | COM | | 48783610 | 63 | 1217 | SH | SHARED | 24 | 1217 |
| D KELLWOOD CO | DBCV | 3.500% 6/1 | 488044AP | 2604 | 3000000 | PRN | SHARED | 3000000 | |
| D KELLWOOD CO | COM | | 48804410 | 2 | 12776 | PRN | SHARED | 12776 | |
| D KELLWOOD CO | COM | | 48804410 | 0 | 4300 | PRN | SHARED | 01 | 2400 | 1900 |
| D KELLWOOD CO | COM | | 48804410 | 6 | 40300 | PRN | SHARED | 10 | 40300 |
| D KELLY SVCS INC | CL A | | 48815220 | 9105 | 487979 | SH | SHARED | | 83101 | 404878 |
| D KELLY SVCS INC | CL A | | 48815220 | 97 | 5200 | SH | SHARED | 01 | | 5200 |
| D KELLY SVCS INC | CL A | | 48815220 | 443 | 23794 | SH | SHARED | 02 | 23794 |
| D KELLY SVCS INC | CL A | | 48815220 | 15812 | 847400 | SH | SHARED | 10 | 847400 |
| D KEMET CORP | NOTE | 2.250%11/1 | 488360AB | 3640 | 4000000 | PRN | SHARED | 4000000 | |
| D KEMET CORP | NOTE | 2.250%11/1 | 488360AB | 3185 | 3500000 | PRN | SHARED | 02 | 3500000 |
| D KEMET CORP | COM | | 48836010 | 20580 | 3104114 | SH | SHARED | 3104114 | |
| D KEMET CORP | COM | | 48836010 | 182 | 27600 | SH | SHARED | 01 | | 27600 |
| D KEMET CORP | COM | | 48836010 | 213 | 32277 | SH | SHARED | 02 | 32277 |
| D KEMET CORP | COM | | 48836010 | 137 | 20800 | SH | SHARED | 10 | 20800 |
| D KENDLE INTERNATIONAL INC | COM | | 48880L10 | 231 | 4735 | SH | SHARED | 4735 | |
| D KENDLE INTERNATIONAL INC | COM | | 48880L10 | 24 | 500 | SH | SHARED | 01 | 500 |
| D KENDLE INTERNATIONAL INC | COM | | 48880L10 | 12117 | 247700 | SH | SHARED | 10 | 247700 |
| D KENEXA CORP | COM | | 48887910 | 13 | 700 | SH | SHARED | 700 | |
| D KENEXA CORP | COM | | 48887910 | 21 | 1130 | SH | SHARED | 21 | 1130 |
| D KENNAMETAL INC | COM | | 48917010 | 2014 | 53217 | SH | SHARED | 53217 | |
| D KENNAMETAL INC | COM | | 48917010 | 878 | 23200 | SH | SHARED | 01 | | 23200 |
| D KENNAMETAL INC | COM | | 48917010 | 139 | 3693 | SH | SHARED | 02 | 3693 |
| D KENNAMETAL INC | COM | | 48917010 | 8059 | 212864 | SH | SHARED | 10 | 212864 |
| D KENNAMETAL INC | COM | | 48917010 | 57 | 1516 | SH | SHR/OTHR | 20 | | 1516 |
| D KENNAMETAL INC | COM | | 48917010 | 45 | 1206 | SH | SHARED | 21 | 1206 |
| D KENT FINL SVCS INC | COM NEW | | 49056020 | 0 | 33 | SH | SHARED | 33 | |
| D KENTUCKY FIRST FED BANCORP | COM | | 49129210 | 0 | 99 | SH | SHARED | 99 | |
| D KERYX BIOPHARMACEUTICALS INC | COM | | 49251510 | 158 | 18924 | SH | SHARED | 18924 | |
| D KERYX BIOPHARMACEUTICALS INC | COM | | 49251510 | 64 | 7625 | SH | SHARED | 01 | 7625 |
| D KERYX BIOPHARMACEUTICALS INC | COM | | 49251510 | 920 | 109553 | SH | SHARED | 04 | 109553 |
| D KERYX BIOPHARMACEUTICALS INC | COM | | 49251510 | 700 | 83400 | SH | SHARED | 10 | 83400 |
| D KEWAUNEE SCIENTIFIC CORP | COM | | 49285410 | 0 | 42 | SH | SHARED | 42 | |
| D KEY ENERGY SVCS INC | COM | | 49291410 | 113 | 7905 | SH | SHARED | 7905 | |
| D KEY ENERGY SVCS INC | COM | | 49291410 | 17471 | 1214150 | SH | SHARED | 10 | 1214150 |
| D KEY TECHNOLOGY INC | COM | | 49314310 | 4 | 117 | SH | SHARED | 117 | |
| D KEY TRONICS CORP | COM | | 49314410 | 1 | 258 | SH | SHARED | 258 | |
| D KEYCORP NEW | COM | | 49326710 | 26432 | 1127206 | SH | SHARED | 1127206 | |
| D KEYCORP NEW | COM | | 49326710 | 1184 | 50525 | SH | SHARED | 01 | 47115 | 3410 |
| D KEYCORP NEW | COM | | 49326710 | 479 | 20450 | SH | SHR/OTHR | 01 | | 20450 |
| D KEYCORP NEW | COM | | 49326710 | 1270 | 54183 | SH | SHARED | 02 | 54183 |
| D KEYCORP NEW | COM | | 49326710 | 3 | 150 | SH | SHARED | 05 | 150 |
| D KEYCORP NEW | COM | | 49326710 | 91 | 3920 | SH | SHARED | 06 | | 3920 |
| D KEYCORP NEW | COM | | 49326710 | 136788 | 5833188 | SH | SHARED | 10 | 5833188 |
| D KEYCORP NEW | COM | | 49326710 | 571 | 24380 | SH | SHARED | 14 | | 24380 |
| D KEYCORP NEW | COM | | 49326710 | 14 | 610 | SH | SHARED | 21 | | 610 |
| D KEYCORP NEW | COM | | 49326710 | 34 | 1450 | SH | SHARED | 22 | 1450 |
| D KEYCORP NEW | COM | | 49326710 | 84 | 3600 | SH | SHARED | 23 | 3600 |
| D KEYCORP NEW | COM | | 49326710 | 234 | 10000 | SH | SHR/OTHR | 23 | | 10000 |
| D KEYNOTE SYS INC | COM | | 49330810 | 0 | 10 | SH | SHARED | 10 | |
| D KEYNOTE SYS INC | COM | | 49330810 | 6 | 450 | SH | SHARED | 01 | 450 |
| D KFORCE INC | COM | | 49373210 | 106 | 10945 | SH | SHARED | 10945 | |
| D KFORCE INC | COM | | 49373210 | 23 | 2400 | SH | SHARED | 01 | 2400 |
| D KFORCE INC | COM | | 49373210 | 305 | 31300 | SH | SHARED | 02 | 31300 |
| D KFORCE INC | COM | | 49373210 | 476 | 48900 | SH | SHARED | 10 | 48900 |
| D KFORCE INC | COM | | 49373210 | 26 | 2689 | SH | SHARED | 21 | 2689 |
| D KILROY RLTY CORP | COM | | 49427F10 | 143 | 2618 | SH | SHARED | 2618 | |
| D KILROY RLTY CORP | COM | | 49427F10 | 112 | 2050 | SH | SHARED | 02 | 2050 |
| D KILROY RLTY CORP | COM | | 49427F10 | 82 | 1500 | SH | SHARED | 10 | 1500 |
| D KILROY RLTY CORP | COM | | 49427F10 | 17789 | 323681 | SH | SHARED | 11 | 114950 | 208731 |
| D KIMBALL INTL INC | CL B | | 49427410 | 19067 | 1391807 | SH | SHARED | 1391807 | |
| D KIMBALL INTL INC | CL B | | 49427410 | 17 | 1300 | SH | SHARED | 02 | 1300 |
| D KIMBALL INTL INC | CL B | | 49427410 | 16 | 1200 | SH | SHARED | 10 | 1200 |
| D KIMBERLY CLARK CORP | COM | | 49436810 | 155 | 2240 | SH | SHARED | 2240 | |
| D KIMBERLY CLARK CORP | COM | | 49436810 | 89441 | 1289901 | SH | SHARED | 1225701 | 64200 |
| D KIMBERLY CLARK CORP | COM | | 49436810 | 8597 | 123995 | SH | SHARED | 01 | 78765 | 45230 |
| D KIMBERLY CLARK CORP | COM | | 49436810 | 180 | 2600 | SH | SHR/OTHR | 01 | | 2600 |
| D KIMBERLY CLARK CORP | COM | | 49436810 | 4242 | 61180 | SH | SHARED | 02 | 61180 |
| D KIMBERLY CLARK CORP | COM | | 49436810 | 15 | 230 | SH | SHARED | 05 | 230 |
| D KIMBERLY CLARK CORP | COM | | 49436810 | 319 | 4610 | SH | SHARED | 06 | | 4610 |
| D KIMBERLY CLARK CORP | COM | | 49436810 | 84065 | 1212360 | SH | SHARED | 10 | 1136560 | 75800 |
| D KIMBERLY CLARK CORP | COM | | 49436810 | 2148 | 30992 | SH | SHARED | 14 | 30992 |
| D KIMBERLY CLARK CORP | COM | | 49436810 | 882 | 12730 | SH | SHARED | 20 | 1850 | 10880 |
| D KIMBERLY CLARK CORP | COM | | 49436810 | 374 | 5400 | SH | SHR/OTHR | 20 | | 5400 |
| D KIMBERLY CLARK CORP | COM | | 49436810 | 40 | 580 | SH | SHARED | 21 | 260 | 320 |
| D KIMBERLY CLARK CORP | COM | | 49436810 | 83 | 1200 | SH | SHARED | 22 | 1200 |
| D KIMBERLY CLARK CORP | COM | | 49436810 | 2622 | 37826 | SH | SHARED | 23 | 37826 |
| D KIMBERLY CLARK CORP | COM | | 49436810 | 2297 | 33139 | SH | SHR/OTHR | 23 | | 33139 |
| D KIMCO REALTY CORP | COM | | 49446R10 | 7796 | 214179 | SH | SHARED | 214179 | |
| D KIMCO REALTY CORP | COM | | 49446R10 | 1179 | 32417 | SH | SHARED | 01 | 32417 |
| D KIMCO REALTY CORP | COM | | 49446R10 | 554 | 15238 | SH | SHARED | 02 | 15238 |
| D KIMCO REALTY CORP | COM | | 49446R10 | 4884 | 134200 | SH | SHARED | 10 | 123800 | 10400 |

| | Issuer | Class | CUSIP | Val | Shares | Type | Code | Sole | Shared |
|---|---|---|---|---|---|---|---|---|---|
| D | KIMCO REALTY CORP | COM | 49446R10 | 98 | 2700 SH | SHARED | 22 | | 2700 |
| D | KIMCO REALTY CORP | COM | 49446R10 | 223 | 6150 SH | SHARED | 23 | 4800 | 1350 |
| D | KIMCO REALTY CORP | COM | 49446R10 | 303 | 8350 SH | SHR/OTHR | 23 | | 8350 |
| D | KINDER MORGAN MANAGEMENT LLC | SHS | 49455U10 | 84 | 1596 SH | SHARED | | 1596 | |
| D | KINDER MORGAN MANAGEMENT LLC | SHS | 49455U10 | 56 | 1067 SH | SHARED | 01 | | 1067 |
| D | KINDER MORGAN MANAGEMENT LLC | SHS | 49455U10 | 0 | 1 SH | SHARED | 02 | 1 | |
| D | KINDER MORGAN MANAGEMENT LLC | SHS | 49455U10 | 529 | 10000 SH | SHARED | 06 | | 10000 |
| D | KINDER MORGAN MANAGEMENT LLC | SHS | 49455U10 | 605 | 11438 SH | SHARED | 23 | | 11438 |
| D | KINDER MORGAN ENERGY PARTNER | UT LTD PARTNER | 49455U10 | 228 | 4238 SH | SHARED | | 4238 | |
| D | KINDRED HEALTHCARE INC | COM | 49458010 | 478 | 19163 SH | SHARED | | 19163 | |
| D | KINDRED HEALTHCARE INC | COM | 49458010 | 521 | 20875 SH | SHARED | 01 | 10975 | 9900 |
| D | KINDRED HEALTHCARE INC | COM | 49458010 | 35 | 1414 SH | SHARED | 02 | 1414 | |
| D | KINDRED HEALTHCARE INC | COM | 49458010 | 11216 | 449000 SH | SHARED | 10 | 449000 | |
| D | KINETIC CONCEPTS INC | COM NEW | 49460W20 | 3978 | 74277 SH | SHARED | | 20577 | 53700 |
| D | KINETIC CONCEPTS INC | COM NEW | 49460W20 | 1348 | 25175 SH | SHARED | 01 | 7575 | 17600 |
| D | KINETIC CONCEPTS INC | COM NEW | 49460W20 | 419 | 7834 SH | SHARED | 02 | 7834 | |
| D | KINETIC CONCEPTS INC | COM NEW | 49460W20 | 60678 | 1132900 SH | SHARED | 10 | 1124600 | 8300 |
| D | KINETIC CONCEPTS INC | COM NEW | 49460W20 | 63 | 1187 SH | SHARED | 14 | | 1187 |
| D | KING PHARMACEUTICALS INC | COM | 49558210 | 3091 | 301924 SH | SHARED | | 301924 | |
| D | KING PHARMACEUTICALS INC | COM | 49558210 | 789 | 77081 SH | SHARED | 01 | 62471 | 14610 |
| D | KING PHARMACEUTICALS INC | COM | 49558210 | 107 | 10475 SH | SHR/OTHR | 01 | | 10475 |
| D | KING PHARMACEUTICALS INC | COM | 49558210 | 291 | 28423 SH | SHARED | 02 | 28423 | |
| D | KING PHARMACEUTICALS INC | COM | 49558210 | 5031 | 491361 SH | SHARED | 10 | 491361 | |
| D | KING PHARMACEUTICALS INC | COM | 49558210 | 92 | 9074 SH | SHARED | 14 | | 9074 |
| D | KING PHARMACEUTICALS INC | COM | 49558210 | 24 | 2350 SH | SHARED | 20 | 2350 | |
| D | KING PHARMACEUTICALS INC | COM | 49558210 | 16 | 1605 SH | SHR/OTHR | 21 | | 1605 |
| D | KING PHARMACEUTICALS INC | COM | 49558210 | 11 | 1100 SH | SHARED | 22 | 1100 | |
| D | KINROSS GOLD CORP | COM NO PAR | 49690240 | 21 | 1156 SH | SHARED | | 1156 | |
| D | KINROSS GOLD CORP | COM NO PAR | 49690240 | 3114 | 169266 SH | SHARED | | 169266 | |
| D | KINROSS GOLD CORP | COM NO PAR | 49690240 | 27 | 1492 SH | SHARED | 01 | 1492 | |
| D | KINROSS GOLD CORP | COM NO PAR | 49690240 | 21510 | 1169057 SH | SHARED | 04 | 1169057 | |
| D | KINROSS GOLD CORP | COM NO PAR | 49690240 | 7 | 400 SH | SHARED | 05 | 400 | |
| D | KINROSS GOLD CORP | COM NO PAR | 49690240 | 3744 | 203500 SH | SHARED | 06 | | 203500 |
| D | KINROSS GOLD CORP | COM NO PAR | 49690240 | 77875 | 4232339 SH | SHARED | 10 | 4034439 | 197900 |
| D | KINROSS GOLD CORP | COM NO PAR | 49690240 | 920 | 50000 SH | SHARED | 14 | | 50000 |
| D | KINROSS GOLD CORP | COM NO PAR | 49690240 | 743 | 40400 SH | SHARED | 15 | | 40400 |
| D | KINROSS GOLD CORP | COM NO PAR | 49690240 | 460 | 25000 SH | SHARED | 16 | 25000 | |
| D | KINROSS GOLD CORP | COM NO PAR | 49690240 | 309 | 16800 SH | SHARED | 19 | | 16800 |
| D | KINROSS GOLD CORP | COM NO PAR | 49690240 | 2 | 115 SH | SHARED | 21 | 115 | |
| D | KINROSS GOLD CORP | COM NO PAR | 49690240 | 110 | 6000 SH | SHARED | 23 | | 6000 |
| D | KINROSS GOLD CORP | COM NO PAR | 49690240 | 45 | 2472 SH | SHR/OTHR | 23 | | 2472 |
| D | KINROSS GOLD CORP | COM NO PAR | 49690240 | 1205 | 65500 SH | SHARED | 24 | 65500 | |
| D | KINTERA INC | COM | 49720P50 | 1 | 732 SH | SHARED | | 732 | |
| D | KIRBY CORP | COM | 49726610 | 676 | 14550 SH | SHARED | | 14550 | |
| D | KIRBY CORP | COM | 49726610 | 881 | 18969 SH | SHARED | | 8069 | 10900 |
| D | KIRBY CORP | COM | 49726610 | 55 | 1200 SH | SHARED | 01 | 1200 | |
| D | KIRBY CORP | COM | 49726610 | 171 | 3700 SH | SHARED | 02 | 3700 | |
| D | KIRBY CORP | COM | 49726610 | 873 | 18800 SH | SHARED | 10 | 9100 | 9700 |
| D | KIRKLANDS INC | COM | 49749810 | 22 | 22885 SH | SHARED | | 22885 | |
| D | KITE RLTY GROUP TR | COM | 49803T10 | 3 | 209 SH | SHARED | | 209 | |
| D | KITE RLTY GROUP TR | COM | 49803T10 | 19609 | 1284202 SH | SHARED | 11 | 452285 | 831917 |
| D | KNOLL INC | COM NEW | 49890420 | 299 | 18200 SH | SHARED | | 18200 | |
| D | KNOLL INC | COM NEW | 49890420 | 622 | 37900 SH | SHARED | 02 | 37900 | |
| D | KNOLL INC | COM NEW | 49890420 | 324 | 19768 SH | SHARED | 10 | 19768 | |
| D | KNIGHT CAPITAL GROUP INC | CL A | 49900510 | 2694 | 187099 SH | SHARED | | 187099 | |
| D | KNIGHT CAPITAL GROUP INC | CL A | 49900510 | 347 | 24100 SH | SHARED | 01 | 24100 | |
| D | KNIGHT CAPITAL GROUP INC | CL A | 49900510 | 37 | 2600 SH | SHARED | 02 | 2600 | |
| D | KNIGHT CAPITAL GROUP INC | CL A | 49900510 | 354 | 24600 SH | SHARED | 10 | 24600 | |
| D | KNIGHT TRANSN INC | COM | 49906410 | 171 | 11600 SH | SHARED | | 11600 | |
| D | KNIGHT TRANSN INC | COM | 49906410 | 33 | 2250 SH | SHARED | 01 | | 2250 |
| D | KNIGHT TRANSN INC | COM | 49906410 | 29 | 2000 SH | SHARED | 02 | 2000 | |
| D | KNIGHT TRANSN INC | COM | 49906410 | 3 | 220 SH | SHARED | 10 | 220 | |
| D | KNOLOGY INC | COM | 49918380 | 1 | 118 SH | SHARED | | 118 | |
| D | KNOLOGY INC | COM | 49918380 | 3 | 276 SH | SHARED | 02 | 276 | |
| D | KNOT INC | COM | 49918410 | 64 | 4191 SH | SHARED | | 4191 | |
| D | KNOT INC | COM | 49918410 | 4 | 253 SH | SHARED | 02 | 253 | |
| D | KODIAK OIL & GAS CORP | COM | 50015Q10 | 55 | 25000 SH | SHARED | 02 | 25000 | |
| D | KODIAK OIL & GAS CORP | COM | 50015Q10 | 585 | 266000 SH | SHARED | 10 | 266000 | |
| D | KOHLBERG CAPITAL CORP | COM | 50023310 | 2209 | 184116 SH | SHARED | | 184116 | |
| D | KOHLS CORP | COM | 50025510 | 100 | 2200 SH | SHARED | | | 2200 |
| D | KOHLS CORP | COM | 50025510 | 61096 | 1333991 SH | SHARED | | 1333991 | |
| D | KOHLS CORP | COM | 50025510 | 1360 | 29702 SH | SHARED | 01 | 29027 | 675 |
| D | KOHLS CORP | COM | 50025510 | 4 | 100 SH | SHR/OTHR | 01 | | 100 |
| D | KOHLS CORP | COM | 50025510 | 6341 | 138460 SH | SHARED | 02 | 138460 | |
| D | KOHLS CORP | COM | 50025510 | 6 | 150 SH | SHARED | 05 | 150 | |
| D | KOHLS CORP | COM | 50025510 | 122 | 2680 SH | SHARED | 06 | | 2680 |
| D | KOHLS CORP | COM | 50025510 | 51448 | 1123336 SH | SHARED | 10 | 1081636 | 41700 |
| D | KOHLS CORP | COM | 50025510 | 13 | 300 SH | SHARED | 14 | | 10930 |
| D | KOHLS CORP | COM | 50025510 | 781 | 17060 SH | SHARED | 20 | 6130 | 10930 |
| D | KOHLS CORP | COM | 50025510 | 96 | 2100 SH | SHR/OTHR | 20 | | 2100 |
| D | KOHLS CORP | COM | 50025510 | 95 | 2090 SH | SHARED | 21 | 2090 | |
| D | KOHLS CORP | COM | 50025510 | 6 | 150 SH | SHR/OTHR | 21 | | 150 |
| D | KOHLS CORP | COM | 50025510 | 4 | 100 SH | SHARED | 22 | 2090 | |
| D | KOHLS CORP | COM | 50025510 | 20 | 450 SH | SHR/OTHR | 23 | 100 | 450 |
| D | KOHLS CORP | COM | 50025510 | 63 | 1377 SH | SHARED | 24 | 1377 | |
| D | KONA GRILL INC | COM | 50047H20 | 1 | 125 SH | SHARED | | 125 | |
| D | KONGZHONG CORP | SPONSORED ADR | 50047P10 | 121 | 20000 SH | SHARED | | | 20000 |
| D | KONGZHONG CORP | SPONSORED ADR | 50047P10 | 71 | 11712 SH | SHARED | | 11712 | |
| D | KONINKLIJKE PHILIPS ELECTRS | NY REG SH NEW | 50047230 | 1981 | 46361 SH | SHARED | | 46361 | |
| D | KONINKLIJKE PHILIPS ELECTRS | NY REG SH NEW | 50047230 | 640 | 14981 SH | SHARED | 01 | 24 | 14957 |
| D | KONINKLIJKE PHILIPS ELECTRS | NY REG SH NEW | 50047230 | 106 | 2498 SH | SHARED | 22 | 2498 | |
| D | KONINKLIJKE PHILIPS ELECTRS | NY REG SH NEW | 50047230 | 248 | 5821 SH | SHR/OTHR | 23 | | 5821 |
| D | KOOKMIN BK NEW | SPONSORED ADR | 50049M10 | 11502 | 156879 SH | SHARED | | 82379 | 74500 |
| D | KOOKMIN BK NEW | SPONSORED ADR | 50049M10 | 5808 | 79225 SH | SHARED | 01 | 79225 | |
| D | KOOKMIN BK NEW | SPONSORED ADR | 50049M10 | 1510 | 20600 SH | SHARED | 02 | 20600 | |
| D | KOOKMIN BK NEW | SPONSORED ADR | 50049M10 | 68053 | 928170 SH | SHARED | 10 | 747020 | 181150 |
| D | KOOKMIN BK NEW | SPONSORED ADR | 50049M10 | 630 | 8600 SH | SHARED | 15 | | 8600 |
| D | KOOKMIN BK NEW | SPONSORED ADR | 50049M10 | 3244 | 44250 SH | SHARED | 24 | 44250 | |
| D | KOPPERS HOLDINGS INC | COM | 50060P10 | 637 | 14741 SH | SHARED | | 14741 | |
| D | KOPIN CORP | COM | 50060010 | 25 | 7969 SH | SHARED | | 7969 | |
| D | KOPIN CORP | COM | 50060010 | 28 | 9000 SH | SHARED | 02 | 9000 | |
| D | KOREA ELECTRIC PWR | SPONSORED ADR | 50063110 | 5296 | 254017 SH | SHARED | | 254017 | |
| D | KOREA ELECTRIC PWR | SPONSORED ADR | 50063110 | 10 | 500 SH | SHR/OTHR | 01 | | 500 |
| D | KOREA ELECTRIC PWR | SPONSORED ADR | 50063110 | 1705 | 81800 SH | SHARED | 02 | 81800 | |
| D | KOREA ELECTRIC PWR | SPONSORED ADR | 50063110 | 1459 | 70000 SH | SHARED | 10 | 70000 | |
| D | KOREA ELECTRIC PWR | SPONSORED ADR | 50063110 | 5 | 274 SH | SHARED | 21 | | 274 |
| D | KOSAN BIOSCIENCES INC | COM | 50064M10 | 101 | 28077 SH | SHARED | | 28077 | |
| D | KORN FERRY INTL | COM NEW | 50064320 | 606 | 32208 SH | SHARED | | 32208 | |
| D | KORN FERRY INTL | COM NEW | 50064320 | 540 | 28700 SH | SHARED | 01 | 17500 | 11200 |
| D | KORN FERRY INTL | COM NEW | 50064320 | 48 | 2572 SH | SHARED | 02 | 2572 | |
| D | KORN FERRY INTL | COM NEW | 50064320 | 432 | 23000 SH | SHARED | 10 | 23000 | |
| D | KOSS CORP | COM | 50069210 | 0 | 28 SH | SHARED | | 28 | |
| D | KRAFT FOODS INC | CL A | 50075N10 | 11 | 346 SH | SHARED | | 346 | |
| D | KRAFT FOODS INC | CL A | 50075N10 | 181655 | 5567142 SH | SHARED | | 5539629 | 27513 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | KRAFT FOODS INC | CL A | | 50075N10 | 9828 | 301204 SH | SHARED | 01 | 223545 | 77659 |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 48301 | 1480277 SH | SHR/OTHR | 01 | | 1480277 |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 1360 | 41707 SH | SHARED | 02 | 41707 | |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 7 | 218 SH | SHARED | 04 | | 218 |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 24 | 765 SH | SHARED | 04 | 765 | |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 24 | 738 SH | SHARED | 05 | 738 | |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 27498 | 842744 SH | SHARED | 06 | | 842744 |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 24960 | 764965 SH | SHARED | 10 | 764965 | |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 15 | 484 SH | SHR/OTHR | 10 | | 484 |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 704 | 21584 SH | SHARED | 14 | | 21584 |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 4241 | 130000 SH | SHARED | 15 | 130000 | |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 765 | 23458 SH | SHARED | 20 | 9346 | 14112 |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 547 | 16786 SH | SHARED | 20 | | 16786 |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 241 | 7416 SH | SHARED | 21 | 3969 | 3447 |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 17 | 548 SH | SHARED | 22 | 134 | 414 |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 796 | 24424 SH | SHARED | 23 | 22487 | 1937 |
| D | KRAFT FOODS INC | CL A | | 50075N10 | 827 | 25360 SH | SHR/OTHR | 23 | | 25360 |
| D | KRATOS DEFENSE & SECURITY SO | COM | | 50077810 | 3 | 1316 SH | SHARED | | 1316 | |
| D | KREISLER MFG CORP | COM | | 50077310 | 47 | 3290 SH | SHARED | | 3290 | |
| D | KRISPY KREME DOUGHNUTS INC | COM | | 50104410 | 165 | 52503 SH | SHARED | | 52503 | |
| D | KROGER CO | COM | | 50104410 | 59317 | 2220794 SH | SHARED | | 2048394 | 172400 |
| D | KROGER CO | COM | | 50104410 | 8941 | 334762 SH | SHARED | 01 | 306597 | 28165 |
| D | KROGER CO | COM | | 50104410 | 706 | 26460 SH | SHR/OTHR | 01 | | 26460 |
| D | KROGER CO | COM | | 50104410 | 1510 | 56559 SH | SHARED | 02 | 56559 | |
| D | KROGER CO | COM | | 50104410 | 460 | 17225 SH | SHARED | 04 | 17225 | |
| D | KROGER CO | COM | | 50104410 | 7 | 280 SH | SHARED | 05 | 280 | |
| D | KROGER CO | COM | | 50104410 | 190 | 7130 SH | SHARED | 06 | | 7130 |
| D | KROGER CO | COM | | 50104410 | 110842 | 4149846 SH | SHARED | 10 | 3992926 | 156920 |
| D | KROGER CO | COM | | 50104410 | 2828 | 105900 SH | SHARED | 14 | | 105900 |
| D | KROGER CO | COM | | 50104410 | 1672 | 62630 SH | SHARED | 20 | 48785 | 13845 |
| D | KROGER CO | COM | | 50104410 | 118 | 4425 SH | SHR/OTHR | 20 | | 4425 |
| D | KROGER CO | COM | | 50104410 | 123 | 4609 SH | SHARED | 22 | 4000 | 609 |
| D | KROGER CO | COM | | 50104410 | 543 | 20330 SH | SHARED | 23 | 19705 | 625 |
| D | KROGER CO | COM | | 50104410 | 107 | 4035 SH | SHR/OTHR | 23 | | 4035 |
| D | KRONOS WORLDWIDE INC | COM | | 50105P10 | 0 | 40 SH | SHARED | | 40 | |
| D | KUBOTA CORP | ADR | | 50117320 | 933 | 27782 SH | SHARED | | 27782 | |
| D | KULICKE & SOFFA INDS INC | NOTE 0.500%11/3 | 50124ZAL | | 1886 | 2000000 PRN | SHARED | | 2000000 | |
| D | KULICKE & SOFFA INDS INC | COM | | 50124210 | 3200 | 466547 SH | SHARED | | 466547 | |
| D | KULICKE & SOFFA INDS INC | COM | | 50124210 | 6 | 1000 SH | SHARED | 01 | 1000 | |
| D | KULICKE & SOFFA INDS INC | COM | | 50124210 | 2 | 300 SH | SHARED | 02 | 300 | |
| D | KYOCERA CORP | ADR | | 50155620 | 46 | 535 SH | SHARED | | 535 | |
| D | KYOCERA CORP | ADR | | 50155620 | 43 | 500 SH | SHARED | 01 | | 500 |
| D | LAN AIRLINES S A | SPONSORED ADR | | 50172310 | 704 | 52518 SH | SHARED | 01 | 52518 | |
| D | LAN AIRLINES S A | SPONSORED ADR | | 50172310 | 9119 | 680085 SH | SHARED | 01 | 680085 | |
| D | LAN AIRLINES S A | SPONSORED ADR | | 50172310 | 2011 | 150000 SH | SHARED | 04 | 150000 | |
| D | LAN AIRLINES S A | SPONSORED ADR | | 50172310 | 2408 | 179600 SH | SHARED | 10 | 179600 | |
| D | LCA-VISION INC | COM PAR $.001 | | 50180330 | 102 | 5154 SH | SHARED | | 5154 | |
| D | LCA-VISION INC | COM PAR $.001 | | 50180330 | 59 | 3000 SH | SHARED | 01 | 3000 | |
| D | LCA-VISION INC | COM PAR $.001 | | 50180330 | 11 | 600 SH | SHARED | 10 | 600 | |
| D | LCC INTERNATIONAL INC | CL A | | 50181010 | 1 | 568 SH | SHARED | | 568 | |
| D | LDK SOLAR CO LTD | SPONSORED ADR | | 50183L10 | 3767 | 80148 SH | SHARED | | 80148 | |
| D | LGL GROUP INC | COM | | 50186A10 | 0 | 43 SH | SHARED | | 43 | |
| D | LG PHILIP LCD CO LTD | SPONS ADR REP | | 50186V10 | 1436 | 55298 SH | SHARED | | 55298 | |
| D | LG PHILIP LCD CO LTD | SPONS ADR REP | | 50186V10 | 5172 | 199100 SH | SHARED | 10 | 199100 | |
| D | LHC GROUP INC | COM | | 50187A10 | 53 | 2131 SH | SHARED | | 2131 | |
| D | LKQ CORP | COM | | 50188920 | 349 | 16615 SH | SHARED | 21 | | 1927 |
| D | LKQ CORP | COM | | 50188920 | 349 | 16615 SH | SHARED | | 16615 | |
| D | LSB FINL CORP | COM | | 50192510 | 16 | 800 SH | SHARED | 02 | 800 | |
| D | LMI AEROSPACE INC | COM | | 50192510 | 0 | 35 SH | SHARED | | 35 | |
| D | LMI AEROSPACE INC | COM | | 50207910 | 311 | 11749 SH | SHARED | | 11749 | |
| D | LMI AEROSPACE INC | COM | | 50207910 | 29 | 1123 SH | SHARED | 02 | 1123 | |
| D | LMP CAP & INCOME FD INC | COM | | 50208A10 | 1316 | 72931 SH | SHARED | | 72931 | |
| D | LMP REAL ESTATE INCOME FD IN | COM | | 50208C10 | 1420 | 97864 SH | SHARED | | 97864 | |
| D | LNB BANCORP INC | COM | | 50210010 | 2 | 188 SH | SHARED | | 188 | |
| D | L-1 IDENTITY SOLUTIONS INC | COM | | 50212A10 | 759 | 42306 SH | SHARED | | 42306 | |
| D | L-1 IDENTITY SOLUTIONS INC | COM | | 50212A10 | 314 | 17544 SH | SHARED | 10 | 17544 | |
| D | LSB CORP | COM | | 50215P10 | 2 | 168 SH | SHARED | | 168 | |
| D | LSI INDS INC | COM | | 50216C10 | 4227 | 232273 SH | SHARED | | 232273 | |
| D | LSI INDS INC | COM | | 50216C10 | 27 | 1500 SH | SHARED | 01 | 1500 | |
| D | LSI INDS INC | COM | | 50216C10 | 935 | 51400 SH | SHARED | 10 | 51400 | |
| D | LSB INDS INC | COM | | 50216C10 | 279 | 9892 SH | SHARED | | 9892 | |
| D | LSI CORPORATION | NOTE 4.000% 5/1 | 50216IAJ | | 6720 | 7000000 PRN | SHARED | | 7000000 | |
| D | LSI CORPORATION | COM | | 50216110 | 15516 | 2922209 SH | SHARED | | 2922209 | |
| D | LSI CORPORATION | COM | | 50216110 | 388 | 73220 SH | SHARED | 01 | 72692 | 528 |
| D | LSI CORPORATION | COM | | 50216110 | 718 | 135225 SH | SHARED | 02 | 135225 | |
| D | LSI CORPORATION | COM | | 50216110 | 34 | 6500 SH | SHARED | 06 | | 6500 |
| D | LSI CORPORATION | COM | | 50216110 | 1524 | 287168 SH | SHARED | 10 | 287168 | |
| D | LSI CORPORATION | COM | | 50216110 | 1 | 346 SH | SHARED | 14 | | 346 |
| D | LSI CORPORATION | COM | | 50216110 | 0 | 58 SH | SHARED | 19 | | 58 |
| D | LTC PPTYS INC | COM | | 50217510 | 72 | 2900 SH | SHARED | 02 | 2900 | |
| D | LTC PPTYS INC | COM | | 50217510 | 1663 | 66395 SH | SHARED | | 66395 | |
| D | LTC PPTYS INC | COM | | 50217510 | 59222 | 2364175 SH | SHARED | 11 | 1017076 | 1347099 |
| D | LTX CORP | COM | | 50239210 | 1043 | 328262 SH | SHARED | | 328262 | |
| D | L-3 COMMUNICATIONS CORP | DEBT 3.000% 8/0 | 50241AM | | 181 | 150000 PRN | SHARED | | 150000 | |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 181 | 150000 PRN | SHARED | | | |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 468 | 4425 SH | SHARED | | 4425 | |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 19877 | 187626 SH | SHARED | | 185626 | 2000 |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 6988 | 65966 SH | SHARED | 01 | 57966 | 8000 |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 1053 | 9949 SH | SHR/OTHR | 01 | | 9949 |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 28361 | 267714 SH | SHARED | 02 | 267714 | |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 1483 | 14000 SH | SHARED | 04 | 14000 | |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 5 | 50 SH | SHARED | 05 | 50 | |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 4145 | 39130 SH | SHARED | 06 | | 39130 |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 11463 | 108205 SH | SHARED | 10 | 104430 | 3775 |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 95 | 900 SH | SHARED | 14 | | 900 |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 3694 | 34873 SH | SHARED | 16 | 34873 | |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 1889 | 17840 SH | SHARED | 20 | 15280 | 2560 |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 153 | 1450 SH | SHR/OTHR | 20 | | 1450 |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 119 | 1125 SH | SHARED | 21 | 1125 | |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 693 | 6542 SH | SHARED | 22 | 3386 | 3156 |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 26 | 249 SH | SHR/OTHR | 22 | | 249 |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 1157 | 10925 SH | SHARED | 23 | 10570 | 355 |
| D | L-3 COMMUNICATIONS HLDGS INC | COM | | 50242410 | 145 | 1370 SH | SHR/OTHR | 23 | | 1370 |
| D | LA BARGE INC | COM | | 50247010 | 17 | 1243 SH | SHARED | | 1243 | |
| D | LA JOLLA PHARMACEUTICAL CO | COM NEW | | 50345910 | 2 | 607 SH | SHARED | | 607 | |
| D | LA Z BOY INC | COM | | 50533610 | 996 | 125605 SH | SHARED | | 125605 | |
| D | LA Z BOY INC | COM | | 50533610 | 17 | 2175 SH | SHARED | 02 | 2175 | |
| D | LA Z BOY INC | COM | | 50533610 | 116 | 14700 SH | SHARED | 10 | 14700 | |
| D | LABORATORY CORP AMER HLDGS | NOTE 9/1 | 50540RAG | | 176 | 172000 PRN | SHARED | 02 | 172000 | |
| D | LABORATORY CORP AMER HLDGS | COM NEW | | 50540R40 | 498 | 6595 SH | SHARED | | 6595 | |
| D | LABORATORY CORP AMER HLDGS | COM NEW | | 50540R40 | 16482 | 218221 SH | SHARED | | 218221 | |
| D | LABORATORY CORP AMER HLDGS | COM NEW | | 50540R40 | 12522 | 165801 SH | SHARED | 01 | 105041 | 60760 |
| D | LABORATORY CORP AMER HLDGS | COM NEW | | 50540R40 | 5153 | 68234 SH | SHR/OTHR | 01 | | 68234 |
| D | LABORATORY CORP AMER HLDGS | COM NEW | | 50540R40 | 153 | 2034 SH | SHARED | 02 | 2034 | |
| D | LABORATORY CORP AMER HLDGS | COM NEW | | 50540R40 | 208991 | 2767000 SH | SHARED | 04 | 2767000 | |

```
D LABORATORY CORP AMER HLDGS   COM NEW              50540R40    7204    95380 SH    SHARED     06            95380
D LABORATORY CORP AMER HLDGS   COM NEW              50540R40   42658   564793 SH    SHARED     10   541913    22880
D LABORATORY CORP AMER HLDGS   COM NEW              50540R40    2434    32230 SH    SHARED     14    31500      730
D LABORATORY CORP AMER HLDGS   COM NEW              50540R40    3776    50000 SH    SHARED     15            50000
D LABORATORY CORP AMER HLDGS   COM NEW              50540R40      58      775 SH    SHARED     19              775
D LABORATORY CORP AMER HLDGS   COM NEW              50540R40    4319    57195 SH    SHARED     20    30255    26940
D LABORATORY CORP AMER HLDGS   COM NEW              50540R40     973    12895 SH    SHR/OTHR   20            12895
D LABORATORY CORP AMER HLDGS   COM NEW              50540R40     121     1615 SH    SHARED     21     1615
D LABORATORY CORP AMER HLDGS   COM NEW              50540R40      33      450 SH    SHR/OTHR   21              450
D LABORATORY CORP AMER HLDGS   COM NEW              50540R40    1028    13611 SH    SHARED     22    10976     2635
D LABORATORY CORP AMER HLDGS   COM NEW              50540R40     160     2121 SH    SHR/OTHR   22             2121
D LABORATORY CORP AMER HLDGS   COM NEW              50540R40    4145    54883 SH    SHARED     23    45653     9230
D LABORATORY CORP AMER HLDGS   COM NEW              50540R40    2073    27455 SH    SHR/OTHR   23            27455
D LABORATORY CORP AMER HLDGS   COM NEW              50540R40      52      700 SH    SHARED     24      700
D LABRANCHE & CO INC           COM                  50544710      31     6208 SH    SHARED                  6208
D LABRANCHE & CO INC           COM                  50544710      50    10000 SH    SHR/OTHR   01           10000
D LABRANCHE & CO INC           COM                  50544710      76    15200 SH    SHARED     01    15200
D LACLEDE GROUP INC            COM                  50559710       3      100 SH    SHARED     01      100
D LACLEDE GROUP INC            COM                  50559710     350    10229 SH    SHARED     01    10229
D LACLEDE GROUP INC            COM                  50559710     582    17000 SH    SHARED     10    17000
D LACLEDE GROUP INC            COM                  50559710      34     1000 SH    SHR/OTHR   23             1000
D LACROSSE FOOTWEAR INC        COM                  50568810       2      125 SH    SHARED                   125
D LADENBURG THALMAN FIN SVCS I COM                  50575Q10    1040   490993 SH    SHARED                490993
D LADISH INC                   COM NEW              50575420      69     1604 SH    SHARED                  1604
D LADISH INC                   COM NEW              50575420     228     5300 SH    SHARED     10     5300
D LAKE SHORE BANCORP INC       COM                  51070010       5      672 SH    SHARED                   672
D LAKELAND BANCORP INC         COM                  51163710       7      656 SH    SHARED                   656
D LAKELAND BANCORP INC         COM                  51163710       5      459 SH    SHARED     02      459
D LAKELAND INDS INC            COM                  51179510       1      110 SH    SHARED                   110
D LAKES ENTMNT INC             COM                  51206P10      69    10022 SH    SHARED                 10022
D LAKES ENTMNT INC             COM                  51206P10      20     3000 SH    SHARED     10     3000
D LAM RESEARCH CORP            COM                  51280710    6433   148821 SH    SHARED                148821
D LAM RESEARCH CORP            COM                  51280710    3039    70305 SH    SHARED     01    28805    41500
D LAM RESEARCH CORP            COM                  51280710     345     8000 SH    SHARED     02     8000
D LAM RESEARCH CORP            COM                  51280710      75     1750 SH    SHARED     06             1750
D LAM RESEARCH CORP            COM                  51280710   20491   474000 SH    SHARED     10   474000
D LAM RESEARCH CORP            COM                  51280710    1187    27462 SH    SHARED     14            27462
D LAMAR ADVERTISING CO         NOTE    2.875%12/3   512815AH    3372  2905000 PRN   PRN                 2905000
D LAMAR ADVERTISING CO         NOTE    2.875%12/3   512815AH     160   138000 PRN   SHARED     02   138000
D LAMAR ADVERTISING CO         CL A                 51281510    1835    38178 SH    SHARED                 38178
D LAMAR ADVERTISING CO         CL A                 51281510    1306    27175 SH    SHARED     01     2475    24700
D LAMAR ADVERTISING CO         CL A                 51281510    1523    31702 SH    SHARED     02    31702
D LAMAR ADVERTISING CO         CL A                 51281510      19      410 SH    SHARED     06              410
D LAMAR ADVERTISING CO         CL A                 51281510    1975    41092 SH    SHARED     10    41092
D LANCASTER COLONY CORP        COM                  51384710     153     3866 SH    SHARED                  3866
D LANCASTER COLONY CORP        COM                  51384710     277     7000 SH    SHARED     01             7000
D LANCASTER COLONY CORP        COM                  51384710      40     1019 SH    SHARED     02     1019
D LANCE INC                    COM                  51460610       9      460 SH    SHARED                   460
D LANCE INC                    COM                  51460610     132     6500 SH    SHARED     10     6500
D LANDAUER INC                 COM                  51476610      25      490 SH    SHARED                   490
D LANDAUER INC                 COM                  51476610     466     9002 SH    SHARED     01     9002
D LANDAUER INC                 COM                  51476610     197     3800 SH    SHARED     10     3800
D LANDEC CORP                  COM                  51476610     100     7532 SH    SHARED                  7532
D LANDEC CORP                  COM                  51476610       2      204 SH    SHARED     02      204
D LANDAMERICA FINL GROUP INC   DBCV    3.125%11/1   514936AB     455   500000 PRN   PRN                  500000
D LANDAMERICA FINL GROUP INC   DBCV    3.125%11/1   514936AB    1060  1165000 PRN   SHARED     02  1165000
D LANDAMERICA FINL GROUP INC   COM                  51493610    4638   138680 SH    SHARED                138680
D LANDAMERICA FINL GROUP INC   COM                  51493610     134     4020 SH    SHARED     01     4020
D LANDAMERICA FINL GROUP INC   COM                  51493610     259     7750 SH    SHARED     02     7750
D LANDAMERICA FINL GROUP INC   COM                  51493610     508    15200 SH    SHARED     10    15200
D LANDMARK BANCORP INC         COM                  51504L10       1       63 SH    SHARED                    63
D LANDRYS RESTAURANTS INC      COM                  51508L10   35408  1797400 SH    SHARED                1797400
D LANDRYS RESTAURANTS INC      COM                  51508L10      35     1800 SH    SHARED     01     1800
D LANDRYS RESTAURANTS INC      COM                  51508L10      39     2000 SH    SHARED     10     2000
D LANDSTAR SYS INC             COM                  51509810     323     7680 SH    SHARED                  7680
D LANDSTAR SYS INC             COM                  51509810      29      700 SH    SHARED     02      700
D LANDSTAR SYS INC             COM                  51509810     733    17400 SH    SHARED     10    17400
D LANGER INC                   COM                  51570710       0      233 SH    SHARED                   233
D LANNET INC                   COM                  51601210       6     2187 SH    SHARED                  2187
D LANNET INC                   COM                  51601210       1      425 SH    SHARED     02      425
D LANTRONIX INC                COM                  51654810       0     1007 SH    SHARED                  1007
D LAPORTE BANCORP INC          COM                  51665010       0       34 SH    SHARED                    34
D LAS VEGAS SANDS CORP         COM                  51783410    2225    21597 SH    SHARED                 16086     5511
D LAS VEGAS SANDS CORP         COM                  51783410   64300   623972 SH    SHARED                623972
D LAS VEGAS SANDS CORP         COM                  51783410   12010   116553 SH    SHARED     01    76223    40330
D LAS VEGAS SANDS CORP         COM                  51783410    3418    33170 SH    SHR/OTHR   01            33170
D LAS VEGAS SANDS CORP         COM                  51783410   72099   699652 SH    SHARED     02   699652
D LAS VEGAS SANDS CORP         COM                  51783410     566     5500 SH    SHARED     04             5500
D LAS VEGAS SANDS CORP         COM                  51783410     103     1000 SH    SHARED     06             1000
D LAS VEGAS SANDS CORP         COM                  51783410    1133    10995 SH    SHARED     10     9900     1095
D LAS VEGAS SANDS CORP         COM                  51783410    4840    46972 SH    SHARED     19            46972
D LAS VEGAS SANDS CORP         COM                  51783410    1938    18810 SH    SHARED     20    13475     5335
D LAS VEGAS SANDS CORP         COM                  51783410     424     4120 SH    SHR/OTHR   20             4120
D LAS VEGAS SANDS CORP         COM                  51783410     537     5217 SH    SHARED     21     2709     2508
D LAS VEGAS SANDS CORP         COM                  51783410     740     7181 SH    SHR/OTHR   22     6281      900
D LAS VEGAS SANDS CORP         COM                  51783410     125     1216 SH    SHR/OTHR   22             1216
D LAS VEGAS SANDS CORP         COM                  51783410    2755    26744 SH    SHARED     23    25739     1005
D LAS VEGAS SANDS CORP         COM                  51783410    1757    17055 SH    SHR/OTHR   23            17055
D LASALLE HOTEL PPTYS          COM SH BEN INT       51794210     193     6065 SH    SHARED                  6065
D LASALLE HOTEL PPTYS          COM SH BEN INT       51794210     210     6595 SH    SHARED     01     6595
D LASALLE HOTEL PPTYS          COM SH BEN INT       51794210      58     1836 SH    SHARED     02     1836
D LASALLE HOTEL PPTYS          COM SH BEN INT       51794210    6922   217016 SH    SHARED     10   217016
D LASALLE HOTEL PPTYS          COM SH BEN INT       51794210   76896  2410538 SH    SHARED     11  1270440  1140098
D LASERCARD CORP               COM                  51807010      14     1380 SH    SHARED                  1380
D LATIN AMER EQUITY FD INC NEW COM                  51827Q10     278     5880 SH    SHARED                  5880
D LATTICE SEMICONDUCTOR CORP   COM                  51841510     150    46378 SH    SHARED                 46378
D LATTICE SEMICONDUCTOR CORP   COM                  51841510     144    44400 SH    SHARED     10    44400
D LAUDER ESTEE COS INC         CL A                 51843910    8421   193104 SH    SHARED                193104
D LAUDER ESTEE COS INC         CL A                 51843910     650    14914 SH    SHARED     01    11989     2925
D LAUDER ESTEE COS INC         CL A                 51843910      18      415 SH    SHR/OTHR   01              415
D LAUDER ESTEE COS INC         CL A                 51843910    2245    51494 SH    SHARED     02    51494
D LAUDER ESTEE COS INC         CL A                 51843910      44     1030 SH    SHARED     06             1030
D LAUDER ESTEE COS INC         CL A                 51843910    2516    57700 SH    SHARED     10    57700
D LAUDER ESTEE COS INC         CL A                 51843910      65     1500 SH    SHARED     14             1500
D LAUDER ESTEE COS INC         CL A                 51843910    5952   136500 SH    SHARED     15           136500
D LAUDER ESTEE COS INC         CL A                 51843910     358     8225 SH    SHARED     20             8225
D LAUDER ESTEE COS INC         CL A                 51843910     180     4150 SH    SHR/OTHR   20             4150
D LAUDER ESTEE COS INC         CL A                 51843910     492    11300 SH    SHARED     23     1600     9700
D LAUDER ESTEE COS INC         CL A                 51843910      76     1750 SH    SHR/OTHR   23             1750
D LAW ENFORCEMENT ASSOCS CORP  COM                  51848510       0      288 SH    SHARED                   288
D LAWSON PRODS INC             COM                  52077610     428    11307 SH    SHARED                 11307
D LAWSON PRODS INC             COM                  52077610      12      325 SH    SHARED     02      325
D LAWSON SOFTWARE INC NEW      NOTE    2.500% 4/1   52078PAA    3867  3500000 PRN   SHARED                3500000
D LAWSON SOFTWARE INC NEW      COM                  52078P10      36     3548 SH    SHARED                  3548
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | LAWSON SOFTWARE INC NEW | COM | | 52078P10 | 450 | 44000 SH | SHARED | 10 | 44000 | |
| D | LAYNE CHRISTENSEN CO | COM | | 52105010 | 294 | 5992 SH | SHARED | | 5992 | |
| D | LAYNE CHRISTENSEN CO | COM | | 52105010 | 378 | 7700 SH | SHARED | 01 | 7700 | |
| D | LAYNE CHRISTENSEN CO | COM | | 52105010 | 11361 | 230883 SH | SHARED | 04 | 230883 | |
| D | LAYNE CHRISTENSEN CO | COM | | 52105010 | 12861 | 261364 SH | SHARED | 05 | 261364 | |
| D | LAYNE CHRISTENSEN CO | COM | | 52105010 | 738 | 15000 SH | SHARED | 10 | 15000 | |
| D | LEADIS TECHNOLOGY INC | COM | | 52171N10 | 1 | 696 SH | SHARED | | 696 | |
| D | LEAPFROG ENTERPRISES INC | CL A | | 52186N10 | 10 | 1500 SH | SHARED | 01 | | 1500 |
| D | LEAPFROG ENTERPRISES INC | CL A | | 52186N10 | 68 | 10250 SH | SHARED | 02 | 10250 | |
| D | LEAP WIRELESS INTL INC | COM NEW | | 52186330 | 2740 | 58753 SH | SHARED | | 58753 | |
| D | LEAP WIRELESS INTL INC | COM NEW | | 52186330 | 8222 | 176303 SH | SHARED | 10 | 176303 | |
| D | LEAR CORP | COM | | 52186510 | 2741 | 99108 SH | SHARED | | 99108 | |
| D | LEAR CORP | COM | | 52186510 | 1044 | 37750 SH | SHARED | 01 | 10150 | 27600 |
| D | LEAR CORP | COM | | 52186510 | 2879 | 104103 SH | SHARED | 02 | 104103 | |
| D | LEAR CORP | COM | | 52186510 | 14142 | 511300 SH | SHARED | 10 | 511300 | |
| D | LEAR CORP | COM | | 52186510 | 233 | 8456 SH | SHARED | 14 | | 8456 |
| D | LEARNING TREE INTL INC | COM | | 52201510 | 5 | 246 SH | SHARED | | 246 | |
| D | LEARNING TREE INTL INC | COM | | 52201510 | 27 | 1200 SH | SHARED | 02 | 1200 | |
| D | LECG CORP | COM | | 52323410 | 218 | 14521 SH | SHARED | | 14521 | |
| D | LECROY CORP | NOTE | 4.000%10/1 | 52324WAB | 4261 | 4500000 PRN | SHARED | | 4500000 | |
| D | LECROY CORP | COM | | 52324W10 | 431 | 44709 SH | SHARED | | 44709 | |
| D | LECROY CORP | COM | | 52324W10 | 0 | 45 SH | SHARED | 02 | 45 | |
| D | LEE ENTERPRISES INC | COM | | 52376810 | 278 | 18983 SH | SHARED | | 18983 | |
| D | LEE ENTERPRISES INC | COM | | 52376810 | 257 | 17600 SH | SHARED | 01 | | 17600 |
| D | LEE ENTERPRISES INC | COM | | 52376810 | 161 | 11022 SH | SHARED | 02 | 11022 | |
| D | LEE ENTERPRISES INC | COM | | 52376810 | 230 | 15700 SH | SHARED | 10 | 15700 | |
| D | LEESPORT FINANCIAL CORP | COM | | 52447710 | 2 | 150 SH | SHARED | | 150 | |
| D | LEGACY BANCORP INC | CL A | | 52463010 | 670 | 50583 SH | SHARED | | 50583 | |
| D | LEGGETT & PLATT INC | COM | | 52466010 | 3607 | 206830 SH | SHARED | | 206830 | |
| D | LEGGETT & PLATT INC | COM | | 52466010 | 308 | 17700 SH | SHARED | 01 | 17700 | |
| D | LEGGETT & PLATT INC | COM | | 52466010 | 1572 | 90180 SH | SHARED | 02 | 90180 | |
| D | LEGGETT & PLATT INC | COM | | 52466010 | 3 | 200 SH | SHARED | 05 | 200 | |
| D | LEGGETT & PLATT INC | COM | | 52466010 | 16 | 930 SH | SHARED | 06 | | 930 |
| D | LEGGETT & PLATT INC | COM | | 52466010 | 11996 | 687857 SH | SHARED | 10 | 685957 | 1900 |
| D | LEGGETT & PLATT INC | COM | | 52466010 | 211 | 12100 SH | SHARED | 14 | 12100 | |
| D | LEGGETT & PLATT INC | COM | | 52466010 | 4 | 275 SH | SHARED | 21 | | 275 |
| D | LEGACY RESERVES LP | UNIT LP INT | | 52470730 | 70 | 3423 SH | SHARED | | 3423 | |
| D | LEGG MASON INC | COM | | 52490110 | 1 | 26 SH | SHARED | | 26 | |
| D | LEGG MASON INC | COM | | 52490110 | 12623 | 172574 SH | SHARED | | 172574 | |
| D | LEGG MASON INC | COM | | 52490110 | 1141 | 15606 SH | SHARED | 01 | 15606 | |
| D | LEGG MASON INC | COM | | 52490110 | 632 | 8652 SH | SHARED | 02 | 8652 | |
| D | LEGG MASON INC | COM | | 52490110 | 5 | 70 SH | SHARED | 05 | 70 | |
| D | LEGG MASON INC | COM | | 52490110 | 84 | 1160 SH | SHARED | 06 | | 1160 |
| D | LEGG MASON INC | COM | | 52490110 | 4052 | 55400 SH | SHARED | 10 | 55400 | |
| D | LEGG MASON INC | COM | | 52490110 | 1097 | 15000 SH | SHARED | 15 | | 15000 |
| D | LEGG MASON INC | COM | | 52490110 | 85 | 1164 SH | SHARED | 21 | 1164 | |
| D | LEGG MASON INC | COM | | 52490110 | 18 | 250 SH | SHARED | 23 | 250 | |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 276641 | 4227412 SH | SHARED | | 4227412 | |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 9309 | 142262 SH | SHARED | | 134282 | 7980 |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 157 | 2400 SH | SHR/OTHR | 01 | | 2400 |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 47333 | 723305 SH | SHARED | 02 | 723305 | |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 193 | 2963 SH | SHARED | 04 | | 2963 |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 1636 | 25000 SH | SHARED | 04 | 25000 | |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 13 | 200 SH | SHARED | 05 | 200 | |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 23076 | 352635 SH | SHARED | | | 352635 |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 96720 | 1478000 SH | SHARED | 10 | 1398200 | 79800 |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 2070 | 31635 SH | SHARED | 14 | | 31635 |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 4067 | 62157 SH | SHARED | 16 | 62157 | |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 184 | 2813 SH | SHARED | 20 | 2598 | 215 |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 222 | 3400 SH | SHR/OTHR | 21 | | 3400 |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 339 | 5192 SH | SHARED | 21 | 1410 | 3782 |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 124 | 1900 SH | SHARED | 22 | | 1900 |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 2266 | 34640 SH | SHARED | 23 | 33200 | 1440 |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 229 | 3500 SH | SHR/OTHR | 23 | | 3500 |
| D | LEHMAN BROS HLDGS INC | COM | | 52490810 | 81 | 1252 SH | SHARED | 24 | 1252 | |
| D | LEHMAN BR FIRST TR INCM OPP | COM | | 52517810 | 301 | 25500 SH | SHARED | | 25500 | |
| D | LEMAITRE VASCULAR INC | COM | | 52555820 | 1 | 246 SH | SHARED | | 246 | |
| D | LENNAR CORP | CL A | | 52605710 | 0 | 24 SH | SHARED | | 24 | |
| D | LENNAR CORP | CL A | | 52605710 | 10316 | 576658 SH | SHARED | | 576658 | |
| D | LENNAR CORP | CL A | | 52605710 | 223 | 12500 SH | SHARED | 01 | 12500 | |
| D | LENNAR CORP | CL A | | 52605710 | 101 | 5698 SH | SHARED | 02 | 5698 | |
| D | LENNAR CORP | CL A | | 52605710 | 14 | 800 SH | SHARED | 06 | | 800 |
| D | LENNAR CORP | CL A | | 52605710 | 1084 | 60600 SH | SHARED | 10 | 60600 | |
| D | LENNAR CORP | CL B | | 52605730 | 2177 | 131200 SH | SHARED | | 131200 | |
| D | LENNAR CORP | CL B | | 52605730 | 1 | 120 SH | SHARED | 01 | 120 | |
| D | LENNOX INTL INC | COM | | 52610710 | 2302 | 55580 SH | SHARED | | 55580 | |
| D | LENNOX INTL INC | COM | | 52610710 | 190 | 4600 SH | SHARED | 01 | 4600 | |
| D | LENNOX INTL INC | COM | | 52610710 | 287 | 6950 SH | SHARED | 02 | 6950 | |
| D | LENNOX INTL INC | COM | | 52610710 | 712 | 17200 SH | SHARED | 10 | 17200 | |
| D | LENNOX INTL INC | COM | | 52610710 | 63 | 1544 SH | SHARED | 21 | | 1544 |
| D | LENOX GROUP INC | COM | | 52626210 | 609 | 230824 SH | SHARED | | 230824 | |
| D | LENOX GROUP INC | COM | | 52626210 | 6 | 2575 SH | SHARED | 02 | 2575 | |
| D | LEUCADIA NATL CORP | NOTE | 3.750% 4/1 | 527288AX | 19069 | 8800000 PRN | SHARED | | 8800000 | |
| D | LEUCADIA NATL CORP | NOTE | 3.750% 4/1 | 527288AX | 541 | 250000 PRN | SHARED | 23 | | 250000 |
| D | LEUCADIA NATL CORP | COM | | 52728810 | 7888 | 167480 SH | SHARED | | 167480 | |
| D | LEUCADIA NATL CORP | COM | | 52728810 | 811 | 17220 SH | SHARED | 01 | 17220 | |
| D | LEUCADIA NATL CORP | COM | | 52728810 | 168 | 3573 SH | SHARED | 02 | 3573 | |
| D | LEUCADIA NATL CORP | COM | | 52728810 | 65 | 1400 SH | SHARED | 06 | | 1400 |
| D | LEUCADIA NATL CORP | COM | | 52728810 | 17328 | 367912 SH | SHARED | 10 | 367912 | |
| D | LEUCADIA NATL CORP | COM | | 52728810 | 349 | 7410 SH | SHARED | 21 | 7136 | 274 |
| D | LEUCADIA NATL CORP | COM | | 52728810 | 367 | 7800 SH | SHARED | 23 | 7800 | |
| D | LEVEL 3 COMMUNICATIONS INC | NOTE | 6.000% 3/1 | 52729NAS | 890 | 1000000 PRN | SHARED | | 1000000 | |
| D | LEVEL 3 COMMUNICATIONS INC | NOTE | 5.250%12/1 | 52729NBF | 239 | 250000 PRN | SHARED | | 250000 | |
| D | LEVEL 3 COMMUNICATIONS INC | NOTE | 3.500% 6/1 | 52729NBF | 3 | 4000 PRN | SHARED | 10 | 4000 | |
| D | LEVEL 3 COMMUNICATIONS INC | COM | | 52729N10 | 10378 | 3414079 SH | SHARED | | 1043779 | 2370300 |
| D | LEVEL 3 COMMUNICATIONS INC | COM | | 52729N10 | 428 | 141016 SH | SHARED | 01 | 141016 | |
| D | LEVEL 3 COMMUNICATIONS INC | COM | | 52729N10 | 1074 | 353300 SH | SHARED | 02 | 353300 | |
| D | LEVEL 3 COMMUNICATIONS INC | COM | | 52729N10 | 1368 | 450000 SH | SHARED | 04 | 450000 | |
| D | LEVEL 3 COMMUNICATIONS INC | COM | | 52729N10 | 24 | 8000 SH | SHARED | 06 | | 8000 |
| D | LEVEL 3 COMMUNICATIONS INC | COM | | 52729N10 | 16594 | 5458613 SH | SHARED | 10 | 4112713 | 1345900 |
| D | LEVEL 3 COMMUNICATIONS INC | COM | | 52729N10 | 114 | 37600 SH | SHARED | 15 | | 37600 |
| D | LEVEL 3 COMMUNICATIONS INC | COM | | 52729N10 | 11 | 3700 SH | SHARED | 20 | | 3700 |
| D | LEVEL 3 COMMUNICATIONS INC | COM | | 52729N10 | 20 | 6800 SH | SHARED | 23 | 6800 | |
| D | LEVEL 3 COMMUNICATIONS INC | COM | | 52729N10 | 213 | 70200 SH | SHARED | 24 | 70200 | |
| D | LEVITT CORP | CL A | | 52742P10 | 1163 | 528875 SH | SHARED | | 528875 | |
| D | LEXICON PHARMACEUTICALS INC | CL A | | 52887210 | 7 | 2414 SH | SHARED | | 2414 | |
| D | LEXICON PHARMACEUTICALS INC | CL A | | 52887210 | 51 | 16900 SH | SHARED | 02 | 16900 | |
| D | LEXINGTON REALTY TRUST | COM | | 52904310 | 4936 | 339500 SH | SHARED | | 339500 | |
| D | LEXINGTON REALTY TRUST | COM | | 52904310 | 158 | 10900 SH | SHARED | 01 | 4300 | 6600 |
| D | LEXINGTON REALTY TRUST | COM | | 52904310 | 181 | 12500 SH | SHARED | 02 | 12500 | |
| D | LEXINGTON REALTY TRUST | COM | | 52904310 | 1599 | 110000 SH | SHARED | 10 | 110000 | |
| D | LEXINGTON REALTY TRUST | PFD CONV SER C | | 52904330 | 12064 | 319330 SH | SHARED | | 319330 | |
| D | LEXMARK INTL NEW | CL A | | 52977110 | 13413 | 384780 SH | SHARED | | 284080 | 100700 |
| D | LEXMARK INTL NEW | CL A | | 52977110 | 1254 | 36000 SH | SHARED | 01 | 36000 | |

```
D LEXMARK INTL NEW              CL A        52977110    1432    41089 SH    SHARED    02        41089
D LEXMARK INTL NEW              CL A        52977110      14      408 SH    SHARED    04                      408
D LEXMARK INTL NEW              CL A        52977110       3      100 SH    SHARED    05        100
D LEXMARK INTL NEW              CL A        52977110      52     1500 SH    SHARED    06       1500
D LEXMARK INTL NEW              CL A        52977110   44499  1276525 SH    SHARED    10    1195725            80800
D LEXMARK INTL NEW              CL A        52977110     114     3298 SH    SHARED    14       3298
D LIBBEY INC                    COM         52989810      16     1032 SH    SHARED              1032
D LIBBEY INC                    COM         52989810      17     1125 SH    SHARED    01       1125
D LIBBEY INC                    COM         52989810      68     4300 SH    SHARED    10       4300
D LIBERTY ALL STAR EQUITY FD    SH BEN INT  53015810     258    36596 SH    SHARED             36596
D LIBERTY BANCORP INC           COM         53017Q10       1      114 SH    SHARED              114
D LIBERTY BELL BK CHERRY HILL   COM         53023310       0       69 SH    SHARED               69
D LIBERTY GLOBAL INC            COM SER A    53055510    2124    54204 SH    SHARED             27404          26800
D LIBERTY GLOBAL INC            COM SER A    53055510     966    24671 SH    SHARED    01      24585            86
D LIBERTY GLOBAL INC            COM SER A    53055510     322     8238 SH    SHARED    04       8238
D LIBERTY GLOBAL INC            COM SER A    53055510       4      118 SH    SHARED    05        118
D LIBERTY GLOBAL INC            COM SER A    53055510     101     2591 SH    SHARED    06                     2591
D LIBERTY GLOBAL INC            COM SER A    53055510   14489   369727 SH    SHARED    10     358527          11200
D LIBERTY GLOBAL INC            COM SER A    53055510      13      338 SH    SHR/OTHR  10        338
D LIBERTY GLOBAL INC            COM SER A    53055510      88     2250 SH    SHARED    20       2250
D LIBERTY GLOBAL INC            COM SER A    53055510      35      900 SH    SHARED    23        900
D LIBERTY GLOBAL INC            COM SER C    53055530    2003    54758 SH    SHARED             54758
D LIBERTY GLOBAL INC            COM SER C    53055530     152     4155 SH    SHARED    01       4069            86
D LIBERTY GLOBAL INC            COM SER C    53055530       4      118 SH    SHARED    05        118
D LIBERTY GLOBAL INC            COM SER C    53055530      90     2461 SH    SHARED    06                     2461
D LIBERTY GLOBAL INC            COM SER C    53055530     743    20318 SH    SHARED    10      20318
D LIBERTY GLOBAL INC            COM SER C    53055530      12      338 SH    SHR/OTHR  10        338
D LIBERTY GLOBAL INC            COM SER C    53055530    1609    43991 SH    SHARED    14      43991
D LIBERTY GLOBAL INC            COM SER C    53055530      82     2250 SH    SHARED    20       2250
D LIBERTY GLOBAL INC            COM SER C    53055530      32      900 SH    SHARED    23        900
D LIBERTY MEDIA HLDG CORP       INT COM SER A 53071M10   2262   118602 SH    SHARED            118602
D LIBERTY MEDIA HLDG CORP       INT COM SER A 53071M10    321    16855 SH    SHARED    01      16477           378
D LIBERTY MEDIA HLDG CORP       INT COM SER A 53071M10      8      437 SH    SHR/OTHR  01                      437
D LIBERTY MEDIA HLDG CORP       INT COM SER A 53071M10     17      935 SH    SHARED    02        935
D LIBERTY MEDIA HLDG CORP       INT COM SER A 53071M10    381    20000 SH    SHARED    04      20000
D LIBERTY MEDIA HLDG CORP       INT COM SER A 53071M10      5      296 SH    SHARED    05        296
D LIBERTY MEDIA HLDG CORP       INT COM SER A 53071M10    119     6276 SH    SHARED    06                     6276
D LIBERTY MEDIA HLDG CORP       INT COM SER A 53071M10   2141   112233 SH    SHARED    10     112233
D LIBERTY MEDIA HLDG CORP       INT COM SER A 53071M10     32     1693 SH    SHR/OTHR  10       1693
D LIBERTY MEDIA HLDG CORP       INT COM SER A 53071M10    207    10858 SH    SHARED    14      10858
D LIBERTY MEDIA HLDG CORP       INT COM SER A 53071M10    376    19716 SH    SHARED    20      19716
D LIBERTY MEDIA HLDG CORP       INT COM SER A 53071M10    136     7150 SH    SHR/OTHR  20       7150
D LIBERTY MEDIA HLDG CORP       INT COM SER A 53071M10     47     2500 SH    SHARED    23       2500
D LIBERTY MEDIA HLDG CORP       CAP COM SER A 53071M30  58750   504338 SH    SHARED            504338
D LIBERTY MEDIA HLDG CORP       CAP COM SER A 53071M30   1077     9247 SH    SHARED    01       6982          2265
D LIBERTY MEDIA HLDG CORP       CAP COM SER A 53071M30    213     1837 SH    SHR/OTHR  01                     1837
D LIBERTY MEDIA HLDG CORP       CAP COM SER A 53071M30    656     5632 SH    SHARED    02       5632
D LIBERTY MEDIA HLDG CORP       CAP COM SER A 53071M30   4659    40000 SH    SHARED    04      40000
D LIBERTY MEDIA HLDG CORP       CAP COM SER A 53071M30      6       59 SH    SHARED    05         59
D LIBERTY MEDIA HLDG CORP       CAP COM SER A 53071M30    146     1254 SH    SHARED    06                     1254
D LIBERTY MEDIA HLDG CORP       CAP COM SER A 53071M30   3479    29867 SH    SHR/OTHR  10      29867
D LIBERTY MEDIA HLDG CORP       CAP COM SER A 53071M30     39      338 SH    SHR/OTHR  10        338
D LIBERTY MEDIA HLDG CORP       CAP COM SER A 53071M30     75      645 SH    SHARED    14        645
D LIBERTY MEDIA HLDG CORP       CAP COM SER A 53071M30    459     3943 SH    SHARED    20       3943
D LIBERTY MEDIA HLDG CORP       CAP COM SER A 53071M30    163     1400 SH    SHR/OTHR  20       1400
D LIBERTY MEDIA HLDG CORP       CAP COM SER A 53071M30     13      115 SH    SHR/OTHR  21        115
D LIBERTY MEDIA HLDG CORP       CAP COM SER A 53071M30     87      750 SH    SHARED    23        750
D LIBERTY MEDIA CORP NEW        DEB  3.250% 3/1 530715AA    0      500 PRN   SHARED    02        500
D LIBERTY MEDIA CORP NEW        DEB  0.750% 3/3 530718AF 26025 25000000 PRN  SHARED           5000000
D LIBERTY MEDIA CORP NEW        DEB  0.750% 3/3 530718AF   15    15000 PRN   SHARED                          15000
D LIBERTY MEDIA CORP NEW        DEB  0.750% 3/3 530718AF   10    10000 PRN   SHR/OTHR                        10000
D LIBERTY MEDIA CORP NEW        DEB  0.750% 3/3 530718AF  241   232000 PRN   SHARED    02     232000
D LIBERTY MEDIA CORP NEW        DEB  0.750% 3/3 530718AF  140   135000 PRN   SHR/OTHR  23                    135000
D LIBERTY PPTY TR               SH BEN INT  53117210    1963    68165 SH    SHARED             64865          3300
D LIBERTY PPTY TR               SH BEN INT  53117210     923    32050 SH    SHARED    01       1450          30600
D LIBERTY PPTY TR               SH BEN INT  53117210     136     4736 SH    SHARED    02       4736
D LIBERTY PPTY TR               SH BEN INT  53117210    2120    73600 SH    SHARED    10      73600
D LIBERTY PPTY TR               SH BEN INT  53117210   64375  2234500 SH    SHARED    11                  2234500
D LIBERTY PPTY TR               SH BEN INT  53117210     102     3550 SH    SHARED    14       3550
D LIFEWAY FOODS INC             COM         53191410       1      139 SH    SHARED              139
D LIFEWAY FOODS INC             COM         53191410       8      700 SH    SHARED    02        700
D LIFECELL CORP                 COM         53192710     219     5100 SH    SHARED             5100
D LIFECELL CORP                 COM         53192710      92     2150 SH    SHARED    01       2150
D LIFECELL CORP                 COM         53192710     115     2675 SH    SHARED    02       2675
D LIFECELL CORP                 COM         53192710       4      100 SH    SHARED    21                      100
D LIFE PARTNERS HOLDINGS INC    COM         53215T10      12      443 SH    SHARED              443
D LIFE PARTNERS HOLDINGS INC    COM         53215T10     736    26594 SH    SHARED             26250           344
D LIFE PARTNERS HOLDINGS INC    COM         53215T10     900    32500 SH    SHR/OTHR  01                     32500
D LIFE PARTNERS HOLDINGS INC    COM         53215T10      22      800 SH    SHARED    02        800
D LIFE TIME FITNESS INC         COM         53217R20     488     9841 SH    SHARED             9841
D LIFE TIME FITNESS INC         COM         53217R20     511    10300 SH    SHARED                           10300
D LIFE TIME FITNESS INC         COM         53217R20     128     2592 SH    SHARED    02       2592
D LIFE TIME FITNESS INC         COM         53217R20   18153   365400 SH    SHARED    04     365400
D LIFE TIME FITNESS INC         COM         53217R20     111     2250 SH    SHARED    10       2250
D LIFECORE BIOMEDICAL INC       COM         53218T10      18     1304 SH    SHARED             1304
D LIFEPOINT HOSPITALS INC       COM         53219L10    4325   145450 SH    SHARED            145450
D LIFEPOINT HOSPITALS INC       COM         53219L10     762    25651 SH    SHARED    01       2234          23417
D LIFEPOINT HOSPITALS INC       COM         53219L10     436    14693 SH    SHARED    02      14693
D LIFEPOINT HOSPITALS INC       COM         53219L10   23322   784200 SH    SHARED    10     784200
D LIGAND PHARMACEUTICALS INC    CL B        53219K20   20094  4160280 SH    SHARED           4160280
D LIFETIME BRANDS INC           NOTE  4.750% 7/1 53222QAB 860 1000000 PRN   SHARED           1000000
D LIFETIME BRANDS INC           COM         53222Q10     405    31251 SH    SHARED             31251
D LIGHTPATH TECHNOLOGIES INC    CL A NEW    53225780       0      283 SH    SHARED              283
D LIHIR GOLD LTD                SPONSORED ADR 53234910      2      78 SH    SHARED    21                       78
D LILLY ELI & CO                COM         53245710      42      800 SH    SHARED              800
D LILLY ELI & CO                COM         53245710  311650 5837237 SH    SHARED           5836037          1200
D LILLY ELI & CO                COM         53245710    9662   180978 SH    SHARED    01     168683          12295
D LILLY ELI & CO                COM         53245710     640    12000 SH    SHR/OTHR  01                     12000
D LILLY ELI & CO                COM         53245710    2800    52456 SH    SHARED    02      52456
D LILLY ELI & CO                COM         53245710   21877   409770 SH    SHARED    04     409770
D LILLY ELI & CO                COM         53245710      21      400 SH    SHARED    05        400
D LILLY ELI & CO                COM         53245710    1347    25238 SH    SHARED    06                    25238
D LILLY ELI & CO                COM         53245710  196949 3688874 SH    SHARED    10    3585574         103300
D LILLY ELI & CO                COM         53245710    3069    57486 SH    SHARED    14       3500          53986
D LILLY ELI & CO                COM         53245710     646    12113 SH    SHARED    20       1969          10144
D LILLY ELI & CO                COM         53245710     597    11194 SH    SHR/OTHR  20                     11194
D LILLY ELI & CO                COM         53245710    2804    52533 SH    SHARED    21      52533
D LILLY ELI & CO                COM         53245710      66     1250 SH    SHR/OTHR  22                     1250
D LILLY ELI & CO                COM         53245710     383     7190 SH    SHARED    23       7190
D LILLY ELI & CO                COM         53245710    1110    20794 SH    SHARED    23                    20794
D LILLY ELI & CO                COM         53245710      35      660 SH    SHARED    24        660
D LIMELIGHT NETWORKS INC        COM         53261M10    1022   148394 SH    SHARED            148394
D LIMELIGHT NETWORKS INC        COM         53261M10       0      100 SH    SHARED    02        100
D LIMCO PIEDMONT INC            COM         53261T10     166    13441 SH    SHARED             13441
```

| | Issuer | Class | Coupon/Mat | CUSIP | Qty | Position | Disc | Mgr | Sole | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|---|
| D | LIMITED BRANDS INC | COM | | 53271610 | 8321 | 439603 SH | SHARED | | | | 439603 |
| D | LIMITED BRANDS INC | COM | | 53271610 | 819 | 43311 SH | SHARED | 01 | 42461 | | 850 |
| D | LIMITED BRANDS INC | COM | | 53271610 | 4199 | 221842 SH | SHARED | 02 | 221842 | | |
| D | LIMITED BRANDS INC | COM | | 53271610 | 4 | 260 SH | SHARED | 05 | 260 | | |
| D | LIMITED BRANDS INC | COM | | 53271610 | 68 | 3610 SH | SHARED | 06 | | | 3610 |
| D | LIMITED BRANDS INC | COM | | 53271610 | 3372 | 178181 SH | SHARED | 10 | 178181 | | |
| D | LIMITED BRANDS INC | COM | | 53271610 | 30 | 1637 SH | SHARED | 20 | 1040 | | 597 |
| D | LIMITED BRANDS INC | COM | | 53271610 | 61 | 3234 SH | SHR/OTHR | | 3234 | | |
| D | LIMITED BRANDS INC | COM | | 53271610 | 7 | 400 SH | SHR/OTHR | 23 | | | 400 |
| D | LIN TV CORP | CL A | | 53277410 | 14 | 1225 SH | SHARED | 02 | 1225 | | |
| D | LIN TV CORP | CL A | | 53277410 | 484 | 39800 SH | SHARED | 10 | 39800 | | |
| D | LIN TV CORP | CL A | | 53277410 | 91 | 7500 SH | SHARED | 23 | | | 7500 |
| D | LIN TELEVISION CORP | SDEB | 2.500% 5/1 | 532776AL | 5003 | 5095000 PRN | SHARED | | 5095000 | | |
| D | LINCARE HLDGS INC | COM | | 53279110 | 898 | 25545 SH | SHARED | | 25545 | | |
| D | LINCARE HLDGS INC | COM | | 53279110 | 1166 | 33166 SH | SHARED | 01 | 6366 | | 26800 |
| D | LINCARE HLDGS INC | COM | | 53279110 | 365 | 10402 SH | SHARED | 02 | 10402 | | |
| D | LINCARE HLDGS INC | COM | | 53279110 | 16 | 480 SH | SHARED | 06 | | | 480 |
| D | LINCARE HLDGS INC | COM | | 53279110 | 7475 | 212600 SH | SHARED | 10 | 212600 | | |
| D | LINCARE HLDGS INC | COM | | 53279110 | 53 | 1535 SH | SHARED | 14 | | | 1535 |
| D | LINCOLN BANCORP IND | COM | | 53530510 | 1 | 122 SH | SHARED | | 122 | | |
| D | LINCOLN EDL SVCS CORP | COM | | 53353510 | 41 | 2800 SH | SHARED | | 2800 | | |
| D | LINCOLN ELEC HLDGS INC | COM | | 53390010 | 1187 | 16677 SH | SHARED | | 16677 | | |
| D | LINCOLN ELEC HLDGS INC | COM | | 53390010 | 1024 | 14400 SH | SHARED | 01 | 2200 | | 12200 |
| D | LINCOLN ELEC HLDGS INC | COM | | 53390010 | 577 | 8117 SH | SHARED | 02 | 8117 | | |
| D | LINCOLN ELEC HLDGS INC | COM | | 53390010 | 363 | 5100 SH | SHARED | 10 | 5100 | | |
| D | LINCOLN ELEC HLDGS INC | COM | | 53390010 | 70 | 986 SH | SHARED | 21 | | | 986 |
| D | LINCOLN ELEC HLDGS INC | COM | | 53390010 | 213 | 3000 SH | SHARED | 23 | | | 3000 |
| D | LINCOLN NATL CORP IND | COM | | 53418710 | 57382 | 985621 SH | SHARED | | 985621 | | |
| D | LINCOLN NATL CORP IND | COM | | 53418710 | 2653 | 45581 SH | SHARED | 01 | 43508 | | 2073 |
| D | LINCOLN NATL CORP IND | COM | | 53418710 | 58 | 1000 SH | SHR/OTHR | 01 | | | 1000 |
| D | LINCOLN NATL CORP IND | COM | | 53418710 | 652 | 11205 SH | SHARED | 02 | 11205 | | |
| D | LINCOLN NATL CORP IND | COM | | 53418710 | 8 | 140 SH | SHARED | 05 | 140 | | |
| D | LINCOLN NATL CORP IND | COM | | 53418710 | 165 | 2841 SH | SHARED | 06 | | | 2841 |
| D | LINCOLN NATL CORP IND | COM | | 53418710 | 18301 | 314353 SH | SHARED | 10 | 313753 | | 600 |
| D | LINCOLN NATL CORP IND | COM | | 53418710 | 131 | 2252 SH | SHARED | 14 | 2252 | | |
| D | LINCOLN NATL CORP IND | COM | | 53418710 | 1101 | 18925 SH | SHARED | 20 | 1287 | | 17638 |
| D | LINCOLN NATL CORP IND | COM | | 53418710 | 355 | 6100 SH | SHR/OTHR | 20 | 6100 | | |
| D | LINCOLN NATL CORP IND | COM | | 53418710 | 1706 | 29314 SH | SHARED | 21 | 28969 | | 345 |
| D | LINCOLN NATL CORP IND | COM | | 53418710 | 65 | 1125 SH | SHARED | 22 | | | 1125 |
| D | LINCOLN NATL CORP IND | COM | | 53418710 | 554 | 9532 SH | SHARED | 23 | 9532 | | |
| D | LINCOLN NATL CORP IND | COM | | 53418710 | 186 | 3200 SH | SHR/OTHR | 23 | 3200 | | 330 |
| D | LINDSAY CORP | COM | | 53555510 | 23 | 330 SH | SHARED | | 330 | | |
| D | LINDSAY CORP | COM | | 53555510 | 1228 | 17374 SH | SHARED | | 17374 | | |
| D | LINDSAY CORP | COM | | 53555510 | 25953 | 367141 SH | SHARED | 04 | 367141 | | |
| D | LINDSAY CORP | COM | | 53555510 | 34167 | 483345 SH | SHARED | 05 | 483345 | | |
| D | LINDSAY CORP | COM | | 53555510 | 300 | 4255 SH | SHARED | 06 | | | 4255 |
| D | LINDSAY CORP | COM | | 53555510 | 257 | 3639 SH | SHARED | 10 | 3639 | | |
| D | LINEAR TECHNOLOGY CORP | COM | | 53567810 | 9 | 300 SH | SHARED | | 300 | | |
| D | LINEAR TECHNOLOGY CORP | COM | | 53567810 | 17667 | 555055 SH | SHARED | | 555055 | | |
| D | LINEAR TECHNOLOGY CORP | COM | | 53567810 | 1024 | 32190 SH | SHARED | 01 | 24600 | | 7590 |
| D | LINEAR TECHNOLOGY CORP | COM | | 53567810 | 155 | 4900 SH | SHR/OTHR | 01 | | | 4900 |
| D | LINEAR TECHNOLOGY CORP | COM | | 53567810 | 249 | 7824 SH | SHARED | 02 | 7824 | | |
| D | LINEAR TECHNOLOGY CORP | COM | | 53567810 | 6 | 210 SH | SHARED | 05 | 210 | | |
| D | LINEAR TECHNOLOGY CORP | COM | | 53567810 | 91 | 2880 SH | SHARED | 06 | | | 2880 |
| D | LINEAR TECHNOLOGY CORP | COM | | 53567810 | 5554 | 174520 SH | SHARED | 10 | 174520 | | |
| D | LINEAR TECHNOLOGY CORP | COM | | 53567810 | 128 | 4050 SH | SHR/OTHR | 20 | 1210 | | 2840 |
| D | LINEAR TECHNOLOGY CORP | COM | | 53567810 | 45 | 1425 SH | SHR/OTHR | 20 | 1425 | | |
| D | LINEAR TECHNOLOGY CORP | COM | | 53567810 | 82 | 2600 SH | SHARED | 22 | 800 | | 1800 |
| D | LINEAR TECHNOLOGY CORP | COM | | 53567810 | 12 | 400 SH | SHR/OTHR | 22 | 400 | | |
| D | LINEAR TECHNOLOGY CORP | COM | | 53567810 | 183 | 5760 SH | SHARED | 23 | 5360 | | 400 |
| D | LINEAR TECHNOLOGY CORP | COM | | 53567810 | 475 | 14950 SH | SHARED | | | | 14950 |
| D | LIONS GATE ENTMNT CORP | NOTE | 2.938%10/1 | 535919AF | 256 | 250000 PRN | SHARED | 02 | 250000 | | |
| D | LIONS GATE ENTMNT CORP | COM NEW | | 535919Q0 | 105 | 11200 SH | SHARED | | 11200 | | |
| D | LIONS GATE ENTMNT CORP | COM NEW | | 535919Q0 | 323 | 34326 SH | SHARED | 02 | 34326 | | |
| D | LINN ENERGY LLC | UNIT LTD LIAB | | 53602010 | 165171 | 6598956 SH | SHARED | | 6598956 | | |
| D | LIONBRIDGE TECHNOLOGIES INC | COM | | 53625210 | 740 | 208613 SH | SHARED | | 208613 | | |
| D | LIONBRIDGE TECHNOLOGIES INC | COM | | 53625210 | 39 | 11075 SH | SHARED | 02 | 11075 | | |
| D | LIPID SCIENCES INC ARIZ | COM | | 53630P10 | 0 | 625 SH | SHARED | | 625 | | |
| D | LIQUIDITY SERVICES INC | COM | | 53635B10 | 53 | 4115 SH | SHARED | | 4115 | | |
| D | LIQUIDITY SERVICES INC | COM | | 53635B10 | 3624 | 281000 SH | SHARED | 10 | 281000 | | |
| D | LIQUIDITY SERVICES INC | COM | | 53635B10 | 7963 | 617311 SH | SHARED | 21 | 617311 | | |
| D | LITTELFUSE INC | COM | | 53700810 | 350 | 10645 SH | SHARED | | 10645 | | |
| D | LITTELFUSE INC | COM | | 53700810 | 230 | 7000 SH | SHARED | 10 | 7000 | | |
| D | LIVE NATION INC | COM | | 53803410 | 63 | 4350 SH | SHARED | | 4350 | | |
| D | LIVE NATION INC | COM | | 53803410 | 13 | 961 SH | SHARED | 01 | 25 | | 936 |
| D | LIVE NATION INC | COM | | 53803410 | 629 | 43337 SH | SHARED | 02 | 43337 | | |
| D | LIVE NATION INC | COM | | 53803410 | 290 | 20000 SH | SHARED | 04 | 20000 | | |
| D | LIVE NATION INC | COM | | 53803410 | 361 | 24875 SH | SHARED | 10 | 24875 | | |
| D | LIVEPERSON INC | COM | | 53814610 | 516 | 96747 SH | SHARED | 01 | | | 96747 |
| D | LIZ CLAIBORNE INC | COM | | 53932010 | 182 | 8979 SH | SHARED | | 5304 | | 3675 |
| D | LIZ CLAIBORNE INC | COM | | 53932010 | 8646 | 424910 SH | SHARED | | 424910 | | |
| D | LIZ CLAIBORNE INC | COM | | 53932010 | 1741 | 85584 SH | SHARED | 01 | 78944 | | 6640 |
| D | LIZ CLAIBORNE INC | COM | | 53932010 | 169 | 8346 SH | SHR/OTHR | 01 | | | 8346 |
| D | LIZ CLAIBORNE INC | COM | | 53932010 | 494 | 24280 SH | SHARED | 02 | 24280 | | |
| D | LIZ CLAIBORNE INC | COM | | 53932010 | 208 | 10239 SH | SHARED | 04 | | | 10239 |
| D | LIZ CLAIBORNE INC | COM | | 53932010 | 10 | 540 SH | SHARED | 06 | | | 540 |
| D | LIZ CLAIBORNE INC | COM | | 53932010 | 1355 | 66630 SH | SHARED | 10 | 66630 | | |
| D | LIZ CLAIBORNE INC | COM | | 53932010 | 50 | 2500 SH | SHARED | 14 | | | 2500 |
| D | LIZ CLAIBORNE INC | COM | | 53932010 | 133 | 6552 SH | SHARED | 19 | | | 6552 |
| D | LIZ CLAIBORNE INC | COM | | 53932010 | 191 | 9400 SH | SHARED | 20 | 9400 | | |
| D | LLOYDS TSB GROUP PLC | SPONSORED ADR | | 53943910 | 19 | 530 SH | SHARED | | 530 | | |
| D | LLOYDS TSB GROUP PLC | SPONSORED ADR | | 53943910 | 102 | 2732 SH | SHARED | 21 | 2732 | | |
| D | LO-JACK CORP | COM | | 53945110 | 87 | 5202 SH | SHARED | | 5202 | | |
| D | LO-JACK CORP | COM | | 53945110 | 102 | 6100 SH | SHARED | 02 | 6100 | | |
| D | LOCAL COM CORP | COM | | 53954R10 | 13 | 2717 SH | SHARED | | 2717 | | |
| D | LOCKHEED MARTIN CORP | DBCV | 8/1 | 539830A0 | 880 | 600000 PRN | SHARED | | 600000 | | |
| D | LOCKHEED MARTIN CORP | DBCV | 8/1 | 539830AP | 2913 | 1985000 PRN | SHARED | 02 | 1985000 | | |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 54612 | 518837 SH | SHARED | | 489537 | | 29300 |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 5337 | 50711 SH | SHARED | 01 | 45781 | | 4930 |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 47 | 450 SH | SHR/OTHR | 01 | | | 450 |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 771 | 7331 SH | SHARED | 02 | 7331 | | |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 2389 | 22700 SH | SHARED | 04 | 22700 | | |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 16 | 160 SH | SHARED | 05 | 160 | | |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 391 | 3720 SH | SHARED | 06 | | | 3720 |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 129099 | 1226480 SH | SHARED | 10 | 1226480 | | |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 337 | 3209 SH | SHARED | 14 | | | 3209 |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 4210 | 40000 SH | SHARED | 15 | 40000 | | |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 10 | 100 SH | SHARED | 20 | 100 | | |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 232 | 2211 SH | SHARED | 21 | | | 2211 |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 7 | 70 SH | SHR/OTHR | 21 | | | 70 |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 110 | 1050 SH | SHR/OTHR | 22 | 50 | | 1000 |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 21 | 200 SH | SHR/OTHR | 22 | | | 200 |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 42 | 400 SH | SHARED | 23 | 400 | | |
| D | LOCKHEED MARTIN CORP | COM | | 53983010 | 364 | 3459 SH | SHR/OTHR | 23 | | | 3459 |

```
D LODGIAN INC                    COM PAR $.01    54021P40    11    1065 SH    SHARED           1065
D LOEWS CORP                     COM             54042410  78889 1567123 SH   SHARED         1567123
D LOEWS CORP                     COM             54042410   2174   43200 SH   SHARED      01    43200
D LOEWS CORP                     COM             54042410   1308   25989 SH   SHARED      02    25989
D LOEWS CORP                     COM             54042410  37966  754196 SH   SHARED      06          754196
D LOEWS CORP                     COM             54042410  33525  665986 SH   SHARED      10   665986
D LOEWS CORP                     CAROLNA GP STK  54042420   7502   87958 SH   SHARED        87958
D LOEWS CORP                     CAROLNA GP STK  54042420    910   10673 SH   SHARED      01    8238       2435
D LOEWS CORP                     CAROLNA GP STK  54042420    151    1775 SH   SHR/OTHR    01          1775
D LOEWS CORP                     CAROLNA GP STK  54042420    231    2718 SH   SHARED      02    2718
D LOEWS CORP                     CAROLNA GP STK  54042420 123703 1450216 SH   SHARED      04  1450216
D LOEWS CORP                     CAROLNA GP STK  54042420     93    1100 SH   SHARED      06          1100
D LOEWS CORP                     CAROLNA GP STK  54042420  39058  457900 SH   SHARED      10   457900
D LOEWS CORP                     CAROLNA GP STK  54042420   6377   74768 SH   SHARED      16    74768
D LOEWS CORP                     CAROLNA GP STK  54042420     34     400 SH   SHARED      20     400
D LOEWS CORP                     CAROLNA GP STK  54042420     22     265 SH   SHR/OTHR    21           265
D LOEWS CORP                     CAROLNA GP STK  54042420     17     200 SH   SHARED      22     200
D LOGICVISION INC                COM             54140W10      0     568 SH   SHARED            568
D LOGILITY INC                   COM             54140Y10      0      46 SH   SHARED             46
D LOGIC DEVICES INC              COM             54140210      0     130 SH   SHARED            130
D LONGS DRUG STORES CORP         COM             54316210   1466   31200 SH   SHARED          31200
D LONGS DRUG STORES CORP         COM             54316210    225    4800 SH   SHARED      01    4800
D LONGS DRUG STORES CORP         COM             54316210   1317   28031 SH   SHARED      10    28031
D LONGTOP FINL TECHNOLOGIES LT   ADR             54318P10    218    9226 SH   SHARED           9226
D LONGTOP FINL TECHNOLOGIES LT   ADR             54318P10      7     300 SH   SHARED      01     300
D LOOKSMART LTD                  COM NEW         54344250      1     597 SH   SHARED            597
D LOOPNET INC                    COM             54352430    159   11342 SH   SHARED          11342
D LOOPNET INC                    COM             54352430  14402 1025100 SH   SHARED      10  1025100
D LORAL SPACE & COMMUNICATNS L   COM             54388110      2      71 SH   SHARED             71
D LORAL SPACE & COMMUNICATNS L   COM             54388110    226    6600 SH   SHARED      10    6600
D LOUD TECHNOLOGIES INC          COM NEW         54573120      0      29 SH   SHARED             29
D LOUISIANA BANCORP INC NEW      COM             54619P10      1     150 SH   SHARED            150
D LOUISIANA PAC CORP             COM             54634710  67309 4920269 SH   SHARED        4920269
D LOUISIANA PAC CORP             COM             54634710    384   28100 SH   SHARED      01    3200      24900
D LOUISIANA PAC CORP             COM             54634710    138   10101 SH   SHARED      02    10101
D LOUISIANA PAC CORP             COM             54634710    403   29478 SH   SHARED      10    29478
D LOWES COS INC                  NOTE     10/1   548661CG   3291 3657000 PRN  SHARED        3657000
D LOWES COS INC                  NOTE     10/1   548661CG    968 1076000 PRN  SHARED        1076000
D LOWES COS INC                  COM             54866110  75075 3319006 SH   SHARED        3319006
D LOWES COS INC                  COM             54866110   4232  187106 SH   SHARED      01   181222       5884
D LOWES COS INC                  COM             54866110     25    1120 SH   SHR/OTHR    01          1120
D LOWES COS INC                  COM             54866110  29237 1292530 SH   SHARED      02  1292530
D LOWES COS INC                  COM             54866110     11     510 SH   SHARED      05     510
D LOWES COS INC                  COM             54866110    335   14820 SH   SHARED      06         14820
D LOWES COS INC                  COM             54866110 199811 8833414 SH   SHARED      10  8833414
D LOWES COS INC                  COM             54866110    133    5902 SH   SHARED      14          5902
D LOWES COS INC                  COM             54866110    126    5600 SH   SHARED      20    2500       3100
D LOWES COS INC                  COM             54866110    136    6019 SH   SHARED      21          6019
D LOWES COS INC                  COM             54866110     63    2800 SH   SHR/OTHR    22          2800
D LOWES COS INC                  COM             54866110     34    1520 SH   SHARED      23    1520
D LOWES COS INC                  COM             54866110    434   19200 SH   SHR/OTHR    23         19200
D LUBRIZOL CORP                  COM             54927110   8160  150679 SH   SHARED         144879       5800
D LUBRIZOL CORP                  COM             54927110   1830   33800 SH   SHARED      01    13200      20600
D LUBRIZOL CORP                  COM             54927110    700   12938 SH   SHARED      02    12938
D LUBRIZOL CORP                  COM             54927110  13743  253760 SH   SHARED      10   204960      48800
D LUBYS INC                      COM             54928210  13359 1314945 SH   SHARED        1314945
D LUBYS INC                      COM             54928210     29    2900 SH   SHARED      02    2900
D LUCENT TECHNOLOGIES INC        DBCV  2.750% 6/1 549463AG 63840 70000000 PRN SHARED       70000000
D LUCENT TECHNOLOGIES INC        DBCV  2.750% 6/1 549463AG 15686 17200000 PRN SHARED      02  17200000
D LUCENT TECHNOLOGIES INC        DBCV  2.875% 6/1 549463AH 54900 66465008 PRN SHARED        6465008
D LUFKIN INDS INC                COM             54976410    401    7000 SH   SHARED           7000
D LUFKIN INDS INC                COM             54976410      5      90 SH   SHARED      02      90
D LUFKIN INDS INC                COM             54976410     21     375 SH   SHARED      10     375
D LULULEMON ATHLETICA INC        COM             55002110    168    3552 SH   SHARED           3552
D LUMBER LIQUIDATORS INC         COM             55003Q10      2     261 SH   SHARED            261
D LUMERA CORP                    COM             55024810      2    1124 SH   SHARED           1124
D LUMINEX CORP DEL               COM             55027E10     11     708 SH   SHARED            708
D LUMINENT MTG CAP INC           COM             55027830    116  149423 SH   SHARED         149423
D LUMINENT MTG CAP INC           COM             55027830     11   14600 SH   SHARED      10    14600
D LUNA INNOVATIONS               COM             55035110      1     136 SH   SHARED            136
D LUNDIN MINING CORP             COM             55037210   2634  274749 SH   SHARED         274749
D LUNDIN MINING CORP             COM             55037210    227   23695 SH   SHARED      04    23695
D LUNDIN MINING CORP             COM             55037210     34    3573 SH   SHARED      21    3573
D LUXOTTICA GROUP S P A          SPONSORED ADR   55068R20    264    8412 SH   SHARED           8412
D LUXOTTICA GROUP S P A          SPONSORED ADR   55068R20    387   12300 SH   SHR/OTHR    01         12300
D LYDALL INC DEL                 COM             55081910     25    2434 SH   SHARED           2434
D LYDALL INC DEL                 COM             55081910     66    6300 SH   SHARED      02    6300
D LYONDELL CHEMICAL CO           COM             55207810      0    5691 SH   SHARED           5691
D M & F WORLDWIDE CORP           COM             55254110      1      36 SH   SHARED             36
D M & F WORLDWIDE CORP           COM             55254110    312    5800 SH   SHARED      01    5800
D M & T BK CORP                  COM             55261F10   5907   72419 SH   SHARED          72419
D M & T BK CORP                  COM             55261F10    575    7050 SH   SHARED      01    7050
D M & T BK CORP                  COM             55261F10    538    6603 SH   SHARED      02    6603
D M & T BK CORP                  COM             55261F10      4      50 SH   SHARED      05      50
D M & T BK CORP                  COM             55261F10     35     440 SH   SHARED      06           440
D M & T BK CORP                  COM             55261F10   3430   42050 SH   SHARED      10    42050
D M & T BK CORP                  COM             55261F10     20     250 SH   SHARED      23     250
D M & T BK CORP                  COM             55261F10     20     250 SH   SHR/OTHR    23           250
D MBIA INC                       COM             55262C10  13110  703744 SH   SHARED         703744
D MBIA INC                       COM             55262C10    382   20532 SH   SHARED      01    19432       1100
D MBIA INC                       COM             55262C10   2754  147829 SH   SHARED      02   147829
D MBIA INC                       COM             55262C10      1     100 SH   SHARED      05     100
D MBIA INC                       COM             55262C10     19    1060 SH   SHARED      06          1060
D MBIA INC                       COM             55262C10   2071  111206 SH   SHARED      10   111206
D MBIA INC                       COM             55262C10    476   25600 SH   SHARED      14         25600
D MBIA INC                       COM             55262C10    951   51067 SH   SHARED      20    9351      41716
D MBIA INC                       COM             55262C10    401   21551 SH   SHR/OTHR    20         21551
D MBIA INC                       COM             55262C10      6     350 SH   SHARED      23     350
D MBIA INC                       COM             55262C10    180    9669 SH   SHR/OTHR    23          9669
D MB FINANCIAL INC NEW           COM             55264U10    912   29583 SH   SHARED          29583
D MB FINANCIAL INC NEW           COM             55264U10     33    1100 SH   SHARED      01    1100
D MB FINANCIAL INC NEW           COM             55264U10    286    9300 SH   SHARED      02    9300
D MB FINANCIAL INC NEW           COM             55264U10   6469  209832 SH   SHARED      10   209832
D MBF HEALTHCARE ACQUISITION C   COM             55265010   7852 1031825 SH   SHARED        1031825
D MBF HEALTHCARE ACQUISITION C   *W EXP 04/16/201 55265011    54   75000 SH   SHARED          75000
D MBIA CAP CLAYMORE MNG DUR IN   COM             55265030    981   79000 SH   SHARED          79000
D M D C HLDGS INC                COM             55267610   1342   36144 SH   SHARED          36144
D M D C HLDGS INC                COM             55267610    649   17500 SH   SHARED      01    8400       9100
D M D C HLDGS INC                COM             55267610    472   12725 SH   SHARED      02    12725
D M D C HLDGS INC                COM             55267610    128    3465 SH   SHARED      10    3465
D MDS INC                        COM             55269P30     26    1364 SH   SHARED           1364
D MDS INC                        COM             55269P30    173    8901 SH   SHARED          8901
D MDS INC                        COM             55269P30   1746   89800 SH   SHARED      01    89800
D MDS INC                        COM             55269P30    680   24629 SH   SHARED      10    24629
D MDU RES GROUP INC              COM             55269010    680   24629 SH   SHARED          24629
```

| | Name | Class | CUSIP | Value | Amount | | Auth | Code | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | MDU RES GROUP INC | COM | 55269010 | 1486 | 53850 | SH | SHARED | 01 | | 53850 |
| D | MDU RES GROUP INC | COM | 55269010 | 238 | 8640 | SH | SHARED | 02 | 8640 | |
| D | MDU RES GROUP INC | COM | 55269010 | 237 | 8600 | SH | SHARED | 10 | 8600 | |
| D | MDU RES GROUP INC | COM | 55269010 | 82 | 3000 | SH | SHARED | 21 | | 3000 |
| D | MDI INC | COM | 55270510 | 0 | 812 | SH | SHARED | | 812 | |
| D | MEMC ELECTR MATLS INC | COM | 55271510 | 51985 | 587476 | SH | SHARED | | 587476 | |
| D | MEMC ELECTR MATLS INC | COM | 55271510 | 2317 | 26195 | SH | SHARED | 01 | 25895 | 300 |
| D | MEMC ELECTR MATLS INC | COM | 55271510 | 637 | 7200 | SH | SHR/OTHR | 01 | | 7200 |
| D | MEMC ELECTR MATLS INC | COM | 55271510 | 1013 | 11454 | SH | SHARED | 02 | 11454 | |
| D | MEMC ELECTR MATLS INC | COM | 55271510 | 19569 | 221149 | SH | SHARED | 04 | 221149 | |
| D | MEMC ELECTR MATLS INC | COM | 55271510 | 25893 | 292610 | SH | SHARED | 05 | 292610 | |
| D | MEMC ELECTR MATLS INC | COM | 55271510 | 207 | 2350 | SH | SHARED | 06 | | 2350 |
| D | MEMC ELECTR MATLS INC | COM | 55271510 | 149819 | 1693070 | SH | SHARED | 10 | 1693070 | |
| D | MEMC ELECTR MATLS INC | COM | 55271510 | 148 | 1680 | SH | SHARED | 14 | | 1680 |
| D | MEMC ELECTR MATLS INC | COM | 55271510 | 3274 | 37000 | SH | SHARED | 16 | 37000 | |
| D | MEMC ELECTR MATLS INC | COM | 55271510 | 185 | 2100 | SH | SHARED | 23 | 2100 | |
| D | MFB CORP | COM | 55272D10 | 0 | 31 | SH | SHARED | | 31 | |
| D | MFA MTG INVTS INC | COM | 55272X10 | 296 | 32000 | SH | SHARED | | 32000 | |
| D | MFA MTG INVTS INC | COM | 55272X10 | 91 | 9900 | SH | SHARED | 01 | 9900 | |
| D | MFA MTG INVTS INC | COM | 55272X10 | 1756 | 189900 | SH | SHARED | 02 | 189900 | |
| D | MFA MTG INVTS INC | COM | 55272X10 | 592 | 64000 | SH | SHARED | | 64000 | |
| D | MFRI INC | COM | 55272110 | 17 | 1665 | SH | SHARED | | 1665 | |
| D | MFS CHARTER INCOME TR | SH BEN INT | 55272710 | 1898 | 231280 | SH | SHARED | | 231280 | |
| D | MFS INTER INCOME TR | SH BEN INT | 55273C10 | 526 | 86662 | SH | SHARED | | 86662 | |
| D | MFS INTER INCOME TR | SH BEN INT | 55273C10 | 17 | 2828 | SH | SHARED | 20 | | 2828 |
| D | MGE ENERGY INC | COM | 55277P10 | 25 | 721 | SH | SHARED | | 721 | |
| D | MGE ENERGY INC | COM | 55277P10 | 13 | 375 | SH | SHARED | 01 | 375 | |
| D | MGE ENERGY INC | COM | 55277P10 | 340 | 9600 | SH | SHARED | 10 | 9600 | |
| D | MGIC INVT CORP WIS | COM | 55284810 | 2205 | 98326 | SH | SHARED | | 98326 | |
| D | MGIC INVT CORP WIS | COM | 55284810 | 224 | 10000 | SH | SHARED | 01 | 10000 | |
| D | MGIC INVT CORP WIS | COM | 55284810 | 1284 | 57266 | SH | SHARED | 02 | 57266 | |
| D | MGIC INVT CORP WIS | COM | 55284810 | 753 | 33605 | SH | SHARED | 10 | 33605 | |
| D | MGI PHARMA INC | NOTE 1.682% 3/0 | 55288OAB | 798 | 834000 | PRN | SHARED | 02 | 834000 | |
| D | MGI PHARMA INC | COM | 55288010 | 1039 | 25638 | SH | SHARED | | 25638 | |
| D | MGI PHARMA INC | COM | 55288010 | 340 | 8400 | SH | SHARED | 01 | 8400 | |
| D | MGI PHARMA INC | COM | 55288010 | 15273 | 376833 | SH | SHARED | 04 | 376833 | |
| D | MGI PHARMA INC | COM | 55288010 | 6176 | 152400 | SH | SHARED | 10 | 152400 | |
| D | MGI PHARMA INC | COM | 55288010 | 55 | 1371 | SH | SHARED | 21 | 1371 | |
| D | MGM MIRAGE | COM | 55295310 | 11688 | 139120 | SH | SHARED | | 139120 | |
| D | MGM MIRAGE | COM | 55295310 | 25 | 300 | SH | SHARED | 01 | 300 | |
| D | MGM MIRAGE | COM | 55295310 | 3918 | 46638 | SH | SHARED | 02 | 46638 | |
| D | MGM MIRAGE | COM | 55295310 | 119 | 1420 | SH | SHARED | 06 | | 1420 |
| D | MGM MIRAGE | COM | 55295310 | 806 | 9600 | SH | SHARED | 10 | 9600 | |
| D | MGM MIRAGE | COM | 55295310 | 290 | 3453 | SH | SHARED | 21 | 3453 | |
| D | MGM MIRAGE | COM | 55295310 | 50 | 600 | SH | SHARED | 23 | | 600 |
| D | MGP INGREDIENTS INC | COM | 55302G10 | 19 | 2109 | SH | SHARED | | 2109 | |
| D | MHI HOSPITALITY CORP | COM | 55302L10 | 1 | 165 | SH | SHARED | | 165 | |
| D | MI DEVS INC | CL A SUB VTG | 55304X10 | 71 | 2564 | SH | SHARED | | 2564 | |
| D | MI DEVS INC | CL A SUB VTG | 55304X10 | 1 | 50 | SH | SHARED | 05 | 50 | |
| D | MI DEVS INC | CL A SUB VTG | 55304X10 | 40 | 1457 | SH | SHARED | 14 | | 1457 |
| D | M/I HOMES INC | COM | 55305B10 | 956 | 91117 | SH | SHARED | | 91117 | |
| D | M/I HOMES INC | COM | 55305B10 | 18 | 1800 | SH | SHARED | 01 | 1800 | |
| D | M/I HOMES INC | COM | 55305B10 | 18 | 1775 | SH | SHARED | 02 | 1775 | |
| D | M/I HOMES INC | COM | 55305B10 | 454 | 43300 | SH | SHARED | 10 | 43300 | |
| D | MKS INSTRUMENT INC | COM | 55306N10 | 1380 | 72107 | SH | SHARED | | 72107 | |
| D | MKS INSTRUMENT INC | COM | 55306N10 | 593 | 30985 | SH | SHARED | | 30985 | |
| D | MKS INSTRUMENT INC | COM | 55306N10 | 21944 | 1146500 | SH | SHARED | 10 | 1146500 | |
| D | MKS INSTRUMENT INC | COM | 55306N10 | 34 | 1801 | SH | SHARED | 21 | 1801 | |
| D | MIVA INC | COM | 55311B10 | 1 | 840 | SH | SHARED | | 840 | |
| D | MMC ENERGY INC | COM NEW | 55312Q20 | 1 | 363 | SH | SHARED | | 363 | |
| D | MPC CORPORATION | COM | 55316610 | 0 | 884 | SH | SHARED | | 884 | |
| D | MPS GROUP INC | COM | 55340910 | 179 | 16404 | SH | SHARED | | 16404 | |
| D | MPS GROUP INC | COM | 55340910 | 462 | 42300 | SH | SHARED | 01 | 13800 | 28500 |
| D | MPS GROUP INC | COM | 55340910 | 157 | 14418 | SH | SHARED | 02 | 14418 | |
| D | MPS GROUP INC | COM | 55340910 | 458 | 41900 | SH | SHARED | 10 | 41900 | |
| D | MRV COMMUNICATIONS INC | COM | 55347710 | 0 | 3 | SH | SHARED | | 3 | |
| D | MRV COMMUNICATIONS INC | COM | 55347710 | 82 | 35500 | SH | SHARED | 10 | 35500 | |
| D | MRU HLDGS INC | COM | 55348A10 | 24 | 6686 | SH | SHARED | | 6686 | |
| D | MSB FINANCIAL CORPORATION | COM | 55352P10 | 6 | 633 | SH | SHARED | | 633 | |
| D | MSC INDL DIRECT INC | CL A | 55353010 | 267 | 6615 | SH | SHARED | | 6615 | |
| D | MSC INDL DIRECT INC | CL A | 55353010 | 675 | 16700 | SH | SHARED | 01 | | 16700 |
| D | MSC INDL DIRECT INC | CL A | 55353010 | 131 | 3252 | SH | SHARED | 02 | 3252 | |
| D | MSC INDL DIRECT INC | CL A | 55353010 | 238 | 5900 | SH | SHARED | 10 | 5900 | |
| D | MSC SOFTWARE CORP | COM | 55353110 | 56 | 4350 | SH | SHARED | | 4350 | |
| D | MSC SOFTWARE CORP | COM | 55353110 | 177 | 13700 | SH | SHARED | 10 | 13700 | |
| D | MSCI INC | CL A | 55354B10 | 16 | 435 | SH | SHARED | | 435 | |
| D | M-SYSTEMS FIN INC | NOTE 1.000% 3/1 | 55375VAB | 194 | 177000 | PRN | SHARED | 02 | 177000 | |
| D | MTR GAMING GROUP INC | COM | 55376910 | 0 | 40 | SH | SHARED | | 40 | |
| D | MTC TECHNOLOGIES INC | COM | 55377010 | 2 | 126 | SH | SHARED | | 126 | |
| D | MTS MEDICATION TECHNLGS INC | COM | 55377310 | 1 | 116 | SH | SHARED | | 116 | |
| D | MTS SYS CORP | COM | 55377710 | 46 | 1088 | SH | SHARED | | 1088 | |
| D | MTS SYS CORP | COM | 55377710 | 5 | 128 | SH | SHARED | 02 | 128 | |
| D | MTS SYS CORP | COM | 55377710 | 179 | 4200 | SH | SHARED | 10 | 4200 | |
| D | MVC CAPITAL INC | COM | 55382910 | 9057 | 561193 | SH | SHARED | | 561193 | |
| D | MVC CAPITAL INC | COM | 55382910 | 1 | 82 | SH | SHARED | 02 | 82 | |
| D | MVC CAPITAL INC | COM | 55382910 | 40 | 2500 | SH | SHARED | 10 | 2500 | |
| D | MWI VETERINARY SUPPLY INC | COM | 55402L10 | 82 | 2058 | SH | SHARED | | 2058 | |
| D | M-WAVE INC | COM NEW | 55403420 | 0 | 36 | SH | SHARED | | 36 | |
| D | MZT HOLDINGS INC | COM | 55405U10 | 39 | 415800 | SH | SHARED | | 415800 | |
| D | MAC-GRAY CORP | COM | 55415310 | 2 | 182 | SH | SHARED | | 182 | |
| D | MACATAWA BK CORP | COM | 55422510 | 22 | 2660 | SH | SHARED | | 2660 | |
| D | MACATAWA BK CORP | COM | 55422510 | 59 | 6900 | SH | SHARED | 10 | 6900 | |
| D | MACE SEC INTL INC | COM NEW | 55433520 | 0 | 404 | SH | SHARED | | 404 | |
| D | MACERICH CO | COM | 55438210 | 159 | 2250 | SH | SHARED | | 2250 | |
| D | MACERICH CO | COM | 55438210 | 43820 | 616668 | SH | SHARED | | 615868 | 800 |
| D | MACERICH CO | COM | 55438210 | 1632 | 22975 | SH | SHARED | 01 | 375 | 22600 |
| D | MACERICH CO | COM | 55438210 | 251 | 3536 | SH | SHARED | 02 | 3536 | |
| D | MACERICH CO | COM | 55438210 | 8591 | 120900 | SH | SHARED | 10 | 120900 | |
| D | MACERICH CO | COM | 55438210 | 213212 | 3000450 | SH | SHARED | 11 | 1759654 | 1240796 |
| D | MACK CALI RLTY CORP | COM | 55448910 | 7870 | 231471 | SH | SHARED | | 230171 | 1300 |
| D | MACK CALI RLTY CORP | COM | 55448910 | 720 | 21200 | SH | SHARED | 01 | 100 | 21100 |
| D | MACK CALI RLTY CORP | COM | 55448910 | 268 | 7892 | SH | SHARED | 02 | 7892 | |
| D | MACK CALI RLTY CORP | COM | 55448910 | 1912 | 56250 | SH | SHARED | 10 | 56250 | |
| D | MACK CALI RLTY CORP | COM | 55448910 | 51356 | 1510482 | SH | SHARED | 11 | 19600 | 1490882 |
| D | MACK CALI RLTY CORP | COM | 55448910 | 102 | 3000 | SH | SHR/OTHR | 21 | | 3000 |
| D | MACK CALI RLTY CORP | COM | 55448910 | 8 | 250 | SH | SHARED | 23 | 250 | |
| D | MACK CALI RLTY CORP | COM | 55448910 | 66 | 1950 | SH | SHR/OTHR | 23 | | 1950 |
| D | MACROVISION CORP | NOTE 2.625% 8/1 | 55904AB | 4710 | 5000000 | PRN | SHARED | | 5000000 | |
| D | MACROVISION CORP | COM | 55590410 | 1313 | 13359 | SH | SHARED | | 13359 | |
| D | MACROVISION CORP | COM | 55590410 | 727 | 39690 | SH | SHARED | 01 | 15490 | 24200 |
| D | MACROVISION CORP | COM | 55590410 | 1558 | 85037 | SH | SHARED | 02 | 85037 | |
| D | MACROVISION CORP | COM | 55590410 | 293 | 16023 | SH | SHARED | | 16023 | |
| D | MACQUARIE FT TR GB INF UT DI | COM | 55607W10 | 1 | 78 | SH | SHARED | | 78 | |
| D | MACQUARIE INFRASTR CO LLC | MEMBERSHIP INT | 55608B10 | 71 | 1771 | SH | SHARED | | 1771 | |

| | Issuer | Class | CUSIP | Value | Shares/Prn | Disc | Code | Amt1 | Amt2 |
|---|---|---|---|---|---|---|---|---|---|
| D | MACQUARIE INFRASTR CO LLC | MEMBERSHIP INT | 55608B10 | 518 | 12800 SH | SHARED | 23 | | 12800 |
| D | MACYS INC | COM | 55616P10 | 53972 | 2086297 SH | SHARED | | 2086297 | |
| D | MACYS INC | COM | 55616P10 | 1325 | 51220 SH | SHARED | 01 | 48279 | 2941 |
| D | MACYS INC | COM | 55616P10 | 5 | 200 SH | SHR/OTHR | 01 | | 200 |
| D | MACYS INC | COM | 55616P10 | 2236 | 86463 SH | SHARED | 02 | 84863 | 1600 |
| D | MACYS INC | COM | 55616P10 | 6 | 244 SH | SHARED | 05 | 244 | |
| D | MACYS INC | COM | 55616P10 | 137 | 5298 SH | SHARED | 06 | | 5298 |
| D | MACYS INC | COM | 55616P10 | 66187 | 2558469 SH | SHARED | 10 | 2558469 | |
| D | MACYS INC | COM | 55616P10 | 20 | 800 SH | SHARED | 14 | | 800 |
| D | MACYS INC | COM | 55616P10 | 40 | 1555 SH | SHARED | 20 | 1270 | 285 |
| D | MACYS INC | COM | 55616P10 | 186 | 7190 SH | SHARED | 23 | 7190 | |
| D | MACYS INC | COM | 55616P10 | 160 | 6222 SH | SHARED | 23 | 4356 | 1866 |
| D | MACYS INC | COM | 55616P10 | 26 | 1008 SH | SHR/OTHR | 23 | | 1008 |
| D | MADDEN STEVEN LTD | COM | 55626910 | 122 | 6129 SH | SHARED | | 6129 | |
| D | MADDEN STEVEN LTD | COM | 55626910 | 120 | 6034 SH | SHARED | 02 | 6034 | |
| D | MADECO SA | SPONS ADR NEW | 55630420 | 150 | 12847 SH | SHARED | | 12847 | |
| D | MADISON CLAYMORE CVRD CALL F | COM | 55658210 | 536 | 47000 SH | SHARED | | 47000 | |
| D | MAG SILVER CORP | COM | 55903Q10 | 108 | 7300 SH | SHARED | | 7300 | |
| D | MAG SILVER CORP | COM | 55903Q10 | 0 | 1 SH | SHARED | 04 | 1 | |
| D | MAG SILVER CORP | COM | 55903Q10 | 1858 | 125000 SH | SHARED | 10 | 125000 | |
| D | MAGELLAN MIDSTREAM HLDGS LP | COM LP INTS | 55907R10 | 62810 | 2343680 SH | SHARED | | 2343680 | |
| D | MAGELLAN HEALTH SVCS INC | COM NEW | 55907920 | 535 | 11479 SH | SHARED | | 11479 | |
| D | MAGELLAN HEALTH SVCS INC | COM NEW | 55907920 | 146 | 3145 SH | SHARED | 01 | 3145 | |
| D | MAGELLAN HEALTH SVCS INC | COM NEW | 55907920 | 4098 | 87892 SH | SHARED | 10 | 87892 | |
| D | MAGELLAN HEALTH SVCS INC | COM NEW | 55907920 | 3 | 70 SH | SHARED | 21 | | 70 |
| D | MAGELLAN MIDSTREAM PRTNRS LP | COM UNIT RP LP | 55908010 | 125 | 2891 SH | SHARED | | 2891 | |
| D | MAGELLAN PETE CORP | COM | 55909130 | 1 | 1082 SH | SHARED | | 1082 | |
| D | MAGMA DESIGN AUTOMATION | COM | 55918110 | 670 | 54935 SH | SHARED | | 54935 | |
| D | MAGMA DESIGN AUTOMATION | COM | 55918110 | 55 | 4575 SH | SHARED | 02 | 4575 | |
| D | MAGNA ENTMT CORP | CL A | 55921110 | 66 | 68115 SH | SHARED | | 68115 | |
| D | MAGNA INTL INC | CL A | 55922240 | 1351 | 16804 SH | SHARED | | 16004 | 800 |
| D | MAGNA INTL INC | CL A | 55922240 | 32 | 400 SH | SHARED | 01 | 400 | |
| D | MAGNA INTL INC | CL A | 55922240 | 36 | 450 SH | SHARED | 06 | | 450 |
| D | MAGNA INTL INC | CL A | 55922240 | 345 | 4300 SH | SHARED | 10 | 4300 | |
| D | MAGNA INTL INC | CL A | 55922240 | 80 | 1000 SH | SHARED | 14 | | 1000 |
| D | MAGNETEK INC | COM | 55942410 | 26 | 6088 SH | SHARED | | 6088 | |
| D | MAGYAR BANCORP INC | COM | 55977910 | 0 | 71 SH | SHARED | | 71 | |
| D | MAGUIRE PPTYS INC | COM | 55977510 | 60059 | 2038000 SH | SHARED | | 2038000 | |
| D | MAGUIRE PPTYS INC | COM | 55977510 | 277 | 9410 SH | SHARED | 01 | 9410 | |
| D | MAGUIRE PPTYS INC | COM | 55977510 | 1311 | 44500 SH | SHARED | 10 | 44500 | |
| D | MAGYAR TELEKOM TELECOMMUNS P | SPONSORED ADR | 55977610 | 536 | 19926 SH | SHARED | | 19926 | |
| D | MAGYAR TELEKOM TELECOMMUNS P | SPONSORED ADR | 55977610 | 2765 | 102700 SH | SHARED | 02 | 102700 | |
| D | MAHANAGAR TEL NIGAM LTD | SPONS ADR 2001 | 55977840 | 1074 | 112000 SH | SHARED | | 112000 | |
| D | MAIDENFORM BRANDS INC | COM | 56030510 | 263 | 19474 SH | SHARED | | 19474 | |
| D | MAINE & MARITIMES CORP | COM | 56037710 | 1 | 43 SH | SHARED | | 43 | |
| D | MAINSOURCE FINANCIAL GP INC | COM | 56062010 | 6 | 430 SH | SHARED | | 430 | |
| D | MAINSOURCE FINANCIAL GP INC | COM | 56062910 | 29 | 1885 SH | SHARED | 01 | 1885 | |
| D | MAIR HOLDINGS INC | COM | 56063510 | 1 | 318 SH | SHARED | | 318 | |
| D | MAIR HOLDINGS INC | COM | 56063510 | 0 | 30 SH | SHARED | 02 | 30 | |
| D | MAJESCO ENTERTAINMENT CO | COM NEW | 56069020 | 0 | 494 SH | SHARED | | 494 | |
| D | MAKEMUSIC INC | COM | 56086P20 | 0 | 80 SH | SHARED | | 80 | |
| D | MALAYSIA FD INC | COM | 56090510 | 8 | 801 SH | SHARED | | 801 | |
| D | MAN SANG HLDGS INC | COM | 56165120 | 4 | 464 SH | SHARED | | 464 | |
| D | MANAGEMENT NETWORK GROUP INC | COM | 56169310 | 1 | 471 SH | SHARED | | 471 | |
| D | MANAGEMENT NETWORK GROUP INC | COM | 56169310 | 1 | 700 SH | SHARED | 02 | | 700 |
| D | MANATRON INC | COM | 56204810 | 1 | 122 SH | SHARED | | 122 | |
| D | MANHATTAN ASSOCS INC | COM | 56275010 | 3886 | 147426 SH | SHARED | | 147426 | |
| D | MANHATTAN ASSOCS INC | COM | 56275010 | 4 | 175 SH | SHARED | 01 | 175 | |
| D | MANHATTAN ASSOCS INC | COM | 56275010 | 57 | 2175 SH | SHARED | 02 | 2175 | |
| D | MANHATTAN ASSOCS INC | COM | 56275010 | 160 | 6100 SH | SHARED | 10 | 6100 | |
| D | MANHATTAN ASSOCS INC | COM | 56275010 | 1518 | 57600 SH | SHARED | 14 | | 57600 |
| D | MANHATTAN PHARMACEUTICALS IN | COM NEW | 56311820 | 0 | 1443 SH | SHARED | | 1443 | |
| D | MANITOWOC INC | COM | 56357110 | 9932 | 203403 SH | SHARED | | 203403 | |
| D | MANITOWOC INC | COM | 56357110 | 1044 | 21400 SH | SHARED | | 20900 | 500 |
| D | MANITOWOC INC | COM | 56357110 | 63 | 1300 SH | SHR/OTHR | 01 | | 1300 |
| D | MANITOWOC INC | COM | 56357110 | 94 | 1931 SH | SHARED | 02 | 1931 | |
| D | MANITOWOC INC | COM | 56357110 | 27476 | 562700 SH | SHARED | 10 | 562700 | |
| D | MANITOWOC INC | COM | 56357110 | 12 | 260 SH | SHARED | 21 | | 260 |
| D | MANNATECH INC | COM | 56377110 | 10 | 1700 SH | SHARED | | 1700 | |
| D | MANNATECH INC | COM | 56377110 | 155 | 24677 SH | SHARED | | 24677 | |
| D | MANNATECH INC | COM | 56377110 | 0 | 146 SH | SHARED | 02 | | 146 |
| D | MANNKIND CORP | NOTE 3.750%12/1 | 56400PAA | 801 | 969000 PRN | SHARED | | 969000 | |
| D | MANNKIND CORP | NOTE 3.750%12/1 | 56400PAA | 0 | 1000 PRN | SHARED | 10 | 1000 | |
| D | MANNKIND CORP | COM | 56400P20 | 8 | 1006 SH | SHARED | | 1006 | |
| D | MANNKIND CORP | COM | 56400P20 | 181 | 22767 SH | SHR/OTHR | 01 | | 22767 |
| D | MANNKIND CORP | COM | 56400P20 | 110 | 13929 SH | SHARED | 02 | 13929 | |
| D | MANNKIND CORP | COM | 56400P20 | 229 | 28861 SH | SHARED | 10 | 28861 | |
| D | MANPOWER INC | COM | 56418H10 | 3679 | 64674 SH | SHARED | | 64674 | |
| D | MANPOWER INC | COM | 56418H10 | 2001 | 35175 SH | SHARED | 01 | 9475 | 25700 |
| D | MANPOWER INC | COM | 56418H10 | 3023 | 53143 SH | SHARED | 02 | 53143 | |
| D | MANPOWER INC | COM | 56418H10 | 70 | 1240 SH | SHARED | 06 | | 1240 |
| D | MANPOWER INC | COM | 56418H10 | 8768 | 154100 SH | SHARED | 10 | 154100 | |
| D | MANPOWER INC | COM | 56418H10 | 417 | 7342 SH | SHARED | 14 | | 7342 |
| D | MANPOWER INC | COM | 56418H10 | 113 | 2000 SH | SHARED | 23 | 2000 | |
| D | MANTECH INTL CORP | CL A | 56456310 | 18771 | 428376 SH | SHARED | | 428376 | |
| D | MANTECH INTL CORP | CL A | 56456310 | 30 | 700 SH | SHARED | 01 | 700 | |
| D | MANTECH INTL CORP | CL A | 56456310 | 69 | 1575 SH | SHARED | 02 | 1575 | |
| D | MANTECH INTL CORP | CL A | 56456310 | 3360 | 76700 SH | SHARED | 10 | 76700 | |
| D | MANULIFE FINL CORP | COM | 56501R10 | 10888 | 267212 SH | SHARED | | 262412 | 4800 |
| D | MANULIFE FINL CORP | COM | 56501R10 | 213 | 5230 SH | SHARED | 01 | 2230 | 3000 |
| D | MANULIFE FINL CORP | COM | 56501R10 | 407 | 10000 SH | SHARED | 04 | 10000 | |
| D | MANULIFE FINL CORP | COM | 56501R10 | 27 | 674 SH | SHARED | 05 | 674 | |
| D | MANULIFE FINL CORP | COM | 56501R10 | 268 | 6582 SH | SHARED | 06 | | 6582 |
| D | MANULIFE FINL CORP | COM | 56501R10 | 2709 | 66500 SH | SHARED | 10 | 66500 | |
| D | MANULIFE FINL CORP | COM | 56501R10 | 1395 | 34243 SH | SHARED | 14 | | 34243 |
| D | MANULIFE FINL CORP | COM | 56501R10 | 27 | 682 SH | SHARED | 20 | | 682 |
| D | MANULIFE FINL CORP | COM | 56501R10 | 46 | 1150 SH | SHR/OTHR | 20 | | 1150 |
| D | MANULIFE FINL CORP | COM | 56501R10 | 27 | 680 SH | SHARED | 21 | 680 | |
| D | MANULIFE FINL CORP | COM | 56501R10 | 743 | 18240 SH | SHARED | 23 | 18240 | |
| D | MAP PHARMACEUTICALS INC | COM | 56509810 | 1405 | 80275 SH | SHARED | | 80275 | |
| D | MARATHON ACQUISITION CORP | COM | 56575610 | 1962 | 252313 SH | SHARED | | 252313 | |
| D | MARATHON ACQUISITION CORP | *W EXP 08/24/201 | 56575611 | 24 | 16836 SH | SHARED | | 16836 | |
| D | MARATHON OIL CORP | COM | 56584910 | 1217 | 20000 SH | SHARED | | | 20000 |
| D | MARATHON OIL CORP | COM | 56584910 | 179523 | 2949771 SH | SHARED | | 2894271 | 55500 |
| D | MARATHON OIL CORP | COM | 56584910 | 6084 | 99976 SH | SHARED | 01 | 98276 | 1700 |
| D | MARATHON OIL CORP | COM | 56584910 | 36 | 600 SH | SHR/OTHR | 01 | | 600 |
| D | MARATHON OIL CORP | COM | 56584910 | 8324 | 136780 SH | SHARED | 02 | 136780 | |
| D | MARATHON OIL CORP | COM | 56584910 | 8 | 135 SH | SHARED | 04 | | 135 |
| D | MARATHON OIL CORP | COM | 56584910 | 91465 | 1502889 SH | SHARED | 04 | 1502889 | |
| D | MARATHON OIL CORP | COM | 56584910 | 18 | 310 SH | SHARED | 05 | 310 | |
| D | MARATHON OIL CORP | COM | 56584910 | 37098 | 609563 SH | SHARED | 06 | | 609563 |
| D | MARATHON OIL CORP | COM | 56584910 | 93484 | 1536063 SH | SHARED | 10 | 1368163 | 167900 |
| D | MARATHON OIL CORP | COM | 56584910 | 2712 | 44568 SH | SHARED | 14 | | 44568 |
| D | MARATHON OIL CORP | COM | 56584910 | 57 | 950 SH | SHARED | 20 | 700 | 250 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D MARATHON OIL CORP | COM | 56584910 | 176 | 2894 SH | SHARED | 21 | 2410 | 484 |
| D MARATHON OIL CORP | COM | 56584910 | 60 | 1000 SH | SHARED | 23 | 1000 | |
| D MARATHON OIL CORP | COM | 56584910 | 293 | 4820 SH | SHR/OTHR | 23 | | 4820 |
| D MARATHON OIL CORP | COM | 56584910 | 1746 | 28700 SH | SHARED | 24 | 28700 | |
| D MARCHEX INC | CL B | 56624R10 | 0 | 64 SH | SHARED | | | 64 |
| D MARCHEX INC | CL B | 56624R10 | 52 | 4800 SH | SHARED | 02 | 4800 | |
| D MARCHEX INC | CL B | 56624R10 | 43 | 4000 SH | SHARED | 22 | | 4000 |
| D MARCUS CORP | COM | 56633010 | 16 | 1093 SH | SHARED | | 1093 | |
| D MARCUS CORP | COM | 56633010 | 16 | 1075 SH | SHARED | 01 | 1075 | |
| D MARINEMAX INC | COM | 56790810 | 906 | 58515 SH | SHARED | | 58515 | |
| D MARINE PRODS CORP | COM | 56842710 | 0 | 80 SH | SHARED | | 80 | |
| D MARINER ENERGY INC | COM | 56845T30 | 452 | 19759 SH | SHARED | | 19759 | |
| D MARINER ENERGY INC | COM | 56845T30 | 1773 | 77530 SH | SHARED | 01 | 73430 | 4100 |
| D MARINER ENERGY INC | COM | 56845T30 | 1333 | 58300 SH | SHR/OTHR | 01 | | 58300 |
| D MARINER ENERGY INC | COM | 56845T30 | 2978 | 130200 SH | SHARED | 10 | 130200 | |
| D MARKEL CORP | COM | 57053510 | 55 | 113 SH | SHARED | | 113 | |
| D MARKEL CORP | COM | 57053510 | 49 | 100 SH | SHARED | 01 | 100 | |
| D MARKEL CORP | COM | 57053510 | 12 | 25 SH | SHARED | 02 | 25 | |
| D MARKEL CORP | COM | 57053510 | 505 | 1030 SH | SHARED | 10 | 1030 | |
| D MARKEL CORP | COM | 57053510 | 1178 | 2400 SH | SHARED | 23 | | 2400 |
| D MARKETAXESS HLDGS INC | COM | 57060D10 | 0 | 77 SH | SHARED | | 77 | |
| D MARKET VECTORS ETF TR | GOLD MINER ETF | 57060U10 | 1493 | 32587 SH | SHARED | | 32587 | |
| D MARKET VECTORS ETF TR | GOLD MINER ETF | 57060U10 | 4663 | 101750 SH | SHARED | 02 | 101750 | |
| D MARKET VECTORS ETF TR | GOLD MINER ETF | 57060U10 | 160 | 3500 SH | SHARED | 23 | | 3500 |
| D MARKET VECTORS ETF TR | MV STEEL INDEX | 57060U30 | 8 | 103 SH | SHARED | 02 | 103 | |
| D MARKET VECTORS ETF TR | RUSSIA ETF | 57060U50 | 940 | 18470 SH | SHARED | | 18470 | |
| D MARKET VECTORS ETF TR | RUSSIA ETF | 57060U50 | 5129 | 100700 SH | SHARED | 02 | 100700 | |
| D MARKWEST ENERGY PARTNERS L P | UNIT LTD PARTN | 57075910 | 58733 | 1738713 SH | SHARED | | 1738713 | |
| D MARKWEST HYDROCARBON INC | COM | 57076210 | 0 | 14 SH | SHARED | | 14 | |
| D MARKWEST HYDROCARBON INC | COM | 57076210 | 56 | 900 SH | SHARED | 10 | 900 | |
| D MARLIN BUSINESS SVCS CORP | COM | 57115710 | 6 | 569 SH | SHARED | | 569 | |
| D MARLIN BUSINESS SVCS CORP | COM | 57115710 | 2287 | 189684 SH | SHARED | 02 | 189684 | |
| D MARSH & MCLENNAN COS INC | COM | 57174810 | 150 | 5680 SH | SHARED | | 5680 | |
| D MARSH & MCLENNAN COS INC | COM | 57174810 | 33897 | 1280600 SH | SHARED | | 1280600 | |
| D MARSH & MCLENNAN COS INC | COM | 57174810 | 1786 | 67507 SH | SHARED | 01 | 67507 | |
| D MARSH & MCLENNAN COS INC | COM | 57174810 | 12 | 465 SH | SHR/OTHR | 01 | | 465 |
| D MARSH & MCLENNAN COS INC | COM | 57174810 | 12615 | 476597 SH | SHARED | 02 | 476597 | |
| D MARSH & MCLENNAN COS INC | COM | 57174810 | 5 | 190 SH | SHARED | 05 | 190 | |
| D MARSH & MCLENNAN COS INC | COM | 57174810 | 122 | 4610 SH | SHARED | 06 | | 4610 |
| D MARSH & MCLENNAN COS INC | COM | 57174810 | 5882 | 222245 SH | SHARED | 10 | 222245 | |
| D MARSH & MCLENNAN COS INC | COM | 57174810 | 26 | 1000 SH | SHARED | 23 | 1000 | |
| D MARSH & MCLENNAN COS INC | COM | 57174810 | 172 | 6500 SH | SHR/OTHR | 23 | | 6500 |
| D MARSHALL & ILSLEY CORP NEW | COM | 57183710 | 13608 | 513931 SH | SHARED | | 513931 | |
| D MARSHALL & ILSLEY CORP NEW | COM | 57183710 | 771 | 29145 SH | SHARED | 01 | 26045 | 3100 |
| D MARSHALL & ILSLEY CORP NEW | COM | 57183710 | 416 | 15739 SH | SHARED | 02 | 15739 | |
| D MARSHALL & ILSLEY CORP NEW | COM | 57183710 | 113 | 4299 SH | SHARED | 06 | | 4299 |
| D MARSHALL & ILSLEY CORP NEW | COM | 57183710 | 3920 | 148052 SH | SHARED | 10 | 148052 | |
| D MARSHALL & ILSLEY CORP NEW | COM | 57183710 | 95 | 3597 SH | SHARED | 14 | | 3597 |
| D MARSHALL & ILSLEY CORP NEW | COM | 57183710 | 40 | 1540 SH | SHARED | 20 | | 1540 |
| D MARSHALL & ILSLEY CORP NEW | COM | 57183710 | 23 | 900 SH | SHARED | 20 | | 900 |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 16111 | 471383 SH | SHARED | | 471383 | |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 20031 | 586060 SH | SHARED | 01 | 154264 | 431796 |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 94903 | 2776585 SH | SHARED | 01 | | 2776585 |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 190 | 5583 SH | SHARED | 02 | 5583 | |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 170 | 5000 SH | SHARED | 04 | 5000 | |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 6 | 200 SH | SHARED | 05 | 200 | |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 133 | 3920 SH | SHARED | 06 | | 3920 |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 9098 | 266204 SH | SHARED | 10 | 266204 | |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 276 | 8080 SH | SHARED | 20 | 3845 | 4235 |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 683 | 20000 SH | SHR/OTHR | 20 | | 20000 |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 46 | 1374 SH | SHARED | 21 | 1374 | |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 54 | 1600 SH | SHR/OTHR | 21 | | 1600 |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 555 | 16263 SH | SHARED | 22 | 13388 | 2875 |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 74 | 2180 SH | SHR/OTHR | 22 | | 2180 |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 2050 | 59984 SH | SHARED | 23 | 55014 | 4970 |
| D MARRIOTT INTL INC NEW | CL A | 57190320 | 1266 | 37045 SH | SHR/OTHR | 23 | | 37045 |
| D MARTEK BIOSCIENCES CORP | COM | 57290110 | 399 | 13520 SH | SHARED | | 13520 | |
| D MARTEK BIOSCIENCES CORP | COM | 57290110 | 112 | 3800 SH | SHARED | 01 | | 3800 |
| D MARTEK BIOSCIENCES CORP | COM | 57290110 | 1183 | 40000 SH | SHARED | 04 | 40000 | |
| D MARTEK BIOSCIENCES CORP | COM | 57290110 | 454 | 15358 SH | SHARED | 10 | 15358 | |
| D MARTEN TRANS LTD | COM | 57307510 | 148 | 10653 SH | SHARED | | 10653 | |
| D MARTEN TRANS LTD | COM | 57307510 | 33 | 2400 SH | SHARED | 01 | 2400 | |
| D MARTEN TRANS LTD | COM | 57307510 | 496 | 35600 SH | SHARED | 10 | 35600 | |
| D MARTHA STEWART LIVING OMNIME | CL A | 57308310 | 3010 | 324714 SH | SHARED | | 324714 | |
| D MARTHA STEWART LIVING OMNIME | CL A | 57308310 | 15 | 1700 SH | SHARED | 02 | 1700 | |
| D MARTHA STEWART LIVING OMNIME | CL A | 57308310 | 11 | 1200 SH | SHARED | 10 | 1200 | |
| D MARTIN MARIETTA MATLS INC | COM | 57328410 | 89594 | 675675 SH | SHARED | | 675675 | |
| D MARTIN MARIETTA MATLS INC | COM | 57328410 | 2751 | 20751 SH | SHARED | 01 | 6751 | 14000 |
| D MARTIN MARIETTA MATLS INC | COM | 57328410 | 53 | 400 SH | SHARED | 01 | | 400 |
| D MARTIN MARIETTA MATLS INC | COM | 57328410 | 7635 | 57586 SH | SHARED | 02 | 57586 | |
| D MARTIN MARIETTA MATLS INC | COM | 57328410 | 5 | 40 SH | SHARED | 05 | 40 | |
| D MARTIN MARIETTA MATLS INC | COM | 57328410 | 59 | 450 SH | SHARED | 06 | | 450 |
| D MARTIN MARIETTA MATLS INC | COM | 57328410 | 18654 | 140680 SH | SHARED | 10 | 110480 | 30200 |
| D MARTIN MARIETTA MATLS INC | COM | 57328410 | 13 | 100 SH | SHARED | 21 | | 100 |
| D MARTIN MARIETTA MATLS INC | COM | 57328410 | 1312 | 9900 SH | SHARED | 24 | 9900 | |
| D MARTIN MIDSTREAM PRTNRS L P | UNIT L P INT | 57333110 | 18108 | 510109 SH | SHARED | | 510109 | |
| D MARVEL ENTERTAINMENT INC | COM | 57383T10 | 328 | 12306 SH | SHARED | | 12306 | |
| D MARVEL ENTERTAINMENT INC | COM | 57383T10 | 73 | 2750 SH | SHARED | 02 | 2750 | |
| D MARVEL ENTERTAINMENT INC | COM | 57383T10 | 1909 | 71502 SH | SHARED | | 71502 | |
| D MARVEL ENTERTAINMENT INC | COM | 57383T10 | 11 | 420 SH | SHR/OTHR | 23 | | 420 |
| D MASCO CORP | COM | 57459910 | 22913 | 1060327 SH | SHARED | | 1060327 | |
| D MASCO CORP | COM | 57459910 | 854 | 39531 SH | SHARED | 01 | 39531 | |
| D MASCO CORP | COM | 57459910 | 531 | 24586 SH | SHARED | 02 | 24586 | |
| D MASCO CORP | COM | 57459910 | 6 | 300 SH | SHARED | 05 | 300 | |
| D MASCO CORP | COM | 57459910 | 78 | 3640 SH | SHARED | 06 | | 3640 |
| D MASCO CORP | COM | 57459910 | 4492 | 207881 SH | SHARED | 10 | 207881 | |
| D MASCO CORP | COM | 57459910 | 179 | 8324 SH | SHARED | 14 | | 8324 |
| D MASCO CORP | COM | 57459910 | 4 | 220 SH | SHARED | 21 | | 220 |
| D MASCO CORP | COM | 57459910 | 41 | 1920 SH | SHARED | 22 | | 1920 |
| D MASCO CORP | COM | 57459910 | 198 | 9200 SH | SHARED | 23 | 9200 | |
| D MASCO CORP | COM | 57459910 | 47 | 2195 SH | SHR/OTHR | 23 | | 2195 |
| D MASISA S A NEW | SPONSORED ADR | 57480010 | 5 | 500 SH | SHARED | | 500 | |
| D MASSBANK CORP READ MASS | COM | 57615210 | 8 | 225 SH | SHARED | | 225 | |
| D MASSBANK CORP READ MASS | COM | 57615210 | 14 | 399 SH | SHARED | 23 | 399 | |
| D MASSEY ENERGY CORP | COM | 57620610 | 6397 | 178942 SH | SHARED | | 178942 | |
| D MASSEY ENERGY CORP | COM | 57620610 | 284 | 7969 SH | SHARED | 01 | 7969 | |
| D MASSEY ENERGY CORP | COM | 57620610 | 903 | 25259 SH | SHARED | 02 | 25259 | |
| D MASSEY ENERGY CORP | COM | 57620610 | 340 | 9537 SH | SHARED | 10 | 6337 | 3200 |
| D MASSEY ENERGY CORP | COM | 57620610 | 303 | 8500 SH | SHARED | 14 | | 8500 |
| D MASTEC INC | COM | 57632310 | 287 | 28315 SH | SHARED | | 28315 | |
| D MASTEC INC | COM | 57632310 | 235 | 23135 SH | SHARED | 01 | 23135 | |
| D MASTEC INC | COM | 57632310 | 1037 | 102000 SH | SHARED | 10 | 102000 | |
| D MASTERCARD INC | CL A | 57636Q10 | 473264 | 2199186 SH | SHARED | | 2199186 | |
| D MASTERCARD INC | CL A | 57636Q10 | 667 | 3100 SH | SHARED | 01 | 2600 | 500 |

```
D MASTERCARD INC                 CL A          57636Q10    214646  997426 SH   SHARED   02     997426
D MASTERCARD INC                 CL A          57636Q10      4312   20040 SH   SHARED   05      20040
D MASTERCARD INC                 CL A          57636Q10       161     750 SH   SHARED   06               750
D MASTERCARD INC                 CL A          57636Q10     23949  111290 SH   SHARED   10     111290
D MASTERCARD INC                 CL A          57636Q10       139     649 SH   SHARED   21               649
D MATERIAL SCIENCES CORP         COM           57667410         2     332 SH   SHARED                    332
D MATHSTAR INC                   COM           57680120        95  146685 SH   SHARED          146685
D MATRIA HEALTHCARE INC          COM NEW       57681720         7     321 SH   SHARED                    321
D MATRIA HEALTHCARE INC          COM NEW       57681720        54    2300 SH   SHARED   02       2300
D MATRIA HEALTHCARE INC          COM NEW       57681720        33    1425 SH   SHARED   21       1425
D MATRIXX INITIATIVES INC        COM           57685L10         3     264 SH   SHARED                    264
D MATRIX SVC CO                  COM           57685310       105    4852 SH   SHARED                   4852
D MATRIX SVC CO                  COM           57685310      1244   57015 SH   SHARED   01      56715              300
D MATRIX SVC CO                  COM           57685310      1200   55000 SH   SHR/OTHR 01              55000
D MATRIX SVC CO                  COM           57685310      5519  252950 SH   SHARED   10     252950
D MATSUSHITA ELEC INDL           ADR           57687920       386   18898 SH   SHARED          18898
D MATSUSHITA ELEC INDL           ADR           57687920         5     256 SH   SHARED   21               256
D MATTEL INC                     COM           57708110       104    5500 SH   SHARED                   5500
D MATTEL INC                     COM           57708110     34585 1816461 SH   SHARED         1287361            529100
D MATTEL INC                     COM           57708110      1947  102310 SH   SHARED   01     102310
D MATTEL INC                     COM           57708110       444   23357 SH   SHARED   02      23357
D MATTEL INC                     COM           57708110         5     300 SH   SHARED   05        300
D MATTEL INC                     COM           57708110       109    5770 SH   SHARED   06                   5770
D MATTEL INC                     COM           57708110    426604 2237637 SH   SHARED   10    1927737            309900
D MATTEL INC                     COM           57708110       281   14800 SH   SHARED   15      14800
D MATTEL INC                     COM           57708110        42    2220 SH   SHARED   21       1500                720
D MATTEL INC                     COM           57708110       353   18550 SH   SHR/OTHR 23                       18550
D MATTEL INC                     COM           57708110       544   28600 SH   SHARED   24      28600
D MATTHEWS INTL CORP             CL A          57712810       192    4109 SH   SHARED                   4109
D MATTHEWS INTL CORP             CL A          57712810       458    9775 SH   SHARED   01        175               9600
D MATTHEWS INTL CORP             CL A          57712810        82    1767 SH   SHARED   15       1767
D MATTHEWS INTL CORP             CL A          57712810       276    5900 SH   SHARED   10       5900
D MATTSON TECHNOLOGY INC         COM           57722310       227   26622 SH   SHARED          26622
D MATTSON TECHNOLOGY INC         COM           57722310        17    2050 SH   SHARED   01       2050
D MAXTOR CORP                    NOTE  6.800% 4/3 577729AC 22360 20000000 PRN  SHARED         0000000
D MAXCOM TELECOMUNICACIONES SA   ADR REP PR CTF 57773A50        64    5050 SH   SHARED                              5050
D MAXCOM TELECOMUNICACIONES SA   ADR REP PR CTF 57773A50       289   22800 SH   SHARED   01      22800
D MAXCOM TELECOMUNICACIONES SA   ADR REP PR CTF 57773A50      1271  100000 SH   SHARED   02     100000
D MAXCOM TELECOMUNICACIONES SA   ADR REP PR CTF 57773A50      1528  120250 SH   SHARED   04     120250
D MAXCOM TELECOMUNICACIONES SA   ADR REP PR CTF 57773A50     10276  808500 SH   SHARED   10     808500
D MAXCOM TELECOMUNICACIONES SA   ADR REP PR CTF 57773A50       179   14100 SH   SHARED   24      14100
D MAXUS RLTY TR INC              COM           57774B10         0      28 SH   SHARED                     28
D MAXWELL TECHNOLOGIES INC       COM           57767610         3     481 SH   SHARED                    481
D MAXYGEN INC                    COM           57777610       540   67360 SH   SHARED          67360
D MAXYGEN INC                    COM           57777610        52    6600 SH   SHARED   10       6600
D MAX & ERMAS RESTAURANTS INC    COM           57791310         0      37 SH   SHARED                     37
D MAXXAM INC                     COM           57791310         1      62 SH   SHARED                     62
D MAXIMUS INC                    COM           57793310       206    5358 SH   SHARED                   5358
D MAXIMUS INC                    COM           57793310        27     700 SH   SHARED   01        700
D MAXIMUS INC                    COM           57793310        68    1775 SH   SHARED   02       1775
D MAXIMUS INC                    COM           57793310      1119   29000 SH   SHARED   10      29000
D MAYFLOWER BANCORP INC          COM           57832110         0      51 SH   SHARED                     51
D MBT FINL CORP                  COM           57887710         5     619 SH   SHARED                    619
D MCAFEE INC                     COM           57906410      3949  105318 SH   SHARED         105318
D MCAFEE INC                     COM           57906410      1843   49157 SH   SHARED   01       1882              47275
D MCAFEE INC                     COM           57906410      2881   76843 SH   SHARED   02      76843
D MCAFEE INC                     COM           57906410        37    1000 SH   SHARED   06                   1000
D MCAFEE INC                     COM           57906410      1045   27884 SH   SHARED   10      27884
D MCAFEE INC                     COM           57906410       768   20500 SH   SHARED   14                  20500
D MCCLATCHY CO                   CL A          57948910     15090 1205323 SH   SHARED        1205323
D MCCLATCHY CO                   CL A          57948910       263   21036 SH   SHARED   02      21036
D MCCLATCHY CO                   CL A          57948910       118    9500 SH   SHARED   10       9500
D MCCLATCHY CO                   CL A          57948910         7     600 SH   SHARED   14                    600
D MCCLATCHY CO                   CL A          57948910         6     511 SH   SHR/OTHR 23                        511
D MCCORMICK & CO INC             COM NON VTG   57978020     23180  611462 SH   SHARED         611462
D MCCORMICK & CO INC             COM NON VTG   57978020       533   14080 SH   SHARED   01      14080
D MCCORMICK & CO INC             COM NON VTG   57978020       496   13107 SH   SHARED   02      13107
D MCCORMICK & CO INC             COM NON VTG   57978020      1727   45580 SH   SHARED   06                  45580
D MCCORMICK & CO INC             COM NON VTG   57978020      6007  158464 SH   SHARED   10     143664              14800
D MCCORMICK & CO INC             COM NON VTG   57978020       193    5100 SH   SHARED   14                   5100
D MCCORMICK & SCHMICKS SEAFD R   COM           57979310        77    6503 SH   SHARED                   6503
D MCCORMICK & SCHMICKS SEAFD R   COM           57979310        19    1600 SH   SHARED   01       1600
D MCCORMICK & SCHMICKS SEAFD R   COM           57979310       796   66800 SH   SHARED   10      66800
D MCDATA CORP                    NOTE  2.250% 2/1 580031AD 1061 1114000 PRN  SHARED        1114000
D MCDATA CORP                    NOTE  2.250% 2/1 580031AD  372  391000 PRN  SHARED         391000
D MCDERMOTT INTL INC             COM           58003710      5063   85773 SH   SHARED          85773
D MCDERMOTT INTL INC             COM           58003710       450    7640 SH   SHARED   01       7640
D MCDERMOTT INTL INC             COM           58003710        17     300 SH   SHR/OTHR 01                    300
D MCDERMOTT INTL INC             COM           58003710        84    1425 SH   SHARED   02       1425
D MCDERMOTT INTL INC             COM           58003710       123    2100 SH   SHARED   06                   2100
D MCDERMOTT INTL INC             COM           58003710     20283  343620 SH   SHARED   10     343120                500
D MCDERMOTT INTL INC             COM           58003710       339    5758 SH   SHARED   14       5758
D MCDERMOTT INTL INC             COM           58003710       321    5450 SH   SHARED   21       5450
D MCDERMOTT INTL INC             COM           58003710       519    8800 SH   SHR/OTHR 23       8800
D MCDONALDS CORP                 COM           58013510      3502   59458 SH   SHARED          46024              13434
D MCDONALDS CORP                 COM           58013510    222599 3778640 SH   SHARED        3722690             55950
D MCDONALDS CORP                 COM           58013510     27917  473896 SH   SHARED   01     386088              87808
D MCDONALDS CORP                 COM           58013510      5153   87478 SH   SHR/OTHR 01              87478
D MCDONALDS CORP                 COM           58013510     35475  602200 SH   SHARED   02     602200
D MCDONALDS CORP                 COM           58013510       831   14111 SH   SHARED   04                  14111
D MCDONALDS CORP                 COM           58013510      5784   98190 SH   SHARED   04      98190
D MCDONALDS CORP                 COM           58013510     15347  260520 SH   SHARED   05     260520
D MCDONALDS CORP                 COM           58013510     31954  542430 SH   SHARED   06                 542430
D MCDONALDS CORP                 COM           58013510    194290 3298085 SH   SHARED   10    3206670             91415
D MCDONALDS CORP                 COM           58013510       366    6216 SH   SHR/OTHR 10       6216
D MCDONALDS CORP                 COM           58013510       630   10704 SH   SHARED   14      10704
D MCDONALDS CORP                 COM           58013510      4418   75000 SH   SHARED   18      75000
D MCDONALDS CORP                 COM           58013510      6248  106063 SH   SHARED   19     106063
D MCDONALDS CORP                 COM           58013510      5032   85431 SH   SHARED   20      56280              29151
D MCDONALDS CORP                 COM           58013510      2104   35723 SH   SHR/OTHR 20      35723
D MCDONALDS CORP                 COM           58013510     11154   19605 SH   SHARED   21      15614               3991
D MCDONALDS CORP                 COM           58013510       954   16200 SH   SHR/OTHR 21      16200
D MCDONALDS CORP                 COM           58013510      1423   24167 SH   SHARED   22      16477               7690
D MCDONALDS CORP                 COM           58013510       140    2377 SH   SHR/OTHR 22       2377
D MCDONALDS CORP                 COM           58013510      3280   55685 SH   SHARED   23      51870               3815
D MCDONALDS CORP                 COM           58013510      7736  131327 SH   SHR/OTHR 23                       131327
D MCDONALDS CORP                 COM           58013510       117    2000 SH   SHARED   24       2000
D MCF CORP                       COM NEW       58039530         1     297 SH   SHARED                    297
D MCG CAPITAL CORP               COM           58047P10     12092 1043373 SH   SHARED        1043373
D MCG CAPITAL CORP               COM           58047P10        96    8300 SH   SHARED   02       8300
D MCG CAPITAL CORP               COM           58047P10      3847  331950 SH   SHARED   10     331950
D MCGRATH RENTCORP               COM           58058910       178    6947 SH   SHARED                   6947
D MCGRATH RENTCORP               COM           58058910        77    3025 SH   SHARED   01       3025
D MCGRATH RENTCORP               COM           58058910       445   17300 SH   SHARED   02      17300
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | MCGRATH RENTCORP | COM | 58058910 | 345 | 13400 SH | SHARED | 10 | 13400 | | |
| D | MCGRATH RENTCORP | COM | 58058910 | 33 | 1305 SH | SHARED | 21 | | 1305 | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 25510 | 582307 SH | SHARED | | 582307 | | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 6584 | 150304 SH | SHARED | 01 | 63857 | 86447 | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 5653 | 129038 SH | SHR/OTHR | 01 | | 129038 | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 507 | 11580 SH | SHARED | 02 | 11580 | | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 8 | 190 SH | SHARED | 05 | 190 | | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 147 | 3370 SH | SHARED | 06 | | 3370 | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 56380 | 1286938 SH | SHARED | 10 | 1252588 | 34350 | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 828 | 18913 SH | SHARED | 14 | | 18913 | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 4691 | 107083 SH | SHARED | 20 | 30870 | 76213 | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 2186 | 49900 SH | SHR/OTHR | 20 | | 49900 | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 741 | 16925 SH | SHARED | 21 | 14425 | 2500 | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 21 | 500 SH | SHR/OTHR | 21 | | 500 | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 33336 | 760940 SH | SHARED | 22 | 569644 | 191296 | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 883 | 20175 SH | SHARED | 22 | | 20175 | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 9187 | 209716 SH | SHARED | 23 | 204326 | 5390 | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 142111 | 3243821 SH | SHR/OTHR | 23 | | 3243821 | |
| D | MCGRAW HILL COS INC | COM | 58064510 | 46 | 1066 SH | SHARED | 24 | 1066 | | |
| D | MCKESSON CORP | COM | 58155Q10 | 69052 | 1054078 SH | SHARED | | 991178 | 62900 | |
| D | MCKESSON CORP | COM | 58155Q10 | 3868 | 59052 SH | SHARED | 01 | 54700 | 4352 | |
| D | MCKESSON CORP | COM | 58155Q10 | 1753 | 26761 SH | SHARED | 02 | 26761 | | |
| D | MCKESSON CORP | COM | 58155Q10 | 8418 | 128500 SH | SHARED | 04 | 128500 | | |
| D | MCKESSON CORP | COM | 58155Q10 | 9 | 148 SH | SHARED | 05 | 148 | | |
| D | MCKESSON CORP | COM | 58155Q10 | 182 | 2790 SH | SHARED | 06 | | 2790 | |
| D | MCKESSON CORP | COM | 58155Q10 | 66586 | 1016430 SH | SHARED | 10 | 943930 | 72500 | |
| D | MCKESSON CORP | COM | 58155Q10 | 2088 | 31876 SH | SHARED | 14 | 3300 | 28576 | |
| D | MCKESSON CORP | COM | 58155Q10 | 4449 | 67928 SH | SHARED | 16 | 67928 | | |
| D | MCKESSON CORP | COM | 58155Q10 | 7 | 120 SH | SHARED | 21 | | 120 | |
| D | MCMORAN EXPLORATION CO | COM | 58241110 | 140 | 10702 SH | SHARED | | 10702 | | |
| D | MCMORAN EXPLORATION CO | COM | 58241110 | 34 | 2600 SH | SHARED | 01 | 2600 | | |
| D | MCMORAN EXPLORATION CO | COM | 58241110 | 10 | 825 SH | SHARED | 02 | 825 | | |
| D | MCMORAN EXPLORATION CO | COM | 58241110 | 125 | 9600 SH | SHARED | 10 | 9600 | | |
| D | MCMORAN EXPLORATION CO | PFD MAND CNV | 58241150 | 3048 | 30000 SH | SHARED | | 30000 | | |
| D | MEADE INSTRUMENTS CORP | COM | 58306210 | 0 | 436 SH | SHARED | | 436 | | |
| D | MEADOW VY CORP | COM | 58318510 | 15 | 1184 SH | SHARED | | 1184 | | |
| D | MEADOWBROOK INS GROUP INC | COM | 58319P10 | 116 | 12401 SH | SHARED | | 12401 | | |
| D | MEADOWBROOK INS GROUP INC | COM | 58319P10 | 1 | 171 SH | SHARED | 02 | 171 | | |
| D | MEADOWBROOK INS GROUP INC | COM | 58319P10 | 263 | 28000 SH | SHARED | 10 | 28000 | | |
| D | MEADOWBROOK INS GROUP INC | COM | 58319P10 | 16 | 1765 SH | SHARED | 22 | 1765 | | |
| D | MEADWESTVACO CORP | COM | 58333410 | 14553 | 464976 SH | SHARED | | 464976 | | |
| D | MEADWESTVACO CORP | COM | 58333410 | 845 | 27023 SH | SHARED | 01 | 26296 | 727 | |
| D | MEADWESTVACO CORP | COM | 58333410 | 583 | 18648 SH | SHARED | 02 | 18648 | | |
| D | MEADWESTVACO CORP | COM | 58333410 | 9 | 316 SH | SHARED | 04 | | 316 | |
| D | MEADWESTVACO CORP | COM | 58333410 | 6 | 200 SH | SHARED | 05 | 200 | | |
| D | MEADWESTVACO CORP | COM | 58333410 | 62 | 2010 SH | SHARED | 06 | | 2010 | |
| D | MEADWESTVACO CORP | COM | 58333410 | 2639 | 84339 SH | SHARED | 10 | 84339 | | |
| D | MEADWESTVACO CORP | COM | 58333410 | 68 | 2193 SH | SHR/OTHR | 23 | | 2193 | |
| D | MEASUREMENT SPECIALTIES INC | COM | 58342110 | 2 | 117 SH | SHARED | | 117 | | |
| D | MECHANICAL TECHNOLOGY INC | COM | 58353810 | 0 | 991 SH | SHARED | | 991 | | |
| D | MECHEL OAO | SPONSORED ADR | 58384010 | 2574 | 26500 SH | SHARED | | | 26500 | |
| D | MECHEL OAO | SPONSORED ADR | 58384010 | 2456 | 25291 SH | SHARED | | 25291 | | |
| D | MECHEL OAO | SPONSORED ADR | 58384010 | 43713 | 450000 SH | SHARED | 04 | 450000 | | |
| D | MECHEL OAO | SPONSORED ADR | 58384010 | 21856 | 225000 SH | SHARED | 05 | 225000 | | |
| D | MEDAREX INC | COM | 58391610 | 3055 | 293187 SH | SHARED | | 293187 | | |
| D | MEDAREX INC | COM | 58391610 | 141 | 13580 SH | SHARED | 01 | 13580 | | |
| D | MEDAREX INC | COM | 58391610 | 81 | 7796 SH | SHARED | 02 | 7796 | | |
| D | MEDAREX INC | COM | 58391610 | 1448 | 139000 SH | SHARED | 04 | 139000 | | |
| D | MEDAREX INC | COM | 58391610 | 758 | 72800 SH | SHARED | 10 | 72800 | | |
| D | MEDAREX INC | COM | 58391610 | 35 | 3359 SH | SHARED | 21 | 3359 | | |
| D | MEDALLION FINL CORP | COM | 58392810 | 5 | 508 SH | SHARED | | 508 | | |
| D | MEDALLION FINL CORP | COM | 58392810 | 10 | 1000 SH | SHR/OTHR | 23 | | 1000 | |
| D | MEDCATH CORP | COM | 58404W10 | 119 | 4873 SH | SHARED | | 4873 | | |
| D | MEDCATH CORP | COM | 58404W10 | 27 | 1100 SH | SHARED | 01 | 1100 | | |
| D | MEDCATH CORP | COM | 58404W10 | 628 | 25600 SH | SHARED | 10 | 25600 | | |
| D | MEDASSETS INC | COM | 58404510 | 8 | 347 SH | SHARED | | 347 | | |
| D | MEDASSETS INC | COM | 58404510 | 64 | 2700 SH | SHARED | 02 | 2200 | 500 | |
| D | MEDASSETS INC | COM | 58404510 | 2676 | 111800 SH | SHARED | 04 | 111800 | | |
| D | MEDASSETS INC | COM | 58404510 | 258 | 10800 SH | SHARED | 06 | | 10800 | |
| D | MEDASSETS INC | COM | 58404510 | 258 | 10800 SH | SHARED | 10 | 10800 | | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | -2199 | -21694 SH | SHARED | | -21694 | | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | 44976 | 443559 SH | SHARED | | 407494 | 36065 | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | 5884 | 58034 SH | SHARED | 01 | 51193 | 6841 | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | 59 | 589 SH | SHR/OTHR | 01 | | 589 | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | 6088 | 60049 SH | SHARED | 02 | 60049 | | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | 5556 | 54800 SH | SHARED | 04 | 54800 | | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | 15 | 155 SH | SHARED | 05 | 155 | | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | 263 | 2603 SH | SHARED | 06 | | 2603 | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | 111840 | 1102964 SH | SHARED | 10 | 1098364 | 4600 | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | 252 | 2491 SH | SHARED | 14 | 1241 | 1250 | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | 2 | 24 SH | SHARED | 19 | | 24 | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | 110 | 1085 SH | SHARED | 20 | | 1085 | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | 2 | 24 SH | SHARED | 21 | 24 | | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | 260 | 2571 SH | SHARED | 22 | 2161 | 410 | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | 2147 | 21176 SH | SHARED | 23 | 18038 | 3138 | |
| D | MEDCO HEALTH SOLUTIONS INC | COM | 58405U10 | 2761 | 27238 SH | SHR/OTHR | 23 | | 27238 | |
| D | MEDECISION INC | COM | 58406P10 | 0 | 198 SH | SHARED | | 198 | | |
| D | MEDECISION INC | COM | 58406P10 | 1899 | 657421 SH | SHARED | 04 | 657421 | | |
| D | MEDIA & ENTMT HOLDINGS INC | COM | 58439W10 | 7305 | 988586 SH | SHARED | | 988586 | | |
| D | MEDIA & ENTMT HOLDINGS INC | *W EXP 03/09/201 | 58439W11 | 5 | 8417 SH | SHARED | | 8417 | | |
| D | MEDIA & ENTMT HOLDINGS INC | UNIT 99/99/9999 | 58439W20 | 21 | 2623 SH | SHARED | | 2623 | | |
| D | MEDIA GEN INC | CL A | 58440410 | 42453 | 1997816 SH | SHARED | | 1997816 | | |
| D | MEDIA GEN INC | CL A | 58440410 | 116 | 5500 SH | SHARED | 01 | | 5500 | |
| D | MEDIA GEN INC | CL A | 58440410 | 22 | 1062 SH | SHARED | 02 | 1062 | | |
| D | MEDIA GEN INC | CL A | 58440410 | 554 | 26100 SH | SHARED | 10 | 26100 | | |
| D | MEDIA GEN INC | CL A | 58440410 | 21 | 1000 SH | SHARED | 23 | | 1000 | |
| D | MEDIALINK WORLDWIDE INC | COM | 58445P10 | 0 | 157 SH | SHARED | | 157 | | |
| D | MEDIACOM COMMUNICATIONS CORP | CL A | 58446K10 | 201 | 43895 SH | SHARED | | 43895 | | |
| D | MEDIACOM COMMUNICATIONS CORP | CL A | 58446K10 | 23 | 5200 SH | SHARED | 01 | 5200 | | |
| D | MEDIACOM COMMUNICATIONS CORP | CL A | 58446K10 | 14 | 3150 SH | SHARED | 02 | 3150 | | |
| D | MEDIACOM COMMUNICATIONS CORP | CL A | 58446K10 | 427 | 93100 SH | SHARED | 10 | 93100 | | |
| D | MEDIA SCIENCES INTL INC | COM | 58446X10 | 1 | 244 SH | SHARED | | 244 | | |
| D | MEDIA SCIENCES INTL INC | COM | 58446X10 | 86 | 20000 SH | SHR/OTHR | 01 | | 20000 | |
| D | MEDICAL ACTION INDS INC | COM | 58449L10 | 16 | 776 SH | SHARED | | 776 | | |
| D | MEDICAL ACTION INDS INC | COM | 58449L10 | 34 | 1669 SH | SHARED | 21 | | 1669 | |
| D | MEDICAL STAFFING NETWK HLDGS | COM | 58463F10 | 14 | 2384 SH | SHARED | | 2384 | | |
| D | MEDICAL PPTYS TRUST INC | COM | 58463J30 | 56 | 5526 SH | SHARED | | 5526 | | |
| D | MEDICAL PPTYS TRUST INC | COM | 58463J30 | 212 | 20900 SH | SHARED | 10 | 20900 | | |
| D | MEDICAL PPTYS TRUST INC | COM | 58463J30 | 10 | 1000 SH | SHARED | 20 | 1000 | | |
| D | MEDICINOVA INC | COM NEW | 58468810 | 2 | 251 SH | SHARED | | 251 | | |
| D | MEDICINES CO | COM | 58468810 | 51 | 2690 SH | SHARED | | 2690 | | |
| D | MEDICINES CO | COM | 58468810 | 159 | 8300 SH | SHARED | | 8300 | | |
| D | MEDICINES CO | COM | 58468810 | 41 | 2175 SH | SHARED | 01 | 2175 | | |
| D | MEDICINES CO | COM | 58468810 | 21 | 1140 SH | SHARED | 21 | 1140 | | |

```
D MEDICIS PHARMACEUTICAL CORP    NOTE  1.500% 6/0 584690AB    6797  6922000 PRN    SHARED         6922000
D MEDICIS PHARMACEUTICAL CORP    NOTE  1.500% 6/0 584690AB    2753  2804000 PRN    SHARED     02  2804000
D MEDICIS PHARMACEUTICAL CORP    CL A NEW         58469030    1487    57267 SH     SHARED           57267
D MEDICIS PHARMACEUTICAL CORP    CL A NEW         58469030     755    29100 SH     SHARED     01    13000            16100
D MEDICIS PHARMACEUTICAL CORP    CL A NEW         58469030     486    18725 SH     SHARED     01    18725
D MEDICIS PHARMACEUTICAL CORP    CL A NEW         58469030    1018    39200 SH     SHARED     10    39200
D MEDICIS PHARMACEUTICAL CORP    CL A NEW         58469030    1155    44500 SH     SHARED     14    44500            44500
D MEDIFAST INC                   COM              58470010       7     1517 SH     SHARED            1517
D MEDICIS PHARMACEUTICAL CORP    NOTE  2.500% 6/0 58470KAA   15007 14500000 PRN    SHARED     02  4500000
D MEDIWARE INFORMATION SYS INC   COM              58494610       1      152 SH     SHARED             152
D MEDTOX SCIENTIFIC INC          COM NEW          58497720      10      588 SH     SHARED             588
D MEDIS TECHNOLOGIES LTD         COM              585010P10    8323   539426 SH    SHARED          539426
D MEDIVATION INC                 COM              58501NL0    5032   349490 SH     SHARED          349490
D MEDIVATION INC                 COM              58501NL10     27     1900 SH     SHARED     10     1900
D MEDTRONIC INC                  NOTE  1.500% 4/1 585055AL   21233 19900000 PRN    SHARED         9900000
D MEDTRONIC INC                  NOTE  1.500% 4/1 585055AL   42840 40150000 PRN    SHARED     04  0150000
D MEDTRONIC INC                  NOTE  1.625% 4/1 585055AM    1387  1300000 PRN    SHARED         1300000
D MEDTRONIC INC                  COM              58505510      47      950 SH     SHARED             950
D MEDTRONIC INC                  COM              58505510  553066 11001914 SH     SHARED          0980814           21100
D MEDTRONIC INC                  COM              58505510   10481   208498 SH     SHARED     01   161102           47396
D MEDTRONIC INC                  COM              58505510    1992    39637 SH     SHR/OTHR   01                    39637
D MEDTRONIC INC                  COM              58505510   16568   329588 SH     SHARED     02   329588
D MEDTRONIC INC                  COM              58505510  263230  5236325 SH     SHARED     04  5236325
D MEDTRONIC INC                  COM              58505510      25      500 SH     SHARED     05      500
D MEDTRONIC INC                  COM              58505510     553    11002 SH     SHARED     06                    11002
D MEDTRONIC INC                  COM              58505510  103071  2050348 SH     SHARED     10  1985548           64800
D MEDTRONIC INC                  COM              58505510      34      684 SH     SHR/OTHR   10                      684
D MEDTRONIC INC                  COM              58505510    3069    61063 SH     SHARED     14    51200            9863
D MEDTRONIC INC                  COM              58505510    6132   122000 SH     SHARED     15                   122000
D MEDTRONIC INC                  COM              58505510    1859    37000 SH     SHARED     16    37000
D MEDTRONIC INC                  COM              58505510      67     1350 SH     SHARED     19                     1350
D MEDTRONIC INC                  COM              58505510    1470    29255 SH     SHARED     20     5895           23360
D MEDTRONIC INC                  COM              58505510    1758    34975 SH     SHR/OTHR   20                    34975
D MEDTRONIC INC                  COM              58505510    1064    21170 SH     SHARED     21    15170            6000
D MEDTRONIC INC                  COM              58505510     252     5030 SH     SHARED     21              5030
D MEDTRONIC INC                  COM              58505510     133     2650 SH     SHARED     22             2650              1400
D MEDTRONIC INC                  COM              58505510     121     2424 SH     SHR/OTHR   22                     2424
D MEDTRONIC INC                  COM              58505510    2316    46080 SH     SHARED     23    41400            4680
D MEDTRONIC INC                  COM              58505510    5175   102960 SH     SHR/OTHR   23                   102960
D MEDTRONIC INC                  COM              58505510      94     1870 SH     SHARED     24                     1870
D MELCO PBL ENTMNT LTD           ADR              58546410     464    40191 SH     SHARED           40191
D MELCO PBL ENTMNT LTD           ADR              58546410     529    45835 SH     SHARED     02    45835
D MELCO PBL ENTMNT LTD           ADR              58546410    3633   314280 SH     SHARED     10   314280
D MEMORY PHARMACEUTICALS CORP    COM              58606R40       2     4615 SH     SHARED            4615
D MEMRY CORP                     COM NEW          58626320       0      654 SH     SHARED             654
D MENS WEARHOUSE INC             COM              58711810     617    22900 SH     SHARED           22900
D MENS WEARHOUSE INC             COM              58711810      35     1300 SH     SHARED     01     1300
D MENS WEARHOUSE INC             COM              58711810   22396   830100 SH     SHARED     10   830100
D MENS WEARHOUSE INC             COM              58711810      32     1204 SH     SHARED     21                     1204
D MENTOR CORP MINN               NOTE  2.750% 1/0 58718BAC     693   500000 PRN    SHARED          500000
D MENTOR CORP MINN               COM              58718810     607    15547 SH     SHARED           15547
D MENTOR CORP MINN               COM              58718810       7      200 SH     SHARED     01                      200
D MENTOR CORP MINN               COM              58718810      71     1825 SH     SHARED     02             1825
D MENTOR CORP MINN               COM              58718810    1462    37400 SH     SHARED     10    37400
D MENTOR GRAPHICS CORP           FRNT          8/0 587200AD    3033  3000000 PRN    SHARED         3000000
D MENTOR GRAPHICS CORP           SDCV  6.250% 3/0 587200AF   10100 10000000 PRN    SHARED         0000000
D MENTOR GRAPHICS CORP           SDCV  6.250% 3/0 587200AF      25    25000 PRN    SHARED     02    25000
D MENTOR GRAPHICS CORP           COM              58720010    2947   273442 SH     SHARED          273442
D MENTOR GRAPHICS CORP           COM              58720010     299    27800 SH     SHARED     01                    27800
D MENTOR GRAPHICS CORP           COM              58720010     101     9425 SH     SHARED     02     9425
D MENTOR GRAPHICS CORP           COM              58720010     210    19500 SH     SHARED     10    19500
D MERCADOLIBRE INC               COM              58733R10     384     5204 SH     SHARED            5204
D MERCADOLIBRE INC               COM              58733R10     339     4600 SH     SHARED     01     4600
D MERCANTILE BANCORP INC ILL     COM              58734P10       2      169 SH     SHARED             169
D MERCANTILE BANK CORP           COM              58737610     103     6647 SH     SHARED            6647
D MERCANTILE BANK CORP           COM              58737610       0       17 SH     SHARED     02       17
D MERCANTILE BANK CORP           COM              58737610       0        1 SH     SHARED     10        1
D MERCER INS GROUP INC           COM              58790210      44     2484 SH     SHARED            2484
D MERCER INTL INC                COM              58805610     123    15756 SH     SHARED           15756
D MERCHANTS BANCSHARES           COM              58844810       2      123 SH     SHARED             123
D MERCK & CO INC                 COM              58933110     109     1890 SH     SHARED            1110              780
D MERCK & CO INC                 COM              58933110  368346  6338780 SH     SHARED          6234930          103850
D MERCK & CO INC                 COM              58933110   31007   533605 SH     SHARED     01   308122          225483
D MERCK & CO INC                 COM              58933110    1211    20850 SH     SHARED     01                    20850
D MERCK & CO INC                 COM              58933110   48061   827079 SH     SHR/OTHR   02   827079
D MERCK & CO INC                 COM              58933110     125     2157 SH     SHARED     04             2157
D MERCK & CO INC                 COM              58933110   64999  1118567 SH     SHARED     04  1118567
D MERCK & CO INC                 COM              58933110      54      930 SH     SHARED     05      930
D MERCK & CO INC                 COM              58933110   40700   700410 SH     SHARED     06                   700410
D MERCK & CO INC                 COM              58933110  129883  2235133 SH     SHARED     10  2183933           51200
D MERCK & CO INC                 COM              58933110    2511    43226 SH     SHARED     14     5200           38026
D MERCK & CO INC                 COM              58933110    3685    63417 SH     SHARED     16    63417
D MERCK & CO INC                 COM              58933110      11      200 SH     SHARED     19                      200
D MERCK & CO INC                 COM              58933110    4492    77302 SH     SHARED     20    26327           50975
D MERCK & CO INC                 COM              58933110    6795   116935 SH     SHR/OTHR   20                   116935
D MERCK & CO INC                 COM              58933110     775    13337 SH     SHARED     21    13337
D MERCK & CO INC                 COM              58933110     622    10717 SH     SHARED     22                    10717
D MERCK & CO INC                 COM              58933110      87     1500 SH     SHR/OTHR   22             1500              1500
D MERCK & CO INC                 COM              58933110   17418   299759 SH     SHARED     23   291659            8100
D MERCK & CO INC                 COM              58933110   15361   264353 SH     SHR/OTHR   23                   264353
D MERCURY COMPUTER SYS           NOTE  2.000% 5/0 58979AB    1816  2000000 PRN    SHR/OTHR         2000000
D MERCURY COMPUTER SYS           COM              58937810       0       10 SH     SHARED              10
D MERCURY COMPUTER SYS           COM              58937810       7      461 SH     SHARED     02      461
D MERCURY GENL CORP NEW          COM              58940010    1004    20166 SH     SHARED           20166
D MERCURY GENL CORP NEW          COM              58940010     244     4900 SH     SHARED     01                     4900
D MERCURY GENL CORP NEW          COM              58940010     214     4309 SH     SHARED     02     4309
D MERCURY GENL CORP NEW          COM              58940010     568    11417 SH     SHARED     10    11417
D MEREDITH CORP                  COM              58943310    2612    47517 SH     SHARED           47517
D MEREDITH CORP                  COM              58943310     675    12294 SH     SHARED     01     9294            3000
D MEREDITH CORP                  COM              58943310     167     3039 SH     SHARED     02     3039
D MEREDITH CORP                  COM              58943310    5533   100639 SH     SHARED     10   100639
D MEREDITH CORP                  COM              58943310      12      220 SH     SHARED     21      220
D MEREDITH CORP                  COM              58943310      87     1596 SH     SHR/OTHR   23                     1596
D MERIDIAN BIOSCIENCE INC        COM              58958410     102     3394 SH     SHARED            3394
D MERIDIAN BIOSCIENCE INC        COM              58958410      39     1300 SH     SHARED     01     1300
D MERIDIAN RESOURCE CORP         COM              58977Q10      55    30400 SH     SHARED           30400
D MERIDIAN RESOURCE CORP         COM              58977Q10       3     1967 SH     SHARED     02     1967
D MERIT MED SYS INC              COM              58988910       7      527 SH     SHARED             527
D MERIDIAN GOLD INC              COM              58997510    1290    36350 SH     SHARED           36350
D MERGE TECHNOLOGIES INC         COM              58998110       0      826 SH     SHARED             826
D MERITAGE HOMES CORP            COM              59001A10     243    16702 SH     SHARED           16702
D MERITAGE HOMES CORP            COM              59001A10     138     9525 SH     SHARED     02     9525
D MERITAGE HOMES CORP            COM              59001A10     144     9900 SH     SHARED     10     9900
D MERITAGE HOMES CORP            COM              59001A10      14     1027 SH     SHARED     21     1027
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D MERIX CORP | COM | | 59004910 | 221 | 47735 SH | | SHARED | | 47735 | |
| D MERRILL LYNCH & CO INC | NOTE | 3/1 | 590188W4 | 10052 | 9299000 PRN | | SHARED | | 9299000 | |
| D MERRILL LYNCH & CO INC | NOTE | 3/1 | 590188W4 | 16805 | 15546000 PRN | | SHARED | 02 | 5546000 | |
| D MERRILL LYNCH & CO INC | NOTE | 3/1 | 590188W4 | 48645 | 45000000 PRN | | SHARED | 04 | 5000000 | |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 216 | 4036 SH | | SHARED | | 3500 | 536 |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 133164 | 2480702 SH | | SHARED | | 2154947 | 325755 |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 10016 | 186591 SH | | SHARED | 01 | 151853 | 34738 |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 1001 | 18655 SH | | SHR/OTHR | 01 | | 18655 |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 846 | 15772 SH | | SHARED | 02 | 15772 | |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 5206 | 97000 SH | | SHARED | 04 | 97000 | |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 18 | 350 SH | | SHARED | 05 | 350 | |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 3186 | 59358 SH | | SHARED | 06 | | 59358 |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 82245 | 1532138 SH | | SHARED | 10 | 1325938 | 206200 |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 2270 | 42292 SH | | SHARED | 14 | 42292 | |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 391 | 7300 SH | | SHARED | 15 | 7300 | |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 223 | 4160 SH | | SHARED | 20 | 2090 | 2070 |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 123 | 2300 SH | | SHR/OTHR | 20 | | 2300 |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 1817 | 33863 SH | | SHARED | 21 | 33638 | 225 |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 96 | 1800 SH | | SHARED | 21 | | 1800 |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 194 | 3627 SH | | SHARED | 22 | 2927 | 700 |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 37 | 695 SH | | SHR/OTHR | 22 | | 695 |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 1810 | 33722 SH | | SHARED | 23 | 33122 | 600 |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 1035 | 19297 SH | | SHR/OTHR | 23 | | 19297 |
| D MERRILL LYNCH & CO INC | COM | | 59018810 | 880 | 16400 SH | | SHARED | 24 | 16400 | |
| D MERRIMAC INDS INC | COM | | 59026210 | 0 | 44 SH | | SHARED | | 44 | |
| D MERUELO MADDUX PROPERTIES IN | COM | | 59047310 | 106 | 26700 SH | | SHARED | 10 | 26700 | |
| D MESA AIR GROUP INC | COM | | 59047910 | 9 | 3025 SH | | SHARED | | 3025 | |
| D MESA LABS INC | COM | | 59064810 | 1 | 73 SH | | SHARED | | 73 | |
| D MESABI TR | CTF BEN INT | | 59067210 | 12 | 606 SH | | SHARED | | 606 | |
| D MET PRO CORP | COM | | 59087630 | 4 | 389 SH | | SHARED | | 389 | |
| D META FINL GROUP INC | COM | | 59100010 | 2 | 52 SH | | SHARED | | 52 | |
| D METABASIS THERAPEUTICS INC | COM | | 59101M10 | 224 | 74944 SH | | SHARED | | 74944 | |
| D METABASIS INC | COM | | 59101880 | 5 | 234 SH | | SHARED | | 234 | |
| D METABOLIX INC | COM | | 59101880 | 3462 | 145500 SH | | SHARED | 10 | 145500 | |
| D METAL MGMT INC | COM NEW | | 59109720 | 138 | 3052 SH | | SHARED | | 3052 | |
| D METAL MGMT INC | COM NEW | | 59109720 | 6087 | 133700 SH | | SHARED | 10 | 133700 | |
| D METALICO INC | COM | | 59117610 | 63 | 5832 SH | | SHARED | | 5832 | |
| D METALICO INC | COM | | 59117610 | 28 | 2600 SH | | SHARED | 02 | 2600 | |
| D METALLICA RES INC | COM | | 59125J10 | 2452 | 450000 SH | | SHARED | 04 | 450000 | |
| D METALLICA RES INC | COM | | 59125J10 | 7123 | 1307000 SH | | SHARED | 10 | 1307000 | |
| D METALLINE MINING INC | COM | | 59125710 | 71 | 30007 SH | | SHARED | | 30007 | |
| D METAVANTE TECHNOLOGIES INC | COM | | 59140710 | 5164 | 221442 SH | | SHARED | | 221442 | |
| D METAVANTE TECHNOLOGIES INC | COM | | 59140710 | 850 | 36490 SH | | SHARED | 01 | 8248 | 28242 |
| D METAVANTE TECHNOLOGIES INC | COM | | 59140710 | 108 | 4638 SH | | SHARED | 02 | 4638 | |
| D METAVANTE TECHNOLOGIES INC | COM | | 59140710 | 73 | 3166 SH | | SHARED | 10 | 3166 | |
| D METAVANTE TECHNOLOGIES INC | COM | | 59140710 | 0 | 1 SH | | SHARED | 14 | | 1 |
| D METAVANTE TECHNOLOGIES INC | COM | | 59140710 | 11 | 513 SH | | SHARED | 20 | | 513 |
| D METAVANTE TECHNOLOGIES INC | COM | | 59140710 | 6 | 300 SH | | SHR/OTHR | 21 | | 300 |
| D METAVANTE TECHNOLOGIES INC | COM | | 59140710 | 8 | 360 SH | | SHARED | 21 | | 360 |
| D METHANEX CORP | COM | | 59151K10 | 2415 | 87521 SH | | SHARED | | 87521 | |
| D METHANEX CORP | COM | | 59151K10 | 5 | 200 SH | | SHARED | 01 | 200 | |
| D METHANEX CORP | COM | | 59151K10 | 309 | 11200 SH | | SHARED | 14 | | 11200 |
| D METHODE ELECTRS INC | COM | | 59152020 | 1145 | 69703 SH | | SHARED | | 69703 | |
| D METHODE ELECTRS INC | COM | | 59152020 | 20 | 1275 SH | | SHARED | 01 | 1275 | |
| D METHODE ELECTRS INC | COM | | 59152020 | 146 | 8900 SH | | SHARED | 02 | 8900 | |
| D METHODE ELECTRS INC | COM | | 59152020 | 292 | 17800 SH | | SHARED | 10 | 17800 | |
| D METLIFE INC | COM | | 59156R10 | 63774 | 1034961 SH | | SHARED | | 978961 | 56000 |
| D METLIFE INC | COM | | 59156R10 | 4593 | 74544 SH | | SHARED | 01 | 74144 | 400 |
| D METLIFE INC | COM | | 59156R10 | 2037 | 33070 SH | | SHARED | 02 | 28360 | 4710 |
| D METLIFE INC | COM | | 59156R10 | 369 | 6000 SH | | SHARED | 04 | 6000 | |
| D METLIFE INC | COM | | 59156R10 | 2150 | 34900 SH | | SHARED | 05 | 34900 | |
| D METLIFE INC | COM | | 59156R10 | 21178 | 343700 SH | | SHARED | 06 | | 343700 |
| D METLIFE INC | COM | | 59156R10 | 110051 | 1785973 SH | | SHARED | 10 | 1779473 | 6500 |
| D METLIFE INC | COM | | 59156R10 | 285 | 4632 SH | | SHARED | 14 | | 4632 |
| D METLIFE INC | COM | | 59156R10 | 3081 | 50000 SH | | SHARED | 15 | 50000 | |
| D METLIFE INC | COM | | 59156R10 | 9 | 148 SH | | SHARED | 21 | | 148 |
| D METRO ONE TELECOMMUNICATIONS | OM NEW | | 59163F20 | 0 | 132 SH | | SHARED | | 132 | |
| D METROCORP BANCSHARES INC | COM | | 59165010 | 147 | 11363 SH | | SHARED | | 11363 | |
| D METROPCS COMMUNICATIONS INC | COM | | 59170810 | 363 | 18708 SH | | SHARED | | 18708 | |
| D METROPCS COMMUNICATIONS INC | COM | | 59170810 | 5380 | 276625 SH | | SHARED | 02 | 276625 | |
| D METROPCS COMMUNICATIONS INC | COM | | 59170810 | 270 | 13900 SH | | SHARED | 10 | 13900 | |
| D METROPOLITAN HEALTH NETWORKS | COM | | 59214210 | 2 | 1030 SH | | SHARED | | 1030 | |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 370 | 3260 SH | | SHARED | | 3260 | |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 595 | 5234 SH | | SHARED | | 5234 | |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 7745 | 68060 SH | | SHARED | 01 | 47680 | 20380 |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 1593 | 14004 SH | | SHR/OTHR | 01 | | 14004 |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 147 | 1300 SH | | SHARED | 02 | 1300 | |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 13 | 118 SH | | SHARED | 04 | | 118 |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 1138 | 10000 SH | | SHARED | 04 | 10000 | |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 64741 | 568910 SH | | SHARED | 10 | 550000 | 18910 |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 3113 | 27360 SH | | SHARED | 20 | 20470 | 6890 |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 641 | 5640 SH | | SHR/OTHR | 20 | | 5640 |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 56 | 500 SH | | SHR/OTHR | 21 | | 500 |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 643 | 5653 SH | | SHARED | 22 | 4000 | 1653 |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 44 | 393 SH | | SHR/OTHR | 22 | | 393 |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 1045 | 9190 SH | | SHARED | 23 | 8830 | 360 |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 608 | 5350 SH | | SHR/OTHR | 23 | | 5350 |
| D METTLER TOLEDO INTERNATIONAL | COM | | 59268810 | 68 | 600 SH | | SHARED | 24 | 600 | |
| D MEXCO ENERGY CORP | COM | | 59277010 | 0 | 20 SH | | SHARED | | 20 | |
| D MEXICAN RESTAURANTS INC | COM | | 59283510 | 0 | 34 SH | | SHARED | | 34 | |
| D MEXICO FD INC | COM | | 59283510 | 19307 | 550078 SH | | SHARED | | 550078 | |
| D MEXICO FD INC | COM | | 59283510 | 26 | 747 SH | | SHARED | 20 | 747 | |
| D MICREL INC | COM | | 59479310 | 794 | 93985 SH | | SHARED | | 93985 | |
| D MICREL INC | COM | | 59479310 | 24 | 2900 SH | | SHARED | 01 | 2900 | |
| D MICREL INC | COM | | 59479310 | 447 | 53000 SH | | SHARED | 10 | 53000 | |
| D MICROS SYS INC | COM | | 59490110 | 210 | 3000 SH | | SHARED | | 3000 | |
| D MICROS SYS INC | COM | | 59490110 | 718 | 10243 SH | | SHARED | | 10243 | |
| D MICROS SYS INC | COM | | 59490110 | 122 | 1750 SH | | SHARED | 01 | 1750 | |
| D MICROS SYS INC | COM | | 59490110 | 56 | 800 SH | | SHARED | 02 | 800 | |
| D MICROS SYS INC | COM | | 59490110 | 905 | 12900 SH | | SHARED | 10 | 12900 | |
| D MICROS SYS INC | COM | | 59490110 | 40 | 583 SH | | SHARED | 11 | | 583 |
| D MICROSOFT CORP | COM | | 59491810 | 9716 | 272940 SH | | SHARED | | 249105 | 23835 |
| D MICROSOFT CORP | COM | | 59491810 | 764187 | 21465952 SH | | SHARED | | 0666064 | 799890 |
| D MICROSOFT CORP | COM | | 59491810 | 58429 | 1641278 SH | | SHARED | 01 | 1072907 | 568371 |
| D MICROSOFT CORP | COM | | 59491810 | 22872 | 642491 SH | | SHR/OTHR | 01 | | 642491 |
| D MICROSOFT CORP | COM | | 59491810 | 442885 | 12440606 SH | | SHARED | 02 | 2440606 | |
| D MICROSOFT CORP | COM | | 59491810 | 1274 | 35801 SH | | SHARED | 04 | | 35801 |
| D MICROSOFT CORP | COM | | 59491810 | 309186 | 8685000 SH | | SHARED | 04 | 8685000 | |
| D MICROSOFT CORP | COM | | 59491810 | 2979 | 83680 SH | | SHARED | 05 | 83680 | |
| D MICROSOFT CORP | COM | | 59491810 | 55133 | 1548689 SH | | SHARED | 06 | | 1548689 |
| D MICROSOFT CORP | COM | | 59491810 | 678637 | 19062848 SH | | SHARED | 10 | 8567536 | 495300 |
| D MICROSOFT CORP | COM | | 59491810 | 10682 | 300067 SH | | SHARED | 14 | 48500 | 251567 |
| D MICROSOFT CORP | COM | | 59491810 | 249 | 7000 SH | | SHARED | 15 | | 7000 |
| D MICROSOFT CORP | COM | | 59491810 | 7841 | 220259 SH | | SHARED | 16 | 220259 | |

| D | Issuer | Class | CUSIP | Value | Shares/Prin | Disc | Mgr | Sole | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|
| D | MICROSOFT CORP | COM | 59491810 | 8606 | 241745 SH | SHARED | 19 | | | 241745 |
| D | MICROSOFT CORP | COM | 59491810 | 12911 | 362680 SH | SHARED | 20 | 149155 | | 213525 |
| D | MICROSOFT CORP | COM | 59491810 | 9244 | 259666 SH | SHR/OTHR | 20 | | | 259666 |
| D | MICROSOFT CORP | COM | 59491810 | 3916 | 110000 SH | SHARED | 21 | 89498 | | 20502 |
| D | MICROSOFT CORP | COM | 59491810 | 719 | 20200 SH | SHR/OTHR | 21 | | | 20200 |
| D | MICROSOFT CORP | COM | 59491810 | 3202 | 89953 SH | SHARED | 22 | 66849 | | 23104 |
| D | MICROSOFT CORP | COM | 59491810 | 1425 | 40042 SH | SHR/OTHR | 22 | | | 40042 |
| D | MICROSOFT CORP | COM | 59491810 | 14924 | 419216 SH | SHARED | 23 | 383366 | | 35852 |
| D | MICROSOFT CORP | COM | 59491810 | 19596 | 550450 SH | SHR/OTHR | 23 | | | 550450 |
| D | MICROSOFT CORP | COM | 59491810 | 689 | 19371 SH | SHARED | 24 | 19371 | | |
| D | MICROVISION INC DEL | COM | 59496010 | 210 | 54073 SH | SHARED | | 54073 | | |
| D | MICROVISION INC DEL | COM | 59496010 | 30 | 7700 SH | SHARED | 02 | 7700 | | |
| D | MICROSTRATEGY INC | CL A NEW | 59497240 | 752 | 7915 SH | SHARED | | 7915 | | |
| D | MICROSTRATEGY INC | CL A NEW | 59497240 | 432 | 4550 SH | SHARED | 01 | 4550 | | |
| D | MICROSTRATEGY INC | CL A NEW | 59497240 | 57 | 600 SH | SHARED | 02 | 600 | | |
| D | MICROSTRATEGY INC | CL A NEW | 59497240 | 589 | 6200 SH | SHARED | 10 | 6200 | | |
| D | MICROSTRATEGY INC | CL A NEW | 59497240 | 29 | 310 SH | SHARED | 21 | 310 | | |
| D | MICROCHIP TECHNOLOGY INC | COM | 59501710 | 6466 | 205816 SH | SHARED | | 205816 | | |
| D | MICROCHIP TECHNOLOGY INC | COM | 59501710 | 612 | 19500 SH | SHARED | 01 | 19500 | | |
| D | MICROCHIP TECHNOLOGY INC | COM | 59501710 | 78 | 2500 SH | SHR/OTHR | 01 | | | 2500 |
| D | MICROCHIP TECHNOLOGY INC | COM | 59501710 | 100 | 3187 SH | SHARED | 02 | 3187 | | |
| D | MICROCHIP TECHNOLOGY INC | COM | 59501710 | 66 | 2110 SH | SHARED | 06 | | | 2110 |
| D | MICROCHIP TECHNOLOGY INC | COM | 59501710 | 19257 | 612900 SH | SHARED | 10 | 612900 | | |
| D | MICROFINANCIAL INC | COM | 59507210 | 1 | 248 SH | SHARED | | 248 | | |
| D | MICROMET INC | COM | 59509C10 | 1 | 684 SH | SHARED | | 684 | | |
| D | MICRON TECHNOLOGY INC | NOTE 1.875% 6/0 | 595112AD | 79 | 100000 PRN | SHARED | 02 | | | 100000 |
| D | MICRON TECHNOLOGY INC | COM | 59511210 | 9347 | 1289290 SH | SHARED | | 1289290 | | |
| D | MICRON TECHNOLOGY INC | COM | 59511210 | 422 | 58300 SH | SHARED | 01 | 57900 | | 400 |
| D | MICRON TECHNOLOGY INC | COM | 59511210 | 7897 | 1089370 SH | SHARED | 02 | 1089370 | | |
| D | MICRON TECHNOLOGY INC | COM | 59511210 | 3 | 550 SH | SHARED | 05 | | | 550 |
| D | MICRON TECHNOLOGY INC | COM | 59511210 | 43 | 5980 SH | SHARED | 06 | | | 5980 |
| D | MICRON TECHNOLOGY INC | COM | 59511210 | 2667 | 367983 SH | SHARED | 10 | 367983 | | |
| D | MICRON TECHNOLOGY INC | COM | 59511210 | 114 | 15800 SH | SHARED | 14 | | | 15800 |
| D | MICRONETICS INC DEL | COM | 59512510 | 3 | 416 SH | SHARED | | 416 | | |
| D | MICROSEMI CORP | COM | 59513710 | 228 | 10300 SH | SHARED | | 10300 | | |
| D | MICROSEMI CORP | COM | 59513710 | 325 | 14700 SH | SHARED | 01 | 14700 | | |
| D | MICROSEMI CORP | COM | 59513710 | 182 | 8248 SH | SHARED | 10 | 8248 | | |
| D | MICROSEMI CORP | COM | 59513710 | 41 | 1853 SH | SHARED | 21 | | | 1853 |
| D | MICROTUNE INC DEL | COM | 59514P10 | 1267 | 194147 SH | SHARED | | 194147 | | |
| D | MICROTUNE INC DEL | COM | 59514P10 | 1306 | 200145 SH | SHARED | 01 | | | 200145 |
| D | MICROTUNE INC DEL | COM | 59514P10 | 180 | 27650 SH | SHR/OTHR | 01 | | | 27650 |
| D | MID-AMER APT CMNTYS INC | COM | 59522210 | 1179 | 27583 SH | SHARED | | 27583 | | |
| D | MID-AMER APT CMNTYS INC | COM | 59522210 | 64 | 1500 SH | SHARED | 01 | 1500 | | |
| D | MID-AMER APT CMNTYS INC | COM | 59522210 | 607 | 14200 SH | SHARED | 10 | 14200 | | |
| D | MID PENN BANCORP INC | COM | 59540G10 | 2 | 90 SH | SHARED | | 90 | | |
| D | MIDAS GROUP INC | COM | 59562610 | 49 | 3370 SH | SHARED | | 3370 | | |
| D | MIDCAP SPDR TR | UNIT SER 1 | 59563510 | 15 | 1025 SH | SHARED | 02 | 1025 | | |
| D | MIDCAP SPDR TR | UNIT SER 1 | 59563510 | 453357 | 2923001 SH | SHARED | | 2923001 | | |
| D | MIDCAP SPDR TR | UNIT SER 1 | 59563510 | 23536 | 151752 SH | SHARED | 01 | 151752 | | |
| D | MIDCAP SPDR TR | UNIT SER 1 | 59563510 | 67626 | 436019 SH | SHARED | 10 | 436019 | | |
| D | MIDCAP SPDR TR | UNIT SER 1 | 59563510 | 5495 | 35430 SH | SHARED | 20 | 24360 | | 11070 |
| D | MIDCAP SPDR TR | UNIT SER 1 | 59563510 | 39 | 255 SH | SHR/OTHR | 22 | | | 255 |
| D | MIDCAP SPDR TR | UNIT SER 1 | 59563510 | 397 | 2560 SH | SHARED | 23 | | | 2560 |
| D | MIDDLEBROOK PHARMACEUTICAL I | COM | 59608710 | 0 | 673 SH | SHARED | | | | 673 |
| D | MIDDLEBURG FINANCIAL CORP | COM | 59609410 | 2 | 106 SH | SHARED | | 106 | | |
| D | MIDDLEBY CORP | COM | 59627810 | 334 | 4372 SH | SHARED | | 4372 | | |
| D | MIDDLEBY CORP | COM | 59627810 | 168 | 2200 SH | SHARED | 01 | 2200 | | |
| D | MIDDLEBY CORP | COM | 59627810 | 207 | 2708 SH | SHARED | 02 | 2708 | | |
| D | MIDDLESEX WATER CO | COM | 59668010 | 6 | 324 SH | SHARED | | 324 | | |
| D | MIDDLESEX WATER CO | COM | 59668010 | 3 | 200 SH | SHARED | 01 | 200 | | |
| D | MIDDLESEX WATER CO | COM | 59668010 | 30 | 1600 SH | SHARED | 02 | 1600 | | |
| D | MIDDLESEX WATER CO | COM | 59668010 | 131 | 6934 SH | SHARED | 22 | | | 6934 |
| D | MIDLAND CO | COM | 59748610 | 26 | 414 SH | SHARED | | 414 | | |
| D | MIDLAND CO | COM | 59748610 | 12 | 200 SH | SHARED | 10 | 200 | | |
| D | MIDWEST AIR GROUP INC | COM | 59791110 | 10328 | 697903 SH | SHARED | | 697903 | | |
| D | MIDSOUTH BANCORP INC | COM | 59803910 | 3 | 137 SH | SHARED | | 137 | | |
| D | MIDWAY GAMES INC | COM | 59814810 | 418 | 151469 SH | SHARED | | 151469 | | |
| D | MIDWAY GAMES INC | COM | 59814810 | 17 | 6250 SH | SHARED | 01 | 6250 | | |
| D | MIDWEST BANC HOLDINGS INC | COM | 59825110 | 0 | 33 SH | SHARED | | 33 | | |
| D | MIDWEST BANC HOLDINGS INC | COM | 59825110 | 108 | 8700 SH | SHARED | 10 | 8700 | | |
| D | MIDWESTONE FINL GROUP INC | COM | 59851010 | 1 | 83 SH | SHARED | | 83 | | |
| D | MILACRON INC | COM NEW | 59870930 | 0 | 145 SH | SHARED | | 145 | | |
| D | MILLENNIUM PHARMACEUTICALS I | NOTE 2.250%11/1 | 599902AD | 11700 | 10000000 PRN | SHARED | | | | 10000000 |
| D | MILLENNIUM PHARMACEUTICALS I | COM | 59990220 | 2539 | 169525 SH | SHARED | | 169525 | | |
| D | MILLENNIUM PHARMACEUTICALS I | COM | 59990220 | 2192 | 146390 SH | SHARED | 01 | 44230 | | 102160 |
| D | MILLENNIUM PHARMACEUTICALS I | COM | 59990220 | 878 | 58637 SH | SHARED | 02 | 58637 | | |
| D | MILLENNIUM PHARMACEUTICALS I | COM | 59990220 | 37 | 2520 SH | SHARED | 06 | | | 2520 |
| D | MILLENNIUM PHARMACEUTICALS I | COM | 59990220 | 2087 | 139368 SH | SHARED | 10 | 139368 | | |
| D | MILLENNIUM BANKSHARES CORP | COM | 60037810 | 0 | 185 SH | SHARED | | 185 | | |
| D | MILLENNIUM CELL INC | COM | 60038B10 | 0 | 1500 SH | SHARED | | 1500 | | |
| D | MILLENNIUM INDIA ACQS COM IN | COM | 60039Q10 | 2213 | 280500 SH | SHARED | | 280500 | | |
| D | MILLER HERMAN INC | COM | 60054410 | 4906 | 151480 SH | SHARED | | 151480 | | |
| D | MILLER HERMAN INC | COM | 60054410 | 702 | 21700 SH | SHARED | 01 | | | 21700 |
| D | MILLER HERMAN INC | COM | 60054410 | 258 | 7980 SH | SHARED | 02 | 7980 | | |
| D | MILLER HERMAN INC | COM | 60054410 | 628 | 19400 SH | SHARED | 10 | 19400 | | |
| D | MILLER INDS INC TENN | COM NEW | 60055120 | 0 | 4 SH | SHARED | | 4 | | |
| D | MILLIPORE CORP | NOTE 3.750% 6/0 | 601073AD | 13400 | 12500000 PRN | SHARED | | | | 12500000 |
| D | MILLIPORE CORP | NOTE 3.750% 6/0 | 601073AD | 214 | 200000 PRN | SHARED | | | | 200000 |
| D | MILLIPORE CORP | NOTE 3.750% 6/0 | 601073AD | 36 | 34000 PRN | SHARED | 14 | | | 34000 |
| D | MILLIPORE CORP | COM | 60107310 | 6674 | 91210 SH | SHARED | | 91210 | | |
| D | MILLIPORE CORP | COM | 60107310 | 618 | 8449 SH | SHARED | 01 | 8449 | | |
| D | MILLIPORE CORP | COM | 60107310 | 271 | 3711 SH | SHARED | 02 | 3711 | | |
| D | MILLIPORE CORP | COM | 60107310 | 21 | 300 SH | SHARED | 05 | | | 300 |
| D | MILLIPORE CORP | COM | 60107310 | 1638 | 22396 SH | SHARED | 10 | 22396 | | |
| D | MINDRAY MEDICAL INTL LTD | SPON ADR | 60267510 | 63 | 1477 SH | SHARED | | 1477 | | |
| D | MINDSPEED TECHNOLOGIES INC | COM | 60268210 | 3 | 2937 SH | SHARED | | 2937 | | |
| D | MINDSPEED TECHNOLOGIES INC | COM | 60268210 | 4 | 3532 SH | SHARED | 01 | 3532 | | |
| D | MINE SAFETY APPLIANCES CO | COM | 60272010 | 261 | 5042 SH | SHARED | | 5042 | | |
| D | MINE SAFETY APPLIANCES CO | COM | 60272010 | 461 | 8900 SH | SHARED | | | | 8900 |
| D | MINE SAFETY APPLIANCES CO | COM | 60272010 | 242 | 4684 SH | SHARED | 02 | 4684 | | |
| D | MINE SAFETY APPLIANCES CO | COM | 60272010 | 430 | 8300 SH | SHARED | 10 | 8300 | | |
| D | MINEFINDERS LTD | COM | 60290010 | 1130 | 100000 SH | SHARED | 04 | 100000 | | |
| D | MINERALS TECHNOLOGIES INC | COM | 60315810 | 524 | 7832 SH | SHARED | | 7832 | | |
| D | MINERALS TECHNOLOGIES INC | COM | 60315810 | 548 | 8200 SH | SHARED | 01 | 2300 | | 5900 |
| D | MINERALS TECHNOLOGIES INC | COM | 60315810 | 81 | 1212 SH | SHARED | 02 | 1212 | | |
| D | MINERALS TECHNOLOGIES INC | COM | 60315810 | 490 | 7325 SH | SHARED | 10 | 7325 | | |
| D | MINES MGMT CO | COM | 60343210 | 8 | 2360 SH | SHARED | | 2360 | | |
| D | MIPS TECHNOLOGIES INC | COM | 60456710 | 2 | 530 SH | SHARED | | 530 | | |
| D | MIPS TECHNOLOGIES INC | COM | 60456710 | 0 | 27 SH | SHARED | 01 | | | 27 |
| D | MIRAMAR MINING CORP | COM | 60466010 | 0 | 83 SH | SHARED | | 83 | | |
| D | MIRANT CORP NEW | COM | 60467R10 | 23888 | 612846 SH | SHARED | | 612846 | | |
| D | MIRANT CORP NEW | COM | 60467R10 | 701 | 18000 SH | SHARED | 01 | 14700 | | 3300 |
| D | MIRANT CORP NEW | COM | 60467R10 | 70 | 1800 SH | SHR/OTHR | 01 | | | 1800 |
| D | MIRANT CORP NEW | COM | 60467R10 | 14233 | 365145 SH | SHARED | 02 | 365145 | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | MIRANT CORP NEW | COM | 60467R10 | 105 | 2700 SH | SHARED | 06 | | 2700 |
| D | MIRANT CORP NEW | COM | 60467R10 | 1710 | 43869 SH | SHARED | 10 | 43869 | |
| D | MIRANT CORP NEW | COM | 60467R10 | 243 | 6259 SH | SHARED | 23 | 1800 | 4459 |
| D | MIRANT CORP NEW | *W EXP 01/03/201 | 60467R11 | 55231 | 3000077 SH | SHARED | | 3000077 | |
| D | MISONIX INC | COM | 60487110 | 0 | 157 SH | SHARED | | | |
| D | MISSION WEST PPTYS INC | COM | 60520310 | 49 | 5200 SH | SHARED | 01 | | 5200 |
| D | MISSION WEST PPTYS INC | COM | 60520310 | 66 | 7000 SH | SHARED | 02 | 7000 | |
| D | MITCHAM INDS INC | COM | 60650110 | 170 | 8275 SH | SHARED | | 8275 | |
| D | MITSUBISHI UFJ FINL GROUP IN | SPONSORED ADR | 60682210 | 959 | 102863 SH | SHARED | | 102863 | |
| D | MITSUBISHI UFJ FINL GROUP IN | SPONSORED ADR | 60682210 | 12 | 1363 SH | SHARED | 01 | 163 | 1200 |
| D | MIZUHO FINL GROUP INC | SPONSORED ADR | 60687710 | 8 | 927 SH | SHARED | | 927 | |
| D | MIZUHO FINL GROUP INC | SPONSORED ADR | 60687710 | 33 | 3530 SH | SHARED | 21 | 3530 | |
| D | MOBILE MINI INC | COM | 60740F10 | 3 | 166 SH | SHARED | | 166 | |
| D | MOBILE MINI INC | COM | 60740F10 | 6 | 350 SH | SHARED | 01 | 350 | |
| D | MOBILE MINI INC | COM | 60740F10 | 7 | 398 SH | SHARED | 10 | 398 | |
| D | MOBILE TELESYSTEMS OJSC | SPONSORED ADR | 60740910 | 3562 | 35000 SH | SHARED | | | 35000 |
| D | MOBILE TELESYSTEMS OJSC | SPONSORED ADR | 60740910 | 48805 | 479473 SH | SHARED | | 463333 | 16140 |
| D | MOBILE TELESYSTEMS OJSC | SPONSORED ADR | 60740910 | 604 | 5940 SH | SHARED | 02 | 5940 | |
| D | MOBILE TELESYSTEMS OJSC | SPONSORED ADR | 60740910 | 143994 | 1414624 SH | SHARED | 04 | 1414624 | |
| D | MOBILE TELESYSTEMS OJSC | SPONSORED ADR | 60740910 | 37662 | 370000 SH | SHARED | 05 | 370000 | |
| D | MOBILE TELESYSTEMS OJSC | SPONSORED ADR | 60740910 | 6310 | 62000 SH | SHARED | 06 | | 62000 |
| D | MOBILITY ELECTRONICS INC | COM | 60741U10 | 1 | 780 SH | SHARED | | 780 | |
| D | MOCON INC | COM | 60749410 | 1 | 135 SH | SHARED | | 135 | |
| D | MOD PAC CORP | COM | 60749510 | 0 | 79 SH | SHARED | | 79 | |
| D | MODINE MFG CO | COM | 60782810 | 15644 | 947586 SH | SHARED | | 947586 | |
| D | MODINE MFG CO | COM | 60782810 | 114 | 6911 SH | SHARED | 02 | 6911 | |
| D | MODINE MFG CO | COM | 60782810 | 160 | 9700 SH | SHARED | 10 | 9700 | |
| D | MODINE MFG CO | COM | 60782810 | 41 | 2500 SH | SHARED | 23 | | 2500 |
| D | MODTECH HLDGS INC | COM | 60783C10 | 0 | 558 SH | SHARED | | 558 | |
| D | MOHAWK INDS INC | COM | 60819010 | 1666 | 22402 SH | SHARED | | 22402 | |
| D | MOHAWK INDS INC | COM | 60819010 | 1268 | 17050 SH | SHARED | 01 | | 16600 |
| D | MOHAWK INDS INC | COM | 60819010 | 229 | 3086 SH | SHARED | 02 | 3086 | |
| D | MOHAWK INDS INC | COM | 60819010 | 19 | 260 SH | SHARED | 06 | | 260 |
| D | MOHAWK INDS INC | COM | 60819010 | 183 | 2462 SH | SHARED | 10 | 2462 | |
| D | MOLDFLOW CORP | COM | 60808710 | 9 | 581 SH | SHARED | | 581 | |
| D | MOLECULAR INSIGHT PHARM INC | COM | 60852M10 | 161 | 17812 SH | SHARED | | 17812 | |
| D | MOLINA HEALTHCARE INC | NOTE 3.750%10/0 | 60855RAA | 11170 | 10000000 PRN | SHARED | | 0000000 | |
| D | MOLINA HEALTHCARE INC | NOTE 3.750%10/0 | 60855RAA | 561 | 503000 PRN | SHARED | 02 | 503000 | |
| D | MOLINA HEALTHCARE INC | COM | 60855R10 | 54457 | 1407172 SH | SHARED | | 1407172 | |
| D | MOLINA HEALTHCARE INC | COM | 60855R10 | 701 | 18125 SH | SHARED | 01 | 18125 | |
| D | MOLINA HEALTHCARE INC | COM | 60855R10 | 816 | 21100 SH | SHARED | 10 | 21100 | |
| D | MOLEX INC | COM | 60855410 | 3939 | 144300 SH | SHARED | | 144300 | |
| D | MOLEX INC | COM | 60855410 | 521 | 19100 SH | SHARED | 01 | 19100 | |
| D | MOLEX INC | COM | 60855410 | 60 | 2201 SH | SHARED | 02 | 2201 | |
| D | MOLEX INC | COM | 60855410 | 2506 | 91803 SH | SHARED | 10 | 91803 | |
| D | MOLEX INC | CL A | 60855420 | 63 | 2320 SH | SHARED | 10 | 2320 | |
| D | MOLEX INC | CL A | 60855420 | 170 | 6500 SH | SHARED | | 6500 | |
| D | MOLEX INC | CL A | 60855420 | 61 | 2342 SH | SHARED | 23 | | 2342 |
| D | MOLSON COORS BREWING CO | NOTE 2.500% 7/3 | 60871RAA | 575400 | 48000000 SH | SHARED | | 48000000 | |
| D | MOLSON COORS BREWING CO | CL B | 60871R20 | 21017 | 407166 SH | SHARED | | 407166 | |
| D | MOLSON COORS BREWING CO | CL B | 60871R20 | 1099 | 21293 SH | SHARED | 01 | 19588 | 1705 |
| D | MOLSON COORS BREWING CO | CL B | 60871R20 | 63 | 1225 SH | SHR/OTHR | 01 | | 1225 |
| D | MOLSON COORS BREWING CO | CL B | 60871R20 | 4269 | 82712 SH | SHARED | 02 | 82712 | |
| D | MOLSON COORS BREWING CO | CL B | 60871R20 | 41 | 800 SH | SHARED | 06 | | 800 |
| D | MOLSON COORS BREWING CO | CL B | 60871R20 | 9146 | 177198 SH | SHARED | 10 | 177198 | |
| D | MOLSON COORS BREWING CO | CL B | 60871R20 | 301 | 5845 SH | SHARED | 14 | | 5845 |
| D | MOLSON COORS BREWING CO | CL B | 60871R20 | 12 | 250 SH | SHARED | 20 | 250 | |
| D | MOLSON COORS BREWING CO | CL B | 60871R20 | 9 | 185 SH | SHR/OTHR | 21 | | 185 |
| D | MOLSON COORS BREWING CO | CL B | 60871R20 | 15 | 300 SH | SHARED | 22 | 300 | |
| D | MOMENTA PHARMACEUTICALS INC | COM | 60877T10 | 76 | 10757 SH | SHARED | | 10757 | |
| D | MONACO COACH CORP | COM | 60886R10 | 81 | 9186 SH | SHARED | | 9186 | |
| D | MONACO COACH CORP | COM | 60886R10 | 25 | 2900 SH | SHARED | 01 | | 2900 |
| D | MONACO COACH CORP | COM | 60886R10 | 196 | 22075 SH | SHARED | 02 | 22075 | |
| D | MONACO COACH CORP | COM | 60886R10 | 135 | 15300 SH | SHARED | 10 | 15300 | |
| D | MONARCH CASINO & RESORT INC | COM | 60902710 | 106 | 4415 SH | SHARED | | 4415 | |
| D | MONARCH CASINO & RESORT INC | COM | 60902710 | 21 | 900 SH | SHARED | 01 | 900 | |
| D | MONARCH CASINO & RESORT INC | COM | 60902710 | 351 | 14600 SH | SHARED | 10 | 14600 | |
| D | MONARCH COMMUNITY BANCORP IN | COM | 60904510 | 0 | 62 SH | SHARED | | 62 | |
| D | MONARCH FINANCIAL HOLDINGS I | COM | 60907Q10 | 1 | 125 SH | SHARED | | 125 | |
| D | MONEYGRAM INTL INC | COM | 60935Y10 | 827 | 53852 SH | SHARED | | 53852 | |
| D | MONEYGRAM INTL INC | COM | 60935Y10 | 301 | 19594 SH | SHARED | 01 | 2694 | 16900 |
| D | MONEYGRAM INTL INC | COM | 60935Y10 | 235 | 15315 SH | SHARED | 02 | 15315 | |
| D | MONEYGRAM INTL INC | COM | 60935Y10 | 1613 | 104979 SH | SHARED | 10 | 104979 | |
| D | MONEYGRAM INTL INC | COM | 60935Y10 | 52 | 3425 SH | SHARED | 21 | | 3425 |
| D | MONMOUTH REAL ESTATE INVT CO | CL A | 60972010 | 4 | 549 SH | SHARED | | 549 | |
| D | MONOGRAM BIOSCIENCES INC | COM | 60975U10 | 12 | 8708 SH | SHARED | | 8708 | |
| D | MONOLITHIC PWR SYS INC | COM | 60983910 | 468 | 21800 SH | SHARED | | 21800 | |
| D | MONOLITHIC PWR SYS INC | COM | 60983910 | 53 | 2500 SH | SHARED | 04 | 2500 | |
| D | MONRO MUFFLER BRAKE INC | COM | 61023610 | 15 | 773 SH | SHARED | | 773 | |
| D | MONRO MUFFLER BRAKE INC | COM | 61023610 | 3 | 187 SH | SHARED | 01 | 187 | |
| D | MONRO MUFFLER BRAKE INC | COM | 61023610 | 30 | 1561 SH | SHARED | 21 | | 1561 |
| D | MONSANTO CO NEW | COM | 61166W10 | 5637 | 50476 SH | SHARED | | 37888 | 12588 |
| D | MONSANTO CO NEW | COM | 61166W10 | 108780 | 973951 SH | SHARED | | 972651 | 1300 |
| D | MONSANTO CO NEW | COM | 61166W10 | 80130 | 717436 SH | SHR/OTHR | 01 | 416020 | 301416 |
| D | MONSANTO CO NEW | COM | 61166W10 | 20996 | 187991 SH | SHR/OTHR | | | 187991 |
| D | MONSANTO CO NEW | COM | 61166W10 | 1316 | 11788 SH | SHARED | 02 | 11788 | |
| D | MONSANTO CO NEW | COM | 61166W10 | 1688 | 15121 SH | SHARED | 04 | | 15121 |
| D | MONSANTO CO NEW | COM | 61166W10 | 94432 | 845486 SH | SHARED | 04 | 845486 | |
| D | MONSANTO CO NEW | COM | 61166W10 | 93449 | 836684 SH | SHARED | 05 | 836684 | |
| D | MONSANTO CO NEW | COM | 61166W10 | 587 | 5264 SH | SHARED | 06 | | 5264 |
| D | MONSANTO CO NEW | COM | 61166W10 | 160789 | 1439604 SH | SHARED | 10 | 1287916 | 151688 |
| D | MONSANTO CO NEW | COM | 61166W10 | 240 | 2152 SH | SHARED | 14 | | 2152 |
| D | MONSANTO CO NEW | COM | 61166W10 | 11664 | 104436 SH | SHARED | 19 | | 104436 |
| D | MONSANTO CO NEW | COM | 61166W10 | 13833 | 123860 SH | SHARED | 20 | 65615 | 58245 |
| D | MONSANTO CO NEW | COM | 61166W10 | 4524 | 40508 SH | SHR/OTHR | 20 | | 40508 |
| D | MONSANTO CO NEW | COM | 61166W10 | 3123 | 27969 SH | SHARED | 21 | 14600 | 13369 |
| D | MONSANTO CO NEW | COM | 61166W10 | 871 | 7800 SH | SHR/OTHR | 21 | | 7800 |
| D | MONSANTO CO NEW | COM | 61166W10 | 4766 | 42678 SH | SHARED | 22 | 36604 | 6074 |
| D | MONSANTO CO NEW | COM | 61166W10 | 917 | 8212 SH | SHR/OTHR | 22 | | 8212 |
| D | MONSANTO CO NEW | COM | 61166W10 | 21387 | 191487 SH | SHARED | 23 | 167048 | 24439 |
| D | MONSANTO CO NEW | COM | 61166W10 | 24378 | 218268 SH | SHR/OTHR | 23 | | 218268 |
| D | MONSANTO CO NEW | COM | 61166W10 | 4310 | 38592 SH | SHARED | 24 | 38592 | |
| D | MONSTER WORLDWIDE INC | COM | 61174210 | 17632 | 544207 SH | SHARED | | 285707 | 258500 |
| D | MONSTER WORLDWIDE INC | COM | 61174210 | 1252 | 38645 SH | SHARED | 01 | 38645 | |
| D | MONSTER WORLDWIDE INC | COM | 61174210 | 3398 | 104903 SH | SHARED | 02 | 104903 | |
| D | MONSTER WORLDWIDE INC | COM | 61174210 | 2430 | 75000 SH | SHARED | 04 | 75000 | |
| D | MONSTER WORLDWIDE INC | COM | 61174210 | 19 | 600 SH | SHARED | 06 | | 600 |
| D | MONSTER WORLDWIDE INC | COM | 61174210 | 32847 | 1013816 SH | SHARED | 10 | 863416 | 150400 |
| D | MONSTER WORLDWIDE INC | COM | 61174210 | 230 | 7100 SH | SHARED | 15 | | 7100 |
| D | MONSTER WORLDWIDE INC | COM | 61174210 | 460 | 14200 SH | SHARED | 20 | 14200 | |
| D | MONTEREY GOURMET FOODS INC | COM | 61257010 | 1 | 448 SH | SHARED | | 448 | |
| D | MONTGOMERY STR INCOME SECS I | COM | 61411510 | 838 | 52000 SH | SHARED | 20 | 14500 | 37500 |
| D | MONTGOMERY STR INCOME SECS I | COM | 61411510 | 236 | 14670 SH | SHR/OTHR | 20 | | 14670 |
| D | MONTGOMERY STR INCOME SECS I | COM | 61411510 | 32 | 2000 SH | SHARED | 23 | 2000 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | MOODYS CORP | COM | 61536910 | 8918 | 249820 SH | SHARED | | 249820 | |
| D | MOODYS CORP | COM | 61536910 | 7597 | 212824 SH | SHARED | 01 | 177404 | 35420 |
| D | MOODYS CORP | COM | 61536910 | 185 | 5192 SH | SHARED | 02 | 5192 | |
| D | MOODYS CORP | COM | 61536910 | 1428 | 40000 SH | SHARED | 04 | 40000 | |
| D | MOODYS CORP | COM | 61536910 | 4 | 140 SH | SHARED | 05 | 140 | |
| D | MOODYS CORP | COM | 61536910 | 79 | 2230 SH | SHARED | 06 | | 2230 |
| D | MOODYS CORP | COM | 61536910 | 12796 | 358456 SH | SHARED | 10 | 358456 | |
| D | MOODYS CORP | COM | 61536910 | 513 | 14386 SH | SHARED | 14 | | 14386 |
| D | MOODYS CORP | COM | 61536910 | 126 | 3530 SH | SHARED | 20 | 3500 | 30 |
| D | MOODYS CORP | COM | 61536910 | 136 | 3832 SH | SHR/OTHR | 20 | | 3832 |
| D | MOODYS CORP | COM | 61536910 | 36 | 1021 SH | SHARED | 21 | | 1021 |
| D | MOODYS CORP | COM | 61536910 | 7 | 200 SH | SHARED | 22 | 200 | |
| D | MOODYS CORP | COM | 61536910 | 1245 | 34900 SH | SHARED | 23 | 34900 | |
| D | MOODYS CORP | COM | 61536910 | 1124 | 31500 SH | SHR/OTHR | 23 | | 31500 |
| D | MOOG INC | CL A | 61539420 | 22189 | 484382 SH | SHARED | | 484382 | |
| D | MOOG INC | CL A | 61539420 | 155 | 3400 SH | SHARED | 01 | 3400 | |
| D | MOOG INC | CL A | 61539420 | 59 | 1300 SH | SHARED | 02 | 1300 | |
| D | MOOG INC | CL A | 61539420 | 535 | 11700 SH | SHARED | 10 | 11700 | |
| D | MOOG INC | CL A | 61539420 | 57 | 1248 SH | SHARED | 21 | | 1248 |
| D | MORGAN STANLEY EASTN EUR FD | COM | 61698810 | 66 | 1745 SH | SHARED | | 1745 | |
| D | MORGAN STANLEY EMER MKTS DEB | COM | 61744H10 | 6504 | 670600 SH | SHARED | | 670600 | |
| D | MORGAN STANLEY EMER MKTS DEB | COM | 61744H10 | 182 | 18800 SH | SHR/OTHR | 23 | | 18800 |
| D | MORGAN STANLEY HIGH YIELD FD | COM | 61744M10 | 1077 | 187308 SH | SHARED | | 187308 | |
| D | MORGAN STANLEY GBL OPP BOND | COM | 61744U10 | 69 | 10000 SH | SHR/OTHR | 23 | | 10000 |
| D | MORGAN STANLEY ASIA PAC FD I | COM | 61744U10 | 169 | 8392 SH | SHARED | | 8392 | |
| D | MORGAN STANLEY | COM NEW | 61744644 | 170224 | 3205137 SH | SHARED | | 3107937 | 97200 |
| D | MORGAN STANLEY | COM NEW | 61744644 | 13824 | 260304 SH | SHARED | 01 | 235151 | 25153 |
| D | MORGAN STANLEY | COM NEW | 61744644 | 267 | 5045 SH | SHR/OTHR | 01 | 5045 | |
| D | MORGAN STANLEY | COM NEW | 61744644 | 22252 | 418984 SH | SHARED | 02 | 418984 | |
| D | MORGAN STANLEY | COM NEW | 61744644 | 352 | 6634 SH | SHARED | 04 | | 6634 |
| D | MORGAN STANLEY | COM NEW | 61744644 | 67168 | 1264702 SH | SHARED | 04 | 1264702 | |
| D | MORGAN STANLEY | COM NEW | 61744644 | 7987 | 150390 SH | SHARED | 05 | 150390 | |
| D | MORGAN STANLEY | COM NEW | 61744644 | 488 | 9193 SH | SHARED | 06 | | 9193 |
| D | MORGAN STANLEY | COM NEW | 61744644 | 193054 | 3635000 SH | SHARED | 10 | 3497200 | 137800 |
| D | MORGAN STANLEY | COM NEW | 61744644 | 1836 | 34585 SH | SHARED | 14 | 5400 | 29185 |
| D | MORGAN STANLEY | COM NEW | 61744644 | 700 | 13190 SH | SHARED | 15 | | 13190 |
| D | MORGAN STANLEY | COM NEW | 61744644 | 286 | 5400 SH | SHARED | 19 | | 5400 |
| D | MORGAN STANLEY | COM NEW | 61744644 | 840 | 15835 SH | SHARED | 20 | 11595 | 4240 |
| D | MORGAN STANLEY | COM NEW | 61744644 | 316 | 5960 SH | SHARED | 20 | | 5960 |
| D | MORGAN STANLEY | COM NEW | 61744644 | 72 | 1372 SH | SHR/OTHR | 21 | 1372 | |
| D | MORGAN STANLEY | COM NEW | 61744644 | 235 | 4442 SH | SHARED | 22 | 2600 | 1842 |
| D | MORGAN STANLEY | COM NEW | 61744644 | 522 | 9831 SH | SHARED | 23 | 3731 | 6100 |
| D | MORGAN STANLEY | COM NEW | 61744644 | 2096 | 39483 SH | SHR/OTHR | 23 | | 39483 |
| D | MORGAN STANLEY INDIA INVS FD | COM | 61745C10 | 54 | 993 SH | SHARED | | 993 | |
| D | MORGAN STANLEY INDIA INVS FD | COM | 61745C10 | 318 | 5800 SH | SHARED | | 5800 | |
| D | MORGAN STANLEY | MUN PREM INCOM | 61745P42 | 326 | 38600 SH | SHARED | | 38600 | |
| D | MORGAN STANLEY | MUN INCM OPPTN | 61745P45 | 1 | 157 SH | SHARED | | 157 | |
| D | MORGAN STANLEY | CA INSD MUN TR | 61745P50 | 0 | 42 SH | SHARED | | 42 | |
| D | MORGAN STANLEY | QULTY MUN SECS | 61745P58 | 569 | 42221 SH | SHARED | | 42221 | |
| D | MORGAN STANLEY | QLT MUN INV TR | 61745P66 | 0 | 42 SH | SHARED | | 42 | |
| D | MORGAN STANLEY | QUALT MUN INCM | 61745P73 | 988 | 78500 SH | SHARED | | 78500 | |
| D | MORGAN STANLEY | INSD MUN TR | 61745P86 | 990 | 76155 SH | SHARED | | 76155 | |
| D | MORGAN STANLEY CHINA A SH FD | COM | 61746810 | 1288 | 25508 SH | SHARED | | 25508 | |
| D | MORGAN STANLEY EMERG MKT DOM | COM | 61747710 | 383 | 22263 SH | SHARED | | 22263 | |
| D | MORGANS HOTEL GROUP CO | COM | 61748W10 | 91 | 4757 SH | SHARED | | 4757 | |
| D | MORGANS HOTEL GROUP CO | COM | 61748W10 | 3255 | 168852 SH | SHARED | 10 | 168852 | |
| D | MORNINGSTAR INC | COM | 61770010 | 564 | 7263 SH | SHARED | | 7263 | |
| D | MORNINGSTAR INC | COM | 61770010 | 15 | 200 SH | SHARED | 02 | 200 | |
| D | MORNINGSTAR INC | COM | 61770010 | 31 | 399 SH | SHARED | 10 | 399 | |
| D | MORTONS RESTAURANT GRP INC N | COM | 61943010 | 40 | 4314 SH | SHARED | | 4314 | |
| D | MOSAIC CO | COM | 61945A10 | 6909 | 73238 SH | SHARED | | 73238 | |
| D | MOSAIC CO | COM | 61945A10 | 433 | 4600 SH | SHARED | 01 | 4600 | |
| D | MOSAIC CO | COM | 61945A10 | 199 | 2114 SH | SHARED | 02 | 2114 | |
| D | MOSAIC CO | COM | 61945A10 | 63762 | 675875 SH | SHARED | 04 | 675875 | |
| D | MOSAIC CO | COM | 61945A10 | 85846 | 909972 SH | SHARED | 05 | 909972 | |
| D | MOSAIC CO | COM | 61945A10 | 150 | 1600 SH | SHARED | 06 | | 1600 |
| D | MOSAIC CO | COM | 61945A10 | 12861 | 136330 SH | SHARED | 10 | 107930 | 28400 |
| D | MOSAIC CO | COM | 61945A10 | 167 | 1779 SH | SHARED | 14 | | 1779 |
| D | MOSAIC CO | COM | 61945A10 | 830 | 8800 SH | SHARED | 24 | 8800 | |
| D | MOSYS INC | COM | 61971810 | 290 | 59800 SH | SHARED | | 59800 | |
| D | MOTHERS WK INC | COM | 61990310 | 2 | 141 SH | SHARED | | 141 | |
| D | MOTORCAR PTS AMER INC | COM | 62007110 | 2 | 269 SH | SHARED | | 269 | |
| D | MOTOROLA INC | COM | 62007610 | 319 | 19910 SH | SHARED | | | 19910 |
| D | MOTOROLA INC | COM | 62007610 | 155622 | 9702161 SH | SHARED | | 9684461 | 17700 |
| D | MOTOROLA INC | COM | 62007610 | 5577 | 347735 SH | SHARED | 01 | 322015 | 25720 |
| D | MOTOROLA INC | COM | 62007610 | 657 | 40997 SH | SHR/OTHR | 01 | | 40997 |
| D | MOTOROLA INC | COM | 62007610 | 2064 | 128731 SH | SHARED | 02 | 128731 | |
| D | MOTOROLA INC | COM | 62007610 | 184 | 11528 SH | SHARED | 04 | | 11528 |
| D | MOTOROLA INC | COM | 62007610 | 7266 | 453000 SH | SHARED | 04 | 453000 | |
| D | MOTOROLA INC | COM | 62007610 | 16 | 1040 SH | SHARED | 05 | 1040 | |
| D | MOTOROLA INC | COM | 62007610 | 8066 | 502890 SH | SHARED | 06 | | 502890 |
| D | MOTOROLA INC | COM | 62007610 | 16062 | 1001376 SH | SHARED | 10 | 1001376 | |
| D | MOTOROLA INC | COM | 62007610 | 2078 | 129558 SH | SHARED | 14 | | 129558 |
| D | MOTOROLA INC | COM | 62007610 | 5614 | 350000 SH | SHARED | 15 | | 350000 |
| D | MOTOROLA INC | COM | 62007610 | 1934 | 120597 SH | SHARED | 16 | 120597 | |
| D | MOTOROLA INC | COM | 62007610 | 226 | 14125 SH | SHARED | 19 | | 14125 |
| D | MOTOROLA INC | COM | 62007610 | 1154 | 72000 SH | SHR/OTHR | 20 | | 72000 |
| D | MOTOROLA INC | COM | 62007610 | 69 | 4311 SH | SHARED | 22 | 3198 | 1113 |
| D | MOTOROLA INC | COM | 62007610 | 6 | 425 SH | SHR/OTHR | 22 | | 425 |
| D | MOTOROLA INC | COM | 62007610 | 754 | 47040 SH | SHARED | 23 | 42000 | 5040 |
| D | MOTOROLA INC | COM | 62007610 | 2152 | 134194 SH | SHR/OTHR | 23 | | 134194 |
| D | MOVE INC COM | COM | 62458M10 | 4 | 1991 SH | SHARED | | 1991 | |
| D | MOVADO GROUP INC | COM | 62458010 | 111 | 4402 SH | SHARED | | 4402 | |
| D | MOVADO GROUP INC | COM | 62458010 | 65 | 2595 SH | SHARED | 01 | 2595 | |
| D | MOVADO GROUP INC | COM | 62458010 | 1385 | 54800 SH | SHARED | 10 | 54800 | |
| D | MOVIE STAR INC | COM | 62459110 | 0 | 332 SH | SHARED | | 332 | |
| D | MTM TECHNOLOGIES INC | COM | 62474Q10 | 0 | 243 SH | SHARED | | 243 | |
| D | MUELLER INDS INC | COM | 62475610 | 437 | 15100 SH | SHARED | | 15100 | |
| D | MUELLER INDS INC | COM | 62475610 | 698 | 24100 SH | SHARED | 01 | 23000 | 1100 |
| D | MUELLER INDS INC | COM | 62475610 | 110 | 3800 SH | SHARED | 02 | 3800 | |
| D | MUELLER INDS INC | COM | 62475610 | 1652 | 57012 SH | SHARED | 10 | 57012 | |
| D | MUELLER WTR PRODS INC | COM SER A | 62475810 | 76 | 8062 SH | SHARED | | 8062 | |
| D | MUELLER WTR PRODS INC | COM SER B | 62475810 | 14582 | 1531800 SH | SHARED | 10 | 1531800 | |
| D | MUELLER WTR PRODS INC | COM SER B | 62475820 | 1010 | 101310 SH | SHARED | | 101310 | |
| D | MUELLER WTR PRODS INC | COM SER B | 62475820 | 352 | 35362 SH | SHARED | 10 | 35362 | |
| D | MUELLER WTR PRODS INC | COM SER B | 62475820 | 3318 | 332846 SH | SHARED | 10 | 332846 | |
| D | MUELLER WTR PRODS INC | COM SER B | 62475820 | 4 | 437 SH | SHARED | 21 | | 437 |
| D | MULTI COLOR CORP | COM | 62538310 | 3 | 134 SH | SHARED | | 134 | |
| D | MULTI FINELINE ELECTRONIX IN | COM | 62541B10 | 6 | 403 SH | SHARED | | 403 | |
| D | MULTI FINELINE ELECTRONIX IN | COM | 62541B10 | 175 | 10100 SH | SHARED | 10 | 10100 | |
| D | MULTIBAND CORP | COM NEW | 62544Q20 | 0 | 192 SH | SHARED | | 192 | |
| D | MULTIMEDIA GAMES INC | COM | 62545310 | 0 | 26 SH | SHARED | | 26 | |
| D | MURPHY OIL CORP | COM | 62671710 | 21839 | 257420 SH | SHARED | | 257420 | |
| D | MURPHY OIL CORP | COM | 62671710 | 47824 | 563700 SH | SHARED | 01 | 25700 | 538000 |

```
D MURPHY OIL CORP              COM                62671710    22703   267600 SH   SHR/OTHR  01              267600
D MURPHY OIL CORP              COM                62671710     5335    62891 SH   SHARED    02      62891
D MURPHY OIL CORP              COM                62671710      144     1700 SH   SHARED    06                1700
D MURPHY OIL CORP              COM                62671710    19411   228800 SH   SHARED    10      228800
D MURPHY OIL CORP              COM                62671710     3817    45000 SH   SHARED    22       45000
D MUTUALFIRST FINL INC         COM                62845810        1      103 SH   SHARED                      103
D MYERS INDS INC               COM                62846410      579    40073 SH   SHARED                    40073
D MYLAN INC                    NOTE 1.250% 3/1    62853OAG  88755 91500000 PRN    SHARED               1500000
D MYLAN INC                    COM                62853010    14007   996264 SH   SHARED                   996264
D MYLAN INC                    COM                62853010      376    26800 SH   SHARED    01       26800
D MYLAN INC                    COM                62853010      905    64435 SH   SHARED    02       64435
D MYLAN INC                    COM                62853010     6274   446300 SH   SHARED    04      446300
D MYLAN INC                    COM                62853010    25335  1801936 SH   SHARED    10     1801936
D MYLAN INC                    COM                62853010      101     7200 SH   SHARED    14        7200
D MYLAN INC                    COM                62853010      767    54596 SH   SHARED    16       54596
D MYLAN INC                    COM                62853010        6      450 SH   SHR/OTHR  23                 450
D MYLAN INC                    PFD CONV           62853020   261176   257000 SH   SHARED             257000
D MYLAN INC                    PFD CONV           62853020     3903     3841 SH   SHARED    02        3841
D MYLAN INC                    PFD CONV           62853020     1117     1100 SH   SHARED    14                1100
D MYRIAD GENETICS INC          COM                62855J10      175     3770 SH   SHARED                     3770
D MYRIAD GENETICS INC          COM                62855J10      127     2750 SH   SHARED    01        2750
D MYRIAD GENETICS INC          COM                62855J10        9      200 SH   SHARED    02         200
D MYRIAD GENETICS INC          COM                62855J10     2222    47869 SH   SHARED    10       47869
D NBT BANCORP INC              COM                62877810      172     7539 SH   SHARED                     7539
D NBT BANCORP INC              COM                62877810       31     1400 SH   SHARED    01        1400
D NBT BANCORP INC              COM                62877810     1524    66800 SH   SHARED    10       66800
D NBTY INC                     COM                62878210     2903   105968 SH   SHARED                   105968
D NBTY INC                     COM                62878210      767    28000 SH   SHARED    01       10700              17300
D NBTY INC                     COM                62878210     2758   100669 SH   SHARED    02      100669
D NBTY INC                     COM                62878210      904    33000 SH   SHARED    10       33000
D NCI BUILDING SYS INC         CL A               62885210      219     7621 SH   SHARED                     7621
D NCI BUILDING SYS INC         COM                62885210      343    11943 SH   SHARED    10       11943
D NCI BUILDING SYS INC         COM                62885210      382    13300 SH   SHARED    10       13300
D NCR CORP NEW                 COM                62886E10     1508    60111 SH   SHARED                    60111
D NCR CORP NEW                 COM                62886E10     1784    71096 SH   SHARED    01       15260              55836
D NCR CORP NEW                 COM                62886E10      215     8575 SH   SHARED    02        8575
D NCR CORP NEW                 COM                62886E10     1429    56960 SH   SHARED    10       56960
D NCI INC                      CL A               62886K10        2      161 SH   SHARED                      161
D NCI INC                      CL A               62886K10       13      800 SH   SHARED                      800
D NDS GROUP PLC                SPONSORED ADR      62889110       33      567 SH   SHARED    02         567
D NGP CAP RES CO               COM                62912R10       64     4100 SH   SHARED    10        4100
D NGAS RESOURCES INC           COM                62912T10        6     1214 SH   SHARED                     1214
D NII HLDGS INC                NOTE 2.750% 8/1    62913PAF  12237  1047000 PRN    SHARED               0047000
D NII HLDGS INC                CL B NEW           62913F20      628    13000 SH   SHARED                     7500               5500
D NII HLDGS INC                CL B NEW           62913F20     6135   126979 SH   SHARED             126979
D NII HLDGS INC                CL B NEW           62913F20       53     1100 SH   SHARED    01        1100
D NII HLDGS INC                CL B NEW           62913F20      341     7061 SH   SHARED    02        7061
D NII HLDGS INC                CL B NEW           62913F20        4       90 SH   SHARED    05          90
D NII HLDGS INC                CL B NEW           62913F20       56     1160 SH   SHARED    06                1160
D NII HLDGS INC                CL B NEW           62913F20    50159  1038060 SH   SHARED    10     1038060
D NIC INC                      COM                62914B10        8     1018 SH   SHARED                     1018
D NIC INC                      COM                62914B10       62     7400 SH   SHARED    10        7400
D NL INDS INC                  COM NEW            62915640        0        9 SH   SHARED                        9
D NL INDS INC                  COM NEW            62915640        8      700 SH   SHARED    10         700
D NMS COMMUNICATIONS CORP      COM               62924B10        1     1190 SH   SHARED                     1190
D NMT MED INC                  COM                62929410        1      338 SH   SHARED                      338
D NN INC                       COM                62933710        4      439 SH   SHARED                      439
D NPS PHARMACEUTICALS INC      COM                62936510     3260   851205 SH   SHARED             851205
D NPS PHARMACEUTICALS INC      COM                62936P10       23     6200 SH   SHARED    02        6200
D NRG ENERGY INC               COM NEW            62937750     9631   222225 SH   SHARED             222225
D NRG ENERGY INC               COM NEW            62937750      874    20185 SH   SHARED    01       20185
D NRG ENERGY INC               COM NEW            62937750    32151   741849 SH   SHARED    02      741849
D NRG ENERGY INC               COM NEW            62937750      966    22308 SH   SHARED    06                22308
D NRG ENERGY INC               COM NEW            62937750     2713    62600 SH   SHARED    10       61800               800
D NRG ENERGY INC               COM NEW            62937750     1586    36600 SH   SHARED    14                36600
D NRG ENERGY INC               PFD CONV MAND      62937787    84474   224845 SH   SHARED             224845
D NRG ENERGY INC               PFD CONV MAND      62937787    14456    38480 SH   SHARED    02       38480
D NRDC ACQUISITION CORP        COM                62941R10     4657   507957 SH   SHARED             507957
D NRDC ACQUISITION CORP        COM                62941R10     2751   300000 SH   SHARED    10      300000
D NRDC ACQUISITION CORP        *W EXP 10/17/201   62941R11      254   303399 SH   SHARED             303399
D NRDC ACQUISITION CORP        *W EXP 10/17/201   62941R11      252   300000 SH   SHARED    10      300000
D NTN BUZZTIME INC             COM                62941030        0     1199 SH   SHARED                     1199
D NTR ACQUISITION CO           COM                62941510    15225  1602734 SH   SHARED            1602734
D NTR ACQUISITION CO           *W EXP 06/28/201   62941511       14    11852 SH   SHARED              11852
D NTR ACQUISITION CO           UNIT 06/28/2010    62941520       67     6275 SH   SHARED               6275
D NTT DOCOMO INC               SPONS ADR          62942M20      485    29594 SH   SHARED              29594
D NTT DOCOMO INC               SPONS ADR          62942M20       11      715 SH   SHARED    01         715
D NVR INC                      COM                62944T10     1133     2164 SH   SHARED                      564               1600
D NVR INC                      COM                62944T10     1362     2600 SH   SHARED    01        1500               1100
D NVR INC                      COM                62944T10      173      332 SH   SHARED    02         332
D NVR INC                      COM                62944T10    45116    86100 SH   SHARED    10       79300               6800
D NVR INC                      COM                62944T10      236      452 SH   SHARED    14                 452
D NVE CORP                     COM NEW            62944520       58     2380 SH   SHARED                     2380
D NYMEX HOLDINGS INC           COM                62948N10    17793   133172 SH   SHARED             133172
D NYMEX HOLDINGS INC           COM                62948N10      110      828 SH   SHARED    02         828
D NYMEX HOLDINGS INC           COM                62948N10     1870    14000 SH   SHARED    04       14000
D NYMEX HOLDINGS INC           COM                62948N10        6       50 SH   SHARED    05          50
D NYMEX HOLDINGS INC           COM                62948N10      120      900 SH   SHARED    06                 900
D NYMEX HOLDINGS INC           COM                62948N10     3280    24550 SH   SHARED    10       24550
D NYMAGIC INC                  COM                62948410        0       17 SH   SHARED                       17
D NYSE EURONEXT                COM                62949110  2942628  3352265 SH   SHARED            3352265
D NYSE EURONEXT                COM                62949110     2156    24572 SH   SHARED    01       24522               50
D NYSE EURONEXT                COM                62949110     6171    70319 SH   SHARED    02       70319
D NYSE EURONEXT                COM                62949110        7       80 SH   SHARED    05          80
D NYSE EURONEXT                COM                62949110      114     1300 SH   SHARED    06                1300
D NYSE EURONEXT                COM                62949110     9410   107217 SH   SHARED    10      107217
D NYSE EURONEXT                COM                62949110      437     4981 SH   SHARED    21        4981
D NABI BIOPHARMACEUTICALS      NOTE 2.875% 4/1    62951 9AB   1837  2100000 PRN    SHARED              2100000
D NABI BIOPHARMACEUTICALS      NOTE 2.875% 4/1    62951 9AB      0      525 PRN    SHARED                 525
D NABI BIOPHARMACEUTICALS      COM                62951J10     2510   695428 SH   SHARED             695428
D NABORS INDS INC              NOTE       6/1     62956BAK       3     3000 PRN    SHARED                3000
D NABORS INDS INC              NOTE 0.940% 5/1    62956BAP    9118  9700000 PRN    SHARED              9700000
D NABORS INDS INC              NOTE 0.940% 5/1    62956BAP    4241   451200 PRN    SHARED    02        451200
D NACCO INDS INC               CL A               62957910     2457    24655 SH   SHARED              24655
D NACCO INDS INC               CL A               62957910      418     4200 SH   SHARED    10        4200
D NALCO HOLDING COMPANY        COM                62985Q10      863    35693 SH   SHARED              35693
D NALCO HOLDING COMPANY        COM                62985Q10      134     5553 SH   SHARED                     5553
D NALCO HOLDING COMPANY        COM                62985Q10    23044    953052 SH   SHARED    04      953052
D NALCO HOLDING COMPANY        COM                62985Q10    30792   1273483 SH   SHARED    05     1273483
D NALCO HOLDING COMPANY        COM                62985Q10      396    16400 SH   SHARED    10       16400
D NALCO HOLDING COMPANY        COM                62985Q10     1163    48100 SH   SHARED    14                48100
D NALCO HOLDING COMPANY        COM                62985Q10       67     2800 SH   SHR/OTHR  23        2800
D NAM TAI ELECTRS INC          COM PAR $0.02      62986520      923    81918 SH   SHARED              81918
D NANOGEN INC                  COM                63007510       35    97575 SH   SHARED              97575
```

| Issuer | Class | CUSIP | Value | Amount | SH/PRN | Disc | Code | Shared | Other |
|---|---|---|---|---|---|---|---|---|---|
| D NANOMETRICS INC | COM | 63007710 | 3 | 322 | SH | SHARED | | 322 | |
| D NANOPHASE TCHNOLOGIES CORP | COM | 63007910 | 1 | 439 | SH | SHARED | | 439 | |
| D NANOSPHERE INC | COM | 63009P10 | 97 | 6949 | SH | SHARED | | 6949 | |
| D NAPCO SEC SYS INC | COM | 63040210 | 9 | 1467 | SH | SHARED | | 1467 | |
| D NAPSTER INC | COM | 63079710 | 216 | 109933 | SH | SHARED | | 109933 | |
| D NARA BANCORP INC | COM | 63080D10 | 104 | 8976 | SH | SHARED | | 8976 | |
| D NARA BANCORP INC | COM | 63080D10 | 372 | 31900 | SH | SHARED | 10 | 31900 | |
| D NASDAQ STOCK MARKET INC | COM | 63110310 | 6376 | 128845 | SH | SHARED | | 70445 | 58400 |
| D NASDAQ STOCK MARKET INC | COM | 63110310 | 700 | 14160 | SH | SHARED | 01 | 11870 | 2290 |
| D NASDAQ STOCK MARKET INC | COM | 63110310 | 39 | 800 | SH | SHR/OTHR | 01 | | 800 |
| D NASDAQ STOCK MARKET INC | COM | 63110310 | 32 | 650 | SH | SHARED | 02 | 650 | |
| D NASDAQ STOCK MARKET INC | COM | 63110310 | 742 | 15000 | SH | SHARED | 04 | 15000 | |
| D NASDAQ STOCK MARKET INC | COM | 63110310 | 18326 | 370300 | SH | SHARED | 10 | 360400 | 9900 |
| D NASDAQ STOCK MARKET INC | COM | 63110310 | 1100 | 22227 | SH | SHARED | 21 | 20892 | 1335 |
| D NASH FINCH CO | FRNT 1.631% 3/1 | 631158AD | 5005 | 11000000 | PRN | SHARED | | 1000000 | |
| D NASH FINCH CO | FRNT 1.631% 3/1 | 631158AD | 2156 | 4739000 | PRN | SHARED | 02 | 4739000 | |
| D NASH FINCH CO | COM | 63115810 | 232 | 6581 | SH | SHARED | | 6581 | |
| D NASH FINCH CO | COM | 63115810 | 11903 | 337401 | SH | SHARED | 10 | 337401 | |
| D NASHUA CORP | COM | 63122610 | 1 | 119 | SH | SHARED | | 119 | |
| D NATCO GROUP INC | CL A | 63227W20 | 849 | 15680 | SH | SHARED | | 15680 | |
| D NATCO GROUP INC | CL A | 63227W20 | 197 | 3650 | SH | SHARED | 01 | 3650 | |
| D NATCO GROUP INC | CL A | 63227W20 | 6687 | 123500 | SH | SHARED | 10 | 123500 | |
| D NATHANS FAMOUS INC NEW | COM | 63234710 | 2 | 120 | SH | SHARED | | 120 | |
| D NATIONAL COAL CORP | COM | 63238120 | 2 | 430 | SH | SHARED | | 430 | |
| D NATIONAL ATLANTIC HLDGS CORP | COM NEW | 63253Y10 | 1 | 229 | SH | SHARED | | 229 | |
| D NATIONAL BK GREECE S A | SPONSORED ADR | 6364340 | 0 | 53 | SH | SHARED | | 53 | |
| D NATIONAL BANKSHARES INC VA | COM | 63486510 | 3 | 183 | SH | SHARED | | 183 | |
| D NATIONAL BEVERAGE CORP | COM | 63501710 | 38 | 4845 | SH | SHARED | | 4845 | |
| D NATIONAL CINEMEDIA INC | COM | 63530910 | 82 | 3253 | SH | SHARED | | 3253 | |
| D NATIONAL CITY CORP | COM | 63540510 | 16502 | 1002558 | SH | SHARED | | 1002558 | |
| D NATIONAL CITY CORP | COM | 63540510 | 1216 | 73911 | SH | SHARED | 01 | 72756 | 1155 |
| D NATIONAL CITY CORP | COM | 63540510 | 69 | 4200 | SH | SHR/OTHR | 01 | | 4200 |
| D NATIONAL CITY CORP | COM | 63540510 | 166 | 10126 | SH | SHARED | 02 | 10126 | |
| D NATIONAL CITY CORP | COM | 63540510 | 5 | 310 | SH | SHARED | 05 | 310 | |
| D NATIONAL CITY CORP | COM | 63540510 | 99 | 6020 | SH | SHARED | 06 | 6020 | |
| D NATIONAL CITY CORP | COM | 63540510 | 5459 | 331695 | SH | SHARED | 10 | 331695 | |
| D NATIONAL CITY CORP | COM | 63540510 | 55 | 3370 | SH | SHARED | 20 | 3370 | |
| D NATIONAL CITY CORP | COM | 63540510 | 6108 | 371135 | SH | SHARED | 21 | 371135 | |
| D NATIONAL CITY CORP | COM | 63540510 | 148 | 9000 | SH | SHR/OTHR | 21 | | 9000 |
| D NATIONAL CITY CORP | COM | 63540510 | 8 | 500 | SH | SHARED | 22 | 500 | |
| D NATIONAL CITY CORP | COM | 63540510 | 148 | 9000 | SH | SHARED | 23 | 9000 | |
| D NATIONAL DENTEX CORP | COM | 63563H10 | 2 | 143 | SH | SHARED | | 143 | |
| D NATIONAL HEALTHCARE CORP | COM | 63590610 | 15 | 301 | SH | SHARED | | 301 | |
| D NATIONAL FINL PARTNERS CORP | NOTE 0.750% 2/0 | 63607PAA | 8092 | 8500000 | PRN | SHARED | 02 | 8500000 | |
| D NATIONAL FINL PARTNERS CORP | COM | 63607P20 | 183 | 4021 | SH | SHARED | | 4021 | |
| D NATIONAL FINL PARTNERS CORP | COM | 63607P20 | 36 | 800 | SH | SHARED | 01 | 800 | |
| D NATIONAL FINL PARTNERS CORP | COM | 63607P20 | 380 | 8350 | SH | SHARED | 01 | 8350 | |
| D NATIONAL FINL PARTNERS CORP | COM | 63607P20 | 1153 | 25300 | SH | SHARED | 10 | 25300 | |
| D NATIONAL FUEL GAS CO N J | COM | 63618010 | 453 | 9714 | SH | SHARED | | 9714 | |
| D NATIONAL FUEL GAS CO N J | COM | 63618010 | 1179 | 25275 | SH | SHARED | 01 | 875 | 24400 |
| D NATIONAL FUEL GAS CO N J | COM | 63618010 | 1351 | 28954 | SH | SHARED | 10 | 28954 | |
| D NATIONAL FUEL GAS CO N J | COM | 63618010 | 683 | 14632 | SH | SHARED | 10 | 14632 | |
| D NATIONAL GRID PLC | SPON ADR NEW | 63627430 | 83 | 999 | SH | SHARED | | 999 | |
| D NATIONAL GRID PLC | SPON ADR NEW | 63627430 | 20 | 241 | SH | SHARED | 01 | | 241 |
| D NATIONAL HEALTH INVS INC | COM | 63633D10 | 13880 | 497499 | SH | SHARED | | 497499 | |
| D NATIONAL HEALTH INVS INC | COM | 63633D10 | 198 | 7100 | SH | SHARED | 02 | 7100 | |
| D NATIONAL HEALTH INVS INC | COM | 63633D10 | 181 | 6500 | SH | SHARED | 10 | 6500 | |
| D NATIONAL INSTRS CORP | COM | 63651810 | 355 | 10670 | SH | SHARED | | 10670 | |
| D NATIONAL INSTRS CORP | COM | 63651810 | 582 | 17475 | SH | SHARED | | 525 | 16950 |
| D NATIONAL INSTRS CORP | COM | 63651810 | 187 | 5615 | SH | SHARED | 02 | 5615 | |
| D NATIONAL INSTRS CORP | COM | 63651810 | 613 | 18399 | SH | SHARED | 10 | 9899 | 8500 |
| D NATIONAL INTERSTATE CORP | COM | 63654010 | 65 | 1985 | SH | SHARED | | 1985 | |
| D NATIONAL LAMPOON INC NEW | COM | 63663710 | 0 | 172 | SH | SHARED | | 172 | |
| D NATIONAL MED HEALTH CARD SYS | COM NEW | 63691830 | 1 | 142 | SH | SHARED | | 142 | |
| D NATIONAL OILWELL VARCO INC | COM | 63707110 | 45814 | 623665 | SH | SHARED | | 623665 | |
| D NATIONAL OILWELL VARCO INC | COM | 63707110 | 5490 | 74743 | SH | SHARED | 01 | 74067 | 676 |
| D NATIONAL OILWELL VARCO INC | COM | 63707110 | 29 | 400 | SH | SHR/OTHR | 01 | | 400 |
| D NATIONAL OILWELL VARCO INC | COM | 63707110 | 2474 | 33688 | SH | SHARED | 02 | 33688 | |
| D NATIONAL OILWELL VARCO INC | COM | 63707110 | 47954 | 652798 | SH | SHARED | 04 | 652798 | |
| D NATIONAL OILWELL VARCO INC | COM | 63707110 | 11763 | 160140 | SH | SHARED | 05 | 160140 | |
| D NATIONAL OILWELL VARCO INC | COM | 63707110 | 249 | 3400 | SH | SHARED | 06 | | 3400 |
| D NATIONAL OILWELL VARCO INC | COM | 63707110 | 49828 | 678310 | SH | SHARED | 10 | 678310 | |
| D NATIONAL OILWELL VARCO INC | COM | 63707110 | 1160 | 15795 | SH | SHARED | 14 | | 15795 |
| D NATIONAL OILWELL VARCO INC | COM | 63707110 | 4362 | 59382 | SH | SHARED | 16 | 59382 | |
| D NATIONAL OILWELL VARCO INC | COM | 63707110 | 12 | 171 | SH | SHARED | 21 | | 171 |
| D NATIONAL PENN BANCSHARES INC | COM | 63713810 | 355 | 23508 | SH | SHARED | | 23508 | |
| D NATIONAL PENN BANCSHARES INC | COM | 63713810 | 32 | 2115 | SH | SHARED | 01 | 2115 | |
| D NATIONAL PENN BANCSHARES INC | COM | 63713810 | 240 | 15882 | SH | SHARED | 02 | 15882 | |
| D NATIONAL PENN BANCSHARES INC | COM | 63713810 | 670 | 44302 | SH | SHARED | 10 | 44302 | |
| D NATIONAL PRESTO INDS INC | COM | 63721510 | 141 | 2682 | SH | SHARED | | 2682 | |
| D NATIONAL PRESTO INDS INC | COM | 63721510 | 18 | 350 | SH | SHARED | 02 | 350 | |
| D NATIONAL PRESTO INDS INC | COM | 63721510 | 168 | 3200 | SH | SHARED | 10 | 3200 | |
| D NATIONAL RESEARCH CORP | COM | 63737210 | 1 | 55 | SH | SHARED | | 55 | |
| D NATIONAL RETAIL PROPERTIES I | COM | 63741710 | 2210 | 94543 | SH | SHARED | | 94543 | |
| D NATIONAL RETAIL PROPERTIES I | COM | 63741710 | 102 | 4400 | SH | SHARED | 01 | 4400 | |
| D NATIONAL RETAIL PROPERTIES I | COM | 63741710 | 1683 | 72000 | SH | SHARED | 10 | 72000 | |
| D NATIONAL RETAIL PROPERTIES I | COM | 63741710 | 14028 | 600000 | SH | SHARED | 11 | | 600000 |
| D NATIONAL SEC GROUP INC | COM | 63754610 | 0 | 53 | SH | SHARED | | 53 | |
| D NATIONAL SEMICONDUCTOR CORP | COM | 63764010 | 6533 | 288568 | SH | SHARED | | 288568 | |
| D NATIONAL SEMICONDUCTOR CORP | COM | 63764010 | 1782 | 78735 | SH | SHARED | 01 | 63495 | 15240 |
| D NATIONAL SEMICONDUCTOR CORP | COM | 63764010 | 279 | 12350 | SH | SHR/OTHR | 01 | | 12350 |
| D NATIONAL SEMICONDUCTOR CORP | COM | 63764010 | 6407 | 283026 | SH | SHARED | 02 | 283026 | |
| D NATIONAL SEMICONDUCTOR CORP | COM | 63764010 | 905 | 40000 | SH | SHARED | 04 | 40000 | |
| D NATIONAL SEMICONDUCTOR CORP | COM | 63764010 | 91 | 4040 | SH | SHARED | 06 | | 4040 |
| D NATIONAL SEMICONDUCTOR CORP | COM | 63764010 | 14450 | 638293 | SH | SHARED | 10 | 638293 | |
| D NATIONAL SEMICONDUCTOR CORP | COM | 63764010 | 253 | 11200 | SH | SHARED | 14 | | 11200 |
| D NATIONAL SEMICONDUCTOR CORP | COM | 63764010 | 9 | 400 | SH | SHARED | 20 | 400 | |
| D NATIONAL SEMICONDUCTOR CORP | COM | 63764010 | 24 | 1095 | SH | SHR/OTHR | 21 | | 1095 |
| D NATIONAL SEMICONDUCTOR CORP | COM | 63764010 | 5 | 250 | SH | SHARED | 22 | 250 | |
| D NATIONAL TECHNICAL SYS INC | COM | 63810410 | 1 | 167 | SH | SHARED | | 167 | |
| D NATIONAL WESTN LIFE INS CO | CL A | 63852210 | 6 | 30 | SH | SHARED | | 30 | |
| D NATIONAL WESTN LIFE INS CO | CL A | 63852210 | 31 | 150 | SH | SHARED | 02 | 150 | |
| D NATIONAL WESTN LIFE INS CO | CL A | 63852210 | 207 | 1000 | SH | SHARED | 10 | 1000 | |
| D NATIONSHEALTH INC | COM | 63860C10 | 0 | 77 | SH | SHARED | | 77 | |
| D NATIONSHEALTH INC | COM | 63860C10 | 0 | 100 | SH | SHARED | 02 | 100 | |
| D NATIONWIDE FINL SVCS INC | CL A | 63861210 | 6053 | 134488 | SH | SHARED | | 134488 | |
| D NATIONWIDE FINL SVCS INC | CL A | 63861210 | 160 | 3575 | SH | SHARED | 01 | 3575 | |
| D NATIONWIDE FINL SVCS INC | CL A | 63861210 | 23 | 528 | SH | SHARED | 02 | 528 | |
| D NATIONWIDE FINL SVCS INC | CL A | 63861210 | 396 | 8814 | SH | SHARED | 10 | 8814 | |
| D NATIONWIDE FINL SVCS INC | CL A | 63861210 | 4 | 105 | SH | SHARED | 21 | | 105 |
| D NATIONWIDE FINL SVCS INC | CL A | 63861210 | 9 | 200 | SH | SHARED | 22 | 200 | |
| D NATIONWIDE HEALTH PPTYS INC | COM | 63862010 | 425 | 13553 | SH | SHARED | | 13553 | |
| D NATIONWIDE HEALTH PPTYS INC | COM | 63862010 | 1013 | 32300 | SH | SHARED | 01 | 2200 | 30100 |
| D NATIONWIDE HEALTH PPTYS INC | COM | 63862010 | 138 | 4402 | SH | SHARED | 02 | 4402 | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | NATIONWIDE HEALTH PPTYS INC | COM | 63862010 | 9439 | 300900 SH | SHARED | 10 | 300900 | |
| D | NATIONWIDE HEALTH PPTYS INC | COM | 63862010 | 208785 | 6655578 SH | SHARED | 11 | 3548965 | 3106613 |
| D | NATIONWIDE HEALTH PPTYS INC | COM | 63862010 | 95 | 3040 SH | SHR/OTHR | 23 | | 3040 |
| D | NATIONWIDE HEALTH PPTYS INC | PFD CV B 7.75% | 63862030 | 13000 | 100000 SH | SHARED | | 100000 | |
| D | NATURAL ALTERNATIVES INTL IN | COM NEW | 63884230 | 1 | 118 SH | SHARED | | 118 | |
| D | NATURAL GAS SERVICES GROUP | COM | 63886Q10 | 25 | 1309 SH | SHARED | | 1309 | |
| D | NATURAL HEALTH TRENDS CORP | COM PAR $.001 | 63888P40 | 0 | 234 SH | SHARED | | 234 | |
| D | NAVIGATORS GROUP INC | COM | 63890410 | 130 | 2005 SH | SHARED | | 2005 | |
| D | NAVIGATORS GROUP INC | COM | 63890410 | 154 | 2375 SH | SHARED | 02 | 2375 | |
| D | NAVIGATORS GROUP INC | COM | 63890410 | 2970 | 45700 SH | SHARED | 10 | 45700 | |
| D | NATURAL RESOURCE PARTNERS L | COM UNIT L P | 63900P10 | 107 | 3326 SH | SHARED | | 3326 | |
| D | NATURE VISION INC | COM | 63902E10 | 0 | 36 SH | SHARED | | 36 | |
| D | NATUZZI S P A | ADR | 63905A10 | 1 | 367 SH | SHARED | | 367 | |
| D | NATUS MEDICAL INC DEL | COM | 63905010 | 3 | 190 SH | SHARED | | 190 | |
| D | NATUS MEDICAL INC DEL | COM | 63905010 | 4 | 250 SH | SHARED | 01 | | 250 |
| D | NAUGATUCK VY FINL CORP | COM | 63906710 | 356 | 37522 SH | SHARED | | 37522 | |
| D | NAUTILUS INC | COM | 63910L10 | 9 | 2008 SH | SHARED | | 2008 | |
| D | NAUTILUS INC | COM | 63910B10 | 205 | 42450 SH | SHARED | 02 | 42450 | |
| D | NAVARRE CORP | COM | 63920810 | 1 | 940 SH | SHARED | | 940 | |
| D | NAVISITE INC | COM NEW | 63935M20 | 5 | 1148 SH | SHARED | | 1148 | |
| D | NAVISITE INC | COM NEW | 63935M20 | 19 | 3800 SH | SHARED | 02 | 3800 | |
| D | NAVIGANT CONSULTING INC | COM | 63935N10 | 96 | 7054 SH | SHARED | | 7054 | |
| D | NAVIGANT CONSULTING INC | COM | 63935N10 | 217 | 15900 SH | SHARED | | | 15900 |
| D | NAVIGANT CONSULTING INC | COM | 63935N10 | 248 | 18172 SH | SHARED | 02 | 18172 | |
| D | NAVIGANT CONSULTING INC | COM | 63935N10 | 106 | 7800 SH | SHARED | 10 | 7800 | |
| D | NAVIGANT CONSULTING INC | COM | 63935N10 | 26 | 1916 SH | SHARED | 21 | 1916 | |
| D | NAVTEQ CORP | COM | 63936L10 | 51881 | 686260 SH | SHARED | | 686260 | |
| D | NAVTEQ CORP | COM | 63936L10 | 530 | 7015 SH | SHARED | 01 | 6890 | 125 |
| D | NAVTEQ CORP | COM | 63936L10 | 1549 | 20500 SH | SHARED | 02 | 20500 | |
| D | NAVTEQ CORP | COM | 63936L10 | 1285 | 17000 SH | SHARED | 04 | 17000 | |
| D | NAVTEQ CORP | COM | 63936L10 | 52 | 700 SH | SHARED | 06 | | 700 |
| D | NAVTEQ CORP | COM | 63936L10 | 393 | 5200 SH | SHARED | 10 | 5200 | |
| D | NAVTEQ CORP | COM | 63936L10 | 51 | 675 SH | SHR/OTHR | 23 | | 675 |
| D | NEENAH PAPER INC | COM | 64007910 | 3 | 124 SH | SHARED | | 124 | |
| D | NEENAH PAPER INC | COM | 64007910 | 53 | 1820 SH | SHARED | 01 | 657 | 1163 |
| D | NEENAH PAPER INC | COM | 64007910 | 134 | 4600 SH | SHARED | 10 | 4600 | |
| D | NEENAH PAPER INC | COM | 64007910 | 11 | 400 SH | SHARED | 23 | 400 | |
| D | NEENAH PAPER INC | COM | 64007910 | 10 | 365 SH | SHR/OTHR | 23 | | 365 |
| D | NEKTAR THERAPEUTICS | COM | 64026810 | 681 | 101498 SH | SHARED | | 101498 | |
| D | NEKTAR THERAPEUTICS | COM | 64026810 | 1401 | 208900 SH | SHARED | 02 | 208900 | |
| D | NEKTAR THERAPEUTICS | COM | 64026810 | 11 | 1700 SH | SHARED | 10 | 1700 | |
| D | NEKTAR THERAPEUTICS | COM | 64026810 | 22 | 3335 SH | SHARED | 21 | 3335 | |
| D | NELNET INC | CL A | 64031N10 | 1246 | 98069 SH | SHARED | | 98069 | |
| D | NEOGEN CORP | COM | 64049110 | 9 | 367 SH | SHARED | | 367 | |
| D | NEOGEN CORP | COM | 64049110 | 47 | 1800 SH | SHARED | 02 | 1800 | |
| D | NEOMAGIC CORP | COM | 64049T20 | 0 | 321 SH | SHARED | | 321 | |
| D | NEONODE INC | COM | 64051M10 | 1 | 300 SH | SHARED | | 300 | |
| D | NEOSE TECHNOLOGIES INC | COM | 64052210 | 1 | 1225 SH | SHARED | | 1225 | |
| D | NEOSTEM INC | COM NEW | 64065030 | 0 | 42 SH | SHARED | | 42 | |
| D | NEPHROS INC | COM | 64067110 | 0 | 160 SH | SHARED | | 160 | |
| D | NEOPHARM INC | COM | 64091910 | 0 | 592 SH | SHARED | | 592 | |
| D | NESS TECHNOLOGIES INC | COM | 64104X10 | 62 | 6802 SH | SHARED | | 6802 | |
| D | NESS TECHNOLOGIES INC | COM | 64104X10 | 23 | 2536 SH | SHARED | 21 | 2536 | |
| D | NET 1 UEPS TECHNOLOGIES INC | COM NEW | 64107N20 | 133 | 4549 SH | SHARED | | 4549 | |
| D | NET 1 UEPS TECHNOLOGIES INC | COM NEW | 64107N20 | 99 | 3395 SH | SHARED | 01 | 3395 | |
| D | NET 1 UEPS TECHNOLOGIES INC | COM NEW | 64107N20 | 207 | 7075 SH | SHARED | 02 | 7075 | |
| D | NET 1 UEPS TECHNOLOGIES INC | COM NEW | 64107N20 | 450 | 15350 SH | SHARED | 04 | 15350 | |
| D | NET 1 UEPS TECHNOLOGIES INC | COM NEW | 64107N20 | 431 | 14700 SH | SHARED | 10 | 14700 | |
| D | NESTOR INC | COM NEW | 64074450 | 0 | 365 SH | SHARED | | 365 | |
| D | NET SERVICOS DE COMUNICACAO | SPONSD ADR NEW | 64109T20 | 14185 | 1184100 SH | SHARED | | 38500 | 1145600 |
| D | NET SERVICOS DE COMUNICACAO | SPONSD ADR NEW | 64109T20 | 8051 | 672100 SH | SHARED | 10 | | 672100 |
| D | NET SERVICOS DE COMUNICACAO | SPONSD ADR NEW | 64109T20 | 329 | 27500 SH | SHARED | 15 | | 27500 |
| D | NETFLIX INC | COM | 64110L10 | 770 | 28962 SH | SHARED | | 28962 | |
| D | NETFLIX INC | COM | 64110L10 | 1055 | 39665 SH | SHARED | 01 | 21765 | 17900 |
| D | NETFLIX INC | COM | 64110L10 | 60 | 2274 SH | SHARED | 02 | 2274 | |
| D | NETEASE COM INC | SPONSORED ADR | 64110W10 | 555 | 29307 SH | SHARED | | 29307 | |
| D | NETGEAR INC | COM | 64111Q10 | 1346 | 37754 SH | SHARED | | 37754 | |
| D | NETGEAR INC | COM | 64111Q10 | 1268 | 35550 SH | SHARED | 01 | 35200 | 350 |
| D | NETGEAR INC | COM | 64111Q10 | 1159 | 32500 SH | SHR/OTHR | 01 | | 32500 |
| D | NETGEAR INC | COM | 64111Q10 | 13 | 365 SH | SHARED | 02 | 365 | |
| D | NETGEAR INC | COM | 64111Q10 | 53 | 1499 SH | SHARED | 21 | 1499 | |
| D | NETMANAGE INC | COM NEW | 64114430 | 1 | 195 SH | SHARED | | 195 | |
| D | NETMANAGE INC | COM NEW | 64114430 | 0 | 20 SH | SHARED | 01 | | 20 |
| D | NETSOL TECHNOLOGIES INC | COM NEW | 64115A20 | 1 | 648 SH | SHARED | | 648 | |
| D | NETSOL TECHNOLOGIES INC | COM NEW | 64115A20 | 28 | 11625 SH | SHARED | 02 | 11625 | |
| D | NETSCOUT SYS INC | COM | 64115T10 | 405 | 31759 SH | SHARED | | 31759 | |
| D | NETSCOUT SYS INC | COM | 64115T10 | 112 | 8844 SH | SHARED | 02 | 8844 | |
| D | NETLOGIC MICROSYSTEMS INC | COM | 64118B10 | 309 | 9602 SH | SHARED | | 9602 | |
| D | NETLOGIC MICROSYSTEMS INC | COM | 64118B10 | 35 | 1100 SH | SHARED | 01 | 1100 | |
| D | NETLOGIC MICROSYSTEMS INC | COM | 64118B10 | 1403 | 43600 SH | SHARED | 02 | 43600 | |
| D | NETLOGIC MICROSYSTEMS INC | COM | 64118B10 | 8272 | 256900 SH | SHARED | 10 | 256900 | |
| D | NETLIST INC | COM | 64118J10 | 0 | 306 SH | SHARED | | 306 | |
| D | NETWORK APPLIANCE INC | COM | 64120L10 | 302 | 12106 SH | SHARED | | 18 | 12088 |
| D | NETWORK APPLIANCE INC | COM | 64120L10 | 12005 | 481009 SH | SHARED | | 481009 | |
| D | NETWORK APPLIANCE INC | COM | 64120L10 | 936 | 37500 SH | SHARED | 01 | 37500 | |
| D | NETWORK APPLIANCE INC | COM | 64120L10 | 353 | 14161 SH | SHR/OTHR | 01 | | 14161 |
| D | NETWORK APPLIANCE INC | COM | 64120L10 | 4542 | 181989 SH | SHARED | 02 | 181989 | |
| D | NETWORK APPLIANCE INC | COM | 64120L10 | 118 | 4735 SH | SHARED | 04 | 4735 | |
| D | NETWORK APPLIANCE INC | COM | 64120L10 | 1847 | 74000 SH | SHARED | 04 | 74000 | |
| D | NETWORK APPLIANCE INC | COM | 64120L10 | 5 | 240 SH | SHARED | 05 | 240 | |
| D | NETWORK APPLIANCE INC | COM | 64120L10 | 75 | 3010 SH | SHARED | 06 | | 3010 |
| D | NETWORK APPLIANCE INC | COM | 64120L10 | 3618 | 144962 SH | SHARED | 10 | 144962 | |
| D | NETWORK APPLIANCE INC | COM | 64120L10 | 244 | 9810 SH | SHARED | 19 | 9810 | |
| D | NETWORK APPLIANCE INC | COM | 64120L10 | 8 | 350 SH | SHARED | 20 | 350 | |
| D | NETWORK APPLIANCE INC | COM | 64120L10 | 324 | 13000 SH | SHR/OTHR | 20 | | 13000 |
| D | NETWORK EQUIP TECHNOLOGIES | COM | 64120B10 | 138 | 16408 SH | SHARED | | 16408 | |
| D | NETWORK ENGINES INC | COM | 64121A10 | 1 | 897 SH | SHARED | | 897 | |
| D | NEUBERGER BERMAN CA INT MUN | COM | 64123C10 | 123 | 9600 SH | SHARED | | 9600 | |
| D | NEUBERGER BERMAN NY INT MUN | COM | 64124K10 | 74 | 5963 SH | SHARED | | 5963 | |
| D | NEUROBIOLOGICAL TECH INC | COM NEW | 64124W30 | 2 | 653 SH | SHARED | | 653 | |
| D | NEUROBIOLOGICAL TECH INC | COM NEW | 64124W30 | 119 | 38872 SH | SHR/OTHR | 01 | | 38872 |
| D | NEUROCRINE BIOSCIENCES INC | COM | 64125C10 | 38 | 8553 SH | SHARED | | 8553 | |
| D | NEUROCRINE BIOSCIENCES INC | COM | 64125C10 | 43 | 9600 SH | SHARED | 01 | 9600 | |
| D | NEUROCRINE BIOSCIENCES INC | COM | 64125C10 | 0 | 100 SH | SHARED | 02 | 100 | |
| D | NEUROCHEM INC | COM | 64125K10 | 22 | 10000 SH | SHARED | 04 | | 10000 |
| D | NEUROGESX INC | COM | 64125210 | 1 | 189 SH | SHARED | | 189 | |
| D | NEUROMETRIX INC | COM | 64125510 | 9 | 1038 SH | SHARED | | 1038 | |
| D | NEUBERGER BERMAN RLTY INC FD | COM | 64126G10 | 25010 | 1580924 SH | SHARED | | 1580924 | |
| D | NEUBERGER BERMAN INCOME OPP | COM SHS | 64126L10 | 4209 | 377895 SH | SHARED | | 377895 | |
| D | NEVADA GOLD & CASINOS INC | COM | 64126Q20 | 0 | 258 SH | SHARED | | 258 | |
| D | NEUSTAR INC | CL A | 64126X20 | 697 | 24315 SH | SHARED | | 24315 | |
| D | NEUSTAR INC | CL A | 64126X20 | 648 | 22600 SH | SHARED | 01 | | 22600 |
| D | NEUSTAR INC | CL A | 64126X20 | 557 | 19444 SH | SHARED | 01 | 19444 | |
| D | NEUSTAR INC | CL A | 64126X20 | 11624 | 405300 SH | SHARED | 10 | 405300 | |

```
D NEUSTAR INC                  CL A       64126X20     2       90 SH    SHARED     21              90
D NEVADA CHEMICALS INC         COM        64127C10     0       99 SH    SHARED              99
D NEUBERGER BERMAN DIV ADVANT  COM        64127J10  2862   166514 SH    SHARED          166514
D NEURALSTEM INC               COM        64127B30     2      561 SH    SHARED             561
D NEW AMER HIGH INCOME FD INC  COM        64187610   261   153000 SH    SHARED          153000
D NEUBERGER BERMAN RE ES SEC F COM        64190A10  2296   199557 SH    SHARED          199557
D NEW CENTRY BANCORP INC DUNN  COM        6435M10      1      166 SH    SHARED             166
D NEW ENGLAND BANCSHARES INC C COM NEW    64386320     1      147 SH    SHARED             147
D NEW FRONTIER MEDIA INC       COM        64439810  1817   330540 SH    SHARED          330540
D NEW GERMANY FD INC           COM        64446510  8847   520400 SH    SHARED          520400
D NEW GERMANY FD INC           COM        64446510    17     1000 SH    SHARED     20            1000
D NEW GOLD INC CDA             COM        64453510     0      100 SH    SHARED             100
D NEW HAMPSHIRE THRIFT BANCSHS COM        64472210     1      149 SH    SHARED             149
D NEW JERSEY RES               COM        64602510     0        3 SH    SHARED               3
D NEW JERSEY RES               COM        64602510    27      550 SH    SHARED     01             550
D NEW JERSEY RES               COM        64602510  1793    35850 SH    SHARED     10           35850
D NEW ORIENTAL ED & TECH GRP I SPON ADR   64758110  1209    15004 SH    SHARED           15004
D NEW YORK & CO INC            COM        64929510   137    21621 SH    SHARED           21621
D NEW YORK & CO INC            COM        64929510    32     5100 SH    SHARED     01            5100
D NEW YORK & CO INC            COM        64929510   599    93900 SH    SHARED     10           93900
D NEW YORK CMNTY CAP TR V      BONUSES    64944P30  1863    38900 SH    SHARED     02           38900
D NEW YORK CMNTY CAP TR V      BONUSES    64944P30    47     1000 SH    SHR/OTHR   23            1000
D NEW YORK CMNTY BANCORP INC   COM        64944510 26029  1480632 SH    SHARED         1480632
D NEW YORK CMNTY BANCORP INC   COM        64944510  1720    97891 SH    SHARED     01     854   97037
D NEW YORK CMNTY BANCORP INC   COM        64944510  1022    58187 SH    SHARED     02   58187
D NEW YORK CMNTY BANCORP INC   COM        64944510    38     2210 SH    SHARED     06            2210
D NEW YORK CMNTY BANCORP INC   COM        64944510  3055   173817 SH    SHARED     10  173817
D NEW YORK CMNTY BANCORP INC   COM        64944510    43     2500 SH    SHARED     21            2500
D NEW YORK TIMES CO            CL A       65011110  5289   301716 SH    SHARED          301716
D NEW YORK TIMES CO            CL A       65011110  1263    72069 SH    SHARED     01   71729     340
D NEW YORK TIMES CO            CL A       65011110  1345    76746 SH    SHARED     02   76746
D NEW YORK TIMES CO            CL A       65011110 47769  2725000 SH    SHARED     04 2725000
D NEW YORK TIMES CO            CL A       65011110 33978  1938308 SH    SHARED     10 1920108   18200
D NEW YORK TIMES CO            CL A       65011110   333    19000 SH    SHARED     15           19000
D NEW YORK TIMES CO            CL A       65011110    17     1000 SH    SHR/OTHR   23            1000
D NEW YORK TIMES CO            CL A       65011110   562    32100 SH    SHARED     24           32100
D NEWALLIANCE BANCSHARES INC   COM        65020310  8151   707573 SH    SHARED          707573
D NEWALLIANCE BANCSHARES INC   COM        65020310   125    10900 SH    SHARED     01           10900
D NEWALLIANCE BANCSHARES INC   COM        65020310    25     2247 SH    SHARED     02    2247
D NEWALLIANCE BANCSHARES INC   COM        65020310   426    37030 SH    SHARED     10   37030
D NEWALLIANCE BANCSHARES INC   COM        65020310     8      695 SH    SHARED     21             695
D NEWBRIDGE BANCORP            COM        65105M10     4      419 SH    SHARED             419
D NEWCASTLE INVT CORP          COM        65105M10    12     1000 SH    SHARED            1000
D NEWCASTLE INVT CORP          COM        65105M10 17837  1376362 SH    SHARED         1376362
D NEWCASTLE INVT CORP          COM        65105M10   226    17500 SH    SHARED     01           17500
D NEWCASTLE INVT CORP          COM        65105M10   207    16000 SH    SHARED     02   16000
D NEWCASTLE INVT CORP          COM        65105M10   435    33600 SH    SHARED     10   33600
D NEWELL RUBBERMAID INC        COM        65122910 17052   658903 SH    SHARED          642303   16600
D NEWELL RUBBERMAID INC        COM        65122910   854    33031 SH    SHARED     01   33031
D NEWELL RUBBERMAID INC        COM        65122910   713    27555 SH    SHARED     02   27555
D NEWELL RUBBERMAID INC        COM        65122910     6      250 SH    SHARED     05     250
D NEWELL RUBBERMAID INC        COM        65122910    61     2390 SH    SHARED     06            2390
D NEWELL RUBBERMAID INC        COM        65122910  6986   269947 SH    SHARED     10  269947
D NEWELL RUBBERMAID INC        COM        65122910   936    36200 SH    SHARED     14           36200
D NEWELL RUBBERMAID INC        COM        65122910    10      425 SH    SHARED     21             425
D NEWELL RUBBERMAID INC        COM        65122910     5      200 SH    SHARED     22             200
D NEWFIELD EXPL CO             COM        65129010  1308    24835 SH    SHARED           24835
D NEWFIELD EXPL CO             COM        65129010  2118    40200 SH    SHARED     01     400   39800
D NEWFIELD EXPL CO             COM        65129010   516     9801 SH    SHARED     02    9801
D NEWFIELD EXPL CO             COM        65129010    67     1290 SH    SHARED     06            1290
D NEWFIELD EXPL CO             COM        65129010  1876    35615 SH    SHARED     10   35615
D NEWFIELD EXPL CO             COM        65129010  2134    40500 SH    SHARED     14           40500
D NEWMARKET CORP               COM        65158710 73299  1316207 SH    SHARED         1316207
D NEWMARKET CORP               COM        65158710   317     5700 SH    SHARED            5700
D NEWMARKET CORP               COM        65158710   651    11700 SH    SHARED     10           11700
D NEWMONT MINING CORP          COM        65163910   689    14127 SH    SHARED           14127
D NEWMONT MINING CORP          COM        65163910 168826 3457437 SH    SHARED         3457437
D NEWMONT MINING CORP          COM        65163910  2315    47416 SH    SHARED     01   43409    4007
D NEWMONT MINING CORP          COM        65163910     4      100 SH    SHR/OTHR   01             100
D NEWMONT MINING CORP          COM        65163910  1978    40522 SH    SHARED     02   40522
D NEWMONT MINING CORP          COM        65163910  9204   188500 SH    SHARED     04  188500
D NEWMONT MINING CORP          COM        65163910    11      230 SH    SHARED     05     230
D NEWMONT MINING CORP          COM        65163910   215     4410 SH    SHARED     06            4410
D NEWMONT MINING CORP          COM        65163910 28391   581432 SH    SHARED     10  581432
D NEWMONT MINING CORP          COM        65163910  1214    24877 SH    SHARED     14           24877
D NEWMONT MINING CORP          COM        65163910    10      215 SH    SHARED     21             215
D NEWMONT MINING CORP          COM        65163910   253     5200 SH    SHARED     23    5200
D NEWMONT MINING CORP          COM        65163910   297     6086 SH    SHR/OTHR   23            6086
D NEWPARK RES INC              COM PAR $.01NEW 65171850 31   5744 SH    SHARED            5744
D NEWPARK RES INC              COM PAR $.01NEW 65171850  8   1595 SH    SHARED     01            1595
D NEWPORT BANCORP INC          COM        65175410     1      116 SH    SHARED             116
D NEWPORT CORP                 NOTE  2.500% 2/1 65824AB 9581 11000000 PRN SHARED        1000000
D NEWPORT CORP                 COM        65182410   104     8158 SH    SHARED            8158
D NEWPORT CORP                 COM        65182410   108     8500 SH    SHARED     10            8500
D NEWS CORP                    CL A       65248E10   112     5500 SH    SHARED            5500
D NEWS CORP                    CL A       65248E10 168034 8200812 SH    SHARED         8200812
D NEWS CORP                    CL A       65248E10  4690   228936 SH    SHARED     01  228936
D NEWS CORP                    CL A       65248E10  6090   297261 SH    SHARED     02  297261
D NEWS CORP                    CL A       65248E10  8196   400000 SH    SHARED     04  400000
D NEWS CORP                    CL A       65248E10    16      784 SH    SHARED     05     784
D NEWS CORP                    CL A       65248E10   345    16860 SH    SHARED     06           16860
D NEWS CORP                    CL A       65248E10 31383  1531648 SH    SHARED     10 1489548   42100
D NEWS CORP                    CL A       65248E10   263    12847 SH    SHARED     14           12847
D NEWS CORP                    CL A       65248E10   168     8224 SH    SHARED     23       6    8218
D NEWS CORP                    CL A       65248E10   169     8255 SH    SHR/OTHR   23            8255
D NEWS CORP                    CL B       65248E20 23028  1083686 SH    SHARED         1083686
D NEWS CORP                    CL B       65248E20    52     2478 SH    SHARED     01            2478
D NEWS CORP                    CL B       65248E20  3187   150000 SH    SHARED     04  150000
D NEWS CORP                    CL B       65248E20     4      224 SH    SHARED     05     224
D NEWS CORP                    CL B       65248E20   118     5580 SH    SHARED     06            5580
D NEWS CORP                    CL B       65248E20  1477    69510 SH    SHARED     10   69510
D NEWS CORP                    CL B       65248E20    10      475 SH    SHARED     20     475
D NEWS CORP                    CL B       65248E20   306    14400 SH    SHR/OTHR   23           14400
D NEWSTAR FINANCIAL INC        COM        65251P10    30     3698 SH    SHARED            3698
D NEWTEK BUSINESS SVCS INC     COM        65252610     0      706 SH    SHARED             706
D NEXMED INC                   COM        65290310     3     2113 SH    SHARED            2113
D NEXMED INC                   COM        65290310   319   224719 SH    SHARED     23          224719
D NEXTEL COMMUNICATIONS INC    NOTE  5.250% 1/1 65332VAY 37545 37925008 PRN SHARED   02 7925008
D NEXITY FINL CORP             COM NEW    65333B20     4      695 SH    SHARED             695
D NEXTEST SYS CORP             COM        65333910     6      322 SH    SHARED             322
D NEXEN INC                    COM        65334H10 27832   862491 SH    SHARED          693391  169100
D NEXEN INC                    COM        65334H10   547    16964 SH    SHARED     01   16964
D NEXEN INC                    COM        65334H10 184165 5707009 SH    SHARED     04 5707009
D NEXEN INC                    COM        65334H10 30310   939275 SH    SHARED     06          939275
```

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | NEXEN INC | COM | 65334H10 | 20112 | 623244 SH | SHARED | 10 | 525144 | 98100 |
| D | NEXEN INC | COM | 65334H10 | 1726 | 53500 SH | SHARED | 14 | 1500 | 52000 |
| D | NEXEN INC | COM | 65334H10 | 129 | 4000 SH | SHARED | 15 | | 4000 |
| D | NEXEN INC | COM | 65334H10 | 4226 | 130973 SH | SHARED | 16 | 130973 | |
| D | NEXEN INC | COM | 65334H10 | 4 | 148 SH | SHARED | 21 | | 148 |
| D | NEXEN INC | COM | 65334H10 | 309 | 9600 SH | SHARED | 24 | 9600 | |
| D | NEXCEN BRANDS INC | COM | 65335110 | 8 | 1848 SH | SHARED | | 1848 | |
| D | NEXCEN BRANDS INC | COM | 65335110 | 0 | 50 SH | SHARED | 01 | | 50 |
| D | NEXCEN BRANDS INC | COM | 65335110 | 831 | 171900 SH | SHARED | 10 | 171900 | |
| D | NEXSTAR BROADCASTING GROUP I | CL A | 65336X10 | 34 | 3731 SH | SHARED | | 3731 | |
| D | NFJ DIVID INT & PREM STRTGY | COM SHS | 65337H10 | 93 | 4000 SH | SHARED | 01 | | 4000 |
| D | NFJ DIVID INT & PREM STRTGY | COM SHS | 65337H10 | 50 | 2180 SH | SHARED | 20 | | 2180 |
| D | NEXTWAVE WIRELESS INC | COM | 65337Y10 | 906 | 168499 SH | SHARED | | 168499 | |
| D | NEXXUS LIGHTING INC | COM | 65338810 | 0 | 123 SH | SHARED | | 123 | |
| D | NICE SYS LTD | SPONSORED ADR | 65365610 | 11187 | 325981 SH | SHARED | | 70381 | 255600 |
| D | NICE SYS LTD | SPONSORED ADR | 65365610 | 962 | 28050 SH | SHARED | 01 | 28050 | |
| D | NICE SYS LTD | SPONSORED ADR | 65365610 | 34269 | 998525 SH | SHARED | 10 | 849925 | 148600 |
| D | NICE SYS LTD | SPONSORED ADR | 65365610 | 249 | 7260 SH | SHARED | 15 | | 7260 |
| D | NICE SYS LTD | SPONSORED ADR | 65365610 | 483 | 14100 SH | SHARED | 24 | 14100 | |
| D | NICHOLAS-APPLGT INTL & PRM S | COM | 65370C10 | 8 | 400 SH | SHARED | | 400 | |
| D | NICHOLAS-APPLEGATE CV & INC | COM | 65370F10 | 2 | 196 SH | SHARED | | 196 | |
| D | NICHOLAS-APPLEGATE CV & INC | COM | 65370F10 | 0 | 1 SH | SHARED | 01 | | 1 |
| D | NICHOLAS APPLEGATE EQT CONV | COM | 65370K10 | 1893 | 84791 SH | SHARED | | 84791 | |
| D | NICOR INC | COM | 65408610 | 21581 | 509608 SH | SHARED | | 509608 | |
| D | NICOR INC | COM | 65408610 | 291 | 6874 SH | SHARED | 01 | 6674 | 200 |
| D | NICOR INC | COM | 65408610 | 28 | 671 SH | SHARED | 02 | 671 | |
| D | NICOR INC | COM | 65408610 | 1661 | 39221 SH | SHARED | 10 | 39221 | |
| D | NIDEC CORP | SPONSORED ADR | 65409010 | 17 | 963 SH | SHARED | | 963 | |
| D | NIDEC CORP | SPONSORED ADR | 65409010 | 1 | 92 SH | SHARED | 01 | | 92 |
| D | NIKE INC | CL B | 65410610 | 2968 | 46215 SH | SHARED | | 29602 | 16613 |
| D | NIKE INC | CL B | 65410610 | 139810 | 2176371 SH | SHARED | | 2176371 | |
| D | NIKE INC | CL B | 65410610 | 17505 | 272494 SH | SHARED | 01 | 194230 | 78264 |
| D | NIKE INC | CL B | 65410610 | 3252 | 50624 SH | SHR/OTHR | 01 | | 50624 |
| D | NIKE INC | CL B | 65410610 | 1709 | 26613 SH | SHARED | 02 | 26613 | |
| D | NIKE INC | CL B | 65410610 | 570 | 8880 SH | SHARED | 04 | 8880 | |
| D | NIKE INC | CL B | 65410610 | 573 | 8920 SH | SHARED | 04 | 8920 | |
| D | NIKE INC | CL B | 65410610 | 11 | 180 SH | SHARED | 05 | 180 | |
| D | NIKE INC | CL B | 65410610 | 2237 | 34830 SH | SHARED | 06 | | 34830 |
| D | NIKE INC | CL B | 65410610 | 21816 | 339617 SH | SHARED | 10 | 337432 | 2185 |
| D | NIKE INC | CL B | 65410610 | 488 | 7600 SH | SHARED | 14 | 7600 | |
| D | NIKE INC | CL B | 65410610 | 4873 | 75868 SH | SHARED | 19 | | 75868 |
| D | NIKE INC | CL B | 65410610 | 3075 | 47880 SH | SHARED | 20 | 20190 | 27690 |
| D | NIKE INC | CL B | 65410610 | 1371 | 21345 SH | SHR/OTHR | 20 | | 21345 |
| D | NIKE INC | CL B | 65410610 | 112 | 1750 SH | SHARED | 21 | 1750 | |
| D | NIKE INC | CL B | 65410610 | 1013 | 15775 SH | SHARED | 22 | 12075 | 3700 |
| D | NIKE INC | CL B | 65410610 | 172 | 2680 SH | SHR/OTHR | 22 | | 2680 |
| D | NIKE INC | CL B | 65410610 | 2764 | 43037 SH | SHARED | 23 | 40287 | 2750 |
| D | NIKE INC | CL B | 65410610 | 1080 | 16826 SH | SHR/OTHR | 23 | | 16826 |
| D | NIGHTHAWK RADIOLOGY HLDGS IN | COM | 65411N10 | 47 | 2250 SH | SHARED | | 2250 | |
| D | NIGHTHAWK RADIOLOGY HLDGS IN | COM | 65411N10 | 13 | 650 SH | SHARED | 01 | | 650 |
| D | NIGHTHAWK RADIOLOGY HLDGS IN | COM | 65411N10 | 1099 | 52250 SH | SHARED | 04 | 52250 | |
| D | NIGHTHAWK RADIOLOGY HLDGS IN | COM | 65411N10 | 14948 | 710140 SH | SHARED | 10 | 710140 | |
| D | 99 CENTS ONLY STORES | COM | 65440X10 | 96 | 12175 SH | SHARED | | 12175 | |
| D | 99 CENTS ONLY STORES | COM | 65440X10 | 105 | 13200 SH | SHARED | 01 | | 13200 |
| D | 99 CENTS ONLY STORES | COM | 65440X10 | 1592 | 200124 SH | SHARED | 02 | 200124 | |
| D | NIPPON TELEG & TEL CORP | SPONSORED ADR | 65462410 | 518 | 21008 SH | SHARED | | 21008 | |
| D | NIPPON TELEG & TEL CORP | SPONSORED ADR | 65462410 | 14 | 595 SH | SHARED | 21 | | 595 |
| D | NISOURCE INC | COM | 65473P10 | 17409 | 921617 SH | SHARED | | 921617 | |
| D | NISOURCE INC | COM | 65473P10 | 614 | 32547 SH | SHARED | 01 | 32547 | |
| D | NISOURCE INC | COM | 65473P10 | 77 | 4079 SH | SHARED | 02 | 4079 | |
| D | NISOURCE INC | COM | 65473P10 | 43 | 2280 SH | SHARED | 06 | | 2280 |
| D | NISOURCE INC | COM | 65473P10 | 2309 | 122274 SH | SHARED | 10 | 122274 | |
| D | NISOURCE INC | COM | 65473P10 | 182 | 9680 SH | SHARED | 14 | | 9680 |
| D | NISOURCE INC | COM | 65473P10 | 18 | 1000 SH | SHARED | 20 | | 1000 |
| D | NISOURCE INC | COM | 65473P10 | 5 | 270 SH | SHARED | 21 | | 270 |
| D | NISOURCE INC | COM | 65473P10 | 37 | 2000 SH | SHR/OTHR | 23 | | 2000 |
| D | NISSAN MOTORS | SPONSORED ADR | 65474440 | 3659 | 168496 SH | SHARED | | 168496 | |
| D | NISSAN MOTORS | SPONSORED ADR | 65474440 | 28 | 1302 SH | SHARED | 01 | 802 | 500 |
| D | NITCHES INC | COM | 65476M10 | 0 | 90 SH | SHARED | | 90 | |
| D | NITROMED INC | COM | 65479850 | 0 | 835 SH | SHARED | | 835 | |
| D | NOAH ED HLDGS LTD | ADR | 65487R30 | 174 | 21693 SH | SHARED | | 21693 | |
| D | NOVA BIOSOURCE FUELS INC | COM | 65488N10 | 2 | 692 SH | SHARED | | 692 | |
| D | NOBEL LEARNING CMNTYS INC | COM | 65488910 | 2 | 181 SH | SHARED | | 181 | |
| D | NOBILITY HOMES INC | COM | 65489210 | 0 | 40 SH | SHARED | | 40 | |
| D | NOKIA CORP | SPONSORED ADR | 65490220 | 78692 | 2049828 SH | SHARED | | 2049828 | |
| D | NOKIA CORP | SPONSORED ADR | 65490220 | 4119 | 107300 SH | SHARED | 01 | 12150 | 95150 |
| D | NOKIA CORP | SPONSORED ADR | 65490220 | 1535 | 40000 SH | SHR/OTHR | 01 | | 40000 |
| D | NOKIA CORP | SPONSORED ADR | 65490220 | 2032 | 52950 SH | SHARED | 06 | | 52950 |
| D | NOKIA CORP | SPONSORED ADR | 65490220 | 46911 | 1221968 SH | SHARED | 10 | 1221968 | |
| D | NOKIA CORP | SPONSORED ADR | 65490220 | 19 | 500 SH | SHR/OTHR | 10 | | 500 |
| D | NOKIA CORP | SPONSORED ADR | 65490220 | 6058 | 157826 SH | SHARED | 20 | 32975 | 124851 |
| D | NOKIA CORP | SPONSORED ADR | 65490220 | 2719 | 70850 SH | SHR/OTHR | 20 | | 70850 |
| D | NOKIA CORP | SPONSORED ADR | 65490220 | 861 | 22435 SH | SHARED | 21 | 22435 | |
| D | NOKIA CORP | SPONSORED ADR | 65490220 | 38 | 1000 SH | SHR/OTHR | 21 | | 1000 |
| D | NOKIA CORP | SPONSORED ADR | 65490220 | 719 | 18750 SH | SHARED | 22 | 12550 | 6200 |
| D | NOKIA CORP | SPONSORED ADR | 65490220 | 837 | 21805 SH | SHR/OTHR | 22 | | 21805 |
| D | NOKIA CORP | SPONSORED ADR | 65490220 | 2936 | 76486 SH | SHARED | 23 | 67186 | 9300 |
| D | NOKIA CORP | SPONSORED ADR | 65490220 | 3152 | 82110 SH | SHR/OTHR | 23 | | 82110 |
| D | NOBLE ENERGY INC | COM | 65504410 | 12337 | 155152 SH | SHARED | | 155152 | |
| D | NOBLE ENERGY INC | COM | 65504410 | 3482 | 43797 SH | SHARED | 01 | 40797 | 3000 |
| D | NOBLE ENERGY INC | COM | 65504410 | 523 | 6578 SH | SHARED | 02 | 6578 | |
| D | NOBLE ENERGY INC | COM | 65504410 | 3101 | 39000 SH | SHARED | 04 | 39000 | |
| D | NOBLE ENERGY INC | COM | 65504410 | 10 | 130 SH | SHARED | 05 | 130 | |
| D | NOBLE ENERGY INC | COM | 65504410 | 46998 | 591032 SH | SHARED | | | 591032 |
| D | NOBLE ENERGY INC | COM | 65504410 | 7614 | 95750 SH | SHARED | 10 | 95750 | |
| D | NOBLE ENERGY INC | COM | 65504410 | 955 | 12018 SH | SHARED | 14 | | 12018 |
| D | NOBLE ENERGY INC | COM | 65504410 | 7 | 90 SH | SHARED | 20 | | 90 |
| D | NOBLE ENERGY INC | COM | 65504410 | 5 | 65 SH | SHR/OTHR | 20 | | 65 |
| D | NOBLE ENERGY INC | COM | 65504410 | 99 | 1250 SH | SHARED | 21 | | 1250 |
| D | NOBLE INTL LTD | COM | 65505310 | 0 | 7 SH | SHARED | | 7 | |
| D | NOMURA HLDGS INC | SPONSORED ADR | 65535H20 | 46 | 2765 SH | SHARED | | 2765 | |
| D | NOMURA HLDGS INC | SPONSORED ADR | 65535H20 | 18 | 1115 SH | SHARED | 01 | 1115 | |
| D | NORDSON CORP | COM | 65566310 | 228 | 3948 SH | SHARED | | 3948 | |
| D | NORDSON CORP | COM | 65566310 | 596 | 10300 SH | SHARED | 01 | | 10300 |
| D | NORDSON CORP | COM | 65566310 | 92 | 1599 SH | SHARED | 02 | 1599 | |
| D | NORDSON CORP | COM | 65566310 | 272 | 4700 SH | SHARED | 10 | 4700 | |
| D | NORDSON CORP | COM | 65566310 | 1280 | 22100 SH | SHARED | 14 | | 22100 |
| D | NORDSON CORP | COM | 65566310 | 50 | 870 SH | SHARED | 21 | | 870 |
| D | NORDSTROM INC | COM | 65566410 | 12203 | 332261 SH | SHARED | | 332261 | |
| D | NORDSTROM INC | COM | 65566410 | 1101 | 29989 SH | SHARED | 01 | 29989 | |
| D | NORDSTROM INC | COM | 65566410 | 2261 | 61567 SH | SHARED | 02 | 61567 | |
| D | NORDSTROM INC | COM | 65566410 | 36 | 1000 SH | SHARED | 06 | | 1000 |
| D | NORDSTROM INC | COM | 65566410 | 7005 | 190735 SH | SHARED | 10 | 190735 | |
| D | NORDSTROM INC | COM | 65566410 | 282 | 7700 SH | SHARED | 14 | | 7700 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | NORFOLK SOUTHERN CORP | COM | | 65584410 | 143158 | 2838194 | SH | SHARED | | 2838194 | |
| D | NORFOLK SOUTHERN CORP | COM | | 65584410 | 2965 | 58794 | SH | SHARED | 01 | 54064 | 4730 |
| D | NORFOLK SOUTHERN CORP | COM | | 65584410 | 460 | 9125 | SH | SHR/OTHR | 01 | | 9125 |
| D | NORFOLK SOUTHERN CORP | COM | | 65584410 | 17318 | 343342 | SH | SHARED | 02 | 343342 | |
| D | NORFOLK SOUTHERN CORP | COM | | 65584410 | 2522 | 50000 | SH | SHARED | 04 | 50000 | |
| D | NORFOLK SOUTHERN CORP | COM | | 65584410 | 9 | 190 | SH | SHARED | 05 | 190 | |
| D | NORFOLK SOUTHERN CORP | COM | | 65584410 | 181 | 3590 | SH | SHARED | 06 | | 3590 |
| D | NORFOLK SOUTHERN CORP | COM | | 65584410 | 14079 | 279130 | SH | SHARED | 10 | 244930 | 34200 |
| D | NORFOLK SOUTHERN CORP | COM | | 65584410 | 58 | 1153 | SH | SHARED | 14 | | 1153 |
| D | NORFOLK SOUTHERN CORP | COM | | 65584410 | 50 | 1000 | SH | SHR/OTHR | 20 | | 1000 |
| D | NORFOLK SOUTHERN CORP | COM | | 65584410 | 17 | 350 | SH | SHARED | 21 | | 350 |
| D | NORFOLK SOUTHERN CORP | COM | | 65584410 | 3227 | 63977 | SH | SHARED | 23 | 59677 | 4300 |
| D | NORFOLK SOUTHERN CORP | COM | | 65584410 | 1399 | 27746 | SH | SHR/OTHR | 23 | | 27746 |
| D | NORTECH SYS INC | COM | | 65655310 | 0 | 35 | SH | SHARED | | 35 | |
| D | NORTEL INVERSORA S A | SPON ADR PFD B | | 65656740 | 15 | 748 | SH | SHARED | | 748 | |
| D | NORTEL INVERSORA S A | SPON ADR PFD B | | 65656740 | 527 | 26000 | SH | SHARED | 04 | 26000 | |
| D | NORTEL NETWORKS CORP NEW | NOTE 4.250% 9/0 | | 656568AB | 2880 | 3000000 | PRN | SHARED | | 3000000 | |
| D | NORTEL NETWORKS CORP NEW | NOTE 4.250% 9/0 | | 656568AB | 3840 | 4000000 | PRN | SHARED | 02 | 4000000 | |
| D | NORTEL NETWORKS CORP NEW | NOTE 4.250% 9/0 | | 656568AB | 0 | 10 | PRN | SHARED | 10 | 10 | |
| D | NORTEL NETWORKS CORP NEW | COM NEW | | 65656850 | 0 | 40 | SH | SHARED | | 40 | |
| D | NORTEL NETWORKS CORP NEW | COM NEW | | 65656850 | 4186 | 277454 | SH | SHARED | | 277454 | |
| D | NORTEL NETWORKS CORP NEW | COM NEW | | 65656850 | 15 | 1029 | SH | SHARED | 01 | 1029 | |
| D | NORTEL NETWORKS CORP NEW | COM NEW | | 65656850 | 1639 | 108650 | SH | SHARED | 02 | 108650 | |
| D | NORTEL NETWORKS CORP NEW | COM NEW | | 65656850 | 226 | 15000 | SH | SHARED | 04 | 15000 | |
| D | NORTEL NETWORKS CORP NEW | COM NEW | | 65656850 | 4 | 300 | SH | SHARED | 05 | 300 | |
| D | NORTEL NETWORKS CORP NEW | COM NEW | | 65656850 | 27 | 1850 | SH | SHARED | 06 | | 1850 |
| D | NORTEL NETWORKS CORP NEW | COM NEW | | 65656850 | 236 | 15680 | SH | SHARED | 10 | 15680 | |
| D | NORTEL NETWORKS CORP NEW | COM NEW | | 65656850 | 258 | 17122 | SH | SHARED | 14 | | 17122 |
| D | NORTEL NETWORKS CORP NEW | COM NEW | | 65656850 | 37 | 2500 | SH | SHARED | 20 | 2500 | |
| D | NORTEL NETWORKS CORP NEW | COM NEW | | 65656850 | 1 | 120 | SH | SHR/OTHR | 23 | | 120 |
| D | NORTH AMERN ENERGY PARTNERS | COM | | 65684410 | 17 | 1300 | SH | SHARED | | 1300 | |
| D | NORTH AMERN GALVANZNG & CTNG | COM | | 65686Y10 | 101 | 16782 | SH | SHARED | | 16782 | |
| D | NORTH AMERN INS LEADERS INC | COM | | 65687M10 | 156 | 20000 | SH | SHARED | | 20000 | |
| D | NORTH AMERN PALLADIUM LTD | COM | | 65691210 | 242 | 65603 | SH | SHARED | | 65603 | |
| D | NORTH AMERN PALLADIUM LTD | COM | | 65691210 | 1 | 300 | SH | SHARED | 02 | 300 | |
| D | NORTH AMERN SCIENTIFIC INC | COM | | 65715D10 | 0 | 584 | SH | SHARED | | 584 | |
| D | NORTH CENT BANCSHARES INC | COM | | 65841810 | 0 | 31 | SH | SHARED | | 31 | |
| D | NORTH EUROPEAN OIL RTY TR | SH BEN INT | | 65931010 | 292 | 8600 | SH | SHARED | 01 | | 8600 |
| D | NORTH EUROPEAN OIL RTY TR | SH BEN INT | | 65931010 | 64 | 1900 | SH | SHARED | 23 | 1900 | |
| D | NORTH PITTSBURGH SYS INC | COM | | 65156210 | 26 | 1150 | SH | SHARED | | 1150 | |
| D | NORTH POINTE HLDGS CORP | COM | | 66169610 | 1 | 163 | SH | SHARED | | 163 | |
| D | NORTH VALLEY BANCORP | COM | | 66304M10 | 7 | 596 | SH | SHARED | | 596 | |
| D | NORTHEAST BANCORP | COM | | 66390410 | 0 | 57 | SH | SHARED | | 57 | |
| D | NORTHEAST CMNTY BANCORP INC | COM | | 66411210 | 291 | 24611 | SH | SHARED | | 24611 | |
| D | NORTHEAST UTILS | COM | | 66439710 | 11338 | 362145 | SH | SHARED | | 362145 | |
| D | NORTHEAST UTILS | COM | | 66439710 | 1980 | 63260 | SH | SHARED | 01 | 17660 | 45600 |
| D | NORTHEAST UTILS | COM | | 66439710 | 31 | 1000 | SH | SHR/OTHR | 01 | | 1000 |
| D | NORTHEAST UTILS | COM | | 66439710 | 605 | 19340 | SH | SHARED | 02 | 19340 | |
| D | NORTHEAST UTILS | COM | | 66439710 | 1314 | 41999 | SH | SHARED | 10 | 34999 | 7000 |
| D | NORTHEAST UTILS | COM | | 66439710 | 18 | 600 | SH | SHARED | 23 | 600 | |
| D | NORTHERN DYNASTY MINERALS LT | COM NEW | | 66510M20 | 184 | 14085 | SH | SHARED | | 14085 | |
| D | NORTHERN STS FINL CORP | COM | | 66575110 | 1 | 70 | SH | SHARED | | 70 | |
| D | NORTHERN TECH INTL CORP | COM | | 66580910 | 0 | 71 | SH | SHARED | | 71 | |
| D | NORTHERN TR CORP | COM | | 66585910 | 148 | 1940 | SH | SHARED | | 1940 | |
| D | NORTHERN TR CORP | COM | | 66585910 | 26517 | 346267 | SH | SHARED | | 328867 | 17400 |
| D | NORTHERN TR CORP | COM | | 66585910 | 2581 | 33713 | SH | SHARED | 01 | 24913 | 8800 |
| D | NORTHERN TR CORP | COM | | 66585910 | 547 | 7146 | SH | SHARED | 02 | 7146 | |
| D | NORTHERN TR CORP | COM | | 66585910 | 173 | 2260 | SH | SHARED | 06 | | 2260 |
| D | NORTHERN TR CORP | COM | | 66585910 | 35239 | 460164 | SH | SHARED | 10 | 460164 | |
| D | NORTHERN TR CORP | COM | | 66585910 | 549 | 7178 | SH | SHARED | 14 | | 7178 |
| D | NORTHERN TR CORP | COM | | 66585910 | 1531 | 20000 | SH | SHARED | 20 | 20000 | |
| D | NORTHERN TR CORP | COM | | 66585910 | 536 | 7000 | SH | SHR/OTHR | 20 | | 7000 |
| D | NORTHERN TR CORP | COM | | 66585910 | 11 | 155 | SH | SHARED | 21 | | 155 |
| D | NORTHERN TR CORP | COM | | 66585910 | 811 | 10596 | SH | SHR/OTHR | 23 | | 10596 |
| D | NORTHFIELD LABS INC | COM | | 66613510 | 0 | 656 | SH | SHARED | | 656 | |
| D | NORTHGATE MINERALS CORP | COM | | 66641610 | 1621 | 535224 | SH | SHARED | | 535224 | |
| D | NORTHRIM BANCORP INC | COM | | 66676210 | 3 | 158 | SH | SHARED | | 158 | |
| D | NORTHROP GRUMMAN CORP | COM | | 66680710 | 37 | 481 | SH | SHARED | | | 481 |
| D | NORTHROP GRUMMAN CORP | COM | | 66680710 | 32242 | 410003 | SH | SHARED | | 339303 | 70700 |
| D | NORTHROP GRUMMAN CORP | COM | | 66680710 | 6327 | 80457 | SH | SHARED | 01 | 80457 | |
| D | NORTHROP GRUMMAN CORP | COM | | 66680710 | 5675 | 72174 | SH | SHARED | 02 | 72174 | |
| D | NORTHROP GRUMMAN CORP | COM | | 66680710 | 191 | 2440 | SH | SHARED | 04 | | 2440 |
| D | NORTHROP GRUMMAN CORP | COM | | 66680710 | 5504 | 70000 | SH | SHARED | 04 | 70000 | |
| D | NORTHROP GRUMMAN CORP | COM | | 66680710 | 13 | 170 | SH | SHARED | 05 | 170 | |
| D | NORTHROP GRUMMAN CORP | COM | | 66680710 | 7933 | 100890 | SH | SHARED | 06 | | 100890 |
| D | NORTHROP GRUMMAN CORP | COM | | 66680710 | 208897 | 2656383 | SH | SHARED | 10 | 2573683 | 82700 |
| D | NORTHROP GRUMMAN CORP | COM | | 66680710 | 1296 | 16487 | SH | SHARED | 14 | | 16487 |
| D | NORTHROP GRUMMAN CORP | COM | | 66680710 | 4698 | 59753 | SH | SHARED | 19 | 59753 | |
| D | NORTHROP GRUMMAN CORP | COM | | 66680710 | 19 | 248 | SH | SHARED | 19 | | 248 |
| D | NORTHROP GRUMMAN CORP | COM | | 66680710 | 10 | 132 | SH | SHARED | 21 | | 132 |
| D | NORTHROP GRUMMAN CORP | COM | | 66680710 | 680 | 8648 | SH | SHR/OTHR | 23 | | 8648 |
| D | NORTHSTAR RLTY FIN CORP | COM | | 66704810 | 36 | 4100 | SH | SHARED | | 4100 | |
| D | NORTHSTAR RLTY FIN CORP | COM | | 66704R10 | 189 | 21200 | SH | SHARED | 10 | 21200 | |
| D | NORTHSTAR RLTY FIN CORP | COM | | 66704R10 | 10659 | 1195000 | SH | SHARED | 11 | | 1195000 |
| D | NORTHSTAR NEUROSCIENCE INC | COM | | 66704V10 | 0 | 54 | SH | SHARED | | 54 | |
| D | NORTHSTAR NEUROSCIENCE INC | COM | | 66704V10 | 55 | 5932 | SH | SHARED | 01 | | 5932 |
| D | NORTHSTAR NEUROSCIENCE INC | COM | | 66704V10 | 1348 | 145000 | SH | SHARED | 04 | 145000 | |
| D | NORTHWEST AIRLS CORP | COM | | 66728040 | 107162 | 7385440 | SH | SHARED | | 7385440 | |
| D | NORTHWEST AIRLS CORP | COM | | 66728040 | 4378 | 301790 | SH | SHARED | 02 | 301790 | |
| D | NORTHWEST AIRLS CORP | COM | | 66728040 | 287 | 19800 | SH | SHARED | 11 | 19800 | |
| D | NORTHWEST AIRLS CORP | COM | | 66728040 | 1149 | 79200 | SH | SHARED | 14 | | 79200 |
| D | NORTHWEST BANCORP INC PA | COM | | 66732810 | 5860 | 220551 | SH | SHARED | | 220551 | |
| D | NORTHWEST BANCORP INC PA | COM | | 66732810 | 140 | 5300 | SH | SHARED | 02 | 5300 | |
| D | NORTHWEST BANCORP INC PA | COM | | 66732810 | 741 | 27900 | SH | SHARED | 10 | 27900 | |
| D | NORTHWEST NAT GAS CO | COM | | 66765510 | 94 | 1952 | SH | SHARED | | 1952 | |
| D | NORTHWEST NAT GAS CO | COM | | 66765510 | 31 | 650 | SH | SHARED | 01 | 650 | |
| D | NORTHWEST NAT GAS CO | COM | | 66765510 | 2734 | 56200 | SH | SHARED | 10 | 56200 | |
| D | NORTHWEST PIPE CO | COM | | 66774610 | 5 | 129 | SH | SHARED | | 129 | |
| D | NORTHWEST PIPE CO | COM | | 66774610 | 3914 | 100000 | SH | SHARED | 04 | 100000 | |
| D | NORTHWEST PIPE CO | COM | | 66774610 | 8096 | 206850 | SH | SHARED | 10 | 206850 | |
| D | NORTHWESTERN CORP | COM NEW | | 66807430 | 2494 | 84555 | SH | SHARED | | 84555 | |
| D | NORTHWESTERN CORP | COM NEW | | 66807430 | 141 | 4782 | SH | SHARED | 04 | 4782 | |
| D | NORTHWESTERN CORP | COM NEW | | 66807430 | 749 | 25400 | SH | SHARED | 10 | 25400 | |
| D | NORWOOD FINANCIAL CORP | COM | | 66954910 | 2 | 67 | SH | SHARED | | 67 | |
| D | NOVA CHEMICALS CORP | COM | | 66977W10 | 3785 | 116841 | SH | SHARED | | 116841 | |
| D | NOVA CHEMICALS CORP | COM | | 66977W10 | 3 | 100 | SH | SHARED | 01 | 100 | |
| D | NOVA CHEMICALS CORP | COM | | 66977W10 | 16 | 500 | SH | SHARED | 06 | | 500 |
| D | NOVA CHEMICALS CORP | COM | | 66977W10 | 9 | 300 | SH | SHARED | 14 | | 300 |
| D | NOVA CHEMICALS CORP | COM | | 66977W10 | 2 | 66 | SH | SHR/OTHR | 23 | | 66 |
| D | NOVAMED INC DEL | NOTE 1.000% 6/1 | | 66984WAA | 9551 | 11550000 | PRN | SHR/OTHR | 02 | 1550000 | |
| D | NOVAMED INC DEL | COM | | 66986W10 | 57 | 13459 | SH | SHARED | | 13459 | |
| D | NOVAMED INC DEL | COM | | 66986W10 | 329 | 77604 | SH | SHARED | | 77604 | |
| D | NOVADEL PHARMA INC | COM | | 66986K10 | 0 | 1384 | SH | SHARED | | 1384 | |
| D | NOVACEA INC | COM | | 66987B10 | 0 | 58 | SH | SHARED | | 58 | |

| | Name | Type | CUSIP | | Shares | | Code | | |
|---|---|---|---|---|---|---|---|---|---|
| D | NOVACEA INC | COM | 66987B10 | 947 | 317928 SH | SHARED | 04 | 317928 | |
| D | NOVACEA INC | COM | 66987B10 | 7 | 2400 SH | SHARED | 14 | 2400 | |
| D | NOVAGOLD RES INC | COM NEW | 66987E20 | 38 | 4748 SH | SHARED | | 4748 | |
| D | NOVAGOLD RES INC | COM NEW | 66987E20 | 0 | 85 SH | SHARED | 21 | | 85 |
| D | NOVATEL WIRELESS INC | COM NEW | 66987M60 | 510 | 31483 SH | SHARED | | 31483 | |
| D | NOVATEL WIRELESS INC | COM NEW | 66987M60 | 32 | 2000 SH | SHARED | 01 | 2000 | |
| D | NOVATEL WIRELESS INC | COM NEW | 66987M60 | 5346 | 330000 SH | SHARED | 02 | 330000 | |
| D | NOVATEL WIRELESS INC | COM NEW | 66987M60 | 153 | 9500 SH | SHARED | 10 | 9500 | |
| D | NOVABAY PHARMACEUTICALS INC | COM | 66987P10 | 0 | 130 SH | SHARED | | 130 | |
| D | NOVARTIS A G | SPONSORED ADR | 66987V10 | 10757 | 198075 SH | SHARED | | 198075 | |
| D | NOVARTIS A G | SPONSORED ADR | 66987V10 | 2134 | 39300 SH | SHARED | 10 | 39300 | |
| D | NOVARTIS A G | SPONSORED ADR | 66987V10 | 24 | 450 SH | SHARED | 20 | 450 | |
| D | NOVARTIS A G | SPONSORED ADR | 66987V10 | 87 | 1615 SH | SHARED | 21 | 1615 | |
| D | NOVARTIS A G | SPONSORED ADR | 66987V10 | 369 | 6800 SH | SHR/OTHR | 23 | | 6800 |
| D | NU HORIZONS ELECTRS CORP | COM | 66990810 | 12640 | 1818815 SH | SHARED | | 1818815 | |
| D | NOVASTAR FINL INC | COM NEW | 66994788 | 149 | 51577 SH | SHARED | | 51577 | |
| D | NOVASTAR FINL INC | COM NEW | 66994788 | 199 | 68950 SH | SHARED | 01 | 68950 | |
| D | NOVAVAX INC | COM | 67000210 | 1620 | 486590 SH | SHARED | | 486590 | |
| D | NOVAVAX INC | COM | 67000210 | 6 | 2000 SH | SHARED | 01 | | 2000 |
| D | NOVELL INC | DBCV 0.500% 7/1 | 67006AC | 17879 | 19000000 PRN | SHARED | | 9000000 | |
| D | NOVELL INC | DBCV 0.500% 7/1 | 67006AC | 1279 | 1360000 PRN | SHARED | 02 | 1360000 | |
| D | NOVELL INC | COM | 67000610 | 4114 | 598891 SH | SHARED | | 591391 | 7500 |
| D | NOVELL INC | COM | 67000610 | 432 | 62929 SH | SHARED | 02 | 62929 | |
| D | NOVELL INC | COM | 67000610 | 996 | 145122 SH | SHARED | 10 | 145122 | |
| D | NOVELLUS SYS INC | COM | 67000810 | 13347 | 484148 SH | SHARED | | 482048 | 2100 |
| D | NOVELLUS SYS INC | COM | 67000810 | 723 | 26225 SH | SHARED | 01 | 25825 | 400 |
| D | NOVELLUS SYS INC | COM | 67000810 | 1303 | 47267 SH | SHARED | 02 | 47267 | |
| D | NOVELLUS SYS INC | COM | 67000810 | 24 | 880 SH | SHARED | 06 | | 880 |
| D | NOVELLUS SYS INC | COM | 67000810 | 4226 | 153296 SH | SHARED | 10 | 153296 | |
| D | NOVELLUS SYS INC | COM | 67000810 | 239 | 8700 SH | SHARED | 14 | | 8700 |
| D | NOVELLUS SYS INC | COM | 67000810 | 16 | 600 SH | SHARED | 20 | | 600 |
| D | NOVELLUS SYS INC | COM | 67000810 | 12 | 450 SH | SHR/OTHR | 23 | | 450 |
| D | NOVEN PHARMACEUTICALS INC | COM | 67000910 | 370 | 26721 SH | SHARED | | 26721 | |
| D | NOVEN PHARMACEUTICALS INC | COM | 67000910 | 37 | 2700 SH | SHARED | 01 | 2700 | |
| D | NOVEN PHARMACEUTICALS INC | COM | 67000910 | 39 | 2875 SH | SHARED | 02 | 2875 | |
| D | NOVEN PHARMACEUTICALS INC | COM | 67000910 | 934 | 67300 SH | SHARED | 10 | 67300 | |
| D | NOVO-NORDISK A S | ADR | 67010020 | 18 | 279 SH | SHARED | | 279 | |
| D | NOVO-NORDISK A S | ADR | 67010020 | 12 | 200 SH | SHARED | 01 | | 200 |
| D | NOVO-NORDISK A S | ADR | 67010020 | 45 | 700 SH | SHARED | 21 | 700 | |
| D | NU SKIN ENTERPRISES INC | CL A | 67018T10 | 159 | 9718 SH | SHARED | | 9718 | |
| D | NU SKIN ENTERPRISES INC | CL A | 67018T10 | 144 | 8800 SH | SHARED | 01 | 8800 | |
| D | NU SKIN ENTERPRISES INC | CL A | 67018T10 | 111 | 6806 SH | SHARED | 10 | 6806 | |
| D | NSTAR | COM | 67019E10 | 665 | 18369 SH | SHARED | | 18369 | |
| D | NSTAR | COM | 67019E10 | 1133 | 31300 SH | SHARED | 01 | 31300 | |
| D | NSTAR | COM | 67019E10 | 183 | 5060 SH | SHARED | 02 | 5060 | |
| D | NSTAR | COM | 67019E10 | 227 | 6274 SH | SHARED | 10 | 6274 | |
| D | NSTAR | COM | 67019E10 | 152 | 4200 SH | SHARED | 23 | 4200 | |
| D | NSTAR | COM | 67019E10 | 53 | 1476 SH | SHR/OTHR | 23 | | 1476 |
| D | NTELOS HLDGS CORP | COM | 67020Q10 | 382 | 12885 SH | SHARED | | 12885 | |
| D | NTELOS HLDGS CORP | COM | 67020Q10 | 1137 | 38300 SH | SHARED | 01 | 37900 | 400 |
| D | NTELOS HLDGS CORP | COM | 67020Q10 | 1380 | 46500 SH | SHR/OTHR | 01 | | 46500 |
| D | NTELOS HLDGS CORP | COM | 67020Q10 | 335 | 11300 SH | SHARED | 10 | 11300 | |
| D | NUANCE COMMUNICATIONS INC | COM | 67020Y10 | 33 | 1773 SH | SHARED | | | 1773 |
| D | NUANCE COMMUNICATIONS INC | COM | 67020Y10 | 159 | 8552 SH | SHARED | | 8552 | |
| D | NUANCE COMMUNICATIONS INC | COM | 67020Y10 | 35 | 1900 SH | SHARED | 01 | 1900 | |
| D | NUANCE COMMUNICATIONS INC | COM | 67020Y10 | 56 | 3050 SH | SHARED | 02 | 3050 | |
| D | NUANCE COMMUNICATIONS INC | COM | 67020Y10 | 69 | 3712 SH | SHARED | 04 | | 3712 |
| D | NUANCE COMMUNICATIONS INC | COM | 67020Y10 | 1419 | 76006 SH | SHARED | 10 | 76006 | |
| D | NUANCE COMMUNICATIONS INC | COM | 67020Y10 | 28 | 1506 SH | SHARED | 19 | | 1506 |
| D | NUANCE COMMUNICATIONS INC | COM | 67020Y10 | 401 | 21500 SH | SHARED | 21 | 5000 | 16500 |
| D | NUANCE COMMUNICATIONS INC | COM | 67020Y10 | 168 | 9000 SH | SHR/OTHR | 21 | | 9000 |
| D | NUANCE COMMUNICATIONS INC | COM | 67020Y10 | 28 | 1500 SH | SHR/OTHR | 23 | | 1500 |
| D | NUCOR CORP | COM | 67034610 | 200151 | 3379798 SH | SHARED | | 3379798 | |
| D | NUCOR CORP | COM | 67034610 | 4480 | 75666 SH | SHARED | 01 | 75666 | |
| D | NUCOR CORP | COM | 67034610 | 9046 | 152756 SH | SHARED | 02 | 152756 | |
| D | NUCOR CORP | COM | 67034610 | 0 | 1 SH | SHARED | 04 | 1 | |
| D | NUCOR CORP | COM | 67034610 | 8 | 140 SH | SHARED | 05 | 140 | |
| D | NUCOR CORP | COM | 67034610 | 198 | 3350 SH | SHARED | 06 | | 3350 |
| D | NUCOR CORP | COM | 67034610 | 36776 | 621023 SH | SHARED | 10 | 518054 | 102969 |
| D | NUCOR CORP | COM | 67034610 | 386 | 6523 SH | SHARED | 14 | 6523 | |
| D | NUCOR CORP | COM | 67034610 | 248 | 4200 SH | SHR/OTHR | 22 | | 4200 |
| D | NUCOR CORP | COM | 67034610 | 904 | 15267 SH | SHARED | 24 | 15267 | |
| D | NUMEREX CORP PA | CL A | 67053A10 | 2 | 300 SH | SHARED | | 300 | |
| D | NUSTAR ENERGY LP | UNIT COM | 67058H10 | 2903 | 54479 SH | SHARED | | 54479 | |
| D | NUSTAR ENERGY LP | UNIT COM | 67058H10 | 298 | 5600 SH | SHARED | 01 | 5600 | |
| D | NUSTAR GP HOLDINGS LLC | UNIT RESTG LLC | 67059L10 | 94716 | 3317573 SH | SHARED | | 3317573 | |
| D | NUVEEN INSD PREM INCOME MUN | COM | 6706D810 | 2892 | 237700 SH | SHARED | | 237700 | |
| D | NUVEEN EQTY PRM OPPORTUNITYF | COM | 6706EM10 | 1507 | 92229 SH | SHARED | | 92229 | |
| D | NUVEEN EQTY PRM OPPORTUNITYF | COM | 6706EM10 | 23 | 1430 SH | SHARED | 20 | 1430 | |
| D | NUVEEN FLTNG RTE INCM OPP FD | COM SHS | 6706EN10 | 9768 | 847943 SH | SHARED | | 847943 | |
| D | NUVEEN DIVERSIFIED DIV INCM | COM | 6706EP10 | 696 | 48802 SH | SHARED | | 48802 | |
| D | NUVEEN DIVERSIFIED DIV INCM | COM | 6706EP10 | 15 | 1114 SH | SHARED | 23 | 1114 | |
| D | NUVEEN EQUITY PREM INCOME FD | COM | 6706ER10 | 383 | 23400 SH | SHARED | | 23400 | |
| D | NUVEEN EQUITY PREM ADV FD | COM | 6706EV10 | 549 | 33405 SH | SHARED | | 33405 | |
| D | NUVEEN TAX ADV FLTG RATE FUN | COM | 6706EV10 | 2363 | 214300 SH | SHARED | | 214300 | |
| D | NUVEEN EQUITY PREM & GROWTH | COM | 6706EW10 | 3 | 200 SH | SHARED | | 200 | |
| D | NUVEEN PREM INCOME MUN FD 4 | COM | 6706EX10 | 1755 | 150000 SH | SHARED | | 150000 | |
| D | NUTRACEUTICAL INTL CORP | COM | 67060Y10 | 8 | 636 SH | SHARED | | 636 | |
| D | NUVEEN PA PREM INCOME MUN FD | COM | 67061F10 | 1193 | 95600 SH | SHARED | | 95600 | |
| D | NUVEEN CA INVT QUALITY MUN F | COM | 6706ZA10 | 1 | 100 SH | SHARED | | 100 | |
| D | NUVEEN MUN ADVANTAGE FD INC | COM | 6706ZA10 | 18 | 1340 SH | SHARED | 20 | 1340 | |
| D | NUVEEN PERFORMANCE PLUS MUN | COM | 6706ZJ10 | 5718 | 426758 SH | SHARED | | 426758 | |
| D | NUVEEN NY PERFORM PLUS MUN F | COM | 6706ZR10 | 47 | 3350 SH | SHARED | 22 | 3350 | |
| D | NUVEEN MUN MKT OPPORTUNITY F | COM | 6706ZJ10 | 3060 | 230100 SH | SHARED | | 230100 | |
| D | NUVEEN N Y INVT QUALITY MUN | COM | 6706ZJ10 | 230 | 17700 SH | SHARED | | 17700 | |
| D | NVIDIA CORP | COM | 67066G10 | 72485 | 2130677 SH | SHARED | | 2124077 | 6600 |
| D | NVIDIA CORP | COM | 67066G10 | 11545 | 339363 SH | SHR/OTHR | 01 | 261009 | 78354 |
| D | NVIDIA CORP | COM | 67066G10 | 2225 | 65430 SH | SHR/OTHR | 01 | | 65430 |
| D | NVIDIA CORP | COM | 67066G10 | 2506 | 73678 SH | SHARED | 02 | 73678 | |
| D | NVIDIA CORP | COM | 67066G10 | 4422 | 130000 SH | SHARED | 04 | 130000 | |
| D | NVIDIA CORP | COM | 67066G10 | 11911 | 350120 SH | SHARED | 05 | 350120 | |
| D | NVIDIA CORP | COM | 67066G10 | 142 | 4200 SH | SHARED | 06 | | 4200 |
| D | NVIDIA CORP | COM | 67066G10 | 56211 | 1652299 SH | SHARED | 10 | 1638599 | 13700 |
| D | NVIDIA CORP | COM | 67066G10 | 816 | 24013 SH | SHARED | 14 | 24013 | |
| D | NVIDIA CORP | COM | 67066G10 | 175 | 5170 SH | SHARED | 20 | 2650 | 2520 |
| D | NVIDIA CORP | COM | 67066G10 | 5 | 175 SH | SHR/OTHR | 20 | | 175 |
| D | NVIDIA CORP | COM | 67066G10 | 63 | 1874 SH | SHARED | 21 | 1874 | |
| D | NVIDIA CORP | COM | 67066G10 | 986 | 28996 SH | SHARED | 22 | 25456 | 3540 |
| D | NVIDIA CORP | COM | 67066G10 | 70 | 2062 SH | SHR/OTHR | 22 | | 2062 |
| D | NVIDIA CORP | COM | 67066G10 | 1353 | 39775 SH | SHARED | 23 | 34225 | 5550 |
| D | NVIDIA CORP | COM | 67066G10 | 1001 | 29443 SH | SHR/OTHR | 23 | | 29443 |
| D | NUVEEN CA DIVIDEND ADV MUN F | COM SHS | 67066G10 | 460 | 34300 SH | SHARED | | 34300 | |
| D | NUVEEN SR INCOME FD | COM | 67067Y10 | 569 | 80637 SH | SHARED | | 80637 | |
| D | NUTRI SYS INC NEW | COM | 67069D10 | 1270 | 47101 SH | SHARED | | 47101 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D NUTRI SYS INC NEW | COM | 67069D10 | 63 | 2350 SH | SHARED | 01 | 2350 | | |
| D NUTRI SYS INC NEW | COM | 67069D10 | 107 | 4000 SH | SHARED | 04 | 4000 | | |
| D NUTRITION 21 INC | COM | 67069X10 | 0 | 1307 SH | SHARED | | 1307 | | |
| D NUVEEN CA DIV ADVANTG MUN FD | COM | 67069X10 | 2014 | 152000 SH | SHARED | | 152000 | | |
| D NUVEEN DIV ADV MUNI FD 3 | COM SH BEN INT | 67070X10 | 100 | 7400 SH | SHARED | | 7400 | | |
| D NUVEEN CA DIV ADV MUNI FD 3 | COM SH BEN INT | 67070Y10 | 347 | 27163 SH | SHARED | | 27163 | | |
| D NUVASIVE INC | COM | 67070410 | 4900 | 124000 SH | SHARED | 04 | 124000 | | |
| D NUVASIVE INC | COM | 67070410 | 3054 | 77300 SH | SHARED | 10 | 77300 | | |
| D NUVASIVE INC | COM | 67070410 | 98 | 2500 SH | SHARED | 14 | 2500 | | |
| D NUVEEN INSD DIVID ADVANTAGE | COM | 67071L10 | 977 | 72400 SH | SHARED | | 72400 | | |
| D NUVEEN INSD CALIF DIVID | COM | 67071110 | 343 | 25300 SH | SHARED | | 25300 | | |
| D NUVEEN CT DIV DIV MUN FD 3 | COM | 67071Y10 | 132 | 10000 SH | SHARED | 01 | 10000 | | 10000 |
| D NYER MED GROUP INC | COM | 67071110 | 0 | 79 SH | SHARED | | 79 | | |
| D NUVEEN QUALITY PFD INCOME FD | COM NEW | 67072M10 | 10 | 1000 SH | SHARED | 01 | 1000 | | 1000 |
| D NUVELO INC | COM | 67072M30 | 2 | 1380 SH | SHARED | | 1380 | | |
| D NUVEEN FLOATING RATE INCOME | COM | 67072T10 | 15757 | 1369032 SH | SHARED | | 1369032 | | |
| D NXSTAGE MEDICAL INC | COM | 67072V10 | 9669 | 637400 SH | SHARED | 10 | 637400 | | |
| D NUVEEN MULTI STRAT INC & GR | COM | 67073810 | 8097 | 740850 SH | SHARED | | 740850 | | |
| D NUVEEN MULTI STRAT INC GR FD | COM SHS | 67073D10 | 16121 | 1465569 SH | SHARED | | 1465569 | | |
| D NUVEEN TAX ADVANTAGED DIV GR | COM | 67073G10 | 6 | 400 SH | SHARED | | 400 | | |
| D NYMOX PHARMACEUTICAL CORP | COM | 67076P10 | 2 | 519 SH | SHARED | | 519 | | |
| D O CHARLEYS INC | COM | 67082310 | 241 | 16144 SH | SHARED | | 16144 | | |
| D O CHARLEYS INC | COM | 67082310 | 110 | 7382 SH | SHARED | 02 | 7382 | | |
| D OGE ENERGY CORP | COM | 67083710 | 5330 | 146878 SH | SHARED | | 146878 | | |
| D OGE ENERGY CORP | COM | 67083710 | 1172 | 32300 SH | SHARED | 01 | | | 32300 |
| D OGE ENERGY CORP | COM | 67083710 | 317 | 8754 SH | SHARED | 02 | 8754 | | |
| D OGE ENERGY CORP | COM | 67083710 | 221 | 6100 SH | SHARED | 10 | 6100 | | |
| D O I CORP | COM | 67084110 | 0 | 54 SH | SHARED | | 54 | | |
| D OM GROUP INC | COM | 67087210 | 57238 | 994753 SH | SHARED | | 994753 | | |
| D OM GROUP INC | COM | 67087210 | 1214 | 21115 SH | SHARED | 01 | 19565 | | 1550 |
| D OM GROUP INC | COM | 67087210 | 15386 | 267400 SH | SHARED | 10 | 267400 | | |
| D NUVEEN MULT CURR ST GV INCM | COM | 67090N10 | 1843 | 108899 SH | SHARED | | 108899 | | |
| D NUVEEN FLA INVT QUALITY MUN | COM | 67097010 | 728 | 56300 SH | SHARED | | 56300 | | |
| D NUVEEN NJ INVT QUALITY MUN F | COM | 67097110 | 1571 | 121313 SH | SHARED | | 121313 | | |
| D NUVEEN PA INVT QUALITY MUN F | COM | 67097210 | 1051 | 81000 SH | SHARED | | 81000 | | |
| D NUVEEN CA SELECT QUALITY MUN | COM | 67097510 | 165 | 12600 SH | SHARED | | 12600 | | |
| D NUVEEN NY SELECT QUALITY MUN | COM | 67097610 | 1400 | 105860 SH | SHARED | | 105860 | | |
| D NUVEEN NY SELECT QUALITY MUN | COM | 67097610 | 92 | 7000 SH | SHR/OTHR | 23 | | | 7000 |
| D NUVEEN QUALITY INCOME MUN FD | COM | 67097710 | 17 | 1339 SH | SHARED | | 1339 | | |
| D NUVEEN FLA QUALITY INCOME MU | COM | 67097810 | 168 | 12900 SH | SHARED | 20 | 12900 | | |
| D NUVEEN FLA QUALITY INCOME MU | COM | 67097810 | 44 | 3383 SH | SHR/OTHR | 22 | | | 3383 |
| D NUVEEN MICH QUALITY INCOME M | COM | 67097910 | 302 | 23200 SH | SHARED | | 23200 | | |
| D NUVEEN OHIO QUALITY INCOME M | COM | 67098010 | 105 | 7600 SH | SHARED | | 7600 | | |
| D NUVEEN NY QUALITY INCM MUN F | COM | 67098610 | 1730 | 133200 SH | SHARED | | 133200 | | |
| D NUVEEN NY QUALITY INCM MUN F | COM | 67098610 | 110 | 8500 SH | SHARED | 22 | 8500 | | |
| D NUVEEN NY QUALITY INCM MUN F | COM | 67098610 | 93 | 7200 SH | SHR/OTHR | 23 | | | 7200 |
| D NUVEEN PREMIER INSD MUN INCO | COM | 67098710 | 1018 | 77432 SH | SHARED | | 77432 | | |
| D NUVEEN PREMIER MUN INCOME FD | COM | 67098810 | 1084 | 84200 SH | SHARED | | 84200 | | |
| D NUVEEN INSD FLA PREM INCOME | COM | 67101V10 | 1059 | 79600 SH | SHARED | | 79600 | | |
| D OSG AMER L P | COM UNIT LPI | 67102810 | 2229 | 120196 SH | SHARED | | 120196 | | |
| D OSI PHARMACEUTICALS INC | NOTE 3.250% 9/0 | 671040AD | 4237 | 3866000 PRN | SHARED | | 3866000 | | |
| D OSI PHARMACEUTICALS INC | NOTE 2.000%12/1 | 671040AF | 4330 | 2500000 PRN | SHARED | | 2500000 | | |
| D OSI PHARMACEUTICALS INC | COM | 6710401O | 1517 | 31275 SH | SHARED | | 31275 | | |
| D OSI PHARMACEUTICALS INC | COM | 6710401O | 1004 | 20715 SH | SHARED | 01 | 20715 | | |
| D OSI PHARMACEUTICALS INC | COM | 6710401O | 1209 | 24943 SH | SHARED | 02 | 24943 | | |
| D OSI PHARMACEUTICALS INC | COM | 6710401O | 15432 | 318131 SH | SHARED | 04 | 318131 | | |
| D OSI PHARMACEUTICALS INC | COM | 6710401O | 1427 | 29425 SH | SHARED | 10 | 29425 | | |
| D OSI PHARMACEUTICALS INC | COM | 6710401O | 2910 | 60000 SH | SHARED | 16 | 60000 | | |
| D OSI PHARMACEUTICALS INC | COM | 6710401O | 10 | 219 SH | SHARED | 21 | | | 219 |
| D OSI SYSTEMS INC | COM | 67104410 | 77 | 2928 SH | SHARED | | 2928 | | |
| D O2DIESEL CORP | COM | 67106S10 | 1 | 4000 SH | SHARED | | 4000 | | |
| D O2MICRO INTERNATIONAL LTD | SPONS ADR | 67107W10 | 197 | 17100 SH | SHARED | | 17100 | | |
| D OYO GEOSPACE CORP | COM | 67107410 | 506 | 6719 SH | SHARED | | 6719 | | |
| D OYO GEOSPACE CORP | COM | 67107410 | 663 | 8800 SH | SHARED | 10 | 8800 | | |
| D OBAGI MEDICAL PRODUCTS INC | COM | 67423R10 | 20 | 1123 SH | SHARED | | 1123 | | |
| D OCCAM NETWORKS INC | COM NEW | 67457930 | 44 | 12528 SH | SHARED | | 12528 | | |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 4733 | 61481 SH | SHARED | | 46086 | | 15395 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 205021 | 2662962 SH | SHARED | | 2662962 | | |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 26761 | 347598 SH | SHARED | 01 | 280234 | | 67364 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 3325 | 43188 SH | SHR/OTHR | 01 | | | 43188 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 6581 | 85480 SH | SHARED | 02 | 85480 | | |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 1131 | 14700 SH | SHARED | 04 | | | 14700 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 3305 | 42935 SH | SHARED | 04 | 42935 | | |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 2181 | 28340 SH | SHARED | 05 | 28340 | | |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 30185 | 392071 SH | SHARED | 06 | | | 392071 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 222098 | 2884768 SH | SHARED | 10 | 2796438 | | 88330 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 4186 | 54378 SH | SHARED | 14 | | | 54378 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 9495 | 123332 SH | SHARED | 19 | | | 123332 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 2333 | 30315 SH | SHARED | 20 | 24820 | | 5495 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 256 | 3335 SH | SHR/OTHR | 20 | | | 3335 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 638 | 8290 SH | SHARED | 21 | 1275 | | 7015 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 19 | 250 SH | SHR/OTHR | 21 | | | 250 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 646 | 8396 SH | SHARED | 22 | 6612 | | 1784 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 151 | 1967 SH | SHR/OTHR | 22 | | | 1967 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 2534 | 32915 SH | SHARED | 23 | 26660 | | 6255 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 837 | 10875 SH | SHR/OTHR | 23 | | | 10875 |
| D OCCIDENTAL PETE CORP DEL | COM | 67459910 | 2189 | 28440 SH | SHARED | 24 | 28440 | | |
| D OCEAN BIO CHEM INC | COM | 67463110 | 0 | 85 SH | SHARED | | 85 | | |
| D OCEAN PWR TECHNOLOGIES INC | COM NEW | 67487030 | 3 | 235 SH | SHARED | | 235 | | |
| D OCEAN SHORE HLDG CO | COM | 67501P10 | 0 | 100 SH | SHARED | | 100 | | |
| D OCEANAUT INC | COM | 67522T10 | 781 | 99493 SH | SHARED | | 99493 | | |
| D OCEANAUT INC | *W EXP 01/01/201 | 67522T11 | 355 | 216563 SH | SHARED | | 216563 | | |
| D OCEANEERING INTL INC | COM | 67523210 | 1587 | 23577 SH | SHARED | | 23577 | | |
| D OCEANEERING INTL INC | COM | 67523210 | 471 | 7000 SH | SHARED | 01 | 7000 | | |
| D OCEANEERING INTL INC | COM | 67523210 | 53 | 800 SH | SHARED | 02 | 800 | | |
| D OCEANEERING INTL INC | COM | 67523210 | 682 | 10129 SH | SHARED | 10 | 10129 | | |
| D OCEANEERING INTL INC | COM | 67523210 | 3 | 55 SH | SHARED | 21 | | | 55 |
| D OCEANFIRST FINL CORP | COM | 67523410 | 5 | 374 SH | SHARED | | 374 | | |
| D OCH ZIFF CAP MGMT GROUP | CL A | 67551U10 | 129 | 4927 SH | SHARED | | 4927 | | |
| D OCWEN FINL CORP | NOTE 3.250% 8/0 | 675746AD | 1490 | 2000000 PRN | SHARED | | 2000000 | | |
| D OCWEN FINL CORP | COM NEW | 67574630 | 187 | 33829 SH | SHARED | | 33829 | | |
| D OCWEN FINL CORP | COM NEW | 67574630 | 41 | 7500 SH | SHARED | 01 | 7500 | | |
| D OCWEN FINL CORP | COM NEW | 67574630 | 4 | 800 SH | SHR/OTHR | 01 | | | 800 |
| D OCWEN FINL CORP | COM NEW | 67574630 | 1295 | 233800 SH | SHARED | 10 | 233800 | | |
| D OCULUS INNOVATIVE SCIENCES I | COM | 67575P10 | 1 | 316 SH | SHARED | | 316 | | |
| D OCULUS INNOVATIVE SCIENCES I | COM | 67575P10 | 0 | 100 SH | SHARED | 02 | 100 | | |
| D ODYSSEY HEALTHCARE INC | COM | 67611V10 | 46 | 4234 SH | SHARED | | 4234 | | |
| D ODYSSEY HEALTHCARE INC | COM | 67611V10 | 9110 | 823700 SH | SHARED | 10 | 823700 | | |
| D ODYSSEY MARINE EXPLORATION I | COM | 67611810 | 1 | 162 SH | SHARED | | 162 | | |
| D ODYSSEY MARINE EXPLORATION I | COM | 67611810 | 41 | 6700 SH | SHARED | 01 | 6700 | | |
| D ODYSSEY MARINE EXPLORATION I | COM | 67611810 | 0 | 2 SH | SHARED | 02 | 2 | | |
| D ODYSSEY RE HLDGS CORP | COM | 67612W10 | 480 | 13100 SH | SHARED | | 13100 | | |
| D ODYSSEY RE HLDGS CORP | COM | 67612W10 | 624 | 17000 SH | SHARED | 01 | 17000 | | |
| D ODYSSEY RE HLDGS CORP | COM | 67612W10 | 390 | 10625 SH | SHARED | 02 | 10625 | | |

| | Issuer | Class | CUSIP | Value | Amount | Unit | Disc | Mgrs | Vote1 | Vote2 |
|---|---|---|---|---|---|---|---|---|---|---|
| D | ODYSSEY RE HLDGS CORP | COM | 67612W10 | 21021 | 572650 | SH | SHARED | 10 | 572650 | |
| D | OFFICEMAX INC DEL | COM | 67622P10 | 16556 | 801397 | SH | SHARED | | 801397 | |
| D | OFFICEMAX INC DEL | COM | 67622P10 | 451 | 21849 | SH | SHARED | 01 | 21849 | |
| D | OFFICEMAX INC DEL | COM | 67622P10 | 3578 | 173227 | SH | SHARED | 02 | 173227 | |
| D | OFFICEMAX INC DEL | COM | 67622P10 | 881 | 42684 | SH | SHARED | 10 | 42684 | |
| D | OFFICEMAX INC DEL | COM | 67622P10 | 122 | 5912 | SH | SHARED | 14 | | 5912 |
| D | OFFICE DEPOT INC | COM | 67622010 | 10794 | 776013 | SH | SHARED | | 776013 | |
| D | OFFICE DEPOT INC | COM | 67622010 | 1139 | 81925 | SH | SHARED | 01 | 81925 | |
| D | OFFICE DEPOT INC | COM | 67622010 | 123 | 8860 | SH | SHARED | 02 | 8860 | |
| D | OFFICE DEPOT INC | COM | 67622010 | 4832 | 347380 | SH | SHARED | 06 | 347380 | |
| D | OFFICE DEPOT INC | COM | 67622010 | 27937 | 2008412 | SH | SHARED | 10 | 1989612 | 18800 |
| D | OFFICE DEPOT INC | COM | 67622010 | 257 | 18490 | SH | SHARED | 14 | 18490 | |
| D | OFFICE DEPOT INC | COM | 67622010 | 1495 | 107500 | SH | SHARED | 15 | 107500 | |
| D | OFFICE DEPOT INC | COM | 67622010 | 454 | 32700 | SH | SHARED | 24 | 32700 | |
| D | OHIO VY BANC CORP | COM | 67771910 | 2 | 100 | SH | SHARED | | 100 | |
| D | OIL DRI CORP AMER | COM | 67786410 | 2 | 129 | SH | SHARED | | 129 | |
| D | OIL SVC HOLDRS TR | DEPOSTRY RCPT | 67800210 | 238045 | 1259369 | SH | SHARED | | 1259369 | |
| D | OIL SVC HOLDRS TR | DEPOSTRY RCPT | 67800210 | 113 | 600 | SH | SHARED | 01 | 600 | |
| D | OIL SVC HOLDRS TR | DEPOSTRY RCPT | 67800210 | 9911 | 52438 | SH | SHARED | | 52438 | |
| D | OIL SVC HOLDRS TR | DEPOSTRY RCPT | 67800210 | 1701 | 9000 | SH | SHARED | 01 | 9000 | |
| D | OIL SVC HOLDRS TR | DEPOSTRY RCPT | 67800210 | 14308 | 75700 | SH | SHARED | 19 | | 75700 |
| D | OIL SVC HOLDRS TR | DEPOSTRY RCPT | 67800210 | 132 | 700 | SH | SHR/OTHR | 23 | | 700 |
| D | OIL STS INTL INC | NOTE 2.375% 7/0 | 678026AB | 26126 | 20300000 | PRN | SHARED | | | 0300000 |
| D | OIL STS INTL INC | COM | 67802610 | 373 | 10940 | SH | SHARED | | 10940 | |
| D | OIL STS INTL INC | COM | 67802610 | 379 | 11115 | SH | SHARED | 01 | 11115 | |
| D | OIL STS INTL INC | COM | 67802610 | 12740 | 373400 | SH | SHARED | 10 | 373400 | |
| D | OIL STS INTL INC | COM | 67802610 | 38 | 1121 | SH | SHARED | 21 | | 1121 |
| D | OILSANDS QUEST INC | COM | 67804610 | 763 | 187015 | SH | SHARED | | 187015 | |
| D | OILSANDS QUEST INC | COM | 67804610 | 382 | 93700 | SH | SHARED | 10 | 93700 | |
| D | OLD DOMINION FGHT LINES INC | COM | 67958010 | 66 | 2870 | SH | SHARED | | 2870 | |
| D | OLD DOMINION FGHT LINES INC | COM | 67958010 | 101 | 4400 | SH | SHARED | 01 | 4400 | |
| D | OLD DOMINION FGHT LINES INC | COM | 67958010 | 272 | 11775 | SH | SHARED | 02 | 11775 | |
| D | OLD NATL BANCORP IND | COM | 68033310 | 151 | 10100 | SH | SHARED | | 10100 | |
| D | OLD NATL BANCORP IND | COM | 68033310 | 35 | 2400 | SH | SHARED | 01 | 2400 | |
| D | OLD NATL BANCORP IND | COM | 68033310 | 53 | 3600 | SH | SHARED | 02 | 3600 | |
| D | OLD NATL BANCORP IND | COM | 68033310 | 1835 | 122714 | SH | SHARED | 10 | 122714 | |
| D | OLD REP INTL CORP | COM | 68022310 | 8299 | 538572 | SH | SHARED | | 538572 | |
| D | OLD REP INTL CORP | COM | 68022310 | 1051 | 68257 | SH | SHARED | 01 | 1970 | 66287 |
| D | OLD REP INTL CORP | COM | 68022310 | 192 | 12465 | SH | SHARED | 02 | 12465 | |
| D | OLD REP INTL CORP | COM | 68022310 | 24 | 1580 | SH | SHARED | 06 | 1580 | |
| D | OLD REP INTL CORP | COM | 68022310 | 164 | 10700 | SH | SHARED | 10 | 10700 | |
| D | OLD REP INTL CORP | COM | 68022310 | 103 | 6700 | SH | SHARED | 14 | 6700 | |
| D | OLD REP INTL CORP | COM | 68022310 | 63 | 4100 | SH | SHARED | 21 | 4100 | |
| D | OLD SECOND BANCORP INC ILL | COM | 68027710 | 2 | 96 | SH | SHARED | | 96 | |
| D | OLIN CORP | COM PAR $1 | 68066520 | 6251 | 323388 | SH | SHARED | | 323388 | |
| D | OLIN CORP | COM PAR $1 | 68066520 | 842 | 43600 | SH | SHARED | 01 | 18300 | 25300 |
| D | OLIN CORP | COM PAR $1 | 68066520 | 96 | 4999 | SH | SHARED | 02 | 4999 | |
| D | OLIN CORP | COM PAR $1 | 68066520 | 962 | 49795 | SH | SHARED | | 49795 | |
| D | OLYMPIC STEEL INC | COM | 68162810 | 1402 | 44214 | SH | SHARED | | 44214 | |
| D | OMNICARE INC | DBCV 3.250%12/1 | 681904AL | 10742 | 14756000 | PRN | SHARED | 02 | 4756000 | |
| D | OMNICARE INC | COM | 68190410 | 1104 | 48425 | SH | SHARED | | 48425 | |
| D | OMNICARE INC | COM | 68190410 | 1042 | 45716 | SH | SHARED | 11 | 11866 | 33850 |
| D | OMNICARE INC | COM | 68190410 | 2535 | 111157 | SH | SHARED | 02 | 111157 | |
| D | OMNICARE INC | COM | 68190410 | 30 | 1320 | SH | SHARED | 06 | 1320 | |
| D | OMNICARE INC | COM | 68190410 | 401 | 17600 | SH | SHARED | 10 | 17600 | |
| D | OMNICARE INC | COM | 68190410 | 134 | 5880 | SH | SHARED | 21 | 5765 | 115 |
| D | OMNICOM GROUP INC | NOTE 2/0 | 681919AK | 987 | 957000 | PRN | SHARED | 02 | 957000 | |
| D | OMNICOM GROUP INC | NOTE 7/3 | 681919AM | 9564 | 9451000 | PRN | SHARED | | 9451000 | |
| D | OMNICOM GROUP INC | NOTE 7/0 | 681919AT | 5729 | 5295000 | PRN | SHARED | | 5295000 | |
| D | OMNICOM GROUP INC | COM | 68191910 | 16430 | 345691 | SH | SHARED | | 345691 | |
| D | OMNICOM GROUP INC | COM | 68191910 | 1861 | 39160 | SH | SHARED | 01 | 35460 | 3700 |
| D | OMNICOM GROUP INC | COM | 68191910 | 1960 | 41249 | SH | SHARED | 02 | 41249 | |
| D | OMNICOM GROUP INC | COM | 68191910 | 8 | 180 | SH | SHARED | 05 | 180 | |
| D | OMNICOM GROUP INC | COM | 68191910 | 151 | 3180 | SH | SHARED | 06 | 3180 | |
| D | OMNICOM GROUP INC | COM | 68191910 | 40314 | 848188 | SH | SHARED | 10 | 816588 | 31600 |
| D | OMNICOM GROUP INC | COM | 68191910 | 384 | 8080 | SH | SHARED | 14 | 8080 | |
| D | OMNICOM GROUP INC | COM | 68191910 | 969 | 20390 | SH | SHARED | 20 | 390 | 20000 |
| D | OMNICOM GROUP INC | COM | 68191910 | 28 | 600 | SH | SHR/OTHR | 20 | | 600 |
| D | OMNICOM GROUP INC | COM | 68191910 | 231 | 4877 | SH | SHARED | 24 | 4685 | 192 |
| D | OMNICOM GROUP INC | COM | 68191910 | 9 | 200 | SH | SHR/OTHR | 22 | | 200 |
| D | OMNICOM GROUP INC | COM | 68191910 | 19 | 400 | SH | SHARED | 23 | 400 | |
| D | OMNICOM GROUP INC | COM | 68191910 | 1746 | 36752 | SH | SHR/OTHR | 23 | | 36752 |
| D | OMNICOM GROUP INC | COM | 68191910 | 50 | 1060 | SH | SHARED | 24 | 1060 | |
| D | OMEGA HEALTHCARE INVS INC | COM | 68193610 | 184 | 11500 | SH | SHARED | | 11500 | |
| D | OMEGA HEALTHCARE INVS INC | COM | 68193610 | 187 | 11700 | SH | SHARED | 01 | 11700 | |
| D | OMEGA HEALTHCARE INVS INC | COM | 68193610 | 1258 | 78400 | SH | SHARED | 10 | 78400 | |
| D | OMEGA HEALTHCARE INVS INC | COM | 68193610 | 22665 | 1412200 | SH | SHARED | 11 | | 1412200 |
| D | OMRIX BIOPHARMACEUTICAL INC | COM | 68198910 | 10 | 298 | SH | SHARED | | 298 | |
| D | OMRIX BIOPHARMACEUTICALS INC | COM | 68198910 | 7184 | 206800 | SH | SHARED | 10 | 206800 | |
| D | OMEGA FINL CORP | COM | 68209210 | 7 | 252 | SH | SHARED | | 252 | |
| D | OMEGA FINL CORP | COM | 68209210 | 178 | 6100 | SH | SHARED | 10 | 6100 | |
| D | OMEGA FLEX INC | COM | 68209510 | 2 | 129 | SH | SHARED | | 129 | |
| D | OMEGA PROTEIN CORP | COM | 68210P10 | 3 | 343 | SH | SHARED | | 343 | |
| D | OMNI ENERGY SERVICES | COM NEW | 68212010 | 179 | 36759 | SH | SHARED | | 36759 | |
| D | OMNITURE INC | COM | 68212S10 | 817 | 24554 | SH | SHARED | | 24554 | |
| D | OMNITURE INC | COM | 68212S10 | 65 | 1975 | SH | SHARED | 01 | 1975 | |
| D | OMNITURE INC | COM | 68212S10 | 1171 | 35200 | SH | SHARED | 10 | 35200 | |
| D | OMNIVISION TECHNOLOGIES INC | COM | 68212810 | 1337 | 85443 | SH | SHARED | | 85443 | |
| D | OMNIVISION TECHNOLOGIES INC | COM | 68212810 | 519 | 33225 | SH | SHARED | 01 | 33225 | |
| D | OMNIVISION TECHNOLOGIES INC | COM | 68212810 | 110 | 7072 | SH | SHARED | 02 | 7072 | |
| D | OMNIVISION TECHNOLOGIES INC | COM | 68212810 | 509 | 32532 | SH | SHARED | 10 | 32532 | |
| D | OMNOVA SOLUTIONS INC | COM | 68212910 | 4 | 1096 | SH | SHARED | | 1096 | |
| D | OMNOVA SOLUTIONS INC | COM | 68212910 | 25 | 5700 | SH | SHARED | 02 | 5700 | |
| D | OMNICELL INC | COM | 68213N10 | 0 | 21 | SH | SHARED | | 21 | |
| D | OMNICELL INC | COM | 68213N10 | 398 | 14800 | SH | SHARED | 10 | 14800 | |
| D | OMNICARE CAP TR II | PFD B TR 4.00% | 68214Q20 | 4531 | 126400 | SH | SHARED | | 126400 | |
| D | OMNI FINL SVCS INC | COM | 68214U10 | 218 | 51311 | SH | SHARED | | 51311 | |
| D | ON ASSIGNMENT INC | COM | 68215910 | 12 | 1829 | SH | SHARED | | 1829 | |
| D | ON ASSIGNMENT INC | COM | 68215910 | 316 | 45102 | SH | SHARED | 02 | 45102 | |
| D | ON SEMICONDUCTOR CORP | NOTE 1.875%12/1 | 682189AD | 14310 | 10000000 | PRN | SHARED | | | 0000000 |
| D | ON SEMICONDUCTOR CORP | NOTE 4/1 | 682189AE | 20710 | 19000000 | PRN | SHARED | | | 9000000 |
| D | ON SEMICONDUCTOR CORP | COM | 68218910 | 11 | 1318 | SH | SHARED | | 1318 | |
| D | ON SEMICONDUCTOR CORP | COM | 68218910 | 136 | 15325 | SH | SHARED | 01 | 15325 | |
| D | ON SEMICONDUCTOR CORP | COM | 68218910 | 222 | 25000 | SH | SHARED | 04 | 25000 | |
| D | ON SEMICONDUCTOR CORP | COM | 68218910 | 7596 | 855450 | SH | SHARED | 10 | 855450 | |
| D | ONE LIBERTY PPTYS INC | COM | 68240610 | 4 | 228 | SH | SHARED | | 228 | |
| D | ONE LIBERTY PPTYS INC | COM | 68240610 | 2755 | 150000 | SH | SHARED | 11 | | 150000 |
| D | 1 800 FLOWERS COM | CL A | 68243Q10 | 0 | 100 | SH | SHARED | | 100 | |
| D | ONEIDA FINL CORP | COM | 68247810 | 8 | 870 | SH | SHARED | | 870 | |
| D | ONEOK PARTNERS LP | UNIT LTD PARTN | 68268010 | 492 | 8035 | SH | SHARED | | 8035 | |
| D | ONEOK INC NEW | COM | 68268010 | 9750 | 217780 | SH | SHARED | | 214180 | 3600 |
| D | ONEOK INC NEW | COM | 68268010 | 2140 | 47801 | SH | SHARED | 01 | 13401 | 34400 |
| D | ONEOK INC NEW | COM | 68268010 | 761 | 17020 | SH | SHARED | 02 | 17020 | |
| D | ONEOK INC NEW | COM | 68268010 | 5748 | 128406 | SH | SHARED | 10 | 106706 | 21700 |

| | Name | Class | CUSIP | Value | Shares/PRN | | Discretion | Mgr | Col A | Col B |
|---|---|---|---|---|---|---|---|---|---|---|
| D | ONLINE RES CORP | COM | 68273G10 | 1 | 101 | SH | SHARED | | 101 | |
| D | ONSTREAM MEDIA CORP | COM | 68287510 | 0 | 993 | SH | SHARED | | 993 | |
| D | ON2 TECHNOLOGIES INC | COM | 68338A10 | 108 | 106419 | SH | SHARED | | 106419 | |
| D | ONVIA INC | COM NEW | 68338T40 | 1 | 192 | SH | SHARED | | 192 | |
| D | ONYX PHARMACEUTICALS INC | COM | 68339910 | 1098 | 19748 | SH | SHARED | | 19748 | |
| D | ONYX PHARMACEUTICALS INC | COM | 68339910 | 397 | 7145 | SH | SHARED | 01 | 7145 | |
| D | ONYX PHARMACEUTICALS INC | COM | 68339910 | 111 | 2000 | SH | SHR/OTHR | 01 | | 2000 |
| D | ONYX PHARMACEUTICALS INC | COM | 68339910 | 2 | 50 | SH | SHARED | 02 | 50 | |
| D | ONYX PHARMACEUTICALS INC | COM | 68339910 | 28461 | 511705 | SH | SHARED | 04 | 511705 | |
| D | ONYX PHARMACEUTICALS INC | COM | 68339910 | 6880 | 123700 | SH | SHARED | 10 | 123700 | |
| D | ONYX PHARMACEUTICALS INC | COM | 68339910 | 83 | 1500 | SH | SHARED | 14 | 1500 | |
| D | ONYX PHARMACEUTICALS INC | COM | 68339910 | 3337 | 60000 | SH | SHARED | 16 | 60000 | |
| D | OPEN JT STK CO-VIMPEL COMMUN | SPONSORED ADR | 68370R10 | 1872 | 45000 | SH | SHARED | | | 45000 |
| D | OPEN JT STK CO-VIMPEL COMMUN | SPONSORED ADR | 68370R10 | 16560 | 398095 | SH | SHARED | | 398095 | |
| D | OPEN JT STK CO-VIMPEL COMMUN | SPONSORED ADR | 68370R10 | 3590 | 86300 | SH | SHARED | 01 | 86300 | |
| D | OPEN JT STK CO-VIMPEL COMMUN | SPONSORED ADR | 68370R10 | 2104 | 50600 | SH | SHARED | 02 | 50600 | |
| D | OPEN JT STK CO-VIMPEL COMMUN | SPONSORED ADR | 68370R10 | 91607 | 2202100 | SH | SHARED | 04 | 2202100 | |
| D | OPEN JT STK CO-VIMPEL COMMUN | SPONSORED ADR | 68370R10 | 72800 | 1750000 | SH | SHARED | 05 | 1750000 | |
| D | OPEN JT STK CO-VIMPEL COMMUN | SPONSORED ADR | 68370R10 | 14135 | 339800 | SH | SHARED | 10 | 339800 | |
| D | OPEN JT STK CO-VIMPEL COMMUN | SPONSORED ADR | 68370R10 | 69 | 1680 | SH | SHARED | 21 | 1680 | |
| D | OPEN JT STK CO-VIMPEL COMMUN | SPONSORED ADR | 68370R10 | 2046 | 49200 | SH | SHARED | 24 | 49200 | |
| D | OPEN TEXT CORP | COM | 68371510 | 1477 | 46967 | SH | SHARED | | 46967 | |
| D | OPEN TEXT CORP | COM | 68371510 | 283 | 9000 | SH | SHARED | 14 | 9000 | |
| D | OPENWAVE SYS INC | NOTE 2.750% 9/0 | 683718AC | 1568 | 1625000 | PRN | SHARED | | 1625000 | |
| D | OPENWAVE SYS INC | COM | 68371830 | 135 | 51977 | SH | SHARED | | 51977 | |
| D | OPENWAVE SYS INC | COM NEW | 68371830 | 130 | 50100 | SH | SHARED | 10 | 50100 | |
| D | OPENWAVE SYS INC | COM NEW | 68371830 | 21 | 8099 | SH | SHARED | 23 | | 8099 |
| D | OPEXA THERAPEUTICS INC | COM | 68372710 | 0 | 161 | SH | SHARED | | 161 | |
| D | OPKO HEALTH INC | COM | 68375N10 | 7 | 2560 | SH | SHARED | | 2560 | |
| D | OPLINK COMMUNICATIONS INC | COM | 68375Q40 | 1500 | 97780 | SH | SHARED | | 97780 | |
| D | OPLINK COMMUNICATIONS INC | COM NEW | 68375Q40 | 1 | 82 | SH | SHARED | 02 | 82 | |
| D | OPNEXT INC | COM | 68375V10 | 3 | 430 | SH | SHARED | | 430 | |
| D | OPNET TECHNOLOGIES INC | COM | 68375T10 | 3 | 341 | SH | SHARED | | 341 | |
| D | OPNET TECHNOLOGIES INC | COM | 68375T10 | 29 | 3275 | SH | SHARED | 02 | 3275 | |
| D | OPTELECOM NKF INC | COM PAR $0.03 | 68381820 | 0 | 126 | SH | SHARED | | 126 | |
| D | OPTICAL CABLE CORP | COM NEW | 68382720 | 0 | 162 | SH | SHARED | | 162 | |
| D | OPTIMAL GROUP INC | CL A NEW | 68388B20 | 656 | 158240 | SH | SHARED | | 158240 | |
| D | ORACLE CORP | COM | 68389X10 | 20 | 900 | SH | SHARED | | 900 | |
| D | ORACLE CORP | COM | 68389X10 | 150626 | 6670807 | SH | SHARED | | 6653797 | 17010 |
| D | ORACLE CORP | COM | 68389X10 | 21211 | 939373 | SH | SHARED | 01 | 812123 | 127250 |
| D | ORACLE CORP | COM | 68389X10 | 2655 | 117600 | SH | SHR/OTHR | 01 | | 117600 |
| D | ORACLE CORP | COM | 68389X10 | 15975 | 707499 | SH | SHARED | 02 | 707499 | |
| D | ORACLE CORP | COM | 68389X10 | 10273 | 455000 | SH | SHARED | 04 | 455000 | |
| D | ORACLE CORP | COM | 68389X10 | 38 | 1695 | SH | SHARED | 05 | 1695 | |
| D | ORACLE CORP | COM | 68389X10 | 2909 | 128841 | SH | SHARED | 06 | | 128841 |
| D | ORACLE CORP | COM | 68389X10 | 92433 | 4093605 | SH | SHARED | 10 | 4019505 | 74100 |
| D | ORACLE CORP | COM | 68389X10 | 9 | 400 | SH | SHR/OTHR | 10 | | 400 |
| D | ORACLE CORP | COM | 68389X10 | 1290 | 57165 | SH | SHARED | 14 | 13600 | 43565 |
| D | ORACLE CORP | COM | 68389X10 | 5125 | 227010 | SH | SHARED | 16 | 227010 | |
| D | ORACLE CORP | COM | 68389X10 | 59 | 2650 | SH | SHARED | 19 | | 2650 |
| D | ORACLE CORP | COM | 68389X10 | 491 | 21755 | SH | SHARED | 20 | 10425 | 11330 |
| D | ORACLE CORP | COM | 68389X10 | 8 | 375 | SH | SHR/OTHR | 20 | | 375 |
| D | ORACLE CORP | COM | 68389X10 | 476 | 21085 | SH | SHARED | 22 | 13174 | 7911 |
| D | ORACLE CORP | COM | 68389X10 | 762 | 33747 | SH | SHARED | 22 | 27852 | 5895 |
| D | ORACLE CORP | COM | 68389X10 | 65 | 2900 | SH | SHR/OTHR | 22 | | 2900 |
| D | ORACLE CORP | COM | 68389X10 | 2700 | 119610 | SH | SHARED | 23 | 111910 | 7700 |
| D | ORACLE CORP | COM | 68389X10 | 1635 | 72420 | SH | SHR/OTHR | 23 | | 72420 |
| D | OPTIMER PHARMACEUTICALS INC | COM | 68401H10 | 332 | 47529 | SH | SHARED | | 47529 | |
| D | OPTIMER PHARMACEUTICALS INC | COM | 68401H10 | 0 | 48 | SH | SHARED | 02 | 48 | |
| D | OPTIMER PHARMACEUTICALS INC | COM | 68401I10 | 1845 | 263600 | SH | SHARED | 04 | 263600 | |
| D | OPTIONSXPRESS HLDGS INC | COM | 68401I10 | 357 | 10566 | SH | SHARED | | 10566 | |
| D | OPTIONSXPRESS HLDGS INC | COM | 68401I10 | 166 | 4920 | SH | SHARED | 01 | 4920 | |
| D | OPTIONSXPRESS HLDGS INC | COM | 68401I10 | 23 | 709 | SH | SHARED | 02 | 709 | |
| D | OPTIONSXPRESS HLDGS INC | COM | 68401I10 | 392 | 11600 | SH | SHARED | 10 | 11600 | |
| D | OPTIUM CORP | COM | 68402710 | 14 | 1839 | SH | SHARED | | 1839 | |
| D | ORANGE 21 INC | COM | 68531710 | 0 | 127 | SH | SHARED | | 127 | |
| D | ORASURE TECHNOLOGIES INC | COM | 68554V10 | 22 | 2517 | SH | SHARED | | 2517 | |
| D | ORASURE TECHNOLOGIES INC | COM | 68554V10 | 52 | 5925 | SH | SHARED | 02 | 5925 | |
| D | ORBCOMM INC | COM | 68555010 | 5 | 811 | SH | SHARED | | 811 | |
| D | ORBIT INTL CORP | COM NEW | 68555930 | 11 | 1326 | SH | SHARED | | 1326 | |
| D | ORBITAL SCIENCES CORP | COM | 68556410 | 1808 | 73773 | SH | SHARED | | 73773 | |
| D | ORBITAL SCIENCES CORP | COM | 68556410 | 94 | 3859 | SH | SHARED | 02 | 3859 | |
| D | ORBITAL SCIENCES CORP | COM | 68556410 | 126 | 5157 | SH | SHARED | 10 | 5157 | |
| D | ORBITZ WORLDWIDE INC | COM | 68557K10 | 3 | 454 | SH | SHARED | | 454 | |
| D | ORCHIDS PAPER PRODS CO DEL | COM | 68572N10 | 1 | 140 | SH | SHARED | | 140 | |
| D | ORCHID CELLMARK INC | COM | 68573C10 | 3 | 762 | SH | SHARED | | 762 | |
| D | O REILLY AUTOMOTIVE INC | COM | 68609110 | 455 | 14057 | SH | SHARED | | 14057 | |
| D | O REILLY AUTOMOTIVE INC | COM | 68609110 | 1183 | 36500 | SH | SHARED | 01 | | 36500 |
| D | O REILLY AUTOMOTIVE INC | COM | 68609110 | 514 | 15850 | SH | SHARED | 02 | 15850 | |
| D | O REILLY AUTOMOTIVE INC | COM | 68609110 | 145 | 4500 | SH | SHARED | 10 | 4500 | |
| D | O REILLY AUTOMOTIVE INC | COM | 68609110 | 51 | 1600 | SH | SHR/OTHR | 23 | | 1600 |
| D | OREXIGEN THERAPEUTICS INC | COM | 68616410 | 1 | 125 | SH | SHARED | | 125 | |
| D | ORIENTAL FINL GROUP INC | COM | 68618W10 | 653 | 48736 | SH | SHARED | | 48736 | |
| D | ORIENTAL FINL GROUP INC | COM | 68618W10 | 76 | 5700 | SH | SHARED | 10 | 5700 | |
| D | ORIGEN FINL INC | COM | 68619E20 | 1 | 465 | SH | SHARED | | 465 | |
| D | ORITANI FINL CORP | COM | 68632310 | 33 | 2733 | SH | SHARED | | 2733 | |
| D | ORIX CORP | SPONSORED ADR | 68633010 | 21 | 250 | SH | SHARED | | 250 | |
| D | ORIX CORP | SPONSORED ADR | 68633010 | 39 | 460 | SH | SHARED | 21 | 460 | |
| D | ORLEANS HOMEBUILDERS INC | COM | 68658810 | 1 | 404 | SH | SHARED | | 404 | |
| D | ORMAT TECHNOLOGIES INC | COM | 68668810 | 218 | 3972 | SH | SHARED | | | 3972 |
| D | ORMAT TECHNOLOGIES INC | COM | 68668810 | 3081 | 56010 | SH | SHARED | | 56010 | |
| D | ORMAT TECHNOLOGIES INC | COM | 68668810 | 214 | 3895 | SH | SHARED | 01 | 3895 | |
| D | ORMAT TECHNOLOGIES INC | COM | 68668810 | 22 | 400 | SH | SHARED | 02 | 400 | |
| D | ORMAT TECHNOLOGIES INC | COM | 68668810 | 12943 | 235291 | SH | SHARED | 04 | 235291 | |
| D | ORMAT TECHNOLOGIES INC | COM | 68668810 | 11599 | 210870 | SH | SHARED | 05 | 210870 | |
| D | ORMAT TECHNOLOGIES INC | COM | 68668810 | 519 | 9451 | SH | SHARED | 06 | | 9451 |
| D | ORMAT TECHNOLOGIES INC | COM | 68668810 | 446 | 8124 | SH | SHARED | 10 | 8124 | |
| D | ORTHOLOGIC CORP | COM | 68750J10 | 1 | 1083 | SH | SHARED | | 1083 | |
| D | ORTHOVITA INC | COM | 68750V10 | 6 | 1922 | SH | SHARED | | 1922 | |
| D | OSAGE BANCSHARES INC | COM | 68750V10 | 0 | 89 | SH | SHARED | | 89 | |
| D | OSCIENT PHARMACEUTICALS CORP | NOTE 3.500% 4/1 | 68812RAC | 33 | 84000 | PRN | SHARED | | 84000 | |
| D | OSCIENT PHARMACEUTICALS CORP | NOTE 3.500% 4/1 | 68812RAC | 8 | 20000 | PRN | SHARED | 02 | 20000 | |
| D | OSCIENT PHARMACEUTICALS CORP | COM NEW | 68812R30 | 0 | 323 | SH | SHARED | | 323 | |
| D | OSHKOSH TRUCK CORP | COM | 68823920 | 8497 | 179813 | SH | SHARED | | 179813 | |
| D | OSHKOSH TRUCK CORP | COM | 68823920 | 1077 | 22800 | SH | SHARED | 01 | | 22800 |
| D | OSHKOSH TRUCK CORP | COM | 68823920 | 827 | 17515 | SH | SHARED | 02 | 17515 | |
| D | OSHKOSH TRUCK CORP | COM | 68823920 | 18 | 400 | SH | SHARED | 06 | | 400 |
| D | OSHKOSH TRUCK CORP | COM | 68823920 | 16662 | 352580 | SH | SHARED | 10 | 352580 | |
| D | OSHKOSH TRUCK CORP | COM | 68823920 | 11 | 250 | SH | SHARED | 21 | | 250 |
| D | OSIRIS THERAPEUTICS INC | COM | 68827R10 | 819 | 68166 | SH | SHARED | | 68166 | |
| D | OSTEOTECH INC | COM | 68858210 | 6 | 832 | SH | SHARED | | 832 | |
| D | OSTEOTECH INC | COM | 68858210 | 12 | 1650 | SH | SHARED | 02 | 1650 | |
| D | OTTER TAIL CORP | COM | 68964810 | 12 | 348 | SH | SHARED | | 348 | |
| D | OTTER TAIL CORP | COM | 68964810 | 394 | 11400 | SH | SHARED | 10 | 11400 | |

| D | Issuer | Class | CUSIP | | | Type | Disc | Code | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | OUTDOOR CHANNEL HLDGS INC | COM NEW | 69002720 | 55 | 8081 | SH | SHARED | | 8081 | |
| D | OUTDOOR CHANNEL HLDGS INC | COM NEW | 69002720 | 11 | 1700 | SH | SHARED | 02 | 1700 | |
| D | OVERHILL FARMS INC | COM | 69021210 | 1 | 369 | SH | SHARED | | 369 | |
| D | OVERLAND STORAGE INC | COM | 69031010 | 0 | 480 | SH | SHARED | | 480 | |
| D | OVERSEAS SHIPHOLDING GROUP I | COM | 69036810 | 3142 | 42226 | SH | SHARED | | 42226 | |
| D | OVERSEAS SHIPHOLDING GROUP I | COM | 69036810 | 1177 | 15820 | SH | SHARED | 01 | 6120 | 9700 |
| D | OVERSEAS SHIPHOLDING GROUP I | COM | 69036810 | 113 | 1519 | SH | SHARED | 02 | 1519 | |
| D | OVERSEAS SHIPHOLDING GROUP I | COM | 69036810 | 140 | 1886 | SH | SHARED | 10 | 1886 | |
| D | OVERSTOCK COM INC DEL | COM | 69037010 | 63 | 4096 | SH | SHARED | | 4096 | |
| D | OWENS & MINOR INC NEW | COM | 69073210 | 344 | 8115 | SH | SHARED | | 8115 | |
| D | OWENS & MINOR INC NEW | COM | 69073210 | 33 | 800 | SH | SHARED | 01 | 800 | |
| D | OWENS & MINOR INC NEW | COM | 69073210 | 10013 | 236000 | SH | SHARED | 10 | 236000 | |
| D | OWENS & MINOR INC NEW | COM | 69073210 | 37 | 875 | SH | SHARED | 21 | | 875 |
| D | OWENS CORNING NEW | COM | 69074210 | 79 | 3952 | SH | SHARED | | 3952 | |
| D | OWENS CORNING NEW | COM | 69074210 | 485 | 24015 | SH | SHARED | 01 | 18530 | 5485 |
| D | OWENS CORNING NEW | COM | 69074210 | 79 | 3925 | SH | SHR/OTHR | 01 | | 3925 |
| D | OWENS CORNING NEW | COM | 69074210 | 204 | 10100 | SH | SHARED | 10 | 10100 | |
| D | OWENS CORNING NEW | COM | 69074210 | 20 | 1000 | SH | SHARED | 20 | 1000 | |
| D | OWENS CORNING NEW | COM | 69074210 | 12 | 605 | SH | SHR/OTHR | 21 | | 605 |
| D | OWENS CORNING NEW | COM | 69074210 | 7 | 350 | SH | SHARED | 22 | 350 | |
| D | OWENS ILL INC | COM NEW | 69076840 | 3090 | 62443 | SH | SHARED | | 51543 | 10900 |
| D | OWENS ILL INC | COM NEW | 69076840 | 227 | 4600 | SH | SHARED | 01 | 4600 | |
| D | OWENS ILL INC | COM NEW | 69076840 | 7 | 150 | SH | SHARED | 05 | 150 | |
| D | OWENS ILL INC | COM NEW | 69076840 | 75 | 1530 | SH | SHARED | 06 | | 1530 |
| D | OWENS ILL INC | COM NEW | 69076840 | 21737 | 439140 | SH | SHARED | 10 | 351240 | 87900 |
| D | OWENS ILL INC | COM NEW | 69076840 | 126 | 2550 | SH | SHARED | 14 | 2550 | |
| D | OWENS ILL INC | COM NEW | 69076840 | 3 | 70 | SH | SHARED | 21 | | 70 |
| D | OWENS ILL INC | COM NEW | 69076840 | 1247 | 25200 | SH | SHARED | 24 | 25200 | |
| D | OWENS ILL INC | PFD CONV $.01 | 69076850 | 23629 | 472770 | SH | SHARED | | 472770 | |
| D | OXFORD INDS INC | COM | 69149730 | 110 | 4269 | SH | SHARED | | 4269 | |
| D | OXFORD INDS INC | COM | 69149730 | 25 | 1000 | SH | SHARED | 01 | 1000 | |
| D | OXFORD INDS INC | COM | 69149730 | 582 | 22600 | SH | SHARED | 10 | 22600 | |
| D | OXIGENE INC | COM | 69182810 | 1 | 741 | SH | SHARED | | 741 | |
| D | P & F INDS INC | CL A NEW | 69283050 | 0 | 50 | SH | SHARED | | 50 | |
| D | PAB BANKSHARES INC | COM | 69313P10 | 2 | 219 | SH | SHARED | | 219 | |
| D | P A M TRANSN SVCS INC | COM | 69314910 | 12 | 799 | SH | SHARED | | 799 | |
| D | P C CONNECTION | COM | 69318J10 | 844 | 74434 | SH | SHARED | | 74434 | |
| D | PC MALL INC | COM | 69323K10 | 361 | 38808 | SH | SHARED | | 38808 | |
| D | PC-TEL INC | COM | 69325Q10 | 288 | 42046 | SH | SHARED | | 42046 | |
| D | PDF SOLUTIONS INC | COM | 69328210 | 86 | 9630 | SH | SHARED | | 9630 | |
| D | PDI INC | COM | 69329V10 | 1085 | 115796 | SH | SHARED | | 115796 | |
| D | PDL BIOPHARMA INC | COM | 69329Y10 | 5335 | 304520 | SH | SHARED | | 304520 | |
| D | PDL BIOPHARMA INC | COM | 69329Y10 | 1273 | 72675 | SH | SHARED | 01 | 37075 | 35600 |
| D | PDL BIOPHARMA INC | COM | 69329Y10 | 119 | 6821 | SH | SHARED | 02 | 6821 | |
| D | PDL BIOPHARMA INC | COM | 69329Y10 | 3362 | 191925 | SH | SHARED | 04 | 191925 | |
| D | PDL BIOPHARMA INC | COM | 69329Y10 | 2447 | 139700 | SH | SHARED | 10 | 139700 | |
| D | PDL BIOPHARMA INC | COM | 69329Y10 | 42 | 2400 | SH | SHARED | 14 | | 2400 |
| D | PG&E CORP | NOTE 9.500% 6/3 | 69331CAD | 32515 | 10626000 | PRN | SHARED | | 0626000 | |
| D | PG&E CORP | COM | 69331C10 | 52 | 1207 | SH | SHARED | | 1207 | |
| D | PG&E CORP | COM | 69331C10 | 48406 | 1123372 | SH | SHARED | | 1123372 | |
| D | PG&E CORP | COM | 69331C10 | 2747 | 63754 | SH | SHARED | 01 | 58279 | 5475 |
| D | PG&E CORP | COM | 69331C10 | 140 | 3250 | SH | SHR/OTHR | 01 | | 3250 |
| D | PG&E CORP | COM | 69331C10 | 4811 | 111667 | SH | SHARED | 02 | 111667 | |
| D | PG&E CORP | COM | 69331C10 | 93197 | 2162864 | SH | SHARED | 04 | 2162864 | |
| D | PG&E CORP | COM | 69331C10 | 25447 | 590556 | SH | SHARED | 05 | 590556 | |
| D | PG&E CORP | COM | 69331C10 | 57950 | 1344882 | SH | SHARED | 06 | | 1344882 |
| D | PG&E CORP | COM | 69331C10 | 7780 | 180568 | SH | SHARED | 10 | 180568 | |
| D | PG&E CORP | COM | 69331C10 | 77 | 1800 | SH | SHARED | 14 | 1800 | |
| D | PG&E CORP | COM | 69331C10 | 5286 | 122693 | SH | SHARED | 16 | 122693 | |
| D | PG&E CORP | COM | 69331C10 | 32 | 750 | SH | SHARED | 20 | 750 | |
| D | PG&E CORP | COM | 69331C10 | 21 | 495 | SH | SHR/OTHR | 21 | | 495 |
| D | PG&E CORP | COM | 69331C10 | 15 | 350 | SH | SHARED | 22 | 350 | |
| D | PG&E CORP | COM | 69331C10 | 592 | 13750 | SH | SHR/OTHR | 23 | | 13750 |
| D | PFF BANCORP INC | COM | 69331W10 | 112 | 9314 | SH | SHARED | | 9314 | |
| D | PFF BANCORP INC | COM | 69331W10 | 43 | 3650 | SH | SHARED | 02 | 3650 | |
| D | PFF BANCORP INC | COM | 69331W10 | 66 | 5500 | SH | SHARED | 10 | 5500 | |
| D | PHC INC MASS | CL A | 69331510 | 1 | 517 | SH | SHARED | | 517 | |
| D | PHH CORP | COM NEW | 69332020 | 2028 | 115005 | SH | SHARED | | 115005 | |
| D | PHH CORP | COM NEW | 69332020 | 91 | 5165 | SH | SHARED | 01 | 4665 | 500 |
| D | PHH CORP | COM NEW | 69332020 | 315 | 17900 | SH | SHARED | 10 | 17900 | |
| D | P F CHANGS CHINA BISTRO INC | COM | 69333Y10 | 370 | 16222 | SH | SHARED | | 16222 | |
| D | P F CHANGS CHINA BISTRO INC | COM | 69333Y10 | 36 | 1600 | SH | SHARED | 01 | 1600 | |
| D | P F CHANGS CHINA BISTRO INC | COM | 69333Y10 | 61 | 2700 | SH | SHARED | 02 | 2700 | |
| D | P F CHANGS CHINA BISTRO INC | COM | 69333Y10 | 82 | 3609 | SH | SHARED | 10 | 3609 | |
| D | PHI INC | COM NON VTG | 69336T20 | 7 | 242 | SH | SHARED | | 242 | |
| D | PGT INC | COM | 69336V10 | 0 | 64 | SH | SHARED | | 64 | |
| D | PGT INC | COM | 69336V10 | 6 | 1261 | SH | SHARED | 02 | 1261 | |
| D | PICO HLDGS INC | COM NEW | 69336620 | 11 | 353 | SH | SHARED | | 353 | |
| D | PICO HLDGS INC | COM NEW | 69336620 | 262 | 7800 | SH | SHARED | 10 | 7800 | |
| D | PLC SYS INC | COM | 69341D10 | 0 | 563 | SH | SHARED | | 563 | |
| D | PLX TECHNOLOGY INC | COM | 69341710 | 0 | 100 | SH | SHARED | | 100 | |
| D | PLX TECHNOLOGY INC | COM | 69341710 | 82 | 8875 | SH | SHARED | 01 | 8875 | |
| D | PLX TECHNOLOGY INC | COM | 69341710 | 584 | 62900 | SH | SHARED | 10 | 62900 | |
| D | PMA CAP CORP | DBCV 6.500% 9/3 | 693419AD | 1349 | 1254000 | PRN | SHARED | | 1254000 | |
| D | PMA CAP CORP | CL A | 69341920 | 6 | 769 | SH | SHARED | | 769 | |
| D | PMA CAP CORP | CL A | 69341920 | 53 | 6520 | SH | SHARED | 01 | 6520 | |
| D | PMA CAP CORP | CL A | 69341920 | 11 | 1425 | SH | SHARED | 02 | 1425 | |
| D | PMA CAP CORP | CL A | 69341920 | 129 | 15700 | SH | SHARED | 10 | 15700 | |
| D | PMC COML TR | SH BEN INT | 69343410 | 3 | 280 | SH | SHARED | | 280 | |
| D | PMC-SIERRA INC | NOTE 2.250%10/1 | 69344FAD | 24912 | 24000000 | PRN | SHARED | | 4000000 | |
| D | PMC-SIERRA INC | NOTE 2.250%10/1 | 69344FAD | 337 | 325000 | PRN | SHARED | 02 | 325000 | |
| D | PMC-SIERRA INC | COM | 69344F10 | 461 | 70558 | SH | SHARED | | 70558 | |
| D | PMC-SIERRA INC | COM | 69344F10 | 70 | 10795 | SH | SHARED | 01 | 10795 | |
| D | PMC-SIERRA INC | COM | 69344F10 | 1052 | 160900 | SH | SHARED | 10 | 160900 | |
| D | PMC-SIERRA INC | COM | 69344F10 | 5939 | 908115 | SH | SHARED | 10 | 908115 | |
| D | PMC-SIERRA INC | COM | 69344F10 | 3270 | 500000 | SH | SHARED | 15 | 500000 | 500000 |
| D | PMI GROUP INC | COM | 69344M10 | 41730 | 3142390 | SH | SHARED | | 3142390 | |
| D | PMI GROUP INC | COM | 69344M10 | 254 | 19200 | SH | SHARED | 01 | 6000 | 13200 |
| D | PMI GROUP INC | COM | 69344M10 | 1546 | 116480 | SH | SHARED | 02 | 116480 | |
| D | PMI GROUP INC | COM | 69344M10 | 54 | 4100 | SH | SHARED | 10 | 4100 | |
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 3227 | 49157 | SH | SHARED | | 35865 | 13292 |
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 65827 | 1002696 | SH | SHARED | | 1002696 | |
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 14224 | 216675 | SH | SHARED | 01 | 195025 | 21650 |
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 2127 | 32400 | SH | SHR/OTHR | 01 | | 32400 |
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 531 | 8100 | SH | SHARED | 02 | 8100 | |
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 800 | 12200 | SH | SHARED | 04 | | 12200 |
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 9 | 150 | SH | SHARED | 05 | 150 | |
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 197 | 3001 | SH | SHARED | 06 | 3001 | |
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 275054 | 4189709 | SH | SHARED | 10 | 4187909 | 1800 |
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 6926 | 105511 | SH | SHARED | 19 | | 10551 |
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 2672 | 40710 | SH | SHARED | 20 | 32115 | 8595 |
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 436 | 6650 | SH | SHR/OTHR | 20 | | 6650 |
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 86 | 1312 | SH | SHARED | 22 | 821 | 491 |
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 31 | 486 | SH | SHR/OTHR | 22 | | 486 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 1725 | 26290 SH | | SHARED | 23 | 25780 | 510 |
| D | PNC FINL SVCS GROUP INC | COM | 69347510 | 666 | 10145 SH | | SHR/OTHR | 23 | | 10145 |
| D | POSCO | | 69348310 | 314 | 2090 SH | | SHARED | | 2090 | |
| D | POSCO | SPONSORED ADR | 69348310 | 13160 | 87500 SH | | SHARED | | 87500 | |
| D | POSCO | SPONSORED ADR | 69348310 | 4835 | 32150 SH | | SHARED | 01 | 31900 | 250 |
| D | POSCO | SPONSORED ADR | 69348310 | 4512 | 30000 SH | | SHARED | 04 | 30000 | |
| D | POSCO | SPONSORED ADR | 69348310 | 2105 | 14000 SH | | SHARED | 06 | | 14000 |
| D | POSCO | SPONSORED ADR | 69348310 | 18304 | 121700 SH | | SHARED | 10 | 121700 | |
| D | POSCO | SPONSORED ADR | 69348310 | 37 | 250 SH | | SHARED | 20 | 250 | |
| D | POSCO | SPONSORED ADR | 69348310 | 2692 | 17900 SH | | SHARED | 24 | 17900 | |
| D | PNM RES INC | COM | 69349H10 | 603 | 28156 SH | | SHARED | | 28156 | |
| D | PNM RES INC | COM | 69349H10 | 877 | 40900 SH | | SHARED | 01 | 9700 | 31200 |
| D | PNM RES INC | COM | 69349H10 | 395 | 18436 SH | | SHARED | 02 | 18436 | |
| D | PNM RES INC | COM | 69349H10 | 1488 | 69387 SH | | SHARED | 10 | 69387 | |
| D | PNM RES INC | COM | 69349H10 | 42 | 2000 SH | | SHR/OTHR | 23 | | 2000 |
| D | PPG INDS INC | COM | 69350610 | 34864 | 496436 SH | | SHARED | | 496436 | |
| D | PPG INDS INC | COM | 69350610 | 1453 | 20692 SH | | SHARED | 01 | 19092 | 1600 |
| D | PPG INDS INC | COM | 69350610 | 140 | 2000 SH | | SHR/OTHR | 01 | | 2000 |
| D | PPG INDS INC | COM | 69350610 | 1091 | 15536 SH | | SHARED | 02 | 15536 | |
| D | PPG INDS INC | COM | 69350610 | 7 | 100 SH | | SHARED | 05 | 100 | |
| D | PPG INDS INC | COM | 69350610 | 114 | 1630 SH | | SHARED | 06 | | 1630 |
| D | PPG INDS INC | COM | 69350610 | 29500 | 420062 SH | | SHARED | 10 | 369962 | 50100 |
| D | PPG INDS INC | COM | 69350610 | 365 | 5200 SH | | SHARED | 14 | | 5200 |
| D | PPG INDS INC | COM | 69350610 | 84 | 1200 SH | | SHARED | 20 | | 1200 |
| D | PPG INDS INC | COM | 69350610 | 112 | 1600 SH | | SHR/OTHR | 22 | | 1600 |
| D | PPG INDS INC | COM | 69350610 | 10 | 150 SH | | SHARED | 23 | 150 | |
| D | PPG INDS INC | COM | 69350610 | 842 | 12000 SH | | SHR/OTHR | 23 | | 12000 |
| D | PPG INDS INC | COM | 69350610 | 1146 | 16320 SH | | SHARED | 24 | 16320 | |
| D | PPL CORP | COM | 69351T10 | 19503 | 374425 SH | | SHARED | | 374425 | |
| D | PPL CORP | COM | 69351T10 | 7897 | 151622 SH | | SHARED | 01 | 151622 | |
| D | PPL CORP | COM | 69351T10 | 900 | 17282 SH | | SHARED | 02 | 17282 | |
| D | PPL CORP | COM | 69351T10 | 10 | 200 SH | | SHARED | 05 | 200 | |
| D | PPL CORP | COM | 69351T10 | 1825 | 35049 SH | | SHARED | 06 | | 35049 |
| D | PPL CORP | COM | 69351T10 | 10481 | 201226 SH | | SHARED | 10 | 201226 | |
| D | PPL CORP | COM | 69351T10 | 31 | 600 SH | | SHARED | 14 | | 600 |
| D | PPL CORP | COM | 69351T10 | 182 | 3500 SH | | SHARED | 20 | 300 | 3200 |
| D | PRB ENERGY INC | COM | 69353510 | 0 | 195 SH | | SHARED | | 195 | |
| D | PRG-SCHULTZ INTERNATIONAL IN | COM NEW | 69357C50 | 5471 | 638423 SH | | SHARED | | 638423 | |
| D | PS BUSINESS PKS INC CALIF | COM | 69360J10 | 2559 | 48705 SH | | SHARED | | 48705 | |
| D | PS BUSINESS PKS INC CALIF | COM | 69360J10 | 9 | 175 SH | | SHARED | 01 | 175 | |
| D | PS BUSINESS PKS INC CALIF | COM | 69360J10 | 499 | 9500 SH | | SHARED | 02 | 9500 | |
| D | PS BUSINESS PKS INC CALIF | COM | 69360J10 | 204 | 3900 SH | | SHARED | 10 | 3900 | |
| D | PSB HLDGS INC | COM | 69360W10 | 0 | 77 SH | | SHARED | | 77 | |
| D | PVF CAPITAL CORP | COM | 69365410 | 1 | 178 SH | | SHARED | | 178 | |
| D | PSS WORLD MED INC | NOTE    2.250% 3/1 | 69366AAB | 21350 | 17344000 PRN | | SHARED | | 7344000 | |
| D | PSS WORLD MED INC | COM | 69366A10 | 35 | 1794 SH | | SHARED | | 1794 | |
| D | PSS WORLD MED INC | COM | 69366A10 | 156 | 8000 SH | | SHARED | 01 | 8000 | |
| D | PSS WORLD MED INC | COM | 69366A10 | 116 | 5954 SH | | SHARED | 02 | 5954 | |
| D | PSS WORLD MED INC | COM | 69366A10 | 158 | 8100 SH | | SHARED | 10 | 8100 | |
| D | PACCAR INC | COM | 69371810 | 55087 | 1011158 SH | | SHARED | | 1011158 | |
| D | PACCAR INC | COM | 69371810 | 2760 | 50673 SH | | SHARED | 01 | 50673 | |
| D | PACCAR INC | COM | 69371810 | 174 | 3205 SH | | SHR/OTHR | 01 | | 3205 |
| D | PACCAR INC | COM | 69371810 | 711 | 13068 SH | | SHARED | 02 | 13068 | |
| D | PACCAR INC | COM | 69371810 | 2451 | 45000 SH | | SHARED | 04 | 45000 | |
| D | PACCAR INC | COM | 69371810 | 10 | 190 SH | | SHARED | 05 | 190 | |
| D | PACCAR INC | COM | 69371810 | 202 | 3715 SH | | SHR/OTHR | 06 | | 3715 |
| D | PACCAR INC | COM | 69371810 | 37287 | 684428 SH | | SHARED | 10 | 684428 | |
| D | PACCAR INC | COM | 69371810 | 380 | 6986 SH | | SHR/OTHR | 10 | | 6986 |
| D | PACCAR INC | COM | 69371810 | 374 | 6869 SH | | SHARED | 20 | 603 | 6266 |
| D | PACCAR INC | COM | 69371810 | 23 | 438 SH | | SHR/OTHR | 20 | | 438 |
| D | PACCAR INC | COM | 69371810 | 121 | 2227 SH | | SHARED | 23 | 2227 | |
| D | PACCAR INC | COM | 69371810 | 603 | 11073 SH | | SHR/OTHR | 23 | | 11073 |
| D | PACER INTL INC TENN | COM | 69373H10 | 3439 | 235594 SH | | SHARED | | 235594 | |
| D | PACER INTL INC TENN | COM | 69373H10 | 108 | 7400 SH | | SHARED | 01 | 7400 | |
| D | PACER INTL INC TENN | COM | 69373H10 | 428 | 29327 SH | | SHARED | 02 | 29327 | |
| D | PACER INTL INC TENN | COM | 69373H10 | 125 | 8600 SH | | SHARED | 10 | 8600 | |
| D | PACIFIC CAP BANCORP NEW | COM | 69404P10 | 730 | 36307 SH | | SHARED | | 36307 | |
| D | PACIFIC CAP BANCORP NEW | COM | 69404P10 | 166 | 8258 SH | | SHARED | 01 | 6508 | 1750 |
| D | PACIFIC CAP BANCORP NEW | COM | 69404P10 | 4148 | 206066 SH | | SHARED | 10 | 206066 | |
| D | PACIFIC CONTINENTAL CORP | COM | 69412V10 | 3 | 305 SH | | SHARED | | 305 | |
| D | PACIFIC ETHANOL INC | COM | 69423010 | 4085 | 497596 SH | | SHARED | | 497596 | |
| D | PACIFIC ETHANOL INC | COM | 69423010 | 10 | 1250 SH | | SHARED | 02 | 1250 | |
| D | PACIFIC MERCANTILE BANCORP | COM | 69455210 | 3 | 270 SH | | SHARED | | 270 | |
| D | PACIFIC PREMIER BANCORP | COM | 69478X10 | 174 | 25197 SH | | SHARED | | 25197 | |
| D | PACIFIC STATE BANCORP CA | COM | 69486410 | 41 | 3278 SH | | SHARED | | 3278 | |
| D | PACIFIC SUNWEAR CALIF INC | COM | 69487310 | 5047 | 357746 SH | | SHARED | | 357746 | |
| D | PACIFIC SUNWEAR CALIF INC | COM | 69487310 | 342 | 24300 SH | | SHARED | 01 | | 24300 |
| D | PACIFIC SUNWEAR CALIF INC | COM | 69487310 | 47 | 3350 SH | | SHARED | 02 | 3350 | |
| D | PACIFIC SUNWEAR CALIF INC | COM | 69487310 | 64 | 4600 SH | | SHARED | 10 | 4600 | |
| D | PACIFIC SUNWEAR CALIF INC | COM | 69487310 | 141 | 10040 SH | | SHARED | 21 | 10040 | |
| D | PACIFIC SUNWEAR CALIF INC | COM | 69487310 | 17 | 1264 SH | | SHR/OTHR | 23 | | 1264 |
| D | PACKAGING CORP AMER | COM | 69515610 | 17809 | 631534 SH | | SHARED | | 620234 | 11300 |
| D | PACKAGING CORP AMER | COM | 69515610 | 1130 | 40100 SH | | SHARED | 01 | 11900 | 28200 |
| D | PACKAGING CORP AMER | COM | 69515610 | 124 | 4402 SH | | SHARED | 02 | 4402 | |
| D | PACKAGING CORP AMER | COM | 69515610 | 16722 | 593000 SH | | SHARED | 10 | 543900 | 49100 |
| D | PACKAGING CORP AMER | COM | 69515610 | 456 | 16200 SH | | SHARED | 24 | 16200 | |
| D | PACKETEER INC | COM | 69521010 | 112 | 18325 SH | | SHARED | | 18325 | |
| D | PACTIV CORP | COM | 69525710 | 18955 | 711827 SH | | SHARED | | 711827 | |
| D | PACTIV CORP | COM | 69525710 | 412 | 15500 SH | | SHARED | 01 | 15500 | |
| D | PACTIV CORP | COM | 69525710 | 51 | 1941 SH | | SHARED | 02 | 1941 | |
| D | PACTIV CORP | COM | 69525710 | 21 | 800 SH | | SHARED | 06 | | 800 |
| D | PACTIV CORP | COM | 69525710 | 1463 | 54968 SH | | SHARED | 10 | 54968 | |
| D | PACTIV CORP | COM | 69525710 | 79 | 3000 SH | | SHARED | 14 | | 3000 |
| D | PAETEC HOLDING CORP | COM | 69545910 | 4 | 459 SH | | SHARED | | 459 | |
| D | PAETEC HOLDING CORP | COM | 69545910 | 136 | 14000 SH | | SHARED | 02 | 14000 | |
| D | PAETEC HOLDING CORP | COM | 69545910 | 280 | 28800 SH | | SHARED | 10 | 28800 | |
| D | PAINCARE HLDGS INC | COM | 69562E10 | 0 | 1854 SH | | SHARED | | 1854 | |
| D | PAIN THERAPEUTICS INC | COM | 69562A10 | 98 | 9300 SH | | SHARED | 01 | | 9300 |
| D | PAIN THERAPEUTICS INC | COM | 69562A10 | 41 | 3900 SH | | SHARED | 02 | 3900 | |
| D | PALATIN TECHNOLOGIES INC | COM NEW | 69607730 | 0 | 2058 SH | | SHARED | | 2058 | |
| D | PALL CORP | COM | 69642930 | 16853 | 417998 SH | | SHARED | | 413998 | 4000 |
| D | PALL CORP | COM | 69642930 | 610 | 15144 SH | | SHARED | 01 | 15144 | |
| D | PALL CORP | COM | 69642930 | 73 | 1823 SH | | SHARED | 02 | 1823 | |
| D | PALL CORP | COM | 69642930 | 177745 | 4408363 SH | | SHARED | 04 | 4408363 | |
| D | PALL CORP | COM | 69642930 | 15000 | 372048 SH | | SHARED | 05 | 372048 | |
| D | PALL CORP | COM | 69642930 | 24 | 610 SH | | SHARED | 06 | | 610 |
| D | PALL CORP | COM | 69642930 | 1982 | 49163 SH | | SHARED | 10 | 49163 | |
| D | PALL CORP | COM | 69642930 | 1330 | 33000 SH | | SHARED | 14 | 33000 | |
| D | PALL CORP | COM | 69642930 | 3770 | 93520 SH | | SHARED | 16 | 93520 | |
| D | PALL CORP | COM | 69642930 | 165 | 4100 SH | | SHR/OTHR | 23 | | 4100 |
| D | PALM HARBOR HOMES | NOTE    3.250% 5/1 | 696639AB | 70 | 100000 PRN | | SHARED | | 100000 | |
| D | PALM HARBOR HOMES | NOTE    3.250% 5/1 | 696639AB | 17 | 25000 PRN | | SHARED | 02 | 25000 | |
| D | PALM HARBOR HOMES | COM | 69663910 | 0 | 28 SH | | SHARED | | 28 | |
| D | PALM HARBOR HOMES | COM | 69663910 | 18 | 1750 SH | | SHARED | 02 | 1750 | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D PALM INC NEW | COM | 69664310 | 0 | 10 SH | | SHARED | | | 10 | |
| D PALM INC NEW | COM | 69664310 | 314 | 49582 SH | | SHARED | | | 49582 | |
| D PALM INC NEW | COM | 69664310 | 131 | 20735 SH | | SHARED | 01 | | 20735 | |
| D PALM INC NEW | COM | 69664310 | 1518 | 239442 SH | | SHARED | 02 | | 239442 | |
| D PALM INC NEW | COM | 69664310 | 179 | 28300 SH | | SHARED | 10 | | 28300 | |
| D PALOMAR MED TECHNOLOGIES INC | COM NEW | 69752930 | 178 | 11677 SH | | SHARED | | | 11677 | |
| D PALOMAR MED TECHNOLOGIES INC | COM NEW | 69752930 | 58 | 3803 SH | | SHARED | 02 | | 3803 | |
| D PAMRAPO BANCORP INC | COM | 69773810 | 2 | 102 SH | | SHARED | | | 102 | |
| D PAMRAPO BANCORP INC | COM | 69773810 | 72 | 3600 SH | | SHARED | 01 | | 3600 | |
| D PAN AMERICAN SILVER CORP | COM | 69790010 | 1028 | 29433 SH | | SHARED | | | 29433 | |
| D PAN AMERICAN SILVER CORP | COM | 69790010 | 2235 | 64001 SH | | SHARED | 04 | | 64001 | |
| D PAN AMERICAN SILVER CORP | COM | 69790010 | 26178 | 749450 SH | | SHARED | 10 | | 749450 | |
| D PANACOS PHARMACEUTICALS INC | COM | 69811Q10 | 1 | 1294 SH | | SHARED | | | 1294 | |
| D PANACOS PHARMACEUTICALS INC | COM | 69811Q10 | 0 | 1018 SH | | SHARED | 02 | | 1018 | |
| D PANERA BREAD CO | CL A | 69840W10 | 141 | 3941 SH | | SHARED | | | 941 | 3000 |
| D PANERA BREAD CO | CL A | 69840W10 | 64 | 1800 SH | | SHARED | 01 | | 1800 | |
| D PANHANDLE OIL AND GAS INC | COM | 69847T10 | 5 | 206 SH | | SHARED | | | 206 | |
| D PANTRY INC | NOTE 3.000%11/1 | 698657AL | 17268 | 19623008 PRN | | SHARED | | | 9623008 | |
| D PANTRY INC | COM | 69865710 | 1594 | 61025 SH | | SHARED | | | 61025 | |
| D PANTRY INC | COM | 69865710 | 785 | 30050 SH | | SHARED | 01 | | 30050 | |
| D PANTRY INC | COM | 69865710 | 2 | 100 SH | | SHARED | 02 | | 100 | |
| D PANTRY INC | COM | 69865710 | 27645 | 1057995 SH | | SHARED | 10 | | 1047595 | 10400 |
| D PANTRY INC | COM | 69865710 | 1424 | 54500 SH | | SHARED | 15 | | 54500 | |
| D PANTRY INC | COM | 69865710 | 476 | 18250 SH | | SHARED | 24 | | 18250 | |
| D PAPA JOHNS INTL INC | COM | 69881310 | 88 | 3902 SH | | SHARED | | | 3902 | |
| D PAPA JOHNS INTL INC | COM | 69881310 | 3 | 175 SH | | SHARED | 01 | | 175 | |
| D PAPA JOHNS INTL INC | COM | 69881310 | 304 | 13426 SH | | SHARED | 10 | | 13426 | |
| D PAR PHARMACEUTICAL COS INC | COM | 69888P10 | 584 | 24349 SH | | SHARED | | | 24349 | |
| D PAR PHARMACEUTICAL COS INC | COM | 69888P10 | 266 | 11100 SH | | SHARED | | | 11100 | 11100 |
| D PAR PHARMACEUTICAL COS INC | COM | 69888P10 | 80 | 3352 SH | | SHARED | 02 | | 3352 | |
| D PAR TECHNOLOGY CORP | COM | 69888410 | 1 | 216 SH | | SHARED | | | 216 | |
| D PARAGON TECHNOLOGIES INC | COM | 69912T10 | 0 | 66 SH | | SHARED | | | 66 | |
| D PARAGON SHIPPING INC | CL A | 69913R30 | 50 | 2764 SH | | SHARED | | | 2764 | |
| D PARALLEL PETE CORP DEL | COM | 69915710 | 5 | 286 SH | | SHARED | | | 286 | |
| D PARALLEL PETE CORP DEL | COM | 69915710 | 40 | 2325 SH | | SHARED | 01 | | 2325 | |
| D PARALLEL PETE CORP DEL | COM | 69915710 | 54 | 3090 SH | | SHARED | 02 | | 2725 | 365 |
| D PARALLEL PETE CORP DEL | COM | 69915710 | 27078 | 1535950 SH | | SHARED | 10 | | 1535950 | |
| D PARAMETRIC TECHNOLOGY CORP | COM NEW | 69917320 | 362 | 20289 SH | | SHARED | | | 20289 | |
| D PARAMETRIC TECHNOLOGY CORP | COM NEW | 69917320 | 1145 | 64200 SH | | SHARED | 01 | | 28600 | 35600 |
| D PARAMETRIC TECHNOLOGY CORP | COM NEW | 69917320 | 1900 | 106463 SH | | SHARED | 02 | | 106463 | |
| D PARAMETRIC TECHNOLOGY CORP | COM NEW | 69917320 | 1330 | 74555 SH | | SHARED | 10 | | 74555 | |
| D PARAMOUNT GOLD & SILVER CORP | COM | 69924P10 | 2 | 1107 SH | | SHARED | | | 1107 | |
| D PAREXEL INTL CORP | COM | 69946210 | 1064 | 22049 SH | | SHARED | | | 22049 | |
| D PAREXEL INTL CORP | COM | 69946210 | 70 | 1450 SH | | SHARED | 01 | | 1450 | |
| D PAREXEL INTL CORP | COM | 69946210 | 618 | 12800 SH | | SHARED | 10 | | 12800 | |
| D PARK ELECTROCHEMICAL CORP | COM | 70041620 | 121 | 4314 SH | | SHARED | | | 4314 | |
| D PARK ELECTROCHEMICAL CORP | COM | 70041620 | 15949 | 564782 SH | | SHARED | 10 | | 564782 | |
| D PARK NATL CORP | COM | 70065810 | 6 | 100 SH | | SHARED | | | 100 | |
| D PARK NATL CORP | COM | 70065810 | 761 | 11800 SH | | SHARED | 10 | | 11800 | |
| D PARK OHIO HLDGS CORP | COM | 70066610 | 0 | 13 SH | | SHARED | | | 13 | |
| D PARK OHIO HLDGS CORP | COM | 70066610 | 30 | 1200 SH | | SHARED | 10 | | 1200 | |
| D PARKER DRILLING CO | COM | 70088510 | 26 | 1500 SH | | SHARED | | | 1500 | |
| D PARKER DRILLING CO | COM | 70108110 | 217 | 28755 SH | | SHARED | | | 28755 | |
| D PARKER DRILLING CO | COM | 70108110 | 129 | 17125 SH | | SHARED | 01 | | 17125 | |
| D PARKER DRILLING CO | COM | 70108110 | 198 | 26351 SH | | SHARED | 10 | | 26351 | |
| D PARKER HANNIFIN CORP | COM | 70109410 | 123772 | 1643510 SH | | SHARED | | | 1643510 | |
| D PARKER HANNIFIN CORP | COM | 70109410 | 2184 | 29002 SH | | SHARED | 01 | | 26330 | 2672 |
| D PARKER HANNIFIN CORP | COM | 70109410 | 55 | 735 SH | | SHR/OTHR | 01 | | | 735 |
| D PARKER HANNIFIN CORP | COM | 70109410 | 3050 | 40504 SH | | SHARED | 02 | | 40504 | |
| D PARKER HANNIFIN CORP | COM | 70109410 | 3388 | 45000 SH | | SHARED | 04 | | 45000 | |
| D PARKER HANNIFIN CORP | COM | 70109410 | 7 | 105 SH | | SHARED | 05 | | 105 | |
| D PARKER HANNIFIN CORP | COM | 70109410 | 140 | 1860 SH | | SHARED | 06 | | | 1860 |
| D PARKER HANNIFIN CORP | COM | 70109410 | 88059 | 1169295 SH | | SHARED | 10 | | 1106745 | 62550 |
| D PARKER HANNIFIN CORP | COM | 70109410 | 422 | 5607 SH | | SHARED | 14 | | 5607 | |
| D PARKER HANNIFIN CORP | COM | 70109410 | 678 | 9003 SH | | SHARED | 20 | | 2340 | 6663 |
| D PARKER HANNIFIN CORP | COM | 70109410 | 511 | 6787 SH | | SHR/OTHR | 20 | | 6787 | |
| D PARKER HANNIFIN CORP | COM | 70109410 | 22 | 300 SH | | SHARED | 21 | | 300 | |
| D PARKER HANNIFIN CORP | COM | 70109410 | 40 | 539 SH | | SHR/OTHR | 22 | | | 539 |
| D PARKER HANNIFIN CORP | COM | 70109410 | 141 | 1875 SH | | SHARED | 23 | | 1875 | |
| D PARKER HANNIFIN CORP | COM | 70109410 | 180 | 2400 SH | | SHR/OTHR | 23 | | | 2400 |
| D PARKER HANNIFIN CORP | COM | 70109410 | 79 | 1050 SH | | SHARED | 24 | | 1050 | |
| D PARKERVISION INC | COM | 70135410 | 8 | 566 SH | | SHARED | | | 566 | |
| D PARKERVISION INC | COM | 70135410 | 44 | 2800 SH | | SHARED | 02 | | 2800 | |
| D PARKVALE FINL CORP | COM | 70149210 | 3 | 123 SH | | SHARED | | | 123 | |
| D PARKWAY PPTYS INC | COM | 70159Q10 | 339 | 9175 SH | | SHARED | | | 9175 | |
| D PARKWAY PPTYS INC | COM | 70159Q10 | 110 | 3000 SH | | SHARED | 02 | | 3000 | |
| D PARKWAY PPTYS INC | COM | 70159Q10 | 4058 | 109750 SH | | SHARED | 10 | | 109750 | |
| D PARKWAY PPTYS INC | COM | 70159Q10 | 47458 | 1283350 SH | | SHARED | 11 | | 486950 | 796400 |
| D PARLUX FRAGRANCES INC | COM | 70164510 | 2 | 666 SH | | SHARED | | | 666 | |
| D PARLUX FRAGRANCES INC | COM | 70164510 | 13 | 3381 SH | | SHARED | 21 | | 3381 | |
| D PARTNER COMMUNICATIONS CO LT | ADR | 70181910 | 22 | 1025 SH | | SHARED | | | 1025 | |
| D PARTICLE DRILLING TECHNOLOGI | COM | 70212Q10 | 1 | 739 SH | | SHARED | | | 739 | |
| D PATHFINDER BANCORP INC | COM | 70320A10 | 64 | 6278 SH | | SHARED | | | 6278 | |
| D PATNI COMPUTER SYS | SPONS ADR | 70324820 | 22 | 1360 SH | | SHARED | | | 1360 | |
| D PATRICK INDS INC | COM | 70334310 | 1 | 154 SH | | SHARED | | | 154 | |
| D PATRIOT CAPITAL FUNDING INC | COM | 70335Y10 | 97 | 9700 SH | | SHARED | 10 | | 9700 | |
| D PATRIOT NATL BANCORP INC | COM | 70336F10 | 1 | 80 SH | | SHARED | | | 80 | |
| D PATRIOT COAL CORP | COM | 70336T10 | 1635 | 39174 SH | | SHARED | | | 39174 | |
| D PATRIOT COAL CORP | COM | 70336T10 | 14 | 340 SH | | SHARED | 01 | | 130 | 210 |
| D PATRIOT COAL CORP | COM | 70336T10 | 919 | 22022 SH | | SHARED | 10 | | 16182 | 5840 |
| D PATRIOT COAL CORP | COM | 70336T10 | 16 | 390 SH | | SHARED | 20 | | 190 | 200 |
| D PATRIOT COAL CORP | COM | 70336T10 | 78 | 1878 SH | | SHARED | 24 | | 1878 | |
| D PATRIOT TRANSN HLDG INC | COM | 70337B10 | 0 | 1 SH | | SHARED | | | 1 | |
| D PATTERSON COMPANIES INC | COM | 70339S10 | 4072 | 119960 SH | | SHARED | | | 119960 | |
| D PATTERSON COMPANIES INC | COM | 70339S10 | 513 | 15115 SH | | SHARED | 01 | | 15075 | 40 |
| D PATTERSON COMPANIES INC | COM | 70339S10 | 70 | 2080 SH | | SHARED | 02 | | 2080 | |
| D PATTERSON COMPANIES INC | COM | 70339S10 | 33 | 990 SH | | SHARED | 06 | | | 990 |
| D PATTERSON COMPANIES INC | COM | 70339S10 | 2722 | 80200 SH | | SHARED | 10 | | 80200 | |
| D PATTERSON COMPANIES INC | COM | 70339S10 | 67 | 2000 SH | | SHARED | 23 | | | 2000 |
| D PATTERSON UTI ENERGY INC | COM | 70348110 | 2697 | 138175 SH | | SHARED | | | 138175 | |
| D PATTERSON UTI ENERGY INC | COM | 70348110 | 999 | 51200 SH | | SHARED | 01 | | 2400 | 48800 |
| D PATTERSON UTI ENERGY INC | COM | 70348110 | 2051 | 105093 SH | | SHARED | 02 | | 105093 | |
| D PATTERSON UTI ENERGY INC | COM | 70348110 | 3 | 160 SH | | SHARED | 05 | | 160 | |
| D PATTERSON UTI ENERGY INC | COM | 70348110 | 29 | 1500 SH | | SHARED | 06 | | | 1500 |
| D PATTERSON UTI ENERGY INC | COM | 70348110 | 1006 | 51550 SH | | SHARED | 10 | | 51550 | |
| D PATTERSON UTI ENERGY INC | COM | 70348110 | 292 | 14971 SH | | SHARED | 14 | | | 14971 |
| D PATTERSON UTI ENERGY INC | COM | 70348110 | 161 | 8285 SH | | SHARED | 21 | | 8285 | |
| D PAULSON CAP CORP | COM | 70379710 | 0 | 48 SH | | SHARED | | | 48 | |
| D PAYCHEX INC | COM | 70432610 | 12407 | 342562 SH | | SHARED | | | 342562 | |
| D PAYCHEX INC | COM | 70432610 | 1391 | 38425 SH | | SHARED | 01 | | 37425 | 1000 |
| D PAYCHEX INC | COM | 70432610 | 357 | 9870 SH | | SHR/OTHR | 01 | | | 9870 |
| D PAYCHEX INC | COM | 70432610 | 8664 | 239209 SH | | SHARED | 02 | | 239209 | |
| D PAYCHEX INC | COM | 70432610 | 7 | 210 SH | | SHARED | 05 | | 210 | |
| D PAYCHEX INC | COM | 70432610 | 114 | 3170 SH | | SHARED | 06 | | | 3170 |

| | Name | Type | CUSIP | Value | Shares | | Code | Col1 | Col2 |
|---|---|---|---|---|---|---|---|---|---|
| D | PAYCHEX INC | COM | 70432610 | 48708 | 1344798 SH | SHARED | 10 | 1299498 | 45300 |
| D | PAYCHEX INC | COM | 70432610 | 7370 | 203500 SH | SHARED | 20 | 203500 | |
| D | PAYCHEX INC | COM | 70432610 | 509 | 14073 SH | SHARED | 21 | 13123 | 950 |
| D | PAYCHEX INC | COM | 70432610 | 49 | 1373 SH | SHARED | 24 | 1373 | |
| D | PEABODY ENERGY CORP | COM | 70454910 | 20904 | 339137 SH | SHARED | | 339137 | |
| D | PEABODY ENERGY CORP | COM | 70454910 | 2385 | 38705 SH | SHARED | 01 | 28600 | 10105 |
| D | PEABODY ENERGY CORP | COM | 70454910 | 1106 | 17954 SH | SHARED | 02 | 17954 | |
| D | PEABODY ENERGY CORP | COM | 70454910 | 5917 | 96000 SH | SHARED | 04 | 96000 | |
| D | PEABODY ENERGY CORP | COM | 70454910 | 130 | 2120 SH | SHARED | 06 | | 2120 |
| D | PEABODY ENERGY CORP | COM | 70454910 | 20201 | 327736 SH | SHARED | 10 | 269336 | 58400 |
| D | PEABODY ENERGY CORP | COM | 70454910 | 1695 | 27500 SH | SHARED | 14 | 27500 | |
| D | PEABODY ENERGY CORP | COM | 70454910 | 240 | 3900 SH | SHARED | 20 | 1900 | 2000 |
| D | PEABODY ENERGY CORP | COM | 70454910 | 95 | 1550 SH | SHARED | 21 | | 1550 |
| D | PEABODY ENERGY CORP | COM | 70454910 | 1169 | 18980 SH | SHARED | 24 | 18980 | |
| D | PEAPACK-GLADSTONE FINL CORP | COM | 70469910 | 4 | 193 SH | SHARED | | 193 | |
| D | PEARSON PLC | SPONSORED ADR | 70501510 | 1109 | 76551 SH | SHARED | | 76551 | |
| D | PEARSON PLC | SPONSORED ADR | 70501510 | 1867 | 128900 SH | SHARED | 14 | | 128900 |
| D | PECO II INC | COM | 70522110 | 0 | 444 SH | SHARED | | 444 | |
| D | PEDIATRIX MED GROUP | COM | 70532410 | 6719 | 98597 SH | SHARED | | 98597 | |
| D | PEDIATRIX MED GROUP | COM | 70532410 | 195 | 2870 SH | SHARED | 01 | 2695 | 175 |
| D | PEDIATRIX MED GROUP | COM | 70532410 | 281 | 4125 SH | SHR/OTHR | 01 | | 4125 |
| D | PEDIATRIX MED GROUP | COM | 70532410 | 34 | 500 SH | SHARED | 02 | 500 | |
| D | PEDIATRIX MED GROUP | COM | 70532410 | 38180 | 560240 SH | SHARED | 10 | 560240 | |
| D | PEDIATRIX MED GROUP | COM | 70532410 | 55 | 815 SH | SHARED | 21 | | 815 |
| D | PEERLESS MFG CO | COM | 70551410 | 6 | 167 SH | SHARED | | 167 | |
| D | PEERLESS SYS CORP | COM | 70553610 | 1 | 409 SH | SHARED | | 409 | |
| D | PEETS COFFEE & TEA INC | COM | 70556010 | 1026 | 35321 SH | SHARED | | 35321 | |
| D | PEGASYSTEMS INC | COM | 70557310 | 24 | 2090 SH | SHARED | | 2090 | |
| D | PEGASYSTEMS INC | COM | 70557310 | 27 | 2275 SH | SHARED | 02 | 2275 | |
| D | PEMCO AVIATION INC | COM | 70644410 | 0 | 55 SH | SHARED | | 55 | |
| D | PENGROWTH ENERGY TR | TR UNIT NEW | 70690250 | 5393 | 303500 SH | SHARED | | 303500 | |
| D | PENGROWTH ENERGY TR | TR UNIT NEW | 70690250 | 3 | 200 SH | SHARED | 02 | 200 | |
| D | PENGROWTH ENERGY TR | TR UNIT NEW | 70690250 | 23696 | 1333500 SH | SHARED | 10 | 1333500 | |
| D | PENGROWTH ENERGY TR | TR UNIT NEW | 70690250 | 109 | 6150 SH | SHR/OTHR | 23 | | 6150 |
| D | PENFORD CORP | COM | 70705110 | 12 | 505 SH | SHARED | | 505 | |
| D | PENFORD CORP | COM | 70705110 | 30 | 1200 SH | SHARED | 02 | 1200 | |
| D | PENN NATL GAMING INC | COM | 70756910 | 139 | 2340 SH | SHARED | | 2340 | |
| D | PENN NATL GAMING INC | COM | 70756910 | 340 | 5720 SH | SHARED | 01 | 5720 | |
| D | PENN NATL GAMING INC | COM | 70756910 | 3016 | 50661 SH | SHARED | 02 | 50661 | |
| D | PENN NATL GAMING INC | COM | 70756910 | 529 | 8900 SH | SHARED | 10 | 8900 | |
| D | PENN TREATY AMERN CORP | COM NEW | 70787440 | 286 | 44084 SH | SHARED | | 44084 | |
| D | PENN TREATY AMERN CORP | COM NEW | 70787440 | 10 | 1675 SH | SHARED | 02 | 1675 | |
| D | PENN VA GP HLDGS L P | COM UNIT R LIM | 70788P10 | 19 | 697 SH | SHARED | | 697 | |
| D | PENN VA CORP | COM | 70788210 | 135 | 3105 SH | SHARED | | 3105 | |
| D | PENN VA CORP | COM | 70788210 | 178 | 4100 SH | SHARED | 01 | 4100 | |
| D | PENN VA CORP | COM | 70788210 | 10 | 250 SH | SHARED | 02 | 250 | |
| D | PENN VA CORP | COM | 70788210 | 1538 | 35253 SH | SHARED | 10 | 35253 | |
| D | PENN VA RESOURCES PARTNERS L | COM | 70788410 | 89 | 3648 SH | SHARED | | 3648 | |
| D | PENN WEST ENERGY TR | TR UNIT | 70788510 | 4198 | 161465 SH | SHARED | | 161465 | |
| D | PENN WEST ENERGY TR | TR UNIT | 70788510 | 29 | 1140 SH | SHARED | 01 | 1140 | |
| D | PENN WEST ENERGY TR | TR UNIT | 70788510 | 13972 | 537420 SH | SHARED | 10 | 537420 | |
| D | PENN WEST ENERGY TR | TR UNIT | 70788510 | 7 | 300 SH | SHARED | 14 | | 300 |
| D | PENN WEST ENERGY TR | TR UNIT | 70788510 | 26 | 1000 SH | SHARED | 20 | | 1000 |
| D | PENNANTPARK INVT CORP | COM | 70806210 | 3405 | 339823 SH | SHARED | | 339823 | |
| D | PENNANTPARK INVT CORP | COM | 70806210 | 39 | 3899 SH | SHR/OTHR | 23 | | 3899 |
| D | PENNEY J C INC | COM | 70816010 | 54996 | 1250197 SH | SHARED | | 1250197 | |
| D | PENNEY J C INC | COM | 70816010 | 1652 | 37556 SH | SHARED | 01 | 33356 | 4200 |
| D | PENNEY J C INC | COM | 70816010 | 16628 | 377998 SH | SHARED | 02 | 377998 | |
| D | PENNEY J C INC | COM | 70816010 | 4 | 100 SH | SHARED | 05 | 100 | |
| D | PENNEY J C INC | COM | 70816010 | 113 | 2590 SH | SHARED | 06 | | 2590 |
| D | PENNEY J C INC | COM | 70816010 | 4939 | 112297 SH | SHARED | 10 | 112297 | |
| D | PENNEY J C INC | COM | 70816010 | 322 | 7332 SH | SHARED | 14 | | 7332 |
| D | PENNEY J C INC | COM | 70816010 | 105 | 2400 SH | SHR/OTHR | 23 | | 2400 |
| D | PENNICHUCK CORP | COM | 70825420 | 2 | 110 SH | SHARED | | 110 | |
| D | PENNSYLVANIA COMM BANCORP IN | COM NEW | 70867710 | 4 | 145 SH | SHARED | | 145 | |
| D | PENNSYLVANIA RL ESTATE INVT | SH BEN INT | 70910210 | 958 | 32292 SH | SHARED | | 32292 | |
| D | PENNSYLVANIA RL ESTATE INVT | SH BEN INT | 70910210 | 83 | 2800 SH | SHARED | 01 | 2800 | |
| D | PENNSYLVANIA RL ESTATE INVT | SH BEN INT | 70910210 | 8156 | 274800 SH | SHARED | 10 | 274800 | |
| D | PENNSYLVANIA RL ESTATE INVT | SH BEN INT | 70910210 | 58873 | 1983605 SH | SHARED | 11 | | 1983605 |
| D | PENSKE AUTOMOTIVE GRP INC | COM | 70959W41 | 1702 | 97509 SH | SHARED | | 97509 | |
| D | PENSKE AUTOMOTIVE GRP INC | COM | 70959W41 | 491 | 28150 SH | SHARED | 01 | 28150 | |
| D | PENSKE AUTOMOTIVE GRP INC | COM | 70959W41 | 4697 | 269018 SH | SHARED | 10 | 269018 | |
| D | PENSON WORLDWIDE INC | COM | 70960010 | 18 | 1271 SH | SHARED | | 1271 | |
| D | PENTAIR INC | COM | 70963110 | 39244 | 1127378 SH | SHARED | | 1127378 | |
| D | PENTAIR INC | COM | 70963110 | 1051 | 30200 SH | SHARED | 01 | 30200 | |
| D | PENTAIR INC | COM | 70963110 | 163 | 4711 SH | SHARED | 02 | 4711 | |
| D | PENTAIR INC | COM | 70963110 | 16 | 470 SH | SHARED | 06 | | 470 |
| D | PENTAIR INC | COM | 70963110 | 546 | 15700 SH | SHARED | 10 | 15700 | |
| D | PENWEST PHARMACEUTICALS CO | COM | 70975410 | 10 | 1838 SH | SHARED | | 1838 | |
| D | PEOPLES BANCORP AUBURN IND | COM | 70978810 | 1 | 84 SH | SHARED | | 84 | |
| D | PEOPLES BANCORP INC | COM | 70978910 | 13 | 527 SH | SHARED | | 527 | |
| D | PEOPLES BANCORP INC | COM | 70978910 | 176 | 7100 SH | SHARED | 10 | 7100 | |
| D | PEOPLES BANCORP N C INC | COM | 71057710 | 1 | 124 SH | SHARED | | 124 | |
| D | PEOPLES CMNTY BANCORP INC | COM | 71086E10 | 1 | 118 SH | SHARED | | 118 | |
| D | PEOPLES EDL HLDGS INC | COM | 71026E10 | 0 | 35 SH | SHARED | | 35 | |
| D | PEOPLES FINL CORP MISS | COM | 71103B10 | 2 | 104 SH | SHARED | | 104 | |
| D | PEOPLES UNITED FINANCIAL INC | COM | 71270410 | 8735 | 490734 SH | SHARED | | 490734 | |
| D | PEOPLES UNITED FINANCIAL INC | COM | 71270410 | 7 | 422 SH | SHARED | 01 | 422 | |
| D | PEOPLES UNITED FINANCIAL INC | COM | 71270410 | 53 | 3000 SH | SHARED | 06 | | 3000 |
| D | PEOPLES UNITED FINANCIAL INC | COM | 71270410 | 161 | 9100 SH | SHARED | 10 | 9100 | |
| D | PEOPLES UNITED FINANCIAL INC | COM | 71270410 | 202 | 11365 SH | SHARED | 14 | | 11365 |
| D | PEOPLESUPPORT INC | COM | 71271430 | 367 | 26880 SH | SHARED | | 26880 | |
| D | PEOPLESUPPORT INC | COM | 71271430 | 268 | 19600 SH | SHARED | 10 | 19600 | |
| D | PEP BOYS MANNY MOE & JACK | COM | 71327810 | 232 | 20294 SH | SHARED | | 20294 | |
| D | PEP BOYS MANNY MOE & JACK | COM | 71327810 | 166 | 14500 SH | SHARED | 10 | 14500 | |
| D | PEPCO HOLDINGS INC | COM | 71329110 | 13499 | 460250 SH | SHARED | | 460250 | |
| D | PEPCO HOLDINGS INC | COM | 71329110 | 88 | 3008 SH | SHARED | 01 | 3008 | |
| D | PEPCO HOLDINGS INC | COM | 71329110 | 151 | 5179 SH | SHARED | 02 | 5179 | |
| D | PEPCO HOLDINGS INC | COM | 71329110 | 74 | 2530 SH | SHARED | 06 | | 2530 |
| D | PEPCO HOLDINGS INC | COM | 71329110 | 2493 | 85000 SH | SHARED | 10 | 85000 | |
| D | PEPCO HOLDINGS INC | COM | 71329110 | 29 | 1000 SH | SHARED | 14 | | 1000 |
| D | PEPCO HOLDINGS INC | COM | 71329110 | 32 | 1100 SH | SHARED | 23 | 800 | 300 |
| D | PEPSI BOTTLING GROUP INC | COM | 71340910 | 6805 | 172454 SH | SHARED | | 156054 | 16400 |
| D | PEPSI BOTTLING GROUP INC | COM | 71340910 | 1799 | 45600 SH | SHARED | 01 | 42400 | 3200 |
| D | PEPSI BOTTLING GROUP INC | COM | 71340910 | 126 | 3200 SH | SHR/OTHR | 01 | | 3200 |
| D | PEPSI BOTTLING GROUP INC | COM | 71340910 | 5342 | 135388 SH | SHARED | 02 | 135388 | |
| D | PEPSI BOTTLING GROUP INC | COM | 71340910 | 40626 | 1029568 SH | SHARED | 10 | 958468 | 71100 |
| D | PEPSI BOTTLING GROUP INC | COM | 71340910 | 265 | 6726 SH | SHARED | 14 | | 6726 |
| D | PEPSIAMERICAS INC | COM | 71343P20 | 803 | 24108 SH | SHARED | | 24108 | |
| D | PEPSIAMERICAS INC | COM | 71343P20 | 813 | 24400 SH | SHARED | 01 | | 24400 |
| D | PEPSIAMERICAS INC | COM | 71343P20 | 235 | 7061 SH | SHARED | 02 | 7061 | |
| D | PEPSIAMERICAS INC | COM | 71343P20 | 3998 | 120000 SH | SHARED | 05 | 120000 | |
| D | PEPSIAMERICAS INC | COM | 71343P20 | 377 | 11322 SH | SHARED | 10 | 11322 | |
| D | PEPSIAMERICAS INC | COM | 71343P20 | 136 | 4082 SH | SHARED | 14 | | 4082 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | PEPSICO INC | COM | 71344810 | 442 | 5829 SH | SHARED | | 5829 | |
| D | PEPSICO INC | COM | 71344810 | 303 | 4000 SH | SHR/OTHR | | | 4000 |
| D | PEPSICO INC | COM | 71344810 | 209962 | 2766309 SH | SHARED | | 2701944 | 64365 |
| D | PEPSICO INC | COM | 71344810 | 29539 | 389196 SH | SHARED | 01 | 238480 | 150716 |
| D | PEPSICO INC | COM | 71344810 | 5170 | 68128 SH | SHR/OTHR | 01 | | 68128 |
| D | PEPSICO INC | COM | 71344810 | 78244 | 1030892 SH | SHARED | 02 | 1030892 | |
| D | PEPSICO INC | COM | 71344810 | 759 | 10000 SH | SHARED | 04 | 10000 | |
| D | PEPSICO INC | COM | 71344810 | 50 | 660 SH | SHARED | 05 | 660 | |
| D | PEPSICO INC | COM | 71344810 | 1236 | 16290 SH | SHARED | 06 | | 16290 |
| D | PEPSICO INC | COM | 71344810 | 272506 | 3590341 SH | SHARED | 10 | 3480741 | 109600 |
| D | PEPSICO INC | COM | 71344810 | 64 | 852 SH | SHR/OTHR | 10 | | 852 |
| D | PEPSICO INC | COM | 71344810 | 856 | 11287 SH | SHARED | 14 | | 11287 |
| D | PEPSICO INC | COM | 71344810 | 4365 | 57520 SH | SHARED | 15 | | 57520 |
| D | PEPSICO INC | COM | 71344810 | 299 | 3950 SH | SHARED | 19 | | 3950 |
| D | PEPSICO INC | COM | 71344810 | 6903 | 90951 SH | SHARED | 20 | 19935 | 71016 |
| D | PEPSICO INC | COM | 71344810 | 8903 | 117306 SH | SHR/OTHR | 20 | | 117306 |
| D | PEPSICO INC | COM | 71344810 | 913 | 12040 SH | SHARED | 21 | 3760 | 8280 |
| D | PEPSICO INC | COM | 71344810 | 554 | 7300 SH | SHR/OTHR | 21 | | 7300 |
| D | PEPSICO INC | COM | 71344810 | 1190 | 15687 SH | SHARED | 22 | 4267 | 11420 |
| D | PEPSICO INC | COM | 71344810 | 516 | 6807 SH | SHR/OTHR | 22 | | 6807 |
| D | PEPSICO INC | COM | 71344810 | 11763 | 154987 SH | SHARED | 23 | 138542 | 16445 |
| D | PEPSICO INC | COM | 71344810 | 20652 | 272108 SH | SHR/OTHR | 23 | | 272108 |
| D | PEPSICO INC | COM | 71344810 | 201 | 2651 SH | SHARED | 24 | | 2651 |
| D | PERCEPTRON INC | COM | 71361P10 | 2 | 205 SH | SHARED | | 205 | |
| D | PERDIGAO S A COMERCIO E INDS | SP ADR COM NEW | 71361V90 | 420 | 8541 SH | SHARED | | 8541 | |
| D | PEREGRINE PHARMACEUTICALS IN | COM | 71366110 | 2 | 5896 SH | SHARED | | 5896 | |
| D | PERFECT WORLD CO LTD | SPON ADR REP B | 71372010 | 141 | 5088 SH | SHARED | | 5088 | |
| D | PERFICIENT INC | COM | 71375010 | 133 | 8457 SH | SHARED | | 8457 | |
| D | PERFICIENT INC | COM | 71375010 | 11 | 748 SH | SHARED | 02 | 748 | |
| D | PERFICIENT INC | COM | 71375010 | 4580 | 291000 SH | SHARED | 10 | 291000 | |
| D | PERFORMANCE FOOD GROUP CO | COM | 71375510 | 712 | 26500 SH | SHARED | 01 | 24200 | 2300 |
| D | PERFORMANCE FOOD GROUP CO | COM | 71375510 | 841 | 31300 SH | SHARED | 10 | 31300 | |
| D | PERFORMANCE FOOD GROUP CO | COM | 71375510 | 1741 | 64800 SH | SHARED | 14 | | 64800 |
| D | PERFORMANCE TECHNOLOGIES INC | COM | 71376610 | 29 | 5323 SH | SHARED | | 5323 | |
| D | PERICOM SEMICONDUCTOR CORP | COM | 71383110 | 144 | 7732 SH | SHARED | | 7732 | |
| D | PERICOM SEMICONDUCTOR CORP | COM | 71383110 | 26 | 1400 SH | SHARED | 01 | 1400 | |
| D | PERICOM SEMICONDUCTOR CORP | COM | 71383110 | 1524 | 81500 SH | SHARED | 10 | 81500 | |
| D | PERINI CORP | COM | 71383910 | 2638 | 63702 SH | SHARED | | 63702 | |
| D | PERINI CORP | COM | 71383910 | 1350 | 32600 SH | SHARED | 01 | 32300 | 300 |
| D | PERINI CORP | COM | 71383910 | 1139 | 27500 SH | SHR/OTHR | 01 | | 27500 |
| D | PERINI CORP | COM | 71383910 | 317 | 7675 SH | SHARED | 02 | 7675 | |
| D | PERINI CORP | COM | 71383910 | 25806 | 623050 SH | SHARED | 10 | 623050 | |
| D | PERKINELMER INC | COM | 71404610 | 3155 | 121290 SH | SHARED | | 121290 | |
| D | PERKINELMER INC | COM | 71404610 | 296 | 11400 SH | SHARED | 01 | 11400 | |
| D | PERKINELMER INC | COM | 71404610 | 303 | 11663 SH | SHARED | 02 | 11663 | |
| D | PERKINELMER INC | COM | 71404610 | 16141 | 620349 SH | SHARED | 10 | 620349 | |
| D | PERMA-FIX ENVIRONMENTAL SVCS | COM | 71415710 | 79 | 32256 SH | SHARED | | 32256 | |
| D | PERMIAN BASIN RTY TR | UNIT BEN INT | 71423610 | 87 | 5488 SH | SHARED | | 5488 | |
| D | PERMIAN BASIN RTY TR | UNIT BEN INT | 71423610 | 63 | 4000 SH | SHR/OTHR | 20 | | 4000 |
| D | PEROT SYS CORP | CL A | 71426510 | 100 | 7475 SH | SHARED | | 7475 | |
| D | PEROT SYS CORP | CL A | 71426510 | 160 | 11900 SH | SHARED | 01 | 11900 | |
| D | PEROT SYS CORP | CL A | 71426510 | 67 | 4975 SH | SHARED | 02 | 4975 | |
| D | PEROT SYS CORP | CL A | 71426510 | 394 | 29200 SH | SHARED | 10 | 29200 | |
| D | PERRIGO CO | COM | 71429010 | 511 | 14619 SH | SHARED | | 14619 | |
| D | PERRIGO CO | COM | 71429010 | 1148 | 32800 SH | SHARED | 01 | 6500 | 26300 |
| D | PERRIGO CO | COM | 71429010 | 169 | 4850 SH | SHARED | 02 | 4850 | |
| D | PERRIGO CO | COM | 71429010 | 18492 | 528200 SH | SHARED | 10 | 528200 | |
| D | P T TELEKOMUNIKASI INDONESIA | SPONSORED ADR | 71568410 | 19746 | 470047 SH | SHARED | | 282247 | 187800 |
| D | P T TELEKOMUNIKASI INDONESIA | SPONSORED ADR | 71568410 | 705 | 16800 SH | SHARED | 01 | 16800 | |
| D | P T TELEKOMUNIKASI INDONESIA | SPONSORED ADR | 71568410 | 3461 | 82400 SH | SHARED | 04 | 82400 | |
| D | P T TELEKOMUNIKASI INDONESIA | SPONSORED ADR | 71568410 | 16258 | 387020 SH | SHARED | 06 | | 387020 |
| D | P T TELEKOMUNIKASI INDONESIA | SPONSORED ADR | 71568410 | 66869 | 1591750 SH | SHARED | 10 | 1481850 | 109900 |
| D | P T TELEKOMUNIKASI INDONESIA | SPONSORED ADR | 71568410 | 189 | 4500 SH | SHARED | 14 | 4500 | |
| D | P T TELEKOMUNIKASI INDONESIA | SPONSORED ADR | 71568410 | 210 | 5000 SH | SHARED | 15 | | 5000 |
| D | P T TELEKOMUNIKASI INDONESIA | SPONSORED ADR | 71568410 | 39 | 930 SH | SHARED | 21 | 930 | |
| D | P T TELEKOMUNIKASI INDONESIA | SPONSORED ADR | 71568410 | 1493 | 35550 SH | SHARED | 24 | 35550 | |
| D | PERVASIVE SOFTWARE INC | COM | 71571010 | 2 | 500 SH | SHARED | | 500 | |
| D | PERVASIVE SOFTWARE INC | COM | 71571010 | 6 | 1650 SH | SHARED | 02 | 1650 | |
| D | PETMED EXPRESS INC | COM | 71638210 | 11 | 924 SH | SHARED | | 924 | |
| D | PETMED EXPRESS INC | COM | 71638210 | 1 | 150 SH | SHARED | 02 | 150 | |
| D | PETRO-CDA | COM | 71644E10 | 7020 | 130934 SH | SHARED | | 127934 | 3000 |
| D | PETRO-CDA | COM | 71644E10 | 206 | 3858 SH | SHARED | 01 | 1858 | 2000 |
| D | PETRO-CDA | COM | 71644E10 | 53914 | 1005500 SH | SHARED | 04 | 1005500 | |
| D | PETRO-CDA | COM | 71644E10 | 16 | 300 SH | SHARED | 05 | 300 | |
| D | PETRO-CDA | COM | 71644E10 | 144 | 2700 SH | SHARED | 06 | | 2700 |
| D | PETRO-CDA | COM | 71644E10 | 745 | 13900 SH | SHARED | 10 | 13900 | |
| D | PETRO-CDA | COM | 71644E10 | 738 | 13769 SH | SHARED | 14 | 11800 | 1969 |
| D | PETRO-CDA | COM | 71644E10 | 1 | 31 SH | SHARED | 21 | | 31 |
| D | PETRO-CDA | COM | 71644E10 | 107 | 2000 SH | SHARED | 23 | 2000 | |
| D | PETRO-CDA | COM | 71644E10 | 321 | 6000 SH | SHR/OTHR | 23 | | 6000 |
| D | PETROCHINA CO LTD | SPONSORED ADR | 71646E10 | 57 | 325 SH | SHARED | | 325 | |
| D | PETROCHINA CO LTD | SPONSORED ADR | 71646E10 | 8183 | 46638 SH | SHARED | | 46638 | |
| D | PETROCHINA CO LTD | SPONSORED ADR | 71646E10 | 26 | 150 SH | SHR/OTHR | 01 | | 150 |
| D | PETROCHINA CO LTD | SPONSORED ADR | 71646E10 | 70 | 400 SH | SHARED | 02 | 400 | |
| D | PETROCHINA CO LTD | SPONSORED ADR | 71646E10 | 350 | 2000 SH | SHARED | 23 | 2000 | |
| D | PETROCHINA CO LTD | SPONSORED ADR | 71646E10 | 877 | 5000 SH | SHR/OTHR | 23 | | 5000 |
| D | PETRO RES CORP | COM | 71646H10 | 1 | 587 SH | SHARED | | 587 | |
| D | PETROBRAS ENERGIA PARTCPTNS | SP ADR B SHS | 71646N10 | 678 | 48618 SH | SHARED | | 48618 | |
| D | PETROHAWK ENERGY CORP | COM | 71649510 | 20704 | 1196127 SH | SHARED | | 1196127 | |
| D | PETROHAWK ENERGY CORP | COM | 71649510 | 1184 | 68406 SH | SHARED | 01 | 68406 | |
| D | PETROHAWK ENERGY CORP | COM | 71649510 | 15 | 867 SH | SHARED | 02 | 867 | |
| D | PETROHAWK ENERGY CORP | COM | 71649510 | 24640 | 1423500 SH | SHARED | 10 | 1423500 | |
| D | PETROHAWK ENERGY CORP | COM | 71649510 | 44 | 2544 SH | SHARED | 21 | | 2544 |
| D | PETROLEO BRASILEIRO SA PETRO | SP ADR NON VTG | 71654V10 | 400986 | 4167397 SH | SHARED | | 4159929 | 7468 |
| D | PETROLEO BRASILEIRO SA PETRO | SP ADR NON VTG | 71654V10 | 19244 | 200000 SH | SHARED | 04 | 200000 | |
| D | PETROLEO BRASILEIRO SA PETRO | SP ADR NON VTG | 71654V10 | 202158 | 2101000 SH | SHARED | 10 | 2101000 | |
| D | PETROLEO BRASILEIRO SA PETRO | SP ADR NON VTG | 71654V10 | 2848 | 29600 SH | SHARED | 14 | | 29600 |
| D | PETROLEO BRASILEIRO SA PETRO | SPONSORED ADR | 71654V40 | 1630 | 14152 SH | SHARED | | 8152 | 6000 |
| D | PETROLEO BRASILEIRO SA PETRO | SPONSORED ADR | 71654V40 | 83159 | 721618 SH | SHARED | | 720518 | 1100 |
| D | PETROLEO BRASILEIRO SA PETRO | SPONSORED ADR | 71654V40 | 39024 | 338637 SH | SHARED | 01 | 338487 | 150 |
| D | PETROLEO BRASILEIRO SA PETRO | SPONSORED ADR | 71654V40 | 23 | 200 SH | SHR/OTHR | 01 | | 200 |
| D | PETROLEO BRASILEIRO SA PETRO | SPONSORED ADR | 71654V40 | 26931 | 233700 SH | SHARED | 02 | 233700 | |
| D | PETROLEO BRASILEIRO SA PETRO | SPONSORED ADR | 71654V40 | 819 | 7110 SH | SHARED | 04 | | 7110 |
| D | PETROLEO BRASILEIRO SA PETRO | SPONSORED ADR | 71654V40 | 133586 | 1159200 SH | SHARED | 04 | 1159200 | |
| D | PETROLEO BRASILEIRO SA PETRO | SPONSORED ADR | 71654V40 | 11178 | 97000 SH | SHARED | 06 | | 97000 |
| D | PETROLEO BRASILEIRO SA PETRO | SPONSORED ADR | 71654V40 | 177354 | 1539000 SH | SHARED | 10 | 1539000 | |
| D | PETROLEO BRASILEIRO SA PETRO | SPONSORED ADR | 71654V40 | 3180 | 27600 SH | SHARED | 14 | 6000 | 21600 |
| D | PETROLEO BRASILEIRO SA PETRO | SPONSORED ADR | 71654V40 | 80 | 700 SH | SHARED | 21 | 560 | 140 |
| D | PETROLEO BRASILEIRO SA PETRO | SPONSORED ADR | 71654V40 | 7709 | 66900 SH | SHARED | 24 | 66900 | |
| D | PETROLEUM DEV CORP | COM | 71657810 | 16 | 275 SH | SHARED | | 275 | |
| D | PETROLEUM DEV CORP | COM | 71657810 | 10 | 175 SH | SHARED | 02 | 175 | |
| D | PETROLEUM DEV CORP | COM | 71657810 | 201 | 3400 SH | SHARED | 10 | 3400 | |
| D | PETROLEUM DEV CORP | COM | 71657810 | 12 | 209 SH | SHARED | 21 | | 209 |
| D | PETROQUEST ENERGY INC | COM | 71674810 | 227 | 15932 SH | SHARED | | 15932 | |

| | Issuer | Class | Number | Value | Shares | Type | Code | Amount | Amount2 |
|---|---|---|---|---|---|---|---|---|---|
| D | PETROQUEST ENERGY INC | COM | 71674810 | 34 | 2400 SH | SHARED | 01 | 2400 | |
| D | PETROQUEST ENERGY INC | COM | 71674810 | 20029 | 1400674 SH | SHARED | 10 | 1400674 | |
| D | PETROQUEST ENERGY INC | COM | 71674810 | 28 | 2000 SH | SHR/OTHR | 20 | | 2000 |
| D | PETROQUEST ENERGY INC | COM | 71674810 | 87 | 6153 SH | SHARED | 21 | 2470 | 3683 |
| D | PETSMART INC | COM | 71676810 | 1266 | 53809 SH | SHARED | | 53809 | |
| D | PETSMART INC | COM | 71676810 | 940 | 39950 SH | SHARED | 01 | 1150 | 38800 |
| D | PETSMART INC | COM | 71676810 | 411 | 17495 SH | SHARED | 02 | 17495 | |
| D | PETSMART INC | COM | 71676810 | 16 | 700 SH | SHARED | 06 | 700 | |
| D | PETSMART INC | COM | 71676810 | 1444 | 61372 SH | SHARED | 10 | 61372 | |
| D | PETSMART INC | COM | 71676810 | 70 | 3000 SH | SHARED | 21 | | 3000 |
| D | PHARMACHEM SCIENCE INC | COM | 71693310 | 0 | 560 SH | SHARED | | 560 | |
| D | PFIZER INC | COM | 71708110 | 1151 | 50665 SH | SHARED | | 30700 | 19965 |
| D | PFIZER INC | COM | 71708110 | 812557 | 35748240 SH | SHARED | | 4838592 | 909650 |
| D | PFIZER INC | COM | 71708110 | 33339 | 1466770 SH | SHARED | 01 | 1164611 | 302159 |
| D | PFIZER INC | COM | 71708110 | 3507 | 154330 SH | SHR/OTHR | 01 | | 154330 |
| D | PFIZER INC | COM | 71708110 | 67733 | 2979917 SH | SHARED | 02 | 2979917 | |
| D | PFIZER INC | COM | 71708110 | 209 | 9209 SH | SHARED | 04 | | 9209 |
| D | PFIZER INC | COM | 71708110 | 9002 | 396075 SH | SHARED | 04 | 396075 | |
| D | PFIZER INC | COM | 71708110 | 66 | 2930 SH | SHARED | 05 | 2930 | |
| D | PFIZER INC | COM | 71708110 | 1530 | 67334 SH | SHARED | 06 | | 67334 |
| D | PFIZER INC | COM | 71708110 | 544233 | 23943392 SH | SHARED | 10 | 3045824 | 897571 |
| D | PFIZER INC | COM | 71708110 | 176 | 7765 SH | SHR/OTHR | 10 | | 7765 |
| D | PFIZER INC | COM | 71708110 | 5524 | 243040 SH | SHARED | 14 | 7800 | 235240 |
| D | PFIZER INC | COM | 71708110 | 4140 | 182168 SH | SHARED | 15 | | 182168 |
| D | PFIZER INC | COM | 71708110 | 321 | 14165 SH | SHARED | 19 | | 14165 |
| D | PFIZER INC | COM | 71708110 | 3170 | 139470 SH | SHARED | 20 | 57772 | 81698 |
| D | PFIZER INC | COM | 71708110 | 6281 | 276357 SH | SHR/OTHR | 20 | | 276357 |
| D | PFIZER INC | COM | 71708110 | 678 | 29832 SH | SHARED | 21 | 28362 | 1470 |
| D | PFIZER INC | COM | 71708110 | 5991 | 263600 SH | SHR/OTHR | 21 | | 263600 |
| D | PFIZER INC | COM | 71708110 | 658 | 28957 SH | SHARED | 22 | 12851 | 16106 |
| D | PFIZER INC | COM | 71708110 | 540 | 23760 SH | SHR/OTHR | 22 | | 23760 |
| D | PFIZER INC | COM | 71708110 | 4633 | 203836 SH | SHARED | 23 | 176480 | 27356 |
| D | PFIZER INC | COM | 71708110 | 11530 | 507288 SH | SHR/OTHR | 23 | | 507288 |
| D | PFIZER INC | COM | 71708110 | 520 | 22900 SH | SHARED | 24 | 22900 | |
| D | PFSWEB INC | COM | 71709810 | 1 | 1211 SH | SHARED | | 1211 | |
| D | PHARMACOPEIA INC | COM | 71709910 | 3 | 770 SH | SHARED | | 770 | |
| D | PHARMACOPEIA INC | COM | 71710910 | 801 | 168070 SH | SHARED | 02 | 168070 | |
| D | PHARMACEUTICAL HLDRS TR | DEPOSITRY RCPT | 71712A20 | 7627 | 96323 SH | SHARED | | 96323 | |
| D | PHARMACEUTICAL HLDRS TR | DEPOSITRY RCPT | 71712A20 | 14515 | 183300 SH | SHARED | 02 | 183300 | |
| D | PHARMACEUTICAL HLDRS TR | DEPOSITRY RCPT | 71712A20 | 71 | 900 SH | SHARED | 15 | | 900 |
| D | PHARMACEUTICAL PROD DEV INC | COM | 71712410 | 4550 | 112721 SH | SHARED | | 112721 | |
| D | PHARMACEUTICAL PROD DEV INC | COM | 71712410 | 1486 | 36820 SH | SHARED | 01 | 3920 | 32900 |
| D | PHARMACEUTICAL PROD DEV INC | COM | 71712410 | 571 | 14156 SH | SHARED | 02 | 14156 | |
| D | PHARMACEUTICAL PROD DEV INC | COM | 71712410 | 25965 | 643192 SH | SHARED | 10 | 643192 | |
| D | PHARMACEUTICAL PROD DEV INC | COM | 71712410 | 3 | 80 SH | SHARED | 21 | | 80 |
| D | PHARMACEUTICAL PROD DEV INC | COM | 71712410 | 12 | 300 SH | SHR/OTHR | 23 | | 300 |
| D | PHARMOS CORP | COM PAR $.03 | 71713930 | 0 | 445 SH | SHARED | | 445 | |
| D | PHARMERICA CORP | COM | 71714F10 | 113 | 8213 SH | SHARED | | 8213 | |
| D | PHARMERICA CORP | COM | 71714F10 | 126 | 9085 SH | SHARED | 10 | 9085 | |
| D | PHARMATHENE INC | COM | 71714010 | 1 | 323 SH | SHARED | | 323 | |
| D | PHARMANET DEV GROUP INC | COM | 71714810 | 715 | 18245 SH | SHARED | | 18245 | |
| D | PHARMANET DEV GROUP INC | COM | 71714810 | 89 | 2270 SH | SHARED | 01 | 2270 | |
| D | PHARMANET DEV GROUP INC | COM | 71714810 | 929 | 23700 SH | SHARED | 10 | 23700 | |
| D | PHARMION CORP | COM | 71715B40 | 535 | 8516 SH | SHARED | | 8516 | |
| D | PHARMION CORP | COM | 71715B40 | 50 | 800 SH | SHARED | 01 | 800 | |
| D | PHARMION CORP | COM | 71715B40 | 16061 | 255510 SH | SHARED | 04 | 255510 | |
| D | PHARMION CORP | COM | 71715B40 | 1634 | 26000 SH | SHARED | 10 | 26000 | |
| D | PHARMASSET INC | COM | 71715N10 | 4 | 341 SH | SHARED | | 341 | |
| D | PHARMASSET INC | COM | 71715N10 | 14 | 1100 SH | SHARED | 02 | 1100 | |
| D | PHARSIGHT CORP | COM NEW | 71721Q20 | 0 | 165 SH | SHARED | | 165 | |
| D | PHASE FORWARD INC | COM | 71721R40 | 311 | 14329 SH | SHARED | | 14329 | |
| D | PHASE FORWARD INC | COM | 71721R40 | 28 | 1300 SH | SHARED | 01 | 1300 | |
| D | PHASE FORWARD INC | COM | 71721R40 | 3 | 146 SH | SHARED | 02 | 146 | |
| D | PHASE FORWARD INC | COM | 71721R40 | 1626 | 74800 SH | SHARED | 10 | 74800 | |
| D | PHAZAR CORP | COM | 71722810 | 2 | 370 SH | SHARED | | 370 | |
| D | PHILADELPHIA CONS HLDG CORP | COM | 71752810 | 122 | 3116 SH | SHARED | | 3116 | |
| D | PHILADELPHIA CONS HLDG CORP | COM | 71752810 | 165 | 4200 SH | SHARED | 01 | 4200 | |
| D | PHILADELPHIA CONS HLDG CORP | COM | 71752810 | 1258 | 31972 SH | SHARED | 10 | 31972 | |
| D | PHILADELPHIA CONS HLDG CORP | COM | 71752810 | 240 | 6100 SH | SHARED | 10 | 6100 | |
| D | PHILADELPHIA CONS HLDG CORP | COM | 71752810 | 14 | 358 SH | SHARED | 21 | | 358 |
| D | PHILIPPINE LONG DISTANCE TEL | SPONSORED ADR | 71825260 | 330 | 4370 SH | SHARED | | 4370 | |
| D | PHILIPPINE LONG DISTANCE TEL | SPONSORED ADR | 71825260 | 151 | 2000 SH | SHARED | 02 | 2000 | |
| D | PHILIPPINE LONG DISTANCE TEL | SPONSORED ADR | 71825260 | 106 | 1400 SH | SHARED | 10 | 1400 | |
| D | PHILLIPS VAN HEUSEN CORP | COM | 71859210 | 5083 | 137922 SH | SHARED | | 137922 | |
| D | PHILLIPS VAN HEUSEN CORP | COM | 71859210 | 1061 | 28800 SH | SHARED | 01 | 15000 | 13800 |
| D | PHILLIPS VAN HEUSEN CORP | COM | 71859210 | 774 | 21000 SH | SHR/OTHR | 01 | | 21000 |
| D | PHILLIPS VAN HEUSEN CORP | COM | 71859210 | 116 | 3174 SH | SHARED | 02 | 3174 | |
| D | PHILLIPS VAN HEUSEN CORP | COM | 71859210 | 30179 | 818764 SH | SHARED | 10 | 818764 | |
| D | PHOENIX COS INC NEW | COM | 71902E10 | 425 | 35875 SH | SHARED | | 35875 | |
| D | PHOENIX COS INC NEW | COM | 71902E10 | 513 | 43300 SH | SHARED | 01 | 43300 | |
| D | PHOENIX COS INC NEW | COM | 71902E10 | 187 | 15800 SH | SHARED | 02 | 15800 | |
| D | PHOENIX COS INC NEW | COM | 71902E10 | 1159 | 97678 SH | SHARED | 10 | 97678 | |
| D | PHOENIX COS INC NEW | COM | 71902E10 | 2 | 214 SH | SHARED | 23 | 214 | |
| D | PHOENIX FOOTWEAR GROUP INC | COM | 71902E10 | 0 | 153 SH | SHARED | | 153 | |
| D | PHOENIX TECHNOLOGY LTD | COM | 71915310 | 11 | 878 SH | SHARED | | 878 | |
| D | PHOENIX TECHNOLOGY LTD | COM | 71915310 | 101 | 7900 SH | SHARED | 02 | 7900 | |
| D | PHOTOMEDEX INC | COM | 71935810 | 1 | 1630 SH | SHARED | | 1630 | |
| D | PHOTON DYNAMICS INC | COM | 71936410 | 23 | 2832 SH | SHARED | | 2832 | |
| D | PHOTRONICS INC | COM | 71940510 | 1680 | 134732 SH | SHARED | | 134732 | |
| D | PHOTRONICS INC | COM | 71940510 | 28 | 2300 SH | SHARED | 01 | 2300 | |
| D | PHOTRONICS INC | COM | 71940510 | 1222 | 98000 SH | SHARED | 10 | 98000 | |
| D | PHYSICIANS FORMULA HLDGS INC | COM | 71942710 | 7 | 593 SH | SHARED | | 593 | |
| D | PIEDMONT NAT GAS INC | COM | 72018610 | 504 | 19300 SH | SHARED | | 19300 | |
| D | PIEDMONT NAT GAS INC | COM | 72018610 | 56 | 2175 SH | SHARED | 01 | 2175 | |
| D | PIEDMONT NAT GAS INC | COM | 72018610 | 13 | 500 SH | SHARED | 02 | 500 | |
| D | PIEDMONT NAT GAS INC | COM | 72018610 | 1438 | 55000 SH | SHARED | 10 | 55000 | |
| D | PIEDMONT NAT GAS INC | COM | 72018610 | 94 | 3600 SH | SHR/OTHR | 22 | | 3600 |
| D | PIEDMONT NAT GAS INC | COM | 72018610 | 78 | 3000 SH | SHARED | 23 | | 3000 |
| D | PIER 1 IMPORTS INC | NOTE  6.375% 2/1 | 720279AH | 1237 | 1500000 PRN | SHARED | | 1500000 | |
| D | PIER 1 IMPORTS INC | COM | 72027910 | 23098 | 4416618 SH | SHARED | | 4416618 | |
| D | PIER 1 IMPORTS INC | COM | 72027910 | 126 | 24100 SH | SHARED | 10 | 24100 | |
| D | PIKE ELEC CORP | COM | 72128310 | 144 | 8598 SH | SHARED | | 8598 | |
| D | PILGRIMS PRIDE CORP | COM | 72146710 | 11030 | 381016 SH | SHARED | | 381016 | |
| D | PILGRIMS PRIDE CORP | COM | 72146710 | 52 | 1800 SH | SHARED | 02 | 1800 | |
| D | PILGRIMS PRIDE CORP | COM | 72146710 | 19642 | 678500 SH | SHARED | 10 | 678500 | |
| D | PILGRIMS PRIDE CORP | COM | 72146710 | 2062 | 71230 SH | SHARED | 16 | 71230 | |
| D | PILGRIMS PRIDE CORP | COM | 72146710 | 160 | 5555 SH | SHARED | 21 | 5555 | |
| D | PIMCO MUN INCOME FD II | COM | 72200W10 | 136 | 10000 SH | SHARED | 01 | | 10000 |
| D | PIMCO STRATEGIC GBL INCOME FD I | COM | 72200X10 | 7 | 800 SH | SHARED | | 800 | |
| D | PIMCO FLOATING RATE INCOME F | COM | 72201H10 | 235 | 15024 SH | SHARED | | 15024 | |
| D | PIMCO FLOATING RATE STRTGY F | COM | 72201J10 | 5105 | 333248 SH | SHARED | | 333248 | |
| D | PIMCO GLOBAL STOCKSPLS INCM | COM | 72201110 | 132 | 6000 SH | SHARED | | 6000 | |
| D | PIMCO MUN ADVANTAGE FD | COM | 72201510 | 0 | 44 SH | SHARED | | 44 | |
| D | PINNACLE BANCSHARES INC | COM | 72290310 | 0 | 38 SH | SHARED | | 38 | |

| D | Issuer | Class | CUSIP | Value | Amount | Type | Discretion | Mgr | Sole | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|---|
| D | PINNACLE AIRL CORP | COM | 72344310 | 210 | 13779 | SH | SHARED | | 13779 | | |
| D | PINNACLE DATA SYS INC | COM | 72345410 | 0 | 135 | SH | SHARED | | 135 | | |
| D | PINNACLE ENTMT INC | COM | 72345610 | 357 | 15178 | SH | SHARED | | 15178 | | |
| D | PINNACLE ENTMT INC | COM | 72345610 | 1655 | 70288 | SH | SHARED | 10 | 70288 | | |
| D | PINNACLE FINL PARTNERS INC | COM | 72346Q10 | 101 | 3984 | SH | SHARED | | 3984 | | |
| D | PINNACLE FINL PARTNERS INC | COM | 72346Q10 | 1 | 70 | SH | SHARED | 02 | 70 | | |
| D | PINNACLE GAS RESOURCES INC | COM | 72346430 | 0 | 99 | SH | SHARED | | 99 | | |
| D | PINNACLE WEST CAP CORP | COM | 72348410 | 4703 | 110904 | SH | SHARED | | 110904 | | |
| D | PINNACLE WEST CAP CORP | COM | 72348410 | 471 | 11114 | SH | SHARED | 01 | 11114 | | |
| D | PINNACLE WEST CAP CORP | COM | 72348410 | 148 | 3500 | SH | SHR/OTHR | | | | 3500 |
| D | PINNACLE WEST CAP CORP | COM | 72348410 | 1497 | 35318 | SH | SHARED | 02 | 35318 | | |
| D | PINNACLE WEST CAP CORP | COM | 72348410 | 34 | 820 | SH | SHARED | 06 | 820 | | |
| D | PINNACLE WEST CAP CORP | COM | 72348410 | 2170 | 51178 | SH | SHARED | 10 | 51178 | | |
| D | PINNACLE WEST CAP CORP | COM | 72348410 | 508 | 12000 | SH | SHARED | 14 | 12000 | | |
| D | PINNACLE WEST CAP CORP | COM | 72348410 | 82 | 1940 | SH | SHARED | 21 | 1940 | | |
| D | PIONEER DIV HIGH INCOME TRUS | COM BENE INTER | 72365310 | 5970 | 301390 | SH | SHARED | | 301390 | | |
| D | PIONEER DRILLING CO | COM | 72365510 | 148 | 12511 | SH | SHARED | | 12511 | | |
| D | PIONEER DRILLING CO | COM | 72365510 | 29 | 2500 | SH | SHARED | 01 | 2500 | | |
| D | PIONEER DRILLING CO | COM | 72365510 | 1292 | 108800 | SH | SHARED | 10 | 108800 | | |
| D | PIONEER HIGH INCOME TR | COM | 72369H10 | 1615 | 115300 | SH | SHARED | 10 | 115300 | | |
| D | PIONEER FLOATING RATE TR | COM | 72369J10 | 7572 | 478348 | SH | SHARED | | 478348 | | |
| D | PIONEER MUN & EQUITY INCOME | COM | 72376110 | 14512 | 1059281 | SH | SHARED | | 1059281 | | |
| D | PIONEER NAT RES CO | COM | 72378710 | 25742 | 527083 | SH | SHARED | | 527083 | | |
| D | PIONEER NAT RES CO | COM | 72378710 | 1852 | 37925 | SH | SHARED | 01 | 625 | | 37300 |
| D | PIONEER NAT RES CO | COM | 72378710 | 287 | 5885 | SH | SHARED | 02 | 5885 | | |
| D | PIONEER NAT RES CO | COM | 72378710 | 732 | 15000 | SH | SHARED | 04 | 15000 | | |
| D | PIONEER NAT RES CO | COM | 72378710 | 5 | 110 | SH | SHARED | 05 | 110 | | |
| D | PIONEER NAT RES CO | COM | 72378710 | 78 | 1600 | SH | SHARED | 06 | 1600 | | |
| D | PIONEER NAT RES CO | COM | 72378710 | 488 | 10000 | SH | SHARED | 10 | 10000 | | |
| D | PIONEER NAT RES CO | COM | 72378710 | 62 | 1280 | SH | SHARED | 21 | 1280 | | |
| D | PIPER JAFFRAY COS | COM | 72407810 | 1704 | 36797 | SH | SHARED | | 36797 | | |
| D | PIPER JAFFRAY COS | COM | 72407810 | 48 | 1047 | SH | SHARED | 01 | 899 | | 148 |
| D | PIPER JAFFRAY COS | COM | 72407810 | 64 | 1400 | SH | SHARED | 02 | 1400 | | |
| D | PIPER JAFFRAY COS | COM | 72407810 | 291 | 6300 | SH | SHARED | 10 | 6300 | | |
| D | PIPER JAFFRAY COS | COM | 72407810 | 1 | 43 | SH | SHARED | 20 | 43 | | |
| D | PIPEX PHARM INC | COM NEW | 72415320 | 1 | 222 | SH | SHARED | | 222 | | |
| D | PITNEY BOWES INC | COM | 72447910 | 12413 | 326334 | SH | SHARED | | 326334 | | |
| D | PITNEY BOWES INC | COM | 72447910 | 1616 | 42504 | SH | SHARED | 01 | 42504 | | |
| D | PITNEY BOWES INC | COM | 72447910 | 750 | 19726 | SH | SHARED | 02 | 19726 | | |
| D | PITNEY BOWES INC | COM | 72447910 | 3 | 100 | SH | SHARED | 05 | 100 | | |
| D | PITNEY BOWES INC | COM | 72447910 | 93 | 2460 | SH | SHARED | 06 | 2460 | | |
| D | PITNEY BOWES INC | COM | 72447910 | 4364 | 114731 | SH | SHARED | 10 | 114731 | | |
| D | PITNEY BOWES INC | COM | 72447910 | 220 | 5800 | SH | SHR/OTHR | 20 | | | 5800 |
| D | PITNEY BOWES INC | COM | 72447910 | 121 | 3200 | SH | SHARED | 23 | 3200 | | |
| D | PITNEY BOWES INC | COM | 72447910 | 1926 | 50647 | SH | SHR/OTHR | 23 | | | 50647 |
| D | PITTSBURGH & W VA RR | SH BEN INT | 72481910 | 0 | 39 | SH | SHARED | | 39 | | |
| D | PIXELWORKS INC | SDCV 1.750% 5/1 | 72581MAB | 604 | 840000 | PRN | SHARED | | 840000 | | |
| D | PIXELWORKS INC | SDCV 1.750% 5/1 | 72581MAB | 10 | 15000 | PRN | SHARED | 02 | 15000 | | |
| D | PIXELWORKS INC | COM | 72581M10 | 0 | 1264 | SH | SHARED | | 1264 | | |
| D | PIXELPLUS CO LTD | ADR | 72582A10 | 18 | 31990 | SH | SHARED | | 31990 | | |
| D | PIZZA INN INC NEW | COM | 72584810 | 0 | 142 | SH | SHARED | | 142 | | |
| D | PLACER DOME INC | DBCV 2.750%10/1 | 72590GAX | 1015 | 572000 | PRN | SHARED | 02 | 572000 | | |
| D | PLAINS ALL AMERN PIPELINE L | UNIT LTD PARTN | 72650310 | 15170 | 291737 | SH | SHARED | | 291737 | | |
| D | PLAINS EXPL& PRODTN CO | COM | 72650510 | 1634 | 30277 | SH | SHARED | | 30277 | | |
| D | PLAINS EXPL& PRODTN CO | COM | 72650510 | 3294 | 61015 | SH | SHARED | 01 | 24393 | | 36622 |
| D | PLAINS EXPL& PRODTN CO | COM | 72650510 | 450 | 8343 | SH | SHARED | 02 | 8343 | | |
| D | PLAINS EXPL& PRODTN CO | COM | 72650510 | 32 | 600 | SH | SHARED | 06 | 600 | | |
| D | PLAINS EXPL& PRODTN CO | COM | 72650510 | 408 | 7560 | SH | SHARED | 10 | 7560 | | |
| D | PLAINS EXPL& PRODTN CO | COM | 72650510 | 8 | 160 | SH | SHARED | 21 | 160 | | |
| D | PLAINS EXPL& PRODTN CO | COM | 72650510 | 70 | 1300 | SH | SHARED | 23 | 1300 | | |
| D | PLANAR SYS INC | COM | 72690010 | 937 | 146430 | SH | SHARED | | 146430 | | |
| D | PLANETOUT INC | COM NEW | 72705820 | 0 | 93 | SH | SHARED | | 93 | | |
| D | PLANTRONICS INC NEW | COM | 72749310 | 296 | 11404 | SH | SHARED | | 11404 | | |
| D | PLANTRONICS INC NEW | COM | 72749310 | 482 | 18575 | SH | SHARED | 01 | 3275 | | 15300 |
| D | PLANTRONICS INC NEW | COM | 72749310 | 59 | 2301 | SH | SHARED | 02 | 2301 | | |
| D | PLANTRONICS INC NEW | COM | 72749310 | 3164 | 121700 | SH | SHARED | 10 | 121700 | | |
| D | PLATO LEARNING INC | COM | 72764Y10 | 11 | 2958 | SH | SHARED | | 2958 | | |
| D | PLATO LEARNING INC | COM | 72764Y10 | 0 | 1 | SH | SHARED | 01 | 1 | | |
| D | PLAYBOY ENTERPRISES INC | CL B | 72811730 | 15 | 1650 | SH | SHARED | 02 | 1650 | | |
| D | PLEXUS CORP | COM | 72913210 | 1527 | 58159 | SH | SHARED | | 58159 | | |
| D | PLEXUS CORP | COM | 72913210 | 735 | 28000 | SH | SHARED | 01 | 23300 | | 4700 |
| D | PLEXUS CORP | COM | 72913210 | 846 | 32241 | SH | SHARED | 10 | 32241 | | |
| D | PLUG POWER INC | COM | 72919P10 | 161 | 40830 | SH | SHARED | | 40830 | | |
| D | PLUG POWER INC | COM | 72919P10 | 231 | 58600 | SH | SHARED | 02 | 58600 | | |
| D | PLUG POWER INC | COM | 72919P10 | 18328 | 4640000 | SH | SHARED | 04 | 4640000 | | |
| D | PLUM CREEK TIMBER CO INC | COM | 72925110 | 48 | 1047 | SH | SHARED | | | | 1047 |
| D | PLUM CREEK TIMBER CO INC | COM | 72925110 | 18287 | 397205 | SH | SHARED | | 397205 | | |
| D | PLUM CREEK TIMBER CO INC | COM | 72925110 | 1616 | 35109 | SH | SHARED | 01 | 24109 | | 11000 |
| D | PLUM CREEK TIMBER CO INC | COM | 72925110 | 1422 | 30899 | SH | SHARED | 02 | 30899 | | |
| D | PLUM CREEK TIMBER CO INC | COM | 72925110 | 74425 | 1616534 | SH | SHARED | 04 | 1616534 | | |
| D | PLUM CREEK TIMBER CO INC | COM | 72925110 | 20286 | 440628 | SH | SHARED | 05 | 440628 | | |
| D | PLUM CREEK TIMBER CO INC | COM | 72925110 | 819 | 17792 | SH | SHARED | 06 | | | 17792 |
| D | PLUM CREEK TIMBER CO INC | COM | 72925110 | 4676 | 101568 | SH | SHARED | 10 | 101568 | | |
| D | PLUM CREEK TIMBER CO INC | COM | 72925110 | 56 | 1222 | SH | SHARED | 23 | 1222 | | |
| D | PLUM CREEK TIMBER CO INC | COM | 72925110 | 275 | 5981 | SH | SHR/OTHR | 23 | | | 5981 |
| D | PLUMAS BANCORP | COM | 72927310 | 1 | 116 | SH | SHARED | | 116 | | |
| D | POINT 360 | COM | 73050710 | 0 | 159 | SH | SHARED | | 159 | | |
| D | POINT THERAPEUTICS INC | COM | 73069410 | 0 | 1025 | SH | SHARED | | 1025 | | |
| D | POKERTEK INC | COM | 73086410 | 1 | 143 | SH | SHARED | | 143 | | |
| D | POLARIS INDS INC | COM | 73106810 | 2271 | 47555 | SH | SHARED | | 47555 | | |
| D | POLARIS INDS INC | COM | 73106810 | 52 | 1100 | SH | SHARED | 01 | 1100 | | |
| D | POLARIS INDS INC | COM | 73106810 | 71 | 1500 | SH | SHARED | 02 | 1500 | | |
| D | POLARIS INDS INC | COM | 73106810 | 6009 | 125800 | SH | SHARED | 10 | 125800 | | |
| D | POLARIS INDS INC | COM | 73106810 | 33 | 700 | SH | SHR/OTHR | 23 | | | 700 |
| D | POLO RALPH LAUREN CORP | CL A | 73157210 | 55851 | 903900 | SH | SHARED | | 903900 | | |
| D | POLO RALPH LAUREN CORP | CL A | 73157210 | 113 | 1840 | SH | SHARED | 01 | | | 1840 |
| D | POLO RALPH LAUREN CORP | CL A | 73157210 | 61 | 1000 | SH | SHR/OTHR | 01 | | | 1000 |
| D | POLO RALPH LAUREN CORP | CL A | 73157210 | 91 | 1476 | SH | SHARED | 02 | 1476 | | |
| D | POLO RALPH LAUREN CORP | CL A | 73157210 | 20375 | 329750 | SH | SHARED | 04 | 329750 | | |
| D | POLO RALPH LAUREN CORP | CL A | 73157210 | 24 | 400 | SH | SHARED | 06 | | | 400 |
| D | POLO RALPH LAUREN CORP | CL A | 73157210 | 38394 | 621376 | SH | SHARED | 10 | 621376 | | |
| D | POLO RALPH LAUREN CORP | CL A | 73157210 | 196 | 3175 | SH | SHARED | 14 | | | 3175 |
| D | POLO RALPH LAUREN CORP | CL A | 73157210 | 3387 | 54829 | SH | SHARED | 16 | 54829 | | |
| D | POLO RALPH LAUREN CORP | CL A | 73157210 | 12 | 200 | SH | SHARED | 20 | 200 | | |
| D | POLO RALPH LAUREN CORP | CL A | 73157210 | 148 | 2400 | SH | SHARED | 23 | 2400 | | |
| D | POLYCOM INC | COM | 73172X10 | 3924 | 141275 | SH | SHARED | | 141275 | | |
| D | POLYCOM INC | COM | 73172X10 | 1366 | 49200 | SH | SHARED | 01 | 20600 | | 28600 |
| D | POLYCOM INC | COM | 73172X10 | 119 | 4299 | SH | SHARED | 02 | 4299 | | |
| D | POLYCOM INC | COM | 73172X10 | 13192 | 474900 | SH | SHARED | 10 | 474900 | | |
| D | POLYONE CORP | COM | 73179P10 | 463 | 70414 | SH | SHARED | | 70414 | | |
| D | POLYONE CORP | COM | 73179P10 | 42 | 6500 | SH | SHARED | 01 | 6500 | | |
| D | POLYONE CORP | COM | 73179P10 | 2096 | 318600 | SH | SHARED | 10 | 318600 | | |
| D | POLYPORE INTL INC | COM | 73179V10 | 152 | 8689 | SH | SHARED | | 8689 | | |
| D | POMEROY IT SOLUTIONS INC | COM | 73182210 | 444 | 64185 | SH | SHARED | | 64185 | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | POLYMET MINING CORP | COM | 73191610 | 76 | 23500 SH | SHARED | | 23500 | |
| D | PONIARD PHARMACEUTICALS INC | COM NEW | 73244930 | 0 | 203 SH | SHARED | | 203 | |
| D | POOL CORPORATION | COM | 73278L10 | 868 | 43799 SH | SHARED | | 43799 | |
| D | POOL CORPORATION | COM | 73278L10 | 69 | 3507 SH | SHARED | 01 | 3507 | |
| D | POOL CORPORATION | COM | 73278L10 | 1110 | 56000 SH | SHARED | 02 | 56000 | |
| D | POOL CORPORATION | COM | 73278L10 | 194 | 9800 SH | SHARED | 10 | 9800 | |
| D | POOL CORPORATION | COM | 73278L10 | 3 | 192 SH | SHARED | 21 | | 192 |
| D | POPE RES DEL LTD PARTNERSHIP | DEPOSITRY RCPT | 73285710 | 951 | 22248 SH | SHARED | | 22248 | |
| D | POPULAR INC | COM | 73317410 | 2312 | 218158 SH | SHARED | | 218158 | |
| D | POPULAR INC | COM | 73317410 | 102 | 9700 SH | SHARED | 01 | 6200 | 3500 |
| D | POPULAR INC | COM | 73317410 | 152 | 14400 SH | SHARED | 10 | 14400 | |
| D | PORTEC RAIL PRODS INC | COM | 73621210 | 7 | 667 SH | SHARED | | 667 | |
| D | PORTER BANCORP INC | COM | 73623310 | 366 | 18339 SH | SHARED | | 18339 | |
| D | PORTFOLIO RECOVERY ASSOCS IN | COM | 73640Q10 | 918 | 23157 SH | SHARED | | 23157 | |
| D | PORTFOLIO RECOVERY ASSOCS IN | COM | 73640Q10 | 749 | 18900 SH | SHARED | 01 | 18700 | 200 |
| D | PORTFOLIO RECOVERY ASSOCS IN | COM | 73640Q10 | 1098 | 27700 SH | SHR/OTHR | 01 | | 27700 |
| D | PORTFOLIO RECOVERY ASSOCS IN | COM | 73640Q10 | 773 | 19494 SH | SHARED | 02 | 19494 | |
| D | PORTFOLIO RECOVERY ASSOCS IN | COM | 73640Q10 | 14523 | 366109 SH | SHARED | 10 | 366109 | |
| D | PORTFOLIO RECOVERY ASSOCS IN | COM | 73640Q10 | 5 | 149 SH | SHARED | 20 | 149 | |
| D | PORTFOLIO RECOVERY ASSOCS IN | COM | 73640Q10 | 8 | 212 SH | SHARED | 21 | | 212 |
| D | PORTLAND GEN ELEC CO | COM NEW | 73650884 | 0 | 8 SH | SHARED | | 8 | |
| D | PORTLAND GEN ELEC CO | COM NEW | 73650884 | 2535 | 91266 SH | SHARED | | 91266 | |
| D | PORTLAND GEN ELEC CO | COM NEW | 73650884 | 2064 | 74300 SH | SHARED | 10 | 74300 | |
| D | POSSIS MEDICAL INC | COM | 73740710 | 6 | 449 SH | SHARED | | 449 | |
| D | POSSIS MEDICAL INC | COM | 73740710 | 52 | 3625 SH | SHARED | 02 | 3625 | |
| D | POST PPTYS INC | COM | 73746410 | 80944 | 2304800 SH | SHARED | | 2304800 | |
| D | POST PPTYS INC | COM | 73746410 | 449 | 12800 SH | SHARED | 10 | 12800 | |
| D | POST PPTYS INC | COM | 73746410 | 28617 | 814850 SH | SHARED | 11 | 153500 | 661350 |
| D | POTASH CORP SASK INC | COM | 73755L10 | 208441 | 1447915 SH | SHARED | | 1447915 | |
| D | POTASH CORP SASK INC | COM | 73755L10 | 115 | 801 SH | SHARED | 01 | 801 | |
| D | POTASH CORP SASK INC | COM | 73755L10 | 81032 | 562884 SH | SHARED | 04 | 562884 | |
| D | POTASH CORP SASK INC | COM | 73755L10 | 116379 | 808412 SH | SHARED | 05 | 808412 | |
| D | POTASH CORP SASK INC | COM | 73755L10 | 215 | 1500 SH | SHARED | 06 | | 1500 |
| D | POTASH CORP SASK INC | COM | 73755L10 | 3435 | 23866 SH | SHARED | 10 | 23866 | |
| D | POTASH CORP SASK INC | COM | 73755L10 | 828 | 5753 SH | SHARED | 14 | | 5753 |
| D | POTLATCH CORP NEW | COM | 73763010 | 891 | 20065 SH | SHARED | | 20065 | |
| D | POTLATCH CORP NEW | COM | 73763010 | 647 | 14570 SH | SHARED | 01 | 1525 | 13045 |
| D | POTLATCH CORP NEW | COM | 73763010 | 82 | 1856 SH | SHARED | 02 | 1856 | |
| D | POTLATCH CORP NEW | COM | 73763010 | 1886 | 42454 SH | SHARED | 10 | 42454 | |
| D | POWELL INDS INC | COM | 73912810 | 115 | 2613 SH | SHARED | | 2613 | |
| D | POWER INTEGRATIONS INC | COM | 73927610 | 22 | 660 SH | SHARED | | | 660 |
| D | POWER INTEGRATIONS INC | COM | 73927610 | 65 | 1900 SH | SHARED | | 1900 | |
| D | POWER INTEGRATIONS INC | COM | 73927610 | 110 | 3200 SH | SHARED | 02 | 3200 | |
| D | POWER INTEGRATIONS INC | COM | 73927610 | 8798 | 255559 SH | SHARED | 04 | 255559 | |
| D | POWER INTEGRATIONS INC | COM | 73927610 | 8373 | 243201 SH | SHARED | 05 | 243201 | |
| D | POWER INTEGRATIONS INC | COM | 73927610 | 303 | 8807 SH | SHARED | 06 | | 8807 |
| D | POWER INTEGRATIONS INC | COM | 73927610 | 252 | 7338 SH | SHARED | 10 | 7338 | |
| D | POWER MED INTERVENTIONS INC | COM | 73929910 | 1 | 100 SH | SHARED | | 100 | |
| D | POWER-ONE INC | COM | 73930810 | 44 | 11247 SH | SHARED | | 11247 | |
| D | POWERSHARES QQQ TRUST | UNIT SER 1 | 73935A10 | 4173 | 81490 SH | SHARED | | 81490 | |
| D | POWERSHARES QQQ TRUST | UNIT SER 1 | 73935A10 | 521036 | 10172523 SH | SHARED | | 0172523 | |
| D | POWERSHARES QQQ TRUST | UNIT SER 1 | 73935A10 | 5024 | 98088 SH | SHARED | 01 | 95125 | 2963 |
| D | POWERSHARES QQQ TRUST | UNIT SER 1 | 73935A10 | 63732 | 1244280 SH | SHARED | 02 | 1244280 | |
| D | POWERSHARES QQQ TRUST | UNIT SER 1 | 73935A10 | 41807 | 816229 SH | SHARED | 10 | 816229 | |
| D | POWERSHARES QQQ TRUST | UNIT SER 1 | 73935A10 | 1298 | 25350 SH | SHARED | 15 | | 25350 |
| D | POWERSHARES QQQ TRUST | UNIT SER 1 | 73935A10 | 548 | 10700 SH | SHARED | 19 | | 10700 |
| D | POWERSHARES QQQ TRUST | UNIT SER 1 | 73935A10 | 25 | 500 SH | SHARED | 21 | 500 | |
| D | POWERSHARES QQQ TRUST | UNIT SER 1 | 73935A10 | 6 | 125 SH | SHR/OTHR | 22 | | 125 |
| D | POWERSHARES QQQ TRUST | UNIT SER 1 | 73935A10 | 542 | 10600 SH | SHARED | 23 | 10600 | |
| D | POWERSHARES QQQ TRUST | UNIT SER 1 | 73935A10 | 5 | 100 SH | SHR/OTHR | 23 | | 100 |
| D | POWERSHARES DB CMDTY IDX TRA | UNIT BEN INT | 73935S10 | 12014 | 380693 SH | SHARED | | 126464 | 254229 |
| D | POWERSHARES DB CMDTY IDX TRA | UNIT BEN INT | 73935S10 | 7275 | 230524 SH | SHR/OTHR | 01 | | 230524 |
| D | POWERSHARES DB CMDTY IDX TRA | UNIT BEN INT | 73935S10 | 6312 | 200000 SH | SHARED | 02 | 200000 | |
| D | POWERSHARES DB CMDTY IDX TRA | UNIT BEN INT | 73935S10 | 6809 | 215755 SH | SHARED | 20 | 132550 | 83205 |
| D | POWERSHARES DB CMDTY IDX TRA | UNIT BEN INT | 73935S10 | 2325 | 73698 SH | SHR/OTHR | 20 | | 73698 |
| D | POWERSHARES DB CMDTY IDX TRA | UNIT BEN INT | 73935S10 | 50 | 1600 SH | SHARED | 21 | 1600 | |
| D | POWERSHARES DB CMDTY IDX TRA | UNIT BEN INT | 73935S10 | 2508 | 79499 SH | SHARED | 22 | 65224 | 14275 |
| D | POWERSHARES DB CMDTY IDX TRA | UNIT BEN INT | 73935S10 | 520 | 16498 SH | SHR/OTHR | 22 | | 16498 |
| D | POWERSHARES DB CMDTY IDX TRA | UNIT BEN INT | 73935S10 | 1524 | 48310 SH | SHARED | 23 | 46215 | 2095 |
| D | POWERSHARES DB CMDTY IDX TRA | UNIT BEN INT | 73935S10 | 1024 | 32455 SH | SHR/OTHR | 23 | | 32455 |
| D | POWERSHARES ETF TRUST | PRVT EQTY PORT | 73935X19 | 1035 | 47000 SH | SHARED | | 47000 | |
| D | POWERSHARES ETF TRUST | CLEANTECH PORT | 73935X27 | 1785 | 50000 SH | SHARED | | 50000 | |
| D | POWERSHARES ETF TRUST | WNDRHLL CLN EN | 73935X50 | 29 | 1052 SH | SHARED | | 1052 | |
| D | POWERSHARES ETF TRUST | WNDRHLL CLN EN | 73935X50 | 1 | 50 SH | SHR/OTHR | 01 | | 50 |
| D | POWERSHARES ETF TRUST | WATER RESOURCE | 73935X57 | 45 | 2125 SH | SHARED | 01 | 2125 | |
| D | POWERSHARES ETF TRUST | FTSE RAFI 1000 | 73935X68 | 24 | 420 SH | SHARED | 20 | 420 | |
| D | POWERSHARES ETF TRUST | DYN EN EX PROD | 73935X65 | 63 | 2500 SH | SHARED | 01 | 2500 | |
| D | POWERSHARES DB G10 CURCY HAR | COM UT BEN INT | 73935Y10 | 164 | 6000 SH | SHARED | 20 | | 6000 |
| D | POWERSHARES DB G10 CURCY HAR | COM UT BEN INT | 73935Y10 | 24 | 900 SH | SHR/OTHR | 20 | | 900 |
| D | POWERSHS DB MULTI SECT COMM | DB AGRICULT FD | 73936B40 | 10401 | 315300 SH | SHARED | | 315300 | |
| D | POWERSHS DB MULTI SECT COMM | DB AGRICULT FD | 73936B40 | 7308 | 221550 SH | SHARED | 02 | 221550 | |
| D | POWERSECURE INTL INC | COM | 73936H10 | 510 | 37830 SH | SHARED | | 37830 | |
| D | POWERSHARES GLOBAL ETF TRUST | GBL CLEAN ENER | 73936T61 | 14 | 450 SH | SHARED | 21 | 450 | |
| D | POWERSHARES GLOBAL ETF TRUST | GBL WTR PORT | 73936T62 | 7069 | 285985 SH | SHARED | | 285985 | |
| D | POWERSHARES GLOBAL ETF TRUST | GBL WTR PORT | 73936T62 | 494 | 20000 SH | SHARED | 02 | 20000 | |
| D | POWERWAVE TECHNOLOGIES INC | NOTE  1.250% 7/1 | 739363AB | 203 | 209000 PRN | SHARED | | 209000 | |
| D | POWERWAVE TECHNOLOGIES INC | COM | 73936310 | 2306 | 572444 SH | SHARED | | 572444 | |
| D | POWERWAVE TECHNOLOGIES INC | COM | 73936310 | 831 | 206206 SH | SHARED | 02 | 206206 | |
| D | POWERWAVE TECHNOLOGIES INC | COM | 73936310 | 201 | 50100 SH | SHARED | 10 | 50100 | |
| D | POWERWAVE TECHNOLOGIES INC | COM | 73936310 | 0 | 61 SH | SHR/OTHR | 23 | | 61 |
| D | POZEN INC | COM | 73941U10 | 248 | 20692 SH | SHARED | | 20692 | |
| D | POZEN INC | COM | 73941U10 | 40 | 3350 SH | SHARED | 02 | 3350 | |
| D | PRAXAIR INC | COM | 74005P10 | 38258 | 431280 SH | SHARED | | 431280 | |
| D | PRAXAIR INC | COM | 74005P10 | 5366 | 60499 SH | SHARED | 01 | 43599 | 16900 |
| D | PRAXAIR INC | COM | 74005P10 | 3243 | 36560 SH | SHR/OTHR | 01 | | 36560 |
| D | PRAXAIR INC | COM | 74005P10 | 845 | 9535 SH | SHARED | 02 | 9535 | |
| D | PRAXAIR INC | COM | 74005P10 | 1596 | 18000 SH | SHARED | 04 | 18000 | |
| D | PRAXAIR INC | COM | 74005P10 | 13 | 150 SH | SHARED | 05 | 150 | |
| D | PRAXAIR INC | COM | 74005P10 | 1584 | 17860 SH | SHARED | 06 | | 17860 |
| D | PRAXAIR INC | COM | 74005P10 | 96517 | 1088010 SH | SHARED | 10 | 986650 | 101360 |
| D | PRAXAIR INC | COM | 74005P10 | 6960 | 78463 SH | SHARED | 16 | 78463 | |
| D | PRAXAIR INC | COM | 74005P10 | 3219 | 36294 SH | SHARED | 20 | 12400 | 23894 |
| D | PRAXAIR INC | COM | 74005P10 | 2527 | 28490 SH | SHR/OTHR | 20 | | 28490 |
| D | PRAXAIR INC | COM | 74005P10 | 125 | 1414 SH | SHARED | 21 | 400 | 1014 |
| D | PRAXAIR INC | COM | 74005P10 | 70 | 800 SH | SHR/OTHR | 21 | | 800 |
| D | PRAXAIR INC | COM | 74005P10 | 891 | 10045 SH | SHARED | 22 | 7695 | 2350 |
| D | PRAXAIR INC | COM | 74005P10 | 282 | 3190 SH | SHR/OTHR | 22 | | 3190 |
| D | PRAXAIR INC | COM | 74005P10 | 4146 | 46747 SH | SHARED | 23 | 43647 | 3100 |
| D | PRAXAIR INC | COM | 74005P10 | 3551 | 40030 SH | SHR/OTHR | 23 | | 40030 |
| D | PRAXAIR INC | COM | 74005P10 | 2013 | 22700 SH | SHARED | 24 | 22700 | |
| D | PRE PAID LEGAL SVCS INC | COM | 74006510 | 262 | 4741 SH | SHARED | | 4741 | |
| D | PRE PAID LEGAL SVCS INC | COM | 74006510 | 45 | 825 SH | SHARED | 01 | 825 | |
| D | PRECISION CASTPARTS CORP | COM | 74018910 | 34 | 247 SH | SHARED | | | 247 |
| D | PRECISION CASTPARTS CORP | COM | 74018910 | 23311 | 168072 SH | SHARED | | 168072 | |

| | Issuer | Class | CUSIP | Value | Shares/Prn | Disc | Code | Col A | Col B |
|---|---|---|---|---|---|---|---|---|---|
| D | PRECISION CASTPARTS CORP | COM | 74018910 | 1969 | 14200 SH | SHARED | 01 | 14200 | |
| D | PRECISION CASTPARTS CORP | COM | 74018910 | 690 | 4979 SH | SHARED | 02 | 4979 | |
| D | PRECISION CASTPARTS CORP | COM | 74018910 | 1234 | 8900 SH | SHARED | 05 | 8900 | |
| D | PRECISION CASTPARTS CORP | COM | 74018910 | 166 | 1200 SH | SHARED | 06 | | 1200 |
| D | PRECISION CASTPARTS CORP | COM | 74018910 | 13280 | 95750 SH | SHARED | 10 | 95750 | |
| D | PRECISION CASTPARTS CORP | COM | 74018910 | 56 | 410 SH | SHARED | 20 | 410 | |
| D | PRECISION CASTPARTS CORP | COM | 74018910 | 41 | 300 SH | SHARED | 23 | 300 | |
| D | PRECISION DRILLING TR | TR UNIT | 74021510 | 2698 | 177906 SH | SHARED | | 177906 | |
| D | PRECISION DRILLING TR | TR UNIT | 74021510 | 30 | 2000 SH | SHARED | 20 | | 2000 |
| D | PRECISION DRILLING TR | TR UNIT | 74021510 | 7 | 500 SH | SHR/OTHR | 23 | | 500 |
| D | PREFERRED BK LOS ANGELES CA | COM | 74036710 | 18 | 730 SH | SHARED | | 730 | |
| D | PREFERRED BK LOS ANGELES CA | COM | 74036710 | 2 | 77 SH | SHARED | 02 | 77 | |
| D | PREFERRED BK LOS ANGELES CA | COM | 74036710 | 442 | 17000 SH | SHARED | 10 | 17000 | |
| D | PREMIER FINL BANCORP INC | COM | 74050M10 | 1 | 101 SH | SHARED | | 101 | |
| D | PREMIER EXIBITIONS INC | COM | 74051810 | 493 | 45074 SH | SHARED | | 45074 | |
| D | PREMIERE GLOBAL SVCS INC | COM | 74058510 | 356 | 23981 SH | SHARED | | 23981 | |
| D | PREMIERE GLOBAL SVCS INC | COM | 74058510 | 28 | 1900 SH | SHARED | 01 | 1900 | |
| D | PREMIERE GLOBAL SVCS INC | COM | 74058510 | 121 | 8200 SH | SHARED | 02 | 8200 | |
| D | PREMIERE GLOBAL SVCS INC | COM | 74058510 | 2468 | 166200 SH | SHARED | 10 | 166200 | |
| D | PRESIDENTIAL LIFE CORP | COM | 74088410 | 17 | 1000 SH | SHARED | | 1000 | |
| D | PRESIDENTIAL LIFE CORP | COM | 74088410 | 174 | 9975 SH | SHARED | 02 | 9975 | |
| D | PRESIDENTIAL LIFE CORP | COM | 74088410 | 115 | 6600 SH | SHARED | 10 | 6600 | |
| D | PRIMERWEST BANCORP | COM | 74092110 | 4 | 418 SH | SHARED | | 418 | |
| D | PRESIDENTIAL RLTY CORP NEW | CL B | 74100420 | 0 | 90 SH | SHARED | | 90 | |
| D | PRESSTEK INC | COM | 74111310 | 3 | 737 SH | SHARED | | 737 | |
| D | PRESTIGE BRANDS HLDGS INC | COM | 74112D10 | 101 | 13582 SH | SHARED | | 13582 | |
| D | PRESTIGE BRANDS HLDGS INC | COM | 74112D10 | 73 | 9800 SH | SHARED | 10 | 9800 | |
| D | PRESSURE BIOSCIENCES INC | COM | 74112B10 | 0 | 44 SH | SHARED | | 44 | |
| D | PRICE T ROWE GROUP INC | COM | 74144T10 | 23202 | 381119 SH | SHARED | | 351919 | 29200 |
| D | PRICE T ROWE GROUP INC | COM | 74144T10 | 3519 | 57803 SH | SHARED | 01 | 32192 | 25611 |
| D | PRICE T ROWE GROUP INC | COM | 74144T10 | 8961 | 147206 SH | SHR/OTHR | 01 | 147206 | |
| D | PRICE T ROWE GROUP INC | COM | 74144T10 | 379 | 6228 SH | SHARED | 02 | 6228 | |
| D | PRICE T ROWE GROUP INC | COM | 74144T10 | 9 | 160 SH | SHARED | 05 | 160 | |
| D | PRICE T ROWE GROUP INC | COM | 74144T10 | 127 | 2090 SH | SHARED | 06 | | 2090 |
| D | PRICE T ROWE GROUP INC | COM | 74144T10 | 50006 | 821402 SH | SHARED | 10 | 821402 | |
| D | PRICE T ROWE GROUP INC | COM | 74144T10 | 11 | 196 SH | SHARED | 21 | 196 | |
| D | PRICE T ROWE GROUP INC | COM | 74144T10 | 1692 | 27800 SH | SHR/OTHR | 23 | | 27800 |
| D | PRICELINE COM INC | NOTE  2.250% 1/1 | 741503AH | 557 | 184000 PRN | SHARED | | 184000 | |
| D | PRICELINE COM INC | NOTE  2.250% 1/1 | 741503AL | 12 | 4000 PRN | SHARED | | 4000 | |
| D | PRICELINE COM INC | NOTE  0.750% 9/3 | 741503AL | 8715 | 3000000 PRN | SHARED | | 3000000 | |
| D | PRICELINE COM INC | COM NEW | 74150340 | 384 | 3350 SH | SHARED | 01 | 3350 | |
| D | PRICELINE COM INC | COM NEW | 74150340 | 2044 | 17800 SH | SHARED | 04 | 17800 | |
| D | PRICELINE COM INC | COM NEW | 74150340 | 1002 | 8730 SH | SHARED | 10 | 8730 | |
| D | PRICELINE COM INC | COM NEW | 74150340 | 4 | 40 SH | SHARED | 21 | | 40 |
| D | PRIDE INTL INC DEL | COM | 74153Q10 | 36503 | 1076799 SH | SHARED | | 1076799 | |
| D | PRIDE INTL INC DEL | COM | 74153Q10 | 2278 | 67220 SH | SHARED | 01 | 11520 | 55700 |
| D | PRIDE INTL INC DEL | COM | 74153Q10 | 3554 | 104856 SH | SHARED | 02 | 104856 | |
| D | PRIDE INTL INC DEL | COM | 74153Q10 | 30 | 900 SH | SHARED | 06 | | 900 |
| D | PRIDE INTL INC DEL | COM | 74153Q10 | 647 | 19100 SH | SHARED | 10 | 19100 | |
| D | PRIDE INTL INC DEL | COM | 74153Q10 | 240 | 7100 SH | SHARED | 14 | | 7100 |
| D | PRIMEDIA INC | COM NEW | 74157R84 | 20 | 2451 SH | SHARED | | 2451 | |
| D | PRIMEDIA INC | COM NEW | 74157R84 | 1022 | 120295 SH | SHARED | 02 | 120295 | |
| D | PRIMEDIA INC | COM NEW | 74157R84 | 141 | 16616 SH | SHARED | 10 | 16616 | |
| D | PRIMEENERGY CORP | COM | 74158E10 | 1 | 23 SH | SHARED | | 23 | |
| D | PRIMEWEST ENERGY TR | TR UNIT NEW | 74193030 | 264442 | 9743637 SH | SHARED | | 9743637 | |
| D | PRIMEWEST ENERGY TR | TR UNIT NEW | 74193030 | 54 | 2000 SH | SHARED | 20 | | 2000 |
| D | PRINCETON NATL BANCORP INC | COM | 74228210 | 2 | 83 SH | SHARED | | 83 | |
| D | PRINCETON REVIEW INC | COM | 74235210 | 3 | 447 SH | SHARED | | 447 | |
| D | PRINCIPAL FINANCIAL GROUP IN | COM | 74251V10 | 29817 | 433144 SH | SHARED | | 433144 | |
| D | PRINCIPAL FINANCIAL GROUP IN | COM | 74251V10 | 1603 | 23300 SH | SHARED | 01 | 23300 | |
| D | PRINCIPAL FINANCIAL GROUP IN | COM | 74251V10 | 303 | 4414 SH | SHARED | 02 | 4414 | |
| D | PRINCIPAL FINANCIAL GROUP IN | COM | 74251V10 | 5 | 80 SH | SHARED | 05 | 80 | |
| D | PRINCIPAL FINANCIAL GROUP IN | COM | 74251V10 | 182 | 2650 SH | SHARED | 06 | | 2650 |
| D | PRINCIPAL FINANCIAL GROUP IN | COM | 74251V10 | 16122 | 234198 SH | SHARED | 10 | 234198 | |
| D | PRINCIPAL FINANCIAL GROUP IN | COM | 74251V10 | 103 | 1510 SH | SHARED | 21 | | 1510 |
| D | PRINCIPAL FINANCIAL GROUP IN | COM | 74251V10 | 50 | 736 SH | SHARED | 22 | 736 | |
| D | PRINCIPAL FINANCIAL GROUP IN | COM | 74251V10 | 203 | 2951 SH | SHARED | 23 | | 2951 |
| D | PRINTRONIX INC | COM | 74257810 | 2 | 139 SH | SHARED | | 139 | |
| D | PRO-DEX INC COLO | COM | 74265M10 | 0 | 211 SH | SHARED | | 211 | |
| D | PROASSURANCE CORP | DBCV  3.900% 6/3 | 74267CAB | 4059 | 3000000 PRN | SHARED | | 3000000 | |
| D | PROASSURANCE CORP | DBCV  3.900% 6/3 | 74267CAB | 1114 | 824000 PRN | SHARED | 02 | 824000 | |
| D | PROASSURANCE CORP | COM | 74267C10 | 816 | 14875 SH | SHARED | | 14875 | |
| D | PROASSURANCE CORP | COM | 74267C10 | 66 | 1207 SH | SHARED | | 1207 | |
| D | PROASSURANCE CORP | COM | 74267C10 | 207 | 3781 SH | SHARED | 02 | 3781 | |
| D | PROASSURANCE CORP | COM | 74267C10 | 1103 | 20100 SH | SHARED | 10 | 20100 | |
| D | PRO PHARMACEUTICALS INC | COM | 74267I10 | 0 | 813 SH | SHARED | | 813 | |
| D | PROCENTURY CORP | COM | 74268T10 | 28 | 1875 SH | SHARED | | 1875 | |
| D | PROCERA NETWORKS INC | COM | 74271810 | 2 | 1815 SH | SHARED | | 1815 | |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 9390 | 127900 SH | SHARED | | 56418 | 71482 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 374704 | 5103574 SH | SHARED | | 5029602 | 73972 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 65734 | 895324 SH | SHARED | 01 | 613012 | 282312 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 21671 | 295166 SH | SHR/OTHR | 01 | 295166 | |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 46098 | 627871 SH | SHARED | 02 | 627871 | |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 1565 | 21322 SH | SHARED | 04 | | 21322 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 44140 | 601200 SH | SHARED | 04 | 601200 | |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 3298 | 44927 SH | SHARED | 05 | 44927 | |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 23183 | 315772 SH | SHARED | 06 | 315772 | |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 216218 | 2944947 SH | SHARED | 10 | 2836747 | 108200 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 326 | 4449 SH | SHR/OTHR | 10 | | 4449 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 3304 | 45009 SH | SHARED | 14 | 12100 | 32909 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 4772 | 65000 SH | SHARED | 15 | | 65000 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 12291 | 167419 SH | SHARED | 19 | | 167419 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 14281 | 194520 SH | SHARED | 20 | 47392 | 147128 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 23290 | 317219 SH | SHR/OTHR | 20 | | 317219 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 3699 | 50390 SH | SHARED | 21 | 35017 | 15373 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 260 | 3550 SH | SHR/OTHR | 21 | | 3550 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 2413 | 32872 SH | SHARED | 22 | 17352 | 15520 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 974 | 13268 SH | SHR/OTHR | 22 | 13268 | |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 19768 | 269248 SH | SHARED | 23 | 256201 | 13047 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 45821 | 624098 SH | SHR/OTHR | 23 | | 624098 |
| D | PROCTER & GAMBLE CO | COM | 74271810 | 124 | 1691 SH | SHARED | 24 | 1691 | |
| D | PRIVATEBANCORP INC | COM | 74296210 | 30 | 937 SH | SHARED | | 937 | |
| D | PRIVATEBANCORP INC | COM | 74296210 | 267 | 8200 SH | SHARED | 02 | 8200 | |
| D | PRIVATEBANCORP INC | COM | 74296210 | 133 | 4100 SH | SHARED | 10 | 4100 | |
| D | PROGENICS PHARMACEUTICALS IN | COM | 74318710 | 2 | 126 SH | SHARED | | 126 | |
| D | PROGENICS PHARMACEUTICALS IN | COM | 74318710 | 1445 | 80000 SH | SHARED | 04 | 80000 | |
| D | PROGRESS ENERGY INC | COM | 74326310 | 24141 | 498477 SH | SHARED | | 498477 | |
| D | PROGRESS ENERGY INC | COM | 74326310 | 1515 | 31301 SH | SHARED | 01 | 28474 | 2827 |
| D | PROGRESS ENERGY INC | COM | 74326310 | 29 | 600 SH | SHR/OTHR | 01 | | 600 |
| D | PROGRESS ENERGY INC | COM | 74326310 | 4560 | 94161 SH | SHARED | 02 | 94161 | |
| D | PROGRESS ENERGY INC | COM | 74326310 | 6 | 140 SH | SHARED | 03 | 140 | |
| D | PROGRESS ENERGY INC | COM | 74326310 | 134 | 2770 SH | SHARED | 06 | | 2770 |
| D | PROGRESS ENERGY INC | COM | 74326310 | 6003 | 123969 SH | SHARED | 10 | 123969 | |
| D | PROGRESS ENERGY INC | COM | 74326310 | 152 | 3150 SH | SHARED | 21 | 1450 | 1700 |

| D | Name | Type | CUSIP | Col1 | Col2 | SH/PRN | Disc | Code | Shared | Other |
|---|------|------|-------|------|------|--------|------|------|--------|-------|
| D | PROGRESS ENERGY INC | COM | 74326310 | 618 | 12771 | SH | SHARED | 23 | 12771 | |
| D | PROGRESS ENERGY INC | COM | 74326310 | 56 | 1168 | SH | SHR/OTHR | 23 | | 1168 |
| D | PROGRESS SOFTWARE CORP | COM | 74331210 | 354 | 10515 | SH | SHARED | | 10515 | |
| D | PROGRESS SOFTWARE CORP | COM | 74331210 | 20 | 600 | SH | SHARED | 01 | 600 | |
| D | PROGRESS SOFTWARE CORP | COM | 74331210 | 57 | 1700 | SH | SHARED | 02 | 1700 | |
| D | PROGRESS SOFTWARE CORP | COM | 74331210 | 488 | 14500 | SH | SHARED | 10 | 14500 | |
| D | PROGRESSIVE CORP OHIO | COM | 74331510 | 20169 | 1052697 | SH | SHARED | | 1052697 | |
| D | PROGRESSIVE CORP OHIO | COM | 74331510 | 1417 | 74005 | SH | SHARED | 01 | 74005 | |
| D | PROGRESSIVE CORP OHIO | COM | 74331510 | 637 | 33294 | SH | SHARED | 02 | 33294 | |
| D | PROGRESSIVE CORP OHIO | COM | 74331510 | 7 | 400 | SH | SHARED | 05 | 400 | |
| D | PROGRESSIVE CORP OHIO | COM | 74331510 | 132 | 6930 | SH | SHARED | 06 | | 6930 |
| D | PROGRESSIVE CORP OHIO | COM | 74331510 | 11893 | 620744 | SH | SHARED | 10 | 620744 | |
| D | PROGRESSIVE CORP OHIO | COM | 74331510 | 329 | 17200 | SH | SHARED | 14 | | 17200 |
| D | PROGRESSIVE CORP OHIO | COM | 74331510 | 13 | 685 | SH | SHARED | 21 | 685 | |
| D | PROGRESSIVE GAMING INTL CORP | COM | 74332610 | 34 | 13816 | SH | SHARED | | 13816 | |
| D | PROLIANCE INTL INC | COM | 74340R10 | 0 | 358 | SH | SHARED | | 358 | |
| D | PROLOGIS | NOTE 1.875%11/1 | 74341OAR | 72540 | 78000000 | PRN | SHARED | | 8000000 | |
| D | PROLOGIS | NOTE 1.875%11/1 | 74341OAR | 5115 | 5500000 | PRN | SHARED | 02 | 5500000 | |
| D | PROLOGIS | SH BEN INT | 74341010 | 33060 | 521622 | SH | SHARED | | 509022 | 12600 |
| D | PROLOGIS | SH BEN INT | 74341010 | 8706 | 137370 | SH | SHARED | 01 | 126000 | 11370 |
| D | PROLOGIS | SH BEN INT | 74341010 | 502 | 7930 | SH | SHR/OTHR | 01 | | 7930 |
| D | PROLOGIS | SH BEN INT | 74341010 | 4437 | 70019 | SH | SHARED | 02 | 70019 | |
| D | PROLOGIS | SH BEN INT | 74341010 | 9 | 150 | SH | SHARED | 05 | 150 | |
| D | PROLOGIS | SH BEN INT | 74341010 | 48181 | 760200 | SH | SHARED | 10 | 748700 | 11500 |
| D | PROLOGIS | SH BEN INT | 74341010 | 5789115 | 9134033 | SH | SHARED | 11 | 5408135 | 3725898 |
| D | PROLOGIS | SH BEN INT | 74341010 | 877 | 13849 | SH | SHARED | 14 | | 13849 |
| D | PROLOGIS | SH BEN INT | 74341010 | 1043 | 16466 | SH | SHARED | 20 | 15645 | 821 |
| D | PROLOGIS | SH BEN INT | 74341010 | 115 | 1830 | SH | SHR/OTHR | 20 | | 1830 |
| D | PROLOGIS | SH BEN INT | 74341010 | 19 | 309 | SH | SHARED | 22 | | 309 |
| D | PROLOGIS | SH BEN INT | 74341010 | 822 | 12979 | SH | SHARED | 23 | 4779 | 8200 |
| D | PROLOGIS | SH BEN INT | 74341010 | 20 | 323 | SH | SHR/OTHR | 23 | | 323 |
| D | PROS HOLDINGS INC | COM | 74346Y10 | 13 | 711 | SH | SHARED | | 711 | |
| D | PROS HOLDINGS INC | COM | 74346Y10 | 2 | 121 | SH | SHARED | 02 | 121 | |
| D | PROSHARES TR | ULTRASHT DOW30 | 74347886 | 16735 | 333500 | SH | SHARED | | 333500 | |
| D | PROSHARES TR | ULTRASHT SP500 | 74347R88 | 18204 | 336000 | SH | SHARED | | 336000 | |
| D | PROSPECT ACQUISITION CORP | COM | 74347T10 | 385 | 42350 | SH | SHARED | | 42350 | |
| D | PROSPECT ACQUISITION CORP | UNIT 99/99/9999 | 74347T20 | 4680 | 478113 | SH | SHARED | | 478113 | |
| D | PROSPECT CAPITAL CORPORATION | COM | 74348T10 | 161 | 12363 | SH | SHARED | | 12363 | |
| D | PROSPECT CAPITAL CORPORATION | COM | 74348T10 | 32 | 2515 | SH | SHARED | 01 | 2515 | |
| D | PROSPECT CAPITAL CORPORATION | COM | 74348T10 | 1834 | 140605 | SH | SHARED | 10 | 140605 | |
| D | PROSPECT MEDICAL HOLDINGS IN | CL A | 74349410 | 1 | 296 | SH | SHARED | | 296 | |
| D | PROSPECT STR HIGH INCOME PTF | COM NEW | 74358640 | 71 | 26300 | SH | SHARED | | 26300 | |
| D | PROSPERITY BANCSHARES INC | COM | 74360610 | 288 | 9807 | SH | SHARED | | 9807 | |
| D | PROSPERITY BANCSHARES INC | COM | 74360610 | 1173 | 39937 | SH | SHARED | 10 | 39937 | |
| D | PROSPERITY BANCSHARES INC | COM | 74360610 | 52 | 1774 | SH | SHARED | 21 | | 1774 |
| D | PROTECTION ONE INC | COM NEW | 74364360 | 0 | 43 | SH | SHARED | | 43 | |
| D | PROTECTIVE LIFE CORP | COM | 74367410 | 826 | 20145 | SH | SHARED | | 20145 | |
| D | PROTECTIVE LIFE CORP | COM | 74367410 | 1044 | 25475 | SH | SHARED | 01 | 275 | 25200 |
| D | PROTECTIVE LIFE CORP | COM | 74367410 | 656 | 15996 | SH | SHARED | 02 | 15996 | |
| D | PROTECTIVE LIFE CORP | COM | 74367410 | 7914 | 192950 | SH | SHARED | 10 | 192950 | |
| D | PROTEIN DESIGN LABS INC | NOTE 2.750% 8/1 | 74369LAD | 14905 | 14429000 | PRN | SHARED | | 4429000 | |
| D | PROTEIN DESIGN LABS INC | NOTE 2.750% 8/1 | 74369LAD | 10330 | 10000000 | PRN | SHARED | 02 | 0000000 | |
| D | PROTEIN DESIGN LABS INC | NOTE 2.000% 2/1 | 74369LAF | 4850 | 5000000 | PRN | SHARED | | 5000000 | |
| D | PROVIDENCE & WORCESTER RR CO | COM | 74373710 | 1 | 96 | SH | SHARED | | 96 | |
| D | PROVIDENCE SVC CORP | COM | 74381510 | 2 | 83 | SH | SHARED | | 83 | |
| D | PROVIDENCE SVC CORP | COM | 74381510 | 20293 | 721170 | SH | SHARED | 10 | 721170 | |
| D | PROVIDENT BANKSHARES CORP | COM | 74385910 | 583 | 27284 | SH | SHARED | | 27284 | |
| D | PROVIDENT BANKSHARES CORP | COM | 74385910 | 2 | 100 | SH | SHARED | 01 | 100 | |
| D | PROVIDENT BANKSHARES CORP | COM | 74385910 | 2 | 100 | SH | SHARED | 02 | 100 | |
| D | PROVIDENT BANKSHARES CORP | COM | 74385910 | 3497 | 163514 | SH | SHARED | 10 | 163514 | |
| D | PROVIDENT BANKSHARES CORP | COM | 74385910 | 19 | 903 | SH | SHARED | 21 | | 903 |
| D | PROVIDENT ENERGY TR | TR UNIT | 74386K10 | 245 | 24545 | SH | SHARED | | 24545 | |
| D | PROVIDENT ENERGY TR | TR UNIT | 74386K10 | 223 | 22350 | SH | SHR/OTHR | 23 | | 22350 |
| D | PROVIDENT FINL SVCS INC | COM | 74386T10 | 37 | 2593 | SH | SHARED | | 2593 | |
| D | PROVIDENT FINL SVCS INC | COM | 74386T10 | 77 | 5400 | SH | SHARED | 01 | 5400 | |
| D | PROVIDENT FINL SVCS INC | COM | 74386T10 | 71 | 4950 | SH | SHARED | 02 | 4950 | |
| D | PROVIDENT FINL SVCS INC | COM | 74386T10 | 275 | 19100 | SH | SHARED | 10 | 19100 | |
| D | PROVIDENT FINL HLDGS INC | COM | 74386810 | 3 | 183 | SH | SHARED | | 183 | |
| D | PROVIDENT NEW YORK BANCORP | COM | 74402810 | 4 | 357 | SH | SHARED | | 357 | |
| D | PROVIDENT NEW YORK BANCORP | COM | 74402810 | 152 | 11800 | SH | SHARED | 10 | 11800 | |
| D | PROXIM WIRELESS CORP | COM | 74428510 | 0 | 568 | SH | SHARED | | 568 | |
| D | PROXYMED INC | COM NEW | 74429030 | 0 | 335 | SH | SHARED | | 335 | |
| D | PRUDENTIAL BANCORP INC PA | COM | 74431910 | 1 | 89 | SH | SHARED | | 89 | |
| D | PRUDENTIAL FINL INC | FRNT 12/1 | 74320AG | 398 | 400000 | PRN | SHARED | | 400000 | |
| D | PRUDENTIAL FINL INC | FRNT 12/1 | 74320AG | 6623 | 6650000 | PRN | SHARED | 02 | 6650000 | |
| D | PRUDENTIAL FINL INC | COM | 74432010 | 93685 | 1006940 | SH | SHARED | | 1006940 | |
| D | PRUDENTIAL FINL INC | COM | 74432010 | 4509 | 48473 | SH | SHARED | 01 | 48473 | |
| D | PRUDENTIAL FINL INC | COM | 74432010 | 2 | 27 | SH | SHR/OTHR | 01 | | 27 |
| D | PRUDENTIAL FINL INC | COM | 74432010 | 1465 | 15753 | SH | SHARED | 02 | 15753 | |
| D | PRUDENTIAL FINL INC | COM | 74432010 | 4486 | 48220 | SH | SHARED | 04 | 48220 | |
| D | PRUDENTIAL FINL INC | COM | 74432010 | 19 | 210 | SH | SHARED | 05 | 210 | |
| D | PRUDENTIAL FINL INC | COM | 74432010 | 36720 | 394672 | SH | SHARED | 06 | | 394672 |
| D | PRUDENTIAL FINL INC | COM | 74432010 | 29248 | 314361 | SH | SHARED | 10 | 314361 | |
| D | PRUDENTIAL FINL INC | COM | 74432010 | 161 | 1734 | SH | SHARED | 14 | | 1734 |
| D | PRUDENTIAL FINL INC | COM | 74432010 | 1018 | 10950 | SH | SHARED | 15 | | 10950 |
| D | PRUDENTIAL FINL INC | COM | 74432010 | 418 | 4500 | SH | SHARED | 19 | | 4500 |
| D | PRUDENTIAL FINL INC | COM | 74432010 | 19 | 214 | SH | SHARED | 22 | 214 | |
| D | PRUDENTIAL FINL INC | COM | 74432010 | 376 | 4042 | SH | SHARED | 23 | 4042 | |
| D | PRUDENTIAL FINL INC | COM | 74432010 | 618 | 6650 | SH | SHR/OTHR | 23 | | 6650 |
| D | PRUDENTIAL PLC | ADR | 74435K20 | 920 | 32140 | SH | SHARED | | 32140 | |
| D | PRUDENTIAL PLC | ADR | 74435K20 | 14 | 500 | SH | SHARED | 01 | | 500 |
| D | PSYCHEMEDICS CORP | COM NEW | 74437520 | 16 | 1053 | SH | SHARED | | 1053 | |
| D | PT INDOSAT TBK | SPONSORED ADR | 74438310 | 13 | 300 | SH | SHARED | | 300 | |
| D | PT INDOSAT TBK | SPONSORED ADR | 74438310 | 177 | 3800 | SH | SHARED | 01 | 3800 | |
| D | PSYCHIATRIC SOLUTIONS INC | COM | 74439H10 | 1919 | 59047 | SH | SHARED | | 59047 | |
| D | PSYCHIATRIC SOLUTIONS INC | COM | 74439H10 | 1132 | 34860 | SH | SHARED | 01 | 19060 | 15800 |
| D | PSYCHIATRIC SOLUTIONS INC | COM | 74439H10 | 1836 | 56510 | SH | SHARED | 02 | 56510 | |
| D | PSYCHIATRIC SOLUTIONS INC | COM | 74439H10 | 1787 | 55000 | SH | SHARED | 04 | 55000 | |
| D | PSYCHIATRIC SOLUTIONS INC | COM | 74439H10 | 1006 | 30974 | SH | SHARED | 10 | 30974 | |
| D | PSYCHIATRIC SOLUTIONS INC | COM | 74439H10 | 3 | 95 | SH | SHARED | 21 | | 95 |
| D | PUBLIC SVC ENTERPRISE GROUP | COM | 74457310 | 43970 | 447578 | SH | SHARED | | 447578 | |
| D | PUBLIC SVC ENTERPRISE GROUP | COM | 74457310 | 7255 | 73856 | SH | SHARED | 01 | 72756 | 1100 |
| D | PUBLIC SVC ENTERPRISE GROUP | COM | 74457310 | 7277 | 74083 | SH | SHARED | 02 | 74083 | |
| D | PUBLIC SVC ENTERPRISE GROUP | COM | 74457310 | 9 | 100 | SH | SHARED | 05 | 100 | |
| D | PUBLIC SVC ENTERPRISE GROUP | COM | 74457310 | 3818 | 38874 | SH | SHARED | 06 | | 38874 |
| D | PUBLIC SVC ENTERPRISE GROUP | COM | 74457310 | 13759 | 140061 | SH | SHARED | 10 | 140061 | |
| D | PUBLIC SVC ENTERPRISE GROUP | COM | 74457310 | 49 | 500 | SH | SHARED | 22 | 500 | |
| D | PUBLIC SVC ENTERPRISE GROUP | COM | 74457310 | 235 | 2400 | SH | SHARED | 23 | 2300 | 100 |
| D | PUBLIC SVC ENTERPRISE GROUP | COM | 74457310 | 73 | 750 | SH | SHR/OTHR | 23 | | 750 |
| D | PUBLIC STORAGE | COM | 74460D10 | 16342 | 222623 | SH | SHARED | | 215023 | 7600 |
| D | PUBLIC STORAGE | COM | 74460D10 | 1147 | 15635 | SH | SHARED | 01 | 15635 | |
| D | PUBLIC STORAGE | COM | 74460D10 | 55 | 750 | SH | SHR/OTHR | 01 | | 750 |
| D | PUBLIC STORAGE | COM | 74460D10 | 1259 | 17156 | SH | SHARED | 02 | 17156 | |
| D | PUBLIC STORAGE | COM | 74460D10 | 5 | 70 | SH | SHARED | 05 | 70 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | PUBLIC STORAGE | COM | 74460D10 | 18745 | 255356 SH | SHARED | 10 | 248856 | 6500 |
| D | PUBLIC STORAGE | COM | 74460D10 | 227170 | 3094550 SH | SHARED | 11 | 1829808 | 1264742 |
| D | PUBLIC STORAGE | COM A DP1/1000 | 74460D72 | 320 | 12800 SH | SHARED | 11 | | 12800 |
| D | PUGET ENERGY INC NEW | COM | 74531010 | 331 | 12099 SH | SHARED | | 12099 | |
| D | PUGET ENERGY INC NEW | COM | 74531010 | 1072 | 39090 SH | SHARED | 01 | 4090 | 35000 |
| D | PUGET ENERGY INC NEW | COM | 74531010 | 401 | 14650 SH | SHARED | 02 | 14650 | |
| D | PUGET ENERGY INC NEW | COM | 74531010 | 120 | 4400 SH | SHARED | 10 | 4400 | |
| D | PULASKI FINL CORP | COM | 74554010 | 2 | 225 SH | SHARED | | 225 | |
| D | PULTE HOMES INC | COM | 74586710 | 22836 | 2166679 SH | SHARED | | 2166679 | |
| D | PULTE HOMES INC | COM | 74586710 | 294 | 27916 SH | SHARED | 01 | 27916 | |
| D | PULTE HOMES INC | COM | 74586710 | 3256 | 308946 SH | SHARED | 02 | 308946 | |
| D | PULTE HOMES INC | COM | 74586710 | 17 | 1690 SH | SHARED | 06 | | 1690 |
| D | PULTE HOMES INC | COM | 74586710 | 995 | 94438 SH | SHARED | 10 | 94438 | |
| D | PULTE HOMES INC | COM | 74586710 | 59 | 5600 SH | SHARED | 20 | | 5600 |
| D | PURECYCLE CORP | COM NEW | 74622830 | 3 | 434 SH | SHARED | | 434 | |
| D | PURECYCLE CORP | COM NEW | 74622830 | 46 | 6096 SH | SHARED | | 6096 | |
| D | PUTNAM HIGH INCOME SEC FUND | SHS BEN INT | 74677910 | 696 | 86682 SH | SHARED | | 86682 | |
| D | PUTNAM MANAGED MUN INCOM TR | COM | 74682310 | 13 | 2003 SH | SHARED | | 2003 | |
| D | PUTNAM MUN BD FD INC | SH BEN INT | 74683V10 | 3 | 296 SH | SHARED | | 296 | |
| D | PUTNAM PREMIER INCOME TR | SH BEN INT | 74685310 | 1363 | 219883 SH | SHARED | | 219883 | |
| D | QIMONDA AG | SPONSORED ADR | 74690410 | 18 | 2610 SH | SHARED | | 2610 | |
| D | PUTNAM MASTER INTER INCOME T | SH BEN INT | 74690910 | 782 | 123772 SH | SHARED | | 123772 | |
| D | PUTNAM MUN OPPORTUNITIES TR | SH BEN INT | 74692210 | 0 | 65 SH | SHARED | | 65 | |
| D | QLT INC | NOTE  3.000% 9/1 | 74692 7AB | 6043 | 6250000 PRN | SHARED | | 6250000 | |
| D | QLT INC | COM | 74692710 | 6638 | 1501864 SH | SHARED | | 1501864 | |
| D | PYRAMID BREWERIES INC | COM | 74713510 | 0 | 168 SH | SHARED | | 168 | |
| D | PYRAMID OIL CO | COM | 74721510 | 0 | 43 SH | SHARED | | 43 | |
| D | QCR HOLDINGS INC | COM | 74727A10 | 1 | 111 SH | SHARED | | 111 | |
| D | QAD INC | COM | 74727D10 | 19 | 2125 SH | SHARED | 02 | 2125 | |
| D | Q E P INC | COM | 74727K10 | 0 | 48 SH | SHARED | | 48 | |
| D | QLOGIC CORP | COM | 74727710 | 2456 | 173002 SH | SHARED | | 160002 | 13000 |
| D | QLOGIC CORP | COM | 74727710 | 281 | 19795 SH | SHARED | 01 | 19795 | |
| D | QLOGIC CORP | COM | 74727710 | 1981 | 139536 SH | SHARED | 02 | 139536 | |
| D | QLOGIC CORP | COM | 74727710 | 4406 | 310318 SH | SHARED | 10 | 278218 | 32100 |
| D | QLOGIC CORP | COM | 74727710 | 74 | 5237 SH | SHARED | 14 | | 5237 |
| D | QC HLDGS INC | COM | 74729710 | 5 | 484 SH | SHARED | | 484 | |
| D | QUADRAMED CORP | COM | 74730W10 | 1 | 1041 SH | SHARED | | 1041 | |
| D | PZENA INVESTMENT MGMT INC | CLASS A | 74731Q10 | 1 | 92 SH | SHARED | | 92 | |
| D | QUAKER CHEM CORP | COM | 74731610 | 7 | 354 SH | SHARED | | 354 | |
| D | QUAKER CHEM CORP | COM | 74731610 | 28 | 1300 SH | SHARED | 02 | 1300 | |
| D | QUALCOMM INC | COM | 74752510 | 2704 | 68718 SH | SHARED | | 50119 | 18599 |
| D | QUALCOMM INC | COM | 74752510 | 41 | 1064 SH | SHR/OTHR | | | 1064 |
| D | QUALCOMM INC | COM | 74752510 | 114661 | 2913880 SH | SHARED | | 2910645 | 3235 |
| D | QUALCOMM INC | COM | 74752510 | 25943 | 659306 SH | SHARED | 01 | 477765 | 181541 |
| D | QUALCOMM INC | COM | 74752510 | 6907 | 175552 SH | SHR/OTHR | 01 | | 175552 |
| D | QUALCOMM INC | COM | 74752510 | 2732 | 69431 SH | SHARED | 02 | 69431 | |
| D | QUALCOMM INC | COM | 74752510 | 770 | 19568 SH | SHARED | 04 | | 19568 |
| D | QUALCOMM INC | COM | 74752510 | 6138 | 156000 SH | SHARED | 04 | 156000 | |
| D | QUALCOMM INC | COM | 74752510 | 28 | 720 SH | SHARED | 05 | 720 | |
| D | QUALCOMM INC | COM | 74752510 | 645 | 16400 SH | SHARED | 06 | | 16400 |
| D | QUALCOMM INC | COM | 74752510 | 126486 | 3214383 SH | SHARED | 10 | 3119763 | 94620 |
| D | QUALCOMM INC | COM | 74752510 | 3442 | 87494 SH | SHARED | 14 | 87494 | |
| D | QUALCOMM INC | COM | 74752510 | 2675 | 68000 SH | SHARED | 14 | | 68000 |
| D | QUALCOMM INC | COM | 74752510 | 6054 | 153869 SH | SHARED | 19 | | 153869 |
| D | QUALCOMM INC | COM | 74752510 | 4374 | 111180 SH | SHARED | 20 | 45805 | 65375 |
| D | QUALCOMM INC | COM | 74752510 | 1118 | 28425 SH | SHR/OTHR | 20 | | 28425 |
| D | QUALCOMM INC | COM | 74752510 | 251 | 6404 SH | SHARED | 21 | 6404 | |
| D | QUALCOMM INC | COM | 74752510 | 66 | 1700 SH | SHR/OTHR | 21 | | 1700 |
| D | QUALCOMM INC | COM | 74752510 | 1678 | 42659 SH | SHARED | 22 | 34209 | 8450 |
| D | QUALCOMM INC | COM | 74752510 | 661 | 16814 SH | SHR/OTHR | 22 | | 16814 |
| D | QUALCOMM INC | COM | 74752510 | 4960 | 126056 SH | SHARED | 23 | 109881 | 16175 |
| D | QUALCOMM INC | COM | 74752510 | 4837 | 122925 SH | SHR/OTHR | 23 | | 122925 |
| D | QUALCOMM INC | COM | 74752510 | 80 | 2046 SH | SHARED | 24 | 2046 | |
| D | QUALITY DISTR INC FLA | COM | 74756M10 | 1 | 319 SH | SHARED | | 319 | |
| D | QUALSTAR CORP | COM | 74758R10 | 0 | 196 SH | SHARED | | 196 | |
| D | QUALITY SYS INC | COM | 74758210 | 222 | 7305 SH | SHARED | | 7305 | |
| D | QUALITY SYS INC | COM | 74758210 | 54 | 1775 SH | SHARED | 02 | 1775 | |
| D | QUALITY SYS INC | COM | 74758210 | 3716 | 121900 SH | SHARED | 04 | 121900 | |
| D | QUALITY SYS INC | COM | 74758210 | 3016 | 98931 SH | SHARED | 10 | 98931 | |
| D | QUALITY SYS INC | COM | 74758210 | 88 | 2900 SH | SHARED | 14 | 2900 | |
| D | QUANTA SVCS INC | SDCV  4.500%10/0 | 74762EAC | 2625 | 1100000 PRN | SHARED | | 1100000 | |
| D | QUANTA SVCS INC | SDCV  4.500%10/0 | 74762EAC | 41736 | 17485008 PRN | SHARED | 02 | 7485008 | |
| D | QUANTA SVCS INC | NOTE  3.750% 4/3 | 74762EAE | 1347 | 991000 PRN | SHARED | 02 | 991000 | |
| D | QUANTA SVCS INC | COM | 74762810 | 2580 | 98351 SH | SHARED | | 98351 | |
| D | QUANTA SVCS INC | COM | 74762810 | 1468 | 55950 SH | SHARED | 01 | 4950 | 51000 |
| D | QUANTA SVCS INC | COM | 74762810 | 330 | 12580 SH | SHARED | 02 | 12580 | |
| D | QUANTA SVCS INC | COM | 74762810 | 411 | 15697 SH | SHARED | 10 | 15697 | |
| D | QUANEX CORP | DBCV  2.500% 5/1 | 74762OAE | 4967 | 2415000 PRN | SHARED | | 2415000 | |
| D | QUANEX CORP | COM | 74762010 | 4761 | 91743 SH | SHARED | | 91743 | |
| D | QUANEX CORP | COM | 74762010 | 36 | 700 SH | SHARED | 01 | 700 | |
| D | QUANEX CORP | COM | 74762010 | 1320 | 25450 SH | SHARED | 10 | 25450 | |
| D | QUANTUM FUEL SYS TECH WORLDW | COM | 74765810 | 0 | 2029 SH | SHARED | | 2029 | |
| D | QUANTUM GROUP INC | COM NEW | 74765L20 | 0 | 39 SH | SHARED | | 39 | |
| D | QUANTUM CORP | COM DSSG | 74765010 | 50 | 18906 SH | SHARED | | 18906 | |
| D | QUANTUM CORP | COM DSSG | 74790620 | 173 | 64500 SH | SHARED | 10 | 64500 | |
| D | Q MED | COM | 74791410 | 0 | 331 SH | SHARED | | 331 | |
| D | QUEBECOR WORLD INC | COM NON-VTG | 74793410 | 139 | 77693 SH | SHARED | | 77693 | |
| D | QUEPASA CORP | COM NEW | 74833W20 | 0 | 267 SH | SHARED | | 267 | |
| D | QUEST DIAGNOSTICS INC | COM | 74834L10 | 10403 | 196660 SH | SHARED | | 196660 | |
| D | QUEST DIAGNOSTICS INC | COM | 74834L10 | 1621 | 30646 SH | SHARED | 01 | 20016 | 10630 |
| D | QUEST DIAGNOSTICS INC | COM | 74834L10 | 153 | 2900 SH | SHR/OTHR | 01 | | 2900 |
| D | QUEST DIAGNOSTICS INC | COM | 74834L10 | 472 | 8933 SH | SHARED | 02 | 8933 | |
| D | QUEST DIAGNOSTICS INC | COM | 74834L10 | 117892 | 2228594 SH | SHARED | 04 | 2228594 | |
| D | QUEST DIAGNOSTICS INC | COM | 74834L10 | 4154 | 78530 SH | SHARED | 06 | | 78530 |
| D | QUEST DIAGNOSTICS INC | COM | 74834L10 | 9031 | 170726 SH | SHARED | 10 | 170726 | |
| D | QUEST DIAGNOSTICS INC | COM | 74834L10 | 899 | 17000 SH | SHARED | 14 | 17000 | |
| D | QUEST DIAGNOSTICS INC | COM | 74834L10 | 4602 | 87000 SH | SHARED | 15 | | 87000 |
| D | QUEST DIAGNOSTICS INC | COM | 74834L10 | 3706 | 70072 SH | SHARED | 16 | 70072 | |
| D | QUEST DIAGNOSTICS INC | COM | 74834L10 | 1848 | 34941 SH | SHARED | 20 | 13306 | 21635 |
| D | QUEST DIAGNOSTICS INC | COM | 74834L10 | 1305 | 24670 SH | SHARED | 20 | | 24670 |
| D | QUEST DIAGNOSTICS INC | COM | 74834L10 | 26 | 500 SH | SHR/OTHR | 22 | | 500 |
| D | QUEST DIAGNOSTICS INC | COM | 74834L10 | 1288 | 24350 SH | SHARED | 23 | 23750 | 600 |
| D | QUEST DIAGNOSTICS INC | COM | 74834L10 | 1698 | 32100 SH | SHR/OTHR | 23 | | 32100 |
| D | QUEST SOFTWARE INC | COM | 74834T10 | 6630 | 359574 SH | SHARED | | 359574 | |
| D | QUEST SOFTWARE INC | COM | 74834T10 | 55 | 3025 SH | SHARED | 02 | 3025 | |
| D | QUEST SOFTWARE INC | COM | 74834T10 | 553 | 30000 SH | SHARED | 04 | 30000 | |
| D | QUEST SOFTWARE INC | COM | 74834T10 | 315 | 17100 SH | SHARED | 10 | 17100 | |
| D | QUEST RESOURCE CORP | COM NEW | 74834930 | 5 | 785 SH | SHARED | | 785 | |
| D | QUESTCOR PHARMACEUTICALS INC | COM | 74835Y10 | 20 | 3627 SH | SHARED | | 3627 | |
| D | QUESTAR CORP | COM | 74835610 | 9575 | 176997 SH | SHARED | | 176997 | |
| D | QUESTAR CORP | COM | 74835610 | 1158 | 21420 SH | SHARED | 01 | 21420 | |
| D | QUESTAR CORP | COM | 74835610 | 333 | 6170 SH | SHARED | 02 | 6170 | |
| D | QUESTAR CORP | COM | 74835610 | 82 | 1520 SH | SHARED | 06 | | 1520 |
| D | QUESTAR CORP | COM | 74835610 | 6072 | 112246 SH | SHARED | 10 | 112246 | |

| | Issuer | Class | CUSIP | Value | Amount | SH/PRN | Discretion | Mgr | Sole | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|---|
| D | QUESTAR CORP | COM | 74835610 | 173 | 3200 | SH | SHARED | 23 | | | 3200 |
| D | QUEST ENERGY PARTNERS L P | COM UNIT LP IN | 74836B20 | 2372 | 159137 | SH | SHARED | | | 159137 | |
| D | QUICKLOGIC CORP | COM | 74837P10 | 2 | 758 | SH | SHARED | | | 758 | |
| D | QUICKSILVER RESOURCES INC | DBCV 1.875%11/0 | 74837RA8 | 58725 | 29000000 | PRN | SHARED | | | 9000000 | |
| D | QUICKSILVER RESOURCES INC | COM | 74837R10 | 3062 | 51392 | SH | SHARED | | | 51392 | |
| D | QUICKSILVER RESOURCES INC | COM | 74837R10 | 2675 | 44900 | SH | SHARED | 01 | | 27600 | 17300 |
| D | QUICKSILVER RESOURCES INC | COM | 74837R10 | 155 | 2609 | SH | SHARED | 02 | | 2609 | |
| D | QUICKSILVER RESOURCES INC | COM | 74837R10 | 1961 | 32909 | SH | SHARED | 10 | | 32909 | |
| D | QUICKSILVER RESOURCES INC | COM | 74837R10 | 8 | 150 | SH | SHARED | 21 | | 150 | |
| D | QUIKSILVER INC | COM | 74838C10 | 158 | 18493 | SH | SHARED | | | 18493 | |
| D | QUIKSILVER INC | COM | 74838C10 | 18 | 2180 | SH | SHARED | 01 | | 2180 | |
| D | QUIKSILVER INC | COM | 74838C10 | 3045 | 354956 | SH | SHARED | 10 | | 354956 | |
| D | QUIDEL CORP | COM | 74838J10 | 335 | 17252 | SH | SHARED | | | 17252 | |
| D | QUIDEL CORP | COM | 74838J10 | 33 | 1700 | SH | SHARED | 01 | | 1700 | |
| D | QUIDEL CORP | COM | 74838J10 | 1 | 88 | SH | SHARED | 02 | | 88 | |
| D | QUIDEL CORP | COM | 74838J10 | 1686 | 86600 | SH | SHARED | | | 86600 | |
| D | QUIGLEY CORP | COM NEW | 74838L30 | 6 | 1400 | SH | SHARED | | | 1400 | |
| D | QUILMES INDL QUINSA SOCIETE | SP ADR CL B | 74838Y20 | 38 | 472 | SH | SHARED | | | 472 | |
| D | QUICKSILVER GAS SVCS LP | COM UNITS LPI | 74839G10 | 9754 | 389885 | SH | SHARED | | | 389885 | |
| D | QUIPP INC | COM | 74880Z10 | 0 | 28 | SH | SHARED | | | 28 | |
| D | QUIXOTE CORP | COM | 74905610 | 4 | 237 | SH | SHARED | | | 237 | |
| D | QWEST COMMUNICATIONS INTL IN | NOTE 3.500%11/1 | 749121BY | 4440 | 3331000 | PRN | SHARED | | | 3331000 | |
| D | QWEST COMMUNICATIONS INTL IN | NOTE 3.500%11/1 | 749121BY | 31325 | 23500000 | PRN | SHARED | 02 | | 3500000 | |
| D | QWEST COMMUNICATIONS INTL IN | COM | 74912110 | 112 | 15987 | SH | SHARED | | | 15987 | |
| D | QWEST COMMUNICATIONS INTL IN | COM | 74912110 | 14097 | 2011088 | SH | SHARED | | | 2011088 | |
| D | QWEST COMMUNICATIONS INTL IN | COM | 74912110 | 997 | 142320 | SH | SHARED | 01 | | 142320 | |
| D | QWEST COMMUNICATIONS INTL IN | COM | 74912110 | 101 | 14500 | SH | SHR/OTHR | 01 | | | 14500 |
| D | QWEST COMMUNICATIONS INTL IN | COM | 74912110 | 4023 | 573938 | SH | SHARED | 02 | | 573938 | |
| D | QWEST COMMUNICATIONS INTL IN | COM | 74912110 | 133 | 18978 | SH | SHARED | 04 | | 18978 | |
| D | QWEST COMMUNICATIONS INTL IN | COM | 74912110 | 14020 | 2000000 | SH | SHARED | 04 | | 2000000 | |
| D | QWEST COMMUNICATIONS INTL IN | COM | 74912110 | 5 | 800 | SH | SHARED | 05 | | 800 | |
| D | QWEST COMMUNICATIONS INTL IN | COM | 74912110 | 114 | 16290 | SH | SHARED | 06 | | 16290 | |
| D | QWEST COMMUNICATIONS INTL IN | COM | 74912110 | 5227 | 745721 | SH | SHARED | 10 | | 745721 | |
| D | QWEST COMMUNICATIONS INTL IN | COM | 74912110 | 39 | 5644 | SH | SHARED | 14 | | 5644 | |
| D | QWEST COMMUNICATIONS INTL IN | COM | 74912110 | 1191 | 170000 | SH | SHARED | 15 | | 170000 | |
| D | QWEST COMMUNICATIONS INTL IN | COM | 74912110 | 177 | 25319 | SH | SHARED | 19 | | 25319 | |
| D | RAIT FINANCIAL TRUST | COM | 74922710 | 169 | 19709 | SH | SHARED | | | 19709 | |
| D | RAIT FINANCIAL TRUST | COM | 74922710 | 160 | 18645 | SH | SHARED | | | 18645 | |
| D | RAIT FINANCIAL TRUST | COM | 74922710 | 4310 | 500000 | SH | SHARED | 02 | | 500000 | |
| D | RAIT FINANCIAL TRUST | COM | 74922710 | 96 | 11200 | SH | SHARED | 10 | | 11200 | |
| D | RCM TECHNOLOGIES INC | COM | 74936040 | 4 | 723 | SH | SHARED | | | 723 | |
| D | RCN CORP | COM NEW | 74936120 | 12023 | 771228 | SH | SHARED | | | 771228 | |
| D | RCN CORP | COM | 74936120 | 14 | 950 | SH | SHARED | 02 | | 950 | |
| D | RCN CORP | COM NEW | 74936120 | 20 | 1300 | SH | SHARED | 10 | | 1300 | |
| D | RC2 CORP | COM | 74938810 | 23 | 836 | SH | SHARED | | | 836 | |
| D | RC2 CORP | COM | 74938810 | 70 | 2500 | SH | SHARED | 02 | | 2500 | |
| D | RC2 CORP | COM | 74938810 | 240 | 8574 | SH | SHARED | 10 | | 8574 | |
| D | RF MONOLITHICS INC | COM | 74955P10 | 1 | 240 | SH | SHARED | | | 240 | |
| D | RGC RES INC | COM | 74955L10 | 1 | 56 | SH | SHARED | | | 56 | |
| D | R H DONNELLEY CORP | COM NEW | 74955W30 | 18036 | 494431 | SH | SHARED | | | 494431 | |
| D | R H DONNELLEY CORP | COM NEW | 74955W30 | 105 | 2896 | SH | SHARED | 01 | | 1384 | 1512 |
| D | R H DONNELLEY CORP | COM NEW | 74955W30 | 310 | 8500 | SH | SHARED | 02 | | 8500 | |
| D | R H DONNELLEY CORP | COM NEW | 74955W30 | 13947 | 382346 | SH | SHARED | 10 | | 382346 | |
| D | R H DONNELLEY CORP | COM NEW | 74955W30 | 3 | 100 | SH | SHARED | 20 | | 100 | |
| D | R H DONNELLEY CORP | COM NEW | 74955W30 | 715 | 19600 | SH | SHARED | 23 | | 19600 | |
| D | RF INDS LTD | COM PAR $0.01 | 74955210 | 0 | 74 | SH | SHARED | | | 74 | |
| D | RLI CORP | COM | 74960710 | 352 | 6200 | SH | SHARED | | | 6200 | |
| D | RLI CORP | COM | 74960710 | 62 | 1100 | SH | SHARED | 01 | | 1100 | |
| D | RLI CORP | COM | 74960710 | 22 | 402 | SH | SHARED | 02 | | 402 | |
| D | RLI CORP | COM | 74960710 | 940 | 16569 | SH | SHARED | 10 | | 16569 | |
| D | RMK HIGH INCOME FD INC | COM SHS | 74963B10 | 347 | 75600 | SH | SHARED | | | 75600 | |
| D | RMR REAL ESTATE FD | SH BEN INT | 74963F10 | 2204 | 199859 | SH | SHARED | | | 199859 | |
| D | RMR HOSPITALITY REAL ESTATE | COM | 74963J10 | 987 | 68690 | SH | SHARED | | | 68690 | |
| D | RMK ADVANTAGE INCOME FD INC | COM | 74963L10 | 372 | 82700 | SH | SHARED | | | 82700 | |
| D | RPC INC | COM | 74966010 | 5130 | 438103 | SH | SHARED | | | 438103 | |
| D | RPC INC | COM | 74966010 | 79 | 6820 | SH | SHARED | 01 | | 6820 | |
| D | RPC INC | COM | 74966010 | 12492 | 1066800 | SH | SHARED | 10 | | 1066800 | |
| D | RPM INTL INC | COM | 74968510 | 996 | 49097 | SH | SHARED | | | 49097 | |
| D | RPM INTL INC | COM | 74968510 | 1100 | 54200 | SH | SHARED | 01 | | 16000 | 38200 |
| D | RPM INTL INC | COM | 74968510 | 116 | 5750 | SH | SHARED | 02 | | 5750 | |
| D | RPM INTL INC | COM | 74968510 | 172 | 8500 | SH | SHARED | 10 | | 8500 | |
| D | RSC HOLDINGS INC | COM | 74972L10 | 66 | 5313 | SH | SHARED | | | 5313 | |
| D | RSC HOLDINGS INC | COM | 74972L10 | 66 | 5300 | SH | SHARED | 01 | | 5300 | |
| D | RSC HOLDINGS INC | COM | 74972L10 | 547 | 43600 | SH | SHARED | 02 | | 43600 | |
| D | RTI INTL METALS INC | COM | 74973W10 | 142773 | 2071277 | SH | SHARED | | | 2071277 | |
| D | RTI INTL METALS INC | COM | 74973W10 | 1364 | 19800 | SH | SHARED | 01 | | 19700 | 100 |
| D | RTI INTL METALS INC | COM | 74973W10 | 1102 | 16000 | SH | SHR/OTHR | 01 | | | 16000 |
| D | RTI INTL METALS INC | COM | 74973W10 | 41878 | 607550 | SH | SHARED | 10 | | 607550 | |
| D | RF MICRODEVICES INC | NOTE 0.750% 4/1 | 74994IAG | 10844 | 11500000 | PRN | SHARED | | | 1500000 | |
| D | RF MICRODEVICES INC | NOTE 1.000% 4/1 | 74994IAJ | 2778 | 3030000 | PRN | SHARED | | | 3030000 | |
| D | RF MICRODEVICES INC | NOTE 1.000% 4/1 | 74994IAJ | 1678 | 1830000 | PRN | SHARED | 02 | | 1830000 | |
| D | RF MICRODEVICES INC | COM | 74994110 | 8708 | 1525106 | SH | SHARED | | | 1525106 | |
| D | RF MICRODEVICES INC | COM | 74994110 | 666 | 116760 | SH | SHARED | 01 | | 22160 | 94600 |
| D | RF MICRODEVICES INC | COM | 74994110 | 194 | 34030 | SH | SHARED | 02 | | 34030 | |
| D | RF MICRODEVICES INC | COM | 74994110 | 2547 | 446200 | SH | SHARED | 10 | | 446200 | |
| D | RACKABLE SYS INC | COM | 75007710 | 22 | 2219 | SH | SHARED | | | 2219 | |
| D | RADIAN GROUP INC | COM | 75023610 | 473 | 40559 | SH | SHARED | | | 40559 | |
| D | RADIAN GROUP INC | COM | 75023610 | 703 | 60200 | SH | SHARED | 01 | | 31700 | 28500 |
| D | RADIAN GROUP INC | COM | 75023610 | 44 | 3809 | SH | SHARED | 02 | | 3809 | |
| D | RADIAN GROUP INC | COM | 75023610 | 12 | 1100 | SH | SHARED | 10 | | 1100 | |
| D | RADIANT SYSTEMS INC | COM | 75025N10 | 32 | 1900 | SH | SHARED | | | 1900 | |
| D | RADIANT SYSTEMS INC | COM | 75025N10 | 56 | 3300 | SH | SHARED | 02 | | 3300 | |
| D | RADIATION THERAPY SVCS INC | COM | 75032320 | 1 | 38 | SH | SHARED | | | 38 | |
| D | RADIO ONE INC | CL A | 75040P10 | 0 | 1 | SH | SHARED | 01 | | 1 | |
| D | RADIO ONE INC | CL D NON VTG | 75040P40 | 190 | 80519 | SH | SHARED | | | 80519 | |
| D | RADIO ONE INC | CL D NON VTG | 75040P40 | 65 | 27700 | SH | SHARED | 10 | | 27700 | |
| D | RADIO ONE INC | CL D NON VTG | 75040P40 | 298 | 126000 | SH | SHARED | 14 | | 126000 | |
| D | RADIOSHACK CORP | COM | 75043810 | 7240 | 429430 | SH | SHARED | | | 255630 | 173800 |
| D | RADIOSHACK CORP | COM | 75043810 | 681 | 40395 | SH | SHARED | 01 | | 40395 | |
| D | RADIOSHACK CORP | COM | 75043810 | 2300 | 136450 | SH | SHARED | 02 | | 136450 | |
| D | RADIOSHACK CORP | COM | 75043810 | 11 | 700 | SH | SHARED | 06 | | 700 | |
| D | RADIOSHACK CORP | COM | 75043810 | 50045 | 2968268 | SH | SHARED | 10 | | 2943468 | 24800 |
| D | RADIOSHACK CORP | COM | 75043810 | 281 | 16670 | SH | SHARED | 14 | | 16670 | |
| D | RADISYS CORP | COM | 75045910 | 44 | 3312 | SH | SHARED | | | 3312 | |
| D | RADNET INC | COM | 75049110 | 21 | 2120 | SH | SHARED | | | 2120 | |
| D | RADNET INC | COM | 75049110 | 198 | 19600 | SH | SHARED | 02 | | 19600 | |
| D | RAE SYS INC | COM | 75061D10 | 11 | 4127 | SH | SHARED | | | 4127 | |
| D | RADYNE CORP | COM NEW | 75061140 | 839 | 91301 | SH | SHARED | | | 91301 | |
| D | RAINING DATA CORP | COM | 75087R10 | 1 | 214 | SH | SHARED | | | 214 | |
| D | RAINIER PAC FINL GROUP INC | COM | 75087T10 | 2 | 148 | SH | SHARED | | | 148 | |
| D | RAINMAKER SYSTEMS | COM | 75087530 | 159 | 24558 | SH | SHARED | | | 24558 | |
| D | RAMBUS INC DEL | NOTE 2/0 | 75091AB | 8228 | 7785000 | PRN | SHARED | | | 7785000 | |
| D | RAMBUS INC DEL | COM | 75091710 | 1745 | 83349 | SH | SHARED | | | 83349 | |
| D | RAMBUS INC DEL | COM | 75091710 | 23 | 1100 | SH | SHARED | 01 | | 1100 | |

```
D RAMBUS INC DEL                     COM              75091710       20     1000 SH   SHR/OTHR   01                1000
D RAMBUS INC DEL                     COM              75091710      265    12700 SH   SHARED     02        12700
D RAMBUS INC DEL                     COM              75091710      113     5400 SH   SHARED     10         5400
D RALCORP HLDGS INC NEW              COM              75102810     6869   113008 SH   SHARED               113008
D RALCORP HLDGS INC NEW              COM              75102810       50      825 SH   SHARED     01          825
D RALCORP HLDGS INC NEW              COM              75102810    32066   527500 SH   SHARED     10       527500
D RALCORP HLDGS INC NEW              COM              75102810       61     1008 SH   SHARED     23                1008
D RALCORP HLDGS INC NEW              COM              75102810        8      133 SH   SHR/OTHR   23                 133
D RAM ENERGY RESOURCES INC           COM              75130P10        3      649 SH   SHARED                  649
D RAMCO-GERSHENSON PPTYS TR          COM SH BEN INT   75145220       89     4200 SH   SHARED                 4200
D RAMCO-GERSHENSON PPTYS TR          COM SH BEN INT   75145220      102     4800 SH   SHARED     10         4800
D RAMCO-GERSHENSON PPTYS TR          COM SH BEN INT   75145220    19713   922500 SH   SHARED     11       922500          922500
D RAMTRON INTL CORP                  COM NEW          75190730        2      511 SH   SHARED                  511
D RANDGOLD RES LTD                   ADR              75234430      888    23924 SH   SHARED                23924
D RANDGOLD RES LTD                   ADR              75234430      742    20000 SH   SHARED     04        20000
D RANDGOLD RES LTD                   ADR              75234430    27609   743601 SH   SHARED     10       743601
D RANGE RES CORP                     COM              75281A10     8161   158904 SH   SHARED               158904
D RANGE RES CORP                     COM              75281A10       20      400 SH   SHARED     01          400
D RANGE RES CORP                     COM              75281A10      451     8791 SH   SHARED     02         8791
D RANGE RES CORP                     COM              75281A10       92     1800 SH   SHARED     06         1800           1800
D RANGE RES CORP                     COM              75281A10     5059    98514 SH   SHARED     10        98514
D RASER TECHNOLOGIES INC             COM              75405510        1       99 SH   SHARED                   99
D RAVEN INDS INC                     COM              75421210      200     5215 SH   SHARED                 5215
D RAYMOND JAMES FINANCIAL INC        COM              75473010     2858    87524 SH   SHARED                87524
D RAYMOND JAMES FINANCIAL INC        COM              75473010     1157    35450 SH   SHARED     01         6525          28925
D RAYMOND JAMES FINANCIAL INC        COM              75473010      178     5456 SH   SHARED     02         5456
D RAYMOND JAMES FINANCIAL INC        COM              75473010      269     8241 SH   SHARED     10         8241
D RAYMOND JAMES FINANCIAL INC        COM              75473010       83     2545 SH   SHARED     21                2545
D RAYMOND JAMES FINANCIAL INC        COM              75473010      156     4800 SH   SHARED     23         4800
D RAYONIER INC                       COM              75490710       30      642 SH   SHARED                  642
D RAYONIER INC                       COM              75490710     7767   164427 SH   SHARED               164427
D RAYONIER INC                       COM              75490710     1271    26917 SH   SHARED     01         2506          24411
D RAYONIER INC                       COM              75490710     1554    32897 SH   SHARED     02        32897
D RAYONIER INC                       COM              75490710    12460   263778 SH   SHARED     04       263778
D RAYONIER INC                       COM              75490710    16224   343447 SH   SHARED     05       343447
D RAYONIER INC                       COM              75490710      620    13139 SH   SHARED     06        13139          13139
D RAYONIER INC                       COM              75490710      714    15122 SH   SHARED     10        15122
D RAYTHEON CO                        *W EXP 06/16/201 75511111     3048   120966 SH   SHARED     02       120966
D RAYTHEON CO                        *W EXP 06/16/201 75511111        3      133 SH   SHARED     10          133
D RAYTHEON CO                        COM NEW          75511150      408     6737 SH   SHARED                 1537           5200
D RAYTHEON CO                        COM NEW          75511150    59781   984873 SH   SHARED               984873
D RAYTHEON CO                        COM NEW          75511150     3655    60225 SH   SHARED     01        58104           2121
D RAYTHEON CO                        COM NEW          75511150     1871    30832 SH   SHARED     02        30832
D RAYTHEON CO                        COM NEW          75511150        4       70 SH   SHARED     05           70
D RAYTHEON CO                        COM NEW          75511150    23352   384718 SH   SHARED     06       384718         384718
D RAYTHEON CO                        COM NEW          75511150    18956   312298 SH   SHARED     10       312298
D RAYTHEON CO                        COM NEW          75511150      238     3927 SH   SHARED     14         3927           3927
D RAYTHEON CO                        COM NEW          75511150     5282    87025 SH   SHARED     16        87025
D RAYTHEON CO                        COM NEW          75511150       13      225 SH   SHARED     20          225
D RAYTHEON CO                        COM NEW          75511150       54      900 SH   SHARED     21          900
D RAYTHEON CO                        COM NEW          75511150       18      300 SH   SHARED     22          300
D RAYTHEON CO                        COM NEW          75511150       91     1500 SH   SHR/OTHR   22                1500
D RAYTHEON CO                        COM NEW          75511150      381     6285 SH   SHARED     23         6248             37
D RAYTHEON CO                        COM NEW          75511150      501     8269 SH   SHR/OTHR   23                8269
D RBC BEARINGS INC                   COM              75524B10       28      666 SH   SHARED                  666
D RBC BEARINGS INC                   COM              75524B10     2173    50000 SH   SHARED     10        50000
D READING INTERNATIONAL INC          CL A             75540810        4      424 SH   SHARED                  424
D READY MIX INC                      COM              75574710        2      335 SH   SHARED                  335
D REALNETWORKS INC                   NOTE       7/0   75605LAB       98   100000 PRN  SHARED     02       100000
D REALNETWORKS INC                   COM              75605L10       87    14289 SH   SHARED                14289
D REALNETWORKS INC                   COM              75605L10      121    20000 SH   SHARED     04        20000          20000
D REALNETWORKS INC                   COM              75605L10      320    52656 SH   SHARED     10        52656
D REALTY INCOME CORP                 COM              75610910     3299   122102 SH   SHARED               122102
D REALTY INCOME CORP                 COM              75610910      862    31925 SH   SHARED     01         1925          30000
D REALTY INCOME CORP                 COM              75610910      129     4787 SH   SHARED     02         4787
D REALTY INCOME CORP                 COM              75610910     3012   111500 SH   SHARED     10       111500
D REALTY INCOME CORP                 COM SH BEN INT   75615810     45123  1670000 SH  SHARED     11      1670000        1670000
D REAVES UTIL INCOME FD              COM SH BEN INT   75615810     9416   373541 SH   SHARED               373541
D RECKSON OPER PARTNERSHIP L P       DEB   4.000% 6/1 75621LA2    22728 24000000 PRN  SHARED              4000000
D RED HAT INC                        DBCV  0.500% 1/1 76577AB      2851  2818000 PRN  SHARED              2818000
D RED HAT INC                        COM              76657710      376    18083 SH   SHARED                18083
D RED HAT INC                        COM              76657710      619    29745 SH   SHARED     01        29745
D RED HAT INC                        COM              76657710      358    17189 SH   SHARED     02        17189
D RED HAT INC                        COM              76657710      491    23600 SH   SHARED     10        23600
D RED LION HOTELS CORP               COM              76676410       10     1045 SH   SHARED                 1045
D RED LION HOTELS CORP               COM              76676410     5686   571500 SH   SHARED     10       571500
D RED ROBIN GOURMET BURGERS IN       COM              75689M10      111     3500 SH   SHARED                 3500
D RED ROBIN GOURMET BURGERS IN       COM              75689M10       54     1698 SH   SHARED     10         1698
D REDENVELOPE INC                    COM              75733860        0      117 SH   SHARED                  117
D REDDY ICE HLDGS INC                COM              75734R10     2386    94300 SH   SHARED                94300
D REDDY ICE HLDGS INC                COM              75734R10       86     3400 SH   SHARED     10         3400
D REDHOOK ALE BREWERY                COM              75747310        0      144 SH   SHARED                  144
D REDIFF COM INDIA LTD               SPONSORED ADR    75747910      348    31934 SH   SHARED                31934
D REDWOOD TR INC                     COM              75807540      555    16229 SH   SHARED     01        16229
D REDWOOD TR INC                     COM              75807540      674    19700 SH   SHARED     01        19700
D REDWOOD TR INC                     COM              75807540       47     1375 SH   SHARED     01         1375
D REDWOOD TR INC                     COM              75807540      568    16600 SH   SHARED     10        16600
D REED ELSEVIER N V                  SPONSORED ADR    75820410       59     1500 SH   SHARED                 1500
D REED ELSEVIER N V                  SPONSORED ADR    75820410      138     3500 SH   SHARED     23                3500
D REED ELSEVIER P L C                SPONSORED ADR    75820510       21      400 SH   SHARED                  400
D REEDS INC                          COM              75833810        0      104 SH   SHARED                  104
D RENEGY HOLDINGS INC                COM              75845110        0       69 SH   SHARED                   69
D REGAL BELOIT CORP                  COM              75875010      404     9000 SH   SHARED                 9000
D REGAL BELOIT CORP                  COM              75875010      328     7300 SH   SHARED     01         7300
D REGAL BELOIT CORP                  COM              75875010      253     5641 SH   SHARED     02         5641
D REGAL BELOIT CORP                  COM              75875010    26116   581010 SH   SHARED     10       581010
D REGAL BELOIT CORP                  COM              75875010       94     2096 SH   SHARED     21         1030           1066
D REGAL ENTMT GROUP                  CL A             75876610    13904   769491 SH   SHARED               727191          42300
D REGAL ENTMT GROUP                  CL A             75876610     1773    98125 SH   SHARED     02        98125
D REGAL ENTMT GROUP                  CL A             75876610     3508   194135 SH   SHARED     10       169535          24600
D REGAL ENTMT GROUP                  CL A             75876610       31     1750 SH   SHARED     20         1750
D REGAL ENTMT GROUP                  CL A             75876610       59     3315 SH   SHARED     21         3315
D REGAL ENTMT GROUP                  CL A             75876610       13      750 SH   SHARED     22          750
D REGAL ENTMT GROUP                  CL A             75876610      421    23300 SH   SHARED     23        23300
D REGENCY CTRS CORP                  COM              75884910     1169    18139 SH   SHARED                16139           2000
D REGENCY CTRS CORP                  COM              75884910     1236    19175 SH   SHARED     01          375          18800
D REGENCY CTRS CORP                  COM              75884910      232     3598 SH   SHARED     01         3598
D REGENCY CTRS CORP                  COM              75884910    15561   241300 SH   SHARED     10       241300
D REGENCY CTRS CORP                  COM              75884910   308463  4783117 SH   SHARED     11      2639017        2144100
D REGENCY ENERGY PARTNERS L P        COM UNITS L P    75885Y10       32      983 SH   SHARED                  983
D REGENERON PHARMACEUTICALS          NOTE  5.500%10/1 75886RAB     7264  6912000 PRN  SHARED              6912000
D REGENERON PHARMACEUTICALS          COM              75886F10     5238   216898 SH   SHARED               216898
D REGENERON PHARMACEUTICALS          COM              75886F10      107     4445 SH   SHARED     01         4445
D REGENERON PHARMACEUTICALS          COM              75886F10      372    15412 SH   SHARED     02        15412
```

| Flag | Issuer | Class | CUSIP | Value | Shares | Discretion | Mgr | Col1 | Col2 |
|---|---|---|---|---|---|---|---|---|---|
| D | REGENERON PHARMACEUTICALS | COM | 75886F10 | 9829 | 407017 SH | SHARED | 04 | | 407017 |
| D | REGENERON PHARMACEUTICALS | COM | 75886F10 | 2279 | 94400 SH | SHARED | 10 | | 94400 |
| D | REGENERON PHARMACEUTICALS | COM | 75886F10 | 96 | 4000 SH | SHARED | 14 | | 4000 |
| D | REGENERX BIOPHARMACEUTICALS | COM | 75886X10 | 0 | 786 SH | SHARED | | | 786 |
| D | REGENT COMMUNICATIONS INC DE | COM | 75886510 | 372 | 241790 SH | SHARED | | | 241790 |
| D | REGIS CORP MINN | COM | 75893210 | 410 | 14665 SH | SHARED | | | 14665 |
| D | REGIS CORP MINN | COM | 75893210 | 440 | 15750 SH | SHARED | 01 | 2650 | 13100 |
| D | REGIS CORP MINN | COM | 75893210 | 58 | 2087 SH | SHARED | 02 | | 2087 |
| D | REGIS CORP MINN | COM | 75893210 | 18204 | 651100 SH | SHARED | 10 | | 651100 |
| D | REGIS CORP MINN | COM | 75893210 | 31 | 1137 SH | SHARED | 21 | 1137 | 1137 |
| D | REGIONAL BK HOLDRS TR | DEPOSITY RCPT | 75902E10 | 697 | 5300 SH | SHARED | | | 5300 |
| D | REGIONAL BK HOLDRS TR | DEPOSITY RCPT | 75902E10 | 65 | 500 SH | SHARED | 01 | 500 | 500 |
| D | REGIONAL BK HOLDRS TR | DEPOSITY RCPT | 75902E10 | 8852 | 67266 SH | SHARED | 02 | | 67266 |
| D | REGIONS FINANCIAL CORP NEW | COM | 7591EP10 | 17080 | 722203 SH | SHARED | | | 722203 |
| D | REGIONS FINANCIAL CORP NEW | COM | 7591EP10 | 1831 | 77431 SH | SHARED | 01 | 68253 | 9178 |
| D | REGIONS FINANCIAL CORP NEW | COM | 7591EP10 | 37 | 1600 SH | SHR/OTHR | 01 | | 1600 |
| D | REGIONS FINANCIAL CORP NEW | COM | 7591EP10 | 273 | 11585 SH | SHARED | 02 | | 11585 |
| D | REGIONS FINANCIAL CORP NEW | COM | 7591EP10 | 7 | 300 SH | SHARED | 05 | | 300 |
| D | REGIONS FINANCIAL CORP NEW | COM | 7591EP10 | 165 | 6980 SH | SHARED | 06 | | 6980 |
| D | REGIONS FINANCIAL CORP NEW | COM | 7591EP10 | 7591 | 320985 SH | SHARED | 10 | | 320985 |
| D | REGIONS FINANCIAL CORP NEW | COM | 7591EP10 | 390 | 16500 SH | SHARED | 14 | | 16500 |
| D | REGIONS FINANCIAL CORP NEW | COM | 7591EP10 | 24 | 1035 SH | SHARED | 21 | | 1035 |
| D | REGIONS FINANCIAL CORP NEW | COM | 7591EP10 | 11 | 478 SH | SHARED | 14 | | 478 |
| D | REGIONS FINANCIAL CORP NEW | COM | 7591EP10 | 15 | 672 SH | SHR/OTHR | 23 | | 672 |
| D | REHABCARE GROUP INC | COM | 75914810 | 370 | 16418 SH | SHARED | | | 16418 |
| D | REHABCARE GROUP INC | COM | 75914810 | 126 | 5600 SH | SHARED | 01 | 1400 | 4200 |
| D | REHABCARE GROUP INC | COM | 75914810 | 618 | 27400 SH | SHARED | 10 | | 27400 |
| D | REINSURANCE GROUP AMER INC | COM | 75935110 | 1273 | 24263 SH | SHARED | | 9363 | 14900 |
| D | REINSURANCE GROUP AMER INC | COM | 75935110 | 304 | 5800 SH | SHARED | 01 | | 5800 |
| D | REINSURANCE GROUP AMER INC | COM | 75935110 | 24 | 462 SH | SHARED | 02 | | 462 |
| D | REINSURANCE GROUP AMER INC | COM | 75935110 | 2786 | 53102 SH | SHARED | 10 | 49602 | 3500 |
| D | REINSURANCE GROUP AMER INC | COM | 75935110 | 5 | 105 SH | SHARED | 21 | 105 | 105 |
| D | REINSURANCE GROUP AMER INC | PFD TR INC EQ | 75935130 | 10673 | 159300 SH | SHARED | | | 159300 |
| D | REIS INC | COM | 75936P10 | 88 | 11565 SH | SHARED | | | 11565 |
| D | REIS INC | COM | 75936P10 | 0 | 100 SH | SHARED | 02 | | 100 |
| D | RELIANCE STEEL & ALUMINUM CO | COM | 75950910 | 3991 | 73637 SH | SHARED | | | 73637 |
| D | RELIANCE STEEL & ALUMINUM CO | COM | 75950910 | 1772 | 32700 SH | SHARED | 01 | 12700 | 20000 |
| D | RELIANCE STEEL & ALUMINUM CO | COM | 75950910 | 286 | 5283 SH | SHARED | 02 | | 5283 |
| D | RELIANCE STEEL & ALUMINUM CO | COM | 75950910 | 5956 | 109900 SH | SHARED | 10 | 103400 | 6500 |
| D | RELIANT ENERGY INC | COM | 75952B10 | 1167 | 44510 SH | SHARED | | | 44510 |
| D | RELIANT ENERGY INC | COM | 75952B10 | 1086 | 41415 SH | SHARED | 01 | 39215 | 2200 |
| D | RELIANT ENERGY INC | COM | 75952B10 | 15 | 600 SH | SHR/OTHR | 01 | | 600 |
| D | RELIANT ENERGY INC | COM | 75952B10 | 3453 | 131601 SH | SHARED | 02 | | 131601 |
| D | RELIANT ENERGY INC | COM | 75952B10 | 65 | 2480 SH | SHARED | 06 | | 2480 |
| D | RELIANT ENERGY INC | COM | 75952B10 | 1445 | 55100 SH | SHARED | 10 | | 55100 |
| D | RELIANT ENERGY INC | COM | 75952B10 | 12 | 483 SH | SHARED | 14 | | 483 |
| D | RELIANT ENERGY INC | COM | 75952B10 | 320 | 12221 SH | SHARED | 21 | | 12221 |
| D | RELIANT ENERGY INC | COM | 75952B10 | 62 | 2365 SH | SHR/OTHR | 23 | | 2365 |
| D | RELIV INTL INC | COM | 75952510 | 11 | 1428 SH | SHARED | | | 1428 |
| D | RELM WIRELESS CORP | COM | 75952510 | 4 | 1449 SH | SHARED | | | 1449 |
| D | RENAISSANCE ACQUISITION CORP | UNIT 01/28/2011 | 75966C20 | 6 | 1104 SH | SHARED | | | 1104 |
| D | RENAISSANCE ACQUISITION CORP | COM | 75966C30 | 2556 | 456525 SH | SHARED | | | 456525 |
| D | RENAISSANCE CAP GRWTH INCM I | COM | 75966V10 | 0 | 96 SH | SHARED | | | 96 |
| D | RENAISSANCE LEARNING INC | COM | 75968L10 | 1864 | 133200 SH | SHARED | | | 133200 |
| D | RENAISSANCE LEARNING INC | COM | 75968L10 | 17 | 1275 SH | SHARED | 02 | | 1275 |
| D | RENASANT CORP | COM | 75970E10 | 37 | 1738 SH | SHARED | | | 1738 |
| D | RENASANT CORP | COM | 75970E10 | 293 | 13600 SH | SHARED | 10 | | 13600 |
| D | RENOVIS INC | COM | 75988510 | 1 | 612 SH | SHARED | | | 612 |
| D | RENOVIS INC | COM | 75988510 | 42 | 14200 SH | SHARED | 01 | | 14200 |
| D | RENOVIS INC | COM | 75988510 | 69 | 23064 SH | SHARED | 20 | | 23064 |
| D | REPLIGEN CORP | COM | 75991610 | 5 | 765 SH | SHARED | | | 765 |
| D | RENT A CTR INC NEW | COM | 76009N10 | 437 | 30128 SH | SHARED | | | 30128 |
| D | RENT A CTR INC NEW | COM | 76009N10 | 453 | 31225 SH | SHARED | 01 | 5525 | 25700 |
| D | RENT A CTR INC NEW | COM | 76009N10 | 134 | 9236 SH | SHARED | 02 | | 9236 |
| D | RENT A CTR INC NEW | COM | 76009N10 | 4947 | 340734 SH | SHARED | 10 | | 340734 |
| D | RENTECH INC | COM | 76011210 | 32 | 17770 SH | SHARED | | | 17770 |
| D | RENTRAK CORP | COM | 76017410 | 22 | 1556 SH | SHARED | | | 1556 |
| D | REPSOL YPF S A | SPONSORED ADR | 76026T20 | 5745 | 161262 SH | SHARED | | | 161262 |
| D | REPSOL YPF S A | SPONSORED ADR | 76026T20 | 142 | 4000 SH | SHR/OTHR | 20 | | 4000 |
| D | REPUBLIC AWYS HLDGS INC | COM | 76027610 | 161 | 8223 SH | SHARED | | | 8223 |
| D | REPUBLIC AWYS HLDGS INC | COM | 76027610 | 31 | 1600 SH | SHARED | 01 | | 1600 |
| D | REPUBLIC AWYS HLDGS INC | COM | 76027610 | 1741 | 88900 SH | SHARED | 10 | | 88900 |
| D | REPROS THERAPEUTICS INC | COM | 76028H10 | 3 | 331 SH | SHARED | | | 331 |
| D | REPROS THERAPEUTICS INC | COM | 76028H10 | 991 | 106400 SH | SHARED | 04 | | 106400 |
| D | REPLIDYNE INC | COM | 76028N10 | 1 | 380 SH | SHARED | | | 380 |
| D | REPUBLIC BANCORP KY | CL A | 76028120 | 3 | 204 SH | SHARED | | | 204 |
| D | REPUBLIC FIRST BANCORP INC | COM | 76041610 | 61 | 8879 SH | SHARED | | | 8879 |
| D | REPUBLIC SVCS INC | COM | 76075910 | 4944 | 157720 SH | SHARED | | | 157720 |
| D | REPUBLIC SVCS INC | COM | 76075910 | 1866 | 59550 SH | SHARED | 01 | | 59550 |
| D | REPUBLIC SVCS INC | COM | 76075910 | 258 | 8232 SH | SHARED | 02 | | 8232 |
| D | REPUBLIC SVCS INC | COM | 76075910 | 69 | 2205 SH | SHARED | 06 | | 2205 |
| D | REPUBLIC SVCS INC | COM | 76075910 | 817 | 26075 SH | SHARED | 10 | | 26075 |
| D | REPUBLIC SVCS INC | COM | 76075910 | 347 | 11076 SH | SHARED | 14 | | 11076 |
| D | REPUBLIC SVCS INC | COM | 76075910 | 8 | 278 SH | SHARED | 21 | 278 | 278 |
| D | RESEARCH FRONTIERS INC | COM | 76091110 | 77 | 7742 SH | SHARED | | | 7742 |
| D | RES-CARE INC | COM | 76094310 | 126 | 5021 SH | SHARED | | | 5021 |
| D | RES-CARE INC | COM | 76094310 | 528 | 21000 SH | SHARED | 10 | | 21000 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 28952 | 255313 SH | SHARED | | | 255313 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 17340 | 152918 SH | SHARED | 01 | 99873 | 53045 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 4581 | 40402 SH | SHR/OTHR | 01 | | 40402 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 68 | 600 SH | SHARED | 02 | | 600 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 5103 | 45000 SH | SHARED | 04 | | 45000 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 22 | 200 SH | SHARED | 05 | | 200 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 260 | 2300 SH | SHARED | 06 | | 2300 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 19344 | 170590 SH | SHARED | 10 | 169600 | 990 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 1467 | 12944 SH | SHARED | 14 | 12944 | 12944 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 973 | 8585 SH | SHARED | 20 | 7055 | 1530 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 49 | 440 SH | SHR/OTHR | 20 | | 440 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 124 | 1100 SH | SHARED | 21 | | 1100 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 34 | 300 SH | SHR/OTHR | 21 | | 300 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 735 | 6482 SH | SHARED | 22 | 4657 | 1825 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 141 | 1250 SH | SHR/OTHR | 22 | | 1250 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 4326 | 38155 SH | SHARED | 22 | 36285 | 1870 |
| D | RESEARCH IN MOTION LTD | COM | 76097510 | 1244 | 10975 SH | SHR/OTHR | 23 | | 10975 |
| D | RESTORATION HARDWARE INC DEL | COM | 76098110 | 5 | 838 SH | SHARED | | | 838 |
| D | RESMED INC | COM | 76115210 | 488 | 9308 SH | SHARED | | | 9308 |
| D | RESMED INC | COM | 76115210 | 1218 | 23200 SH | SHARED | 01 | | 23200 |
| D | RESMED INC | COM | 76115210 | 381 | 7261 SH | SHARED | 02 | | 7261 |
| D | RESMED INC | COM | 76115210 | 183 | 3500 SH | SHARED | 10 | | 3500 |
| D | RESOURCE AMERICA INC | CL A | 76119520 | 2 | 174 SH | SHARED | | | 174 |
| D | RESOURCE AMERICA INC | CL A | 76119520 | 1 | 100 SH | SHARED | 01 | | 100 |
| D | RESOURCE AMERICA INC | CL A | 76119520 | 8 | 550 SH | SHR/OTHR | 01 | | 550 |
| D | RESOURCE AMERICA INC | CL A | 76119520 | 10 | 700 SH | SHARED | 02 | | 700 |
| D | RESOURCE CAP CORP | COM | 76120W30 | 87 | 9445 SH | SHARED | 02 | | 9445 |

| Name | Type | Number | Qty1 | Qty2 | | Voting | Code | Val1 | Val2 |
|---|---|---|---|---|---|---|---|---|---|
| D RESOURCES CONNECTION INC | COM | 76122Q10 | 829 | 45686 | SH | SHARED | | 45686 | |
| D RESOURCES CONNECTION INC | COM | 76122Q10 | 138 | 7600 | SH | SHARED | 01 | 7600 | |
| D RESOURCES CONNECTION INC | COM | 76122Q10 | 1314 | 72400 | SH | SHARED | 02 | 72400 | |
| D RESOURCES CONNECTION INC | COM | 76122Q10 | 190 | 10505 | SH | SHARED | 10 | 10505 | |
| D RESPONSE GENETICS INC | COM | 76123010 | 0 | 78 | SH | SHARED | | 78 | |
| D RESPIRONICS INC | COM | 76123010 | 2275 | 34750 | SH | SHARED | | 34750 | |
| D RESPIRONICS INC | COM | 76123010 | 6 | 100 | SH | SHARED | 02 | 100 | |
| D RESPIRONICS INC | COM | 76123010 | 1794 | 27400 | SH | SHARED | 05 | 27400 | |
| D RESPIRONICS INC | COM | 76123010 | 2782 | 42500 | SH | SHARED | 10 | 42500 | |
| D RESPIRONICS INC | COM | 76123010 | 4911 | 75000 | SH | SHARED | 15 | | 75000 |
| D RETAIL HLDRS TR | DEP RCPT | 76127010 | 226988 | 2431587 | SH | SHARED | | 2431587 | |
| D RETAIL HLDRS TR | DEP RCPT | 76127010 | 19696 | 211000 | SH | SHARED | 02 | 211000 | |
| D RESTORE MEDICAL INC | COM | 76128C10 | 73 | 49127 | SH | SHARED | | 49127 | |
| D RESTORE MEDICAL INC | COM | 76128C10 | 180 | 120285 | SH | SHARED | 02 | 120285 | |
| D RETAIL VENTURES INC | COM | 76128Y10 | 601 | 118264 | SH | SHARED | | 118264 | |
| D RETAIL VENTURES INC | COM | 76128Y10 | 125 | 24600 | SH | SHARED | 02 | 24600 | |
| D RETAIL VENTURES INC | COM | 76128Y10 | 5 | 1100 | SH | SHARED | 10 | 1100 | |
| D RETRACTABLE TECHNOLOGIES INC | COM | 76129W10 | 0 | 251 | SH | SHARED | | 251 | |
| D REUTERS GROUP PLC | SPONSORED ADR | 76132M10 | 511 | 6723 | SH | SHARED | | 6723 | |
| D REUTERS GROUP PLC | SPONSORED ADR | 76132M10 | 113 | 1493 | SH | SHARED | 01 | | 1493 |
| D REUTERS GROUP PLC | SPONSORED ADR | 76132M10 | 30 | 406 | SH | SHR/OTHR | 01 | | 406 |
| D REVLON INC | CL A | 76152550 | 704 | 596831 | SH | SHARED | | 596831 | |
| D REVLON INC | CL A | 76152550 | 217 | 184620 | SH | SHARED | 02 | 184620 | |
| D REWARDS NETWORK INC | COM | 76155710 | 967 | 194590 | SH | SHARED | | 194590 | |
| D REWARDS NETWORK INC | COM | 76155710 | 24 | 4900 | SH | SHARED | 01 | 4900 | |
| D REX STORES CORP | COM | 76162410 | 724 | 45955 | SH | SHARED | | 45955 | |
| D REYNOLDS AMERICAN INC | COM | 76171310 | 45359 | 687680 | SH | SHARED | | 687680 | |
| D REYNOLDS AMERICAN INC | COM | 76171310 | 1220 | 18500 | SH | SHARED | | 18500 | |
| D REYNOLDS AMERICAN INC | COM | 76171310 | 761 | 11545 | SH | SHARED | 02 | 11545 | |
| D REYNOLDS AMERICAN INC | COM | 76171310 | 135 | 2058 | SH | SHARED | 04 | | 2058 |
| D REYNOLDS AMERICAN INC | COM | 76171310 | 53546 | 811800 | SH | SHARED | 04 | 811800 | |
| D REYNOLDS AMERICAN INC | COM | 76171310 | 24658 | 373838 | SH | SHARED | 06 | | 373838 |
| D REYNOLDS AMERICAN INC | COM | 76171310 | 13358 | 202518 | SH | SHARED | 10 | 202518 | |
| D RICHARDSON ELECTS LTD | COM | 76316510 | 613 | 87555 | SH | SHARED | | 87555 | |
| D RICKS CABARET INTL INC | COM NEW | 76564130 | 6 | 226 | SH | SHARED | | 226 | |
| D RIGEL PHARMACEUTICALS INC | COM NEW | 76655960 | 15 | 602 | SH | SHARED | 02 | 602 | |
| D RIGEL PHARMACEUTICALS INC | COM NEW | 76655960 | 12060 | 475000 | SH | SHARED | 04 | 475000 | |
| D RIGEL PHARMACEUTICALS INC | COM NEW | 76655960 | 2792 | 110000 | SH | SHARED | 16 | 110000 | |
| D RIGHTNOW TECHNOLOGIES INC | COM | 76657R10 | 1025 | 64687 | SH | SHARED | | 64687 | |
| D RIMAGE CORP | COM | 76672110 | 8 | 317 | SH | SHARED | | 317 | |
| D RIO TINTO PLC | SPONSORED ADR | 76720410 | 41 | 100 | SH | SHARED | | 100 | |
| D RIO TINTO PLC | SPONSORED ADR | 76720410 | 135030 | 321577 | SH | SHARED | | 321577 | |
| D RIO TINTO PLC | SPONSORED ADR | 76720410 | 41 | 100 | SH | SHARED | 01 | 100 | |
| D RIO TINTO PLC | SPONSORED ADR | 76720410 | 251 | 600 | SH | SHARED | 02 | 600 | |
| D RIO TINTO PLC | SPONSORED ADR | 76720410 | 71 | 170 | SH | SHARED | 20 | 170 | |
| D RIO VISTA ENERGY PARTNERS L | COM | 76727110 | 0 | 50 | SH | SHARED | | 50 | |
| D RITCHIE BROS AUCTIONEERS | COM | 76774410 | 27 | 330 | SH | SHARED | | 330 | |
| D RITE AID CORP | COM | 76775410 | 1522 | 545699 | SH | SHARED | | 545699 | |
| D RITE AID CORP | COM | 76775410 | 51731 | 18541600 | SH | SHARED | 04 | 8541600 | |
| D RITE AID CORP | COM | 76775410 | 72 | 26000 | SH | SHARED | 10 | 26000 | |
| D RITE AID CORP | COM | 76775410 | 454 | 163000 | SH | SHARED | 14 | 163000 | |
| D RITE AID CORP | COM | 76775410 | 2844 | 1019359 | SH | SHARED | 16 | 1019359 | |
| D RIVER CITY BK | COM | 76803710 | 0 | 46 | SH | SHARED | | 46 | |
| D RIVERBED TECHNOLOGY INC | COM | 76857310 | 167 | 6272 | SH | SHARED | | 6272 | |
| D RIVERBED TECHNOLOGY INC | COM | 76857310 | 21 | 800 | SH | SHARED | 02 | 800 | |
| D RIVERBED TECHNOLOGY INC | COM | 76857310 | 3361 | 125700 | SH | SHARED | 10 | 125700 | |
| D RIVERVIEW BANCORP INC | COM | 76939710 | 2 | 255 | SH | SHARED | | 255 | |
| D RIVIERA HLDGS CORP | COM | 76962710 | 40 | 1300 | SH | SHARED | 01 | 1300 | |
| D ROBERTS REALTY INVS | COM | 76990010 | 0 | 114 | SH | SHARED | | 114 | |
| D ROBBINS & MYERS INC | COM | 77019610 | 235 | 3110 | SH | SHARED | | 3110 | |
| D ROBBINS & MYERS INC | COM | 77019610 | 181 | 2400 | SH | SHARED | 01 | 2400 | |
| D ROBBINS & MYERS INC | COM | 77019610 | 574 | 7600 | SH | SHARED | 02 | 7600 | |
| D ROBBINS & MYERS INC | COM | 77019610 | 2064 | 27300 | SH | SHARED | 10 | 27300 | |
| D ROBERT HALF INTL INC | COM | 77032310 | 4455 | 164784 | SH | SHARED | | 164784 | |
| D ROBERT HALF INTL INC | COM | 77032310 | 454 | 16800 | SH | SHARED | 01 | 16800 | |
| D ROBERT HALF INTL INC | COM | 77032310 | 392 | 14525 | SH | SHARED | 02 | 14525 | |
| D ROBERT HALF INTL INC | COM | 77032310 | 4 | 160 | SH | SHARED | 05 | 160 | |
| D ROBERT HALF INTL INC | COM | 77032310 | 21 | 800 | SH | SHARED | 06 | | 800 |
| D ROBERT HALF INTL INC | COM | 77032310 | 1905 | 70475 | SH | SHARED | 10 | 70475 | |
| D ROBERT HALF INTL INC | COM | 77032310 | 210 | 7770 | SH | SHARED | 14 | | 7770 |
| D ROCHESTER MED CORP | COM | 77149710 | 3 | 338 | SH | SHARED | | 338 | |
| D ROCK OF AGES CORP | CL A | 77263210 | 0 | 107 | SH | SHARED | | 107 | |
| D ROCK-TENN CO | CL A | 77273920 | 1493 | 58772 | SH | SHARED | | 58772 | |
| D ROCK-TENN CO | CL A | 77273920 | 193 | 7600 | SH | SHARED | 01 | 7600 | |
| D ROCK-TENN CO | CL A | 77273920 | 1049 | 41300 | SH | SHARED | 02 | 41300 | |
| D ROCK-TENN CO | CL A | 77273920 | 4807 | 189200 | SH | SHARED | 10 | 189200 | |
| D ROCKFORD CORP | COM | 77316P10 | 0 | 170 | SH | SHARED | | 170 | |
| D ROCKWELL AUTOMATION INC | COM | 77390310 | 10547 | 152946 | SH | SHARED | | 152946 | |
| D ROCKWELL AUTOMATION INC | COM | 77390310 | 1654 | 23989 | SH | SHARED | 01 | 23989 | |
| D ROCKWELL AUTOMATION INC | COM | 77390310 | 9921 | 143866 | SH | SHARED | 02 | 143866 | |
| D ROCKWELL AUTOMATION INC | COM | 77390310 | 6 | 90 | SH | SHARED | 05 | 90 | |
| D ROCKWELL AUTOMATION INC | COM | 77390310 | 116 | 1690 | SH | SHARED | 06 | | 1690 |
| D ROCKWELL AUTOMATION INC | COM | 77390310 | 12911 | 187231 | SH | SHARED | 10 | 187231 | |
| D ROCKWELL AUTOMATION INC | COM | 77390310 | 635 | 9210 | SH | SHARED | 21 | | 9210 |
| D ROCKVILLE FINL INC | COM | 77418610 | 110 | 9090 | SH | SHARED | | 9090 | |
| D ROCKWELL COLLINS INC | COM | 77434110 | 11220 | 155907 | SH | SHARED | | 155907 | |
| D ROCKWELL COLLINS INC | COM | 77434110 | 10111 | 140494 | SH | SHARED | 01 | 95334 | 45160 |
| D ROCKWELL COLLINS INC | COM | 77434110 | 1835 | 25510 | SH | SHR/OTHR | 01 | | 25510 |
| D ROCKWELL COLLINS INC | COM | 77434110 | 776 | 10787 | SH | SHARED | 02 | 10787 | |
| D ROCKWELL COLLINS INC | COM | 77434110 | 2878 | 40000 | SH | SHARED | 04 | 40000 | |
| D ROCKWELL COLLINS INC | COM | 77434110 | 9 | 130 | SH | SHARED | 05 | 130 | |
| D ROCKWELL COLLINS INC | COM | 77434110 | 111 | 1550 | SH | SHARED | 06 | | 1550 |
| D ROCKWELL COLLINS INC | COM | 77434110 | 7501 | 104235 | SH | SHARED | 10 | 104235 | |
| D ROCKWELL COLLINS INC | COM | 77434110 | 354 | 4920 | SH | SHARED | 20 | 540 | 4380 |
| D ROCKWELL COLLINS INC | COM | 77434110 | 3 | 50 | SH | SHR/OTHR | 20 | | 50 |
| D ROCKWELL COLLINS INC | COM | 77434110 | 35 | 489 | SH | SHARED | 21 | 200 | 289 |
| D ROCKWELL COLLINS INC | COM | 77434110 | 604 | 8399 | SH | SHARED | 22 | 7344 | 1055 |
| D ROCKWELL COLLINS INC | COM | 77434110 | 88 | 1225 | SH | SHR/OTHR | 22 | 1225 | |
| D ROCKWELL COLLINS INC | COM | 77434110 | 1183 | 16446 | SH | SHARED | 23 | 13946 | 2500 |
| D ROCKWELL COLLINS INC | COM | 77434110 | 777 | 10800 | SH | SHR/OTHR | 23 | | 10800 |
| D ROCKWELL MEDICAL TECH | COM | 77437410 | 1 | 263 | SH | SHARED | | 263 | |
| D ROCKWOOD HLDGS INC | COM | 77441510 | 126 | 3809 | SH | SHARED | | 3809 | |
| D ROCKWOOD HLDGS INC | COM | 77441510 | 29 | 900 | SH | SHARED | 01 | 900 | |
| D ROCKWOOD HLDGS INC | COM | 77441510 | 1318 | 39700 | SH | SHARED | 02 | 39700 | |
| D ROCKWOOD HLDGS INC | COM | 77441510 | 1365 | 41100 | SH | SHARED | 10 | 41100 | |
| D ROCKY BRANDS INC | COM | 77451510 | 1 | 287 | SH | SHARED | | 287 | |
| D ROCKY MTN CHOCOLATE FACTORY | COM PAR $0.03 | 77467840 | 2 | 146 | SH | SHARED | | 146 | |
| D RODMAN & RENSHAW CAP GP INC | COM | 77487R10 | 0 | 218 | SH | SHARED | | 218 | |
| D ROFIN SINAR TECHNOLOGIES INC | COM | 77504310 | 20468 | 425447 | SH | SHARED | | 425447 | |
| D ROFIN SINAR TECHNOLOGIES INC | COM | 77504310 | 1286 | 26750 | SH | SHARED | 01 | 26500 | 250 |
| D ROFIN SINAR TECHNOLOGIES INC | COM | 77504310 | 1202 | 25000 | SH | SHR/OTHR | 01 | | 25000 |
| D ROFIN SINAR TECHNOLOGIES INC | COM | 77504310 | 1039 | 21600 | SH | SHARED | 06 | | 21600 |
| D ROFIN SINAR TECHNOLOGIES INC | COM | 77504310 | 654 | 13600 | SH | SHARED | 10 | 13600 | |
| D ROFIN SINAR TECHNOLOGIES INC | COM | 77504310 | 22 | 465 | SH | SHARED | 21 | | 465 |

| D | Name | Class | CUSIP | N | Shares | Type | Code | Amt1 | Amt2 |
|---|---|---|---|---|---|---|---|---|---|
| D | ROGERS COMMUNICATIONS INC | CL B | 77510920 | 162 | 3584 SH | SHARED | | 3584 | |
| D | ROGERS COMMUNICATIONS INC | CL B | 77510920 | 3108 | 68697 SH | SHARED | | 67297 | 1400 |
| D | ROGERS COMMUNICATIONS INC | CL B | 77510920 | 162 | 3586 SH | SHARED | 01 | 3386 | 200 |
| D | ROGERS COMMUNICATIONS INC | CL B | 77510920 | 2262 | 50000 SH | SHARED | 04 | 50000 | |
| D | ROGERS COMMUNICATIONS INC | CL B | 77510920 | 9 | 200 SH | SHARED | 05 | 200 | |
| D | ROGERS COMMUNICATIONS INC | CL B | 77510920 | 117 | 2600 SH | SHARED | 06 | | 2600 |
| D | ROGERS COMMUNICATIONS INC | CL B | 77510920 | 1561 | 34500 SH | SHARED | 10 | 34500 | |
| D | ROGERS COMMUNICATIONS INC | CL B | 77510920 | 855 | 18906 SH | SHARED | 14 | | 18906 |
| D | ROGERS COMMUNICATIONS INC | CL B | 77510920 | 90 | 2000 SH | SHARED | 21 | | 2000 |
| D | ROGERS CORP | COM | 77513310 | 47 | 1091 SH | SHARED | | 1091 | |
| D | ROGERS CORP | COM | 77513310 | 173 | 4000 SH | SHARED | 10 | 4000 | |
| D | ROHM & HAAS CO | COM | 77537110 | 9072 | 170954 SH | SHARED | | 170954 | |
| D | ROHM & HAAS CO | COM | 77537110 | 1124 | 21194 SH | SHARED | 01 | 21194 | |
| D | ROHM & HAAS CO | COM | 77537110 | 337 | 6352 SH | SHARED | 02 | 6352 | |
| D | ROHM & HAAS CO | COM | 77537110 | 6 | 130 SH | SHARED | 05 | 130 | |
| D | ROHM & HAAS CO | COM | 77537110 | 66 | 1250 SH | SHARED | 06 | | 1250 |
| D | ROHM & HAAS CO | COM | 77537110 | 6512 | 122722 SH | SHARED | 10 | 122722 | |
| D | ROHM & HAAS CO | COM | 77537110 | 132 | 2500 SH | SHARED | 14 | | 2500 |
| D | ROHM & HAAS CO | COM | 77537110 | 8 | 165 SH | SHR/OTHR | 23 | | 165 |
| D | ROLLINS INC | COM | 77571110 | 275 | 14346 SH | SHARED | | 14346 | |
| D | ROLLINS INC | COM | 77571110 | 398 | 20775 SH | SHARED | 01 | 1200 | 19575 |
| D | ROLLINS INC | COM | 77571110 | 302 | 15779 SH | SHARED | 10 | 15779 | |
| D | ROLLINS INC | COM | 77571110 | 386 | 20139 SH | SHARED | 10 | 20139 | |
| D | ROLLINS INC | COM | 77571110 | 4 | 210 SH | SHARED | 21 | | 210 |
| D | ROMA FINANCIAL CORP | COM | 77581P10 | 1104 | 70408 SH | SHARED | | 70408 | |
| D | ROME BANCORP INC | COM | 77587P10 | 1117 | 96573 SH | SHARED | | 96573 | |
| D | ROMSON CORP | COM NEW | 77633820 | 0 | 60 SH | SHARED | | 60 | |
| D | ROPER INDS INC NEW | COM | 77669610 | 6558 | 104863 SH | SHARED | | 104863 | |
| D | ROPER INDS INC NEW | COM | 77669610 | 1800 | 28790 SH | SHARED | 01 | 50 | 28740 |
| D | ROPER INDS INC NEW | COM | 77669610 | 599 | 9581 SH | SHARED | 02 | 9581 | |
| D | ROPER INDS INC NEW | COM | 77669610 | 17257 | 275944 SH | SHARED | 04 | 275944 | |
| D | ROPER INDS INC NEW | COM | 77669610 | 21231 | 339493 SH | SHARED | 05 | 339493 | |
| D | ROPER INDS INC NEW | COM | 77669610 | 50 | 800 SH | SHARED | 06 | | 800 |
| D | ROPER INDS INC NEW | COM | 77669610 | 26793 | 428423 SH | SHARED | 10 | 428423 | |
| D | ROPER INDS INC NEW | COM | 77669610 | 10 | 175 SH | SHARED | 21 | | 175 |
| D | ROPER INDS INC NEW | COM | 77669610 | 237 | 3800 SH | SHARED | 23 | 3800 | |
| D | ROSETTA RESOURCES INC | COM | 77777930 | 229 | 11563 SH | SHARED | | 11563 | |
| D | ROSETTA RESOURCES INC | COM | 77777930 | 204 | 10300 SH | SHARED | | 10300 | |
| D | ROSETTA RESOURCES INC | COM | 77777930 | 263 | 13300 SH | SHARED | 10 | 13300 | |
| D | ROSS STORES INC | COM | 77829610 | 3000 | 117332 SH | SHARED | | 117332 | |
| D | ROSS STORES INC | COM | 77829610 | 1081 | 42300 SH | SHARED | 01 | | 42300 |
| D | ROSS STORES INC | COM | 77829610 | 281 | 11017 SH | SHARED | 02 | 11017 | |
| D | ROSS STORES INC | COM | 77829610 | 18 | 720 SH | SHARED | 06 | | 720 |
| D | ROSS STORES INC | COM | 77829610 | 291 | 11400 SH | SHARED | 10 | 11400 | |
| D | ROSS STORES INC | COM | 77829610 | 259 | 10155 SH | SHARED | 14 | | 10155 |
| D | ROSTELECOM OPEN JT STK LNG D | SPONSORED ADR | 77852910 | 2285 | 32857 SH | SHARED | | 32857 | |
| D | ROSTELECOM OPEN JT STK LNG D | SPONSORED ADR | 77852910 | 8144 | 117100 SH | SHARED | 06 | | 117100 |
| D | ROTECH HEALTHCARE INC | COM | 77866910 | 657 | 1730469 SH | SHARED | | 1730469 | |
| D | ROTECH HEALTHCARE INC | COM | 77866910 | 99 | 260611 SH | SHARED | 02 | 260611 | |
| D | ROWAN COS INC | COM | 77938210 | 8213 | 208140 SH | SHARED | | 208140 | |
| D | ROWAN COS INC | COM | 77938210 | 1091 | 27669 SH | SHARED | 01 | 27669 | |
| D | ROWAN COS INC | COM | 77938210 | 1383 | 35059 SH | SHARED | 02 | 35059 | |
| D | ROWAN COS INC | COM | 77938210 | 1487 | 37700 SH | SHARED | 05 | 37700 | |
| D | ROWAN COS INC | COM | 77938210 | 40 | 1020 SH | SHARED | 06 | | 1020 |
| D | ROWAN COS INC | COM | 77938210 | 26464 | 670666 SH | SHARED | 10 | 670666 | |
| D | ROWAN COS INC | COM | 77938210 | 102 | 2600 SH | SHARED | 21 | | 300 |
| D | ROWAN COS INC | COM | 77938210 | 7 | 200 SH | SHARED | 23 | | 2300 |
| D | ROYAL BK CDA MONTREAL QUE | COM | 78008710 | 2768 | 54240 SH | SHARED | | 54240 | |
| D | ROYAL BK CDA MONTREAL QUE | COM | 78008710 | 15901 | 311546 SH | SHARED | | 308046 | 3500 |
| D | ROYAL BK CDA MONTREAL QUE | COM | 78008710 | 87 | 1714 SH | SHARED | 01 | 1714 | |
| D | ROYAL BK CDA MONTREAL QUE | COM | 78008710 | 30 | 600 SH | SHARED | 05 | 600 | |
| D | ROYAL BK CDA MONTREAL QUE | COM | 78008710 | 296 | 5800 SH | SHARED | 06 | | 5800 |
| D | ROYAL BK CDA MONTREAL QUE | COM | 78008710 | 2419 | 47400 SH | SHARED | 10 | 47400 | |
| D | ROYAL BK CDA MONTREAL QUE | COM | 78008710 | 995 | 19501 SH | SHARED | 14 | | 19501 |
| D | ROYAL BK SCOTLAND GROUP PLC | SP ADR REP SHS | 78009772 | 1 | 141 SH | SHARED | | 141 | |
| D | ROYAL BK SCOTLAND GROUP PLC | SP ADR PREF S | 78009773 | 3087 | 152377 SH | SHARED | 02 | 152377 | |
| D | ROYAL BK SCOTLAND GROUP PLC | ADR PREF SHS Q | 78009775 | 15 | 744 SH | SHARED | | 744 | |
| D | ROYAL BK SCOTLAND GROUP PLC | ADR PFD SER P | 78009776 | 76 | 3950 SH | SHARED | 01 | | 3950 |
| D | ROYAL BK SCOTLAND GROUP PLC | ADR PFD SER F | 78009776 | 37 | 1960 SH | SHR/OTHR | 01 | | 1960 |
| D | ROYAL BK SCOTLAND GROUP PLC | ADR PREF SER N | 78009777 | 38 | 2000 SH | SHARED | 21 | 2000 | |
| D | ROYAL BK SCOTLAND GROUP PLC | SP ADR L RP PF | 78009777 | 7 | 400 SH | SHARED | 20 | 400 | |
| D | ROYAL BK SCOTLAND GROUP PLC | SP ADR L RP PF | 78009778 | 3799 | 212275 SH | SHARED | 02 | 212275 | |
| D | ROYAL BK SCOTLAND GROUP PLC | SP ADR L RP PF | 78009778 | 78 | 4400 SH | SHARED | 23 | 4400 | |
| D | ROYAL DUTCH SHELL PLC | SPON ADR B | 78025910 | 57232 | 689550 SH | SHARED | | 689550 | |
| D | ROYAL DUTCH SHELL PLC | SPON ADR B | 78025910 | 91 | 1099 SH | SHARED | 01 | | 1099 |
| D | ROYAL DUTCH SHELL PLC | SPON ADR B | 78025910 | 9 | 110 SH | SHARED | 21 | | 110 |
| D | ROYAL DUTCH SHELL PLC | SPON ADR B | 78025910 | 114 | 1379 SH | SHARED | 23 | 1379 | |
| D | ROYAL DUTCH SHELL PLC | SPON ADR B | 78025910 | 300 | 3620 SH | SHR/OTHR | 23 | | 3620 |
| D | ROYAL DUTCH SHELL PLC | SPONS ADR A | 78025920 | 269 | 3200 SH | SHR/OTHR | | | 3200 |
| D | ROYAL DUTCH SHELL PLC | SPONS ADR A | 78025920 | 945 | 11224 SH | SHARED | | 11224 | |
| D | ROYAL DUTCH SHELL PLC | SPONS ADR A | 78025920 | 12321 | 146331 SH | SHARED | 01 | 50239 | 96092 |
| D | ROYAL DUTCH SHELL PLC | SPONS ADR A | 78025920 | 5127 | 60895 SH | SHARED | 02 | | 60895 |
| D | ROYAL DUTCH SHELL PLC | SPONS ADR A | 78025920 | 52531 | 623890 SH | SHARED | 10 | 623490 | 400 |
| D | ROYAL DUTCH SHELL PLC | SPONS ADR A | 78025920 | 505 | 6000 SH | SHR/OTHR | 10 | | 6000 |
| D | ROYAL DUTCH SHELL PLC | SPONS ADR A | 78025920 | 8475 | 100664 SH | SHARED | 20 | 25970 | 74694 |
| D | ROYAL DUTCH SHELL PLC | SPONS ADR A | 78025920 | 4975 | 59090 SH | SHARED | 20 | | 59090 |
| D | ROYAL DUTCH SHELL PLC | SPONS ADR A | 78025920 | 22 | 270 SH | SHARED | 21 | 60 | 210 |
| D | ROYAL DUTCH SHELL PLC | SPONS ADR A | 78025920 | 673 | 8000 SH | SHR/OTHR | 21 | | 8000 |
| D | ROYAL DUTCH SHELL PLC | SPONS ADR A | 78025920 | 263 | 3133 SH | SHARED | 22 | 2533 | 600 |
| D | ROYAL DUTCH SHELL PLC | SPONS ADR A | 78025920 | 403 | 4791 SH | SHR/OTHR | 22 | | 4791 |
| D | ROYAL DUTCH SHELL PLC | SPONS ADR A | 78025920 | 10215 | 121321 SH | SHARED | 23 | 98221 | 23100 |
| D | ROYAL DUTCH SHELL PLC | SPONS ADR A | 78025920 | 13723 | 162989 SH | SHR/OTHR | 23 | | 162989 |
| D | ROYAL GOLD INC | COM | 78028710 | 2 | 68 SH | SHARED | | 68 | |
| D | ROYAL GOLD INC | COM | 78028710 | 295 | 9685 SH | SHARED | | 9685 | |
| D | ROYAL GOLD INC | COM | 78028710 | 149 | 4900 SH | SHARED | 02 | 4900 | |
| D | ROYAL GOLD INC | COM | 78028710 | 262 | 8594 SH | SHARED | 10 | 8594 | |
| D | ROYAL KPN NV | SPONSORED ADR | 78064120 | 83 | 4577 SH | SHARED | | 4577 | |
| D | ROYAL KPN NV | SPONSORED ADR | 78064120 | 27 | 1500 SH | SHR/OTHR | 01 | | 1500 |
| D | ROYALE ENERGY INC | COM NEW | 78074G20 | 0 | 135 SH | SHARED | | 135 | |
| D | ROYCE FOCUS TR | | 78080N10 | 1 | 193 SH | SHARED | | 193 | |
| D | RUBICON TECHNOLOGY INC | COM | 78112P10 | 244 | 10310 SH | SHARED | | 10310 | |
| D | RUBIOS RESTAURANTS INC | COM | 78116B10 | 1 | 186 SH | SHARED | | 186 | |
| D | RUBY TUESDAY INC | COM | 78118210 | 344 | 35346 SH | SHARED | | 35346 | |
| D | RUBY TUESDAY INC | COM | 78118210 | 125 | 12900 SH | SHARED | 01 | 2400 | 10500 |
| D | RUBY TUESDAY INC | COM | 78118210 | 194 | 19949 SH | SHARED | 02 | 19949 | |
| D | RUBY TUESDAY INC | COM | 78118210 | 630 | 64689 SH | SHARED | 10 | 64689 | |
| D | RUDDICK CORP | COM | 78125810 | 432 | 12478 SH | SHARED | | 12478 | |
| D | RUDDICK CORP | COM | 78125810 | 506 | 14600 SH | SHARED | 01 | 1500 | 13100 |
| D | RUDDICK CORP | COM | 78125810 | 71 | 2063 SH | SHARED | 02 | 2063 | |
| D | RUDDICK CORP | COM | 78125810 | 32808 | 946311 SH | SHARED | 10 | 946311 | |
| D | RUDOLPH TECHNOLOGIES INC | COM | 78127010 | 1212 | 107122 SH | SHARED | | 107122 | |
| D | RUDOLPH TECHNOLOGIES INC | COM | 78127010 | 27 | 2421 SH | SHARED | 21 | | 2421 |
| D | RURAL / METRO CORP | COM | 78174810 | 2 | 1209 SH | SHARED | | 1209 | |
| D | RURBAN FINL CORP | COM | 78176P10 | 1 | 131 SH | SHARED | | 131 | |

```
D RUSH ENTERPRISES INC        CL A            78184620        381    20978 SH    SHARED           20978
D RUSH ENTERPRISES INC        CL A            78184620          6      378 SH    SHARED     02      378
D RUSH ENTERPRISES INC        CL A            78184620        223    12300 SH    SHARED     10    12300
D RURAL CELLULAR CORP         CL A            78190410          5      127 SH    SHARED             127
D RURAL CELLULAR CORP         CL A            78190410         36      825 SH    SHARED     01      825
D RURAL CELLULAR CORP         CL A            78190410        132     3000 SH    SHARED     02     3000
D RUSS BERRIE & CO            COM             78223310         17     1100 SH    SHARED     02     1100
D RUTHS CHRIS STEAK HSE INC   COM             78333210        127    14316 SH    SHARED           14316
D RYANAIR HLDGS PLC           SPONSORED ADR   78351310        715    18134 SH    SHARED           18134
D RYDER SYS INC               COM             78354910       9125   194126 SH    SHARED          148126     46000
D RYDER SYS INC               COM             78354910       1067    22700 SH    SHARED     01    22700
D RYDER SYS INC               COM             78354910        694    14763 SH    SHARED     10    14763
D RYDER SYS INC               COM             78354910      60823  1293842 SH    SHARED     10  1201842     92000
D RYLAND GROUP INC            COM             78376410       2699    97969 SH    SHARED           97969
D RYLAND GROUP INC            COM             78376410        657    23875 SH    SHARED     01     8775     15100
D RYLAND GROUP INC            COM             78376410       2375    86211 SH    SHARED     02    86211
D RYLAND GROUP INC            COM             78376410         60     2200 SH    SHARED     02     2200
D RYLAND GROUP INC            COM             78376410       2063    74900 SH    SHARED     14    74900
D S & T BANCORP INC           COM             78385910         50     1816 SH    SHARED            1816
D S & T BANCORP INC           COM             78385910          7      275 SH    SHARED     01      275
D S & T BANCORP INC           COM             78385910          2      100 SH    SHARED     02      100
D S & T BANCORP INC           COM             78385910        279    10100 SH    SHARED     10    10100
D SBA COMMUNICATIONS CORP     NOTE 0.375%12/0 78388JAJ       2246  2000000 PRN   SHARED         2000000
D SBA COMMUNICATIONS CORP     NOTE 0.375%12/0 78388JAJ       3691  3287000 PRN   SHARED     02  3287000
D SBA COMMUNICATIONS CORP     COM             78388J10      36573  1080790 SH    SHARED         1080790
D SBA COMMUNICATIONS CORP     COM             78388J10        648    19155 SH    SHARED     01    19155
D SBA COMMUNICATIONS CORP     COM             78388J10        159     4720 SH    SHARED     02     4720
D SBA COMMUNICATIONS CORP     COM             78388J10      41888  1237845 SH    SHARED     10  1237845
D SBA COMMUNICATIONS CORP     COM             78388J10          5      160 SH    SHARED     21      160
D SAIC INC                    COM             78390X10        533    26502 SH    SHARED           26502
D SAIC INC                    COM             78390X10        199     9900 SH    SHARED     01     9900
D SAIC INC                    COM             78390X10       1006    50000 SH    SHARED     04    50000
D SAIC INC                    COM             78390X10       4060   201800 SH    SHARED     10   201800
D SCBT FINANCIAL CORP         COM             78401V10          2       70 SH    SHARED              70
D SCM MICROSYSTEMS INC        COM             78401810          1      401 SH    SHARED             401
D SCPIE HLDGS INC             COM             78402010        290    10581 SH    SHARED           10581
D SCOLR PHARMA INC            COM             78402X10          1      994 SH    SHARED             994
D SCO GROUP INC               COM             78403A10          0      909 SH    SHARED             909
D SEI INVESTMENTS CO          COM             78411710       1242    38633 SH    SHARED           38633
D SEI INVESTMENTS CO          COM             78411710       1427    44370 SH    SHARED     01     5370     39000
D SEI INVESTMENTS CO          COM             78411710       1492    46400 SH    SHR/OTHR   01               46400
D SEI INVESTMENTS CO          COM             78411710        751    23367 SH    SHARED     02    23367
D SEI INVESTMENTS CO          COM             78411710        160     5000 SH    SHARED     10     5000
D SEI INVESTMENTS CO          COM             78411710        101     3165 SH    SHARED     21     3165
D SESI L L C                  NOTE 1.500%12/1 78412PAH       5739  5700000 PRN   SHARED         5700000
D SESI L L C                  NOTE 1.500%12/1 78412PAH       1592  1581000 PRN   SHARED         1581000
D SFBC INTL INC               NOTE 2.250% 8/1 78412LAB       1140  1000000 PRN   SHARED         1000000
D SGX PHARMACEUTICALS INC     COM             78423C10          0      177 SH    SHARED             177
D SI FINL GROUP INC           COM             78425W10        590    60012 SH    SHARED           60012
D SI INTL INC                 COM             78427V10         45     1660 SH    SHARED            1660
D SI INTL INC                 COM             78427V10        120     4400 SH    SHARED     10     4400
D SJW CORP                    COM             78430510        114     3300 SH    SHARED     10     3300
D SJW CORP                    COM             78430510        104     3000 SH    SHARED     23     3000      3000
D SK TELECOM LTD              SPONSORED ADR   78440P10       1123    37640 SH    SHARED           37640
D SK TELECOM LTD              SPONSORED ADR   78440P10       1859    62300 SH    SHARED     10    62300
D SK TELECOM LTD              SPONSORED ADR   78440P10         25      870 SH    SHR/OTHR   23                 870       870
D SL GREEN RLTY CORP          COM             78440X10       2874    30756 SH    SHARED           30756
D SL GREEN RLTY CORP          COM             78440X10         18      200 SH    SHARED     01      200
D SL GREEN RLTY CORP          COM             78440X10         28      300 SH    SHARED     02      300
D SL GREEN RLTY CORP          COM             78440X10          3       40 SH    SHARED     05       40
D SL GREEN RLTY CORP          COM             78440X10       8523    91200 SH    SHARED     10    91200
D SL GREEN RLTY CORP          COM             78440X10     195953  2096660 SH    SHARED     11  1271510    825150
D SL GREEN RLTY CORP          COM             78440X10        257     2752 SH    SHARED     14     2752
D S L INDS INC                COM             78441310          4      208 SH    SHARED             208
D SLM CORP                    COM             78442P10        273    13577 SH    SHARED           13577
D SLM CORP                    COM             78442P10      85989  4269602 SH    SHARED         4269602
D SLM CORP                    COM             78442P10        792    39342 SH    SHARED     01    39042       300
D SLM CORP                    COM             78442P10        395    19659 SH    SHARED     02    19659
D SLM CORP                    COM             78442P10          4      220 SH    SHARED     05      220
D SLM CORP                    COM             78442P10         78     3890 SH    SHARED     06     3890
D SLM CORP                    COM             78442P10       4127   204943 SH    SHARED     10   204943
D SLM CORP                    COM             78442P10         42     2100 SH    SHARED     14     2100
D SLM CORP                    COM             78442P10         40     2000 SH    SHARED     20     2000
D SLM CORP                    COM             78442P10         88     4410 SH    SHR/OTHR   20                4410
D SLM CORP                    COM             78442P10        193     9600 SH    SHARED     23     9600
D SLM CORP                    COM             78442P10        357    17750 SH    SHR/OTHR   23               17750
D SMF ENERGY CORPORATION      COM             78453M10          0      339 SH    SHARED             339
D SOBL AUTO PTS INC           COM             78461110       1464   200065 SH    SHARED          200065
D SPDR TR                     UNIT SER 1      78462F10       1039     7110 SH    SHARED            7110
D SPDR TR                     UNIT SER 1      78462F10    5266772 36021968 SH    SHARED         6021968
D SPDR TR                     UNIT SER 1      78462F10      12459    85216 SH    SHARED     01    24354     60862
D SPDR TR                     UNIT SER 1      78462F10       1145     7833 SH    SHR/OTHR   01                7833
D SPDR TR                     UNIT SER 1      78462F10      43373   296652 SH    SHARED     02   296652
D SPDR TR                     UNIT SER 1      78462F10      32210   220300 SH    SHARED     10   220300
D SPDR TR                     UNIT SER 1      78462F10      49378   337720 SH    SHARED     15   337720
D SPDR TR                     UNIT SER 1      78462F10      11409    78036 SH    SHARED     19    78036
D SPDR TR                     UNIT SER 1      78462F10       8462    57877 SH    SHARED     20    57877
D SPDR TR                     UNIT SER 1      78462F10        226     1550 SH    SHR/OTHR   21                1550
D SPDR TR                     UNIT SER 1      78462F10        446     3056 SH    SHARED     22     3056
D SPDR TR                     UNIT SER 1      78462F10         36      250 SH    SHR/OTHR   22                 250
D SPDR TR                     UNIT SER 1      78462F10      11091    75863 SH    SHARED     23    74433      1430
D SPDR TR                     UNIT SER 1      78462F10       7627    52169 SH    SHR/OTHR   23               52169
D SPSS INC                    COM             78462X10       4997   139157 SH    SHARED          139157
D SPSS INC                    COM             78462X10        107     3000 SH    SHARED     01     1200      1800
D SPSS INC                    COM             78462X10        342     9525 SH    SHARED     02     9525
D SPSS INC                    COM             78462X10       1231    34300 SH    SHARED     10    34300
D S1 CORPORATION              COM             78463B10       1722   235956 SH    SHARED          235956
D S1 CORPORATION              COM             78463B10        638    87400 SH    SHARED     10    87400
D SPDR INDEX SHS FDS          ASIA PACIF ETF  78463X30       7506    86000 SH    SHARED     06              86000
D SPDR INDEX SHS FDS          DJWS INTL REAL  78463X86          3       70 SH    SHARED     10       70
D SPX CORP                    COM             78463510      38413   373489 SH    SHARED          373489
D SPX CORP                    COM             78463510       8137    79122 SH    SHARED     01     3354     75768
D SPX CORP                    COM             78463510       1066    10366 SH    SHR/OTHR   01               10366
D SPX CORP                    COM             78463510        386     3759 SH    SHARED     02     3759
D SPX CORP                    COM             78463510       1234    12000 SH    SHARED     04    12000
D SPX CORP                    COM             78463510         38      370 SH    SHARED     06      370
D SPX CORP                    COM             78463510       2004    19490 SH    SHARED     10    19490
D SPDR SERIES TRUST           DJWS SCAP GR    78464A20         14      151 SH    SHARED             151
D SPDR SERIES TRUST           DJWS REIT ETF   78464A60        142     2053 SH    SHARED     01     2053
D SPDR SERIES TRUST           DJWS REIT ETF   78464A60         34      500 SH    SHR/OTHR   23                 500
D SPDR SERIES TRUST           S&P RETAIL ETF  78464A71      23492   700000 SH    SHARED          700000
D SPDR SERIES TRUST           S&P RETAIL ETF  78464A71        287     8580 SH    SHARED            8580
D SPDR SERIES TRUST           S&P OILGAS EXP  78464A73       1222    23500 SH    SHARED     02    23500
D SPDR SERIES TRUST           S&P METALS MNG  78464A75      10368   150000 SH    SHARED          150000
```

```
D SPDR SERIES TRUST              S&P METALS MNG   78464A75     691    10000 SH    SHARED    02      10000
D SPDR SERIES TRUST              KBW CAP MKTS     78464A77    1271    19000 SH    SHARED            19000
D SPDR SERIES TRUST              KBW BK ETF       78464A79       4      100 SH    SHARED    02        100
D SPDR SERIES TRUST              S&P HOMEBUILD    78464A88    3453   178500 SH    SHARED           178500
D SPDR SERIES TRUST              S&P HOMEBUILD    78464A88      42     2200 SH    SHARED    02       2200
D SRS LABS INC                   COM              78464M10     390    72918 SH    SHARED            72918
D SRA INTL INC                   CL A             78464R10    5148   174818 SH    SHARED           174818
D SRA INTL INC                   CL A             78464R10     767    26050 SH    SHARED    01      12850          13200
D SRA INTL INC                   CL A             78464R10     127     4317 SH    SHARED    02       4317
D SRA INTL INC                   CL A             78464R10    1428    48489 SH    SHARED    10      48489
D SRI/SURGICAL EXPRESS INC       COM              78464T10      14     2403 SH    SHARED             2403
D SM&A                           COM              78465S10       4      797 SH    SHARED              797
D SM&A                           COM              78465D10       9     1600 SH    SHARED    02       1600
D SP ACQUISITION HOLDINGS INC    COM              78470A10    4393   477547 SH    SHARED           477547
D SP ACQUISITION HOLDINGS INC    *W EXP 10/10/201 78470A11     259   281800 SH    SHARED           281800
D STEC INC                       COM              78477410     707    80921 SH    SHARED            80921
D STEC INC                       COM              78477410       4      480 SH    SHARED    02        480
D STEC INC                       COM              78477410   24291  2779350 SH    SHARED    10    2779350
D SVB FINL GROUP                 COM              78486Q10     569    11300 SH    SHARED            11300
D SVB FINL GROUP                 COM              78486Q10     977    19390 SH    SHARED    01       9190          10200
D SVB FINL GROUP                 COM              78486Q10     230     4574 SH    SHARED    02       4574
D SVB FINL GROUP                 COM              78486Q10    2579    51180 SH    SHARED    10      51180
D SABA SOFTWARE INC              COM NEW          78493260      29     5699 SH    SHARED             5699
D SPAR GROUP INC                 COM              78493310       0       92 SH    SHARED               92
D SWS GROUP INC                  COM              78503N10      79     6244 SH    SHARED             6244
D SWS GROUP INC                  COM              78503N10      17     1353 SH    SHARED    02       1353
D SWS GROUP INC                  COM              78503N10      67     5300 SH    SHARED    10       5300
D SWS GROUP INC                  COM              78503N10    1764   139296 SH    SHR/OTHR  20           139296
D S Y BANCORP INC                COM              78506010       0        3 SH    SHARED                3
D S Y BANCORP INC                COM              78506010      64     2700 SH    SHARED    10       2700
D SYS                            COM              78507010       0      359 SH    SHARED              359
D SABINE ROYALTY TR              UNIT BEN INT     78568810    2890    67400 SH    SHARED            67400
D SABINE ROYALTY TR              UNIT BEN INT     78568810     102     2400 SH    SHARED    01       2400
D SABINE ROYALTY TR              UNIT BEN INT     78568810      12      300 SH    SHR/OTHR  23            300
D SADIA S A                      SP ADR PFD 30    78632610       8      156 SH    SHARED              156
D SAFECO CORP                    COM              78642910    8839   158749 SH    SHARED           158749
D SAFECO CORP                    COM              78642910    1010    18145 SH    SHARED    01      18145
D SAFECO CORP                    COM              78642910    5573   100106 SH    SHARED    02     100106
D SAFECO CORP                    COM              78642910      66     1200 SH    SHARED    06             1200
D SAFECO CORP                    COM              78642910    8413   151107 SH    SHARED    10     151107
D SAFECO CORP                    COM              78642910      22      400 SH    SHARED    14              400
D SAFECO CORP                    COM              78642910      55     1000 SH    SHARED    20             1000
D SAFEGUARD SCIENTIFICS INC      DBCV  2.625% 3/1 78644A65   16340 20000000 PRN   SHARED           0000000
D SAFEGUARD SCIENTIFICS INC      COM              78644910      43    23900 SH    SHARED    10      23900
D SAFETY INS GROUP INC           COM              78648T10     375    10260 SH    SHARED            10260
D SAFETY INS GROUP INC           COM              78648T10      32      900 SH    SHARED    01        900
D SAFETY INS GROUP INC           COM              78648T10     490    13381 SH    SHARED            13381
D SAFETY INS GROUP INC           COM              78648T10    1424    38900 SH    SHARED    10      38900
D SAFEWAY INC                    COM NEW          78651420   23489   686622 SH    SHARED           686622
D SAFEWAY INC                    COM NEW          78651420    1388    40581 SH    SHARED    01      40581
D SAFEWAY INC                    COM NEW          78651420    8438   246681 SH    SHARED    02     246681
D SAFEWAY INC                    COM NEW          78651420       7      220 SH    SHARED    05        220
D SAFEWAY INC                    COM NEW          78651420     155     4540 SH    SHARED    06              4540
D SAFEWAY INC                    COM NEW          78651420   17358   507419 SH    SHARED    10     507419
D SAFEWAY INC                    COM NEW          78651420      62     1813 SH    SHARED    14              1813
D SAGA COMMUNICATIONS            CL A             78659810      22     3766 SH    SHARED             3766
D SAGA COMMUNICATIONS            CL A             78659810       5      850 SH    SHARED    02        850
D SAIA INC                       COM              78709Y10     123     9269 SH    SHARED             9269
D ST JOE CO                      COM              79014810    1317    37100 SH    SHARED            37100
D ST JOE CO                      COM              79014810      71     2000 SH    SHARED    01       2000
D ST JOE CO                      COM              79014810      57     1628 SH    SHARED    02       1628
D ST JOE CO                      COM              79014810     131     3700 SH    SHARED    10       3700
D ST JUDE MED INC                DBCV  1.220%12/1 79084940    4509  4500000 PRN   SHARED          4500000
D ST JUDE MED INC                COM              79084910    1081    26609 SH    SHARED            26609
D ST JUDE MED INC                COM              79084910   24287   597634 SH    SHARED           595184          2450
D ST JUDE MED INC                COM              79084910   13562   333732 SH    SHARED    01     204817        128915
D ST JUDE MED INC                COM              79084910    3776    92917 SH    SHR/OTHR  01             92917
D ST JUDE MED INC                COM              79084910    1388    34168 SH    SHARED    02      34168
D ST JUDE MED INC                COM              79084910    2011    49500 SH    SHARED    04      49500
D ST JUDE MED INC                COM              79084910     127     3140 SH    SHARED    06              3140
D ST JUDE MED INC                COM              79084910    7684   189084 SH    SHARED    10     184714          4370
D ST JUDE MED INC                COM              79084910    1110    27316 SH    SHARED    14       1500         25816
D ST JUDE MED INC                COM              79084910    4479   110215 SH    SHARED    20      34410         75805
D ST JUDE MED INC                COM              79084910     780    19210 SH    SHR/OTHR  20            19210
D ST JUDE MED INC                COM              79084910     351     8644 SH    SHARED    21       8644
D ST JUDE MED INC                COM              79084910      32      800 SH    SHR/OTHR  21              800
D ST JUDE MED INC                COM              79084910    1109    27311 SH    SHARED    22      20251          7060
D ST JUDE MED INC                COM              79084910     174     4300 SH    SHR/OTHR  22             4300
D ST JUDE MED INC                COM              79084910    2456    60448 SH    SHARED    23      47123         13325
D ST JUDE MED INC                COM              79084910    2410    59320 SH    SHR/OTHR  23            59320
D ST MARY LD & EXPL CO           NOTE  3.500% 4/0 79222840    2767  2684000 PRN   SHARED          2684000
D ST MARY LD & EXPL CO           COM              79222810    2277    58999 SH    SHARED            24599         34400
D ST MARY LD & EXPL CO           COM              79222810     413    10700 SH    SHARED    01      10700
D ST MARY LD & EXPL CO           COM              79222810      10      275 SH    SHARED    02        275
D ST MARY LD & EXPL CO           COM              79222810   17851   462360 SH    SHARED    10     439660         22700
D SAKS INC                       NOTE  2.000% 3/1 79377WAL     886   500000 PRN   SHARED           500000
D SAKS INC                       NOTE  2.000% 3/1 79377WAL    1932  1090000 PRN   SHARED          1090000
D SAKS INC                       COM              79377W10   50124  2414455 SH    SHARED          2414455
D SAKS INC                       COM              79377W10     940    45300 SH    SHARED    01              45300
D SAKS INC                       COM              79377W10     344    16615 SH    SHARED    02      16615
D SAKS INC                       COM              79377W10     141     6800 SH    SHARED    10       6800
D SAKS INC                       COM              79377W10      11      550 SH    SHARED    21              550
D SALARY COM INC                 COM              79400610       4      319 SH    SHARED              319
D SALEM COMMUNICATIONS CORP DE   CL A             79409310       0       41 SH    SHARED               41
D SALEM COMMUNICATIONS CORP DE   CL A             79409310      10     1611 SH    SHARED    02       1611
D SALEM COMMUNICATIONS CORP DE   CL A             79409310      15     2400 SH    SHARED    10       2400
D SALESFORCE COM INC             COM              79466L30     871    13896 SH    SHARED            13896
D SALESFORCE COM INC             COM              79466L30     756    12065 SH    SHARED    01      10490          1575
D SALESFORCE COM INC             COM              79466L30    1073    17122 SH    SHARED    02      17122
D SALESFORCE COM INC             COM              79466L30    1253    20000 SH    SHARED    04      20000
D SALESFORCE COM INC             COM              79466L30   11876   189450 SH    SHARED    10     189450
D SALIX PHARMACEUTICALS INC      COM              79543510     340    43246 SH    SHARED            40746          2500
D SALIX PHARMACEUTICALS INC      COM              79543510      21     2700 SH    SHARED    01       2700
D SALIX PHARMACEUTICALS INC      COM              79543510     111    14200 SH    SHARED    02      14200
D SALIX PHARMACEUTICALS INC      COM              79543510     183    23300 SH    SHARED    10      23300
D SALIX PHARMACEUTICALS INC      COM              79543510      15     1977 SH    SHARED    21       1977
D SALLY BEAUTY HLDGS INC         COM              79546E10    1746   193036 SH    SHARED           193036
D SALLY BEAUTY HLDGS INC         COM              79546E10      30     3349 SH    SHARED    01       3349
D SALLY BEAUTY HLDGS INC         COM              79546E10     461    51000 SH    SHARED    23             51000
D SAMARITAN PHARMACEUTICALS      COM NEW          79586Q20       0      722 SH    SHARED              722
D SAN JUAN BASIN RTY TR          UNIT BEN INT     79824110     108     3243 SH    SHARED             3243
D SANDERS MORRIS HARRIS GROUP    COM              80000Q10      19     1879 SH    SHARED             1879
D SANDERSON FARMS INC            COM              80001310   32552   963663 SH    SHARED           963663
D SANDERSON FARMS INC            COM              80001310    1077    31900 SH    SHARED    10      31900
```

```
D SANDISK CORP              NOTE  1.000% 5/1 80004CAC    4336  5400000 PRN      SHARED            5400000
D SANDISK CORP              NOTE  1.000% 5/1 80004CAC   46574 58000000 PRN      SHARED      04    8000000
D SANDISK CORP              COM             80004C10     439    13254 SH        SHARED              13254
D SANDISK CORP              COM             80004C10   52662  1587649 SH        SHARED            1587649
D SANDISK CORP              COM             80004C10    1751    52800 SH        SHARED      01      51800           1000
D SANDISK CORP              COM             80004C10     171     5174 SH        SHARED      06       5174
D SANDISK CORP              COM             80004C10   19984   602500 SH        SHARED      04     602500
D SANDISK CORP              COM             80004C10      48     1460 SH        SHARED      06                      1460
D SANDISK CORP              COM             80004C10    3134    94500 SH        SHARED      10      94500
D SANDISK CORP              COM             80004C10      49     1500 SH        SHARED      15                      1500
D SANDISK CORP              COM             80004C10      46     1405 SH        SHARED      21       1405
D SANDRIDGE ENERGY INC      COM             80007P30     430    12002 SH        SHARED              12002
D SANDY SPRING BANCORP INC  COM             80036310       5      185 SH        SHARED                185
D SANDY SPRING BANCORP INC  COM             80036310      58     2100 SH        SHARED      02       2100
D SANDY SPRING BANCORP INC  COM             80036310     535    19250 SH        SHARED      10      19250
D SANFILIPPO JOHN B & SON INC COM           80042210       1      223 SH        SHARED                223
D SANGAMO BIOSCIENCES INC   COM             80067710     378    29054 SH        SHARED              29054
D SANGAMO BIOSCIENCES INC   COM             80067710      59     4600 SH        SHARED      02       4600
D SANMINA SCI CORP          COM             80090710     531   291912 SH        SHARED             291912
D SANMINA SCI CORP          COM             80090710    1428   784700 SH        SHARED      02     784700
D SANMINA SCI CORP          COM             80090710      67    37000 SH        SHARED              37000
D SANMINA SCI CORP          COM             80090710     360   198107 SH        SHARED      14                    198107
D SANOFI AVENTIS            SPONSORED ADR   80105N10     293     6442 SH        SHARED               6442
D SANOFI AVENTIS            SPONSORED ADR   80105N10       1       29 SH        SHARED      01         29
D SANOFI AVENTIS            SPONSORED ADR   80105N10     532    11700 SH        SHARED      14                     11700
D SANOFI AVENTIS            SPONSORED ADR   80105N10       4      106 SH        SHARED      21        106
D SANTA FE ENERGY TR        RCPT DEP UNITS  80201310     735    27900 SH        SHARED              27900
D SANTA MONICA MEDIA CORP   COM             80250110    7089   949121 SH        SHARED             949121
D SANTA MONICA MEDIA CORP   *W EXP 03/27/201 80250111    112   215507 SH        SHARED             215507
D SANTANDER BANCORP         COM             80280910      80     9282 SH        SHARED               9282
D SAP AKTIENGESELLSCHAFT    SPONSORED ADR   80305420     561    11004 SH        SHARED              11004
D SAP AKTIENGESELLSCHAFT    SPONSORED ADR   80305420       7      150 SH        SHARED      01                      150
D SAP AKTIENGESELLSCHAFT    SPONSORED ADR   80305420    1112    21800 SH        SHARED      02      21800
D SAP AKTIENGESELLSCHAFT    SPONSORED ADR   80305420    1888    37000 SH        SHARED      04      37000
D SAP AKTIENGESELLSCHAFT    SPONSORED ADR   80305420     226     4440 SH        SHARED      19                      4440
D SAP AKTIENGESELLSCHAFT    SPONSORED ADR   80305420      10      200 SH        SHARED      20        200
D SAPIENT CORP              COM             80306210     533    60554 SH        SHARED              60554
D SAPIENT CORP              COM             80306210      67     7675 SH        SHARED      02       7675
D SAPIENT CORP              COM             80306210     317    36000 SH        SHARED      04      36000
D SAPIENT CORP              COM             80306210     342    38900 SH        SHARED      10      38900
D SAPPI LTD                 SPON ADR NEW    80306920     360    24973 SH        SHARED              24973
D SARA LEE CORP             COM             80311110   70526  4391421 SH        SHARED            4391421
D SARA LEE CORP             COM             80311110    1499    93345 SH        SHARED      01      83270          10075
D SARA LEE CORP             COM             80311110      76     4750 SH        SHR/OTHR    01                      4750
D SARA LEE CORP             COM             80311110    9118   567774 SH        SHARED      02     567774
D SARA LEE CORP             COM             80311110       6      420 SH        SHARED      05        420
D SARA LEE CORP             COM             80311110     108     6750 SH        SHARED      06                      6750
D SARA LEE CORP             COM             80311110    5172   322078 SH        SHARED      10     322078
D SARA LEE CORP             COM             80311110     102     6400 SH        SHR/OTHR    10                      6400
D SARA LEE CORP             COM             80311110     675    42044 SH        SHARED      14      42044
D SARA LEE CORP             COM             80311110    3879   241540 SH        SHARED      16     241540
D SARA LEE CORP             COM             80311110     279    17380 SH        SHARED      20       2480          14900
D SARA LEE CORP             COM             80311110     604    37610 SH        SHR/OTHR    20                     37610
D SARA LEE CORP             COM             80311110      24     1500 SH        SHARED      23       1500
D SARA LEE CORP             COM             80311110     176    11000 SH        SHR/OTHR    23                     11000
D SASOL LTD                 SPONSORED ADR   80386630     666    13478 SH        SHARED              13478
D SATCON TECHNOLOGY CORP    COM             80389310       1     1151 SH        SHARED               1151
D SATYAM COMPUTER SERVICES LTD ADR          80409810    2830   105936 SH        SHARED             105936
D SATYAM COMPUTER SERVICES LTD ADR          80409810     732    27424 SH        SHARED      10      27424
D SATYAM COMPUTER SERVICES LTD ADR          80409810      80     3000 SH        SHARED      19                      3000
D SATYAM COMPUTER SERVICES LTD ADR          80409810      37     1410 SH        SHARED      21       1410
D SAUER-DANFOSS INC         COM             80413710      99     3979 SH        SHARED               3979
D SAUER-DANFOSS INC         COM             80413710     167     6700 SH        SHARED      01       6700
D SAUER-DANFOSS INC         COM             80413710      15      600 SH        SHARED      02        600
D SAUER-DANFOSS INC         COM             80413710       7      300 SH        SHARED      10        300
D SAUL CTRS INC             COM             80439510     225     4222 SH        SHARED               4222
D SAUL CTRS INC             COM             80439510    2419    45276 SH        SHARED      10      45276
D SAUL CTRS INC             COM             80439510   50958   953750 SH        SHARED      11     539350         414400
D SAUL CTRS INC             COM             80439510     627    11750 SH        SHR/OTHR    23                     11750
D SAVANNAH BANCORP INC      COM             80474810       2      150 SH        SHARED                150
D SAVIENT PHARMACEUTICALS INC COM           80517Q10     175     7636 SH        SHARED               7636
D SAVIENT PHARMACEUTICALS INC COM           80517Q10     574    25000 SH        SHARED      04      25000
D SAVVIS INC                NOTE  3.000% 5/1 805423AA   2697  3223000 PRN      SHARED            3223000
D SAVVIS INC                COM NEW         80542330       0       27 SH        SHARED                 27
D SAVVIS INC                COM NEW         80542330     678    24300 SH        SHARED      01      24000            300
D SAVVIS INC                COM NEW         80542330    1228    44000 SH        SHR/OTHR    01                     44000
D SAVVIS INC                COM NEW         80542330     491    17600 SH        SHARED      10      17600
D SAVVIS INC                COM NEW         80542330       3      140 SH        SHARED      21                       140
D SCANA CORP NEW            COM             80589M10    2743    65087 SH        SHARED              65087
D SCANA CORP NEW            COM             80589M10    1656    39311 SH        SHARED      01       3511          35800
D SCANA CORP NEW            COM             80589M10      30      733 SH        SHR/OTHR    01                       733
D SCANA CORP NEW            COM             80589M10     650    15426 SH        SHARED      02      15426
D SCANA CORP NEW            COM             80589M10      21      520 SH        SHARED      06                       520
D SCANA CORP NEW            COM             80589M10     430    10213 SH        SHARED      10      10213
D SCANA CORP NEW            COM             80589M10     109     2600 SH        SHARED      23       2600
D SCANA CORP NEW            COM             80589M10     343     8150 SH        SHR/OTHR    23                      8150
D SCANSOURCE INC            COM             80603710     515    15928 SH        SHARED              15928
D SCANSOURCE INC            COM             80603710   12620   390123 SH        SHARED      10     390123
D SCANSOURCE INC            COM             80603710      12      373 SH        SHARED      21                       373
D SCHAWK INC                CL A            80637310       2      148 SH        SHARED                148
D SCHAWK INC                CL A            80637310      40     2595 SH        SHARED      01       2595
D SCHAWK INC                CL A            80637310     499    32154 SH        SHARED      02      32154
D SCHAWK INC                CL A            80637310    4517   291100 SH        SHARED      10     291100
D SCHAWK INC                CL A            80637310      21     1391 SH        SHARED      21       1391
D SCHEIN HENRY INC          COM             80640710     671    10938 SH        SHARED              10938
D SCHEIN HENRY INC          COM             80640710    1860    30300 SH        SHARED      01       2500          27800
D SCHEIN HENRY INC          COM             80640710     321     5241 SH        SHARED      02       5241
D SCHEIN HENRY INC          COM             80640710    5663    92240 SH        SHARED      10      92240
D SCHEIN HENRY INC          COM             80640710     107     1750 SH        SHARED      21                      1750
D SCHEIN HENRY INC          COM             80640710      73     1200 SH        SHARED      23                      1200
D SCHERING PLOUGH CORP      COM             80660510      76     2888 SH        SHARED               1600           1288
D SCHERING PLOUGH CORP      COM             80660510   88084  3306475 SH        SHARED            3254075          52400
D SCHERING PLOUGH CORP      COM             80660510    7047   264549 SH        SHARED      01     257289           7260
D SCHERING PLOUGH CORP      COM             80660510   39465  1481447 SH        SHR/OTHR    01                   1481447
D SCHERING PLOUGH CORP      COM             80660510    1112    41762 SH        SHARED      02      41762
D SCHERING PLOUGH CORP      COM             80660510     110     4158 SH        SHARED      04                      4158
D SCHERING PLOUGH CORP      COM             80660510    6595   247571 SH        SHARED      04     247571
D SCHERING PLOUGH CORP      COM             80660510     394    14800 SH        SHARED      06                     14800
D SCHERING PLOUGH CORP      COM             80660510   99317  3728137 SH        SHARED      10    3710737          17400
D SCHERING PLOUGH CORP      COM             80660510    1503    56435 SH        SHARED      14       6835          49600
D SCHERING PLOUGH CORP      COM             80660510    1031    38717 SH        SHARED      20      32117           6600
D SCHERING PLOUGH CORP      COM             80660510    4816   180817 SH        SHR/OTHR    20                    180817
D SCHERING PLOUGH CORP      COM             80660510      64     2429 SH        SHARED      21                      2429
D SCHERING PLOUGH CORP      COM             80660510   14250   534920 SH        SHARED      22     534920
```

```
D SCHERING PLOUGH CORP         COM                    80660510    679     25500 SH  SHARED    23    2000     23500
D SCHERING PLOUGH CORP         COM                    80660510    812     30500 SH  SHR/OTHR  23              30500
D SCHERING PLOUGH CORP         PFD CONV MAN07         80660570 218629    900415 SH  SHARED        900415
D SCHERING PLOUGH CORP         PFD CONV MAN07         80660570   2719     11200 SH  SHARED    02   11200
D SCHIFF NUTRITION INTL INC    COM                    80669310      2       424 SH  SHARED           424
D SCHLUMBERGER LTD             COM                    80685710   5929     60278 SH  SHARED         60180      98
D SCHLUMBERGER LTD             COM                    80685710    309      3144 SH  SHR/OTHR                3144
D SCHLUMBERGER LTD             COM                    80685710 203303   2066722 SH  SHARED       2061827    4895
D SCHLUMBERGER LTD             COM                    80685710  17619    179118 SH  SHARED    01  142673   36445
D SCHLUMBERGER LTD             COM                    80685710   2067     21021 SH  SHR/OTHR  02             21021
D SCHLUMBERGER LTD             COM                    80685710  12282    124856 SH  SHARED    02  124856
D SCHLUMBERGER LTD             COM                    80685710 343488   3491800 SH  SHARED    04 3491800
D SCHLUMBERGER LTD             COM                    80685710   1529     15550 SH  SHARED    05   15550
D SCHLUMBERGER LTD             COM                    80685710  18877    191900 SH  SHARED    06  191900
D SCHLUMBERGER LTD             COM                    80685710 216525   2201133 SH  SHARED    10 2044233  156900
D SCHLUMBERGER LTD             COM                    80685710   8896     90442 SH  SHARED    14   38950   51492
D SCHLUMBERGER LTD             COM                    80685710    794      8080 SH  SHARED    15    8080
D SCHLUMBERGER LTD             COM                    80685710    354      3600 SH  SHARED    19    3600
D SCHLUMBERGER LTD             COM                    80685710   1273     12945 SH  SHARED    20    8250    4695
D SCHLUMBERGER LTD             COM                    80685710   1474     14992 SH  SHR/OTHR  20             14992
D SCHLUMBERGER LTD             COM                    80685710    892      9071 SH  SHARED    21     775    8296
D SCHLUMBERGER LTD             COM                    80685710    786      8000 SH  SHR/OTHR  21              8000
D SCHLUMBERGER LTD             COM                    80685710   1143     11625 SH  SHARED    22    7225    4400
D SCHLUMBERGER LTD             COM                    80685710     88       900 SH  SHR/OTHR  22               900
D SCHLUMBERGER LTD             COM                    80685710   9132     92840 SH  SHARED    23   87640    5200
D SCHLUMBERGER LTD             COM                    80685710  13299    135203 SH  SHR/OTHR  23            135203
D SCHLUMBERGER LTD             COM                    80685710   2713     27582 SH  SHARED    24   27582
D SCHMITT INDS INC ORE         COM NEW                80687020      0        55 SH  SHARED            55
D SCHNITZER STL INDS           CL A                   80688210     13       190 SH  SHARED           190
D SCHNITZER STL INDS           CL A                   80688210    138      2000 SH  SHARED          2000
D SCHNITZER STL INDS           CL A                   80688210   1569     22700 SH  SHARED    01   22600     100
D SCHNITZER STL INDS           CL A                   80688210   1036     15000 SH  SHR/OTHR  01             15000
D SCHNITZER STL INDS           CL A                   80688210   5419     78389 SH  SHARED    04   78389
D SCHNITZER STL INDS           CL A                   80688210   5956     86158 SH  SHARED    05   86158
D SCHNITZER STL INDS           CL A                   80688210    295      4278 SH  SHARED    06    4278
D SCHNITZER STL INDS           CL A                   80688210   3527     51032 SH  SHARED    10   51032
D SCHOLASTIC CORP              COM                    80706610    486     13951 SH  SHARED         13951
D SCHOLASTIC CORP              COM                    80706610    439     12600 SH  SHARED    01    1400   11200
D SCHOLASTIC CORP              COM                    80706610    375     10763 SH  SHARED    01   10763
D SCHOLASTIC CORP              COM                    80706610   2710     77700 SH  SHARED    10   77700
D SCHOOL SPECIALTY INC         NOTE  3.750% 8/0      807863AE   6486   6474000 PRN SHARED    02 6474000
D SCHOOL SPECIALTY INC         SDCV  3.750%11/3      807863AL   1974   2050000 PRN SHARED    02 2050000
D SCHOOL SPECIALTY INC         COM                    80786310     51      1491 SH  SHARED          1491
D SCHOOL SPECIALTY INC         COM                    80786310    515     14921 SH  SHARED    02   14921
D SCHOOL SPECIALTY INC         COM                    80786310    120      3500 SH  SHARED    10    3500
D SCHULMAN A INC               COM                    80819410  14399    668182 SH  SHARED        668182
D SCHULMAN A INC               COM                    80819410    105      4900 SH  SHARED    02    4900
D SCHULMAN A INC               COM                    80819410    187      8700 SH  SHARED    10    8700
D SCHWAB CHARLES CORP NEW      COM                    80851310 139764   5470246 SH  SHARED       5470246
D SCHWAB CHARLES CORP NEW      COM                    80851310   3334    130496 SH  SHARED    01  130496
D SCHWAB CHARLES CORP NEW      COM                    80851310    436     17068 SH  SHARED    02   17068
D SCHWAB CHARLES CORP NEW      COM                    80851310  57303   2242800 SH  SHARED    04 2242800
D SCHWAB CHARLES CORP NEW      COM                    80851310      9       380 SH  SHARED    05     380
D SCHWAB CHARLES CORP NEW      COM                    80851310    268     10510 SH  SHARED    06   10510
D SCHWAB CHARLES CORP NEW      COM                    80851310  14448    565496 SH  SHARED    10  565496
D SCHWAB CHARLES CORP NEW      COM                    80851310   2928    114600 SH  SHARED    14  114600
D SCHWAB CHARLES CORP NEW      COM                    80851310    229      9000 SH  SHR/OTHR  23              9000
D SCHWEITZER-MAUDUIT INTL INC  COM                    80854110    128      4943 SH  SHARED          4943
D SCHWEITZER-MAUDUIT INTL INC  COM                    80854110     40      1551 SH  SHARED    01    1551
D SCHWEITZER-MAUDUIT INTL INC  COM                    80854110    103      4000 SH  SHARED    02    4000
D SCHWEITZER-MAUDUIT INTL INC  COM                    80854110    595     23000 SH  SHARED    10   23000
D SCHWEITZER-MAUDUIT INTL INC  COM                    80854110      0        20 SH  SHR/OTHR  23                20
D SCICLONE PHARMACEUTICALS INC COM                    80862610      4      2000 SH  SHARED          2000
D SCICLONE PHARMACEUTICALS INC COM                    80862610      2       977 SH  SHARED           977
D SCIELE PHARMA INC            NOTE  2.625% 5/1      808627AA     19     20000 PRN SHARED    02   20000
D SCIELE PHARMA INC            COM                    80862710    202      9884 SH  SHARED          9884
D SCIELE PHARMA INC            COM                    80862710    111      5450 SH  SHARED    01    1600    3850
D SCIELE PHARMA INC            COM                    80862710   1037     50723 SH  SHARED    10   50723
D SCIENTIFIC GAMES CORP        SDCV  0.750%12/0      80874PAD    621    500000 PRN SHARED        500000
D SCIENTIFIC GAMES CORP        SDCV  0.750%12/0      80874PAD      1      1000 PRN SHARED    02    1000
D SCIENTIFIC GAMES CORP        CL A                   80874P10    480     14450 SH  SHARED         14450
D SCIENTIFIC GAMES CORP        CL A                   80874P10  92057   2768645 SH  SHARED       2768645
D SCIENTIFIC GAMES CORP        CL A                   80874P10    628     18900 SH  SHARED    01   18900
D SCIENTIFIC GAMES CORP        CL A                   80874P10   3627    109094 SH  SHARED    01  109094
D SCIENTIFIC GAMES CORP        CL A                   80874P10    127      3837 SH  SHARED    10    3837
D SCIENTIFIC LEARNING CORP     COM                    80876010      1       359 SH  SHARED           359
D SCOTTS MIRACLE GRO CO        CL A                   81018610    594     15892 SH  SHARED         15892
D SCOTTS MIRACLE GRO CO        CL A                   81018610    613     16400 SH  SHARED    01   16400
D SCOTTS MIRACLE GRO CO        CL A                   81018610     44      1200 SH  SHR/OTHR  01              1200
D SCOTTS MIRACLE GRO CO        CL A                   81018610    119      3200 SH  SHARED    02    3200
D SCOTTS MIRACLE GRO CO        CL A                   81018610    152      4087 SH  SHARED    10    4087
D SCOTTS MIRACLE GRO CO        CL A                   81018610     21       570 SH  SHARED    20     570
D SCOTTS MIRACLE GRO CO        CL A                   81018610     41      1103 SH  SHARED    21    1103
D SCRIPPS E W CO OHIO          CL A                   81105420   3961     88013 SH  SHARED         88013
D SCRIPPS E W CO OHIO          CL A                   81105420    417      9270 SH  SHARED    01    9270
D SCRIPPS E W CO OHIO          CL A                   81105420     74      1657 SH  SHARED    02    1657
D SCRIPPS E W CO OHIO          CL A                   81105420   1858     41300 SH  SHARED    10   41300
D SCRIPPS E W CO OHIO          CL A                   81105420    180      4000 SH  SHARED    23    4000
D SEABOARD CORP                COM                    81154310    147       100 SH  SHARED           100
D SEABOARD CORP                COM                    81154310    195       133 SH  SHARED    10     133
D SEABRIGHT INSURANCE HLDGS IN COM                    81165610    190     12652 SH  SHARED         12652
D SEABRIGHT INSURANCE HLDGS IN COM                    81165610     45      3000 SH  SHARED    01    3000
D SEABRIGHT INSURANCE HLDGS IN COM                    81165610   2035    135000 SH  SHARED    10  135000
D SEACOAST BKG CORP FLA        COM                    81170730      6       630 SH  SHARED           630
D SEACOAST BKG CORP FLA        COM                    81170730     59      5800 SH  SHARED    10    5800
D SEACOR HOLDINGS INC          DBCV  2.875%12/1      811904AJ   1352   1000000 PRN SHARED       1000000
D SEACOR HOLDINGS INC          DBCV  2.875%12/1      811904AJ    676    500000 PRN SHARED    02  500000
D SEACOR HOLDINGS INC          COM                    81190410   1128     12168 SH  SHARED         12168
D SEACOR HOLDINGS INC          COM                    81190410    689      7432 SH  SHARED    01    7432
D SEACOR HOLDINGS INC          COM                    81190410    352      3800 SH  SHARED    10    2700    1100
D SEABRIDGE GOLD INC           COM                    81191610      8       285 SH  SHARED           285
D SEALED AIR CORP NEW          COM                    81211K10   6464    279363 SH  SHARED        279363
D SEALED AIR CORP NEW          COM                    81211K10    749     32373 SH  SHARED    01   32373
D SEALED AIR CORP NEW          COM                    81211K10     60      2603 SH  SHARED    02    2603
D SEALED AIR CORP NEW          COM                    81211K10     18       820 SH  SHARED    06     820
D SEALED AIR CORP NEW          COM                    81211K10   6369    275268 SH  SHARED    10  275268
D SEALED AIR CORP NEW          COM                    81211K10     23      1000 SH  SHARED    14    1000
D SEALED AIR CORP NEW          COM                    81211K10      1        50 SH  SHARED    20      50
D SEALY CORP                   COM                    81213930    254     22710 SH  SHARED         22710
D SEARS HLDGS CORP             COM                    81235010  50849    498276 SH  SHARED        498276
D SEARS HLDGS CORP             COM                    81235010    780      7644 SH  SHARED    01    7644
D SEARS HLDGS CORP             COM                    81235010  30072    294687 SH  SHARED    02  294687
D SEARS HLDGS CORP             COM                    81235010    105      1037 SH  SHARED    06             1037
D SEARS HLDGS CORP             COM                    81235010   3758     36834 SH  SHARED    10   36834
```

| D | Name | Class | CUSIP | Value | Amount | Type | Code | Col1 | Col2 |
|---|---|---|---|---|---|---|---|---|---|
| D | SEARS HLDGS CORP | COM | 81235010 | 255 | 2500 SH | SHARED | 14 | | 2500 |
| D | SEARS HLDGS CORP | COM | 81235010 | 2551 | 25000 SH | SHARED | 15 | | 25000 |
| D | SEATTLE GENETICS INC | COM | 81257810 | 493 | 43270 SH | SHARED | | 43270 | |
| D | SEATTLE GENETICS INC | COM | 81257810 | 34 | 3000 SH | SHARED | 01 | | 3000 |
| D | SELECT SECTOR SPDR TR | SBI MATERIALS | 81369Y10 | 47955 | 1150000 SH | SHARED | | 1150000 | |
| D | SELECT SECTOR SPDR TR | SBI MATERIALS | 81369Y10 | 162 | 3900 SH | SHARED | 01 | 3900 | |
| D | SELECT SECTOR SPDR TR | SBI MATERIALS | 81369Y10 | 573 | 13758 SH | SHARED | 02 | 13758 | |
| D | SELECT SECTOR SPDR TR | SBI MATERIALS | 81369Y10 | 94 | 2270 SH | SHARED | 23 | 2270 | |
| D | SELECT SECTOR SPDR TR | SBI HEALTHCARE | 81369Y20 | 26835 | 760000 SH | SHARED | | 760000 | |
| D | SELECT SECTOR SPDR TR | SBI HEALTHCARE | 81369Y20 | 211 | 6000 SH | SHARED | | | 6000 |
| D | SELECT SECTOR SPDR TR | SBI HEALTHCARE | 81369Y20 | 2118 | 60000 SH | SHARED | 02 | 60000 | |
| D | SELECT SECTOR SPDR TR | SBI HEALTHCARE | 81369Y20 | 20 | 590 SH | SHARED | 23 | 590 | |
| D | SELECT SECTOR SPDR TR | SBI CONS STPLS | 81369Y30 | 8177 | 283958 SH | SHARED | | 283958 | |
| D | SELECT SECTOR SPDR TR | SBI CONS STPLS | 81369Y30 | 9634 | 334538 SH | SHARED | 02 | 334538 | |
| D | SELECT SECTOR SPDR TR | SBI CONS STPLS | 81369Y30 | 28 | 1000 SH | SHARED | 21 | 1000 | |
| D | SELECT SECTOR SPDR TR | SBI CONS STPLS | 81369Y30 | 19 | 690 SH | SHARED | 23 | 690 | |
| D | SELECT SECTOR SPDR TR | SBI CONS DISCR | 81369Y40 | 45907 | 1403900 SH | SHARED | | 1403900 | |
| D | SELECT SECTOR SPDR TR | SBI CONS DISCR | 81369Y40 | 26 | 824 SH | SHARED | 02 | 824 | |
| D | SELECT SECTOR SPDR TR | SBI CONS DISCR | 81369Y40 | 14 | 447 SH | SHARED | 20 | 447 | |
| D | SELECT SECTOR SPDR TR | SBI INT-ENERGY | 81369Y50 | 451371 | 5688357 SH | SHARED | | 5688357 | |
| D | SELECT SECTOR SPDR TR | SBI INT-ENERGY | 81369Y50 | 83 | 1047 SH | SHARED | 01 | | 1047 |
| D | SELECT SECTOR SPDR TR | SBI INT-ENERGY | 81369Y50 | 6109 | 77000 SH | SHARED | 10 | 77000 | |
| D | SELECT SECTOR SPDR TR | SBI INT-ENERGY | 81369Y50 | 24 | 313 SH | SHARED | 20 | 313 | |
| D | SELECT SECTOR SPDR TR | SBI INT-ENERGY | 81369Y50 | 39 | 500 SH | SHR/OTHR | 23 | | 500 |
| D | SELECT SECTOR SPDR TR | SBI INT-FINL | 81369Y60 | 424761 | 14682391 SH | SHARED | | 4682391 | |
| D | SELECT SECTOR SPDR TR | SBI INT-FINL | 81369Y60 | 13812 | 477434 SH | SHARED | 02 | 477434 | |
| D | SELECT SECTOR SPDR TR | SBI INT-FINL | 81369Y60 | 2603 | 90000 SH | SHARED | 10 | 90000 | |
| D | SELECT SECTOR SPDR TR | SBI INT-FINL | 81369Y60 | 17 | 620 SH | SHARED | 23 | 620 | |
| D | SELECT SECTOR SPDR TR | SBI INT-INDS | 81369Y70 | 50908 | 1300000 SH | SHARED | | 1300000 | |
| D | SELECT SECTOR SPDR TR | SBI INT-INDS | 81369Y70 | 34 | 882 SH | SHARED | 02 | 882 | |
| D | SELECT SECTOR SPDR TR | SBI INT-INDS | 81369Y70 | 15 | 385 SH | SHARED | 23 | 385 | |
| D | SELECT SECTOR SPDR TR | SBI INT-TECH | 81369Y80 | 11989 | 449700 SH | SHARED | | 449700 | |
| D | SELECT SECTOR SPDR TR | SBI INT-TECH | 81369Y80 | 120 | 4530 SH | SHARED | 01 | | 4530 |
| D | SELECT SECTOR SPDR TR | SBI INT-TECH | 81369Y80 | 12 | 459 SH | SHARED | 20 | 459 | |
| D | SELECT SECTOR SPDR TR | SBI INT-TECH | 81369Y80 | 18 | 705 SH | SHARED | 23 | 705 | |
| D | SELECT SECTOR SPDR TR | SBI INT-UTILS | 81369Y88 | 30023 | 709262 SH | SHARED | | 709262 | |
| D | SELECT SECTOR SPDR TR | SBI INT-UTILS | 81369Y88 | 1080 | 25526 SH | SHARED | 02 | 25526 | |
| D | SELECT SECTOR SPDR TR | SBI INT-UTILS | 81369Y88 | 8000 | 189000 SH | SHARED | 10 | 189000 | |
| D | SELECT SECTOR SPDR TR | SBI INT-UTILS | 81369Y88 | 40 | 960 SH | SHARED | 23 | 960 | |
| D | SECURE COMPUTING CORP | COM | 81370510 | 962 | 100287 SH | SHARED | | 100287 | |
| D | SECURE COMPUTING CORP | COM | 81370510 | 18 | 1900 SH | SHARED | 01 | 1900 | |
| D | SECURE COMPUTING CORP | COM | 81370510 | 55 | 5825 SH | SHARED | 02 | 5825 | |
| D | SECURE COMPUTING CORP | COM | 81370510 | 648 | 67600 SH | SHARED | 05 | 67600 | |
| D | SECURE COMPUTING CORP | COM | 81370510 | 1769 | 184300 SH | SHARED | 10 | 184300 | |
| D | SECURE AMER ACQUISITION CORP | UNIT 10/23/2011 | 81372L20 | 383 | 48328 SH | SHARED | | 48328 | |
| D | SECURITY BANK CORP | COM | 81404710 | 38 | 4200 SH | SHARED | | 4200 | |
| D | SECURITY BANK CORP | COM | 81404710 | 48 | 5300 SH | SHARED | 10 | 5300 | |
| D | SECURITY NATL FINL CORP | CL A NEW | 81478530 | 0 | 121 SH | SHARED | | 121 | |
| D | SECURITY W ADVANCED TECHNOLO | COM | 81517510 | 0 | 99 SH | SHARED | | 99 | |
| D | SELECT COMFORT CORP | COM | 81616X10 | 133 | 19028 SH | SHARED | | 19028 | |
| D | SELECT COMFORT CORP | COM | 81616X10 | 12 | 1838 SH | SHARED | 21 | 1838 | |
| D | SELECTICA INC | COM | 81628810 | 1 | 691 SH | SHARED | | 691 | |
| D | SELECTIVE INS GROUP INC | COM | 81630010 | 2224 | 96768 SH | SHARED | | 96768 | |
| D | SELECTIVE INS GROUP INC | COM | 81630010 | 38 | 1675 SH | SHARED | 01 | 1675 | |
| D | SELECTIVE INS GROUP INC | COM | 81630010 | 491 | 21400 SH | SHARED | 02 | 21400 | |
| D | SELECTIVE INS GROUP INC | COM | 81630010 | 12435 | 540900 SH | SHARED | 10 | 540900 | |
| D | SELIGMAN LASALLE INTL REAL E | COM | 81634A10 | 870 | 53900 SH | SHARED | | 53900 | |
| D | SELIGMAN SELECT MUN FD INC | COM | 81634410 | 58 | 5910 SH | SHARED | | 5910 | |
| D | SEMGROUP ENERGY PARTNERS L P | COM UNIT LP | 81662W10 | 1163 | 40350 SH | SHARED | | 40350 | |
| D | SEMICONDUCTOR MFG INTL CORP | SPONSORED ADR | 81663020 | 174 | 33600 SH | SHARED | | 30000 | 3600 |
| D | SEMICONDUCTOR HLDRS TR | DEP RCPT | 81663620 | 0 | 10 SH | SHARED | | 10 | |
| D | SEMICONDUCTOR HLDRS TR | DEP RCPT | 81663620 | 16 | 500 SH | SHARED | 01 | | 500 |
| D | SEMICONDUCTOR HLDRS TR | DEP RCPT | 81663620 | 19329 | 595493 SH | SHARED | 02 | 595493 | |
| D | SEMOTUS SOLUTIONS INC | COM NEW | 81684P20 | 0 | 46 SH | SHARED | | 46 | |
| D | SEMTECH CORP | COM | 81685010 | 3745 | 241327 SH | SHARED | | 241327 | |
| D | SEMTECH CORP | COM | 81685010 | 228 | 14750 SH | SHARED | 01 | 450 | 14300 |
| D | SEMTECH CORP | COM | 81685010 | 99 | 6442 SH | SHARED | 02 | 6442 | |
| D | SEMTECH CORP | COM | 81685010 | 336 | 21657 SH | SHARED | 10 | 21657 | |
| D | SEMPRA ENERGY | COM | 81685110 | 16994 | 274638 SH | SHARED | | 256138 | 18500 |
| D | SEMPRA ENERGY | COM | 81685110 | 10945 | 176880 SH | SHARED | 01 | 176880 | |
| D | SEMPRA ENERGY | COM | 81685110 | 535 | 8658 SH | SHARED | 02 | 8658 | |
| D | SEMPRA ENERGY | COM | 81685110 | 22 | 364 SH | SHARED | 04 | | 364 |
| D | SEMPRA ENERGY | COM | 81685110 | 10 | 170 SH | SHARED | 05 | 170 | |
| D | SEMPRA ENERGY | COM | 81685110 | 173 | 2800 SH | SHARED | 06 | | 2800 |
| D | SEMPRA ENERGY | COM | 81685110 | 92694 | 1497977 SH | SHARED | 10 | 1419877 | 78100 |
| D | SEMPRA ENERGY | COM | 81685110 | 74 | 1200 SH | SHARED | 14 | | 1200 |
| D | SEMPRA ENERGY | COM | 81685110 | 14 | 230 SH | SHARED | 20 | 230 | |
| D | SEMPRA ENERGY | COM | 81685110 | 6 | 100 SH | SHR/OTHR | 23 | | 100 |
| D | SEMPRA ENERGY | COM | 81685110 | 17 | 285 SH | SHARED | 21 | | 285 |
| D | SEMPRA ENERGY | COM | 81685110 | 46 | 751 SH | SHR/OTHR | 23 | | 751 |
| D | SENITOOL INC | COM | 81690910 | 422 | 48635 SH | SHARED | | 48635 | |
| D | SENECA FOODS CORP NEW | CL A | 81707050 | 3 | 141 SH | SHARED | | 141 | |
| D | SENECA FOODS CORP NEW | CL A | 81707050 | 7 | 300 SH | SHARED | 02 | 300 | |
| D | SENESCO TECHNOLOGIES INC | COM NEW | 81720840 | 0 | 416 SH | SHARED | | 416 | |
| D | SENIOR HSG PPTYS TR | SH BEN INT | 81721M10 | 176 | 7772 SH | SHARED | | 7772 | |
| D | SENIOR HSG PPTYS TR | SH BEN INT | 81721M10 | 81 | 3600 SH | SHARED | 01 | 3600 | |
| D | SENIOR HSG PPTYS TR | SH BEN INT | 81721M10 | 8109 | 357550 SH | SHARED | 10 | 357550 | |
| D | SENIOR HSG PPTYS TR | SH BEN INT | 81721M10 | 165503 | 7297340 SH | SHARED | 11 | 2959540 | 4337800 |
| D | SENOMYX INC | COM | 81724Q10 | 5918 | 790125 SH | SHARED | | 790125 | |
| D | SENOMYX INC | COM | 81724Q10 | 0 | 4 SH | SHARED | | 4 | |
| D | SENOMYX INC | COM | 81724Q10 | 767 | 102500 SH | SHARED | 10 | 102500 | |
| D | SENORX INC | COM | 81724H10 | 2 | 328 SH | SHARED | | 328 | |
| D | SENSIENT TECHNOLOGIES CORP | COM | 81725T10 | 2529 | 89442 SH | SHARED | | 89442 | |
| D | SENSIENT TECHNOLOGIES CORP | COM | 81725T10 | 408 | 14438 SH | SHARED | 01 | | 14438 |
| D | SENSIENT TECHNOLOGIES CORP | COM | 81725T10 | 190 | 6726 SH | SHARED | 01 | 6726 | |
| D | SENSIENT TECHNOLOGIES CORP | COM | 81725T10 | 613 | 21700 SH | SHARED | 10 | 21700 | |
| D | SEPRACOR INC | NOTE 12/1 | 81731SAS | 505 | 500000 PRN | SHARED | | 500000 | |
| D | SEPRACOR INC | NOTE 12/1 | 81731SAT | 1011 | 1000000 PRN | SHARED | 02 | 1000000 | |
| D | SEPRACOR INC | NOTE 12/1 | 81731SAU | 4552 | 4356000 PRN | SHARED | | 4356000 | |
| D | SEPRACOR INC | NOTE 12/1 | 81731SAU | 5498 | 5262000 PRN | SHARED | 02 | 5262000 | |
| D | SEPRACOR INC | NOTE 10/1 | 81731SAW | 2125 | 2354000 PRN | SHARED | | 2354000 | |
| D | SEPRACOR INC | NOTE 10/1 | 81731SAW | 16468 | 18238000 PRN | SHARED | 02 | 8238000 | |
| D | SEPRACOR INC | COM | 81731510 | 4748 | 180882 SH | SHARED | | 68382 | 112500 |
| D | SEPRACOR INC | COM | 81731510 | 1594 | 60750 SH | SHARED | 01 | 24840 | 35910 |
| D | SEPRACOR INC | COM | 81731510 | 36 | 1375 SH | SHR/OTHR | 01 | | 1375 |
| D | SEPRACOR INC | COM | 81731510 | 1064 | 40565 SH | SHARED | 02 | 40565 | |
| D | SEPRACOR INC | COM | 81731510 | 2905 | 110697 SH | SHARED | 04 | 110697 | |
| D | SEPRACOR INC | COM | 81731510 | 47079 | 1793500 SH | SHARED | 10 | 1775000 | 18500 |
| D | SEPRACOR INC | COM | 81731510 | 6 | 250 SH | SHARED | 20 | 250 | |
| D | SEPRACOR INC | COM | 81731510 | 5 | 200 SH | SHR/OTHR | 21 | | 200 |
| D | SEPRACOR INC | COM | 81731510 | 17 | 650 SH | SHARED | 22 | 250 | 400 |
| D | SEQUENOM INC | COM NEW | 81733740 | 417 | 43678 SH | SHARED | | 43678 | |
| D | SEQUENOM INC | COM NEW | 81733740 | 47 | 5000 SH | SHARED | 02 | 5000 | |
| D | SERVICE CORP INTL | COM | 81756510 | 28 | 2000 SH | SHARED | | 2000 | |

```
D SERVICE CORP INTL              COM               81756510    1730   123200 SH    SHARED            123200
D SERVICE CORP INTL              COM               81756510    1216    86600 SH    SHARED     01              86600
D SERVICE CORP INTL              COM               81756510     191    13647 SH    SHARED     02      13647
D SERVICE CORP INTL              COM               81756510     224    16000 SH    SHARED     10      16000
D SERVICE CORP INTL              COM               81756510      63     4500 SH    SHARED     22       4500
D SERVIDYNE INC                  COM               81765M10       0       51 SH    SHARED                   51
D SERVOTRONICS INC               COM               81773210       0       10 SH    SHARED                   10
D SEVERN BANCORP ANNAPOLIS MD    COM               81811M10       1      178 SH    SHARED                  178
D SHANDA INTERACTIVE ENTMT LTD   SPONSORED ADR     81941Q20    5159   154756 SH    SHARED            154756
D SHARPER IMAGE CORP             COM               82001310      14     5177 SH    SHARED              5177
D SHAW COMMUNICATIONS INC        CL B CONV         82028K20   62689  2647371 SH    SHARED           2647371
D SHAW COMMUNICATIONS INC        CL B CONV         82028K20      60     2540 SH    SHARED     01       2540
D SHAW COMMUNICATIONS INC        CL B CONV         82028K20      18      800 SH    SHARED     06               800
D SHAW COMMUNICATIONS INC        CL B CONV         82028K20     442    18700 SH    SHARED     10      18700
D SHAW COMMUNICATIONS INC        CL B CONV         82028K20     361    15266 SH    SHARED     14             15266
D SHAW COMMUNICATIONS INC        CL B CONV         82028K20     284    12000 SH    SHARED     23             12000
D SHAW GROUP INC                 COM               82028010      28      472 SH    SHARED                  472
D SHAW GROUP INC                 COM               82028010    4215    69747 SH    SHARED            48047      21700
D SHAW GROUP INC                 COM               82028010     446     7395 SH    SHARED     01       7395
D SHAW GROUP INC                 COM               82028010      24      400 SH    SHR/OTHR   01               400
D SHAW GROUP INC                 COM               82028010     548     9067 SH    SHARED     02       9067
D SHAW GROUP INC                 COM               82028010    9565   158267 SH    SHARED     04     158267
D SHAW GROUP INC                 COM               82028010   10178   168405 SH    SHARED     05     168405
D SHAW GROUP INC                 COM               82028010     513     8489 SH    SHARED     06       8489       8489
D SHAW GROUP INC                 COM               82028010   18146   300238 SH    SHARED     10     293138       7100
D SHAW GROUP INC                 COM               82028010      11      190 SH    SHARED     21               190
D SHENANDOAH TELECOMMUNICATION   COM               82312B10      16      671 SH    SHARED                  671
D SHENANDOAH TELECOMMUNICATION   COM               82312B10     261    10900 SH    SHARED     10      10900
D SHERWIN WILLIAMS CO            COM               82434810  144923  2496954 SH    SHARED           2496954
D SHERWIN WILLIAMS CO            COM               82434810    1119    19294 SH    SHARED     01      17794       1500
D SHERWIN WILLIAMS CO            COM               82434810    1436    24750 SH    SHARED     02      24750
D SHERWIN WILLIAMS CO            COM               82434810       6      120 SH    SHARED     05        120
D SHERWIN WILLIAMS CO            COM               82434810      44      770 SH    SHARED     06                770
D SHERWIN WILLIAMS CO            COM               82434810   30331   522594 SH    SHARED     10     522594
D SHERWIN WILLIAMS CO            COM               82434810     156     2700 SH    SHARED     14       2700       2700
D SHERWIN WILLIAMS CO            COM               82434810     163     2810 SH    SHARED     20       1810       1000
D SHERWIN WILLIAMS CO            COM               82434810     504     8699 SH    SHARED     21       8161        538
D SHERWIN WILLIAMS CO            COM               82434810      26      450 SH    SHR/OTHR   23                450
D SHILOH INDS INC                COM               82454310       2      230 SH    SHARED                  230
D SHILOH INDS INC                COM               82454310       3      400 SH    SHARED     02        400
D SHINHAN FINANCIAL GROUP CO L   SPN ADR RESTRD    82459610    1740    15180 SH    SHARED             15180
D SHIRE PLC                      SPONSORED ADR     82481R10   26863   389602 SH    SHARED            389602
D SHIRE PLC                      SPONSORED ADR     82481R10    2511    36432 SH    SHARED     02      36432
D SHIRE PLC                      SPONSORED ADR     82481R10    5706    82760 SH    SHARED     10      82760
D SHIRE PLC                      SPONSORED ADR     82481R10      71     1040 SH    SHARED     21       1040
D SHIRE PLC                      SPONSORED ADR     82481R10     193     2800 SH    SHARED     23       2800
D SHOE CARNIVAL INC              COM               82488910     737    52258 SH    SHARED             52258
D SHOE CARNIVAL INC              COM               82488910      19     1400 SH    SHARED     01       1400
D SHOE CARNIVAL INC              COM               82488910     172    12200 SH    SHARED     10      12200
D SHOE PAVILION INC              COM               82489410       0      155 SH    SHARED                  155
D SHORE BANCSHARES INC           COM               82510710       4      207 SH    SHARED                  207
D SHUFFLE MASTER INC             COM               82554910     188    15700 SH    SHARED             15700
D SHUFFLE MASTER INC             COM               82554910      64     5420 SH    SHARED     01       5420
D SHUFFLE MASTER INC             COM               82554910       3      300 SH    SHARED     02        300
D SHUFFLE MASTER INC             COM               82554910       5      495 SH    SHARED     21               495
D SHUTTERFLY INC                 COM               82568P30     167     6533 SH    SHARED              6533
D SHUTTERFLY INC                 COM               82568P30      23      900 SH    SHARED     01        900
D SHUTTERFLY INC                 COM               82568P30     476    18600 SH    SHARED     10      18600
D SIEBERT FINL CORP              COM               82617610       0       64 SH    SHARED                   64
D SIEMENS A G                    SPONSORED ADR     82619750     947     6024 SH    SHARED              6024
D SIEMENS A G                    SPONSORED ADR     82619750      26      171 SH    SHARED     01         21            150
D SIEMENS A G                    SPONSORED ADR     82619750      23      150 SH    SHR/OTHR   01                150
D SIEMENS A G                    SPONSORED ADR     82619750      31      200 SH    SHARED     20        200
D SIEMENS A G                    SPONSORED ADR     82619750      94      600 SH    SHARED     21        600
D SIEMENS A G                    SPONSORED ADR     82619750     236     1500 SH    SHARED     23       1500
D SIEMENS A G                    SPONSORED ADR     82619750      31      200 SH    SHR/OTHR   23                200
D SIERRA BANCORP                 COM               82620P10       0        2 SH    SHARED                    2
D SIERRA HEALTH SVCS INC         DBCV  2.250% 3/1  826322AA   14759  3217000 PRN   SHARED           3217000
D SIERRA HEALTH SVCS INC         DBCV  2.250% 3/1  826322AB    2151   469000 PRN   SHARED     02     469000
D SIERRA HEALTH SVCS INC         COM               82632210    6115   145756 SH    SHARED            145756
D SIERRA HEALTH SVCS INC         COM               82632210      29      700 SH    SHARED     01        700
D SIERRA HEALTH SVCS INC         COM               82632210     109     2600 SH    SHARED     10       2600
D SIERRA PAC RES NEW             COM               82642810    1898   111781 SH    SHARED             44681      67100
D SIERRA PAC RES NEW             COM               82642810    1331    78440 SH    SHARED     01      10440      68000
D SIERRA PAC RES NEW             COM               82642810     330    19446 SH    SHARED     02      19446
D SIERRA PAC RES NEW             COM               82642810    7850   462350 SH    SHARED     10     462350
D SIERRA PAC RES NEW             COM               82642810     338    19959 SH    SHARED     21      19959
D SIERRA WIRELESS INC            COM               82651610      63     4267 SH    SHARED              4267
D SIFCO INDS INC                 COM               82654610     138     8249 SH    SHARED              8249
D SIFY TECHNOLOGIES LIMITED      SPONSORED ADR     82655M10      61    11593 SH    SHARED             11593
D SIGMA ALDRICH CORP             COM               82655210    6685   122444 SH    SHARED            122444
D SIGMA ALDRICH CORP             COM               82655210     877    16064 SH    SHARED     01      13564       2500
D SIGMA ALDRICH CORP             COM               82655210      40      750 SH    SHR/OTHR   01                750
D SIGMA ALDRICH CORP             COM               82655210     384     7034 SH    SHARED     02       7034
D SIGMA ALDRICH CORP             COM               82655210      53      980 SH    SHARED     06                980
D SIGMA ALDRICH CORP             COM               82655210    2997    54908 SH    SHARED     10      54908
D SIGMA ALDRICH CORP             COM               82655210     642    11773 SH    SHARED     20       4160       7613
D SIGMA ALDRICH CORP             COM               82655210     546    10000 SH    SHR/OTHR   20               10000
D SIGMA ALDRICH CORP             COM               82655210      10      200 SH    SHARED     23        200
D SIGMA ALDRICH CORP             COM               82655210     196     3600 SH    SHR/OTHR   23               3600
D SIGMA DESIGNS INC              COM               82656510    1466    26561 SH    SHARED             26561
D SIGMA DESIGNS INC              COM               82656510     335     6075 SH    SHARED     01       6075
D SIGMA DESIGNS INC              COM               82656510      88     1600 SH    SHARED     10       1600
D SIGMATRON INTL INC             COM               82661L10       0       88 SH    SHARED                   88
D SIGMATEL INC                   COM               82661W10       2     1325 SH    SHARED              1325
D SIGNATURE BK NEW YORK N Y      COM               82669G10     419    12418 SH    SHARED             12418
D SIGNATURE BK NEW YORK N Y      COM               82669G10      64     1900 SH    SHARED     01       1900
D SIGNATURE BK NEW YORK N Y      COM               82669G10     211     6253 SH    SHARED     02       6253
D SIGNATURE BK NEW YORK N Y      COM               82669G10     429    12733 SH    SHARED     10      12733
D SIGNATURE BK NEW YORK N Y      COM               82669G10       3       95 SH    SHARED     21                95
D SIGNALIFE INC                  COM               82669H10       0      827 SH    SHARED                  827
D SIGA TECHNOLOGIES INC          COM               82691710       2      682 SH    SHARED                  682
D SILICON LABORATORIES INC       COM               82691910    2742    73273 SH    SHARED             73273
D SILICON LABORATORIES INC       COM               82691910    1030    27540 SH    SHARED     01      11340      16200
D SILICON LABORATORIES INC       COM               82691910     483    12911 SH    SHARED     02      12911
D SILICON LABORATORIES INC       COM               82691910     934    24970 SH    SHARED     10      24970
D SILGAN HOLDINGS INC            COM               82704810     617    11882 SH    SHARED             11882
D SILGAN HOLDINGS INC            COM               82704810    1591    30645 SH    SHARED     10      30645
D SILICON IMAGE INC              COM               82705710     127    28258 SH    SHARED             28258
D SILICON GRAPHICS INC           COM NEW           82705630    1587    27818 SH    SHARED             27818
D SILICON STORAGE TECHNOLOGY I   COM               82705710      16     5453 SH    SHARED              5453
D SILICON STORAGE TECHNOLOGY I   COM               82705710      60    20300 SH    SHARED     01              20300
D SILICON MOTION TECHNOLOGY CO   SPONSORED ADR     82706C10    5957   335087 SH    SHARED            335087
D SILICON VY BANCSHARES          NOTE        6/1   827064AC    1505  1000000 PRN   SHARED           1000000
```

```
D SILICONWARE PRECISION INDS L    SPONSD ADR SPL    82708486     407    45889 SH     SHARED            45889
D SILICONWARE PRECISION INDS L    SPONSD ADR SPL    82708486       3      345 SH     SHARED              345
D SILVER STD RES INC              COM               82823L10     230     6322 SH     SHARED             6322
D SILVER STD RES INC              COM               82823L10    5072   138864 SH     SHARED      04   138864
D SILVER STD RES INC              COM               82823L10      85     2330 SH     SHARED                         2330
D SILVER STATE BANCORP            COM               82825110       3      262 SH     SHARED              262
D SILVER WHEATON CORP             COM               82833610     169    10000 SH     SHARED                        10000
D SILVER WHEATON CORP             COM               82833610    4823   284257 SH     SHARED           284257
D SILVER WHEATON CORP             COM               82833610    6278   370000 SH     SHARED      02   370000
D SILVER WHEATON CORP             COM               82833610   10163   598910 SH     SHARED      04   598910
D SILVER WHEATON CORP             COM               82833610    7636   450000 SH     SHARED      05   450000
D SILVER WHEATON CORP             COM               82833610   30473  1795700 SH     SHARED      10  1795700
D SILVER WHEATON CORP             COM               82833610       8      500 SH     SHARED      19                 500
D SILVERLEAF RESORTS INC          COM               82870020       2      522 SH     SHARED              522
D SIMCERE PHARMACEUTICAL GROUP    SPON ADR          82859P10       0       11 SH     SHARED               11
D SIMCLAR INC                     COM               82859910       0       44 SH     SHARED               44
D SIMMONS 1ST NATL CORP           CL A $1 PAR       82873020       3      117 SH     SHARED              117
D SIMMONS 1ST NATL CORP           CL A $1 PAR       82873020     119     4500 SH     SHARED      02     4500
D SIMMONS 1ST NATL CORP           CL A $1 PAR       82873020     196     7400 SH     SHARED      10     7400
D SIMON PPTY GROUP INC NEW        COM               82880610   29239   336624 SH     SHARED           325524           11100
D SIMON PPTY GROUP INC NEW        COM               82880610    2482    28583 SH     SHARED      01    26513            2070
D SIMON PPTY GROUP INC NEW        COM               82880610     531     6117 SH     SHARED      02     6117
D SIMON PPTY GROUP INC NEW        COM               82880610       8      100 SH     SHARED      05      100
D SIMON PPTY GROUP INC NEW        COM               82880610  548476   557265 SH     SHARED      10   548475            8790
D SIMON PPTY GROUP INC NEW        COM               82880610  747946  8610944 SH     SHARED      11  4460143         4150801
D SIMON PPTY GROUP INC NEW        COM               82880610     382     4400 SH     SHARED      14     4400
D SIMON PPTY GROUP INC NEW        COM               82880610     672     7740 SH     SHARED      20     1660            6080
D SIMON PPTY GROUP INC NEW        COM               82880610     342     3940 SH     SHR/OTHR    20     3940
D SIMON PPTY GROUP INC NEW        COM               82880610      13      150 SH     SHARED      22      150
D SIMON PPTY GROUP INC NEW        COM               82880610     256     2950 SH     SHARED      23     2600             350
D SIMON PPTY GROUP INC NEW        COM               82880610      43      500 SH     SHR/OTHR    23      500
D SIMON PPTY GROUP INC NEW        PFD CONV I 6%     82880680   85030  1188571 SH     SHARED          1188571
D SIMON PPTY GROUP INC NEW        PFD CONV I 6%     82880680     129     1810 SH     SHARED      01      60            1750
D SIMON PPTY GROUP INC NEW        PFD CONV I 6%     82880680    3369    47098 SH     SHARED      02    47098
D SIMON PPTY GROUP INC NEW        PFD CONV I 6%     82880680      75     1050 SH     SHARED      10     1050
D SIMON PPTY GROUP INC NEW        PFD CONV I 6%     82880680      35      498 SH     SHR/OTHR    23                     498
D SIMPSON MANUFACTURING CO INC    COM               82907310      69     2627 SH     SHARED             2627
D SIMPSON MANUFACTURING CO INC    COM               82907310     113     4274 SH     SHARED      10     4274
D SIMTEK CORP                     COM NEW           82920430       0      352 SH     SHARED              352
D SIMULATIONS PLUS INC            COM               82921410       0      182 SH     SHARED              182
D SINA CORP                       NOTE        7/1   82922RAB    3612  2000000 PRN    SHARED          2000000
D SINA CORP                       NOTE        7/1   82922RAB    7901  4375000 PRN    SHARED          4375000
D SINCLAIR BROADCAST GROUP INC    NOTE  3.000% 5/1  82922GAW  716000  8000000 SH     SHARED          8000000
D SINCLAIR BROADCAST GROUP INC    NOTE  3.000% 5/1  82922GAW  808632  9035000 SH     SHARED      02  9035000
D SINCLAIR BROADCAST GROUP INC    CL A              82922610     502    61190 SH     SHARED            61190
D SINCLAIR BROADCAST GROUP INC    CL A              82922610     121    14775 SH     SHARED      02    14775
D SINCLAIR BROADCAST GROUP INC    CL A              82922610     846   103100 SH     SHARED      10   103100
D SINGAPORE FD INC                COM               82929L10       0       40 SH     SHARED               40
D SINGAPORE FD INC                COM               82929L10     176     9940 SH     SHARED      01                    9940
D SINGAPORE FD INC                COM               82929L10     168     9440 SH     SHARED      23     9440
D SINGAPORE FD INC                COM               82929L10     373    20978 SH     SHR/OTHR    23                   20978
D SINOPEC SHANGHAI PETROCHEMIC    SPON ADR H        82935M10     840    13766 SH     SHARED            13766
D SIRONA DENTAL SYSTEMS INC       COM               82966U10     777     2320 SH     SHARED             2320
D SIRIUS SATELLITE RADIO INC      NOTE  2.500% 2/1  82966UAC      21    21000 PRN    SHARED      02    21000
D SIRIUS SATELLITE RADIO INC      COM               82966U10     471   155734 SH     SHARED           155734
D SIRIUS SATELLITE RADIO INC      COM               82966U10     174    57445 SH     SHARED      01    37445           20000
D SIRIUS SATELLITE RADIO INC      COM               82966U10     451   149075 SH     SHARED      02   149075
D SIRIUS SATELLITE RADIO INC      COM               82966U10      20     6730 SH     SHARED      06                    6730
D SIRIUS SATELLITE RADIO INC      COM               82966U10     288    95300 SH     SHARED      10    95300
D SIRIUS SATELLITE RADIO INC      COM               82966U10     163    53900 SH     SHARED      14                   53900
D SIRIUS SATELLITE RADIO INC      COM               82966U10       3     1000 SH     SHARED      20     1000
D SIRIUS SATELLITE RADIO INC      COM               82966U10      10     3500 SH     SHR/OTHR    23                    3500
D SIRF TECHNOLOGY HLDGS INC       COM               82967H10    7893   314087 SH     SHARED           314087
D SIRF TECHNOLOGY HLDGS INC       COM               82967H10     249     9940 SH     SHARED      01                    9940
D SIRF TECHNOLOGY HLDGS INC       COM               82967H10  128881  5128600 SH     SHARED      04  5128600
D SIRF TECHNOLOGY HLDGS INC       COM               82967H10    7917   315055 SH     SHARED      10   315055
D SIRF TECHNOLOGY HLDGS INC       COM               82967H10     904    36000 SH     SHARED      14    36000
D SIRTRIS PHARMACEUTICALS INC     COM               82968A10     922    67379 SH     SHARED            67379
D SIX FLAGS INC                   COM               83001P10      38    19068 SH     SHARED            19068
D SIX FLAGS INC                   COM               83001P10      76    37900 SH     SHARED      10    37900
D SIX FLAGS INC                   COM               83001P10     203   100000 SH     SHARED      22   100000
D SIX FLAGS INC                   PIERS             83001P50   10061   701150 SH     SHARED           701150
D SKECHERS U S A INC              CL A              83056610    2229   114291 SH     SHARED           114291
D SKECHERS U S A INC              CL A              83056610     325    16700 SH     SHARED      01    16700
D SKECHERS U S A INC              CL A              83056610     138     7100 SH     SHARED      02     7100
D SKECHERS U S A INC              CL A              83056610      47     2440 SH     SHARED      10     2440
D SKECHERS U S A INC              CL A              83056610      19     1000 SH     SHARED      20      500             500
D SKILLED HEALTHCARE GROUP INC    CL A              83066810      10      688 SH     SHARED              688
D SKILLED HEALTHCARE GROUP INC    CL A              83066810    1012    69200 SH     SHARED      10    69200
D SKYLINE CORP                    COM               83083010       5      194 SH     SHARED              194
D SKYLINE CORP                    COM               83083010     112     3819 SH     SHARED      01     3819
D SKYLINE CORP                    COM               83083010      17      600 SH     SHARED      02      600
D SKYWEST INC                     COM               83087910     297    11091 SH     SHARED            11091
D SKYWEST INC                     COM               83087910     488    18200 SH     SHARED      01    18200
D SKYWEST INC                     COM               83087910     359    13400 SH     SHARED      02    13400
D SKYWEST INC                     COM               83087910    4674   174100 SH     SHARED      10   174100
D SKYWEST INC                     COM               83087910       5      210 SH     SHARED      21                     210
D SKYWORKS SOLUTIONS INC          NOTE  1.250% 3/0  83080MAF    5440  4915000 SH     SHARED          4915000
D SKYWORKS SOLUTIONS INC          NOTE  1.500% 3/0  83088MAH    8265  7500000 PRN    SHARED          7500000
D SKYWORKS SOLUTIONS INC          COM               83088M10    3172   373199 SH     SHARED           373199
D SKYWORKS SOLUTIONS INC          COM               83088M10      68     8015 SH     SHARED      01     8015
D SKYWORKS SOLUTIONS INC          COM               83088M10    1183   139262 SH     SHARED      10   139262
D SLADES FERRY BANCORP            COM               83089610       2      106 SH     SHARED              106
D SKILLSOFT PLC                   SPONSORED ADR     83092810       5      601 SH     SHARED              601
D SKILLSOFT PLC                   SPONSORED ADR     83092810       6      710 SH     SHARED      02      710
D SMART BALANCE INC               COM               83169Y10       8      791 SH     SHARED              791
D SMARTPROS LTD                   COM               83171G10       0      105 SH     SHARED              105
D SMITH & NEPHEW PLC              SPDN ADR NEW      83175M20      13      230 SH     SHARED              230
D SMITH & NEPHEW PLC              SPDN ADR NEW      83175M20    2457    42801 SH     SHARED            42801
D SMITH & NEPHEW PLC              SPDN ADR NEW      83175M20      25      450 SH     SHARED      01      450             450
D SMITH & WESSON HLDG CORP        COM               83175610      65    10771 SH     SHARED            10771
D SMITH & WESSON HLDG CORP        COM               83175610    1525   250000 SH     SHARED      04   250000
D SMITH A O                       COM               83186520    1871    53400 SH     SHARED            53400
D SMITH A O                       COM               83186520     182     5200 SH     SHARED      01     5200
D SMITH A O                       COM               83186520     245     7000 SH     SHARED      02     7000
D SMITH A O                       COM               83186520     515    14700 SH     SHARED      10    14700
D SMART MOVE INC                  COM               83192010       0       79 SH     SHARED               79
D SMITH INTL INC                  COM               83211010   12938   175199 SH     SHARED           175199
D SMITH INTL INC                  COM               83211010    1844    24978 SH     SHARED      01    24978
D SMITH INTL INC                  COM               83211010     234     3180 SH     SHARED      02     3180
D SMITH INTL INC                  COM               83211010     135     1840 SH     SHARED      06                    1840
D SMITH INTL INC                  COM               83211010   11350   153700 SH     SHARED      10   153700
D SMITH MICRO SOFTWARE INC        COM               83215410      59     7000 SH     SHARED             7000
D SMITHFIELD FOODS INC            COM               83224810     612    21180 SH     SHARED            21180
```

```
D SMITHFIELD FOODS INC          COM            83224810    1032    35700 SH    SHARED    01              35700
D SMITHFIELD FOODS INC          COM            83224810     183     6334 SH    SHARED    02      6334
D SMITHFIELD FOODS INC          COM            83224810    1707    59050 SH    SHARED    10     59050
D SMITHTOWN BANCORP INC         COM            83244910      13      629 SH    SHARED              629
D SMUCKER J M CO                COM NEW        83269640    3149    61235 SH    SHARED            61235
D SMUCKER J M CO                COM NEW        83269640    1235    24023 SH    SHARED    01      7154       16869
D SMUCKER J M CO                COM NEW        83269640       1       36 SH    SHR/OTHR  01                    36
D SMUCKER J M CO                COM NEW        83269640     145     2825 SH    SHARED    02      2825
D SMUCKER J M CO                COM NEW        83269640   35473   689600 SH    SHARED    10    689600
D SMUCKER J M CO                COM NEW        83269640       0        8 SH    SHARED    20         8
D SMUCKER J M CO                COM NEW        83269640       3       60 SH    SHR/OTHR  20                    60
D SMUCKER J M CO                COM NEW        83269640      22      440 SH    SHARED    23       440
D SMUCKER J M CO                COM NEW        83269640      82     1611 SH    SHR/OTHR  23                  1611
D SMURFIT-STONE CONTAINER CORP  COM            83272710      10     1002 SH    SHARED             1002
D SMURFIT-STONE CONTAINER CORP  COM            83272710     878    83192 SH    SHARED            83192
D SMURFIT-STONE CONTAINER CORP  COM            83272710     149    14200 SH    SHARED    01     14200
D SMURFIT-STONE CONTAINER CORP  COM            83272710  174776 16550800 SH    SHARED    04   6550800
D SMURFIT-STONE CONTAINER CORP  COM            83272710      13     1240 SH    SHARED    06               1240
D SMURFIT-STONE CONTAINER CORP  COM            83272710     151    14389 SH    SHARED    10     14389
D SMURFIT-STONE CONTAINER CORP  COM            83272710    3158   299100 SH    SHARED    14    155000     144100
D SMURFIT-STONE CONTAINER CORP  COM            83272710    2878   272559 SH    SHARED    16    272559
D SNAP ON INC                   COM            83303410    4016    83251 SH    SHARED            83251
D SNAP ON INC                   COM            83303410     383     7948 SH    SHARED             7948
D SNAP ON INC                   COM            83303410     278     5773 SH    SHARED    02      5773
D SNAP ON INC                   COM            83303410    1105    22925 SH    SHARED    10     22925
D SOCIEDAD QUIMICA MINERA DE C  SPON ADR SER B 83363510   12234    69217 SH    SHARED            69217
D SOCIEDAD QUIMICA MINERA DE C  SPON ADR SER B 83363510    8018    45365 SH    SHARED    01     45365
D SOCIEDAD QUIMICA MINERA DE C  SPON ADR SER B 83363510    1148     6500 SH    SHARED    10      6500
D SOCKET COMMUNICATIONS INC     COM            83367210       0      788 SH    SHARED              788
D SOFTBRANDS INC                COM            83402A10       1      883 SH    SHARED              883
D SOFTBRANDS INC                COM            83402A10       0      172 SH    SHARED    01       172
D SOFTWARE HOLDRS TR            DEPOSITRY RCPT 83404B10     105     2400 SH    SHARED             2400
D SOHU COM INC                  COM            83408W10    5752   105508 SH    SHARED           105508
D SOHU COM INC                  COM            83408W10     452     8295 SH    SHARED    01      8295
D SOHU COM INC                  COM            83408W10      87     1600 SH    SHARED    10      1600
D SOLARFUN POWER HOLDINGS CO L  SPONSORED ADR  83415U10    5546   169884 SH    SHARED           169884
D SOLERA HOLDINGS INC           COM            83421A10     114     4630 SH    SHARED             4630
D SOLITARIO RES CORP            COM            83422R10       3      634 SH    SHARED              634
D SOLITARIO RES CORP            COM            83422R10     212    40000 SH    SHARED    23             40000
D SOMANETICS CORP               COM NEW        83444540       7      324 SH    SHARED              324
D SOMANETICS CORP               COM NEW        83444540     133     5650 SH    SHARED    02      5650
D SOMANETICS CORP               COM NEW        83444540    7764   328300 SH    SHARED    10    328300
D SONESTA INTL HOTELS CORP      CL A           83543840    1843    52678 SH    SHARED            52678
D SONIC AUTOMOTIVE INC          NOTE  4.250%11/3 83545OAX  3305  3225000 PRN   SHARED          3225000
D SONIC AUTOMOTIVE INC          CL A           83545G10      27     1427 SH    SHARED             1427
D SONIC AUTOMOTIVE INC          CL A           83545G10     265    13718 SH    SHARED    10     13718
D SONIC FDRY INC                COM            83545H10       1      823 SH    SHARED              823
D SONIC CORP                    COM            83545110     203     9300 SH    SHARED             9300
D SONIC CORP                    COM            83545110      66     3019 SH    SHARED    01      3019
D SONIC CORP                    COM            83545110     107     4900 SH    SHARED    10      4900
D SONIC CORP                    COM            83545110      47     2173 SH    SHARED    21      2173
D SONIC CORP                    COM            83545110      19      900 SH    SHR/OTHR  22               900
D SONIC SOLUTIONS               COM            83546010       3      359 SH    SHARED              359
D SONICWALL INC                 COM            83547010     227    21200 SH    SHARED            21200
D SONICWALL INC                 COM            83547010      72     6758 SH    SHARED    20      6758
D SONOCO PRODS CO               COM            83549510     583    17847 SH    SHARED            17847
D SONOCO PRODS CO               COM            83549510    1657    50704 SH    SHARED    01      3170      47534
D SONOCO PRODS CO               COM            83549510      49     1500 SH    SHR/OTHR  01               1500
D SONOCO PRODS CO               COM            83549510     168     5170 SH    SHARED    02      5170
D SONOCO PRODS CO               COM            83549510   62937  1925862 SH    SHARED    04   1925862
D SONOCO PRODS CO               COM            83549510   24959   763755 SH    SHARED    06               763755
D SONOCO PRODS CO               COM            83549510    1900    58170 SH    SHARED    10     47300      10870
D SONOCO PRODS CO               COM            83549510    2388    73100 SH    SHARED    15     73100
D SONOCO PRODS CO               COM            83549510      96     2960 SH    SHARED    20      2645        315
D SONOCO PRODS CO               COM            83549510       6      200 SH    SHARED    22                 200
D SONOCO PRODS CO               COM            83549510      16      500 SH    SHARED    23       500
D SONOCO PRODS CO               COM            83549510     214     6554 SH    SHR/OTHR  23                6554
D SONOSITE INC                  NOTE  3.750% 7/1 83568GAA 1111  1000000 PRN   SHARED          1000000
D SONOSITE INC                  COM            83568G10      17      525 SH    SHARED    01       525
D SONOSITE INC                  COM            83568G10    1531    45500 SH    SHARED    10     45500
D SONUS PHARMACEUTICALS INC     COM            83569210       0      857 SH    SHARED              857
D SONY CORP                     ADR NEW        83569930    1295    23866 SH    SHARED            23866
D SONY CORP                     ADR NEW        83569930       1       34 SH    SHARED    01        34
D SONY CORP                     ADR NEW        83569930     676    12465 SH    SHARED    10     12465
D SONY CORP                     ADR NEW        83569930    1857    34200 SH    SHARED    14             34200
D SOTHEBYS                      COM            83589810       7      200 SH    SHARED              200
D SOTHEBYS                      COM            83589810    1728    45374 SH    SHARED    01     42944       2430
D SOTHEBYS                      COM            83589810    1192    31300 SH    SHARED    10      9900      21400
D SOTHEBYS                      COM            83589810     120     3152 SH    SHARED    02      3152
D SOTHEBYS                      COM            83589810    1055    27700 SH    SHARED    10     27700
D SOTHEBYS                      COM            83589810       2       65 SH    SHARED    21                  65
D SONUS NETWORKS INC            COM            83591610     115    19847 SH    SHARED            19847
D SONUS NETWORKS INC            COM            83591610     109    18750 SH    SHARED    10     18750
D SOUNDBITE COMMUNICATIONS INC  COM            83610911       0      136 SH    SHARED              136
D SOURCE INTERLINK COS INC      COM NEW        86151120     441   153438 SH    SHARED           153438
D SOURCE INTERLINK COS INC      COM NEW        86151120       3     1147 SH    SHARED    02      1147
D SOURCEFIRE INC                COM            83616O10       0       99 SH    SHARED               99
D SOURCEFORGE INC               COM            83616W10     685   279841 SH    SHARED           279841
D SOUTH FINL GROUP INC          COM            83784110     545    34915 SH    SHARED            34915
D SOUTH FINL GROUP INC          COM            83784110      34     2200 SH    SHARED    01      2200
D SOUTH FINL GROUP INC          COM            83784110     932    59681 SH    SHARED    10     59681
D SOUTH JERSEY INDS INC         COM            83851810     252     6983 SH    SHARED             6983
D SOUTH JERSEY INDS INC         COM            83851810      35      975 SH    SHARED    01       975
D SOUTH JERSEY INDS INC         COM            83851810    2126    58912 SH    SHARED    10     58912
D SOUTH TEXAS OIL CO            COM            84055V10       2      221 SH    SHARED              221
D SOUTHCOAST FINANCIAL CORP     COM            84129R10       2      143 SH    SHARED              143
D SOUTHERN CO                   COM            84258710   74676  1927123 SH    SHARED          1903323      23800
D SOUTHERN CO                   COM            84258710    4065   104929 SH    SHARED    01     96379        8550
D SOUTHERN CO                   COM            84258710      65     1700 SH    SHR/OTHR  01                 1700
D SOUTHERN CO                   COM            84258710    1140    29424 SH    SHARED    02     29424
D SOUTHERN CO                   COM            84258710      13      350 SH    SHARED    05       350
D SOUTHERN CO                   COM            84258710     254     6580 SH    SHARED    06                 6580
D SOUTHERN CO                   COM            84258710   16613   428745 SH    SHARED    10    428145         600
D SOUTHERN CO                   COM            84258710     352     9100 SH    SHARED    14      9100
D SOUTHERN CO                   COM            84258710    1765    45574 SH    SHARED    20      1100       44474
D SOUTHERN CO                   COM            84258710     184     4774 SH    SHR/OTHR  20                 4774
D SOUTHERN CO                   COM            84258710     112     2914 SH    SHARED    21      2914
D SOUTHERN CO                   COM            84258710      77     2000 SH    SHR/OTHR  21                 2000
D SOUTHERN CO                   COM            84258710     119     3080 SH    SHARED    23      3080
D SOUTHERN CO                   COM            84258710     143     3700 SH    SHR/OTHR  23                 3700
D SOUTHERN CMNTY FINL CORP      COM            84263210       3      460 SH    SHARED              460
D SOUTHERN COPPER CORP          COM            84265V10      89      850 SH    SHARED              850
D SOUTHERN COPPER CORP          COM            84265V10    9943    94579 SH    SHARED            94579
D SOUTHERN COPPER CORP          COM            84265V10     199     1900 SH    SHARED    01      1900
```

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D SOUTHERN COPPER CORP | COM | 84265V10 | 21 | 200 SH | SHR/OTHR | 01 | | | 200 |
| D SOUTHERN COPPER CORP | COM | 84265V10 | 741 | 7052 SH | SHARED | 02 | 7052 | | |
| D SOUTHERN COPPER CORP | COM | 84265V10 | 3553 | 33801 SH | SHARED | 04 | 33801 | | |
| D SOUTHERN COPPER CORP | COM | 84265V10 | 8957 | 85200 SH | SHARED | 05 | 85200 | | |
| D SOUTHERN COPPER CORP | COM | 84265V10 | 12479 | 118702 SH | SHARED | 10 | 118702 | | |
| D SOUTHERN COPPER CORP | COM | 84265V10 | 5241 | 49856 SH | SHARED | 14 | | | 49856 |
| D SOUTHERN MO BANCORP INC | COM | 84338010 | 0 | 49 SH | SHARED | | 49 | | |
| D SOUTHERN NATL BANCORP OF VA | COM | 84339510 | 1 | 140 SH | SHARED | | 140 | | |
| D SOUTHERN UN CO NEW | COM | 84403010 | 21544 | 733799 SH | SHARED | | 732499 | | 1300 |
| D SOUTHERN UN CO NEW | COM | 84403010 | 140 | 4800 SH | SHARED | 02 | 4800 | | |
| D SOUTHERN UN CO NEW | COM | 84403010 | 24349 | 829341 SH | SHARED | 10 | 829341 | | |
| D SOUTHERN UN CO NEW | COM | 84403010 | 42 | 1450 SH | SHARED | 23 | 1450 | | |
| D SOUTHERN UN CO NEW | COM | 84403010 | 39 | 1350 SH | SHR/OTHR | 23 | | | 1350 |
| D SOUTHSIDE BANCSHARES INC | COM | 84470P10 | 1 | 84 SH | SHARED | | 84 | | |
| D SOUTHWEST AIRLS CO | COM | 84474110 | 14849 | 1217212 SH | SHARED | | 1217212 | | |
| D SOUTHWEST AIRLS CO | COM | 84474110 | 1226 | 100517 SH | SHARED | 01 | 100517 | | |
| D SOUTHWEST AIRLS CO | COM | 84474110 | 153 | 12609 SH | SHARED | 02 | 12609 | | |
| D SOUTHWEST AIRLS CO | COM | 84474110 | 3 | 300 SH | SHARED | 05 | 300 | | |
| D SOUTHWEST AIRLS CO | COM | 84474110 | 11 | 980 SH | SHARED | 06 | | | 980 |
| D SOUTHWEST AIRLS CO | COM | 84474110 | 4023 | 329819 SH | SHARED | 10 | 329819 | | |
| D SOUTHWEST AIRLS CO | COM | 84474110 | 3 | 250 SH | SHARED | 20 | 250 | | |
| D SOUTHWEST AIRLS CO | COM | 84474110 | 29 | 2380 SH | SHARED | 21 | 2380 | | |
| D SOUTHWEST AIRLS CO | COM | 84474110 | 402 | 33000 SH | SHR/OTHR | 23 | | | 33000 |
| D SOUTHWEST BANCORP INC OKLA | COM | 84476710 | 136 | 7452 SH | SHARED | | 7452 | | |
| D SOUTHWEST GAS CORP | COM | 84489510 | 352 | 11846 SH | SHARED | | 11846 | | |
| D SOUTHWEST GAS CORP | COM | 84489510 | 54 | 1825 SH | SHARED | 01 | 1475 | | 350 |
| D SOUTHWEST GAS CORP | COM | 84489510 | 50 | 1709 SH | SHARED | 02 | 1709 | | |
| D SOUTHWEST GAS CORP | COM | 84489510 | 2950 | 99100 SH | SHARED | 10 | 99100 | | |
| D SOUTHWEST GA FINL CORP | COM | 84502A10 | 1 | 103 SH | SHARED | | 103 | | |
| D SOUTHWEST WTR CO | COM | 84533110 | 23 | 1871 SH | SHARED | | 1871 | | |
| D SOUTHWESTERN ENERGY CO | COM | 84546710 | 16384 | 294058 SH | SHARED | | 294058 | | |
| D SOUTHWESTERN ENERGY CO | COM | 84546710 | 2975 | 53400 SH | SHARED | 01 | 1700 | | 51700 |
| D SOUTHWESTERN ENERGY CO | COM | 84546710 | 586 | 10527 SH | SHARED | 02 | 10527 | | |
| D SOUTHWESTERN ENERGY CO | COM | 84546710 | 8 | 150 SH | SHARED | 05 | 150 | | |
| D SOUTHWESTERN ENERGY CO | COM | 84546710 | 69 | 1250 SH | SHARED | 06 | | | 1250 |
| D SOUTHWESTERN ENERGY CO | COM | 84546710 | 37865 | 679561 SH | SHARED | 10 | 679561 | | |
| D SOUTHWESTERN ENERGY CO | COM | 84546710 | 4 | 85 SH | SHARED | 21 | | | 85 |
| D SOVEREIGN BANCORP INC | COM | 84590510 | 13666 | 1198787 SH | SHARED | | 1196287 | | 2500 |
| D SOVEREIGN BANCORP INC | COM | 84590510 | 701 | 61574 SH | SHARED | 01 | 61574 | | |
| D SOVEREIGN BANCORP INC | COM | 84590510 | 284 | 24987 SH | SHARED | 02 | 24987 | | |
| D SOVEREIGN BANCORP INC | COM | 84590510 | 74 | 6500 SH | SHARED | 04 | | | 6500 |
| D SOVEREIGN BANCORP INC | COM | 84590510 | 28 | 2530 SH | SHARED | 06 | | | 2530 |
| D SOVEREIGN BANCORP INC | COM | 84590510 | 54995 | 4824148 SH | SHARED | 10 | 4824148 | | |
| D SOVEREIGN BANCORP INC | COM | 84590510 | 292 | 25656 SH | SHARED | 14 | | | 25656 |
| D SOVEREIGN BANCORP INC | COM | 84590510 | 2214 | 194268 SH | SHARED | 16 | 194268 | | |
| D SOVRAN SELF STORAGE INC | COM | 84610H10 | 148 | 3700 SH | SHARED | | 3700 | | |
| D SOVRAN SELF STORAGE INC | COM | 84610H10 | 72 | 1800 SH | SHARED | 01 | 1800 | | |
| D SOVRAN SELF STORAGE INC | COM | 84610H10 | 49 | 1225 SH | SHARED | 02 | 1225 | | |
| D SOVRAN SELF STORAGE INC | COM | 84610H10 | 1780 | 44400 SH | SHARED | 10 | 44400 | | |
| D SPACEHAB INC | COM NEW | 84624340 | 0 | 119 SH | SHARED | | 119 | | |
| D SPAN AMER MED SYS INC | COM | 84639610 | 0 | 50 SH | SHARED | | 50 | | |
| D SPANISH BROADCASTING SYS INC | CL A | 84642588 | 77 | 42048 SH | SHARED | | 42048 | | |
| D SPANISH BROADCASTING SYS INC | CL A | 84642588 | 1 | 830 SH | SHARED | 02 | 830 | | |
| D SPANISH BROADCASTING SYS INC | CL A | 84642588 | 342 | 184908 SH | SHARED | 10 | 184908 | | |
| D SPANSION INC | COM CL A | 84649R10 | 15840 | 4030747 SH | SHARED | | 4030747 | | |
| D SPANSION INC | COM CL A | 84649R10 | 0 | 100 SH | SHARED | 01 | 100 | | |
| D SPANSION INC | COM CL A | 84649R10 | 468 | 119275 SH | SHARED | 02 | 119275 | | |
| D SPARK NETWORKS INC | COM | 84651R15 | 19 | 3923 SH | SHARED | | 3923 | | |
| D SPARTAN MTRS INC | COM | 84714R10 | 29 | 3900 SH | SHARED | | 3900 | | |
| D SPARTAN STORES INC | NOTE   3.375% 5/1 | 846822AE | 4565 | 5000000 PRN | SHARED | | 5000000 | | |
| D SPARTAN STORES INC | COM | 84682210 | 182 | 8000 SH | SHARED | | 8000 | | |
| D SPARTAN STORES INC | COM | 84682210 | 36 | 1600 SH | SHARED | 01 | 1600 | | |
| D SPARTAN STORES INC | COM | 84682210 | 770 | 33700 SH | SHARED | 10 | 33700 | | |
| D SPARTECH CORP | COM NEW | 84722020 | 222 | 15755 SH | SHARED | | 15755 | | |
| D SPARTECH CORP | COM NEW | 84722020 | 626 | 44400 SH | SHARED | 10 | 44400 | | |
| D SPARTON CORP | COM | 84723510 | 0 | 177 SH | SHARED | | 177 | | |
| D SPECIALTY UNDERWRITERS ALLIA | COM | 84751T30 | 2 | 432 SH | SHARED | | 432 | | |
| D SPECTRA ENERGY PARTNERS LP | COM | 84756N10 | 2611 | 108999 SH | SHARED | | 108999 | | |
| D SPECTRA ENERGY PARTNERS LP | COM | 84756N10 | 299 | 12500 SH | SHARED | 01 | 12500 | | |
| D SPECTRA ENERGY CORP | COM | 84756010 | 26314 | 1019169 SH | SHARED | | 1019169 | | |
| D SPECTRA ENERGY CORP | COM | 84756010 | 2298 | 89011 SH | SHARED | 01 | 80855 | | 8156 |
| D SPECTRA ENERGY CORP | COM | 84756010 | 78 | 3051 SH | SHR/OTHR | 01 | | | 3051 |
| D SPECTRA ENERGY CORP | COM | 84756010 | 3083 | 119407 SH | SHARED | 02 | 119407 | | |
| D SPECTRA ENERGY CORP | COM | 84756010 | 7 | 280 SH | SHARED | 05 | 280 | | |
| D SPECTRA ENERGY CORP | COM | 84756010 | 148 | 5740 SH | SHARED | 06 | | | 5740 |
| D SPECTRA ENERGY CORP | COM | 84756010 | 17707 | 685811 SH | SHARED | 10 | 600911 | | 84900 |
| D SPECTRA ENERGY CORP | COM | 84756010 | 379 | 14682 SH | SHARED | 14 | | | 14682 |
| D SPECTRA ENERGY CORP | COM | 84756010 | 18 | 700 SH | SHARED | 20 | 200 | | 500 |
| D SPECTRA ENERGY CORP | COM | 84756010 | 9 | 365 SH | SHARED | 21 | 365 | | |
| D SPECTRA ENERGY CORP | COM | 84756010 | 12 | 500 SH | SHARED | 22 | 500 | | |
| D SPECTRA ENERGY CORP | COM | 84756010 | 64 | 2500 SH | SHARED | 23 | | | 2500 |
| D SPECTRA ENERGY CORP | COM | 84756010 | 131 | 5106 SH | SHR/OTHR | 23 | | | 5106 |
| D SPECTRANETICS CORP | COM | 84760C10 | 7 | 500 SH | SHARED | | 500 | | |
| D SPECTRUM CTL INC | COM | 84761510 | 120 | 7828 SH | SHARED | | 7828 | | |
| D SPECTRUM CTL INC | COM | 84761510 | 0 | 64 SH | SHARED | 02 | 64 | | |
| D SPECTRUM BRANDS INC | COM | 84762L10 | 27516 | 5162563 SH | SHARED | | 5162563 | | |
| D SPECTRUM PHARMACEUTICALS INC | COM | 84763A10 | 2 | 803 SH | SHARED | | 803 | | |
| D SPEEDUS CORP | COM NEW | 84772320 | 0 | 52 SH | SHARED | | 52 | | |
| D SPEEDWAY MOTORSPORTS INC | COM | 84778810 | 231 | 7463 SH | SHARED | | 7463 | | |
| D SPEEDWAY MOTORSPORTS INC | COM | 84778810 | 44 | 1425 SH | SHARED | 01 | 1425 | | |
| D SPEEDWAY MOTORSPORTS INC | COM | 84778810 | 76 | 2458 SH | SHARED | 02 | 2458 | | |
| D SPEEDWAY MOTORSPORTS INC | COM | 84778810 | 49 | 1603 SH | SHARED | 10 | 1603 | | |
| D SPHERIX INC | COM | 84842R10 | 0 | 304 SH | SHARED | | 304 | | |
| D SPHERION CORP | COM | 84842010 | 969 | 133185 SH | SHARED | | 133185 | | |
| D SPHERION CORP | COM | 84842010 | 238 | 32735 SH | SHARED | 02 | 32735 | | |
| D SPIRE CORP | COM | 84856510 | 80 | 3412 SH | SHARED | | 3412 | | |
| D SPIRIT AEROSYSTEMS HLDGS INC | COM CL A | 84857410 | 1770 | 51333 SH | SHARED | | 51333 | | |
| D SPIRIT AEROSYSTEMS HLDGS INC | COM CL A | 84857410 | 538 | 15600 SH | SHARED | 10 | 15600 | | |
| D SPIRIT AEROSYSTEMS HLDGS INC | COM CL A | 84857410 | 151 | 4400 SH | SHARED | 14 | | | 4400 |
| D SPORT-HALEY INC | COM | 84892510 | 0 | 49 SH | SHARED | | 49 | | |
| D SPORT SUPPLY GROUP INC DEL | COM | 84916A10 | 2 | 270 SH | SHARED | | 270 | | |
| D SPORT CHALET INC | CL A | 84916320 | 0 | 82 SH | SHARED | | 82 | | |
| D SPORT CHALET INC | COM | 84916320 | 0 | 27 SH | SHARED | | 27 | | |
| D SPREADTRUM COMMUNICATIONS IN | ADR | 84941520 | 413 | 33766 SH | SHARED | | 33766 | | |
| D SPRINT NEXTEL CORP | COM SER 1 | 85206110 | 2 | 177 SH | SHARED | | 177 | | |
| D SPRINT NEXTEL CORP | COM SER 1 | 85206110 | 94768 | 7217738 SH | SHARED | | 7217738 | | |
| D SPRINT NEXTEL CORP | COM SER 1 | 85206110 | 4420 | 336644 SH | SHARED | 01 | 334844 | | 1800 |
| D SPRINT NEXTEL CORP | COM SER 1 | 85206110 | 74 | 5707 SH | SHR/OTHR | 01 | | | 5707 |
| D SPRINT NEXTEL CORP | COM SER 1 | 85206110 | 10586 | 806320 SH | SHARED | 02 | 806320 | | |
| D SPRINT NEXTEL CORP | COM SER 1 | 85206110 | 656 | 50000 SH | SHARED | 04 | 50000 | | |
| D SPRINT NEXTEL CORP | COM SER 1 | 85206110 | 14 | 1087 SH | SHARED | 05 | 1087 | | |
| D SPRINT NEXTEL CORP | COM SER 1 | 85206110 | 365 | 27799 SH | SHARED | 06 | | | 27799 |
| D SPRINT NEXTEL CORP | COM SER 1 | 85206110 | 18859 | 1436342 SH | SHARED | 10 | 1394342 | | 42000 |
| D SPRINT NEXTEL CORP | COM SER 1 | 85206110 | 1346 | 102562 SH | SHARED | 14 | | | 102562 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D SPRINT NEXTEL CORP | COM SER 1 | 85206110 | 2560 | 195000 SH | SHARED | 15 | | | 195000 |
| D SPRINT NEXTEL CORP | COM SER 1 | 85206110 | 4 | 316 SH | SHARED | 20 | | 316 | |
| D SPRINT NEXTEL CORP | COM SER 1 | 85206110 | 65 | 5000 SH | SHARED | 22 | | 5000 | |
| D SPRINT NEXTEL CORP | COM SER 1 | 85206110 | 46 | 3558 SH | SHARED | 23 | | 1023 | 2535 |
| D SPRINT NEXTEL CORP | COM SER 1 | 85206110 | 33 | 2517 SH | SHR/OTHR | 23 | | | 2517 |
| D STAAR SURGICAL CO | COM PAR $0.01 | 85231230 | 1 | 710 SH | SHARED | | | 710 | |
| D STAGE STORES INC | COM NEW | 85254C30 | 20 | 1408 SH | SHARED | | | 1408 | |
| D STAGE STORES INC | COM NEW | 85254C30 | 1566 | 105875 SH | SHARED | 10 | | 105875 | |
| D STAGE STORES INC | COM NEW | 85254C30 | 23 | 1594 SH | SHARED | 21 | | 1594 | |
| D STAKTEK HLDGS INC | COM | 85256P10 | 150 | 76621 SH | SHARED | | | 76621 | |
| D STAMPS COM INC | COM NEW | 85285720 | 246 | 20243 SH | SHARED | | | 20243 | |
| D STANCORP FINL GROUP INC | COM | 85289110 | 404 | 8026 SH | SHARED | | | 8026 | |
| D STANCORP FINL GROUP INC | COM | 85289110 | 937 | 18600 SH | SHARED | 01 | | 3000 | 15600 |
| D STANCORP FINL GROUP INC | COM | 85289110 | 189 | 3770 SH | SHARED | 02 | | 3770 | |
| D STANCORP FINL GROUP INC | COM | 85289110 | 14672 | 291245 SH | SHARED | 10 | | 291245 | |
| D STANCORP FINL GROUP INC | COM | 85289110 | 1823 | 36200 SH | SHARED | 14 | | | 36200 |
| D STANDARD MICROSYSTEMS CORP | COM | 85362610 | 49 | 1279 SH | SHARED | | | 1279 | |
| D STANDARD MICROSYSTEMS CORP | COM | 85362610 | 42 | 1075 SH | SHARED | 01 | | 825 | 250 |
| D STANDARD MICROSYSTEMS CORP | COM | 85362610 | 70 | 1802 SH | SHARED | 02 | | 1802 | |
| D STANDARD MICROSYSTEMS CORP | COM | 85362610 | 13842 | 354300 SH | SHARED | 10 | | 354300 | |
| D STANDARD MTR PRODS INC | SDCV 6.750% 7/1 | 85366AB | 48 | 50000 PRN | SHARED | 23 | | | 50000 |
| D STANDARD MTR PRODS INC | COM | 85366610 | 700 | 85906 SH | SHARED | | | 85906 | |
| D STANDARD MTR PRODS INC | COM | 85366610 | 14 | 1800 SH | SHARED | 02 | | 1800 | |
| D STANDARD MTR PRODS INC | COM | 85366610 | 11 | 1400 SH | SHARED | 10 | | 1400 | |
| D STANDARD PAC CORP NEW | COM | 85375C10 | 195 | 58432 SH | SHARED | | | 58432 | |
| D STANDARD PAC CORP NEW | COM | 85375C10 | 161 | 48175 SH | SHARED | 02 | | 48175 | |
| D STANDARD PAC CORP NEW | COM | 85375C10 | 3428 | 1023400 SH | SHARED | 10 | | 1023400 | |
| D STANDARD REGISTER CO | COM | 85388710 | 113 | 9700 SH | SHARED | 02 | | 9700 | |
| D STANDARD REGISTER CO | COM | 85388710 | 6 | 600 SH | SHARED | 10 | | 600 | |
| D STANDEX INTL CORP | COM | 85423110 | 185 | 10625 SH | SHARED | 02 | | 10625 | |
| D STANDEX INTL CORP | COM | 85423110 | 24 | 1400 SH | SHARED | 10 | | 1400 | |
| D STANLEY FURNITURE INC | COM NEW | 85430520 | 5 | 435 SH | SHARED | | | 435 | |
| D STANLEY INC | COM | 85453210 | 430 | 13437 SH | SHARED | | | 13437 | |
| D STANLEY INC | COM | 85453210 | 7521 | 234900 SH | SHARED | 10 | | 234900 | |
| D STANLEY WKS | COM | 85461610 | 77 | 1600 SH | SHARED | | | | 1600 |
| D STANLEY WKS | COM | 85461610 | 6589 | 135931 SH | SHARED | | | 135931 | |
| D STANLEY WKS | COM | 85461610 | 826 | 17044 SH | SHARED | 01 | | 15244 | 1800 |
| D STANLEY WKS | COM | 85461610 | 1420 | 29297 SH | SHARED | 02 | | 29297 | |
| D STANLEY WKS | COM | 85461610 | 19 | 400 SH | SHARED | 06 | | | 400 |
| D STANLEY WKS | COM | 85461610 | 5617 | 115868 SH | SHARED | 10 | | 115868 | |
| D STANLEY WKS | COM | 85461610 | 177 | 3663 SH | SHARED | 14 | | | 3663 |
| D STANLEY WKS | COM | 85461610 | 9 | 200 SH | SHARED | 20 | | 200 | |
| D STANLEY WKS | COM | 85461610 | 479 | 9900 SH | SHARED | 23 | | 9900 | |
| D STANTEC INC | COM | 85472N10 | 18 | 468 SH | SHARED | | | 468 | |
| D STANTEC INC | COM | 85472N10 | 4936 | 126507 SH | SHARED | 04 | | 126507 | |
| D STANTEC INC | COM | 85472N10 | 1110 | 28463 SH | SHARED | 05 | | 28463 | |
| D STANTEC INC | COM | 85472N10 | 195 | 5018 SH | SHARED | 06 | | | 5018 |
| D STANTEC INC | COM | 85472N10 | 166 | 4259 SH | SHARED | 10 | | 4259 | |
| D STAPLES INC | COM | 85503010 | 53603 | 2323495 SH | SHARED | | | 2323495 | |
| D STAPLES INC | COM | 85503010 | 2806 | 121651 SH | SHARED | 01 | | 80021 | 41630 |
| D STAPLES INC | COM | 85503010 | 5 | 225 SH | SHR/OTHR | 01 | | | 225 |
| D STAPLES INC | COM | 85503010 | 5081 | 220272 SH | SHARED | 02 | | 220272 | |
| D STAPLES INC | COM | 85503010 | 8 | 365 SH | SHARED | 05 | | 365 | |
| D STAPLES INC | COM | 85503010 | 158 | 6850 SH | SHARED | 06 | | | 6850 |
| D STAPLES INC | COM | 85503010 | 272790 | 11824462 SH | SHARED | 10 | | 11757812 | 66650 |
| D STAPLES INC | COM | 85503010 | 760 | 32978 SH | SHARED | 14 | | | 32978 |
| D STAPLES INC | COM | 85503010 | 1393 | 60403 SH | SHARED | 20 | | 28030 | 32373 |
| D STAPLES INC | COM | 85503010 | 639 | 27700 SH | SHR/OTHR | 20 | | | 27700 |
| D STAPLES INC | COM | 85503010 | 340 | 14740 SH | SHARED | 21 | | 2740 | 12000 |
| D STAPLES INC | COM | 85503010 | 161 | 7000 SH | SHR/OTHR | 21 | | | 7000 |
| D STAPLES INC | COM | 85503010 | 335 | 14550 SH | SHARED | 23 | | 14550 | |
| D STAPLES INC | COM | 85503010 | 739 | 32050 SH | SHR/OTHR | 23 | | | 32050 |
| D STAPLES INC | COM | 85503010 | 47 | 2051 SH | SHARED | 24 | | 2051 | |
| D STAR BUFFET INC | COM | 85508610 | 0 | 37 SH | SHARED | | | 37 | |
| D STAR GAS PARTNERS L P | UNIT LTD PARTNR | 85512C10 | 548 | 138066 SH | SHARED | | | 138066 | |
| D STAR SCIENTIFIC INC | COM | 85517910 | 1 | 1475 SH | SHARED | | | 1475 | |
| D STARBUCKS CORP | COM | 85524410 | 50144 | 2449653 SH | SHARED | | | 2441908 | 7745 |
| D STARBUCKS CORP | COM | 85524410 | 1931 | 94350 SH | SHARED | 01 | | 94050 | 300 |
| D STARBUCKS CORP | COM | 85524410 | 131 | 6400 SH | SHR/OTHR | 01 | | | 6400 |
| D STARBUCKS CORP | COM | 85524410 | 48278 | 2358499 SH | SHARED | 02 | | 2358499 | |
| D STARBUCKS CORP | COM | 85524410 | 2047 | 100000 SH | SHARED | 04 | | 100000 | |
| D STARBUCKS CORP | COM | 85524410 | 7 | 380 SH | SHARED | 05 | | 380 | |
| D STARBUCKS CORP | COM | 85524410 | 151 | 7410 SH | SHARED | 06 | | | 7410 |
| D STARBUCKS CORP | COM | 85524410 | 7399 | 361476 SH | SHARED | 10 | | 361476 | |
| D STARBUCKS CORP | COM | 85524410 | 59 | 2900 SH | SHARED | 20 | | 2400 | 500 |
| D STARBUCKS CORP | COM | 85524410 | 37 | 1809 SH | SHARED | 21 | | 1809 | |
| D STARBUCKS CORP | COM | 85524410 | 10 | 500 SH | SHR/OTHR | 22 | | | 500 |
| D STARENT NETWORKS CORP | COM | 85528P10 | 109 | 5990 SH | SHARED | | | 5990 | |
| D STARENT NETWORKS CORP | COM | 85528P10 | 23 | 1300 SH | SHARED | 01 | | 1300 | |
| D STARENT NETWORKS CORP | COM | 85528P10 | 209 | 11500 SH | SHARED | 10 | | 11500 | |
| D STARRETT L S CO | CL A | 85569C10 | 572 | 33856 SH | SHARED | | | 33856 | |
| D STARTEK INC | COM | 85569C10 | 1435 | 154170 SH | SHARED | | | 154170 | |
| D STARTEK INC | COM | 85569C10 | 10 | 1100 SH | SHARED | 02 | | 1100 | |
| D STATE AUTO FINL CORP | COM | 85570710 | 70 | 2691 SH | SHARED | | | 2691 | |
| D STATE AUTO FINL CORP | COM | 85570710 | 266 | 10125 SH | SHARED | 02 | | 10125 | |
| D STATE BANCORP INC N.Y | COM | 85571610 | 4 | 317 SH | SHARED | | | 317 | |
| D STARWOOD HOTELS&RESORTS WRLD | COM | 85590A40 | 143047 | 3248857 SH | SHARED | | | 3248857 | |
| D STARWOOD HOTELS&RESORTS WRLD | COM | 85590A40 | 956 | 21721 SH | SHARED | 01 | | 21621 | 100 |
| D STARWOOD HOTELS&RESORTS WRLD | COM | 85590A40 | 14933 | 339167 SH | SHARED | 02 | | 339167 | |
| D STARWOOD HOTELS&RESORTS WRLD | COM | 85590A40 | 220 | 5000 SH | SHARED | 04 | | 5000 | |
| D STARWOOD HOTELS&RESORTS WRLD | COM | 85590A40 | 5 | 120 SH | SHARED | 05 | | 120 | |
| D STARWOOD HOTELS&RESORTS WRLD | COM | 85590A40 | 8873 | 201541 SH | SHARED | 10 | | 201541 | |
| D STARWOOD HOTELS&RESORTS WRLD | COM | 85590A40 | 62832 | 1427037 SH | SHARED | 11 | | 878426 | 548611 |
| D STARWOOD HOTELS&RESORTS WRLD | COM | 85590A40 | 506 | 11514 SH | SHARED | 14 | | | 11514 |
| D STARWOOD HOTELS&RESORTS WRLD | COM | 85590A40 | 17 | 400 SH | SHR/OTHR | 23 | | | 400 |
| D STATE STR CORP | COM | 85747710 | 48195 | 593540 SH | SHARED | | | 593540 | |
| D STATE STR CORP | COM | 85747710 | 3966 | 48845 SH | SHARED | 01 | | 48645 | 200 |
| D STATE STR CORP | COM | 85747710 | 487 | 6000 SH | SHR/OTHR | 01 | | | 6000 |
| D STATE STR CORP | COM | 85747710 | 1387 | 17087 SH | SHARED | 02 | | 17087 | |
| D STATE STR CORP | COM | 85747710 | 1948 | 24000 SH | SHARED | 04 | | 24000 | |
| D STATE STR CORP | COM | 85747710 | 12 | 150 SH | SHARED | 05 | | 150 | |
| D STATE STR CORP | COM | 85747710 | 325 | 4012 SH | SHARED | 06 | | | 4012 |
| D STATE STR CORP | COM | 85747710 | 70480 | 867984 SH | SHARED | 10 | | 835894 | 32090 |
| D STATE STR CORP | COM | 85747710 | 4441 | 54701 SH | SHARED | 16 | | 54701 | |
| D STATE STR CORP | COM | 85747710 | 4631 | 57044 SH | SHARED | 20 | | 13100 | 43944 |
| D STATE STR CORP | COM | 85747710 | 3611 | 44482 SH | SHR/OTHR | 20 | | | 44482 |
| D STATE STR CORP | COM | 85747710 | 2850 | 35100 SH | SHARED | 23 | | 35100 | |
| D STATE STR CORP | COM | 85747710 | 198 | 2450 SH | SHR/OTHR | 23 | | | 2450 |
| D STATE STR CORP | COM | 85747710 | 87 | 1080 SH | SHARED | 24 | | 1080 | |
| D STATOILHYDRO ASA | SPONSORED ADR | 85771U10 | 880 | 28848 SH | SHARED | | | 28848 | |
| D STATOILHYDRO ASA | SPONSORED ADR | 85771U10 | 19 | 646 SH | SHARED | 01 | | | 646 |
| D STATOILHYDRO ASA | SPONSORED ADR | 85771U10 | 18024 | 590570 SH | SHARED | 10 | | 431870 | 158700 |
| D STATOILHYDRO ASA | SPONSORED ADR | 85771U10 | 1575 | 51630 SH | SHARED | 24 | | 51630 | |
| D STATS CHIPPAC LTD | SPONSORED ADR | 85771T10 | 0 | 5 SH | SHARED | | | 5 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D STEAK N SHAKE CO | COM | | 85787310 | 30 | 2770 SH | SHARED | 01 | 2770 | |
| D STEAK N SHAKE CO | COM | | 85787310 | 109 | 10000 SH | SHARED | 10 | 10000 | |
| D STEEL DYNAMICS INC | NOTE 4.000%12/1 | 11 | 85811 9AD | 4392 | 627000 PRN | SHARED | | 627000 | |
| D STEEL DYNAMICS INC | COM | | 85811910 | 126998 | 2131923 SH | SHARED | | 2131923 | |
| D STEEL DYNAMICS INC | COM | | 85811910 | 2406 | 40400 SH | SHARED | 01 | 9100 | 31300 |
| D STEEL DYNAMICS INC | COM | | 85811910 | 272 | 4573 SH | SHARED | 04 | 4573 | |
| D STEEL DYNAMICS INC | COM | | 85811910 | 12061 | 202480 SH | SHARED | 10 | 155280 | 47200 |
| D STEEL DYNAMICS INC | COM | | 85811910 | 905 | 15200 SH | SHARED | 24 | 15200 | |
| D STEELCLOUD INC | COM | | 85815M10 | 0 | 331 SH | SHARED | | 331 | |
| D STEELCASE INC | CL A | | 85815520 | 13476 | 849198 SH | SHARED | | 849198 | |
| D STEELCASE INC | CL A | | 85815520 | 163 | 10300 SH | SHARED | 01 | 10300 | |
| D STEELCASE INC | CL A | | 85815520 | 346 | 21838 SH | SHARED | 02 | 21838 | |
| D STEELCASE INC | CL A | | 85815520 | 284 | 17900 SH | SHARED | 10 | 17900 | |
| D STEIN MART INC | COM | | 85837510 | 259 | 54791 SH | SHARED | | 54791 | |
| D STEIN MART INC | COM | | 85837510 | 108 | 22865 SH | SHARED | 02 | 22865 | |
| D STEINWAY MUSICAL INSTRS INC | COM | | 85849510 | 0 | 18 SH | SHARED | | 18 | |
| D STEINWAY MUSICAL INSTRS INC | COM | | 85849510 | 46 | 1700 SH | SHARED | 01 | 1700 | |
| D STEINWAY MUSICAL INSTRS INC | COM | | 85849510 | 22 | 800 SH | SHARED | 10 | 800 | |
| D STEMCELLS INC | COM | | 85857R10 | 5 | 3863 SH | SHARED | | 3863 | |
| D STEPAN CO | COM | | 85858610 | 95 | 2921 SH | SHARED | | 2921 | |
| D STEPAN CO | COM | | 85858610 | 22 | 700 SH | SHARED | 01 | 700 | |
| D STEPAN CO | COM | | 85858610 | 195 | 6000 SH | SHARED | 10 | 6000 | |
| D STEPAN CO | PFD CONV 5.50% | | 85858620 | 412 | 11188 SH | SHARED | | 11188 | |
| D STEPHAN CO | COM | | 85860310 | 0 | 35 SH | SHARED | | 35 | |
| D STERLING BANCSHARES INC | COM | | 85890710 | 272 | 24400 SH | SHARED | | 24400 | |
| D STERLING BANCSHARES INC | COM | | 85890710 | 45 | 4100 SH | SHARED | 01 | 4100 | |
| D STERLING BANCSHARES INC | COM | | 85890710 | 2565 | 229910 SH | SHARED | 10 | 229910 | |
| D STERICYCLE INC | COM | | 85891210 | 3224 | 54278 SH | SHARED | | 39266 | 15012 |
| D STERICYCLE INC | COM | | 85891210 | 5124 | 86268 SH | SHARED | | 86268 | |
| D STERICYCLE INC | COM | | 85891210 | 15468 | 260412 SH | SHARED | 01 | 162222 | 98190 |
| D STERICYCLE INC | COM | | 85891210 | 2759 | 46460 SH | SHR/OTHR | 01 | | 46460 |
| D STERICYCLE INC | COM | | 85891210 | 244 | 4116 SH | SHARED | 02 | 4116 | |
| D STERICYCLE INC | COM | | 85891210 | 1027 | 17302 SH | SHARED | 04 | | 17302 |
| D STERICYCLE INC | COM | | 85891210 | 1505 | 25340 SH | SHARED | 10 | 24370 | 970 |
| D STERICYCLE INC | COM | | 85891210 | 7731 | 130167 SH | SHARED | 19 | | 130167 |
| D STERICYCLE INC | COM | | 85891210 | 1661 | 27975 SH | SHARED | 20 | 17195 | 10780 |
| D STERICYCLE INC | COM | | 85891210 | 750 | 12640 SH | SHR/OTHR | 20 | | 12640 |
| D STERICYCLE INC | COM | | 85891210 | 26 | 450 SH | SHARED | 21 | 450 | |
| D STERICYCLE INC | COM | | 85891210 | 65 | 1100 SH | SHR/OTHR | 21 | | 1100 |
| D STERICYCLE INC | COM | | 85891210 | 587 | 9889 SH | SHARED | 22 | 9419 | 470 |
| D STERICYCLE INC | COM | | 85891210 | 53 | 905 SH | SHR/OTHR | 22 | | 905 |
| D STERICYCLE INC | COM | | 85891210 | 1620 | 27277 SH | SHARED | 23 | 24882 | 2395 |
| D STERICYCLE INC | COM | | 85891210 | 1527 | 25715 SH | SHR/OTHR | 23 | | 25715 |
| D STERIS CORP | COM | | 85915210 | 573 | 19892 SH | SHARED | | 19892 | |
| D STERIS CORP | COM | | 85915210 | 605 | 21000 SH | SHARED | 01 | 1200 | 19800 |
| D STERIS CORP | COM | | 85915210 | 137 | 4779 SH | SHARED | 02 | 4779 | |
| D STERIS CORP | COM | | 85915210 | 1156 | 40100 SH | SHARED | 10 | 40100 | |
| D STERLING BANCORP | COM | | 85915810 | 4 | 357 SH | SHARED | | 357 | |
| D STERLING BANCORP | COM | | 85915810 | 110 | 8100 SH | SHARED | 10 | 8100 | |
| D STEREOTAXIS INC | COM | | 85916J10 | 10 | 826 SH | SHARED | | 826 | |
| D STEREOTAXIS INC | COM | | 85916J10 | 1 | 100 SH | SHARED | 02 | 100 | |
| D STERLING CONSTRUCTION CO INC | COM | | 85924110 | 48 | 2242 SH | SHARED | | 2242 | |
| D STERLING CONSTRUCTION CO INC | COM | | 85924110 | 28 | 1300 SH | SHARED | 01 | 1300 | |
| D STERLING CONSTRUCTION CO INC | COM | | 85924110 | 14162 | 649050 SH | SHARED | 10 | 649050 | |
| D STERLING FINL CORP | COM | | 85931710 | 5 | 332 SH | SHARED | | 332 | |
| D STERLING FINL CORP | COM | | 85931710 | 38 | 2320 SH | SHARED | 01 | 2320 | |
| D STERLING FINL CORP | COM | | 85931710 | 32 | 2000 SH | SHARED | 10 | 2000 | |
| D STERLING FINL CORP WASH | COM | | 85931910 | 749 | 44657 SH | SHARED | | 44657 | |
| D STERLING FINL CORP WASH | COM | | 85931910 | 132 | 7900 SH | SHARED | 01 | 7900 | |
| D STERLING FINL CORP WASH | COM | | 85931910 | 716 | 42700 SH | SHARED | 02 | 42700 | |
| D STERLING FINL CORP WASH | COM | | 85931910 | 10566 | 629329 SH | SHARED | 10 | 629329 | |
| D STERLITE INDS INDIA LTD | ADS | | 85973720 | 2287 | 87729 SH | SHARED | | 87729 | |
| D STEWART ENTERPRISES INC | NOTE 3.125% 7/1 | | 86037 0AH | 8168 | 8000000 PRN | SHARED | | 8000000 | |
| D STEWART ENTERPRISES INC | NOTE 3.375% 7/1 | | 86037 0AK | 8120 | 8000000 PRN | SHARED | | 8000000 | |
| D STEWART ENTERPRISES INC | CL A | | 86037010 | 319 | 35911 SH | SHARED | | 35911 | |
| D STEWART ENTERPRISES INC | CL A | | 86037010 | 357 | 40200 SH | SHARED | 10 | 40200 | |
| D STEWART INFORMATION SVCS COR | COM | | 86037210 | 1926 | 73825 SH | SHARED | | 73825 | |
| D STEWART INFORMATION SVCS COR | COM | | 86037210 | 11 | 450 SH | SHARED | 02 | 450 | |
| D STEWART INFORMATION SVCS COR | COM | | 86037210 | 195 | 7500 SH | SHARED | 10 | 7500 | |
| D STEWART INFORMATION SVCS COR | COM | | 86037210 | 0 | 20 SH | SHARED | 23 | 20 | |
| D STIFEL FINL CORP | COM | | 86063010 | 4 | 95 SH | SHARED | | 95 | |
| D STILLWATER MNG CO | COM | | 86074Q10 | 2022 | 209409 SH | SHARED | | 209409 | |
| D STILLWATER MNG CO | COM | | 86074Q10 | 87 | 9009 SH | SHARED | 10 | 9009 | |
| D STMICROELECTRONICS N V | NY REGISTRY | | 86101210 | 1631 | 114086 SH | SHARED | | 114086 | |
| D STOCKERYALE INC | COM NEW | | 86126720 | 0 | 815 SH | SHARED | | 815 | |
| D STONE ENERGY CORP | COM | | 86164210 | 225 | 4800 SH | SHARED | | 4800 | |
| D STONE ENERGY CORP | COM | | 86164210 | 362 | 7725 SH | SHARED | 01 | 7725 | |
| D STONE ENERGY CORP | COM | | 86164210 | 10 | 225 SH | SHARED | 02 | 225 | |
| D STONE ENERGY CORP | COM | | 86164210 | 1046 | 22300 SH | SHARED | 10 | 22300 | |
| D STONERIDGE INC | COM | | 86183P10 | 1 | 216 SH | SHARED | | 216 | |
| D STONERIDGE INC | COM | | 86183P10 | 14 | 1825 SH | SHARED | 02 | 1825 | |
| D STONEMOR PARTNERS L P | COM UNITS | | 86183Q10 | 3 | 153 SH | SHARED | | 153 | |
| D STONELEIGH PARTNERS ACQUS CO | COM | | 86192310 | 16133 | 2159816 SH | SHARED | | 2159816 | |
| D STONELEIGH PARTNERS ACQUS CO | *W EXP 05/31/201 | | 86192312 | 125 | 179892 SH | SHARED | | 179892 | |
| D STONELEIGH PARTNERS ACQUS CO | UNIT 99/99/9999 | | 86192320 | 8 | 1047 SH | SHARED | | 1047 | |
| D STORA ENSO CORP | SPON ADR REP R | | 86210M10 | 217 | 14813 SH | SHARED | | 14813 | |
| D STORA ENSO CORP | SPON ADR REP R | | 86210M10 | 6 | 461 SH | SHARED | 21 | 11059 | 461 |
| D STRATASYS INC | COM | | 86268510 | 285 | 11059 SH | SHARED | | 11059 | |
| D STRATEGIC DIAGNOSTICS INC | COM | | 86270010 | 2 | 407 SH | SHARED | | 407 | |
| D STRATEGIC HOTELS & RESORTS I | COM | | 86272T10 | 6583 | 393525 SH | SHARED | | 393525 | |
| D STRATEGIC HOTELS & RESORTS I | COM | | 86272T10 | 282 | 16865 SH | SHARED | 01 | 9965 | 6900 |
| D STRATEGIC HOTELS & RESORTS I | COM | | 86272T10 | 625 | 37400 SH | SHARED | 02 | 37400 | |
| D STRATEGIC HOTELS & RESORTS I | COM | | 86272T10 | 1949 | 116500 SH | SHARED | 10 | 116500 | |
| D STRATEGIC HOTELS & RESORTS I | COM | | 86272T10 | 968 | 57900 SH | SHARED | 11 | | 57900 |
| D STRATTEC SEC CORP | COM | | 86311110 | 1064 | 25685 SH | SHARED | | 25685 | |
| D STRATTEC SEC CORP | COM | | 86311110 | 8 | 199 SH | SHARED | 01 | 199 | |
| D STRATUS PPTYS INC | COM NEW | | 86316720 | 0 | 29 SH | SHARED | | 29 | |
| D STREAMLINE HEALTH SOLUTIONS | COM | | 86323610 | 0 | 134 SH | SHARED | | 134 | |
| D STRAYER ED INC | COM | | 86323610 | 580 | 3405 SH | SHARED | | 3405 | |
| D STRAYER ED INC | COM | | 86323610 | 814 | 4775 SH | SHARED | 01 | 575 | 4200 |
| D STRAYER ED INC | COM | | 86323610 | 170 | 1002 SH | SHARED | 02 | 1002 | |
| D STRAYER ED INC | COM | | 86323610 | 1023 | 6000 SH | SHARED | 10 | 6000 | |
| D STREETTRACKS GOLD TR | GOLD SHS | | 86330710 | 25479 | 308993 SH | SHARED | | 308993 | |
| D STREETTRACKS GOLD TR | GOLD SHS | | 86330710 | 4392 | 53272 SH | SHARED | 01 | 52177 | 1095 |
| D STREETTRACKS GOLD TR | GOLD SHS | | 86330710 | 110 | 1343 SH | SHR/OTHR | 01 | | 1343 |
| D STREETTRACKS GOLD TR | GOLD SHS | | 86330710 | 6015 | 72954 SH | SHARED | 02 | 72954 | |
| D STREETTRACKS GOLD TR | GOLD SHS | | 86330710 | 38997 | 472921 SH | SHARED | 10 | 354510 | 118411 |
| D STREETTRACKS GOLD TR | GOLD SHS | | 86330710 | 27312 | 331223 SH | SHARED | 19 | | 331223 |
| D STREETTRACKS GOLD TR | GOLD SHS | | 86330710 | 183 | 2230 SH | SHARED | 21 | | 2230 |
| D STREETTRACKS GOLD TR | GOLD SHS | | 86330710 | 915 | 11100 SH | SHARED | 22 | | 11100 |
| D STREETTRACKS GOLD TR | GOLD SHS | | 86330710 | 90 | 1100 SH | SHR/OTHR | 23 | | 1100 |
| D STREETTRACKS GOLD TR | GOLD SHS | | 86330710 | 3165 | 38387 SH | SHARED | 24 | 38387 | |
| D STRYKER CORP | COM | | 86366710 | 580 | 7775 SH | SHARED | | 7775 | |
| D STRYKER CORP | COM | | 86366710 | 28707 | 384205 SH | SHARED | | 243805 | 140400 |

| D | Issuer | Class | CUSIP | | | Type | Code | | |
|---|--------|-------|-------|---|---|------|------|---|---|
| D | STRYKER CORP | COM | 86366710 | 2854 | 38204 SH | SHARED | 01 | 37604 | 600 |
| D | STRYKER CORP | COM | 86366710 | 443 | 5942 SH | SHARED | 02 | 5942 | |
| D | STRYKER CORP | COM | 86366710 | 523 | 7000 SH | SHARED | 04 | 7000 | |
| D | STRYKER CORP | COM | 86366710 | 11 | 150 SH | SHARED | 05 | 150 | |
| D | STRYKER CORP | COM | 86366710 | 181 | 2430 SH | SHARED | 06 | | 2430 |
| D | STRYKER CORP | COM | 86366710 | 50841 | 680430 SH | SHARED | 10 | 598530 | 81900 |
| D | STRYKER CORP | COM | 86366710 | 261 | 3500 SH | SHARED | 15 | | 3500 |
| D | STRYKER CORP | COM | 86366710 | 149 | 2000 SH | SHARED | 23 | 2000 | |
| D | STRYKER CORP | COM | 86366710 | 478 | 6400 SH | SHARED | 24 | 6400 | |
| D | STUDENT LN CORP | COM | 86390210 | 342 | 3113 SH | SHARED | | 3113 | |
| D | STUDENT LN CORP | COM | 86390210 | 8 | 78 SH | SHARED | 21 | 78 | |
| D | STURM RUGER & CO INC | COM | 86415910 | 354 | 42767 SH | SHARED | | 42767 | |
| D | STURM RUGER & CO INC | COM | 86415910 | 26 | 3200 SH | SHARED | 01 | 3200 | |
| D | STURM RUGER & CO INC | COM | 86415910 | 70 | 8550 SH | SHARED | 02 | 8550 | |
| D | STURM RUGER & CO INC | COM | 86415910 | 545 | 65900 SH | SHARED | 10 | 65900 | |
| D | SUBURBAN PROPANE PARTNERS L | UNIT LTD PARTN | 86448210 | 1940 | 47904 SH | SHARED | | 47904 | |
| D | SUBURBAN PROPANE PARTNERS L | UNIT LTD PARTN | 86448210 | 68 | 1700 SH | SHARED | 01 | | 1700 |
| D | SUBURBAN PROPANE PARTNERS L | UNIT LTD PARTN | 86448210 | 16566 | 409050 SH | SHARED | 10 | 409050 | |
| D | SUFFOLK BANCORP | COM | 86473910 | 0 | 3 SH | SHARED | | 3 | |
| D | SUFFOLK BANCORP | COM | 86473910 | 168 | 5500 SH | SHARED | 10 | 5500 | |
| D | SUFFOLK BANCORP | COM | 86473910 | 985 | 32100 SH | SHARED | 23 | 32100 | |
| D | SUFFOLK FIRST BK VA | COM | 86478810 | 0 | 59 SH | SHARED | | 59 | |
| D | SUCAMPO PHARMACEUTICALS INC | CL A | 86490910 | 3209 | 175000 SH | SHARED | 04 | 175000 | |
| D | SULPHCO INC | COM | 86537810 | 70 | 13562 SH | SHARED | | 3462 | 10100 |
| D | SUMMER INFANT INC | COM | 86564610 | 1152 | 236100 SH | SHARED | 10 | 236100 | |
| D | SUMMIT FINANCIAL GROUP INC | COM | 86606G10 | 2 | 178 SH | SHARED | | 178 | |
| D | SUMTOTAL SYS INC | COM | 86661510 | 929 | 195582 SH | SHARED | | 195582 | |
| D | SUN BANCORP INC | COM | 86663B10 | 12 | 793 SH | SHARED | | 793 | |
| D | SUN BANCORP INC | COM | 86663B10 | 17 | 1102 SH | SHARED | 20 | | 1102 |
| D | SUN AMERICAN BANCORP | COM NEW | 86664A20 | 1287 | 345178 SH | SHARED | | 345178 | |
| D | SUN COMMUNITIES INC | COM | 86667410 | 93 | 4420 SH | SHARED | | 4420 | |
| D | SUN COMMUNITIES INC | COM | 86667410 | 427 | 20300 SH | SHARED | 02 | 20300 | |
| D | SUN COMMUNITIES INC | COM | 86667410 | 4 | 200 SH | SHARED | 10 | 200 | |
| D | SUN COMMUNITIES INC | COM | 86667410 | 71 | 3400 SH | SHARED | 21 | | 3400 |
| D | SUN LIFE FINL INC | COM | 86679610 | 3641 | 65091 SH | SHARED | | 65091 | |
| D | SUN LIFE FINL INC | COM | 86679610 | 46 | 826 SH | SHARED | 01 | 826 | |
| D | SUN LIFE FINL INC | COM | 86679610 | 16 | 300 SH | SHARED | 05 | 300 | |
| D | SUN LIFE FINL INC | COM | 86679610 | 159 | 2850 SH | SHARED | 06 | | 2850 |
| D | SUN LIFE FINL INC | COM | 86679610 | 2134 | 38162 SH | SHARED | 10 | 38162 | |
| D | SUN LIFE FINL INC | COM | 86679610 | 349 | 6242 SH | SHARED | 14 | | 6242 |
| D | SUN LIFE FINL INC | COM | 86679610 | 248 | 4443 SH | SHR/OTHR | 20 | | 4443 |
| D | SUN MICROSYSTEMS INC | COM | 86681020 | 455 | 25142 SH | SHARED | | 24767 | 375 |
| D | SUN MICROSYSTEMS INC | COM NEW | 86681020 | 58468 | 3224976 SH | SHARED | | 2415714 | 809262 |
| D | SUN MICROSYSTEMS INC | COM NEW | 86681020 | 3341 | 184321 SH | SHARED | 01 | 176458 | 7863 |
| D | SUN MICROSYSTEMS INC | COM NEW | 86681020 | 3539 | 195215 SH | SHARED | 02 | 195215 | |
| D | SUN MICROSYSTEMS INC | COM NEW | 86681020 | 1813 | 100000 SH | SHARED | 04 | 100000 | |
| D | SUN MICROSYSTEMS INC | COM NEW | 86681020 | 8 | 447 SH | SHARED | 05 | 447 | |
| D | SUN MICROSYSTEMS INC | COM NEW | 86681020 | 133 | 7372 SH | SHARED | 06 | | 7372 |
| D | SUN MICROSYSTEMS INC | COM NEW | 86681020 | 81132 | 4475036 SH | SHARED | 10 | 3982286 | 492750 |
| D | SUN MICROSYSTEMS INC | COM NEW | 86681020 | 32 | 1775 SH | SHARED | 14 | | 1775 |
| D | SUN MICROSYSTEMS INC | COM NEW | 86681020 | 7829 | 431850 SH | SHARED | 15 | 431850 | |
| D | SUN MICROSYSTEMS INC | COM NEW | 86681020 | 59 | 3300 SH | SHARED | 19 | | 3300 |
| D | SUN MICROSYSTEMS INC | COM NEW | 86681020 | 20 | 1150 SH | SHARED | 20 | 250 | 900 |
| D | SUN MICROSYSTEMS INC | COM NEW | 86681020 | 2 | 125 SH | SHARED | 23 | 125 | |
| D | SUN MICROSYSTEMS INC | COM NEW | 86681020 | 829 | 45750 SH | SHARED | 24 | 45750 | |
| D | SUN-TIMES MEDIA GROUP INC | COM | 86680Q10 | 7376 | 3352811 SH | SHARED | | 3352811 | |
| D | SUN-TIMES MEDIA GROUP INC | COM | 86680Q10 | 2 | 1255 SH | SHARED | 02 | 1255 | |
| D | SUN HEALTHCARE GROUP INC | COM NEW | 86693340 | 332 | 19337 SH | SHARED | | 19337 | |
| D | SUN HEALTHCARE GROUP INC | COM NEW | 86693340 | 56 | 3295 SH | SHARED | 01 | 3295 | |
| D | SUN HEALTHCARE GROUP INC | COM NEW | 86693340 | 245 | 14300 SH | SHARED | 10 | 14300 | |
| D | SUN HYDRAULICS CORP | COM | 86694210 | 98 | 3915 SH | SHARED | | 3915 | |
| D | SUN HYDRAULICS CORP | COM | 86694210 | 18 | 750 SH | SHARED | 01 | 750 | |
| D | SUN HYDRAULICS CORP | COM | 86694210 | 2 | 100 SH | SHARED | 02 | 100 | |
| D | SUN HYDRAULICS CORP | COM | 86694210 | 408 | 16200 SH | SHARED | 10 | 16200 | |
| D | SUNAIR SERVICES CORP | COM | 86701710 | 0 | 157 SH | SHARED | | 157 | |
| D | SUNAMERICA FCSED ALPHA GRW F | COM | 86703710 | 1273 | 67300 SH | SHARED | | 67300 | |
| D | SUNCOM WIRELESS HLDGS INC | CL A NEW | 86722Q20 | 82 | 3082 SH | SHARED | | 3082 | |
| D | SUNCOR ENERGY INC | COM | 86722910 | 1087 | 10000 SH | SHARED | | | 10000 |
| D | SUNCOR ENERGY INC | COM | 86722910 | 42091 | 387123 SH | SHARED | | 384323 | 2800 |
| D | SUNCOR ENERGY INC | COM | 86722910 | 259 | 2388 SH | SHARED | 01 | 2388 | |
| D | SUNCOR ENERGY INC | COM | 86722910 | 160353 | 1474785 SH | SHARED | 04 | 1474785 | |
| D | SUNCOR ENERGY INC | COM | 86722910 | 1500 | 13800 SH | SHARED | 05 | 13800 | |
| D | SUNCOR ENERGY INC | COM | 86722910 | 61558 | 566159 SH | SHARED | 06 | | 566159 |
| D | SUNCOR ENERGY INC | COM | 86722910 | 36657 | 337143 SH | SHARED | 10 | 260243 | 76900 |
| D | SUNCOR ENERGY INC | COM | 86722910 | 2950 | 27134 SH | SHARED | 14 | 700 | 26434 |
| D | SUNCOR ENERGY INC | COM | 86722910 | 6285 | 57807 SH | SHARED | 16 | 57807 | |
| D | SUNCOR ENERGY INC | COM | 86722910 | 26 | 242 SH | SHARED | 21 | | 242 |
| D | SUNCOR ENERGY INC | COM | 86722910 | 967 | 8900 SH | SHARED | 23 | | 8600 |
| D | SUNCOR ENERGY INC | COM | 86722910 | 505 | 4650 SH | SHR/OTHR | 23 | | 4650 |
| D | SUNCOR ENERGY INC | COM | 86722910 | 2696 | 24800 SH | SHARED | 24 | 24800 | |
| D | SUNESIS PHARMACEUTICALS INC | COM | 86732850 | 1 | 670 SH | SHARED | | 670 | |
| D | SUNESIS PHARMACEUTICALS INC | COM | 86732850 | 1111 | 558400 SH | SHARED | 04 | 558400 | |
| D | SUNLINK HEALTH SYSTEMS INC | COM | 86737U10 | 0 | 135 SH | SHARED | | 135 | |
| D | SUNOPTA INC | COM | 86768P10 | 253 | 19000 SH | SHARED | | 19000 | |
| D | SUNOPTA INC | COM | 86768P10 | 11310 | 847210 SH | SHARED | | 847210 | |
| D | SUNOCO LOGISTICS PRTNRS L P | COM UNITS | 86764L10 | 41 | 827 SH | SHARED | | 827 | |
| D | SUNOCO INC | COM | 86764P10 | 37165 | 513051 SH | SHARED | | 479351 | 33700 |
| D | SUNOCO INC | COM | 86764P10 | 2379 | 32851 SH | SHARED | 01 | 29026 | 3825 |
| D | SUNOCO INC | COM | 86764P10 | 159 | 2200 SH | SHR/OTHR | 01 | | 2200 |
| D | SUNOCO INC | COM | 86764P10 | 5846 | 80704 SH | SHARED | 02 | 80704 | |
| D | SUNOCO INC | COM | 86764P10 | 39 | 549 SH | SHARED | 04 | | 549 |
| D | SUNOCO INC | COM | 86764P10 | 89 | 1240 SH | SHARED | 06 | | 1240 |
| D | SUNOCO INC | COM | 86764P10 | 26338 | 363588 SH | SHARED | 10 | 356588 | 7000 |
| D | SUNOCO INC | COM | 86764P10 | 316 | 4364 SH | SHARED | 14 | 4364 | |
| D | SUNOCO INC | COM | 86764P10 | 1 | 25 SH | SHARED | 20 | 25 | |
| D | SUNOCO INC | COM | 86764P10 | 289 | 4000 SH | SHR/OTHR | 20 | | 4000 |
| D | SUNOCO INC | COM | 86764P10 | 36 | 500 SH | SHARED | 22 | 100 | 400 |
| D | SUNOCO INC | COM | 86764P10 | 249 | 3450 SH | SHARED | 23 | 3450 | |
| D | SUNOCO INC | COM | 86764P10 | 149 | 2060 SH | SHR/OTHR | 23 | | 2060 |
| D | SUNPOWER CORP | DBCV 1.250% 2/1 | 867652AA | 22192 | 9500000 PRN | SHARED | | 9500000 | |
| D | SUNPOWER CORP | COM CL A | 86765210 | 23 | 184 SH | SHARED | | 184 | |
| D | SUNPOWER CORP | COM CL A | 86765210 | 12985 | 99589 SH | SHARED | | 92749 | 6840 |
| D | SUNPOWER CORP | COM CL A | 86765210 | 189 | 1450 SH | SHARED | 01 | 950 | 500 |
| D | SUNPOWER CORP | COM CL A | 86765210 | 1669 | 12804 SH | SHARED | 02 | 12804 | |
| D | SUNPOWER CORP | COM CL A | 86765210 | 22559 | 173015 SH | SHARED | 04 | 173015 | |
| D | SUNPOWER CORP | COM CL A | 86765210 | 26280 | 201554 SH | SHARED | 05 | 201554 | |
| D | SUNPOWER CORP | COM CL A | 86765210 | 396 | 3043 SH | SHARED | 06 | | 3043 |
| D | SUNRISE SENIOR LIVING INC | COM | 86768K10 | 691 | 5306 SH | SHARED | | 5306 | |
| D | SUNRISE SENIOR LIVING INC | COM | 86768K10 | 230 | 7500 SH | SHARED | | 7500 | |
| D | SUNRISE SENIOR LIVING INC | COM | 86768K10 | 936 | 30520 SH | SHARED | 10 | 30520 | |
| D | SUNRISE SENIOR LIVING INC | COM | 86768K10 | 13226 | 431100 SH | SHARED | 10 | 431100 | |
| D | SUNSTONE HOTEL INVS INC NEW | COM | 86789210 | 541 | 29611 SH | SHARED | | 29611 | |
| D | SUNSTONE HOTEL INVS INC NEW | COM | 86789210 | 101 | 5545 SH | SHARED | 01 | 5545 | |

```
D SUNSTONE HOTEL INVS INC NEW       COM              86789210      184     10100 SH    SHARED    02        10100
D SUNSTONE HOTEL INVS INC NEW       COM              86789210     1700     93000 SH    SHARED    10        93000
D SUNTRUST BKS INC                  COM              86791410    97809   1565207 SH    SHARED            1563007        2200
D SUNTRUST BKS INC                  COM              86791410     7369    117935 SH    SHARED    01      102745       15190
D SUNTRUST BKS INC                  COM              86791410      190      3056 SH    SHR/OTHR  01                    3056
D SUNTRUST BKS INC                  COM              86791410      839     13441 SH    SHARED    02       13441
D SUNTRUST BKS INC                  COM              86791410       10       169 SH    SHARED    05         169
D SUNTRUST BKS INC                  COM              86791410      203      3260 SH    SHARED    06                    3260
D SUNTRUST BKS INC                  COM              86791410    23359    373812 SH    SHARED    10      331212       42600
D SUNTRUST BKS INC                  COM              86791410      199      3200 SH    SHARED    14                    3200
D SUNTRUST BKS INC                  COM              86791410      525      8405 SH    SHARED    20        8375          30
D SUNTRUST BKS INC                  COM              86791410      161      2588 SH    SHR/OTHR  20                    2588
D SUNTRUST BKS INC                  COM              86791410       31       500 SH    SHARED    22                     500
D SUNTRUST BKS INC                  COM              86791410      374      6000 SH    SHARED    23        6000
D SUNTRUST BKS INC                  COM              86791410      316      5060 SH    SHR/OTHR  23                    5060
D SUPERCONDUCTOR TECHNOLOGIES       COM NEW          86793130        3       667 SH    SHARED             667
D SUNTECH PWR HLDGS CO LTD          ADR              86800C10    20219    245617 SH    SHARED            238417         7200
D SUNTECH PWR HLDGS CO LTD          ADR              86800C10      123      1500 SH    SHARED    01                    1500
D SUNTECH PWR HLDGS CO LTD          ADR              86800C10     4403     53494 SH    SHARED             53494
D SUNTECH PWR HLDGS CO LTD          ADR              86800C10    19508    236984 SH    SHARED    04      236984
D SUNTECH PWR HLDGS CO LTD          ADR              86800C10    25114    305079 SH    SHARED    05      305079
D SUNTECH PWR HLDGS CO LTD          ADR              86800C10     1830     22237 SH    SHARED    10       22237
D SUPER MICRO COMPUTER INC          COM              86805910        .       290 SH    SHARED             290
D SUPERGEN INC                      COM              86805910        3       913 SH    SHARED             913
D SUPERGEN INC                      COM              86805910       40     11050 SH    SHARED    02       11050
D SUPERIOR BANCORP                  COM              86806M10       26      4911 SH    SHARED            4911
D SUPERIOR ESSEX INC                COM              86815V10     7393    308047 SH    SHARED            308047
D SUPERIOR ESSEX INC                COM              86815V10      826     34450 SH    SHARED    01       32300         2150
D SUPERIOR ESSEX INC                COM              86815V10      744     31000 SH    SHR/OTHR  01                   31000
D SUPERIOR ESSEX INC                COM              86815V10    12855    535650 SH    SHARED    10      535650
D SUPERIOR ENERGY SVCS INC          COM              86815710     9795    284588 SH    SHARED            284588
D SUPERIOR ENERGY SVCS INC          COM              86815710     1283     37275 SH    SHARED    01       13275       24000
D SUPERIOR ENERGY SVCS INC          COM              86815710     5489    159493 SH    SHARED    02      159493
D SUPERIOR ENERGY SVCS INC          COM              86815710    25810    749883 SH    SHARED    10      749883
D SUPERIOR ENERGY SVCS INC          COM              86815710       35      1035 SH    SHARED    21                    1035
D SUPERIOR INDS INTL INC            COM              86816810      124      6848 SH    SHARED            6848
D SUPERIOR INDS INTL INC            COM              86816810       62      3425 SH    SHARED    02       3425
D SUPERIOR INDS INTL INC            COM              86816810      185     10200 SH    SHARED    10       10200
D SUPERIOR OFFSHORE INTL INC        COM              86825Q10        1       229 SH    SHARED             229
D SUPERIOR OFFSHORE INTL INC        COM              86825Q10      100     20000 SH    SHARED    02       20000
D SUPERIOR UNIFORM GP INC           COM              86835810        1       121 SH    SHARED             121
D SUPERIOR WELL SVCS INC            COM              86837X10       64      3051 SH    SHARED            3051
D SUPERTEL HOSPITALITY INC MD       COM              86852610        2       487 SH    SHARED             487
D SUPERTEX INC                      COM              86853210      115      3704 SH    SHARED            3704
D SUPERVALU INC                     COM              86853610        7       200 SH    SHARED             200
D SUPERVALU INC                     COM              86853610    51678   1377370 SH    SHARED            1377370
D SUPERVALU INC                     COM              86853610     1355     36138 SH    SHARED    01       36138
D SUPERVALU INC                     COM              86853610      315      8411 SH    SHARED    02        8411
D SUPERVALU INC                     COM              86853610        2        59 SH    SHARED    05          59
D SUPERVALU INC                     COM              86853610       75      2014 SH    SHARED    06                    2014
D SUPERVALU INC                     COM              86853610     8978    239306 SH    SHARED    10      227406       11900
D SUPERVALU INC                     COM              86853610        6       182 SH    SHARED    20         182
D SUPPORTSOFT INC                   COM              86858710        5      1186 SH    SHARED            1186
D SUPPORTSOFT INC                   COM              86858710       30      6840 SH    SHARED    02        6840
D SUPREME INDS INC                  CL A             86860710        1       242 SH    SHARED             242
D SUREWEST COMMUNICATIONS           COM              86873310       12       734 SH    SHARED             734
D SUREWEST COMMUNICATIONS           COM              86873310       51      3000 SH    SHARED    10        3000
D SURMODICS INC                     COM              86887310      250      4621 SH    SHARED            4621
D SURMODICS INC                     COM              86887310       52       975 SH    SHARED    02         975
D SUSQUEHANNA BANCSHARES INC P      COM              86909910       34      1898 SH    SHARED            1898
D SUSQUEHANNA BANCSHARES INC P      COM              86909910     1492     80925 SH    SHARED    10       80925
D SUSSER HLDGS CORP                 COM              86923310        5       267 SH    SHARED             267
D SUSSER HLDGS CORP                 COM              86923310       20      1000 SH    SHARED    02        1000
D SUSSEX BANCORP                    COM              86924510      219     16558 SH    SHARED            16558
D SUTRON CORP                       COM              86938010        0        58 SH    SHARED              58
D SWIFT ENERGY CO                   COM              87073810     2605     59175 SH    SHARED            59175
D SWIFT ENERGY CO                   COM              87073810      920     20915 SH    SHARED    01       20915
D SWIFT ENERGY CO                   COM              87073810      352      8015 SH    SHARED    02        1505         6510
D SWIFT ENERGY CO                   COM              87073810     5587    126900 SH    SHARED    10      126900
D SWISS HELVETIA FD INC             COM              87087510       14       878 SH    SHARED    01         902
D SWITCH & DATA FACILITIES COM      COM              87104310       14       902 SH    SHARED             902
D SYBASE INC                        COM              87113010     9848    377470 SH    SHARED            377470
D SYBASE INC                        COM              87113010     2452     94020 SH    SHARED    01       65870       28150
D SYBASE INC                        COM              87113010     1487     57000 SH    SHR/OTHR  01                   57000
D SYBASE INC                        COM              87113010      166      6398 SH    SHARED    02        6398
D SYBASE INC                        COM              87113010    18128    694850 SH    SHARED    10      694850
D SYBASE INC                        COM              87113010       65      2499 SH    SHARED    21                    2499
D SYCAMORE NETWORKS INC             COM              87120610        0       100 SH    SHARED             100
D SYCAMORE NETWORKS INC             COM              87120610     5521   1437837 SH    SHARED            1437837
D SYCAMORE NETWORKS INC             COM              87120610      146     38100 SH    SHARED    10       38100
D SYKES ENTERPRISES INC             COM              87123710       98      5477 SH    SHARED            5477
D SYKES ENTERPRISES INC             COM              87123710       72      4044 SH    SHARED    02        4044
D SYMANTEC CORP                     NOTE  0.750% 6/1 871503AD     9169   8800000 PRN    SHARED            8800000
D SYMANTEC CORP                     NOTE  1.000% 6/1 871503AF     1160   1115000 PRN    SHARED            1115000
D SYMANTEC CORP                     NOTE  1.000% 6/1 871503AF    20299  19500000 PRN    SHARED    04      9500000
D SYMANTEC CORP                     COM              87150310      523     32460 SH    SHARED                         32460
D SYMANTEC CORP                     COM              87150310    64101   3971606 SH    SHARED            2901906     1069700
D SYMANTEC CORP                     COM              87150310     3477    215471 SH    SHARED    01      212828         2643
D SYMANTEC CORP                     COM              87150310        6       400 SH    SHR/OTHR  01                     400
D SYMANTEC CORP                     COM              87150310      758     47013 SH    SHARED    02       47013
D SYMANTEC CORP                     COM              87150310   214624  13297700 SH    SHARED    04      3297700
D SYMANTEC CORP                     COM              87150310     3789    234800 SH    SHARED    06                  234800
D SYMANTEC CORP                     COM              87150310    78265   4849189 SH    SHARED    10      4242689      606500
D SYMANTEC CORP                     COM              87150310     4404    272866 SH    SHARED    14      100000       172866
D SYMANTEC CORP                     COM              87150310      387     24000 SH    SHARED    15                   24000
D SYMANTEC CORP                     COM              87150310       10       620 SH    SHARED    20          75          545
D SYMANTEC CORP                     COM              87150310       72      4500 SH    SHARED    21        4500
D SYMANTEC CORP                     COM              87150310       96      6000 SH    SHARED    23        6000
D SYMANTEC CORP                     COM              87150310       16      1044 SH    SHR/OTHR  23                    1044
D SYMANTEC CORP                     COM              87150310      698     43300 SH    SHARED    24       43300
D SYMMETRICOM INC                   NOTE  3.250% 6/1 871543AB    11310  13000000 PRN    SHARED            3000000
D SYMMETRICOM INC                   COM              87154310     1031    218981 SH    SHARED            218981
D SYMMETRICOM INC                   COM              87154310      338     71936 SH    SHARED    02       71936
D SYMMETRY MED INC                  COM              87154620       67      3845 SH    SHARED            3845
D SYMMETRY MED INC                  COM              87154620       52      3000 SH    SHARED    02        3000
D SYMMETRY MED INC                  COM              87154620      161      9273 SH    SHARED    10        9273
D SYMYX TECHNOLOGIES                COM              87155S10       64      8433 SH    SHARED            8433
D SYMYX TECHNOLOGIES                COM              87155S10       13      1766 SH    SHARED    20        1766
D SYNALLOY CP DEL                   COM              87156510      578     33634 SH    SHARED            33634
D SYNALLOY CP DEL                   COM              87156510        1        75 SH    SHARED             75
D SYNCHRONOSS TECHNOLOGIES INC      COM              87157810      345      9751 SH    SHARED            9751
D SYNCHRONOSS TECHNOLOGIES INC      COM              87157B10     2326     65650 SH    SHARED    01       65000          650
D SYNCHRONOSS TECHNOLOGIES INC      COM              87157B10     2480     70000 SH    SHR/OTHR  01                   70000
D SYNCHRONOSS TECHNOLOGIES INC      COM              87157B10      252      7135 SH    SHARED    02        7135
```

| | Name | Class | CUSIP | Value | Amount | Disc. | Mgr | Sole | None |
|---|---|---|---|---|---|---|---|---|---|
| D | SYNCHRONOSS TECHNOLOGIES INC | COM | 87157B10 | 886 | 25000 SH | SHARED | 20 | 25000 | |
| D | SYNCHRONOSS TECHNOLOGIES INC | COM | 87157B10 | 3 | 90 SH | SHARED | 21 | | 90 |
| D | SYNAPTICS INC | NOTE 0.750%12/0 | 87157DAB | 6635 | 6225000 PRN | SHARED | | 6225000 | |
| D | SYNAPTICS INC | COM | 87157D10 | 2577 | 62615 SH | SHARED | | 62615 | |
| D | SYNAPTICS INC | COM | 87157D10 | 148 | 3600 SH | SHARED | 01 | 3600 | |
| D | SYNAPTICS INC | COM | 87157D10 | 5791 | 140700 SH | SHARED | 10 | 140700 | |
| D | SYNERGY BRANDS INC | COM PAR $.001 | 87157E40 | 0 | 181 SH | SHARED | | 181 | |
| D | SYNGENTA AG | SPONSORED ADR | 87160A10 | 893 | 17638 SH | SHARED | | 17638 | |
| D | SYNGENTA AG | SPONSORED ADR | 87160A10 | 1706 | 33680 SH | SHARED | 10 | 33680 | |
| D | SYNGENTA AG | SPONSORED ADR | 87160A10 | 95 | 1890 SH | SHARED | 21 | 1890 | |
| D | SYNERGX SYSTEMS INC | COM | 87160C10 | 0 | 100 SH | SHARED | | 100 | |
| D | SYNERGETICS USA INC | COM | 87160Y10 | 1 | 631 SH | SHARED | | 631 | |
| D | SYNPLICITY INC | COM | 87160Y10 | 2 | 398 SH | SHARED | | 398 | |
| D | SYNPLICITY INC | COM | 87160Y10 | 12 | 2100 SH | SHARED | 02 | 2100 | |
| D | SYNOPSYS INC | COM | 87160710 | 5015 | 193428 SH | SHARED | | 193428 | |
| D | SYNOPSYS INC | COM | 87160710 | 1128 | 43517 SH | SHARED | 01 | 517 | 43000 |
| D | SYNOPSYS INC | COM | 87160710 | 384 | 14841 SH | SHARED | 02 | 14841 | |
| D | SYNOPSYS INC | COM | 87160710 | 18 | 730 SH | SHARED | 06 | | 730 |
| D | SYNOPSYS INC | COM | 87160710 | 611 | 23581 SH | SHARED | 10 | 23581 | |
| D | SYNOPSYS INC | COM | 87160710 | 285 | 11005 SH | SHARED | 14 | 11005 | |
| D | SYNOVUS FINL CORP | COM | 87161C10 | 18774 | 779660 SH | SHARED | | 779660 | |
| D | SYNOVUS FINL CORP | COM | 87161C10 | 847 | 35195 SH | SHARED | 01 | 35195 | |
| D | SYNOVUS FINL CORP | COM | 87161C10 | 524 | 21786 SH | SHARED | 02 | 21786 | |
| D | SYNOVUS FINL CORP | COM | 87161C10 | 55 | 2310 SH | SHARED | 06 | | 2310 |
| D | SYNOVUS FINL CORP | COM | 87161C10 | 4814 | 199924 SH | SHARED | 10 | 199924 | |
| D | SYNOVUS FINL CORP | COM | 87161C10 | 2213 | 91942 SH | SHARED | 16 | 91942 | |
| D | SYNOVIS LIFE TECHNOLOGIES IN | COM | 87162G10 | 80 | 4115 SH | SHARED | | 4115 | |
| D | SYNOVIS LIFE TECHNOLOGIES IN | COM | 87162G10 | 31 | 1600 SH | SHARED | 02 | 1600 | |
| D | SYNTEL INC | COM | 87162H10 | 607 | 15773 SH | SHARED | | 15773 | |
| D | SYNTEL INC | COM | 87162H10 | 58 | 1525 SH | SHARED | 01 | 1525 | |
| D | SYNTEL INC | COM | 87162H10 | 67 | 1750 SH | SHARED | 02 | 1750 | |
| D | SYNTEL INC | COM | 87162H10 | 766 | 19900 SH | SHARED | 10 | 19900 | |
| D | SYNTA PHARMACEUTICALS CORP | COM | 87162720 | 2 | 400 SH | SHARED | | 400 | |
| D | SYNNEX CORP | COM | 87162M10 | 1603 | 81808 SH | SHARED | | 81808 | |
| D | SYNIVERSE HLDGS INC | COM | 87163710 | 141 | 9079 SH | SHARED | | 9079 | |
| D | SYNIVERSE HLDGS INC | COM | 87163710 | 353 | 22700 SH | SHARED | 01 | 22700 | |
| D | SYNIVERSE HLDGS INC | COM | 87163710 | 258 | 16592 SH | SHARED | 02 | 16592 | |
| D | SYNIVERSE HLDGS INC | COM | 87163710 | 1068 | 68600 SH | SHARED | 10 | 68600 | |
| D | SYNTAX BRILLIAN CORP | COM | 87163L10 | 455 | 148025 SH | SHARED | | 148025 | |
| D | SYNTROLEUM CORP | COM | 87163010 | 5 | 6295 SH | SHARED | | 6295 | |
| D | SYNUTRA INTL INC | COM | 87164C10 | 23 | 776 SH | SHARED | | 776 | |
| D | SYNVISTA THERAPEUTICS INC | COM | 87164M10 | 0 | 52 SH | SHARED | | 52 | |
| D | SYNVISTA THERAPEUTICS INC | COM | 87164M10 | 0 | 21 SH | SHARED | 02 | 21 | |
| D | SYPRIS SOLUTIONS INC | COM | 87165510 | 729 | 119551 SH | SHARED | | 119551 | |
| D | SYPRIS SOLUTIONS INC | COM | 87165510 | 6 | 1025 SH | SHARED | 02 | 1025 | |
| D | SYSCO CORP | COM | 87182910 | 183 | 5880 SH | SHARED | | 5880 | |
| D | SYSCO CORP | COM | 87182910 | 29204 | 935752 SH | SHARED | | 875552 | 60200 |
| D | SYSCO CORP | COM | 87182910 | 8264 | 264810 SH | SHARED | 01 | 217085 | 47725 |
| D | SYSCO CORP | COM | 87182910 | 1239 | 39729 SH | SHR/OTHR | 01 | | |
| D | SYSCO CORP | COM | 87182910 | 1427 | 45729 SH | SHARED | 04 | 45729 | |
| D | SYSCO CORP | COM | 87182910 | 9 | 300 SH | SHARED | 05 | 300 | |
| D | SYSCO CORP | COM | 87182910 | 174 | 5600 SH | SHARED | 06 | | 5600 |
| D | SYSCO CORP | COM | 87182910 | 25437 | 815036 SH | SHARED | 10 | 815036 | |
| D | SYSCO CORP | COM | 87182910 | 733 | 23500 SH | SHR/OTHR | 10 | | 23500 |
| D | SYSCO CORP | COM | 87182910 | 330 | 10600 SH | SHARED | 14 | 10600 | |
| D | SYSCO CORP | COM | 87182910 | 88 | 2830 SH | SHARED | 19 | 2830 | |
| D | SYSCO CORP | COM | 87182910 | 4397 | 140886 SH | SHARED | 20 | 29766 | 111120 |
| D | SYSCO CORP | COM | 87182910 | 1397 | 44780 SH | SHR/OTHR | 20 | | 44780 |
| D | SYSCO CORP | COM | 87182910 | 162 | 5210 SH | SHARED | 21 | 5210 | |
| D | SYSCO CORP | COM | 87182910 | 592 | 18970 SH | SHARED | 22 | 16565 | 2405 |
| D | SYSCO CORP | COM | 87182910 | 138 | 4425 SH | SHR/OTHR | 22 | | 4425 |
| D | SYSCO CORP | COM | 87182910 | 1189 | 38105 SH | SHARED | 23 | 38055 | 50 |
| D | SYSCO CORP | COM | 87182910 | 1387 | 44443 SH | SHR/OTHR | 23 | | 44443 |
| D | SYSTEMAX INC | COM | 87185110 | 2170 | 106832 SH | SHARED | | 106832 | |
| D | SYSTEMAX INC | COM | 87185110 | 22 | 1100 SH | SHARED | 01 | 1100 | |
| D | SYSTEMAX INC | COM | 87185110 | 479 | 23600 SH | SHARED | 10 | 23600 | |
| D | TCF FINL CORP | COM | 87227510 | 4912 | 273971 SH | SHARED | | 273971 | |
| D | TCF FINL CORP | COM | 87227510 | 674 | 37595 SH | SHARED | 01 | 1595 | 36000 |
| D | TCF FINL CORP | COM | 87227510 | 632 | 35257 SH | SHARED | 02 | 35257 | |
| D | TCF FINL CORP | COM | 87227510 | 10 | 590 SH | SHARED | 06 | | 590 |
| D | TCF FINL CORP | COM | 87227510 | 190 | 10600 SH | SHARED | 10 | 10600 | |
| D | TC PIPELINES LP | UT COM LTD PRT | 87233Q10 | 43210 | 1193672 SH | SHARED | | 1193672 | |
| D | TCW STRATEGIC INCOME FUND IN | COM | 87234010 | 4987 | 1358993 SH | SHARED | | 1358993 | |
| D | TDK CORP | AMERN DEP SH | 87235140 | 19 | 261 SH | SHARED | | 261 | |
| D | TDK CORP | AMERN DEP SH | 87235140 | 21 | 290 SH | SHARED | 21 | 290 | |
| D | TD AMERITRADE HLDG CORP | COM | 87236Y10 | 2852 | 142183 SH | SHARED | | 142183 | |
| D | TD AMERITRADE HLDG CORP | COM | 87236Y10 | 235 | 11745 SH | SHARED | 01 | 11745 | |
| D | TD AMERITRADE HLDG CORP | COM | 87236Y10 | 44 | 2200 SH | SHR/OTHR | 01 | | 2200 |
| D | TD AMERITRADE HLDG CORP | COM | 87236Y10 | 105 | 5235 SH | SHARED | 02 | 5235 | |
| D | TD AMERITRADE HLDG CORP | COM | 87236Y10 | 2607 | 130000 SH | SHARED | 04 | 130000 | |
| D | TD AMERITRADE HLDG CORP | COM | 87236Y10 | 2491 | 124200 SH | SHARED | 10 | 124200 | |
| D | TD AMERITRADE HLDG CORP | COM | 87236Y10 | 272 | 13600 SH | SHARED | 14 | 13600 | |
| D | TECO ENERGY INC | COM | 87237510 | 3408 | 198057 SH | SHARED | | 198057 | |
| D | TECO ENERGY INC | COM | 87237510 | 323 | 18800 SH | SHARED | 01 | 18800 | |
| D | TECO ENERGY INC | COM | 87237510 | 300 | 17434 SH | SHARED | 02 | 17434 | |
| D | TECO ENERGY INC | COM | 87237510 | 7600 | 441640 SH | SHARED | 10 | 441640 | |
| D | TECO ENERGY INC | COM | 87237510 | 20 | 1200 SH | SHARED | 23 | 1200 | 1200 |
| D | TECO ENERGY INC | COM | 87237510 | 98 | 5700 SH | SHR/OTHR | 23 | | 5700 |
| D | TEPPCO PARTNERS L P | UT LTD PARTNER | 87238410 | 30125 | 785954 SH | SHARED | | 785954 | |
| D | TESSCO TECHNOLOGIES INC | COM | 87238610 | 1 | 89 SH | SHARED | | 89 | |
| D | TF FINL CORP | COM | 87239110 | 1 | 71 SH | SHARED | | 71 | |
| D | TFS FINL CORP | COM | 87240810 | 2490 | 208617 SH | SHARED | | 208617 | |
| D | TGC INDS INC | COM NEW | 87241730 | 3 | 384 SH | SHARED | | 384 | |
| D | TICC CAPITAL CORP | COM | 87244710 | 4109 | 445258 SH | SHARED | | 445258 | |
| D | TICC CAPITAL CORP | COM | 87244710 | 1 | 128 SH | SHARED | 02 | 128 | |
| D | THQ INC | COM NEW | 87244340 | 1128 | 40045 SH | SHARED | | 40045 | |
| D | THQ INC | COM NEW | 87244340 | 1166 | 41387 SH | SHARED | 01 | 40875 | 512 |
| D | THQ INC | COM NEW | 87244340 | 1353 | 48000 SH | SHR/OTHR | 01 | | 48000 |
| D | THQ INC | COM NEW | 87244340 | 56 | 2000 SH | SHARED | 04 | 2000 | |
| D | THQ INC | COM NEW | 87244340 | 1550 | 55000 SH | SHARED | 04 | 55000 | |
| D | THQ INC | COM NEW | 87244340 | 25738 | 913020 SH | SHARED | 10 | 913020 | |
| D | TIB FINL CORP | COM NEW | 87244910 | 2 | 310 SH | SHARED | | 310 | |
| D | TII NETWORK TECHNOLOGIES INC | COM NEW | 87247920 | 0 | 323 SH | SHARED | | 323 | |
| D | TJX COS INC NEW | NOTE 2/1 | 87254OAL | 243 | 253000 PRN | SHARED | 02 | 253000 | |
| D | TJX COS INC NEW | COM | 87254010 | 547 | 19050 SH | SHARED | | 19050 | 19050 |
| D | TJX COS INC NEW | COM | 87254010 | 14312 | 498166 SH | SHARED | | 498166 | |
| D | TJX COS INC NEW | COM | 87254010 | 6786 | 236200 SH | SHARED | 01 | 217530 | 18670 |
| D | TJX COS INC NEW | COM | 87254010 | 225 | 7865 SH | SHR/OTHR | 01 | | 7865 |
| D | TJX COS INC NEW | COM | 87254010 | 1519 | 52898 SH | SHARED | 02 | 52898 | |
| D | TJX COS INC NEW | COM | 87254010 | 7 | 260 SH | SHR/OTHR | 02 | | 260 |
| D | TJX COS INC NEW | COM | 87254010 | 120 | 4200 SH | SHARED | 06 | | 4200 |
| D | TJX COS INC NEW | COM | 87254010 | 19206 | 668507 SH | SHARED | 10 | 668507 | |
| D | TJX COS INC NEW | COM | 87254010 | 508 | 17686 SH | SHARED | 14 | 17686 | |
| D | TJX COS INC NEW | COM | 87254010 | 712 | 24810 SH | SHARED | 20 | 22495 | 2315 |

```
D TJX COS INC NEW              COM             87254010     72    2530 SH   SHR/OTHR   20              2530
D TJX COS INC NEW              COM             87254010    164    5717 SH   SHARED     22    2600      3117
D TJX COS INC NEW              COM             87254010     57    2000 SH   SHARED     23    2000
D TJX COS INC NEW              COM             87254010     40    1400 SH   SHR/OTHR   23              1400
D TLC VISION CORP             COM             87254910     15    4801 SH   SHARED                     4801
D TM ENTMT & MEDIA INC        COM             87260T10   1133  155670 SH   SHARED                   155670
D TM ENTMT & MEDIA INC        *W EXP 10/17/201 87260T11    90  150000 SH   SHARED                   150000
D TM ENTMT & MEDIA INC        UNIT 10/17/2011  87260T20   411   52721 SH   SHARED                    52721
D TRC COS INC                 COM             87262510     12    1508 SH   SHARED                     1508
D TRM CORP                    COM             87263610      4   11045 SH   SHARED                    11045
D TRW AUTOMOTIVE HLDGS CORP   COM             87264310   2032   97252 SH   SHARED                    97252
D TRW AUTOMOTIVE HLDGS CORP   COM             87264810    146    7000 SH   SHARED     01    7000
D TRW AUTOMOTIVE HLDGS CORP   COM             87264S10    109    5225 SH   SHARED     02    5225
D TRW AUTOMOTIVE HLDGS CORP   COM             87264810     45    2200 SH   SHARED     10    2200
D TS&W CLAYMORE TAX ADVNTG BL COM             87280810   1609  122885 SH   SHARED                   122885
D TSR INC                     COM             87288510      0      68 SH   SHARED                       68
D TVI CORP NEW                COM             87291610      0     866 SH   SHARED                      866
D TNS INC                     COM             87296010      8     485 SH   SHARED                      485
D TNS INC                     COM             87296010     69    3925 SH   SHARED     02    3925
D TNS INC                     COM             87296010    138    7800 SH   SHARED     10    7800
D TTM TECHNOLOGIES  INC       COM             87305R10     63    5420 SH   SHARED                     5420
D TTM TECHNOLOGIES  INC       COM             87305R10    141   12100 SH   SHARED     10   12100
D T-3 ENERGY SRVCS INC        COM             87306E10   1742   37060 SH   SHARED                    37060
D TAILWIND FINL INC           COM             87402310   5571  734967 SH   SHARED                   734967
D TAILWIND FINL INC           *W EXP 04/11/201 87402311    0     892 SH   SHARED                      892
D TAITRON COMPONENTS INC      CL A            87402810      0      98 SH   SHARED                       98
D TAIWAN FD INC               COM             87403610    177   10000 SH   SHR/OTHR   23             10000
D TAIWAN SEMICONDUCTOR MFG LTD SPONSORED ADR  87403910   1792  180000 SH   SHARED                   180000
D TAIWAN SEMICONDUCTOR MFG LTD SPONSORED ADR  87403910  39317 3947505 SH   SHARED                  3947040   465
D TAIWAN SEMICONDUCTOR MFG LTD SPONSORED ADR  87403910     21    2123 SH   SHARED     01      55     2068
D TAIWAN SEMICONDUCTOR MFG LTD SPONSORED ADR  87403910   1574  158128 SH   SHARED     02  158128
D TAIWAN SEMICONDUCTOR MFG LTD SPONSORED ADR  87403910    643   64616 SH   SHARED     04   64616
D TAIWAN SEMICONDUCTOR MFG LTD SPONSORED ADR  87403910 106747 10717625 SH  SHARED     04  0717625
D TAIWAN SEMICONDUCTOR MFG LTD SPONSORED ADR  87403910   8964  900000 SH   SHARED     05  900000
D TAIWAN SEMICONDUCTOR MFG LTD SPONSORED ADR  87403910  31795 3192278 SH   SHARED     06                  3192278
D TAIWAN SEMICONDUCTOR MFG LTD SPONSORED ADR  87403910  12532 1258323 SH   SHARED     10 1258323
D TAIWAN SEMICONDUCTOR MFG LTD SPONSORED ADR  87403910   1458  146393 SH   SHARED     14   44000   102393
D TAIWAN SEMICONDUCTOR MFG LTD SPONSORED ADR  87403910   2876  288794 SH   SHARED     16  288794
D TAIWAN SEMICONDUCTOR MFG LTD SPONSORED ADR  87403910      2     265 SH   SHARED     20     265
D TAIWAN SEMICONDUCTOR MFG LTD SPONSORED ADR  87403910     40    4030 SH   SHARED     21    4030
D TAKE-TWO INTERACTIVE SOFTWAR COM            87405410   2996  162415 SH   SHARED                   162415
D TAKE-TWO INTERACTIVE SOFTWAR COM            87405410    355   19245 SH   SHARED     01   19245
D TAKE-TWO INTERACTIVE SOFTWAR COM            87405410     55    3025 SH   SHARED     02    3025
D TAKE-TWO INTERACTIVE SOFTWAR COM            87405410    176    9551 SH   SHARED     10    9551
D TAL INTL GROUP INC          COM            87408310     37    1626 SH   SHARED                     1626
D TAL INTL GROUP INC          COM            87408310    212    9350 SH   SHARED     02    9350
D TAL INTL GROUP INC          COM            87408310    118    5200 SH   SHARED     10    5200
D TALBOTS INC                 COM            87416110    628   53148 SH   SHARED                    53148
D TALBOTS INC                 COM            87416110     46    3900 SH   SHARED     02    3900
D TALBOTS INC                 COM            87416110    892   75500 SH   SHARED     10   75500
D TALEO CORP                  CL A           87424N10     15     515 SH   SHARED                      515
D TALISMAN ENERGY INC         COM            87425E10  22140 1195503 SH   SHARED                  1186003     9500
D TALISMAN ENERGY INC         COM            87425E10    250   13519 SH   SHARED     01    6094     7425
D TALISMAN ENERGY INC         COM            87425E10   1328   71745 SH   SHR/OTHR   01           71745
D TALISMAN ENERGY INC         COM            87425E10    555   30000 SH   SHARED     04   30000
D TALISMAN ENERGY INC         COM            87425E10      7     400 SH   SHARED     05     400
D TALISMAN ENERGY INC         COM            87425E10    116    6300 SH   SHARED     06                  6300
D TALISMAN ENERGY INC         COM            87425E10    605   32700 SH   SHARED     10   32700
D TALISMAN ENERGY INC         COM            87425E10    288   15600 SH   SHARED     19             15600
D TALISMAN ENERGY INC         COM            87425E10     33    1800 SH   SHARED     20            1800
D TALISMAN ENERGY INC         COM            87425E10    359   19400 SH   SHARED     23   19400
D TALISMAN ENERGY INC         COM            87425E10    535   28900 SH   SHR/OTHR   23            28900
D TAM SA                      SP ADR REP PFD 87484D10    195    8100 SH   SHARED                     8100
D TAM SA                      SP ADR REP PFD 87484D10   5528  229206 SH   SHARED                   229206
D TAM SA                      SP ADR REP PFD 87484D10   1760   73000 SH   SHARED     02   73000
D TALON INTL INC              COM            87484F10      0     494 SH   SHARED                      494
D TANDY BRANDS ACCESSORIES INC COM            87537810      1     151 SH   SHARED                      151
D TANDY LEATHER FACTORY INC   COM            87538X10      0     184 SH   SHARED                      184
D TANGER FACTORY OUTLET CTRS I COM            87546510    448   11900 SH   SHARED                    11900
D TANGER FACTORY OUTLET CTRS I COM            87546510    486   12900 SH   SHARED     01    2900    10000
D TANGER FACTORY OUTLET CTRS I COM            87546510   2375   63000 SH   SHARED     02   63000
D TANGER FACTORY OUTLET CTRS I COM            87546510   7098  188250 SH   SHARED     10  188250
D TANGER FACTORY OUTLET CTRS I COM            87546510 141997 3765500 SH   SHARED     11 2325400  1440100
D TANZANIAN ROYALTY EXPL CORP COM            87600010      6     936 SH   SHARED                      936
D TAPESTRY PHARMACEUTICALS INC COM NEW       87603120      0     345 SH   SHARED                      345
D TARGACEPT INC               COM            87611830      2     340 SH   SHARED                      340
D TARGA RESOURCES PARTNERS LP COM UNIT       87611X10   1049   35427 SH   SHARED                    35427
D TARGANTA THERAPEUTICS CORP  COM            87612C10   3227  357001 SH   SHARED                   357001
D TARGET CORP                 COM            87612810 1790311 35806224 SH  SHARED                 5806224
D TARGET CORP                 COM            87612810   5969  119384 SH   SHARED                   110216     9168
D TARGET CORP                 COM            87612810    177    3550 SH   SHR/OTHR   01            3550
D TARGET CORP                 COM            87612810 290731 5814637 SH   SHARED     02 5814637
D TARGET CORP                 COM            87612810   1293   25870 SH   SHARED     05   25870
D TARGET CORP                 COM            87612810    405    8103 SH   SHARED     06                  8103
D TARGET CORP                 COM            87612810  95359 1907191 SH   SHARED     10 1843891    63300
D TARGET CORP                 COM            87612810    144    2896 SH   SHARED     14             2896
D TARGET CORP                 COM            87612810   1812   36245 SH   SHARED     20   13175    23070
D TARGET CORP                 COM            87612810    340    6800 SH   SHR/OTHR   20            6800
D TARGET CORP                 COM            87612810     20     400 SH   SHR/OTHR   21             400
D TARGET CORP                 COM            87612810    218    4375 SH   SHARED     22    2075     2300
D TARGET CORP                 COM            87612810    100    2000 SH   SHR/OTHR   22            2000
D TARGET CORP                 COM            87612810   1468   29370 SH   SHARED     23   28270     1100
D TARGET CORP                 COM            87612810   2989   59792 SH   SHR/OTHR   23           59792
D TARGET CORP                 COM            87612810    100    2016 SH   SHARED     24    2016
D TARGETED GENETICS CORP      COM NEW        87612M30      0     430 SH   SHARED                      430
D TARRAGON CORP               COM            87628710      0     132 SH   SHARED                      132
D TARRAGON CORP               COM            87628710      9    6200 SH   SHARED     10    6200
D TARRANT APPAREL GROUP       COM            87628910      0     466 SH   SHARED                      466
D TASER INTL INC              COM            87651810     50    3500 SH   SHARED                     3500
D TASER INTL INC              COM            87651810     32    2250 SH   SHARED     01    2250
D TASER INTL INC              COM            87651810    123    8614 SH   SHARED     02    8614
D TASEKO MINES LTD            COM            87651110     46    9057 SH   SHARED                     9057
D TASTY BAKING CO             COM            87655330      7     901 SH   SHARED                      901
D TATA MTRS LTD               SPONSORED ADR  87656850  25801 1368037 SH   SHARED                  1368037
D TATA MTRS LTD               SPONSORED ADR  87656850     20    1100 SH   SHARED     01    1100
D TATA MTRS LTD               SPONSORED ADR  87656850    320   17000 SH   SHARED     02   17000
D TATA MTRS LTD               SPONSORED ADR  87656850   1963  104100 SH   SHARED     10  104100
D TAUBMAN CTRS INC            COM            87666410    442    8987 SH   SHARED                     8987
D TAUBMAN CTRS INC            COM            87666410    207    4220 SH   SHARED     01    4220
D TAUBMAN CTRS INC            COM            87666410   3922   79750 SH   SHARED     10   79750
D TAUBMAN CTRS INC            COM            87666410  97666 1985500 SH   SHARED     11 1223150   762350
D TAYLOR CAP GROUP INC        COM            87685110    153    7505 SH   SHARED                     7505
D TAYLOR CAP GROUP INC        COM            87685110     75    3700 SH   SHARED     01    1800     1900
D TAYLOR CAP GROUP INC        COM            87685110    318   15600 SH   SHARED     10   15600
```

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | TAYLOR DEVICES INC | COM | 87716310 | 0 | 64 SH | SHARED | | 64 | |
| D | TEAMSTAFF INC | COM NEW | 87815U20 | 0 | 339 SH | SHARED | | 339 | |
| D | TEAM FINANCIAL INC | COM | 87815X10 | 0 | 63 SH | SHARED | | 63 | |
| D | TEAM INC | COM | 87815510 | 572 | 15656 SH | SHARED | | 15656 | |
| D | TEAM INC | COM | 87815510 | 1316 | 36000 SH | SHARED | 10 | 36000 | |
| D | TEAM INC | COM | 87815510 | 31 | 860 SH | SHARED | 21 | | 860 |
| D | TECH DATA CORP | COM | 87823710 | 20469 | 542678 SH | SHARED | | 457878 | 84800 |
| D | TECH DATA CORP | COM | 87823710 | 13077 | 34675 SH | SHARED | 01 | 18075 | 16600 |
| D | TECH DATA CORP | COM | 87823710 | 148 | 3927 SH | SHARED | 02 | 3927 | |
| D | TECH DATA CORP | COM | 87823710 | 11591 | 307300 SH | SHARED | 10 | 289700 | 17600 |
| D | TECH OPS SEVCON INC | COM | 87823910 | 0 | 68 SH | SHARED | | 68 | |
| D | TECHTEAM GLOBAL INC | COM | 87831110 | 3 | 282 SH | SHARED | | 282 | |
| D | TECHTEAM GLOBAL INC | COM | 87831110 | 5 | 400 SH | SHARED | 02 | 400 | |
| D | TECHE HLDG CO | COM | 87833010 | 2 | 53 SH | SHARED | | 53 | |
| D | TECHNE CORP | COM | 87837710 | 327 | 4963 SH | SHARED | | 4963 | |
| D | TECHNE CORP | COM | 87837710 | 885 | 13400 SH | SHARED | 01 | | 13400 |
| D | TECHNE CORP | COM | 87837710 | 152 | 2315 SH | SHARED | 02 | 2315 | |
| D | TECHNE CORP | COM | 87837710 | 998 | 15120 SH | SHARED | 10 | 15120 | |
| D | TECHNE CORP | COM | 87837710 | 7 | 120 SH | SHARED | 21 | | 120 |
| D | TECHNITROL INC | COM | 87855510 | 358 | 12551 SH | SHARED | | 12551 | |
| D | TECHNITROL INC | COM | 87855510 | 694 | 24300 SH | SHARED | 01 | 24300 | |
| D | TECHNITROL INC | COM | 87855510 | 1731 | 60600 SH | SHARED | 10 | 60600 | |
| D | TECHNOLOGY SOLUTIONS CO | COM NEW | 87872T20 | 0 | 58 SH | SHARED | | 58 | |
| D | TECHNOLOGY SOLUTIONS CO | COM NEW | 87872T20 | 0 | 125 SH | SHARED | 02 | 125 | |
| D | TECHNOLOGY RESH CORP | COM NEW | 87872730 | 0 | 154 SH | SHARED | | 154 | |
| D | TECHWELL INC | COM | 87874D10 | 16 | 1476 SH | SHARED | | 1476 | |
| D | TECHTARGET INC | COM | 87874R10 | 0 | 6 SH | SHARED | | 6 | |
| D | TECK COMINCO LTD | CL B | 87874220 | 4497 | 125942 SH | SHARED | | 123542 | 2400 |
| D | TECK COMINCO LTD | CL B | 87874220 | 310 | 8682 SH | SHARED | 01 | 1732 | 6950 |
| D | TECK COMINCO LTD | CL B | 87874220 | 60 | 1700 SH | SHR/OTHR | 01 | 1700 | |
| D | TECK COMINCO LTD | CL B | 87874220 | 3366 | 94260 SH | SHARED | 04 | 94260 | |
| D | TECK COMINCO LTD | CL B | 87874220 | 7 | 200 SH | SHARED | 05 | 200 | |
| D | TECK COMINCO LTD | CL B | 87874220 | 674 | 18900 SH | SHARED | 06 | | 18900 |
| D | TECK COMINCO LTD | CL B | 87874220 | 303 | 8500 SH | SHARED | 10 | 8500 | |
| D | TECK COMINCO LTD | CL B | 87874220 | 344 | 9652 SH | SHARED | 14 | | 9652 |
| D | TECUMSEH PRODS CO | CL A | 87889520 | 7 | 300 SH | SHARED | | 300 | |
| D | TECUMSEH PRODS CO | CL A | 87889520 | 56 | 2400 SH | SHARED | 02 | 2400 | |
| D | TECUMSEH PRODS CO | CL A | 87889520 | 42 | 1800 SH | SHARED | 10 | 1800 | |
| D | TEGAL CORP | COM NEW | 87900820 | 0 | 185 SH | SHARED | | 185 | |
| D | TEJON RANCH CO DEL | COM | 87908010 | 38 | 933 SH | SHARED | | 933 | |
| D | TEKELEC | NOTE 2.250% 6/1 | 87910lAE | 4436 | 4522000 PRN | SHARED | | 4522000 | |
| D | TEKELEC | COM | 87910110 | 179 | 14396 SH | SHARED | | 14396 | |
| D | TEKELEC | COM | 87910110 | 41 | 3350 SH | SHARED | 01 | 3350 | |
| D | TEKELEC | COM | 87910110 | 843 | 67500 SH | SHARED | 10 | 67500 | |
| D | TEL INSTR ELECTRS CORP | COM NEW | 87916520 | 0 | 38 SH | SHARED | | 38 | |
| D | TELE NORTE CELULAR PART S A | SPON ADR PFD | 87924910 | 0 | 30 SH | SHARED | | 30 | |
| D | TELE NORTE LESTE PART S A | SPON ADR PFD | 87924610 | 1598 | 82900 SH | SHARED | | 7600 | 75300 |
| D | TELE NORTE LESTE PART S A | SPON ADR PFD | 87924610 | 22680 | 1176361 SH | SHARED | | 1176361 | |
| D | TELE NORTE LESTE PART S A | SPON ADR PFD | 87924610 | 5302 | 275000 SH | SHARED | 02 | 275000 | |
| D | TELE NORTE LESTE PART S A | SPON ADR PFD | 87924610 | 14267 | 740000 SH | SHARED | 04 | 740000 | |
| D | TELECOM HLDRS TR | DEPOSITORY RCPT | 87927P20 | 2 | 55 SH | SHARED | | 55 | |
| D | TELECOM ITALIA S P A NEW | SPON ADR ORD | 87927Y10 | 266 | 8638 SH | SHARED | | 8638 | |
| D | TELECOM ITALIA S P A NEW | SPON ADR ORD | 87927Y10 | 105 | 3415 SH | SHARED | 21 | 3415 | |
| D | TELECOM ITALIA S P A NEW | SPON ADR SVGS | 87927Y20 | 10 | 431 SH | SHARED | | | 431 |
| D | TELECOM ARGENTINA S A | SPON ADR REP B | 87927320 | 110 | 4950 SH | SHARED | | | 4950 |
| D | TELECOM ARGENTINA S A | SPON ADR REP B | 87927320 | 1890 | 84951 SH | SHARED | | 84951 | |
| D | TELECOM CORP NEW ZEALAND LTD | SPONSORED ADR | 87927820 | 573 | 34540 SH | SHARED | | 34540 | |
| D | TELECOM CORP NEW ZEALAND LTD | SPONSORED ADR | 87927820 | 90 | 5466 SH | SHARED | 21 | 5466 | |
| D | TELECOMUNICACOES BRASILEIRAS | SPONSORED ADR | 87928730 | 0 | 20 SH | SHARED | | 20 | |
| D | TELECOMUNICACOES DE SAO PAUL | SPON ADR PFD | 87929AU0 | 2482 | 97546 SH | SHARED | | 97546 | |
| D | TELECOMMUNICATION SYS INC | CL A | 87929J10 | 3 | 843 SH | SHARED | | 843 | |
| D | TELEDYNE TECHNOLOGIES INC | COM | 87936010 | 394 | 7400 SH | SHARED | | 7400 | |
| D | TELEDYNE TECHNOLOGIES INC | COM | 87936010 | 31 | 600 SH | SHARED | 01 | 600 | |
| D | TELEDYNE TECHNOLOGIES INC | COM | 87936010 | 304 | 5710 SH | SHARED | 02 | 5710 | |
| D | TELEDYNE TECHNOLOGIES INC | COM | 87936010 | 895 | 16796 SH | SHARED | 10 | 16796 | |
| D | TELEFLEX INC | COM | 87936910 | 8910 | 141420 SH | SHARED | | 137220 | 4200 |
| D | TELEFLEX INC | COM | 87936910 | 1053 | 16725 SH | SHARED | 01 | 5500 | 11225 |
| D | TELEFLEX INC | COM | 87936910 | 580 | 9220 SH | SHARED | 02 | 9220 | |
| D | TELEFLEX INC | COM | 87936910 | 14864 | 235900 SH | SHARED | 10 | 212600 | 23300 |
| D | TELEFLEX INC | COM | 87936910 | 53 | 854 SH | SHARED | 21 | | 854 |
| D | TELEFLEX INC | COM | 87936910 | 75 | 1200 SH | SHR/OTHR | 23 | | 1200 |
| D | TELEFONICA DE ARGENTINA S A | SPONSORED ADR | 87937840 | 4 | 300 SH | SHARED | | 300 | |
| D | TELEFONICA S A | SPONSORED ADR | 87938220 | 0 | 2 SH | SHARED | | | 2 |
| D | TELEFONICA S A | SPONSORED ADR | 87938220 | 2495 | 25572 SH | SHARED | | 25572 | |
| D | TELEFONICA S A | SPONSORED ADR | 87938220 | 1000 | 10252 SH | SHARED | 01 | 7462 | 2790 |
| D | TELEFONICA S A | SPONSORED ADR | 87938220 | 156 | 1600 SH | SHR/OTHR | 01 | | 1600 |
| D | TELEFONICA S A | SPONSORED ADR | 87938220 | 50 | 518 SH | SHARED | 02 | 518 | |
| D | TELEFONICA S A | SPONSORED ADR | 87938220 | 860 | 8820 SH | SHARED | 10 | 6263 | 2557 |
| D | TELEFONICA S A | SPONSORED ADR | 87938220 | 1401 | 14365 SH | SHR/OTHR | 20 | 14365 | |
| D | TELEFONICA S A | SPONSORED ADR | 87938220 | 23 | 245 SH | SHR/OTHR | 21 | | 245 |
| D | TELEFONICA S A | SPONSORED ADR | 87938220 | 24 | 250 SH | SHARED | 22 | 250 | |
| D | TELEFONICA S A | SPONSORED ADR | 87938220 | 131 | 1350 SH | SHR/OTHR | 23 | | 1350 |
| D | TELEFONOS DE MEXICO S A B | SPON ADR ORD L | 87940378 | 8780 | 238337 SH | SHARED | | 238337 | |
| D | TELEFONOS DE MEXICO S A B | SPON ADR ORD L | 87940378 | 169 | 4600 SH | SHARED | 01 | | 4600 |
| D | TELEFONOS DE MEXICO S A B | SPON ADR ORD L | 87940378 | 2578 | 70000 SH | SHARED | 02 | 70000 | |
| D | TELEFONOS DE MEXICO S A B | SPON ADR ORD L | 87940378 | 3684 | 100000 SH | SHARED | 04 | 100000 | |
| D | TELEFONOS DE MEXICO S A B | SPON ADR ORD L | 87940378 | 4630 | 125700 SH | SHARED | 14 | | 125700 |
| D | TELEFONOS DE MEXICO S A B | SPON ADR ORD L | 87940378 | 197 | 5360 SH | SHARED | 20 | 5360 | |
| D | TELEPHONE & DATA SYS INC | COM | 87943310 | 5354 | 85528 SH | SHARED | | 26928 | 58600 |
| D | TELEPHONE & DATA SYS INC | COM | 87943310 | 3111 | 49700 SH | SHARED | 01 | 16600 | 33100 |
| D | TELEPHONE & DATA SYS INC | COM | 87943310 | 333 | 5334 SH | SHARED | 02 | 5334 | |
| D | TELEPHONE & DATA SYS INC | COM | 87943310 | 3130 | 50000 SH | SHARED | 04 | 50000 | |
| D | TELEPHONE & DATA SYS INC | COM | 87943310 | 28 | 450 SH | SHARED | 06 | | 450 |
| D | TELEPHONE & DATA SYS INC | COM | 87943310 | 21894 | 349757 SH | SHARED | 10 | 322957 | 26800 |
| D | TELEPHONE & DATA SYS INC | COM | 87943310 | 93 | 1500 SH | SHARED | 23 | | 1500 |
| D | TELEPHONE & DATA SYS INC | SPL COM | 87943386 | 2426 | 42129 SH | SHARED | | 42129 | |
| D | TELEPHONE & DATA SYS INC | SPL COM | 87943386 | 322 | 5600 SH | SHARED | 01 | | 5600 |
| D | TELEPHONE & DATA SYS INC | SPL COM | 87943386 | 31 | 547 SH | SHARED | 02 | 547 | |
| D | TELEPHONE & DATA SYS INC | SPL COM | 87943386 | 15 | 267 SH | SHARED | 14 | | 267 |
| D | TELEPHONE & DATA SYS INC | SPL COM | 87943386 | 106 | 1850 SH | SHARED | 21 | | 1850 |
| D | TELEPHONE & DATA SYS INC | SPL COM | 87943386 | 86 | 1500 SH | SHARED | 23 | | 1500 |
| D | TELEMIG CELULAR PART S A | SPON ADR PFD | 87944E10 | 270 | 4824 SH | SHARED | | 4824 | |
| D | TELESTONE TECHNOLOGIES CORP | COM | 87953J10 | 58 | 8912 SH | SHARED | | 8912 | |
| D | TELIK INC | COM | 87959M10 | 3 | 1127 SH | SHARED | | 1127 | |
| D | TELIK INC | COM | 87959M10 | 3 | 1007 SH | SHARED | 02 | 1007 | |
| D | TELKOM SA LTD | SPONSORED ADR | 87960310 | 16 | 205 SH | SHARED | | 205 | |
| D | TELKOM SA LTD | SPONSORED ADR | 87960310 | 13 | 170 SH | SHARED | 21 | 170 | |
| D | TELKONET INC | COM | 87960410 | 1 | 1636 SH | SHARED | | 1636 | |
| D | TELLABS INC | COM | 87966410 | 6352 | 971279 SH | SHARED | | 971279 | |
| D | TELLABS INC | COM | 87966410 | 284 | 43475 SH | SHARED | 01 | 43475 | |
| D | TELLABS INC | COM | 87966410 | 2475 | 378532 SH | SHARED | 02 | 378532 | |
| D | TELLABS INC | COM | 87966410 | 23 | 3610 SH | SHARED | 06 | | 3610 |
| D | TELLABS INC | COM | 87966410 | 1194 | 182646 SH | SHARED | 10 | 182646 | |
| D | TELLABS INC | COM | 87966410 | 8 | 1254 SH | SHARED | 14 | | 1254 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | TELULAR CORP | COM NEW | 87970T20 | 2 | 421 SH | SHARED | | 421 | |
| D | TELUS CORP | NON-VTG SHS | 87971M20 | 1731 | 35880 SH | SHARED | | 35880 | |
| D | TELUS CORP | NON-VTG SHS | 87971M20 | 67 | 1396 SH | SHARED | 01 | 1396 | |
| D | TELUS CORP | NON-VTG SHS | 87971M20 | 1394 | 28900 SH | SHARED | 02 | 28900 | |
| D | TELUS CORP | NON-VTG SHS | 87971M20 | 28 | 600 SH | SHARED | 06 | | 600 |
| D | TELUS CORP | NON-VTG SHS | 87971M20 | 545 | 11300 SH | SHARED | 10 | 11300 | |
| D | TELUS CORP | NON-VTG SHS | 87971M20 | 369 | 7655 SH | SHARED | 14 | | 7655 |
| D | TEMECULA VY BANCORP INC CA | COM | 87972L10 | 211 | 18036 SH | SHARED | | 18036 | |
| D | TEMPLE INLAND INC | COM | 87986810 | 35987 | 1726032 SH | SHARED | | 1726032 | |
| D | TEMPLE INLAND INC | COM | 87986810 | 394 | 18904 SH | SHARED | 01 | 14944 | 3960 |
| D | TEMPLE INLAND INC | COM | 87986810 | 80 | 3879 SH | SHARED | 02 | 3879 | |
| D | TEMPLE INLAND INC | COM | 87986810 | 18 | 870 SH | SHARED | 06 | | 870 |
| D | TEMPLE INLAND INC | COM | 87986810 | 3125 | 149900 SH | SHARED | 10 | 149900 | |
| D | TEMPLE INLAND INC | COM | 87986810 | 6 | 300 SH | SHARED | 14 | | 300 |
| D | TEMPLE INLAND INC | COM | 87986810 | 93 | 4500 SH | SHARED | 20 | | 4500 |
| D | TEMPLE INLAND INC | COM | 87986810 | 1083 | 51960 SH | SHR/OTHR | 20 | | 51960 |
| D | TEMPLE INLAND INC | EX-DISTRIB | 87986811 | 171 | 9500 SH | SHARED | | 9500 | |
| D | TEMPLE INLAND INC | EX-DISTRIB | 87986811 | 568 | 31600 SH | SHARED | 01 | | 31600 |
| D | TEMPLE INLAND INC | EX-DISTRIB | 87986811 | 939 | 52200 SH | SHARED | 10 | | 52200 |
| D | TELETECH HOLDINGS INC | COM | 87993910 | 417 | 19625 SH | SHARED | | 19625 | |
| D | TELETECH HOLDINGS INC | COM | 87993910 | 350 | 16500 SH | SHARED | 01 | 16500 | |
| D | TELETECH HOLDINGS INC | COM | 87993910 | 955 | 44900 SH | SHARED | 10 | 44900 | |
| D | TEMPLETON DRAGON FD INC | COM | 88018T10 | 296 | 9607 SH | SHARED | | 9607 | |
| D | TEMPLETON DRAGON FD INC | COM | 88018T10 | 309 | 10000 SH | SHARED | 01 | | 10000 |
| D | TEMPLETON DRAGON FD INC | COM | 88018T10 | 80 | 2600 SH | SHR/OTHR | 01 | | 2600 |
| D | TEMPLETON DRAGON FD INC | COM | 88018T10 | 216 | 7000 SH | SHARED | 23 | 7000 | |
| D | TEMPLETON EMERGING MKTS FD I | COM | 88019110 | 22 | 952 SH | SHARED | | 952 | |
| D | TEMPLETON EMERGING MKTS FD I | COM | 88019110 | 278 | 12000 SH | SHR/OTHR | 23 | | 12000 |
| D | TEMPLETON EMERG MKTS INCOME | COM | 88019210 | 0 | 45 SH | SHARED | | 45 | |
| D | TEMPLETON EMERG MKTS INCOME | COM | 88019210 | 2196 | 166914 SH | SHR/OTHR | 23 | | 166914 |
| D | TEMPLETON RUS AND EAST EUR F | COM | 88022210 | 1125 | 15000 SH | SHARED | | 15000 | |
| D | TEMPUR PEDIC INTL INC | COM | 88023U10 | 641 | 24697 SH | SHARED | | 24697 | |
| D | TEMPUR PEDIC INTL INC | COM | 88023U10 | 381 | 14700 SH | SHARED | 01 | 14700 | |
| D | TEMPUR PEDIC INTL INC | COM | 88023U10 | 17 | 675 SH | SHARED | 02 | 675 | |
| D | TEMPUR PEDIC INTL INC | COM | 88023U10 | 711 | 27403 SH | SHARED | 10 | 27403 | |
| D | TEMPUR PEDIC INTL INC | COM | 88023U10 | 18 | 706 SH | SHARED | 21 | | 706 |
| D | TENARIS S A | SPONSORED ADR | 88031M10 | 89 | 2000 SH | SHARED | | 2000 | |
| D | TENARIS S A | SPONSORED ADR | 88031M10 | 18078 | 404161 SH | SHARED | | 210561 | 193600 |
| D | TENARIS S A | SPONSORED ADR | 88031M10 | 22147 | 495135 SH | SHARED | 01 | 495135 | |
| D | TENARIS S A | SPONSORED ADR | 88031M10 | 7698 | 172100 SH | SHARED | 04 | 172100 | |
| D | TENARIS S A | SPONSORED ADR | 88031M10 | 81323 | 1818100 SH | SHARED | 10 | 1641700 | 176400 |
| D | TENARIS S A | SPONSORED ADR | 88031M10 | 3099 | 69300 SH | SHARED | 14 | | 69300 |
| D | TENARIS S A | SPONSORED ADR | 88031M10 | 2509 | 56100 SH | SHARED | 24 | 56100 | |
| D | TENET HEALTHCARE CORP | COM | 88033G10 | 5757 | 1133362 SH | SHARED | | 1133362 | |
| D | TENET HEALTHCARE CORP | COM | 88033G10 | 329 | 64900 SH | SHARED | 01 | 64900 | |
| D | TENET HEALTHCARE CORP | COM | 88033G10 | 95 | 18853 SH | SHARED | 02 | 18853 | |
| D | TENET HEALTHCARE CORP | COM | 88033G10 | 1075 | 211698 SH | SHARED | 10 | 211698 | |
| D | TENGASCO INC | COM NEW | 88033R20 | 0 | 989 SH | SHARED | | 989 | |
| D | TENNANT CO | COM | 88034510 | 1 | 40 SH | SHARED | | 40 | |
| D | TENNECO INC | COM | 88034910 | 27 | 1067 SH | SHARED | | 1 | 1066 |
| D | TENNECO INC | COM | 88034910 | 1927 | 73918 SH | SHARED | | 73918 | |
| D | TENNECO INC | COM | 88034910 | 39 | 1520 SH | SHARED | 01 | 1520 | |
| D | TENNECO INC | COM | 88034910 | 14 | 575 SH | SHARED | 02 | 575 | |
| D | TENNECO INC | COM | 88034910 | 8252 | 316534 SH | SHARED | 04 | 316534 | |
| D | TENNECO INC | COM | 88034910 | 4609 | 176817 SH | SHARED | 05 | 176817 | |
| D | TENNECO INC | COM | 88034910 | 332 | 12758 SH | SHARED | 06 | | 12758 |
| D | TENNECO INC | COM | 88034910 | 590 | 22655 SH | SHARED | 10 | 22655 | |
| D | TENNESSEE COMMERCE BANCORP I | COM | 88042P10 | 3 | 123 SH | SHARED | | 123 | |
| D | TERADATA CORP DEL | COM | 88076W10 | 5639 | 205754 SH | SHARED | | 205754 | |
| D | TERADATA CORP DEL | COM | 88076W10 | 611 | 22296 SH | SHARED | 01 | 21460 | 836 |
| D | TERADATA CORP DEL | COM | 88076W10 | 73 | 2692 SH | SHARED | 02 | 2692 | |
| D | TERADATA CORP DEL | COM | 88076W10 | 5981 | 218209 SH | SHARED | 10 | 218209 | |
| D | TERADATA CORP DEL | COM | 88076W10 | 8 | 310 SH | SHARED | 21 | | 310 |
| D | TERADYNE INC | COM | 88077010 | 6082 | 588273 SH | SHARED | | 588273 | |
| D | TERADYNE INC | COM | 88077010 | 187 | 18100 SH | SHARED | 01 | 17800 | 300 |
| D | TERADYNE INC | COM | 88077010 | 229 | 22241 SH | SHARED | 02 | 22241 | |
| D | TERADYNE INC | COM | 88077010 | 2922 | 282662 SH | SHARED | 10 | 282662 | |
| D | TERADYNE INC | COM | 88077010 | 3 | 300 SH | SHARED | 14 | | 300 |
| D | TEREX CORP NEW | COM | 88077910 | 2272 | 34663 SH | SHARED | | 25154 | 9509 |
| D | TEREX CORP NEW | COM | 88077910 | 26639 | 406275 SH | SHARED | | 406275 | |
| D | TEREX CORP NEW | COM | 88077910 | 10574 | 161266 SH | SHARED | 01 | 131097 | 30169 |
| D | TEREX CORP NEW | COM | 88077910 | 1908 | 29102 SH | SHR/OTHR | 01 | | 29102 |
| D | TEREX CORP NEW | COM | 88077910 | 1936 | 29527 SH | SHARED | 02 | 29527 | |
| D | TEREX CORP NEW | COM | 88077910 | 651 | 9931 SH | SHARED | 04 | | 9931 |
| D | TEREX CORP NEW | COM | 88077910 | 68 | 1050 SH | SHARED | 06 | | 1050 |
| D | TEREX CORP NEW | COM | 88077910 | 52022 | 793395 SH | SHARED | 10 | 791780 | 1615 |
| D | TEREX CORP NEW | COM | 88077910 | 59 | 900 SH | SHARED | 14 | | 900 |
| D | TEREX CORP NEW | COM | 88077910 | 4833 | 73715 SH | SHARED | 19 | | 73715 |
| D | TEREX CORP NEW | COM | 88077910 | 1992 | 30390 SH | SHARED | 20 | 24235 | 6155 |
| D | TEREX CORP NEW | COM | 88077910 | 273 | 4175 SH | SHR/OTHR | 20 | | 4175 |
| D | TEREX CORP NEW | COM | 88077910 | 152 | 2328 SH | SHARED | 22 | 2085 | 243 |
| D | TEREX CORP NEW | COM | 88077910 | 54 | 825 SH | SHR/OTHR | 22 | | 825 |
| D | TEREX CORP NEW | COM | 88077910 | 517 | 7894 SH | SHARED | 23 | 7434 | 460 |
| D | TEREX CORP NEW | COM | 88077910 | 253 | 3861 SH | SHR/OTHR | 23 | | 3861 |
| D | TERCICA INC | COM | 88078L10 | 342 | 50527 SH | SHARED | | 50527 | |
| D | TERCICA INC | COM | 88078L10 | 3156 | 465545 SH | SHARED | 04 | 465545 | |
| D | TERNIUM SA | SPON ADR | 88089010 | 2104 | 52471 SH | SHARED | | 52471 | |
| D | TERNIUM SA | SPON ADR | 88089010 | 2181 | 54400 SH | SHARED | 01 | 54400 | |
| D | TERNIUM SA | SPON ADR | 88089010 | 2406 | 60000 SH | SHARED | 04 | 60000 | |
| D | TERNIUM SA | SPON ADR | 88089010 | 9490 | 236600 SH | SHARED | 10 | 236600 | |
| D | TERNIUM SA | SPON ADR | 88089010 | 1363 | 34000 SH | SHARED | 24 | 34000 | |
| D | TERRA INDS INC | COM | 88091510 | 15388 | 322208 SH | SHARED | | 322208 | |
| D | TERRA INDS INC | COM | 88091510 | 1732 | 36275 SH | SHARED | 01 | 8275 | 28000 |
| D | TERRA INDS INC | COM | 88091510 | 210 | 4398 SH | SHARED | 02 | 4398 | |
| D | TERRA INDS INC | COM | 88091510 | 14328 | 300000 SH | SHARED | 05 | 300000 | |
| D | TERRA INDS INC | COM | 88091510 | 54236 | 1135600 SH | SHARED | 10 | 1135600 | |
| D | TERRA INDS INC | COM | 88091510 | 4 | 95 SH | SHARED | 21 | | 95 |
| D | TERRA NITROGEN CO L P | COM UNIT | 88100520 | 84 | 562 SH | SHARED | | 562 | |
| D | TERREMARK WORLDWIDE INC | COM NEW | 88144820 | 394 | 60678 SH | SHARED | | 60678 | |
| D | TERREMARK WORLDWIDE INC | COM NEW | 88144820 | 6 | 1000 SH | SHARED | 01 | | 1000 |
| D | TERRESTAR CORP | COM | 88145110 | 812 | 112132 SH | SHARED | | 112132 | |
| D | TERRESTAR CORP | COM | 88145110 | 54 | 7500 SH | SHARED | 01 | | 7500 |
| D | TESORO CORP | COM | 8815?K10 | 14 | 507 SH | SHARED | | 507 | |
| D | TESORO CORP | COM | 88160910 | 34275 | 718563 SH | SHARED | | 660063 | 58500 |
| D | TESORO CORP | COM | 88160910 | 1600 | 33544 SH | SHR/OTHR | 01 | 32334 | 1220 |
| D | TESORO CORP | COM | 88160910 | 41 | 875 SH | SHR/OTHR | 01 | | 875 |
| D | TESORO CORP | COM | 88160910 | 107 | 2262 SH | SHARED | 02 | 2262 | |
| D | TESORO CORP | COM | 88160910 | 2 | 60 SH | SHARED | 05 | 60 | |
| D | TESORO CORP | COM | 88160910 | 71 | 1500 SH | SHARED | 06 | | 1500 |
| D | TESORO CORP | COM | 88160910 | 66861 | 1401700 SH | SHARED | 10 | 1391900 | 9800 |
| D | TESORO CORP | COM | 88160910 | 23 | 500 SH | SHARED | 14 | | 500 |
| D | TESORO CORP | COM | 88160910 | 23 | 502 SH | SHARED | 20 | 502 | |
| D | TESORO CORP | COM | 88160910 | 5 | 105 SH | SHARED | 21 | | 105 |
| D | TESORO CORP | COM | 88160910 | 6 | 135 SH | SHR/OTHR | 21 | | 135 |

```
D TESORO CORP                      COM              88160910      4     100 SH     SHARED   22       100
D TETRA TECHNOLOGIES INC DEL       COM              88162F10    260   16740 SH     SHARED           16740
D TETRA TECHNOLOGIES INC DEL       COM              88162F10     89    5770 SH     SHARED   01       5770
D TETRA TECHNOLOGIES INC DEL       COM              88162F10    319   20535 SH     SHARED   10      20535
D TETRA TECH INC NEW               COM              88162G10     20     943 SH     SHARED                   943
D TETRA TECH INC NEW               COM              88162G10    238   11074 SH     SHARED           11074
D TETRA TECH INC NEW               COM              88162G10     82    3848 SH     SHARED   02       3848
D TETRA TECH INC NEW               COM              88162G10  11796  548660 SH     SHARED   04      548660
D TETRA TECH INC NEW               COM              88162G10  10990  511191 SH     SHARED   05      511191
D TETRA TECH INC NEW               COM              88162G10    473   22004 SH     SHARED   06              22004
D TETRA TECH INC NEW               COM              88162G10   1019   47414 SH     SHARED   10      47414
D TEVA PHARMACEUTICAL INDS LTD     ADR              88162420   3040   65410 SH     SHARED           65410
D TEVA PHARMACEUTICAL INDS LTD     ADR              88162420   2161   46500 SH     SHARED   01      46500
D TEVA PHARMACEUTICAL INDS LTD     ADR              88162420     37     800 SH     SHR/OTHR 01              800
D TEVA PHARMACEUTICAL INDS LTD     ADR              88162420    756   16280 SH     SHARED   02      16280
D TEVA PHARMACEUTICAL INDS LTD     ADR              88162420  36177  778346 SH     SHARED   04     778346
D TEVA PHARMACEUTICAL INDS LTD     ADR              88162420   5577  120000 SH     SHARED   16     120000
D TEVA PHARMACEUTICAL INDS LTD     ADR              88162420     13     300 SH     SHARED   20        300
D TEVA PHARMACEUTICAL INDS LTD     ADR              88162420     94    2030 SH     SHARED   21       2030
D TEVA PHARMACEUTICAL INDS LTD     ADR              88162420     13     300 SH     SHARED   23        300
D TEVA PHARMACEUTICAL INDS LTD     ADR              88162420     55    1200 SH     SHR/OTHR 23             1200
D TETON ENERGY CORP                COM              88162810      2     447 SH     SHARED             447
D TEVA PHARMACEUTICAL FIN LLC      DBCV  0.250% 2/0 88163VAE     25   25000 PRN    SHARED   02      25000
D TESSERA TECHNOLOGIES INC         COM              88164L10   4143   99602 SH     SHARED           99602
D TESSERA TECHNOLOGIES INC         COM              88164L10     33     800 SH     SHARED   01        800
D TESSERA TECHNOLOGIES INC         COM              88164L10     96    2319 SH     SHARED   02       2319
D TESSERA TECHNOLOGIES INC         COM              88164L10   2912   70000 SH     SHARED   04      70000
D TESSERA TECHNOLOGIES INC         COM              88164L10  40293  968600 SH     SHARED   10     968600
D TEVA PHARMACEUTICAL FIN II L     DBCV  0.500% 2/0 88164RAA    688  550000 PRN    SHARED          550000
D TEVA PHARMACEUTICAL FIN II L     DBCV  0.500% 2/0 88164RAA    732  585000 PRN    SHARED   02     585000
D TEVA PHARMACEUTICAL FIN II L     DBCV  0.250% 2/0 88164RAB   6130 4488000 PRN    SHARED   02    4488000
D TEVA PHARMACEUTICAL FIN CO B     NOTE  1.750% 2/0 88165FAA   8325 7500000 PRN    SHARED         7500000
D TEXAS CAPITAL BANCSHARES INC     COM              88224Q10    346   18975 SH     SHARED           18975
D TEXAS CAPITAL BANCSHARES INC     COM              88224Q10    312   17100 SH     SHARED   10      17100
D TEXAS INDS INC                   COM              88249110   1614   23026 SH     SHARED           23026
D TEXAS INDS INC                   COM              88249110  10051  143392 SH     SHARED   10     143392
D TEXAS INDS INC                   COM              88249110     14     200 SH     SHARED   23        200
D TEXAS INDS INC                   COM              88249110     14     200 SH     SHR/OTHR 23             200
D TEXAS INSTRS INC                 COM              88250810     13     400 SH     SHARED             400
D TEXAS INSTRS INC                 COM              88250810 166750 4992528 SH     SHARED         4992438                90
D TEXAS INSTRS INC                 COM              88250810   9832  294391 SH     SHARED   01     221648           72743
D TEXAS INSTRS INC                 COM              88250810    787   23580 SH     SHR/OTHR 01              23580
D TEXAS INSTRS INC                 COM              88250810   4483  134223 SH     SHARED   02     134223
D TEXAS INSTRS INC                 COM              88250810   8236  246600 SH     SHARED   04     246600
D TEXAS INSTRS INC                 COM              88250810     20     600 SH     SHARED   05        600
D TEXAS INSTRS INC                 COM              88250810   1362   40790 SH     SHARED   06              40790
D TEXAS INSTRS INC                 COM              88250810  35827 1072678 SH     SHARED   10    1070738            1940
D TEXAS INSTRS INC                 COM              88250810   1891   56639 SH     SHARED   14      56639
D TEXAS INSTRS INC                 COM              88250810   1670   50000 SH     SHARED   15      50000
D TEXAS INSTRS INC                 COM              88250810     37    1110 SH     SHARED   19       1110
D TEXAS INSTRS INC                 COM              88250810   2742   82115 SH     SHARED   20      27115           55000
D TEXAS INSTRS INC                 COM              88250810   3965  118725 SH     SHR/OTHR 20             118725
D TEXAS INSTRS INC                 COM              88250810    160    4794 SH     SHARED   21       4520             274
D TEXAS INSTRS INC                 COM              88250810     39    1170 SH     SHR/OTHR 21              1170
D TEXAS INSTRS INC                 COM              88250810     11     350 SH     SHARED   22        350
D TEXAS INSTRS INC                 COM              88250810    153    4603 SH     SHR/OTHR 22              4603
D TEXAS INSTRS INC                 COM              88250810   1184   35461 SH     SHARED   23      34861             600
D TEXAS INSTRS INC                 COM              88250810   3070   91940 SH     SHR/OTHR 23             91940
D TEXAS PAC LD TR                  SUB CTF PROP I T 88261010    671   15000 SH     SHARED           15000
D TEXAS ROADHOUSE INC              CL A             88268110    277   25134 SH     SHARED           25134
D THAI FD INC                      COM              88290410     58    4448 SH     SHARED            4448
D THAI CAP FD INC                  COM NEW          88290520      6     481 SH     SHARED             481
D TEXTRON INC                      COM              88320310  30811  432144 SH     SHARED          432144
D TEXTRON INC                      COM              88320310   3852   54038 SH     SHARED   01      40438           13600
D TEXTRON INC                      COM              88320310    805   11304 SH     SHARED   02      11304
D TEXTRON INC                      COM              88320310   3850   54000 SH     SHARED   04      54000
D TEXTRON INC                      COM              88320310      7     100 SH     SHARED   05        100
D TEXTRON INC                      COM              88320310   5866   82280 SH     SHARED   06              82280
D TEXTRON INC                      COM              88320310  11269  158054 SH     SHARED   10     158054
D TEXTRON INC                      COM              88320310    548    7695 SH     SHARED   14       7695
D TEXTRON INC                      COM              88320310   3674   51534 SH     SHARED   16      51534
D TEXTRON INC                      COM              88320310    114    1600 SH     SHARED   21       1600
D TEXTRON INC                      COM              88320310    238    3350 SH     SHARED   23       3350
D THE BANK HOLDINGS INC            COM              88331810     20    2326 SH     SHARED            2326
D THE9 LTD                         ADR              88337N10     52    2456 SH     SHARED            2456
D THERAGENICS CORP                 COM              88337510      2     760 SH     SHARED             760
D THERAGENICS CORP                 COM              88337510     11    3075 SH     SHARED   02       3075
D THERAVANCE INC                   COM              88338T10     29    1517 SH     SHARED            1517
D THERAVANCE INC                   COM              88338T10    278   14286 SH     SHARED          14286
D THERAVANCE INC                   COM              88338T10      4     250 SH     SHARED   01        250           14286
D THERAVANCE INC                   COM              88338T10     30    1550 SH     SHARED   10       1550
D THERMAGE INC                     COM              88343810      1     331 SH     SHARED             331
D THERMADYNE HLDGS CORP NEW        COM PAR $0.01    88343530      2     228 SH     SHARED             228
D THERMO FISHER SCIENTIFIC INC     COM              88355610   2503   43405 SH     SHARED           34192            9213
D THERMO FISHER SCIENTIFIC INC     COM              88355610  51511  893054 SH     SHARED          893054
D THERMO FISHER SCIENTIFIC INC     COM              88355610  17510  303578 SH     SHARED   01     259273           44305
D THERMO FISHER SCIENTIFIC INC     COM              88355610   2110   36588 SH     SHR/OTHR 01              36588
D THERMO FISHER SCIENTIFIC INC     COM              88355610   4036   69982 SH     SHARED   02      69982
D THERMO FISHER SCIENTIFIC INC     COM              88355610    574    9960 SH     SHARED   04       9960
D THERMO FISHER SCIENTIFIC INC     COM              88355610  86643 1502145 SH     SHARED   04    1502145
D THERMO FISHER SCIENTIFIC INC     COM              88355610   2976   51610 SH     SHARED   05      51610
D THERMO FISHER SCIENTIFIC INC     COM              88355610  57606  998730 SH     SHARED   06             998730
D THERMO FISHER SCIENTIFIC INC     COM              88355610  67321 1167151 SH     SHARED   10    1128891           38260
D THERMO FISHER SCIENTIFIC INC     COM              88355610    412    7154 SH     SHARED   14       5600            1554
D THERMO FISHER SCIENTIFIC INC     COM              88355610   5594   97000 SH     SHARED   15      97000
D THERMO FISHER SCIENTIFIC INC     COM              88355610   8401  145660 SH     SHARED   16     145660
D THERMO FISHER SCIENTIFIC INC     COM              88355610   4931   85500 SH     SHARED   19              85500
D THERMO FISHER SCIENTIFIC INC     COM              88355610   1979   34322 SH     SHARED   20      28205            6117
D THERMO FISHER SCIENTIFIC INC     COM              88355610    120    2090 SH     SHR/OTHR 20              2090
D THERMO FISHER SCIENTIFIC INC     COM              88355610     31     550 SH     SHARED   21        550
D THERMO FISHER SCIENTIFIC INC     COM              88355610    791   13719 SH     SHARED   22      11600            2119
D THERMO FISHER SCIENTIFIC INC     COM              88355610     37     650 SH     SHR/OTHR 22               650
D THERMO FISHER SCIENTIFIC INC     COM              88355610   2189   37963 SH     SHARED   23      22293           15670
D THERMO FISHER SCIENTIFIC INC     COM              88355610   1170   20289 SH     SHR/OTHR 23              20289
D THERMO FISHER SCIENTIFIC INC     COM              88355610     69    1200 SH     SHARED   24       1200
D THERMOGENESIS CORP               COM NEW          88362320      2    1432 SH     SHARED            1432
D THESTREET COM                    COM              88368Q10    424   26665 SH     SHARED           26665
D THESTREET COM                    COM              88368Q10      4     256 SH     SHARED   02        256
D THINK PARTNERSHIP INC            COM              88409N10    192  126757 SH     SHARED          126757
D THINKENGINE NETWORKS INC         COM              88409U10      0     144 SH     SHARED             144
D THIRD WAVE TECHNOLOGIES INC      COM              88428W10    258   26819 SH     SHARED           26819
D THIRD WAVE TECHNOLOGIES INC      COM              88428W10     49    5100 SH     SHARED   02       5100
D THOMAS & BETTS CORP              COM              88431510    865   17650 SH     SHARED           17650
D THOMAS & BETTS CORP              COM              88431510   1493   30445 SH     SHARED           30445
```

```
D THOMAS & BETTS CORP          COM                88431510     3959    80741 SH     SHARED            60400       20341
D THOMAS & BETTS CORP          COM                88431510      109     2240 SH     SHR/OTHR   01      60400
D THOMAS & BETTS CORP          COM                88431510      623    12715 SH     SHARED     02      12715
D THOMAS & BETTS CORP          COM                88431510     8396   171214 SH     SHARED     10     171214
D THOMAS & BETTS CORP          COM                88431510      494    10085 SH     SHARED     20       8795        1290
D THOMAS & BETTS CORP          COM                88431510     1839    37500 SH     SHARED     23      19500       18000
D THOMAS GROUP INC             COM                88440210       41     5624 SH     SHARED              5624
D THOMAS GROUP INC             COM                88440210        0       14 SH     SHARED     02        14
D THOMAS PPTYS GROUP INC       COM                88445310        0       34 SH     SHARED                34
D THOMAS PPTYS GROUP INC       COM                88445310     4581   425000 SH     SHARED     10    425000
D THOMAS WEISEL PARTNERS GRP I COM                88448110       77     5655 SH     SHARED              5655
D THOMAS WEISEL PARTNERS GRP I COM                88448110      521    38000 SH     SHR/OTHR   01               38000
D THOMAS WEISEL PARTNERS GRP I COM                88448110       93     6800 SH     SHARED     10      6800
D THOMPSON CREEK METALS CO INC COM                88476810       34     2000 SH     SHARED              2000
D THOMPSON CREEK METALS CO INC COM                88476810        0        1 SH     SHARED     04         1
D THOMSON CORP                 COM                88490310       69     1717 SH     SHARED              1717
D THOMSON CORP                 COM                88490310     7386   181266 SH     SHARED            181266
D THOMSON CORP                 COM                88490310      158     3897 SH     SHARED     01      3897
D THOMSON CORP                 COM                88490310        8      200 SH     SHARED     05       200
D THOMSON CORP                 COM                88490310       52     1300 SH     SHARED     06               1300
D THOMSON CORP                 COM                88490310      819    20100 SH     SHARED     10     20100
D THOMSON CORP                 COM                88490310      153     3769 SH     SHARED     14      3769
D THOMSON                      SPONSORED ADR      88511810       50     3615 SH     SHARED              3615
D THOR INDS INC                COM                88516010      158     4182 SH     SHARED              4182
D THOR INDS INC                COM                88516010      456    12000 SH     SHARED     01       300       11700
D THOR INDS INC                COM                88516010      206     5440 SH     SHARED     02      5440
D THOR INDS INC                COM                88516010       79     2100 SH     SHARED     10      2100
D THOR INDS INC                COM                88516010       38     1005 SH     SHARED     21      1005
D THORATEC CORP                NOTE  1.379% 5/1   885175AB     1332  2000000 PRN    SHARED           2000000
D THORATEC CORP                COM NEW            88517530       52     2875 SH     SHARED              2875
D THORATEC CORP                COM NEW            88517530     7914   435085 SH     SHARED     10    435085
D THORNBURG MTG INC            COM                88521810     1620   175353 SH     SHARED            175353
D THORNBURG MTG INC            COM                88521810      150    16300 SH     SHARED     01     16300
D THORNBURG MTG INC            COM                88521810       78     8500 SH     SHARED     10      8500
D THORNBURG MTG INC            PFD CONV SER F     88521870    32212  1342200 SH     SHARED           1342200
D 3COM CORP                    COM                88553510     4167   921367 SH     SHARED            915967        6000
D 3COM CORP                    COM                88553510      568   125750 SH     SHARED     01       450      125300
D 3COM CORP                    COM                88553510       84    18788 SH     SHARED     02     18788
D 3COM CORP                    COM                88553510      579   128200 SH     SHARED     10    128200
D 3-D SYS CORP DEL             COM NEW            88554D20        1       67 SH     SHARED                67
D 3SBIO INC                    SPONSORED ADR      88575Y10       86     5794 SH     SHARED              5794
D 3M CO                        COM                88579Y10      426     5060 SH     SHARED                         5060
D 3M CO                        COM                88579Y10   153678  1822566 SH     SHARED           1819166        3400
D 3M CO                        COM                88579Y10    12793   151726 SH     SHARED     01    101246       50480
D 3M CO                        COM                88579Y10     1914    22700 SH     SHR/OTHR   01               22700
D 3M CO                        COM                88579Y10     1489    17661 SH     SHARED     02     17661
D 3M CO                        COM                88579Y10       86     1020 SH     SHARED     03                1020
D 3M CO                        COM                88579Y10    42228   500810 SH     SHARED     04    500810
D 3M CO                        COM                88579Y10       22      270 SH     SHARED     05       270
D 3M CO                        COM                88579Y10      603     7160 SH     SHARED     06                7160
D 3M CO                        COM                88579Y10   331088  3926576 SH     SHARED     10   3926176         400
D 3M CO                        COM                88579Y10       33      400 SH     SHR/OTHR   10                 400
D 3M CO                        COM                88579Y10      980    11627 SH     SHARED     14     11627
D 3M CO                        COM                88579Y10     4091    48521 SH     SHARED     20     15005       33516
D 3M CO                        COM                88579Y10     3688    43748 SH     SHR/OTHR   20                43748
D 3M CO                        COM                88579Y10      937    11122 SH     SHARED     21      5947        5175
D 3M CO                        COM                88579Y10      252     3000 SH     SHARED     22      3000
D 3M CO                        COM                88579Y10      113     1350 SH     SHR/OTHR   22                1350
D 3M CO                        COM                88579Y10    10281  1121935 SH     SHARED     23    120935        1000
D 3M CO                        COM                88579Y10     9646   114400 SH     SHR/OTHR   23               114400
D THRESHOLD PHARMACEUTICAL INC COM                88580710       47    89056 SH     SHARED             89056
D TIBCO SOFTWARE INC           COM                88632Q10       15     1900 SH     SHARED              1900
D TIBCO SOFTWARE INC           COM                88632Q10     2517   311927 SH     SHARED            311927
D TIBCO SOFTWARE INC           COM                88632Q10       59     7337 SH     SHARED     02      7337
D TIBCO SOFTWARE INC           COM                88632Q10      403    50000 SH     SHARED     04     50000
D TIBCO SOFTWARE INC           COM                88632Q10      526    65300 SH     SHARED     10     65300
D TIDELANDS BANCSHARES INC     COM                88637410        1      111 SH     SHARED               111
D TIDEWATER INC                COM                88642310     5472    99745 SH     SHARED             99745
D TIDEWATER INC                COM                88642310     1733    31600 SH     SHARED     01     14800       16800
D TIDEWATER INC                COM                88642310      142     2598 SH     SHARED     02      2598
D TIDEWATER INC                COM                88642310     8694   158490 SH     SHARED     10    158490
D TIDEWATER INC                COM                88642310        5      105 SH     SHARED     21                 105
D TIER TECHNOLOGIES INC        CL B              88650Q10        4      484 SH     SHARED               484
D TIER TECHNOLOGIES INC        CL B              88650Q10        9     1125 SH     SHARED              1125
D TIERONE CORP                 COM                88650R10      174     7900 SH     SHARED     02      7900
D TIFFANY & CO NEW             COM                88654710    13403   291188 SH     SHARED            291188
D TIFFANY & CO NEW             COM                88654710      735    15970 SH     SHARED     01     15745         225
D TIFFANY & CO NEW             COM                88654710     1097    23845 SH     SHARED     02     23845
D TIFFANY & CO NEW             COM                88654710        5      130 SH     SHARED     05       130
D TIFFANY & CO NEW             COM                88654710       51     1120 SH     SHARED     06                1120
D TIFFANY & CO NEW             COM                88654710    56237  1221761 SH     SHARED     10   1191661       30100
D TIFFANY & CO NEW             COM                88654710     1012    22000 SH     SHARED     20      1780       20220
D TIFFANY & CO NEW             COM                88654710       18      400 SH     SHR/OTHR   20                 400
D TIFFANY & CO NEW             COM                88654710      846    18400 SH     SHARED     23      5900       12500
D TIFFANY & CO NEW             COM                88654710      460    10000 SH     SHR/OTHR   23               10000
D TIFFANY & CO NEW             COM                88654710       46     1000 SH     SHARED     24      1000
D TIM HORTONS INC              COM                88706M10     5804   157170 SH     SHARED            157170
D TIM HORTONS INC              COM                88706M10     5055   136898 SH     SHARED     01    100838       36060
D TIM HORTONS INC              COM                88706M10      802    21720 SH     SHR/OTHR   01               21720
D TIM HORTONS INC              COM                88706M10      231     6266 SH     SHARED     02      6266
D TIM HORTONS INC              COM                88706M10       42     1164 SH     SHARED     06                1164
D TIM HORTONS INC              COM                88706M10     2709    73363 SH     SHARED     10     73363
D TIM HORTONS INC              COM                88706M10       34      930 SH     SHARED     20       860          70
D TIM HORTONS INC              COM                88706M10        2       75 SH     SHR/OTHR   20                  75
D TIM HORTONS INC              COM                88706M10        7      200 SH     SHARED     21       200
D TIM HORTONS INC              COM                88706M10      170     4628 SH     SHARED     22      4143         485
D TIM HORTONS INC              COM                88706M10       36     1000 SH     SHR/OTHR   22                1000
D TIM HORTONS INC              COM                88706M10      664    17992 SH     SHARED     23     14892        3100
D TIM HORTONS INC              COM                88706M10      113     3085 SH     SHR/OTHR   23                3085
D TIM PARTICIPACOES S A        SPONS ADR PFD      88706010      262     7500 SH     SHARED              7500
D TIM PARTICIPACOES S A        SPONS ADR PFD      88706010       50     1432 SH     SHARED              1432
D TIM PARTICIPACOES S A        SPONS ADR PFD      88706010     3145    90000 SH     SHARED     04     90000
D TIM PARTICIPACOES S A        SPONS ADR PFD      88706010    13913   398100 SH     SHARED     10    398100
D TIMBERLAND BANCORP INC       COM                88709810       12     1061 SH     SHARED              1061
D TIMBERLAND CO                CL A               88710010       85     4711 SH     SHARED              4711
D TIMBERLAND CO                CL A               88710010      685    37897 SH     SHARED     10     22097       15800
D TIMBERLAND CO                CL A               88710010       42     2350 SH     SHARED     02      2350
D TIMBERLAND CO                CL A               88710010      197    10900 SH     SHARED     10     10900
D TIME WARNER INC              COM                88731710        3      225 SH     SHARED               225
D TIME WARNER INC              COM                88731710   192073 11633750 SH     SHARED          11628885        4865
D TIME WARNER INC              COM                88731710     8916   540086 SH     SHARED     01    416769      123317
D TIME WARNER INC              COM                88731710     3033   183746 SH     SHR/OTHR   01              183746
D TIME WARNER INC              COM                88731710     2386   144565 SH     SHARED     02    144565
D TIME WARNER INC              COM                88731710      637    38600 SH     SHARED     04               38600
```

| | Name | Class | CUSIP | | Value | | Type | Code | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | TIME WARNER INC | COM | 88731710 | 162640 | 9851000 SH | SHARED | 04 | 9851000 | |
| D | TIME WARNER INC | COM | 88731710 | 26 | 1610 SH | SHARED | 05 | 1610 | |
| D | TIME WARNER INC | COM | 88731710 | 4520 | 273780 SH | SHARED | 06 | | 273780 |
| D | TIME WARNER INC | COM | 88731710 | 43385 | 2627839 SH | SHARED | 10 | 2557839 | 70000 |
| D | TIME WARNER INC | COM | 88731710 | 2070 | 125436 SH | SHARED | 14 | 78000 | 47436 |
| D | TIME WARNER INC | COM | 88731710 | 4080 | 247180 SH | SHARED | 15 | | 247180 |
| D | TIME WARNER INC | COM | 88731710 | 188 | 11400 SH | SHARED | 19 | | 11400 |
| D | TIME WARNER INC | COM | 88731710 | 1002 | 60712 SH | SHARED | 20 | | 56012 |
| D | TIME WARNER INC | COM | 88731710 | 6831 | 413793 SH | SHR/OTHR | 20 | 4700 | 413793 |
| D | TIME WARNER INC | COM | 88731710 | 36 | 2240 SH | SHARED | 21 | 1600 | 640 |
| D | TIME WARNER INC | COM | 88731710 | 41 | 2500 SH | SHR/OTHR | 21 | | 2500 |
| D | TIME WARNER INC | COM | 88731710 | 437 | 26529 SH | SHARED | 22 | 24129 | 2400 |
| D | TIME WARNER INC | COM | 88731710 | 757 | 45875 SH | SHARED | 22 | | 45875 |
| D | TIME WARNER INC | COM | 88731710 | 2011 | 121859 SH | SHARED | 23 | 94469 | 27390 |
| D | TIME WARNER INC | COM | 88731710 | 3039 | 184100 SH | SHR/OTHR | 23 | | 184100 |
| D | TIME WARNER TELECOM INC | DBCV 2.375% 4/0 | 887319AC | 10176 | 8000000 PRN | SHARED | | 8000000 | |
| D | TIME WARNER TELECOM INC | COM | 88731910 | 2199 | 108249 SH | SHARED | | 108249 | |
| D | TIME WARNER TELECOM INC | CL A | 88731910 | 260 | 12840 SH | SHARED | 01 | 12840 | |
| D | TIME WARNER TELECOM INC | CL A | 88731910 | 1162 | 57300 SH | SHARED | 10 | 57300 | |
| D | TIME WARNER CABLE INC | CL A | 88732210 | 2427 | 87960 SH | SHARED | | 87960 | |
| D | TIME WARNER CABLE INC | CL A | 88732210 | 11293 | 409202 SH | SHARED | 02 | 409202 | |
| D | TIME WARNER CABLE INC | CL A | 88732210 | 552 | 20000 SH | SHARED | 04 | 20000 | |
| D | TIME WARNER CABLE INC | CL A | 88732210 | 27 | 1000 SH | SHARED | 06 | | 1000 |
| D | TIME WARNER CABLE INC | CL A | 88732210 | 151 | 5500 SH | SHARED | 10 | 5500 | |
| D | TIME WARNER CABLE INC | CL A | 88732210 | 73 | 2670 SH | SHARED | 21 | | 2670 |
| D | TIMKEN CO | COM | 88738910 | 315 | 9618 SH | SHARED | | 9618 | |
| D | TIMKEN CO | COM | 88738910 | 1070 | 32600 SH | SHARED | 01 | 32600 | |
| D | TIMKEN CO | COM | 88738910 | 149 | 4538 SH | SHARED | | 4538 | |
| D | TIMKEN CO | COM | 88738910 | 151 | 4600 SH | SHARED | 10 | 4600 | |
| D | TIMKEN CO | COM | 88738910 | 43 | 1323 SH | SHARED | 20 | 1323 | |
| D | TIMKEN CO | COM | 88738910 | 11 | 365 SH | SHARED | 21 | | 365 |
| D | TITAN INTL INC ILL | COM | 88830M10 | 502 | 16059 SH | SHARED | | 16059 | |
| D | TITAN INTL INC ILL | COM | 88830M10 | 31 | 1000 SH | SHARED | 10 | 1000 | |
| D | TITAN MACHY INC | COM | 88830R10 | 2 | 156 SH | SHARED | | 156 | |
| D | TITAN PHARMACEUTICALS INC DE | COM | 88831410 | 1 | 1159 SH | SHARED | | 1159 | |
| D | TITANIUM METALS CORP | COM NEW | 88833920 | 6332 | 239428 SH | SHARED | | 239428 | |
| D | TITANIUM METALS CORP | COM NEW | 88833920 | 260 | 9850 SH | SHARED | 01 | 9850 | |
| D | TITANIUM METALS CORP | COM NEW | 88833920 | 34 | 1303 SH | SHARED | 02 | 1303 | |
| D | TITANIUM METALS CORP | COM NEW | 88833920 | 922 | 34860 SH | SHARED | 10 | 34860 | |
| D | TIVO INC | COM | 88870610 | 14964 | 1794335 SH | SHARED | | 1794335 | |
| D | TIVO INC | COM | 88870610 | 79 | 9500 SH | SHARED | 01 | 9500 | |
| D | TIVO INC | COM | 88870610 | 15 | 1800 SH | SHARED | 02 | 1800 | |
| D | TODD SHIPYARDS CORP DEL | COM | 88903910 | 2 | 134 SH | SHARED | | 134 | |
| D | TOFUTTI BRANDS INC | COM | 88906810 | 0 | 79 SH | SHARED | | 79 | |
| D | TOLL BROTHERS INC | COM | 88947810 | 5487 | 273556 SH | SHARED | | 273556 | |
| D | TOLL BROTHERS INC | COM | 88947810 | 830 | 41400 SH | SHARED | 01 | 41400 | |
| D | TOLL BROTHERS INC | COM | 88947810 | 2093 | 104375 SH | SHARED | 02 | 104375 | |
| D | TOLL BROTHERS INC | COM | 88947810 | 19 | 980 SH | SHARED | 06 | | 980 |
| D | TOLL BROTHERS INC | COM | 88947810 | 237 | 11843 SH | SHARED | 10 | 11843 | |
| D | TOLLGRADE COMMUNICATIONS INC | COM | 88954210 | 1861 | 232125 SH | SHARED | | 232125 | |
| D | TOMKINS PLC | SPONSORED ADR | 89003020 | 19 | 1398 SH | SHARED | | 1398 | |
| D | TOMKINS PLC | SPONSORED ADR | 89003020 | 3 | 237 SH | SHARED | 21 | | 237 |
| D | TOMOTHERAPY INC | COM | 89008810 | 6 | 348 SH | SHARED | | 348 | |
| D | TOMOTHERAPY INC | COM | 89008810 | 164 | 8400 SH | SHARED | 01 | 8400 | |
| D | TOMPKINS FINANCIAL CORPORATI | COM | 89011010 | 9 | 256 SH | SHARED | | 256 | |
| D | TOMPKINS FINANCIAL CORPORATI | COM | 89011010 | 155 | 4010 SH | SHARED | 10 | 4010 | |
| D | TOOTSIE ROLL INDS INC | COM | 89051610 | 96 | 3530 SH | SHARED | | 3530 | |
| D | TOOTSIE ROLL INDS INC | COM | 89051610 | 182 | 6643 SH | SHARED | 01 | 6643 | |
| D | TOOTSIE ROLL INDS INC | COM | 89051610 | 128 | 4675 SH | SHARED | 02 | 4675 | |
| D | TOOTSIE ROLL INDS INC | COM | 89051610 | 207 | 7554 SH | SHARED | 10 | 7554 | |
| D | TOR MINERALS INTL INC | COM | 89087810 | 0 | 141 SH | SHARED | | 141 | |
| D | TORCHMARK CORP | COM | 89102710 | 5634 | 93078 SH | SHARED | | 93078 | |
| D | TORCHMARK CORP | COM | 89102710 | 691 | 11420 SH | SHARED | 01 | 11420 | |
| D | TORCHMARK CORP | COM | 89102710 | 148 | 2455 SH | SHARED | 02 | 2455 | |
| D | TORCHMARK CORP | COM | 89102710 | 55 | 920 SH | SHARED | 06 | | 920 |
| D | TORCHMARK CORP | COM | 89102710 | 11029 | 182220 SH | SHARED | 10 | 182220 | |
| D | TORCHMARK CORP | COM | 89102710 | 294 | 4860 SH | SHARED | 14 | | 4860 |
| D | TOREADOR RES CORP | COM | 89105010 | 0 | 38 SH | SHARED | | 38 | |
| D | TORO CO | COM | 89109210 | 568 | 10443 SH | SHARED | | 10443 | |
| D | TORO CO | COM | 89109210 | 157 | 2900 SH | SHARED | 02 | 2900 | |
| D | TORO CO | COM | 89109210 | 824 | 15151 SH | SHARED | 10 | 7951 | 7200 |
| D | TORONTO DOMINION BK ONT | COM NEW | 89116050 | 19248 | 275182 SH | SHARED | | 275182 | |
| D | TORONTO DOMINION BK ONT | COM NEW | 89116050 | 70908 | 1013706 SH | SHARED | 04 | 1013706 | |
| D | TORONTO DOMINION BK ONT | COM NEW | 89116050 | 6 | 100 SH | SHARED | 05 | 100 | |
| D | TORONTO DOMINION BK ONT | COM NEW | 89116050 | 223 | 3200 SH | SHARED | 06 | | 3200 |
| D | TORONTO DOMINION BK ONT | COM NEW | 89116050 | 156 | 2243 SH | SHARED | 14 | | 2243 |
| D | TORONTO DOMINION BK ONT | COM NEW | 89116050 | 3684 | 52676 SH | SHARED | 16 | 52676 | |
| D | TORONTO DOMINION BK ONT | COM NEW | 89116050 | 69 | 1000 SH | SHARED | 22 | | 1000 |
| D | TORTOISE ENERGY INFRSTRCTR C | COM | 89147L10 | 10824 | 324957 SH | SHARED | 10 | 324957 | |
| D | TORTOISE ENERGY INFRSTRCTR C | COM | 89147L10 | 51 | 1546 SH | SHR/OTHR | 23 | | 1546 |
| D | TORTOISE CAP RES CORP | COM | 89147N30 | 16 | 1317 SH | SHARED | | 1317 | |
| D | TOTAL S A | SPONSORED ADR | 89151E10 | 1139 | 13797 SH | SHARED | | 13797 | |
| D | TOTAL S A | SPONSORED ADR | 89151E10 | 330 | 4000 SH | SHARED | 01 | 300 | 3700 |
| D | TOTAL S A | SPONSORED ADR | 89151E10 | 1036 | 12550 SH | SHR/OTHR | 01 | | 12550 |
| D | TOTAL S A | SPONSORED ADR | 89151E10 | 356 | 4317 SH | SHARED | 20 | 667 | 3650 |
| D | TOTAL S A | SPONSORED ADR | 89151E10 | 518 | 6274 SH | SHR/OTHR | 20 | | 6274 |
| D | TOTAL S A | SPONSORED ADR | 89151E10 | 114 | 1387 SH | SHARED | 21 | 1210 | 177 |
| D | TOTAL S A | SPONSORED ADR | 89151E10 | 363 | 4400 SH | SHARED | 22 | 3600 | 800 |
| D | TOTAL S A | SPONSORED ADR | 89151E10 | 208 | 2520 SH | SHARED | 23 | 2520 | |
| D | TOTAL S A | SPONSORED ADR | 89151E10 | 668 | 8092 SH | SHR/OTHR | 23 | | 8092 |
| D | TOWER GROUP INC | COM | 89177710 | 150 | 4506 SH | SHARED | | 4506 | |
| D | TOWER GROUP INC | COM | 89177710 | 14675 | 439400 SH | SHARED | 10 | 439400 | |
| D | TOWER GROUP INC | COM | 89177710 | 3 | 105 SH | SHARED | 21 | | 105 |
| D | TOTAL SYS SVCS INC | COM | 89190610 | 302 | 10786 SH | SHARED | | 10786 | |
| D | TOTAL SYS SVCS INC | COM | 89190610 | 4 | 175 SH | SHARED | 01 | 175 | |
| D | TOTAL SYS SVCS INC | COM | 89190610 | 204 | 7307 SH | SHARED | 02 | 7307 | |
| D | TOTAL SYS SVCS INC | COM | 89190610 | 358 | 12800 SH | SHARED | 10 | 12800 | |
| D | TRACK DATA CORP | COM NEW | 89191820 | 0 | 95 SH | SHARED | | 95 | |
| D | TOWERSTREAM CORP | COM | 89200010 | 2 | 690 SH | SHARED | | 690 | |
| D | TOWN SPORTS INTL HLDGS INC | COM | 89214A10 | 184 | 19324 SH | SHARED | | 19324 | |
| D | TOWN SPORTS INTL HLDGS INC | COM | 89214A10 | 34 | 3600 SH | SHARED | 01 | 3600 | |
| D | TOWN SPORTS INTL HLDGS INC | COM | 89214A10 | 781 | 81700 SH | SHARED | 10 | 81700 | |
| D | TONNEBANK PORTSMOUTH VA | COM | 89214P10 | 10 | 625 SH | SHARED | | 625 | |
| D | TOYOTA MOTOR CORP | SP ADR REP2COM | 89233130 | 3336 | 31424 SH | SHARED | | 31424 | |
| D | TOYOTA MOTOR CORP | SP ADR REP2COM | 89233130 | 21 | 200 SH | SHARED | 01 | | 200 |
| D | TOYOTA MOTOR CORP | SP ADR REP2COM | 89233130 | 10 | 100 SH | SHARED | 20 | 100 | |
| D | TOYOTA MOTOR CORP | SP ADR REP2COM | 89233130 | 241 | 2274 SH | SHARED | 21 | 560 | 1714 |
| D | TOYOTA MOTOR CORP | SP ADR REP2COM | 89233130 | 159 | 1500 SH | SHARED | 23 | 500 | 1000 |
| D | TOYOTA MOTOR CORP | SP ADR REP2COM | 89233130 | 63 | 600 SH | SHR/OTHR | 23 | 500 | 600 |
| D | TORREYPINES THERAPEUTICS INC | COM | 89235E10 | 1 | 834 SH | SHARED | | 834 | |
| D | TRACTOR SUPPLY CO | COM | 89235610 | 407 | 11348 SH | SHARED | | 11348 | |
| D | TRACTOR SUPPLY CO | COM | 89235610 | 17 | 500 SH | SHARED | 02 | 500 | |
| D | TRACTOR SUPPLY CO | COM | 89235610 | 187 | 5228 SH | SHARED | 10 | 5228 | |
| D | TRADESTATION GROUP INC | COM | 89267P10 | 631 | 44459 SH | SHARED | | 44459 | |

```
D TRADESTATION GROUP INC       COM              89267P10      6     428 SH    SHARED      02      428
D TRAFFIX INC                  COM              89272110      2     339 SH    SHARED              339
D TRAILER BRIDGE               COM              89278210      1      90 SH    SHARED               90
D TRANE INC                    COM              89289310  53297 1141022 SH    SHARED          1141022
D TRANE INC                    COM              89289310   1422   30453 SH    SHARED      01    27753           2700
D TRANE INC                    COM              89289310    130    2800 SH    SHR/OTHR    01                   2800
D TRANE INC                    COM              89289310   1810   38750 SH    SHARED      02    38750
D TRANE INC                    COM              89289310      4      90 SH    SHARED      05       90
D TRANE INC                    COM              89289310     93    2000 SH    SHARED      06                   2000
D TRANE INC                    COM              89289310   4895  104816 SH    SHARED      10    98516           6300
D TRANE INC                    COM              89289310    240    5148 SH    SHARED      14     5148
D TRANE INC                    COM              89289310    274    5870 SH    SHARED      20                   5870
D TRANE INC                    COM              89289310    128    2750 SH    SHARED      23      750           2000
D TRANE INC                    COM              89289310     32     700 SH    SHR/OTHR    23                    700
D TRANSACT TECHNOLOGIES INC    COM              89291810      1     248 SH    SHARED              248
D TRANS-INDIA ACQUISITION CORP COM              89323710   6753  911468 SH    SHARED           911468
D TRANS-INDIA ACQUISITION CORP UNIT 02/08/2012  89323720    200   25000 SH    SHARED            25000
D TRANS LUX CORP               COM              89324710      0      53 SH    SHARED               53
D TRANS WORLD ENTMT CORP       COM              89336Q10      8    1664 SH    SHARED             1664
D TRANSALTA CORP               COM              89346D10 101849 3042106 SH    SHARED          3042106
D TRANSALTA CORP               COM              89346D10    191    5729 SH    SHARED      01     5729
D TRANSALTA CORP               COM              89346D10     20     600 SH    SHARED      06                    600
D TRANSALTA CORP               COM              89346D10   1416   42300 SH    SHARED      10    42300
D TRANSATLANTIC HLDGS INC      COM              89352110     52     724 SH    SHARED              724
D TRANSATLANTIC HLDGS INC      COM              89352110    152    2100 SH    SHARED      01     2100
D TRANSATLANTIC HLDGS INC      COM              89352110    417    5750 SH    SHARED      02     5750
D TRANSATLANTIC HLDGS INC      COM              89352110   4002   55073 SH    SHARED      10    55073
D TRANSATLANTIC HLDGS INC      COM              89352110    230    3174 SH    SHR/OTHR    10                   3174
D TRANSATLANTIC HLDGS INC      COM              89352110     61     843 SH    SHARED      20      843
D TRANSATLANTIC HLDGS INC      COM              89352110    440    6056 SH    SHR/OTHR    20                   6056
D TRANSCAT INC                 COM              89352910      1     168 SH    SHARED              168
D TRANSCANADA CORP             COM              89353D10   2660   65000 SH    SHARED            65000
D TRANSCANADA CORP             COM              89353D10   6856  167517 SH    SHARED           167517
D TRANSCANADA CORP             COM              89353D10     94    2317 SH    SHARED      01     2317
D TRANSCANADA CORP             COM              89353D10     14     354 SH    SHARED      05      354
D TRANSCANADA CORP             COM              89353D10     96    2350 SH    SHARED      06                   2350
D TRANSCANADA CORP             COM              89353D10    456   11144 SH    SHARED      10    11144
D TRANSCANADA CORP             COM              89353D10    387    9462 SH    SHARED      14     9462
D TRANSCANADA CORP             COM              89353D10     53    1310 SH    SHARED      21     1310
D TRANSCANADA CORP             COM              89353D10     13     333 SH    SHR/OTHR    23                    333
D TRANSCONTINENTAL RLTY INVS   COM NEW          89361720      0      37 SH    SHARED               37
D TRANSDIGM GROUP INC          COM              89364110    350    7762 SH    SHARED             7762
D TRANSFORMA ACQUISITION GROUP COM              89366E10   3054  401894 SH    SHARED           401894
D TRANSMERIDIAN EXPL INC       COM              89376N10     44   22493 SH    SHARED            22493
D TRANSMERIDIAN EXPL INC       COM              89376N10     25   13100 SH    SHARED      02    13100
D TRANSMERIDIAN EXPL INC       COM              89376N10    141   72045 SH    SHARED      10    72045
D TRANSMETA CORP DEL           COM              89376R20      4     313 SH    SHARED              313
D TRANSMONTAIGNE PARTNERS L P  COM UNIT L P     89376V10   6275  221035 SH    SHARED           221035
D TRANSOCEAN SEDCO FOREX INC   NOTE 1.625%12/1  89383OAU  83932 77500000 PRN  SHARED          7500000
D TRANSOCEAN SEDCO FOREX INC   NOTE 1.500%12/1  89383OAV  95996 69850000 PRN  SHARED          9850000
D TRANSOCEAN SEDCO FOREX INC   NOTE 1.500%12/1  89383OAV  11440 10515000 PRN  SHARED      02   0515000
D TRANSOCEAN SEDCO FOREX INC   NOTE 1.500%12/1  89383OAW 158047 45532000 PRN  SHARED          5532000
D TRANSOCEAN SEDCO FOREX INC   NOTE 1.500%12/1  89380AW   2117  1950000 PRN  SHARED      02   1950000
D TRANSPORTADORA DE GAS SUR    SPON ADR B       89387020      7    1215 SH    SHARED             1215
D TRANSCEND SERVICES INC       COM NEW          89393920      2     165 SH    SHARED              165
D TRANSWITCH CORP              COM              89406510    116  132901 SH    SHARED           130901           2000
D TRAVELERS COMPANIES INC      COM              89417E10     19     370 SH    SHARED              370
D TRAVELERS COMPANIES INC      COM              89417E10 112567 2092333 SH    SHARED          2054033          38300
D TRAVELERS COMPANIES INC      COM              89417E10   4965   92304 SH    SHARED      01    88162            4142
D TRAVELERS COMPANIES INC      COM              89417E10   6031  112104 SH    SHARED      02   112104
D TRAVELERS COMPANIES INC      COM              89417E10     83    1549 SH    SHARED      04                    1549
D TRAVELERS COMPANIES INC      COM              89417E10     16     310 SH    SHARED      05      310
D TRAVELERS COMPANIES INC      COM              89417E10   1225   22772 SH    SHARED      06    22772
D TRAVELERS COMPANIES INC      COM              89417E10  95168 1768931 SH    SHARED      10  1665131          103800
D TRAVELERS COMPANIES INC      COM              89417E10    803   14943 SH    SHARED      14    14943
D TRAVELERS COMPANIES INC      COM              89417E10   5728  106470 SH    SHARED      16   106470
D TRAVELERS COMPANIES INC      COM              89417E10      1      23 SH    SHARED      19                      23
D TRAVELERS COMPANIES INC      COM              89417E10      2      39 SH    SHARED      20                      39
D TRAVELERS COMPANIES INC      COM              89417E10     64    1200 SH    SHR/OTHR    20                    1200
D TRAVELERS COMPANIES INC      COM              89417E10     18     340 SH    SHARED      21      340
D TRAVELERS COMPANIES INC      COM              89417E10     32     600 SH    SHARED      22      600
D TRAVELERS COMPANIES INC      COM              89417E10      2      41 SH    SHARED      23       41
D TRAVELERS COMPANIES INC      COM              89417E10     78    1450 SH    SHR/OTHR    23                    1450
D TRAVELCENTERS OF AMERICA LLC COM              89417410     15    1222 SH    SHARED             1222
D TRAVELZOO INC                COM              89421Q10      0      13 SH    SHARED               13
D TREDEGAR CORP                COM              89465010    210   13072 SH    SHARED            13072
D TREDEGAR CORP                COM              89465010     36    2300 SH    SHARED      01     2300
D TREDEGAR CORP                COM              89465010    117    7325 SH    SHARED      02     7325
D TREDEGAR CORP                COM              89465010   2286  142200 SH    SHARED      10   142200
D TREEHOUSE FOODS INC          COM              89469A10  23399 1017800 SH    SHARED          1017800
D TREEHOUSE FOODS INC          COM              89469A10    101    4400 SH    SHARED      02     4400
D TREEHOUSE FOODS INC          COM              89469A10   1039   45195 SH    SHARED      10    45195
D TREMISIS ENERGY ACQ CORP II  UNIT 99/99/9999  89472N20    166   20998 SH    SHARED            20998
D TREX INC                     COM              89531P10    497   58462 SH    SHARED            58462
D TREX INC                     COM              89531P10     35    4148 SH    SHARED      02     4148
D TRI CONTL CORP               COM              89543610  22451 1074220 SH    SHARED          1074220
D TRI CONTL CORP               COM              89543610     20    1004 SH    SHARED      01     1004
D TRI CONTL CORP               COM              89543610    124    5946 SH    SHR/OTHR    23                    5946
D TRI S SEC CORP               COM              89557810      0      86 SH    SHARED               86
D TRI VY CORP                  COM              89573510      4     592 SH    SHARED              592
D TRIDENT MICROSYSTEMS INC     COM              89591910    575   87732 SH    SHARED            87732
D TRIDENT MICROSYSTEMS INC     COM              89591910      5     850 SH    SHARED      01                     850
D TRIDENT MICROSYSTEMS INC     COM              89591910     14    2138 SH    SHARED      21     2138
D TRIAD GTY INC                COM              89592510   2677  273239 SH    SHARED           273239
D TRIAD GTY INC                COM              89592510    218   22300 SH    SHARED      02    22300
D TRIAD GTY INC                COM              89592510     38    3900 SH    SHARED      10     3900
D TRIAD GTY INC                COM              89592510      7     723 SH    SHARED      21      723
D TRIARC COS INC               CL B SER 1       89592730      0      76 SH    SHARED               76
D TRIARC COS INC               CL B SER 1       89592730     23    2695 SH    SHARED      01     2695
D TRIARC COS INC               CL B SER 1       89592730     27    3100 SH    SHARED      10     3100
D TRIARC COS INC               CL B SER 1       89592730     25    2903 SH    SHARED      23                    2903
D TRIBUNE CO NEW               SB DB EXCH2%29   89592830    229  458629 PRN  SHARED           458629
D TRICO BANCSHARES             COM              89609510      0      20 SH    SHARED               20
D TRICO MARINE SERVICES INC    NOTE 3.000% 1/1  89610A6Q   4192 3875000 PRN  SHARED      02   3875000
D TRICO MARINE SERVICES INC    COM NEW          89610620    429   11592 SH    SHARED            11592
D TRICO MARINE SERVICES INC    COM NEW          89610620    992   26800 SH    SHARED      01    25000            1800
D TRICO MARINE SERVICES INC    COM NEW          89610620   1184   32000 SH    SHR/OTHR    01                   32000
D TRICO MARINE SERVICES INC    COM NEW          89610620     92    2500 SH    SHARED      10     2500
D TRIMAS CORP                  COM NEW          89621520     76    7245 SH    SHARED             7245
D TRIMAS CORP                  COM NEW          89621520     18    1700 SH    SHARED      01     1700
D TRIMAS CORP                  COM NEW          89621520    227   21500 SH    SHARED      10    21500
D TRIMBLE NAVIGATION LTD       COM              89623910    848   28044 SH    SHARED            28044
D TRIMBLE NAVIGATION LTD       COM              89623910     99    3289 SH    SHARED      02     3289
D TRIMBLE NAVIGATION LTD       COM              89623910   1663   55000 SH    SHARED      04    55000
```

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D | TRIMBLE NAVIGATION LTD | COM | 89623910 | 749 | 24780 SH | SHARED | | 10 | 24780 | |
| D | TRIMERIS INC | COM | 89626310 | 880 | 126152 SH | SHARED | | | 126152 | |
| D | TRIMERIS INC | COM | 89626310 | 0 | 47 SH | SHARED | | 02 | 47 | |
| D | TRINA SOLAR LIMITED | SPON ADR | 89628E10 | 5128 | 95330 SH | SHARED | | | 61670 | 33660 |
| D | TRINITY BIOTECH PLC | SPON ADR NEW | 89643830 | 1 | 252 SH | SHARED | | | 252 | |
| D | TRINITY INDS INC | COM | 89652210 | 2630 | 94760 SH | SHARED | | | 94760 | |
| D | TRINITY INDS INC | COM | 89652210 | 857 | 30900 SH | SHARED | | 01 | 5700 | 25200 |
| D | TRINITY INDS INC | COM | 89652210 | 107 | 3860 SH | SHARED | | 02 | 3860 | |
| D | TRINITY INDS INC | COM | 89652210 | 114 | 4140 SH | SHARED | | 10 | 4140 | |
| D | TRINITY INDS INC | COM | 89652210 | 2 | 90 SH | SHARED | | 21 | | 90 |
| D | TRIO TECH INTL | COM | 89671220 | 0 | 57 SH | SHARED | | | 57 | |
| D | TRIQUINT SEMICONDUCTOR INC | COM | 89674K10 | 16214 | 2445620 SH | SHARED | | | 2445620 | |
| D | TRIQUINT SEMICONDUCTOR INC | COM | 89674K10 | 320 | 48375 SH | SHARED | | 01 | | 48375 |
| D | TRIQUINT SEMICONDUCTOR INC | COM | 89674K10 | 44 | 6699 SH | SHARED | | 02 | 6699 | |
| D | TRIQUINT SEMICONDUCTOR INC | COM | 89674K10 | 1030 | 155500 SH | SHARED | | 10 | 155500 | |
| D | TRIPLE-S MGMT CORP | CL B | 89674910 | 7 | 365 SH | SHARED | | | 365 | |
| D | TRIPLE CROWN MEDIA INC | COM | 89675K10 | 9 | 1922 SH | SHARED | | | 1922 | |
| D | TRIPLECROWN ACQUISITION CORP | COM | 89677G10 | 11904 | 1302452 SH | SHARED | | | 1302452 | |
| D | TRIPLECROWN ACQUISITION CORP | *W EXP 10/22/201 | 89677G11 | 601 | 589250 SH | SHARED | | | 589250 | |
| D | TRIPLECROWN ACQUISITION CORP | UNIT 07/12/2012 | 89677G20 | 297 | 29480 SH | SHARED | | | 29480 | |
| D | TRIUMPH GROUP INC NEW | NOTE 2.625%10/0 | 896818AB | 11417 | 7000000 PRN | SHARED | | | 7000000 | |
| D | TRIUMPH GROUP INC NEW | NOTE 2.625%10/0 | 896818AB | 815 | 500000 PRN | SHARED | | 02 | 500000 | |
| D | TRIUMPH GROUP INC NEW | COM | 89681810 | 948 | 11515 SH | SHARED | | | 11515 | |
| D | TRIUMPH GROUP INC NEW | COM | 89681810 | 69 | 850 SH | SHARED | | 01 | 850 | |
| D | TRIUMPH GROUP INC NEW | COM | 89681810 | 306 | 3725 SH | SHARED | | 02 | 3725 | |
| D | TRIUMPH GROUP INC NEW | COM | 89681810 | 9247 | 112300 SH | SHARED | | 10 | 112300 | |
| D | TRIZETTO GROUP INC | NOTE 2.750%10/0 | 896882AB | 3333 | 3000000 PRN | SHARED | | | 3000000 | |
| D | TRIZETTO GROUP INC | NOTE 1.125% 4/1 | 896882AD | 4047 | 4190000 PRN | SHARED | | 02 | 4190000 | |
| D | TRIZETTO GROUP INC | COM | 89688210 | 8496 | 489155 SH | SHARED | | | 489155 | |
| D | TRIZETTO GROUP INC | COM | 89688210 | 38 | 2200 SH | SHARED | | 01 | 2200 | |
| D | TRIZETTO GROUP INC | COM | 89688210 | 2357 | 135700 SH | SHARED | | 10 | 135700 | |
| D | TRONOX INC | CL A | 89705110 | 30 | 3450 SH | SHARED | | | 3450 | |
| D | TRONOX INC | COM CL B | 89705120 | 26 | 3049 SH | SHARED | | | 3049 | |
| D | TRONOX INC | COM CL B | 89705120 | 2 | 317 SH | SHARED | | 01 | 55 | 262 |
| D | TRONOX INC | COM CL B | 89705120 | 134 | 15558 SH | SHARED | | 10 | 15558 | |
| D | TRUE RELIGION APPAREL INC | COM | 89784N10 | 2722 | 127527 SH | SHARED | | | 127527 | |
| D | TRUE RELIGION APPAREL INC | COM | 89784N10 | 4 | 222 SH | SHARED | | 02 | 222 | |
| D | TRUE RELIGION APPAREL INC | COM | 89784N10 | 58 | 2717 SH | SHARED | | 21 | 2717 | |
| D | TRUMP ENTMT RESORTS INC | COM | 89816T10 | 3 | 927 SH | SHARED | | | 927 | |
| D | TRUMP ENTMT RESORTS INC | COM | 89816T10 | 346 | 80500 SH | SHARED | | 10 | 80500 | |
| D | TRUSTCO BK CORP N Y | COM | 89834910 | 224 | 22600 SH | SHARED | | 10 | 22600 | |
| D | TRUSTMARK CORP | COM | 89840210 | 279 | 11022 SH | SHARED | | | 11022 | |
| D | TRUSTMARK CORP | COM | 89840210 | 34 | 1350 SH | SHARED | | 01 | 1350 | |
| D | TRUSTMARK CORP | COM | 89840210 | 740 | 29200 SH | SHARED | | 10 | 29200 | |
| D | TRX INC | COM | 89845210 | 0 | 231 SH | SHARED | | | 231 | |
| D | TUESDAY MORNING CORP | COM NEW | 89903550 | 0 | 42 SH | SHARED | | | 42 | |
| D | TUESDAY MORNING CORP | COM NEW | 89903550 | 74 | 14600 SH | SHARED | | 10 | 14600 | |
| D | TUFCO TECHNOLOGIES INC | COM | 89904010 | 0 | 51 SH | SHARED | | | 51 | |
| D | TUMBLEWEED COMMUNICATIONS CO | COM | 89969010 | 2 | 1332 SH | SHARED | | | 1332 | |
| D | TUPPERWARE BRANDS CORP | COM | 89989610 | 2494 | 75521 SH | SHARED | | | 75521 | |
| D | TUPPERWARE BRANDS CORP | COM | 89989610 | 712 | 21574 SH | SHARED | | 01 | 3174 | 18400 |
| D | TUPPERWARE BRANDS CORP | COM | 89989610 | 134 | 4068 SH | SHARED | | 02 | 4068 | |
| D | TUPPERWARE BRANDS CORP | COM | 89989610 | 1522 | 46109 SH | SHARED | | 10 | 46109 | |
| D | TURBOCHEF TECHNOLOGIES INC | COM NEW | 90000620 | 0 | 8 SH | SHARED | | | 8 | |
| D | TURKCELL ILETISIM HIZMETLERI | SPON ADR NEW | 90011120 | 5004 | 181509 SH | SHARED | | | 181509 | |
| D | TURKISH INVT FD INC | COM | 90014510 | 2 | 127 SH | SHARED | | | 127 | |
| D | TUTOGEN MEDICAL INC | COM | 90110710 | 3 | 376 SH | SHARED | | | 376 | |
| D | TWEEN BRANDS INC | COM | 90116610 | 16 | 624 SH | SHARED | | | 624 | |
| D | TWEEN BRANDS INC | COM | 90116610 | 18 | 697 SH | SHARED | | 01 | 697 | |
| D | 21ST CENTY HLDG CO | COM | 90136Q10 | 2 | 180 SH | SHARED | | | 180 | |
| D | TWIN DISC INC | COM | 90147610 | 135 | 1919 SH | SHARED | | | 1919 | |
| D | II VI INC | COM | 90210410 | 243 | 7959 SH | SHARED | | | 7959 | |
| D | II VI INC | COM | 90210410 | 54 | 1775 SH | SHARED | | 01 | 1775 | |
| D | II VI INC | COM | 90210410 | 589 | 19300 SH | SHARED | | 10 | 19300 | |
| D | 2020 CHINACAP ACQUIRCO INC | COM | 90212010 | 156 | 21800 SH | SHARED | | | 21800 | |
| D | 2020 CHINACAP ACQUIRCO INC | UNIT 99/99/9999 | 90212G20 | 192 | 23745 SH | SHARED | | | 23745 | |
| D | TYLER TECHNOLOGIES INC | COM | 90225210 | 66 | 5175 SH | SHARED | | | 5175 | |
| D | TYLER TECHNOLOGIES INC | COM | 90225210 | 32 | 2520 SH | SHARED | | 21 | | 2520 |
| D | TYSON FOODS INC | CL A | 90249410 | 21941 | 1431302 SH | SHARED | | | 1431302 | |
| D | TYSON FOODS INC | CL A | 90249410 | 398 | 26002 SH | SHARED | | 01 | 26002 | |
| D | TYSON FOODS INC | CL A | 90249410 | 3033 | 197850 SH | SHARED | | 02 | 197850 | |
| D | TYSON FOODS INC | CL A | 90249410 | 18 | 1180 SH | SHARED | | 06 | | 1180 |
| D | TYSON FOODS INC | CL A | 90249410 | 2163 | 141100 SH | SHARED | | 10 | 141100 | |
| D | UAL CORP | COM NEW | 90254980 | 8743 | 245201 SH | SHARED | | | 245201 | |
| D | UAL CORP | COM NEW | 90254980 | 294 | 8270 SH | SHARED | | 01 | 8270 | |
| D | UAL CORP | COM NEW | 90254980 | 10463 | 293426 SH | SHARED | | 02 | 293426 | |
| D | UAL CORP | COM NEW | 90254980 | 338 | 9500 SH | SHARED | | 10 | 9500 | |
| D | UCBH HOLDINGS INC | COM | 90262T30 | 312 | 22100 SH | SHARED | | | 22100 | |
| D | UCBH HOLDINGS INC | COM | 90262T30 | 136 | 9675 SH | SHARED | | 01 | 9675 | |
| D | UCBH HOLDINGS INC | COM | 90262T30 | 299 | 21133 SH | SHARED | | 02 | 21133 | |
| D | UCBH HOLDINGS INC | COM | 90262T30 | 18351 | 1296037 SH | SHARED | | 10 | 1296037 | |
| D | UCBH HOLDINGS INC | COM | 90262T30 | 8 | 604 SH | SHARED | | 21 | | 604 |
| D | UDR INC | COM | 90265310 | 5808 | 292614 SH | SHARED | | | 292614 | |
| D | UDR INC | COM | 90265310 | 920 | 46375 SH | SHARED | | 01 | 1775 | 44600 |
| D | UDR INC | COM | 90265310 | 153 | 7756 SH | SHARED | | 02 | 7756 | |
| D | UDR INC | COM | 90265310 | 2322 | 117000 SH | SHARED | | 10 | 117000 | |
| D | UDR INC | COM | 90265310 | 41144 | 2072750 SH | SHARED | | 11 | | 2072750 |
| D | UDR INC | COM | 90265310 | 9 | 500 SH | SHARED | | 14 | | 500 |
| D | UFP TECHNOLOGIES INC | COM | 90267310 | 0 | 114 SH | SHARED | | | 114 | |
| D | UGI CORP NEW | COM | 90268110 | 185 | 6791 SH | SHARED | | | 6791 | |
| D | UGI CORP NEW | COM | 90268110 | 711 | 26125 SH | SHARED | | 01 | 26125 | |
| D | UGI CORP NEW | COM | 90268110 | 149 | 5500 SH | SHARED | | 10 | 5500 | |
| D | UGI CORP NEW | COM | 90268110 | 5 | 210 SH | SHARED | | 21 | | 210 |
| D | UIL HLDG CORP | COM | 90274810 | 513 | 13898 SH | SHARED | | 10 | 13898 | |
| D | UIL HLDG CORP | COM | 90274810 | 18 | 500 SH | SHARED | | 23 | 500 | |
| D | UMB FINL CORP | COM | 90278810 | 4 | 118 SH | SHARED | | | 118 | |
| D | UMB FINL CORP | COM | 90278810 | 7 | 200 SH | SHARED | | 01 | 200 | |
| D | UMB FINL CORP | COM | 90278810 | 745 | 19428 SH | SHARED | | 02 | 19428 | |
| D | UMB FINL CORP | COM | 90278810 | 1913 | 49870 SH | SHARED | | 10 | 49870 | |
| D | U S B HLDG INC | COM | 90291010 | 46 | 2342 SH | SHARED | | | 2342 | |
| D | UST INC | COM | 90291110 | 49006 | 894283 SH | SHARED | | | 894283 | |
| D | UST INC | COM | 90291110 | 2165 | 39525 SH | SHARED | | 01 | 35385 | 4140 |
| D | UST INC | COM | 90291110 | 165 | 3025 SH | SHR/OTHR | | 01 | | 3025 |
| D | UST INC | COM | 90291110 | 3317 | 60530 SH | SHARED | | 02 | 60530 | |
| D | UST INC | COM | 90291110 | 82 | 1500 SH | SHARED | | 06 | | 1500 |
| D | UST INC | COM | 90291110 | 278727 | 5086272 SH | SHARED | | 10 | 5086272 | |
| D | UST INC | COM | 90291110 | 32 | 600 SH | SHARED | | 14 | | 600 |
| D | UST INC | COM | 90291110 | 35 | 650 SH | SHARED | | 20 | 650 | |
| D | UST INC | COM | 90291110 | 107 | 1958 SH | SHARED | | 21 | 1958 | |
| D | UST INC | COM | 90291110 | 25 | 460 SH | SHR/OTHR | | 21 | | 460 |
| D | UST INC | COM | 90291110 | 16 | 300 SH | SHARED | | 22 | 300 | |
| D | UST INC | COM | 90291110 | 630 | 11500 SH | SHR/OTHR | | 23 | | 11500 |
| D | USA TRUCK INC | COM | 90292510 | 58 | 3816 SH | SHARED | | | 3816 | |
| D | U S GLOBAL INVS INC | CL A | 90295210 | 36 | 2210 SH | SHARED | | | 2210 | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| D US BANCORP DEL | DBCV | 9/2 | 902973AQ | 99 | 100000 | PRN | SHARED | 02 | 100000 | |
| D US BANCORP DEL | DBCV | 2/0 | 902973AT | 10029 | 10100000 | PRN | SHARED | | 0100000 | |
| D US BANCORP DEL | COM NEW | | 90297330 | 83878 | 2642659 | SH | SHARED | | 2576459 | 66200 |
| D US BANCORP DEL | COM NEW | | 90297330 | 20257 | 638224 | SH | SHARED | 01 | 494216 | 144008 |
| D US BANCORP DEL | COM NEW | | 90297330 | 2594 | 81733 | SH | SHR/OTHR | 01 | | 81733 |
| D US BANCORP DEL | COM NEW | | 90297330 | 36092 | 1137120 | SH | SHARED | 02 | 1137120 | |
| D US BANCORP DEL | COM NEW | | 90297330 | 1587 | 50000 | SH | SHARED | 04 | 50000 | |
| D US BANCORP DEL | COM NEW | | 90297330 | 19 | 625 | SH | SHARED | 05 | 625 | |
| D US BANCORP DEL | COM NEW | | 90297330 | 520 | 16393 | SH | SHARED | 06 | | 16393 |
| D US BANCORP DEL | COM NEW | | 90297330 | 176564 | 5562849 | SH | SHARED | 10 | 5558630 | 4219 |
| D US BANCORP DEL | COM NEW | | 90297330 | 745 | 23499 | SH | SHARED | 14 | | 23499 |
| D US BANCORP DEL | COM NEW | | 90297330 | 4186 | 131892 | SH | SHARED | 20 | 86430 | 45462 |
| D US BANCORP DEL | COM NEW | | 90297330 | 1295 | 40811 | SH | SHR/OTHR | 20 | | 40811 |
| D US BANCORP DEL | COM NEW | | 90297330 | 202 | 6389 | SH | SHARED | 21 | 6389 | |
| D US BANCORP DEL | COM NEW | | 90297330 | 1032 | 32525 | SH | SHARED | 22 | 24400 | 8125 |
| D US BANCORP DEL | COM NEW | | 90297330 | 150 | 4740 | SH | SHR/OTHR | 22 | | 4740 |
| D US BANCORP DEL | COM NEW | | 90297330 | 4563 | 143792 | SH | SHARED | 23 | 116042 | 27750 |
| D US BANCORP DEL | COM NEW | | 90297330 | 3116 | 98199 | SH | SHR/OTHR | 23 | | 98199 |
| D U M H PROPERTIES INC | COM | | 90300210 | 2 | 241 | SH | SHARED | | 241 | |
| D UQM TECHNOLOGIES INC | COM | | 90321310 | 2 | 693 | SH | SHARED | | 693 | |
| D URS CORP NEW | COM | | 90323610 | 3932 | 72374 | SH | SHARED | | 72374 | |
| D URS CORP NEW | COM | | 90323610 | 2015 | 37090 | SH | SHARED | 01 | 11990 | 25100 |
| D URS CORP NEW | COM | | 90323610 | 898 | 16533 | SH | SHARED | 02 | 16533 | |
| D URS CORP NEW | COM | | 90323610 | 4585 | 84408 | SH | SHARED | 04 | 84408 | |
| D URS CORP NEW | COM | | 90323610 | 2577 | 47439 | SH | SHARED | 05 | 47439 | |
| D URS CORP NEW | COM | | 90323610 | 180 | 3321 | SH | SHARED | 06 | | 3321 |
| D URS CORP NEW | COM | | 90323610 | 31649 | 582550 | SH | SHARED | 10 | 564850 | 17700 |
| D URS CORP NEW | COM | | 90323610 | 48 | 896 | SH | SHARED | 21 | | 896 |
| D USANA HEALTH SCIENCES INC | COM | | 90328M10 | 125 | 3373 | SH | SHARED | | 3373 | |
| D USANA HEALTH SCIENCES INC | COM | | 90328M10 | 7 | 210 | SH | SHARED | 02 | 210 | |
| D USANA HEALTH SCIENCES INC | COM | | 90328M10 | 9 | 245 | SH | SHARED | 10 | 245 | |
| D USA TECHNOLOGIES INC | COM NO PAR | | 90328850 | 1 | 389 | SH | SHARED | | 389 | |
| D USF&G CORP | NOTE | 3/0 | 90320AD | 1917 | 2006000 | PRN | SHARED | | 2006000 | |
| D U S G CORP | COM NEW | | 90329340 | 3605 | 100750 | SH | SHARED | | 100750 | |
| D U S G CORP | COM NEW | | 90329340 | 610 | 17060 | SH | SHARED | 01 | 17060 | |
| D U S G CORP | COM NEW | | 90329340 | 143 | 4000 | SH | SHARED | 10 | 4000 | |
| D U S G CORP | COM NEW | | 90329340 | 894 | 25000 | SH | SHARED | 15 | | 25000 |
| D USEC INC | NOTE | 3.000%10/0 | 90333EAC | 10079 | 10317000 | PRN | SHARED | | 0317000 | |
| D USEC INC | COM | | 90333E10 | 4422 | 491397 | SH | SHARED | | 491397 | |
| D USEC INC | COM | | 90333E10 | 85 | 9500 | SH | SHARED | 01 | 5000 | 4500 |
| D USEC INC | COM | | 90333E10 | 10 | 1175 | SH | SHARED | 02 | 1175 | |
| D USEC INC | COM | | 90333E10 | 360 | 40000 | SH | SHARED | 04 | 40000 | |
| D USEC INC | COM | | 90333E10 | 592 | 65800 | SH | SHARED | 10 | 65800 | |
| D USEC INC | COM | | 90333E10 | 63 | 7000 | SH | SHARED | 20 | | 7000 |
| D U S CONCRETE INC | COM | | 90333L10 | 13 | 3929 | SH | SHARED | | 3929 | |
| D U S HOME SYS INC | COM | | 90335C10 | 385 | 71985 | SH | SHARED | | 71985 | |
| D U S PHYSICAL THERAPY INC | COM | | 90337L10 | 32 | 2277 | SH | SHARED | | 2277 | |
| D USA MOBILITY INC | COM | | 90341G10 | 316 | 22102 | SH | SHARED | | 22102 | |
| D USA MOBILITY INC | COM | | 90341G10 | 42 | 3000 | SH | SHARED | 01 | 3000 | |
| D USA MOBILITY INC | COM | | 90341G10 | 2666 | 186500 | SH | SHARED | 10 | 186500 | |
| D U S AIRWAYS GROUP INC | COM | | 90341W10 | 36514 | 2482314 | SH | SHARED | | 2444314 | 38000 |
| D U S AIRWAYS GROUP INC | COM | | 90341W10 | 544 | 37041 | SH | SHARED | 01 | 37041 | |
| D U S AIRWAYS GROUP INC | COM | | 90341W10 | 916 | 62300 | SH | SHARED | 02 | 62300 | |
| D U S AIRWAYS GROUP INC | COM | | 90341W10 | 18493 | 1257200 | SH | SHARED | 10 | 1118800 | 138400 |
| D S SHIPPING PARTNERS L P | COM UNIT | | 90341710 | 11 | 893 | SH | SHARED | | 893 | |
| D US BIOENERGY CORP | COM | | 90342V10 | 10 | 889 | SH | SHARED | | 889 | |
| D US BIOENERGY CORP | COM | | 90342V10 | 0 | 54 | SH | SHARED | 02 | 54 | |
| D U.S. AUTO PARTS NETWORK INC | COM | | 90343C10 | 3 | 380 | SH | SHARED | | 380 | |
| D U.S. AUTO PARTS NETWORK INC | COM | | 90343C10 | 12 | 1500 | SH | SHARED | 02 | 1500 | |
| D UAP HLDG CORP | COM | | 90344110 | 10 | 269 | SH | SHARED | | 269 | |
| D UAP HLDG CORP | COM | | 90344110 | 1007 | 26100 | SH | SHARED | 02 | 26100 | |
| D UAP HLDG CORP | COM | | 90344110 | 721 | 18700 | SH | SHARED | 10 | 18700 | |
| D ULTA SALON COSMETCS & FRAG I | COM | | 90384830 | 3 | 206 | SH | SHARED | | 206 | |
| D ULTIMATE SOFTWARE GROUP INC | COM | | 90385D10 | 166 | 5300 | SH | SHARED | | 5300 | |
| D ULTIMATE SOFTWARE GROUP INC | COM | | 90385D10 | 34 | 1100 | SH | SHARED | 01 | 1100 | |
| D ULTIMATE SOFTWARE GROUP INC | COM | | 90385D10 | 6 | 193 | SH | SHARED | 02 | 193 | |
| D ULTIMATE SOFTWARE GROUP INC | COM | | 90385D10 | 793 | 25200 | SH | SHARED | 10 | 25200 | |
| D ULTRA CLEAN HLDGS INC | COM | | 90385V10 | 16369 | 1341766 | SH | SHARED | | 1341766 | |
| D ULTRA CLEAN HLDGS INC | COM | | 90385V10 | 28 | 2316 | SH | SHARED | 21 | | 2316 |
| D ULTRALIFE BATTERIES INC | COM | | 90389910 | 34 | 1709 | SH | SHARED | | 1709 | |
| D ULTRA PETROLEUM CORP | COM | | 90391410 | 643 | 9000 | SH | SHARED | | 9000 | |
| D ULTRA PETROLEUM CORP | COM | | 90391410 | 8151 | 114005 | SH | SHARED | | 114005 | |
| D ULTRA PETROLEUM CORP | COM | | 90391410 | 128 | 1800 | SH | SHARED | 01 | 700 | 1100 |
| D ULTRA PETROLEUM CORP | COM | | 90391410 | 371 | 5200 | SH | SHR/OTHR | 01 | | 5200 |
| D ULTRA PETROLEUM CORP | COM | | 90391410 | 1430 | 20000 | SH | SHARED | 04 | 20000 | |
| D ULTRA PETROLEUM CORP | COM | | 90391410 | 97 | 1370 | SH | SHARED | 06 | | 1370 |
| D ULTRA PETROLEUM CORP | COM | | 90391410 | 69464 | 971530 | SH | SHARED | 10 | 939630 | 31900 |
| D ULTRA PETROLEUM CORP | COM | | 90391410 | 71 | 1000 | SH | SHARED | 21 | | 1000 |
| D ULTRA PETROLEUM CORP | COM | | 90391410 | 743 | 10400 | SH | SHARED | 24 | 10400 | |
| D ULTRAPAR PARTICIPACOES S A | SP ADR REP PFD | | 90400P10 | 30 | 882 | SH | SHARED | | 882 | |
| D ULURU INC | COM | | 90403710 | 3 | 1325 | SH | SHARED | | 1325 | |
| D UMPQUA HLDGS CORP | COM | | 90421410 | 162 | 10621 | SH | SHARED | | 10621 | |
| D UMPQUA HLDGS CORP | COM | | 90421410 | 85 | 5600 | SH | SHARED | 01 | 5600 | |
| D UMPQUA HLDGS CORP | COM | | 90421410 | 338 | 22076 | SH | SHARED | 10 | 22076 | |
| D UNDER ARMOUR INC | CL A | | 90431110 | 147 | 3372 | SH | SHARED | | 3372 | |
| D UNDER ARMOUR INC | CL A | | 90431110 | 1586 | 36330 | SH | SHARED | 10 | 36330 | |
| D UNIBANCO-UNIAO DE BANCOS BRA | GDR REP PFD UT | | 90458E10 | 3907 | 27980 | SH | SHARED | | | 27980 |
| D UNIBANCO-UNIAO DE BANCOS BRA | GDR REP PFD UT | | 90458E10 | 20239 | 144943 | SH | SHARED | | 144643 | 300 |
| D UNIBANCO-UNIAO DE BANCOS BRA | GDR REP PFD UT | | 90458E10 | 3016 | 21600 | SH | SHARED | 01 | 21600 | |
| D UNIBANCO-UNIAO DE BANCOS BRA | GDR REP PFD UT | | 90458E10 | 60352 | 432200 | SH | SHARED | 04 | 432200 | |
| D UNIBANCO-UNIAO DE BANCOS BRA | GDR REP PFD UT | | 90458E10 | 3517 | 25190 | SH | SHARED | 06 | | 25190 |
| D UNIBANCO-UNIAO DE BANCOS BRA | GDR REP PFD UT | | 90458E10 | 55534 | 397700 | SH | SHARED | 10 | 397700 | |
| D UNIBANCO-UNIAO DE BANCOS BRA | GDR REP PFD UT | | 90458E10 | 3421 | 24500 | SH | SHARED | 14 | | 24500 |
| D UNIBANCO-UNIAO DE BANCOS BRA | GDR REP PFD UT | | 90458E10 | 1577 | 11300 | SH | SHARED | 24 | 11300 | |
| D UNICA CORP | COM | | 90458310 | 0 | 6 | SH | SHARED | | 6 | |
| D UNICO AMERN CORP | COM | | 90460710 | 143 | 13979 | SH | SHARED | | 13979 | |
| D UNIFI INC | COM | | 90467710 | 3 | 1361 | SH | SHARED | | 1361 | |
| D UNIFIRST CORP MASS | COM | | 90470810 | 27 | 724 | SH | SHARED | | 724 | |
| D UNIFIRST CORP MASS | COM | | 90470810 | 212 | 5600 | SH | SHARED | 10 | 5600 | |
| D UNILEVER PLC | SPON ADR NEW | | 90476770 | 16002 | 427638 | SH | SHARED | | 427638 | |
| D UNILEVER PLC | SPON ADR NEW | | 90476770 | 120 | 3213 | SH | SHARED | | | 3213 |
| D UNILEVER PLC | SPON ADR NEW | | 90476770 | 44 | 1202 | SH | SHARED | 02 | 1202 | |
| D UNILEVER PLC | SPON ADR NEW | | 90476770 | 37 | 1000 | SH | SHARED | 20 | 1000 | |
| D UNILEVER N V | N Y SHS NEW | | 90478470 | 515 | 14149 | SH | SHARED | | 14149 | |
| D UNILEVER N V | N Y SHS NEW | | 90478470 | 826 | 22665 | SH | SHARED | 01 | 13965 | 8700 |
| D UNILEVER N V | N Y SHS NEW | | 90478470 | 306 | 8400 | SH | SHR/OTHR | 01 | | 8400 |
| D UNILEVER N V | N Y SHS NEW | | 90478470 | 371 | 10200 | SH | SHARED | 02 | 10200 | |
| D UNILEVER N V | N Y SHS NEW | | 90478470 | 1742 | 47800 | SH | SHARED | 10 | 47800 | |
| D UNILEVER N V | N Y SHS NEW | | 90478470 | 39 | 1070 | SH | SHARED | 20 | 1070 | |
| D UNILEVER N V | N Y SHS NEW | | 90478470 | 1618 | 44385 | SH | SHR/OTHR | 23 | | 44385 |
| D UNION BANKSHARES CORP | COM | | 90539910 | 7 | 340 | SH | SHARED | | 340 | |
| D UNION BANKSHARES INC | COM | | 90540010 | 1 | 87 | SH | SHARED | | 87 | |
| D UNION BANKSHARES INC | COM | | 90540010 | 10 | 500 | SH | SHARED | 23 | | 500 |
| D UNION DRILLING INC | COM | | 90653P10 | 163 | 10360 | SH | SHARED | | 10360 | |

| | Name | Class | CUSIP | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | UNION DRILLING INC | COM | 90653P10 | 36 | 2300 SH | SHARED | 01 | 2300 | |
| D | UNION DRILLING INC | COM | 90653P10 | 1014 | 64300 SH | SHARED | 10 | 64300 | |
| D | UNION PAC CORP | COM | 90781810 | 762138 | 6067013 SH | SHARED | | 6067013 | |
| D | UNION PAC CORP | COM | 90781810 | 13369 | 108021 SH | SHARED | 01 | 66298 | 41723 |
| D | UNION PAC CORP | COM | 90781810 | 4166 | 33165 SH | SHR/OTHR | 01 | | 33165 |
| D | UNION PAC CORP | COM | 90781810 | 137092 | 1091328 SH | SHARED | 02 | 1091328 | |
| D | UNION PAC CORP | COM | 90781810 | 3140 | 25000 SH | SHARED | 04 | 25000 | |
| D | UNION PAC CORP | COM | 90781810 | 12 | 100 SH | SHARED | 05 | 100 | |
| D | UNION PAC CORP | COM | 90781810 | 326 | 2600 SH | SHARED | 06 | | 2600 |
| D | UNION PAC CORP | COM | 90781810 | 22538 | 179417 SH | SHARED | 10 | 174417 | 5000 |
| D | UNION PAC CORP | COM | 90781810 | 445 | 3550 SH | SHARED | 20 | 655 | 2895 |
| D | UNION PAC CORP | COM | 90781810 | 306 | 2443 SH | SHARED | 21 | 450 | 1993 |
| D | UNION PAC CORP | COM | 90781810 | 100 | 800 SH | SHR/OTHR | 21 | | 800 |
| D | UNION PAC CORP | COM | 90781810 | 796 | 6342 SH | SHARED | 22 | 5422 | 920 |
| D | UNION PAC CORP | COM | 90781810 | 188 | 1500 SH | SHR/OTHR | 22 | | 1500 |
| D | UNION PAC CORP | COM | 90781810 | 3216 | 25602 SH | SHARED | 23 | 23602 | 2000 |
| D | UNION PAC CORP | COM | 90781810 | 4589 | 36532 SH | SHR/OTHR | 23 | | 36532 |
| D | UNION STREET ACQ CORP | COM | 90853610 | 5867 | 766954 SH | SHARED | | 766954 | |
| D | UNION STREET ACQ CORP | *W EXP 02/05/201 | 90853611 | 228 | 415935 SH | SHARED | | 415935 | |
| D | UNIONBANCAL CORP | COM | 90890610 | 18365 | 375500 SH | SHARED | | 375500 | |
| D | UNIONBANCAL CORP | COM | 90890610 | 12 | 250 SH | SHARED | 01 | 175 | 75 |
| D | UNIONBANCAL CORP | COM | 90890610 | 24 | 500 SH | SHARED | 02 | 500 | |
| D | UNIONBANCAL CORP | COM | 90890610 | 13 | 270 SH | SHARED | 06 | | 270 |
| D | UNIONBANCAL CORP | COM | 90890610 | 122 | 2500 SH | SHARED | 10 | 2500 | |
| D | UNIONBANCAL CORP | COM | 90890610 | 366 | 7494 SH | SHARED | 14 | | 7494 |
| D | UNISOURCE ENERGY CORP | COM | 90920510 | 30640 | 971181 SH | SHARED | | 971181 | |
| D | UNISOURCE ENERGY CORP | COM | 90920510 | 191 | 6075 SH | SHARED | 01 | 6075 | |
| D | UNISOURCE ENERGY CORP | COM | 90920510 | 220 | 7000 SH | SHARED | 02 | 7000 | |
| D | UNISOURCE ENERGY CORP | COM | 90920510 | 388 | 12300 SH | SHARED | 10 | 12300 | |
| D | UNISOURCE ENERGY CORP | COM | 90920510 | 23 | 742 SH | SHARED | 21 | | 742 |
| D | UNISYS CORP | COM | 90921410 | 29469 | 6230241 SH | SHARED | | 6230241 | |
| D | UNISYS CORP | COM | 90921410 | 146 | 31000 SH | SHARED | 01 | 31000 | |
| D | UNISYS CORP | COM | 90921410 | 255 | 53945 SH | SHARED | 02 | 53945 | |
| D | UNISYS CORP | COM | 90921410 | 658 | 139164 SH | SHARED | 10 | 139164 | |
| D | UNIT CORP | COM | 90921810 | 7138 | 154348 SH | SHARED | | 154348 | |
| D | UNIT CORP | COM | 90921810 | 319 | 6900 SH | SHARED | 01 | 6900 | |
| D | UNIT CORP | COM | 90921810 | 54 | 1187 SH | SHARED | 02 | 1187 | |
| D | UNIT CORP | COM | 90921810 | 402 | 8701 SH | SHARED | 10 | 8701 | |
| D | UNITED AMER INDEMNITY LTD | CL A | 90933710 | 19 | 961 SH | SHARED | | 961 | |
| D | UNITED AMER INDEMNITY LTD | CL A | 90933710 | 235 | 11800 SH | SHARED | 10 | 11800 | |
| D | UNITED AMERN HEALTHCARE CORP | COM | 90934C10 | 0 | 193 SH | SHARED | | 193 | |
| D | UNITED AUTO GROUP INC | NOTE 3.500% 4/0 | 90944 0AA | 6909 | 7000000 PRN | SHARED | | 7000000 | |
| D | UNITED CMNTY FINL CORP OHIO | COM | 90983910 | 1 | 275 SH | SHARED | | 275 | |
| D | UNITED CMNTY BANCORP | COM | 90984810 | 7 | 612 SH | SHARED | | 612 | |
| D | UNITED CMNTY BKS BLAIRSVLE G | CAP STK | 90984P10 | 330 | 20890 SH | SHARED | | 20890 | |
| D | UNITED CMNTY BKS BLAIRSVLE G | CAP STK | 90984P10 | 77 | 4900 SH | SHARED | 01 | 4900 | |
| D | UNITED CMNTY BKS BLAIRSVLE G | CAP STK | 90984P10 | 150 | 9500 SH | SHARED | 02 | 9500 | |
| D | UNITED CMNTY BKS BLAIRSVLE G | CAP STK | 90984P10 | 505 | 32010 SH | SHARED | 10 | 32010 | |
| D | UNITED BANKSHARES INC WEST V | COM | 90990710 | 194 | 6924 SH | SHARED | | 6924 | |
| D | UNITED BANKSHARES INC WEST V | COM | 90990710 | 1337 | 47724 SH | SHARED | 10 | 47724 | |
| D | UNITED BANKSHARES INC WEST V | COM | 90990710 | 27 | 972 SH | SHARED | 21 | | 972 |
| D | UNITED BANCORP INC OHIO | COM | 90991110 | 1 | 121 SH | SHARED | | 121 | |
| D | UNITED CAPITAL CORP | COM | 90991210 | 1 | 73 SH | SHARED | | 73 | |
| D | UNITED DOMINION REALTY TR IN | NOTE 4.000%12/1 | 910197AK | 18244 | 19005008 PRN | SHARED | | 9005008 | |
| D | UNITED DOMINION REALTY TR IN | NOTE 3.625% 9/1 | 910137AM | 4530 | 5000000 PRN | SHARED | 02 | 5000000 | |
| D | UNITED FINANCIAL BANCORP INC | COM | 91030710 | 1365 | 123000 SH | SHARED | | 123000 | |
| D | UNITED FIRE & CAS CO | COM | 91033110 | 326 | 11211 SH | SHARED | | 11211 | |
| D | UNITED FIRE & CAS CO | COM | 91033110 | 11 | 400 SH | SHARED | 02 | 400 | |
| D | UNITED FIRE & CAS CO | COM | 91033110 | 15278 | 525200 SH | SHARED | 10 | 525200 | |
| D | UNITED FIRE & CAS CO | COM | 91033110 | 45 | 1558 SH | SHARED | 21 | | 1558 |
| D | UNITED GUARDIAN INC | COM | 91057210 | 0 | 60 SH | SHARED | | 60 | |
| D | UNITED HERITAGE CORP | COM PAR $.001 | 91058P40 | 0 | 71 SH | SHARED | | 71 | |
| D | UNITED INDL CORP | COM | 91067110 | 0 | 8921 SH | SHARED | | 8921 | |
| D | UNITED MICROELECTRONICS CORP | SPON ADR NEW | 91087340 | 0 | 278 SH | SHARED | | 278 | |
| D | UNITED NAT FOODS INC | COM | 91116310 | 158 | 5000 SH | SHARED | | 5000 | |
| D | UNITED ONLINE INC | COM | 91126810 | 346 | 29277 SH | SHARED | | 29277 | |
| D | UNITED ONLINE INC | COM | 91126810 | 93 | 7950 SH | SHARED | 01 | 3250 | 4700 |
| D | UNITED ONLINE INC | COM | 91126810 | 98 | 8300 SH | SHARED | 02 | 8300 | |
| D | UNITED ONLINE INC | COM | 91126810 | 1503 | 127200 SH | SHARED | 10 | 127200 | |
| D | UNITED ONLINE INC | COM | 91126810 | 25 | 2142 SH | SHARED | 20 | 2142 | |
| D | UNITED PANAM FINANCIAL CP | COM | 91130110 | 1 | 387 SH | SHARED | | 387 | |
| D | UNITED PANAM FINANCIAL CP | COM | 91130110 | 157 | 30800 SH | SHARED | 02 | 30800 | |
| D | UNITED PARCEL SERVICE INC | CL B | 91131210 | 83369 | 1178869 SH | SHARED | | 1178869 | |
| D | UNITED PARCEL SERVICE INC | CL B | 91131210 | 7271 | 102816 SH | SHARED | 01 | 99766 | 3050 |
| D | UNITED PARCEL SERVICE INC | CL B | 91131210 | 28 | 400 SH | SHR/OTHR | 01 | | 400 |
| D | UNITED PARCEL SERVICE INC | CL B | 91131210 | 7830 | 110720 SH | SHARED | 02 | 110720 | |
| D | UNITED PARCEL SERVICE INC | CL B | 91131210 | 21 | 310 SH | SHARED | 05 | 310 | |
| D | UNITED PARCEL SERVICE INC | CL B | 91131210 | 442 | 6250 SH | SHARED | 06 | | 6250 |
| D | UNITED PARCEL SERVICE INC | CL B | 91131210 | 32545 | 460209 SH | SHARED | 10 | 449209 | 11000 |
| D | UNITED PARCEL SERVICE INC | CL B | 91131210 | 1224 | 17318 SH | SHARED | 14 | | 17318 |
| D | UNITED PARCEL SERVICE INC | CL B | 91131210 | 293 | 4155 SH | SHARED | 20 | 800 | 3355 |
| D | UNITED PARCEL SERVICE INC | CL B | 91131210 | 325 | 4600 SH | SHR/OTHR | 20 | | 4600 |
| D | UNITED PARCEL SERVICE INC | CL B | 91131210 | 45 | 650 SH | SHARED | 21 | | 650 |
| D | UNITED PARCEL SERVICE INC | CL B | 91131210 | 56 | 800 SH | SHR/OTHR | 21 | | 800 |
| D | UNITED PARCEL SERVICE INC | CL B | 91131210 | 50 | 717 SH | SHARED | 22 | 717 | |
| D | UNITED PARCEL SERVICE INC | CL B | 91131210 | 478 | 6765 SH | SHARED | 23 | 6765 | |
| D | UNITED PARCEL SERVICE INC | CL B | 91131210 | 758 | 10725 SH | SHR/OTHR | 23 | | 10725 |
| D | UNITED REFINING ENERGY CORP | UNIT 99/99/9999 | 91136020 | 3322 | 335960 SH | SHARED | | 335960 | |
| D | UNITED REFINING ENERGY CORP | UNIT 99/99/9999 | 91136020 | 47917 | 4845000 SH | SHARED | 02 | 4845000 | |
| D | UNITED RENTALS INC | COM | 91136310 | 13841 | 753869 SH | SHARED | | 675469 | 78400 |
| D | UNITED RENTALS INC | COM | 91136310 | 713 | 38885 SH | SHARED | 01 | 18785 | 20100 |
| D | UNITED RENTALS INC | COM | 91136310 | 271 | 14807 SH | SHARED | 02 | 14807 | |
| D | UNITED RENTALS INC | COM | 91136310 | 9592 | 522471 SH | SHARED | 10 | 460571 | 61900 |
| D | UNITED RENTALS NORTH AMER IN | NOTE 1.875%10/1 | 91136SAH | 2004 | 2000000 PRN | SHARED | | 2000000 | |
| D | UNITED RENTALS NORTH AMER IN | NOTE 1.875%10/1 | 91136SAH | 8016 | 8000000 PRN | SHARED | 02 | 8000000 | |
| D | UNITED SEC BANCSHARES INC | SHS | 91145910 | 2 | 161 SH | SHARED | | 161 | |
| D | UNITED SECURITY BANCSHARES C | SHS | 91146010 | 403 | 26566 SH | SHARED | | 26566 | |
| D | UNITED STATES CELLULAR CORP | COM | 91168410 | 2704 | 32160 SH | SHARED | | 32160 | |
| D | UNITED STATES CELLULAR CORP | COM | 91168410 | 151 | 1800 SH | SHARED | 01 | 1800 | |
| D | UNITED STATES CELLULAR CORP | COM | 91168410 | 2216 | 26358 SH | SHARED | 02 | 26358 | |
| D | UNITED STATES CELLULAR CORP | COM | 91168410 | 2110 | 25100 SH | SHARED | 10 | 25100 | |
| D | UNITED STATES CELLULAR CORP | COM | 91168410 | 105 | 1260 SH | SHARED | 21 | | 1260 |
| D | UNITED STATES CELLULAR CORP | COM | 91168410 | 168 | 2000 SH | SHARED | 23 | | 2000 |
| D | U S ENERGY CORP WYO | COM | 91180510 | 452 | 106376 SH | SHARED | | 106376 | |
| D | UNITED STATES LIME & MINERAL | COM | 91192210 | 1 | 47 SH | SHARED | | 47 | |
| D | US GOLD CORPORATION | COM PAR $0.10 | 91202320 | 174 | 58953 SH | SHARED | | 58953 | |
| D | UNITED STATES NATL GAS FUND | UNIT | 91231810 | 4563 | 125900 SH | SHARED | 02 | 125900 | |
| D | UNITED STATES NATL GAS FUND | UNIT | 91231810 | 326 | 9000 SH | SHARED | 10 | 9000 | |
| D | UNITED STATES OIL FUND LP | UNITS | 91232N10 | 310 | 4100 SH | SHARED | | 4100 | |
| D | U STORE IT TR | COM | 91274P10 | 1857 | 202767 SH | SHARED | | 202767 | |
| D | U STORE IT TR | COM | 91274P10 | 24 | 2700 SH | SHARED | 01 | 2700 | |
| D | U STORE IT TR | COM | 91274P10 | 387 | 42300 SH | SHARED | 10 | 42300 | |
| D | UNITED STATES STL CORP NEW | COM | 91290910 | 85898 | 710432 SH | SHARED | | 710432 | |
| D | UNITED STATES STL CORP NEW | COM | 91290910 | 2795 | 23119 SH | SHARED | 01 | 22089 | 1030 |

```
D UNITED STATES STL CORP NEW      COM        91290910       87     725 SH    SHR/OTHR   01                 725
D UNITED STATES STL CORP NEW      COM        91290910    10006   82757 SH    SHARED     02        82757
D UNITED STATES STL CORP NEW      COM        91290910        0       1 SH    SHARED     04             1
D UNITED STATES STL CORP NEW      COM        91290910      135    1120 SH    SHARED     06                1120
D UNITED STATES STL CORP NEW      COM        91290910    13640  112814 SH    SHARED     10       112814
D UNITED STATES STL CORP NEW      COM        91290910      415    3440 SH    SHARED     14                3440
D UNITED STATES STL CORP NEW      COM        91290910       12     100 SH    SHARED     20       100
D UNITED STATES STL CORP NEW      COM        91290910        9      80 SH    SHR/OTHR   21                  80
D UNITED STATES STL CORP NEW      COM        91290910        6      50 SH    SHARED     22        50
D UNITED STATES STL CORP NEW      COM        91290910      114     950 SH    SHR/OTHR   23                 950
D UNITED STATIONERS INC           COM        91300410      589   12760 SH    SHARED                12760
D UNITED STATIONERS INC           COM        91300410      508   11000 SH    SHARED     01        11000
D UNITED STATIONERS INC           COM        91300410      567   12283 SH    SHARED     02        12283
D UNITED STATIONERS INC           COM        91300410     5409  117055 SH    SHARED     10       117055
D UNITED TECHNOLOGIES CORP        COM        91301710     5502   71888 SH    SHARED                13049       58839
D UNITED TECHNOLOGIES CORP        COM        91301710       30     400 SH    SHR/OTHR                          400
D UNITED TECHNOLOGIES CORP        COM        91301710   134929 1762858 SH    SHARED              1636376     126482
D UNITED TECHNOLOGIES CORP        COM        91301710    36295  474199 SH    SHARED     01        266412     207787
D UNITED TECHNOLOGIES CORP        COM        91301710     9856  128772 SH    SHARED     01                  128772
D UNITED TECHNOLOGIES CORP        COM        91301710     5861   76584 SH    SHARED     02         76584
D UNITED TECHNOLOGIES CORP        COM        91301710      153    2000 SH    SHARED     04                2000
D UNITED TECHNOLOGIES CORP        COM        91301710    21768  284404 SH    SHARED     04        284404
D UNITED TECHNOLOGIES CORP        COM        91301710    24279  317215 SH    SHARED     05        317215
D UNITED TECHNOLOGIES CORP        COM        91301710    34038  444710 SH    SHARED     06                 444710
D UNITED TECHNOLOGIES CORP        COM        91301710   296459 3873258 SH    SHARED     10       3806668      66590
D UNITED TECHNOLOGIES CORP        COM        91301710      947   12373 SH    SHARED     14         12373
D UNITED TECHNOLOGIES CORP        COM        91301710     7335   95840 SH    SHARED     15                  95840
D UNITED TECHNOLOGIES CORP        COM        91301710      626    8185 SH    SHARED     19          8185
D UNITED TECHNOLOGIES CORP        COM        91301710    13256  173194 SH    SHARED     20         70685     102509
D UNITED TECHNOLOGIES CORP        COM        91301710     6554   85640 SH    SHR/OTHR   20                   85640
D UNITED TECHNOLOGIES CORP        COM        91301710     1865   24374 SH    SHARED     21         12874      11500
D UNITED TECHNOLOGIES CORP        COM        91301710      164    2150 SH    SHR/OTHR   21                    2150
D UNITED TECHNOLOGIES CORP        COM        91301710     3049   39846 SH    SHARED     22          8203
D UNITED TECHNOLOGIES CORP        COM        91301710     1170   15296 SH    SHR/OTHR   22         31643      15296
D UNITED TECHNOLOGIES CORP        COM        91301710    10383  135662 SH    SHARED     23        103867      31805
D UNITED TECHNOLOGIES CORP        COM        91301710    14961  195473 SH    SHR/OTHR   23                  195473
D UNITED TECHNOLOGIES CORP        COM        91301710      109    1428 SH    SHARED     24          1428
D UNITED THERAPEUTICS CORP DEL    COM        91307C10    36558  374380 SH    SHARED                374380
D UNITED THERAPEUTICS CORP DEL    COM        91307C10       87     900 SH    SHARED     01       900
D UNITED THERAPEUTICS CORP DEL    COM        91307C10      420    4303 SH    SHARED     01          4303
D UNITED THERAPEUTICS CORP DEL    COM        91307C10    20412  209035 SH    SHARED     04        209035
D UNITED THERAPEUTICS CORP DEL    COM        91307C10     3599   36860 SH    SHARED     10         36860
D UNITED THERAPEUTICS CORP DEL    COM        91307C10     1953   20000 SH    SHARED     16         20000
D UNITED THERAPEUTICS CORP DEL    COM        91307C10        1      20 SH    SHARED     21                  20
D UNITED WESTN BANCORP INC        COM        91320110        3     155 SH    SHARED                   155
D UNITEDHEALTH GROUP INC          COM        91324P10      696   11960 SH    SHARED                           11960
D UNITEDHEALTH GROUP INC          COM        91324P10    86398 1484503 SH    SHARED              1484053        450
D UNITEDHEALTH GROUP INC          COM        91324P10    11834  203348 SH    SHARED     01        202598        750
D UNITEDHEALTH GROUP INC          COM        91324P10      116    2000 SH    SHR/OTHR   01                    2000
D UNITEDHEALTH GROUP INC          COM        91324P10     3038   52211 SH    SHARED     02         52211
D UNITEDHEALTH GROUP INC          COM        91324P10     3352   57600 SH    SHARED     04         57600
D UNITEDHEALTH GROUP INC          COM        91324P10       33     580 SH    SHARED     05           580
D UNITEDHEALTH GROUP INC          COM        91324P10      737   12680 SH    SHARED     06                   12680
D UNITEDHEALTH GROUP INC          COM        91324P10   602277 10348408 SH   SHARED     10       0275808      72600
D UNITEDHEALTH GROUP INC          COM        91324P10     1662   28559 SH    SHARED     14          2000      26559
D UNITEDHEALTH GROUP INC          COM        91324P10      927   15930 SH    SHARED     15                   15930
D UNITEDHEALTH GROUP INC          COM        91324P10      378    6500 SH    SHARED     19          6500
D UNITEDHEALTH GROUP INC          COM        91324P10     4138   71108 SH    SHARED     20         23410      47698
D UNITEDHEALTH GROUP INC          COM        91324P10     2438   41898 SH    SHR/OTHR   20                   41898
D UNITEDHEALTH GROUP INC          COM        91324P10     1098   18881 SH    SHARED     21          9070       9811
D UNITEDHEALTH GROUP INC          COM        91324P10       33     575 SH    SHARED     22           575
D UNITEDHEALTH GROUP INC          COM        91324P10      456    7850 SH    SHR/OTHR   22                    7850
D UNITEDHEALTH GROUP INC          COM        91324P10      430    7400 SH    SHARED     23          4200       3200
D UNITEDHEALTH GROUP INC          COM        91324P10       89    1534 SH    SHARED     24          1534
D UNITIL CORP                     COM        91325910        4     147 SH    SHARED                   147
D UNITRIN INC                     COM        91327510      664   13846 SH    SHARED                13846
D UNITRIN INC                     COM        91327510      887   18500 SH    SHARED     01                   18500
D UNITRIN INC                     COM        91327510      137    2862 SH    SHARED     01          2862
D UNITRIN INC                     COM        91327510      235    4900 SH    SHARED     10          4900
D UNITRIN INC                     COM        91327510       13     280 SH    SHARED     21                     280
D UNITY BANCORP INC               COM        91329010        1     132 SH    SHARED                   132
D UNIVERSAL AMERN FINL CORP       COM        91337710      105    4120 SH    SHARED                  4120
D UNIVERSAL AMERN FINL CORP       COM        91337710      962   37615 SH    SHARED     01         34815       2800
D UNIVERSAL AMERN FINL CORP       COM        91337710       12     475 SH    SHARED     02           475
D UNIVERSAL AMERN FINL CORP       COM        91337710      867   33900 SH    SHARED     10         33900
D UNIVERSAL CORP VA               COM        91345610    15470  302034 SH    SHARED                302034
D UNIVERSAL CORP VA               COM        91345610      747   14600 SH    SHARED     01          5800       8800
D UNIVERSAL CORP VA               COM        91345610      107    2095 SH    SHARED     02          2095
D UNIVERSAL CORP VA               COM        91345610      102    2000 SH    SHARED     10          2000
D UNIVERSAL DISPLAY CORP          COM        91347P10       76    3707 SH    SHARED                  3707
D UNIVERSAL DISPLAY CORP          COM        91347P10       31    1525 SH    SHARED     01          1525
D UNIVERSAL DISPLAY CORP          COM        91347P10       26    1300 SH    SHR/OTHR   01                    1300
D UNIVERSAL DISPLAY CORP          COM        91347P10        6     335 SH    SHARED     02       335
D UNIVERSAL ELECTRS INC           COM        91348310       84    2528 SH    SHARED                  2528
D UNIVERSAL ELECTRS INC           COM        91348310       65    1945 SH    SHARED     01          1945
D UNIVERSAL ELECTRS INC           COM        91348310        7     216 SH    SHARED     02       216
D UNIVERSAL FST PRODS INC         COM        91354310      254    8623 SH    SHARED                  8623
D UNIVERSAL FST PRODS INC         COM        91354310       26     900 SH    SHARED     01       900
D UNIVERSAL FST PRODS INC         COM        91354310      167    5700 SH    SHARED     02          5700
D UNIVERSAL FST PRODS INC         COM        91354310      542   18401 SH    SHARED     10         18401
D UNIVERSAL HEALTH RLTY INCM T    SH BEN INT 91359610      166    4700 SH    SHARED     10          4700
D UNIVERSAL INS HLDGS INC         COM        91359V10        5     791 SH    SHARED                   791
D UNIVERSAL INS HLDGS INC         COM        91359V10       10    1400 SH    SHARED     02          1400
D UNIVERSAL POWER GROUP INC       COM        91378810        0      78 SH    SHARED                    78
D UNIVERSAL SEC INSTRS INC        COM NEW    91382130        0     103 SH    SHARED                   103
D UNIVERSAL STAINLESS & ALLOY     COM        91383710      478   13452 SH    SHARED                13452
D UNIVERSAL HLTH SVCS INC         CL B       91390310     9901  193381 SH    SHARED                192256       1125
D UNIVERSAL HLTH SVCS INC         CL B       91390310      834   16300 SH    SHARED     01                   16300
D UNIVERSAL HLTH SVCS INC         CL B       91390310      161    3151 SH    SHARED     01          3151
D UNIVERSAL HLTH SVCS INC         CL B       91390310      138    2700 SH    SHARED     10          2700
D UNIVERSAL TECHNICAL INST INC    COM        91391510       15     907 SH    SHARED                   907
D UNIVERSAL TECHNICAL INST INC    COM        91391510      349   20573 SH    SHARED     01         20573
D UNIVERSITY BANCORP INC MICH     COM        91409010        0      37 SH    SHARED                    37
D UNIVEST CORP PA                 COM        91527110        4     216 SH    SHARED                   216
D UNIVEST CORP PA                 COM        91527110       92    4400 SH    SHARED     10          4400
D UNUM GROUP                      COM        91529Y10    13080  549830 SH    SHARED                549830
D UNUM GROUP                      COM        91529Y10     1374   57785 SH    SHARED     01         57785
D UNUM GROUP                      COM        91529Y10      303   12768 SH    SHARED     02         12768
D UNUM GROUP                      COM        91529Y10      105    4420 SH    SHARED     06                   4420
D UNUM GROUP                      COM        91529Y10     9605  403755 SH    SHARED     10        385055      18700
D UNUM GROUP                      COM        91529Y10       36    1537 SH    SHARED     14                    1537
D UNUM GROUP                      COM        91529Y10      219    9240 SH    SHARED     21          9240
D URANERZ ENERGY CORPORATION      COM        91688Y10       52   19996 SH    SHARED                19996
D URANIUM ENERGY CORP             COM        91689610        2     910 SH    SHARED                   910
```

```
D URANIUM ENERGY CORP            COM                 91689610    343     112200 SH    SHARED    10   112200
D URANIUM RES INC                COM PAR $0.001      91690150    107     8608 SH      SHARED         8608
D URANIUM RES INC                COM PAR $0.001      91690150    374     30000 SH     SHR/OTHR  01           30000
D URANIUM RES INC                COM PAR $0.001      91690150    25588   2050329 SH   SHARED    01   2050329
D URBAN OUTFITTERS INC           COM                 91704710    9896    363044 SH    SHARED         363044
D URBAN OUTFITTERS INC           COM                 91704710    1052    38600 SH     SHR/OTHR  01           38600
D URBAN OUTFITTERS INC           COM                 91704710    415     15250 SH     SHR/OTHR  01           15250
D URBAN OUTFITTERS INC           COM                 91704710    710     26050 SH     SHARED    02   26050
D URBAN OUTFITTERS INC           COM                 91704710    525530  1927000 SH   SHARED    10   1927000
D URBAN OUTFITTERS INC           COM                 91704710    2213    81200 SH     SHARED    14           81200
D UROLOGIX INC                   COM                 91727310    0       341 SH       SHARED         341
D UROPLASTY INC                  COM NEW             91727720    1       308 SH       SHARED         308
D URSTADT BIDDLE PPTYS INS       COM                 91728610    1       88 SH        SHARED         88
D URSTADT BIDDLE PPTYS INS       CL A                91728620    0       55 SH        SHR/OTHR  01           55
D US DATAWORKS INC               COM                 91729G30    0       767 SH       SHARED         767
D UTAH MED PRODS INC             COM                 91748810    29      999 SH       SHARED         999
D UTAH MED PRODS INC             COM                 91748810    11      400 SH       SHARED    20   400
D UTEK CORP                      COM                 91759910    2       179 SH       SHARED         179
D UTILITIES HOLDRS TR            DEPOSITRY RCPT      91801910    81      600 SH       SHARED         600
D UTILITIES HOLDRS TR            DEPOSITRY RCPT      91801910    699     5133 SH      SHARED    02   5133
D UTSTARCOM INC                  NOTE 10.875% 3/0    91807K6A    5911    5941000 SH   SHARED         5941000
D UTSTARCOM INC                  COM                 91807610    656     238707 SH    SHARED         238707
D UTSTARCOM INC                  COM                 91807610    0       262 SH       SHARED         262
D VCA ANTECH INC                 COM                 91819410    1718    38862 SH     SHARED         38862
D VCA ANTECH INC                 COM                 91819410    1152    26050 SH     SHARED    01           26050
D VCA ANTECH INC                 COM                 91819410    309     6991 SH      SHARED    02   6991
D VCA ANTECH INC                 COM                 91819410    221     5000 SH      SHARED    04   5000
D VCA ANTECH INC                 COM                 91819410    154     3500 SH      SHARED    10   3500
D VCA ANTECH INC                 COM                 91819410    3       80 SH        SHARED    21           80
D V F CORP                       COM                 91820410    130     1900 SH      SHARED         1900
D V F CORP                       COM                 91820410    9335    135960 SH    SHARED         135960
D V F CORP                       COM                 91820410    6641    96735 SH     SHARED    01   79924    16811
D V F CORP                       COM                 91820410    759     11069 SH     SHR/OTHR  01           11069
D V F CORP                       COM                 91820410    3735    54409 SH     SHARED    02   54409
D V F CORP                       COM                 91820410    379     5530 SH      SHARED    04   5530
D V F CORP                       COM                 91820410    3       50 SH        SHARED    05   50
D V F CORP                       COM                 91820410    67      980 SH       SHARED    06           980
D V F CORP                       COM                 91820410    4610    67152 SH     SHARED    10   66227    925
D V F CORP                       COM                 91820410    185     2700 SH      SHARED    14           2700
D V F CORP                       COM                 91820410    35      523 SH       SHARED    19           523
D V F CORP                       COM                 91820410    1372    19995 SH     SHARED    20   16360    3635
D V F CORP                       COM                 91820410    263     3840 SH      SHR/OTHR  20           3840
D V F CORP                       COM                 91820410    50      730 SH       SHARED    21   500      230
D V F CORP                       COM                 91820410    6       100 SH       SHR/OTHR  21           100
D V F CORP                       COM                 91820410    128     1865 SH      SHARED    22   1421     444
D V F CORP                       COM                 91820410    34      500 SH       SHR/OTHR  22           500
D V F CORP                       COM                 91820410    423     6175 SH      SHARED    23   5935     240
D V F CORP                       COM                 91820410    513     7485 SH      SHR/OTHR  23           7485
D VCG HLDG CORP                  COM                 91824K10    4       330 SH       SHARED         330
D VSE CORP                       COM                 91828410    258     5294 SH      SHARED         5294
D VSE CORP                       COM                 91828410    23      471 SH       SHARED    02   471
D VYYO INC                       COM NEW             91845820    39      12639 SH     SHARED         12639
D VAALCO ENERGY INC              COM NEW             91851C20    13      2980 SH      SHARED         2980
D VAIL RESORTS INC               COM                 91879Q10    216     4026 SH      SHARED         4026
D VAIL RESORTS INC               COM                 91879Q10    434     8075 SH      SHARED    01           8075
D VAIL RESORTS INC               COM                 91879Q10    699     13000 SH     SHARED    10   13000
D VALASSIS COMMUNICATIONS INC    NOTE 1.625% 5/2     918866AX    2608    4000000 PRN  SHARED         4000000
D VALASSIS COMMUNICATIONS INC    COM                 91886610    1454    124440 SH    SHARED         124440
D VALASSIS COMMUNICATIONS INC    COM                 91886610    206     17700 SH     SHARED    01           17700
D VALASSIS COMMUNICATIONS INC    COM                 91886610    41      3545 SH      SHARED    02   3545
D VALASSIS COMMUNICATIONS INC    COM                 91886610    155     13270 SH     SHARED    10   13270
D VALHI INC NEW                  COM                 91890510    1       123 SH       SHARED         123
D VALENCE TECHNOLOGY INC         COM                 91891410    3       1533 SH      SHARED         1533
D VALEANT PHARMACEUTICALS INTL   NOTE 3.000% 8/1     91911XAB    4575    5000000 PRN  SHARED         5000000
D VALEANT PHARMACEUTICALS INTL   COM                 91911X10    1115    93187 SH     SHARED         93187
D VALEANT PHARMACEUTICALS INTL   COM                 91911X10    558     46700 SH     SHARED    01   17700    29000
D VALEANT PHARMACEUTICALS INTL   COM                 91911X10    403     33735 SH     SHARED    02   33735
D VALEANT PHARMACEUTICALS INTL   COM                 91911X10    1250    104500 SH    SHARED    10   104500
D VALE CAP LTD                   NT RIO CV VALE      91912C20    35919   555000 SH    SHARED         555000
D VALE CAP LTD                   NT RIO CV VALE      91912C20    2388    36900 SH     SHARED    02   36900
D VALE CAP LTD                   NT RIO P VALE       91912C30    20949   325000 SH    SHARED         325000
D VALE CAP LTD                   NT RIO P VALE       91912C30    2942    45650 SH     SHARED    02   45650
D VALERO ENERGY CORP NEW         COM                 91913Y10    1009    14418 SH     SHARED                 14418
D VALERO ENERGY CORP NEW         COM                 91913Y10    100627  1436917 SH   SHARED         1435247  1670
D VALERO ENERGY CORP NEW         COM                 91913Y10    16583   236804 SH    SHARED    01   195538   41266
D VALERO ENERGY CORP NEW         COM                 91913Y10    2189    31267 SH     SHR/OTHR  01           31267
D VALERO ENERGY CORP NEW         COM                 91913Y10    17360   247902 SH    SHARED    02   247902
D VALERO ENERGY CORP NEW         COM                 91913Y10    62      890 SH       SHARED    04           890
D VALERO ENERGY CORP NEW         COM                 91913Y10    358     5120 SH      SHARED    05   5120
D VALERO ENERGY CORP NEW         COM                 91913Y10    16      240 SH       SHARED    05   240
D VALERO ENERGY CORP NEW         COM                 91913Y10    374     5350 SH      SHARED    06           5350
D VALERO ENERGY CORP NEW         COM                 91913Y10    81171   1159097 SH   SHARED    10   1082967  76130
D VALERO ENERGY CORP NEW         COM                 91913Y10    807     11528 SH     SHARED    14           11528
D VALERO ENERGY CORP NEW         COM                 91913Y10    1240    17715 SH     SHARED    20   13155    4560
D VALERO ENERGY CORP NEW         COM                 91913Y10    170     2435 SH      SHR/OTHR  20           2435
D VALERO ENERGY CORP NEW         COM                 91913Y10    161     2300 SH      SHARED    21   2300
D VALERO ENERGY CORP NEW         COM                 91913Y10    35      500 SH       SHR/OTHR  21           500
D VALERO ENERGY CORP NEW         COM                 91913Y10    179     2568 SH      SHARED    22   2318     250
D VALERO ENERGY CORP NEW         COM                 91913Y10    126     1800 SH      SHR/OTHR  22           1800
D VALERO ENERGY CORP NEW         COM                 91913Y10    2352    33590 SH     SHARED    23   27615    5975
D VALERO ENERGY CORP NEW         COM                 91913Y10    1683    24045 SH     SHR/OTHR  23           24045
D VALERO ENERGY CORP NEW         COM                 91913Y10    1176    16800 SH     SHARED    16800
D VALLEY FINL CORP VA            COM                 91962910    0       79 SH        SHARED         79
D VALLEY NATL BANCORP            COM                 91979410    371     19510 SH     SHARED         19510
D VALLEY NATL BANCORP            COM                 91979410    14      744 SH       SHARED         744
D VALLEY NATL BANCORP            COM                 91979410    130     6825 SH      SHARED    10   6825
D VALMONT INDS INC               COM                 92025310    50      570 SH       SHARED         570
D VALMONT INDS INC               COM                 92025310    1864    20920 SH     SHARED         20920
D VALMONT INDS INC               COM                 92025310    20739   232719 SH    SHARED    04   232719
D VALMONT INDS INC               COM                 92025310    22415   251516 SH    SHARED    05   251516
D VALMONT INDS INC               COM                 92025310    834     9365 SH      SHARED    06           9365
D VALMONT INDS INC               COM                 92025310    894     10037 SH     SHARED    10   10037
D VALPEY FISHER CORP             COM                 92034410    0       67 SH        SHARED         67
D VALSPAR CORP                   COM                 92035510    664     29472 SH     SHARED         29472
D VALSPAR CORP                   COM                 92035510    624     27700 SH     SHARED    01           27700
D VALSPAR CORP                   COM                 92035510    107     4763 SH      SHARED    02   4763
D VALSPAR CORP                   COM                 92035510    105     4700 SH      SHARED    10   4700
D VALSPAR CORP                   COM                 92035510    43      1934 SH      SHARED    21           1934
D VALUE LINE INC                 COM                 92043710    11      275 SH       SHARED         275
D VALUE LINE INC                 COM                 92043710    5       125 SH       SHARED    02   125
D VALUECLICK INC                 COM                 92046N10    48      221009 PRN   SHARED         221009
D VALUECLICK INC                 COM                 92046N10    7       32800 PRN    SHARED    01   1800     31000
D VALUECLICK INC                 COM                 92046N10    0       329 PRN      SHR/OTHR  01           329
D VALUECLICK INC                 COM                 92046N10    1       6189 PRN     SHARED    02   6189
```

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | VALUECLICK INC | COM | 92046N10 | 8 | 41000 PRN | SHARED | 04 | 41000 | |
| D | VALUECLICK INC | COM | 92046N10 | 11 | 50537 PRN | SHARED | 10 | 50537 | |
| D | VALUECLICK INC | COM | 92046N10 | 0 | 2159 PRN | SHARED | 21 | 2014 | 145 |
| D | VALUERICH INC | COM | 92046V10 | 0 | 42 SH | SHARED | | 42 | |
| D | VALUEVISION MEDIA INC | CL A | 92047K10 | 25 | 4102 SH | SHARED | | 4102 | |
| D | VALUEVISION MEDIA INC | CL A | 92047K10 | 48 | 7700 SH | SHARED | 02 | 7700 | |
| D | VAN KAMPEN HIGH INCOME TR II | SH BEN INT | 92091310 | 14 | 4051 SH | SHARED | | 4051 | |
| D | VAN KAMPEN TR INVT GRADE MUN | COM | 92092910 | 0 | 50 SH | SHARED | | 50 | |
| D | VAN KAMPEN SENIOR INCOME TR | COM | 92096110 | 9708 | 1394917 SH | SHARED | | 1394917 | |
| D | VAN KAMPEN CALIF VALUE MUN I | SH BEN INT | 92112B10 | 4 | 295 SH | SHARED | 20 | | 295 |
| D | VAN KAMPEN ADVANTAGE MUN II | SH BEN INT | 92112K10 | 331 | 27417 SH | SHARED | | 27417 | |
| D | VAN KAMPEN SELECT SECTOR MUN | COM | 92112M10 | 997 | 84800 SH | SHARED | | 84800 | |
| D | VAN KAMPEN PA VALUE MUN INCO | COM | 92112T10 | 268 | 20652 SH | SHARED | | 20652 | |
| D | VANCEINFO TECHNOLOGIES INC | ADR | 92156410 | 7197 | 799700 SH | SHARED | 10 | 799700 | |
| D | VANGUARD WHITEHALL FDS INC | HIGH DIV YLD | 92194640 | 14402 | 281847 SH | SHARED | | 281847 | |
| D | VANGUARD INTL EQUITY INDEX F | ALLWRLD EX US | 92204277 | 111 | 1900 SH | SHARED | 23 | 1900 | |
| D | VANGUARD INTL EQUITY INDEX F | EMR MKT ETF | 92204285 | 740 | 7101 SH | SHARED | | 7101 | |
| D | VANGUARD INTL EQUITY INDEX F | EMR MKT ETF | 92204285 | 281 | 2700 SH | SHARED | 23 | 2700 | |
| D | VANGUARD INTL EQUITY INDEX F | EMR MKT ETF | 92204285 | 88 | 850 SH | SHR/OTHR | 23 | | 850 |
| D | VANGUARD INTL EQUITY INDEX F | PACIFIC ETF | 92204286 | 235 | 3470 SH | SHARED | 23 | 3470 | |
| D | VANGUARD NATURAL RESOURCES L | COM UNIT | 92205P10 | 2950 | 184420 SH | SHARED | | 184420 | |
| D | VANTAGE ENERGY SERVICES INC | COM | 92209F10 | 8101 | 1066000 SH | SHARED | | 1066000 | |
| D | VANTAGE ENERGY SERVICES INC | *W EXP 99/99/999 | 92209F11 | 204 | 157127 SH | SHARED | | 157127 | |
| D | VANTAGE ENERGY SERVICES INC | UNIT 99/99/9999 | 92209F20 | 1246 | 139700 SH | SHARED | | 139700 | |
| D | VARIAN MED SYS INC | COM | 92220F10 | 6237 | 119578 SH | SHARED | | 119578 | |
| D | VARIAN MED SYS INC | COM | 92220F10 | 443 | 8511 SH | SHARED | 01 | 8511 | |
| D | VARIAN MED SYS INC | COM | 92220F10 | 149 | 2861 SH | SHARED | 02 | 2861 | |
| D | VARIAN MED SYS INC | COM | 92220F10 | 49 | 940 SH | SHARED | 06 | | 940 |
| D | VARIAN MED SYS INC | COM | 92220F10 | 3082 | 59100 SH | SHARED | 10 | 59100 | |
| D | VARIAN MED SYS INC | COM | 92220F10 | 160 | 3071 SH | SHARED | 14 | | 3071 |
| D | VARIAN MED SYS INC | COM | 92220F10 | 78 | 1500 SH | SHARED | 21 | | 1500 |
| D | VARIAN MED SYS INC | COM | 92220F10 | 104 | 2000 SH | SHR/OTHR | 23 | | 2000 |
| D | VARIAN INC | COM | 92220610 | 815 | 12491 SH | SHARED | | 12491 | |
| D | VARIAN INC | COM | 92220610 | 721 | 11050 SH | SHARED | 01 | 1150 | 9900 |
| D | VARIAN INC | COM | 92220610 | 144 | 2216 SH | SHARED | 02 | 2216 | |
| D | VARIAN INC | COM | 92220610 | 1835 | 28106 SH | SHARED | 10 | 28106 | |
| D | VARIAN SEMICONDUCTOR EQUIPMN | COM | 92220710 | 7539 | 203773 SH | SHARED | | 203773 | |
| D | VARIAN SEMICONDUCTOR EQUIPMN | COM | 92220710 | 830 | 22455 SH | SHARED | 01 | 22455 | |
| D | VARIAN SEMICONDUCTOR EQUIPMN | COM | 92220710 | 410 | 11100 SH | SHARED | 02 | 11100 | |
| D | VARIAN SEMICONDUCTOR EQUIPMN | COM | 92220710 | 20329 | 549436 SH | SHARED | 10 | 549436 | |
| D | VARSITY GROUP INC | COM | 92228110 | 0 | 473 SH | SHARED | | 473 | |
| D | VASCO DATA SEC INTL INC | COM | 92230Y10 | 550 | 19730 SH | SHARED | | 19730 | |
| D | VASCO DATA SEC INTL INC | COM | 92230Y10 | 446 | 16000 SH | SHARED | 01 | 16000 | |
| D | VASCO DATA SEC INTL INC | COM | 92230Y10 | 8 | 320 SH | SHARED | 02 | 320 | |
| D | VASCO DATA SEC INTL INC | COM | 92230Y10 | 251 | 9000 SH | SHARED | 10 | 9000 | |
| D | VASCO DATA SEC INTL INC | COM | 92230Y10 | 3 | 120 SH | SHARED | 21 | | 120 |
| D | VASCULAR SOLUTIONS INC | COM | 92231H10 | 2 | 334 SH | SHARED | | 334 | |
| D | VECTREN CORP | COM | 92240G10 | 1350 | 46565 SH | SHARED | | 46565 | |
| D | VECTREN CORP | COM | 92240G10 | 728 | 25100 SH | SHARED | 01 | 1700 | 23400 |
| D | VECTREN CORP | COM | 92240G10 | 833 | 28724 SH | SHARED | 02 | 28724 | |
| D | VECTREN CORP | COM | 92240G10 | 252 | 8719 SH | SHARED | 10 | 8719 | |
| D | VECTREN CORP | COM | 92240G10 | 354 | 12221 SH | SHARED | 21 | 7000 | 5221 |
| D | VECTOR GROUP LTD | NOTE 5.000%11/1 | 92240M40 | 15171 | 10775000 PRN | SHARED | | 0775000 | |
| D | VECTOR GROUP LTD | COM | 92240M10 | 217 | 10822 SH | SHARED | | 10822 | |
| D | VECTOR GROUP LTD | COM | 92240M10 | 158 | 7900 SH | SHARED | 01 | 7900 | |
| D | VECTOR GROUP LTD | COM | 92240M10 | 30179 | 1504469 SH | SHARED | 10 | 1504469 | |
| D | VAUGHAN FOODS INC | COM | 92241M10 | 0 | 60 SH | SHARED | | 60 | |
| D | VEECO INSTRS INC DEL | COM | 92241710 | 343 | 20551 SH | SHARED | | 20551 | |
| D | VEECO INSTRS INC DEL | COM | 92241710 | 37 | 2220 SH | SHARED | 01 | 2220 | |
| D | VEECO INSTRS INC DEL | COM | 92241710 | 225 | 13500 SH | SHARED | 10 | 13500 | |
| D | VELOCITY ASSET MGMT INC | COM | 92257E10 | 0 | 126 SH | SHARED | | 126 | |
| D | VELOCITY ASSET MGMT INC | COM | 92257E10 | 0 | 2 SH | SHARED | 02 | 2 | |
| D | VELOCITY EXPRESS CORP | COM PAR NEW | 92257T70 | 0 | 61 SH | SHARED | | 61 | |
| D | VENOCO INC | COM | 92275P30 | 1185 | 59496 SH | SHARED | | 59496 | |
| D | VENOCO INC | COM | 92275P30 | 47 | 2400 SH | SHARED | 01 | 2400 | |
| D | VENTAS INC | COM | 92276F10 | 2 | 56 SH | SHARED | | 56 | |
| D | VENTAS INC | COM | 92276F10 | 1071 | 23673 SH | SHARED | | 23673 | |
| D | VENTAS INC | COM | 92276F10 | 1419 | 31360 SH | SHARED | 01 | 31360 | |
| D | VENTAS INC | COM | 92276F10 | 1062 | 23490 SH | SHARED | 02 | 23490 | |
| D | VENTAS INC | COM | 92276F10 | 16240 | 358900 SH | SHARED | 10 | 358900 | |
| D | VENTAS INC | COM | 92276F10 | 209249 | 4624300 SH | SHARED | 11 | 2131600 | 2492700 |
| D | VENTANA MED SYS INC | COM | 92276H10 | 181399 | 2079548 SH | SHARED | | 2079548 | |
| D | VENTANA MED SYS INC | COM | 92276H10 | 819 | 9400 SH | SHARED | 01 | 700 | 8700 |
| D | VENTANA MED SYS INC | COM | 92276H10 | 123 | 1412 SH | SHARED | 02 | 1412 | |
| D | VENTANA MED SYS INC | COM | 92276H10 | 1474 | 16900 SH | SHARED | 10 | 16900 | |
| D | VANGUARD INDEX FDS | STK MRK ETF | 92290876 | 3530 | 24325 SH | SHR/OTHR | 23 | | 24325 |
| D | VEOLIA ENVIRONNEMENT | SPONSORED ADR | 92334N10 | 375 | 4132 SH | SHARED | | 4132 | |
| D | VERAZ NETWORKS INC | COM | 92335910 | 44 | 9256 SH | SHARED | | 9256 | |
| D | VERAZ NETWORKS INC | COM | 92335910 | 0 | 119 SH | SHARED | 02 | 119 | |
| D | VERASUN ENERGY CORP | COM | 92336G10 | 29684 | 1942732 SH | SHARED | | 1942732 | |
| D | VERASUN ENERGY CORP | COM | 92336G10 | 2732 | 178800 SH | SHARED | 10 | 178800 | |
| D | VERENIUM CORPORATION | NOTE 5.500% 4/0 | 92340PAA | 2175 | 2500000 PRN | SHARED | | 2500000 | |
| D | VERENIUM CORPORATION | COM | 92340P10 | 324 | 65116 SH | SHARED | | 65116 | |
| D | VERICHIP CORP | COM | 92342K10 | 0 | 85 SH | SHARED | | 85 | |
| D | VERI TEK INTL CORP | COM | 92342U10 | 1 | 218 SH | SHARED | | 218 | |
| D | VERIFONE HLDGS INC | COM | 92342V10 | 69 | 2986 SH | SHARED | | 2986 | |
| D | VERIFONE HLDGS INC | COM | 92342V10 | 25 | 1090 SH | SHARED | 01 | | 1090 |
| D | VERIFONE HLDGS INC | COM | 92342V10 | 90 | 3900 SH | SHARED | 02 | 3900 | |
| D | VERIFONE HLDGS INC | COM | 92342V10 | 58 | 2500 SH | SHARED | 10 | 2500 | |
| D | VERISIGN INC | COM | 92343E10 | 9026 | 240000 SH | SHARED | | 236400 | 3600 |
| D | VERISIGN INC | COM | 92343E10 | 1239 | 32954 SH | SHARED | 01 | 32954 | |
| D | VERISIGN INC | COM | 92343E10 | 7394 | 196612 SH | SHARED | 02 | 196612 | |
| D | VERISIGN INC | COM | 92343E10 | 3020 | 80300 SH | SHARED | 04 | 80300 | |
| D | VERISIGN INC | COM | 92343E10 | 4896 | 130200 SH | SHARED | 05 | 130200 | |
| D | VERISIGN INC | COM | 92343E10 | 1408 | 37440 SH | SHARED | 06 | | 37440 |
| D | VERISIGN INC | COM | 92343E10 | 5880 | 156346 SH | SHARED | 10 | 156346 | |
| D | VERISIGN INC | COM | 92343E10 | 1342 | 35700 SH | SHARED | 14 | | 35700 |
| D | VERISIGN INC | COM | 92343E10 | 22 | 600 SH | SHARED | 20 | 600 | |
| D | VERISIGN INC | COM | 92343E10 | 11 | 300 SH | SHARED | 22 | 300 | |
| D | VERISIGN INC | COM | 92343E10 | 16 | 450 SH | SHARED | 23 | 450 | |
| D | VERISIGN INC | COM | 92343E10 | 16 | 450 SH | SHR/OTHR | 23 | | 450 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 1124 | 25730 SH | SHARED | | 750 | 24980 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 21 | 500 SH | SHR/OTHR | | | 500 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 335015 | 7668010 SH | SHARED | | 7544160 | 123850 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 30070 | 688268 SH | SHARED | 01 | 572519 | 115749 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 1887 | 43200 SH | SHR/OTHR | 01 | | 43200 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 7407 | 169541 SH | SHARED | 02 | 169541 | |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 217 | 4979 SH | SHARED | 04 | | 4979 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 30146 | 690000 SH | SHARED | 04 | 690000 | |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 51 | 1170 SH | SHARED | 05 | 1170 | |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 24425 | 559067 SH | SHARED | 06 | | 559067 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 481566 | 11022345 SH | SHARED | 10 | 0738965 | 283380 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 3415 | 78186 SH | SHARED | 14 | | 78186 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 2621 | 60000 SH | SHARED | 15 | | 60000 |

| D | Issuer | Class | CUSIP | Value | Shares | SH/PRN | Disc | Mgr | Sole | Shared | None |
|---|---|---|---|---|---|---|---|---|---|---|---|
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 3647 | 83478 | SH | SHARED | 16 | 83478 | | |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 2749 | 62938 | SH | SHARED | 20 | 49764 | | 13174 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 144 | 3306 | SH | SHR/OTHR | 20 | | | 3306 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 245 | 5630 | SH | SHARED | 21 | 5250 | | 380 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 1371 | 31385 | SH | SHARED | 22 | 21902 | | 9483 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 129 | 2975 | SH | SHARED | 22 | | | 2975 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 3319 | 75983 | SH | SHARED | 23 | 54117 | | 21866 |
| D | VERIZON COMMUNICATIONS | COM | 92343V10 | 5475 | 125135 | SH | SHR/OTHR | 23 | | | 125135 |
| D | VERMILLION INC | COM | 92407M10 | 0 | 864 | SH | SHARED | | 864 | | |
| D | VERMONT PURE HLDGS LTD NEW | COM | 92423710 | 0 | 279 | SH | SHARED | | 279 | | |
| D | VERSANT CORP | COM | 92529110 | 6 | 222 | SH | SHARED | | 222 | | |
| D | VERSAR INC | COM | 92529710 | 1 | 165 | SH | SHARED | | 165 | | |
| D | VERSO TECHNOLOGIES INC | COM NEW | 92531720 | 0 | 1562 | SH | SHARED | | 1562 | | |
| D | VERTEX PHARMACEUTICALS INC | COM | 92532F10 | 2372 | 102120 | SH | SHARED | | 102120 | | |
| D | VERTEX PHARMACEUTICALS INC | COM | 92532F10 | 1258 | 54170 | SH | SHARED | 01 | 5270 | | 48900 |
| D | VERTEX PHARMACEUTICALS INC | COM | 92532F10 | 180 | 7771 | SH | SHARED | 02 | 7771 | | |
| D | VERTEX PHARMACEUTICALS INC | COM | 92532F10 | 4530 | 195008 | SH | SHARED | 04 | 195008 | | |
| D | VERTEX PHARMACEUTICALS INC | COM | 92532F10 | 16 | 700 | SH | SHARED | 06 | | | 700 |
| D | VERTEX PHARMACEUTICALS INC | COM | 92532F10 | 1200 | 51698 | SH | SHARED | | 51698 | | |
| D | VERTEX PHARMACEUTICALS INC | COM | 92532F10 | 6 | 300 | SH | SHARED | 23 | 300 | | |
| D | VERTICALNET INC | COM | 92532L40 | 0 | 42 | SH | SHARED | | 42 | | |
| D | VESTIN RLTY MTG II INC | COM | 92549X10 | 3 | 1011 | SH | SHARED | | 1011 | | |
| D | VESTIN REALTY MORTGAGE I INC | COM | 92549010 | 0 | 167 | SH | SHARED | | 167 | | |
| D | VIAD CORP | COM NEW | 92552R40 | 224 | 7100 | SH | SHARED | | 7100 | | |
| D | VIAD CORP | COM NEW | 92552R40 | 21 | 674 | SH | SHARED | 01 | 674 | | |
| D | VIAD CORP | COM NEW | 92552R40 | 287 | 9097 | SH | SHARED | 02 | 9097 | | |
| D | VIAD CORP | COM NEW | 92552R40 | 296 | 9400 | SH | SHARED | 10 | 9400 | | |
| D | VIASAT INC | COM | 92552V10 | 390 | 11356 | SH | SHARED | | 11356 | | |
| D | VIASAT INC | COM | 92552V10 | 42 | 1245 | SH | SHARED | 01 | 1245 | | |
| D | VIASAT INC | COM | 92552V10 | 99 | 2900 | SH | SHARED | 02 | 2900 | | |
| D | VIASAT INC | COM | 92552V10 | 33 | 963 | SH | SHARED | 10 | 963 | | |
| D | VIACOM INC NEW | CL A | 92553910 | 475 | 10819 | SH | SHARED | | 10819 | | |
| D | VIACOM INC NEW | CL A | 92553910 | 15 | 347 | SH | SHARED | 01 | 347 | | |
| D | VIACOM INC NEW | CL A | 92553910 | 0 | 3 | SH | SHARED | 02 | 3 | | |
| D | VIACOM INC NEW | CL B | 92553J20 | 37664 | 857569 | SH | SHARED | | 857569 | | |
| D | VIACOM INC NEW | CL B | 92553J20 | 3755 | 85516 | SH | SHARED | 01 | 82513 | | 3003 |
| D | VIACOM INC NEW | CL B | 92553J20 | 28 | 650 | SH | SHR/OTHR | 01 | | | 650 |
| D | VIACOM INC NEW | CL B | 92553J20 | 577 | 13152 | SH | SHARED | 02 | 13152 | | |
| D | VIACOM INC NEW | CL B | 92553J20 | 6588 | 150000 | SH | SHARED | 04 | 150000 | | |
| D | VIACOM INC NEW | CL B | 92553J20 | 9 | 215 | SH | SHARED | 05 | 215 | | |
| D | VIACOM INC NEW | CL B | 92553J20 | 294 | 6710 | SH | SHARED | 06 | | | 6710 |
| D | VIACOM INC NEW | CL B | 92553J20 | 13092 | 298091 | SH | SHARED | 10 | 298091 | | |
| D | VIACOM INC NEW | CL B | 92553J20 | 2411 | 54900 | SH | SHARED | 14 | | | 54900 |
| D | VIACOM INC NEW | CL B | 92553J20 | 596 | 13575 | SH | SHARED | 15 | | | 13575 |
| D | VIACOM INC NEW | CL B | 92553J20 | 250 | 5700 | SH | SHARED | 19 | | | 5700 |
| D | VIACOM INC NEW | CL B | 92553J20 | 18 | 425 | SH | SHARED | 20 | | | 425 |
| D | VIACOM INC NEW | CL B | 92553J20 | 233 | 5310 | SH | SHARED | 21 | 5310 | | |
| D | VIACOM INC NEW | CL B | 92553J20 | 343 | 7812 | SH | SHARED | 22 | 7812 | | |
| D | VIACOM INC NEW | CL B | 92553J20 | 7 | 175 | SH | SHR/OTHR | 22 | | | 175 |
| D | VIACOM INC NEW | CL B | 92553J20 | 39 | 900 | SH | SHARED | 23 | 400 | | 500 |
| D | VIACOM INC NEW | CL B | 92553J20 | 418 | 9528 | SH | SHR/OTHR | 23 | | | 9528 |
| D | VIA PHARMACEUTICALS INC | COM | 92554T10 | 0 | 105 | SH | SHARED | | 105 | | |
| D | VICAL INC | COM | 92560210 | 23 | 5474 | SH | SHARED | | 5474 | | |
| D | VICON INDS INC | COM | 92581110 | 1 | 165 | SH | SHARED | | 165 | | |
| D | VICOR CORP | COM | 92581510 | 188 | 12100 | SH | SHARED | 02 | 12100 | | |
| D | VICOR CORP | COM | 92581510 | 10 | 700 | SH | SHARED | 10 | 700 | | |
| D | VICTORY ACQUISITION CORP | COM | 92644D10 | 8413 | 868300 | SH | SHARED | | 868300 | | |
| D | VICTORY ACQUISITION CORP | *W EXP 04/24/201 | 92644D11 | 19 | 11763 | SH | SHARED | | 11763 | | |
| D | VICTORY ACQUISITION CORP | UNIT 99/99/9999 | 92644D20 | 141 | 12700 | SH | SHARED | 02 | 12700 | | |
| D | VIDEO DISPLAY CORP | COM | 92655510 | 0 | 120 | SH | SHARED | | 120 | | |
| D | VIDESH SANCHAR NIGAM LTD | SPON ADR NEW | 92659060 | 644 | 17116 | SH | SHARED | | 17116 | | |
| D | VIEWPOINT CORP | COM | 92672710 | 2 | 2168 | SH | SHARED | | 2168 | | |
| D | VIEWPOINT FINL GROUP | COM | 92672T10 | 4267 | 258143 | SH | SHARED | | 258143 | | |
| D | VIGNETTE CORP | COM NEW | 92673440 | 0 | 18 | SH | SHARED | | 18 | | |
| D | VIGNETTE CORP | COM NEW | 92673440 | 367 | 25184 | SH | SHARED | | 25184 | | |
| D | VIGNETTE CORP | COM NEW | 92673440 | 33 | 2295 | SH | SHARED | 21 | | | 2295 |
| D | VIMICRO INTL CORP | ADR | 92718N10 | 16 | 4500 | SH | SHARED | | 4500 | | |
| D | VINEYARD NATL BANCORP | COM | 92742610 | 2 | 275 | SH | SHARED | | 275 | | |
| D | VION PHARMACEUTICALS INC | COM | 92762410 | 21 | 38236 | SH | SHARED | | 38236 | | |
| D | VIRAGE LOGIC CORP | COM | 92763R10 | 3 | 411 | SH | SHARED | | 411 | | |
| D | VIRCO MFG CO | COM | 92765110 | 2 | 350 | SH | SHARED | | 350 | | |
| D | VIRGIN MEDIA INC | COM | 92769L10 | 3 | 194 | SH | SHARED | | 194 | | |
| D | VIRGIN MEDIA INC | COM | 92769L10 | 1432 | 83595 | SH | SHARED | | 83595 | | |
| D | VIRGIN MEDIA INC | COM | 92769L10 | 263 | 15377 | SH | SHARED | 01 | 15377 | | |
| D | VIRGIN MEDIA INC | COM | 92769L10 | 40 | 2350 | SH | SHARED | 06 | | | 2350 |
| D | VIRGIN MEDIA INC | COM | 92769L10 | 1358 | 79232 | SH | SHARED | 10 | 79232 | | |
| D | VIRGIN MEDIA INC | COM | 92769L10 | 217 | 12700 | SH | SHARED | 14 | | | 12700 |
| D | VIRGIN MEDIA INC | *W EXP 99/99/999 | 92769L11 | 0 | 5 | SH | SHARED | | 5 | | |
| D | VIRGIN MEDIA INC | *W EXP 99/99/999 | 92769L11 | 0 | 457 | SH | SHARED | | 457 | | |
| D | VIRGIN MOBILE USA INC | CL A | 92769R10 | 0 | 76 | SH | SHARED | | 76 | | |
| D | VIRGIN MOBILE USA INC | CL A | 92769R10 | 16002 | 1800000 | SH | SHARED | 10 | 1800000 | | |
| D | VIRGIN MOBILE USA INC | CL A | 92769R10 | 315 | 35500 | SH | SHARED | 14 | | | 35500 |
| D | VIRGINIA COMM BANCORP INC | COM | 92778Q10 | 1 | 94 | SH | SHARED | | 94 | | |
| D | VIRGINIA FINL GROUP INC | COM | 92781010 | 5 | 368 | SH | SHARED | | 368 | | |
| D | VISION-SCIENCES INC DEL | COM | 92791210 | 0 | 432 | SH | SHARED | | 432 | | |
| D | VISTA GOLD CORP | COM NEW | 92792630 | 4 | 835 | SH | SHARED | | 835 | | |
| D | VIROPHARMA INC | COM | 92824110 | 231 | 29187 | SH | SHARED | | 29187 | | |
| D | VIROPHARMA INC | COM | 92824110 | 104 | 13220 | SH | SHARED | 01 | 13220 | | |
| D | VIROPHARMA INC | COM | 92824110 | 115 | 14500 | SH | SHARED | 02 | 14500 | | |
| D | VIROPHARMA INC | COM | 92824110 | 797 | 100500 | SH | SHARED | 10 | 100500 | | |
| D | VIRTUALSCOPICS INC | COM | 92826910 | 0 | 165 | SH | SHARED | | 165 | | |
| D | VISHAY INTERTECHNOLOGY INC | NOTE 3.625% 8/0 | 928298AF | 36964 | 37150000 | PRN | SHARED | | | | 7150000 |
| D | VISHAY INTERTECHNOLOGY INC | COM | 92829H10 | 43 | 385498 | PRN | SHARED | | 385498 | | |
| D | VISHAY INTERTECHNOLOGY INC | COM | 92829H10 | 9 | 86087 | PRN | SHARED | 01 | 25300 | | 60787 |
| D | VISHAY INTERTECHNOLOGY INC | COM | 92829H10 | 2 | 25043 | PRN | SHARED | 02 | 25043 | | |
| D | VISHAY INTERTECHNOLOGY INC | COM | 92829H10 | 2 | 20900 | PRN | SHARED | 10 | 20900 | | |
| D | VISICU INC | COM | 92831L20 | 0 | 72 | SH | SHARED | | 72 | | |
| D | VISTEON CORP | COM | 92839010 | 6029 | 1373496 | SH | SHARED | | 1373496 | | |
| D | VISTEON CORP | COM | 92839010 | 16 | 3710 | SH | SHARED | | | | 3710 |
| D | VISTEON CORP | COM | 92839010 | 234 | 53475 | SH | SHARED | 02 | 53475 | | |
| D | VISTEON CORP | COM | 92839010 | 115 | 26300 | SH | SHARED | 10 | 26300 | | |
| D | VISTEON CORP | COM | 92839010 | 2 | 471 | SH | SHARED | 20 | | | 471 |
| D | VISTEON CORP | COM | 92839010 | 1 | 300 | SH | SHR/OTHR | 23 | | | 300 |
| D | VISTACARE INC | CL A | 92839Y10 | 124 | 17136 | SH | SHARED | | 17136 | | |
| D | VITAL SIGNS INC | COM | 92846910 | 119 | 2344 | SH | SHARED | | 2344 | | |
| D | VITAL SIGNS INC | COM | 92846910 | 52 | 1025 | SH | SHARED | 02 | 1025 | | |
| D | VITRAN CORP INC | COM | 92850810 | 4 | 294 | SH | SHARED | | 294 | | |
| D | VITRO SOCIEDAD ANONIMA | SPONSORED ADR | 92850230 | 4 | 664 | SH | SHARED | | 664 | | |
| D | VITRO SOCIEDAD ANONIMA | SPONSORED ADR | 92850230 | 0 | 10 | SH | SHARED | 02 | 10 | | |
| D | VIVO PARTICIPACOES S A | SPON ADR PFD | 92855S10 | 89 | 16353 | SH | SHARED | | 16353 | | |
| D | VIVO PARTICIPACOES S A | SPON ADR PFD | 92855S10 | 3001 | 548650 | SH | SHARED | 04 | 548650 | | |
| D | VIVUS INC | COM | 92855110 | 2880 | 556035 | SH | SHARED | | 556035 | | |
| D | VMWARE INC | CL A | 92856340 | 2745 | 32301 | SH | SHARED | | 32301 | | |
| D | VMWARE INC | CL A COM | 92856340 | 84 | 1000 | SH | SHARED | 01 | | | 1000 |

| D | Name | Title of Class | CUSIP | Value | Amount | SH/PRN | Discretion | Code | Col A | Col B |
|---|------|---------------|-------|-------|--------|--------|-----------|------|-------|-------|
| D | VMWARE INC | CL A COM | 92856340 | 121 | 1427 | SH | SHARED | 02 | 1427 | |
| D | VMWARE INC | CL A COM | 92856340 | 35823 | 421500 | SH | SHARED | 10 | 405900 | 15600 |
| D | VMWARE INC | CL A COM | 92856340 | 42 | 500 | SH | SHARED | 24 | 500 | |
| D | VNUS MED TECHNOLOGIES INC | COM | 92856610 | 4 | 329 | SH | SHARED | | 329 | |
| D | VNUS MED TECHNOLOGIES INC | COM | 92856610 | 30 | 2100 | SH | SHARED | 02 | 2100 | |
| D | VODAFONE GROUP PLC NEW | SPONS ADR NEW | 92857W20 | 24652 | 660563 | SH | SHARED | | 660563 | |
| D | VODAFONE GROUP PLC NEW | SPONS ADR NEW | 92857W20 | 1382 | 37043 | SH | SHARED | 01 | 21694 | 15349 |
| D | VODAFONE GROUP PLC NEW | SPONS ADR NEW | 92857W20 | 224 | 6011 | SH | SHR/OTHR | 01 | 6011 | |
| D | VODAFONE GROUP PLC NEW | SPONS ADR NEW | 92857W20 | 35 | 962 | SH | SHARED | 10 | 962 | |
| D | VODAFONE GROUP PLC NEW | SPONS ADR NEW | 92857W20 | 941 | 25218 | SH | SHARED | 20 | 3750 | 21468 |
| D | VODAFONE GROUP PLC NEW | SPONS ADR NEW | 92857W20 | 800 | 21445 | SH | SHR/OTHR | 20 | | 21445 |
| D | VODAFONE GROUP PLC NEW | SPONS ADR NEW | 92857W20 | 24 | 644 | SH | SHARED | 21 | 481 | 163 |
| D | VODAFONE GROUP PLC NEW | SPONS ADR NEW | 92857W20 | 212 | 5685 | SH | SHARED | 22 | 4559 | 1126 |
| D | VODAFONE GROUP PLC NEW | SPONS ADR NEW | 92857W20 | 575 | 15413 | SH | SHARED | 23 | 15413 | |
| D | VODAFONE GROUP PLC NEW | SPONS ADR NEW | 92857W20 | 961 | 25754 | SH | SHR/OTHR | 23 | | 25754 |
| D | VOCUS INC | COM | 92858J10 | 483 | 14000 | SH | SHARED | | 14000 | |
| D | VOCUS INC | COM | 92858J10 | 321 | 9300 | SH | SHARED | 02 | 9300 | |
| D | VOLCOM INC | COM | 92864M10 | 0 | 15 | SH | SHARED | | 15 | |
| D | VOLCOM INC | COM | 92864N10 | 108 | 4928 | SH | SHARED | 02 | 4928 | |
| D | VOLCANO CORPORATION | COM | 92864M10 | 10800 | 490261 | SH | SHARED | 10 | 490261 | |
| D | VOLCANO CORPORATION | COM | 92864510 | 10 | 824 | SH | SHARED | | 824 | |
| D | VOLT INFORMATION SCIENCES IN | COM | 92870310 | 733 | 40159 | SH | SHARED | | 40159 | |
| D | VOLT INFORMATION SCIENCES IN | COM | 92870310 | 19 | 1050 | SH | SHARED | 02 | 1050 | |
| D | VOLTERRA SEMICONDUCTOR CORP | COM | 92870810 | 0 | 83 | SH | SHARED | | 83 | |
| D | VOLTERRA SEMICONDUCTOR CORP | COM | 92870810 | 4 | 371 | SH | SHARED | 20 | 371 | |
| D | VONAGE HLDGS CORP | COM | 92886T20 | 134 | 58607 | SH | SHARED | | 58607 | |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 247 | 2816 | SH | SHARED | | 2816 | |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 33810 | 384429 | SH | SHARED | | 376229 | 8200 |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 6679 | 75946 | SH | SHARED | 01 | 65295 | 10651 |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 899 | 10230 | SH | SHR/OTHR | 01 | 10230 | |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 1799 | 20458 | SH | SHARED | 02 | 20458 | |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 6 | 70 | SH | SHARED | 05 | 70 | |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 40597 | 461602 | SH | SHARED | 10 | 451817 | 9785 |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 537562 | 6112133 | SH | SHARED | 11 | 3638011 | 2474122 |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 175 | 2000 | SH | SHARED | 14 | 2000 | |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 2975 | 33831 | SH | SHARED | 19 | 33831 | |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 1707 | 19415 | SH | SHARED | 20 | 15360 | 4055 |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 190 | 2165 | SH | SHR/OTHR | 20 | | 2165 |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 35 | 400 | SH | SHARED | 21 | 400 | |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 82 | 937 | SH | SHARED | 22 | 690 | 247 |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 37 | 425 | SH | SHR/OTHR | 22 | 425 | |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 651 | 7403 | SH | SHARED | 23 | 7057 | 346 |
| D | VORNADO RLTY TR | SH BEN INT | 92904210 | 151 | 1727 | SH | SHARED | 23 | | 1727 |
| D | VORNADO RLTY L P | DEB 3.875% 4/1 | 929043AC | 42892 | 38195008 | PRN | SHARED | | 8195008 | |
| D | VORNADO RLTY L P | DEB 3.875% 4/1 | 929043AC | 112 | 100000 | PRN | SHARED | 01 | | 100000 |
| D | VORNADO RLTY L P | DEB 3.875% 4/1 | 929043AC | 6556 | 5838000 | PRN | SHARED | 02 | 5838000 | |
| D | VORNADO RLTY L P | DBCV 3.625%11/1 | 929043AE | 7206 | 7850000 | PRN | SHARED | | 7850000 | |
| D | VOXWARE INC | COM NEW | 92906L50 | 0 | 78 | SH | SHARED | | 78 | |
| D | VOTORANTIM CELULOSE E PAPEL | SPONSORED ADR | 92906910 | 1137 | 38170 | SH | SHARED | | 38170 | |
| D | VOTORANTIM CELULOSE E PAPEL | SPONSORED ADR | 92906910 | 258 | 8660 | SH | SHARED | | 7260 | 1400 |
| D | VOTORANTIM CELULOSE E PAPEL | SPONSORED ADR | 92906910 | 16639 | 558200 | SH | SHARED | 04 | 558200 | |
| D | VOTORANTIM CELULOSE E PAPEL | SPONSORED ADR | 92906910 | 5505 | 184700 | SH | SHARED | 10 | 184700 | |
| D | VULCAN MATLS CO | COM | 92916010 | 20078 | 253875 | SH | SHARED | | 253875 | |
| D | VULCAN MATLS CO | COM | 92916010 | 3533 | 44683 | SH | SHARED | 01 | 38804 | 5879 |
| D | VULCAN MATLS CO | COM | 92916010 | 68 | 865 | SH | SHR/OTHR | 01 | 865 | |
| D | VULCAN MATLS CO | COM | 92916010 | 257 | 3262 | SH | SHARED | 02 | 3262 | |
| D | VULCAN MATLS CO | COM | 92916010 | 3 | 40 | SH | SHARED | 05 | 40 | |
| D | VULCAN MATLS CO | COM | 92916010 | 79 | 1000 | SH | SHARED | 06 | | 1000 |
| D | VULCAN MATLS CO | COM | 92916010 | 6004 | 75920 | SH | SHARED | 10 | 75920 | |
| D | VULCAN MATLS CO | COM | 92916010 | 384 | 4865 | SH | SHARED | 20 | 4865 | |
| D | VULCAN MATLS CO | COM | 92916010 | 61 | 775 | SH | SHARED | 21 | 775 | |
| D | VULCAN MATLS CO | COM | 92916010 | 63 | 800 | SH | SHARED | 22 | 800 | |
| D | VULCAN MATLS CO | COM | 92916010 | 242 | 3060 | SH | SHR/OTHR | 22 | | 3060 |
| D | VULCAN MATLS CO | COM | 92916010 | 72 | 915 | SH | SHR/OTHR | 23 | | 915 |
| D | W & T OFFSHORE INC | COM | 92922P10 | 755 | 25211 | SH | SHARED | | 25211 | |
| D | W & T OFFSHORE INC | COM | 92922P10 | 641 | 21400 | SH | SHARED | 01 | 21400 | |
| D | W & T OFFSHORE INC | COM | 92922P10 | 10 | 350 | SH | SHARED | 02 | 350 | |
| D | W & T OFFSHORE INC | COM | 92922P10 | 451 | 15080 | SH | SHARED | 10 | 15080 | |
| D | WCI CMNTYS INC | COM | 92923C10 | 545 | 144404 | SH | SHARED | | 144404 | |
| D | WCI CMNTYS INC | COM | 92923C10 | 793 | 209817 | SH | SHARED | 02 | 209817 | |
| D | WCI CMNTYS INC | COM | 92923C10 | 43 | 11600 | SH | SHARED | 10 | 11600 | |
| D | WD-40 CO | COM | 92923610 | 58 | 1551 | SH | SHARED | | 1551 | |
| D | WD-40 CO | COM | 92923610 | 2 | 70 | SH | SHARED | 01 | 70 | |
| D | WD-40 CO | COM | 92923610 | 42 | 1125 | SH | SHARED | | 1125 | |
| D | WGL HLDGS INC | COM | 92924P10 | 472 | 14438 | SH | SHARED | | 14438 | |
| D | WGL HLDGS INC | COM | 92924P10 | 520 | 15900 | SH | SHARED | 01 | 1600 | 14300 |
| D | WGL HLDGS INC | COM | 92924P10 | 76 | 2342 | SH | SHARED | 02 | 2342 | |
| D | WGL HLDGS INC | COM | 92924P10 | 2668 | 81442 | SH | SHARED | 10 | 81442 | |
| D | WGL HLDGS INC | COM | 92924P10 | 39 | 1200 | SH | SHARED | 23 | 1200 | |
| D | W-H ENERGY SVCS INC | COM | 92925E10 | 17774 | 316223 | SH | SHARED | 10 | 316223 | |
| D | W-H ENERGY SVCS INC | COM | 92925E10 | 720 | 12820 | SH | SHARED | 02 | 12820 | |
| D | W-H ENERGY SVCS INC | COM | 92925E10 | 697 | 12400 | SH | SHARED | 10 | 12400 | |
| D | W HLDG CO INC | COM | 92925110 | 8 | 6688 | SH | SHARED | | 6688 | |
| D | W HLDG CO INC | COM | 92925110 | 26 | 22250 | SH | SHARED | 01 | | 22250 |
| D | W HLDG CO INC | COM | 92925110 | 27 | 22800 | SH | SHARED | 10 | 22800 | |
| D | WCA WASTE CORP | COM | 92926K10 | 5 | 923 | SH | SHARED | | 923 | |
| D | WABCO HLDGS INC | COM | 92927K10 | 17 | 346 | SH | SHARED | | 346 | |
| D | WABCO HLDGS INC | COM | 92927K10 | 13830 | 276117 | SH | SHARED | | 276117 | |
| D | WABCO HLDGS INC | COM | 92927K10 | 215 | 4309 | SH | SHARED | 01 | 4309 | |
| D | WABCO HLDGS INC | COM | 92927K10 | 601 | 11999 | SH | SHARED | 02 | 11999 | |
| D | WABCO HLDGS INC | COM | 92927K10 | 6860 | 136970 | SH | SHARED | 04 | 136970 | |
| D | WABCO HLDGS INC | COM | 92927K10 | 7920 | 158127 | SH | SHARED | 05 | 158127 | |
| D | WABCO HLDGS INC | COM | 92927K10 | 230 | 4608 | SH | SHARED | 06 | | 4608 |
| D | WABCO HLDGS INC | COM | 92927K10 | 738 | 14734 | SH | SHARED | 10 | 14734 | |
| D | WABCO HLDGS INC | COM | 92927K10 | 70 | 1411 | SH | SHARED | 20 | | 1411 |
| D | WABCO HLDGS INC | COM | 92927K10 | 273 | 5470 | SH | SHARED | 21 | | 5470 |
| D | WJ COMMUNICATIONS INC | COM | 92928410 | 0 | 1132 | SH | SHARED | | 1132 | |
| D | WMS INDS INC | NOTE 2.750% 7/1 | 92929TAE | 9859 | 3500000 | PRN | SHARED | 02 | 3500000 | |
| D | WMS INDS INC | COM | 92929710 | 2294 | 62613 | SH | SHARED | | 62613 | |
| D | WMS INDS INC | COM | 92929710 | 123 | 3370 | SH | SHARED | 01 | 3370 | |
| D | WMS INDS INC | COM | 92929710 | 2399 | 65500 | SH | SHARED | 02 | 65500 | |
| D | WMS INDS INC | COM | 92929710 | 2241 | 61165 | SH | SHARED | 10 | 61165 | |
| D | W P CAREY & CO LLC | COM | 92930Y10 | 5751 | 173239 | SH | SHARED | | 173239 | |
| D | WPP GROUP PLC | SPON ADR 0905 | 92930940 | 24 | 385 | SH | SHARED | | 385 | |
| D | WPP GROUP PLC | SPON ADR 0905 | 92930940 | 21870 | 340189 | SH | SHARED | | 340189 | |
| D | WPP GROUP PLC | SPON ADR 0905 | 92930940 | 10 | 167 | SH | SHARED | 01 | 17 | 150 |
| D | WPP GROUP PLC | SPON ADR 0905 | 92930940 | 1581 | 24600 | SH | SHARED | 10 | 24600 | |
| D | WPP GROUP PLC | SPON ADR 0905 | 92930940 | 52 | 810 | SH | SHARED | 21 | 810 | |
| D | WPCS INTL INC | COM NEW | 92931L20 | 3 | 361 | SH | SHARED | | 361 | |
| D | WNS HOLDINGS LTD | SPON ADR | 92932H10 | 60 | 3700 | SH | SHARED | | 3700 | |
| D | WSI INDS INC | COM | 92932Q10 | 0 | 70 | SH | SHARED | | 70 | |
| D | WSFS FINL CORP | COM | 92932810 | 153 | 3060 | SH | SHARED | | 3060 | |
| D | WSFS FINL CORP | COM | 92932810 | 35 | 700 | SH | SHARED | 01 | 700 | |
| D | WSFS FINL CORP | COM | 92932810 | 180 | 3600 | SH | SHARED | 02 | 3600 | |

```
D WSFS FINL CORP              COM            92932810    1470   29300 SH    SHARED     10    29300
D WSB FINANCIAL GROUP INC     COM            92933210       0     137 SH    SHARED           137
D WUXI PHARMATECH CAYMAN INC  SPONS ADR SHS  92935210      28     961 SH    SHARED           961
D WUXI PHARMATECH CAYMAN INC  SPONS ADR SHS  92935210    1245   42600 SH    SHARED     01    42600
D WUXI PHARMATECH CAYMAN INC  SPONS ADR SHS  92935210    5462  186800 SH    SHARED     10   186800
D WUXI PHARMATECH CAYMAN INC  SPONS ADR SHS  92935210     777   26600 SH    SHARED     24    26600
D WVS FINL CORP               COM            92935810       0      52 SH    SHARED            52
D WABASH NATL CORP            COM            92956610      29    3808 SH    SHARED          3808
D WABASH NATL CORP            COM            92956610      71    9300 SH    SHARED     10    9300
D WABTEC CORP                 COM            92974010     476   13848 SH    SHARED         13848
D WABTEC CORP                 COM            92974010     723   20995 SH    SHARED     01    6995         14000
D WABTEC CORP                 COM            92974010      92    2684 SH    SHARED     02    2684
D WABTEC CORP                 COM            92974010     626   18200 SH    SHARED     10   18200
D WACHOVIA CORP NEW           COM            92990310   99169 2607665 SH    SHARED       2607665
D WACHOVIA CORP NEW           COM            92990310   10019  263463 SH    SHARED     01  242006        21457
D WACHOVIA CORP NEW           COM            92990310     335    8814 SH    SHR/OTHR   01                8814
D WACHOVIA CORP NEW           COM            92990310    7262  190975 SH    SHARED     02  190975
D WACHOVIA CORP NEW           COM            92990310     731   19235 SH    SHARED     05   19235
D WACHOVIA CORP NEW           COM            92990310     741   19495 SH    SHARED     06                19495
D WACHOVIA CORP NEW           COM            92990310  442375 11632286 SH   SHARED     10 1594486        37800
D WACHOVIA CORP NEW           COM            92990310    1136   29874 SH    SHARED     14                29874
D WACHOVIA CORP NEW           COM            92990310     617   16235 SH    SHARED     20    8560         7675
D WACHOVIA CORP NEW           COM            92990310     102    2690 SH    SHR/OTHR   20                2690
D WACHOVIA CORP NEW           COM            92990310     231    6092 SH    SHARED     21    5572         520
D WACHOVIA CORP NEW           COM            92990310     345    9090 SH    SHARED     22    2564         6526
D WACHOVIA CORP NEW           COM            92990310      24     650 SH    SHR/OTHR   22                650
D WACHOVIA CORP NEW           COM            92990310    1452   38185 SH    SHARED     23   35485         2700
D WACHOVIA CORP NEW           COM            92990310    1120   29458 SH    SHR/OTHR   23                29458
D WACOAL HOLDINGS CORP        ADR            93000420      16     250 SH    SHARED           250
D WACOAL HOLDINGS CORP        ADR            93000420       4      73 SH    SHARED     21                73
D WADDELL & REED FINL INC     CL A          93005910    3214   89058 SH    SHARED         89058
D WADDELL & REED FINL INC     CL A          93005910    1009   27966 SH    SHARED     01    3266        24700
D WADDELL & REED FINL INC     CL A          93005910     142    3952 SH    SHARED     02    3952
D WADDELL & REED FINL INC     CL A          93005910   53932 1494400 SH    SHARED     10 1494400
D WADDELL & REED FINL INC     CL A          93005910      65    1806 SH    SHARED     21    1806
D WAINWRIGHT BK&TR CO BOSTON M COM          93070510       1     146 SH    SHARED           146
D WAL MART STORES INC         COM           93114210    1426   30022 SH    SHARED         23012         7010
D WAL MART STORES INC         COM           93114210  404530 8511057 SH    SHARED      8237957        273100
D WAL MART STORES INC         COM           93114210   32169  676817 SH    SHARED     01  555174       121643
D WAL MART STORES INC         COM           93114210    3251   68418 SH    SHR/OTHR   01                68418
D WAL MART STORES INC         COM           93114210  207618 4368154 SH    SHARED     02 4368154
D WAL MART STORES INC         COM           93114210      49    1050 SH    SHARED     04                1050
D WAL MART STORES INC         COM           93114210      49    1040 SH    SHARED     05
D WAL MART STORES INC         COM           93114210    1144   24070 SH    SHARED     06                24070
D WAL MART STORES INC         COM           93114210  111319 2342096 SH    SHARED     10 2148796       193300
D WAL MART STORES INC         COM           93114210    4291   90299 SH    SHARED     14                90299
D WAL MART STORES INC         COM           93114210     180    3800 SH    SHARED     15                3800
D WAL MART STORES INC         COM           93114210      79    1678 SH    SHARED     19                1678
D WAL MART STORES INC         COM           93114210    3337   70226 SH    SHARED     20   14475        55751
D WAL MART STORES INC         COM           93114210    1107   23291 SH    SHR/OTHR   20                23291
D WAL MART STORES INC         COM           93114210     548   11545 SH    SHARED     21   11545
D WAL MART STORES INC         COM           93114210     735   15475 SH    SHARED     21                15475
D WAL MART STORES INC         COM           93114210     299    6300 SH    SHARED     22    3965         2335
D WAL MART STORES INC         COM           93114210     303    6382 SH    SHR/OTHR   22                6382
D WAL MART STORES INC         COM           93114210    4956  104289 SH    SHARED     23  103289         1000
D WAL MART STORES INC         COM           93114210    8475  178312 SH    SHR/OTHR   23                178312
D WAL MART STORES INC         COM           93114210     365    7700 SH    SHARED     24    7700
D WALGREEN CO                 COM           93142210   37254  978325 SH    SHARED        978325
D WALGREEN CO                 COM           93142210    5198  136505 SH    SHARED     01  130205         6300
D WALGREEN CO                 COM           93142210    1308   34354 SH    SHR/OTHR   01                34354
D WALGREEN CO                 COM           93142210    4819  126552 SH    SHARED     02  126552
D WALGREEN CO                 COM           93142210   76674 2013500 SH    SHARED     04 2013500
D WALGREEN CO                 COM           93142210    1297   34070 SH    SHARED     05   34070
D WALGREEN CO                 COM           93142210     400   10510 SH    SHARED     06                10510
D WALGREEN CO                 COM           93142210   67665 1776924 SH    SHARED     10 1729424        47500
D WALGREEN CO                 COM           93142210    1108   29099 SH    SHARED     14   24000         5099
D WALGREEN CO                 COM           93142210      38    1000 SH    SHARED     19                1000
D WALGREEN CO                 COM           93142210     162    4260 SH    SHARED     20    3300         960
D WALGREEN CO                 COM           93142210     993   26100 SH    SHR/OTHR   20                26100
D WALGREEN CO                 COM           93142210     374    9842 SH    SHARED     21    9842
D WALGREEN CO                 COM           93142210      51    1350 SH    SHARED     22                1350
D WALGREEN CO                 COM           93142210      50    1325 SH    SHR/OTHR   22
D WALGREEN CO                 COM           93142210     575   15100 SH    SHARED     23   15100
D WALGREEN CO                 COM           93142210    3889  102137 SH    SHR/OTHR   23                102137
D WALGREEN CO                 COM           93142210      63    1665 SH    SHARED     24    1665
D WALTER INDS INC             NOTE  3.750% 5/0 93317QAC  2898 750000 PRN   SHARED     02  750000
D WALTER INDS INC             COM           93317Q10    2824   78617 SH    SHARED         78617
D WALTER INDS INC             COM           93317Q10     760   21160 SH    SHARED     01   21160
D WALTER INDS INC             COM           93317Q10     134    3750 SH    SHARED     02    3750
D WALTER INDS INC             COM           93317Q10   14472  402800 SH    SHARED     10  402800
D WALTER INDS INC             COM           93317Q10      11     320 SH    SHARED     21                320
D WARNACO GROUP INC           COM NEW       93439040     739   21250 SH    SHARED         21250
D WARNACO GROUP INC           COM NEW       93439040     657   18900 SH    SHARED     01    5100        13800
D WARNACO GROUP INC           COM NEW       93439040      75    2158 SH    SHARED     02    2158
D WARNACO GROUP INC           COM NEW       93439040    1815   52171 SH    SHARED     10   52171
D WARNER MUSIC GROUP CORP     COM           93455010       9    1579 SH    SHARED          1579
D WARNER MUSIC GROUP CORP     COM           93455010      33    5550 SH    SHARED     02    5550
D WARNER MUSIC GROUP CORP     COM           93455010     246   40623 SH    SHARED     10   24923        15700
D WARNER MUSIC GROUP CORP     COM           93455010    1184  195500 SH    SHARED     14  195500
D WARREN RES INC              COM           93564A10     169   11998 SH    SHARED         11998
D WARREN RES INC              COM           93564A10      10     750 SH    SHARED     02    750
D WARREN RES INC              COM           93564A10       8     600 SH    SHARED     10    600
D WARWICK VALLEY TEL CO       COM           93675010       2     184 SH    SHARED           184
D WASHINGTON BKG CO OAK HBR WA COM          93730310       3     246 SH    SHARED           246
D WASHINGTON FED INC          COM           93882410     636   30158 SH    SHARED         30158
D WASHINGTON FED INC          COM           93882410     507   24029 SH    SHARED     01                24029
D WASHINGTON FED INC          COM           93882410     607   28791 SH    SHARED     02   28791
D WASHINGTON FED INC          COM           93882410     119    5665 SH    SHARED     10    5665
D WASHINGTON MUT INC          COM           93932210       8     600 SH    SHR/OTHR                      600
D WASHINGTON MUT INC          COM           93932210   13340  980218 SH    SHARED        980218
D WASHINGTON MUT INC          COM           93932210    1562  114777 SH    SHARED     01  103978        10799
D WASHINGTON MUT INC          COM           93932210      16    1209 SH    SHR/OTHR   01                1209
D WASHINGTON MUT INC          COM           93932210     253   18624 SH    SHARED     02   18624
D WASHINGTON MUT INC          COM           93932210     544   40000 SH    SHARED     04   40000
D WASHINGTON MUT INC          COM           93932210       4     330 SH    SHARED     05    330
D WASHINGTON MUT INC          COM           93932210    9584  704199 SH    SHARED     06               704199
D WASHINGTON MUT INC          COM           93932210  253849 18651696 SH   SHARED     10 8651696
D WASHINGTON MUT INC          COM           93932210     181   13300 SH    SHARED     14   13300
D WASHINGTON MUT INC          COM           93932210      58    4300 SH    SHARED     20    2110         2190
D WASHINGTON MUT INC          COM           93932210      78    5756 SH    SHR/OTHR   20                5756
D WASHINGTON MUT INC          COM           93932210      38    2820 SH    SHARED     22    300          2520
D WASHINGTON MUT INC          COM           93932210      25    1875 SH    SHARED     23    1875
D WASHINGTON MUT INC          COM           93932210     138   10175 SH    SHR/OTHR   23                10175
D WASHINGTON POST CO          CL B          93964010    4098    5178 SH    SHARED          5178
```

```
D WASHINGTON POST CO              CL B           93964010    189      240 SH    SHARED    01        240
D WASHINGTON POST CO              CL B           93964010    394      499 SH    SHARED    02        499
D WASHINGTON POST CO              CL B           93964010     31       40 SH    SHARED    06                      40
D WASHINGTON POST CO              CL B           93964010   2087     2638 SH    SHARED    10       2638
D WASHINGTON POST CO              CL B           93964010    843     1066 SH    SHARED    20         16            1050
D WASHINGTON POST CO              CL B           93964010    395      500 SH    SHR/OTHR  20                      500
D WASHINGTON REAL ESTATE INVT     NOTE 3.875% 9/1 93965AK   2882  3130000 PRN   SHARED    02    3130000
D WASHINGTON REAL ESTATE INVT     SH BEN INT     93965310    228     7261 SH    SHARED              7261
D WASHINGTON REAL ESTATE INVT     SH BEN INT     93965310     49     1575 SH    SHARED    01       1575
D WASHINGTON REAL ESTATE INVT     SH BEN INT     93965310   1042    33200 SH    SHARED    10      33200
D WASHINGTON REAL ESTATE INVT     SH BEN INT     93965310   5512   175500 SH    SHARED    11            175500
D WASHINGTON SVGS BK FSB BOWIE    COM            93969610     13     2562 SH    SHARED              2562
D WASHINGTON TR BANCORP           COM            94061010     23      939 SH    SHARED               939
D WASHINGTON TR BANCORP           COM            94061010    131     5200 SH    SHARED    10       5200
D WASHINGTON TR BANCORP           COM            94061010     63     2530 SH    SHARED    20       2530
D WASTE CONNECTIONS INC           COM            94105310   3319   107425 SH    SHARED            107425
D WASTE CONNECTIONS INC           COM            94105310     40     1300 SH    SHARED    01       1300
D WASTE CONNECTIONS INC           COM            94105310      3      101 SH    SHARED    02        101
D WASTE CONNECTIONS INC           COM            94105310   1963    63550 SH    SHARED    10      63550
D WASTE CONNECTIONS INC           COM            94105310     36     1168 SH    SHARED    21                    1168
D WASTE INDUSTRIES USA INC        COM            94105710    240     6628 SH    SHARED              6628
D WASTE INDUSTRIES USA INC        COM            94105710     25      700 SH    SHARED    01        700
D WASTE INDUSTRIES USA INC        COM            94105710     47     1320 SH    SHARED    02       1320
D WASTE INDUSTRIES USA INC        COM            94105710    667    18400 SH    SHARED    10      18400
D WASTE MGMT INC DEL              COM            94106L10    166     5100 SH    SHARED              5100
D WASTE MGMT INC DEL              COM            94106L10  74037  2266235 SH    SHARED           2266235           4000
D WASTE MGMT INC DEL              COM            94106L10   1471    45036 SH    SHARED    01      45036
D WASTE MGMT INC DEL              COM            94106L10   3677   112576 SH    SHARED    02     112576
D WASTE MGMT INC DEL              COM            94106L10      7      230 SH    SHARED    05        230
D WASTE MGMT INC DEL              COM            94106L10    175     5360 SH    SHARED    06       5360            5360
D WASTE MGMT INC DEL              COM            94106L10   8226   251809 SH    SHARED    10     251809
D WASTE MGMT INC DEL              COM            94106L10   2284    69917 SH    SHARED    14      69917           69917
D WASTE MGMT INC DEL              COM            94106L10    555    17000 SH    SHARED    23      17000           17000
D WATERS CORP                     COM            94184810   9906   125293 SH    SHARED            125293
D WATERS CORP                     COM            94184810   1859    23520 SH    SHARED    01      20570            2950
D WATERS CORP                     COM            94184810    197     2500 SH    SHR/OTHR  01                     2500
D WATERS CORP                     COM            94184810    659     8344 SH    SHARED    02       8344
D WATERS CORP                     COM            94184810   5540    70070 SH    SHARED    05      70070
D WATERS CORP                     COM            94184810     68      860 SH    SHARED    06                      860
D WATERS CORP                     COM            94184810   4174    52795 SH    SHARED    10      52795
D WATERS CORP                     COM            94184810    331     4190 SH    SHARED    14       4190            4190
D WATERS CORP                     COM            94184810    186     2360 SH    SHARED    20        550            1810
D WATERS CORP                     COM            94184810     94     1200 SH    SHR/OTHR  20                     1200
D WATERS CORP                     COM            94184810     10      136 SH    SHARED    21                      136
D WATERS CORP                     COM            94184810     25      320 SH    SHR/OTHR  21                      320
D WATERS CORP                     COM            94184810     11      150 SH    SHARED    22        150
D WATERS CORP                     COM            94184810    110     1400 SH    SHARED    23       1400
D WATSCO INC                      COM            94262220    200     5461 SH    SHARED              5461
D WATSCO INC                      COM            94262220    441    12003 SH    SHARED    02      12003
D WATSCO INC                      COM            94262220    180     4900 SH    SHARED    10       4900
D WATSON PHARMACEUTICALS INC      COM            94268310   3825   140965 SH    SHARED            140965
D WATSON PHARMACEUTICALS INC      COM            94268310    276    10200 SH    SHARED    01      10200
D WATSON PHARMACEUTICALS INC      COM            94268310    413    15234 SH    SHARED    02      15234
D WATSON PHARMACEUTICALS INC      COM            94268310   1942    71563 SH    SHARED    10      71563
D WATSON PHARMACEUTICALS INC      COM            94268310   1639    60400 SH    SHARED    14                    60400
D WATSON WYATT WORLDWIDE INC      CL A           94271210    491    10600 SH    SHARED             10600
D WATSON WYATT WORLDWIDE INC      CL A           94271210    212     4575 SH    SHARED    01       4575
D WATSON WYATT WORLDWIDE INC      CL A           94271210   1768    38100 SH    SHARED    10      38100
D WATTS WATER TECHNOLOGIES INC    CL A           94274910   2847    95537 SH    SHARED             95537
D WATTS WATER TECHNOLOGIES INC    CL A           94274910    154     5200 SH    SHARED    01       5200
D WATTS WATER TECHNOLOGIES INC    CL A           94274910     13      441 SH    SHARED    02        441
D WATTS WATER TECHNOLOGIES INC    CL A           94274910  15072   505780 SH    SHARED    10     505780
D WAUSAU PAPER CORP               COM            94331510    583    64932 SH    SHARED             64932
D WAUSAU PAPER CORP               COM            94331510     57     6400 SH    SHARED    10       6400
D WAUWATOSA HLDGS INC             COM            94348010    361    28224 SH    SHARED             28224
D WAVE SYSTEMS CORP               COM NEW        94352630      1     1294 SH    SHARED              1294
D WAVECOM S A                     SPONSORED ADR  94353110      3      218 SH    SHARED               218
D WAYNE SVGS BANCSHARES INC NE    COM            94624Q10      0       74 SH    SHARED                74
D WAYSIDE TECHNOLOGY GROUP INC    COM            94676010      2      333 SH    SHARED               333
D WEBSENSE INC                    COM            94768410    365    21534 SH    SHARED             21534
D WEBSENSE INC                    COM            94768410    282    16640 SH    SHARED    01      16640
D WEBSENSE INC                    COM            94768410    358    21100 SH    SHARED    10      21100
D WEBMD CORP                      NOTE 1.750% 6/1 94769MAE    997  1000000 PRN   SHARED           1000000
D WEBMD CORP                      NOTE 1.750% 6/1 94769MAE  15725 15773000 PRN   SHARED    02    5773000
D WEBMD CORP                      NOTE 1.750% 6/1 94769MAE  19940 20000000 PRN   SHARED    04    0000000
D WEBMD CORP                      NOTE 3.125% 9/0 94769MAG    74    75000 PRN   SHARED    02      75000
D WEBSITE PROS INC                COM            94769V10      8      710 SH    SHARED               710
D WEBMD HEALTH CORP               COM            94770V10   1396    34006 SH    SHARED             34006
D WEBMD HEALTH CORP               CL A           94770V10    164     4000 SH    SHARED    20       4000
D WEBSTER FINL CORP CONN          COM            94789010    371    11626 SH    SHARED             11626
D WEBSTER FINL CORP CONN          COM            94789010    610    19100 SH    SHARED    01        100           19000
D WEBSTER FINL CORP CONN          COM            94789010    298     9333 SH    SHARED    02       9333
D WEBSTER FINL CORP CONN          COM            94789010    115     3600 SH    SHARED    10       3600
D WEGENER CORP                    SPONSORED ADR  94858510      2      602 SH    SHARED               602
D WEIGHT WATCHERS INTL INC NEW    COM            94862610    342     7575 SH    SHARED              7575
D WEIGHT WATCHERS INTL INC NEW    COM            94862610     99     2200 SH    SHARED    02       2200
D WEIGHT WATCHERS INTL INC NEW    COM            94862610    225     5000 SH    SHARED    04       5000
D WEIGHT WATCHERS INTL INC NEW    COM            94862610    303     6721 SH    SHARED    10       6721
D WEIGHT WATCHERS INTL INC NEW    COM            94862610   1486    32900 SH    SHARED    14                   32900
D WEIGHT WATCHERS INTL INC NEW    COM            94862610      9      200 SH    SHARED    20        200
D WEINGARTEN RLTY INVS            NOTE 3.950% 8/0 94871AAF    608   650000 PRN   SHARED    02     650000
D WEINGARTEN RLTY INVS            SH BEN INT     94874110   1977    62892 SH    SHARED             62892
D WEINGARTEN RLTY INVS            SH BEN INT     94874110    844    26850 SH    SHARED    01       1300           25550
D WEINGARTEN RLTY INVS            SH BEN INT     94874110      5      175 SH    SHR/OTHR  01                      175
D WEINGARTEN RLTY INVS            SH BEN INT     94874110    144     4588 SH    SHARED    02       4588
D WEINGARTEN RLTY INVS            SH BEN INT     94874110    103     3300 SH    SHARED    10       3300
D WEINGARTEN RLTY INVS            SH BEN INT     94874110     34     1105 SH    SHARED    23                    1105
D WEINGARTEN RLTY INVS            SH BEN INT     94874110     40     1300 SH    SHR/OTHR  23                    1300
D WEIS MKTS INC                   COM            94884910  15025   376192 SH    SHARED            376192
D WEIS MKTS INC                   COM            94884910  18885   472850 SH    SHARED    10     472850
D WELLCARE HEALTH PLANS INC       COM            94946T10    435    10270 SH    SHARED             10270
D WELLCARE HEALTH PLANS INC       COM            94946T10    470    11100 SH    SHARED    01       2500            8600
D WELLCARE HEALTH PLANS INC       COM            94946T10    325     7676 SH    SHARED    02       7676
D WELLCARE HEALTH PLANS INC       COM            94946T10     63     1500 SH    SHARED    10       1500
D WELLPOINT INC                   COM            94973V10     37      424 SH    SHARED                             424
D WELLPOINT INC                   COM            94973V10  74971   854567 SH    SHARED            854567
D WELLPOINT INC                   COM            94973V10   7256    82711 SH    SHARED    01      82661              50
D WELLPOINT INC                   COM            94973V10    653     7450 SH    SHR/OTHR  01                     7450
D WELLPOINT INC                   COM            94973V10   5194    59207 SH    SHARED    02      59207
D WELLPOINT INC                   COM            94973V10    163     1861 SH    SHARED    03                    1861
D WELLPOINT INC                   COM            94973V10  21520   245300 SH    SHARED    04     245300
D WELLPOINT INC                   COM            94973V10     22      260 SH    SHARED    05        260
D WELLPOINT INC                   COM            94973V10   7974    90900 SH    SHARED    06                   90900
```

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| D | WELLPOINT INC | COM | 94973V10 | 59302 | 675968 SH | SHARED | 10 | 660068 | | 15900 |
| D | WELLPOINT INC | COM | 94973V10 | 1239 | 14130 SH | SHARED | 14 | 5800 | | 8330 |
| D | WELLPOINT INC | COM | 94973V10 | 3929 | 44796 SH | SHARED | 16 | 44796 | |
| D | WELLPOINT INC | COM | 94973V10 | 197 | 2250 SH | SHARED | 20 | 1750 | | 500 |
| D | WELLPOINT INC | COM | 94973V10 | 491 | 5600 SH | SHARED | 23 | 5600 | |
| D | WELLPOINT INC | COM | 94973V10 | 140 | 1600 SH | SHR/OTHR | 23 | | | 1600 |
| D | WELLS FARGO & CO NEW | DBCV | 5/0 949746PA | 13382 | 13450000 PRN | SHARED | | 3450000 | |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 1576779 | 5222919 SH | SHARED | | 4992419 | | 230500 |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 27683 | 916972 SH | SHARED | 01 | 711196 | | 205776 |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 4927 | 163210 SH | SHR/OTHR | 01 | | | 163210 |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 12614 | 417839 SH | SHARED | 02 | 417839 | |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 603 | 20000 SH | SHARED | 04 | 20000 | |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 41 | 1370 SH | SHARED | 05 | 1370 | |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 969 | 32100 SH | SHARED | 09 | | | 32100 |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 131294 | 4348937 SH | SHARED | 10 | 3962199 | | 386738 |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 1102 | 36512 SH | SHARED | 14 | | | 36512 |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 3028 | 100300 SH | SHARED | 15 | | | 100300 |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 27 | 920 SH | SHARED | 19 | | | 920 |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 8631 | 285915 SH | SHARED | 20 | 126591 | | 159324 |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 4211 | 139493 SH | SHR/OTHR | 20 | | | 139493 |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 374 | 12412 SH | SHARED | 21 | 6600 | | 5812 |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 69 | 2300 SH | SHR/OTHR | 21 | | | 2300 |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 912 | 30222 SH | SHARED | 22 | 21245 | | 8977 |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 448 | 14862 SH | SHR/OTHR | 22 | | | 14862 |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 6745 | 223419 SH | SHARED | 23 | 202709 | | 20710 |
| D | WELLS FARGO & CO NEW | COM | 949746I0 | 8601 | 284925 SH | SHR/OTHR | 23 | | | 284925 |
| D | WELLS GARDNER ELECTRS CORP | COM | 94976510 | 0 | 256 SH | SHARED | | 256 | |
| D | WENDYS INTL INC | COM | 95059010 | 14949 | 578560 SH | SHARED | | 578560 | |
| D | WENDYS INTL INC | COM | 95059010 | 390 | 15120 SH | SHARED | 01 | 15120 | |
| D | WENDYS INTL INC | COM | 95059010 | 651 | 25230 SH | SHARED | 02 | 25230 | |
| D | WENDYS INTL INC | COM | 95059010 | 14 | 560 SH | SHARED | 06 | | | 560 |
| D | WENDYS INTL INC | COM | 95059010 | 1048 | 40591 SH | SHARED | 10 | 40591 | |
| D | WENDYS INTL INC | COM | 95059010 | 28 | 1100 SH | SHARED | 14 | | | 1100 |
| D | WERNER ENTERPRISES INC | COM | 95075510 | 360 | 21192 SH | SHARED | | 21192 | |
| D | WERNER ENTERPRISES INC | COM | 95075510 | 255 | 14975 SH | SHARED | 01 | | | 14975 |
| D | WERNER ENTERPRISES INC | COM | 95075510 | 65 | 3861 SH | SHARED | 02 | 3861 | |
| D | WERNER ENTERPRISES INC | COM | 95075510 | 386 | 22701 SH | SHARED | 10 | 22701 | |
| D | WERNER ENTERPRISES INC | COM | 95075510 | 4 | 255 SH | SHARED | 21 | | | 255 |
| D | WESBANCO INC | COM | 95081J10 | 195 | 9500 SH | SHARED | 10 | 9500 | |
| D | WESCO FINL CORP | COM | 95081710 | 10 | 26 SH | SHARED | | 26 | |
| D | WESCO FINL CORP | COM | 95081710 | 61 | 150 SH | SHARED | 01 | | | 150 |
| D | WESCO FINL CORP | COM | 95081710 | 10 | 25 SH | SHARED | 02 | 25 | |
| D | WESCO FINL CORP | COM | 95081710 | 122 | 300 SH | SHARED | 20 | 300 | |
| D | WESCO INTL INC | DBCV | 2.625%10/1 95082PAE | 484457 | 42100000 PRN | SHARED | | 2100000 | |
| D | WESCO INTL INC | DBCV | 2.625%10/1 95082PAE | 811 | 705000 PRN | SHARED | 02 | 705000 | |
| D | WESCO INTL INC | NOTE | 1.750%11/1 95082PAG | 12615 | 15000000 PRN | SHARED | | 5000000 | |
| D | WESCO INTL INC | NOTE | 1.750%11/1 95082PAG | 11367 | 13517000 PRN | SHARED | 02 | 3517000 | |
| D | WESCO INTL INC | COM | 95082P10 | 1311 | 33081 SH | SHARED | | 33081 | |
| D | WESCO INTL INC | COM | 95082P10 | 677 | 17085 SH | SHARED | 01 | 7500 | | 9585 |
| D | WESCO INTL INC | COM | 95082P10 | 32 | 825 SH | SHARED | 02 | 825 | |
| D | WESCO INTL INC | COM | 95082P10 | 7940 | 200305 SH | SHARED | 04 | 200305 | |
| D | WESCO INTL INC | COM | 95082P10 | 8696 | 219389 SH | SHARED | 05 | 219389 | |
| D | WESCO INTL INC | COM | 95082P10 | 166 | 4209 SH | SHARED | 06 | | | 4209 |
| D | WESCO INTL INC | COM | 95082P10 | 14837 | 374302 SH | SHARED | 10 | 368702 | | 5600 |
| D | WESCO INTL INC | COM | 95082P10 | 70 | 1772 SH | SHARED | 21 | 829 | | 943 |
| D | WEST BANCORPORATION INC | CAP STK | 95123P10 | 5 | 430 SH | SHARED | | 430 | |
| D | WEST BANCORPORATION INC | CAP STK | 95123P10 | 10 | 800 SH | SHARED | 02 | 800 | |
| D | WEST COAST BANCORP ORE NEW | COM | 95214510 | 1 | 68 SH | SHARED | | 68 | |
| D | WEST COAST BANCORP ORE NEW | COM | 95214510 | 148 | 8000 SH | SHARED | 10 | 8000 | |
| D | WEST MARINE INC | COM | 95423510 | 640 | 71302 SH | SHARED | | 71302 | |
| D | WEST MARINE INC | COM | 95423510 | 26 | 3000 SH | SHARED | 01 | 3000 | |
| D | WEST MARINE INC | COM | 95423510 | 106 | 11861 SH | SHARED | 02 | 11861 | |
| D | WEST MARINE INC | COM | 95423510 | 486 | 54200 SH | SHARED | 10 | 54200 | |
| D | WEST PHARMACEUTICAL SVSC INC | COM | 95530610 | 34 | 843 SH | SHARED | | 843 | |
| D | WEST PHARMACEUTICAL SVSC INC | COM | 95530610 | 1321 | 32550 SH | SHARED | 01 | 32300 | | 250 |
| D | WEST PHARMACEUTICAL SVSC INC | COM | 95530610 | 1035 | 25500 SH | SHR/OTHR | 01 | | | 25500 |
| D | WEST PHARMACEUTICAL SVSC INC | COM | 95530610 | 52 | 1300 SH | SHARED | 02 | 1300 | |
| D | WEST PHARMACEUTICAL SVSC INC | COM | 95530610 | 9412 | 231890 SH | SHARED | 10 | 231890 | |
| D | WESTAFF INC | COM | 95707010 | 0 | 217 SH | SHARED | | 217 | |
| D | WESTAR ENERGY INC | COM | 95709T10 | 8446 | 325600 SH | SHARED | | 325600 | |
| D | WESTAR ENERGY INC | COM | 95709T10 | 1648 | 63540 SH | SHARED | 01 | 34370 | | 29170 |
| D | WESTAR ENERGY INC | COM | 95709T10 | 1024 | 39500 SH | SHR/OTHR | 01 | | | 39500 |
| D | WESTAR ENERGY INC | COM | 95709T10 | 313 | 12074 SH | SHARED | 02 | 12074 | |
| D | WESTAR ENERGY INC | COM | 95709T10 | 2622 | 101100 SH | SHARED | 10 | 101100 | |
| D | WESTAR ENERGY INC | COM | 95709T10 | 52 | 2008 SH | SHARED | 21 | | | 2008 |
| D | WESTAMERICA BANCORPORATION | COM | 95709010 | 2221 | 49866 SH | SHARED | | 49866 | |
| D | WESTAMERICA BANCORPORATION | COM | 95709010 | 485 | 10900 SH | SHARED | 01 | 700 | | 10200 |
| D | WESTAMERICA BANCORPORATION | COM | 95709010 | 61 | 1390 SH | SHARED | 02 | 1390 | |
| D | WESTAMERICA BANCORPORATION | COM | 95709010 | 333 | 7485 SH | SHARED | 10 | 7485 | |
| D | WESTELL TECHNOLOGIES INC | CL A | 95754110 | 6292 | 4369574 SH | SHARED | | 4369574 | |
| D | WESTERN ALLIANCE BANCORP | COM | 95763810 | 871 | 46452 SH | SHARED | | 46452 | |
| D | WESTERN ALLIANCE BANCORP | COM | 95763810 | 1 | 80 SH | SHARED | 02 | 80 | |
| D | WESTERN ALLIANCE BANCORP | COM | 95763810 | 35 | 1900 SH | SHARED | 10 | 1900 | |
| D | WESTERN ASSET EMRG MKT DEBT | COM | 95766A10 | 8030 | 451400 SH | SHARED | | 451400 | |
| D | WESTERN ASSET GLB HI INCOME | COM | 95766B10 | 7942 | 678817 SH | SHARED | | 678817 | |
| D | WESTERN ASSET GLB HI INCOME | COM | 95766C10 | 191 | 16495 SH | SHARED | | 16495 | |
| D | WESTERN ASSET EMRG MKT INCM | COM | 95766F10 | 3663 | 293100 SH | SHARED | | 293100 | |
| D | WESTERN ASSET EMRG MKT INCM | COM | 95766F10 | 62 | 4883 SH | SHARED | | 4883 | |
| D | WESTERN ASSET GLB PTNRS INCO | COM | 95766G10 | 136 | 12261 SH | SHARED | | 12261 | |
| D | WESTERN ASSET HIGH INCM FD I | COM | 95766H10 | 119 | 13287 SH | SHARED | | 13287 | |
| D | WESTERN ASSET HIGH INCM FD I | COM | 95766L10 | 8676 | 859026 SH | SHARED | | 859026 | |
| D | WESTERN ASSET HIGH INCM OPP | COM | 95766I10 | 7 | 1249 SH | SHARED | | 1249 | |
| D | WESTERN ASSET MGD HI INCM F | COM | 95766L10 | 441 | 76842 SH | SHARED | | 76842 | |
| D | WESTERN ASST MNG MUN FD INC | COM | 95766M10 | 41 | 3817 SH | SHR/OTHR | 01 | | | 3817 |
| D | WESTERN ASSET CLYM INFL OPP | COM | 95766R10 | 6728 | 572181 SH | SHARED | | 572181 | |
| D | WESTERN ASSET INFL MGMT FD I | COM | 95766U10 | 2142 | 132610 SH | SHARED | | 132610 | |
| D | WESTERN ASSET WORLDWIDE INCO | COM | 95766810 | 1901 | 146532 SH | SHARED | | 146532 | |
| D | WESTERN ASSET ZENIX INCOME F | COM | 95766910 | 0 | 68 SH | SHARED | | 68 | |
| D | WESTERN DIGITAL CORP | COM | 95810210 | 187 | 6209 SH | SHARED | | | | 6209 |
| D | WESTERN DIGITAL CORP | COM | 95810210 | 4125 | 136548 SH | SHARED | | 136548 | |
| D | WESTERN DIGITAL CORP | COM | 95810210 | 2670 | 88400 SH | SHARED | 01 | 21600 | | 66800 |
| D | WESTERN DIGITAL CORP | COM | 95810210 | 112 | 3725 SH | SHR/OTHR | 01 | | | 3725 |
| D | WESTERN DIGITAL CORP | COM | 95810210 | 366 | 12126 SH | SHARED | 02 | 12126 | |
| D | WESTERN DIGITAL CORP | COM | 95810210 | 74 | 2468 SH | SHARED | 04 | | | 2468 |
| D | WESTERN DIGITAL CORP | COM | 95810210 | 69 | 2300 SH | SHARED | 06 | | | 2300 |
| D | WESTERN DIGITAL CORP | COM | 95810210 | 1244 | 41200 SH | SHARED | 10 | 41200 | |
| D | WESTERN DIGITAL CORP | COM | 95810210 | 514 | 17038 SH | SHARED | 14 | | | 17038 |
| D | WESTERN REFNG INC | COM | 95931910 | 2030 | 83881 SH | SHARED | | 83881 | |
| D | WESTERN REFNG INC | COM | 95931910 | 135 | 5600 SH | SHARED | 01 | 5600 | |
| D | WESTERN REFNG INC | COM | 95931910 | 10 | 450 SH | SHARED | 02 | 450 | |
| D | WESTERN REFNG INC | COM | 95931910 | 3931 | 162400 SH | SHARED | 10 | 162400 | |
| D | WESTERN UN CO | COM | 95980210 | 22172 | 913200 SH | SHARED | | 913200 | |
| D | WESTERN UN CO | COM | 95980210 | 2247 | 92569 SH | SHARED | 01 | 90619 | | 1950 |
| D | WESTERN UN CO | COM | 95980210 | 4 | 200 SH | SHR/OTHR | 01 | | | 200 |

```
D WESTERN UN CO                  COM              95980210     315    12982 SH    SHARED   02      12982
D WESTERN UN CO                  COM              95980210    6677   275000 SH    SHARED   04     275000
D WESTERN UN CO                  COM              95980210       8      359 SH    SHARED   05        359
D WESTERN UN CO                  COM              95980210     212     8747 SH    SHARED   06                    8747
D WESTERN UN CO                  COM              95980210   10973   451975 SH    SHARED   10     451975
D WESTERN UN CO                  COM              95980210     503    20750 SH    SHARED   14      20750
D WESTERN UN CO                  COM              95980210     461    19010 SH    SHARED   20       6800         12210
D WESTERN UN CO                  COM              95980210     135     5580 SH    SHR/OTHR 20                    5580
D WESTERN UN CO                  COM              95980210      14      600 SH    SHARED   21        600
D WESTERN UN CO                  COM              95980210      63     2600 SH    SHARED   22       2600
D WESTERN UN CO                  COM              95980210     101     4200 SH    SHR/OTHR 22                    4200
D WESTERN UN CO                  COM              95980210     644    26550 SH    SHARED   23       1850        24700
D WESTERN UN CO                  COM              95980210     108     4468 SH    SHARED   23                    4468
D WESTFIELD FINANCIAL INC NEW    COM             96008P10     844    87075 SH    SHARED            87075
D WESTLAKE CHEM CORP             COM             96041310      34     1839 SH    SHARED             1839
D WESTLAKE CHEM CORP             COM             96041310     180     9500 SH    SHARED   02       9500
D WESTLAKE CHEM CORP             COM             96041310       7      404 SH    SHARED   10        404
D WESTMORELAND COAL CO           COM             96087810       3      264 SH    SHARED            264
D WESTMORELAND COAL CO           COM             96087810      13     1000 SH    SHARED   01                    1000
D WESTPAC BKG CORP               SPONSORED ADR   96121430      24      200 SH    SHARED             200
D WESTSIDE ENERGY INC            COM             96149R10       0      483 SH    SHARED             483
D WESTWOOD HLDGS GROUP INC       COM             96176510       5      138 SH    SHARED             138
D WESTWOOD HLDGS GROUP INC       COM             96176510     197     5250 SH    SHR/OTHR 20                    5250
D WESTWOOD ONE INC               COM             96181510       3     1748 SH    SHARED             1748
D WESTWOOD ONE INC               COM             96181510      24    12500 SH    SHARED   01                   12500
D WET SEAL INC                   CL A            96184010      33    14204 SH    SHARED            14204
D WEXCO GROUP INC                COM             96214910       2       94 SH    SHARED              94
D WEYERHAEUSER CO                COM             96216610  291204  3949070 SH    SHARED          3947270         1800
D WEYERHAEUSER CO                COM             96216610    1819    24677 SH    SHARED   01      24677
D WEYERHAEUSER CO                COM             96216610     437     5928 SH    SHARED   02       5928
D WEYERHAEUSER CO                COM             96216610   20573   279000 SH    SHARED   04     279000
D WEYERHAEUSER CO                COM             96216610    1204    16328 SH    SHARED   05      16328
D WEYERHAEUSER CO                COM             96216610    3048    41340 SH    SHARED   06                   41340
D WEYERHAEUSER CO                COM             96216610   26540   359920 SH    SHARED   10     298620        61300
D WEYERHAEUSER CO                COM             96216610      44      600 SH    SHARED   23        600
D WEYERHAEUSER CO                COM             96216610      73     1000 SH    SHR/OTHR 23                    1000
D WEYERHAEUSER CO                COM             96216610    1488    20180 SH    SHARED   24      20180
D WHIRLPOOL CORP                 COM             96332010      31      380 SH    SHARED             380            380
D WHIRLPOOL CORP                 COM             96332010   38840   475813 SH    SHARED          475813
D WHIRLPOOL CORP                 COM             96332010     895    10969 SH    SHARED   01      10969
D WHIRLPOOL CORP                 COM             96332010    2805    34374 SH    SHARED   02      34374
D WHIRLPOOL CORP                 COM             96332010     128     1573 SH    SHARED   04                    1573
D WHIRLPOOL CORP                 COM             96332010    1126    13800 SH    SHARED   05      13800
D WHIRLPOOL CORP                 COM             96332010      43      530 SH    SHARED   06                     530
D WHIRLPOOL CORP                 COM             96332010    5141    62985 SH    SHARED   10      62985
D WHIRLPOOL CORP                 COM             96332010     163     2000 SH    SHARED   14                    2000
D WHIRLPOOL CORP                 COM             96332010      14      172 SH    SHARED   19                     172
D WHIRLPOOL CORP                 COM             96332010      11      145 SH    SHARED   21                     145
D WHITE ELECTR DESIGNS CORP      COM             96380110     890   191851 SH    SHARED          191851
D WHITE RIVER CAPITAL INC        COM             96445P10       1       74 SH    SHARED              74
D WHITING PETE CORP NEW          COM             96638710      12      216 SH    SHARED             216
D WHITING PETE CORP NEW          COM             96638710     249     4325 SH    SHARED   01       4325
D WHITING PETE CORP NEW          COM             96638710      25      446 SH    SHARED   02        446
D WHITING PETE CORP NEW          COM             96638710    1654    28700 SH    SHARED   10      28700
D WHITNEY HLDG CORP              COM             96661210      16      619 SH    SHARED             619
D WHITNEY HLDG CORP              COM             96661210      24      950 SH    SHARED   01        950
D WHITNEY HLDG CORP              COM             96661210     768    29400 SH    SHARED   02      29400
D WHITNEY HLDG CORP              COM             96661210     133     5100 SH    SHARED   10       5100
D WHITNEY HLDG CORP              COM             96661210      29     1109 SH    SHARED   21                    1109
D WHOLE FOODS MKT INC            SDCV        3/0 96683TAC     218   250000 PRN   SHARED   02     250000
D WHOLE FOODS MKT INC            COM             96683T10      93     2288 SH    SHARED             2288
D WHOLE FOODS MKT INC            COM             96683T10    8833   216503 SH    SHARED          216503
D WHOLE FOODS MKT INC            COM             96683T10     574    14090 SH    SHARED   01      14090
D WHOLE FOODS MKT INC            COM             96683T10   11645   285434 SH    SHARED   02     285434
D WHOLE FOODS MKT INC            COM             96683T10      36      890 SH    SHARED   06                     890
D WHOLE FOODS MKT INC            COM             96683T10   13480   330400 SH    SHARED   10     330400
D WHOLE FOODS MKT INC            COM             96683T10      12      300 SH    SHARED   20        300
D WHOLE FOODS MKT INC            COM             96683T10     236     5800 SH    SHR/OTHR 23                    5800
D WIDEPOINT CORP                 COM             96759010    2557  2390499 SH    SHARED         2390499
D WILBER CORP                    COM             96779710       1      149 SH    SHARED             149
D WILEY JOHN & SONS INC          CL A            96822320     336     7856 SH    SHARED            7856
D WILEY JOHN & SONS INC          CL A            96822320     519    12125 SH    SHARED   01       1725        10400
D WILEY JOHN & SONS INC          CL A            96822320     157     3681 SH    SHARED   02       3681
D WILEY JOHN & SONS INC          CL A            96822320     107     2500 SH    SHARED   10       2500
D WILEY JOHN & SONS INC          CL A            96822320     171     4000 SH    SHARED   23                    4000
D WILLAMETTE VY VINEYARD INC     COM             96913610       0      109 SH    SHARED             109
D WILLBROS GROUP INC             COM             96919910      40     1051 SH    SHARED            1051
D WILLBROS GROUP INC             COM             96919910    5636   147200 SH    SHARED   10     147200
D WILLDAN GROUP INC              COM             96924N10       1      162 SH    SHARED             162
D WILLIAMS COS INC DEL           COM             96945710   72516  2026723 SH    SHARED         2026723
D WILLIAMS COS INC DEL           COM             96945710    1928    53906 SH    SHARED   01      51906         2000
D WILLIAMS COS INC DEL           COM             96945710   11665   326046 SH    SHARED   02     326046
D WILLIAMS COS INC DEL           COM             96945710      10      290 SH    SHARED   05        290
D WILLIAMS COS INC DEL           COM             96945710     211     5910 SH    SHARED   06                    5910
D WILLIAMS COS INC DEL           COM             96945710   22391   625800 SH    SHARED   10     625800
D WILLIAMS COS INC DEL           COM             96945710     514    14382 SH    SHARED   14      14382
D WILLIAMS COS INC DEL           COM             96945710     665    18600 SH    SHARED   23      18600
D WILLIAMS COS INC DEL           COM             96945710     107     3000 SH    SHR/OTHR 23                    3000
D WILLIAMS CTLS INC              COM NEW         96946560       2      146 SH    SHARED             146
D WILLIAMS CLAYTON ENERGY INC    COM             96949010     187     6014 SH    SHARED            6014
D WILLIAMS CLAYTON ENERGY INC    COM             96949010      43     1400 SH    SHARED   01       1400
D WILLIAMS CLAYTON ENERGY INC    COM             96949010     563    18100 SH    SHARED   10      18100
D WILLIAMS PARTNERS L P          COM UNIT L P    96950P10   22478   573437 SH    SHARED          573437
D WILLIAMS SONOMA INC            COM             96990410    1122    43356 SH    SHARED            43356
D WILLIAMS SONOMA INC            COM             96990410    1278    49361 SH    SHARED   01      19461        29900
D WILLIAMS SONOMA INC            COM             96990410     273    10570 SH    SHARED   02      10570
D WILLIAMS SONOMA INC            COM             96990410      12      480 SH    SHARED   06                     480
D WILLIAMS SONOMA INC            COM             96990410     156     6046 SH    SHARED   10       6046
D WILLIAMS SONOMA INC            COM             96990410     414    16000 SH    SHR/OTHR 23                   16000
D WILLIS LEASE FINANCE CORP      COM             97064610       1      136 SH    SHARED             136
D WILLOW FINANCIAL BANCORP INC   COM             97111N10      12     1522 SH    SHARED            1522
D WILMINGTON TRUST CORP          COM             97180710     556    15820 SH    SHARED           15820
D WILMINGTON TRUST CORP          COM             97180710     721    20500 SH    SHARED   01                   20500
D WILMINGTON TRUST CORP          COM             97180710     470    13355 SH    SHARED   02      13355
D WILMINGTON TRUST CORP          COM             97180710     147     4200 SH    SHARED   10       4200
D WILSHIRE BANCORP INC           COM             97186710      10     1385 SH    SHARED            1385
D WILSHIRE ENTERPRISES INC       COM             97188910     162    49611 SH    SHARED           49611
D WILSON HLDGS INC               COM             97223410       0      130 SH    SHARED             130
D WILSONS THE LEATHER EXPERTS    COM             97240110       0      474 SH    SHARED             474
D WIMM BILL DANN FOODS OJSC      SPONSORED ADR   97263N10    1298     9906 SH    SHARED            9906
D WIND RIVER SYSTEMS INC         COM             97314910     426    47749 SH    SHARED           47749
D WIND RIVER SYSTEMS INC         COM             97314910     390    43700 SH    SHARED   01       1900        41800
D WIND RIVER SYSTEMS INC         COM             97314910      99    11087 SH    SHARED   02      11087
D WIND RIVER SYSTEMS INC         COM             97314910     368    41253 SH    SHARED   10      41253
```

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| D | WINDSTREAM CORP | COM | 97381W10 | 7462 | 573150 SH | SHARED | | 509750 | 63400 |
| D | WINDSTREAM CORP | COM | 97381W10 | 1144 | 87921 SH | SHARED | 01 | 87250 | 671 |
| D | WINDSTREAM CORP | COM | 97381W10 | 5 | 387 SH | SHR/OTHR | 01 | | 387 |
| D | WINDSTREAM CORP | COM | 97381W10 | 92 | 7130 SH | SHARED | 02 | 7130 | |
| D | WINDSTREAM CORP | COM | 97381W10 | 65 | 5000 SH | SHARED | 06 | | 5000 |
| D | WINDSTREAM CORP | COM | 97381W10 | 39617 | 3042836 SH | SHARED | 10 | 2959623 | 83213 |
| D | WINDSTREAM CORP | COM | 97381W10 | 16 | 1240 SH | SHR/OTHR | 10 | | 1240 |
| D | WINDSTREAM CORP | COM | 97381W10 | 13 | 1074 SH | SHARED | 20 | | 1074 |
| D | WINDSTREAM CORP | COM | 97381W10 | 20 | 1550 SH | SHR/OTHR | 20 | | 1550 |
| D | WINDSTREAM CORP | COM | 97381W10 | 121 | 9298 SH | SHARED | 21 | 7670 | 1628 |
| D | WINDSTREAM CORP | COM | 97381W10 | 7 | 563 SH | SHR/OTHR | 22 | | 563 |
| D | WINDSTREAM CORP | COM | 97381W10 | 394 | 30279 SH | SHR/OTHR | 23 | | 30279 |
| D | WINLAND ELECTRS INC | COM | 97424110 | 0 | 87 SH | SHARED | | | 87 |
| D | WINMARK CORP | COM | 97425010 | 0 | 36 SH | SHARED | | | 36 |
| D | WINN DIXIE STORES INC | COM NEW | 97428030 | 15 | 910 SH | SHARED | | | 910 |
| D | WINN DIXIE STORES INC | COM NEW | 97428030 | 146 | 8700 SH | SHARED | 01 | 8700 | |
| D | WINN DIXIE STORES INC | COM NEW | 97428030 | 431 | 25600 SH | SHARED | 10 | 25600 | |
| D | WINNEBAGO INDS INC | COM | 97463710 | 2889 | 137488 SH | SHARED | | 137488 | |
| D | WINNEBAGO INDS INC | COM | 97463710 | 145 | 6940 SH | SHARED | 01 | 6940 | |
| D | WINNEBAGO INDS INC | COM | 97463710 | 145 | 6900 SH | SHARED | 02 | 6900 | |
| D | WINNEBAGO INDS INC | COM | 97463710 | 22 | 1075 SH | SHARED | 10 | 1075 | |
| D | WINTHROP RLTY TR | SH BEN INT | 97639110 | 28 | 5300 SH | SHARED | | 5300 | |
| D | WINTHROP RLTY TR | SH BEN INT | 97639110 | 91 | 17250 SH | SHARED | 01 | | 17250 |
| D | WINTRUST FINANCIAL CORP | COM | 97650W10 | 31 | 947 SH | SHARED | | 947 | |
| D | WINTRUST FINANCIAL CORP | COM | 97650W10 | 349 | 10538 SH | SHARED | 10 | 10538 | |
| D | WIPRO LTD | SPON ADR 1 SH | 97651M10 | 1570 | 105848 SH | SHARED | | 105848 | |
| D | WIRELESS RONIN TECHNOLOGIES | COM | 97652A20 | 1 | 367 SH | SHARED | | 367 | |
| D | WIRELESS XCESSORIES GROUP IN | COM | 97652L10 | 0 | 96 SH | SHARED | | 96 | |
| D | WIRELESS TELECOM GROUP INC | COM | 97652410 | 0 | 510 SH | SHARED | | 510 | |
| D | WISCONSIN ENERGY CORP | COM | 97665710 | 1218 | 25021 SH | SHARED | | 25021 | |
| D | WISCONSIN ENERGY CORP | COM | 97665710 | 13917 | 285723 SH | SHARED | 01 | 250123 | 35600 |
| D | WISCONSIN ENERGY CORP | COM | 97665710 | 722 | 14839 SH | SHARED | 02 | 14839 | |
| D | WISCONSIN ENERGY CORP | COM | 97665710 | 61 | 1260 SH | SHARED | 06 | | 1260 |
| D | WISCONSIN ENERGY CORP | COM | 97665710 | 418 | 8600 SH | SHARED | 10 | 8600 | |
| D | WISCONSIN ENERGY CORP | COM | 97665710 | 43 | 900 SH | SHARED | 23 | | 900 |
| D | WISCONSIN ENERGY CORP | COM | 97665710 | 204 | 4200 SH | SHR/OTHR | 23 | | 4200 |
| D | WISDOMTREE TRUST | INTL SMCAP DIV | 97717W76 | 176 | 2750 SH | SHARED | | 2750 | |
| D | WOLVERINE WORLD WIDE INC | COM | 97809710 | 2140 | 87279 SH | SHARED | | 87279 | |
| D | WOLVERINE WORLD WIDE INC | COM | 97809710 | 9890 | 403350 SH | SHARED | 10 | 403350 | |
| D | WOODWARD GOVERNOR CO | COM | 98074510 | 572 | 8424 SH | SHARED | | 8424 | |
| D | WOODWARD GOVERNOR CO | COM | 98074510 | 77 | 1145 SH | SHARED | 01 | 1145 | |
| D | WOODWARD GOVERNOR CO | COM | 98074510 | 536 | 7900 SH | SHARED | 02 | 7900 | |
| D | WOODWARD GOVERNOR CO | COM | 98074510 | 156 | 2300 SH | SHARED | 10 | 2300 | |
| D | WOODWARD GOVERNOR CO | COM | 98074510 | 67 | 1000 SH | SHARED | 23 | | 1000 |
| D | WOORI FIN HLDGS CO LTD | ADR | 98106310 | 280 | 4709 SH | SHARED | | 4709 | |
| D | WORLD ACCEP CORPORATION | NOTE 3.000%10/0 | 98141AB | 2870 | 3500000 PRN | SHARED | | 3500000 | |
| D | WORLD ACCEP CORP DEL | COM | 98141910 | 16 | 623 SH | SHARED | | 623 | |
| D | WORLD ACCEP CORP DEL | COM | 98141910 | 81 | 3016 SH | SHARED | 02 | 3016 | |
| D | WORLD FUEL SVCS CORP | COM | 98147510 | 178 | 6144 SH | SHARED | | 6144 | |
| D | WORLD FUEL SVCS CORP | COM | 98147510 | 455 | 15700 SH | SHARED | 01 | 15700 | |
| D | WORLD FUEL SVCS CORP | COM | 98147510 | 10 | 375 SH | SHARED | 02 | 375 | |
| D | WORLD FUEL SVCS CORP | COM | 98147510 | 26 | 900 SH | SHARED | 10 | 900 | |
| D | WORLD WRESTLING ENTMT INC | CL A | 98156Q10 | 146 | 9900 SH | SHARED | 01 | 9900 | |
| D | WORLD WRESTLING ENTMT INC | CL A | 98156Q10 | 85 | 5791 SH | SHARED | 02 | 5791 | |
| D | WORLD WRESTLING ENTMT INC | CL A | 98156Q10 | 42 | 2900 SH | SHARED | 10 | 2900 | |
| D | WORLDSPACE INC | CL A | 98157910 | 208 | 123933 SH | SHARED | | 123933 | |
| D | WORLDSPACE INC | CL A | 98157910 | 4 | 2700 SH | SHARED | 02 | 2700 | |
| D | WORTHINGTON INDS INC | COM | 98181110 | 1361 | 76161 SH | SHARED | | 76161 | |
| D | WORTHINGTON INDS INC | COM | 98181110 | 513 | 28722 SH | SHARED | 01 | 6222 | 22500 |
| D | WORTHINGTON INDS INC | COM | 98181110 | 61 | 3415 SH | SHARED | 02 | 3415 | |
| D | WORTHINGTON INDS INC | COM | 98181110 | 8617 | 481953 SH | SHARED | 10 | 481953 | |
| D | WORTHINGTON INDS INC | COM | 98181110 | 211 | 11825 SH | SHARED | 21 | 11825 | |
| D | WPT ENTERPRISES INC | COM | 98211W10 | 0 | 160 SH | SHARED | | 160 | |
| D | WRIGHT EXPRESS CORP | COM | 98233Q10 | 65 | 1859 SH | SHARED | | 1859 | |
| D | WRIGHT EXPRESS CORP | COM | 98233Q10 | 68 | 1925 SH | SHARED | 01 | 1925 | |
| D | WRIGHT EXPRESS CORP | COM | 98233Q10 | 548 | 15450 SH | SHARED | 10 | 15450 | |
| D | WRIGHT MED GROUP INC | COM | 98235T10 | 19 | 675 SH | SHARED | | 675 | |
| D | WRIGHT MED GROUP INC | COM | 98235T10 | 51 | 1775 SH | SHARED | 02 | 1775 | |
| D | WRIGHT MED GROUP INC | COM | 98235T10 | 3 | 125 SH | SHARED | 21 | | 125 |
| D | WRIGLEY WM JR CO | COM | 98252610 | 14609 | 249518 SH | SHARED | | 239218 | 10300 |
| D | WRIGLEY WM JR CO | COM | 98252610 | 3050 | 52101 SH | SHARED | 01 | 37951 | 14150 |
| D | WRIGLEY WM JR CO | COM | 98252610 | 549 | 9387 SH | SHR/OTHR | 01 | | 9387 |
| D | WRIGLEY WM JR CO | COM | 98252610 | 733 | 12531 SH | SHARED | 02 | 12531 | |
| D | WRIGLEY WM JR CO | COM | 98252610 | 94 | 1612 SH | SHARED | 06 | | 1612 |
| D | WRIGLEY WM JR CO | COM | 98252610 | 24781 | 423258 SH | SHARED | 10 | 418358 | 4900 |
| D | WRIGLEY WM JR CO | COM | 98252610 | 4449 | 76000 SH | SHARED | 15 | | 76000 |
| D | WRIGLEY WM JR CO | COM | 98252610 | 0 | 3 SH | SHARED | 23 | | 3 |
| D | WRIGLEY WM JR CO | COM | 98252610 | 395 | 6750 SH | SHR/OTHR | 23 | | 6750 |
| D | WYETH | DBCV | 1/1 983024AD | 3850 | 3650000 PRN | SHARED | | 3650000 | |
| D | WYETH | DBCV | 1/1 983024AD | 47475 | 45000000 PRN | SHARED | 04 | 5000000 | |
| D | WYETH | COM | 98302410 | 227690 | 5152545 SH | SHARED | | 4890745 | 261800 |
| D | WYETH | COM | 98302410 | 12507 | 283043 SH | SHARED | 01 | 201390 | 81653 |
| D | WYETH | COM | 98302410 | 1395 | 31584 SH | SHR/OTHR | 01 | | 31584 |
| D | WYETH | COM | 98302410 | 14946 | 338222 SH | SHARED | 02 | 338222 | |
| D | WYETH | COM | 98302410 | 125254 | 2834462 SH | SHARED | 04 | 2834462 | |
| D | WYETH | COM | 98302410 | 25 | 570 SH | SHARED | 05 | 570 | |
| D | WYETH | COM | 98302410 | 24697 | 558888 SH | SHARED | 06 | | 558888 |
| D | WYETH | COM | 98302410 | 400442 | 9061845 SH | SHARED | 10 | 8886645 | 175200 |
| D | WYETH | COM | 98302410 | 106 | 2400 SH | SHR/OTHR | 10 | | 2400 |
| D | WYETH | COM | 98302410 | 7247 | 164002 SH | SHARED | 14 | 27800 | 136202 |
| D | WYETH | COM | 98302410 | 5324 | 120500 SH | SHARED | 15 | | 120500 |
| D | WYETH | COM | 98302410 | 2870 | 64957 SH | SHARED | 16 | 64957 | |
| D | WYETH | COM | 98302410 | 203 | 4600 SH | SHARED | 19 | | 4600 |
| D | WYETH | COM | 98302410 | 818 | 18524 SH | SHARED | 20 | 2300 | 16224 |
| D | WYETH | COM | 98302410 | 958 | 21695 SH | SHR/OTHR | 20 | | 21695 |
| D | WYETH | COM | 98302410 | 522 | 11821 SH | SHARED | 21 | 11481 | 340 |
| D | WYETH | COM | 98302410 | 8 | 200 SH | SHR/OTHR | 21 | | 200 |
| D | WYETH | COM | 98302410 | 1393 | 31532 SH | SHARED | 22 | 11752 | 19780 |
| D | WYETH | COM | 98302410 | 9200 | 208213 SH | SHARED | 23 | 204313 | 3900 |
| D | WYETH | COM | 98302410 | 9689 | 219263 SH | SHR/OTHR | 23 | | 219263 |
| D | WYETH | COM | 98302410 | 503 | 11400 SH | SHARED | 24 | 11400 | |
| D | WYNDHAM WORLDWIDE CORP | COM | 98310W10 | 8301 | 352360 SH | SHARED | | 352360 | |
| D | WYNDHAM WORLDWIDE CORP | COM | 98310W10 | 498 | 21156 SH | SHARED | 01 | 19156 | 2000 |
| D | WYNDHAM WORLDWIDE CORP | COM | 98310W10 | 580 | 24628 SH | SHARED | 02 | 24628 | |
| D | WYNDHAM WORLDWIDE CORP | COM | 98310W10 | 2 | 112 SH | SHARED | 05 | 112 | |
| D | WYNDHAM WORLDWIDE CORP | COM | 98310W10 | 34 | 1462 SH | SHARED | 06 | | 1462 |
| D | WYNDHAM WORLDWIDE CORP | COM | 98310W10 | 2430 | 103151 SH | SHARED | 10 | 103151 | |
| D | WYNDHAM WORLDWIDE CORP | COM | 98310W10 | 177 | 7553 SH | SHARED | 14 | 7553 | |
| D | WYNDHAM WORLDWIDE CORP | COM | 98310W10 | 14 | 616 SH | SHARED | 21 | 616 | |
| D | WYNN RESORTS LTD | COM | 98313410 | 15248 | 135986 SH | SHARED | | 130686 | 5300 |
| D | WYNN RESORTS LTD | COM | 98313410 | 269 | 2400 SH | SHARED | 01 | 2400 | |
| D | WYNN RESORTS LTD | COM | 98313410 | 22 | 200 SH | SHR/OTHR | 01 | | 200 |
| D | WYNN RESORTS LTD | COM | 98313410 | 100 | 900 SH | SHARED | 02 | 900 | |
| D | WYNN RESORTS LTD | COM | 98313410 | 26 | 240 SH | SHARED | 06 | | 240 |

| D | Name | Class | Rate/Mat | CUSIP | Value | Amount | Type | Discretion | Code | Col1 | Col2 |
|---|------|-------|----------|-------|-------|--------|------|-----------|------|------|------|
| D | WYNN RESORTS LTD | COM | | 98313410 | 5192 | 46305 | SH | SHARED | 10 | 42505 | 3800 |
| D | XM SATELLITE RADIO HLDGS INC | NOTE | 1.750%12/0 | 983759AC | 5280 | 6000000 | PRN | SHARED | | 6000000 | |
| D | XM SATELLITE RADIO HLDGS INC | CL A | | 98375910 | 45033 | 3679190 | SH | SHARED | | 3679190 | |
| D | XM SATELLITE RADIO HLDGS INC | CL A | | 98375910 | 204 | 16685 | SH | SHARED | 01 | 16685 | |
| D | XM SATELLITE RADIO HLDGS INC | CL A | | 98375910 | 76 | 6222 | SH | SHARED | 02 | 6222 | |
| D | XM SATELLITE RADIO HLDGS INC | CL A | | 98375910 | 22 | 1800 | SH | SHARED | 06 | | 1800 |
| D | XM SATELLITE RADIO HLDGS INC | CL A | | 98375910 | 166 | 13600 | SH | SHARED | 10 | 13600 | |
| D | XM SATELLITE RADIO HLDGS INC | CL A | | 98375910 | 1416 | 115700 | SH | SHARED | 14 | 115700 | |
| D | XTO ENERGY INC | COM | | 98385X10 | 3421 | 66615 | SH | SHARED | | 50698 | 15917 |
| D | XTO ENERGY INC | COM | | 98385X10 | 29612 | 576573 | SH | SHARED | | 576573 | |
| D | XTO ENERGY INC | COM | | 98385X10 | 28629 | 557428 | SH | SHARED | 01 | 491042 | 66386 |
| D | XTO ENERGY INC | COM | | 98385X10 | 2697 | 52529 | SH | SHR/OTHR | 01 | 52529 | |
| D | XTO ENERGY INC | COM | | 98385X10 | 1271 | 24763 | SH | SHARED | 02 | 24763 | |
| D | XTO ENERGY INC | COM | | 98385X10 | 975 | 19003 | SH | SHARED | 04 | | 19003 |
| D | XTO ENERGY INC | COM | | 98385X10 | 963 | 18750 | SH | SHARED | 05 | 18750 | |
| D | XTO ENERGY INC | COM | | 98385X10 | 12852 | 250237 | SH | SHARED | 05 | 250237 | |
| D | XTO ENERGY INC | COM | | 98385X10 | 266 | 5187 | SH | SHARED | | | 5187 |
| D | XTO ENERGY INC | COM | | 98385X10 | 122600 | 2387090 | SH | SHARED | 10 | 2196285 | 190805 |
| D | XTO ENERGY INC | COM | | 98385X10 | 527 | 10269 | SH | SHARED | 14 | 10269 | |
| D | XTO ENERGY INC | COM | | 98385X10 | 7561 | 147227 | SH | SHARED | 19 | 147227 | |
| D | XTO ENERGY INC | COM | | 98385X10 | 950 | 18504 | SH | SHARED | 20 | 13004 | 5500 |
| D | XTO ENERGY INC | COM | | 98385X10 | 155 | 3018 | SH | SHR/OTHR | 20 | 3018 | |
| D | XTO ENERGY INC | COM | | 98385X10 | 104 | 2029 | SH | SHARED | 21 | 2029 | |
| D | XTO ENERGY INC | COM | | 98385X10 | 14 | 280 | SH | SHR/OTHR | 21 | | 280 |
| D | XTO ENERGY INC | COM | | 98385X10 | 172 | 3351 | SH | SHARED | 22 | 2814 | 537 |
| D | XTO ENERGY INC | COM | | 98385X10 | 90 | 1758 | SH | SHR/OTHR | 22 | 1758 | |
| D | XTO ENERGY INC | COM | | 98385X10 | 1721 | 33511 | SH | SHARED | 23 | 30311 | 3200 |
| D | XTO ENERGY INC | COM | | 98385X10 | 681 | 13274 | SH | SHR/OTHR | 23 | 13274 | |
| D | XTO ENERGY INC | COM | | 98385X10 | 2026 | 39458 | SH | SHARED | 24 | 39458 | |
| D | X-RITE INC | COM | | 98385T10 | 5 | 477 | SH | SHARED | | 477 | |
| D | XATA CORP | COM NEW | | 98388230 | 0 | 149 | SH | SHARED | | 149 | |
| D | XCEL ENERGY INC | COM | | 98389B10 | 57681 | 2555658 | SH | SHARED | | 2555658 | |
| D | XCEL ENERGY INC | COM | | 98389B10 | 8920 | 395235 | SH | SHARED | 01 | 393485 | 1750 |
| D | XCEL ENERGY INC | COM | | 98389B10 | 1905 | 84447 | SH | SHARED | 02 | 84447 | |
| D | XCEL ENERGY INC | COM | | 98389B10 | 7 | 311 | SH | SHARED | 04 | | 311 |
| D | XCEL ENERGY INC | COM | | 98389B10 | 108 | 4800 | SH | SHARED | 06 | | 4800 |
| D | XCEL ENERGY INC | COM | | 98389B10 | 4005 | 177473 | SH | SHARED | 10 | 177473 | |
| D | XCEL ENERGY INC | COM | | 98389B10 | 18 | 800 | SH | SHARED | 14 | | 800 |
| D | XCEL ENERGY INC | COM | | 98389B10 | 9 | 400 | SH | SHR/OTHR | 23 | | 400 |
| D | XETA TECHNOLOGIES INC | COM | | 98390910 | 0 | 209 | SH | SHARED | | 209 | |
| D | XILINX INC | DBCV | 3.125% 3/1 | 983919AD | 4300 | 5000000 | PRN | SHARED | | 5000000 | |
| D | XILINX INC | COM | | 98391910 | 18773 | 858402 | SH | SHARED | | 858402 | |
| D | XILINX INC | COM | | 98391910 | 695 | 31795 | SH | SHARED | | 31795 | |
| D | XILINX INC | COM | | 98391910 | 2 | 100 | SH | SHR/OTHR | 01 | | 100 |
| D | XILINX INC | COM | | 98391910 | 2352 | 107557 | SH | SHARED | 02 | 107557 | |
| D | XILINX INC | COM | | 98391910 | 5 | 270 | SH | SHARED | 05 | | 270 |
| D | XILINX INC | COM | | 98391910 | 91 | 4180 | SH | SHARED | 06 | | 4180 |
| D | XILINX INC | COM | | 98391910 | 4055 | 185459 | SH | SHARED | 10 | 165059 | 20400 |
| D | XINHUA FIN MEDIA LTD | SPONSORED ADR | | 98398210 | 1 | 197 | SH | SHARED | | 197 | |
| D | XINHUA FIN MEDIA LTD | SPONSORED ADR | | 98398210 | 481 | 80200 | SH | SHARED | 14 | 80200 | |
| D | XCORPOREAL INC | COM | | 98400P10 | 0 | 124 | SH | SHARED | | 124 | |
| D | XCORPOREAL INC | COM | | 98400P10 | 6 | 1300 | SH | SHARED | 02 | 1300 | |
| D | XELR8 HOLDINGS INC | COM | | 98400Y10 | 0 | 299 | SH | SHARED | | 299 | |
| D | XENOPORT INC | COM | | 98411C10 | 224 | 4015 | SH | SHARED | | 4015 | |
| D | XENOPORT INC | COM | | 98411C10 | 226 | 4050 | SH | SHARED | | | 4050 |
| D | XENOPORT INC | COM | | 98411C10 | 12908 | 231000 | SH | SHARED | 04 | 231000 | |
| D | XENOPORT INC | COM | | 98411C10 | 1676 | 30000 | SH | SHARED | 16 | 30000 | |
| D | XENONICS HLDGS INC | COM | | 98412110 | 0 | 456 | SH | SHARED | | 456 | |
| D | XEROX CORP | COM | | 98412110 | 97271 | 6008095 | SH | SHARED | | 6007795 | 300 |
| D | XEROX CORP | COM | | 98412110 | 1832 | 113217 | SH | SHARED | 01 | 113217 | |
| D | XEROX CORP | COM | | 98412110 | 587 | 36316 | SH | SHARED | 02 | 36316 | |
| D | XEROX CORP | COM | | 98412110 | 9 | 600 | SH | SHARED | 05 | 600 | |
| D | XEROX CORP | COM | | 98412110 | 136 | 8410 | SH | SHARED | 06 | | 8410 |
| D | XEROX CORP | COM | | 98412110 | 9111 | 562773 | SH | SHARED | 10 | 562773 | |
| D | XEROX CORP | COM | | 98412110 | 800 | 49424 | SH | SHARED | 14 | | 49424 |
| D | XEROX CORP | COM | | 98412110 | 9 | 590 | SH | SHARED | 20 | 590 | |
| D | XEROX CORP | COM | | 98412110 | 9 | 590 | SH | SHARED | 21 | | 590 |
| D | XEROX CORP | COM | | 98412110 | 29 | 1800 | SH | SHR/OTHR | 23 | | 1800 |
| D | XTENT INC | COM | | 98414110 | 4 | 428 | SH | SHARED | | 428 | |
| D | XERIUM TECHNOLOGIES INC | COM | | 98416J10 | 99 | 19209 | SH | SHARED | | 19209 | |
| D | XERIUM TECHNOLOGIES INC | COM | | 98416J10 | 23 | 4500 | SH | SHARED | | 4500 | |
| D | XERIUM TECHNOLOGIES INC | COM | | 98416J10 | 214 | 41200 | SH | SHARED | 01 | 41200 | |
| D | XETHANOL CORP | COM | | 98420A10 | 15 | 26028 | SH | SHARED | | 26028 | |
| D | YPF SOCIEDAD ANONIMA | SPON ADR CL D | | 98424510 | 151 | 3520 | SH | SHARED | | 3520 | |
| D | YRC WORLDWIDE INC | COM | | 98424910 | 412 | 24127 | SH | SHARED | | 24127 | |
| D | YRC WORLDWIDE INC | COM | | 98424910 | 842 | 49317 | SH | SHARED | 01 | 28517 | 20800 |
| D | YRC WORLDWIDE INC | COM | | 98424910 | 75 | 4407 | SH | SHARED | 02 | 4407 | |
| D | YRC WORLDWIDE INC | COM | | 98424910 | 56 | 3300 | SH | SHARED | 10 | 3300 | |
| D | YADKIN VALLEY FINANCIAL CORP | COM | | 98431410 | 4 | 277 | SH | SHARED | | 277 | |
| D | YAHOO INC | FRNT | 4/0 | 984332AB | 2791 | 2400000 | PRN | SHARED | | 2400000 | |
| D | YAHOO INC | FRNT | 4/0 | 984332AB | 541 | 466000 | PRN | SHARED | 02 | 466000 | |
| D | YAHOO INC | FRNT | 4/0 | 984332AB | 63965 | 55000000 | PRN | SHARED | 04 | 5000000 | |
| D | YAHOO INC | COM | | 98433210 | 7 | 320 | SH | SHARED | | 320 | |
| D | YAHOO INC | COM | | 98433210 | 129265 | 5557430 | SH | SHARED | | 5265330 | 292100 |
| D | YAHOO INC | COM | | 98433210 | 4440 | 190909 | SH | SHARED | 01 | 189859 | 1050 |
| D | YAHOO INC | COM | | 98433210 | 55187 | 2372651 | SH | SHARED | 02 | 2372651 | |
| D | YAHOO INC | COM | | 98433210 | 23 | 1000 | SH | SHARED | 04 | | 1000 |
| D | YAHOO INC | COM | | 98433210 | 29540 | 1270000 | SH | SHARED | 04 | 1270000 | |
| D | YAHOO INC | COM | | 98433210 | 13 | 590 | SH | SHARED | 05 | 590 | |
| D | YAHOO INC | COM | | 98433210 | 259 | 11170 | SH | SHARED | 06 | | 11170 |
| D | YAHOO INC | COM | | 98433210 | 68276 | 2935365 | SH | SHARED | 10 | 2781915 | 153450 |
| D | YAHOO INC | COM | | 98433210 | 64 | 2757 | SH | SHARED | 14 | 2757 | |
| D | YAHOO INC | COM | | 98433210 | 7143 | 307100 | SH | SHARED | 15 | 307100 | |
| D | YAHOO INC | COM | | 98433210 | 18 | 800 | SH | SHARED | 20 | 800 | |
| D | YAHOO INC | COM | | 98433210 | 430 | 18500 | SH | SHARED | 21 | 6000 | 12500 |
| D | YAHOO INC | COM | | 98433210 | 220 | 9500 | SH | SHR/OTHR | 21 | | 9500 |
| D | YAHOO INC | COM | | 98433210 | 19 | 820 | SH | SHR/OTHR | 23 | 820 | |
| D | YAHOO INC | COM | | 98433210 | 323 | 13900 | SH | SHARED | 24 | 13900 | |
| D | YAMANA GOLD INC | COM | | 98462Y10 | 375 | 29000 | SH | SHARED | | | 29000 |
| D | YAMANA GOLD INC | COM | | 98462Y10 | 8191 | 633006 | SH | SHARED | | 633006 | |
| D | YAMANA GOLD INC | COM | | 98462Y10 | 5 | 447 | SH | SHARED | 01 | 447 | |
| D | YAMANA GOLD INC | COM | | 98462Y10 | 15016 | 1160500 | SH | SHARED | 04 | 1160500 | |
| D | YAMANA GOLD INC | COM | | 98462Y10 | 344 | 26600 | SH | SHARED | 06 | | 26600 |
| D | YAMANA GOLD INC | COM | | 98462Y10 | 66936 | 5172798 | SH | SHARED | 10 | 5172798 | |
| D | YAMANA GOLD INC | COM | | 98462Y10 | 9457 | 730869 | SH | SHARED | 16 | 730869 | |
| D | YANZHOU COAL MNG CO LTD | SPON ADR H SHS | | 98484610 | 304 | 3137 | SH | SHARED | | 3137 | |
| D | YELLOW ROADWAY CORP | NOTE | 5.000% 8/0 | 985577AA | 19155 | 20037008 | PRN | SHARED | | 20037008 | |
| D | YELLOW ROADWAY CORP | NOTE | 5.000% 8/0 | 985577AA | 3546 | 3710000 | PRN | SHARED | 02 | 3710000 | |
| D | YELLOW ROADWAY CORP | NOTE | 3.375%11/2 | 985577AB | 1435 | 1750000 | PRN | SHARED | | 1750000 | |
| D | YELLOW ROADWAY CORP | NOTE | 3.375%11/2 | 985577AB | 1336 | 1630000 | PRN | SHARED | 02 | 1630000 | |
| D | YINGLI GREEN ENERGY HLDG CO | ADR | | 98584B10 | 19 | 493 | SH | SHARED | | | 493 |
| D | YINGLI GREEN ENERGY HLDG CO | ADR | | 98584B10 | 18939 | 489392 | SH | SHARED | | 489392 | |
| D | YINGLI GREEN ENERGY HLDG CO | ADR | | 98584B10 | 1292 | 33400 | SH | SHARED | 01 | 33400 | |
| D | YINGLI GREEN ENERGY HLDG CO | ADR | | 98584B10 | 32984 | 852300 | SH | SHARED | 04 | 852300 | |

| | Name of Issuer | Class | CUSIP | Value | Shares | SH | Discretion | Mgr | Sole | Shared/None |
|---|---|---|---|---|---|---|---|---|---|---|
| D | YINGLI GREEN ENERGY HLDG CO | ADR | 98584B10 | 8187 | 211556 | SH | SHARED | 05 | 211556 | |
| D | YINGLI GREEN ENERGY HLDG CO | ADR | 98584B10 | 4606 | 119033 | SH | SHARED | 06 | | 119033 |
| D | YINGLI GREEN ENERGY HLDG CO | ADR | 98584B10 | 13404 | 346369 | SH | SHARED | 10 | 294169 | 52200 |
| D | YINGLI GREEN ENERGY HLDG CO | ADR | 98584B10 | 1458 | 37700 | SH | SHARED | 24 | 37700 | |
| D | YORK WTR CO | COM | 98718410 | 4 | 289 | SH | SHARED | | 289 | |
| D | YORK WTR CO | COM | 98718410 | 574 | 37089 | SH | SHARED | 22 | 3500 | 33589 |
| D | YOUBET COM INC | COM | 98741310 | 1 | 1031 | SH | SHARED | | 1031 | |
| D | YOUNG BROADCASTING INC | CL A | 98743410 | 0 | 680 | SH | SHARED | | 680 | |
| D | YOUNG BROADCASTING INC | CL A | 98743410 | 10 | 10000 | SH | SHARED | 23 | | 10000 |
| D | YOUNG INNOVATIONS INC | COM | 98752010 | 121 | 5066 | SH | SHARED | | 5066 | |
| D | YOUNG INNOVATIONS INC | COM | 98752010 | 11 | 500 | SH | SHARED | 02 | 500 | |
| D | YUM BRANDS INC | COM | 98849810 | 2671 | 69797 | SH | SHARED | | 4312 | 65485 |
| D | YUM BRANDS INC | COM | 98849810 | 79 | 2080 | SH | SHR/OTHR | | | 2080 |
| D | YUM BRANDS INC | COM | 98849810 | 34551 | 902833 | SH | SHARED | | 811133 | 91700 |
| D | YUM BRANDS INC | COM | 98849810 | 4727 | 123518 | SH | SHARED | 01 | 93828 | 29690 |
| D | YUM BRANDS INC | COM | 98849810 | 614 | 16050 | SH | SHR/OTHR | 01 | | 16050 |
| D | YUM BRANDS INC | COM | 98849810 | 459 | 12010 | SH | SHARED | 02 | 12010 | |
| D | YUM BRANDS INC | COM | 98849810 | 11 | 300 | SH | SHARED | 05 | 300 | |
| D | YUM BRANDS INC | COM | 98849810 | 4958 | 129560 | SH | SHARED | 06 | | 129560 |
| D | YUM BRANDS INC | COM | 98849810 | 74044 | 1934788 | SH | SHARED | 10 | 1923188 | 11600 |
| D | YUM BRANDS INC | COM | 98849810 | 501 | 13098 | SH | SHARED | 14 | | 13098 |
| D | YUM BRANDS INC | COM | 98849810 | 175 | 4580 | SH | SHARED | 20 | 580 | 4000 |
| D | YUM BRANDS INC | COM | 98849810 | 36 | 960 | SH | SHR/OTHR | 20 | | 960 |
| D | YUM BRANDS INC | COM | 98849810 | 209 | 5465 | SH | SHARED | 21 | 2480 | 2985 |
| D | YUM BRANDS INC | COM | 98849810 | 22 | 600 | SH | SHARED | 22 | 600 | |
| D | YUM BRANDS INC | COM | 98849810 | 131 | 3440 | SH | SHR/OTHR | 22 | | 3440 |
| D | YUM BRANDS INC | COM | 98849810 | 1752 | 45790 | SH | SHARED | 23 | 43190 | 2600 |
| D | YUM BRANDS INC | COM | 98849810 | 942 | 24624 | SH | SHR/OTHR | 23 | | 24624 |
| D | ZBB ENERGY CORPORATION | COM | 98876R20 | 1 | 992 | SH | SHARED | | 992 | |
| D | ZVUE CORP | COM | 98880110 | 0 | 462 | SH | SHARED | | 462 | |
| D | ZALE CORP NEW | COM | 98885810 | 1087 | 67701 | SH | SHARED | | 67701 | |
| D | ZALE CORP NEW | COM | 98885810 | 2 | 175 | SH | SHARED | 01 | 175 | |
| D | ZALE CORP NEW | COM | 98885810 | 293 | 18304 | SH | SHARED | 10 | 18304 | |
| D | Z TRIM HLDGS INC | COM | 98892410 | 0 | 1455 | SH | SHARED | | 1455 | |
| D | ZANETT INC | COM | 98906R10 | 0 | 168 | SH | SHARED | | 168 | |
| D | ZAPATA CORP | COM PAR $ | 98907060 | 1 | 255 | SH | SHARED | | 255 | |
| D | ZAPATA CORP | COM PAR $ | 98907060 | 1 | 250 | SH | SHARED | 02 | 250 | |
| D | ZAREBA SYSTEMS INC | COM | 98913110 | 0 | 51 | SH | SHARED | | 51 | |
| D | ZARLINK SEMICONDUCTOR INC | COM | 98913910 | 163 | 226940 | SH | SHARED | | 226940 | |
| D | ZEBRA TECHNOLOGIES CORP | CL A | 98920710 | 291 | 8406 | SH | SHARED | | 8406 | |
| D | ZEBRA TECHNOLOGIES CORP | CL A | 98920710 | 749 | 21600 | SH | SHARED | 01 | 800 | 20800 |
| D | ZEBRA TECHNOLOGIES CORP | CL A | 98920710 | 368 | 10629 | SH | SHARED | 02 | 10629 | |
| D | ZEBRA TECHNOLOGIES CORP | CL A | 98920710 | 869 | 25055 | SH | SHARED | 10 | 12155 | 12900 |
| D | ZENITH NATL INS CORP | COM | 98939010 | 18250 | 408025 | SH | SHARED | | 408025 | |
| D | ZENITH NATL INS CORP | COM | 98939010 | 414 | 9275 | SH | SHARED | 02 | 9275 | |
| D | ZENITH NATL INS CORP | COM | 98939010 | 565 | 12650 | SH | SHARED | 10 | 12650 | |
| D | ZEP INC | COM | 98944810 | 1130 | 81520 | SH | SHARED | | 81520 | |
| D | ZEP INC | COM | 98944810 | 78 | 5650 | SH | SHARED | 10 | 5650 | |
| D | ZEP INC | COM | 98944810 | 17 | 1280 | SH | SHARED | 23 | 780 | 500 |
| D | ZHONE TECHNOLOGIES INC NEW | COM | 98950P10 | 94 | 80399 | SH | SHARED | | 80399 | |
| D | ZHONE TECHNOLOGIES INC NEW | COM | 98950P10 | 15 | 13200 | SH | SHARED | 10 | 13200 | |
| D | ZILA INC | COM PAR $0.01 | 98951320 | 1 | 1625 | SH | SHARED | | 1625 | |
| D | ZILOG INC | COM PAR $0.01 | 98952430 | 1 | 441 | SH | SHARED | | 441 | |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 10 | 160 | SH | SHARED | | 160 | |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 61434 | 928718 | SH | SHARED | | 926918 | 1800 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 8241 | 124587 | SH | SHARED | 01 | 84832 | 39755 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 2422 | 36625 | SH | SHR/OTHR | 01 | | 36625 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 2617 | 39575 | SH | SHARED | 02 | 39575 | |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 7453 | 112675 | SH | SHARED | 04 | 112675 | |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 8 | 130 | SH | SHARED | 05 | 130 | |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 1010 | 15270 | SH | SHARED | 06 | | 15270 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 56150 | 848832 | SH | SHARED | 10 | 817492 | 31340 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 6 | 96 | SH | SHR/OTHR | 10 | | 96 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 1077 | 16288 | SH | SHARED | 14 | 1500 | 14788 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 2646 | 40000 | SH | SHARED | 15 | | 40000 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 860 | 13005 | SH | SHARED | 20 | 4120 | 8885 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 436 | 6605 | SH | SHR/OTHR | 20 | | 6605 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 1898 | 28705 | SH | SHARED | 21 | 25205 | 3500 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 6 | 100 | SH | SHR/OTHR | 21 | | 100 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 852 | 12887 | SH | SHARED | 22 | 8427 | 4460 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 286 | 4324 | SH | SHR/OTHR | 22 | | 4324 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 2714 | 41028 | SH | SHARED | 23 | 28014 | 13014 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 15933 | 240875 | SH | SHR/OTHR | 23 | | 240875 |
| D | ZIMMER HLDGS INC | COM | 98956P10 | 69 | 1050 | SH | SHARED | 24 | 1050 | |
| D | ZION OIL & GAS INC | COM | 98969610 | 1 | 158 | SH | SHARED | | 158 | |
| D | ZIONS BANCORPORATION | COM | 98970110 | 5419 | 116082 | SH | SHARED | | 116082 | |
| D | ZIONS BANCORPORATION | COM | 98970110 | 522 | 11200 | SH | SHARED | 01 | 11100 | 100 |
| D | ZIONS BANCORPORATION | COM | 98970110 | 247 | 5307 | SH | SHARED | 02 | 5307 | |
| D | ZIONS BANCORPORATION | COM | 98970110 | 17559 | 376084 | SH | SHARED | 06 | | 376084 |
| D | ZIONS BANCORPORATION | COM | 98970110 | 2374 | 50857 | SH | SHARED | 10 | 50857 | |
| D | ZIONS BANCORPORATION | COM | 98970110 | 487 | 10436 | SH | SHARED | 14 | | 10436 |
| D | ZIOPHARM ONCOLOGY INC | COM | 98973910 | 1 | 474 | SH | SHARED | | 474 | |
| D | ZIX CORP | COM | 98974P10 | 7 | 1523 | SH | SHARED | | 1523 | |
| D | ZIPREALTY INC | COM | 98974V10 | 1 | 308 | SH | SHARED | | 308 | |
| D | ZORAN CORP | COM | 98975P10 | 1897 | 84277 | SH | SHARED | | 84277 | |
| D | ZORAN CORP | COM | 98975P10 | 581 | 25841 | SH | SHARED | 01 | 22165 | 3676 |
| D | ZORAN CORP | COM | 98975P10 | 4460 | 198167 | SH | SHARED | 10 | 198167 | |
| D | ZOLTEK COS INC | COM | 98975W10 | 6435 | 150106 | SH | SHARED | | 150106 | |
| D | ZOLTEK COS INC | COM | 98975W10 | 197 | 4600 | SH | SHARED | 01 | 4600 | |
| D | ZOLTEK COS INC | COM | 98975W10 | 666 | 15538 | SH | SHARED | 05 | 15538 | |
| D | ZOOM TECHNOLOGIES INC DEL | COM | 98976E10 | 0 | 209 | SH | SHARED | | 209 | |
| D | ZONES INC | COM | 98976N10 | 2 | 243 | SH | SHARED | | 243 | |
| D | ZUMIEZ INC | COM | 98981710 | 136 | 5618 | SH | SHARED | | 5618 | |
| D | ZUMIEZ INC | COM | 98981710 | 9127 | 374700 | SH | SHARED | 10 | 374700 | |
| D | ZWEIG FD | COM | 98983410 | 278 | 55307 | SH | SHARED | | 55307 | |
| D | ZWEIG TOTAL RETURN FD INC | COM | 98983710 | 975 | 215727 | SH | SHARED | | 215727 | |
| D | ZYMOGENETICS INC | COM | 98985710 | 275 | 23600 | SH | SHARED | | 23600 | |
| D | ZYMOGENETICS INC | COM | 98985710 | 121 | 10400 | SH | SHARED | 02 | 10400 | |
| D | ZYMOGENETICS INC | COM | 98985710 | 33 | 2860 | SH | SHARED | 10 | 2860 | |
| D | ZYGO CORP | COM | 98985510 | 424 | 34245 | SH | SHARED | | 34245 | |
| D | ZYGO CORP | COM | 98985510 | 26 | 2150 | SH | SHARED | 01 | 2150 | |
| D | ZOLL MED CORP | COM | 98992210 | 3 | 113 | SH | SHARED | | 113 | |
| D | ZOLL MED CORP | COM | 98992210 | 52 | 1975 | SH | SHARED | 02 | 1975 | |
| S | REPORT SUMMARY | 19406 DATA RECORDS | | 178734097 | | | | | 0 OTHER MANAGERS ON WHOSE BEHALF REPORT IS FILED | |