UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| CSX CORPORATION,<br><br>                                    Plaintiff,<br><br>            v.<br><br>THE CHILDREN'S INVESTMENT FUND MANAGEMENT (UK) LLP, THE CHILDREN'S INVESTMENT FUND MANAGEMENT (CAYMAN) LTD., THE CHILDREN'S INVESTMENT MASTER FUND, 3G CAPITAL PARTNERS LTD.,  3G CAPITAL PARTNERS, L.P., 3G FUND, L.P., CHRISTOPHER HOHN, SNEHAL AMIN AND ALEXANDRE BEHRING, A/K/A ALEXANDRE BEHRING COSTA,<br><br>                                    Defendants. | ECF Case<br><br>08 Civ. 02764 (LAK) (KNF) |
| THE CHILDREN'S INVESTMENT MASTER FUND,<br><br>                       Counterclaim and Third-Party Plaintiff,<br><br>            v.<br><br>CSX CORPORATION AND MICHAEL WARD,<br><br>                       Counterclaim and Third-Party Defendants. | **PROPOSED FINDINGS OF FACT OF CSX CORPORATION AND MICHAEL WARD ON THE CONDUCT OF THE TRIAL** |
| 3G CAPITAL PARTNERS LTD., 3G CAPITAL PARTNERS, L.P. AND 3G FUND, L.P.,<br><br>                       Counterclaim Plaintiffs,<br><br>            v.<br><br>CSX CORPORATION AND MICHAEL WARD,<br><br>                       Counterclaim Defendants. | |

Plaintiff CSX Corporation ("CSX") and third party defendant Michael J. Ward respectfully submit the following Proposed Findings of Fact with respect to the conduct of the trial.

**Preliminary Statement**

The Court has asked the parties to submit proposed findings of fact and conclusions of law. CSX is submitting separately its proposed findings of fact and conclusions of law relating to CSX's claims against defendants, and its proposed findings of fact and conclusions of law by CSX and defendants' counterclaims against CSX and third-party claims against Mr. Ward. For the convenience of the Court, CSX and Mr. Ward respectfully submit the following proposed general findings of fact concerning the trial.

**Proposed Findings of Fact Concerning the Trial**

1. A trial was held before the Court on May 21 and 22, 2008.

2. The issues before the Court relating to the claims are as follows:

   2.1. Did defendants violate Section 13(d) of the Securities Exchange Act of 1934 and the rules and regulations thereunder by failing to file a timely Schedule 13D and by filing a false, misleading and incomplete Schedule 13D on December 19, 2007?

   2.2. Did defendants violate Section 14(a) of the '34 Act and the rules and regulations thereunder by filing false, misleading and incomplete preliminary proxy statements on Schedule 14A on March 10 and April 15, 2008, and definitive proxy statement on Schedule 14A filed on April 28, 2008?

   2.3. Are defendants Chris Hohn and Alexandre Behring individually liable for violations of Sections 13(d) and 14(a) because they are controlling persons of defendants TCI and 3G pursuant to Section 20(a) of the '34 Act?

   2.4. Did defendants fail to comply with Article I, Section 11, of the CSX Amended and Restated Bylaws in connection with nominating five persons for election to the CSX board of directors and proposing amendments to the Bylaws?

3. The issues before the Court relating to the counterclaims are as follows:

    3.1. Did CSX violate Section 14(a) of the '34 Act and rules and regulations thereunder by failing to disclose that the grant of performance units on May 1, 2007 pursuant to the CSX 2007-2009 Long Term Incentive Plan, and the grant of stock to the CSX directors in December 2007, violated the CSX Insider Trading Policy, Code of Ethics and Corporate Governance Guidelines?

    3.2. Did statements by Michael J. Ward, CSX's chairman and chief executive officer, in an editorial of March 11, 2008 and in a press release of March 17, 2008, and by Edward J. Kelly III, CSX's presiding director, in a letter of February 14, 2008, and the press release of March 17, 2008, violate Rule 14a-9 because they were false and misleading?

    3.3. Is Michael J. Ward individually liable for violations by CSX of Section 14(a) as a controlling person pursuant to Section 20(a) of the '34 Act?

    3.4. Do the bylaw amendments relating to special meetings of shareholders, adopted by the CSX Board of Directors in February 2008, violate Virginia law?

4. The following witnesses appeared at trial for CSX:

    4.1. Michael J. Ward, chairman and chief executive officer of CSX, who testified concerning his March 11, 2008 editorial and CSX's decision to postpone the date of its 2008 annual meeting and commence this lawsuit.

