UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CSX CORPORATION,

                                        Plaintiff,

v.

THE CHILDREN'S INVESTMENT FUND
MANAGEMENT (UK) LLP, THE CHILDREN'S
INVESTMENT FUND MANAGEMENT
(CAYMAN) LTD., THE CHILDREN'S
INVESTMENT MASTER FUND, 3G CAPITAL
PARTNERS LTD., 3G CAPITAL PARTNERS,
L.P., 3G FUND, L.P., CHRISTOPHER HOHN,
SNEHAL AMIN AND ALEXANDRE
BEHRING, A/K/A ALEXANDRE BEHRING
COSTA,

                                     Defendants.

THE CHILDREN'S INVESTMENT MASTER
FUND,

                                Counterclaim and Third-
                                Party Plaintiff,

v.

CSX CORPORATION AND MICHAEL WARD,

                                Counterclaim and Third-
                                Party Defendants.

3G CAPITAL PARTNERS LTD., 3G CAPITAL
PARTNERS, L.P. AND 3G FUND, L.P.

                                Counterclaim Plaintiffs,

v.

CSX CORPORATION AND MICHAEL WARD,

                                Counterclaim Defendants.

ECF Case

08 Civ. 02764 (LAK) (KNF)

**CSX'S REPLY IN SUPPORT OF ITS
MOTION *IN LIMINE* TO EXCLUDE
THE EXPERT REPORTS OF FRANK
PARTNOY**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ...............................................................................................................1

ARGUMENT.......................................................................................................................2

I.   PROFESSOR PARTNOY'S LEGAL ANALYSIS IS IMPROPER AND
     FLAWED. ...............................................................................................................2

II.  PROFESSOR PARTNOY IS NOT QUALIFIED TO OPINE ON ECONOMIC
     ISSUES. ..................................................................................................................7

CONCLUSION..................................................................................................................11

## TABLE OF AUTHORITIES

**Page**

**CASES**

*EEOC v. Morgan Stanley & Co.*,
  324 F. Supp. 2d 451 (S.D.N.Y. 2004) .................................................................................. 4, 8

*Highland Capital Mgmt., L.P. v. Schneider*,
  --- F. Supp. 2d ----, 2008 WL 282769 (S.D.N.Y. Jan. 31, 2008) ........................................... 5

*In re Rezulin Prods. Liability Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) ...................................................................................... 4

*Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*,
  No. 95 Civ. 3901 (PKL), 1999 WL 946354 (S.D.N.Y. Oct. 19, 1999) ................................... 3

*S.E.C. v. Drexel Burnham Lambert, Inc.*,
  837 F. Supp. 587 (S.D.N.Y. 1993) ........................................................................................... 4

*S.E.C. v. U.S. Env'tl, Inc.*,
  No. 94 Civ. 6608 (PKL)(AJP), 2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002) ............. 3, 5, 6

*United States v. Bilzerian*,
  926 F.2d 1285 (2d Cir. 1991) ................................................................................................... 3

*United States v. Dukagjini*,
  326 F.3d 45 (2d Cir. 2003) ..................................................................................................... 10

*United States v. Stewart*,
  433 F.3d 271 (2d Cir. 2006) ..................................................................................................... 2

**STATUTES & RULES**

17 C.F.R. § 240.13d-3(a) ............................................................................................................ 3, 4

Fed. R. Evid. 403 ........................................................................................................................ 6, 10

Fed. R. Evid. 702 ................................................................................................................. 4, 6, 7, 10

- iii -

**OTHER AUTHORITIES**

Motion in Limine by Plaintiff Securities and Exchange Commission to Exclude
   Testimony by Defendants' Expert Witnesses Charles Haggerty and Frank Partnoy,
   *S.E.C. v. Todd*,
   No. 03CV2230 (BEN)(WMC), 2006 WL 3031653 (filed Sept. 5, 2006) ..................................8

