UNITED STATES DISTRICT COURT
FOR THE SOUTHERN OF NEW YORK

| | |
|---|---|
| CSX CORPORATION,<br><br>   Plaintiff,<br><br>   v.<br><br>THE CHILDREN'S INVESTMENT FUND MANAGEMENT (UK) LLP, THE CHILDREN'S INVESTMENT FUND MANAGEMENT (CAYMAN) LTD., THE CHILDREN'S INVESTMENT MASTER FUND, 3G CAPITAL PARTNERS LTD., 3G CAPITAL PARTNERS, L.P., 3G FUND, L.P., CHRISTOPHER HOHN, SNEHAL AMIN AND ALEXANDRE BEHRING, A/K/A ALEXANDRE BEHRING COSTA,<br><br>   Defendants. | ECF Case<br><br>08 Civ. 02764 (LAK) (KNF) |
| THE CHILDREN'S INVESTMENT MASTER FUND,<br><br>   Counterclaim and Third-Party Plaintiff,<br><br>   v.<br><br>CSX CORPORATION AND MICHAEL WARD,<br><br>   Counterclaim and Third-Party Defendants. | **DEFENDANTS' RESPONSE TO CSX'S PROPOSED FINDINGS OF FACT ON THE CONDUCT OF THE TRIAL** |
| 3G CAPITAL PARTNERS LTD., 3G CAPITAL PARTNERS, L.P. AND 3G FUND, L.P.,<br><br>   Counterclaim Plaintiffs,<br><br>   v.<br><br>CSX CORPORATION AND MICHAEL WARD,<br><br>   Counterclaim Defendants. | |

At the close of trial in this matter, the Court invited the parties to submit proposed findings of fact on their claims. Plaintiff CSX Corporation and Third-Party Defendant Michael Ward (collectively "Plaintiff" or "CSX") have submitted proposed findings on "the conduct of the trial" as a vehicle to present their argument on the credibility of trial witnesses. CSX's proposed findings are a piecemeal and misleading approach to the record -- taking statements out of context and attempting to focus on incomplete testimony. Defendants respectfully request that the Court reject Plaintiff's proposed findings of fact on the conduct of the trial. If the Court entertains such findings, then defendants respectfully request that the Court adopt defendants' Proposed Findings on the Conduct of the Trial filed today herewith.

**A. Defendants' Testimony is Credible and Supported by Documentary Evidence.**

In weighing the credibility of witnesses, the finder of fact must assess "the truthfulness or dependability of a witness …, his demeanor on the stand, his relationship to the case, the possibility of his being biased or partial or not being biased or partial, the reasonableness or unreasonableness of his statements, the strength or weakness of the witness' recollection and the extent to which the witness has either been corroborated or contradicted by testimony of other witnesses or by his own prior inconsistent statements or by exhibits or stipulations." *Morrison v. Solomons*, 494 F. Supp. 218, 221 (S.D.N.Y. 1980). In particular, in applying these standards, inconsistencies or lapses in memory are not a sufficient basis to discredit a witness' testimony and indeed may give "proof to his candor." *Id.* (finding witness' testimony credible where on "some occasions he showed himself subject to the normal frailties of human error or forgetfulness.")

At trial here, Alex Behring, Chris Hohn, and Snehal Amin faced vigorous questioning by experienced counsel. Each testified truthfully and to the best of his recollection. The Court had "the opportunity to judge not only the logic of their accounts and the extent to

which they were corroborated or not corroborated by other evidence, but also their demeanor." *Schuster v. Dragone Classic Motor Cars, Inc.*, 104 F. Supp. 2d 276, 278 (S.D.N.Y. 2000).

Plaintiff attempts to paint as deception the expectable instances of human error, such as forgetfulness or inconsistency. This tactic should be disregarded. As detailed in Defendants' post-trial briefs, the documentary record supports the Defendants' testimony. CSX has provided no evidence to support its contentions that any of the Defendants' testimony was untruthful or not credible, and confusion in answering certain questions was no doubt caused or contributed to by the confusing nature of some of the questions. It is apparent that the defendants' witnesses made no effort to twist the truth to conform their accounts of what happened. Indeed, Mr. Hohn was in the courtroom when Mr. Behring testified, but Mr. Hohn had no hesitation in stating his recollections even when they were more detailed than Mr. Behring's. This should be applauded, not attacked.

The Court should also consider whether Plaintiff's claims of collusion are logical in assessing credibility. There would have been no utility in defendants forming a group prior to late 2007. Specifically, Mr. Hohn testified, "there was absolutely zero purpose or value in forming a group during 2007 because you wouldn't be able to do anything with that until the following calendar year and if you wanted to change your mind and sell the shares because of changes in circumstances of the company or changes in circumstances of your fund, you would tie your hands if you were in a group prior to that period." (Tr. 182:11 - 182:17.) This statement is corroborated both by Mr. Behring's witness statement and by record evidence of independent trading activity. It is undisputed that in August of 2007, 3G began selling its shares in CSX while TCI held its position steady.

CSX also challenges Mr. Behring's testimony that 3G's February 2007 purchases of CSX shares were based on 3G's own research and were not due to conversations with Chris Hohn. (Pl. Proposed Findings of Fact on the Conduct of Trial (hereinafter, Pl. Findings), ¶ 11.3.) In truth, 3G began purchasing CSX stock by February 9th -- days before the February 13th conversation CSX references. Moreover, defendants' post-trial brief highlights the documentary evidence of 3G's independent research.

