UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CSX CORPORATION,

                                      Plaintiff,

          v.

THE CHILDREN'S INVESTMENT FUND
MANAGEMENT (UK) LLP, THE CHILDREN'S
INVESTMENT FUND MANAGEMENT
(CAYMAN) LTD., THE CHILDREN'S
INVESTMENT MASTER FUND, 3G CAPITAL
PARTNERS LTD., 3G CAPITAL PARTNERS,
L.P., 3G FUND, L.P., CHRISTOPHER HOHN,
SNEHAL AMIN AND ALEXANDRE BEHRING,
A/K/A ALEXANDRE BEHRING COSTA,

                                    Defendants.

---

THE CHILDREN'S INVESTMENT MASTER
FUND,

                     Counterclaim and Third-
                     Party Plaintiff,

          v.

CSX CORPORATION AND MICHAEL WARD,

                   Counterclaim and Third-
                     Party Defendants.

---

3G CAPITAL PARTNERS LTD., 3G CAPITAL
PARTNERS, L.P. AND 3G FUND, L.P.,

                     Counterclaim Plaintiffs,

          v.

CSX CORPORATION AND MICHAEL WARD,

                     Counterclaim Defendants.

ECF Case

08 Civ. 02764 (LAK) (KNF)

**MEMORANDUM PROVIDING
FACTUAL SUBSTANTIATION FOR
CSX'S ASSERTION THAT TCI IS
PRECLUDED FROM RELYING ON
THE ADVICE OF COUNSEL**

## Table of Contents

Page

Preliminary Statement ................................................................................................ 1

Substantiation of CSX's Assertion ........................................................................... 3

I.   TCI REFUSED TO PRODUCE RELEVANT DOCUMENTS. ............................ 3

II.  TCI FAILED TO PROVIDE RELEVANT DEPOSITION TESTIMONY. ........... 5

III. TCI INSTRUCTED AND/OR ALLOWED THIRD PARTIES TO
     ASSERT PRIVILEGE ON ITS BEHALF. ............................................................ 7

IV.  TCI'S PRIVILEGE LOG CONFIRMS THE EXTENT OF ITS REFUSAL
     TO ALLOW DISCOVERY. ................................................................................ 10

Conclusion ................................................................................................................ 16

i

CSX Corporation ("CSX") respectfully submits this memorandum pursuant to the Court's Order of June 2, 2008, to "provide factual substantiation" for its assertion that "TCI is precluded from relying on any advice of counsel defense by its assertion of privilege to foreclose discovery on the subject".

**Preliminary Statement**

CSX contends that TCI secretly acquired a significant economic stake in CSX, through a series of complex swap transactions, in order to exert influence and control over CSX; shared information about its position and plans with its friends while simultaneously withholding that information from the market; formed an undisclosed group with 3G and others in early 2007; and, with 3G, undertook a proxy fight against CSX, first by stealth and later through a series of misleading statements and omissions.

CSX served a series of discovery requests on TCI seeking information relating to this scheme, including but not limited to, TCI's swap arrangements, its dealings with 3G and other members of the undisclosed group, and the misleading statements and omissions in the Group's proxy materials. CSX's requests called for the production of documents and information relating to TCI's intent and any legal advice upon which TCI might seek to rely in its defense.

Rather than produce the documents and information requested, TCI consistently objected on grounds that the documents and information requested were protected from discovery by the attorney-client privilege and the work-product doctrine. TCI objected to CSX's document demands on grounds of privilege. TCI objected to CSX's interrogatories on grounds of privilege. And TCI objected to CSX's request for deposition testimony on grounds of privilege.

1

More importantly, TCI stood by its objections through discovery, withholding thousands of documents from production and recalling (pursuant to the protective order) allegedly privileged documents produced inadvertently. Despite the fact that TCI appears not to have searched the files of its lawyers, TCI's privilege log lists more than 3,700 documents withheld on grounds of privilege. In addition, TCI refused to provide complete interrogatory answers and to allow deposition testimony concerning its scheme, also on grounds of privilege.