    4.2. Edward J. Kelly III, presiding director of CSX's Board of Directors, who testified concerning the February 2008 bylaw amendments, and his discussions with Chris Hohn of TCI in January 2008 and his opinion that TCI appeared intent on "achieving effective control" of CSX.

    4.3. Oscar Munoz, CSX's chief financial officer, who testified concerning CSX's interactions with TCI and 3G during 2006 and 2007.

    4.4. David H. Baggs, who is in charge of CSX's investor relations and also testified concerning CSX's interactions with TCI and 3G during 2006 and 2007.

    4.5. William C. Richardson, the chairman of the CSX Board's Compensation Committee, who testified concerning the CSX 2007-2009 Long Term Incentive Plan and the grants of performance units made under that Plan on May 1, 2007. Defendants elected not to cross-examine Dr. Richardson.

    4.6. Ellen M. Fitzsimmons, CSX's Senior Vice-President for Law and Public Affairs, and general counsel, who testified concerning (a) the issuance of stock to the CSX directors pursuant to the Stock Plan for Directors, and (b) why CSX did not assert, prior to March 17, 2008, that TCI had violated CSX's bylaw

relating to the nomination of directors. Defendants elected not to cross-examine Ms. Fitzsimmons.

    4.7.    Alan Miller, co-chairman of Innisfree M&A Incorporated, CSX's proxy solicitation advisor, who testified concerning the circumstances surrounding his reports to the CSX management and Board concerning an aberrant movement of CSX shares around the original February 27, 2008 record date for the annual meeting and the subsequent record date.

5.    The following witnesses appeared at trial for defendants TCI and 3G:

    5.1.    Alexandre Behring, managing director of 3G.

    5.2.    Chris Hohn, the managing partner and founder of TCI.

    5.3.    Snehal Amin, a TCI partner.

    5.4.    In addition, the depositions of Richard Kennedy of Citigroup and John Arnone and Paul Busby of Deutsche Bank were accepted in lieu of direct testimony, pursuant to stipulation of the parties.

6.    The Court received in evidence numerous documentary exhibits, as well as designations and counterdesignations from pretrial depositions, subject to the parties' objections, which the Court will consider.

7.    The expert reports of Bradford Cornell and Daniel Fischel were accepted into evidence by stipulation. The expert reports of Marti Subrahmanyam and Frank Partnoy were provided to the Court. Professor Subrahmanyam's reports are accepted into evidence. The reports of Professor Partnoy are subject to plaintiff's motion to strike, which the Court will consider.

8.    The Securities and Exchange Commission public website indicates that the SEC Staff "usually recommends *amicus* participation only after a case has reached an appellate court." (http://www.sec.gov/litigation/briefs/amicusrequest.htm) However, the Court believes that this is a case in which it would be helpful to have the SEC's views at the trial level. On May 22, 2008, the Court wrote to the General Counsel of the SEC asking that the SEC provide its views, as *amicus curiae*, on the following issues:

    1.) Did the defendants have beneficial ownership, within the meaning of Regulation 13D, of the CSX shares held by their cash settled total return equity swap counterparties?

    2.) What mental state is required to establish the existence of a plan or scheme within the meaning of Rule 13d-3(b)?

In view of the expedited schedule, the Court requested any views that the SEC wished to express by June 4, 2008.

3

9. At the conclusion of the trial, the Court requested that the parties provide proposed findings of fact and conclusions of law by 5 p.m. on May 27, 2008, and that any replies be provided by 4 p.m. on May 29, 2008.

10. With respect to CSX's witnesses:

10.1. The Court had the opportunity to view the cross-examination of Messrs. Ward, Kelly, Munoz, Baggs and Miller and finds them to be credible.

10.2. Having heard no challenge to the testimony of Dr. Richardson and Ms. Fitzsimmons, the Court accepts their testimony as credible.

11. With respect to TCI and 3G's witnesses:

11.1. **Alexandre Behring.**

11.2. Mr. Behring's testimony on cross-examination was not credible and undermined the credibility of his direct testimony.

11.3. Mr. Behring's testimony that he did not have conversations with Chris Hohn of TCI in February 2007, at the time that 3G began making purchases of CSX stock, is not credible. (Tr. 98:16-98:18, 101:13-20.)

11.4. Mr. Behring's testimony that 3G's purchases of CSX stock from March 29 to April 17, 2007, had nothing to do with a meeting that he had with Snehal Amin of TCI on March 29, 2007, and that it was just a coincidence, is not credible. (Tr. 101:21-103:6.)