## INTRODUCTION

The expert reports TCI submitted from Professor Partnoy consist exclusively of legal opinions, which are impermissible, and purported economic analysis, which Professor Partnoy is not qualified to perform. They should thus be excluded in full. In its Opposition, TCI devotes less effort to confronting these fundamental problems in Professor Partnoy's testimony than to attacking the opinions of Dr. Subrahmanyam, CSX's economic expert. Tellingly, however, TCI has not moved to exclude any of Dr. Subrahmanyam's testimony—and for good reason. Unlike Professor Partnoy, Dr. Subrahmanyam does not attempt to instruct the Court on the meaning of statutes, regulations and contracts, and Dr. Subrahmanyam is an unquestionably qualified economist. Indeed, nowhere does TCI argue otherwise. TCI's half-hearted criticisms of Dr. Subrahmanyam are nothing more than a diversion from the real failings of Professor Partnoy's reports, for which TCI has no defense.

*First*, Professor Partnoy impermissibly opines on legal questions. In its Opposition, TCI either ignores the offending testimony that CSX specifically identified or defends Professor Partnoy by misstating the content of his reports. Neither tactic can save his improper legal testimony. Further, TCI does not dispute that Professor Partnoy applies the wrong legal standard, which makes his reports irrelevant, unhelpful and therefore inadmissible. *See* Argument Part I.

*Second*, Professor Partnoy is unqualified to offer the economic analysis he purports to provide. Professor Partnoy is a lawyer, not an economist. He is not qualified to opine as an expert on the economic issues, pressures and incentives that are the focus of Dr. Subrahmanyam's reports. Professor Partnoy's discussion of economics is neither reliable nor fit for admission. *See* Argument Part II.

## ARGUMENT

**I.  PROFESSOR PARTNOY'S LEGAL ANALYSIS IS IMPROPER AND FLAWED.**

CSX's Opening Brief highlighted four specific areas where Professor Partnoy's "opinions" "purport[ed] to explain the law", thereby "trespass[ing] on the trial court's exclusive territory". *United States v. Stewart*, 433 F.3d 271, 311 (2d Cir. 2006). CSX established that:

1. Professor Partnoy inappropriately offers legal conclusions as to TCI's disclosure obligations by (a) providing *his* opinion on the meaning and extent of the U.S. securities laws; (b) offering the opinions of *others* on the scope of U.S. law; and (c) elevating asserted "market practice" to the status of controlling disclosure law. *See* CSX Mot. at 2-5 (citing Partnoy Report ¶¶ 9, 10, 12, 13, 31, 35, 77, 78, 105-07, 111; Parnoy Sur-Rebuttal ¶¶ 15, 24).

2. Professor Partnoy impermissibly offers policy arguments to justify his interpretation of what U.S. disclosure law should be. *See id.* at 5-6 (citing Partnoy Report ¶¶ 9, 18-19, 105-10).

3. Professor Partnoy improperly interprets contractual terms to determine the scope of TCI's legal power under its swap agreements. *See id.* at 6-7 (citing Partnoy Report ¶¶ 9-11, 45-52, 79, 112; Partnoy Sur-Rebuttal ¶¶ 2, 41).

4. Professor Partnoy impermissibly opines on whether certain information is legally "relevant" or "material". *See id.* at 7-8 (citing Partnoy Report ¶¶ 30, 36, 75, 87).

TCI's Opposition completely ignores the second, third and fourth flaws in Professor Partnoy's reports, apparently conceding his overstepping in those areas. *See* Opp'n at 5-8.

With respect to the first flaw, TCI asserts that Professor Partnoy's opinions are proper, but it does so only by ignoring and distorting what he actually said. TCI contends that when Professor Partnoy discusses the meaning and extent of U.S. disclosure law, he is actually "demonstrating that [Dr.] Subrahmanyam's opinions run

counter to market practice regarding equity derivatives" rather than "instructing the Court on any legal standard". Opp'n at 5. This argument is refuted by the actual text of Professor Partnoy's reports—which TCI studiously avoids quoting.