That the defendants' witnesses did not recall the specifics of every conversation is credible. If they had recalled every conversation that would strain credibility. Mr. Behring readily admitted that he spoke to Mr. Hohn approximately once a month. That is not surprising as 3G's fund of funds, Synergy, invests in TCI. And there can be no dispute that Mr. Behring, Mr. Hohn, and Mr. Snehal Amin discussed topics other than CSX. Indeed, CSX has noted that TCI consulted with Mr. Behring about investments in Brazil. Given the number of subject matters and the frequency of communication, Mr. Behring truthfully testified that he did not recall details of early discussions about CSX. (Tr. 156:12- 156:19.)

## B. Plaintiff Mischaracterizes the Record.

CSX mischaracterizes the defense witnesses' testimony and takes statements out of context in order to attack their credibility. For example, CSX claims that Mr. Behring testified he never spoke to Mr. Amin, Mr. Hohn or anyone else from TCI about the purchases or sales of CSX stocks or swaps prior to November 2007. (Pl. Findings ¶ 11.9.) CSX selectively parses the trial transcript. Specifically, Mr. Behring stated that while he did not discuss *specific* purchases of CSX with Mr. Hohn, he "had other conversations about CSX prior to that, [but that he did not] recall mentioning a specific or what we purchased and what we did not purchase." He also testified that he "recall[ed] talking about CSX, talking that we were investors [in CSX]

3

and all that, but not talking about the specific purchases or selling of securities by 3G." (Tr. 112:2 - 113:10.)

CSX also challenges Mr. Behring's testimony that 3G's sales of CSX shares in August and September of 2007 were unrelated to TCI's purported doubts about whether it would run a proxy fight. (Pl. Findings ¶¶ 11.4 and 11.13.) In fact, the evidence that CSX relies on actually supports Mr. Behring's testimony. A review of Mr. Behring's testimony in its entirety reveals that any meeting with Mr. Amin in September of 2007 was just one of many events during that time frame. More central to 3G's investment positions was the fact that during that same time period, 3G was growing increasingly more concerned with the state of the economy. In particular, by August 15, 2007, the market had dropped approximately 10% from its peak in June and accordingly 3G sold a large portion of its CSX shares in August and early September. (Tr. 108:5 - 108:12.) However, the Court may take judicial notice that the Federal Reserve then cut interest rates by 50 basis points on September 18, 2007, which led to the economy rebounding significantly by October 9, 2007. Accordingly, in light of this economic uptick, Mr. Behring's testimony concerning 3G's investments in September is entirely plausible and more creditable than Plaintiff's insinuation that such decisions were based on information about TCI's plans. Furthermore, during this same time period, unlike 3G, TCI did not sell its shares of CSX.

CSX also attacks that Mr. Behring's testimony about DX 53 (also marked as PX 142). Specifically, CSX contends that (despite three witnesses' sworn testimony to the contrary) the "investor group" referenced must be TCI and 3G. (Pl. Findings ¶ 11.23.) In fact, a review of the record in its entirety corroborates Mr. Behring's testimony. Mr. Gilbert Lamphere testified that he created the template for Project Improve (which is on Lamphere Capital letterhead) as a mathematical, hypothetical analysis. (G. Lamphere Dep. Tr. 16:3 - 16:11, 52:5 - 52:7.) Mr.

4

Lamphere was clear and emphatic that there was no group with TCI in October 2007. (Lamphere Dep. 24:17 - 24:21, 26:24 - 27:3.) Daniel Schwartz of 3G also testified that TCI and 3G were not a group in October and that he did not know what "investor group" Mr. Lamphere was referring to in his memo. (D. Schwartz Dep. Tr. 150:18-23.) It seems reasonably certain that the "group" was Lamphere and 3G.

   CSX also asserts that Mr. Amin's testimony that TCI did not put swaps in Deutsche Bank so that TCI could try to influence the vote is not credible. (Pl. Findings ¶ 13.10.) However, in positing such an assertion, CSX ignores its own witness, Mr. Miller, who cited several examples of hedge funds <u>not</u> being able to influence votes, including a case involving Deutsche Bank. (Partnoy Expert Report, ¶ 11.) Similarly, CSX asserts that Mr. Behring's testimony that he "extrapolated" to ascertain TCI's exposure to CSX was not credible. (Pl.'s Findings, ¶ 11:15.) And yet Mr. Miller claimed that this type of analysis is accurate. (Tr. 78:18-78:22.) CSX's tactical and selective excerpts of the record should not be given credence.

5

## CONCLUSION

For the above-stated reasons, Defendants respectfully request that the Court reject CSX's Proposed Findings of Fact on the Conduct of the Trial.

Dated:   May 29, 2008
         New York, NY

                          Respectfully submitted,

                          **SCHULTE ROTH & ZABEL LLP**

                          By _____/S/   Howard O. Godnick_____
                          Howard O. Godnick
                          Michael E. Swartz
                          David Momborquette
                          Attorneys for TCI, Christopher Hohn, and Snehal Amin
                          919 Third Avenue
                          New York, New York 10022
                          Telephone:  (212) 756-2000
                          howard.godnick@srz.com
                          david.momborquette@srz.com

                          **KIRKLAND & ELLIS LLP**

                          By _____/S/ Peter Doyle_____
                          Peter Doyle
                          Andrew Genser
                          Attorneys for 3G and Alexandre Behring
                          Citigroup Center
                          153 East 53rd Street
                          New York, New York 10022
                          Telephone:  (212) 446-4800
                          pdoyle@kirkland.com
                          agenser@kirland.com