Consistent with its privilege objections, TCI omitted from its answer an affirmative defense of good faith. Similarly, TCI omitted from its list of persons with knowledge any lawyers from TCI or its outside counsel; it also made no mention in its pretrial disclosures of documents concerning TCI's supposed good faith. The Joint Final Pretrial Order is likewise silent as to CSX's purported good-faith defense.

Putting aside the fact that TCI failed to plead a defense of good faith in its answer or to mention it in its pretrial disclosure or in the Final Pretrial Order (which are beyond the scope of the Court's request for substantiation), TCI is barred from asserting its good faith or contesting CSX's showing of bad faith because, as is discussed below, (1) TCI failed to produce relevant documents or provide complete answers to interrogatories (see Section I below); (2) failed to allow relevant deposition testimony (see Section II below); and (3) instructed or allowed third parties to assert privilege on its behalf (see Section III below). TCI's privilege log illustrates the scope of its refusal to provide discovery relating to its new-found claims of good faith. (See Section IV below.)[1]

---

[1] Citations herein are to the Exhibits appended to the Declaration of David R. Marriott; citations are given as "Ex. __".

**Substantiation of CSX's Assertion**

## I. TCI REFUSED TO PRODUCE RELEVANT DOCUMENTS.

CSX served a series of document requests on TCI regarding its scheme to evade the reporting requirements of Section 13(d). (<u>See</u> Exs. 1-2.) By way of example, in its First Request for Production of Documents (Ex. 1), CSX requested the following:

- <u>Request No. 1.</u>  All documents concerning any actual or proposed swap arrangement (or any other derivative instrument) that relates to CSX or any interest in or economic exposure to CSX or to CSX securities, including but not limited to all documents concerning: (a) the swap arrangements identified in the Schedule 13D or Schedule 14A, <u>including advice on the applicability or application of the federal securities laws to these swap arrangements</u> (emphasis added); . . .

- <u>Request No. 2.</u>  All documents concerning any actual or potential contract, agreement, arrangement, understanding or relationship between or among any of you and any other person or persons that relates to CSX, including but not limited to all documents concerning: . . .(e) <u>advice on the applicability or application of the federal securities laws to such relationships or potential relationships with respect to CSX</u> (emphasis added) . . .

- <u>Request No. 3.</u>  All documents concerning CSX, including but not limited to all documents concerning: (a) actual or proposed investments in CSX; (b) the ownership of any interest in or economic exposure to CSX or to CSX securities; . . . (f) the purposes of your holding of an interest in CSX; (g) past, present or future plans or proposals to liquidate CSX, to sell its assets to or merge it with any other persons, or to make any other major change in its business or corporate governance; (h) communications with any person concerning CSX; . . . (k) <u>the Schedule 13D, including advice on the applicability or application of the federal securities laws to defendants' interests in CSX</u> (emphasis added).

CSX's Second Request for Production of Document (<u>see</u> Ex. 2) likewise requested documents going to the heart of TCI's new-found claim of good faith.  For example, CSX sought:

- <u>Request No. 2.</u>  All documents relating to defendants' "investment in CSX", "swap arrangements", "proxy solicitation", and "Schedule 13D", all as identified in defendants' Rule 26(a)(1) Initial Disclosures.

- <u>Request No. 3</u>.  All documents relating to any relationship between or among any defendant and any other person or persons with which that defendant has had any communications or dealings relating to CSX, including but not limited to any of the swap counterparties identified in defendants' Schedule 14A.

While less express than CSX's first set of document requests, these requests plainly called for the production of all documents concerning any and all legal advice upon which TCI might seek to rely.

Rather than produce the requested documents, TCI objected generally on the grounds that, among other things, the documents requested were protected by the attorney client privilege and/or the work-product doctrine.  In response to CSX's First Set of Document Requests, TCI stated, "TCI defendants object to the Requests to the extent that they call for the production of information or documents protected from disclosure by the attorney-client privilege, the work-product doctrine and/or any other applicable privilege, immunity, or exemption from disclosure."[2] (Ex. 3, General Obj. ¶ 2.)  Similarly, in response to CSX's Second Request for the Production of Documents, TCI stated, "TCI defendants object to the Requests to the extent that they call for the production of information or documents protected from disclosure by the attorney-client privilege, the work-product doctrine and/or any other applicable privilege, immunity or exemption from disclosure."  (Ex. 4, General Obj. ¶ 2.)