11.5. Mr. Behring's testimony that 3G's sales of CSX shares in August and September of 2007 were unrelated to TCI's doubts as to whether it would continue to hold its CSX shares and run a proxy fight is not credible. (Tr. 107:12-108:12.)

11.6. Mr. Behring's testimony that it was just coincidence that 3G began buying shares again between September 20 and October 15, 2007, right after Mr. Amin of TCI told D.F. King that "we are likely to proceed in a proxy contest," is not credible. (Tr. 107:4-11; 108:13-24.)

11.7. Mr. Behring's testimony that he did not know that Luis Moura and Dan Schwartz of 3G had talked to Mr. Amin of TCI about an investment in CSX is not credible. (Tr. 109:8-110:10.)

11.8. Mr. Behring's testimony that neither Mr. Moura nor Mr. Schwartz ever, in connection with 3G's purchases or sales of CSX stock, mentioned speaking to Mr. Amin of TCI is not credible. (Tr. 110:11-111:5.)

4

11.9.   Mr. Behring's testimony that he never spoke to Mr. Amin, Mr. Hohn or anyone else from TCI about purchases or sales of CSX stock or swaps prior to November 2007 is not credible.  (Tr. 112:2-113:17; 118:23-120:2.)

11.10.   Mr. Behring's testimony that he learned of TCI's activities regarding CSX through publicly available material is not credible.  (Tr. 113:18-114:20.)

11.11.   Mr. Behring's testimony that, between October 26, 2006, when TCI first began entering into CSX swaps, and May 8, 2007, when Mr. Amin made a speech at the Bear Stearns Conference, and despite the fact that he met with Mr. Hohn frequently, the subject of buying or selling CSX shares, swaps or CDS's never once came up from either himself or Mr. Hohn, is not credible.  (Tr. 114:21-115:25; 117:5-9.)

11.12.   Mr. Behring's testimony that, even after May 8, 2007, TCI and 3G didn't tell each other anything about their respective dealings in CSX securities is not credible.  (Tr. 117:10-21.)

11.13.   Mr. Behring's testimony that he didn't have conversations with TCI about TCI taking an activist role with respect to its investment in CSX until later on in 2007 is not credible.  (Tr. 123:4-9.)

11.14.   Mr. Behring's testimony that it was entirely coincidence that 3G overcame its concerns and began investing further in CSX on September 26, 2007, the same date that he met with Mr. Amin of TCI, is not credible.  (Tr. 124:10-125:1; 125:8-18; 126:3-11.)

11.15.   Mr. Behring's testimony that he "extrapolated" TCI's exposure to CSX from reports that Synergy received concerning its investment in TCI is not credible.  (Tr. 129:5-20.)

11.16.   Mr. Behring's testimony that he never spoke to Mr. Hohn before November 2007 about TCI and 3G acting as a group is not credible.  (Tr. 134:18-135:23.)

11.17.   Mr. Behring's testimony that he did not know before Thanksgiving 2007 that TCI was contacting potential nominees for the CSX board of directors is not credible.  (Tr. 136:3-137:1.)

11.18.   Mr. Behring's testimony that, when he met with Mr. Lamphere on October 8, 2007, he had no idea that Mr. Hohn was meeting with Mr. O'Toole on the same day is not credible.  (Tr. 137:2-138:7.)

11.19.   Mr. Behring's testimony that around October 11, he and Mr. Hohn did not tell each other that they had met with candidates for the CSX Board is not credible.  (Tr. 138:8-19.)

5

11.20. Mr. Behring's testimony that, when he met with Mr. Amin on October 17, 2007, he did not tell Mr. Amin that he had met with Mr. Lamphere five days earlier is not credible. (Tr. 138:20-139:8.)

11.21. Mr. Behring's testimony that Mr. Schwartz's email referring to the deadline for shareholder proposals at the CSX annual meeting was just "part of your normal due diligence on any investment we make" is not credible. (Tr. 140:15-143:22.)

11.22. Mr. Behring's initial testimony that 3G was "not giving serious consideration to an activist scenario at that point [April 3, 2007] yet" was not credible, and he was forced to retract it. (Tr. 144:19-146:20.)

11.23. Mr. Behring's testimony that, the "investor group" that has "substantial rail sector expertise and experience and a credible team if management is not receptive," referred to in a document dated October 27, 2007, is not the TCI/3G group is not credible. (Tr. 149:16-150:16.)

12. **Chris Hohn.**

12.1. Mr. Hohn's testimony on cross-examination was not credible and undermined the credibility of his direct testimony.

12.2. Mr. Hohn's testimony that, in a paragraph in his email to Mr. Amin of February 13, 2007, the first sentence refers to CSX, but the second sentence ("I want to also discuss our friend Alex in Brazil") refers to Arcelor is not credible. (Tr. 155:17-158:18.)