Professor Partnoy's actual words go well beyond a survey of the "practices and usages of a trade". *Id.* (quoting *S.E.C. v. U.S. Env'tl, Inc.*, No. 94 Civ. 6608 (PKL)(AJP), 2002 WL 31323832, at *3 (S.D.N.Y. Oct. 16, 2002)). Professor Partnoy offers legal conclusions couched in terms of market practice in an effort to obscure their impropriety. *See United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991); *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 95 Civ. 3901 (PKL), 1999 WL 946354, at *3 (S.D.N.Y. Oct. 19, 1999). For example, Professor Partnoy insists:

- "[M]arket practice was that TCI ***would not have been required to disclose*** its equity swap positions". Partnoy Report ¶ 35 (emphasis added).

- "It is ***widely known*** that equity swap positions ***are not subject to the same disclosure regulations*** as shares." *Id.* ¶¶ 31, 78 (emphasis added).

- "Market participants generally ***understand*** that swap holdings ***do not trigger*** the Schedule 13D or Form 13F filings requirements." *Id.* ¶ 77 (emphasis added).

- "Market participants . . . ***understand the current distinction*** between the 'beneficial owner' of shares and swap counterparties who 'own the economics.'" *Id.* ¶ 107 (emphasis added).

- "[I]t is a well settled practice among market participants that equity swap positions of greater than 5% of a company's outstanding shares ***do not trigger*** the reporting requirements of Rule 13d-3(a)." *Id.* ¶¶ 105-06 (emphasis added).

These are definitive legal pronouncements, not a market survey of common practices. Professor Partnoy's opinions "are overly couched in legal language and reach legal conclusions", and "would be more appropriate when presented by defense

- 3 -

counsel themselves, rather than by an expert". *Morgan Stanley & Co.*, 324 F. Supp. 2d at 467 (excluding expert report relating to the "parking" of shares for venturing into impermissible legal areas). This testimony has no place in an expert report, and should be stricken under Federal Rule of Evidence 702.

Further, even if market practice can be a proper topic of expert testimony in appropriate circumstances, it is improper in this instance. Testimony regarding market practice is not appropriate when offered (as here) as evidence of the content of legal rules—that is for the Court alone to determine.[1] Indeed, "market practice" is entirely irrelevant to this dispute. Whether or not TCI's behavior deviated from some market norm is not the issue before the Court, and what "[m]arket participants generally assume" (Partnoy Report ¶ 77) is irrelevant to both TCI's practical economic influence and its black-letter legal duties. Instead, the proper inquiry is whether—*in this specific instance*—the economic incentives, pressures and relationships created by TCI's swap arrangements with third-party banks gave TCI the "ability significantly to influence" the investment decisions and votes of its counterparties. *See* 17 C.F.R. § 240.13d-3(a); *S.E.C. v. Drexel Burnham Lambert, Inc.*, 837 F. Supp. 587, 607 (S.D.N.Y. 1993). To the extent that Professor Partnoy attempts to focus on market practice, his opinions "are irrelevant to the present case, and will not assist the trier of fact". *EEOC v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451, 464 (S.D.N.Y. 2004) (excluding expert testimony where "[t]he fact that Morgan Stanley's compensation is consistent with industry practices is irrelevant to a determination of whether the company discriminated"); *In re*

---

[1] Furthermore, market practice is not a subject of Dr. Subrahmanyam's reports, and it is therefore out-of-bounds in a rebuttal report.

*Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 544 (S.D.N.Y. 2004) (excluding expert testimony because the "pertinent issues in this litigation are the obligations of a pharmaceutical company in testing, surveying and labeling medications, . . . not what is ethical").[2]

Finally, as demonstrated by CSX in its Opening Brief, Professor Partnoy's legal analysis is not only impermissible, it is also incorrect and irrelevant. *See* CSX Mot. at 8-11. Whereas Dr. Subrahmanyam addressed whether TCI's swap arrangements gave TCI the "ability significantly to influence" the investment decisions and votes of its counterparties (*see* Subrahmanyam Report ¶ 11; Subrahmanyam Rebuttal ¶ 17), Professor Partnoy focuses on the much narrower question of whether TCI had the technical legal "power to direct the disposition of CSX shares referenced in the swap agreements". Partnoy Report ¶ 14; *see also id.* ¶¶ 15, 17, 102, 112-13; Partnoy Sur-Rebuttal ¶¶ 14, 15, 29, 57, 59, 62, 75 n. 109. TCI does not contest this point in its Opposition. Instead, it attempts to pin the blame for Professor Partnoy's use of an incorrect legal standard on Dr. Subrahmanyam. *See* Opp'n at 8 n.6 ("However, as [Dr.] Subrahmanyam expressly states himself, that is precisely what he is concluding."). There is nothing to this, as shown by a more complete quotation of the footnote in Dr. Subrahmanyam's Rebuttal Report on which TCI relies:

> "Professor Partnoy misunderstands my conclusion regarding investment power -- that TCI had the ability 'effectively to determine' -- as something less than the ability 'significantly to

---

[2] By contrast, in the two cases cited by TCI, *see* Opp'n at 5-6, expert testimony regarding market practice was admissible because it was directly relevant to a factual dispute before the Court. *See U.S. Env'tl, Inc.*, 2002 WL 31323832, at *3 (market practice relevant to whether trading was "abnormal" and therefore evidence of market manipulation); *Highland Capital Mgmt., L.P. v. Schneider*, --- F. Supp. 2d ----, 2008 WL 282769, at *6 (S.D.N.Y. Jan. 31, 2008) (market practice relevant to whether broker-dealer had the authority to bind seller of promissory note to a third party despite seller's eventual refusal to settle trade).

> influence.' Partnoy Report ¶ 7. The opposite is true. What 'effectively to determine' was intended to say, and I think does say, is that *as a practical matter, given the economics of the circumstances of these transactions*, the counterparties had to acquire or dispose of CSX shares based on TCI's purchases and sales of CSX swaps." Subrahmanyam Rebuttal ¶ 17 n.14 (emphasis added).

Dr. Subrahmanyam's conclusion that, as an economic matter, the counterparties "had to" buy or sell CSX shares as TCI bought and sold CSX swaps is directly relevant to the legal issue before the Court of whether TCI had the ability significantly to influence the counterparties' investment decisions. On the other hand, Professor Partnoy's narrower conclusion that the counterparties were not legally obligated to buy or sell CSX shares is not in any probative of the broader question. TCI could very well have had—and in fact did have—the ability significantly to influence the counterparties' investment decisions, even without an actual legal right to require that CSX shares be bought or sold. Professor Partnoy's reports simply do not speak to this issue. As a result, his reports do not "fit" the economic considerations put forth by Dr. Subrahmanyam's reports and lack a valid connection to the pertinent inquiry before the Court. His reports are thus irrelevant, unhelpful and inadmissible under Federal Rules of Evidence 702 and 403. *See* CSX Mot. at 8-11.[3]

---

[3] While it has not moved to exclude any of his testimony, TCI also seeks to impugn Dr. Subrahmanyam by suggesting that his reports offer a legal opinion in violation of Federal Rule of Evidence 702. *See* Opp'n at 7-8. However, as outlined by one of the cases relied on by TCI, Dr. Subrahmanyam's testimony is "more similar to factual conclusions that embrace an ultimate issue than an ultimate legal conclusion", and is therefore admissible. *U.S. Env'tl*, 2002 WL 31323832, at *4. The ultimate legal issue in this case is whether disclosure was required. A finding that "TCI's swap arrangements gave TCI the ability effectively to determine the timing and size of the acquisition, holding, and disposition of the matching CSX shares by the counterparties" (Subrahmanyam Report ¶ 15) is—and must be—relevant to that issue, but that analysis stays within the proper factual confines of expert testimony. In contrast, Professor Partnoy's proclamations that CSX's legal claims are "counter . . . to prevailing regulatory pronouncements" and would establish new "violations of the securities laws" (Partnoy Report ¶ 111) are emblematic of impermissible legal conclusions.