In addition to its general objections, TCI specifically objected to CSX's document demands on grounds of privilege.  (Ex. 3 at 4-5; Ex. 4 at 5-6.)  For example:

---

[2] While the Court's request for substantiation was limited to TCI, we note that 3G made essentially the same objections to the same requests.  (<u>See</u> Ex. 5, General Obj. ¶ 5; Ex. 6, General Obj. ¶ 5.)  Given the scope of the Court's request, we do not deal further with 3G, except to say that it is in the same boat as TCI.

- <u>Response to CSX's First Set of Requests, Request No. 1.</u>  The TCI Defendants object to subpart (a) of this Request insofar as it seeks documents protected by the attorney-client privilege and/or work product doctrine.

- <u>Response to CSX's First Set of Requests, Request No. 2.</u>  The TCI Defendants object to subpart (e) of this Request insofar as it seeks documents protected by the attorney-client privilege and/or work product doctrine.

Despite repeated requests, TCI refused to supply a complete source log identifying the persons whose files were searched for responsive documents.  So far as we can tell, TCI did not even search the files of the lawyers on whose advice it now purports to rely.  No lawyer is listed on TCI's partial source log.[3]  In any case, it is undisputed and indisputable that TCI withheld large quantities of documents relating to its claim of good faith reliance on advice of counsel.[4]  (<u>See</u> Section IV below.)

## II.   TCI FAILED TO PROVIDE RELEVANT DEPOSITION TESTIMONY.

In addition to seeking documents, CSX served a 30(b)(6) notice on TCI (Ex. 7) seeking essentially the same information requested by CSX in its document demands.  Among the subjects on which CSX sought deposition testimony were:

- <u>Subject No. 1.</u>  Any actual or proposed swap arrangement (or any other derivative instrument) that relates to CSX or any interest in or economic exposure to CSX or to CSX securities, including but not limited to:  (a) the swap arrangements identified in the Schedule 13D or Schedule 14A, <u>including advice on the applicability or application of the federal securities laws to these swap arrangements</u> (emphasis added); . . .

---

[3] TCI ultimately produced a partial source log.  The partial log does not, however, identify any lawyers – from either Proskauer Rose, Schulte Roth, or anywhere else – as the source of documents produced by TCI.

[4] TCI also objected to CSX's interrogatories on grounds of privilege.  Because the interrogatories are less inclusive than CSX's document demands and deposition notices, they add little to the story and are not separately discussed.

- <u>Subject No. 2.</u>  Any actual or potential contract, agreement, arrangement, understanding or relationship between or among any of you and any other person or persons that relates to CSX, including but not limited to: . . . (e) <u>advice on the applicability or application of the federal securities laws to such relationships or potential relationships with respect to CSX</u> (emphasis added); and

- <u>Subject No. 3.</u>  CSX, including but not limited to:  (a) actual or proposed investments in CSX . . .; (b) the ownership of any interest in or economic exposure to CSX or to CSX securities . . .; (d) the number of shares of CSX beneficially owned by the defendants and their associates, and the number of shares concerning which the defendants (or their associates) have a right to acquire, directly or indirectly; (e) any contracts, arrangements, or understandings with any person with respect to any securities of CSX, . . . (f) the purposes of your holding of an interest in CSX; . . . (k) <u>the Schedule 13D, including advice on the applicability or application of the federal securities laws to defendants' interests in CSX, and including information relating to defendants' Schedule 13D</u> . . . . (emphasis added).

Like CSX's document demands, its 30(b)(6) notice to TCI plainly called for testimony concerning any and all legal advice upon which TCI might seek to rely.