12.3. Mr. Hohn's testimony that, when he spoke to Mr. Behring in January or February 2007 about CSX, he did not tell Mr. Behring the size of TCI's investment in CSX is not credible. (Tr. 160:22-161:13.)

12.4. Mr. Hohn's testimony that he never discussed with Mr. Behring whether TCI was going to purchase more shares of CSX is not credible. (Tr. 163:11-16.)

12.5. Mr. Hohn's testimony that "[w]e are very careful not to ever tip another investor as to whether we are going to increase our stake in a company or not, because that would disadvantage our investors", is not credible. (Tr. 163:13-16.)

12.6. Mr. Hohn's testimony that TCI and 3G never discussed their respective purchases of CSX stock is not credible. (Tr. 163:17-164:20; 167:18-170:12.)

12.7. Mr. Hohn's testimony that he was not encouraging Lone Pine Capital to purchase CSX stock is not credible. (Tr. 172:21-173:15.)

6

12.8. Mr. Hohn's testimony that, while he told another hedge fund that was not an investor in TCI (Deccan) to buy CSX stock, he never recommended CSX to 3G, which is an investor in TCI, is not credible. (Tr. 175:3-10.)

12.9. Mr. Hohn's testimony that TCI did not solicit Austin Friars' support for TCI's activism campaign is not credible. (Tr. 178:2-8.)

13. **Snehal Amin.**

13.1. Mr. Amin's testimony on cross-examination was not credible, and undermined the credibility of his direct testimony.

13.2. Mr. Amin's testimony that, at his March 29, 2007, meeting with Mr. Behring, they did not discuss that TCI was about to buy shares of CSX when TCI's Hart-Scott-Rodino waiting period expired, and that TCI and 3G never discussed buying or selling CSX shares, is not credible. (Tr. 196:22-197:14.)

13.3. Mr. Amin's testimony that he did not discuss the buying of CSX shares at his meeting with Mr. Behring on September 26, 2007, is not credible. (Tr. 197:15-17.)

13.4. Mr. Amin's testimony that he never discussed, in any of his meetings with Mr. Behring, the subject of buying or selling CSX stock or putting on swap positions is not credible. (Tr. 212:19-213:3.)

13.5. Mr. Amin's testimony that TCI was not looking to have a new CEO at CSX in April 2007, when Mr. Amin and Mr. Hohn talked about approaching Hunter Harrison, is not credible. (Tr. 199:22-201:5.)

13.6. Mr. Amin's testimony that D. F. King did not assume that swaps had been hedged with physical shares is not credible. (Tr. 201:23-202:6.)

13.7. Mr. Amin's testimony that he did not assume that each counterparty would hedge with physical shares is not credible. (Tr. 202:22-203:1; 206:8-18.)

13.8. Mr. Amin's testimony that he stated that it was unfortunate that Mr. Hohn sent his proposal to Mr. Kelly of CSX by email because "things like this are better discussed in person" is not credible. (Tr. 207:20-208:15.)

13.9. Mr. Amin's testimony concerning DX 96 was misleading insofar as he did not acknowledge that the scenario depicted in that exhibit was one of a number of different scenarios. (Tr. 208:24-210:11; 217:21-23.)

13.10. Mr. Amin's testimony that TCI did not put swaps in Deutsche Bank so that TCI could try to influence them to vote because of the influence of Austin Friars is not credible. (Tr. 218:8-20.)

14. Defendants elected not to call as a witness Peter Harkins of D.F. King & Co., defendants' proxy solicitation firm, thus further buttressing the credibility of Alan Miller's testimony.

Dated: May 27, 2008
      New York, NY

Respectfully submitted,

**CRAVATH, SWAINE & MOORE LLP,**

by _/s/ Rory O. Millson_
    Rory O. Millson
    Francis P. Barron
    David R. Marriott
    Members of the Firm

Attorneys for Plaintiff
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

RMillson@cravath.com
FBarron@cravath.com
DMarriott@cravath.com

DEWEY PEGNO & KRAMARSKY LLP
Keara A. Bergin
220 East 42nd Street
New York, NY 10017
(212) 943-9000
KBergin@dpklaw.com

FRIEDMAN KAPLAN SEILER & ADELMAN LLP
Lance J. Gotko
Paul J. Fishman
1633 Broadway
New York, NY 10019-6708
(212) 833-1100
LGotko@fklaw.com
PFishman@fklaw.com

Attorneys for Plaintiff CSX

8