## II.  PROFESSOR PARTNOY IS NOT QUALIFIED TO OPINE ON ECONOMIC ISSUES.

As demonstrated by CSX, once Professor Partnoy's impermissible legal conclusions are stripped from his reports, all that remains is attempted economic analysis. However, Professor Partnoy is unqualified to opine on the economic issues that are central to this case. He does not possess the necessary academic credentials or professional experience that would ensure that his testimony is reliable and of value to the Court. *See id.* at 11-17.

TCI "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence", Fed. R. Evid. 702 advisory committee's note (2000 Amendments), and it cannot meet it. Professor Partnoy has no economic credentials. He is a law professor, not a trained economist. He has no graduate, post-graduate or professional degree in the field. *See* Partnoy Report, Ex. A (Résumé). Indeed, TCI does not attempt to defend Professor Partnoy's economic *bona fides*. Rather, when challenged, it relies upon his ***legal*** credentials—i.e., that he is "a Professor of Law at the University of San Diego School of Law", that "he is Chair of the Center of Corporate and Securities Law", that he is a "graduate of Yale Law School", and that he "has taught various courses in the areas of corporate and securities law" and "financial market regulation". Opp'n at 2. These credentials are irrelevant to the particularized economic expertise at issue.

TCI also claims that "Professor Partnoy has been previously qualified as an expert". Opp'n at 2-3. However, it once again studiously avoids mentioning when—

- 7 -

if ever—Professor Partnoy has been qualified as an *economic* expert.[4]  Finally, TCI asserts that "it would be difficult to imagine a more qualified candidate to opine on *issues related to* equity-based derivatives than Professor Partnoy". *Id.* at 2 (emphasis added). Once again, TCI does not defend Professor Partnoy's ability to opine on *economic* issues and does not explain how Professor Partnoy's generalized legal knowledge in the derivatives field qualifies him to address the specific economic questions that are the focus of Dr. Subrahmanyam's reports.  *See* CSX Mot. at 12-13.[5]

In short, as the SEC once noted, Professor "Partnoy is [a] law professor, not an economist".  *See* Motion *in Limine* by Plaintiff Securities and Exchange Commission to Exclude Testimony by Defendants' Expert Witnesses Charles Haggerty and Frank Partnoy, *S.E.C. v. Todd*, No. 03CV2230 (BEN)(WMC), 2006 WL 3031653 (filed Sept. 5, 2006).  His testimony is "unreliable", *id.*, because his limited background and lack of relevant credentials rob him of any credible economic expertise.  *See Morgan Stanley & Co.*, 324 F. Supp. 2d at 467-68 (excluding testimony, in part, because the expert, "an attorney, is not qualified as an expert in securities and securities markets, but only about securities law").

As noted by CSX, the dangers of admitting Professor Partnoy's untrained economic analysis are evident.  For instance, as Dr. Subrahmanyam accurately opined (Subrahmanyam Rebuttal ¶ 30), Credit Suisse fully hedged its 850,000 share swap with

---

[4] Indeed, TCI does not identify the fields in which Professor Partnoy has *ever* been qualified as an expert in previous cases. *Compare* CSX Mot. at 15 n.5 (showing that the bulk of Professor Partnoy's attempted testimony generally dealt with matters befitting his background as a law professor).

[5] Similarly, TCI asserts that Professor Partnoy has "written, taught, and testified about *issues related to* derivatives, swaps, share lending and hedging, hedge funds, and hedge fund activism" (Opp'n at 2 (emphasis added)), but TCI is silent on whether Professor Partnoy has even written, taught or testified on such issues from an economic perspective rather than a legal one.