Here again, TCI raised the privilege as a shield to discovery.  TCI objected generally to the notice "to the extent that it calls for testimony that is protected by the attorney/client privilege, the work-product doctrine, or any other applicable privilege or immunity."  (Ex. 8, General Obj. ¶ 6.)  TCI also asserted specific objections to the notice (Ex. 8 at 4-7):

- <u>Response to Subject No. 1.</u>  TCI objects to subpart (a) of this Subject insofar as it would require a corporate representative to testify about information protected by the attorney-client privilege and/or work product doctrine.

- <u>Response to Subject No. 2.</u>  TCI objects to subpart (e) of this Subject because it would require a corporate representative to testify about information protected by the attorney-client privilege and/or work product doctrine.

- <u>Response to Subject No. 3.</u>  TCI objects to subpart (k) of this Subject to the extent it would require a corporate representative to testify about

6

>information protected by the attorney-client privilege and/or work product doctrine.

Despite its objections, TCI initially designated a lawyer from Schulte Roth & Zabel, Mark Weingarten, to testify as corporate representative to address certain of CSX's deposition topics. (Ex. 12.) So that there would be no question about the waiver that would result from Mr. Weingarten's testimony, we specifically advised TCI that designating Mr. Weingarten as a fact witness would result in a broad waiver of the privilege and suggested that the parties try to agree in advance of the deposition as to the scope of the waiver to avoid unnecessary disputes. (Ex. 13.) Recognizing that designating Mr. Weingarten as a witness would in fact waive any claim of privilege, TCI withdrew him as a witness. (Ex. 14.) While TCI produced Mr. Amin to address some of the subjects in CSX's notice of deposition, it never withdrew its privilege objections and never produced a witness to testify fully on the subject matter now in dispute. Put differently, TCI refused to make witnesses available for deposition on the subject matter on which it belatedly claims to have acted in good faith.[5]

### III. TCI INSTRUCTED AND/OR ALLOWED THIRD PARTIES TO ASSERT PRIVILEGE ON ITS BEHALF.

CSX served on D.F. King & Co., Inc., ("D.F. King"), TCI's proxy solicitation firm, a subpoena for production of documents. (Ex. 9.) CSX requested, among other things, all documents in D.F. King's possession that related to CSX, including any

---

[5] TCI also invoked the privilege as a shield at the depositions of its fact witnesses. For example, counsel refused to allow Mr. Hohn to reveal any legal advice he received about the need to disclose TCI's swaps. (Ex. 15 at 139:9-18.) Notably – and in direct contradiction to Mr. Hohn's claims of good faith reliance on counsel – he testified at deposition that TCI did not ask counsel whether it needed to disclose its swaps because it already knew the answer. (Ex. 15 at 139:19-140:5.)

analyses of CSX shareholders; of how swaps were treated for purposes of calculating the ownership of CSX; and of the voting and investment power of any swaps referencing CSX shares. (Ex. 9.)

D.F. King objected to the subpoena, presumably at TCI's direction and certainly with its knowledge, on the grounds that, among other things, the subpoena sought "information prepared in anticipation of litigation, protected by the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege or doctrine". (Ex. 10.) On its privilege log, dated May 2, 2008 (Ex. 16), D.F. King withheld from production on grounds of privilege documents generally described as, for example:

- CSX proxy contest voting analysis and strategy
- CSX proxy contest and shareholder analysis
- CSX proxy contest advice and strategy
- CSX proxy contest and investor analysis and strategy
- CSX proxy contest and investor information and strategy
- CSX proxy contest scenario and analysis, advice and strategy
- CSX proxy contest scenario analysis (Ex. 16.)

CSX also served on D.F. King a 30(b)(6) notice (Ex. 9) asking it to provide a witness to testify as to:

- Subject No. 1.  The ownership of CSX, including but not limited to any enumeration of the shareholders of CSX, any enumeration of the types of shareholders of CSX, any analysis of the ownership of CSX, any and all methods of calculating the ownership of CSX, any type of ownership of CSX (including beneficial ownership), and how swaps and/or other derivative instruments were treated for purposes of calculating the ownership of CSX.