TCI on January 30, 2007 with matching physical shares on a perfect one-for-one basis. Dr. Subrahmanyam drew this conclusion even before Credit Suisse produced documents confirming it. In response, Professor Partnoy strongly criticized Dr. Subrahmanyam's analysis, in what TCI now tries to downplay as only an alternative "potential explanation". Opp'n at 4 n.4. Professor Partnoy's words make clear, however, that he thought Dr. Subrahmanyam had "struggle[d] to explain the absence of share purchase data" showing Credit Suisse's hedge and that Dr. Subrahmanyam's opinion had "no support". Partnoy Sur-Rebuttal ¶ 58. Professor Partnoy stated definitively: "The Form 13F data are consistent with a conclusion that Credit Suisse hedged its position on or about January 30, 2007, using equity derivatives, and later partially replaced its derivates with shares. Such trading practices -- particularly hedging one equity swap with another -- are not uncommon." *Id.* In fact, as TCI now must concede, *see* Opp'n at 4 n.4, Dr. Subrahmanyam was right and Professor Partnoy was wrong: Credit Suisse hedged one-for-one by acquiring matching physical CSX shares on the date of the swap. *See* CSX Mot. at 16.

Professor Partnoy's report is filled with similar mistakes. While he has identified 24 instances of alleged mismatches between TCI's swaps and its counterparties' hedging, all of his purported mismatches are illusory. Of the 24 alleged mismatches, 11 are instances where the trade was hedged one-for-one on the next trading day, as illustrated using Professor Partnoy's own chart. *See* Proposed Findings of Fact & Conclusions of Law of CSX Corporation Relating to Its Claims ("CSX FOF") ¶¶ 254-55. Of the remaining 13 alleged mismatches, 7 are instances where the trade was hedged one-for-one on the same or next trading day, but Professor Partnoy erroneously omitted the

data from his chart.  *Id.* ¶ 256.  The 6 remaining transactions are entirely *de minimis*.  *Id.* ¶ 257.

Professor Partnoy is not a trained economist, so such errors are bound to happen.  Federal Rule of Evidence 702 demands the exclusion of testimony "[w]hen an expert is no longer applying his extensive experience and a reliable methodology".  *United States v. Dukagjini*, 326 F.3d 45, 58 (2d Cir. 2003).  Here, Professor Partnoy has exceeded the boundaries of his qualifications.  Indeed, because Professor Partnoy's economic speculations do not—and cannot—provide either a meaningful rebuttal to Dr. Subrahmanyam's reports or reliable insight into the economic issues before the Court, exclusion is also warranted under Federal Rule of Evidence 403.

**CONCLUSION**

For the reasons set forth above, CSX respectfully requests that this Court strike the Rebuttal Expert Report and Sur-Rebuttal Expert Report of Frank Partnoy and exclude Professor Partnoy's proffered expert testimony.

Dated: May 29, 2008
       New York, NY

Respectfully submitted,

**CRAVATH, SWAINE & MOORE LLP,**

by
  /s/ David R. Marriott
           Rory O. Millson
           Francis P. Barron
           David R. Marriott
           Members of the Firm

Attorneys for Plaintiff
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

RMillson@cravath.com
FBarron@cravath.com
DMarriott@cravath.com

**DEWEY PEGNO & KRAMARSKY LLP**
Keara A. Bergin
220 East 42nd Street
New York, NY 10017
(212) 943-9000
KBergin@dpklaw.com

**FRIEDMAN KAPLAN SEILER & ADELMAN LLP**
Lance J. Gotko
Paul J. Fishman
1633 Broadway
New York, NY 10019-6708
(212) 833-1100
LGotko@fklaw.com
PFishman@fklaw.com

Attorneys for Plaintiff CSX