8

- Subject No. 2.  Any communications referring or relating to the ownership of CSX, including but not limited to any enumeration of the shareholders of CSX, any enumeration of the types of shareholders of CSX, any analysis of the ownership of CSX, any and all methods of calculating the ownership of CSX, any type of ownership of CSX (including beneficial ownership), and how swaps and/or derivative instruments were treated for purposes of calculating the ownership of CSX.

- Subject No. 3.  The voting rights of the shareholders of CSX.

- Subject No. 4.  The voting power (which includes the power to vote, or to direct the voting) or investment power (which includes the power to dispose, or to direct the disposition) of any swaps or other derivative instruments that reference the equity of CSX.

D.F. King generally objected to the deposition notice, presumably also at TCI's direction and certainly with its knowledge, on grounds of privilege.  (See Ex. 10, General Obj. ¶ C.)  While D.F. King ultimately produced a witness to speak on its behalf, counsel for D.F. King instructed the witness not to respond to questions on the basis of the attorney-client privilege concerning conversations with Schulte Roth, even though Schulte Roth is counsel for TCI, and not D.F. King.

> MR. PARKER:  . . . . Communications between Schulte and TCI, however, are another matter.  Those are privileged, and it is our view that Mr. Harkins' presence at those conversations does not make those conversations not privileged.  So I will not let him answer questions about conversations where both TCI and Schulte were present.
>
> MS. SELB:  So for any conversations where both TCI and Schulte were present, there is a blanket instruction not to answer?
>
> MR. PARKER:  I won't say it's a blanket instruction not to answer.  If you can demonstrate that there were some other non-privileged person there or it's been otherwise waived in some other way, or for some other reason is not privileged, then -- then we'll consider it.  But I would say that a conversation between Schulte and TCI is presumptively privileged until we figure out otherwise. Presumptively privileged. And we will not permit him to answer unless otherwise described. (Ex. 11 at 39:7-40:8.)

Thus, TCI again used the privilege as a shield against discovery.

9

**IV.    TCI'S PRIVILEGE LOG CONFIRMS THE EXTENT OF ITS REFUSAL TO ALLOW DISCOVERY.**

Consistent with its refusal to produce all relevant documents relating to its scheme, TCI first produced a 661-page privilege log. That log, which we do not attach (due to its length), listed 3,714 documents. TCI produced an amended log, which was shorter in volume (591 pages), but which increased the number of purportedly privileged documents to 3,715. A copy of the amended log (with the entries sorted chronologically) appears at Ex. 17.

Despite the fact that TCI does not appear to have searched, or produced documents from, the files of its legal counsel, approximately 696 of the listed documents involve communications with Proskauer Rose, and approximately 1,231 involve communications with Schulte Roth, on whose advice TCI claims now to have relied.

Putting aside the involvement of any particular lawyer, the documents TCI has withheld go to the heart of its scheme to evade and are central to its supposed good faith. We urge the Court to examine the version of TCI's log on which the entries appear in chronological order. (Ex. 17.) The following <u>selected</u> excerpts from only the first three months covered by that log (December 2006 to February 2007, listed below chronologically) make the point:

| 384 | 12/6/2006 | Email with in house counsel re. swap disclosure and voting rights. |
| 389 | 12/7/2006 | Email chain containing communications with in house counsel re. swap disclosure and voting rights. |
| 396 | 12/20/2006 | Legal memorandum. |
| 397 | 12/20/2006 | Inquiries re. SEC filings. |

| 400 | 12/21/2006 | Email with in house counsel re. swap disclosure/filing requirements, and percent-ownership of CSX. |
| --- | --- | --- |
| 403 | 12/22/2006 | Email chain containing communications with in house counsel re. swap disclosure/filing requirements, and percent-ownership of CSX. |
| 407 | 12/22/2006 | Email with in house counsel re. filing requirements in connection to swap and "physical" stock ownership. |
| 412 | 12/22/2006 | Advice on Hart Scott Rodino |
| 418 | 12/23/2006 | Email chain containing communications with in house counsel re. filing requirements in connection to swap and "physical" stock ownership. |
| 421 | 12/26/2006 | Email chain re. filing requirements in connection to swap and "physical" stock ownership. |
| 424 | 12/27/2006 | Email chain containing communications with in house counsel re. filing requirements in connection to swap and "physical" stock ownership. |
| 426 | 12/27/2006 | Email containing attorney-client communication re. disclosure of swap agreements. |
| 434 | 12/27/2006 | Communication with in house counsel re: voting rights in connection to swaps. |
| 435 | 12/28/2006 | Email re. CSX takeover defenses. |
| 8 | 12/29/2006 | Email chain containing communications with Proskauer and attachment re. Master Agreements of Counterparties Goldman Sachs and Credit Suisse First Boston (Europe). |
| 344 | 12/29/2006 | Email re. CSX takeover defenses. |
| 345 | 12/29/2006 | Email chain containing communications with Proskauer re. CSX takeover defenses. |
| 439 | 12/29/2006 | Email re. disclosure of swap agreements. |

| 441 | 12/29/2006 | Email re. Confirmations with Counterparties Goldman Sachs and Credit Suisse First Boston (Europe). |
| --- | --- | --- |
| 442 | 1/2/2007 | Email with in house counsel re. swap disclosure and voting rights. |
| 443 | 1/3/2007 | Email chain re. acquisition of CSX securities and possible voting rights. |
| 444 | 1/4/2007 | Email chain containing communications with Proskauer re. acquiring of CSX securities and possible voting rights. |
| 447 | 1/4/2007 | Email chain re. CSX takeover defense report, voting, shareholder rights. |
| 451 | 1/5/2007 | Email chain re. CSX takeover defense report, voting, shareholder rights, and other corporate law considerations. |
| 454 | 1/7/2007 | Email chain re. CSX takeover defense report, voting, shareholder rights, and other corporate law considerations. |
| 460 | 1/8/2007 | Slideshow re. CSX proxy contest. |
| 462 | 1/8/2007 | CSX Proxy Solicitation |
| 464 | 1/9/2007 | Email attaching SRZ memo and other attorney-client communications re. disclosure obligations. |
| 465 | 1/9/2007 | Email attaching legal memo re. the potential acquisition of CSX equity. |
| 466 | 1/9/2007 | Analysis of SEC rules. |
| 469 | 1/10/2007 | Email re. swap disclosure obligations. |
| 470 | 1/10/2007 | Email re. Confirmations with Counterparties Goldman Sachs and Credit Suisse First Boston (Europe). |
| 471 | 1/10/2007 | Email attaching Proskauer memo re. the potential acquisition of CSX equity. |
| 477 | 1/10/2007 | Email re. swap disclosure obligations. |
| 480 | 1/10/2007 | Email containing attorney-client communications re. confirmations with swap counterparties. |

| 484 | 1/11/2007 | Email chain and attachment containing attorney-client communications re. swap agreements, confirmations and disclosure obligations. |
|---|---|---|
| 491 | 1/11/2007 | Email to in house counsel and attachment re. TCI investor newsletter. |
| 499 | 1/11/2007 | Email chain containing communications with Proskauer re. swap disclosure obligations. |
| 510 | 1/12/2007 | Email with in house counsel re. swap counterparty documentation. |
| 513 | 1/12/2007 | Email chain re. swap disclosure obligations. |
| 515 | 1/12/2007 | Inquiries related to certain agreements |
| 521 | 1/12/2007 | Legal memorandum. |
| 522 | 1/12/2007 | SWAP related inquiries. |
| 523 | 1/12/2007 | Memo re. federal securities laws and HSR |
| 524 | 1/13/2007 | Email chain re. swap disclosure obligations. |
| 525 | 1/14/2007 | Email chain containing communications with in house counsel and attachment re. swap disclosure obligations. |
| 12 | 1/15/2007 | Email containing attorney-client communication re. swap disclosure obligations. |
| 533 | 1/15/2007 | Email chain re. swap agreements and disclosure obligations. |
| 551 | 1/15/2007 | Email re. CSX shares and HSR filing. |
| 552 | 1/15/2007 | Inquiry about rules related to disgorgement of profits. |
| 553 | 1/15/2007 | Email chain re. inquiry about rules related to disgorgement of profits. |
| 554 | 1/16/2007 | Email chain re. CSX shares and HSR filing. |
| 556 | 1/16/2007 | Email and attachment re. swap disclosure obligations. |
| 572 | 1/17/2007 | Email containing attorney-client communications re. swap agreements and disclosure obligations. |

| 574 | 1/17/2007 | Email chain re. inquiry about rules related to disgorgement of profits. |
|---|---|---|
| 577 | 1/18/2007 | Email chain re. inquiry about rules related to disgorgement of profits. |
| 591 | 1/21/2007 | Email re. HSR filing. |
| 601 | 1/22/2007 | Email chain containing communications with Proskauer re. HSR filing. |
| 610 | 1/22/2007 | Email re. CSX model and forecasts. |
| 21 | 1/23/2007 | Email chain re. HSR filing. |
| 624 | 1/24/2007 | Email re. HSR filing. |
| 640 | 1/25/2007 | Inquiry about 13D filing with the SEC. |
| 642 | 1/26/2007 | Inquiry about rules related to disgorgement of profits. |
| 646 | 1/31/2007 | Email re. counterparty documentation. |
| 649 | 2/2/2007 | Email re. CSX takeover defense. |
| 650 | 2/4/2007 | Email re. CSX takeover defense. |
| 79 | 2/8/2007 | Email re. HSR filing. |
| 658 | 2/12/2007 | Email re. LBO. |
| 660 | 2/13/2007 | Email re. LBO. |
| 661 | 2/13/2007 | Email re. disgorgement. |
| 662 | 2/13/2007 | Email re. tender offers. |
| 81 | 2/15/2007 | Email re. tender offers. |
| 665 | 2/15/2007 | Forwarded counsel's advice re. tender offers. |
| 666 | 2/15/2007 | Email re. disgorgement. |
| 676 | 2/20/2007 | Email re. AGM. |
| 677 | 2/21/2007 | Email re. 14a-8 requirements. |
| 678 | 2/22/2007 | Internal discussion of counsel's advice re. proxy contest. |
| 682 | 2/22/2007 | Email re. proxy contest. |
| 683 | 2/26/2007 | Email chain and attachment re. HSR filing. |
| 82 | 2/27/2007 | Internal discussion of counsel's advice re. HSR filing. |

While TCI's descriptions allow only a superficial understanding of the content of the logged documents, there can be no question that they bear directly upon the scheme in suit. Reference is made to documents concerning (1) TCI's swaps and disclosure obligations relating to them (see, e.g., nos. 486, 469, 484 and 513); (2) TCI plans to take control of CSX including by way of an LBO or tender offer (see, e.g., nos. 81, 658, 660, 662, and 665); (3) TCI's liability for disgorgement of profits (see, e.g., nos. 552, 553, 574 and 577); and (4) TCI's plans for a proxy fight (see, e.g., nos. 460 and 462). Having so successfully asserted the privilege as a shield to discovery, TCI cannot now use the privilege as a sword in its defense.

## Conclusion

For the foregoing reasons, CSX contends that TCI is precluded from asserting a defense of good faith or contesting CSX's showing of bad faith based on the advice of counsel.

Dated: June 4, 2008
   New York, NY

            Respectfully submitted,

            **CRAVATH, SWAINE & MOORE LLP,**

by  /s/
            Rory O. Millson
            Francis P. Barron
            David R. Marriott
            Members of the Firm

            825 Eighth Avenue
            New York, NY 10019
            (212) 474-1000

              RMillson@cravath.com
              FBarron@cravath.com
              DMarriott@cravath.com

DEWEY PEGNO & KRAMARSKY LLP
Keara A. Bergin
220 East 42nd Street
New York, NY 10017
(212) 943-9000
KBergin@dpklaw.com

FRIEDMAN KAPLAN SEILER & ADELMAN LLP
Lance J. Gotko
Paul J. Fishman
1633 Broadway
New York, NY 10019-6708
(212) 833-1100
LGotko@fklaw.com
PFFishman@fklaw.com

*Attorneys for CSX Corporation*